*Exhibit: Gjovik's post complaining about MWE on 9/2/21*

479.    Gjovik had her interview with EEOC on September 2 2021. Gjovik did not request an investigation but did request a Right to Sue letter which she received on 9 2021, prior to her termination. Apple was made aware of Gjovik's EEOC and DFEH complaints and that she was testifying to EEOC and DFEH about what Apple did to her by at least August 12 2021. Gjovik Tweeted about her appointment with US EEOC.[207] Apple retaliated against Gjovik for filing a complaint and testifying with California FEHA. [Cal. Gov't Code § 12940(h); Cal. Code Regs. tit. 2, § 11021.].

---

[207] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1433292907490906113

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                          DECEMBER 21 2023



*Exhibit: Gjovik's Twitter Post on 9/1 (PST) about her NLRB and EEOC cases*

480.    On September 1 2021,



*Exhibit: Gjovik's 9/2/21 post about her EEOC interview*

**xiii.    Apple Intimidates & Threatens Gjovik; Tries to Force Her onto a**

**WebEx Meeting (September 3 2021)**

481.    On September 3 2021, at 4:46am, 9to5Mac.com published an article about Gjovik alleging there was doubt to the merits of her NLRB charge against Apple, suggesting she was lying. The article includes quotes from Vyas and Ricky Mondello. Mondello also shared Vyas' thread about Gjovik and Mondello stated Gjovik was on a "*warpath*" and had a "*vendetta*" against Apple.



*Exhibit: 9to5Mac Article Harassing Gjovik*

482.    On September 3 2021, at 8:36am Okpo texted Gjovik asking for her to join a WebEx meeting with him in less than two hours. Okpo said, "*Hi Ashley Good Morning, I would like to schedule time for us to connect today at 10:30am PT via WebEx for an update. Will this time work for you? Thank you.*" He then emailed her at 10:07am asking for the 10:30am meeting.

483.    Per Apple's March 2022 Position Statement, Apple had already started investigating Gjovik prior to September 3 2021, however at no time prior to September 9 2021 did Apple tell Gjovik she was under investigation. Under information and belief, Okpo contacted Gjovik on September 3 2021 claiming he wanted to talk to Gjovik about the investigation into Gjovik's concerns, but Okpo planned to surprise-attack Gjovik with the investigation into Gjovik. Okpo assumably did not warn Gjovik so she did not try to record or get a witness for whatever it was Okpo planned to do to Gjovik. Under information and belief, Apple and MWE arranged the smear article to occur shortly before an attempted interrogation and forced settlement.

484.     Gjovik had become very irritated with Apple's misrepresentations and manipulations by this point. On September 3 2021, Gjovik replied to Okpo complaining about being on leave and Apple's misconduct. Gjovik said she wanted to keep communication in writing.

> I'd like to request that we please keep our exchanges in writing. If you are going to require a call or video meeting, I'm requesting that you grant me permission to record it.
>
> As I've complained previously, there have been frequent misrepresentations of my verbal conversations with my managers, with Human Resources, and with Employee Relations. This includes misrepresentations by yourself related to the nature of this leave. From what I've heard from other employees in similar situations, this appears to be a pattern by Apple's HR & ER teams to misrepresent and mischaracterize, likely to intimidate & retaliate — and I won't allow you to do continue doing this to me.
>
> I didn't want to dignify the mis-characterizations in your 8/4 & 8/5 emails with a response, but I will say it explicitly in email now (as I did on our WebEx on 8/4) — I didn't ask to be put on leave. I asked you to do a number of other things to mitigate the hostile work env. I said if you couldn't successfully do any of those other things (keep comms in writing, manage my workload, tell my managers and HR BP to stop harassing me and retaliating against me, etc.) then I said worst case we could discuss leave again, however I insisted if I went on leave, that I still be able to organize with other employees, gather evidence, and participate in the investigation.
>
> On 8/4 we were supposed to meet at 10am for a WebEx to review the final Box folders of evidence. You had scheduled at 45min meeting, that was shortened to 30min due a scheduling conflict I had — a meeting with another Apple victim who wanted to share her concerns about discrimination at Apple & Apple's response to it. When I joined that 8/4 meeting you told me we were no longer going to review the evidence and instead you were "putting me on leave." I told you I didn't want to go on leave. I told you I wanted to continue reviewing evidence. I told you I wanted you to work with my managers & HR BP instead. You told me I didn't have a choice. I told you if you were going to force me on leave, I wanted to start the leave later in the week or even next week so I could wrap up some of my projects, exchange my personal information with the women I was organizing with, and reschedule meetings. You also knew, as I told you numerous times, I had planned to go to my office at Stewart 1 on 8/5 to get a laptop with "tons of evidence on it." I had also told you that on 8/3 that I was concerting with colleagues in Stewart 1 to gather evidence of the unsafe work conditions and Apple's activities around them, because myself and other colleagues have feared Apple has been covering up said unsafe work condition.
>
> Despite all of this, your 8/4 email after our 10am conversation said "I was NOW on leave." You also said I was removed from the workplace, workplace interactions, and my actual job — which implied I was also to stop using Slack, stop organizing with employees, stop gathering evidence, and to not go to my office to get more evidence.
>
> Your recent emails mischaracterizing the nature of our verbal conversations & our previous emails have brought even more harm to me through this process.

*Exhibit: Gjovik's email to Okpo on 9/3/21, pt1*

485.     Gjovik asked Okpo for some sort of assurance what he was doing to her wasn't going to impact her annual performance review, and Gjovik asked Okpo for a written update about the status of her office and complained that she has received no updates but saw lots of notifications that EH&S was doing work at the building.

> Due to all of the above, I am also requesting an explanation of how this paid administrative leave will not negatively impact my performance reivew this year. As discussed, I've only had positive performance reviews in the past and I'm already worried about a negative review this year and/or less money as retaliation for raising concerns & organizing. At the very least, you forcing me to drop my projects with no notice on 8/4y and not even allowing me a few days to hand things off, seems likely to negatively impact my review. Even more, the retaliation from my managers in reducing my supervisory capacity, reassigning my projects, increasing my workload dramatically, and adding unfavorable work — all seem like retaliation setting me up for a negative review. Because you removed me "from the workplace & workplace interactions" I haven't been able to do anything to try to advocate for myself around this. What is Employee Relations strategy to ensure everything that's happened this year around whistleblowing, complaints, retaliations, etc year does not negatively impact my performance reivew? I believe my review was supposedly finalized last week.
>
> Finally, I am still eagerly awaiting an update from ER & EH&S on the safety of my office. The last I heard was from Jenna (employee relations) telling me that she, nor ER, nor EH&S will answer any more of my questions about workplace safety. Which is very concerning in itself, let alone in addition to the current silence while EH&S has apparently been doing work at my office frequently over the last few weeks.
>
> -Ashley

*Exhibit: Gjovik's email to Okpo, pt2*

486.     Gjovik then posted on Twitter about Okpo reaching out, providing a screenshot of her email response to Okpo. In the post Gjovik wrote, *"The     #Apple Employee Retaliations team reached out today to "request a meeting." I replied that I am req we keep everything in writing due to their freq misrep of verbal comms. I also req an explanation of how my perf review will not be neg impacted by being forced on leave."[208]*

487.     At some point around September 2021, Gjovik heard two men in the attic directly above the office in her apartment. The men spent over an hour in the attic directly above the room she used as an office. It made Gjovik feel uneasy at the time but she did not know what to do. In 2022, Gjovik raised the attic event to her landlord. The landlord said the only entrance to the attic is through her bedroom closet. Gjovik said no one was in the apartment with her. The landlord had no other explanation. Gjovik looked in the attic and found cables/cords that did not look like they belonged – and the landlord told her they did not know where they came from. Gjovik saw the attic units were divided by thin plywood and told her landlord she suspected someone must have broken into an adjacent unit (there were a couple) and went into the attic of that unit and then broke into Gjovik's attic from there. Under information and belief, Apple broke into Gjovik's attic in the fall of 2021. Under information and belief, Apple installed electronic equipment in Gjovik's attic to surveil her.

488.     On September 3 2021, Gjovik filed a NCDF Disaster Complaint with the US Department of Justice and posted on Twitter about filing it.

489.     On September 3 2021, Gjovik filed a tip with the FBI about the possible sanctions' violations. In the crime field she wrote: *"Possible violations of sanctions against Syria, possible cover-up of that knowledge, retaliation for reporting concerns about said violation and coverup."* Gjovik posted on Twitter that she had reported the matter to the FBI.

---

[208] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1433902544695095298

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

490.    On September 5 2021, Gjovik posted on Twitter about the US DOJ case against Apple lawyer Gene Levoff. Gjovik said she found a denied motion in the case where Levoff's defense was arguing "*insider trading laws don't exist*" and/or do exist "*but are unconstitutional.*"[209]  [See RICO Predicate Acts: Securities Fraud and Wire Fraud]

491.    On September 6 2021, Gjovik posted on Twitter as screenshot, captioned: "Aug 2 iMessage with Apple coworker: "*Seriously though, ER's face about the COVID vaccine & Riccio's demotion. He really thought I was exaggerating. I'm like if you want a witness please talk to Deirdre O'Brien.*" @TheJusticeDept; NCDF Disaster Complaint: Hoarding/Other [photo of DOJ complaint & iMessage].[210]

492.    On September 6 2021, Gjovik posted on social media about her cases with a status update and the report numbers. In addition to the prior charges, she now also referenced her SEC whistleblower tip, FBI tip, and DOJ complaint.[211]



**Ashley M. Gjøvik**
@ashleygjovik

@NLRB Case: 32-CA-282142
@OSHA_DOL Whistleblower Claim: 1218-023
@USEEOC Case: 556-2021-00608
@SEC_Enforcement Whistleblower Claim: 16304-612-987-465
@CivilRights Complaint: 98145-RJH
@CA_DIR Whistleblower Claim: RCI-CM-842830
@CalDFEH Case: 202108-14540123

7:12 AM · Sep 6, 2021

*Exhibit: Gjovik's Sept. 6 2021 Post about Cases*

---

[209] *US v. Gene Levoff,* USDC of NJ (Aug 12, 2020), Docket No. 19-cr-780, Motion to dismiss: Denied; Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1434406050275287043
[210] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1434830527140229124
[211] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1434836915086188544



*Exhibit: Gjovik's 9/6/21 Twitter post about FBI complaint about Smuggling*

493.    On September 6 2021, Gjovik replied to the US EEOC confirming she was

working on a draft of her complaint and was targeting to submit it to them by September 8 2201,

responding to US EEOC sending her a 'courtesy reminder' on September 3 2021, to complete

the draft.

494.    On September 6 2021, Gjovik posted on Twitter about the Slack discussion from

July 27 2021 where she and her coworkers discussed Apple systemically retaliating against them

for raising valid concerns.

495.    On September 7 2021, Gjovik posted on Twitter about the Batterygate/nude

photographs matter. Gjovik finally disclosed the construction termination that occurred leading

up to Apple's intimidating conduct. Gjovik posted, "*I spent much time pondering why my nudes were so critical to #Apple's doc collection for the Batterygate lawsuits...I worry Apple wanted to intimidate me to never openly discuss how I was constructively term'ed for speaking-up abt the* *situation when I ran sw failure analysis.*" [212] Gjovik then added, "*#Apple Batterygate/Nudegate/Constructiveterminationgate.*"[213]



*Exhibit: Gjovik's Sept. 7 2021 Post about Batterygate & RICO*

---

[212] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1435444339019182083
[213] Twitter, Ahsely Gjovik, https://twitter.com/ashleygjovik/status/1435444945117073414

208



*Exhibit: Gjovik's Sept 7 2021 Post about "ConstructiveTerminationGate"*

496.     On September 7 2021, Gjovik discovered a Santa Clara County Superior Court lawsuit against Apple filed by one of her ex-coworkers. The ex-coworker, Crystal Brown, sued Apple due to harassment and retaliation from her manager, who was also Gjovik's manager, Dan West. The lawsuit was filed in 2018 and settled in 2019. Gjovik posted on Twitter about it tagging Tim Cook and Apple's Twitter accounts and complained that Apple had tried to claim they investigated West but found no 'policy violations' when he was sued by another employee only a couple of years prior and Apple had quickly settled the case.

497.     On September 7 2021 at 8:42pm, Okpo contacted Gjovik again asking to speak with Gjovik by September 10 2021. (Gjovik's NLRB affidavit was due September 13 2021). Now Okpo said there were some "*inconsistencies*" he wanted to discuss. Okpo had never responded to Gjovik's concerns on September 3 2021 and this was the last email Gjovik would receive from Okpo.

**Ekelemchi Okpo <eokpo@apple.com>**                                    Sep 7, 2021 at 8:42:11 PM

Re: Meeting Request

To: Ashley Gjøvik <ashleygjovik@apple.com>

---

Ashley-

Thank you for your email.

Based on interviews I've conducted so far and evidence I've reviewed, there are some inconsistencies I'd like to discuss with you in detail, and give you the opportunity to provide additional information.

Please let me know when you have availability to connect tomorrow or later this week.

 

Best,

Ekelemchi Okpo
Corporate Employee Relations
eokpo@apple.com

*Exhibit: Okpo's email to Gjovik on 9/7/21*

498.    Okpo is an attorney. Gjovik again asked to keep communications in writing. Gjovik asked for Business Conduct review (by Tom Moyer's team) of Okpo's repeated denial to keep communications in writing. Okpo never said, at any time, that Gjovik was under investigation, but instead maintained he was investigating Gjovik's concerns about others.

499.    On September 7 2021, Gjovik responded to Okpo. Gjovik reiterated she wanted to keep communications in writing, and asked Okpo to have Business Conduct review her request and his denial of her request. She then repeated her two questions form five days prior about the leave negatively impacting her review and what the status of her office was. She added that she had just discovered the lawsuit filed against apple by her ex-coworker Crystal Brown alleging retaliation, failure to investigate, IIED, and other charges – while naming Dan West, John Basanese, and Employee Relations – which Apple settled in 2019. To Gjovik, that lawsuit removed any doubt that these investigation were completely farcical and Employee Relations will blatantly lie to employees about their "findings." Waibel surely knew about the prior lawsuit against West, yet acted as if West as blameless and Gjovik was insane.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

> **Ashley Gjovik** <ashleygjovik@apple.com>                    Sep 7, 2021 at 9:45:45 PM
> Re: Meeting Request
> To: "Ekelemchi Okpo (ER)" <eokpo@apple.com>
>
> Hi Ekelemchi!
>
> Happy belated Labor Day! I hope you're well.
>
> **I. Updates in writing**
>
> My previous email requested that we please keep future conversations in writing (9/3: "I'd like to request that we please keep our exchanges in writing.") Will you please send me your updates / questions in writing? Or are you refusing my request? If refusing my request, can you please document your justification for doing so?
>
> I feel like you're implicitly denying my request otherwise — and because you're an attorney and you're in an adversarial position to me, if you are denying my request, I'd also like to request if there is there an appeal process (business conduct maybe?) to review my request to keep communications in writing?
>
> **II. I'm also awaiting your reply about my review**
>
> > I am also requesting an explanation of how this paid administrative leave will not negatively impact my performance reivew this year. As discussed, I've only had positive performance reviews in the past and I'm already worried about a negative review this year and/or less money as retaliation for raising concerns & organizing. At the very least, you forcing me to drop my projects with no notice on 8/4 and not even allowing me a few days to hand things off, seems likely to negatively impact my review. Even more, the retaliation from my managers in reducing my supervisory capacity, reassigning my projects, increasing my workload dramatically, and adding unfavorable work — all seem like retaliation setting me up for a negative review. Because you removed me "from the workplace & workplace interactions" I haven't been able to do anything to try to advocate for myself around this. What is Employee Relations strategy to ensure everything that's happened this year around whistleblowing, complaints, retaliations, etc year does not negatively impact my performance review? I believe my review was supposedly finalized last week.
>
> **III. I'm also waiting your reply about the safety of my workplace**
>
> > Finally, I am still eagerly awaiting an update from ER & EH&S on the safety of my office. The last I heard was from Jenna (employee relations) telling me that she, nor ER, nor EH&S will not answer any more of my questions about workplace safety. Which is very concerning in itself, let alone in addition to the current silence while EH&S has apparently been doing work at my office frequently over the last few weeks.
>
> Thanks!
> -Ashley
>
> P.S. Not sure if you've heard yet, maybe they didn't tell you - but I found Superior Court for the State of California for the County of Santa Clara Case 18CV330796 (2018) & 18CV330922 (2019) with for the NOTICE OF SETTLEMENT OF ENTIRE CASE for Retaliation, Failure to take Reasonable Steps to Investigate, Failure to take Reasonable Steps to Prevent Retaliation, Constructive Termination in Violation of Public Policy, & Intentional Infliction of Emotional Distress against Apple Inc, Dan West, and Employee Relations. Please feel free to respond now....otherwise we'll def address this later.
>
> —
> Ashley M. Gjøvik

*Exhibit: Gjovik's email to Okpo on 9/7/21*

20
21
22
23

500.    On September 8 2021, Gjovik emailed the US EEOC her draft of the language for her US EEOC charge.

24
25
26
27
28

501.    On September 8 2021, and article was published discussing Gjovik's complaints about Apple being a physical and psychological toxic workplace. The same day Gjovik posted on Twitter complaining that it seemed like Apple reached out the day prior in order to intimidate her about her NLRB charge, because NLRB said her affidavit was due by 9/13, and Apple

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

1    insisted they talk to Gjovik prior to 9/13 (which would give them time to get Gjovik to recant

2    even if she already testified).

3        xiv.    **The Day Apple Fired Gjovik (September 9 2021)**

4

5    502.    On September 9 2021, around 1 AM the day Gjovik was fired, Gjovik was tipped

6    off that Apple may be surveilling her through her work and personal devices. Gjovik posted

7    publicly about her concerns at 12:06 AM including *"Any reason Apple wouldn't be reading my*

8    *[personal] iCloud email and iMessages?"* [214] To which members of the Info Sec community

9    assured Gjovik Apple was likely doing that and more.

10    503.    Gjovik immediately began removing her data from Apple's servers. Realizing

11    how terrified she had become of her employer; she began searching for legal resources. At

12    2:16am that morning Gjovik downloaded the US DOJ guide to litigating civil RICO cases,

13

14    which Apple would have seen.

15

16

17    

18

19

20    *Exhibit: 9/9 RICO Download*

21

22    504.    Minutes later at 2:27 AM September 9 2021, a self-declared "burner" Twitter

23    account, with zero posts or "likes" ever, @Guybrus55626232, sent Gjovik a direct message

24    accusing her of making a claim that was *"verifiably incorrect and complete misrepresentation of*

25    *facts."* The user claimed that when Gjovik posted she found the *Crystal Brown v Apple* lawsuit,

26    and said Apple settled (which Apple did), she was "*unequivocally misrepresenting facts, most*

27

28    ───────────────

[214] Note: California employers cannot eavesdrop on or record employees' private telephone, email, or in-person conversations without prior consent by all participants. See, Cal. Penal Code §§ 631(a), 632(a).

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

*likely with malicious intent."* The account said, *"as someone attending law school, you should have known better."*

505.    This user would later contact Gjovik again on January 9 2022, accusing Gjovik of committing a federal crime. Gjovik asked the user to identify themself. The user refused and instead urged her to talk to her lawyer about 18 U.S. Code § 1512, a law Gjovik previously posted publicly she plans to pursue a charge against Apple for violating, and the user now accused Gjovik of violating.

506.    It is under information and belief this user was an agent of Apple or acting on Apple's direction attempting to intimidate Gjovik to stop posting about her surveillance and privacy concerns and attempting to 'DARVO' Gjovik. Gjovik even responded, saying hi to "*Apple Legal"* and asking them to leave her alone. The user then deleted its account.

507.    On the day Gjovik was fired, her Box evidence folders still sat with several folders marked as pending as they had not been reviewed yet after Okpo stopped the process on August 4 2021 when he put Gjovik on leave.

508.    On September 9 2021, at 11:49am, the city of Sunnyvale inspected Gjovik's Superfund Apple office for hazardous waste and fire code compliance and wrote up Apple for violating at least one law.

509.    On September 9 2021, at 12:39pm PST, Gjovik emailed the US EEOC and asked the investigator if she needed anything else from Gjovik in order to move forward. Then again at 1:02pm asking US EEOC how she can sign the charge in order to meet the deadline (that day).

510.    On September 9 2021, at 1:58pm PST, Gjovik published comments about Apple's felonious impersonation of law enforcement in 2011.



*Exhibit: The Post About Apple Breaking into People's Homes*

214

511.     Ten minutes later, at 2:08pm PST, Gjovik was contacted by Aleks Kagramanov, a "*Workplace Violence and Threat Assessment*" investigator demanding to speak with Gjovik on the phone "*within the hour.*" The email had no subject line and Gjovik had never heard of the team or person who reached out. The person claimed to be Employee Relations but said he was "*looking into a sensitive Intellectual Property matter*" and he wanted to speak with Gjovik about it. He said he wanted to talk as soon as possible, within this hour (so less than 52 minutes). He said he was sending her an iCal for a call but could reschedule as long as they meet that day. He said they "*sincerely appreciate [her] prioritizing this call and being flexible.*" He said Gjovik's "*cooperation and participation [are] imperative,*" however he never said Gjovik was under investigation.

On Sep 9, 2021, at 2:08 PM, Aleks Kagramanov <akagramanov@apple.com> wrote:

Hi Ashley,

This is Aleks Kagramanov from Employee Relations. We're looking into a sensitive Intellectual Property matter that we would like to speak with you about. We would like to connect with you at as soon as possible today; within this hour, and you should see an iCal come through shortly. We sincerely appreciate you prioritizing this call and being flexible. If you absolutely cannot make this time, please propose a few other times for us to connect today. I wanted to send this introductory email so you know who I am when I set it up. I can share more details when we meet.

As part of Apple's policy, your cooperation and participation is imperative.

Thank you in advance, and talk soon.

Best,

Aleks Kagramanov
Employee Relations
AMR Threat Assessment & Workplace Violence (TAT)
Apple
One Apple Park Way, mail stop
Cupertino, CA 95014, USA
iPhone +1-408-202-4963
akagramanov@apple.com

*Exhibit: Email from Workplace Violence on 9/9/2021 2:08pm*

215



*Exhibit: Gjovik's Posts on 9/9/2021 – Knock on Door*

512.    Gjovik promptly responded at 2:10 PM PST, two minutes later, saying that she was willing to participate, she wanted there to be a written record of their conversations. She said she will respond as quickly as she can. Kagramanov did not respond so Gjovik replied again.

> On Sep 9, 2021, at 2:27 PM, Ashley Gjovik <ashleygjovik@icloud.com> wrote:
>
> FYI, I forwarded your email & my reply to the investigator on my NLRB case so he's aware you just reached out to me the day before my Affadavit is supposed to be taken.
>
> This feels a little like witness intimidation, etc...
>
> —
> Ashley M. Gjøvik
>  Senior Engineering Program Manager, Apple
>
> On Sep 9, 2021, at 2:10 PM, Ashley Gjovik <ashleygjovik@icloud.com> wrote:
>
> Hi Aleks! Happy to help! Please send any questions / updates via email so we keep everything written please.
>
> I will respond via email as quickly as I can. Thanks!
>
> —
> Ashley M. Gjøvik

*Exhibit: Gjovik's email to Workplace Violence on 9/9/21 2:20 and 2:27 PM*

513.    Gjovik responded again at 2:27 PM PST complaining to the Workplace Violence interrogator of "*witness intimidation the day before her affidavit*" and telling him she forwarded his emails to her NLRB investigator.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

514.   Gjovik was posting screenshots of the conversation on Twitter in real time, along with her commentary and research discoveries about the team who contacted her. Gjovik posted on Twitter complaining of witness intimidation at 2:33 PM PST.



*Exhibit:: Gjovik's Posts on 9/9/2021 2:33pm*



*Exhibit: Gjovik's Posts on 9/9/2021 2:34pm*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                         DECEMBER 21 2023

515.    Gjovik forwarded Kagramanov's emails to her NLRB investigator Alex Hadjuk at 2:26pm and 2:30pm PST, via her iCloud email address which Apple would have seen. Gjovik also notified Kagramanov directly she did so.

516.    A fake Twitter account called "EarlyRiser," then replied to one of Gjovik's posts saying, "*It would be in your best interest to drop ideas of suing, or attempts at dragging them through any spiteful dirt, as it'll co$t you.*" Under information and belief, "EarlyRiser" is Apple.

517.    Kagramanov then responded at 2:50 PM, and said "*we are investigating allegations that you improperly disclosed Apple confidential information*" and claimed she refused to 'participate' in his farcical investigation. He did not explain what "participate in the discussion" meant. (Assumably he, and a bunch of lawyers and security goons, would meet her on the call, threaten to sue her, or threat to get charges filed against her for whoknowswhat, unless she signs some illegal waiver of claims and disappears). Kagramanov then said he was suspending all of Gjovik's account access. Notably, he never gave Gjovik a warning that she had to talk on the phone as the only option, nor did he tell Gjovik she was under investigation until after he suspended her accounts.

On Sep 9, 2021, at 2:50 PM, Aleks Kagramanov <akagramanov@apple.com> wrote:

We are investigating allegations that you improperly disclosed Apple confidential information. Since you have chosen not to participate in the discussion, we will move forward with the information that we have, and given the seriousness of these allegations, we are suspending your access to Apple systems.

Best,

Aleks Kagramanov
Employee Relations
AMR Threat Assessment & Workplace Violence (TAT)
Apple
One Apple Park Way, mail stop
Cupertino, CA 95014, USA
iPhone +1-408-202-4963
akagramanov@apple.com

*Exhibit: Workplace Violence email on 9/9/21 2:50pm*

518.    Gjovik responded to Kagramanov at 3:07 PM re-iterating she wanted to participate. "*As mentioned, I'm definitely willing to participate in your investigation. I only*

*asked that the discussion be kept to email — I said nothing about not participating in the*

*discussion at all."* Gjovik added: "*I offered to help via email to ensure we have a documented*

*[record] of our conversations considering everything that's currently going on with my*

*investigation and my complaints to the government." "I would really like the opportunity to*

*remedy any actual issues. Please let me know what the issues are so I can make a good faith*

*attempt at that."*

**From:** Ashley Gjovik <ashleygjovik@icloud.com>
**Subject: Re:**
**Date:** September 9, 2021 at 3:07:37 PM PDT
**To:** Aleks Kagramanov <akagramanov@apple.com>
**Cc:** "Ashley G (Work)" <ashleygjovik@apple.com>

Hi Aleks,

As mentioned, I'm definitely willing to participate in your investigation. I only asked that the discussion be kept to email — I said nothing about not participating in the discussion at all.

I offered to help via email to ensure we have a documented recored of our conversations considering everything that's currently going on with my investigation and my complaints to the government.

I have been speaking out about work conditions, about workplace safety, concerns about discrimination & retaliation, and about concerns about intimidation and corruption (as reported to the government in public record).

I'm very concerned about what you are calling "serious allegations." Can you please provide me additional detail on what these allegations are? And when you say move forward, are you simply suspecting my access to Apple system? Or are you doing something more — and if so what?

Your email is very unexpected and I'm caught quite off guard if this is a real issue. I'd like the opportunity to remedy any actual issues. Please let me know what the issues are so I can make a good faith attempt at that.

In the meantime, without any additional context or effort to communicate with me in email, this really does feel like intimidation and additional retaliation and I will consider it as such.

Best,
-Ashley

—
Ashley M. Gjøvik

*Exhibit: Gjovik's email to Workplace Violence on 9/9/21 3:07pm*

519.     Gjovik added in her 3:07 PM email reply to Kagramanov: "*In the meantime,*

*without any additional context or effort to communicate with me in email, this really does feel*

*like intimidation and additional retaliation and I will consider it as such."* Gjovik still did not

know what she was supposedly accused of.

520.     Gjovik search online for "*Apple*" and "*threat assessment and workplace violence*"

to see if there were any articles about Kagramanov's team. LinkedIn returned three results,

1   including Kagramanov, and the Apple employee who broke into the Latino man's house in

2   2011. Gjovik posted about it at 4:20 PM.



*Exhibit: Gjovik's Posts on 9/9/2021*

521.    On September 9 2021, at 4:24pm PST, the US EEOC investigator emailed Gjovik

saying she posted the final version of the charge and asked Gjovik to sign the charge. Gjovik

only had less than 40 minutes to meet the deadline until her charge could be closed.[215]

---

[215] US EEOC on 9/3/21: "Please understand that if you fail to sign and return the drafted charge within
seven (7) days, I have the authority to assume that you no longer are interested in filing a charge, will
close the inquiry, and no further action will be taken by the EEOC."

522.     On September 9 2021, at 4:27pm PST, Gjovik digitally signed her EEOC charge against Apple, which she had already filed on August 12 2021, and with the notifications of these events still occurring through her iCloud email account. Gjovik's charge included a brief summary of retaliation up to when she filed it:

> "After engaging in protected activity, around May 6, 2021, West reassigned my work to others without explanation and ostracized me. Around July 15, 2021, Powers dramatically increased my workload with unfavorable projects. Around July 2, 2021, Employee Relations forced me to submit a reasonable accommodation request to not be exposed to the hazardous chemicals, instead of addressing my concerns for the health/safety of all employees. Waibel asked I not share my concerns with other employees, refused to take/answer my safety questions, or allow the EH&S team to take/answer my safety questions. In retaliation, on August 4, 2021, Apple placed me on an indefinite paid administrative leave even though I objected."[216]

The charge Gjovik filed only went through August, so after she was fired she had to file a second charge to add the additional retaliation.



---

[216] US EEOC, Charge of Discrimination # 556-2021-00608, Digitally signed by Ashley M Gjovik on 09-09-2021 07:27 PM EDT

221

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

*Exhibit: EEOC Charge, Signed 9/9/21 7:27EST/4:27PST*

523.    At 6:54 PM PST, Yannick Bertolus, Gjovik's Vice President, emailed Gjovik with subject line "*Your employment status*" and an attached letter saying she had been terminated for vague reasons. The termination letter repeated an ambiguous charge of leaking and said she "*failed to cooperate and to provide accurate and complete information during the Apple investigatory process.*" [217]



**From:** ybertolus@apple.com
**Subject:** Employment Status
**Date:** September 9, 2021 at 6:54 PM
**To:** ashleygjovik@icloud.com
**Cc:** Megan Bowman  mbowman@apple.com

Hi Ashley,

Please see attached.

Yannick

AG Term Letter FINAL.pdf

US_CA_Unemployment_en.pdf

US_When_Benefits_En...en.pdf

*Exhibit: Bertolus' email on 9/9/21 at 6:54pm PST*

<hr>

[217] Gizmodo, *Apple Fires Program Manager Who Accused Bosses of Harassment, Intimidation,* Sept 10 2021, https://gizmodo.com/apple-fires-program-manager-who-accused-of-haras-1847649269

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

Date:   September 9, 2021

To:     Ashley Gjovik                                    Employee ID: ▆▆▆▆
From:  Yannick Bertolus
cc:     Personnel file

via Email
ashleygjovik@icloud.com

via FedEx
▆▆▆▆▆▆▆▆▆▆▆▆▆

Re:    Termination of employment

Apple has determined that you have engaged in conduct that warrants termination of
employment, including, but not limited to, violations of Apple policies.  You disclosed
confidential product-related information in violation of Apple policies and your
obligations under the Intellectual Property Agreement (IPA). We also found that you
failed to cooperate and to provide accurate and complete information during the Apple
investigatory process.

Your access to Apple systems has been suspended as of today and your employment
will terminate on September 10, 2021. You will receive your final pay which will include
regular pay through your termination date, all accrued unused vacation pay and any
ESPP contributions made in the current period.

*Exhibit: The Letter Attached to Bertolus' 9/9/21 Email*

524.    No explanation was ever provided as to why Bertolus was the one who

terminated Gjovik, and not Gjovik's managers Powers or West, or Employee Relations

employees Okpo or Lagares. Gjovik had only a handful of interactions with Bertolus during her

time working in his organization. Still, Bertolus surely knew about everything going on with

Gjovik if his report, West, has been talking about "*The Ashley Issue*" at every staff meeting,

Apple public relations was fielding questions about Gjovik daily, the US EPA raided Gjovik's

office, and Apple legal was organizing defenses to Gjovik's government complaints. Everyone

knew about Gjovik's protected activity.

525.     Up until a few hours before she was fired, Gjovik had access to future product roadmaps; unreleased hardware/product design and configuration; future operation system source code; access to all Research & Development finance ordering accounts at the company, including the executive office, information on the manufacturing process and supply chain; competitive analysis; product pricing information; product launch dates; marketing plans; customer feedback and usage trends; access to future software features and projects; access to submit code to the OS releases and view what others submitted.

526.     There was a news cycle covering Gjovik's termination which was humiliating and will forever mark her career and reputation as being fired for "leaking." In interviews Gjovik explained she already knew she would be fired, based on Apple's corrupt conduct, but she wasn't "going to be quiet or slink away," and she said she "was going to stand up for [herself] and [her] fellow employees – [she] was going to expose the systemic problems [she] identified."

527.     On September 9 2021, an Apple Security manager Ricky Mondello, who was friends with a member of Gjovik's Software Engineering team (Faye Garfinkle, close friend of Rob Marini), posted on Twitter about Gjovik's termination, "*Sometimes you fuck around. Sometimes you find out.*"

**xv.     Apple Increases Intimidation and Retaliation (September 2021)**

528.     Gjovik testified to NLRB for her affidavit on September 10 2021.

529.     Joanna Appleseed, who worked in Apple's Global Security team, posted on social media about Gjovik's government complaints and investigations claiming they were meritless, and Gjovik was lying, including on September 9-10 2021.

530.     Appleseed posted on September 9 2021, that Gjovik's NLRB charge may not have merit and she does not believe in Gjovik's charges; on September 13 2021 she posted that Gjovik's EEOC and DFEH charges were meritless, on September 26 posted that Gjovik was

lying about being put on leave and claiming that Gjovik "*leaked IP*," and again on November 1 2021 referencing "*evidence*" and jury "*verdicts*". On September 16 she posted that no one should donate to Gjovik's GoFundMe and called Gjovik a "*predator*," On October 25, 2021, Appleseed posted that Gjovik's "*complaints with federal and state agencies*" do not have merit and that Gjovik was not being "*honest or genuine*" in filing the charges, and that Gjovik was "*harmful*" for filing charges against Apple.

531.    On September 10 2021, a fake Twitter account, "Beezie Wacks" began posting about Gjovik and in Gjovik's replies. Beezie shared, liked, and commented on other fake account and employee harassment of Gjovik. Beezie posted "*#ashleygjovik the world is both pandering to you and also reaming you. This sounds about right. #narcissist #youdeserveit #coward,*" and then paid to 'promote' her Twitter post. Under information and belief Beezie was Apple, and possibly Gjovik's first Employee Relations investigator, Jenna Waibel.

532.    On September 8-10 2021, an account on Reddit began posting about Gjovik. The account "crissnovak" posted on September 8 2021 sharing a link to the Vyas Twitter posts about Gjovik and Gjovik's US DOJ complaints, "*Shantini is my hero, best take on "A" with over 200+ ❤s. ALOT seem to agree: entitled, obnoxious, toxic, vindictive employee. To me, zero credibility. I would not even want to be on the same sidewalk with that.*" The same account posted on September 9 2021, "*Good riddance. They should have fired her weeks ago.*," "*Santa Clara University Law must be cringing.*" On September 10 2021, the account posted in a thread about Gjovik: "*The only thing toxic in all of this is HER. I wouldn't hire this person. I wouldn't rent to this person. I sure as hell wouldn't date this person. She needs serious help.*" The same day the account posted about Gjovik: "*I think when the NLRB, EEOC slams the door on Karen's face because there's no case, we'll see more Twitter tirades about how corrupt these agencies*

*are. Dear Apple, please don't pay her a fcking dime; awarding toxic behavior will only*

*perpetuate it. She needs to learn a hard lesson in life and gain some maturity.*"[218]

533.     On September 11 2021 the crissnovak account posted, "*I so hope Apple,*

*Northrop Grumman, Irvine Company sue her and teach her a lesson. I think she things she is*

*going to get rich, but she's going straight to the poor house. $300k + RSUs + healthcare +*

*tuition reimbursement all up in smoke for this nonsense. Go Ashley go!*" [219] Crissnovak then

began threatening other Apple employees they may "*get Gjoviked*!" if Apple does not like

them.[220] On September 13 2021, the crissnovak account posted on a thread about Gjovik: "....

*Apple (w/it's army of lawyers) can sue her and it would be an easy win because it's a simple*

*breach of contract case. Her counter suit for retaliation/harassment will be very challenging*

*especially if her coworkers don't have her back. They may be enjoying all that Apple $$$.*

*Lawsuit would be chump change for Apple but will certainly bankrupt her. I've never seen*

*anyone so intent on ruining their own reputation/livelihood…*" then added about Gjovik's

appearance that Gjovik was on the "*chubby side*" and had "*baby teeth lol*."[221]

534.     Prior to harassing Gjovik, the account posted specific demographic information

which Gjovik was able to match to several Apple employees who may be behind the account,

including a manager and analyst in Apple Human Resources, two project managers in Apple's

Developer Tools (a team that is close with Marini and Riegel), and a senior manager for the team

that appears to be in charge of the Face Gobbler application and data. Under information and

belief crissnovak was Apple.

---

[218] Reddit, u/crissnovak, https://www.reddit.com/user/crissnovak/comments/
[219] Reddit, Apple fires Senior Engineering Program manager Ashley Gjovik,
https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_man
ager/hccxlth/?context=3
[220] Id.
[221221] Reddit, https://www.reddit.com/r/apple/comments/pm7lio/comment/hcnwjqz/

226

535.    Starting in at least September 2021 and assumed to continue through current day, Joanna Appleseed and other Apple employees undertook a 'whisper campaign' to smear Gjovik's character and creating fear, uncertainty, and doubt about Gjovik's allegations against Apple.

536.    On September 10 2021, one of Gjovik's coworkers began posting about Gjovik under the screenname "Neoform." Neoform was Gjovik's coworker Ian O'Shaughnessy who sat a few desks from Gjovik at 825 Stewart Drive.[222]  For around a week when Gjovik was fired, Neoform/Shaughnessy began posting extensively about Gjovik on Twitter, Reddit, and other forums and social media sites. In September 2021, in threads about Gjovik getting fired on Twitter and Reddit, Shaughnessy posted under the name "Neoform":

a.   *Vexatious litigant incoming!*
b.   *The way she's been attacking her employer on every possible front (including taking digs at the CEO and board of directors, repeatedly), this was basically a self-fulfilling prophecy.*
c.   *Based on her writings and twitter feed, I would not be surprised in the least to learn she has some kind of psychosis.*
d.   *She's entirely to blame for her firing.*
e.   *She clearly doesn't have a lawyer, so I'd guess all of her claims are entirely baseless. The irony is: she's a law student graduating next year...How terrifying*
f.   *Silicon Valley has a number of Superfund sites, she says both her apartment AND her workplace office are located above a superfund site... That said, she's claiming she was hallucinating and getting sick from the tVOCs – meanwhile no one else around her was suffering the same.*
g.   *[directly to Gjovik about Gjovik's SEC charge] Why would the Finance & Audit committee oversee the renting/purchasing of property?*
h.   *[directly to Gjovik about Gjovik's lost RSUs] But you said were only planning on staying at Apple until Dec 2022 though, which means you wouldn't be getting all that money anyways*
i.   *You think there are law firms that will want to hire her? She's toxic.*
j.   *I was giving her the benefit of the doubt until I saw her claim that turning on her webcam during meetings was sexist.*

---

[222] Newsique, About, DJ Neoform/Ian O'Shaughnessy
https://web.archive.org/web/20070109074012/http://www.newsique.com/about/ ; Wikipedia Neoform link to Newisque https://en.wikipedia.org/w/index.php?title=User:Neoform&oldid=92521016

k.  *Right to Sue notices are the default position of the NLRB – ergo, they decided \*not\* to take action of their own, hence, you can go ahead and sue to resolve it yourself.*

l.  *Why are you certain the investigation had not been closed? She posted that ER had reached out to her, she effectively refused to talk to them, they replied saying "ok, we're going to proceed without you then." Sounds like they were wrapping things up…*

m.  *She accused her boss of pimping because he recommended a Michelin star resto to her, she went, then the sous-chef who knew her boss talked to her and paid for her meal.*

n.  *You think there are law firms that will want to hire her? She's toxic.*

o.  *"Now Apple has fired her for supposedly 'leaking' insider information." A brief glance at her twitter feed can resolve the "supposedly" part*

Shaughnessy also "liked" Vyas' posts attacking Gjovik from early September 2021.

537.    On September 22 2021, Gjovik finally blocked Shaughnessy ("Neoform") and upon which he replied: "*Lol, you blocked me for giving you the most mild criticism? How thin-skinned are you?*"

538.    On September 12 2021, Gjovik received two calls from an Unknown number on with no voicemail.[223] Gjovik did not pick up and complained on Twitter that Apple needs to email her and keep it in writing if they want to talk. "*if that was #Apple… As I've requested for months now, If @Apple would like to intimidate me, they need to do it in writing only please. Thanks. Appreciate your understanding.*"[224]

539.    Gjovik watched $591,612 in unvested AAPL RSUs disappear that weekend.[225] Gjovik was also due for her annual performance review, which Apple never gave, and would have had her annual bonus awarded with a week or so.

540.    The Press discussed Gjovik's termination and Apple's retaliation against her. A Public Radio representative with over 87,000 Twitter followers publicly commented about "The Ashley Gjovik Story," that "*the irony that Apple fired her during the week of Labor Day, allegedly as retribution for filing a NLRB complaint, should be lost on no one.*"

---

[223] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1437228327555710977
[224] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1437179879250960397
[225] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1437248801006358532

228



**Andy Ihnatko** ✓
@Ihnatko

Finally: yes indeed, the @ashleygjovik story is now on the docket for Friday's tech news roundup on @BosPublicRadio at 1:15-ish. The irony that Apple fired her during the week of Labor Day, allegedly as retribution for filing a NLRB complaint, should be lost on no one.

12:21 AM · Sep 10, 2021 · Twitter Web App

*Exhibit: Boston Public Radio Twitter Post*

541.    A Bloomberg reporter who is covered Gjovik's labor struggle with Apple in depth posted after Gjovik's termination, *"Ashley Gjovik, who was fired by Apple Thursday after filing NLRB, OSHA, and EEOC complaints, has received right-to-sue notices allowing her to sue for discrimination in federal or state court."* In September, The New York Times described Gjovik's situation with Apple: *"After taking her complaints about #Apple public this year, Ms. Gjovik was placed on leave and later fired. She filed complaints with the NLRB, OSHA, the EEOC, & the Justice Department."* The close nexus between Gjovik's protected activities and Apple's negative actions towards her was lost on no one.

542.    On September 14 2021, after a fake account on Reddit began posting that Apple employees will get "*Gjovik'd*" if they do not fall in line, Apple employees then began sharing the post and term "*Get Gjovik'd.*" Under information and belief this account was Apple and the term Gjovik'd was a riff off the term "*Steve'd*" which referred to Steve Jobs laying people off.

543.    On September 14 2021, Gjovik had the second part of her NLRB affidavit. She posted about it on Twitter.



*Exhibit: Gjovik's Twitter Post on 9/14/21*

544.   On September 20 2021, Bertolus' administrative assistant contacted Gjovik notifying Gjovik that Apple would be mailing her the things from her desk back. The assistant sent Gjovik a tracking label on September 29 2021.

545.   On September 15 2021 at 7:40pm PST, Apple's lawyers at O'Melveny & Myers emailed Gjovik a letter implying she was terminated due to several Twitter posts and the video content in a news article.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

On Sep 15, 2021, at 7:40 PM, Eberhart, David R. <deberhart@omm.com> wrote:

Please see the attached correspondence.

Sincerely,

David

**O'Melveny**

**David R. Eberhart**
deberhart@omm.com
O: +1-415-984-8808

O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Website | LinkedIn

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

<Gjovik, Ashley M. IPA.pdf><Sep_15_Gjovik_Letter_FINAL.pdf>

*Exhibit: 9/15/21 email from Eberhart*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

**O'Melveny**

O'Melveny & Myers LLP       T: +1 415 984 8700                                      File Number:
Two Embarcadero Center      F: +1 415 984 8701                                      600,000-3 (Apple Inc.)
28th Floor                  omm.com
San Francisco, CA 94111-3823

September 15, 2021                                   **David R. Eberhart**
                                                    D: +1 415 984 8808
                                                    deberhart@omm.com

**VIA E-MAIL**

Ms. Ashley Gjovik
1050 Benton Street, Apt 2310
Santa Clara, CA 95050
ashleygjovik@icloud.com

Dear Ms. Gjovik:

On behalf of Apple Inc., we write to request that you remove certain images and video that you have displayed publicly in violation of your Confidentiality and Intellectual Property Agreement with Apple dated January 31, 2015 (the "IPA").

The first are the images contained in the following tweet:

https://twitter.com/ashleygjovik/status/1431824501457633283

As you know, the images are comprised of internal Apple emails regarding a confidential Apple-internal user study project. Please remove those images from any public location and refrain from further public disclosures about that project.

The second is the image contained in the following tweet:

https://twitter.com/ashleygjovik/status/1432400136471072769

The related video is located here:

https://volume-assets.voxmedia.com/production/7739cb4ec481082f874bd63244468b2d/547059/playlist.m3u8

As you know, that image and video were generated by a confidential internal Apple application during confidential Apple-internal user studies. Please remove that image and video from any public location and refrain from further public disclosures about that application or related user studies.

A copy of the IPA is included with this letter. I am available to discuss this matter at any time. If you are represented by counsel in this matter, please identify your counsel.

/ / /

Century City • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

**O'Melveny**

Sincerely,

/s/ David Eberhart

David R. Eberhart
of O'MELVENY & MYERS LLP

*Exhibit: The O'Melveny & Myers Letter*

546.    The Partner, David Eberhard, pointed to the URLs and asked Gjovik to remove the content, which was black and white photos of Gjovik secretly taken from her iPhone to gather her biometrics without her consent; a video of these images including in her living room, bedroom, bathroom, and in public spaces; and Twitter posts where Gjovik complained about Apple's surveillance, intimidation tactics, overly restrictive confidentiality policies, and ex-Intelligence/ex-military corporate paramilitary team, the "*Worldwide Loyalty Team.*"





56

*^ The Twitter Posts Apple's Lawyer's Demanded that I Delete on Sept 15 2021 ^*

*Exhibit: The Posts in Question*

234



*Exhibit: The Posts in Question*



...n, and include the videos if they found a glitch in the system. "All data that has your face in it is good data," said an internal email about the project. After rumors of criticism, Apple eventually changed the codename to "Glimmer."

*Exhibit: The Video in Question*

235

547.    This letter created the implication of surveillance and confirmed actual surveillance of Gjovik by Apple. The message from Apple also expressly told Gjovik that Apple's surveillance of its employees is 'confidential' and speaking of it publicly can result in immediate termination.

548.    In addition to the bizarre and clearly pretextual timeline of events with Kagramanov, Apple's lawyers' communications also show Apple's retaliatory animus by timeline alone. Apple's lawyers contacted Gjovik on September 15 2021, pointing to content posted 16-18 days prior. This is supposedly the same content that Kagramanov reached out to Gjovik about on September 9 2021, saying he had to talk to her "*within the hour*" about. It's also unclear why it took an additional six days after Gjovik's termination for Apple to email Gjovik the URLs of the Twitter posts it supposedly fired Gjovik over. If Apple's post-hoc rationalization was true, then with the posts already identified, it probably only took five minutes to draft the email – something they could have sent on September 9 2021.

549.    Further evidence of Apple's pretext is that after the initial email, Eberhardt then replied with essentially, "*oh hey here's another one or two I just found*." Its unclear how Apple could be so certain it would fire Gjovik, and have over two weeks to prepare its position and communications with Gjovik, yet Apple forgot about two of the posts it fired her over, but then remember them the next day. It's also absurd for a law firm such as OMM to act like they don't know how to file a take-down request for actual Intellectual Property – but they know the content is not Apple's property and their requests would be denied.

1

2

3

4

5

6

7

8

9

10

11

12

**From:** Ashley Gjovik <ashleygjovik@icloud.com>
**Sent:** Wednesday, September 15, 2021 8:58 PM
**To:** Eberhart, David R. <deberhart@omm.com>
**Subject:** Re: Correspondence on behalf of Apple Inc.

[EXTERNAL MESSAGE]
Hello David,

I hope you're well.  Thank you for your email.

I disagree that the posts fall under the definition of confidential or proprietary information, but in an effort to resolve the matter amicably, I've removed the two Twitter posts you cited, as requested.

https://twitter.com/ashleygjovik/status/1431824501457633283
https://twitter.com/ashleygjovik/status/1432400136471072769

As for the video hosted by Vox, I do not have the power to delete it as Vox is in control of their own servers, not me. I am talking others about your request and someone will get back to you related to the Vox hosted video.

—
Ashley M. Gjovik

13

*Exhibit: OMM Email 9/15*

14

15

16

17

18

19

20

21

22

23

24

25

On Sep 16, 2021, at 8:49 PM, Eberhart, David R. <deberhart@omm.com> wrote:

Dear Ms. Gjovik –
Thank you for your email.

I look forward to further information about Apple's request to remove the video. In the meantime, I note that there are additional tweets that also contain the same or similar images from confidential Apple-internal user studies:

https://twitter.com/ashleygjovik/status/1432381497370034184
https://twitter.com/ashleygjovik/status/1432381395955900416

Please remove those images from any public location, remove any similar images, and refrain from further public disclosures of the same or similar information.
Sincerely,
David

26

*Exhibit: OMM Email 9/16*

27

28

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**From:** Ashley Gjovik <ashleygjovik@icloud.com>
**Sent:** Friday, September 17, 2021 11:48 AM
**To:** Eberhart, David R. <deberhart@omm.com>
**Subject:** Re: Correspondence on behalf of Apple Inc.

[EXTERNAL MESSAGE]

Hi David,

Again, I disagree that the posts fall under the definition of confidential or proprietary information, but in an effort to resolve the matter amicably, I've removed the two Twitter posts you cited, as requested.

https://twitter.com/ashleygjovik/status/1432381497370034184
https://twitter.com/ashleygjovik/status/1432381395955900416

Would you please let me know — have you already sent a request to Vox for them to remove the video? Have you received a response from them separately?

—
Ashley M. Gjøvik

On Sep 17, 2021, at 12:40 PM, Eberhart, David R. <deberhart@omm.com> wrote:

Dear Ms. Gjovik --

Thank you for your email.

Based on your September 15 email, we understood that you were in communication with others about removal of the video hosted by Vox. Consequently, we have not separately communicated with Vox. Please let us know the status of the communications you referenced.

Sincerely,

David

*Exhibit: OMM Email 9/17*

**From:** Ashley Gjovik <ashleygjovik@icloud.com>
**Subject: Re: Correspondence on behalf of Apple Inc.**
**Date:** September 20, 2021 at 11:37:24 AM PDT
**To:** "Eberhart, David R." <deberhart@omm.com>

Hi David,

I hope you're well. I chatted with a journalist over at Vox and they mentioned you'd need to reach out formally with any requests like this. Let me know if you need help getting contact information for their legal team. They thought you might already have it, but if not, I can try to get you a contact over there.

—
Ashley M. Gjøvik

*Exhibit: OMM Email 9/20*

550.    Gjovik obtained a lawyer to respond to Apple's lawyers about Apple's

threatening letter. Gjovik's lawyer, David Hecht, sent Apple a letter on October 6 2021, saying,

"*While I understand that Apple is not opposed to taking aggressive litigation postures (and*

238

*indeed has a history of doing so), I remind you of your ethical duties as an attorney regarding the assertion of claims that have no basis in fact or law."*

551.    Gjovik's lawyer told Apple, "*Your September 15, 2021, letter alleges that Ms. Gjovik violated the Confidentiality and Intellectual Property Agreement with Apple dated January 31, 2015 (the "IPA"). You are incorrect.*"

552.    He then went on to knock down Apple's arguments one by one until nothing was left. Her lawyer closed, "*Given Ms. Gjøvik's removal of the content you referred to, coupled with the infirmities of your intellectual property claims in the September 15, 2021, letter, we consider this issue closed, and expect that Apple will immediately cease sending any further inappropriate demands.*"  Apple never responded.

**HECHT**PARTNERS
LLP

David L. Hecht
Partner
P: (212) 851-6821
E: dhecht@hechtpartners.com

October 6, 2021

**VIA E-MAIL**

David R. Eberhart
O'Melveny & Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
deberhart@omm.com

**Re: Ashley Gjøvik**

Dear Mr. Eberhart,

I represent Ms. Gjovik. I am in receipt of your letter dated September 15, 2021 and subsequent email communication with my client. Going forward, please direct all such correspondence to me.

As you are aware, Ms. Gjovik has already complied with your September 15, 2021 demand to remove certain images from some of her Twitter posts. However, I write regarding the inappropriateness of your requests, which may comprise copyright misuse. While I understand that Apple is not opposed to taking aggressive litigation postures (and indeed has a history of doing so), I remind you of your ethical duties as an attorney regarding the assertion of claims that have no basis in fact or law.

Your September 15, 2021 letter alleges that Ms. Gjovik violated the Confidentiality and Intellectual Property Agreement with Apple dated January 31, 2015 (the "IPA"). You are incorrect. The IPA does not cover the images/video that Ms. Gjovik posted. For example, you take issue with Ms. Gjovik's post of screenshots of an automated email sent to Ms. Gjovik from "Ask," "an internal survey solution." The email itself was not marked as confidential. Further, there is no suggestion in the email that the in-person study referenced in the email was restricted to Apple employees or that its existence was confidential. The content of the automated email also contained nothing that could be considered secret or otherwise proprietary: there was no disclosure of the content, methodology, identity of any participants in the survey (other than Ms. Gjovik), or any of the survey's findings. The posted image of the email merely noted what was already known

125 Park Avenue, 25th Floor, New York, NY 10017

240

to the public: Apple was conducting 3D scans of human ears to "collect representative ear geometry data across age, gender, and ethnic groups" and to benefit "audio research efforts and better our understanding of ear geometry variance." It is no secret that Apple has been scanning a wide range of human ears to perfect its various AirPods products. In fact, Apple's Vice President of Product Marketing, Greg Joswiak, spoke publicly about the 3D ear scans over a year ago:

> "We had done work with Stanford to 3D-scan hundreds of different ears and ear styles and shapes in order to make a design that would work as a one-size solution across a broad set of the population," Joswiak says. "With AirPods Pro, we took that research further – studied more ears, more ear types. And that enabled us to develop a design that, along with the three different tip sizes, works across an overwhelming percentage of the worldwide population."

*See* Jeremy White, *The secrets behind the runaway success of Apple's AirPods*, Wired (September 5, 2020), *available at* https://www.wired.co.uk/article/apple-airpods-success.

Accordingly, Ms. Gjovik cannot face restriction in disclosing a non-confidential email about the mere existence of a survey concerning 3D ear scanning (scanning that Apple had already publicly disclosed much earlier) sent to her during the period in which Apple put her on administrative leave. Apple's demand for Ms. Gjovik to remove such content appears, therefore, to be pretextual.

Your September 15, 2021 letter and subsequent email communication also takes issue with image/video that you contend "were generated by a confidential internal Apple application during confidential Apple-internal user studies." Apple holds no copyright to these images, which were not authored by a human. As you are aware, United States copyright law only protects "the fruits of intellectual labor" that "are founded in the creative powers of the mind." *Trade-Mark Cases*, 100 U.S. 82, 94 (1879). Because copyright law is limited to "original intellectual conceptions of the author," Apple would be unable to register any of the images or video generated by the "Glimmer" app since a human being did not create the work. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884). Apple therefore cannot allege infringement of any copyright by Ms. Gjøvik.

To the extent Apple argues that the images taken by the Glimmer app are confidential, they are not marked as such. You also have not alleged how mere images of Ms. Gjøvik, in her home, taken by the Glimmer app, on Ms. Gjøvik's own phone, could quality as confidential and/or

proprietary information under the IPA. For example, your letter fails to acknowledge that the images posted were (a) taken by an automated process running on Ms. Gjøvik's own iPhone and (b) captured her own likeness and portions of her living space.  There can be no doubt that Ms. Ms. Gjøvik is permitted to post to the public her legitimate concerns about images of her, in her home, captured by an automated process, on her own phone.  Additionally, your letter fails to acknowledge that beyond the non-proprietary images Ms. Gjøvik posted, she intentionally rendered unreadable any conceivably non-public information when posting these otherwise non-proprietary images.  Your claims of any violation of the IPA based on the posting of these images appear, therefore, to have no basis in fact or law.

Given Ms. Gjøvik's removal of the content you referred to, coupled with the infirmities of your intellectual property claims in the September 15, 2021 letter, we consider this issue closed, and expect that Apple will immediately cease sending any further inappropriate demands.


Sincerely,

David L. Hecht
Hecht Partners LLP

cc: Erika Heath, Esq.
Ashley M. Gjøvik


*Exhibit: David Hecht's Letter to Apple's Lawyers re: Gobbler & Ear Canals*


553.    On September 15, 2021, Tim Cook announced an unexpected all hands meeting scheduled for September 17, 2021 with all Apple employees. This was unusual. He also provided a way for staff to submit questions beforehand. Numerous people told Gjovik they submitted questions about why Apple was mistreating Gjovik, what Apple was going to do to fix its culture of retaliation, and why Apple had offices on Superfund sites.

554.    On September 21, 2021, Tim Cook sent an email to his staff complaining someone spoke publicly about discussion from the all hands (about pay equity, COVID response, benefits, and other work conditions). Cook said Apple was "doing *everything in our*

*power to identify those who leaked*." Cook said, "*people who leak confidential information do not belong here*."

555.    On September 22 2021, Apple suddenly joined the advisory board of ChemFORWARD, a chemical safety NGO.[226] [Apple had suddenly joined this group on May 7 2021.][227] On October 26 2021, Apple's lobbyists (reporting to Lisa Jackson) suddenly approached the US EPA Chemical Safety & Pollution Prevention program asking for a meeting. On October 27 2021, Apple's ChemFORWARD suddenly partnered with CEPN.[228] On November 2 2021, Apple suddenly got "Electronics Watch" to join their CEPN 'worker safety' group.[229] Electronics Watch includes Gjovik's Occupational Exposure medical doctor, Dr. Robert Harrison, who is in their OHS Advisory Panel.[230]On November 3 2021, Apple co-hosted a chemical safety webinar with its new friends at ChemFORWARD.[231] On November 3 2021, Apple's lobbyists reporting to Lisa Jackson submitted an agenda request to the US EPA Chemical Safety team, requesting a meeting.

556.    Apple notified Gjovik it was mailing her the possessions from her desk and sent a tracking number. Gjovik posted on Twitter the tracking number said the package was about to arrive. On September 29, 2021, another fake Twitter account, "BabyHummingbird," commented to Gjovik via Twitter about the box before she opened it, saying "*Don't open it*!" and included

---

[226] https://twitter.com/ChemForward/status/1308483392170844162;
https://www.chemforward.org/news/apples-art-fong-to-lead-chemforward-technical-advisory-group
[227] https://twitter.com/ChemForward/status/1390773254680350722;
https://www.chemforward.org/news/apple-and-chemforward-collaboration-offers-affordable-verified-data-on-safer-cleaners-to-protect-worker-health
[228] Oct 27 2021, https://www.chemforward.org/news/chemforward-invited-to-become-a-membernbspof-the-clean-electronics-production-network-cepn
[229] Nov 2 2021, https://electronicswatch.org/en/electronics-watch-joins-the-clean-electronics-production-network_2597317
[230] Electronics Watch, OHS Advisory Panel, https://electronicswatch.org/ohs-advisory-panel_2581888
[231] https://www.chemforward.org/news/november-3rd-webinar-recap;
https://twitter.com/ChemForward/status/1466170142589657092

an image from the movie SE7EN that implies it contained a severed head of one of her loved ones.[232]



*Exhibit: The "Severed Head" Post*

557.    BabyHummingbird's Twitter account had just a small number of posts, almost entirely directed at Gjovik. BabyHummingbird also liked posts about Gjovik, including the "don't get Gjovik'd" posts. BabyHummingbird's first "like" was a post from 2014 that said, "Apple's Back, Better than Ever." Under information and belief, "BabyHummingbird" was Apple.



*Exhibit: First "Like" from BabyHummingbird*

---

[232] 18 U.S.C. § 876(c) prohibits mailing "any threat to kidnap any person or any threat to injure the person of the addressee or of another."

558.    On September 30 2021, Gjovik received a box of her personal items, full of broken glass.



559.    On October 1 2021, another fake Twitter account, "FemaleInTech," commented on one of Gjovik's Twitter posts where Gjovik complained she just "*spent 5min pulling a chunk of glass out of the sole of my foot & I'd like to remind everyone that #Apple sent me this box of spite after taking away my health insurance the day I was fired.*" The Apple account replied, "*I think it would also be really impactful to post a picture of your bleeding wounds w/ a tweet calling out their HR people by name. At this point why not shame the individuals there for their unambiguous, documented spitefulness with horrifying photographic evidence!*"  Assumably Apple wanted Gjovik to call out "people by name" as a preemptive defense of individual liability for their actions and wanted a photo to assess liability for the physical harm. Under information and belief, FemaleInTech, is Apple because the account was primarily used to post about and to Gjovik, did not seem authentic, and made several highly suspicious posts/comments.

560.     On October 2 2021, the "FemaleinTech" Apple account attempted to manipulate Gjovik to get access to Gjovik's computer randomly offering to edit XMLs on Gjovik's system. On November 5 2021, the same account attempted to direct Gjovik to a specific 3ʳᵈ party iPhone repair shop, which after realizing the account was Apple, now Gjovik believes was another attempt to modify her devices for surveillance. [California's Consumer Protection Against Computer Spyware makes it illegal for anyone to install software on someone else's computer and willfully or in a deliberately deceptive way to use it for wrongful purposes.][233]

### xvi.     Gjovik Files More Charges: EPA Asks Apple for Status of Corrective Actions at Gjovik's Office; Apple Attacks Gjovik and Lies to the SEC (October 2021)

561.     On October 7 2021, the US EPA sent a letter to Northrop Grumman with a report of the August 29 2021 inspection. The letter notes "the purpose of the [August 19 2021] site visit was for EPA to inspect the following … to assess the potential for vapor intrusion into the building," including:

-   "The sub-slab depressurization (SSD) system that was installed underneath the three connected site buildings that passively vents soil gas vapors to the atmosphere.
-    The building's concrete slab and the April 2015 cracks that where sealed to prevent potential vapor intrusion. The building's concrete slab and penetrations from pipes or seams.
-   The previously installed soil gas sampling vapor ports.
-   …The operation of the HVAC system and the HVAC air venting and intakes on the roof…
-   A review of any post-2015 building modifications or changes to the buildings…"[234]

---

[233] Cal. Bus. & Prof. Code §§ 22947.2 to 22947.4.
[234] US EPA, Re: EPA Site Visit and Vapor Intrusion Field Assessment, 825 Stewart Avenue [sic], Sunnyvale, CA, TRW Microwave Superfund Site (CERCLIS ID# CAD009159088), October 7 2021, https://semspub.epa.gov/work/09/100025885.pdf

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

562.    US EPA also requested a number of corrective actions from Northrop Grumman

and Apple, including fixing the HVAC/vent situation (see exhibit), and locating/fixing several

sub-slab vent ports inside the building (the same ones Gjovik had complained about).[235]

over to support long-term product development operations. EPA also noted that the exposed
concrete floor was present throughout the building with adequately sealed cracks. However,
during the site visit EPA did identify the following items that EPA asks NGC to address.

- **SSD System Vent Pipes:** From Matt Plate's visual inspection on the roof, four of the
  SSDS exhaust vents are approximately 10-feet of the HVAC's intakes vents and lower or
  at a comparable height to the intakes. This distance is an acceptable building code
  distance; however, a distance greater than 10-feet and/or a height that is elevated above
  the building ventilation system components need to be considered as the SSD system may
  vent low concentrations of site contaminants of concern outside, creating the potential for
  contaminates to be pulled into the HVAC intakes and into the building. This scenario and
  potential impacts to indoor air quality need to be evaluated and mitigated and EPA asks
  NGC to provide a proposal to do so. As the interior SSD system vertical vent pipes cannot
  be easily moved and rerouting of piping on the roof may compromise the effectiveness of
  the passive SSD system, consideration needs to be given to extending the height of vent
  pipes. For vent pipes that cannot be extended (e.g., under the east building chiller),
  consideration should be given to rerouting the vent pipes away from HVAC intakes and
  converting the SSD system to an active system with a blower fan.

*Exhibit: October 7 2021 Letter re: SSD System Vent Pipes*

563.    On October 9 2021, Gjovik posted a Twitter thread about Apple and the

Worldwide Loyalty enterprise firing her after she had posted on Twitter about Apple breaking

into someone's home in 2011. Someone posted it on the "HackerNews" forum and quickly a

number of very suspicious account began posting horrible things about Gjovik including a self-

identified current Apple employee (azinman2) calling her "*a nutcase*," and saying she has

"*negative credibility*." Another suspicious account (0des) also defended Apple, condemned

Gjovik, and bolstered the posts of azinman2. Both began accusing anyone who supported Gjovik

as being Gjovik herself and a "*sockpuppet*." Another suspect account joined (n0000d3js) which

not only harassed Gjovik but also defended Apple's break-in of the person's apartment in 2011

[235] Id.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

and said Apple's actions "*didn't break the law*."[236] Under information and belief all of these accounts were Apple.

564.    Posts in support of Gjovik were quickly flagged and removed, while posts Gjovik reported as harassment were ignored and left up, and when Gjovik tried to defend herself in the thread her posts were quickly flagged and removed by moderators. Under information and belief Apple has moderator/admin control over HackerNews threads. In that HackerNews thread, people then complained about the suspect accounts writing "*Are you Global Security or something? What makes you so invested in defending the wealthiest company on earth*?" Another posted, "*It's actually quite concerning and even a little suspicious that so many defamatory comments are linking criticism of the workplace with mental illness.*" Another added, *'If Apple is actually sending people to employee's homes, what's to stop them from manipulating discourse on forums such as this? They certainly have the money and the expertise to do it. If this is at all a concern, what is this forum doing to prevent that from happening*?" Another added, "*They definitely do this on MacRumors just look at any comment section there.*" Another added, "*This thread looks very sus. The way few accounts are defending apple and accusing the employee raises more eyebrows on apple.*"[237]

565.    Gjovik saw all of this playout in real time as she was tagged by HackerNews and read the comments as they came in. Gjovik posted on Twitter complaining it was clear Apple Global Security was behind many of the comments and they were further retaliating against her for the thread she posted about Apple's misconduct.

566.    On October 12 2021, Gjovik filed two additional NLRB charges Apple, alleging Cook's email, and Apple's NDAs and employment policies (including surveillance) violate federal labor laws in numerous ways outlined with footnotes in her brief, Gjovik's charges were

---

[236] HackerNews, https://news.ycombinator.com/item?id=28811746
[237] HackerNews, https://news.ycombinator.com/item?id=28811746

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

covered in the Press with quotes from prior NLRB leadership commenting on the strength of Gjovik's case. (The NLRB issued a decision of merit agreeing with Gjovik on January 29, 2023).

567.    Implied by the OMM letter, Apple's proffered reasons for Gjovik's termination were so farfetched and pretextual, a detailed article was written about exactly that, titled "*Apple Wanted Her Fired. It Settled on an Absurd Excuse.*"[238] The October 14 2021 articles explained the background of Gjovik's whistleblowing about toxic waste, harassment, and cover-ups as it was clearly the reasons for Gjovik's termination.



*Exhibit: The Oct 15 2021 Article*

---

[238] Dell Cameron, *Apple Wanted Her Fired. It Settled on an Absurd Excuse*, Gizmodo, Oct 14 2021, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

568.    On October 14, 2021 a discussion board account, "SlushierCupid", apparently created to celebrate Apple's legal win over Epic Games before transitioning to harassing Gjovik, posted in the comments for the "*Absurd Excuse*" article: "*This woman's tweets show she is both unhinged and a narcissist. I don't buy her story. What I do buy is that she is probably difficult to get along with and doing what many culturally brainwashed individuals do these days and play the victim card, hoping for attention and a payout.*" Commentors replied saying "*you're definitely not an Apple employee or contractor trying to smear her,*" and "*Apple's crisis team is on the move, I see!*" "SlushierCupid" added "*She attends law school, she knew she was going to be fired for whatever ridiculous reason Apple gave. I knew my brother would punch me when I irritated him non stop.*" Other accounts responded calling "SlushierCupid" an "*apple shill*" and noted all their pasts posts were "*in defense of [their] corporate master.*"

569.    On October 15 2021, "SlushierCupid" continued to post replies harassing and defaming Gjovik, now increasingly referencing Gjovik's apartment next to the 3250 Scott Blvd factory and Gjovik's Apple office on a Superfund site. They posed, "*I can not find a piece of evidence from any environmental agency or environmental non-profit who said her claims were valid either for the "poisoning" at work or the "poisoning" at home. If I am wrong, please point it out.*"

570.    Under information and belief SlushierCupid was a member of Apple Global Security team and Worldwide Loyalty enterprise posting on behalf of Apple. Under information and belief SlushierCupid was involved in or aware of Apple's activities starting around August 2021 with joining chemical safety and environmental health NGOs in order to prevent them from supporting Gjovik. Under information and belief SlushierCupid was involved in or aware of Apple's conspiracy with the US EPA to cover-up what happened at Gjovik's office.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

571.     On October 16 2021, Apple requested a "no-action" letter from the US SEC related to a shareholder proposal requesting a vote on a request for Apple to conduct a risk assessment on its use of NDAs to cover-up unlawful conduct. Apple's letter to SEC failed to mention they were actively under investigation by the NLRB over their NDAs, based on Gjovik's charges. Apple instead claimed its NDAs and use of NDAs was legal and ethical, so there was no reason to think there was any issue and thus there was no need to have a vote. Gjovik alleged this was fraud.[239]

572.     Around October 26 2021, Appleseed messaged one of Gjovik's friends and told them Gjovik was "*lying about a bunch of stuff,*" "*lied to the public, to the government, about what happened to her.*"

573.     On October 26 2021, Gjovik filed an SEC whistleblower tip alleging shareholder fraud when Apple had filed a no-action letter trying to block a shareholder vote about Apple's use of overly restrictive NDAs. Apple's response had completely omitted the NLRB was actively investigating Apple's policies based on a NRLB charge Gjovik had filed a week prior. Apple was actively trying to suppress shareholder voting about an issue it knew it was in trouble over and tried to mislead the SEC in order to prevent that vote. As noted, the NLRB confirmed in January 2023 the policies did violate US labor laws. On October 26 2021, Gjovik then emailed her NLRB investigator to complain that Apple was "*literally lying to the SEC*". Gjovik wrote that the situation at Apple was like *"Waco meets Enron."*

574.     On November 16 2021, Gjovik asked US Department of Labor to confirm if they included CERCLA, SOX, and other relevant statutes in her case, in addition to OSHA Act. US Department of Labor (Andrea Diangco) then suddenly tried to dismiss her entire case and

---

[239] *Hawran v. Hixson* (2012) 209 CA4th 256, 280-281, 147 CR3d 88, 109 (collecting cases) – (Corporation's press release was not a "fair report" of an SEC investigation where it did not report on, summarize or describe the SEC proceeding or investigation, the history of that proceeding, or any communications made in the course of the investigation and where nothing in the release provided the "gist" or "sting" of the SEC's charges or proceedings.)

claimed it was never opened, despite FOIA documents revealing it was open and the investigator, Andrea Diangco, was making false and misleading statements.

575.    On November 23 2021, US EPA Chemical Safety replied to Apple's lobbyists and confirmed the agenda which included: the Chemical Safer Choice Partner of the Year Award. On November 29 2021, Lisa Jackson, prior head of the US EPA and current Apple VP of Lobbying, emailed the current head of the US EPA a letter of recommendation for the person she wanted to run US EPA's Region 9 office, which oversees the majority of Apple's federally regulated offices and facilities. Jackson sent the letter from her Apple work email account.



**Message**

| | |
|---|---|
| **From:** | Lisa Jackson [lisa_jackson@apple.com] |
| **Sent:** | 11/29/2021 9:52:56 PM |
| **To:** | Regan, Michael [Regan.Michael@epa.gov] |
| **CC:** | Utech, Dan [Utech.Dan@epa.gov] |
| **Subject:** | Recommendation for [Ex. 6 Personal Privacy] Region 9 |
| **Attachments:** | [Ex. 6 Personal Privacy] |

*Exhibit: Lisa Jackson's Letter of Rec Email – 11/29/21*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                          DECEMBER 21 2023

## Lisa P. Jackson

Ex. 6 Personal Privacy

November 29, 2021

The Honorable Michael S. Regan
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC  20004

Dear Administrator Regan:

I am writing to express my strong support for the nomination of [Ex. 6 Personal Privacy] to the position of Region 9 Administrator at the U.S. Environmental Protection Agency.

[Ex. 6 PP] is a collaborative leader who has dedicated [Ex. 6 PP] career to protecting human health and the environment. [Ex. 6 PP] has demonstrated a sustained ability to tackle complex challenges and has strong relationships, respect and trust across a number of stakeholders in Region 9 and nationally.

If selected as Region 9 Administrator, [Ex. 6 PP] is committed to centering environmental justice communities in the Region's work, and clearly understands the need and opportunities for partnership between states and the federal government in implementing goals around climate, equity, justice, and jobs. I am confident that [Ex. 6 PP] will work to ensure stakeholders across all states in the region have an equal voice and seat at the table.

I believe that [Ex. 6 PP] experience, expertise, relationships, and values will position [Ex. 6 PP] to be a great fit to lead EPA's Region 9. I fully support [Ex. 6 PP] nomination and look forward to working with [Ex. 6 PP] to advance environmental justice and increase access to reliable, clean energy in this critical region.

Sincerely yours,

Lisa P. Jackson

Cc: Dan Utech, EPA Chief of Staff

ED_013249C_00000003-00001

*Exhibit: Lisa Jackson's Letter of Rec– 11/29/21*

576.     On December 1 2021, Diangco finally contacted US EPA about Gjovik's case and asked, "*did Gjovik report any CERCLA violations to you*?" US EPA (Chip) then met with US DOL (Diangco) to discuss Gjovik's complaints and the office. On December 12, 2021, the US Department of Labor docketed Gjovik's Whistleblower Protection Cases.

577.     On December 8 2021, Gjovik received an email from her website webform from a "Corporate" IP address based in Fremont and registered with Hurricane Electric. The email from "The Messenger," said, "*Remember what Jesus Christ taught about retaliation. You are retaliating back at Apple*." The email then quoted Matthew 5:38-42 from the Christian Bible. Under information and belief, the email came from Apple at or around Apple's first manufacturing facility in Fremont (48233 Warm Springs Blvd). This address is now listed as a Hurricane Electric data center.[240]

578.     On December 13, 2021, Appleseed posted that Gjovik's claims were "*full-out fabricated nonsense that borders conspiracy*." On December 30, 2021, Appleseed posted that Gjovik has "*narcissistic personality disorder*" and urged people to ignore her.

579.     A December 13 2021, Financial Times article was published on December 13, 2021, which said:

> "The labour department will examine whether Apple retaliated over claims about occupational safety and hazardous waste management liability, alongside a third allegation that falls under the Sarbanes-Oxley Act, or Sox, which sets out the rules for financial record keeping. Gjovik pointed to a potential conflict of interest regarding Apple board member Ronald Sugar, chair of the audit committee, as he was previously chief executive of Northrop Grumman, the defense company responsible for the dump — and maintenance — of waste

---

[240] NY Times, "Apple *Computers Used to Be Built in the U.S. It Was a Mess.*," Dec 2018, https://www.nytimes.com/2018/12/15/business/apple-california-manufacturing-history.html; CultureofMac, *A brief history of Apple's misadventures in manufacturing: Part 1*, https://www.cultofmac.com/616044/a-brief-history-of-apples-misadventures-in-manufacturing-part-1-cook-book-leftovers/

materials beneath the Sunnyvale office. Sugar could not be immediately reached for comment. "Gjovik's case was "especially unusual" and noteworthy because of the three separate statutes or laws that may have been broken, said Michael Duff, a former attorney at the National Relations Labor Board. "Federal agencies exercise what in the context of criminal law is known as prosecutorial discretion," he said. "They are very careful of what cases they move forward because they have scarce resources, so they must have a strong reason to believe they can prevail."[241]

580.     On December 13 2021, US EPA (Chip) sent US DOL (Diangco) a copy of the October 7 2021 report about the August 19 2021 inspection of Gjovik's office. At this time Gjovik still did not know there was an inspection by US EPA due to her complaints. Diangco would never tell Gjovik about it or disclose that she knew about it. Chip would finally tell Gjovik in May of 2022.

581.     On December 14 2021, the US DOJ contacted Gjovik confirming receipt of a complaint she sent to their antitrust division in November of 2021.

582.     On December 15 2021, Apple (represented by Art Fong) was part of a chemical safety webinar which discussed the dangers of certain 'restricted substances' including Benzene, Toluene, Methanol, TCE, and NMP (N-Methyl-Pyrrolidone).[242] The presentation discussed Apple's new program "Towards Zero Exposure" where it claimed to protect workers from chemical exposure. Apple noted "Participating Organizations" in the project which included "Electronics Watch" (Gjovik's chemical exposure doctor, Dr. Harrison); "ICRT" (the Silicon Valley chemical/labor activist Ted Smith), and Santa Cara University (Gjovik's law school).

---

[241] Financial Times, "*Apple faces probe over whether it retaliated against whistleblower*," Dec 13 2021, https://www.ft.com/content/973aae8d-21d9-4e84-8912-ead071c7935d
[242] https://www.greenscreenchemicals.org/images/ee_images/uploads/resources/Safer-Cleaners-for-Electronics-Slides-20211215.pdf

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

583.    Under information and belief, Apple's decision to join these groups and participate in chemical safety/labor projects was part of a formal public relations/legal strategy devised by Apple to capture the NGOs and activists that would hold them accountable if it came out what Apple was doing, to continue making false statements about their practices but now for a larger audience, and to create 'talking points' for their defense – and for applications to additional programs with the same goals noted above. When Apple applied for the 2023 US EPA chemical safety Safer Choice Partner of the Year award, Apple cited evidence of why it deserves the award as its partnerships with ChemFORWARD, CEPN, and other groups it joined in 2021.[243]

584.    On December 20 2021, the US EPA responded to an IndependentUK reporter who had reached out asking about Gjovik and her office. US EPA said exposure was under control at the site and failed to mention the inspection or ongoing corrective actions.

585.    On December 26 2021, Gjovik posted on Twitter about her intention to pursue a Dodd-Frank and witness retaliation claim against Apple, citing 18 USC § 1513.[244]

586.    On December 29, 2021, Appleseed messaged one of Gjovik's friends claiming Gjovik was "*perjuring herself.*" On December 30, 2021, Appleseed messaged once of Gjovik's friends saying Appleseed was "*one of Apple's witnesses against [Gjovik]*".

587.    On December 31 2021, someone began making problematic edits to Gjovik's Wikipedia article that had been created only the day prior. The edits included specific harassment Gjovik had received from Appleseed and Gjovik quickly realized the account was

---

[243] Note: In September 2022, Apple was caught funding an "astroturf lobbying group" that acted as if it was independent but was influenced by Apple and made statements in support of Apple's interests, even including amicus briefs. https://gizmodo.com/apple-lobby-app-developers-1849554671
https://twitter.com/ashleygjovik/status/1696344092265845100
[244] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1434820337166786563

Appleseed operating under an alias of "SquareInARoundHole" which is a reference to a famous Apple commercial. Appleseed would deny it was her and even claim Gjovik's complaints about Appleseed's harassment were harassing Appleseed. In November 2022, Wikipedia administrators confirmed SquareInARoundHole was indeed Appleseed and she was banned.

588.    On January 9 2022, Gjovik posted a Twitter thread summarizing what happened with Apple. Gjovik reflected: "*In July [2021], I was like, you know, it seems weird that you're doing RICO shit to me like witness intimidation about this office… Is this your normal MO or is it because apparently the CEO of the corp that dumped those chemicals is now on the Apple board of directors? Maybe also because the person who ran the US EPA reports to Tim cook now? They didn't like any of that. I filed some SEC charges about it. I filed a lot of charges. Then one eventful day, a Russian interrogator from Apple's workplace violence team said hello*"

589.    On or around January 10 2022, Gjovik filed complaints about witness intimidation and witness retaliation to NLRB, US Department of Labor, and California Department of Labor. Gjovik posted on social media it was filed and suggested Apple send cease & desist, and document retention notices to a number of managers and employees including Vyas, Mondello, and Appleseed.[245] Gjovik drafted several legal documents on the matter including a legal brief, image exhibits, and a detailed dossier with the text of all of the accounts and posts Gjovik believed to be Apple, not only quoting the posts in question, but positioning the posts in larger threads/conversations, and preparing summaries of red flags for the accounts (like created only to harass Gjovik). Gjovik also organized the most problematic posts/comments by type of propaganda.

---

[245] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1481760216978837505; https://twitter.com/ashleygjovik/status/1481026531438706689

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

590.     On or around January 10 2022, Appleseed filed an FBI report against Gjovik charging Gjovik with "criminal extortion and blackmail."[246]

591.     Around this time Appleseed filed a false report to the FBI accusing Gjovik of "*criminal extortion and blackmail*" and apparently reported Gjovik to a police department. [247]

592.     On January 11 2022, Gjovik was notified by Twitter that someone reported Gjovik's Twitter posts (complaining of harassment) to German law enforcement.

593.     On January 11 2022, Gjovik posted about her latest NLRB charge:

- Ashley Gjovik: *Hi @Apple, #Apple, @tim_cook Just to be clear, my Jan 11 #NLRB filing will name the following Apple managers (& ICs as their/your agents), as known participants in this 5 month harassment & defamation campaign against me, in retaliation for PA & filing NLRB charge on Aug 26*
- Ashley Gjovik: *I recommend you this send the Document Retention notices + some sort of C&D missive to them now. Known Managers: Ricky Mondello, Faye Garfinkle Suspected Mgs: Rob Marini, Brad Reigel Known ICs: [Appleseed], Shantini Vyas, Kev Kitchens, Amanda Harrison Sus ICs: TBD*
- Ashley Gjovik: *First order of business for the C&D is to tell them to stop reporting me to local and federal law enforcement, and domestic and foreign governments in bad faith, for meritless, retaliatory accusations. (Otherwise this is def how i'm getting the RICO charge, y'all)"*

594.     In January-February of 2022, Apple (including Appleseed) reported a number of Gjovik's social media posts and had the content removed. This included a Scribd document consisting of Apple's workplace surveillance policies, a legal memo Gjovik wrote documenting Apple's witness intimidation and retaliation,[248] and photos of Brad Reigel and Rob Marini. The

---

[246] *C.S. v Gjovik,* 22-2-03849-7 SEA, (Appeal of Court of Limited Jurisdiction – Reversed & Vacated), King County Superior Court, State of Washington (2022); *C.S. v Gjovik,* 22CIV01704KCX, King County District Court, Court of Limited Jurisdiction, State of Washington (2022).
[247]
[248] DELETED: Ashley Gjovik v Apple Inc; Evidence Report, Link: https://www.scribd.com/document/555822358/Ashley-Gjovik-v-Apple-Inc-Propaganda-

latter two removals were confirmed by Appleseed to be a joint effort between Apple and Appleseed.[249] Gjovik did not know it was Appleseed orchestrating the deletions of her legal filings posted on Scribd until later, but at that time, Gjovik already knew to blame Apple: "*So if a federal witness is complaining to fed law enforcement about witness intimidation & threats by Apple Inc in violation of numerous laws & she's sending gov agencies Scribd links of her filings & evidence & Apple appears to be deleting her evidence OBSTRUCTION OF JUSTICE?*"

595.    In January 2022, Gjovik contacted a VICE reporter Lorenzo Franceschi-Biccierai. Gjovik told him that she just discovered an article he wrote about Apple in July 2021 about "Apple IP leakers" spying on Apple employees for Apple,[250] and that she thought Apple was doing something similar with current labor organizing. Gjovik complained to Lorenzo that Appleseed worked for Global Security and one of the few other named persons involved in Appleseed's supposed employee union organizing was a known "IP leaker" named "StellaFudge."

596.    Appleseed apparently asked StellaFudge to set up a Discord chat service where Apple employees could go to strategize organizing and unions at Apple. StellaFudge had previously "leaked" prototypes and other information that the VICE articles had said would be forgiven by Apple if the person then becomes a spy for Apple against Apple's employees. While hosting this labor organizing Discord server, StellaFudge continued to "leak" new IP, including prototype hardware.

597.    Under information and belief Apple has been spying on the labor and union organizing of its employees in the Discord server via access granted by StellaFudge.  Under

---

Campaign-Final-v1; Ashley Gjovik v Apple Inc; Evidence Report, Link: https://www.scribd.com/document/557503681/Gjovik-v-Apple-Intimidation-Campaign-Evidence-Report
[249] See, email from Appleseed to Gjovik on February 5 2022.
[250] VICE, *Apple Tells Leaker to Snitch on Sources or It Will Report Them to the Police*, July 2021, https://www.vice.com/en/article/dyv5bm/apple-tells-leaker-to-snitch-on-sources-or-it-will-report-them-to-the-police

259

information Gjovik's messages to Lorenzo about this were seen or known about by Apple, and Gjovik's discovery about this was one of the reasons Apple swiftly obtained a gag order against Gjovik.

598.    On January 25 2022, Gjovik emailed the NLRB about her January 10 2022 witness intimidation charge and attached a 77-page rough draft of the Evidence Report.



*Exhibit: Gjovik Notifies NLRB of Incoming Witness Intimidation Allegations & Report*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                DECEMBER 21 2023

---

**U.S. NATIONAL LABOR REVIEW BOARD**
COMPLAINT AGAINST APPLE INC. | HARASSMENT DRAFT V1
CHARGE: CA-288816

**Sept 1 8:27pm – Public Twitter.com Post**[46]
- **Shantini Vyas**: Okay at the risk of *gestures wildly at Twitter*. Apple is a big company. It's got some problems. But it's a great place to work for a lot of people. A certain employee has made it their mission to bring down Apple through whatever means necessary. Including straight LIES.
  - **Shantini Vyas:** This is about a person whose name starts with "A."
  - **Shantini Vyas:** Did they suffer abuse? Not my place to speculate. However, they have lied about actions Apple has taken. They have misled people by leaving out key details. They find new angles to make all of the Apple out to be the Big Bad Guy. The goalposts move hourly.
  - **Shantini Vyas**: They say things like: Apple violated my private by accessing my data. Full picture: Apple accessed data from an Apple-owned prototype device that comes with no expectation of privacy.
  - **Shantini Vyas**: This person has taken the spotlight for themselves and deliberately undermined others' concerted efforts to improve and challenge the company. Through their actions this person contributes to an insidious narrative: that women make things up and are trying to get attention.
  - **Shantini Vyas**: This is so damaging to other women. To those afraid to speak up. By creating bogus, unsubstantiated filings with the DOJ and other regulatory bodies, this person has just endangered the future cases of people with legitimate claims.
  - **Shantini Vyas**: This person has a lot of support. They've gained it by taking advantage of the anger and frustration of other people. It's predatory. They weaponize their

*Exhibit: Example Page from 1/25/22 Draft of Report*

599.   On January 31 2022, Gjovik posted on Twitter that she planned to submit her legal filings about the witness intimidation to the US Department of Justice, in addition to the whistleblower and labor agencies. Gjovik commented that Apple's actions were "criminal."[251]

600.   On January 31 2022, Appleseed sued Gjovik in a Washington state court requesting an anti-harassment restraining order.[252] Appleseed cited Gjovik's Evidence Report and January 10 2022, NLRB charge against Apple on her petition, writing under other pending litigation: "*NLRB Charge CA-288816 – charge against Apple Inc which contains false/misleading information about me made in bad faith by Ashley Gjovik.*" Appleseed repeatedly mentioned Gjovik's federal legal filing about the witness intimidation.

---

[251] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1488305820496322560
[252] *C.S. v Gjovik,* 22-2-03849-7 SEA, (Appeal of Court of Limited Jurisdiction – Reversed & Vacated), King County Superior Court, State of Washington (2022); *C.S. v Gjovik*, 22CIV01704KCX, (Vacated) King County District Court, Court of Limited Jurisdiction, State of Washington (2022).

601.    After filing the retaliatory lawsuit against Gjovik on January 31 2021, Appleseed then posted on her Twitter account several hours later, a photo of an Apple Global Security 'challenge coin.'



*Exhibit: Posted by Appleseed on Jan 31 2022*

602.    Between February 3 - February 9 2022, Gjovik submitted the final draft (ending at version 9) of her legal memo and evidence report (the "Evidence Report") to the government agencies looking into her complaints.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17  *Exhibit: Gjovik Submits Final Evidence Report to NLRB*

18
19
20
21
22
23
24
25
26
27
28

**Ashley M. Gjovik**
Juris Doctor Candidate & Public International Law Certificate Candidate
Santa Clara University, Class of 2022

For Submission To:
- U.S. NLRB: Region 32 & Office of General Counsel
- U.S. Department of Labor: Whistleblower Protection Program
- U.S. Attorney's Office: Northern District of California
- California DOJ: Office of the Attorney General
- California Department of Labor: DIR Labor Commissioners

**Case No.:**
U.S. Dept of Labor: 9-3290-22-051
U.S. NLRB: 32-CA- 282142, 283161,
284428 & 284441, & 288816
U.S. EEOC 556-2021-00608
U.S. SEC: 16304-612-987-465 & 16353-
506-600-213
CA Dept of Labor: RCI-CM-842830

MS. ASHLEY GJOVIK

             **Complainant,**

    v.

APPLE INC., *et al.*,

           **Respondent.**

**LEGAL MEMO**
Date Action filed: February 7, 2022

**Charges:**
National Labor Relations Act §8(a)(1)
National Labor Relations Act §8(a)(4)
CERCLA, 42 U.S.C. §9610
SOX 18 U.S.C.A. §1514A
OSHA §11(c) 29 U.S.C. §660
18 U.S.C. §1512(a),(b),(c),(d)
18 U.S.C. §1505
18 U.S.C. 1513
18 U.S.C. §371
18 U.S.C. §876
Dodd-Frank 15 U.S.C. §78u-6(h)(1)(A)(iii)
Racketeer Influenced & Corrupt
Organizations Act
Civil Rights Act Title VII, 42 U.S.C. §2000e
CA Labor Code §232.5, §6310, §1102.5,
§6399, & §132(a)

*Exhibit: Gjovik's Final "Evidence Report" Cover Page*

603.     The document included hundreds of pages of direct quotes of public statements and direct messages sent by named people, and anonymous accounts Gjovik was nearly certain were Apple, organized by type of propaganda, and then by date. Appleseed (who's harassment was captured in the report, linked to her official Twitter account) would soon sue Gjovik alleging the Evidence Report was criminal harassment, among other crimes supposedly committed against her by Gjovik.

## ASHLEY GJOVIK V APPLE INC
### INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

### TABLE OF CONTENTS

HARASSMENT CAMPAIGN EVIDENCE REPORT ...................................................................................1

CHARGES ...........................................................................................................................................5
   ASSOCIATED CHARGES & CASES: .......................................................................................................5

SUMMARY .........................................................................................................................................5

REVIEW METHODOLOGY ....................................................................................................................9

UNLAWFUL THREATS MADE BY APPLE INC ......................................................................................10
   THREATS OF VIOLENCE .....................................................................................................................10
   THREATS OF TERMINATION & RETALIATION .....................................................................................12
   THREATS OF BLACKLISTING; RUINING LEGAL CAREER ......................................................................14
   THREATS AGAINST FRIENDS & COLLOGUES .......................................................................................17

APPLE INC'S RETALIATORY ANIMUS ...............................................................................................18
   FORBIDDEN ANIMUS ........................................................................................................................18

APPLE INC'S LAWFARE ...................................................................................................................20
   LAWFARE: THREATS OF LITIGATION; PROSECUTION; BANKRUPTCY; "RUIN" .....................................20
   LAWFARE: COERCION TO WITHDRAW
   CHARGES & COMPLAINTS ................................................................................................................23
   LAWFARE: DOUBT; DISINFORMATION; FALSE ACCUSATIONS ............................................................27

ANTI-UNION & ANTI-LABOR THREATS & COERCION ........................................................................32

DISCRIMINATION DUE TO SEX &/OR DISABILITY ..............................................................................33

EVIDENCE OF PROPAGANDA BY TYPE ...............................................................................................37
   THE BIG LIE (GROSSE LÜGE) + AD NAUSEAM & RATIONALIZATION ....................................................37
   DIVIDE & RULE; BLACK/WHITE FALLACY; FACTIONS .......................................................................42
   VIRTUE WORDS; APPEAL TO PREJUDICE; TRANSFER; MORAL PANIC; FEAR-MONGERING ...................44
   CULT OF PERSONALITY; DEMAGOGUE; APPEAL TO AUTHORITY .........................................................47
   BANDWAGON & INEVITABLE VICTORY ...............................................................................................48
   SPIN; AGENDA SETTING; BURY BAD NEWS ........................................................................................49
   FALSE FLAG OPERATION & REVERSE FALSE-FLAG ...........................................................................52
   AD HOMINEM ATTACKS; SMEARS; CHARACTER ASSASSINATION; FALSE ACCUSATIONS ......................55
   RED HERRING; WHATABOUTISM; STRAWMAN; MINIMIZATION; CHERRY-PICKING ..............................59
   DEMORALIZATION; GASLIGHTING; PROPAGANDA OF DESPAIR .............................................................62

EVIDENCE (CHRONOLOGICAL) ..........................................................................................................63
   LEGEND .........................................................................................................................................63
   AUGUST 2021 .................................................................................................................................64

#### ASHLEY M. GJØVIK
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University

*Exhibit: Gjovik's Final Evidence Report – Table of Contents 1*

**ASHLEY GJOVIK V APPLE INC**
INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

SEPTEMBER 2021 ..................................................................................98
OCTOBER 2021 ....................................................................................174
NOVEMBER 2021 .................................................................................196
DECEMBER 2021 ..................................................................................208
JANUARY 2021 .....................................................................................235
FEBRUARY 2021 ...................................................................................271

APPENDIX I: CAST OF CHARACTERS (PARTIES)........................................**298**
EMPLOYER (MANAGERS/SUPERVISORS) .....................................................298
EMPLOYEES ACTING AT DIRECTION OF APPLE INC .......................................300
AGENTS ACTING AT DIRECTION OF APPLE INC..............................................306
APPLE INC: AGENTS FOR PROPAGANDA .......................................................307

APPENDIX II: RETALIATORY MEMES ........................................................**323**
APPENDIX III: BABY HUMMINGBIRD ........................................................**326**

*Exhibit: Gjovik's Final Evidence Report – Table of Contents 2*

604. Gjovik's Evidence Report includes an introduction to the "Evidence of Propaganda by Type" section where she discussed Tom Moyer. Gjovik wrote, *"Apple's Head of Global Security & Crisis Management, Thomas Moyer, spent four years as an U.S. Navy Intelligence Specialist from 1988 to 1992, including the Cold War & Operation Desert Strom…Moyer then obtained a Bachelor degree in "Rhetoric."*

**ASHLEY GJOVIK V APPLE INC**
INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## EVIDENCE OF PROPAGANDA BY TYPE

Apple's Head of Global Security & Crisis Management, Thomas Moyer, spent four years as an U.S. Navy Intelligence Specialist from 1988 to 1992, including the Cold War & Operation Desert Strom.[232] The U.S. Navy describes the role of "Intelligence Specialist" as collecting intel on everything from data on foreign cultures to enemy movements to current weather forecasts; then, using it to create cohesive intelligence briefings for high-ranking Navy officials.[233]

Moyer then obtained a Bachelor degree in "Rhetoric," followed by a Juris Doctorate. Berkley describes their Rhetoric program as *"Through its emphasis on the history and theory of rhetoric, the department provides an understanding of the format of contemporary theories of argument and interpretation as well as an opportunity, within this framework, to explore the role of persuasion in pragmatic and aesthetic contexts."[234]*

### THE BIG LIE (*GROẞE LÜGE*) + AD NAUSEAM & RATIONALIZATION

*The Big Lie: a gross distortion or misrepresentation of the truth. The repeated articulation of a complex of events that justify subsequent action. The descriptions of these events have elements of truth, and the "big lie" generalizations merge and eventually supplant the public's accurate perception of the underlying events. The German expression was coined by Adolf Hitler, when he dictated his 1925 book*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

*Exhibit: Evidence Report – Propaganda Introduction*

605.     February 2 2022, Appleseed posted on Twitter that *"[She has] never sued anyone, nor been part of a lawsuit."* Appleseed had just sued Gjovik three days prior. Assumably Appleseed viewed her lawsuit against Gjovik as being filed by Apple against Gjovik, and she simply initiated the proceedings for Apple / at Apple's request.

606.     Gjovik had informed the California EDD of the circumstances she was terminated under, and that Apple never provided her the exact reasons for her termination. Gjovik informed the EDD of her government cases against Apple and of the general public opinion that her termination was retaliatory. However, on February 4, 2022, Gjovik received a Notice of Determination from California EDD denying her Unemployment Insurance, citing disqualification under § 1256, explaining that she will not receive benefits because Apple alleges, they terminated her due to misconduct as she *"broke a reasonable employer rule."* Gjovik appealed. Upon receipt of the case history, Gjovik saw her interview with the EDD agency was never recorded, and EDD instead falsely claimed Gjovik never responded.

607.     Under information and belief, EDD deleted the record of the call, or never made a record in the first place, conspiring with Apple against Gjovik.

608.     Appleseed sent Gjovik a lengthy email on February 5, 2022 (over 3,000 words) making false accusations against Gjovik, unlawful demands of Gjovik, threats against Gjovik and demanded Gjovik withdraw allegations and evidence about Appleseed from Gjovik's federal charges against Apple (charges about obstruction of justice & witness tampering). Appleseed in great hostility told Gjovik she believed one of Gjovik's SEC Whistleblower filings: *"contained absolutely no material information for shareholders."* Appleseed informed Gjovik she reported Gjovik to the FBI, and also told Gjovik that she reported Gjovik to Apple for Gjovik

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                                    DECEMBER 21 2023

complaining that Apple was trying to make her kill herself, and that Apple could have Gjovik

assassinated, which Appleseed complained was "*extremely harmful*" to her and Apple.



*Exhibit: Appleseed's 2/5/2022 Email*

609.    On February 5 2022, Appleseed posted on Twitter claiming the NLRB accused

Gjovik of extortion and told Appleseed to report Gjovik to the FBI (which she also testified at

the ex parte hearing on January 31 2022, and which the NLRB fervently denied) and Appleseed

later blamed on an illegal drug relapse. In Appleseed's posts she mentions Gjovik is a federal

witness. Appleseed then claimed "*multiple people*" were reporting Gjovik to Gjovik's law

school at Santa Clara University and claimed "*the authorities had to get involved*" with Gjovik.

> In my conversation with the federal agency about what
> occurred, and to avoid disparagement and defamation, I
> told them matter-of-factly what happened and they
> recommended I report this person to the FBI for extortion.
>
> Being a witness does not give you a license to abuse.
>
> 11:57 AM · Feb 5, 2022 · Twitter Web App

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                DECEMBER 21 2023

*Appleseed's February 5 2022 Twitter Post about NLRB*

Multiple people reported this person for their behavior to their University as far as I know, and the agencies currently involved do not know what to do as they've never had this happen in nearly 100 years. It's disturbing that the authorities have to get involved.

12:01 PM · Feb 5, 2022 · Twitter Web App

*Appleseed's February 5 2022 Post about SCU*

610.    Gjovik refused to withdraw any federal charge, allegations, or evidence – and protested on Twitter that Appleseed was contacting her again despite Gjovik's repeated request Appleseed cease all communication with her.

611.    On February 7 2022, Appleseed posted on Twitter that she understood her lawsuit was meritless, saying "*the current procedure for getting aid in this requires that the abuser has published 'non-protected' information, such as medical or other private information, and ignores the intent and impact of repeated malicious harassment."* On February 11 2022, she added the lower court judge explained to her the supposed "*harassment was protected speech*." On February 12 2022, she added "*I was denied a Temp anti-harassment order (which I expected due to the physical distance)."*

612.    Joanna Appleseed, on behalf of Apple Inc tried numerous times (including January 7th - 8th 2022 and February 5th, 2022) to coerce Gjovik to withdraw, retract, or otherwise stop a Wikipedia Arbitration Committee investigation into an account harassing Gjovik via Gjovik's Wikipedia article and which Gjovik alleged to be Appleseed or someone on Apple or Appleseed's behalf, but either way acting at the direction of Apple to smear and intimidate Gjovik. Wikipedia banned Gjovik and refused to tell her why, but later admitted 'because she filed an NLRB charge against Apple.'

### xvii.    Gag Orders & Missing" Documents" (February-March 2022)

613.    On February 8 2022, Gjovik asked the US EPA FOIA team assigned to her Apple/825 Stewart Drive FOIA requests, if anyone was investigating her 2021 complaints about 825 Stewart Drive. The lawyers who report under Andrew Helmlinger claimed that California EPA was investigating the federal Superfund site. Gjovik complained that made no sense but the lawyers would not clarify further.

614.    It was the US EPA who was investigating. These lawyers who directly misled Gjovik reported to Helmlinger, who is married to an Orrick, Herrington, & Sutcliffe Partner, Robyn Helmlinger. (by now Orrick, via Jessica Perry, was already retained by Apple to defend Apple on Gjovik's US Department of Labor case).

615.    On February 9 2022, Gjovik sent slightly revised versions of her witness intimidation reports to the NLRB, noting the differences. For Example:

> Legal memo (mostly the same, I think the biggest change was adding Apple's comments about violent anal sex)
> https://www.scribd.com/document/557375216/Gjovik-v-Apple-Intimidation-Campaign-Legal-Memo
>
> -Ashley

*Exhibit: February 9 2022 Updates for NLRB*

Gjovik also testified to the NLRB on February 10 2022.

616.    On February 11 2022, another fake Twitter account, FirstnameBunchofnumbers (@FirstNa47437596) began harassing Gjovik about Gjovik's charges against Apple and Appleseed's lawsuit against Gjovik. The account posted a variety of attacks over a week or so, including:

> p.   Can you still be admitted to the bar if you have had an anti-harassment judgement filed against you? Asking for Ashley Gjovik.  [Photo of young girl at computer

*drinking soda and smiling mischievously] link:*
*https://www.calbar.ca.gov/Admissions/Moral-Character/Guidelines*

q.   *If they read her TL they see that she's a nutjob and can't even win a case on Twitter or Wikipedia, so they probably aren't much concerned about her winning in a court of law.*

r.    *Cyberbullying is NOT Whistleblowing. In fact, neither is reporting the company to itself. That's called internal complaining, and you don't get accolades for it.*

s.   *honestly cannot believe this is being allowed to go on in public. She needs a conservatorship or something. Watching her go downhill live on Twitter seems irresponsible, but she won't listen to anyone. Where is the family to step in and help?*

t.    *You should probably get a clue that if Twitter doesn't even care about the alleged "wrongs" perpetrated against you that a court of law probably isn't going to either.*

617.    Gjovik was served for Appleseed's lawsuit around noon on February 14 2022, for a February 15 2022 court date. On February 15 2022, Appleseed submitted a statement to the Washington state courts saying she complained about Gjovik to the FBI and also to the Chief Security Officer of the National Labor Relations Board, the previous Chief of Physical Security at The White House and a Security Manager at the Department of Defense.[253]

618.    In the February 15, 2022, testimony Appleseed also claimed, without any evidence to support prima facie elements of the charges, that Gjovik committed "*criminal cyber-harassment, blackmail, and extortion.*"

619.    Gjovik contacted Bud Porter at the Santa Clara District Attorney's office about the developments with Apple, complaining about witness intimidation and witness retaliation on February 21 2022, and December 15 2022.

620.    Porter said it is generally up to the government agencies to refer cases to the District Attorney's office for prosecution, so Gjovik would need US NLRB, US EPA, or US Department of Labor to refer the case. Gjovik asked the agencies for DOJ referral repeatedly,

---

[253] *C.S. v Gjovik,* 22-2-03849-7 SEA, (Appeal of Court of Limited Jurisdiction – Reversed & Vacated), King County Superior Court, State of Washington (2022); *C.S. v Gjovik*, 22CIV01704KCX, (Vacated) King County District Court, Court of Limited Jurisdiction, State of Washington (2022).

but they ignored her and some of them kept intimidating her themselves (i.e., US Department of

Labor). Gjovik complained to Porter that the agencies were "*complicit in the cover-up*."

621.    On February 22 2022, Appleseed posted on Twitter that Apple employees *"in*

*[Apple] Global Security inform [her] when they see anything in reference to [her], or what*

*reasonable seems like it is referencing [her]."*

> How do I know? Well, for one thing, some of them are cited in various
> documents they've collected, and some quiet whistleblowers in Global
> Security inform me when they see anything in reference to me, or what
> reasonably seems like it is referencing me.
>
> 3:27 PM · Feb 22, 2022

*Exhibit: Global Security 'whistleblowers'*

622.    Appleseed admitted she was in friendly contact with Apple Global Security at

least through February 2022, even after quitting in November 2021. Appleseed is clearly part of

the Worldwide Loyalty enterprise, even after she left employment at Apple.

623.    Under information and belief, Apple Global Security was surveilling Gjovik's

public comments and attempting to incite Appleseed to threaten, intimidate, and coerce Gjovik

by using Gjovik's comments to provoke or frighten Appleseed, and conspiring with Appleseed

about how Appleseed would then threaten, intimidate, and coerce Gjovik and directing or

guiding her actions towards Apple's interests.

624.    On March 1 2022, a Washington state Judge in a court of Limited Jurisdiction

ruled and granted the restraining order against Gjovik and demanded Gjovik not speak or write,

publicly or privately, about the ex-Global Security employee, Gjovik's Apple cases (where they

complain of threats and harassment from Appleseed or Appleseed's associates), or anything else

related to that employee for five years (until 2027) with the single exception of "*testifying*" to the government.[254]

625.    Gjovik would eventually win the appeal, but it took until September 2022 and was not fully dismissed until January 2023.[255]

626.    During the March 1 2022 hearing Gjovik complained repeatedly about witness intimidation and witness retaliation in her legal filings and her testimony.

627.    On March 3 2022, some law firm requested a copy of the Appleseed lawsuit decision against Gjovik. Under information and belief, this was Apple's lawyers requesting a copy, and Apple's lawyers were aware of the lawsuit, if they did not orchestrate it themselves.

628.    Under information and belief, Apple did orchestrate this lawsuit against Gjovik.

629.    On March 4 2022, Apple's Position Statement claims Gjovik never admitted she spoke publicly about the Gobbler app and that Apple received a complaint from an Apple employee (Appleseed) on September 15 2021 where Appleseed gave Apple her private texts with Gjovik and filed a Business Conduct complaint against Gjovik. Apple's Position Statement failed to mention Gjovik spoke publicly about Gobbler starting in August 2021 and the images shared were of Gjovik's recognizable face, so there was no 'gotcha.'

630.    The March 4 2022 Position Statement did make clear that Apple was manipulating Appleseed to attack Gjovik, and Appleseed (who was making a large amount of money off of the image of being a 'labor leader') absolutely did not want it to ever come out that she filed a complaint against Gjovik to help Apple fabricate a paper-trail to justify Gjovik's

---

[254] *C.S. v Gjovik,* 22-2-03849-7 SEA, (Appeal of Court of Limited Jurisdiction – Reversed & Vacated), King County Superior Court, State of Washington (2022); *C.S. v Gjovik*, 22CIV01704KCX, (Vacated) King County District Court, Court of Limited Jurisdiction, State of Washington (2022).
[255] *C.S. v Gjovik,* 22-2-03849-7 SEA, (Appeal of Court of Limited Jurisdiction – Reversed & Vacated), King County Superior Court, State of Washington (2022); *C.S. v Gjovik*, 22CIV01704KCX, (Vacated) King County District Court, Court of Limited Jurisdiction, State of Washington (2022).

retaliatory termination. However, it was now literally illegal for Gjovik to tell anyone about what she discovered.

### xviii.  Apple Lies about Everything; Apple Smears Gjovik; Gjovik Will Be Sent to Jail if She Defends Herself (March 2022)

631.    On March 3 2022, Jessica Perry for Orrick representing Apple, submitted Apple's position statement to US Department of Labor in response to Gjovik's claims of whistleblower retaliation under SOX, CERCLA, and the OSH Act. Apple's response was misleading, fraudulent, harassing, and attempted to obstruct justice. Apple not only failed to mention anything about the August 2021 US EPA inspection of Gjovik's office, but Apple claimed that the last that was heard from EPA was in July 2021 and that Gjovik was being 'unreasonable' about her concerns. Orrick's letter also falsely claimed Gjovik 'wanted to be on leave' and referenced a non-existent email they claim documented Gjovik asking for leave, or referenced an email where Gjovik said she did not want to be on leave but Orrick claimed the opposite. On March 4 2022, Gjovik was provided a copy of Apple's position statement.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

**orrick**

**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015
+1 650 614 7400
**orrick.com**

March 4, 2022

<u>VIA ELECTRONIC MAIL</u>

Andrea Diangco, Regional Investigator
Whistleblower Protection Program
U.S. Department of Labor, OSHA
300 Fifth Avenue, Room 1280
Seattle, Washington 98104
diangco.andrea@dol.gov

Ashley Gjovik, Complainant
1050 Benton Street, Apt. 2310
Santa Clara, California 95050
ashleymgjovik@protonmail.com

**Jessica R. Perry**

E    jperry@orrick.com
D    +1 650 614 7350
F    +1 650 614 7401

Re:    <u>*Ashley Gjovik v. Apple Inc.*</u>, Case No. 9-3290-22-051

Dear Ms. Diangco:

This firm is counsel to Respondent Apple Inc. in the above-referenced matter. This letter is Apple's initial response to the amended complaint ("Complaint") filed by Ashley Gjovik on November 2, 2021. This response[1] contains confidential business information belonging to Apple; accordingly, Apple requests that it be kept confidential and that Apple receive pre-disclosure notification pursuant to 29 C.F.R. § 70.26 in the event of any FOIA request covering this response.

Apple submits this response without waiving its right to respond further, including to any additional submission that Ms. Gjovik may make. While we believe that this response demonstrates Ms. Gjovik's retaliation claim has no merit, please let us know if you believe additional information would be helpful.

Except as expressly admitted below, Apple denies Ms. Gjovik's allegations in the Complaint in full.

**I.**     **INTRODUCTION**

Ms. Gjovik's retaliation claims here hinge on her proving that Apple retaliated against her for raising concerns about (1) unsafe work conditions and (2) an Apple board member's alleged conflict of interest regarding efforts to remediate those alleged conditions. All of her claims are without merit.

---

[1] Apple has a compendium of evidence in support of this response available upon request, should you believe it would be helpful in connection with your review of Ms. Gjovik's Complaint.

4161-3255-5828

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC        DECEMBER 21 2023

Andrea Diangco
March 4, 2022
Page 2

Apple did not terminate Ms. Gjovik's employment because she voiced concerns, but instead because she violated Apple policy by ***intentionally disclosing confidential information about Apple products on Twitter and, as Apple later discovered, to the press***, in clear breach of her confidentiality obligations. And she refused to meaningfully cooperate in Apple's investigatory process.

Indeed, Ms. Gjovik's termination was well after she first voiced the concerns on which the present Complaint is based. According to Ms. Gjovik, she first raised concerns to Apple in March 2021, more than six months before she was terminated; in the interim, Apple engaged repeatedly and in good faith in an effort to address Ms. Gjovik's concerns. Apple had legitimate business reasons to terminate Ms. Gjovik's employment, and the six-month time gap is too attenuated to support any inference causation – a key element of each of Ms. Gjovik's three claims under the Occupational Safety and Health Act ("OSHA") section 11(c), the Sarbanes-Oxley Act ("SOX"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

II.    **FACTUAL BACKGROUND**

    A.    **Apple Prohibits Discrimination, Harassment, and Retaliation.**

Apple has a firm and long standing commitment to diversity and inclusion and does not tolerate discrimination, harassment, or retaliation of any kind. Apple takes seriously its legal obligations to maintain a workplace free of discrimination, harassment, and retaliation and complies with all federal and state requirements imposed upon it. Apple has and strictly enforces its non-discrimination, anti-harassment, and non-retaliation policies.

Apple has an Employee Relations ("ER") team within its People function that investigates internal complaints of discrimination, harassment, and retaliation. Employees can complain openly or anonymously. And there are many avenues for them to raise complaints: they may speak directly to any Apple manager, contact Apple's People Support team and/or their People Business Partner, contact the confidential Business Conduct Helpline via phone, email, or online submission, or submit a confidential or anonymous report to EthicsPoint, Apple's third-party vendor. Apple policy strictly prohibits retaliation for reporting any complaints or concerns.

    B.    **Ms. Gjovik Worked at Apple for Six Years in a Role That Furnished Her Access to Highly Confidential Apple Product Information – Which She Agreed to Protect.**

Apple hired Ms. Gjovik as an iOS Build Engineer Project Manager at Apple's Sunnyvale, California location in February 2015. She subsequently transitioned to an Engineering Program Manager role and then was

276

orrick

Andrea Diangco
March 4, 2022
Page 3

promoted to a Senior Engineering Program Manager role in January 2017. She held that position until the termination of her employment on September 10, 2021.[2]

Upon joining Apple, Ms. Gjovik agreed—as a condition of employment—to comply with Apple's confidentiality policies. On January 31, 2015, Ms. Gjovik signed the Confidentiality and Intellectual Property Agreement ("Confidentiality Agreement"). The Confidentiality Agreement "prohibits [Ms. Gjovik], during or after employment, from using or disclosing, or permitting any other person or entity to use or disclose, any Proprietary Information without the written consent of Apple, except as necessary to perform [her] duties as an Apple employee." "Proprietary Information" includes, inter alia, non-public "materials or information relating to past, existing, or future products and services." Ms. Gjovik agreed to "strictly comply with all of Apple's rules and policies regarding proprietary information" and understood that breach of the agreement could result in termination of her employment. Additionally, the importance of protecting Apple's confidential pre-release product information is clearly set out in the company's Business Conduct Policy: "One of [Apple's] greatest assets is information about [its] products and services, including future product offerings." To safeguard information about Apple's products, employees are prohibited from disclosing confidential information without prior approval of management.

As a Senior Engineering Program Manager, Ms. Gjovik had access to proprietary and trade secret information about unreleased products and features under development, which was shared internally only with those who had a business need to know. From time to time, Ms. Gjovik was given the opportunity to participate in new product or feature user studies and to test unreleased prototypes. On each occasion, Ms. Gjovik's participation was entirely voluntary and at times required her to agree to additional confidentiality obligations that prohibited her from disclosing any information about the existence of the study or her participation in it.

In July 2018, Ms. Gjovik participated in a user study of an internal and proprietary application called "Alpha."[3] Because the Alpha application was still in testing phase and unavailable to the public, Apple required all participants— as a condition of participating—to maintain strict confidentiality. Ms. Gjovik signed the Alpha Study Consent Form and expressly acknowledged that any information about the study, including her participation, was confidential under the Confidentiality Agreement and could not to be disclosed to third parties ("[b]y agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple.").

---

[2] In 2018, Ms. Gjovik requested, and Apple granted, a flexible work schedule to allow her to continue working full-time while also attending law school. This arrangement continued until the termination of Ms. Gjovik's employment.

[3] Apple refers to this study by the codename "Alpha" in an effort to protect Apple's confidential product information from further unauthorized disclosure.

orrick

Andrea Diangco
March 4, 2022
Page 4

C.   **Ms. Gjovik Disclosed Apple's Confidential Information In Violation Of Her Written Confidentiality Agreements and Refused to Meaningfully Participate in the Investigation Into Her Conduct.**

On August 28, 2021, Ms. Gjovik tweeted[4] details about a proprietary study Apple was conducting, codenamed "Omega," about a confidential Apple product.[5] Like the Alpha study, the details of Omega were not known except to a small select group within Apple, and certainly not outside Apple, and Ms. Gjovik agreed to keep them confidential under her Confidentiality Agreement. Despite this, Ms. Gjovik's tweet both identified the name and purpose of the study regarding an unreleased product under development. Ms. Gjovik's tweet was retweeted the same day by an account dedicated to posting predictions about future Apple products. The next day, Apple received a formal complaint through its Business Conduct Hotline that Ms. Gjovik had publicly disclosed confidential information about the Omega study.

On August 30, 2021, Ms. Gjovik tweeted photographs and a video of herself created by the Alpha application, thus disclosing Apple confidential information. She also linked to a story published in The Verge, a technology blog, in which she disclosed her participation in the Alpha study.[6]

Ms. Gjovik knew her conduct was inappropriate; she had previously reported similar conduct by other Apple employees as a violation of their employee confidentiality obligations. In January 2020, Ms. Gjovik reported to Apple conduct of former employees who gave an interview in which they disclosed, among other things, internal code names, which Ms. Gjovik stated were "trade secret."

Upon learning of her unauthorized disclosure, Apple promptly launched an investigation. On September 9, an Apple investigator requested to speak with Ms. Gjovik as part of that investigation. Ms. Gjovik refused to be interviewed, and Apple completed its investigation based on the available information, including her publicly available Twitter posts. Based on clear evidence, Apple concluded that Ms. Gjovik had violated her confidentiality agreements and Apple policy.

---

[4] In March 2021—the same time Ms. Gjovik asserts she began raising alleged concerns with Apple—Ms. Gjovik created and has since maintained an active Twitter account.

[5] As with the Alpha study, Apple refers to this study by the codename "Omega" in an effort to safeguard Apple's confidential product information.

[6] Zoe Schiffer, *Apple Cares About Privacy, Unless You Work at Apple*, The Verge (Aug. 30, 2021), https://www.theverge.com/22648265/apple-employee-privacy-icloud-id.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

orrick

Andrea Diangco
March 4, 2022
Page 5

D. **Apple Terminated Ms. Gjovik's Employment Because She Violated Her Confidentiality Obligations And Refused to Cooperate During An Internal Investigation.**

On September 9, Apple terminated Ms. Gjovik's employment effective the following day for her violation of her Intellectual Property Agreement, company policy, and her refusal to cooperate during Apple's internal investigation process. Apple's Misconduct and Discipline Policy provides that certain conduct may warrant immediate termination, specifically including "[v]iolating confidential, proprietary, and trade secret information obligations (including those stated in Apple's Intellectual Property Agreement)" and "interfering or failing to cooperate with an investigation."

E. **Ms. Gjovik Subsequently Admitted That She Disclosed Apple's Confidential Information.**

On September 15, 2021, a different Apple employee made another report to the Business Conduct Helpline that Ms. Gjovik had publicly disclosed information about the Alpha study. The employee attached screenshots of text messages they had exchanged with Ms. Gjovik dated August 20, 2021. In the text messages, ***Ms. Gjovik admitted to disclosing confidential information*** about the Alpha study to Zoe Schiffer, a reporter from The Verge:

> I'm helping Zoe with the privacy article. I gave her [Alpha] details because that bothers me too … I'm even letting her include a few pics from [Alpha].

As discussed above, Ms. Gjovik's very involvement with the Alpha study constitutes confidential information, as do any details about the study or photos or other documents that are the product of it.[7] Apple's subsequent confirmation that she admitted to disclosing confidential information publicly and intentionally further justifies Apple's termination decision.

F. **Ms. Gjovik Made Other Various Claims Apple Has Diligently Investigated.**

1. **Apple Investigated Ms. Gjovik's Safety Concerns And Repeatedly Encouraged Her to Raise Them.**

Beginning in March 2021, Ms. Gjovik raised various concerns about a vapor intrusion study in the Stewart 1 building in which she worked. In response, Apple met with Ms. Gjovik at least seven times to provide her with numerous reports per her requests, encouraged her to report any further concerns she had to Apple's

---

[7] Apple promptly contacted Twitter to request removal of Ms. Gjovik's tweets disclosing confidential information. Twitter refused. Through counsel, Apple then contacted Ms. Gjovik and she agreed to remove the tweets.

4161-3255-5828

279

orrick

Andrea Diangco
March 4, 2022
Page 6

Environmental, Health & Safety ("EHS") team, and worked with her to find a reasonable accommodation for her perceived concerns.

Stewart 1 is a Superfund site that has been redeveloped for commercial use and was deemed acceptable for occupancy by the Environmental Protection Agency (EPA). *See* https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.redevelop&id=0901181). Apple conducts periodic evaluations and preventative maintenance of buildings with vapor intrusion mitigation systems as part of its vapor intrusion management program. Accordingly, on February 18, 2021, Apple notified building access managers of Stewart 1 that it would be conducting a routine "vapor intrusion survey" in Stewart 1. On March 17, 2021, Ms. Gjovik began asking questions about the planned work, while alleging to have experienced hazardous vapor intrusion before at a non-Apple site and the issue had, in her words, "become a bit of a personal crusade." Ms. Gjovik requested to meet with Apple's EHS department and over the next four months, EHS and Apple management met with Ms. Gjovik repeatedly in an effort to address her questions and concerns:

- March 22, 2021: Ms. Gjovik met with her manager to discuss the vapor intrusion survey, and her manager invited Ms. Gjovik to share any concerns she had with Apple's experts in the EHS department.

- April 2, 2021: Ms. Gjovik met with an EHS expert and ER representative to discuss the vapor intrusion survey. Ms. Gjovik sent a list of 17 questions to the EHS expert and ER representative before the meeting which, as Ms. Gjovik noted in her meeting recap, they addressed during the meeting. Specifically, Ms. Gjovik's notes state that EHS informed Ms. Gjovik that a vapor intrusion mitigation system had been installed in 2014 before Apple moved into the building, and no unacceptable vapor intrusion was occurring at the site, per 2015 testing results, which EHS also provided to Ms. Gjovik. Additionally, Ms. Gjovik's notes state that Apple personnel reiterated during the meeting that she could "speak freely about [her] working conditions" without fear of retaliation, expressly stated that she was permitted to contact the EPA, and encouraged her to report to EHS any chemical odors as soon as possible.[8]

- April 9, 2021: EHS sent Ms. Gjovik links to reports about vapor intrusion per her request.

---

[8] Shortly after EHS told Ms. Gjovik that she may contact the EPA, Ms. Gjovik reached out to the EPA to express her concerns. On June 7, 2021, the EPA described to Ms. Gjovik the various protective measures that have been implemented to prevent vapor intrusion into the Stewart 1 building, and further explained that the 2015 testing results "demonstrated that the chemicals related to the [site] were less than EPA's indoor air human health risk screening values for workers." The EPA assured Ms. Gjovik that it "believes the remedy in place at the [site] remains protective." The EPA additionally clarified to Ms. Gjovik that "there is no specific EPA requirement to notify each site visitor or construction or office worker of a mitigated potential risk."

4161-3255-5828

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023



Andrea Diangco
March 4, 2022
Page 7

- <u>April 11, 2021</u>: Ms. Gjovik thanked the EHS expert for his "transparency" and sent him 16 additional questions.

- <u>April 27, 2021</u>: Ms. Gjovik met with an ER representative and alleged that her manager had told her she could not share her concerns about the Stewart 1 site (a claim he denied). ER again told Ms. Gjovik's that she was free to share information about "the terms and conditions of [her] employment" (without restriction), and encouraged her to strive to ensure information she shared (including about what Apple personnel had told her) was accurate and complete.

- <u>May 17, 2021</u>: Ms. Gjovik had another meeting with EHS and ER, during which EHS reassured her there was no concerning vapor intrusion at the Stewart 1 site. EHS also answered the 16 follow-up questions Ms. Gjovik had posed in her April 11 email. Per Ms. Gjovik's meeting notes, ER again told her she could share her concerns with anyone and "Apple would never restrict [her] right to speak about workplace safety concerns."

- <u>May 18, 2021</u>: Ms. Gjovik met with her skip-level manager. During the meeting he encouraged her to continue to raise any concerns she had with EHS and ER, and in a follow-up email stated "Apple does not tolerate retaliation for raising concerns. … I know you raised some issues to EH&S about Stewart 1 … so please continue to work with EH&S to address your questions/concerns."

- <u>June 10, 2021</u>: Ms. Gjovik met with ER and discussed the possibility of an accommodation to work remotely, allegedly due to her concerns about the safety of the Stewart 1 site. ER answered Ms. Gjovik's questions about the accommodation request process and continued to work with Ms. Gjovik over the next six weeks in an effort to identify a reasonable accommodation that would work for both Ms. Gjovik and Apple.[9]

- <u>July 2, 2021</u>: ER emailed Ms. Gjovik to follow up on Ms. Gjovik's questions regarding scheduled work in the building. ER provided an update, and explained that Apple was in the middle of a three-step project—first announced in February 2021— that involved (1) evaluating potential pathways through which vapors could potentially enter the building, (2) voluntarily and preventatively sealing any potential pathways, including cracks in the floor that were the result of natural floor movement, and (3) conducting indoor air testing once the sealing was complete.

- <u>July 7, 2021</u>: Ms. Gjovik met with EHS and ER to discuss the voluntary plan to preventatively seal potential pathways for vapor intrusion and to conduct air testing. EHS assured Ms. Gjovik of the

---

[9] Ultimately, Ms. Gjovik's request for an accommodation became moot in August 2021 when Apple granted Ms. Gjovik's request for paid administrative leave while Apple investigated a separate and unrelated complaint she had made about her work environment.

281

orrick

Andrea Diangco
March 4, 2022
Page 8

building's safety, explaining that measures were in place to mitigate the potential for vapor intrusion. EHS again reviewed the three-step project announced in February 2021 and explained it was part of Apple's regular maintenance, not due to concerns regarding the safety of the building. EHS also explained that no EPA reporting was necessary because Apple's planned work was routine and voluntary.

Far from retaliating against Ms. Gjovik in an effort to stifle her concerns about workplace safety, Apple devoted significant time and resources to addressing them.

> **2.   Apple Investigated Ms. Gjovik's Concerns About an Alleged Conflict Of Interest by an Apple Board Member.**

On July 19, 2021, Ms. Gjovik wrote to the EPA regarding her belief that a member of Apple's Board of Directors (Ronald Sugar) had a conflict of interest regarding the Stewart 1 building. She contended that because Mr. Sugar had previously been the CEO of Northrup Grumman – which Ms. Gjovik asserted was primarily responsible for maintaining environmental safety at Stewart 1 – Mr. Sugar had made or supported decisions favorable to Northrup Grumman in connection with Stewart 1, at Apple's expense. Ms. Gjovik forwarded her communications with the EPA to the ER team on July 27, 2021 and again the following day.

Apple did not stifle Ms. Gjovik's concerns; it instead investigated them and found that they lacked merit. By the time Apple's investigation regarding this issue was complete, however, Ms. Gjovik had been terminated for breach of her confidentiality obligations.

> **3.   Apple Granted Ms. Gjovik's Request To Be Placed On Paid Administrative Leave.**

On July 20, 2021, Ms. Gjovik raised new concerns that she believed her managers were creating a "hostile work environment."[10] When she met with an ER Investigator to discuss those concerns, Ms. Gjovik suggested administrative leave as a "short-term" solution to the alleged issue and confirmed her suggestion in the email summary she sent ER after their discussion.

On August 4, 2021, Ms. Gjovik met with ER again and expressly requested to be placed on paid administrative leave. ER agreed and confirmed by email:

---

[10] Apple expressly denies Ms. Gjovik's hostile work environment claims, which are not at issue here but instead are the subject of her separate charges with the DFEH, EEOC, and NLRB. Apple does, however, discuss her hostile work environment allegations herein to the limited extent relevant here (e.g., responding to her claim that she was "suspended" in August 2021 which in fact she requested and was granted paid administrative leave).

4161-3255-5828

orrick

Andrea Diangco
March 4, 2022
Page 9

I want to confirm our conversation a few minutes ago. **Per your request, you are now on paid administrative leave so as to not interact with your managers**.

Ms. Gjovik did not email ER back. But that same day, Ms. Gjovik misrepresented their meeting in a tweet, alleging that Apple had "suspended" her by placing her on an involuntary "indefinite" leave. ER emailed Ms. Gjovik to correct her misrepresentation the following day. ER told Ms. Gjovik that since the paid leave was at her request, she could return to work at any time. Ms. Gjovik never responded.

### III.   ARGUMENT

Apple terminated Ms. Gjovik's employment because she chose to disclose confidential Apple product information she was under an obligation to keep in confidence, and then refused to participate into the internal investigation of that disclosure. Simply put, there was no retaliation under OSHA, SOX, or CERCLA. Ms. Gjovik has not established—and cannot establish—a *prima facie* case of retaliation. All three statutes require that Ms. Gjovik show: (1) she engaged in a protected activity; (2) Apple knew or suspected that she engaged in the protected activity; (3) she suffered an adverse action; and (4) the protected activity was at least a contributing factor[11] in the adverse action. *See* 29 U.S.C.A. § 660(c)(1) (OSHA 11(c)); 18 U.S.C.A. § 1514A(a) (SOX); 42 U.S.C.A. § 9610(a) (CERCLA).[12] Because none of her expressions of concern was a "contributing factor" in her termination, she cannot establish retaliation on the facts.

---

[11] While the three statutes have different causation standards, it is immaterial because Ms. Gjovik cannot establish causation even under the most lenient "contributing factor" standard. 29 C.F.R. § 1980.104(e)(2)(iv) (SOX) (contributing factor causation standard); 29 C.F.R. § 24.104(e)(2)(iv) (CERCLA) (motivating factor causation standard); 29 C.F.R. § 1977.6(b) (OHSA) (but-for causation standard).

[12] Apple does not concede that Ms. Gjovik can establish any of the four elements of a retaliation claim under these statutes. For example, Ms. Gjovik's allegedly activity would not qualify as protected under SOX (and thus could not ground any SOX whistleblower claim). In the Complaint and memorandum Ms. Gjovik submitted to the DOL, she asserts that she engaged in a number of activities including reporting an Apple board member's alleged conflict of interest, reporting that Apple failed to notify employees they worked on a Superfund site, and reporting a failure to address workplace safety, among others. None of these alleged actions constitute protected SOX activity, however. *See* 18 U.S.C. § 1514A(a)(1) (employee must allege conduct the employee "reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders"); *see also Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793-94 (7th Cir. 2018) (complaints about conflicts of interest and violations of internal company protocol not about "fraud" within meaning of SOX); *Gauthier v. Shaw Grp., Inc.*, 2012 WL 6043012, at *6 (W.D.N.C. Dec. 4, 2012) (dismissing plaintiff's complaint, finding that his reports were related to nuclear safety, not fraud against shareholders); *Levi v. Anheuser-Busch Cos., Inc.*, ALJ Case No. 2006-SOX-37, 2006 WL 3246840, at *16 (May 3, 2006) (complaints about workplace safety and manager incompetence did not contain any allegations of fraud). For purposes of this responsive statement, however, Apple focuses on select elements of her *prima facie* case (as a failure to establish any of them is fatal) without prejudice to additional arguments that may be available.



Andrea Diangco
March 4, 2022
Page 10

**A.    Apple Terminated Ms. Gjovik For Legitimate Reasons Unrelated to Her Concerns.**

Apple terminated Ms. Gjovik for legitimate business reasons: she violated her own written confidentiality agreements with Apple and Apple's policies, both by disclosing confidential product information and by refusing to cooperate in an internal investigation. Because Apple would have terminated Ms. Gjovik for this conduct even had she never raised any safety or conflict of interest (or any other) concerns, Ms. Gjovik's claims fail under CERCLA, SOX, and OSHA. *See Crosby v. U.S. Dep't of Lab.*, 53 F.3d 338 (Table), 1995 WL 234904, at *1 (9th Cir. 1995) (affirming that employer did not violate CERCLA where the employer showed that it had legitimate, nondiscriminatory reasons for terminating the employee, including poor work quality, insubordination, and refusal to work on a project); *Riedell v. Verizon Commc'ns*, ALJ Case No. 2005-SOX-00077, 2006 WL 3246893, at *11 (Aug. 14, 2006) (dismissing SOX claim where complainant failed to offer evidence sufficient to undermine employer's contention that he was fired for legitimate reason of refusing to participate in a meeting with management); *Solis v. Consol. Gun Ranges*, 2011 WL 1215028, at *8 (W.D. Wash. Mar. 30, 2011) (determining under OSHA section 11(c) that employee's protected activity was not but-for cause of termination where employer showed that it would have terminated employee in any event).

The **only** reason that Apple terminated Ms. Gjovik's employment was due to her own deliberate breaches of her confidentiality agreements and violations of Apple policy. Disclosing confidential product information and refusing to meaningfully participate in internal investigations are both bases for immediate termination under Apple's Misconduct and Discipline policy. They are also recognized as legitimate bases for termination under relevant case law. *See, e.g., Galinsky v. Bank of Am., Corp.*, ALJ Case No. 2011-SOX-010, ARB Case No. 11-057, 2012 WL 5391424, at *10-11 (ARB Oct. 31, 2012) (substantial evidence supported finding that complainant would have been discharged in any event due to, among other things, violating company policy by downloading sensitive corporate information for his personal use); *Grove v. EMC Corp.*, ALJ Case No. 2006-SOX-00099, 2007 WL 7135739, at *24-25 (July 2, 2007) (finding that complainant's termination was due to his unreasonable refusal to cooperate in respondent's investigation of the issues he raised and thus not actionable under SOX).

Ms. Gjovik knew when she disclosed the confidential information on social media that she was violating Apple's policies; she had reported others less than two years prior for doing the exact same thing. There is no evidence that Apple's reasons for termination were pretext, nor is there any evidence that Apple harbored animus toward Ms. Gjovik for raising concerns; on the contrary, it took them seriously and engaged in good faith investigations of the issues she raised. Indeed, Ms. Gjovik's termination was consistent with Apple's practice of terminating other employees who violated their confidentiality agreements by disclosing unreleased product information; since 2017, Apple has terminated the employment of at least nine employees for violating their confidentiality obligations.

In short, Ms. Gjovik's expressions of concern played no role in her termination – nor is there any evidence that they did – and her retaliation claims should be dismissed.

4161-3255-5828

orrick

Andrea Diangco
March 4, 2022
Page 11

**B.** **Ms. Gjovik's Repeated Expressions of Concern Even After Apple Had Responded Do Not Support A Retaliation Claim.**

Apple (and later the EPA) thoroughly responded to Ms. Gjovik's initial workplace safety concerns, and thus Ms. Gjovik's subsequent expressions of concern regarding workplace safety were unreasonable and her activities lost any protected status as a matter of law. *See, e.g., Williams v. U.S. Dep't of Labor*, 157 Fed. App'x 564, 570 (4th Cir. 2005) (teacher's whistleblowing activities initially protected under CERCLA but "[o]nce her concerns were addressed … it was no longer reasonable for her to continue claiming that these schools were unsafe and her activities lost their character as protected activity"); *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009) (under SOX, employee's complaints "were not initially reasonable as beliefs in shareholder fraud and they became less reasonable he was given explanations" by the employer); *see also Grant v. Dominion East Ohio Gas*, ALJ Case No. 2004-SOX-00063, 2005 WL 6185928, at *40 (Mar. 10, 2005) (under SOX, finding whistleblower protections do not "protect an employee who simply raises questions about virtually everything with which [she] disagrees or does not understand" or who "simply assumes a company has retaliated against [her] because [she] raised a lot of questions, lodged a lot of complaints, and labels [herself] a 'whistleblower'").

Apple responded to Ms. Gjovik's concerns regarding its plan to voluntarily and preventatively seal potential pathways for vapor intrusion and to subsequently conduct air testing; thus, Ms. Gjovik's continued expressions of concern about the plan do not constitute protected activity. Ms. Gjovik first expressed concerns related to the planned work on March 17, 2021. On April 2, 2021, EHS informed Ms. Gjovik that measures had been taken prior to Apple occupying Stewart 1 to mitigate potential for unacceptable vapor intrusion, and that further testing – which was performed after those measures had been implemented – confirmed that no unacceptable vapor intrusion at the site was occurring. On May 17, 2021, EHS reassured Ms. Gjovik that there was no concerning vapor intrusion at the Stewart 1 site, and answered Ms. Gjovik's sixteen questions from her April 11 email. And on July 7, EHS met with Ms. Gjovik to (1) again reassure her that measures were in place to mitigate the potential for vapor intrusion; (2) explain the work was part of Apple's regular maintenance program, not due to any concerns regarding building safety; and (3) explain that no EPA reporting was necessary because the planned work was routine and voluntary.

The EPA also assuaged Ms. Gjovik's concerns, letting her know on June 7, 2021 that the Agency "believ[ed] the remedy in place at the [site] remain[ed] protective" and that "[f]or a site where conditions are protective of human health there is no specific EPA requirement to notify each site visitor or construction or office worker of a mitigated potential risk." Because Apple as well as the EPA responded to Ms. Gjovik's concerns regarding workplace safety through multiple conversations and written communications, her continued repetitions of the same concerns were not reasonable and do not constitute "protected activity" that can supply the predicate for a retaliation claim.



Andrea Diangco
March 4, 2022
Page 12

    **C.**    **Apple's Decision to Terminate Ms. Gjovik for Policy Violations Was Removed From Her Alleged Protected Activity.**

Ms. Gjovik's alleged protected activity is too remote in time to suggest that any of her expressions of concern were in fact the true reason for her September 2021 termination. For her OSHA and CERCLA claims (premised on the same alleged protected activity), Ms. Gjovik first raised concerns in March 2021, six months before her termination, and Apple met with her multiple times in March, April, May, June, and July 2021 to both discuss her safety concerns and explain that Apple was doing routine preventative evaluation, maintenance, and testing to mitigate the potential for vapor intrusion. As for SOX, Ms. Gjovik's Complaint claims that she raised concerns about Mr. Sugar's alleged conflict of interest in July 2021, almost two months before her termination. *See, e.g., Carr v. West LB Admin., Inc.*, 171 F. Supp. 2d 302, 309-10 (S.D.N.Y. 2001) (periods "as short as three months" can fail to support causal connection); *Grant*, 2005 WL 6185928, at *42 (one-month temporal proximity held insufficient to demonstrate a causal connection given facts of case).

Regardless, any finding of temporal proximity would be immaterial given Ms. Gjovik's intervening conduct – her clear violation of her confidentiality obligations and Apple policy – which operated to break any alleged causal chain. *See, e.g., Fraser v. Fiduciary Tr. Co. Int'l*, 2009 WL 2601389, at *6 (S.D.N.Y. Aug. 25, 2009) (dismissing SOX claim where plaintiff's attempt to establish an unauthorized hedge fund and market it to respondent's clients was a legitimate intervening basis for termination); *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, ALJ Case No. 2004-SOX-11, ARB Case No. 07-021, 07-022, 2009 WL 2844805, at *6 (ARB Aug. 31, 2009) (denying SOX complaint where discovery of misconduct committed by plaintiff was intervening event), *aff'd, Klopfenstein v. Admin. Review Bd.*, 402 F. App'x 936 (5th Cir. 2010); *Williams*, 157 F. App'x at 570-71 (denying CERCLA complaint based on intervening event where employer fired complainant for obtaining unauthorized access to confidential information).

    **D.**    **Ms. Gjovik's Allegation That Apple Suspended Her in Retaliation For Her Concerns Fails Because She Requested a Leave of Absence.**

Finally, Ms. Gjovik's alleged "suspension" was not an adverse employment action at all, and thus cannot ground any retaliation claim. Ms. Gjovik expressly asked Apple to place her on a paid leave of absence while ER investigated her hostile work environment concerns. Apple granted her request and ER summarized their conversation in an email to Ms. Gjovik that same day. Ms. Gjovik never disputed ER's summary—specifically, his statement that ***"[p]er your request, you are now on paid administrative leave"***—or otherwise responded to his email. Granting an employee's request for a leave of absence is not adverse action as a matter of law. *See, e.g., Baker v. Cty. of Merced*, 2011 WL 2708936, at *5 (E.D. Cal. July 12, 2011) (no adverse action where the employer complied with employee's requests to take a leave of absence). Because Ms. Gjovik cannot show any adverse action, her claim for retaliation premised on an alleged "suspension" also fails.

orrick

Andrea Diangco
March 4, 2022
Page 13

IV.     **CONCLUSION**

The evidence demonstrates that Apple terminated Ms. Gjovik's employment because she disclosed confidential, proprietary information in violation of her confidentiality obligations – conduct to which she has admitted – and refusing to participate into Apple's investigation of that disclosure. Her termination had nothing to do with any allegedly protected activity; on the contrary, Apple actively investigated Ms. Gjovik's concerns. Based on the evidence described above, Ms. Gjovik's retaliation claims should be dismissed with no further investigation.

If you require any further information, please contact us.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Apple Inc.

By:     _____
        Jessica R. Perry

*Exhibit: Apple's US DOL Position Statement, March 2022*

632.    On March 18 and 24 2022, Appleseed edited Gjovik's Wikipedia article to say there were no vapor intrusion issues at Gjovik's office and added a quote from Apple defending Apple's employment practices.

633.    On April 5 2022, the law firm MWE requested copies of the transcripts of Appleseed's lawsuit against Gjovik.

287

1

2

3

4

5

6

7

8

9

10

11

12

13



14    *Exhibit: Same Law Firm (MWE) Hired for Gjovik's NLRB Case, Requests Litigation Transcripts*

15         634.    On April 7 2022, Gjovik asked US EPA for an update on the 825 Stewart Drive

16    site.

17         635.    In April 2022, New York Post suddenly published a defamatory, harassing,

18    traumatizing article about Appleseed suing Gjovik. AppleInsider then wrote an equally

19    inflammatory and traumatizing article about the New York Post article. An Apple marketing

20    executive with a large following then shared the article ridiculing Gjovik. Both New York Post

21    and Apple Insider refused to correct or retract, or even update, the articles after Gjovik won the

22    appeal of Appleseed's gag order. Under information and belief Apple was behind these articles

23    & their stickiness on the top of Gjovik's internet search results.

24         636.    On April 15 2022, Northrop Grumman submitted a report about the sub-slab

25    ventilation vents on the roof saying Apple installed their HVAC "*without consideration of the*

26

27

28

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

*vents or their function*." Northrop Grumman wrote that the vents were in an "*assumed sphere of influence of the HVAC intakes*."

637.     On April 17, 2022, a Telegraph profile was published about Gjovik titled "*Apple whistleblower Ashley Gjøvik:* '*My life is a goddamn nightmare now*"", and the reporter posted the article on Twitter. Appleseed and her friends then quickly replied to the post and 'quote-tweeted' the post making allegations against Gjovik, and making derogatory statements about Gjovik, and harassing the reporter for writing about Gjovik.[256]After Appleseed's protest, The Telegraph changed the subtitle of the article about Gjovik from something positive to saying that what happened to Gjovik was the "*consequences of her actions."* If Gjovik complained, Appleseed could try to have Gjovik incarcerated.

638.     In May 2022, Gjovik managed to still graduate law school. She graduated in the top 20% of her class and received her certificate in Public International Law with honors. In order to complete law school at Santa Clara Law, Gjovik had to remain in Santa Clara County (in order to attend in person) even after she was terminated and until graduation. The cost of living in the area is extremely expensive and with no income, she was unable to find a new job, and Gjovik quickly lost most of her life savings through rent and cost of living expenses.

**xix.     Gjovik Discovers the August 19 2021 Inspection (May 2022)**

639.     On May 12 2022, Gjovik noticed a new document on the TRW Microwave EPA webpage. It was the annual groundwater monitoring report, but deep in the middle of the long report, there was an appendix related to the roof that mentioned an US EPA inspection of the site on August 19 2021. Gjovik them emailed the EPA site team asking about it.

640.     On May 12 2022, Gjovik complained to the EPA FOIA lawyers, who still had not released a single document, that they were hiding the inspection from her.

---

[256] Twitter, Lucy Burton, https://twitter.com/Lucymburton/status/1515641563350712323

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

I assume in the five months you've been working on this, you already knew all this and you've kept this information away from me. For instance, the Aug 19 site visit emails with the EPA informing Apple & Northrop they were going to do a site inspection (assumably based on my whistleblower disclosures). I wonder if there's any coincidence that I'm a CERCLA whistleblower with a case against Apple, & reporting to the CEO of Apple is your old boss Lisa Jackson, meanwhile the US EPA appears to be hiding critical information from me in an apparent attempt to run out the clock the my cases against Apple. Please let me know if y'all are ready to do your jobs or if I should pursue and Inspector General complaint against y'all over this. Please send me the August 19 2021 site visit emails ASAP. I'm sure you're well aware those documents could make or break my CERCLA case."

641.    There were three highly suspicious "call-drops" during phone calls over a period of ten days in 2022. The first drop occurred May 16 at 6:29pm PST while Gjovik was on the phone with an attorney in the state of Washington. The call dropped just as the lawyer was about to share information about the business associations of the local judge who had just ruled against Gjovik.

642.    On May 20 2022, the US EPA sent a letter to Northrop Grumman about 825 Stewart Drive, instruction that: "EPA requires that one round of indoor air samples be collected... under current conditions."[257] The letter included an attached memo from the US EPA's Quality Assurance branch instruction Northrop Grumman (and Apple) that there should be an annual inspection of "*verification that the floor slab and barrier system have not been breached or otherwise compromised; evaluation to confirm that the building has not been*

---

[257] US EPA, Re: EPA Technical Comments on the Passive SSDS O&M Plan and SSDS Evaluation, *825 Stewart Avenue Sunnyvale, CA, TRW Microwave Superfund Site* (CERCLIS ID# CAD009159088) (May 20 2022), https://semspub.epa.gov/work/09/100029487.pdf

*modified in a manner that could compromise the system; evaluation of changes to building use*," in addition to also inspection roof components.[258]

643.    The May 20 2022 letter also included a second attachment written by a third-party expert hired by US EPA to consult on the vapor intrusion control systems at 825 Stewart Drive. The memo warned that Apple's tampering with the sub-slab vent system on the roof and placement of the HVAC intake next to the shortened vents "*may result in concentrated effluents ...to re-entrain into the building through intakes on the roof.*"[259]

644.    The second drop occurred May 24 at 2:03pm during a call with a friend who lives and is located in Canada, and during this "drop" both experienced an outage of their entire internet connection and had to reboot routers in order restore the connection. The second drop occurred just as this friend was recommending an app that Gjovik could use to monitor her internet for hacking. [Gjovik got the name of the app from him after, and the app did show Gjovik's internet was being hacked]. The third drop occurred May 26 at 1:59pm while Gjovik was on the phone with the Santa Clara District Attorney's office reporting unlawful conduct by Apple. The third drop occurred just as an intake attorney at the Santa Clara District Attorney's office said something to Gjovik like "I see if I can help you."

645.    On May 27 2022, the US EPA sent Gjovik a copy of the October 7 2021 report of the August 19 2021 inspection.

646.    On May 28 2022, Gjovik discovered hacking on her network.

---

[258] US EPA, Passive Sub Slab Depressurization (SSD) System Operation and Maintenance Plan (Document Control Number [DCN] FY22SEMD _ 161) and Evaluation of Passive SSD System, Former TRW Microwave Site, Sunnyvale, California (April 25 2022), https://semspub.epa.gov/work/09/100029487.pdf
[259] APTIM, Technical Review of Proposed Modification to a Passive Vapor Intrusion Mitigation System Installed at the Former TRW Site, Sunnyvale, CA (May 20 2022)

647.    On May 29 2022, Gjovik discovered one of the items Apple mailed her from desk was emitting RF and EMF signals. Gjovik posted about it on Twitter.[260]





*Exhibits: The Bugged Statue*

648.    On May 30 2022, Gjovik contacted the FBI to report hacking and the bugged object. The FBI agent she talked to advised Gjovik to give the object to the local police.[261]

649.    Several hours later Gjovik heard someone trying to break into her apartment through the front door. Gjovik posted on Twitter about it, blaming Apple.[262]

---

[260] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1530764537611288576 ; https://twitter.com/ashleygjovik/status/1530775382626025474
[261] Bugged items in violations of Cal. Penal Code [§§ 631, 632, 632.5, 632.6, 632.7] and US Code Title 18 [§§ 2511(1)(a), (c), (d); 2701-2712].
[262] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1531176997803679744 ; https://twitter.com/ashleygjovik/status/1531177000831959042

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                     DECEMBER 21 2023

**Ashley M. Gjøvik, J.D.**
@ashleygjovik                                          ···

📗Contacted @FBI at 8:35pm (20:35) tonight about the statue/EMF, call drops, network attacks

Asked the FBI to take & analyze the statue for spycraft

Abt 20min ago I heard noises in my living room, like someone messing with the locks on my front door. Dog went nuts (good dog)

> **Ashley M. Gjøvik, J.D.** @ashleygjovik · May 29
> Thank you to everyone who reached out last night with advice on how to deal with this. I captured photos & videos of the readings, & backed it up
>
> I sequestered the statue for the weekend
>
> I'm contacting the feds on my Apple cases about it & will insist they ask the DOJ to engage twitter.com/ashleygjovik/s...
>
> Show this thread

3:33 AM · May 30, 2022 · Twitter Web App

*Exhibit: May 30 2022 Break In Attempt*

650.     Gjovik called the Santa Clara city police on May 31, 2022 [re: report 2205310079] to report the listening device Apple planted in her chattel property and the call drops and internet interference that led to her to search her items for bugs. The police took possession of the statue. Gjovik later found her fake fig tree was also producing RF and EMF signals and threw it in the trash and complained on Twitter about it.

651.     On May 31 2022, Lisa Jackson has a private meeting with US EPA administrator Michael Regan.

652.     On June 1 2022, Gjovik asked questions about the HVAC, sub-slab ventilation and ports, and cracked floor at her office. The same day, the US EPA lawyer for the site, Rebecca Reynolds, removed the site team from the email chain with Gjovik and told Gjovik she is only allowed to talk to the lawyer now and cannot talk to the site team.

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

653.    On June 7 2022, Gjovik had her first meeting with SEC's Enforcement team about her Apple charges.

654.    On June 8 2022, Appleseed edited Gjovik's Wikipedia article deleting over 8,000 characters and accusing Gjovik of "libel" based on Gjovik's accusations against Lisa Jackson and Ronald Sugar.

655.    On June 9 2022, Gjovik sued the state of Washington in facial and as-applied constitution challenge over the order against her due to Appleseed's lawsuit and the statute it was issued under. Gjovik said the statutes were unlawfully vague and broad to ever allow a decision like that, and that the entire matter was more witness intimidation. [263]

656.    On June 27 2022 Gjovik received her first FOIA documents from US EPA, over five months after she requested them.

657.    On June 28 2022, the US District Court suddenly dismissed Gjovik's case against the state of Washington. Gjovik filed a motion for reconsideration, and the judge filed a second decision against Gjovik within hours.[264]

658.    On July 12 2022, US EPA complained that Apple was not addressing most of their concerns about Gjovik's office. US EPA also emailed about the high levels of TCE in the outdoor air at Gjovik's office.

659.    On July 14, 2022, Gjovik argued her unemployment insurance appeal. Prior, the case was mysteriously closed with inaccurate information, so the data about Gjovik's interview must have been destroyed or falsified. Gjovik won her unemployment insurance appeal, and a decision was issued by an Administrative Law Judge stating:

> Gjovik "received notice from the vice president that she was being
> discharged. The notice was vague and incomplete and stated that the

---

[263]

[264] *Gjovik v. State*, 2:22-cv-00807-RAJ-BAT (W.D. Wash. Jun. 28, 2022); *Gjovik v. State*, 2:22-cv-00807-RAJ-BAT (W.D. Wash. Jun. 28, 2022).

claimant had disclosed confidential information and had not fully participated in some investigation. Although the claimant requested specific information from the employer, no specific information was provided. Prior to the separation of the employment the claimant received great performance reviews and prior to the separation the claimant received no oral or written warning notifying her that job was in jeopardy. At all times the claimant performed her job duties to the best of her ability. In this matter the evidence shows that the claimant was discharged for reasons other than misconduct connected with the most recent work."[265]

660. On July 20, 2022, Gjovik filed a complaint with the US EPA OIG Hotline about Jackson and others misconduct. Gjovik complained about "*false representation[s] about a material fact,*" "*fraud,*" "*knowingly falsifying or concealing a material fact,*" "*abuse of power,*" and "*improper use of government resources.*" Gjovik noted "*discrepancies between reported facts and supporting documentation,*" and "*site inspection different status than what was reported to EPA.*"

661. On July 21 2022, Lisa Jackson visited the US EPA HQ to have a private meeting with US EPA administer Michael Regan.

662. On July 27 2022, Gjovik cancelled her California Bar Exam appointment due to the smears and restraining order.

663. On July 28 2022, Northrop Grumman told the US EPA they are late in responding to US EPA's questions because Apple and CalSTRS stopped responding to them for weeks.

664. On August 12 2022, Lisa Jackson made Jared Blumenthal (prior head of CalEPA, and head of US EPA Region 9 before that) President of the Waverly Foundation. Was Blumenthal who Jackson tried to nominate for the Region 9 role in November 2021?

---

[265] *Ashley M Gjovik* (Claimant-Appellant); California Unemployment Insurance Appeals Board, Case No. 7253819, July 14 2022

665.    In August 2022, Gjovik discovered Apple had broken into her attic in the fall of 2021 and installed some sort of surveillance equipment. Gjovik complained about this to her landlord, a large real estate company, and she reported it to the FBI and the local police. Gjovik filed a complaint with the FBI on August 8 2022, to report another break-in and about the electronics in her attic. The FBI again advised her to call the police.

666.    Gjovik called the Santa Clara city police on August 9, 2022 [re: report 2208090087] to report Apple breaking into her attic and installing some sort of electronic equipment. After Gjovik reported the attic situation to law enforcement the police said they would come by the next day to create the report. Gjovik left her home to run an errand. When Gjovik returned, the day before the police were to arrive and search her attic, she found two signs that someone had broken into her apartment and entered the attic. First, her dog's belly smelled strongly of cigarettes despite him not leaving the apartment while she was gone and Gjovik not smoking cigarettes. After noticing the odor, Gjovik quickly inspected her closet where the entrance to the attic is and found attic insulation stuff on the floor despite having just vacuumed before she left. Under information and belief, Apple broke into Gjovik's apartment again, this time to retrieve whatever they installed in her attic, before law enforcement arrived.

667.    Gjovik also reported it to her landlord, Prometheus, on August 9 2022. Under information and belief, Apple broke into Gjovik's attic at some point in the fall of 2021 and installed some sort of surveillance equipment and likely intercepted Gjovik's internet.

668.    Around August 2022 Gjovik was finally offered a well paying consulting job, as an expert witness for a law firm. However, when Apple's lawyers found out, they apparently did a number of things that resulted in having Gjovik removed from the matter to respond to Apple threatening to disqualify her. The law firm was going to pay Gjovik close to what Gjovik's Apple salary was, but then after Apple had Gjovik removed ,Gjovik could not find any job for

nearly a year, and now even though she finally found a job, she makes around 41% less than what she made at Apple.

669.    Gjovik moved to New York on August 31 2022. Gjovik chose the East Coast primarily to get far away from Apple. Gjovik chose Albany in hope of finding a government job. Despite hundreds of applications and dozens of interviews, Gjovik was never able to find a job in Albany New York. Gjovik had at least two visits from Private Investigators harassing her at her new apartment in New York. One of them showed up as her property was being delivered by the moving company, and the PIs filmed her while peeking into her windows and walking around to see her backyard. The second one showed up after Gjovik had been there for several months, and verbally acknowledged her when she opened her front door to get her mail ("there she is.") All of them saw Gjovik notice them and then exaggerated their lurking as a confirmation. Assumably, ratio wise, there were many other PIs who also visited, but did not want Gjovik to notice them.

670.    Gjovik won her appeal of the gag order against her in November 2022, which was then followed by even more harassment and defamation by Joanna Appleseed. [266]

671.    On September 12 2022, Gjovik asked US DOL for status on her charges. On September 16 2022, US DOL had a call with Gjovik where a department executive, Captain Parra, showed up and intimidated Gjovik to withdraw her charges. Gjovik complained of intimidation and obstruction.

672.    On October 28 22022, the Santa Clara County Department of Environmental Health (SCC DEH), related to an Apple office on a toxic-waste clean-up site, instructed Apple to label its sub-slat vent risers with labels saying "CAUTION VENT RISER DO NOT TAMPER"

---

[266] *C.S. v Gjovik,* 22-2-03849-7 SEA, (Appeal of Court of Limited Jurisdiction – Reversed & Vacated), King County Superior Court, State of Washington (2022); *C.S. v Gjovik*, 22CIV01704KCX, (Vacated) King County District Court, Court of Limited Jurisdiction, State of Washington (2022).

every five feet throughout the building and on the roof. Santa Clara Couty ("SCC") Department of Environmental Health ("DEH") also insisted Apple notify the department if there are any cracks in the floor. SCC DEH also insisted that vent rises be at least 10 feet away from any window/opening/intake and at least 3 feet high on the roof. Gjovik had been giving DEH updates on Apple's sub-slat vent/HVAC and cracked floor situation at 825 Stewart Drive prior. Under information and belief, all of SCC DEH's explicit instructions on this matter were due to Gjovik telling them what happened at 825 Stewart Drive. This building was part of the 'real estate mega deal' that occurred the weekend in May 2021 when Sedgwick suddenly closed Gjovik's' chemical exposure claim.



*From SCC DEH's documents for Apple's Office at Pathline Park*

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023

673.    On November 2022 an expert consultant for the US EPA submitted a letter saying Apple should have been testing for indoor air vapor intrusion at Gjovik's office at a minimum of every five years. (The most recent testing was December 2015, so it was due again December 2020 – and the testing wasn't 'voluntary').

674.    On December 6 2022, US EPA sent a letter to Northrop Grumman (and Apple) with feedback on their proposed vapor intrusion testing plan, with 12 requests, including that they notify US EPA "immediately" if test results show the presence of TCE in the indoor air above 7 µg/m3.[267] The document also included an image of testing locations, including air sampling where Gjovik's desk was.

---

[267] US EPA, Re: Northrop Grumman Vapor Intrusion Work Plan Addendum #3. Former TRW Microwave Site, 825 Stewart Dr., Sunnyvale, California, TRW Microwave Superfund Site (CERCLIS ID# CAD009159088), https://semspub.epa.gov/work/09/100031563.pdf

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21 2023