**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**Case No. 3:23-CV-04597-EMC**

**Filed**: September 7 2023

**District Judge**: Honorable Edward M. Chen

**OPPOSITION TO MOTION TO DISMISS CLAIMS**

Dept: Courtroom 5, 17th Floor (Virtual)

Date: February 8, 2024

Time: 1:30 p.m.

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION TO MOTION TO DISMISS ACTION

## I. SUMMARY

1. Plaintiff Ashley Gjovik (pronounced "JOE-vik") respectfully submits the following Memorandum of Points and Authorities in opposition to the Motion to Dismiss for failure to state a cause of action, filed by defendant Apple Inc.

## II. STATEMENTS ON FACTS

2. Gjovik generally denies Apple's allegations and statements/restatements of fact in their Motion to Dismiss ("MTD"), including Apple's description of events, but also Apple's summary and description of Gjovik's allegations against Apple.

3. Gjovik also denies Apple's conflicting complaints against Gjovik for including so many details in her complaint (complaining about length), while concurrently claiming Gjovik did not include enough details in her complaint; while concurrently ignoring many of the facts that are already in the complaint.

4. Apple's MTD did however include helpful feedback and Plaintiff's Second Amended Complaint has been thoughtfully revised to address areas where Apple requested more detail and examples, including substantially more embedded exhibits, and is also better organized with more headers to help focus arguments.

## III. STATEMENTS OF LAW

5. On November 16 2023, defendant Apple Inc filed a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Gjovik's SOX, Dodd-Frank, Bane Act Ralph Act, RICO Act, Ultrahazardous Activity, California Labor Codes §§ 1102.5 and 98.6, and Nuisance claims. Apple did not contest Gjovik's *Tamney*, Cal. Labor Code § 6310, and IIED/NIED claims in their

MTD and instead noted interest in litigating the merits of those three claims, thus Gjovik will not address those claims or elements here.[1]

6. On MTD, all material facts are accepted as true and are construed in the light most favorable to the plaintiff.[2] A complaint generally need not state "detailed factual allegations," but must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4]

7. As a pro se petitioner in civil rights case, Gjovik is grateful for the court to consider construing the pleadings liberally and to afford the petitioner the benefit of doubt.[5] A complaint should not be dismissed because plaintiff relies on an incorrect or imperfectly stated legal theory, if the facts alleged support any valid theory.[6] Should this Court believe that such facts are not adequately pled, plaintiff should please be granted leave to amend her complaint or a limited section of her complaint.

---

[1] *Ashley Gjovik v Apple Inc*, Case No. 3:23-cv-04597-EMC, US District Court, Northern District of California, SF Division, Document #30 – Motion to Dismiss
[2] *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1140 (9th Cir. 2012).
[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, (2007).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).
[5] *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).
[6] *Johnson v. City of Shelby, Miss*., 574 US 10, 11-12, 135 S.Ct. 346, 347 (2014) (per curiam: plaintiffs not required to invoke specific federal civil rights statute at issue in order to avoid dismissal of their employment action); *Alvarez v. Hill* 518 F3d 1152, 1158, (9th Cir. 2008); *Wilson v. Birnberg* 667 F3d 591, 595, (5th Cir. 2012).

## IV.   ISSUES TO BE DECIDED

**A.   WHETHER PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM FOR RELIEF AGAINST DEFENDANT UNDER SOX, DODD-FRANK, BANE ACT, RALPH ACT, RICO, CAL.**

8.    If the complaint states facts constituting a cause of action entitling plaintiff to any relief, the motion to dismiss should be denied.[7] Gjovik believes her first and second amended complaints ("FAC", & "SAC") both contain sufficient factual matter, if accepted as true, to 'state a claim to relief that is plausible on its face,' for all of her claims.[8] However, Gjovik's SAC now much more effectively explains her claims, arguments, and evidence.

9.    The court "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment.[9] Gjovik will also file a first Motion for Judicial Notice imminently.

**B.   WHETHER DEFENDANT'S MOTION CONFORMS TO FRCP 12(B)(6)**

10.   The MTD must point out the defects complained of and the details desired.[10] "A Rule 12(e) motion that does not identify the details desired from the more definite statement is neither effective nor in compliance with Rule 12(e)."[11] Gjovik's Opposition to Apple's MTD directly addresses the defects alleged by Apple, as appropriate (arguing either procedurally and/or substantively), but does not attempt to defend all prima facie elements, as that is in the SAC.

11.   A 12(b)(6) motion may argue that there is no legal theory based on settled rules (frivolous); questionable legal ground to establish claim; no factual allegation for an essential

---

[7] *Mendiondo v. Centinela Hosp. Med*. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).
[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).
[9] *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).
[10] Fed. R. Civ. P. 12(e); FRCP 12(e); *Ivar v. Elk River Partners*, 705 F.Supp.2d 1220, 1231 (D CO 2010).
[11] *Estate of Prasad ex rel. Prasad v. County of Sutter*, 958 F.Supp.2d 1101, 1124 (ED CA 2013).

element of legal theory; allegations are conclusory; allegations are high improbably. 12(b)(6) motions are not to be used to argue new facts, dispute existing facts, deny well pled statute of limitations tolling theories; deny well pled vicarious liability theories; or declare evidentiary conclusions prior to discovery. Ordinarily, a Rule 12(b)(6) motion cannot be used to raise an affirmative defense, nor may defendants attempt to obtain evidentiary detail which is properly the subject of discovery. [12] The MTD should not be used to resolve merit issues, especially fact-sensitive matters – instead such matters should be left for summary judgment after full discovery.[13]

    12. The 12(b)(6) MTD is a question of law, not of fact. However, mixed questions of fact and law may arise including: negligence, materiality, condition of the mind (knowledge, malice, intent), or proximate cause –under *Conley* the question is "*whether claimant is entitled to offer evidence to support the claims*."[14] This is especially true in cases about civil rights and corporate fraud. In white collar cases, "the plaintiff cannot be expected to have personal knowledge of the detail of internal corporate affairs, rigid application of special pleading could permit sophisticated defrauders to escape liability."[15]  A Rule 12(b)(6) motion cannot be used to challenge just certain allegations within a claim while the underlying claim is not itself challenged. Rather, such a challenge must be made by motion to strike under Rule 12(f).[16]

---

[12] *Xechem, Inc. v. Bristol-Myers Squibb Co*. (7th Cir. 2004) 372 F3d 899, 901; see *Brownmark Films, LLC v. Comedy Partner*s (7th Cir. 2012) 682 F3d 687, 690—"courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" because "a plaintiff may state a claim even though there is a defense to that claim".
[13] *One Industries, LLC v. Jim O'Neal Distrib., Inc*., 578 F3d 1154, 1160 (9th Cir. 2009).
[14] *American Technical Mach. Corp. v. Masterpiece Enter., Inc.,* 235 F. Supp. 917 (M.D. Pa. 1964)
[15] 334. *In re Craftmatic Sec. Litig.,* 890 F.2d 628, 645 (3d Cir. 1989).
[16] *Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D AZ 2009) —(court willing to construe 12(b)(6) motion as 12(f) motion); but see *Hill v. Opus Corp*, 841 F.Supp.2d 1070, 1082 (CD CA 2011) —(Rule 12(b)(6) motion granted as to part of single claim that was preempted by ERISA).

If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied.[17]

### C.   NOT TO BE DECIDED

13.   Apple has stated it is not challenging three of Gjovik's claims: Retaliation in Violation of Public Policy (*Tamney* claim), Cal. Labor Code § 6310 (Retaliation for Making Safety Complaints), and IIED/NIED under California and New York state laws. Apple acknowledges Gjovik sufficiently stated a claim that:

   a.   Apple terminated Gjovik in violation of the Public Policy of California.

   b.   Apple retaliated against Gjovik for reporting workplace safety issues.

   c.   Apple intentionally and negligently inflicted emotional distress upon Gjovik.

## V.   ARGUMENT

### A.   SOX & DODD-FRANK WHISTLEBLOWER RETALIATION

14.   It is difficult to understand how defendant can take the position that a responsive pleading cannot be framed for a SOX or Dodd-Frank whistleblower claim, in view of the fact that they have already filed an answer to the same SOX complaint on March 4 2022, after reviewing Gjovik's "Complaint and memorandum submitted to DOL,"[18] yet which they now claim is so vague and ambiguous that they cannot respond. The fact that a defendant was previously able to frame a response is evidence that the complaint is not that vague or ambiguous. Defendant is simply avoiding filing an Answer to this claim.

15.   Two of Apple's claims in their MTD are inappropriate for 12(b)(6). First, Apple argues that it had no knowledge that Gjovik filed a SEC whistleblower tip on August 31 2021

---

[17] *Beery v. Hitachi Home Electronics America, Inc.*, 157 FRD 477, 480; U.S. (CD CA 1993); *E.E.O.C. v. Alia Corp.*, 842 F.Supp.2d 1243, 1250 (ED CA 2012); *Valdez v. Celerity Logistics, Inc.*, 999 F.Supp.2d 936, 946-947 (ND TX 2014).
[18] *Ashley Gjovik v. Apple Inc.*, Case No. 9-3290-22-051, "*FINAL DOL Response (CERCLA, OSHA, SOX)*", (March 4 2022), filed by Jessica Perry of Orrick.

(pg14-15). However, Apple was notified of Gjovik's NLRB case by August 30 2021 which put them on notice generally, and Gjovik was posting on Twitter about her SEC tip, and her SEC tip was discussed in news articles, for over a week prior to Gjovik's termination – and this evidence was included in the US DOL SOX process. A 12(b)(6) motion is not for arguing knowledge or other mental state, when facts are sufficiently pled so that the allegation is plausible. To survive a motion to dismiss, a plaintiff does not need to allege the individual's actual knowledge, but must allege sufficient facts to justify an inference of knowledge.[19]

16. A prima facie SOX whistleblower case does not require that the employee conclusively demonstrate the employer's retaliatory motive.[20] Rather, the employee need only make "prima facie showing that protected behavior or conduct was a contributing factor in the unfavorable personnel action alleged in the complaint."[21]

17. Next, Apple argues that Gjovik did not file an internal complaint related to SOX matters (MTD pg1-2), yet Gjovik filed at least five internal complaints – the complaint about Ronald Sugar's disclosures and actions related to his prior office in a high-risk environmental disaster area, Lisa Jackson & team's false statements about Apple's environmental practices, the complaints about sanctions violations, the complaint about systemic cover-up of employee complaints of misconduct, and the complaint about skipping the line on vaccines. In addition, format-wise, Gjovik filed a formal complaint to Apple's Business Conduct team on August 23 2021 which was assigned a tracking number, Gjovik captured concerns in the "Issue Confirmation" document, Gjovik forwarded her emails with US EPA to Apple, and Gjovik emailed Legal, Business Conduct, and Apple University directly.

---

[19] Wood v. Dow Chem. Co., 72 F. Supp. 3d 777, 790 (E.D. Mich. 2014)
[20] See, e.g., *Gay v. Waiters' & Dairy Lunchmen's Union, Local No*. 30, 694 F.2d 531, 546 n. 11 (9th Cir.1982) (distinguishing between prima facie and conclusive proof of discriminatory intent).
[21] 29 C.F.R. § 1980.104(b); *Coppinger-Martin v. Solis,* 627 F.3d 745, 750–52 (9th Cir. 2010).

18. Gjovik detailed her concerns about Ronald Sugar in detail in her Issue Confirmation and Business Conduct complaint, and Gjovik's complaints about fraudulent statements by Lisa Jackson and team were sent to Dr. Cohen and then shared with Okpo as part of Okpo's supposed investigation. These claims were also noted in prior agency determination and evidence was provided. It seems impossible that Apple was ever actually investigating Gjovik's complaints earnestly and in good faith, if Apple claims that Gjovik never made any internal complaints.

19. However, Gjovik's FAC could have been more specific about the details of Gjovik's allegations about fraud and other SEC matters, and Gjovik has revised it and added additional detail in the SAC. Apple also repeatedly argues that conflict of interest are per se not SOX and Dodd-Frank matters, which is inaccurate, so the SAC includes additional legal authority for Gjovik's claims.

20. Finally, Gjovik's Dodd-Frank claim as a larger scope than Gjovik's SOX claim, and also includes witness/whistleblower retaliation under § 1513(e), among other coverage not usually found in SOX claims. Both claims were well pled and are now more well pled.

B.     **BANE & RALPH CIVIL RIGHTS ACTS**

21. Apple requested Gjovik be more specific about claims related to criminal conduct and complained that Gjovik's allegations are conclusory. Allegations were fairly well detailed with the exception of discussing "Joanna Appleseed" out of fear Appleseed will begin attacking Gjovik again, and Apple has offered no assurance that will not occur. Further, Gjovik has emailed Apple's lawyers to ensure they know who she is talking about, and Apple's lawyers also repeatedly requested court records from Appleseed's litigation against Gjovik, so they certainly know who she is and some of the things she has done.

22. However, for the sake of particularity, Gjovik has added additional details including court cases (which records include copies of the reports against Gjovik), and embedded exhibits.

23. Apple's arguments in the MTD that Gjovik did not show proof of interference in civil rights is irrelevant because the threats do not have to actually interfere with the right. (see FAC/SAC). Similarly, Apple inappropriately argues defenses in the MTD (ie, Apple's lawyers have free speech rights to harass Gjovik) and again inappropriately uses the MTD related to mental states.

24. Apple's argument that Gjovik did not allege facts to support Apple was involved in surveillance, threats, or social media accounts is errored – as Gjovik alleged in the FAC (with proof) that some of this was done by named Apple employees, and as such it becomes a question of vicarious liability, which is not a question for the MTD. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, showing more than a sheer possibility that a defendant has acted unlawfully.[22] Rule 12(b)(6) motions are "especially disfavored" where the complaint sets forth a novel legal theory "that can best be assessed after factual development."[23]

25. Apple's response also ignores the need for discovery to ascertain mental state. In discrimination cases, an employer's true motivations are particularly difficult to ascertain, and the question of retaliatory intent is an "elusive factual question."[24] Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the

---

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).
[23] *McGary v. City of Portland*, 386 F3d 1259, 1270 (9th Cir. 2004). *Wright v. State of North Carolina* 787 F3d 256, 263, (4th Cir. 2015) — (to extent plaintiffs' claims do not fall within "the four corners of our prior case law," dismissal not justified under Rule 12(b)(6)).
[24] *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732–33 (9th Cir. 1986).

light of the timing and the surrounding circumstances.[25] Temporal proximity between her protected activity and adverse employment action is sufficient to allege a causal link between the two.[26]

C. **NUISANCE**

26. Defendant argues that the statute of limitations has expired for the Nuisance claim, without explaining why it would be expired if Gjovik was still actively exposed three years prior to the date the complaint was filed, and until just recently, Gjovik was unaware of the source of her injury, due to Apple's fraudulent concealment of its misconduct. The Statute of Limitations is not intended to protect a person who, by fraudulent concealment, has delayed the assertion of a right.[27]

27. Where the expiration of the statute cannot be determined from the face of the complaint, a motion for summary judgment is the proper procedure.[28] A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." [29] Gjovik's FAC/SAC claimed tolling due to fraudulent concealment and

---

[25] *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1182–90 (C.D. Cal. 2013).
[26] See, *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986) (finding sufficient evidence of causation in a Title VII case where adverse employment action occurred less than two months after the protected activity); cf. *Manatt v. Bank of America,* 339 F.3d 792, 802 (9th Cir. 2003) (finding insufficient evidence of causation in a § 1981 case existed where adverse employment action occurred nine months after protected activity); *Greer v. Lockheed Martin Corp.,* 855 F.Supp.2d 979, 987 (N.D. Cal. 2012) (finding that plaintiff did not adequately allege causality in a FEHA discrimination claim because plaintiff did not engage in a protected activity until after she was laid off).
[27] *Kane vs. Cook*, 8 Cal., p. 449. Cal. Civ. Proc. Code § 338
[28] *AVCO Corp. v. Precision Air Parts, Inc.* (11th Cir. 1982) 676 F2d 494, 495; *Supermail Cargo, Inc. v. United States* (9th Cir. 1995) 68 F3d 1204, 1206—equitable tolling doctrine usually not amenable to resolution on Rule 12(b)(6) motion]
[29] *Jablon v. Dean Witter Co.*,614 F.2d 677, 682 (9th Cir. 1980).

continuing violations. Thus, again, defendant inappropriately argues defenses and factual scenarios in MTD.

28. A MTD must be denied if the court cannot determine with certainty whether the doctrine could be successfully invoked.[30] Further, MTD cannot be used to force the pleader to allege the date of the alleged wrongdoing, to determine applicability of a possible statute of limitations defense; This is exactly the sort of information which should be obtained through the discovery process.[31]

**D.  ULTRAHAZARDOUS**

29. Like with the nuisance claim, Apple argues statute of limitations expiration and ignores Gjovik's claims of continuing violations and fraudulent concealment. Gjovik also argued property damage in addition to personal injury, which Apple disregarded. In addition, even if the statute of limitations is two-years, Gjovik was still an Apple employee on September 7 2021, and her desk/cubicle was still at 825 Stewart Drive, and if Apple ever let her come back from leave, she assumably would at least need to visit her office to transport her possessions, at the very least.

30. Next, Apple relies on the wrong legal theory for ultrahazardous activities, looking strictly at a certain topic and ignoring the temporal-spatial complexity of ultrahazardous torts. The balancing test looks to when and where the activities occurred, not just what the activities are. Further, its entirely possible to be negligence with an ultrahazardous activity and that is not preclusive of the strict liability.

---

[30] *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206-7 (9th Cir. 1995).
[31] *Famolare, Inc. v. Edison Bros. Stores, Inc.* (ED CA 1981) 525 F.Supp. 940, 949; Lewis v. *Bellows Falls Congregation of Jehovah's Witnesses* (D VT 2015) 95 F.Supp.3d 762, 772— general weight of authority "cuts against granting" Rule 12(e) motion seeking dates for statute of limitations purposes.

31. Apple argues there is no case law supporting hazardous waste activities being classified as ultrahazardous. Gjovik has included ample case law in her SAC, including Apple's long-time Board Member Al Gore explaining why these activities must be strict liability. There is extensive law establishing that hazardous waste activities may be ultrahazardous. Instead, Apple simply cites hazardous <u>materials</u> cases, which is not the same as hazardous waste.

32. Finally, Apple begins to argue that only Northrop Grumman can be liable for Gjovik's exposure at 825 Stewart Drive. As discussed, the MTD is not for defenses. Apple needs to detail its defenses in its Answer instead.

**E.    CAL. LABOR CODE § 1102.5 (WHISTLEBLOWER PROTECTION ACT)**

33. Defendant's dispute of the California WPA is disingenuous as Gjovik pled violations of dozens of laws in the FAC, but only used a formatted/bold header for one (§ 435) which Apple then falsely argues is the exclusive claim (MTD pg2).

34. Apple also then spends much time arguing intent for a strict liability Labor Code; cites a case that does not even analyze the statute; and attempts to argue complex 'consent' theories and defenses for the general intent law, and without allowing for discovery of relevant facts and documents, or experts to discuss the technology, or fact witnesses to testify to their experience. Apple's response ignores many of the complex arguments about this technology that need to be adjudicated in court, not in MTD.

**F.    CAL. LABOR CODE § 98.6**

35. Similarly, to § 1102.5, Apple here argues only the portion of Gjovik's claim that was under a formatted/bold header, and ignores all of Gjovik's other claims (including that Gjovik filed a retaliation complaint with the California Labor Commissioners office prior to her termination, and then was further retaliated against for doing so).

36. The one claim Apple does address, Apple only picks one phrase out of a list of multiple phrases ("free speech"), and ignores the larger claim. (pg21). Apple also perplexingly frames its defenses to this claim in a way that would likely constitute an NLRA violation as an unfair labor practice and unlawful employment policy (sans litigation privilege if applicable).

37. Apple's claim in its MTD that private employees can always be fired for speech is also in itself a violation of §§ 98.6 & 96(k), as well as § 1102.5, and § 232.5. Apple's response in its MTD is further evidence of its violation of the statute.[32]

### G. RICO CLAIMS ARE ADEQUATELY AND SPECIFICALLY PLEADED

38. A Rule 12(b)(6) motion may be used to dismiss state law statutory claims that conflict with federal statutes providing for exclusive federal enforcement under the doctrine of implied preemption.[33] The Private Securities Litigation Reform Act of 1995 (PSLRA, 15 USC § 78u-4(b)(1)) modifies Rule 12(b)(6)'s dismissal mechanisms in three ways: First, the court must disregard assertions of fact that do not meet the PSLRA specific particularity requirements. Second, the court considers the complaint in its entirety, along with documents attached to it and matters judicially noticed; Third, the court inquires whether the facts alleged, taken collectively, give rise to a "strong" inference of scienter, taking into account plausible opposing inferences.[34]

39. Apple's argument of PSLRA fails as it is predominantly based on cherry-picking Gjovik's mention of "securities fraud" amongst lists of addition topics, and claiming that

---

[32] Apple's MTD "*Under well-established case law, "a private employee [like Plaintiff] has no recognized constitutional protection from termination by a private employer [like Apple] based on speech."* (pg21 MTD).
[33] *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc*. (9th Cir. 2022) 48 F4th 1040, 1049—(Rule 12(b)(6) motion granted where plaintiff's state law claims based on violations of FDA requirements were preempted under FDCA, which limits enforcement of such violations to U.S. government); Motions to Dismiss (Rule 12(b)), Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-D
[34] *Tellabs, Inc. v. Makor Issues & Rights, Ltd*. (2007) 551 US 308, 322-323, 127 S.Ct. 2499, 2509-2510.

reference invokes preemption, instead of looking to see if any of Gjovik's claims are actionable securities fraud. In fact, Apple repeatedly argues none of Gjovik's claims are even related to Securities Fraud (see SOX and Dodd Frank).

40. Apple cites *Enron* extensively, but while some of Apple's conduct may resemble Enron's misconduct and satisfy a securities fraud claim,[35] the claims Gjovik has made against Apple do not resemble an Enron securities fraud case. Here, there are no losses flowing from the pledge of the securities, or any misrepresentation about their value, and thus the securities are "merely a happenstance cog in the scheme," at most.[36]

41. Apple vaguely claims that Gjovik does not name any members of the RICO association-in-fact enterprise other than Apple, without explaining why the non-Apple members Gjovik did name are invalid. Another recent RICO case against Apple was dismissed due to similar allegations, however this case is distinguishable in every way. In *Coronavirus Rep. v Apple*, the court found assertions such as that "*crony app developers*" and "*PR firms*" would "*spread Apple's gospel*" were insufficient to state a claim because the allegations are conclusory and the non-Apple parities noted did not participate in the alleged predicate acts.[37]

42. However, here, for example, Gjovik names employees in local government agencies (i.e. an official at the Santa Clara County Sheriff's Office) who were named by the District Attorney in related criminal charges against an Apple executive for criminal bribery (a predicate act), and the bribery was conducted in order for Apple to obtain special favors and

---

[35] For example, see *United States v. Soreide*, 461 F.3d 1351, 761 (11th Cir. 2006) (PSLRA bars civil RICO claim based on tax shelter scheme when sale of securities was "lynchpin" of scheme).
[36] *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866 (9th Cir.2010); Menzies v. Seyfarth Shaw LLP, 197 F. Supp. 3d 1076, 1116 (N.D. Ill. 2016).
[37] *Coronavirus Rep. v. Apple Inc.,* No. 21-CV-05567-EMC, 2021 WL 5936910, at *16–18 (N.D. Cal. Nov. 30, 2021), reconsideration denied, No. 21-CV-05567-EMC, 2022 WL 307941 (N.D. Cal. Feb. 2, 2022), aff'd, 85 F.4th 948 (9th Cir. 2023), and aff'd, 85 F.4th 948 (9th Cir. 2023).

benefits, and to increase the amount of weapons carried by its Global Security/Worldwide Loyalty, team in order to intimidate and threaten others.

43. Or, another example, Gjovik named Apple's hazardous waste consulting company who conspired with Apple to violate RCRA and Clean Air Act laws at 3250 Scott Blvd by illegally releasing toxic waste into the air in order to save Apple money and help Apple create misleading public statements about its waste output quantities, including falsifying legal filings (ie, the 2020 TRI filing claiming NMP was sent to waste disposal facilities that it clearly was not) which constituted wire fraud (a predicate act). Or the US EPA employees repeatedly named as helping Apple avoid environmental liabilities related CERCLA activities.

44. Or another example, prior to Orrick being hired for this case, Gjovik had already named an Orrick attorney as part of Apple's association-in-fact enterprise, and Gjovik notified her of such, by she never responded and is still currently on the case and is the one who is claiming that Gjovik did not name anyone else except Apple. So she is defending herself and Apple?

45. Next, Apple argues that Gjovik's Predicate Act of Witness Intimation somehow fails because Gjovik did not include more than one person impacted, and Apple argues that Gjovik did not allege that Apple also tried to silence Gjovik's coworkers like Apple did to Gjovik, which is not an element in the claim. Further, Apple is clearly fishing for evidence and declarations outside discovery. To appease Apple, Gjovik has added a 2nd claim of Witness Intimidation, with their conduct towards their Court-appointed Federal Monitor from the eBooks antitrust case.

46. Finally, Apple argues that even if there was a scheme, it became moot after Gjovik blew the whistle on Apple. Apple simply ignores Gjovik's pattern/scheme arguments in both FAC and SAC, citing decades of fraud and felonious misconduct.

## VI.   AMENDMENT

47. If this Court believes plaintiff has failed to adequately allege facts to show delayed discovery, she requests leave to amend her complaint. Great liberality should be exercised in permitting a plaintiff to amend.

48. If this Court is inclined to grant the defendant's motion, plaintiff should be permitted to amend her complaint to state facts that clearly show that she is entitled to relief, especially due to the power differentials between plaintiff and defendant in this case.

## VII.   CONCLUSION

49. It is apparent that the complaint is capable of being responded to and that, accordingly, the motion to dismiss should be denied. Based on the foregoing, plaintiff respectfully requests that this Court deny the defendant's motion to dismiss for failure to state a cause of action and order Apple to answer plaintiff's complaint.

Signed By:

*[signature]*

Ashley Gjovik (pro se)

DATED: 12/22/2023