**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | **Case No. 3:23-cv-04597-EMC** |
| | **Filed**: September 7 2023 |
| | **District Judge**: Honorable Edward M. Chen |
| **ASHLEY GJOVIK**, *an individual*, | **MOTION FOR JUDICIAL NOTICE** |
| Plaintiff, | |
| v. | **Hearing** |
| | Dept: Courtroom 5, 17th Floor (Virtual) |
| **APPLE INC**, *a corporation*, | Date: February 8, 2024 1:30 p.m. |
| Defendant. | *Plaintiff Does Not Require Oral Arguments* |
| | |
| | *Concurrent with:* |
| | *Defendant's Motion to Dismiss (Doc #30)* |
| | *P's Opposition to Motion to Dismiss (Doc #33)* |

**Motion for Judicial Notice Cover Page: Exhibit 4**
California DOL
US DOL DWPP

**Declaration**: *I verified the authenticity of each of these documents. A true and correction version of each document is attached in each exhibit. I declare under penalty of perjury this is true and correction. /s/ Ashley M. Gjovik (December 25 2023).*

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

# California DOL

**STATE OF CALIFORNIA**                                     Gavin Newsom, *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS
Labor Commissioner's Office
*Retaliation Complaint Investigation Unit*
2031 Howe Avenue Suite 100
Sacramento, CA 95825
Phone: (916) 263-2991 Email: retaliation@dir.ca.gov

October 22, 2021

Ashley Gjovik
1050 Benton Street #2310
Santa Clara, CA 95050

Re:   Ashley Gjovik v. Apple Inc.
      State Case No. RCI-CM-842830

Dear Ashley Gjovik:

This office has received your retaliation complaint, filed with this office on August 29, 2021, alleging that you suffered unlawful retaliation in violation of California law.

**Parties are encouraged to engage in settlement discussions amongst themselves. Alternatively, if you are interested in participating in an informal meeting to resolve your complaint, please send an email to retaliation@dir.ca.gov with "SETTLEMENT" in the subject line. Your participation is voluntary. Only if both parties agree, your case will be temporarily assigned to a Deputy Labor Commissioner who is experienced in working with parties to reach satisfactory settlements.**

**Please keep in mind that RCI investigations can be lengthy and may not result in your desired outcome. Settlement allows the parties to come to a compromise and provide relief, resolution, and peace of mind.**

As soon as the case is assigned to an investigator, you and the employer will be contacted and given an opportunity to present documents, position statements, or witness names to support your respective positions. Hold on to these documents until the assigned investigator requests them from you.

We suggest that you obtain the first and last names, addresses, and telephone numbers for witnesses who may be able to tell us more about your claim.  Also, please save any documentation that you may have, such as wage statements, emails, letters, text messages, or notices.  It is helpful if you keep notes of any conversations you have had, noting the date and with whom the conversation took place.  Also, if you have a recollection of what happened, it is helpful if you write it down while your memory is fresh.  A chronology of events can be very useful.

Do not delete, destroy, or discard any potential evidence that relates to the claims, facts, or defenses raised by the complaint. This includes, but is not limited to, any relevant electronic evidence, such as text messages, social media posts, emails, or

RCI 4.3 CASE ACCEPTED WITHOUT DEPUTY ASSIGNMENT (REV. 12/20)

State Case No. RCI-CM-842830
October 22, 2021
Page 2 of 2

voicemails. If you have a policy or practice of regularly deleting, destroying, or discarding documents, information, or things, those policies or practices should be suspended in relation to any potential evidence. Deleting, destroying, or discarding any potential evidence is against the law.

Please tell us if your address or phone number changes.  If we are unable to contact you, we will be unable to proceed with the investigation, and we will be forced to close your case.

The enclosed "Summary of Procedures" will provide additional information about our process.  Again, we will be in contact with you to let you know who the investigator is that will be investigating your complaint.

During the investigation, you are required to mitigate your damages by looking for other employment or working elsewhere. As you apply for employment opportunities, keep detailed records of the positions you apply for, any interviews that you attend, and any employment offers that are made to you. If you do accept an offer, please let me know. Keeping these records will assist the agency with calculating and proving what you may be owed.

If you filed a retaliation complaint because you made a workplace health or safety complaint, you may also file a separate complaint with the U.S. Department of Labor within 30 days of the date of the violation.

Keep in mind that legal claims cannot be brought indefinitely; legal claims have a "statute of limitations," which is a time limit. Filing a complaint with our agency may not prevent the statute of limitations from running out on all the claims you may have, so if you are interested in pursuing this claim or other related claims in a lawsuit, consult with an attorney right away.

Sincerely,

Alejandro Cortez
Deputy Labor Commissioner

**Labor Commissioner's Office**
*Retaliation Complaint Investigation Unit*

**Retaliation Complaint**
**State Case Number: RCI-CM-842830**
**Date Filed: August 29, 2021**



**Department of Industrial Relations**
**STATE OF CALIFORNIA**

## Complainant Information

| First Name | Last Name | Phone Number | Birthdate |
|---|---|---|---|
| Ashley | Gjovik | 415-964-6272 | August 26, 1986 |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 1050 Benton Street #2310 | Santa Clara | CA | 95050 |

| Interpreter Requested? | Language | Email |
|---|---|---|
| No | | ashleymgjovik@protonmail.com |

## Complainant's Representative/Advocate

| Representative/Advocate Name |
|---|
| |

| Phone Number | Email |
|---|---|
| | |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

## Employer Information

| Employer / Business Name | Phone Number |
|---|---|
| Apple Inc. | |

| Business Address | City | State | Zip Code |
|---|---|---|---|
| 1 Apple Park Way | Cupertino | CA | 95014 |

| Address where Complainant worked (if different from Business Address) | City | State | Zip Code |
|---|---|---|---|
| 825 Stewart Drive | Sunnyvale | CA | 94086 |

| Name of Person in Charge | Job Title / Position of Person in Charge |
|---|---|
| Tim Cook | CEO |

| Type of Work Performed | Total Number of Employees | Employer still in Business? |
|---|---|---|
| | | Yes |

## Immigration Threat

| Did your employer make immigration related threats? | No |
|---|---|

Please Explain:

STATE CASE NO. RCI-CM-842830                                      Date Filed: August 29, 2021

| Other Claims Filed | | | |
|---|---|---|---|
| *Claim for unpaid wages?*<br>No | *Date claim filed:* | *Claim filed by:* | *Case Number* |
| *Issued claimed:* | | | |
| *Are other employees also filing retaliation claims against your employer?*<br>I don''t know | | *Have you filed or do you plan to file a separate EPA (Equal Pay Act) complaint?*<br>No | |

| Employment Status | | | |
|---|---|---|---|
| *Date of Hire*<br>February 23, 2015 | *Quit on* | *Suspended on* | *Discharged on* |
| | *Still working for employer?*<br>Yes | *Other:* | |
| *Final Rate of Pay* | | *Last job title with Employer*<br>Sr Engineering Program Manager | |

| Retaliation Complaint | | | |
|---|---|---|---|
| *Why was this Complaint Filed*<br>Other | *Date*<br>August 4, 2021 | *Name of Person Carrying out Change*<br>Unknown | *Title of Person Carrying out Change*<br>Apple Human Resources & Employee Relations; Apple Environmental Health & Safety; managers |
| *Describe what happened:*<br>I raised concerns about work place safety and was told to stop speaking about my concerns. Then I was threatened, harassed, intimidated, suspended, & constructively terminated. | | | |
| *What reason would the employer give for the changes you experienced that you selected from the list above and described?*<br>None | | | |
| *What right did you exercise or action did you take that led to your change in employment?*<br>workplace safety & whistleblower protections | | | |
| *Describe how your employer knew about the right you exercised or the action(s) you took?*<br>I kept saying "stop it you guys, there's labor laws about this" | | | |

| Witnesses | | | |
|---|---|---|---|
| *First Name* | *Last Name* | *Phone Number* | *Email* |

STATE CASE NO. RCI-CM-842830                                    Date Filed: August 29, 2021

| 1. | | | |
|---|---|---|---|
| *Street Address* | | *City* | *State* | *Zip Code* |
| 1. | | | |
| *Please provide a brief explanation of what they saw/heard related to your complaint.* | | | |
| 1. | | | |

### Remedies

*Briefly describe what you hope happens as a result of filing the complaint.*

Accountability & redress

### Authorizations to Release Information

☑ By submitting this form, I hereby certify that the information I have provided is true to the best of my knowledge and/or recollection, and I further acknowledge that this information is being collected by the State and may be shared with another state agency or a private party in accordance with California Civil Code section 1798.24 and the Information Practices Act of 1977 generally.

**Labor Commissioner's Office**
*Retaliation Complaint Investigation Unit*

**Retaliation Complaint**
**State Case Number: RCI-CM-846638**
**Date Filed: September 29, 2021**



Department of
Industrial Relations
STATE OF CALIFORNIA

| Complainant Information | | | |
|---|---|---|---|
| *First Name* | *Last Name* | *Phone Number* | *Birthdate* |
| Ashley | Gjovik | 415-964-6272 | August 26, 1986 |
| *Street Address* | | *City* | *State* | *Zip Code* |
| 1050 Benton Street #2310 | | Santa Clara | CA | 95050 |
| *Interpreter Requested?* | *Language* | *Email* | |
| No | | ashleymgjovik@protonmail.com | |

| Complainant's Representative/Advocate |
|---|
| *Representative/Advocate Name* |
| |
| *Phone Number* | *Email* |
| |
| *Street Address* | *City* | *State* | *Zip Code* |
| |

| Employer Information | | | |
|---|---|---|---|
| *Employer / Business Name* | | *Phone Number* | |
| Apple Inc. | | | |
| *Business Address* | *City* | *State* | *Zip Code* |
| 1 Apple Park Way | Cupertino | CA | 95014 |
| *Address where Complainant worked (if different from Business Address)* | *City* | *State* | *Zip Code* |
| 825 Stewart Drive | Sunnyvale | CA | 94086 |
| *Name of Person in Charge* | *Job Title / Position of Person in Charge* | | |
| Tim Cook | CEO | | |
| *Type of Work Performed* | *Total Number of Employees* | *Employer still in Business?* | |
| Computer Manufacturing | 100,000 | Yes | |

| Immigration Threat |
|---|
| *Did your employer make immigration related threats?*   No |
| *Please Explain:* |
| |

STATE CASE NO. RCI-CM-846638                                          Date Filed: September 29, 2021

| Other Claims Filed | | | |
|---|---|---|---|
| *Claim for unpaid wages?* <br> No | *Date claim filed:* | *Claim filed by:* | *Case Number* |
| *Issued claimed:* | | | |
| *Are other employees also filing retaliation claims against your employer?* <br> I don''t know | | *Have you filed or do you plan to file a separate EPA (Equal Pay Act) complaint?* <br> No | |

| Employment Status | | | |
|---|---|---|---|
| *Date of Hire* <br> February 23, 2015 | *Quit on* | *Suspended on* <br> August 4, 2021 | *Discharged on* <br> September 9, 2021 |
| | *Still working for employer?* <br> No | *Other:* <br> Amendment to: RCI-CM-842830 | |
| *Final Rate of Pay* <br> 169,000/year | | *Last job title with Employer* <br> Senior Engineering Program Manager | |

| Retaliation Complaint | | | |
|---|---|---|---|
| *Why was this Complaint Filed* <br> Terminated/Discharged/Fired | *Date* <br> September 9, 2021 | *Name of Person Carrying out Change* <br> Yannick Bertolus; Aleks Kagramanov | *Title of Person Carrying out Change* <br> Vice President of the Product Integrity team; Investigator in the Workplace Violence team |

*Describe what happened:*

3/17: Raised concerns abt safety at my Superfund office;

3/22: Told to stop sharing concerns;

3/29: Reported intimidation to ER & then ER retaliated;

Apr: Constructive termination (HWE) by Sr Dir;

Apr-Jun: Still raising concerns abt safety & also abt sexism & retaliation;

July: ER launches 2nd investigation I actually req;

8/3: Taking pics of safety issues;

8/4: ER suspends me & pressures me to stop organizing with other employees; 9/9: Terminated

9/10: NLRB affidavit abt Apple

*What reason would the employer give for the changes you experienced that you selected from the list above and described?*

STATE CASE NO. RCI-CM-846638                                    Date Filed: September 29, 2021

VP: "Apple has determined that you have engaged in conduct that warrants termination of employment, including, but not limited to, violations of Apple policies. You disclosed confidential product-related information in violation of Apple policies and your obligations under the Intellectual Property Agreement (IPA). We also found that you failed to cooperate and to provide accurate and complete information during the Apple investigatory process."

Workplace Violence: "We are investigating allegations that you improperly disclosed Apple confidential information. Since you have chosen not to participate in the discussion, we will move forward with the information that we have, and given the seriousness of these allegations, we are suspending your access to Apple systems"

*What right did you exercise or action did you take that led to your change in employment?*

I reported concerns about unsafe working conditions & possible violations/noncompliance of multiple laws to the state and federal government, as well as my Apple supervisor, the Apple Env Health Safety team, and Apple Human Resources & Employee Relations

*Describe how your employer knew about the right you exercised or the action(s) you took?*

Beyond raising concerns to Apple, I informed Apple of my complaints to the government in July, providing them copies of the emails and even forwarding the emails to them. I also filed more complaints in Aug & it was reported by major news sources.

**Witnesses**

| First Name | Last Name | Phone Number | Email |
|---|---|---|---|
| 1. ██▊█ | ████ | | ███████████ |
| 2. ██ | ██ | █████ | ██████████ |
| 3. ██ | ██ | █████ | █████████ |
| 4. ██ | ███ | | |
| 5. ██ | █████ | █████ | |
| 6. ██ | ████ | | ██████████ |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 1. UCSF & CA Dept of Public Health | | CA | |
| 2. Worked in my building with me (825 Stewart Drive) | | CA | |
| 3. Worked in my building with me (825 Stewart Drive) | | CA | |
| 4. Worked in my building with me (825 Stewart Drive) - ask Simon for contact info | | CA | |
| 5. Federal EPA | | CA | |
| 6. | | CA | |

*Please provide a brief explanation of what they saw/heard related to your complaint.*

1. I discussed my safety & chemical exposure concerns about my office with Dr. Harrison during an UCSF office visit in April 2021

STATE CASE NO. RCI-CM-846638                                    Date Filed: September 29, 2021

| 2. Mike and I were working together starting in March 2021 to investigate and raise concerns about the safety of our office |
| 3. Simon was helping me gather evidence of active safety issues in the office in July |
| 4. Eddie was helping me gather evidence of active safety issues in the office in July |
| 5. I was emailing with the Federal EPA about my concerns about the safety of my office & being intimidated to not speak about my concerns starting in April |
| 6. Michael was the EH&S manager overseeing the safety of my Superfund office, but after i started asking questions he went on leave and then quit Apple after working there 7 years |

| **Remedies** |
| --- |
| *Briefly describe what you hope happens as a result of filing the complaint.* |
| Injunctive: warning to and/or discipline for Apple, including broader labor investigation into Apple by the DOL |
| Damages: payment of lost wages, reinstatement of benefits including RSUs, punitive damages if available |

| **Authorizations to Release Information** |
| --- |
| ☑ By submitting this form, I hereby certify that the information I have provided is true to the best of my knowledge and/or recollection, and I further acknowledge that this information is being collected by the State and may be shared with another state agency or a private party in accordance with California Civil Code section 1798.24 and the Information Practices Act of 1977 generally. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

## SECTION:

# US DOL
# DWPP

**U.S. Department of Labor**

**Occupational Safety and Health Administration**
**San Francisco Federal Building**
**90 7th Street, Suite 2650**
**San Francisco, CA  94103**



**Via Electronic Mail**
December 10, 2021

Ashley Gjovik
1050 Benton Street, Apt. 2310
Santa Clara, CA 95050
ashleymgjovik@protonmail.com

Complainant(s):  Ashley Gjovik
Respondent(s):  Apple Inc.
Case Number:  Apple Inc./Gjovik/9-3290-22-051
Law/Statute 1:  Section 11(c) of the Occupational Safety and Health Act (OSHA),  29 U.S.C. §660
Law/Statute 2:  Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §9610
Law/Statute 3:  Sarbanes-Oxley Act (SOX),  18 U.S.C.A. §1514A
Regulation 1:  OSHA 11(c) Complaint Procedures:  29 CFR Part 1977
Regulation 2:  EPA Complaint Procedures:  29 CFR Part 24
Regulation 3:  SOX Complaint Procedures:  29 CFR Part 1980

Dear Ms. Gjovik:

This office has received a complaint filed by the above-named Complainant(s) against the above-named Respondent(s). The complaint alleges retaliatory employment practices in violation of the Law(s)/Statute(s) cited above. A copy of the complaint allegation is enclosed.

The Occupational Safety and Health Administration's Whistleblower Protection Program (WPP) is responsible for enforcing the anti-retaliation provisions of the law(s) cited above and will conduct its investigation following the procedures outlined in the regulation(s) cited above. You may obtain a copy of the law(s) and regulation(s) at: **_www.whistleblowers.gov_**. Upon request, a printed copy of these materials will be mailed to you.

WPP has provided a copy of the complaint to Respondent(s) and has requested a written position statement. You will receive a copy of the position statement(s) with any supporting evidence and will be given an opportunity to respond.

You have the right to be represented in this matter. If you choose to have a lawyer or someone else represent you, please have that person complete and promptly return to the assigned investigator the enclosed Designation of Representative form.

You are expected to cooperate in this investigation and failure to do so may cause the complaint to be dismissed.

WPP will send most, if not all, correspondence by email - this includes final disposition letters that include time sensitive appeal rights.

**WPP policy encourages the voluntary resolution of complaints. If you are interested in settlement discussions and/or Alternative Dispute Resolution (ADR), please contact the assigned investigator.**

You are responsible for retaining all relevant records and documents relating to the above-captioned case. In addition, if you have not already done so, **within 20 days** of receiving this letter, please email the investigator (**AND** send to all named parties) any evidence related to the complaint, such as notes, minutes, letters, emails, texts, voice messages, etc. If you have not already done so, email the investigator (but **DO NOT** send to any named parties) a list of the names, addresses, and telephone numbers of potential witnesses, along with a brief summary of what each witness should know.

*Please send documents to WPP via email, if possible, using the investigator's email address below and also send a copy to all named parties listed below:*

ASSIGNED INVESTIGATOR:                    RESPONDENT(S):
Andrea Diangco, Regional Investigator       Apple Inc.
Whistleblower Protection Program            One Apple Park Way
U.S. Department of Labor, OSHA             Cupertino, CA 95014
300 Fifth Avenue, Room 1280
Seattle, Washington 98104
Phone: 206-757-6699
E-mail: Diangco.Andrea@dol.gov

**All communications and submissions should be made to the investigator, identified above.**

Finally, OSHA is not responsible for enforcing the underlying regulatory violation and/or concerns. You are encouraged to contact the following agency to report the underlying violations:

**The Environmental Protection Act (EPA)** is the federal government agency responsible for regulating environmental protection matters: https://echo.epa.gov/report-environmental-violations.
Finally, OSHA is not responsible for enforcing the underlying regulatory violation and/or concerns. You are encouraged to contact the following agency to report the underlying violations:

**The U.S. Securities and Exchange Commission (SEC)** is the federal government agency responsible for enforcing the federal securities laws, proposing securities rules, and regulating the securities industry, which is the nation's stock and options exchanges, and other activities and organizations, including the electronic securities markets in the United States: https://www.sec.gov/tcr.

Sincerely,


For Ryan Himes
Assistant Regional Administrator

Enclosures:     (1) Designation of Representative Form
                (2) Alternative Dispute Resolution FAQ
                (3) Copy of Complaint Allegation

**Case Activity Worksheet**

Occupational Safety and Health Administration

Run Date: 12/10/21

| Filed Date: | 08/29/21 | Local Case Number: | 9-3290-22-051 | | Activity Number: | 3057667 | Reporting ID: | 0900000 |
|---|---|---|---|---|---|---|---|---|
| Case Type: | OSHA | Statutory Implication: | CERCLA | SOX | | | | |
| Allegation: | M - Complaint with management | | | Investigator: | Diangco,Andrea | | Assigned Date: | 11/03/21 |

| Allegation Summary: | Beginning in March 2021, Complainant reported multiple safety/health concerns to Respondent including but not limited to: vapor intrusion exposure in the building, inquiring about vapor intrusion testing, and the building being located on a Superfund site (TRW Microwave). Additionally, Complainant reported concerns that one of Respondent's board of directors, Ronald Sugar, has a conflict of interest because he was previously the CEO/President of Northrup Grumman. Northrup Grumman was the responsible party for the TRW Microwave site.<br><br>Complainant alleges that on or around August 4, 2021, Respondent suspended her employment and subsequently terminated her employment on September 9, 2021 in retaliation for participating in the aforementioned protected activities and for filing or being suspected of filing a complaint with the SEC and the EPA. Complainant contends Respondent violated her rights under Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. §660, Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9610, and Sarbanes-Oxley Act, 18 U.S.C.A. §1514A. |
|---|---|

| Respondent Information | Name: | Apple Inc. | | Phones: | | Emails: | |
|---|---|---|---|---|---|---|---|
| Primary Address: | | 825 Stewart Drive | | | | | |
| | | Sunnyvale CA 94086 UNITED STATES | | | | | |
| Alternate Address: | | | | | | | |
| | | | | | | | |

| Complainant Information | Name: | Ashley Gjovik | | Phones: | | Emails: | |
|---|---|---|---|---|---|---|---|
| Primary Address: | | 1050 Benton Street 2310 | H | (415) 964-6272 | | ashleymgjovik@protonmail. | |
| | | Santa Clara CA 95050 | | | | | |

| Determination Date | Determination | | Total Compensation | | $0 | | Reinstatement | |
|---|---|---|---|---|---|---|---|---|

I certify that the complaint was filed with me on (date): 08/29/21

| Signature | Title | Date |
|---|---|---|
| | Investigator | 12/10/21 |

Note:This report contains sensitive information that may not be appropriate for distribution outside OSHA. Local offices should review the information BEFORE it is provided to outside requestor.

## Confirmation: OSHA Online Whistleblower / Retaliation Complaint filed on 29-AUG-21

From   Whistleblower-Complaint@osha.gov <Whistleblower-Complaint@osha.gov>

To     Ashley Gjovik<ashleymgjovik@protonmail.com>

Date   Sunday, August 29th, 2021 at 2:32 PM

Thank you! As of  August 29, 2021 02:32 PM US Eastern Time ,you filed a whistleblower retaliation complaint with OSHA using our online filing system.  We advise that you print or save a copy of this email for your records.

The reference number for your complaint is ECN76833.

An OSHA representative will contact you using the contact information that you provided in your complaint.  It is very important that you respond to such contact; OSHA cannot proceed with an investigation until it has discussed this complaint with you.

If you have questions regarding the status of your complaint, please feel free to call your local <a href="http://www.osha.gov/html/RAmap.html">OSHA Regional or Area Office</a>.

We appreciate the opportunity to be of service of you.


Note: Please do not reply to this email. This is a system generated email and this email account is not monitored.

# Confirmation: OSHA Online Whistleblower / Retaliation Complaint filed on 02-NOV-21

From   Whistleblower-Complaint@osha.gov <Whistleblower-Complaint@osha.gov>

To   Ashley Gjovik<ashleymgjovik@protonmail.com>

Date   Tuesday, November 2nd, 2021 at 5:03 PM

Thank you! As of  November 02, 2021 05:03 PM US Eastern Time ,you filed a whistleblower retaliation complaint with OSHA using our online filing system.  We advise that you print or save a copy of this email for your records.

The reference number for your complaint is ECN78416.

An OSHA representative will contact you using the contact information that you provided in your complaint.  It is very important that you respond to such contact; OSHA cannot proceed with an investigation until it has discussed this complaint with you.

If you have questions regarding the status of your complaint, please feel free to call your local <a href="http://www.osha.gov/html/RAmap.html">OSHA Regional or Area Office</a>.

We appreciate the opportunity to be of service of you.


Note: Please do not reply to this email. This is a system generated email and this email account is not monitored.

**Whistleblowing**

## Apple faces probe over whether it retaliated against whistleblower

US labour department inquiry follows claims by ex-senior engineering programme manager



The Department of Labor investigation will focus on whether Apple retaliated against a whistleblower who claimed there were poor working conditions at the company © Reuters

**Patrick McGee** in San Francisco and **Patrick Temple-West** in New York 11 MINUTES AGO

The US Department of Labor is investigating Apple over claims that it retaliated against an employee who complained of workplace harassment and unsafe working conditions.

Ashley Gjovik, 35, had been a senior engineering programme manager for six years at Apple when she was fired in September for allegedly leaking confidential information by tweeting about allegations of harassment, surveillance and workplace safety issues. Gjovik alleged that she was dismissed under a false pretext following numerous complaints that led to more than a dozen instances of retaliation including job reassignment.

The labour department declined to comment but confirmed its investigation in a letter to Gjovik seen by the Financial Times, dated December 10.

12/13/21, 12:09 PM
Case 3:23-cv-04597-EMC Document 35-5 Filed 12/25/23 Page 19 of 70
Exclusive: Apple faces US labour inquiry over whistleblower retaliation claims | Financial Times

Stephen Kohn, an employment lawyer and an expert in US whistleblowing law, said the burden of proof needed for the agency to open an investigation was high, as the employee must have already established enough evidence that, unless rebutted, would prove the case.

He said the case would be closely watched because it was especially rare for a labour dispute with Big Tech "to break into the public" domain. The DoL rarely investigates such cases, he added, because of the widespread use of non-disclosure agreements to "silence and intimidate whistleblowers".

Apple declined to discuss specific employee matters out of respect for privacy, but said: "We are and have always been deeply committed to creating and maintaining a positive and inclusive workplace. We take all concerns seriously and we thoroughly investigate whenever a concern is raised."

Mary Inman, head of the international whistleblower practice at the law firm Constantine Cannon, described the case as "a breath of fresh air" as Joe Biden's administration signals a more aggressive stance to hold companies to account.

Last month the labour department's top attorney announced a new initiative to collaborate with other civil law enforcement agencies to protect workers from discrimination and misconduct.

For Apple, the investigation could mark the most significant setback in a string of labour disputes this year including a shareholder proposal requesting more information about the company's use of nondisclosure agreements. The proposal alleged the iPhone maker extends its culture of secrecy into workplace areas protected by state and federal laws.

Gjovik's original complaints stem from mid-March when she cited "chemical exposure" concerns at her Apple office in Sunnyvale, California. The facility is located on a so-called Superfund site, requiring special oversight owing to previous contamination by hazardous waste materials beneath the building.

When Apple sent an email about wanting to test the site for "vapour intrusion", Gjovik's questions about it were rebuffed by Apple's employee relations department and "they intimidated me not to speak about my safety concerns", she alleged.

The DoL will examine whether Apple retaliated over claims about occupational safety and hazardous waste management liability, alongside a third allegation that falls under the Sarbanes Oxley Act, or Sox, which sets out the rules for financial record keeping.

keeping.

Gjovik pointed to a potential conflict of interest regarding Apple board member Ronald Sugar, chair of the audit committee, as he was previously chief executive of Northrop Grumman, the defence company responsible for the dump — and maintenance — of waste materials beneath the Sunnyvale office.

Sugar could not be immediately reached for comment.

Gjovik's case was "especially unusual" and noteworthy because of the three separate statutes or laws that may have been broken, said Michael Duff, a former attorney at the National Relations Labor Board.

"Federal agencies exercise what in the context of criminal law is known as prosecutorial discretion," he said. "They are very careful of what cases they move forward because they have scarce resources, so they must have a strong reason to believe they can prevail."

Other prominent investigations by the labour department include allegations that Google had a "systemic" problem underpaying female employees. The case was resolved this year with the search giant agreeing to pay $3.8m. Palantir, an analytics company, in 2017 paid the DoL $1.6m to settle allegations that it discriminated against Asian candidates when recruiting new engineers.

Seth Goldstein, a pro-bono attorney who has been representing Amazon employees alleging unfair labour practices, said Gjovik's actions were a reflection of her generation wanting companies to live up to the values they espoused. "It's a sea change in the fact that people are standing up for what's right," he said.

## Daily newsletter





**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

+1 650 614 7400

**orrick.com**

March 4, 2022

**VIA ELECTRONIC MAIL**

**Jessica R. Perry**

E        jperry@orrick.com
D        +1 650 614 7350
F        +1 650 614 7401

Andrea Diangco, Regional Investigator
Whistleblower Protection Program
U.S. Department of Labor, OSHA
300 Fifth Avenue, Room 1280
Seattle, Washington 98104
diangco.andrea@dol.gov

Ashley Gjovik, Complainant
1050 Benton Street, Apt. 2310
Santa Clara, California 95050
ashleymgjovik@protonmail.com

Re:    *Ashley Gjovik v. Apple Inc.*, Case No. 9-3290-22-051

Dear Ms. Diangco:

This firm is counsel to Respondent Apple Inc. in the above-referenced matter. This letter is Apple's initial response to the amended complaint ("Complaint") filed by Ashley Gjovik on November 2, 2021. This response[1] contains confidential business information belonging to Apple; accordingly, Apple requests that it be kept confidential and that Apple receive pre-disclosure notification pursuant to 29 C.F.R. § 70.26 in the event of any FOIA request covering this response.

Apple submits this response without waiving its right to respond further, including to any additional submission that Ms. Gjovik may make. While we believe that this response demonstrates Ms. Gjovik's retaliation claim has no merit, please let us know if you believe additional information would be helpful.

Except as expressly admitted below, Apple denies Ms. Gjovik's allegations in the Complaint in full.

I.       **INTRODUCTION**

Ms. Gjovik's retaliation claims here hinge on her proving that Apple retaliated against her for raising concerns about (1) unsafe work conditions and (2) an Apple board member's alleged conflict of interest regarding efforts to remediate those alleged conditions. All of her claims are without merit.

---

[1] Apple has a compendium of evidence in support of this response available upon request, should you believe it would be helpful in connection with your review of Ms. Gjovik's Complaint.



Andrea Diangco
March 4, 2022
Page 2

Apple did not terminate Ms. Gjovik's employment because she voiced concerns, but instead because she violated Apple policy by ***intentionally disclosing confidential information about Apple products on Twitter and, as Apple later discovered, to the press***, in clear breach of her confidentiality obligations. And she refused to meaningfully cooperate in Apple's investigatory process.

Indeed, Ms. Gjovik's termination was well after she first voiced the concerns on which the present Complaint is based. According to Ms. Gjovik, she first raised concerns to Apple in March 2021, more than six months before she was terminated; in the interim, Apple engaged repeatedly and in good faith in an effort to address Ms. Gjovik's concerns. Apple had legitimate business reasons to terminate Ms. Gjovik's employment, and the six-month time gap is too attenuated to support any inference causation – a key element of each of Ms. Gjovik's three claims under the Occupational Safety and Health Act ("OSHA") section 11(c), the Sarbanes-Oxley Act ("SOX"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

## II.      FACTUAL BACKGROUND

### A.      Apple Prohibits Discrimination, Harassment, and Retaliation.

Apple has a firm and long standing commitment to diversity and inclusion and does not tolerate discrimination, harassment, or retaliation of any kind. Apple takes seriously its legal obligations to maintain a workplace free of discrimination, harassment, and retaliation and complies with all federal and state requirements imposed upon it. Apple has and strictly enforces its non-discrimination, anti-harassment, and non-retaliation policies.

Apple has an Employee Relations ("ER") team within its People function that investigates internal complaints of discrimination, harassment, and retaliation. Employees can complain openly or anonymously. And there are many avenues for them to raise complaints: they may speak directly to any Apple manager, contact Apple's People Support team and/or their People Business Partner, contact the confidential Business Conduct Helpline via phone, email, or online submission, or submit a confidential or anonymous report to EthicsPoint, Apple's third-party vendor. Apple policy strictly prohibits retaliation for reporting any complaints or concerns.

### B.      Ms. Gjovik Worked at Apple for Six Years in a Role That Furnished Her Access to Highly Confidential Apple Product Information – Which She Agreed to Protect.

Apple hired Ms. Gjovik as an iOS Build Engineer Project Manager at Apple's Sunnyvale, California location in February 2015. She subsequently transitioned to an Engineering Program Manager role and then was



Andrea Diangco
March 4, 2022
Page 3

promoted to a Senior Engineering Program Manager role in January 2017. She held that position until the termination of her employment on September 10, 2021.[2]

Upon joining Apple, Ms. Gjovik agreed—as a condition of employment—to comply with Apple's confidentiality policies. On January 31, 2015, Ms. Gjovik signed the Confidentiality and Intellectual Property Agreement ("Confidentiality Agreement"). The Confidentiality Agreement "prohibits [Ms. Gjovik], during or after employment, from using or disclosing, or permitting any other person or entity to use or disclose, any Proprietary Information without the written consent of Apple, except as necessary to perform [her] duties as an Apple employee." "Proprietary information" includes, inter alia, non-public "materials or information relating to past, existing, or future products and services." Ms. Gjovik agreed to "strictly comply with all of Apple's rules and policies regarding proprietary information" and understood that breach of the agreement could result in termination of her employment. Additionally, the importance of protecting Apple's confidential pre-release product information is clearly set out in the company's Business Conduct Policy: "One of [Apple's] greatest assets is information about [its] products and services, including future product offerings." To safeguard information about Apple's products, employees are prohibited from disclosing confidential information without prior approval of management.

As a Senior Engineering Program Manager, Ms. Gjovik had access to proprietary and trade secret information about unreleased products and features under development, which was shared internally only with those who had a business need to know. From time to time, Ms. Gjovik was given the opportunity to participate in new product or feature user studies and to test unreleased prototypes. On each occasion, Ms. Gjovik's participation was entirely voluntary and at times required her to agree to additional confidentiality obligations that prohibited her from disclosing any information about the existence of the study or her participation in it.

In July 2018, Ms. Gjovik participated in a user study of an internal and proprietary application called "Alpha."[3] Because the Alpha application was still in testing phase and unavailable to the public, Apple required all participants— as a condition of participating—to maintain strict confidentiality. Ms. Gjovik signed the Alpha Study Consent Form and expressly acknowledged that any information about the study, including her participation, was confidential under the Confidentiality Agreement and could not to be disclosed to third parties ("[b]y agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple.").

---

[2] In 2018, Ms. Gjovik requested, and Apple granted, a flexible work schedule to allow her to continue working full-time while also attending law school. This arrangement continued until the termination of Ms. Gjovik's employment.

[3] Apple refers to this study by the codename "Alpha" in an effort to protect Apple's confidential product information from further unauthorized disclosure.



Andrea Diangco
March 4, 2022
Page 4

**C.** **Ms. Gjovik Disclosed Apple's Confidential Information In Violation Of Her Written Confidentiality Agreements and Refused to Meaningfully Participate in the Investigation Into Her Conduct.**

On August 28, 2021, Ms. Gjovik tweeted[4] details about a proprietary study Apple was conducting, codenamed "Omega," about a confidential Apple product.[5] Like the Alpha study, the details of Omega were not known except to a small select group within Apple, and certainly not outside Apple, and Ms. Gjovik agreed to keep them confidential under her Confidentiality Agreement. Despite this, Ms. Gjovik's tweet both identified the name and purpose of the study regarding an unreleased product under development. Ms. Gjovik's tweet was retweeted the same day by an account dedicated to posting predictions about future Apple products. The next day, Apple received a formal complaint through its Business Conduct Hotline that Ms. Gjovik had publicly disclosed confidential information about the Omega study.

On August 30, 2021, Ms. Gjovik tweeted photographs and a video of herself created by the Alpha application, thus disclosing Apple confidential information. She also linked to a story published in The Verge, a technology blog, in which she disclosed her participation in the Alpha study.[6]

Ms. Gjovik knew her conduct was inappropriate; she had previously reported similar conduct by other Apple employees as a violation of their employee confidentiality obligations. In January 2020, Ms. Gjovik reported to Apple conduct of former employees who gave an interview in which they disclosed, among other things, internal code names, which Ms. Gjovik stated were "trade secret."

Upon learning of her unauthorized disclosure, Apple promptly launched an investigation. On September 9, an Apple investigator requested to speak with Ms. Gjovik as part of that investigation. Ms. Gjovik refused to be interviewed, and Apple completed its investigation based on the available information, including her publicly available Twitter posts. Based on clear evidence, Apple concluded that Ms. Gjovik had violated her confidentiality agreements and Apple policy.

---

[4] In March 2021—the same time Ms. Gjovik asserts she began raising alleged concerns with Apple—Ms. Gjovik created and has since maintained an active Twitter account.

[5] As with the Alpha study, Apple refers to this study by the codename "Omega" in an effort to safeguard Apple's confidential product information.

[6] Zoe Schiffer, *Apple Cares About Privacy, Unless You Work at Apple*, The Verge (Aug. 30, 2021), https://www.theverge.com/22648265/apple-employee-privacy-icloud-id.



Andrea Diangco
March 4, 2022
Page 5

**D.** **Apple Terminated Ms. Gjovik's Employment Because She Violated Her Confidentiality Obligations And Refused to Cooperate During An Internal Investigation.**

On September 9, Apple terminated Ms. Gjovik's employment effective the following day for her violation of her Intellectual Property Agreement, company policy, and her refusal to cooperate during Apple's internal investigation process. Apple's Misconduct and Discipline Policy provides that certain conduct may warrant immediate termination, specifically including "[v]iolating confidential, proprietary, and trade secret information obligations (including those stated in Apple's Intellectual Property Agreement)" and "interfering or failing to cooperate with an investigation."

**E.** **Ms. Gjovik Subsequently Admitted That She Disclosed Apple's Confidential Information.**

On September 15, 2021, a different Apple employee made another report to the Business Conduct Helpline that Ms. Gjovik had publicly disclosed information about the Alpha study. The employee attached screenshots of text messages they had exchanged with Ms. Gjovik dated August 20, 2021. In the text messages, **Ms. Gjovik admitted to disclosing confidential information** about the Alpha study to Zoe Schiffer, a reporter from The Verge:

> I'm helping Zoe with the privacy article. I gave her [Alpha] details because that bothers me too … I'm even letting her include a few pics from [Alpha].

As discussed above, Ms. Gjovik's very involvement with the Alpha study constitutes confidential information, as do any details about the study or photos or other documents that are the product of it.[7] Apple's subsequent confirmation that she admitted to disclosing confidential information publicly and intentionally further justifies Apple's termination decision.

**F.** **Ms. Gjovik Made Other Various Claims Apple Has Diligently Investigated.**

**1.** **Apple Investigated Ms. Gjovik's Safety Concerns And Repeatedly Encouraged Her to Raise Them.**

Beginning in March 2021, Ms. Gjovik raised various concerns about a vapor intrusion study in the Stewart 1 building in which she worked. In response, Apple met with Ms. Gjovik at least seven times to provide her with numerous reports per her requests, encouraged her to report any further concerns she had to Apple's

---

[7] Apple promptly contacted Twitter to request removal of Ms. Gjovik's tweets disclosing confidential information. Twitter refused. Through counsel, Apple then contacted Ms. Gjovik and she agreed to remove the tweets.



Andrea Diangco
March 4, 2022
Page 6

Environmental, Health & Safety ("EHS") team, and worked with her to find a reasonable accommodation for her perceived concerns.

Stewart 1 is a Superfund site that has been redeveloped for commercial use and was deemed acceptable for occupancy by the Environmental Protection Agency (EPA). *See* https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.redevelop&id=0901181). Apple conducts periodic evaluations and preventative maintenance of buildings with vapor intrusion mitigation systems as part of its vapor intrusion management program. Accordingly, on February 18, 2021, Apple notified building access managers of Stewart 1 that it would be conducting a routine "vapor intrusion survey" in Stewart 1. On March 17, 2021, Ms. Gjovik began asking questions about the planned work, while alleging to have experienced hazardous vapor intrusion before at a non-Apple site and the issue had, in her words, "become a bit of a personal crusade." Ms. Gjovik requested to meet with Apple's EHS department and over the next four months, EHS and Apple management met with Ms. Gjovik repeatedly in an effort to address her questions and concerns:

- <u>March 22, 2021</u>: Ms. Gjovik met with her manager to discuss the vapor intrusion survey, and her manager invited Ms. Gjovik to share any concerns she had with Apple's experts in the EHS department.

- <u>April 2, 2021</u>: Ms. Gjovik met with an EHS expert and ER representative to discuss the vapor intrusion survey. Ms. Gjovik sent a list of 17 questions to the EHS expert and ER representative before the meeting which, as Ms. Gjovik noted in her meeting recap, they addressed during the meeting. Specifically, Ms. Gjovik's notes state that EHS informed Ms. Gjovik that a vapor intrusion mitigation system had been installed in 2014 before Apple moved into the building, and no unacceptable vapor intrusion was occurring at the site, per 2015 testing results, which EHS also provided to Ms. Gjovik. Additionally, Ms. Gjovik's notes state that Apple personnel reiterated during the meeting that she could "speak freely about [her] working conditions" without fear of retaliation, expressly stated that she was permitted to contact the EPA, and encouraged her to report to EHS any chemical odors as soon as possible.[8]

- <u>April 9, 2021</u>: EHS sent Ms. Gjovik links to reports about vapor intrusion per her request.

---

[8] Shortly after EHS told Ms. Gjovik that she may contact the EPA, Ms. Gjovik reached out to the EPA to express her concerns. On June 7, 2021, the EPA described to Ms. Gjovik the various protective measures that have been implemented to prevent vapor intrusion into the Stewart 1 building, and further explained that the 2015 testing results "demonstrated that the chemicals related to the [site] were less than EPA's indoor air human health risk screening values for workers." The EPA assured Ms. Gjovik that it "believes the remedy in place at the [site] remains protective." The EPA additionally clarified to Ms. Gjovik that "there is no specific EPA requirement to notify each site visitor or construction or office worker of a mitigated potential risk."



Andrea Diangco
March 4, 2022
Page 7

- <u>April 11, 2021</u>: Ms. Gjovik thanked the EHS expert for his "transparency" and sent him 16 additional questions.

- <u>April 27, 2021</u>: Ms. Gjovik met with an ER representative and alleged that her manager had told her she could not share her concerns about the Stewart 1 site (a claim he denied). ER again told Ms. Gjovik's that she was free to share information about "the terms and conditions of [her] employment" (without restriction), and encouraged her to strive to ensure information she shared (including about what Apple personnel had told her) was accurate and complete.

- <u>May 17, 2021</u>: Ms. Gjovik had another meeting with EHS and ER, during which EHS reassured her there was no concerning vapor intrusion at the Stewart 1 site. EHS also answered the 16 follow-up questions Ms. Gjovik had posed in her April 11 email. Per Ms. Gjovik's meeting notes, ER again told her she could share her concerns with anyone and "Apple would never restrict [her] right to speak about workplace safety concerns."

- <u>May 18, 2021</u>: Ms. Gjovik met with her skip-level manager. During the meeting he encouraged her to continue to raise any concerns she had with EHS and ER, and in a follow-up email stated "Apple does not tolerate retaliation for raising concerns. … I know you raised some issues to EH&S about Stewart 1 … so please continue to work with EH&S to address your questions/concerns."

- <u>June 10, 2021</u>: Ms. Gjovik met with ER and discussed the possibility of an accommodation to work remotely, allegedly due to her concerns about the safety of the Stewart 1 site. ER answered Ms. Gjovik's questions about the accommodation request process and continued to work with Ms. Gjovik over the next six weeks in an effort to identify a reasonable accommodation that would work for both Ms. Gjovik and Apple.[9]

- <u>July 2, 2021</u>: ER emailed Ms. Gjovik to follow up on Ms. Gjovik's questions regarding scheduled work in the building. ER provided an update, and explained that Apple was in the middle of a three-step project—first announced in February 2021— that involved (1) evaluating potential pathways through which vapors could potentially enter the building, (2) voluntarily and preventatively sealing any potential pathways, including cracks in the floor that were the result of natural floor movement, and (3) conducting indoor air testing once the sealing was complete.

- <u>July 7, 2021</u>: Ms. Gjovik met with EHS and ER to discuss the voluntary plan to preventatively seal potential pathways for vapor intrusion and to conduct air testing. EHS assured Ms. Gjovik of the

---

[9] Ultimately, Ms. Gjovik's request for an accommodation became moot in August 2021 when Apple granted Ms. Gjovik's request for paid administrative leave while Apple investigated a separate and unrelated complaint she had made about her work environment.



Andrea Diangco
March 4, 2022
Page 8

building's safety, explaining that measures were in place to mitigate the potential for vapor intrusion. EHS again reviewed the three-step project announced in February 2021 and explained it was part of Apple's regular maintenance, not due to concerns regarding the safety of the building. EHS also explained that no EPA reporting was necessary because Apple's planned work was routine and voluntary.

Far from retaliating against Ms. Gjovik in an effort to stifle her concerns about workplace safety, Apple devoted significant time and resources to addressing them.

2.      **Apple Investigated Ms. Gjovik's Concerns About an Alleged Conflict Of Interest by an Apple Board Member.**

On July 19, 2021, Ms. Gjovik wrote to the EPA regarding her belief that a member of Apple's Board of Directors (Ronald Sugar) had a conflict of interest regarding the Stewart 1 building. She contended that because Mr. Sugar had previously been the CEO of Northrup Grumman – which Ms. Gjovik asserted was primarily responsible for maintaining environmental safety at Stewart 1 – Mr. Sugar had made or supported decisions favorable to Northrup Grumman in connection with Stewart 1, at Apple's expense. Ms. Gjovik forwarded her communications with the EPA to the ER team on July 27, 2021 and again the following day.

Apple did not stifle Ms. Gjovik's concerns; it instead investigated them and found that they lacked merit. By the time Apple's investigation regarding this issue was complete, however, Ms. Gjovik had been terminated for breach of her confidentiality obligations.

3.      **Apple Granted Ms. Gjovik's Request To Be Placed On Paid Administrative Leave.**

On July 20, 2021, Ms. Gjovik raised new concerns that she believed her managers were creating a "hostile work environment."[10] When she met with an ER Investigator to discuss those concerns, Ms. Gjovik suggested administrative leave as a "short-term" solution to the alleged issue and confirmed her suggestion in the email summary she sent ER after their discussion.

On August 4, 2021, Ms. Gjovik met with ER again and expressly requested to be placed on paid administrative leave. ER agreed and confirmed by email:

---

[10] Apple expressly denies Ms. Gjovik's hostile work environment claims, which are not at issue here but instead are the subject of her separate charges with the DFEH, EEOC, and NLRB. Apple does, however, discuss her hostile work environment allegations herein to the limited extent relevant here (e.g., responding to her claim that she was "suspended" in August 2021 which in fact she requested and was granted paid administrative leave).



Andrea Diangco
March 4, 2022
Page 9

> I want to confirm our conversation a few minutes ago. **_Per your request, you are now on paid administrative leave so as to not interact with your managers_**.

Ms. Gjovik did not email ER back. But that same day, Ms. Gjovik misrepresented their meeting in a tweet, alleging that Apple had "suspended" her by placing her on an involuntary "indefinite" leave. ER emailed Ms. Gjovik to correct her misrepresentation the following day. ER told Ms. Gjovik that since the paid leave was at her request, she could return to work at any time. Ms. Gjovik never responded.

## III.    ARGUMENT

Apple terminated Ms. Gjovik's employment because she chose to disclose confidential Apple product information she was under an obligation to keep in confidence, and then refused to participate into the internal investigation of that disclosure. Simply put, there was no retaliation under OSHA, SOX, or CERCLA. Ms. Gjovik has not established—and cannot establish—a _prima facie_ case of retaliation. All three statutes require that Ms. Gjovik show: (1) she engaged in a protected activity; (2) Apple knew or suspected that she engaged in the protected activity; (3) she suffered an adverse action; and (4) the protected activity was at least a contributing factor[11] in the adverse action. _See_ 29 U.S.C.A. § 660(c)(1) (OSHA 11(c)); 18 U.S.C.A. § 1514A(a) (SOX); 42 U.S.C.A. § 9610(a) (CERCLA).[12] Because none of her expressions of concern was a "contributing factor" in her termination, she cannot establish retaliation on the facts.

---

[11] While the three statutes have different causation standards, it is immaterial because Ms. Gjovik cannot establish causation even under the most lenient "contributing factor" standard. 29 C.F.R. § 1980.104(e)(2)(iv) (SOX) (contributing factor causation standard); 29 C.F.R. § 24.104(e)(2)(iv) (CERCLA) (motivating factor causation standard); 29 C.F.R. § 1977.6(b) (OHSA) (but-for causation standard).

[12] Apple does not concede that Ms. Gjovik can establish any of the four elements of a retaliation claim under these statutes. For example, Ms. Gjovik's allegedly activity would not qualify as protected under SOX (and thus could not ground any SOX whistleblower claim). In the Complaint and memorandum Ms. Gjovik submitted to the DOL, she asserts that she engaged in a number of activities including reporting an Apple board member's alleged conflict of interest, reporting that Apple failed to notify employees they worked on a Superfund site, and reporting a failure to address workplace safety, among others. None of these alleged actions constitute protected SOX activity, however. _See_ 18 U.S.C. § 1514A(a)(1) (employee must allege conduct the employee "reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders"); _see also Verfuerth v. Orion Energy Sys., Inc._, 879 F.3d 789, 793-94 (7th Cir. 2018) (complaints about conflicts of interest and violations of internal company protocol not about "fraud" within meaning of SOX); _Gauthier v. Shaw Grp., Inc._, 2012 WL 6043012, at *6 (W.D.N.C. Dec. 4, 2012) (dismissing plaintiff's complaint, finding that his reports were related to nuclear safety, not fraud against shareholders); _Levi v. Anheuser-Busch Cos., Inc._, ALJ Case No. 2006-SOX-37, 2006 WL 3246840, at *16 (May 3, 2006) (complaints about workplace safety and manager incompetence did not contain any allegations of fraud). For purposes of this responsive statement, however, Apple focuses on select elements of her _prima facie_ case (as a failure to establish any of them is fatal) without prejudice to additional arguments that may be available.



Andrea Diangco
March 4, 2022
Page 10

**A.**     **Apple Terminated Ms. Gjovik For Legitimate Reasons Unrelated to Her Concerns.**

Apple terminated Ms. Gjovik for legitimate business reasons: she violated her own written confidentiality agreements with Apple and Apple's policies, both by disclosing confidential product information and by refusing to cooperate in an internal investigation. Because Apple would have terminated Ms. Gjovik for this conduct even had she never raised any safety or conflict of interest (or any other) concerns, Ms. Gjovik's claims fail under CERCLA, SOX, and OSHA. *See Crosby v. U.S. Dep't of Lab.*, 53 F.3d 338 (Table), 1995 WL 234904, at *1 (9th Cir. 1995) (affirming that employer did not violate CERCLA where the employer showed that it had legitimate, nondiscriminatory reasons for terminating the employee, including poor work quality, insubordination, and refusal to work on a project); *Riedell v. Verizon Commc'ns*, ALJ Case No. 2005-SOX-00077, 2006 WL 3246893, at *11 (Aug. 14, 2006) (dismissing SOX claim where complainant failed to offer evidence sufficient to undermine employer's contention that he was fired for legitimate reason of refusing to participate in a meeting with management); *Solis v. Consol. Gun Ranges*, 2011 WL 1215028, at *8 (W.D. Wash. Mar. 30, 2011) (determining under OSHA section 11(c) that employee's protected activity was not but-for cause of termination where employer showed that it would have terminated employee in any event).

The *only* reason that Apple terminated Ms. Gjovik's employment was due to her own deliberate breaches of her confidentiality agreements and violations of Apple policy. Disclosing confidential product information and refusing to meaningfully participate in internal investigations are both bases for immediate termination under Apple's Misconduct and Discipline policy. They are also recognized as legitimate bases for termination under relevant case law. *See, e.g., Galinsky v. Bank of Am., Corp.*, ALJ Case No. 2011-SOX-010, ARB Case No. 11-057, 2012 WL 5391424, at *10-11 (ARB Oct. 31, 2012) (substantial evidence supported finding that complainant would have been discharged in any event due to, among other things, violating company policy by downloading sensitive corporate information for his personal use); *Grove v. EMC Corp.*, ALJ Case No. 2006-SOX-00099, 2007 WL 7135739, at *24-25 (July 2, 2007) (finding that complainant's termination was due to his unreasonable refusal to cooperate in respondent's investigation of the issues he raised and thus not actionable under SOX).

Ms. Gjovik knew when she disclosed the confidential information on social media that she was violating Apple's policies; she had reported others less than two years prior for doing the exact same thing. There is no evidence that Apple's reasons for termination were pretext, nor is there any evidence that Apple harbored animus toward Ms. Gjovik for raising concerns; on the contrary, it took them seriously and engaged in good faith investigations of the issues she raised. Indeed, Ms. Gjovik's termination was consistent with Apple's practice of terminating other employees who violated their confidentiality agreements by disclosing unreleased product information; since 2017, Apple has terminated the employment of at least nine employees for violating their confidentiality obligations.

In short, Ms. Gjovik's expressions of concern played no role in her termination – nor is there any evidence that they did – and her retaliation claims should be dismissed.

4161-3255-5828



Andrea Diangco
March 4, 2022
Page 11

**B.    Ms. Gjovik's Repeated Expressions of Concern Even After Apple Had Responded Do Not Support A Retaliation Claim.**

Apple (and later the EPA) thoroughly responded to Ms. Gjovik's initial workplace safety concerns, and thus Ms. Gjovik's subsequent expressions of concern regarding workplace safety were unreasonable and her activities lost any protected status as a matter of law. *See, e.g., Williams v. U.S. Dep't of Labor*, 157 Fed. App'x 564, 570 (4th Cir. 2005) (teacher's whistleblowing activities initially protected under CERCLA but "[o]nce her concerns were addressed … it was no longer reasonable for her to continue claiming that these schools were unsafe and her activities lost their character as protected activity"); *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009) (under SOX, employee's complaints "were not initially reasonable as beliefs in shareholder fraud and they became less reasonable he was given explanations" by the employer); *see also Grant v. Dominion East Ohio Gas*, ALJ Case No. 2004-SOX-00063, 2005 WL 6185928, at \*40 (Mar. 10, 2005) (under SOX, finding whistleblower protections do not "protect an employee who simply raises questions about virtually everything with which [she] disagrees or does not understand" or who "simply assumes a company has retaliated against [her] because [she] raised a lot of questions, lodged a lot of complaints, and labels [herself] a 'whistleblower'").

Apple responded to Ms. Gjovik's concerns regarding its plan to voluntarily and preventatively seal potential pathways for vapor intrusion and to subsequently conduct air testing; thus, Ms. Gjovik's continued expressions of concern about the plan do not constitute protected activity. Ms. Gjovik first expressed concerns related to the planned work on March 17, 2021. On April 2, 2021, EHS informed Ms. Gjovik that measures had been taken prior to Apple occupying Stewart 1 to mitigate potential for unacceptable vapor intrusion, and that further testing – which was performed after those measures had been implemented – confirmed that no unacceptable vapor intrusion at the site was occurring. On May 17, 2021, EHS reassured Ms. Gjovik that there was no concerning vapor intrusion at the Stewart 1 site, and answered Ms. Gjovik's sixteen questions from her April 11 email. And on July 7, EHS met with Ms. Gjovik to (1) again reassure her that measures were in place to mitigate the potential for vapor intrusion; (2) explain the work was part of Apple's regular maintenance program, not due to any concerns regarding building safety; and (3) explain that no EPA reporting was necessary because the planned work was routine and voluntary.

The EPA also assuaged Ms. Gjovik's concerns, letting her know on June 7, 2021 that the Agency "believ[ed] the remedy in place at the [site] remain[ed] protective" and that "[f]or a site where conditions are protective of human health there is no specific EPA requirement to notify each site visitor or construction or office worker of a mitigated potential risk." Because Apple as well as the EPA responded to Ms. Gjovik's concerns regarding workplace safety through multiple conversations and written communications, her continued repetitions of the same concerns were not reasonable and do not constitute "protected activity" that can supply the predicate for a retaliation claim.



Andrea Diangco
March 4, 2022
Page 12

**C.      Apple's Decision to Terminate Ms. Gjovik for Policy Violations Was Removed From
         Her Alleged Protected Activity.**

Ms. Gjovik's alleged protected activity is too remote in time to suggest that any of her expressions of
concern were in fact the true reason for her September 2021 termination. For her OSHA and CERCLA
claims (premised on the same alleged protected activity), Ms. Gjovik first raised concerns in March 2021,
six months before her termination, and Apple met with her multiple times in March, April, May, June, and
July 2021 to both discuss her safety concerns and explain that Apple was doing routine preventative
evaluation, maintenance, and testing to mitigate the potential for vapor intrusion. As for SOX, Ms. Gjovik's
Complaint claims that she raised concerns about Mr. Sugar's alleged conflict of interest in July 2021, almost
two months before her termination. *See, e.g., Carr v. West LB Admin., Inc.*, 171 F. Supp. 2d 302, 309-10
(S.D.N.Y. 2001) (periods "as short as three months" can fail to support causal connection); *Grant*, 2005 WL
6185928, at *42 (one-month temporal proximity held insufficient to demonstrate a causal connection given
facts of case).

Regardless, any finding of temporal proximity would be immaterial given Ms. Gjovik's intervening conduct
– her clear violation of her confidentiality obligations and Apple policy – which operated to break any alleged
causal chain. *See, e.g., Fraser v. Fiduciary Tr. Co. Int'l*, 2009 WL 2601389, at *6 (S.D.N.Y. Aug. 25, 2009)
(dismissing SOX claim where plaintiff's attempt to establish an unauthorized hedge fund and market it to
respondent's clients was a legitimate intervening basis for termination); *Klopfenstein v. PCC Flow Techs.
Holdings, Inc.*, ALJ Case No. 2004-SOX-11, ARB Case No. 07-021, 07-022, 2009 WL 2844805, at *6 (ARB
Aug. 31, 2009) (denying SOX complaint where discovery of misconduct committed by plaintiff was
intervening event), *aff'd, Klopfenstein v. Admin. Review Bd.*, 402 F. App'x 936 (5th Cir. 2010); *Williams*,
157 F. App'x at 570-71 (denying CERCLA complaint based on intervening event where employer fired
complainant for obtaining unauthorized access to confidential information).

**D.      Ms. Gjovik's Allegation That Apple Suspended Her in Retaliation For Her Concerns
         Fails Because She Requested a Leave of Absence.**

Finally, Ms. Gjovik's alleged "suspension" was not an adverse employment action at all, and thus cannot
ground any retaliation claim. Ms. Gjovik expressly asked Apple to place her on a paid leave of absence
while ER investigated her hostile work environment concerns. Apple granted her request and ER
summarized their conversation in an email to Ms. Gjovik that same day. Ms. Gjovik never disputed ER's
summary—specifically, his statement that **"[p]er your request, you are now on paid administrative
leave**"—or otherwise responded to his email. Granting an employee's request for a leave of absence is not
adverse action as a matter of law. *See, e.g., Baker v. Cty. of Merced*, 2011 WL 2708936, at *5 (E.D. Cal.
July 12, 2011) (no adverse action where the employer complied with employee's requests to take a leave
of absence). Because Ms. Gjovik cannot show any adverse action, her claim for retaliation premised on an
alleged "suspension" also fails.



Andrea Diangco
March 4, 2022
Page 13

**IV.**     <u>**CONCLUSION**</u>

The evidence demonstrates that Apple terminated Ms. Gjovik's employment because she disclosed confidential, proprietary information in violation of her confidentiality obligations – conduct to which she has admitted – and refusing to participate into Apple's investigation of that disclosure. Her termination had nothing to do with any allegedly protected activity; on the contrary, Apple actively investigated Ms. Gjovik's concerns. Based on the evidence described above, Ms. Gjovik's retaliation claims should be dismissed with no further investigation.

If you require any further information, please contact us.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Apple Inc.

By:     _____
        Jessica R. Perry

**Ashley M. Gjovik, JD**
*Pro Se Complainant*
Boston, Massachusetts

# US. Department of Labor
## Directorate of Whistleblower Protection Programs

# OSH Act § 11(c): Request for Review

**Case:** Apple Inc./Gjovik/9-3290-22-051

**Charge Filed:** August 31 2021

**Regional Determination**: December 8 2023

**DWPP RFR Filed**: December 24 2023

ASHLEY GJOVIK, *an individual*,

Plaintiff,

v.

APPLE INC, *a corporation*,

Defendant.

**To: DWPP RFR,**
U.S. Department of Labor-OSHA
200 Constitution Ave, N.W.,
Washington, DC 20210
rfr@dol.gov

Cc: James Wulff
Regional Administrator
OSHA-REG09-WB@DOL.gov

## Complainant's Appeal and Objections
## in Opposition to Decision to Dismiss Action

*Appendix is Attached As Separate Document*

*with Exhibits Referenced Herewithin*

1

1
2
3
4

# TABLE OF CONTENTS

I.    SUMMARY ............................................................................................................................3

II.   QUESTIONS OF FACT & EVIDENCE .......................................................................................4

   A.   WHEN WERE GJOVIK'S US DOL DWPP COMPLAINTS FILED?.................................4

   B.   DID THE REGION HOLD MULTIPLE INTERVIEWS WITH GJOVIK? ................................5

   C.   WHEN DID GJOVIK CLAIM COVID-19 RELATED PROTECTED ACTIVITY? .................6

   D.   DID GJOVIK "SUBMIT NEARLY 500 ELECTRONIC FILES OF MOSTLY REPETITIOUS OR IRRELEVANT
        INFORMATION AFTER CLOSING CONFERENCE" ..............................................................7

III.  QUESTIONS OF LAW ............................................................................................................9

   A.   WAS US DOL'S DECISION ABOUT CERCLA JURISDICTION REASONABLE? .................10

   B.   WAS GJOVIK'S CERCLA-RELATED ACTIVITY PROTECTED? ..................................11

   C.   IS A NLRB DECISION OF MERIT ON GJOVIK'S CHARGE AGAINST THE NDA APPLE CLAIMS IT FIRED
        HER UNDER… "IRRELEVANT"? ..................................................................................12

   D.   CAN THE REGION ISSUE A DECISION ON THE DISASTER RESPONSE COMPLAINT?.........13

IV.   QUESTIONS OF CLAIMS & RELEVANT ISSUES ....................................................................14

   A.   WHAT ACTIVITY DID GJOVIK CLAIM WAS PROTECTED ACTIVITY UNDER OSH ACT? .........14

   B.   WHAT TYPES OF ADVERSE ACTIONS DID COMPLAINANT REPORT TO US DOL DWPP? .........15

   C.   DID GJOVIK PROVE NEXUS, CAUSATION, AND PRETEXT? ..........................................16

   D.   DID GJOVIK PROVE EMPLOYER'S KNOWLEDGE OF PROTECTED ACTIVITY? ................17

   E.   WAS GJOVIK ABLE TO RETURN AT ANY TIME & CLAIMED SHE WAS "SUSPENDED" IN BAD FAITH? ...17

V.    QUESTIONS OF PROCEDURE .................................................................................................19

   A.   WERE GJOVIK'S CLAIMS TO DWPP SUFFICIENT, & AMENDMENTS PROPER?? ........................19

   B.   SHOULD TOLLING BE ALLOWED FOR CAA & RCRA? ..............................................21

   C.   DID GJOVIK FAIL TO COOPERATE ("LOC")?..............................................................22

   D.   DID GJOVIK ACCUSE THE REGION OF CRIMINAL MISCONDUCT?.................................25

   E.   SHOULD OSHA POSTPONE FOR NLRB? SHOULD OSHA POSTPONE FOR THE CIVIL LAWSUIT?.........26

VI.   CONCLUSION ......................................................................................................................27

27
28

# COMPLAINANT'S APPEAL AND OBJECTIONS
# IN OPPOSITION TO DECISION TO DISMISS CLAIM

## I.   SUMMARY

1.   Complainant Ashley Gjovik (pronounced "JOE-vik") respectfully submits the following Appellate Memorandum in opposition to the Assistant Regional Administrator's ("The Region's) determination to dismiss her OSH Act 11(c) case on December 8 2023 (the "Determination").  The concurrent dismissal of her CERCLA case will be appealed to US DOL OALJ for a de novo hearing.

2.   Gjovik appeals the OSH Act 11(c) dismissal to the Director of the Directorate of Whistleblower Protection Programs, with a Request for Review, under OSHA's long-standing policy to provide complainants with the right to seek review of dismissals under section 11(c).[1] The 15 day period for appeals began on December 9 2023, and fifteen days later is Saturday December 23 2023. Because the final request day lands on a weekend, the subsequent Monday, December 25 2023, is the final request day.[2] This Request for Review is submitted December 24 2023, and as such, is timely.

3.   Gjovik requests review of the Determination because 1) the decision was not supported by evidence; 2) the decision was not consistent with the law; 3) all relevant issues were not addressed in the decision; and 4) the investigation was not fair, regular, or free of procedural infirmities.[3]

4.   However, the Determination does include several statements which the Complainant does not dispute and thus does not need to be addressed. They are as follows:

   a.   Gjovik filed a complaint with the US DOL DWPP on August 29 2021. (pg1)

   b.   Gjovik 'kicked out' her Sarbanes-Oxley act charge to a US District Court and that claim is no longer within OSHA's jurisdiction. (pg1)

---

[1] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg85, (2022).
[2] US DOL, DWPP, Section 11(c), AHERA, and ISCA Request for Review (RFR) Program, X. Procedures, A. Screening, pg3, (September 15 2022).
[3] US DOL, DWPP, Section 11(c), AHERA, and ISCA Request for Review (RFR) Program, X. Procedures, B. DWPP Review, pg4, (September 15 2022).

c.  "Employer Knowledge: Respondent does not dispute knowledge of Complainant's alleged protected activities." (pg4)

d.  "Termination of Complainant's employment on September 9, 2021, constitutes an adverse action." (pg4)

Beyond those four items, Gjovik generally denies the entire Determination.

## II.   QUESTIONS OF FACT & EVIDENCE

5.     Several statements in the Determination were not supported by evidence, and some are contradicted by evidence. The most egregious incidents of this were related to US DOL DWPP's own protocols, such as, the Region misstating the dates of charges, and denying the date of the intake interview. These errors are unreasonable and clearly erroneous. [4]

6.     The accuracy of the Determination's statements of fact on matters outside its control should be colored by The Region's failure to report accurate facts on matters that were key milestones in their own department's supposed investigation.

### A.   WHEN WERE GJOVIK'S US DOL DWPP COMPLAINTS FILED?

7.     The Region stated in the Determination letter that: "*The first complaint (ECN76833) was filed on August 29, 2021, and the second complaint (ECN78416) was filed on September 2, 2021.*"[5]

8.     In fact, Gjovik's second complaint (ECN78416) was filed on November 2 2021. (See Appendix, page 19, Exhibit 9.) Considering the tone of the Determination, it is unclear if this misstatement is an accidental mistake due to lack of due diligence, or if it is intentionally misleading. There are not two permissible views of the evidence of when Gjovik's 2nd complaint was submitted and thus The Region's finding was clearly erroneous.[6]

---

[4] US Court of Appeals for the Ninth Circuit, *"Standard of review—definitions,"* (2018).
[5] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, pg1, (December 8 2023).
[6] *United States v. Cazares*, 121 F.3d 1241, 1245 (9th Cir. 1997); *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003); see also *United States v. Stanley,* 653 F.3d 946, 952 (9th Cir. 2011); *United States v. Al Nasser*, 555 F.3d 722, 727 (9th Cir. 2009).

**B.     DID THE REGION HOLD MULTIPLE INTERVIEWS WITH GJOVIK?**

9.     The Region's Determination claims they held "*multiple interviews with Complainant.*"[7] This is false. The Region held the intake interview on November 8 2021. Then The Region held a conference call in September 2022 where they specifically said would not discuss her case and they refused to discuss the details of her case. (see Appendix, Exhibit 21, Page 78-79). Gjovik filed complaints after the meeting that the majority of the meeting was Parra intimidating her and threatening her in order to get her to withdraw her charges. The next and final phone call Gjovik had with The Region was the Closing Conference, which The Region said was off the record and informal. Thus, there was only one interview, not multiple interviews.

10.     The DWPP Whistleblower Investigations Manual (the "Investigations Manual") explains that, "*The investigator must attempt to interview Complainant in all docketed cases.*" Should The Region have tried to dismiss Gjovik's case in September and November 2021 prior to an intake interview? Probably not. The screening "*interview may be conducted as part of the screening process.*"[8]  "*Screening interviews will typically be conducted by phone or video conference.*" [9] Gjovik's first emails to The Region included clear CERCLA and SOX activity, in addition to OSH Act, and as such should have been promptly docketed and the investigator should have promptly conducted an intake interview with Gjovik and also contacted the US EPA (which she did not do until late November 2021, after much protest from Gjovik).

11.     Should The Region have conducted more interviews with Gjovik throughout the investigation? Probably. The Investigations Manual explains, "*After obtaining Respondent's position statement, the investigator will contact Complainant to conduct a rebuttal interview and will contact other witnesses as necessary to resolve any relevant discrepancies between*

---

[7] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, pg1-2, (December 8 2023).

[8] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg59 (2022).

[9] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg41, (2022) – *("The complaint, supplemented as appropriate by the screening interview and any additional information, should contain an allegation of: Some details that could constitute protected activity under an OSHA whistleblower statute; b. Some details indicating that the employer knew or suspected that Complainant engaged in protected activity; c. Some details indicating that an adverse action occurred and the date of the action; and d. Some details indicating that the adverse action was taken at least in part because of the protected activity....If any of the above information is missing after the screening interview (or after reasonable attempts to contact Complainant for a screening interview), OSHA will preserve the filing date for timeliness purposes and inform Complainant that Complainant needs to provide the missing information (OSHA should be specific as to what is missing.").*

Complainant's Appeal of Dismissal | Apple Inc./Gjovik/9-3290-22-051            December 24, 2023

*Complainant's allegations and Respondent's defenses.*"[10]   Gjovik never had a rebuttal interview despite requesting one repeatedly.

### C.   WHEN DID GJOVIK CLAIM COVID-19 RELATED PROTECTED ACTIVITY?

12.   The Determination letter claimed that Gjovik did not mention any concerns about COVID-19 safety until November 8 2021, and that Gjovik disclosed those complaints to the agency in some way that was inappropriate. The letter claims that:

> "at the closing conference held on January 26, 2023, Complainant expressed concern that OSHA did not investigate her allegations regarding Respondent's COVID return to work plan and COVID vaccine hoarding. Upon review of the matter, OSHA reviewed the initial two online complaints, including the screening interviews with Complainant, and found that Complainant did not include these allegations in her on line complaints or screening interviews. Instead, it appears that Complainant first raised these allegations in a 35-page document she emailed to the investigator on November 8, 2021. First, it appears that Complainant genuinely believed that simply sending information, solicited or otherwise, to the investigator meant that it would be reviewed for potential new allegations to be added to the investigation, without any request for the investigator to do so. Although OSHA policy is to permit the liberal amendment of complaints, there needs to be some dialogue to indicate that a Complainant wants to add allegations to enable the investigator to conduct a proper timeliness and 'reasonably related to' analysis before amending the complaint and investigating the new allegations. Such dialogue did not occur in this case."[11]

The letter fails to mention that November 8 2021 was the date of the screening interview, which was the one and only interview US DOL held with Gjovik.

13.   On November 3 2021, The Region's investigator, Andrea Diangco, contacted Gjovik to set up an "*intake interview*."  She said she wanted to, *"gather additional information regarding [Gjovik's] complaint*." Gjovik promptly responded and on November 4 2021, Diangco confirmed the interview would be held on November 8 2021 from 10am-11am. (See Appendix, Exhibit 10, Pages 20-21).

---

[10] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg65 (2022).
[11] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, pg2-3, (December 8 2023).

14.     On the morning of November 8 2021, prior to the "intake interview", Gjovik emailed Diangco three documents and wrote "*Hi! I wrote up some memos for you to help the conversation and/or your notes.*" Gjovik noted one was for SOX, one was for CERCLA, and one was an timeline of events. (See Appendix, Exhibit 10, Pages 21-22).

15.     It's unclear how The Region can claim there was no "dialogue" about the documents Gjovik sent, when there was a one hour phone interview with Gjovik and The Region after Gjovik sent the documents and about the content of the documents.

16.     The document Gjovik sent with a timeline of events did include references of COVID-19 related activity. It also included mentions of other topics that were never investigated, including workplace injuries (See Appendix, Exhibit 10, Pages 22, 24), Right to Know (See Appendix, Exhibit 10, Pages 22), misuse of ADA procedures to address workplace safety issues (See Appendix, Exhibit 10, Pages 23), contacting state OSHA (See Appendix, Exhibit 10, Pages 23 – by which she meant both the state OSHA and the state Department of Public Health), failure to accurate track/report workplace injuries (See Appendix, Exhibit 10, Pages 24), failure to seek medical attention for workplace injuries (See Appendix, Exhibit 10, Pages 24), and filing safety related complaints to NLRB, US EPA, CalEPA, and CalDOL (See Appendix, Exhibit 10, pages 27, 28, 29, 31, etc).

**D.     DID GJOVIK "SUBMIT NEARLY 500 ELECTRONIC FILES OF MOSTLY REPETITIOUS OR IRRELEVANT INFORMATION AFTER CLOSING CONFERENCE"**

17.     The Region claimed in the Determination, that Gjovik "*submit[ed] nearly 500 electronic files of mostly repetitious or irrelevant information after the closing conference required substantial additional resources and caused significant, unnecessary delay in completing OSHA's investigation.*"[12]   The Region added that "*…despite express promises not to do so, [Gjovik] repeatedly re-submitted an overwhelming number of irrelevant documents, including after the closing conference was held, causing extreme delay and unnecessary expenditure of additional resources…*"[13] The Region then cited the case *John Bauche v. Masimo Corp.*, but failed to explain the relevance and the relevance is not apparent upon reading the decision.[14]

---

[12] Id at page 5.

[13] Id at page 2.

[14] Id at page 2 and footnote 6; As cited in the Determination: *In the Matter of John Bauche v. Masimo Corporation,* 2022-SOX-00026, page 6, (December 2022). [ALJ complaints to Complainant's attorney that upon request for a brief summary of claims, the ALJ received a 750 page brief].

Complainant's Appeal of Dismissal | Apple Inc./Gjovik/9-3290-22-051                    December 24, 2023

18.      Gjovik entered the Closing Conference call in January 2023, expecting to speak with the investigator, however the investigator never spoke for the entire call, which lasted longer than three hours. Instead, the meeting was led by Assistant Regional Administrator Parra, without warning or explanation as to why he was involved. During the call, it became apparent to Parra that the investigator missed critical evidence that could alter The Region's decision on Gjovik's case. (This was discussed and captured in an audio recording – the transcription of which was provided to The Region) (See Appendix, Exhibit 32, Page 104). Parra asked Gjovik to "re-point" The Region to evidence Gjovik already sent that they had missed, to submit any material evidence as a standalone file if she had previously just referenced it or included it as an embedded exhibit in a memo, and to send any new evidence to help substantiate the points they may have missed.

19.      Per the Investigations Manual, in cases where OSHA anticipates issuing non-merit findings, the investigator is to conduct a closing conference with Complainant.[15] The Manual also notes that if Complainant "*attempts to offer any new evidence, argument, or witnesses, this information should be discussed as appropriate to ascertain whether it is relevant; might change the recommended determination; and, if so, what further investigation might be necessary prior to the issuance of findings*."[16] While it was unexpected for Parra to manage the Conference and for it to take over three hours, The Region did acknowledge their recommendations may be different based on evidence Gjovik mentioned and had sent prior, but that they had not reviewed.

20.      Gjovik and Parra emailed after the Closing Conference, with Parra confirming on February 8 2023 that Gjovik was to send The Region new evidence and repoint them to evidence previously sent but missed. (See Appendix, Exhibit 33, Page 107). Once Gjovik sent the additional files, on February 27 2023, Diangco then requested Gjovik create an "index" of all the files Gjovik has sent to The Region and email The Region that index by March 13 2023. (See Appendix, Exhibit 40, Page 123). On February 28 2023, Parra then requested that Gjovik also designate whether each file was new or duplicate of a prior submission. (See Appendix, Exhibit 40, Page 125). On March 1 2023, Parra confirmed that Gjovik should mark files as "duplicate" even if she had only previously included an embedded screenshot or otherwise referenced the file in a memo, and had not sent the full file prior – and Parra also requested Gjovik send these

---

[15] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg66, (2022).
[16] Id at page 66.

types of files. (See Appendix, Exhibit 40, Page 126). Gjovik emailed The Region a detailed index on March 6 2023. (See Appendix, Exhibit 41, Page 127).

21.   At no point did The Region tell Gjovik not to send files, and at no point did Gjovik ever make "*express promises*" (Determination, pg2) not to send files.

22.   In total, per her Index, Gjovik only sent The Region a total of 92 duplicate files (which included files that had been previously embedded in other documents but Parra requested to have sent separately). (Appendix, Exhibit 41, Page 128). Of the new files Gjovik sent, some of these included documents about the US EPA's oversight of Gjovik's office and orders of how testing should be done by Apple and Northrop Grumman which aligned with what Gjovik told Apple to do; Apple's secret silicon fabrication that nearly killed Gjovik in 2020; and the US EPA justification for the August 19 2021 inspection explaining it was due to Gjovik's CERCLA disclosures to the US EPA (Appendix, Exhibit 39, Page 120-121).

23.   On February 24 2023, Gjovik also submitted a 13 page "*Complaint Addendum*" repointing The Region to emails/documents Gjovik sent prior and that they had not reviewed, based on the Closing Conference phone call, as requested by the Region (See Appendix, Exhibit 39, page 116-118).

24.   Gjovik also submitted a 27 page "*Disputed Facts In Apples Position Statement*," highlighting claims the employer had made that were directly contradicted by Gjovik's evidence. (See Appendix, Exhibit 39, page 116, 119-120). In this document Gjovik pointed out, among other issues, that Apple's lawyers made false statements in their position description about basic facts, including but not limited to: what Gjovik's job titles were, where Gjovik's offices were located, the year Gjovik was promoted to Senior EPM, the year Gjovik was enrolled in the program that Apple claims it fired Gjovik over, the number of meetings Apple had with Gjovik about her office (putting forth emails as if they were meetings), the quoted content of an email, and denying/omitting that Gjovik's disclosures to the US EPA led to an US EPA inspection of Gjovik's office. None of this seems "*irrelevant*."

## III.   QUESTIONS OF LAW

25.   An agency action raising legal issues may be reviewed under a reasonableness standard, where there must be a rational connection between the facts found and the conclusions

made.[17] It is an abuse of discretion when a decision maker fails to consider the various options available, fails to consider relevant factors, or considers irrelevant factors.[18]

**A.    WAS US DOL'S DECISION ABOUT CERCLA JURISDICTION REASONABLE?**

26.    The Region's Determination stated: "*Here, the responsible party is Northrop Grumman and not Respondent (Apple, Inc.). Because Complainant was an employee of Respondent (Apple, Inc.), and not Northrop Grumman, she failed to meet her burden to establish the requisite employment relationship*."[19]

27.    The Determination cited an ARB case, 29 CFR § 24.102, and an agency Desk Aid as legal authority for the statement. The cited portion of the Desk Aid correctly explains that "*The Environmental Statutes prohibit retaliation by an employer, meaning that there must be an employer-employee relationship (or a potential one) between the complainant and the respondent*." [20] 29 CFR §24.102 also correctly notes it applies to "*any employer*."

28.    The cited case (which was misspelled in the Determination as *Slaven* instead of *Slavin*) addressed a situation where there was no employment relationship between the Complainant and Respondent, which is not the case here. [21] Gjovik was the employee of Apple, Apple was the employer of Gjovik. The CERCLA statute applies to Apple's conduct towards Gjovik.[22]

---

[17] *Barnes v. U.S. Dep't of Transp.,* 655 F.3d 1124, 1132 (9th Cir. 2011), (citing *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv*., 565 F.3d 545, 554 (9th Cir. 2009); See, e.g., *Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 964 (9th Cir. 2002*); Ka Makani >O Kohala Ohana Inc. v. Water Supply,* 295 F.3d 955, 959 (9th Cir. 2002).
[18] *Koon v. United States*, 518 U.S. 81, 100 (1996).
[19] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, pg3, (December 8 2023).
[20] US DOL, DWPP, Investigator's Desk Aid to the Whistleblower Protection Provisions of Six Environmental Statutes, (2021).
[21] In the Matter of Ed Slavin v. City of St. Augustine, et. al., ARB Case NO. 07-002, pg2-3, (March 31, 2008) –("The Labor Department's Occupational Safety and Health Administration investigated Slavin's complaint and found that it had no merit because no employment relationship existed between Slavin and any of the Respondents… and Slavin has given us no authority that CERCLA covers "perceived potential applicants," as he claims to have been."),
https://www.oalj.dol.gov/PUBLIC/ARB/DECISIONS/ARB_DECISIONS/CER/07_002.CERP.PDF
[22] 42 U.S. Code § 9610 - Employee protection, ("No person shall fire or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has provided information to a State or to the Federal Government, filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.")

29.     It would be contrary to public policy and the congressional intention behind the whistleblower protections under CERCLA, to limit CERCLA protections only to employees of the designated Responsible Party for a Superfund site. First, CERCLA covers many other activities than just oversight of Superfund NPL sites. Second, CERCLA recognizes a number of different actors in its provisions including property owners, operators/tenants, and contiguous property owners.[23] Third, due to the historical nature of Superfund sites, its more likely than not that the Responsible Party is not the current building owner or operator, and thus the statutes coverage would be miniscule.

30.     The Region's interpretation of the CERCLA statute's coverage is arbitrary and capricious as the agency has relied on impermissible factors, failed to consider an important aspect of the problem, and is so implausible it could not be ascribed to a difference in view or to agency expertise. [24] The Region's reliance on the *Slavin* case was unreasonable and an abuse of discretion.

**B.     WAS GJOVIK'S CERCLA-RELATED ACTIVITY PROTECTED?**

31.     Confusingly, The Region has insisted on categorizing Gjovik's concerns about toxic waste vapor intrusion related to CERCLA controls, compliance, testing, and reporting as an OSH Act concern but not a CERCLA concern. Precedent makes clear this is predominantly a CERLCA activity, and Gjovik shared this back in November 2021. (See Appendix, Exhibit 10, Page 32). Vapor intrusion can be an OHSA concern, but CERCLA has primary jurisdiction over Superfund vapor intrusion concerns, per case law and agency memorandums (with the possible exception of the Ethylbenzene and Toluene air pollution Gjovik complained about).

32.     Further, while Gjovik's complaints about CERCLA non-compliance and workplace safety issues triggered a US EPA investigation and inspection (See Appendix, Exhibit 39, Page 121-122),[25] announced shortly before Gjovik was stuck on indefinite administrative leave (Id at 122) – The Region persistently insisted that Gjovik's complaints were unreasonable

---

[23] US EPA, Revised Enforcement Guidance Regarding the Treatment of Tenants Under the CERCLA Bona Fide Prospective Purchaser Provision (Dec. 5 2012); US EPA, Bona Fide Prospective Purchasers – Tenants as BFPPs, https://www.epa.gov/enforcement/bona-fide-prospective-purchasers

[24] US Court of Appeals for the Ninth Circuit, *"Standard of review—definitions,"* (2018).

[25] Note: In summer of 2022, per US EPA responsive documents to Gjovik's FOIA requests, Gjovik discovered that US DOL had actually known since December 2021 about the US EPA inspection of her office on August 19 2021, but did not tell Gjovik or the US NLRB. (See Appendix, Exhibit 14, page 53; Exhibit 32, page 105).

and unprotected. US EPA's findings based on Gjovik's complaints and their inspection led to over two-years of close US EPA oversight on the matters that Gjovik and Apple were fighting about. (See Appendix, Exhibit 35, page 109). The Region's position on Gjovik's case is contradicted by a significant amount of US DOL case precedent, even where there was not an investigation triggered by the employee's complaints. (See Appendix, Exhibit 10, Page 32).

33.     Meanwhile, The Region has insisted CERCLA vapor intrusion was Gjovik's primary OSH Act concern – and repeatedly refused to acknowledge Gjovik's claims of protected activity under the OSH Act with the sole exception of Gjovik's COVID-19 related activity.

### C.     IS A NLRB DECISION OF MERIT ON GJOVIK'S CHARGE AGAINST THE NDA APPLE CLAIMS IT FIRED HER UNDER... "IRRELEVANT"?

34.     When reviewing agency statutory interpretation or policymaking, courts describe the review as "rational basis review" or "hard look review".[26] An agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[27]

35.     The Determination claims that Gjovik "*alleged (without support) that [Apple's NDA] policy was illegal (or would be declared so soon).*" It adds, "*Moreover, part of Complainant's assertion regarding the illegality of Respondent's policy included a claim that she had "won her case" on the matter with another federal agency when that was inaccurate.*"[28] The Determination is assumably referring to Gjovik sharing with the Region that the NLRB had issued a Decision of Merit on her charges against Apple's employment policies, including Apple's NDA they claimed she was terminated under. (See Appendix, Exhibit 29, Pages 96-99).

36.     During the Closing Conference, (just days before Gjovik would receive a decision of merit from the NLRB), Gjovik explained to Parra that she filed an NLRB charge against Apple's NDAs and employment policies, and labor lawyers had already weighed in publicly that they expected Gjovik's charge to have merit. Parra told Gjovik that if Gjovik has evidence the "*non-disclosure agreement [she] signed is illegal*" that "*it could change [The*

---

[26] US Court of Appeals for the Ninth Circuit, *"Standard of review—definitions,"* (2018).
[27] Motor Vehicle Manufacturers Ass'n v State Farm Mutual Auto Insurance Co, 463 U.S. 29 (1983).
[28] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, page 5 and footnote 12, (December 8 2023).

*Region's] accounts*" of Gjovik's case. (See Appendix, Exhibit 32, Page 106). Parra also told Gjovik to send evidence about her claims that the NDA was unlawful. Gjovik sent Parra the information he asked her to send and had said was important – and now Parra claims that Gjovik made "*inaccurate*" statements that were "*without support*."

37.     Further, Parra made this claim dismissing any persuasive authority of the NLRB, and even implying that Gjovik relying on statements made by the NLRB about employee speech policies is misconduct by Gjovik.

38.     On October 31 2023, the US Department of Labor and US NLRB "*executed a Memorandum of Understanding to strengthen the agencies' partnership to promote safe and healthy workplaces through protecting worker voice.*"[29] Both agencies also released a joint fact sheet about, "Building Safe & Healthy Workplaces that Promote Worker Voice."[30] The Fact sheet states, "*Rules, policies, or practices should not interfere with workers' ability to report safety and health concerns or engage in other protected activity under the Occupational Safety and Health Act and National Labor Relations Act.*"[31]

39.     Parra's unilateral personal attack on Gjovik and attack on the credibility and influence of the NLRB is without basis and is in contradiction to the policies of both agencies. The Congressional intent behind both the NLRA and OSH Act includes that worker's feel free to speak openly about workplace safety concerns.

**D.     CAN THE REGION ISSUE A DECISION ON THE DISASTER RESPONSE COMPLAINT?**

40.     By February 2023, Gjovik had moved her vaccine hoarding/skipping-the-line disaster response claim to her SOX case, and then in September 2023, she 'kicked it out' to her federal civil lawsuit. The claim is under her SOX/Dodd-Frank charges, which removes DWPP jurisdiction over the claim.[32] Gjovik had alleged the disaster response violations were part of her

---

[29] US DOL, US Department of Labor, *National Labor Relations Board sign agreement to strengthen information-sharing, outreach on whistleblower protections*, (October 31 2023), https://www.osha.gov/news/newsreleases/national/10312023; US NLRB, *NLRB and OSHA Announce New MOU to Strengthen Health and Safety Protections for Workers*, (October 31 2023), https://www.nlrb.gov/news-outreach/news-story/nlrb-and-osha-announce-new-mou-to-strengthen-health-and-safety-protections
[30] US DOL and US NLRB, *Building Safe & Healthy Workplaces that Promote Worker Voice*, (October 31 2023), https://www.osha.gov/sites/default/files/NLRB_OSHA_Worker_Voice_Fact_Sheet.pdf
[31] Id.
[32] *Ashley Gjovik v Apple Inc*, 3:2023cv04597, US District Court, Northern District of California, San Francisco Division (2023-)

SOX charge in her February 24 2023 documents for the Region, (see Appendix, Exhibit 39, Page 118); documents which The Region apparently referred to as "*irrelevant*." (Determination, pg 5). Because Gjovik had removed her SOX case, the Region no longer had jurisdiction to make a decision related to Gjovik's vaccine procurement complaints and FDA/DOJ report.

## IV.   QUESTIONS OF CLAIMS & RELEVANT ISSUES

41.     A "*substantial evidence*" review encompasses the agency's assessment of the evidence in the record and its application of that evidence in reaching a decision; an "*arbitrary and capricious*" review focuses on the agency's explanation or justification of its decision and whether that decision can be reasoned from the body of evidence.[33] A "*clearly erroneous*" review looks at all the evidence in the case, and "*clear error*" is found when the reviewer is left with the definite and firm conviction that a mistake has been committed."[34]

42.     "*If the record reveals that the agency has failed to consider an important aspect of the problem or has offered an explanation for its decision that runs counter to the evidence before it, [then] the agency in violation of the APA*."[35]

### A.   WHAT ACTIVITY DID GJOVIK CLAIM WAS PROTECTED ACTIVITY UNDER OSH ACT?

43.     Under the OSH Act, Gjovik claimed that she filed complaints about workplace health and safety issues to management and to government agencies (US EPA CERCLA, California RWQCB, US DOL DWPP, California DOL DIR, California Department of Public Health), reported work-related injuries/illnesses to management and government agencies (US EPA CERCLA, California Department of Public Health), filed complaints with management about delinquencies in tracking/reporting of work-related injuries/illnesses, requested health/safety data about her workplace (Santa Clara County Department of Public Health), filed complaints about unlawful work rules prohibiting discussion of safety concerns with management and with government agencies (US EPA CERCLA, California EPA, US DOL DWPP, California DOL DIR, California Department of Public Health), that her complaints and disclosures to a government agency triggered an inspection of her workplace (US EPA), and that

---

[33] Martha S. Davis, *A Basic Guide to Standards of Judicial Review*, 33 S.D. L. REV. 469 (1988).
[34] United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
[35] *California v. FCC*, 39 F.3d 919, 925 (9th Cir. 1994).

she refused to return to an unsafe work site. Gjovik made written inquires and written complaints to management about safety data sheets, Right to Know, plans for compliance with hazard communications, and plans for compliance with employee chemical exposure notifications. (see Case File).

44.     Upon learning about Apple's activities with the secret silicon fabrication, Gjovik then also realized she filed health/safety and environmental complaints with additional agencies (Santa Clara Fire Department & Hazmat, California DTSC, California Department of Public Health, California Air Resources Board, US EPA Environmental Justice) about the hazardous air pollution resulting from Apple's failure to follow health/safety and environmental laws. Gjovik's complaints led to air quality investigations prior to her termination. In addition, Apple knew about her complaints in 2021 and prior to her termination, and at the very least her Apple management knew she was making complaints that related to concerns about the health/safety of the workers of another employer(s), which is also protected activity. (see Case File). (see Appendix, Exhibit 39, Page 119).

45.     Under OSH Act, Gjovik also claimed her public statements, including numerous interviews with new media, about her concerns about an unsafe and unhealthful workplace were protected, and provided evidence of those articles and her social media posts to US DOL. (see Case File).

46.     Under OSH Act, Gjovik's NLRB charge included complaints related workplace health/safety, and Gjovik was to provide an affidavit on September 10 2021. Gjovik's complaint, initiation of an investigation, and plan to provide federal testimony about workplace health/safety concerns was protected activity. Under OSH Act, Gjovik filed a complaint with the US DOL DWPP about workplace health/safety concerns prior to her termination, and filing that complaint was a protected activity. (see Case File).

47.     None of this is addressed in the Determination.

**B.   WHAT TYPES OF ADVERSE ACTIONS DID COMPLAINANT REPORT TO US DOL DWPP?**

48.     Gjovik complained of several types of adverse/unfavorable actions and provided evidence she believes supports her claims. These actions included: Discharge (9/9/21), Suspension (9/9/21), Denial of Training (8/21), Administrative Leave as Constructive Discharge (8/4/21), Change in Duties and Responsibilities (7/21), Increase in Workload (7/21), Assignment of Unfavorable Work (7/21), Hostile Work Environment (6/21), Harassment (6/21),

Constructive Discharge (4/21), Blocking Transfers (4/21), Threats (3/21), Intimidation (3/21). Gjovik also alleged retaliation occurred after her discharge which included Harassment, Denylisting, Making Threats, Intimidation, the employer Reporting Gjovik to the Police, and employer Filing Meritless Retaliatory Litigation against Gjovik, among other retaliation.[36]

49.     Gjovik also attempted to add a number of adverse action that occurred after the termination but The Region refused to add them without explanation. (See Complaint; Case File).

## C.   DID GJOVIK PROVE NEXUS, CAUSATION, AND PRETEXT?

50.     Gjovik argued causation and nexus via Temporal Proximity, Animus, Disparate Treatment, and Pretext, among other factors.[37]

51.      Gjovik's "Complaint" memo in response to Apple's position statement details extensive evidence and supporting case law in pages 248-378. The Region ignored all of these arguments and does not even attempt to address them.

52.     The employer claimed it fired Gjovik for Gjovik's speech related to two work conditions that are related to the company's use of employees as unpaid research subjects for invasive anatomical studies, related to commercial research and development. Gjovik proved that other employees who shared actual technical information and operational strategy related to the same topics, but focused on the actual consumer products (which should be more sensitive, if sensitive at all), and those employees were not terminated. Gjovik also proved that one of the topics was already publicly known and nothing Gjovik shared was 'new' other than that the employer was coercing employees to participate. Gjovik also proved that employees (who were the subject of her discrimination complaints) had leaked the actual consumer product Apple complains about here, and they were not fired.

53.     Gjovik proved close temporal proximity between her protected activities, the reassignment of her work and increased workload with assignment of unfavorable projects in July 2021, the US EPA investigation her complaints initiated (including an onsite inspection on August 19 2021), and her abrupt termination on September 9 2021.

---

[36] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg27-29, (2022).
[37] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg29, (2022).

54.     Gjovik proved that Apple did not adhere to its progressive discipline and termination policies when it terminated Gjovik as it gave Gjovik no warnings, did not suspend Gjovik's account access for over a week, and attempted to contact Gjovik under false pretenses.

55.     Further, Gjovik had a right to negotiate the terms of her contact with the "Workplace Violence" interrogator as Apple was engaging in an unlawful and retaliatory interrogation of an employee who had engaged in protected activity, and had made no effort to explain what they wanted to talk to Gjovik about, to warn Gjovik or put her on notice, or to reassure her she would not face discipline.

**D.     DID GJOVIK PROVE EMPLOYER'S KNOWLEDGE OF PROTECTED ACTIVITY?**

56.     Per the Determination, the employer admitted to knowledge of Gjovik's protected activity (at least the COVID-19 activity). As to all of Gjovik's protected activity, Gjovik provided emails between her and the employer (management, EH&S, Human Resources, a formal Business Conduct complaint, and so on) where she made direct written complaints. Gjovik also provided copies of charges she filed with government agencies including US DOL DWPP, CalDOL, NLRB, US EPA, and CalEPA which she discussed on public social media and were discussed by news media for over a week prior to her termination. Gjovik showed the employer was notified of the NRLB complaint through the NLRB no later than August 30 2021 (when they assigned three lawyers to the charge), which put employer on notice generally. Gjovik also began reporting to US EPA in March 2021 and she told her employer she did so, and the US EPA called her employer and told them she did so, and Gjovik also forwarded her emails with US EPA to her employer in July 2021.[38] Gjovik also showed she was posting about her government charges and other protected activity on social media, and Apple admitted to surveilling her social media, so Apple knew about all of this activity. Apple knew about Gjovik's protected activity.

**E.     WAS GJOVIK ABLE TO RETURN AT ANY TIME & CLAIMED SHE WAS "SUSPENDED" IN BAD FAITH?**

57.     The Determination makes a bold allegation against Gjovik related to the administrative leave Apple placed her on in August of 2021. The Region essentially accuses Gjovik of lying and acting in bad faith. They write:

---

[38] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg26-27, (2022).

17

1
2
3
4
5
6
7
8

"Complainant's alleged suspension on or about August 4, 2021, does not constitute an adverse action. Based on the evidence, Complainant requested to be placed on administrative leave as a solution to her reports that her managers were creating a hostile work environment and her desire not to return to work in accordance with Respondent's phased plan for doing so post-pandemic. Respondent granted Complainant's request. Complainant was on paid leave and was eligible to return to work at any time. Respondent notified Complainant in writing of her right to terminate the paid administrative leave and eligibility to return to work at any time, and Complainant chose not to do so. For Complainant to allege this action was an involuntary suspension, despite the evidence discussed above, fails to meet the good faith requirement of the OSH Act." [39]

9

The Region's statement is farfetched, unreasonable, and contradicted by evidence.

10
11
12
13
14
15
16
17
18
19
20
21
22
23

58.    Gjovik's Complaint refers to Apple putting her on indefinite administrative leave. Gjovik provided clear and convincing evidence that: prior to being put on leave, she repeatedly told the team who put her on leave that she did not want to be on leave; that she fought with the investigator the day he put her on leave because she did not want to be on leave; that she never asked to be "removed from the workplace and all workplace interactions"; that the leave was indefinite and Apple refused to give her an ETA when she could come back; that Apple "removed her from the workplace" the morning before they sent a large team to her office "with lots of tools" to do some sort of work related to vapor intrusion only a few days after being notified of the US EPA inspection due to Gjovik's complaints; that Apple forced Gjovik to submit ADA accommodations for a workplace safety issue; that her entire organization was talking about her like she was already fired the day after she was put on leave; that she asked to be transferred to a different physical office; that while she was on leave the people who were supposedly being investigated were the points of contact if anyone had concerns about Gjovik's complaints about those people; that Gjovik asked to attend a training while on leave and was told "no" because "she's on leave," and many other facts supporting that the leave was punitive and not voluntary. (See Appendix, Exhibit 19, 68-71).

24
25
26
27

59.    The Determination also omitted all of Gjovik's other claims of adverse and unfavorable actions, which even if they are out of the 30-day window, color the nature of the events that did fall into those 30 days. The Determination did not explain why they were excluded or provide a coherent analysis of the evidence; nor was all of the relevant evidence

28

---

[39] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, pg4, (December 8 2023).

considered; nor were the US DOL and 9th Circuit legal standards for administrative leave considered.

## V.    QUESTIONS OF PROCEDURE

### A.    WERE GJOVIK'S CLAIMS TO DWPP SUFFICIENT, & AMENDMENTS PROPER??

60.    As discussed, Gjovik filed her first claim to The Region on August 29 2021 and the majority of the information she shared was ignored or overlooked. Then Gjovik filed a 2nd complaint on November 2 2021 (unsure if the termination was captured in the prior complaint), which the Region erroneously claims was filed on September 2 2021. Gjovik then sent a memo about her claims to assist the investigator with notetaking on the day of Gjovik's intake interview phone call, November 8 2021, which the Region frames as unilateral, a monologue, and inappropriate. The Region then erroneously claims that the information Gjovik's sent on November 8 2021 was outside the statute of limitations for her termination, despite November 8 2021 being the 'intake' interview for Gjovik's case that was filed on time.

61.    Gjovik repeatedly asked her investigator to share with her the list of claims the Region was investigating to ensure it covered all of the claims Gjovik wanted to make, but the investigator refused persistently for over two years. Gjovik also asked the investigator if the description Apple was sent would be revised to add her detailed claims, and the investigator told her Apple would receive a more detailed summary, but refused to share it with Gjovik.

62.    Gjovik was unclear if her termination was included in the August 29 2021 charge because it happened after the charge and the investigator tried to send Gjovik's charge to the state DOL the day after Gjovik was fired. Gjovik tried to add additional adverse actions to her charge that occurred in the two year after she was fired (ie. retaliatory lawsuit, retaliatory reports to law enforcement, defamation, denylisting, stalking, harassment, etc), but the Region refused and would not explain why. (see Case File).

63.    The Region's Determination claims that Gjovik sent an email to the investigator and it was not discussed, despite the email being sent on the date of and for the purpose of discussing during the intake interview.

> "Upon review of the matter, OSHA reviewed the initial two online complaints, including the screening interviews with Complainant, and found that Complainant did not include [certain] allegations in her on line complaints or screening interviews… it appears that Complainant genuinely

19

believed that simply sending information, solicited or otherwise, to the investigator meant that it would be reviewed for potential new allegations to be added to the investigation, without any request for the investigator to do so. Although OSHA policy is to permit the liberal amendment of complaints, there needs to be some dialogue to indicate that a Complainant wants to add allegations to enable the investigator to conduct a proper timeliness and 'reasonably related to' analysis before amending the complaint and investigating the new allegations."

64.    Further, in Gjovik's initial response to The Region in September 2021, prior to her termination, Gjovik sent The Region a US EPA complaint about Apple's CERCLA non-compliance, emails/texts of Gjovik complaining about Apple's CERCLA non-compliance, and a copy of an SEC tip Gjovik filed complaining about Apple engaging in fraud and violations of SEC rules regarding conflicts of interests related to property purchases. Yet, The Region claimed Gjovik's complaint did not involve CERCLA, or SOX, or even OSH Act, and sent it to the state Department of Labor instead. When Gjovik asked about her CERCLA and SOX charges, US Department of Labor responded in an adversarial manner, and tried to dismiss her case several times without explanation and without conducting an investigation. (see Appendix, Exhibit 11, Pages 33-37; Exhibit 12, Pages 38-49).

65.    The Investigations Manual explains that the "*Complainant need not explicitly state the statute(s) implicated by the complaint. OSHA is responsible for properly determining the statute(s) under which a complaint is filed. If a complaint indicates protected activities under multiple statutes, it is important to process the complaint in accordance with the requirements of each of those statutes in order to preserve the parties' rights under each individual statute. OSHA will notify the parties of all statutes under which the complaint is docketed.*" [40] Gjovik had provided her CERCLA US EPA complaint and SEC whistleblower tip to the Region prior to her termination and there is no reasonable explanation why the Region ignored them and did not add SOX and CERCLA claims until months later after much advocacy from Gjovik on the matter.

66.    As for amending Gjovik's original complaint, the Investigations Manual explains, "*It is OSHA's policy to permit the liberal amendment of complaints, provided that the original complaint was timely, and the investigation has not yet concluded. A complaint may be amended orally or in writing. If amendments are received after the limitations period for the original*

---

[40] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg40, (2022).

*complaint has expired, and the amendment reasonably relates to the original complaint, and the investigation remains open, then it must be accepted as an amendment.*"[41] The Region complained to Gjovik that she inappropriately participated in an intake interview and inappropriately submitted a memo about her claims for that intake interview, and that even though she did these inappropriate things, they were generous enough to amend her complaint – but, even if the Region's allegations against Gjovik were true, the Manual instructs they would still need to amend the charges.

## B.   SHOULD TOLLING BE ALLOWED FOR CAA & RCRA?

67.     Gjovik asked to add CAA and RCRA charges to her case after she discovered her employer had nearly killed her in 2020 due their likely illegal operations of a secret semiconductor fabrication facility less than 300 feet from Gjovik's apartment complex which was venting its solvent vapors and gases unabated into the outdoor air. Gjovik would request tolling under continuous violation and fraudulent concealment. The Region never responded and refused to acknowledge any of these facts or requests.

68.     Gjovik learned about the factory in February 2023 and quickly filed complaints with the state and federal EPA, which led the US EPA to conduct an inspection with results still pending. Gjovik complained of her illness/injuries from the fumes in September 2020, to the Apple teams who knew about the facility, and Gjovik noted the proximity to the facility, and the employer went to great lengths to conceal their involvement from Gjovik, and redirect Gjovik's attention instead to a different company and different route of exposure. At that time, Gjovik had filed complaints with the US and state EPA agencies about the exposure, and the employer knew.[42]

69.     Gjovik should also receive equitable tolling for adverse actions in July 2021, as the employer put her administrative leave for nefarious reasons while telling Gjovik it was somehow to benefit to Gjovik. If the employer had formally suspended Gjovik, and informed Gjovik of the US EPA inspection, then Gjovik would have been on notice and would have field complaints immediately – instead the employer attempted to lull Gjovik into inaction. Further, employer's conduct was a continuous violation.

---

[41] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg56, (2022).
[42] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg42-43, (2022).

## C.   DID GJOVIK FAIL TO COOPERATE ("LOC")?

70.    The Region's Determination Letter repeatedly claims that Gjovik Failed to Cooperate and that Gjovik was acting in Bad Faith, yet The Region fails to provide any facts whatsoever to substantiate this claim. Beyond conclusory allegations, there are no dates, times, document titles, quotes from emails or meetings,[43] or other facts to actual substantiate the allegations themselves, let alone the legal analysis if these allegations are true and material. In the Determination, The Region wrote,

> "OSHA finds that Complainant's conduct throughout the course of this investigation met the threshold for OSHA to have dismissed this complaint for any or all of these standards. Complainant refused to provide requested documents/information, repeatedly (and without any basis in fact) accused the investigator and her supervisory chain of criminal misconduct, and, despite express promises not to do so, repeatedly re-submitted an overwhelming number of irrelevant documents, including after the closing conference was held, causing extreme delay and unnecessary expenditure of additional resources…. Complainant… provided clear evidence to demonstrate that she did not act in good faith, for example, by deliberately interfering with Respondent's multiple efforts to investigate Complainant's allegations of sexual harassment, hostile work environment, gender/sex discrimination, etc., including evidence that she tampered with the file structure of the shared drive established to enable file sharing with Respondent's Human Resources investigator, and personally attacked them with allegations of misconduct and derogatory nicknames."[44]

---

[43] Note: Many of the claims made by The Region in this section are the first Gjovik has ever heard of these complaints against her, from The Region, or from Apple. In fact, these complaints were not mentioned in Apple's position statement and The Region did not warn Gjovik they would take negative action against her due to these supposed issues, or provide Gjovik an opportunity to give her side of the story. Because no facts are provided, Gjovik can only guess as to what these claims refer too; such as "derogatory nicknames" likely referring to Gjovik complaining that the Employee Relations team was the "Employee Retaliations" team, or referring to the head of Apple's Corporate Employee Relations as "Mr. Suicide Nets" because he personally managed "labor relations with Beijing" for Apple for years, including, admitted direct involvement of the procurement and installation of Apple's infamous "suicide nets" at their factories in China. As for the "tampering" of "file structures," Gjovik and Okpo squabbled in July 2021 because Gjovik intended to organize the evidence files by cause of action, as she told Lagares in June/July 2021, and had later created some folders by year, but then reorganized them into cause of action, and Okpo was upset she moved the files because he preferred them by year. These files were moved – they were not removed, hidden, or modified – thus they clearly were not "tampered with."
[44] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, page 2 and 4, (December 8 2023).

It's impossible for Gjovik to properly defend herself without details of what these allegations are based on. Gjovik 'guesses' at what some of this refers to and addresses it in other areas of the memo, however the larger question is: even if these claims were true, would they preclude Gjovik from a decision of merit if the facts otherwise supported a decision of merit?

71.     The Investigations Manual discusses "Lack of Cooperation" (LOC) and provides the description of LOC as, "*Failure to be reasonably available for an interview; Failure to respond to repeated correspondence or telephone calls from OSHA; Failure to attend scheduled meetings; and Other conduct making it impossible for OSHA to continue the investigation, such as excessive requests for extending deadlines.*" Gjovik did none of these things and The Region does not even attempt to accuse Gjovik of these things.

72.     The Investigations Manual also notes that "*Harassment, inappropriate behavior, or threats of violence may also justify dismissal for LOC*"[45] and provides examples like "*slurs, graffiti, offensive, or derogatory comments, or other verbal or physical conduct,*" and "*combativeness includes cursing the investigator and making threats.*"[46] Gjovik has not harassed or made threats of violence against The Region, nor has she used slurs or derogatory comments against the Region, nor has she engaged in graffiti of the Regional office.

73.     The Region complained Gjovik accused them of engaging in criminal conduct. However, Gjovik earnestly believes that Diangco and Parra have been engaging in criminal conduct, and Gjovik has reported it repeatedly to parties who are in a position to take action (OSC, FBI, SOL, OIG, etc). The list of examples for "LOC" does not include as an example the reporting of suspected criminal conduct to authorities who could take action to investigate that conduct, as that is quite literally whistleblowing itself.

74.     The Determination claimed that, "*Complainant refused to provide requested documents/information.*"[47] The Region does not expand upon this claim. Assumably The Region is referring to the audio recording Gjovik refused to give them because they made clear they intended to give the audio recording to Apple so Apple could try to use it in their defense against Gjovik somehow, despite the Closing Conference phone call supposedly being 'off the record' and 'private.'[48]  This was the same exchange that led Gjovik to report Parra and Diangco to the

[45] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg 57, (2022).
[46] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg23, 57, 67, (2022).
[47] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, page 2, (December 8 2023).
[48] "Interviews of non-management employees are to be conducted in private," US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg58, (2022).

23

Federal Bureau of Investigation on April 2 2023. (See Appendix, Exhibit 43, page 132-133). At no other time then the alleged criminal extortion by The Region, has The Region asked for "documents/information" and Gjovik refused to provide "documents/information."

75.     The Region also concurrently claims Gjovik sent them too many documents and also refused to provide documents/information. The only example of Gjovik refusing to provide the Region Documents, is her refusal to provide a copy of the audio file because the agency could not offer a legitimate explanation of why they wanted it and what they would do with it, and refused to agree to not share it with Apple. Again, this is currently tracked as RICO Predicate Act: Criminal Extortion in Gjovik's civil lawsuit.[49]

76.     The Investigations Manual explains, "*When Complainant fails to provide requested documents in Complainant's possession or a reasonable explanation for not providing such documents, OSHA may draw an adverse inference against Complainant based on this failure unless the documents may be acquired from Respondent. If the documents cannot be acquired from Respondent, then Complainant's failure to provide requested documents or a reasonable explanation for not doing so may be included as a consideration with the factors listed above when considering whether a case should be dismissed for LOC.*" [50] The Region's reference to Gjovik's refusal to provide documents is assumably the audio file discussed. However, even providing the Region the most deference for their request, Gjovik did provide a reasonable explanation for not providing the document requested and offered an agreement under which she would provide it – which is far from bad faith conduct, especially considering the circumstances.

77.     As for Gjovik sending and "*overwhelming*" amount of "*irrelevant documents*," even without the context of what actually occurred here, if a Complainant had submitted an "*overwhelming*" amount of documents after a Closing Conference, one would assume that the Complainant felt like the Closing Conference decisions were missing required evidence and thus sent over what they believed to be evidence. It is unclear how, even if The Region's allegations are true, this would be something done in bad faith.

---

[49] *Ashley Gjovik v Apple Inc*, 3:2023cv04597, US District Court, Northern District of California, San Francisco Division (2023-)
[50] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg57, 67 (2022).

24

78.     The Region also cites a SOX case as supposedly evidence ("*In the Matter Of John Bauche v Masimo*").[51] The case The Region sites is not comparable to this case, and instead references an ALJ complaining that he asked for a concise summary of claims from the Complainant and instead the Complainant submitted a 750 page brief, after an ALJ had already tried to dismiss the case, but on appeal the case was remanded for one very specific claim (denylisting) not deserving 750 pages of briefing, after several years of litigation, spurred by the US DOJ indicting the employee for allegedly stealing $1M from his employer.[52]

**D.     DID GJOVIK ACCUSE THE REGION OF CRIMINAL MISCONDUCT?**

79.     The Region wrote in the determination, the "*Complainant … repeatedly (and without any basis in fact) accused the investigator and her supervisory chain of criminal misconduct.*"[53] It is accurate that Gjovik complained of unlawful conduct by Diangco (in Region 10) and Parra (in Region 9). Gjovik escalated across US DOL in an attempt to have her case transferred to a different region that was not Region 9 or 10 due to the misconduct she complained about was already well known.[54] (See Appendix, Exhibit 24, page 94-95; Exhibit 29, page 100-101; Exhibit 36, page 111; and Exhibit 38, page 115, as examples).

80.     When The Region threatened Gjovik over an audio file they had no right to, Gjovik warned them she believed their actions were criminal and asked them to rephrase their request in a legitimate and legal way, which the Region refused. Gjovik attempted to escalate to the US DOL OIG and Solicitor's office, with no success. After the deadline expired at which point they had threatened to retaliate against her, Gjovik reported Parra and Diangco to the

---

[51] Determination: "see In the Matter OF JOHN BAUCHE v. MASIMO CORPORATION, 2022-SOX-00026, issued 22 December 2022, at pg. 6"

[52] US DOJ, Mission Viejo Man Indicted on Federal Charges for Allegedly Bilking Employer Out of Nearly $1 Million for Services Never Provided, 2017, https://www.justice.gov/usao-cdca/pr/mission-viejo-man-indicted-federal-charges-allegedly-bilking-employer-out-nearly-1

[53] US DOL, DWPP, Determination Letter - Re: Apple, Inc./ Ashley Gjovik / OSHA Case Number 9-3290-22-051, page 2, (December 8 2023).

[54] US DOL OIG, *Region IX Whistleblower Protection Program Complaints Were Not Complete Or Timely*, (Nov 2020), https://www.oig.dol.gov/public/reports/oa/2021/02-21-001-10-105.pdf; Neil Weinberg, *He Investigated Dubious Firings for U.S. Then He Was Fired*, Bloomberg (2017), https://www.bloomberg.com/politics/articles/2017-07-21/he-investigated-suspicious-firings-for-u-s-then-he-was-fired; Vicky Nguyen and Liz Wagner and Felipe Escamilla, *OSHA Whistleblower Investigator Blows Whistle on Own Agency*, NBC News, (2015), https://www.nbcbayarea.com/news/local/osha-whistleblower-investigator-blows-whistle-on-own-agency/77171/; Vicky Nguyen and Liz Wagner and Felipe Escamilla, *OSHA Dismisses Majority of Whistleblower Cases Agency Investigates*, NBC Bay Area, https://www.nbcbayarea.com/news/local/osha-dismisses-majority-of-whistleblower-cases-agency-investigates/2076782/

Federal Bureau of Investigation and Office of Special Counsel, and let them and the US DOL OIG office know she did so. (Appendix, Exhibit 42, Pages 129-132; Exhibit 43, Pages 135-136).

81.   Gjovik also named Parra and Diangco in her civil lawsuit against Apple, as part of Apple's association-in-fact enterprise under Gjovik's RICO charge against Apple. Gjovik cited the two under Predicate Act "*Criminal Extortion*."[55] Gjovik notified the Region of such. (Appendix, Exhibit 44, Page 137; Exhibit 45, Page 138).

82.   The Region claiming they are punishing Gjovik because Gjovik accused them of criminal conduct, is more illegal retaliation. The Region claims Gjovik's accusations against them are '*without any basis in fact*,' however as they were informed prior to this abrupt decision to dismiss, a Federal Judge and jury will be deciding if Gjovik's claims against Apple (that include Parra and Diangco) have merit.[56] The Region's accusations against Gjovik for reporting them, is actually The Region's employees defending themselves personally from Gjovik's accusations, which is a bit of an obstruction ouroboros.

**E.   SHOULD OSHA POSTPONE FOR NLRB? SHOULD OSHA POSTPONE FOR THE CIVIL LAWSUIT?**

83.   The Investigations Manual explains, *"The Agency may decide to delay an investigation pending the outcome of an active proceeding under … a statute, or common law. The rights asserted in the other proceeding must be substantially the same as the rights under the relevant OSHA whistleblower statute …. The factual issues to be addressed by such proceedings must be substantially similar to those raised by the complaint under the relevant whistleblower statute. The forum hearing the matter must have the power to determine the ultimate issue of retaliation.*"[57] "*The case must remain open during the postponement.*"[58]

84.   When Gjovik notified The Region that she was "kicking out" her SOX case, they should have discussed postponing the OSH Act and CERCLA investigation and then deferring the rest of the complaint.[59] Surely a federal civil lawsuit with a jury trial would be a more

---

[55] *Ashley Gjovik v Apple Inc*, 3:2023cv04597, US District Court, Northern District of California, San Francisco Division (2023-)
[56] *Ashley Gjovik v Apple Inc*, 3:2023cv04597, US District Court, Northern District of California, San Francisco Division (2023-)
[57] US DOL, DWPP, *Whistleblower Investigations Manual*, D# CPL 02-03-011, pg87, (2022).
[58] Id at 88.
[59] *Ashley Gjovik v Apple Inc*, 3:2023cv04597, US District Court, Northern District of California, San Francisco Division (2023-)

Complainant's Appeal of Dismissal | Apple Inc./Gjovik/9-3290-22-051                     December 24, 2023

thorough way to assess Gjovik's claims.[60] Similarly, The Region should have considered postponing their decision until NLRB issues a decision on Gjovik's NLRB charges, as is noted in their MOU.[61]

85.     There is no evidence they did any of these things.

# VI.   CONCLUSION

86.     Based on the foregoing, Complainant respectfully requests that this agency either reopen the investigation and assign to a different region, or reopen the investigation but postpone findings until the completion of the civil lawsuit and/or NLRB case, and/or issue a finding of merit for the Complainant.

Signature of Complainant:     _____

Submitted on:             December 24 2023

Printed Name:             Ashley M. Gjovik

Mailing Address: 2108 N St. Ste. 4553, Sacramento, CA 95816
Physical Address: Boston, Massachusetts
Email: legal@ashleygjovik.com
Phone: (408) 883-4428

---

[60] Id at 91.
[61] US NLRB, *MOU Between US DOL and US NLRB*, (2021), https://www.nlrb.gov/sites/default/files/attachments/pages/node-7857/1-whdnlrb_mou_12821.pdf , ("In appropriate cases the agencies will determine whether to conduct coordinated investigations of matters arising within both agencies' jurisdictions. If the agencies decide to conduct coordinated investigations, and both DOL/WHD and NLRB find overlapping statutory violations, they shall explore whether it is appropriate for one agency to settle or litigate the matter while the other holds it in abeyance, considering under which statute it would be most feasible and practical to proceed. If one agency holds its case in abeyance, the other agency will consult with the former agency before a case is settled. If the case is litigated, the litigating agency will timely advise the agency holding its case in abeyance of the final determination.")

**U.S. Department of Labor**  Occupational Safety and Health Administration
San Francisco Federal Building
90 7th Street, Suite 2650
San Francisco, CA 94103



**Via Electronic Mail**
December 8, 2023

Ashley Gjovik
2108 N St, Ste 4553
Sacramento, CA 95816
ashleymgjovik@protonmail.com

Re: Apple, Inc. / Ashley Gjovik / OSHA Case Number 9-3290-22-051

Dear Ashley Gjovik:

This is to advise you that we have completed our investigation of two complaints received and docketed under the above-referenced Occupational Safety and Health Administration (OSHA) case number. The first complaint (ECN76833) was filed on August 29, 2021, and the second complaint (ECN78416) was filed on September 2, 2021. The complaints alleged retaliation under Section 11(c) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 660, and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9610.[1] You also initially alleged retaliation under the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A, but ultimately availed yourself of the statute's kickout provision and thereby withdrew the SOX allegation from OSHA's consideration.

Under the governing OSHA directive,[2] the only content requirements for this Secretary's Finding are that it, "indicate[s] that the case has been received and docketed…," "…briefly explain[s] the basis for the dismissal…," and "…include[s] a description of the applicable rights of Complainant to file objections to, or request review of, the dismissal." If a complaint fails to meet threshold coverage and/or timeliness issues, or fails to meet prima facie requirements, OSHA is not required to investigate the complaint further. OSHA is also not required to resolve all possible conflicts in the evidence, or to make conclusive credibility determinations before making its determination in a case, although OSHA may make some credibility determinations to evaluate whether it is reasonable to believe that unlawful retaliation occurred.[3] As discussed further herein, OSHA conducted a full investigation of this complaint, even though each alleged claim failed to meet requirements at one or more points in the analysis under the statutes alleged.

Following a thorough case evaluation, including multiple interviews with Complainant and extensive review of documents provided by Complainant by a duly-authorized Investigator, the

---

[1] By policy, when OSHA receives a complaint adequately alleging possible safety and health issues involving environmental circumstances, OSHA will generally docket the complaint under both 11(c) of the OSH Act and the applicable environmental statute(s) (in this case, CERCLA). See Investigator's Desk Aid to the Whistleblower Protection Provisions of Six Environmental Statutes (revised 9/29/22021), at pgs. 9-11.

[2] Whistleblower Investigations Manual (OSHA Directive Number: CPL 02-03-011, effective 4/29/2022) ("WIM").

[3] Id., Chapter 2, subsections III. and IV., at pgs. 23-24.

Acting Secretary of Labor, acting through her agent, the Regional Administrator for OSHA, Region IX, finds there is no reasonable cause to believe that Respondent violated Section 11(c) of the OSH Act, or CERCLA and issues the following findings:

### Secretary's Findings

Complainant alleges that on or about August 4, 2021, Respondent suspended her employment, and subsequently terminated her employment on September 9, 2021, in retaliation for her participating in various protected activities, and for her filing (or being suspected of filing) complaints with various government agencies, including the U.S. Environmental Protection Agency (EPA), and the U.S. Securities and Exchange Commission (SEC).

### Preliminary Matters

OSHA may dismiss a complaint for Lack of Cooperation on the part of a Complainant.[4]  The circumstances giving rise to such a dismissal may include, but are not limited to, when a Complainant fails to provide requested documents in a Complainant's possession, engages in harassing and similar inappropriate behavior, or engages in other conduct making it impossible for OSHA to continue the investigation.[5]  OSHA finds that Complainant's conduct throughout the course of this investigation met the threshold for OSHA to have dismissed this complaint for any or all of these standards. Complainant refused to provide requested documents/information, repeatedly (and without any basis in fact) accused the investigator and her supervisory chain of criminal misconduct, and, despite express promises not to do so, repeatedly re-submitted an overwhelming number of irrelevant documents, including after the closing conference was held, causing extreme delay and unnecessary expenditure of additional resources.[6]  Regardless, OSHA elected to expend the additional resources and complete the investigation.   Complainant's conduct did not serve as a basis for OSHA's determination of non-merit, as discussed in detail below.

### Timeliness

To be timely under both the OSH Act and CERCLA, a complaint must be filed within thirty (30) calendar days of the alleged adverse action. Here, OSHA initially considered Complainant's allegations of vapor intrusion to be timely under both statutes because Complainant included these allegations in her first complaint (ECN76833, filed August 29, 2021) and her alleged suspension was on August 4, 2021.

At the closing conference held on January 26, 2023, Complainant expressed concern that OSHA did not investigate her allegations regarding Respondent's COVID return to work plan and COVID vaccine hoarding.  Upon review of the matter, OSHA reviewed the initial two online complaints, including the screening interviews with Complainant, and found that Complainant did not include these allegations in her online complaints or screening interviews.  Instead, it appears that

---

[4] Id., Chapter 4, subsection VI., at pg. 57.

[5] Id.

[6] For reference, see *In the Matter of JOHN BAUCHÉ v. MASIMO CORPORATION*, 2022-SOX-00026, issued 22 December 2022, at pg. 6 (available at https://www.dol.gov/agencies/oalj/apps/keyword-search).

Complainant first raised these allegations in a 35-page document she emailed to the investigator on November 8, 2021.  This history raises multiple issues that warrant discussion here.

First, it appears that Complainant genuinely believed that simply sending information, solicited or otherwise, to the investigator meant that it would be reviewed for potential new allegations to be added to the investigation, without any request for the investigator to do so.  Although OSHA policy is to permit the liberal amendment of complaints, there needs to be some dialogue to indicate that a Complainant wants to add allegations to enable the investigator to conduct a proper timeliness and 'reasonably related to' analysis before amending the complaint and investigating the new allegations.[7]  Such dialogue did not occur in this case.

Second, November 8, 2021, falls outside the thirty (30) day window of the alleged adverse actions (suspension/termination).  Regardless of these issues, OSHA elected to consider the new allegations as reasonably related to the initial complaint and reviewed them as part of this investigation for efficiency.

## Coverage

**OSHA 11(c):**

Respondent is a person within the meaning of 29 U.S.C. § 652(4) and Complainant is an employee within the meaning of 29 U.S.C. § 652(6).

**CERCLA:**

By judicial determination, CERCLA requires that a Complainant establish an employer-employee relationship with the party/entity the EPA has determined is responsible for the superfund site cleanup as a threshold for CERCLA to apply.[8]  Here, the responsible party is Northrop Grumman and not Respondent (Apple, Inc.).  Because Complainant was an employee of Respondent (Apple, Inc.), and not Northrop Grumman, she failed to meet her burden to establish the requisite employment relationship.  Respondent is therefore not a person within the meaning of 1 U.S.C. § 1 and 42 U.S.C. § 9610 and Complainant is not an employee within the meaning of 42 U.S.C. § 9610.  Although OSHA could end the analysis with this finding, OSHA elected to discuss additional bases for its dismissal in the interest of efficiency for future review and expenditure of government resources.

## Analysis

## Protected Activity

Regarding Complainant's allegation concerning vapor intrusion, the evidence indicates Complainant received adequate responses from the EPA that the superfund site remained protective, there are monitoring procedures in place, and Respondent is not the responsible party.  Additionally, Respondent's internal Environmental Health Safety (EHS) team met and worked with Complainant

---

[7] WIM, Chapter 4, subsection V., at pg. 56.

[8] *In the Matter of: Ed Slaven v. City of ST. Augustine, et. al.*, ARB Case NO. 07-002 (March 31, 2008); 29 CFR § 24.102.  See also, Investigator's Desk Aid to the Whistleblower Protection Provisions of Six Environmental Statutes (revised 9/29/22021), at pg. 3 and footnote 1.

repeatedly to address her concerns as well. Complainant's rejection of the information provided by the EPA and Respondent's EHS team rendered the belief that she engaged in protected activity unreasonable. Moreover, the evidence similarly does not support the conclusion that Complainant's concerns were based on a reasonable, but mistaken, belief that Respondent violated either statute.

Regarding Complainant's allegation concerning Respondent's COVID return to work plan, the evidence supports that Complainant engaged in protected activity for this allegation.

Finally, the evidence does not support that Complainant's allegation regarding COVID vaccine hoarding is a covered protected activity under any of the statutes OSHA enforces.

No other potential protected activities warrant discussion in these Findings.

## Employer Knowledge

Respondent does not dispute knowledge of Complainant's alleged protected activities.

## Adverse Action(s)

Termination of Complainant's employment on September 9, 2021, constitutes an adverse action.

However, Complainant's alleged suspension on or about August 4, 2021, does not constitute an adverse action. Based on the evidence, Complainant requested to be placed on administrative leave as a solution to her reports that her managers were creating a hostile work environment and her desire not to return to work in accordance with Respondent's phased plan for doing so post-pandemic. Respondent granted Complainant's request. Complainant was on paid leave and was eligible to return to work at any time. Respondent notified Complainant in writing of her right to terminate the paid administrative leave and eligibility to return to work at any time, and Complainant chose not to do so. For Complainant to allege this action was an involuntary suspension, despite the evidence discussed above, fails to meet the good faith requirement of the OSH Act.[9]

No other alleged adverse actions warrant discussion in these Findings.

## Nexus

While there is temporal proximity, it is not enough to establish Complainant's protected activities were a "motivating" (CERCLA) or "but for" (OSH Act 11(c)) factor in Respondent's decision to terminate Complainant's employment. The circumstances of this case, including a lack of evidence of animus[10], the intervening event of Complainant's misconduct, and a clear history of

---

[9] See 29 C.F.R. § 1977.9(c).

[10] In fact, ample evidence supports the opposite conclusion regarding animus: Respondent generally supported Complainant's right to engage in protected activities. Complainant, on the other hand, provided clear evidence to demonstrate that she did not act in good faith, for example, by deliberately interfering with Respondent's multiple efforts to investigate Complainant's allegations of sexual harassment, hostile work environment, gender/sex

consistent discipline for other employees Respondent believed disclosed confidential information in violation of its policy, were not sufficient to raise a reasonable inference that there is a causal connection between the protected activity and the adverse action.

Although OSHA finds the evidence fails to satisfy the prima facie requirements and the analysis may end there, OSHA elects to continue the analysis for the sake of thoroughness and efficiency.

## Respondent Burden

Respondent provided sufficient[11] credible evidence to support that its decision to terminate Complainant's employment was motivated by its belief that Complainant's conduct violated its non-disclosure policy/agreement and Complainant's failure to cooperate in the investigation into Complainant's alleged misconduct. Complainant did not provide sufficient credible evidence to rebut Respondent's proffered legitimate business reason. Instead, Complainant admitted she made the disclosures, indicated that she disagreed with Respondent that such disclosures violated the policy, alleged (without support) that the policy was illegal (or would be declared so soon)[12], and acknowledged that she declined to be interviewed by Respondent for her alleged misconduct. Based on Respondent's misconduct policy, disclosing confidential, proprietary, and trade secret information is grounds for immediate termination. Therefore, based on the evidence, Respondent would have subjected Complainant to the same adverse action, despite her protected activities.

## Conclusion

After review of evidence and information available to OSHA at this time, OSHA has determined that the burden of establishing Complainant was retaliated against in violation of the OSH Act and/or the CERCLA cannot be sustained.[13]

---

discrimination, etc., including evidence that she tampered with the file structure of the shared drive established to enable file sharing with Respondent's Human Resources investigator, and personally attacked them with allegations of misconduct and derogatory nicknames.

[11] Respondent's evidence not only meets the preponderance of the evidence standard, OSHA finds that such evidence is clear and convincing.

[12] OSHA is unable to base its analysis of the merits of a case on future potential changes in the law affecting an employer's conduct policies. An employer does not need to provide evidence of a good reason or even a fair reason for the termination; instead, an employer must provide evidence of a legitimate, nonretaliatory reason. Moreover, part of Complainant's assertion regarding the illegality of Respondent's policy included a claim that she had "won her case" on the matter with another federal agency when that was inaccurate.

[13] Moreover, among the other deficiencies noted above, Complainant's version of events contradicted other evidence Complainant provided and generally lacked credibility. Finally, Complainant's submitting nearly 500 electronic files of mostly repetitious or irrelevant information after the closing conference required substantial additional resources and caused significant, unnecessary delay in completing OSHA's investigation.

**Rights to Request Review and to File Objections**

*For the Section 11c OSH Act Finding(s):*

This case will be closed unless Complainant files an appeal by sending a letter to:

**Primary method** - via email to: rfr@dol.gov with a copy to James Wulff, Regional Administrator, via email to: OSHA-REG09-WB@DOL.gov

**Secondary method** (if unable to file via email) - via hard copy submission to:

|  | *with a copy to*: |
|---|---|
| Directorate of Whistleblower Protection Programs | James Wulff |
| Attention Appeals Intake | Regional Administrator |
| U.S. Department of Labor-OSHA | U.S. Department of Labor – OSHA |
| 200 Constitution Avenue, N.W., Rm N3647 | 90 7th Street, Suite 2650 |
| Washington, D.C.  20210 | San Francisco, CA 94103 |

To be considered, an appeal must be postmarked within fifteen (15) calendar days of receipt of this letter.  If this Secretary's Finding is appealed, then the Directorate of Whistleblower Protection Programs will review the case file in order to ascertain whether the investigation dealt adequately with all factual issues and the investigation was conducted fairly and in accordance with applicable laws.   The outcome of an appeal is either the return of the case to the Investigator for further investigation, a recommendation to the Regional Solicitor's Office for litigation, or denial of the appeal, after which the case is closed.

*For the CERCLA Finding(s):*

Respondent and Complainant have 30 calendar days from the receipt of these Secretary's Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ).  If no objections are filed, this Secretary's Findings will become final and not subject to court review. Objections must be filed in writing as follows:

**Primary method** - via email to: OALJ-Filings@dol.gov, with copy to James Wulff at OSHA-REG09-WB@DOL.gov.

**Secondary method** - (if unable to file via email) via hard copy submission to:

Chief Administrative Law Judge
Office of Administrative Law Judges
U.S. Department of Labor
800 K Street NW, Suite 400 North
Washington, D.C. 20001-8002
Phone: (202) 693-7300
Fax: (202) 693-7365

*With copies to*:

Jessica R. Perry
Kathryn G. Mantoan
1000 Marsh Road
Menlo Park, CA 94025
650-614-7400
jperry@orrick.com
kmantoan@orrick.com

James Wulff
Regional Administrator
U.S. Department of Labor – OSHA
90 7th Street, Suite 2650
San Francisco, CA 94103
Email: OSHA-REG09-WB@DOL.gov

In addition, please be advised that the U.S. Department of Labor does not represent any party in the hearing; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an ALJ in which the parties are allowed an opportunity to present their evidence for the record. The ALJ who conducts the hearing will issue a decision based on the evidence and arguments presented by the parties. Review of the ALJ's decision may be sought from the Administrative Review Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decisions under the Act. A copy of this letter has been sent to the Chief Administrative Law Judge along with a copy of your complaint. The rules and procedures for handling cases under the CERCLA can be found in Title 29 of the Code of Federal Regulations, Part 24 and may be obtained at www.whistleblowers.gov.

Sincerely,

**MATTHEW PARRA**

Digitally signed by
MATTHEW PARRA
Date: 2023.12.08 14:58:43
-08'00'

Matthew B. Parra, Esq.
Assistant Regional Administrator

cc:  Respondent
     Chief Administrative Law Judge, USDOL
     U.S. EPA
     U.S. NLRB

**Ashley M. Gjovik, JD**
*Pro Se Complainant*
Boston, Massachusetts

# US. DEPARTMENT OF LABOR
# DIRECTORATE OF WHISTLEBLOWER PROTECTION PROGRAMS

# OSH ACT § 11(C): REQUEST FOR REVIEW

**Case:** Apple Inc./Gjovik/9-3290-22-051

**Charge Filed:** August 31 2021

**Regional Determination**: December 8 2023

**DWPP RFR Filed**: December 24 2023

ASHLEY GJOVIK, *an individual*,

Plaintiff,

v.

APPLE INC, *a corporation*,

Defendant.

**To: DWPP RFR,**
U.S. Department of Labor-OSHA
200 Constitution Ave, N.W.,
Washington, DC 20210
rfr@dol.gov

Cc: James Wulff
Regional Administrator
OSHA-REG09-WB@DOL.gov

## COMPLAINANT'S APPEAL AND OBJECTIONS
## IN OPPOSITION TO DECISION TO DISMISS ACTION

### APPENDIX: EXHIBITS

Complainant Ashley Gjovik (pronounced "JOE-vik") respectfully submits the following

compilation of Exhibits as an Appendix to her Appellate Memorandum in opposition to the

Decision to Dismiss, submitted concurrently.

# I.    APPENDIX: EXHIBITS

Table of Exhibits

Exhibit: 1 – 8/31/21 - First US DOL WPP Charge: ...................................................................3
Exhibit: 2 – 8/31/2021 Intake ......................................................................................................4
Exhibit: 3 – 9/8/21 Gjovik's Response .........................................................................................4
Exhibit: 4 – 9/9/2021 Gjovik's Claims and Evidence ..................................................................8
Exhibit: 5 - 9/9/21 - Suspended and Terminated .......................................................................14
Exhibit: 6 - 8/30/21-9/10/21 Screening .....................................................................................15
Exhibit: 7 – 9/10/2021 Referral .................................................................................................17
Exhibit: 8 – 11/1/21 Reminder about SOX and CERCLA .........................................................18
Exhibit: 9  - 11/2/21 - Second US DOL WPP Charge ................................................................19
Exhibit: 10 – 11/3-11/8/2021 US DOL Intake Interview ...........................................................20
Exhibit: 11 - 11/16/23 Dismissal ...............................................................................................33
Exhibit: 12 – 11/22/22-12/10/22 - Dismissal Appeal ................................................................38
Exhibit: 13 - 12/10/21 – Case Letter & Complaint ...................................................................50
Exhibit: 14 - 12/13/21 - EPA and DOL Talk about Ashley ........................................................53
Exhibit: 15 – 12/13/21 Questions about Evidence .....................................................................54
Exhibit: 16 - 12/20/21 Other Investigations ..............................................................................56
Exhibit: 17 - 12/27/21 Health and Safety Evidence ..................................................................60
Exhibit: 18 - 3/9/22 - Apple's Position Statement .....................................................................62
Exhibit: 19 - 3/28/22 - Gjovik Submits Response to Position Statement ...................................64
Exhibit: 20 - 6/8/22 - US DOL on Kick Out ..............................................................................72
Exhibit: 21 - 9/16/22 - "Customer Service" Meeting .................................................................78
Exhibit: 22 - 12/12/22 - US EPA and US DOL Meeting in 2021 ...............................................80
Exhibit: 23 - 12/16/22 - Evidence Summary with FOIA Discoveries ........................................81
Exhibit: 24 - 1/5/23 Gjovik Requests Status ..............................................................................82
Exhibit: 25 - 1/23/23 - DOL Says they Made a Decision on Gjovik's Case ...............................85
Exhibit: 26 - 1/23/23 - Gjovik Asks to Record Call ...................................................................86
Exhibit: 27 - 2/2/23 Complaint to OIG .....................................................................................91
Exhibit: 28 - 2/6/23, Parra Investigated Himself and Found No Policy Violations ...................94
Exhibit: 29 - 2/8/23 – Gjovik emails about NLRB Decision of Merit ........................................96
Exhibit: 30 - 2/8/23 Cont, Gjovik Complains about Denial of Transfer ..................................100
Exhibit: 31 - 2/8/23 Parra asks for NLRB ALJ Case (for Decision of Merit) ..........................103
Exhibit: 32 - 2/8/23 Gjovik Complains to Parra about Renegging ..........................................104
Exhibit: 33 - 2/9/23 Parra Confirms Gjovik can Re-send Evidence .........................................107
Exhibit: 34 - 2/9/23 Gjovik Summarizing Call ........................................................................108
Exhibit: 35 - 2/16/23 - Gjovik Update on EPA and SEC ..........................................................109
Exhibit: 36 - 2/21/23 Gjovik Complaining about Diangco's Letter .........................................111
Exhibit: 37 - 2/23/23 - Gjovik Complaining about Procedural Extortion ................................112
Exhibit: 38 - 2/24/2023 Gjovik to Parra about Diangco ..........................................................115
Exhibit: 39 - 2/24/23 - Gjovik Sends DOL Evidence Files .......................................................116
Exhibit: 40 - 2/27/23 - DOL Request for Index of Files ...........................................................123
Exhibit: 41 -  3/6/23 - Gjovik Provides Index ..........................................................................127
Exhibit: 42 - 3/22/23 Demand for Audio File ..........................................................................129
Exhibit: 43 - 3/29-4/2/23 - Gjovik to Parra about FBI & Silicon Fab .....................................133
Exhibit: 44 - 9/8/23 SOX Kick-Out Notification ......................................................................137
Exhibit: 45 - 11/1/23 RICO Notification ..................................................................................138
Exhibit: 46 - 12/5/23 - Notice from US Senator's Office ..........................................................139
Exhibit: 47 – 12/8/23 Dismissal letter from Parra ..................................................................140
Exhibit: 48 - 12/8/23 - Gjovik Will Appeal ..............................................................................141

## RFR: Apple Inc/Ashley Gjovik/9-3290-22-051

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | rfr@dol.gov |
| CC | osha-reg09-wb@dol.gov, Sollett, Mathew<Mathew.Sollett@nlrb.gov> |
| Date | Sunday, December 24th, 2023 at 8:38 PM |

**Directorate of Whistleblower Protection Programs**
**Request for Review l Attention Appeals Intake**
Case**:** *Apple Inc/Ashley Gjovik/9-3290-22-051*

Hello,

I am respectfully requesting review of, and filing objections to, the Region's Preliminary Determination on my OSH Act whistleblower retaliation complaint.

I am attaching a brief appellate memo, and a copy of the Region's Determination is attached at the end of that memo.

I am also attaching an appendix of exhibits referenced in the memo, due to the highly inflammatory yet demonstrably false, personal attacks made against me in the Determination.

Please confirm receipt and let me know if I can be of any assistance in the review.

Thank you,
-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**20.28 MB**   2 files attached

Gjovik – OSH Act Appeal – Memo – Final.pdf
3.99 MB

Gjovik – OSH Act Appeal – Exhibits – Final.pdf
16.29 MB