**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | **Case No. 3:23-cv-04597-EMC** |
| | **Filed**: September 7 2023 |
| | **District Judge**: Honorable Edward M. Chen |
| **ASHLEY GJOVIK**, *an individual*, | **MOTION FOR JUDICIAL NOTICE** |
| Plaintiff, | |
| v. | **Hearing** |
| | Dept: Courtroom 5, 17th Floor (Virtual) |
| **APPLE INC**, *a corporation*, | Date: February 8, 2024 1:30 p.m. |
| Defendant. | *Plaintiff Does Not Require Oral Arguments* |
| | *Concurrent with:* |
| | *Defendant's Motion to Dismiss (Doc #30)* |
| | *P's Opposition to Motion to Dismiss (Doc #33)* |

**Motion for Judicial Notice Cover Page: Exhibit   9**

# Joanna Appleseed's Retaliatory Lawsuit

**Declaration**: *I verified the authenticity of each of these documents. A true and correction version of each document is attached in each exhibit. I declare under penalty of perjury this is true and correction. /s/ Ashley M. Gjovik (December 25 2023).*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

# Docket 1

 King County

**22CIV01704KCX**
Cher Swan Scarlett vs. Ashley Marie Gjovik
EAST DIVISION, REDMOND COURTHOUSE

Summary   Documents   Register of Actions

## Summary

### Case

Add Filing

| Filing Date | Case Caption | Disposition |
|---|---|---|
| 01/31/2022 | Cher Swan Scarlett vs. Ashley Marie Gjovik | Disposed as Disposed on 01/25/2023 |

### Filings

| Filing | Disposition |
|---|---|
| Petition - Anti-Harassment Order filed on 01/31/2022 | Disposed as Disposed on 01/25/2023 |
| Petitioner Scarlett, Cher Swan | |
| Respondent Gjovik, Ashley Marie | |

### Appeal

| Filing | Superior Court Case Number | Disposition |
|---|---|---|
| 03/17/2022 Civil Appeal | 22-2-03849-7 | Disposed as: Reversed on 09/26/2022 |

### Protection Orders

| Type | Date Ordered | Expiration Date | Termination Date | Active | Issuing Judge |
|---|---|---|---|---|---|
| Respondent Gjovik, Ashley Marie | | | | | |
| Temporary Anti-Harassment Order | 02/01/2022 | 02/01/2022 | | No | Lisa N. O'Toole |
| Protected Party Scarlett, Cher Swan | | | | | |
| Anti-Harassment Order | 03/01/2022 | 03/01/2027 | 12/12/2022 | No | Lisa N. O'Toole |
| Protected Party Scarlett, Cher Swan | | | | | |

### Judgments/Findings

**Judgment**

Petition - Anti-Harassment Order filed on 01/31/2022

## Parties

| Type | Name | Date | Represented By | Alerts |
|------|------|------|----------------|--------|
| Petition - Anti-Harassment Order filed on 01/31/2022 | | | | |
| Petitioner | Scarlett, Cher Swan | Start Date: 01/31/2022 | | |
| Respondent | Gjovik, Ashley Marie | Start Date: 01/31/2022 | Blair, Mark C | |
| Civil Appeal on 03/17/2022 | | | | |
| Appellant | Gjovik, Ashley Marie | Blair, Mark C | | |
| Appeal Respondent | Scarlett, Cher Swan | | | |

## Case Assignments

| Date Assigned | Role | Name | Status | Representing/On Behalf Of |
|---------------|------|------|--------|---------------------------|
| 12/12/2022 | Judge | Rampersad, E. Rania | Current | |
| 02/18/2022 | Attorney | Blair, Mark C | Current | Representing Gjovik, Ashley Marie |
| 01/31/2022 | Judge | O'Toole, Lisa N. | Current | |

## Events

| Date/Time | Type | Result | Official | Location |
|-----------|------|--------|----------|----------|
| 22CIV01704KCX: Cher Swan Scarlett vs. Ashley Marie Gjovik | | | | |
| 01/05/2023 05:30 PM | Judicial Review | Held | Rampersad | Redmond Admin Courtroom |
| 12/12/2022 05:30 PM | Judicial Review | Held | Rampersad | Redmond Admin Courtroom |
| 12/12/2022 05:30 PM | Judicial Review | Held | Rampersad | Redmond Admin Courtroom |
| 12/12/2022 05:30 PM | Administrative Review | Held | Rampersad | Redmond Admin Courtroom |
| 03/01/2022 01:30 PM | Full Order Hearing-Anti-Harassment - May Appear via Zoom | Held | O'Toole | Redmond Courtroom 2 |
| | Minute Record 🗎 | | | |
| 02/15/2022 01:30 PM | Full Order Hearing-Anti-Harassment | Held | O'Toole | Redmond Courtroom 2 |
| | Minute Record 🗎 | | | |
| 02/01/2022 01:05 PM | Petition Hearing - Temporary Anti-Harassment Order | Held | O'Toole | Redmond Courtroom 2 |
| | Minute Record 🗎 | | | |



**22CIV01704KCX**
Cher Swan Scarlett vs. Ashley Marie Gjovik
EAST DIVISION, REDMOND COURTHOUSE

<u>Summary</u>    <u>Documents</u>    Register of Actions

## Register of Actions

⌄ Register of Actions

| Date | Description |
|------|-------------|
| 01/25/2023 | Case Disposed: Disposed |
| 01/25/2023 | Petition Disposed: Disposed, on 01/25/2023 |
| 01/24/2023 | Plaintiff's Response to Defendant's Motion RE: Non-Moving Party's Response to Motion Reply - Filed by Petitioner on 01/23/2023 - Status eFiling Accepted |
| 01/17/2023 | Non-Moving Party's Response to Motion Reply to Motion to Strike - Filed by Defendant on 01/16/2023 - Status eFiling Accepted |
| 12/27/2022 | Misc. Civil Motion RE: Notice of intention - Filed by Petitioner on 12/24/2022 - Status eFiling Accepted |
| 12/12/2022 | Judge E. Rampersad Assigned to Event |
| 12/12/2022 | Judicial Review Sheet - Filed by Court Filed on 12/12/2022 |
| 12/02/2022 | Note for Motion Notice of Intention to File Motions Upon Remand - Filed by Respondent on 12/01/2022 - Status eFiling Accepted |
| 11/21/2022 | Notification of Decision on RALJ Appeal - Filed by Superior Court Filed on 11/21/2022 |
| 09/26/2022 | Civil Appeal Disposed: Reversed, on 09/26/2022 |
| 04/06/2022 | Request for Copy - Filed by Third Party Filed on 04/06/2022 |
| 03/17/2022 | Transmittal of Record of Proceedings Copy of Document Mailed to and Third Party Attorney Mark Blair on 03/17/2022 |
| 03/17/2022 | Transmittal of Record of Proceedings Copy of Document Mailed to Scarlett, Cher Swan on 03/17/2022 |
| 03/17/2022 | Transmittal of Record of Proceedings Copy of Document Mailed to Gjovik, Ashley Marie on 03/17/2022 |
| 03/17/2022 | Transmittal of Record of Proceedings Copy of Document Mailed to and Third Party SUPERIOR COURT on 03/17/2022 |
| 03/17/2022 | Transmittal of Record of Proceedings - Filed by Court Filed on 03/17/2022 |
| 03/17/2022 | Communication from Court - Clerk - Filed by Court Filed on 03/17/2022 |
| 03/17/2022 | Order Setting Case Schedule - Filed by Court Filed on 03/17/2022 |
| 03/17/2022 | Fax Confirmation - Filed by Court Filed on 03/17/2022 |
| 03/17/2022 | Scarlett, Cher Swan added as Appeal Respondent Civil Appeal |
| 03/17/2022 | Gjovik, Ashley Marie added as Appellant Civil Appeal |
| 03/17/2022 | Civil Appeal - Filed |
| 03/04/2022 | Case Information Cover Sheet - Filed by Attorney Filed on 03/04/2022 |
| 03/04/2022 | Designation of Record - Filed by Attorney Filed on 03/04/2022 |

| Date | Description |
|------|-------------|
| 03/04/2022 | Notice of Appeal - Filed by Attorney Filed on 03/04/2022 |
| 03/04/2022 | Request for Copy - Filed by Third Party Filed on 03/04/2022 |
| 03/01/2022 | Petition for Order for Protection - Harassment Copy of Document Mailed to Gjovik, Ashley Marie on 03/01/2022 |
| 03/01/2022 | Petition for Order for Protection - Harassment Copy of Document Mailed to and Third Party Attorney Marc C Blair on 03/01/2022 |
| 03/01/2022 | Copy of Document Provided in Person to Scarlett, Cher Swan on 03/01/2022 - Petition for Order for Protection - Harassment |
| 03/01/2022 | Full Order Hearing-Anti-Harassment 425112 Scheduled for 03/01/2022 01:30:00 PM Redmond Courtroom 2 Result: Held on 03/01/2022 before Judge Lisa N. O'Toole |
| 03/01/2022 | Minute Record - Filed by CLK Event Date: 03/01/2022 - Full Order Hearing-Anti-Harassment Filed on |
| 03/01/2022 | Granted entered on 03/01/2022 in the Amount of for |
| 03/01/2022 | Order for Protection - Harassment - Filed by Court Filed on 03/01/2022 |
| 02/28/2022 | Declaration of Witness - Filed by Respondent on 02/28/2022 - Status eFiling Accepted |
| 02/25/2022 | Declaration of Witness - Filed by Respondent on 02/25/2022 - Status eFiling Accepted |
| 02/18/2022 | Notice of Appearance - Filed by Respondent on 02/17/2022 - Status eFiling Accepted |
| 02/18/2022 | Attorney: Mark Blair - Current as of 02/18/2022; Represents Gjovik, Ashley Marie |
| 02/18/2022 | Attorney Mark Blair Assigned to Event |
| 02/18/2022 | Attorney: Mark Blair - Current as of 02/18/2022; Represents Gjovik, Ashley Marie |
| 02/15/2022 | Denial Order - Harassment Copy of Document Mailed to Scarlett, Cher Swan and Gjovik, Ashley Marie on 02/15/2022 |
| 02/15/2022 | Misc. Civil Paperwork Evidence - Filed by Petitioner Filed on 02/15/2022 |
| 02/15/2022 | Misc. Civil Paperwork Statement from Petitioner - Filed by Petitioner Filed on 02/15/2022 |
| 02/15/2022 | Affidavit, Declaration or Return of Service - Filed by Petitioner Filed on 02/15/2022 |
| 02/15/2022 | Full Order Hearing-Anti-Harassment 425112 Scheduled for 02/15/2022 01:30:00 PM Redmond Courtroom 2 Result: Held on 02/15/2022 before Judge Lisa N. O'Toole |
| 02/15/2022 | Minute Record - Filed by CLK Event Date: 02/15/2022 - Full Order Hearing-Anti-Harassment Filed on |
| 02/15/2022 | Denied entered on 02/15/2022 in the Amount of for |
| 02/15/2022 | Denial Order - Harassment - Filed by Court Filed on 02/15/2022 |
| 02/15/2022 | Motion/Request for Continuance Req for Continuance due to Insuf Notice - Filed by Respondent on 02/15/2022 - Status eFiling Accepted |
| 02/15/2022 | Motion for Civil Dismissal with Prejudice Motion for Dismissal 'amp; Counter-Claim for Sanctions - Filed by Respondent on 02/15/2022 - Status eFiling Accepted |
| 02/15/2022 | Misc. Civil Paperwork Evidence (Remote Hearing) - Filed by Respondent on 02/15/2022 - Status eFiling Accepted |
| 02/15/2022 | Defendant's Response to Plaintiff's Motion Respondent's Reply - Filed by Respondent on 02/15/2022 - Status eFiling Accepted |
| 02/15/2022 | Full Order Hearing-Anti-Harassment 425112 set for 03/01/2022 01:30:00 PM Redmond Courtroom 2 before Judge Lisa N. O'Toole |
| 02/01/2022 | Granted entered on 02/01/2022 in the Amount of for |
| 02/01/2022 | Petition Hearing - Temporary Anti-Harassment Order 411112 Scheduled for 02/01/2022 01:05:00 PM Redmond Courtroom 2 Result: Held on 02/01/2022 before Judge Lisa N. O'Toole |
| 02/01/2022 | Minute Record - Filed by CLK Event Date: 02/01/2022 - Petition Hearing - Temporary Anti-Harassment Order Filed on |
| 02/01/2022 | Denial Order - Harassment - Filed by Court Filed on 02/01/2022 |
| 02/01/2022 | Full Order Hearing-Anti-Harassment 425112 set for 02/15/2022 01:30:00 PM Redmond Courtroom 2 before Judge Lisa N. O'Toole |
| 01/31/2022 | Judge Lisa O'Toole Assigned to Event |

| Date | Description |
|------|-------------|
| 01/31/2022 | Petition Hearing - Temporary Anti-Harassment Order 411112 set for 02/01/2022 01:05:00 PM Redmond Courtroom 2 before Judge Lisa N. O'Toole |
| 01/31/2022 | Petition - Anti-Harassment Order Filed |
| 01/31/2022 | Gjovik, Ashley Marie added as Respondent Petition Anti-Harassment Order |
| 01/31/2022 | Scarlett, Cher Swan added as Petitioner Petition Anti-Harassment Order |
| 01/31/2022 | Law Enforcement Information - Filed by Petitioner Filed on 01/31/2022 |
| 01/31/2022 | Petition for Order for Protection - Harassment - Filed by Petitioner Filed on 01/31/2022 |

Copyright © Journal Technologies, USA. All rights reserved.



**22CIV01704KCX**
Cher Swan Scarlett vs. Ashley Marie Gjovik
EAST DIVISION, REDMOND COURTHOUSE

Summary | Documents | Register of Actions

## Documents

### Documents

⌄ Documents                                                          [Add Filing]

| Filed | Number of Pages | Description | Filed By | View |
|---|---|---|---|---|
| 01/24/2023 | 3 | Plaintiff's Response to Defendant's Motion RE: Non-Moving Party's Response to Motion Reply | Petitioner | 🗎 |
| 01/17/2023 | 17 | Non-Moving Party's Response to Motion Reply to Motion to Strike | Defendant | 🗎 |
| 12/27/2022 | 9 | Misc. Civil Motion RE: Notice of intention | Petitioner - Cher Swan Scarlett | 🗎 |
| 12/12/2022 | 1 | Judicial Review Sheet | Court | 🗎 |
| 12/02/2022 | 9 | Note for Motion Notice of Intention to File Motions Upon Remand | Respondent - Ashley Marie Gjovik | 🗎 |
| 11/21/2022 | 20 | Notification of Decision on RALJ Appeal | Superior Court | 🗎 |
| 04/06/2022 | 1 | Request for Copy | Third Party | 🗎 |
| 03/17/2022 | 2 | Fax Confirmation | Court | 🗎 |
| 03/17/2022 | 3 | Order Setting Case Schedule | Court | 🗎 |
| 03/17/2022 | 1 | Communication from Court - Clerk | Court | 🗎 |
| 03/17/2022 | 1 | Transmittal of Record of Proceedings | Court | 🗎 |
| 03/04/2022 | 1 | Request for Copy | Third Party | 🗎 |
| 03/04/2022 | 1 | Notice of Appeal | Attorney | 🗎 |
| 03/04/2022 | 1 | Designation of Record | Attorney | 🗎 |
| 03/04/2022 | 1 | Case Information Cover Sheet | Attorney | 🗎 |
| 03/01/2022 | 4 | Order for Protection - Harassment | Court | 🗎 |

| Filed | Number of Pages | Description | Filed By | View |
|---|---|---|---|---|
| 02/28/2022 | 2 | Declaration of Witness | Respondent - Ashley Marie Gjovik | ▨ |
| 02/25/2022 | 2 | Declaration of Witness | Respondent - Ashley Marie Gjovik | ▨ |
| 02/18/2022 | 1 | Notice of Appearance | Respondent - Ashley Marie Gjovik | ▨ |
| 02/15/2022 | 24 | Defendant's Response to Plaintiff's Motion Respondent's Reply | Respondent - Ashley Marie Gjovik | ▨ |
| 02/15/2022 | 65 | Misc. Civil Paperwork Evidence (Remote Hearing) | Respondent - Ashley Marie Gjovik | ▨ |
| 02/15/2022 | 5 | Motion for Civil Dismissal with Prejudice Motion for Dismissal &amp; Counter-Claim for Sanctions | Respondent - Ashley Marie Gjovik | ▨ |
| 02/15/2022 | 3 | Motion/Request for Continuance Req for Continuance due to Insuf Notice | Respondent - Ashley Marie Gjovik | ▨ |
| 02/15/2022 | 3 | Denial Order - Harassment | Court | ▨ |
| 02/15/2022 | 1 | Affidavit, Declaration or Return of Service | Petitioner | ▨ |
| 02/15/2022 | 8 | Misc. Civil Paperwork Statement from Petitioner | Petitioner | ▨ |
| 02/15/2022 | 86 | Misc. Civil Paperwork Evidence/Tweets | Petitioner | ▨ |
| 02/01/2022 | 3 | Denial Order - Harassment | Court | ▨ |
| 01/31/2022 | 7 | Petition for Order for Protection - Harassment | Petitioner | ▨ |

Copyright © Journal Technologies, USA. All rights reserved.

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

## Dismissal

**KING COUNTY DISTRICT COURT**
**STATE OF WASHINGTON**
**EAST DIVISION, REDMOND COURTHOUSE**

| | |
|---|---|
| <u>Cher Swan Scarlett</u> | No. <u>22CIV01704KCX</u> |
| Plaintiff(s), | |
| | **JUDICIAL REVIEW** |
| v. | |
| <u>Ashley Marie Gjovik</u> | |
| Defendant(s). | |

The Court has reviewed the decision of the King County Superior Court issued on appeal from the trial court (King County District Court). The Superior Court found that the protection order issued in this case was unlawful for two reasons: first, because it was improperly issued for 5 years (rather than 1 year) without the necessary findings to permit a 5-year order, and second, because the "course of conduct" at issue in the case involved constitutionally protected free speech. The Superior Court further elaborated that of the two categories of speech considered by the Court at the hearing---(a) reposting by the Respondent of public records and other information already in the public domain, and (b) the opinions posted by the Respondent---both were constitutionally protected free speech, and so neither could form the basis for the "course of conduct" required to support an anti-harassment protection order.

The Court has also received a document filed by the Respondent which outlines numerous motions for dismissal, sanctions, and other forms of relief. The Court has reviewed and considered these motions. However, in light of the Superior Court's ruling on appeal, this Court finds that dismissal without prejudice is the appropriate remedy, due to the Superior Court's opinion issued in the RALJ appeal.

WHEREFORE: In accordance with the King County Superior Court's opinion on appeal, the protection order is VACATED and the case is DISMISSED without prejudice. The Respondent's additional motions are DENIED.

Dated: <u>December 12, 2022</u>

_____
Judge E. Rania Rampersad

# MOTION FOR JUDICIAL NOTICE EXHIBIT

## SECTION:

Four Filings After Referral Prior to Dismissal

Electronically Filed
12/2/2022 8:30:00 AM
22CIV01704KCX
King County District Court

**Ashley M. Gjovik (pro se)**

# IN THE KING COUNTY DISTRICT COURT
# IN AND FOR THE STATE OF WASHINGTON

## East Division, Redmond Courthouse

CHER SCARLETT, et al

Petitioner/Appellee,


v.


ASHLEY GJOVIK

Respondent/Appellant.

**KC DC No.:** 22CIV01704KCX
**Court of Limited Jurisdiction**
**Honorable Judge Lisa O'Toole**

**APPEALS & CHALLENGES:**
**KC SUPERIOR COURT NO:** 22-2-03849 SEA
**US DC AT SEATTLE NO:** 2:22-CV-00807-RAJ-BAT

**Re: Reverse & Remand of
Anti-Harassment Order**

**Notice of Intention to File Motions upon Remand:**

**Motion for Dismissal with Prejudice**
- RCW 4.105.* - Unif. Public Expression Prot. Act
- RCW 4.24.510 – Comm to Gov Agency
- CRLJ12(h)(3) - Lack of Subject Matter Jurisdiction
- CRLJ13(a) - Inability to Join Indispensable Party
- CRLJ12(h)(2) - Failure to State a Claim
- RCW 49.32.050 – Jurisdiction of Labor Disputes

**Motions for Sanctions**
- Rule 11 Sanctions – Abusive Litigation
- RCW 4.84.185 – Fines for Frivolous Claims

**Motion for Relief from Judgement/Proceeding**
- CRLJ60(b)(1)&(4) – Surprise, Irregularity, Fraud, Misrepresentation, Misconduct
- CRLJ60(b)(5) – Judgement is Void
- CRLJ60(b)(11) – Equity (Unclean Hands)

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

# Notice of Intent Upon Remand

## 1.      Summary & Case History

The King County Superior Court reversed the prior judgement against Gjovik on September 26 2022 & send a mandate to the Court of Limited Jurisdiction for reverse and remand on November 17 2022.

This unfortunate matter was injected into the King County court system by Petitioner, Cher Scarlett, by her own admittance & under oath, <u>because of</u> an US NLRB charge Ashley Gjovik filed against Apple in January 2021 (2/1 Transcript), and further, Scarlett claimed Gjovik's supposed "harassment" of Scarlett started in early December 2021 when Gjovik had complained that "[Scarlett] was bullying [Gjovik]." (3/1 Transcript, pg 11). The crux of this lawsuit is Scarlett complaining that Gjovik's complaints of Scarlett's harassment & defamation of Gjovik, are somehow harassment of Scarlett.

Gjovik began reporting Apple Inc to the federal government in April of 2021 and filed her first formal charges against Apple in August of 2021. Scarlett began attacking Gjovik in June of 2021, escalating to public attacks in August of 2021, and then filed her own charges against Apple in September of 2021 which she later withdrew and accepted a settlement & payment from Apple around November 2021. Gjovik began to block Scarlett from communicating with her in August 2021 and completely blocked Scarlett in September 2021. Gjovik filed additional California and federal charges against Apple in January 2022 alleging witness intimidation and retaliation by a number of past and current Apple employees and managers, including but not at all limited to, Scarlett. Scarlett continued to attack Gjovik and Gjovik's cases against Apple for over a year, including this meritless and retaliatory litigation at hand.[1]

Much new evidence has come to light following the initial decision against Gjovik in this court, evidence which appears to begin to explain Scarlett's otherwise inexplicable and obsessive conduct towards Gjovik and further supports Gjovik's accusations of Apple Inc's culpability and liability for Scarlett's actions, including this lawsuit. Perhaps most important was the discovery in mid-March 2022, disclosed by Apple Inc & after Gjovik's gag-order, that Scarlett had filed a

---

[1] See docket & court filings for this matter, for the Superior Court appeal, and in Gjovik's attempted Constitutional Challenge in US District court – including Scarlett's own statements, briefs, & evidence

## King County District Court, Court of Limited Jurisdiction
### RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

"Business Conduct" complaint against Gjovik to Apple on September 15 2021, while Scarlett still worked for Apple Global Security & Legal, alleging Gjovik had violated some Apple policy & included personal communications between Scarlett and Gjovik resulting from Scarlett requesting private information from Gjovik about Gjovik's dispute with Apple. (See Superior Court Exhibits). None of the information provided by Scarlett was actually material to Gjovik's cases, as admitted by Scarlett. However, under information & belief, Scarlett submitted this complaint & provided this information to Apple as part of her settlement agreement. At the same time Scarlett had been speaking to the press & making public statements requesting additional whistleblowers contact her and provide her with private information about their own disputes with Apple.

Regardless of Scarlett's intentions with the second point, it is clear she became obsessed with covering up what she did to Gjovik as it would cause much controversy with her now being held out as a "labor leader" among Apple employees.[2] As such, Scarlett set out to discredit both Gjovik and Gjovik's charges against Apple, no doubt in hope that Gjovik's case would never be decided on the merits where it may come to light what Scarlett did in September of 2021. This lawsuit is clearly part of Scarlett's cover-up and is an extension of her self-admitted long-running history of fraud. (see Scarlett's own court filings noting check fraud, student loan fraud, business fraud, etc). Scarlett made much of Gjovik's comments about Scarlett's husbands criminal record, but failed to disclose the crux of Gjovik's concerns about Scarlett's husband –his criminal record included making false statements & obstruction of law enforcement, & this was directly relevant to Gjovik's allegations of fraud by Scarlett.

Under information & belief, Apple orchestrated the situation to manipulate Scarlett into attacking Gjovik in ways that benefited Apple but which Scarlett may have believed were for her own self-preservation due to Apple's coercion. As such, and discussed later, Apple is an indispensable party in this matter – and the primary and exclusive jurisdiction for this matter is the California and federal agencies where this matter was under review long before Scarlett injected this dispute into the Washington court system – wasting much time & resources within the Washington court system, as well as implicating the state of Washington in Apple & Scarlett's witness intimidation efforts against Gjovik.

---

[2] The Washington Post, *"She pulled herself from addiction by learning to code. Now she's leading a worker uprising at Apple."* Oct 14 2021

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

Without this information, and after hours of manipulative, fraudulent, and highly inflammatory testimony by Scarlett - this Court of Limited Jurisdiction decided against Ashley Gjovik on March 1 2022. Gjovik appealed the decision to the King County Superior Court, raising 16 issues and errors from this trial court. Gjovik also brought the matter to a U.S. District Court arguing preemption & challenging the state of Washington's anti-harassment statutes as violating the U.S. Constitution facially & applied, however Gjovik's case was dismissed under the *Rooker-Feldman Doctrine* as a state appeal was underway. [3]

On September 26 2022, after reviewing the briefs and trial record and only deciding on a subset of the raised issues, a Superior Court judge issued an order reversing the decision of the Court of Limited Jurisdiction and finding Gjovik's conduct to be "protected per case law and constitutional protections." (KCSC Order pg 15). [4]  Even without reviewing Gjovik's allegations or evidence of Scarlett's fraud, unclean hands, or the court's lack of subject matter jurisdiction - Superior Court Judge Robertson found the Court of Limited Jurisdiction's ruling still "amounted to an unconstitutional prior restraint on [Gjovik]" and the decision was "entered in error." (Id). [5] The Superior Court found no evidence to justify a five-year order, nor any evidence of directed conduct to justify any order restricting distance and other prohibitions of direct contact. (KCSC Order pg 9). [6] The Superior Court found "no evidence of actual malice" by Gjovik and instead said the evidence about Gjovik's "expression of opinion… was not proved to be motivated by malice, but rather by activism." (Id). [7]

Scarlett did not file Motion for Reconsideration or Notice of Appeal. [8] The Superior Court transmitted their mandate to the Court of Limited Jurisdiction on Nov 17 2022. [9]

## 2. Remand Leading to Additional Proceedings

---

[3] Gjovik v state of Washington, etc all, 2:22-CV-00807-RAJ-BAT, US DISTRICT COURT IN THE WESTERN DISTRICT OF WASHINGTON
[4] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[5] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[6] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022, *"Despite the lack of "direct" communication to Petitioner, as conceded under oath, the court imposed distance restrictions, prohibitions against surveillance, and prohibitions against direct/third person communications to Petitioner. The court made no specific findings to support the order (five years)."* Pg9
[7] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[8] LRALJ 9.2 Entry of Decision; LCR 59
[9] LRALJ 12.1 Mandate; *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Mandate of Superior Court on RALJ Appeal

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

The Superior Court's Mandate is unclear if it calls for a new trial in the Court of Limited Jurisdiction. RALJ 9.1 states that the Superior Court may "reverse, affirm, or modify" OR "remand the case." The use of "or" instead of "and" implies a reverse of the decision does not call for further proceedings.[10] However, the Mandate itself states the lower court decision is reversed AND "this Matter is remanded to the Court of Limited Jurisdiction."[11]

Gjovik files this Notice in anticipation of the potential for further proceedings. However, if the Court of Limited Jurisdiction agrees with the Superior Court decision, & simply reverses the prior decisions, this Notice will be moot.

### 3. Notice of Intent to Re-Up Prior Filed Motions to Dismiss with Prejudice

If the remand of the case by the Superior Court leads to additional proceedings in the Court of Limited Jurisdiction, Gjovik submits notice of her intent to preserve a number of previously filed motions & to file additional motions on the matter. Gjovik intends to preserve her previously filed motions, which were never ruled on by the Court of Limited Jurisdiction, including under RCW 4.105.010-903[12] & RCW 4.24.510.[13] Gjovik also plans to request payment from Scarlett for Gjovik's legal costs, attorney's fees, & other expenses from dealing with this ordeal following the meritless & retaliatory petition & smear campaign by Scarlett. (RCW 4.24.510[14]; RCW 4.105.090[15]).

Gjovik plans to modify her motion for RCW 4.24.510, a witness protection statute, and request the full statutory fine of $10,000.00 from Scarlett instead of Gjovik's previous good faith waiver of the fine last February[16] as Scarlett has continued to harass, defame, and intimidate

---

[10] RALJ 9.1(e)

[11] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Mandate of Superior Court on RALJ Appeal

[12] RCW 4.105 UNIFORM PUBLIC EXPRESSION PROTECTION ACT

[13] RCW 4.24.510 Communication to government agency or self-regulatory organization—Immunity from civil liability. *"A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization."*

[14] RCW 4.24.510 *"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense"*

[15] RCW 4.105.090 Costs, attorneys' fees, and expenses. *"the court shall award court costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion"*

[16] RCW 4.24.510: *"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages*

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

Gjovik following the order against Gjovik, including reporting one of Gjovik's federal legal filings to a webservice as "child porn."

Notes on the intent of RCW 4.24.510 explains: *"SLAPP suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution."* The Superior Court found that not only were Scarlett's allegations not supported by evidence to prove unlawful conduct, but the outcome of Scarlett's petition, (which Gjovik additionally argues was obtained by fraud, surprise, & other misconduct by Scarlett) did in fact chill Gjovik's *"exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution"*.

Gjovik's initial RCW 4.105 Anti-SLAPP motion rightful explained (now affirmed in part by the Superior Court judge):

> "Scarlett failed to establish a prima facie case as to each essential element of harassment, thus … the case should be dismissed with prejudice & noting … that Gjovik prevailed under the motion. Scarlett's request for a harassment order against Gjovik is not grounded in fact or law. The request also serves an improper purpose as it attempts to further intimidate and retaliate against a federal and California state witness, victim, and informant. Scarlett's request is an extension of her concerted effort to coerce Gjovik to withdraw, alter, and omit statements to government bodies, statements on issues under consideration by government bodies, and to chill, if not restrict, Gjovik's First Amendment free speech on matters of public concern…. UPEPA (RCW 4.105.010) applies to no-contact orders (9) if the requested order against Respondent arises from any act of Respondent, related to the gathering, receiving, posting, or processing of information for communication to the public, for the creation, dissemination, exhibition, or promotion of a literary, political, or journalistic work regardless of the means of distribution, no matter the method or extent of distribution."
> (*Feb 14 2022 Motion for Continuance & Notice of Intent to File Motion for Anti-SLAPP*, pg 2-3).

Gjovik's initial 4.24.510 motion also rightfully captured Scarlett's intent with this litigation:

> "Scarlett threatened, harassed, and coerced Gjovik to withdraw allegations about her from Gjovik's government charges to at least the U.S. NLRB. Scarlett is using this this petition to further intimidate Gjovik and is using a civil action to deter Gjovik who simply wishes to report information to federal agencies. RCW 4.24.510 was enacted to protect whistleblowers exactly like Gjovik from actors exactly like Scarlett."
> (*Feb 14 2022, Motion to Dismiss due to Public Policy*, pg 3)

---

*of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith."*

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

Indeed, Gjovik objected in this court room on March 1 2022 that Scarlett was "trying to compel [Gjovik] to testify on [Gjovik's] federal charges" which named Scarlett as an agent of Apple in Apple's retaliation against Gjovik for Gjovik's protected activity.

During trial, Gjovik introduced numerous witness statements and evidence of posts and communications from third parties concurring Gjovik's view on this matter & that Scarlett was indeed the one attacking Gjovik, not the other way around. (2/14-3/1/2022 Witness Statements; Gjovik Evidence; DARVO addendum). Scarlett's response was generally the same to all parties – Scarlett would then claim her conduct towards Gjovik was justified because, she claimed, Gjovik's lawsuits & charges against Apple were "meritless," "perjury," and "lies." Scarlett has not been able to find a single 3rd party willing to make a statement under oath in support of Scarlett's allegations against Gjovik. In fact, before Gjovik was served for this matter, one of Scarlett's own named witnesses suggested Gjovik request a restraining order against Scarlett, not the other way around.

## 4. Intention to File New Motions to Dismiss & Vacate

A significant amount of additional evidence has come to light following the March 1 2022 decision. Gjovik intends to file a motion for the court to relieve Gjovik from a final judgment, order, and/or proceeding: due to mistake, surprise, & irregularity in Scarlett obtaining the judgement/order (CRLJ60-b-1); due to fraud, fraud on the court, and other misconduct by Scarlett (CRLJ60-b-4); the judgement as void due to lack of subject matter jurisdiction, inability to join indispensable party (Apple Inc), and due to decision by Superior Court reversing prior judgement (CRLJ60-b-5); & other reasons justifying relief from the judgement/proceedings (CRLJ60-b-11). [17] This includes misconduct by Gjovik's attorney related to the March 1 2022 hearing, including but not limited to, Gjovik's attorney failing to even notify Gjovik that Scarlett offered to settle the matter outside court before the hearing. Gjovik's attorney, Mr. Blair, received a warning from the Washington Bar Association for that misconduct.[18]

Gjovik also plans to motion for dismissal due to Scarlett's failure to state a claim upon which relief can be granted & failure to join a party indispensable to the matter at hand (e.g.

---

[17] CRLJ 60 RELIEF FROM JUDGMENT OR ORDER
[18] Washington State Bar Association, ODC File No. 22-00809

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

Apple Inc). CRLJ12(h)(2). Scarlett's own filings and testimony, and the District & Superior court records revealed all of the supposedly "private" information Scarlett protested was actually public information and/or shared broadly by Scarlett herself including names, criminal histories, and quotes made by Scarlett to large publishers and the press. In fact, in Superior Court, Scarlett would also admit her allegations of extortion and blackmail by Gjovik were based on a conversation Scarlett was not part of, nor had she viewed, and upon viewing she realized "that it was not Ms. Gjovik's idea to extort." (Scarlett's Brief)[19] Further, Scarlett's allegations about Gjovik related to Wikipedia, were not only baseless but actually more fraud, as it was Scarlett who had made harassing and disparaging edits to Gjovik's biography article for nearly a year before finally getting caught & banned by Wikipedia on November 21 2022. [20] [21]

Gjovik also intends to motion for dismissal with prejudice due to lack of subject matter jurisdiction, something she objected to frequently in all hearings she was present at & has her arguments have been further strengthened by evidence acquired after the March 1 2022 hearing. CRLJ12(h)(3). There is clearly federal preemption of this matter under 18 U.S. Code § 1514 & the All Writs Act (as well as RCW 5.105.010(2)(b-c) & RCW 4.24.500).

There is additionally no subject matter for this court under RCW 49.32.050 & the Garmon & Machinist doctrines of NLRA preemption. (see Superior Court Appellant Brief). These arguments are further strengthened by the discovery that Apple's defense lawyers (the firm MWE) requested copies of the recordings from the hearings in this matter, no doubt to make their own transcripts & use them in Apple's defense of Gjovik's allegations of harassment by Scarlett on behalf of Apple. If there was no overlap of Gjovik's pending NLRB (and other agency) charges which named Scarlett, Apple's lawyers would have no interest in going to the

---

[19] Scarlett v Gjovik, KCSC, No 22-2-03849-7 SEA, Brief of the Appellee (Scarlett), September 26 2022
[20] Wikipedia editors/administrators: "*We'll start with the obvious connection here: CodeHitchhiker is Cher Scarlett (voluntarily acknowledged, verified by GorillaWarfare)… The fact is clear here that they are the same person…. I'd call this  Likely from a technical perspective….I am blocking CodeHitchhiker indefinitely as a suspected sockpuppet. Due to the BLP implications here, I will blank and categorize her userpage in lieu of tagging. @CodeHitchhiker: This is a shame.*"
https://en.wikipedia.org/w/index.php?title=Wikipedia:Sockpuppet_investigations/SquareInARoundHole&oldid=112 3071985
[21] Wikipedia editors/administrators: "It seems Bobrossghost was also used for months for socking at Ashley Gjøvik. We can say that Gjøvik was herself not wrong by accusing SquareInARoundHole of harassment.[17] This whole chapter looks like a clear case of WP:NOTHERE."
https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/SquareInARoundHole/Archive

**King County District Court, Court of Limited Jurisdiction**
RE: REVERSE & REMAND OF ANTI-HARASSMENT ORDER AGAINST ASHLEY GJOVIK

trouble of requesting, listening to, and transcribing hours of hearings on this matter. (see CLJ Docket "Request for Copy" on 4/6/22 & 3/4/22).

## 7. Conclusion

Finally, Gjovik also requests for Judge O'Toole's consideration of referring this matter to the local District Attorney's office for review of possible witness intimidation and perjury charges against Scarlett under RCW 9A.72,[22] RCW 9.62.010,[23] or similar due to Scarlett's egregious misconduct in this matter and her history of self-admitted fraud and financial crimes again governments and institutions. Perhaps most disturbing in this matter was Scarlett's ex parte testimony on February 1 2022 where she claimed the US NLRB suggested she seek legal or law enforcement intervention against Gjovik – an allegation that the US NLRB Asst. General Counsel denied in writing, saying they never told Scarlett anything about the merits of my cases or gave her any advice on taking any sort of legal action against me. (see Superior Court Exhibits).

In conclusion, I submit this notice of intention to file additional motions if further proceedings are called for. If Scarlett would prefer to request dismissal of her petition & this case, Gjovik would agree to have the matter dismissed.[24]

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Respectfully submitted,

**Ashley M. Gjovik (pro se)**
Dated: December 1 2022

---

[22] RCW 9A.72 PERJURY AND INTERFERENCE WITH OFFICIAL PROCEEDINGS.
[23] RCW 9.62.010 Malicious prosecution.
[24] CRLJ 41 DISMISSAL OF ACTIONS: *(1) Mandatory. Any action shall be dismissed by the court: (i) By stipulation. When all parties who have appeared so stipulate in writing; or (ii) By plaintiff before resting. Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of plaintiff's opening case. (2) Permissive. After plaintiff rests after plaintiff's opening case, plaintiff may move for a voluntary dismissal without prejudice upon good cause shown and upon such terms and conditions as the court deems proper.*
https://www.courts.wa.gov/forms/?fa=forms.contribute&formID=60
https://www.courts.wa.gov/forms/documents/FL%20All%20Family%20163%20Motion%20for%20Dismissal.doc

Electronically Filed
Honorable Judge Lisa O'Toole
12/27/2022 8:30:00 AM
East Division, Redmond Courthouse
22CIV01704KCX
King County District Court

1

2

3

4

5

6

7

8

**IN THE KING COUNTY DISTRICT COURT**
**IN AND FOR THE STATE OF WASHINGTON**

9

| Cher Swan Scarlett | No.   22CIV01704KCX |
|---|---|
| Petitioner, | |
| vs. | RE: Notice of Intention to File Motions |
| Ashley M. Gjovik | upon Remand |
| Respondent. | |

10

11

12

13

14

    COMES NOW, Petitioner (Cher Scarlett) and submits this response to Ms. Gjovik's

15

16

Notice of intention to file motions:

17

18

    **(i) Relief Requested.** The court should STRIKE this filing and Ms. Gjovik's "Notice of

19

Intention" from the court's record as they serve no legal purpose other than to further malign my

20

character.

21

22

    **(ii) Statement of Facts.** Ms. Gjovik was factually found to have engaged in Unlawful

23

Harassment by the Honorable Lisa O'Toole on 3/1/2022. There was a full hearing in which Ms.

24

Gjovik received due process. Ms. Gjovik's attorney, Mr. Blair was present. I appeared *pro se*.

25

26

    Ms. Gjovik's behavior continued, creatively, after the order was granted. She fabricated

27

information about Apple, Inc and then led people to the order between her and I. The tabloid

28

ORIGINAL

New York Post contacted me asking for "my side of the story" on March 15th, 2022. Apple, Inc, who I am in ongoing litigation against, then requested the records of the proceeding after the publication of the story (despite my protest,) likely to use it against me in court. Ms. Gjovik then sued the state of Washington as an opportunity to publish legally-protected libel about my husband and I.

Ms. Gjovik's attorney withdrew from representing Ms. Gjovik on 5/23/2022. Ms. Gjovik continued with her appeal *pro se*. I also proceeded *pro se*. However, Ms. Gjovik still held an unfair advantage as a Juris Doctor, which was not considered by the appellate court.

On 9/26/2022, the Honorable Andrea Robertson reversed and remanded back to the court. The appellate court determined that I met the legal standard to be considered a Limited-Purpose Public Figure at the time of the trial. The appellate court also determined I did not present a compelling case that Ms. Gjovik's behavior was intentionally malicious. The court opined that the content-based restriction was not "narrowly tailored" and thus infringed on Ms. Gjovik's first amendment rights. The court determined the content Ms. Gjovik posted was protected by the first amendment because they posts of public information, republishing of my own words, and Ms. Gjovik's opinions.

The appellate court erred in that judgement. As can be found in the court record, Ms. Gjovik published on Twitter, Scribd, and her website private communications between myself and her or others. The law does not differentiate between oral and written communications. Washington requires the consent of all parties prior to divulging private communications. As such, Ms. Gjovik's decision to publish these private communications without my consent was not protected by the first amendment, but instead a gross misdemeanor under Wash. Rev. Code

Ann. § 9.73.030. The court erred in not considering I lacked the background in law to argue the legal basis for the lower court's order.

Ms. Gjovik's publications, as noted in the court record, also included republishing of others' posts. These postings were defamatory and clearly malicious. The court did err in not considering Ms. Gjovik's republication of libel written by others. (*Theiss v. Scherer, 396 F. 2d 646 - Court of Appeals, 6th Circuit 1968*).

Ms. Gjovik's publications included some opinions protected by the first amendment. Other posts which the appellate court deemed opinions were not. For example, Ms. Gjovik's "opinions" that I was going to testify against her on behalf of Apple, Inc, that I have a criminal record, that I was under federal investigation by numerous agencies, and that I had her blacklisted from the press. Because there was a factual basis for the opinions that can be proven false (*Gertz v. Robert Welch, Inc., 418 US 323 - Supreme Court 1974*) and were accompanied by derogatory implications (*Dixson v. Newsweek, Inc., 562 F. 2d 626 - Court of Appeals, 10th Circuit 1977*) these are not protected by the first amendment and are factually found to be libel. Re-publishing to Scribd and her website are not protected (*Yeager v. Bowlin, 693 F. 3d 1076 - Court of Appeals, 9th Circuit 2012*) and republications containing defamatory content on the same platform that it was posted originally (*PENROSE HILL, LIMITED v. Mabray, Dist. Court, ND California 2020*) constitute libel and are exempt from first amendment protections.

Ms. Gjovik's postings were not about activism. Her purpose in publishing these things was meant to paint me in a false light. Some of Ms. Gjovik's publications, as is in the court record, misappropriated my name by publishing others' publications and claiming they were written by me. Ms. Gjovik did this with the purpose of maligning my character to pursue a

ORIGINAL

personal vendetta which is not protected. (*Felsher v. Univ. of Evansville, 755 N.E.2d 589, 600 (Ind. 2001)*), (*Time, Inc. v. Hill, 385 U.S. 374 (1967)*), and (*Cantrell v. Forest City Publishing Co., 419 U.S. 245 (1974)*).

Ms. Gjovik's posts also contained defamation that could not be reasonably considered by the court to have been for any other purpose but malicious. For example, in the court record I asked about a number of posts in which Ms. Gjovik made statements that she knew to be fabricated and damaging to encourage others to harass me. An example was a post in which Ms. Gjovik wrote that I had her "SWATed". The court is quite clear on what constitutes actual malice: "with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co. v. Sullivan, 376 U.S. 254 (1964)*). Ms. Gjovik has never been SWATed, so it's unreasonable to opine that post was about "activism". The purpose was to make people believe I had put Ms. Gjovik's life in danger by making a hoax call to emergency services or law enforcement to have armed authorities dispatched to her home which never happened. The court did err in opining that these postings were protected by the first amendment.

Ms. Gjovik's posts also contained posts from my mother's Facebook account which revealed her name. My husband and my mother are not public figures and their names were only found by Ms. Gjovik's research of me. Ms. Gjovik argued that posting my mother's name—which led to people harassing her—was an accident and that she only re-published others' posting my husband's name. The law does not exempt recklessness in cases of doxxing, especially when the purpose of the post was malicious to begin with.

I did not exercise my right to appeal the appellate court's determination. Ms. Gjovik's attorney, Mr. Blair, did not inform his client of an email I sent him when I received his notice of

ORIGINAL

appearance in which I said that I would be willing to drop the complaint if she stopped harassing me and my family. I agree it was unlawful for both of us not to have the opportunity to settle the matter out of court and in not doing so, Mr. Blair caused Ms. Gjovik and I damage.

As Ms. Gjovik is aware, my only wish is for her to leave me and my family alone, including to cease publishing information about us and to stop defaming me. Ms. Gjovik has stopped using my name, but has continued this behavior, generally, like the lower court expected she would without an order. I have been harassed by Ms. Gjovik for over a year and simply cannot continue fighting with her. I have a family and a job which cannot continue to be damaged by the emotional damage Ms. Gjovik has caused me.

This does not mean I will not exercise my right to file for a new order with a better understanding of the law, and reporting such conduct to the Bar Association.

   **(iii) Response**. In her filing, Ms. Gjovik shows no remorse in continuing to introduce libelous content about me into the public record. Ms. Gjovik has an absolute wanton disregard for the truth. Some of her statements constitute perjury.

   1) On page 2, Ms. Gjovik claims I testified that my purpose in seeking this anti-harassment order because she filed a US NLRB charge against Apple, Inc. Ms. Gjovik's chief complaint against her attorney, Mr. Blair, did not notify Ms. Gjovik of my offer to settle the matter out of court, for which he received a warning from the Washington Bar Association. Ms. Gjovik admits then, she has factual knowledge that the basis of seeking the order was her publications about me and my family. Ms. Gjovik also refers to a conversation with a third party and an email from me to her which request Ms. Gjovik stop posting about my family and making defamatory statements about me.

ORIGINAL

2) On page 3, Ms. Gjovik perjures herself again by claiming I "self-admitted" to student loan fraud and business fraud. Ms. Gjovik is referring to my disclosure that I enrolled in college to get student loans to help care my infant as a single mother in poverty. These loans were obtained under my own identity, I attended class at the institutions the loans were drawn on, and the loans are in good-standing. I was approved for $20,000 of student loan debt relief by the Department of Education in November. The "business fraud" Ms. Gjovik is referring to is my own disclosure that I had to pretend I was a designer or project manager so that I didn't experience homelessness with my infant due to sexism in the technology industry. It's ironic that Ms. Gjovik wishes to be a human rights attorney and claims her harassment was in the name of activism when she uses my being discriminated as a woman software engineer and living in poverty. The "check fraud" Ms. Gjovik is referring to is me overdrawing my own bank accounts. These accounts have all since paid off. The banks never took any action against me and I've never been charged with any crimes. My husband's criminal record is not material and decades old.

3) On page 3, Ms. Gjovik alleges Apple, Inc manipulated me into attacking Ms. Gjovik or out of self-preservation due to Apple, Inc's coercion. Apple, Inc has not had any communication with me since I received a letter from them for breach of contract for violating the NDA portion of my severance agreement. While I did report Ms. Gjovik's conduct to the business after she was terminated for self-preservation, it was due to Ms. Gjovik's argument that she had not engaged in the conduct and the knowledge that this conversation would come out during her legal processes. It is a violation of company policy not to report Business Conduct violations and I did not want to get fired. Ms. Gjovik and I agree that it is immaterial as it relates to her. In fact, Ms. Gjovik has disclosed she knows I was upset that it was included in Apple's defense.

ORIGINAL

4) On page 6, Ms. Gjovik brings up first a claim that I harassed, defamed, and intimidated her post-order, using a claim that I reported her to her web host for "child porn" to bolster this statement. Ms. Gjovik provides no evidence that I have harassed or defamed her. The only example she gives is to perjure herself. Ms. Gjovik is aware that the type of complaint I selected in the web form was not "child porn", but rather the form had a technical issue which defaulted to the first choice in alphabetical order. She received a description and subject line very clearly stated I was reporting that the publication was in violation of the anti-harassment order. Her attorney, Mr. Blair and I discussed this matter and Ms. Gjovik has these records.

5) On page 6, Ms. Gjovik presents the appellate court's determination in a way that is malicious and false. Ms. Gjovik claims her Anti-SLAPP motion was affirmed in part by the appellate court. The court made no affirmations of any of Ms. Gjovik's filings. The appellate court judge "elected to simply not review or consider those items which were inappropriately provided." Instead, Ms. Gjovik quotes her own dismissed filing which is not based in fact as though it was affirmed by the appellate court when it was not.

6) On page 7, Scarlett references witness testimony she provided as proof she wasn't harassing me. These statements provided no defense for Ms. Gjovik's behavior and contained hearsay and perjured statements. These were dismissed by both the lower court and the appellate court. Ms. Gjovik's statement that I couldn't find any witnesses is nonsense. Ms. Gjovik is aware that there are witnesses who would speak to her misconduct. Personally, I opt not to invite Ms. Gjovik's harassment onto anyone else than those she has already maligned. Ms. Gjovik against quotes me as saying things I did not say.

7) On page 8, Ms. Gjovik brings up my dismissal of my allegation of extortion by Ms. Gjovik against me as a negative. Ms. Gjovik tweeted about it and made demands of a material,

ORIGINAL

financial benefit to her in exchange for ceasing publishing defamatory and disparaging content about me and my family. No more clear example of maligning of my character for her vendetta exists than this. As a Juris Doctor, Ms. Gjovik is certainly aware that "not my idea" is not a valid defense for extortion.

8) On page 8, Ms. Gjovik claims that I made harassing and disparaging edits regarding Ms. Gjovik on Wikipedia, citing Wikipedians who were erring on the side of caution due to some overlap that meant that we could *possibly* be the same person. The admin in this case expressed doubt publicly and privately and the matter is being reviewed by the arbitration committee. There are facts from prior cases which exclude me from such findings and another anomalies that can only be explained by the existence of another party unconnected to me. Additionally, Ms. Gjovik's allegations that harassing or disparaging edits were made to her Wikipedia article do not seem to be rooted in fact. Ms. Gjovik presents no evidence of actual harassment or disparaging edits. If Ms. Gjovik were to bring a case against the party or parties that have edited her page, it would be dismissed. Ms. Gjovik also knows that these cases are arbitrary and conclusions can be wrong or misleading. Further, Ms. Gjovik knew of my being blocked before I was notified—

9) On page 9, Ms. Gjovik misrepresents my conversations with the NLRB. The chief security officer advised me that the NLRB did not have jurisdiction and instead advised me that harassment would be under the jurisdiction of local law enforcement and that extortion would be under the jurisdiction of the FBI. Local law enforcement advised me to seek an anti-harassment order. As Ms. Gjovik is aware, I have emails and a voicemail from the agency which corroborate this. In my conversations with the NLRB, it was determined that providing their statements in writing would constitute a conflict of interest. I went forward with the document they provided me instead, the FOIA guidelines which I used in court to successfully argue my point. I asked her to

ORIGINAL

remove or redact personal and/or private information about me and family from her publicized memo. I asked her to remove entirely tweets about me that could not reasonably be connected to her. Ms. Gjovik has no reason to publicize such material and the NLRB would redact it if available via FOIA. Ms. Gjovik has no regard for the my rights or that of my family in order to pursue her vendetta.

**(iv) Conclusion**. This matter could have been settled out of court had her attorney shared my communication. My only wish is for Ms. Gjovik to leave me and my family alone. I hope that in dropping this matter Ms. Gjovik can exercise any modicum of common decency or restraint and move on. Ms. Gjovik's allegations of fraud and other misconduct are without any factual basis. The appellate court did err in its determination, but I have elected not to take further action at this time. I do not wish to harm Ms. Gjovik's law career. I hope this settles the matter and that Ms. Gjovik's conduct has reached its end.

I declare under penalty of perjury under the laws of the state of Washington that the facts I have provided on this form (and any attachments) are true.

Signed at (city and state):

Redmond, WA   date: Dec 23, 2022

   s/Cher Scarlett

ORIGINAL

Electronically Filed
1/17/2023 8:30:00 AM
22CIV01704KCX
King County District Court

Ashley M. Gjovik (pro se)

Judge E. Rania Rampersad

# IN THE KING COUNTY DISTRICT COURT
# IN AND FOR THE STATE OF WASHINGTON
## East Division, Redmond Courthouse

**WA District Court No.:** 22CIV01704KCX

**Honorable Judge E. Rania Rampersad**

**CHER SCARLETT,** et al

Petitioner/Appellee,

v.

**ASHLEY GJOVIK**

Respondent/Appellant.

**REPLY TO PETITIONER'S
MOTION TO STRIKE**

**& REQUEST FOR EQUITABLE
INTERVENTION**

**WITH EMBEDDED EXHIBITS**

**JANUARY 16 2023**

ASSOCIATED CASES

WA COURT OF LIMITED JURISDICTION
Honorable Judge Lisa O'Toole

WA SUPERIOR COURT NO: 22-2-03849 SEA
Honorable Judge Andrea Robertson

US DC NO: 2:22-CV-00807-RAJ-BAT
Honorable Judge Richard A. Jones

## King County District Court: Scarlett v Gjovik

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Reply to Motion to Strike

This case was introduced by petition of Cher Scarlett to the King County Court of Limited Jurisdiction requesting a TRO & anti-harassment restraining order against Gjovik on January 31 2022.  In her petition and this case, Scarlett made allegations of misconduct by Gjovik, supposedly starting in December 2021 through February 2022 (after the petition was filed). She infers in her Motion to Strike that Gjovik is somehow still harassing her, despite Gjovik's compliance with the unlawful gag-order for over six months & Scarlett acknowledging even after the order was lifted, Gjovik still refuses to say Scarlett's name publicly (which is out of fear and due to acute PTSD).[1] In the motion, last month Scarlett wrote, "*I have been harassed by Ms. Gjovik for over a year and simply cannot continue fighting with her*" – despite Gjovik not initiating contact with Scarlett for almost **sixteen months** now – and it is Scarlett who instead continues to initiate contact with Gjovik – with Gjovik's friends about Gjovik – and with Gjovik's law school, the Bar association, in court, and with law enforcement about Gjovik.

Scarlett's allegations against Gjovik included an NLRB charge Gjovik filed against Apple Inc, Apple Inc's supposed justification for terminating Gjovik's employment, Twitter posts Gjovik made complaining of harassment and intimidation by Cher Scarlett in retaliation for reporting Apple Inc to the government, Twitter posts Gjovik made complaining of Scarlett's habit of making false statements, complaints of Scarlett harassing Gjovik's friends while claiming she was a "defense witness" for Apple despite nothing being at trial yet, and legal filings Gjovik made to the NLRB, US DOL, US DOL, and California government about the dispute with Apple Inc (which Gjovik also published & discussed publicly). Gjovik complained immediately that the lawsuit, this matter, was further witness intimidation & retaliation, & has continued to complain as such for almost a year now.

On September 26 2022, the Honorable Judge Andrea Roberson found there was no basis for a finding of unlawful harassment by Gjovik and ordered the decision against Gjovik to be reversed & remanded. On December 2 2022, Gjovik submitted a notice of intent to file/re-file motions if the case was to be remanded for further hearings in District Court.

On December 12 2022, the honorable Judge E. Rania Rampersad published a Judicial Review order on this matter, agreeing with Judge Roberson & deciding the Order against Gjovik

---

[1] "*Ms. Gjovik has stopped using my name,*" Scarlett's Motion to Strike, page 5

## King County District Court: Scarlett v Gjovik

is to be vacated and Cher Scarlett's case against Ashely Gjovik was dismissed. Judge Rampersad denied Gjovik's intent to file/re-file motions as the case was dismissed.

On December 27 2022, Cher Scarlett stated her intention to not appeal the matter, but instead filed a motion to strike Gjovik's entire December 2nd filing, & threatened to start new litigation on the same facts, & to report Gjovik to the Bar Association.

### Scarlett's Motion to Strike

A Motion to Strike is to be filed within 20 days following service of a pleading and may request to strike insufficient defenses, or matters that are redundant, immaterial, impertinent, or scandalous.[2] Scarlett files a Motion to Strike an entire document which the court already reviewed and ruled on. Scarlett also files the Motion past the 20-day deadline for a legitimate motion to strike, which this is not.

Scarlett attempted something similar in Superior Court, at one point motioning to strike Gjovik's entire appellant brief, brief exhibits, and the exhibit of the legal filing that Scarlett had alleged contained the supposed unlawful harassment but was never presented to a court as evidence.[3] Through this ordeal Scarlett has attempted to silence Gjovik, Scarlett has avoided presenting evidence of her claims (because there usually is none), and to attempt to strike or somehow seal Gjovik's defenses against Scarlett, including Gjovik's evidence. Scarlett wants the court and others to believe her at her word, as she makes horrific allegations against Gjovik without evidence, & while attempting to prevent Gjovik from defending herself or gather/preserve evidence of the harassment.

Scarlett also used this frivolous Motion to Strike to submit a nine-page document making new, additional allegations against Gjovik – and more threats against Gjovik, at least one of which Scarlett then proceeded to fulfill. Indeed, Gjovik was contacted by the Bar Association on December 23 2022 (the day Scarlett signed the Motion to Strike), with the Bar suddenly & formally asking Gjovik for information about any new litigation or complaints made about Gjovik. Under information and belief, Scarlett reported Gjovik to the Bar Association on December 23 2022 – likely alleging much of what she included in the Motion to Strike.

---

[2] Washington Courts, Superior Court Rules, https://www.courts.wa.gov/court_rules/pdf/CR/SUP_CR_12_00_00.pdf
[3] Scarlett v Gjovik, King County Superior Court, 22-2-03849-7 SEA, "Motion to Strike"

## King County District Court: Scarlett v Gjovik

> 11
> 12    This does not mean I will not exercise my right to file for a new order with a better
> 13    understanding of the law, and reporting such conduct to the Bar Association.

*Scarlett's Motion to Strike, signed Dec 23 and submitted Dec 27 2022.*



*Email Gjovik received from the California Bar Association on Dec 23 2022.*

## New Allegations & Threat of Further Litigation

Scarlett did not appeal this matter, but is instead threatening new litigation based on the same facts, and also wants to seal/strike as much of the prior court record as possible.

In Motioning to Strike and making new allegations – Scarlett is hoping to make it more difficult for the next Judge, in her **next** lawsuit against Gjovik in these courts, which Scarlett already threatened to file, to be able to figure out what is actually happening. Scarlett's inflammatory accusations & manipulative testimony are used to exploit the goodwill of Judges who want to error on the side of caution related to matters of safety. Scarlett's manipulation is not fair to Gjovik, to the Judges involved, or the legal system.

For example, while Scarlett's Motion to Strike now accuses Gjovik of **perjury** for complaining on Twitter about "SWATing"[4] – Scarlett not only admittedly reported Gjovik to the FBI and local law enforcement, alleging federal crimes including blackmail and extortion, but in her argument for a TRO in this court, Scarlett also argued that she & her family's physical safety were in danger due to Gjovik to the extent she was looking to relocate her home, said she was

---

[4] Motion to Strike: "*Ms. Gjovik's posts also contained defamation that could not be reasonably considered by the court to have been for any other purpose but malicious. For example, in the court record I asked about a number of posts in which Ms. Gjovik made statements that she knew to be fabricated and damaging to encourage others to harass me. **An example was a post in which Ms. Gjovik wrote that I had her "SWATed". The court is quite clear on what constitutes actual malice: "with knowledge that it was false or with reckless disregard of whether it was false or not. Ms. Gjovik has never been SWATed, so it's unreasonable to opine that post was about "activism". The purpose was to make people believe I had put Ms. Gjovik's life in danger by making a hoax call to emergency services or law enforcement to have armed authorities dispatched to her home which never happened. The court did err in opining that these postings were protected by the first amendment.*" (pg4)

## King County District Court: Scarlett v Gjovik

unsure if Gjovik owned a firearm & worried Gjovik was "unwell". These allegations and actions could easily result in armed law enforcement to decide to investigate and make a surprise visit to the alleged perpetrator's home.

6. How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

I am looking for another place to move to immediately for our safety. I am scared of what she will do if no one stops her. I am afraid of what will happen if her charges are not meritous. I am afraid of this woman and her followers.

Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 4 of 7
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019

*Scarlett's Petitioner for a Restraining Order against me, Jan 31 2022, pg 4*

9. Does possession of a firearm or other dangerous weapon by the respondent present a serious and imminent threat to public health or safety, or to the health or safety of a victim? Please describe:

Unsure, behavior leads me to believe she is unwell

10. Do you have any evidence of the harassment or stalking conduct other than testimony?

☐ No
☒ Yes.  I have attached the following evidence:
    ☐ Copy of mail or written notes
    ☐ Copy of text messages
    ☐ Copy of email messages
    ☒ Copy of social media messages
    ☒ Police report
    ☐ Declaration or Affidavit from the following witness: _____
    ☐ Other (describe): _____

*Scarlett's Petitioner for a Restraining Order against me, Jan 31 2022, pg 5*

**Emergency temporary protection (up to 14 days) until the court hearing:**

☒ An emergency exists as described below.  I request that a **Temporary Protection Order** granting the relief I requested above for a no-contact, surveillance, exclude from places, or stay away order be issued immediately, without prior notice to the respondent, be effective until the hearing.

☐ I also request a temporary surrender of all firearms, other dangerous weapons, and concealed pistol licenses without notice to the other party because irreparable injury could result if an order is not issued until the hearing.

What irreparable harm would result if an order is not issued immediately without prior notice to the respondent?

I have already struggled to find employment because of her harassment, along with harassment from her followers that could lead to misuse of 911 dispatch resulting in irreparable harm to myself or to my child.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated: 1/31/2022 _____ at Kirkland _____ Washington.

## King County District Court: Scarlett v Gjovik

*Scarlett's Petitioner for a Restraining Order against me, Jan 31 2022, pg 7*



*Scarlett's E-Filed Evidence, February 15 2022, pg 40-43*

Scarlett also admitted in February of 2022 that the FBI complaint was a meritless report ("*I was in a terrible place mentally, had relapsed…*") & also claimed "*another government agency*" told her to file it. Once again, another claim that the government was somehow sponsoring her harassment of Gjovik, without any evidence, and a claim Scarlett never brought up again after this email.

> 8) Yes, I reported you to the FBI. I was in a terrible place mentally, had relapsed, and you were posting private/personal information about me because you thought I was testifying against you and just to do the harm, and I was BEGGING you to stop… on my distress by finding a way to make a material gain via GFM and Twitter. It's abusive, Ashley. And another government agency with insight into this suggested I report it to the FBI because they believe what you did was a federal crime.

*Feb 5 2022 email; Scarlett's E-Filed Evidence, February 15 2022, pg 40-43*

Further, Gjovik's complaint about SWATing was posted in an effort to stop contact by Scarlett, who had begun reaching out to people supporting Gjovik on Twitter about her Apple lawsuit, and telling them not to support Gjovik, and making inflammatory allegations against Gjovik. This was in February **after** Scarlett has filed the Petition for a restraining order & before Gjovik was served. One person asked if Scarlett & Gjovik could "talk it out" & Gjovik's response was a request to not encourage contact due to the severity of Scarlett's harassment, including a

## King County District Court: Scarlett v Gjovik

comment made by Scarlett: *"I literally don't want her to exist in my world lol,"* which Gjovik read as Scarlett wishing Gjovik was dead.



*Scarlett's E-Filed Evidence Feb 15 2022- Gjovik's E-Filed Evidence Feb 14 2022*

Now, Scarlett also alleges Gjovik committed a gross misdemeanor (§ 9.73.030) with Scarlett apparently claiming that Gjovik complaining about harassing messages sent to Gjovik by Scarlett – and sent by Scarlett to Gjovik's friends about Gjovik which Gjovik's friends provided to Gjovik so Gjovik could report it to the government – is somehow Gjovik "wiretapping" Scarlett.[5]  Scarlett even claims she may sue Gjovik again now alleging this criminal wiretapping statute. Gjovik providing evidence of directed harassment by Scarlett against Gjovik is not wiretapping, nor is it criminal conduct by Gjovik – and the allegation of such is even more federal witness intimidation and retaliation.

As for the new allegation that Gjovik was re-publishing defamatory content, indeed the legal document Scarlett continues to reference but refuses to allow to be admitted into evidence, was Gjovik complaining to the government about harassment, defamation, and intimidation by Apple against Gjovik. Gjovik quoted hundreds of posts made by accounts alleged to be Apple Inc, that made horrible defamatory posts about Gjovik & she complained it included unlawful defamation in violation of labor and whistleblower laws. It cannot be unlawful to provide evidence of defamation in a legal filing alleging defamation. Scarlett also attempts to make an extensive legal filing about Apple Inc harassing Gjovik, now somehow about Scarlett.

---

[5] Page 2 of Scarlett's Motion to Strike *(As such, Ms. Gjovik's decision to publish these private communications without my consent was not protected by the first amendment, but instead a gross misdemeanor under Wash. Rev. Code Ann. § 9.73.030. The court erred in not considering I lacked the background in law to argue the legal basis for the lower court's order.)*

## King County District Court: Scarlett v Gjovik

1    Scarlett also now claims she never said she has a history of fraud & alleges Gjovik's

2  reference to Scarlett's prior statements is now **perjury by Gjovik**.

> 2) On page 3, Ms. Gjovik perjures herself again by claiming I "self-admitted" to student
> loan fraud and business fraud. Ms. Gjovik is referring to my disclosure that I enrolled in college
> to get student loans to help care my infant as a single mother in poverty. These loans were
> obtained under my own identity, I attended class at the institutions the loans were drawn on, and
> the loans are in good-standing. I was approved for $20,000 of student loan debt relief by the
> Department of Education in November. The "business fraud" Ms. Gjovik is referring to is my own
> disclosure that I had to pretend I was a designer or project manager so that I didn't experience
> homelessness with my infant due to sexism in the technology industry. It's ironic that Ms. Gjovik
> wishes to be a human rights attorney and claims her harassment was in the name of activism
> when she uses my being discriminated as a woman software engineer and living in poverty. The
> "check fraud" Ms. Gjovik is referring to is me overdrawing my own bank accounts. These
> accounts have all since paid off. The banks never took any action against me and I've never
> been charged with <u>any</u> crimes. My husband's criminal record is not material and decades old.

*Motion to Strike page 6*

Scarlett's own Evidence includes quotes by Scarlett saying she "*invented whole companies*,"
"*enroll[ed] in college multiple times and withdrawing for the student loans*," and engaged in
"*check fraud*." Scarlett notes her involvement in "check fraud" was published by the Washington
Post. It does not appear Scarlett has alleged defamation by Washington Post.

> 2) I have lied about my education in the past, and my role, tried to hide my gender, and invented whole
> companies. I had an infant, was making poverty wages at multiple hourly jobs, and I was trying to
> survive. I did what I needed to do, including enrolling in college multiple times and withdrawing for the
> students loans.
>
> I've been very open about my past, going far beyond that. I WaPo did a very thorough background
> check on me and it would have taken more than the limit of 2,000 words to disclose everything. They
>
> chose to disclose the check fraud because it was the most extreme and fewest words.

*Email from Scarlett to Gjovik, Scarlett's E-Filed Evidence, CLJ, February 15 2022, pg 62-66*

Scarlett makes many statements in her Motion supposedly quoting allegations made by
Gjovik, but it is unclear what source she is referencing and many are simply untrue. Scarlett's
comments about being a defense witness for Apple were her own statements to a friend of
Gjovik's while trying to convince the friend not to support Gjovik, which Gjovik's friend

## King County District Court: Scarlett v Gjovik

complained about in a witness statement in support of Gjovik filed to this court, yet Scarlett now apparently claims it is "wiretapping."



*Gjovik's Evidence & D.U. Witness Statement, CLJ, Feb 14 2022 & Feb 17 2022*

Scarlett also now claims she did not write some of the things in Gjovik's legal filing which Gjovik cited were statements by Scarlett, but Scarlett does not point to anything specific, and fails to mention that in that document, which she refuses to let a court review, included links/URLs to her comments, made from Scarlett's own accounts on Twitter and other social media, most of which are still available today from an account Scarlett is actively using.[6]

Scarlett accuses Gjovik of "**perjury**" for refencing witness statements admitted to the trial record during the Court of Limited Jurisdiction hearings. However, per the court transcript from the March 1st hearing, Judge O'Toole "*incorporated in by this reference*" including "*statements of the witnesses that Ms. Gjovik has submitted.*" Neither the lower court or the

---

[6] Motion to Strike: "*Ms. Gjovik's postings were not about activism. Her purpose in publishing these things was meant to paint me in a false light. Some of Ms. Gjovik's publications, as is in the court record, misappropriated my name by publishing others' publications and claiming they were written by me. Ms. Gjovik did this with the purpose of maligning my character to pursue a personal vendetta which is not protected.*"

## King County District Court: Scarlett v Gjovik

appellate court "dismissed" the witness statements & they continue to be part of the court record.

(Note it appears Scarlett refers to Gjovik as Scarlett in her legal filing)

> ### Giovik?
>
> 6) On page 7, Scarlett references witness testimony she provided as proof she wasn't harassing me. These statements provided no defense for Ms. Gjovik's behavior and contained hearsay and perjured statements. These were dismissed by both the lower court and the appellate court. Ms. Gjovik's statement that I couldn't find any witnesses is nonsense. Ms.

*Motion to Strike page 7*

```
21          THE COURT:  Okay.  Thank you.  So give me a minute here.
22          All right.  So I've certainly heard the testimony, I've
23          reviewed the documents.  Both parties have produced a number
24          of documents and a number of written statements, all of
25          those are incorporated in by this reference, including the

 1          statements of the witnesses that Ms. Gjovik has submitted,
 2          and the filings that both Ms. Gjovik and Ms. Scarlett have
 3          filed in our electronic court records, and I do incorporate
 4          all of those by this reference.  And I've certainly listened
 5          to the testimony and argument of all parties.
```

*Court Transcript, CLJ Hearing, March 1 2022*

Scarlett also complains about Gjovik commenting about Scarlett's criminal record. Gjovik's comment appears to only have been revealed to Scarlett after Gjovik had to submit evidence to this court in defense of Scarlett's allegations and provided the conversation with a 3rd party that Scarlett alleged was **extortion**, despite Scarlett not being part of the conversation and Scarlett being the person who instigated the conversation attempting to get Gjovik to voluntarily agree to a gag-order preventing Gjovik from complaining of Scarlett's harassment– which Gjovik did not agree to.

## King County District Court: Scarlett v Gjovik



*1:1 text messages, Gjovik's E-Filed Evidence, CLJ, Feb 14 2022, page 27*

Regardless, Gjovik made an off-hand comment about Scarlett having a criminal record in a private conversation that only had to become public after Scarlett sued Gjovik. Scarlett also publicly comments that she **has committed crimes** and that she has **been to jail** at least three times. Gjovik's comment about Scarlett's "criminal record" is not defamation.



*Twitter posts by Scarlett*

Finally, Scarlett's comments about the NLRB's involvement in this matter continue to contradict statements by the NLRB and Scarlett's own testimony. Scarlett previously asserted she was suing Gjovik because of Gjovik's NLRB charge against Apple, and associated filings. [9] (Gjovik did make allegations about Scarlett's conduct as an agent of Apple, or under a negligence theory, but not as a named party.) Scarlett also makes random references to the FOI Act, which is inapplicable to private individuals and NLRB said they did not provide legal advice on the matter. Scarlett also continues to infer the NLRB provided her some type of secret guidance about this matter, which the NLRB denied.

---

[7] https://twitter.com/cherthedev/status/1027234912288604161
[8] https://twitter.com/cherthedev/status/1279872398087663616
[9] Motion to Strike page 5-6

# King County District Court: Scarlett v Gjovik

19
20
21
22
23
24
25
26
27
28

9) On page 9, Ms. Gjovik misrepresents my conversations with the NLRB. The chief security officer advised me that the NLRB did not have jurisdiction and instead advised me that harassment would be under the jurisdiction of local law enforcement and that extortion would be under the jurisdiction of the FBI. Local law enforcement advised me to seek an anti-harassment order. As Ms. Gjovik is aware, I have emails and a voicemail from the agency which corroborate this. In my conversations with the NLRB, it was determined that providing their statements in writing would constitute a conflict of interest. I went forward with the document they provided me instead, the FOIA guidelines which I used in court to successfully argue my point. I asked her to

*Motion to Strike page 7-8, Dec 23 2022*

How did the respondent make these statements? ☐ in person ☐ mail/written notes
☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter)
☐ other (describe): _____

B.  Describe other incidents of harassment or stalking.  For each incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.

I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.

On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.

https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1

https://twitter.com/ashleygjovik/with_replies (there's a lot more here)

*Scarlett's Petition for a Restraining Order, Jan 31 2022, pg 4*

## King County District Court: Scarlett v Gjovik

**12.** Is there any other litigation between the victim/s and the respondent? This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes. If yes, provide case number/s if known, type of case, and name of court:

NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

➤ **Requests**

*Scarlett's Petition for a Restraining Order, Jan 31 2022, pg 6*

```
13            MS. SCARLETT:  Okay.  So they have to --
14            THE COURT:  -- click on outside links.
15            MS. SCARLETT:  -- print outs?  One of the
16   documents that she -- and this is what caused me to do this,
17   is because the director of security at the National Labor
18   Relations Board believes that she filed a charge with the
19   intent to harass me on January 11th.  It is 191 pages long and
20   mentions me 288 times.
21            THE COURT:  All right.  And -- and how do you
22   know that someone from the National Labor Relations Board
23   believes this was solely to harass --
24            MS. SCARLETT:  They contacted me.  I have a
25   voicemail from them.
```

Anderson Transcription Solutions LLC

*Scarlett's ex parte Testimony, Petition for a TRO, Feb 1 2022*

## King County District Court: Scarlett v Gjovik

///

We started a movement called #AppleToo together, but after she made other members of the group uncomfortable with her punching down on collective action, defensive aggression after constructive feedback about a racist Twitter post she made, and her wishes to use the movement as private leverage for her own cases against Apple, she voluntarily parted ways

///

In late August of 2021, Ms. Gjovik shared with me that she had leaked information protected by our non-disclosure agreements to Zoe Schiffer of the Verge, and she was terminated a week later for those policy violations. Ms. Gjovik was later denied unemployment benefits by the state of California after they determined she was terminated for just cause, per her sharing the letter from unemployment on Twitter. I shared an opinion on the application Blind that it would be difficult to prove her retaliatory discharge claims to the NLRB and the Department of Labor because she had, in fact, leaked those documents. In December of 2021, she initiated a

///

Ms. Gjovik stated she was cyberharassing me because I was testifying against her on behalf of Apple in her cases against them, and further because I reported her conduct to the FBI. This is untrue, as Alexander Hajduk, an investigating officer of the NLRB, and I both told her. I was cited in their defense with a text message conversation she posted on Twitter, not testifying against her.

////

The Director of Security of the NLRB, Raymond Hankins, and the supervisory Field Attorney for Region 32, Catherine Ventola, which is handling Ms. Gjovik's NLRB charge which names me, both recommended over the phone that I report Ms. Gjovik's conduct to federal and local authorities, on or around January 25, 2022, and on or around February 4, 2022, respectively. They further advised that they had had numerous operations meetings to discuss how to handle Ms. Gjovik's conduct and my personal and private information being published without my or my family's consent. They advised they would redact information per Exemption 6 of FOIA, and linked me to the relevant guide from the DOJ, but said they did not have jurisdiction over her

Ms. Gjovik's cyberharassment of me appears to be in part for exercising my own first amendment rights in expressing my opinion that her retaliatory discharge case would be hard to prove because of the bonafide fact that she had leaked private documents about unreleased intellectual property owned by Apple to the press, and additionally because I was cited in Apple's defense case in her charges against the company. I took the time to apologize for exercising those first amendment rights, because it clearly hurt her feelings, despite my right to say such things, and her public assertions that she supported such rights.

*Scarlett's written Testimony, CLJ Petition for a Restraining Order, Feb 15 2022*

## King County District Court: Scarlett v Gjovik



*Gjovik's E-Filed Evidence, Feb 14 2022*



*Scarlett's oral Testimony, CLJ, Hearing for a Restraining Order, March 1 2022*

## King County District Court: Scarlett v Gjovik



*Email from NLRB; Gjovik's Superior Court Appellant Brief Exhibit A (page 3)*

This case has been buttressed by falsehoods & inflammatory allegations. Even before Gjovik was served, after Scarlett filed the petition and testified at a TRO hearing, Scarlett then proceeded to send Gjovik a long & intimidating email on February 5 2022 which repeatedly said she did not believe Gjovik's cases/charges against Apple have merit, & Scarlett demanded Gjovik modify Gjovik's federal legal filings to remove (not redact) evidence and allegations about Scarlett.

In this email, Scarlett positioned that she was not adversarial to Gjovik, and even said would she never voluntarily testify against Gjovik, after she had already testified against Gjovik *ex parte* on February 1 2022 for this matter but would not serve Gjovik until mid-day February 14 2022, the day before the actual hearing. [10]

---

[10] See Gjovik's Reply Brief & Evidence, King County CLJ, Feb 14 2022

## King County District Court: Scarlett v Gjovik

> 1) I am not testifying against you, nor on Apple's behalf. I wouldn't do that unless I was subpoenaed, and I don't believe they would have me do that, because cross-examination would allow me to answer questions that would discuss their culture of surveillance.
>
> I am named in their defense, which I was only informed of as a courtesy. I am upset by it, given what I've been through, which is why I mentioned it.

*Feb 5 2022 Email; Scarlett's E-Filed CLJ Evidence, February 15 2022, pg 62-66*

## Conclusion

Cher Scarlett makes it clear in her Motion to Strike that she still believes there should be a finding of unlawful harassment against Gjovik, & Scarlett condemns the decisions to reverse and vacate made by the Honorable Andrea Robertson & Honorable Rania Rampersad. However, Scarlett says she will not appeal the decision and has allowed the window for appeal to expire, yet Scarlett also threatens to sue Gjovik again (assumably in this same court) for the same facts that were already found to not be harassment, while also removing documents from the record.

I understand and appreciate this courts hesitancy to dismiss with prejudice or issue sanctions (as it would create Full Faith & Credit issues, as well is implicate jurisdictional concerns), however Scarlett actively threatens to continue this nightmare in your courts. If the court would feel comfortable doing so, I would like to request consideration of the addition of Cher Scarlett to the local and/or state vexatious petitioner's list or another remedy in the court's wisdom on matters such as this.

In conclusion, Scarlett's Motion to Strike should be denied, this matter should be closed, & something should be done to prevent Cher Scarlett from continuing this meritless persecution that is not only terrorizing me, but also wasting the court's critical time & resources.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct. Respectfully submitted,

**Ashley M. Gjovik (pro se)**
Dated: January 16 2023

Electronically Filed
Honorable Judge Lisa O'Toole
East Division, Redmond Courthouse
12/24/2023 8:30:00 AM
22CIV01704KCX
King County District Court

1

2

3

4

5

6

7

8

**IN THE KING COUNTY DISTRICT COURT**
**IN AND FOR THE STATE OF WASHINGTON**

9    Cher Swan Scarlett

                Petitioner,      No.   22CIV01704KCX

10

11    vs.

    Ashley M. Gjovik              RE: REPLY TO PETITIONER'S MOTION

12                       Respondent.   TO STRIKE & REQUEST FOR

13                                 EQUITABLE INTERVENTION

14

15        COMES NOW, Petitioner (Cher Scarlett) and submits this response to Ms. Gjovik's

16

17    Reply & Request:

18

19        **(i) Relief Requested.** The court should STRIKE this filing and Ms. Gjovik's "REPLY

20

TO PETITIONER'S MOTION TO STRIKE & REQUEST FOR EQUITABLE INTERVENTION"

21

from the court's record as they serve no legal purpose other than to further malign my character.

22

23        **(ii) Statement of Facts.** On 12/02/2022, Ms. Gjovik filed a "Note for Motion Notice of

24

Intention to File Motions Upon Remand", prior to judicial review following the reversal. On

25

12/23/2022, I filed a reply, asking for the relief of striking these frivolous documents from the

26

record in which Ms. Gjovik continues to make false claims. Ms. Gjovik has filed a reply to a

27

"Motion to Strike", which is not a motion I have filed.

28

ORIGINAL

   **(iii) Response**. In this new filing, Ms. Gjovik continues leveling unsubstantiated claims, like that I reported her to the Bar Association. Ms. Gjovik has no proof of this, and will never receive any proof of this, because it is not true. There is nothing new here, the behavior from Ms. Gjovik will likely continue in ad infinitum, just as Judge O'Toole feared during the trial.

   Ms. Gjovik uses the reversal, again, to make it appear that her actions did not constitute harassment. Ms. Gjovik made no such argument in court that my factual reporting of her conduct to the FBI as extortion as SWATing. Ms. Gjovik is aware of the definition of SWATing to be making false calls to emergency services or law enforcement to have armed authorities dispatched to the victim's location. None of this occurred.

   Ms. Gjovik makes the same or similar claims in her new filing that she has made in the past. Ms. Gjovik claims, for example, that her comment about my having a "criminal record" only became public because of her post after my initial filing. This is not the case. She had posted other private communications with other parties in which she also claimed to have obtained my "criminal record" or "criminal history", which again, does not exist, as I've never been charged with or convicted of any crime. Ms. Gjovik, a Juris Doctor, is likely aware that synthesizing facts from out of context statements and hearsay is not a defense for libel.

   Ms. Gjovik has a penchant for taking statements, altering them, and presenting them as quotations, or, changing the meaning to represent something more inflammatory. She does the latter also by removing important context or failing to discover important context. An example is where she claims she only referred to my overdrawing my checking account as "check fraud" as

ORIGINAL

Washington Post did. However, the Washington Post did not allege I had been charged or

convicted of a crime. They simply did not go into detail, other than to contextualize that I was

living in poverty and struggling to survive, something Ms. Gjovik did not do. Ms. Gjovik further

alleged I had defrauded banking institutions, which is easily falsifiable (to whit—she was

corrected on numerous occasions and opted to continue to push this libel). A victim of the crime

of "check fraud" may be a bank, a person, and/or a company. In my case, I was the victim. I

repaid myself. I consider the matter settled.


    **(iv) Conclusion**. My only wish remains that Ms. Gjovik cease her harassing conduct,

including abusing judicial processes to malign my character. I pray the court close this case and

not allow Ms. Gjovik to file any further frivolous motions designed to further her vendetta.


I declare under penalty of perjury under the laws of the state of Washington that the facts I

have provided on this form (and any attachments) are true.


Signed at (city and state):


Redmond, WA   date: Jan 23, 2022


  s/Cher Scarlett

ORIGINAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

## Mandate

# FILED

KING COUNTY, WASHINGTON

NOV 1 4 2022

SEA
SUPERIOR COURT CLERK

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

CHER SWAN SCARLETT,
                     Petitioner/Respondent

v.

ASHLEY MARIE GJOVIK,
                    Respondent/Appellant

NO. 22-2-03849-7 SEA

**MANDATE OF SUPERIOR COURT
ON RALJ APPEAL**

**Court of Limited Jurisdiction
No(s). 22CIV01704KCX**

### I. BASIS

Pursuant to RALJ 9.2(c) and (d), the Clerk of the Superior Court shall transmit to the Court of Limited Jurisdiction and to all parties a mandate, which is the written notification of the Superior Court decision on an RALJ Appeal. The notification shall include as part of the final judgment, a summary of expenses allowed as costs pursuant to the RALJ 9.3(a),(c), and (f). The costs listed below shall be collected by the Clerk of the Court of Limited Jurisdiction. When the costs awarded include the Superior Court filing fee, it shall be collected by the Clerk of the Court of Limited Jurisdiction and forwarded to the Superior Court Clerk.

### II. NOTIFICATION

Therefore, this is to certify that the order of the **King County Superior Court** of the State of Washington, filed on **September 26, 2022**, became the decision terminating review of this court in the above-entitled case. This cause is mandated to the **King County District Court, East Division, Redmond Courthouse**, from which the appeal was taken, for further proceeding in accordance with the decision. A copy of the decision is attached.

### III. DECISION

The decision of the ☒ SUPERIOR COURT ☐ COURT OF APPEALS ☐ SUPREME COURT:

A.  ☐ Affirms   ☒ Reverses   ☐ Modifies   ☐ Dismisses   ☐ Denies   ☐ Remands

B.  The appeal was heard in Superior Court before the Honorable **Andrea Robertson.**

C.  This Matter is remanded to the Court of Limited Jurisdiction.

Mandate on RALJ Appeal
Auth: RALJ 9.2(c) & (d); RALJ 9.3(a), (c) & (f), II.2(a)
Eff. 09/01/2018
             DOCKET CODE: MNDRLJ

## IV. APPEAL BOND

**A.** ☐  Appeal Bond posted in Superior Court will be returned to the originating Court under separate mailing.

**B.** ☒  No Appeal Bond posted in Superior Court.

## V. COSTS

Pursuant to RALJ 9.3(a),(c) and ll.2(a) costs and attorney fees are awarded as follows:

| Item | Awarded To | Amount |
|------|-----------|--------|
| **A. Costs** | | |
| **B. Attorney Fees** | | |
| **C. Other** | | |

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Superior Court of Washington for King County, at  Seattle, on this day,
DATE: November 14, 2022

**Barbara Miner**
Superior Court Clerk

*By: T. Knoblauch, Deputy Clerk*

Original:  King County District Court, East Division, Redmond Courthouse

    Cc:   Cher Swan Scarlett
          Ashley Marie Gjovik
          Superior Court File

Mandate on RALJ Appeal
Auth. RALJ 9.2(c) & (d); RALJ 9.3(a), (c) & (f), ll.2(a)
Eff. 09/01/2018

DOCKET CODE:  MNDRLJ

# MOTION FOR JUDICIAL NOTICE EXHIBIT

## SECTION:

Reversal



CERTIFIED
COPY

**FILED**
2022 SEP 26 12:26 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-03849-7 SEA

SUPERIOR COURT OF WASHINGTON FOR THE COUNTY OF KING

| | |
|---|---|
| SCARLETT, | NO.   22-2-03849-7 SEA |
|         Appellee, | *Lower Court Case Number 22CIV01704KCX* |
| v. | ORDER |
| GJOVIK, | |
|         Appellant. | |

This appeal came on regularly pursuant to RALJ 2.2(a), before the undersigned Judge of the above-entitled court and after reviewing the record on appeal and considering the written submissions of the parties, the court reaches the following findings of fact and law.

**LIMITATIONS UPON ITEMS CONSIDERED**

Both parties are unrepresented in this matter. This Court must begin with a clarification regarding the guiding rules, the materials considered, and thus articulate what was not considered.

Appellant filed their opening brief more than 90 days after initiating the appeal, which is a violation of RALJ 7.2 and grounds for dismissal due to "abandonment," however this Court did not exercise its discretion to consider a dismissal. Appellant's brief is 76 pages long, with over 400 pages of attachments (which included additional legal briefing)[1],

---

[1] Including "Notice of Pendancy of Other Actions" (sub-16, 55 pages), "Appendix of Exhibits" (sub-17, 72 pages), and "Exhibit X/Legal Memo" (sub-23, 337 pages)

ORDER                                              1        JUDGE ANDREA K. ROBERTSON
                                                            KING COUNTY SUPERIOR COURT

1  which is in violation of RALJ 7.3(b).  Both Appellant and Appellee attempted to introduce
2  additional "evidence" into the record throughout the entirety of their submissions, in terms
3  of factual assertions not in the lower court record, along with Appellant's submission of an
4  additional witness statement (Found in electronic record at sub-48).

5      Appellee raises multiple objections to the length and content of Appellant's
6  submissions, but failed to note motions for consideration by this Court per local rules.
7  Appellee submitted a brief of appropriate length.

8      Appellant requests at various times that this Court apply Rules of Appellate
9  Procedure.  However, the RAPs "govern proceedings in the Supreme Court and the Court
10  of Appeals for review of a trial court decision and for direct review in the Court of Appeals
11  of an administrative adjudicative order under RCW 34.05.518."  (RAP 1.1).    The rules
12  which govern the proceedings before this Court (i.e. "review by the superior court of a final
13  decision of a court of limited jurisdiction"), are found in the Rules of Appeal for Courts of
14  Limited Procedure (RALJ), as well as the local RALJ rules.

15      Appellant requests that this Court vacate the lower court's order via "CR 60," which
16  applies to a judgment or order of Superior Court, and does not apply to these proceedings.

17      Appellant has asked this Court to consider pending actions, investigations,
18  proceedings and lawsuits in various other courts, jurisdictions, and proceedings.    These
19  matters are not before this Court, and this Court has no jurisdiction to rule in any fashion
20  on those matters. The ruling in this matter in no way governs any determinations in any
21  other court, jurisdiction, or proceeding involving the parties.

22
23      The Court provides this background to explain that many documents, arguments,
24  and requests contained in the parties' submissions were *neither reviewed nor considered*
25  by this Court, as they fell outside of the trial record or were unrelated to any issue this

26  ORDER                               2        JUDGE ANDREA K. ROBERTSON
                                                 KING COUNTY SUPERIOR COURT

1   Court has authority to determine.  This Court's role is a very limited one, articulated by

2   RALJ 9.1:

> **(a) Errors of Law.** The superior court shall review <u>the decision of the court of</u>
> <u>limited jurisdiction</u> to determine whether that court has committed any errors of law.
> **(b) Factual Determinations**. The superior court <u>shall accept those factual</u>
> <u>determinations supported by substantial evidence in the record</u> (1) which were
> expressly made by the court of limited jurisdiction, or (2) that may reasonably be
> inferred from the judgment of the court of limited jurisdiction.

In other words, this Court can only consider facts which were before the lower

court, and this Court will not consider new facts, assertions, or declarations provided on

appeal.  Briefs from each side contain factual assertions that were not contained in the

lower court record, and/or were irrelevant to issues on appeal.  This Court will not consider

facts outside the record.  Nor will this Court consider allegations that are irrelevant to the

legal issues on appeal in this case.  This Court can only consider whether the lower court's

decision was in error.

Overall, this Court has an obligation to interpret and apply the RALJ rules "liberally"

to "promote justice and facilitate the decision of cases on the merits." (RALJ 1.2(a)).  As

such, "cases and issues will not be determined on the basis of compliance or

noncompliance with these rules," except in limited circumstances which do not apply to the

matter before this Court. (see RALJ 1.2(b)).  Thus, the failure of parties to adhere to

briefing timelines or limitations, and the parties' introduction of additional facts, will not

guide this Court's final determination.  This Court will not dismiss for these procedural

defects, but has elected to simply not review or consider those items which were

inappropriately provided.  This Court will only consider whether an error of law was

committed by the lower court, based upon the record before the lower court only.

ORDER                                    3          JUDGE ANDREA K. ROBERTSON
                                                    KING COUNTY SUPERIOR COURT

1    To the degree that Appellant/Respondent appears to be challenging personal
2  jurisdiction (due to her residence location in California), this Court finds no merit, as
3  RCW 10.14.155 provides for jurisdiction over nonresident individuals in anti-harassment
4  proceedings in certain circumstances when the conduct giving rise to the petition occurred
5  out of state. The conduct must represent an "ongoing pattern of harassment that has an
6  adverse effect on the petitioner or a member of the petitioner's family or household and the
7  petitioner resides in this state." RCW 10.14.155(d)(1). Petitioner/Appellee resides in
8  Washington. The lower court properly exercised jurisdiction.

9

10                              **ASSIGNMENT OF ERROR**

11    A review of the record before the lower court, along with the lower court's decision
12  (both the written order and oral rulings in transcript of proceedings held on March 1, 2022)
13  leads this Court to conclude that the order was entered in error.

14

15                        **RECORD AND DECISION OF LOWER COURT**

16    The case presented to the lower court clearly showed a picture of two parties who
17  posted and messaged regarding each other on their individual Twitter pages (and other
18  social media accounts). While the parties initially spoke well of each other, their interactions
19  changed. By December 2021, neither party thought well of the other. Both parties have
20  strong, publicly posted opinions about the validity of each side's activism, public
21  statements, and online activities. Petitioner filed a request for an order, describing
22  Respondent's pattern of "posting defamatory content and other false statements about me
23  on her Twitter account." Petitioner also speculated about posts made by anonymous
24  accounts, which Petitioner attributed to Respondent. Specifically, Petitioner wrote and
25  testified in court about Respondent "re-posting" items posted on Petitioner's own social

26  ORDER                                  4        JUDGE ANDREA K. ROBERTSON
                                                   KING COUNTY SUPERIOR COURT

1 │ media platform starting in December 2021. Petitioner admitted to having published these

2 │ facts to her own followers, which exceeded 55,000. Petitioner claimed that Respondent

3 │ "filed an NLRB charge against Apple, Inc." Petitioner claimed that Respondent posted

4 │ information related to a background check of Petitioner's spouse. Petitioner also claimed

5 │ that Respondent expressed opinions about Petitioner's truthfulness in her public posts and

6 │ her involvement in ongoing litigation with Apple, Inc.

7 │       Respondent and Petitioner both provided many many pages of communications,

8 │ arguments, screenshots, postings, and other items, to show the postings and

9 │ communications of Petitioner and Respondent in the months preceding the filing of the

10 │ AHO petition. At one point, both parties relied on a third party to act as an informal

11 │ intermediary, to attempt to reach an agreement regarding what topics should be commented

12 │ upon in each other's Twitter pages and other social media platforms. Both parties blocked

13 │ each other, unblocked each other, messaged each other, posted accusations of harassment

14 │ against each other, reporting each other to various governmental agencies, and made

15 │ statements about various ongoing litigation between Respondent and Apple, Inc. Parties at

16 │ first expressed engagement and support for each other, which was ultimately replaced with

17 │ vitriol and public attacks of each other, commencing in December 2021.

18 │       The lower court denied a temporary order, finding no emergency. After a full

19 │ hearing, the lower court granted the order, for a length of five years. In doing so, the court

20 │ found that the "course of conduct" by Respondent involved primarily the "re-posting" of

21 │ various items. The court expressed its greatest concern about posts related to records of

22 │ criminal history as well as details about Petitioner's health.

23 │       The court ultimately asks a key question of the Petitioner/Appellee:

24 │

25 │

26 │ ORDER                                    5            JUDGE ANDREA K. ROBERTSON
      │                                                      KING COUNTY SUPERIOR COURT

1   THE COURT: I'm sorry; so are you saying that the information about your medical -
2   - various medical conditions, your mother's whereabouts and those sorts of things
    that she's reposting things that you have already posted on Twitter?

3   (Transcript of proceedings, sub-6, page 18)

4

5   Petitioner confirmed that this was true, explaining to the court that Respondent had
6   re-posted items that Petitioner intended only for her "own" Twitter followers
7   (approximately 55,000+), and/or were items that Respondent found through other sources,
8   commenting that "she actually did delete a lot of the Tweets that had personal information
9   about it except for two of them." Petitioner then adds that Respondent conducted a
10  background check on both herself and her husband and provided this information to a
11  representative for Wikipedia.

12  When counsel for Respondent objects and points out that postings by Respondent
13  were true and accessible publicly, the lower court states:

14  THE COURT: That's not the standard. That's not the standard in an antiharassment
    order. Whether it's true or not doesn't matter in an antiharassment order.
15
    . . . So what we're trying to figure out is whether there's a pattern of activity over
16  time directed at Ms. Scarlett that serves no lawful purpose. And if you want to
17  address -- maybe address your questions toward how any of these postings serves a
    lawful purpose, that might serve your client well.
18  (Transcript of proceedings, sub-6, page 21)

19

20  When questioned by Respondent's counsel, Petitioner is asked:

21  Q. . . . The communications that you're referencing, are those messages sent directly
    to you or are they something that she posts to the public at large?
22
23  A. They are what she is posting to the public, as I have stated.

24  (Transcript, sub-6, page 22)

25

26  ORDER                                    6          JUDGE ANDREA K. ROBERTSON
                                                        KING COUNTY SUPERIOR COURT

1       Petitioner verifies that these messages were not sent directly to her, as in the form of

2 a text message, an email, a letter, or a physical verbal exchange.   When asked about the

3 source of information posted by Respondent, the following exchange occurs:

4       Q. . . . So let me recap. You put in the public sphere information about yourself that

5       other people could see and then copy, and she took that information and she put

6       into another format. Do I understand that correctly?

7       A. That is correct.

8       Q. All right. And that information that you shared, how many people did you share

9       that with?

10       A. My entire Twitter feed.

11       Q. 45,000?

12       A. 55,000.  (Transcript, sub-6, page 25)

13       The lower court made its findings on the record (not in writing).  The court

14 described the various online postings of Respondent/Appellant which the Court relied

15 upon in entering an order in favor of Petitioner/Appellee:

16       The only purpose in posting information about Ms. Scarlett's mother, Ms. Scarlett's

17       mother's whereabouts, home and pet, Ms. Scarlett's husband and his criminal record

       is clearly designed to upset Ms. Scarlett. There's no lawful purpose. There is no

18       absolute right to free speech. Free speech can be curtailed in many ways, one of

19       which is a protection order. The protection orders are clear that the course of

       conduct cannot be designed to alarm, annoy or harass. There's no other purpose for

20       posting these things, none.

21       The antiharassment statute does not require that Ms. Gjovik direct this specifically

       by directly speaking to her, it's designed -- it prohibits directing this at her. So it can

22       be directed at other people knowing that Ms. Scarlett is going to see it and be aware

23       of it. It can be communicated to others. It doesn't have to be communicated directly

       to Ms. Scarlett to be prohibited under our antiharassment statute.

24       Posting this kind of information about somebody's medical condition, about

25       someone's spouse's criminal history -- particularly when it's sealed, but even if it

26 ORDER                  7       JUDGE ANDREA K. ROBERTSON
                                             KING COUNTY SUPERIOR COURT

1  weren't sealed -- about someone's parents, about someone's name change, none of
2  that serves any lawful purpose to disseminate. The only purpose for doing that is to
   harass, annoy and alarm. Clearly, Ms. Gjovik has more than a bit of animosity toward
3  Ms. Scarlett. Clearly, she was directing this at her and was hoping to harm her, to
   upset her. There's no other purpose for this. I am going to issue the order, and I'm
4  going to make it a five-year order.

5  (Transcript, sub-6, page 47-48)

6

7  To sum up the stated areas mentioned by the lower court:

8  1)  The reference to "medical conditions" referred to a reposting of
9
       Petitioner/appellee's own Tweets about her own medical conditions.[2]
10
11  2)  The reference to Petitioner's family was related to Respondent's post opining
12      about the strength of Petitioner's claims about her poverty in childhood in light
13      of a posted photo.  (Despite the reference to "location" this court sees no
14      evidence that Petitioner's private home address was posted, and the reference to
15      "home" appears from the record to be a comment about Petitioner's publicly
16      posted childhood photo.)
17
    3)  The reference to criminal history was related to law enforcement or court
18      documents obtained by Respondent showing that Respondent's spouse had a
19      prior criminal conviction and was ordered to register as a sex offender.[3]
20

21
_____
22  [2] Tweets and messages from Petitioner were apparently public at one point but were later restricted in
    audience reach to approximately 55,000 persons who were followers of Petitioner.  It is unclear from the
23  record when some items were "public" tweets, versus "limited audience" tweets.
       [3] It was unclear from the record, but at some point either shortly before or shortly after Respondent
24  posted this information, King County Superior Court sealed the juvenile record for Petitioner's spouse (in late
    December), a detail apparently unknown to Respondent when Respondent posted this background
25  information, according to sworn testimony.

26  ORDER                              8              JUDGE ANDREA K. ROBERTSON
                                                      KING COUNTY SUPERIOR COURT

1   Despite the lack of "direct" communication to Petitioner, as conceded under oath,

2   the court imposed distance restrictions, prohibitions against surveillance, and prohibitions

3   against direct/third person communications to Petitioner. The court made no specific

4   findings to support the extra length of the order (five years). Most important to Petitioner

5   (and to the issues before this Court), the lower court also added the following language to

6   the order:

7   **"Respondent shall not make any statements or posts or other publications**
    **about Petitioner, including, but not limited to, petitioner's medical**
8   **information, petitioner's family, petitioner's names, on any social media or**
    **internet or other medium. Nothing about this Order prohibits Respondent**
9   **from testifying in administrative or judicial proceedings."**

10  The court referenced re-posting of items in its findings of "course of conduct." The

11  court did not specifically reference in its findings the other category of items complained of

12  by Petitioner, namely Respondent's opinions about Petitioner's role in ongoing litigation.

13  Whether the lower court gave no weight or consideration to the claims by Petitioner is

14  unclear. However, as the above language from the final order was not limited to "re-

15  posting" public information, and was a <u>full</u> prohibition on "posts ... *about* Petitioner," those

16  "opinion" posts may very well have been intended to be referenced in the course of

17  conduct that the court describes. Both categories will be analyzed by this Court.

18

19  **A. THE LOWER COURT'S ORDER EXCEEDED STATUTORY LENGTH**
    **WITHOUT ADDITIONAL REQUIRED FINDINGS**
20

21  RCW 10.14.080(4) provides that an anti-harassment order may not

22  exceed one year in duration "unless the court finds that the respondent is likely to resume

23  unlawful harassment of the petitioner when the order expires." No such finding was

24  specifically made on the record by the lower court, which renders the length of five years to

25  be improper.

26  ORDER                                           9                 JUDGE ANDREA K. ROBERTSON
                                                                       KING COUNTY SUPERIOR COURT

## B. THE LOWER COURT'S ORDER IS AN UNCONSTITUTIONAL PROHIBITION ON FREE SPEECH

Unlawful harassment is defined in RCW 10.14.020[4] as follows:

(1) "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct is contact by a person over age eighteen that would cause a reasonable parent to fear for the well-being of their child.

(2) "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication. Constitutionally protected activity is not included within the meaning of "course of conduct."

Determination of the purpose of a course of conduct was governed by RCW 10.14.030, requiring the lower court to determine if the conduct serves any legitimate or lawful purpose. However, RCW 10.14.020 protects from consideration "constitutionally protected free speech." And a protection order that is based solely on protected free speech is invalid. *Catlett v. Teel*, 15 Wn.App.2d 689 (2020). Defamatory language is generally not protected, but defamatory speech must be certain and apparent from the words themselves. *Id*. at 705.

　　*1) Appellant/Respondent's "Republishing" or "Re-posting" Publicly Available Records*

---

[4] This statute (along with various other forms of orders prohibiting contact) have now been replaced entirely with a combined statutory scheme in RCW 7.105, which took effect in July 2022

1   While the publication of truthful information is not protected in all instances, the

2   U.S. Supreme Court has shown how even the publication of a rape victim's name from a

3   publicly-released police report is protected by the 1st Amendment.[5]

4   The Washington Constitution provides even greater protection than the U.S.

5   Constitution's 1st Amendment to the publication of public records.  Via Const. art I, § 5,

6   Washington provides an absolute right to publish and broadcast accurate, lawfully obtained

7   information that is a matter of public record.[6]   These protections are not limited to

8   information admitted into evidence and presented in open court.

9

10   While there is a compelling state interest in protecting citizens from harassment, a

11   specific protection order must be narrowly tailored to further a compelling state interest.  In

12   a very similar case to the matter before this court, Division One[7] recently determined that

13   restrictions such as the ones imposed by the lower court (related to online posts) were not

14   narrowly tailored to further a compelling state interest.

15

16   The lower court in this matter seemed to require a "lawful purpose" behind the

17   Respondent's postings of public records.  But our state constitution does not allow for that

18   consideration or restriction on free speech, and provides that "[e]very person may freely

19

20   [5] *Florida Star v. BLF*, 491 U.S. 524 (1989)
    [6] *State v. Coe*, 101 Wn.2d 364 (1984)
    [7] *Catlett v. Teel*, 15 Wn.App.2d 689 (2020).  This case involved a finding of improper "course of

21   conduct" by Teel, an ex-boyfriend of Catlett, who appealed the entry of an antiharassment order which
    restrained his behavior.  Teel caused public records to be published, namely requests for criminal records and

22   other publicly available documents.  He did so in a manner which resulted in an online posting of those
    documents via a site called "MuckRock".  These documents included various police investigations of Catlett

23   for harassing behavior, mental health checks of Catlett by law enforcement, arrests for domestic assault, etc.
    The documents obtained by Heel also included links to criminal records for another individual which (Teel)

24   believed related Catlett's behaviors.  Division One found that all of this was protected speech, that the lower
    court's order was an unconstitutional content-based restriction, and that its provisions imposed an

25   unconstitutional prior restraint on future protected speech.

26   ORDER                                          11          JUDGE ANDREA K. ROBERTSON
                                                                KING COUNTY SUPERIOR COURT

1 speak, write, and publish on all subjects, being responsible for the abuse of that right."

2 Const. art 1, § 5.  There is no categorical "harassment exception to the First Amendment's

3 free speech clause."[8]

4

5 While many of the postings by Respondent which were complained of appeared to

6 be offensive, rude, or harsh, the case law is clear: Civil antiharassment statute is not designed

7 to penalize people who are overbearing, obnoxious, or rude.[9]

8 The lower court's determination **should have** exempted from a finding of "course

9 of conduct" the "re-posting" of publicly available records, content and statements, as the

10 actions constituted constitutionally protected free speech.

11 Further, the lower court's order for protection restricts future speech in a manner

12 which constitutes an unconstitutional content-based restriction.  The court cannot restrict

13 expression because of its message, its ideas, its subject matter, or its content, unless it is

14 narrowly tailored to promote a compelling governmental interest.  Here, there is no privacy

15 interest in public records and public postings.  Re-posting of these public records falls within

16

17 constitutionally protected activity.  No applicable exceptions apply to allow a prior restraint

18 on speech (e.g. incitement to violence, publication of obscenity, direct threat to military

19 security, restrictions during times of war[10]).  This Court need not look further than the

20

21

22 [8] *Rodriguez v. Maricopa County Cmty Coll. Dist.*, 605 F.3d 703 (2010). In fact, in *City of Everett v. Moore*, 37 Wn.App. 862 (1984), a section of the crime of harassment was found to be overbroad which did not have a "precision of regulation" required by the 1st Amendment.  Speech which harasses does not lose its

23 constitutional protection by virtue of that fact alone.
[9] *Burchell v. Thibault*, 74 Wash. App. 517, 874 (1994).  Again, nothing in the record suggested that the

24 lower court found the Respondent's posts to be defamatory, which was appropriate as the posts could not meet the four elements articulated by *Herron v King Broad Co.*, 112 Wn.2d 762 (1989)

25 [10] *See Near v. Minnesota ex rel Olson*, 283 U.S. 697 (1931).

26 ORDER                                             12          JUDGE ANDREA K. ROBERTSON
                                                                 KING COUNTY SUPERIOR COURT

1   decisions of <u>Coe</u> and <u>Catlett</u> to find that posts such as those at issue are related to law

2   enforcement or court records and are protected speech.

3   　　　　　　　　　2)   *Appellant/Respondent's "Opinion" Posts*

4   　　　　A slightly different analysis applies to posts featuring the opinions of Respondent

5   about the strength and veracity of various legal claims made by Petitioner, as well as

6   opinions about Petitioner's involvement as a witness for Apple, Inc.  It is important to note

7   that these posts were featured on Respondent's own blog/site/social media pages, and were

8   not directed to Petitioner.  The lower court appeared to have heard and seen no evidence

9   that the posts encouraged or incited violence.  Petitioner asserts that the speculation and

10  opinions expressed by Respondent about Petitioner's involvement in litigation were false and

11  reckless.  Thus, this Court will address this specific category of online posting via a separate

12  test of whether this constitutes defamation, which may not be protected by the First

13  Amendment.[11]

14

15  　　　　A defamation plaintiff must establish four essential elements to recover: (1) falsity;

16  (2) an unprivileged communication; (3) fault; and (4) damages. [12]

17

18  　　　　The truth or falsity of the "opinions" was not explored in the court below.

19  However, a great deal of evidence was before the court regarding the limited public figure

20

21  　　　[11] Again, the lower court never specifically ruled that the opinions of Respondent about Petitioner's
    role in the ongoing litigation was part of the "course of conduct," but as mentioned above, due to the fact that
22  the court ultimately ruled that "Respondent shall not make **any statements or posts or other publications
    about Petitioner**," it can be assumed that the "opinion" posts were considered along with the republication of
23  public data and information, and thus this topic must be addressed.
    　　　[12] *Mark v. Seattle Times*, 96 Wash.2d 473, 486, 635 P.2d 1081 (1981); *Sims v. KIRO, Inc.*, 20 Wash.App.
24  229, 233, 580 P.2d 642 (1978); Restatement (Second) of Torts § 558 (1977), *Bender v. City of Seattle*, 99 Wash. 2d
    582, 599, 664 P.2d 492, 503 (1983).

25

26  ORDER                                     13        Judge Andrea K. Robertson
                                                        King County Superior Court

1  status of Petitioner/Appellee. This status is important as there is a clear decrease in the

2  protections against invasions of privacy and defamation of character provided by law, if

3  someone is a "public figure" for a "limited range of issues." This applies when a party

4  "voluntarily injects [them]self or is drawn into a particular public controversy." *Gertz v. Robert*

5  *Welch, Inc.*, 418 U.S. 323, 351 (1974) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

6

7      Washington follows a five-part balancing test for identifying limited public figures.

8  The test considers whether:

9      (1) the plaintiff had access to channels of effective communication;
       (2) the plaintiff voluntarily assumed a role of special prominence in the public
10     controversy;
       (3) the plaintiff sought to influence the resolution or outcome of the controversy;
11     (4) the controversy existed prior to the publication of the defamatory statement; and
       (5) the plaintiff retained public-figure status at the time of the alleged defamation."[13]
12

13     Page 155 of the 222 page lower court record includes a post of a

14  "businessinsider.com" article, featuring Petitioner/Appellee, who provided public interviews

15  and engaged in ongoing activism related to Apple Inc., after alleging harassment in what is

16  described as a whistleblower filing. Petitioner/Appellee herself described in her own sworn

17  testimony that she utilized her public followers to heighten awareness and engage in public

18  activism, designed to reach a wide audience. In fact, Petitioner described using her public

19  presence to initially increase Respondent's public reach, as they both were involved in

20  activism and litigation, well before the alleged defamation.

21

22     There is more than sufficient proof of all five parts of the test above.

23  Petitioner/Appellee is and was a limited public figure as it related to ongoing employment

24

25      [13] *Clardy v. Cowles Publ'g Co.*, 81 Wn. App. 53, 60, 62 (1996).

26  ORDER                                    14        JUDGE ANDREA K. ROBERTSON
                                                       KING COUNTY SUPERIOR COURT

1 issues at Apple, Inc. As such, Petitioner must prove that Respondent had actual malice in

2 making posts which were not truthful, before it would meet the legal definition of

3 "defamation," [14] which could then exempt that content from free speech protections.

4 However, there was no evidence of actual malice before the lower court behind

5 Respondent's posts. There was more than sufficient evidence of Respondent/Appellant's

6 intentions and aim in addressing or magnifying or responding to an ongoing dispute and

7 legal challenge. Respondent's expression of opinion in that context was not proved to be

8 motivated by malice, but rather by activism.

9 Even if Respondent's speculation as to Petitioner's role as a witness or agent of

10 Apple, Inc was not entirely accurate, Petitioner did not show sufficient basis for this to be

11 qualified as "defamatory" content. As such, there is no proof that the "opinion" posts of

12 Respondent could be exempted from free speech protections. And thus, those posts

13 cannot provide an alternate means to support a finding of "course of conduct" to justify the

14 lower court's restrictions on speech.

15 Overall, the Respondent's "re-posting" of public records and the "opinion" posts

16 constituted free speech which must be protected per case law and constitutional

17 protections. Accordingly, the lower court's ruling amounted to an unconstitutional prior

18 restraint on Respondent's speech.

19 IT IS HEREBY ORDERED that the above cause is: [ x ] REVERSED.

20 The matter is REMANDED to King County District Court for further proceedings

21 to be set for consideration related to the previously imposed order, in accordance with the

22 above decision.

23

24 [14] *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Ciardy v. Cowles Pub. Co.*, 81 Wash. App.
53, 55–56 (1996)

25

26 ORDER                                        15        JUDGE ANDREA K. ROBERTSON
                                                          KING COUNTY SUPERIOR COURT

1        The Superior Court Clerk is directed to release any bonds to the Lower Court after

2    assessing statutory Clerk's fees and costs.

3

4    DATED:_September 26, 2022

5

6                                   _Electronic signature to follow_____
                                JUDGE ANDREA K. ROBERTSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    ORDER                           16             JUDGE ANDREA K. ROBERTSON
                                                 KING COUNTY SUPERIOR COURT

King County Superior Court
Judicial Electronic Signature Page

Case Number:        22-2-03849-7
Case Title:         SCARLETT vs GJOVIK (APPELLANT/KCD)

Document Title:     ORDER

Signed By:          Andrea Robertson
Date:               September 26, 2022

Judge:  Andrea Robertson

This document is signed in accordance with the provisions in GR 30.

Certificate Hash:           91CA01BD9E0F7B1F0FDDB8476C1BC53108D3369C
Certificate effective date: 1/6/2021 3:25:19 PM
Certificate expiry date:    1/6/2026 3:25:19 PM
Certificate Issued by:      C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
                            O=KCDJA, CN="Andrea Robertson:
                            yB71riJ16hG1sZ0o/CyjcQ=="

I BARBARA MINER Clerk of the Superior Court of the State of Washington
for King County do hereby certify that this copy is a true and perfect transcript
of said original as it appears on file and of record in my office and of the whole
thereof IN TESTIMONY WHEREOF I have affixed the seal of said Superior
Court at my office at Seattle on this date_____ **NOV 1 4 2022**

BARBARA MINER Superior Court Clerk

By_____
Deputy Clerk        T. KNOBLAUCH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

## SECTION:

Constitutional Challenge

**Honorable Judge Richard A. Jones**

# UNITED STATES DISTRICT COURT
### for the WESTERN DISTRICT of WASHINGTON at SEATTLE

CASE NO. 2:22-CV-00807-RAJ-BAT

*Ashley M. Gjovik* (*pro se*),

              Plaintiff(s),

    v.

*State of Washington, et al.*

           Defendant(s).

**MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

NOTE ON MOTION CALENDAR: JULY 15 (4TH FRIDAY)

## I.    INTRODUCTION

1. Gjovik introduces a motion for preliminary injunction against the state of

Washington's facially unconstitutional long-arm personal jurisdiction statute, the overbroad and

vague provisions of the anti-harassment statutes, and the attempted retirement of the clearly

much needed Constitutional savings section. Preliminary injunctions may grant intermediate

relief "of the same character as that which may be granted finally." Gjovik requests expedited

judicial intervention to several of the matters in her pleading, as well as the court's discretionary

injunctive power under All Writs Act to prevent disastrous, irreparable harm within the state

courts. (See Emergency Motion for Relief, Dkt #11). If part of the Emergency Motion is denied,

Gjovik incorporates her outstanding requests here.


## II.    MOTION FOR NON-EMERGENCY PRELIMINARY INJUNCTIVE RELIEF

2. Gjovik, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Local Rule

65, moves this Court for entry of a Preliminary Injunction enjoining the Defendant state of

Washington from enforcing the provision enumerated in the Proposed Order. This motion is

based on the following grounds:

- Violations of the U.S. Constitution 1st & 14th Amendment
- Violation of the U.S. Constitution Ex Post Facto & Bill of Attainder Clauses
- U.S. Constitutional Preemption

Gjovik files this motion for Emergency Injunctive Relief to enjoin:
- The vague and overbroad provisions of the anti-harassment statutes, RCW 7.105.010(35(a), 10.14.020, 7.105.010(5)(b), & 10.14.030
- The indirect and attenuated provisions of the jurisdiction long-arm statute, (RCW 7.105.080 & 10.14.155
- The new post-RO prior-restraint "motions" cause of action, RCW 7.105.310(1)(0)
- The planned retirement of the much needed Constitutional savings provision, RCW 10.14.190


3. This Motion is based on the Complaint and Appendix, Notice of Pendency and Appendix,

Emergency Motion for Injunction, and any such other evidence that the Court should hear in this

case. The Complaint and summons were properly served via FRCP Rule 4 and RCW 4.92.020,[1] per the Attorney General's published instructions. This motion has been scheduled for 4th Friday pursuant to Local Civil Rule 7(d).

### III. LEGAL STANDARD

4. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). A challenge to statutes with "directed narrowly and specifically at expression or conduct commonly associated with expression" receive a "relaxed standing inquiry." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 760 (1988), *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002).

5. The Courts are more willing to hear facial challenges on 1st Amendment cases because, "those who desire to engage in legally protected expression [] may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid []. When we allow such challenges, we mostly say we're protecting the free speech interests of 'parties not before the Court." *Canatella v. California*, 304 F.3d 843, 853 n.13 (9th Cir. 2002)

6. The Courts intend to give a platform to the few who are brave enough to step forward on behalf of the many others too fearful to fight back. *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002). In fighting to get relief from the extraordinary unusual harm the state of Washington has subjected Gjovik to, she also intends to fight to reform the state of Washington's

---

[1] RCW 4.92.020: Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general.

1  statutes to ensure no one else is subject to these crushing and tyrannical laws due to simply

2  exercising their constitutionally protected rights.

3      7. Because Washington subjects Gjovik to the untenable choice between self-censorship

4  and risking criminal and civil liability, the laws impose irreparable harm, threaten the public

5  interest, and tip the balance of equities heavily in favor of granting a preliminary injunction

6  Gjovik has a strong likelihood of success on the merits because the challenged laws are

7  unconstitutional as content-based regulations of protected speech that are not narrowly tailored to

8  a compelling government interest. In addition, even assuming that a narrow band of speech

9  covered by the challenged laws is unprotected, these laws are fatally overbroad and

10 impermissibly vague. Thus, all four factors favor the grant of a preliminary injunction. See,

11 *Ranchers Cattleman Action Legal Fund United Stockgrowers of Am. v. United States Dept. of*

12 *Ag.*, 415 F.3d 1078, 1092 (9th Cir. 2005) (citing *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d

13 1113, 1120 (9th Cir. 2005).

14

15          **IV.  GJOVIK'S IRREPARABLE HARM ABSENT RELIEF**

16     8. The Ninth Circuit makes clear that a showing of immediate irreparable harm is

17 essential for preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d

18 668, 674 (9th Cir. 1988), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

19 2011).  It is "well established that the deprivation of constitutional rights unquestionably

20 constitutes irreparable injury," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

21     9. Here, Gjovik was subject to content-based prior restraint, no-contact, no-surveillance

22 order and added to a criminal register but for her federal whistleblowing. The Petitioner

23 submitted in written and oral testimony that she was reporting Gjovik due to Gjovik's own

24 complaints against Petitioner. Petitioner wrote in her written statement to the state court, which

the Judge said she read before she granted the Order against Gjovik, that Petitioner thought Gjovik's "harassment' of Petitioner "appears to be in part for exercising [Petitioner's] own first amendment rights in expressing [Petitioner's] opinion that [Gjovik's] retaliatory discharge case would be hard to prove because of the bonafide fact that [Gjovik] had leaked private documents about unreleased intellectual property owned by Apple to the press." (e.g., Docket 11, #2 Exhibits, pg7). She added, "I took the time to apologize for exercising those first amendment rights, because it clearly hurt [Gjovik's] feelings, despite my right to say such things." *Id. (referencing her threatening email to Gjovik on Feb 5 2022).* (e.g., Dkt #1, Exhibit I).

10. Gjovik's harm is described in depth within the Complaint (e.g., Docket #1, generally), Emergency Motion for Injunction (e.g., Docket # 11, generally), and her Reply brief from state court (Exhibit B). Even the state of Washington agrees with the irreparable harm Gjovik faces due to statute so sweeping, she could easily be convicted based on fully protected conduct and speech protected by the U.S. Constitution. "The legislature recognizes that persons convicted and imprisoned for crimes they did not commit have been uniquely victimized." Those wrongly convicted suffer "tremendous injustice by being stripped of their lives and liberty." RCW 4.100.010

## V.   LIKELIHOOD OF SUCCESS ON THE MERITS

### i.   Standing

11. Gjovik is injured with an injury-in-fact: a concrete, particularized, actual, likely, and imminent injuries. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 558–59, (1992). Gjovik has a 'concrete plan' to violate the laws in question (continuing to pursue her whistleblower cases against Apple Inc), while the Petitioner has communicated specific warnings and threats to initiate further proceedings against her, and there is a history of past enforcement by Washington

1    under the challenged statute.[2]  *Many Cultures, One Message v. Clements*, 520 F. App'x 517, 519

2    (9th Cir. 2013). Based on the vexatious Petitioner's prior history of reporting Gjovik to law

3    enforcement, there's no reason to think she will not or has not already reported Gjovik for

4    somehow violating the Order. The injury is redressable by the Court through injunctive and

5    declaratory relief.

6         12. A controversy exists because the officials represent the state whose statute is being

7    challenged as the source of the injury." *Kentucky v. Graham*, 473 U.S. 159 (1985).  Suits against

8    governmental actors in their official capacity are treated as a suit against the governmental entity

9    itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The injury is fairly traceable to the state of

10   Washington. State of Washington has codified its liability for personal harm, saying "The state

11   of Washington, whether acting in its governmental or proprietary capacity, shall be liable for

12   damages arising out of its tortious conduct to the same extent as if it were a private person or

13   corporation." RCW 4.92.090. In actions and claims against the state of Washington, the state has

14   designated that the "attorney general or an assistant attorney general shall appear and act as

15   counsel for the state. The action shall proceed in all respects as other actions." RCW 4.92.030

16        13. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and

17   particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lopez v. Candaele,*

18   630 F.3d 775, 785 (9th Cir. 2010). Because "[c]onstitutional challenges based on the First

19   Amendment present unique standing considerations," plaintiffs may establish an injury in fact

20   without first suffering a direct injury from the challenged restriction. *Lopez v. Candaele*, 630

21   F.3d 775, 785 (9th Cir. 2010). In an effort to avoid the chilling effect of sweeping restrictions,

22

23   _____

24   [2] "Crime in Washington: 2020 Annual Report," notes 18,002 reports of violations of restraining orders with 8,526 arrests in just 2020, Washington Association of Sheriffs and Police Chiefs, Crime in Washington: 2020 Annual Report, https://www.waspc.org/assets/CJIS/Crime%20In%20Washington%202020-small.pdf

the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010); *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Here, the laws and actions by the state of Washington against Gjovik have actively chilled Gjovik as well as her friends and supporters, in addition to Gjovik's concrete injuries. One witness statement Gjovik submitted in the state hearing noted that Petitioner also harassed her and tried to silence her about the abuse, "effectively yelling at me while holding her hand over my mouth." That witness has since set their social media accounts to private in order to avoid further abuse from Petitioner. (Exhibit A).

14. Gjovik intends to continue to pursue her Apple Inc cases, including her allegations against Petitioner. Gjovik intends to continue supporting the labor activities at Apple Inc, with Apple's first U.S. union established this weekend.[3] Gjovik intends to continue talking the press and publishing updates on her Apple cases. Gjovik intends to fight this Order and the Washington statutes that created it. Meanwhile, Petitioner appears to be just as vexatious as ever, and Gjovik still worries every moment that any of these activities could result in additional orders, lawsuits, and her incarceration. (e.g, Docket #11, Emergency Motion).  Due to this fear, Gjovik's been chilled. She is grossly self-censoring until the Order can be removed. While Gjovik decided a month or two after the Order to start talking publicly about her Apple cases again, Gjovik still gives a large parameter to any topic that Petitioner might be able to argue is somehow connected to her, including certain labor organizing activities, such as "AppleToo" or even the NLRB-related details of the Order against Gjovik. This is the type of tyrannical censorship the 1st Amendment aims to prevent. *Babbitt v. Farm Workers*, 442 U.S. 289, 298

---

[3] *Apple workers at Maryland store vote to unionize, a first for the U.S.,* Reuters (June 19 2022), https://www.reuters.com/markets/us/apple-workers-maryland-store-vote-unionize-first-us-2022-06-19/

1  (1979), *Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). "The rights of political

2  association are fragile enough without adding the additional threat of destruction by lawsuit."

3  *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982).

4      15. Prudential considerations have weighed in favor of allowing litigants to bring First

5  Amendment challenges on behalf of those whose expression might be impermissibly chilled, so

6  long as the plaintiff also suffers an injury in fact. *Clark v. City of Lakewood*, 259 F.3d 996, 1010

7  (9th Cir. 2001), as amended (Aug. 15, 2001). "Even where a First Amendment challenge could

8  be brought by one actually engaged in protected activity, there is a possibility that, rather than

9  risk punishment for his conduct in challenging the statute, he will refrain from engaging further

10  in the protected activity. Society as a whole then would be the loser. Litigants, therefore, are

11  permitted to challenge a statute … because … the statute's very existence may cause others not

12  before the court to refrain from constitutionally protected speech or expression." *Sec'y of State v.*

13  *Joseph H. Munson Co*., 467 U.S. 947, 955 (1984); *Clark v. City of Lakewood,* 259 F.3d 996,

14  1010 (9th Cir. 2001), as amended (Aug. 15, 2001).

15      16. Abstention from the exercise of federal jurisdiction is the exception, not the rule, and

16  federal courts should not refuse to decide a case in deference to the States. *Hawaii Hous. Auth. v.*

17  *Midkiff,* 467 U.S. 229, 236 (1984); *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)

18  (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368

19  (1989); *Ex Parte Young*, 209 U.S. 123, 157 (1908). The state of Washington tried to invoke (via

20  brute force) concurrent jurisdiction on the federal matters, thus the federal government was

21  already present and would not be "abstaining." *Exxon Mobil Corp. V. Saudi Basic Industries*

22  *Corp*. (03-1696) 544 U.S. 280 (2005). One *Younger* exception provides, "federal intervention is

23  appropriate under this exception if the state courts are biased and unable to be trusted on a

24  particular issue." *Gibson v. Berryhill*, 411 U.S. 564 (1973).

MOTION FOR PRELIM. INJ.                      PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                  (408) 883-4428

17. Here, none of the abstention doctrines apply for legal and federalism policy reasons. The state of Washington intruded upon the powers of the federal court and agencies as well as the agencies of the state of California, through is highly unconstitutional personal jurisdiction statute. The state of Washington allowed a Court of Limited Jurisdiction to create res judicata and Full Faith & Credit issues for ongoing federal cases and investigations. The U.S District Court will not be intruding upon state matters, it will be restoring the proper jurisdiction of these matters and ensuring the state of Washington does not further impede upon federal proceedings.

18. The abstention doctrines do not, nor should not apply to this extraordinary matter. The proposition that no state may enact statutes in violation of the Federal Constitution is fundamental to our federal system. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 136 (1810). If states can insulate their unconstitutional enactments from federal judicial review, then states like Washington can effectively disregard the rights protected by the Federal Constitution, thus violating the Framers' dictate that *"[t]his Constitution ... shall be the supreme Law of the Land,"* U.S. Const. art. VI.

19. *Younger* is based on 28 U.S.C. § 2283 and prohibits injunctions to stay proceedings in a state court except as expressly authorized by Act of Congress. Here, the U.S. District court is implicitly and explicitly authorized to act by numerous acts of U.S. Congress. At least for the Order against Gjovik, *Younger* would not apply even if it could, as the Order is "flagrantly and patently unconstitutional." *Younger* also does not apply here, similarly to *Rynearson v Ferguson,* 903 F.3d 920 (9th Cir. 2018), as the conduct Gjovik was found liable for was not prescribed in the statute and the Order prohibited actions which are not harassment, per soon to be retired Constitutional savings clause.

20. *Younger* also does not apply because the petition was made in made faith and to harass, and under patently unconstitutional statutes. If the state prosecution was brought in bad faith and

used to harass the criminal defendant, the Court stated that injunctive relief would be available.

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

21. Here, the *Pullman* abstention doctrine does not apply. *Railroad Commission v Pullman Co*, 312 U.S. 496 (1941).   There are no sensitive matters of state social policy here. The state of Washington was afforded a reasonable opportunity to pass on their statutes, to apply their law in Gjovik's case, and in doing so they stripped Gjovik of many of her core federal Constitutional rights and severely interfered with her ongoing federal litigation. Gjovik and her prior counsel made numerous objections to the state court with concerns violations of the U.S. Constitution and interference with federal statutes, but the court insisted on proceeding despite. Further, even if the Superior Court removes the Order, the statutes at issue here are still ripe for Petitioner to weaponize in her continued fervent attacks against Gjovik.

22. The *Rooker–Feldman doctrine* is a doctrine of civil procedure enunciated by the United States Supreme Court in two cases, *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine holds that lower United States federal courts—i.e., federal courts other than the Supreme Court—should not sit in direct review of state court decisions unless Congress has specifically authorized such relief. *Lance v. Dennis*, 546 U.S. 459 (2006). Rooker-Feldman does not apply because Gjovik does not only allege a harm by the state of Washington, she also alleges a harm by the adverse party (Petitioner) in federal matters. *Noel Hall, Kougasian v. TMSL*, 359 F.3d 1136 (9th Cir. 2004).

23. Well before the state matters were initiated, Gjovik's cases already invoked federal jurisdiction. The federal court's determination of its own jurisdiction would preclude the state court from finding such jurisdiction lacking. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). These federal statutes (NLRA, SOX, CERCLA, etc) provided the

express Congressional authority required for standing and injunction, as described. (e.g., Dkt #11).

24. Sovereign immunity is not a jurisdictional bar as to the Attorney General. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004) (holding that the Idaho Attorney General was properly named under *Ex Parte Young* because, unless the county prosecutor objected, the Attorney General had power to perform every act the county attorney could perform); *Bolbol v. Brown,* 120 F. Supp. 3d 1010, 1018–19 (N.D. Cal. 2015) (holding that the California Attorney General was not entitled to Eleventh Amendment immunity because under the state constitution the Attorney General not only has "direct supervision over every district attorney" but also has the duty to "prosecute any violations of the law ... [and] shall have all the powers of a district attorney).

### ii.    Statutes allow Orders based on Constitutionally Protected Expression

25. Laws (like this Order & these provisions) are "properly subject to facial attack" because they impose direct restrictions on protected First Amendment activity with imprecise means which lead to an unnecessary risk of chilling free speech. *Sec'y of State of Md. v. Joseph H. Munson Co*., 467 U.S. 947, 968 (1984). The laws at issue here are clearly facially overbroad and vague.

26. Even speech that is harassing is not exempt from constitutional protections. *Catlett v. Teel,* 15 Wn. App. 2d 689, 704, 477 P.3d 50 (2020). *Hedine v. Guerrero*, 17 Wash. App. 2d 1050 (2021). The First Amendment dictates that "Congress shall make no law . . . abridging the freedom of speech." "[A] law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft v. Free Speech Coal*., 535 U.S. 234, 244 (2002) *U.S. v. Evelyn Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018).

27. The Order against Gjovik was mostly based on one of Gjovik's legal memos for her federal cases. The Judge's decision explained, *"[Petitioner] may have posted information… on her own Twitter feed, [but Gjvovik's] reposting of them and the method that was used …. copying it, putting it in a PDF, and then reposting it in another medium in [Gjovik's] own website*." (e.g., Dkt #1, at pg. 35, lines 18-20; 3/15 Hearing transcript pg 46). Gjovik's legal memo to the federal government providing evidence of witness intimidation by Petitioner was used by a state court to justify a content-based prior restraint gag order and to put Gjovik on a criminal registry.

28. When Gjovik posted a cease and desist to Apple Inc in January 2022, she noted Petitioners name among others as parties she requested Apple to stop attacking her. Petitioner raised that as harassment. (e.g., Dkt #11, #2 Appendix, Exhibit E, pg 25) The state Judge at the hearing pointed to Gjovik's "Cease and Desist" notice to Apple Inc, and found "*posting this kind of information about somebody's….name change, none of that serves any lawful purpose*." (e.g., Dkt #1, page 48, lines 8-19, 3/15 hearing transcript). It's unclear if the Judge would have still ruled this way if she required evidence to be provided for the numerous allegations against Gjovik, but Washington does not require rules of evidence, or evidence at all, apparently.

29. Washington's harassment statutes are not tailored to only be triggered by direct contact from a Respondent to Petitioner, they apply to any communication and speech made by Respondent via any platform that a Judge could construe as "at." Therefore, the statutes implicate some of the most protected speech, including internet communications, news reporting, and publishing public records. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017); *Reno v. ACLU,* 521 U.S. 844 (1997).

**RCW 7.105.010 (35)(a), RCW 10.14.020 (2):**
"A knowing and willful course of conduct directed [*Unlawful* at] a specific person which seriously [*Unlawful*: alarms, annoys,] harasses, [*Unlawful*: or is detrimental] to such person, and which serves no [*Unlawful*: legitimate or] lawful purpose."

30. The U.S. Constitution and Washington Supreme Court protect content which "annoys" or "alarms," thus no doubt also protects speech that is "detrimental." In 1989, The Washington Supreme Court wrote: "proscriptions of conduct or speech which 'annoy' or 'alarm' others have been found to be unconstitutionally vague." *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Everett v. Moore*, 37 Wash.App. 862, 683 P.2d 617 (1984); *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979). *City of Seattle v. Huff*, 111 Wash. 2d 923, 929–30, 767 P.2d 572, 576 (1989). Indeed, in 1971, the U.S Supreme Court found an ordinance prohibiting "annoying" unconstitutionally vague. *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). The court wrote, "conduct that annoys some people does not annoy others." *Id*. In Gjovik's home state, the Supreme Court of Oregon also struck down provisions in their own harassment law, finding conduct "likely to cause annoyance or alarm" was unconstitutionally vague. *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979).

**RCW 7.105.010 (5)(b), RCW 10.14.030**
(5)(b) In determining whether the course of conduct serves any [*Unlawful*: legitimate or] lawful purpose, a court should consider whether:
(iii) The respondent's course of conduct appears designed to [*Unlawful*: alarm, annoy, or] harass the petitioner;
(v) The respondent's course of conduct has the purpose [*Unlawful*: or effect] of unreasonably interfering with the petitioner's privacy or the purpose [*Unlawful*: or effect] of creating an intimidating, hostile, or offensive living environment for the petitioner;

31. Speech which is designed to alarm, annoy, or harass is protected speech and a restraint of that speech is content (and even viewpoint) based prior restraint, is unconstitutionally

overbroad, and cannot survive strict scrutiny analysis. *State v. Bishop*, 787 S.E.2d 814 (N.C. 2016); *People v. Marquan M.*, 19 N.E.3d 480 (N.Y. 2014); *KKK v. City of Erie*, 99 F. Supp. 2d 583, 591-92 (W.D. Pa. 2000); *Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Boos v. Barry*, 485 U.S. 312, 322 (1988). Even worse is speech which simply could have the "effect" of causing a certain outcome. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988). As, the state of Washington currently endorses.

32. Speech which lacks "a legitimate purpose" has also already been found to be unconstitutionally vague, as that is a highly subjective standard. *City of Bellevue v. Lorang*, 140 Wn.2d 19, 992 P.2d 496 (2000) (En Banc), decision about vagueness based on *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

33. A new statute, effective July 1 2021, that will allow for new prior-restraint "motions" is also terribly unconstitutional for a number of reasons. Instead of initiating a formal complaint for these causes of action after the conduct occurs, the state of Washington courts will now allow Petitioners to submit a "motion" requesting a respondent/defendant to be deprived of their rights to access courts and deprive them of their constitutional right to free speech.

> RCW 7.105.310(1) In issuing any type of protection order, other than an extreme risk protection order, the court shall have broad discretion to grant such relief as the court deems proper, including an order that provides relief as follows:
> (o) Enter an order restricting the respondent from engaging in abusive litigation as set forth in chapter 26.51 RCW [Abusive Litigation – Domestic Violence] [*Unlawful*: or in frivolous filings against the petitioner, making harassing or libelous communications about the petitioner to third parties, or making false reports to investigative agencies.] A petitioner may request this relief in the petition or by separate motion. [*Unlawful*: A petitioner may request this relief by separate motion at any time within five years of the date the protection order is entered even if the order has since expired.]

34. The state of Washington is about to allow any petitioner who obtained an Order in the last five years, even if it was based on protected activity and jurisdiction was asserted through indirect and attenuated contacts, to now simply file a motion asking for further punishment against the Respondent. There is no published civil procedure for these motions, or what the showing must be for a motion to be granted. The state of Washington is soon to codify that: "*the rules of evidence need not be applied*." RCW 7.105.200(8). Further, terms like "frivolous filings" or "libelous communications" are not defined either. These new "motions" are ripe for abuse and must be nipped in the bud quickly. The state of Washington is about to create a new cause of action that codifies prior restraint, lack of due process, and rampant violations of the right to Freedom of Expression.

### iii.    Long Arm Statute is Clearly Unconstitutional

35. Washington's long-arm statute is also facially unconstitutional. A court may only exercise specific personal jurisdiction over individuals with enough contacts within the state where the court is located so that the lawsuit does not offend the due process standard of "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. state of Washington*, 326 U.S. 310, 316 (1945). Simply, "minimum contacts" require purposeful contacts by the defendant with the forum state itself, not the defendant's contacts with persons who reside there. *Walden v. Fiore, 571* U.S. 277, 285 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).

36. Due process prohibits jurisdiction based on "random, fortuitous, or attenuated" contacts. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Walden v. Fiore,* 571 U.S. 277, 286 (2014).  Without a purposeful affiliation with the state, no specific jurisdiction can exist. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017). Just as the Supreme

Court had to strike down the state of California's "loose and spurious" view of personal

jurisdiction in 2017, now it is time for the state of Washington to face review and reform.

37. Here, the following provisions of RCW 10.14.155 (effective until July 1 2022), and

RCW 7.105.080 (effective July 1 2022) are facial violations of the constitutional requirements

for due process:

- (1)(c) The act or acts of the individual or the individual's agent giving rise to the petition or enforcement of a protection order occurred within this state;
- (1)(d)(i) The act or acts of the individual or the individual's agent giving rise to the petition or enforcement of a protection order occurred outside this state and are part of an ongoing pattern that has an adverse effect on the petitioner or a member of the petitioner's family or household and the petitioner resides in this state;
- (2) For jurisdiction to be exercised under subsection (1)(d) of this section, the individual must have communicated with the petitioner or a member of the petitioner's family, directly [*Unlawful*: or indirectly], or made known a threat to the safety of the petitioner or member of the petitioner's family, while the petitioner or member of the petitioner's family resides in this state.
- (3) For the purposes of this section:(a) "Communicated" or "made known" includes the following means: In person, [*Unlawful*: through publication], by mail, telephonically, through an electronic communication site or medium, by text, or through other social media. [*Unlawful*: Communication on any electronic medium that is generally available to any individual residing in the state is sufficient to exercise jurisdiction under subsection (1)(d) of this section. (3)(b) An act or acts that "occurred within this state" include an oral or written statement made or published by a person outside of this state to any person in this state by means included in (a) of this subsection, or by means of interstate commerce or foreign commerce.]

38. Perhaps the opposite of "purposeful contacts directed to a forum state" is **"indirect publications on any electronic medium that is generally available to any individual residing in the state."** If these "loose and spurious" provisions with "random, fortuitous, and attenuated"

contacts are enjoined, Gjovik should no longer have fear having to fight the jurisdiction of

additional arbitrary Petitions against her and instead can move to dismiss due to lack of personal

jurisdiction. With apparently over ten thousand of these restraining orders issues each year, the

current statute is a threat to the entire United States and beyond.[4] Indeed, with the apparent global reach of the state of Washington's harassment statutes, substantively and procedurally, this matter may even implicate foreign affairs concerns.

## VI. BALANCE OF HARDSHIPS

39. While Washington may have legitimate state interests in allowing for restraining orders against harassment, the interest is not compelling as the cause of action overlaps with numerous existing actions and where it does not, it is likely unconstitutional. That is because these laws are not narrowly tailored. Instead, they are sprawling. The output of the Orders is just as unlawful as the statutes that provide the hearing for that Order. By granting a free-form text box for Judges to fill out (Bill of Attainder) in addition to the legislatively defined check-boxes, the state Judges are welcomed to injunct expression, not contact (which is covered already in the form). Proposals for reform from Andrew H. Caplan in a 2013 law review article include ensuring the statutes and process aim injunctions at contact not content, impose reasonable limiting and clarifying construction, consider Anti-SLAPP, and look for "red flag" fact patterns for protected speech. Free Speech and Civil Harassment Orders, 64 Hastings L.J. 781 (April 2013)

40. A restraining order that prohibits content-based speech, like the one against Gjovik and which have previously been granted in the state of Washington,[5] are "injunctions [that] violate the First Amendment, which generally protects the right to criticize people, including

---

[4] "Crime in Washington: 2020 Annual Report," notes 18,002 reports of violations of restraining orders with 8,526 arrests in just 2020, Washington Association of Sheriffs and Police Chiefs, Crime in Washington: 2020 Annual Report, https://www.waspc.org/assets/CJIS/Crime%20In%20Washington%202020-small.pdf

[5] See, *In re Marriage of Suggs*, 93 P.3d 161 (Wash. 2004*); In re Marriage of Meredith,* 201 P.3d 1056, 1062 (Wash. Ct. App. 2009); *Catlett v. Teel*, 477 P.3d 50 (Wash. Ct. App. 2020), etc.

private figures. False, defamatory statements of fact about people can lead to liability, and might even be enjoinable. But that can't justify bans (broad or narrow) on future speech about a person that would cover protected opinion and protected factually accurate allegations, and not just false factual assertions." Eugene Volokh, *Overbroad Injunctions Against Speech (Especially In Libel And Harassment Cases)*, Harvard Journal of Law & Public Policy, Vol. 45, Issue 1, pg 170-171 (Winter 2022). In his article, Volokh examines hundreds of facially unconstitutionally restraining orders issues across the country. *Id* at 226-256. The issue is endemic and Washington has some of the most broad laws.

## VII. NO ADEQUATE REMEDY AT LAW

41. As for the Order against Gjovik and the hearing, see the Emergency Motion for Relief from the "Kafkaesque nightmare" the state of Washington's unlawful statutes has forced her into. (e.g., Docket # 11).

42. Gjovik requires the intervention of the federal courts and equitable remedies to re-establish status quo by enjoining unconstitutional actions by state officers, a remedy which is "deeply rooted in American jurisprudence." *Armstrong v Exceptional Child Ctr. Inc,* 575 U.S. 320, 327 (2015). Due to the vexatious Petitioner who sued Gjovik in state court, who Gjovik has already formally complained to the federal government of witness intimidation about, Gjovik expects to face further retaliatory and threatening litigation from the Petitioner as long as the state laws invite and enable it. The state courts clearly cannot be trusted to uphold the U.S. Constitution as a discretionary matter, and the state Attorney General & legislature cannot be trusted to instruct the courts to uphold the U.S. Constitution as they're even retiring their Constitutional savings provision.

43. Washington might complain about having some of their statutory provisions found unlawful. However, Washington works to pass better laws, they still have their criminal harassment statutes, their domestic violence statutes, and plenty of others.

## VIII. PUBLIC INTEREST

44. It is always in the public's interest to prevent the violation of the U.S. Constitution and of individuals' constitutional rights. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012). "It would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013). Here, in addition to all of the unconstitutional laws, facially and applied, the state of Washington also has the audacity to retire its Constitutional Savings Provision, RCW 10.14.190:

> **Constitutional rights. (Effective until July 1, 2022.)**
> Nothing in this chapter shall be construed to infringe upon any constitutionally protected rights including, but not limited to, freedom of speech and freedom of assembly.

45. In a motion for a preliminary injunction, a court may consider its interest in "efficient administration and judicial economy." Here, if the Order and state hearing are not enjoined, if these facially bad laws stay active, it is entirely possible the state will make Gjovik's situation far worse and thus create even more issues for the federal courts and agencies to have to address. If these overbroad, vague statutes are not restrained, it's likely more people will, and are being, harmed. While preliminary injunctions are rare and for extraordinary situations, the use here would be in support of judicial economy.

46. The public interest favors an injunction, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *New York Times v.*

*Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing the importance of "uninhibited, robust, and wide-open" debate on public issues); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989) (noting that the First Amendment best "serve[s] its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger []").

## IX.   PRAYER FOR RELIEF

47. For these reasons, and for reasons set forth more fully in the Complaint, Gjovik feels she is deserving of preliminary injunctive relief pending final, lawful action from the Court.

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Grant the proposed orders or similar orders, as the court deems appropriate.

B. Issue these orders without any hearing, or schedule an expedited hearing.

C. Grant any other relief as the Court deems just and necessary.

Gjovik respectfully submits that these requests are related to arguments she plans make before Your Honor.

## X.   CERTIFICATE OF SERVICE & DECLARATION OF MEET/CONFER

I hereby certify that on June 21, 2022, I did serve the above Motion for Preliminary Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney General Ferguson as represented by Asst. Attorney General William McGinty.

I hereby declare and certify that per Honorable Richard A. Jones "General Motions Practice" that upon initial contact with the state of Washington on June 9, I informed them of my intent to request emergency injunctive relief on June 16, the state of Washington, per Mr.

McGinty, confirmed they understood. I sent an outline of the motion as soon as I completed legal research and drafting on June 19 2022 and asked McGinty to please discuss the matter during our conference on June 21 2022. Gjovik submits the motion, along with the Emergency Motion, following the conference with Mr. McGinty as he was not able to eliminate the need for this request. (e.g., Dkt # 11, #3 Meet & Confer).

Respectfully submitted,

DATED: June 21, 2022

*Ashley Gjovik*

_____

ASHLEY M. GJOVIK

*Pro Se*

# XI.  PROPOSED ORDER GRANTING

## PLAINTIFF'S EMERGENCY PRELIMINARY INJUNCTION

After review, the Court hereby GRANTS Plaintiffs' Emergency Motion for Preliminary Injunction and ORDERS Defendants State of Washington to:

- Enjoin RCW 7.105.010(35(a) & 10.14.020: "to alarm" and "to annoy" and "or is detrimental" and "legitimate or"

- Enjoin RCW 7.105.010(5)(b) & 10.14.030 "legitimate or"

- Enjoin RCW 7.105.080 & 10.14.155 "or indirectly" and "through publication" and "Communication on any electronic medium that is generally available to any individual residing in the state is sufficient to exercise jurisdiction under subsection (1)(d) of this section. (3)(b) An act or acts that "occurred within this state" include an oral or written statement made or published by a person outside of this state to any person in this state by means included in (a) of this subsection, or by means of interstate commerce or foreign commerce."

- Enjoin RCW 7.105.310(1)(0): "or in frivolous filings against the petitioner, making harassing or libelous communications about the petitioner to third parties, or making false reports to investigative agencies" and "a petitioner may request this relief by separate motion at any time within five years of the date the protection order is entered even if the order has since expired."

- Mandate, RCW 10.14.190, the Constitutional Savings Provision continue in force

Ordered by,

Dated this ___ day of ___, 2022.

_____

UNITED STATES DISTRICT JUDGE

Presented by,

Dated this ___ day of June, 2022.

_____

Ashley M. Gjovik (*pro se*)

# UNITED STATES DISTRICT COURT

for the WESTERN DISTRICT of WASHINGTON at SEATTLE

CASE NO. 2:22-CV-00807-RAJ-BAT

**EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

NOTE ON MOTION CALENDAR: PROSPOSED FOR JUNE 24 (1ST FRIDAY)

*Emergency Relief Required Before Direct Risk of Incarceration on June 30 2022*

*Ashley M. Gjovik* (*pro se*),

Plaintiff(s),

v.

*State of Washington, et al.*

Defendant(s).

## I.   INTRODUCTION

1. Gjovik introduces an emergency motion for preliminary injunctive relief and/or emergency TRO, under 18 U.S.C. 1514, NLRA Preemption, All Writs Act, and Rule 65, to invalidate the state Order against her and stop the open appeal on the matter.  This emergency relief is required to prevent pretrial irreparable injury and to preserve the U.S. District Court's ability to provide relief after a decision on the merits.  *Univ. of Tex. v. Camenisch,* 451 U.S. 390,

395 (1981); *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012). Outside of injunctive and equitable relief, there are no other legal or practical remedies, and at this rate Gjovik's next motion could easily be a writ of habeas corpus. *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

2. Gjovik, a California resident & federal whistleblower against Apple Inc (e.g., Dkt # 10), is currently subject to a content-based, prior-restraint "gag-order" issued against her, ordered by the courts of the state of Washington, empowered by the overbroad and vague laws of the state of Washington, and based on her activities as a federal witness and informant, including with the U.S. NLRB, and based on her publication of already public records related to the witness intimidation. (e.g., Dkt. # 1). The state of Washington Judge based this extraordinary gag-order on the fact that Gjovik "repost[ed] [already public information] to other people" in a federal legal memo and declared that "harassment." (e.g., Dkt. # 1 at pg. 36) The *ex parte* Petitioner had testified she requested the Order against Gjovik because Gjovik filed an NLRB charge in January 2022 against Apple Inc, alleging witness intimidation and retaliation, and naming Petitioner as an agent of Apple Inc in the misconduct. (e.g., Dkt. # 1 #10) (Exhibit D, H).

3. The only information at issue that Gjovik shared unrelated to the witness intimidation, was unintentionally posting on Twitter an already public photo of a cat. (3/1 Transcript, pg 16, 46-47). The Judge specifically noted in her decision, the Order was granted against Gjovik partially on the basis of Gjovik re-posting "information about [a] pet." (3/1 Transcript, pg 16, 46-47). Gjovik currently faces daily risk of incarceration due to complaining to the federal government and the public about federal witness intimidation, and posting a photo of a cat on Twitter. (Exhibit F).

4. The Petitioner for the order was an employee in Apple Inc's "Global Security" team. ..(e.g., Dkt. # 1 at pg. 10). The Order prohibits Gjovik from having contact with the Petitioner

(despite the Petitioner admitting there had been none prior for months), and prohibits surveillance of the Petitioner (despite Gjovik's protests of obstruction to her gathering evidence of Petitioner's ongoing federal witness intimidation). The Order also prohibits Gjovik from making any statements on any medium about Petitioner for five-years. The only exception the Judge provided was that Gjovik could still "testify" to the courts and agencies about her allegations against the Petitioner, thus implying all other speech is forbidden. Punishment for breaking the Order is a gross misdemeanor and contempt of court, with thousands of dollars of fines and up to 364 days of incarceration per violation. RCW 7.21.

5. Under the Order, Gjovik cannot interact with Petitioner, including with the state appeal of the Order. Gjovik cannot talk to lawyers about Petitioner's actions, the appeal, or the Order without apparently violating the Order. Gjovik is unsure what she can tell the government & law enforcement about Petitioner's ongoing witness intimidation. Gjovik's lawyer for the Order unexpectedly withdrew last month and Gjovik has been unable to obtain new counsel despite much effort, forcing Gjovik to take responsibility for drafting and submitting an appellant brief by June 30 2022, which would violate the order in numerous ways and thus lead to risk of multiple years in jail.  In a matter of days Gjovik will be forced to submit and serve an appellant brief which breaks the very Order she must appeal, and delivers evidence of the violation of the very people who can report Gjovik's violation and seek enforcement. If Gjovik takes no actions, she will miss court deadlines and face dismissal with prejudice, sanctions, and fees. King County Superior Court Local Rule 4(g)-(i). There is no path to escape this issue within the state.

6. The state of Washington's interference with Gjovik's federal cases does not appear to be an anomaly, as the state is also codifying that starting July 1 2022. "*The petition may be made regardless of whether or not there is a pending lawsuit, complaint, petition, or other action between the parties.*" RCW 7.105.105(5).  However, state courts are forbidden from entertaining

1    jurisdiction over federally created causes of action if Congress has explicitly or implicitly made

2    federal court the exclusive jurisdiction. *Gulf Offshore Company v. Mobil Oil Corporation*, 453

3    U.S. 473, 477–78 (1981). The state of Washington cannot be trusted to handle this matter

4    properly, as they've already forced Gjovik into this Kafkaesque nightmare.[1]

## II.    EMERGENCY MOTION FOR PRELIMINARY INJ. RELIEF / TRO ON RO

6    7. Gjovik, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Local Rule

7    65, as well as under the All Writs Act, moves this Court for entry of an Emergency Injunction

8    enjoining the Defendant state of Washington from enforcing the "Order" that was applied against

9    Gjovik. .(e.g., Dkt. # 1, Attch # 1, at pg. 13), to directly enjoin the Order and case, and to enjoin

10   the state court proceeding on the matter. (e.g., Dkt. # 10 at pg. 2-3). Gjovik files this motion for

11   Emergency Injunctive Relief to enjoin, vacate, and/or otherwise declare invalid the entire Order

12   against her. Gjovik also files this motion to enjoin, stay, void, or otherwise address the unlawful

13   state court hearing on the Order.

14   8. This Court may order injunctive relief through 28 U.S. Code § 1651, "All Writs Act"

15   powers, or via its other discretionary powers in equity. "[t]he Supreme Court and all courts

16   established by Act of Congress may issue all writs necessary or appropriate in aid of their

17   respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

18   The general rule is a private party may seek federal declaratory and injunctive relief against the

19   enforcement of a state statutory scheme on the ground of federal preemption. *Bud Antle, Inc. v.*

20   *Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994); See *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96

21   n. 14, 103 S.Ct. 2890, 2899, n. 14, 77 L.Ed.2d 490 (1983). While these cases were not against

22   governments, Gjovik is put in a situation where a party *ex parte* to Gjovik's Apple Inc cases,

23

24

---

[1] See: Franz Kafka, The Trial (1925).

EMRG. MOTION FOR. INJ.                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                          (408) 883-4428
                                    - 4 -

sued Gjovik about Gjovik's federal Apple Inc cases. Apple Inc *is ex parte* to the Order. It would

break the Order to sue Petitioner. Gjovik sues the state of Washington out of desperation.

9. "Whereas traditional injunctions are predicated upon some cause of action, an All

Writs Act injunction is predicated upon some other matter upon which a district court has

jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is

no such requirement to obtain an All Writs Act injunction—it must simply point to some

ongoing proceeding, the integrity of which is being threatened by someone else's action or

behavior." *Rohe v. Wells Fargo Bank, N.A.,* 988 F.3d 1256, 1265 (11th Cir. 2021). It is widely

accepted that federal courts possess power under the All Writs Act to issue narrowly tailored

orders enjoining vexatious litigants from abusing the court system by harassing opponents, and

even to impose sanctions. *Newby v. Enron Corp*., 302 F.3d 295, 301 (5th Cir. 2002); *Harrelson

v. U.S.*, 613 F.2d 114, 116 (5th Cir.1980); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 39 (1991).

10. This motion is based on the following grounds:

- The hearing and appeal are unnecessary because the matter is unwarranted & patently unconstitutional and preempted by federal law and powers. (NLRA, 18 U.S.C. 1514).
- The Order is a hopelessly vague, overbroad, and content-based prior restraint. (1st and 14th Amendments).
- The Petitioner testified under oath she requested the Order against Gjovik, based on Gjovik's complaints to the federal government about federal witness intimidation by the Petitioner. (e.g., Dkt. # 1 at pg. 63, 81). (18 U.S.C. 1514).
- The Order was based on fully protected activities under the United States, Washington, and California constitutions: publishing public information and public records about public figures and matters of public concerns; reporting unlawful activities to the government including federal witness intimation and retaliation; publishing reports on legal matters of public concern. (47 U.S.C. § 230, *Kimzey v. Yelp! Inc.,* 836 F.3d 1263, 1270 (9th Cir. 2016), *Catlett v. Teel*, 15 Wash. App. 2d 689, 704, 477 P.3d 50, 59 (2020); RCW 42.56.001, RCW 42.56.550(3), etc.)

- Any further hearings, evidence, briefs, etc Gjovik must provide to defend herself from Petitioner, will further interfere with Gjovik's open federal cases and open Gjovik up to more harm. (18 USC 1514).

11. It's impossible to salvage the Order against Gjovik in any way and thus it must be enjoined in order to protect Gjovik from even more severe, irreparable harm. Pursuant to the All-Writs Act, a federal court may enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the federal suit before it. 28 U.S.C.A. § 1651(a). Gjovik still does not believe she can legally write Petitioner's name in these legal filings. Gjovik also worries in even saying "Petitioner" she is breaking the Order as she is prohibited from making statements about Petitioner's "names" (plural). "**Respondent shall not make any statements or posts or other publications about Petitioner, including but not limited to, petitioner's medical information, petitioner's family, petitioner's names, on any social media or internet or other medium. Nothing about this Order prohibits Respondent from testifying in administrative or judicial proceedings.**" *[REDACATED] v Gjovik*, Case No. 22CIV01704KCX, King County District Court (Mar. 2022). (e.g., Dkt #1, Att #1 at pg 13). This federal proceeding is undermined by Gjovik's inability to provide basic information to the court.

12. Here, this Motion is based on the pleadings on file in the case, the attached Memorandum, Appendix with Exhibits, Docket, and any such other evidence that the Court should hear in this case. This Motion for Injunctive Relief is directly related to the larger matter at issue here, as this Order and the appeal for the Order, are based on, caused by, enabled by, and enforced by the state of Washington's incredibly unlawful statutes. Fortunately, Article III Federal courts have inherent equitable power to grant injunctive relief. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979). *Rodriguez v. Hayes,* 591 F.3d 1105, 1120 (9th Cir. 2010).

13. In addition to NLRA Preemption and 18 U.S.C. § 1514 injunctive relief, statutes for additional pending actions (e.g., Docket # 10, Notice of Pendency), also possess injunctive powers including 29 U.S.C.A. § 662 (OSH Act, "*district court shall have jurisdiction to grant such injunctive relief or temporary restraining order*"); 18 U.S.C. § 1514A (SOX, see *Halliburton, Inc. v. Admin. Rev. Bd., 771 F.3d 254, 264 (5th Cir. 2014)*) finding that SOX provides "*all relief necessary to make the employee whole*" including injunctive relief), and 29 U.S.C.A. § 104 & 29 U.S.C.A. § 107 (federal policy greatly disfavoring labor-related restraining orders).

14.  The Norris-LaGuardia Act is not an issue as the "act does not bar issuance of injunctions to prevent third parties from interfering with labor disputes of others." 29 U.S.C.A. § 101. Here, the labor dispute is between Gjovik and Apple Inc. While Petitioner may have been named in Gjovik's charges, Petitioner is not party to Gjovik's labor dispute with Apple Inc.

### III.  LEGAL STANDARD

15. Complaint and summons were properly served via FRCP 4 and RCW 4.92.020,[2] per the Attorney General's published instructions. (e.g., Dkt  #1).  The court does not have to determine subject matter jurisdiction to order pre-trial injunctive relief. *United States v. United Mine Workers*, 330 U.S. 258, 290 (1947).  Congress, by statute, may require that courts review an application for pretrial injunctive relief under a standard that differs from traditional equitable standards, may be far more lenient. See *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Additionally, in First Amendment challenges to state statutes, standing requirements are quite relaxed. *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 760 (1988). The Court

---

[2] RCW 4.92.020: Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general.

EMRG. MOTION FOR. INJ.                                        PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                              (408) 883-4428

intends to give a platform to the few who are brave enough to step forward on behalf of the many others too fearful to fight back. *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002).

16. The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981); *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 129 S. Ct. 365, 374 (2008) "[W]hen a Plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011).

17. It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction. See *United States v. City of San Francisco*, 310 U.S. 16, 31 (1940); *Atchison, T. and S. F. Ry. Co. v. Lennen*, 640 F.2d, 259–260 (1981). In such situations, it is not the role of the courts to balance the equities between the parties. The controlling issue is whether Congress has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the federal statute prohibits. *Burlington N. R. Co. v. Bair*, 957 F.2d 599, 601–02 (8th Cir. 1992).

18. Because Washington subjects Gjovik to the untenable choice between self-censorship and forsaking her Access to Courts, risking criminal and civil liability, the laws impose irreparable harm, threaten the public interest, and tip the balance of equities heavily in favor of granting a preliminary injunction. Thus, all four *Winter* factors favor the grant of a preliminary injunction. Even the state of Washington agrees with the irreparable harm Gjovik faces. "The

legislature recognizes that persons convicted and imprisoned for crimes they did not commit have been uniquely victimized." Those wrongly convicted suffer "tremendous injustice by being stripped of their lives and liberty." RCW 4.100.010

19. The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This grant of authority is limited by the Anti–Injunction Act, 28 U.S.C. § 2283, which bars a federal court from enjoining a proceeding in state court unless that action is "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004). Here, we have numerous express acts of Congress empowering the court.

### i. Jurisdiction and Authority for Intervention under 18 USC 1514

20. Petitioner directed the state court to Gjovik's "legal memo" in the petition for a restraining order and referenced the memo numerous times during the state hearing. The Judge engaged on this, knowing it was a legal memo, and cited it as part of the basis for the finding of harassment against Gjovik. This "memo" was a hybrid legal memo featuring embedded exhibits, that was paired with a formal brief with lengthy legal analysis. (e.g. Dkt #1, Attch #1, at pg 15). Gjovik had addressed the legal memo at issue to the U.S. NLRB, U.S. Department of Labor, U.S. District Attorney's Office, California Dept. of Justice, and California Dept. of Labor noting her open cases and charges with the above as well was the U.S. SEC & U.S. SEC and under "Charges" included violations of the NLRA, CERCLA, SOX, OSHA, and 18 U.S.C. 1512 & 1513. (e.g., Docket #1, pg. 16-17, Attch. #1 pg. 15). The memo was titled "*Ashley Gjovik v Apple Inc: Intimidation, Threats, & Obstruction | Evidence Report v9*." (e.g., Docket #1, Attch. #1 pg. 15). The U.S. NLRB, U.S. Dept of Labor, and California Dept of Labor confirmed

receipt of the memos and have been actively reviewing the. (e.g., Docket #10, Attch. #1 pg. 6, 7, 14-17).

22. Two of the U.S. statutes Gjovik referenced in the memo were 18 U.S. Code § 1512 which prohibits tampering with a witness, victim, or an informant and 18 U.S. Code § 1513 which prohibits retaliating against a witness, victim, or an informant. (Exhibit H). Gjovik alleged in her complaint and legal memos that Apple Inc has likely violated these federal statutes in their conduct towards her, including but not limited to Petitioner's conduct well before the lawsuit. (Exhibit D & H). Prosecution under these statutes can occur in the district where the protected activities occurred or where the alleged offenses occurred. 18 U.S. Code § 1513(g); 18 U.S. Code § 1512(i). The 2002 Sarbanes-Oxley amendments to the Victim and Witness Protection Act of 1982 expanded the VWPA to criminalize "any act of intentional retaliation" taken against federal informants and witnesses. 18 U.S.C. § 1513(e).

23. 18 U.S.C. § 1514 enables federal courts to engage in civil actions to restrain harassment of a victim or witness, including but not limited to offenses under § 1512 or under § 1513, and action can be initiated by the courts own motion. 18 U.S.C. § 1514(b)(1). *U.S. v. Cofield*, 11 F.3d 413, 418, n.6 (4th Cir. 1993), cert. denied, 510 U.S. 1140 (1994); *U.S. v. Tison*, 780 F.2d 1569 (11th Cir. 1986). With witness intimidation or obstruction; intent or 'endeavor' can be enough." *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976); *United States v. Price*, 951 F.2d 1028, 1031 (9th Cir. 1991).

24. The VWPA commands a court to issue a protective order to prohibit harassment of a witness in a federal criminal investigation. Moreover, "while the [Anti-Injunction Act] generally prohibits federal courts from enjoining state court litigation, the VWPA acts as an exception to the general rule, since it creates 'a specific and uniquely federal right or remedy ... that could be frustrated' in the absence of an injunction." 28 U.S.C. § 2283. 18 U.S.C. § 1514(b)(1). *Mitchum*

*v. Foster,* 407 U.S. 225, 237–38, (1972); *In re Grand Jury Subpoena,* 267 F. Supp. 3d 741, 744–45 (N.D. Tex. 2016), aff'd, 866 F.3d 231 (5th Cir. 2017); *United States v. Tison*, 780 F.2d 1569, 1573 (11th Cir. 1986); *United States v. Lewis*, 411 F.3d 838, 844 (7th Cir. 2005).

25. Actions filed without legitimate purpose may qualify as unlawful harassment and hence constitute an attempt to intimidate or unlawfully influence a witness. See *U.S. v. Lewis*, 411 F.3d 838, 845-46 (7th Cir.2005) (upholding application of 18 U.S.C. § 1514 to enjoin a civil lawsuit filed for illegitimate purposes as witness harassment); *United States v. Tison,* 780 F.2d 1569, 1571-73 (11th Cir. 1986) (same). *United States v. Kilbride*, 584 F.3d 1240 (9th Cir. 2009). As recently as May 24 2022, Petitioner continues to intimidate and tamper with Gjovik, posting publicly in response to an article Gjovik had published calling Gjovik's NLRB charges "frivolous," noting she sent the NLRB "novels" about Gjovik, and arguing Gjovik should not be allowed to have "settlements, supplemental affidavits, [or get] witness testimony." (Exhibit I, Gjovik was made aware and captured this evidence at risk of incarceration)

26. Washington's own statutes also support the policy behind enjoining the state lawsuit and Order here. The purpose of Wash. Rev. Code § 4.24.500-520 is "to protect individuals who make good-faith reports to appropriate governmental bodies." The section provides civil immunity in causes of action asserted in a civil action against a person based on the person's: "(b) Communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; (c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the U.S. Constitution or Washington state Constitution, on a matter of public concern." RCW 4.105.010(2)(b)-(c). Gjovik had introduced a motion under this statute during the February 15 2021 hearing. (e.g., Docket #1, Attch. #1 pg. 35-39). The state judge did not rule on it.

27.  Upon giving notice to file the motion, the proceedings between the parties were to be stayed until entry of an order ruling on the motion. 4.105.030(1)-(3). The provisions of the statute were to be "*broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the U.S Constitution or the Washington state Constitution*." RCW 4.105.901. Enjoining is in line with the public policy of the state of Washington to enjoin and/or stay the state at issue here proceedings, along with enjoining the Order against Gjovik.

### ii.    Jurisdiction and Authority for Intervention under the NLRA

28. Petitioner's testimony, evidence, and petition for the restraining order against Gjovik specifically pointed to Gjovik's NLRB charge against Apple Inc, and an associated legal brief, as somehow annoying, alarming or annoying her. (e.g. Dkt  #1, Attch #1, Exhibit B).  In *Bill Johnson's Restaurants, Inc. v. NLRB*, the Supreme Court found state lawsuits without a reasonable basis (like this petition, simply based on public information and complaints to the government), and made with an unlawful objective (as this petition was an attempt to silence an informant), are not protected under Right to Petition. 461 U.S. 731 (1983). Indeed, retaliatory lawsuits have even been found to constitute retaliation and unfair labor practices. *Id; Power Systems, Inc*., 239 N.L.R.B. 445, 449-450 (1978).  The retaliatory lawsuit can still constitute an unfair labor practice even if the Plaintiff/Petitioner is not directly with the employer. *Ashford TRS Nickel,* NLRB Administrative Judge Opinions, No. 19-CA-032761. Indeed, Gjovik reported the matter. While the NLRB will likely come to similar findings here, the timeline for NLRB decisions and actions is too slow to address the issue at hand.

29. Under the "well established" *Garmon doctrine,* the NLRA preempts state law claims for relief that are based on conduct that is "arguably" protected or prohibited by the NLRA. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959); *Bud*

*Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994). In two exceptions to *Garmon*, the NLRA will not preempt state action which regulates activity of "a merely peripheral concern" to the Act or "where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility." *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994);.*Farmer v. United Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290 (1977). Here, the "order" against Gjovik is judicial lawmaking, thus a state law. The underlying conduct that formed the basis for the state action, was admittedly Gjovik's NLRB charge and legal brief against Apple Inc. Restraining and prosecuting Gjovik for engaging in federal whistleblowing should not be "deeply rooted in Washington's local feelings."

30. The basic concern underlying the *Garmon* doctrine is "the interest in preserving a uniform national labor policy and protecting employees and employers from local regulation which conflicts with the NLRA's centralized regulatory scheme." *Bud Antle, Inc. v. Barbosa,* 45 F.3d 1261, 1270 (9th Cir. 1994). The NLRB and 9th Circuit agreed, "private parties must be empowered affirmatively to invoke the *Garmon* doctrine on their own behalf." *Id.* Further, under the *Machinists doctrine*, states are prohibited from interfering with conduct in the labor-management sphere that Congress intended to be unregulated by either state or federal law. *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132 (1976). The *Machinists doctrine* recognizes that there are areas of labor-management relations not within the jurisdiction of the Board, and thus not subject *to Garmon preemption,* but nonetheless outside the proper scope of state regulation. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 749 1985); *Garmon*, 359 U.S. 236 (1959). Even if some of Gjovik's speech wasn't directly under NLRA/Garmon, Machinists covers the remainder.

31. Congress vested primary jurisdiction over the elaboration of labor policy and the adjudication of labor disputes in the NLRB. See, e.g., N.*L.R.B. v. Truck Drivers Local Union No.*

*449*, 353 U.S. 87, 96 (1957)  The *Garmon doctrine* stands for the principle that potential, rather than actual conflict between a state law claim and federal labor law is sufficient to require preemption of the state law claim. If a claim brought under state law alleges conduct that "arguably" is subject to section 7 or section 8 of the NLRA, "*the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted*." *Garmon* at 359 U.S. 236, 245 (1959). The state Order against Gjovik is in conflict with Gjovik's prior NLRB charge against Apple Inc, and is based on Gjovik's conduct which is "arguably" subject to section 7 of the NLRA (complaining of unfair labor practice and witness intimidation due to her NLRB charges).

32. Preemption under these doctrines does not require that a plaintiff have a remedy before the NLRB, or even that the NLRB will hear the claim in the first place. *Garmon* at 359 U.S. 236 (1959); *Bassette v. Stone Container Corp*., 25 F.3d 757, 759-60 (9th Cir. 1994). Instead, once a court determines that a plaintiff's claim alleges conduct that "arguably" or "potentially" subject to regulation or protection under the NLRA, federal labor law preempts state law and the NLRA has exclusive jurisdiction. *Id.* Retaliatory state lawsuits may also violate Section 8(a)(1) when preempted by the NLRA and violate Section 8(a)(1) of the NLRA when it interferes with NLRB processes. *Id, Motor Coach Employees v. Lockridg*e, 403 U.S. 274, 286-88 (1971*); Garner v. Teamsters Union,* 346 U.S. 485, 490-91 (1953).

33. The NLRA can and has preempted state issued restraining orders. *Carpenters Union Loc. No. 1109 v. N.L.R.B.,* 209 F. App'x 692, 694 (9th Cir. 2006), order amended, cause remanded, 219 F. App'x 654 (9th Cir. 2007), The state court only had "discretionary power to enjoin [an employee] from engaging in violent behavior," but not to enjoin communicating or organizing with other workers, picketing, etc. *Youngdahl v. Rainfair, Inc*., 355 U.S. 131, 139 (1957). A state restraining order based upon an NLRB charge and NLRB legal memo is no doubt

1    preempted by federal law, and a state order prohibiting discussion by a labor organizer against

2    another person involved in labor organizing is also no doubt void.

3        34. Here, Petitioner documented her retaliatory animus in the Petition for a Restraining

4    Order writing "On January 11 2022, [Gjovik] filed an NLRB charge against Apple Inc claiming

5    [Petitioner] was harassing [Gjovik] on Apple's behalf. I have not harassed her. On January 31

6    2022 she published a 'memo' for that charge containing defamatory and private information

7    about me (and others)." (Complaint Exhibit B) Petitioner included a link to the draft of the memo

8    with the URL showing the title as "*U.S. NLRB Ashley Gjovik Apple Inc Jan 10 2022 Charge*

9    *Draft 1.*" (Orig. Complaint Appendix pg 8 of 67, screenshot of Petition, box B). Under "other

10   litigation" petitioner write "*NLRB Charge CA-288816 – charge against Apple Inc which*

11   *contains false/misleading information about me made in bad faith by Ashley Gjovik.*" (e.g.,

12   Docket #1, Att #1, pg 9, screenshot of petition, box 12).

13       35. Petitioner also testified under oath that the NLRB supposedly contacted her and told

14   her she needed to call the police or request a protection order against Gjovik, and also claims the

15   NLRB told her Gjovik's Petition was filed in bad faith. Petitioner testified "*This is what caused*

16   *me to do this, is because the director of security at the National Labor Relations Board believes*

17   *that [Gjovik] filed a charge with the intent to harass me on January 11th…. They contacted me. I*

18   *have a voicemail from them.*" (e.g., Docket #1, pg 81, line 14-20 quoting Feb 1 2021 ex parte

19   hearing transcript). The state Judge asked to hear the voicemail, but Petitioner never provided it

20   and dropped the argument after.

21       36. The U.S. NLRB has denied Petitioner's statements, with Asst. General Counseling

22   telling Gjovik no one gave Petitioner legal advice, directed her to take action against Gjovik, and

23   offered no opinion on the merits of Gjovik's charges. (e.g., Docket #1, Attch #1, pg 67, Exhibit

24   L: NRLB Denials). When the NLRB reviews Gjovik's pending claim against Apple Inc for post-

termination harassment, now including a retaliatory lawsuit, the Petitioner's sworn claims will no doubt be reviewed as part of the charge.[3] Thus, under apparently false pretenses and false statements, Petitioner attempted force Gjovik into an out of state courtroom, to informally introduce cross-claim-like accusations against Gjovik. The questions as to whether Petitioner harassed Gjovik (and if so, if as an agent of Apple) and/or if Gjovik harassed Petitioner, rest on substantially the same facts.

37. It does not matter that Gjovik's NLRB "charges" were not yet docketed cases. As the 8th Circuit wrote, "In our view, it would be absurd to hold that Congress meant to proscribe interference with the administrative process only after a Labor Board proceeding had reached a certain formal stage and let go unpunished individuals who obstruct earlier preliminary proceedings by frightening witnesses into withdrawing charges out of fear for their lives. Congress clearly intended to punish any obstruction of the administrative process by impeding a witness in any proceeding before a governmental agency— at any stage of the proceedings, be it adjudicative or investigative." *Rice v. United States*, 356 F.2d 709, 712–13 (8th Cir. 1966). Other appellate courts have agreed. *United States v. Sutton*, 732 F.2d 1483, 1490 (10th Cir.1984); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976).  The 9th Circuit as recently wrote that it is enough that proceedings were pending or about to be instituted, or that the perpetrator thought they may be and had intent to obstruct. *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013), as amended (Aug. 28, 2013)

38. Finally, the state action has and continues to severely interfere with national labor policy. Gjovik's charges against Apple Inc are strong and unique, it's been expected her charges

---

[3] RCW 9A.72.020 Perjury in the first degree. RCW 9A.72.030 Perjury in the second degree. RCW 9A.72.040 False swearing. RCW 9A.72.050 Perjury and false swearing—Inconsistent statements. RCW 9A.72.110 Intimidating a witness. RCW 9A.72.120 Tampering with a witness. RCW 9.62.010 Malicious prosecution.

may be used to overturn legal precedent for the new pro-labor administration. .*Farmer v. United Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290 (1977).

> "The rule described in Cook's memo and the policies cited in Gjovik's complaint might be deemed legitimate under the Trump-era Boeing standard, but "most if not all" of them would probably be illegal under earlier, more pro-labor precedents, said University of Wyoming law professor and former NLRB attorney Michael Duff. A case like Gjovik's offers the Biden appointees "an attractive vehicle" to establish a precedent more like the pre-Trump ones, which prohibited rules that workers could "reasonably construe" as banning legally protected activism, Duff said in an email." -Bloomberg, October 12 2021[4]

Gjovik's SOX, CERCLA, & OSHA cases have also been noteworthy, even included on the front page of the Financial Times on Dec 13 2021.

> "The US Department of Labor is investigating Apple over claims that it retaliated against an employee who complained of workplace harassment and unsafe working conditions. Ashley Gjovik, 35, had been a senior engineering program manager for six years at Apple when she was fired in September for allegedly leaking confidential information. An employment lawyer and an expert in US whistleblowing law, said the burden of proof needed for the agency to open an investigation was high, as the employee must have already established enough evidence that, unless rebutted, would prove the case. He said the case would be closely watched because it was especially rare for a labour dispute with Big Tech "to break into the public" domain. The labour department rarely investigated such cases, he added, because of the widespread use of non-disclosure agreements to "silence and intimidate whistleblowers".[5] -Financial Times, Dec 13 2021

39. The state of Washington knowingly intruded into a high-profile, high-stakes federal investigation to make its own decision on questions of facts and law the federal government was already considering. The state court did not have subject matter jurisdiction to hear the claim. *Garner v. Teamsters,* 346 U.S. 485 (1953) (grievance within jurisdiction of National Labor Relations Board to prevent unfair labor practice not subject to relief by injunction in state court).

---

[4] J. E., Apple CEO's Anti-Leak Edict Broke Law, Ex-Employee Alleges, Bloomberg, (October 12 2021), https://www.bloomberg.com/news/articles/2021-10-12/apple-ceo-s-anti-leak-edict-broke-the-law-ex-employee-alleges

[5] Apple faces probe over whether it retaliated against whistleblower, US labour department inquiry follows claims by ex-senior engineering program manager, Financial Times (Dec 13 2021), https://www.ft.com/content/973aae8d-21d9-4e84-8912-ead071c7935d

1  There is statutory injunctive relief within the NLRA, expressing Congress' wish that the NLRA

2  include injunctions and equitable relief. National Labor Relations Act 10(j).

### IV. IRREPARABLE HARM ABSENT RELIEF

4  40. The Ninth Circuit makes clear that a showing of immediate irreparable harm is

5  essential for preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d

6  668, 674 (9th Cir. 1988), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

7  2011). The irreparable harm here is clear and indisputable. However, it is "well established that

8  the deprivation of constitutional rights unquestionably constitutes irreparable injury," *Melendres*

9  v. *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "Unchecked retaliation subverts" federal law and

10  "the resulting weakened enforcement of federal law can itself be irreparable harm in the context

11  of a preliminary injunction application." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir.

12  2010)

13  41. Here, Petitioner submitted her petition for an order against Gjovik because of

14  Gjovik's NLRB charge, and in the petition, Petitioner called Gjovik's federal charges "meritless"

15  and made "in bad faith." Petitioner directly challenged a legal brief Gjovik had submitted to the

16  federal government, that among many other things, accusing Petitioner of federal witness

17  intimidation. Petitioner went to state court to get a ruling that Gjovik's accusations of federal

18  witness intimidation to federal courts was "harassment" under state laws. (Exhibit). The 9th

19  Circuit has ruled that when a person named by a witness, files a "a lawsuit days before the

20  witness was scheduled to testify against [that person, it] constituted an attempt to threaten or

21  intimidate [the witness] into not testifying at his trial." *United States v. Kilbride,* 584 F. 3d 1240,

22  1241-42 (9th Cir. 2009); *United States v. Sandhu No.* 2:15-cr-00231-GEB-1 (E.D. Cal. May. 12,

23  2017).

24

EMRG. MOTION FOR. INJ.
CASE NO. 2:22-CV-00807-RAJ-BAT

PO BOX 119 SANTA CLARA, CA 95050
(408) 883-4428

42. Gjovik's injury is fairly traceable to the state of Washington. State of Washington has even codified its liability for personal harm, saying "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090. In actions and claims against the state of Washington, the state has designated that the "attorney general or an assistant attorney general shall appear and act as counsel for the state. The action shall proceed in all respects as other actions." RCW 4.92.030

43. Gjovik's fear of arrest and incarceration due to conduct fully protected by the U.S. Constitution is direct, imminent, and understandable with the legacy and ongoing cases and controversies related to misconduct by Seattle' law enforcement, including the Seattle police being subject to the terms of a Federal Consent Decree since 2012.[6] *U.S. v Seattle*, Case 2:12-cv-01282-JLR, Western Washington District Court (2012).

## V. LIKELIHOOD OF SUCCESS ON THE MERITS

44. The matter at hand is patently unconstitutional. Because all Twitter posts (despite simply containing public records, public information, and viewpoint) were deleted out of fear before the full hearing, and the only matter that was ripe & at issue was Gjovik's legal memo which, as the Petitioner admitted, contained public information (put forward as evidence).. (e.g., Dkt. # 1 at pg. 59). The basis of the Order was unlawful under Washington's own laws as, "Course of conduct [] does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of course of conduct." RCW

---

[6] U.S. DOJ, Investigation of the Seattle Police Department (2011), https://www.justice.gov/sites/default/files/crt/legacy/2011/12/16/spd_findletter_12-16-11.pdf; *Reform for a City with a Legacy of Police Corruption*, Seattle Magazine (2017), https://seattlemag.com/article/reform-city-legacy-police-corruption, Re: Request to Investigate Pattern or Practice of Misconduct by Seattle Police Department, ACLU (2010), https://www.aclu-wa.org/pages/re-request-investigate-pattern-or-practice-misconduct-seattle-police-department ; Timeline of Seattle Police Accountability, ACLU, (2020), https://www.aclu-wa.org/pages/timeline-seattle-police-accountability

7.105.010(5)(a); RCW 10.14.020(1). Further, starting in July 1 2022, Orders "shall not prohibit the respondent from exercising constitutionally protected free speech." RCW 7.105.310(2).

45. The petition, hearing, and Petitioner's evidence consisted of further witness intimidation, including several accusations that Gjovik's charges and cases were meritless and made in bad faith, as well as and persistent demands for Gjovik to modify her federal charges including removing specific evidence and dropping allegations against Petitioner as a named agent of Apple. (Exhibit A) Despite Gjovik's numerous motions and objections, pleading for her U.S. Constitutional rights, for protection as a witness and informant, and for the state court to cease intervening in federal matters -- the state court did not. (e.g., Dkt. # 1 at pg. 73-74). Ultimately under the supervision and oversight of Washington's Attorney General and Governor, the state issued an Order based on their statutes, against Gjovik, prohibiting Gjovik from talking about the witness intimidation, from gathering evidence of the continued intimidation.

46. Here, none of the abstention doctrines apply for legal and federalism policy reasons. The state of Washington intruded upon the powers of the federal court and agencies as well as the agencies of the state of California, through is highly Unconstitutional personal jurisdiction statute. The state of Washington allowed a Court of Limited Jurisdiction to create res judicata and Full Faith & Credit issues for ongoing federal cases and investigations. The U.S District Court will not be intruding upon state matters, it will be restoring the proper jurisdiction of these matters and ensuring the state of Washington does not further impede upon federal proceedings.

47. Well before the state matters were initiated, Gjovik cases already invoked federal jurisdiction. The federal court's determination of its own jurisdiction would preclude the state court from finding such jurisdiction lacking. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979): If states can insulate their unconstitutional enactments from federal judicial review, then states like Washington can effectively disregard the rights protected by the

Federal Constitution, thus violating the Framers' dictate that *"[t]his Constitution ... shall be the supreme Law of the Land,"* U.S. Const. art. VI. Further, here the U.S. District court is implicitly and explicitly authorized to act by numerous acts of U.S. Congress.

48. There are no sensitive matters of state social policy here. The state of Washington was afforded a reasonable opportunity to pass on their statutes, to apply their law in Gjovik's case, and in doing so they stripped Gjovik of many of her core federal Constitutional rights and severely interfered with her ongoing federal litigation. Gjovik and her prior counsel made numerous objections to the state court with concerns violations of the U.S. Constitution and interference with federal statutes, but the court insisted on proceeding despite. The vague and overbroad statutes at issue here are still ripe for Petitioner to weaponize in her continued fervent attacks against Gjovik. *Railroad Commission v Pullman Co*, 312 U.S. 496 (1941).

## VI.   NO ADEQUATE REMEDY AT LAW

49. As of filing this Motion, Gjovik was been unable to obtain a new lawyer for her state Superior Court appeal of the restraining order against her, following her prior counsel's sudden withdrawal. Gjovik has contacted dozens of lawyers and firms, and even utilized the intake and assistance of EFF, ACLU, and NLG to no avail. This matter is so unfortunately and inextricably linked to Gjovik's ongoing, complex litigation against Apple Inc, the subject matter has become prohibitory for obtaining legal assistance.

50. As of filing this Motion, Gjovik appears to be forced to draft her own brief for the Superior Court appeal and provide service of it upon the Petitioner, in direct violation of the restraining order against Gjovik. In order for Gjovik to appeal this case within the state court system, Gjovik would be compelled to violate the Order against her and deliver proof of that violation to the Petition who then could report her and trigger Gjovik's incarceration. Even for Gjovik to withdraw the pending appeal, she would have to contact Petitioner, which would

violate the order. If Gjovik does nothing, she could face a default judgement or contempt of court. The Order only allows for Gjovik to "*testify[] in administrative or judicial proceedings.*" Both Black's definition and plain meaning of "testify" note *"to make a solemn declaration under oath for the purpose of establishing a fact (as in a court)."*[7] This appears to exclude legal complaints.

51. Even if Gjovik was able to obtain counsel in time, Gjovik would be forced to hire and pay legal fees for an attorney get up to speed on Gjovik's numerous, complex cases against Apple Inc. Gjovik would also violate the Order by talking to the lawyer about the matter. Further, as part of any further participation in the state court process, Gjovik will be forced to subject herself to more forced testimony about her federal matters, evaluation of her federal charges and cases by a state judge without jurisdiction over the matters, and opening herself up for more witness intimidation and tampering. As long as these vague, overbroad, and unconstitutional statutes are in place, Gjovik remains at direct risk of further retaliatory litigation by the vexatious Petitioner.

52. Washington courts also requires a "preponderance of evidence" to prove harassment. RCW 10.14.080(3), 7.105.225(1). The transcript shows the Judge did not note any specific evidence reviewed or analyzed during the hearing. The Judge appeared to rely solely on hearsay. (Exhibit C & E). This does not appear to be an anomaly as one of Washington's new statutes on July 1 2022 codifies this approach saying "*the rules of evidence need not be applied.*" RCW 7.105.200(8). If Gjovik's burden upon appeal is to argue to the Superior Court Judge that there was no clear and convincing evidence of harassment, but by August the state also codified that the "rules of evidence need not be applied," Gjovik has not hope for a fair appeal.

---

[7] "Testify." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/testify. Accessed 19 Jun. 2022.; "Testify" Black's Law Dictionary, 2nd Edition.

53. Gjovik requires the intervention of the federal courts and equitable remedies to re-establish status quo by enjoining unconstitutional actions by state officers, a remedy which is "deeply rooted in American jurisprudence." *Armstrong v Exceptional Child Ctr. Inc,* 575 U.S. 320, 327 (2015). Modifications to Gjovik's Order and the hearing should be a positive for the state of Washington, as they are no longer assisting in alleged retaliation against a safety whistleblower.

## VII. PUBLIC INTEREST

54. It is always in the public's interest to prevent the violation of the Constitution and of individuals' constitutional rights. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012). "It would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013).

55. In a motion for a preliminary injunction, a court may consider its interest in "efficient administration and judicial economy." Here, If the Order and state hearing are not enjoined, it is entirely possible the state will make the situation far worse and thus create even more issues for the federal courts and agencies to have to address. The public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing the importance of "uninhibited, robust, and wide-open" debate on public issues); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989)

56. This injunction would not bind or otherwise impact the ex parte Petitioner, other than Gjovik now being free to report Petitioner's unlawful activity to the government and collect evidence of Petitioner's witness intimidation, without fear of incarceration for doing so. Gjovik has no plan, intention, or desire to make any direct contact with Petitioner whatsoever. In fact, Petitioner has continued to be blocked from contacting Gjovik via any of Gjovik's accounts since September 2021, and Gjovik has no plans to alter that either. During the state hearing Gjovik

only requested nominal ($1.00) damages in her motions to dismiss, and similarly now asks for nothing more than her freedom.

.

## VIII. PRAYER FOR RELIEF

57. For these reasons, and for reasons set forth more fully in the Complaint, Gjovik feels she is deserving of emergency injunctive relief either permanently or temporarily pending final action from the Court.

WHEREFORE, Plaintiffs respectfully request that the Court:

- A. Grant the proposed order or similar order, as the court deems appropriate.
- B. Issue this order without any hearing, or in the alternative, schedule an expedited hearing on the emergency motion so relief may be granted before June 30 2022.
- C. Grant the relief as a permanent injunction, but if not, then grant as temporary.
- D. Grant any other relief as the Court deems just and necessary.

## IX. CERTIFICATE OF SERVICE & & DECLARATION OF MEET/CONFER

I hereby certify that on June 21, 2022, I did serve the above Motion for Preliminary Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney General Ferguson (as represented by Asst. Attorney General William McGinty).

I hereby declare and certify that Per Honorable Richard A. Jones "General Motions Practice" that upon initial contact with the state of Washington on June 8, I informed the state of Washington of my intent to request emergency injunctive relief and on June 16, the state of Washington, per Mr. McGinty, confirmed he understood. I sent a notice of timing for the motion on June 19 2022 and sent an outline and draft of the motion as soon as I completed legal research

and drafting on June 20 2022. I asked Mr. McGinty to please discuss the matter during our conference on June 21 2022 as I planned to submit shortly after. Gjovik submits the motion following the conference with Mr. McGinty as he was not able to eliminate the need for this request. (Attached: Meet and Confer)

This motion was attempted to be scheduled pursuant to Local Civil Rule 7(d), though while it may qualify as a hybrid-TRO, Gjovik noted for end of week as to give the Court time to review. Gjovik apologizes for any mistake or inconvenience.

Gjovik's NLRB affidavits can be submitted to the court under seal and per request.

Respectfully submitted,
DATED: June 21, 2022

*Ashley Gjovik*

_____
ASHLEY M. GJOVIK
*Pro Se*

## X.   PROPOSED ORDER GRANTING

## PLAINTIFF'S EMERGENCY PRELIMINARY INJUNCTION

After review, the Court hereby GRANTS Plaintiffs' Emergency Motion for Preliminary

Injunction and ORDERS Defendants

State of Washington to:

- Enjoin the state court proceedings (22-2-03849-7)

- Enjoin the order against Gjovik (22CIV01704KCX)

- Enjoin the state of Washington from censoring, limiting, or hindering Gjovik as a federal

   witness and informant against Apple Inc, by assistance to Petitioner or otherwise.


Ordered by,

Dated this ___ day of ___, 2022.


_____

UNITED STATES DISTRICT JUDGE


Presented by,

Dated this ___ day of June, 2022.


_____

Ashley M. Gjovik (*pro se*)

# MOTION FOR JUDICIAL NOTICE EXHIBIT

## SECTION:

2/1/21 Ex Parte Hearing Transcript



**FILED**



APR 0 6 2022

KCDC - East Division
Redmond

## KING COUNTY DISTRICT COURT
## REQUEST FOR COURT RECORD

**Requestor's Information**

| | |
|---|---|
| Name: Scott Bride | |
| Agency/Company: McDermott Will & Emery LLP | |
| Address: 500 N. Capitol St. NW | |
| State, City, Zip Code: Washington, DC 20001 | |
| Phone: (202) 756-8467 | |
| Email: sbride@mwe.com | |

Case Number: 22 CIV 01704 KCX

**Full names of Parties.**
Plaintiff: Cher Swan Scarlett
Defendant: Ashlie Marie Gjovik

**Fees**

| Certified Copies | $5.00 to certify the first page of the document. |
|---|---|
| | $1.00 per each additional page. |
| Regular Copies | $0.25 per page if it is an electronic document. |
| | $0.50 per page if it is not an electronic document. |
| Copy of Hearing | $10 per CD or Thumb Drive |

**Recording of Hearing**

| Date | Time | Courtroom | Certified Copies? |
|---|---|---|---|
| 3/1/2022 | | East Division, Redmond | ☐Yes ■No |
| 2/15/2022 | | East Division, Redmond | ☐Yes ■No |
| 2/1/2022 | | East Division, Redmond | No |

**Request for Document(s)**

| Name of Document: | Certified Copies? |
|---|---|
| 1. | ☐Yes ☐No |
| 2. | ☐Yes ☐No |
| 3. | ☐Yes ☐No |
| 4. | ☐Yes ☐No |
| 5. | ☐Yes ☐No |

*Add an additional sheet for more documents.

Dated: April 5, 2022                    Scott Bride
                                        Requester's Signature

You may submit your request in person via fax, or email. kcdc.webmaster@kingcounty.gov.
For additional information contact: 206-205-9200.

**Internal Use Only:**
Amount Due: $ 10.00  Payment Received: ☒Yes ☐ No        Clerk initials ETC

Request for Court Records
KCDC – September 2017



FILED

MAR 0 4 2022

KCDC - East Division
Redmond



## KING COUNTY DISTRICT COURT
## REQUEST FOR COURT RECORD

### Requestor's Information

Name: RICHARD KOHNENBERGER
Agency/Company: WASH. LEGAL
Address: 2225 4TH AVE
State, City, Zip Code: SEATTLE 98121
Phone: 206 374-0100
Email: _____

| Case Number: | |
|---|---|
| **Full names of Parties.** | |
| Plaintiff: | |
| Defendant: | |

### Fees

| Certified Copies | $5.00 to certify the first page of the document. $1.00 per each additional page. |
|---|---|
| Regular Copies | $0.25 per page if it is an electronic document. $0.50 per page if it is not an electronic document. |
| Copy of Hearing | $10 per CD or Thumb Drive |

### Recording of Hearing

| Date | Time | Courtroom | Certified Copies? |
|---|---|---|---|
| | | | ☐Yes ☐No |
| | | | ☐Yes ☐No |

### Request for Document(s)

| Name of Document: | Certified Copies? |
|---|---|
| 1. Court ordered. Protection order | ☐Yes ☒No |
| 2. | ☐Yes ☐No |
| 3. | ☐Yes ☐No |
| 4. | ☐Yes ☐No |
| 5. | ☐Yes ☐No |

*Add an additional sheet for more documents.

Dated: 03/04/2022 _____     _____
                                    Requester's Signature

You may submit your request in person via fax (206-205-0450), or email.
kcdc.webmaster@kingcounty.gov.
For additional information contact: 206-205-9200.

**Internal Use Only:**
Amount Due: $ 1.00  Payment Received: ☒Yes ☐No     Clerk initials ETC

Request for Court Records
KCDC – September 2017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

## SECTION:

Gjovik's anti-SLAPP

**Ashley M. Gjovik**
Juris Doctor Candidate
Public International Law Certificate Candidate
Santa Clara University, Class of 2022

# State of Washington, King County District Court

# East Division, Redmond Courthouse

MS. CHER SCARLETT

            Petitioner,

   v.

MS. ASHLEY GJOVIK

           Respondent.

**Case No.:** 22CIV01704KCX

**Order** re: Petition/Motion Harassment

**Trial Date:** Feb 15 2022

**Honorable Judge Lisa O'Toole**

**Motions:**

**Dismissal with Prejudice under**
- RCW 5.105.020 (Anti-SLAPP)
- RCW 4.24.510 (Public Policy)

**Counter-Claim**
- Civil Rule 11 Sanctions
- Fines under RCW 4.84.185

## State of Washington | King County District Court
### East Division, Redmond Courthouse
ORDER RE: PETITION/MOTION HARASSMENT | No. 22CIV01704KCX

# Respondent's Motions

# Dismissals

## Motion 1: Dismissal due to UPEPA (RCW 5.105.020)

Scarlett failed to establish a prima facie case as to each essential element of harassment, thus under RCW 4.105.060(1)(i), the case should be dismissed with prejudice & noting under RCW 4.105.090 that the Gjovik prevailed under the motion. Scarlett's request for a harassment order against Gjovik is not grounded in fact or law. The request also serves an improper purpose as it attempts to further intimidate and retaliate against a federal and California state witness, victim, and informant. Scarlett's request is an extension of her concerted effort to coerce Gjovik to withdraw, alter, and omit statements to government bodies, statements on issues under consideration by government bodies, and chill, if not restrict, Gjovik's exercise of First Amendment free speech on matters of public concern.

UPEPA (RCW 4.105.010) applies to no-contact orders (9) if the requested order against Respondent arises from any act of Respondent, related to the gathering, receiving, posting, or processing of information for communication to the public, for the creation, dissemination, exhibition, or promotion of a literary, political, or journalistic work regardless of the means of distribution, no matter the method or extent of distribution. As noted in RCW 5.105.901, the state of Washington's Anti-SLAPP laws are to be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Washington state Constitution.

**Gjovik's Demand**:
- Dismissal with prejudice

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

## State of Washington | King County District Court
### East Division, Redmond Courthouse
ORDER RE: PETITION/MOTION HARASSMENT | NO. 22CIV01704KCX

## Motion 2: Dismissal due to Public Policy (4.24.510)

Scarlett threatened, harassed, and coerced Gjovik to withdraw allegations about her from Gjovik's government charges to at least the U.S. NLRB. Scarlett is using this this petition to further intimidate Gjovik and is using a civil action to deter Gjovik who simply wishes to report information to federal agencies. RCW 4.24.510 was enacted to protect whistleblowers exactly like Gjovik from actors exactly like Scarlett. Scarlett's extensive Tweeting the last two weeks about filing this request, ordering a process server, the "first hearing," Tuesday's hearing, and her plans to "testify" to Washington legislatures this week about Gjovik; do not just intimidate Gjovik, but Scarlett's statements intimidate other Apple employees who might want to report Apple's unlawful actions to the government but who are now in fear of being publicly attacked by Scarlett like Gjovik has been for months.

RCW 4.24.500 was enacted to protect good faith communications to government agencies, noting: "information provided by citizens concerning potential wrongdoing is vital to effective law enforcement and the efficient operation of government. The legislature finds that the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. RCW 4.24.510 provides immunity from civil liability for communications to government agencies. The law states: a person who communicates a complaint or information to any branch or agency of federal or state government is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense <u>and in addition shall receive statutory damages of ten thousand dollars.</u>

<span style="color:red">**Gjovik's Demand**</span>:
- Dismissal with prejudice
- Good faith waiver of the $10,000 statutory fine
- Request of Nominal Damages of $1.00

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

## State of Washington | King County District Court
### East Division, Redmond Courthouse
ORDER RE: PETITION/MOTION HARASSMENT | NO. 22CIV01704KCX

# Fines & Sanctions

## Motion 3: Frivolous Claims (RCW 4.84.185)

Scarlett's request for this order was frivolous & advanced without reasonable cause. Thus, Scarlett should pay reasonable expenses to Gjovik for costs incurred in opposing the acting. Courts have inherent authority to facilitate the orderly administration of justice. RCW 2.28.010(3) provides that "every court of justice has power to provide for the orderly conduct of proceedings before it or its officers." This authority provides broad power for courts to address abusive litigation tactics.[1]

**Gjovik's Demand**:
- Nominal Damages of $1.00

---

[1] *Yurtis v. Phipps,* 143 Wn. App. 680, 693, 181 P.3d 849 (2008) ("In Washington, every court of justice has inherent power to control the conduct of litigants who impede the orderly conduct of proceedings. Accordingly, a court may, in its discretion, place reasonable restrictions on any litigant who abuses the judicial process.")

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

## State of Washington | King County District Court
### East Division, Redmond Courthouse
ORDER RE: PETITION/MOTION HARASSMENT | NO. 22CIV01704KCX

## Motion 4: Civil Rule 11 Sanctions (Sua Sponte)

Scarlett's request for this order was the type of abusive litigation tactics which Rule 11 was established to curb. The request was baseless, not grounded in fact, not warranted by law or good faith argument, and was submitted for improper purposes: to harass & intimidate, to coerce withdrawal of legal charges, to retaliate, and to delay administrative investigation into the Scarlett.

Scarlett's request is abusive to the judicial system, disrespectful to the time and resources of the Washington courts, and is in itself procedural harassment.[2] Rule 11 applies to every motion submitted to the court, including no-contact orders.[3] Self-represented litigants may be sanctions under Rule 11.[4]

**Gjovik's Demand**:
- Nominal Damages of $1.00
- Large sanction on any future meritless and/or retaliatory litigation against Gjovik in Washington state courts [5]

---

[2] *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).
[3] *Miller*, 51 Wn. App. at 302- 03 (holding that an affidavit was improper under CR 11); *MacDonald v. Korum Ford*, 80 Wn. App. 877, 881-82, 912 P.3d 1052 (1996) (holding that party violated CR 11 because it pursued claim even after deposition revealed it to be frivolous).
[4] *In re Lindquist*, 172 Wn.2d 120, 136, 258 P.3d 9 (2011).
[5] Washington Courts, *DV Manual for Judges 2015 Appendix H-10 Washington State Administrative Office of the Courts,* https://www.courts.wa.gov/content/manuals/domViol/appendixH.pdf

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

Appleseed's Evidence
(submitted as one PDF total 86 pages)

| Help Center

FILED

FEB 1 5 2022

KCDC-East Division
Redmond Courthouse

22CIV01704KCX

Requests

# ▶Report copyright infringements and abuse
# 2022-02-06 10:32:09 Solved

FILED

FEB 1 5 2022

KCDC-East Division
Redmond Courthouse

**Ticket details**

Cher Scarlett

2 days ago

**THIS IS AN OFFICIAL NOTIFICATION THAT A USER OF SCRIBD OR SLIDESHARE (choose one): ***

has posted my personal information to Scribd or SlideShare.

**Please list the URL(s) on Scribd or SlideShare where the material is found: ***

https://www.scribd.com/document/555822358/Ashley-Gjovik-v-Apple-Inc-Propaganda-Campaign-Final-v4

**Describe, in as much detail as possible, the nature of the personal information and the exact page(s) where it is located: ***

My name is mentioned in this document nearly 400 times ("Cher Scarlett"), and the majority of it is republication of my tweets (which I own, per Twitter's content publication rules), and republication of my Medium posts (which I own, per Medium's content publication rules).

Most all of the content includes personal information about me, including linking to an old wedding registry containing more former legal name and the name of my husband, my medical diagnoses and other medical and or otherwise private, personal information that would be redacted via FOIA per HIPAA, my former legal name, which I changed for a safety reason and was found just by King County courts in Washington State to not have to be published together because it would pose a threat to my person. Much of the content is also containing republications of my family members' social media accounts, which she found by cyberstalking, and publishing their names. I am a public figure in the space we are working in, and my family members have now faced harassment because she has connected them to me publicly and pointed to their social media accounts without my or their consent.

I am seeking an anti-harassment order against her to stop her from posting such content, but it would be

helpful if your company would take it down before it continues to do further harm to me and my family.

CS v AG, KING COUNTY DISTRICT COURT, 22CIV071704KCX

**Was this content published by a state,** No
**local, or Federal government or court**
**of law in the United States?** *

**Email address:** *                         me@cher.dev


Delaney
1 day ago

Thank you for contacting Scribd. This content was removed. It may take several days for Google and other search engines to remove deleted links from their indexes.
Best regards,
Delaney
Copyright, Abuse, & Privacy Specialist
Scribd, Inc.

Questions? https://support.scribd.com/hc

Cher Scarlett
1 day ago

She has re-uploaded the document.

https://twitter.com/ashleygjovik/status/1490816438667341824?cxt=HHwWgMCjwd_puLApAAAA

https://www.scribd.com/document/557503681/Gjovik-v-Apple-Intimidation-Campaign-Evidence-Report

Thank you for your urgency,

Cher

Cher Scarlett
7 hours ago



**Ashley M. Gjøvik** @ashleygjovik · 14m ···

After multiple unexplained deletions of my extensive reporting on evidence of Apple's campaign of retaliatory & coercive intimidation, threats, & propaganda, I've now uploaded the report to my personal website instead of @Scribd.

ashleygjovik.com/uploads/1/3/7/...

**Ashley M. Gjovik**
Juris Doctor Candidate & Public International Law Certificate Candidate
Santa Clara University, Class of 2022

For Submission To:

- **U.S. NLRB**: Region 32 & Office of General Counsel
- **U.S. Department of Labor**: Whistleblower Protection Program
- **U.S. Attorney's Office**: Northern District of California
- **California DOJ**: Office of the Attorney General
- **California Department of Labor**: DIR Labor Commissioners

MS. ASHLEY GJOVIK

Complainant,

v.

APPLE INC., *et al.*,

Respondent.

**Case No.:**
U.S. Dept of Labor: 9-3290-22-051
U.S. NLRB: 32-CA- 282142, 283161, 284428 & 284441, & 288816
U.S. EEOC 556-2021-00608
U.S. SEC: 16304-612-987-465 & 16353-506-600-213
CA Dept of Labor: RCI-CM-842830

**LEGAL MEMO**
**Date Action filed**: February 7, 2022

**Charges**:
National Labor Relations Act §8(a)(1)
National Labor Relations Act §8(a)(4)
CERCLA, 42 U.S.C. §9610
SOX 18 U.S.C.A. §1514A
OSHA §11(c) 29 U.S.C. §660
18 U.S.C. §1512(a),(b),(c),(d)
18 U.S.C. §1505
18 U.S.C. 1513
18 U.S.C. §371
18 U.S.C. §876
Dodd-Frank 15 U.S.C. §78u-6(h)(1)(A)(iii)
Racketeer Influenced & Corrupt Organizations Act
Civil Rights Act Title VII, 42 U.S.C. §2000e
CA Labor Code §232.5, §6310, §1102.5, §6399, & §132(a)

1 2 2

⌃ 0 ratings  •  768 views  •  281 pages

# Ashley Gjovik V Apple Inc - Propaganda Campaign - Final v2

**Original Title:** Ashley Gjovik v Apple Inc - Propaganda Campaign - Final v2

Uploaded by Ashley M. Gjøvik

Ashley Gjovik v Apple Inc - Propaganda, Threats, & Retaliation Campaign Evidence Report for US NLRB, US DoL, & CA DoL  Full description

Save    0%    0%    Embed    Share    Print

**Download now**

1    of 281    🔍    🔍

Q Cher Scarlett

Showing **355** results for Cher Scarlett

as current and ex-Apple employees (**Cher**     3
**Scarlett**, Shantini Vyas, Amanda Harrison, Kev
Ki

Inc, (through at least the actions of **Cher**     4
**Scarlett** and

Ricky Mondello and ex-Apple employees **Cher**  5
Scarlett and Shantini Vyas and other Apple

U.S. NLRB; U.S. DEPT OF LABOR; CALIFORNI
ASHLEY GJOVIK V APPLE INC | PROPAGANDA

HARASSMENT CAMPAIGN EVIDENC

CS v AG, KING COUNTY DISTRICT COURT, 22CIV071704KCX

 **Ashley M. Gjøvik**
@ashleygjovik
···

I recommend you this send the Document Retention notices + some sort of C&D missive to them now.

Known Managers: Ricky Mondello, Faye Garfinkle

Suspected Mgs: Rob Marini, Brad Reigel

Known ICs: Cher Scarlett/Stewart, Shantini Vyas, Kev Kitchens, Amanda Harrison

Sus ICs: TBD

2:18 PM · Jan 11, 2022 · Twitter Web App

**3** Retweets   **1** Quote Tweet   **8** Likes

← **Thread**



**Ashley M. Gjøvik**
@ashleygjovik

I guess it makes sense now that these months of targeted harassment & defamation against me that seemed to try to get me to give up/kill myself, are starting to appear orchestrated by an Apple coworker who used to openly brag about trying to destroy me to the point of suicide.

3:50 PM · Jan 11, 2022 · Twitter Web App

**1** Quote Tweet   **15** Likes

      

   Tweet your reply   

   **Ashley M. Gjøvik** @ashleygjovik · Jan 11
Replying to @ashleygjovik

Everyone kept asking, why on earth is Cher Scarlett doing this to you? What motive does she have to do such awful things?

Best guess was: she works in Apple Legal/Security; she's already getting a payout from Apple

But, THIS, this connects all the dots. It all makes sense now.

♡ 3        �ↄ        ♡ 13

 **Ashley M. Gjøvik**
@ashleygjovik

Replying to @ashleygjovik @WarriorWomen4Y and 3 others

On Dec 31 2021 I req Scarlett cease & desist all contact with me, defamation of me, & stop harassing my friends or I will request a restraining order

Since that warning she tried to SWAT me, got me banned from Wikipedia, & sent me threatening emails

Plz do not encourage contact

6:45 PM · Feb 12, 2022 · Twitter Web App

CS v AG, KING COUNTY DISTRICT COURT, 22CIV07P704KCX



# Complaint Referral Form
# Internet Crime Complaint Center

## Victim Information

Name: Cher Swan Scarlett
Are you reporting on behalf of a business? No
Business Name:
Is the incident currently impacting business [None]
operations?
Age: 30 - 39
Address: ✗✗✗✗✗✗✗✗✗
Address (continued):
Suite/Apt./Mail Stop: ✗✗✗✗
City: Kirkland
County: WA
Country: United States of America
State: [None]
Zip Code/Route: 98034
Phone Number: ✗✗✗✗✗✗
Email Address: me@cher.dev
Business IT POC, if applicable:
Other Business POC, if applicable:

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

Ashley Marie Gjovik has been slandering me using her Twitter account (https://twitter.com/ashleygjovik), which yesterday escalated into doxxing my family members and today me. She offered a contract to stop doxxing me and harassing me if agreed to promote her GoFundMe (https://www.gofundme.com/f/ashley-gjoviks-advocacy-fund - which may be fraudulent) and promote her Twitter account on my Twitter account, which has 53,000 followers (https://twitter.com/cherthedev) and distance myself from a worker organization called Apple Together I helped found.

Which of the following were used in this incident? (Check all that apply.)
☐ Spoofed Email
☐ Similar Domain
☐ Email Intrusion
☑ Other      Please specify:

*Law enforcement or regulatory agencies may desire copies of pertinent documents or other evidence regarding your complaint.*

*Originals should be retained for use by law enforcement agencies.*

---

**Information About The Subject(s) Who Victimized You**

Name: Ashley Marie Gjovik
Business Name:
Address: 1050 Benton St
Address (continued):
Suite/Apt./Mail Stop: #2310
City: Santa Clara
Country: United States of America

State: [None]
Zip Code/Route: 95050
Phone Number: 4159646272
Email Address:
Website: http://www.ashleygjovik.com
IP Address:

## Other Information

If an email was used in this incident, please provide a copy of the entire email including full email headers.

[No response provided]

Are there any other witnesses or victims to this incident?

Melissa McEwen - ▨▨▨▨▨▨
Janneke Parrish - ▨▨▨▨▨▨

If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.

[No response provided]

☐ Check here if this an update to a previously filed complaint:

## Who Filed the Complaint

Were you the victim in the incident described above? Yes

## Digital Signature

By digitally signing this document, I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me subject to fine, imprisonment, or both. (Title 18, U.S. Code, Section 1001)

Digital Signature: Cher Swan Scarlett

Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. **This is the only time you will have to make a copy of your complaint.**

**From:** no-reply@weebly.com
**Subject:** New Form Entry: Contact Form
**Date:** February 5, 2022 at 9:58 AM
**To:** ashleymgjovik@protonmail.com



You've just received a new submission to your Contact Form.
Mark as Spam

## Submitted Information:

**Name**
Cher Scarlett

**Email**
me@cher.dev

**Website**

**Business, Institution, or Coalition**

**Message**
This is a last resort, not a block evasion.

I am reaching out in good faith in the hopes that we can resolve this conflict between us for the good of others, and each other. I will address some of the things I've seen/heard first. I do not wish to escalate, which is why I haven't participated.

I apologize for how my actions have made you feel. That does not justify your behavior.

Please remove my tweets that cannot be reasonably justified to be connected to you from your January NLRB memo, including medical information and information about my family. Please also remove your tweets that contain my former legal name. You are aware that it was changed for safety reasons, and I spent a long time ensuring they weren't connected anywhere.

1) I am not testifying against you, nor on Apple's behalf. I wouldn't do that unless I was subpoenaed, and I don't believe they would have me do that, because cross-examination would allow me to answer questions that would discuss their culture of surveillance.

I am named in their defense, which I was only informed of as a courtesy. I am upset by it, given what I've been through, which is why I mentioned it.

2) I have lied about my education in the past, and my role, tried to hide my gender, and invented whole companies. I had an infant, was making poverty wages at multiple hourly jobs, and I was trying to survive. I did what I needed to do, including enrolling in college multiple times and withdrawing for the students loans.

This is something I've talked openly about for several years in my advocacy against gatekeeping and sexism in tech, and the realities that not everyone in tech is rich. I was also on food stamps until I was almost 30 years old because of my low income, and my kid's dad never paid child support.

I've been very open about my past, going far beyond that. I WaPo did a very thorough background check on me and it would have taken more than the limit of 2,000 words to disclose everything. They

chose to disclose the check fraud because it was the most extreme and fewest words.

3) Yes, I am a single parent. My marital status has been public -- I literally posted about when it happened. I've been separated since last July. I have never lived with my husband, and I don't live with him now. I am, however, supporting his household and my own while he works on his career, and makes very meager wages as a laborer. Our relationship is extremely unhealthy and I'm not ready to talk about any of it to the public, so I post occasional happy moments in trying to work on that relationship.

Do you think a parent who has a live-in partner and two incomes is a "single parent"? The point is the financial strain, not whether or not you are married. I don't get child support from my ex. My husband's kids' moms are strung out and can't help financially.

I qualify for food stamps. Does that tell you anything?

I am asking you to please remove his personal information from your Twitter, your NLRB charge, and anywhere else. His criminal history is literally no one's business. He's done his time. He also comes from an abusive home in poverty full of drugs and alcohol. The incident that happened when he was 12 years old was a manifest injustice in which he was also a VICTIM to an ADULT who got found "not guilty" in a trial and all of the information about what that adult did was stricken from my husband's case. We've been working with a program in our county to get it all fixed -- which is why we got married, because it's traumatic for him and legally, I can speak to his FREE attorney on his behalf to keep everything moving forward.

His life was destroyed by a new judge, and he was institutionalized as a child until he was 18. That same judge got us into the program. Words on a piece of paper with no context don't tell you what happened. It is deplorable for you to tell anyone's story based on what you "think" is public and fact.

4) I never called you "a racist". I said you tweeted something racist, "Pulling the race card", and spoke to you about it in a very diplomatic way. I also didn't care for the way you reacted to criticism over it, but still gave you advice on how to learn and grow from it as a friend.

5) Not all of my generalization tweets are about you. Most of them are not about you. While the GFM tweet happened at the same time as yours, there were multiple retail workers who came to me about yours the day you posted it extremely uncomfortable with the fact that you had posted very recently that you made almost $400,000 the year prior and spoke frankly about your financial comfort. The next day, another GFM popped up that was also asking for financial help without a clear use from someone from a place of financial privilege. I never told anyone not to donate to you. I wouldn't do that.

I stand by what I said -- and most of my followers and your followers do not cross over. GFM donations are not taxable. You made it very clear you had a lot of savings and had no financial motivations.

The Simpsons gif was not calling you a child. You are principal Skinner in that reference.

And "eject from amplification" means I blocked you. The tool I have for amplification is Twitter algorithms.

6) That brings me to my next point. I never told the press not to talk to you. You harassed a bunch of journalists using your Twitter account. Why on earth you thought it was somehow my doing, and not a consequence of your own actions is beyond me. My CNBC segment was live. There was no conversation before or after. I didn't even get to prepare, let alone have time to name drop you so they wouldn't talk to you. I didn't even know you were planning to speak with them. We weren't talking anymore at that point.

Even if I wanted to write you out, I don't have the power to do that. I only corrected misinformation, which honestly, I thought I was doing for your benefit. I am worried about what will happen to your mental health if any of your cases are dismissed due to any impropriety. I imagine you were told what I was told when I asked why they weren't covering the EPA stuff - there was absolutely no corroborating evidence and there were questions that couldn't be answered. The ones I spoke to about it were extremely disappointed that there wasn't anything they could write about yet.

You also convinced Chelsey I was trying to erase her from press coverage and the work. I literally talked about her every single time someone asked me about the WA bills, even though I had no idea what work she had done. The piece about Ifeoma was about her impact, not about the WA bill. Chelsey made it super clear she had been working with the senator on NDA law prior to Silenced No More Act. I invited her in to every single thing I was doing once I became aware of her. I talked about her on a podcast that she didn't even know about. I tried to get HER coverage for the EAP bill.

7) While I initially said you lied about being "suspended", though not publicly and to less than FIVE people, I never called you a liar. Those tweets were NOT about you. I was extremely bothered by the fact that you told me you discovered it was an adverse action, and started saying you were suspended.

instead of that you felt forced into requesting the leave. You were never suspended from access to systems, though I do believe you were discouraged from using Slack and communicating with coworkers. I was told not to, and punished for doing it anyway.

I also never argued it wasn't indefinite. They didn't give it an end-date, which is the definition of indefinite.

I also stopped feeling that you were being purposefully dishonest, and empathize with what you were going through because of the situation you were in.

7) I added you to the AppleToo piece as a peace offering. I did not believe you would be okay with being left out. That being said, I'm sorry I picked something you didn't like. I also don't follow you on Twitter... we've blocked each other. You seem to remember me saying I have a shadow account. I don't. I told you I looked at Twitter in private browsing mode to see what trolls/harassers were saying in the past who blocked me back, but that I stopped doing it because ultimately what they want is attention.

The ordering was random, and I had no idea you had a trigger with the article. I essentially know nothing about your past. I have a lot of suicide in my family and I take those things seriously. I made sure you weren't next to a person you didn't like, and didn't do much beyond that.

Also, it wasn't a "rank and file" rating. I only numbered them to show how many they were as a count. Because it's A LOT.

When I said we "connected over your legal expertise" I didn't say you "gave me law advice". Once again, it was a peace offering. Rather than arguing that I felt like you were dismissive of vulnerable people, I pointed to why I re-engaged with you after that, and yes, it was your knowledge about the law. I trusted you on it, and not because I was taking legal advise, but because you helped me navigate to important parts of law that I wouldn't have known about, and told me I could ask for things of a lawyer I didn't know I could ask for. It was a COMPLIMENT.

8) Yes, I reported you to the FBI. I was in a terrible place mentally, had relapsed, and you were posting private/personal information about me because you thought I was testifying against you and just to do me harm, and I was BEGGING you to stop via Melissa, and you took it upon yourself to try to capitalize on my distress by finding a way to make a material gain via GFM and Twitter. It's abusive, Ashley. And another government agency with insight into this suggested I report it to the FBI because they believe what you did was a federal crime.

My family is now being harassed because of you. You didn't block out my mother's name on your post about her, and her facebook is not locked down, and she has my daughter and the rest of my family members on display.

Please remove the images of my facebook, my mother's facebook, and any other of my family's social media accounts.

And btw, saying because in the ONE family photo we have from 1989 (which is absent a fucking FATHER, btw) my mom is wearing makeup is such an offensive, classist remark. Poor people can wear makeup. They can also purchase a used ottoman with tassels at 60 years old. Poor people don't need to be resigned to having nothing. They also tend to treat themselves when they get a bit of money because barely surviving is MISERABLE.

I happen to eat at TV trays because I can't afford a dining room table and chairs. My mom had those things.

Also, she was an administrative assistant at construction companies, she didn't "sling concrete". The people who did that made way more money than she did and they were in a union.

9) It is my opinion that your retaliatory discharge is hard to prove because the onus on Apple is only to prove that they would have fired you anyway. Given our text exchange, I don't believe it is. I do apologize for talking about it on Blind and sharing my opinion there, but that is not a crime and it wasn't due to Apple's culture or being some kind of controlled opposition. When I said to you, "oh so you're just in full-on fuck it mode," I was communicating this very thing to you. Did I report you for it at that time? No. Not because I didn't believe it was an IP leak (there were internal documents of unreleased tools), but because you believed it was invasive and an example of surveillance culture at the company.

When you started saying you did NOT leak IP and saying it was because of photos you took of yourself on your phone, I was confused, because you seemed to be pretty well aware of what you were doing when you sent all those documents to Zoe and stood by it.

When I said to Dawn I could get behind you saying you believed it was a PROTECTED leak, but not

When I said to Dawn I could get behind you saying you believed it was a PROTECTED leak, but not that it didn't happen, I wasn't talking about TO ME. I was talking about publicly. I was literally saying if you said the same thing to the press and on Twitter you had said to me I would have been supportive. I couldn't support what you were doing.

I also wanted to warn her that what you told me was different than what you told her. Because it was. You told me they declined both of your asks in July to be placed in a new position on another team and your paid exit. You told me that I should tell my lawyer I'm not willing to sign an NDA, and that that was your plan. You also told me MORE THAN ONCE about the no lawyer would take you unless you got fired. Once was in the text you shared, the other was when you were SCREAMING at me on FaceTime because you were upset about the Signal group criticizing your behavior and motivations. I had said that we were in far more privileged places than others -- both because we're white and cisgender, and me for my career tenure; you for your savings. You were extremely upset and worried by the idea of tying our issues together, and being associated with unionizing and Corey Moll, even telling the Signal group that your moral character examination could be at risk.

10) My outing myself as the confidential source and SEC whistleblower was not "self-sabotage" in the way you think it was. There needed to be something on the public record so that shareholders had the ability to either vote, or sue over the no-action. SEC tips are not public. In order for journalists to write about this, they needed 5+ NDAs "anonymously on background." One journalist accomplished that, with my confidentiality in tact, and a story was written and scheduled. After editing, the story got canned because it was "no longer news". Do you know whose AppleInsider piece on a whistleblower tip which contained absolutely no material information shareholders could use caused that? Yours. No one was willing to give their NDAs to yet another journalist who might publish. No one was willing to go on the record. I sacrificed my severance, COBRA, and attorney's fees so that the public would have actual evidence of the clauses.

11) I did not report any harassment to Twitter from you except yours to me. I did not say who I alerted, I just said "them". Implying that people are trying to have you assassinated or cause you to kill yourself, me included, is extremely harmful, and I alerted APPLE about the chain of tweets involved in doing so. I was criticizing both Apple and Twitter for applying the rules to the tweets about the men and current employees, but not the tweets about me and my family which fell under the SAME rules. I deleted the tweets because a dozen people who DID report them to Twitter got notice they were deleted. They didn't realize it didn't include the ones of me and my family, and I wrongly assumed they checked.

12) I blocked Kate and JeansSquirrel or whatever because both of them were amplifying harassment, including actual defamation, of me. I also told that to Kate, who I only unblocked to ask to stop punching down on the other hundreds of Apple employees involved in organizing because I'm helping them.

13) I have stood up for you repeatedly. Even IN some of the threads you claim are me harassing you. It's extremely frustrating to watch you try to make something true because you think it is, but I guess this is the kind of thing that will make you a good lawyer.

Even in one of the posts you claim is discrimination because you... don't have kids... I said I was WORRIED for you. I am. I was saying you'd be fine financially because YOU TOLD ME you had plenty of savings to weather the storm. You also told the entire internet that on Twitter when you patted yourself on the back for how smart you'd been about saving and investing. You cut out the context that made it clear I was saying you'd be fine financially, which sure, I shouldn't have shared my opinion on Blind, but frankly, I was sick of being attacked because of your behavior in spite of my own being very different.

I feel that you have been treated terribly by Apple, and in spite of my personal issues with you, I want you to have justice, not only for the common good, but because having a government body hold an abusive corporation accountable is validating and therapeutic. The DFEH lawsuit against Blizzard changed me in a very good way.

-----

I'm sure there's plenty more things that are mixed in there but the main take aways are:

1) I hope you get justice
2) I apologize for sharing my personal opinion about the difficulty in proving your case, and sharing that you leaked internal docs/IP
3) I apologize for sharing my personal opinion that you would be fine financially
4) You need to delete the posts about my family and those that contain my previous legal name
5) You need to delete my tweets from your memo that contain personal information about me and my family, including my previous legal name, my medical information, any and all things pertaining to my family
6) You need to remove all assertions that I am accounts trolling you

Sincerely,
Cher

**Are you looking for a response?**
No reply required

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

## 2/1/21 Ex Parte Hearing Transcript

THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| CHER SWAN SCARLETT, | ) |
| | ) |
| | ) KING COUNTY DISTRICT COURT |
| Petitioner, | ) CAUSE NO. 22CIV071704KCX |
| | ) |
| v. | ) COA NO. 22-2-03849-7 |
| | ) |
| ASHLEY MARIE GJOVIK, | ) |
| | ) |
| Defendant. | ) |

## TRANSCRIPT OF AUDIO-RECORDED HEARING

BE IT REMEMBERED that the above-entitled matter came on regularly for hearing at the King County District Courthouse, 8601 160th Avenue NE, Redmond, Washington.

### VOLUME 1 OF 1

**TUESDAY, FEBRUARY 01, 2022**
**HELD BEFORE THE HONORABLE JUDGE LISA N. O'TOOLE**
**(PAGES 1-21)**

**TUESDAY, FEBRUARY 15, 2022**
**HELD BEFORE THE HONORABLE JUDGE LISA N. O'TOOLE**
**(PAGES 22-39)**

Proceedings recorded by electronic sound recording; Transcript produced by Anderson Transcription Solutions LLC

**APPEARANCES 2/1/2022**

For the Petitioner:   Pro Se


For the Respondent:   Pro Se (Did not appear)



**APPEARANCES 2/15/2022**

   (All appearances are remote due to the General Order.)

For the Petitioner:   Pro Se


For the Respondent:   Pro Se (via Zoom)

3

```
1                    CHRONOLOGICAL INDEX

2    FEBRUARY 01, 2022                              PAGE

3    TEMPORARY ORDER HEARING

4    WITNESS FOR THE PETITIONER: ................................5

5      CHER SWAN SCARLETT                              6

6         Direct Testimony.......................................6

7    Court's Ruling .........................................17

8    Further Date ...........................................20

9    Adjourned ..............................................21

10

11

12

13   FEBRUARY 15, 2022                              PAGE

14   TEMPORARY ORDER HEARING

15   Case Called ............................................22

16   Petitioner Sworn .......................................22

17   Respondent Sworn .......................................23

18   History of the case ....................................23

19   Respondent's Motion for Continuance ....................24

20   Court's Ruling .........................................27

21   Certificate of Transcriber ..............................39

22

23

24

25
```

```
 1                        REDMOND, WASHINGTON

 2                     TUESDAY, FEBRUARY 1, 2022

 3                  AFTERNOON SESSION - 1:23:14 P.M.

 4    TEMPORARY ORDER HEARING:

 5    (The following proceedings were had in open court:)

 6                    THE COURT:  King County District Court here in

 7    Redmond.  I'm Judge Lisa O'Toole.  Sorry for the delay.  I had

 8    a meeting that ran far over, and so my apologies.  We do have

 9    some protection order cases and name change cases that we will

10    be addressing.  Let me get my computer up and running and we

11    will be ready to go.

12                    Is there anybody with us by Zoom yet?

13                    THE CLERK:  No.

14                    THE COURT:  No?  Okay.

15    (Unrelated matters taken from 1:23:48 p.m. to 1:27:50 p.m.)

16                    All right.  So our next orders -- I mean our

17    next hearings are protection order hearings.  They're both

18    temporary order hearings.  The first we'll address with is

19    Cher -- or the first we will address is Cher Scarlett.  If

20    that person would go ahead and come forward and have a seat?

21                    This is an antiharassment protection order.

22    And let me just tell you generally what the Court looks at in

23    antiharassment order.  So in order to issue an antiharassment

24    order, the Court has to find that there is a pattern of

25    activity over time by the person against whom you're seeking
```

1    the order.

2              So in this case, Ashley Marie Gjovik, directed

3    specifically at you that -- that pattern of activity can serve

4    no lawful purpose, and it has to be the type of activity that

5    would cause any reasonable person to be placed in fear or

6    suffer emotional distress.  And so those are the basic

7    parameters of what the Court looks at in deciding whether an

8    antiharassment order should be issued.

9              Now, this first order, of course, you're the

10   only party present, and because of that it's considered an

11   emergency order.  And if the order is issued today, it would

12   only be good for two weeks.  At two weeks out, there would be

13   another hearing at which both parties would be present, and

14   the Court would hear from both parties and we'd decide whether

15   the order should be for a year.

16             Now, in making a decision for one of these

17   temporary orders, these emergency orders, the Court has to

18   find that this is a true emergency such that irreparable harm

19   would occur if an emergency order were not issued.

20             So we do take testimony.  I'm going to have you

21   raise your right hand.

22             And do you swear or affirm you'll testify

23   truthfully in this proceeding?

24             MS. SCARLETT:  I do.

25             ///

1                       CHER SWAN SCARLETT,

2         Petitioner, having been duly sworn, testified as follows:

3                       DIRECT TESTIMONY

4               THE COURT:  May I have you state your name?

5               MS. SCARLETT:  Cher Swan Scarlett.

6               THE COURT:  All right.  And how is it that you

7    know Ashley Marie Gjovik?

8               MS. SCARLETT:  We both worked together at

9    Apple, Incorporated.  We both -- she lives in California.  I

10   obviously live here.  We both work remotely.  We came in

11   contact with each other during activism against our workplace

12   that was very public.

13              THE COURT:  All right.  So she lives and works

14   in California?

15              MS. SCARLETT:  Correct.

16              THE COURT:  Okay.  All right.  And so how long

17   have your known her or interacted with her at work?

18              MS. SCARLETT:  Her and I met in June of 2021.

19              THE COURT:  Okay.  So just a few months --

20   six -- six months or so.  Seven months maybe.  All right.  And

21   what has happened between you that has caused you to seek this

22   order?

23              MS. SCARLETT:  So initially when we met, we

24   just had a bit of a disagreement.  I separated myself from the

25   relationship.  She came to me on a program called Slack and

1   wanted to have another opportunity to connect.  I gave her

2   that opportunity, talked.  Along the course of my interactions

3   with her, I was told about a number of things that she had

4   done to damage other people and defame other people.  And I

5   started to separate from her.

6           She was terminated from Apple in the beginning

7   of September, at which time I separated further from her,

8   because she had told me that she had leaked confidential

9   intellectual property by Apple, and she was claiming publicly

10  that she had not done that.

11          So I told -- so a few journalists came to me to

12  corroborate her story.  I could not do that, because what she

13  told me was not the same thing that she had told these

14  journalists.  She started telling people that I was telling

15  the press not to speak with her and lying about her, which I

16  did not do.  She started claiming I was harassing her, which I

17  never did.

18          I tried to talk with her privately about the

19  way that she was engaging.  She got very distressed and upset

20  and yelled at me and hung up the phone.  I have not spoken to

21  her since.

22          THE COURT:  And when was that that you had

23  the --

24          MS. SCARLETT:  That was in September.

25          THE COURT:  In September.  Okay.

1          MS. SCARLETT:  Did not speak with her after

2   that.  At the beginning of December, she started claiming --

3   or making several defamatory comments about me claiming that I

4   was harassing and abusing her.

5          THE COURT:  Now wait a minute.  So slow down a

6   bit.  In December, where is she making these defamatory

7   comments?

8          MS. SCARLETT:  On Twitter.  All of this --

9   after this, started occurring on Twitter --

10          THE COURT:  Okay.

11          MS. SCARLETT:  -- on her public profile.

12          THE COURT:  And then in December on Twitter,

13   how do you know that it was Scar -- you're Scarlett.  Pardon

14   me.  How do you know it was Ashley Marie Gjovik who was --

15          MS. SCARLETT:  It's her Twitter account.

16          THE COURT:  And how -- how did you recognize

17   that as hers?

18          MS. SCARLETT:  She told me that it was hers

19   when her and I were speaking.  I -- when I -- when her and I

20   were in good terms in July, I was promoting her Twitter so

21   that she could get a lot of attention to the things that she

22   was talking about --

23          THE COURT:  Okay.

24          MS. SCARLETT:  -- in terms of what she had

25   faced at Apple.

1              THE COURT:  So -- so when you were still on

2    good terms, this is the Twitter account that you and she --

3    that she --

4              MS. SCARLETT:  Yes.

5              THE COURT:  -- that you knew to be hers --

6              MS. SCARLETT:  So we -- yes.

7              THE COURT:  Okay.

8              MS. SCARLETT:  I knew it to be her.

9              THE COURT:  -- back when you were on good

10   terms.  Okay.  All right.  So then come December, you know

11   this Twitter account to be hers.

12             MS. SCARLETT:  Correct.

13             THE COURT:  And -- and so tell me the -- some

14   specifics about what's happening on this Twitter account.

15             MS. SCARLETT:  So she started claiming that I

16   had been harassing her and defaming her because -- and she

17   wasn't being very specific.  She just kept saying that I had

18   been abusing and harassing her.

19             When other people pressed about what exactly

20   she was talking about, she started pointing to things that I

21   had said that mentioned no person's name claiming that they

22   were about her.  She also -- and these were like things like,

23   you know, like a parable.  Like, Oh, I don't -- I don't, you

24   know, name people when I'm talking about a general idea that I

25   have an issue with if other people have engaged in this

1  behavior, because I have over 50,000 followers on Twitter.

2  And I don't want to cause anybody irreparable harm by being

3  piled on by my followers.

4            And so she took messages like that to be about

5  her and claims that I was harassing her.  Again, I did not

6  engage with her at all.  By the end of December, she

7  started --

8            THE COURT:  So -- so let me -- let me go back.

9            MS. SCARLETT:  Sure.

10            THE COURT:  Give me some specifics of what

11  those Twitter -- I mean, what those Twitter posts said

12  specifically about you.

13            MS. SCARLETT:  Okay.  Let me -- sorry, I'll

14  pull something up.  (Pause.)  Sorry.  There's like hundreds.

15            (Reading):  Cher says she's fighting censorship

16         silence no more while also actively sensory victims

17         who don't submit to her or who she did not preapprove

18         to speak out.  Cher's forcing her own version of an

19         NDA on us instead of dollar sign fines.  If we break

20         her NDA, we're racist and liars.  With respect,

21         you're completely avoiding the part of this where

22         Cher has been proudly bullying, harassing, censoring,

23         and defaming me for months.  Her brutality was

24         intentional.  When confronted, she bragged about it.

25            I have never spoken with her about any of her

1   claims, and I certainly wouldn't brag about it if somebody

2   told me that something I said about them or to them had harmed

3   them.  I would -- the -- the type of person I am, I would go

4   to them and discuss it with them.  She's talking about a tweet

5   in which I said that I was right to disengage from somebody

6   who was engaging in harmful behavior.  I did not say her name

7   and I was not talking about her.

8            THE COURT:  I guess I'm confused as to -- will

9   you read that again?  Since I don't have it in print so the

10  only way I'm hearing it is what you're telling me.  So go

11  ahead and read that again.

12           MS. SCARLETT:  (Reading):  Cher says she's

13               fighting censorship silence no more -- she's

14               referring to the Washington State legislature that

15               I've been working on with Senator Keiser and House

16               Representative Liz Berry -- while also actively

17               censoring victims who don't submit to her and whom

18               she did not preapprove to speak out.  Cher's forcing

19               her own version of an NDA on us instead of dollar

20               fines.  If we break her NDA, we're racist and liars.

21           THE COURT:  And what is NDA?

22           MS. SCARLETT:  A nondisclosure agreement.

23           THE COURT:  Oh, okay.  So you have a

24  nondisclosure -- so you don't have a nondisclosure agreement?

25           MS. SCARLETT:  No.  None of this is true.  This

```
 1    is all made up and it's causing other people to harass me.

 2                    It says, (reading):  Cher responded via

 3            subtweet to my complaints about harassment,

 4            defamation and bullying.  She called me a racist and

 5            a child.

 6                    I did not.

 7                    She admitted she did intentionally gatekeep me

 8            access to the press preventing us from telling our

 9            stories and advocating for our causes.

10                    She's pointing to something where I said, I

11    made the right choice in exercising boundary of ejecting them

12    from amplification, which was me blocking them from being able

13    to quote, tweet me, and talk about me.  I -- all I did was

14    block her on Twitter, and she's saying that I forced an NDA on

15    her and called her a racist and a liar.

16                    THE COURT:  So typically with a nondisclosure

17    agreement, I mean you'd have to either be her employer or be

18    in the middle some lawsuit with her --

19                    MS. SCARLETT:  Right.  She suggests --

20                    THE COURT:  -- to sign a -- I guess I'm

21    confused as to where this nondisclosure agreement bit comes

22    in.

23                    MS. SCARLETT:  It's just her making things up

24    and this is what she's been doing for almost over two months

25    now.  And it gets worse, because she not only lies about me
```

1    and saying that I have lied about her -- or am calling her a

2    liar, bully, and harass her, which all of the evidence is the

3    only person that has done that in this case is her to me.  And

4    then she started talking about my medical conditions and my

5    childhood and my family, cyberstalking them on Facebook and

6    Instagram and posting things that they have posted including

7    their names.

8                    I legally changed my name for a safety reason

9    that she's aware and she started posting my new legal name

10   with my old legal name, which she knew I tried very hard to

11   not be connected.

12                   THE COURT:  All right.  Do you have any --

13   any -- well, if you were to have a second hearing, you would

14   be well served to bring paper copies of -- of these various

15   Tweets and these posts where you're saying she's --

16                   MS. SCARLETT:  Well, so one of the --

17                   THE COURT:  -- leaking your names, --

18                   MS. SCARLETT:  -- the --

19                   THE COURT:  -- the old names and new and things

20   that are harmful to you.  I don't have any of that.  I mean I

21   have what you're telling me, but --

22                   MS. SCARLETT:  Oh, I put links to them in

23   the --

24                   THE COURT:  Right, but the Court isn't going

25   to --

1                    MS. SCARLETT:  Okay.  I see.

2                    THE COURT:  -- pull up outside links because we

3     don't -- we don't bring in outside media into our system,

4     because there are too many potential issues with that.

5                    MS. SCARLETT:  I see.

6                    THE COURT:  So if you have something you want

7     the Court to consider, a paper copy, which you can either

8     provide the paper the time of your hearing, or you can file

9     it, you know, with the court and have it in a court file

10    electronically through the court records.  But we're not going

11    to take a disc, we're not going to take a flash drive, we're

12    not going to --

13                    MS. SCARLETT:  Okay.  So they have to --

14                    THE COURT:  -- click on outside links.

15                    MS. SCARLETT:  -- print outs?  One of the

16    documents that she -- and this is what caused me to do this,

17    is because the director of security at the National Labor

18    Relations Board believes that she filed a charge with the

19    intent to harass me on January 11th.  It is 191 pages long and

20    mentions me 288 times.

21                    THE COURT:  All right.  And -- and how do you

22    know that someone from the National Labor Relations Board

23    believes this was solely to harass --

24                    MS. SCARLETT:  They contacted me.  I have a

25    voicemail from them.

```
 1                    THE COURT:  All right.  Do you -- okay.  You

 2     may want to --

 3                    MS. SCARLETT:  They told me that I needed to do

 4     something locally like getting a protection order or

 5     contacting the police.

 6                    THE COURT:  So you may want to have a printed

 7     version of whatever it is this National Labor Relations Board

 8     official is asserting as evidence --

 9                    MS. SCARLETT:  And so --

10                    THE COURT:  -- in -- in a hearing.

11                    MS. SCARLETT:  -- ordinarily the document that

12     she submitted to the NLRB would be confidential and have

13     redacted --

14                    THE COURT:  Oh no.  I don't mean the

15     document --

16                    MS. SCARLETT:  Oh.

17                    THE COURT:  -- that she submitted because, you

18     know, we're not going to rule one way or the other.  That's

19     for the National Labor --

20                    MS. SCARLETT:  Okay.

21                    THE COURT:  -- Relations Board.  You're saying

22     there's an official with the National Labor Relations Board

23     who is telling you that they believe that was filed to --

24     solely to harass you.  And if that's the case, then some sort

25     of communication from that official would be useful.
```

```
 1                    MS. SCARLETT:  Okay.

 2                    THE COURT:  So I mean I'm --

 3                    MS. SCARLETT:  What I -- I --

 4                    THE COURT:  -- assuming she's filed it against

 5    Apple as opposed to you personally.

 6                    MS. SCARLETT:  She did.  She filed it against

 7    Apple, but it's --

 8                    THE COURT:  Now are you still working --

 9                    MS. SCARLETT:  -- it is -- the majority of it

10    is about me.

11                    THE COURT:  Are you still working with Apple?

12                    MS. SCARLETT:  No, I am not.

13                    THE COURT:  Okay.

14                    MS. SCARLETT:  I left in November.

15                    THE COURT:  All right.  All right.  So you had

16    an angry phone call in September, you didn't hear anything

17    from her.  Then all of a sudden December, she resurfaces.

18                    MS. SCARLETT:  So she said that the reason that

19    she started doing this is because I am cited in Apple's

20    defense against her for a wrongful termination charge.  And

21    the thing that is cited in Apple's defense is the conversation

22    that her and I had where she told me what she had leaked to

23    the Verge.

24                    THE COURT:  That she -- that she had leaked to

25    whom?
```

1          MS. SCARLETT:  The Verge.  The -- it's a

2    website.

3          THE COURT:  Okay.

4          MS. SCARLETT:  The -- it's a part of the --

5    it's like an online magazine for tech and labor issues.  She

6    had leaked --

7          THE COURT:  So tell me about what you say she's

8    reposting your personal medical information and where has she

9    done that?

10          MS. SCARLETT:  On Twitter.  Both on her Twitter

11    account and then the doc -- the document for the NLRB, she

12    posted that on Twitter.  Ordinarily that would confidential

13    and have all of that -- those things redacted by the NLRB if

14    somebody were to request it via FOYA, but she --

15          THE COURT:  So let me ask you this and this may

16    be my naivete, but Twitter has limited number of characters,

17    how can she post 190-page document?

18          MS. SCARLETT:  She posted a link to it on a

19    website called Scribd.

20          THE COURT:  Okay.  So it's not on Twitter, but

21    rather on some other website.

22          MS. SCARLETT:  Right.  Which she links to it

23    and posts screenshots of it on Twitter.

24                    COURT'S RULING

25          THE COURT:  So, I mean, she lives in

1    California, so in terms of safety issues, I can't find there's

2    any kind of an emergency.  There is nothing urgent about this

3    in terms of irreparable harm, you know, that would be physical

4    harm to you.

5                      Now again, you know, I have your allegations.

6    I don't have, you know, any documentation that shows me any of

7    these events that or posts that you say are happening.

8                      I'm not going to issue a temporary order

9    because I don't believe that there's an emergency that would

10   warrant a temporary order particularly given that she lives

11   out of state.  And you must know that while, you know, the --

12   the part of the definition of harassment where it says that

13   her activity has to serve no lawful purpose, you may disagree

14   with it, but there's also a free speech element too.

15                      So filing -- making a filing with the National

16   Labor Relations board is something that, you know, anyone who

17   believes there's an -- a grievance can do.  And so that is,

18   you know, engaging in something that serves a lawful purpose.

19   They may lose, they may win.  They may be right; they may be

20   wrong.  But filing -- making a filing with the National Labor

21   Relations Board complaint or any grievance is certainly a

22   lawful purpose.  And there's also a free speech element to,

23   you know, what you're alleging.

24                      So what I'm going to do is I'm going to -- I'm

25   not going to issue the temporary order.  I'll set this for

1   full order hearing.  So there will be hearing two weeks out.

2   Now, your job is going to have to be -- you're going to have

3   to serve her with this document.  So you're going to have to

4   arrange for service of this hearing notice on her.  So let me

5   get the documents ready, and then we'll go over it together.

6              MS. SCARLETT:  Okay.  Is there any way that --

7   because the problem I'm having is that like people are

8   calling -- like I'm a single parent, and people are calling

9   CPS and they're -- I mean they're not doing anything, but

10  like -- I do not feel safe having --

11             THE COURT:  Is this -- is Ms. Gjovik calling

12  CPS?

13             MS. SCARLETT:  No she's not, but she's stoking

14  her followers on Twitter into harassing me and that is what is

15  causing me to be alarmed for my safety and the safety of my

16  child.  I just want her to stop talking about me or lying

17  about me.  That would work too.  And definitely to stop

18  posting personal information about myself and my family

19  members.

20  (Pause in proceedings.)

21             THE COURT:  All right.  So I prepared an order

22  that indicates that I'm not issuing a -- an emergency order.

23  The respondent lives in California.  There is no showing of

24  emergency irreparable harm if the emergency orders not issued

25  particularly because she lives in California.

1          Many of the complained of actions arguably

2    serve a lawful purpose, such as filing with the National Labor

3    Relations Board, and -- and many also may very well involve

4    free speech.  However, there are other allegations that may

5    have merit such as posting personal medical information or

6    posting things like a former name that you had changed for

7    security reason and that sort of thing.

8          So we're going to set the full order hearing at

9    which time both parties can be present.  That's February 15th,

10   1:30 in the afternoon.

11          And so I'm not issuing the temporary order,

12   setting the full order hearing, and then you will have to make

13   arrangements for the notice of hearing and petition and all of

14   the materials to be filed -- pardon me, not filed -- served on

15   the respondent, Ms. Gjovik.

16          So what we're going to do -- she'll get all

17   that at the front counter, correct, Corrie (phonetic)?

18          THE CLERK:  Yes.

19          THE COURT:  So we're going to have you go out

20   the front counter.  The front counter staff is going to give

21   you copy of the service packet that you will be responsible

22   for getting served on her, and we have to have proof of

23   service and they will provide a document there that it has to

24   personally served.  It can't be through the mail.

25          So you're going to have to make arrangements.

1    You know, wherever she lives in California to get process

2    server.  You can hire a private process service.  Sometimes

3    you can hire law enforcement to do it.  But you'll have to

4    make those private arrangements to have her personally served.

5    And then whomever actually physically hands it to her, has to

6    complete that proof of service --

7                    MS. SCARLETT:  Okay.

8                    THE COURT:  -- so that we know that she had

9    notice of the hearing.

10                   MS. SCARLETT:  Okay.

11                   THE COURT:  So if you'll go out to the front

12   counter, they're going to be able to give you all the

13   documents you need.

14                   MS. SCARLETT:  Okay.  Thank you.

15                   THE COURT:  Thank you.

16                   MS. SCARLETT:  Oh and then at your next

17   hearing, you're going to want to bring whatever documents you

18   want the Court to look at or consider.

19                   MS. SCARLETT:  Okay.  All right.  Thank you.

20   THE COURT:  All right.  Thank you.

21   (Proceedings adjourned at 01:49:30 p.m., to be continued on

22   February 15, 2022.)

23   ///

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

## Appleseed's Written Testimony



Scarlett v. Gjovik
King County Court
2/15/2022

**Statement by Cher Swan Scarlett**

FILED

FEB 1 5 2022

KCDC-East Division
Redmond Courthouse

Your honor:

I am speaking for myself today as I do not have the financial means to afford an attorney.
Please understand I lack experience in legal proceedings, and I have struggled with advocating
for myself in the past, often being victimized by bullies and doing nothing. As Ms. Gjovik said
when she reached out to me, I have a lot of courage in speaking up for others. I have not done
well in standing up for myself in the past.

Ms. Gjovik has been cyberharassing me via defamation, cyberstalking, and maliciously posting
private information about me and my family members on Twitter, Scribd, and her personal
website for almost three months. She has tried to shop this story that her most recent NLRB
charge is against me, not Apple, to numerous members of the press, who all contacted me
alarmed about her conduct.

Ms. Gjovik and I became acquainted while working for Apple, Inc in June of 2021 during
employee advocacy for remote work flexible policies. I was supportive of her, and spoke with
her via WebEx, Slack, iMessage, Twitter, and FaceTime. I used my own platform to give her a
platform of her own, and advocated for justice for her in the ways that she alleged Apple had
mistreated her.

We started a movement called #AppleToo together, but after she made other members of the
group uncomfortable with her punching down on collective action, defensive aggression after
constructive feedback about a racist Twitter post she made, and her wishes to use the
movement as private leverage for her own cases against Apple, she voluntarily parted ways
with the group, and Janneke Parrish stepped up to help me seek justice and validation instead. I
have reported Apple to the NLRB for alleged violations of the NLRA, and to the SEC for
allegedly providing the agency, the public, and its shareholders with false and/or misleading
statements, and for retaliation. Apple has put me in financial peril.

Ms. Gjovik has repeatedly defamed my character stating as though it was factual that I am a
paid agent of Apple, working on their behalf, in spite of public and broadly covered information
that this company has repeatedly, and demonstratively caused me significant emotional and
financial harm.

In late August of 2021, Ms. Gjovik shared with me that she had leaked information protected by
our non-disclosure agreements to Zoe Schiffer of the Verge, and she was terminated a week
later for those policy violations. Ms. Gjovik was later denied unemployment benefits by the state
of California after they determined she was terminated for just cause, per her sharing the letter
from unemployment on Twitter. I shared an opinion on the application Blind that it would be
difficult to prove her retaliatory discharge claims to the NLRB and the Department of Labor
because she had, in fact, leaked those documents. In December of 2021, she initiated a

Scarlett v. Gjovik
King County Court
2/15/2022

### Statement by Cher Swan Scarlett

cyberharassment campaign against me that has escalated over the last two months, in spite of my own and others' pleas and reports for her to cease and desist, and including after I wrote an article sharing that I was so emotionally distraught by the cyberharassment that I had relapsed and accidentally overdosed on Fentanyl under the impression it was a percocet on December 20, 2021. I did not name her as the harasser in the post, but per her 400 page memo, in which she mentions me more than 400 times, she is aware that her actions caused me severe emotional distress.

On September 7, 2021, Ms. Gjovik and I blocked each other, when she falsely implied I was trying to out or otherwise dox a previous victim in a lawsuit with Apple on Twitter. I had asked what case she was posting, to give to my lawyer. I told her this privately and publicly, confused why she was tagging Apple and Tim Cook on the matter, if she was trying to keep this case private. She later posted the case details, including the plaintiff's name and the case number, in January of 2022, and claimed I had "screamed" at her, when the only person who was ever screamed at was me, twice—by Ms. Gjovik during FaceTime calls in August of 2021.

The only contact after that, was an email I sent her on February 5th, 2022, when I asked Ms. Gjovik to stop cyberharassing me, cyberstalking me and my family, and to delete and/or redact private or personal information about myself and my family (which included medical information about me, my minor daughter's my mother's and my husband's names, and my husband's old criminal history), defamatory assertions, and my social media posts and authored articles that could not be reasonably considered to be connected to her and her allegations against Apple. I informed her that her continued posts about my family were causing them to also be cyberharassed, and that CPS was receiving false reports about the safety and wellbeing of my child.

Ms. Gjovik not only misrepresented this email, but escalated in her defamation, claiming I was not only harassing and defaming her, but that I was making false calls to authorities or emergency services to have armed officers dispatched to her home (she referred to this as "SWATing"), stalking her, threatening her, suing her, coercing her, demanding that she destroy evidence, colluding with Apple to obstruct justice, and that I am under investigation by the federal government for obstruction of justice and witness intimidation. None of these things are true.

Ms. Gjovik also posted private and personal information about me and my family on Wikipedia, which was removed per Wikipedia's abuse guidelines. Ms. Gjovik further sent Wikipedia's arbitration committee allegations that I had harassed her, and which included a background check that she had done on me without my consent, and without cause. The arbitration committee found that Ashley's claims that I was harassing her were unfounded, and further that she had been the one harassing me, and banned her from their platform indefinitely. She alleged that I was a user who edited her Wikipedia page, when in fact, it was her that had

2

Scarlett v. Gjovik
King County Court
2/15/2022

### Statement by Cher Swan Scarlett

vandalized mine, which is exactly what the arbitration committee, with the assistance of their lawyer, also determined.

In January of 2022, I reported Ms. Gjovik to the FBI internet crimes division after a mutual friend, Melissa McEwen, attempted to mediate between Ms. Gjovik and I to get Ms. Gjovik to stop posting private and personal information about myself and my family, and to delete what she had posted. When I agreed to initial terms, which would mean Ms. Gjovik could continue to post about me and I wasn't allowed to even talk about her with anyone at all, let alone share my opinion about anything pertaining to her, as long as she wasn't posting private information about me and my family, Ms. Gjovik added additional terms that she would only stop if I promoted her GoFundMe, which has a goal of $100,000 US, and promoted her Twitter account with a public apology for things I did not do.

I reported the entirety of what Ms. Gjovik had done up to this point to that authority, and Ms. Gjovik tweeted about it, claiming it was done in retaliation and had no merit. She mocked me, bragging about her refusal to concede to removing private and personal information about myself and my family, and continued to post more, claiming I have a criminal history (I do not) and threatening to share it and "hundreds" of other private and personal pieces of information she claims she found during her cyberstalking.

Ms. Gjovik stated she was cyberharassing me because I was testifying against her on behalf of Apple in her cases against them, and further because I reported her conduct to the FBI. This is untrue, as Alexander Hajduk, an investigating officer of the NLRB, and I both told her. I was cited in their defense with a text message conversation she posted on Twitter, not testifying against her.

Ms. Gjovik further made false statements on her Twitter account that I had colluded with Ifeoma Ozoma and Nia Impact Capital to breach my NDA and report Apple to the SEC. This is false, and damaged me financially by contributing to Apple's claim in a December 20, 2021 settlement breach notice that I had colluded with Nia prior to signing my November 15, 2021 separation agreement. Ms. Gjovik and I had not been in contact, and Ms. Gjovik had no knowledge of my communications with Nia or Ms. Ozoma to make such public defamatory claims.

The Director of Security of the NLRB, Raymond Hankins, and the supervisory Field Attorney for Region 32, Catherine Ventola, which is handling Ms. Gjovik's NLRB charge which names me, both recommended over the phone that I report Ms. Gjovik's conduct to federal and local authorities, on or around January 25, 2022, and on or around February 4, 2022, respectively. They further advised that they had had numerous operations meetings to discuss how to handle Ms. Gjovik's conduct and my personal and private information being published without my or my family's consent. They advised they would redact information per Exemption 6 of FOIA, and linked me to the relevant guide from the DOJ, but said they did not have jurisdiction over her

3

CS v AG, KING COUNTY DISTRICT COURT, 22CIV071704KCX

Scarlett v. Gjovik
King County Court
2/15/2022

### Statement by Cher Swan Scarlett

posting that information elsewhere, and again advised that I seek remedy through those with the jurisdiction to take action, and that they could not get involved aside from redacting information in the charges.

Ms. Gjovik has taken it upon herself to publish information in documents related to her charges that would be redacted per the DOJ's guidelines. I reported this to Twitter, to Scribd, and to her web host, register.com. Scribd removed the posts for abuse, and Ms. Gjovik reuploaded it, and Scribd removed them again. Ms. Gjovik then uploaded it to her personal website, and the host is considering whether or not it breaks their rules against abuse of their services.

Ms. Gjovik deleted most of the private information from Twitter on February 5th, 2022, after I tweeted that I had testified for SB 5628, the anti-cyberharassment bill that passed through the Senate chambers unanimously, and would be moving forward with hiring a process server for this anti-harassment hearing because of Ashley's public response and misrepresentations of my plea for her to stop cyberharassing me. However, she did not redact any information in her memo, which is now hosted on her website and posted numerous times to her Twitter, and added additional private information and defamatory statements.

She further alleged that my husband is a sex offender, in spite my informing her that he was relieved of this on December 28, 2021, due to the fact that it was a manifest injustice in which he was a victim when he was 12 years old. The entire case was sealed in King County for the same reason, along with the fact that the other victim, also a minor, was named and never redacted. The judge in the original case, the Honorable Michael J. Trickey was apologetic for what occurred, and helped us into a program to right the injustice free of charge, and the Honorable Averil Rothrock said it was her honor to right this terrible wrong.

I understand, appreciate, and do not take for granted our first amendment rights. I do not wish to deprive Ms. Gjovik of hers.

Ms. Gjovik's cyberharassment of me appears to be in part for exercising my own first amendment rights in expressing my opinion that her retaliatory discharge case would be hard to prove because of the bonafide fact that she had leaked private documents about unreleased intellectual property owned by Apple to the press, and additionally because I was cited in Apple's defense case in her charges against the company. I took the time to apologize for exercising those first amendment rights, because it clearly hurt her feelings, despite my right to say such things, and her public assertions that she supported such rights.

What Ms. Gjovik is doing to me is not an important criticism of a public figure, corporation, or government entity imperative to public interest. It is not protected mockery or annoyance that simply bothers me. It is demonstratively repeated malicious defamation of character and violation of my human dignity and right to privacy over hundreds of posts using the internet. She

4

Scarlett v. Gjovik
King County Court
2/15/2022

## Statement by Cher Swan Scarlett

seeks to do me harm emotionally and to make the general public believe damaging lies with her actions, and it is escalating. She is attempting to abuse government processes to attempt to do me further harm.

If this is not criminal cyberharassment, blackmail and/or extortion, and retaliation for reporting such things, then I do not know what is. And if this type of speech is protected, who then becomes responsible for the damage that this woman, and others, cause, for their own selfish, malicious purposes?

Ms. Gjovik has one goal: to destroy me publicly. No one deserves this.

I have nowhere else to turn.

Please help me find relief from the fear of my well-being, and the safety of myself, my child, and the rest of my family.

Chair and committee members -

My name is Cher Scarlett and I live in Kirkland, where I grew up. I was born in Walla Walla, and have lived here for most of my life.

Since I was a teenager, I have faced abuse and harassment on the internet. It started in chatrooms and forums, and evolved into social media. The harassment has led me to contemplate suicide more the once.

In 2018, I championed legislation for victims of revenge porn, including third parties hoarding it and spreading it. As a victim myself, it was personal. Users of a website called 4chan cyberstalked me, harassed me, and repeatedly doxxed me, eventually sharing my home address, where I lived as a single parent with my daughter, and people who lived near by came to my house and took photos from outside.

Last summer, I publicly criticized Apple, my former employer, and eventually reported them to the federal government for violations of the NLRA and for misleading shareholders to the SEC. During that time, a colleague was also trying to criticize Apple, but doing so in a way that I struggled to support. Eventually, our missions were so diverted that I had to separate myself from her. She was on a path to get a lot of media attention, but outlets struggled to corroborate her story, which kept changing over time. She started harassing journalists who didn't write verbatim what she told them, and worse if they didn't write about her at all. I was profiled in The Washington Post and the Seattle Times, and she grew more agitated. I helped bring bills to our great state to ensure what happened to me would not happen to other Washington workers.

In December, this escalated into full-blown harassment. It started with defamation, claiming I had done and said things I hadn't. It escalated into cyberstalking my private social media accounts, like Facebook, and finding my family members, reposting their content, and eventually posting private and personal information about my marriage, my medical information, and my former legal name, which I stopped using publicly in 2018 after helping put away a former abuser, and legally changed quietly later. She alleged that myself and others were a part of a conspiracy against her and warned she worried she might be assassinated as part of it, or that she was purposefully being driven to suicide. She announced her cyberabuse was because I was "testifying against her on behalf of Apple", which is a federal crime, and worse, was not even true. I was simply cited in their defense. I tried to get a friend to mediate to get her to stop. Instead, she tried to extort me into promoting her in exchange for stopping her harassment.

She has continued to call me horrible names and obsessively post about me every single day. She's attempted to use the federal government to ensure my private information becomes public

English (US)

Terms  Privacy
Copyright © 2021 Scribd Inc.



CS v AG, KING COUNTY DISTRICT COURT, 22CIV071704KCX

record, something that the agency told me they had never seen in their nearly 100 years of appointment. They have no process in place to stop her.

My last recourse has been to seek an anti-harassment order, and all I keep hearing is that people have 1st amendment rights, and that the only reason I was given a hearing is because of the private information she's posted.

This woman is causing me extreme distress every single day. People have called in fake CPS reports. I've had to warn 911 dispatch for fake calls. She's abusing our system to abuse me, and no one deserves this. I was clean and sober for more than a decade before this started. She's driven me into darkness, and I have to fight suicidal thoughts of escape almost every single day. I overdosed last month from this abuse. I am struggling to stay alive, and I'm not the only one who feels backed into a corner because of this type of abuse on the internet.

Thank you for championing this law. Thank you for recognizing the damage that this behavior can cause.

# MOTION FOR JUDICIAL NOTICE EXHIBIT

# SECTION:

## Petition

Certification - State of Washington/County of King
The undersigned, duly authorized clerk of the King County
District Court, Washington, hereby certifies that the document
on which this stamp is imprinted is a true and correct copy of
the original filed in this court.
Signed this _17_ day of _February_ 20_22_

_____
Court Clerk

**State of Washington**
**King County District Court**

**EAST DIVISION, REDMOND COURTHOUSE**

No. 22CIV01704KCX

**Order Re Petition/Motion**
**Harassment**

Cher Swan Scarlett

**Petitioner (Protected Person)**
vs.

(Optional Use) (ORDMTP)
☐ Clerk's Action Required
Next Hearing Date/Time:

February 15, 2022          At: 1:30 PM

At:

Ashley Marie Gjovik

**Respondent (Restrained Person)**

Redmond Courtroom 2
8601 160th Avenue NE
Redmond, WA 98052

---

***This Matter*** is before the court upon the request of (name) petitioner above_____, for a:

☒ Temporary Order          ☐ Full Order          ☐ Renewal Order
☐ Modification Order        ☐ Termination Order

and the ***Court Finding:***

☐  Petitioner  ☒ Respondent    did not appear.
☐  Petitioner **requested dismissal** of petition.
☐  This **order materially changes** an existing order. A hearing after notice is necessary.
☐  No notice of this request has been made or attempted to the opposing party.
☐  The petitioner has failed to demonstrate that there is sufficient basis to enter a temporary order without notice to the opposing party.
☐  The harassment protection order **petition does not list specific incidents and approximate dates** of harassment.
☒  The **reasons for denial** of the order are:

> Respondent lives in California. There is no emergency/irreparable harm if emergency order not issued. Many of the complained-of actions serve a lawful purpose (filing with NLRB) and involve free speech. However, other allegations may have merit, thus this Court will set a full-order hearing.

☒  **A preponderance of the evidence has not established** that there has been harassment.
☐  Other:

*Renewal:*

☐ The respondent proved by a preponderance of the evidence that the respondent will not resume harassment of the petitioner when the protection order expires.

☐ Other:

---

*Modify or Terminate:*

☐ The court finds that the **Respondent has previously filed a motion** to modify or terminate during the current 12-month period following entry of the order and is not eligible for the relief requested.

☐ Other:

---

**The court orders that:**

☐ The request to waive the filing fee is denied.

☐ The request for a temporary order is denied and the case is dismissed.

☐ The request for a full order is denied, and the petition is dismissed. Any previously entered temporary order expires at _____ today.

☒ The request for a temporary order is denied and the clerk is directed to set a hearing on the petition.

☐ The request before the court is denied, provided that it may be renewed after notice has been provided to the opposing party according to the Civil Rules.

☐ The request to modify, terminate, or renew the order dated _____ is denied.

☐ The request for a temporary/final Order to Surrender Weapons is denied.

☐ If any firearms or dangerous weapons have been surrendered under this cause number, they shall be released to the respondent, absent some other legal reason that may exist prohibiting the respondent from possessing them.

☒ The parties are directed to appear for a hearing as shown on page one.

The requesting party shall make arrangements for service of the petition/motion and this order on (name) <u>Respondent</u> by law enforcement, professional process server, a person who is 18 or older, competent to be a witness, and not a party to the case. A Return of Service shall be filed with the clerk at or before the hearing.

***Failure to Appear at the Hearing May Result in the Court Granting All of the Relief
Requested in the Petition or Motion.***

This order is dated and signed in open court.

Date: February 1, 2022 _____ Time 1:47 PM _____

Judge    Lisa N. O'Toole

I acknowledge receipt of a copy of this order:

➢ _____
Signature of Respondent/Lawyer  WSBA No.

➢ _____
Signature of Petitioner/Lawyer   WSBA No.

Print Name _____ Date _____

Print Name Oher Scarlett          Date 2/1/2022

Print Name                         Date

**FILED**

JAN 3 1 2022

KCDC · East Division
Bellevue

| STATE OF WASHINGTON<br>King County District Court<br>East Division, Bellevue Courthouse | |
|---|---|
| | No. _22CIV01144KCx_ |
| Cher Swan Scarlett | **Petition for an Order for Protection -** |
| Petitioner, | ☒ **Harassment (PTORAH) and/or** |
| vs. | ☐ **Stalking (PTORSTK)** |
| Ashley Marie Gjovik | |
| **Respondent.** | |

➢ **This is a Petition for an Order for Protection against Harassment and/or Stalking as checked in the caption.**

I believe:

☒ I am a victim of stalking.
☐ _____ (name) is the victim of stalking and he/she is a minor or vulnerable adult.

The respondent has been
- stalking the victim either in person or cyber stalking, **and**
- repeatedly contacting the victim or attempting to contact or monitor the victim for no lawful purpose and his/her actions caused the victim to feel intimidated, frightened, or threatened.

☒ I am a victim of unlawful harassment.
☐ _____ (name) is a victim of unlawful harassment and he/she is a minor.

The respondent's actions toward the victim have seriously alarmed, annoyed, or harassed the victim, or are detrimental to the victim and serve no legitimate or lawful purpose. The respondent's actions have caused substantial emotional distress to the victim or caused me to fear for the well-being of my child.

How do the victim and respondent know each other?  Both worked at Apple, Inc

I have given a detailed explanation below.

1. **Who is the petitioner?**

My name is (please print) Cher Scarlett                                    . I am the petitioner.

☒ I am 18 or older and I am petitioning on my own behalf.

☐ I am 16 or 17 and I am petitioning on my own behalf.

☒ I am the parent or guardian of child/ren under age 18 and I am petitioning on their behalf:

| Children's Name/s (First, Middle Initial, Last) | Age |
|---|---|
| ▨▨▨ | ▨ |
|  |  |
|  |  |
|  |  |

☐ I am not the parent or guardian, but the child/ren live/s with me and I am petitioning on their behalf and the respondent is not a parent.

| Children's Name/s (First, Middle Initial, Last) | Age |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

☐ I am filing this petition on behalf of petitioner, (name) _____, a vulnerable adult as defined in RCW 74.34.020, who is a victim of stalking. I am an interested person as defined in RCW 74.34.020(10). My relationship to this petitioner is _____.

2. **Is the respondent 18 years of age or older?**

☒ Yes ☐ No

*(If no, use the Petition for Order for Protection Harassment/Stalking Respondent Under Age 18, instead of this petition.)*

3. **Where do the parties live?**

Petitioner lives in King                                    County.

Did the petitioner leave their residence because of stalking conduct and that is the county of their new residence?

☐ Yes ☒ No

Children named above live in King                                    County.

Respondent lives in Santa Clara (California) _____ County.

4. **Where did the Conduct take place?**

The conduct took place in King (online) _____ County.

**Statement describing the victim/s need for protection from the respondent**

- Write clearly. If you need more space below, attach additional page/s. Do not write on the back.

5. **Describe what the Respondent did or said that you think is harassment or stalking.**
    - You must describe what the respondent actually said.
    - You must describe what the respondent actually did.

**The respondent has committed acts of harassment or stalking as follows:**

**A.** Describe the most recent incident of harassment or stalking.

Date and time (on or around): 1/31/2022

Location: Twitter

What did the respondent do or say that you believe to be harassing or stalking behavior?

At the beginning of December 2021, Ashley Marie Gjovik began engaging in
targeted harassment against me by posting defamatory content and other false
statements about me on her Twitter account. She has said that every anonymous
account criticizing her is me, none of them are me. She has stated every single tweet
that doesn't name her that talks about a generalization she thinks is about her is me
harassing her. I'm not. She has said that because I am cited in Apple's defense
against her, she is not going to stop. She thinks I have somehow manipulated
members of the press from speaking to her, or writing about her in the way she
wants, after harassing and defaming reporters at WaPo, NYT, npr, NBC, and
Business Insider. She has quoted me as saying things I've not said to try to defame
me and get her followers to harass me. I blocked her many months ago. She blocked
me as well.

At the end of the month, this escalated into cyberstalking me and my family
members, and publishing personal and private information about myself and my
family members on her Twitter account with the malicious intention of stoking her
followers into harassing me as well. As a result, a number of her followers filed
false CPS reports against me, and began to harass my family.

Out of desperation, I connected with a mutual friend, Melissa McEwen, to try to get
her to stop. She told this mutual friend she was doing it because I am cited in Apple,
Inc's defense against her in one of her NLRB and DOL cases against the company.
She told the mutual friend she would only stop engaging in the behavior if I
promoted her Twitter account (~8,000 followers) on my own Twitter account
(~55,000), and promoted her GoFundMe (goal of $100,000 for misc purposes). I
refused to oblige, and sent a report to the FBI, suspecting that this was extortion

·

How did the respondent make these statements?  ☐ in person ☐ mail/written notes
☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter)
☐ other (describe): _____.

**B.** Describe other incidents of harassment or stalking.  For <u>each</u> incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

---

because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.

I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.

On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.

https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1

https://twitter.com/ashleygjovik/with_replies (there's a lot more here)

https://twitter.com/ashleygjovik/status/1479956961705795585

https://twitter.com/ashleygjovik/status/1480295321284472835

https://twitter.com/ashleygjovik/status/1480326596376477696

https://twitter.com/ashleygjovik/status/1481027837163311104

---

**6.** How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

---

I am looking for another place to move to immediately for our safety. I am scared of what she will do if no one stops her. I am afraid of what will happen if her charges are not meritous. I am afraid of this woman and her followers.

---

7. Has the respondent used, displayed, or threatened to use a firearm or other dangerous weapon in a felony? Please describe:

> No

8. Is the respondent ineligible to possess a firearm under the provisions of RCW 9.41.040? Please describe:

> No

9. Does possession of a firearm or other dangerous weapon by the respondent present a serious and imminent threat to public health or safety, or to the health or safety of a victim? Please describe:

> Unsure, behavior leads me to believe she is unwell

10. Do you have any evidence of the harassment or stalking conduct other than testimony?
- [ ] No
- [x] Yes. I have attached the following evidence:
  - [ ] Copy of mail or written notes
  - [ ] Copy of text messages
  - [ ] Copy of email messages
  - [x] Copy of social media messages
  - [x] Police report
  - [ ] Declaration or Affidavit from the following witness: _____
  - [ ] Other (describe): _____

11. Has/have the **victim/s or the respondent** ever requested or obtained protection from the other person in a restraining order, civil protection order, or criminal no-contact order?
If yes, list the type of order, the name of the court and the approximate date, and whether the request was granted:

> No

12. Is there any other litigation between the victim/s and the respondent? This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes. If yes, provide case number/s if known, type of case, and name of court:

NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

➤ **Requests**

**13. I ask the Court for an order approving the following requests for protection:**

I Request an **Order for Protection** following a hearing that will:

☒ **No-Contact**: Restrain the respondent from making any attempts or having any contact, including nonphysical contact, with the person/s to be protected, directly, indirectly, or through third parties regardless of whether those third parties know of the order, except for mailing of court documents.

☒ **Surveillance**: Prohibit or restrain the respondent from making any attempt to keep or from keeping the person/s to be protected under surveillance, including electronic surveillance.

☐ **Exclude from places**: Exclude the respondent from the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected.

☐ **Stay Away**: Prohibit or restrain the respondent from entering or being within, or from knowingly coming within, or knowingly remaining within _____ (distance) of the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected. ☐ other locations: _____.

☐ **Other**:
Stop harassment on Twitter and other social media platforms

☐ **Evaluation**: Order the respondent to have a ☐ mental health ☐ chemical dependency evaluation. ☐ other: _____.

☒ **Pay Fees and Costs**: Require the respondent to pay fees and costs of this action, which may include administrative court costs and service fees and petitioner's costs including attorneys' fees.

☐ **Surrender Firearms**: Require the respondent to immediately surrender all firearms, other dangerous weapons, and any concealed pistol licenses, and prohibit the respondent from accessing, obtaining or possessing firearms, or other dangerous weapons, or concealed pistol licenses.

☒ **Duration**: Remain effective longer than one year because respondent is likely to resume acts of unlawful harassment or stalking conduct against the persons to be protected if the order expires in a year.

**Emergency temporary protection (up to 14 days) until the court hearing:**

☒ An emergency exists as described below. I request that a **Temporary Protection Order** granting the relief I requested above for a no-contact, surveillance, exclude from places, or stay away order be issued immediately, without prior notice to the respondent, be effective until the hearing.

☐ I also request a temporary surrender of all firearms, other dangerous weapons, and concealed pistol licenses without notice to the other party because irreparable injury could result if an order is not issued until the hearing.

What irreparable harm would result if an order is not issued immediately without prior notice to the respondent?

I have already struggled to find employment because of her harassment, along with harassment from her followers that could lead to misuse of 911 dispatch resulting in irreparable harm to myself or to my child.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated: 1/31/2022 _____ at Kirkland _____ Washington.

Petitioner

Cher Scarlett

Print or type name