1    (Additional counsel on following page)

2    JESSICA R. PERRY (SBN 209321)
     jperry@orrick.com
3    MELINDA S. RIECHERT (SBN 65504)
     mriechert@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
5    Menlo Park, CA 94025-1015
     Telephone:    +1 650 614 7400
6    Facsimile:    +1 650 614 7401

7    KATHRYN G. MANTOAN (SBN 239649)
     kmantoan@orrick.com
8    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
9    405 Howard Street
     San Francisco, CA 94105-2669
10   Telephone:    +1 415 773 5700
     Facsimile:    +1 415 773 5759

11
     Attorneys for Defendant
12   Apple Inc.

13                        UNITED STATES DISTRICT COURT

14                     NORTHERN DISTRICT OF CALIFORNIA

15                          SAN FRANCISCO DIVISION

16

17
     ASHLEY GJOVIK,                      Case No. 23-cv-4597-EMC
18
                    Plaintiff,           **DEFENDANT APPLE INC.'S NOTICE
19                                       OF MOTION AND MOTION TO
             v.                          DISMISS PLAINTIFF'S SECOND
20                                       AMENDED COMPLAINT;
     APPLE INC.,                         MEMORANDUM OF POINTS AND
21                                       AUTHORITIES IN SUPPORT
                    Defendant.           THEREOF**
22
                                         Dept:      Courtroom 5, 17th Floor
23                                       Judge:     Honorable Edward M. Chen
                                         Date:      February 29, 2024
24                                       Time:      1:30 p.m.

25

26

27

28

1    KATE E. JUVINALL (SBN 315659)
     kjuvinall@orrick.com
2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     631 Wilshire Blvd., Suite 2-C
3    Santa Monica, CA 90401
     Telephone:     +1 310 633 2800
4    Facsimile:      +1 310 633 2849

5    RYAN D. BOOMS (SBN 329430)
     rbooms@orrick.com
6    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1152 15th Street, N.W.
7    Washington, D.C. 20005-1706
     Telephone:     +1 202 339 8400
8    Facsimile:      +1 202 339 8500

9    Attorneys for Defendant
     Apple Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION/STATEMENT OF ISSUES ................................................................. 1

II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS.............................................................. 2

III.    LEGAL STANDARD ...................................................................................................... 4

IV.     ARGUMENT ................................................................................................................... 4

      A.      PLAINTIFF'S FIFTH CLAIM UNDER RICO SHOULD BE DISMISSED
            BECAUSE THE PSLRA BARS IT, AND SHE FAILS TO STATE A
            CLAIM UNDER ANY RICO PROVISION............................................................. 4

            1.      THE PSLRA BARS PLAINTIFF'S RICO CLAIM BECAUSE IT
                   IS PREMISED ON AN ALLEGED SECURITIES FRAUD
                   SCHEME. ............................................................................................ 5

            2.      PLAINTIFF FAILS TO STATE A CLAIM UNDER ANY RICO
                   PROVISION. ....................................................................................... 7

                  A.      PLAINTIFF FAILS TO ALLEGE A RELEVANT INJURY
                        UNDER SECTION 1962(A). ..................................................... 7

                  B.      PLAINTIFF'S SECTION 1962(C) CLAIM FAILS
                        BECAUSE SHE DOES NOT ALLEGE AN
                        "ENTERPRISE" DISTINCT FROM APPLE OR A
                        "PATTERN OF RACKETEERING ACTIVITY."......................... 8

                  C.      PLAINTIFF FAILS TO STATE A SECTION 1962(D)
                        RICO CLAIM BECAUSE SHE FAILS TO STATE A
                        SECTION 1962(C) RICO CLAIM. ................................................. 12

      B.      PLAINTIFF'S FIRST CLAIM UNDER SOX FAILS BECAUSE SHE
            FAILS TO ALLEGE THAT SHE COMPLAINED ABOUT CONDUCT
            THAT SHE REASONABLY BELIEVED VIOLATED A PROVISION
            ENUMERATED IN 18 U.S.C. § 1514A(A)(1). ....................................... 12

      C.      PLAINTIFF'S SECOND CLAIM UNDER DODD-FRANK SHOULD BE
            DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD PROTECTED
            ACTIVITY UNDER SOX OR BECAUSE SHE DID NOT COMPLAIN
            TO THE SEC. ................................................................................. 17

      D.      PLAINTIFF'S THIRD CLAIM UNDER THE BANE ACT FAILS
            BECAUSE SHE DOES NOT ALLEGE THAT APPLE INTERFERED
            WITH ANY RIGHT BY THREAT, INTIMIDATION, OR COERCION. .......... 18

      E.      PLAINTIFF'S FOURTH CLAIM UNDER THE RALPH ACT FAILS
            BECAUSE SHE ALLEGES NO FACTS SUGGESTING ANY THREAT
            OF VIOLENCE BY APPLE, OR THAT ANY ALLEGED CONDUCT
            WAS BASED ON POLITICAL AFFILIATION OR ANY PROTECTED
            CHARACTERISTIC. ........................................................................ 20

      F.      PLAINTIFF'S EIGHTH CLAIM UNDER CAL. LAB. CODE § 98.6
            FAILS BECAUSE "FREE SPEECH" IS NOT A SUFFICIENT BASIS TO
            STATE A CLAIM UNDER THE PREDICATE STATUTE CAL. LAB.
            CODE § 96(K). ............................................................................... 21

      G.      PLAINTIFF'S SIXTH CLAIM ALLEGING ULTRAHAZARDOUS
            ACTIVITIES SHOULD BE DISMISSED AS TIME-BARRED AND/OR
            BECAUSE SHE DOES NOT ALLEGE ANY ULTRAHAZARDOUS
            ACTIVITIES UNDER THE LAW. ....................................................... 22

1      H.      PLAINTIFF'S ELEVENTH CLAIM ALLEGING NUISANCE PER SE
               SHOULD BE DISMISSED BECAUSE SHE DOES NOT ALLEGE AN
2              APPLICABLE UNDERLYING LAW .................................................................. 25

3    V.      CONCLUSION ............................................................................................................. 25

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 4, 16, 18, 20

*Bachilla v. Pac. Bell Tel. Co.*,
2007 WL 2825924 (E.D. Cal. Sept. 25, 2007) ........................................ 20

*Barajas v. Carriage Servs., Inc.*,
2020 WL 1189854 (N.D. Cal. Mar. 12, 2020) ........................................ 21

*Basco v. Toyota Motor Corp*,
2010 WL 11462992 (C.D. Cal. Mar. 3, 2010) .......................................... 8

*Borrello v. Respironics Cal., LLC*,
2023 WL 5986135 (S.D. Cal. Sept. 14, 2023) ........................................ 18

*In re Burbank Env't Litig.*,
42 F. Supp. 2d 976 (C.D. Cal. 1998) ............................................... 24, 25

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ........................................................... 11

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ..................................................................... 9

*City of Pontiac Gen. Employees' Ret. Sys. v. Bush*,
2022 WL 1467773 (N.D. Cal. Mar. 1, 2022) ...................................... 13, 14

*Coronavirus Rep. v. Apple Inc.*,
2021 WL 5936910 (N.D. Cal. Nov. 30, 2021), *aff'd*, 85 F.4th 948 (9th Cir.
2023) ............................................................................. 6, 8, 9, 10

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) ........................................................... 9

*Cortez v. City of Oakland*,
2017 WL 1650568 (N.D. Cal. May 2, 2017) ...................................... 18, 19

*Davies v. GetFugu, Inc.*,
2010 WL 11597458 (C.D. Cal. Aug. 26, 2010) ....................................... 6

*Diaz v. Transatlantic Reinsurance Co.*,
2016 WL 3568071 (S.D.N.Y. June 22, 2016) ...................................... 14, 15

*Digital Realty Tr., Inc. v. Somers*,
    583 U.S. 149 (2018) ........................................................................................ 17

*Edwards v. Post Transportation Co.*,
    228 Cal. App. 3d 980 (1991) ................................................................... 24, 25

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ................................................... 5, 6, 7

*Erhart v. Bofi Holding, Inc.*,
    2016 WL 5369470 (S.D. Cal. Sept. 26, 2016) ........................................... 13

*Erhart v. Bofi Holding, Inc.*,
    612 F. Supp. 3d 1062 (S.D. Cal. 2020) ...................................................... 17

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) .................................................................... 21

*Focus 15, LLC v. NICO Corp.*,
    2022 WL 2355537 (N.D. Cal. June 30, 2022) ............................................. 4

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal.4th 797 (2005) ................................................................................ 23

*Gauthier v. Shaw Grp., Inc.*,
    2012 WL 6043012 (W.D.N.C. Dec. 4, 2012) ............................................ 17

*Goe Eng'g Co. v. Physicians Formula Cosms., Inc.*,
    1997 WL 889278 (C.D. Cal. June 4, 1997) ........................................... 24, 25

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,
    145 F. Supp. 3d 1000 (S.D. Cal. 2015) ................................................. 24, 25

*Greenstein v. Peters*,
    2009 WL 722067 (C.D. Cal. Mar. 16, 2009) ............................................... 9

*Grinzi v. San Diego Hospice Corp.*,
    120 Cal. App. 4th 72 (2004) ...................................................................... 21

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) ................................................................................... 11

*Hamilton v. Juul Labs, Inc.*,
    2020 WL 5500377 (N.D. Cal. Sept. 11, 2020) .......................................... 22

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ..................................................................... 12

*In the Matter of: Douglas Denneny, Complainant, v. MBDA, Inc., Et Al.,*
   ARB Case No. 2018-0027, ALJ Case No. 2016-SOX-00032, 2021 WL 423979
   (Jan. 8, 2021) ........................................................................................................ 16

*In re Jamster Mktg. Litig.,*
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ...................................................... 11

*Katzel v. Am. Int'l Grp.,*
   2022 WL 17251362 (S.D.N.Y. Nov. 28, 2022) .................................................... 16

*Kroeger v. L3 Techs., Inc.,*
   2018 WL 1357363 (C.D. Cal. Mar. 15, 2018) ..................................................... 20

*Libman v. United States,*
   2022 WL 18284664 (C.D. Cal. Dec. 1, 2022) ..................................................... 19

*Limbu v. UST Glob., Inc.,*
   2017 WL 8186674 (C.D. Cal. Apr. 20, 2017) ................................................. 16, 17

*Livingston v. Wyeth, Inc.,*
   520 F.3d 344 (4th Cir. 2008) ............................................................................... 15

*Lopez v. Wachovia Mortg.,*
   2009 WL 4505919 (E.D. Cal. Nov. 20, 2009) ..................................................... 22

*Lucero v. IRA Servs., Inc.,*
   2019 WL 5812175 (N.D. Cal. Nov. 7, 2019) ......................................................... 5

*Magnuson v. Exelon Corp.,*
   658 F. Supp. 3d 652 (C.D. Ill. 2023) ................................................................... 16

*McGowan v. Weinstein,*
   505 F. Supp. 3d 1000 (C.D. Cal. 2020) ............................................................... 12

*Merrick Gables Ass'n, Inc. v. Town of Hempstead,*
   691 F. Supp. 2d 355 (E.D.N.Y. 2010) ................................................................. 23

*Metaxas v. Lee,*
   503 F. Supp. 3d 923 (N.D. Cal. 2020) ................................................................. 11

*Meyers v. City of Fresno,*
   2011 WL 902115 (E.D. Cal. Mar. 15, 2011) ....................................................... 18

*Mocha Mill, Inc. v. Port of Mokha, Inc.,*
   2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) ....................................................... 11

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.,*
   2018 WL 3439372 (N.D. Cal. July 17, 2018) ..................................................... 5, 6

APPLE INC.'S MOTION TO DISMISS
CASE NO. 23-CV-4597-EC

*Moreno v. Cnty. of Los Angeles*,
2022 WL 1515684 (C.D. Cal. Feb. 28, 2022) ................................................................. 20

*Napear v. Bonneville Int'l Corp.*,
2023 WL 3025258 (E.D. Cal. Apr. 20, 2023) ................................................................. 22

*Nationstar Mortg. LLC v. Presley*,
2023 WL 121746 (E.D. Cal. Jan. 6, 2023) ....................................................................... 9

*Nielsen v. AECOM Tech. Corp.*,
762 F.3d 214 (2d Cir. 2014) ........................................................................................... 15

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) ............................................................................................ 8

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ..................................................................................... 9, 10

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768 (9th Cir. 2002) ..................................................................................... 6, 10

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
307 F. Supp. 3d 583 (S.D. Tex. 2018) ........................................................................... 14

*Ramirez v. City of San Jose*,
2022 WL 875643 (N.D. Cal. Mar. 24, 2022) ................................................................. 20

*Richter v. Ausmus*,
2021 WL 580055 (N.D. Cal. Feb. 16, 2021) ................................................................. 18

*RJ v. Cigna Behav. Health, Inc.*,
2021 WL 1110261 (N.D. Cal. Mar. 23, 2021) ................................................................. 9

*Ronnie v. Off. Depot, LLC*,
81 F.4th 1345 (11th Cir. 2023) ...................................................................................... 15

*Sams v. Cnty. of Riverside*,
2019 WL 3069180 (C.D. Cal. June 14, 2019) ............................................................... 19

*Schaldach v. Dignity Health*,
2013 WL 2292054 (E.D. Cal. May 23, 2013) ........................................................... 18, 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......................................................................................... 9

*Schwartzman, Inc. v. General Elec. Co.*,
848 F. Supp. 942 (D.N.M. 1993) ................................................................................... 23

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .......................................................................................... 15

*Snyder v. Alight Solutions, LLC,*
    2021 WL 4622392 (C.D. Cal. May 5, 2021) ........................................................ 18

*Spindler v. State Bar of California,*
    2020 WL 2559442 (C.D. Cal. Jan. 20, 2020) ...................................................... 18

*State of Cal. on Behalf of State Dep't of Toxic Substances Control v. Verticare, Inc.,*
    1993 WL 245544 (N.D. Cal. Mar. 1, 1993) ....................................................... 23

*Temming v. Summus Holdings, LLC,*
    2021 WL 5014854 (N.D. Cal. Oct. 28, 2021) .................................................. 4, 8

*Tesoro Ref. & Mktg. Co. LLC v. City of Long Beach,*
    334 F. Supp. 3d 1031 (C.D. Cal. 2017) ............................................................. 25

*Tides v. The Boeing Co.,*
    644 F.3d 809 (9th Cir. 2011) ....................................................................... 13, 16

*Van Asdale v. Int'l Game Tech.,*
    577 F.3d 989 (9th Cir. 2009) ............................................................................. 13

*Verfuerth v. Orion Energy Sys., Inc.,*
    879 F.3d 789 (7th Cir. 2018) ............................................................................. 16

*Wagh v. Metris Direct, Inc.,*
    363 F.3d 821 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ........................................ 7

*Wagner v. S. California Edison Co.,*
    840 F. App'x 993 (9th Cir. 2021) ..................................................................... 17

*Walter v. Drayson,*
    538 F.3d 1244 (9th Cir. 2008) ........................................................................... 10

*Yates v. E. Side Union High Sch. Dist.,*
    2021 WL 3665861 (N.D. Cal. Aug. 18, 2021) .................................................. 19

*Zanghi v. Ritella,*
    2021 WL 4392756 (S.D.N.Y. Sept. 24, 2021), *appeal dismissed sub nom. Zanghi v. Callegari*, 2023 WL 1097560 (2d Cir. Jan. 30, 2023) .............. 5, 6, 7

**Statutes**

15 U.S.C. § 78u-6 .................................................................................................... 17

18 U.S.C. § 1512 ................................................................................................... 5, 7

18 U.S.C. § 1514A .......................................................................................... *passim*

18 U.S.C. § 1961 ................................................................................................. 8, 11

18 U.S.C. § 1962 ................................................................................................ *passim*

18 U.S.C. § 1964 ................................................................................................. 5, 6

Cal. Civ. Code § 51.7 ("Ralph Civil Rights Act") ........................................ 20, 21

Cal. Civ. Code § 52.1 ("Bane Civil Rights Act") ......................................... 18, 19

Cal. Civ. Proc. Code § 312 ................................................................................ 22

Cal. Civ. Proc. Code § 335.1 ............................................................................. 22

Cal. Civ. Proc. Code § 340.8 ............................................................................. 22

Cal. Lab. Code § 96 ............................................................................... 2, 21, 22

Cal. Lab. Code § 98.6 ............................................................................ 2, 21, 22

Cal. Pen. Code § 67 ........................................................................................... 10

Cal. Pen. Code § 641.3 ...................................................................................... 10

Comprehensive Environmental Response, Compensation, and Liability Act
    (CERCLA), 42 U.S.C. §§ 9601 *et seq.* ...................................................... 23, 24

Freedom of Information Act (FOIA), 5 U.S.C. § 552 ...................................... 10

National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 *et seq.* .................. 20

Private Securities Litigation Reform Act (PSLRA), Pub. L. 104-67, § 107, 109
    Stat. 737 (1995) ...................................................................................... 4, 5, 6, 7

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961
    *et seq.* .................................................................................................. *passim*

**Other Authorities**

29 C.F.R. § 1980.104(e)(2)(i)-(iv) ................................................................... 13

40 C.F.R. § 2.107 ............................................................................................... 10

Federal Rule of Civil Procedure 9(b) ........................................................... 4, 11

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 4

Federal Rule of Civil Procedure 12(f) ............................................................. 21

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO PLAINTIFF ASHLEY GJOVIK:

PLEASE TAKE NOTICE that on February 29, 2024, at 1:30 p.m. in Courtroom 5, on the 17th Floor of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. will move the Court for an Order dismissing the First through Sixth, Eighth and Eleventh Claims alleged against Apple in Plaintiff Ashley Gjovik's Second Amended Complaint on the grounds that Plaintiff failed to state a claim upon which relief can be granted, and dismissal is proper under Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion, Memorandum of Points and Authorities, the complete pleadings and records on file, and other evidence and arguments as may be presented at the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION/STATEMENT OF ISSUES**

Apple terminated Plaintiff's employment in September 2021. Two years later, she filed a sprawling complaint arguing Apple spearheaded a far-reaching scheme to allegedly mislead governmental regulators and the broader market. While this is a straightforward wrongful termination case, Plaintiff has attempted to turn it into much more by asserting several other claims, including claims under the Sarbanes-Oxley Act ("SOX"), the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Absent from the Second Amended Complaint ("Complaint" or "SAC"), however, are specific factual allegations that – even if Plaintiff were able to prove their truth – would entitle her to the relief she seeks under most of the claims pled.

Specifically, Apple moves to dismiss the following claims on these bases:

- The First Claim under SOX should be dismissed because Plaintiff fails to allege facts that, if true, would demonstrate that she complained about conduct that she reasonably believed violated a provision enumerated in 18 U.S.C. § 1514A(a)(1).

- The Second Claim under Dodd-Frank should be dismissed because it is largely derivative of her First Claim. To the extent her SOX claim and Dodd-Frank claim are based on the same purported complaints, her Dodd-Frank claim fails for the same reasons her SOX claim fails.

To the extent her Dodd-Frank claim is based on other purported complaints, her Dodd-Frank claim fails because she fails to allege that she made such complaints to the SEC.

- The Third Claim under the Bane Civil Rights Act should be dismissed because Plaintiff fails to allege facts showing Apple interfered with Plaintiff's constitutional or statutory rights, or that such interference included actual or attempted threats, intimidation, or coercion.

- The Fourth Claim under the Ralph Civil Rights Act should be dismissed because Plaintiff does not allege facts suggesting any threat of violence by Apple, or that any conduct by Apple was based on her political affiliation or other protected characteristic.

- The Fifth Claim under RICO should be dismissed because the Private Securities Litigation Reform Act ("PSLRA") bars it. Moreover, Plaintiff fails to state a claim under 18 U.S.C. § 1962(a) because she fails to plead that Apple used or invested money it received from supposed racketeering to injure her, and she fails to state a claim under 18 U.S.C. § 1962(c) and (d) because she fails to allege the existence of an "enterprise" separate and distinct from Apple or a pattern of racketeering activity.

- The Sixth Claim asserting strict liability for ultrahazardous activities should be dismissed because it is time-barred and/or operating a facility on a Superfund site and operating a silicon manufacturing facility are not ultrahazardous activities.

- The Eighth Claim under California Labor Code section 98.6 is predicated on an alleged violation of California Labor Code section 96(k) and should be dismissed because Plaintiff fails to allege she was terminated for asserting a recognized constitutional right.

- The Eleventh Claim alleging nuisance per se should be dismissed because Plaintiff has not, as required, identified a law that *expressly* declares it is a nuisance to operate a silicon manufacturing facility.

This Court should dismiss these claims so that the parties can focus on litigating the merits of the remaining claims.

## II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's Second Amended Complaint is a sprawling tome of 666 pages and 1,620 paragraphs. Many of the allegations are irrelevant to any of the claims stated in the Complaint. Of

those that remain, Plaintiff's allegations include, in relevant part, the following.[1]

Plaintiff worked for Apple from February 2015 until Apple terminated her employment in September 2021. SAC ¶75. Per Plaintiff, Apple told her it was terminating her employment because she leaked confidential, product-related information and refused to participate in an investigation into her misconduct. *Id.* ¶1537. Plaintiff contends the termination was in retaliation for raising concerns to government agencies and others (*see, e.g., id.* ¶758).

In March 2021, Apple emailed Plaintiff and other Apple employees about upcoming vapor intrusion testing at the office. *Id.* ¶217. In the following months, Plaintiff expressed safety concerns about vapor intrusion, both internally (*see, e.g.*, *id.* ¶¶217-18) and to various government entities, including the EPA (*see, e.g., id.* ¶325). Sometime before her termination, Plaintiff also alleges she complained internally to Apple and to the SEC about other issues, including allegedly false statements about Apple's practices (*id.* ¶771) and alleged conflicts of interest (*id.* ¶¶804, 812). She also alleges that she complained about an alleged sanctions violation (*id.* ¶828) and alleged misconduct related to COVID-19 vaccines (*id.* ¶837).

While expressing safety concerns about the office, Plaintiff alleges she "became caught up in" a "regulatory-compliance-avoidance scheme" conducted by Apple through an alleged enterprise Plaintiff calls "Worldwide Loyalty." *See id.* ¶1. Plaintiff claims Apple, through Worldwide Loyalty, is "engaged in systemic criminal conduct in pursuit of enabling Apple's race to the bottom on regulatory compliance" and other matters. *Id.* ¶937; *see* ¶546 (alleging existence at Apple of an "ex-Intelligence/ex-military corporate paramilitary team, the 'Worldwide Loyalty Team'"). Under this purported "scheme," Plaintiff claims Apple shared false information (or omitted and failed to transmit legally required information) with government agencies and the public to artificially increase its stock price. *Id.* ¶¶909, 946-47. Plaintiff further argues Apple retaliates against and intimidates whistleblowers (including Plaintiff), preventing government inspections and investigations into those complaints. *Id.* ¶948.

---

[1] For purposes of this Motion only and as required under the Federal Rules of Civil Procedure, Apple recites Plaintiff's factual allegations as if they were true, even though they are not. Given the procedural posture of this Motion, Apple will not present any additional or contrary facts regarding Plaintiff's employment at Apple, her termination, or her claims in this case; at the appropriate time, Apple will present its defense.

APPLE INC.'S MOTION TO DISMISS
CASE NO. 23-cv-4597-EC

Plaintiff claims that in 2015 Apple began operating a semiconductor facility that allegedly vented gases near an apartment complex where Plaintiff lived in 2020. *See id.* ¶¶60, 62, 694. She contends that shortly after she moved into the apartment complex she fell ill and went on short-term disability. *Id.* ¶¶172, 175. She believes her illness was due to gases from the facility. *Id.* ¶694.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations that when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If Plaintiff's allegations do not bring her claims "across the line from conceivable to plausible," her Complaint must be dismissed. *Id.* at 681.

Additionally, allegations of fraud—such as those that underlie (in whole or in part) Plaintiff's RICO claim—must be pled with a heightened degree of particularity per Rule 9(b). *See, e.g., Focus 15, LLC v. NICO Corp.*, 2022 WL 2355537, at *3 (N.D. Cal. June 30, 2022) ("[P]redicate acts involving fraud must be pleaded with particularity as required by Rule 9(b)."). A RICO claim asserting fraudulent predicate acts "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Id.* "Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Temming v. Summus Holdings, LLC*, 2021 WL 5014854, at *3 (N.D. Cal. Oct. 28, 2021).

## IV. ARGUMENT

### A. Plaintiff's Fifth Claim Under RICO Should Be Dismissed Because the PSLRA Bars It, and She Fails to State a Claim Under Any RICO Provision.

Plaintiff alleges violations of RICO under 18 U.S.C. § 1962(a), (c), and (d). At the center of her RICO claim is a purported scheme wherein "Apple transmits [] false statements to the government [and] shareholders" (SAC ¶¶947) with an intent to "inflate [its] stock price" (*id.* ¶909). In other words, the lynchpin of Plaintiff's RICO claim is an alleged securities fraud scheme.

As a matter of law, RICO claims premised on purported securities fraud schemes must be dismissed because the PSRLA amended RICO to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a

violation of section 1962." 18 U.S.C. § 1964(c).

Plaintiff's RICO claim fails for additional reasons. She lacks standing for a section 1962(a) claim because she fails to allege that Apple used or invested money it received from supposed racketeering to injure her. Her section 1962(c) claim fails because she does not (and cannot) allege an enterprise distinct from Apple or a pattern of racketeering activity. And her section 1962(d) claim, premised on a conspiracy to violate section 1962(c), fails with her section 1962(c) claim.

### 1. The PSLRA Bars Plaintiff's RICO Claim Because It Is Premised on an Alleged Securities Fraud Scheme.

"Courts have consistently concluded that where a plaintiff alleges a 'single scheme' and any predicate act is barred under the PSLRA, the entire RICO claim is precluded." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2018 WL 3439372, at *11 (N.D. Cal. July 17, 2018); *Lucero v. IRA Servs., Inc.*, 2019 WL 5812175, at *4 (N.D. Cal. Nov. 7, 2019) (dismissing RICO claim with prejudice, reasoning that "the lynchpin of the alleged scheme was securities fraud"). That the complaint alleges non-securities fraud predicate acts is of no consequence. *Zanghi v. Ritella*, 2021 WL 4392756, at *16 (S.D.N.Y. Sept. 24, 2021), *appeal dismissed sub nom. Zanghi v. Callegari*, 2023 WL 1097560 (2d Cir. Jan. 30, 2023) (PSLRA barred entire RICO claim alleging multiple predicate acts, including witness tampering [18 U.S.C. § 1512], and an "overarching scheme of preparing and disseminating forged and false documents to defraud [Plaintiff]" and "profit[ing] from the fraudulent recruitment of investors"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 622 (S.D. Tex. 2003) (same).

Here, the crux of the alleged RICO scheme is securities fraud. *See* SAC ¶909 (Apple intended to "inflate [its] stock price with false and misleading claims about its actual [environmental] practices"); ¶942 (Apple "works diligently to ensure its false public statements are not corrected" because Apple stated in its 2023 10-K statement that "'[a]ny failure, or perceived failure, by [Apple]'" could "'materially adversely affect Apple's … stock price'"); ¶¶946-947 ("Apple made [] false statements via … materials published and filed to SEC prior to annual shareholder meetings … Apple transmits these false statements to the government [and] shareholders … Apple also invites interested parties to … the shareholder meetings … where Apple

APPLE INC.'S MOTION TO DISMISS
CASE NO. 23-cv-4597-EC

makes more false statements …"); *see also id.* ¶798 (Apple "promotes … the false claim that they are ethical leaders in [environmental, labor, and other practices] … to encourage investors to buy and hold Apple stock"); ¶833 ("Apple references frequently [its August 2021 ESG report] in their SEC filings" and "each time the report and any similar communications was emailed or shared digitally is wire fraud"). This is impermissible under 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.").

Plaintiff also impermissibly alleges securities fraud as a predicate act. The only exception to the PSLRA bar is "an action against any person that is criminally convicted in connection with the fraud[.]" 18 U.S.C. § 1964(c). However, Plaintiff does not, and cannot, allege that *Apple* has been "criminally convicted in connection with the fraud[.]" Rather, Plaintiff claims that Apple employee Nancy Heinen was "charged" with securities fraud (SAC ¶1112). But again, Plaintiff does not allege (nor could she) that Ms. Heinen was "criminally convicted," and as such, the PSLRA bar applies, and Plaintiff may not rely on Ms. Heinen's purported conduct. Plaintiff further alleges that Apple employee Gene Levoff pled guilty to "insider trading" (*id.* ¶1113). However, Apple is not vicariously liable for the alleged actions of Mr. Levoff, which are plainly outside the scope of his employment. "Respondeat superior liability attaches only if an employer benefitted from its employee's RICO violation [and] its employee's acts were committed within the course and scope of her employment." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775–76 (9th Cir. 2002). Put simply, there is no benefit to the employer from an employee's "insider trading" and such acts are not within the scope of employment. *Id.* at 777 (on a motion to dismiss, declining to extend RICO liability to company where conspiring to violate RICO was "not the kind of function [company] hired [employee] to perform"). Nor does Plaintiff allege otherwise. The PSLRA bar thus forecloses Plaintiff's reliance on securities fraud as a predicate act. *See Davies v. GetFugu, Inc.*, 2010 WL 11597458, at *2 (C.D. Cal. Aug. 26, 2010).

Because Plaintiff alleges a single scheme premised on alleged securities fraud and she relies on purported securities fraud as a predicate act, her RICO claim is legally deficient and must be dismissed. *Monterey Bay Mil. Hous., LLC*, 2018 WL 3439372, at *11. As in *Zanghi* and *In re Enron*

*Corp.*, Plaintiff cannot rely upon non-securities fraud predicate acts to spare her RICO claim. Indeed, in both *Zanghi* and *In re Enron Corp.*, the plaintiff alleged obstruction of justice and/or witness tampering in violation of 18 U.S.C. § 1512, as Plaintiff does here, and in both cases, the PSLRA barred the entire RICO claim.

*In re Enron Corp.* is instructive. There, the Court explained that the predicate act of obstruction of justice was related to the alleged scheme to lure and keep Enron investors. 284 F. Supp. 2d at 622. The Court concluded that "[a]ny conduct that sustains a securities fraud Ponzi scheme is intrinsically conduct undertaken 'in connection with the purchase or sale of securities' and is barred by [the PSLRA]." *Id.* Here, Plaintiff alleges Apple commits "witness intimidation" and "retaliation" to "bridge the gap between its actual practices and what it reports to its shareholders." SAC ¶948. In other words, she alleges that Apple commits such conduct to sustain the alleged securities fraud scheme. The entire claim is thus barred under the PSLRA.

### 2. Plaintiff Fails to State a Claim Under Any RICO Provision.

Even if the PSLRA did not bar Plaintiff's RICO claim (it does), it should be dismissed for other reasons: (1) Plaintiff lacks standing to assert a section 1962(a) claim, (2) she fails to adequately plead the "enterprise" and "pattern of racketeering activity" elements of a section 1962(c) claim, and (3) consequently, she fails to state a section 1962(d) claim, too.

#### a. Plaintiff Fails to Allege a Relevant Injury Under Section 1962(a).

18 U.S.C. § 1962(a) prohibits any person who has received income from racketeering "to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." To establish standing to sue under section 1962(a), a plaintiff must allege that funds derived from the alleged racketeering activity were used to injure her. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007).

Here, Plaintiff alleges that "[l]egitimate hazardous waste disposal costs thousands of dollars, so it is hard to imagine any situation in which the illegal dumping of toxic wastes … will not directly or indirectly benefit the corporation enterprise." SAC ¶908. But Plaintiff does not allege

Apple has received income from dumping toxic wastes; she merely summarily concludes that Apple saved money it would have otherwise spent, which is insufficient. *See Basco v. Toyota Motor Corp*, 2010 WL 11462992, at *3 (C.D. Cal. Mar. 3, 2010) (dismissing section 1962(a) claim: "[a]ny money Defendants saved themselves by allegedly withholding responsive documents in product liability litigation does not constitute injury by use or investment of racketeering income"). And Plaintiff does not allege Apple used any money it received to injure her, as is required by RICO's plain language. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). She contends only that "[a]s Apple makes more money from its criminal conduct, it allows it to reinvest that money in its Global Security team that it can use for more criminal conduct." SAC ¶909. This theory of injury is insufficient. *Temming*, 2021 WL 5014854, at *7 (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008)) ("Reinvestment of proceeds from the alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation" for a section 1962(a) claim.). Her section 1962(a) claim should be dismissed.

**b.**    **Plaintiff's Section 1962(c) Claim Fails Because She Does Not Allege an "Enterprise" Distinct from Apple or a "Pattern of Racketeering Activity."**

Section 1962(c) makes it unlawful for a person to conduct the affairs of an "enterprise" through a pattern of racketeering. 18 U.S.C. § 1962(c). The plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *16 (N.D. Cal. Nov. 30, 2021), *aff'd*, 85 F.4th 948 (9th Cir. 2023). Plaintiff fails to allege an enterprise distinct from Apple or a pattern of racketeering activity.

**i.**    **Plaintiff Fails to Allege the Existence of an Enterprise Distinct from Apple.**

The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish an associated-in-fact enterprise, a plaintiff must allege (1) "a group of persons associated together for a common purpose of engaging in a

course of conduct," (2) "evidence of an ongoing organization, formal or informal," and (3) "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). Where the plaintiff alleges the enterprise's common purpose is to deceive, the plaintiff must plead with particularity facts to support this theory. *See, e.g., RJ v. Cigna Behav. Health, Inc.*, 2021 WL 1110261, at *7 (N.D. Cal. Mar. 23, 2021).

Section 1962(c) prohibits any person "employed by or associated with any enterprise" from conducting the affairs of that enterprise through a pattern of racketeering. This means a party cannot be both the defendant "person" and the enterprise. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir. 1986) ("the 'person' must be a separate and distinct entity from the 'enterprise'"); *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 158 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name"); *Nationstar Mortg. LLC v. Presley*, 2023 WL 121746, at *4 (E.D. Cal. Jan. 6, 2023); *Greenstein v. Peters*, 2009 WL 722067, at *2 (C.D. Cal. Mar. 16, 2009).

*Coronavirus Reporter v. Apple Inc.* is particularly instructive. 2021 WL 5936910, at *17. There, the plaintiff alleged Apple, unnamed "individuals within Apple," and outside consultants, including "PR firms, law firms, and rival developer cronies," formed a RICO enterprise. *Id.* This Court found the allegations made "clear that the alleged enterprise *is* Apple itself" and concluded the claim "fail[ed] for lack of distinctiveness." *Id.* Further, this Court rejected, at the pleading stage, the plaintiff's theory that the enterprise included Apple's "'crony app developers,' 'law firms,' and 'PR firms' who allegedly 'divert profits,' 'spread Apple's gospel,' or obfuscate 'Apple's anticompetitive agenda,'" reasoning that none of these groups was "alleged to have participated in an alleged enterprise involving the predicate acts" at issue. *Id.* at 18. Moreover, this Court held these allegations were "conclusory" and also insufficient for that reason. *Id.* The Ninth Circuit affirmed on both grounds. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023).

Plaintiff's RICO claim regarding the alleged "Worldwide Loyalty" enterprise fails for the same reasons. As in *Coronavirus Rep.*, Plaintiff contends that the alleged enterprise is an associated-in-fact enterprise comprised of Apple and a string of generic entities. SAC ¶915 ("This

enterprise includes Apple the corporation, along with lawyers, law firms, expert witnesses, trade organizations, non-profit organization, media companies, tech reporters, third-party administrators, employees and officials in government agencies, doctors, and environmental consultants."). This is no better than the *Coronavirus Rep.* allegation of an "enterprise consist[ing] of Apple's 'crony app developers,' 'law firms,' and 'PR firms.'" 2021 WL 5936910, at *18.

Despite providing a laundry list of purported enterprise members, Plaintiff alleges conduct by only Apple and/or its employees with respect to the purported predicate acts of bribery chargeable under California Penal Code § 641.3, mail fraud and wire fraud, securities fraud, and unlawful use of chemical weapons. *See* SAC ¶¶958-61, 977-1042, 1095-1151. Moreover, where Plaintiff alleges conduct by non-Apple entities, she fails to state a RICO violation.[2]

Plaintiff also fails to allege "a common purpose," "an ongoing organization," and "a continuing unit." *Odom*, 486 F.3d at 552. While she alleges that *Apple* "transmits [] false statements to the government [and] shareholders" (SAC ¶947) with an intent to "inflate [its] stock price" (*id.* ¶909), she does not allege that any non-Apple entity shared this alleged intent. And she does not

---

[2] Specifically, Plaintiff alleges that an Apple employee committed an act of bribery chargeable under California Penal Code § 67 by "arrang[ing] an exchange of iPads and political donations in exchange for concealed carry handgun permits" from the Santa Clara County Sheriff's Office. SAC ¶157; *see id.* ¶¶952-955. However, Apple is not vicariously liable for the purported act of its employee here because such an act is "not the kind of function [Apple] hired [the employee] to perform." *Oki Semiconductor Co.*, 298 F.3d at 777.

Plaintiff also alleges that two government employees committed acts of extortion, but she does not allege how Apple "conduct[ed]" or "participate[d]" in the alleged extortion, as is required under section 1962(c). *See Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (defendant not liable under section 1962(c) where plaintiff failed to show that defendant had "some part in directing [the enterprise's] affairs"). Plaintiff merely alleges that an EPA employee attempted to charge Plaintiff a fee to process her FOIA request (SAC ¶¶965-66) (though the EPA is plainly authorized by regulation to charge such a fee [*see* 40 C.F.R. § 2.107]) and that a US DOL employee demanded an audio recording taken by Plaintiff of a meeting between Plaintiff and US DOL and further warned Plaintiff that if she does not provide the recording, it may dismiss her US DOL whistleblower retaliation case (SAC ¶¶972-74).

Plaintiff further alleges that "Joanna Appleseed" committed acts of tampering (*id.* ¶1077) and retaliation (*id.* ¶1107) after Appleseed quit working at Apple in November 2021, but she offers no facts to suggest that Apple "directed" the purported misconduct. *See* Walter, 538 F.3d at 1249. Plaintiff also appears to contend that an NLRB employee tampered with an affidavit by Plaintiff. *See* SAC ¶1074. She conclusorily alleges that the "new information in the document … came from Apple's lawyers" (*see id.*), but offers no facts to support this speculative statement, much less facts to suggest that Apple "directed" the NLRB to tamper with the affidavit. *See Walter*, 538 F.3d at 1249. Plaintiff thus does not adequately allege that Apple "conduct[ed]" or "participate[d]" in the alleged tampering and retaliation. *See* 18 U.S.C.A. § 1962(c).

10

plead with particularity—as required under Rule 9(b)—what role Apple or any other entity played in concocting the alleged scheme or ensuring its success. *See In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5-7 (S.D. Cal. May 22, 2009). Without a common purpose, there is no enterprise.

        **ii.**    **Plaintiff Fails to Allege a Pattern of Racketeering Activity Because She Pleads No Facts Showing the Alleged Predicate Acts Are Related or Pose a Continuous Threat.**

To demonstrate a "pattern of racketeering activity," Plaintiff must allege "at least two acts of racketeering activity" within a span of 10 years. 18 U.S.C. § 1961(5); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). "A 'pattern' of racketeering activity also requires proof (1) that the racketeering predicates are related ['relatedness requirement'] and (2) 'that they amount to or pose a threat of continued criminal activity ['continuity requirement']." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020). The relatedness requirement is satisfied when predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Continuity is satisfied when the plaintiff alleges either "closed-ended" or "open-ended" continuity; the former involves "a series of related predicates extending over a substantial period of time," while the latter involves "past conduct that by its nature projects into the future with a threat of repetition." *Id.* "[W]hen a plaintiff alleges only a single scheme with a single victim it cuts against a finding of both closed-ended as well as open-ended continuity." *Id.*

Plaintiff explains her relatedness theory as follows: "[Plaintiff] was working to expose and report [] Predicate Acts … Then Apple fired and terrorized her. It is all related." SAC ¶935. But Plaintiff does not identify *any specific act* that constitutes a RICO predicate act that she reported before her termination. Her termination in 2021 thus is wholly unrelated to the purported RICO predicate acts that she first raised when she filed her Complaint in 2023. *H.J.*, 492 U.S. at 240.

Plaintiff's continuity theory fares no better. With respect to closed-ended continuity, "the Ninth Circuit has explained that activity spanning only a matter of months, involving a single victim, with a singular goal, cannot sustain a RICO claim." *Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019) (citing *Medallion Television Enterprises, Inc.*

v. *SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987)). Plaintiff alleges that "Apple's misconduct is so persistent and egregious, and so dependent on continued intimidation of witnesses to keep witnesses quiet about what they know, that its [sic] impracticable that Apple would ever voluntarily stop their schemes." SAC ¶1152. However, she does not specifically identify any other similarly situated "witness" Apple allegedly intimidated. Tellingly, Plaintiff alleges that she "organized with coworkers about gathering at least photographic evidence of the cracked Superfund floor and they did gather photos of the cracks before Apple could repair them" (*id.* ¶1098; *see id.* ¶¶377-78, 385), but she does not allege Apple did anything to silence those coworkers. Plaintiff fails to allege closed-ended continuity. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1013 (C.D. Cal. 2020) (no closed-ended continuity where scheme involved a single victim and a single goal).

As for open-ended continuity, Plaintiff fails to plausibly allege a threat of continuing racketeering activity. Accepting the allegations as true, Apple's alleged scheme—"to increase … financial benefits through a knowingly false reputation of strong regulatory compliance" (SAC ¶946)—presents no risk of future misconduct because it became moot once Plaintiff reported Apple's alleged misconduct to various government agencies and in the media. *McGowan*, 562 F. Supp. 3d at 754 (no open-ended continuity because defendants' goal of keeping misconduct secret could not be pursued anew once plaintiff published a book detailing misconduct).

### c. Plaintiff Fails to State a Section 1962(d) RICO Claim Because She Fails to State a Section 1962(c) RICO Claim.

Section 1962(d) prohibits a person from conspiring to violate section 1962(c). The failure to plead the requisite elements of section 1962(c) implicitly means that a plaintiff cannot plead a conspiracy to violate section 1962(d). *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Because Plaintiff's section 1962(c) claim fails, her section 1962(d) claim does as well.

### B. Plaintiff's First Claim Under SOX Fails Because She Fails to Allege that She Complained About Conduct that She Reasonably Believed Violated a Provision Enumerated in 18 U.S.C. § 1514A(a)(1).

To state a prima facie case of whistleblower retaliation under 18 U.S.C. § 1514A (SOX), Plaintiff must plead: (1) she engaged in a protected activity; (2) Apple knew or suspected, actually or constructively, that she engaged in the protected activity; (3) she suffered an adverse

employment action; and (4) the circumstances were sufficient to infer that the protected activity contributed to the adverse action. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009); 29 C.F.R. § 1980.104(e)(2)(i)-(iv). The first element requires that Plaintiff provide information regarding "conduct which [she] reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders[.]" 18 U.S.C. § 1514A(a)(1). To have a "reasonable" belief, Plaintiff "must have a 'subjective belief' that the challenged conduct violates a law listed in 18 U.S.C. § 1514A(a)(1), and this belief must be 'objectively reasonable.'" *Erhart v. Bofi Holding, Inc.*, 2016 WL 5369470, at *8 (S.D. Cal. Sept. 26, 2016) (dismissing SOX whistleblower claim on 12(b)(6) motion on basis that plaintiff failed to plausibly allege objectively reasonable belief). Additionally, disclosures are only protected if Plaintiff complained to one of three categories of recipients enumerated in SOX: federal regulatory and law enforcement agencies, Congress, and/or employee supervisors. *See Tides v. The Boeing Co.*, 644 F.3d 809, 810-11 (9th Cir. 2011); 18 U.S.C. § 1514A(a)(1).

Plaintiff's SOX claim should be dismissed because Plaintiff fails to allege facts that, if true, would demonstrate that she complained about conduct that she reasonably believed violated a provision enumerated in 18 U.S.C. § 1514A(a)(1).

*First*, Plaintiff contends she complained that Apple made false statements about its labor practices (SAC ¶ 771), but she does not identify any statement that she actually complained about.[3] *Second*, Plaintiff alleges that she complained that Apple (specifically, Lisa Jackson and Alisha Johnson) made false statements about Apple's environmental practices (*id.* ¶771; *see id.* ¶800, Appendix III), but she fails to point to any actual complaint. She appears to allege she complained

---

[3] Plaintiff alleges she complained to Apple that it "likes to pretend it cares about human rights, inclusion, diversity, and respect." SAC ¶781; *see id.* at Appendix III. Even if Apple asserted that "it cares about human rights, inclusion, diversity, and respect," it was unreasonable for Plaintiff to believe that such an "aspirational statement" could form the basis of a violation of any SOX-enumerated provisions. *City of Pontiac Gen. Employees' Ret. Sys. v. Bush*, 2022 WL 1467773, at *4 (N.D. Cal. Mar. 1, 2022) (on claim alleging violation of the Securities Exchange Act, defendant's diversity statements are not actionable because such "aspirational statements … provide a vague statement[ ] of optimism ... not capable of objective verification").

to an Apple senior director about "an article from 2016" wherein Ms. Johnson, a spokesperson on Ms. Jackson's team, stated that Apple has a "stringent set of health and safety standards, which go well beyond legal requirements." *Id.* ¶786. She does not allege, however, that she told the senior director (nor does she allege now) that the 2016 representation was misleading or false *at the time it was made*. Plaintiff also points to an April 2021 press release (*id.* ¶¶787-88), but she does not allege that she actually complained to anyone about the press release before her termination. Even so, Plaintiff did not reasonably believe the press release—comprised of aspirational statements such as "Apple's focus remains on supporting those communities most impacted by climate change and environmental challenges" (*id.* ¶787)—could lay the basis for a violation of any SOX-enumerated provision (mail fraud, wire fraud, bank fraud, securities/commodities fraud, fraud against shareholders, or a violation of any SEC rule or regulation). *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 626 (S.D. Tex. 2018) (company statement regarding "commitment to safe and environmentally responsible operations" is not actionable under the securities laws because it is an "aspirational statement"); *see City of Pontiac Gen. Employees' Ret. Sys. v. Bush*, 2022 WL 1467773, at *4 (N.D. Cal. Mar. 1, 2022).

*Third*, Plaintiff alleges that she complained to Apple and to the SEC about purported conflicts of interest involving Ronald Sugar, Lisa Jackson, and Alisha Johnson. SAC ¶¶759, 765, 804, 806-09, 811-12. However, Plaintiff did not reasonably believe that the purported conflicts of interest amounted to a violation of any SOX-enumerated provision. *Diaz v. Transatlantic Reinsurance Co.*, 2016 WL 3568071, at *5 (S.D.N.Y. June 22, 2016) (dismissing SOX whistleblower claim where plaintiff lacked objectively reasonable belief that "purported non-compliance with the company's internal conflict of interest policy" constituted securities fraud).

At the time she raised her concern about Mr. Sugar to Apple, Plaintiff did not even assert that Mr. Sugar had a conflict of interest or that he had engaged in any misconduct. SAC ¶¶806-09, 811. Rather, she asked Apple about the scope of Mr. Sugar's role (*id.* ¶809 ["Is Sugar overseeing the due diligence program for clean-up, testing, employee complaints, finance for this office that his previous company caused the pollution for?"]) and whether Mr. Sugar had taken any action harmful to Apple (*id.* ["Has (Mr. Sugar) taken any actions that are favorable to NG/TRW and

forsake proper safety & protection for Apple employees?"]). Plaintiff's complaint to the SEC about Mr. Sugar also makes clear that she merely speculated that a conflict of interest might exist. *See* Dkt. 35-7 at 4-5 ("This seems like a very big conflict of interest … I complained about this apparent conflict of interest …").[4] As for Plaintiff's alleged complaint to Apple about purported conflicts of interest involving Ms. Jackson and Ms. Johnson, Plaintiff does not even identify to whom at Apple she complained or what she specifically told Apple. *See* SAC ¶812. And Plaintiff's complaint to the SEC contains nothing more than speculation: "Lisa Jackson and Alisa [sic] Johnson seem to be heavily involved in … Apple's hazardous waste crimes/infractions." *See* Dkt. 35-7 at 18; *see also* SAC ¶812. ***Critically, Plaintiff does not allege that she reported to anyone that she actually observed any misconduct involving Mr. Sugar, Ms. Jackson, or Ms. Johnson.*** An employee complaint based on pure speculation cannot sustain a SOX whistleblower claim. *Ronnie v. Off. Depot, LLC*, 81 F.4th 1345, 1352 (11th Cir. 2023) (rejecting SOX whistleblower claim where plaintiff's assertions of misconduct are "mere speculation"); *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 354 (4th Cir. 2008) (rejecting SOX whistleblower claim where "chain of speculation is simply too long to support a claim that [defendant] in fact [engaged in misconduct], as is required to support a violation of the securities laws").

Moreover, while Plaintiff conclusorily alleges that she complained to Apple about "fraud that may be caused in some way by Sugar due to this clear conflict of interest" (SAC ¶811), this is exactly the sort of SOX claim that courts routinely reject on a motion to dismiss. *See Diaz*, 2016 WL 3568071, at *5 (dismissing SOX claim upon finding that plaintiff's "bald assertion[] that she 'expressed concern about ... the effect [purported conflicts of interest] could have on [defendant's] shareholders' … [is] precisely the type of conclusory statement[] that cannot sustain a § 1514A claim"); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 223 (2d Cir. 2014) (dismissing SOX claim where plaintiff alleged that company's "practice had the potential of exposing the company to

---

[4] Under the incorporation by reference doctrine, a district court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), as amended (Aug. 4, 1999). Here, the contents of Plaintiff's September 1, 2021 SEC Complaint are alleged at length, and Plaintiff has submitted an alleged copy of the Complaint to the Court in her December 25, 2023 Request for Judicial Notice. Dkt. 35-7 at 3-21.

extreme financial risk" and "thus constituted potential shareholder fraud," reasoning that "[t]he connection between [plaintiff's] claims and supposed fraud against shareholders is simply too tenuous"); *see also In the Matter of: Douglas Denneny, Complainant, v. MBDA, Inc., Et Al., Respondent.*, ARB Case No. 2018-0027, ALJ Case No. 2016-SOX-00032, 2021 WL 423979 (Jan. 8, 2021), at *7-8 (rejecting SOX whistleblower claim based on concern that board member's membership on two boards might improperly influence one board's decision making and, in turn, potentially adversely affect the financial condition of a publicly traded company).

As for her alleged complaint regarding Ms. Jackson and Ms. Johnson, Plaintiff does not even attempt to explain how the purported conflicts of interest have any relation whatsoever to any SOX-enumerated provision. Her alleged complaint thus cannot support a SOX claim. *See Limbu v. UST Glob., Inc.*, 2017 WL 8186674, at *6 (C.D. Cal. Apr. 20, 2017) (dismissing SOX claim where "not self-evident from the allegations how the alleged misconduct fits within the purview of section 1514A"); *see also Katzel v. Am. Int'l Grp.*, 2022 WL 17251362, at *4 (S.D.N.Y. Nov. 28, 2022) (rejecting SOX claim where concerns about failures of internal policies related to conflicts of interest were "untethered" from enumerated SOX violations); *Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793-94 (7th Cir. 2018) (practices about which plaintiff complained, including conflicts of interest, are not "fraud" within meaning of SOX).[5]

Finally, Plaintiff's complaints reveal that she was concerned about workplace safety issues, not fraud against shareholders. *See* SAC ¶808 (complaint to Apple about "due diligence programs for offices on chemical clean-up sites"); Dkt. 35-7 at 7 (complaint to SEC about "the clean up of the toxic chemicals under the building"). Where, as here, a SOX claim rests on a complaint rooted in workplace safety concerns, it should be dismissed on a 12(b)(6) motion. *Magnuson v. Exelon*

---

[5] Plaintiff's alleged complaint to the SEC about purported conflicts of interest does not establish a SOX claim for an additional reason: she does not adequately allege that Apple *knew* about the complaint. Plaintiff alleges that Apple supposedly knew about the alleged complaint "due to its surveillance of [Plaintiff's] private and public activities, due to press coverage of the complaint, and due to coworkers talking about the complaint." SAC ¶761. These alleged facts do not result in a "reasonable inference" that Apple knew about the alleged complaint. *Iqbal*, 556 U.S. at 663. Indeed, nowhere does she allege she spread word of the SEC complaint at any time before her termination to "a supervisor or other individual who has the authority to investigate, discover or terminate such misconduct" (*see Tides*, 644 F.3d at 815) or any individual who decided to terminate her employment, or that any such employees otherwise became aware that she did.

*Corp.*, 658 F. Supp. 3d 652, 661–62 (C.D. Ill. 2023) (dismissing SOX whistleblower claim where "Plaintiff's words, actions, and the animating beliefs he alleges overwhelmingly demonstrate that a concern for nuclear safety, not fraud" motivated his complaint); *Gauthier v. Shaw Grp., Inc.*, 2012 WL 6043012, at *6 (W.D.N.C. Dec. 4, 2012) (same).

    **C.**     **Plaintiff's Second Claim Under Dodd-Frank Should Be Dismissed Because Plaintiff Fails to Plead Protected Activity Under SOX or Because She Did Not Complain to the SEC.**

As discussed above, Plaintiff fails to adequately allege that her purported complaints to the SEC regarding alleged conflicts of interest constitute protected activity under 18 U.S.C. § 1514A. Consequently, she cannot rely on those complaints to claim Dodd-Frank protection under 15 U.S.C. § 78u-6. *See Erhart v. Bofi Holding, Inc.*, 612 F. Supp. 3d 1062, 1107 (S.D. Cal. 2020) (concluding that because "[plaintiff's] reporting of alleged wrongdoing does not meet the protected activity standard for Sarbanes-Oxley, his Dodd-Frank claim similarly fails to the same extent"); *see also Wagner v. S. California Edison Co.*, 840 F. App'x 993, 994 n.2 (9th Cir. 2021) ("Because [plaintiff's] Dodd-Frank claim is dependent on his Sarbanes-Oxley claim, the district court properly entered judgment as a matter of law on that claim").

Plaintiff appears to contend that she is nonetheless entitled to Dodd-Frank protection because she complained "about one of her coworkers bragging … about what sounded like illegal smuggling and violation sanctions [sic] against Syria" (SAC ¶828) and "about Apple's apparent attempt to 'skip the line' on COVID-19 vaccines, as well as hoard the vaccines" (*id.* ¶837). However, Dodd-Frank protection does not apply to these complaints because Plaintiff did not report the alleged misconduct to the SEC. *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 153 (2018) (citing 15 U.S.C. § 78u–6(a)(6)) ("To sue under Dodd–Frank's anti-retaliation provision, a person must first 'provid[e] ... information relating to a violation of the securities laws to the [SEC].'").[6]

---

[6] Plaintiff appears to contend that her alleged complaints regarding an alleged sanctions violation and alleged misconduct related to COVID-19 vaccines are protected activity under Dodd-Frank but not SOX. *See* SAC ¶¶828, 836 (headings above each paragraph). To the extent she claims that the alleged complaints are also protected under SOX, she has failed to connect the complained-of conduct to any SOX-enumerated provision. *See Limbu*, 2017 WL 8186674, at *6 (dismissing SOX claim where "not self-evident from the allegations how the alleged misconduct fits within the purview of section 1514A").

**D.    Plaintiff's Third Claim Under the Bane Act Fails Because She Does Not Allege that Apple Interfered with Any Right by Threat, Intimidation, or Coercion.**

Plaintiff must make two showings to state a Bane Act claim under California Civil Code section 52.1: (1) Apple interfered with her constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion. *Cortez v. City of Oakland*, 2017 WL 1650568, at *6 (N.D. Cal. May 2, 2017). "Speech alone is not sufficient to support" a Bane Act claim unless "the speech itself threatens violence against a specific person[.]" Cal. Civ. Code § 52.1(k).

First, Plaintiff alleges Apple interfered with her right to testify by terminating her employment. SAC ¶849. "But terminating Plaintiff's employment [is] not violence" and thus cannot support a Bane Act claim. *Snyder v. Alight Solutions, LLC*, 2021 WL 4622392, at *2 (C.D. Cal. May 5, 2021) (dismissing with prejudice Bane Act claim based on defendant's termination of plaintiff); *see Borrello v. Respironics Cal., LLC*, 2023 WL 5986135, at *8 (S.D. Cal. Sept. 14, 2023) (speech threatening job loss fails as a matter of law under the Bane Act); *Schaldach v. Dignity Health*, 2013 WL 2292054, at *9 (E.D. Cal. May 23, 2013) (same).

Second, Plaintiff alleges a letter from Apple's law firm interfered with her right to protest alleged privacy invasions. SAC ¶850. However, the letter is mere speech, which alone is not enough to support a Bane Act claim unless "the speech itself threatens violence against a specific person[.]" Cal. Civ. Code § 52.1(k); *see Richter v. Ausmus*, 2021 WL 580055, at *10 (N.D. Cal. Feb. 16, 2021); *Meyers v. City of Fresno*, 2011 WL 902115, at *3 (E.D. Cal. Mar. 15, 2011) (Bane Act claim unsupported by allegation that letter was intended to force plaintiffs to abandon their lawsuit). Plaintiff identifies no threat of violence in the letter (nor could she [*see* SAC ¶545]).

Third, Plaintiff alleges that Apple interfered with her access to California's unemployment insurance program by falsifying and deleting records. *Id.* ¶851. As a threshold matter, these allegations do not satisfy the pleading requirements under *Iqbal*. *See Spindler v. State Bar of California*, 2020 WL 2559442, at *11 (C.D. Cal. Jan. 20, 2020) (vague and conclusory allegations of, e.g., "arrests" and "false criminal charges" insufficient). She does not identify any specific records or statements, much less explain why they were false. In any event, courts have found

"absolutely no 'threats, intimidation, or coercion' as required by section 52.1" when presented with similar allegations. *See Schaldach*, 2013 WL 2292054, at *8 (dismissing Bane Act claim based on allegation that employer fabricated events in a disciplinary letter); *see also Sams v. Cnty. of Riverside*, 2019 WL 3069180, at *19 (C.D. Cal. June 14, 2019) (dismissing Bane Act claim based on fabrication of evidence in arrest report).

Fourth, Plaintiff alleges that Apple interfered with her right to access the courts. SAC ¶852. But she points to no conduct by Apple, only a post by an "anonymous account" that Plaintiff speculates is "probably" Apple. *Id.*

Fifth, Plaintiff alleges Apple interfered with her right to file charges with the government (*id.* ¶848), her right to a safe workplace (*id.* ¶853), her right to work in a work environment free of discrimination (*id.*), her right to appear before a legislative committee (*id.* ¶858), her right to make a report regarding her alleged "victimization" (*id.* ¶859), and her right to be free from bodily harm (*id.* ¶860), but she does not identify any specific threats, intimidation, or coercion that interfered with those rights. *Cortez*, 2017 WL 1650568, at *6 (plaintiff must allege that "interference was accompanied by actual or attempted threats, intimidation, or coercion").

Sixth, Plaintiff alleges Apple interfered with her right to become an attorney (SAC ¶862) and her right to free speech (*id.* ¶861). She contends in February 2022 "Joanna Appleseed" filed a lawsuit (*id.*) to "prevent[] [Plaintiff] from becoming a licensed attorney" (*id.* ¶862). Plaintiff further alleges she was ultimately "prohibited [from] sharing public records and her legal filings [and] complain[ing] (even privately) about the … lawsuit" (*see* ¶861). Per Plaintiff's own allegations, Ms. Appleseed was not an Apple employee as of February 2022. *Id.* ¶622. Thus, even if Ms. Appleseed's conduct constituted a Bane Act violation, Apple is not vicariously liable.

Seventh, Plaintiff alleges more examples of purported threats (*id.* ¶¶876-88) and coercion and intimidation (*id.* ¶¶889-92) but fails to tie any such conduct to any purportedly interfered-with right. *Libman v. United States*, 2022 WL 18284664, at *18 (C.D. Cal. Dec. 1, 2022) ("Plaintiff … does not indicate what legal right [defendant] sought to interfere with, and therefore fails [to] state a claim"); *Yates v. E. Side Union High Sch. Dist.*, 2021 WL 3665861, at *7 (N.D. Cal. Aug. 18, 2021) (potentially threatening remark had no connection to an exercise of rights by plaintiff).

**E.      Plaintiff's Fourth Claim Under the Ralph Act Fails Because She Alleges No Facts Suggesting Any Threat of Violence by Apple, or that Any Alleged Conduct Was Based on Political Affiliation or Any Protected Characteristic.**

To state a Ralph Act claim, Plaintiff must allege (1) Apple committed or threatened a violent act against her; (2) Apple was motivated by its perception of her political affiliation or other protected characteristic; (3) she was harmed; and (4) Apple's conduct was a substantial factor in causing her harm. *Ramirez v. City of San Jose*, 2022 WL 875643, at *9 (N.D. Cal. Mar. 24, 2022). Plaintiff fails to state such a claim.

First, Plaintiff contends that an Apple employee "implicitly, if not expressly, threaten[ed] some sort of violence against Plaintiff due to her NLRB labor case." SAC ¶875. She does not, however, provide any facts regarding what Apple supposedly did or said to threaten violence against her. *Moreno v. Cnty. of Los Angeles*, 2022 WL 1515684, at *4 (C.D. Cal. Feb. 28, 2022) ("conclusory statement that [defendants] 'were engaging in acts of violence because of [decedent's] race and national origin'" was "insufficient to satisfy the pleading standard"). Moreover, the National Labor Relations Act (NLRA) preempts this claim because it alleges Apple retaliated against her for filing a claim before the NLRB or to prevent her from providing information to the NLRB in support of her claim. Plaintiff's claim "concern[s] conduct that is arguably protected or prohibited under Sections 7 and 8 of the [NLRA]." *Kroeger v. L3 Techs., Inc.*, 2018 WL 1357363, at *3 (C.D. Cal. Mar. 15, 2018) (NLRA preempted Ralph Act claim alleging threats due to engaging in NLRA–protected activities); *Bachilla v. Pac. Bell Tel. Co.*, 2007 WL 2825924, at *8 (E.D. Cal. Sept. 25, 2007) ("[T]o the extent that [] retaliation claims are premised on [] retaliation arising out of … filing of a complaint with the NLRB, such claims are preempted by the NLRA."). Indeed, in January 2022, Plaintiff filed an NLRB complaint about witness intimidation and retaliation. SAC ¶589. That complaint encompasses the purported threat alleged in Plaintiff's Ralph Act claim. Thus, the claim is preempted to the extent it relies on the purported threat.

Second, Plaintiff conclusorily alleges Apple committed "violence" and "threats of violence" and lists vague examples that fall far short of the requirement in *Iqbal*: "threatening packages in the mail, tampering with [Plaintiff's] chattels to the extent of conversion, destroying Gjovik's chattels, home break-ins." *Id.* ¶877. Moreover, she provides no facts to suggest that any of the

purported conduct was motivated by a perception of any protected characteristic of Plaintiff.

Third, Plaintiff alleges that "Joanna Appleseed" filed false reports about Plaintiff (*id.* ¶¶878-81). Even if Appleseed's conduct amounted to a Ralph Act violation, Apple is not liable for Appleseed's conduct because, as discussed above, Plaintiff acknowledges that Appleseed was no longer employed at Apple when any such purportedly false report was filed. *Id.* ¶¶590, 600.

Finally, Plaintiff lists examples of allegedly "discriminatory" social media comments from "known Apple employees and from anonymous accounts assumed to be Apple agents/employees." *Id.* ¶874. She does not specifically allege any of the comments amounted to a threat of violence under the Ralph Act. Even if any did, Apple is not vicariously liable because such posts are not in the scope of employment. Elsewhere, Plaintiff lists examples of alleged "digital threats" from "anonymous accounts that were clearly Apple" (*id.* ¶¶883-85) without any facts supporting a discriminatory motive. Such allegations are plainly insufficient to state a claim.

**F.    Plaintiff's Eighth Claim Under Cal. Lab. Code § 98.6 Fails Because "Free Speech" Is Not A Sufficient Basis To State A Claim Under the Predicate Statute Cal. Lab. Code § 96(k).[7]**

California Labor Code section 98.6 prohibits retaliation against an employee because the employee engaged in certain delineated conduct, including the conduct described in California Labor Code section 96(k). In turn, section 96(k) addresses "demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises" asserting recognized constitutional rights. *See Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 86 (2004) (quoting *Barbee v. Household Auto. Fin. Corp.*, 113 Cal. App. 4th 525, 533 (2003)). Thus, to state a section 98.6 claim predicated on an alleged violation of section 96(k), Plaintiff must allege that she was terminated because she asserted a recognized constitutional right. *See id.* Plaintiff alleges only that she asserted the right to "free speech," but

---

[7] In the alternative, Apple moves to strike Plaintiff's section 98.6 claim predicated on a section 96(k) violation as immaterial under FRCP 12(f). Rule 12(f) permits a Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (granting motion to strike to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial"); *Barajas v. Carriage Servs., Inc.*, 2020 WL 1189854, at *5 (N.D. Cal. Mar. 12, 2020) ("[M]otions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action.").

free speech is an insufficient basis to state a claim.

Specifically, Plaintiff alleges Apple retaliated against her for "asserting 'recognized constitutional rights' (free speech, speaking about work conditions, protesting unlawful conduct, protesting unlawful surveillance and unfair business practices), occurring during nonworking hours (while she was on leave), away from Apple's premises." SAC ¶988. Under well-established case law, "a private employee [like Plaintiff] has no recognized constitutional protection from termination by a private employer [like Apple] based on speech." *Hamilton v. Juul Labs, Inc.*, 2020 WL 5500377, at *3, n.5 (N.D. Cal. Sept. 11, 2020). Thus, Plaintiff's section 98.6 claim premised on an alleged section 96(k) violation fails. *Napear v. Bonneville Int'l Corp.*, 2023 WL 3025258, at *10 (E.D. Cal. Apr. 20, 2023) (free speech insufficient basis for section 98.6 claim predicated on alleged violation of section 96(k)); *Lopez v. Wachovia Mortg.*, 2009 WL 4505919, at *3-4 (E.D. Cal. Nov. 20, 2009) (dismissing part of a cause of action predicated on various underlying statutes).

### G. Plaintiff's Sixth Claim Alleging Ultrahazardous Activities Should Be Dismissed as Time-Barred and/or Because She Does Not Allege Any Ultrahazardous Activities Under the Law.

Plaintiff fails to allege that operating a facility on a Superfund site (located at 825 Stewart Drive, where Plaintiff's office was located) and operating a silicon manufacturing facility (located at 3250 Scott Blvd, which Plaintiff alleges was 0.2 miles from her apartment located at 3255 Scott Blvd) are both ultrahazardous activities. Plaintiff asserts both sites released and/or disposed of hazardous chemicals. SAC ¶¶ 1164-72, 1178.

*First*, Plaintiff's claim as it relates to the Superfund site fails because it is barred by the two-year limitations period. Cal. Civ. Proc. Code §§ 335.1, 340.8.[8] A plaintiff must bring a claim within the applicable statute of limitations period after the cause of action accrues. Civ. Civ. Proc. Code § 312. A cause of action "accrues" when the wrongful act is done or the wrongful result occurs, and

---

[8] Plaintiff pleads only facts supporting alleged personal injury damages, thus her claim is governed by the two-year statute of limitations period. *See* Code Civ. Proc. §§ 335.1, 340.8. Plaintiff alleges that the ultrahazardous activities "damaged Gjovik's chattel property (discoloring, weakening, dissolving glues, causing reactions) [and] degraded the conditions of her leasehold (which was a $3,800 month lease)[.]" SAC ¶1160. However, Plaintiff's factual support about her alleged property damage make clear the damage was allegedly from the silicon manufacturing facility (3250 Scott Blvd), not the Superfund site (825 Stewart). *See id.* ¶¶694-99 (damage to jeans allegedly from silicon manufacturing facility at 3250 Scott Blvd), ¶1145 (alleged discoloring to property from 3250 Scott Blvd).

the consequent liability arises. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005). Here, Plaintiff filed her lawsuit on September 7, 2023, and thus a claim that accrued **before September 7, 2021** is time-barred. The Complaint admits that, long before September 7, 2021, Plaintiff both (1) had actual knowledge of the alleged contamination from the Superfund site, and (2) suffered the physical injuries complained of. *See* SAC ¶321 (on July 16, 2021, Plaintiff notified Apple that she had "*serious concerns about workplace safety of my building, and Apple's other buildings on chemical release sites. ... I believe I have already been injured by the vapor intrusion in 2019*").[9] However, Plaintiff filed her original complaint on September 7, 2023, more than two years after her claims accrued. Her claim based on the Superfund site is time-barred.

**Second**, operating a Superfund site is not "ultrahazardous" under the law. The existence of regulations and statutes governing a particular activity means generally that an activity should not be subject to strict liability. *See Schwartzman, Inc. v. General Elec. Co.*, 848 F. Supp. 942, 945 (D.N.M. 1993) (dismissing strict liability claim, recognizing that "the premise of many environmental laws [] is that proper handling and disposal of [hazardous materials] minimizes or eliminates the risk of their use"); *see also Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355, 365 (E.D.N.Y. 2010) (dismissing strict liability claim relating to exposure to wireless telephone equipment because the Federal Telecommunications Act governs the activity). Here, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." *State of Cal. on Behalf of State Dep't of Toxic Substances Control v. Verticare, Inc.*, 1993 WL 245544, at *2 (N.D. Cal. Mar. 1, 1993) (citing *3550 Stevens Creek Assoc. v. Barclays Bank,* 915 F.2d 1355, 1357 (9th Cir.1990)). "To effectuate these goals, Congress created the Superfund, which empowers the federal government to respond to hazardous waste disposal." *Id.* Thus, Congress has chosen to regulate Superfund sites rather than outlaw their use entirely because

---

[9] *See also* SAC ¶164 (on September 4, 2019, Plaintiff experienced a severe fainting spell at her Apple office at 825 Stewart Drive), ¶171 (in 2020 Plaintiff complained to the EPA of alleged "solvent exposure" at 825 Stewart Drive), ¶229 (on April 4-5 2021, Plaintiff raised concerns about "vapor intrusion" at 825 Stewart Drive), ¶247 ("in April 2021, Gjovik was convinced a fainting spell at her office in September or December 2019 was due to vapor intrusion").

they can be operated safely. *See* CERCLA, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. §§ 9601 *et seq.*.

Further, Apple is aware of no case law that holds that simply operating either an office on a Superfund site or a silicon manufacturing facility is ultrahazardous under California law. Indeed, under relevant case law in this Circuit, Plaintiff's allegations about the use of chemicals and alleged resulting contamination are insufficient. *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1010 (S.D. Cal. 2015) ("the act of using solvents such as TCE and PCE . . . in an industrial site is not an ultrahazardous activity, because the risks associated with the use, storage, and/or disposal of such industrial solvents can be avoided through the exercise of reasonable car[e]"); *In re Burbank Env't Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998) (dismissing strict liability claims because "risks associated with the use, storage and/or disposal of industrial solvents such as TCE and PCE can be avoided through the exercise of reasonable care", even "near a highly populated area") (collecting cases); *Goe Eng'g Co. v. Physicians Formula Cosms., Inc.*, 1997 WL 889278, at *21 (C.D. Cal. June 4, 1997) ("Since the Court believes that the exercise of due care could eliminate the hazards of PCE contamination, the Court concludes that Goe's use of PCE does not constitute an ultra-hazardous activity"); *Edwards v. Post Transportation Co.*, 228 Cal. App. 3d 980, 987 (1991) (as a matter of law, the use of sulfuric acid is not ultra-hazardous activity because it "can be eliminated through the exercise of reasonable care").

***Third***, Plaintiff cannot establish the third and critical factor in a strict liability analysis—that any associated risk cannot be mitigated with reasonable care.[10] The thrust of Plaintiff's claim is that Apple ***negligently or improperly*** managed any pollution or "vapor intrusion." *See* SAC ¶321 (alleging that Apple has been "negligent with properly managing the vapor intrusion" at 825 Stewart), ¶187 (alleging Apple either lied about properly removing waste from 3250 Scott Blvd. or illegally removed the waste), ¶1136 (alleging that Apple released chemicals from 3250 Scott

---

[10] A six-part test is used to determine whether a particular activity is ultrahazardous and thus subject to strict liability: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes. *Greenfield MHP Associates*, 145 F. Supp. 3d at 1009-10.

"without proper abatement"). But that contradicts any suggestion that operating either an office on a Superfund site or a semiconductor manufacturing facility is ***inherently*** dangerous. Indeed, Plaintiff explicitly alleges that any dangers can be mitigated through reasonable safety protocols. SAC ¶39 ("the slab is the primary mitigation to prevent vapor intrusion in this building [825 Stewart Dr.]"), ¶1136 (alleging that Apple released chemicals from 3250 Scott "without proper abatement" and "without even changing their charcoal filters").[11] Because Plaintiff acknowledges the alleged dangers can be mitigated through reasonable care, the conduct cannot be "inherently" dangerous, and Plaintiff cannot allege an ultra-hazardous activity. *See Edwards,* 228 Cal.App.3d at 987 (1991) (holding industrial activity is ultra-hazardous *only if* "the danger *cannot* be eliminated through the use of care"); *Greenfield MHP Associates*, 145 F. Supp. 3d at 1009-10 (same); *In re Burbank Env't Litig.*, 42 F. Supp. 2d at 983 (same); *Goe Eng'g*, 1997 WL 889278, at *21 (same). Courts routinely dismiss strict liability claims where, as here, Plaintiff fails to establish the risk cannot be mitigated.

### H. Plaintiff's Eleventh Claim Alleging Nuisance Per Se Should Be Dismissed Because She Does Not Allege an Applicable Underlying Law.

An activity only constitutes a nuisance per se if it is "expressly declared to be a nuisance by its very existence by some applicable law." *Tesoro Ref. & Mktg. Co. LLC v. City of Long Beach*, 334 F. Supp. 3d 1031, 1055 (C.D. Cal. 2017). Here, Plaintiff has not identified—and cannot identify—a law declaring that it is a nuisance to operate a silicon manufacturing facility.

## V.    CONCLUSION

Apple respectfully requests that the Court grant its Motion to Dismiss.

Dated: January 18, 2023                    By: _____

                                                    JESSICA R. PERRY
                                                    Attorneys for Defendant, Apple Inc.

---

[11] *See also* SAC ¶244 (alleging the "vapor intrusion testing [at 825 Stewart Dr.] . . . were in range"), ¶295 (EPA can designate Superfund sites as having "Human Exposure" "Under Control"), ¶300 (acknowledging cracks allowing alleged vapor intrusion can be "fixed" or "sealed"), ¶433 (acknowledging various mitigation systems exist, including sub-slab depressurization systems, groundwater bioremediation systems, sealing concrete slabs and past cracks, excavating contaminated soil, and sealing spaces between walls), ¶¶272-73 (acknowledging vapor intrusion at 3255 Scott Blvd could be mitigated with "sub-slab depressurization"), ¶¶986 (alleging hazardous waste from 3250 Scott Blvd could be mitigated by removing to offsite waste processing locations).