**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**Case No. 3:23-CV-04597-EMC**

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES,**

**IN <u>OPPOSITION</u> TO DEFENDANT'S:**

**<u>MOTION TO DISMISS</u>**

Dept: Courtroom 5, 17th Floor (Virtual)

Date: May 16, 2024

Time: 1:30 p.m.

i

# TABLE OF CONTENTS

I.  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS ......................................................................................................................... 1

II.  STATEMENTS OF FACTS ................................................................................................ 1

III.  ISSUES TO BE DECIDED ................................................................................................. 2

IV.  THIS MOTION FAILS TO CONFORM WITH THE FED. R. CIV. P., LOCAL RULES, AND COURT ORDER ................................................................................................................ 3

    A.  MOTION SHOULD BE DENIED WHERE THERE IS NONCOMPLIANCE WITH FED. R. CIV. P. 12(B)(6) ............ 3

    B.  MOTION SHOULD BE DENIED WHERE DEFENDANT QUOTES AND REFERENCES SUBSTANTIVE FACTS WITHIN MOOTED COMPLAINTS SUPERSEDED BY THE TAC AND MOOTED MOTIONS ................................................. 4

V.  MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF STATES PLAUSIBLE CLAIMS FOR ALL COUNTS ....................................................................................... 6

    A.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF CAL. LABOR CODE § 98.6 + 96(K) ............ 6

    B.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR BREACH OF IMPLIED CONTRACT ("GOOD CAUSE") AND DUTY OF GOOD FAITH AND FAIR DEALING ................................................................................................ 8

    C.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR NUISANCE, NUISANCE PER SE, AND ULTRAHAZARDOUS ACTIVITIES ................................................................................................................................. 9

    D.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR SOX AND DODD-FRANK WHISTLEBLOWER RETALIATION 11

    E.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF THE BANE AND RALPH CIVIL RIGHTS ACTS 13

    F.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF THE RICO ACT ........................ 15

        1)  Defendant directly injured Plaintiff by its racketeering Predicate Acts, and Defendant's investment of racketeering profits, in violation of RICO Act 1962(a), 1962(c), and 1962(d). ........................................... 17

        2)  Apple is Culpable and Liable for the Racketeering. .................................................. 20

    G.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR IIED AND NIED UNDER CA, NY, & MA ........................... 21

    H.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR CALIFORNIA UCL ........................................ 22

    I.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF CAL. LABOR CODE § 1102.5 (WHISTLEBLOWER PROTECTION ACT) ...................................................................................... 22

VI.  CONCLUSION ................................................................................................................ 24

<u>CASES</u>

*Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 498-99 (Cal. 1970). ----------------------------------------- 21

*Alonso v. Hills* (1950) 95 C.A.2d 778, 214 P.2d 50 --------------------------------------------------------------- 11

*Auster Oil Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); ------------------------------------------------ 6

*AVCO Corp. v. Precision Air Parts, Inc* (11th Cir. 1982) 676 F2d 494, 495---------------------------------------- 9

*Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 759 (N.D. Cal. 2013) analyzing *Foley v. Interactive Data Corp.,* 47
Cal.3d 654, 681-82 (Cal. 1988). --------------------------------------------------------------------------------------- 8

*Banko v. Apple, Inc.,* No. 13-02977 RS, 12 (N.D. Cal. Dec. 16, 2013) -------------------------------------------- 8

*Banko v. Apple, Inc.,* No. 13-02977 RS, 12 (N.D. Cal. Dec. 16, 2013). ------------------------------------------- 9

*Banko v. Apple, Inc.*, No. 13-02977 RS, 9 (N.D. Cal. Dec. 16, 2013). -------------------------------------------- 8

*Beery v. Hitachi Home Electronics America, Inc*, 157 FRD 477, 480; U.S. (CD CA 1993) ---------------------- 3

*Bell v. Clair*, Case No. 1:13-cv-01594-SKO (PC), 4 (E.D. Cal. Apr. 8, 2015) ----------------------------------- 4

*Boxall v. Sequoia Union High Sch. Dist.,* 464 F. Supp. 1104, 1114 (N.D. Cal. 1979), ------------------------- 15

*Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992) --------------------------------------- 19

*Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1155 (9th Cir. 1992). --------------------------------------- 20

*Branch v. Western Petroleum, Inc.,* 657 P.2d 267, 276 (Utah 1982). ----------------------------------------------- 9

*Calamco v. J.R. Simplot Co.*, 2:21-cv-01201-KJM-KJN, 12 (E.D. Cal. Jun. 27, 2023). --------------------------- 5

*Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998). ----- 13

*Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).--------------------------------- 3

*Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1373 (9th Cir. 1990). ----------------------------------------------------- 22

*Di-Az v. Tesla, Inc.*, Case No. 3:17-cv-06748-WHO, 24-25 (N.D. Cal. Dec. 30, 2019). -------------------------- 14

*Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 778 (2018). -------------------------------------------------- 12

*Doe v. Apple Inc.*, 3:22-CV-2575-NJR, 10 (S.D. Ill. May. 8, 2023). ------------------------------------------------ 22

*dotStrategy Co. v. Facebook Inc.,* No. C 20-00170 WHA, 8 (N.D. Cal. Nov. 11, 2020). ---------------------------- 5

*E.E.O.C. v. Alia Corp.*, 842 F.Supp.2d 1243, 1250 (ED CA 2012).-------------------------------------------------- 3

*Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1108 (S.D. Cal. 2020).------------------------------------- 22

*esai v. Deutche Bank Sec. Ltd.,* 573 F.3d 931, 936 n.5 (9th Cir. 2009). --------------------------------------------- 4

*Espinosa v. Roswell Tower, Inc.,* 121 N.M. 306, 310 (N.M. Ct. App. 1995)----------------------------------------- 9

*Garvey v. Admin. Review Bd.,* 56 F.4th 110, 127 (D.C. Cir. 2022)------------------------------------------------- 12

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), quoting *Scheuer v. Rhodes*, 416
U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). ------------------------------------------------------ 6

*Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). ------------------------------------------------------------- 17

*Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)---------------------------------------------- 6

*Industries v. Safety Light Corp.*, 123 N.J. 371, 394 (N.J. 1991) -------------------------------------------------- 11

*Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *5-6 (N.D. Cal. Aug. 4, 2003)----------- 19

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009), amended in part (Sept. 8, 2009). - 14

*Lawson v. FMR LLC*, 571 U.S. 429, 442 (2014). ------------------------------------------------------------------- 12

*Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703, 718 (Cal. 2022). --------------------------------- 23

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). -------------------------------------------------------------- 25

*M.F. v. Pac. Pearl Hotel Mgmt. LLC*, 16 Cal.App.5th 693, 700 (Cal. Ct. App. 2017).------------------------- 22

*McGary v. City of Portland*, 386 F3d 1259, 1270 (9th Cir. 2004)------------------------------------------------- 15

*McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1012 (C.D. Cal. 2020).------------------------------------------- 16

*McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1016 (C.D. Cal. 2020) quoting *Clark Equip. Co. v. Wheat ,* 92
Cal. App. 3d 503, 521, 154 Cal.Rptr. 874 (1979).-------------------------------------------------------------------- 16

*McKenna v. Pacific Elec. Ry. Co.* (1930) 104 C.A. 538, 540, 286 P. 445. (TAC starting at ¶ 22). ------------- 11

*Nodine v. Textron, Inc.*, 819 F.2d 347, 349 n.3 (1st Cir. 1987).---------------------------------------------------- 18

*Northeastern Women's Ctr. Inc v. McMonagle*, 868 F.2d 1342, 1357 (3d Cir. 1989) ----------------------------- 17

iii

*Parada v City of Colton*, 24 CA4th 356 (1994), --------------------------------------------------------- 24

*Petro-Tech v. Western Co. of North America*, 824 F.2d 1349 (3d Cir. 1987). ---------------------------------- 20

*Potter v. Firestone Tire &*, 6 Cal.4th 965, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (Cal. 1993).--------------------- 10

*Procter Gamble Co. v. Amway Corp*., 242 F.3d 539, 565 (5th Cir. 2001)--------------------------------------- 19

*Ramirez v. County of Los Angeles* (C.D. Cal. 2005) 397 F. Supp. 2d 1208. --------------------------------- 14

*Sedima SPRL v Imrex Co*, 473 U.S. 479, 496-96 (1985). --------------------------------------------------- 17

*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 [137 Cal.Rptr.3d 839]-------------------- 14

*Supermail Cargo, Inc. v. United States* (9th Cir. 1995) 68 F3d 1204, 1206----------------------------------- 9

*Tameny v. Atlantic* Richfield Co., 27 Cal. 3d 167 (1980). --------------------------------------------------- 24

*United States v eBay, District of Mass*., 24-CR-_____, pg2, Deferred Prosecution Agreement (Jan. 11 2024).  21

*United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993)------------------------------------------- 16

*United States v. Raniere*, 384 F. Supp. 3d 282, 294 (E.D.N.Y. 2019) ----------------------------------------- 20

*United States v. Raniere*, 384 F. Supp. 3d 282, 325-26 (E.D.N.Y. 2019).--------------------------------------- 16

*United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) ------------------------------------------------- 16

*Updike v. Browning-Ferris, Inc*., 808 F. Supp. 538, 543 (W.D. La. 1992). ------------------------------------- 10

*Wadler v Bio-Rad Labratories,* 916 F.3d 1176 (9th Cir. 2019). ---------------------------------------------- 13

*Wadler v. Bio-Rad Labs*, 141 F. Supp. 3d 1005, 1027 (N.D. Cal. 2015) citing *Banko v Apple*, 20 F.Supp.3d 749, 759–60. ---------------------------------------------------------------------------------------------- 24

*Wadler v. Bio-Rad Labs., Inc.,* 141 F. Supp. 3d 1005, 1008-9 (N.D. Cal. 2015). --------------------------------- 12

*Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014).------------------------------------- 5

*Xanthopoulos v. U.S. Dep't of Labor*, 991 F.3d 823, 830 (7th Cir. 2021).--------------------------------------- 2

<u>S</u><u>TATUTES</u>

18 U.S.C. § 1514A(a)(1).----------------------------------------------------------------------------------- 12

Cal. Labor Code § 96(k). ---------------------------------------------------------------------------------- 6

Cal. Labor Code § 98.6 ------------------------------------------------------------------------------------ 6

Cal. Labor Code §§ 98.6 and 96(k),-------------------------------------------------------------------------- 7

Cal. Labor Code 1102.5(a) --------------------------------------------------------------------------------- 23

Cal. Labor Code Section 1102.5---------------------------------------------------------------------------- 22

Cal. Labor Codes §§ 1102.5 and § 232.5 -------------------------------------------------------------------- 7

CERCLA -------------------------------------------------------------------------------------------------- 23

OSHA ----------------------------------------------------------------------------------------------------- 23

*Sedima*, 473 U.S. at 493, 105 S.Ct. at 3283---------------------------------------------------------------- 20

<u>R</u><u>ULES</u>

Fed. R. Civ. P. 12(b)(6)------------------------------------------------------------------------------- 1, 2, 3

Fed. R. Civ. P. 12(f),--------------------------------------------------------------------------------------- 2

<u>C</u><u>ONSTITUTIONAL</u> <u>P</u><u>ROVISIONS</u>

California Constitution-------------------------------------------------------------------------------------- 7

# I. PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS

1.     Plaintiff Ashley Gjovik respectfully submits the following Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss some of the clams in her Third Amended Complaint under Fed. R. Civ. P. 12(b)(6). Defendant's Motion to Strike should be denied for a variety of reasons including due to Defendant's failure to provide rational justifications for its positions, unsound legal ground for many of its arguments, Defendant's attempt to "strike" and remove facts integral to this matter in both the Motion to Dismiss and Motion to Strike, and Defendant's substantive references to prior mooted pleadings in violation of Local Rules 10-1 and this Court's Order. [Docket No 50].

2.     Plaintiff responds to most of Defendant's substantive arguments in this Opposition brief, however, Plaintiff will not engage with Defendant's proffered substantive arguments based on mooted prior pleadings, as to not violate this Court's rules. Plaintiff will also not be responding to Defendant's various attacks on her character and competence. Plaintiff generally denies Defendant's factual allegations in their Motion as it is compromised with inappropriate commentary and editorialization.

## II. STATEMENTS OF FACTS

3.     This is a complex regulatory-compliance-avoidance scheme conducted by Apple Inc through a criminal enterprise, which prior-Apple-employee Ashley Gjovik became caught up in after she complained about toxic waste exposure at her Apple office, and then she reported Apple to federal agencies and law enforcement, and Apple decided to physically remove her from the scene of their apparent environmental crimes in order to prevent Gjovik from gathering of evidence, and then Gjovik was terminated the day before a federal affidavit about Apple's unlawful acts, shortly after complaining about "*witness intimidation*" from a "*Workplace Violence*" interrogator. Gjovik realized it was all an effort to cover up intentional regulatory

violations under at least three federal environmental statutes, which also implicated racketeering and securities fraud concerns, and to cover up over five years of Apple's poisoning of a large community by lawlessly releasing metric tons of solvent vapors and lethal gases into thousands of home windows and making some of the residents severely ill, including Gjovik. Gjovik's termination was then followed with over two years of deranged intimidation and threats to coerce Gjovik to drop her charges. Gjovik has not dropped her charges.

4.      A Racketeer Influenced and Corrupt Organizations ("RICO") Act case is appropriate and required here because Apple's threats and retaliation against Gjovik, and conspiracy to conceal its corrupt and unlawful acts, violated federal criminal statutes for which there is no other appropriate private civil action. Apple's retaliation against Gjovik was partially due to Gjovik reporting Apple to the FBI, U.S. Department of Justice, and Santa Clara County District Attorney's office for multiple apparent criminal acts, and Gjovik's public accusations that Apple is actively violating the RICO Act – all of which Apple knew prior to Apple's abrupt termination of Gjovik by an Apple Global Security team/Worldwide Loyalty enterprise "Workplace Violence" investigator and without explanation. This is quite literally a "*RICO Act Whistleblower*" case.

5.      Gjovik generally denies Apple's allegations and statements/restatements of fact in their Motion to Dismiss, including Apple's description of events, but also Apple's summary and description of Gjovik's allegations against Apple.  A summary of the procedural history of this civil case can be found in the concurrently filed Opposition to Defendant's Motion to Strike.

### III.    ISSUES TO BE DECIDED

6.      Apple filed three motions and asks to dismiss claims under Fed. R. Civ. P. 12(b)(6), to strike claims under Fed. R. Civ. P. 12(f), and to reinterpret the complaint with a request for judicial notice. Plaintiff will respond to all of these motions concurrent with Oppositions.

7.     The Court will need to decide it if it will grant any of the motions, and if so, which requests. Apple made literally hundreds of requests.

## IV.     THIS MOTION FAILS TO CONFORM WITH THE FED. R. CIV. P., LOCAL RULES, AND COURT ORDER

### A.     MOTION SHOULD BE DENIED WHERE THERE IS NONCOMPLIANCE WITH FED. R. CIV. P. 12(B)(6)

8.     A Fed. R. Civ. P. 12(b)(6) motion may argue that there is no legal theory based on settled rules (frivolous); that a complaint uses questionable legal ground to establish claim; it provides no factual allegation for an essential element of legal theory; or it provides conclusory or improbable allegations. The motion is not supposed argue new facts; dispute existing facts; deny well pled statute of limitations tolling theories or vicarious liability theories; or incite evidentiary inquiries prior to discovery.

9.     A Rule 12(b)(6) motion cannot be used to challenge just certain allegations within a claim while the underlying claim is not itself challenged – and if the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied. *Beery v. Hitachi Home Electronics America, Inc*., 157 FRD 477, 480; U.S. (CD CA 1993); *E.E.O.C. v. Alia Corp*., 842 F.Supp.2d 1243, 1250 (ED CA 2012).

10.     This is especially true in cases about civil rights and corporate fraud. In these types of white-collar cases, as "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs" and "rigid enforcement in such circumstances could permit 'sophisticated defrauders' to avoid liability." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).

**B. MOTION SHOULD BE DENIED WHERE DEFENDANT QUOTES AND REFERENCES SUBSTANTIVE FACTS WITHIN MOOTED COMPLAINTS SUPERSEDED BY THE TAC AND MOOTED MOTIONS**

11.     In Defendant's Motion to Dismiss, Defendant repeatedly cites, references, quotes, and argue matters contained within mooted pleadings. Defendant directly references facts and allegations the mooted Second Amended Complaint at least twenty times. (Def. Mot. to Dismiss at pages 3, 4, 5, 9, 11, 12, 14, 16, 18, 19, 24). Defendant also directly refences the First Amended Complaint (Def. Mot. to Dismiss at page 24) and even directly references the original complaint (Def. Mot. to Dismiss at page 8). Defendants also cite Def's RJN Exhibit A (a previously mooted exhibit) in the pending motion at least four times (Def. Mot. to Dismiss at pages 3, 10, 11, 13).

12.     In their Motion to Dismiss, Defendant repeatedly quotes *Bell v. Clair*, in order to justify its excessive citations to mooted pleadings, and Defendant even warns that Plaintiff that she "may not plead around the deficiencies in [her] claims by omitting previously pled facts" in her prior complaints. Defendant improperly cites *Bell v. Clair*, which refenced an amended complaint following a prior complaint that was decided on the merits and dismissed for failure to state a claim with leave to amend. *Bell v. Clair*, Case No. 1:13-cv-01594-SKO (PC), 4 (E.D. Cal. Apr. 8, 2015). There has been no decision on the merits in this case and thus *Bell v. Clair* is an incorrect interpretation of the law.

13.     "Once a complaint is amended, it supersedes the former complaint, rendering it of "no legal effect." *Williams v. County of Alameda*, 26 F.Supp.3d 925, 936 (N.D. Cal. Feb. 10, 2014). After plaintiff files an amended complaint, the original complaint became "non-existent." *Desai v. Deutche Bank Sec. Ltd.,* 573 F.3d 931, 936 n.5 (9th Cir. 2009).[1] "It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent.

---

[1] See, Civil L.R. 10-1 "Amended Pleadings" – ("Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.)

Once amended, the original no longer performs any function as a pleading." *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956).[2] "It is well-established that an amended pleading supersedes the original pleading and renders it of no legal effect." *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014)."

14.     Defendant's actions put Plaintiff in a difficult situation, as to get her "day in court," she is expected to object and correct statements made by the opposing party if she does not think they are accurate – yet if she were to do so where Defendant references and quotes its allegations on mooted pleadings, then Plaintiff joins Defendant in conduct this District has described as "wholly improper." *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014). Instruction the Court "refuses" to allow parties to "engage in such conduct." *Id*. In *Williams v. County of Alameda,* the court refused to "consider the arguments that [the party] improperly seeks to incorporate by reference." *Id*. Plaintiff asks this court for similar discretion in response to Defendant's conduct, as Plaintiff does not plan to respond to those arguments.

15.     Defendant engages in other odd conduct in Def. Mot. to Dismiss, including making substantive arguments in footnotes (e.g., fn 5 arguing vicarious liability theories and fn 8 arguing statute of limitations tolling theories) and suggesting piecemeal dismissals of partial claims, which is disfavored. "Federal courts have often declined invitations to consider claims or allegations piecemeal," *Calamco v. J.R. Simplot Co*., 2:21-cv-01201-KJM-KJN, 12 (E.D. Cal. Jun. 27, 2023). If an opposing litigant may divide up or reorganize the pleader's claims and conquer the divided claims one by one, it could eviscerate the pleader's right to organize its pleading. *Id*. at 13.

16.     There's the old saying, "If you have the facts on your side, pound the facts; if you

---

[2] See also, e.g., *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) (same), see also, *Doe v. Unocal Corp.,* 27 F. Supp. 2d 1174, 1180 (C.D. Cal. 1998) (same); *dotStrategy Co. v. Facebook Inc.,* No. C 20-00170 WHA, 8 (N.D. Cal. Nov. 11, 2020); *Indep. Towers of Wash*.,350 F.3d 925, 929 (9th Cir.2003).

have the law on your side, pound the law; if you have neither the facts nor the law, pound the table." Apple's response with these three motions seems to be Apple pounding on the table.

## V.  MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF STATES PLAUSIBLE CLAIMS FOR ALL COUNTS

17.     The Rule 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim." *Auster Oil Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); see also *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'")

18.     "The Supreme Court has explained that "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A.  PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF CAL. LABOR CODE § 98.6 + 96(K)

19.     Apple said it only want to dismiss a subpart of Plaintiff's Cal. Labor Code § 98.6 claim: retaliation under Cal. Labor Code § 96(k). Apple appears to proffer a legal theory for its request to dismiss that this statute only applies to private employees related to "conduct" but not "speech," because, Apple says, there are no U.S. Constitution First Amendment rights for private workers. [Def. Mot. to Dismiss at 22]. Defendant then cites cases about the federal First Amendment not applying to private companies. *Id*. But Plaintiff never invoked the First Amendment in her claim.

20.     Plaintiff claimed that under 96(k), conduct occurring during nonworking hours away from the employer's premises is protected and cannot be the basis of a termination, when that conduct involved the exercise of a right protected by the Labor Code or Constitution. Apple

argues the federal Constitution, but as this is state labor code, the California Constitution is surely just as applicable, if not more.

21.     The conduct Plaintiff argues she engaged in, and was protected under 96(k), and she faced retaliation for engaging in was speaking about "work conditions and the terms and conditions of her employment (including pay, complaints of discrimination and harassment, complaints about workplace safety, complaints about retaliation, complaints about employer surveillance and unlawful invasions of employee privacy, complaints about criminal conduct by Apple executives, encouraging employees or organize and report illegal conduct to the government, and about her reports to the government about Apple)." (TAC at ¶ 215-216.)

22.     The California Constitution provides self-executing protections for certain rights that do apply to private employers – such as California's constitutional right to privacy (Article 1, Section 1) and California's "free speech" clause (Article 1, Section 2). Further, the California Labor Code is integrated with the California Constitution under Article XIV Section 1-3, and several statutes protect employees from retaliation for speaking about pay and work conditions.. Plaintiff also invoked her right to safety (Article 1, Section 1), right to be free of discrimination (Article 1 Section 8 and 31), to be free from water pollution (Article X Section 2), and protections for victims of crime (Article 1, Section 28 – aka "Marsy's Rights").

23.     Defendant writes in their Motion, "Plaintiff's offer letter states that her employment with Apple was at will, and that Apple could terminate her employment 'at any time and for any or no reason.'" (Def's Mot. to Dismiss at 23). This is not only an unsound legal interpretation of Cal. Labor Code §§ 98.6 and 96(k), but the statement itself is likely a potential violation of Cal. Labor Codes §§ 1102.5 and § 232.5, as well as, of course, the National Labor Relations Act.

24.     Further, Apple of course cannot terminate its employees "for any reason," under

those laws – and also laws like whistleblower protection and witness intimidation statutes – but that, of course, is why we're here. In fact, Apple was in this very courthouse a decade ago trying to argue a similar position as they take now, but Judge Seeborg tried to help Apple understand that, actually, there is a "fundamental public interest in a workplace free from crime," and in fact, Apple cannot lawfully terminate employees in retaliation for reporting crimes. *Banko v. Apple, Inc.*, No. 13-02977 RS, 9 (N.D. Cal. Dec. 16, 2013). (TAC fn 59).

**B.    PLAINTIFF STATES A PLAUSIBLE CLAIM FOR BREACH OF IMPLIED CONTRACT ("GOOD CAUSE") AND DUTY OF GOOD FAITH AND FAIR DEALING**

25.    Plaintiff argued in her pleadings that she was no longer an at-will employees at Apple. (TAC ¶ 234-237). Her TAC analyzes the *Foley* factors and applied them to her employment at the company. Apple's response does not say anything about the *Foley* factors and the tests implied contract employment under California law. (Def's Mot. to Dismiss at 23.) This is the section where Apple made the comment above about being able to fire employees for any reason they want. *Id.*

26.    Apple apparently learned nothing from their time with Judge Seeborg on this topic because that same employee was found to plead a plausible claim for implied contract good-cause employment under the *Foley* factors: finding the facts were "sufficient to state a claim for relief for breach of a contract in violation of Banko's evolved right to be subject to termination only for good cause." *Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 759 (N.D. Cal. 2013) analyzing *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 681-82 (Cal. 1988).

27.    As for the breach of implied covenant of good faith and fair dealing, Apple ignores Plaintiff's arguments. Plaintiff did plead similar fact patterns as when the Court found a plausible claim with Banko years ago. *Banko v. Apple, Inc.,* No. 13-02977 RS, 12 (N.D. Cal. Dec. 16, 2013) – ("the FAC raises his right to relief "above the speculative level" for breach of the implied covenant of good faith and fair dealing" *Banko v. Apple, Inc.*, No. 13-02977 RS, 12 (N.D. Cal.

Dec. 16, 2013).

## C. PLAINTIFF STATES A PLAUSIBLE CLAIM FOR NUISANCE, NUISANCE PER SE, AND ULTRAHAZARDOUS ACTIVITIES

28.     Apple raises questions about statute of limitations but fails to explain how a statute of limitations could be facially expired if the statute of limitations is two years, and Plaintiff would have filed her lawsuit within two days prior to the expiration. (Def's Mot. to Dismiss at 14). Plaintiff argues complicated tolling claims due to fraudulent concealment and delayed discovery which should extend this statute of limitations, but for a Motion to Dismiss, it seems sufficient that there were at least two days – that's not expired. Def's Mot. to Dismiss at page 14. Where the expiration of the statute cannot be determined from the face of the complaint, a motion for summary judgment is the proper procedure. *AVCO Corp. v. Precision Air Parts, Inc.* (11th Cir. 1982) 676 F2d 494, 495; *Supermail Cargo, Inc. v. United States* (9th Cir. 1995) 68 F3d 1204, 1206—(equitable tolling doctrine usually not amenable to resolution on Rule 12(b)(6) motion).

29.     In addition, Apple's interpretation of Nuisance Per Se is not accurate. Apple responds as if the Per Se claim is about Apple's manufacturing activities itself, but it is now - it is about Apple exhausting at least 7 metric tons of volatile organic compounds into the ambient air next to thousands of homes, in violation of air pollution, hazardous waste, and public safety laws. (TAC starting at ¶ 173.)    "Emissions of hazardous substances into the environment have constituted nuisances per se." *Espinosa v. Roswell Tower, Inc.,* 121 N.M. 306, 310 (N.M. Ct. App. 1995) ) Pollution of water is nuisance per se.  *Branch v. Western Petroleum, Inc.,* 657 P.2d 267, 276 (Utah 1982). "Violations of the asbestos NESHAP created a public nuisance per se." *Espinosa v. Roswell Tower, Inc.*, supra at 310.

30.     In addition, Apple seems to group all of the chemical exposure events into one overall bucket of 'exposing Plaintiff to chemicals in different places and in different ways,' but that's now how tort liability works. Each location/vector, occurrence, and type of injury may be a

different claim. The exposure to the vapor intrusion from the cracked floor is a different vector and exposure, then the chlorinated solvent vapors piped into the HVAC system, which is also different exposure then the semiconductor fabrication exhaust. Apple cannot say the statute of limitations for all of Plaintiff's toxic torts claims expires as soon as she discovered the very first time Apple exposed her to dangerous chemicals – Apple is liable for each different exposure.

31.     Apple's Ultrahazardous Activities legal analysis is misplaced. There is ample legal precedent that Superfund sites can be Ultrahazardous Activities, and also that semiconductor fabrication facilities and other factories with toxic gases can also be Ultrahazardous Activities. In fact, California has recognized a hazardous waste ultrahazardous tort claim for some time. *Potter v. Firestone Tire &*, 6 Cal.4th 965, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (Cal. 1993). The cases Apple cites in their Motion to Dismiss at 14-17 are misguided, as all of those cases appear to be hazardous materials cases. The use of hazardous material is rarely an Ultrahazardous activity because the scenario is completely different then the potential for leaks, spills, vapor clouds, and explosions that can occur with hazardous waste and toxic gases.

32.     One of Apple's arguments as to why it should not face strict liability for its hazardous waste and toxic gas activities is that Plaintiff gathered extensive evidence of Apple's negligence related to those activities. (Def's Motion to Dismiss at 16). Ability to mitigate is just one of many factors for Ultrahazardous claims, and it can be easily outweighed when there are bigger risks – such as toxic gases persistently being at risk for explosions – regardless of diligence.

33.     "The storage of toxic gases is, without doubt, an ultrahazardous activity…  The burden of constructing every manufacturing plant that uses toxic gas … such precautions are not 'reasonable.' When such a plant is constructed with 'reasonable' precautions there is still a significant risk of leaks and damage may result even though there is no 'substandard' conduct." *Updike v. Browning-Ferris, Inc*., 808 F. Supp. 538, 543 (W.D. La. 1992).

34.     Gjovik's home was 300 feet from Apple's semiconductor fabrication plant. Like in the classic California ultrahazardous activity case, *Alonso v Hills*, an ultrahazardous activity like use of poisons or blasting, only 200 yards (or here, 300 feet) from hundreds of homes in a residential district, will be found to be an ultrahazardous activity with strict liability even without proof of negligence. *Alonso v. Hills* (1950) 95 C.A.2d 778, 214 P.2d 50; *McKenna v. Pacific Elec. Ry. Co*. (1930) 104 C.A. 538, 540, 286 P. 445. (TAC starting at ¶ 22).

35.     Operating a business on a dangerous toxic waste dump site, like a Superfund mega-site, with a pathway for vapor intrusion, and vapor intrusion contaminants of concern including dangerous chemicals like TCE and/or Vinyl Chloride, is an ultrahazardous activity. The status of a property as a Superfund site has been a factor in deciding if an activity is ultrahazardous. *E Industries v. Safety Light Corp*., 123 N.J. 371, 394 (N.J. 1991) ("Plaintiff's property is befouled with radium because of defendant's abnormally-dangerous activity…. Moreover, the property has been earmarked as a Superfund site."). CERCLA is a strict liability statute for a reason. Superfund sites are also relatively uncommon. As of September 2023, there are only 1,336 active Superfund National Priority List sites in the United States.[3]

**D.     PLAINTIFF STATES A PLAUSIBLE CLAIM FOR SOX AND DODD-FRANK WHISTLEBLOWER RETALIATION**

36.     Apple's response to Plaintiff's SOX and Dodd-Frank claims are compromised due to excessive citations and quotes of mooted pleading and the contraband SEC whistleblower tip. (Def's Motion to Dismiss at 9-13.) Due to the extensive quoting and citing to the SAC, Plaintiff responds generally here instead of point by point.

---

[3] US EPA, Superfund: National Priorities List (NPL), [last visited 12/20/23], https://www.epa.gov/superfund/superfund-national-priorities-list-npl (noting data is current as of September 7 2023).

37. When enacting Sarbanes–Oxley's whistleblower regime, in comparison, Congress had a more far-reaching objective: It sought to disturb the "corporate code of silence" that "discourage[d] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." "insulate " *Lawson v. FMR LLC,* 571 U.S. 429, 442 (2014). Accordingly, the Sarbanes–Oxley anti-retaliation provision covers employees who report fraud not only to the SEC, but also to any other federal agency, Congress, or an internal supervisor. See 18 U.S.C. § 1514A(a)(1). *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 778 (2018). 18 U.S.C. § 1514A(a). Section 806 is directly connected to an employee's terms and conditions of employment, as it was enacted to provide "protection for employees of publicly traded companies who blow the whistle on fraud and protect investors." S. REP. NO. 107-146, at 10 (emphasis added). Its "focus" – that is, the conduct it regulates – is on prohibiting employment-related retaliation. *Garvey v. Admin. Review Bd.,* 56 F.4th 110, 127 (D.C. Cir. 2022)

38. There is a very similar fact pattern as this case as in *Wadler v Bio-Rad Labs*. In that case there was a sufficient claim for SOX/Dodd-Frank whistleblower retaliation when an employee suspected the company was engaged in FCPA violations and started investigation, only to meet a variety of types of retaliation and obstruction. *Wadler v. Bio-Rad Labs., Inc.,* 141 F. Supp. 3d 1005, 1008-9 (N.D. Cal. 2015). The employee asked for documents and the company refused to provide them; the employee claimed he was being "stonewalled"; and the conduct made the employee "become suspicious that [the] corruption issues …. were known to senior management, and that management was intentionally blocking his efforts to uncover evidence of bribery and related misconduct." *Id.* at 1009.

39. The *Bio-Rad* employee he then took his concerns to the Audit Committee of the Board of Directors, but complained that the people who would investigate his claim "had a clear conflict of interest," and then employee was then terminated. *Id* at 1009. The fact patterns in

*Wadler v Bio-Rad Labs* are incredibly similar to this controversy between Gjovik and Apple. Wadler obtained a jury verdict of $11M against Bio-Rad Laboratories, Inc., and its CEO for violations of the Sarbanes-Oxley Act, the Dodd-Frank Act, and California public policy by terminating the employee in retaliation for his protected activity. *Wadler v Bio-Rad Labratories,* 916 F.3d 1176 (9th Cir. 2019).

40.     Plaintiff has plead enough facts to survive a Motion to Dismiss and should be allowed to proceed to discovery for both SOX and Dodd-Frank claims. "After all, the issue presented by a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998).

E.     **PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF THE BANE AND RALPH CIVIL RIGHTS ACTS**

41.     Apple's response for the Bane and Ralphs Act sections is similarly problematic as the SOX and Dodd-Frank claims. Apple responds with extensive citations and references to prior mooted pleadings, and with legal arguments arising out of those "null" documents. (Def's Mot. to Dismiss at 17-20. Plaintiff will once again answer generally and ask for deference from the Court.

42.     Apple's main arguments in the overall section seem to be around vicarious liability theories (including conspiracy and respondeat superior), attempted interference with civil rights compared to actual interference, and whether there was a sufficient amount of violence. Plaintiff's pleading covered much of the threats, intimidation, coercion, and interfere and there is not a heighted pleading standard requiring the equivalent of an indictment (which is what Apple seems to be asking for) in order to survive a civil Rule 12(b)(6) Motion.

43.     Several things Apple argues about are not accurate. For instance, Apple claims Plaintiff "alleges that 'Apple' threatened, intimidated, and coerced her," but "does not identify any Apple employee(s) who engaged in the alleged conduct." (Def's Motion to Dismiss at page

17). However, Plaintiff does name names in a few sections including TAC ¶ 137, 139, 247. At least two of those people are current Apple employees. Employers can be vicariously liable for the actions of their employees under this section. *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009), amended in part (Sept. 8, 2009). *Di-Az v. Tesla, Inc.*, Case No. 3:17-cv-06748-WHO, 24-25 (N.D. Cal. Dec. 30, 2019).

44.     A claim can be made by an employee against an employer. *Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441. Recognizing that neither the language nor the history of the Ralph Act bars claims arising in an employment setting, the Court observed "[s]adly, hate does not end when an employee walks through the door of his or her place of employment. The staggering impact of cases of workplace violence based on race, religion and other classifications described in these statutes is unfortunately known to us too well." *Id*. at p. 1457. Liability includes any "person [or corporation] who denies the right" as well as anyone who "aids, incites, or conspires in that denial."

45.     In addition, Apple's arguments that Gjovik did not show proof of interference in civil rights is irrelevant because the threats do not have to actually interfere with the right. As to violence, Plaintiff does allege violence and threats of violence, but violence is not required for the Bane Act. See *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 [137 Cal.Rptr.3d 839] (We need not decide that every plaintiff must allege violence or threats of violence in order to maintain an action under section 52.1"). Even an attempted interference is enough to give rise to a Bane Act claim. Civ. Code, § 52.1, subds. (a), (b); *Ramirez v. County of Los Angeles* (C.D. Cal. 2005) 397 F. Supp. 2d 1208.

46.     Questions about whether a reasonable person in Plaintiff's shoes be intimidated or perceive violence, or if there was a reckless disregard for Plaintiff's civil rights, sound like

questions for a jury.[4] Further, Rule 12(b)(6) motions are "especially disfavored" where the complaint sets forth a novel legal theory "that can best be assessed after factual development." *McGary v. City of Portland*, 386 F3d 1259, 1270 (9th Cir. 2004) – (appreciating when a "*claim raises some novel issues*" and noting disfavor in dismissing "*cases where the complaint sets forth a novel legal theory that can best be assessed after factual development*.") Id.

**F.    PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF THE RICO ACT**

47.    To Apple's primary arguments under the RICO Act seem to be lack of concrete injury under 1962(a), failure to plead an Association-in-Fact Enterprise distinct from Apple, vicarious liability theories, lack of continuity and common purpose, and no relatedness,  (Def's Motion to Dismiss at page 5-9.) Some of these issues are quickly addressed. RICO generally does not require pleading with particularity for most criminal conduct. "Requesting a complaint be made less vague is not to require the pleader to disclose details of the case," see *Boxall v. Sequoia Union High Sch. Dist.,* 464 F. Supp. 1104, 1114 (N.D. Cal. 1979), "or to provide the evidentiary material that may properly be obtained by discovery," see *Famolare, Inc. v. Edison Bros. Stores,* Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).

48.    The Association-in-Fact Enterprise is well plead enough for this phase, as discovery is usually when these things become crystalized. Apple claims at page 5, "she does not (and cannot) allege an enterprise distinct from Apple," but then summarized a few of the named individuals and groups on page 7, and at the bottom of page 7 admits two of the Predicate Acts are pled with non-Apple entities. (Def's Mot. to Dismiss at page 5-7). The Association-as-Enterprise does not seem to be an issue.

---

[4] For instance, see: *Richardson v. City of Antioch*, 722 F.Supp.2d 1133, 1147 (N.D.Cal.2010). *Williford v. Scrivner*, Case No.: 1:15-cv-00653 - KJM - JLT, 6 (E.D. Cal. Aug. 17, 2015); *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993).

49.     The only relatedness argument seems to be exclusively based on Plaintiff's mooted original complaint from September 7 2023. (Def's Mot. to Dismiss at page 8). Plaintiff will not respond to that. The continuity and common purpose arguments seem centered on two topics. First, direct comparisons to *McGowan v Weinstein*, and second, claiming there's no other victims and Plaintiff must bring forward more victims to Apple as proof. (Def's Mot. to Dismiss at 9.)

50.     Apple compares this matter to the dismissed RICO claim in *McGowan v Weinstein*, however in that case the allegations centered only around one victim and a singular purpose. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1012 (C.D. Cal. 2020). She did have a plausible claim for corporate vicarious liability however, explaining: "A principal or employer who is not at fault directly for the tortious conduct of his employee or agent in the commission of a fraud may become liable in any event." *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1016 (C.D. Cal. 2020) quoting *Clark Equip. Co. v. Wheat* , 92 Cal. App. 3d 503, 521, 154 Cal.Rptr. 874 (1979).

51.     Apple complained "…she does not identify any other 'witness'… she has never alleged Apple silenced those coworkers…" (Def's Mot. to Dismiss at 9). During *United States v. Raniere*, 384 F. Supp. 3d 282, 325-26 (E.D.N.Y. 2019), when Raniere asked the US government a similar thing ask Apple asks now, the Courts and government responded to Raniere that kind of information has "no bearing on whether the alleged victims were so directed or threatened." The Court the cites similar tactics. See *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) ("A defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific [other] occasions."); *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) (observing that because "a defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence, such testimony would not be exculpatory within the requirements of Brady"). *United States v. Raniere*, 384 F. Supp. 3d 282, 325-26 (E.D.N.Y. 2019).

52.     The scheme, common purpose, continuity, pattern, and association is re-summarized here as a general response to Apple's complaints.

### 1) Defendant directly injured Plaintiff by its racketeering Predicate Acts, and Defendant's investment of racketeering profits, in violation of RICO Act 1962(a), 1962(c), and 1962(d).

53.     Defendant increased sales and revenue by claiming to be an environmentally friendly company, but those claims were wire fraud, for example: Defendant's claims of a "Zero Waste" program, when "Zero Waste" actually means open illegal dumping, which saves Defendant money that would have been spent on proper disposal. (TAC ¶ 144.) Further, Defendant's open dumping at 3250 Scott Blvd included chemicals categorized as chemical weapons / weapons of mass effect (including chlorine, arsine, and phosphine) and Defendant planned to release/dump those chemicals in a crowded neighborhood where Plaintiff lived, and could cause mass harm to thousands of people, and did cause severe injury and suffering to multiple named people, including but not limited to Plaintiff, due to Defendant's chemical weapon use and release. (TAC ¶ 163.)

54.     Defendant did also cause severe injury to Plaintiff's business and property due to their use and release of chemical weapons, damaging and destroying ascertainable and defined items of chattel property (TAC ¶ 110, 180, 182, 183, 188, 240), terminating her before she received her performance bonus she had already earned [TAC ¶ 237], and harmed her business by disabling her and causing her to be away from work and to take a reduced course load in law school while she was exposed to their chemical weapon releases. (TAC ¶ 251.) *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). *Sedima SPRL v Imrex Co,* 473 U.S. 479, 496-96 (1985). The injury to business and property can be minor and is more than sufficient here. *Northeastern Women's Ctr. Inc v. McMonagle*, 868 F.2d 1342, 1357 (3d Cir. 1989) – ($887 of chattel property damage sufficient RICO injury).

55.    Defendant did also engage in more wire fraud to cover up their illegal disposal of chemical waste, including conducting a third-party vendor (e.g., ACT Environmental TAC ¶ 120) to assist Defendant in falsifying Defendant's manifest paperwork and regulatory filings, and illegally dump chemicals in order to reduce regulated output quantities, to facilitate false public statements, all in violation of criminal environmental laws and wire fraud. (TAC ¶ 144, etc.)

56.    Defendant then engaged in witness intimidation and witness retaliation against Plaintiff in order to cover-up what they did with the wire fraud and chemical weapons, and then also to cover up their prior intimidation and retaliation against Plaintiff, but also to her coworkers, as she discovered systemic retaliation and intimidation by Defendant and threatened to expose it in July-August 2021. (TAC ¶ 60, 62, 65.) *Nodine v. Textron, Inc*., 819 F.2d 347, 349 n.3 (1st Cir. 1987). Plaintiff even accused Defendant of racketeering prior to her termination, publicly, and also in a formal internal complaint. (TAC ¶ 98, etc.)

57.    Defendant then also reinvested its earnings and saved costs back into its enterprise, in order to be able to continue silencing witnesses, including Plaintiff, and to be able to more effectively silence witnesses in order to engage in more fraud and chemical weapon use. (TAC ¶ 163, etc.)  Defendant's investments included investing in progressive NGOs (e.g., CHEMForward TAC ¶ 116, etc.) in order to capture and control them, conspire with them, and prevent them from protecting and helping witnesses to Defendant's racketeering, and those NGOs did not help Plaintiff. (TAC ¶ 116.)

58.    Defendant's investments also included investing via Predicate Acts of Bribery in order to obtain special favors from local law enforcement (including the Santa Clara County Sheriff's Office), [5] and to conspire with and capture the interests of the police to ensure the police do not investigate Defendant's other racketeering activities. (TAC ¶ 120.) *Jane Doe I v. Reddy*,

---

[5] *The People v Thomas Moyer*, California Sixth Appellate Circuit, H049408 (August 25 2023)

No. C 02-05570 WHA, 2003 WL 23893010, at *5-6 (N.D. Cal. Aug. 4, 2003). Defendant's investments also included law firms and lawyers – who conspired with Defendant and were paid to harass, intimidate, and coerce these witnesses – as Defendant has done to Plaintiff with its lawyers. (e.g., David Eberhart, etc.). (TAC ¶ 106.) Id. (see also, Plaintiff's December 29 2023 NLRB charge # 01-CA-332897).

59.     Further, Defendant conspired with parties (including agreements with employees, ex-employees, and agents – such as Joanna Appleseed and Shantini Vyas) (TAC ¶ 139.) to intimidate Gjovik with a goal of interfering with Gjovik's testimony and production of evidence to federal agencies (such as through overt acts like meritless lawsuits, gag orders, false reports to police, etc.), (TAC ¶ 199.) including with public support including Defendant's attorneys requesting copies of court records documenting the harassment. (TAC ¶ 196, 247.) Id. *Brady v. Dairy Fresh Products Co*., 974 F.2d 1149, 1154 (9th Cir. 1992) – ("An entity may be liable under section 1964(c) for the acts of the entity's employees under traditional respondeat superior and agency principles," especially "when the employer is not the enterprise and the employer receives some benefit from its employee or agent's actions.").

60.     Defendant's employees and ex-employees also spread fraudulent rumors about Plaintiff, causing her severe professional and reputational harm. (TAC ¶ 133.) *Procter Gamble Co. v. Amway Corp*., 242 F.3d 539, 565 (5th Cir. 2001) – (RICO claim sufficient to survive Rule 12(b)(6) dismissal where a competitor had allegedly spread a rumor that caused consumers to stop purchasing the company's products.).

61.     Defendant's actions, just including the acts listed above, extend over eight years (with 3250 Scott Blvd put in operation in 2015) (TAC ¶ 122) while the intimidation, retaliation, and fraud continued concurrently. Defendant's actions, just including the acts listed above, include at least five parties who are not Defendant and who are part of an Association-in-Fact enterprise.

These parties benefit financially from Defendant's racketeering and thus conspire, aid, and facilitate Defendant's ongoing schemes with a common, shared purpose.

**2) Apple is Culpable and Liable for the Racketeering.**

62. As to the question of liability, "liability may arise pursuant to section 1962(a) under agency and respondeat superior principles when the individual or entity is benefited by its employee or agent's RICO violations." See *Petro-Tech v. Western Co. of North America*, 824 F.2d 1349 (3d Cir. 1987). By giving full effect to RICO's broad net of liability, the doctrines of respondeat superior and agency liability will encourage victims of racketeering to act as private attorneys general and help eradicate racketeering activity. See *Sedima*, 473 U.S. at 493, 105 S.Ct. at 3283. This will further both the compensatory and deterrent goals of RICO. See id. "An employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency when the employer is distinct from the enterprise." *Petro-Tech*, 824 F.2d at 1357-58. *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1155 (9th Cir. 1992).

63. "Congress may constitutionally impose criminal liability upon a business entity for acts or omissions of its agents within the scope of their employment," *New York Central Hudson R. R. Co. v. United States*, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (1909); and "such liability may attach without proof that the conduct was within the agent's actual authority, and even though it may have been contrary to express instructions." *Standard Oil Co. v. United States*, 307 F.2d 120, 127-128 (5th Cir. 1962). *United States v. Hilton Hotels Corporation*, 467 F.2d 1000, 1004 (9th Cir. 1973).

64. An example of when of an Association-in-Fact RICO enterprise with similar features includes the "NXIVM" corporation. The indictment read, the RICO Enterprise functioned "[u]sing harassment, coercion and abusive litigation to intimidate and attack perceived enemies and critics of Raniere." *United States v. Raniere*, 384 F. Supp. 3d 282, 294 (E.D.N.Y. 2019)

65.     A recent example of a corporation being charged and fined for witness intimation is eBay. "eBay engaged in absolutely horrific, criminal conduct. The company's employees and contractors involved in this campaign put the victims through pure hell, in a petrifying campaign aimed at silencing their reporting and protecting the eBay brand," said Acting United States Attorney Joshua S. Levy.[6] "The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged." *United States v eBay, District of Mass.*, 24-CR-____, pg2, Deferred Prosecution Agreement (Jan. 11 2024).

66.     US DOJ described it as a "harassment and intimidation campaign targeting journalists with whose reporting individuals in corporate management took issue." Id at page 4. Among other charges, eBay the corporation was charged with the RICO Predicate Act of "witness tampering, in violation of Title 18, United States Code, Section 1512(b )(3)." Id at page 1.

## G.     PLAINTIFF STATES A PLAUSIBLE CLAIM FOR IIED AND NIED UNDER CA, NY, & MA

67.     Apple has compromised their IIED and NIED sections with citations and references to prior pleadings including both the SAC and the FAC. (Def's Mot. to Dismiss at 23-25). Plaintiff will once again respond generally.

68.     As to the complaints that IIED would not apply in an employment situation, California's Supreme Court has recognized plausible IIED claims in fact patterns centering around employee retaliation and employment termination for over fifty years. *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 498-99 (Cal. 1970).

---

[6] US Department of Justice, *eBay Inc. to Pay $3 Million in Connection with Corporate Cyberstalking Campaign Targeting Massachusetts Couple*, (Jan. 11 2024), https://www.justice.gov/usao-ma/pr/ebay-inc-pay-3-million-connection-corporate-cyberstalking-campaign-targeting

69.     Apple now also attempts to raise a defense in the Motion to Dismiss, claiming Worker's Compensation preemption for NIED. This defense is better suited for their Answer, as Plaintiff's EEOC and DFEH charges filed three weeks prior to her termination will preempt the preemption. *M.F. v. Pac. Pearl Hotel Mgmt. LLC*, 16 Cal.App.5th 693, 700 (Cal. Ct. App. 2017). In *Dias v Sky Chefs* (where a sufficient allegation of IIED was found), like with Gjovik, following speaking up for herself and her coworkers – the employee faced harassment and criticisms, her benefits were interfered with, she was told to stop talking to her coworkers, she was followed, her work location was changed, and then she was fired. *Dias v. Sky Chefs, Inc*., 919 F.2d 1370, 1373 (9th Cir. 1990).

**H.     PLAINTIFF STATES A PLAUSIBLE CLAIM FOR CALIFORNIA UCL**

70.     Apple argues the Gobbler data collection just caused Apple more profit, but did not cause Plaintiff a loss. However, disclosure, distribution, or dissemination of biometrics is concrete harm for standing purposes, as biometrics are equivalent to private information. *Doe v. Apple Inc*., 3:22-CV-2575-NJR, 10 (S.D. Ill. May. 8, 2023). This is described at TAC ¶ 224-228 and restitution was requested at TAC ¶ 72, including bullets o, p, and q.

71.     Apple's argument is weak that a subsidiary receiving payments where Plaintiff loses money and Apple's subsidiary gains money, somehow does not bring Apple value and more profit. This is especially considering that subsidiary was administering these for-profit medical studies on employees without compensation and directly for Apple research & development. ¶ 27, 34, and 259.

**I.     PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF CAL. LABOR CODE § 1102.5 (WHISTLEBLOWER PROTECTION ACT)**

72.     Cal. Labor Code Section 1102.5 has "sweeping breadth." *Erhart v. BofI Holding, Inc*., 612 F. Supp. 3d 1062, 1108 (S.D. Cal. 2020). Plaintiff's pleading discusses many laws she is claiming Apple violated under 1102.5. It is a very employee-friendly whistleblower law, only

requiring a "plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Lawson v. PPG Architectural Finishes, Inc*., 12 Cal.5th 703, 718 (Cal. 2022). This burden seems met with just the US EPA inspection alone – that Plaintiff reported possible environmental violations to US EPA and it was serious enough for them to do a physical inspection ,and they found issues, all before Plaintiff was swiftly fired.

73. Apple puts some of those statutes in the footnotes writing "conclusory allegations that Apple violated various other statutes, including OSHA and CERCLA. TAC ¶210. Allegations that Apple violated some unknown section of OSHA or CERCLA are insufficient to state a claim under Section 1102.5." (Def's Mot. to Dismiss at page 20 fn 10). This is disingenuous as Orrick is the same law firm that has represented Apple on the US Department of Labor OSHA investigation since at least end of 2021, and they are also the lawyers currently assigned to our CERCLA trial in the Office of Administrative Law Judges and our hearing was just scheduled.

74. Similarly, in fn 12 on page 22, Apple argues that Plaintiff's claim about Apple violating Cal. Labor Code 1102.5(a) has no factual support. 1102.5(a) is the labor code that prevents employers from creating rules that prevent employees from reporting violations of the law to the government and law enforcement. At ¶ 9 in the TAC, it notes "The NLRB issued a Decision of Merit on two of Gjovik's charges ….Gjovik's two meritorious charges included Apple's Business Conduct Policy, NDAs, Intellectual-Property Agreement, and an email CEO Tim Cook sent his staff in September 2021." 1102.5(a), Rule 21F-17, and the NLRB are complementary. Apple is aware of the facts pled about the NLRB charges and decision about Apple's NDAs as Apple's trying to strike it in the pending Motion to Strike. (Docket No 49).

75. Prior to her termination, Gjovik provided information to public bodies (including US and California Department of Labor, US NLRB, California DFEH, US EEOC, etc.) about

Apple's violations of labor and employment laws, and several agencies were already conducting an inquiry based on Gjovik's information.

76.     It is a violation of public policy for an employer to discharge an employee from employment due to the employee refusing to engage in an unlawful act. *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). This includes an employer pressuring an employee to not report a crime or other serious violation of the law. In *Wadler v. Bio-Rad Laboratories*, the Court explained that activity protected by § 1102.5 can include refusal to participate in an employer's cover-up after receiving either direct or indirect requests to do so from the employer – with the decision explaining that Apple's direct instructions to an employee to ignore criminal conduct in *Banko v Apple Inc* was an "extreme" version of the conduct the statute intended to cover, and that indirect suggestions to ignore unlawful conduct are also protected. *Wadler v. Bio-Rad Labs*, 141 F. Supp. 3d 1005, 1027 (N.D. Cal. 2015) citing *Banko v Apple*, 20 F.Supp.3d 749, 759–60.

77.     Like in *Parada v City of Colton*, 24 CA4th 356 (1994), where a city building department employee refused to allow residential construction by certain city officials without building permits as required by law, Gjovik refused to allow Apple to cover-up the cracks in the floor without reporting them to the US EPA under CERCLA, or to have the US EPA oversee testing and repair under CERCLA. Gjovik and Apple argued about this repeatedly with Apple insisting they refused to tell the US EPA about the work because it they did not have to.

## VI.   CONCLUSION

78.     Defendant's Motion for to Dismiss any claims in the Third Amended Complaint should be denied. Defendant's Motion to Strike the Third Amended Complaint should be denied. Defendant's request for judicial notice should be denied.

79.     However, if the Court dismisses claims in Plaintiff's complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should

grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

80.     448. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**Dated: April 9 2024**

Signature:

_____

**s/ Ashley M. Gjovik**

**Pro Se Plaintiff**

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428