**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:23-CV-04597-EMC

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**DECALARTION** OF ASHLEY GJOVIK,

IN **OPPOSITION**,

TO DEFENDANT'S **MOTION TO DISMISS**

Fed. R. Civ. P. 12(b)(6)

*As Required by Civil L.R. 7-3, 7-5*

## I. DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

**Pursuant to 28 U.S.C.§ 1746, I, Ashley M. Gjovik, hereby declare as follows:**

1.     My name is Ashley Marie Gjovik. I am a self-represented Plaintiff in this above captioned matter. I make this Declaration based upon my personal knowledge and in support of Plaintiff's Opposition (Docket No. 54) to Defendant's Motion to Dismiss (Docket No. 48) portions of Plaintiff's Third Amended Complaint (Docket No. 47). I have personal knowledge of all facts stated in this Declaration, and if called to testify, I could and would testify competently thereto.

2.     Exhibits are attached to this declaration in pages 7-44, in order to substantiate statements in the declaration, but are only intended to be procedural evidence, not substantive – with the objective of trying to show that Apple is being deceptive in their pleadings.

3.     In Apple's Motion to Dismiss, Apple references mooted Complaints. I was very worried if I responded to Apple's references and quotes from my prior Complaints, that I would be violating this Court's rules and Order. But I was also fearful that if I did not address the statements Apple made, that Apple would have an unfair advantage in describing our dispute. I decided it was most important to me to not break this Court's rules, so I did not respond to any of Apple's references to mooted pleadings. If this Court would like to review and discuss those references, I ask please for an opportunity to address those points on the record. There were statements made I feel are incorrect such as saying I did not report things when I did actually report things, or saying I reported things in one way when I actually reported them a different way.

4.     Apple complained in their Motion to Dismiss about the statute of limitations for some of my toxic tort claims. I did not know until June 2022 that the US EPA inspected my Apple office on August 19 2021, or that US EPA found issues, including with contamination in the HVAC system.  Attached as Exhibit A is a true and correct copies of emails and reports from US EPA about the inspection, which I acquired through the formal FOIA process with the agency. I was the Apple employee who complained to US EPA about the cracked floor.

5.     Apple lied to the US Department of Labor and me in March 2022 about the inspection. Attached as Exhibit B is a true and correct copy of a document the US Department of Labor sent me and told me was Apple's official Position Statement for my CERCLA, OSH Act, and SOX cases. Apple denied that anything like that had ever occurred. I had no reason to think it occurred, or any reason to know about the HVAC issues.  I relied on Apple's statements and those statements caused me to spend a long time not knowing what actually happened.

6.      It was not until much later that I learned the US EPA inspection occurred due to my complaints about the cracked floor and that US EPA requested the inspection in July 2021 only days prior to Apple putting me on administrative leave in August 2021. Opp to MTD ¶ 77.

7.      I was terminated on September 9 2021, so if I had been allowed to come back to work on September 7 2021, I would have spent at least two days still working with the office on a Superfund site. Opp to MTD ¶ 28.

8.      I also did not know until February 2023 that Apple (or anyone) was engaged in semiconductor fabrication activities next to where I lived in 2020. My apartment was only 300 feet away from Apple's factory. Opp to MTD ¶ 34. When I got sick in 2020 living next to Apple's factory, I had gone on short-term disability and reduced my law school course load to the minimum number of credits. I feel behind in work and school due to the illness, and I never caught up. Opp to MTD ¶ 53-54.

9.      Apple had repeatedly misdirected my attention about the apartment where I got sick in 2020, suggesting I look into other parties and vectors for exposure that were not Apple and Apple's exhaust. I only learned about both the events at the office and Apple's silicon fabrication, because I could not let the matters go and was spending hours and hours researching and pouring over public records trying to find answers. Some people, including Apple employees, told me they thought I was too obsessed and should let it go. I do not think anyone else would have ever figured out what Apple did due to Apple's misleading conduct and how difficult it was to learn what they did and what US EPA found.

10.      My complaints to the US Department of Labor Whistleblower Protection Program, initiated prior to my termination, resulted in the docketing of OSH Act, CERCLA, and SOX whistleblower claims in December 2021. Attached as Exhibit C is a true and correct copy of the notice from US Department of Labor OSHA about the docketing.

11.      When I filed my SEC complaint on August 31 2021, I believed what I was complaining about could be a violation of SOX, or otherwise of interest to the US SEC. If I did not think my complaint was relevant to the US SEC, then I would not have filed a US SEC complaint.

12.      As noted, Apple's lawyers (the same one's here) responded to my allegations with a formal position statement in March 2022. In January 2024 I requested a de novo hearing on my CERCLA claim with the US Department of Labor Office of Administrative Judges. My case was

docketed in January 2024. Attached as Exhibit D is a true and correct copy of the notice from US Department of Labor OALJ about the docketing.

13.     The same lawyers from the US Department of Labor investigation were assigned to this de novo trial (and are the same lawyers here). We had the pre-hearing conference call with the assigned Judge on March 25 2024 and our trial was scheduled for March 2025. (Notice of Assignment, Hearing, and Pre-Hearing Order). Attached as Exhibit E is a true and correct copy of the notice from US Department of Labor OALJ Notice of Hearing.

14.     I have witnessed the lawyers here engaged in my CERCLA and OSH Act claims for over two years now so I do not understand what they mean in their Motion to Dismiss when they say "some unknown section of OSHA or CERCLA are insufficient" and "do not apprise Apple of the grounds on which the claim rests," when the same Apple lawyers were involved on those cases for years.

15.     Apple also made comments in their Motion to Dismiss about their Gobbler application. Apple claimed they were "required to search the Complaint for factual background about Gobbler" to understand what it was; but my complaints about Gobbler was supposedly the primary reason Apple claims it fired me as it told me on September 15 2021. TAC ¶ 106. These same lawyers affirmed this in their March 2022 statement to the US Department of Labor.

16.     These lawyers now also claim my lawsuit was filed after two years had passed from my distress over Gobbler, however Apple did not tell me it claimed it fired me over Gobbler until September 15 2021. TAC ¶ 106, 241-242. Apple's statement on September 15 2021 caused me great distress and still does cause me distress. The communication on September 15 2021 is within two years of when I filed the Complaint for this lawsuit on September 7 2021. Attached as Exhibit F is a true and correct copy of the email from Apple counsel David Eberhart.

17.     Apple also claimed in their Motion to Dismiss that Gobbler "takes pictures" but that I never said Gobbler "records" or that it did "record" or a "recoding was made." (MTD page 20). I did allege this in my TAC at ¶ 227 (I wrote: "Apple's use of Gobbler on Gjovik's phone also forced Gjovik to participate in Apple's unlawful acts by facilitating Apple's secret capture, storage, and processing of photos, videos, and biometric information of the public without their knowledge or consent.") In my TAC at ¶ 256 I also wrote "the way Gobbler works, employees are then also taking videos and gathering the biometrics of anyone around their iPhones."

18.     Apple said in their Motion to Dismiss that I have "no factual support" that Apple violated a California Labor Code about worker's ability to report unlawful conduct to the

government and law enforcement (MTD page 22), but the US NLRB issue a decision of merit on my charges about the same allegations under the NLRA in January 2023 and Apple knows this. Opp to MTD ¶ 74. Attached as Exhibit G is a true and correct copy of the notice from US NLRB.

19. Finally, I accused Apple of violating the RICO Act prior to Apple terminating me. I accused Apple of violated the RICO Act and engaging in racketeering in a formal Business Conduct complaint in August 2021, and I also posted on social media about it in August and September 2021. Opp to MTD ¶ 4, 56. In late July 2021, I had dozens of coworkers come forward complaining of intimidation and harassment when they tried to raise concerns, like what I was experiencing. I also accused Apple of engaging in system retaliation, intimidation, and cover-ups in late July 2021, prior to being put on administrative leave in August 2021. Opp to MTD ¶ 56

20. I filed an NLRB charge against Apple's lawyers assigned to this case in December 2023 due to out of court conduct related to this case. Opp to MTD ¶ 58. The charge is docketed as 01-CA-332897. I believe their actions violated the NLRA multiple times in only a few weeks. Attached as Exhibit H is a true and correct copy of the charge I filed.

21. I also included my complaints about Apple's law firm contacting me about Gobbler on September 15 2021 in my September 2021 NLRB charge docketed as 32-CA-283161. I also included in that charge, my complaints about Apple's Workplace Violence investigator contacting me on September 9 2021 and me telling him it felt like witness intimidation the day before my NLRB affidavit and I was forwarding the email to NLRB, and then I was fired a few hours later. Opp to MTD ¶ 3.

22. I believe I can provide enough facts already to establish vicarious liability for the actions of the people and the acts noted in my TAC, but I also want to go through discovery as I believe I will then have even more evidence. As I mentioned in my Opposition, one example of this was Apple's lawyers (the same ones assigned to my NLRB charges) requesting court records of the lawsuit filed against me by someone who worked in Apple Global Security and made sworn statements that she filed the lawsuit against me because of my NLRB charges against Apple.

23. There were many Apple employees, and other people who were not employees but were connected to Apple and Apple employees, who were behind the threats, intimidation, and harassment I received and complained about in my TAC. Anything I alleged in my TAC was Apple's liability, I made that allegation because I feel like I already have enough evidence to support that allegation, though I could not fit those details into the shorter TAC. I also do not understand why Apple argues some of the same people are not Apple employees so Apple is not

responsible for their actions, but then also implies they are actually Apple in Apple's RICO Association-in-Fact Enterprise arguments. These are many of the same people – they are named and there are vicarious liability arguments for each of them.

24.     Apple did not attempt to meet/confer with me on any of these matters. I heard nothing from Apple about their plans for Motions in response to the TAC in this case until I received a copy of Apple's latest Motion to Dismiss on March 26 2024.

25.     Due to the short-time frame to respond to all of Apple's Motions, I submitted my Oppositions with regrettable typos. My Opp to Apple's MTD ¶ 1 should say Motion to Dismiss or Dismiss, where it currently says Motion to Strike or Strike, on lines 5 and 9. If I had more time and was not already late in submitting my Oppositions, I would have spent more time proofreading and editing. I apologize.

26.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on APRIL 16 2024.


**Executed on**: APRIL 16 2024

Signature:



_____

**s/ Ashley M. Gjovik**

**Pro Se Plaintiff**

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

# EXHIBIT A

# PROCDURAL EXHIBIT A: US EPA Inspection

Message
_____

**From:** Handley, Bianca [Handley.Bianca@epa.gov]
**Sent:** 7/30/2021 7:43:24 PM
**To:** Schulman, Michael [Schulman.Michael@epa.gov]
**CC:** Johnson, AudreyL [Johnson.AudreyL@epa.gov]
**Subject:** SEMD Fieldwork Request - initial approval status

**Importance:** Low

THIS IS NOT YOUR FINAL APPROVAL EMAIL.
The following work has been approved by the QA Manager.
If this is EPA contractor travel, after approval from all involved branches, you will receive an email approving contractor travel.

If this is EPA staff travel during Phase 1, after approval from all involved branches, the request will be automatically sent to the Regional Approver through John Lyons. You must receive a final approval email before proceeding with travel.

Destination: TRW Microwave Site (Triple Site), Sunnyvale, Santa Clara County, CA
Dates: 2021-08-19
Description of work: A site visit to an Apple office building is necessary to conduct a visual inspection of the building's vapor intrusion mitigation measures. An Apple employee recently contacted EPA and notified EPA that there were cracks in the building's foundation. If true and the cracks are significant, this could impact the effectiveness of the VI mitigation system the protectiveness of human health. The onsite work will include visual inspections to the: (1) The vapor intrusion passive sub-slab depressurization system. (2) The building's concrete slab and past cracks that where sealed to prevent vapor intrusion. (3) Past 2013 to 2015 indoor air sampling locations. (4) The indoor location where contaminated soil was excavated from underneath the building. (5) The spaces between the walls of the three sections of the buildings that were sealed in 2014-2015. (6) The groundwater in-situ bioremediation system (outdoors).
Travel Method: Separate vehicles, one person per vehicle, local travel, no overnight stay.

ED_006475C_00000948-00001

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC          APRIL 16 2024

**From:** Kurt Batsel <batsel@dextra-group.com>
**Sent:** Wednesday, July 28, 2021 10:46 AM
**To:** Schulman, Michael <Schulman.Michael@epa.gov>
**Subject:** RE: Site visit: TRW Microwave Site 825 Stewart Drive building

Hi, Michael – We are available on Thursday 8/19. I am still waiting for confirmation from GI Partners and Apple, but I would not expect there to be any issues with them. I will give you final confirmation on it by the end of the week, but I wanted to go ahead and let you know that 8/19 is looking the best for us. We will plan to arrive the evening before so could start as early as you would like in the AM.

**From:** Schulman, Michael <Schulman.Michael@epa.gov>
**Sent:** Monday, July 26, 2021 2:47 PM
**To:** Kurt Batsel <batsel@dextra-group.com>
**Subject:** Site visit: TRW Microwave Site 825 Stewart Drive building

Hi Kurt,

EPA requests a site walk and inspection visit of the TRW Microwave Site 825 Stewart Drive building. Can you arrange for EPA access to the building from the current property owner, which I believe is GI DC Sunnyvale LLC? Myself and Matt Plate with EPA request reasonable access to visit the items addressed in the attached annual inspection memo and the 2014-2015 building mitigation measures that addressed the potential for vapor intrusion into the building, which included:

- The sub-slab depressurization system that was installed underneath the site building to vent vapors to the atmosphere.
- The building's concrete slab and cracks that where sealed to prevent vapor intrusion. As well as any building concrete slab penetrations (e.g., from pipes or seams in the building).
- Past indoor air sampling locations.
- The location where contaminated soil was excavated from underneath the building.
- The spaces between the walls of the three sections of the buildings that were sealed in 2014-2015.
- The emulsified vegetable oil in-situ bioremediation system.

ED_006475C_00000965-00004

- The location of groundwater monitoring wells.

EPA also wants to review any post 2014-2015 building modifications or changes to the building.

Can you get back to me this week with some dates for a site visit in August? Northrup Grumman and your consultant are also invited to attend, understanding that there may be COVID-19 related restrictions in how many people can visit the building or congregate. I am available for a site visit any week, except for August 9-11 and the week of August 23-27 and Matt Plate typically has limited availability on Fridays.

Feel free to call me to go over,
Thank you,

_____
**Michael Schulman**
Remedial Project Manager

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                    APRIL 16 2024

# 825 Site Visit - Aug 19, 2021

Thursday, August 19, 2021    8:03 AM

- 07:50: Meet on-site:  NGG: Michael Shannon; The Dextra Group: Kurt Batsel; AECOM: Holly Holbrook
- Meet Colin Scanlon - Apple Lease manager: cscanlon@apple.com / Apple, Real Estate & Development
  Mobile: 510.290.7726
  - HVAC - not sure how operating

- Pre-arrange Site Visit Agenda:
  - The sub-slab depressurization system that was installed underneath the site building to vent
    vapors to the atmosphere.
  - The building's concrete slab and cracks that where sealed to prevent vapor intrusion. As well as
    any building concrete slab penetrations (e.g., from pipes or seams in the building).
  - Past indoor air sampling locations.
  - The location where contaminated soil was excavated from underneath the building.
  - The spaces between the walls of the three sections of the buildings that were sealed in
    2014-2015.
  - The emulsified vegetable oil in-situ bioremediation system.
  - The location of groundwater monitoring wells.

- Holly: 4 HVAC zones 1st floor
  - Can't access vent riser pipes - no ports

- Building Elevator Maintenance:
  - Elevator shaft in GW in a pvc sleeve.

- IA-4: Open area in front of elevator.
- Matt: Roof, West Bldg Vents are exactly 10' from HVAC, just meeting code. Not great for VOCs bc
  venting into hvac. Would be better / need to extend 10' high.
- Matt: Roof, East bldg stack issues. Vents too close to chiller. Cut too low.
- Photo. PVC pipes in in service room; unk source. Suspect drain from roof (it's flat). Around pipe openings
  sealed (good). Room is has hvac air (good).
- Older concrete floor cracks well sealed. Photo examples.
- SS-05 under carpet (photo). Identified by Apple. Right SS diameter, but grout sealed. Seems mislabeled
  as SS-5 location not shown here in 2016 VI rpt. Matt: Seal sub slab ports. Not abandoned properly.
  Rusted. Use brass and SS. Reinstall or abandon.  Seal and can redrill if needed. Don't need a permanent
  SS port.
- SS-4 (photo) not poured well.
- Room 12-19 has drain. Room under negative pressure -4. It's hvac well balanced. Sample this room bc of
  drain and neg pressure.
- Matt: Room 12-14 (w/saw?) pressure 5.6 pascals.  Has positive pressure. Would sample in hallway
  because has lower pressure. Otherwise sampling vent air.
- Justin with Apple, part of tour. Rooms are supposed to be warm, but have high turn over. Bldg has turn
  over. Didn't change for COVID. On 24 hrs because do thermal testing overnight.
- IA-2. Environmental room. Raised floor.
- Cube office work area IA-7: 3 pascals lower then hallway.
- IA-8 Has a higher pressure. Unlikely to be an issue here.
- IA sample where pressure is lower
- Need to look at past SS concentrations
- IA-9: Bathroom neg pressure. -15.7 pascals. Drain has no measurable floor, but the drain cover are too
  small to get tubing down. Can't feel flow. EPA assumption is all drains leak, but not representative.

ED_006475C_00003016-0000

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                    APRIL 16 2024

Negative means air comes in to roof.
- SS-3 (Photo): Cannot locate SS-10 and SS-11. Indoor building layout has had changes (?) since 2015. AECOM will look at their records.

- Matt / EPA Comments:
    - EPA samples with hvac off because venting changes with economizers and season and we can't control for those future scenarios.
    - 4 stacks need to be extended. Ok per code but not COCs. Main bldg is under chiller stack, not even sure how extend.
    - Be nice to get the HVAC test and balance reports to know where to sample. Want economizers to be closed and heater on. Usually in January.
    - Want HVAC off for worst case short-term exposure scenario.
    - Destroy the indoor SS ports.
    - Crack inspection documentation.
    - Locate the indoor SS missing ports.
    - Apple is operating bldg (HVAC) perfectly. Pressure right. But, long term we have no control over.
    - Recommend cages around ladders to roof.

-

TRW Page 2

ED_006475C_00003016-00002

11

# EXHIBIT B

# PROCDURAL EXHIBIT B: March 2022, Apple Position Statement



**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

March 4, 2022

+1 650 614 7400
**orrick.com**

**VIA ELECTRONIC MAIL**

Andrea Diangco, Regional Investigator
Whistleblower Protection Program
U.S. Department of Labor, OSHA
300 Fifth Avenue, Room 1280
Seattle, Washington 98104
diangco.andrea@dol.gov

**Jessica R. Perry**

E   jperry@orrick.com
D   +1 650 614 7350
F   +1 650 614 7401

Ashley Gjovik, Complainant
1050 Benton Street, Apt. 2310
Santa Clara, California 95050
ashleymgjovik@protonmail.com

Re:    *Ashley Gjovik v. Apple Inc.*, Case No. 9-3290-22-051

Dear Ms. Diangco:

This firm is counsel to Respondent Apple Inc. in the above-referenced matter. This letter is Apple's initial response to the amended complaint ("Complaint") filed by Ashley Gjovik on November 2, 2021. This response[1] contains confidential business information belonging to Apple; accordingly, Apple requests that it be kept confidential and that Apple receive pre-disclosure notification pursuant to 29 C.F.R. § 70.26 in the event of any FOIA request covering this response.

Apple submits this response without waiving its right to respond further, including to any additional submission that Ms. Gjovik may make. While we believe that this response demonstrates Ms. Gjovik's retaliation claim has no merit, please let us know if you believe additional information would be helpful.

Except as expressly admitted below, Apple denies Ms. Gjovik's allegations in the Complaint in full.

## I.    INTRODUCTION

Ms. Gjovik's retaliation claims here hinge on her proving that Apple retaliated against her for raising concerns about (1) unsafe work conditions and (2) an Apple board member's alleged conflict of interest regarding efforts to remediate those alleged conditions. All of her claims are without merit.

---

[1] Apple has a compendium of evidence in support of this response available upon request, should you believe it would be helpful in connection with your review of Ms. Gjovik's Complaint.

4161-3255-5828



Andrea Diangco
March 4, 2022
Page 2

Apple did not terminate Ms. Gjovik's employment because she voiced concerns, but instead because she violated Apple policy by ***intentionally disclosing confidential information about Apple products on Twitter and, as Apple later discovered, to the press***, in clear breach of her confidentiality obligations. And she refused to meaningfully cooperate in Apple's investigatory process.

Indeed, Ms. Gjovik's termination was well after she first voiced the concerns on which the present Complaint is based. According to Ms. Gjovik, she first raised concerns to Apple in March 2021, more than six months before she was terminated; in the interim, Apple engaged repeatedly and in good faith in an effort to address Ms. Gjovik's concerns. Apple had legitimate business reasons to terminate Ms. Gjovik's employment, and the six-month time gap is too attenuated to support any inference causation – a key element of each of Ms. Gjovik's three claims under the Occupational Safety and Health Act ("OSHA") section 11(c), the Sarbanes-Oxley Act ("SOX"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

II.      **FACTUAL BACKGROUND**

A.      **Apple Prohibits Discrimination, Harassment, and Retaliation.**

Apple has a firm and long standing commitment to diversity and inclusion and does not tolerate discrimination, harassment, or retaliation of any kind. Apple takes seriously its legal obligations to maintain a workplace free of discrimination, harassment, and retaliation and complies with all federal and state requirements imposed upon it. Apple has and strictly enforces its non-discrimination, anti-harassment, and non-retaliation policies.

Apple has an Employee Relations ("ER") team within its People function that investigates internal complaints of discrimination, harassment, and retaliation. Employees can complain openly or anonymously. And there are many avenues for them to raise complaints: they may speak directly to any Apple manager, contact Apple's People Support team and/or their People Business Partner, contact the confidential Business Conduct Helpline via phone, email, or online submission, or submit a confidential or anonymous report to EthicsPoint, Apple's third-party vendor. Apple policy strictly prohibits retaliation for reporting any complaints or concerns.

B.      **Ms. Gjovik Worked at Apple for Six Years in a Role That Furnished Her Access to Highly Confidential Apple Product Information – Which She Agreed to Protect.**

Apple hired Ms. Gjovik as an iOS Build Engineer Project Manager at Apple's Sunnyvale, California location in February 2015. She subsequently transitioned to an Engineering Program Manager role and then was

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                APRIL 16 2024



Andrea Diangco
March 4, 2022
Page 3

promoted to a Senior Engineering Program Manager role in January 2017. She held that position until the termination of her employment on September 10, 2021.[2]

Upon joining Apple, Ms. Gjovik agreed—as a condition of employment—to comply with Apple's confidentiality policies. On January 31, 2015, Ms. Gjovik signed the Confidentiality and Intellectual Property Agreement ("Confidentiality Agreement"). The Confidentiality Agreement "prohibits [Ms. Gjovik], during or after employment, from using or disclosing, or permitting any other person or entity to use or disclose, any Proprietary Information without the written consent of Apple, except as necessary to perform [her] duties as an Apple employee." "Proprietary information" includes, inter alia, non-public "materials or information relating to past, existing, or future products and services." Ms. Gjovik agreed to "strictly comply with all of Apple's rules and policies regarding proprietary information" and understood that breach of the agreement could result in termination of her employment. Additionally, the importance of protecting Apple's confidential pre-release product information is clearly set out in the company's Business Conduct Policy: "One of [Apple's] greatest assets is information about [its] products and services, including future product offerings." To safeguard information about Apple's products, employees are prohibited from disclosing confidential information without prior approval of management.

As a Senior Engineering Program Manager, Ms. Gjovik had access to proprietary and trade secret information about unreleased products and features under development, which was shared internally only with those who had a business need to know. From time to time, Ms. Gjovik was given the opportunity to participate in new product or feature user studies and to test unreleased prototypes. On each occasion, Ms. Gjovik's participation was entirely voluntary and at times required her to agree to additional confidentiality obligations that prohibited her from disclosing any information about the existence of the study or her participation in it.

In July 2018, Ms. Gjovik participated in a user study of an internal and proprietary application called "Alpha."[3] Because the Alpha application was still in testing phase and unavailable to the public, Apple required all participants— as a condition of participating—to maintain strict confidentiality. Ms. Gjovik signed the Alpha Study Consent Form and expressly acknowledged that any information about the study, including her participation, was confidential under the Confidentiality Agreement and could not to be disclosed to third parties ("[b]y agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple.").

---

[2] In 2018, Ms. Gjovik requested, and Apple granted, a flexible work schedule to allow her to continue working full-time while also attending law school. This arrangement continued until the termination of Ms. Gjovik's employment.

[3] Apple refers to this study by the codename "Alpha" in an effort to protect Apple's confidential product information from further unauthorized disclosure.

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                    APRIL 16 2024



Andrea Diangco
March 4, 2022
Page 4

**C.** **Ms. Gjovik Disclosed Apple's Confidential Information In Violation Of Her Written Confidentiality Agreements and Refused to Meaningfully Participate in the Investigation Into Her Conduct.**

On August 28, 2021, Ms. Gjovik tweeted[4] details about a proprietary study Apple was conducting, codenamed "Omega," about a confidential Apple product.[5] Like the Alpha study, the details of Omega were not known except to a small select group within Apple, and certainly not outside Apple, and Ms. Gjovik agreed to keep them confidential under her Confidentiality Agreement. Despite this, Ms. Gjovik's tweet both identified the name and purpose of the study regarding an unreleased product under development. Ms. Gjovik's tweet was retweeted the same day by an account dedicated to posting predictions about future Apple products. The next day, Apple received a formal complaint through its Business Conduct Hotline that Ms. Gjovik had publicly disclosed confidential information about the Omega study.

On August 30, 2021, Ms. Gjovik tweeted photographs and a video of herself created by the Alpha application, thus disclosing Apple confidential information. She also linked to a story published in The Verge, a technology blog, in which she disclosed her participation in the Alpha study.[6]

Ms. Gjovik knew her conduct was inappropriate; she had previously reported similar conduct by other Apple employees as a violation of their employee confidentiality obligations. In January 2020, Ms. Gjovik reported to Apple conduct of former employees who gave an interview in which they disclosed, among other things, internal code names, which Ms. Gjovik stated were "trade secret."

Upon learning of her unauthorized disclosure, Apple promptly launched an investigation. On September 9, an Apple investigator requested to speak with Ms. Gjovik as part of that investigation. Ms. Gjovik refused to be interviewed, and Apple completed its investigation based on the available information, including her publicly available Twitter posts. Based on clear evidence, Apple concluded that Ms. Gjovik had violated her confidentiality agreements and Apple policy.

---

[4] In March 2021—the same time Ms. Gjovik asserts she began raising alleged concerns with Apple—Ms. Gjovik created and has since maintained an active Twitter account.

[5] As with the Alpha study, Apple refers to this study by the codename "Omega" in an effort to safeguard Apple's confidential product information.

[6] Zoe Schiffer, *Apple Cares About Privacy, Unless You Work at Apple*, The Verge (Aug. 30, 2021), https://www.theverge.com/22648265/apple-employee-privacy-icloud-id.

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

APRIL 16 2024



Andrea Diangco
March 4, 2022
Page 5

**D.** **Apple Terminated Ms. Gjovik's Employment Because She Violated Her Confidentiality Obligations And Refused to Cooperate During An Internal Investigation.**

On September 9, Apple terminated Ms. Gjovik's employment effective the following day for her violation of her Intellectual Property Agreement, company policy, and her refusal to cooperate during Apple's internal investigation process. Apple's Misconduct and Discipline Policy provides that certain conduct may warrant immediate termination, specifically including "[v]iolating confidential, proprietary, and trade secret information obligations (including those stated in Apple's Intellectual Property Agreement)" and "interfering or failing to cooperate with an investigation."

**E.** **Ms. Gjovik Subsequently Admitted That She Disclosed Apple's Confidential Information.**

On September 15, 2021, a different Apple employee made another report to the Business Conduct Helpline that Ms. Gjovik had publicly disclosed information about the Alpha study. The employee attached screenshots of text messages they had exchanged with Ms. Gjovik dated August 20, 2021. In the text messages, *Ms. Gjovik admitted to disclosing confidential information* about the Alpha study to Zoe Schiffer, a reporter from The Verge:

> I'm helping Zoe with the privacy article. I gave her [Alpha] details because that bothers me too … I'm even letting her include a few pics from [Alpha].

As discussed above, Ms. Gjovik's very involvement with the Alpha study constitutes confidential information, as do any details about the study or photos or other documents that are the product of it.[7] Apple's subsequent confirmation that she admitted to disclosing confidential information publicly and intentionally further justifies Apple's termination decision.

**F.** **Ms. Gjovik Made Other Various Claims Apple Has Diligently Investigated.**

**1.** **Apple Investigated Ms. Gjovik's Safety Concerns And Repeatedly Encouraged Her to Raise Them.**

Beginning in March 2021, Ms. Gjovik raised various concerns about a vapor intrusion study in the Stewart 1 building in which she worked. In response, Apple met with Ms. Gjovik at least seven times to provide her with numerous reports per her requests, encouraged her to report any further concerns she had to Apple's

---

[7] Apple promptly contacted Twitter to request removal of Ms. Gjovik's tweets disclosing confidential information. Twitter refused. Through counsel, Apple then contacted Ms. Gjovik and she agreed to remove the tweets.

4161-3255-5828

---

17



Andrea Diangco
March 4, 2022
Page 6

Environmental, Health & Safety ("EHS") team, and worked with her to find a reasonable accommodation for her perceived concerns.

Stewart 1 is a Superfund site that has been redeveloped for commercial use and was deemed acceptable for occupancy by the Environmental Protection Agency (EPA). *See* https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.redevelop&id=0901181). Apple conducts periodic evaluations and preventative maintenance of buildings with vapor intrusion mitigation systems as part of its vapor intrusion management program. Accordingly, on February 18, 2021, Apple notified building access managers of Stewart 1 that it would be conducting a routine "vapor intrusion survey" in Stewart 1. On March 17, 2021, Ms. Gjovik began asking questions about the planned work, while alleging to have experienced hazardous vapor intrusion before at a non-Apple site and the issue had, in her words, "become a bit of a personal crusade." Ms. Gjovik requested to meet with Apple's EHS department and over the next four months, EHS and Apple management met with Ms. Gjovik repeatedly in an effort to address her questions and concerns:

- <u>March 22, 2021</u>: Ms. Gjovik met with her manager to discuss the vapor intrusion survey, and her manager invited Ms. Gjovik to share any concerns she had with Apple's experts in the EHS department.

- <u>April 2, 2021</u>: Ms. Gjovik met with an EHS expert and ER representative to discuss the vapor intrusion survey. Ms. Gjovik sent a list of 17 questions to the EHS expert and ER representative before the meeting which, as Ms. Gjovik noted in her meeting recap, they addressed during the meeting. Specifically, Ms. Gjovik's notes state that EHS informed Ms. Gjovik that a vapor intrusion mitigation system had been installed in 2014 before Apple moved into the building, and no unacceptable vapor intrusion was occurring at the site, per 2015 testing results, which EHS also provided to Ms. Gjovik. Additionally, Ms. Gjovik's notes state that Apple personnel reiterated during the meeting that she could "speak freely about [her] working conditions" without fear of retaliation, expressly stated that she was permitted to contact the EPA, and encouraged her to report to EHS any chemical odors as soon as possible.[8]

- <u>April 9, 2021</u>: EHS sent Ms. Gjovik links to reports about vapor intrusion per her request.

---

[8] Shortly after EHS told Ms. Gjovik that she may contact the EPA, Ms. Gjovik reached out to the EPA to express her concerns. On June 7, 2021, the EPA described to Ms. Gjovik the various protective measures that have been implemented to prevent vapor intrusion into the Stewart 1 building, and further explained that the 2015 testing results "demonstrated that the chemicals related to the [site] were less than EPA's indoor air human health risk screening values for workers." The EPA assured Ms. Gjovik that it "believes the remedy in place at the [site] remains protective." The EPA additionally clarified to Ms. Gjovik that "there is no specific EPA requirement to notify each site visitor or construction or office worker of a mitigated potential risk."

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO          APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC



- April 11, 2021: Ms. Gjovik thanked the EHS expert for his "transparency" and sent him 16 additional questions.

- April 27, 2021: Ms. Gjovik met with an ER representative and alleged that her manager had told her she could not share her concerns about the Stewart 1 site (a claim he denied). ER again told Ms. Gjovik's that she was free to share information about "the terms and conditions of [her] employment" (without restriction), and encouraged her to strive to ensure information she shared (including about what Apple personnel had told her) was accurate and complete.

- May 17, 2021: Ms. Gjovik had another meeting with EHS and ER, during which EHS reassured her there was no concerning vapor intrusion at the Stewart 1 site. EHS also answered the 16 follow-up questions Ms. Gjovik had posed in her April 11 email. Per Ms. Gjovik's meeting notes, ER again told her she could share her concerns with anyone and "Apple would never restrict [her] right to speak about workplace safety concerns."

- May 18, 2021: Ms. Gjovik met with her skip-level manager. During the meeting he encouraged her to continue to raise any concerns she had with EHS and ER, and in a follow-up email stated "Apple does not tolerate retaliation for raising concerns. … I know you raised some issues to EH&S about Stewart 1 … so please continue to work with EH&S to address your questions/concerns."

- June 10, 2021: Ms. Gjovik met with ER and discussed the possibility of an accommodation to work remotely, allegedly due to her concerns about the safety of the Stewart 1 site. ER answered Ms. Gjovik's questions about the accommodation request process and continued to work with Ms. Gjovik over the next six weeks in an effort to identify a reasonable accommodation that would work for both Ms. Gjovik and Apple.[9]

- July 2, 2021: ER emailed Ms. Gjovik to follow up on Ms. Gjovik's questions regarding scheduled work in the building. ER provided an update, and explained that Apple was in the middle of a three-step project—first announced in February 2021— that involved (1) evaluating potential pathways through which vapors could potentially enter the building, (2) voluntarily and preventatively sealing any potential pathways, including cracks in the floor that were the result of natural floor movement, and (3) conducting indoor air testing once the sealing was complete.

- July 7, 2021: Ms. Gjovik met with EHS and ER to discuss the voluntary plan to preventatively seal potential pathways for vapor intrusion and to conduct air testing. EHS assured Ms. Gjovik of the

---

[9] Ultimately, Ms. Gjovik's request for an accommodation became moot in August 2021 when Apple granted Ms. Gjovik's request for paid administrative leave while Apple investigated a separate and unrelated complaint she had made about her work environment.

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

APRIL 16 2024



Andrea Diangco
March 4, 2022
Page 8

building's safety, explaining that measures were in place to mitigate the potential for vapor intrusion. EHS again reviewed the three-step project announced in February 2021 and explained it was part of Apple's regular maintenance, not due to concerns regarding the safety of the building. EHS also explained that no EPA reporting was necessary because Apple's planned work was routine and voluntary.

Far from retaliating against Ms. Gjovik in an effort to stifle her concerns about workplace safety, Apple devoted significant time and resources to addressing them.

**2. Apple Investigated Ms. Gjovik's Concerns About an Alleged Conflict Of Interest by an Apple Board Member.**

On July 19, 2021, Ms. Gjovik wrote to the EPA regarding her belief that a member of Apple's Board of Directors (Ronald Sugar) had a conflict of interest regarding the Stewart 1 building. She contended that because Mr. Sugar had previously been the CEO of Northrup Grumman – which Ms. Gjovik asserted was primarily responsible for maintaining environmental safety at Stewart 1 – Mr. Sugar had made or supported decisions favorable to Northrup Grumman in connection with Stewart 1, at Apple's expense. Ms. Gjovik forwarded her communications with the EPA to the ER team on July 27, 2021 and again the following day.

Apple did not stifle Ms. Gjovik's concerns; it instead investigated them and found that they lacked merit. By the time Apple's investigation regarding this issue was complete, however, Ms. Gjovik had been terminated for breach of her confidentiality obligations.

**3. Apple Granted Ms. Gjovik's Request To Be Placed On Paid Administrative Leave.**

On July 20, 2021, Ms. Gjovik raised new concerns that she believed her managers were creating a "hostile work environment."[10] When she met with an ER Investigator to discuss those concerns, Ms. Gjovik suggested administrative leave as a "short-term" solution to the alleged issue and confirmed her suggestion in the email summary she sent ER after their discussion.

On August 4, 2021, Ms. Gjovik met with ER again and expressly requested to be placed on paid administrative leave. ER agreed and confirmed by email:

_____

[10] Apple expressly denies Ms. Gjovik's hostile work environment claims, which are not at issue here but instead are the subject of her separate charges with the DFEH, EEOC, and NLRB. Apple does, however, discuss her hostile work environment allegations herein to the limited extent relevant here (e.g., responding to her claim that she was "suspended" in August 2021 which in fact she requested and was granted paid administrative leave).

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO                    APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

I want to confirm our conversation a few minutes ago. ***Per your request, you are now on paid administrative leave so as to not interact with your managers***.

Ms. Gjovik did not email ER back. But that same day, Ms. Gjovik misrepresented their meeting in a tweet, alleging that Apple had "suspended" her by placing her on an involuntary "indefinite" leave. ER emailed Ms. Gjovik to correct her misrepresentation the following day. ER told Ms. Gjovik that since the paid leave was at her request, she could return to work at any time. Ms. Gjovik never responded.

## III.   ARGUMENT

Apple terminated Ms. Gjovik's employment because she chose to disclose confidential Apple product information she was under an obligation to keep in confidence, and then refused to participate into the internal investigation of that disclosure. Simply put, there was no retaliation under OSHA, SOX, or CERCLA. Ms. Gjovik has not established—and cannot establish—a *prima facie* case of retaliation. All three statutes require that Ms. Gjovik show: (1) she engaged in a protected activity; (2) Apple knew or suspected that she engaged in the protected activity; (3) she suffered an adverse action; and (4) the protected activity was at least a contributing factor[11] in the adverse action. *See* 29 U.S.C.A. § 660(c)(1) (OSHA 11(c)); 18 U.S.C.A. § 1514A(a) (SOX); 42 U.S.C.A. § 9610(a) (CERCLA).[12] Because none of her expressions of concern was a "contributing factor" in her termination, she cannot establish retaliation on the facts.

---

[11] While the three statutes have different causation standards, it is immaterial because Ms. Gjovik cannot establish causation even under the most lenient "contributing factor" standard. 29 C.F.R. § 1980.104(e)(2)(iv) (SOX) (contributing factor causation standard); 29 C.F.R. § 24.104(e)(2)(iv) (CERCLA) (motivating factor causation standard); 29 C.F.R. § 1977.6(b) (OHSA) (but-for causation standard).

[12] Apple does not concede that Ms. Gjovik can establish any of the four elements of a retaliation claim under these statutes. For example, Ms. Gjovik's allegedly activity would not qualify as protected under SOX (and thus could not ground any SOX whistleblower claim). In the Complaint and memorandum Ms. Gjovik submitted to the DOL, she asserts that she engaged in a number of activities including reporting an Apple board member's alleged conflict of interest, reporting that Apple failed to notify employees they worked on a Superfund site, and reporting a failure to address workplace safety, among others. None of these alleged actions constitute protected SOX activity, however. *See* 18 U.S.C. § 1514A(a)(1) (employee must allege conduct the employee "reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders"); *see also Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793-94 (7th Cir. 2018) (complaints about conflicts of interest and violations of internal company protocol not about "fraud" within meaning of SOX); *Gauthier v. Shaw Grp., Inc.*, 2012 WL 6043012, at *6 (W.D.N.C. Dec. 4, 2012) (dismissing plaintiff's complaint, finding that his reports were related to nuclear safety, not fraud against shareholders); *Levi v. Anheuser-Busch Cos., Inc.*, ALJ Case No. 2006-SOX-37, 2006 WL 3246840, at *16 (May 3, 2006) (complaints about workplace safety and manager incompetence did not contain any allegations of fraud). For purposes of this responsive statement, however, Apple focuses on select elements of her *prima facie* case (as a failure to establish any of them is fatal) without prejudice to additional arguments that may be available.

4161-3255-5828

Andrea Diangco
March 4, 2022
Page 10

### A.     Apple Terminated Ms. Gjovik For Legitimate Reasons Unrelated to Her Concerns.

Apple terminated Ms. Gjovik for legitimate business reasons: she violated her own written confidentiality agreements with Apple and Apple's policies, both by disclosing confidential product information and by refusing to cooperate in an internal investigation. Because Apple would have terminated Ms. Gjovik for this conduct even had she never raised any safety or conflict of interest (or any other) concerns, Ms. Gjovik's claims fail under CERCLA, SOX, and OSHA. *See Crosby v. U.S. Dep't of Lab.*, 53 F.3d 338 (Table), 1995 WL 234904, at *1 (9th Cir. 1995) (affirming that employer did not violate CERCLA where the employer showed that it had legitimate, nondiscriminatory reasons for terminating the employee, including poor work quality, insubordination, and refusal to work on a project); *Riedell v. Verizon Commc'ns*, ALJ Case No. 2005-SOX-00077, 2006 WL 3246893, at *11 (Aug. 14, 2006) (dismissing SOX claim where complainant failed to offer evidence sufficient to undermine employer's contention that he was fired for legitimate reason of refusing to participate in a meeting with management); *Solis v. Consol. Gun Ranges*, 2011 WL 1215028, at *8 (W.D. Wash. Mar. 30, 2011) (determining under OSHA section 11(c) that employee's protected activity was not but-for cause of termination where employer showed that it would have terminated employee in any event).

The ***only*** reason that Apple terminated Ms. Gjovik's employment was due to her own deliberate breaches of her confidentiality agreements and violations of Apple policy. Disclosing confidential product information and refusing to meaningfully participate in internal investigations are both bases for immediate termination under Apple's Misconduct and Discipline policy. They are also recognized as legitimate bases for termination under relevant case law. *See, e.g., Galinsky v. Bank of Am., Corp.*, ALJ Case No. 2011-SOX-010, ARB Case No. 11-057, 2012 WL 5391424, at *10-11 (ARB Oct. 31, 2012) (substantial evidence supported finding that complainant would have been discharged in any event due to, among other things, violating company policy by downloading sensitive corporate information for his personal use); *Grove v. EMC Corp.*, ALJ Case No. 2006-SOX-00099, 2007 WL 7135739, at *24-25 (July 2, 2007) (finding that complainant's termination was due to his unreasonable refusal to cooperate in respondent's investigation of the issues he raised and thus not actionable under SOX).

Ms. Gjovik knew when she disclosed the confidential information on social media that she was violating Apple's policies; she had reported others less than two years prior for doing the exact same thing. There is no evidence that Apple's reasons for termination were pretext, nor is there any evidence that Apple harbored animus toward Ms. Gjovik for raising concerns; on the contrary, it took them seriously and engaged in good faith investigations of the issues she raised. Indeed, Ms. Gjovik's termination was consistent with Apple's practice of terminating other employees who violated their confidentiality agreements by disclosing unreleased product information; since 2017, Apple has terminated the employment of at least nine employees for violating their confidentiality obligations.

In short, Ms. Gjovik's expressions of concern played no role in her termination – nor is there any evidence that they did – and her retaliation claims should be dismissed.

4161-3255-5828

22

**B.    Ms. Gjovik's Repeated Expressions of Concern Even After Apple Had Responded Do Not Support A Retaliation Claim.**

Apple (and later the EPA) thoroughly responded to Ms. Gjovik's initial workplace safety concerns, and thus Ms. Gjovik's subsequent expressions of concern regarding workplace safety were unreasonable and her activities lost any protected status as a matter of law. *See, e.g., Williams v. U.S. Dep't of Labor*, 157 Fed. App'x 564, 570 (4th Cir. 2005) (teacher's whistleblowing activities initially protected under CERCLA but "[o]nce her concerns were addressed … it was no longer reasonable for her to continue claiming that these schools were unsafe and her activities lost their character as protected activity"); *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009) (under SOX, employee's complaints "were not initially reasonable as beliefs in shareholder fraud and they became less reasonable he was given explanations" by the employer); *see also Grant v. Dominion East Ohio Gas*, ALJ Case No. 2004-SOX-00063, 2005 WL 6185928, at \*40 (Mar. 10, 2005) (under SOX, finding whistleblower protections do not "protect an employee who simply raises questions about virtually everything with which [she] disagrees or does not understand" or who "simply assumes a company has retaliated against [her] because [she] raised a lot of questions, lodged a lot of complaints, and labels [herself] a 'whistleblower'").

Apple responded to Ms. Gjovik's concerns regarding its plan to voluntarily and preventatively seal potential pathways for vapor intrusion and to subsequently conduct air testing; thus, Ms. Gjovik's continued expressions of concern about the plan do not constitute protected activity. Ms. Gjovik first expressed concerns related to the planned work on March 17, 2021. On April 2, 2021, EHS informed Ms. Gjovik that measures had been taken prior to Apple occupying Stewart 1 to mitigate potential for unacceptable vapor intrusion, and that further testing – which was performed after those measures had been implemented – confirmed that no unacceptable vapor intrusion at the site was occurring. On May 17, 2021, EHS reassured Ms. Gjovik that there was no concerning vapor intrusion at the Stewart 1 site, and answered Ms. Gjovik's sixteen questions from her April 11 email. And on July 7, EHS met with Ms. Gjovik to (1) again reassure her that measures were in place to mitigate the potential for vapor intrusion; (2) explain the work was part of Apple's regular maintenance program, not due to any concerns regarding building safety; and (3) explain that no EPA reporting was necessary because the planned work was routine and voluntary.

The EPA also assuaged Ms. Gjovik's concerns, letting her know on June 7, 2021 that the Agency "believ[ed] the remedy in place at the [site] remain[ed] protective" and that "[f]or a site where conditions are protective of human health there is no specific EPA requirement to notify each site visitor or construction or office worker of a mitigated potential risk." Because Apple as well as the EPA responded to Ms. Gjovik's concerns regarding workplace safety through multiple conversations and written communications, her continued repetitions of the same concerns were not reasonable and do not constitute "protected activity" that can supply the predicate for a retaliation claim.

4161-3255-5828

**C.**     **Apple's Decision to Terminate Ms. Gjovik for Policy Violations Was Removed From Her Alleged Protected Activity.**

Ms. Gjovik's alleged protected activity is too remote in time to suggest that any of her expressions of concern were in fact the true reason for her September 2021 termination. For her OSHA and CERCLA claims (premised on the same alleged protected activity), Ms. Gjovik first raised concerns in March 2021, six months before her termination, and Apple met with her multiple times in March, April, May, June, and July 2021 to both discuss her safety concerns and explain that Apple was doing routine preventative evaluation, maintenance, and testing to mitigate the potential for vapor intrusion. As for SOX, Ms. Gjovik's Complaint claims that she raised concerns about Mr. Sugar's alleged conflict of interest in July 2021, almost two months before her termination. *See, e.g., Carr v. West LB Admin., Inc.*, 171 F. Supp. 2d 302, 309-10 (S.D.N.Y. 2001) (periods "as short as three months" can fail to support causal connection); *Grant*, 2005 WL 6185928, at *42 (one-month temporal proximity held insufficient to demonstrate a causal connection given facts of case).

Regardless, any finding of temporal proximity would be immaterial given Ms. Gjovik's intervening conduct – her clear violation of her confidentiality obligations and Apple policy – which operated to break any alleged causal chain. *See, e.g., Fraser v. Fiduciary Tr. Co. Int'l*, 2009 WL 2601389, at *6 (S.D.N.Y. Aug. 25, 2009) (dismissing SOX claim where plaintiff's attempt to establish an unauthorized hedge fund and market it to respondent's clients was a legitimate intervening basis for termination); *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, ALJ Case No. 2004-SOX-11, ARB Case No. 07-021, 07-022, 2009 WL 2844805, at *6 (ARB Aug. 31, 2009) (denying SOX complaint where discovery of misconduct committed by plaintiff was intervening event), *aff'd, Klopfenstein v. Admin. Review Bd.*, 402 F. App'x 936 (5th Cir. 2010); *Williams*, 157 F. App'x at 570-71 (denying CERCLA complaint based on intervening event where employer fired complainant for obtaining unauthorized access to confidential information).

**D.**     **Ms. Gjovik's Allegation That Apple Suspended Her in Retaliation For Her Concerns Fails Because She Requested a Leave of Absence.**

Finally, Ms. Gjovik's alleged "suspension" was not an adverse employment action at all, and thus cannot ground any retaliation claim. Ms. Gjovik expressly asked Apple to place her on a paid leave of absence while ER investigated her hostile work environment concerns. Apple granted her request and ER summarized their conversation in an email to Ms. Gjovik that same day. Ms. Gjovik never disputed ER's summary—specifically, his statement that **"[p]er your request, you are now on paid administrative leave**"—or otherwise responded to his email. Granting an employee's request for a leave of absence is not adverse action as a matter of law. *See, e.g., Baker v. Cty. of Merced*, 2011 WL 2708936, at *5 (E.D. Cal. July 12, 2011) (no adverse action where the employer complied with employee's requests to take a leave of absence). Because Ms. Gjovik cannot show any adverse action, her claim for retaliation premised on an alleged "suspension" also fails.





Andrea Diangco
March 4, 2022
Page 13

**IV.    CONCLUSION**

The evidence demonstrates that Apple terminated Ms. Gjovik's employment because she disclosed confidential, proprietary information in violation of her confidentiality obligations – conduct to which she has admitted – and refusing to participate into Apple's investigation of that disclosure. Her termination had nothing to do with any allegedly protected activity; on the contrary, Apple actively investigated Ms. Gjovik's concerns. Based on the evidence described above, Ms. Gjovik's retaliation claims should be dismissed with no further investigation.

If you require any further information, please contact us.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Apple Inc.

By:    _____
       Jessica R. Perry

4161-3255-5828

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO               APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

# EXHIBIT C

**PROCDURAL EXHIBIT C: US Dept. of Labor OSHA Docketing**

**U.S. Department of Labor**     **Occupational Safety and Health Administration**
**San Francisco Federal Building**
**90 7th Street, Suite 2650**
**San Francisco, CA 94103**



**Via Electronic Mail**
December 10, 2021

Ashley Gjovik
1050 Benton Street, Apt. 2310
Santa Clara, CA 95050
ashleymgjovik@protonmail.com

Complainant(s):  Ashley Gjovik
Respondent(s):   Apple Inc.
Case Number:     Apple Inc./Gjovik/9-3290-22-051
Law/Statute 1:   Section 11(c) of the Occupational Safety and Health Act (OSHA),  29 U.S.C. §660
Law/Statute 2:   Comprehensive Environmental Response, Compensation and Liability Act
                 (CERCLA), 42 U.S.C. §9610
Law/Statute 3:   Sarbanes-Oxley Act (SOX),  18 U.S.C.A. §1514A
Regulation 1:    OSHA 11(c) Complaint Procedures:  29 CFR Part 1977
Regulation 2:    EPA Complaint Procedures:  29 CFR Part 24
Regulation 3:    SOX Complaint Procedures:  29 CFR Part 1980

Dear Ms. Gjovik:

This office has received a complaint filed by the above-named Complainant(s) against the above-named Respondent(s). The complaint alleges retaliatory employment practices in violation of the Law(s)/Statute(s) cited above. A copy of the complaint allegation is enclosed.

The Occupational Safety and Health Administration's Whistleblower Protection Program (WPP) is responsible for enforcing the anti-retaliation provisions of the law(s) cited above and will conduct its investigation following the procedures outlined in the regulation(s) cited above. You may obtain a copy of the law(s) and regulation(s) at: *www.whistleblowers.gov*. Upon request, a printed copy of these materials will be mailed to you.

WPP has provided a copy of the complaint to Respondent(s) and has requested a written position statement. You will receive a copy of the position statement(s) with any supporting evidence and will be given an opportunity to respond.

You have the right to be represented in this matter. If you choose to have a lawyer or someone else represent you, please have that person complete and promptly return to the assigned investigator the enclosed Designation of Representative form.

You are expected to cooperate in this investigation and failure to do so may cause the complaint to be dismissed.

WPP will send most, if not all, correspondence by email - this includes final disposition letters that include time sensitive appeal rights.

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO                    APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

# EXHIBIT D

# UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES
### Washington, DC
_____

**Issue Date: 19 January 2024**

OALJ Case No.:   **2024-CER-00001**
OSHA Case No.    **9-3290-22-051**

*In the Matter of:*

**ASHLEY M. GJOVIK,**
  *Complainant,*

v.

**APPLE, INC.,**
  *Respondent.*

### NOTICE OF DOCKETING

  On or about August 29, 2021, Ashley M. Gjovik filed a complaint with the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") alleging Apple, Inc. violated the employee protection provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9610, and the procedural regulations found at 29 C.F.R. Part 24, when she was suspended and subsequently terminated in retaliation for engaging in protected activities and filing, or suspected of filing, complaints with various government agencies, including the Environmental Protection Agency.[1] OSHA dismissed the complaint by letter dated December 8, 2023.

  Complainant, representing herself, is appealing the dismissal and the Office of Administrative Law Judges ("OALJ") docketed the above-referenced case on January 8, 2024.[2]  It is not yet assigned to a presiding administrative law judge

_____

[1] Complainant also alleged that Respondent violated the employee protection provisions of the Sarbanes-Oxley Act ("SOX").  Under the enforcement provisions of SOX, if the Secretary of Labor has not issued a final decision within 180 days after the filing of the complaint, and the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.  18 U.S.C. § 1514A(b)(1)(B); 29 C.F.R. § 1980.114(a).  It appears that Complainant exercised her right to pursue her SOX claim in federal district court by filing a complaint in the United States District Court for the Northern District of California on September 7, 2023 (Case No. 3:23-cv-04597).

[2] I note that Complainant also alleged in her OSHA complaint that Respondent violated her rights under Section 11(c) of the Occupational Safety and Health ("OSH") Act, a claim which OSHA also dismissed in their December 8, 2023 letter.  The OSH Act does not create any private right of action

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO     APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

("ALJ"). A Notice of Hearing and Prehearing Order will be sent to the parties once the matter is assigned to an ALJ. You may track the progress of the case using the Case Status Lookup feature on the OALJ website at https://www.dol.gov/agencies/oalj. Until the case is assigned to a presiding ALJ, questions may be addressed to law clerk Tessa Zavislan at Zavislan.tessa.m@dol.gov.

Parties are encouraged to efile with OALJ using either OALJ's e-mail e-filing system described at www.dol.gov/agencies/oalj/filing_by_email or DOL's eFile/eServe System ("EFS") at https://www.dol.gov/agencies/oalj/EFS. A Notice of Appearance is required to use EFS.

In the meantime, if the case is referred for possible mediation or you wish to request mediation or information on the Alternative Dispute Resolution program, the website contains the appropriate forms as well as contact information at https://www.dol.gov/agencies/oalj/topics/information/SETTLEMENT_JUDGE.

In addition to any of the rules set forth in the statute or implementing regulations governing this case type, the OALJ Rules of Practice and Procedure apply and can be found on the OALJ website at https://www.dol.gov/agencies/oalj/topics/libraries/LIBRULES. Unless an exemption applies, the parties are required to make initial disclosures within 21 days of the date of this notice without awaiting a discovery request or discovery order. *See* 29 C.F.R. § 18.50(c)(1). **The initial disclosures should not be filed with this office.**

 **SO ORDERED:**

**STEPHEN R. HENLEY**
Chief Administrative Law Judge

---

and there is no provision in the OSH Act or its implementing regulations for a hearing on a Section 11(c) complaint before an administrative law judge. *See Taylor v. Brighton Corp.*, 616 F.2d 256, 260-64 (6th Cir. 1980). Accordingly, and consistent with the regulations, it appears Complainant has appealed the dismissal of her Section 11(c) claim to OSHA's Directorate of Whistleblower Protection Programs.

- 2 -

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                    APRIL 16 2024

# EXHIBIT E

# UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES
### BOSTON, MASSACHUSETTS
_____

**Issue Date: 27 March 2024**

**OALJ NO.:** 2024-CER-00001

*In the Matter of:*

**ASHLEY GJOVIK,**
*Complainant,*

*v.*

**APPLE INC.,**
*Respondent.*

### NOTICE OF ASSIGNMENT, HEARING, AND PRE-HEARING ORDER

This case arises from a complaint filed under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA" or "the Act"), 42 U.S.C § 9610, and the implementing regulations found at 29 C.F.R. Part 24. The case has been assigned to **JERRY R. DeMAIO**, Administrative Law Judge, U.S. Department of Labor, for hearing and decision. All future pleadings, responses, and correspondence should be filed in accordance with the instructions below. Permitted telephone inquiries should be directed to Lorena Quiroz at (617) 223-9355 or Matthew Schmall at (202) 693-7303. *See* 29 C.F.R. § 18.14 regarding *ex parte* communications.

### I. HEARING ASSIGNMENT

A virtual formal hearing in the above-captioned proceeding will commence at **10:00 A.M. Eastern Time during the week of March 3, 2025, via Microsoft Teams Software.** The Microsoft Teams link for the hearing will be sent out via email. Continuances will be granted only upon showing of good cause and/or consent of the parties.

### II. PRE-HEARING ORDER

1. **APPLICABLE RULES OF PROCEDURE:** Complaint proceedings under the CERCLA are governed by the rules and procedures set forth in 42 U.S.C. § 9610, and the implementing regulations found at 29 C.F.R. Part 24. Except as provided in that part, hearing proceedings will be conducted in accordance with the Rules of Practice and Procedure for Administrative Hearings before the Office of Administrative Law Judges set forth in 29 C.F.R. Part 18, Subpart A. Hearings will be conducted de novo, on the record. 29 C.F.R. § 1982.107(b). The regulations at Part 1982.107(b) and Part 18 vest the

## Page 1 of 7 (the later six not included here)

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                    APRIL 16 2024

# UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES

OALJ Case No.:        2024CER00001
Agency Case No.:      9-3290-22-051

In the Matter of:

Ashley Gjovik
*(Plaintiff/Complainant/Claimant/Prosecuting Party)*

      *v.*

Apple Inc.
*(Defendant/Respondent/Employer/Carrier)*

# ATTORNEY NOTICE OF APPEARANCE

Pursuant to 29 C.F.R. § 18.22(a), I attest that I am a licensed attorney in good standing of the highest court of a State, Commonwealth, or Territory of the United States, or the District of Columbia and that no disciplinary proceeding is pending against me in any jurisdiction where I am licensed to practice law. I acknowledge that I have reviewed my obligations as attorney representative as stated in 29 C.F.R. § 18.22 and the Information and Instructions on page 2 of this form.

I hereby file a notice of appearance in this case as counsel for:

Name and address of client:

| |
|---|
| Apple Inc.<br>One Apple Parkway<br>Cupertino, CA 95014 |

Role of client (e.g., Claimant, Respondent, Party-in-Interest, Amicus, Subpoenaed Witness etc.):

| |
|---|
| Respondent |

*Attorney signature, contact information, and license information:*

| | |
|---|---|
| Attorney signature: | *Melinda Riechert* |
| Address: | Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025 |
| Email address:(Note if differs from email used for EFS profile) | mriechert@orrick.com |
| Telephone number: | (650) 759-1929 |
| FAX number: | |
| Jurisdiction of licensure: | CA |
| License number: | 65504 |

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO                    APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

# EXHIBIT F

**PROCDURAL EXHIBIT F: Letter from Apple via OMM/David Eberhart**

## Correspondence on behalf of Apple Inc.

From   Eberhart, David R. <deberhart@omm.com>

To     Ashley Gjovik<ashleygjovik@icloud.com>

Date   Wednesday, September 15th, 2021 at 10:40 PM

Please see the attached correspondence.

Sincerely,

David

### O'Melveny

**David R. Eberhart**

deberhart@omm.com

O: +1-415-984-8808

————————————————

O'Melveny & Myers LLP

Two Embarcadero Center, 28th Floor

San Francisco, CA 94111

Website | LinkedIn

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**1.09 MB**   2 files attached

Gjovik, Ashley M. IPA.pdf 1.01 MB    Sep_15_Gjovik_Letter_FINAL.pdf 91.46 KB

**O'Melveny**

O'Melveny & Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823

T: +1 415 984 8700
F: +1 415 984 8701
omm.com

File Number:
600,000-3 (Apple Inc.)

September 15, 2021

David R. Eberhart
D: +1 415 984 8808
deberhart@omm.com

**VIA E-MAIL**

Ms. Ashley Gjovik
1050 Benton Street, Apt 2310
Santa Clara, CA 95050
ashleygjovik@icloud.com

Dear Ms. Gjovik:

On behalf of Apple Inc., we write to request that you remove certain images and video that you have displayed publicly in violation of your Confidentiality and Intellectual Property Agreement with Apple dated January 31, 2015 (the "IPA").

The first are the images contained in the following tweet:

https://twitter.com/ashleygjovik/status/1431824501457633283

As you know, the images are comprised of internal Apple emails regarding a confidential Apple-internal user study project. Please remove those images from any public location and refrain from further public disclosures about that project.

The second is the image contained in the following tweet:

https://twitter.com/ashleygjovik/status/1432400136471072769

The related video is located here:

https://volume-assets.voxmedia.com/production/7739cb4ec481082f874bd63244468b2d/547059/playlist.m3u8

As you know, that image and video were generated by a confidential internal Apple application during confidential Apple-internal user studies. Please remove that image and video from any public location and refrain from further public disclosures about that application or related user studies.

A copy of the IPA is included with this letter. I am available to discuss this matter at any time. If you are represented by counsel in this matter, please identify your counsel.

/ / /

Century City • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

**O'Melveny**

Sincerely,

/s/ David Eberhart

David R. Eberhart
of O'MELVENY & MYERS LLP

# EXHIBIT G

## PROCDURAL EXHIBIT G: US NLRB Decision of Merit on Employee Policies

### NLRB Cases 32-CA-284428 & 32-CA-284441 (Apple): Current Case Status

| | |
|---|---|
| **From** 🔒 Sollett, Mathew <Mathew.Sollett@nlrb.gov> | ☆ 🖨 2:00 PM |
| **To** Ashley Gjovik, cfoster@mwe.com, Mannan, Syed | ⌄ |

**CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

I am writing to provide you with an update on several outstanding unfair labor practice charges filed against Apple. The Division of Advice has responded to Region 32's request for guidance in cases 32-CA-284428 and 32-CA-284441 and has instructed the Region to issue a Complaint, absent settlement, alleging various violations of Section 8(a)(1) of the National Labor Relations Act regarding Apple rules/policies and various unlawful statements by Apple supervisors/managers. As soon as possible, the Region will contact the parties individually to discuss the meritorious allegations in further detail and to explore the possibility of pre-Complaint settlement.

Thank you very much,

Mathew Sollett, Field Attorney
National Labor Relations Board, Region 21
312 N. Spring Street, 10th Floor
Los Angeles, CA 90012
Phone: 213-634-6522
Fax: 213-894-2778

*My Pronouns: he/him/his*



  

REUTERS®          World ⌄   Business ⌄   Markets ⌄   Sustainability ⌄   Legal ⌄   Breakingviews ⌄   More ⌄

World at Work

# Apple workplace rules violate U.S. labor law, agency finds

By **Daniel Wiessner**

January 31, 2023 1:27 PM EST · Updated a year ago

FILE PHOTO: A customer stands underneath an illuminated Apple logo as he looks out the window of the Apple store located in central Sydney, Australia, May 28, 2018. REUTERS/David Gray/File Photo/File Photo *Purchase Licensing Rights* ⌐

Jan 31 (Reuters) - Apple Inc (AAPL.O) ⌐ maintains workplace policies that unlawfully discourage employees from discussing working conditions, a U.S. labor agency has found.

The National Labor Relations Board will issue a complaint targeting the policies and claiming Apple executives made comments that stymied worker organizing unless the company settles first, an agency official said on Monday in an email reviewed by Reuters.

The official had sent the email to Ashley Gjovik, a former Apple senior engineering manager who filed complaints against the company in 2021.

The NLRB investigates charges filed by workers and unions and decides whether to issue formal complaints against companies. The agency can seek to strike down workplace policies and require employers to notify workers of legal violations.

Apple did not respond to a request for comment. The company has said it takes worker complaints

Link: https://www.reuters.com/technology/apple-workplace-rules-violate-us-labor-law-agency-finds-2023-01-31/

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO                    APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

# EXHIBIT H

**PROCDURAL EXHIBIT H: US NLRB Docketing**



**Link: https://www.nlrb.gov/case/01-CA-332897**

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO       APRIL 16 2024
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a. Name of Employer<br>Apple Inc | | b. Tel. No.<br>(408) 996-1010 |
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way<br><br>CA Cupertino 95014 | e. Employer Representative<br><br>Tim Cook<br>CEO | g. e-mail<br>tcook@apple.com |
| | | h. Number of workers employed<br>100 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Technology | j. Identify principal product or service<br>Computers | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 1,4        of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Ashley Marie Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No.<br>(415) 964-6272 |
|---|---|
| ███████████ | 4c. Cell No.<br>(415) 964-6272 |
| | 4d. Fax No. |
| | 4e. e-mail<br>ashleymgjovik@protonmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief. | | Tel. No.<br>(415) 964-6272 |
|---|---|---|
| *(signature of representative or person making charge)* | Ashley Marie Gjovik<br>*(Print/type name and title or office, if any)* | Office, if any, Cell No.<br>(415) 964-6272 |
| | | Fax No. |
| Address ███████████ | Date 12/29/2023 05:00:38 PM | e-mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC                     APRIL 16 2024

**Basis of the Charge**

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
|---|
| Claiming Employee"s performance reviews are secret |
| Claiming Employee"s pay/benefits are a secret |
| Claiming Employer"s handbook policies are secret |
| Claiming Employee discipline records are secret |
| Claiming Employees complaint to Employer is secret |
| Claiming Employer spying on Employees is secret |
| Claiming Employer 24/7 video of Employee is secret |
| Claiming Employee"s safety complaints are secret |
| Claims Employees retaliation complaints are secret |

**Additional Information in Support of Charge**

**Charging Party Name :** Ashley Marie Gjovik
**Inquiry Number :** 1-3413659041
**Date Submitted :** 12/29/2023 05:00:38 PM

Please provide a brief description of the specific conduct involved in your charge. The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed. After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

**Additional Information Provided:**

The Employer (via their agent, hired legal counsel, "Orrick," representing Employer on Employee's retaliation legal claims against Employer) violated The Act (8-a-1 & 8-a-4) on November 16, December 18, December 19, and December 20 2023; as detailed.

On November 16 2023, the Employer made statements to the Employee directly, and publicly for other Employees to see, promulgating unlawful work rules that Employees have no right to speak publicly and on their personal time about work conditions or protesting unlawful conduct by the employer, and that Employer may terminate Employees for doing so.

On November 16 2023, the Employer threatened, intimidated, and coerced Employee by claiming Employer could legally terminate her employment due to her public speech about work conditions at the Employer.

On Dec 18 2023, the Employer, threatened, intimidated, disrupted, and coerced Employee by claiming compensation, benefits, performance reviews, discipline, and work policies are secret and that she must sign a legal agreement, enforceable by a Judge through Contempt of Court, promising not to tell anyone about Employer's records related to Employee in these T/C categories.

On Dec 19 2023, the Employer coerced and intimidated Employee by declaring a contract she signed was secret, that she could not have a copy of it, but that Employer claimed it fired her for violating the secret contract.

On Dec 19 2023, the Employer promulgated unlawful work rules that forbid employees from speaking about "informed consent form" agreements they enter into with the Employer, in order to perform unpaid labor for the Employer, while concurrently being subject to 24/7 surveillance.

On Dec 20 2023, the Employer coerced and intimidated Employee by claiming it does not recognize her labor complaints against Employer and it is proceeding as if she had not made those claims.

On Dec 18-Dec 20 2023, The Employer, threatened Employee in an attempt to coerce her into a unlawful secrecy agreement.

44

DECLARATION OF ASHLEY GJOVIK IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS P'S TAC | 3:23-CV-04597-EMC
APRIL 16 2024