# EXHIBIT A

DAVID J. MICLEAN (SB# 115098)
dmiclean@micleangleason.com
GARY R. GLEASON (SB# 136167)
ggleason@micleangleason.com
ANNE-MARIE D. DAO (SB# 282632)
adao@micleangleason.com
MICLEAN GLEASON LLP
100 MARINE PARKWAY, SUITE 310
REDWOOD SHORES, CA 94065
TEL: (650) 684-1181
FAX: (650) 684-1182

ORIGINAL FILED
JUN 27 2013
Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

Attorneys for Plaintiff
JOSHUA BANKO

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ADR
E-filing

JOSHUA BANKO

Plaintiff,

vs.

APPLE, INC., DOES 1-50

Defendants.

CASE NO. CV 13-02977 DMR

**COMPLAINT FOR DAMAGES FOR:**

1. **VIOLATION OF DODD-FRANK ACT**
2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
3. **RETALIATION**
4. **BREACH OF EMPLOYMENT CONTRACT**
5. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**JURY TRIAL REQUESTED**

**I. PARTIES**

1. Plaintiff JOSHUA BANKO ("Mr. Banko") is an individual and at all times relevant to this action was a resident of Palo Alto located in Santa Clara County.

2. Defendant APPLE, INC. ("Apple") is a corporation incorporated in the State of California whose principal place of business is within Santa Clara County. Defendant's entity address is 1 Infinite Loop, Cupertino, CA 95014.

3. DOES 1-50 are unknown at this time but are believed to have contributed to the injury sustained by Mr. Banko. DOES 1-50 were at all times relevant to this action employees, agents, and/or members of the Board of Directors of Apple. Mr. Banko is unaware of the true names and capacities of Defendants sued herein as DOES 1-50, inclusive, and therefore sues these Defendants by such fictitious names. Mr. Banko will pray leave of this court to amend this complaint to allege the true names and capacities when ascertained.

4. Mr. Banko is informed and believes, and thereon alleges, that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining Defendants and was acting within the course and scope of that relationship. Mr. Banko is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

**II. JURISDICTION & VENUE**

5. Jurisdiction is proper in the U.S. District Court, Northern District of California pursuant to 28 U.S.C. §1331, because the claims asserted herein arise under 15 U.S.C. §78u-6 and 18 U.S.C. §1514A.

6. Venue is proper in the Northern District Court of California pursuant to 28 U.S.C. §1391 because both Apple's location and the location of the wrongful termination are in Santa Clara County, which is located within the geographic region

presided over by the Northern District of California.

## III. GENERAL ALLEGATIONS

7. This whistleblower action, which arises pursuant to, among other statutes, the Dodd-Frank act (15 U.S.C. §78u-6) and Title VIII of the Sarbanes-Oaxley Act of 2002 (18 U.S.C. §1514A), is brought to recover damages sustained by Mr. Banko when Apple, retaliated against him because of his complaints about, and objection to, Employee Roe's embezzlement of publicly traded corporation's funds which Mr. Banko reasonably believed to be unlawful and against public policy.

### A. MR. BANKO'S HIGHLY SUCCESSFUL CAREER AT APPLE.

8. Defendant Apple, a publicly traded corporation, first hired Mr. Banko on or about September 18, 2000.

9. Mr. Banko worked exclusively for Apple from September, 2000 until his termination over 12 years later. During his tenure with Apple, Mr. Banko received multiple promotions, led numerous projects and even finished a graduate degree during his employment. Mr. Banko participated in the development and/or engineering management of numerous high profile products such as the iPad, iBook, MacBook, MacBook Pro, and MacBook Air. Moreover, in Mr. Banko's over 12 years with the company, he was a significant contributor in developing more than 22 important Apple patents.

10. Mr. Banko's importance to the company was exemplified by many outstanding performance reviews. These include Apple's award to Mr. Banko of large discretionary bonuses and raises, all related to his strong performance as an Apple employee.

11. During his tenure at Apple, Mr. Banko's performance never necessitated any performance improvement plan, nor did Apple ever issue any negative written

reviews.

12. Mr. Banko was also assigned the lead on numerous projects and told that he was an extremely valuable member of the company by his supervisor, Ms. Bergeron.

13. Among other projects, Mr. Banko led, designed and managed the engineering development of the iPad. Largely because of Mr. Banko's efforts, the iPad became one of Apple's most successful product launches.

14. Following the launch of the iPad, Mr. Banko received a significant bonus, and an e-mail accompanying the bonus that acknowledged his work on the project. It was communicated to Mr. Banko that he was being awarded a $12,000 bonus for January 02, 2010 because of his persistence and drive to finish his project on the iPad. It was also communicated that Apple was looking forward to Mr. Banko accomplishing great things that year.

15. During his tenure at Apple, Mr. Banko's supervisor, Ms. Bergeron specifically stated that she would "back-up" and "support" Mr. Banko with respect to his employment at Apple because he was such a valuable employee to Apple.

**B. MR. BANKO'S ASSIGNMENT TO, AND SUCCESSFUL LEADERSHIP OF, ANOTHER HIGH LEVEL APPLE PROJECT.**

16. In March of 2012 Apple promoted Mr. Banko to the position of "Engineering Manager II", and assigned him to oversee the engineering of one of the most important and politically sensitive Apple development projects taking place at that time (the "Project"). The assignment to Mr. Banko of such a crucial project was yet another acknowledgement by Apple of the high regard it had for Mr. Banko's abilities and for his outstanding performance with respect to the previous responsibilities assigned to him over the years.

17. As the Engineering Manager in charge of the Project, Mr. Banko continued to meet design and project deadlines.

18. In or about November, 2012 Mr. Banko's efforts led to the completion of a successful build of a prototype for the Project within the Project deadline for the build.

19. On December 18, 2012 a meeting was held regarding the Project and its status. No complaints were lodged with respect to any aspect on the Project. In fact, the Project was going so well that on December 21, 2012 Apple congratulated the Project team on completing a prototype system build before the holidays. (Mr. Banko's superiors did not think it would be possible to complete the system build prototype that soon.) Apple communicated to Mr. Banko that the team had done excellent work and pulled off a successful Pre-Proto system build in time for the holidays which many thought would not be possible before the holiday.

20. On that same day, a physical prototype arrived at Apple. It was enthusiastically received by key personnel at Apple in the Industrial Design Department.

21. Apple subsequently shut down for its customary holiday break from December 22, 2012 to January 2, 2013.

22. Within a day after returning to work after the holidays, Mr. Banko learned he had been given a significant discretionary bonus in relation to his work on the Project.

**C. BACKGROUND OF EMPLOYEE ROE, A DIRECT REPORT TO MR. BANKO.**

23. One of the Apple employees that reported directly to Mr. Banko during his tenure at Apple was Employee Roe[1], another engineer. In or about August, 2011, Mr. Banko promoted Employee Roe, and provided her with a pay raise and a stock grant. The raise and grant were of the level commensurate with Employee Roe's

[1] The term Employee Roe is used to protect the individual's privacy.

performance and promotion.

24. Two months later, in or about October, 2011, Stacey Smith, the senior human resources director at Apple Inc., unilaterally altered the raise recommended by Mr. Banko, and increased Employee Roe's bonus by 30% (from $13,500 to $17,500) and her stock grant by 66% (from 300 to 500 shares). He did this without prior notice to either Mr. Banko or Mr. Banko's supervisor, Kate Bergeron. Moreover, there was no explanation provided to justify this action.

25. Ms. Bergeron made no effort to correct or protest this unilateral action of Mr. Smith.

26. In or about March of 2012, Mr. Smith again provided Employee Roe with favored treatment by unilaterally awarding her a pay increase of $40,000 and a grant of 1500 Restricted Stock Units (over seven times the size of the additional amount he had unilaterally given her in August of 2011). These substantial increases in Employee Roe's compensation took place without the knowledge of either Mr. Banko or his supervisor Ms. Bergeron.

27. Once again, Ms. Bergeron made no effort to correct or protest this unilateral action of Mr. Smith.

28. Mr. Banko was later told that the justification for the March, 2012 increase was Employee Roe's claim that she was leaving Apple for a job at Facebook, and receiving a substantial increase in compensation in connection with her new position. The increased compensation Mr. Smith gave to Employee Roe was supposedly to entice Employee Roe to stay at Apple. However, to Mr. Banko's knowledge, Employee Roe never provided anyone at Apple with any proof that she had ever received an actual offer from Facebook, including Mr. Smith.

///

///

**D. MR. BANKO'S DISCOVERY AND REPORTING OF EMBEZZLEMENT BY EMPLOYEE ROE.**

29. Unbeknownst to Mr. Banko, Employee Roe had been submitting expense reports which included charges that consisted of either personal expenses, and/or expenses that could not be documented.

30. In early 2012, Mr. Banko began to notice the irregularities on Employee Roe's expense reports. In or about January, 2012, Mr. Banko met with and directed Employee Roe to remove fraudulent charges off her expense report. Yet, even though Employee Roe inflated her expenses, she was awarded a bonus in or around February 2012.

31. In or about December, 2012, Mr. Banko again discovered inconsistencies in another of Employee Roe's expense reports in which she inflated her expenses. When Mr. Banko highlighted these issues and asked Employee Roe to remedy them, Employee Roe failed to fix them.

32. Upon Employee Roe's refusal to remedy her expense reports, Mr. Banko had a reasonable belief that Employee Roe was violating both Apple policy and the law and that he was required to report her.

33. Mr. Banko's supervisors instructed Mr. Banko not to report Employee Roe, in essence asking him to cover up and be complicit in the embezzlement of Employee Roe.

34. Notwithstanding his superiors' instructions to ignore the situation, Mr. Banko reported the embezzlement.

35. As a result of Mr. Banko's reporting of Employee Roe, Apple conducted an internal audit in order to determine if Employee Roe had misrepresented expenses on her expense reports and, if so, the extent of Employee Roe's falsified expense reports.

36. Apple's internal audit resulted in the discovery of over 40 instances of fraudulent expense reports in which Employee Roe either inflated or falsified

expenses for which she obtained reimbursement from Apple.

37. Based on Apple's policies, and Mr. Banko's reasonable belief that Employee Roe's actions represented embezzlement from Apple, Mr. Banko recommended Employee Roe's immediate termination for fraud and embezzlement of company funds.

38. To Mr. Banko's surprise both his supervisor (Ms. Bergeron) and Ms. Bergeron's supervisor (Doug Field) informed Mr. Banko that he should not pursue the termination of Employee Roe, stating she was a valuable employee (apparently even with her lack of loyalty to Apple and her embezzlement).

39. Because of the legal implications of Employee Roe's actions, and the fact he reasonably believed he was obligated by law and Apple policy to terminate Employee Roe, Mr. Banko approached Mr. Victor Cousins of Apple's Human Resources department.

40. Following his review of the facts, Mr. Cousins wrote a report recommending termination of Employee Roe on or around December 21, 2012.

41. Thereafter a meeting was held that involved, at a minimum, Ms. Bergeron and Mr. Field regarding Employee Roe. Mr. Banko was not invited to participate in the meeting, even though Employee Roe was his direct report and he was typically included in such meetings.

42. On December 21, 2012, Ms. Bergeron informed Employee Roe that Apple was terminating her employment, effective December 31, 2012.

43. Ms. Bergeron and Mr. Field, as well as Mr. Smith and others were upset that Mr. Banko had reported Employee Roe and had recommended her termination against their wishes.

44. Notwithstanding the turmoil Mr. Banko had to navigate during late 2012 regarding Employee Roe, he successfully continued to complete his duties overseeing the engineering of the Project.

**E. MR. BANKO'S TERMINATION FOLLOWING THE TERMINATION OF EMPLOYEE ROE.**

45. Apple was shut down for the holidays from December 22, 2012 through January 2, 2013. Mr. Banko received no indication that there were any complaints or concerns regarding the Project during that time. In fact, he had received praise and congratulations for successfully completing a prototype on schedule before the holiday break.

46. Immediately after his return from the holidays, Mr. Banko received a significant discretionary bonus in relation to his work on the Project. Thus, by all indications everything in relation to the Project was not only going well, but Mr. Banko was being rewarded for how well he was doing with respect to leading the Project.

47. Suddenly and without warning, on or around January 9, 2013, nine days after Employee Roe's termination date, Mr. Banko was called into a meeting with Ms. Bergeron and Mike Ignaffo, a member of Apple's human resources department. During this meeting, Mr. Banko was pulled off the Project and told to stay home the rest of the week and return on Monday, January 14, 2013. Mr. Banko was shocked as he recognized such action as that typical of terminations.

48. During the meeting Mr. Banko asked the reason for the action. Neither Ms. Bergeron nor Mr. Ignaffo was able to provide a justification for the action. Although asked directly, there was no mention of poor performance on the part of Mr. Banko. Upon his return on January 14, 2013, Mr. Banko was terminated from his position at Apple after over 12 years with the company.

**FIRST CAUSE OF ACTION**
**VIOLATION OF DODD-FRANK ACT**

49. Paragraphs 1-48 are incorporated herein by reference.

50. 15 U.S.C. §78u-6 states no employer may discharge or in any other manner discriminate against, a whistleblower in the terms and conditions of employment

because of any lawful act done by the whistleblower in providing information that is required or protected under the Sarbanes-Oxley Act, the Securities Exchange Act of 1934, and any other law, rule, or regulation subject to the jurisdiction of the Commission. (15 U.S.C. §78u-6 (h) (1) (A) (iii) ).

51. Apple has violated 15 U.S.C. §78u-6(h)(1) because the decision to terminate Mr. Banko's employment was motivated by Mr. Banko's disclosures which are protected by Section 806 of the Sarbanes-Oxley Act (18 U.S.C. §1514A).

52. Apple is governed by the Sarbanes-Oxley Act because, upon information and belief, it (a) has a "class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. §781), and (b) it is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78o (d) ). (18 U.S.C. §1514A (a)).

53. Mr. Banko engaged in activity that is protected by Section 806 of the Sarbanes Oxley Act (18 U.S.C. §1514A) when he informed Apple's officers and/or management of conduct which he reasonably believed to be in violation of federal law relating to fraud against shareholders.

54. In or about December, 2012, Apple's officers and/or management advised Mr. Banko not to report the embezzlement of Employee Roe. Having a reasonable belief that the theft had occurred and that he was obligated to report it, Mr. Banko did so.

55. In or about December, 2012, Apple's officers and/or management advised Mr. Banko not to pursue the termination of Employee Roe after she had been found to have embezzled funds on 40 separate occasions in violation of Apple policy and the law.

56. Mr. Banko recommended her termination to his supervisors, and then terminated her, against the wishes of his supervisors.

57. As a proximate result of Mr. Banko's conduct as described in Paragraph 29-48 above, Apple terminated him within 14 days of Employee Roe's termination.

58. As a proximate result of Apple's conduct, Mr. Banko has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, and other special and general damages, all to his damage in an amount to be established at trial.

59. Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired to commit one or more of the acts alleged herein.

60. In committing the acts set forth above, Apple and the other Defendants knew that the conduct that they would have required of Mr. Banko was unlawful, and required Mr. Banko to choose between violating the law and/or Apple policy and losing his job. Notwithstanding this knowledge, Apple subjected Mr. Banko to cruel and unjust hardship in conscious disregard of Mr. Banko's rights by resisting Mr. Banko's efforts to report and subsequently terminate the embezzling Employee Roe and then terminating Mr. Banko's employment when he acted in accordance with Apple policy and the law. Apple's conduct warrants the assessment of punitive damages.

61. WHEREFORE, Mr. Banko requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

62. Paragraphs 1-61 are incorporated herein by reference.

63. In or about December, 2012, Apple's officers and/or management advised Mr. Banko not to pursue the investigation and/or termination of Employee Roe who had been found to embezzle funds on 40 separate occasions in violation of Apple policy and the law. Having a reasonable belief that the theft had occurred and that he was obligated to report it, Mr. Banko did so.

64. Employee Roe's embezzlement of a publicly traded corporation's funds harms the general public by impacting the millions of Apple shareholders, and by creating

tax irregularities (deduction of illegitimate expenses as business expenses) which in turn could harm Apple and its millions of shareholders. Enforcing laws and policies with respect to illegal acts by employees increases the value of the company and thereby benefits the public who owns Apple and increases taxable revenue of the company.

65. As a proximate result of Mr. Banko's conduct as described in Paragraph 63, above, and in violation of public policy as set forth in Paragraph 64 above, Apple terminated Mr. Banko's employment.

66. As a proximate result of Apple's conduct, Mr. Banko has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, and other special and general damages, all to his damage in an amount to be established at trial.

67. Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired to commit one or more of the acts alleged herein.

68. In committing the acts set forth above, Apple and the other Defendants knew that the conduct that they would have required of Mr. Banko was unlawful, and required Mr. Banko to choose between violating the law and/or Apple policy and losing his job. Notwithstanding this knowledge, Apple subjected Mr. Banko to cruel and unjust hardship in conscious disregard of Mr. Banko's rights by resisting Mr. Banko's efforts to report and subsequently terminate the embezzling Employee Roe and then terminating Mr. Banko's employment when he acted in accordance with Apple policy and the law. Apple's conduct warrants the assessment of punitive damages.

69. WHEREFORE, Mr. Banko requests relief as hereinafter provided.

///

///

**THIRD CAUSE OF ACTION**
**RETALIATION**
**(15 USC §78u-6, 18 USC §1514A and California Labor Code §1102.5)**

70. Paragraphs 1-69 are incorporated herein by reference.

71. This cause of action is brought pursuant to 15 USC §78u-6, 18 USC §1514A and California Labor Code §1102.5

72. Because Mr. Banko engaged in protected activities, such as not covering up embezzlement, not becoming complicit in the embezzlement, and reporting the embezzlement within a publicly traded company, as alleged above, Mr. Banko was subjected to adverse actions.

73. Apple and/or the other Defendants and each of them acting in the course and scope of their employment and as representatives of Apple retaliated against Mr. Banko by the acts and conduct described above, which materially affected Mr. Banko's terms of employment.

74. 15 USC §78u-618 and USC §1514A makes it illegal for an employer to retaliate against an employee who reports embezzlement.

75. California Labor Code makes it illegal for an employer to retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

76. As a proximate result of Apple's conduct, Mr. Banko has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, and other special and general damages, all to his damage in an amount to be established at trial.

77. Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired to commit one or more of the acts alleged herein.

78. In doing the things herein alleged, the conduct of Apple and each of the other

Defendants was despicable and each Defendant acted towards Mr. Banko with malice, oppression, fraud, and with a willful and conscious disregard of Mr. Banko's rights. Each of the Defendants ratified, authorized and condoned the conduct of each and every other Defendant and managing agent, entitling Mr. Banko to an award of punitive and exemplary damages.

79. WHEREFORE, Mr. Banko requests relief as hereinafter provided.

**FOURTH CAUSE OF ACTION**
**BREACH OF EMPLOYMENT CONTRACT**

80. Paragraphs 1-79 are incorporated herein by reference.

81. Mr. Banko was employed by Apple for 12 years. During the entirety of his employment with Apple, he consistently received either good or excellent performance evaluations and merit raises, was assured on numerous occasions that he would not be terminated arbitrarily, and was told by his supervisor that she would support him and back him up with respect to continued employment.

82. Apple normally has a course of conduct and a policy of putting employees on performance improvement plans prior to terminating them.

83. Based on the oral representations, promises, and/or conduct of Apple and/or the other Defendants, Mr. Banko had an employment contract with Apple stating that he would be employed by Apple so long as his performance was satisfactory, and that Apple and/or the other Defendants would not discharge him without good and just cause.

84. The terms of the employment contract included, but were not limited to, the following: Apple and/or the other Defendants would not demote or discharge Mr. Banko without good cause and fair warning, based on objective, reasonable job evaluations of Mr. Banko, and following an opportunity to participate in a performance improvement plan.

85. Mr. Banko at all times fulfilled his duties and conditions under the contract and has been ready, willing, and able to continue performing them in a competent and satisfactory manner.

86. Notwithstanding the implied promise to terminate the employment contract only for good cause, on or about January 16, 2013, Apple and the other Defendants terminated Mr. Banko's employment and later alleged grounds of poor performance, even though Mr. Banko had received consistently good performance evaluations, had received merit raises and bonuses, including a substantial discretionary merit bonus less than 2 weeks before his termination.

87. Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired to commit one or more of the acts alleged herein.

88. As a proximate result of Apple and the other Defendants' breach of the employment contract, Mr. Banko has suffered and continues to suffer losses in earnings and other employment benefits, to his damage in an amount to be established at trial.

89. WHEREFORE, Mr. Banko requests relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

90. Paragraphs 1-889 are incorporated herein by reference.

91. The employment agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Apple and/or the other Defendants to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would prevent or impede Mr. Banko from performing any or all of the conditions of the contract that he agreed to perform, or any act that would deprive Mr. Banko of the benefits of the contract.

92. Mr. Banko was employed by Apple for 12 years, and reasonably relied on the

provisions of the implied agreement regarding the causes for which employees could be discharged or demoted and the procedures set forth for such discharges for the expectation that Apple and/or the other Defendants would apply its policies even-handedly to afford Mr. Banko the protections of those procedures if Apple and/or the other Defendants believed there was cause to discharge Mr. Banko.

93. Mr. Banko performed all the duties and conditions of the employment agreement.

94. Apple and/or the other Defendants knew that Mr. Banko had fulfilled all his duties and conditions under the contract.

95. Apple and/or the other Defendants breached the implied covenant of good faith and fair dealing under the employment agreement by discharging Mr. Banko intentionally, maliciously, and without probable cause, in bad faith and for reasons extraneous to the contract. In fact, Apple and/or the other Defendants discharged Mr. Banko, not because of alleged poor performance, but because Mr. Banko, in good faith and in a reasonable, appropriate, and businesslike manner, refused to cover up the embezzlement of Employee Roe and because he reported the embezzlement of Employee Roe. Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive Mr. Banko of the benefits thereof.

96. Apple and/or the other Defendants further breached the implied covenant of good faith and fair dealing by violating and failing to follow its own personnel policies by not providing Mr. Banko with the written warning of performance deficiency, by refusing to offer a performance improvement plan, and by failing to "support" him as promised by Ms. Bergeron.

97. Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired to commit one or more of the acts alleged herein.

98. As a proximate result of Apple and/or the other Defendants' breach of the implied covenant of good faith and fair dealing, Mr. Banko has suffered, and continues to suffer, losses in earning and other employment benefits, to his damage in an amount to be established at trial.

99. As a further proximate result of Apple and/or the other Defendants' breach of the implied covenant of good faith and fair dealing, Mr. Banko has incurred reasonable attorney's fees in attempting to secure the benefits owed him under the employment contract.

100. WHEREFORE, Mr. Banko requests relief as hereinafter provided.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1. For a money judgment representing compensatory damages including lost wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

2. For a money judgment for mental pain and anguish and emotional distress, according to proof;

3. For an award of exemplary and punitive damages, according to proof;

4. For costs of suit and attorney's fees;

5. For pre-judgment and post-judgment interest; and

6. For such other and further relief as the court deems just and proper.

\\\

\\\

\\\

\\\

\\\

**V. REQUEST FOR JURY TRIAL**

Plaintiff Joshua Banko hereby requests trial by Jury.

DATED: June 27, 2013

MICLEAN GLEASON LLP

By ______________________
David J. Miclean
Gary R. Gleason
Attorneys for Plaintiff Joshua Banko

COPY

JS 44 (Rev. 12/12) cand rev (1/15/13)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Joshua Banko

**DEFENDANTS**
Apple, Inc. 1 Infinite Loop, Cupertino, CA 95014; DOES 1-50

(b) County of Residence of First Listed Plaintiff: Santa Clara
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Santa Clara
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

CV 13-02977 DMR

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
MICLEAN GLEASON LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065

Attorneys *(If Known)*
LITTLER MENDELSON
50 W. San Fernando 15th Floor
San Jose, CA 95113

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

ADR Filing

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1331; 18 U.S.C. 1514A; 15USC78u-6

Brief description of cause:
Violation of Dodd-Frank Act; Wrongful Termination in Violation of Public Policy; Employment Contract Breach;

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 06/27/2013

SIGNATURE OF ATTORNEY OF RECORD [signature]

**IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)**
(Place an "X" in One Box Only) ☑ SAN FRANCISCO/OAKLAND ☐ SAN JOSE ☐ EUREKA

FAXED