**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY GJOVIK**, *an individual*, | **Case No. 3:23-CV-04597-EMC** |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES** |
| **APPLE INC**, *a corporation*, | **IN CONDITIONAL NON-OPPOSITION TO DEFENDANT'S** |
| Defendant. | **REQUEST FOR JUDICIAL NOTICE AT DOCKET NO. 61** |

**MOTION HEARING:**

Dept: Courtroom 5, 17th Floor (Virtual)

Date: May 16, 2024

Time: 1:30 p.m.

# **TABLE OF CONTENTS**

I.   PLAINTIFF'S MEMORANDUM IN CONDITIONAL NON-OPPOSITION TO DEFENDANT'S MOTION REQUESTING JUDICIAL NOTICE..........................................................................1

II.   ISSUES TO BE DECIDED..................................................................................................1

III.   APPLE'S REQUEST IS MISSING REQUIRED DOCUMENTS. EXHIBIT A DOES NOT CONTAIN THE FACTS REFERENCED TO DENY THE MOTION TO DISMISS RELATED TO GOOD FAITH AND FAIR DEALING. .........................................................................................2

IV.   THE MOTION SHOULD BE GRANTED IF THE REQUEST IS SUPPLEMENTED WITH BANKO'S FIRST AMENDED COMPLAINT. ...................................................................3

V.   THE REQUEST SHOULD BE SUPPLEMENTED WITH ADDITIONAL FILINGS INCLUDING BANKO'S FAC, APPLE'S TWO MOTIONS TO DISMISS BANKO'S COMPLAINTS, AND BANKO'S OPPOSITION BRIEFING.........................................................3

VI.   CONCLUSION ..................................................................................................................5

# CASES

*Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 759 (N.D. Cal. Sept. 27, 2013). --------------------------------------2

*Banko v. Apple, Inc.*, No. 13-02977 RS, 11 (N.D. Cal. Dec. 16, 2013). --------------------------------------2

*Orr v. Bank of America*, NT & SA, 285 F.3d 764, 779 n.26 (9th Cir. 2002). ----------------------------------5

*Rosenberg-Wohl v. State Farm Fire & Cas. Co.*, 20-cv-09316-DMR, 6 (N.D. Cal. Mar. 28, 2022). -------2

*United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).--------------------------------------2

## I. PLAINTIFF'S MEMORANDUM IN CONDITIONAL NON-OPPOSITION TO DEFENDANT'S MOTION REQUESTING JUDICIAL NOTICE

1. Plaintiff, Ashley Gjovik, respectfully submits the following Memorandum of Points and Authorities in conditional non-opposition to Defendant's latest Motion Requesting Judicial Notice at Docket No. 61. A Declaration is concurrently attached at Docket No. 63-1.

## II. ISSUES TO BE DECIDED

2. On April 16 2024, Defendant filed a new motion requesting judicial notice of one document, listed by Defendant as "Exhibit A: Complaint, Banko v. Apple Inc., N.D. Cal. No. 3:13-cv-02977-VC, Dkt. 1 (June 27, 2013)." Docket No. 61-1, Ex. A. Defendant claimed this Motion was "*in connection with its Reply in Support of its Motion to Dismiss Plaintiff's Third Amended Complaint.*" Def.'s Mot. for Judicial Notice at page 1 and Docket No. 61.

3. Replies are not supposed to introduce new facts; however, introducing papers already filed to this Court in order to clarify arguments made in the instant TAC, Motion, Opposition, and Reply seems appropriate.

4. Apple argues judicial notice is proper due to Plaintiff's arguments related to her claims for Breach of Implied Contract and Breach of Implied Warranty of Good Faith and Fair Dealing. Plaintiff agrees the briefing for *Banko v Apple Inc* may be relevant to *Gjovik v Apple Inc* due to the similarities in legal claims and arguments from both Plaintiffs (Banko and Gjovik) and Defendant (Apple). Banko and Gjovik also worked in the same Apple Hardware Engineering organization at the time of their involuntary terminations. *Gjovik v Apple* TAC ¶ 18; *Banko v Apple* Original Complaint ¶ 19, 38 and FAC ¶ 19, 38.

### III. APPLE'S REQUEST IS MISSING REQUIRED DOCUMENTS. EXHIBIT A DOES NOT CONTAIN THE FACTS REFERENCED TO DENY THE MOTION TO DISMISS RELATED TO GOOD FAITH AND FAIR DEALING.

5.      Apple notes "*the Court declined to dismiss [Banko's] 'Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing' claim.*" D's Motion for Judicial Notice at page 1. Apple adds, "*Apple requests that the Court take notice of the complaint at issue in Banko, not for the truth of the allegations asserted therein, but rather for the fact that the allegations therein were the operative allegations at issue in the motion to dismiss in Banko.*" *Id.*

6.      However, Apple's Motion only introduces *Banko's* Original Complaint for which the subsequent Order on September 27 2013 did not dismiss the Implied Contract claim, but did dismiss the Implied Covenant of Good Faith and Fair Dealing claim. *Banko v. Apple Inc*., 20 F. Supp. 3d 749, 759 (N.D. Cal. Sept. 27, 2013). A second Order on December 16 2013 later denied Apple's motion to dismiss the covenant of good faith and fair dealing claim in *Banko's* first amended Complaint. *Banko v. Apple, Inc*., No. 13-02977 RS, 11 (N.D. Cal. Dec. 16, 2013).

7.      It is usually not appropriate for a court to grant judicial notice to a defendant for evidence to support a Fed. R. Civ. Pro. 12(b)(6) motion unless the complaint relies on the document, the document is central to a party's claims, and no party questions the authenticity of the document. *United States v. Corinthian Colls*., 655 F.3d 984, 999 (9th Cir. 2011). At this phase of the lawsuit, judicial notice to support a motion to dismiss may only be appropriate "if the court is to rely on the document in determining whether to dismiss the complaint." *Rosenberg-Wohl v. State Farm Fire & Cas. Co*., 20-cv-09316-DMR, 6 (N.D. Cal. Mar. 28, 2022).

8.      Accordingly, Plaintiff supports this request only if the Judge finds the documents needed for the Rule 12(b)(6) motion.

## IV. THE MOTION SHOULD BE GRANTED IF THE REQUEST IS SUPPLEMENTED WITH BANKO'S FIRST AMENDED COMPLAINT.

9.     As Apple's Request for Judicial Notice was specific to both the Implied Contract and the Implied Covenant of Good Faith and Fair Dealing, then the request must include *Banko's* First Amended Complaint (**Exhibit E**) in addition to *Banko's* Original Complaint (Apple's Docket No. 61-1 Exhibit A). Otherwise, the facts pled found to be a plausible claim for the covenant will not actually be judicially noticed.

## V. THE REQUEST SHOULD BE SUPPLEMENTED WITH ADDITIONAL FILINGS INCLUDING BANKO'S FAC, APPLE'S TWO MOTIONS TO DISMISS BANKO'S COMPLAINTS, AND BANKO'S OPPOSITION BRIEFING

10.     In addition, if Apple would like to request this Court to examine the *Banko v Apple Inc.* case in depth, it seems proper to also include the briefings that were considered by this Court in making both of the motion to dismiss decisions in *Banko v Apple*. True and correct copies are attached under the following exhibits and authenticated in the attached Declaration.

11.     Attached as **Exhibit A** is *Apple's* Motion to Dismiss *Banko's* Original Complaint. See, Case 3:13-cv-02977, Docket No. 11, August 5 2013.

12.     Attached as **Exhibit B** is *Banko's* Opposition to *Apple's* Motion to Dismiss Banko's  Original Complaint. See, Case 3:13-cv-02977, Docket No. 18, August 26 2013.

13.     Attached as **Exhibit C** is *Apple's* Reply to *Banko's* Opposition to Apple's Motion to Dismiss Banko's  Original Complaint. Case 3:13-cv-02977, Docket No. 22, September 9 2013.

14.     Attached as **Exhibit D** is the Order, *Banko v. Apple Inc.,* 20 F. Supp. 3d 749 (N.D. Cal. 2013). See, Case 3:13-cv-02977, Docket No. 29.

15.     Attached as **Exhibit F** is *Apple's* Motion to Dismiss *Banko's* First Amended Complaint. See, Case 3:13-cv-02977, Docket No. 32, November 7 2013.

16.     Attached as **Exhibit G** is Order, *Banko v. Apple, Inc*., No. 13-02977 RS (N.D. Cal. Dec. 16, 2013). See, Case 3:13-cv-02977, Docket No. 38.

## VI. CONCLUSION

17. In conclusion, Plaintiff does not oppose Apple's request for Judical Notice in the Motion at Docket No. 61 as long as *Banko's* First Amended Complaint is also included (Exhibit E). In addition, Plaintiff suggests that the Orders (Exhibits D and H) be included, as well as the briefings and papers the Orders were based on (Exhibits A, B, C, F, and G).

18. Finally, if this Court does not want to review *Banko v Apple* in depth, and as such finds these documents unneeded, then Plaintiff also has no opposition to this Court denying Apple's request for Judicial Notice.

**Dated: April 23 2024**

Signature:

_____

**s/ Ashley M. Gjovik**

**Pro Se Plaintiff**

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

# EXHIBIT A

*Banko v Apple* **(2013), Apple's First Motion to Dismiss**

1   TODD K. BOYER, Bar No. 203132
    tboyer@littler.com
2   BENJAMIN A. EMMERT, Bar No. 212157
    bemmert@littler.com
3   LITTLER MENDELSON, P.C.
    50 W. San Fernando, 15th Floor
4   San Jose, California  95113.2303
    Telephone:     408.998.4150
5   Facsimile:     408.288.5686

6   Attorneys for Defendant
    APPLE INC.

7

8                       UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12  JOSHUA BANKO,                          Case No.  CV13-02977

13               Plaintiff,                **DEFENDANT APPLE INC.'S NOTICE OF
                                           MOTION; MOTION TO DISMISS
14       v.                                PLAINTIFF'S COMPLAINT PURSUANT
                                           TO FED. R. CIV. P. 12(b)(1) and 12(b)(6);
15  APPLE INC., and DOES 1-50,             MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
16               Defendants.               DEFENDANT'S MOTION TO DISMISS
                                           PLAINTIFF'S COMPLAINT PURSUANT
17                                         TO FED.R.CIV.P. 12(b)(1) AND 12(b)(6)**

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

# TABLE OF CONTENTS

PAGE

I.    STATEMENT OF ISSUES TO BE DECIDED ........................................................ 2

II.   INTRODUCTION ..................................................................................................... 3

III.  STATEMENT OF ALLEGATIONS ......................................................................... 4

IV.   LEGAL ARGUMENT .............................................................................................. 5

      A.    Standard On A Rule 12(b)(6) Motion .......................................................... 5

      B.    Plaintiff Has Not Alleged Facts Establishing His First Claim For Relief For
            An Alleged Violation Of The Dodd-Frank Act (15 U.S.C. § 78u-6) .......... 7

            1.    Plaintiff Is Not A Whistleblower Under Dodd-Frank..................... 7

            2.    The Court Lacks Jurisdiction Over Plaintiff's SOX Allegations Which
                  Are Barred By The Statute Of Limitations And SOX's Administrative
                  Procedure Requirements ................................................................. 10

            3.    Plaintiff's Communications Were Not Required or Protected Under
                  SOX.................................................................................................. 11

      C.    Plaintiff's Second Claim For Relief For Wrongful Termination Should Be
            Dismissed As He Has Failed To Allege A Violation Of Public Policy.................... 13

      D.    Plaintiff Has Not Alleged Facts Establishing The Essential Elements Of His
            Third Claim For Relief For Retaliation ...................................................... 15

      E.    Plaintiff Has Not Alleged Facts Establishing The Essential Elements Of His
            Fourth Claim For Relief For Breach Of Contract........................................ 17

      F.    Plaintiff's Fifth Claim For Relief Breach Of The Covenant Of Good Faith
            And Fair Dealing Fails As A Matter Of Law ............................................. 21

V.    CONCLUSION........................................................................................................ 22

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

i.

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilar v. Atlantic Richfield Co.,*
    25 Cal. 4th 826 (2001) ...................................................................................................20

*Allen v. Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) .........................................................................................19

*Allen v. Dep't. of Labor,*
    514 F.3d 468 (5th Cir. 2008) .........................................................................................12

*Asadi v. G.E. Energy,*
    No. 12-20522, 2013 U.S. App. LEXIS 14470 (5th Cir. July 17, 2013)......................... passim

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................5, 6, 7

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1990) ...........................................................................................5

*Bedroc Ltd. v. United States,*
    541 U.S. 176 (2004).........................................................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................5, 6, 7

*Bionghi v. Metro Water Dist.,*
    70 Cal.App.4th 1358 (1999) ..........................................................................................22

*Bishop v. PCS Admin., Inc.,*
    2006 U.S. Dist. LEXIS 37230 ......................................................................................12

*Burt v. Irvine Co.,*
    237 Cal. App. 2d 828 (1965) .........................................................................................19

*Carter v. Escondido Union High School District,*
    148 Cal.App.4th 922 (2007) ..........................................................................................13

*Coppinger-Martin v. Nordstrom, Inc.,*
    627 F.3d 745 (9th Cir. 2010) ...................................................................................10, 11

*Day v. Staples Inc.,*
    555 F.3d 42 (1st Cir. 2009)............................................................................................11

*Edgerly v. City of Oakland,*
    211 Cal.App.4th 1191 (2012) ..................................................................................16, 17

*Foley v. Interactive Data Corp.,*
    47 Cal.3d 654 (1988) ...................................................................................................14, 21

*Fraser v. Fiduciary Trust Co. Int'l,*
    417 F.Supp.2d 310 (S.D.N.Y. Aug. 25, 2006) aff'd, 396 Fed. Appx. 734 (2d Cir. 2010) ......12

*Gale v. World Fin. Group,*
    2006-SOX-43 (Dep't. of Labor June 9, 2006) .......................................................................12

*Gant v. Sentry Insurance,*
    1 Cal.4th 1083 (1992) ...........................................................................................................14

*Godfrey v. Union Pac. R.R. Co.,*
    ARB Case No. 08-088, *4 (July 30, 2009) ...........................................................................12

*Green v. Ralee Engineering Co.,*
    19 Cal. 4th 66 (1988) ......................................................................................................15, 16

*Guz v. Bechtel National, Inc.,*
    24 Cal.4th 317 (2000) ................................................................................................... passim

*Horn v. Cushman & Wakefield Western, Inc.,*
    72 Cal.App.4th 798 (1999) .............................................................................................19, 20

*In re Gilead Sciences Securities Litigation,*
    536 F.3d 1049 (9th Cir. 2008) .................................................................................................5

*In Riddle v. First Tenn. Bank Nat'l Assoc.,*
    2012 U.S. App. LEXIS 18684 ...............................................................................................12

*INS v. Cardozo Fonesca,*
    480 U.S. 421 (1987) .................................................................................................................9

*Kovatch v. Cal. Casualty Management Co.,*
    65 Cal. App. 4th 1256 (1998) ................................................................................................20

*Livingston v. Wyeth, Inc.,*
    2006 U.S. Dist. LEXIS 52978 (M.D.N.C. July 28, 2006) aff'd 520 F.3d 344 (4th Cir.
    2008) .................................................................................................................................12, 13

*Love v. Motion Industries, Inc.,*
    309 F.Supp.2d 1128 (N.D. Cal. 2004) ..................................................................................15

*Meese v. Keene,*
    481 U.S. 465 (1987) .................................................................................................................9

*Mueller v. County of Los Angeles,*
    176 Cal.App.4th 809 (2009) ..................................................................................................17

TABLE OF AUTHORITIES

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*,
    212 F.3d 493 (9th Cir. 2000) ...........................................................................15

*Robinson v. Morgan Stanley*,
    No. 07-070, 2010 ............................................................................................12

*Sequoia Ins. Co. v. Superior Court*
    13 Cal.App.4th 1472 (1993) ...........................................................................14

*Silvas v. E*Trade Mortg. Corp.*,
    421 F.Supp.2d 1315 (S.D. Cal. 2006)...............................................................5

*Stevenson v. Superior Court*,
    16 Cal.4th 880 (1997) .....................................................................................13

*Strigliabotti v. Franklin Resources, Inc.*,
    398 F.Supp.2d 1094 (N.D. Cal. 2005) ...............................................................5

*Strother v. S. Cal. Permanente Med. Group*,
    79 F.3d 859 (9th Cir. 1996) ............................................................................15

*Tameny v. Atlantic Richfield Co.*,
    27 Cal.3d 167 (1980) ......................................................................................13

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)...........................................................................................10

*Turner v. Anheuser-Busch, Inc.*,
    7 Cal.4th 1238 (1994) .....................................................................................14

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ..........................................................................11

**STATUTES**

12 U.S.C. § 5567(c)(4)(D) ......................................................................................10

15 U.S.C. § 78u-6 ....................................................................................3, 7, 8, 9, 10, 15

18 U.S.C. 1514A .....................................................................................................15

18 U.S.C. § 1514A(a)(1)....................................................................................11, 12

18 U.S.C. § 1514A(b)(2)(D)....................................................................................10

Cal. Civ. Code § 1636...............................................................................................19

Cal. Labor Code § 2922 ...........................................................................................18

Cal. Labor Code § 1102.5 ....................................................................................3, 15

Dodd-Frank Wall Street Reform Consumer Protection Act of 2010, Pub. L. No. 111-203 § 922, 124 Stat. 1376, 1841-49 (2010) ...................................................................................11

Labor Code section 1102.5(b).........................................................................................16

Labor Code sections 1102.5(b) and (c)..................................................................15, 16, 17

Sarbanes-Oxley Act ("SOX") .................................................................................3,.8, 12

## OTHER AUTHORITIES

29 C.F.R. § 1980.103(d) .................................................................................................10

7, *21 (ARB Jan. 10, 2010) ............................................................................................12

Restoring American Financial Stability Act of 2010, H.R. 4173, 111th ..........................9

Rule 12(b)(6)....................................................................................................................5

Wall Street Reform and Consumer Protection Act of 2009, H.R. 4173, 111th.............9

1    <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2    **TO PLAINTIFF JOSHUA BANKO AND TO HIS ATTORNEYS OF RECORD:**

3          **PLEASE TAKE NOTICE** that on Thursday, September 26, 2013, at 1:30 p.m., or as

4    soon thereafter as the matter may be heard in Courtroom 3 (17th Floor) of the above-entitled Court,

5    located at 450 Golden Gate Avenue, San Francisco, California, 94102, Apple Inc., ("Defendant" or

6    "Apple") will and hereby moves the Court for an order dismissing Plaintiff's first, second, third,

7    fourth and fifth claims for relief under FCRP 12(b)(1) and 12(b)(6) with prejudice on the grounds

8    that Plaintiff Joshua Banko ("Plaintiff") fails to state facts sufficient to establish a claim upon which

9    relief can be granted and on the grounds the Court lacks jurisdiction due to Plaintiff's failure to

10   exhaust his administrative remedies.

11         Apple's motion is based on this Notice, the Memorandum of Points and Authorities

12   set forth below, the files and records in this action, and any further evidence and argument that the

13   Court may receive at or before the hearing.

14   **I.     STATEMENT OF ISSUES TO BE DECIDED**

15         Apple's motion seeks dismissal of Plaintiff's complaint in its entirety with prejudice

16   presents the Court with the following issues for decision:

17           1.    Does Plaintiff's first claim for relief state facts sufficient to establish a claim

18   for violation of Dodd-Frank and/or SOX?

19           2.    Does Plaintiff's second claim for relief state facts sufficient to establish that

20   Apple wrongfully terminated his employment in violation of some unidentified fundamental public

21   policy?

22           3.    Does Plaintiff's third claim for relief state facts sufficient to establish that

23   Apple terminated his employment in retaliation for his engaging in a protected activity?

24           4.    Does Plaintiff's fourth claim for relief state facts sufficient to establish that

25   Apple breached some agreement to terminate his "at-will" employment under only certain

26   unidentified circumstances?

27           5.    Does Plaintiff's fifth claim for relief state facts sufficient to establish Apple

28   violated the implied covenant of good faith and fair dealing in terminating his employment?

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

2.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**II.     INTRODUCTION**

3       Plaintiff is a former "at-will" Apple employee who brings this meritless lawsuit based

4    on his contention that Apple unlawfully terminated his employment on January 14, 2013, because he

5    reported that one of his subordinates had allegedly padded her expense reports she submitted to

6    Apple in violation of Apple's internal policies and procedures.  Even assuming this was true, which

7    it is not, Plaintiff's allegations do not amount to a violation of the law.

8       As discussed below, Plaintiff has not and cannot establish the essential elements of

9    his five claims for relief for: (1) violation of the Dodd-Frank Act ("Dodd-Frank") (15 U.S.C. § 78u-

10   6) and the Sarbanes-Oxley Act ("SOX") (18 U.S.C. § 1514A); (2) wrongful termination in violation

11   of public policy; (3) retaliation in violation of Dodd-Frank, SOX, and/or California Labor Code

12   Section 1102.5; (4) breach of employment contract; and (5) breach of the implied covenant of good

13   faith and fair dealing.

14       Plaintiff's first and third claims under Dodd-Frank and SOX fail because he has not

15   alleged he engaged in any protected activity, and on the grounds that his Dodd-Frank and SOX

16   claims are barred by his failure to exhaust his necessary and jurisdictional pre-filing administrative

17   remedies.  His second claim for wrongful termination in violation of public policy fails because he

18   has identified no State or federal constitutional, statutory, or regulatory provision that Apple

19   allegedly violated in terminating his employment.  His fourth and fifth claims for breach of implied

20   contract and of the implied covenant of good faith and fair dealing fail because he has not and cannot

21   establish Apple breached any agreement it had to terminate his "at-will" employment under only

22   specified circumstances.

23       While Plaintiff may be unhappy with Apple's decision to terminate his employment,

24   he has not and cannot allege any facts establishing Apple violated any federal or State statute in

25   doing so.  Apple's motion should therefore be granted.

26

27

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

3.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1

III.     STATEMENT OF ALLEGATIONS

2              Plaintiff alleges he worked as an engineer for Apple from September 2000 until his

3    employment was terminated on January 14, 2013.  (Plaintiff's Complaint "Compl.," ¶¶9, 48.)  He

4    claims to have received multiple promotions, led numerous high profile projects, received numerous

5    outstanding performance reviews, received several merit based salary increases and discretionary

6    bonuses and was otherwise routinely complemented on his job performance during his employment.

7    (*Id*. at ¶¶ 9-22.)  He also claims his "performance never necessitated any performance improvement

8    plan, nor did Apple ever issue any negative written reviews."  (*Id*. at ¶11.)

9              He further alleges that in early 2012, he noticed that one of his direct reports, another

10   engineer called "Employee Roe," was allegedly submitting fraudulent charges on her expense

11   reports.  (*Id*. at ¶30.)  Plaintiff claims to have instructed Employee Roe to remove the charges from

12   her expense reports but she failed to do so.  (*Id*. at ¶31.)  Believing her alleged fraudulent charges

13   constituted a violation of Apple's policies and some unidentified "law," he believed he was required

14   to report her to his supervisor.  (*Id*. at ¶32.)  When his supervisor allegedly told him not to report

15   Employee Roe, Plaintiff proceeded in reporting the alleged conduct to Apple's management.

16   (Compl., ¶34.)  Plaintiff claims Apple conducted an investigation of his report and discovered she

17   had submitted over 40 fraudulent expense reports.  (*Id*. at ¶36.)

18             Because of Apple's investigation, Plaintiff claims he recommended Employee Roe be

19   fired.  (*Id*. at ¶37.)  Plaintiff claims his supervisors rebuffed his suggestion, and he thus made his

20   termination recommendation directly to Apple's Human Resources Department.  (*Id*. at ¶¶39-40.)

21   He claims Apple Human Resources' Business Partner held a meeting with his supervisors regarding

22   whether to fire Employee Roe.  (*Id*. at ¶42.)  Plaintiff alleges Apple terminated Employee Roe's

23   employment on about December 31, 2012.  (*Id*.)  Plaintiff claims his supervisors and others were

24   upset that he had reported Employee Roe's falsification of her expense reports and recommended her

25   termination.  (Compl., ¶43.)

26             Plaintiff alleges that on January 9, 2013, he was called into a meeting with his

27   supervisor and one of Apple Human Resources Department's Business Partners.  (*Id*. at ¶47.)  He

28   claims they pulled him off the project he was working on and told him to stay home the rest of the

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

4.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1    week and return to work on January 14, 2013.  (*Id.*)  He claims that when he returned to work on

2    January 14, 2013, Apple terminated his employment.  (*Id.*)

3    **IV.    LEGAL ARGUMENT**

4          **A.    Standard On A Rule 12(b)(6) Motion.**

5                In ruling on a motion to dismiss under Rule 12(b)(6), the court must determine

6    whether the plaintiff has stated a claim upon which relief may be granted.  *See* Fed. R. Civ. P.

7    12(b)(6); *Strigliabotti v. Franklin Resources, Inc.*, 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005)

8    (discussing the standards under Rule 12(b)(6)).  The Court should grant a motion to dismiss when a

9    set of facts pled, even if true, would not entitle the plaintiff to relief.  *Balistreri v. Pacifica Police*

10   *Dept.,* 901 F.2d 696, 699 (9th Cir. 1990) (as amended) (motion to dismiss warranted when there is

11   an "absence of sufficient facts alleged under a cognizable legal theory") (disapproved on other

12   grounds in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007)).

13               To survive a motion to dismiss, a Complaint must offer "more than labels and

14   conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

15   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And, although the court must assume the Complaint's

16   factual allegations are true, "legal conclusions need not be taken as true merely because they are cast

17   in the form of factual allegations."  *Silvas v. E\*Trade Mortg. Corp.*, 421 F.Supp.2d 1315, 1317 (S.D.

18   Cal. 2006).  "Nor is the court required to accept as true allegations that are  . . .  unreasonable

19   inferences."  *In re Gilead Sciences Securities Litigation,* 536 F.3d 1049, 1055 (9th Cir. 2008)

20   (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)).

21               Further, while the pleading standard under the Federal Rules of Civil Procedure "does

22   not require 'detailed factual allegations,' . . . it [certainly] demands more than an unadorned, the-

23   defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

24   *Twombly, supra*, 550 U.S. at 555).  A complaint that offers "'naked assertion[s]' devoid of 'further

25   factual enhancement'" is insufficient.  *Ashcroft,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

26   557).  Rather, factual allegations must "possess enough heft to show that the pleader is entitled to

27   relief."  *Twombly,* 550 U.S. at 557 (citations omitted).  A plaintiff must plead a "statement of

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

5.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1    circumstances, occurrences, and events in support of the claim presented." *Id.* at 556 n.3, citation

2    omitted.  As the Supreme Court stated in *Twombly,* 550 U.S. at 555:

3
            While a complaint attacked by Rule 12 (b)(6) motion to dismiss does not
4           need detailed factual allegations [citation], a plaintiff's obligation to
            provide the 'grounds' of his 'entitlement to relief' requires more than labels
5           and conclusions, and a formulaic recitation of the elements of a cause of
            action will not do [citation]. Factual allegations must be enough to raise a
6           right to relief above the speculative level . . . . [T]he pleading must contain
            something more . . . than . . .  a statement of facts that merely creates a
7           suspicion [of] a legally cognizable right of action . . . .  [citations].

8    Likewise, the court further noted in *Ashcroft v. Iqbal,* 556 U.S. at 678-79 that:

9
            A court considering a motion to dismiss can choose to begin by
10          identifying allegations that, **because they are mere conclusions, are not
            entitled to the assumption of truth. While legal conclusions can
11          provide the framework of a complaint, they must be supported by
            factual allegations.** When there are well-pleaded factual allegations, a
12          court should assume their veracity and then determine whether they
            plausibly give rise to an entitlement to relief. . . .
13

14          A pleading that offers "labels and conclusions" or "a formulaic recitation
            of the elements of a cause of action will not do." [Citation.]  Nor does a
15          complaint suffice if it tenders "naked assertion[s]" devoid of "further
            factual enhancement." [Citation.]
16

17          To survive a motion to dismiss, **a complaint must contain sufficient
            factual matter**, accepted as true, to "state a claim to relief that is plausible
18          on its face." [Citation.]  A claim has facial plausibility when the plaintiff
            pleads factual content that allows the court to draw the reasonable
19          inference that the defendant is liable for the misconduct alleged.
            [Citation.]   The plausibility standard is not akin to a "probability
20          requirement," but it asks for more than a sheer possibility that a defendant
            has acted unlawfully.  [Citation.]  Where a complaint pleads facts that are
21          "merely consistent with" a defendant's liability, it "stops short of the line
            between possibility and plausibility of 'entitlement to relief.'" [Citation.]
22

23          [O]nly a complaint that states a plausible claim for relief survives a motion
            to dismiss. [Citation.]  Determining whether a complaint states a plausible
24          claim for relief will, as the Court of Appeals observed, be a context
            specific task that requires the reviewing court to draw on its judicial
25          experience and common sense. [Citation.]   But where the well-pleaded
            facts do not **permit the court to infer more than the mere possibility of
26          misconduct, the complaint has alleged--but it has not "show[n]"—
            "that the pleader is entitled to relief."** Fed. Rule Civ. Proc. 8(a)(2).
27

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

6.                                    Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1   *Ashcroft* 556 U.S. at 678-679 (emphasis added).  A court should not assume that a plaintiff can prove

2   facts not alleged.  *Twombly,* 550 U.S. at 563 n.8 (quoting *Associated Gen. Contractors of Calif., Inc.*

3   *v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983)).  If a plaintiff's allegations do

4   not bring his "claims across the line from conceivable to plausible, [his] complaint must be

5   dismissed." *Twombly,* at 570.   As discussed below, Plaintiff's Complaint fails to allege facts

6   establishing his five claims for relief under this pleading standard.

7          **B.     Plaintiff Has Not Alleged Facts Establishing His First Claim For Relief For An**
              **Alleged Violation Of The Dodd-Frank Act (15 U.S.C. § 78u-6).**
8

9          Plaintiff's first claim for relief fails as a matter of law because he has alleged no facts

10  establishing he engaged in any protected activity and his claims are barred by the statute of

11  limitations.

12          **1.     Plaintiff Is Not A Whistleblower Under Dodd-Frank.**

13          Plaintiff cannot state a claim for relief under Dodd-Frank because he did not make a

14  report to the Securities and Exchange Commission ("SEC") and therefore does not meet the statutory

15  definition of a "whistleblower."  Congress could not have been more clear: the anti-retaliation

16  provision of Dodd-Frank prohibits actions taken against "whistleblowers."  15 U.S.C. § 78u-

17  6(h)(1)(A). A "whistleblower" is defined as "any individual who provides, or 2 or more individuals

18  acting jointly who provide, information relating to a violation of the securities law ***to the [Securities***

19  ***and Exchange] Commission*** . . . ." *Id.* § 78u-6(a)(6) (emphasis added).  Congress mandated this

20  definition "shall apply" to the entire statute, including the anti-retaliation subsection.  *Id.* at §78u-

21  6(a).   "[T]he whistleblower-protection provision [of Dodd-Frank] unambiguously requires

22  individuals to provide information relating to a violation of the securities laws *to the SEC* to qualify

23  for protection from retaliation . . . ." *Asadi v. G.E. Energy, No.* 12-20522, 2013 U.S. App. LEXIS

24  14470, *27 (5th Cir. July 17, 2013) (emphasis in original).  Plaintiff has not claimed – and cannot

25  claim – that he reported any information to the SEC.  (See Compl., *passim*.)  He is not a

26  "whistleblower" as defined by Dodd-Frank and the Court should dismiss his first claim for relief in

27  its entirety with prejudice.

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

7.                                          Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1           To avoid this fatal defect, Plaintiff asserts he is protected under Dodd-Frank because

2   his internal complaints were "required or protected under the Sarbanes-Oxley Act ("SOX")."

3   (Compl., ¶50.)  The only appellate court to consider this argument, however, has explicitly rejected

4   this misinterpretation of the statute.   In *Asadi*, the Fifth Circuit held that Dodd-Frank's anti-

5   retaliation protections apply only to individuals who have provided information to the SEC.  *Asadi,*

6   *supra,* 2013 U.S. App. LEXIS 14470, at *13.  Like Plaintiff here, the plaintiff in *Asadi* argued his

7   claim fell within Dodd-Frank's purview because his internal complaints were still "required or

8   protected" under SOX.  The Fifth Circuit concluded this was a clear misreading of the statute.  *Id*.

9   As the court explained, subsection (a) of Dodd-Frank provides definitions for certain terms used

10  throughout the statue.  Included in this list is the term "whistleblower," which is defined as "any

11  individual who provides or 2 or more individuals acting jointly who provide, information relating to

12  a violation of the securities laws ***to the Commission*** . . . ."  15 U.S.C. § § 78u-6(a)(6) (emphasis

13  added).  Subsection (h) of Dodd-Frank then accords these whistleblowers a private right of action

14  against employers who take retaliatory actions against them for engaging in certain enumerated

15  protected activities:

16          No employer may discharge, demote, suspend, threaten, harass,
17          directly or indirectly, or in any other manner discriminate against, ***a***
            ***whistleblower*** in the terms and conditions of employment because of
18          any lawful act done by ***the whistleblower***—

19          (i) in providing information to the Commission in accordance with this
            section;

20          (ii) in initiating, testifying in, or assisting in any investigation or
21          judicial or administrative action of the Commission based upon or
            related to such information; or

22          (iii) in making disclosures that are required or protected under the
23          Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities
            Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section
24          10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18,
            and any other law, rule, or regulation subject to the jurisdiction of the
25          Commission.

26  § 78u-6(h)(1)(A) [emphasis added].

27          The statutory language conditions that the protections in subsection (h) ***only apply to***

28  ***an individual who has already qualified as a "whistleblower" under the statute***.  *Asadi, supra,*

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

8.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

2013 U.S. App. LEXIS 14470, at **16-17 ("Importantly, the placement of the three categories of protected activity in subsection (h) follows the phrase '[n]o employer may discharge . . . or in any other matter discriminate against, *a whistleblower* . . . because of any lawful act done by *the whistleblower* . . . .'" § 78u-6(h)(1)(A)) (emphasis in original).

Plaintiff's expansion of the term "whistleblower" contradicts the unambiguous language of the statute. "The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). The fact that Congress used "the term 'whistleblower,' [in subsection (h)] as compared with terms such as 'individual' or 'employee,' is significant." *Asadi*, 2013 U.S. App. LEXIS 14470, at **17-18. Congress deliberately selected the word "whistleblower" rather than the word "employee" or "person" and this Court must enforce the plain language of the statute. *Id.* "It is axiomatic that the statutory definition of the term excludes unstated meanings of that term." *Meese v. Keene*, 481 U.S. 465, 484 (1987).

The legislative history of Dodd-Frank confirms that Congress intentionally chose the more restrictive term "whistleblower" when drafting the law's anti-retaliation provision. The anti-retaliation provision in the bill originally passed by the House of Representatives did not use the term "whistleblower" but instead prohibited adverse employment actions against "***an employee, contractor, or agent*** in the terms and conditions of employment . . . ." Wall Street Reform and Consumer Protection Act of 2009, H.R. 4173, 111th Cong. § 7203(g)(1)(A) (p. 1114) (1st Sess. 2009) (emphasis added). The Senate's version, which provided the basis for the enacted text, restructured the provision and replaced the phrase "employee, contractor, or agent" with the term "whistleblower" defined as "any individual who provides, or 2 or more individuals acting jointly, who provides information relating to a violation of the securities laws ***to the Commission*** . . . ." Restoring American Financial Stability Act of 2010, H.R. 4173, 111th Cong. §§ 922(a)(6) (p. 976), (h)(1)(A) (pp. 983-984) (2d Sess. 2010) (emphasis added). "Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardozo Fonesca*,

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1   480 U.S. 421, 442-43 (1987).  Congress clearly intended Dodd-Frank's anti-retaliation provisions to

2   only apply to a "whistleblower," defined as an individual who reports information to the SEC.

3          Plaintiff's attempt to expand Dodd-Frank's definition of a "whistleblower" would

4   impermissibly render statutory text superfluous.  "It is a cardinal principle of statutory construction

5   that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause,

6   sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19,

7   31 (2001) (citations omitted).  Section 78u-6(h)(1)(A) defines a "whistleblower" as any individual

8   who reports information regarding securities violations to the SEC.  Plaintiff seeks to impermissibly

9   broaden this definition to include employees who make only internal complaints.

10         As explained by the Fifth Circuit, "[Plaintiff's] suggested statutory construction

11  would read the words 'to the Commission' out of the definition of 'whistleblower' for purposes of

12  the whistle-blower protection provision.  Construing the statute in this manner would violate the

13  surplusage canon, that every word is to be given effect."  *Asadi, supra*, 2013 U.S. App. LEXIS

14  14470, at **23-24.  Accordingly, Plaintiff's Dodd-Frank claim is based on an erroneous reading of

15  the statute and must be dismissed with prejudice.  Without allegations that he reported a securities

16  law violation to the SEC, Plaintiff cannot state a claim for relief under Dodd-Frank.

17              **2.      The Court Lacks Jurisdiction Over Plaintiff's SOX Allegations Which**
                          **Are Barred By The Statute Of Limitations And SOX's Administrative**
18                        **Procedure Requirements.**

19

20         Plaintiff's claims for relief under SOX likewise founders because he failed to file a

21  charge with the United States Secretary of Labor within 180 days of his termination.  Individuals

22  who bring a SOX anti-retaliation claim must first file a complaint with the Secretary of Labor within

23  180 days of the alleged violation, and are only permitted to sue in federal court if the Secretary has

24  not issued a final order within 210 days.  18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(d); 12

25  U.S.C. § 5567(c)(4)(D).  Plaintiff alleges that Apple terminated his employment on January 14,

26  2013.  (Compl., ¶48.)  Plaintiff had to file his complaint with the Secretary of Labor by July 15,

27  2013.  Plaintiff has not done so and his SOX claims are now time-barred.  See *Coppinger-Martin v.*

28  *Nordstrom, Inc.*, 627 F.3d 745, 749 (9th Cir. 2010) (holding plaintiff's SOX was untimely because

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

10.                                          Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1  statute of limitations ran from date she learned of her actual injury).  Plaintiff's failure to file with

2  the Secretary of Labor prior to filing his claim with this Court likewise precludes his recovery as a

3  matter of law.  Further, Plaintiff's failure to file with the Secretary of Labor within the statutorily-

4  prescribed timeframe cannot be excused because he had sufficient information to know of his claim

5  at the time of his termination and he had secured counsel and filed this lawsuit before the statute of

6  limitations expired.  *Id.* at 750.

7          Plaintiff cannot recast his SOX allegations as a Dodd-Frank claim to circumvent

8  SOX's statute of limitations and administrative procedure requirements.  Once again, *Asadi* rejected

9  this argument, reasoning that, if it held otherwise, "the SOX anti-retaliation provision, and most

10  importantly, its administrative scheme, for practical purposes, would be rendered moot."  *Asadi*,

11  2013 U.S. App. LEXIS 14470, at **26-27.    Unlike SOX, Dodd-Frank does not have an

12  administrative procedure requirement and affords a six to ten-year statute of limitations period.  15

13  U.S.C. § 78u-6(h).  If, as Plaintiff contends, a SOX violation can serve as a predicate basis for a

14  Dodd-Frank claim, then SOX's carefully-crafted administrative scheme would become a nullity.

15  This is particularly troublesome because Congress amended SOX's statute of limitations from 90 to

16  180 days in another section of Dodd-Frank.  See, Dodd-Frank Wall Street Reform Consumer

17  Protection Act of 2010, Pub. L. No. 111-203 § 922, 124 Stat. 1376, 1841-49 (2010).  It would defy

18  logic for Congress to tweak SOX's administrative scheme in one section of Dodd-Frank, while at the

19  same time intending for Dodd-Frank's anti-retaliation provision to render the SOX limitation period

20  moot.  *Asadi*, 2013 U.S. App. LEXIS 14470, at **26-27.

21          **3.      Plaintiff's Communications Were Not Required or Protected Under SOX.**

22          Even if Plaintiff can establish that a SOX claim can be the basis for a Dodd-Frank

23  claim, he cannot as a matter of law establish his reports regarding another employee's expense

24  reports sufficiently involved shareholder fraud to constitute protected activity under SOX.  "[T]o

25  constitute 'protected activity' under SOX, the allegation must 'definitively and specifically' relate to

26  one of the list categories of fraud or securities violations under 18 U.S.C. § 1514A(a)(1)."  *Van*

27  *Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009); *Day v. Staples Inc.*, 555 F.3d 42,

28  55 (1st Cir. 2009).  This means that, "to be protected under [SOX], an employee's disclosure must

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

11.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1    be related to illegal activity that, at its core, involves shareholder fraud." *Livingston v. Wyeth, Inc.*,

2    2006 U.S. Dist. LEXIS 52978, at *30 (M.D.N.C. July 28, 2006) aff'd 520 F.3d 344 (4th Cir. 2008).

3    See, e.g., *Allen v. Dep't. of Labor*, 514 F.3d 468, 479-480 (5th Cir. 2008) (there must be an intent to

4    defraud shareholders); *Fraser v. Fiduciary Trust Co. Int'l*, 417 F.Supp.2d 310, 323-34 (S.D.N.Y.

5    Aug. 25, 2006) aff'd, 396 Fed. Appx. 734 (2d Cir. 2010) (dismissing claimant's complaint for failure

6    to demonstrate that claimant actually complained of illegal activity, as opposed to violating internal

7    policy); *Bishop v. PCS Admin., Inc.*, 2006 U.S. Dist. LEXIS 37230, **30-32 (N.D. Ill. May 23,

8    2006) (concluding the phrase "relating to fraud against shareholder" must be read as applying to all

9    violations enumerated under § 1514A(a)(1)); *Gale v. World Fin. Group*, 2006-SOX-43 (Dep't. of

10   Labor June 9, 2006) ("The phrase 'relating to fraud against shareholders' in [§ 1514A] must be read

11   as modifying each item in the series, including 'rule or regulations of the [SEC]'") (quoting *Bishop*

12   *v. PCS Admin., Inc.*, 2006 U.S. Dist. LEXIS 37230 (N.D. Ill.  May 23, 2006)).

13          The alleged shareholder fraud must be "material" and "a mere possibility that a

14   challenged practice could adversely affect the financial condition of a corporation, and that the effect

15   on the financial condition could in turn be intentionally withheld from investors, is not enough" to

16   constitute protected activity.  *Robinson v. Morgan Stanley*, No. 07-070, 2010 DOLSOX LEXIS 7,

17   *21 (ARB Jan. 10, 2010); see also *Livingston, supra*, 2006 U.S. Dist. LEXIS 52978, at *33 (holding

18   that "under Supreme Court authority, for information to be material, there must be a substantial

19   likelihood that a reasonable shareholder would consider [the matter] important to his decision to

20   invest"); *Godfrey v. Union Pac. R.R. Co.*, ARB Case No. 08-088, *4 (July 30, 2009) ("employee

21   must ordinarily complain about a material misstatement of fact (or omission) concerning a

22   corporation's financial condition on which an investor would reasonably rely").

23          Even taking Plaintiff's allegations at face value, his reports regarding an employee's

24   inaccurate expense reports do not constitute a complaint regarding shareholder fraud to constitute

25   protected activity under SOX.  *In Riddle v. First Tenn. Bank Nat'l Assoc.*, 2012 U.S. App. LEXIS

26   18684, at **19-21 (6th Cir. Aug. 31, 2012), the plaintiff reported to his superiors that a fellow

27   employee made improper cash advances on a corporate credit card and submitted inaccurate expense

28   reports.  The Sixth Circuit Court of Appeals dismissed plaintiff's SOX claim, reasoning he "failed to

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

12.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1    show how [the accused employee's] behavior constituted a misrepresentation to shareholders that

2    resulted in a loss.  [Plaintiff's] belief that [the employee's] gift card practices violated SOX is not

3    itself an objectively reasonable belief that shareholders have been or were likely to be defrauded."

4    *Id*. at 21.  Similarly, Plaintiff's complaints about an employee's failure to follow Apple's internal

5    expense report procedures did not involve shareholder fraud and are thus not protected under SOX.

6    Moreover, the total dollar amount in "Employee Roe's" allegedly fraudulent expenses would have

7    been entirely immaterial to investors.  *Livingston, supra*, 2006 U.S. Dist. LEXIS 52978, at *33.  It is

8    preposterous for Plaintiff to assert that discrepancies in a single employee's expense reports could be

9    material to Apple's overall disclosed financial records.  There are no allegations, that Employee

10   Roe's allegedly inaccurate expense reports would have any material effect on Apple.  Plaintiff's

11   alleged complaints were neither "required [nor] protected" under SOX as a matter of law, and the

12   Court should dismiss Plaintiff's first and third claims for relief under SOX in their entirety with

13   prejudice.

14           **C.     Plaintiff's Second Claim For Relief For Wrongful Termination Should Be
                     Dismissed As He Has Failed To Allege A Violation Of Public Policy**
15

16           In *Tameny v. Atlantic Richfield Co*., 27 Cal.3d 167 (1980), the California Supreme

17   Court recognized a narrow exception to California's "at-will" employment doctrine and held that

18   "[a]n employer's traditional broad authority to discharge an at-will employee 'may be limited by

19   statute . . . or by considerations of public policy.'"  *Id*. at 172, citations omitted.  Thus, the Court

20   recognized the existence of a tort claim arising from a public policy violation.

21           Wrongful termination claims based on violating a fundamental public policy must be

22   tethered to some recognized statutory or regulatory provision.  *Stevenson v. Superior Court,* 16

23   Cal.4th 880, 887-894 (1997).  A discharge is actionable as against public policy only if it violates a

24   policy that is: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense

25   that it 'inures to the benefit of the public' rather than serving merely the interests of the individual;

26   (3) well established at the time of the discharge; and (4) 'substantial' and 'fundamental.'"  *Carter v.*

27   *Escondido Union High School District,* 148 Cal.App.4th 922, 929 (2007) (quoting *Stevenson v.*

28   *Superior Court* 16 Cal.4th 880, 901–902 (1997)).

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

13.                                      Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1       To bring a cognizable public policy claim, Plaintiff must show: (1) that Defendant

2  violated some statute or regulation (or that Plaintiff had a reasonable belief that Defendant did so);

3  and (2) that the violation was tethered to an important and fundamental public policy articulated in

4  the statute or regulation. See *Gant v. Sentry Insurance*, 1 Cal.4th 1083, 1095 (1992); *Sequoia Ins.*

5  *Co. v. Superior Court* 13 Cal.App.4th 1472, 1475 (1993) (a showing the employer's conduct was

6  "specifically prohibited" by statute is a "foundational requirement" for wrongful termination claims).

7  In *Foley v. Interactive Data Corp.,* 47 Cal.3d 654 (1988), the California Supreme Court recognized

8  that no tort claim can typically exist for employment related conduct, such as termination of

9  employment, absent some violation of public policy. *Foley,* 47 Cal.3d. at 671.

10       Here, Plaintiff cites no actual public policy or statute to support his wrongful

11  termination claim. Rather he only makes vague reference to "the law." (Compl., ¶63.) He claims

12  "Apple's officers and/or management advised [him] not to pursue the investigation and/or

13  termination of Employee Rose who had been found to embezzle funds on 40 separate occasions in

14  violation of Apple policy and the law." (*Id.*) In Paragraph 65 of the Complaint, Plaintiff states:

15  "[a]s a proximate result of [Plaintiff's] conduct as described in Paragraph 63, above, and in violation

16  of public policy as set forth in Paragraph 64 above, Apple terminated [Plaintiff's] employment."

17  Nowhere in his wrongful termination claim, however, does Plaintiff cite any statute which stands for

18  the proposition that advising an individual not to pursue an investigation or terminating an employee

19  for allegedly padding expense reports violates any statute or law. Plaintiff cites nothing at all which

20  even remotely constitutes a "public policy" supporting a wrongful termination claim. *Gant, supra*, 1

21  Cal. 4th at 1095.

22       Moreover, Plaintiff's reliance on Employee Roe's alleged violation of Apple's

23  internal policies is completely insufficient as a matter of law. The law is clear that alleged violations

24  of internal practices that affect only the employer's or employee's interest, and not the general

25  public's interest, cannot support a public policy claim. *Foley, supra*, 47 Cal.3d at 669-671; see also

26  *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1257 (1994) ("[t]he tort of wrongful discharge is not

27  a vehicle for enforcement of an employer's internal policies or the provisions of its agreements with

28  others").

1  There is not a single statute referenced, nor does Plaintiff explain the "law" and

2  Courts have routinely rejected public policy claims "unaccompanied by citations to specific statutory

3  or constitutional provisions.'" *Green v. Ralee Engineering Co.,* 19 Cal. 4th 66, 83 (1988) (citing

4  *Turner, supra*, 7 Cal. 4th at 1257.)  "The omission 'puts [the defendant] and the court in the position

5  of having to guess at the nature of the public policies involved, if any.  This kind of showing plainly

6  cannot create an issue of material fact justifying a trial on the merits of [the plaintiff's] claims.'"

7  *Ibid*.   Without citation to a statute which establishes Plaintiff's wrongful termination claim,

8  Plaintiff's wrongful termination claim must be dismissed.

9      **D.**    **Plaintiff Has Not Alleged Facts Establishing The Essential Elements Of His Third Claim For Relief For Retaliation.**

10  In his third claim for relief, Plaintiff alleges that Apple retaliated against him in

11  violation of Dodd Frank, 15 U.S.C. § 78u-6, SOX, 18 U.S.C. 1514A, and California Labor Code

12  Section 1102.5.   To establish a *prima facie* claim of retaliation, Plaintiff must plead facts

13  establishing: (1) he engaged in a protected activity; (2) that Apple subjected him to an adverse

14  employment action; and (3) there was a causal link between his protected activity and the adverse

15  action. See *Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 506 (9th Cir.

16  2000); *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 868 (9th Cir. 1996); *Love v. Motion

17  Industries, Inc*., 309 F.Supp.2d 1128, 1134 (N.D. Cal. 2004).  Plaintiff cannot do so.

18  As established above, Plaintiff has not and cannot establish he engaged in any

19  protected activity under Dodd Frank and/or SOX and that his claims under SOX are time barred for

20  his failure to exhaust his administrative remedies.   He therefore cannot establish that Apple

21  unlawfully retaliated against him under these statutes as a matter of law.

22  Plaintiff also cannot establish he engaged in any activity protected by California

23  Labor Code section 1102.5.  Labor Code sections 1102.5(b) and (c) make it an unlawful employment

24  practice for an employer to:

25      [b] retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has

26      reasonable cause to believe that the information discloses a violation of

27      state or federal statute, or a violation or noncompliance with a state or federal rule or regulation, [or;]

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

15.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1    [c] retaliate against an employee for refusing to participate in an activity
2    that would result in a violation of state or federal statute, or a violation or
     noncompliance with a state or federal rule or regulation.

3    As an initial matter, Plaintiff has alleged no facts establishing he ever complained of

4    any alleged violation of a state or federal statute, or a violation or noncompliance with a state or

5    federal rule or regulation to a government or law enforcement agency.   At most, he claims he

6    reported Employee Roe's alleged improper actions to Apple.   These complaints cannot establish a

7    violation of Section 1102.5(b) as a matter of law.   *Green, supra,* 19 Cal.4th at 77 (stating Labor

8    Code section 1102.5(b) "does not protect plaintiff, who reported his suspicions [of illegal activity]

9    directly to his employer").   Moreover, Plaintiff has not alleged what statute he believes Employee

10   Roe's alleged conduct violated.   Plaintiff alleges Apple's management told him not to investigate or

11   fire Employee Roe and he was terminated shortly thereafter.   (Compl., ¶37-38.)   Plaintiff claims this

12   "violated the law" but cites no statute which requires an employer to investigate or fire an employee

13   for inflating an expense report – as of course there is no such law.   *Edgerly v. City of Oakland,* 211

14   Cal.App.4th 1191 (2012).   He therefore also cannot establish the essential element for this cause of

15   action that he actually reported a violation of a state or federal statute or noncompliance with a rule

16   or regulation.   Cal. Labor Code § 1102.5(b).

17   Plaintiff also cannot establish he was terminated for refusing to participate in an

18   activity that would result in violating a State or federal statute, or a violation or noncompliance with

19   a state or federal rule or regulation for the purposes of Labor Code section 1102.5(c).   While

20   Plaintiff claims he was fired for "refusing to participate in an activity that would result in a violation

21   of a State of federal statute, or a violation or noncompliance with a state of federal rule or

22   regulation," his Complaint is devoid of any factual allegations supporting this conclusion.   (Compl.,

23   ¶75.)   Plaintiff's alleged refusal to not pursue Employee Roe's alleged improper expense reports

24   does not constitute refusing to participate in an activity that would cause a violation of state or

25   federal statute for the purposes of Section 1102.5(c) as a matter of law.

26   The recent case of *Edgerly v. City of Oakland* is completely analogous to Plaintiff's

27   Section 1102.5(c) claims and shows this claim fails as a matter of law.   *Edgerly, supra,* 211

28   Cal.App.4th at 1191.   The plaintiff in *Edgerly* was Oakland's City Administrator who alleged the

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

16.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1    City of Oakland terminated her employment in retaliation for her refusal to approve expense

2    reimbursement requests submitted by the Mayor she believed violated the City's rules and

3    regulations.  *Id*. at 1194-1196.  She sued the City alleging among other causes of action, unlawful

4    retaliation in violation of Section 1102.5(c) which was dismissed by the trial court on demurrer.  *Id*.

5           The Appellate Court affirmed the dismissal because Plaintiff had identified no State

6    or federal statute, rule or regulation violated by the Mayor's alleged conduct.  *Id*. at 1200-1201.  At

7    most, the conduct violated the City's charter.  *Id*.  The Court held the City's charter, much like an

8    employer's own internal policies and procedures, is not a State or federal statute, rule or regulation.

9    *Id*.  Plaintiff's alleged termination for refusing to approve the expenses could not establish a

10   violation of Labor Code section 1102.5(c) as a matter of law.  See also, *Mueller v. County of Los*

11   *Angeles,* 176 Cal.App.4th 809, 822 (2009) (holding that complaints regarding internal procedures

12   "such as transferring employees, writing up employees, and counseling employees are personnel

13   matters" and do "not rise to the level of whistleblower retaliation" as a matter of law).

14          Here, Plaintiff, like the plaintiff in *Edgerly,* alleges throughout his Complaint that he

15   complained that Employee Roe had padded her expense reports in violation of Apple's internal

16   policies.  (Compl., ¶32.)  There are no allegations that he was asked to do anything which would

17   violate any law, statute, or regulation.  Moreover, Plaintiff has not alleged that an employee's

18   alleged padding her expense report in violation of an employer's internal policies or procedures

19   violates any State or federal statute, rule or regulation.  As the *Edgerly* Court held, it does not.

20   *Edgerly, supra,* 211 Cal.App.4th at 1204.  Accordingly, as with Plaintiff's Dodd-Frank and SOX

21   retaliation claims, Plaintiff's Section 1102.5(c) claim fails and must be dismissed with prejudice.

22          **E.     Plaintiff Has Not Alleged Facts Establishing The Essential Elements Of His
                     Fourth Claim For Relief For Breach Of Contract.**

23

24          Plaintiff's fourth claim for relief is premised on his contention that he had an implied

25   agreement with Apple that Apple would not "arbitrarily" terminate his employment.  (Compl., ¶83.)

26   Plaintiff, however, has failed to allege any facts establishing Apple agreed to any such term or

27   agreed to employ him on any basis other than "at-will."  Even if Plaintiff could establish Apple

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

17.

Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1  agreed to alter the "at-will" nature of his employment in some fashion, he has alleged no facts

2  establishing under what circumstances he contends that Apple could terminate his employment.

3  It is well-established in California at an employment having no specified term is

4  presumed to be on an "at-will" basis.  Cal. Labor Code § 2922; *Guz v. Bechtel National, Inc.*, 24

5  Cal.4th 317, 335 (2000).  This means that either the employer or the employee can terminate the

6  employment relationship "'at any time without cause,' for any or no reason" at all.  *Guz*, 24 Cal.4th

7  at 335.  While the presumption of "at-will" employment can be altered by a written or oral

8  agreement between the employer and the employee, it is also well established by California's

9  Legislature and its Supreme Court that an employee must present substantial evidence of an

10  employer's actual intent to employ the employee on a basis other than "at-will" to establish a

11  departure from the "at-will" presumption.  *Guz*, 24 Cal.4th at 335-336.

12  As the *Guz* Court held:

13  [a]bsent other evidence of the employer's intent, longevity, raises and
   promotions are their own reward for the employee's continuing valued
14  service; they do not, *in and of themselves*, additionally constitute a
   contractual guarantee of future employment security.  A rule granting such
15  contractual rights on the basis of successful longevity alone would
   discourage the retention and promotion of employees.
16

17  *Guz*, 24 Cal.4th at 342 (emphasis in original).  The *Guz* Court also held that a statement by a

18  representative of the employer that "his understanding [was] that [the employer] terminated workers

19  only with 'good cause' or for 'lack of [available] work'" was "insufficient as a matter of law to

20  permit a finding that the company, by an unwritten practice or policy on which employees

21  reasonably relied, had contracted away its right to discharge [its employees] at will."  *Id.* at 345.

22  Plaintiff's allegation regarding some unidentified alleged agreement by Apple to limit its statutory

23  right to terminate its employees "at will" fails for the same reasons as the plaintiff's in *Guz*.

24  Here, Plaintiff does not allege his employment with Apple was for any specified term.

25  He is therefore presumed to be employed on an "at-will" basis.  Cal. Labor Code § 2922; *Guz, supra*,

26  24 Cal.4th at 335.  Plaintiff has not alleged anyone at Apple ever told him that he would be

27  terminated only for good cause, or upon some other specified circumstances.  *Guz*, 24 Cal.4th at 341.

28  Rather, Plaintiff's contention that Apple contractually agreed to alter the "at-will" nature of his

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

18.

Case No. CV13-02977

1   employment is based on his claim that: (1) he had been "employed by Apple for 12 years" and

2   "consistently received either good or excellent performance evaluations and merit raises" and

3   discretionary bonuses; (2) he was "assured on numerous occasions that he would not be terminated

4   arbitrarily;" (3) his supervisor told him that she "would support him and back him up with respect to

5   continued employment"; and (4) that "Apple normally has a course of conduct and a policy of

6   putting employees on performance improvement plans prior to terminating them." (Compl., ¶¶ 9-22,

7   81, 82.)

8           First, Plaintiff's longevity of service, performance evaluation, merit raises, bonuses,

9   and promotions do not evidence any intent by Apple to alter the "at-will" nature of his employment

10  as a matter of law. *Guz, supra,* 24 Cal.4th at 342 ("longevity, raises, and promotions . . . do not . . .

11  constitute a contractual guarantee of future employment security"); *Horn v. Cushman & Wakefield*

12  *Western, Inc.,* 72 Cal.App.4th 798, 818-19 (1999) (same).

13          Second, his claims that he "was assured on numerous occasions that he would not be

14  terminated arbitrarily" and that his supervisor would "back-up" and "support" him regarding his

15  employment at Apple" are also completely insufficient to alter the "at-will" nature of his

16  employment. As an initial matter, such allegations are nothing more than an impermissible legal

17  conclusion not considered on a motion to dismiss. *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 849

18  (1965) ("[a]llegations that the acts of [the defendants] were 'arbitrary, capricious, fraudulent,

19  wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere

20  conclusions of law which are not to be deemed admitted by a demurrer") (quoting *Faulkner v.*

21  *California Toll Bridge Authority*, 40 Cal.2d 317, 329 (1953)). Such allegations do not evidence a

22  protectable right to continued employment. *Allen v. Beverly Hills*, 911 F.2d 367, 371 (9th Cir. 1990)

23  ("[w]here the only substantive restriction placed on [an employer] is that its decision to terminate

24  employment must be 'reasonable,' or in 'good faith,' any claim to a protected property interest . . . is

25  negated.")

26          Even if these allegations are not impermissible conclusions, they are far too vague to

27  constitute an enforceable contractual provision as a matter of law. Courts seek to enforce the

28  contracting parties' actual agreement. Cal. Civ. Code § 1636. To do this, Plaintiff must establish

LITTLER MENDELSON, P.C.
50 W. San Fernando St.
San Jose, CA 95113.2303
408.998.4150

19.

Case No. CV13-02977
DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

what circumstances constitute an "arbitrary" termination decision from those that do not. Absent defining the term, the Court and the trier of fact cannot determine if the termination decision violated the parties' alleged agreement.

Finally, Plaintiff's contention that "Apple normally has a course of conduct and a policy of putting employees on performance improvement plans prior to terminating them" does not support his breach of contract claim. (Compl., ¶82.)  Even if true, this allegation means, at most, that Apple would first give a poor performing employee the opportunity to improve his/her performance if it would terminate their employment for job performance reasons.  It would not alter Apple's ability to terminate an "at-will" employee for reasons other than for performance.  Even if true, this allegation is no help to Plaintiff.  Plaintiff does not allege that Apple terminated his employment for poor performance.  In fact, Plaintiff unambiguously claims his job performance was never anything less than completely spectacular.  (Compl., ¶¶8-14, 16-22, 45-46.)  In addition, during the meeting in which his employment was terminated, Plaintiff states "there was no mention of poor performance on the part of [Plaintiff]." (Compl., ¶48.)

Plaintiff's allegations on which this claim for relief is based are no more than those California's Courts have consistently found insufficient to rebut the presumption of "at-will" employment as a matter of law.  *Guz, supra,* 24 Cal.4th at 342, 345; *Horn, supra,* 72 Cal.App.4th at 819 ("[i]n our view, [the plaintiff's] evidence of positive performance reviews, commendations, salary increases, and vague assurances that [the plaintiff] would become a sales manager was not sufficient to create a triable issue of fact as to whether the parties had implicitly agreed [the company's] right to terminate [the plaintiff] would be limited.  Most of those factors are 'natural occurrences of an employee who remains with an employer for a substantial length of time.'"); *Kovatch v. Cal. Casualty Management Co*., 65 Cal. App. 4th 1256, 1275-1277 (1998) (same) (overruled on other grounds in *Aguilar v. Atlantic Richfield Co*., 25 Cal. 4th 826 (2001)).  Plaintiff's fourth claim for relief should therefore be dismissed.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

20.                                          Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

1

**F.      Plaintiff's Fifth Claim For Relief Breach Of The Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law.**

2

3      There is no tort remedy available for breach of the implied covenant in the

4  employment context when, as here, the cause of action is based on facts identical to a breach of an

5  implied contract claim.  *Foley, supra,* 47 Cal.3d at 700 (abolishing tort remedies for breach of the

6  implied covenant in wrongful termination of employment cases).   This reasoning has been

7  repeatedly recognized by the Appellate Courts and affirmed by the California Supreme Court in *Guz,*

8  *supra,* 24 Cal.4th at 352-353.  The *Guz* Court expressly limited the ability of a plaintiff to assert a

9  claim for breach of the implied covenant of good faith and fair dealing in the employment context.

10  The Court held that a plaintiff may not recover on such a claim for the alleged breach of obligations

11  not contained in the underlying contract because "the covenant of good faith and fair dealing . . .

12  exists merely to prevent one contracting party from unfairly frustrating the other party's right to

13  receive the *benefits of the agreement actually made.*"  *Id.* at 349 (emphasis in original).  As further

14  stated by the Court, "insofar as the employer's acts are directly actionable as a breach of an implied-

15  in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is

16  superfluous." *Id.* at 352.  Rather, "the remedy for breach of an employment agreement, including

17  the covenant of good faith and fair dealing implied by law therein, is *solely contractual.*"  *Ibid.*

18  (emphasis in original) (finding that "allegations that a breach was wrongful, in bad faith, arbitrary,

19  and unfair are unavailing").

20      In his fifth claim for relief, Plaintiff alleges that Apple breached the implied covenant

21  of good faith and fair dealing contained in the alleged employment contract by, among other things,

22  terminating Plaintiff's employment. (Compl., ¶95).  His breach of contract and breach of the implied

23  covenant claims are both based upon the premise that Apple breached both the alleged employment

24  agreement and the implied covenant by wrongfully terminating Plaintiff's employment. (*Id.* at ¶¶92-

25  96.)  Plaintiff pleads no unique facts to support his breach of the covenant of good faith and fair

26  dealing.  Moreover, Plaintiff is seeking the same damages on both claims – an alleged "losses in

27  earning and other employment benefits, to his damage" because of Defendants' alleged breach. (*Id.*

28  at ¶¶88, 98.)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

21.

Case No. CV13-02977

1    Plaintiff's implied covenant claim is superfluous, does not constitute a valid cause of

2    action as a matter of law and should be dismissed.  See *Guz, supra,* 24 Cal.4th at 352; *Bionghi v.*

3    *Metro Water Dist.*, 70 Cal.App.4th 1358, 1370 (1999).  Accordingly, Defendant's motion to dismiss

4    Plaintiff's fifth claim for relief should be granted.

5    **V.    CONCLUSION**

6    Apple respectfully requests the Court issue and order dismissing Plaintiff's Complaint

7    in its entirety without leave to amend.

8    Dated: August 5, 2013

9

10   //s// Todd K. Boyer
     TODD K. BOYER
11   LITTLER MENDELSON, P.C.
     Attorneys for Defendant
12   APPLE INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 15th Floor
San Jose, CA  95113.2303
408.998.4150

22.                                    Case No. CV13-02977

DEFT APPLE'S NOTICE OF MOTION, MOTION TO DISMISS AND MPA'S ISO THEREOF

# EXHIBIT B

**_Banko v Apple_ (2013), Banko's Opposition to Apple's 1st Motion to Dismiss**

DAVID J. MICLEAN (SB# 115098)
Email: dmiclean@micleangleason.com
GARY R. GLEASON (SB# 136167)
Email: ggleason@micleangleason.com
ANNE-MARIE D. DAO (SB# 282632)
Email: adao@micleangleason.com
Miclean Gleason LLP
100 Marine Parkway, Suite 310
Redwood Shores, CA 94065
Tel:  (650)684-1181
Fax: (650) 684-1182

Attorneys for Plaintiff
JOSHUA BANKO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA BANKO,<br><br>Plaintiff(s),<br><br>v.<br><br>APPLE, INC., DOES 1-50<br><br>Defendant(s). | Case No. CV 13-02977 RS<br><br>**PLAINTIFF JOSHUA BANKO'S OPPOSITION TO APPLE, INC.'S MOTION TO DISMISS**<br><br>**DATE:**          September 26, 2013<br>**TIME:**          1:30 p.m.<br>**COURTROOM:**  3, 17th Floor<br>**JUDGE:**        Hon. Richard G. Seeborg |

*Miclean Gleason LLP*
*100 Marine Parkway Suite 310*
*Redwood Shores, CA 94065*
*650-684-1181 Main   650-684-1181 Fax*

1

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS .............................................................................. 2

III.  ARGUMENT ................................................................................................... 3

    A.  Legal Standard. ...................................................................................... 3

        1.  Federal Rule of Civil Procedure 12(b)(1). ................................ 3

        2.  Federal Rule of Civil Procedure 12(b)(6). ................................ 3

        3.  Leave To Amend Should Be Freely Granted. ........................... 4

    B.  Background and Context:The DFA Was Passed Specifically to
        Allow Actions Such as This One. .......................................................... 5

        1.  Dodd-Frank is Designed to Remedy the Failure of SOX as
            to Whistleblowers .................................................................... 5

        2.  Congress Passed Dodd-Frank to Increase Access of
            Whistleblowers Like Mr. Banko to Courts of Law. ................. 6

        3.  Courts and Counsel Have Found Dodd-Frank
            Whistleblower Provisions Unclear. .......................................... 6

        4.  The Majority of Courts Considering the Issue Have Found
            Dodd-Frank to Be Ambiguous as to the Term
            Whistleblower. ........................................................................ 7

        5.  Because of the Ambiguity of the Act, the SEC Provided
            Guidance as to the Term Whistleblower. .............................. 10

        6.  *Asadi* Improperly Fails to Give the SEC's Interpretation
            the Deference it is Due Under Federal Law. ......................... 11

    C.  Mr. Banko Has Alleged Enough Facts To State A Claim For
        Violation Of the DFA............................................................................ 13

        1.  Because Mr. Banko's SOX Allegations Fall Squarely
            Within the DFA Whistleblower Protection Provision, His
            Claims Are Timely. ................................................................ 14

        2.  Mr. Banko's Communications Are Protected Under SOX
            and Therefore the DFA........................................................... 14

    D.  Public Policy Supports Allowing Mr. Banko's DFA Claim............... 17

    E.  Mr. Banko Has Met the Federal Pleading Requirement To State A
        Claim For Wrongful Termination In Violation of Public Policy.................... 18

    F.  Mr. Banko Has Pled Enough Facts to State A Claim For
        Retaliation ........................................................................................... 20

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

G.   Mr. Banko Has Sufficiently Pled A Claim For Breach of Contract ................ 22

H.   Mr. Banko Has Properly Pled Breach Of The Covenant Of Good
Faith And Fair Dealing........................................................................................ 25

IV.   CONCLUSION.................................................................................................... 25

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

iii

**TABLE OF AUTHORITIES**

**I.   CASES**

*Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979) ................................. 7

*Allen v. Beverly Hills*, 911 F. 2d 367, 371 (9th Cir. 1990) ........................................ 24

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009) ........................................ 4

*Ashmore v. CGI Group, Inc.,* 11 Civ. 8611(LBS), 2012 U.S. Dist. LEXIS 82598, at *16-17 (S.D. NY June 12, 2012) ................................................................. 15

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 (2nd Cir. 2008) ................. 7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ..................................... 4

*Burt v. Irvine*, 237 Cal. App. 2d 828, 849 (1965) ........................................... 23

*Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837 (1984).......... 11

*City of Arlington, Tex. v. FCC,* No. 11-1545, 2013 U.S. LEXIS 3838, slip op. at 5 (May 20, 2013)................................................................................. 12

*Clegg v. Cult Awareness Network,* 18 F. 3d 752, 754 (9th Cir. 1994) ......................... 4

*Collier v. Superior Court,* 228 Cal. App. 3d 1117 (Cal. App. 2d Dist. 1991) ................. 21

Creighton v. City of Livingston, No. 08-1507,  2009 U.S. Dist. LEXIS 93720, at *31 (E.D. Cal. Oct. 7, 2009)........................................................................... 21

*Dowell v. Contra Costa County,* Case No. 3:12-cv-05743-JCS, 2013 U.S. Dist. LEXIS 28526, at *31 (N.D. Cal. March 1, 2013) ...................................................... 20

*Egan v. Tradingscreen, Inc., et al.,* 10 Civ. 8202(LBS), 2011 U.S. Dist. LEXIS 47713, at *19 (S.D. NY May 4, 2011) ................................................................. 9

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.,* 132 F. 3d 526, 529 (9th Cir. 1997)................................................................................. 4

*Faulkner v. California Toll Bridge Authority*, 40 Cal. 2d 317, 329 (1953).............................. 23

*Foman v. Davis,* 371 U.S. 178, 182 (1962)....................................................... 5

*Fox v. Piche,* No. C08-1098RS, 2008 U.S. Dist. LEXIS 79337 at *10 (N.D. Cal. Sept. 22, 2008) (Seeborg, J.) ..................................................................... 4

*Genberg v. Porter,* No. 11-cv-0234-WYD-MEH, 2013 U.S. Dist. LEXIS 41302 (Dist. Col. March 25, 2010)......................................................................... 8

*General Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290, 307 (S.D. Cal. 1981) .................. 17

*Gilligan v. Jamco Dev. Corp.,* 108 F. 3d 246, 249 (9th Cir. 1997) ........................... 4

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

iv

*Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418 (Cal. App. 4th Dist. 1993).......... 21

*Jiang v. Lee's Happy House,* Case No. C 07-03606 RS, 2007 U.S. Dist. LEXIS 80861 at *2-3 (N.D. Cal. October 23, 2007) ................................................................................................... 3

*Joe Hand Promotions, Inc. v. Croce*, No. 5:10-CV-04177-JW, 2011 U.S. Dist. LEXIS 69807, at *6-7 (N.D. Cal. June 29, 2011) ........................................................................................... 7

*Kar Onn Lee v. Holder,* 701 F.3d 931, 936 (2d Cir. 2012)........................................................ 12

*Kramer v. Trans-Lux Corp.,* No. 3:11cv1424(SRU), 2012 U.S. Dist. LEXIS 136939, at *9 (D. Conn. Sept. 25, 2012)............................................................................................................... 9

*Kuang-Bao Ou-Young v. Potter,* No. C 10-0464RS, 2011 U.S. Dist. LEXIS 22, at *15 (N.D. Cal. January 3, 2011) (Seeborg, J) ......................................................................................... 17

*Lazy Y Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008) ............................................ 4

*Lockheed Martin Corp. v. Administrative Review Board,* No. 11-9524 (Petition for Review of an Order From the U.S. Dept. of Labor (1:10-050)) 10th Cir. June 4, 2013) ...................... 14

*Martinez v. California,* No. CV-F-07-996 AWI DLB, 2008 U.S. Dist. LEXIS 81523, *4-5 (E.D. Cal. October 4, 2008) ...................................................................................................... 24

*McCormick v. Travelers Ins. Co.,* 86 Cal.App.4th 404, 416 (2001) .......................................... 12

*McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 472 (App. Ct. 2013) ................. 20

*Michaelis v. Wells Fargo Bank,* No. C 11-00537(JSW), 2011 U.S. Dist. LEXIS 126838 at *4 (N.D. Cal. November 2, 2011) ..................................................................................................... 4

*Murray v. UBS Securities, LLC, et al.,* No. 12 civ 5914(JMF)...................................................... 8

*Murray,* 2013 U.S. Dist. LEXIS 71945 at *14 (S.D. NY May 21, 2013)...................................... 9

*Nollner v. Southern Babptist Convention, et al.,* 852 F. Supp. 2d 986, 994 (Dist. Tenn. April 2, 2012)............................................................................................................................................. 9

*Scherz v. South Carolina Insurance Company,* 112 F. Supp. 2d 1000, 1010 (C.D. Cal. 2000) 13

*Skierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002)............................................................... 4

*Tribble v. Raytheon Co.,* 414 Fed. Appx. 98, 2011 U.S. App. LEXIS 2895 (9th Cir. 2011) .... 18

*Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238 (1994) ............................................................ 18

Turner v. City & County of San Francisco, 892 F. Supp. 2d 1188, 1201 (N.D. Cal. Aug. 29, 2012)........................................................................................................................................... 20

*Van Asdale v. Int'l Game Tech,* 577 F.3d 989, 996-97 (9th Cir.)............................................... 15

*Vargas v. BP America, Inc.,* No. Civ. S-10-3130(LKK/GGH), 2011 U.S. LEXIS 107762, at *14 (E.D. Cal. Sept. 21, 2011) ................................................................................................. 18

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

v

*Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981) ...................................................... 4

*Weingand v. Harland Fin. Solutions, Inc.,* 2012 U.S. Dist. LEXIS 114651, at *21-22 (N.D. Cal. August 14, 2012) ..................................................................................................... 19

*Wyshak v. City National Bank,* 607 F.2d 824, 826 (9th Cir. 1979) ..................................... 5

## II.  STATUTES

15 U.S.C § 78u-6(h)(1)(A)(iii) ............................................................................................ 7

15 U.S.C. § 78u-6, §78u-6(h)(1)(B)(i) ................................................................................ 6

15 U.S.C. §78u-6(j) ........................................................................................................... 11

15 U.S.C. § 78u-6(a)(6) ...................................................................................................... 7

15 U.S.C. § 78u-6(h)(1)(A) ................................................................................................ 7

15 U.S.C. § 78u-6(i) .......................................................................................................... 10

15 U.S.C. §78u-6(h)(1)(A) ............................................................................................. 9, 11

15 U.S.C. §78u-6(h)(1)(A)(iii) ........................................................................................... 9

15 U.S.C. 78a et seq .......................................................................................................... 6

15 U.S.C. 78f(m)), section 1513(e) .................................................................................... 7

15 U.S.C. 78u-6(h)(1)(A) ................................................................................................. 10

15 USC §78u-6 .................................................................................................................. 22

18 U.S.C. § 1514A ........................................................................................................ 8, 14

18 U.S.C. § 1341 .............................................................................................................. 15

18 U.S.C. §§ 1341, 1343, 1344, 1348 .............................................................................. 15

18 U.S.C. 1514A(a)(1)(C) ................................................................................................ 10

18 USC §1514A ................................................................................................................ 22

78u-6(h)(1)(A)(iii) ..................................................................................................... passim

15 U.S.C. 7201 et seq ......................................................................................................... 6

15 U.S.C Section 78u-6(h)(1)(A)(iii) ................................................................................ 8

## III.  OTHER AUTHORITIES

California Labor Code §1102.5 .......................................................................................... 22

H.R. Rep. No. 111-517, at 683 (2010) ............................................................................... 6

*Securities and Exchange Commission, Securities Whistleblower Incentives and Protections, 76*

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

vi

*Fed. Reg. 34300*-01, at \*34304 ...............................................................................................10

*Securities and Exchange Commission, Securities Whistleblower Incentives and Protections, 76*
   *Fed. Reg. 34300*-01, at 34303 (2011) ...............................................................................13

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

CASE NO: CV 13-02977 RS                                    PLTF'S BRIEF IN OPP TO MOTION TO DISMISS

1

## I.    INTRODUCTION

2        Apple Inc.'s ("Apple") motion to dismiss seeks to deprive Joshua Banko from seeking his

3   fair day in court.  Apple seeks to dismiss Mr. Banko from pursing causes of action in violation of

4   the Dodd-Frank Act, wrongful termination in violation of the public policy, retaliation, breach of

5   employment contract, and breach of implied covenant of good faith and fair dealing.  But the

6   justification that Apple offers the court for its extraordinary request is shaky at best since Mr.

7   Banko has adequately met the federal pleading standards for all of its causes of action.

8        Recently enacted, the Dodd-Frank Act ("DFA") provides protection to employees that blow

9   the whistle on their employers.  Mr. Banko pled that he engaged in protected activity when he

10  reported the embezzling conduct of another Apple employee.  Apple violated the DFA when it

11  terminated Mr. Banko's employment.  Contrary to Apple's assertions, Mr. Banko's DFA cause of

12  action is properly before this court because Mr. Banko was not required to make disclosures to the

13  Securities and Exchange Commission ("SEC") or file a complaint with the Department of Labor's

14  Occupational Safety and Health Administration ("OSHA").  Thus, Mr. Banko's cause of action of

15  violation of the DFA is timely and proper before this court.

16       Indeed, Apple's next argument to dismiss Mr. Banko's cause of action for wrongful

17  termination in violation of public policy fairs no better.  Despite substantial case law to the

18  contrary, Apple argues that Mr. Banko's cause of action fails because he did not plead a specific

19  public policy statute.  In fact, the case law that Apples offers to support its position instead bolsters

20  Mr. Banko's argument that he has properly pled a cause of action for wrongful termination in

21  violation of public policy.

22       Equally futile is Apple's basis for dismissal of Mr. Banko's retaliation cause of action.

23  Apple recycles its argument that Mr. Banko has not pled sufficient facts under the DFA nor pointed

24  to a specific statute under California Labor Code § 1102.5.  However, as thoroughly discussed

25  below, Mr. Banko properly pled a cause of action for violation of the DFA.  In addition, courts

26  have stated that a plaintiff need not point to a specific statute to allege violation of California's

27  Labor Code § 1102.5.

28       Finally, Apple argues that Mr. Banko has not pled sufficient facts to state a claim for breach

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1

of contract and breach of the covenant of good faith and fair dealing.  Apple's position on these two causes of action are devoid of substantive arguments and contrary to case law.  Further the cases that Apples cites to are clearly inapplicable.

Mr. Banko has pled sufficient facts for each of its causes of action.  All that the federal rules of civil procedure require of Mr. Banko is that he pleads enough facts to put Apple on notice.  Apple may wish that was not so since it cites to various cases at the motion for summary judgment stage, but no more is necessary of Mr. Banko. Thus, Mr. Banko respectfully request that Apple's motion to dismiss be denied in its entirety.

## II.   STATEMENT OF FACTS

Mr. Banko began his highly successful career at Apple on September 18, 2000.  (Dkt. No. 1, ¶ 8).  He worked on numerous high profile products such as the iPad, iBook, MacBook, MacBook Pro, and MacBook Air.  (Dkt. No. ¶ 9).   Further, Mr. Banko contributed significantly to developing more than 22 important Apple patents and received multiple promotions.  (Dkt. No. ¶ 9).  Mr. Banko was never subject to a performance improvement plan nor issued a negative written review.  (Dkt. No. 1, ¶ 11).  In fact, his contributions were so valuable that his supervisor, Kate Bergeron, specifically stated that she would "back-up" and "support" Mr. Banko with respect to his employment at Apple.  (Dkt. No. 1, ¶ 15).

Employee Roe, was an engineer at Apple that reported to Mr. Banko.  (Dkt. No. 1, ¶ 23).  In or about August 2011, Mr. Banko provided Employee Roe with a pay raise and a stock grant commensurate with her performance.  (Dkt. No. 1, ¶ 23).  Two months later, the senior human resource director, Stacy Smith unilaterally and with no explanation to Mr. Banko or Ms. Bergeron, increased her bonus by 30% and stock grant by 60%.  (Dkt. No. 1, ¶ 24).  Less than one year later in March 2012, Mr. Smith awarded Employee Roe with a pay increase of $40,000 and a grant of Restricted Stock Units of seven times the size of the previous grant.  (Dkt. No. 1, ¶ 26).

In early 2012, Mr. Banko began noticing irregularities on Employee Roe's expense reports and directed Employee Roe to remove the fraudulent charges.  (Dkt. No. 1, ¶ 30).  Mr. Banko continued noticing irregular expense reports and in December 2012 asked Employee Roe to

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1  remedy the inflated expenses.  Employee Roe failed to do so.  (Dkt. No. 1, ¶ 31).  Because Mr.

2  Banko had a reasonable belief that Employee Roe was violating both Apple policy and the law he

3  reported Employee Roe's embezzlement despite his superiors' instructions to ignore the situation.

4  (Dkt. No. 1, ¶¶ 32-35).  An internal audit revealed 40 separate occurrences in which Employee Roe

5  either inflated or falsified expenses for which she obtained reimbursement from Apple.  (Dkt. No.

6  1, ¶ 36).

7       Mr. Banko recommended Employee Roe's termination for fraud and embezzlement of

8  company funds.  (Dkt. No. 1, ¶ 37).  Mr. Banko's supervisors opposed the termination of

9  Employee Roe.  (Dkt. No. 1, ¶ 38).  Employee Roe was informed on December 21, 2012 that

10  Apple was terminating her employment effective December 31, 2012.  (Dkt. No. 1, ¶ 42).

11       Nine days after Employee Roe's termination, on or around January 9, 2013, Mr. Banko was

12  called into a meeting with Ms. Bergeron and Mike Ignaffo, a member of Apple's human resources

13  department, and told he had to stay home the rest of the week.   (Dkt. No. 1, ¶ 47).   Without any

14  justification, Apple terminated Mr. Banko's employment upon his return on January 14, 2013 after

15  12 years with the company.  (Dkt. No. 1, ¶ 48).

16  **III.   ARGUMENT**

17       **A.   Legal Standard.**

18           **1.   Federal Rule of Civil Procedure 12(b)(1).**

19       Federal Rule of Civil Procedure 12(b)(1) provides for motions to dismiss for lack of subject

20  matter jurisdiction.  The party seeking to invoke the court's jurisdiction bears the burden

21  establishing subject matter jurisdiction. *Jiang v. Lee's Happy House,* Case No. C 07-03606 RS,

22  2007 U.S. Dist. LEXIS 80861 at *2-3 (N.D. Cal. October 23, 2007).  A Rule 12(b)(1) motion to

23  dismiss for lack of subject matter jurisdiction may be made on the basis that the complaint fails to

24  allege grounds for federal matter jurisdiction, *i.e.,* that the lack of jurisdiction appears from the

25  "face of the complaint," or on the basis that the court lacks jurisdiction as a matter of fact, i.e., lack

26  of jurisdiction based on extrinsic evidence apart from the pleadings." *Id.*

27           **2.   Federal Rule of Civil Procedure 12(b)(6).**

28       A motion to dismiss is only proper under Federal Rule of Civil Procedure 12(b)(6) where

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

3

the pleadings fail to state a claim upon which relief can be granted.  "A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Clegg v. Cult Awareness Network,* 18 F. 3d 752, 754 (9th Cir. 1994).  The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Michaelis v. Wells Fargo Bank,* No. C 11-00537(JSW), 2011 U.S. Dist. LEXIS 126838 at *4 (N.D. Cal. November 2, 2011) *citing Lazy Y Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).  The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Skierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002). "Motions to dismiss generally are viewed with disfavor and are to be granted rarely. *Fox v. Piche,* No. C08-1098RS, 2008 U.S. Dist. LEXIS 79337 at *10 (N.D. Cal. Sept. 22, 2008) (Seeborg, J.) *citing Gilligan v. Jamco Dev. Corp.,* 108 F. 3d 246, 249 (9th Cir. 1997).

    Furthermore, Rule 8(a) simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[U]nder Rule 8(a) a plaintiff is not required to allege in its complaint the evidentiary facts in support of its theory of recovery." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.,* 132 F. 3d 526, 529 (9th Cir. 1997).  The Rule requires "only enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also, Enron Oil Trading & Transp. Co.,* 132 F. 3d at 529. ("we do not require heightened fact pleading of specifics.").  Moreover, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009). As even a cursory review of the complaint in this action demonstrates, and as fully explained below, the complaint contains a substantial amount of allegations that support each cause of action, and go well beyond the required notice pleading required in federal court.

### 3.    Leave To Amend Should Be Freely Granted.

    The decision to grant or deny leave to amend is within the discretion of the trial court. *Waits v. Weller,* 653 F.2d 1288, 1290 (9th Cir. 1981).  In the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

4

1    previously allowed, undue prejudice to the opposing party by virtue of allowance of the

2    amendment, [or] futility of amendment," leave to amend should be "freely given." *Foman v. Davis,*

3    371 U.S. 178, 182 (1962) *also see Wyshak v. City National Bank,* 607 F.2d 824, 826 (9th Cir.

4    1979) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the

5    opposing party.").

6           Consequently, even if some elements were lacking from any cause of action (which we

7    maintain is not the case), Mr. Banko would respectfully request the right to amend the complaint.

8    **B.     Background and Context:The DFA Was Passed Specifically to Allow Actions
            Such as This One.**

9
10          In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Act ("DFA"), in

11   part, to encourage whistleblower participation in the promotion of corporate governance.   (Ex. 1)[1];

12   Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat 1376

13   (2010); *see also* (Ex. 2) Adele Nicolas, Bounty Hunters: Whistleblower Provisions of the Dodd-

14   Frank Act Pressure Employers to Improve Compliance, Inside Couns., Oct. 1, 2010, at 28-29

15   (discussing the intentions behind the DFA's Whistleblower provisions and predicting if they will

16   succeed).   Historically, the number of whistleblowers had been alarmingly low.

17   **1.     Dodd-Frank is Designed to Remedy the Failure of SOX as to
            Whistleblowers**

18          Prior to the implementation of the DFA's whistleblower provisions, an individual who

19   suspected violation of security laws would first have to file a complaint with OSHA alleging

20   violation of the Sarbanes-Oxley Act ("SOX").   Complaints filed with OSHA were often dismissed

21   at an alarmingly high rate.  (Ex. 3) S. Rep. No. 111-176, at 72-73 ("External auditors, and the SEC

22   exam teams would certainly be considered external auditors, detected a mere 4.1% of uncovered

23   fraud schemes. . . We also note a recent report of the current SEC insider-trading Whistleblower

24   Program by the Office of Inspector General of SEC.  Since the inception of the program in 1989,

25   there have been a total of only 7 payouts to five whistleblowers for a meager total of $159, 537.");

26   _____

27          [1]  References herein to "Ex. [X]" refer to an Exhibit to the Declaration of Gary R. Gleason
     filed with this Opposition.

28

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

5

1    *also see* Tracy Coenen, Essentials of Corporate Fraud 196 (2008) ("The initial excitement that

2    SOX's whistleblower provisions generated quickly faded after nearly every case was dismissed or

3    settled."); (Ex. 4) Michael Hudson, Federal Bureaucracy Dismisses Most Sarbanes-Oxley

4    Whistleblower Claims, Ctr. for Pub.  Integrity (July 22, 2010),

5    http://www.publicintegrity.org/articles/entry/2275/ (demonstrating that only twenty-five out of the

6    1066 whistleblower claims brought to the Department of Justice through June 30, 2010 were

7    upheld.).

### 2.    Congress Passed Dodd-Frank to Increase Access of Whistleblowers Like Mr. Banko to Courts of Law.

9         Thus, because of SOX's unsuccessful whistleblower provisions, Congress enacted the DFA

10   whistleblower provisions to elicit further support from whistleblowers.  (Ex. 5) H.R. Rep. No. 111-

11   517, at 683 (2010) ("The subtitle further enhances incentives and protections for whistleblowers

12   providing information leading to successful SEC enforcement actions."); (Ex. 3) ("The

13   whistleblower Program aims to motivate those with inside knowledge to come forward and assist

14   the Government to identify and prosecute persons who have violated securities laws and recover

15   money for victims of financial fraud . . .).  One of the key provisions in the DFA is the right to a

16   private cause of action for whistleblowers alleging retaliatory discharge or other discrimination

17   without first having to provide information to the SEC.  The DFA provides that any "individual

18   who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action

19   under this subsection in the appropriate district court of the United States for the relief provided in

20   subparagraph (C)."  U.S.C. 15 § 78u-6, §78u-6(h)(1)(B)(i).

### 3.    Courts and Counsel Have Found Dodd-Frank Whistleblower Provisions Unclear.

22        Unfortunately, the DFA whistleblower provision is not a model of clarity.  Section 78u-

23   6(h)(1)(A) and § 78u-6(h)(1)(A) (iii) read "no employer may discharge, demote, suspend, threaten,

24   harass, directly or indirectly, or in any other manner discriminate against a whistleblower in the

25   terms and conditions of employment because of any lawful act done by the whistleblower" . . . "in

26   making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C.

27   7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section

28

*Miclean Gleason LLP*
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1  10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18 United States Code, and any

2  other law, rule, or regulation subject to the jurisdiction of the Commission." 15 U.S.C. § 78u-

3  6(h)(1)(A); § 78u-6(h)(1)(A)(iii).  However, the definition of whistleblower in the DFA reads,

4  "[t]he term "whistleblower" means any individual who provides, or 2 or more individuals acting

5  jointly who provide, information relating to a violation of the securities laws to the Commission, in

6  a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6).  The

7  crux is whether someone who does not provide information to the SEC would still be defined as a

8  "whistleblower" and fall under the protection of § 78u-6(h)(1)(A)(iii).  The answer is yes.

9  Some courts have considered this exact question and held that the whistleblower provisions

10  are ambiguous but nonetheless have extended protection to whistleblowers that do not provide

11  information to the SEC.  A minority of courts, and as Apple argues in its motion to dismiss, have

12  held that someone that does not provide information to the SEC is not a whistleblower and cannot

13  avail himself of the protection of § 78u-6(h)(1)(A)(iii).   To support its position, Apple cites to

14  *Asadi v. G.E. Energy (U.S.A.), L.L.C.*, No. 12-20522,  2013 U.S. App. LEXIS 14470 (5th Cir. July

15  17, 2013), but that case is inapposite.

16      **4.**    **The Majority of Courts Considering the Issue Have Found Dodd-Frank to Be Ambiguous as to the Term Whistleblower.**

17  As Apple acknowledges, *Asadi,* is the only appellate court that has ruled on the

18  interpretation between the two provisions but on the assumption that the provisions were *not*

19  ambiguous.  *Asadi,* 2013 U.S. App. LEXIS 14470, at *10.[2]   In fact, the plaintiff in *Asadi*

20  *conceded* he was not a "whistleblower" and did not argue that the DFA whistleblower provisions

21  were ambiguous.  The court states:

22      Notably, however, Asadi does not maintain that the definition of "whistleblower" in

23

24      [2]  Federal courts have acknowledged that court decisions from other circuits are not binding on an out of circuit district court and when the authority at issue is only persuasive, the court may

25  exercise its discretion in deciding an issue.  *Joe Hand Promotions, Inc. v. Croce,* No. 5:10-CV-04177-JW, 2011 U.S. Dist. LEXIS 69807, at *6-7 (N.D. Cal. June 29, 2011) ("the decisions of fellow district courts, while persuasive, are not binding on this Court.  *See ATSI Communs., Inc. v.*

26  *Shaar Fund, Ltd.*, 547 F.3d 109, 112 (2nd Cir. 2008) (noting that "[d]istrict court decisions . . . create no rule of law binding on other courts."); *see also Allegheny General Hospital v. NLRB*, 608

27  F.2d 965, 970 (3d Cir. 1979) (explaining that precedent binds only those cases "arising in the same court or a lower court in the judicial hierarchy").

28

CASE NO: CV 13-02977 RS                    PLTF'S BRIEF IN OPP TO MOTION TO DISMISS

> §78u-6(a)(6) is ambiguous.  Similarly, he does not contend that the categories of
> lawful actions by a whistleblower in §78u-6(h)(1)(A) are ambiguous.  Nevertheless,
> he asserts that individuals who take actions that fall within the third category of
> lawful actions are protected, whether or not they qualify as a "whistleblower" as
> defined in §78u-6(a)(6).

*Asadi*, 2013 U.S. App. LEXIS 14470, at *11 n. 5.  The *Asadi* court's interpretation of

"whistleblower" is the minority view.  Indeed, several district courts from other circuits have

reasoned that the DFA whistleblower protection provision extends to protect individuals who do

not make disclosures to the SEC. [3]

In *Murray v. UBS Securities, LLC, et al.,* No. 12 civ 5914(JMF), 2013 U.S. Dist. LEXIS

71945 (Dist. NY. May 21, 2013), the plaintiff argued that defendant had violated the

whistleblower protection provisions of the DFA because he was terminated after being pressured

to produce false and misleading information about defendant's security products intended to favor

defendant's products and trading positions.  *Id.*  The defendant moved to dismiss the complaint

because plaintiff did not allege that he made a report to the SEC and therefore argued that plaintiff

was not a "whistleblower" under the DFA.  The court held that plaintiff had  "indisputably alleged

that Defendants' decision to terminate him was motivated, in part, by his making disclosures that

are protected by Section 806 of the Sarbanes Oxley Act, 18 U.S.C. § 1514A, he has plausibly

stated a claim under Section 78u-6(h)(1)(A)(iii)."  *Murray,* 2013 U.S. Dist. LEXIS 71945 at *21.

The court reasoned that "the anti-retaliation whistleblower protection provisions of Dodd-Frank

require Plaintiff to show that he either provided information to the SEC *or* that his disclosures fell

under the four categories listed in *Section 78u-6(h)(1)(A)(iii).*"  *Id.*

In *Genberg v. Porter,* No. 11-cv-0234-WYD-MEH, 2013 U.S. Dist. LEXIS 41302 (Dist.

Col. March 25, 2010) the plaintiff argued that defendant terminated him in violation of the

whistleblower protection provisions in the DFA when he disclosed information protected under

SOX to upper management.  *Genberg,* 2013 U.S. Dist. LEXIS 41302, at *29 (Dist. Col. March 25,

2013).  Defendant argued that the plaintiff's DFA retaliation claim failed because he did not fall

---

[3] Apple's motion neglects to inform this court that the majority of district courts faced with
the issue have held that Dodd-Frank is ambiguous.

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1   under the category of persons that the statute defines as whistleblower.  *Id.* at 26.  The court,

2   however, held that the plaintiff qualified "as a whistleblower under the DFA because he disclosed

3   alleged federal securities violations to upper level management.  Thus, [plaintiff] [could] proceed

4   with his DFA retaliation claim under *§ 78u-6(h)(1)(A)(iii)* even though he ha[d] not provided the

5   SEC with any information regarding alleged federal securities law violations." *Id.* at 29.

6       Other courts have similarly held that *§ 78u-6(h)(1)(A)(iii)* does not require disclosures to

7   the SEC because it is an exception to the definition of "whistleblower."  *Kramer v. Trans-Lux*

8   *Corp.,* No. 3:11cv1424(SRU), 2012 U.S. Dist. LEXIS 136939, at *9 (D. Conn. Sept. 25, 2012) ("I

9   do not believe it is unambiguously clear that the Dodd-Frank Act's retaliation provision only

10  applies to those individuals who have provided information relating to a securities violation to the

11  Commission, and have done so in a manner established by the Commission."); *Egan v.*

12  *Tradingscreen, Inc., et al.,* 10 Civ. 8202(LBS), 2011 U.S. Dist. LEXIS 47713, at *19 (S.D. NY

13  May 4, 2011) ("the anti-retaliation whistleblower protection provisions of the Dodd-Frank Act

14  require Plaintiff to show that he either provided information to the SEC, or that his disclosures fell

15  under the four categories listed in *15 U.S.C. §78u-6(h)(1)(A)(iii)*"); *Nollner v. Southern Babptist*

16  *Convention, et al.,* 852 F. Supp. 2d 986, 994 (Dist. Tenn. April 2, 2012)  ("both *Egan* . . . and the

17  SEC have found that category (iii) provides a narrow exception to the definition of a whistleblower

18  as someone who reports only "to the Commission.").

19      The courts that have reached the decision that *§78u-6(h)(1)(A)(iii)* is an exception to the

20  definition of whistleblower have done so by first finding that the DFA whistleblower provision *is*

21  *ambiguous*. The *Asadi* court did not analyze the provisions from that starting point.  But the

22  provisions cannot be argued to be clear, as Apple attempts to, if attorneys and courts are not

23  applying the provisions consistently.  *Murray,* 2013 U.S. Dist. LEXIS 71945 at *14 (S.D. NY May

24  21, 2013) ("The existence of these "competing, plausible interpretations" of the statutory

25  provisions compels the conclusion that "the statutory text is ambiguous in conveying Congress'

26  intent.").

27

28

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

5.    **Because of the Ambiguity of the Act, the SEC Provided Guidance as to the Term Whistleblower.**

Indeed, the ambiguity in the DFA's whistleblower protection provision compelled the SEC to provide guidance in its application.  On August 12, 2011, the SEC -- to whom Congress delegated authority to administer the whistleblower provisions of Dodd-Frank, *see 15 U.S.C. § 78u-6(i)* -- promulgated a final rule regarding the relationship between *§ 78u-6(h)(1)(A)*, the anti-retaliation provision, and *§ 78u-6(a)(6)*, the provision defining "whistleblower."  The SEC's rule provides:

> (a) Definition of a whistleblower. (1) You are a whistleblower if, alone or jointly with others, you provide the Commission with information pursuant to the procedures set  forth in § 240.21F-9(a) of this chapter, and the information relates to a possible violation of the Federal securities laws (including any rules or regulations thereunder)  that has occurred, is ongoing, or is about to occur. A whistleblower must be an individual.  A company or another entity is not eligible to be a whistleblower.
>
> * * *
>
> (b) Prohibition against retaliation: (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act *(15 U.S.C. 78u-6*(h)(1)), you are a whistleblower if:
>
> * * *
>
> *(ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).*

(Ex. 6) 17 CFR 240.21F-2 (Emphasis added).; (Ex. 7) *Securities and Exchange Commission, Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300*-01, at *34304 (June 13, 2011) (codified at 17 C.F.R. pts. 240-249) ("[T]he statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities *other than the [SEC]*.") (Emphasis added).

The SEC's interpretation of *§ 78u-6(h)(1)(A)*,  reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities *other than the Commission*. Specifically, *§ 78u-6(h)(1)(A)*, which incorporates the anti-retaliation protections specified in § 806 of the Sarbanes-Oxley Act, *18 U.S.C. 1514A(a)(1)(C)*--provides anti-retaliation protections for

10

1   employees of public companies, subsidiaries whose financial information is included in the

2   consolidated financial statements of public companies, and nationally recognized statistical rating

3   organizations when these employees report to (i) A Federal regulatory or law enforcement agency,

4   (ii) any member of Congress or committee of Congress, or (iii) a person with supervisory authority

5   over the employee or such other person working for the employer who has authority to investigate,

6   discover, or terminate misconduct.

7         **6.**    ***Asadi* Improperly Fails to Give the SEC's Interpretation the Deference**
            **it is Due Under Federal Law.**

8

9         In *Asadi*, with all due respect to the court, surprisingly and incorrectly dismissed the SEC's

10  interpretation and rule.  The court states that the  "regulation instead of using the statute's

11  definition of "whistleblower," redefines "whistleblower more broadly by providing that an

12  individual qualifies as a whistleblower even though he never reports any information to the SEC,

13  so long as he has undertaken the protected activity listed in 15 U.S.C. §78u-6(h)(1)(A) . . the

14  SEC's regulations concerning the Dodd-Frank whistleblower protection provision are

15  inconsistent." *Asadi*,  2013 U.S. App. LEXIS 14470, at *28-29.  This is at odds with Congress'

16  intent to enable the SEC with the authority to issue rules and regulations necessary to implement

17  the whistle blower protection provisions in the DFA.  15 U.S. C. §78u-6(j) ("The Commission

18  *shall* have the authority to issue such rules and regulations as may be necessary or appropriate to

19  implement the provisions of this section consistent with the purposes of this section.") (Emphasis

20  added).

21        *Asadi's* holding can only be the result of the court's failure to apply the two-step inquiry to

22  determine whether the SEC's interpretation warrants deference under *Chevron U.S.A. Inc. v.*

23  *Natural Resources Defense Counsel, Inc.,* 467 U.S. 837 (1984).   The first step of that inquiry is

24  asking "whether Congress has directly spoken to the precise question at issue.  If the intent of

25  Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect

26  to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc.,* 467 U.S. at 842-43.   If

27  however, "the statute is silent or ambiguous with respect to the specific issue," the Court proceeds

28  to step two, asking "whether the agency's answer is based on a permissible construction of the

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

11

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1  statute." *Id.* at 843.  A court may not defer to an interpretation that is "arbitrary, capricious, or

2  manifestly contrary to the statute." *Kar Onn Lee v. Holder,* 701 F.3d 931, 936 (2d Cir. 2012)

3  (internal quotation marks omitted).   But "[i]f the agency interpretation is reasonable, then [a court]

4  must defer to it." *Id.* (internal quotation marks omitted).  This framework "is rooted in a

5  background presumption of congressional intent" and "provides a stable background rule against

6  which Congress can legislate: Statutory ambiguities will be resolved, within the bounds of

7  reasonable interpretation, not by the courts but by the administering agency." *City of Arlington,*

8  *Tex. v. FCC,* No. 11-1545, 2013 U.S. LEXIS 3838, slip op. at 5 (May 20, 2013).

9         Indeed, the *Kramer* court concluded that it is "not . . . *unambiguously* clear that the Dodd-

10 Frank Act's retaliation provision only applies to those individuals who have provided information

11 relating to a securities violation to the Commission, and have done so in a manner established by

12 the Commission." *Kramer,* 2012 U.S. Dist. LEXIS 136939, at *4. (Emphasis added).   Similarly,

13 the *Murray* court found that 'the ambiguity arises from the tension between *Section 78u-6,* which

14 limits the definition of "whistleblower" to one who makes a disclosure to the SEC and *Section 78u-*

15 *6(h)(1)(A)(iii),* which contemplates a broader scope of protection." *Murray,* 2013 U.S. Dist. LEXIS

16 71945, at *13.  The courts went on to step two of the *Chevron* inquiry and reasoned that the SEC's

17 interpretation was a reasonable one.  After all, its rule is consistent with the interpretation of the

18 statutory provisions put forth by *Egan, Nollner,* and *Genberg*: that *Section 78u-6(h)(1)(A)(iii)*

19 provides a narrow exception to *Section 78u-6(a)(6)*'s definition of a whistleblower as one who

20 reports to the SEC, and protects internal disclosures protected by SOX and the 1934 Act.  *Murray,*

21 2013 U.S. Dist. LEXIS 71945, at *16; *Kramer,* 2012 U.S. Dist. LEXIS 136393, at *12.

22        Courts in other contexts have similarly held that deference to agencies interpretation should

23 be given. *McCormick v. Travelers Ins. Co.,* 86 Cal.App.4th 404, 416 (2001) ("As FEMA is the

24 agency charged with administering the NFIP, we must give great weight to its construction of

25 statutes it is charged with implementing and enforcing.  Such a construction will be adhered to

26 unless clearly erroneous or unauthorized [citations omitted], that is, unless it was arbitrary,

27 capricious or had no reasonable or rational basis [citation omitted]."); *Scherz v. South Carolina*

28

1    *Insurance Company,* 112 F. Supp. 2d 1000, 1010 (C.D. Cal. 2000) ("Congress has delegated to

2    DOT authority to implement the statute; the subject matter is technical; and the relevant history and

3    background are complex and extensive.  The agency is likely to have a thorough understanding of

4    its own regulation and its objectives and is "uniquely qualified" to comprehend the likely impact of

5    state requirement.").

6
7

       **C.**     **Mr. Banko Has Alleged Enough Facts To State A Claim For Violation Of the DFA.**

8       As demonstrated above, the majority of other courts considering the issue have held that,

9    once analyzed and the ambiguity properly addressed, the only reasonable conclusion is that Dodd-

10    Frank was designed to protect whistleblowers that disclose wrongdoing to others than the SEC.

11    Accordingly, Apple's argument that Mr. Banko cannot avail himself of the protection of the DFA's

12    whistleblower provision, because he is allegedly not a whistleblower under the DFA, should be

13    dismissed.  As evidenced by sound reasoning, numerous court holdings and the SEC, the DFA was

14    intended to allow Mr. Banko's claims and claims like it.

15       Apple's next argument relies on a misinterpretation of the legislative history of the DFA.

16    Apple argues that Congress intentionally chose the more restrictive term of "whistleblower" when

17    drafting the DFA's anti-retaliation provision**.**   Congress' debate on the term "whistleblower" was

18    limited to whether the term could encompass non-individuals.  Indeed, the SEC considered that

19    same issue when it issued its rules related to the DFA. (Ex. 7); *Securities and Exchange*

20    *Commission, Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300*-01, at

21    34303 (2011) ("We have decided not to extend the definition of whistleblower beyond natural

22    persons because we believe that this is consistent with the statutory definition, which provides that

23    a whistleblower must be an "individual."  The ordinary meaning of "individual" is "natural

24    person," and nothing in the statutory text or legislative history suggests a different meaning here.").

25       Finally, Apple argues that Mr. Banko's attempt to expand the definition of "whistleblower"

26    would impermissibly render the statute superfluous.  However, it is Apple's preferred reading of

27    the definition of the term "whistleblower" that would effectively invalidate *§ 78u-6(h)(1)(A)(iii)'s*

28

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1   protection of whistleblower disclosures that do not require reporting to the SEC.  *Murray,* 2013

2   U.S. Dist. LEXIS 71945, at *16; *Egan,* 2011 U.S. Dist. LEXIS 47713, at *4.  Moreover, the DFA

3   appeared to have been intended to expand upon the protections of SOX, and thus the claimed

4   problem is no problem at all.  *Kramer,* 2012 U.S. Dist. LEXIS 136939, at *12.

### 1.   Because Mr. Banko's SOX Allegations Fall Squarely Within the DFA Whistleblower Protection Provision, His Claims Are Timely.

7   Apple argues that the court lacks jurisdiction over Banko's SOX allegation because Mr.

8   Banko did not file a claim with the United States Secretary of Labor within 180 days of his

9   termination.  As an initial matter, Mr. Banko was not required to file a complaint with the United

10  States Secretary of Labor since the DFA specifically provides a right to a private cause of action.

11  *§78u-6 (h)(B)(i)*; *also see e.g. Murray,* 2013 U.S. Dist. LEXIS 71945 (S.D. NY May 21, 2013);

12  *Kramer,* 2012 U.S. Dist. LEXIS 136939 (Dist. Conn. September 25, 2012).  Further, under the

13  DFA, the statute of limitations is either 6 years from the date on which the violation occurred or no

14  more than 3 years after the date when facts material to the right of action are known or reasonably

15  should have been known. U.S.C. § 78u-6 (h)(B)(iii).  Thus, Apple's statute of limitation and failure

16  to exhaust administrative remedies argument is nothing more than a red herring.

### 2.   Mr. Banko's Communications Are Protected Under SOX and Therefore the DFA.

18  The regulations implementing  § 806[4], as well as the decisions of numerous circuit courts,

19  establish the elements of a prima facie claim for violations of 18 U.S.C. § 1514A.[5]  A claimant

20  must show: (1) he engaged in protected activity or conduct; (2) the employer knew of his protected

21  activity; (3) he suffered an unfavorable personnel action; and (4) his protected activity was a

22  contributing factor in the unfavorable personnel action.  (Ex. 8) *Lockheed Martin Corp. v.*

23  *Administrative Review Board,* No. 11-9524 (Petition for Review of an Order From the U.S. Dept.

24  of Labor (1:10-050)) 10th Cir. June 4, 2013).  Moreover, "the proper interpretation of § 1514A(a)

25  gives each phrase distinct meaning and holds a claimant who reports violations of 18 U.S.C. §§

---

27  [4]  All references to § 806 refer to § 806 of 18 U.S.C. § 1514A.

28  [5]  All references to 18 U.S.C. § 1514A will be referred to as SOX unless otherwise stated.

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

14

1341, 1343, 1344, or 1348 *need not establish* such violations relate to fraud against shareholders to be protected from retaliation under the Act.  *Id.* at 15.

Mr. Banko has pled sufficient facts to put Apple on notice.  Mr. Banko pled that he engaged in activity protected under § 806 when he informed Apple's officers and/or management of conduct which he reasonably believed to be in violation of federal law relating to fraud against shareholders, namely the embezzlement by employee Roe.  (Dkt. No. 1, ¶ 53).   Mr. Banko has pled that Apple knew of the protected activity.  (Dkt. No. 1, ¶ 54-55).  And that Apple terminated Mr. Banko because of the protected activity.  (Dkt. No. 1, ¶ 57).

"[P]laintiffs who bring claims under § 806 are not required to demonstrate that defendants *actually* violated one or more of the federal laws and regulations enumerated in the statute. [citation omitted].  Instead, courts assess the objective reasonableness of a whistleblower's belief by determining whether "a reasonable person in [their] position would have believed" the same." *Ashmore v. CGI Group, Inc.,* 11 Civ. 8611(LBS), 2012 U.S. Dist. LEXIS 82598, at *16-17 (S.D. NY June 12, 2012); *also see Murray,* 2013 U.S. Dist. LEXIS 71945, at *6-7 (S.D. NY May 21, 2013) ("And here, Plaintiff alleges that Defendants fired him in retaliation for doing just that – that is, for complaining to his supervisors that he was being pressured to produce false and misleading research reports about UBS's securities products in violation of the SEC rules or regulations.").

Apple's cites to various cases in an unsuccessful attempt to support its position.  For example, in *Van Asdale v. Int'l Game Tech,* 577 F.3d 989, 996-97 (9th Cir.), the Court was reviewing the district court's grant of motion for summary judgment of the plaintiffs' SOX claim. There the plaintiffs had two basis for its SOX claim: fraud on the patent and trademark office and fraud on shareholders.  The court considered testimony provided at a deposition and an affidavit and based on the information provided by the plaintiffs held that "taking the facts in the light most favorable to the plaintiffs, their meeting with [in-house counsel] involved disclosures "definitively and specifically" related to shareholder fraud despite defendant's position that the only potential fraud that was discussed was fraud on the PTO.  That was still enough for the court as it raised a genuine issue of material fact. *Van Asdale,* 577 F.3d at 1000.  The court went on to state that

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

15

1   "stark factual dispute must be decided by a fact finder and cannot be resolved on summary

2   judgment. . . the district court disregarded the portion of [plaintiff's] declaration in which he said

3   that he raised concerns of shareholder fraud with [defendant], because the district court viewed this

4   portion of the declaration as contradicting [plaintiff's] deposition testimony." *Id.* at 998.   Indeed,

5   the court reasoned that "[t]he legislative history of Sarbanes-Oxley makes it clear that its

6   protections were "intended to include all good faith and reasonable reporting fraud, and [that] there

7   should be no presumption that reporting is otherwise, absent specific evidence."" *Id.* at 1002 *citing*

8   148 Cong. Rec. 57418-01, 57420 (daily Ed. July 26, 2002).   Likewise, Mr. Banko's SOX

9   allegation is in good faith and should not be dismissed because even if this case was at the motion

10   for summary judgment stage (which it is not), Mr. Banko's SOX claim would still survive under

11   the *Van Asdale* analysis.

12          Apple then argues that *Day v. Staples Inc.,* 555 F.3d 42, 55 (1st Cir. 2009) is on point.   In

13   *Day,* the plaintiff's SOX claim failed because the court found that a disagreement with

14   management about internal tracking systems which did not have to be reported to shareholders is

15   not actionable.  *Day,* 555 F.3d at 56.  The court found that plaintiff's belief was objectively

16   unreasonable because he made no showing that any inaccuracy was material to shareholders.  *Id.* at

17   57.  The court went on to state that "[a] company's explanations given to the employee for the

18   challenged practices are also relevant to the objective reasonableness of an employee's belief in

19   shareholder fraud.  *Id.* at 58.  The defendant in *Day* had explained to plaintiff the rationales for the

20   returns process, and assured Plaintiff that no fraud was being committed.  *Id.*  The facts in *Day* are

21   in stark contrast to the case at bar where Banko's supervisors gave no explanation to Banko for the

22   complacency in Employee Roe's embezzlement.

23          Finally, Apple's reliance on *In Riddle v. First Tennessee Bank*, No. 11-6277, 497 Fed.

24

25   Appx. 588 (6th Cir. 2012)[6] is unavailing.   The plaintiff in that case brought a SOX claim through a

26

27          [6]  The Sixth Circuit has not recommended this case for publication and has limited citation
     to this case to only specific situations.  Moreover, Apple did not provide a copy of this case to the
28   court as required.

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

16

violation of the Bank Bribery Act.  The court found that at its core, the Bank Bribery Act is not a fraud against shareholders and that the plaintiff was unable to show that defendant intended to defraud shareholders.  *In Riddle,* 497 Fed. Appx. 588, 595.   In contrast, Mr. Banko has pled that Employee Roe embezzled funds and the conduct violated federal law relating to shareholders. (Dkt. No. 1, ¶ 53).  Embezzlement is the type of conduct contemplated by SOX and thus *In Riddle* is inapposite.  Moreover, Apple's bombastic assertion that a single employee's embezzlement is not enough to be material to Apple's overall financial records is nothing short of an affront to the spirit behind the whistleblower protection provisions.

Nevertheless, Apple's citations to the cases above fail to carry its arguments at the end of the day.  The cases offer no support factually as discussed.  But equally important is that the cases are all at the motion for summary judgment stage.  Thus, Apple's "argument, in other words, would require a weighing of the facts to an extent appropriate only at a later procedural posture juncture, such as summary judgment or trial." *Kuang-Bao Ou-Young v. Potter,* No. C 10-0464RS, 2011 U.S. Dist. LEXIS 22, at *15 (N.D. Cal. January 3, 2011) (Seeborg, J).  Mr. Banko has pled sufficient facts to state a claim for relief and thus respectfully request Apple's motion to dismiss Mr. Banko's first cause of action be denied.

### D.      Public Policy Supports Allowing Mr. Banko's DFA Claim.

The DFA's recent enactment coupled with the few decisions on the specific issue at bar provide very little guidance on what is expected of plaintiffs.  Mr. Banko considered all options and only sought the court's justice because of what he reasonably believed to be mandated by the DFA.  A dismissal of Mr. Banko's DFA claim will run counter to the DFA's public policy of encouraging whistleblowers to come forward since the dismissal will prevent Mr. Banko from seeking a remedy in any other forum.   Further, Mr. Banko did not sit on his rights.  This action was filed expeditiously. Finally, there is no prejudice to Apple if this court considered this case.

Thus, Mr. Banko respectfully requests that it provide him the opportunity to seek its remedies in this forum since policy considerations provide that litigants should have their day in court.  *General Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290, 307 (S.D. Cal. 1981)

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

17

1   ("Dismissals . . . run counter to the strong public policy of deciding cases on their merits and

2   affording litigants their fair day in court.").

3       However, should the court find that Mr. Banko's complaint, or any cause of action, be

4   dismissed, Mr. Banko request an opportunity to amend his complaint.

5   **E.    Mr. Banko Has Met the Federal Pleading Requirement To State A Claim For
        Wrongful Termination In Violation of Public Policy**

6

7       The complaint in this action speaks to embezzlement and to violations of SOX and the

8   DFA.  Since Mr. Banko's termination is inextricably linked to the violations of these laws, he has

9   met, at the very least for pleading purposes, the elements of alleging a violation of law to support

10  his wrongful termination claim.

11      Moreover, even if he had not plead violation of specific laws (which he did), California

12  courts have considered the issue whether a plaintiff must point to a specific statute to state a claim

13  for wrongful termination in violation of public policy and have answered in the negative. *Vargas v.*

14  *BP America, Inc.,* No. Civ. S-10-3130(LKK/GGH), 2011 U.S. LEXIS 107762, at *14 (E.D. Cal.

15  Sept. 21, 2011) ("this court already held in this case that Plaintiff need not plead specific statute or

16  regulation that was thwarted by his termination.").

17      In *Vargas,* the defendant, like Apple, took the position that plaintiff had not pled sufficient

18  facts to state a claim for wrongful termination in violation of public policy citing to *Turner v.*

19  *Anheuser-Busch, Inc.*, 7 Cal.4th 1238 (1994), as Apple does in this instant case.  But the court in

20  *Vargas* was not swayed:

21      Defendant's continued reference to *Turner v. Anheuser-Busch, Inc.* 7 Cal.4th 1238
        (1994), is inapposite.  There, the California Supreme Court held that the Plaintiff
22      could not survive summary judgment because he did not state the specific statutory
        provisions delineating a public policy. Plaintiff's "vague charge of 'Alcohol,
23      Tobacco, and Firearms Law's violations," the Court held, was "plainly insufficient
        to create an issue of material fact justifying a trial."  *Id.* at 1257.  ***The Court's***
24      ***holding on this substantive point of law does not alter the federal pleading***
        ***requirements, which apply in this case.***  *See, e.g. Tribble v. Raytheon Co.,* 414
25      Fed. Appx. 98, 2011 U.S. App. LEXIS 2895 (9th Cir. 2011).  Accordingly, the court
        concludes once again that notice pleading does not require Plaintiff to state in his
26      complaint the statutory or regulatory basis of the claimed violation of public policy
        in order to survive a 12(b)(6) motion to dismiss.

27

28

18

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1    *Vargas,* 2011 U.S. LEXIS 107762, at *12-17 (E.D. Cal. Sept. 21, 2011) (Emphasis added).

2    Indeed, other courts have reasoned that a valid claim for wrongful termination is pled despite

3    defendants citation to "authority equating the wrongful termination claim with the underlying

4    statutory causes of action […] other cases with similar facts to the instant case have looked to the

5    public policy evinced by the *purpose* of various statutes as opposed to a mechanical application of

6    the statutory causes of action on an element-by-element basis." *Weingand v. Harland Fin.*

7    *Solutions, Inc.,* 2012 U.S. Dist. LEXIS 114651, at *21-22 (N.D. Cal. August 14, 2012).

8        Further, Apple's citation to *Green v. Ralee Engineering Co.,* 19 Cal. 4th 83 (1988) is contrary

9    to its position and favors Mr. Banko's wrongful termination claim.  The *Green* court reversed the

10   grant of summary judgment holding that the plaintiff could assert a Tameny claim based on

11   administrative regulations because those regulations were tethered to a statutory provision and

12   implicated a fundamental public policy of airline safety.  The court reasoned , "[t]he critical

13   distinction between the facts here and those at issue in *Foley,* [citation omitted], is that here the

14   violations of internal practices affected only the employer's interest, while here defendant's alleged

15   misconduct potentially jeopardized airline passenger safety.  Protecting airline passengers,

16   therefore, is the relevant fundamental public policy at issue.  Promoting airline safety--the subject

17   of the federal regulations--constitutes a policy of sufficient public importance. . . Thus, the public

18   policy that is the foundation for plaintiff's case not only satisfies *Foley's* requirement for a "public"

19   interest, but also *Tameny's* requirement for a "fundamental" policy interest." *Green,* 19 Cal. 4th

20   83, 85 (1988).  The court further held that the plaintiff need not plead a specific statute because the

21   statutes were identified at the summary judgment stage:

22        The court considered defendant's claim that plaintiff failed to produce the
         appropriate statutes or regulations to support his action at the summary judgment
23        stage, but concluded that plaintiff had adequately identified several relevant FAA
         regulations as part of his opposition to summary judgment. Thus, the Court of
24        Appeal properly held that plaintiff had met his burden to provide the specific
         statutes and regulations on which he based his claim.
25

26   *Green,* 19 Cal. 4th at 84.

27        Similarly, Mr. Banko has pled enough facts to show that he was wrongfully terminated in

28   violation of public policy.  He was encouraged not to report the embezzlement of Employee Roe

                                              19

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1   and when he did, he was terminated.  Mr. Banko has pled facts showing that the embezzlement of a

2   publically traded corporation's funds harms the public because it impacts its shareholders.  Indeed,

3   embezzlement has been recognized as harm against the public and as such has been codified in

4   state and federal statutes.  Apple's argument, thus fails since there is no requirement that Mr.

5   Banko plead a specific statute to support his wrongful termination claim.

6       **F.       Mr. Banko Has Pled Enough Facts to State A Claim For Retaliation**

7        "Fundamental public policy prohibits the retaliatory discharge of employees for whistle

8   blowing in the public interest." *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 472

9   (App. Ct. 2013).  And as discussed above, Mr. Banko has pled sufficient facts to show that he

10  engaged in protected activity under the DFA's whistleblower protection provision and that Apple

11  retaliated against him ultimately terminating his employment.

12      Mr. Banko's retaliation claim is also based on California's Labor Code § 1102.5.  "This

13  provision reflects the broad public policy interest in encouraging workplace whistle-blowers to

14  report unlawful acts without fearing retaliation." *McVeigh*, 213Cal. App. 4th at 468.  Apple argues

15  that Mr. Banko's claim under § 1102.5 fails because Mr. Banko (1) did not plead that he

16  complained to a government or law enforcement agency about any state or federal violation; (2)

17  instead reported the alleged violations to his employer; and (3) did not cite to a specific statute.

18  Apple's arguments have no merit.

19      As to Apple's first argument, California's Labor Code § 98.7 addresses the complaint

20  process for an employee who alleges he has been the subject of a California Labor Code violation,

21  including § 1102.5.  *Dowell v. Contra Costa County,* Case No. 3:12-cv-05743-JCS, 2013 U.S. Dist.

22  LEXIS 28526, at *31 (N.D. Cal. March 1, 2013).  Courts have held that plaintiffs need not file a

23  complaint with a government or law enforcement agency under § 1102.5 because the language in §

24  98.7 of the Labor Code is permissive rather than mandatory.  *Dowell,* 2013 U.S. Dist. LEXIS

25  28526, at *35; *also see Turner v. City & County of San Francisco,* 892 F. Supp. 2d 1188, 1201

26  (N.D. Cal. Aug. 29, 2012) (Court is unaware of any California state court decision that has required

27  exhaustion under § 98.7); *Creighton v. City of Livingston,* No. 08-1507,  2009 U.S. Dist. LEXIS

28

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

20

1   93720, at *31 (E.D. Cal. Oct. 7, 2009) ("No California decision requires as a prerequisite to suit for

2   statutory violation of the Labor Code exhaustion of administrative remedies before the Labor

3   Commissioner.").

4         Next Apple argues that Mr. Banko has failed to meet the requisite elements of §1102.5

5   because he reported the alleged violations to his employer and not a government or law

6   enforcement agency.  California courts have held that public policy mandates that §1102.5 be

7   construed to cover reports to supervisors as well.  *Collier v. Superior Court,* 228 Cal. App. 3d 1117

8   (Cal. App. 2d Dist. 1991).  In *Collier,* the court held that an employee terminated in retaliation for

9   reporting to his or her employer the reasonably suspected illegal conduct by other employees that

10  harms the public, as well as the employer, has a cause of action for wrongful discharge.  *Collier,*

11  228 Cal. App. 3d at 1122-1123 ("If public policy were strictly circumscribed by this statute to

12  provide protection from retaliation only where employees report their reasonable suspicions

13  directly to a public agency, a very practical interest in self-preservation could deter employees

14  from taking any action regarding reasonably founded suspicions of criminal conduct by

15  coworkers.")  This decision has been followed in other employment contexts.  For example, in

16  *Holmes v. General Dynamics Corp.,* 17 Cal. App. 4th 1418 (Cal. App. 4th Dist. 1993),  the

17  plaintiff, like Mr. Banko, had been an outstanding employee for his 13 years with the company.

18  And, also like Mr. Banko the employer suddenly terminated Plaintiff after he reported illegal

19  activities to management.  *Holmes,* 17 Cal. App. 4th at 1435.

20        In contrast, Apple cites to *Green v. Raleigh Engineering Co.,* 19 Cal. App. 4th 66 (1998)

21  for the proposition that § 1102.5 does not protect plaintiffs who report suspicions of illegal activity

22  directly to their employer.   But in *Green* the court held in favor of plaintiff after he reported the

23  statutory violations to his employer.  Indeed, the court noted that §1102.5 shows "the Legislature's

24  interest in encouraging employees to report workplace activity that may violate important public

25  policies." *Green,* 19 Cal. App. 4th at 77 (1998).  And in holding in favor of the plaintiff, the court

26  reasoned that "[b]y informing defendant that he believed it was shipping defective parts for use in

27  passenger aircraft, plaintiff gave defendant adequate notice that his concern involved potentially

28

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

1    significant public policy matters because the FAA requires manufacturers to establish quality

2    control procedures for the component parts they produce.  *Green,* 19 Cal. App. 4th at 85 (1998).

3    The court further reasoned that, "unlike some cases in which an employer's violations of its own

4    internal procedures does not implicate public policy [citation omitted], the internal quality control

5    procedures at issue in this case are part of a statutory and regulatory scheme established by

6    Congress and the FAA, designed to ensure the manufacture of safe aircraft."  *Id.*  Similarly to the

7    plaintiff in *Green,* Mr. Banko reported to his employer violations of both internal policies as well

8    as violations of public policies reflected in federal and statutory laws.

9          Lastly, Apple argues that Mr. Banko failed to cite to a specific statute in his complaint.  As

10   an initial matter, Mr. Banko has pled that Employee Roe had embezzled funds and that Apple's

11   violations were brought pursuant to "15 USC §78u-6, 18 USC §1514A and California Labor Code

12   §1102.5.  Mr. Banko clearly pled the specific federal statutes violated by Apple.  (Dkt. No. 1, ¶

13   71).

14         Apple also argues that *Edgerly v. City of Oakland,* 211 Cal.App. 4th 1191 (2012) is

15   analogous to Mr. Banko's § 1102.5 claim but *Edgerly* is clearly distinguishable.  The issue in

16   *Edgerly* was whether § 1102.5 applies to *local laws*.  *Edgerly,* 211 Cal.App. 4th at 1194.  The

17   plaintiff in that case was a former city administrator of the City of Oakland.  She sued the city

18   alleging that then Mayor Ron Dellums wrongfully terminated her in retaliation for her refusal to

19   violate the City's charter, municipal code and civil service rules and resolutions.  *Id.*  The court

20   held that the violations of local laws are not deemed violations of state law for purposes of §

21   1102.5.  *Id.*  In contrast, Mr. Banko has alleged violations of federal and state laws which is clearly

22   within the purview of § 1102.5.

23     Mr. Banko has sufficiently pled facts to support his cause of action for retaliation and thus

24   Apple's motion to dismiss should be denied.

25        **G.   Mr. Banko Has Sufficiently Pled A Claim For Breach of Contract**

26     Mr. Banko pled that Apple had made representations that it would not terminate Mr.

27   Banko's employment without good cause so long as his performance was satisfactory and that he

28

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

22

would have an opportunity to participate in a performance improvement plan.  (Dkt. No. 1, ¶ 83-84).  Apple violated the contract when without good cause and without notice or opportunity to participate in an improvement plan, it terminated Mr. Banko's employment.  (Dkt. No. 1, ¶86).

Apple argues that *Guz v. Bechtel National, Inc.,* 24 Cal. 4th 317 (2000) is controlling.  However, the *Guz* court was considering a wrongful discharge on an employer's motion for summary judgment; thus the heightened showing referenced by Apple – "substantial evidence" is not the same as the pleading standard.  *Guz,* 24 Cal. 4th at 3325 ("This case presents questions about the law governing claims of wrongful discharge from employment as it applies to an employer's motion for summary judgment.").

Nevertheless, the *Guz* case is inapposite because the court there did discuss that under certain circumstances (similar to the case at bar), in an implied contract can arise.  The court stated that, "long and successful service is not necessarily irrelevant to the existence of such a contract.  Over the period of an employee's tenure, the employer can certainly communicate, by its written and unwritten policies and practices, or by informal assurances, that seniority and longevity *do* create rights against termination at will.  The issue is whether the employer's words or conduct, on which an employee reasonably relied, gave rise to that *specific* understanding."  *Guz,* 24 Cal. 4th at 342.  Mr. Banko reasonably relied that he would not be terminated without good cause.  He had been employed with Apple for over 12 years, was involved in many of Apple's commercially successful products, was a supervisor over several engineers, and always received great performance reviews; yet without explanation Mr. Banko was terminated.

Nonetheless, Apple argues that the assurances given to Mr. Banko was not enough to alter the at-will employment nature and cites to various inapplicable cases for support.  First, *Burt v. Irvine*, 237 Cal. App. 2d 828, 849 (1965) is inapplicable because Apple's citation is in reference to the standard for pleading fraud.  *Burt v. Irvine*, 237 Cal. App. 2d 828, 849 (1965) *citing Faulkner v. California Toll Bridge Authority*, 40 Cal. 2d 317, 329 (1953) ("In a case of this kind, general charges of fraud, conspiracy and bad faith on the part of corporate directors are insufficient in the

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

23

1   absence of allegations of specific facts adequate to show the basis for the general charges.").[7]

2   Next, the court in *Allen v. City of Beverly Hills* considered allegations with respect to deprivation

3   of plaintiff's property without due process of law when the City terminated plaintiff's civil service

4   employment.  The plaintiff based his claim on constitutional grounds.  Thus, the court reasoned

5   that "where "the only substantive restriction imposed upon the [decisionmaker's] exercise of

6   authority is the requirement that the basis for its decision be reasonable[,]" any claim to a *protected*

7   *property interest created by the state is negated.*"  *Allen v. Beverly Hills*, 911 F. 2d 367, 371 (9th

8   Cir. 1990).  The plaintiff had failed to allege in his complaint any source of a constitutionally

9   protected right in continued employment, and since the existence of a property right is essential to

10  that claim, his action was dismissed.  *Allen*, 911 F. 2d at 373.  Thus, these cases factually are

11  distinguishable because none of the case law Apple cites to speak to pleading a cause of action for

12  breach of an employment contract.

13          Indeed, Apple's arguments muddle the federal notice pleading standard with the evidentiary

14  standard in motions for summary judgment.  As courts have noted:

15          A court may dismiss a complaint only if it is clear that no relief could be granted
        under any set of facts that could be proved consistent with the allegations.  [citations
16      omitted]  Discovery and summary judgment motions – not motions to dismiss –
        "define disputed facts" and "dispose of unmeritorious claims. [citations omitted].
17      The issue is not whether a plaintiff will ultimately prevail but whether the claimant
        is entitled to offer evidence to support the claims.  Indeed it may appear on the face
18      of the pleadings that a recovery is very remote and unlikely but that is not the test.
        [citations omitted].
19

20  *Martinez v. California,* No. CV-F-07-996 AWI DLB, 2008 U.S. Dist. LEXIS 81523, *4-5 (E.D.

21  Cal. October 4, 2008).

22          Thus, Mr. Banko has pled enough facts to state a cause of action for breach of the

23  employment contract and Apple's motion to dismiss this cause of action should be denied.

24

25  _____

26          [7] In addition, the language highlighted by Apple are words that describe the nature of the
    actions taken by the employer (e.g., "arbitrary").  In contrast, even Apple's statements demonstrate
27  that the complaint alleges facts that show *what acts* were taken by the employer  (Motion at p.
    19:13-15).
28

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

24

**H.   Mr. Banko Has Properly Pled Breach Of The Covenant Of Good Faith And Fair Dealing**

As Apple acknowledges the court in *Guz* did recognize that a plaintiff may assert a cause of action for breach of the covenant of good faith and fair dealing.  The court stated that it did not "suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts.  As indicated above, the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits.  Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned."  *Guz,* 24 Cal. 4th at 353 n. 18.

In his complaint, Mr. Banko pleads that he was unable to receive the benefits of his employment relationship that flowed from the contract with Apple.  (Dkt. No., ¶95).  Further, Apple's motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive Mr. Banko of the benefits thereof.  (Dkt. No., ¶95).   Thus, Mr. Banko has pled enough facts to support its cause of action for breach of the covenant of good faith and fair dealing.

**IV.   CONCLUSION**

Mr. Banko has pled enough facts to state a claim for violation of the Dodd-Frank Act, wrongful termination in violation of public policy, retaliation, breach of employment contract, and breach of implied covenant of good faith and fair dealing.  Thus, for all the foregoing reasons, Mr. Banko respectfully request Apple's motion to dismiss be denied in its entirety.

DATED: August 26, 2013                      MICLEAN GLEASON LLP

                                     By _____
                                        David J. Miclean
                                        Gary R. Gleason
                                        Attorneys for Plaintiff Joshua Banko

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1181 Fax

# EXHIBIT C

*Banko v Apple* (2013), Apple's Reply for Apple's 1st Motion to Dismiss

1   TODD K. BOYER, Bar No. 203132
    tboyer@littler.com
2   BENJAMIN A. EMMERT, Bar No. 212157
    bemmert@littler.com
3   LITTLER MENDELSON, P.C.
    50 W. San Fernando, 15th Floor
4   San Jose, California  95113.2303
    Telephone:    408.998.4150
5   Facsimile:    408.288.5686

6   Attorneys for Defendant
    APPLE INC.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  JOSHUA BANKO,                          Case No.  CV13-02977 RS

13                Plaintiff,               **DEFENDANT APPLE INC.'S REPLY
                                           MEMORANDUM OF POINTS AND
14        v.                               AUTHORITIES IN SUPPORT OF ITS
                                           MOTION TO DISMISS PLAINTIFF'S
15  APPLE INC., and DOES 1-50,             COMPLAINT PURSUANT TO
                                           FED.R.CIV.P. 12(B)(1) AND 12(B)(6)**
16                Defendants.
                                           Date:       Thursday, September 26, 2013
17                                         Time:       1:30 p.m.
                                           Judge:      Hon. Richard Seeborg
18                                         Courtroom:  3 (17th Floor)

19                                         Trial Date:  Not Set

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1

**TABLE OF CONTENTS**

2

PAGE

3    I.      INTRODUCTION ............................................................................................................... 1

4    II.      LEGAL ARGUMENT........................................................................................................ 1

5          A.      Plaintiff's Opposition Fails To Present Any Legal Authority Or Viable
6               Argument Rebutting The Undisputed Authority Apple Cited In Its Moving
              Papers Demonstrating He Has Not Alleged Facts Establishing His First Claim
7               For Relief For An Alleged Violation Of The Dodd-Frank Act (15 U.S.C. §
              78u-6)............................................................................................................................. 1

8                 1.      Dodd-Frank Is Unambiguous In Its Definition Of A Whistleblower .............. 1

9                 2.      SEC Guidance Directly Contradicts The Statute's Plain Language And
10                        Therefore Does Not Warrant Deference ............................................................. 3

11                 3.      Plaintiff Did Not Engage In Protected Activity Under SOX Because
                       He Did Not Report Material Shareholder Fraud ............................................... 5

12          B.      Plaintiff's Opposition Fails To Establish He Has Alleged Sufficient Facts To
13               State His Second Claim For Relief For Wrongful Termination In Violation Of
              A Fundamental Public Policy ...................................................................................... 6

14          C.      Plaintiff's Opposition Fails To Establish He Has Alleged Sufficient Facts To
15               State His Third Claim For Relief For Retaliation In Violation Of 15 U.S.C.
              Section 78u-6 And/Or California Labor Code Section 1102.5................................... 9

16                 1.      Plaintiff Has Not Alleged Facts Establishing Apple Engaged In Any
17                        Unlawful Retaliation Under 15 U.S.C. Section 78u-6..................................... 9

18                 2.      Plaintiff Has Not Alleged Facts Establishing Apple Unlawfully
                       Terminated His Employment In Violation Of Labor Code Section
                       1102.5................................................................................................................ 9

19          D.      Plaintiff Has Not Alleged Facts Establishing This Fourth Claim For Breach Of
20               Contract...................................................................................................................... 13

21          E.      Plaintiff Has Not Alleged Facts Establishing His Fifth Claim For Breach Of
              The Implied Covenant Of Good Faith And Fair Dealing ......................................... 14

22    III.      CONCLUSION............................................................................................................... 15

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Abelleira v. District Court of Appeal,*
  17 Cal.2d 280 (1941) ...................................................................................10

*Acosta v. Astor,*
  120 Cal.App.4th 596 (2004) .......................................................................15

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.,*
  448 F.3d 1092 (9th Cir. 2006) ......................................................................4

*Asadi v. G.E. Energy,*
  2013 U.S. App. LEXIS 14470 (5th Cir. July 17, 2013).........................3, 4

*Bd. of Governors of Federal Reserve System, v. Dimension Fin. Corp.,*
  474 U.S. 361 (1986)........................................................................................4

*Bedroc Ltd. v. United States,*
  541 U.S. 176 (2004).........................................................................................1

*Bionghi v. Metro Water Dist.,*
  70 Cal.App.4th 1358 (1999) ........................................................................15

*California v. Montrose Chemical Corp.,*
  104 F.3d 1507 (9th Cir. 1997) ......................................................................2

*Campbell v. Regents of University of California,*
  35 Cal.4th 311 (2005)...................................................................................10

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1984)........................................................................................4

*Collier v. Superior Court,*
  228 Cal.App.3d 1117 (1991) .......................................................................13

*Conn. Nat'l Bank v. Germain,*
  503 U.S. 249 (1992)........................................................................................2

*Creighton v. City of Livingston,*
  628 F. Supp. 2d 1199 (E.D. Cal. 2009)......................................................10

*Dolis v. Bluem USA, Inc.*
  2011 U.S. Dist. LEXIS 110575 (N.D. Cal. 2011) ....................................11

*Drzewiecki v. H&R Block, Inc.,*
  24 Cal.App.3d 695 (1972) ...........................................................................14

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

ii.

Case No. CV13-02977 (RS)

TABLE OF AUTHORITIES

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Edgerly v. City of Oakland,*
211 Cal.App.4th 1191 (2012) ........................................................................................11, 12

*Egan v. TradingScreen, Inc.,*
2011 U.S. Dist. LEXIS 47713 (S.D.N.Y. May 4, 2011)............................................................3

*Ferretti v. Pfizer, Inc.*
855 F.Supp.2d 1017 (N.D. Cal. 2012) ...................................................................................10

*Foley v. Interactive Data Corp.,*
47 Cal.3d 654 (1988) ............................................................................................................6, 13

*Gant v. Sentry Insurance,*
1 Cal.4th 1083 (1992) .................................................................................................................7

*Genberg v. Porter,*
2013 U.S. Dist. LEXIS 41302 (Dist. Colo. Mar. 25, 2013).....................................................3

*Godfrey v. Union Pac. R.R. Co.,*
ARB Case No. 08-088, at 4 (July 30, 2009) ...........................................................................5

*Green v. Ralee Engineering Co.,*
19 Cal.4th 66 (1988) ...................................................................................................... passim

*Guz v. Bechtel National, Inc.,*
24 Cal.4th 317..................................................................................................................13, 15

*Halvorsen v. Aramark Uniform Services, Inc.,*
65 Cal.App.4th 1383 (1998) ...................................................................................................14

*Holmes v. General Dynamics Corp.,*
17 Cal.App.4th 1418 (1993) ...................................................................................................13

*Hunter v. Up-Right, Inc.,*
6 Cal.4th 1174 (1993) ..............................................................................................................15

*Jenning v. Marralle,*
8 Cal.4th 121 (1994) ..................................................................................................................8

*Jeske v. Maxim Healthcare Services, Inc.,*
2012 U.S. Dist. LEXIS 2963 (E.D. Cal. 2012)..........................................................................8

*Livingston v. Wyeth, Inc.,*
520 F.3d 344 (4th Cir. 2008) ....................................................................................................5

TABLE OF AUTHORITIES

1

2

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

3

4

*MacDonald v. State of California,*
   2013 Cal. App. LEXIS 683 (3rd App. Dist., August 27, 2013)...............................11

5

*Microsoft Corp. v. C.I.R.,*
   311 F.3d 1178 (9th Cir. 2002) ...........................................................................4

6

7

*Morelewicz v. Government Employees Insurance Company,*
   207 Fed. Appx. 823 (9th Cir. 2006).................................................................6

8

9

*N.L.R.B. v. Hotel and Restaurant Employees and Bartenders' Union Local 531,*
   623 F.2d 61 (9th Cir. 1980) ............................................................................13

10

*Newfield v. Insurance Co. of the West,*
   156 Cal.App.3d 440 (1984) ............................................................................13

11

12

*Nollner v. Southern Baptist Convention,*
   852 F. Supp. 2d 986 (Dist. Tenn. April 2, 2012) ........................................3

13

14

*Passantino v. Johnson & Johnson Consumer Prods.,*
   212 F.3d 493 (9th Cir. 2000) ...................................................................9, 11

15

*People v. Gilbert*
   1 Cal.3d 475,482 (1969) ...............................................................................13

16

17

*Sanders v. Arneson Products, Inc.,*
   91 F.3d 1351 (9th Cir. 1996) ..........................................................................8

18

19

*Seattle-First Nat. Bank v. Conaway,*
   98 F.3d 1195 (9th Cir. 1996) .........................................................................2

20

*Soukup v. Law Office of Herbert Hafif,*
   39 Cal.4th 260 (2006) ....................................................................................9

21

22

*Stevens v. Superior Court,*
   16 Cal.4th 880 (1997) ....................................................................................6

23

*Turner v. Anheuser-Busch, Inc.,*
   7 Cal.4th 1238 (1994) ....................................................................................6

24

25

*United States v. Vogel Fertilizer Co.,*
   455 U.S. 16 (1982)..........................................................................................4

26

27

*Vargas v. BP America, Inc.,*
   2011 U.S. Dist. LEXIS 107762 (E.D. Cal. 2011)......................................7, 8

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. CV13-02977 (RS)

TABLE OF AUTHORITIES

1

2

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

3

4

*Vargas v. BP America, Inc.,*
   2011 U.S. Dist. LEXIS 49193 (E.D. Cal. 2011) .......................................14

5

*Wagner v. Bank of America Corp.,*
   2013 U.S. Dist. LEXIS 101297 .......................................3, 4

6

7

*Weingand v. Harland Fin. Solutions, Inc.,*
   2012 U.S. Dist. LEXIS 114651 (N.D. Cal. 2012) ...............7, 8

8

9

*Williams v. Housing Authority of Los Angeles,*
   121 Cal.App.4th 708 (2004) .......................................10

10

**STATUTES**

11

15 U.S.C. § 78u-6(a)(6) .......................................2, 4

12

15 U.S.C. § 78u-6(h)(1)(A) .......................................1

13

15 U.S.C. § 78u-6(h)(1)(A)(iii) .......................................3

14

15 U.S.C. § 78u-6(h)(1)(A), § 78u-6(a)(6) .......................................2

15

Cal. Lab. Code § 98 .......................................9, 10, 11

16

Cal. Lab. Code § 1102.5 .......................................11, 12

17

**OTHER AUTHORITIES**

18

17 C.F.R. §240.21F-2 .......................................4

19

7 (ARB Jan. 10, 2010) .......................................5

20

Fed.R.Civ.P. 8 .......................................6, 8

21

S. Rep. No. 111-176 .......................................2

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. CV13-02977 (RS)

I.     **INTRODUCTION**

Plaintiff's Opposition to Apple Inc.'s ("Apple") motion to dismiss fails to address or respond to the undisputable authority that demonstrates he cannot establish the essential elements of his five claims for relief as a matter of law.  Rather, Plaintiff clings to the incorrect and legally unsupported assertion that he may assert claims under Dodd-Frank, the Sarbanes-Oxley Act ("SOX"), and the California Labor Code without first having reported his complaint to the Securities and Exchange Commission or exhausting his administrative remedies, and as a result, all claims brought under these statutory schemes fail as a matter of law.  Similarly, Plaintiff has failed to identify the public policy underlying his wrongful termination claim, and fails to overcome the statutory presumption that his employment with Apple was "at-will."  Moreover, because Plaintiff has not identified how he could amend his pleading to correct the deficiencies, Apple's motion should be granted without leave to amend in its entirety.

II.    **LEGAL ARGUMENT**

   A.    **Plaintiff's Opposition Fails To Present Any Legal Authority Or Viable Argument Rebutting The Undisputed Authority Apple Cited In Its Moving Papers Demonstrating He Has Not Alleged Facts Establishing His First Claim For Relief For An Alleged Violation Of The Dodd-Frank Act (15 U.S.C. § 78u-6).**

   1.    **Dodd-Frank Is Unambiguous In Its Definition Of A Whistleblower.**

To circumvent the procedural mechanisms Congress established under SOX, Plaintiff contravenes "[t]he preeminent canon of statutory interpretation [that] requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'"  *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004).  The plain language of Dodd-Frank could not be clearer: the anti-retaliation provision prohibits actions taken against "whistleblowers," 15 U.S.C. § 78u-6(h)(1)(A), and a "whistleblower" is defined as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws *to the Commission* . . . ."  *Id.* § 78u-6(a)(6) (emphasis added).  While Plaintiff goes to great lengths to characterize this clear language as ambiguous, the Court's analysis is quite simple.  The Court need

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

1.                                        Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1   not, as Plaintiff purports, analyze irrelevant sections of Dodd-Frank.[1]   Nor is it required to examine

2   the legislators' motives when they passed the law.[2]   Rather, the United States Supreme Court and the

3   Ninth Circuit have both consistently held that "if the language of a statute is clear and there is no

4   ambiguity, then there is no need to 'interpret' the language by resorting to the legislative history or

5   other extrinsic aids." *California v. Montrose Chemical Corp.*, 104 F.3d 1507, 1513 (9th Cir. 1997);

6   *Seattle-First Nat. Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir. 1996) ("[c]anons of statutory

7   construction dictate that if the language of a statute is clear, we look no further than that language in

8   determining the statute's meaning."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)

9   ("[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial

10   inquiry is complete.'").

11               Indeed, Plaintiff attempts to lead this Court into a legal quagmire.   Asserting

12   Congress intended Dodd-Frank to expand whistleblower protections, Plaintiff cites to a single

13   sentence from a Senate Committee report stating whistleblower programs motivate people to "come

14   forward and assist ***the Government*** to identify and prosecute persons who have violated securities

15   laws."  S. Rep. No. 111-176, at 72-73 (emphasis added).   Assisting "the Government," however,

16   strongly supports the argument that Dodd-Frank requires whistleblowers to report securities fraud to

17   the Securities and Exchange Commission ("SEC"), and not, as Plaintiff has done here, to merely file

18   a private civil right of action.   Yet the Court need not parse out these individual phrases within a

19   Congressional debate.   Instead, "the statutory language is normally the best evidence of

20   Congressional intent." *California*, 104 F.3d at 1513 n. 2.  Congress unambiguously not only chose

21   the word "whistleblower" in Dodd-Frank's anti-retaliation provision, but also defined a

22   "whistleblower" as an individual who reports information "to the Commission." 15 U.S.C. § 78u-

23   6(h)(1)(A), § 78u-6(a)(6).  That ends the judicial inquiry.

24

25   [1]        Plaintiff cites to § 78u-6(h)(1)(B)(i) of Dodd-Frank for the position that an "individual" may bring a
     discrimination claim before a United States District Court.  This quote, however, is taken out of context.  Read in its
26   entirety, the section states that such a private right of action is available only for a "violation of subparagraph (A),"
     which, as cited above, ***applies only to those who meet the law's definition of a "whistleblower."***

27   [2]        Plaintiff's reliance on Congressional debates related to the number of SOX claims dismissed before the
     Occupational Safety and Health Administration ("OSHA") is irrelevant.  If Congress intended to expand whistleblower
28   protection outside of administrative agency oversight it would not have defined a "whistleblower" under Dodd-Frank as
     an individual who reports information "to the Commission . . . ." 15 U.S.C. § 78u-6(a)(6).

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

2.                           Case No. CV13-02977 (RS)

DEF'T'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1    Plaintiff's reliance on selective district court opinions is equally unavailing.  The

2    highest court to consider this issue, *Asadi v. G.E. Energy*, 2013 U.S. App. LEXIS 14470,*27 (5th

3    Cir. July 17, 2013), unequivocally rejected Plaintiff's contention that he need not follow the

4    prescribed administrative procedures of his SOX claim.  Unlike Defendant, Plaintiff has not cited,

5    and cannot cite, a single appellate decision to support his position.  As a Circuit Court of Appeals

6    decision, *Asadi* provides a detailed analysis of the federal whistleblower statutory scheme and is

7    highly persuasive authority.   *Asadi* considered, and rejected, the same district court decisions

8    Plaintiff relies on before this Court.  Much of the language Plaintiff cites are statements made in

9    dicta.[3]   Moreover, courts outside the Fifth Circuit have already adopted *Asadi's* reasoning.  The

10   United States District Court of Colorado has changed its position from *Genberg*, a case upon which

11   Plaintiff relies, and now holds that a "whistleblower" must report information to the SEC in order to

12   proceed under Dodd-Frank.  See *Wagner v. Bank of America Corp.*, 2013 U.S. Dist. LEXIS 101297,

13   at **15-17 (D. Colo. July 19, 2013) ("if subsection (iii) were interpreted to permit a non-

14   whistleblower to sue under Dodd-Frank, then Sarbanes-Oxley's anti-retaliation provisions would be

15   moot . . . ").

16                    **2.    SEC Guidance Directly Contradicts The Statute's Plain Language And
                              Therefore Does Not Warrant Deference.**
17

18    The Court need not decipher how SEC regulations define a "whistleblower" because

19   Congress has already provided a clear and unambiguous definition of the term in the text of Dodd-

20   Frank.  As illustrated by the Supreme Court's recent decision in *University. of Texas Southwestern*

21   *Medical Center. v. Nassar*, courts will not defer to agency guidance when the statutory language is

22   unambiguous.  186 L. Ed. 2d 503, 523-24 (2013).  Just as Plaintiff attempts here, the plaintiff in

23   *Nasser* argued the Court should defer to guidance from the Equal Employment Opportunity

24

25   [3]      In *Genberg v. Porter*, 2013 U.S. Dist. LEXIS 41302 (Dist. Colo. Mar. 25, 2013) the court dismissed the Dodd-
         Frank claim because the alleged retaliatory action was actually compelled by the Bankruptcy Code, and thus could not
26       constitute actionable retaliation.  In *Nollner v. Southern Baptist Convention*, 852 F. Supp. 2d 986 (Dist. Tenn. April 2,
         2012) the court dismissed the plaintiff's complaint on the grounds his reporting Foreign Corrupt Practices Act is not
27       protected acidity under Dodd-Frank. The *Egan v. TradingScreen, Inc.*, 2011 U.S. Dist. LEXIS 47713, at *19 (S.D.N.Y.
         May 4, 2011) language is also dicta because the court ultimately held the plaintiff had failed to allege that he had
28       engaged in any of the protected activities enumerated in 15 U.S.C. § 78u-6(h)(1)(A)(iii).

LITTLER MENDELSON, P.C.
0 W. San Francisco, 15th Floor
San Jose, CA 95113.2303
408.998.4150

3.                                                  Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1   Commission ("EEOC") when interpreting the expansiveness of Title VII's anti-retaliation provision.

2   The Court, however, refused to adopt the EEOC's expansive reading of the law, because such a

3   reading would impermissibly go against the "plain textual meaning" of the statute. *Id.* Likewise, the

4   Ninth Circuit has observed that when "the statute clearly expresses Congress's intent, we do not

5   defer to the conflicting regulation." *Microsoft Corp. v. C.I.R.*, 311 F.3d 1178, 1189 (9th Cir. 2002);

6   *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 448 F.3d 1092, 1096 (9th

7   Cir. 2006) ("[w]here [a statute's] language is plain and admits of no more than one meaning the duty

8   of interpretation does not arise, and the rules which are to aid doubtful meanings need no

9   discussion.") (internal citation omitted); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council,*

10  *Inc.*, 467 U.S. 837, 842-43 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter;

11  for the court, as well as the agency, must give effect to the unambiguously expressed intent of

12  Congress."). Congress defined a "whistleblower" under Dodd-Frank as "any individual who

13  provides, or 2 or more individuals acting jointly who provide, information relating to a violation of

14  the securities to the Commission . . . ." 15 U.S.C. § 78u-6(a)(6). The SEC regulations, as Plaintiff

15  concedes, directly contradict this language by defining a whistleblower as one who reports

16  information to individuals other than the SEC. *See* 17 C.F.R. 240.21F-2. The regulation is therefore

17  invalid. *Microsoft Corp.*, 311 F.3d at 1189; *see also Bd. of Governors of Federal Reserve System, v.*

18  *Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986) ("[t]he traditional deference courts pay to agency

19  interpretation is not to be applied to alter the clearly expressed intent of Congress."); *United States v.*

20  *Vogel Fertilizer Co.*, 455 U.S. 16, 24-26 (1982).[4]

21

22

23

24

---

25  [4]    Even if the Court considered the SEC regulations, the inconsistencies in the rules remove any need for deference. The Court in *Nassar* also refused to defer to an agency when the guidance is incomplete and inconsistent.

26  *See Nassar*, 186 L. Ed. 2d 503 at 523-24. Here, "[w]hile 17 C.F.R. § 240.21F-2(b)(1) appears to adopt a broader definition of 'whistleblower,' . . . 17 C.F.R. § 240.21F-9, which governs the procedures for submitting original

27  information to the SEC, explicitly requires that an individual submit information about a possible securities law violation to the SEC . . . The SEC's inconsistency in defining the term 'whistleblower' for purposes of the Dodd-Frank

28  whistleblower-protection provision does not strengthen [plaintiff's] position that the SEC's interpretation 'reasonably effectuate[s] Congress's intent.'" *Asadi*, 2013 U.S. App. LEXIS 14470, at **29-30.

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

4.

Case No. CV13-02977 (RS)

DEF'T'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1

**3.    Plaintiff Did Not Engage In Protected Activity Under SOX Because He Did Not Report Material Shareholder Fraud.**

2

3    Even if this Court ignored the clear definition of a whistleblower that Dodd-Frank

4    provides, Plaintiff cannot, as a matter of law, establish that his reports relating to a co-worker's

5    expense reports involved material shareholder fraud so as to constitute protected activity.[5]   Plaintiff

6    does not dispute that he had to complain about material fraud against shareholders to show he

7    engaged in protected activity under SOX. See, e.g., *Livingston v. Wyeth, Inc.*, 2006 U.S. Dist.

8    LEXIS 52978, *30 (M.D.N.C. July 28, 2006) aff'd 520 F.3d 344 (4th Cir. 2008); *Godfrey v. Union*

9    *Pac. R.R. Co.*, ARB Case No. 08-088, at 4 (July 30, 2009) ("employee must ordinarily complain

10    about a material misstatement of fact (or omission) concerning a corporation's financial condition on

11    which an investor would reasonably rely").   As explained in *Riddle v. First Tennessee Bank*,

12    reporting a co-employee's inaccurate expense reports is not, as a matter of law, "an objectively

13    reasonable belief that shareholders have been or were likely to be defrauded." 2012 U.S. App.

14    LEXIS 18684, *19-21 (6th Cir. Aug. 31, 2012).  Plaintiff attempts to argue this case is inapposite

15    because it involved the Bank Bribery Act, but that is erroneous.  The decision turned on whether

16    reporting expense report errors by a single employee constituted protected activity under SOX.  To

17    rescue his complaint from dismissal, Plaintiff then asserts that embezzlement "is the type of conduct

18    contemplated by SOX."   This is not the legal standard: courts and administrative agencies

19    consistently hold that protected activity must concern material fraud related to shareholders. See

20    *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 355 (4th Cir. 2008); *Godfrey*, ARB Case No. 08-088, at 4;

21    *Robinson v. Morgan Stanley*, 2010 DOLSOX LEXIS 7 (ARB Jan. 10, 2010).  A report is material

22    when it relates to a corporation's financial condition on which an investor would reasonably rely.

23    *See Livingston*, 520 F.3d at 355.  Contrary to Plaintiff's claims, Apple's argument that a single

24    employee's expense reports cannot impact its overall financial records is not a "bombastic assertion"

25

26

---

27    [5]    Plaintiff also contends that his failure to file his SOX charge with OSHA within 180 days should not be fatal to his claim for public policy reasons.  Plaintiff, while represented by counsel, deliberately chose not to file his SOX charge with OSHA and instead filed it directly with this Court.  His strategic decision to ignore statutory language and Circuit Court precedent is not a matter of public concern.

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

5.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1  against the "spirit" of SOX, but instead the standard courts and administrative agencies apply to

2  determine whether conduct rises to the level of protected activity.

3  **B.   Plaintiff's Opposition Fails To Establish He Has Alleged Sufficient Facts To State His Second Claim For Relief For Wrongful Termination In Violation Of A Fundamental Public Policy.**

5  Apple established in its moving papers that Plaintiff's Complaint fails to allege facts

6  sufficient to meet Fed.R.Civ.P. 8's minimum pleading standards to state a claim for wrongful

7  termination in violation of public policy.  Plaintiff's Complaint does nothing more than allege, in

8  completely conclusory terms, that his termination violated some unidentified "Apple policy and the

9  law."  California's Supreme Court has conclusively held that wrongful termination in violation of

10 public policy claims cannot be predicated on an alleged violation of an employer's own internal

11 policies because they do not inure to the benefit of the public.  *Turner v. Anheuser-Busch, Inc.*, 7

12 Cal.4th 1238 (1994).   Plaintiff's other conclusory allegation that Apple violated "the law" is

13 similarly deficient under even the authorities Plaintiff cites because it fails to identify or reference

14 any public policy that inures to the public's benefit sufficient to establish this claim.  *Stevens v.*

15 *Superior Court*, 16 Cal.4th 880, 901-902 (1997).   Apple's motion to dismiss should therefore be

16 granted.

17 Plaintiff concedes that a violation of Apple's own internal policies cannot support a

18 wrongful termination cause of action.  In fact, Plaintiff's Opposition is completely devoid of any

19 authority or argument holding otherwise.  Plaintiff has included no such argument because he

20 cannot.  It is well established that a wrongful termination in violation of public policy claim must be

21 tethered to some violation of a recognized constitutional, statutory or regulatory provision that

22 "'inures to the benefit of the public' rather than serving merely the interests of the individual."

23 *Stevens,* 16 Cal.4th at 901.  Allegations that an employer's alleged conduct violated the employer's

24 own policies cannot meet this pleading requirement because such policies inure only to the benefit of

25 the employer or employee and not the public.  *Turner,* 7 Cal.4th at 1257; *Foley v. Interactive Data*

26 *Corp.,* 47 Cal.3d 654, 669-671 (1988); *Morelewicz v. Government Employees Insurance Company*,

27 207 Fed. Appx. 823, 826 (9th Cir. 2006) (holding an employee's allegation that the defendant

28 violated its internal policies cannot support a wrongful termination claim because they "do not

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

6.                    Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1   implicate fundamental public policies embodied in a statute"). For the same reasons, Plaintiff's

2   allegations that Apple allegedly wrongfully terminated his employment in violation of "Apple

3   policies" likewise cannot establish his second claim for relief as a matter of law.

4       Plaintiff's contention that he is not required to cite a pertinent statutory or regulatory

5   provision sufficient to support this claim, and/or that he has done so, are also without merit. As an

6   initial matter, a simple review of Plaintiff's second claim for relief shows he has identified no

7   constitutional, statutory, or regulatory provision, either by identifying the statute or by reference to

8   any statutory scheme. This is an essential element of this claim and his failure to do so is fatal.

9       California's Supreme Court stated on this point:

10      [I]t is generally agreed that 'public policy' as a concept is notoriously
        resistant to precise definition, and that courts should venture into this area,
11      if at all, with great care and due deference to the judgment of the
        legislative branch, "lest they mistake their own predilections for public
12      policy which deserves recognition at law." [citation omitted]. Indeed, one
        of the most frequently cited decisions favoring a broad interpretation,
13      *Parnar v. Americana Hotels, Inc., supra,* 652 P.2d 625, observed that
        courts "should proceed cautiously" if called upon to declare public policy
14      absent some prior legislative expression on the subject.

15  *Gant v. Sentry Insurance,* 1 Cal.4th 1083, 1095 (1992).

16      By failing to identify "the law" he contends Apple violated in terminating his

17  employment either by specifically identifying a constitutional, statutory or regulatory provision, or

18  by generally identifying a statutory scheme, Plaintiff is impermissibly asking this Court to either

19  state what it believes is a public policy that deserves recognition at law or equally impermissibly

20  "guess at the nature of the public policies involved, if any." *Green v. Ralee Engineering Co.,* 19

21  Cal.4th 66, 83 (1988). Either way, Plaintiff's failure to cite or, at minimum reference, any

22  constitutional, statutory or regulatory provision that Apple allegedly violated in terminating his

23  employment is fatal to this claim for relief. *Id.* Plaintiff's citation to *Vargas v. BP America, Inc.,*

24  2011 U.S. Dist. LEXIS 107762 (E.D. Cal. 2011) and *Weingand v. Harland Fin. Solutions, Inc.,* 2012

25  U.S. Dist. LEXIS 114651 (N.D. Cal. 2012) do not support Plaintiff's contentions otherwise.

26      Neither the *Vargas* nor the *Weingand,* Court held a plaintiff's conclusory allegation

27  that the defendant violated "the law" was sufficient to establish a wrongful termination in violation

28  of public policy cause of action. Rather, they hold just the opposite. The plaintiff in *Vargas* alleged

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

7.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1   his employment was terminated in retaliation for his reporting violations of the "Federal Motor
2   Carrier Act, the California Vehicle Code, the California Labor Code, and Cal OSHA." *Vargas,* 2011
3   U.S. Dist. LEXIS 107762,*2.    The plaintiff in *Weingand,* alleged his employer wrongfully
4   terminated his employment in retaliation for his alleged complaints that the defendant's pay
5   practices violated California's wage and hour laws. *Weingand,* 2012 U.S. Dist. LEXIS 114651,*22-
6   24.  The plaintiffs in both cases identified, at minimum, a statutory scheme which evidenced a
7   fundamental public policy that the defendants allegedly violated in terminating their employment as
8   required by both California law and Fed.R.Civ.P. 8's pleading requirements. *Green,* 19 Cal.4th at
9   83.  They did not rely on a vague conclusory allegation that the defendants violated "the law" as
10  Plaintiff suggests.  Plaintiff's failure to likewise tether his public policy claim to a recognized statute
11  or statutory scheme is fatal to this claim. *Jeske v. Maxim Healthcare Services, Inc.,* 2012 U.S. Dist.
12  LEXIS 2963,*25-28 (E.D. Cal. 2012) (granting the defendant's motion to dismiss the plaintiff's
13  wrongful termination claim because the plaintiff failed to identify any statutorily based public policy
14  that the defendant allegedly violated).

15          Finally, even if this Court finds that Plaintiff identified the Dodd-Frank Act as the
16  predicate statute for his wrongful termination claim as he contends in his Opposition, his failure to
17  allege facts sufficient to establish his first claim for relief is fatal to this claim.  As established above,
18  Plaintiff has not and cannot allege facts establishing his first claim for relief as a matter of law.  This
19  is fatal to his claim for wrongful termination in violation of public policy. *Sanders v. Arneson*
20  *Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding a plaintiff's wrongful termination in
21  violation of public policy claim fails where the plaintiff cannot establish the defendant violated the
22  law on which it is based); *Jeske,* 2012 U.S. Dist. LEXIS 2963,*25-28 (finding the plaintiff's failure
23  to allege facts establishing the defendant violated California's wage and hour laws was fatal to her
24  wrongful termination claim based on these statutes); *Jenning v. Marralle*, 8 Cal.4th 121, 135-136
25  (1994) (no wrongful termination in violation of public policy claim will lie where the defendant is
26  not shown to have violated a predicate law).  Apple's motion should therefore be granted.

27
28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

8.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

C.   **Plaintiff's Opposition Fails To Establish He Has Alleged Sufficient Facts To State His Third Claim For Relief For Retaliation In Violation Of 15 U.S.C. Section 78u-6 And/Or California Labor Code Section 1102.5.**

As established in Apple's moving papers, Plaintiff's third claim for relief fails as a matter of law because he has not alleged Apple violated either Dodd-Frank or Section 1102.5 in terminating his employment. Plaintiff's Opposition does not establish otherwise.

1.   **Plaintiff Has Not Alleged Facts Establishing Apple Engaged In Any Unlawful Retaliation Under 15 U.S.C. Section 78u-6.**

Plaintiff admits his third claim for relief for retaliation in violation of 15 U.S.C. section 78u-6 is based on the exact same factual allegations has his first claim for relief. As Plaintiff has alleged no facts establishing he engaged in any protected activity under the Dodd-Frank Act, his third claim for retaliation fails also. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2000) (stating the elements for *prima facie* case of retaliation), citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 2987).

2.   **Plaintiff Has Not Alleged Facts Establishing Apple Unlawfully Terminated His Employment In Violation Of Labor Code Section 1102.5.**

As established in Apple's moving papers, Plaintiff has not and cannot allege facts sufficient to establish his claim that Apple terminated his employment in violation of Labor Code section 1102.5. Plaintiff has not and cannot establish otherwise.

a.   **Plaintiff Admits He Has Not Properly Exhausted The Required Administrative Remedies To State A Claim Based On Labor Code Section 1102.5.**

Plaintiff's contention that he was not required to exhaust his necessary and jurisdictional administrative remedies prior to bringing his claim under Labor Code Section 1102.5, is without merit. It is well established that "Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to 'encourage workplace whistle-blowers to report unlawful acts without fearing retaliation.'" *Soukup v. Law Office of Herbert Hafif*, 39 Cal.4th 260, 287 (2006), quoting *Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 77 (1998). Labor Code section 1102.5 is within the jurisdiction of California's Labor Commissioner. Cal. Lab. Code § 98.6(a). Section 98.6(a) states, in pertinent part:

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

9.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1

2

3

> No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in . . . [Labor Code] Chapter 5 (commencing with Section 1101 of Part 3 of Division 2.

4

5

6

7

8

9

10

Cal. Lab. Code § 98.6(a). Because Labor Code section 1102.5 is delineated in Labor Code Chapter 5 and therefore falls under the jurisdiction of the Labor Commissioner, Plaintiff must exhaust his administrative remedies with the Labor Commissioner before he can assert this claim in civil court. Cal. Labor Code § 98.7. Section 98.7 provides: "[a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation." Cal. Lab. Code § 98.7(a).

11

12

13

14

15

16

17

18

19

20

The rule of exhaustion of administrative remedies is well established in California law. "In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Campbell v. Regents of University of California*, 35 Cal.4th 311, 321 (2005); see also *Abelleira v. District Court of Appeal*, 17 Cal.2d 280, 292 (1941). The doctrine of exhaustion of administrative remedies "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." *Creighton v. City of Livingston,* 628 F. Supp. 2d 1199, 1220 (E.D. Cal. 2009) (citing *Abelleira, supra*, 17 Cal.2d at 293). ***This is true even where the administrative remedy is couched in permissive, as opposed to mandatory, language****.* *Williams v. Housing Authority of Los Angeles*, 121 Cal.App.4th 708, 734 (2004) (emphasis added).

21

22

23

24

25

26

27

"To properly allege exhaustion of administrative proceedings, a plaintiff must articulate facts supporting his or her allegation that the relevant administrative remedies have been exhausted." *Creighton*, 628 F.Supp.2d at 1220. A Complaint that fails to include these necessary allegations is properly subject to a motion to dismiss. *Id.* at 1221 (granting motion for judgment on the pleadings to the plaintiff's claim for alleged violation of California Labor Code section 98.6 because the Complaint failed to allege facts establishing the plaintiff exhausted her administrative remedies); see also See *Ferretti v. Pfizer, Inc.* 855 F.Supp.2d 1017, 1023-1024 (N.D. Cal. 2012)

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

10.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1    (holding that a plaintiff must exhaust the administrative remedies provided by Labor Code section

2    98.7 prior to filing a lawsuit); *Dolis v. Bluem USA, Inc.* 2011 U.S. Dist. LEXIS 110575, *4-6 (N.D.

3    Cal. 2011) (a plaintiff's failure to exhaust the administrative remedies precludes them from bringing

4    a claim under Section 1102.5.).

5           Plaintiff's contention that no California decision requires a plaintiff to exhaust their

6    administrative remedies is incorrect. Indeed, in the recent case of *MacDonald v. State of California,*

7    2013 Cal. App. LEXIS 683 (3rd App. Dist., August 27, 2013), the Court held the exhaustion of

8    administrative remedies was required. *Id.* at *15-16. In this action, Plaintiff has failed to allege any

9    facts establishing he exhausted his administrative remedies regarding his claim that Apple allegedly

10   violated Section 1102.5. Indeed, his Complaint is completely silent on this important jurisdictional

11   issue. As a result, he has not alleged facts establishing the essential elements of this claim as a

12   matter of law and Apple's motion must be granted.

13                          **b.     Alternatively, Plaintiff Has Failed To Allege Any Facts
                                     Establishing The Essential Elements Of This Third Claim For**
14                          **Relief For An Alleged Violation Of Labor Code Section 1102.5.**

15          Additionally, Plaintiff does not identify whether his third claim for relief is based on

16   Labor Code section 1102.5(b) or Section 1102.5(c). As established in Apple's moving papers and

17   below however, he has not alleged facts sufficient to establish a viable claim for relief under either.

18          As to Section 1102.5(b), Plaintiff admits, as he must, that he made no report to any

19   governmental or law enforcement agency. He therefore cannot establish Apple violated Labor Code

20   section 1102.5(b). *See Green*, 19 Cal.4th at 77 (stating Labor Code section 1102.5(b) "does not

21   protect plaintiff, who reported his suspicions [of illegal activity] directly to his employer").

22          To establish a *prima facie* claim of retaliation under Section 1102.5(c), Plaintiff must

23   allege facts establishing, *inter alia*, that he engaged in a protected activity. *Passantino,* 212 F.3d at

24   506. Protected activity for purposes of Section 1102.5(c) is the "refus[al] to participate in an activity

25   that would result in a violation of [a] state or federal statute, or a violation or noncompliance with a

26   state or federal rule or regulation." Cal. Lab. Code § 1102.5(c); *Edgerly v. City of Oakland*, 211

27   Cal.App.4th 1191, 1199 (2012). Plaintiff has not alleged facts establishing either.

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

11.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1    The only alleged protected activity Plaintiff alleges he engaged in was reporting

2  employee Roe's alleged improper actions to Apple. (Compl., ¶¶32, 34.) Although Plaintiff contends

3  this report "show[s] that he engaged in protected activity under the [Dodd-Frank Act's]

4  whistleblower protection provision" (Opp., p. 20:9-11), he cannot establish Apple violated Section

5  1102.5(c) as he has alleged no facts establishing employee Roe's actions violated the Dodd-Frank

6  Act or any other state or federal statute.  Cal. Lab. Code § 1102.5(c); *Edgerly*, 211 Cal.App.4th at

7  1200.  The only thing Plaintiff alleges employee Roe violated was Apple's own internal policies.

8  Violating an employer's own internal policies does not constitute a violation of a state or federal law

9  and reporting the alleged violation does not constitute protected activity under Section 1102.5(c).

10  *Edgerly*, 211 Cal.App.4th at 1200-1201.

11    Moreover, Plaintiff's assertion that he can establish a violation of Section 1102.5(c)

12  by reporting a violation of Section 1102.5(c) to management is improperly circular.  (Opp., p. 22:19-

13  22.)  Section 1102.5(c) provides a remedy to an employee who was retaliated against for reporting a

14  violation of another statute.  Indeed, Section 1102.5(c) cannot be clearer on this point when it states,

15  to establish a violation of this Section, a plaintiff must allege he "refus[ed] to participate in an

16  activity that would result in a violation of [or noncompliance with] a state or federal statute."  There

17  is simply no such claim as a violation of Section 1102.5(c) for reporting a violation of Section

18  1102.5(c).  Thus, Plaintiff's failure to allege facts establishing he refused to participate in an activity

19  that would result in a violation or noncompliance with any other state or federal statute or regulation,

20  his third claim for relief fails as a matter of law.

21    Plaintiff's contention that the *Green* court held in favor of a plaintiff after he reported

22  violations of other statutes to his employer does not save his third claim for relief from dismissal.  In

23  the portion of the *Green* decision cited by Plaintiff, the Court was considering whether Section

24  1102.5 constituted a fundamental public policy protecting employees from retaliation for reporting

25  violations of other statutory provisions directly to their employer in the context of a wrongful

26  termination in violation of public policy claim.  *Green*, 19 Cal.4th at 77.  Thus, in the proper context,

27  a plaintiff may be able to allege a wrongful termination cause of action if they can establish they

28  reported a violation of some constitutional, statutory, or regulatory provision to their employer.  *Id.*

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

12.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1  Because Plaintiff has not alleged facts establishing he was retaliated against for reporting the
2  violation of any state or federal statute to Apple, the portion of the *Green* decision on which Plaintiff
3  relies is not relevant or applicable.

4  Additionally, Plaintiff's reliance on *Holmes v. General Dynamics Corp.,* 17
5  Cal.App.4th 1418 (1993) and *Collier v. Superior Court*, 228 Cal.App.3d 1117 (1991) is also
6  misplaced.  Both cases involve wrongful termination in violation of public policy claims and not
7  claims for a violation of either 15 U.S.C. Section 78u-6 and/or California Labor Code Section
8  1102.5.  *Holmes,* 17 Cal.App.4th at 1423; *Collier*, 228 Cal.App.3d at 1119.  The Courts in these
9  cases did not consider the pleading requirements to state a cause of action under either 15 U.S.C.
10 Section 78u-6 and/or California Labor Code Section 1102.5.  *N.L.R.B. v. Hotel and Restaurant*
11 *Employees and Bartenders' Union Local 531*, 623 F.2d 61, 68 (9th Cir. 1980); *People v. Gilbert* 1
12 Cal.3d 475,482, fn. 7 (1969), ("[i]t is axiomatic that cases are not authority for propositions not
13 considered.")  They are therefore inapposite to the instant action.

14 **D.  Plaintiff Has Not Alleged Facts Establishing This Fourth Claim For Breach Of Contract.**
15

16 Plaintiff's Opposition fails to establish that he was employed by Apple on other than
17 an "at-will" basis.  Plaintiff must overcome the presumption that his employment at Apple was on
18 any basis other than "at-will."  *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 682 (1988).  Plaintiff
19 has not done so.  Rather, Plaintiff alleges that based on some unidentified policy of putting
20 employees on performance improvement plans and some unidentified alleged oral representations,
21 promises, and/or conduct of Apple and/or other Defendants, that he had an employment contract
22 with Apple stating that he would be employed by Apple so long as his performance was satisfactory
23 and would not be discharged without good or just cause.  (Compl., ¶¶82-83.)  Such allegations
24 cannot alter the presumption that his employment at Apple was on an "at-will" basis as a matter of
25 law.  *Guz v. Bechtel National, Inc.,* 24 Cal.4th 317, 345; see also *Newfield v. Insurance Co. of the*
26 *West*, 156 Cal.App.3d 440, 444 (1984) (finding the plaintiff could not show an implied contract
27 based on a promise that he would have "a permanent career"; "this type of promise has been
28 considered by the courts in California and has been found to create *only* a contract terminable *at-*

1  *will*." (emphasis in original)); *Drzewiecki v. H&R Block, Inc.*, 24 Cal.App.3d 695, 702, 704-705

2  (1972).

3  Vague and conclusory allegations that an employer's alleged representations that an

4  employee would only be terminated for "good cause," are insufficient to overtime the presumption

5  of "at-will" employment as a matter of law. *Halvorsen v. Aramark Uniform Services, Inc.*, 65

6  Cal.App.4th 1383, 1389 (1998) (affirming that the plaintiff did not overcome the presumption of at

7  will employment by vague assurances of continued employment; "an alleged oral contract with

8  vague and uncertain terms is not binding'); *Vargas v. BP America, Inc.*, 2011 U.S. Dist. LEXIS

9  49193, *13 (E.D. Cal. 2011) (the "plaintiff's bare assertion that an implied agreement [to terminate

10  only for good cause] existed is conclusory and insufficient" to overcome the presumption of "at-

11  will" employment as a matter of law).

12  Rather, to overcome the presumption of "at-will" employment, Plaintiff is required, at

13  a minimum, to identify the "person or persons who entered into the alleged agreement with him,"

14  that the person had the authority to enter into the agreement or identify the specific policies,

15  practices, or other conduct which might plausibly give rise to an implied promise not the terminate

16  without cause. *Vargas*, 2011 U.S. Dist. LEXIS 49193, *13. Plaintiff has not done so and his failure

17  is fatal to this claim. As Plaintiff has presented no argument or authority to the contrary, Apple's

18  motion should be granted.

19  **E.     Plaintiff Has Not Alleged Facts Establishing His Fifth Claim For Breach Of The
          Implied Covenant Of Good Faith And Fair Dealing.**

20

21  Plaintiff's Opposition fails to present any argument or authority to support his

22  contention that he can assert a separate cause of action for a violation of the implied covenant of

23  good faith and fair dealing based solely on his breach of contract claim. California's Supreme Court

24  was clear on this point when it stated:

25  > [W]here breach of an actual [contract] term is alleged, a separate implied
   > covenant claim, based on the same breach is superfluous. On the other
26  > hand, where an implied covenant claim alleges a breach of obligations
   > beyond the agreement's actual terms, it is invalid.

27

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

14.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

1  *Guz,* 24 Cal.4th at 327; see also *Hunter v. Up-Right, Inc.,* 6 Cal.4th 1174, 1180-1183 (1993)

2  (reiterating that tort remedies for breach of the implied covenant of good faith and fair dealing are

3  not available in the employment context); *Acosta v. Astor*, 120 Cal.App.4th 596, 573 (2004).

4  Plaintiff's fifth claim for breach of the implied covenant of good faith and fair dealing is based on

5  the same alleged facts as his fourth claim for breach of contract. (Compl., ¶¶81-96.) It therefore

6  impermissibly duplicates his breach of contract cause of action and must be dismissed. *Guz,* 24

7  Cal.4th at 352; *Bionghi v. Metro Water Dist.,* 70 Cal.App.4th 1358, 1370 (1999).

8           Plaintiff's reliance on the *Guz* Court's dicta that an implied covenant claim may lie

9  where an employer discharges an employee "to cheat the worker out of another contract benefit to

10  which the employee was clearly entitled, such as compensation already earned" is misplaced. *Guz,*

11  24 Cal.4th at 353, fn. 18. Plaintiff has alleged no facts even intimating Apple terminated his

12  employment to avoid providing him any vested benefits. Rather, Plaintiff only alleges that Apple

13  terminated his "at-will" employment without good cause and without following its alleged practice

14  of putting employees on a performance improvement plan before terminating them, the exact same

15  allegations underlying his breach of contract claim. (Compl., ¶¶82-84, 86, 95-96.) As a result, his

16  fifth claim for relief must be dismissed.

17  **III.    CONCLUSION**

18           For the reasons stated in Apple's moving papers and above, Apple respectfully

19  requests the Court issue an order dismissing Plaintiff's Complaint in its entirety without leave to

20  amend.

21  Dated:  September 9, 2013

22

23                                  *//s// Todd K. Boyer*
                                TODD K. BOYER

24                                  LITTLER MENDELSON, P.C.
                                Attorneys for Defendant

25                                  APPLE INC.

26

27  Firmwide:122975907.1 043907.1171

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

15.

Case No. CV13-02977 (RS)

DEFT'S REPLY TO PLTF'S OPP TO MOTION TO DISMISS

# EXHIBIT D

*Banko v. Apple Inc.*, 20 F. Supp. 3d 749 (N.D. Cal. 2013)

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                         SAN FRANCISCO DIVISION
10
11   JOSHUA BANKO,                         No. CV 13-02977 RS
12               Plaintiffs,               **ORDER DENYING IN PART AND
                                           GRANTING IN PART
13        v.                               DEFENDANT'S MOTION TO
                                           DISMISS**
14   APPLE INC., and DOES 1 through 50,
15
16               Defendants.
     _____/
17
18
19                  I.        INTRODUCTION
20        This matter arises from the decision by defendant Apple, Inc. ("Apple") to fire plaintiff
21   Joshua Banko ("Banko"). The complaint asserts five claims for relief.  Defendant Apple moves
22   to dismiss all five claims for failure to state a claim upon which relief may be granted. For the
23   following reasons, defendant's motion to dismiss is granted in part and denied in part, with leave
24   to amend. This matter is suitable for disposition without oral argument pursuant to Civil Local
25   Rule 7-1(b).
26
27
28

1

II.        BACKGROUND[1]

2          Plaintiff Joshua Banko was employed by defendant Apple for 12 years. During this time,

3    Banko worked as an engineer on multiple projects and supervised other engineers. Banko began

4    his employment on an "at-will" basis. During his 12 year career at Apple, Banko received

5    favorable performance reviews, was told he was a valuable employee, and was awarded multiple

6    discretionary bonuses. He did not receive any negative performance reviews and was never put

7    on a performance improvement plan.

8          In 2012, Banko learned one of the engineers he supervised ("Roe") had received a

9    $40,000 pay increase and a grant of 1500 Restricted Stock Units, purportedly to prevent Roe

10   from moving to Facebook. Shortly thereafter, Banko noticed Roe had been submitting expense

11   reports which included personal and other expenses that were not properly documented. When

12   Banko directed Roe to remove these inappropriate expenses, she refused.

13         Upon Roe's failure to remedy her inaccurate expense reports, Banko came to believe Roe

14   was violating both Apple policy and applicable law. Banko feared this embezzlement might

15   amount to a fraud against shareholders as well as the public by leading Apple to file inaccurate

16   taxes but he was dissuaded from making any report by his supervisors. Ignoring those

17   instructions, Banko reported Roe to Apple's upper management. Apple then conducted an

18   internal audit to determine if Roe had misrepresented expenses on her expense reports. This audit

19   uncovered over forty instances of inflated or falsified expenses for which Roe received

20   reimbursement from Apple. When Banko recommended Apple upper management terminate

21   Roe for fraud and embezzlement of company funds, his supervisors told him not to pursue the

22   matter. Believing he was obligated by law and Apple policy to terminate Roe, Banko approached

23   Victor Cousins of Apple's human resources department. In a subsequent meeting not attended by

24   Banko, the decision was taken to terminate Roe. Nonetheless, several individuals in Apple

25   management, including those who instructed Banko not to pursue the termination of Roe, were

26   upset Banko had reported Roe to Cousins.

27

28   [1] The facts are taken from the complaint and assumed to be true for the purposes of this motion
     to dismiss.

1   Banko continued his duties at Apple and received praise for the completion of a prototype

2   ahead of schedule before holiday break. Upon returning, Banko received a significant

3   discretionary bonus for his work on the prototype. On January 14, 2013, less than two weeks

4   later, Banko's employment was terminated. Banko filed this lawsuit on June 27, 2013. He

5   advances five claims for relief: (1) violation of the Dodd-Frank Act; (2) wrongful termination in

6   violation of public policy; (3) violation of Section 1102.5 of the California Labor Code; (4)

7   breach of employment contract; and (5) breach of implied covenant of good faith and fair

8   dealing.

III.   LEGAL STANDARD

9

10   A complaint must contain "a short and plain statement of the claim showing that the

11   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do

12   justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint

13   must have sufficient factual allegations to "state a claim to relief that is plausible on its face."

14   *Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570

15   (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw

16   the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This

17   standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* This

18   determination is a context-specific task requiring the court "to draw in its judicial experience and

19   common sense." *Id.* at 1950.

20   A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil

21   Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of*

22   *Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may

23   be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts

24   alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

25   (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in

26   the complaint as true, even if doubtful, and construe them in the light most favorable to the non-

27   moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted

28

1    inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."

2    *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at

3    555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory

4    statements," are not taken as true).

5         In dismissing a complaint, leave to amend must be granted unless it is clear that the

6    complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corporations*, 66

7    F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

8    ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

9                              IV.    DISCUSSION

10   A.  Retaliation

11        Banko's first and third claims for relief both allege Apple violated the law by firing

12   Banko for engaging in legally protected actions. The first claim for relief, under the Dodd-Frank

13   Act 15 U.S.C. § 78u-6, is premised on Banko's reporting what he believed to be securities fraud

14   to Apple management. That Act allows for a private claim for relief for violations of Section

15   1514A of Sarbanes-Oxley. 15 U.S.C. § 78u-6(h)(1)(A)(iii). The third claim arises not only from

16   Banko's reporting to Apple management, but also from his refusal to cover up or engage in the

17   alleged embezzlement. This third claim is brought pursuant to Section 1102.5 of the California

18   Labor Code, which makes it illegal for an employer to retaliate against an employee for refusing

19   to participate in an activity that would result in a violation of state or federal law. Banko

20   contends his firing violates both the public policy of the Dodd-Frank Act and the Sarbanes-Oxley

21   Act. Apple moves to dismiss both of these claims on three grounds: (1) the statute of limitations

22   for a suit under Sarbanes-Oxley has expired; (2) Banko's actions are not protected under the

23   Sarbanes-Oxley Act; and (3) not having filed a report with the Securities and Exchange

24   Commission ("SEC"), but only with Apple management, Banko is not a "whistleblower" under

25   Dodd-Frank.

26

27

28

For the Northern District of California

For the Northern District of California

i.   Statute of Limitations

The Dodd-Frank Act and the Sarbanes-Oxley Act each have their own statutes of limitation. Individuals who bring a Sarbanes-Oxley anti-retaliation claim must first file a complaint with the Secretary of Labor within 180 days of the alleged violation, and are only permitted to sue in federal court if the Secretary has not issued a final order within 210 days. 18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(d); 12 U.S.C. § 5567(c)(4)(D). The Dodd-Frank Act provides for a six-year statute of limitations. 15 U.S.C. 78u-6(h)(B)(iii). Apple contends Banko has failed to satisfy the requisite Sarbanes-Oxley limitations period and administrative adjudication requirements. While Banko has not met the requirements of Sarbanes-Oxley, he is well-within the six-year limitations period provided by Dodd-Frank. *Id*. Although the first and third claims involve Sarbanes-Oxley, they are brought under different statutes. The first claim for relief is brought under Dodd-Frank, which creates a private right of action for violations of Sarbanes-Oxley. 15 U.S.C. § 78u-6(h)(1)(A)(iii). Therefore, it is timely. The third claim for relief is brought under the California Labor Code. This third claim is also timely. Therefore, Apple's motion to dismiss the third claim for relief is denied.

ii.   Protected Actions Under Sarbanes-Oxley

Banko's claims under the Dodd-Frank Act require that Banko's reporting and refusing to participate in or cover up the alleged embezzlement require that those actions fall within the protections of Sarbanes-Oxley. 15 U.S.C. § 78u-6(h)(1)(A)(iii). Apple contends Banko's actions are not protected because, according to Apple, reports regarding another employee's expense reports, even if accurate, do not sufficiently involve shareholder fraud within the meaning of Sarbanes-Oxley.

Sarbanes-Oxley protects those who provide information that they reasonably believe relates to fraud or securities violations as defined in 18 U.S.C. § 1514A(a)(1). *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009). Here, Banko alleges he reasonably believed Roe's alleged embezzlement constituted fraud against shareholders. In response, Apple contends Roe's alleged behavior only amounted to a violation of an internal policy and did not rise to the

1    level of fraud against shareholders as required under Section 1514(A). At this juncture, Banko

2    need only plead facts sufficient to state a claim that relates to one of the listed categories under

3    Section 1514A. Thus, while Banko's belief might not be sufficiently reasonable to prevail, he

4    has pled sufficient facts to state a claim for relief. Fed. R. Civ. P. 12(b)(6).

5              iii.   The Availability of Dodd-Frank's "Whistleblower Protection"

6         Apple argues that Banko is not a "whistleblower" because he did not file a report with the

7    Securities and Exchange Commission ("SEC"). Implicated by that question is the relationship

8    between Dodd-Frank's definition of "whistleblower" and the private claim for relief for

9    violations of Sarbanes-Oxley. As discussed above, this claim for relief is brought under the

10   Dodd-Frank Act, which authorizes a private right of action for violations of Sarbanes-Oxley. 15

11   U.S.C. § 78u-6(h)(1)(A)(iii). The issue here is whether that right of action is available to an

12   individual who does not meet the Dodd-Frank Act's definition of "whistleblower." Apple argues

13   an individual must actually make a complaint to the SEC pursuant to Section 78u-6(a), which

14   defines "whistleblower" as "any individual who provides, or 2 or more individuals acting jointly

15   who provide, information relating to a violation of the securities laws to the Commission, in a

16   manner established, by rule or regulation, by the Commission." Banko argues Section 78u-

17   6(h)(1)(A)(iii) allows individuals to bring a private claim for violation of Sarbanes-Oxley even if

18   that individual does not meet Section 78u-6(a)'s definition of "whistleblower" because Section

19   78u-6(h)(1)(A)(iii) is an exception to Dodd Frank's definition of "whistleblower." This is a

20   matter of first impression in the Ninth Circuit.

21        The first step in determining whether or not reporting to upper management is sufficient

22   to entitle one to "whistleblower protection" under 78u-6(h) is to decide whether or not the statute

23   is ambiguous. "When faced with questions of statutory construction, 'we must first determine

24   whether the statutory text is plain and unambiguous' and, '[i]f it is, we must apply the statute

25   according to its terms.'" *Asadi v. G.E. Energy (USA), L.L.C.,* 720 F.3d 620, 622 (5th Cir. 2013)

26   (citing to *Carcieri v. Salazar,* 555 U.S. 379, 387 (2009)). "The plainness or ambiguity of

27   statutory language is determined by reference to the language itself, the specific context in which

28

For the Northern District of California

that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997). "The inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* at 340. If the statutory text is unambiguous, the inquiry begins and ends with the text. *BedRoc Ltd. V. United States,* 541 U.S. 176, 183 (2004). However, if the statute is ambiguous, courts look to administrative regulations for clarification. *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc*., 467 U.S. 837, 842-43 (1984).

Very few courts have considered this issue. All four district courts that have done so have found the statute to be ambiguous in this regard. *See Nollner v. S. Baptist Convention, Inc.,* 852 F. Supp. 2d 986, 988 (M.D. Tenn. 2012); *Murray v. UBS Sec., LLC*, 12 CIV. 5914 JMF, 2013 WL 2190084 (S.D.N.Y. May 21, 2013); *Kramer v. Trans-Lux Corp.,* 3:11 CIV. 1424 SRU, 2012 WL 4444820 (D. Conn. Sept. 25, 2012); *Egan v. TradingScreen, Inc.,* 10 CIV. 8202 LBS, 2011 WL 1672066 (S.D.N.Y. May 4, 2011). These courts premise their holding on three grounds: (1) the purpose of the Dodd-Frank Act was to "improve the accountability and transparency of the financial system," and create "new incentives and protections for whistleblowers;" (2) extending the "whistleblower protection" provision only to individuals who meet the Dodd-Frank definition of "whistleblower" would violate a tenant of statutory interpretation by making Section 78u-6(h)(1)(A)(iii) superfluous; and (3) the SEC issued regulation 34300-01 stating 78u-6(h)(1)(A)(iii) protection is available to some individuals who do not report violations consistent with 78u-6(a)(6).

Meanwhile, the only appellate decision to address this issue found the statute unambiguous and held an individual must first meet the definition of "whistleblower" to qualify for "whistleblower protection." In *Asadi v. G.E. Energy (USA), L.L.C.,* the Fifth Circuit held the statute is unambiguous for three reasons: (1) Section 78u-6(h)(1)(A) limits "whistleblower protection" to "whistleblowers"; (2) "Section 78u–6(h)(1)(A)(i) protects whistleblowers from employer retaliation for the action that made the individual a whistleblower in the first instance, *i.e.,* providing information relating to a securities law violation to the SEC"; and (3) limiting

1   "whistleblower protection" to individuals who are "whistleblowers" under Section 78u-6(a) does

2   not make 78u-6(h)(1)(A)(iii) superfluous because it would still protect individuals who filed a

3   complaint with the SEC but were retaliated against for another reason. *Asadi v. G.E. Energy*

4   *(USA), L.L.C.,* 720 3.d 620 (2013).

5          Applying the rules of statutory interpretation set forth above, the statute is not

6   ambiguous; the "whistleblower protection" provided by Section 78u-6(h) is only available to

7   individuals who meet the Dodd-Frank definition of "whistleblower" found in Section 78u-6(a).

8   To conclude to the contrary, one would have to ignore several canons of statutory interpretation.

9   First, allowing individuals who did not report to the SEC to be designated a "whistleblower"

10  under 78u-6(a) would ignore the plain language of that statute. As the Court held in *Chevron*, the

11  first step of statutory interpretation is asking "whether Congress has directly spoken to the

12  precise question at issue. If the intent of Congress is clear, that is the end of the matter." 467 U.S.

13  at 842-43. Section 78u-6(h)(1)(A) states "[n]o employer may discharge, demote, suspend,

14  threaten, harass, directly or indirectly, or in any other manner discriminate against, *a*

15  *whistleblower* in the terms and conditions of employment because of any lawful act done by the

16  *whistleblower*." (emphasis added). Thus, the statute specifies that an employer may not take the

17  above actions against a *whistleblower*. It is not until after this clause that Congress adds

18  protection for reports that are protected by Sarbanes-Oxley, indicating that the latter is

19  subordinate to the former. When read together, 78u-6(h)(1)(A) and 78u-6(h)(1)(A)(iii) state

20  "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any

21  other manner discriminate against, *a whistleblower* in the terms and conditions of employment

22  because of any lawful act done by the *whistleblower in* making disclosures that are required or

23  protected under the Sarbanes-Oxley Act of 2002." (emphasis added). Congress could have used a

24  word other than "whistleblower" but chose not to. *Asadi v. G.E. Energy (USA), L.L.C.,* 720 F.3d

25  620, 626 (5th Cir. 2013).

26         Second, as the Fifth Circuit noted in *Asadi*, interpreting Section 78u-6(h)(1)(A)(iii) to be

27  an exception to the Section 78u-6(a) definition of "whistleblower" would render the words "to

28

the Commission" superfluous. 720 F.3d at 625. Construing the statute in this manner would violate the surplusage canon that every word is to be given effect. *See, e.g., TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.")

Third, allowing individuals who do not satisfy the Dodd-Frank definition of "whistleblower" to bring a claim under Section 78u-6(h) would contradict that section's title. Section 78u-6(h) is titled "whistleblower protection." While a heading cannot limit the plain meaning of the text, it lends support to the conclusion that Section 78u-6(h) applies only to those individuals who qualify as "whistleblowers" as defined in § 78u–6(a)(6). *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 47 (2008) ("To be sure, a ... heading cannot substitute for the operative text of the statute. Nonetheless, statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (citations and internal quotation marks omitted)).

Fourth, the SEC's regulation should only be granted deference if the statute is ambiguous on its face. The SEC has promulgated a regulation providing an individual may be a whistleblower if he or she reports to persons or authorities other than the SEC. *Securities and Exchange Commission, Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300-01, at*34304 (June 13, 2011). The plaintiff, and some district courts, point to the SEC's issuance of this regulation as support for the argument that the statute is ambiguous. Deference, however, is only warranted if the statute is ambiguous on its face. "[I]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43. Furthermore, the SEC might have reason for issuing this regulation other than statutory ambiguity. Indeed, neither the district court opinions noted above, nor plaintiff's papers, invoke any authority suggesting the SEC issued this regulation *because* of ambiguity in the statute.

For the Northern District of California

1    Finally, while the district court opinions are correct that the purpose of the Dodd-Frank

2    Act is to "improve the accountability and transparency of the financial system," and create "new

3    incentives and protections for whistleblowers," it is not the only protection available to

4    individuals who believe they are being retaliated against for revealing securities fraud. These

5    plaintiffs have other options. Here, the plaintiff could have filed a complaint with the Secretary

6    of Labor under Sarbanes-Oxley within 180 days of the purported violation. 18 U.S.C. §

7    1514A(b)(2)(D). Indeed, as discussed above, Dodd-Frank doubled the amount of time an

8    individual has available within which to file such a complaint. The plaintiff chose not to do so.

9    While this forfeiture may sometimes lead to unfortunate results where individuals who take

10   socially-desirous actions fail to be granted protection, this conclusion comes as the result of that

11   individual's own delay and does not bear upon the availability of Section 78u-6(h) relief.

12   Because plaintiff did not file a complaint to the SEC, he is not a "whistleblower" under

13   the Dodd-Frank Act. 15 U.S.C. 78u-6(a)(6). For the reasons discussed above, Section 78u-6(h)

14   only extends "whistleblower protection" to individuals who qualify as "whistleblowers" under

15   Dodd-Frank. Plaintiff's first claim for relief is therefore dismissed. Likewise, the Dodd-Frank

16   and Sarbanes-Oxley bases for plaintiff's third claim are also dismissed.

17       B.   Wrongful Termination in Violation of Public Policy

18   Banko's second claim for relief contends he was wrongfully terminated in violation of

19   public policy. According to Banko, he was fired in response to his report of Roe's

20   embezzlement. This retaliatory firing, according to Banko, violates the public policies against

21   embezzlement, illegitimate corporate tax deductions, and encouragement of whistleblowing.

22   Apple moves to dismiss, arguing the complaint fails to state a claim because it omits reference to

23   specific public policy and avers only a violation of non-actionable Apple policy.

24   In the complaint, Banko specifically avers that his termination violates the policy behind

25   both the Sarbanes-Oxley and Dodd-Frank Acts. Apple's suggestion that an action cannot be

26   against both public policy and company policy is unpersuasive. To hold otherwise would grant

27   companies license to nullify wrongful termination for violation of public policy suits simply by

28

1   enacting corresponding internal prohibitions. The authority to which Apple points extends only

2   to the proposition that alleged violations of internal policies do not, *by themselves*, suffice to

3   support a claim for wrongful termination in violation of public policy. *See e.g., Turner v.*

4   *Anheuser-Busch, Inc*., 7 Cal. 4th 1238, 1257 (1994). Defendant's motion to dismiss plaintiff's

5   second claim for relief therefore must be denied.

6       C.   Breach of Employment Contract and Breach of Implied Covenant of Good Faith and Fair
             Dealing

7           Plaintiff's fourth and fifth claims sound in contract and aver that Apple violated an

8   employment agreement between the parties as well as the implied covenant of good faith and fair

9   dealing contained in that purported contract. According to Banko, he was given multiple

10  assurances of continued employment at Apple, thereby transforming his employment beyond "at-

11  will." Those assurances include: positive performance reviews, merit-based pay-raises,

12  assurances that he would not be terminated arbitrarily, oral representations from his supervisor

13  that she would back him up with respect to continued employment, and representations by Apple

14  management that he would be employed by Apple so long as his performance was satisfactory

15  and only terminated for cause. According to Banko, these assurances, along with Apple's policy

16  of putting employees on performance improvement plans prior to terminating them, constituted a

17  contract and an implied promise to terminate his employment only for good cause. He avers that

18  Apple failed to fulfill its obligation to adhere to this purported employment contract in good

19  faith. Apple moves to dismiss for failure to state a claim, arguing: (1) the complaint fails to

20  allege facts establishing Banko was not an "at-will" employee; (2) Banko has not alleged any

21  facts establishing under what circumstances Apple could terminate his employment; (3) there

22  was no implied covenant of good faith and fair dealing as the parties did not have an operative

23  employment contract; and (4) Banko's fifth claim does not present facts in addition to those upon

24  which his fourth claim is predicated.

25          In California, employment having no specified term is presumed to be on an "at-will"

26  basis. Cal. Labor Code § 2922. The parties do not dispute that Banko's employment was never

27  for a specified term and began as an "at-will" employment. Banko's contention, and the

28

1   dispositive issue for defendant's motion to dismiss the fourth claim, is whether Apple's

2   assurances to Banko during his 12-year employment were sufficient to shift Banko's

3   employment from "at-will." The presumption to that effect can be altered or limited by oral

4   agreement between an employer and employee. *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 336

5   (2000).

6       One such potential alteration arises when an employer makes a guarantee to the employee

7   that he will only be fired for good cause. *Foley v. Interactive Data Corp.,* 47 Cal. 3d 654, 677

8   (1988). The contractual understanding need not be express, but may be *implied in fact,* arising

9   from the parties' *conduct* evidencing their actual mutual intent to create such enforceable

10  limitations. *Guz,* 24 Cal. 4th at 336. In California, courts consider whether an employment

11  contract is more than "at-will" by looking to "the personnel policies or practices of the employer,

12  the employee's longevity of service, actions or communications by the employer reflecting

13  assurances of continued employment, and the practices of the industry in which the employee is

14  engaged." *Foley,* 47 Cal. 3d at 680. As the California Supreme Court explained in *Foley,*

15  "[w]hen the parties have enforceable expectations concerning either the term of employment or

16  the grounds or manner of termination, Labor Code section 2922 does not diminish the force of

17  such contractual or legal obligations." *Id.*

18      Neither Banko nor Apple address the *Foley* factors in their papers, but the application of

19  these factors in *Foley* is instructive here. Like the plaintiff in *Foley*, Banko avers his employment

20  agreement evolved to where he could only be fired for cause. Many of the facts that the *Foley*

21  court found adequate to create a triable issue of fact as to whether or not the parties agreed to fire

22  the plaintiff only for good cause are mirrored in the relationship between Banko and Apple. First,

23  the Court found six years and nine months to be sufficient elapsed time for a trier of fact to find

24  that an implied contract had developed. *Id.* at 681. Here, Banko was employed for 12 years,

25  nearly twice as long as the plaintiff in *Foley*. Second, as in that case, Banko avers repeated oral

26  assurances of job security and consistent promotions, salary increases and bonuses during the

27  term of his employment that contributed to his reasonable expectation of discharge only for good

28

For the Northern District of California

1  cause. *Id.* Third, just as the defendant in Foley had self-imposed written termination guidelines,

2  Banko alleges Apple had a common practice of placing struggling employees on a performance

3  improvement plan, which, as in *Foley*, did not occur here. *Id.* The presence of these facts in the

4  pleadings is sufficient to state a claim for relief for breach of a contract in violation of Banko's

5  evolved right to be subject to termination only for good cause.

6  　　　Apple next argues that plaintiff's complaint fails to state a claim for breach of

7  employment contract because it does not specify under what circumstances such a contract could

8  be terminated. Apple fails to point to any authority, however, suggesting that such a contention is

9  required to show an employment contract is not "at-will" or to state a claim for breach of an

10  employment contract. In any event, Apple's contention ignores the fact that the complaint plainly

11  acknowledges Apple could terminate the employment agreement for good cause.

12  　　　In addition to a contract's express terms, every contract imposes upon each party a duty

13  of good faith and fair dealing in its performance and its enforcement. *Foley*, 47 Cal. 3d at 765.

14  Banko alleges Apple violated the implied covenant in his employment contract by firing him in

15  retaliation for his refusal to participate in the cover up of Roe's embezzlement. This averment,

16  coupled with the alleged existence of a contract, is sufficient to state a claim for violation of the

17  covenant of good faith and fair dealing.

18  　　　Finally, Apple argues Banko's claim for violation of the covenant of good faith and fair

19  dealing should be dismissed because it does not present a factual basis independent from

20  Banko's claim for breach of the employment contract. When an employer's behavior is

21  actionable under breach of contract, a claim for violation of the covenant of good faith and fair

22  dealing is only available if the plaintiff alleges the employer took actions beyond the breach of

23  contract itself. *Guz,* 24 Cal. 4th at 352. Here, plaintiff's claimed violation of the covenant of good

24  faith and fair dealing adds nothing to the claim for breach of the employment contract.

25  　　　The covenant of good faith and fair dealing, implied by law in every contract, exists

26  merely to prevent one contracting party from unfairly frustrating the other party's right to receive

27  the benefits of the agreement actually made. *Id.* at 349. The complaint fails to plead any facts to

28

1  support Apple acted to frustrate Banko's ability to fulfill his end of the bargain other than by

2  firing him, behavior which is actionable under his breach of contract claim. Had Apple taken

3  steps to undermine Banko's performance of his obligations under the employment agreement,

4  Banko might have the basis for a claim based on violation of the covenant of good faith and fair

5  dealing. For example, if Apple agreed to fire Banko only for cause, but then frustrated Banko's

6  ability to perform his contractual obligations, a claim based on the covenant of good faith and

7  fair dealing might arise. No evidence of such behavior, however, is present here. To the contrary,

8  Banko's complaint avers he continued to garner favorable performance reviews up until the time

9  he was fired. That is to say that the very conduct Banko relies upon to bring his other claims for

10 relief is the reason he likely cannot plead facts to support a claim for violation of the covenant of

11 good faith and fair dealing. Defendant's motion to dismiss plaintiff's fifth claim for relief is

12 therefore granted.

13                              V.        CONCLUSION

14          For the reasons explained above, defendant's motion to dismiss his first claim for relief

15 based on retaliation and the fifth claim, for breach of the implied covenant of good faith and fair

16 dealing, is granted with leave to amend. Defendant's motion to dismiss the wrongful termination

17 and breach of employment contract claims is denied. Defendant's motion to dismiss the

18 California Labor Code claim is denied. Plaintiff must file any amended complaint within 30 days

19 of the date of this order.

20

21          IT IS SO ORDERED.

22 Dated: 9/26/13                          _____

23                                          RICHARD SEEBORG
                                            UNITED STATES DISTRICT JUDGE

# EXHIBIT E

***Banko v Apple*** **(2013), First Amended Complaint**

1  DAVID J. MICLEAN (SB# 115098)
   Email: dmiclean@micleangleason.com
2  GARY R. GLEASON   (SB# 136167)
   Email: ggleason@micleangleason.com
3  MICLEAN GLEASON LLP
4  100 Marine Parkway Suite 310
   Redwood Shores, CA 94065
5  Office: 650-684-1181
   Fax: 650-681-1182
6

7  Attorneys for Plaintiff
   JOSHUA BANKO
8

9
                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA

11
   JOSHUA BANKO,                          Case No. CV 13-02977 RS
12
                  Plaintiff(s),
13                                         **FIRST AMENDED COMPLAINT FOR
        v.                                 DAMAGES FOR:**
14
   APPLE, INC., DOES 1-50                      1.  **VIOLATION OF DODD-FRANK
15                                                 ACT**
                  Defendant(s).
16                                             2.  **WRONGFUL TERMINATION IN
                                                   VIOLATION OF PUBLIC
17                                                 POLICY**

18                                             3.  **RETALIATION**

19                                             4.  **BREACH OF EMPLOYMENT
                                                   CONTRACT**
20
                                               5.  **BREACH OF IMPLIED
21                                                 COVENANT OF GOOD FAITH
                                                   AND FAIR DEALING**
22

23                                         **JURY TRIAL REQUESTED**

24

25

26

27

28

*Left margin vertical text:* **Miclean Gleason LLP** 100 Marine Parkway Suite 310 Redwood Shores, CA 94065 650-684-1181 Main   650-684-1182 Fax

1

**I.**       **PARTIES**

1.        Plaintiff JOSHUA BANKO ("Mr. Banko") is an individual and at all times relevant to this action was a resident of Palo Alto located in Santa Clara County.

2.        Defendant APPLE, INC. ("Apple") is a corporation incorporated in the State of California whose principal place of business is within Santa Clara County. Defendant's entity address is 1 Infinite Loop, Cupertino, CA 95014.

3.        DOES 1-50 are unknown at this time but are believed to have contributed to the injury sustained by Mr. Banko.  DOES 1-50 were at all times relevant to this action employees, agents, and/or members of the Board of Directors of Apple.  Mr. Banko is unaware of the true names and capacities of Defendants sued herein as DOES 1-50, inclusive, and therefore sues these Defendants by such fictitious names.  Mr. Banko will pray leave of this court to amend this complaint to allege the true names and capacities when ascertained.

4.        Mr. Banko is informed and believes, and thereon alleges, that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining Defendants and was acting within the course and scope of that relationship.  Mr. Banko is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

**II.**       **JURISDICTION & VENUE**

5.        Jurisdiction is proper in the U.S. District Court, Northern District of California pursuant to 28 U.S.C. §1331, because the claims asserted herein arise under 15 U.S.C. §78u-6 and 18 U.S.C. §1514A.

6.        Venue is proper in the Northern District Court of California pursuant to 28 U.S.C. §1391 because both Apple's location and the location of the wrongful termination are in Santa Clara County, which is located within the geographic region presided over by the Northern District of California.

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

III.    GENERAL ALLEGATIONS

7.      This whistleblower action, which arises pursuant to, among other statutes, the Dodd-Frank

act (15 U.S.C. §78u-6) and Title VIII of the Sarbanes-Oaxley Act of 2002 (18 U.S.C. §1514A), is

brought to recover damages sustained by Mr. Banko when Apple, retaliated against him because of

his complaints about, and objection to, Employee Roe's embezzlement of publicly traded

corporation's funds which Mr. Banko reasonably believed to be unlawful and against public policy.

A.      MR. BANKO'S HIGHLY SUCCESSFUL CAREER AT APPLE.

8.      Defendant Apple, a publicly traded corporation, first hired Mr. Banko on or about
September 18, 2000.

9.      Mr. Banko worked exclusively for Apple from September, 2000 until his termination over

12 years later.  During his tenure with Apple, Mr. Banko received multiple promotions, led

numerous projects and even finished a graduate degree during his employment.  Mr. Banko

participated in the development and/or engineering management of numerous high profile products

such as the iPad, iBook, MacBook, MacBook Pro, and MacBook Air.  Moreover, in Mr. Banko's

over 12 years with the company, he was a significant contributor in developing more than 22

important Apple patents.

10.     Mr. Banko's importance to the company was exemplified by many outstanding

performance reviews.  These include Apple's award to Mr. Banko of large discretionary bonuses

and raises, all related to his strong performance as an Apple employee.

11.     During his tenure at Apple, Mr. Banko's performance never necessitated any performance

improvement plan, nor did Apple ever issue any negative written reviews.

12.     Mr. Banko was also assigned the lead on numerous projects and told that he was an

extremely valuable member of the company by his supervisor, Ms. Bergeron.

13.     Among other projects, Mr. Banko led, designed and managed the engineering development

of the iPad.  Largely because of Mr. Banko's efforts, the iPad became one of Apple's most

successful product launches.

14.     Following the launch of the iPad, Mr. Banko received a significant bonus, and an e-mail

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

accompanying the bonus that acknowledged his work on the project.  It was communicated to Mr. Banko that he was being awarded a $12,000 bonus for January 02, 2010 because of his persistence and drive to finish his project on the iPad.  It was also communicated that Apple was looking forward to Mr. Banko accomplishing great things that year.

15.     During his tenure at Apple, Mr. Banko's supervisor, Ms. Bergeron specifically stated that she would "back-up" and "support" Mr. Banko with respect to his employment at Apple because he was such a valuable employee to Apple.


**B.     MR. BANKO'S ASSIGNMENT TO, AND SUCCESSFUL LEADERSHIP OF, ANOTHER HIGH LEVEL APPLE PROJECT.**

16.     In March of 2012 Apple promoted Mr. Banko to the position of "Engineering Manager II", and assigned him to oversee the engineering of one of the most important and politically sensitive Apple development projects taking place at that time (the "Project").  The assignment to Mr. Banko of such a crucial project was yet another acknowledgement by Apple of the high regard it had for Mr. Banko's abilities and for his outstanding performance with respect to the previous responsibilities assigned to him over the years.

17.     As the Engineering Manager in charge of the Project, Mr. Banko continued to meet design and project deadlines.

18.     In or about November, 2012 Mr. Banko's efforts led to the completion of a successful build of a prototype for the Project within the Project deadline for the build.

19.     On December 18, 2012 a meeting was held regarding the Project and its status.  No complaints were lodged with respect to any aspect on the Project.  In fact, the Project was going so well that on December 21, 2012 Apple congratulated the Project team on completing a prototype system build before the holidays.  (Mr. Banko's superiors did not think it would be possible to complete the system build prototype that soon.)  Apple communicated to Mr. Banko that the team had done excellent work and pulled off a successful Pre-Proto system build in time for the holidays which many thought would not be possible before the holiday.

20.     On that same day, a physical prototype arrived at Apple.  It was enthusiastically received by

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

1  key personnel at Apple in the Industrial Design Department.

2  21.    Apple subsequently shut down for its customary holiday break from December 22, 2012 to

3  January 2, 2013.

4  22.    Within a day after returning to work after the holidays, Mr. Banko learned he had been

5  given a significant discretionary bonus in relation to his work on the Project.

6

7  **C.     BACKGROUND OF EMPLOYEE ROE, A DIRECT REPORT TO MR. BANKO.**

8  23.    One of the Apple employees that reported directly to Mr. Banko during his tenure at Apple

9  was Employee Roe[1], another engineer.  In or about August, 2011, Mr. Banko promoted Employee

10  Roe, and provided her with a pay raise and a stock grant. The raise and grant were of the level

11  commensurate with Employee Roe's performance and promotion.

12  24.    Two months later, in or about October, 2011, Stacey Smith, the senior human resources

13  director at Apple Inc., unilaterally altered the raise recommended by Mr. Banko, and increased

14  Employee Roe's bonus by 30% (from $13,500 to $17,500) and her stock grant by 66% (from 300

15  to 500 shares).  He did this without prior notice to either Mr. Banko or Mr. Banko's supervisor,

16  Kate Bergeron.  Moreover, there was no explanation provided to justify this action.

17  25.    Ms. Bergeron made no effort to correct or protest this unilateral action of Mr. Smith.

18  26.    In or about March of 2012, Mr. Smith again provided Employee Roe with favored

19  treatment by unilaterally awarding her a pay increase of $40,000 and a grant of 1500 Restricted

20  Stock Units (over seven times the size of the additional amount he had unilaterally given her in

21  August of 2011).  These substantial increases in Employee Roe's compensation took place without

22  the knowledge of either Mr. Banko or his supervisor Ms. Bergeron.

23  27.    Once again, Ms. Bergeron made no effort to correct or protest this unilateral action of Mr.

24  Smith.

25  28.    Mr. Banko was later told that the justification for the March, 2012 increase was Employee

26  Roe's claim that she was leaving Apple for a job at Facebook, and receiving a substantial increase

27

28  [1] The term Employee Roe is used to protect the individual's privacy.

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main  650-684-1182 Fax

1   in compensation in connection with her new position.  The increased compensation Mr. Smith gave

2   to Employee Roe was supposedly to entice Employee Roe to stay at Apple.  However, to Mr.

3   Banko's knowledge, Employee Roe never provided anyone at Apple with any proof that she had

4   ever received an actual offer from Facebook, including Mr. Smith.

6   **D.    MR. BANKO'S DISCOVERY AND REPORTING OF EMBEZZLEMENT BY EMPLOYEE ROE.**

7   29.    Unbeknownst to Mr. Banko, Employee Roe had been submitting expense reports which

8   included charges that consisted of either personal expenses, and/or expenses that could not be

9   documented.

10   30.    In early 2012, Mr. Banko began to notice the irregularities on Employee Roe's expense

11   reports.  In or about January, 2012, Mr. Banko met with and directed Employee Roe to remove

12   fraudulent charges off her expense report.  Yet, even though Employee Roe inflated her expenses,

13   she was awarded a bonus in or around February 2012.

14   31.    In or about December, 2012, Mr. Banko again discovered inconsistencies in another of

15   Employee Roe's expense reports in which she inflated her expenses. When Mr. Banko highlighted

16   these issues and asked Employee Roe to remedy them, Employee Roe failed to fix them.

17   32.    Upon Employee Roe's refusal to remedy her expense reports, Mr. Banko had a reasonable

18   belief that Employee Roe was violating both Apple policy and the law and that he was required to

19   report her.

20   33.    Mr. Banko's supervisors instructed Mr. Banko not to report Employee Roe, in essence

21   asking him to cover up and be complicit in the embezzlement of Employee Roe.

22   34.    Notwithstanding his superiors' instructions to ignore the situation, Mr. Banko reported the

23   embezzlement.

24   35.    As a result of Mr. Banko's reporting of Employee Roe, Apple conducted an internal audit

25   in order to determine if Employee Roe had misrepresented expenses on her expense reports and, if

26   so, the extent of Employee Roe's falsified expense reports.

27   36.    Apple's internal audit resulted in the discovery of over 40 instances of fraudulent expense

28   reports in which Employee Roe either inflated or falsified expenses for which she obtained

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

6

1   reimbursement from Apple.

2   37.     Based on Apple's policies, and Mr. Banko's reasonable belief that Employee Roe's actions

3   represented embezzlement from Apple, Mr. Banko recommended Employee Roe's immediate

4   termination for fraud and embezzlement of company funds.

5   38.     To Mr. Banko's surprise both his supervisor (Ms. Bergeron) and Ms. Bergeron's supervisor

6   (Doug Field) informed Mr. Banko that he should not pursue the termination of Employee Roe,

7   stating she was a valuable employee (apparently even with her lack of loyalty to Apple and her

8   embezzlement).

9   39.     Because of the legal implications of Employee Roe's actions, and the fact he reasonably

10  believed he was obligated by law and Apple policy to terminate Employee Roe, Mr. Banko

11  approached Mr. Victor Cousins of Apple's Human Resources department.

12  40.     Following his review of the facts, Mr. Cousins wrote a report recommending termination of

13  Employee Roe on or around December 21, 2012.

14  41.     Thereafter a meeting was held that involved, at a minimum, Ms. Bergeron and Mr. Field

15  regarding Employee Roe.  Mr. Banko was not invited to participate in the meeting, even though

16  Employee Roe was his direct report and he was typically included in such meetings.

17  42.     On December 21, 2012, Ms. Bergeron informed Employee Roe that Apple was terminating

18  her employment, effective December 31, 2012.

19  43.     Ms. Bergeron and Mr. Field, as well as Mr. Smith and others were upset that Mr. Banko

20  had reported Employee Roe and had recommended her termination against their wishes.

21  44.     Notwithstanding the turmoil Mr. Banko had to navigate during late 2012 regarding

22  Employee Roe, he successfully continued to complete his duties overseeing the engineering of the

23  Project.

24

25      E.     MR. BANKO'S TERMINATION FOLLOWING THE TERMINATION OF
               EMPLOYEE ROE.
26

27  45.     Apple was shut down for the holidays from December 22, 2012 through January 2, 2013.

28  Mr. Banko received no indication that there were any complaints or concerns regarding the Project

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

7

during that time.  In fact, he had received praise and congratulations for successfully completing a prototype on schedule before the holiday break.

46.     Immediately after his return from the holidays, Mr. Banko received a significant discretionary bonus in relation to his work on the Project.  Thus, by all indications everything in relation to the Project was not only going well, but Mr. Banko was being rewarded for how well he was doing with respect to leading the Project.

47.     Suddenly and without warning, on or around January 9, 2013, nine days after Employee Roe's termination date, Mr. Banko was called into a meeting with Ms. Bergeron and Mike Ignaffo, a member of Apple's human resources department.  During this meeting, Mr. Banko was pulled off the Project and told to stay home the rest of the week and return on Monday, January 14, 2013. Mr. Banko was shocked as he recognized such action as that typical of terminations.

48.     During the meeting Mr. Banko asked the reason for the action.  Neither Ms. Bergeron nor Mr. Ignaffo was able to provide a justification for the action.  Although asked directly, there was no mention of poor performance on the part of Mr. Banko.

Upon his return on January 14, 2013, Mr. Banko was terminated from his position at Apple after over 12 years with the company.

## FIRST CAUSE OF ACTION
## VIOLATION OF DODD-FRANK ACT

49.     Paragraphs 1-48 are incorporated herein by reference.

50.     15 U.S.C. §78u-6 states no employer may discharge or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower in providing information that is required or protected under the Sarbanes-Oxley Act, the Securities Exchange Act of 1934, and any other law, rule, or regulation subject to the jurisdiction of the Commission. (15 U.S.C. §78u-6 (h) (1) (A) (iii)).

51.     Apple has violated 15 U.S.C. §78u-6(h)(1) because the decision to terminate Mr. Banko's employment was motivated by Mr. Banko's disclosures which are protected by Section 806 of the Sarbanes-Oxley Act (18 U.S.C. §1514A).

52.     Apple is governed by the Sarbanes-Oxley Act because, upon information and belief, it (a)

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

1   has a "class of securities registered under section 12 of the Securities Exchange Act of 1934 (15

2   U.S.C. §78l), and (b) it is required to file reports under section 15(d) of the Securities Exchange

3   Act of 1934 (15 U.S.C. §78o (d)).  (18 U.S.C. §1514A (a)).

4   53.    Mr. Banko engaged in activity that is protected by Section 806 of the Sarbanes Oxley Act

5   (18 U.S.C. §1514A) when he informed Apple's officers and/or management of conduct which he

6   reasonably believed to be in violation of federal law relating to fraud against shareholders.

7   54.    In or about December, 2012, Apple's officers and/or management advised Mr. Banko not to

8   report the embezzlement of Employee Roe.  Having a reasonable belief that the theft had occurred

9   and that he was obligated to report it, Mr. Banko did so.

10   55.    In or about December, 2012, Apple's officers and/or management advised Mr. Banko not to

11   pursue the termination of Employee Roe after she had been found to have embezzled funds on 40

12   separate occasions in violation of Apple policy and the law.

13   56.    Mr. Banko recommended her termination to his supervisors, and then terminated her,

14   against the wishes of his supervisors.

15   57.    As a proximate result of Mr. Banko's conduct as described in Paragraph 29-48 above,

16   Apple terminated him within 14 days of Employee Roe's termination.

17   58.     As a proximate result of Apple's conduct, Mr. Banko has suffered harm, including lost

18   earnings and other employment benefits, humiliation, embarrassment, and mental anguish, and

19   other special and general damages, all to his damage in an amount to be established at trial.

20   59.    Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants

21   named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired

22   to commit one or more of the acts alleged herein.

23   60.    In committing the acts set forth above, Apple and the other Defendants knew that the

24   conduct that they would have required of Mr. Banko was unlawful, and required Mr. Banko to

25   choose between violating the law and/or Apple policy and losing his job.  Notwithstanding this

26   knowledge, Apple subjected Mr. Banko to cruel and unjust hardship in conscious disregard of Mr.

27   Banko's rights by resisting Mr. Banko's efforts to report and subsequently terminate the

28   embezzling Employee Roe and then terminating Mr. Banko's employment when he acted in

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

9

1   accordance with Apple policy and the law.  Apple's conduct warrants the assessment of punitive

2   damages.

3   61.      WHEREFORE, Mr. Banko requests relief as hereinafter provided.

4

5   **SECOND CAUSE OF ACTION**
    **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

6   62.      Paragraphs 1-61 are incorporated herein by reference.

7   63.      In or about December, 2012, Apple's officers and/or management advised Mr. Banko not to

8   pursue the investigation and/or termination of Employee Roe who had been found to embezzle

9   funds on 40 separate occasions in violation of Apple policy and the law.  Having a reasonable

10  belief that the theft had occurred and that he was obligated to report it, Mr. Banko did so.

11  64.      Employee Roe's embezzlement of a publicly traded corporation's funds harms the general

12  public by impacting the millions of Apple shareholders, and by creating tax irregularities

13  (deduction of illegitimate expenses as business expenses) which in turn could harm Apple and its

14  millions of shareholders.  Enforcing laws and policies with respect to illegal acts by employees

15  increases the value of the company and thereby benefits the public who owns Apple and increases

16  taxable revenue of the company.

17  65.      As a proximate result of Mr. Banko's conduct as described in Paragraph 63, above, and in

18  violation of public policy as set forth in Paragraph 64 above, Apple terminated Mr. Banko's

19  employment.

20  66.      As a proximate result of Apple's conduct, Mr. Banko has suffered harm, including lost

21  earnings and other employment benefits, humiliation, embarrassment, and mental anguish, and

22  other special and general damages, all to his damage in an amount to be established at trial.

23  67.      Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants

24  named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired

25  to commit one or more of the acts alleged herein.

26  68.      In committing the acts set forth above, Apple and the other Defendants knew that the

27  conduct that they would have required of Mr. Banko was unlawful, and required Mr. Banko to

28  choose between violating the law and/or Apple policy and losing his job.  Notwithstanding this

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

1  knowledge, Apple subjected Mr. Banko to cruel and unjust hardship in conscious disregard of Mr.

2  Banko's rights by resisting Mr. Banko's efforts to report and subsequently terminate the

3  embezzling Employee Roe and then terminating Mr. Banko's employment when he acted in

4  accordance with Apple policy and the law.  Apple's conduct warrants the assessment of punitive

5  damages.

6  69.     WHEREFORE, Mr. Banko requests relief as hereinafter provided.

7                          **THIRD CAUSE OF ACTION**
                               **RETALIATION**
8      **(15 USC §78u-6, 18 USC §1514A and California Labor Code §1102.5)**

9  70.     Paragraphs 1-69 are incorporated herein by reference.

10 71.     This cause of action is brought pursuant to 15 USC §78u-6, 18 USC §1514A and California

11 Labor Code §1102.5

12 72.      Because Mr. Banko engaged in protected activities, such as not covering up embezzlement,

13 not becoming complicit in the embezzlement, and reporting the embezzlement within a publicly

14 traded company, as alleged above, Mr. Banko was subjected to adverse actions.

15 73.     Apple and/or the other Defendants and each of them acting in the course and scope of their

16 employment and as representatives of Apple retaliated against Mr. Banko by the acts and conduct

17 described above, which materially affected Mr. Banko's terms of employment.

18 74.     15 USC §78u-6 and 18 USC §1514A makes it illegal for an employer to retaliate against an

19 employee who reports embezzlement.

20 75.     California Labor Code makes it illegal for an employer to retaliate against an employee for

21 refusing to participate in an activity that would result in a violation of state or federal statute, or a

22 violation or noncompliance with a state or federal rule or regulation.

23 76.     As a proximate result of Apple's conduct, Mr. Banko has suffered harm, including lost

24 earnings and other employment benefits, humiliation, embarrassment, and mental anguish, and

25 other special and general damages, all to his damage in an amount to be established at trial.

26 77.     Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants

27 named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired

28 to commit one or more of the acts alleged herein.

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

78.     In doing the things herein alleged, the conduct of Apple and each of the other Defendants was despicable and each Defendant acted towards Mr. Banko with malice, oppression, fraud, and with a willful and conscious disregard of Mr. Banko's rights.  Each of the Defendants ratified, authorized and condoned the conduct of each and every other Defendant and managing agent, entitling Mr. Banko to an award of punitive and exemplary damages.

79.     WHEREFORE, Mr. Banko requests relief as hereinafter provided.

### FOURTH CAUSE OF ACTION
### BREACH OF EMPLOYMENT CONTRACT

80.     Paragraphs 1-79 are incorporated herein by reference.

81.     Mr. Banko was employed by Apple for 12 years.  During the entirety of his employment with Apple, he consistently received either good or excellent performance evaluations and merit raises, was assured on numerous occasions that he would not be terminated arbitrarily, and was told by his supervisor that she would support him and back him up with respect to continued employment.

82.     Apple normally has a course of conduct and a policy of putting employees on performance improvement plans prior to terminating them.

83.     Based on the oral representations, promises, and/or conduct of Apple and/or the other Defendants, Mr. Banko had an employment contract with Apple stating that he would be employed by Apple so long as his performance was satisfactory, and that Apple and/or the other Defendants would not discharge him without good and just cause.

84.     The terms of the employment contract included, but were not limited to, the following: Apple and/or the other Defendants would not demote or discharge Mr. Banko without good cause and fair warning, based on objective, reasonable job evaluations of Mr. Banko, and following an opportunity to participate in a performance improvement plan.

85.     Mr. Banko at all times fulfilled his duties and conditions under the contract and has been ready, willing, and able to continue performing them in a competent and satisfactory manner.

86.      Notwithstanding the implied promise to terminate the employment contract only for good cause, on or about January 16, 2013, Apple and the other Defendants terminated Mr. Banko's

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

1   employment and later alleged grounds of poor performance, even though Mr. Banko had received

2   consistently good performance evaluations, had received merit raises and bonuses, including a

3   substantial discretionary merit bonus less than 2 weeks before his termination.

4   87.   Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants

5   named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired

6   to commit one or more of the acts alleged herein.

7   88.   As a proximate result of Apple and the other Defendants' breach of the employment

8   contract, Mr. Banko has suffered and continues to suffer losses in earnings and other employment

9   benefits, to his damage in an amount to be established at trial.

10  89.   WHEREFORE, Mr. Banko requests relief as hereinafter provided.

11
                    **FIFTH CAUSE OF ACTION**
12              **BREACH OF IMPLIED COVENANT OF**
                  **GOOD FAITH AND FAIR DEALING**

13  90.   Paragraphs 1-89 are incorporated herein by reference.

14  91.   The employment agreement referred to above contained an implied covenant of good faith

15  and fair dealing, which obligated Apple and/or the other Defendants to perform the terms and

16  conditions of the agreement fairly and in good faith and to refrain from doing any act that would

17  prevent or impede Mr. Banko from performing any or all of the conditions of the contract that he

18  agreed to perform, or any act that would deprive Mr. Banko of the benefits of the contract.

19  92.   Mr. Banko was employed by Apple for 12 years, and reasonably relied on the provisions of

20  the implied agreement regarding the causes for which employees could be discharged or demoted

21  and the procedures set forth for such discharges for the expectation that Apple and/or the other

22  Defendants would apply its policies even-handedly to afford Mr. Banko the protections of those

23  procedures if Apple and/or the other Defendants believed there was cause to discharge Mr. Banko.

24  93.   Apple and/or the other Defendants breached the implied covenant of good faith and fair

25  dealing under the employment agreement by, among other actions, taking steps to undermine Mr.

26  Banko's performance of his employment obligations, and, in fact, making it impossible for Mr.

27  Banko to perform his job.  To this end, Apple's actions, through Mr. Banko's direct supervisors',

28  show that Apple ultimately required that Mr. Banko violate company policies and the law.  The

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

Miclean Gleason LLP
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

1   actions of Apple frustrated and undermined Mr. Banko's ability to perform his job by creating a

2   situation whereby to properly perform in the view of his supervisors required him to choose to

3   directly violate company policy and the law, thus causing disruption with his duties as Engineering

4   Manager.

5   94.     In addition to the above, Mr. Banko was one of the inventors of certain Apple Technology.

6   As an inventor, Mr. Banko was entitled to, and had earned a bonus prior to his termination.  Apple

7   further breached the implied covenant of good faith and fair dealing by terminating Mr. Banko in

8   order to justify not paying Mr. Banko the bonus he had already earned in relation to his work on

9   the Apple invention.

10   95.     Mr. Banko is informed and believes and thereupon alleges that the fictitious Defendants

11   named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced or conspired

12   to commit one or more of the acts alleged herein.

13   96.     As a proximate result of Apple and/or the other Defendants' breach of the implied

14   covenant of good faith and fair dealing, Mr. Banko has suffered, and continues to suffer, losses in

15   earning and other employment benefits, to his damage in an amount to be established at trial.

16   97.     As a further proximate result of Apple and/or the other Defendants' breach of the implied

17   covenant of good faith and fair dealing, Mr. Banko has incurred reasonable attorney's fees in

18   attempting to secure the benefits owed him under the employment contract.

19   98.     WHEREFORE, Mr. Banko requests relief as hereinafter provided.

20

21   **IV.   PRAYER FOR RELIEF**

22   WHEREFORE, Plaintiff prays for judgment and relief as follows:

23   1.     For a money judgment representing compensatory damages including lost wages, earnings,

24   retirement benefits and other employee benefits, and all other sums of money, together with

25   interest on these amounts, according to proof;

26   2.     For a money judgment for mental pain and anguish and emotional distress, according to

27   proof;

28   3.     For an award of exemplary and punitive damages, according to proof;

---

14

4.      For costs of suit and attorney's fees;

5.      For pre-judgment and post-judgment interest; and

6.      For such other and further relief as the court deems just and proper.


**V.      REQUEST FOR JURY TRIAL**

Plaintiff Joshua Banko hereby requests trial by Jury.


DATED: October 25, 2013                    MICLEAN GLEASON LLP


By _____
                    David J. Miclean
                    Gary R. Gleason
                    Attorneys for Plaintiff Joshua Banko

**Miclean Gleason LLP**
100 Marine Parkway Suite 310
Redwood Shores, CA 94065
650-684-1181 Main   650-684-1182 Fax

CASE NO: CV 13-02977 RS                    FIRST AMENDED COMPLAINT FOR DAMAGES

# EXHIBIT F

*Banko v Apple* (2013), Apple's Second Motion to Dismiss

1   TODD K. BOYER, Bar No. 203132
    tboyer@littler.com
2   BENJAMIN A. EMMERT, Bar No. 212157
    bemmert@littler.com
3   LITTLER MENDELSON, P.C.
    50 W. San Fernando, 15th Floor
4   San Jose, California  95113.2303
    Telephone:    408.998.4150
5   Facsimile:    408.288.5686

6   Attorneys for Defendant
    APPLE INC.

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  JOSHUA BANKO,                      Case No.  CV13-02977 RS

13              Plaintiff,             **DEFENDANT APPLE INC.'S NOTICE OF
                                       MOTION; MOTION TO DISMISS
14       v.                            PLAINTIFF'S FIRST, SECOND, THIRD
                                       AND FIFTH CLAIMS FOR RELIEF
15  APPLE INC., and DOES 1-50,         PURSUANT TO FED.R.CIV.P. 12(b)(1)
                                       AND 12(b)(6); MEMORANDUM OF
16              Defendants.            POINTS AND AUTHORITIES IN
                                       SUPPORT OF DEFENDANT'S MOTION
17                                     TO DISMISS PLAINTIFF'S FIRST,
                                       SECOND, THIRD AND FIFTH CLAIMS
18                                     FOR RELIEF PURSUANT TO
                                       FED.R.CIV.P. 12(b)(1) AND 12(b)(6)**
19
                                       Date:        Thursday, December 12, 2013
20                                     Time:        1:30 p.m.
                                       Judge:       Hon. Richard Seeborg
21                                     Courtroom:  3 (17th Floor)

22                                     Trial Date: Not Set

23

24

25

26

27

28

DEFT APPLE INC.'S NOTICE OF MOTION                    (Case No.  CV13-02977 RS)
TO DISMISS AND MEM OF P &AS

**TABLE OF CONTENTS**

PAGE

I.    STATEMENT OF ISSUES TO BE DECIDED ............................................... 1

II.   INTRODUCTION .......................................................................................... 2

III.  STATEMENT OF ALLEGATIONS .............................................................. 3

IV.   LEGAL ARGUMENT ................................................................................... 4

      A.   Standard On A Rule 12(b)(6) Motion................................................... 4

      B.   Plaintiff Has Not Alleged Facts Establishing His First Claim For Relief For
           An Alleged Violation Of The Dodd-Frank Act Or SOX............................ 6

      C.   Plaintiff's Second Claim For Relief For Wrongful Termination Should Be
           Dismissed As He Has Failed To Allege Facts Establishing That Apple
           Violated A Fundamental Public Policy In Terminating His Employment ................. 8

      D.   Plaintiff Has Not Alleged Facts Establishing The Essential Elements Of His
           Third Claim For Relief For Retaliation ...................................................... 11

           1.   Plaintiff's Third Claim For Relief Based On The Dodd-Frank And
                SOX Acts Fails Because Has Not Engaged In Any Protected Activity
                Under Either Act ............................................................................. 11

           2.   Plaintiff's Third Claim For Relief Based On Labor Code Section
                1102.5 Fails Because He Has Not Exhausted His Administrative
                Remedies.......................................................................................... 12

           3.   Plaintiff's FAC Fails To Allege Facts Establishing That He Engaged
                In Any Protected Activity Under California Labor Code Section
                1102.5................................................................................................ 13

      E.   Plaintiff's Fifth Claim For Relief For An Alleged Breach Of The Implied
           Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law.................... 16

V.    CONCLUSION.............................................................................................. 17

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
MOTION TO DISMISS, AND MPA'S IN
SUPPORT

i.

(Case No.  CV13-02977 RS)

1

## TABLE OF AUTHORITIES

2

Page(s)

3  CASES

4  *American Computer Corp. v. Superior Court,*
5    213 Cal.App.3d 664 (1989) ...............................................................9, 10, 11

6  *Angell v. Peterson Tractor, Inc.,*
    21 Cal.App.4th 981 (1994) ........................................................................8

7
  *Asadi v. G.E. Energy (USA), L.L.C.,*
8    720 F.3d 620 (5th Cir. 2013) ....................................................................7

9  *Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................5, 6
10
  *Balistreri v. Pacifica Police Dept.,*
11    901 F.2d 696 (9th Cir. 1990) .....................................................................4

12  *Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................5, 6
13
  *Bionghi v. Metro Water Dist.,*
14    70 Cal.App.4th 1358 (1999) .....................................................................17

15  *Campbell v. Regents of University of California,*
    35 Cal.4th 311 (2005) ............................................................................13
16
  *Carter v. Escondido Union High School District,*
17    148 Cal.App.4th 922 (2007) ......................................................................9

18
  *City of Moorpark v. Superior Court,*
19    18 Cal.4th 1143 (1998) .............................................................................8

20  *Edgerly v. City of Oakland,*
    211 Cal.App.4th 1191 (2012) ...............................................................14, 15
21
  *Edwards v. Marin Park, Inc.,*
22    356 F.3d 1058 (9th Cir. 2004) ..............................................................8, 12

23
  *Foley v. Interactive Data Corp.,*
24    47 Cal.3d 654 (1988) ...........................................................................9, 16

25  *Gant v. Sentry Insurance,*
    1 Cal.4th 1083 (1992) ...............................................................................9
26
  *Gikonyo v. Alticor, Inc.,*
27    2010 Cal.App. Unpub. LEXIS 3303 (2010) ...........................................10, 11

28

DEFT APPLE INC.'S NOTICE OF MOTION
TO DISMISS AND MEM OF P & A       ii.       (Case No.  CV13-02977 RS)

1    *Green v. Ralee Engineering Co.,*
2        19 Cal.4th 66 (1998) ................................................................14

3    *Guz v. Bechtel National, Inc.,*
         24 Cal.4th 317 (2000) ...........................................................16, 17
4
     *Hulten v. U.S. Security Assoc., Inc.,*
5        2010 U.S. Dist. LEXIS 57878 (E.D. Cal. 2010) .................................11

6    *In re Gilead Sciences Securities Litigation,*
7        536 F.3d 1049 (9th Cir. 2008) .....................................................5

     *Lewis v. Electronic Data Systems Corp.,*
8        2004 Cal.App. Unpub. LEXIS 8987 (2004) .................................10, 11

9    *Love v. Motion Industries, Inc.,*
10       309 F.Supp.2d 1128 (N.D. Cal. 2004) ...........................................13

11   *MacDonald v. State of California,*
         219 Cal.App.4th 67 (2013) ....................................................12, 13
12
     *Mueller v. County of Los Angeles,*
13       176 Cal.App.4th 809 (2009) .......................................................15

14   *Passantino v. Johnson & Johnson Consumer Prods., Inc.,*
15       212 F.3d 493 (9th Cir. 2000) ......................................................13

16   *Rivera v. National Railroad Passenger Corp.,*
17       331 F.3d 1074 (9th Cir. 2003) .....................................................11

     *Sanders v. Andersons Products,*
18       91 F.3d 1351 (9th Cit. 1996) ........................................................9

19   *Sequoia Ins. Co. v. Superior Court,*
20       13 Cal.App.4th 1472 (1993) ........................................................9

21   *Silvas v. E\*Trade Mortg. Corp.,*
22       421 F.Supp.2d 1315 (S.D. Cal. 2006) .............................................5

     *Soukup v. Law Office of Herbert Hafif,*
23       39 Cal.4th 260 (2006) ..............................................................12

24   *Stevenson v. Superior Court,*
25       16 Cal.4th 880 (1997) .............................................................8, 9

26   *Strigliabotti v. Franklin Resources, Inc.,*
         398 F.Supp.2d 1094 (N.D. Cal. 2005) ............................................4
27
     *Strother v. S. Cal. Permanente Med. Group,*
28       79 F.3d 859 (9th Cir. 1996) .......................................................13

DEFT APPLE INC.'S NOTICE OF MOTION          iii.          (Case No.  CV13-02977 RS)
TO DISMISS AND MEM OF P & A

*WMX Technologies, Inc. f/k/a Waste Management, Inc. v. Miller*,
   104 F.3d 1133 (9th Cir. 1997) .................................................................................8, 12

*Yamaha Motor Corp. v. Superior Court*,
   185 Cal.App.3d 1232 (1986) ......................................................................................13

STATUTES

15 U.S.C. § 78 ............................................................................................................7, 11

18 U.S.C. § 1514 ............................................................................................................11

Cal. Lab. Code § 98 .......................................................................................................12

Cal. Lab. Code § 1102 .........................................................................11, 12, 13, 14, 15

OTHER AUTHORITIES

Fed.R.Civ.P. 8 ..................................................................................................................6

Fed.R.Civ.P. 12 ...........................................................................................................4, 5

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF JOSHUA BANKO AND TO HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, December 12, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 (17th Floor) of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Apple Inc., ("Defendant" or "Apple") will and hereby moves the Court for an order dismissing Plaintiff Joshua Banko's ("Plaintiff") first, second, third and fifth claims for relief alleged in his First Amended Complaint ("FAC") under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) with prejudice, on the grounds that Plaintiff's FAC fails to state facts sufficient to establish a claim upon which the requested relief can be granted and on the grounds the Court lacks jurisdiction due to Plaintiff's failure to exhaust his administrative remedies.

Apple's motion is based on this Notice, the Memorandum of Points and Authorities set forth below, the files and records in this action, and any further evidence and argument that the Court may receive at or before the hearing.

## I.   STATEMENT OF ISSUES TO BE DECIDED

Apple's motion seeking dismissal of Plaintiff's first, second, third and fifth claims for relief presents the Court with the following issues for decision:

1.   Does Plaintiff's first claim for relief in his FAC state facts sufficient to establish a claim for violation of the Dodd-Frank Act ("Dodd-Frank") and/or Sarbanes-Oxley ("SOX") acts when this Court held that Plaintiff's original Complaint failed to allege facts sufficient to establish these claims as a matter of law and Plaintiff intentionally failed to amend his Complaint to cure the deficiencies despite being afforded the opportunity to do so?

2.   Does Plaintiff's second claim for relief state facts sufficient to establish that Apple wrongfully terminated his employment in violation of a fundamental public policy when the only policy Plaintiff identified in his FAC implicate matters of private and not public concern?

3.   Does Plaintiff's third claim for relief state facts sufficient to establish a *prima facie* claim under California Labor Code section 1102.5, when Plaintiff's FAC fails to allege he exhausted his necessary and jurisdictional administrative remedies?

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS

1.

(Case No.  CV13-02977 RS)

4.       Does Plaintiff's third claim for relief state facts sufficient to establish a *prima facie* claim under California Labor Code section 1102.5 when Plaintiff's FAC fails to allege he engaged in any protected activity under the statute?

5.       Does Plaintiff's fifth claim for relief state facts sufficient to establish that Apple violated the implied covenant of good faith and fair dealing in terminating his employment?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## II.       INTRODUCTION

Plaintiff is a former "at-will" Apple employee who continues to pursue this meritless lawsuit based on his contention that Apple unlawfully terminated his employment because he reported that one of his subordinates had allegedly padded her expense reports she submitted to Apple in violation of Apple's internal policies and procedures. Even assuming this was true, which it is not, the termination of Plaintiff's employment does not give rise to an actionable claim.

Indeed, on September 27, 2013, this Court granted Apple's motion to dismiss Plaintiff's first, second, third and fifth claims for relief. (Order Denying In Part And Granting In Part Defendant's Motion To Dismiss ("Order") (Docket No. 29)). Instead of amending his complaint to address the deficiencies this Court noted in its September 27 order, Plaintiff filed a notice that he did not intend to amend his Dodd-Frank and SOX claims at all and his FAC is identical to his first Complaint with the exception of some additional allegations related to his claim for Breach of the Covenant of Good Faith and Fair Dealing. (Joshua Banko's Notice Of Intent Not To File An Amended Cause Of Action For Violation Of Dodd-Frank Act (Docket No. 31)).

Plaintiff has again failed to establish the essential elements of his claims for relief for: (1) unlawful retaliation in violation of Dodd-Frank (15 U.S.C. § 78u-6) and SOX (18 U.S.C. § 1514A); (2) wrongful termination in violation of public policy; (3) retaliation in violation of Dodd-Frank, SOX, and/or California Labor Code Section 1102.5; and (4) breach of the implied covenant of good faith and fair dealing.

As to Plaintiff's first and third claims for retaliation under Dodd-Frank and SOX, as this Court previously held, these claims fail because he has alleged no facts establishing either Act protects the type of conduct he allegedly engaged in. (Order, pp. 6:5-10:16). His third claim

1    additionally fails because Plaintiff's FAC fails to allege facts sufficient to establish Apple unlawful

2    retaliated against him under California Labor Code section 1102.5 because he has not alleged any

3    facts establishing he exhausted his necessary and jurisdictional prefiling administrative remedies by

4    filing a complaint with California's Labor Commissioner before bringing this action and/or that he

5    engaged in any activity protected by the statute.  His second claim for wrongful termination in

6    violation of public policy fails because he has alleged no fundamental public policy that Apple

7    allegedly violated in terminating his employment.  At most, Plaintiff's reports of Employee Roe's

8    alleged embezzlement only implicated Apple's private interests and not a fundamental public policy

9    that inured to the benefit of society as a whole.  Finally, Plaintiff's fifth claim for relief for breach of

10   the implied covenant of good faith and fair dealing fails because it is completely derivative of his

11   fourth claim for relief for breach of contract.

12          While Plaintiff may be unhappy with Apple's decision to terminate his employment,

13   he has not and cannot allege any facts establishing Apple violated any Federal or State statute in

14   doing so.  Apple's motion should therefore be granted.

15   **III.    STATEMENT OF ALLEGATIONS**

16          Plaintiff alleges he worked as an engineer for Apple from September 2000, until his

17   employment was terminated on January 14, 2013.  (Plaintiff's Complaint "Compl.," ¶¶9, 48; FAC,

18   ¶¶9, 48.)  He continues to claim to have received multiple promotions, led numerous high profile

19   projects, received numerous outstanding performance reviews, received several merit based salary

20   increases and discretionary bonuses, and was otherwise routinely complemented on his job

21   performance during his employment. (Compl., ¶¶ 9-22; FAC 9-22.)  He also continues to claim his

22   "performance never necessitated any performance improvement plan, nor did Apple ever issue any

23   negative written reviews." (Compl., ¶11; FAC, ¶11.)

24          Plaintiff realleges that in early 2012, he noticed that one of his direct reports, another

25   engineer called "Employee Roe," was allegedly submitting fraudulent charges on her expense

26   reports to Apple.  (Compl., ¶30; FAC, ¶30.)  He again claims to have instructed Employee Roe to

27   remove the charges from her expense reports, but she failed to do so. (Compl., ¶31; FAC, ¶31.)  He

28   also realleges that he believed her alleged fraudulent charges constituted a violation of Apple's

DEFT APPLE INC.'S NOTICE OF MOTION,          3.          (Case No. CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

1   policies and some unidentified "law" and that he was required to report her to his supervisor.

2   (Compl., ¶32; FAC, ¶32.)  He again alleges his supervisor allegedly told him not to report Employee

3   Roe, Plaintiff proceeded in reporting the alleged conduct to Apple's management.  (Compl., ¶34;

4   FAC, ¶34.)  Plaintiff again claims that Apple conducted an investigation of his report and discovered

5   she had submitted over 40 fraudulent expense reports.  (Compl., ¶36; FAC, ¶36.)

6           Because of Apple's investigation, Plaintiff claims he recommended Employee Roe be

7   fired.  (Compl., ¶37; FAC, ¶37.)  Plaintiff repeats his assertion that his supervisors rebuffed his

8   suggestion, and he thus made his termination recommendation directly to Apple's Human Resources

9   Department.  (Compl., ¶¶39-40; FAC, ¶39-40.)  He claims Apple Human Resources' Business

10  Partner held a meeting with his supervisors regarding whether to fire Employee Roe.  (Compl., ¶42;

11  FAC, ¶42.)  Plaintiff alleges Apple terminated Employee Roe's employment on about December 31,

12  2012.  (Compl., ¶42; FAC, ¶42.)  Plaintiff claims his supervisors and others were upset that he had

13  reported Employee Roe's falsification of her expense reports and recommended her termination.

14  (Compl., ¶43; FAC, ¶43.)

15          Plaintiff realleges that on January 9, 2013, he was called into a meeting with his

16  supervisor and one of Apple Human Resources Department's Business Partners.  (Compl., ¶47,

17  FAC, ¶47.)  He claims they pulled him off the project he was working on and told him to stay home

18  the rest of the week and return to work on January 14, 2013.  (*Id.*)  He claims that when he returned

19  to work on January 14, 2013, Apple terminated his employment.  (*Id.*)

## IV.   LEGAL ARGUMENT

### A.   Standard On A Rule 12(b)(6) Motion.

22          In ruling on a motion to dismiss under Rule 12(b)(6), the court must determine

23  whether the plaintiff has stated a claim upon which relief may be granted.  See Fed. R. Civ. P.

24  12(b)(6); *Strigliabotti v. Franklin Resources, Inc.*, 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005)

25  (discussing the standards under Rule 12(b)(6)).  The Court should grant a motion to dismiss when a

26  set of facts pled, even if true, would not entitle the plaintiff to relief.  *Balistreri v. Pacifica Police*

27  *Dept.,* 901 F.2d 696, 699 (9th Cir. 1990) (as amended) (motion to dismiss warranted when there is

28

DEFT APPLE INC.'S NOTICE OF MOTION,        4.                 (Case No.  CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

an "absence of sufficient facts alleged under a cognizable legal theory") (disapproved on other grounds in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007)).

To survive a motion to dismiss, a Complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And, although the court must assume the Complaint's factual allegations are true, "legal conclusions need not be taken as true merely because they are cast in the form of factual allegations." *Silvas v. E\*Trade Mortg. Corp.*, 421 F.Supp.2d 1315, 1317 (S.D. Cal. 2006). "Nor is the court required to accept as true allegations that are . . . unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Further, while the pleading standard under the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' . . . it [certainly] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly, supra*, 550 U.S. at 555). A complaint that offers "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (citations omitted). A plaintiff must plead a "statement of circumstances, occurrences, and events in support of the claim presented." *Id.* at 556 n.3, citation omitted. As the Supreme Court stated in *Twombly*, 550 U.S. at 555:

> While a complaint attacked by Rule 12 (b)(6) motion to dismiss does not need detailed factual allegations [citation], a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation]. Factual allegations must be enough to raise a right to relief above the speculative level . . . . [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action . . . . [citations].

Likewise, the court further noted in *Ashcroft v. Iqbal*, 556 U.S. at 678-79 that:

> A court considering a motion to dismiss can choose to begin by identifying allegations that, **because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by**

DEFT APPLE INC.'S NOTICE OF MOTION, TO DISMISS, AND MEMO OF P&AS          5.          (Case No. CV13-02977 RS)

**factual allegations.** When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. . . .

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Citation.]  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." [Citation.]

To survive a motion to dismiss, **a complaint must contain sufficient factual matter,** accepted as true, to "state a claim to relief that is plausible on its face." [Citation.]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation.]   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation.]  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" [Citation.]

[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. [Citation.]  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. [Citation.]  But where the well-pleaded facts do not **permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"— "that the pleader is entitled to relief."** Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft,* 556 U.S. at 678-679 (emphasis added).  A court should not assume that a plaintiff can prove facts not alleged.  *Twombly,* 550 U.S. at 563 n.8 (quoting *Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983)).  If a plaintiff's allegations do not bring his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly,* at 570.  As discussed below, Plaintiff's Complaint fails to allege facts establishing his five claims for relief under this pleading standard.

**B.    Plaintiff Has Not Alleged Facts Establishing His First Claim For Relief For An Alleged Violation Of The Dodd-Frank Act Or SOX.**

As stated in Apple's brief to dismiss Plaintiff's original Complaint, Plaintiff cannot state a claim for relief under the Dodd-Frank Act or SOX because, *inter alia,* he admittedly did not

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS

6.

(Case No.  CV13-02977 RS)

1    make a report to the Securities and Exchange Commission ("SEC") and therefore does not meet the

2    statutory definition of a "whistleblower."  Congress could not have been clearer on this point: the

3    anti-retaliation provision of the Dodd-Frank Act, the provision under which Plaintiff is moving, only

4    prohibits actions taken against "whistleblowers." 15 U.S.C. § 78u-6(h)(1)(A). A "whistleblower" is

5    defined as "any individual who provides, or 2 or more individuals acting jointly who provide,

6    information relating to a violation of the securities law *to the [Securities and Exchange]*

7    *Commission* . . . ." *Id*. § 78u-6(a)(6) (emphasis added).  Congress mandated this definition "shall

8    apply" to the entire statute, including the anti-retaliation subsection. *Id*. at §78u-6(a).  "[T]he

9    whistleblower-protection provision [of Dodd-Frank] unambiguously requires individuals to provide

10   information relating to a violation of the securities laws *to the SEC* to qualify for protection from

11   retaliation . . . ." *Asadi v. G.E. Energy (USA), L.L.C.,* 720 F.3d 620, 629 (5th Cir. 2013) (emphasis

12   in original).  Plaintiff has not claimed – and cannot claim – that he reported any information to the

13   SEC.  (See FAC, *passim*.)  He is therefore not a "whistleblower" as defined by the Dodd-Frank Act

14   and SOX and the Court should dismiss his first claim for relief in its entirety with prejudice.

15          In its September 27, 2013 Order, this Court agreed with the foregoing and granted

16   Apple's motion to dismiss Plaintiff's first and third claims for relief predicated on an alleged

17   violation of the Dodd-Frank Act and SOX because Plaintiff failed to allege that he met the statute's

18   clear and unambiguous "whistleblower" definition.  (Order, pp. 10:12-16.)  In granting Apple's

19   motion, this Court agreed that the Dodd-Frank Act only applies to individuals who meet the statute's

20   definition of a "whistleblower." (Order, pp. 6:11-12, 8:5-16); see also 15 U.S.C. § 78u-6(a).  This

21   Court also agreed that Plaintiff failed to allege any facts establishing that he could properly be

22   considered a "whistleblower" protected by the Acts. (Order, pp. 6:11-12, 8:5-16, 10:12-16.)

23          Accordingly, this Court held Plaintiff had not alleged facts sufficient to establish this

24   claim for relief as a matter of law. (Order, pp. 6:11-12, 8:5-16, 10:12-16 ("[b]ecause plaintiff did not

25   file a complaint to the SEC, he is not a 'whistleblower' under the Dodd-Frank Act. 15 U.S.C. 78u-

26   6(a)(6). . . . Plaintiff's first claim for relief is therefore dismissed")); see also 15 U.S.C. § 78u-6(a);

27   *Asadi,* 720 F.3d 620.  However, this Court, granted Plaintiff leave to amend to attempt to allege facts

28

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS

7.

(Case No.  CV13-02977 RS)

1   establishing he could meet the statutory definition of a "whistleblower" for the purposes of the

2   Dodd-Frank Act. (Order, p. 14:14-16.)  Plaintiff did not even make an attempt to do so.

3          Rather than accept the Court's invitation and amend his Complaint to attempt to

4   allege facts establishing that he allegedly engaged in conduct protected under the Dodd-Frank Act

5   and/or SOX, Plaintiff chose to stand on his original allegations "with the expectation that the Court

6   will enter an order dismissing the First Cause of Action, with prejudice, based upon the reasoning of

7   its order of September 26 [*sic*], 2013." (Docket No. 31.)   In circumstances where a plaintiff

8   evidences an intent to not amend his/her Complaint in the face of an order dismissing one or more

9   claims for relief, the Court should enter an order dismissing the claims with prejudice. *Edwards v.*

10  *Marin Park, Inc.,* 356 F.3d 1058, 1064 (9th Cir. 2004) (stating that when a plaintiff elects to stand on

11  the sufficiency of a pleading that the Court has found legally deficient, "the district court should . . .

12  take[] the election not to amend at face value, [and] enter[]" and order dismissing the claim with

13  prejudice); see also *WMX Technologies, Inc. f/k/a Waste Management, Inc. v. Miller*, 104 F.3d 1133,

14  1135 (9th Cir. 1997).   This Court should likewise accept Plaintiff's decision not to amend his

15  Complaint but to stand on his allegations that this Court specifically held were insufficient to state a

16  claim for an alleged violation of the Dodd-Frank Act and SOX, and enter an order dismissing

17  Plaintiff's First Claim for relief under Dodd-Frank with prejudice.

18  **C.    Plaintiff's Second Claim For Relief For Wrongful Termination Should Be
          Dismissed As He Has Failed To Allege Facts Establishing That Apple Violated A
19        Fundamental Public Policy In Terminating His Employment.**

20         To establish a claim for wrongful termination in violation of public policy, Plaintiff

21  must prove that Apple violated some constitutional, statutory or regulatory provision in carrying out

22  the termination. *Angell v. Peterson Tractor, Inc.*, 21 Cal.App.4th 981, 987 (1994) (disapproved on

23  other grounds in *City of Moorpark v. Superior Court*, 18 Cal.4th 1143 (1998)).   Under well-

24  established California law, wrongful termination claims based on an alleged violation of a

25  fundamental public policy must be tethered to some recognized statutory or regulatory provision.

26  *Stevenson v. Superior Court*, 16 Cal.4th 880, 887-894 (1997).   In this action, Plaintiff's wrongful

27  termination cause of action is based on his claim that Apple violated the Dodd-Frank and/or SOX

28  Acts in terminating his employment.   As established above and in this Court's prior Order however,

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,        8.        (Case No. CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

1    Plaintiff cannot establish the essential element of these claims as a matter of law.   Accordingly,

2    Plaintiff's wrongful termination claim cannot be premised on the alleged public policy set forth

3    therein.  *Sanders v. Andersons Products,* 91 F.3d 1351, 1354 (9th Cit. 1996).

4            Moreover, Plaintiff's wrongful termination claim also fails because Plaintiff has not

5    alleged facts establishing that Apple violated any fundamental ***public*** policy in terminating his

6    employment.  His failure to do so is also fatal to this claim.  A termination is actionable as against

7    public policy only if it violates a policy that is: "(1) delineated in either constitutional or statutory

8    provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving

9    merely the interests of the individual; (3) well established at the time of the discharge; and (4)

10   'substantial' and 'fundamental.'"  *Carter v. Escondido Union High School District*, 148 Cal.App.4th

11   922, 929 (2007) (quoting *Stevenson v. Superior Court*, 16 Cal.4th 880, 901–902 (1997)).

12           To bring a cognizable wrongful termination in violation of public policy claim,

13   Plaintiff must show: (1) that Apple violated some statute or regulation (or that Plaintiff had a

14   reasonable belief that Apple did so); and (2) that the violation was tethered to an important and

15   fundamental public policy articulated in the statute or regulation.  See *Gant v. Sentry Insurance*, 1

16   Cal.4th 1083, 1095 (1992); *Sequoia Ins. Co. v. Superior Court*, 13 Cal.App.4th 1472, 1475 (1993) (a

17   showing the employer's conduct was "specifically prohibited" by a statutory or constitutional

18   provision is a "foundational requirement" for a wrongful termination claim).  Indeed, as specifically

19   held by California's Supreme Court in *Foley v. Interactive Data Corp.*, 47 Cal.3d 654 (1988), no tort

20   claim can typically exist for employment related conduct, such as termination of employment, absent

21   some violation of a fundamental public policy.  *Foley*, 47 Cal.3d. at 670-671, n. 11.

22           It is well-settled that internal complaints by private sector employees that a co-worker

23   may be embezzling from the employer do not implicate any fundamental public policy sufficient to

24   act as the predicate public policy necessary to establish a wrongful termination claim.  See *American*

25   *Computer Corp. v. Superior Court*, 213 Cal.App.3d 664 (1989).  In *American Computer Corp.*, the

26   plaintiff claimed his employer wrongfully terminated his employment because he reported to his

27   employer "what he believed was embezzlement [by his co-workers] from the company."  *Id.* at 665.

28   The plaintiff in *American Computer* alleged he discovered certain former directors of the company

were being paid by the company for alleged consulting work which they did not perform. *Id.* at 666. The plaintiff alleged he believed this constituted unlawful embezzlement of the company's funds and reported this alleged conduct to the company's chief operating officer, its vice president of finance and its chairman. *Id.* The plaintiff "alleges he was told he should not concern himself with the[se]" matters." *Id.* The plaintiff's employment was terminated a short time later and he sued for wrongful termination in violation of public policy. *Id.*

The Appellate Court held the plaintiff's "communication with the [company's] officers did not serve any interest other than the company's." *American Computer Corp*, 213 Cal.App.3d at 665. Specifically the Appellate Court stated:

> In this case we are unable to discern any interest other than [the company's] which was served by the [plaintiff's report of the alleged embezzlement]. He has not alleged he was ordered to embezzle from the corporation. Quite to the contrary, he alleges he was told the disputed payments were none of his concern. Nor was he punished for reporting criminal activity to law enforcement agencies. Rather, his reports were to his supervisors.
>
> The most that can connect [the plaintiff's conduct] with the public interest is the argument that by reporting his suspicions to his superiors he took action which might eventually prevent or uncover the commission of a felony and thereby served the laudable goal of preventing crime. However, the potential for such a public benefit is not a public interest which is weighty enough to give rise to a claim for wrongful discharge.

*Id.* at 668. The Court therefore dismissed the plaintiff's wrongful termination cause of action for failure to identify fundamental public policy, which his termination violated. *Id.*; *see also Gikonyo v. Alticor, Inc.*, 2010 Cal.App.Unpub. LEXIS 3303,*33-39 (2010) (holding that claims by a plaintiff that he was terminated for reporting employee falsification of hours to make a project appear profitable does not implicate any fundamental public policy necessary to support a wrongful termination cause of action); *Lewis v. Electronic Data Systems Corp.*, 2004 Cal.App.Unpub. LEXIS 8987,*5-7 (2004) (holding the plaintiff's allegations that he was fired for reporting to his employer that co-workers were making false statements to existing and potential customers in order to "increase defendant's revenues or stock prices" "are not sufficient to meet the requirements that the public policy being asserted must be truly 'public,' *i.e.*, inuring to the benefit of the public at large and not merely tied to the individual's interests . . . [as] this was merely a private business dispute

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS

10.

(Case No. CV13-02977 RS)

1    not rising to the level of a true public policy violation"); *Rivera v. National Railroad Passenger*

2    *Corp.*, 331 F.3d 1074, 1079-1080 (9th Cir. 2003) (holding that "reporting [alleged] ongoing criminal

3    conduct to an employer's management does not necessarily implicate a public interest," fundamental

4    public policy, necessary to establish a wrongful termination cause of action); *Hulten v. U.S. Security*

5    *Assoc., Inc.*, 2010 U.S. Dist. LEXIS 57878,*5-7 (E.D. Cal. 2010) (same).

6              In this action, Plaintiff claims he was terminated in retaliation for his reporting to

7    Apple's management that his co-worker allegedly submitted falsified expense reports in violation of

8    Apple's "policy and the law." (FAC, ¶63.)  Plaintiff claims he reported Employee Roe's alleged

9    conduct because he believed he had an obligation to Apple to do so.  (*Id.* at ¶32.)  Plaintiff's

10   allegations are essentially identical to those California and the Federal Courts have repeatedly held

11   do not implicate a fundamental public policy as a matter of law.  See *American Computer Corp*, 213

12   Cal.App.3d at 668; *Gikonyo*, 2010 Cal.App.Unpub. LEXIS 3303 at *33-39; *Lewis*, 2004

13   Cal.App.Unpub. LEXIS 8987 at *5-7; *Rivera,* 331 F.3d at 1079-1080; *Hulten,* 2010 U.S. Dist.

14   LEXIS 57878 at *5-7.  Plaintiff's reports of Employee Roe's alleged conduct, at most, only served

15   Apple's internal interests.  They do not inure to the public's benefit.  As a result, Plaintiff has not

16   alleged facts sufficient to establish his second claim for relief.  Apple's motion to dismiss should

17   therefore be granted with prejudice.

18       **D.      Plaintiff Has Not Alleged Facts Establishing The Essential Elements Of His**
             **Third Claim For Relief For Retaliation.**
19

20           **1.      Plaintiff's Third Claim For Relief Based On The Dodd-Frank And SOX**
                  **Acts Fails Because Has Not Engaged In Any Protected Activity Under**
                  **Either Act.**
21

22           Plaintiff's third claim for relief is brought under Dodd-Frank, 15 U.S.C. Section 78u-

23   6, SOX, 18 U.S.C. Section 1514A, and California Labor Code Section 1102.5.  As set forth in this

24   Court's September 27 Order on Apple's motion to dismiss, and based on Plaintiff's election not to

25   amend his Complaint, Plaintiff has not alleged facts sufficient to establish a violation of Dodd-Frank

26   and/or SOX.  (Order, p. 10:15-16.)  Indeed, Plaintiff has not and cannot state a claim for relief under

27   the Dodd-Frank or SOX Acts because he does not meet the statutory definition of a "whistleblower,"

28   an essential element necessary to establish this claim.  15 U.S.C. § 78u-6(h)(1)(A).  In fact, this

DEFT APPLE INC.'S NOTICE OF MOTION,          11.          (Case No. CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

1   Court conclusively held that Plaintiff failed to allege facts establishing that he met the statutory

2   definition of a "whistleblower" and that his failure to do so is fatal to this claim. (Order, p. 10:15-16

3   "the Dodd-Frank and Sarbanes-Oxley bases for plaintiff's third claim are also dismissed.")

4   Accordingly, as Plaintiff refused to amend his Complaint to correct the fatal

5   deficiencies in his Dodd-Frank and SOX claims and his current allegations still fail to allege facts

6   sufficient to establish a viable claim for relief under these statutes, this Court should again grant

7   Apple's motion to dismiss the Dodd-Frank and SOX claims with prejudice. *Edwards*, 356 F.3d at

8   1064; *WMX Technologies, Inc. f/k/a Waste Management, Inc.*, 104 F.3d at 1135.

9           **2.      Plaintiff's Third Claim For Relief Based On Labor Code Section 1102.5**
            **Fails Because He Has Not Exhausted His Administrative Remedies.**
10

11  Additionally, Plaintiff's third claim for relief cannot be predicated on an alleged

12  violation of California Labor Code Section 1102.5 because he has failed to allege any facts

13  establishing he exhausted his necessary and jurisdictional administrative remedies prior to filing this

14  lawsuit, which is fatal to this claim as a matter of law.

15  Like SOX, "Labor Code section 1102.5 is a whistleblower statute, the purpose of

16  which is to 'encourag[e] workplace whistle-blowers to report unlawful acts without fearing

17  retaliation.'" *Soukup v. Law Office of Herbert Hafif*, 39 Cal.4th 260, 287 (2006). Also like SOX,

18  California Labor Code Section 1102.5 requires an employee to file an administrative complaint prior

19  to filing a civil action. Section 1102.5's administrative remedy requirement was just reaffirmed by

20  the California Court of Appeal in *MacDonald v. State of California*, 219 Cal.App.4th 67, 70-72

21  (2013).

22  Labor Code Section 1102.5 falls under the jurisdiction of California's Labor

23  Commissioner. Cal. Labor Code § 98.6; *MacDonald*, 219 Cal.App.4th at 70-72. An aggrieved

24  plaintiff is required to exhaust his/her administrative remedies with California's Labor

25  Commissioner pursuant to California Labor Code section 98.7, before bringing a civil action for an

26  alleged violation of Section 1102.5. Cal. Labor Code § 98.7; *MacDonald*, 219 Cal.App.4th at 70-72.

27  "'In brief, the rule is that where an administrative remedy is provided by statute, relief must be

28  sought from the administrative body and this remedy exhausted before the courts will act.'"

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,          12.          (Case No. CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

1   *Campbell v. Regents of University of California*, 35 Cal.4th 311, 321 (2005) (citing *Abelleira v.*

2   *District Court of Appeal*, 17 Cal.2d 280, 292 (1941)). "This is so even though the administrative

3   remedy is couched in permissive language; an aggrieved party is not required to file a grievance or

4   protest if he does not wish to do so, but if he does wish to seek relief, he must first pursue an

5   available administrative remedy before he may resort to the judicial process." *Yamaha Motor Corp.*

6   *v. Superior Court*, 185 Cal.App.3d 1232, 1240 (1986) (superseded by statute on another ground as

7   recognized in *South Bay Creditors Trust v. General Motors Acceptance Corp.*, 69 Cal.App.4th 1068,

8   1079 (1999)).

9       A failure to exhaust administrative remedies precludes an alleged aggrieved party

10  from bringing a civil action under Section 1102.5. *MacDonald*, 219 Cal.App.4th at 71-72 (affirming

11  the sustaining of a demurrer to a claim for an alleged violation of Labor Code section 1102.5, on the

12  grounds the plaintiff failed to allege facts establishing he exhausted his administrative remedies

13  pursuant to Labor Code section 98.7 before filing his lawsuit).

14       Here, Plaintiff's original and FAC are devoid of any facts establishing he exhausted

15  his administrative remedies as to his third claim for relief. Accordingly, Plaintiff is precluded from

16  pursuing his third claim for relief for an alleged violation of Labor Code section 1102.5 in this Court

17  as a matter of law. *Id.* Apple's motion to dismiss the Third Claim for Relief should be granted in its

18  entirety with prejudice.

19       **3.**    **Plaintiff's FAC Fails To Allege Facts Establishing That He Engaged In**

20             **Any Protected Activity Under California Labor Code Section 1102.5.**

21       Even if Plaintiff had properly exhausted his administrative remedies under Labor

22  Code Section 1102.6, his claim fails nonetheless. To establish a *prima facie* claim of retaliation,

23  Plaintiff must plead facts establishing: (1) he engaged in a protected activity; (2) that Apple

24  subjected him to an adverse employment action; and (3) there was a causal link between his

25  protected activity and the adverse action. See *Passantino v. Johnson & Johnson Consumer Prods.,*

26  *Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859,

27  868 (9th Cir. 1996); *Love v. Motion Industries, Inc.*, 309 F.Supp.2d 1128, 1134 (N.D. Cal. 2004).

28  Plaintiff cannot do so.

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113-2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS       13.       (Case No. CV13-02977 RS)

1   California Labor Code sections 1102.5(b) and (c) make it an unlawful employment

2   practice for an employer to:

3   [b] retaliate against an employee for disclosing information to a
    government or law enforcement agency, where the employee has
4   reasonable cause to believe that the information discloses a violation of
    state or federal statute, or a violation or noncompliance with a state or
5   federal rule or regulation, [or;]

6   [c] retaliate against an employee for refusing to participate in an activity
    that would result in a violation of state or federal statute, or a violation or
7   noncompliance with a state or federal rule or regulation.

8   As an initial matter, Plaintiff has not alleged any facts establishing he ever

9   complained of any alleged violation of a state or federal statute, or a violation or noncompliance

10  with a state or federal rule or regulation to a government or law enforcement agency. At most, he

11  claims he reported Employee Roe's alleged improper actions to Apple. These complaints cannot

12  establish a violation of Section 1102.5(b) as a matter of law. *Green v. Ralee Engineering Co.,* 19

13  Cal.4th 66, 77 (1998) (stating Labor Code section 1102.5(b) "does not protect plaintiff, who reported

14  his suspicions [of illegal activity] directly to his employer"). Moreover, Plaintiff has not alleged

15  what statute he believes Employee Roe's alleged conduct violated. Plaintiff alleges Apple's

16  management told him not to investigate or fire Employee Roe and he was terminated shortly

17  thereafter. (Compl., ¶37-38.) Plaintiff claims this "violated the law" but cites no statute which

18  requires an employer to investigate or fire an employee for inflating an expense report – as of course

19  there is no such law. *Edgerly v. City of Oakland*, 211 Cal.App.4th 1191 (2012). He therefore also

20  cannot establish the essential element for this cause of action that he actually reported a violation of

21  a state or federal statute or noncompliance with a rule or regulation. Cal. Labor Code § 1102.5(b).

22  Plaintiff also cannot establish he was terminated for refusing to participate in an

23  activity that would result in violating a state or federal statute, or a violation or noncompliance with

24  a state or federal rule or regulation for the purposes of Labor Code section 1102.5(c). While

25  Plaintiff claims he was fired for "refusing to participate in an activity that would result in a violation

26  of a state of federal statute, or a violation or noncompliance with a state of federal rule or

27  regulation," his Complaint is devoid of any factual allegations supporting this conclusion. (FAC.,

28  ¶75.) Plaintiff's alleged refusal to not pursue Employee Roe's alleged improper expense reports

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS          14.          (Case No. CV13-02977 RS)

1    does not constitute refusing to participate in an activity that would cause a violation of state or

2    federal statute for the purposes of Section 1102.5(c) as a matter of law.

3              The recent case of *Edgerly v. City of Oakland* is completely analogous to Plaintiff's

4    Section 1102.5(c) claims and shows this claim fails as a matter of law.  *Edgerly, supra,* 211

5    Cal.App.4th at 1191.  The plaintiff in *Edgerly* was Oakland's City Administrator who alleged the

6    City of Oakland terminated her employment in retaliation for her refusal to approve expense

7    reimbursement requests submitted by the Mayor she believed violated the City's rules and

8    regulations.  *Id.* at 1194-1196.  She sued the City alleging among other causes of action, unlawful

9    retaliation in violation of Section 1102.5(c), which was dismissed by the trial court on demurrer.

10   *Ibid.*

11             The Appellate Court affirmed the dismissal because Plaintiff had identified no State

12   or federal statute, rule or regulation violated by the Mayor's alleged conduct.  *Id.* at 1200-1201.  At

13   most, the conduct violated the City's charter.  *Ibid.*  The Court held the City's charter, much like an

14   employer's own internal policies and procedures, is not a State or federal statute, rule or regulation.

15   *Ibid.*  Plaintiff's alleged termination for refusing to approve the expenses could not establish a

16   violation of Labor Code section 1102.5(c) as a matter of law.  See also, *Mueller v. County of Los*

17   *Angeles,* 176 Cal.App.4th 809, 822 (2009) (holding that complaints regarding internal procedures

18   "such as transferring employees, writing up employees, and counseling employees are personnel

19   matters" and do "not rise to the level of whistleblower retaliation" as a matter of law).

20             Here, Plaintiff, like the plaintiff in *Edgerly,* alleges throughout his FAC that he

21   complained that Employee Roe had padded her expense reports in violation of Apple's internal

22   policies.  (FAC., ¶32.)  There are no allegations that he was asked to do anything which would

23   violate any law, statute, or regulation.  Moreover, Plaintiff has not alleged that an employee's

24   alleged padding her expense report in violation of an employer's internal policies or procedures

25   violates any state or federal statute, rule or regulation.  As the *Edgerly* Court held, it does not.

26   *Edgerly, supra,* 211 Cal.App.4th at 1204.  Accordingly, Plaintiff's Section 1102.5 claim fails and

27   must be dismissed with prejudice.

28

DEFT APPLE INC.'S NOTICE OF MOTION,          15.          (Case No.  CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

1

**E.**    **Plaintiff's Fifth Claim For Relief For An Alleged Breach Of The Implied Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law.**

2

3        There is no tort remedy available for breach of the implied covenant in the

4    employment context when, as here, the cause of action is based on facts identical to a breach of an

5    implied contract claim.  *Foley, supra,* 47 Cal.3d at 700 (abolishing tort remedies for breach of the

6    implied covenant in wrongful termination of employment cases).    This reasoning has been

7    repeatedly recognized by the Appellate Courts and affirmed by the California Supreme Court in *Guz*

8    *v. Bechtel National, Inc.,* 24 Cal.4th 317, 352-353 (2000).    The *Guz* Court expressly limited the

9    ability of a plaintiff to assert a claim for breach of the implied covenant of good faith and fair

10   dealing in the employment context. The Court held that a plaintiff may not recover on such a claim

11   for the alleged breach of obligations not contained in the underlying contract because "the covenant

12   of good faith and fair dealing . . . exists merely to prevent one contracting party from unfairly

13   frustrating the other party's right to receive the *benefits of the agreement actually made*." *Id*. at 349

14   (emphasis in original).    As further stated by the Court, "insofar as the employer's acts are directly

15   actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach

16   as a violation of the covenant is superfluous." *Id*. at 352.    Rather, "the remedy for breach of an

17   employment agreement, including the covenant of good faith and fair dealing implied by law therein,

18   is *solely contractual*." *Ibid.* (emphasis in original) (finding that "allegations that a breach was

19   wrongful, in bad faith, arbitrary, and unfair are unavailing").

20       In his fifth claim for relief, Plaintiff alleges that Apple breached the implied covenant

21   of good faith and fair dealing contained in the alleged employment contract by, among other things,

22   terminating Plaintiff's employment.  (FAC., ¶93).  His breach of contract and breach of the implied

23   covenant claims are both based upon the premise that Apple breached both the alleged employment

24   agreement and the implied covenant by wrongfully terminating Plaintiff's employment. (*Id.* at ¶¶84-

25   86, 91-97.)  Plaintiff pleads no unique facts to support his breach of the covenant of good faith and

26   fair dealing.  Moreover, Plaintiff is seeking the same damages on both claims – an alleged "losses in

27   earning and other employment benefits, to his damage" because of Defendant's alleged breach. (*Id.*

28   at ¶¶88, 96.)

LITTLER MENDELSON, P.C.
0 W. San Fernando, 15th Floor
San Jose, CA 95113.2303
408.998.4150

DEFT APPLE INC.'S NOTICE OF MOTION,
TO DISMISS, AND MEMO OF P&AS                16.                (Case No.  CV13-02977 RS)

1    Plaintiff's implied covenant claim is superfluous, does not constitute a valid cause of

2  action as a matter of law and should be dismissed.  See *Guz, supra,* 24 Cal.4th at 352; *Bionghi v.*

3  *Metro Water Dist.*, 70 Cal.App.4th 1358, 1370 (1999).  Accordingly, Defendant's motion to dismiss

4  Plaintiff's fifth claim for relief should be granted with prejudice.

5  **V.    CONCLUSION**

6    For the above stated reasons, Apple respectfully requests this Court issue an order

7  dismissing Plaintiff's first, second, third and fifth claims for relief alleged in his FAC without leave

8  to amend.

9  Dated: November 7, 2013

10

11   //s// *Todd K. Boyer*
     TODD K. BOYER
     LITTLER MENDELSON, P.C.

12   Attorneys for Defendant
     APPLE INC.

13

14

15  Firmwide:124067129.1 043907.1171

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFT APPLE INC.'S NOTICE OF MOTION,          17.          (Case No.  CV13-02977 RS)
TO DISMISS, AND MEMO OF P&AS

# EXHIBIT G

*Banko v. Apple, Inc.*, No. 13-02977 RS (N.D. Cal. Dec. 16, 2013)

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                        SAN FRANCISCO DIVISION

9

10   JOSHUA BANKO,                          No. 13-02977 RS

                    Plaintiff,              **ORDER DENYING IN PART AND**
11                                          **GRANTING IN PART MOTION TO**
                                            **DISMISS**
12       v.

13   APPPLE, INC., and DOES 1-50,

14                    Defendants.
                                     /
15   ———————————————————

16                    I.      INTRODUCTION

17       Plaintiff Joshua Banko, a former employee of defendant Apple, Inc., filed this action in June

18   2013.  He asserts five claims for relief, each stemming from the allegation that Apple wrongfully

19   terminated his employment.  Apple moves to dismiss the first, second, third, and fifth claims alleged

20   in Banko's first amended complaint (FAC).  For the following reasons, the motion is denied in part

21   and granted in part.  While Banko's second, fourth, and fifth claims can proceed, his first and third

22   claims are dismissed with prejudice.

23                    II.     BACKGROUND[1]

24       Banko began working as an engineer for Apple in 2000.  Over the following twelve years, he

25   earned numerous promotions, positive performance reviews, and discretionary bonuses for his work

26   on Apple products.  In January 2012, Banko began to notice irregularities in expense reports

27

28   _____
     [1] The factual background is based on the averments in the FAC, which must be taken as true for
     purposes of a motion to dismiss.

submitted by Employee Roe, a subordinate engineer.[2]  Banko directed Roe to remove the allegedly fraudulent charges from her reports.  Later that year, he noticed further irregularities in Roe's reported expenses.  Banko once more raised the issue with Roe, who again failed to remedy the errors.

Banko came to believe that Roe's actions violated both the law and Apple company policy. Operating under the belief that he was obligated to report his subordinates' wrongful behavior, Banko informed his supervisors that Roe had repeatedly filed inaccurate expense reports.  His supervisors instructed Banko not to report Roe formally to the company.  Banko, believing he was effectively being asked to cover up employee embezzlement, refused their request and lodged a formal complaint with Apple about Roe.  As a result, the company conducted an internal audit that revealed over forty instances of misrepresentations on Roe's expense reports.  Based on these results, Banko recommended that Roe be terminated.

Despite Banko's recommendation, Apple chose to retain Roe.  Banko's superiors informed him that he should cease pursuing Roe's termination, stating that she was a valuable employee. Banko, however, continued to believe he had a legal obligation to stop Roe.  He then informed Victor Cousins, a member of Apple's Human Resources department, of Roe's alleged wrongdoings. After investigating the matter, Cousins wrote a report recommending Roe's termination.  She was ultimately terminated on December 31, 2012.

In early January 2013, after returning from a company-wide holiday break, Banko received a significant discretionary bonus for his recent work on an important Apple project.  On January 9, 2013, Banko was called into a meeting with his supervisor and another human resources employee. He was asked to stay home for the rest of the week – a request Banko understood to indicate that his termination was imminent.  When he returned to work the following Monday, January 14, 2013, Banko was terminated.

Banko filed suit in June 2013, alleging five claims for relief: (1) violation of the Dodd-Frank Act, (2) wrongful termination in violation of public policy, (3) retaliation in violation of the Sarbanes-Oxley Act, the Dodd-Frank Act, and California Labor Code § 1102.5, (4) breach of

---

[2] Employee Roe's name has been changed to protect her privacy.

United States District Court
For the Northern District of California

employment contract, and (5) breach of the implied covenant of good faith and fair dealing.  Apple moved to dismiss the complaint in its entirety.  The motion was denied in part and granted in part with leave to amend.  (Docket No. 29).  The first claim was dismissed on the grounds that Banko does not qualify as a "whistleblower" under the Dodd-Frank Act because he did not report Roe's alleged embezzlement to the Securities and Exchange Commission.  Similarly, because Banko did not demonstrate that he can avail himself of federal whistleblower protection, the dismissal order further found that Banko's third claim for retaliation is not cognizable under Sarbanes-Oxley or Dodd-Frank.  That order permitted the third claim to proceed, however, under the theory that Apple violated the California Labor Code.  Banko's fifth claim for breach of the implied covenant of good faith and fair dealing was dismissed for failure to allege that Apple frustrated his ability to perform his contractual obligations.  The motion was denied with respect to the second and fourth claims. Banko proceeded to file the pending FAC.  Apple now moves to dismiss the FAC's first, second, third, and fifth claims for relief.

### III.    LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over the plaintiff's claims.  A challenge to subject matter jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  A complaint may also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Specifically, the factual allegations must suffice to state a claim that is "plausible on its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief.  *Id.* at 557, 570.  While the factual allegations of the complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiff,

1    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

2    do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly,* 550 U.S. at 555.

3    Accordingly, "a court discounts conclusory statements, which are not entitled to the presumption of

4    truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102,

5    1108 (9th Cir. 2012).

6                                  IV.    DISCUSSION

7         A.   Banko's Procedural Objections

8              Banko asserts that the bulk of Apple's motion is procedurally improper.  In particular, he

9    contends that because the court denied Apple's prior attempt to dismiss the second and third claims,

10   Rule 12(g) bars Apple from challenging those claims again.  That rule provides, in pertinent part:

11         If a party makes a motion under this rule but omits therefrom any defense or
           objection then available to the party which this rule permits to be raised by motion,
12         the party shall not thereafter make a motion based on the defense or objection so
           omitted, except a motion as provided in subdivision (h)(2) hereof on any of the
13         grounds there stated.

14   Fed. R. Civ. P. 12(g).  Rule 12(h)(2), in turn, allows a party to raise a defense of failure to state a

15   claim: "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c);

16   or (C) at trial."  Fed. R. Civ. P. 12(h)(2).

17             Apple's motion proceeds on two bases.  First, Apple contends the court lacks subject matter

18   jurisdiction over the third claim.  Federal courts have a continuing obligation to dismiss claims over

19   which they lack subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  Accordingly, it is entirely

20   proper for the court to address whether it has subject matter jurisdiction over Banko's third claim.

21   Second, Apple argues that several of Banko's claims must be dismissed for failure to state a claim

22   upon which relief can be granted.  Unlike motions under Rules 12(b)(2)-(5), a motion to dismiss

23   under Rule 12(b)(6) is not mandatorily barred when omitted from a prior Rule 12 motion.  *See* Fed.

24   R. Civ. P. 12(h)(1).  Although Rule 12(g) "technically prohibits successive motions to dismiss that

25   raise arguments that could have been made in a prior motion . . . courts faced with a successive

26   motion often exercise their discretion to consider the new arguments in the interests of judicial

27   economy."  *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, *2 n. 1 (N.D.

28

Cal. 2011).  In this case, it is reasonable for the court to consider more fully how its prior holding impacts the viability of Banko's remaining claims.

B.  First Claim: Violation of Dodd-Frank Act

The Dodd-Frank Act prohibits employers from taking adverse employment actions against "whistleblower" employees for making disclosures that are required or protected under the Sarbanes-Oxley Act.  15 U.S.C. § 78u-6(h)(1)(A).  Banko claims that Apple violated Dodd-Frank, contending his termination was motivated by his disclosures, which he asserts are protected by Sarbanes-Oxley.

This claim was dismissed in the court's prior order.  (Docket No. 29).  Banko, who has not amended this claim, intends to appeal the court's conclusion that he cannot avail himself of Dodd-Frank's whistleblower protections.  The first claim is therefore dismissed without leave to amend.

C.  Second Claim: Wrongful Termination in Violation of Public Policy

In California, an employer may be subject to tort liability if it terminates an employee in violation of a fundamental public policy.  *Steffens v. Regus Grp., PLC*, 485 F. App'x 187, 188 (9th Cir. 2012) (citing *Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1147 (1995)).  To sustain a claim for wrongful termination, the underlying public policy must be (1) supported by either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than merely serving the interests of individuals; (3) well-established at the time of plaintiff's discharge; and (4) "fundamental" and "substantial."  *Stevenson v. Super. Ct.*, 941 P.2d 1157, 1161 (Cal. 1997).

Claims for wrongful termination "typically arise when an employer retaliates against an employee for refusing to violate a statute, performing a statutory obligation, exercising a statutory right, or reporting an alleged violation of a statute of public importance."  *Gould*, 31 Cal. App. 4th at 1147.  When an employee claims he was terminated for reporting an alleged violation of a statute of public importance, he "is not required to report the violation to a government or law enforcement agency; internal reporting is sufficient."  *Steffens*, 485 F. App'x at 188 (citing *Gould*, 31 Cal. App. 4th at 1150).  Nor, for purposes of surviving a motion to dismiss, must the employee specify the particular statutory provision(s) supporting his claim.  *See Vargas v. BP Am., Inc.*, 2011 WL

United States District Court
For the Northern District of California

No. CV 13-02977 RS
ORDER

5

1601588 (E.D. Cal. 2011) (stating that while failure to identify a specific statutory or constitutional

policy would doom a wrongful termination claim in state court, federal notice pleading requires

less); *see also Stoval v. Basin St. Properties*, 2013 WL 6002758, *3 (N.D. Cal. 2013) (denying

employer's motion for summary judgment on wrongful termination claim where employee failed to

specify which statutory provision was implicated by his allegation).

The FAC alleges that Roe's embezzlement of a publicly-traded corporation's funds harmed

the general public by "impacting the millions of Apple shareholders[] and . . . creating tax

irregularities[.]"  FAC ¶ 64.   Banko contends that by ordering him to cease pursuing Roe's

termination, and for eventually firing him because he was unwilling to ignore Roe's embezzlement,

Apple punished him for reporting illegal activity in the workplace.  Banko maintains he was simply

seeking to enforce laws and policies that discourage employee financial misconduct, thereby

benefitting Apple and the general public alike.

Apple argues that Banko's wrongful termination claim fails for several reasons.  First,

seizing upon the prior order's conclusion that Banko is not a "whistleblower" for purposes of

Sarbanes-Oxley or Dodd-Frank, Apple argues that because Banko cannot prevail on that federal

claim for relief, neither can he predicate his wrongful termination claim on the theory that Apple

violated public policies set forth in either federal statute.  Several courts in this district have held,

however, that even where a plaintiff is unable to state a claim for relief under a particular statute, he

can nevertheless prevail on a claim that he was wrongfully terminated in violation of that statute's

policy.[3]

In *Weingand v. Harland Fin. Solutions, Inc.*, the plaintiff sued his former employer, alleging

he was fired for notifying supervisors that the company may have been violating California wage-

_____

[3] At oral argument, Apple purported not to dispute that a wrongful termination claim can be
premised on a public policy set forth in a statute under which the wrongful termination plaintiff
cannot recover.  Apple maintains, however, that the policies underlying federal and California
retaliation statutes do not protect employees who, like Banko, fail to report co-worker wrongdoing
to outside authorities.  This argument rings hollow at least with respect to the California Labor
Code, which expressly protects employees who "refus[e] to participate in an activity that would
result in a violation of state or federal statute, or a violation or noncompliance with a state or federal
rule or regulation."  Cal. Lab. Code § 1102.5(c).  An employee need not report to authorities in
order to seek protection under this subsection.

United States District Court

For the Northern District of California

1   and-hour laws.  2012 WL 3537035 (N.D. Cal. 2012).  The court dismissed plaintiff's retaliation

2   claim under California Labor Code § 1102.5, reasoning that he failed to meet the statutory

3   requirement of reporting the alleged wrongdoing to authorities.[4]  *Id.* at *4.  His wrongful

4   termination claim, on the other hand, survived the employer's motion to dismiss.  The employer

5   argued that because the plaintiff's actions were not protected under the retaliation statute, his claim

6   for wrongful termination could not be predicated upon the allegation that he was fired in violation of

7   California Labor Code policy.  The court disagreed, finding that "other cases with similar facts . . .

8   have looked to the public policy evinced by the *purpose* of various statutes as opposed to a

9   mechanical application of the statutory causes of action on an element-by-element basis."  *Id.* at *8.

10  (emphasis in original); *see also Gould*, 31 Cal. App. 4th at 1148 ("[I]f MSI discharged Gould in

11  retaliation for his reporting violations of the overtime wage law to MSI management, it violated a

12  fundamental public policy of the state.")).

13          Similarly, in *Stoval v. Bain Street Properties*, the plaintiff's wrongful termination claim was

14  cognizable based on the public policy reflected in § 1102.5 even though the plaintiff was likely

15  precluded from stating a claim under the statute.  2013 WL 6002758 (N.D. Cal. 2013).  In *Stoval*,

16  the plaintiff was employed as a facilities manager for a company that owned several apartment

17  buildings.  The plaintiff was terminated after informing his employer that a co-worker illegally

18  connected a cable television service to an apartment unit inside one of the employer's properties.

19  The court denied the employer's summary judgment motion on the plaintiff's wrongful termination

20  claim, reasoning that § 1102.5 "evinces a strong public interest in encouraging employee reports of

21  illegal activity in the workplace."  *Id.* *3 (quoting *Collier v. Super. Ct.*, 228 Cal. App. 3d 1117, 1123

22  (1991) (alterations and quotation marks omitted).  The court acknowledged that the plaintiff, who

23  did not specify he was terminated in violation of § 1102.5's policy, and who had not pled a claim

24  under the statute, would likely be precluded from protection under § 1102.5 due to his failure to

25

26

27  _____
    [4] Nor could the plaintiff in *Weingand* establish that he had refused to participate in illegal activity.
28  *See* § 1102.5(c).

United States District Court
For the Northern District of California

1   report the alleged wrongdoing to authorities.[5]  *Id.*  Nonetheless, the court held that because the

2   California Labor Code's retaliation statute reflects a strong public policy encouraging employees to

3   report illegal workplace activity, the plaintiff's claim could proceed on the basis that he was

4   terminated for reporting his co-worker's alleged cable theft.  *Id.*

5          *Weingand* and *Stoval* demonstrate that Banko's failure to state a claim under a particular

6   statute (*e.g.*, Dodd-Frank) does not preclude him from relying on that statute's policies for purposes

7   of his wrongful termination claim.  As an initial matter, the Dodd-Frank and California Labor Code

8   retaliation provisions both appear to reflect a strong public interest in encouraging employees to

9   report illegal activity in the workplace.  However, there is little case law exploring the extent to

10  which a wrongful termination tort can be premised on the policies set forth in Dodd-Frank.  For

11  purposes of resolving this motion, it is sufficient to conclude that Banko's claim can proceed on the

12  theory that he was terminated in violation of the "strong public interest," reflected in California

13  Labor Code § 1102.5, "in encouraging employee reports of illegal activity in the workplace."

14  *Collier*, 228 Cal. App. 3d at 1123; *see also Stoval*, 2013 WL 6002758 at *4.

15         Apple further contends that Banko's claim must fail because it cannot be tethered to any

16  "fundamental" public policy.  *See Remus v. Fios, Inc.*, 2012 WL 707477 at *10 (N.D. Cal. 2012).

17  According to Apple, it is well-settled that internal company complaints about employee

18  embezzlement do not implicate a fundamental public policy for purposes of the wrongful

19  termination tort.  It relies primarily on *American Computer Corp. v. Superior Court*, wherein the

20  California Court of Appeal held that the plaintiff's internal reporting of co-worker embezzlement

21  was insufficient to sustain a wrongful termination claim.  *See* 213 Cal. App. 3d 664 (1989).  The

22  court reasoned that "the most that can connect [plaintiff's] conduct with the public interest is the

23  argument that by reporting his suspicions to his superiors he took action which might eventually

24  prevent or uncover commission of a felony and thereby serve[] the laudable goal of preventing

25  crime."  *Id.* at 668.

26

27  ────────────────
   [5] The court in *Stoval* did not address § 1102.5(c), presumably because the plaintiff did not "refus[e]
28  to participate in an activity that would result in a violation of state or federal statute, or a violation or
   noncompliance with a state or federal rule or regulation."  Cal. Lab. Code § 1102.5(c).

United States District Court

For the Northern District of California

1    The court in *Stoval* rejected an argument similar to the one Apple makes here.  Examining

2    California cases decided since *American Computer*, the court concluded that "[u]nder California

3    law, it implicates a public policy to terminate an employee's employment as a result of his or her

4    reporting a criminal activity."  2013 WL 6002758, *4.  In *Collier*, decided two years after *American*

5    *Computer*, the California Court of Appeal recognized that there is a compelling and "fundamental

6    public interest in a workplace free from crime."  228 Cal. App. 3d at 1127.  Further, in *Haney v.*

7    *Aramark Unif. Servs., Inc.*, the California Court of Appeal found that where a policy underlying a

8    wrongful termination claim is reflected in a provision of the Penal Code, "the policy is deemed

9    fundamental or substantial, and inures to the benefit of the public rather than merely serving the

10   interests of individuals."  *Stoval* at *4 (summarizing *Haney*, 121 Cal. App. 4th 623 (2004)).  Banko

11   reported embezzlement, a crime enumerated in the state Penal Code.  *See* Cal. Penal Code § 503.

12   Apple is therefore incorrect to contend that, as a matter of law, Banko's internal complaint about

13   Roe's alleged criminal activity cannot implicate a fundamental public policy.  *See Stoval* at *3

14   (because cable theft is proscribed in the Penal Code, wrongful termination claim could proceed

15   where employee was allegedly fired for reporting co-worker's cable theft).

16   Against the backdrop of *Haney* and *Collier*, both of which acknowledge that reporting

17   criminal activity in the workplace implicates a public policy, Apple's other authorities are less

18   compelling.  Apple relies on *Rivera v. Nat'l R.R. Passenger Corp.*, wherein the Ninth Circuit held

19   that "reporting ongoing criminal conduct to an employer's management does not *necessarily*

20   implicate a public interest."  331 F.3d 1074, 1080 (9th Cir.) (emphasis added).  In *Rivera*, the

21   plaintiff alleged he was wrongfully terminated for reporting unsafe and illegal activities in the

22   workplace.  The district court granted the defendant's motion for summary judgment, and the Ninth

23   Circuit affirmed, reasoning that there was insufficient evidence that the plaintiff actually reported

24   the criminal activity to his employer.  Then, in apparent dicta, the court stated that "[i]f Rivera had

25   reported the illegal activities of his co-workers, Rivera may have achieved the 'laudable goal' of

26   preventing crime, but this is not enough to fit within the narrow confines of wrongful termination in

27   violation of public policy."  *Id.* at 1080 (quoting *American Computer*, 213 Cal. App. 3d at 668).

28   The court's conclusion apparently was premised exclusively on *American Computer*, a case the

United States District Court

For the Northern District of California

1  California Court of Appeal has since found to be inconsistent with subsequent California cases.  *See*

2  *Collier*, 228 Cal. App. 3d at 1125.  Moreover, *Rivera* was decided before *Haney*, in which the Court

3  of Appeal held that a wrongful discharge claim implicates fundamental public policy when the

4  plaintiff alleges he was fired for reporting and refusing to engage in fraudulent billing practices.  *See*

5  121 Cal. App. 4th at 643.[6]  In sum, because Banko alleges sufficient facts to support a plausible

6  claim that he was terminated for reporting co-worker embezzlement in the workplace, Apple's

7  motion is denied with respect to his second claim.

8          D.  Third Claim: Retaliation

9          Banko alleges that Apple retaliated against him in violation of Dodd-Frank, Sarbanes-Oxley,

10  and California Labor Code § 1102.5.  As discussed in the court's prior order, Banko's third claim

11  cannot proceed under either federal law. (Docket No. 29).  Apple contends state law similarly

12  provides no remedy.  Like Dodd-Frank and Sarbanes-Oxley, the state statute seeks to protect

13  whistleblowers by prohibiting employers from retaliating against employees for engaging in certain

14  categories of protected activity.  Cal. Lab. Code § 1102.5.  While § 1102.5(a) and (b) provide

15  protections for employees who report wrongdoing to government authorities, (c) prohibits

16  employers from retaliating against employees "for refusing to participate in an activity that would

17  result in a violation of state or federal statute, or a violation or noncompliance with a state or federal

18  rule or regulation."  *Id.* § 1102.5(c).

19          Apple contends that the court lacks subject matter jurisdiction over this claim, arguing that

20  Banko was required to exhaust his administrative remedies with the California Labor Commissioner

21  before coming to federal court.  Although § 1102.5 is silent on administrative exhaustion

22  requirements, § 98.7 sets out the complaint process for an employee alleging a violation of the

23  California Labor Code.  *See Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1152 (N.D. Cal.

24  2013).  That statute provides, in pertinent part: "Any person who believes that he or she has been

25  discharged or otherwise discriminated against in violation of any law under the jurisdiction of the

26  ───────────────
[6] Apple also invokes *Van Hulten v. Us. Sec. Assocs.*, 2010 U.S. Dist. LEXIS 57979 (E.D. Cal.

27  2010), *Lewis v. Electronic Data Systems Corp.*, 2004 Cal. App. Unpub. LEXIS 8987 (2004), and
*Giknyo v. Alticor, Inc.*, 2010 Cal. App. Unpub. LEXIS 3303 (2010).  All three cases rely primarily

28  on *American Computer* for the notion that reporting co-worker wrongdoing does not implicate a
fundamental public policy.

1   Labor Commissioner *may* file a complaint with the division within six months after the occurrence

2   of the violation." Cal. Lab. Code § 98.7(a) (emphasis added).  Noting the permissive language of

3   the statute, some courts in this district have held that § 98.7(a) does not require a plaintiff to exhaust

4   administrative remedies before bringing a § 1102.5 claim in federal court.  *See, e.g., Dowell*, 928 F.

5   Supp. 2d at 1153; *Turner v. City & County of San Francisco*, 892 F. Supp. 2d 1188, 1201–02 (N.D.

6   Cal. 2012).  The majority of courts addressing the issue, however, have held that a plaintiff must file

7   a complaint with the Labor Commissioner before bringing a § 1102.5 claim in federal court.  *See,*

8   *e.g.*, *Miller v. Sw. Airlines, Co.*, 923 F. Supp. 2d 1206, 1210 (N.D. Cal. 2013); *Wright v. Kaiser*

9   *Found. Hospitals*, 2012 WL 4097738 (N.D. Cal. 2012); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d

10  1017, 1023 (N.D. Cal. 2012); *Morrow v. City of Oakland*, 2012 WL 2133755 (N.D. Cal. 2012);

11  *Reynolds v. City & Cnty. of San Francisco*, 2011 WL 4808423 (N.D. Cal. 2011).  These cases rely

12  on *Campbell v. Regents of University of California*, in which the California Supreme Court held that

13  even though § 1102.5 is silent on the issue, "the past 60 years of California law on administrative

14  remedies" nevertheless compels the conclusion that a plaintiff bringing a claim under the statute is

15  subject to the exhaustion requirement.  106 P.3d 976, 988 (2005).

16          Banko pleads no facts indicating that he filed an administrative complaint with the Labor

17  Commissioner.  Accordingly, he fails to demonstrate that the court has subject matter jurisdiction

18  over his § 1102.5 claim.  At oral argument, counsel for Banko acknowledged that the administrative

19  exhaustion requirements have not been satisfied.  Accordingly, because amendment apparently

20  would be futile, the third claim for retaliation is dismissed with prejudice.  *See AmerisourceBergen*

21  *Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

22          E.   Fifth Claim: Breach of Implied Covenant of Good Faith and Fair Dealing

23          Every contract contains an implied-in-law covenant of good faith and fair dealing that

24  "neither party will do anything which will injure the right of the other to receive the benefits of the

25  agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (2000) (quotations and

26  citations omitted).  The implied covenant "imposes upon each party the obligation to do everything

27  that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac.*

28  *Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 398 (Ct. App. 1990) (citations and quotations omitted).  Thus,

United States District Court
For the Northern District of California

it "protects only the parties' right to receive the benefit of their agreement." *Foley v. Interactive Data Corp.*, 765 P.2d 373, 400 n. 39 (1988).  "A claim for breach of the implied covenant of good faith and fair dealing is not duplicative of a breach of contract claim when a plaintiff alleges that the defendant acted in bad faith to frustrate the benefits of the alleged contract." *Davis v. Capitol Records, LLC*, 2013 WL 1701746 (N.D. Cal. 2013).

Unlike his initial complaint, Banko's amended complaint plausibly suggests he is entitled to relief for this claim.  *See Twombly*, 550 U.S. at 570.  Banko reported Roe's activities to his supervisors due to his belief that he was obligated by law and company policy to do so.  Banko avers that when he was told to cease pursuing Roe's termination, Apple presented him with an untenable dilemma: either disobey his superiors' instructions or adopt a course of conduct Banko believed would violate Apply policy and the law.  According to Banko, his employer's actions made it impossible for him to do his job pursuant to his purported employment contract, thereby breaching Apple's obligation to abide by the implied covenant of good faith and fair dealing.[7]  When viewing these allegations in a light most favorable to Banko, the FAC raises his right to relief "above the speculative level" for breach of the implied covenant of good faith and fair dealing.  *Id.* at 555.  Accordingly, Apple's motion is denied with respect to Banko's fifth claim.

V.    CONCLUSION

For the foregoing reasons, Apple's motion is GRANTED with respect to Banko's first and third claims for relief.  It is DENIED with respect to his second and fifth claims.

[7] The FAC further avers that Apple breached the implied covenant by terminating Banko in order to avoid paying him a separate bonus he allegedly earned as a result of his work on an important Apple invention.  Apple rejects this allegation, arguing that Banko's implied covenant claim is duplicative of his breach of contract claim.  *See Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) ("A breach of the implied covenant of good faith and fair dealing involves something more than breach of the contractual duty itself.") (citing *Careau & Co. v. Security Pacific Business Credit, Inc.*, 272 Cal. Rptr. 387, 398 (Ct. App. 1990)).  Banko avers the existence of an implied contract whereby Apple could terminate him only for cause.  Taking Banko's allegations as true, Apple had a duty to execute the contract's purposes in good faith.  *See Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911 (N.D. Cal. 2010).  If Apple fired Banko in bad faith to deprive him of the bonus he would have otherwise received absent his sudden and unexpected termination, it may have breached the implied covenant of good faith and fair dealing.  Because Banko's other averments are sufficient to survive Apple's 12(b)(6) motion on this claim, the invention bonus allegations are, if anything, an additional grounds warranting the denial of Apple's motion as to this claim.

1

2        IT IS SO ORDERED.

3

4   Dated:  12/16/13

5

6                                                RICHARD SEEBORG
                                                 UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

No. CV 13-02977 RS
ORDER