**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:23-CV-04597-EMC

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**DECLARATION OF ASHLEY GJOVIK**

**IN SUPPORT OF PLAINTIFF'S**

**MOTION TO STRIKE**

**AN IMPROPER AMICUS DECLARATION**

Dept: Courtroom 5, 17th Floor (Virtual)

Date: May 16, 2024

Time: 1:30 p.m.

## I.  DECLARATION OF ASHLEY GJOVIK IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE AN IMPROPER AMICUS BRIEF

**Pursuant to 28 U.S.C.§ 1746, I, Ashley M. Gjovik, hereby declare as follows:**

1. My name is Ashley Marie Gjovik. I am the self-represented Plaintiff in this above captioned matter. I make this Declaration based upon my personal knowledge and in support of Plaintiff's Motion to Strike. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2. On January 31 2022, the non-party declarant who filed the Amicus Declaration at Docket No. 62 requested a restraining order against me in the state of Washington. Attached as **EXHIBIT A** is a true and correct copy of the document.

3. On February 1 2022, a Judge in a Court of Limited Jurisdiction denied the non-party declarant's ex part request for a temporary restraining order against me. Attached as **EXHIBIT B** is a true and correct copy of the document.

4. On February 14 2022, I filed my Reply brief in the lawsuit. Attached as **EXHIBIT C** is a true and correct copy of the document

5. On February 25 2022, I filed a copy of a second witness statement in the lawsuit. Attached as **EXHIBIT D** is a true and correct copy of the document.

6. On February 28 2022, I filed a copy of a witness statement in the lawsuit. Attached as **EXHIBIT D** is a true and correct copy of the document.

7. On March 1 2022, the non-party declarant testified during the hearing. Attached as **EXHIBIT E** is a true and correct copy of excerpts from the transcript.

8. On March 4 2022 and April 6 2022, law firms requested copies of the court records of non-party declarant's lawsuit against me. One of the law firms is the same firm Apple hired to defend it from my NLRB charges starting back in August of 2021. Attached as **EXHIBIT F** is a true and correct copy of the document

9.      On June 31 2022, the US District Court of the Western District of Washington dismissed a Constitutional challenge lawsuit I had filed over the statute underlying non-party's lawsuit against me. Attached as **EXHIBIT G** and **EXHIBIT H** are a true and correct copy of the documents.

10.     On September 26 2023 a state Superior Court Judge granted my appeal and reversed the decision against me, finding it to be without merit. It was transmitted to the District Court on November 17 2022. Attached as **EXHIBIT I** is a true and correct copy of the document.

11.     On December 2 2022, I filed a notice of intent to file motions if the case was remanded. Attached as **EXHIBIT J** is a true and correct copy of the document

12.     On December 12 2022, a state District Court Judge agreed with the appellate decision, dismissed the case against me, and vacated the order. Attached as **EXHIBIT K** is a true and correct copy of the document.

13.     On December 7 2022, Plaintiff's successful appeal was discussed in three pages of an amicus curiae brief for the SCOTUS Petition for Writ of Certiorari for *Barton v State of Texas*.[1] Attached as **EXHIBIT L** is a true and correct copy of pages 1-2 and 10-12 of the document.

14.     I have reviewed each document and confirmed it is the true and correct copy of each document mentioned herewithin this Declaration and the Motion to Strike. No documents were altered or manipulated other than minor redactions.

---

[1] *Barton v State of Texas*, Amicus Curiae Brief of Electronic Frontier Foundation in Support of Petitioners, https://www.supremecourt.gov/DocketPDF/22/22-430/249364/20221207141747388_22-430%20Amicus%20Electronic%20Frontier%20Foundation.pdf

DECLARATION OF ASHLEY GJOVIK IN SUPPORT OF PLAINTIFF'S          APRIL 24 2024
MOTION TO STRIKE 3:23-CV-04597-EMC

15.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on APRIL 24 2024.

**Executed on**: APRIL 24 2024

Signature:

_____

**s/ Ashley M. Gjovik**

**Pro Se Plaintiff**

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

# EXHIBIT A

**STATE OF WASHINGTON**
**King County District Court**
**East Division, Bellevue Courthouse**

No. 22CIV01704 KCX

Cher Swan Scarlett
_____
Petitioner,

vs.

Ashley Marie Gjovik
_____
Respondent.

**Petition for an Order for Protection -**
☒ **Harassment** (PTORAH) **and/or**
☐ **Stalking** (PTORSTK)

➤ **This is a Petition for an Order for Protection against Harassment and/or Stalking as checked in the caption**.

I believe:

☒ I am a victim of stalking.
☐ _____ (name) is the victim of stalking and he/she is a minor or vulnerable adult.

The respondent has been

- stalking the victim either in person or cyber stalking, **and**
- repeatedly contacting the victim or attempting to contact or monitor the victim for no lawful purpose and his/her actions caused the victim to feel intimidated, frightened, or threatened.

☒ I am a victim of unlawful harassment.
☐ _____ (name) is a victim of unlawful harassment and he/she is a minor.

The respondent's actions toward the victim have seriously alarmed, annoyed, or harassed the victim, or are detrimental to the victim and serve no legitimate or lawful purpose. The respondent's actions have caused substantial emotional distress to the victim or caused me to fear for the well-being of my child.

How do the victim and respondent know each other? Both worked at Apple, Inc

I have given a detailed explanation below.

1.  **Who is the petitioner?**

    My name is (please print) Cher Scarlett _____. I am the petitioner.

    ☒ I am 18 or older and I am petitioning on my own behalf.
    ☐ I am 16 or 17 and I am petitioning on my own behalf.
    ☒ I am the parent or guardian of child/ren under age 18 and I am petitioning on their behalf:

    | Children's Name/s (First, Middle Initial, Last) | Age |
    |---|---|
    | ▧ | ▧ |
    | | |
    | | |

    ☐ I am not the parent or guardian, but the child/ren live/s with me and I am petitioning on their behalf and the respondent is not a parent.

    | Children's Name/s (First, Middle Initial, Last) | Age |
    |---|---|
    | | |
    | | |
    | | |
    | | |

    ☐ I am filing this petition on behalf of petitioner, (name) _____, a vulnerable adult as defined in RCW 74.34.020, who is a victim of stalking. I am an interested person as defined in RCW 74.34.020(10). My relationship to this petitioner is _____.

2.  **Is the respondent 18 years of age or older?**

    ☒ Yes ☐ No

    *(If no, use the Petition for Order for Protection Harassment/Stalking Respondent Under Age 18, instead of this petition.)*

3.  **Where do the parties live?**

    Petitioner lives in King _____ County.

    Did the petitioner leave their residence because of stalking conduct and that is the county of their new residence?

    ☐ Yes ☒ No

    Children named above live in King _____ County.

Respondent lives in Santa Clara (California) _____ County.

4. **Where did the Conduct take place?**

The conduct took place in King (online) _____ County.

## Statement describing the victim/s need for protection from the respondent

- Write clearly. If you need more space below, attach additional page/s. Do not write on the back.

5. **Describe what the Respondent did or said that you think is harassment or stalking.**
   - You must describe what the respondent actually said.
   - You must describe what the respondent actually did.

**The respondent has committed acts of harassment or stalking as follows:**

**A.** Describe the most recent incident of harassment or stalking.

Date and time (on or around): 1/31/2022 _____

Location: Twitter _____

What did the respondent do or say that you believe to be harassing or stalking behavior?

At the beginning of December 2021, Ashley Marie Gjovik began engaging in targeted harassment against me by posting defamatory content and other false statements about me on her Twitter account. She has said that every anonymous account criticizing her is me, none of them are me. She has stated every single tweet that doesn't name her that talks about a generalization she thinks is about her is me harassing her. I'm not. She has said that because I am cited in Apple's defense against her, she is not going to stop. She thinks I have somehow manipulated members of the press from speaking to her, or writing about her in the way she wants, after harassing and defaming reporters at WaPo, NYT, npr, NBC, and Business Insider. She has quoted me as saying things I've not said to try to defame me and get her followers to harass me. I blocked her many months ago. She blocked me as well.

At the end of the month, this escalated into cyberstalking me and my family members, and publishing personal and private information about myself and my family members on her Twitter account with the malicious intention of stoking her followers into harassing me as well. As a result, a number of her followers filed false CPS reports against me, and began to harass my family.

Out of desperation, I connected with a mutual friend, Melissa McEwen, to try to get her to stop. She told this mutual friend she was doing it because I am cited in Apple, Inc's defense against her in one of her NLRB and DOL cases against the company. She told the mutual friend she would only stop engaging in the behavior if I promoted her Twitter account (~8,000 followers) on my own Twitter account (~55,000), and promoted her GoFundMe (goal of $100,000 for misc purposes). I refused to oblige, and sent a report to the FBI, suspecting that this was extortion

How did the respondent make these statements? ☐ in person ☐ mail/written notes
☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter)
☐ other (describe): _____.

**B.** Describe other incidents of harassment or stalking. For each incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.

I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.

On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.

https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1

https://twitter.com/ashleygjovik/with_replies (there's a lot more here)

https://twitter.com/ashleygjovik/status/1479956961705795585

https://twitter.com/ashleygjovik/status/1480295321284472835

https://twitter.com/ashleygjovik/status/1480326596376477696

https://twitter.com/ashleygjovik/status/1481027837163311104

**6.** How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

I am looking for another place to move to immediately for our safety. I am scared of what she will do if no one stops her. I am afraid of what will happen if her charges are not meritous. I am afraid of this woman and her followers.

7. Has the respondent used, displayed, or threatened to use a firearm or other dangerous weapon in a felony? Please describe:

> No

8. Is the respondent ineligible to possess a firearm under the provisions of RCW 9.41.040? Please describe:

> No

9. Does possession of a firearm or other dangerous weapon by the respondent present a serious and imminent threat to public health or safety, or to the health or safety of a victim? Please describe:

> Unsure, behavior leads me to believe she is unwell

10. Do you have any evidence of the harassment or stalking conduct other than testimony?
   - ☐ No
   - ☒ Yes. I have attached the following evidence:
     - ☐ Copy of mail or written notes
     - ☐ Copy of text messages
     - ☐ Copy of email messages
     - ☒ Copy of social media messages
     - ☒ Police report
     - ☐ Declaration or Affidavit from the following witness: _____
     - ☐ Other (describe): _____

11. Has/have the **victim/s or the respondent** ever requested or obtained protection from the other person in a restraining order, civil protection order, or criminal no-contact order?
   If yes, list the type of order, the name of the court and the approximate date, and whether the request was granted:

> No

**12.** Is there any other litigation between the victim/s and the respondent? This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes. If yes, provide case number/s if known, type of case, and name of court:

> NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

## ➤ Requests

**13. I ask the Court for an order approving the following requests for protection:**

I Request an **Order for Protection** following a hearing that will:

☒ **No-Contact**: Restrain the respondent from making any attempts or having any contact, including nonphysical contact, with the person/s to be protected, directly, indirectly, or through third parties regardless of whether those third parties know of the order, except for mailing of court documents.

☒ **Surveillance**: Prohibit or restrain the respondent from making any attempt to keep or from keeping the person/s to be protected under surveillance, including electronic surveillance.

☐ **Exclude from places**: Exclude the respondent from the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected.

☐ **Stay Away**: Prohibit or restrain the respondent from entering or being within, or from knowingly coming within, or knowingly remaining within _____ (distance) of the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected. ☐ other locations: _____.

☐ **Other**:
Stop harassment on Twitter and other social media platforms

☐ **Evaluation**: Order the respondent to have a ☐ mental health ☐ chemical dependency evaluation.
☐ other: _____.

☒ **Pay Fees and Costs:** Require the respondent to pay fees and costs of this action, which may include administrative court costs and service fees and petitioner's costs including attorneys' fees.

☐ **Surrender Firearms**: Require the respondent to immediately surrender all firearms, other dangerous weapons, and any concealed pistol licenses, and prohibit the respondent from accessing, obtaining or possessing firearms, or other dangerous weapons, or concealed pistol licenses.

☒ **Duration**: Remain effective longer than one year because respondent is likely to resume acts of unlawful harassment or stalking conduct against the persons to be protected if the order expires in a year.

**Emergency temporary protection (up to 14 days) until the court hearing**:

☒ An emergency exists as described below. I request that a **Temporary Protection Order** granting the relief I requested above for a no-contact, surveillance, exclude from places, or stay away order be issued immediately, without prior notice to the respondent, be effective until the hearing.

☐ I also request a temporary surrender of all firearms, other dangerous weapons, and concealed pistol licenses without notice to the other party because irreparable injury could result if an order is not issued until the hearing.

What irreparable harm would result if an order is not issued immediately without prior notice to the respondent?

I have already struggled to find employment because of her harassment, along with harassment from her followers that could lead to misuse of 911 dispatch resulting in irreparable harm to myself or to my child.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated: 1/31/2022 _____ at Kirkland _____ Washington.

_____
Petitioner
Cher Scarlett
Print or type name

I agree to receive legal documents at this address:

~~████████████~~ _____.

☐ This address is not my home address because my family, household, or I would be at risk of abuse by respondent if I disclosed my home address.

# EXHIBIT B

Certification - State of Washington/County of King
The undersigned, duly authorized clerk of the King County
District Court, Washington, hereby certifies that the document
on which this stamp is imprinted is a true and correct copy of
the original filed in this court.
Signed this _17_ day of _February_ _2022_

_____
Court Clerk

**State of Washington**
**King County District Court**

**EAST DIVISION, REDMOND COURTHOUSE**

No. 22CIV01704KCX

**Order Re Petition/Motion Harassment**

Cher Swan Scarlett

Petitioner (Protected Person)
vs.

(Optional Use) (ORDMTP)
☐ Clerk's Action Required
Next Hearing Date/Time:

February 15, 2022    At: 1:30 PM

At:

Ashley Marie Gjovik

Respondent (Restrained Person)

Redmond Courtroom 2
8601 160th Avenue NE
Redmond, WA 98052

---

***This Matter*** is before the court upon the request of (name) petitioner above _____, for a:

☒ Temporary Order          ☐ Full Order          ☐ Renewal Order
☐ Modification Order        ☐ Termination Order

and the ***Court Finding:***

☐   Petitioner ☒ Respondent    did not appear.
☐   Petitioner **requested dismissal** of petition.
☐   This **order materially changes** an existing order. A hearing after notice is necessary.
☐   No notice of this request has been made or attempted to the opposing party.
☐   The petitioner has failed to demonstrate that there is sufficient basis to enter a temporary order without notice to the opposing party.
☐   The harassment protection order **petition does not list specific incidents and approximate dates** of harassment.
☒   The **reasons for denial** of the order are:

> Respondent lives in California. There is no emergency/irreparable harm if emergency order not issued. Many of the complained-of actions serve a lawful purpose (filing with NLRB) and involve free speech. However, other allegations may have merit, thus this Court will set a full-order hearing.

☒   **A preponderance of the evidence has not established** that there has been harassment.
☐   Other:

*Renewal:*

☐ The respondent proved by a preponderance of the evidence that the respondent will not resume harassment of the petitioner when the protection order expires.

☐ Other:

*Modify or Terminate:*

☐ The court finds that the **Respondent has previously filed a motion** to modify or terminate during the current 12-month period following entry of the order and is not eligible for the relief requested.

☐ Other:

**The court orders that:**

☐ The request to waive the filing fee is denied.

☐ The request for a temporary order is denied and the case is dismissed.

☐ The request for a full order is denied, and the petition is dismissed. Any previously entered temporary order expires at _____ today.

☒ The request for a temporary order is denied and the clerk is directed to set a hearing on the petition.

☐ The request before the court is denied, provided that it may be renewed after notice has been provided to the opposing party according to the Civil Rules.

☐ The request to modify, terminate, or renew the order dated _____ is denied.

☐ The request for a temporary/final Order to Surrender Weapons is denied.

☐ If any firearms or dangerous weapons have been surrendered under this cause number, they shall be released to the respondent, absent some other legal reason that may exist prohibiting the respondent from possessing them.

☒ The parties are directed to appear for a hearing as shown on page one.

The requesting party shall make arrangements for service of the petition/motion and this order on (name) Respondent _____ by law enforcement, professional process server, a person who is 18 or older, competent to be a witness, and not a party to the case. A Return of Service shall be filed with the clerk at or before the hearing.

*Failure to Appear at the Hearing May Result in the Court Granting All of the Relief Requested in the Petition or Motion.*

This order is dated and signed in open court.

Date: February 1, 2022 _____ Time 1:47 PM _____

Judge    Lisa N. O'Toole

I acknowledge receipt of a copy of this order:

➢ _____
Signature of Respondent/Lawyer  WSBA No.

➢ _____
Signature of Petitioner/Lawyer  WSBA No.

Print Name _____  Date _____

Oher Scarlett          2/1/2022
Print Name                              Date

Cher Swan Scarlett,

                        Plaintiff(s),

        v.

Ashley Marie Gjovik,

                        Respondent(s).

No: <u>22CIV01704KCX</u>

**MINUTE RECORD**

Proceeding Date and Time: February 1, 2022 1:05 PM
Proceeding Type: Petition Hearing - Temporary Anti-Harassment Order
Proceeding Location: Redmond Courtroom 2
Judicial Officer: Lisa N. O'Toole
Court Clerk: Cory Dideum

APPEARANCES:
For Plaintiff(s): Cher Swan Scarlett,


For Defendant(s): Ashley Marie Gjovik,


NATURE OF PROCEEDING:

Update Scheduled Event - 02/01/2022 1:05 PM Petition Hearing - Temporary Anti-Harassment
Order / 411112 in Redmond Courtroom 2
Redmond Courtroom 2 02/01/2022 Hearing Start Time: 01:28 PM - Clerk CD
Judge Lisa N. O'Toole presiding
Petitioner Cher Swan Scarlett Present ProSe
Petitioner(s) Sworn
Temporary Order Denied
Set for Full Order Hearing

# EXHIBIT C

**State of Washington | King County District Court**
East Division, Redmond Courthouse
ORDER RE: PETITION/MOTION HARASSMENT | NO. 22CIV01704KCX

## *Cher Scarlett (Petitioner) v Ashley Gjovik (Respondent)*

Before the Honorable Judge Lisa O'Toole

# **Respondent's Reply**

### Table of Contents

SCARLETT'S ALLEGATIONS ........................................................................................................2

REPLY: GJOVIK'S ACTIONS ARE NOT HARASSMENT ......................................................7
GJOVIK DID NOT HAVE A WILLFUL COURSE OF CONDUCT DIRECTED AT SCARLETT .........................7
GJOVIK'S CONDUCT WAS LEGITIMATE AND LAWFUL ......................................................................7

REPLY: SCARLETT'S ACTIONS ARE HARASSMENT ........................................................9
SCARLETT HAS A WILLFUL COURSE OF CONDUCT DIRECTED AT GJOVIK .......................................9
SCARLETT'S CONDUCT WAS ILLEGITIMATE AND UNLAWFUL ........................................................12

APPENDIX I: SUMMARY ..........................................................................................................14
PETITION FOR AN ORDER FOR PROTECTION – HARASSMENT (PTORAH) .....................................14

APPENDIX II: ABUSIVE LITIGATION ....................................................................................15

APPENDIX III: SELECT SCARLETT QUOTES (ANIMUS) ...................................................16
CHER SCARLETT (APPLE LEGAL & GLOBAL SECURITY) .............................................................16
    Response to Gjovik's NLRB Filing ...............................................................................................16
    Response to Gjovik's Retaliatory Termination .............................................................................16
    Response to Gjovik's EEOC/DFEH Charge & "Right to Sue" ....................................................17
    Admission to Blacklisting ............................................................................................................17
    Response to Gjovik Reporting Unlawful Conduct to the Gov .....................................................17
    Response to Gjovik's Retaliatory Suspension ..............................................................................18
    Response to Gjovik's Fed Witness Intimidation / Threats / Retaliation Complaints ...................18
    Response to Gjovik's SEC Whistleblower Tip .............................................................................19
    Retaliatory Litigation .................................................................................................................19

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# Scarlett's Allegations

Scarlett's petition for this order baseless & abusively alleges Gjovik has stalked her and subjected her to unlawful harassment. Scarlett alleges Gjovik's harassment and stalking began in December of 2021 with the most recent incident on January 31 2022. Meanwhile, Gjovik has been complaining of harassment and defamation by Scarlett against her since September of 2021 and even warned Scarlett in December 2021 that Gjovik would request a restraining order against Scarlett if Scarlett did not cease & desist with the abuse.

Scarlett now alleges Gjovik made defamatory and false statements about her, but fails to provide a single example of a prima facie allegation in her petition. Scarlett alleges Gjovik published private, personal, & medical information about her but fails to provide a single example that was not Scarlett's own public Twitter post or blog posts, or otherwise generally available public information. Scarlett alleges Gjovik was trying to "extort" her but also fails to make a prima facie showing, and also cites examples of promoting Twitter and a GoFundMe, completely omitting the GoFundMe is for Gjovik's' legal expenses in her retaliation cases against Apple, Inc & that the suggestion that Scarlett promote Gjovik's GoFundMe was made optionally, by a friend of Gjovik not Gjovik herself, and it was to remedy the damage done by Scarlett previously posting that Gjovik was a "predator" for asking for GoFundMe donations for legal costs in October 2021.

The four Twitter posts Scarlett noted in her petition were 1) Gjovik describing Scarlett's mother as a "goddess," 2) Gjovik sharing direct quotes from several public social media posts and a Washington Post article (note the reply to the post she cited was Gjovik saying "*Scarlett's apparently DMing my friends & allies to lie about me again*", 3) Gjovik directly addressing Apple Inc and requesting Apple Inc sent Scarlett and a few named others a document retention notice and also a cease & desist for their harassment against me, 4) Gjovik posting that she's sharing public information about Scarlett where Scarlett appears to have made untrue statements, because Scarlett "*harassed, bulled, & defamed Gjovik for months.*"

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

Scarlett alleged in her petition that Gjovik has "malicious intentions & purposes" in Gjovik's conduct towards Scarlett, however Scarlett does not show how Scarlett's conduct is in any way directed towards Scarlett. Again, in fact, Gjovik has been protesting and pleading for cessation from Scarlett's harassing of Gjovik for nearly six months. Scarlett alleged Gjovik "stoked her followers" into taking action against Scarlett but failed to provide any quotes or evidence of statements made by Gjovik. If Scarlett is inferring an allegation of Brennan's "imminent lawless action" or a charge of conspiracy, Scarlett fails to provide any evidence to support that allegation. Further, Scarlett posted on Twitter on Feb 12 2022, in one of her many recent posts about this hearing, that she "does not know Gjovik's motives."[1]

The two witness Scarlett cited are actually witnesses with conversations in favor of Gjovik and against Scarlett. Melissa McEwen was contacted by Scarlett on January 8 on LinkedIn saying Gjovik was lying about Scarlett being a defense witness for Apple but then confirming Scarlett was a defense witness for Apple. McEwen messaged Gjovik, "do you think there is any way I can get her to stop bugging you?" Gjovik replied "many have tried, all have failed, you're welcome to though." MeEwen said: "Scarlett said she will agree not to talk about you if you do the same." Gjovik asked if Scarlett would put it in writing also if Scarlett would correct all the "misinformation Scarlett shared with the press and government" and noted Scarlett "told a lot people Gjovik is a liar and told them not to talk to her or write about her."

The negotiation continued for some time on Jan 8 and 9, with McEwen confirming to Gjovik that nothing Gjovik posted was private information, and Gjovik wrote to McEwen that Scarlett "bullied her and defamed her to the point she almost gave up on her fight against at Apple" and that Scarlett "caused Gjovik so much depression, anxiety, panic, and pain." Gjovik said Scarlett "hurt her relationships, hurt her career, hurt her legal cases." Gjovik said she was quiet about it for months but Scarlett "Wouldn't stop. Multiple people told her to stop, she wouldn't." Gjovik said Scarlett "tried to destroy her."

---

[1] Twitter, https://twitter.com/cherthedev/status/1492510321864437761;
https://web.archive.org/web/20220213031055/https://twitter.com/cherthedev/status/1492510321864437761

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

McEwen also warned Gjovik "I am worried Cher will escalate further. She's really melting down and she has the money from GoFundMe so I am worried she will harass you even more." McEwen also told Gjovik on Jan 9 2022 that McEwen "told Cher to just leave all this alone and move on."

The conversation with Janneke Parish was initiated with Gjovik by Parish on December 29 2021 following a post Gjovik made to Twitter about Scarlett texting one of Gjovik's friends claiming to be a defense witness for Apple & coercing Gjovik's' friend not to support Gjovik. Gjovik questioned if Scarlett was testifying against other Apple whistleblowers. Janneke reached out saying *"I wanted to reach about your tweet, the one about employee information submitted via AppleToo. I'm the one who maintains the database of stories we used for the Medium posts, and the stories that still come in. If there's a concern about confidentiality with them, please let me know."* Gjovik said, *"i worry mostly about all the comm [Scarlett is having with Apple victims] outside the AppleToo forms."* Parish said: *"I can understand that."* Gjovik said, *"I would love to see you just take over AppleToo and announce Cher is fully retired so folks know she's not seeing any of that stuff."* Parish replied: *"My preference is that the group and movement be led by current employees, since that is who it is ultimately for. I am definitely happy to advise, but my energy has been in building the infrastructure so others can lead."* Gjovik responded: *"I think that's a fantastic idea."* Parish replied: *"I can talk to her about it. ☺"* Gjovik said: "Thank you!" Parish replied "Absolutely! And please, never hesitate to reach out with concerns. :)" It's entirely unclear what part of this conversation Scarlett is alleging is "extortion."

In addition to the evidence submitted with this Reply, Scarlett's harassment of Gjovik is further documented in her abusive, retaliatory request for this order, and in the additional harassment she mentions of complaining about Gjovik to Gjovik's law school and filing a complaint about Gjovik to the FBI, which Scarlett herself admitted was meritless. Please also reference in the attached evidence, Scarlett's numerous public Twitter posts about this request and hearing between February 5 and Feb 13 2022, including Scarlett's threats towards Gjovik related to this hearing and the "testimony" Scarlett plans to provide televised testimony to the Washington Legislature this week about Gjovik's alleged

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

**Page 4 of 24**

"harassment." [2] [3] [4] Scarlett posted about this hearing that "the judge found merit in what [she] presented" for this petition and Tweeted allegations against Gjovik for over a week. Despite the prolonged Twitter frenzy, Scarlett failed to serve Gjovik with notice of the hearing until February 14 2022, only 24hrs before the hearing.

The crux of this case comes down to the remaining allegations Scarlett made against Gjovik in this petition. Gjovik began warning Apple in late December 2021 to cease their intimidation of her as a federal witness. Gjovik filed the first charge against Apple about it on January 10 2022, which under information and belief, Gjovik named Scarlett's harassment against Gjovik as being conducted an agent of Apple in Apple's campaign of threats, harassment, and retaliation against Gjovik for Gjovik's whistleblowing at Apple.

Scarlett emailed Gjovik on Feb 5 2022 demanding Gjovik withdraw allegations and evidence about Scarlett from Gjovik's' federal charges (charges about obstruction of justice & witness tampering). Gjovik refused and protested again that Scarlett was contacting her despite Gjovik's request Scarlett cease all communication. Scarlett then filed this petition. It's no coincidence Scarlett's request to this court shows her true motivation where:

- o Scarlett alleges it was unlawful for Gjovik to file the NLRB charge against Apple Inc
- o Scarlett alleges it was unlawful for Gjovik to publish her legal memo for Gjovik's NLRB, U.S. DoL, California DoL cases and filing to the U.S. DOJ for violations of 18 USC 1512 & 1513
- o Scarlett alleges Gjovik filed an NLRB charge in bad faith and with false/misleading information

---

[2] Twitter: https://twitter.com/cherthedev/status/1492696448487493632;
https://web.archive.org/web/20220213032447/https://twitter.com/cherthedev/status/1492696448487493632
[3] Twitter: https://twitter.com/cherthedev/status/1492344081720086534;
https://web.archive.org/web/20220213031314/https://twitter.com/cherthedev/status/1492344081720086534
[4] Twitter: https://twitter.com/cherthedev/status/1492260008989388803;
https://web.archive.org/web/20220211222003/https://twitter.com/cherthedev/status/1492260008989388803

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

o    Scarlett alleges Gjovik is committed unspecified unlawful actions towards Scarlett
     because Scarlett is allegedly cited as a defense witness for Apple Inc.in Gjovik's
     whistleblower retaliation cases

Scarlett's requests in this case are either moot or unlawful. Gjovik already does not wish to have any contact with Scarlett and initiates no contact with Scarlett. Scarlett is the one persistently contacting Gjovik and Gjovik's friends about Gjovik. Despite Gjovik disagreeing with Scarlett's request for Gjovik to delete her Twitter posts with Scarlett's own public statements and other public information, Gjovik deleted those posts anyway, in hope Scarlett would leave Gjovik alone, and out of frustration of alleged Apple Inc accounts "retweeting" the information. Instead, as McEwen was afraid of, Scarlett further escalated her harassment of Gjovik and filed this complaint.

Further, Scarlett's request for Gjovik to cease surveillance is a thinly veiled attempt to block Gjovik from collecting evidence of Scarlett's continued threats, harassment, and defamation of Gjovik. This request is retaliatory abusive litigation and Scarlett's request for Gjovik to pay fees & costs in addition to the time Gjovik had to spend responding to this is further harassment. Scarlett continues to harass Gjovik's friends about Gjovik at least as recently as February 11 2022, sending one of Gjovik's friends which Scarlett does not know a direct message saying "I want to alert that you are amplifying some very damaging and false rhetoric" and "Gjovik is operating under a false assumption that everyone should take her at her word" amongst other bizarre statements. Gjovik's friends shared it with Gjovik as an FYI and told Gjovik *"Keep your chin up. Lots of people are rooting for you."*

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# Reply: Gjovik's Actions <u>Are Not</u> Harassment

## Gjovik did not have a Willful Course of Conduct Directed at Scarlett

R.C.W. § 10.14.020(2) defines unlawful harassment as, "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." [5]

First, and most importantly, Gjovik's last "conduct directed at Petitioner" was on September 27 2021 and then December 31 2021. On September 27, Gjovik replied on a Twitter post Scarlett made critiquing a project Gjovik led at Apple Inc, with Gjovik attempting to correct misinformation. The next and final communication Gjovik made directed to Scarlett was on December 31 2021 in which Gjovik posted a public warning to Scarlett that Gjovik wanted no further contact from Scarlett to her, requested Scarlett cease defaming her, for Scarlett to stop harassing her & harassing her friends about her, or else Gjovik would request a restraining order.

In fact, not only has Gjovik not contacted Scarlett for months, other than to warn Scarlett to stop harassing her or she'd seek a restraining order; it is Scarlett who has been harassing Gjovik and initiating contact with Gjovik and Gjovik's friends as recently as Friday February 11 2022.

## Gjovik's Conduct was Legitimate and Lawful

Looking to the R.C.W. § 10.14.030 balancing test, it is clear that Gjovik's conduct has been legitimate and lawful. In addition to Scarlett being the only one initiating contact between parties, and Gjovik giving clear notice she wants no further contact, Scarlett has made no requests of no further contact. In fact, even after filing the request for this order, Scarlett sent Gjovik a lengthy email on

---

[5] R.C.W. § 10.14.020(1) defines "course of conduct" as a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication, but does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of "course of conduct."

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

February 5 2022 (over 3,000 words) making false accusations against Gjovik, unlawful demands of Gjovik, threats against Gjovik, and included very uncomfortable personal information about Scarlett & Scarlett's family including their criminal record and medical issues. While Scarlett says she doesn't want Gjovik sharing her "private information" or "medical information," Scarlett continues to send this type of information to Gjovik despite Gjovik's protests, and Scarlett even Tweeted after sending the lengthy email to Gjovik, that "if Gjovik was acting in good faith" that Gjovik would have "shared the entire email" publicly.

It's entirely unclear what Scarlett is actually trying to achieve other than harassing Gjovik. All of Gjovik's actions and comments related to Scarlett since September of 2021 have been in desperation to get Scarlett to cease and desist harassing and defaming Gjovik, stop threatening Gjovik's' friends, and stop coercing Gjovik to drop her government charges against Apple Inc.

All of Gjovik's actions have not only been lawful, but they have been furtherance of seeking law enforcement action against Scarlett in Scarlett's personal capacity and as a Global Security employee of Apple and agent of Apple. Gjovik is taking reasonable actions to protect her property and liberty interests, enforce the law, and meet her legal duties as a federal informant and witness. Meanwhile, Scarlett has been diligent, persistently attempting to harm, harass, defame, intimidate, and coerce Gjovik every step of the way.

While Scarlett claims Gjovik has published Scarlett's "personal information," "private information," and "medical information," Gjovik's government filings and journalistic publications have only included information Scarlett has made public herself via Twitter &/or send Gjovik and Gjovik's friends in harassing, nonconsensual communications and thus are evidence of Scarlett's abuse to Gjovik. The only request Gjovik has had of Scarlett has been for Scarlett to leave Gjovik alone. Gjovik has repeated this request over & over again. Others (mutual friends, ex-Apple employees) have also pleaded for Scarlett to stop harassing and defaming Gjovik since September 2021.

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

**Page 8 of 24**

# Reply: Scarlett's Actions <u>Are</u> Harassment

## Scarlett has a Willful Course of Conduct Directed at Gjovik

Only recently, starting in December 2021, has Scarlett began to claim Gjovik is "harassing," "defaming," and "extorting" her and went so far as to report Gjovik to the U.S. FBI, though later said it was a mistake and blamed her actions on a narcotics relapse. Gjovik recognized the absurdity of the situation of Scarlett trying to redirect Gjovik's claims against Scarlett back at Gjovik and posted on Jan 9 2022: *"Cher: (harasses me). Me: Hey Cher stop harassing me. Cher: No. Also you're harassing me abt harassing you. Apple: (intimidates me as a fed witness). Me: Hey Apple stop intimidating me as a fed witness. Apple: No. Also, you're intimidating me as a fed witness"*[6]

Cher Scarlett has repeatedly called Gjovik a liar, a racist, a grifter, said Gjovik is perjuring herself, claimed Gjovik's complaints against Apple are meritless, and has stated she *"ejected Gjovik from amplification,"* *"stopped amplifying Gjovik,"* and called journalists who write about Gjovik not *"good news outlets."* Scarlett's threatened she could *"use her platform"* to *"destroy Gjovik."* On Sept 16 2021, an editor at a major publication inquired to Gjovik: *"What's the deal with you and Cher?"* He said he hear through one of their journalists that Cher *"is telling [journalists] not to talk to [Gjovik]."*



[6] https://twitter.com/ashleygjovik/status/1480376037393375235

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

Cher Scarlett commented to a friend about Gjovik on January 8 2022, and later posted it on Twitter, that Scarlett didn't want Gjovik *"to exist"* in Scarlett's world.[7] In Scarlett's email to Gjovik on Feb 5 2022, which Scarlett claims was "heart felt" and an "apology," Scarlett in great hostility told Gjovik she believed one of Gjovik's SEC Whistleblower filings: *"contained absolutely no material information for shareholders."*

On December 30 2021, an Apple colleague replied to a Twitter post Scarlett made harassing Gjovik, and communicated to Scarlett without Gjovik's knowledge or involvement, urging Scarlett to stop harassing Gjovik. He posted publicly on Twitter: *"I'd recommend you stop working against Ashley. You're ultimately more aligned than not, and it \*looks like\* you're continually lying about her (as she has the receipts). She's not trashing you. Which is a terrible look for you."*[8] Scarlett replied: *"I'm not working against her, and I've never lied about her, either. Her "receipts" are out of context. I have witnesses and my own receipts. I'm just not going to use my platform to destroy anyone to prove myself."* The man then persisted saying: *"Just looks like you trashing her behind the scenes, her saying "this person is trashing me; sure wish she'd stop. It's not true though. Here is proof." Rinse, repeat. And people you trash her to side w/ her."* [9] Scarlett responded, *"I suggested another victim get comment from Apple or proof about something she wrote that to my knowledge, from speaking with the person it was about, to protect herself. She did leak IP, and posted the evidence of it, which is now cited in Apple's defense. Is that fair to me?"*

On December 31 2021, Gjovik resorted to threatening she'd request a restraining order if Scarlett did not cease & desist. Scarlett did not stop. Gjovik has requested Scarlett stop contacting her numerous times, including requesting Scarlett stop harassing her & her friends, and stop making defamatory statements about her. Following months of well documented harassment of Gjovik and her friends, and

---

[7] See: In *U.S. v Brown*, a violation of 18 U.S.C. § 1513 was found when a federal informant's boyfriend told her over the phone: *"... the bottom line is, none of it, or very little of it would have come to light ... if it weren't for you, and talking to people with things that I trusted you with ... if you do anymore damage to my life in any way, I will ... erase you."* The man was convicted of threatening the informant, in violation of 18 U.S.C. § 1513. [7]

[8] Twitter, https://twitter.com/adi/status/1476664711244562434

[9] Twitter, https://twitter.com/cherthedev/status/1476680996388892689

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

defamation of Gjovik by Scarlett, and Scarlett refusing to stop despite many requests from mutual

friends, on December 31 2021 Gjovik posted:

> *"CHER SCARLETT. THIS IS YOUR FINAL WARNING. STOP HARASSING ME. STOP WRITING ABOUT ME. STOP DEFAMING ME TO THE PRESS. STOP INTIMIDATING MY FRIENDS. IF YOU DO NOT STOP IMMEDIATELY, I WILL FILE A POLICE REPORT & REQUEST A RESTRAINING ORDER."* [10]



Scarlett has become well known for obsessively monitoring Gjovik's Twitter posts (despite

being blocked) and when Gjovik's friends support Gjovik in any way, Scarlett sends them direct, private

messages defaming Gjovik and threatening Gjovik's friends that bad things will happen to them if they

support Gjovik.

On Oct 25 2021, she reached out again to this friend saying: *"Ashley has been harassing

journalists and lying about a bunch of stuff. Editors couldn't verify her story and they wouldn't write

about her. She has tried desperately to use other victims for her own gain, made racist remarks, lied to

the public, to the government, about what happened to her, and about me, and a bunch of other people

who tried to help her. I cannot stand to watch good people such as yourself get wrapped up in her web."*

That person then posted to Gjovik, *"BTW - since chatting with you on Twitter here and there, I've been

DM'd a couple times by someone at Apple."* He went on to say, *"She tried to slag you several times,

quite strongly,"* & *" I very strongly suspect they are using the Controlled Opposition tactic inside of*

---

[10] Twitter https://twitter.com/ashleygjovik/status/1477054537999417344

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

**Page 11 of 24**

*Apple."* He later shared screenshots the conversation but asked to remain anonymous out of fear of retaliation, as many witnesses have also requested out of fear of Scarlett.

On Dec 31 2021, one of Gjovik's friends wanted to post a message in support of Gjovik & celebrating Gjovik's human rights records & requesting GoFundMe donations for Gjovik's legal battle. Within minutes Scarlett contacted this woman who didn't even know her saying Gjovik lied, Scarlett is *"one of Apple's witnesses against Gjovik,"* and that Gjovik was *"perjuring herself."* She told Gjovik's friend, another witness suing Apple, *"You do not deserve to get sucked into this shit for standing up for someone else."*

Cher Scarlett's coercive threat of & then undertaking an anti-harassment order is an attempt to intimidate, threaten, and coerce Gjovik to reduce or drop Gjovik's charges against Apple Inc – with Scarlett even saying it outright. Courts have found "a lawsuit may be used by an employer as a powerful instrument of coercion or retaliation" and that such suits can create a "chilling effect" on the pursuit of discrimination claims. [11] The impetus behind anti-retaliation provisions is the need to prevent employers from deterring victims of discrimination from complaining to the government. [12] This is clearly a case of personal retaliation if not retaliation on behalf of Apple.


## Scarlett's Conduct was Illegitimate and Unlawful

Scarlett actions and threats towards Gjovik show a clear pattern of harassment designed to coerce, intimidate, alienate, & humiliate the Gjovik. Gjovik is a whistleblower on Apple Inc's workplace safety issues, labor violations, unlawful employee policies, unlawful employee surveillance, unlawful actions by the Global Security team, corruption within the Board of Directors, and other allegations, many of which have already been found to have merit.

Gjovik already met prima facie for whistleblower retaliation under three federal statutes administered by the U.S. Department of Labor Whistleblower Protection Program (CERCLA, OSHA, &

---

[11] *Bill Johnson's Restaurants, Inc. v. National Labor Relations* Bd. 461 U.S. 731, 740-41, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983)
[12] *Robinson v. Shell Oil* 519 U.S. at 346, 117 S. Ct. 843

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

SOX); eight California labor codes administered by the state Department of Labor DIR Retaliation team, and has five charges with the U.S. NLRB – in addition to many other protected government complaints. Gjovik has been complaining about facing federal witness intimidation by Apple since summer of 2021.

Scarlett has harassed Gjovik directly and indirectly, including defamation and threats, since September of 2021 including while both Gjovik and Scarlett were still employed by Apple and Scarlett worked in Apple's "Global Security" team. -Scarlett entered a settlement agreement with Apple Inc with undisclosed terms however still appears to be working for Apple Inc at least related to reporting on Gjovik's activities to Apple.

On Dec 20 2021, Scarlett publicly posted that Apple *"threatened to sue [her]"* [13] & on Dec 21 said she had *"nothing for them to take"* & said she was living in *"destitute"* [14] On Dec 22 2021, Scarlett publicly posted that Apple had tried to *"coerce [her]" into signing a document that "solicited a list of names of those who gave [her] material information as part of an unfair labor charge."* She did not say if she provided the names or if there were was other performance required of her for the agreement.[15]

On Feb 5th 2022, Scarlett wrote Gjovik saying she notified Apple Inc of actions taken by Gjovik which she felt were harmful to Apple Inc (those actions were Gjovik complaining about threats of violence received online which Gjovik has alleged in her government charges, are being sent to her on behalf of Apple). Whether Scarlett is pursuing this order on behalf of her own interests and/or on behalf of Apple, the request is retaliatory and abusive.

---

[13] https://twitter.com/cherthedev/status/1476684475677306888,
https://web.archive.org/web/20220130012743/https://twitter.com/cherthedev/status/1476684475677306888
[14] https://twitter.com/cherthedev/status/1473421774607900672,
https://web.archive.org/web/20220130013438/https://twitter.com/cherthedev/status/1473421774607900672
[15] Twitter, https://twitter.com/cherthedev/status/1473726601141624839 ,
https://web.archive.org/web/20220215093137/https://twitter.com/cherthedev/status/1473726601141624839

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

**Page 13 of 24**

# APPENDIX I: SUMMARY

## Petition for an Order for Protection – Harassment (PTORAH)

**Case Timeline:**

- **Order Filed:** January 31 2022
- **TRO Denied:** February 1 2022 1:47pm PST
  - Gjovik not Served
  - Preponderance of the evidence has not established that there has been harassment
  - **Reason**: "Gjovik lives in California. There is no emergency/irreparable harm if emergency order not issued. Many of complained-of-actions serve a lawful purpose (filing with NLRB) and involve free speech. However, other allegations may have merit, thus this Court will set a full-order hearing."
- **Gjovik Served**: February 14 2022 12pm PST **(1 DAY BEFORE HEARING)**
- **Hearing**: February 15 2022 1:30pm PST

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

**Page 14 of 24**

# APPENDIX II: ABUSIVE LITIGATION

**Washington State Administrative Office of the Courts: DV Manual for Judges**

The term "abusive litigation" includes the misuse of court proceedings by abusers to control, harass, intimidate, coerce, and/or impoverish survivors. Although the practice is common, it does not have a generally recognized name. It has also been described as legal bullying, stalking through the courts, paper abuse, and similar terms. d. The legal system that a survivor believed would provide protection becomes another weapon that an abuser can use to cause psychological, emotional, and financial devastation. It is also not uncommon for abusers to file civil lawsuits against survivors, such as defamation, tort, or breach of contract claims. Even if a lawsuit is meritless, forcing a survivor to spend time, money, and emotional resources responding to the action provides a means for the abuser to assert power and control over the survivor.[16]

Abusers may use a wide range of tactics against domestic violence survivors in the legal system. In Protection Order cases, abusers portraying themselves as the victim by seeking their own protection orders against the survivor and/or the survivor's friends and family. General tactics include: Filing frivolous motions, appeals, motions for revisions, and motions for reconsideration of court orders; Suing a survivor for defamation if the survivor reports the abuse, or suing the survivor for other tort or breach of contract claim; Suing or threatening to sue anyone who helps the survivor, including friends, family, advocates, lawyers, and law enforcement officials.[17]

---

[16] Washington Courts, *DV Manual for Judges 2015 Appendix H-10 Washington State Administrative Office of the Courts,* https://www.courts.wa.gov/content/manuals/domViol/appendixH.pdf
[17] Washington Courts, *DV Manual for Judges 2015 Appendix H-10 Washington State Administrative Office of the Courts,* https://www.courts.wa.gov/content/manuals/domViol/appendixH.pdf

**ASHLEY M. GJØVIK, B.S., P.M.P.**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# EXHIBIT D

**Electronically Filed**

2/25/2022 4:14:48 PM

22CIV01704KCX

King County District Court

**STATEMENT**:

February 17, 2022
Statement in support for Ashley Gjøvik.

I, Barbara Dawn Underwood, contacted Ashley Gjøvik on August 9, 2021, on LinkedIn. I had a similar experience with Apple Computers and wanted to connect. *See Addendum A.*

On August 24, 2021, I contacted Ashley on Signal, and in the following weeks, we began to communicate via signal text and phone. *See Addendum B.*

During this time and continuing up to the current date, I can attest to the following:

When I would call Ashley, she would sound frustrated and distraught about Cheryl Michelle Stewart (aka Cher Stewart, Cheryl Quinn, Cher Scarlett, or Cher Swan Scarlett).

Ashley's main concern was that Cher was contacting reporters, editors, colleagues, and supporters of Ashley. Cher used her considerable influence to silence Ashely and imply Ashley was a liar.

Nearly every phone call or communication with Ashley resulted in her almost in tears over Cher's behavior. There were 3 or 4 times when Ashley said she almost gave up on her NLRB and other charges against Apple, specifically due to Cher's behavior.

A few months later, Ashley spoke about defending herself publicly against Cher's accusations. Ashley struggled with this decision. She was afraid of how it would affect both Cher and her cases against Apple. She worried about how it would affect #AppleToo. She worried most about retaliation from Cher. However, Ashely was also concerned about her reputation and how it could negatively affect her when she became a human rights lawyer.

A short time later, Ashley posted on Twitter about Cher's trying to silence her voice. She posted a tweet by Cher admitting that she decided 'not to amplify' certain people's voices. Ashley was one of those voices. I was not very active on Twitter, but I liked the post and replied that I was sorry her voice was silenced. Cher immediately responded to me privately and attempted to persuade me not to support Ashley. *See Addendum C, and Gjøvik's Evidence pg. 80.*

Because of Apple, I knew what it was like to lose my job, and my home and I decided to help promote Ashley's GoFundMe page. During one of my phone calls with Ashley, I found out that Ashley was fired one week before receiving her bonus and stock options. I also knew that I had seen social media posts where Cher was publicly persuading

people that Ashley would be 'fine financially' because she had no dependents. Within minutes of my post on LinkedIn, Cher contacted me privately (on Twitter) and attempted to persuade me not to support Ashley. She also implied that Ashley was a liar. *See Addendum D and E.*

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED Feb 25, 2022 at John's Island , SC .
_____  _____  _____
*Month, day, year*                       *City*                       *State*

*Barbara D Underwood*
Barbara D Underwood (Feb 25, 2022 19:09 EST)
_____
Signature of Petitioner

**STATEMENT**:

Tuesday, February 22, 2022
To whom it may concern,

I'm a former Apple employee and whistleblower. I reported Apple to the EEOC for equal pay discrimination in 2020 and served Apple a PAGA notice regarding the same in 2021. Through those experiences, I deeply understand how challenging it is to hold employers accountable. I make a point to reach out to other Apple employees who speak out. As their activism kicked up last year, I offered support to both Ashley (who raised environmental and surveillance issues) and Cher (around pay equity and labor rights issues).

Since knowing both of them, I have witnessed Cher antagonize Ashley again and again. She repeatedly calls Ashley a liar both in public tweets and private messages. She insists that she is more of an authority on Ashley's dismissal from Apple than Ashley herself (which can only be true if she played a role in causing it). She has discouraged followers from supporting Ashley's crowdfunding efforts for her legal battle. And she has attempted to use baseless accusations of racism and classism to undermine Ashley's activism.

In this context, I can understand why Ashley has sought to expose ways that Cher might be presenting herself in a false light to garner sympathy (for example, as a single mom) and shift attention away from her attempts to discredit other activists. It is Cher, not Ashley, who brought her family life into the discourse of why she deserves sympathy and funds—the same things she is repeatedly telling her followers to deny Ashley.

In short, this isn't a clear cut case where one person is a victim, and the other is an aggressor. Cher has been attacking Ashley in overt and subtle ways for months. I encourage you to examine this dynamic very closely as you consider the request before you.

I also have my own story of being harassed by Cher. In November, she didn't like a critique that I made of a New York Times article. She privately accused me of racism, and when I exposed her accusation publicly, she blocked me on Twitter. I would have been happy for her to ignore my tweets in perpetuity and leave me in peace. But soon after, she unblocked me to send me a direct message, then immediately blocked me again so that I would have no way to respond. I recognized this as an abusive communication pattern, effectively yelling at me while holding her hand over my mouth, and I blocked her to prevent further abuse.

Any relief at not seeing her tweets in my feed was short-lived. In January I responded to a tweet Ashley had written. I should have been able to converse with Ashley without Cher reading it or contacting me about it. But Cher circumvented Twitter's block

PETITION FOR ORDER FOR PROTECTION - Statement page ____ of ____.
(9/2000) - RCW 26.50.030

twice: once to read the tweet, then again by messaging me on Signal to discuss it. I replied on this second platform "please do not contact me" and blocked her there too.

After all this, I made the difficult decision to protect my tweets so that they are no longer visible or sharable outside of my current followers. Setting my account to "protected" limits my ability to interact with the internet at large, and to perform my own activism. I am dismayed to constrict my digital life in this way, but it's the only way I can stop Cher from evading the clear boundaries I set that she repeatedly failed to respect.

In short, Cher has a verifiable history of harming other activists. I don't understand her motives, although she seems to target anyone that she perceives as competing with her prominence in the press (such as other Apple whistleblowers). Please take this into account as you consider potential bias and omission in the "evidence" she presents you justifying her perspective.

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED __Feb 28, 2022__ at __San Francisco__, __CA__.
        *Month, day, year*          *City*              *State*

__Kathryn Rotondo__
Kathryn Rotondo (Feb 28, 2022 13:13 PST)
_____
Signature of Petitioner

# EXHIBIT E

|   |   |   |
|---|---|---|
| 1 | MR. BLAIR:  That sounds like an argument, Your Honor. |
| 2 | THE COURT:  Just tell us the question. |
| 3 | Q. | (By Ms. Scarlett)  Why do you think -- why have you made |
| 4 | | statements like that that I am stalking anybody who -- |
| 5 | | stalking you, coercing you, harassing you, intimidating you, |
| 6 | | threatening you, and telling people that bad things will |
| 7 | | happen to them if they support you? |
| 8 | | Why were you saying that I was harassing, defaming, |
| 9 | | swatting, threatening, illegally coercing you to modify |
| 10 | | federal charges.  Why we were saying -- it should be |
| 11 | | mentioned that I am currently under investigation by |
| 12 | | numerous federal agencies and law enforcement for federal |
| 13 | | witness intimidation and obstruction of justice. |
| 14 | | Why have you said that I'm in active communication with |
| 15 | | Apple helping Apple in their campaign of harassment, threats |
| 16 | | and horror against the safety whistle blower.  Why did you |
| 17 | | say I'll report you to Apple if I leak Apple's crimes?  Why |
| 18 | | did you say -- |
| 19 | | MR. BLAIR:  Your Honor, can we have some help here?  I |
| 20 | | don't know what she's asking. |
| 21 | | THE COURT:  I just need a question, basically. |
| 22 | Q. | (By Ms. Scarlett)  Why do you -- why do you believe that |
| 23 | | saying these things about me and posting this personal |
| 24 | | information about me is for a lawful purpose? |
| 25 | | THE WITNESS:  Your Honor, I'd like to object to this |

*March 1 2022 Transcript: Page 37*

38

```
1    question.  She's trying to compel me to testify on my
2    federal charges.
3        THE COURT:  Ma'am, you've got an attorney.  He'll make
4    whatever objections are necessary.
5        MR. BLAIR:  I'm going to object for my client, Your Honor.
6    At this point I don't see a question.  What I hear is an
7    argument.
8        THE COURT:  She asked a question.
9        MR. BLAIR:  That's what I think --
10       THE COURT:  She asked a question and it is -- she wants to
11   know how Ms. Gjovik thinks this serves a lawful purpose.
12       MR. BLAIR:  What serves a lawful purpose?
13       THE COURT:  Her posting the things that she's listed.
14       THE WITNESS:  I'll answer --
15       MR. BLAIR:  Ms. Gjovik, go ahead.
16  A.   Yeah.  These are part of my federal and state charges, which
17       have already met prima facie for subsequent harassment after
18       termination of my time at Apple.
19          I'm hesitant to testify to anything specific because it is
20       part of the ongoing investigation.
21          And I will say, I am single handedly representing myself
22       fighting the biggest company in the entire world with a long
23       history of horrible labor abuses and intimidation of anyone
24       challenging it.  I'm terrified every single day since I
25       started reporting Apple to the government.  I'm terrified

1        for my safety.
```

8        And rebuttal, Ms. Scarlett.

9        MS. SCARLETT: You know, you said that, you know, your

10   client has the right to post this information because of the

11   First Amendment.  But in her testimony, she said that the

12   reason that she did so was because of something that I said

13   publicly that she believed to be a lie, and that was that I

14   said that her retaliatory discharge one is going to be tough

15   to prove because she leaked IP.  She actually posted the

16   conversation that I had with her about that leaked IP.

17        And it's hard for me to hear her attorney now argue that

18   she has the right to free speech when she did not give me

19   that right myself.

20        That's it.

21        THE COURT: Okay.  Thank you.  So give me a minute here.

22        All right.  So I've certainly heard the testimony, I've

23   reviewed the documents.  Both parties have produced a number

24   of documents and a number of written statements, all of

25   those are incorporated in by this reference, including the

*March 1 2022 Transcript: Page 44*

22        And she told mutuals that because -- I had reached out to a

23        mutual friend at the time -- who is no longer a friend of

24        mine, who has actually provided written testimony in this --

25        that I was concerned because something that Ashley told her

*March 1 2022 Transcript: Page 12-13*

# EXHIBIT F





**KING COUNTY DISTRICT COURT**
**REQUEST FOR COURT RECORD**

**Requestor's Information**

| | |
|---|---|
| Name: Scott Bride | |
| Agency/Company: McDermott Will & Emery LLP | |
| Address: 500 N. Capitol St. NW | |
| State, City, Zip Code: Washington, DC 20001 | |
| Phone: (202) 756-8467 | |
| Email: sbride@mwe.com | |

| | |
|---|---|
| Case Number: 22 CIV 01704 KCX | |

**Full names of Parties.**
Plaintiff: Cher Swan Scarlett
Defendant: Ashlie Marie Gjovik

**Fees**

| Certified Copies | $5.00 to certify the first page of the document. |
|---|---|
| | $1.00 per each additional page. |
| Regular Copies | $0.25 per page if it is an electronic document. |
| | $0.50 per page if it is not an electronic document. |
| Copy of Hearing | $10 per CD or Thumb Drive |

**Recording of Hearing**

| Date | Time | Courtroom | Certified Copies? |
|---|---|---|---|
| 3/1/2022 | | East Division, Redmond | ☐Yes ■No |
| 2/15/2022 | | East Division, Redmond | ☐Yes ■ No |
| 2/1/2022 | | East Division, Redmond | No |

**Request for Document(s)**

| Name of Document: | Certified Copies? |
|---|---|
| 1. | ☐Yes ☐No |
| 2. | ☐Yes ☐No |
| 3. | ☐Yes ☐No |
| 4. | ☐Yes ☐No |
| 5. | ☐Yes ☐No |

*Add an additional sheet for more documents.

Dated: April 5, 2022          Scott Bride
                                            Requester's Signature

You may submit your request in person via fax, or email. kcdc.webmaster@kingcounty.gov.
For additional information contact: 206-205-9200.

**Internal Use Only:**
Amount Due: $ 10.00   Payment Received: ☒Yes ☐ No     Clerk initials ETC.



FILED

MAR 0 4 2022

KCDC - East Division
Redmond



**KING COUNTY DISTRICT COURT**
**REQUEST FOR COURT RECORD**

**Requestor's Information**

Name: RICHARD KAHNENBERGER
Agency/Company: WASH LEGAL
Address: 2225 4TH AVE
State, City, Zip Code: SEATTLE 98121
Phone: 206 374-0100
Email:

| **Case Number:** |
|---|
| **Full names of Parties.** |
| Plaintiff: |
| Defendant: |

**Fees**

| Certified Copies | $5.00 to certify the first page of the document. $1.00 per each additional page. |
|---|---|
| Regular Copies | $0.25 per page if it is an electronic document. $0.50 per page if it is not an electronic document. |
| Copy of Hearing | $10 per CD or Thumb Drive |

**Recording of Hearing**

| Date | Time | Courtroom | Certified Copies? |
|---|---|---|---|
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |

**Request for Document(s)**

| Name of Document: | Certified Copies? |
|---|---|
| 1. Court ordered. Protection order | ☐ Yes ☒ No |
| 2. | ☐ Yes ☐ No |
| 3. | ☐ Yes ☐ No |
| 4. | ☐ Yes ☐ No |
| 5. | ☐ Yes ☐ No |

*Add an additional sheet for more documents.

Dated: 03/04/2022

Requester's Signature

You may submit your request in person via fax (206-205-0450), or email.
kcdc.webmaster@kingcounty.gov.
For additional information contact: 206-205-9200.
**Internal Use Only:**
Amount Due: $1.00  Payment Received: ☒ Yes ☐ No     Clerk initials ETC

Request for Court Records
KCDC – September 2017



NLRB National Labor
Relations Board

  MENU

Home

# Case Search Results

## Apple, Inc.

E-File        Follow

**Case Number:** 32-CA-282142
**Date Filed:** 08/26/2021
**Status:** Open

**Location:** Sunnyvale, CA
**Region Assigned:** Region 32, Oakland, California

### Docket Activity

Items per page | 10 |

| Date ↓F | Document | Issued/Filed By |
|---|---|---|
| 04/04/2022 | Amended Charge Letter* | NLRB - GC |
| 04/04/2022 | Amended Charge Letter* | NLRB - GC |
| 04/01/2022 | Signed Amended Charge Against Employer* | Charging Party |
| 08/30/2021 | Initial Letter to Charged Party* | NLRB - GC |
| 08/30/2021 | Initial Letter to Charging Party* | NLRB - GC |
| 08/26/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

NLRB-2021-001319
NLRB-2021-001318

### Related Documents

Related Documents data is not available.

### Allegations

- 8(a)(1) Coercive Statements (Threats, Promises of Benefits, etc.)
- 8(a)(1) Concerted Activities (Retaliation, Discharge, Discipline)

### Participants

| Participant | Address | Phone |
|---|---|---|
| **Charged Party / Respondent**<br>Legal Representative<br>Foster, Christopher<br>McDermott Will & Emery LLP | 415 Mission Street, Suite 5600<br>San Francisco, CA<br>94105 | (628)218-3826 |
| **Charged Party / Respondent**<br>Legal Representative<br>Holland, Ronald<br>McDermott Will & Emery LLP | 415 Mission Street, Suite 5600<br>San Francisco, CA<br>94105-2533 | (415)590-5120 |
| **Charged Party / Respondent**<br>Legal Representative<br>Mannan, Syed<br>McDermott Will & Emery LLP | 415 Mission Street<br>Suite 5600<br>San Francisco, CA<br>94105 | (628)218-3804 |
| **Charged Party / Respondent**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |
| **Charging Party**<br>Individual | | |

### Related Cases

Back to top

 **NLRB National Labor Relations Board**

 MENU

Home

# Case Search Results

## Apple, Inc.

E-File    Follow

**Case Number:** 32-CA-282142
**Date Filed:** 08/26/2021
**Status:** Open

**Location:** Sunnyvale, CA
**Region Assigned:** Region 32, Oakland, California

### Docket Activity

Items per page    10

| Date ↓F | Document | Issued/Filed By |
|---------|----------|-----------------|
| 04/04/2022 | Amended Charge Letter* | NLRB - GC |
| 04/04/2022 | Amended Charge Letter* | NLRB - GC |
| 04/01/2022 | Signed Amended Charge Against Employer* | Charging Party |
| 08/30/2021 | Initial Letter to Charged Party* | NLRB - GC |
| 08/30/2021 | Initial Letter to Charging Party* | NLRB - GC |
| 08/26/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

### FOIA Records

NLRB-2021-001319
NLRB-2021-001318

### Related Documents

Related Documents data is not available.

### Allegations

- 8(a)(1) Coercive Statements (Threats, Promises of Benefits, etc.)
- 8(a)(1) Concerted Activities (Retaliation, Discharge, Discipline)

### Participants

| Participant | Address | Phone |
|-------------|---------|-------|
| **Charged Party / Respondent** Legal Representative Foster, Christopher McDermott Will & Emery LLP | 415 Mission Street, Suite 5600 San Francisco, CA 94105 | (628)218-3826 |
| **Charged Party / Respondent** Legal Representative Holland, Ronald McDermott Will & Emery LLP | 415 Mission Street, Suite 5600 San Francisco, CA 94105-2533 | (415)590-5120 |
| **Charged Party / Respondent** Legal Representative Mannan, Syed McDermott Will & Emery LLP | 415 Mission Street Suite 5600 San Francisco, CA 94105 | (628)218-3804 |
| **Charged Party / Respondent** Employer Apple, Inc. | Cupertino, CA 95014 | |
| **Charging Party** Individual | | |

### Related Cases

Back to top

 **NLRB National Labor Relations Board**



Home

## Case Search Results

# Apple, Inc.

E-File     Follow

**Case Number:** 32-CA-288816
**Date Filed:** 01/10/2022
**Status:** Open

**Location:** Cupertino, CA
**Region Assigned:** Region 32, Oakland, California

## Docket Activity

Items per page | 10 |

| Date ↓F | Document | Issued/Filed By |
|---|---|---|
| 01/12/2022 | Initial Letter to Charging Party* | NLRB - GC |
| 01/12/2022 | Initial Letter to Charged Party* | NLRB - GC |
| 01/10/2022 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

## FOIA Records

NLRB-2022-000532

## Related Documents

Related Documents data is not available.

## Allegations

- 8(a)(1) Coercive Statements (Threats, Promises of Benefits, etc.)
- 8(a)(1) Coercive Actions (Surveillance, etc)
- 8(a)(4) Discipline

## Participants

| Participant | Address | Phone |
|---|---|---|
| **Charged Party / Respondent**<br>Legal Representative<br>Holland, Ronald<br>McDermott Will & Emory LLP | 415 Mission St<br>Ste 5600<br>San Francisco, CA<br>94105-2616 | (628)218-3829 |
| **Charged Party / Respondent**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |
| **Charging Party**<br>Individual | | |

## Related Cases

Related Cases data is not available.

### Most Popular Pages

Who We Are
National Labor Relations Act
Cases & Decisions
Recent Charges & Petitions Filings
The Law
The Right to Strike
Case Search
Contact Us
Frequently Asked Questions

# EXHIBIT G

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ASHLEY GJOVIK,

        Plaintiff,

    v.

STATE OF WASHINGTON, *et al.*,

        Defendants.

Case No. 2:22-cv-00807-RAJ-BAT

**ORDER DENYING MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

    This matter comes before the Court on Plaintiff's emergency motion for a temporary restraining order (TRO).  Dkt. # 11.  For the reasons below, the Court **DENIES** Plaintiff's motion and determines that this action is barred under the *Rooker–Feldman* doctrine, *see Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 291 (2005), and the Anti–Injunction Act, 28 U.S.C. § 2283. Therefore, the Court finds that it lacks subject matter jurisdiction over this case and **DISMISSES** the action.

## I.  BACKGROUND

    Plaintiff asks the Court to enjoin Defendants from enforcing an anti-harassment order issued against her. Dkt. # 11. That order, issued after a hearing in King County Superior Court, directs Plaintiff not to contact, surveil, or come within 1,000 feet of her former co-worker at Apple, Inc. Dkt. # 1-1 at 13. The order also prevents Plaintiff from making "any statements or posts" about her former co-worker on social media. *Id.*

ORDER – 1

Plaintiff was terminated from employment at Apple on September 9, 2021, and alleges that she was not informed of the reason. Dkt. # 1 (Compl.) ¶ 34. Around this same time, Plaintiff complained about Apple to the National Labor Relations Board, the Equal Employment Opportunity Commission, and the California Department of Fair Employment and Housing relating to potential violations of labor and anti-discrimination law. *See* Dkt. # 10 at 3-7. In defending some of these allegations, Apple claimed that Plaintiff's former co-worker made a complaint about her disclosing confidential information, and that complaint formed the basis upon which Plaintiff was terminated. *Id.* ¶ 36.

The relationship between Plaintiff and the former co-worker deteriorated, and both began posting about each other on various social media and other channels. *Id.* ¶¶ 35, 40-46. Ultimately, on January 31, 2022, the former co-worker petitioned for an anti-harassment protection order to protect against alleged unlawful harassment by Plaintiff. Compl. ¶ 51; Dkt. # 1-1 at pp. 5-10. The petition alleges that Plaintiff engaged in "targeted harassment," including "by posting defamatory content and other false statements" on her Twitter account. Dkt. # 1-1 at 5-10. The petition further alleges that Plaintiff engaged in "cyberstalking" and "publish[ed] personal and private information about [the former co-worker] … on her Twitter account with the malicious intention of stoking her followers" to continue the harassment. *Id.* King County Superior Court issued the anti-harassment order against Plaintiff on March 1, 2022. *Id.* at 12-13.  The Complaint makes clear that the state court matter is still ongoing pending appeal. Compl. ¶¶ 210, 221, 269.

Plaintiff instituted the current lawsuit on June 9, 2022. Dkt. # 1. Her motion for emergency relief, filed on June 21, 2022, argues that the anti-harassment order is contrary to law on various constitutional and statutory grounds and asks this Court to enjoin its enforcement and the state court proceedings. Dkt. # 11 at 26. Pursuant to Local Rule 65(b)(5), Defendants filed a notice indicating their intent to oppose the motion on June 22, 2022. Dkt. # 13. Defendants opposed Plaintiff's motion within 48 hours as required by

ORDER – 2

Local Civil Rule 65(b)(5). Dkt. # 14.

## II.  DISCUSSION

Under the *Rooker–Feldman* doctrine, district courts lack jurisdiction to review state court judgments. The Supreme Court's appellate jurisdiction over state-court judgments, granted in 28 U.S.C. § 1257, is exclusive and "precludes a United States district court from exercising subject matter jurisdiction in an action it would otherwise be empowered to adjudicate...." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 291 (2005). Plaintiff's complaint was filed in direct response to the Superior Court anti-harassment order, and is not an instance of concurrent jurisdiction. *Id*. at 292.

"It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). The doctrine bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The doctrine applies "not only to final judgments, but also to 'interlocutory state court decisions.' " *Santos v. Superior Court of Guam*, 711 F. App'x 419, 420 (9th Cir. 2018) (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001)).

Plaintiff's lawsuit, which principally seeks to enjoin the King County anti-harassment order and further state court proceedings, falls squarely within purview of the *Rooker-Feldman* doctrine.  The constitutional issues raised in the complaint are also "inextricably intertwined" with the anti-harassment order and therefore also barred by the *Rooker-Feldman* doctrine. *See, e.g.*, *Noel*, 341 F.3d at 1157 ("[I]f the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding … then the district court is in essence being called upon to review the state-court decision. This the district court may not do.")

(quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983)).

The *Rooker-Feldman* doctrine is not Plaintiff's only problem. The Anti-Injunction Act precludes "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As such, this Court may not grant an injunction to stay the King County Superior Court proceedings, or issue any declaratory relief "if those judgments have the same effect as an injunction." *California v. Randtron*, 284 F.3d 969, 975 (9th Cir. 2002). All of Plaintiff's claims stem from the entry and enforcement of the anti-harassment protection order in an ongoing state court matter. Such requests for relief are straightforwardly barred by the Anti-Injunction Act.

### III.   CONCLUSION

In conclusion, because the Court finds that it is divested of subject matter jurisdiction, pursuant to *Rooker–Feldman* and the Anti-Injunction Act, the Court cannot grant the relief sought by Plaintiff. As such, the Court hereby:

1. **DENIES** Plaintiff's Motion for Temporary Restraining Order (ECF No. 11) and all other pending motions (ECF Nos. 12, 16) as moot; and

2. **DISMISSES** Plaintiff's complaint for lack of subject matter jurisdiction.

The clerk is directed to close this case.

**IT IS SO ORDERED**.

DATED this 28th day of June, 2022.

The Honorable Richard A. Jones
United States District Judge

ORDER – 4

# EXHIBIT H

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>            Plaintiff,<br><br>    v.<br><br>STATE OF WASHINGTON, *et al.*,<br><br>            Defendants. | Case No. 2:22-cv-00807-RAJ-BAT<br><br>**ORDER DENYING<br>PLAINTIFF'S MOTION<br>FOR RECONSIDERATION** |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Reconsideration ("Motion"). Dkt. # 22. Having considered the Motion, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the Court **DENIES** the Motion.

## II.   DISCUSSION

Motions for reconsideration are disfavored and will be granted only upon a "showing of manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." Local

ORDER – 1

R. W.D. Wash. ("LCR") 7(h)(1).

The Court rejects Plaintiff's contention the Court should reconsider its dismissal order. There is no merit to Plaintiff's argument that the Court has jurisdiction because of federal preemption. Similarly, there is no merit to the argument that 18 U.S.C. § 1514 renders the Anti-Injunction Act inapplicable, and or that the Court can grant relief under the All Writs Act.

### A.    Preemption

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 925 (N.D. Cal. 2014) (quoting *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010)).

Here, Plaintiff contends she has open complaints with the NLRB, the SEC, the Department of Justice, the Department of Labor, and the California State Department of Labor, regarding various alleged violations committed by her former employer, Apple, Inc. and some of Apple Inc.'s employees. Plaintiff argues the state district court based its rulings based upon unsubstantiated allegations and based upon Plaintiff's "legal filings." Dkt. 18 at 5-6.   Plaintiff contends this "intrudes" upon the NLRB's and other federal jurisdiction.

Plaintiff's claim of preemption fails. None of the three factors set forth in *Hendricks v. Starkist Co.*, applies to this case. Rather this case involves a complaint seeking to invalidate a state statute. A party seeking to invalidate a state law based on preemption bears the considerable burden of overcoming the presumption that Congress does not intend to supplant state law. *Stengel v. Medtronic*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (citation and internal quotation marks omitted). There is nothing showing Congress intended to supplant Washington State's statutes on harassment protection orders, or the sanctions for violating such orders. The fact Plaintiff believes the order

ORDER – 2

interferes with her ability to present complaints to various federal agencies does not create federal jurisdiction based on preemption here.

And, as Defendants point out, *Olson Farms Inc. v. Barbosa*, 134 F.3d 933, 938 (9th Cir. 1998) cuts against Plaintiff's requests. The Court in *Olson Farms* indicated a Federal District Court has no authority to review the final determinations of a state court in judicial proceedings, even those that touch upon federal rights. *Id.* at 937.

Plaintiff also argues the claims she has presented to the various federal agencies are meritorious. Whether her claims are meritorious or not does not mean her requests to bar the state harassment orders against her are preempted by federal law.  Next, Plaintiff argues she has a private right of preemption, Dkt. 18 at 7, under *Independent Living Center of Southern California, Inc. v. Shewy*, 543 F.3d 1050 (9th Cir. 2008). But *Independent Living Center* involved the federal Medicaid Act, which sets forth detailed requirements for state medicare plans. The Court in *Independent Living Center* concluded there was a valid cause of action under the Supremacy Clause to assert injunctive relief because the action alleged a conflict between the federal Medicaid Act and the state Medicaid plan. The facts of *Independent Living* are wholly distinguishable from this case and not a basis for Plaintiff's motions for injunctive relief.

The Court accordingly rejects Plaintiff's contention that federal law preempts and nullifies the doctrines under *Younger* and *Rooker-Feldman*, or the Anti-Injunction Act.

**B.   18 U.S.C. § 1514 and the All Writs Act**

Plaintiff also argues the Court may act under 18 U.S.C. § 1514. Section 1514 authorizes a federal district court, upon application of the attorney for the government to issue a temporary restraining order (§1514(a)), or on its own motion to issue a protective order of a victim or witness in a federal criminal case or investigation § 1514(b). Section 1514 is not in play here. What is in play is Plaintiff's request for this Court to issue an injunction barring application and enforcement against her of a state harassment protection order that was issued by a state judge and is on review in the state courts. That request is

ORDER – 3

barred by the Anti-Injunction Act for the reasons set forth in the dismissal order. Dkt. 21 at 4. Additionally, while Plaintiff has styled herself as a "witness" for the Government of the United States, § 1514(a) requires the attorney for the government to request a temporary restraining order. The language of the statute does not indicate an individual can individually request for a restraining order absent a request by the government lawyer. That the attorney for the government must recognize an individual as a "witness" who might fall under § 1514 is critical because the Court does not represent the government, and unless the government lawyer even recognizes Plaintiff as a protected witness, the Court declines to grant a TRO on its own initiative under § 1514(b).

And lastly, Plaintiff claims the Court has jurisdiction to provide relief under the All Writs Act, 28 U.S.C. § 1651(a). The Act authorizes a court to employ extraordinary writs but confines that authority to the issuance of process in aid of the issuing court's jurisdiction. *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999) (quoting § 1651(a)). The All Writs Act is an "extraordinary remedy," and it does not "enlarge" a court's jurisdiction. *Clinton*, 526 U.S. at 534-35.  A court may utilize the All Writs Act, only to issue writs "necessary or appropriate in aid of" its existing jurisdiction. *See id*. (quoting 28 U.S.C. § 1651(a)). Additionally, the Act does not create any substantive federal jurisdiction but merely codifies federal courts' inherent power to protect the jurisdiction they already have, derived from some other source. *See Does # 1 v. Trump*, 458 F.Supp.3d 1220, 1223 (D. Or. 2020) (citing *Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1099 (11th Cir. 2004)). The All Writs Act is inapplicable because this is clearly not a situation in which the Writ in necessary or appropriate in aid of the Court's jurisdiction. And as noted above, the Writ itself does not create federal jurisdiction that does not already exist. The Court concludes the All Writs Act is not grounds for this Court to act as Plaintiff desires.

Having found no manifest errors of law or fact in the dismissal order for lack of subject matter jurisdiuction, the Court **DENIES** Plaintiff's motion.

ORDER – 4

### III.  CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion.

DATED this 28th day of June, 2022.

The Honorable Richard A. Jones
United States District Judge

# EXHIBIT I

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| **CHER SWAN SCARLETT,** | NO. 22-2-03849-7 SEA |
| Petitioner/Respondent | |
| v. | **MANDATE OF SUPERIOR COURT ON RALJ APPEAL** |
| **ASHLEY MARIE GJOVIK,** | |
| Respondent/Appellant | **Court of Limited Jurisdiction No(s). 22CIV01704KCX** |

## I. BASIS

Pursuant to RALJ 9.2(c) and (d), the Clerk of the Superior Court shall transmit to the Court of Limited Jurisdiction and to all parties a mandate, which is the written notification of the Superior Court decision on an RALJ Appeal. The notification shall include as part of the final judgment, a summary of expenses allowed as costs pursuant to the RALJ 9.3(a),(c), and (f). The costs listed below shall be collected by the Clerk of the Court of Limited Jurisdiction. When the costs awarded include the Superior Court filing fee, it shall be collected by the Clerk of the Court of Limited Jurisdiction and forwarded to the Superior Court Clerk.

## II. NOTIFICATION

Therefore, this is to certify that the order of the **King County Superior Court** of the State of Washington, filed on **September 26, 2022,** became the decision terminating review of this court in the above-entitled case. This cause is mandated to the **King County District Court, East Division, Redmond Courthouse,** from which the appeal was taken, for further proceeding in accordance with the decision. A copy of the decision is attached.

## III. DECISION

The decision of the ☒ SUPERIOR COURT ☐ COURT OF APPEALS ☐ SUPREME COURT:

A. ☐ Affirms ☒ Reverses ☐ Modifies ☐ Dismisses ☐ Denies ☐ Remands

B. The appeal was heard in Superior Court before the Honorable **Andrea Robertson.**

C. This Matter is remanded to the Court of Limited Jurisdiction.

Mandate on RALJ Appeal
Auth. RALJ 9.2(c) & (d); RALJ 9.3(a), (c) & (f), ll.2(a)
Eff. 09/01/2018

DOCKET CODE: MNDRLJ

## IV. APPEAL BOND

**A.** ☐ Appeal Bond posted in Superior Court will be returned to the originating Court under separate mailing.

**B.** ☒ No Appeal Bond posted in Superior Court.

## V. COSTS

Pursuant to RALJ 9.3(a),(c) and ll.2(a) costs and attorney fees are awarded as follows:

| Item | Awarded To | Amount |
|---|---|---|
| A. Costs | | |
| B. Attorney Fees | | |
| C. Other | | |

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Superior Court of Washington for King County, at Seattle, on this day,
DATE: November 14, 2022

**Barbara Miner**
Superior Court Clerk

*By: T. Knoblauch, Deputy Clerk*

Original: King County District Court, East Division, Redmond Courthouse ✓

    Cc:   Cher Swan Scarlett
           Ashley Marie Gjovik
           Superior Court File

Mandate on RALJ Appeal            DOCKET CODE: MNDRLJ
Auth. RALJ 9.2(c) & (d); RALJ 9.3(a), (c) & (f), ll.2(a)
Eff. 09/01/2018

CERTIFIED
COPY



FILED
2022 SEP 26 12:26 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-03849-7 SEA

1

2

3

4

5

6

7 SUPERIOR COURT OF WASHINGTON FOR THE COUNTY OF KING

8 SCARLETT, NO. 22-2-03849-7 SEA

9 Appellee, *Lower Court Case Number 22CIV01704KCX*

10 v.

ORDER

11 GJOVIK,

12 Appellant.

13     This appeal came on regularly pursuant to RALJ 2.2(a), before the undersigned Judge

14 of the above-entitled court and after reviewing the record on appeal and considering the

15 written submissions of the parties, the court reaches the following findings of fact and law.

16 **LIMITATIONS UPON ITEMS CONSIDERED**

17     Both parties are unrepresented in this matter. This Court must begin with a

18 clarification regarding the guiding rules, the materials considered, and thus articulate what

19 was not considered.

20     Appellant filed their opening brief more than 90 days after initiating the appeal,

21 which is a violation of RALJ 7.2 and grounds for dismissal due to "abandonment," however

22 this Court did not exercise its discretion to consider a dismissal. Appellant's brief is 76

23 pages long, with over 400 pages of attachments (which included additional legal briefing)[1],

24 _____

[1] Including "Notice of Pendancy of Other Actions" (sub-16, 55 pages), "Appendix of Exhibits" (sub-

25 17, 72 pages), and "Exhibit X/Legal Memo" (sub-23, 337 pages)

26 ORDER                    1     JUDGE ANDREA K. ROBERTSON
KING COUNTY SUPERIOR COURT

1 | which is in violation of RALJ 7.3(b). Both Appellant and Appellee attempted to introduce
2 | additional "evidence" into the record throughout the entirety of their submissions, in terms
3 | of factual assertions not in the lower court record, along with Appellant's submission of an
4 | additional witness statement (Found in electronic record at sub-48).

5 |      Appellee raises multiple objections to the length and content of Appellant's
6 | submissions, but failed to note motions for consideration by this Court per local rules.
7 | Appellee submitted a brief of appropriate length.

8 |      Appellant requests at various times that this Court apply Rules of Appellate
9 | Procedure. However, the RAPs "govern proceedings in the Supreme Court and the Court
10 | of Appeals for review of a trial court decision and for direct review in the Court of Appeals
11 | of an administrative adjudicative order under RCW 34.05.518." (RAP 1.1). The rules
12 | which govern the proceedings before this Court (i.e. "review by the superior court of a final
13 | decision of a court of limited jurisdiction"), are found in the Rules of Appeal for Courts of
14 | Limited Procedure (RALJ), as well as the local RALJ rules.

15 |      Appellant requests that this Court vacate the lower court's order via "CR 60," which
16 | applies to a judgment or order of Superior Court, and does not apply to these proceedings.

17 |      Appellant has asked this Court to consider pending actions, investigations,
18 | proceedings and lawsuits in various other courts, jurisdictions, and proceedings. These
19 | matters are not before this Court, and this Court has no jurisdiction to rule in any fashion
20 | on those matters. The ruling in this matter in no way governs any determinations in any
21 | other court, jurisdiction, or proceeding involving the parties.

22 |
23 |      The Court provides this background to explain that many documents, arguments,
24 | and requests contained in the parties' submissions were *neither reviewed nor considered*
25 | by this Court, as they fell outside of the trial record or were unrelated to any issue this

26 | ORDER            2       JUDGE ANDREA K. ROBERTSON
KING COUNTY SUPERIOR COURT

Court has authority to determine. This Court's role is a very limited one, articulated by RALJ 9.1:

> **(a) Errors of Law.** The superior court shall review <u>the decision of the court of limited jurisdiction</u> to determine whether that court has committed any errors of law.
> **(b) Factual Determinations.** The superior court <u>shall accept those factual determinations supported by substantial evidence in the record</u> (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction.

In other words, this Court can only consider facts which were before the lower court, and this Court will not consider new facts, assertions, or declarations provided on appeal. Briefs from each side contain factual assertions that were not contained in the lower court record, and/or were irrelevant to issues on appeal. This Court will not consider facts outside the record. Nor will this Court consider allegations that are irrelevant to the legal issues on appeal in this case. This Court can only consider whether the lower court's decision was in error.

Overall, this Court has an obligation to interpret and apply the RALJ rules "liberally" to "promote justice and facilitate the decision of cases on the merits." (RALJ 1.2(a)). As such, "cases and issues will not be determined on the basis of compliance or noncompliance with these rules," except in limited circumstances which do not apply to the matter before this Court. (see RALJ 1.2(b)). Thus, the failure of parties to adhere to briefing timelines or limitations, and the parties' introduction of additional facts, will not guide this Court's final determination. This Court will not dismiss for these procedural defects, but has elected to simply not review or consider those items which were inappropriately provided. This Court will only consider whether an error of law was committed by the lower court, based upon the record before the lower court only.

ORDER 3

To the degree that Appellant/Respondent appears to be challenging personal jurisdiction (due to her residence location in California), this Court finds no merit, as RCW 10.14.155 provides for jurisdiction over nonresident individuals in anti-harassment proceedings in certain circumstances when the conduct giving rise to the petition occurred out of state. The conduct must represent an "ongoing pattern of harassment that has an adverse effect on the petitioner or a member of the petitioner's family or household and the petitioner resides in this state." RCW 10.14.155(d)(1). Petitioner/Appellee resides in Washington. The lower court properly exercised jurisdiction.

## ASSIGNMENT OF ERROR

A review of the record before the lower court, along with the lower court's decision (both the written order and oral rulings in transcript of proceedings held on March 1, 2022) leads this Court to conclude that the order was entered in error.

## RECORD AND DECISION OF LOWER COURT

The case presented to the lower court clearly showed a picture of two parties who posted and messaged regarding each other on their individual Twitter pages (and other social media accounts). While the parties initially spoke well of each other, their interactions changed. By December 2021, neither party thought well of the other. Both parties have strong, publicly posted opinions about the validity of each side's activism, public statements, and online activities. Petitioner filed a request for an order, describing Respondent's pattern of "posting defamatory content and other false statements about me on her Twitter account." Petitioner also speculated about posts made by anonymous accounts, which Petitioner attributed to Respondent. Specifically, Petitioner wrote and testified in court about Respondent "re-posting" items posted on Petitioner's own social

ORDER                                                        4                    JUDGE ANDREA K. ROBERTSON
                                                                                 KING COUNTY SUPERIOR COURT

media platform starting in December 2021. Petitioner admitted to having published these facts to her own followers, which exceeded 55,000. Petitioner claimed that Respondent "filed an NLRB charge against Apple, Inc." Petitioner claimed that Respondent posted information related to a background check of Petitioner's spouse. Petitioner also claimed that Respondent expressed opinions about Petitioner's truthfulness in her public posts and her involvement in ongoing litigation with Apple, Inc.

Respondent and Petitioner both provided many many pages of communications, arguments, screenshots, postings, and other items, to show the postings and communications of Petitioner and Respondent in the months preceding the filing of the AHO petition. At one point, both parties relied on a third party to act as an informal intermediary, to attempt to reach an agreement regarding what topics should be commented upon in each other's Twitter pages and other social media platforms. Both parties blocked each other, unblocked each other, messaged each other, posted accusations of harassment against each other, reporting each other to various governmental agencies, and made statements about various ongoing litigation between Respondent and Apple, Inc. Parties at first expressed engagement and support for each other, which was ultimately replaced with vitriol and public attacks of each other, commencing in December 2021.

The lower court denied a temporary order, finding no emergency. After a full hearing, the lower court granted the order, for a length of five years. In doing so, the court found that the "course of conduct" by Respondent involved primarily the "re-posting" of various items. The court expressed its greatest concern about posts related to records of criminal history as well as details about Petitioner's health.

The court ultimately asks a key question of the Petitioner/Appellee:

THE COURT: I'm sorry; so are you saying that the information about your medical -- various medical conditions, your mother's whereabouts and those sorts of things that she's reposting things that you have already posted on Twitter?

(Transcript of proceedings, sub-6, page 18)

Petitioner confirmed that this was true, explaining to the court that Respondent had re-posted items that Petitioner intended only for her "own" Twitter followers (approximately 55,000+), and/or were items that Respondent found through other sources, commenting that "she actually did delete a lot of the Tweets that had personal information about it except for two of them." Petitioner then adds that Respondent conducted a background check on both herself and her husband and provided this information to a representative for Wikipedia.

When counsel for Respondent objects and points out that postings by Respondent were true and accessible publicly, the lower court states:

THE COURT: That's not the standard. That's not the standard in an antiharassment order. Whether it's true or not doesn't matter in an antiharassment order.

. . . So what we're trying to figure out is whether there's a pattern of activity over time directed at Ms. Scarlett that serves no lawful purpose. And if you want to address -- maybe address your questions toward how any of these postings serves a lawful purpose, that might serve your client well.
(Transcript of proceedings, sub-6, page 21)

When questioned by Respondent's counsel, Petitioner is asked:

Q. . . . The communications that you're referencing, are those messages sent directly to you or are they something that she posts to the public at large?

A. They are what she is posting to the public, as I have stated.

(Transcript, sub-6, page 22)

ORDER                                      6              JUDGE ANDREA K. ROBERTSON
                                                          KING COUNTY SUPERIOR COURT

Petitioner verifies that these messages were not sent directly to her, as in the form of a text message, an email, a letter, or a physical verbal exchange. When asked about the source of information posted by Respondent, the following exchange occurs:

Q. . . . So let me recap. You put in the public sphere information about yourself that other people could see and then copy, and she took that information and she put into another format. Do I understand that correctly?

A. That is correct.

Q. All right. And that information that you shared, how many people did you share that with?

A. My entire Twitter feed.

Q. 45,000?

A. 55,000. (Transcript, sub-6, page 25)

The lower court made its findings on the record (not in writing). The court described the various online postings of Respondent/Appellant which the Court relied upon in entering an order in favor of Petitioner/Appellee:

The only purpose in posting information about Ms. Scarlett's mother, Ms. Scarlett's mother's whereabouts, home and pet, Ms. Scarlett's husband and his criminal record is clearly designed to upset Ms. Scarlett. There's no lawful purpose. There is no absolute right to free speech. Free speech can be curtailed in many ways, one of which is a protection order. The protection orders are clear that the course of conduct cannot be designed to alarm, annoy or harass. There's no other purpose for posting these things, none.

The antiharassment statute does not require that Ms. Gjovik direct this specifically by directly speaking to her, it's designed -- it prohibits directing this at her. So it can be directed at other people knowing that Ms. Scarlett is going to see it and be aware of it. It can be communicated to others. It doesn't have to be communicated directly to Ms. Scarlett to be prohibited under our antiharassment statute.

Posting this kind of information about somebody's medical condition, about someone's spouse's criminal history -- particularly when it's sealed, but even if it

ORDER                7          JUDGE ANDREA K. ROBERTSON
KING COUNTY SUPERIOR COURT

weren't sealed -- about someone's parents, about someone's name change, none of that serves any lawful purpose to disseminate. The only purpose for doing that is to harass, annoy and alarm. Clearly, Ms. Gjovik has more than a bit of animosity toward Ms. Scarlett. Clearly, she was directing this at her and was hoping to harm her, to upset her. There's no other purpose for this. I am going to issue the order, and I'm going to make it a five-year order.

(Transcript, sub-6, page 47-48)


To sum up the stated areas mentioned by the lower court:

1)  The reference to "medical conditions" referred to a reposting of

    Petitioner/appellee's own Tweets about her own medical conditions.[2]

2)  The reference to Petitioner's family was related to Respondent's post opining

    about the strength of Petitioner's claims about her poverty in childhood in light

    of a posted photo. (Despite the reference to "location" this court sees no

    evidence that Petitioner's private home address was posted, and the reference to

    "home" appears from the record to be a comment about Petitioner's publicly

    posted childhood photo.)

3)  The reference to criminal history was related to law enforcement or court

    documents obtained by Respondent showing that Respondent's spouse had a

    prior criminal conviction and was ordered to register as a sex offender.[3]

---

[2] Tweets and messages from Petitioner were apparently public at one point but were later restricted in audience reach to approximately 55,000 persons who were followers of Petitioner. It is unclear from the record when some items were "public" tweets, versus "limited audience" tweets.
[3] It was unclear from the record, but at some point either shortly before or shortly after Respondent posted this information, King County Superior Court sealed the juvenile record for Petitioner's spouse (in late December), a detail apparently unknown to Respondent when Respondent posted this background information, according to sworn testimony.

ORDER                                          8

1       Despite the lack of "direct" communication to Petitioner, as conceded under oath,

2  the court imposed distance restrictions, prohibitions against surveillance, and prohibitions

3  against direct/third person communications to Petitioner. The court made no specific

4  findings to support the extra length of the order (five years). Most important to Petitioner

5  (and to the issues before this Court), the lower court also added the following language to

6  the order:

7       **"Respondent shall not make any statements or posts or other publications**

8       **about Petitioner, including, but not limited to, petitioner's medical**
       **information, petitioner's family, petitioner's names, on any social media or**

9       **internet or other medium. Nothing about this Order prohibits Respondent**
       **from testifying in administrative or judicial proceedings."**

10      The court referenced re-posting of items in its findings of "course of conduct." The

11  court did not specifically reference in its findings the other category of items complained of

12  by Petitioner, namely Respondent's opinions about Petitioner's role in ongoing litigation.

13  Whether the lower court gave no weight or consideration to the claims by Petitioner is

14  unclear. However, as the above language from the final order was not limited to "re-

15  posting" public information, and was a <u>full</u> prohibition on "posts … *about* Petitioner," those

16  "opinion" posts may very well have been intended to be referenced in the course of

17  conduct that the court describes. Both categories will be analyzed by this Court.

18

19  **A. THE LOWER COURT'S ORDER EXCEEDED STATUTORY LENGTH**
       **WITHOUT ADDITIONAL REQUIRED FINDINGS**
20

21      RCW 10.14.080(4) provides that an anti-harassment order may not

22  exceed one year in duration "unless the court finds that the respondent is likely to resume

23  unlawful harassment of the petitioner when the order expires." No such finding was

24  specifically made on the record by the lower court, which renders the length of five years to

25  be improper.

26  ORDER         9        

## B. THE LOWER COURT'S ORDER IS AN UNCONSTITUTIONAL PROHIBITION ON FREE SPEECH

Unlawful harassment is defined in RCW 10.14.020[4] as follows:

(1) "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct is contact by a person over age eighteen that would cause a reasonable parent to fear for the well-being of their child.

(2) "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication. Constitutionally protected activity is not included within the meaning of "course of conduct."

Determination of the purpose of a course of conduct was governed by RCW 10.14.030, requiring the lower court to determine if the conduct serves any legitimate or lawful purpose. However, RCW 10.14.020 protects from consideration "constitutionally protected free speech." And a protection order that is based solely on protected free speech is invalid. *Catlett v. Teel*, 15 Wn.App.2d 689 (2020). Defamatory language is generally not protected, but defamatory speech must be certain and apparent from the words themselves. *Id.* at 705.

    *1) Appellant/Respondent's "Republishing" or "Re-posting" Publicly Available Records*

---

[4] This statute (along with various other forms of orders prohibiting contact) have now been replaced entirely with a combined statutory scheme in RCW 7.105, which took effect in July 2022

ORDER           10         JUDGE ANDREA K. ROBERTSON
                                            KING COUNTY SUPERIOR COURT

1      While the publication of truthful information is not protected in all instances, the

2 U.S. Supreme Court has shown how even the publication of a rape victim's name from a

3 publicly-released police report is protected by the 1st Amendment.[5]

4      The Washington Constitution provides even greater protection than the U.S.

5 Constitution's 1st Amendment to the publication of public records. Via Const. art I, § 5,

6 Washington provides an absolute right to publish and broadcast accurate, lawfully obtained

7 information that is a matter of public record.[6] These protections are not limited to

8 information admitted into evidence and presented in open court.

9

10     While there is a compelling state interest in protecting citizens from harassment, a

11 specific protection order must be narrowly tailored to further a compelling state interest. In

12 a very similar case to the matter before this court, Division One[7] recently determined that

13 restrictions such as the ones imposed by the lower court (related to online posts) were not

14 narrowly tailored to further a compelling state interest.

15

16     The lower court in this matter seemed to require a "lawful purpose" behind the

17 Respondent's postings of public records. But our state constitution does not allow for that

18 consideration or restriction on free speech, and provides that "[e]very person may freely

19

20     [5] *Florida Star v. BLF*, 491 U.S. 524 (1989)
      [6] *State v. Coe*, 101 Wn.2d 364 (1984)
21     [7] *Catlett v. Teel*, 15 Wn.App.2d 689 (2020). This case involved a finding of improper "course of
conduct" by Teel, an ex-boyfriend of Catlett, who appealed the entry of an antiharassment order which
restrained his behavior. Teel caused public records to be published, namely requests for criminal records and
22 other publicly available documents. He did so in a manner which resulted in an online posting of those
documents via a site called "MuckRock". These documents included various police investigations of Catlett
23 for harassing behavior, mental health checks of Catlett by law enforcement, arrests for domestic assault, etc.
The documents obtained by Heel also included links to criminal records for another individual which (Teel)
24 believed related Catlett's behaviors. Division One found that all of this was protected speech, that the lower
court's order was an unconstitutional content-based restriction, and that its provisions imposed an
25 unconstitutional prior restraint on future protected speech.

26 ORDER                          11

1   speak, write, and publish on all subjects, being responsible for the abuse of that right."

2   Const. art 1, § 5. There is no categorical "harassment exception to the First Amendment's

3   free speech clause."[8]

4

5       While many of the postings by Respondent which were complained of appeared to

6   be offensive, rude, or harsh, the case law is clear: Civil antiharassment statute is not designed

7   to penalize people who are overbearing, obnoxious, or rude.[9]

8       The lower court's determination **should have** exempted from a finding of "course

9   of conduct" the "re-posting" of publicly available records, content and statements, as the

10   actions constituted constitutionally protected free speech.

11       Further, the lower court's order for protection restricts future speech in a manner

12   which constitutes an unconstitutional content-based restriction. The court cannot restrict

13   expression because of its message, its ideas, its subject matter, or its content, unless it is

14   narrowly tailored to promote a compelling governmental interest. Here, there is no privacy

15   interest in public records and public postings. Re-posting of these public records falls within

16   constitutionally protected activity. No applicable exceptions apply to allow a prior restraint

17   on speech (e.g. incitement to violence, publication of obscenity, direct threat to military

18   security, restrictions during times of war[10]). This Court need not look further than the

19

20

21

    [8] _Rodriguez v. Maricopa County Cmty Coll. Dist._, 605 F.3d 703 (2010). In fact, in _City of Everett v. Moore_, 37
22   Wn.App. 862 (1984), a section of the crime of harassment was found to be overbroad which did not have a
"precision of regulation" required by the 1st Amendment. Speech which harasses does not lose its
23   constitutional protection by virtue of that fact alone.
    [9] _Burchell v. Thibault_, 74 Wash. App. 517, 874 (1994). Again, nothing in the record suggested that the
24   lower court found the Respondent's posts to be defamatory, which was appropriate as the posts could not
meet the four elements articulated by _Herron v King Broad Co._, 112 Wn.2d 762 (1989)
25     [10] _See Near v. Minnesota ex rel Olson_, 283 U.S. 697 (1931).

26   ORDER           12       JUDGE ANDREA K. ROBERTSON
                                            KING COUNTY SUPERIOR COURT

1 decisions of <u>Coe</u> and <u>Catlett</u> to find that posts such as those at issue are related to law

2 enforcement or court records and are protected speech.

3 　　　　　　　　　*2) Appellant/Respondent's "Opinion" Posts*

4 　　　　A slightly different analysis applies to posts featuring the opinions of Respondent

5 about the strength and veracity of various legal claims made by Petitioner, as well as

6 opinions about Petitioner's involvement as a witness for Apple, Inc. It is important to note

7 that these posts were featured on Respondent's own blog/site/social media pages, and were

8 not directed to Petitioner. The lower court appeared to have heard and seen no evidence

9 that the posts encouraged or incited violence. Petitioner asserts that the speculation and

10 opinions expressed by Respondent about Petitioner's involvement in litigation were false and

11 reckless. Thus, this Court will address this specific category of online posting via a separate

12 test of whether this constitutes defamation, which may not be protected by the First

13 Amendment.[11]

14 

15 　　　　A defamation plaintiff must establish four essential elements to recover: (1) falsity;

16 (2) an unprivileged communication; (3) fault; and (4) damages. [12]

17 

18 　　　　The truth or falsity of the "opinions" was not explored in the court below.

19 However, a great deal of evidence was before the court regarding the limited public figure

20 

---

21 　　[11] Again, the lower court never specifically ruled that the opinions of Respondent about Petitioner's role in the ongoing litigation was part of the "course of conduct," but as mentioned above, due to the fact that

22 the court ultimately ruled that "Respondent shall not make **any statements or posts or other publications about Petitioner**," it can be assumed that the "opinion" posts were considered along with the republication of

23 public data and information, and thus this topic must be addressed.

　　[12] *Mark v. Seattle Times*, 96 Wash.2d 473, 486, 635 P.2d 1081 (1981); *Sims v. KIRO, Inc.*, 20 Wash.App.

24 229, 233, 580 P.2d 642 (1978); Restatement (Second) of Torts § 558 (1977), *Bender v. City of Seattle*, 99 Wash. 2d 582, 599, 664 P.2d 492, 503 (1983).

25

1 status of Petitioner/Appellee. This status is important as there is a clear decrease in the

2 protections against invasions of privacy and defamation of character provided by law, if

3 someone is a "public figure" for a "limited range of issues." This applies when a party

4 "voluntarily injects [them]self or is drawn into a particular public controversy." *Gertz v. Robert*

5 *Welch, Inc.*, 418 U.S. 323, 351 (1974) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

6

7 Washington follows a five-part balancing test for identifying limited public figures.

8 The test considers whether:

9     (1) the plaintiff had access to channels of effective communication;
    (2) the plaintiff voluntarily assumed a role of special prominence in the public

10     controversy;
    (3) the plaintiff sought to influence the resolution or outcome of the controversy;

11     (4) the controversy existed prior to the publication of the defamatory statement; and
    (5) the plaintiff retained public-figure status at the time of the alleged defamation."[13]

12

13 Page 155 of the 222 page lower court record includes a post of a

14 "businessinsider.com" article, featuring Petitioner/Appellee, who provided public interviews

15 and engaged in ongoing activism related to Apple Inc., after alleging harassment in what is

16 described as a whistleblower filing. Petitioner/Appellee herself described in her own sworn

17 testimony that she utilized her public followers to heighten awareness and engage in public

18 activism, designed to reach a wide audience. In fact, Petitioner described using her public

19 presence to initially increase Respondent's public reach, as they both were involved in

20

21 activism and litigation, well before the alleged defamation.

22 There is more than sufficient proof of all five parts of the test above.

23 Petitioner/Appellee is and was a limited public figure as it related to ongoing employment

24

25 [13] *Clardy v. Cowles Publ'g Co.*, 81 Wn. App. 53, 60, 62 (1996).

26 ORDER              14           JUDGE ANDREA K. ROBERTSON
                                      KING COUNTY SUPERIOR COURT

1   issues at Apple, Inc. As such, Petitioner must prove that Respondent had actual malice in
2   making posts which were not truthful, before it would meet the legal definition of
3   "defamation," [14] which could then exempt that content from free speech protections.

4       However, there was no evidence of actual malice before the lower court behind
5   Respondent's posts. There was more than sufficient evidence of Respondent/Appellant's
6   intentions and aim in addressing or magnifying or responding to an ongoing dispute and
7   legal challenge. Respondent's expression of opinion in that context was not proved to be
8   motivated by malice, but rather by activism.

9       Even if Respondent's speculation as to Petitioner's role as a witness or agent of
10   Apple, Inc was not entirely accurate, Petitioner did not show sufficient basis for this to be
11   qualified as "defamatory" content. As such, there is no proof that the "opinion" posts of
12   Respondent could be exempted from free speech protections. And thus, those posts
13   cannot provide an alternate means to support a finding of "course of conduct" to justify the
14   lower court's restrictions on speech.

15       Overall, the Respondent's "re-posting" of public records and the "opinion" posts
16   constituted free speech which must be protected per case law and constitutional
17   protections. Accordingly, the lower court's ruling amounted to an unconstitutional prior
18   restraint on Respondent's speech.

19       IT IS HEREBY ORDERED that the above cause is: [ x ] REVERSED.

20       The matter is REMANDED to King County District Court for further proceedings
21   to be set for consideration related to the previously imposed order, in accordance with the
22   above decision.

23

24     [14]*New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Ciardy v. Cowles Pub. Co.*, 81 Wash. App.
    53, 55–56 (1996)

25

26   ORDER               15      JUDGE ANDREA K. ROBERTSON
                                     KING COUNTY SUPERIOR COURT

1    The Superior Court Clerk is directed to release any bonds to the Lower Court after
2    assessing statutory Clerk's fees and costs.

3

4    DATED:_September 26, 2022

5

6                                    _Electronic signature to follow_____
                                     JUDGE ANDREA K. ROBERTSON
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    ORDER                          16        JUDGE ANDREA K. ROBERTSON
                                               KING COUNTY SUPERIOR COURT

# King County Superior Court
## Judicial Electronic Signature Page

Case Number:    22-2-03849-7

Case Title:     SCARLETT vs GJOVIK (APPELLANT/KCD)

Document Title:   ORDER

Signed By:     Andrea Robertson

Date:          September 26, 2022

Judge:  Andrea Robertson

This document is signed in accordance with the provisions in GR 30.

Certificate Hash:     91CA01BD9E0F7B1F0FDDB8476C1BC53108D3369C

Certificate effective date:  1/6/2021 3:25:19 PM

Certificate expiry date:    1/6/2026 3:25:19 PM

Certificate Issued by:    C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
O=KCDJA, CN="Andrea Robertson:
yB71riJ16hG1sZ0o/CyjcQ=="

I BARBARA MINER Clerk of the Superior Court of the State of Washington for King County do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof IN TESTIMONY WHEREOF I have affixed this seal of said Superior Court at my office at Seattle on this date_____ NOV 1 4 2022_____

BARBARA MINER Superior Court Clerk

By_____

Deputy Clerk    T. KNOBLAUCH

# EXHIBIT J

Electronically Filed
12/2/2022 8:30:00 AM
22CIV01704KCX
King County District Court

**Ashley M. Gjovik (pro se)**

# IN THE KING COUNTY DISTRICT COURT
# IN AND FOR THE STATE OF WASHINGTON

## East Division, Redmond Courthouse

**KC DC No.:** 22CIV01704KCX
**Court of Limited Jurisdiction**
**Honorable Judge Lisa O'Toole**

**APPEALS & CHALLENGES:**
**KC SUPERIOR COURT NO:** 22-2-03849 SEA
**US DC AT SEATTLE No:** 2:22-CV-00807-RAJ-BAT

CHER SCARLETT, et al

Petitioner/Appellee,

v.

ASHLEY GJOVIK

Respondent/Appellant.

## Re: Reverse & Remand of Anti-Harassment Order

**Notice of Intention to File Motions upon Remand:**

**Motion for Dismissal with Prejudice**
- RCW 4.105.* - Unif. Public Expression Prot. Act
- RCW 4.24.510 – Comm to Gov Agency
- CRLJ12(h)(3) - Lack of Subject Matter Jurisdiction
- CRLJ13(a) - Inability to Join Indispensable Party
- CRLJ12(h)(2) - Failure to State a Claim
- RCW 49.32.050 – Jurisdiction of Labor Disputes

**Motions for Sanctions**
- Rule 11 Sanctions – Abusive Litigation
- RCW 4.84.185 – Fines for Frivolous Claims

**Motion for Relief from Judgement/Proceeding**
- CRLJ60(b)(1)&(4) – Surprise, Irregularity, Fraud, Misrepresentation, Misconduct
- CRLJ60(b)(5) – Judgement is Void
- CRLJ60(b)(11) – Equity (Unclean Hands)

# Notice of Intent Upon Remand

## 1.     Summary & Case History

The King County Superior Court reversed the prior judgement against Gjovik on September 26 2022 & send a mandate to the Court of Limited Jurisdiction for reverse and remand on November 17 2022.

This unfortunate matter was injected into the King County court system by Petitioner, Cher Scarlett, by her own admittance & under oath, <u>because of</u> an US NLRB charge Ashley Gjovik filed against Apple in January 2021 (2/1 Transcript), and further, Scarlett claimed Gjovik's supposed "harassment" of Scarlett started in early December 2021 when Gjovik had complained that "[Scarlett] was bullying [Gjovik]." (3/1 Transcript, pg 11). The crux of this lawsuit is Scarlett complaining that Gjovik's complaints of Scarlett's harassment & defamation of Gjovik, are somehow harassment of Scarlett.

Gjovik began reporting Apple Inc to the federal government in April of 2021 and filed her first formal charges against Apple in August of 2021. Scarlett began attacking Gjovik in June of 2021, escalating to public attacks in August of 2021, and then filed her own charges against Apple in September of 2021 which she later withdrew and accepted a settlement & payment from Apple around November 2021. Gjovik began to block Scarlett from communicating with her in August 2021 and completely blocked Scarlett in September 2021. Gjovik filed additional California and federal charges against Apple in January 2022 alleging witness intimidation and retaliation by a number of past and current Apple employees and managers, including but not at all limited to, Scarlett. Scarlett continued to attack Gjovik and Gjovik's cases against Apple for over a year, including this meritless and retaliatory litigation at hand.[1]

Much new evidence has come to light following the initial decision against Gjovik in this court, evidence which appears to begin to explain Scarlett's otherwise inexplicable and obsessive conduct towards Gjovik and further supports Gjovik's accusations of Apple Inc's culpability and liability for Scarlett's actions, including this lawsuit. Perhaps most important was the discovery in mid-March 2022, disclosed by Apple Inc & after Gjovik's gag-order, that Scarlett had filed a

---

[1] See docket & court filings for this matter, for the Superior Court appeal, and in Gjovik's attempted Constitutional Challenge in US District court – including Scarlett's own statements, briefs, & evidence

"Business Conduct" complaint against Gjovik to Apple on September 15 2021, while Scarlett still worked for Apple Global Security & Legal, alleging Gjovik had violated some Apple policy & included personal communications between Scarlett and Gjovik resulting from Scarlett requesting private information from Gjovik about Gjovik's dispute with Apple. (See Superior Court Exhibits). None of the information provided by Scarlett was actually material to Gjovik's cases, as admitted by Scarlett. However, under information & belief, Scarlett submitted this complaint & provided this information to Apple as part of her settlement agreement. At the same time Scarlett had been speaking to the press & making public statements requesting additional whistleblowers contact her and provide her with private information about their own disputes with Apple.

Regardless of Scarlett's intentions with the second point, it is clear she became obsessed with covering up what she did to Gjovik as it would cause much controversy with her now being held out as a "labor leader" among Apple employees.[2] As such, Scarlett set out to discredit both Gjovik and Gjovik's charges against Apple, no doubt in hope that Gjovik's case would never be decided on the merits where it may come to light what Scarlett did in September of 2021. This lawsuit is clearly part of Scarlett's cover-up and is an extension of her self-admitted long-running history of fraud. (see Scarlett's own court filings noting check fraud, student loan fraud, business fraud, etc). Scarlett made much of Gjovik's comments about Scarlett's husbands criminal record, but failed to disclose the crux of Gjovik's concerns about Scarlett's husband –his criminal record included making false statements & obstruction of law enforcement, & this was directly relevant to Gjovik's allegations of fraud by Scarlett.

Under information & belief, Apple orchestrated the situation to manipulate Scarlett into attacking Gjovik in ways that benefited Apple but which Scarlett may have believed were for her own self-preservation due to Apple's coercion. As such, and discussed later, Apple is an indispensable party in this matter – and the primary and exclusive jurisdiction for this matter is the California and federal agencies where this matter was under review long before Scarlett injected this dispute into the Washington court system – wasting much time & resources within the Washington court system, as well as implicating the state of Washington in Apple & Scarlett's witness intimidation efforts against Gjovik.

---

[2] The Washington Post, *"She pulled herself from addiction by learning to code. Now she's leading a worker uprising at Apple."* Oct 14 2021

Without this information, and after hours of manipulative, fraudulent, and highly inflammatory testimony by Scarlett - this Court of Limited Jurisdiction decided against Ashley Gjovik on March 1 2022. Gjovik appealed the decision to the King County Superior Court, raising 16 issues and errors from this trial court. Gjovik also brought the matter to a U.S. District Court arguing preemption & challenging the state of Washington's anti-harassment statutes as violating the U.S. Constitution facially & applied, however Gjovik's case was dismissed under the *Rooker-Feldman Doctrine* as a state appeal was underway. [3]

On September 26 2022, after reviewing the briefs and trial record and only deciding on a subset of the raised issues, a Superior Court judge issued an order reversing the decision of the Court of Limited Jurisdiction and finding Gjovik's conduct to be "protected per case law and constitutional protections." (KCSC Order pg 15). [4]  Even without reviewing Gjovik's allegations or evidence of Scarlett's fraud, unclean hands, or the court's lack of subject matter jurisdiction - Superior Court Judge Robertson found the Court of Limited Jurisdiction's ruling still "amounted to an unconstitutional prior restraint on [Gjovik]" and the decision was "entered in error." (Id). [5] The Superior Court found no evidence to justify a five-year order, nor any evidence of directed conduct to justify any order restricting distance and other prohibitions of direct contact. (KCSC Order pg 9). [6] The Superior Court found "no evidence of actual malice" by Gjovik and instead said the evidence about Gjovik's "expression of opinion… was not proved to be motivated by malice, but rather by activism." (Id). [7]

Scarlett did not file Motion for Reconsideration or Notice of Appeal. [8] The Superior Court transmitted their mandate to the Court of Limited Jurisdiction on Nov 17 2022. [9]

## 2. Remand Leading to Additional Proceedings

---

[3] Gjovik v state of Washington, etc all, 2:22-cv-00807-RAJ-BAT, US District Court in the Western District of Washington
[4] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[5] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[6] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022, *"Despite the lack of "direct" communication to Petitioner, as conceded under oath, the court imposed distance restrictions, prohibitions against surveillance, and prohibitions against direct/third person communications to Petitioner. The court made no specific findings to support the extra length of the order (five years)."* Pg9
[7] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Order, September 26 2022
[8] LRALJ 9.2 Entry of Decision; LCR 59
[9] LRALJ 12.1 Mandate; *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Mandate of Superior Court on RALJ Appeal

The Superior Court's Mandate is unclear if it calls for a new trial in the Court of Limited Jurisdiction. RALJ 9.1 states that the Superior Court may "reverse, affirm, or modify" OR "remand the case." The use of "or" instead of "and" implies a reverse of the decision does not call for further proceedings.[10] However, the Mandate itself states the lower court decision is reversed AND "this Matter is remanded to the Court of Limited Jurisdiction."[11]

Gjovik files this Notice in anticipation of the potential for further proceedings. However, if the Court of Limited Jurisdiction agrees with the Superior Court decision, & simply reverses the prior decisions, this Notice will be moot.

## 3. Notice of Intent to Re-Up Prior Filed Motions to Dismiss with Prejudice

If the remand of the case by the Superior Court leads to additional proceedings in the Court of Limited Jurisdiction, Gjovik submits notice of her intent to preserve a number of previously filed motions & to file additional motions on the matter. Gjovik intends to preserve her previously filed motions, which were never ruled on by the Court of Limited Jurisdiction, including under RCW 4.105.010-903[12] & RCW 4.24.510.[13] Gjovik also plans to request payment from Scarlett for Gjovik's legal costs, attorney's fees, & other expenses from dealing with this ordeal following the meritless & retaliatory petition & smear campaign by Scarlett. (RCW 4.24.510[14]; RCW 4.105.090[15]).

Gjovik plans to modify her motion for RCW 4.24.510, a witness protection statute, and request the full statutory fine of $10,000.00 from Scarlett instead of Gjovik's previous good faith waiver of the fine last February[16] as Scarlett has continued to harass, defame, and intimidate

---

[10] RALJ 9.1(e)

[11] *Scarlett v Gjovik*, KCSC, No 22-2-03849-7 SEA, Mandate of Superior Court on RALJ Appeal

[12] RCW 4.105 UNIFORM PUBLIC EXPRESSION PROTECTION ACT

[13] RCW 4.24.510 Communication to government agency or self-regulatory organization—Immunity from civil liability. *"A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization."*

[14] RCW 4.24.510 *"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense"*

[15] RCW 4.105.090 Costs, attorneys' fees, and expenses. *"the court shall award court costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion"*

[16] RCW 4.24.510: *"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages*

Gjovik following the order against Gjovik, including reporting one of Gjovik's federal legal filings to a webservice as "child porn."

Notes on the intent of RCW 4.24.510 explains: *"SLAPP suits are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution."* The Superior Court found that not only were Scarlett's allegations not supported by evidence to prove unlawful conduct, but the outcome of Scarlett's petition, (which Gjovik additionally argues was obtained by fraud, surprise, & other misconduct by Scarlett) did in fact chill Gjovik's *"exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution"*.

Gjovik's initial RCW 4.105 Anti-SLAPP motion rightful explained (now affirmed in part by the Superior Court judge):

> "Scarlett failed to establish a prima facie case as to each essential element of harassment, thus … the case should be dismissed with prejudice & noting … that Gjovik prevailed under the motion. Scarlett's request for a harassment order against Gjovik is not grounded in fact or law. The request also serves an improper purpose as it attempts to further intimidate and retaliate against a federal and California state witness, victim, and informant. Scarlett's request is an extension of her concerted effort to coerce Gjovik to withdraw, alter, and omit statements to government bodies, statements on issues under consideration by government bodies, and to chill, if not restrict, Gjovik's First Amendment free speech on matters of public concern…. UPEPA (RCW 4.105.010) applies to no-contact orders (9) if the requested order against Respondent arises from any act of Respondent, related to the gathering, receiving, posting, or processing of information for communication to the public, for the creation, dissemination, exhibition, or promotion of a literary, political, or journalistic work regardless of the means of distribution, no matter the method or extent of distribution."
> (*Feb 14 2022 Motion for Continuance & Notice of Intent to File Motion for Anti-SLAPP*, pg 2-3).

Gjovik's initial 4.24.510 motion also rightfully captured Scarlett's intent with this litigation:

> "Scarlett threatened, harassed, and coerced Gjovik to withdraw allegations about her from Gjovik's government charges to at least the U.S. NLRB. Scarlett is using this this petition to further intimidate Gjovik and is using a civil action to deter Gjovik who simply wishes to report information to federal agencies. RCW 4.24.510 was enacted to protect whistleblowers exactly like Gjovik from actors exactly like Scarlett."
> (*Feb 14 2022, Motion to Dismiss due to Public Policy*, pg 3)

---

*of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith."*

Indeed, Gjovik objected in this court room on March 1 2022 that Scarlett was "trying to compel [Gjovik] to testify on [Gjovik's] federal charges" which named Scarlett as an agent of Apple in Apple's retaliation against Gjovik for Gjovik's protected activity.

During trial, Gjovik introduced numerous witness statements and evidence of posts and communications from third parties concurring Gjovik's view on this matter & that Scarlett was indeed the one attacking Gjovik, not the other way around. (2/14-3/1/2022 Witness Statements; Gjovik Evidence; DARVO addendum). Scarlett's response was generally the same to all parties – Scarlett would then claim her conduct towards Gjovik was justified because, she claimed, Gjovik's lawsuits & charges against Apple were "meritless," "perjury," and "lies." Scarlett has not been able to find a single 3rd party willing to make a statement under oath in support of Scarlett's allegations against Gjovik. In fact, before Gjovik was served for this matter, one of Scarlett's own named witnesses suggested Gjovik request a restraining order against Scarlett, not the other way around.


## 4. Intention to File New Motions to Dismiss & Vacate

A significant amount of additional evidence has come to light following the March 1 2022 decision. Gjovik intends to file a motion for the court to relieve Gjovik from a final judgment, order, and/or proceeding: due to mistake, surprise, & irregularity in Scarlett obtaining the judgement/order (CRLJ60-b-1); due to fraud, fraud on the court, and other misconduct by Scarlett (CRLJ60-b-4); the judgement as void due to lack of subject matter jurisdiction, inability to join indispensable party (Apple Inc), and due to decision by Superior Court reversing prior judgement (CRLJ60-b-5); & other reasons justifying relief from the judgement/proceedings (CRLJ60-b-11). [17] This includes misconduct by Gjovik's attorney related to the March 1 2022 hearing, including but not limited to, Gjovik's attorney failing to even notify Gjovik that Scarlett offered to settle the matter outside court before the hearing. Gjovik's attorney, Mr. Blair, received a warning from the Washington Bar Association for that misconduct.[18]

Gjovik also plans to motion for dismissal due to Scarlett's failure to state a claim upon which relief can be granted & failure to join a party indispensable to the matter at hand (e.g.

---

[17] CRLJ 60 RELIEF FROM JUDGMENT OR ORDER
[18] Washington State Bar Association, ODC File No. 22-00809

Apple Inc). CRLJ12(h)(2). Scarlett's own filings and testimony, and the District & Superior court records revealed all of the supposedly "private" information Scarlett protested was actually public information and/or shared broadly by Scarlett herself including names, criminal histories, and quotes made by Scarlett to large publishers and the press. In fact, in Superior Court, Scarlett would also admit her allegations of extortion and blackmail by Gjovik were based on a conversation Scarlett was not part of, nor had she viewed, and upon viewing she realized "that it was not Ms. Gjovik's idea to extort." (Scarlett's Brief)[19] Further, Scarlett's allegations about Gjovik related to Wikipedia, were not only baseless but actually more fraud, as it was Scarlett who had made harassing and disparaging edits to Gjovik's biography article for nearly a year before finally getting caught & banned by Wikipedia on November 21 2022. [20] [21]

Gjovik also intends to motion for dismissal with prejudice due to lack of subject matter jurisdiction, something she objected to frequently in all hearings she was present at & has her arguments have been further strengthened by evidence acquired after the March 1 2022 hearing. CRLJ12(h)(3). There is clearly federal preemption of this matter under 18 U.S. Code § 1514 & the All Writs Act (as well as RCW 5.105.010(2)(b-c) & RCW 4.24.500).

There is additionally no subject matter for this court under RCW 49.32.050 & the Garmon & Machinist doctrines of NLRA preemption. (see Superior Court Appellant Brief). These arguments are further strengthened by the discovery that Apple's defense lawyers (the firm MWE) requested copies of the recordings from the hearings in this matter, no doubt to make their own transcripts & use them in Apple's defense of Gjovik's allegations of harassment by Scarlett on behalf of Apple. If there was no overlap of Gjovik's pending NLRB (and other agency) charges which named Scarlett, Apple's lawyers would have no interest in going to the

---

[19] Scarlett v Gjovik, KCSC, No 22-2-03849-7 SEA, Brief of the Appellee (Scarlett), September 26 2022
[20] Wikipedia editors/administrators: "*We'll start with the obvious connection here: CodeHitchhiker is Cher Scarlett (voluntarily acknowledged, verified by GorillaWarfare)… The fact is clear here that they are the same person…. I'd call this  Likely from a technical perspective….I am blocking CodeHitchhiker indefinitely as a suspected sockpuppet. Due to the BLP implications here, I will blank and categorize her userpage in lieu of tagging. @CodeHitchhiker: This is a shame.*"
https://en.wikipedia.org/w/index.php?title=Wikipedia:Sockpuppet_investigations/SquareInARoundHole&oldid=1123071985
[21] Wikipedia editors/administrators: "It seems Bobrossghost was also used for months for socking at Ashley Gjøvik. We can say that Gjøvik was herself not wrong by accusing SquareInARoundHole of harassment.[17] This whole chapter looks like a clear case of WP:NOTHERE."
https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/SquareInARoundHole/Archive

trouble of requesting, listening to, and transcribing hours of hearings on this matter. (see CLJ Docket "Request for Copy" on 4/6/22 & 3/4/22).

## 7. Conclusion

Finally, Gjovik also requests for Judge O'Toole's consideration of referring this matter to the local District Attorney's office for review of possible witness intimidation and perjury charges against Scarlett under RCW 9A.72,[22] RCW 9.62.010,[23] or similar due to Scarlett's egregious misconduct in this matter and her history of self-admitted fraud and financial crimes again governments and institutions. Perhaps most disturbing in this matter was Scarlett's ex parte testimony on February 1 2022 where she claimed the US NLRB suggested she seek legal or law enforcement intervention against Gjovik – an allegation that the US NLRB Asst. General Counsel denied in writing, saying they never told Scarlett anything about the merits of my cases or gave her any advice on taking any sort of legal action against me. (see Superior Court Exhibits).

In conclusion, I submit this notice of intention to file additional motions if further proceedings are called for. If Scarlett would prefer to request dismissal of her petition & this case, Gjovik would agree to have the matter dismissed.[24]

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Respectfully submitted,

**Ashley M. Gjovik (pro se)**
Dated: December 1 2022

---

[22] RCW 9A.72 PERJURY AND INTERFERENCE WITH OFFICIAL PROCEEDINGS.
[23] RCW 9.62.010 Malicious prosecution.
[24] CRLJ 41 DISMISSAL OF ACTIONS: *(1) Mandatory. Any action shall be dismissed by the court: (i) By stipulation. When all parties who have appeared so stipulate in writing; or (ii) By plaintiff before resting. Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of plaintiff's opening case. (2) Permissive. After plaintiff rests after plaintiff's opening case, plaintiff may move for a voluntary dismissal without prejudice upon good cause shown and upon such terms and conditions as the court deems proper.*
https://www.courts.wa.gov/forms/?fa=forms.contribute&formID=60
https://www.courts.wa.gov/forms/documents/FL%20All%20Family%20163%20Motion%20for%20Dismissal.doc

# EXHIBIT K

**KING COUNTY DISTRICT COURT**
**STATE OF WASHINGTON**
**EAST DIVISION, REDMOND COURTHOUSE**

| | |
|---|---|
| Cher Swan Scarlett<br><br>        Plaintiff(s),<br><br>   v.<br><br>Ashley Marie Gjovik<br><br>        Defendant(s). | No. 22CIV01704KCX<br><br>**JUDICIAL REVIEW** |

The Court has reviewed the decision of the King County Superior Court issued on appeal from the trial court (King County District Court). The Superior Court found that the protection order issued in this case was unlawful for two reasons: first, because it was improperly issued for 5 years (rather than 1 year) without the necessary findings to permit a 5-year order, and second, because the "course of conduct" at issue in the case involved constitutionally protected free speech. The Superior Court further elaborated that of the two categories of speech considered by the Court at the hearing---(a) reposting by the Respondent of public records and other information already in the public domain, and (b) the opinions posted by the Respondent---both were constitutionally protected free speech, and so neither could form the basis for the "course of conduct" required to support an anti-harassment protection order.

The Court has also received a document filed by the Respondent which outlines numerous motions for dismissal, sanctions, and other forms of relief. The Court has reviewed and considered these motions. However, in light of the Superior Court's ruling on appeal, this Court finds that dismissal without prejudice is the appropriate remedy, due to the Superior Court's opinion issued in the RALJ appeal.

WHEREFORE: In accordance with the King County Superior Court's opinion on appeal, the protection order is VACATED and the case is DISMISSED without prejudice. The Respondent's additional motions are DENIED.

Dated: <u>December 12, 2022</u>

_E. Rania Rampersad_
_____
Judge E. Rania Rampersad

# EXHIBIT L

No. 22-430

# In the Supreme Court of the United States

———————

CHARLES BARTON and NATHAN SANDERS,

*Petitioners*,

v.

STATE OF TEXAS,

*Respondent.*

———————

*On Petition for Writ of Certiorari to the
Court of Criminal Appeals of Texas*

———————

**Brief of *Amicus Curiae* Electronic Frontier
Foundation in Support of Petitioners**

———————

EUGENE VOLOKH
*Counsel of Record*
UCLA SCHOOL OF LAW
385 Charles E Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
*volokh@law.ucla.edu*

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of Contents.............................................................i

Table of Authorities.......................................................ii

Interest of *Amicus Curiae* ...........................................1

Summary of Argument ................................................1

Argument ....................................................................4

I.  Texas's Harassment Law, and Similar State Laws, Wrongly Cover a Broad Range of Fully Protected Speech....................................4

    A.  Criticism of Politicians ...................................4

    B.  Criticism of Police Officers ............................7

    C.  Criticism of Religious Figures ........................9

    D.  Criticism of Political Activists......................10

    E.  Criticism of Professionals or Businesses ......12

    F.  Criticism of Exes ..........................................13

II.  An Overbroad Harassment Statute Like Texas's Is Not Saved Simply Because It Requires an "Intent to Harass"........................15

III. Unwanted Speech Said *About* a Person to Willing Listeners Is Generally Protected...........17

Conclusion...............................................................19

Alice Zeoli, a leading American Tibetan Buddhist religious figure. *United States v. Cassidy*, 814 F. Supp. 2d 574, 578-579 (D. Md. 2011). The prosecutors in that case argued that the tweets violated a federal statute prohibiting "a course of conduct [using the mail or interactive computer services] that caused substantial emotional distress to a person . . . with the intent to harass and cause substantial emotional distress." *Id.* at 580.

Yet the court concluded that the statute was "invalid as applied" to Cassidy's speech. *Id.* at 587. The court noted that the messages were sent to a broad audience rather than being "e-mails or phone calls directed to a victim." *Id.* at 585-86. It further explained that the statute "sweeps in the type of expression that the Supreme Court has consistently tried to protect." *Id.* at 586. "[T]he Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern." *Id.* at 582 (citing, among other cases, *Hustler v. Falwell* and *Snyder v. Phelps*).

The *Cassidy* court therefore held, correctly, that the First Amendment protected Cassidy's speech. But again, the Texas Court of Criminal Appeals' reasoning would authorize punishing such speech under the Texas statute, simply by labeling it "conduct."

### D. Criticism of Political Activists

Harassment laws have likewise been used to restrict speech criticizing political activists. Thus, for instance, a Washington state district court recently concluded that a political activist's criticism of a former fellow activist could be harassment that would justify

a broad restriction on speech. *See Scarlett v. Gjovik*, No. 22-2-03849-7 SEA, 2022 WL 4541046, at *4 (Wash. Super. Ct. Sep. 26, 2022). Cher Scarlett and Ashley Gjovik had co-founded a whistleblower campaign against Apple, *id.* at *2, but had a falling out, and Scarlett sought an anti-harassment order based on Gjovik's public online speech about her. *Id.*

The district court concluded that Gjovik's speech was "clearly designed to upset Ms. Scarlett," that "[f]ree speech can be curtailed in many ways," and that a "course of conduct" can be restricted when it is "designed to alarm, annoy, or harass." *Id.* at *4. Because of this, the court granted an injunction barring Gjovik from "mak[ing] any statements or posts or other publications" about Scarlett on "any social media or internet or other medium." *Id.* And the court did not rely on any finding that the speech was libelous: Rather, it reasoned that, "[w]hether it's true or not doesn't matter in an antiharassment order." *Id.*

But on appeal, the Superior Court vacated the order:

> The lower court in this matter seemed to require a "lawful purpose" behind the Respondent's postings of public records. But our state constitution does not allow for that consideration or restriction on free speech . . . . There is no categorical "harassment exception to the First Amendment's free speech clause."

*Id.* at *6 (citations omitted). Under the Texas decision below, such First Amendment protections would be unavailable, again because such speech would be labeled unprotected "conduct." *See also McCauley v. Phillips*, No. 2016-70000487 (Cal. Super. Ct. Sacra-

mento Cty. Sept. 8, 2016) (issuing a similar anti-harassment injunction on behalf of one political activist against another), *appeal dismissed on procedural grounds*, No. C083588, 2018 WL 3031765 (Cal. Ct. App. June 19, 2018); Volokh, 45 Harv. J.L. & Pub. Pol. at 158 (discussing *McCauley* in more detail).

### E. Criticism of Professionals or Businesses

Overbroad anti-harassment statutes are also used to silence criticism of professionals and businesses, in violation of the First Amendment. In *Welytok v. Ziolkowski*, for instance, a Wisconsin man attempted to publicize an attorney's record of having been suspended for three years from the practice of law for defrauding a client. 312 Wis. 2d 435, 446 (2008). Wisconsin's harassment statute restricts speech that has "no legitimate purpose" and is "inten[ded] to harass or intimidate another person." *Id.* at 453. The appeals court affirmed the trial court's injunction against the speech, *id.* at 459, on the grounds that the defendant was motivated by hostility arising out of a past real estate lawsuit in which the defendant was defeated by the plaintiff. *Id.* at 460-61. *See also* Civil Harassment Restraining Order, *Gabueva v. Romanenko*, No. CCH-19- 581819, at 2 ¶ 6.a.4 (Cal. Super. Ct. S.F. Cty. July 26, 2019) (involving a similar anti-harassment injunction issued on behalf of a lawyer, against another lawyer who had been criticizing her); Volokh, 45 Harv. J.L. & Pub. Pol. at 158-59 (discussing *Gabueva* in more detail).

Yet accurate information about an attorney's disciplinary record like that in *Welytok* is generally constitutionally protected, and potentially valuable to consumers. Business review sites such as Yelp are