**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY M. GJOVIK**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES** |
| vs. | *In Opposition to Defendant's Fourth Motion to Dismiss* **Fed. R. Civ. P. § 12(b)(6)** |
| **APPLE INC.**, a corporation, | **Motion Hearing & Case Management Conference:** |
| Defendant. | Dept: Courtroom 5 (Zoom) Judge Edward M. Chen Date: August 22, 2024 Time: 1:30 PM PT |

# TABLE OF CONTENTS

## CONTENTS

I.    **Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Claims, Again** ................................................................................ 1

II.    **Statements Of Facts** .............................................................. 1

III.    **Issues to be Decided** ............................................................ 1

IV.    **Arguments** ........................................................................... 1

    A.    Defendant misrepresented Plaintiff's Fourth Amended Complaint. ... 1

    B.    The majority of Defendant's arguments are barred by Rule 12(g) and 12(h). ............................................................................................. 3

    C.    Cal.Lab.C. Section 1102.5 alleges a sufficient amount of statutes to proceed. .......................................................................................... 6

    D.    Plaintiff's request for civil penalties is not time barred. ................. 11

    E.    Plaintiff made numerous protected Cal.Lab.C. Section 6399.7 complaints under Section 6310. ........................................................ 12

    F.    Claims for Cal.Lab.C. Section 1101, 1102, 232, and 232.5 are sufficient and/or can be sufficient with increased page limits, and dismissal on the pleadings was waived. ................................................................ 13

    G.    There is probably a private right of action for 96k claims, but if there's not, the claim supports the policy for a *Tamney* ConTort claim. ....... 16

    H.    The UCL Section 17200 claim is viable for injunctive relief. ........... 18

    I.    IIED claims are sufficiently pled; the IIED Cancer claim was already approved to move forward. ................................................................ 19

    J.    The Private Nuisance, Ultrahazardous Activities, and IIED/Cancer claims are not time barred. ............................................................... 21

    K.    The Ultrahazardous Activities claim states a claim for Ultrahazardous Activities; it was already approved to move forward. ............................... 22

V.    **Conclusion** ....................................................................... 28

— ii —

1

# I. Table of Authorities

2

**Cases**

3

*Aetna Life Ins. Co. v. Alla Med. Services, Inc*. (9th Cir. 1988) 855 F2d 1470, 1476-
1477. ............................................................................................................... 5

4

*Aetna Life Ins. Co. v. Alla Med. Servs. Inc.,* 855 F.2d 1470, 1475-77, n. 2 (9th Cir.
1988) ............................................................................................................... 5

5

*Aetna Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988). ...... 3

6

*Aetna Life Ins. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) . 4

7

*Aetna Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988). ...... 4

Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.), supra, 197 CA3d at 1142, 243 CR at
424, fns. 5 & 6 ................................................................................ 23

8

*Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.),* supra, 197 CA3d at 1143, 243 CR at
424. ................................................................................................................. 25

9

*Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.),* supra, 197 CA3d at 1143, 243 CR at
424; Luthringer v. Moore, supra, 31 C2d at 498, 190 P2d at 7 ..................... 25

10

*Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir. 1987), ................. 26

11

*Allstate Ins. Co. v. Countrywide Financial Corp.,* 824 F. Supp. 2d 1164, 1175 (C.D.
Cal. 2011). ....................................................................................................... 3

12

*Alvarez v. Hill* (9th Cir. 2008) 518 F3d 1152, 1158; *Wilson v. Birnberg* (5th Cir.
2012) 667 F3d 591, 595. ................................................................................ 18

13

*Anderson v. Teck Metals, Ltd.*, No. CV-13-420-LRS, 10-14 (E.D. Wash. Jan. 5,
2015). ............................................................................................................. 26

14

*Baker v. Burbank-Glendale-Pasadena Airport Auth.* (1985) 39 C3d 862, 868-869,
218 CR 293, 297; ........................................................................................... 21

15

*Balding v. D.B. Stutsman, Inc.* (1966) 246 CA2d 559, 564, 54 CR 717, 720. ........ 25

16

*Barbee v. Household Automotive Finance Corp.*, 113 Cal.App.4th 525, 533-34 (Cal.
Ct. App. 2003). ................................................................................................17

17

*Barbee v. Household Automotive Finance Corp.*, 113 Cal.App.4th 525, 536 (Cal. Ct.
App. 2003) .......................................................................................................17

18

*Birdsong v. Apple, Inc.* , 590 F.3d 955, 960-61 (9th Cir. 2009) ......................... 18

19

*Brandon v. Rite Aid Corp., Inc.* (ED CA 2006) 408 F.Supp.2d 964, 982. ........... 20

20

*Burton v. Ghosh*, 961 F.3d 960, 967-968 (7th Cir. 2020). ................................... 4

*Cahen v. Toyota Motor Corp.* , 147 F. Supp. 3d 955, 972 (N.D. Cal. 2015) .......... 18

21

*California-American Water Co. v. Marina Coast Water Dist.,* 86 Cal. App. 5th
1272, 303 Cal. Rptr. 3d 227 (1st Dist. 2022), review denied, (Mar. 29, 2023). 22

22

*Campbell v. Hawaii Dept. of Ed.* (9th Cir. 2018) 892 F3d 1005, 1017 ................ 21

23

*Carrasco v. Craft* (1985) 164 CA3d 796, 808-809, 210 CR 599, 607..................... 4

24

*Cervantes v. City of San Diego* (9th Cir. 1993) 5 F3d 1273, 1275 ....................... 22

25

26

27

28

*cf.In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) ....... 18

*Continental Culture Specialists, Inc.* (1992) 2 C4th 744, 756, 7 CR2d 808, 816 .. 20

*Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F3d 683, 697 (en banc). ....................................................................................................... 19

*Delfino v. Agilent Technologies, Inc. (2006) 145 CA4th 790, 809, 52 CR3d 376, 392.* ........................................................................................................... 19

*Doe v. White*, No. 08–1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) ...... 3

*Dutton v. Rocky Mountain Phosphates,* 151 Mont. 54, 438 P.2d 674, 680 (1968) .. 25

*Dutton v. Rocky Mt. Phosphates*, 151 Mont. 54, 438 P.2d 674 (1968) ................. 27

*Edwards v. Post Transp. Co.* ............................................................................. 25

*Edwards v. Post Transp. Co.*, supra, 228 CA3d at 983, 279 CR at 232. ............... 22

Edwards v. Post Transp. Co., supra, 228 CA3d at 985, 279 CR at 233 .............. 23

*Edwards v. Post Transp. Co.*, supra, 228 CA3d at 985, 279 CR at 233): .............. 23

*Faragher v. City of Boca Raton* (1998) 524 US 775, 789, 118 S.Ct. 2275, 2284. ... 21

*Fed. Agr. Mortgage Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) ........................................... 5

*Fleeman v. Cnty. of Kern*, No. 1:20-cv-00321, 2023 WL 8375658, at *6 (E.D. Cal. Dec. 4, 2023). ................................................................................................ 15

*Folkerson v. Circus Circus Enterprises*, Inc. (9th Cir. 1997) 107 F3d 754, 756 ..... 21

*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.*, 24 Cal. 3d 458, 156 Cal. Rptr. 14, 595 P.2d 592 (1979). ............................................................................... 15

*Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 816-17 .............................. 18

*Gotreaux v. Gary*, 232 La. 373, 94 So.2d 293 (1957) ........................................ 27

*Grinzi v. San Diego Hospice Corp.* (2004) 120 CA4th 72, 87, 14 CR3d 893, 903-904. ............................................................................................................... 16

*Hamman v. Cava Grp.*, 22-cv-593-MMA (MSB), 5 (S.D. Cal. Dec. 4, 2023). ...... 4

*Harmon v. Billings Bench Water Users Ass'n*, 765 F.2d 1464, 1468 (9th Cir. 1985). ...................................................................................................................... 25

*Hernandez v. City of San Jose*, 241 F.Supp.3d 959, 984–85 (N.D. Cal. 2017). ...... 3

*Herron v. Best Buy Stores, LP*, No. 12-CV-02103-GEB-JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013) ....................................................................... 5

*Hobart v. Sohio Petroleum,* 255 F. Supp. 972, 975, *aff'd* 376 F.2d 1011 (D.C. Miss. 1966). ............................................................................................................ 28

*Howe v. Target Corp.*, Case No. 20-cv-252-MMA (DEB), 20 n.5 (S.D. Cal. Sep. 19, 2020) .......................................................................................................... 17

*In re Anthem, Inc. Data Breach Litigation*, Case No. 15-MD-02617-LHK, 79-80 (N.D. Cal. May. 27, 2016). ............................................................................... 3

*In re Apple iPhone Antitrust Litig.*, 846 F.3d at 318 ........................................... 4

*In re E. 1. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, Civil Action 2:13-md-2433, 29-30 (S.D. Ohio Jul. 6, 2015). ........................................................ 27

*In re Packaged Seafood Prods.*, 277 F. Supp. 3d 1167, 1173-74 (S.D. Cal. 2017). .... 5

*Intel Corp. v. Hamidi* (2003) 30 C4th 1342, 1347, 1 CR3d 32, 37. ........................19

*Johnson v. City of Shelby, Miss.* (2014) 574 US 10, 11-12, 135 S.Ct. 346, 347 (per curiam) ................................................................................................................17

*Kajiya v. Department of Water Supply* , 2 Haw. App. 221, 629 P.2d 635, 639 (1981). ........................................................................................................... 27

*Killgore v. SpecPro Professional Services, LLC,* 51 F.4th 973 (9th Cir. 2022)....... 10

*Kiseskey v. Carpenters' Trust for Southern Calif.* (1983) 144 CA3d 222, 229-230, 192 CR 492, 496) ............................................................................................... 20

*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 C5th 703, 712, 289 CR3d 572, 577. ...........................................................................................................11

*Lipson v. Sup.Ct. (Berger)* (1982) 31 C3d 362, 374, 182 CR 629, 637, fn. 7; ........ 23

*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 C.2d 481, 484, 171 P.2d 21; *Ali v. L.A. Focus Publication* (2003) 112 C.A.4th 1477, 1486, 5 C.R.3d 791 ......15

*Loe v. Lenhardt*, 227 Or. 242, 362 P.2d 312 (1961) ............................................... 27

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 681-82 (N.D. Cal. 2021). ................. 18

*Luthringer v. Moore* (1948) 31 C2d 489, 496, 190 P2d 1, 5 ................................. 22

*Luthringer v. Moore*, 31 Cal.2d 489, 190 P.2d 1 (1948) ........................................ 27

*Luthringer v. Moore*, 31 Cal.2d 489, 497 (Cal. 1948)............................................ 26

*Luthringer v. Moore*, 31 Cal.2d 489, 497 (Cal. 1948)............................................ 26

*Luthringer v. Moore,* supra, 31 C2d at 498, 190 P2d at 7. ................................... 23

*Mathews v. Happy Valley Conference Ctr., Inc.* (2019) 43 CA5th 236, 267, 256 CR3d 497, 524 ...................................................................................................11

*McLane v. Northwest Natural Gas Co* ................................................................. 25

*MGA Entertainment, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 254 Cal. Rptr. 3d 314 (2d Dist. 2019), review denied, (Feb. 11, 2020). ................................... 22

*Pearce v. Briggs,* 283 Cal.Rptr.3d 608 .............................................................. 22

*Potter v. Firestone Tire & Rubber Co.* (1993) 6 C.4th 965, 1000, 25 C.R.2d 550, 863 P.2d 795, ..........................................................................................................19

*Romo v. Wells Fargo Bank, N.A.*, Case No. 15-cv-03708-EMC, 3-4 (N.D. Cal. Jun. 28, 2016).............................................................................................................. 5

*Romo v. Wells Fargo Bank, N.A.*, Case No. 15-cv-03708-EMC, 3-4 (N.D. Cal. Jun. 28, 2016).............................................................................................................. 5

*Ross v. County of Riverside*, 36 Cal. App. 5th 580, 248 Cal. Rptr. 3d 696 (4th Dist. 2019), review denied, (Sept. 25, 2019) .................................................... 10

*Rulon-Miller v. International Business Machines Corp.* (1984) 162 C.A.3d 241, 255, 208 C.R. 524 ...................................................................................................... 20

*Schuck v. Beck*, 497 P.3d 395, 416 (Wash. Ct. App. 2021). ............................... 27

*Schwartz v. Apple Inc.* (In re Apple iPhone Antitrust Litig.), 846 F.3d 313, 319 (9th Cir. 2017). ............................................................................. 3

*Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 920-21 (10th Cir. 1981) ............. 24

*Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 920-21 (10th Cir. 1981). ............. 24

*Smith v. Lockheed Propulsion Co.*, supra, 247 CA2d at 786, 56 CR at 138;......... 25

*Spar v. Pacific Bell* (1991) 235 CA3d 1480, 1485, 1 CR2d 480, 483. ................. 21

*State Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (1983).... 26

*Tam v. Qualcomm, Inc.*, 300 F.Supp.3d 1130, 1150 (S.D. Cal. 2018)...................15

*Tilkey v. Allstate Ins. Co.* (2020) 56 C.A.5th 521, 556, 270 C.R.3d 559 ............ 20

*United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, No. 16-cv-737, 2017 WL 3174542, at *9 (S.D. Cal. July 26, 2017)...............................................15

*United States v. Molen,* No. 2:10-cv-02591 MCE KJN PS, 4-5 (E.D. Cal. May 9, 2011). .......................................................................................... 5

*Wilshire Westwood Assocs. v. Atlantic Richfield Co.* (1993) 20 CA4th 732, 743, 24 CR2d 562, 568 ............................................................................. 21

*Wilshire Westwood Assocs. v. Atlantic Richfield Co.* (1993) 20 CA4th 732, 743-745, 24 CR2d 562, 568-569. .................................................................. 21

*Wong v. Jing* (2010) 189 CA4th 1354, 1378-1379, 117 CR3d 747, 768-769...........19

*Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir. 1986). ..................... 4

**Statutes**

2023 Senate Bill No. 497 (Chapter 612) ........................................................ 6

29 C.F.R. Sec. 1910.1200 .........................................................................13

33 U.S.C. Sec. 1251 et seq. ...................................................................... 12

33 U.S.C. Sec. 1321 ................................................................................ 12

42 U.S.C. Sec. 7412 ................................................................................ 12

CA Labor Code § 6382 ..............................................................................13

CAA ................................................................................................... 10

Cal.Lab. Code, § 6360 ............................................................................. 12

Cal.Lab.C. § 1102.6 .................................................................................11

Cal.Lab.C. 1101 and 1102 ......................................................................... 2

Cal.Lab.C. 232........................................................................................ 2

Cal.Lab.C. 6399.7 ................................................................................... 2

Cal.Lab.C. Section 1102.5 .........................................................................11

California Occupational Safety and Health Act (Cal OSHA) ........................... 12

CCP § 335.1 .......................................................................................... 21

CCP § 338(c) ......................................................................................... 21

CERCLA ............................................................................................... 6

Hazardous Substances Information and Training Act ..................................... 12

Labor Code section 6399.7 ........................................................................... 12

PAGA ............................................................................................................ 11

RCRA ........................................................................................................... 10

RICO .............................................................................................................. 6

RICO Act ....................................................................................................... 2

Section 6399.7 ............................................................................................... 13

Section 96(k) ................................................................................................. 16

**Other Authorities**

*Landowner's Or Occupant's Liability In Damages For Escape, Without Negligence, Of Harmful Gases Or Fumes From Premises,* 54 A.L.R.2d 764, 768 (1957 Supp. 1987) ........................................................................................................ 26

Ops.Cal.Atty.Gen. 226 (2000) ....................................................................... 17

**Rules**

Fed R. Civ. P. 12(g)(2) ................................................................................... 3

Fed. R. Civ. P. 12(f) ........................................................................................ i

Fed.R.Civ.P. 11 ............................................................................................... 5

Fed.R.Civ.Pro. 12(g) ...................................................................................... 3

**Treatises**

21 A.L.R.6th 671 ........................................................................................... 20

22 Stanf. L. Rev. 1015; 29 A.L.R.4th 287 .................................................... 15

2A J. Moore, J. Lucas and G. Grother, Moore's Federal Practice (2d ed. 1987) ¶ 12.22 at12-186. ............................................................................................... 4

38 A.L.R.6th 541 ........................................................................................... 20

6 A.L.R.5th 162 ............................................................................................. 19

6 Witkin, Summary of California Law, Torts § 1575 .................................... 23

65 C.J.S. *Negligence* § 100(2)(b) (1966) ....................................................... 28

Rest.2d Torts § 519 ........................................................................................ 23

Rest.2d Torts § 520 ........................................................................................ 23

Rest.3d Torts: Liability for Physical and Emotional Harm § 20. .................. 23

*Restatement (Second) [of Torts* § 520], .......................................................... 26

Restatement (Second) of Torts § 519 (1977) ................................................. 27

*Restatement (Second) of Torts* § 519, comment (e) (1977) ............................ 23

W. Prosser, *Prosser on Torts* § 59, at 329 (2d ed. 1955) ................................ 25

Wright & Miller, 5C Fed. Prac. & Proc. § 1388, 491-95 (3d ed. 2004) .............. 5

**Regulations**

ab. Code, § 6362 ........................................................................................... 12

— vii —

1

Cal. Lab. Code § 232.5(c). ........................................................................15

2

CCP § 335.1..............................................................................................21
CCP § 338(b) ...........................................................................................21

3

CCP § 340(a) ...........................................................................................11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4

## II. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Claims, Again

5
6
7
8
9

1.      Plaintiff, Ashley Gjovik, respectfully submits the following Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss at Docket No. 78. Defendant's Motion should be denied. (I apologize for filing this late, and for any typos or oversights – Responding to all of Apple's latest motions within two weeks proved too much work over too short of time).

10
11

## III. Statements Of Facts

12
13

2.      See Opposition to Motion to Strike Statement of Facts.

14

## IV. Issues to be Decided

15
16
17
18
19

3.      Defendant now moves to dismiss eleven more of Plaintiff's claims (nine in their entirety, and three partially). Defendant also moves to Strike a sizable portion of Plaintiff's Fourth Amended Complaint, including any reference to her illness in 2020, her related environmental activism, and Apple's facility at 3250 Scott.

20
21
22
23
24

4.      This Court will need to decide whether to grant Defendant's Motion to Dismiss in part or full, and if they do grant any requests, whether to provide Plaintiff leave to amend. Further, the Court will need to decide whether to grant Defendant's Motion to Strike in part or full, and similarly, then decide whether to give Plaintiff leave to amend.

25
26

## V. Arguments

27
28

### A.  Defendant misrepresented Plaintiff's Fourth Amended Complaint.

— 1 —

5.     Defendant's latest motion puts forward a number of procedural allegations against Plaintiff which are false and not based in fact. Defendant repeatedly alleges that Plaintiff added new claims and theories that were not in her prior complaints, and that she violated this Court's May 20, 2024, order in amending claims she was not allowed to or otherwise amending in a way that has offended Defendant. Defendant goes so far as to label the 4AC as an "eleventh-hour attempt to introduce yet further claims and allegations." (4th MTD at 2).

6.     In reality, Plaintiff heeded this Court's comments in the May 20 2024 Order and decided to drop the majority of claims she was given leave to amend, in hope that it would prevent Defendant from filing another Motion to Dismiss, and instead they would file their Answer and the case could proceed swiftly. Plaintiff now deeply regrets dropping her RICO Act, Bane Act, and Ralph Act claims as she has now spent just as much time responding to Defendant's latest Motion to Dismiss as she would have if she amended and kept those claims.

7.     Defendant arbitrarily accuses Plaintiff of inappropriately adding new claims and facts, including supposedly new allegations about smuggling, sanctions laws, Cal.Lab.C. 6399.7, Cal.Lab.C. 1101 and 1102, Cal.Lab.C. 232, and breach of the convent of good faith and fair dealing.

8.      In reality, these claims have been in every single one of Plaintiff's complaints. Plaintiff will not defend each of these claims where the basis of Defendant's argument is misrepresenting the prior existence of the claim. Instead, Plaintiff created three new resources for everyone involved in the litigation, attached to her concurrently filed Declaration. Exhibit A includes a Table showing history of claims. Exhibit B includes the table of contents for all five complaints (with page numbers as filed). Exhibit C shows a post hoc, recently created index for key terms in each of the complaints. Hopefully Apple will stop making these types of misrepresentations now that the claims are so easy to investigate.

**B.   The majority of Defendant's arguments are barred by Rule 12(g) and 12(h).**

9.     Fed.R.Civ.Pro. 12(g) provides in pertinent part: If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated. *Aetna Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988). The Defendant is foreclosed from asserting in a subsequent Rule 12(b)(6) motion "a defense . . . that was available . . . but omitted from [an] earlier motion" to dismiss. Fed R. Civ. P. 12(g)(2). *In re Anthem, Inc. Data Breach Litigation*, Case No. 15-MD-02617-LHK, 79-80 (N.D. Cal. May. 27, 2016).

10.     Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. *Allstate Ins. Co. v. Countrywide Financial Corp.,* 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011). Rule 12(g) applies to situations in which a party files successive motions under Rule 12 for the sole purpose of delay[.]"); *Doe v. White*, No. 08-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) (citing the "substantial amount of case law which provides that successive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved"). *Schwartz v. Apple Inc.* (In re Apple iPhone Antitrust Litig.), 846 F.3d 313, 319 (9th Cir. 2017).

11.     Defendant now seeks to assert defenses against the Fourth Amended Complaint that pertain to a failure to state a claim, but which were available and omitted from their earlier Rule 12 motions. *Hernandez v. City of San Jose*, 241 F.Supp.3d 959, 984–85 (N.D. Cal. 2017).

12.     The Fourth Amended Complaint largely shares the same factual

— 3 —

material as the Third Amended Complaint, Second Amended Complaint, First Amended Complaint, and Original Complaint. There are minor modifications, but no notable substantive change in causes of actions, parties, or facts. *Carrasco v. Craft* (1985) 164 CA3d 796, 808-809, 210 CR 599, 607. Plaintiff's amended complaint did not change the theory or scope of the case in a way relevant to the new defense, or otherwise transform the litigation in any way. *Burton v. Ghosh,* 961 F.3d 960, 967-968 (7th Cir. 2020).

13. Thus, Defendant's arguments could have been raised in its previous motion to dismiss and the instant motion violates Rule 12(g)(2)'s ban on successive Rule 12(b) motions. *Hamman v. Cava Grp*., 22-cv-593-MMA (MSB), 5 (S.D. Cal. Dec. 4, 2023). "Rule 12(g)(2) facially bars successive Rule 12(b)(6) motions." *In re Apple iPhone Antitrust Litig*., 846 F.3d at 318.

14. "The philosophy underlying Rule 12(g) is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics." 2A J. Moore, J. Lucas and G. Grother, Moore's Federal Practice (2d ed. 1987) ¶ 12.22 at12-186. *Aetna Life Ins. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 n.2 (9th Cir. 1988). Further, this tactic can be part of "a pattern of abusive litigation activity in which the Defendants, through their attorneys, delayed filing an answer to [the Plaintiff's] complaint." *Aetna Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988). In *Aetna*, the Defendant's had delayed for seven months. Here, Apple has delayed filing an Answer for nearly eleven months.

15. Apple's already had several extra "bites at the apple" with respect to attacking Plaintiff's pleading. Apple needs to file its Answer and participate in the proceeding. "Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir. 1986).

16. The court may determine that successive or piecemeal motions are

— 4 —

interposed for improper motives and such motions may be denied on those grounds. See Fed.R.Civ.P. 11; *Aetna Life Ins. Co. v. Alla Med. Servs. Inc.,* 855 F.2d 1470, 1475-77, n. 2 (9th Cir. 1988) ("courts have discretion to hear a second motion under Rule 12(b)(6) if the motion is not interposed for delay and the final disposition of the case will thereby be expedited. . . ."); *United States v. Molen,* No. 2:10-cv-02591 MCE KJN PS, 4-5 (E.D. Cal. May. 9, 2011).

17.     *See Herron v. Best Buy Stores*, *LP*, No. 12-CV-02103-GEB-JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013) (refusal to consider argument Toshiba had "failed to squarely raise . . . in its initial dismissal motion"); *Fed. Agr. Mortgage Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) (where the complaint is amended after the defendant has filed a Rule 12(b) motion, the defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that could have been asserted in the first motion."); *see also* Wright & Miller, 5C Fed. Prac. & Proc. § 1388, 491-95 (3d ed. 2004) (citing additional cases applying Federal Rule 12(g)(2) and Rule 12(h)(2)). *Romo v. Wells Fargo Bank, N.A.*, Case No. 15-cv-03708-EMC, 3-4 (N.D. Cal. Jun. 28, 2016).

18.     As with the *Packaged Seafood* case, "in a case as broad as this, where there are many claims and many potential arguments to be made, to refuse to enforce Rule 12(g)(2)'s clear command on such a foundational argument as the one Defendants here urge ... would set a dangerous precedent regarding the ability to continually hamstring a plaintiff with wave after wave of motions to dismiss." *In re Packaged Seafood Prods.*, 277 F. Supp. 3d 1167, 1173-74 (S.D. Cal. 2017). Successive or piecemeal motions are often interposed for dilatory or otherwise improper motives and deny such motions on those grounds. See Fed.R.Civ.P. 11; *Aetna Life Ins. Co. v. Alla Med. Services, Inc*. (9th Cir. 1988) 855 F2d 1470, 1476-1477.

**C.   Cal.Lab.C. Section 1102.5 alleges a sufficient amount of statutes to proceed.**

19.     Defendant argues that Plaintiff still has not plead with required specificity which laws she alleges support her 1102.5 claim, yet Defendant concurrently admits Plaintiff has alleged this sufficiently and they are no longer trying to dismiss her 1102.5 claim. Defendant attacks her smuggling and sanctions section, yet those statutes were detailed in her SAC and in emails to Apple.

20.     The 2023 Senate Bill No. 497 (Chapter 612)[1], now enacted, created a presumption of liability on the employer if an adverse action is taken within 90 days of protected action. Here, Apple stopped fighting some of the 1102.5 claims, all of which fall into the 90 days period prior to her termination. We really do not need to be dissecting this claim this much – it's incredibly broad coverage, with a presumption against the employer.

21.     Further, Defendant is fully aware from the US Dept. of Labor proceedings that the majority of CERCLA oversight is implemented through tailored settlements, contracts, and restrictive covenants – not regulations. Plaintiff challenged land use covenants, records of decision, and other contractual matters related to the CERCLA site – and as such those claims should be sufficient. Apple is aware of what those claims are from the emails Plaintiff sent them, the US EPA investigation into her claims and finding Apple at fault in number of ways, including documented on formal reports.

22.     Similarly, criminal charges for CERCLA are claims like wire fraud – not a specific section of the CERCLA. Plaintiff did accuse Apple of fraud as well as RICO and other felonies. This Court gave Plaintiff leave to amend her RICO claims, so it is possible that even that 1102.5 allegation was correct.

---

[1] Leg. History:
https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202320240SB497

443.    On August 21 201, Gjovik submitted the first revised Issue Confirmation to Okpo and also posted on Twitter about it. On Twitter, she provided screenshots of the document where she suggested Apple needed to investigate itself for RICO Act violations including "*fraud*" and "*organized witness tampering*" among other concerns.[183]



> **Ashley M. Gjovik**
> @ashleygjovik                                                    **Promote**  ...
>
> Based on my experience, & the non-stop horror stories I now hear EVERY DAY from current & past #Apple employees, I'm now also asking employee relations to investigate themselves.
> One "issue" I'm raising to them is literally RICO.
> @USDOL, I may need to schedule an interview soon.
>
> - **Concerns Raised (DRAFT):**
>   - Hostile work env based on sex (2015-current)
>   - Hostile work env based on disability (2020-current)
>   - Failure to resolve hostile work environment (2015-current)
>   - Sexual harassment (2015, 2018, 2019)
>   - Civil assault & battery (2015)
>   - False imprisonment (2015-6)
>   - Negligence & battery (2017-2020)
>   - Civil assault (2021)
>   - Quid pro quo / bribe (2015)
>   - Intentional Infliction of Emotional Distress (2015, 2021)
>   - Bullying (2015-2016, 2021)
>   - ADA & FMLA violations (2020-2021)
>   - Unsafe work conditions (2017-current)
>   - Toxic tort, occupational exposure (2017-current)
>   - Violation of OSHA laws & Right to Know statute (2017-current)
>   - Failure to report workplace injuries (2017, 2019)
>   - Failure to seek medical attention for life threatening injury (2017)
>   - Retaliation for whistleblowing (2016, 2020, 2021)
>   - Retaliation for protected concerted activities (2020-2021)
>   - Retaliatory constructive termination (2015, 2016, 2016, 2021)
>   - RICO (Unknown-current)
>     - Misrepresentation & fraud
>     - Racketeering
>     - Organized witness tampering
>     - Organized intimidation
>     - Corporate corruption
>     - Cronyism & nepotism
>
> **Protected Activities & Whistleblowing:**
>
> 4:12 PM · Aug 21, 2021

*Exhibit: Gjovik's Issue Confirmation Concern List, 8/21*

444.    Shortly after Gjovik's post about Apple and RICO, a fake Twitter account called "Mel Nayer," began replying to Gjovik's posts making threats and wild allegations. Nayer said, "*This is an ACTIVE @Apple investigation and the managers accused are now receiving death*

---

[183] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429174603713191936

184

*SAC page 184, showing Twitter post prior to termination, of email sent to Apple prior to administrative leave.*

— 7 —

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

> 1   Upon investigation, it appears the law firm was looking into RESPA related to the property, but
>
> 2   it is unknown who they represented (probably CalSTRS/GI Partners).
>
> 3      **v.    OFAC Sanctions (Dodd-Frank; 22 U.S. Code § 8792)**
>
> 4      828.    Shortly before Gjovik was "removed from the workplace and all workplace
>
> 5   interactions" indefinitely, she was complaining about one of her coworkers bragging in a career
>
> 6   growth article about what sounded like illegal smuggling and violation sanctions against Syria.
>
> 7   Gjovik's management (Powers, West, also Basanese) had all ignored it for months so Gjovik
>
> 8   reported it to Business Conduct. West told her after that the employee did nothing wrote but that
>
> 9   he wanted to delete the portion of the article Gjovik alleged referenced smuggling.

---

On Jul 20, 2021, at 7:54 AM, Ashley Gjovik <ashleygjovik@apple.com> wrote:

Hi John,

I wanted to check in on these outstanding questions — especially and specifically my question about the illegality of Amr exporting to & re-selling Apple products in Syria. I did some research today and it appears what he did was VERY illegal. Not just a violation of Apple policies, but a violation of U.S. federal law, and perhaps a violation of international law as well, if I'm reading all this right.

We need to notify the appropriate Apple legal teams of this information.

— — —

**Apple Trade Compliance**
PROHIBITED DESTINATIONS
"The U.S. holds complete embargoes against North Korea and Syria.
The exportation, reexportation, sale or supply, directly or indirectly, from the United States, or by a U.S. person wherever located, of any Apple goods, software, technology (including technical data), or services to any of these countries is strictly prohibited without prior authorization by the U.S. Government. "
https://www.apple.com/legal/more-resources/gtc.html

**Legal Framework of U.S. sanctions on Syria:**
"The Syria Sanctions program represents the implementation of multiple legal authorities.  Some of these authorities are in the form of an executive order issued by the President. Other authorities are public laws (statutes) passed by The Congress. These authorities are further codified by OFAC in its regulations which are posted in the Code of Federal Regulations (CFR). Modifications to these regulations are posted in the Federal Register.  In addition to all of these authorities, OFAC may also implement United Nations Security Council Resolutions (UNSCRs) with regard to Syria."
https://home.treasury.gov/policy-issues/financial-sanctions/sanctions-programs-and-country-information/syria-sanctions

— — —

**Quote from Amr's article:**
"Syria is not a country where Apple is allowed to sell products or have authorized resellers. But luckily, my grandma was visiting the U.S. and returning in a few weeks so I had to act fast. I decided to buy 10 iPods, sell 9 to my friends in school at a markup (because I had no competition), and finance my own from the profits. I convinced my dad to lend me the money, my grandma to buy and carry 10 black boxes the size of a mac mini, and managed to secure 5 pre-orders. A few weeks later, the magical devices arrived and I sold all 9. That was probably my first real-life lesson about Business and Entrepreneurship."
https://confluence.sd.apple.com/display/PSQ/How+I+Got+Here+-+Amr

<How I Got Here - Amr - Product Systems Quality - SEO Confluence.pdf>

---

365

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21, 2023

26

*SAC page 365-366, showing email sent to Apple prior to administrative leave* citing

27

*specific sanctions and smuggling laws.*

28

*Exhibit: Gjovik's email to West, Powers, Johnson, and Basanese on 7/20/21*

829.    The IRAN THREAT REDUCTION AND SYRIA HUMAN RIGHTS ACT OF 2012 requires disclosures under Section 13(a) of THE SECURITIES EXCHANGE ACT OF 1934 via 10-Ks and or 10-Qs.[387] Companies have been fined by the Federal Reserve and OFAC for "unsafe or unsound practices relating to … inadequate oversight of sanctions compliance risks."[388]

830.    Federal statutes also govern smuggling. (see, 18 U.S. Code § 554 - Smuggling goods from the United States; 18 U.S. Code § 546 - Smuggling goods into foreign).

831.    Apple was recently fined by OFAC for violations of sanctions laws, noting that "*based on the number of Apparent Violations, the length of time over which the Apparent Violations occurred, and the multiple points of failure within the company's sanctions compliance program, policies, and procedures, [Apple's [ conduct demonstrated reckless disregard for U.S. sanctions requirements.*" The settlement included a requirement that Apple "*Implemented mandatory training for all employees on export and sanctions regulations.*"[389]

832.    Apple's Business Conduct team said they did not care of the employee had been involved with illegal smuggling in his personal time, but only cared if he did it in a way that implicated Apple. Gjovik asked if they would still report it if it was illegal, and they said no. West also echoed this sentiment saying it was fine because there "*are no compliance issues for Apple",* but for vague reasons they will remove the references to smuggling, and also, they still want to publish the article. Gjovik's supervisor, Dan West, never talked to Gjovik again after this response.

---

[387] 22 U.S. Code Subchapter VII - Sanctions with Respect to Human Rights Abuses in Syria, §§ 8791 - 8795
[388] US Federal Reserve, *Federal Reserve Board Fines Wells Fargo $67.8 million for inadequate oversight of sanctions risk at its subsidiary bank*, March 30, 2023, https://www.federalreserve.gov/newsevents/pressreleases/enforcement20230330a.htm
[389] OFAC, Apple, Inc. Settles Potential Civil Liability for Apparent Violations of the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. part 598;, Nov. 25 2019, https://ofac.treasury.gov/media/25931/download?inline

SECOND AMENDED COMPLAINT | 3:23-CV-04597-EMC                    DECEMBER 21, 2023

— 9 —

PL.'S OPP. TO DEF.'S. MOT. TO DISMISS | CASE NO. 3:23-CV-04597-EMC

23.     In *Ross v. County of Riverside*, 36 Cal. App. 5th 580, 248 Cal. Rptr. 3d 696 (4th Dist. 2019), review denied, (Sept. 25, 2019) the court explained that employees will be protected so long as they believe that some illegal activity is happening when they report it and do not have to expressly state that the activity violates the law. An environmental compliance firm employee's disclosures were protected under the Act where they referenced the possibility of illegality of an environmental assessment prepared for the United States Army Reserve Command Cal. Lab. Code § 1102.5(b). *Killgore v. SpecPro Professional Services, LLC,* 51 F.4th 973 (9th Cir. 2022).

24.     As for RCRA and CAA, unless the witness actually sees people dumping drums in a river, they may catch on to environmental crimes, but probably will not know exactly what laws are being violated down to the statute. The environmental whistleblower law behind this (of which is established in US Dept. of Labor precedent) simply looks to if the whistleblower complained about things that touched upon the goals of the environmental statute – likely because of how intangible environmental issues can be.

25.     Rather than speculating, Plaintiff was waiting to receive the results of the US EPA Enforcement inspection report before making a conclusive statement. The report was released last month (see Request for Judicial Notice, Exhibit A) and Plaintiff's RCRA and CAA claims are listed in the US EPA findings of their inspection in Exhibit A of the Request for Judicial Notice. Notable, several of the violations noted by the US EPA are statutes that provide both civil and criminal enforcement. One of which Apple was cited for potentially violated hundreds of times – which could result in hundreds of criminal charges against the company.

26.     Defendant argues that Plaintiff has not alleged where / how she reported the Gobbler application – yet Plaintiff's 4AC does detail this – and further, Defendant does not challenge the same Gobbler claim in the *Tamney*

— 10 —

section. Defendant specifically demands Plaintiff publicly name who at the company she raised the Gobbler issue to prior to taking it public, despite having said it would fire anyone involved in making Gobbler public – thus demanding Gjovik immediately snitch on her coworker, knowing Apple's lawyers may then fire that person. Defendant claims it terminated Plaintiff because Plaintiff disclosed Gobbler publicly -- so it's unclear why Defendant keeps demanding proof that Plaintiff disclosed Gobbler publicly.

27.     The protected activity need only be "a" contributing factor in the employer's adverse action. Cal.Lab.C. § 1102.6; *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 C5th 703, 712, 289 CR3d 572, 577. Further, retaliation is also forbidden where the disclosure has not yet occurred but may occur. Thus, the statute applies if an employer retaliates based on a belief that the employee will disclose illegality in the future. Lab.C. § 1102.5(b). There is a lot of space between some vague grievance and reciting exact lines of statutory language.

**D.  Plaintiff's request for civil penalties is not time barred.**

28.     Defendant requests to dismiss Plaintiff's request for penalties under her Cal.Lab.C. Section 1102.5 and 98.6 claims, citing CCP § 340(a) – however, this is not a PAGA lawsuit. 1102.5(f) is not exclusive to PAGA lawsuits, and the section even notes the penalty is to be "awarded to the employee who was retaliated against." Id.

29.     Further, the Plaintiff was waiting on California Dept. of Labor to start investigating her claims up until the point she removed her agency claims to this instant lawsuit. The agency failed to act in a timely fashion and so now Plaintiff pursues the claims herself, and as such the option of penalties should be open to her. The penalty request is optional and thus the suit is not "for penalty." *Mathews v. Happy Valley Conference Ctr., Inc.* (2019) 43 CA5th 236, 267, 256 CR3d 497, 524— (remedy in Lab.C. § 1102.5 whistleblower statute not

— 11 —

exclusive since it states penalties specified therein for violation are in addition to other penalties, and thus, punitive damages are available).

30.   Finally, Defendant's Motion to Dismiss frame their request as just dismissing the 98.6 penalty – however they try to strike the entire 98.6 section in their Motion to Strike.

**E.   Plaintiff made numerous protected Cal.Lab.C. Section 6399.7 complaints under Section 6310.**

31.   Labor Code section 6399.7 prohibits discrimination against any employee for filing a complaint or instituting a proceeding "under or related to the provisions of this chapter" or exercising any right afforded "pursuant to the provisions of this chapter." "This chapter" is chapter 2.5 of the California Occupational Safety and Health Act (Cal OSHA), entitled the "Hazardous Substances Information and Training Act." Cal.Lab. Code, § 6360.

32.   It requires the Director of Industrial Relations (*id.*, § 6302) to prepare a list of substances that "are present in the workplace as a result of workplace operations in such a manner that employees may be exposed under normal conditions of work or in a reasonably foreseeable emergency resulting from workplace operations" (Lab. Code, § 6362) and are "potentially hazardous to human health" (*id.*, §§ 6380, 6382). The listings referred to in subdivision (a) are as follows:

- (1) Substances listed as human or animal carcinogens by the International Agency for Research on Cancer (IARC).
- (2) Those substances designated by the Environmental Protection Agency pursuant to Section 307 (33 U.S.C. Sec. 1317) and Section 311 (33 U.S.C. Sec. 1321) of the federal Clean Water Act of 1977 (33 U.S.C. Sec. 1251 et seq.) or as hazardous air pollutants pursuant to Section 112 of the federal Clean Air Act, as amended (42 U.S.C. Sec. 7412) which have known, adverse human health risks.

- (3) Substances listed by the Occupational Safety and Health Standards Board as an airborne chemical contaminant pursuant to Section 142.3.
- ...
- (d) Notwithstanding Section 6381, in addition to those substances on the director's list of hazardous substances, any substance within the scope of the federal Hazard Communication Standard (29 C.F.R. Sec. 1910.1200) is a hazardous substance subject to this chapter.

CA Labor Code § 6382 (2023). This includes all of the chemicals Plaintiff complained about.

33. Defendant claims that Plaintiff previously only "made a passing reference" to Section 6399.7 prior to the 4AC. As explained earlier, this is not true. Apple claims it can now challenge 6399.7 because it's supposedly new, but it is not new, and Apple waived it in prior 12(b)(6) motions. Apple also claims Plaintiff was not allowed to split the claim out or revise the cover page of her 4AC. Apple also suggests the content be stricken in its Motion to Strike.

34. In reality, Plaintiff made numerous, repeated, incessant complaints about Right to Know related to her Superfund site office, Apple's other toxic waste dump offices, her apartment on a toxic waste dump, and the ambient air where Apple was dumping its hazardous waste. These activities included publishing an op-ed in a local newspaper, lobbying politicians, and raising multiple internal escalations at Apple about this topic. Other than the SAC, this section was not pled in detail, primarily because it seemed like a 'given'.

35. Plaintiff is getting very tired of Defendant still trying to silence her about her safety concerns, especially Right to Know.

**F. Claims for Cal.Lab.C. Section 1101, 1102, 232, and 232.5 are sufficient and/or can be sufficient with increased page limits, and dismissal on the pleadings was waived.**

— 13 —

36.     Defendant challenges Plaintiff's Section 1101, 1102, 232, and 232.5 claims for the first time. Previously defendant did not challenge these four claims – and all of these claims have been in prior complaints. All of these claims have also had multiple facts cited as their basis in the different version of the complaint.

37.     These claims were not plead in detail in the 4AC because of page limits and because they were not challenged prior in a way that Plaintiff would expect they would be challenged now – instead trying to focus her attention on other claims and revisions. One of the reasons its unfair to file subsequent 12(b)(6) motions like this is that the Plaintiff does not know what to expect next procedurally – so does not know what amendments to prioritize.

38.     If these sub-claims need to be more fully pled, Plaintiff can do so. Plaintiff posted on Twitter about wages at the same time Defendant was admittedly surveilling her Twitter posts; and Plaintiff participated in the same pay equity survey that Apple was subsequently subject to an NRLB charge filed by other employees alleging Apple violated federal labor law and for which a Decision of Merit was issued. The NLRB may sue Apple over this – thus Apple knows exactly what this refers to.

39.     The 1101 and 1102 claims have included various topics included in prior Bane and Ralph sections, along with labor claims – including meeting with politicians, organizing with Pussy Riot (SAC page 528, etc.), and advocacy on behalf of Muslim Apple employees and support for Palestine. It does appear to be true that Plaintiff may not have mentioned the Palestine activism in prior versions of her complaint – but her prior complaints were also dedicated to several large complex claims she had since dropped. Further, Apple is fully aware of the Palestine activism, as Gjovik fought with her managers and HR Business Partner over the matter in July 2021 – and Apple was also aware of her concerted activity with Pussy Riot as she notified Apple University of it. Apple's constant amnesia in these proceedings is disingenuous.

40.   There is a variety of political activity recognized under these statutes. See, *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 C.2d 481, 484, 171 P.2d 21; *Ali v. L.A. Focus Publication* (2003) 112 C.A.4th 1477, 1486, 5 C.R.3d 791 [newspaper columnist, who alleged that he was fired for criticizing, outside workplace, U.S. Representative for endorsing mayoral candidate, stated valid claim of wrongful termination in violation of public policy embodied in Lab.C. 1101 and 1102];; 22 Stanf. L. Rev. 1015; 29 A.L.R.4th 287 [discharge on ground of political views or conduct]; 38 A.L.R.5th 39 [liability for discharge of employee for political views or conduct]; Political activities include participation in litigation, the wearing of symbolic arm bands, and the association with others for the advancement of beliefs and ideas. *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.*, 24 Cal. 3d 458, 156 Cal. Rptr. 14, 595 P.2d 592 (1979).

41.   Defendant also complaints that Plaintiff moved some of the sub-claims around and alleges she did not have permission to do so – however she was granted leave to amend/supplement her 1102.5 claim and her 98.6 claim was never challenged – so she was denied leave to amend either claim.

42.   Under the California Labor Code, no employer may "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." Cal. Lab. Code § 232.5(c). Working conditions are "conditions determined by the employer *as a condition of employment*." *Fleeman v. Cnty. of Kern*, No. 1:20-cv-00321, 2023 WL 8375658, at *6 (E.D. Cal. Dec. 4, 2023) (emphasis in original). Examples include "attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, unforms, hair requirements, breaks, restroom facilities, and 'even one's required attitude." *Tam v. Qualcomm, Inc.*, 300 F.Supp.3d 1130, 1150 (S.D. Cal. 2018). "[B]eing required to assist in fraud" can be a working condition under California law. *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, No. 16-cv-737, 2017 WL 3174542, at *9 (S.D. Cal. July 26, 2017).

1
2
3
4

**G. There is probably a private right of action for 96k claims, but if there's not, the claim supports the policy for a *Tamney* ConTort claim.**

5
6
7
8
9
10
11
12
13

43.    Defendant argues that Plaintiff's 96(k) claim fails for lack of private right of action – however, Defendant confuses a situation where a 96(k) claim is the only retaliation claim, and a situation like this case where there are other retaliation claims which may provide vehicles for the 96(k) claim, such as the *Tamney* or independent 98.6 claims. Section 96(k), via 98.6, provides a "procedural mechanism" to seek justice for the unique harm of retaliation for lawful conduct, exercising Constitutional rights, and occurring during nonworking hours and away from the employer's premise. *Grinzi v. San Diego Hospice Corp.* (2004) 120 CA4th 72, 87, 14 CR3d 893, 903-904.

14
15
16
17
18
19
20
21
22
23
24
25

44.    This instant case is a perfect case for 96(k). This statute protects employee from retaliation for their activities outside of work hours and outside of work, when that conduct is protected by the Labor Code and is based on a Constitutional right – providing a sort of safety net for situations where the employer is admittedly retaliating against the employee for something the employee had a right to do and that furthers public policy related to labor rights, yet there may not be an statute expressly protecting that action. 96(k) also captures a unique violation of public policy – an employer spying on its employee outside of work and identifying something the employee did which is not illegal, which they have an inalienable Constitutional right to do, and which is in furtherance of the Labor Code – but the employer then declares the employee's actions justify their misconduct, like here.

26
27
28

45.    Here, Defendant claims its supposed legitimate reason for terminating Plaintiff's employment is Plaintiff's actions taken outside of the workplace, outside of work hours, not on work equipment or systems, and not in

violation of any law. In addition to the policy concerns about Defendant retaliating against her for the content and views expressed – there is a unique wrong in the employer surveilling the employee outside of work and claiming they can punish the employee for the employees' actions – which is certain to chill employee's conduct and to cause self-censorship outside of work.

46.     The Legislature found and declared that allowing any employer to deprive an employee of any constitutionally guaranteed civil liberties, regardless of the rationale offered, is not in the public interest. The Legislature further declares that this act is necessary to further the state interest in protecting the civil rights of individual employees who would not otherwise be able to protect themselves." (Stats. 1999, ch. 692, § 1.) *Barbee v. Household Automotive Finance Corp.*, 113 Cal.App.4th 525, 533-34 (Cal. Ct. App. 2003).

47.     The Attorney General concluded "that subdivision (k) was added to section 96 so that the Commissioner could `assert the civil rights otherwise guaranteed by Article I of the California Constitution' for employees `ill-equipped and unduly disadvantaged' to assert such rights." 83 Ops.Cal.Atty.Gen. 226 (2000) [quoting Stats. 1999, ch. 92, § 1…" *Barbee v. Household Automotive Finance Corp.*, 113 Cal.App.4th 525, 536 (Cal. Ct. App. 2003). ConTorts aren't easy!

48.     There is probably a private action for 96(k) via 98.6, in cases like this where administrative options were exhausted, and the Plaintiff can plead violation of Constitutional rights. *Howe v. Target Corp.*, Case No. 20-cv-252-MMA (DEB), 20 n.5 (S.D. Cal. Sep. 19, 2020). However, even if not, an erroneous legal theory is to be disregarded if a valid claim is alleged. The test is whether the facts, as alleged, support any valid claim entitling plaintiff to relief, not necessarily that intended by plaintiff. Thus, a complaint should not be dismissed because plaintiff relies on an incorrect or imperfectly stated legal theory if the facts alleged support any valid theory. *Johnson v. City of Shelby, Miss.* (2014) 574 US 10, 11-12, 135 S.Ct. 346, 347 (per curiam)—plaintiffs not required to invoke specific federal civil

— 17 —

1    rights statute at issue in order to avoid dismissal of their employment action;

2    *Alvarez v. Hill* (9th Cir. 2008) 518 F3d 1152, 1158; *Wilson v. Birnberg* (5th Cir.

3    2012) 667 F3d 591, 595.

4

5        **H.    The UCL Section 17200 claim is viable for injunctive relief.**

6        49.    Prior, Plaintiff successfully pled a claim for injunctive relief under

7    Section 17200, including with concrete, particularized harm. Plaintiff cleaned up

8    the claim in the 4AC, focusing on the experiments and data collection and

9    dropping a focus on Apple Wellness Center. Plaintiff pled factual allegations

10   regarding the specific programs and applications she was subject to, and even

11   included exhibits of the communications and her data gathered by Apple.

12       50.    See *Birdsong v. Apple, Inc.* , 590 F.3d 955, 960-61 (9th Cir. 2009)

13   (finding lack of standing where the risk of injury "is not concrete and

14   particularized *as to [plaintiffs]* "); *Cahen v. Toyota Motor Corp.* , 147 F. Supp. 3d

15   955, 972 (N.D. Cal. 2015) (dismissing claims for lack of standing where plaintiffs

16   did not allege that they themselves were affected by defendant's alleged

17   behavior); *Google Assistant Privacy Litig.* , 457 F. Supp. 3d at 816-17 (rejecting

18   allegations based on third party report where "Plaintiffs do not allege that any of

19   [the reported private] recordings covered Plaintiffs' communications"); *cf.In re

20   Facebook Privacy Litig.* , 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (finding

21   standing where defendant engaged in "dragnet" surveillance that affected all of its

22   customers, and plaintiffs were customers). *Lopez v. Apple, Inc.*, 519 F. Supp. 3d

23   672, 681-82 (N.D. Cal. 2021).

24       51.    In the 4AC, Plaintiff pled economic harm in addition to privacy and

25   other personal injuries and should retain her injunctive standing. Plaintiff does

26   not need economic restitution – and instead requests disgorgement (deletion) of

27   data and software – not money.

28

**I.   IIED claims are sufficiently pled; the IIED Cancer claim was already approved to move forward.**

52.     The IIED/Cancer claim was already approved to move forward, and the claim does not require intentional or purposeful motive – knowing and reckless is enough, which was the case here. See *Potter v. Firestone Tire & Rubber Co.* (1993) 6 C.4th 965, 1000, 25 C.R.2d 550, 863 P.2d 795, § 1174 [dumping of hazardous wastes, causing fear of cancer];  41 Santa Clara L. Rev. 661 [emotional distress issues raised by release of toxic and other hazardous materials]; 25 Southwestern U. L. Rev. 205 [*Kerins*]; 6 A.L.R.5th 162 [emotional distress by toxic exposure].

53.     According to a California appellate court decision, "infliction of emotional distress claims are merely alternative legal theories for holding defendants liable for the same conduct" that underlies a related intentional tort. Thus, such claims are "redundant" and must stand or fall with the related claim. *Wong v. Jing* (2010) 189 CA4th 1354, 1378-1379, 117 CR3d 747, 768-769. For example, criminal conduct outrageous per se: A violation of California penal law is outrageous per se. *Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F3d 683, 697 (en banc).

54.     Repeated threats of physical harm directed to plaintiffs, stated in graphic terms, may constitute "extreme and outrageous conduct." *Delfino v. Agilent Technologies, Inc. (2006) 145 CA4th 790, 809, 52 CR3d 376, 392.* Email, like other forms of communication, may "cause legally cognizable injury to the recipient or to third parties and may be actionable under various common law or statutory theories," including intentional infliction of emotional distress. *Intel Corp. v. Hamidi* (2003) 30 C4th 1342, 1347, 1 CR3d 32, 37.

55.     Employer's fabricating evidence to justify discharging employee would constitute clear and convincing evidence of a "willful and conscious disregard" for employee's rights. *Brandon v. Rite Aid Corp., Inc.* (ED CA 2006)

408 F.Supp.2d 964, 982. See also, *Kiseskey v. Carpenters' Trust for Southern Calif.* (1983) 144 CA3d 222, 229-230, 192 CR 492, 496)—agents of defendant union threatened life, health, and family of employer if he did not sign agreement with union]. *Continental Culture Specialists, Inc.* (1992) 2 C4th 744, 756, 7 CR2d 808, 816—emotional distress resulting from employer's defamation and harassment.

56.   See *Tilkey v. Allstate Ins. Co.* (2020) 56 C.A.5th 521, 556, 270 C.R.3d 559 [case of first impression; allowing award of punitive damages in compelled, self-published defamation case (see text, § 634)]. 21 A.L.R.6th 671 [employer's, supervisor's, or manager's intentional infliction of emotional distress on employee by accusation or implication of dishonesty]; 38 A.L.R.6th 541 [employer's, supervisor's, or manager's intentional infliction of emotional distress on employee by defamation, invasion of privacy, or misuse of company procedures]. See *Rulon-Miller v. International Business Machines Corp.* (1984) 162 C.A.3d 241, 255, 208 C.R. 524 [statements and conduct tending to humiliate employee.

57.   Plaintiff alleged facts and allegations supporting underlying independent tort claims of harassment, stalking, abuse of process, malicious prosecution, defamation, trade libel, loss of consortium, other torts, and numerous criminal acts. Plaintiff's allegations are within statute of limitation, and after she was no longer an employee – removing the issue of Worker's Compensation pre-emption. Further, there were many parties involved in causing Gjovik severe distress, in a variety of different roles – including Respondent Superior.

58.   If given 20-30 additional pages, Plaintiff feels confident she can again adequately plead her IIED claims, if her pleading in the 4AC is found insufficient. The IIED sections in the SAC could also be incorporated.

59.   The employer may also be directly liable if it knows of harassment and fails to stop it: "In such cases, the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending

— 20 —

1    conduct and its results, quite as if they had been authorized affirmatively by the
2    employer." See *Faragher v. City of Boca Raton* (1998) 524 US 775, 789, 118 S.Ct.
3    2275, 2284. The employer may be liable for nonemployees' (e.g., the employer's
4    customers or vendors) harassment of its employees under Title VII if the employer
5    knew or should have been aware of the harassment and failed to take appropriate
6    corrective action. *Folkerson v. Circus Enterprises*, Inc. (9th Cir. 1997) 107 F3d 754,
7    756—casino entertainer sexually harassed by casino patron; *Campbell v. Hawaii*
8    *Dept. of Ed.* (9th Cir. 2018) 892 F3d 1005, 1017—teacher harassed by students.

9

10    **J.**    **The Private Nuisance, Ultrahazardous Activities, and**
11         **IIED/Cancer claims are not time barred.**

12    60.    The limitations period for Private Nuisance actions depends on the
13    nature of the harm caused by the nuisance. A nuisance action claiming injury to
14    real property is subject to the CCP § 338(b) three-year statute of limitations.
15    *Wilshire Westwood Assocs. v. Atlantic Richfield Co.* (1993) 20 CA4th 732, 743-745,
16    24 CR2d 562, 568-569.A nuisance action claiming personal injury is subject to the
17    CCP § 335.1 two-year statute of limitations. A plaintiff must bring a single
18    continuing nuisance action for past, present and future damages. *Baker v. Burbank-*
19    *Glendale-Pasadena Airport Auth.* (1985) 39 C3d 862, 868-869, 218 CR 293, 297;
20    *Spar v. Pacific Bell* (1991) 235 CA3d 1480, 1485, 1 CR2d 480, 483.

21    61.    The limitations period for Ultrahazardous Activities strict liability
22    actions depends on the type of injury inflicted. Injuries to real property have three
23    years. CCP § 338(b); *Wilshire Westwood Assocs. v. Atlantic Richfield Co.* (1993) 20
24    CA4th 732, 743, 24 CR2d 562, 568. Injuries to personal property have three years.
25    CCP § 338(c). Personal injuries have wo years. CCP § 335.1.

26    62.    Here there is the discovery rule, fraud, and continuing nuisance.
27    Discovery rule is easy to prove as even the government tried to investigate where
28    the emissions were coming from, and they could not figure it out. For fraud,

— 21 —

defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it. *MGA Entertainment, Inc. v. Mattel, Inc*., 41 Cal. App. 5th 554, 254 Cal. Rptr. 3d 314 (2d Dist. 2019), review denied, (Feb. 11, 2020).

63.    That the dates alleged in the complaint are beyond the statutory period is not enough to support a Rule 12(b)(6) dismissal. Dismissal can be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute [had been] tolled." *Cervantes v. City of San Diego* (9th Cir. 1993) 5 F3d 1273, 1275. Resolution of a statute of limitations issue is normally a question of fact. *Pearce v. Briggs,* 283 Cal.Rptr.3d 608. Date of accrual of cause of action is question of fact. *California-American Water Co. v. Marina Coast Water Dist.,* 86 Cal. App. 5th 1272, 303 Cal. Rptr. 3d 227 (1st Dist. 2022), review denied, (Mar. 29, 2023).

**K.    The Ultrahazardous Activities claim states a claim for Ultrahazardous Activities; it was already approved to move forward.**

64.    Whether an activity is "ultrahazardous" for strict liability purposes is a question of law for the court to decide. *Luthringer v. Moore* (1948) 31 C2d 489, 496, 190 P2d 1, 5; *Edwards v. Post Transp. Co.*, supra, 228 CA3d at 983, 279 CR at 232. Defendant now challenges this Court's prior ruling on Ultrahazardous Activities in this case – filing a new 12(b)(6) instead of a motion for reconsideration or similar. These activities continue to be Ultrahazardous, and additional cases and policy have been gathered to support the prior decision. The concurrently filed Request for Judicial Notice is incorporated here and throughout. All exhibits are relevant to the Ultrahazardous claim.

— 22 —

65.    As a matter of public policy, strict liability may be imposed upon defendants who cause harm as a result of "ultrahazardous activities"—i.e., activities that are so inherently dangerous that even the utmost care cannot eliminate the risk. . *Lipson v. Sup.Ct. (Berger)* (1982) 31 C3d 362, 374, 182 CR 629, 637, fn. 7; Rest.2d Torts § 519; 6 Witkin, Summary of California Law, Torts § 1575; Rest.3d Torts: Liability for Physical and Emotional Harm § 20.

66.    Generally, an activity is deemed ultrahazardous if it necessarily involves a risk of serious harm to the person or property of others that cannot be eliminated by exercising utmost care and is not a matter of common usage. *Luthringer v. Moore,* supra, 31 C2d at 498, 190 P2d at 7. In evaluating individual cases without precedent, courts look to six factors set forth in Rest.2d Torts § 520. These several factors are to be considered together; the existence of one alone is usually not dispositive (Rest.2d Torts § 520, comment "f"; *Edwards v. Post Transp. Co.*, supra, 228 CA3d at 985, 279 CR at 233):

- Existence of a high degree of risk of some harm to the person or property of others;

- Likelihood that harm from the activity will be great;

- Inability to eliminate the risk by the exercise of reasonable care;

- Extent to which the activity is not a matter of common usage;

- Inappropriateness of the activity to the place where it is carried on; and

- Extent to which the value of the activity to the community is outweighed by its dangerous attributes.

 [Rest.2d Torts § 520; and see Edwards v. Post Transp. Co., supra, 228 CA3d at 985, 279 CR at 233; Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.), supra, 197 CA3d at 1142, 243 CR at 424, fns. 5 & 6].

67.    Regarding one who carries on an abnormally dangerous activity, *Restatement (Second) of Torts* § 519, comment (e) (1977) states that strict liability applies to "harm that is within the scope of the abnormal risk that is the

— 23 —

basis of the liability." The key is foreseeability. It is surely foreseeable and within the scope of the abnormal risk that radiation contamination will occur from contact with plutonium that escapes a nuclear fuel plant. Just as the risk incident to dynamite is accidental explosion, a risk incident to plutonium is accidental contamination. *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 920-21 (10th Cir. 1981). The same theory applies to the toxic gases used in semiconductor fabrication (in addition to other dangerous substances), as evidenced in the Exhibits in the Request for Judicial Notice.

68.   *Roeder* was a class action arising out of alleged air and groundwater contamination by a mining company. The mine site consisted of an abandoned copper mine and extraction facility in Nevada. The companies who operated the mine from 1918 to 1982 extracted approximately 360 million tons of ore and debris from the open pit mine, much of which remained as waste in a "pit lake" and "tailings or leach heap piles." Toxic substances at the mine site included arsenic, chromium, lead, mercury, uranium, thorium, and radium. These substances had contaminated the local groundwater, surface water, soil, and air, leaving the plaintiffs exposed to them. The district court declined to dismiss plaintiffs' strict liability claims, finding they were available under the factor-based approach of the Restatement (Second) of Torts:

> Open-pit copper mining likely had great value to the community and was likely appropriate to the areas of the Mine Site when it was ongoing, and open-pit copper mining may be common in Nevada (or may have been so during the relevant period). However, it was not likely a common activity for "many people in the community." Moreover, open pit mining likely involves the use of many chemicals and the storage of many waste materials that will inevitably seep into the ground when stored in outdoor piles, as Plaintiffs allege, creating a high degree of risk of harm to people and land via heavy metals contamination. The harm is likely to be great, causing serious health problems, such as cancer. Finally . . . the risk of such seepage cannot be eliminated through reasonable care. In order to be profitable, a mine must presumably create abnormally vast piles of waste that cannot

— 24 —

1   reasonably be isolated from the surrounding air and soil. Whatever is
2   in these waste piles will inevitably diffuse into the surrounding
3   environment. *Roeder v. Atlantic Richfield Co.,* No. 3:11-cv-105-RCJ-RAM, 2011.

4   69.    The court applied that the strict liability rule in the *Dutton* case, an
5   action by cattle ranchers against a phosphate manufacturer for damage to livestock
6   and crops from the release of fluorine into the atmosphere in a rural area. *Dutton*
7   *v. Rocky Mountain Phosphates,* 151 Mont. 54, 438 P.2d 674, 680 (1968) (quoting W.
8   Prosser, *Prosser on Torts* § 59, at 329 (2d ed. 1955)). *Harmon v. Billings Bench Water*
9   *Users Ass'n,* 765 F.2d 1464, 1468 (9th Cir. 1985). *McLane v. Northwest Natural Gas*
10   *Co.,* 255 Or. 324, 467 P.2d 635 (1970) (explosion of stored gas in populous area).

11   70.    An activity might be reasonably safe if performed in an isolated area,
12   yet involve an unreasonable risk of harm if conducted in a highly populated area.
13   E.g., blasting might be ultrahazardous when conducted in developed areas but not
14   when conducted in deserted locations. *Smith v. Lockheed Propulsion Co.*, supra, 247
15   CA2d at 786, 56 CR at 138; see also *Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.),*
16   supra, 197 CA3d at 1143, 243 CR at 424; Luthringer v. Moore, supra, 31 C2d at
17   498, 190 P2d at 7].

18   71.    While sulfuric acid in minute quantities may be used extensively in
19   various commercial applications, its handling and storage in large quantities is
20   rare (not of "common usage"). *Edwards v. Post Transp. Co., supra.* Similarly,
21   industrial use of PCBs might be widespread, but it is an "ultrahazardous activity"
22   if not commonly used in electrical transformers in densely populated areas. *Ahrens*
23   *v. Sup.Ct. (Pacific Gas & Elec. Co.),* supra, 197 CA3d at 1143, 243 CR at 424. Use
24   of hydrocyanic acid gas in fumigating commercial buildings is ultrahazardous.
25   *Luthringer v. Moore*, supra, 31 C2d at 498, 190 P2d at 7] Using explosives in the
26   vicinity of a residential area is ultrahazardous. *Balding v. D.B. Stutsman, Inc.*
27   (1966) 246 CA2d 559, 564, 54 CR 717, 720.

28   72.    The  court  in *Williams* discussed *Luthringer  v.  Moore,* 31  Cal.2d

489, 190 P.2d 1 (1948), which applied strict liability based on the ultrahazardous activity doctrine in connection with the use of hydrocyanic acid gas, a deadly chemical, in fumigating a small shop to exterminate vermin.  Also, the court in *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir. 1987), found that a drilling operation was not an ultrahazardous operation as a matter of law. The court stated in dicta that one of the categories of "ultrahazardous activity" was the "storage of toxic gas."

73.   E.H. Schoplen in his article, *Landowner's Or Occupant's Liability In Damages For Escape, Without Negligence, Of Harmful Gases Or Fumes From Premises,* 54 A.L.R.2d 764, 768 (1957 Supp. 1987), found liability had been considered in this area based on the theory of ultrahazardous activities. One was the California case, *Luthringer,* predicating strict liability on the escape of gases; "Hydrocyanic acid gas is defined as a "dangerous or lethal chemical" in the statutes dealing with licensing of those engaged in the pest control business (Bus. Prof. Code, § 8513.)" *Luthringer v. Moore*, 31 Cal.2d 489, 497 (Cal. 1948).

74.   In *State Dep't of Envtl. Prot. v. Ventron Corp*., 94 N.J. 473, 468 A.2d 150 (1983), the State of New Jersey sued various corporations that had carried on mercury processing operations at a site for almost fifty years. *Anderson v. Teck Metals, Ltd.*, No. CV-13-420-LRS, 10-14 (E.D. Wash. Jan. 5, 2015). Mercury and other toxic wastes are "abnormally dangerous," and the disposal of them, past or present, is an abnormally dangerous activity. We recognize that one engaged in disposing of toxic waste may be performing an activity that is of some use to society. Nonetheless, "the unavoidable risk of harm that is inherent in it requires that it be carried on at his peril, rather than at the expense of the innocent person who suffers harm as a result of it." *Restatement (Second) [of Torts* § 520], comment h at 39. *Anderson v. Teck Metals, Ltd.*, No. CV-13-420-LRS, 10-14 (E.D. Wash. Jan. 5, 2015).

75.   The Restatement specifically addresses this issue, stating that

— 26 —

1   "[t]ypical abnormally dangerous activities, under the rule stated in this Section,

2   include: Water collected in quantity in unsuitable or dangerous place . . .

3   Explosives in quantity in a dangerous place . . . Inflammable liquids in quantity in

4   the midst of a city . . . Blasting, in the midst of a city . . . Pile driving, with

5   abnormal risk to surroundings . . . **Release into air of poisonous gas or dus**t . . .

6   Drilling oil wells or operating refineries in thickly settled communities . . .

7   production of atomic energy . . . ." Restatement (Second) of Torts § 519 (1977).

8   The law recognizes some substances as inherently dangerous. Poisonous or

9   dangerous drugs, as well as dangerous chemicals, are familiar examples of

10   substances recognized as inherently dangerous. *Kajiya v. Department of Water*

11   *Supply* , 2 Haw. App. 221, 629 P.2d 635, 639 (1981)." *Schuck v. Beck*, 497 P.3d 395,

12   416 (Wash. Ct. App. 2021). See Request for Judicial Notice specifically Exhibit E

13   gases, Exhibits C and N on gas hazards and modeling, and Exhibit O on Zoning

14   and Fire code for toxic gases.

15   76.   See, the poisonous gas or dust cases: "*Luthringer v. Moore*, 31 Cal.2d

16   489, 190 P.2d 1 (1948) (fumigation with cyanide gas); *Gotreaux v. Gary*, 232 La.

17   373, 94 So.2d 293 (1957), appeal transferred, 80 So.2d 578 (crop dusting); *Dutton*

18   *v. Rocky Mt. Phosphates*, 151 Mont. 54, 438 P.2d 674 (1968) (fluorine); *Young*

19   *v. Darter*, 363 P.2d 829 (Okla. 1961) (herbicide spray); *Loe v. Lenhardt*, 227 Or.

20   242, 362 P.2d 312 (1961) (crop dusting)." Restatement (Second) of Torts § 519

21   (1977). Those cases focus on the activity itself as being abnormally dangerous -

22   not simply the conditions that result. For example, fumigation with cyanide gas,

23   dusting crops with poison, and releasing fluoride from phosphate rock have been

24   found abnormally dangerous activities - not the resulting harm the activities

25   caused. *In re E. 1. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, Civil Action 2:13-

26   md-2433, 29-30 (S.D. Ohio Jul. 6, 2015).

27   77.   Although it is not possible to formulate an all-inclusive list of

28   dangerous agencies, an inherently dangerous substance has been defined as "one

— 27 —

burdened with a latent danger or dangers which derives from the very nature of the substance itself." *Hobart v. Sohio Petroleum,* 255 F. Supp. 972, 975, *aff'd* 376 F.2d 1011 (D.C. Miss. 1966). Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous. 65 C.J.S. *Negligence* § 100(2)(b) (1966).

## VI. CONCLUSION

In conclusion, Defendant's Motion to Dismiss should be denied for the reasons outlined above. Further, Plaintiff grieves as to the extensive amount of time she had to spend preparing these responses, including injuries of emotional distress in having to read and response to even more false allegations against her, and lack of sleep for two days to even file this response a day late.

The California Constitution is supposed to protect victims like Gjovik and ensure they are "to be treated with fairness and respect for … her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the … justice process." (Cal. Const., Art. I, § 28(b)(1). Defendant should please stop harassing the Plaintiff.

Plaintiff also respectfully requests that if any claims are dismissed or stricken, she at least be given an opportunity to try to amend.

Dated: July 31, 2024.

Signature:

_____

1   **/s/ Ashley M. Gjovik**

2   *Pro Se Plaintiff*

3

4

5   **Email:** legal@ashleygjovik.com

6   **Physical Address**:

7   Boston, Massachusetts

8   **Mailing Address:**

9   2108 N St. Ste. 4553 Sacramento, CA, 95816

10   **Phone**: (408) 883-4428

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28