Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

```
ASHLEY GJOVIK,                  )
                                )
          Plaintiff,            )
                                )
     VS.                        )     NO. 23-CV-04597-EMC
                                )
APPLE, INC.,                    )
                                )
          Defendant.            )
_____  )
```

San Francisco, California
Tuesday, July 16, 2024

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        ASHLEY M. GJOVIK, PRO SE
        2108 N Street, Suite 4553
        Sacramento, CA 95816

For Defendant:
        ORRICK, HERRINGTON & SUTCLIFFE LLP
        405 Howard Street, 7th Floor
        San Francisco, CA 94105
  BY:  **KATHRYN G. MANTOAN, ATTORNEY AT LAW**

        ORRICK, HERRINGTON & SUTCLIFFE LLP
        1000 Marsh Road
        Menlo Park, CA 94025
  BY:  **MELINDA S. RIECHERT, ATTORNEY AT LAW**

REPORTED REMOTELY BY:  Kendra A. Steppler, RPR, CRR
                  Official United States Reporter

<u>Tuesday - July 16, 2024</u>                                    <u>1:30 p.m.</u>

<u>P R O C E E D I N G S</u>

---o0o---

   **THE COURTROOM DEPUTY:**  These proceedings are being
recorded by this court.  Any other recording of this
proceeding, either by audio, video, including screenshots or
any other copying of the hearing, is strictly prohibited.

   This Court is now in session, the Honorable Edward M. Chen
presiding.

   Court is calling the case Gjovik v. Apple, Inc., Case
Number 23-4597.

   Please state your appearance for the record, beginning
with the plaintiff.

   **MS. GJOVIK:**  Hi, I'm Ashley Gjovik.  I'm the
plaintiff.

   **THE COURT:**  All right.  Good afternoon, Ms. Gjovik.

   **MS. GJOVIK:**  Good afternoon.

   **MS. RIECHERT:**  Melinda Riechert appearing for the
defendant, Apple.

   **THE COURT:**  All right.  Good afternoon, Ms. Reichert.

   **MS. MANTOAN:**  And Katie Mantoan, also from Orrick,
also appearing for Apple.

   **THE COURT:**  All right.

   **MS. MANTOAN:**  Thank you.

   **THE COURT:**  Thank you, Ms. Mantoan.

```
 1        I understand that defendants have just filed, maybe
 2   yesterday, a motion to dismiss the most recent complaint; is
 3   that correct?
 4            MS. RIECHERT:  That's correct, Your Honor.
 5            THE COURT:  And does it seek dismissal -- I haven't
 6   had a chance to really look at it -- does it seek dismissal of
 7   some or all claims?
 8            MS. RIECHERT:  Some, Your Honor, not all.
 9            THE COURT:  Okay.
10            MS. RIECHERT:  It keeps the employment claims in,
11   essentially.
12            THE COURT:  Employment claims.  Okay.  So -- and
13   what's -- so far -- as I understand it, what's been produced so
14   far are things primarily along the lines of General Order 71 on
15   the employment side.  Is that what's -- maybe if someone can
16   bring me up to date just roughly --
17            MS. GJOVIK:  Yeah.
18            THE COURT:  -- what's been produced so far.
19            MS. GJOVIK:  I didn't believe that General Order 71
20   applied, because the website for the court says it would be
21   added to the docket.  And I found other cases where it was
22   specifically noted in the docket and said if it's not noted, it
23   doesn't apply.
24        I was also really worried that if we did the General
25   Order 71, it could interfere with the nonemployment claims.
```

1    That we wouldn't have the normal procedure with the -- all the

2    claims in the case.

3         **THE COURT:**  Well, let me ask the defendants, then,

4    what's your view -- we have sort of concurrent sets of claims.

5    Some are employment related that might fall under, in a

6    traditional situation, General Order 71.  But then there are

7    environmental and other claims, as well.

8        What's your vision of how 71 and the rest of discovery --

9    putting aside the question about the stay -- but once

10   discovery -- if there are employment claims remaining and if

11   there are, for lack of a better word, environmental claims,

12   should -- should General Order 71 apply alongside of normal

13   discovery, or how do you -- how does the defendant see it?

14        **MS. RIECHERT:**  Yeah.  We believe that General Order 71

15   applies.  If there are employment claims, there are employment

16   claims, and, therefore, we believe General Order 71 applies.

17   We complied with General Order 71 with respect to the

18   employment claims.  The nonemployment claims are the ones that

19   are subject to the motion to dismiss.

20        **THE COURT:**  Okay.

21        **MS. GJOVIK:**  May -- may I --

22        **THE COURT:**  Yeah.

23        **MS. GJOVIK:**  Thank you, Your Honor.

24        I just want to say, if General Order 71 was to apply,

25   whether it actually did or we just decide to apply it, I would

1  say that the defendant has not completed all the disclosures

2  listed on that page.  There's a lot of stuff I haven't received

3  yet.  So whether or not it applies, I think there's still more

4  to do --

5          **THE COURT:**  Okay.

6          **MS. GJOVIK:**  -- even under that umbrella.

7          **THE COURT:**  Okay.  Let me ask about the defendant's

8  position with respect to the stay.  If -- the motion to dismiss

9  is directed, you say, at the nonemployment-related claims; is

10  that correct, Ms. Riechert?

11          **MS. RIECHERT:**  That's correct, largely.

12          **THE COURT:**  Is there -- there's -- so there's no

13  reason to halt the GO 71 process, at least in these early

14  stages; is there?

15          **MS. RIECHERT:**  There is none.  And that's why we

16  complied with it.

17          **THE COURT:**  Okay.  And so the kind of discovery that

18  you think should be delayed because of the pendency -- what are

19  you anticipating that that would look like?  Or what kinds of

20  things that -- would be coming -- you anticipate coming your

21  way -- that you would like to defer until the ruling on the

22  pleadings?

23          **MS. RIECHERT:**  Anything that's not related to the

24  employment claims that are not the subject to the motion to

25  dismiss.  We don't see there's any benefit to doing discovery

1   on a claim that we believe should be dismissed.

2           **THE COURT:**  Well --

3           **MS. RIECHERT:**  We'd like you to rule on the motion to

4   dismiss, and then we can do the discovery.

5           **THE COURT:**  All right.  Well, let me ask you -- I

6   mean, it is -- I hear this from defendants often, that we'd

7   like to defer discovery until the pleadings are settled.  And

8   my usual response is, well, that's not the typical way it's

9   done, unless there's something pretty extraordinary, like

10  there's an obvious statute of limitations problem or a standing

11  problem.

12       What I typically do is say, well, let's -- let's keep --

13  take into account that there is a pending motion.  But

14  perhaps -- that there can be the commencement of some

15  high-level discovery that's not cost-prohibitive but at least

16  sort of gets the balling rolling, whether it's some basic, you

17  know, fundamental document productions that are not extremely

18  voluminous or -- you know -- I don't know.  But, I mean, it

19  wouldn't be depositions and that kind of thing, at this point,

20  but kind of just to start that process.

21       And, you know, the discussions -- if this is one of those

22  cases where there's a lot of digital documents and searching --

23  you know -- the usual discussion about what the scope of the

24  search is going to be, what documents are retained, how many

25  custodians, et cetera -- I don't see why those kinds of

1  early -- the kinds of things you'd do in the first 60 days, or

2  so, to kind of, you know, lay the groundwork without getting

3  into deep, extensive discovery, which will come if those claims

4  survive.

5      So my inclination is -- I'll call it sort of a staging

6  process, not a complete halt.  On the other hand, the door's

7  not wide open.  But at least get some of the preliminaries

8  done, the groundwork, maybe some basic requests.  I mean, there

9  is the early disclosures.  I don't know if -- you know -- I

10  mean, the Rule 26 disclosures probably should proceed.

11          **MS. RIECHERT:**  We've done those, as well, Your Honor.

12          **THE COURT:**  Okay.

13          **MS. GJOVIK:**  Only for employment though.  They did not

14  do it for any of the other claims.

15          **THE COURT:**  All right.  Well --

16          **MS. RIECHERT:**  So -- so we think that the -- between

17  the GO 71 disclosures -- we also have the companion Department

18  of Labor case, and we're going through discovery on that case,

19  as well.  So we just -- we're fine with doing discovery on the

20  employment cases.  We believe that -- on the employment

21  claims -- we believe we're doing that -- have done that.  It's

22  the nonemployment claims that we think should be dismissed,

23  that we don't want to open discovery, because that would be a

24  whole additional area of discovery that we don't think is

25  necessary at this stage.

1          THE COURT:  All right.

2          MS. RIECHERT:  The motion will be ruled on I would

3    think in a month or so.

4          THE COURT:  Well --

5          MS. GJOVIK:  Your Honor, I was hoping to get your --

6    sorry, go ahead.

7          THE COURT:  Go ahead.  Go ahead.

8          MS. GJOVIK:  I was hoping to get your guidance today,

9    because I'm very confused by the motion Apple filed.  And I'm

10   new here.  This is my first lawsuit.  But it looks like they're

11   rechallenging some of the decisions you already made under

12   this --

13         THE COURT:  Oh, well, I haven't looked at it, so I

14   can't --

15         MS. GJOVIK:  Okay.

16         THE COURT:  I'm not in a position to give you

17   guidance.  I mean, if you feel that there's some parts of that

18   that are improper for some reason, you can -- that can be part

19   of your response.  But, frankly, I haven't -- I haven't looked

20   at it.  It just got filed yesterday.

21         MS. GJOVIK:  Understood.

22         THE COURT:  And normally --

23         MS. GJOVIK:  My thought, though, is they're

24   challenging ultrahazardous under the exact same theory that

25   they did last time that you already approved to go forward.

1    And then they had waived nuisance, because they didn't

2    challenge nuisance, but now they're challenging it.

3        So I agree with your staging, and that's probably

4    practically right too, but I also am kind of worried about

5    halting everything else if it seems unlikely, procedurally,

6    that they would even be considered.

7            THE COURT:  Well, I'm not going to weigh in, because I

8    haven't looked at it on the potential merits.  But my usual

9    rule -- which I will apply here because I think there's a low

10   cost -- and that is I do want to start the wheels -- the

11   gears -- turning on the nonemployment stuff.  I'd like you to

12   meet and confer to talk about --

13           MS. RIECHERT:  On the employment stuff?

14           THE COURT:  On the nonemployment stuff.  The

15   employment stuff will be covered by General Order 71 --

16           MS. RIECHERT:  Okay.

17           THE COURT:  -- in the early disclosures.  I think

18   there should be the early disclosures on the nonemployment

19   stuff.  And I'd like you to meet and confer to talk about, you

20   know, sort of a -- what discovery -- high-level discovery --

21   might look like over the next, let's say, 60 days.  Then maybe

22   a handful of key documents that could be exchanged or that

23   could be sought.  Information about document retention, if

24   that's an issue -- what's available and what -- you know --

25   what the lay of the land is in terms of access to

1  documentation.

2     So I think a fair amount can be accomplished without

3  getting deep into discovery in the next 60 days while I have a

4  chance to look at the motion and then hopefully rule on it

5  quickly.  And then we can decide.  If I decide to dismiss all

6  those claims, then there wouldn't be a whole lot of time

7  invested in it.  A little bit.  But at least it opens the door

8  then.  If there's some claims that survive, we'd be set up to

9  go to the next stage.  So I'd like you to meet and confer

10  about -- I call it "Stage 1."

11        MS. RIECHERT:  Your Honor, if I might speak briefly on

12  that subject --

13        THE COURT:  Yeah.

14        MS. RIECHERT:  -- with respect to the meet-and-confer.

15  We did meet-and-confer with the plaintiff with respect to the

16  motion to dismiss.  The plaintiff wanted to record that call.

17  We said that we did not.  I declined to allow her to record the

18  call, and she recorded the call anyway.  And so I would like

19  for us not to have to meet-and-confer.  We believe that the

20  recording was not permitted by California law.  And I don't

21  think we should be required to meet-and-confer and have calls

22  recorded against my consent and in violation of California law.

23        THE COURT:  Okay.

24        MS. GJOVIK:  Your Honor, the defendant is

25  intentionally misrepresenting what that was.  That was me

1  gathering evidence for a pending NLRB proceeding where these

2  lawyers were named in December, and it was further evidence of

3  that to give strictly to NLRB as part of their investigation as

4  well as a new charge.  I explained this.

5      And the recent *Starbucks* NLRB decision last year made very

6  clear that the *Garmon* preemption applies to those two-way

7  consent laws if you're gathering evidence for NLRB.  So I'm

8  kind of distressed they continue to bring it up with this

9  framing, which sounds like I'm -- have misconduct, but I'm

10  actually trying to help the government investigate.

11      I'm also kind of concerned because, even before that

12  recording, Apple repeatedly refused -- they didn't want to meet

13  and confer.  The last time we talked about meet and conferring,

14  they demanded there be no witnesses or record.  But they've

15  already used that meeting we had -- the one without a court

16  reporter or anything -- and I feel like misrepresented our

17  conversation in my Department of Labor case.  And I filed a

18  complaint about that.

19      So I -- I would be happy to meet with Apple and talk.  I

20  do prefer to have a record based on, I mean, what's happening

21  in this lawsuit.  But that's also part of my lawsuit from three

22  years ago --

23          **THE COURT:**  All right.  Well, there's --

24          **MS. GJOVIK:**  -- is this kind of stuff.

25          **THE COURT:**  There are separate issues here.  Whatever

1    you do with respect to MLRBs is a separate question.  I'm

2    talking about meeting and conferring to see if you can come to

3    an agreement.  There's nothing binding coming out of that until

4    there's an agreement.  So there's no need to record that.

5        And I can't order and I won't order, at this juncture,

6    recording of an informal meet-and-confer just to see if you can

7    agree on a discovery plan for the next, let's say, 60 days or

8    90 days.  It's a very narrow scope.  It's not intended for

9    anybody to make admissions.  It's intended to say here's what

10   we can do, et cetera, et cetera.

11       Now, if it gets to a point where the parties continue to

12   have differing versions of, well, you agree to do X, and I

13   agree to do Y; no, you didn't agree to do X, et cetera, et

14   cetera, you know, then I will consider, you know, other --

15   other things.

16       Now, one of the things I am considering and I will do --

17   I'm also going to appoint a magistrate judge to assist with

18   discovery.  And if there's a problem with the meet-and-confer,

19   there's somebody you can go to very quickly if -- that can

20   manage this discovery.  So I'm going to assign that.  It will

21   go to a randomly assigned magistrate judge.  And you'll get

22   notice of that.

23           **MS. GJOVIK:**  Your Honor --

24           **THE COURT:**  But that magistrate judge will act under

25   my directive.  And that is for the parties to meet-and-confer,

1    figure out Phase 1 -- or Stage 1 -- of the nonemployment.  That

2    the GO 71 will apply concurrently to the employment so that

3    we're not at a total standstill.  But discovery's got to

4    proceed sort of phased.  Because if I end up dismissing all the

5    nonemployment cases, then there won't be any more discovery.

6    So we will address that.

7        So I will give some overall directive with respect to

8    staging.  But in terms of working out the details, if there's

9    dispute over what the scope should be for Phase 1, I want the

10   magistrate judge to help you all resolve that.  So --

11           **MS. RIECHERT:**  Can we have an agreement with -- from

12   Your Honor that she will not record any phone calls that we

13   have going forward?

14           **MS. GJOVIK:**  I gathered evidence for the federal

15   government for an ongoing --

16           **THE COURT:**  Okay.

17           **MS. GJOVIK:**  -- government investigation.

18           **THE COURT:**  What I'm going to order is that, with

19   respect to this case, any meet-and-confer, whether it's by

20   phone or live, will not be recorded unless I order or the

21   magistrate judge orders otherwise.

22       I don't have jurisdiction over whatever NLRBs.  If there's

23   a call with respect to some other proceeding, I don't have

24   jurisdiction over that, so I can't say "yes" or "no" on that

25   front.  So your conversations should be clear that if you're

1    talking about this case before me, that won't get recorded.

2    Now, if you want to have another conversation about NLRB

3    evidence gathering, that's between you all and the NLRB, not --

4    I'm not intervening there.

5            MS. GJOVIK:  Understood, Your Honor.  I am concerned

6    though -- I mean, this is four years running -- about

7    misrepresentations of communications when they're not written.

8    This has been an ongoing issue with the defendant.  And I even

9    asked if I can bring a witness just to sit with me, so if

10   someone had to testify to what happened, there could be someone

11   that's not just me.  And they said "no," expressly.   If

12   recordings are completely forbidden, can I get approval to have

13   a witness with me?

14           THE COURT:  I'm going to allow the magistrate judge to

15   determine what is the best process for you all to

16   meet-and-confer, whether you meet and confer in a physical

17   place, maybe with a magistrate judge, or, you know, you can

18   talk to the magistrate judge about the disputes you've had and

19   whether it makes any sense or not, at this point, until further

20   developments.

21           So let me ask about ADR.  Defendant indicates that there's

22   been a meet-and-confer, but -- and I see that plaintiff's

23   preference -- what are your thoughts about mediation or some

24   form of ADR?

25           MS. RIECHERT:  We're willing to consider it at some

1    point, Your Honor; we just think it's premature right now.

2          **THE COURT:** All right. Would that "some point" likely

3    be, for instance, after the pleadings are set?

4          **MS. RIECHERT:** Potentially. And I -- maybe some

5    deposition -- the deposition of the plaintiff. I'm not sure

6    yet. Usually I like to take the deposition of the plaintiff to

7    be able to provide a full case assessment to my client.

8          **THE COURT:** All right.

9          **MS. RIECHERT:** And then we can talk about --

10         **THE COURT:** And that's one of the things I also want

11   you to meet-and-confer about. Because, normally, I also phase

12   discovery in terms of trying to -- with an eye towards ADR.

13   That is, there has to be a certain amount of exchange of

14   information to have the parties intelligently talk about their

15   settlement position. And it may be sometimes that depositions

16   are required, sometimes not, if it's a document-heavy case.

17   But if it's one of those cases where a deposition is required,

18   sometimes I'll allow each side to take a deposition, maybe two.

19       But I'd like you to meet-and-confer to talk about,

20   number one, which form of ADR, whether you want mediation,

21   Court-sponsored, private mediation, settlement conference

22   before another magistrate -- a different magistrate judge than

23   the discovery judge -- and then what kind of discovery do you

24   need in order to prepare for that ADR process. I'd like for

25   you to discuss that, also, so that when we come back together

 1  next time, we have a plan.  So that will also be included in
 2  the meet-and-confer.
 3          **MS. GJOVIK:**  Your Honor, may I ask a question?
 4          **THE COURT:**  Yeah.
 5          **MS. GJOVIK:**  Yeah.  So the General Order 71 -- I
 6  assume you're referring to that as kind of the general, like,
 7  employment whistleblower case portfolio.  The scope is really
 8  prescribed on it.  And there is stuff that I would want to
 9  request beyond just what's on that paper and some stuff I don't
10  think would apply.  Are you saying more like start discovery
11  generally on the employee --
12          **THE COURT:**  Yeah.  I mean, the way -- the way General
13  Order 71 works, it's like an initial phase.  I mean, there's
14  some things that should be produced in every case, whether it's
15  the employment file, whether it's -- you know -- et cetera, et
16  cetera.  That's not to say that's the only discovery you get,
17  because -- but it's meant to get that early exchange out often
18  to facilitate, for instance, a mediation or to guide future
19  discovery.
20          So it does not -- I don't think -- and I've never used
21  General Order 71 to say, well, that's -- that's the lid.  You
22  still have rights under the Federal Rules of Civil Procedure.
23  There's a presumptive limit on the number of depositions, the
24  number of interrogatories, et cetera, et cetera.  But this is
25  intended to get the basic information out without having to go

 1    through the formal process of formally requesting the

 2    employment file or the wage records or that kind of thing.

 3         MS. GJOVIK:  So, for now, do you want us to stop at

 4    the scope of General Order 71?

 5         THE COURT:  I think -- since we're only talking about

 6    60 days, I think whatever is to be exchanged under General

 7    Order 71 plus the early disclosures under Rule 26 -- that

 8    should give you a pretty good start.  And then let's revisit it

 9    once we hear the motion to dismiss, and we'll get a better idea

10    where this is at.

11         So you've noticed the date -- what date have you noticed,

12    Ms. Riechert, for the hearing --

13         MS. RIECHERT:  I think it's the 22nd of August.

14         THE COURT:  Okay.  Well, then I'll double that up as a

15    further status conference, as well, so we can talk about some

16    of these things, including ADR, further discovery, et cetera,

17    et cetera.  Hopefully, at that point, I can give you a pretty

18    good idea where I see that motion to dismiss.  If I don't rule

19    from the bench, you'll certainly get a flavor for where I think

20    it's going and what may be left.  So we'll double that up as a

21    hearing on the motion as well as a status conference.

22         Meanwhile, I will appoint a magistrate judge to assist you

23    with any meet-and-confer disputes, or discovery disputes, scope

24    questions.  And then we'll talk about ADR.  I'd like you to

25    think about whether you -- what form of ADR would be useful.

```
 1        Let me ask -- I do have a question about the relationship
 2   between the various administrative actions here that are going
 3   on.  There's --
 4            MS. GJOVIK:  Department of Labor and NLRB.
 5            THE COURT:  And NLRB.  What is -- what are the
 6   parties' views about the interrelationship and the effect of
 7   one versus -- on the other?  Is this Court -- will the NLRB
 8   proceeding, for instance, or Department of Labor -- will that
 9   affect --
10            MS. GJOVIK:  Yes.
11            THE COURT:  -- the scope of this case?
12            MS. GJOVIK:  And vice versa.  I'm expecting claim
13   preclusion issues, at least probably through NLRB, even though
14   I wouldn't be a party.  Department of Labor is going to be some
15   of the exact same questions we're asking in this case.  So my
16   plan was to figure out which one can go first and -- which one
17   I'd prefer -- but I wouldn't do both, because, of course, you
18   don't want to do it twice.
19        I was also -- I've mentioned in the memo -- hoping if
20   there's some way we can do some kind of coordination with the
21   ALJ on Department of Labor since that's a concurrent hearing.
22   But there's been a lot of confusion about how these cases
23   interact.  Like, defendant introduced one of my civil
24   complaints as -- to the Department of Labor judge and asked him
25   to read that in as part of their case.  It's just been weird.
```

1  So if there's a notice of pendency I'm supposed to file or some

2  kind of request that there can be some kind of coordination,

3  I'd like to do that.

4       **THE COURT:**  All right.

5     Ms. Riechert, your views about the interrelationship and

6  whether there's something we should do to take into account

7  these administrator proceedings?

8       **MS. RIECHERT:**  I believe we filed a notice of pendency

9  or we indicated in our case management conference statement

10  that there were with these related proceedings.  The Department

11  of Labor case is going to trial next March.  And it will

12  involve the same claims -- many of the same claims -- that we

13  have here.  We do have a motion to dismiss in that case.  But

14  if the motion to dismiss is not granted in full, then there is

15  a hearing set for next March.

16       **THE COURT:**  And that will result in some adjudication

17  after administrative hearing and evidentiary hearing?

18       **MS. RIECHERT:**  That's correct, Your Honor.

19       **MS. GJOVIK:**  Notice and hearing and opportunity to --

20  the formal Administrative Procedure Act hearing.

21       **THE COURT:**  And so --

22       **MS. RIECHERT:**  And so we believe that it would be a

23  determination of whether the plaintiff, for example, was fired

24  for the reasons Apple stated or for the reasons the plaintiff

25  stated.

1          MS. GJOVIK:  Which is --

2          MS. RIECHERT:  But, again, we do have a motion to

3    dismiss pending in that case too.

4          MS. GJOVIK:  Which is why I'm very concerned about the

5    lack of coordination.  Because these cases could impact each

6    other so much on some very specific issues.  And, so far, it's

7    mostly just been me trying to coordinate from, like, the

8    background.  And I don't think it's --

9          THE COURT:  Well, when you say "coordinate," what do

10   you have in mind?

11         MS. GJOVIK:  So I don't know how this works either.  I

12   was reading the Conflicts Litigation Guide, and it sounds like,

13   depending on -- when you have multi-jurisdiction cases, it's

14   kind of customized for each situation.  And sometimes there is

15   help from usually the federal court of kind of getting the

16   ALJ -- I don't know if you guys talk to each other -- but kind

17   of aligning decisions and making sure when it's a decision like

18   exclude evidence or something that could very much impact how

19   the trial would go in the other case -- that both judges talk

20   about it before they'd make that decision.

21        Because Apple's -- in their motion to dismiss in

22   opposition to my motion amend in the Department of Labor case

23   are trying to exclude things already that would also then be

24   excluded in this case.

25         THE COURT:  Well, I don't -- I'm not familiar with all

1  the rules there.  So I don't know.  Their rules of evidence may

2  be different.  Their rules of procedure may be different.

3      Ms. Riechert, do you have any comments on coordination, or

4  not, or what this Court should do in light of these other

5  pending administrative proceedings?

6          **MS. RIECHERT:**  No.  I don't -- I don't think that

7  there's any way to coordinate the two.  They should go forth in

8  parallel.

9          **THE COURT:**  Yeah.  I don't -- sometimes we coordinate

10 with state courts that have parallel claims.  Sometimes -- you

11 know -- or with another federal court.  But with respect to an

12 agency, I'm loath to sort of interfere with whatever an agency

13 is doing.  And I don't know what might happen in terms of any

14 claim preclusion or not.  I guess we'll just have to cross that

15 bridge when we get there.

16     **MS. GJOVIK:**  I didn't think of separation of powers.

17 You're right.  You probably can't go to the agency.

18         **THE COURT:**  Yeah.

19     **MS. GJOVIK:**  Okay.  That makes sense.

20         **THE COURT:**  All right.  So -- well, we'll keep those

21 in mind.  And we'll see what happens in that regard.  But I do

22 have those in mind.  And we will have to -- and I'm sure that

23 the administrative agencies know there's this pendency of this

24 case and -- but, other than that, I don't know what else I can

25 do.

1    So let's -- let's just move forward on this pending

2  motion.  Let's move forward on discovery, hopefully with a plan

3  that you can agree to with or without the help of the

4  magistrate judge, and talk about an ADR process also when we

5  get together next month.  So it looks like I'll see you in

6  August it sounds like.

7            **MS. RIECHERT:**  Thank you very much, Your Honor.

8            **THE COURT:**  Great.  Thanks, everyone.

9            **MS. GJOVIK:**  Thank you.

10            **THE COURT:**  Thank you, Your Honor.

11                 (Proceedings adjourned at 1:53 p.m.)

12                       ---oOo---

13

14                 <u>**CERTIFICATE OF REPORTER**</u>

15       I certify that the foregoing is a correct transcript

16  from the record of proceedings in the above-entitled matter.

17

18  DATE:   Thursday, August 1, 2024

19

20

21       _____

22            Kendra A. Steppler, RPR, CRR

23          Official Reporter, U.S. District Court

24

25