**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:23-CV-04597-EMC

**ASHLEY M. GJOVIK**, *an individual*,

Plaintiff,

vs.

**APPLE INC.**, a corporation,

Defendant.

**PLAINTIFF'S NOTICE OF NEW 9TH CIRCUIT PRECEDENT & REQUEST FOR JUDIDICAL NOTICE**

*In Support of Plaintiff's Opposition to Defendant's Motions to Dismiss & to Strike*

**Motion Hearing & Case Management Conference:**
Dept: Courtroom 5 (Zoom)
Judge Edward M. Chen
Date: August 28, 2024
Time: 9:30 AM PT

1
2

## I.  Notice & Judicial Notice

3
4        Plaintiff Ashley Gjovik respectfully provides notice of new 9th Circuit legal
5    precedent and US District Court persuasive authority established over the last
6    three months (9th Circuit on July 25 2024; District Court in May 2024). The
7    precedent is material and directly relevant to the instant lawsuit; specifically,
8    Plaintiff's IIED (Outrage), Cal. Labor Code (§§ 1102.5, 6310, 98.6), and *Tamney*
9
10   claims and sub-claims.

11       The 9th Circuit case denied a Motion for Summary Judgement and the US
12   District Court of Vermont case denied a Motion to Dismiss, finding sufficient
13   claims for adverse employment actions based on coworker/manager harassment
14   that occurred through social media (Instagram and Facebook, respectively).
15

16       -   <u>Exhibit 1</u>: *Okonowsky v. Garland*, No. 23-55404 (9th Cir. Jul. 25, 2024).

17       -   <u>Exhibit 2</u>: *Su v. Bevins & Son, Inc.*, 2:23-cv-560 (D. Vt. May. 7, 2024).
18
19   The 9th Circuit decision is the first federal appellate decision to reference the new
20   US EEOC Guidance on Harassment in the Workplace released on April 29 2024
21   with guidance on social media harassment and coworker harassment. (<u>link to</u>
22   <u>EEOC website</u>).
23

24       -   <u>Exhibit 3:</u> (Analysis) *Expert Insights—when Social Media Posts Become*
25           *Workplace Harassment,* Wolters Kluwer Employment Law Daily, August
26           5 2024, WL 3644805.
27
28

In addition, Plaintiff Ashley Gjovik respectfully requests, pursuant to Fed. R. Civ. E. 201, that the court take Judicial Notice of court filings on matters material and directly related to this instant case, the new 9th Circuit precedent, and the pending Motions to Dismiss and Strike.

The attached court records in "Exhibit W" (continuing from the prior two requests for judicial notice) are from:

- *Gjovik v. State of Washington*, 2:22-cv-00807-RAJ-BAT (W.D. Wash. Jun. 28, 2022).

After Plaintiff was subjected to the retaliatory gag-order in March 2022, and it became illegal for her to draft appellate pleadings on the matter (she was forbidden from communicating broad concepts and specific terms on "any medium" except testifying under oath), she sued the state of Washington in a facial and as applied Constitutional challenge in June 2022. For the as-applied challenge, she filed exhibits to the docket with her complaint and motion for preliminary injunction. These documents and evidence were in support of her arguments that Apple was behind extensive harassment starting back in August 2021 and the gag-order, which prohibited her from talking about the harassment. She also argued that the gag order was orchestrated in retaliation and to obstruct her activism and federal charges.

Plaintiff requests judicial notice of the fact of what types of complaints Plaintiff made publicly in June 2022. (Of which Apple surely monitored as this was after their labor lawyers requested a copy of the court record for the matter

at the state Court of Limited Jurisdiction). Plaintiff requests judicial notice of the fact that certain documents were filed on certain dates, those documents included specific allegations and those documents contained records Plaintiff argued was evidence of wrongdoing by Apple (through a variety of agency, conspiracy, and other vicarious liability theories). Plaintiff does <u>not</u> request notice of the "truth" of any record.

Plaintiff requests judicial notice of what was public information at that time about her allegations of pre- and post-termination harassment, to support her arguments that Apple is liable for the harassment at least through ratification and acceptance of benefits under IIED and employment/labor claims.

- Exhibit W includes the following excerpts:

  o February 7 2022 "Evidence Report" memo excerpt filed 6/23/2022 to *Gjovik v State*, Docket No. 15 (43 pages).

    ▪ Note: this document was a primary focus of the litigation against Gjovik.

  o February 7 2022 "Conspiracy & Animus" memo filed 6/23/2022 to *Gjovik v State*, Docket No. 15 (25 pages).

  o March 1 2022 court testimony excerpt filed 6/21/2022 as exhibit of evidence to *Gjovik v State*, Docket No. 11 (7 pages).

  o March 2 2022 notice of complaint made against Plaintiff of 18 U.S. Code § 2252 (a Class C Felony), filed 6/9/22 exhibit of evidence to *Gjovik v State*, Docket No. 1 (1 page).

1

2        o   January 31 2022 Petition for Order of Protection excerpt filed

3            6/9/22 exhibit of evidence to *Gjovik v State*, Docket No. 1 (2

4            pages).

5    Further, all documents are on PACER and so the full versions and docket may be

6    referenced there if desired.

7        I verified the authenticity of each of these documents as described. A true

8    and correct version of each document is attached. I declare under penalty of

9    perjury this is true and correct.

10

11

12   Dated: August 19, 2024.

13   Signature:

14

15

16

17

18   _____

19   **/s/ Ashley M. Gjovik**

20   *Pro Se Plaintiff*

21

22   **Email**: legal@ashleygjovik.com

23   **Physical Address**:
     Boston, Massachusetts

24   **Mailing Address:**

25   2108 N St. Ste. 4553 Sacramento, CA, 95816

26   **Phone**: (408) 883-4428

27

28

1
2
## I. Notice & Judicial Notice

3
4      Plaintiff Ashley Gjovik respectfully provides notice of new 9th Circuit legal
5   precedent and US District Court persuasive authority established over the last
6   three months (9th Circuit on July 25 2024; District Court in May 2024). The
7   precedent is material and directly relevant to the instant lawsuit; specifically,
8   Plaintiff's IIED (Outrage), Cal. Labor Code (§§ 1102.5, 6310, 98.6), and *Tamney*
9
10  claims and sub-claims.

11      The 9th Circuit case denied a Motion for Summary Judgement and the US
12  District Court of Vermont case denied a Motion to Dismiss, finding sufficient
13  claims for adverse employment actions based on coworker/manager harassment
14
15  that occurred through social media (Instagram and Facebook, respectively).

16      -   Exhibit 1: *Okonowsky v. Garland*, No. 23-55404 (9th Cir. Jul. 25, 2024).

17      -   Exhibit 2: *Su v. Bevins & Son, Inc.*, 2:23-cv-560 (D. Vt. May 7, 2024).
18
19  The 9th Circuit decision is the first federal appellate decision to reference the new
20  US EEOC Guidance on Harassment in the Workplace released on April 29 2024
21  with guidance on social media harassment and coworker harassment. (link to
22  EEOC website).

23
24      -   Exhibit 3: (Analysis) *Expert Insights—when Social Media Posts Become*
25          *Workplace Harassment,* Wolters Kluwer Employment Law Daily, August
26          5 2024, WL 3644805.

27
28

In addition, Plaintiff Ashley Gjovik respectfully requests, pursuant to Fed. R. Civ. E. 201, that the court take Judicial Notice of court filings on matters material and directly related to this instant case, the new 9th Circuit precedent, and the pending Motions to Dismiss and Strike.

The attached court records in "Exhibit W" (continuing from the prior two requests for judicial notice) are from:

- *Gjovik v. State of Washington*, 2:22-cv-00807-RAJ-BAT (W.D. Wash. Jun. 28, 2022).

After Plaintiff was subjected to the retaliatory gag-order in March 2022, and it became illegal for her to draft appellate pleadings on the matter (she was forbidden from communicating broad concepts and specific terms on "any medium" except testifying under oath), she sued the state of Washington in a facial and as applied Constitutional challenge in June 2022. For the as-applied challenge, she filed exhibits to the docket with her complaint and motion for preliminary injunction. These documents and evidence were in support of her arguments that Apple was behind extensive harassment starting back in August 2021 and the gag-order, which prohibited her from talking about the harassment. She also argued that the gag order was orchestrated in retaliation and to obstruct her activism and federal charges.

Plaintiff requests judicial notice of the fact of what types of complaints Plaintiff made publicly in June 2022. (Of which Apple surely monitored as this was after their labor lawyers requested a copy of the court record for the matter

at the state Court of Limited Jurisdiction). Plaintiff requests judicial notice of the fact that certain documents were filed on certain dates, those documents included specific allegations and those documents contained records Plaintiff argued was evidence of wrongdoing by Apple (through a variety of agency, conspiracy, and other vicarious liability theories). Plaintiff does <u>not</u> request notice of the "truth" of any record.

Plaintiff requests judicial notice of what was public information at that time about her allegations of pre- and post-termination harassment, to support her arguments that Apple is liable for the harassment at least through ratification and acceptance of benefits under IIED and employment/labor claims.

- Exhibit W includes the following excerpts:

   o February 7 2022 "Evidence Report" memo excerpt filed 6/23/2022 to *Gjovik v State*, Docket No. 15 (43 pages).

      ▪ Note: this document was a primary focus of the litigation against Gjovik.

   o February 7 2022 "Conspiracy & Animus" memo filed 6/23/2022 to *Gjovik v State*, Docket No. 15 (25 pages).

   o March 1 2022 court testimony excerpt filed 6/21/2022 as exhibit of evidence to *Gjovik v State*, Docket No. 11 (7 pages).

   o March 2 2022 notice of complaint made against Plaintiff of 18 U.S. Code § 2252 (a Class C Felony), filed 6/9/22 exhibit of evidence to *Gjovik v State*, Docket No. 1 (1 page).

1
2
3
4

- o January 31 2022 Petition for Order of Protection excerpt filed 6/9/22 exhibit of evidence to *Gjovik v State*, Docket No. 1 (2 pages).

Further, all documents are on PACER and so the full versions and docket may be referenced there if desired.

I verified the authenticity of each of these documents as described. A true and correct version of each document is attached. I declare under penalty of perjury this is true and correct.

Dated: August 19, 2024.

Signature:


_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address**:
2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

# Appendix III: Exhibits

## FYI: Notice of New Precedent

| EXHIBIT NO. | RECORD DESCRIPTION | ASSOCIATED CLAIMS | KEY POINTS FOR GJOVIK V APPLE |
|---|---|---|---|
| **FYI EXHIBIT 1** | *Okonowsky v. Garland, No. 23-55404 (9th Cir. Jul. 25, 2024).*<br><br>**Case: Title VII**<br><br>**Question: Hostile Work Environment** | IIED (Outrage), Cal. Labor Code (§§ 1102.5, 6310, 98.6), and *Tamney* claims and sub-claims. | - Triable issues of fact for hostile work environment claim based on a coworker's Instagram posts about the plaintiff.<br>- Key factors included: coworkers following the account; coworkers 'liking' the posts; the coworker making the posts worked in a security function; the employer knew about the posts and did not stop the misconduct.<br>- Approved to move forward even though: Instagram account used an anonymous alias modeled after a workplace inside joke and did not identify the coworker; the posts about the plaintiff did not identify her by name. |

| EXHIBIT NO. | RECORD DESCRIPTION | ASSOCIATED CLAIMS | KEY POINTS FOR GJOVIK V APPLE |
|---|---|---|---|
| **FYI EXHIBIT 2** | *Su v. Bevins & Son, Inc.*, 2:23-cv-560 (D. Vt. May. 7, 2024).  **Case: FSLA (US DOL)**  **Question: Adverse Employment Action** | IIED (Outrage), Cal. Labor Code (§§ 1102.5, 6310, 98.6), and *Tamney* claims and sub-claims. | - Motion to Dismiss a FLSA retaliation claim was denied. Sufficient claim of adverse employment action found based on the employer posting negative comments about the ex-employee complainant on Facebook. <br> - Key factors included: employer's Facebook posts incited viewers to investigate the complainant; employer revealed complainant's criminal history; managers "liking" posts; employer's retaliatory posts directly referenced the FLSA case. <br> - Approved to move forward even though: harassment occurred after employee no longer worked at the company; employee was not directly notified of the Facebook posts. |
| **FYI EXHIBIT 3** | *Expert Insights—when Social Media Posts Become Workplace Harassment*. | n/a | - *Note: 2024 EEOC Guidance on Harassment in the Workplace* (Link) |

# Request for Judicial Notice

| EXHIBIT NO. | RECORD DESCRIPTION | ASSOCIATED CLAIMS | FACTS TO BE NOTICED |
|---|---|---|---|
| **EXHIBIT W** | *Court records from Gjovik v the State of Washington, 2:22-cv-00807-RAJ-BAT (2022).* | IIED (Outrage), Cal. Labor Code (§§ 1102.5, 6310, 98.6), and *Tamney* claims and sub-claims.<br><br>Supports theories of at least: Knowledge; Negligence; Agency; Vicarious Liability; Ratification; Retaliation; Accepting Benefits; Outrageous Conduct. | - The fact of what complaints Plaintiff made against Apple & employees in the February 7 2022 "Evidence Report" & "Conspiracy & Animus" memos filed 6/23/2022 to Dock. 15.<br>- The fact those complaints were public as part of the lawsuit docket no later than June 23 2022.<br>- The fact the petition against Plaintiff included a link to a document posted on Scribd titled "US-NLRB-Ashley-Gjovik-Inc-Jan-10-2022-Charge-Draft-1" under "Describe other incidents of harassment or stalking."<br>- The fact the document in the URL (the evidence report) was public in January 2022 (per the URL title and 1/31/22 petition).<br>- The fact that if Apple's lawyers requested a copy of this case file that they would have seen the petition and the repeated mentions of Gjovik's NLRB charge against Apple as the primary basis for the petition.<br>- The fact that on March 2 2022 web.com notified Plaintiff of a complaint filed about a document on her website, the document URL matches the Evidence Report and the "Subject" of the complaint. |

# Exhibits

# Exhibit 1

**Okonowsky v. Garland**, No. 23-55404
**(9th Cir. Jul. 25, 2024).**

*Decision & Order*

**New Precedent (FYI)**

2024 WL 3530231
United States Court of Appeals, Ninth Circuit.

Lindsay OKONOWSKY, Plaintiff-Appellant,

v.

Merrick B. GARLAND, Attorney
General, United States Attorney
General, Defendant-Appellee.

No. 23-55404
|
Argued and Submitted May 8, 2024 Pasadena, California
|
Filed July 25, 2024

**Synopsis**

**Background:** Female employee of Bureau of Prisons (BOP) brought action against the United States Attorney General asserting Title VII claim for discrimination on the basis of sex. The United States District Court for the Central District of California, Virginia A. Phillips, J., 2023 WL 3219534, granted summary judgment in favor of government. Employee appealed.

**Holdings:** The Court of Appeals, Wardlaw, Circuit Judge, held that:

[1] coworker's social media posts that "occurred" outside of work could be considered in totality of circumstances surrounding employee's Title VII claim for hostile work environment;

[2] fact issue existed as to whether work environment was objectively hostile;

[3] fact issue existed as to whether BOP's initial response to coworker's harassment reinforced, rather than remediated, harassment;

[4] fact issue existed as to whether BOP's response to coworker's harassing conduct was sufficiently prompt or adequate to remedy hostile work environment; and

[5] fact issue existed as to whether coworker's decision to delete his social media account was motivated by BOP's "investigative efforts."

Reversed and remanded.

West Headnotes (26)

**[1]    Federal Courts**  ⚷  **Summary judgment**

Court of Appeals reviews a district court's order granting summary judgment de novo.

**[2]    Federal Courts**  ⚷  **Summary judgment**
**       Federal Courts**  ⚷  **Summary judgment**

In reviewing de novo district court's grant of summary judgment, viewing the evidence in the light most favorable to the non-moving party, Court of Appeals must decide whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.

**[3]    Federal Courts**  ⚷  **Summary judgment**

In reviewing de novo district court's grant of summary judgment, Court of Appeals may not weigh the evidence or determine the truth of any matter.

**[4]    Summary Judgment**  ⚷  Employment
Practices; Discrimination

In a Title VII case involving a hostile work environment claim, what is required to defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[5]    Civil Rights**  ⚷  Hostile environment;
severity, pervasiveness, and frequency

To determine whether employee was subjected to sexually hostile work environment under Title VII, court examines three factors: (1) whether employee was subjected to verbal or physical conduct of sexual nature; (2) whether conduct was unwelcome; and (3) whether conduct was sufficiently severe or pervasive to alter conditions of employment and create abusive working environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[6]**   **Civil Rights** 🗝 Hostile environment; severity, pervasiveness, and frequency

Demonstrating that conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, as element of Title VII sexually hostile work environment claim, requires that employee show that her work environment was both subjectively and objectively hostile. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[7]**   **Civil Rights** 🗝 Hostile environment; severity, pervasiveness, and frequency

In analyzing objective hostility of working environment, for purposes of Title VII hostile work environment claim, court must look to totality of circumstances surrounding plaintiff's claim. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[8]**   **Civil Rights** 🗝 Hostile environment; severity, pervasiveness, and frequency

In analyzing objective hostility of working environment, for purposes of Title VII hostile work environment claim, court must assess frequency of discriminatory conduct, its severity, whether it was physically threatening or humiliating, or mere offensive utterance, and whether it unreasonably interfered with employee's work performance. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[9]**   **Civil Rights** 🗝 Hostile environment; severity, pervasiveness, and frequency

In analyzing objective hostility of working environment, for purposes of Title VII hostile work environment claim, courts must consider that the required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct, and the cumulative effect of conduct over time. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[10]**   **Civil Rights** 🗝 Hostile environment; severity, pervasiveness, and frequency

Simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not trigger Title VII's protections, for purposes of hostile work environment claim. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[11]**   **Civil Rights** 🗝 Admissibility of evidence; statistical evidence

Coworker's social media posts that "occurred" outside of work could be considered in totality of circumstances surrounding female Bureau of Prisons (BOP) employee's Title VII claim for sexually hostile work environment arising from posts directed at employee that contained sexually offensive content, where BOP's threat assessment team and leadership determined that coworker's supposedly "offsite" behavior violated its anti-harassment policy and its standards of employee conduct, which applied to conduct both within and outside of work, and memorandum by Department of Justice (DOJ) explained that government-wide standards of conduct applied to online communications at all times, regardless of whether they were at work, outside office, or using government equipment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[12]**   **Civil Rights** 🗝 Admissibility of evidence; statistical evidence

Even if discriminatory or intimidating conduct occurs wholly offsite, it remains relevant to the extent it affects the employee's working environment, for purposes of Title VII hostile work environment claim. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[13]    Civil Rights** 🔑 Questions of law or fact

**Summary Judgment** 🔑 Public employment

Genuine issue of material fact as to whether Bureau of Prisons' (BOP) failure to take reasonably prompt and effective steps to address coworker's conduct, namely, making social media posts including but not limited to jokes regarding inmate suicide, that plainly violated numerous BOP and Department of Justice (DOJ) policies, signaled to female employee that BOP had no intention of protecting her from coworker's harassing conduct and that he could act with impunity precluded summary judgment in favor of government on employee's Title VII claim for sexually hostile work environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[14]    Civil Rights** 🔑 Hostile environment; severity, pervasiveness, and frequency

Totality of the circumstances surrounding a Title VII hostile work environment claim includes offensive or retaliatory conduct which would not, in isolation, violate Title VII, as well as discriminatory conduct not specifically directed at the plaintiff. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[15]    Summary Judgment** 🔑 Public employment

District court failed to draw all reasonable inferences in female Bureau of Prisons (BOP) employee's favor, as required on government's motion for summary judgment in employee's Title VII action alleging sexually hostile work environment, when it determined that coworker's posts about prison's psychology department did not target employee specifically; staff members at prison understood that creator of social media

page was a custody officer in prison's special housing unit (SHU) based on page's content, and employee was psychologist assigned to the SHU, responsible for all of the duties of psychology department in the SHU. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[16]    Civil Rights** 🔑 Questions of law or fact

**Summary Judgment** 🔑 Public employment

Genuine issue of material fact as to whether coworker's social media posts about female Bureau of Prisons (BOP) employee were intended to, and had the effect of, harassing employee on basis of her sex, humiliating and degrading her, and intimidating her in an effort to shape her behavior in workplace and discourage future complaints about coworker's conduct, such that work environment was objectively hostile from perspective of a reasonable woman, precluded summary judgment in favor of government on employee's Title VII claim for sexually hostile work environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[17]    Civil Rights** 🔑 Questions of law or fact

**Summary Judgment** 🔑 Public employment

Genuine issue of material fact as to whether cumulative effect of three months of coworker's social media posts that targeted female Bureau of Prisons (BOP) employee, intimidated her, joked about sexually assaulting and shooting her, and endorsed sexual harassment and/or violence toward women co-workers generally, reactions of management-level officials who endorsed coworker's conduct even as employee expressed her concerns, and refusal of prison officials to respond to or update employee on status of investigation constituted work environment that was objectively hostile, precluded summary judgment in favor of government on employee's Title VII claim for sexually hostile work environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**Okonowsky v. Garland, --- F.4th ---- (2024)**

2024 Daily Journal D.A.R. 7021

**[18]**   **Civil Rights** 🔑 Hostile environment;
severity, pervasiveness, and frequency

Just as employer's reaction to single serious
episode of sexual harassment may form basis for
Title VII hostile work environment claim, so too
may employer's response to more frequent but
less severe conduct. Civil Rights Act of 1964 §
703, 42 U.S.C.A. § 2000e-2(a)(1).

**[19]**   **Civil Rights** 🔑 Knowledge or notice;
preventive or remedial measures

Employer is liable for Title VII hostile work
environment by failing to take immediate and
corrective action in response to co-worker's or
third party's sexual harassment that employer
knew or should have known about. Civil Rights
Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[20]**   **Civil Rights** 🔑 Knowledge or notice;
preventive or remedial measures

Reasonableness of an employer's remedy to
harassment, for purposes of Title VII sexually
hostile work environment claim, will depend on
its ability to stop harassment by the person who
engaged in harassment; if the remedy attempted
is ineffectual, liability will attach. Civil Rights
Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[21]**   **Civil Rights** 🔑 Knowledge or notice;
preventive or remedial measures

In evaluating the adequacy of the remedy in
response to sexual harassment, for purposes
of Title VII hostile work environment claim,
court may take into account remedy's ability
to persuade potential harassers to refrain from
unlawful conduct. Civil Rights Act of 1964 §
703, 42 U.S.C.A. § 2000e-2(a)(1).

**[22]**   **Civil Rights** 🔑 Questions of law or fact
**Summary Judgment** 🔑 Public employment

Genuine issue of material fact as to whether
initial steps taken by Bureau of Prisons (BOP)

in response to coworker's harassment of female
employee through social media posts, namely,
failing to respond to complaints, slow-walking
investigation, and transferring employee to
area where she continued to see coworker,
reinforced, rather than remediated, harassment,
and were ineffectual to stop coworker's conduct
or managers' endorsement of it, precluded
summary judgment in favor of government on
employee's Title VII claim for sexually hostile
work environment. Civil Rights Act of 1964 §
703, 42 U.S.C.A. § 2000e-2(a)(1).

**[23]**   **Civil Rights** 🔑 Knowledge or notice;
preventive or remedial measures

In addition to reviewing temporary steps
employer takes to deal with sexually harassing
conduct, for purposes of Title VII hostile work
environment claim, court must also look at
permanent remedial steps employer takes once it
has completed its investigation. Civil Rights Act
of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[24]**   **Civil Rights** 🔑 Knowledge or notice;
preventive or remedial measures

Remedial action taken by employer in response
to sexually harassing conduct, for purposes of
Title VII hostile work environment claim, must
include some form of disciplinary measures;
remedial measures must also be effective. Civil
Rights Act of 1964 § 703, 42 U.S.C.A. §
2000e-2(a)(1).

**[25]**   **Civil Rights** 🔑 Questions of law or fact
**Summary Judgment** 🔑 Public employment

Genuine issue of material fact as to whether
Bureau of Prisons' (BOP) completion of
investigation into coworker's social media posts
targeting female employee and issuance of cease-
and-desist letter to coworker was sufficiently
prompt or adequate to remedy hostile work
environment, given that BOP continued to
tolerate coworker's harassing conduct for more
than a month following letter and failed to
investigate conduct of management-level or

investigatory employees who subscribed to and/ or endorsed or condoned coworker's conduct, precluded summary judgment in favor of government on employee's Title VII claim for sexually hostile work environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[26]** **Civil Rights** 🔑 Questions of law or fact
**Summary Judgment** 🔑 Public employment

Genuine issue of material fact as to whether coworker's decision to delete his social media account, from which he made posts targeting female Bureau of Prisons (BOP) employee that contained sexually offensive content, was in fact motivated by reasons other than fear of BOP's "investigative efforts" to remedy hostile work environment, precluded summary judgment in favor of government on employee's Title VII claim for sexually hostile work environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

Appeal from the United States District Court for the Central District of California Virginia, A. Phillips, District Judge, Presiding, D.C. No. 2:21-cv-07581-VAP-AS

**Attorneys and Law Firms**

Andrew S. Pletcher (argued), Pletcher Law APC, Westlake Village, CA; Cory H. Hurwitz and Lindsay L. Bowden, Brock & Gonzales LLP, Los Angeles, California; for Plaintiff-Appellant.

Zakariya K. Varshovi (argued), Assistant United States Attorney; David M. Harris, Assistant United States Attorney, Chief, Civil Division; E. Martin Estrada, United States Attorney; United States Department of Justice, Los Angeles, California; for Defendant-Appellee.

Before: Kim McLane Wardlaw, Morgan Christen, and Mark J. Bennett, Circuit Judges.

**OPINION**

WARDLAW, Circuit Judge:

Lindsay Okonowsky, a staff psychologist in a federal prison, discovered that a corrections Lieutenant with whom she worked, and who was responsible for overseeing the safety of guards, prison staff, and inmates in the unit where she worked, operated an Instagram account, which was followed by more than one hundred prison employees. She learned that the Lieutenant had posted sexually offensive content about work, and that she was a personal target. When Okonowsky complained about the page to prison leadership, management told her the page was "funny"; the investigator whom the prison appointed to investigate Okonowsky's complaint told her the page's content was not "a problem"; and the Lieutenant began to increasingly target her with his posts in what Okonowsky reasonably perceived to be an effort to intimidate her and discourage her from making further complaints. Two months after Okonowsky first reported the Lieutenant's behavior, the prison directed the Lieutenant to cease acting in violation of the prison's Anti-Harassment Policy. The Lieutenant continued posting sexually hostile conduct for another month with no action by the prison. The Lieutenant's conduct and the prison's lack of a curative response to it ultimately drove Okonowsky to leave the prison in search of a different job.

Okonowsky sued the Bureau of Prisons under Title VII of the Civil Rights Act of 1964, claiming that the Bureau failed to take adequate measures to address a hostile work environment at the prison. The district court granted the government's motion for summary judgment, and Okonowsky appealed.

**\*2** We reverse and remand. The district court erred by considering only some of the evidence, and by applying incorrect legal standards that circumscribed the law concerning hostile work environment claims. We take this occasion to reaffirm that the totality of the circumstances in a Title VII sexually hostile work environment claim includes evidence of sexually harassing conduct, even if it does not expressly target the plaintiff, as well as evidence of non-sexual conduct directed at the plaintiff that a jury could find retaliatory or intimidating. We also reject the notion that only conduct that occurs inside the physical workplace can be actionable, especially in light of the ubiquity of social media and the ready use of it to harass and bully both inside and outside of the physical workplace.

2024 Daily Journal D.A.R. 7021

# I. BACKGROUND

## A. Factual Background

We begin by describing the events leading to this lawsuit, assuming the version of the facts most favorable to the non-moving party, here Okonowsky. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 964 (9th Cir. 2002).

Okonowsky began working as a psychologist at the Bureau of Prison's ("Bureau" or "BOP") Federal Correctional Complex Lompoc ("Lompoc" or "prison") in Lompoc, California in September 2018. When she arrived at Lompoc, Okonowsky was assigned as the psychologist for the Special Housing Unit ("SHU"), meaning she was responsible for all of the duties of the prison's psychology department in the SHU.

As the SHU psychologist, Okonowsky worked with custody staff to determine where inmates would be housed within the SHU so as to avoid conflict and violence among the inmates in the Unit. Okonowsky relied on SHU custody officers to take incarcerated individuals from their cells and transport them to their clinical appointments with her. She also conducted suicide risk assessments of incarcerated persons. If Okonowsky determined that a SHU inmate was at risk of self-harm, she could direct that the inmate be placed on suicide watch. Suicide watch requires continuous, around-the-clock observation of the individual by custody staff, and can only be terminated upon an assessment and recommendation of the clinical team. *See generally* 28 C.F.R. §§ 552.40–552.42; Fed. Bureau of Prisons, *Program Statement: Suicide Prevention Program*, U.S. Dep't of Just. 1, 9 (Apr. 5, 2007) (last visited May 27, 2024), https://perma.cc/A8UK-VDAZ; Fed. R. Evid. 201(b)(2), (c)(1), (d).

Steven Hellman, a corrections Lieutenant who also worked in the SHU at Lompoc, supervised custody staff in the SHU. He was also a member of the Bureau's Special Investigative Services, responsible for investigating suspected violations of law and prison policy by both inmates and staff. Hellman was not Okonowsky's direct supervisor, as Hellman was a corrections Lieutenant and Okonowsky a staff psychologist. But as a corrections Lieutenant, Hellman was responsible for the safety of inmates and staff, including staff members like Okonowsky, and he oversaw the corrections officers who worked in the SHU with Okonowsky. Hellman and Okonowsky's jobs occasionally required them to collaborate or, at a minimum, to work side-by-side in the SHU.

Around January 2020, Hellman and Okonowsky had apparent disagreements over how to manage "difficult inmates" in the SHU. Hellman also became frustrated when Okonowsky was granted access to an office in the SHU. Hellman believed that Okonowsky's use of the office made it "impossible" for him and other corrections officers "to do their job" in the SHU.

During this time, on January 6, 2020, Hellman created an Instagram page titled "8_and_hitthe_gate."[1] The page did not name or identify its creator. On February 16, 2020, Okonowsky became aware of the "8_and_hitthe_gate" page when Instagram "suggested" that Okonowsky view and follow the page from her personal Instagram account. Despite the page's relatively recent creation, the page contained hundreds of posts, many of which were overtly sexist, racist, anti-Semitic, homophobic, and transphobic memes that explicitly or impliedly referred to the Bureau of Prisons, Lompoc staff, and Lompoc inmates. The page was followed by more than one hundred Lompoc employees, including the Human Resources Manager, the Union President, and a member of the prison's Special Investigative Services.[2] Approximately half or more of the followers of the page were Lompoc employees.

 **\*3** Posts or comments on Hellman's page occasionally referred to interactions between the SHU custody team, the SHU psychologist, and/or SHU inmates or inmates on suicide watch, strongly suggesting that the person who ran the page worked in the SHU at Lompoc. As the SHU psychologist, Okonowsky understood that certain Instagram posts referring to the psychology department or "the psychologist," including some posts that referred to previous conversations Okonowsky had with staff in the SHU and/or posts containing derogatory images resembling her likeness, referred to Okonowsky specifically.

Some of the posts Okonowsky witnessed on the page displayed or suggested violence against and/or sexual contacts with women co-workers, or violence against women generally. These posts were graphic, suggestive of rape and physical harassment, and depicted scenes of violence against women in general, but also against "the SHU psychologist" in particular. Posts ridiculed the "Psychologist" in a coarse and degrading manner simply for doing her job, such as one crude joke depicting a cowboy figure holding two guns pointing in opposite directions, with text suggesting he would shoot both the SHU psychologist and a particular inmate.

Most of the posts are too graphic and disturbing to republish here, but we will recount one that particularly disturbed Okonowsky. Prior to discovering the Instagram page, Okonowsky had invited members of the SHU custody staff to an end-of-the-quarter celebration at her home. When Okonowsky found Hellman's Instagram page, she discovered that he had made a post joking that the all-male custody officers would "gang bang" Okonowsky at her home during the party. That a supervisor openly joked about his law enforcement subordinates "gang banging" Okonowsky at her home on a platform followed by more than one hundred co-workers including upper-level prison management—and that the post was openly "liked" and thereby endorsed by staff members—upset Okonowsky to such an extent that she cancelled the gathering.

After discovering the page, Okonowsky forwarded images from the page to her supervisor, Chief Psychologist Carl Clegg, the very next day—February 17, 2020. Okonowsky also messaged the prison's Acting Safety Manager, Robert Grice, on Instagram to express her concern that he was following the page, "liking" posts, and commenting on posts. Manager Grice responded to her on Instagram, telling Okonowsky that the posts were funny, that he was "Sorry, not sorry," and that Okonowsky needed to toughen up or get a sense of humor.

The following day, on February 18, 2020, Okonowsky met with Supervisor Clegg to discuss the page. Recognizing that the operator of the Instagram page was likely a corrections officer in the SHU, Clegg suggested that Okonowsky transfer to a different facility within Lompoc. After the meeting, Clegg, with Okonowsky's assent, reassigned Okonowsky from Lompoc's medium security facility, where the SHU is located, to Lompoc's low security facility. That same day, Okonowsky also met with the prison's Acting Complex Warden, James Engleman, regarding the Instagram page. Warden Engleman told Okonowsky that he would direct Special Investigative Agent Victor Gonzales, who was Hellman's supervisor, to investigate the issue and refer the matter to the Bureau's Office of Internal Affairs.

Later that day, Safety Manager Grice, whose spouse worked at the prison as Engleman's secretary and was also a follower of the "8_and_hitthe_gate" page, sent Okonowsky a message on Instagram asking if Okonowsky was angry with him. Okonowsky responded by reiterating her concern to Grice about Hellman's page. In a matter of hours, a post appeared on the "8_and_hitthe_gate" page threatening Okonowsky,

sexually debasing her, and denigrating a well-known woman in public leadership, with the captions, "when you get [ ]hurt by memes" and "Tomorrow's forecast: hot enough to melt a snowflake." The post included a sexually obscene hashtag referring to someone who could not take a joke. It was clear from the post that someone had alerted Lieutenant Hellman to Okonowsky's complaint. Okonowsky found the post to be "menacing" and intended to intimidate her from further complaining about the page. Because of the post, Okonowsky no longer felt safe at work. She decided not to go to work the next day.

**\*4** Okonowsky sent Warden Engleman a copy of the menacing post the following day, asking the Warden for a phone call. The Warden never responded to or contacted Okonowsky. Instead, he forwarded her email to Special Investigative Agent Gonzales. Gonzales called Okonowsky that day to set up an initial meeting to discuss the Instagram account. During their phone conversation, he told Okonowsky that he had reviewed the Instagram page and didn't "really see anything that's a problem" with it.

Okonowsky returned to work and reported to the low security facility, where she had been reassigned. On her first day back at work, she ran into Lieutenant Hellman. Believing that Hellman likely was behind the "8_and_hitthe_gate" account, Okonowsky emailed Associate Warden Gutierrez asking for information about why Hellman was at the low security facility when he typically worked in the SHU at the medium security facility. Associate Warden Gutierrez never responded to Okonowsky. He later told Clegg, Okonowsky's supervisor, that Okonowsky should stop emailing him with her concerns.

Agent Gonzales, who had been directed to investigate Okonowsky's complaint, arranged to meet with Okonowsky on February 26, 2020, to discuss the page. When it was time for their meeting, Gonzales summoned Okonowsky over the staff-wide radio system, which others could hear. The meeting took place while other prison staff were nearby, and during the meeting Gonzales had copies of Hellman's memes printed at a public printer in the office. The meeting made Okonowsky feel uncomfortable about Gonzales's ability to maintain her confidentiality, and she perceived that Gonzales was not taking her complaint seriously.

As time passed, Okonowsky felt less and less safe at work. Hellman continued to post disturbing content on his Instagram page, including multiple posts that appear to have been intended to target and intimidate Okonowsky for

reporting Hellman to prison management, such as a sexually suggestive meme of a group of men staring at a woman wearing a short skirt, with the text "Walking back to your area after you just got done telling" and "The Walk of Shame." Okonowsky witnessed her colleagues discussing the content of the page at work. When she raised the issue of Hellman's page with Human Resources Manager Taulbee McGinnis, who was an active follower of the page, the Human Resources Manager told Okonowsky that he thought the memes were "funny." McGinnis also confirmed that he knew who ran the page: Lieutenant Hellman. Okonowsky felt ostracized at work and concerned that she could be in danger in her physical workspace. She worried that if she were attacked by an inmate, the guards who openly derided her, her physical appearance, and her sex online would not assist her in an emergency because they saw her as a "female joke." Okonowsky's productivity suffered, and she had to work harder to get the same tasks completed.

On the morning of March 7, 2020, during the working hours of the weekend suicide watch shift, Hellman used a feature on Instagram to block Okonowsky from being able to view his Instagram page. Okonowsky quickly created a new Instagram account that would permit her to continue to monitor Hellman's page for posts that targeted her, before an audience of more than one hundred colleagues, and continued or escalated to a potentially unsafe situation. Indeed, shortly after Hellman blocked Okonowsky, he posted a photo of a woman in short shorts whom Okonowsky described as sharing her likeness. The post ridiculed Okonowsky for thinking that she's "cute" and for putting inmates on suicide watch. A number of Lompoc employees "liked" the post and two Lompoc employees commented on the post.[3]

 **\*5** Okonowsky emailed a copy of the post to Warden Engleman, asking for an update on the investigation and stating that she was "growing increasingly more uncomfortable" due to Hellman's persistent targeting of her. Warden Engleman did not reply to Okonowsky. The following day, on March 8, 2020, Gonzales called Okonowsky. During the phone call, Agent Gonzales informed Okonowsky that, although nearly three weeks had passed since he had been directed by Warden Engleman to refer the matter to the BOP's Office of Internal Affairs, Gonzales had yet to do so because he "had other things going on" and "could not figure out how to print the memes." Gonzales submitted the referral the following day, on March 9, 2020.

On March 10, 2020, Okonowsky and her supervisor, Clegg, met with Associate Warden Gutierrez to discuss Hellman's conduct. Clegg expressed his concern for Okonowsky's safety and suggested that the prison convene a workplace violence Threat Assessment Team. Later that day, Gutierrez informed Clegg and Okonowsky that Warden Engleman decided that a Threat Assessment was not warranted.

On March 11, 2020, Okonowsky sent a memorandum to Associate Warden Gutierrez in which she named Hellman as the creator and operator of "8_and_hitthe_gate" based on information she received from the Human Resources Manager. Gutierrez never responded to Okonowsky's memo. According to Warden Engleman, Hellman "was assigned to a different facility at FCC Lompoc" on March 11, 2020, "as a result of Ms. Okonowsky's allegation in her memo as to the identity of the Page's creator."[4] Although the prison transferred Hellman to a different part of Lompoc, Hellman continued to post sexist material containing sexually explicit language and suggesting sexual relations with or violence against women co-workers, especially new co-workers, which many Lompoc employees continued to "like."

On March 25, 2020, more than a month after Okonowsky first made her complaint about Hellman's conduct, Okonowsky met with Agent Gonzales and a union representative to ask about the prison's investigation. Okonowsky raised the concern that Gonzales may have a conflict of interest in investigating Hellman because Hellman was Gonzales's subordinate. Gonzales told Okonowsky that he saw no conflict of interest, left without finishing the meeting, and later that day told a co-worker of Okonowsky's that he did not see anything wrong with Hellman's Instagram posts.

Two days later, Okonowsky copied Warden Engleman on a memo addressed to "to whom it may concern," describing her meeting with Gonzales, providing examples of Hellman's recent Instagram posts, and stating her belief that the prison was not properly investigating or addressing Hellman's conduct. The memo recounted that "Warden Engleman and Associate Warden Gutierrez have not responded to my emails"; "my request for a threat assessment and workplace violence committee meeting was denied, without any follow-up contact"; the prison "failed to provide interim relief to ensure future misconduct does not occur"; and the prison did "not maintain[ ] confidentiality of my complaint." Engleman forwarded Okonowsky's memorandum to Gonzales; he did not reply to Okonowsky.

Later that day, Hellman posted on Instagram with an image referring to Okonowsky's likeness accompanied by a sexually vulgar and profanity-ridden diatribe against "the one staff member" for "relentlessly tell[ing] on staff." Several Lompoc employees, including the prison's Safety Manager, "liked" the post. Okonowsky sent an email to Warden Engleman that night with a picture of the post, asking whether anything could "be done to curb this behavior as the investigation takes place," stating that the behavior had gone "too far," that she felt "targeted" and "discouraged." Engleman never replied to Okonowsky's email. Engleman later admitted at his deposition that, although he was the Acting Warden throughout this period, he had no involvement in the investigation into Okonowsky's complaint and took no action other than referring the matter to Agent Gonzales.

**\*6**  In early April 2020, two months after Okonowsky first complained of Hellman's conduct, a new warden, Barbara Von Blanckensee, arrived at Lompoc. On April 13, 2020, Warden Von Blanckensee convened a six-member Threat Assessment Team, which included Engleman, to investigate Okonowsky's complaint. The Threat Assessment Team interviewed Okonowsky that day, and it interviewed Hellman two days later, on April 15, 2020. The Threat Assessment Team issued its report and recommendation to Warden Von Blanckensee the following day, on April 16, 2020.

During their interview with Okonowsky, members of the Threat Assessment Team advised Okonowsky not to look at Hellman's page anymore. The Team simultaneously told Okonowsky that it lacked the resources to monitor Hellman's page, and, contradictorily, directed that Okonowsky should inform the prison's leadership if Hellman's posts continued.

In its report, the Threat Assessment Team concluded that "numerous FCC Lompoc employees appear to be well aware that [Hellman] is [the Instagram page's] owner," and it found Hellman's denial that he directed any posts at Okonowsky "unconvincing[ ]." The Team concluded that Hellman's conduct constituted impermissible "harassing conduct" within the Bureau of Prisons' definition and that Hellman's conduct likely violated the BOP's standards of conduct for supervisors and law enforcement officers. The Team recommended that management take a variety of responsive actions, including maintaining the separation of Hellman and Okonowsky, and issuing a letter to Hellman from his supervisor ordering him to cease posting in violation

of the Bureau's Anti-Harassment Policy and Standards of Employee Conduct.

On April 16, 2020, the prison issued Hellman a cease-and-desist letter stating that his posts on social media appeared to have violated the Bureau's Anti-Harassment Policy. The letter ordered Hellman to cease such conduct immediately and stated that any failure to comply with the letter would not be tolerated and could result in removal.

The letter did not stop Hellman. For at least three weeks after receiving the letter, Hellman continued to make near-daily posts on his Instagram page, including posts mocking the prison psychology department and the Threat Assessment Team and posts suggesting sexual relations with and/or sexually harassing behavior toward female co-workers. Hellman's conduct elicited no response from the prison—at least none in the record before us. His conduct made Okonowsky exceptionally concerned and scared at work, because it meant that Hellman was flouting the prison's workplace policies.

As directed by the Threat Assessment Team, Okonowsky alerted prison management to Hellman's continued conduct in a letter on April 27, 2020. The prison never responded, and Hellman's conduct continued. He made an additional three posts mocking the Threat Assessment Team, one of which called for the support of his "soldiers" at the prison. And he continued to make sexually overt posts targeting female co-workers, including one that depicted a line of pink panthers with erections and a caption that described male staff standing in line and looking at women staffers as they walked into work.

On May 12, 2020, Okonowsky again informed prison leadership of Hellman's continued posts, as she had been directed to do by the Threat Assessment Team. The record does not reflect that Okonowsky received any reply. At some point after Okonowsky sent her May 12, 2020, memoranda —that is, one month or more after Hellman had been informed that continued violations would "not be tolerated," and nearly three months after Okonowsky first lodged her complaint—Hellman took down his Instagram page for reasons unexplained in the record.

**\*7**  The Threat Assessment Team in its April 2020 report to Warden Von Blanckensee had indicated that "an investigation into Hellman's actions" would need to be "completed, and if misconduct [were] sustained, any resulting discipline

[be] implemented." The record does not reflect that any investigation was ever completed by the prison or the BOP's Office of Internal Affairs. As late as September 2020, Hellman told investigators that he believed an investigation by the prison may have been ongoing but that he had "not been interviewed."

On January 24, 2021, because of the harassment she experienced at Lompoc, Okonowsky transferred to a BOP facility in Texas.

B. Procedural History

Okonowsky filed this action on September 22, 2021, asserting a single claim under Title VII of the Civil Rights Act of 1964 for discrimination on the basis of sex. After the parties engaged in discovery, the government filed a motion for summary judgment, which the district court granted.

The district court limited its consideration of the evidence to just five posts made on the "8_and_hitthe_gate" account that, in the district court's view, (1) targeted Okonowsky specifically and (2) did so because of her sex. The district court concluded that the five posts "occurred entirely outside of the workplace" because the posts were made on a staff member's personal Instagram page and none of the five posts was ever sent to Okonowsky, displayed in the workplace, shown to Okonowsky in the workplace, or discussed with Okonowsky in the workplace without her consent. Because in its view the five posts did not amount to severe or frequent harassment in the physical workplace, the district court concluded that there was no triable issue as to whether Okonowsky's work environment was objectively hostile.

The district court found, in the alternative, that there was no genuine dispute that the Bureau took reasonable, prompt, and corrective steps to end the harassment. Cabining its analysis to the undisputed facts and the same five posts—all made prior to the cease-and-desist letter—the district court concluded that the Bureau took "reasonable remedial actions sufficient to defeat [Okonowsky's] hostile work environment claim." These remedial actions included investigating Okonowsky's claim with "a methodical, albeit relatively lengthy" investigation, reassigning Hellman to a different part of Lompoc, convening the Threat Assessment Team, and issuing the cease-and-desist letter, which the district court characterized as successfully resulting in the cessation of Hellman's conduct.[5]

Okonowsky timely appealed.

## II. STANDARD OF REVIEW

**[1] [2] [3] [4]** We review a district court's order granting summary judgment *de novo*. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021), *cert. denied*, —— U.S. ——, 142 S. Ct. 343, 211 L.Ed.2d 183 (2021). "[V]iewing the evidence in the light most favorable to the non-moving party," we must decide "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). We may not weigh the evidence or determine the truth of any matter. *See Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "[I]n a case involving a hostile work environment claim ... 'what is required to defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.' " *Fuller v. Idaho Dep't of Corrections*, 865 F.3d 1154, 1161 (9th Cir. 2017) (quoting *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017)), *cert. denied*, 584 U.S. 904, 138 S.Ct. 1345, 200 L.Ed.2d 514 (2018).

## III. DISCUSSION

**\*8** Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating on the basis of sex regarding "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). To defeat the government's motion for summary judgment on her hostile work claim, Okonowsky must adduce evidence from which a reasonable juror could conclude that (1) she was subjected to a sexually hostile work environment; and (2) the government is liable for the harassment that caused the hostile work environment to exist. *See Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021); *Little*, 301 F.3d at 966. We address each element in turn.

A. Hostile Work Environment

**[5] [6]** To determine whether Okonowsky was subjected to a sexually hostile work environment, we examine three factors: 1) whether Okonowsky was subjected to verbal

or physical conduct of a sexual nature; 2) whether the conduct was unwelcome; and 3) whether the conduct was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Fried*, 18 F.4th at 647. The third factor requires that Okonowsky "show that her work environment was both subjectively and objectively hostile." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005). The parties do not dispute that Okonowsky was subjected to unwanted verbal conduct based on her sex, or that Okonowsky subjectively perceived her work environment to be hostile. We thus focus only on part of the third factor —whether Okonowsky adduced evidence of sufficiently severe or pervasive sexually offensive conduct from which a reasonable juror could conclude that Okonowsky's work environment was objectively hostile from the perspective of a reasonable woman. *See Little*, 301 F.3d at 966.

**[7]** **[8]** **[9]** **[10]** In analyzing the objective hostility of a working environment, we must look to the totality of the circumstances surrounding the plaintiff's claim. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). That includes assessing the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance." *Id.* (citation omitted). "No single factor" in this non-exhaustive list "is required." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (alteration omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Courts also must consider that the "required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct," *id.* (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)), and the cumulative effect of conduct over time, *see Zetwick*, 850 F.3d at 444; *Fried*, 18 F.4th at 652; *see also Clark Cnty. Sch. Dist.*, 532 U.S. at 270, 121 S.Ct. 1508 ("Workplace conduct is not measured in isolation."). In all cases, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not trigger Title VII's protections. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted).

*1. The Totality of the Circumstances*

We begin by considering the scope of the evidence relevant to Okonowsky's claim. The government contends that Okonowsky has failed to establish an objectively hostile work environment because the only relevant conduct at issue— the five Instagram posts identified by the district court—all "occurred entirely outside of the workplace." This argument is grounded on legally and factually erroneous assumptions.

*a. The Physical Workplace*

***9** The government relies on our unpublished decision in *Fuller v. Idaho Department of Corrections* (*Fuller II*), 694 F. App'x 590, 591 & n.1 (9th Cir. 2017), *cert. denied*, 584 U.S. 904, 138 S.Ct. 1345, 200 L.Ed.2d 514 (2018), to argue that evidence of conduct occurring entirely separate from and unrelated to the workplace cannot, standing alone, suffice to preclude summary judgment in favor of the employer on a hostile work environment claim.[6] Whether or not the unprecedential decision in *Fuller II* stands for that principle, and whether or not that principle is correct, that "principle" has no application to this case.

For one, it makes little sense to describe a social media page that includes overt comments about a specific workplace, like Hellman's, as "occurring" in only a discrete location, as the district court did below and the government now asserts on appeal. Social media posts are permanently and infinitely viewable and re-viewable by any person with access to the page or site on which the posts appear. No matter where Hellman was or what *he* was doing when he made his posts, Lompoc employees who followed the page were free to, and did, view, "like," comment, share, screenshot, print, and otherwise engage with or perceive his abusive posts from anywhere. The Instagram page also served as a record of which co-workers subscribed to the page and commented on posts, showed their comments and their "likes," and could be seen at any time from any place—including from the workplace.[7]

For another, we have held that conduct that took place outside of the physical work environment is part of the totality of the circumstances we evaluate when considering a hostile work environment claim. *Little*, 301 F.3d at 966–68. In *Little*, the rape occurred outside of the physical workplace but the reaction of the plaintiff's employer "would have made a reasonable woman feel that her work environment had been altered" so as to defeat summary judgment for the employer. *Id.* at 966–67. Moreover, the Supreme Court has instructed

us to consider a non-exhaustive list of the circumstances and characteristics of alleged harassment which does not distinguish between conduct occurring on or off the physical or digital worksite. *See Clark Cnty. Sch. Dist.*, 532 U.S. at 270–71, 121 S.Ct. 1508. The relevant standard requires us to assess whether harassing conduct had an unreasonable *effect* on the working environment and, if so, to consider whether and how the employer responded to that effect. *See id.*; *see also Fried*, 18 F.4th at 650 ("Several circuit courts, including our own, have recognized that an employer's response to a third party's unwelcome sexual advances toward an employee can independently create a hostile work environment.") (emphasis omitted).

 **\*10**  Applying that standard, we have concluded that offsite and third-party conduct can have the effect of altering the working environment in an objectively severe or pervasive manner. *See, e.g., Galdamez v. Potter*, 415 F.3d 1015, 1023–24 (9th Cir. 2005) (concluding that a reasonable juror could find racially hostile comments made by third parties, including comments outside of the workplace, "both subjectively and objectively severe or pervasive"). And we have found that evidence of management-level, intra-workplace ratification of or acquiescence to offsite conduct by employees, customers, or third parties can be particularly relevant to both the hostile work environment and employer liability elements of a Title VII claim. *See, e.g., Fuller*, 865 F.3d at 1162–63 (vacating grant of summary judgment for employer based on evidence that the employer "punish[ed] the [plaintiff]" for taking leave after she was raped twice outside of work and the employer "both vocally and financially support[ed] her rapist" after the fact); *Little*, 301 F.3d at 967–69 (reversing grant of summary judgment for employer based on evidence that employer "ratified" a business client's off-site rape of the plaintiff "by failing to take immediate and effective corrective action" to protect the employee); *Fried*, 18 F.4th at 651–53 (reversing grant of summary judgment for employer where plaintiff presented evidence that the employer condoned "a customer's overt sexual proposition" of the plaintiff in the workplace and directed the employee to continue to serve the customer). In cases where the plaintiff has experienced offensive conduct from a non-employee (as in *Galdamez, Little*, and *Fried*), or harassment outside of and unrelated to the workplace (as in *Fuller*) that had a foreseeable, adverse impact on the plaintiff's working conditions, our "focus" in assessing the Title VII claim has centered on "the employer's response to the [offensive] conduct." *Fried*, 18 F.4th at 650.

 **[11]**  **[12]**  Thus, even if discriminatory or intimidating conduct occurs wholly offsite, it remains relevant to the extent it affects the employee's working environment. Here, Okonowsky has adduced ample evidence that Hellman's sexually discriminatory conduct "ma[de] it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position." *Fuller*, 865 F.3d at 1162 (quoting *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017)). The prison itself concluded as much when its Threat Assessment Team and leadership determined that Hellman's supposedly "offsite" behavior violated the Bureau's Anti-Harassment Policy. That violation, the prison believed, authorized it to take employment action against Hellman precisely because of his conduct's damaging effect on Okonowsky's working environment.

The Threat Assessment Team also found, and the prison stated in its cease-and-desist letter, that Hellman violated the Bureau's Standards of Employee Conduct, which apply to conduct both within and outside of work. The Bureau's standards require employees to "conduct themselves in such a manner that their activities *both on and off duty* do not discredit the agency," but instead "foster[ ] respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government." Bureau of Prisons, *Standards of Employee Conduct*, U.S. Dep't of Just. 5 (Dec. 6, 2013) (last visited July 9, 2024), https://perma.cc/Z6G3-VWSZ (emphasis added). In a March 24, 2014, memorandum titled "Guidance on the Personal Use of Social Media by Department Employees," the U.S. Department of Justice explained that "government-wide standards of conduct ... apply to online communications at all times, regardless of whether they are at work, outside the office, or using government equipment." The memorandum emphasizes that "Department employees do not surrender their First Amendment rights as a result of their employment; however, the Supreme Court and lower courts have held that the Government may restrict the speech of its employees when employees are not speaking as private citizens on matters of public concern or when the Government's interest in the efficient provision of public services outweighs its employees' interest in the speech." It explains that "[t]he line between public and private, personal and professional, is often blurred, especially when an employee using social media ... comments on matters related to his or her work, or the work of the Department." And it urges employees to "exercise extreme care" when making "comments that can be perceived as showing prejudice based on race, gender, sexual orientation, or any other protected basis," as such communications "implicate the Department's core mission

of administering justice in a fair, effective, and even-handed manner."

**\*11**  **[13]**  Lompoc's Threat Assessment Team found that Hellman made numerous posts, including but not limited to "jokes on social media regarding inmate suicide," such as a post mocking the suicide of Jeffery Epstein in BOP custody, that "are highly inappropriate and reflect poorly upon the BOP—especially when coming from supervisory-level employees who work in [the] SHU." Prison leaders agreed, informing Hellman in the cease-and-desist letter that he "posted memes/information on social media that appear to violate Agency policy, including Program Statement 3420.11, Standards of Employee Conduct, and Program Statement 3713.26, Bureau of Prisons Anti-Harassment Policy." Okonowsky has adduced ample evidence showing that prison leaders were well aware of such posts long before the prison convened the Threat Assessment Team. Construing all inferences in Okonowsky's favor, a reasonable juror could conclude that the Bureau's failure to take reasonably prompt and effective steps to address conduct that plainly violated numerous Bureau and Department of Justice policies signaled to Okonowsky that the Bureau had no intention of protecting her from Hellman's harassing conduct and that Hellman could act with impunity.

A reasonable juror could also conclude that the Bureau's lackluster response to Okonowsky's complaint "reinforced rather than remediated" Hellman's sexually harassing conduct, cementing the discriminatory effect of his behavior within the workplace. *Little*, 301 F.3d at 967–68. For all of these reasons, the government's argument that Hellman's social media posts "occurred" outside of work, and thus could not be considered in the totality of the circumstances surrounding Okonowsky's Title VII claim, rings hollow.

#### b. Limited Consideration of Hellman's Harassing Instagram Posts

The district court limited its consideration of the evidence to the five posts it believed were both (1) directed at Okonowsky personally, and (2) made based on Okonowsky's sex. The district court erred in two ways by so constricting the universe of the evidence relevant to Okonowsky's claim.

**[14]**  First, the district court disregarded the well-established principle that the totality of the circumstances surrounding a Title VII claim includes offensive or retaliatory conduct

which would not, in isolation, violate Title VII, *Fuller*, 865 F.3d at 1163 & n.9, as well as discriminatory conduct not specifically directed at the plaintiff, *see Reynaga*, 847 F.3d at 687 ("We have held that ... hostility need not be directly targeted at the plaintiff to be relevant to his or her hostile work environment claim."); *e.g.*, *Dominguez-Curry*, 424 F.3d at 1036, 1038 (finding that the district court "erroneously disregarded evidence of discriminatory comments that [the harasser] directed to other women in the division").

**[15]**  Second, the district court failed to draw all reasonable inferences in Okonowsky's favor when it determined that Hellman's posts about the prison's psychology department did not target Okonowsky specifically. The record shows that staff members at the prison understood that the creator of the "8_and_hitthe_gate" page was a custody officer in the SHU based on the page's content. Because Okonowsky was *the* psychologist assigned to the SHU, responsible for all of the duties of the department in the SHU, a reasonable juror could infer—just as Hellman's followers and the prison's Threat Assessment Team did—that Hellman's posts targeting "the psychologist" and the psychology department were aimed at Okonowsky specifically. Okonowsky was entitled to have this inference drawn in her favor. *See Dominguez-Curry*, 424 F.3d at 1035.

\* \* \*

In sum, the evidentiary record in support of Okonowsky's claim includes, but is not limited to, evidence that employees holding management-level positions and those who were charged with investigating violations of workplace policy condoned, acquiesced to, or otherwise reinforced Hellman's conduct in the workplace. It also includes posts made by Hellman (as well as associated comments and "likes" by Lompoc employees) that endorsed or made light of violence against and/or sexually discriminatory views toward women; targeted Okonowsky based on her appearance; targeted Okonowsky as the SHU psychologist; reasonably appear to have been intended to intimidate or discourage Okonowsky against further complaints; and flaunted the prison's Threat Assessment Team and workplace policies.

#### 2. *The Bureau of Prisons is not entitled to summary judgment.*

**\*12**  Viewing the evidence in the light most favorable to Okonowsky, we conclude that Okonowsky has raised

triable issues of fact as to the existence of a hostile work environment.

### a. Hellman's Conduct

 [16]  Hellman made hundreds of posts on his Instagram account over a five-month period, often posting multiple times per day. Many of his posts about women in the workplace were denigrating, suggestive of violence, and encouraged or at the very least made light of sexual harassment in the workplace. Hellman posted about Okonowsky's all-male co-workers "gang banging" her; he described her in vulgar sexual terms; he humiliated and intimidated her for reporting his conduct to management; and he called for his "soldiers" to rally in support of him after Okonowsky complained to management. A reasonable factfinder could conclude, just as the Lompoc Threat Assessment Team and leadership ultimately did, that numerous of Hellman's posts about Okonowsky were intended to, and had the effect of, harassing Okonowsky on the basis of her sex, humiliating and degrading her, and intimidating her in an effort to shape her behavior in the workplace and discourage future complaints about Hellman's conduct.[8]

The government analogizes Okonowsky's case to *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), in which we found no triable issue as to harassment because "the plaintiff alleged [only] that a supervisor referred 'once or twice' to another female as a 'castrating bitch,' 'Madonna,' and a 'regina,' " and the "plaintiff herself *did not regard this as harassing*, and the supervisor never directed a sexual insult *at plaintiff*." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1207 (9th Cir. 2016) (emphases added) (citing *Kortan*, 217 F.3d at 1106–07, 1110–11). Given the government's concessions that Okonowsky subjectively viewed Hellman's conduct as harassing and that Hellman directed at least five sexually discriminatory posts at Okonowsky specifically, we fail to see how *Kortan* is on point.

We find more guidance in our opinion in *Dominguez-Curry*. There, we concluded that evidence of a supervisor making "numerous demeaning comments about women in the workplace" that were similar in both severity and frequency to the comments made by Hellman, including comments directed at the plaintiff, was "more than sufficient" to preclude summary judgment to the employer on the hostile work environment element of a Title VII claim. 424 F.3d at 1033–35. Although Hellman was not Okonowsky's direct supervisor as was the case in *Dominguez-Curry*, his role as a high-ranking law enforcement officer charged with protecting Okonowsky's safety and enforcing workplace policy enhanced the objective severity and pervasiveness of his harassing conduct. *See Zetwick*, 850 F.3d at 445 ("[T]he Court has recognized that 'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.' ") (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)); *see also Fuller*, 865 F.3d at 1163. A reasonable juror could credit Okonowsky's testimony that, because Hellman supervised the corrections officers tasked with protecting Okonowsky within the prison, and within the SHU in particular, she found certain of his posts to be particularly "threatening," *Little*, 301 F.3d at 966 (citing *Breeden*, 532 U.S. at 270–71, 121 S.Ct. 1508), and menacing; she did not feel safe at work; and she worried that she could not trust Hellman and his direct reports to protect her if an emergency arose. A juror could also credit Okonowsky's testimony that Hellman's actions made it more difficult for her to complete basic tasks and ultimately drove her to leave Lompoc. *See Reynaga*, 847 F.3d at 687 (explaining that unwanted discriminatory conduct that "make[s] it more difficult for [the plaintiff] to do her job, to take pride in her work, and to desire to stay in her position" is "enough" to "create an actionable claim under Title VII"). These facts alone raise a genuine dispute as to whether the work environment was sufficiently hostile to implicate Title VII. *See Davis*, 520 F.3d at 1096 ("[Even] where the severity of frequent abuse is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment.").

### b. The Conduct of Management and Other Co-workers

 *13  As we have already explained, Okonowsky's evidence does not start and end with Hellman's conduct. Both management and Okonowsky's co-workers contributed to the altered workplace. Many employees at Lompoc "liked" Hellman's posts and commented favorably upon them. Okonowsky witnessed co-workers discussing and laughing about Hellman's posts at work. And managers and staff members in charge of enforcing workplace policy and investigating Okonowsky's complaint acquiesced to and at times even endorsed Hellman's conduct. The Human Resources Manager, the Union President, and the prison's Safety Manager subscribed to Hellman's page despite its

offensive content. The Safety Manager and Human Resources Manager both told Okonowsky the page was "funny," even as Okonowsky expressed her concerns about being targeted and harassed. The Special Investigative Agent tasked with investigating Okonowsky's complaint told her that he did not "see anything that's a problem" with Hellman's page despite recent posts targeting Okonowsky and joking about the SHU officers sexually assaulting her. Prison officials made no apparent effort to protect Okonowsky's confidentiality after she made her complaint. The investigating officer told Okonowsky that he failed to refer her complaint to the Bureau's Office of Internal Affairs for three weeks because he "had other things going on" and "could not figure out how to print the memes." The warden testified that he "took no action" on Okonowsky's complaint for at least two months, and the Lompoc prison apparently tolerated Hellman's harassing conduct for another month after telling him that any further harassment would "not be tolerated."

#### c. The Cumulative Effect of the Discriminatory Conduct

[17]  We must also consider "the cumulative effect of the conduct at issue." *Zetwick*, 850 F.3d at 444 (emphasis omitted). That includes three months of posts targeting Okonowsky, intimidating her, joking about "gang bang[ing]" her, possibly shooting her, as well as myriad posts endorsing sexual harassment and/or violence toward women co-workers or women generally. It includes the reactions of management-level officials who endorsed Hellman's conduct even as Okonowsky expressed her concerns, and the refusal of prison officials to respond to or update Okonowsky on the status of the investigation even as Okonowsky expressed that she no longer felt safe at work.

[18]  Just as an "employer's reaction to a single serious episode" of sexual harassment "may form the basis for a hostile work environment claim," *Little*, 301 F.3d at 968, so too may an employer's response to more frequent but less severe conduct, *see Fuller*, 865 F.3d at 1163–64 (distinguishing *Brooks v. City of San Mateo*, 229 F.3d 917, 921–22, 924, 926 (9th Cir. 2000), in which an employer "took no actions which could be perceived as supportive of the harasser"). Based on the record as we must view it, we hold that a reasonable juror could find Okonowsky's work environment objectively hostile.

### B.  The Bureau's Remedial Measures

[19]  [20]  [21]  Considering all the evidence in the light most favorable to Okonowsky, a reasonable juror could also conclude that the Bureau's response to Okonowsky's harassment was neither reasonably immediate nor effective, triggering liability under Title VII. "All federal circuits are in accord" that an employer is liable for a hostile work environment "by failing to take immediate and corrective action in response to a co-worker's or third party's sexual harassment ... [that] the employer knew or should have known about." *Fried*, 18 F.4th at 647. "[T]he reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment." *Little*, 301 F.3d at 968 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)). If "the remedy attempted is ineffectual, liability will attach." *Id.* (quoting *Fuller v. City of Oakland* (*Fuller Oakland*), 47 F.3d 1522, 1528–29 (9th Cir. 1995)). "In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct." *Id.* (quoting *Ellison*, 924 F.2d at 882).

The district court concluded based on "undisputed facts" that the Bureau "engaged [in] a methodical, albeit relatively lengthy, investigative and disciplinary process." Examining only five posts made by Hellman prior to the issuance of the cease-and-desist letter, the district court concluded that Hellman's conduct "posting memes of a sexual nature potentially directed to [Okonowsky]" stopped "because of [the Bureau's] investigative efforts." This conclusion is unsupported and applies the wrong legal standard. The facts viewed most favorably to Okonowsky lead to the opposite finding. Moreover, the district court was required to determine whether Okonowsky adduced sufficient evidence for a reasonable juror to conclude that the prison's investigation was, in fact, not methodical or effective—not to make its own findings of fact. *See Fuller*, 865 F.3d at 1165 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

#### 1.  Management's Initial Response

**\*14**  [22]  Okonowsky has adduced ample evidence that the Bureau's response to Hellman's harassing conduct and management figures' endorsement of it was "equivocal at best." *Little*, 301 F.3d at 968. On the one hand, Warden

2024 Daily Journal D.A.R. 7021

Engleman met with Okonowsky the day she requested a meeting and immediately directed Agent Gonzales to investigate Okonowsky's complaint and make a referral to the Office of Internal Affairs. The prison transferred Okonowsky to the low security facility with her consent that same day. Eventually, Gonzales made a referral to the Office of Internal Affairs as directed. And the prison convened a Threat Assessment Team which, within a matter of days, determined that Hellman's conduct likely violated the Bureau's Anti-Harassment Policy and recommended issuing a cease-and-desist letter, which the prison promptly did.

On the other hand, Warden Engleman testified that he had "no involvement" at any time with Okonowsky's complaint while he was the Acting Warden, which was a period of over two months after she complained to him. At most, he referred her complaint to Gonzales, who then did almost nothing to resolve the situation, telling Okonowsky from the get-go that he believed there was nothing wrong with Hellman's behavior. Consistent with that view, Gonzales slow-walked the investigation and demonstrated a lack of care for Okonowsky's confidentiality and safety. The prison's Safety Manager and Human Resources Manager both told Okonowsky that they found Hellman's page to be "funny," and each continued to subscribe to Hellman's page on Instagram after Okonowsky made her complaint, even as Hellman posted harassing content that increasingly targeted Okonowsky. Prison officials immediately suggested transferring Okonowsky, and ultimately did so with her consent, but Okonowsky continued to see Hellman at work, and he continued to make discriminatory and retaliatory posts. Despite the fact that numerous Lompoc employees, including the Human Resources Manager, were well aware that Hellman operated the page, it was not until Okonowsky herself identified Hellman as the creator of the page that the prison transferred Hellman to a different part of the facility—more than three weeks after Okonowsky initially made her complaint.[9] In whole, three months passed after Okonowsky made her complaint before Hellman's harassing conduct ceased. Such "equivocal" evidence—particularly evidence that some of the initial steps taken by the prison "reinforced rather than remediated the harassment," *Little,* 301 F.3d at 967, and were "ineffectual" to stop Hellman's conduct or managers' endorsement of it, *Fuller Oakland,* 47 F.3d at 1528–29—precludes granting summary judgment to the prison.

2. *Management's Permanent Remedial Steps*

**[23]** **[24]** In addition to reviewing "the temporary steps the employer takes to deal with the situation," we must also look at "the permanent remedial steps the employer takes once it has completed its investigation." *Swenson v. Potter,* 271 F.3d 1184, 1192 (9th Cir. 2001). "Remedial action must include some form of disciplinary measures." *Reynaga,* 847 F.3d at 689 (citing *Yamaguchi v. U.S. Dep't of the Air Force,* 109 F.3d 1475, 1482 (9th Cir. 1997)). The remedial measures must also be effective. *Id.* at 690.

**[25]** The district court appears to have concluded that the Threat Assessment Team's report ended the prison's investigation and that the cease-and-desist letter was a "disciplinary measure" for the purposes of Title VII. In so concluding, the district court overlooked evidence that the Threat Assessment Team's report was not a completed investigation into Hellman's conduct. The Threat Assessment Team noted in its report that "an investigation into Hellman's actions" was yet to be "completed," and any discipline would need to be "implemented" "if misconduct is sustained." Five months later, Hellman told Bureau authorities that he believed an investigation was ongoing but that he had "not been interviewed" and "ha[d] no idea" who was investigating. To the extent the Bureau's investigation continued after the Threat Assessment Team made its recommendations to the Warden, the record is silent as to whether the Bureau ever completed that investigation or whether it made any final determination as to discipline.

**\*15** Even if the Threat Assessment Team report were a "completed [ ] investigation," *Swenson,* 271 F.3d at 1192, and the cease-and-desist letter a "disciplinary measure[ ]" for the purposes of Title VII, *Reynaga,* 847 F.3d at 689, a reasonable juror could conclude that neither was sufficiently prompt or adequate to remedy Okonowsky's hostile work environment. Neither actually stopped Hellman from posting. The Threat Assessment Team did not investigate the conduct of management-level or investigatory employees who subscribed to and/or endorsed or condoned Hellman's conduct. And the Bureau's statement to Hellman that further harassing conduct would "not be tolerated" was belied by the prison's continued tolerance of Hellman's harassing conduct for more than a month following the cease-and-desist letter. Hellman's behavior and the facial endorsement of that behavior by high-level managers in charge of enforcing the prison policies which the Bureau believed Hellman

violated, demonstrates that the remedies undertaken by the Bureau likely would not deter potential harassers from similar conduct in the future. *See Reynaga*, 847 F.3d at 690 (finding a genuine dispute of fact as to whether the employer's response was effective when the harassing conduct continued "even after meeting with management").

**[26]** Finally, the district court relied upon an impermissible inference when it concluded that Hellman deleted his Instagram page "*because of* [the Bureau's] investigative efforts." (Emphasis added). The record is silent with respect to Hellman's motive for deleting his Instagram page after four months of publishing multiple hundreds of posts. Because Hellman continued posting harassing content, including content targeting Okonowsky, for approximately one month after receiving the cease-and-desist letter with no apparent penalty, acknowledgement by prison officials, or signs of any continuing investigation, a triable issue exists as to whether Hellman's decision to delete his Instagram account was in fact motivated by reasons other than fear of the prison's "investigative efforts."

For all of these reasons, a reasonable juror could conclude that the prison "failed to take prompt and effective remedial action" to address Okonowsky's hostile work environment. *Reynaga*, 847 F.3d at 689.

## IV. CONCLUSION

Okonowsky has raised triable issues of fact as to whether she experienced a hostile work environment and whether the Bureau of Prisons failed to take prompt and effective remedial action to address it. Accordingly, we reverse the district court's grant of the government's motion for summary judgment and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

**All Citations**

--- F.4th ----, 2024 WL 3530231, 2024 Daily Journal D.A.R. 7021

## Footnotes

1    "Eight and hit the gate" refers to putting in eight hours at work and then leaving, an expression well known among prison employees. *See* Dasha Lisitsina, *'Prison guards can never be weak': the hidden PTSD crisis in America's jails*, The Guardian (May 20, 2015, 3:15 PM EDT) (last visited July 12, 2024), https://perma.cc/H6TC-BUTB.

2    The government contends that Okonowsky's assertion that more than one hundred employees followed the page, which is supported by Okonowsky's declaration based on her personal knowledge, is "disputed" because Okonowsky's declaration does not specifically name the more than one hundred employees that Okonowsky identified as "followers." The government offers no evidence that would negate Okonowsky's assertion or place it in dispute, and the government articulates no specific evidentiary objection to the statement in Okonowsky's declaration. We therefore consider the statement as an assumed fact for the purposes of this appeal. *See* Fed. R. Civ. P. 56(c)(2), (e)(2).

3    The record does not reflect the content of the comments.

4    The district court overruled Okonowsky's evidentiary objection to this paragraph of Engleman's declaration. Okonowsky does not argue on appeal that this was an abuse of discretion.

5    The district court rejected Okonowsky's alternative argument that the Bureau is strictly and vicariously liable for Hellman's conduct because Hellman was a supervisor. Okonowsky has not appealed the district court's conclusion with respect to this issue, so we do not address it.

6    In *Fuller*, the plaintiff adduced evidence that she was raped twice outside of work by a person who was both her co-worker and romantic partner. 694 F. App'x at 590–91. At the time of the rapes, the co-worker was on administrative leave pending a criminal investigation of him for another alleged rape.

7    In point of fact, here, a reasonable factfinder could infer that Hellman posted to his account, and his co-workers viewed and engaged with his content, while *at work*. Approximately half of Hellman's 235 followers were Lompoc employees who subscribed to Hellman's near daily posts about the prison where he and Okonowsky were co-workers. His posts

referred to individual Lompoc staff members and inmates, as well as timely events that only Lompoc employees would recognize or understand. Okonowsky witnessed co-workers discussing Hellman's page at work. And Hellman appears to have posted from work on at least one occasion. Given that many employees in today's world occasionally use or view personal social media from work, a factfinder could infer from the record that Hellman's harassing conduct did not "occur" entirely outside of the prison walls. As the non-moving party, Okonowsky was entitled to have such an inference drawn in her favor at summary judgment. *See Dominguez-Curry*, 424 F.3d at 1035. But, even so, as we explain above, the crucial inquiry is not whether Hellman posted from work or his co-workers interacted with his page while at work, but whether his and his co-workers' discriminatory conduct had an unreasonable effect on Okonowsky's work environment.

8    Okonowsky presses us to consider additional discriminatory posts made by Hellman, such as the many racist, homophobic, and anti-Semitic posts. We need not address this argument, because the posts we do consider are more than sufficient to create a triable issue as to whether Okonowsky experienced objectively severe and/or pervasive harassment on the basis of sex that altered the terms or conditions of her employment.

9    Warden Engleman suggests in his declaration that Hellman was transferred to a different facility as soon as Okonowsky, in a memo dated March 11, 2020, identified Hellman as the likely operator of the Instagram account. But Okonowsky stated in her March 11, 2020, memo that her information came from McGinnis, the head of Human Resources, indicating that prison leadership knew Hellman was responsible for the page before Okonowsky did.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 2

## *Su v. Bevins & Son, Inc.*, 2:23-cv-560 (D. Vt. May. 7, 2024).

### *Decision & Order*

## New Precedent (FYI)

2024 WL 2059333
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

Julie A. SU, Acting Secretary of Labor,
United States Department of Labor, Plaintiff,

v.

BEVINS & SON, INC., Tiffany Creamer,
and Bryan A. Bevins, Defendants.

Case No. 2:23-cv-560
|
Signed May 7, 2024

**Attorneys and Law Firms**

Mark A. Pedulla, Joseph J. Michalakes, United States
Department of Labor, Boston, MA, for Plaintiff.

Thomas C. Nuovo, Bauer Gravel Farnham, Colchester, VT,
for Defendants Bevins & Son, Inc., Tiffany Creamer, Bryan
A. Bevins.

**OPINION AND ORDER**

William K. Sessions III, United States District Judge

 **\*1**  Plaintiff Julie A. Su, acting Secretary of the United
States Department of Labor ("DOL"), filed this action against
Bevins & Son, Inc., Tiffany Creamer, and Bryan A. Bevins
("Defendants"), alleging that they unlawfully retaliated
against employees who received back wages after reaching
a settlement with DOL. ECF No. 1 at 1. Defendants filed a
motion to dismiss, ECF No. 7, and DOL filed a motion to
amend its complaint. ECF No. 16. For the following reasons,
Defendants' motion to dismiss is **denied**. DOL's motion to
amend is also **denied.**

**FACTUAL AND PROCEDURAL BACKGROUND**

   **A. Factual Background**
Defendant Bevins & Son is a Vermont construction and
excavation business "with a principal business address" in
Milton, Vermont. ECF No. 1 at 4. Tiffany Creamer is Bevins
& Son's secretary and treasurer, and Bryan Bevins is its
president. *Id.*

Riley Bockus, an alleged victim of Bevins & Son's retaliation,
began working for the company in March of 2021. ECF *Id.*
DOL asserts that Bockus "was an employee of Bevins &
Son, as defined by" 29 U.S.C. § 203(e) for the duration of
his employment. *Id.* He "sometimes" worked more than 40
hours per week while employed at Bevins & Son, entitling
him to overtime pay under the FLSA. Bryan Bevins allegedly
took issue with how Bockus calculated his time worked, and
"on or about September 26, 2022," omitted "one and one-
half overtime hours" from Bockus' paycheck. *Id.* at 7. Bockus
and Bevins then had a text exchange about the missing hours,
during which Bockus stated "[i]if you don't want to be fair
and pay my hours working I will call the labor board." *Id.* at 8.

Later that same day, Bockus and Bevins had a face-to-
face conversation about these overtime hours. During that
conversation, Bevins "expressed displeasure with Bockus's
prior statements that Bockus would call the 'labor board'
or the Department of Labor." *Id.* Bevins then fired Bockus,
who promptly filed a complaint with DOL's Wage and Hour
Division ("WHD") concerning Bevins & Son's pay and
employment practices. *Id.* at 8-9.

On September 27, 2022, following Bockus' complaint, WHD
"initiated an investigation into Bevins & Son's compliance
with the FLSA." *Id.* at 9. Over the course of that investigation,
WHD gathered information from Bockus and several
other employees including text message communications
with Bevins and general information regarding Bevins &
Son's typical practices. *Id.* Bevins conducted an interview
with WHD and allegedly admitted "being aware prior
to discharging Bockus that Bockus had mentioned the
possibility of calling [DOL] concerning Bevins & Son's pay
practices." *Id.* at 10. Bevins also apparently admitted that he
felt "sick of Bockus threatening to call" DOL. *Id.* (cleaned
up).

This investigation led to a settlement agreement. Bevins &
Son agreed to pay 17 employees – including Bockus and Tyler
Andersen – roughly $17,000 in back wages and liquidated
damages. *Id.* It also paid Bockus an additional $3,310 in
back pay and $25,000 in punitive damages as compensation
for his allegedly unlawful discharge. *Id.* The settlement
agreement also contained a provision in which Bevins &
Son promised not to "discriminate against or discharge any
employee for participating in any proceeding or asserting any
rights guaranteed" to an employee under the FLSA. *Id.* at 11.

**\*2**  On May 31, 2023, DOL issued a press release stating that Bevins & Son terminated a worker (unnamed in the release) for "asking to be paid in compliance with the FLSA." *Id.* It also "generally described the terms of the Settlement Agreement, including the amounts paid to employees," without naming any employees. *Id.* at 12. The press release was picked up by local news station WCAX-TV, which aired a TV news segment and published an online story concerning DOL's investigation. WCAX summarized the press release without using the names of any employees. *Id.* at 12.

Defendant Creamer then posted the following on Facebook:

> To anyone who saw and watched the WCAX news cast on our business. All we are going to say is please google the disgruntled employee whom was fired and contributed to the story Riley Bockus (his word and character will be seen). That's not the whole story & that's not what the findings were... WCAX did NOT and has not reached out to us in regards to the bullshit story they just aired. Lawyers are involved... All that know Bevins & Sons knows what kind of business we run and what we stand for! Thank you for supporting us.... We are still hiring [emoji] & ALWAYS do your do diligence when hiring someone.

ECF No. 1-3 at 2. Multiple people responded to Creamer's Facebook post, including one comment that included a screenshot of a Google search showing that Bockus had engaged in criminal activity. Defendant Creamer responded "point made" to this comment. ECF No. 1-4 at 2. Several other comments also alleged that Bockus engaged in criminal activity. Defendants Bevins and Creamer "liked" several of those comments. ECF No. 1 at 13. DOL also alleges that several individuals "shared Defendant Creamer's public post targeting Bockus on their own Facebook accounts." *Id.* at 14.

Plaintiffs also state that one individual commented on a post sharing the WCAX story inquiring whether the employees who received the $17,000 were "wrong." ECF No. 1 at 14. Defendant Bevins allegedly replied to this comment with the following:

> [T]rue story, I did have to pay that $17,000. And all those employees were already paid for all those hours driving a truck. I just didn't have record of them driving. Let's just say that my employees are great and most of that money came back to me!

*Id.* DOL alleges that Bevins intended to "create an impression that Bevins & Son's employees who received back wages and liquidated damages under the Settlement Agreement ... had returned that money to Bevins & Son because Defendant

Bevins wanted to upset Bockus." *Id.* at 15. It states that Bevins knew that his comment was public, and that Bevins was Facebook friends with multiple employees that received money as a result of the settlement. *Id.* DOL also submits that Bevins believed Bockus had spoken to WCAX about the WHD investigation and settlement. *Id.*

Finally, DOL seeks to amend its complaint, adding allegations that Defendants' online conduct towards Tyler Andersen – another former employee – also evinces retaliation. Andersen worked at Bevins & Son until June of 2021. ECF No. 16-1 at 11. He received back wages for unpaid overtime in the WHD settlement. *Id.* at 12. After WCAX published its story about the settlement, Andersen's spouse allegedly shared a link to the story on Facebook. "Within the hour, Defendant Creamer responded on Facebook" to Andersen's spouse's post, apparently saying "[g]ood share ... Hold on while I share and repost all the stories about your family killing chickens and dogs along with all the other articles." *Id.* at 15. Andersen's spouse replied that they were not seeking "drama," and Creamer stated "you were looking for drama by sharing it – give me a break! I'm not looking for drama either as I post all the stuff about your husband and you that others have posted. So please don't take it personally ... hold on a sec as I find it." *Id.* at 15-16 (cleaned up). Andersen's spouse then deleted the original post linking to the WCAX piece. *Id.* at 16.

### B. Procedural Background

**\*3**  DOL filed this action on October 26, 2023. ECF No. 1. The initial complaint focused solely on Defendants' allegedly retaliatory actions against Bockus. Defendants filed a motion to dismiss on December 28, 2023, ECF No. 7, and DOL responded on February 16, 2024. ECF No. 13. On March 8, 2024, DOL moved to amend its Complaint, seeking to add facts about the allegedly retaliatory actions against Andersen in support of its sole count seeking injunctive relief, punitive damages, and litigation costs stemming from Defendants' claimed retaliation. ECF No. 16. Defendants responded on March 22, 2024, arguing that the Proposed Amended Complaint failed to state a claim. ECF No. 18. Defendants' motion to dismiss and DOL's motion to amend are now ripe.

## DEFENDANTS' MOTION TO DISMISS

### A. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss filed under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, a court need not accept as true "[l]egal conclusions, deductions or opinions couched as factual allegations." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

**B. Analysis**

The Fair Labor Standards Act ("FLSA") authorizes the Secretary of Labor to seek injunctions remedying "alleged violations of section 215(a)(3) ... of this title." 29 U.S.C. § 216(b). Section 215(a)(3), in turn, makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

FLSA retaliation claims are analyzed under the three-step burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). The plaintiff must first establish a *prima facie* case of retaliation by showing "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins* 626 F.3d at 53. If the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate, non-retaliatory reason for the action. *Id.* If the defendant does so, "the plaintiff must produce sufficient evidence to permit a reasonable juror to find that the defendant's proffered explanation was pretextual." *Id.* At the pleadings stage, though, "the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether Plaintiff

has stated a retaliation claim, but rather generally assesses the plausibility of Plaintiff's claim based on the facts alleged in the Complaint." *Jian Zhong Li v. Oliver King Enterprises, Inc.*, No. 14-CV-9293 VEC, 2015 WL 4643145, at *2 (S.D.N.Y. Aug. 4, 2015) (quoting *Brundidge v. Xerox Corp.*, No. 12–CV–6157, 2014 WL 1323020(FPG), at *3 (W.D.N.Y. Mar. 31, 2014)). For purposes of Defendants' motion to dismiss, DOL's claims may proceed if they make out a *prima facie* showing of retaliation.

**\*4** Defendants raise a threshold question: whether their speech was protected by the First Amendment. ECF No. 7 at 5. The Court will first address that issue and will then evaluate whether the two allegedly retaliatory incidents from the initial Complaint – Creamer's discussion of Bockus and Bevins' statement that he was repaid the settlement money – qualify as unlawful retaliation.

1. First Amendment

Defendants argue that their Facebook comments "were an expression of [Defendants'] sentiments and grievances concerning" the WHD investigation and are therefore protected by the First Amendment. Few courts have addressed the narrow issue of when the First Amendment protects employers' speech from FLSA retaliation claims. The Court concludes that an employer's speech is not protected by the First Amendment if it is an adverse employment action taken against an employee who engaged in conduct protected by the FLSA.

The Supreme Court addressed a similar issue in *NLRB v. Gissel Packing Co.* ("*Gissel*"), 395 U.S. 575 (1969). In that case, the Court evaluated whether (and when) employer "antiunion campaigns" were entitled to First Amendment protection from prosecution for "unfair labor practice[s]" under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1). *Gissel*, 395 U.S. at 616-20. The Court explained that the First Amendment protects an employers' right to make specific predictions about the effects of unionization on the business. *Id.* at 617. ("[A]n employer's free speech right to communicate his views to his employees is firmly established."). But it also noted that the NLRA allowed employers to communicate its "general views about unionism [and] specific views about a particular union, so long as the communications" did not contain a "threat of reprisal or force or promise of benefit in violation of § 8(a)(1)." *Gissel*, 395 U.S. at 618 (citing 29 U.S.C. § 158(c)) (quotations omitted).

In other words, the Court noted that the NLRA "merely implement[ed] the First Amendment" by establishing that only limited categories of speech – threats of reprisal, force, and promise of benefit – could be prosecuted as unfair labor practices. *Id.* It explained that in constructing such a framework, Congress balanced employers' and employees' speech rights, taking into account "the economic dependence of the employees on their employers." *Id* at 617-18. It condoned this framework, explaining that employers may communicate general and specific views so long as they do not contain a "threat of reprisal or force or promise of benefit." *Id.* at 618. It also explained that the employer may not imply that it would act in response to unionization "solely on [its] own initiative for reasons unrelated to economic necessities." *Id.* Such a threat of discretionary sanction would turn the statement into "a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment." *Id.*

*Gissel* reveals that employer statements designed to punish or otherwise unlawfully influence employees are generally not subject to First Amendment protection. *See also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) (holding that while employers have a constitutional right to file counterclaims against employees, "baseless litigation is not immunized by the First Amendment right to petition"). That result is supported by case law in this Circuit. First, at least one other court has held that an employer "has no First Amendment right to engage in retaliatory conduct prohibited under the FLSA." *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 139 (W.D.N.Y. 2003) ("Perry has no constitutional right to make baseless accusations against plaintiffs to government authorities for the sole purpose of retaliating against the plaintiffs for filing the Becker Farms litigation."). Second, the Second Circuit recently reiterated that pursuant to *Gissel*, the First Amendment does not protect an employers' questioning of an employee if the words used or the context in which they are used "suggest an element of coercion or interference." *Bozzuto's Inc. v. NLRB*, 927 F.3d 672, 684 (2d Cir. 2019) (citing *Rossmore House*, 269 NLRB 1176, 1177 (1984)). It also noted that determination of whether questioning is unduly coercive depends on various factors, ultimately going to the question of "whether under all the circumstances the interrogation reasonably tends to restrain, coerce, or interfere with rights guaranteed by the [NLRA]." *Id.* (quoting *Rossmore House*, 269 NLRB at 1178 n.20).

**\*5** An employer's retaliatory speech against an employee that has engaged in protected activity under the FLSA is unprotected if that speech "discriminate[s] against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). If the speech is retaliatory under the FLSA, it is not protected by the First Amendment. This conclusion is supported by the Supreme Court's guidance in *Gissel*, which held that while employers have a First Amendment right to speak on unionism and benefits of specific unions, they may not engage in coercive or retaliatory tactics. 395 U.S. at 618. As the Second Circuit explained, making this determination requires consideration of the "totality of the circumstances." *Bozzuto's Inc.*, 927 F.3d at 684. The fact that retaliation comes in the form of speech does not entitle it to special protection. However, if the speech does not "discriminate" against an employee because that employee has engaged in conduct protected by the FLSA, the employer is entitled to the robust protections typically afforded by the First Amendment. The Court will apply this framework to each incident below.

### 2. Facebook Post About Bockus

DOL has made out a *prima facie* case of retaliation with regard to Creamer's Facebook post stating "please google the disgruntled employee whom was fired and contributed to the story Riley Bockus (his word and character will be seen)." ECF No. 1-3 at 2. First, it has alleged that Bockus engaged in protected activity. The Complaint states that when Bockus realized that Bevins had omitted one-and-a-half hours of overtime from his pay, Bockus expressed his belief as to when he formally began work, and said "[i]f you don't want to be fair and pay my hours working I will call the labor board." ECF No. 1 at 8. The Second Circuit has held that complaints to employers qualify as protected activity for retaliation purposes. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).[1] The Complaint also notes that Bockus filed a complaint with the WHD, another protected activity under the FLSA. *Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011) ("[T]he filing of formal complaints to a government authority is protected under the FLSA."). Bevins does not dispute that Bockus engaged in protected activity. *See* ECF No. 7 at 11.

The Second Circuit has explained that "[a]n employment action disadvantages an employee if 'it well might have dissuaded a reasonable worker from making or supporting similar charges.' " *Mullins*, 626 F.3d at 53 (citing *Burlington*

*N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This is an objective determination, hinging on whether a "reasonable employee" would be deterred by the employer's conduct. *Burlington N.*, 548 U.S. at 68. Bevins does not dispute that the FLSA's protections apply to current and former employees. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008) (concluding that the FLSA's protections extend to former employees); *Han v. Shang Noodle House, Inc.*, No. 20CV2266PKCVMS, 2022 WL 4134223, at *7 (E.D.N.Y. Sept. 12, 2022) ("[D]istrict courts in this Circuit have" held that the term "employees" includes former employees). However, courts in this Circuit have explained that post-employment retaliation may be found "under relatively narrow circumstances." *Porter v. MooreGroup Corp.*, No. 17-cv-7405 (KAM)(VMS), 2020 WL 32434, at *11 (E.D.N.Y. Jan. 2, 2020) (cleaned up).

**\*6** Those narrow circumstances encompass post-employment disparagement, as the Second Circuit explained in *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("The terminated employee [ ] may have tangible future employment objectives, for which he must maintain a wholesome reputation. Thus, plaintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company [if] the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation.") (cleaned up). Several district courts in the Second Circuit have reached similar conclusions in recent cases. In *Stih v. Rockaway Farmers Market, Inc.*, the court found that an employer's statement to another former employee that the plaintiff was a "criminal" demonstrated actionable retaliation because the statement had "the effect of damaging [the plaintiff's] reputation within his industry of employment." No. 22-CV-3228-ARR-RER, 2023 WL 2760492, at *6 (E.D.N.Y. Apr. 3, 2023). Similarly, in *Han v. Shang Noodle House, Inc.*, the court held that an employer's Tiktok video stating in part "[w]hoever owns restaurants in the United States, please do not hire" the plaintiff "clearly constitute[d] disadvantageous post-employment conduct" because it diminished the plaintiff's future employment prospects. 2022 WL 4134223 at *7.

Creamer's Facebook post qualifies as an adverse "employment action" for two reasons. First, public disclosure of Bockus' identity and status as the FLSA complainant – especially when not otherwise revealed by public documents, such as the settlement or WCAX news story – might "dissuade[ ] a reasonable worker from making or supporting

similar charges." *Mullins*, 626 F.3d at 53. Drawing all reasonable inferences in favor of DOL, public exposure might plausibly tarnish Bockus' reputation and make it more difficult for him to find employment. Second, Creamer's post did more than simply identify Bockus: it also invited readers to investigate his background. ECF No. 1 at 13. And when another commenter replied with a screenshot indicating that Bockus "previously engaged in criminal activity," Creamer responded "point made," indicating that the "point" of the post was to highlight Bockus' criminal record. ECF No. 1 at 13. DOL has, therefore, plausibly alleged that the effect of the post was to disparage Bockus, which qualifies as adverse employment action under the FLSA.[2] *See Stih*, 2023 WL 2760492, at *6; *Han*, 2022 WL 4134223, at *7.

Bevins characterizes Creamer's Facebook post as "making true statements about a former employee in an online posting," and argues that this does not qualify as an adverse employment action. The adverse element of the action is that neither the WHD press release nor the WCAX story mentioned Bockus, and Creamer's Facebook post highlighted Bockus as the "disgruntled employee" associated with the WHD complaint. ECF No. 1 at 13. Furthermore, Creamer's post solicited investigation of Bockus' background without Bockus otherwise implicated in the post. In other words, Creamer called unwanted attention to Bockus that plausibly sullied his reputation. The issue is not that Creamer made "true statements about a former employee in an online posting," but that she did so about a former employee who filed an FLSA complaint without that employee being otherwise implicated in coverage of the underlying settlement, and without that employee's criminal background being otherwise relevant to the settlement or news story.

Further, even a true report of unlawful conduct can be considered unlawful retaliation under the FLSA. *See, e.g., Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 895 (1984) (employer committed an unfair labor practice by reporting undocumented employees to INS in retaliation for participating in union activities); *Aguilar v. E.C. Mgmt. Corp.*, No. 12-20678-CIV, 2012 WL 12875471, at *2 (S.D. Fla. July 17, 2012) ("[R]eporting a crime when ... motivated by a retaliatory animus may be unlawful.").[3] This case is different from *Palma v. NLRB*, 723 F.3d 176 (2d Cir. 2013), in which the Second Circuit held that individuals not lawfully present in the United States could not receive backpay under the NLRA for their unlawful discharge when they were unlawfully hired in the first place, because there was nothing unlawful about Bockus' original employment.

**\*7** DOL has plausibly alleged that the adverse action was taken because of Bockus' protected activity. Creamer's Facebook post directly references the WCAX report, and states that "all [Bevins is] going to say is please google the disgruntled employee whom was fired and contributed to the story Riley Bockus." ECF No. 1-3. In many ways, the post speaks for itself: it acknowledges the news report (and therefore the WHD settlement) and responds by naming Bockus and soliciting investigation of his background. DOL has satisfied the causation requirement for an FLSA retaliation claim.

Finally, the Court concludes that Creamer's Facebook post about Bockus is preliminarily unprotected by the First Amendment pending further factual development. As noted above, an employer's free speech right to comment upon matters that effect the business is firmly established. *Gissel*, 395 U.S. at 617. But when such commentary is "a threat of retaliation based on misrepresentation and coercion" it is "without the protection of the First Amendment." *Id.* at 618. DOL has plausibly alleged that Defendants' conduct was a threat of retaliation based on coercion. *Id.* Accordingly, it is plausibly unprotected.

3. Statement of Repayment

DOL also claims that Defendants retaliated against employees for protected activities when Defendant Bevins commented on Facebook that he had accepted repayment of back wages paid to employees under the settlement agreement. ECF No. 1 at 14-15. DOL asserts that this was retaliatory because "Defendant Bevins wanted to upset Bockus." ECF No. 15.

Defendants do not contest whether this statement was retaliatory in their motion to dismiss. *See generally* ECF No. 7 at 13. Their reply brief cursorily argues that DOL confuses "a potential claim for interference as opposed to retaliation," ECF No. 17 at 14, but the Court will not entertain new arguments raised in reply briefs. *Ernst Haas Studio, Inc. v. Palm Press*, Inc., 164 F.3d 110, 112 (2d Cir. 1999). Discovery may proceed on this set of facts. The First Amendment defense is preliminarily denied for the same reason.

**DOL'S MOTION TO AMEND**

**A. Legal Standard**

Rule 15 of the Federal Rules of Civil Procedure provides that parties shall be granted leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15. The Supreme Court has explained that absent "undue delay, bad faith, or dilatory motive on the part of the movant," leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment must plead sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678; *see also Long v. Parry*, 679 F. App'x 60, 63 (2d Cir. 2017). Whether to grant leave to amend is "within the sound discretion of the district court." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

However, leave to amend should not be granted if amendment would be futile – in other words, if a "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The Second Circuit has explained that amendment should be allowed to preserve a substantively valid claim that has been "inadequately or inartfully pleaded." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). But when the defect with the claim is "substantive" and "better pleading will not cure it," leave to amend should be denied. *Id.* Accordingly, and because Defendants argue that DOL's Proposed Amended Complaint fails to state a claim, the Court will evaluate the Proposed Amended Complaint to determine whether it survives the 12(b)(6) standard.

**B. Analysis**

**\*8** The factual allegations added in the Proposed Amended Complaint pertain only to Andersen, so the Court will evaluate whether those allegations state a plausible claim for retaliation under the FLSA. Plaintiffs claim that Andersen accepted back wages and liquidated damages pursuant to the WHD settlement and argue that this constitutes protected activity. ECF No. 16-1 at 11. The Court agrees. The Second Circuit has "repeatedly affirmed that the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Greathouse*, 784 F.3d at 113-14. While the FLSA's retaliation provision prohibits discrimination against employees because they have filed complaints, "instituted or caused to be instituted any [FLSA] proceedings," or testified in such proceedings, the Second Circuit has explained that "[p]rotection against discrimination for instituting FLSA proceedings would be worthless if an employee could be fired for declining to give up the

benefits he is due under the Act." *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 879 (2d Cir. 1988). Consistent with this guidance, accepting FLSA settlement money – as well as refusing to return that money to an employer – qualifies as protected activity under the FLSA's anti-retaliation provision. *See Lawrence v. Sol G. Atlas Realty Co.*, No. 14CV3616DRHGRB, 2016 WL 7335612, at *6 (E.D.N.Y. Dec. 16, 2016) ("[T]he assertion that plaintiff was retaliated against for cashing the overtime check received as a result of the DOL investigation falls within the protection of the FLSA's retaliation protection.").

Andersen also suffered an adverse employment action. Creamer threatened to publicly share links to stories about Andersen's family engaging in unsavory behavior. ECF No. 16-1 at 15 (Creamer allegedly stating "[h]old on while I share and repost all the stories about your family killing chickens and dogs along with all the other articles."). Again, drawing all plausible inferences in favor of DOL, posting these stories might tarnish Andersen's reputation, making it difficult for him to find employment. As explained above, public dissemination of derogatory information like this could plausibly "dissuade[ ] a reasonable worker from" engaging in the same protected activity that Andersen engaged in: accepting money properly due under an FLSA settlement.[4] *Mullins*, 626 F.3d at 53.

Defendants raise two contrary arguments. First, they submit that Creamer's Facebook response is not actionable because it was made to Andersen's wife, who did not engage in protected FLSA activity. ECF No. 18 at 2-3. The Court disagrees that the allegedly retaliatory action was taken against Andersen's wife. Creamer threatened to post a troubling message about the Andersen family, including Andersen himself. The fact that Andersen's wife received the message is irrelevant. Regardless, the Court agrees with DOL that retaliatory action – including threats – against close family members can qualify as retaliation under the FLSA. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) ("[A] reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired.").[5] Second, Defendants argue that Creamer's statement was made in a private message to Andersen's wife, not on a public Facebook post, and that it was therefore somehow less retaliatory. ECF No. 18 at 2. The threatened action, though, was to publicly distribute negative information about the Andersens. It does not matter that the threat itself was made privately.

**\*9** However, the Court concludes that, even drawing all plausible inferences in favor of DOL, Creamer's comment was not caused by Andersen's protected activity under the FLSA.[6] Regardless of whether the appropriate standard is "but-for" causation or some reduced "motivated in part by" standard, DOL has not alleged that Creamer's actions were taken in response to Andersen accepting settlement money. Creamer allegedly sent the threatening message after Andersen's wife posted a link to the WCAX story on Facebook, but that message was motivated by the Facebook post itself – not Andersen's acceptance of the settlement money. DOL concedes this. ECF No. 16-4 at 9 ("Creamer's threats were in response to Andersen's spouse posting a link to an online news article discussing the" settlement agreement). DOL does not allege that Creamer conducted any threatening actions when Andersen accepted the money, and instead only harassed the Andersens upon seeing the repost of the WCAX story. *Cf. Mullins*, 626 F.3d at 53 (noting that temporal proximity of the allegedly retaliatory action is evidence of whether it was retaliatory). Posting the story – not a protected activity under the FLSA – was the motivator underlying the adverse action. *See* ECF No. 18 at 2 ("In response to [Andersen's wife's post], Ms. Creamer sent a personal message to Ms. Andersen.").

DOL nonetheless argues that Andersen accepting settlement money was a "but for" cause of the retaliation because "Creamer would have had no reason to threaten Andersen's family on Facebook if Andersen had not ... claim[ed] the monies" that he was owed under the settlement. ECF No. 16-4 at 9 (citing *Bostock v. Clayton Cty., Ga.*, 590 U.S. 644, 656 (2020) ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.")). The Proposed Amended Complaint does not support this assertion. Adopting the methodology from *Bostock*, even if Andersen had not accepted the money, 16 others would have – and WCAX's story would have been substantially similar. Creamer likely would have threatened anyone who shared the story on Facebook, regardless of whether they accepted settlement money. It is impossible to know whether Andersen's wife would have shared the WCAX story, but the Proposed Amended Complaint does not state that she added any commentary about her husband's participation in the settlement, indicating that her post did not comment upon her husband's protected activity. Even drawing all reasonable inferences in favor of DOL, Andersen's actions were not a but-for cause of the retaliation. Creamer's message reacted to the Facebook post, not the protected activity. ECF No. 18 at 3 ("The communication in the amended complaint

was a request by a private person asking another private person to remove a link to a WCAX article.").

DOL argues that temporal proximity links Creamer's threat to Andersen to the other allegedly retaliatory activities, such as Creamer threatening Bockus and Bevins claiming kickbacks from employees. ECF No. 16-4 at 9. In support of this argument, DOL cites *Mullins* for the principle that causal connections can be demonstrated though evidence of retaliatory animus or by showing that "the protected activity was closely followed in time by the adverse action." *Mullins,* 626 F.3d at 53 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988)). But the temporal proximity here is between

Creamer's nominally retaliatory actions toward Andersen and other allegedly retaliatory activities, not between protected action (accepting the settlement money) and retaliation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 7) is **denied**. DOL's motion to amend (ECF No. 16) is also **denied**.

## All Citations

Slip Copy, 2024 WL 2059333

Footnotes

1    The Second Circuit noted that "[i]n some circumstances, an employer may find it difficult to recognize an oral complaint as one invoking rights protected by FLSA." *Greathouse,* 784 F.3d at 116. It went on to explain that "a complaint is 'filed' [only] when a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights under the Act." *Id.* (citing *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011)). Drawing all reasonable inferences in favor of DOL, as the Court must at this stage of the litigation, Bockus' statement that he would "call the labor board" served to put Bevins on notice that Bockus was "asserting statutory rights under the" FLSA. *Id.*

2    Defendants assert that they are insulated from liability by 47 U.S.C. § 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." DOL's action is not based upon information provided by another content provider (e.g., the commenter). It is based upon Bevins' exposure of Bockus' identity, solicitation of investigation, and endorsement of his ostensible criminal activities.

3    The *Aguilar* court noted that subjecting employers to civil retaliation lawsuits from reporting crimes might deter reports of unlawful behavior. That concern is not at play in this case, because Bevins did not report any not-yet-charged unlawful conduct. Instead, Bevins' intent was simply to publicize information about Bockus' background.

4    Defendants argue that DOL has not shown an "employment action disadvantaging the plaintiff" because Defendants did not "threaten anyone's employment" or post a public message. As explained above, the standard for evaluating an adverse employment action is whether it "might have dissuaded a reasonable worker from making or supporting similar charges." *Mullins,* 626 F.3d at 53. This includes post-employment conduct that – while not classically employment-related, such as firing or demoting – may adversely impact the plaintiff's "future employment objectives." *Wanamaker,* 108 F.3d at 466. DOL has plausibly alleged that Defendants' threatened conduct may have negatively impacted the employees' future employment prospects, and that the threats may have dissuaded similar future complaints.

5    The Second Circuit has not spoken to this issue, but every other federal court to have considered the question agrees that retaliation against a close family member for another individual's protected activity qualifies as retaliation under the FLSA. *See, e.g., Maier v. Priv. Mini Storage Manager, Inc.,* No. H-18-0991, 2019 WL 3753810, at *7 (S.D. Tex. Aug. 8, 2019); *Ornelas v. CD King Constr., LLC,* No. MO21CV00019DCRCG, 2021 WL 8444015, at *2 (W.D. Tex. Aug. 17, 2021), report and recommendation adopted, No. MO:21-CV-19-DC, 2021 WL 8444002 (W.D. Tex. Sept. 23, 2021); *Smith v. Haynes & Haynes P.C.,* 940 F.3d 635, 649 (11th Cir. 2019) (theorizing that retaliation against a "close" third party might qualify under the FLSA).

6     The Second Circuit has not issued guidance on the causation standard in FLSA retaliation claims. *See Fox v. Starbucks Corp.*, No. 21-2531, 2023 WL 407493, at *1 n.1 (2d Cir. Jan. 26, 2023).

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 3

*Expert Insights—*

## when Social Media Posts Become Workplace Harassment,

**Wolters Kluwer Employment Law Daily, August 5 2024 WL 3644805.**

**The final *EEOC Guidance on Harassment in the Workplace* (EEOC-CVG-2024-1) is ~189 pages so it is not included here, but it is posted on their website:**

https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace

## Analysis of New Precedent (FYI)

**2024 WL 3644805 (C.C.H.)**

Wolters Kluwer Employment Law Daily

Copyright (c) CCH INCORPORATED, A Wolters Kluwer business. All rights reserved.

Labor & Employment Law Daily Wrap Up

News: Story

August 05, 2024

By Jennifer Lada and Phillip Schreiber of Holland & Knight

# EXPERT INSIGHTS—WHEN SOCIAL MEDIA POSTS BECOME WORKPLACE HARASSMENT

**Highlights**
• The U.S. Court of Appeals for the Ninth Circuit recently ruled that companies can be held liable for hostile work environment claims under Title VII of the Civil Rights Act of 1964 if an employee shares harassing content online on their personal social media that negatively impacts the workplace.
• This is the first appeals court decision on employee use of social media outside of the workplace since the U.S. Equal Employment Opportunity Commission (EEOC) issued updated guidance on sexual harassment on April 29, 2024.
• The updated EEOC guidance specially addresses how employee use of social media outside of the workplace can create or contribute to a sexually hostile work environment.

The U.S. Court of Appeals for the Ninth Circuit on July 25, 2024, ruled that under Title VII of the Civil Rights Act of 1964, companies can be held liable for claims of a hostile work environment if an employee shares harassing content online that negatively impacts the workplace.

**Case Summary**

In *Okonowsky v. Merrick Garland*, the Ninth Circuit overturned a trial court's decision on summary judgment in favor of the government in a sexual harassment case brought under Title VII of the Civil Rights Act of 1964.

The case was brought by a staff psychologist working at a federal prison where she claims that her employer, the Federal Bureau of Prisons, failed to address a sexually hostile work environment created by her co-worker. The psychologist claimed that a co-worker posted derogatory content on social media. Despite reporting this to her employer, the co-worker continued to post even after being directed to stop in accordance with the prison's anti-harassment policy. The psychologist eventually resigned due to the lack of action and filed the lawsuit.

The trial court granted summary judgment to the prison, ruling that the social media posts were "entirely outside of the workplace" because they were made on a personal account and not shared or discussed with plaintiff in the workplace. The court found that since the posts did not constitute severe or frequent harassment within the physical workplace, there was no triable issue regarding whether the plaintiff's work environment was objectively hostile.

The Ninth Circuit disagreed with the trial court and found that online social media contact can constitute workplace harassment. The court noted that it "rejected" the "notion that only conduct that occurs inside the physical workplace can be actionable,

especially in light of the ubiquity of social media and the ready use of it to harass and bully both inside and outside of the physical workplace." The court further warned that "[s]ocial media posts are permanently and infinitely viewable and re-viewable by any person with access to the page or site on which the posts appear" and that "even if discriminatory or intimidating conduct occurs wholly offsite, it remains relevant to the extent it affects the employee's working environment." The Ninth Circuit sent the case back to the trial court.

The Ninth Circuit's decision is consistent with recent guidance from the U.S. Equal Employment Opportunity Commission (EEOC) on sexual harassment and the use of social media accounts by employees. It reads in part: "Although employers generally are not responsible for conduct that occurs in a non-work-related context, they may be liable when the conduct has consequences in the workplace and therefore contributes to a hostile work environment." The EEOC also noted that "[c]onduct that can affect the terms and conditions of employment, even if it does not occur in a work-related context, includes electronic communications using private phones, computers, or social media accounts, if it impacts the workplace."

**Key Takeaways**

Companies should conduct thorough investigations into any employee claims of a hostile work environment (whether based on sex, race, origin or any other protected classification), including complaints about co-workers' social media posts. In addition, companies should train employees in managerial positions on how to handle such claims.
  • Companies should consider updating their anti-harassment and social media policies to address strategies for preventing harassment and other problematic online behavior to reduce workplace issues.

*The content of this article is intended to provide a general guide to the subject matter. Specialist advice should be sought about your specific circumstances.*

Jennifer Lada

Phillip Schreiber

Holland & Knight

10 St. James Avenue

11th Floor

Boston, MA 02116 United States

Tel.: +1 617 5232700

E-mail: webcontent@hklaw.com

URL: www.hklaw.com/

© Mondaq Ltd., 2024 - Tel. +44 (0)20 8544 8300 - http://www.mondaq.com

Attorneys: Jennifer Lada and Phillip Schreiber (Holland & Knight).
ExpertInsights: ExpertInsights Discrimination SexualHarassment IndividualRights

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit W

**Excerpts of Court Filings from:**

***Gjovik v. State***, **2:22-cv-00807-RAJ-BAT**
**(W.D. Wash. Jun. 28, 2022).**

# Request for Judicial Notice

**Ashley M. Gjovik**
Juris Doctor Candidate & Public International Law Certificate Candidate
Santa Clara University, Class of 2022

<u>For Submission To:</u>
- **U.S. NLRB:** Region 32 & Office of General Counsel
- **U.S. Department of Labor:** Whistleblower Protection Program
- **U.S. Attorney's Office:** Northern District of California
- **California DOJ:** Office of the Attorney General
- **California Department of Labor:** DIR Labor Commissioners

MS. ASHLEY GJOVIK

                 Complainant,

      v.

APPLE INC., *et al.*,

             Respondent.

**Case No.:**
U,S. Dept of Labor: 9-3290-22-051
U.S. NLRB: 32-CA- 282142, 283161,
284428 & 284441, & 288816
U.S. EEOC 556-2021-00608
U.S. SEC: 16304-612-987-465 & 16353-
506-600-213
CA Dept of Labor: RCI-CM-842830

**LEGAL MEMO**
**Date Action filed**: February 7, 2022

**Charges**:
National Labor Relations Act §8(a)(1)
National Labor Relations Act §8(a)(4)
CERCLA, 42 U.S.C. §9610
SOX 18 U.S.C.A. §1514A
OSHA §11(c) 29 U.S.C. §660
18 U.S.C. §1512(a),(b),(c),(d)
18 U.S.C. §1505
18 U.S.C. 1513
18 U.S.C. §371
18 U.S.C. §876
Dodd-Frank 15 U.S.C. §78u-6(h)(1)(A)(iii)
Racketeer Influenced & Corrupt
Organizations Act
Civil Rights Act Title VII, 42 U.S.C. §2000e
CA Labor Code §232.5, §6310, §1102.5,
§6399, & §132(a)

ASHLEY GJOVIK V APPLE INC
INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

# INTIMIDATION, RETALIATION, & PROPAGANDA CAMPAIGN

## Conspiracy & Animus

## *DRAFT v2*

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 202

**ASHLEY GJOVIK V APPLE INC**
INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

Table of Contents

PUBLIC INTIMIDATING & RETALIATORY STATEMENTS MADE BY NAMED APPLE INC MANAGERS &
EMPLOYEES...................................................................................................................................3
Ricky Mondello (Apple Engineering Manager).................................................................3
Cher Scarlett (Apple Legal & Global Security).................................................................4
Shantini Vyas (Apple Engineer)........................................................................................7
Kev Kitchens (Apple Engineer).........................................................................................8
Christy Dehus (Apple Employee).......................................................................................8

PILE-ONS.........................................................................................................................................9

AGENCY.........................................................................................................................................15
Individuals .......................................................................................................................15
Conspiracy Network ........................................................................................................19

# Public Intimidating & Retaliatory Statements made by Named Apple Inc Managers & Employees

## Ricky Mondello (Apple Engineering Manager)

**Response to Gjovik's Privacy/Surveillance Whistleblowing**
- **30 Aug 2021** Be really careful about drawing conclusions based **on someone posting out-of-context, scary looking screenshots** that claim that an employer is violating employee privacy, without covering what the purpose and disclosure policy of that data is. This is definitely a subtweet. (Ricky Mondello)

**Response to Gjovik Reporting Unlawful Conduct to the Gov**
- **1 Sept 2021:** But _the truth_ is critically important. We need to recognize when someone is **manipulating the empathy and good will of others to fuel a personal vendetta and warpath.** (Ricky Mondello) [1]

**Response to Gjovik's Retaliatory Termination**
- **9 Sept 2021: "**Sometimes you fuck around, and then sometimes **you find out**." (Ricky Mondello) [2]

**Response to Gjovik Reporting Wikipedia-based Harassment**

---

[1] Twitter, Ricky Mondello, https://twitter.com/rmondello/status/1433287029089988610,
[2] Twitter, https://twitter.com/rmondello/status/1436184099987681314,

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 202

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- **4 Jan 2022:** That's right it goes in the **square hole**. *[Video of bird placing objects in different shaped holes.]* (Ricky Mondello) [3]


# Cher Scarlett (Apple Legal & Global Security)

**Response to Gjovik's NLRB Filing**
- **9 Sept 2021:** Important! The **NLRB** investigates ALL charges brought to its office. **It isn't indicative of prosecution of cases or merit in charges.** I still strongly believe in the case myself and Apple employees have brought regarding unlawful statements and application of rules around pay (Cher Scarlett) [4]

**Response to Gjovik's Retaliatory Termination**
- **11 Sept 2021:** It was still a violation and someone else mentioned one of **her tweets had proprietary information** in it. It's going to be **hard to prove this was retaliatory**. (Cher Scarlett)
- **26 Sept 2021: She leaked IP** so the retaliatory discharge will be a tough one to prove. She also is now **saying she was suspended and that's not true**. (Cher Scarlett) [5]
- **29 Oct 2021** I honestly feel sorry for the people **who fall for the grifts**. (Cher Scarlett) [6]
- **29 Dec 2021: S**omeone else got a **Cease & Desist** for printing something [Gjovik] said that wasn't true from Apple. (Cher Scarlett) [7]
- **20 Dec 2021:** I suggested another victim get comment from Apple or proof about something she wrote that to my knowledge, from speaking with the person it was about, to protect herself. **She did leak IP, and posted the evidence of it, which is now cited in Apple's defense.** (Cher Scarlett) [8]
- **20 Dec 2021:** I quietly warned a handful of people about her behavior towards other people. **I refused to corroborate misrepresentations of fact, and provided contrary evidence**. (Cher Scarlett) [9]

**Response to Gjovik's EEOC/DFEH Charge & "Right to Sue"**
- **13 Sept 2021: The EEOC and DFEH have already declined to pursue** and given her the right-to-sue (Cher Scarlett)
- **1 Nov 2021:** "If we aren't able to determine if the law may have been violated, we will send you a Notice of Right to Sue." It **DOES NOT mean the evidence justifies a verdict would be in the complainant's favor. When it does, they FIRST attempt to settle.** [EEOC link]." (Cher Scarlett)[10]

---

[3] Twitter, https://twitter.com/rmondello/status/1479128619675013120 ,
https://web.archive.org/web/20220129181249/https://twitter.com/rmondello/status/147912861967501312
[4] Twitter, https://twitter.com/cherthedev/status/1436194928351014942;
[5] Team Blind, See PDF
[6] Twitter, https://twitter.com/cherthedev/status/1454319910427918344,
[7] Text messages, see screenshots
[8] Twitter, https://twitter.com/cherthedev/status/1476684139826802689 ,
[9] Twitter, https://twitter.com/cherthedev/status/1476685163660603403 ,
[10] Twitter, https://twitter.com/cherthedev/status/1455195681258237957,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- **3 Jan 2022**: **Both the DFEH and EEOC issued Gjøvik right to sue letters, which indicates that while the agencies were unable to determine if law was violated and would not be proceeding on her behalf.** (Cher Scarlett via Gjovik's Wikipedia Page) [11]

**Admission to Blacklisting**

- **12 Oct 2021:** Proud of you. There's really no point in it. **Good News outlets don't take her seriously because her story shifts like a chameleon,** and eventually, **it will all work itself out.** (Cher Scarlett) [12]
- **11 Dec 2021:** I made the right choice in **exercising the boundary of ejecting them from amplification.** (Cher Scarlett) [13]
- **5 Feb 2022: Multiple people reported this person for their behavior to their University** as far as I know. (Cher Scarlett) [14]

**Response to Gjovik Reporting Unlawful Conduct to the Gov**

- **25 Oct 2021:** Anyone can file complaints with federal and state agencies. **It doesn't mean there is merit, and it doesn't mean the person doing the reporting is being honest or genuine in doing so.** Hero culture creates parasocial relationships that create scary influence that spreads. (Cher Scarlett) [15]
- **25 Oct 2021:** This is important and nuanced. Whistleblowers are human. Everyone has their own agenda, and if you do not temper your expectations and question motives and information **— you can easily get caught up in supporting something completely bogus or worse… something harmful.** (Cher Scarlett) [16]
- **29 Oct 2021:** So far, she has tried desperately to **use other victims for her own gain, made racist remarks, lied to the public, to the government, about what happened to her, and about me, and a bunch of other people who tried to help her.** I cannot stand to watch good people such as yourself get wrapped up in her web. (Cher Scarlett)
- **13 Dec 2021:** "Lions don't concern themselves with the opinions of sheep." I used to think this quote was egotistical, but now, I get it. I see people misunderstand what they read, and believe **full-out fabricated nonsense that borders conspiracy, day-in and day-out.** There's no reaching them. (Cher Scarlett) [17]
- **29 Dec 2021:** I want to see her get justice, but **perjuring herself** and doing all of this is **harmful** (Cher Scarlett) [18]
- **30 Dec 2021:** I am not going to diagnose anyone, but this behavior maps to **narcissistic personality disorder**, and if **it's narcissistic supply driving them, giving it ANY attention only FUELS it**

---

[11] Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:Conflict_of_interest/Noticeboard/Archive_184
[12] Twitter, https://twitter.com/cherthedev/status/1447927265166249997,
https://web.archive.org/web/20220131033740/https://twitter.com/cherthedev/status/1447927265166249997
[13] Twitter, https://twitter.com/cherthedev/status/1469706762831814657,
https://web.archive.org/web/20220129183819/https://twitter.com/cherthedev/status/1469706762831814657
[14] Twitter, https://twitter.com/cherthedev/status/1490053004791218177,
[15] Twitter, https://twitter.com/cherthedev/status/1452677821998850048,
[16] Twitter, https://twitter.com/cherthedev/status/1452677378925219845 ,
[17] Twitter, https://twitter.com/cherthedev/status/1470572468662267904,
[18] Text messages, see screenshots

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

**further.** Retweet: https://www.psychologytoday.com/us/blog/tech-support/201906/dealing-the-narcissists-smear-campaign (Cher Scarlett) [19]

**Response to Gjovik's Retaliatory Suspension**

- **26 Sept 2021: She asked for the leave,** she just felt she had no choice after they did not want to give a paid exit she asked for. (Cher Scarlett) [20]
- **29 Dec 2021:** Please check for comment from Apple on Ashley refusing to sign an NDA and turning down a $600,000 settlement. She told me that 1) no lawyer would take her case unless she got fired and 2) they said no to her getting a paid exit and **that is WHY she asked for paid administrative leave.** (Cher Scarlett)
- **5 Jan 2022:** "I found the terminology **"indefinite paid administrative leave" misleading** based on all of the materials I read, including an email from an Apple HR representative you uploaded to your website **which states that it was not indefinite**." (Cher Scarlett via Gjovik's Wikipedia Page) [21]
- **7-8 Jan 2022:** Cher attempting to get me to ask the Wikipedia arbitration committee to stop investigating an account harassing me
- **5 Feb 2022: While I initially said you lied about being "suspended"**, though not publicly and to less than FIVE people, I never called you a liar. Those tweets were NOT about you. I was extremely bothered by the fact that you told me you discovered it was an adverse action, and started saying you were suspended, instead of that you felt forced into requesting the leave. (Cher Scarlett) [22]

**Response to Gjovik's Fed Witness Intimidation / Threats / Retaliation Complaints**

- **7-8 Jan 2022:** Cher attempting to get me to ask the Wikipedia arbitration committee to stop investigating an account harassing me
- **9 Jan 2022:** (Scarlett claims Gjovik was **"extorting her"** and tells multiple people **she reported Gjovik to law enforcement** that week, including **reporting Gjovik to the U.S. FBI**.) (Private Messages)
- **5 Feb 2022:** In my conversation with the federal agency about what occurred, and to avoid disparagement and defamation, I told them matter-of-factly what happened and **they recommended I report this person to the FBI for extortion.** Being a witness does not give you a license to abuse. (Cher Scarlett) [23]
- **5 Feb 2022: Implying that people are trying to have you assassinated or cause you to kill yourself, me included, is extremely harmful, and I alerted APPLE** about the chain of tweets involved in doing so. (Cher Scarlett) [24]
- **5 Feb 2022: Please remove my tweets that cannot be reasonably justified to be connected to you from your January NLRB memo**.(Cher Scarlett) [25]
- **5 Feb 2022: You need to delete my tweets from your memo** that contain personal information about me and my family (Cher Scarlett) [26]

---

[19] Twitter, https://twitter.com/cherthedev/status/1476353379815223296,
[20] Team Blind, See PDF
[21] Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:Conflict_of_interest/Noticeboard/Archive_184
[22] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[23] Twitter, https://twitter.com/cherthedev/status/1490052091733164032,
[24] Twitter, https://twitter.com/cherthedev/status/1490053004791218177,
[25] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[26] Unsolicited email via website webform on Feb 5 2022 (see PDF)

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- **5 Feb 2022:  You need to remove all assertions that I am accounts trolling you]** (Cher Scarlett)[27]

**Response to Gjovik's SEC Whistleblower Tip**
- **5 Feb 2022:** Do you know whose AppleInsider piece on **a [SEC] whistleblower tip** which contained **absolutely no material information** shareholders could use caused that? Yours. (Cher Scarlett) [28]


# Shantini Vyas (Apple Engineer)

**Response to Gjovik Reporting Unlawful Conduct to the DOJ**
- **1 Sept 2021**: By creating **bogus, unsubstantiated filings with the DOJ and other regulatory bodies,** this person has just endangered the future cases of people with legitimate claims. (Shantini Vyas)[29]
- **1 Sept 2021:** However, [Gjovik] **lied about actions Apple has taken**. They have **misled** people by leaving out key details. They find new angles to make all of the Apple out to be the Big Bad Guy. The **goalposts move hourly**. (Shantini Vyas) [30]
- **1 Sept 2021:** A certain employee has made **it their mission to bring down Apple** through whatever means necessary. Including straight **LIES**. [31] This is about a person whose name starts with "A." (Shantini Vyas) [32]
- **1 Sept 2021:** This person has a lot of support. They've gained **it by taking advantage of the anger and frustration of other people. It's predatory.** (Shantini Vyas) [33]
- **1 Sept 2021:** Through their actions [Gjovik] contributes to an insidious narrative: that **women make things up and are trying to get attention**. This is so damaging to other women. To those afraid to speak up. (Shantini Vyas) [34]
- **1 Sept 2021:** I would like to reiterate: **I do believe** people were really shitty to them. **However**, I think it has progressed way past that point and become a tale of **vengeance**. (Shantini Vyas) [35]
- **2 Sept 2021**: the only people benefiting from this is Apple. They can use this as precent **to deny future reports and claims of harassment.** (Shantini Vyas) [36]
- **17 Sept 2021:** Encouraging employees to leak is also predatory. **An employee gets nothing out of leaking except potentially get fired.** (Shantini Vyas) [37]

---

[27] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[28] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[29] Twitter, https://twitter.com/_shantini_/status/1433270371915116544,
[30] Twitter, https://twitter.com/_shantini_/status/1433270364440825869 ,
[31] Twitter, https://twitter.com/_shantini_/status/1433270352919072771,
[32] Twitter, https://twitter.com/_shantini_/status/1433270361060225024 ,
[33] Twitter, https://twitter.com/_shantini_/status/1433270373500477442,
[34] Twitter, https://twitter.com/_shantini_/status/1433270370358943745,
[35] Twitter, https://twitter.com/_shantini_/status/1433274644858032128,
[36] Twitter, https://twitter.com/_shantini_/status/1433419902803759106,
[37] Twitter, https://twitter.com/_shantini_/status/1438921833852571653,

- **12 Oct 2021:** I tweeted some stuff about that **one lady who got fired from Apple**. But I deleted as I decided **I'm not going to ruin my day with anger at someone inconsequential** ✋ (Shantini Vyas)[38]

# Kev Kitchens (Apple Engineer)

**Response to Gjovik Reporting Unlawful Conduct to the Gov**
- **1 Sept 2021:** Women fight so hard to be believed by our fucked up, sexist society that it's horrifying to **see [Gjovik] hand those bastards a pile of ammunition**. (Kev Kitchens)[39]

# Christy Dehus (Apple Employee)

**Response to Gjovik Speaking out the Press about Work Conditions**
- **12 Aug 2021:** I've informed Apple they **should fire** [Gjovik] immediately (Christy Dehus) [40]
- **12 Aug 2021:** **If I receive anything from the police regarding a restraining order from you,** the following below email goes directly to Tim Cook and Diedre O'Brien. (Christy Dehus) [41]

---

[38] Twitter, https://twitter.com/_shantini_/status/1447926059903557632,
https://web.archive.org/web/20220131035341/https://twitter.com/_shantini_/status/1447926059903557632
[39] Tweet deleted after I announced NLRB charge & named Kitchens (see screenshot for reference instead)
[40] Emails, see screenshots
[41] Emails, see screenshots

# Pile-Ons

**Sept 1 8:27pm – Public Twitter.com Post**

- **Shantini Vyas**: Okay at the risk of *gestures wildly at Twitter*. Apple is a big company. It's got some problems. But it's a great place to work for a lot of people. A certain employee has made it their mission to bring down Apple through whatever means necessary. Including straight LIES. [42]
- **Retweeted by:**
  - 🔴 **Ricky Mondello (Employer,** Authentication Experience manager, @rmondello)
- **Liked by:**
  - **Managers**: 🔴 **Pinar Stanfield** (@pinar747), 🔴 **DJ Capelis** ( @djcapelis), 🔴 **Peter Gulezian** (@petermg), 🔴 **Faye Garfinkle** (@faycetime), 🔴 **Ricky Mondello** (@rmondello), 🔴 **Eric Vitiello** (@pixel), 🔴 **Rick Ballard** (@rballard); 🔴 **Lewis Thompson** (@lewiz)
  - **Employees**: **Leeann Herd** (@leeannherd), **Allyson Kazmucha** (@iMuggle), **Forest Hill** (@foresthill), **Matt Searle** (@matt_s_searle), **Rubén Santiago** (@rubenator), **Elliot Barer**, (@ebarer), **Clint Wilson** (@clintw_), Devon (@devonbl), **Bruno Philipe** (@brunophilipe), **BJ** (@bj_spins), **Devon Endlcott** (@dendicott22), **Jeff Koftinoff** (@statusbar), **Arian** (@arian), **Jonathan** (@jonjesbuzz), **Ray Powers** (@ray_powers), **Zach Gardner** (@locriani), Karan Varindani (@karan301_), **Ross Freeman** (@rfree18), **Drew** (@drewocarr), **Rizwan Sattar** (@rizzledizzle), **Kevin** (@kturnt74), **Kev Kitchens** (@kitchens_sync), **Hugo Kessler** (@hugokessler), **Owen** (@me_north_of), **Sarah Kim** (@____skim), **Mehdi Shibahara** (@mehdishibahara), **Matt** (@mathemattical), **Noah Witherspoon** (@mahalis), **Thomas** (@tomn94), **Louis D'hauwe** (@louisdhauwe), **Josh Caron** (@_joshcaron), **Saam Barati** (@saambarati), **Harrison** (@hrrsn), **Trever** (@itstreverr), **Kacper Harasim** (@kacperharasim), **Matthew Macuso** (@matt8109), **Steven McGrath** (@McGrathPDX), **Sebastien** (@sbstnrtl), **Alex Hass** (@alexhaas), **Vishnu Prem** (@burnflare), **Daniel Young** (@dnlyoung); **Van** (@thevanmccoy); **iRyan** (@rg3116); **PJR** (@thisispjr);
  - **Press**: **Chance Miller** (editor in chief of 9to5 Mac, @chancehmiller);
  - **Other**: **Mel Nayer** (@mel_nayer); **Beezie_Wacks** (@beezie_wacks); **Neoform** (@neoform)

**Sept 1 2021 9:33pm – Public Twitter.com Post**

- **Retweet: Shantini Vyas:** "Okay at the risk of..." 🔴 **Ricky Mondello (Employer):** : Corporations don't need anyone's defense. They have money, lawyers, and a brand to protect them. But _the truth_ is critically important. We need to recognize when someone is manipulating the empathy and good will of others to fuel a personal vendetta and warpath.[43]

---

[42] Twitter, https://twitter.com/_shantini_/status/1433270352919072771,
https://web.archive.org/web/20220129111600/https://twitter.com/_shantini_/status/1433270352919072771?s=20
[43] Twitter, Ricky Mondello, https://twitter.com/rmondello/status/1433287029089988610,
https://web.archive.org/web/20220129111609/https://twitter.com/rmondello/status/1433287029089988610

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- o **Retweeted by: Shantini Vyas, Thomas Naudet** (@tomn94), **Harrison** (@hrrsn, engineer), **Deborah Goldsmith** (@debbiegoldsmith)
- o **Liked by:**
  - **Apple managers**: 🔴 **Ryan Burkhardt** (@ryanburk), 🔴 **Rick Ballard** (@rballard), 🔴 **Faye Garfinkle** (@faycetime)
  - **Apple employees: Steven McGrath** (@mcgrathpdx), **Matt Searle** (@matt_s_searle), **Kristen Kwong** (@kristenkwng), **Louie Livon-Bemel** (@livbem), **Devon** (@devonbl), **Linda Dong** (@lindadong), **Sarah Kim** (@____skim), **Zach Gardner** (@lociani), **Karan Varidani** (@karan301_), **Ross Freeman** (@rfree18), **Neal Young** (@nealyoung), **Thomas Bosboom** (@thomasbosboom), **Louis Gerbarg** (@lgerbarg), **Tariq Ismael** (@tariqi), **Alex Duner** (@asduner), **Alex Hass**
- 🔴 **Ricky Mondello (Employer):** this is one of the least important things happening right now but the only one I feel like I can put words to. The amount of human suffering we're all witnessing on a daily basis is difficult to reason about or have a useful opinion on.)
  - o **Shantini Vyas**: So well said. I think you distilled my thread down to the essential point. 😅 [44]
  - o **Liam Reimers**: "Gut-wrenching" is about as far as I can get as personal opinions go. :( [45]

## Sept 2 6:21am – Public Twitter.com Post
- **Shantini Vyas:** I just want to say I got a *lot* of messages in support of this post. A lot of people, like me, struggled with this situation because it feels horrible to doubt a woman who comes forward with allegations. I still don't doubt that people mistreated her. That's the sad part. **Retweet: Shantini "**Okay at the risk of...**"**[46]
  - o *Liked by:*
    - **Managers (Employer): Rick Ballard** (@rballard), **DJ Capelis** (@djcapelis), **Ricky Mondello** (@rmondello), **Faye Garfinkle** (@faycetime)
    - **Employees: Forest Hill** (@foresthill), **Elliot Barer** (@ebarer), **Josh Caron** (@_joshcaron), **Jeff Koftinoff** (@statusbar), **Noah Witherspoon** (@mahalis), **Devon** (@devonbl), **Bruno Philipe** (@brunophilipe), **Kev Kitchens** (@kitchens_sync), **Sarah Kim** (@___skim), **Michael Gecht** (@_mischi), **Zach Gardner** (@locriani), **Marco Carini** (@locriani), **Ross Freeman** (@rfree18)
- **Shantini Vyas**: I really honestly hope she finds a resolution that makes her happy. I hope that the people who harassed her have to face justice.
- **Shantini Vyas**: My spouse made a really good point, in that the only people benefiting from this is Apple. They can use this as precent to deny future reports and claims of harassment.
  - o **Liked by:**
    - **Managers (Employer)**: 🔴 **Ricky Mondello**
    - **Employees**: **Bruno Philipe** (@brunophilipe), **Zach Gardner** (@locriani)

[44] Twitter, Shantini Vyas, https://twitter.com/_shantini_/status/1433287806433087488, https://web.archive.org/web/20220129111635/https://twitter.com/_shantini_/status/1433287806433087488
[45] Twitter, https://twitter.com/wreimers/status/1433423383635509260
[46] Twitter, https://twitter.com/_shantini_/status/1433419902803759106, https://web.archive.org/web/20220129111921/https://twitter.com/_shantini_/status/1433419902803759106

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

**Sept 2 2021 – Public Twitter.com Post**
- **Shantini Vyas:** Okay y'all. I am muting and going back to my dogs. Peace. [47]
  - 🔴 **Ricky Mondello (Employer):** : Hi, you're great.
    - *Liked by Shantini Vyas*
    - **Shantini Vyas**: Aw no you are! 😊
      - *Liked by* 🔴 *Ricky Mondello*

**Sept 9 2021 9:25pm – Public Twitter.com Post**
- 🔴 **Ricky Mondello (Employer):** : Sometimes you fuck around, and then sometimes you find out.[48]
  - Liked & Retweeted by **Shantini Vyas**
  - **Shantini Vyas**: Ah yes, the famous FAFO queue. Not recommended compared to FIFO.
    - *Liked by* 🔴 *Ricky Mondello, DJ Capelis, & Kev Kitchens*
  - **Kev Kitchens**: Well, hello there consequences of my own actions
    - *Liked by Shantini Vyas*
- *Liked By*
  - Managers (Employer): 🔴 **DJ Capelis**, 🔴 **Jeff Kelley**
  - **Employees**: **Shantini Vyas**, **Kev Kitchens**, **Hugo Kessler** (@hugokessler), **Harris Papadopoulos** (@cpapado), **Patrick Metcalfe** (@pducks32), **Tim** (human interface engineer, @timdesir), **BJ** (@bj_spins), **Julio Ortiz** (@_julioortiz), **Alex Haas** (@alexhaas), **Ross Freeman** (@rfree18), **Thomas** (@tomn94), **Louis D'hauwe** (@louisdhauwe), **Devon** (@devonbl), **Raul Rea Menacho** (@raul_rea),
  - **Press**: **John Gruber** (@gruber)

**Sept 10 2021 9:27am – Public Twitter.com Post**
- **Shantini Vyas:** It's come to my attention that there are people? Out here? Defending me? ❤️❤️❤️ [49]
  - *Liked by* **Cher Scarlett**
  - **Shantini Vyas**: A tweet of mine ended up in a news story and some people on the internet did not like it. [50]
    - Liked by **Cher Scarlett**
  - **Kev Kitchens**: We got your back![51] (Liked by Vyas)
- **Liked by**:

---

[47] Twitter, https://twitter.com/_shantini_/status/1433456310582927361,
https://web.archive.org/web/20220129111957/https://twitter.com/_shantini_/status/1433456310582927361
[48] Twitter, https://twitter.com/rmondello/status/1436184099987681314,
https://web.archive.org/web/20220129205856/https://twitter.com/rmondello/status/1436184099987681314
[49] Twitter, https://twitter.com/_shantini_/status/1436361127043162114,
https://web.archive.org/web/20220129211339/https://twitter.com/_shantini_/status/1436361127043162114
[50] Twitter, https://twitter.com/_shantini_/status/1436365689154162689,
https://web.archive.org/web/20220129210059/https://twitter.com/_shantini_/status/1436365689154162689
[51] Twitter, https://twitter.com/kitchens_sync/status/1436388407463137285,
https://web.archive.org/web/20220129211411/https://twitter.com/kitchens_sync/status/1436388407463137285

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- o **Managers (employer)**: **Bryan Bartow** (@bryanbartow)
- o **Engineers**: **Ken Ryall** (@kenryall), **Cher Scarlett** (@cherthedev), **J.S.** (@64bitjoe), **Ross Freeman** (@rfree18), **Steven Peterson** (@squeakytoy), **Leandro Ivan** (@leandroivan), **Kev Kitchens** (@kitchens_sync), **Sarah Kim** (@___skim), **Andi Rohn** (@andi_rohn)

## Sept 17 2021 10:44am – Public Twitter.com Post
- • **Shantini Vyas:** I mean this is kind of deserved. Live-tweeting an-internal event is not really newsworthy. Encouraging employees to leak is also predatory. An employee gets nothing out of leaking except potentially get fired. [Image: **Zoe Schiffer** (Journalist): "Someone just said 'fuck Zoe Schiffer' in talk-apple Slack Channel. Ouch!"][52]
  - o **Liked:**
    - ▪ **Managers: Richard Landsberg** (@zerointerupt), **Morgan Grainger** (@morgangrainger), **Eric Albert** (@ejalbert)
    - ▪ **Employees: Ray Powers**, **Kev Kitchens**, **Zach Gardner**, **Cher Scarlett** (@cherthedev), **Rainer Tenhunen** (@rahina), **Ben** (@benchr), **Harrison** (@hrrsn), **Nitesh Kant** (@NiteshKant), **Kevin** (@kturnt74), **Mehdi Shibahara** (@mehdishibahara), **Nicholas Orsini** (@nicholassorini), **Devon** (@devonbl), **Matthew Mancuso** (@matt8109), **Michael Gecht** (@_mischi), **Steven Peterson** (@squeakytoy), **Ken Ryall** (@kenryall), **Ross Freeman** (@rfree18), **Sarah Kim**, **Alex Lucas** (@alucas96)
    - ▪ **Press:** Shoshana Wodinsky (Gizmodo)

## Oct 12 2021– Public Post on Twitter
- - **Shantini Vyas:** I tweeted some stuff about that one lady who got fired from Apple. But I deleted as I decided I'm not going to ruin my day with anger at someone inconsequential ✌️ [53]
  - o *Liked by: Cher Scarlett, Kev Kitchens, Zach Gardner, Rick Gigger, Sarah Kim, Ross Freeman*
- - **Cher Scarlett** (@cherthedev): Proud of you. There's really no point in it. Good News outlets don't take her seriously because her story shifts like a chameleon, and eventually, it will all work itself out. [54]
  - o *Liked by:,* 🔴 *Ricky Mondello, Shantini Vyas, Brian Gannin, Sarah Kim, Zach Gardner,*
- - **Sarah** (@winocm): I noticed this too.
  - o *Liked by: Cher Scarlett*

## Oct 16 2021 6:54am -- Public Twitter.com Post

---

[52] Twitter, https://twitter.com/_shantini_/status/1438921833852571653,
https://web.archive.org/web/20220128033555/https://twitter.com/_shantini_/status/1438921833852571653
[53] Twitter, https://twitter.com/_shantini_/status/1447926059903557632,
https://web.archive.org/web/20220131035341/https://twitter.com/_shantini_/status/1447926059903557632
[54] Twitter, https://twitter.com/cherthedev/status/1447927265166249997,
https://web.archive.org/web/20220131033740/https://twitter.com/cherthedev/status/1447927265166249997

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- **Cher Scarlett** (@cherthedev): Question the ethics of others only when you, yourself, have acted with integrity. The truth has a way of rising to the top.[55]
  - *Liked by: Brian Garrin (@bgannin); Sarah Kim (@___skim), Ifeoma Ozoma (@IfeomaOzoma); Meredith Whittaker (@mer_edith)*
- **Cher Scarlett** (@cherthedev): Lying while claiming others are unethical is something. [56]
- **Cher Scarlett** (@cherthedev): I'm talking about lying actively while claiming others are being unethical for not engaging with the lies. [57]
- **Cher Scarlett** (@cherthedev): I just don't want to cloud what's important with petty shit. As I said, the truth will prevail here. [58]
- **Cher Scarlett** (@cherthedev): Not every statement need's a devil's advocate, though.[59]
  - [Redacted] This by itself doesn't quite ring true for me still. "Question the ethics of others only when you, yourself, have acted with integrity."
  - **Cher Scarlett** (@cherthedev): Yes, it does. [60]
  - [Redacted] So you can't question someone else's integrity unless you have perfect integrity. Hmmm…

## October 16 2021 2:06pm -- Public Twitter.com Post
- **Cher Scarlett** (@cherthedev): Watch who centers themselves and acts out. Saying there is solidarity and acting in solidarity are two very different things. One is performative, the other moves the needle. Listen to women like Timnit Gerbru, Ifeoma Ozoma, Sophie Zhang, Janneke Parrish who are leading us.[61]
  - **Retweeted by: Steven McGrath** (McGrathPDX); **Brian Gannin** (@bgannin)

## Jan 8 2022 – Public Twitter Post
- **Shantini Vyas:** that ashley person is stoking her followers into making fun of someone's overdose. seems totally legit and like she's a real activist [62]
  - Liked by: **Managers:** 🔴 **Eric Vitiello; Employees: Steven McGrath, Cher Scarlett, Harrison, Ross Freeman, Juan Laube**
  - **Ankit Aggarwal:** "best person"

[55] Twitter, https://twitter.com/cherthedev/status/1449373213549420546,
https://web.archive.org/web/20220129205412/https://twitter.com/cherthedev/status/1449373213549420546
[56] Twitter, https://twitter.com/cherthedev/status/1449425934679896064 ,
https://web.archive.org/web/20220130012228/https://twitter.com/cherthedev/status/1449425934679896064
[57] Twitter, https://twitter.com/cherthedev/status/1449435654408994816 ,
https://web.archive.org/web/20220130012027/https://twitter.com/cherthedev/status/1449435654408994816
[58] Twitter, https://twitter.com/cherthedev/status/1449435654408994816 ,
https://web.archive.org/web/20220203070344/https://twitter.com/cherthedev/status/1449435654408994816
[59] Twitter, https://twitter.com/cherthedev/status/1449437394529243138,
https://web.archive.org/web/20220129205458/https://twitter.com/cherthedev/status/1449437394529243138
[60] Twitter, https://twitter.com/cherthedev/status/1449446255780765696;
https://web.archive.org/web/20220129205357/https://twitter.com/cherthedev/status/1449446255780765696
[61] Twitter, https://twitter.com/cherthedev/status/1449481965862748163,
https://web.archive.org/web/20220129191704/https://twitter.com/cherthedev/status/1449481965862748163
[62] Twitter, https://twitter.com/_shantini_/status/1479974987540881410;
https://web.archive.org/web/20220129030415/https://twitter.com/_shantini_/status/1479974987540881410

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- ▪ *Liked by Shantini Vyas*
- o **Brian Gannin:** Gotta stay on brand.
  - ▪ *Liked by Shantini Vyas & Cher Scarlett*

**Jan 30 2021 – Public Twitter.com Post**
- o **Shantini Vyas** (@_shantini_): It's sometimes tough but important to remember that people will view your shitposting differently if you're not a white man. People finding you entertaining will not always translate into them wanting to be your friend/colleague. [63]
  - o *Liked by Andi Rohi, Zach Gardner (@locriani), Sarah Kim ((@___skim), Cher Scarlett (@cherthedev)*
  - o ⬤ **Bryan Bartow (@braynbartow) (employer):** BUT SOME WANT TO BE YOUR FRIEND AND COLLEAGUE EVEN MORE PLZ COME BACK I DARE YOU.[64]
    - ▪ *Liked by David Spector (@dhmspector), Shantini Vyas (@_shantini)*
  - o **Ankit Aggarwal (@aciidb0mb3r)** are you crying about shitposting [65]

---

[63] Twitter, https://twitter.com/_shantini_/status/1487877110379204612,
https://web.archive.org/web/20220130212016/https://twitter.com/_shantini_/status/1487877110379204612
[64] Twitter, https://twitter.com/bryanbartow/status/1487898600474615818,
https://web.archive.org/web/20220130212252/https://twitter.com/bryanbartow/status/1487898600474615818
[65] Twitter, https://web.archive.org/web/20220201005747/https://twitter.com/aciidb0mb3r/status/1487960053025939457,
https://twitter.com/aciidb0mb3r/status/1487960053025939457

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

# Agency

## Individuals

**Ricky Mondello:**
- Apple Manager / Supervisor

**Faye Garfinkle:**
- Apple Manager / Supervisor
- Previous coworker on 2015-2016 Apple team

**Eric Vitiello**
- Apple Manager / Supervisor
- Friends with previous coworker in 2015-2016 Apple team

**Cher Scarlett:**
- Worked in Apple Legal & Global Security until November 19, 2021
- Scarlett entered a settlement agreement with Apple Inc with undisclosed terms
- On Oct 20 2021, Scarlett posted she complied with Apple's request for her to no longer speak publicly about Apple as a "sign of good faith" on Sept 21 for settlement contract negotiations with Apple. [66]
  - However, during the time from Sept 21 through Oct 20, Scarlett did make the. Following statements about Gjovik, which are related to Apple, & under information & believe Scarlett has approval if not an obligation to make said statements:
    - *Cher Scarlett: I'm talking about [Apple] workplace issues while others are doing messy shit leaking IP or other actual confidential thing and I'm getting blamed for it. It's ridiculous. You can both trust and believe in your leadership while recognizing and talking about issues you see. It's not a dichotomy. [67]*
    - *Cher Scarlett: Unfortunately she leaked IP so the retaliatory discharge will be a tough one to prove. She also is now saying she was suspended and that's not true. I'm concerned for her, but she made a lot of money and has no dependents. She's almost done with her law degree. She will be fine.*
    - *Cher Scarlett: She asked for the leave, she just felt she had no choice after they did not want to give a paid exit she asked for.*
    - *Cher Scarlett: She stated she was being faced with a hostile work environment. She asked for a paid exit through Dec 2022 or a new position placement until that same date (when she graduates law school). They did not oblige and suggested she take medical leave (this is standard practice, though certainly doesn't' feel right). She refused and suggested Paid Admin Leave*

---

[66] https://twitter.com/cherthedev/status/1450977193295712257,
https://web.archive.org/web/20220129213829/https://twitter.com/cherthedev/status/1450977193295712257
[67] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/tim_cook_says_employees_who_leak_memos_do_not/,
https://web.archive.org/web/20220128083128/https://www.reddit.com/r/apple/comments/pt91m5/tim_cook_says_employees_who_leak_memos_do_not/

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

*instead, which they agreed to give her during the investigation, so her earned paid leave and sick time would be protected.*

▪ *Cher Scarlett: [now deleted post complaining about Apple's alleged lack of support for employee voting in state elections, part of a project Gjovik led at Apple] [68]*

▪ *Cher Scarlett (@cherthedev): People who lie about small things cannot be trusted with big things. [69] This is a specific thing that most people would not lie about. [70]*

▪ *Shantini Vyas: I tweeted some stuff about that one lady who got fired from Apple. But I deleted as I decided I'm not going to ruin my day with anger at someone inconsequential. [71] Cher Scarlett (@cherthedev):  Proud of you. There's really no point in it. Good News outlets don't take her seriously because her story shifts like a chameleon, and eventually, it will all work itself out. [72]*

▪ *Cher Scarlett (@cherthedev): Judicial notice is a rule in the law of evidence that allows a fact to be introduced into evidence if the truth of that fact is so notorious or well known, or so authoritatively attested, that it cannot reasonably be doubted.[73]*

▪ *Cher Scarlett (@cherthedev): This week my personal growth has been in the category of practicing restraint. So. Much. Restraint." [74]*

▪ *Cher Scarlett (@cherthedev): Question the ethics of others only when you, yourself, have acted with integrity. The truth has a way of rising to the top.[75]*

▪ *Cher Scarlett (@cherthedev): Lying while claiming others are unethical is something. [76]*

▪ *Cher Scarlett (@cherthedev): I'm talking about lying actively while claiming others are being unethical for not engaging with the lies. [77]*

▪ *Cher Scarlett (@cherthedev): Watch who centers themselves and acts out. Saying there is solidarity and acting in solidarity are two very different things. One is performative, the other moves the needle. Listen to women like Timnit Gerbru, Ifeoma Ozoma, Sophie Zhang, Janneke Parrish who are leading us.[78]*

---

[68] Twitter, **DELETED**, see screenshots & PDFs instead.

[69] Twitter, https://twitter.com/cherthedev/status/1446937261132554243 ;
https://web.archive.org/web/20220129234354/https://twitter.com/cherthedev/status/1446937261132554243

[70] Twitter, https://twitter.com/cherthedev/status/1446951800142139394 ;
https://web.archive.org/web/20220129234412/https://twitter.com/cherthedev/status/1446951800142139394

[71] Twitter, https://twitter.com/_shantini_/status/1447926059903557632,
https://web.archive.org/web/20220131035341/https://twitter.com/_shantini_/status/1447926059903557632

[72] Twitter, https://twitter.com/cherthedev/status/1447927265166249997,
https://web.archive.org/web/20220131033740/https://twitter.com/cherthedev/status/1447927265166249997

[73] Twitter, https://twitter.com/cherthedev/status/1448056466254929926 ,
https://web.archive.org/web/20220131033517/https://twitter.com/cherthedev/status/1448056466254929926

[74] Twitter, https://twitter.com/cherthedev/status/1448516756453003268,
https://web.archive.org/web/20220131083355/https://twitter.com/cherthedev/status/1448516756453003268

[75] Twitter, https://twitter.com/cherthedev/status/1449373213549420546,
https://web.archive.org/web/20220129205412/https://twitter.com/cherthedev/status/1449373213549420546

[76] Twitter, https://twitter.com/cherthedev/status/1449425934679896064 ,
https://web.archive.org/web/20220130012228/https://twitter.com/cherthedev/status/1449425934679896064

[77] Twitter, https://twitter.com/cherthedev/status/1449435654408994816 ,
https://web.archive.org/web/20220130012027/https://twitter.com/cherthedev/status/1449435654408994816

[78] Twitter, https://twitter.com/cherthedev/status/1449481965862748163,
https://web.archive.org/web/20220129191704/https://twitter.com/cherthedev/status/1449481965862748163

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 202

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- On Dec 20 2021, Scarlett publicly posted that Apple "threatened to sue [her]" [79] & on Dec 21 said she had "nothing for them to take" & said she was living in "destitute" [80]
- On Dec 22 2021, Scarlett publicly posted that Apple had tried to "coerce [her]" into signing a document that "solicited a list of names of those who gave [her] material information as part of an unfair labor charge" and to "silence [her]." She did not say if she provided the names or if there were was other performance required of her for the agreement, however she did confirm to no longer speaking about Apple as requested .
- On Dec 29 2021, Scarlett texted a friend of Gjovik's and told them: *"I am one of Apple's witnesses against [Gjovik]."*
- On Jan 8 2021, Scarlett again posted Apple was "threatening to sue [her]" and shared she took Percocet to cope but then overdosed on Fentanyl & accumulated additional debt [81]
- On Jan 30 2022, Scarlett publicly posted that she received an Apple Global Security "Challenge Coin" in 2021. [82] Scarlett displayed the coin with a coin she said she received from US DHS for providing information as part of an investigation[83] & a coin she said she received from Orange County "for serving [her] community."[84] It appears she received the Apple coin in June 2021.[85][86] On June 24 2021, Scarlett stated she received the coin for "for really important stuff I did that means a lot to me."[87]



---

[79] https://twitter.com/cherthedev/status/1476684475677306888,
https://web.archive.org/web/20220130012743/https://twitter.com/cherthedev/status/1476684475677306888
[80] https://twitter.com/cherthedev/status/1473421774607900672,
https://web.archive.org/web/20220130013438/https://twitter.com/cherthedev/status/1473421774607900672
[81] https://www.gofundme.com/f/legal-medical-expenses-for-apple-whistleblower ,
https://web.archive.org/web/20220129193051/https://www.gofundme.com/f/legal-medical-expenses-for-apple-whistleblower
[82] Twitter, https://twitter.com/cherthedev/status/1488274880319537153,
https://web.archive.org/web/20220201010536/https://twitter.com/cherthedev/status/1488274880319537153
[83] Twitter, https://twitter.com/cherthedev/status/1349507023646429189,
https://web.archive.org/web/20220210091749/https://twitter.com/cherthedev/status/1349507023646429189
[84] Twitter, https://twitter.com/cherthedev/status/731197781105217536,
https://web.archive.org/web/20220210091726/https://twitter.com/cherthedev/status/731197781105217536
[85] Twitter, https://twitter.com/cherthedev/status/1479599175474028550,
https://web.archive.org/web/20220201184303/https://twitter.com/cherthedev/status/1479599175474028550
[86] Twitter, https://twitter.com/cherthedev/status/1407811921085190149,
https://web.archive.org/web/20220210092125/https://twitter.com/cherthedev/status/1407811921085190149
[87] Twitter, https://twitter.com/cherthedev/status/1408013117347577856,
https://web.archive.org/web/20220210092411/https://twitter.com/cherthedev/status/1408013117347577856

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

*Photo of "Apple Global Security" Challenge Coin posted*
*by Cher Scarlett on Jan 31 2022*

- On Feb 5th 2022, Scarlett wrote Gjovik saying she notified Apple Inc of actions taken by Gjovik which she felt were harmful to Apple Inc
  - *"I did not report any harassment to Twitter from you except yours to me. I did not say who I alerted, I just said "them". Implying that people are trying to have you assassinated or cause you to kill yourself, me included, is extremely harmful, and I alerted APPLE about the chain of tweets involved in doing so. I was criticizing both Apple and Twitter for applying the rules to the tweets about the men and current employees."* -Cher Scarlett

## Shantini Vyas
- Shantini was an engineer at Apple until some point in September when she joined Twitter engineering [88]
- Shantini did not explain the reasons she left Apple but she has said she was interviewing for a different team at Apple in January 2020,[89] she posted on Aug 13 2021 that she was leaving Apple & called it "bittersweet," [90] and she said she had been "battling" for accommodations. With Apple for "two years" and it "came to a point where [her] future with the company became uncertain.[91]

---

[88] Twitter, https://twitter.com/_shantini_/status/1426214408150208515,
https://web.archive.org/web/20220129110912/https://twitter.com/_shantini_/status/1426214408150208515
[89] Twitter, https://twitter.com/_shantini_/status/1468410243138871304,
https://web.archive.org/web/20220210084848/https://twitter.com/_shantini_/status/1468410243138871304
[90] Twitter, https://twitter.com/_shantini_/status/1426214409651867653,
https://web.archive.org/web/20220210085205/https://twitter.com/_shantini_/status/1426214409651867653
[91] Twitter, https://twitter.com/_shantini_/status/1426214411589537792,
https://web.archive.org/web/20220210085316/https://twitter.com/_shantini_/status/1426214411589537792

**ASHLEY GJOVIK V APPLE INC**
**INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES**

## Conspiracy Network

**Sept 2 2021 – Public Twitter.com Post**
- **Shantini Vyas:** Okay y'all. I am muting and going back to my dogs. Peace. [92]
  - 🔴 **Ricky Mondello (Employer):** : Hi, you're great.
    - *Liked by* **Shantini Vyas**
    - **Shantini Vyas**: Aw no you are! 😊
      - *Liked by* 🔴 *Ricky Mondello*

**Sept 6 2021 10:15pm – Public Twitter Post**
- *I "follow" Ricky Mondello (Employer):  on Twitter*
- 🔴 **Ricky Mondello (Employer):** Keep your friends close. That's it.[93]

**Sept 9 2021 10:08pm – Public Twitter.com Post**
- **Cher Scarlett** (@cherthedev)**:** Important! The NLRB investigates ALL charges brought to its office. It isn't indicative of prosecution of cases or merit in charges. I still strongly believe in the case myself and Apple employees have brought regarding unlawful statements and application of rules around pay. [94]
  - *Liked by* **Shantini Vyas**

**Sept 10 2021 9:27am – Public Twitter.com Post**
- **Shantini Vyas:** It's come to my attention that there are people? Out here? Defending me? ❤️❤️❤️ [95]
  - *Liked by* **Cher Scarlett**
  - **Shantini Vyas**: A tweet of mine ended up in a news story and some people on the internet did not like it. [96]
    - *Liked by* **Cher Scarlett**
  - **Kev Kitchens**: We got your back![97] (Liked by Vyas)
- **Liked by**:
  - **Managers (employer)**: **Bryan Bartow** (@bryanbartow)

---

[92] Twitter, https://twitter.com/_shantini_/status/1433456310582927361,
https://web.archive.org/web/20220129211957/https://twitter.com/_shantini_/status/1433456310582927361
[93] Twitter, https://twitter.com/rmondello/status/1435109440278044674,
https://web.archive.org/web/20220129205814/https://twitter.com/rmondello/status/1435109440278044674
[94] Twitter, https://twitter.com/cherthedev/status/1436194928351014942;
https://web.archive.org/web/20220128045815/https://twitter.com/cherthedev/status/1436194928351014942
[95] Twitter, https://twitter.com/_shantini_/status/1436361127043162114,
https://web.archive.org/web/20220129211339/https://twitter.com/_shantini_/status/1436361127043162114
[96] Twitter, https://twitter.com/_shantini_/status/1436365689154162689,
https://web.archive.org/web/20220129210059/https://twitter.com/_shantini_/status/1436365689154162689
[97] Twitter, https://twitter.com/kitchens_sync/status/1436388407463137285,
https://web.archive.org/web/20220129211411/https://twitter.com/kitchens_sync/status/1436388407463137285

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 202

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

   o  **Engineers**: **Ken Ryall** (@kenryall), **Cher Scarlett** (@cherthedev), **J.S.** (@64bitjoe), **Ross Freeman** (@rfree18), **Steven Peterson** (@squeakytoy), **Leandro Ivan** (@leandroivan), **Kev Kitchens** (@kitchens_sync), **Sarah Kim** (@___skim), **Andi Rohn** (@andi_rohn)

## Sept 14 2021 – Public Twitter.com Post
- **Cher Scarlett** (@cherthedev): Guess I found the author of the most foul anon DM I've ever received on Reddit. Meanwhile, all my past managers want to hire me back. Funny how that works, isn't it?  [*Screenshot*: "**crissnovak**: Better know it solid or get Gjoviked!"] [98]
- **Cher Scarlett** (@cherthedev): Also, who SAYS that [99]
  o  *Liked by **Shantini Vyas** (@_shantini_)*
- [Redacted]: What does "get gjoviked" mean? [100]
  o  **Cher Scarlett** (@cherthedev): I think he means I'm going to get fired. [101]
    ▪  *Liked by **BabyHummingbird** (@gbluvsf)*
  o  [Apple Employee]: I don't know. I am reminded of the radar item to make her life a living hell. There's a lot of evil they can do before firing and I hope neighed comes to pass with you. [102]
    ▪  **Cher Scarlett**: That was from quite some time ago, unrelated to any of this [103]
    ▪  **Cher Scarlett**: Also, my team is super supportive of me, and would never engage in anything of the sort [104]
  o  [Redacted]: I just got retweeted by Ashley Gjøvik and now I get it. Jeez, what a p.o.s. to dm you like that. And now some unstable stalker has slid into the replies to my question like i care what some internet random thinks with their garbo account over a person I follow and admire. [105]

## Sept 16 2021 – Public Twitter.com Post
- **Cher Scarlett (@cherthedev)**: GoFundMe is a great crowdfunding resource for people in need. People who are extremely privileged financially should be using other mechanisms to obtain

---

[98] Twitter, https://twitter.com/cherthedev/status/1437858991904722944,
https://web.archive.org/web/20220129204231/https://twitter.com/cherthedev/status/1437858991904722944?s=20&t=VCeoU
4rUoZXwa74t8O5VbA
[99] Twitter, https://twitter.com/cherthedev/status/1437859383250087938 ,
https://web.archive.org/web/20220207023114/https://twitter.com/cherthedev/status/1437859383250087938
[100] Twitter, https://twitter.com/LeksiW/status/1437859860134211592 ;
https://web.archive.org/web/20220131022755/https://twitter.com/LeksiW/status/1437859860134211592
[101] Twitter, https://twitter.com/cherthedev/status/1437860176166461440,
https://web.archive.org/web/20220129204353/https://twitter.com/cherthedev/status/1437860176166461440
[102] Twitter, https://twitter.com/arjankoole/status/1437881691901763587;
https://web.archive.org/web/20220131004835/https://twitter.com/arjankoole/status/1437881691901763587
[103] Twitter, https://twitter.com/cherthedev/status/1437882008361787394,
https://web.archive.org/web/20220131022450/https://twitter.com/cherthedev/status/1437882008361787394
[104] Twitter, https://twitter.com/cherthedev/status/1437882087550246913,
https://web.archive.org/web/20220131022532/https://twitter.com/cherthedev/status/1437882087550246913
[105] Twitter, https://twitter.com/LeksiW/status/1437912003260080132;
https://web.archive.org/web/20220131004834/https://twitter.com/LeksiW/status/1437912003260080132

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

residual income from supporters. Buy Me a Coffee is a great platform. Using GFM as residual income is predatory. [106]
- o **Retweeted:** **Shantini Vyas**

**Oct 12 2021– Public Post on Twitter**
- **Shantini Vyas:** I tweeted some stuff about that one lady who got fired from Apple. But I deleted as I decided I'm not going to ruin my day with anger at someone inconsequential ✌ [107]
  - o *Liked by:* *Cher Scarlett, Kev Kitchens, Zach Gardner, Rick Gigger, Sarah Kim, Ross Freeman*
- **Cher Scarlett** (@cherthedev): Proud of you. There's really no point in it. Good News outlets don't take her seriously because her story shifts like a chameleon, and eventually, it will all work itself out. [108]
  - o *Liked by:*, 🔴 *Ricky Mondello, Shantini Vyas, Brian Gannin, Sarah Kim, Zach Gardner,*

**Nov 2 2021 – Public Twitter.com Posts**
- **Shantini Vyas:** Idk how, but Twitter has way more internal intrigue than Apple did
- **Shantini Vyas:** Maybe I was just blissfully unaware or maybe the at Apple was just not that interesting
- **Shantini Vyas:** I feel like I knew some people at Apple that trafficked in the drama and politics. It was exhaustin
- 🔴 **Eric Vitiello (Employer):** : Oooooh?
- **Shantini Vyas:** NOT U
- **Shantini Vyas:** The amount of times I heard about the two words some guy said to Steve one time
- 🔴 **Eric Vitiello (Employer)**: I do not know of this story. Please share the drama. [109]

**Nov 6 2020 – Public Twitter.com Posts**
- 🔴 **Ricky Mondello (Employer)**: Is Lower Decks worth watching?
- **Aaron Brager** (Apple Manager from 2005-2012, Retail in Annapolis & Towson MD, Chicago, IL): Omg Ricky its so good
- 🔴 **Faye Garfinkle (Employer)**: Oh hello, small world! Hi Aaron!
- Aaaron Brager: Hi Faye!
- 🔴 **Ricky Mondello (Employer)**: "Hi Aaron and Faye [Garfinkle]! (I too love friends meeting friends!)[110]

[106] Twitter, https://twitter.com/cherthedev/status/1438597588685492239,
https://web.archive.org/web/20220203040405/https://twitter.com/cherthedev/status/1438597588685492239
[107] Twitter, https://twitter.com/_shantini_/status/1447926059903557632,
https://web.archive.org/web/20220131035341/https://twitter.com/_shantini_/status/1447926059903557632
[108] Twitter, https://twitter.com/cherthedev/status/1447927265166249997,
https://web.archive.org/web/20220131033740/https://twitter.com/cherthedev/status/1447927265166249997
[109] Twitter, https://twitter.com/pixel/status/1455747599139438594,
https://web.archive.org/web/20220131033115/https://twitter.com/pixel/status/1455747599139438594
[110] Twitter, https://twitter.com/rmondello/status/1324785593730048006 ,
https://web.archive.org/web/20220131033056/https://twitter.com/rmondello/status/1324785593730048006

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- **Aaron Brager:** Have you seen Lower Decks, we should do a Group FaceTime when everyone is caught up on Season 1

## Dec 2 2021 – Public Twitter.com Post
- **Shantini Vyas**: I'm really struggling with all the negativity recently so I'm trying to share some kindness. If you like this Tweet and I know you, I'll reply with a compliment. [111]
- **Shantini Vyas**: **Cher Scarlett,** you're so very smart and insightful. I love your perspectives. Also, your ability to know when someone needs help. [112]
- **Shantini Vyas**: **Kev Kitchens** you always bring a smile to my face with your humor and compassion![113]
- **Shantini Vyas**: **Bryan Bartow** @bryanbartow where do I begin. There have been so many times I'm grumpy and I get a response from you that makes me laugh so hard. I'm still sad we never got to work together.
  - o **Brian Bartow:** I was just about to ask you instead of a compliment JUST COME BACK PLZ, but you beat me to it.[114]
- **Shantini Vyas**: **Sarah Kim** @____skim Sarah you're so open and honest and I feel I relate to so much of what you share. Also you're funny as hell.
  - o **Sarah Kim:** o my god this was the sweetest thing thank u ;;;;;;; i also really appreciate your openness and honesty and your willingness to speak up on sensitive matters [115]
- **Shantini Vyas: Adrian Eves**: @swifteveswow where do I begin. You're just so accepting. I don't know anyone with a bigger heart [116]
- **Shantini Vyas: Ben Gannin**: @bganninyou're so passionate about what you believe in![117]
- **Jeff—**(@Darchmare): I know what you mean about the negativity lately with... <gestures broadly>. The inherent toxicity can really bring a person down. Anyhow, I hope your friends offer up some positivity for you soon.[118]
  - o *Liked by* *Shantini Vyas*

## Dec 30 2021 – Public Posts on Twitter.com
- **Cher Scarlett** (@cherthedev): I've learned this year to ignore people defaming me and harassing me. I'm not perfect at it, and having people you can vent to who have all of the facts and context

---

[111] Twitter, https://twitter.com/_shantini_/status/1466426081792040961,
https://web.archive.org/web/20220129191425/https://twitter.com/_shantini_/status/1466426081792040961
[112] Twitter, https://twitter.com/_shantini_/status/1466543613538553857,
https://web.archive.org/web/20220129201425/https://twitter.com/_shantini_/status/1466543613538553857
[113] Twitter, https://twitter.com/_shantini_/status/1466553165126733827 ,
https://web.archive.org/web/20220129201438/https://twitter.com/_shantini_/status/1466553165126733827
[114] Twitter, https://twitter.com/bryanbartow/status/1466465800357875716 ,
https://web.archive.org/web/20220129201516/https://twitter.com/bryanbartow/status/1466465800357875716
[115] Twitter, https://twitter.com/_shantini_/status/1466452230404337669,
https://web.archive.org/web/20220129201453/https://twitter.com/_shantini_/status/1466452230404337669
[116] Twitter, https://twitter.com/_shantini_/status/1466542418828816389,
https://web.archive.org/web/20220129201459/https://twitter.com/_shantini_/status/1466542418828816389
[117] Twitter, https://twitter.com/_shantini_/status/1466543718132256769,
https://web.archive.org/web/20220129201505/https://twitter.com/_shantini_/status/1466543718132256769
[118] Twitter, https://twitter.com/Darchmare/status/1466427916213006337,
https://web.archive.org/web/20220129201513/https://twitter.com/Darchmare/status/1466427916213006337

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

is crucial. It took me a while not to feel like ignoring it made me an emotional abuse punching bag. I'm not. [119]
- o *Liked by: Shantini Vyas (@_shantini_), Steven McGrath (@McGrathPDX), Andi Rohn (@andi_rohn)*
- **Cher Scarlett** (@cherthedev): There is no way to correct all of the misinformation that circulates about you, and everyone has a different version of you in their head. No amount of oversharing and explaining will make that version of you reflective perfectly of who you are. Don't waste your time. [120]
  - o *Liked by: Shantini Vyas (@_shantini_), Molly White (@molly0xFFF),*

**Jan 4 2022 – Public Twitter.com Post**
- 🔴 **Ricky Mondello (Employer):** That's right it goes in the square hole. [121]
  - o *[Video of bird placing objects in different shaped holes.]*
- **Shantini Vyas:** I understood that reference. [122]

**Jan 8 2022 – Public Twitter Post**
- **Shantini Vyas:** that ashley person is stoking her followers into making fun of someone's overdose. seems totally legit and like she's a real activist [123]
  - o Liked by: **Managers:** 🔴 **Eric Vitiello; Employees: Steven McGrath, Cher Scarlett, Harrison, Ross Freeman, Juan Laube**
  - o **Ankit Aggarwal:** "best person"
    - ▪ *Liked by Shantini Vyas*
  - o **Brian Gannin:** Gotta stay on brand.
    - ▪ *Liked by Shantini Vyas & Cher Scarlett*

**Jan 12 2022 -- Public Twitter.com Post**
- **Adrian Eves** (@swifteves): In case you didn't know, Shantini is good people
  - o *Liked by* 🔴 *Ricky Mondello, Cher Scarlett, Shantini Vyas, Kev Kitchens*
- **Cher Scarlett** (@cherthedev)**:** We are all Shantini somewhere
  - o *Liked by Shantini Vyas & Adrian Eves*
- **Shantini Vyas:** Awww but you're the greatest people! [124]
  - o *Liked by* 🔴 *Ricky Mondello, Cher Scarlett, & Adrian Eves*

---

[119] Twitter, https://twitter.com/cherthedev/status/1476351662746857474,
https://web.archive.org/web/20220129221010/https://twitter.com/cherthedev/status/1476351662746857474
[120] Twitter, https://twitter.com/cherthedev/status/1476351953739268098,
https://web.archive.org/web/20220129232650/https://twitter.com/cherthedev/status/1476351953739268098
[121] Twitter, https://twitter.com/rmondello/status/1479128619675013120 ,
https://web.archive.org/web/20220129181249/https://twitter.com/rmondello/status/147912861967501312
[122] Twitter, https://twitter.com/_shantini_/status/1479128797584760835 ,
https://web.archive.org/web/20220202022641/https://twitter.com/_shantini_/status/1479128797584760835
[123] Twitter, https://twitter.com/_shantini_/status/1479974987540881410;
https://web.archive.org/web/20220129030415/https://twitter.com/_shantini_/status/1479974987540881410
[124] Twitter, https://twitter.com/_shantini_/status/1481392008325439489

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES

- **Cher Scarlett** (@cherthedev)**:** I think we need 1 of these a day for like a week [125]
  - *Liked by Shantini Vyas & Adrian Eves*
- **Adrian Eves** (@swifteves): AGREED
  - *Liked by Shantini Vyas & Cher Scarlett*
- **Adrian Eves** (@swifteves): Cher you're good people too, in case you were wondering. [126]

## Jan 14 2021 – Public Twitter.com Posts
- **Shantini Vyas:** So I FaceTimed with **@kitchens_sync** and he's even cooler than you think! And no that did not rhyme on purpose[127]
- **Kev Kitchens:** Coincidentally, I'd say exactly the same about **Shantini! 11/10**, would recommend.[128]

## Jan 15 2022 – Public Twitter Post
- **FirstnameBunchofnumbers** (@FirstNa47437596)**::** Retweet: 🔴 **Ricky Mondello (employer):** Corporations don't need anyone's defense. They have money, lawyers, and a brand to protect them. But _the truth_ is critically important. We need to recognize when someone is manipulating the empathy and good will of others to fuel a personal vendetta and warpath. [129]
- **FirstnameBunchofnumbers** (@FirstNa47437596): **Retweet**: **George** (gtinari): as a white person myself i have to say it is always amusing to me to see how other white people manage to constantly make the struggle about themselves. they always need the damn podium don't they? [130]
  - **Retweet: Shantini Vyas**: (@_shantini_): Okay at the risk of *gestures wildly at Twitter* Apple is a big company. It's got some problems. But it's a great place to work for a lot of people. A certain employee has made it their mission to bring down Apple through whatever means necessary. Including straight LIES….. [131]
- **FirstnameBunchofnumbers** (@FirstNa47437596): **Retweet**: **Verona Rupes** (@MirandaRosalise): to be honest, the entire subject, the whole history, every time i dove into this person's history and their claims going back years, the more I came to doubt myself. I think she has some serious issues, and that something bad definitely was done to her, but the story is so muddy
  - **Retweet: Shantini Vyas**: (@_shantini_): Okay at the risk of *gestures wildly at Twitter* Apple is a big company. It's got some problems. But it's a great place to work for a lot of

---

[125] Twitter, https://twitter.com/cherthedev/status/1481392881839472643,
https://web.archive.org/web/20220131035050/https://twitter.com/cherthedev/status/1481392881839472643
[126] Twitter, https://twitter.com/swifteves/status/1481393675745648644,
https://web.archive.org/web/20220131035201/https://twitter.com/swifteves/status/1481393675745648644
[127] Twitter, https://twitter.com/_shantini_/status/1482097585817014272,
https://web.archive.org/web/20220129143612/https://twitter.com/_shantini_/status/1482097585817014272
[128] Twitter, https://twitter.com/kitchens_sync/status/1482098584669474817,
https://web.archive.org/web/20220129143617/https://twitter.com/kitchens_sync/status/1482098584669474817
[129] Twitter, https://twitter.com/rmondello/status/1433287029089988610,
https://web.archive.org/web/20220129144525/https://twitter.com/rmondello/status/1433287029089988610
[130] Twitter, https://twitter.com/gtinari/status/1433452431980077057,
https://web.archive.org/web/20220129144543/https://twitter.com/gtinari/status/1433452431980077057
[131] Twitter, https://twitter.com/_shantini_/status/1433270352919072771,
https://web.archive.org/web/20220129144750/https://twitter.com/_shantini_/status/1433270352919072771?s=20

**ASHLEY GJOVIK V APPLE INC**

**INTIMIDATION, THREATS, & OBSTRUCTION | FORBIDDEN ANIMUS PER NAMED PARTIES**

people. A certain employee has made it their mission to bring down Apple through whatever means necessary. Including straight LIES….. [132]

- **FirstnameBunchofnumbers** (@FirstNa47437596): **Retweet**: **Shantini Vyas**: (@_shantini_): I have left race out of this, but there is a recurring theme here of white tears being used to co-opt the struggles of minorities. This is just like twisting the dagger: [*Screenshot of Twitter replies between Ashley Gjovik & Mel Nayer*][133]

- **FirstnameBunchofnumbers** (@FirstNa47437596): **Retweet**: **Shantini Vyas**: (@_shantini_): Okay at the risk of *gestures wildly at Twitter* Apple is a big company. It's got some problems. But it's a great place to work for a lot of people. A certain employee has made it their mission to bring down Apple through whatever means necessary. Including straight LIES….. [134]


**Jan 30 2021 – Public Twitter.com Post**

- o **Shantini Vyas** (@_shantini_): It's sometimes tough but important to remember that people will view your shitposting differently if you're not a white man. People finding you entertaining will not always translate into them wanting to be your friend/colleague. [135]
  - o *Liked by **Andi Rohi, Zach Gardner** (@locriani), **Sarah Kim** ((@___skim), **Cher Scarlett** (@cherthedev)*
  - o 🔴 **Bryan Bartow** (@braynbartow) **(employer):** BUT SOME WANT TO BE YOUR FRIEND AND COLLEAGUE EVEN MORE PLZ COME BACK I DARE YOU.[136]
    - ▪ *Liked by **David Spector** (@dhmspector), **Shantini Vyas** (@_shantini)*
  - o **Ankit Aggarwal** (@aciidb0mb3r) are you crying about shitposting [137]

[132] Twitter, https://twitter.com/_shantini_/status/1433270352919072771,
https://web.archive.org/web/20220129144750/https://twitter.com/_shantini_/status/1433270352919072771?s=20
[133] Twitter, https://twitter.com/_shantini_/status/1433272794498969600,
https://web.archive.org/web/20220129144821/https://twitter.com/_shantini_/status/1433272794498969600
[134] Twitter, https://twitter.com/_shantini_/status/1433270352919072771,
https://web.archive.org/web/20220129144750/https://twitter.com/_shantini_/status/1433270352919072771?s=20
[135] Twitter, https://twitter.com/_shantini_/status/1487877110379204612,
https://web.archive.org/web/20220130212016/https://twitter.com/_shantini_/status/1487877110379204612
[136] Twitter, https://twitter.com/bryanbartow/status/1487898600474615818,
https://web.archive.org/web/20220130212252/https://twitter.com/bryanbartow/status/1487898600474615818
[137] Twitter, https://web.archive.org/web/20220201005747/https://twitter.com/aciidb0mb3r/status/1487960053025939457,
https://twitter.com/aciidb0mb3r/status/1487960053025939457

**Ashley M. Gjovik**
Juris Doctor Candidate & Public International Law Certificate Candidate
Santa Clara University, Class of 2022

<u>For Submission To:</u>
- **U.S. NLRB:** Region 32 & Office of General Counsel
- **U.S. Department of Labor:** Whistleblower Protection Program
- **U.S. Attorney's Office:** Northern District of California
- **California DOJ:** Office of the Attorney General
- **California Department of Labor:** DIR Labor Commissioners

MS. ASHLEY GJOVIK

             Complainant,

   v.

APPLE INC., *et al.,*

             Respondent.

**Case No.:**
U,S. Dept of Labor: 9-3290-22-051
U.S. NLRB: 32-CA- 282142, 283161,
284428 & 284441, & 288816
U.S. EEOC 556-2021-00608
U.S. SEC: 16304-612-987-465 & 16353-
506-600-213
CA Dept of Labor: RCI-CM-842830

L<small>EGAL</small> M<small>EMO</small>
**Date Action filed**: February 7, 2022

**Charges**:
National Labor Relations Act §8(a)(1)
National Labor Relations Act §8(a)(4)
CERCLA, 42 U.S.C. §9610
SOX 18 U.S.C.A. §1514A
OSHA §11(c) 29 U.S.C. §660
18 U.S.C. §1512(a),(b),(c),(d)
18 U.S.C. §1505
18 U.S.C. 1513
18 U.S.C. §371
18 U.S.C. §876
Dodd-Frank 15 U.S.C. §78u-6(h)(1)(A)(iii)
Racketeer Influenced & Corrupt
Organizations Act
Civil Rights Act Title VII, 42 U.S.C. §2000e
CA Labor Code §232.5, §6310, §1102.5,
§6399, & §132(a)

# INTIMIDATION, RETALIATION, & PROPAGANDA CAMPAIGN

## Evidence Report

### *DRAFT v9*

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## TABLE OF CONTENTS

HARASSMENT CAMPAIGN EVIDENCE REPORT ....................................................................................... 1

CHARGES ........................................................................................................................................................ 5
    Associated Charges & Cases: ................................................................................................................... 5

SUMMARY ...................................................................................................................................................... 5

REVIEW METHODOLOGY ............................................................................................................................ 9

UNLAWFUL THREATS MADE BY APPLE INC ........................................................................................... 10
    Threats of Violence ................................................................................................................................ 10
    Threats of Termination & Retaliation ................................................................................................... 12
    Threats of Blacklisting; Ruining Legal Career ....................................................................................... 14
    Threats Against Friends & Collogues ..................................................................................................... 17

APPLE INC'S RETALIATORY ANIMUS ....................................................................................................... 18
    Forbidden Animus ................................................................................................................................. 18

APPLE INC'S LAWFARE .............................................................................................................................. 20
    Lawfare: Threats of Litigation; Prosecution; Bankruptcy; "Ruin" ........................................................ 20
    Lawfare: Coercion to Withdraw
    Charges & Complaints ............................................................................................................................ 23
    Lawfare: Doubt; Disinformation; False Accusations ............................................................................. 27

ANTI-UNION & ANTI-LABOR THREATS & COERCION ............................................................................. 32

DISCRIMINATION DUE TO SEX &/OR DISABILITY ................................................................................... 33

EVIDENCE OF PROPAGANDA BY TYPE ..................................................................................................... 37
    The Big Lie (GROßE LÜGE) + Ad nauseam & Rationalization .................................................................. 37
    Divide & Rule; Black/White Fallacy; Factions ....................................................................................... 42
    Virtue Words; Appeal to Prejudice; Transfer; Moral Panic; Fear-Mongering ........................................ 44
    Cult of Personality; Demagogue; Appeal to Authority ........................................................................... 47
    Bandwagon & Inevitable victory ............................................................................................................ 48
    Spin; Agenda setting; Bury Bad News .................................................................................................... 49
    False Flag Operation & Reverse False-Flag ............................................................................................ 52
    Ad hominem attacks; Smears; Character Assassination; False Accusations .......................................... 55
    Red Herring; Whataboutism; Strawman; Minimization; Cherry-Picking ............................................... 59
    Demoralization; Gaslighting; Propaganda of Despair ............................................................................ 62

EVIDENCE (CHRONOLOGICAL) .................................................................................................................. 63
    Legend .................................................................................................................................................... 63
    August 2021 ............................................................................................................................................ 64

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

SEPTEMBER 2021 .................................................................................................................................98
OCTOBER 2021 ..................................................................................................................................174
NOVEMBER 2021 ..............................................................................................................................196
DECEMBER 2021 ...............................................................................................................................208
JANUARY 2021 ..................................................................................................................................235
FEBRUARY 2021 ................................................................................................................................271

**APPENDIX I: CAST OF CHARACTERS (PARTIES)**.....................................................................**298**
EMPLOYER (MANAGERS/SUPERVISORS)..............................................................................................298
EMPLOYEES ACTING AT DIRECTION OF APPLE INC .............................................................................300
AGENTS ACTING AT DIRECTION OF APPLE INC....................................................................................306
APPLE INC: AGENTS FOR PROPAGANDA ..............................................................................................307

**APPENDIX II: RETALIATORY MEMES** ........................................................................................**323**

**APPENDIX III: BABY HUMMINGBIRD** ........................................................................................**326**

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021
**Page 4 of 327**

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# CHARGES

### ASSOCIATED CHARGES & CASES:

- **U.S. NLRB** 32-CA-282142, 32-CA-283161, 32-CA-284428, & 32-CA-284441
- **U.S Department of Labor**: *Ashley Gjovik v Apple Inc.,* (Apple Inc/Gjovik/9-3290-22-051: CERCLA, SOX, & OSHA whistleblower retaliation).
- **U.S. EEOC**: *Ashley Gjovik v Apple Inc.,* (556-2021-00608)
- **U.S. DOJ:** *pending*
- **California Department of Labor:** *Ashley Gjovik v. Apple Inc., (*RCI-CM-842830)
- **California Civil Lawsuit:** *pending*

*See: Legal Memo for details on legal analysis*

# SUMMARY

Under information & belief, Apple Inc, (via their managers, employees, & agents), have been orchestrating an extensive propaganda & harassment campaign against Gjovik since August 2021. Under this campaign, Apple Inc has made frequent, damaging false accusations about Gjovik's actions and statements, her motives and character, and her mental health. Apple Inc has also made numerous threats against her related to retaliation, termination, litigation, blacklisting, and violence.

The campaign started while she was still an Apple employee & has been waged by Apple managers under their name & Apple position (*i.e. Ricky Mondello, Faye Garfinkle, Eric Vitiello, DJ Capelis, Bryan Bartow, & others*) as well as current and ex-Apple employees (*Cher Scarlett, Shantini Vyas, Amanda Harrison, Kev Kitchens, Steven McGrath , Brian Ganninger  Ankit Aggarwal & others*), again, under their own names & positions at Apple. There also appears to be a large online presence assumably contracted by Apple Global Security which appears to have access to much of her private &/or personal information, and repeats, ad nauseum, specific talking points assumably selected by Apple Inc for this campaign.

This campaign is believed to be being waged in retaliation for Gjovik's protected activity starting in March 2021, and also in retaliation for her reporting Apple Inc's unlawful conduct to the government and law

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

enforcement in the summer of 2021, and continuing to participate in the government investigations. This campaign is believed to be being waged in an effort to chill organizing & unionization efforts at Apple Inc, intimidate witnesses from testifying to what Apple Inc did to Gjovik, coerce Gjovik to withdraw her complaints, and to generally intimidate current Apple Inc employees from speaking out or reporting unlawful activity.

This campaign began shortly after Gjovik started talking to the press and the government about her safety, labor, and discrimination concerns but quickly amplified once she filed formal complaints against Apple Inc with the NLRB, EEOC, U.S. Department of Labor, California Department of Labor, U.S. SEC, U.S. FBI, and other regulatory & law enforcement agencies. Within days of her reports, the frequency and intensity of the abuse dramatically increased, including threats of termination & other retaliation, threats of violence, threats of litigation, threats of bankruptcy, threats against her friends and supporters, and much coercion to drop her government complaints & to not file a lawsuit.

Assumed agents of Apple Inc referred to Gjovik's protected activities as "worthy of death," and made references to Gjovik dying from "double tap" gunshot wounds, that in Russia Apple whistleblowers would die from a "car accident," suggested Apple employee organizing around discrimination concerns be "relocated to Afghanistan" to see how the "Taliban" would "deal" with Apple's employee organizers, and noted Gjovik was deserving of "death and rape threats." One Twitter account posted the day after Gjovik was fired that the world was "reaming" her and that Gjovik deserved it (violent anal sex).

After Gjovik was fired, Apple Inc mailed her possessions from her office in a box full of broken glass shards and them commented to her on her Twitter about the box before she opened it, alluding to it containing a severed head of one of her loved ones. Agents of Apple Inc wrote Gjovik was "deserving of misery," that they looked forward to seeing Apple "swallow her & spit her out," and that she is lucky Apple has not "crushed her like a bug." Even as of this week, an Apple Global Security employee communicated to Gjovik she did not want Gjovik "to exist in her world."

Apple employees & assumed agents of Apple Inc suggested Apple Inc should / will sue Gjovik for corporate espionage, disinformation, reputational bias, defamation, blackmail, and federal crimes, among other things. Employees & agents suggested appropriate consequences for Gjovik's protected activity included jail, the death penalty, "suing her into oblivion," "ending her," "destroying her," "ruining her," and bankrupting her. Apple managers & agents of Apple Inc referred publicly to the retaliation she faced from Apple Inc, including

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

termination of her employment, as "invited upon herself" like "walking down a dark alley," "finding out" for "fucking around," a "self-fulfilling prophecy," and the "consequence" of "airing Apple's dirty laundry."

Apple Inc agents also threatened to blacklist Gjovik from the technology, engineering, and legal employment fields: including "never working in the tech industry again, never working for a large corporation again, never getting a job as a lawyer, failing the California bar association's Moral Character investigation, and never getting a job anywhere again other than working in fast food." Apple Inc, *(through at least the actions of Cher Scarlett and Shantini Vyas)*, effectively blacklisted Gjovik from access to the press, from access to & support from leading activists, and certain access to social media platforms.

Apple manager Ricky Mondello and ex-Apple employees Cher Scarlett and Shantini Vyas and other Apple agents have referred to the journalists and publications who write about Gjovik's protected activities as "lacking credibility," "anti-business," not deserving of respect, creating "manufactured narratives," "unethical," and causing "irreparable harm." Cher Scarlett, speaking on her "AppleToo" employee organizing platform has stated she "ejected Gjovik from amplification," "stopped amplifying Gjovik," and called journalists who write about Gjovik not "good news outlets." Scarlett's threatened she could "use her platform" to "destroy Gjovik."

Scarlett also recently began to claim Gjovik is "harassing," "defaming," and "extorting" her and went so far as to report Gjovik to the U.S. FBI, though later said it was a mistake and blamed her actions on a narcotics relapse. Gjovik has requested Scarlett stop contacting her numerous times, including requesting Scarlett stop harassing her & her friends, and stop making defamatory statements about her. In December 2021, Gjovik resorted to threatening she'd request a restraining order if Scarlett did not cease & desist. Scarlett did not stop. As of the last week, Scarlett sent Gjovik a 3,000 word email making wild accusations, confirming she reported Gjovik to the FBI, and demanding Gjovik remove certain evidence and accusations about Scarlett & her associates from Gjovik's federal administrative and criminal filings. When Gjovik refused to rescind her allegations of Scarlett's unlawful activity and refused to omit incriminating evidence, Scarlett then announced she is pursuing frivolous, retaliatory litigation against Gjovik.

Apple managers, employees, and agents have referred to Gjovik's complaints to the federal and state government about Apple Inc as "unsubstantiated," "meritless," "baseless," "dead in the water," and that there's "no case." Apple's agents referred to Gjovik as an "ambulance chaser" and her cases as "shakedown lawsuits." Apple manager Ricky Mondello and ex-Apple employees Cher Scarlett and Shantini Vyas have publicly called Gjovik a "liar," "predator," "racist," "inconsequential," "not a real whistleblower," "not a real activist." These

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

parties have described Gjovik's protected activities as a "vendetta," "warpath," "perjury," "fabricated nonsense," "misleading rhetoric," & "misinformation." Among other things, Apple Inc & their agents have publicly called me a "liar, toxic, attention-seeking, obnoxious, vindictive, entitled, cancer, lacking credibility, dishonest, malicious, a sociopath, a provocateur, unhinged, insane, overweight, a narcissist, 'universally hated', a psychopath, paranoid, Bipolar, psychotic, schizophrenic, a grifter, a Karen, a Super Karen, Karenx100, a 'typical feminist,' and a 'classic cow'.

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# REVIEW METHODOLOGY

Through this unfortunate experience with Apple, I have attempted to document events and communications that appeared odd, harmful, or which might be otherwise useful to reference later on. The primary document collection was of screenshots and PDFs. I started writing this report based on those records, and then gathered additional materials based on them, and for all evidence, attempted to cite a live, public version of the communication that the reader can access themselves via the footnotes. Where possible, I attempted to preserve digital evidence via 1) flat-file screenshot, 2) PDF, & 3) Internet Archive Wayback Archive file.

In effort to identify posts by Apple agents (not just random people online) I filtered & analyzed comments looking for factors such as: overly specific to my situation & my personal information, including my private personal information and/or information only Apple would know, lies and misrepresentations that only benefited Apple &/or were frequently repeated, legalese, and rhetoric which fit common union-busting techniques. I reviewed accounts looking for factors like: few/no followers, few posts and of those they are specific to Apple, posts that are always very positive about Apple & defend Apple, lack of biographical information provided, "liking" and "replying" to other suspicious accounts, age of account, & common language patterns amongst accounts with similar attacks.

The accounts and comments noted in this report are a best guess and should not be seen as exclusive. Additional evidence should also be gathered such as IP & other account data to confirm accounts (such as linked Apple Inc locations, employees, contractors, etc) & named employees/managers should be deposed and asked to identify additional parties who participated. Apple Inc should be asked to confirm which accounts are or are not acting on their behalf, directly or indirectly.

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# UNLAWFUL THREATS MADE BY APPLE INC

## THREATS OF VIOLENCE

- **4 Aug 2021:** If you didn't know that you were gonna get [**death & rape] threats** then you are honestly still a child. There's always consequences to you actions whether good or bad. I dont think you are child so I believe you just want attention. (Twitter)[1]
- **7 Sept 2021: Espionage** has long been treated as a crime **worthy of death** and all Apple would need to do is to make it apply to corporations and not just nations." (Reddit) [2]
- **9 Sept 2021:** A certified interrogator from Apple's **"Workplace Violence" team** emails me and demands I get on the phone with him within the hour, but won't tell me why.
- **9 Sept 2021:** "I said it in the last thread about bad, criminal employees, and I'll say it again. It's time for Apple to take out the trash. Do whatever it takes to identify and catch the leakers and then **ruin their lives**. Fire them, prosecute and go after them. Do whatever it takes. **Hunt them down like wild animals**. Leakers and other activist employees who believe that they can do as they please have no business being at Apple. I want to see them gone and **I want to see them destroyed.** Trashy employees do not belong at Apple. And who is surprised that the leakers go running to the garbage site called the Verge? They already had one campaign that backfired on them when the lunatic woman leaker was fired, now it's time to get rid of any remaining leakers and criminals. Go get 'em Tim! **Espionage** has long been treated as a crime **worthy of death** and all Apple would need to do is to make it apply to corporations and not just nations." (Reddit) [3]
- **10 Sept 2021:**): #ashleygjovik the **world is** both pandering to you and also **reaming you**. This sounds about right. #narcissist #youdeserveit #coward (Twitter) [4]
- **22 Sept 2021: [Tim Cook] gonna f@\*k some peeps up** (picture of racecar driver with a baseball bat) [5]
- **29 Sept 2021: Don't open it!** *(Picture from the movie "7" with Brad Pitt in a field next to a box with a **severed human head** and the words "WHAT'S IN THE BOX")* [6]
- **30 Sept 2021:** #Apple prides itself in it's packaging... but this is what arrived at my doorstep today. My personal effects from my office, shoved haphazardly in a random box, no packing materials, infused with **Superfund fumes, [rocks], shards of glass, & spite.** (Ashley Gjovik) [7]
- **15 Oct 2021: Maybe [Janneke} can go to Afghanistan and form her AppleToo group there , see how Taliban deals with her**. (Apple Insider) [8]

---

[1] Twitter, https://twitter.com/k1ngofgam3s/status/1423453566879076354
[2] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/comment/hdv5qbj/ ;
https://www.reddit.com/r/apple/comments/pt91m5/comment/hdvtqqn/
[3] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/comment/hdv5qbj/ ;
https://www.reddit.com/r/apple/comments/pt91m5/comment/hdvtqqn/
[4] Twitter, https://twitter.com/beezie_wacks/status/1436340545194905608,
[5] MacRumors, https://forums.macrumors.com/threads/apple-ceo-tim-cook-in-leaked-memo-we-are-doing-everything-in-our-power-to-identify-leakers.2312633/,
[6] Twitter, **DELETED**, https://web.archive.org/web/20210929195613/https://twitter.com/SvatosJason/status/1443303485546532867
[7] Twitter, https://twitter.com/ashleygjovik/status/1443702363299188741
[8] Apple Insider, https://forums.appleinsider.com/discussion/224577;

**ASHLEY M. GJØVIK**
Juris Doctor Candidate & Public International Law Certificate Candidate, Santa Clara University
Ex-Apple Sr. Engineering Program Manager from February 2015 to September 2021

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **15 Oct 2021:** Good riddance! Another entitled brat who tried to politicize the workplace, and get a fat payout as a result. **In a country like Russia, they would have a car accident.** (Apple Insider) [9]
- **20 Dec 2021:** Tomorrow's headline: **Apple Whistleblower found dead of heart attack at 22 (never mind the double tap,** nothing to see here). [10]
- **7 Jan 2022:** Actual conversations" show both sides. Here's the other: [screenshot: *Cher Scarlet*: *I said I'll sign something if she writes it up. **I literally don't want her to exist in my world lol***]. (Cher Scarlett) [11]
- **30 Jan 2022:** : "The nail that sticks out, gets **hammered**." (Twitter) [12]
- **3 Feb 2022:** Whistleblowers deserve a better voice than yours or Cheers or any one person. I hope Twitter shuts you down for some perspective. Your Tweets are like a feminist version of **@ProudBoysUS** **@TrumpWarRoom** [13]
- **5 Feb 2022:** I'll always have your back, [Cher Scarlett]. This thread [about Ashley] is very kind and fair, especially with everything you've been going through. [Pinned photo on user profile has two baseball bats that say **"Fuck Around"** & **"Find Out."**][14]
- **5 Feb 2022: Implying that people are trying to have you assassinated or cause you to kill yourself, me included, is extremely harmful, and I alerted APPLE** about the chain of tweets involved in doing so. (Cher Scarlett) [15]

---

[9] Apple Insider, https://forums.appleinsider.com/discussion/224577;

[10] Reddit, https://www.reddit.com/r/technews/comments/rkyslb/comment/hpg6bzu/?utm_source=share&utm_medium=web2x&context=3

[11] Twitter, https://twitter.com/cherthedev/status/1490097625495789569, https://web.archive.org/web/20220205230927/https://twitter.com/cherthedev/status/1490097625495789569

[12] Twitter, https://web.archive.org/web/20220130031154/https://twitter.com/i_mspam/status/1487549097070379008

[13] Twitter, https://twitter.com/one_more_time_2/status/1489749317631967235,

[14] Twitter, https://twitter.com/medus4_cdc/status/1490167045354397699,

[15] Twitter, https://twitter.com/cherthedev/status/1490053004791218177,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## THREATS OF TERMINATION & RETALIATION

- **4 Aug 2021:** Haha and **your never coming back** you clown ass fool (Twitter)[16]
- **4 Aug 2021:** Honestly **apple should probably just let her go**, she seems to be the one creating the hostile workplace environment" (Twitter)[17]
- **4 Aug 2021:** As an Apple **shareholder I hope they terminate her employment completely.** (AppleInsider)[18]
- **4 Aug 2021:** WHERE EXACTLY DO U THINK **BITING THE LITERAL HAND THAT FEEDS U ...** WILL GET U.. HONESTLY THINK ABOUT THAT. (Twitter)[19]
- **4 Aug 2021:** I'm surprised Apple allowed her to work there while badmouthing the company. **I would have gotten rid of that b**** so fast** without extra compensation. Even now she's still getting paid and still talking sh**. (AppleInsider)[20]
- **5 Aug 2021:** This woman is a **psychopath** and frankly is a danger to other Apple Employees! Would any of you feel safe working alongside a person like this? Be honest! Apple needs to **bring the hammer and make an example** of people like this, men or women (Apple Insider) [21]
- **12 Aug 2021:** I've informed Apple they **should fire** [Gjovik] immediately (Christy Dehus) [22]
- **21 Aug 2021:** **I'd fire you** in a heartbeat.(Twitter) [23]
- **23 Aug 2021**: Apple - show these people **the door** (MacRumors)[24]
- **26 Aug 2021** Leadership, if you're reading this, **punish the entitled minority and not the entire company**.[25]
- **23 Aug 2021:** Seems like [Gjovik & Scarlett] just Tweet internal info all day, **fire them both. They bring ZERO value** (Apple Insider) [26]
- **26 Aug 2021** The HR conversation should be: It sounds like you are no longer happy here. I guess it's **time to part ways** and make room for a better fit. We are looking for our next generation of leaders and you clearly are not it. Good luck. (MacRumors) [27]
- **26 Aug 2021:** Those people wouldn't quit. I'd have them **fired** 🔥🔥🔥  (MacRumors) [28]

---

[16] Twitter, https://twitter.com/dake_smith/status/1423254970124718089,
[17] Twitter, https://twitter.com/abm_11110/status/1423224560330084352
[18] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[19] Twitter, https://twitter.com/dake_smith/status/1423254573393797123,
[20] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[21] Apple Insider Forums, https://forums.appleinsider.com/discussion/223222/female-apple-employee-put-on-administrative-leave-following-tweets-about-sexism-in-the-wor/p3 ,
[22] Emails, see screenshots
[23] Twitter, https://twitter.com/ashleygjovik/status/1429174603713191936
[24] MacRumors, https://forums.appleinsider.com/discussion/comment/3330761/#Comment_3330761,
[25] Team Blind, see screenshots
[26] Apple Insider, https://forums.appleinsider.com/discussion/223646, ;
[27] MacRumors, https://forums.macrumors.com/threads/apple-employees-increasingly-content-to-criticize-the-company-amid-switch-remote-working-and-use-of-slack.2308761/
[28] MacRumors, https://forums.macrumors.com/threads/apple-employees-increasingly-content-to-criticize-the-company-amid-switch-remote-working-and-use-of-slack.2308761/;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **3 Sept 2021**: **They should fire her long time ago.** One sick apple in the box always spoil others. The atmosphere and energy she was spreading especially as team leader is the worst thing**. They should actually fire now all her team because they are all infected.** Next is the one who hired her. (Twitter)[29]
- **3 Sept 2021**: Why people just don't leave if they don't like their work place? Why make it toxic for everyone else? This company grow too fast so a few bad apples came in and spoiling it for everyone. One toxic person can destroy positivity and peace anywhere. **Get rid of them!** (Twitter)
- **10 Sept 2021:** Apple should have **fired cancer like this way earlier** (Apple Insider) **[30]**
- **11 Sept 2021**: **The person who hired this wack job at Apple should also be fired [31]**
- **15 Oct 2021:** Companies don't hire employees so that the employees can "make change". Screw these people and their causes. They are hired to be employees, not activists. If the latter is more important to them, **then they should either find another job or get fired.** Either solution is fine with me. (Reddit) **[32]**
- **15 Oct 2021:** **Apple needs to fire the HR manager too for hiring these idiots**. (Apple Insider) [33]
- **29 Oct 2021:** I supported my coworker's claims during an HR investigation against our Director**. I was passed over for a promotion.** The dumb fck that defended the Director got the promotion. Go figure (Twitter) [34]
- 

---

[29] Twitter, https://twitter.com/DanielSavills/status/1436195552945913860,
[30] Apple Insider, https://forums.appleinsider.com/discussion/223877;
[31] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[32] Reddit, https://www.reddit.com/r/apple/comments/q8y4ce/apple_fires_one_of_the_appletoo_movements_leaders/;
[33] Apple Insider, https://forums.appleinsider.com/discussion/224577;
[34] Twitter, **DELETED**, https://web.archive.org/web/20211028044923/https://twitter.com/LeglLovzSolr/status/1453584618729263108

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## THREATS OF BLACKLISTING; RUINING LEGAL CAREER

- **4 Aug 2021:** u are delusional. You need medical help bad. Delusional fool. **Hope u never get another job.** No one needs to be around this nut case (Twitter) [35]
- **4 Aug 2021:** **DO U EVER WANT A JOB AGAIN ANYWHERE**. (Twitter)[36]
- **4 Aug 2021::** She seems more than a little unstable if you look at her Twitter history. **Best if Apple shows her the door** IMO **PS - She has about a zero chance of ever working at a leading tech firm ever again** (AppleInsider)[37]
- **12 Aug 2021:** Are you someone who can be trusted, like ever**? If you're gonna be a lawyer, who has attorney-client expectations, what client will trust you** won't use their words against them later? (Twitter) [38]
- **3 Sept 2021:** Exactly, and she will soon be out of the compensation when investigation completes and find "no, your manager complimenting you is not harassment", **she will never get another job, would you hire her?** (AppleInsider)[39]
- **9 Sept 2021:** **Santa Clara University Law must be cringing**. Prospective law students must be crossing that one off their list. Lol (Reddit) [40]
- **9 Sept 2021:** The only thing toxic in all of this is HER. **I wouldn't hire this person. I wouldn't rent to this person. I sure as hell wouldn't date this person.** She needs serious help. (Reddit) [41]
- **9 Sept 2021:** Agreed. It isn't the fact that she is getting fired, it is why -Apple is alleging she deliberately violated the terms of employment, which sounds a lot like "**dishonesty**" on its face. It might not be, but that is **enough to get a long [Moral Character] investigation** going. (Reddit) [42]
- **9 Sept 2021:** I know is this: **I feel sorry for the next company that hires her** (Reddit)[43]
- **9 Sept 2021:** I'd be more **worried about her getting barred**. This **reflects badly on her character** and it's possible **she'll be denied to taking the bar exam**. (Reddit) [44]
- **9 Sept 2021:** **I hope no one hire this manipulative maniac**. (Reddit) [45]
- **10 Sept 2021:** **She's going to find herself unemployable after this fiasco.** You reap what you sow. Also there's Karma, It's a bitch. (Twitter)[46]
- **10 Sept 2021:**. The irony is: she's a **law student graduating next year**...**How terrifying**. (HackerNews.com)[47]

---

[35] Twitter, https://twitter.com/dake_smith/status/1423252691464163331,
[36] Twitter, https://twitter.com/dake_smith/status/1423254573393797123,
[37] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[38] Twitter, https://twitter.com/beezie_wacks/status/1425921919447040003,
[39] Apple Insider, https://forums.appleinsider.com/discussion/223785, ,
[40] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[41] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[42] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[43] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[44] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[45] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[46] Twitter, https://twitter.com/Chloeheather967/status/1436785837610504193;
[47] HackerNews, https://news.ycombinator.com/item?id=28477392;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **10 Sept 2021: You think there are law firms that will want to hire her? She's toxic.** (HackerNews.com)[48]
- **10 Sept 2021**: **Seems like her career is done. Leaking internal stuff which marked "confidential" is the stuff that'll cause concerns. [49]**
- **10 Sept 2021: Good luck to her getting another job in tech**. $400k plus stock RSUs up in smoke - just like that (Apple Insider)
- **10 Sept 2021:** Lol are people just stupid and buying her ⚖️? stop with the stupidity, **this woman is an absolute psychopath and I will bet no company will hire her again** (Apple Insider)
- **11 Sept 2021:** Ashely Gjovik is **pure evil and cancer**. Hope she **lose this case and never work anywhere again.** (Reddit)
- **11 Sept 2021**: Apple is paying for her law school as well as her 386k salary. That is very nice but given her history, **no law firm will hire her** … lol [50]
- **11 Sept 2021: I don't think she will ever get hired ever again,** she has herself to thank [51]
- **11 Sept 2021**: Since **I doubt this psycho will ever be hired again by anyone,** I would not want to spend the the legal fees if I were her. (Apple Insider) [52]
- **12 Sept 2021:** there's no conspiracy **she broke Apple's number one rule.** She talked to the press while still employed. She is never going to work in tech again and since **she is going to lose the lawsuit she should just apply to fast foods right away**. (Twitter) [53]
- **13 Sept 2021: No Fortune 500 company will want to hire her** after her public display. (Twitter) [54]
- **16 Sept 2021**: You'll **never work as an attorney** (Twitter). [55]
- **16 Sept 2021:** I guess you'll have to make your killing in business this way, because i**t's the only killing you'll ever make. You've chosen to go radioactive.** (Twitter)[56]
- **15 Oct 2021: Publish their names so other employers know not to hire them**. These are rotten apples. (Reddit) [57]
- **15 Oct 2021:** What I'm saying is that **industries need to keep a blacklist**, names of people not to hire under any circumstances. (Reddit) [58]
- **20 Dec 2021**: it really feels like [Gjovik's] committing **career suicide** (Reddit) [59]
- **10 Jan 2022: Attn someone at @SantaClaraUniv**: could you review the cyberbullying of Cher Scarlett coming from the account of your law student @ashleygjovik? Do you condone this behavior? Is this in line with the terms of your code of conduct? (Twitter)[60]

---

[48] HackerNews, https://news.ycombinator.com/item?id=28477392;
[49] HackerNews, https://news.ycombinator.com/item?id=28477392;
https://web.archive.org/web/20220128065558/https://news.ycombinator.com/item?id=28477392
[50] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[51] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[52] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[53] Twitter, https://twitter.com/AllonsyAlonso85/status/1437335489611280384
[54] Twitter, https://twitter.com/pri_dayal/status/1437622722662653954,
[55] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/tim_cook_says_employees_who_leak_memos_do_not/,
[56] Twitter, https://twitter.com/i_mspam/status/1438899745557155841,
[57] Reddit, https://www.reddit.com/r/apple/comments/q8y4ce/apple_fires_one_of_the_appletoo_movements_leaders/;
[58] Reddit, https://www.reddit.com/r/apple/comments/q8y4ce/apple_fires_one_of_the_appletoo_movements_leaders/;
[59] Reddit, https://www.reddit.com/r/technews/comments/rkyslb/apple_employee_blows_whistle_on_illegal_spying/;
[60] Twitter, https://twitter.com/FirstNa47437596/status/1480750181142261760,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **10 Jan 2022**: **@santaclarauniv** this is a bad case of cyberbullying by one of your students that reflects poorly on your student body. Do you condone this? (Twitter) [61]
- **29 Jan 2022**: [Gjovik will] **never work as an attorney** (Twitter)[62]
- **20 Nov 2021**: "*Gjovik, who's in law school*" Why a change of career into law? **Does it have to do with no employer wanting to hire a Senior Engineering Program Manager like her ever again?** (Reddit) [63]
- **20 Nov 2021**: **If she keeps at it, soon no law firm will want to hire her ever.** (Reddit) [64]
- **20 Dec 2021**: **it really feels like she's committing career suicide.** (Reddit)[65]
- **3 Feb 2022**: Whistleblowers deserve a better voice than yours or Chers or any one person. **I hope Twitter shuts you down for some perspective.** Your Tweets are like a feminist version of @ProudBoysUS @TrumpWarRoom [66]
- **5 Feb 2022**: **Multiple people reported this person for their behavior to their University** as far as I know, and the agencies currently involved do not know what to do as they've never had this happen in nearly 100 years. **It's disturbing that the authorities have to get involved**. (Cher Scarlett) [67]

---

[61] Twitter, https://twitter.com/FirstNa47437596/status/1481381439983685632,
[62] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/tim_cook_says_employees_who_leak_memos_do_not/,
[63] Reddit, https://www.reddit.com/r/apple/comments/qymkji/bloomberg_apple_ceos_antileak_edict_broke_law/,
[64] Reddit, https://www.reddit.com/r/apple/comments/qymkji/bloomberg_apple_ceos_antileak_edict_broke_law/,
[65] Reddit, https://www.reddit.com/r/iCloud/comments/rl9592/apple_employee_blows_whistle_on_illegal_spying/;
[66] Twitter, https://twitter.com/one_more_time_2/status/1489749311763196235,
[67] Twitter, https://twitter.com/cherthedev/status/1490053004791218177,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

### THREATS AGAINST FRIENDS & COLLOGUES

- **3 Sept 2021:** They **should fire her** long time ago. One sick apple in the box always spoil others. The atmosphere and energy she was spreading especially as team leader is the worst thing. They should **actually fire now all her team** because they are all infected. Next is the one who hired her. (Twitter) [68]

- **29 Oct 2021:** So far, she has tried desperately to **use other victims for her own gain, made racist remarks, lied to the public, to the government, about what happened to her, and about me, and a bunch of other people who tried to help her**. I cannot stand to watch good people such as yourself get wrapped up in her web. (Cher Scarlett)

- **29 Dec 2021:** You do not deserve to get **sucked into this shit** for standing up for someone else. I want to see her get justice, but **perjuring herself** and doing all of this is **harmful to her and everyone else in the ripples** (Cher Scarlett)[69]

- **15 Jan 2022:** She also seems to turn on these people pretty quick so **you better watch yourself** [directed at Apple whistleblower Dawn Underwood] (Twitter) [70]

- **15 Jan 2022:** I think you need to take a look at the amount of hate that she's spewing. Look at all of the **hate she has directed at Cher and others and anyone who says anything contrary** she threatens to sue LOL she's not fighting Apple she's fighting everyone (Twitter) [71]

- **15 Jan 2022:** Sure, if they actually broke a rule. But she thinks anyone who disagrees with her cyberbullying is a "troll" or works for Apple. People who haven't done anything wrong don't need to hide from the law, just from p**sycho Ashley who will stalk them and their** families (Twitter) [72]

---

[68] Twitter, https://twitter.com/DanielSavills/status/1436195552945913860,
[69] Text messages, see screenshots
[70] Twitter, https://twitter.com/FirstNa47437596/status/148202558693212162,
[71] Twitter, https://twitter.com/FirstNa47437596/status/1482202482893733892,
[72] Twitter, https://twitter.com/FirstNa47437596/status/148221422951944192,

# ASHLEY GJOVIK V APPLE INC
### INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## APPLE INC'S RETALIATORY ANIMUS

### FORBIDDEN ANIMUS

- **23 Aug 2021:** Are you still a victim **when you walk down a dark alley** with the expectation of coming out unscathed, or **did you invite that on yourself?** (Apple Insider)[73]
- **3 Sept 2021:** You reap what you sow. Chalk it up to your stupidity and move on. (Twitter) [74]
- **9 Sept 2021:** "Sometimes you fuck around, and then sometimes **you find out**." (Ricky Mondello) [75]
- **9 Sept 2021:** The way she's been attacking her employer on every possible front (including taking digs at the CEO and board of directors, repeatedly), this was **basically a self-fulfilling prophecy.** (Reddit) [76]
- **9 Sept 2021:** Lmao "familiar"?! Girl, you better know it solid or get **Gjøviked**!... **Apple is ruthless** like that (Reddit) [77]
- **9 Sept 2021:** I'm of the personal opinion **she wrote her Apple obit** when she posted to Twitter. As a seasoned employee, she more than others, we well **aware of the consequences of airing 'dirty laundry' on an international social media site** after all she's signed as an employee. It backfired. (Twitter)[78]
- **9 Sept 2021**: She should have went in. Might've felt irreplaceable? Showed her hand when she didn't go in. **If went in, would've been severanced if fired.** (Twitter)[79]
- **9 Sept 2021: She deserves all the misery of being fired for violating policy.** She's a **liar** and she didn't get away with it this time. (Twitter) [80]
- **9 Sept 2021**: She was **fired bc she was an awful employee** (Reddit) [81]
- **9 Sept 2021:** Good riddance. **They should have fired her weeks ago**. (Reddit) [82]
- **9 Sept 2021:** Apple is allowed to keep secrets that aren't violating any laws. What she leaked wasn't violating any laws. She was fired with sufficient justification, but she'll undoubtedly claim it was not justified and complain some more, maybe sue. **She'll lose, because she's entirely to blame for her firing.** (Reddit) [83]
- **10 Sept 2021: Apple fired you because they already know how this ends.** There was no fixing the situation, so **they waited and looked for a policy violation**, found it, and booted you. They already know they're shelling out money on this so why have you in the office? (Twitter)
- **12 Sept 2021:** there's no conspiracy **she broke Apple's number one rule.** She talked to the press while still employed. She is never going to work in tech again and since **she is going to lose the lawsuit she should just apply to fast foods right away**. (Twitter) [84]

---

[73] Apple Insider, https://forums.appleinsider.com/discussion/comment/3331975/
[74] Twitter, https://twitter.com/Chloeheather967/status/1436303814236180481
[75] Twitter, https://twitter.com/rmondello/status/1436184099987681314,
[76] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[77] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[78] Twitter, https://web.archive.org/web/20210910144621/https://twitter.com/DonnaW218654/status/1436332518370791425
[79] Twitter, https://web.archive.org/web/20210910144621/https://twitter.com/DonnaW218654/status/1436332518370791425
[80] Twitter, https://twitter.com/beezie_wacks/status/1436343966920679424 ,
[81] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[82] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[83] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[84] Twitter, https://twitter.com/AllonsyAlonso85/status/1437335489611280384

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **12 Sept 2021:** oh cry me a river. She exposed herself online because **she is a bitter little woman** who broke her NDA and is now trying to cash in on it. **I can't wait until Apple swallows her and spits her out just as fast**. (Twitter) [85]
- **1 Jan 2022**: it's probably unwise to screenshot and publicly share screenshots from an employer who by your own account **would love a reason to fire you**. (David Evans) [86]
- **29 Jan 2022**: "She's a senior manager at Apple and going on a tirade against them over the ground beneath the building. **What did she expect to have happen to her?**" (Twitter) [87]

---

[85] Twitter, https://twitter.com/AllonsyAlonso85/status/1437328481357111296
[86] Twitter, https://twitter.com/DaviddE_94/status/1477350150091780100 ,
[87] Twitter,  https://twitter.com/i_mspam/status/1487889094046740483,

**ASHLEY GJOVIK V APPLE INC**
INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# APPLE INC'S LAWFARE

## LAWFARE: THREATS OF LITIGATION; PROSECUTION; BANKRUPTCY; "RUIN"

- **26 Aug 2021:** Send the cry babies **to jail.** (MacRumors) [88]
- **7 Sept 2021: Espionage** has long been treated as a crime **worthy of death** and all Apple would need to do is to make it apply to corporations and not just nations." (Reddit) [89]
- **9 Sept 2021:** [Gjovik's] lucky Apple didn't decide to **crush her like a bug** for violating the NDA (Reddit) [90]
- **9 Sept 2021:** Not to mention... if she's *gotten anything for the info*, **they may be able to also press charges for corporate espionage**. She fucked up. (Reddit) [91]
- **9 Sept 202:** I **so hope Apple, Northrop Grumman, Irvine Company sue her** and teach her a lesson. I think She thinks she going to get rich, but she's going straight to the poor house. $300K + RSUs + healthcare + tuition reimbursement all up in smoke for this nonsense. Go Ashley go! (Reddit) [92]
- **9 Sept 2021:** … If she wanted to send any of this to her **lawyers** or representatives, I can promise you they would be **screaming lividly at her** demanding she stop breaking Apple's policies and keep detailed records of all of this as all of my above arguments are the exact kind of things a **defense lawyer** would be pointing to, in order to disprove sincerity and **good faith** in her accusations. (Reddit)[93]
- **9 Sept 2021**:. **It would be in your best interest to drop ideas of suing, or attempts at dragging them through any spiteful dirt, as it'll co$t you**. If not, seek counsel. (Twitter)[94]
- **10 Sept 2021: Apple will sue the shit out [Gjovik]** for **disinformation and reputational loss**. (Reddit)[95]
- **10 Sept 2021:** If there was legit something wrong **don't get yourself in trouble for defamation** when your employer is simply treating you like an employee.  (Apple Insider)
- **10 Sept 2021**: See **more reason for 🍎 to sue than her**. (Twitter)
- **10 Sept 2021:** Ashley is about to become a **broke joke.**  (Apple Insider)
- **10 Sept 2021: Apple and Irvine Company should sue her to oblivion**. Considering her character, **I highly**
- **11 Sept 2021**:  People say she is in law school, which Apple  was paying pay, and **do you see how Apple legal team just basically ended Epic Mobile, a billion dollar company? Good luck Ashley** (AppleInsider) [96]

---

[88] MacRumors, https://forums.macrumors.com/threads/apple-employees-increasingly-content-to-criticize-the-company-amid-switch-remote-working-and-use-of-slack.2308761/;
[89] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/comment/hdv5qbj/ ;
https://www.reddit.com/r/apple/comments/pt91m5/comment/hdvtqqn/
[90] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[91] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[92] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[93] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[94] Twitter, https://web.archive.org/web/20210910144621/https://twitter.com/DonnaW218654/status/1436332518370791425
[95] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/comment/hccxlth/?utm_source=share&utm_medium=web2x&context=3
[96] Apple Insider, https://forums.appleinsider.com/discussion/223902;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **11 Sept 2021**: **Apple could sue HER to oblivion** for breaking her employment contract.
- **11 Sept 2021**: **Apple just destroyed a Billion dollar company in Epic for being greedy. now they can turn all their attention to this ungrateful psychopath** [97]
- **11 Sept 2021**: **Apple (w/it's army of lawyers) can sue her** and it would be an easy win because it's a simple breach of contract case. Her counter suit for retaliation / harassment will be very challenging **especially if her coworkers don't have her back**. They may be **enjoying all that Apple $$$.** Lawsuit would be chump change for Apple, but will **certainly bankrupt her.** I've never seen anyone so intent on ruining their own reputation / livelihood (Reddit)
- **12 Sept 2021**:. Besides it's not about her complaint, it's about the fact that **she leaked info** that's why she was fired. **Apple will prove that in court and she'll disappear.** (Twitter) [98]
- **15 Sept 2021:** Dear Ms. Gjovik: On behalf of Apple Inc., we write to request that you remove certain images and video that you have displayed **publicly in violation of your Confidentiality and Intellectual Property Agreement** with Apple dated January 31, 2015 (the "IPA"). (Apple's Lawyers)
- **22 Sept 2021:** Look at Gjøvik, went from $300K+ plus RSUs (poof!) to a GoFundMe. Keep blabbing to Zoe, girls, it's clicks and money in her pocket **while y'all go bankrupt going up against Apple.** (Reddit) [99]
- **20 Oct 2021: Apple can sue her for defamation** (I'm not a lawyer, but this seems obvious) (HackerNews) [100]
- **20 Nov 2021:** The most likely outcome is that Apple connects the account to you, uses **the fact that you've spoken about it to bring it up in court, and then uses your post history against you. Nuke the account and hope for the best.** (Reddit) [101]
- **9 Jan 2022**: Did you just admit to intimidating an Apple defense witness? Do you know that is a crime
- in the state of California? It doesn't matter if the trail is ongoing/pending or not. **I think you may have already committed a federal crime**. Talk with your lawyer. "Applies to tampering with witness in "proceedings before congress, exec departments, and admin agencies, and to civil and criminal judicial proceedings, including grand jury proceedings….. [links]. 18 U.S. Code § 1512 (Twitter) [102]
- **3 Feb 2022: I hope all of this effort depletes your funds and support** so maybe you go take a vacation and ponder doing something else. You are not a hero for whistleblowers, you are just a hero for Ashley Gjovik. (Twitter) [103]
- **5 Feb 2022: When federal agency employees are having operations meetings about someone's behavior because it is unprecedented** -- you'd think they'd recognize they are being abusive and should re-evaluate their actions. (Cher Scarlett) [104]
- **5 Feb 2022:** In my conversation with the federal agency about what occurred, and to avoid disparagement and defamation, I told them matter-of-factly what happened and **they recommended I**

---

[97] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[98] Twitter, https://twitter.com/AllonsyAlonso85/status/1437331437611634689
[99] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/comment/hdv964m/,
[100] HackerNews, https://news.ycombinator.com/item?id=28830236 ,
https://web.archive.org/web/20220129213718/https://news.ycombinator.com/item?id=28830236
[101] Reddit, https://www.reddit.com/r/apple/comments/qymkji/bloomberg_apple_ceos_antileak_edict_broke_law/,
[102] Twitter Direct Messages, see screenshots
[103] Twitter, https://twitter.com/one_more_time_2/status/1489748938051620864,
[104] Twitter, https://twitter.com/cherthedev/status/1490048667805356032,

**ASHLEY GJOVIK V APPLE INC**
**INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT**

**report this person to the FBI for extortion.** Being a witness does not give you a license to abuse. (Cher Scarlett)[105]

- **5 Feb 2022: Multiple people reported this person for their behavior to their University** as far as I know, and the agencies currently involved do not know what to do as they've never had this happen in nearly 100 years. **It's disturbing that the authorities have to get involved**. (Cher Scarlett) [106]

- **5 Feb 2022:** It is, yes, and it's **why the judge found my anti-harassment order may have merit and ordered a hearing.** (Cher Scarlett) [107]

- "I only did this because she was asking people to take her at her word about the lies" No. She told *multiple people* it's because **she thinks I'm testifying against her on Apple's behalf. She was even told by the NLRB I was only cited.** And she tweeted it (physical copy) (Cher Scarlett) [108]

- She decided to go on a tirade that **ended in false CPS reports** & my family being harassed (Cher Scarlett)[109]

---

[105] Twitter, https://twitter.com/cherthedev/status/1490052091733164032,
[106] Twitter, https://twitter.com/cherthedev/status/1490053004791218177,
[107] Twitter, https://twitter.com/cherthedev/status/1490079021844996098,
[108] Twitter, https://twitter.com/cherthedev/status/1490105751020269578,
https://web.archive.org/web/20220205233350/https://twitter.com/cherthedev/status/1490105751020269578
[109] Twitter, https://twitter.com/cherthedev/status/1490106738317545472,
https://web.archive.org/web/20220205234743/https://twitter.com/cherthedev/status/1490106738317545472

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## LAWFARE:  COERCION TO WITHDRAW CHARGES & COMPLAINTS

- **12 Aug 2021**: **If I receive anything from the police regarding a restraining order from you,** the following below email goes goes directly to Tim Cook and Diedre O'Brien. (Christy Dehus) [110]
- **9 Sept 2021:** Apple has determined that you have engaged in conduct that warrants termination of employment, including, but not limited to, **violations of Apple policies**. **You disclosed confidential product-related information in violation of Apple policies and your obligations under the Intellectual Property Agreement (IPA).** We also found **that you failed to cooperate and to provide accurate and complete information during the Apple investigatory process**. (Termination Letter)
- **9 Sept 2021:** Exactly, she's "badass" with a part-time Santa Clara JD, **she's going to get steamrolled** lololol (Reddit) [111]
- **9 Sept 2021: Her downfall is her hubris to think her Santa Clara law student status can battle** an entire team of internal and external harvard/Yale/Stanford lawyers with experience (Reddit) [112]
- **9 Sept 2021:** I miss the old days when we didn't let the mentally ill freely roam about the streets. We **locked them up and put them in facilities for their own good and for the good of everybody else.** (Reddit) [113]
- **9 Sept 2021**:. **It would be in your best interest to drop ideas of suing, or attempts at dragging them through any spiteful dirt, as it'll co$t you**. If not, seek counsel. (Twitter)[114]
- **10 Sept 2021:**  Pride b4 fall. **Got herself fired, so no settlement.** Broke her contract with Apple, **so no settlement**. Made the choice to take it to Twitter, a Big mistake. Like the poster said, there are ways to do things, but she chose to do them her way, **which led to a costly highway if sues.** (Twitter)
- **10 Sept 2021:** My guess is **she got greedy.** The core of her issue lies in money aka "sexism." Or **Apple would want to settle with her,** but instead she pridefully decided not to meet with them so who knows if she might have been **fired with a healthy settlement,** but instead **she's poisoned herself**. (Twitter)
- **doubt a reputable lawyer would even come near her case.** A retainer fee for what she's going up against will most certainly make her go broke. And then if she loses, a judge can make her pay all of Apple's and Irvine Company's legal fees. How's that for hubris. Lol (Apple Insider)
- **10 Sept 2021: Sure law firms will take her hard earned income/stock payout**. (Twitter)
- **11 Sept 2021**:  Given how weak her case is, **I doubt any lawyer will take it hoping for settlement.** (Apple Insider) [115]
- **11 Sept 2021**: **Apple will want to make an example of this psycho woman and will not settle**. so I don't think this will go forward [116]
- **11 Sept 2021**:  Sue Apple's army of Ivy League lawyers with what money**? Is she going to represent herself with a T3 law degree. I'm afraid she will get steamrolled**. (Apple Insider) [117]

---

[110] Emails, see screenshots
[111] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[112] Reddit, https://www.reddit.com/r/apple/comments/co$t8i/apple_fires_senior_engineering_program_manager/;
[113] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[114] Twitter, https://web.archive.org/web/20210910144621/https://twitter.com/DonnaW218654/status/1436332518370791425
[115] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[116] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[117] Apple Insider, https://forums.appleinsider.com/discussion/223902;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **11 Sept 2021**:  The  passive-aggressive profanity ridden vindictive Tweets **will not win sympathy from a judge or juror**. (Apple Insider) **[118]**
- **11 Sept 2021**: **Sometimes winning is learning when to walk away and starting new.** Living a happy life (Success) is the best revenge. **[119]**
- **11 Sept 2021**:  She lost a solid Apple salary, RSUs (~millions had they vested) and platinum healthcare benefits plus other perks- and for what to be a "badass" ?? A very costly delusion. **Good luck to Ashley Gjøvik, she's going to need it! [120]**
- **10 Sept 2021:** Don't sign then talk, especially when still working for a TRILLION dollar company **who would drag a suit out until she is broke**. Leave if internal methods failed. **Now can't sue since fired.** And now HER dirty laundry is public knowledge **so other companies will be hesitant to hire.** (Twitter)
- **10 Sept 2021:**  Since Ashley Gjovik took it to Twitter, so did Apple. If Apple employees are issued company iPhones they have a right to request all they did, same with non-disclosure agreements, which **appears how the seasoned employee might end up giving them her saved pay back in legal fees**. (Twitter)[121]
- **10 Sept 2021:** It's not worth it. **Just let go of this whole drama, and get a job at some company that agrees with your views,** one that can satisfy your every demand. You really are **not anything in tech apart from some manager that once worked at Apple**. Life is hard and has injustices and wrongs. You won't change this. (Email)[122]
- **11 Sept 2011**: **Her suing would be the worst thing for her**. They'll throw her some equivalent of pocket change at her, make her sign an NDA and shut her up (AppleInsider) **[123]**
- **12 Sept 2021:** there's no conspiracy **she broke Apple's number one rule.** She talked to the press while still employed. She is never going to work in tech again and since **she is going to lose the lawsuit she should just apply to fast foods right away**. (Twitter) [124]
- **17 Sept 2021:  It will take the NRLB 5 seconds to figure out that Ms Ashley is a complete psychopath** in addition to claiming a compliment from superior is harassment (Apple Insider) [125]
- **20 Sept 2021:** "Ballpark idea how much your legal fees will be to take on Apple**? I imagine $100K is not nearly enough."** [126]
- **9 Oct 2021:** What she is doing **now might really harm her ability to ever get hired again by a company in SV**. (HackerNews) [127]
- **9 Oct 2021: She doesn't want to move on with her life**. … **Who would ever want to hire her again, or provide her housing** (after her whole anti-apartment rant toxicity rant)? (HackerNews) [128]

---

[118] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[119] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[120] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[121] Twitter, https://web.archive.org/web/20210910192103/https://twitter.com/MrNeoTheOne/status/1436408724839706630
[122] John Pratt, jpratt@redesign.codes; IP 68.12.230.58 (Oklahoma City, Oklahoma)
[123] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[124] Twitter, https://twitter.com/AllonsyAlonso85/status/1437335489611280384
[125] Apple Insider, https://forums.appleinsider.com/discussion/224041;
[126] Twitter, https://web.archive.org/web/20210921153056/https://twitter.com/gbluvsf/status/1440010981388652545
[127] HackerNews, https://news.ycombinator.com/item?id=28813010,
[128] HackerNews, https://news.ycombinator.com/item?id=28813010,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **20 Nov 2021:** The most likely outcome is that Apple connects the account to you, uses the fact that you've spoken about it to bring it up in court, and then **uses your post history against you**. Nuke the account and hope for the best. (Reddit)[129]
- **8 Dec 2021:** Remember what Jesus Christ taught about retaliation. **You are retaliating back at Apple.** Matthew 5:38-4 *"You have heard that it was said, 'An eye for an eye and a tooth for a tooth.' But I say to you, Do not resist the one who is evil. But if anyone slaps you on the right cheek, turn to him the other also. And if anyone would sue you and take your tunic, let him have your cloak as well. And if anyone forces you to go one mile, go with him two miles..."* (Email) [130]
- **1 Jan 2022: Apple honestly doesn't care about you**. (David Evans) [131]
- **7-8 Jan 2022:** Cher attempting to get me to ask the Wikipedia arbitration committee to stop investigating an account harassing me
- **11 Jan 2022:** "I think you're making life hard for yourself, and **looking for a fight where there honestly wasn't one.** It's probably best for your mental and even physical health **to just move on**." (David Evans)[132]
- **15 Jan 2022:** You should probably get a clue that if Twitter doesn't even care about the alleged "wrongs" perpetrated against you that **a court of law probably isn't going to either** (Twitter) [133]
- **3 Feb 2022:** I don't think there's nice things in there, nor do your opinions of others sound nice either. It **seems hypocritical to make a 200+ NLRB complaint** but not share written inventory of those YOU have offended with your words and actions. [134]
- **3 Feb 2022: Now people will associate whistleblowing with this 200+ page NLRB** complaint that is too saturated with bias. Your bias. It's unconscionable how you shared so many names.[135]
- **3 Feb 2022: You deserve any dissent and I hope those people you named get Justice against you, because you have really been unfair, a bully, supremely egotistical, and just really a sad joke with your NRLB complaint. [136]**
- **3 Feb 2022: I hope all of this effort depletes your funds and support** so maybe you go take a vacation and ponder doing something else. You are not a hero for whistleblowers, you are just a hero for Ashley Gjovik. [137]
- **3 Feb 2022:** I hope my opinions live on with the internet. Because I hope the internet **can see how the 200+ page NLRB complaint is a long stretch to call opinions on the internet "propaganda."** Thank god there is freedom on the internet to have opinions. Thank god for first amendment! [138]
- **3 Feb 2022: Also, you waste government resource on your TRO**. That's for people who are victims of DV, but you file it because you don't like what someone says about you. Shame on you. [139]

[129] Reddit, https://www.reddit.com/r/apple/comments/qymkji/bloomberg_apple_ceos_antileak_edict_broke_law/,
[130] The Messenger, IP 74.82.60.40 (Fremont, California 94536), (**Corporate IP,** Hurricane Electric)
[131] Twitter, https://twitter.com/DaviddE_94/status/1477413910680645638,
[132] Email, see screenshots
[133] Twitter, https://twitter.com/FirstNa47437596/status/1482230004371488771,
[134] Twitter, https://twitter.com/one_more_time_2/status/1489746254372347905,
[135] https://twitter.com/one_more_time_2/status/1489748197891137537,
[136] Twitter, https://twitter.com/one_more_time_2/status/1489748553501057025,
[137] Twitter, https://twitter.com/one_more_time_2/status/1489748938051620864,
[138] Twitter, https://twitter.com/one_more_time_2/status/1489753276492881925 ,
[139] Twitter, https://twitter.com/one_more_time_2/status/1489753945035526144,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **5 Feb 2022**: **Please remove my tweets that cannot be reasonably justified to be connected to you from your January NLRB memo.**(Cher Scarlett) [140]
- **5 Feb 2022**:  I am worried about what will happen to your mental health **if any of your cases are dismissed due to any impropriety.** (Cher Scarlett) [141]
- **5 Feb 2022**:  **You need to delete my tweets from your memo** that contain personal information about me and my family (Cher Scarlett) [142]
- **5 Feb 2022**:  **You need to remove all assertions that I am accounts trolling you]** (Cher Scarlett) [143]

- 

---

[140] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[141] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[142] Unsolicited email via website webform on Feb 5 2022 (see PDF)
[143] Unsolicited email via website webform on Feb 5 2022 (see PDF)

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## LAWFARE: DOUBT; DISINFORMATION; FALSE ACCUSATIONS

*Disinformation is deliberately deceptive. Disinformation is used today to describe a form of propaganda consisting of false information deliberately and often covertly spread to obscure the truth.*

- **4 Aug 2021:** She's planning to **blackmail** Apple into getting rid of her with a large severance payment, and then setting herself up as a Twitter personality who advises other people on how to **blackmail** their employers into letting them work from home. (AppleInsider)[144]
- **4 Aug 2021: Ambulance chasing** psychopath (AppleInsider)[145]
- **4 Aug 2021:** They told her they were investigating it, gave her some paid leave options in the meantime, and **asked her to stop posting potentially defamatory statements** until the investigation was done... (Twitter)[146]
- **4 Aug 2021:** This particular "alleged victim" made **similar allegations back in 2018: those were found false.** (AppleInsider)[147]
- **4 Aug 2021:** Note that this person had **filed similar allegations back in 2018** and they were **proved false**. Also keep in mind that this is the same employee who a week ago or so disclosed the **Apple internal survey to screen for vaccination rates** in its employees population, posting it on Twitter and saying: "no way I'll answer to such question" (despite the survey contained also a choice as in "prefer not to answer"). (AppleInsider)[148]
- **21 Aug 2021:** this is an ACTIVE @Apple investigation and the managers accused are **now receiving death threats.** Stop sharing confidential info/screenshots that could reveal identity of those involved. (Twitter) [149]
- **21 Aug 2021:** Managers accused are now **receiving death threats.** Take down the work screenshots because identities are being outed and lives are now at risk. (Twitter)[150]
- **1 Sept 2021**: By creating **bogus, unsubstantiated filings with the DOJ and other regulatory bodies,** this person has just endangered the future cases of people with legitimate claims. (Shantini Vyas)[151]
- **3 Sept 2021**: Ashley Gjovik receives $386,000 per year in compensation from Apple. Right now she is being paid for doing absolutely nothing as she is on paid leave while they **investigate her false and misleading claims**. She doesn't need your sympathy money (AppleInsider) [152]
- **9 Sept 2021:** Apple has determined that you have engaged in conduct that warrants termination of employment, including, but not limited to, **violations of Apple policies. You disclosed confidential product-related information in violation of Apple policies and your obligations under the Intellectual Property Agreement (IPA).** We also found **that you failed to cooperate and to provide accurate and complete information during the Apple investigatory process**. (Termination Letter)

---

[144] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[145] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[146] Twitter, https://twitter.com/abm_11110/status/1423223906899529730
[147] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[148] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[149] Twitter, https://web.archive.org/web/20210822103330/https://twitter.com/mel_nayer/status/1429215554913533957
[150] Twitter, https://web.archive.org/web/20210822125916/https://twitter.com/mel_nayer/status/1429206330485575682
[151] Twitter, https://twitter.com/_shantini_/status/1433270371915116544,
[152] Apple Insider, https://forums.appleinsider.com/discussion/223785, ,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **9 Sept 2021:** It was never about her wanting to win a case or fight sexism; she and everyone else at Apple knew the **case was dead in the water**. Just a semi-clever manipulation tactic to intimidate Apple….. Disgusting. (Reddit) [153]
- **9 Sept 2021:** Important! The **NLRB** investigates ALL charges brought to its office. **It isn't indicative of prosecution of cases or merit in charges.** I still strongly believe in the case myself and Apple employees have brought regarding unlawful statements and application of rules around pay (Cher Scarlett) [154]
- **9 Sept 2021:** I think when the **NLRB, EEOC** slams the door on **Karen's face** because there's **no case**, we'll see more Twitter tirades about how corrupt these agencies are. Dear Apple please **don't pay her** a fucking dime; awarding toxic behavior will only perpetuate it. She needs to learn a hard lesson in life and gain some maturity. (Reddit) [155]
- **10 Sept 2021:** She clearly doesn't have a lawyer, **so I'd guess all of her claims are entirely baseless.** (HackerNews.com)[156]
- **10 Sept 2021:** Ashley Gløvik has been getting her her law degree from home while on paid sick leave from Apple. **She will likely be spearheading her own shakedown lawsuit**…(Engadget) [157]
- **10 Sept 2021:** Everything I've read indicates **her only goal to get hired at Apple was to build a lawsuit against a multi-billion dollar company**. (Engadget) [158]
- **10 Sept 2021:** Ashley is a Sr Engineer PM. She's been at Apple for more than 6 years and Nike before that. She's **made ten's of millions in total comp**. She does not need a gofundme. (Twitter)[159]
- **10 Sept 2021:** They were investigating her for leaking internal information and she refused to participate **unless they would give her additional documents that she could disseminate**. How should we expect the investigation to play out after that? (Twitter) [160]
- **10 Sept 2021: She lied about being doxed on Blind**. (HackerNews.com)[161]
- **10 Sept 2021:** She'll complain to the **NLRB** in the **hopes of getting some more publicity.** (Apple Insider)
- **10 Sept 2021:** Apple undoubtedly followed a process that will, at the very least, withstand legal scrutiny. Proving wrongful termination is nearly impossible without hard evidence of things like age, sex or racial discrimination. She was an At Will employee, so she could be fired for nearly any reason. She also allegedly publicly disclosed a confidential security tool, and obviously painted her employer in a bad light in public. **Either one is easily fireable.** (Apple Insider)
- **10 Sept 2021:** she wanted to go on a **misinformation campaign** (Apple Insider)
- **10 Sept 2021**: AG seems **hypochondriac** taking professional criticism personally, **wanted fired to sue for personal reasons cloaked by victimization**. (Twitter)
- **11 Sept 2021**: It was still a violation and someone else mentioned one of **her tweets had proprietary information** in it. It's going to be **hard to prove this was retaliatory**. (Cher Scarlett)
- **11 Sept 2021**: Gjovik has **yet to produce any evidence of merit.** (Reddit)

---

[153] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[154] Twitter, https://twitter.com/cherthedev/status/1436194928351014942;
[155] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[156] HackerNews, https://news.ycombinator.com/item?id=28477392;
[157] Engadget, https://www.engadget.com/apple-fires-ashley-gjovik-025858158.html,
[158] Engadget, https://www.engadget.com/apple-fires-ashley-gjovik-025858158.html,
[159] Twitter, https://twitter.com/Heffer/status/1436295747050168320,
[160] Twitter, https://twitter.com/reprobations/status/1436372885870821377,
[161] HackerNews, https://news.ycombinator.com/item?id=28477392;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **11 Sept 2021**: I honestly don't know a **respectable lawyer that would go down this path with her**, especially with all her Tweets out there. (Reddit)
- **11 Sept 2021**: "Gjovik has yet to produce any **evidence of merit**" (Reddit) [162]
- **11 Sept 2021**: This just kinda means the **EEOC** investigated her claims and probably **didn't find anything** they were willing to act on. The only final option for her is a private law suit. (Reddit)[163]
- **11 Sept 2021**: The thing is…this just kinda means the **EEOC** investigated her claims and **probably didn't find anything they were willing to act on.** The only final option for her is a private law suit. (Reddit)
- **11 Sept 2021**: Yeah right to sue is **only after EEOC decides not to sue on your behalf.** (Reddit)
- **11 Sept 2021**: When the EEOC gets a charge, and there is good evidence to support the charge, the EEOC will take it on themselves. **But if there is anything other than good evidence, meaning the EEOC found little to nothing, they still issue "right to sue" notice.** (Reddit)
- **11 Sept 2021**: Her "lawsuit" against Irving Company is the **definition of frivolous**. (Reddit)
- **11 Sept 2021**: I thought she was on a permanent paid leave of absence. I guess she misunderstood. Lol Yes. I think she is a lulu of a self-destructor and **probably has no case**. [164]
- **11 Sept 2021**: In case some people missed it, Ms. Gjovik is studying law at Santa Clara University School of Law. I would hazard a guess that she has no plans to return to the tech field as a manager of any kind, and really never did. The legal actions she is undertaking or about to undertake are more likely **resume builders** for future employment at law firms focused on employee advocacy and employee rights.[165]
- **11 Sept 2021**: **Karen's** always blab their mouth and want to see "the Manager". **"I will report to NLRB, I'm want to speak with Gavin Newsom!, I demand to speak with Joe Biden!!"** [166]
- **11 Sept 2021**: **I don't think Apple is going to pay her a dime**. [167]
- **13 Sept 2021: The EEOC and DFEH have already declined to pursue** and given her the right-to-sue (Cher Scarlett)
- **16 Sept 2021:** GoFundMe is a great crowdfunding resource for people in need. People who are **extremely privileged financially** should be using other mechanisms to obtain residual income from supporters. Using GFM as residual income is **predatory**. (Cher Scarlett) [168]
- **14 Sept 2021**: But **you said were only planning on staying at Apple until Dec 2022 though,** which means you wouldn't be getting all that money anyways. (Twitter) [169]
- **22 Sept 2021:** Right to Sue notices are the default position of the NLRB – ergo, **they decided \*not\* to take action of their own, hence, you can go ahead and sue to resolve it yourself.** The NLRB has no authority to prevent you to sue unless they're dealing with the employer themselves. (Reddit) [170]

---

[162] Reddit, https://www.reddit.com/r/apple/comments/pm7lio/fired_apple_employee_who_aired_workplace_concerns/;
[163] Reddit, https://www.reddit.com/r/technology/comments/pmhkne/comment/hcibuj6/?utm_source=share&utm_medium=web2x&context=3
[164] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[165] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[166] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[167] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[168] Twitter, https://twitter.com/cherthedev/status/1438597588685492239
[169] Twitter, **DELETED**, See screenshots / PDFs instead
[170] Reddit, https://www.reddit.com/r/apple/comments/pt91m5/tim_cook_says_employees_who_leak_memos_do_not/,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **25 Oct 2021:** Anyone can file complaints with federal and state agencies. **It doesn't mean there is merit, and it doesn't mean the person doing the reporting is being honest or genuine in doing so**. Hero culture creates parasocial relationships that create scary influence that spreads. (Cher Scarlett) **[171]**
- **29 Oct 2021:** Ashley has been **harassing journalists and lying about a bunch of stuff**. Do you care that **she's lied about me too**? Claiming I tried to have someone doxed for asking what case she was posting screenshots of? For dragging my name through the mud because **editors couldn't verify her story and they wouldn't write about her?** (Cher Scarlett)
- **29 Oct 2021:** So far, she has tried desperately to **use other victims for her own gain, made racist remarks, lied to the public, to the government, about what happened to her, and about me, and a bunch of other people who tried to help her**. I cannot stand to watch good people such as yourself get wrapped up in her web. (Cher Scarlett)
- **1 Nov 2021:** "If we aren't able to determine if the law may have been violated, we will send you a Notice of Right to Sue." It **DOES NOT mean the evidence justifies a verdict would be in the complainant's favor. When it does, they FIRST attempt to settle.** [EEOC link]." (Cher Scarlett) **[172]**
- **20 Dec 2021:** I suggested another victim get comment from Apple or proof about something she wrote that to my knowledge, from speaking with the person it was about, to protect herself. **She did leak IP, and posted the evidence of it, which is now cited in Apple's defense.** (Cher Scarlett) **[173]**
- **20 Dec 2021:** **I have to be cited to prove that a termination wasn't retaliatory**, and somehow *I* am in the wrong. (Cher Scarlett) **[174]**
- **20 Dec 2021:** I quietly warned a handful of people about her behavior towards other people. **I refused to corroborate misrepresentations of fact, and provided contrary evidence**. (Cher Scarlett) **[175]**
- **20 Dec 2021:** I'd be willing to bet she has a book coming. Gotta build the hype train. **Most of her accusations are nothing burgers.**
- **29 Dec 2021:** **S**omeone else got a **Cease & Desist** for printing something [Gjovik] said that wasn't true from Apple. (Cher Scarlett) **[176]**
- **29 Dec 2021:** I want to see her get justice, but **perjuring herself** and doing all of this is **harmful** (Cher Scarlett) **[177]**
- **29 Dec 2021:** Because someone else got a **Cease & Desist** for printing something **she said that wasn't true** from Apple. You do not deserve to get sucked into this shit for standing up for someone else. I want to see her get justice, but **perjuring herself** and doing all of this is harmful to her and everyone else in the ripples. (Cher Scarlett)
- **29 Dec 2021:** Ashley's behavior has put me in a position where I am one of Apple's witnesses against here, and **it's because she TOLD ME she leaked unreleased** IP, and sent me the entire volume of it. It's in our messages. While I could get behind "I did this because this software is invasive and constitutes necessity for whistleblowing." I cannot get behind saying it didn't happen. I'm not asking you not to believe Ashley, but

---

[171] Twitter, https://twitter.com/cherthedev/status/1452677821998850048,
[172] Twitter, https://twitter.com/cherthedev/status/1455195681258237957,
[173] Twitter, https://twitter.com/cherthedev/status/1476684139826802689 ,
[174] Twitter, https://twitter.com/cherthedev/status/1476684475677306888,
[175] Twitter, https://twitter.com/cherthedev/status/1476685163660603403 ,
[176] Text messages, see screenshots
[177] Text messages, see screenshots

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

please, put yourself first. What she told you is NOT what she told me. Both of these things CANNOT be true. (Cher Scarlett)

- **30 Dec 2021:** I'd recommend ignoring it. **There's no making sense of any of it.** Believe me, I tried. I also tried talking to her about her behavior in September. **She flipped out and blocked me.** (Cher Scarlett) **178**
- **30 Dec 2021:** I've learned this year to ignore **people defaming me and harassing me.** (Cher Scarlett)**179**
- **1 Jan 2022: you really did leak IP** (David Evans) **180**
- **1 Jan 2022:** Hey Ashley, just a little piece of advice: if you're going to post stuff like this please make sure to block all Apple engineers (myself included) who can see all of the other "living hell" Radars, **that were jokes, and in which you were involved. It's not a good look. Thanks**! (David Evans) 181
- **3 Jan 2022: Both the DFEH and EEOC issued Gjøvik right to sue letters, which indicates that while the agencies were unable to determine if law was violated and would not be proceeding on her behalf**. (Cher Scarlett via Gjovik's Wikipedia Page) **182**
- **9 Jan 2022**: Did you just admit to intimidating an Apple defense witness? Do you know that is a crime in the state of California? It doesn't matter if the trail is ongoing/pending or not. **I think you may have already committed a federal crime**. Talk with your lawyer. "Applies to tampering with witness in "proceedings before congress, exec departments, and admin agencies, and to civil and criminal judicial proceedings, including grand jury proceedings….. [links]. 18 U.S. Code § 1512 (Twitter) 183
- **9 Jan 2022: (**Scarlett claims Gjovik was **"extorting her"** and tells multiple people **she reported Gjovik to law enforcement** that week, including **reporting Gjovik to the U.S. FBI**.) (Private Messages)
- **5 Feb 2022:** Do you know whose AppleInsider piece on **a [SEC] whistleblower tip** which contained **absolutely no material information s**hareholders could use caused that? Yours. (Cher Scarlett) **184**

---

178 Twitter, https://twitter.com/cherthedev/status/1476588567166029824,
179 Twitter, https://twitter.com/cherthedev/status/1476351662746857474,
180 Twitter, https://twitter.com/DaviddE_94/status/1477219143543889922,
181 Twitter, **[deleted, see screenshot]**
182 Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:Conflict_of_interest/Noticeboard/Archive_184
183 Twitter Direct Messages, see screenshots
184 Unsolicited email via website webform on Feb 5 2022 (see PDF)

## ASHLEY GJOVIK V APPLE INC
### INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## ANTI-UNION & ANTI-LABOR THREATS & COERCION

- **16 Sept 20** From a compensation standpoint Stock options are WAY more worth it. If Ashley showed her equity awarded during her 6 years and any ESPP she participated. **I've worked union** and I've **purchased shares of apple at retail prices**. Its life changing. (Twitter) [185]
- **17 Sept 2021:** Encouraging employees to leak is also predatory. **An employee gets nothing out of leaking except potentially get fired.** (Shantini Vyas) [186]
- **22 Sept 2021:** Ashley seems to be so busy with work, social media and what-have-you that she's obviously not been reading any 'hard' news. Stuff about, say, Amazon employees attempting to organize. She may also have neglected to read her employment contract. Discussing pay and benefits on a work Slack channel is perilously close to an activity **called 'organizing a union'**. Companies get really nervous about this sort of thing, they like to **nip it in the bud, rooting out troublemakers and so on.** As a "right to work" state both employer and employee are free to terminate their relationship at any time without prejudice. Put simply, you can be fired at any time from a job, no notice needed. **Being a nice middle class professional A. will surely protest that she wasn't trying to organize anything as uncouth as a union on work time** (The Register) [187]
- **15 Oct 2021:** Worker's rights? **She's not a fucking coal miner.** She's a Silicon Valley employee who works in air conditioned rooms, earns upper six-figure salaries, has healthcare, benefits, perks, free or subsidized childcare, housing, nap rooms, etc. that 99.99% of other employees/workers can only dream of. **I will save my sympathy for someone else more deserving** Edit: downvoting an unpopular fact doesn't make it any less of a fact. (Reddit) [188]
- **23 Dec 20221:** From your comments it doesn't seem like you understand how it works at all. **Capitalism works the way capitalism works,** not the way you think it should work. People are paid according to the prevailing market rate, not according to what they or you think they deserve to be paid. (Reddit) [189]
- **23 Dec 20221:** The **people against this "strike"** are against it on principle and against ppl victimizing themselves for no reason. (Reddit) [190]
- **23 Dec 20221:** you have a fundamental misunderstanding how of the market works. **workers are paid according to prevailing market conditions** (i.e. the alternates). in that regard Apple is already a standard-setter for other retailers. worker's aren't paid, as you suggest, based on how well the company is doing or how much a profit the company is making. Apple isn't a profit-sharing company. downvote if you want, but its the truth. (Reddit) [191]
- **6 Jan 2022:** What a shame. And as a woman in tech myself (who originally followed your story on faith that the initial claims were real)**, I find this drama embarrassing and counterproductive**. I am at least glad to see **that you are struggling to get engagement in your more recent posts**. [192]

[185] Twitter, https://twitter.com/Heffer/status/1438625852585963520
[186] Twitter, https://twitter.com/_shantini_/status/1438921833852571653,
[187] The Register, https://www.theregister.com/2021/09/03/apple_nlrb_hostile_environment/;
https://forums.theregister.com/forum/all/2021/09/03/apple_nlrb_hostile_environment/;
[188] Reddit, https://www.reddit.com/r/apple/comments/q8y4ce/apple_fires_one_of_the_appletoo_movements_leaders/;
[189] Reddit, https://www.reddit.com/r/apple/comments/rnqlbd/updated_list_of_demands_for_applewalkout/;
[190] Reddit, https://www.reddit.com/r/apple/comments/rnqlbd/updated_list_of_demands_for_applewalkout/;
[191] Reddit, https://www.reddit.com/r/apple/comments/rnqlbd/updated_list_of_demands_for_applewalkout/;
[192] Twitter, https://twitter.com/jennybeane/status/1479731766394966016,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## DISCRIMINATION DUE TO SEX &/OR DISABILITY

- **4 Aug 2021:** They got a bed at the **luny bin** waiting on you  (Twitter)[193]
- **4 Aug 2021:** This woman is the problem. Look at her Twitter , she needs a **psychiatric evaluation** (AppleInsider)[194]
- **20 Aug 2021:** To me, it looks like the scrapbook of a **paranoid schizophrenic who meticulously collects "evidence" on their "gangstalking"**… Just look at this tweet where she talks about fighting Apple, Northrop Grumman (!) and the Irvine Company, and tell me with a straight face that she's not a **wacko. (**HackerNews) [195]
- **20 Aug 2021:** Wow... This person is literally **mentally sick** and needs help. It's actually quite sad. (Twitter)[196]
- **21 Aug 2021:** You are **paranoid** AF (Twitter) [197]
- **22 Aug 2021:** It seems like Ashley is a **sick individual with some serious mental issues**. She is incapable of working without causing issues. [198]
- **22 Aug 2021:** Giving her attention like Timnit is doing is **fueling her paranoid delusions**. (Twitter)[199]
- **23 Aug 2021:** the other chick [Gjovik] seems like an **absolute loon**, though. full on **conspiracy theories**. her twitter feed is hilarious. checks off that she's an official whistleblower rofl (Apple Insider)[200]
- **30 Aug 2021**: [Ashley's] your **typical feminist**. (Team Blind)
- **3 Sept 2021**: This woman **has serious mental issues** because she's mostly **lying** and trying to make Apple the bad guy (in her case). (Twitter) [201]
- **9 Sept 2021**: You ought **bring breakfast everyday in bed to Ashley**, **otherwise she beats you** hardly and also put a grudge on you for a week or so if her cappuccino had not enough foam on top. Duck life. (9to5Mac.com) [202]
- **9 Sept 2021** Sounds more like she has **mental illness** (Reddit) [203]
- **9 Sept 2021:** Sounds like she has **anxiety**. (Reddit) [204]
- **9 Sept 2021:** "Add to that her article about how toxic waste in her apartment is adversely affecting her health, and I'm wondering if there are **mental health issues** at play here. (9to5Mac.com) [205]

---

[193] Twitter, https://twitter.com/dake_smith/status/1423255342226493440,
[194] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[195] HackerNews, https://news.ycombinator.com/item?id=28241917, https://news.ycombinator.com/item?id=28241753;
[196] Twitter, https://twitter.com/JohnTarion/status/1428574906107797504,
[197] Twitter, https://web.archive.org/web/20210822125916/https://twitter.com/mel_nayer/status/1429206330485575682
[198] Twitter, https://twitter.com/JohnTarion/status/1428689530350080006,
[199] Twitter, https://twitter.com/JohnTarion/status/1428689530350080006,
[200] Apple Insider, https://forums.appleinsider.com/discussion/223646, ;
[201] Twitter, https://twitter.com/Antrunt/status/1436315767813910529
[202] 9to5Mac, https://9to5mac.com/2021/09/09/apple-fires-engineering-manager-ashley-gjovik-for-allegedly-violating-companys-rules/;
[203] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[204] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[205] 9to5Mac, https://9to5mac.com/2021/09/09/apple-fires-engineering-manager-ashley-gjovik-for-allegedly-violating-companys-rules/;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **9 Sept 2021:** She exhibits all the tell tail signs of **bi polar manic depression** and appears to be in **full blown mania**. It's tragic really. The real enemy in this scenario is the news media, who would take advantage of anyone for the engagement. (Reddit) [206]
- **9 Sept 2021:** Based on her writings and twitter feed, I would not be surprised in the least to learn she has **some kind of psychosis**. (Reddit) [207]
- **9 Sept 2021** @ashleygjovik I can see all **negativity and bad vibes in this woman face**. People's thoughts are changing their looks. The hate and negative thoughts attracting all her issues more and more. She is probably v**egan and protester and voted current president** 😂😂😂😂 (Twitter) [208]
- **9 Sept 2021:** I like to call it **passive stimulant psychosis**. She's probably on a low dose adderall or vyvanse and it's slowly turning her crazy. (Reddit) [209]
- **9 Sept 2021:** I don't feel bad for her and society and media gives far too much exposure to the mentally ill today, even enabling them and supporting them, as they partake **in their fraudulent, slanderous and lying crusades.** This **crazy lady** is not the only **mentally ill person infecting media today.** (Reddit) [210]
- **9 Sept 2021:** I also believe that society has generated a group of losers, who were taught to believe in victimhood ideology and as the **psycho lady** in the OP found out, things **generally wont end well for any of them. Thankfully**. (Reddit) [211]
- **9 Sept 2021:** maybe she has a **personality disorder or some mental health issue**. (Reddit) [212]
- **10 Sept 2021:** #ashleygjovik was such a tool.used by others to make a point, and by her own narcissistic ego **to be flagellated by her inner child**. It's a very sad way to live. (Twitter) [213]
- **10 Sept 2021: She has mental issues.** (Apple Insider)
- **10 Sept 2021: Glad they fired her** and any other know it all activist employee should be terminated too. She had so many complaints and not just about her job but having **PTSD** and many other complaints outside of work that I would classify her as **having Borderline Personality disorder**. Don't let the door hit you on your way out!! (Apple Insider)
- **10 Sept 2021:** Not a knock, but **she is obviously a little high on the body mass index**. Should get her blood pressure checked. (Apple Insider)
- **11 Sept 2021**: Is **she mentally unwell**? Clearly. From the **bananas OpEd she wrote**, to her **borderline paranoid schizophrenic website,** to the very **bizarre and suspect things she's posted** to her Twitter, this is **not a woman of sound character and mind.** (Reddit)
- **11 Sept 2021**: She's a **fucking nutcase** lmao (Reddit)
- **11 Sept 2021**: She seems **unhinged** from everything I've read. A person that is **unhappy** and cannot let go until it's her way. (Reddit)
- **11 Sept 2021:**: Nope. Take one look at this persons Twitter and her allegations, she's **clearly mentally unwell.** (Reddit)

---

[206] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[207] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[208] Twitter, https://twitter.com/DanielSavills/status/1436197119589855233;
[209] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[210] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[211] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[212] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[213] Twitter, https://twitter.com/beezie_wacks/status/1436339255714848779,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **11 Sept 2021**: Because this specific employee comes across as **mentally unwell** (Reddit)
- **11 Sept 2021**: This woman comes across as **unhinged**  (Reddit)
- **11 Sept 2021**: Naeh, **chubby side +baby teeth lol** (Reddit)
- **11 Sept 2021**: this chick is a **hypochondriac** … she's **borderline insane**… … Anyways like I said chick is **nuts AF**  (Reddit)
- **11 Sept 2021**: This lady is a **nut case**. Her grievances vs the apartment complex was **such bull shit.** (Reddit)
- **11 Sept 2021**: This lady is absolutely **bonkers**.  (Reddit)
- **12 Sept 2021**: you are **paranoid**, please seek help. (Twitter)[214]
- **12 Sept 2021**: I've seen enough, you appear **hysterical and paranoid**. (Twitter)
- **12 Sept 2021**: **Cunt**. (email)
- **11 Sept 2021**:  She shows traits to me of someone with **Borderline Personality Disorder**.  And just like Johnny Depps ex malignant narcissist **BPD** wife shows the exact same victimization toolbox.  People should report abuse but her behavior is someone indicative of **BPD**.  **215**
- **26 Sept 2021**: I'm concerned for her, but she made a lot of money and **has no dependents**. She's almost done with her law degree. She will be fine. (Cher Scarlett) **216**
- **9 Oct 2021**:  you can quickly see she's a **nutcase who wants issues** and a blind detached twitter army backing her to validate her despite none of these people actually having any real context to what's going on. (HackerNews) [217]
- **9 Oct 2021**: A huge thing if true, and not worth it. However it is exactly **the kind of thing a person who in paranoid would believe.** What is more likely, a big company is breaking into employees home and impersonating the police, or **Apple has employed somebody with an undiscovered mental illness?** (HackerNews) [218]
- **9 Oct 2021**: She comes across (even while giving her side of the story) as **unhinged** and **awful to work with**. I have to wonder if maybe this is an **ongoing mental health crisis** or something. (HackerNews) [219]
- **9 Oct 2021**: It looks a lot like this is a **mental health issue** rather than actual wrongdoings at Apple. (HackerNews) [220]
- **14 Oct 2021**: This woman's tweets show she is both **unhinged and a narcissist**. I don't buy her story. What I do buy is that she is probably difficult to get along with and doing what many culturally brainwashed individuals do these days and play the victim card, hoping for attention and a payout.  (Gizmodo) [221]
- **14 Oct 2021**: You're telling me that this website she created, essentially recreating her Twitter account filled with screenshots of internal communications, does not come across as **unhinged**? (Gizmodo) [222]

---

[214] Twitter, https://twitter.com/AllonsyAlonso85/status/1437319925274710023
[215] Apple Insider, https://forums.appleinsider.com/discussion/223902;
[216] Team Blind, See PDF
[217] HackerNews, https://news.ycombinator.com/item?id=28813010,
[218] HackerNews, https://news.ycombinator.com/item?id=28813010,
[219] HackerNews, https://news.ycombinator.com/item?id=28813010,
[220] HackerNews, https://news.ycombinator.com/item?id=28811746 ;
[221] Gizmodo, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789; https://kinja.com/slushiercupid/discussions
[222] Gizmodo, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789; https://kinja.com/slushiercupid/discussions

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **21 Nov 2021:** This lady is suffering from **paranoid delusions and mental issues**. (Reddit) [223]
- **3 Dec 2021:** "IP leaks are something you get fired for… **so you basically did it on purpose to get attention**." (Nebojsa Bjegovic) [224]
- **13 Dec 2021:** "Lions don't concern themselves with the opinions of sheep." I used to think this quote was egotistical, but now, I get it. I see people misunderstand what they read, and believe **full-out fabricated nonsense that borders conspiracy, day-in and day-out.** There's no reaching them. (Cher Scarlett) [225]
- **13 Dec 2021:** It definitely sounds like **paranoid schizophrenia**. Have some compassion though. It is literally the worst disease anyone can possibly have. (MacRumors) [226]
- **13 Dec 2021:** I've been following her drama on twitter since she initially **requested to be placed on leave. This woman is deranged. She belongs in an institution.** (MacRumors) [227]
- **13 Dec 2021:** She's gone good riddance to the kook now she's looking to cash in if anything Applies Should find her a good place to get the **proper medical treatment.** (MacRumors) [228]
- **13 Dec 2021:** It sounds like you believe the **deranged woman** who seems to have a pattern of **crazy complaints** and not just regarding apple. Ask her apartment complex where she claims fumes make her sick even when her own tests found nothing. (MacRumors) [229]
- **20 Dec 2021:** She seems like someone who **suffers from paranoia**.
- **20 Dec 2021::** I've followed Ashley pretty closely and she strikes me as either **being completely paranoid** or having minimal experiences to justify what she claims
- **29 Dec 2021:** Most people like me don't relate to those who take their **emotional support animals** jet setting while funding their law school degree while at the same time asking for $100,000 in profitable donations, while turning down a $600,000 settlement. (Amanda Harrison) [230]
- **1 Jan 2022**: **As she [Gjovik] is a woman, and one who seems particularly subject to harassment, it would be nice to clarify how much higher education she's accomplished** (Cher Scarlett via Gjovik's Wikipedia page)[231]

[223] Reddit, https://www.reddit.com/r/bayarea/comments/qz6nkq/apple_employees_office_was_on_gross_epa_superfund/; https://web.archive.org/web/20220129093303/https://www.reddit.com/r/bayarea/comments/qz6nkq/apple_employees_office_was_on_gross_epa_superfund/
[224] LinkedIn
[225] Twitter, https://twitter.com/cherthedev/status/1470572468662267904,
[226] MacRumors, https://forums.macrumors.com/threads/u-s-labor-department-opens-investigation-into-apple.2327395/;
[227] MacRumors, https://forums.macrumors.com/threads/u-s-labor-department-opens-investigation-into-apple.2327395/;
[228] MacRumors, https://forums.macrumors.com/threads/u-s-labor-department-opens-investigation-into-apple.2327395/;
[229] MacRumors, https://forums.macrumors.com/threads/u-s-labor-department-opens-investigation-into-apple.2327395/;
[230] LinkedIn, https://www.linkedin.com/in/amanda-harrison-22aa9727
[231] Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:Conflict_of_interest/Noticeboard/Archive_184 ,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

# EVIDENCE OF PROPAGANDA BY TYPE

Apple's Head of Global Security & Crisis Management, Thomas Moyer, spent four years as an U.S. Navy Intelligence Specialist from 1988 to 1992, including the Cold War & Operation Desert Strom.[232] The U.S. Navy describes the role of "Intelligence Specialist" as collecting intel on everything from data on foreign cultures to enemy movements to current weather forecasts; then, using it to create cohesive intelligence briefings for high-ranking Navy officials. [233]

Moyer then obtained a Bachelor degree in "Rhetoric," followed by a Juris Doctorate. Berkley describes their Rhetoric program as "*Through its emphasis on the history and theory of rhetoric, the department provides an understanding of the format of contemporary theories of argument and interpretation as well as an opportunity, within this framework, to explore the role of persuasion in pragmatic and aesthetic contexts.*"[234]

## THE BIG LIE (*GROßE LÜGE*) + AD NAUSEAM & RATIONALIZATION

*The Big Lie: a gross distortion or misrepresentation of the truth. The repeated articulation of a complex of events that justify subsequent action. The descriptions of these events have elements of truth, and the "big lie" generalizations merge and eventually supplant the public's accurate perception of the underlying events. The German expression was coined by Adolf Hitler, when he dictated his 1925 book Mein Kampf, to describe the use of a lie so colossal that no one would believe that someone "could have the impudence to distort the truth so infamously.*

*Ad nauseam uses tireless repetition of an idea. An idea, especially a simple slogan, that is repeated enough times, may begin to be taken as the truth. Rationalization: Individuals or groups may use favorable generalities to rationalize questionable acts or beliefs. Vague and pleasant phrases are often used to justify such actions or beliefs.*

- **4 Aug 2021:** So an alleged victim claims sexism, creates a Twitter storm about it, sets terms for the company to follow, including **"put me on leave" and they put her on leave**... How is this remotely newsworthy? (Twitter)[235]
- **4 Aug 2021:** *"I added that if there was no other option they could give **me paid administrative leave.**"*... and this is **where I started to get suspicious**. (AppleInsider)[236]
- **1 Sept 2021:** A certain employee has made **it their mission to bring down Apple** through whatever means necessary. Including straight **LIES**. [237] This is about a person whose name starts with "A." (Shantini Vyas) [238]

[232] Zoom Info, https://www.zoominfo.com/p/Thomas-Moyer/609061930
[233] U.S Navy, Careers, Intelligence Specialist, https://www.navy.com/careers/navy-intelligence-specialist
[234] UC Berkley, Rhetoric, https://rhetoric.berkeley.edu/undergraduate-program/
[235] Twitter, https://twitter.com/shad0wfax_/status/1423146035833040898,
[236] Apple Insider, https://forums.appleinsider.com/discussion/223222;
[237] Twitter, https://twitter.com/_shantini_/status/1433270352919072771,
[238] Twitter, https://twitter.com/_shantini_/status/1433270361060225024 ,

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **1 Sept 2021:** However, [Gjovik] **lied about actions Apple has taken**. They have **misled** people by leaving out key details. They find new angles to make all of the Apple out to be the Big Bad Guy. The **goalposts move hourly**. (Shantini Vyas) [239]
- **1 Sept 2021:** Finally, if anyone was looking for receipts, this is what set me off tonight. **Such a big deal was made over this**. [Screenshot of email of Apple ER claiming Gjovik asked to be **put on leave**]. (Shantini Vyas ) [240]
- **3 Sept 2021**: The real gem here is that **she was complaining that when she goes on the leave SHE wanted** she didn't have access to internal **systems** that ANYONE on leave would be barred from for security reasons at ANY normal company with a decent IT department. Also, The Verge is starting to seem more like that old Babe magazine that did that scummy story about Aziz Ansari that blew up in their face. They seem desperate to find something on this crusade even to the point of just making things up. (9to5Mac.com)[241]
- **3 Sept 2021**: **Doubts have been expressed** about some of Gjøvik's claims, including evidence that **appears to disprove one of them** ... While she didn't specifically state then that this was imposed by the company against her will, this was the very clear implication of her phrasing: that Apple was penalizing a whistle-blower rather than the offender. A former Apple employee revealed that it was in fact **Gjøvik herself who had *requested* to be placed on paid leave.** Apple simply agreed to her request. In those screengrabs, we can see that Gjøvik claims she was 'forced' onto administrative leave. (9to5Mac.com) [242]
- **9 Sept 2021:** Those images are not related to the firing; they just show that **she was not *forced* to take paid leave but *requested* it herself and could have returned to work whenever she wanted.** She refused to respond to a timely sensitive matter where they requested her response within an hour. **She responded by involving the National Labor and Review Board.** So Apple said since she wasn't willing to meet with them they'd go off the information they had already and pulled her credentials. Then they fired her.  (Reddit) [243]
- **9 Sept 2021**: **This might be the truth [Zoe is] choosing to ignore -** but okay. You are a journalist. Not like you have a job to present arguments from both sides and not push an agenda  **(**Shantini Vyas**:** Okay at the risk of *gestures wildly at Twitter*…) (Twitter) [244]
- **9 Sept 2021:** "*A former coworker shared emails casting doubt on the claim that Apple had previously put Gjøvik on administrative leave, and that it **was in fact Gjøvik who requested to be placed on leave.**"* Being caught **red handed in a lie** was enough for me to dismiss Gjøvik, but you are free to support her. (9to5Mac.com) [245]
- **9 Sept 2021** So **she requested to be on a paid leave and refused to come back**, yet publicly made it sound like she had been forced on leave? This person sounds super toxic (Reddit) [246]

---

[239] Twitter, https://twitter.com/_shantini_/status/1433270364440825869 ,
[240] Twitter, https://twitter.com/_shantini_/status/1433297575914971136,
[241] 9to5Mac, https://9to5mac.com/2021/09/03/apple-employee-complaints-labor-board/;
https://web.archive.org/web/20220128062753/https://9to5mac.com/2021/09/03/apple-employee-complaints-labor-board/
[242] 9to5Mac.com: https://9to5mac.com/2021/09/03/apple-employee-complaints-labor-board/;
[243] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[244] Twitter, https://twitter.com/siddhantdas33/status/1436441696745652228
[245] 9to5Mac, https://9to5mac.com/2021/09/09/apple-fires-engineering-manager-ashley-gjovik-for-allegedly-violating-companys-rules/;
[246] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **9 Sept 2021:** The **riposte**: https://mobile.twitter.com/shantini/status/1433270352919072771?s=20 (Reddit)[247]
- **9 Sept 2021:** Those images are not related to the firing; they just show that **she was not *forced* to take paid leave but *requested* it herself and could have returned to work whenever she wanted**. (Reddit)[248]
- **9 Sept 2021:**: She wasn't even fired, it seems, from some twitter person, but **requested leave** https://twitter.com/_shantini_/status/1433297575914971136/photo/2 (Reddit)[249]
- **10 Sept 2021:** @_shantini_ **Shantini** You're brilliant. About A: **The company gave her paid leave,** she wasn't satisfied. She wanted an investigation, she wasn't satisfied. Seemed like she wanted to control her employer. #narcissist #toxic (Twitter) [250]
- **10 Sept 2021:** Just because she made a complaint, doesn't mean she is 100% accurate with her story. If you were following her story, and **how it lead up to the point where she filed a complaint with labor board, you will see some of her complaints makes no sense**. An example, when she spoke about sexism in work place, Apple offered her therapy and medical leave. **But she insisted to go on paid leave**. If you understand what paid leave meant, means you are getting paid for being away from the company without hurting your the allocated holiday/medical leave that every employee receives on a yearly basis. (Engadget) [251]
- **10 Sept 2021:** She **asked for paid leave and claimed it was forced on her**. She asked for an exit package spanning 18 months covering her entire salary, RSU value, and benefits to leave. (HackerNews.com)[252]
- **11 Sept 2021**: *"Despite her objections, Gjovik was placed on administrative leave on Aug. 4"* Except, she even posted the email from Apple showing **she requested to be put on leave.** (Reddit)
- **11 Sept 2021**: She claimed that Apple forced her into paid leave during her investigation. There is an email between her and Apple where it's clearly documented that **it was HER that wanted the leave of absence during her investigation.** She was caught **lying** so even if there's a slight chance that half of what she says is true, she turned the tables on herself, why would you believe anything that she says anymore? (Reddit)
- **11 Sept 2021**: When discussing this case, you should take a look at the member of staff that leaked "receipts" **on this woman proving that her rants were more a petty Vendetta against Apple**. She **constantly lied and twisted issues to go in her favour, while also leaving out key information**. This makes it harder for people with genuine issues to be believed. For instance she **said she was forced in to taking leave when it was all kicking off, yet transcript shows she requested to be put on leave.** (Reddit)
- **11 Sept 2021**: Because there was a screenshot of **her asking for annual leave** while they investigated the issue. The person that leaked this info doesn't work for Apple anymore and has no reason to remain biased. She was also a woman, **calling out this woman's issues and lies.** (Reddit)

---

[247] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[248] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[249] Reddit, https://www.reddit.com/r/apple/comments/plcc8i/apple_fires_senior_engineering_program_manager/;
[250] Twitter, https://twitter.com/beezie_wacks/status/1436474146540589061,
[251] Engadget, https://www.engadget.com/apple-fires-ashley-gjovik-025858158.html,
[252] HackerNews, https://news.ycombinator.com/item?id=28477392;

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **11 Sept 2021**: "Approval to sue" here is a procedural step. It means she took her concerns to the EEOC (Equal Employment Opportunity Commission), and **they decided not to look into/pursue them further and instead to allow her to pursue them in court.** (Reddit) [253]
- **12 Sept 2021: Didn't you request to be put on paid leave**? (Twitter) [254]
- **24 Sept 2021:  Maybe it's time to open your eyes and ears.** Looking at your profile, you seem like a such big fan of hers. If you haven't yet, I suggest you read this thread.[255] **Retweet: Shantini Vyas:** Okay at the risk of *gestures wildly at Twitter* ….(Twitter)
- **26 Sept 2021: She leaked IP** so the retaliatory discharge will be a tough one to prove. She also is now **saying she was suspended and that's not true.** (Cher Scarlett) [256]
- **26 Sept 2021: She asked for the leave**, she just felt she had no choice after they did not want to give a paid exit she asked for. (Cher Scarlett) [257]
- **26 Sept 2021**: **She refused and suggested Paid Admin Leave instead,** which they agreed to give her during the investigation, so her earned paid leave and sick time would be protected. . (Cher Scarlett) [258]
- **9 Oct 2021:** It's so hard to take her seriously. **She's now saying she was suspended, which isn't true**. She is on the record and quoted as saying **she requested paid admin leave** when they wouldn't give her a paid exit and offered medical leave instead. If she would lie about these things, how are we to believe anything else she says? (HackerNews) [259]
- **12 Oct 2021**: Judicial notice is a rule in the law of evidence that allows a fact to be introduced into evidence if the truth of that fact is so notorious or well known, or so authoritatively attested, that **it cannot reasonably be doubted** (Cher Scarlett)[260]
- **14 Oct 2021:** This article seems to have forgotten the part where **Ashley lied about being put on leave.** Based on the emails that came out, **she requested to be put on leave** as opposed to her insinuation Apple forced a leave on her. (Gizmodo) [261]
- **14 Oct 2021:** It's almost as if the public fight was the true goal vs attempting to actually solve anything. Posting screenshots of emails from ER**, misrepresenting how you went on leave**. It's all for clout vs real change. (Gizmodo) [262]
- **20 Oct 2021:** Ashley posted a screenshot of this email from July 27, 2021, **to prove that she did not request paid leave**. In it, it shows **she asks for a paid exit through the remainder of her law education,** at which time she planned to leave Apple (Dec 31, 2022), or alternatively, to be placed in a temporary role within the company, without having to actually apply for the role…. She declined Medical Leave and **asked instead for Paid Administrative Leave** and they accommodated that request.

---

[253] Reddit, https://www.reddit.com/r/apple/comments/pm7lio/fired_apple_employee_who_aired_workplace_concerns/; https://www.reddit.com/r/technology/comments/pmhkne/fired_apple_employee_who_aired_workplace_concerns/;
[254] Twitter, https://twitter.com/AllonsyAlonso85/status/1437301923309408261
[255] Twitter, https://twitter.com/Antrunt/status/1441502291102769154;
[256] Team Blind, See PDF
[257] Team Blind, See PDF
[258] Team Blind, See PDF
[259] HackerNews, https://news.ycombinator.com/item?id=28813010,
[260] Twitter, https://twitter.com/cherthedev/status/1448056466254929926 ,
[261] Gizmodo, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789; https://kinja.com/slushiercupid/discussions
[262] Gizmodo, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789; https://kinja.com/slushiercupid/discussions

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

**After she went on leave, and immediately claimed it was forced on her**, she tweeted the correspondence from HR expressing that if she did not want to be on leave, **she was free to return at any time**. (HackerNews) [263]

**20 Oct 2021:** I feel sorry for her, given the harassment she may have endured over the prior 6 years, but I don't **understand why she felt the need to lie about what has happened in the past few months,** as it completely destroys her credibility, and likely puts her in a situation where (HackerNews) [264]

**29 Dec 2021:** Please check for comment from Apple on Ashley refusing to sign an NDA and turning down a $600,000 settlement. She told me that 1) no lawyer would take her case unless she got fired and 2) they said no to her getting a paid exit and **that is WHY she asked for paid administrative leave.** (Cher Scarlett)

- **5 Jan 2022:** "I found the terminology **"indefinite paid administrative leave" misleading** based on all of the materials I read, including an email from an Apple HR representative you uploaded to your website **which states that it was not indefinite.**" (Cher Scarlett via Gjovik's Wikipedia Page) [265]

- **5 Feb 2022**: **While I initially said you lied about being "suspended"**, though not publicly and to less than FIVE people, I never called you a liar. Those tweets were NOT about you. I was extremely bothered by the fact that you told me you discovered it was an adverse action, and started saying you were suspended, instead of that you felt forced into requesting the leave. (Cher Scarlett) [266]

---

[263] HackerNews, https://news.ycombinator.com/item?id=28830236 ,
https://web.archive.org/web/20220129213718/https://news.ycombinator.com/item?id=28830236
[264] HackerNews, https://news.ycombinator.com/item?id=28830236 ,
https://web.archive.org/web/20220129213718/https://news.ycombinator.com/item?id=28830236
[265] Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:Conflict_of_interest/Noticeboard/Archive_184
[266] Unsolicited email via website webform on Feb 5 2022 (see PDF)

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

## DIVIDE & RULE; BLACK/WHITE FALLACY; FACTIONS

*Divide and rule in politics and sociology is gaining and maintaining power by breaking up larger concentrations of power into pieces that individually have less power than the one implementing the strategy. Black-and-white fallacy: Presenting only two choices, with the product or idea being propagated as the better choice. (e.g., "You're either with us, or against us....")*

- **21 Aug 2021:** Evidently [Ashley Gjovik] may have been **over exaggerating** and our team caught some red flags. We don't take sides unless it's legit. So if your legit today **and a con** tomorrow. We back you today and not tomorrow. (Twitter) [267]
- **30 Aug 2021:** Ashley wrote this l-o-n-g article last March. This will **make you feel very sorry for the Irvine Co, City of Santa Clara, Apple, and especially her future spouse.,** et al, et al.[268]
- **1 Sept 2021:** [Gjovik] has **taken the spotlight** for themselves and deliberately undermined others' concerted efforts to improve and challenge the company. (Shantini Vyas)
- **1 Sept 2021:** Women fight so hard to be believed by our fucked up, sexist society that it's horrifying to **see [Gjovik] hand those bastards a pile of ammunition**. (Kev Kitchens)[269]
- **2 Sept 2021:** the only people benefiting from this is Apple. They can use this as precent to deny future reports and claims of harassment. (Shantini Vyas) [270]
- **2 Sept 2021:** Keep up the good fight Cher. But **why has Ashley disassociated herself from your forum.** She is going through a lot RIGHT NOW and you two need to act in concert (Twitter) [271]
- **3 Sept 2021:** She makes almost $400,000 a year, has Apple-provided health insurance, is being paid to not work at her own request, and trying to get Apple to pay her salary and provide her benefits through the finishing her law degree in December of next year without actually working. **But sure, use the hourly employees** who are actually treated like dog shit and get paid poverty wages to try to get nearly a half million dollars for doing jack shit for the company other than **make publicly misleading and maybe even outright false statements.** (AppleInsider) [272]
- **11 Sept 2021:** This woman is just trying not to look stupid, but failing and **making it harder for those facing real discrimination**. (Reddit)
- **12 Sept 2021:** Your aggressive and paranoid attitude is **doing disservice to the cause**, yes. (Twitter) [273]
- **12 Sept 2021:** oh Because of people like her, **people with legit complaints will be ignored and dismissed.** But she doesn't care, she just wants to make a quick buck. (Twitter) [274]
- **13 Sept 2021:** She's **put the entire movement at risk** with some of the decisions she's made, and hurt her own case. (Cher Scarlett)

---

[267] Twitter, https://twitter.com/VicGardenhire77/status/1429639745018097671
[268] Twitter, https://twitter.com/porter_jared/status/1432454936395689165,2,
[269] Tweet deleted after I announced NLRB charge & named Kitchens (see screenshot for reference instead)
[270] Twitter, https://twitter.com/_shantini_/status/1433419902803759106,
[271] Twitter, https://twitter.com/porter_jared/status/1433630747168968726,
[272] Apple Insider, https://forums.appleinsider.com/discussion/223785, ,
[273] Twitter, https://twitter.com/AllonsyAlonso85/status/1437320220452982784
[274] Twitter, https://twitter.com/AllonsyAlonso85/status/1437330463169916933

# ASHLEY GJOVIK V APPLE INC
## INTIMIDATION, THREATS, & OBSTRUCTION | EVIDENCE REPORT

- **9 Oct 2021:** The more I think about this the madder I get, **because it discredits to me those who are actually getting abused and their ability to tell a story and be believed.** (HackerNews) [275]
- **12 Jan 2022: fck those btches**, special place in hell for women who don't help other women (Twitter)[276]

---

[275] HackerNews, https://news.ycombinator.com/item?id=28813010,
[276] Twitter, https://twitter.com/gbluvsf/status/1481706819303010305,

# EXHIBIT B: Transcript Excerpts from March 1 Hearing

35

```
 1    communications with Kate as -- in your witness statements.
 2    I actually have those conversations that are being
 3    referenced.  I'm wondering if you would like to hear them?
 4       MR. BLAIR:  Is there a question, Your Honor?
 5       THE COURT:  Yeah, basically right now we're supposed to be
 6    asking your questions that you have specifically for
 7    Ms. Gjovik.
 8  Q.  (By Ms. Scarlett)  Okay.  I guess I'd like to know what
 9    conversations did I have with Kate that you viewed were
10    abusive?  Do you have any particular comments?
11  A.  I don't believe I ever made that allegation.
12  Q.  Okay.  I'm curious then what her testimony has to do with
13    your harassment of me?
14       MR. BLAIR:  Is there a question, Your Honor?
15       THE COURT:  Yes, she asked a -- you can repeat your
16    question.
17  Q.  (By Ms. Scarlett)  My question is:  I'm wondering what Kate
18    Rotondo's testimony has to do with your harassment of me?
19  A.  Kate's testimony -- and I don't want to speak on Kate's
20    behalf, she wrote a very thoughtful witness statement that
21    she should take at her face value.  But she was trying to
22    point out a pattern and practice of not just you harassing
23    us, but as soon as we tried to stand up for ourselves, you
24    began attacking us and saying we were harassing you and
25    trying to cut off communications so we could no longer even
```

*March 1 2022 Transcript: Page 35*

36

1    defend ourselves against your harassment, I believe was the
2    point. And that seems very relevant to this.
3        Your Honor, as my filings included, the judge directions
4    for domestic violence retaliatory litigation, which is what
5    this very much feels like. If not retaliation for the
6    federal charges, it seems like this is the retaliation for
7    me, asking, pleading for Ms. Scarlett to stop harassing me,
8    which she had been since September and instead she switched
9    the offender and victim.
10  Q.  So I wrote you one single email in which I apologized for
11       the two things that I said in one single post. How does
12       that -- you haven't presented anything that I have actually
13       said to be harassment. And when I've asked you -- which
14       again, you just said that I harassed Kate, I have our
15       messages here. She was reTweeting things that you were
16       posting that was defamatory, and I said to her that I
17       blocked her because she was lying about me.
18       MR. BLAIR: Is this a question or is it testimony or
19       argument?
20       MS. SCARLETT: I'm just -- I'm trying to understand how
21       she's both saying that I harassed these other two women,
22       which there is no evidence that I have harassed them, and I
23       have evidence that I was not harassing either of them, and
24       what that has to do with Ms. Gjovik's harassment of me.
25       THE COURT: So what's the --

*March 1 2022 Transcript: Page 36*

```
 1          MR. BLAIR:  That sounds like an argument, Your Honor.

 2          THE COURT:  Just tell us the question.

 3   Q.  (By Ms. Scarlett)  Why do you think -- why have you made

 4        statements like that that I am stalking anybody who --

 5        stalking you, coercing you, harassing you, intimidating you,

 6        threatening you, and telling people that bad things will

 7        happen to them if they support you?

 8          Why were you saying that I was harassing, defaming,

 9        swatting, threatening, illegally coercing you to modify

10        federal charges.  Why we were saying -- it should be

11        mentioned that I am currently under investigation by

12        numerous federal agencies and law enforcement for federal

13        witness intimidation and obstruction of justice.

14          Why have you said that I'm in active communication with

15        Apple helping Apple in their campaign of harassment, threats

16        and horror against the safety whistle blower.  Why did you

17        say I'll report you to Apple if I leak Apple's crimes?  Why

18        did you say --

19          MR. BLAIR:  Your Honor, can we have some help here?  I

20        don't know what she's asking.

21          THE COURT:  I just need a question, basically.

22   Q.  (By Ms. Scarlett)  Why do you -- why do you believe that

23        saying these things about me and posting this personal

24        information about me is for a lawful purpose?

25          THE WITNESS:  Your Honor, I'd like to object to this
```

*March 1 2022 Transcript: Page 37*

38

1     question. She's trying to compel me to testify on my

2     federal charges.

3       THE COURT: Ma'am, you've got an attorney. He'll make

4     whatever objections are necessary.

5       MR. BLAIR: I'm going to object for my client, Your Honor.

6     At this point I don't see a question. What I hear is an

7     argument.

8       THE COURT: She asked a question.

9       MR. BLAIR: That's what I think --

10       THE COURT: She asked a question and it is -- she wants to

11     know how Ms. Gjovik thinks this serves a lawful purpose.

12       MR. BLAIR: What serves a lawful purpose?

13       THE COURT: Her posting the things that she's listed.

14       THE WITNESS: I'll answer --

15       MR. BLAIR: Ms. Gjovik, go ahead.

16  A.   Yeah. These are part of my federal and state charges, which

17     have already met prima facie for subsequent harassment after

18     termination of my time at Apple.

19      I'm hesitant to testify to anything specific because it is

20     part of the ongoing investigation.

21      And I will say, I am single handedly representing myself

22     fighting the biggest company in the entire world with a long

23     history of horrible labor abuses and intimidation of anyone

24     challenging it. I'm terrified every single day since I

25     started reporting Apple to the government. I'm terrified

1     for my safety.

8       And rebuttal, Ms. Scarlett.

9       MS. SCARLETT:  You know, you said that, you know, your

10    client has the right to post this information because of the

11    First Amendment.  But in her testimony, she said that the

12    reason that she did so was because of something that I said

13    publicly that she believed to be a lie, and that was that I

14    said that her retaliatory discharge one is going to be tough

15    to prove because she leaked IP.  She actually posted the

16    conversation that I had with her about that leaked IP.

17      And it's hard for me to hear her attorney now argue that

18    she has the right to free speech when she did not give me

19    that right myself.

20      That's it.

21      THE COURT:  Okay.  Thank you.  So give me a minute here.

22      All right.  So I've certainly heard the testimony, I've

23    reviewed the documents.  Both parties have produced a number

24    of documents and a number of written statements, all of

25    those are incorporated in by this reference, including the

*March 1 2022 Transcript: Page 44*

22      And she told mutuals that because -- I had reached out to a

23    mutual friend at the time -- who is no longer a friend of

24    mine, who has actually provided written testimony in this --

25    that I was concerned because something that Ashley told her

*March 1 2022 Transcript: Page 12-13*

1    was not what Ashley had communicated to me multiple times,

2    and all I suggested was to protect herself, she reach out

3    and at least ask so that she could say that she did before

4    she published possibly defamatory information about a

5    company that was trying to harm all of us.

6      And after that, I came into this courtroom because it had

7    continued to escalate.  Saying things that I was trying to

8    destroy her, that I was trying to have her swatted, and

9    that's calling emergency services that are armed in order

10    to -- in the hopes of having them physically harmed.  I've

11    never done that.  I would never do that.  Coercing her.

12    Telling her to remove federal charges.  Bullying her.

13    Saying that I'm under investigation by numerous federal

14    agencies and law enforcement.

15      So I wrote her an email after I came to court because

16    ultimately, again, I did not want any of this to harm her

17    career, to harm her, to do further harm to me.  And I wrote

18    this email and I was like, look, here's all these

19    misconceptions that you've heard, here's the reality of

20    them.  And I even apologized for the things that I said that

21    are nothing, you know, just that one comment that I made.

22      And she decided to escalate further instead.  I said that

23    at that point I had no choice but to hire a process server

24    for this proceeding.  And the way that she represented that

25    was that I -- a member of Apple's global security hired

*March 1 2022 Transcript: Page 14*

1     someone to track down and find her at her home and hand her

2     something physically. So, again, making these statements

3     that are -- not necessarily full on lies, but complete

4     misrepresentations that do nothing but to try to maliciously

5     frame that I have done something that I haven't done.

6      With the NLRB charge -- I'm not bringing up the charge

7     specifically. I'm talking specifically about Ashley --

8     excuse me, Ms. Gjovik, posting -- publishing these things on

9     a platform called Scribd, which actually removed it for

10     account abuse. A platform of her website. These are not

11     government websites that are hosting these, these are things

12     that Ashley -- that Ms. Gjovik is writing herself and

13     publishing herself that she is claiming are related to these

14     federal charges. But they're really just her, and that's

15     who is publishing this information. She's just doing it

16     under the guise that it is federally protected.

*March 1 2022 Transcript: Page 15*

9      On January 11th: "I recommend you send this document

10     retention notice and some sort of cease and desist missive

11     to them now."

*March 1 2022 Transcript: Page 17*

SEE EXHIBIT E

**Exhibit G: Web Host Complaint**

**[8] Web.com Customer Support [OEML-136079]**

From → 🔒 noreply@web.com     ☆ 🟩 📎 March 2nd, 2022

To   Ashley Gjovik <ashleygjovik@icloud.com>

Wednesday, March 2nd, 2022 at 6:56 AM

🔴 This email has failed its domain's authentication requirements. It may be spoofed or improperly forwarded! Learn more

# web.com®

Dear Ashley,

Thank you for contacting Web.com. We are committed to assisting people in taking action against fraudulent activity.

Web.com has received the complaint below regarding website activities associated with your domain name ashleygjovik.com. Please take a moment to review the complaint and respond directly to the Complainant to address any issues to resolve the complaint.

From: me@cher.dev

Subject: Inappropriate Content - Child pornography complaint
Domain: ashleygjovik.com
Description: I have a protection order (attached) against the person who owns this domain and posted this document. This disallows her from continuing to post about me and my family, which is the majority of this document.

The file is located here: https://www.ashleygjovik.com/uploads/1/3/7/0/137008339/ashley_gjovik_v_apple_inc_-_intimidation_and_threats_evidence_report.pdf
Attachments: C3E65AB7-5A8C-4865-BA13-349BDF2A9492.jpg,F7A18629-3BA3-485A-B68B-5FE0F7591243.jpg

I hope this information has been helpful. We appreciate your business!

How did the respondent make these statements? ☐ in person ☐ mail/written notes
☐ e-mail ☐ text ☐ phone ☒ social media (such as Facebook and Twitter)
☐ other (describe): _____.

**B.** Describe other incidents of harassment or stalking. For <u>each</u> incident, include the date, time (on or about), location, what was said, how statements were made, and what was done to a victim.

because of the monetary value associated with her demands in exchange to stop harassing me. Another friend, Janneke Parrish, also tried to get her to stop, she said she made similar possibly extorting requests to stop.

I also reported her behavior to her University, and to Twitter. Neither of these seems to have deterred her from continuing to engage in the harassment.

On January 11, 2022, she filed an NLRB charge against Apple, Inc, claiming that I was harassing her on Apple's behalf. I have not harassed her. On January 31, 2022, she published a "memo" for that charge containing defamatory and private information about me (and others) on a platform called Scribd. Ordinarily, this information would be redacted and confidential by the NLRB. She has shopped this information around to the press in an attempt to make it public record, for malicious purposes. Much of the information she has reposted is my personal medical information, which I have not given her consent to share.

https://www.scribd.com/document/555822358/US-NLRB-Ashley-Gjovik-Apple-Inc-Jan-10-2022-Charge-Draft-1

https://twitter.com/ashleygjovik/with_replies (there's a lot more here)

https://twitter.com/ashleygjovik/status/1479956961705795585

https://twitter.com/ashleygjovik/status/1480295321284472835

https://twitter.com/ashleygjovik/status/1480326596376477696

https://twitter.com/ashleygjovik/status/1481027837163311104

**6.** How did the incidents you describe above make you, the minor, or the vulnerable adult feel?

I am looking for another place to move to immediately for our safety. I am scared of what she will do if no one stops her. I am afraid of what will happen if her charges are not meritous. I am afraid of this woman and her followers.

12. Is there any other litigation between the victim/s and the respondent? This includes all matters - pending or past - such as parenting plans, landlord-tenant disputes, employment disputes, or property disputes. If yes, provide case number/s if known, type of case, and name of court:

> NLRB Charge CA-288816 - charge against Apple, Inc, which contains false/misleading information about me made in bad faith by Ashley Gjovik

## ➢ Requests

**13. I ask the Court for an order approving the following requests for protection:**

I Request an **Order for Protection** following a hearing that will:

☒ **No-Contact**: Restrain the respondent from making any attempts or having any contact, including nonphysical contact, with the person/s to be protected, directly, indirectly, or through third parties regardless of whether those third parties know of the order, except for mailing of court documents.

☒ **Surveillance**: Prohibit or restrain the respondent from making any attempt to keep or from keeping the person/s to be protected under surveillance, including electronic surveillance.

☐ **Exclude from places**: Exclude the respondent from the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected.

☐ **Stay Away**: Prohibit or restrain the respondent from entering or being within, or from knowingly coming within, or knowingly remaining within _____ (distance) of the ☐ residence ☐ workplace ☐ school ☐ day care of the person/s to be protected. ☐ other locations: _____

☐ **Other**:
Stop harassment on Twitter and other social media platforms

☐ **Evaluation**: Order the respondent to have a ☐ mental health ☐ chemical dependency evaluation. ☐ other: _____

☒ **Pay Fees and Costs**: Require the respondent to pay fees and costs of this action, which may include administrative court costs and service fees and petitioner's costs including attorneys' fees.

☐ **Surrender Firearms**: Require the respondent to immediately surrender all firearms, other dangerous weapons, and any concealed pistol licenses, and prohibit the respondent from accessing, obtaining or possessing firearms, or other dangerous weapons, or concealed pistol licenses.

☒ **Duration**: Remain effective longer than one year because respondent is likely to resume acts of unlawful harassment or stalking conduct against the persons to be protected if the order expires in a year.

Pt for an Or for Protection – Harassment/Stalking (PTORAH, PTORSTK) – Page 6 of 7
WPF UHST-02.0200 (07/2019) – RCW 10.14.040, .800, RCW 7.92.030
KCDC July 2019