**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY M. GJOVIK**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **NOTICE OF PENDENCY** |
| | Civil L.R. 3-13 |
| vs. | |
| | *Ashley Gjovik v Apple Inc,* |
| | ARB Case No. 2024-0060, |
| | OALJ Case No. 2024-CER-00001 |
| **APPLE INC.**, a corporation, | |
| Defendant. | |

# I. NOTICE OF ADMINISTRATIVE PENDENCY

Plaintiff files this notice of administrative pendency regarding her COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT (CERCLA) whistleblower claim currently with the U.S. Department of Labor. The CERCLA (toxic waste dump laws) provides statutory protection from whistleblower retaliation under 42 U.S.C. § 9610. [Exhibit D].

Plaintiff filed a whistleblower retaliation complaint in August of 2021. These types of environmental whistleblower claims proceed through federal OSHA Wage & Hour before being allowed a de novo hearing with an ALJ at the U.S. Dept. of Labor OALJ. The hearing is supposed to be a formal A.P.A. adjudication. OSHA did not release Plaintiff's claim until December of 2023 and she filed a timely request for de novo hearing with OALJ on January 7 2024.

Per 29 CFR Part 24, appeals of OALJ decisions go to the U.S. Dept. of Labor Admin. Review Board, and then there is an optional review by the Sec. of Labor if they so choose. After that, then the CERCLA decision is appealable to a U.S. District Court. *Id*. [Exhibit E].[1] If the case also has additional environmental statutes beyond CERCLA, then those claims are appealable to an appellate court, not a District Court. Plaintiff did request inclusion of additional statutes (RCRA, CAA, and TSCA), but her request was denied by the ALJ.

The U.S. Dept. of Labor OALJ ALJ abruptly dismissed Plaintiff's CERCLA case on August 7 2024. [Exhibit C]. Plaintiff timely filed a request for appellate review to the U.S. Dept. of Labor ARB on August 21 2024, and review was granted on August 27 2024. [Exhibit A and B]. The ARB case is *Ashley Gjovik v Apple Inc,*

---

[1] 29 CFR, § 24.112 Judicial review. "(d) Under the CERCLA, after the issuance of a final order... for which judicial review is available, any person adversely affected or aggrieved by the order may file a petition for review of the order in the US district court in which the violation allegedly occurred. For purposes of judicial economy and consistency, when a final order under the CERCLA also is issued under any other statute listed in §24.100(a), the adversely affected or aggrieved person may file a petition for review of the entire order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation."

ARB-2024-0060, 2024-CER-00001.

The U.S. Dept. of Labor ARB issued a Notice of Appeal Acceptance today, August 27 2024, and scheduled the briefing deadlines with the opening brief due in 28 calendar days, the response brief due 28 calendar days after, and then a reply brief due 14 calendar days after that. [Exhibit A].

This adjudication is not a state or federal Court proceeding, as described under Civil. L.R. 3-13, however it may present itself for appellate review in this Court in the near future, either by appeal of Plaintiff or Defendant. Plaintiff also requested that ARB consider if, after correcting the mistakes of law, that she may be allowed to "kick out" the claim for its de novo hearing within this federal civil lawsuit, if this Court also approves. There have only been a handful of CERCLA whistleblower retaliation cases under 42 U.S.C. § 9610 since the law was enacted in the 1980s, so there is not much procedural precedent.

This Notice of Pendency is filed for the Court's awareness.

Dated: August 27 2024

/s/ Ashley M. Gjovik
*Pro Se Plaintiff*

# EXHIBIT A

**U.S. Department of Labor**     Administrative Review Board
200 Constitution Ave. NW
Washington, DC 20210-0001



IN THE MATTER OF:

| | |
|---|---|
| **ASHLEY GJOVIK,** | **ARB CASE NO. 2024-0060** |
| **COMPLAINANT,** | **ALJ CASE NO. 2024-CER-00001**<br>**ALJ JERRY R. DEMAIO** |
| **v.** | |
| | **DATE: August 27, 2024** |
| **APPLE, INC.,** | |
| **RESPONDENT.** | |

**NOTICE OF APPEAL ACCEPTANCE,
ELECTRONIC FILING REQUIREMENTS, AND
BRIEFING ORDER**

    **PLEASE TAKE NOTICE** that on August 21, 2024, Complainant Ashley Gjovik filed a Petition for Review with the Administrative Review Board (Board) of Administrative Law Judge Jerry R. DeMaio's Omnibus Order and Dismissal, issued on August 7, 2024.

1.    **ACCEPTANCE OF APPEAL.** The Board has accepted this matter for review and assigned it the case number noted above. All future filings related to this matter must include this case name and ARB Case Number. All filers are required to comply with the Board's rules of practice and procedure found in 29 C.F.R. Part 26, which can be accessed at https://www.ecfr.gov/current/title-29/subtitle-A/part-26.

2.    **ELECTRONIC FILING AND SERVICE**

    A.    **Use of the EFS System**

        The Board's Electronic Filing and Service (EFS) system allows parties to initiate appeals electronically, file briefs and motions electronically, receive electronic service of Board issuances and documents filed by other parties, and check the status of appeals via an Internet-accessible interface. Use of the EFS system is free of charge to all users. To use the EFS system go to https://efile.dol.gov.

- **Attorneys and Lay Representatives:** Use of the EFS system is **mandatory for all attorneys and lay representatives** for all filing and all service related to cases filed with the Board, absent an exemption granted in advance for good cause shown pursuant to 29 C.F.R. § 26.3(a)(1), (2).

- **Self-Represented Parties:** Use of the EFS system is **strongly encouraged for all self-represented parties** with respect to all filings with the Board and service upon all other parties. Using the EFS system provides the benefit of built-in service on all other parties to the case. Without the use of the EFS system, a party is required to not only file its documents with the Board but also to serve copies of all filings on every other party. Using the EFS system saves litigants the time and expense of the required service step in the process, as the system completes all required service (after all parties are registered users in the system). Upon the parties' proper use of the EFS system, no duplicate paper filings are required.

Self-represented parties who choose not to use the EFS system must file all pleadings, including briefs, appendices, motions, and other supporting documentation, by mail or by personal or commercial delivery directed to:

> Administrative Review Board
> Clerk of the Appellate Boards
> U.S. Department of Labor
> 200 Constitution Avenue, N.W., Room S-5220
> Washington, D.C., 20210

Please note that the Board's rules at 29 C.F.R. § 26.3(a)(4) specify that "[u]nless a different time is set by statute, regulation, executive order, or judge's order, a document is considered filed when received by the Clerk of the Appellate Boards." This means that unless otherwise set by law, under the Board's regulations, a mailed document is not filed with the Board upon mailing or postmark date, but instead is filed upon receipt of the document by the Clerk's office. In contrast, documents filed through the system are received as of the date and time recorded by the EFS system, and, per 29 C.F.R. § 26.2(b)(2)(i), are timely as long as they are received at or before 11:59:59 Eastern time on the due date (i.e., the last minute and second of the day it is due).

The filing party must also serve all other parties to the case by a method of service authorized under applicable law or rule.

- **Non-Party Participants:** Amici or other non-party participants in a case filed before the Board, if represented by counsel or a lay representative, are required to use the EFS system for all filing and service.

**B.**     **EFS Registration and Duty to Designate E-mail Address for Service**

To use the Board's EFS system, a user must have a validated user account. To create a validated EFS user account, a user must register and designate a valid e-mail address by going to https://efile.dol.gov, select the button to "Create Account," and proceed through the registration process. If the user already has an account, they may simply use the option to "Sign In."

In order for any other user (other than the EFS user who filed the appeal) to access the appeal, the user must submit an access request. To submit an access request, users must log into the EFS System, select "eFile & eService with the Administrative Review Board," select the button "Request Access to Appeals," search for and select the appeal the user is requesting access to, answer the questions as prompted, and click the button "Submit to DOL."

Information regarding registration for access to and use of the EFS system, including for parties responding to a filed appeal, as well as a step-by-step User Guide, answers to frequently asked questions (FAQs), video tutorials and contact information for login.gov and EFS support can be found under the "Support" tab at https://efile.dol.gov.

**C.**     **Effective Time of Filings**

Any electronic filing transmitted to the Board through the EFS e-File system by 11:59:59 Eastern Time shall be deemed to be filed on the date of transmission.

**D.**     **Service of Filings**

- **Service on Registered EFS Users:** Service upon registered EFS users is accomplished by the EFS system.

- **Service on Other Parties or Participants:** Service upon a party that is not a registered EFS user must be accomplished through any other method of service authorized under applicable rule or law.

**E.**     **Proof of Service**

Every party is required to prepare and file a certificate of service with all filings. The certificate of service must identify what was served, upon whom, and in what manner. Although electronic filing of any document through the EFS system will constitute service of that document on all EFS-registered parties, electronic filing of a certificate of service through the EFS system is still required. **Non EFS-registered parties must be served using other means authorized by law or rule.**

## 3.   BRIEFING REQUIREMENTS

### A.   Briefing Schedule

- **Opening Brief:**  Within 28 calendar days of the date of this Order, the petitioner must file with the Board a supporting legal brief of points and authorities. The Opening Brief may not exceed 50 double-spaced pages.

- **Response Brief**:  Within 28 calendar days from the date of service of the petitioner's Opening Brief, the opposing party may file with the Board a Response Brief in opposition to the Opening Brief. The Response Brief may not exceed 50 double-spaced pages.

- **Reply Brief**: Within 14 calendar days from the date of service of a Response Brief, the petitioner may file with the Board a Reply Brief. The Reply Brief may not exceed 20 double-spaced pages.

No additional briefs may be filed without the prior written permission of the Board, issued by Order.

### B.   Motions and Responses

- **Motions:** All motions and other requests for extraordinary action by the Board including, but not limited to, requests for extensions of time or to exceed page limitations, shall be in the form of a motion. Motions may not exceed 30 double-spaced pages.

Before filing any motion or other request for non-dispositive action or relief with the Board, including any request for an extension of time, the moving party must make a good faith effort to confer with all other parties to ascertain whether they consent to the action or relief sought. The moving party must state in its motion whether the other parties' consent to the action or relief sought or, if no conference occurred, the efforts the moving

party made to confer with the other parties. Any motion for non-dispositive action or relief that fails to include this information may be summarily denied.

- **Response to motions:** Any party may file a response to a motion. Any response must be filed within 10 calendar days after service of the motion unless the Board shortens or extends the time. Responses may not exceed 30 double-spaced pages.

- **Replies to Responses**: Any movant may file a reply to a response. A reply must not present matters that do not relate to the response. Any reply to a response must be filed within 7 calendar days after service of the response. Responses may not exceed 12 double-spaced pages.

## C.    Withdrawals and Settlements

Several of the Board's program regulations provide for withdrawals of appeals and settlements. Requests to withdraw an appeal or for approval of a settlement must be made by motion to the Board. For regulations requiring Board approval of settlements, parties must submit a fully executed and dated copy of the settlement agreement to the Board with its motion to dismiss based on settlement. Motions to withdraw under regulations requiring Board approval of settlements that are not based on settlement, must certify under penalty of perjury that the withdrawal is not based on a settlement. Any motion that fails to comply with these requirements may be summarily denied.

## D.    Appendix and Exhibit Filings

The Board already possesses the entire record. It is not allowed for any party to file the entire record as an appendix or exhibit. Parties are only permitted to file an appendix containing specific cited portions of the record relied upon in a party's accompanying filing.

Any filed appendix shall consist only of well-labeled excerpts from the record that are directly cited in the brief, motion or other filing accompanying the appendix. Parties may not include in an appendix any evidence not already contained in the record, without prior written permission granted by Board order.

Parties seeking to file new evidence must file a motion with the Board with supporting argument. The Board retains the authority to reject any appendix or exhibit filings that do not meet these requirements.

E.     **Page Limitations**

The page limitations set forth in this Order do not include cover pages, tables of contents, tables of citations, signature blocks, or certificates of service. A motion to exceed an identified page limitation must specify why additional pages are required. Such motions will not be granted except in extraordinary circumstances.

If a brief or motion is filed without approval that exceeds the stated page limitations, the Board may, with or without notice: (1) refuse to accept the filing; (2) strike the filing with leave to refile a compliant filing within a specified time; (3) disregard the pages of the filing that exceed the page limitation; or (4) issue any other appropriate order, including the issuance of sanctions.

F.     **Required Format:**  All pleadings, briefs, and motions must comply with the following requirements:

- 12-point, 10 character-per-inch type or larger font
- Double-spaced
- Minimum of one-inch margins
- Capable of being printed on 8.5- by11-inch paper

4.     **INQUIRIES AND CORRESPONDENCE:** After an appeal is filed, all inquiries and correspondence related to filings should be directed to the Office of the Clerk of the Appellate Boards by telephone at 202-693-6300 or by fax at 202-513-6832. Other inquiries or questions may be directed to the Board by telephone at (202) 693-6200 or by email to ARB-Correspondence@dol.gov.

**SO ORDERED.**

**FOR THE ADMINISTRATIVE REVIEW BOARD**
**PURSUANT TO DELEGATED AUTHORITY:**

**Thomas O. Shepherd, Jr.**
**Clerk of the Appellate Boards**

# EXHIBIT B

**Ashley M. Gjovik, JD**
*In Propria Persona*
(408) 883-4428
legal@ashleygjovik.com

# U.S. Department of Labor

## Administrative Review Board

## Washington, D.C.

| | |
|---|---|
| **Ashley M. Gjovik**, *an employee*, | **OALJ Case:** 2024-CER-00001 |
| Appellant/Complainant, | **eFile Case**: ARB-2408-799556 |
| vs. | **Appellant/Complainant's Petition for Review** |
| **Apple Inc.**, *a corporation & employer*, | **Petition Filed & Served:** Aug. 21 2024. |
| Appellee/Respondent. | **Supplement Served**: Aug. 22 2024. (awaiting eFile access to file.) |

## Appellant/Complainant's Petition for Appeal

1.     Appellant/Complainant, Ashley Gjovik, respectfully submits this petition requesting review the OALJ's August 7 2024 Decision and Order for CERCLA whistleblower case 2024-CER-00001.  The request for appeal was filed within 10 business days following the decision (August 7 2024), with the initial Petition for Review filed by Appellant on August 21 2024 at 11:56 PM. (*see*, eFile No. ARB-2408-799556).

2.     This is a supplemental filing with the assignment of errors and objections. Copies of the initial petition and this supplemental petition are in the possession of USPS and are enroute to all required parties. Appellee was also notified through email with attached copies of all filings. Please see attached Certificate of Service.

## Objections & Assignment of Issues

3.     Appellant objects to the following conclusions, assertions, decisions, and orders within the August 7 2024 Decision and Order. Gjovik believes these points are all reversable errors, highly prejudicial, and all are material to the outcome of this adjudication. Gjovik also urges the ARB to take a hard look at the whole record and evaluate the matter de novo.

4.     The August 7 2024 Decision and Order is contrary to all US Dept. of Labor Secretary's decisions and guidance on environmental whistleblower cases. It also directly contradicts decisions already made on the same matters between the same parties by a U.S. Judge on May 20 2024 in Gjovik's active federal civil lawsuit. (A copy of the 50-page decision was submitted to the OALJ record on May 22 2024, over two months before this dismissal.)

5.     This petition will summarize the assigned errors of law, errors of fact, mixed issues, procedural errors, violations of due process, and discretionary

issues. This petition will also identify the unfortunately lengthy list of ways the ALJ's August 7 2024 Decision and Order violates the APA, CERCLA, and the U.S. Constitution (related to at least Separation of Powers, Non-Delegation, Due Process, and Judicial Restraint / Avoidance Doctrines).

6.    All points made herewith-in were already expressly raised in Gjovik's Opposition, Reply, and Sur-reply filings to OALJ (other than peculiarities in the Decision itself). The ALJ referenced Gjovik's responsive filings and arguments zero times. This petition is written as an essay because there were no actual findings of fact or law in the Decision, so its difficult to assign errors in the typical format.

## ISSUES OF FACT

7.    There are few issues of fact to assign because there are not many facts included in the ALJ's Decision. The ALJ does not provide a factual basis cited to the record for his decision. Further, there are ~10 references to the Amended Complaint in the Decision, and the majority of those references are citations to a range of paragraphs linked to a general assertion or cited as a basis for a legal conclusion. There are also ~10 references to the checkbox webform entry Gjovik submitted to US DOL on August 29 2021 and a second form with a paragraph of informal text that Wage & Hour wrote themselves in December 2021 without consulting Gjovik and refused to correct after. Gjovik repeatedly objected to this with OSHA and OALJ.

8.    There are no references in the Decision to any of the complaints that Gjovik drafted herself in 2021. However, the ALJ does references some 'facts' from Apple's Motion to Dismiss and Opposition to Motion to Amend. The ALJ does not attempt to reconcile conflicting factual claims or evidence, but instead gives deference and priority to Apple's version of events.

9.    Starting at *Section II: Motion to Amend* (following *Procedural History*), there are around 7 pages of text total in the Decision. 2 of the 7 pages are dedicated

to listing dozens of paragraphs of Gjovik's claims the ALJ improperly approved to strike from the case; atry2.5 pages discuss in detail what is essentially several rules the ALJ enacted himself and which are contrary and disruptive to the Secretary's stare decisis; and another 2 pages analyze substantive provisions of a US EPA statute that is unrelated to whistleblower retaliation and the US Dept. of Labor has no authority to try to interpret (let alone try to promulgate decisions about Apple's 'liability' under substantive enforcement provisions in those statutes which are exclusively governed by the US EPA and US DOJ.)

10.     There are no findings of fact, and the legal analysis repeatedly explains the Motion to Dismiss was granted and Motion to Amend denied partially due to insufficient facts, yet concurrently acknowledges there would be enough facts to plead those claims if the ALJ had not decide to strike those facts due the rule he just came up with about street addresses and webforms.

11.     Further, a detailed brief was filed by Gjovik on January 7 2024 and incorporated into the Motion to Amend, but was never referenced in the Decision either. Gjovik also tried to provide numerous exhibits to help the ALJ understand the facts and technical details, and the Decision claims the ALJ reviewed them, but the ALJ never references them, and even write that he does not want to talk about them (the evidence).

12.     There are also significant facts and events the ALJ failed to acknowledge – such as the US EPA conducting a CERCLA inspection of Apple's facility in August 2021 due to Gjovik's July 2021 CERCLA disclosures. There are too many omissions to list individually so this is a general objection that the majority of material facts alleged by Gjovik were never reflected in this decision at all.

13.     The ALJ did acknowledge there is an active, concurrent federal lawsuit on these matters and Gjovik submitted both the civil complaint in that lawsuit ("4AC") as well as the May 20 2024 decision approving a dozen of her

claims to move forward, including claims with similar and overlapping facts and questions as in this adjudication. She also filed a copy of the civil Joint Case Management Statement on June 23 2024 and urged coordination between the tribunal and court due to overlapping claims. Despite this, the ALJ gave no deference to the prior determination by a U.S. Judge and instead issued a Decision that is mostly the opposite of the judicial decision despite being about overlapping facts.

14.    The ALJ also overstepped far outside his statutory authorization in declaring the legal status of Apple's activities under non-DOL statutes and without fact finding or an evidentiary hearing. The question of who is an "*operator*" with CERCLA strict liability, if it was even relevant here, is a question of fact that requires investigation by the U.S. EPA, not U.S. DOL.

## Issues of Law (& Mixed Issues)

15.    The August 7 2024 decision is fundamentally incorrect. It is not based on the facts alleged, nor does it rely on relevant or appropriate law. If an ALJ does not cite to facts in the record, then there are no findings of fact, and the decision is not supported by substantial evidence. If the ALJ does not cite relevant law as a basis for decisions, then there are also no findings of law. The ALJ did not actually issue a Decision, but instead essentially sent Gjovik a 7-page letter.

16.     These environmental whistleblower cases are quite rare, especially CERCLA cases, so this may have been his first experience, and he may not have been aware of the unique, dedicated case law and procedure.

17.    The August 7 2024 Decision cites CERCLA substantive provisions governed by the US EPA (not US DOL) at least 5 times, cites a SCOTUS case about substantive CERCLA law at least three times, cites to 9th Circuit decisions about CERCLA and civil procedure at least 6 times, cites to 1 California U.S. District Court case about substantive CERCLA law, and cites the FRCP at least 4 times. That might be fine if this was substantive CERCLA case at a US District

Court located in California, but this is an agency tribunal in Boston deciding retaliation claims. The ALJ also mistakes the FRCP's applicability for amending environmental whistleblower complaints, as amendment is included in the CFR for these cases and there is supporting environmental whistleblower case law which is a different standard then FRCP – so the FRCP and 9th Circuit is not applicable, and US DOL cases should have been cited instead.

18.     The ALJ's Decision cites the 1st Circuit zero times, cites the CFR around six times but two of the citations are errors of law, and cites U.S. Dept. of Labor cases 3 times - but 2 of the references are only related to Motions to Dismiss generally and only 1 of the references is related to CERCLA. The ALJ cites zero U.S. Dept. of Labor cases about the CAA, TSCA, or RCRA. In total, in appears the ALJ cites one single US Dept. of Labor case as the substantive legal basis for the entire decision on four whistleblower claims.

19.     The majority of the Decision is spent discussing new rules the ALJ just created himself about environmental whistleblower retaliation cases. The ALJ unilaterally restricted the coverage of environmental whistleblower statutes to now only apply to one single, physical street address - and it must be where the worker's desk is assigned, and it must be the address the worker entered when the worker submitted their first complaint to OSHA.[1] Only protected activities and retaliation that occurred at that one street address are protected – but nothing else. (This is contrary to all U.S. Dept of Labor case law and regulations).

20.     The ALJ also narrowed the scope of coverage of CERLCA protections to only a facility that is an NPL Superfund site, and is the address the worker entered on the OSHA form, and it's the location where their desk is – and then the worker will only have protection if their employer is also in binding contract with the US EPA as an official Responsible Party of that specific NPL Superfund

---

[1] The "work site" address field is annotated in the DOL Whistleblower Manual as being entirely for OSHA regional offices to reference when they assign investigators to the matter.

site. (This is also contrary to all U.S. Dept of Labor case law and regulation).

21.     Apple's assertions about the status and effect of the Record of Decision are not based on fact or law. Whistleblower protection is not limited by a Record of Decision, and factually the Record of Decision for the TRW Microwave site is expired and no longer in operation – requiring a new remedy and new Record of Decision, which Gjovik pointed out in her filings and the ALJ never read it or ignored it.

22.     Further, there are only ten meritorious CERCLA whistleblower decisions since the statute was enacted and none of those cases would pass this new test. The majority of those cases involved situations where the issues occurred at a location that was not an NPL Superfund site, and/or the employer was not the Responsible Party.

23.     The ALJ also created a rule where there must be 1 NPL Superfund site involved for a CERCLA claim, but there cannot be more than 1 NPL Superfund site involved. This was the ALJ's justification for 'striking' any mention made to the "*Triple Site*," which is the name for the mega-groundwater plume that the TRW Microwave office's plume is part of and thus is the same address. The content the ALJ tries to strike is incredibly disruptive, irrational, and prejudicial. He does not explain why each stricken part is irrelevant but instead essentially strikes everything Apple told him to strike, even if those facts are actual material and central to the lawsuit.

24.     The ALJ also restricts CERCLA whistleblower protection to now only cover violations of CERCLA that definitely impact the public and environment. (This is actually the test only for 'releases' under CERCLA and other environmental statues – but is not the test for activities unrelated to 'releases' like violations of the statute, regulatory compliance matters, fraud, contracts, and so on.). Because the ALJ requires a formal NPL Superfund site to in order to establish coverage, and 'releases' usually create a NPL Superfund site later, and

the majority of meritorious CERCLA cases have not been about releases – this is another way the ALJ essentially nullifies the CERCLA whistleblower protection statute.

25.     The ALJ's Decision also includes errors of law that were less novel, and which Gjovik had cited extensive U.S. Dept. of Labor case law trying to explain and correct to no avail. The ALJ fell for Apple's argument that Apple must be liable under the substantive environmental statute in order for there to be whistleblower protection coverage. There are a number of cases where employers made this argument and ALJ's went along with it, but then ARB explained that coverage of retaliation statutes and liability under the substantive statutes are completely different things. The ALJ errored in not researching the law and also not reading Gjovik's arguments and/or ignoring the law she provided.

26.     Another common pitfall in these cases that this ALJ fell into is going along with an employer's argument to narrow the claims as much as possible at the start of the proceeding. Instead, the U.S. Dept. of Labor precedent is to ensure the complaint conforms to the evidence – not the other way around. Similarly, the ALJ went along with the employer's arguments that things OSHA did to the employee or said about the employee should gatekeep the employee from getting a truly de novo hearing. The ALJ also went along with the employer's claims that the employee's complaint is not based on evidence of what the employee actually complained about. Here, Gjovik repeatedly tried to get the ALJ to review evidence, provide an evidentiary hearing, or otherwise review what was actually said in order to determine the complaint scope – but the ALJ refused. OSHA's determinations are supposed to be irrelevant following the request for a hearing, but the ALJ insisted that OSHA defined the scope of the proceeding with the August 29 2021 webform.

27.     Despite the ALJ's Judicial Activism, there was not much actual policy analysis (despite Gjovik detailing relevant public policy and the legislative history

extensively her responses).

28.    Many of the mixed fact/law issues are practical and common sense, but the ALJ must have been swept up in the passionate yet completely irrational legal arguments made by Apple's counsel. For example, below are corrections of a few of the ALJ's false assertions from the Decision:

- Evidence that the employee's reports of CERCLA non-compliance to the EPA led to an onsite EPA CERCLA inspection of the site, about those issues, formally due to the whistleblower's disclosures – is not completely irrelevant to a CERCLA whistleblower claim.

- Concerns about compliance with the administrative controls (including CERCLA covenants and the Records of Decision – contracts) do not "relate entirely to the safety of [the employees] workplace."

- Complaints and concerns about noncompliance with the employer's CERCLA EPA reporting requirements, via explicit instructions in a CERCLA Land Use Covenant about compromised engineering controls, do not "relate entirely to the safety of [the employees] workplace" (instead of CERCLA).

- Concerns about the tenant/operator at a Superfund site not informing the Responsible Party and US EPA about issues with the CERCLA engineering controls does not "relate entirely to the safety of [the employees] workplace" (instead of CERCLA).

- If contractors or visitors (such as small children) come to the Superfund site and occupy areas of the building/site with known releases, it is not "unrelated" to the impact to the public from the site.

- Vapor intrusion is impacting the public when vapor intrusion from the Superfund site is occurring outside the parcel the building is on and impacting the surrounding community.

29.    Another mixed issue was the assertion that all of Gjovik's activities

— 9 —

were only related to safety. This assertion was made a few times but was not based on any findings of fact from Gjovik's pleadings, and instead was repeating Apple's unsupported arguments. Gjovik also researched and cited extensive U.S. Dept. of Labor case law about this topic, but the ALJ never addressed it. CERCLA is a very unique statute as it focuses on a noun, not a verb – its focus is toxic waste dumps. It's similar to the ERA in that sense, and similarly has large overlaps with safety concerns (i.e., HAZWOPER, etc.) Gjovik also engaged in numerous protected activities that were not safety related.

30.   Finally, the ALJ failed to identify and analysis the correct legal standards for Motions to Dismiss environmental whistleblower cases – which is based on *Varnadore*. The ALJ also failed to identify the test for prima facie complaints, including explaining the two reasonableness tests. Gjovik explained these tests in her filings, citing to the appropriate US Dept. of Labor case law, but the ALJ either did not read her filings or ignored her arguments.

31.   In outlining the prima facie case with the objective and subjective reasonableness tests, it quickly becomes clear that Apple's strawmen and red herring with the "*operator*" and "*record of decision*" arguments are irrelevant to a motion to dismiss.

**Issues with Procedure and Due Process**

32.   This section also integrates all the other sections in this petition, as almost all of the issues were a mistake of procedure, abuse of discretion, and/or violation of Gjovik's due process rights. In addition, there are a few glaring policy and practice points worth highlighting:

-   CERCLA whistleblower cases at US DOL cannot be decided almost entirely on federal civil precedent and statutes unrelated to the whistleblower provisions and Dept. of Labor precedent.

-   The employee's prior experiences with environmental issues show the employee's reasonableness, and those experiences should not be stricken

nor should evidence be excluded.

- Similarly, generally, evidence relevant and important to a CERCLA claim should not be excluded, and stricken from a complaint, if that evidence happens to mention other environmental statutes.

- Similarly, evidence relevant and important to a retaliation claim should not be excluded, and stricken from a complaint, because that evidence did not physically occur at the street address where the employee's desk is assigned.

- If there is already evidence that some of the unlawful retaliation was due the employee's protected activities under other environmental statutes, that evidence should not be excluded and stricken, but instead the complaint and claims should be amended to reflect what actually happened.

- An environmental whistleblower's request to amend their complaint should be granted if conforms the complaint to the evidence.

- Motions for Judicial Notice should be granted to support Opposition to a Motion to Dismiss in an environmental whistleblower case when the documents to be Judicially Noticed are proper and directly relevant to the matter at hand and would otherwise change the outcome of the decision.

- It was improper to deny or ignore Gjovik's requests to provide evidence of the substance of her initial communications with OSHA about her whistleblower complaints as that was part of her initial complaints and precedent reflects that as a typical process at the start of adjudication.

- Environmental whistleblowers are allowed to add additional claims and adverse actions once they get to OALJ, as long as it's generally related and not unreasonable. The OSHA process is not 'litigation', and the adjudication starts with the OALJ docketing. (Gjovik requested to amend immediately when she requested her OALJ hearing).'

- It is improper to base the majority of the Decision on unilateral statements made by Apple in their motions and other filings.

- Environmental whistleblower cases are not bound to legal theories from the initial stages of OALJ proceedings and are absolutely not bound by anything Wage & Hour did or did not do.

- An employer is not unduly prejudiced by amending a complaint to conform to the evidence where the employer knew it did the things to be amended, tried to hide them, it was one of the reasons they retaliated, they literally almost killed the employee due to those activities, it's the subject of a large ongoing federal lawsuit, the US EPA is actively investigating the employer over those exact issues, and the US EPA released an inspection report finding at least 19 unique violations of federal environmental laws – directly related to the whistleblower's disclosures and injuries.

33.     In addition, as mentioned, there were some very basic procedural failures including failure to make findings of fact or findings of law, failure to cite relevant law, failure to conduct legal research, failure to read Gjovik's arguments and response, and also failure to provide a detailed decision as required under 24.109(a) and 5 USC Section 557. There were other violations of APA formal adjudication requirements here as well, in addition to the apparent improper attempt at adjudicative rulemaking.

34.     Further, the Motion to Strike should have never been granted. First, if the ALJ found there was no CERCLA claim, and he believed it was only an OSHA claim, then he had no jurisdiction. There was no reason for him to strike the majority of the complaint if he was going to dismiss anyways, among many other issues with his decision to strike. Judicial restraint encourages making assumptions where decisions are not required leading up to a dismissal and to limit the impact made. Further, if there was no jurisdiction, then the ALJ's issuance of an unauthorized, impermissible decision on substantive CERCLA liability for a California company under corrective actions managed by a west coast US EPA office is especially wild.

## OTHER ISSUES IN DISCRETIONARY DECISIONS

35.    The environmental whistleblower case law makes clear that most environmental whistleblowers who make it to OALJ do not have a 'complaint.' Emerging battered & bruised from Wage & Hour, they usually draft their first complaint at the start of the adjudication. The initial complaint and accrual is based on the retaliation that caused the employee to file a charge with OSHA. After that, then the complaint is supposed to conform to the evidence. The ALJ's unilateral declaration that the August 29 2021 webform entry (with no actual complaint described) was the "operative complaint," had no basis in law, fact, or procedure. Gjovik objected repeatedly.

36.    The ALJ's apathy and irritation towards Gjovik trying to communicate the facts of what occurred is not effective for these times of adjudications. The ALJ's Decision expressed some confusion and uncertainty, which should have triggered him to schedule oral arguments and/or an evidentiary hearing – and ask questions of the parties – not scolding Gjovik for simply telling him what happened to her.

37.    This is for the ARB to decide, but there were a number of signals that the ALJ may have been relying too much on Apple's statements, as if what the employer said was fact and law, instead of US Dept of Labor case law. Many of the errors raised here would have been identified by the ALJ with basic legal research within the U.S. Dept. of Labor case libraries – and most or all of the errors were addressed with relevant law in Gjovik's filings, which it seems like the ALJ may have never read. To make matters worse, Apple's counsel was lobbying the ALJ with completely irrelevant and incorrect legal theories but made them sound convincing if there was no fact checking. This also led to the ALJ essentially flipping roles for motion to dismiss, and giving deference to Apple's claims instead of Gjovik's allegations, while also concurrently prohibiting Gjovik from providing evidence. It was not ideal.

38.     Similarly, it was strange the ALJ went along with citing only 9ᵗʰ Circuit law as a CERCLA claim is ultimately appealed to a US District Court in the region where the issue occurred (note: the ALJ incorrectly says CERCLA claims are appealed to appellate courts – this is not true), yet the court where Gjovik's claim would be appealed is the U.S. District Court where she has her pending civil litigation of employment and labor claims, toxic torts, and antitrust claims – and which the ALJ issued contradictory and confusing decisions on overlapping issues in the cases. There is no point in citing the 9ᵗʰ Circuit while an executive tribunal concurrently encroaches on the same judiciary and directly interferes with their active civil litigation, exactly where the claim would land.

## Material Omissions

39.     One of the most glaring omissions in this Decision was the failure to identify what the alleged protected activity was. The ALJ offers legal conclusions and vague assertions about safety but fails to identify even one factual scenario that Gjovik alleged was protected activity – and to explain why it was not, reconciling conflicting arguments and evidence.

40.     Similarly, the ALJ appears to have denied Gjovik's request to amend to add additional adverse employment actions, but did not explain why. For example, instead of explaining why he denied her request to add denylisting, he just listed it in the content he wanted to strike from the case. It appears he may be enforcing a rule that if the adverse action was not included on the original OSHA webform filing then it cannot be added later (but denylisting happens later) – which would essentially nullify most denylisting claims if applied.

41.     The ALJ also ignored a discovery dispute between Gjovik and Apple. Following the ALJ telling Apple they had to participate in discovery but Apple still refusing, Gjovik filed a Motion to Compel. In response, Apple filed a response so incorrect and offensive that Gjovik filed another NLRB charge over it and filed notice of that in the case record. None of this was acknowledged by the ALJ, and

— 14 —

the motion to compel was never ruled on or acknowledge. When an employer is actively retaliating against the employee during the retaliation proceeding, it seems relevant for credibility determinations at least.

### Violations of the U.S. Constitution & Tribunal Activism

42.    In addition to violating the requirements of the APA for formal adjudications and the prohibition on extralegal rulemaking – the Decision also exceeded the ALJ's statutory authority when 'issuing' substantive decisions about EPA statutes and resulting civil liability, and unreasonably encroached into civil litigation under an Article III Judge. This Decision unreasonably invaded Legislative and Judicial functions, actively interfered with two open US EPA investigations, and also managed to disrupt Executive branch functions (its own branch).

43.    Administrative agencies have narrow statutory authority, and within that, they have their own rules and procedures they must follow. A tribunal is not authorized to alter, repeal, or disregard statutes and regulations – nor is it authorized to adjudicate other agencies statutes absence clear direction from Congress. Congress gave exclusive jurisdiction of all CERCLA cases and controversies to US District Courts. The *Ashwander* principles are instructive for this tribunal – maintain stare decisis, aim for minimalism, and avoid any major decisions that are not required to be decided. Judicial Activism is not appropriate for an ALJ at the OALJ overseeing statutorily defined adjudications.

## Remedy & Conclusion

44.    The August 7 2024 Decision relies on impermissible factors, omits consideration of factors entitled to substantial weight, does not make findings of fact, does not making findings of law, cites incorrect legal rules, ignores Gjovik's factual allegations and legal arguments, makes material errors of law, has no evidentiary basis, ignores all conflicting evidence, and oversteps into functions of

— 15 —

other branches of the government. The Decision is currently so far from relevant facts and law, it cannot be located within the range of permission decisions, and thus must be swiftly reversed.

45.    Stare decisis is crucial for ensuring consistency, predictability, and stability in the law. It allows individuals and entities to rely on judicial decisions with the confidence that similar cases will be treated similarly, fostering fairness and clarity in the legal system. When a judge issues a decision that is not grounded in law and fails to cite relevant legal authority, it undermines this stability and predictability. Such decisions not only erode trust in the judicial process but also create uncertainty, as future cases lack clear guidance on how the law should be applied. This deviation from legal principles can lead to inconsistent rulings and disrupt the orderly administration of justice.

46.    The grant of a Motion to Dismiss should be reversed, the partial denial of a Motion to Amend should be reversed, the Motion to Strike should be reversed, the case re-opened, and the prior denials of critical legal arguments should be reversed and the papers reconsidered. Gjovik requests de novo review of the whole record, reversal of the identified errors and any other errors identified by the ARB, and remand to continue the adjudication process (or summary decision from ARB in her favor on issues, claims, or the case).[2]

47.    Gjovik also requests, if possible and permissible, following the reversal and correction of law, to then be allowed to "kick-out" her CERCLA claim from U.S. Dept. of Labor and to consolidate it with her civil lawsuit in the U.S. District Court, if the U.S. Judge also approves, for the sake of judicial economy and efficiency. Gjovik has been severely prejudiced for all the reasons mentioned, following a very flawed Wage & Hour experience, and would like to expedite a resolution in the matter if possible.

---

[2] Plaintiff is seeking her compensatory damages through her civil lawsuit. In the U.S. Dept. of Labor adjudication, she is only seeking declaratory & injunctive relief, & punitive if available.

Thank you.

Dated: August 22, 2024.

Signature:

_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com

**Physical Address**: Boston, Massachusetts

**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816

**Phone**: (408) 883-4428

# EXHIBIT C

# UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES
### BOSTON, MASSACHUSETTS
_____

**Issue Date: 07 August 2024**

**OALJ NO.:** 2024-CER-00001

*In the Matter of:*

**ASHLEY GJOVIK,**
*Complainant,*

*v.*

**APPLE INC.,**
*Respondent.*

## <u>OMNIBUS ORDER AND DISMISSAL</u>

This proceeding arises from a complaint filed by Ashley Gjovik ("Gjovik" or "Complainant") against Apple Inc. ("Apple" or "Respondent") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA" or "the Act"), 42 U.S.C § 9601 *et seq.*, and the implementing regulations found at 29 C.F.R. Part 24. The matter is currently set for formal hearing beginning the week of March 3, 2025.

## I. Procedural History

This Order addresses several interconnected motions from the Parties that are pending before this Tribunal. On April 2, 2024, Gjovik filed a Motion to Amend the Complaint ("Mot. Am."), along with a memorandum in support of the motion ("Memo. Am."), a Declaration, and Exhibits A through S ("Mot. Am. Exh."). On April 16, 2024, Apple filed its opposition ("Opp. Mot. Am."), a declaration from one of its attorneys ("Perry Decl."), and Exhibits A through D ("Resp. Opp. Exh.").

On the same day, Apple filed a Motion to Dismiss ("Mot. Dis."), as well as a declaration from another of its attorneys ("Reichart Decl."), and a Request for Judicial Notice in support of the Motion to Dismiss and Opposition to Amend the Complaint. The Request for Judicial Notice included three exhibits: Gjovik's second amended complaint in a separate ongoing federal civil case filed by Gjovik, *Gjovik v. Apple*, No. 3:23-CV-04597-EMC (N.D. Cal. Dec. 21, 2023), and two pages from the U.S. Environmental Protection Agency ("EPA") website concerning Superfund sites.

On May 1, 2024, Gjovik filed her opposition to Apple's motions, which included a Memorandum ("Opp. Memo") detailing her response to the Motion to Dismiss and her objections to the Request for Judicial Notice, the Perry Declaration, the Reichart Declaration,

Respondent's Exhibits A through D from its opposition the Motion to Amend, and Respondent's Exhibit A from the Request for Judicial Notice. Gjovik attached more than fifty exhibits. While the Court has reviewed Gjovik's exhibits in their entirety, they will not be further summarized here.

On May 10, 2024, Apple filed a Motion for Leave to Reply to Gjovik's opposition and its responses to Gjovik's objections to the Perry Declaration. Gjovik then filed a Motion for Leave to Respond if Apple's motion was granted. Given the extensive filings and arguments already made by both Parties, this Tribunal **DENIES** both of these motions as unnecessary to decide the issues.

After several requests for clarification of issues from the Parties, on May 23, 2024, this Tribunal issued an Order on the Operative Complaint ("Order"), in which it held that, under 29 C.F.R. Part 24, the operative complaint in this matter was the August 29, 2021, online complaint filed by Gjovik with OSHA ("Operative Complaint"). *See* Mot. Am. Exh. D at 9; Resp. Opp. Exh. A. The Order noted that the Operative Complaint did not include the subsequent alleged adverse action of termination, which was included in a case activity worksheet from OSHA dated December 10, 2021 ("Case Summary"), *see* Mot. Am. Exh. C at 7; Mot. Am. Exh. D. at 10, and it did not address additional environmental statutes beyond CERCLA that Gjovik argued had been raised with OSHA during the initial investigation of her claim, and was now attempting to address before this Tribunal. *See* Mot. Am. Exh. A at 3.

The Order allowed Gjovik to file a proposed Amended Complaint with this Tribunal within 14 days, while the Motion to Amend and Motion to Dismiss, as well as all other motions pending with the Court, were held in abeyance. The Court's directions spelled out very specific parameters (discussed further below) within which an Amended Complaint would be expected to stay.

On June 7, 2024, Gjovik filed a proposed Amended Complaint ("Am. Compl."), and on June 20, 2024, Apple filed its opposition ("Opp. Am. Compl."), in which it renewed its request to dismiss the case. On June 21, 2024, Gjovik filed a motion requesting leave to reply to Apple's opposition. This Tribunal **DENIES** this motion, again, given the extensive arguments already made in the Motion to Amend and the numerous exhibits filed in support of it.

## II. Motion to Amend

This Tribunal will first address the motion to amend the Operative Complaint. A complaint under CERCLA must be filed within 30 days after an alleged violation of the Act. 29 C.F.R. § 24.103(d)(1). However, under the procedural rules governing matters before the Office of Administrative Law Judges ("OALJ"), a complainant may seek to amend a complaint before OALJ with permission from the Court. 29 C.F.R. § 18.36. The OALJ rules further state that the "Federal Rules of Civil Procedure (FRCP) apply in any situation not provided for or controlled by these rules or a governing statute, regulation, or executive order." 29 C.F.R. § 18.10(a).

FRCP 15 instructs that a complaint may be amended within 21 days as a matter of course; otherwise, a party "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FRCP 15(a)(1), (2). An otherwise untimely amended complaint may be accepted where it relates back to the date of the original complaint by asserting "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FRCP 15(c)(1)(B); *see Ross v. Williams*, 950 F.3d 1160, 1165-66 (9th Cir. 2020). In other words, the amended complaint must rely on the same common core of operative facts as the original complaint. *Ross*, 950 F.3d at 1167, *citing Mayle v. Felix*, 545 U.S. 644, 656-57 (2005).

The Ninth Circuit, whose precedent controls in this case,[1] has explained that amendments to complaints should be permitted if an amendment does not come after undue delay, is not made in bad faith, does not result in prejudice to the nonmoving party, and is not futile. *See Center for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 955-56 (9th Cir. 2023), *citing Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015). An amendment is futile where it is clear in de novo review that the complaint "could not be saved by any amendment." *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022).

In her Motion to Amend, Gjovik argues that the Operative Complaint failed to include additional claims she had raised during the OSHA investigation related to the Clean Air Act, 42 U.S.C. § 7622 ("CAA"), and the Solid Waste Disposal Act as amended by the Resource Conservation and Recovery Act ("SWDA/RCRA"), 42 U.S.C. § 6971, among other omissions. *See* Memo. Am. at 2-6. Apple, in turn, argued that Gjovik's Motion to Amend should be denied on the grounds that Gjovik was attempting to raise claims not raised before OSHA in her original complaint; such claims were time barred, and Gjovik's administrative remedies for these claims have not been properly exhausted, in that they were never addressed by OSHA in the first instance. Opp. Mot. Am. at 1-3. Apple further argued that raising such claims now would also prejudice them in their ability to defend the claims. Opp. Mot. Am. at 12-13.

In light of these arguments, and upon reviewing the numerous filings in support of them, this Tribunal set clear parameters in its Order for any proposed Amended Complaint so it would properly relate back to the Operative Complaint, namely: that all proposed amendments must pertain to the workplace address at 825 Stewart Drive, Sunnyvale, California, the only address referenced in both the Operative Complaint and the Case Summary; and that any alleged adverse actions, protected activity, and statutory violations must also relate to this address and be supported by the initial allegations made in the Operative Complaint and Case Summary.

Gjovik timely filed a proposed Amended Complaint in response to the Order. In opposition, Apple asserts that Gjovik's amendments, particularly with respect to any additional environmental statutes beyond CERCLA, are futile and should not be allowed. Opp. Am. Compl. at 2. Apple specifically argues that the amendments detailing additional claims under the CAA and SWDA/RCRA, as well as those invoking the Toxic Substances Control Act ("TSCA"),

---

[1] Under 29 C.F.R. § 24.112(d), any person affected by a final order under CERCLA may file a petition for review in the U.S. Court of appeals "for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation"—in this case, the Ninth Circuit.

15 U.S.C. § 2622, fail to adhere to the parameters set by this Tribunal's Order by including facts and allegations outside of the scope of the Operative Complaint or Case Summary. Opp. Am. Compl. at 15-17.

Upon careful review of the Amended Complaint, this Tribunal finds that Gjovik has, in fact, failed to adhere to the limitations set by the Court repeatedly and throughout the proposed Amended Complaint. Many of Gjovik's amendments relate to an entirely different address (3250 Scott Boulevard, Santa Clara, California), which is apparently an Apple-owned facility located near an apartment building in which Gjovik resided in 2020. Gjovik's amendments adding a claim under the CAA, for example, relate entirely to the Scott Boulevard address. *See* Am. Compl. ¶¶ 110-19. As a result, all of the CAA claims in the Amended Complaint fall outside of this Tribunal's order.

Similarly, Gjovik's claims under SWDA/RCRA and the TSCA primarily involve alleged protected activity connected with the Scott Boulevard address. *See* Am. Compl. ¶¶120-145. The Stewart Drive address is mentioned, but it is done almost in passing, and without any clear connection to the claims under these statutes. Gjovik's descriptions of her protected activity here are vague, and unrelated to the protected activity as originally alleged in the Operative Complaint and Case Summary. *See* Am. Compl. ¶¶120-145. Additionally, other amendments lay out concerns Gjovik supposedly raised with environmental violations at other Apple buildings in Santa Clara County—again, none of which were her workplace address on Stewart Drive as directed by this Tribunal.

This Tribunal finds that any alleged violations, adverse actions, or protected activity related to a different location or occurring during a different time period do not rely on the common core of operative facts as set out in the Operative Complaint and Case Summary, and are therefore inappropriate for the Amended Complaint. These portions of the Amended Complaint go well beyond the Complaint filed before OSHA and are thus both untimely and prejudicial, as they are introduced for the first time here, and posed against Apple without any chance for the Respondent to challenge or investigate them under the normal administrative process. While the de novo review before OALJ may be a place to clarify or sharpen allegations brought before the administrative agency, and this Tribunal may allow amendments in the interest of justice, such an allowance is not meant as an open floodgate for a Claimant to add numerous new factual and legal scenarios that have never previously been part of the action for the first time well into litigation. There must be a limit, and that limit has been exceeded here in the Amended Complaint.

Despite these concerns, there are portions of the Amended Complaint that adhere to the Order of this Tribunal and thus survive. Accordingly, Gjovik's Motion to Amend is **GRANTED IN PART** and **DENIED IN PART**. The following sections are stricken from the Amended Complaint for the above given reasons, as untimely, prejudicial, futile, or a combination thereof:

- Paragraph 1: "multiple federal environmental statutes"; "CAA, RCRA, TSCA"; "conducting … more tests"; "meetings with elected officials";

- Paragraph 2: "and RCRA"; "and where Apple severely injured Gjovik in 2020"; "for both sites. … and/or their families";

- 4 -

- Paragraph 9: "and included facts from September 2020 … CERCLA claim against Apple";

- Paragraph 10 in its entirety;

- Paragraph 14: "arising from semiconductor activities at 3250 Scott Blvd … Emotional Distress";

- Paragraph 17: "and 'Triple Site' triple NPL Superfund sites"; "During Gjovik's work … double NPL Superfund site)";

- Paragraphs 20 through 24 in their entirety;

- Paragraph 26: "and disclosing to them the reason … air around 3250 Scott Blvd";

- Paragraph 27: "Gjovik also asked … is contaminated";

- Paragraph 28: "including the HazMat EH&S manager at 3250 Scott Blvd";

- Paragraph 31: "referencing the PTSD … dumping at 3250 Scott Blvd";

- Paragraph 32: "and told him more victims …. would just tell them to get therapy too";

- Paragraph 33: "Gjovik shared the SF Bay View article about 3250 Scott Blvd … matter that day";

- Paragraph 38: "was at the apartment where she was exposed to toxic waste";

- Paragraph 43: "Gjovik also attached a PDF … including other Superfund sites";

- Paragraph 44: "updates about 3250 Scott Blvd.";

- Paragraph 45: "(referencing Gjovik's comments … around 3250 Scott Blvd)"; "On April 30 2021, … explosion at 3250 Scott Blvd.";

- Paragraph 50: "On May 22 2021, Apple's leave and worker's comp ... medical symptoms while living next to 3250 Scott Blvd. … hallucinations";

- Paragraph 54: "she was moving apartments …. She also noted";

- Paragraph 59: "who Gjovik spoke with about 3250 Scott Blvd back in September 2020"; "The notes also documented … her questions about other buildings";

- Paragraph 64: "treatment/storage/disposal … under the TSCA";

- Paragraph 67: "and also mentioned her illness next to 3250 Scott Blvd … SF Bay View";

- Paragraph 68 in its entirety;

- Paragraph 75 in its entirety;

- Paragraph 76: "She has this wisdom through her experience next to 3250 Scott Blvd, …. CalEPA";

- Paragraph 78: "and about what happened … 3250 Scott Blvd.";

- Paragraph 80: "Gjovik also created a document listing a number of Apple's buildings … details on the contamination";

- Paragraph 82: "but also concerns with … offices on remediation sites";

- Paragraphs 83 through 85 in their entirety;

- Paragraphs 87 and 88 in their entirety;

- Paragraph 89: "and the hazardous waste issues next to 3250 Scott Blvd";

- Paragraph 91 in its entirety;

- Paragraph 99: "3250 Scott and"; "and were found in her … 3250 Scott Blvd)";

- Paragraph 103: "and she even had other victims … article she wrote";

- Paragraph 106, subheading b. through the end of the paragraph;

- Paragraph 109 in its entirety;

- Paragraphs 110-19 in their entirety (CAA claim);

- Paragraphs 120-35 in their entirety (SWDA/RCRA claim);

- Paragraphs 136-45 in their entirety (TSCA claim);

- Paragraph 146: "RCRA, Clean Air Act, and TSCA", both instances, and "blacklist";

- Paragraph 152: "as Apple's lawyers directly demanded the employer terminate its relationship with Gjovik … Gjovik is";

- Paragraph 153: "RCRA, and CAA"; and

- Paragraphs 156 to 159 in their entirety.

With these changes made, Gjovik has retained her CERCLA complaint, albeit with a sharpened set of facts. The Court is now in a position to consider Apples' Motion to Dismiss the Complaint based on the remaining portions of the Amended Complaint, as the original Motion to Dismiss is focused on the legal basis on which a CERCLA claim can be brought.

## III. Motion to Dismiss

Under the applicable OALJ regulations, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. 29 C.F.R. § 18.70(c); *see Gross v. Saint-Gobain Corp.*, ARB No. 2022-00005, PDF at 4 (ARB Apr. 18, 2022). In considering a motion to dismiss, an ALJ must accept the factual allegations made in the complaint as true and draw all reasonable inferences from them in the complainant's favor. *Gross*, PDF at 4-5. The Administrative Review Board ("Board") has explained that in considering a motion a dismiss, a tribunal should focus "solely on the allegations in the complaint, its amendments, and the legal arguments … not whether evidence exists to support such allegations." *Gross*, PDF at 5-6, *quoting Evans v. U.S. EPA*, ARB No. 2008-0059, PDF at 10-11 (ARB July 31, 2012). The "fair notice" standard is used, which requires only a sufficient statement of the claims providing

(1) some facts about the protected activity and its relatedness to the law or statute in question; (2) some facts about the adverse action; (3) a general assertion of the connection between the two; and (4) the relief that is sought. *Id.*

When discussing a Motion to Dismiss, the ALJ should "not consider new evidence submitted by the moving party" unless the motion is converted to one for summary decision and the non-movant is allowed an opportunity to respond in kind. *Gross*, PDF at 5-6, *citing Evans*, PDF at 10-11. As such, Apple's Request for Judicial Notice filed on April 16, 2024, in support of its Motion to Dismiss and Opposition to the Motion to Amend is **DENIED.**

In its initial Motion to Dismiss, Apple argues that Gjovik has failed to state a claim under CERCLA for which relief may be granted on two grounds: First, Apple argues that it is not an "owner" or "operator" subject to the provisions of CERCLA and therefore a claim under the Act cannot be brought as a matter of law. Second, Apple argues that Gjovik's allegations of protected activity do not include activity covered under the Act. Mot. Dis. at 2-3. Apple renews these arguments and its request to dismiss the CERCLA claim in its response to the Amended Complaint. Opp. Am. Compl. 17-18. The Court will address each of these arguments in turn.

Apple first asserts that CERCLA's whistleblower statutes and implementing regulations only apply to an employer if that employer is a covered "person" subject to the liability imposed by CERCLA for the costs of remediation at specific hazardous waste sites. Mot. Dis. at 5-6. Apple points out that, under 29 C.F.R. Part 24, no "employer **subject to the provisions of any of the statutes [listed in 29 C.F.R. § 24.100(a)]** … may discharge or otherwise retaliate" against an employee. Mot. Dis. at 5, *citing* 29 C.F.R. § 24.102(a). As a tenant of 825 Stewart Drive (also referred to by the Parties as the TRW Microwave Superfund Site), Apple argues that it is neither an owner nor an operator subject to the provisions of CERCLA, nor is it any other "covered person" under the Act, as it neither has ownership of the site nor did it manage or actively participate in the operations of the facility during the period of environmental contamination. Mot. Dis. at 5-6, *citing U.S. v. Bestfoods*, 524 U.S. 51, 66-67 (1998); *Carson Harbor Vill., Ltd. V. Unocal Corp.*, 287 F. Supp. 2d 1118, 1194 (C.D. Cal. 2003). Northrup Grumman is, in fact, the statutorily defined responsible party. Mot. Dis. 3-4.

Gjovik asserts that Apple, as Gjovik's former Employer, is a "person" referenced under the employee protection provisions of the statute found at 42 U.S.C. § 9610, and further states that the U.S. Department of Labor's jurisdiction under the employee protection provisions "is not related to the U.S. EPA's jurisdiction over the Employer with respect to the subject matter of CERCLA." Am. Compl. ¶ 100. Gjovik additionally argues that the term "owner or operator" applies to Apple as a tenant under § 9601(20)(A), and the Superfund Site qualifies as a "facility" where "a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." Am. Compl. ¶ 107. In her statements detailing her communications with reporters, however, Gjovik notes that "Gjovik told Apple and the US EPA she was doing this, and US EPA even informed the Superfund responsible party, Northrup Grumman, providing them the name of the reporter." Am. Compl. ¶ 89.

In considering whether Apple is a "person" bound by the employee protection statutes of CERCLA, this Tribunal first notes that the Act defines a "person" as "an individual, firm,

corporation, association, partnership, consortium, joint venture, commercial entity, United States government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21). The Act further indicates that "covered persons" include not only previous owners and operators of a hazardous waste facility, but current owner and operators of said facilities. *Id.* § 9607(a)(1),(2). The Ninth Circuit has observed that the "circularity" of the definition of an owner and operator in § 9601(20)(A) as "any person owning or operating" a facility "renders it useless." *Kaiser Aluminum & Chemical Corp. v. Catellus Development Corp*, 976 F.2d 1338 (9th Cir. 1992). However, the Supreme Court has explained that "for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 52.

Even accepting Gjovik's factual allegations as true and drawing all reasonable inferences therefrom, she has not alleged sufficient facts to find that Apple is an "operator" covered by the employee protection provisions of the Act. Gjovik asserts that after Apple made renovations in preparation for its tenancy of the Superfund Site, the U.S. EPA found "a number of issues including missing and compromised sub-slab vent ports, concerning slab penetrations, and toxic waste fumes being pipes into the HVAC system." Am. Compl. ¶ 108. However, the fact that Apple made renovations prior to occupying TRW Microwave does not lead to the inference that Apple's operations dealt with the "leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *See Bestfoods*, 524 U.S. at 52. Despite Gjovik's attempts to allege Apple should be found liable as the current "operator" of the Superfund Site, she herself acknowledges Northrup Grumman as the site's responsible party. Am. Compl. ¶ 89. Accordingly, this Tribunal finds that, under the Amended Complaint, Apple is not an employer or operator subject to the provisions of the Act. *See* 29 C.F.R. § 24.102(a).

Turning to the second argument in support of the Motion to Dismiss, Apple argues that Gjovik's alleged protected activity is not covered under CERCLA for two reasons: First, the Act concerns the remediation of environmental waste endangering the public and does not address hazards limited to a workplace. Second, complaints about a remediation plan already in effect are not protected activity. Mot. Dis. 7-10; Opp. Am. Compl. 17-18.

The Act states that the release of hazardous chemicals that CERCLA is concerned with purposefully "excludes … any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons." 42 U.S.C § 9601(22). The Board has explained that the purpose of CERCLA is the protection of the public health and the environment and, even if a workplace is located on a Superfund Site, when there are no allegations related to the release of hazardous substances beyond the workplace, CERCLA is not implicated. *See Devers v. Kaiser-Hill Co.*, ARB No. 03-113, PDF at 14-16 (ARB Mar. 31, 2005).

In her Amended Complaint, Gjovik asserts that she contacted her supervisors multiple times in 2021 with safety concerns about the Superfund Site at 825 Stewart Drive. Am. Compl. ¶¶ 79-82, 86. However, Gjovik's concerns relate entirely to the safety of her workplace and her belief she and other coworkers were potentially being exposed to toxic vapors within the

building. *See* Am. Compl. ¶¶ 25-54. Gjovik's only potential references to the exposure of the public in the Amended Complaint are in Paragraphs 83 and 143, which mention "contractors" or "visitors." However, both of these paragraphs have been stricken as unrelated to 825 Stewart Drive or otherwise unrelated to the Operative Complaint and Case Summary, as discussed above. Gjovik does not allege that any waste or vapors from 825 Stewart Drive affected the surrounding area.

Again, accepting Gjovik's factual allegations as true and drawing all reasonable inferences in her favor, Gjovik's activities concerning the safety of her workplace at 825 Stewart Drive as outlined in her Amended Complaint fall outside of the scope of CERCLA. *See Gross*, PDF at 5-6. Accordingly, this Tribunal need not further address whether Gjovik's safety complaints fall under the employee protection provisions of the Act.

Gjovik may have possible grievances against Apple, and she may have potential legal routes for pursuing remedies to them, but a whistleblower complaint under CERCLA is not one of them. The Amended Complaint here fails to state a claim as a matter of law.

For the foregoing reasons, the matter is **DISMISSED** for failure to state a claim upon which relief can be granted, 29 C.F.R. § 18.70(c), and the scheduled hearing is cancelled. All other pending motions filed by both Gjovik and Respondent are **DENIED AS MOOT**.

**SO ORDERED.**

 

 

                        **JERRY R. DeMAIO**
                        Administrative Law Judge

Boston, Massachusetts

**NOTICE OF APPEAL RIGHTS:** This Decision and Order will become the final order of the Secretary of Labor unless a written petition for review is filed with the Administrative Review Board ("the Board") within **10 business days** of the date of this decision.

The date of the postmark, facsimile transmittal, or e-filing will be considered to be the date of filing. If the petition is filed in person, by hand-delivery or other means, the petition is considered filed upon receipt. The petition for review must specifically identify the findings, conclusions or orders to which exception is taken. Any exception not specifically urged ordinarily will be deemed to have been waived by the parties.

At the same time that you file your petition with the Board, you must serve a copy of the petition on (1) all parties, (2) the Chief Administrative Law Judge, U.S. Dept. of Labor, Office of Administrative Law Judges, (3) the Assistant Secretary, Occupational Safety and Health Administration, and (4) the Associate Solicitor, Division of Fair Labor Standards.

If a timely petition for review is not filed, or the Board denies review, this Decision and Order will become the final order of the Secretary of Labor. *See* 29 C.F.R. §§ 24.109(e) and 24.110.

## FILING AND SERVICE OF AN APPEAL

1.  **Use of EFS System:** The Board's Electronic Filing and Service (EFS) system allows parties to initiate appeals electronically, file briefs and motions electronically, receive electronic service of Board issuances and documents filed by other parties, and check the status of appeals via an Internet-accessible interface. Use of the EFS system is free of charge to all users. To file an appeal using the EFS System go to https://efile.dol.gov. All filers are required to comply with the Board's rules of practice and procedure found in 29 C.F.R. Part 26, which can be accessed at  https://www.ecfr.gov/current/title-29/subtitle-A/part-26.

    A.  **Attorneys and Lay Representatives:** Use of the EFS system is **mandatory for all attorneys and lay representatives** for all filings and all service related to cases filed with the Board, absent an exemption granted in advance for good cause shown. 29 C.F.R Part § 26.3(a)(1), (2).

    B.  **Self-Represented Parties: Use of the EFS system is strongly encouraged for all self-represented parties** with respect to all filings with the Board and service upon all other parties. Using the EFS system provides the benefit of built-in service on all other parties to the case. Without the use of EFS, a party is required to not only file its documents with the Board but also to serve copies of all filings on every other party. Using the EFS system saves litigants the time and expense of the required service step in the process, as the system completes all required service automatically. Upon a party's proper use of the EFS system, no duplicate paper or fax filings are required.

**Self-represented parties who choose not to use the EFS system must file by mail or by personal or commercial delivery** all pleadings, including briefs, appendices, motions, and other supporting documentation, directed to:

> Administrative Review Board
> Clerk of the Appellate Boards
> U.S. Department of Labor
> 200 Constitution Avenue, N.W., Room S-5220,
> Washington, D.C., 20210

**2.     EFS Registration and Duty to Designate E-mail Address for Service**

To use the Board's EFS system, a party must have a validated user account. To create a validated EFS user account, a party must register and designate a valid e-mail address by going to https://efile.dol.gov, select the button to "Create Account," and proceed through the registration process. If the party already has an account, they may simply use the option to "Sign In."

Once a valid EFS account and profile has been created, the party may file a petition for review through the EFS system by selecting "eFile & eService with the Administrative Review Board" from the main dashboard, and selecting the button "File a New Appeal - ARB." In order for any other party (other than the EFS user who filed the appeal) to access the appeal, the party must submit an access request. To submit an access request, parties must log into the EFS System, select "eFile & eService with the Administrative Review Board," select the button "Request Access to Appeals," search for and select the appeal the party is requesting access to, answer the questions as prompted, and click the button "Submit to DOL."

Additional information regarding registration for access to and use of the EFS system, including for parties responding to a filed appeal, as well as step-by-step User Guides, answers to frequently asked questions (FAQs), video tutorials and contact information for login.gov and EFS support can be found under the "Support" tab at https://efile.dol.gov.

**3.     Effective Time of Filings**

Any electronic filing transmitted to the Board through the EFS e-File system or via an authorized designated e-Mail address by 11:59:59 Eastern Time shall be deemed to be filed on the date of transmission.

**4.     Service of Filings**

**A.     Service by Parties**

- **Service on Registered EFS Users:** Service upon registered EFS users is accomplished automatically by the EFS system.

- **Service on Other Parties or Participants:** Service upon a party that is not a registered EFS user must be accomplished through any other method of service authorized under applicable rule or law.

**B.**    **Service by the Board**

Registered e-filers will be e-served with Board-issued documents via EFS; they will not be served by regular mail (unless otherwise required by law). If a party unrepresented by counsel files their appeal by regular mail, that party will be served with Board-issued documents by regular mail. Any party may opt into e-service at any time by registering for an EFS account as directed above, even if they initially filed their appeal by regular mail or delivery.

### 5. Proof of Service

Every party is required to prepare and file a certificate of service with all filings. The certificate of service must identify what was served, upon whom, and manner of service. Although electronic filing of any document through the EFS system will constitute service of that document on all EFS-registered parties, electronic filing of a certificate of service through the EFS system is still required. **Non EFS-registered parties must be served using other means authorized by law or rule.**

## 6.     Inquiries and Correspondence

After an appeal is filed, all inquiries and correspondence related to filings should be directed to the Office of the Clerk of the Appellate Boards by telephone at 202-693-6300 or by fax at 202-513-6832. Other inquiries or questions may be directed to the Board at (202) 693-6200 or ARB-Correspondence@dol.gov.

# EXHIBIT D

 **U.S. DEPARTMENT OF LABOR**
(https://www.dol.gov/)

## Occupational Safety and Health Administration: Whistleblower Protection Program (/)

---

Statutes (/statutes) / Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)

# Comprehensive Environmental Response,Compensation, and Liability Act (CERCLA) 42 U.S.C. §9610

---

**§9610. Employee protection.**

(a) Activities of employee subject to protection. No person shall fire or in any other way discriminate against, or cause to be fired or discriminated against any employee or any authorized representative of employees by reason of the fact that such employee or representative has provided information to a State or to the Federal Government, filed, instituted, or caused to be filed or instituted any proceeding under this Act, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this Act.

(b) Administrative grievance procedure in cases of alleged violations. Any employee or a representative of employees who believes that he has been fired or otherwise discriminated against by any person in violation of subsection (a) of this section may, within thirty days after such alleged violation occurs, apply to the Secretary of Labor for a review of such firing or alleged discrimination. A copy of the application shall be sent to such person, who shall be the respondent. Upon receipt of such application. the Secretary of Labor shall cause such investigation to be made as he deems appropriate. Such investigation shall provide an opportunity for a public hearing at the request of any party to such review to enable the parties to present information relating to such alleged violation. The parties shall be given written notice of the time and place of the hearing at least five days prior to the hearing. Any such hearing shall be of record and shall be subject to section 554 of title 5, United States Code. Upon receiving the report of such investigation, the Secretary of Labor shall make findings of fact. If he finds that such violation did occur, he shall issue a decision incorporating an order therein and his findings, requiring the party committing such violation to take such affirmative action to abate the violation as the Secretary of Labor deems appropriate, including. but not limited to, the rehiring or reinstatement of the employee or representative of employees to his former position with compensation. If he finds that there was no

such violation, he shall issue an order denying the application. Such order issued by the Secretary of Labor under this subparagraph shall be subject to judicial review in the same manner as orders and decisions are subject to judicial review under this Act.

(c) Assessment of costs and expenses against violator subsequent to issuance of order of abatement. Whenever an order is issued under this section to abate such violation, at the request of the applicant a sum equal to the aggregate amount of all costs and expenses (including the attorney's fees) determined by the Secretary of Labor to have been reasonably incurred by the applicant for, or in connection with, the institution and prosecution of such proceedings, shall be assessed against the person committing such violation.

(d) Defenses. This section shall have no application to any employee who acting without discretion from his employer (or his agent) deliberately violates any requirement of this Act.

(e) Presidential evaluations of potential loss of shifts of employment resulting from administration or enforcement of provisions; investigations; procedures applicable, etc. The President shall conduct continuing evaluations of potential loss of shifts of employment which may result from the administration or enforcement of the provisions of this Act, including, where appropriate, investigating threatened plant closures or reductions in employment allegedly resulting from such administration or enforcement. Any employee who is discharged, or laid off, threatened with discharge or layoff, or otherwise discriminated against by any person because of the alleged results of such administration or enforcement, or any representative of such employee, may request the President to conduct a full investigation of the matter and, at the request of any party, shall hold public hearings, require the parties, including the employer involved, to present information relating to the actual or potential effect of such administration or enforcement on employment and any alleged discharge, layoff, or other discrimination, and the detailed reasons or justification therefore. Any such hearing shall be of record and shall be subject to section 554 of title 5, United States Code. Upon receiving the report of such investigation, the President shall make findings of fact as to the effect of such administration or enforcement on employment and on the alleged discharge, layoff, or discrimination and shall make such recommendations as he deems appropriate. Such report, findings, and recommendations shall be available to the public. Nothing in this subsection shall be construed to require or authorize the President or any State to modify or withdraw any action, standard, limitation, or any other requirement of this Act.

OSHA (https://www.osha.gov/aboutosha)        Standards (https://www.osha.gov/laws-regs)

Enforcement (https://www.osha.gov/enforcement)        Topics (https://www.osha.gov/a-z)

Media Center (https://www.osha.gov/media-center)        Contact Us (https://www.osha.gov/contactus)

(https://www.dol.gov/)

**U.S. DEPARTMENT OF LABOR**

# EXHIBIT E

(j) *Tipped employees.* In paying wages to a tipped employee as defined in section 3(t) of the Fair Labor Standards Act, 29 U.S.C. 203(t), the contractor may take a partial credit against the wage payment obligation (tip credit) to the extent permitted under section 3(a) of Executive Order 14026. In order to take such a tip credit, the employee must receive an amount of tips at least equal to the amount of the credit taken; where the tipped employee does not receive sufficient tips to equal the amount of the tip credit the contractor must increase the cash wage paid for the workweek so that the amount of cash wage paid and the tips received by the employee equal the applicable minimum wage under Executive Order 14026. To utilize this proviso:

(1) The employer must inform the tipped employee in advance of the use of the tip credit;

(2) The employer must inform the tipped employee of the amount of cash wage that will be paid and the additional amount by which the employee's wages will be considered increased on account of the tip credit;

(3) The employees must be allowed to retain all tips (individually or through a pooling arrangement and regardless of whether the employer elects to take a credit for tips received); and

(4) The employer must be able to show by records that the tipped employee receives at least the applicable Executive Order minimum wage through the combination of direct wages and tip credit.

(k) *Antiretaliation.* It shall be unlawful for any person to discharge or in any other manner discriminate against any worker because such worker has filed any complaint or instituted or caused to be instituted any proceeding under or related to Executive Order 14026 or 29 CFR part 23, or has testified or is about to testify in any such proceeding.

(l) *Disputes concerning labor standards.* Disputes related to the application of Executive Order 14026 to this contract shall not be subject to the general disputes clause of the contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR part 23. Disputes within the meaning of this contract clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the workers or their representatives.

(m) *Notice.* The contractor must notify all workers performing work on or in connection with a covered contract of the applicable minimum wage rate under the Executive Order. With respect to service employees on contracts covered by the Service Contract Act and laborers and mechanics on contracts covered by the Davis-Bacon Act, the contractor may meet this requirement by posting, in a prominent and accessible place at the worksite, the applicable wage determination under those statutes. With respect to workers performing work on or in connection with a covered contract whose wages are governed by the FLSA, the contractor must post a notice provided by the Department of Labor in a prominent and accessible place at the worksite so it may be readily seen by workers. Contractors that customarily post notices to workers electronically may post the notice electronically provided such electronic posting is displayed prominently on any website that is maintained by the contractor, whether external or internal, and customarily used for notices to workers about terms and conditions of employment.

# PART 24—PROCEDURES FOR THE HANDLING OF RETALIATION COMPLAINTS UNDER THE EMPLOYEE PROTECTION PROVISIONS OF SIX ENVIRONMENTAL STATUTES AND SECTION 211 OF THE ENERGY REORGANIZATION ACT OF 1974, AS AMENDED

## Subpart A—Complaints, Investigations, Issuance of Findings

Sec.
24.100  Purpose and scope.
24.101  Definitions.
24.102  Obligations and prohibited acts.
24.103  Filing of retaliation complaint.
24.104  Investigation.
24.105  Issuance of findings and orders.

## Subpart B—Litigation

24.106  Objections to the findings and order and request for a hearing.
24.107  Hearings.
24.108  Role of Federal agencies.
24.109  Decision and orders of the administrative law judge.
24.110  Decisions and orders of the Administrative Review Board.

## Subpart C—Miscellaneous Provisions

24.111  Withdrawal of complaints, objections, and findings; settlement.
24.112  Judicial review.
24.113  Judicial enforcement.
24.114  District court jurisdiction of retaliation complaints under the Energy Reorganization Act.
24.115  Special circumstances; waiver of rules.

APPENDIX A TO PART 24—YOUR RIGHTS UNDER THE ENERGY REORGANIZATION ACT

AUTHORITY: 15 U.S.C. 2622; 33 U.S.C. 1367; 42 U.S.C. 300j-9(i)BVG, 5851, 6971, 7622, 9610; Secretary of Labor's Order No. 5–2007, 72 FR

**Office of the Secretary of Labor** **§ 24.102**

31160 (June 5, 2007); Secretary's Order No. 01–2020, 85 FR 13186 (March 6, 2020).

SOURCE: 76 FR 2820, Jan. 18, 2011, unless otherwise noted.

## Subpart A—Complaints, Investigations, Issuance of Findings

### § 24.100 Purpose and scope.

(a) This part implements procedures under the employee protection (or "whistleblower") provisions for which the Secretary of Labor has been given responsibility pursuant to the following Federal statutes: Safe Drinking Water Act, 42 U.S.C. 300j–9(i); Federal Water Pollution Control Act, 33 U.S.C. 1367; Toxic Substances Control Act, 15 U.S.C. 2622; Solid Waste Disposal Act, 42 U.S.C. 6971; Clean Air Act, 42 U.S.C. 7622; Energy Reorganization Act of 1974, 42 U.S.C. 5851; and Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9610.

(b) This part establishes procedures pursuant to the Federal statutory provisions listed in paragraph (a) of this section for the expeditious handling of retaliation complaints made by employees, or by persons acting on their behalf. These rules, together with those rules codified at 29 CFR part 18, set forth the procedures for submission of complaints under the Federal statutory provisions listed in paragraph (a) of this section, investigations, issuance of findings, objections to findings, litigation before administrative law judges ("ALJ"), issuance of decisions and orders, post-hearing administrative review, and withdrawals and settlements.

### § 24.101 Definitions.

*Assistant Secretary* means the Assistant Secretary of Labor for Occupational Safety and Health or the person or persons to whom he or she delegates authority under any of the statutes listed in § 24.100(a).

*Business days* means days other than Saturdays, Sundays, and Federal holidays.

*Complainant* means the employee who filed a complaint under any of the statutes listed in § 24.100(a) or on whose behalf a complaint was filed.

*OSHA* means the Occupational Safety and Health Administration of the United States Department of Labor.

*Respondent* means the employer named in the complaint, who is alleged to have violated any of the statutes listed in § 24.100(a).

*Secretary* means the Secretary of Labor or persons to whom authority under any of the statutes listed in § 24.100(a) has been delegated.

### § 24.102 Obligations and prohibited acts.

(a) No employer subject to the provisions of any of the statutes listed in § 24.100(a), or to the Atomic Energy Act of 1954 (AEA), 42 U.S.C. 2011 *et seq.*, may discharge or otherwise retaliate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because the employee, or any person acting pursuant to the employee's request, engaged in any of the activities specified in this section.

(b) It is a violation for any employer to intimidate, threaten, restrain, coerce, blacklist, discharge, discipline, or in any other manner retaliate against any employee because the employee has:

(1) Commenced or caused to be commenced, or is about to commence or cause to be commenced, a proceeding under one of the statutes listed in § 24.100(a) or a proceeding for the administration or enforcement of any requirement imposed under such statute;

(2) Testified or is about to testify in any such proceeding; or

(3) Assisted or participated, or is about to assist or participate, in any manner in such a proceeding or in any other action to carry out the purposes of such statute.

(c) Under the Energy Reorganization Act, and by interpretation of the Secretary under any of the other statutes listed in § 24.100(a), it is a violation for any employer to intimidate, threaten, restrain, coerce, blacklist, discharge, or in any other manner retaliate against any employee because the employee has:

(1) Notified the employer of an alleged violation of such statute or the AEA of 1954;

(2) Refused to engage in any practice made unlawful by such statute or the AEA of 1954, if the employee has identified the alleged illegality to the employer; or

(3) Testified or is about to testify before Congress or at any Federal or State proceeding regarding any provision (or proposed provision) of such statute or the AEA of 1954.

(d)(1) Every employer subject to the Energy Reorganization Act of 1974, as amended, shall prominently post and keep posted in any place of employment to which the whistleblower provisions of the Act apply, a fully legible copy of the notice prepared by OSHA, printed as appendix A to this part, or a notice approved by the Assistant Secretary that contains substantially the same provisions and explains the whistleblower provisions of the Act and the regulations in this part. Copies of the notice prepared by OSHA may be obtained from the Assistant Secretary for Occupational Safety and Health, U.S. Department of Labor, Washington, DC 20210, from local OSHA offices, or from OSHA's Web site at *http:// www.osha.gov.*

(2) Where the notice required by paragraph (d)(1) of this section has not been posted, the requirement in § 24.103(d)(2) that a complaint be filed with the Assistant Secretary within 180 days of an alleged violation will be inoperative, unless the respondent establishes that the complainant had knowledge of the material provisions of the notice. If it is established that the notice was posted at the employee's place of employment after the alleged retaliatory action occurred or that the complainant later obtained knowledge of the provisions of the notice, the 180 days will ordinarily run from whichever of those dates is relevant.

(e) This part shall have no application to any employee who, acting without direction from his or her employer (or the employer's agent), deliberately causes a violation of any requirement of any of the statutes listed in § 24.100(a) or the AEA of 1954.

**§ 24.103  Filing of retaliation complaint.**

(a) *Who may file.* An employee who believes that he or she has been retaliated against by an employer in viola-

tion of any of the statutes listed in § 24.100(a) may file, or have filed by any person on the employee's behalf, a complaint alleging such retaliation.

(b) *Nature of Filing.* No particular form of complaint is required. A complaint may be filed orally or in writing. Oral complaints will be reduced to writing by OSHA. If a complainant is not able to file the complaint in English, the complaint may be filed in any language.

(c) *Place of Filing.* The complaint should be filed with the OSHA Area Director responsible for enforcement activities in the geographical area where the employee resides or was employed, but may be filed with any OSHA officer or employee. Addresses and telephone numbers for these officials are set forth in local directories and at the following Internet address: *http:// www.osha.gov.*

(d) *Time for Filing.* (1) Except as provided in paragraph (d)(2) of this section, within 30 days after an alleged violation of any of the statutes listed in § 24.100(a) occurs (*i.e.*, when the retaliatory decision has been both made and communicated to the complainant), an employee who believes that he or she has been retaliated against in violation of any of the statutes listed in § 24.100(a) may file, or have filed by any person on the employee's behalf, a complaint alleging such retaliation. The date of the postmark, facsimile transmittal, e-mail communication, telephone call, hand-delivery, delivery to a third-party commercial carrier, or in-person filing at an OSHA office will be considered the date of filing. The time for filing a complaint may be tolled for reasons warranted by applicable case law.

(2) Under the Energy Reorganization Act, within 180 days after an alleged violation of the Act occurs (*i.e.*, when the retaliatory decision has been both made and communicated to the complainant), an employee who believes that he or she has been retaliated against in violation of the Act may file, or have filed by any person on the employee's behalf, a complaint alleging such retaliation. The date of the postmark, facsimile transmittal, e-mail communication, telephone call, hand-

**Office of the Secretary of Labor** §24.104

delivery, delivery to a third-party commercial carrier, or in-person filing at an OSHA office will be considered the date of filing. The time for filing a complaint may be tolled for reasons warranted by applicable case law.

(e) *Relationship to Section 11(c) complaints.* A complaint filed under any of the statutes listed in §24.100(a) alleging facts that would also constitute a violation of Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. 660(c), will be deemed to be a complaint under both Section 11(c) and the applicable statutes listed in §24.100(a). Similarly, a complaint filed under Section 11(c) that alleges facts that would also constitute a violation of any of the statutes listed in §24.100(a) will be deemed to be a complaint under both section 11(c) and the applicable statutes listed in §24.100(a). Normal procedures and timeliness requirements under the respective statutes and regulations will be followed.

**§24.104   Investigation.**

(a) Upon receipt of a complaint in the investigating office, the Assistant Secretary will notify the respondent of the filing of the complaint by providing the respondent (or the respondent's legal counsel if respondent is represented by counsel) with a copy of the complaint, redacted, if necessary, in accordance with the Privacy Act of 1974, 5 U.S.C. 552a, *et seq.*, and other applicable confidentiality laws. The Assistant Secretary will provide a copy of the unredacted complaint to the complainant (or complainant's legal counsel, if complainant is represented) and to the appropriate office of the Federal agency charged with the administration of the general provisions of the statute(s) under which the complaint is filed.

(b) Within 20 days of receipt of the notice of the filing of the complaint provided under paragraph (a) of this section, the respondent may submit to the Assistant Secretary a written statement and any affidavits or documents substantiating its position. Within the same 20 days, the respondent may request a meeting with the Assistant Secretary to present its position.

(c) Throughout the investigation, the agency will provide to the complainant (or the complainant's legal counsel if complainant is represented by counsel) a copy of all of respondent's submissions to the agency that are responsive to the complainant's whistleblower complaint. Before providing such materials to the complainant, the agency will redact them, if necessary, in accordance with the Privacy Act of 1974, 5 U.S.C. 552a, *et seq.*, and other applicable confidentiality laws.

(d) Investigations will be conducted in a manner that protects the confidentiality of any person who provides information on a confidential basis, other than the complainant, in accordance with part 70 of title 29 of the Code of Federal Regulations.

(e) *Investigation under the six environmental statutes.* In addition to the investigative procedures set forth in §§24.104(a), (b), (c), and (d), this paragraph sets forth the procedures applicable to investigations under the Safe Drinking Water Act; Federal Water Pollution Control Act; Toxic Substances Control Act; Solid Waste Disposal Act; Clean Air Act; and Comprehensive Environmental Response, Compensation and Liability Act.

(1) A complaint of alleged violation will be dismissed unless the complainant has made a prima facie showing that protected activity was a motivating factor in the adverse action alleged in the complaint.

(2) The complaint, supplemented as appropriate by interviews of the complainant, must allege the existence of facts and evidence to make a prima facie showing as follows:

(i) The employee engaged in a protected activity;

(ii) The respondent knew or suspected that the employee engaged in the protected activity;

(iii) The employee suffered an adverse action; and

(iv) The circumstances were sufficient to raise the inference that the protected activity was a motivating factor in the adverse action.

(3) The complainant will be considered to have met the required showing if the complaint on its face, supplemented as appropriate through interviews of the complainant, alleges the

383

existence of facts and either direct or circumstantial evidence sufficient to give rise to an inference that the respondent knew or suspected that the employee engaged in protected activity and that the protected activity was a motivating factor in the adverse action. The required showing may be satisfied, for example, if the complainant shows that the adverse action took place shortly after the protected activity, giving rise to the inference that it was a motivating factor in the adverse action.

(4) The complaint will be dismissed if a preponderance of the evidence shows that the respondent would have taken the same adverse action in the absence of the complainant's protected activity.

(f) *Investigation under the Energy Reorganization Act.* In addition to the investigative procedures set forth in §§ 24.104(a), (b), (c), and (d), this paragraph sets forth special procedures applicable only to investigations under the Energy Reorganization Act.

(1) A complaint of alleged violation will be dismissed unless the complainant has made a prima facie showing that protected activity was a contributing factor in the adverse action alleged in the complaint.

(2) The complaint, supplemented as appropriate by interviews of the complainant, must allege the existence of facts and evidence to make a prima facie showing as follows:

(i) The employee engaged in a protected activity;

(ii) The respondent knew or suspected, actually or constructively, that the employee engaged in the protected activity;

(iii) The employee suffered an adverse action; and

(iv) The circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.

(3) For purposes of determining whether to investigate, the complainant will be considered to have met the required burden if the complaint on its face, supplemented as appropriate through interviews of the complainant, alleges the existence of facts and either direct or circumstantial evidence to meet the required showing, *i.e.*, to give

rise to an inference that the respondent knew or suspected that the employee engaged in protected activity and that the protected activity was a contributing factor in the adverse action. The burden may be satisfied, for example, if the complainant shows that the adverse action took place shortly after the protected activity, giving rise to the inference that it was a contributing factor in the adverse action. If the required showing has not been made, the complainant (or the complainant's legal counsel if complainant is represented by counsel) will be so notified and the investigation will not commence.

(4) Notwithstanding a finding that a complainant has made a prima facie showing, as required by this section, an investigation of the complaint will not be conducted or will be discontinued if the respondent, pursuant to the procedures provided in this paragraph, demonstrates by clear and convincing evidence that it would have taken the same adverse action in the absence of the complainant's protected behavior or conduct.

(5) If the respondent fails to make a timely response or fails to demonstrate by clear and convincing evidence that it would have taken the same adverse action in the absence of the behavior protected by the Act, the Assistant Secretary will proceed with the investigation. The investigation will proceed whenever it is necessary or appropriate to confirm or verify the information provided by the respondent.

**§ 24.105  Issuance of findings and orders.**

(a) After considering all the relevant information collected during the investigation, the Assistant Secretary will issue, within 30 days of filing of the complaint, written findings as to whether or not there is reasonable cause to believe that the respondent has retaliated against the complainant in violation of any of the statutes listed in § 24.100(a).

(1) If the Assistant Secretary concludes that there is reasonable cause to believe that a violation has occurred, he or she shall accompany the findings with an order providing relief to the complainant. The order shall include,

where appropriate, a requirement that the respondent abate the violation; reinstate the complainant to his or her former position, together with the compensation (including back pay), terms, conditions and privileges of the complainant's employment; pay compensatory damages; and, under the Toxic Substances Control Act and the Safe Drinking Water Act, pay exemplary damages, where appropriate. At the complainant's request the order shall also assess against the respondent the complainant's costs and expenses (including attorney's fees) reasonably incurred in connection with the filing of the complaint.

(2) If the Assistant Secretary concludes that a violation has not occurred, the Assistant Secretary will notify the parties of that finding.

(b) The findings and order will be sent by means that allow OSHA to confirm delivery to all parties of record (and each party's legal counsel if the party is represented by counsel). The findings and order will inform the parties of their right to file objections and to request a hearing and provide the address of the Chief Administrative Law Judge. The Assistant Secretary will file a copy of the original complaint and a copy of the findings and order with the Chief Administrative Law Judge, U.S. Department of Labor.

(c) The findings and order will be effective 30 days after receipt by the respondent (or the respondent's legal counsel if the respondent is represented by counsel) or on the compliance date set forth in the order, whichever is later, unless an objection and/or a request for a hearing has been filed as provided in § 24.106.

[76 FR 2820, Jan. 18, 2011, as amended at 86 FR 1782, Jan. 11, 2021]

## Subpart B—Litigation

### § 24.106  Objections to the findings and order and request for a hearing.

(a) Any party who desires review, including judicial review, of the findings and order must file any objections and/or a request for a hearing on the record within 30 days of receipt of the findings and order pursuant to § 24.105(b). The objection and/or request for a hearing must be in writing and state whether the objection is to the findings and/or the order. The date of the postmark, facsimile transmittal, email communication, or electronic submission will be considered to be the date of filing; if the objection is filed in person, by hand-delivery or other means, the objection is filed upon receipt. Objections must be filed with the Chief Administrative Law Judge, U.S. Department of Labor, in accordance with 29 CFR part 18, and copies of the objections must be served at the same time on the other parties of record, the OSHA official who issued the findings and order, the Assistant Secretary, and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor.

(b) If a timely objection is filed, all provisions of the order will be stayed. If no timely objection is filed with respect to either the findings or the order, the findings and order will become the final decision of the Secretary, not subject to judicial review.

[76 FR 2820, Jan. 18, 2011, as amended at 86 FR 1782, Jan. 11, 2021]

### § 24.107  Hearings.

(a) Except as provided in this part, proceedings will be conducted in accordance with the rules of practice and procedure and the rules of evidence for administrative hearings before the Office of Administrative Law Judges, codified at part 18 of title 29 of the Code of Federal Regulations.

(b) Upon receipt of an objection and request for hearing, the Chief Administrative Law Judge will promptly assign the case to a judge who will notify the parties of the day, time, and place of hearing. The hearing is to commence expeditiously, except upon a showing of good cause or otherwise agreed to by the parties. Hearings will be conducted de novo, on the record.

(c) If both the complainant and the respondent object to the findings and/or order, the objections will be consolidated, and a single hearing will be conducted.

[76 FR 2820, Jan. 18, 2011, as amended at 86 FR 1782, Jan. 11, 2021]

**§ 24.108  Role of Federal agencies.**

(a)(1) The complainant and the respondent will be parties in every proceeding. At the Assistant Secretary's discretion, he or she may participate as a party or participate as amicus curiae at any time at any stage of the proceeding. This right to participate includes, but is not limited to, the right to petition for review of a decision of an administrative law judge, including a decision approving or rejecting a settlement agreement between the complainant and the respondent.

(2) Copies of documents in all cases, whether or not the Assistant Secretary is participating in the proceeding, must be sent to the Assistant Secretary, Occupational Safety and Health Administration, and to the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor.

(b) The Environmental Protection Agency, the Nuclear Regulatory Commission, and the Department of Energy, if interested in a proceeding, may participate as amicus curiae at any time in the proceedings, at the respective agency's discretion. At the request of the interested Federal agency, copies of all pleadings in a case must be sent to the Federal agency, whether or not the agency is participating in the proceeding.

**§ 24.109  Decision and orders of the administrative law judge.**

(a) The decision of the ALJ will contain appropriate findings, conclusions, and an order pertaining to the remedies provided in paragraph (c) of this section, as appropriate.

(b)(1) In cases arising under the ERA, a determination that a violation has occurred may only be made if the complainant has demonstrated by a preponderance of the evidence that the protected activity was a contributing factor in the adverse action alleged in the complaint. If the complainant has demonstrated by a preponderance of the evidence that the protected activity was a contributing factor in the adverse action alleged in the complaint, relief may not be ordered if the respondent demonstrates by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected activity.

(2) In cases arising under the six environmental statutes listed in §24.100(a), a determination that a violation has occurred may only be made if the complainant has demonstrated by a preponderance of the evidence that the protected activity caused or was a motivating factor in the adverse action alleged in the complaint. If the complainant has demonstrated by a preponderance of the evidence that the protected activity caused or was a motivating factor in the adverse action alleged in the complaint, relief may not be ordered if the respondent demonstrates by a preponderance of the evidence that it would have taken the same adverse action in the absence of the protected activity.

(c) Neither the Assistant Secretary's determination to dismiss a complaint without completing an investigation pursuant to §24.104(e) nor the Assistant Secretary's determination to proceed with an investigation is subject to review by the ALJ, and a complaint may not be remanded for the completion of an investigation or for additional findings on the basis that a determination to dismiss was made in error. Rather, if there otherwise is jurisdiction, the ALJ will hear the case on the merits or dispose of the matter without a hearing if the facts and circumstances warrant.

(d)(1) If the ALJ concludes that the respondent has violated the law, the order shall direct the respondent to take appropriate affirmative action to abate the violation, including reinstatement of the complainant to that person's former position, together with the compensation (including back pay), terms, conditions, and privileges of that employment, and compensatory damages. In cases arising under the Safe Drinking Water Act or the Toxic Substances Control Act, exemplary damages may also be awarded when appropriate. At the request of the complainant, the ALJ shall assess against the respondent, all costs and expenses (including attorney fees) reasonably incurred.

(2) In cases brought under the Energy Reorganization Act, when an ALJ issues a decision that the complaint

386