**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | **Notice of Pendency** |
| | Civil L.R. 3-13 |
| vs. | |
| | *Apple, Inc. and Ashley Gjovi[k],* |
| | Case No. 32-CA-284428, U.S. |
| **Apple Inc.**, a corporation, | National Labor Relations |
| | Board |
| Defendant. | |
| | Violations of 29 U.S.C. § 158(a)(1) |
| | NLRB Hearing: Jan. 22 2025 |

# Notice of Administrative Pendency

*Apple, Inc.,* Case No. 32-CA-284428, U.S. National Labor Relations Board.

Plaintiff, Ashley Gjovik, files this notice of administrative pendency regarding one of her seven pending NLRA claims against Defendant, Apple Inc, with the U.S. National Labor Relations Board ("NLRB").

On September 27 2024, the U.S. NLRB served Gjovik and Apple Inc with a complaint against Apple and a notice of a hearing scheduled for January 22 2025. [Exhibit A]. Gjovik filed the originating charge (no. 32-CA-284428) on October 12 2021. [Exhibit B]. She alleged that many of Apple's employment policies and contracts are unlawful and violate the NLRA (among other state and federal laws), including all of the policies that Apple referenced in its supposed justification for its abrupt termination of her employment on September 9 2021. [4AC ¶ 12, 125, 137, 168].

NLRB's complaint explains that the NLRB "*alleges that Apple, Inc. has violated the Act*" … by "*interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act…*" "*based on a charge filed by Ashley Gjovik.*" [Exhibit A, pages 1 & 13].

NLRB details more than twenty-five unique violations of 29 U.S.C. § 158(a)(1) based on Gjovik's charge [Exhibit A, pages 2-13]. The NLRB's requested remedies in the complaint include injunctive relief for "*all current and former employees employed by [Apple] at any time since April 13, 2021 at all its facilities in the United States and its Territories.*" [Exhibit A, page 13]. (This will be Apple's first nation-wide NLRB adjudication).

The hearing and complaint were filed pursuant to 29 U.S.C. § 151 *et seq.*, and 29 C.F.R. § 102.15, and the hearing is to be formal adjudication governed by 5 U.S.C. §§ 554, 556, and 557. The hearing is scheduled to be held before an administrative law judge of the National Labor Relations Board, located at the Spring Street U.S. Court House in Los Angeles, California. [Exhibit A, page 15].

Gjovik is self-represented and plans to actively participate in the adjudicatory proceedings. Under NLRA regulations, she is allowed to file briefs and motions, introduce evidence, and question witnesses. [29 C.F.R. Part 101, *et seq.*] Per the Sept. 27 2024 complaint, Apple is represented in this NLRB case by seven attorneys at two law firms. [Exhibit A, pages 16-17].

- ***McDermott Will & Emory:*** Christopher Foster (San Francisco, CA) and Syed Mannan (San Francisco, CA).
- ***Morgan, Lewis & Bockius:*** Crystal Carey (New York, NY), Harry Johnson (Los Angeles, CA), Brian Mahoney (Philadelphia, PA), Kelcey Phillips (Washington, DC), and Mark Stolzenburg (Chicago, IL).
- Note: *Orrick, Herrington & Sutcliffe* (opposing counsel in this civil lawsuit) does not appear to be involved in the NLRB proceedings.

The representative for Apple Inc as the Respondent in the NLRB proceeding is Tim Cook, Chief Executive Officer. [Exhibit A, page 16].

NLRB case no. 32-CA-284428 challenges many of the same policies that Gjovik has concurrently challenged under California Labor Code §§ 96(k) [4AC ¶ 185-188], 98.7, 232, 232.5, 1101, 1102, [4AC ¶ 181-184], and 1102.5 [4AC ¶ 166-167] in this lawsuit.

If the NLRB must seek court assistance to enforce Orders, the agency must petition a U.S. District Court. [29 C.F.R. § 101.14] Appeals of NLRB agency decisions are directed to a Circuit Court of Appeals. [*Id.*] In this case, appeals would go to the Ninth Circuit, and enforcement challenges are most likely to be filed in a California U.S. District Court.

This Notice of Pendency is filed for the Court's awareness and there is no request from the court at this time.

Dated: September 30 2024

Respectfully,

/s/ Ashley M. Gjovik

*Pro Se Plaintiff*

Boston, Massachusetts.

## Note: Prior Notices of Pendency

See, Dkt. No. 100, August 27 2024

> *Ashley Gjovik v Apple Inc,* ARB Case No. 2024-0060, OALJ Case No. 2024-CER-00001 [CERCLA, 42 U.S.C. § 9610].

# EXHIBIT A

## THE COMPLAINT

## UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
## REGION 21

**APPLE, INC.**                                        **Case   32-CA-284428**

    **and**

**ASHLEY GJOVIC, an Individual**

### COMPLAINT AND NOTICE OF HEARING

This Complaint and Notice of Hearing is based on a charge filed by Ashley Gjovik ("Charging Party" or "Gjovik").  It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Apple, Inc. ("Respondent"), has violated the Act as described below.

1.      The charge was filed by Gjovik on October 12, 2021, and a copy was served on Respondent by U.S. mail on October 13, 2021.

2.      (a)      At all times reasonably encompassed by this complaint and any answer Respondent may file, i.e., all material times, Respondent,  a California corporation with a headquarters at One Apple Park Way, Cupertino, CA and retail facilities throughout the U.S.,  has been engaged in the development, manufacture, and retail sale of consumer electronics and software.

(b)      Annually, in the course and conduct of its operations, Respondent derives gross revenues in excess of $500,000, and purchased and received at its California facilities products, goods and materials valued in excess of $5,000 directly from points outside the State of California.

(c)     At all times reasonably encompassed by this complaint and any answer Respondent may file, i.e., all material times, Respondent  has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

3.     Since at least April 13, 2021, in a **Frequently Asked Questions** page on its intranet, a copy of which is attached to this Complaint as Attachment A and is incorporated herein in its entirety, Respondent has defined confidential information as follows:

> Apple Confidential information is anything not explicitly, publicly, or purposefully disclosed by Apple. Examples of Apple Confidential information include unannounced products (including their release dates, pricing, and specifications), unannounced sales promotions, certain AppleWeb announcements, organizational charts, financial forecasts, and customer information.

4.     Since at least April 13, 2021, Respondent has maintained a "**Confidentiality and Intellectual Property Agreement**" (IPA), a copy of which is attached to this Complaint as Attachment B and is incorporated herein in its entirety.

(a)     Under the section heading "**I.   Confidential and Proprietary Information**," the IPA states, inter alia:

> You understand that your employment by Apple creates a relationship of confidence and trust with respect to any confidential, proprietary, or non-public information that may be disclosed to you or otherwise learned by you in the course of employment at Apple, including but not limited to any confidential information of third parties disclosed to Apple. As referred to herein, "Proprietary information" means all information not generally known outside Apple and/or kept confidential by Apple, including for example but not limited to (a) trade secrets, R&D records, reports, samples, manuals, plans, specifications, inventions, ideas, designs, prototypes, software, source code, or any other materials or information relating to past, existing, and future products and services whether or not developed, marketed, used, or rejected by Apple or persons or companies dealing with Apple; (b) sales, profits, organization, customer lists, pricing, sources of material, supply, costs, manufacturing, financials, forecasts, market research, or any other information relating to the business operations or affairs of Apple or persons or companies dealing with Apple; and (c) the employment and personnel information of Apple, such as compensation, training, recruiting, and other human resources information.

(b)    There is a footnote at the end of the paragraph quoted above that states:

> Nothing in this Agreement should be interpreted as restricting your rights to speak freely about your wages, hours, or working conditions as legally permitted.

(c)    Under the section heading "**I. Confidential and Proprietary Information**," the IPA further states:

> **A. Treatment of Proprietary Information**. You understand and agree that your employment by Apple prohibits you, during or after employment, from using or disclosing, or permitting any other person or entity to use or disclose, any Proprietary Information without the written consent of Apple, except as necessary to perform your duties as an employee of Apple. You understand and agree to strictly comply with all of Apple's rules and policies regarding Proprietary Information and use best efforts to safeguard such Proprietary Information and protect it against disclosure, misuse, loss, or theft. Upon termination of employment with Apple, you will promptly deliver to Apple all documents and materials of any kind pertaining to your work at Apple, and you agree that you will not take with you any documents, materials, or copies thereof, whether on paper or any other medium, containing any Proprietary Information.

5.    Since at least April 13, 2021, Respondent has maintained a **Business Conduct Policy** (BCP), and since at least April 13, 2021, Respondent has maintained as part of the BCP the rules and provisions set forth below. A copy of the 2020 version of the BCP is attached to this Complaint as Attachment C and is incorporated herein in its entirety.

(a)    Under the section heading "**The Way We Do Business Worldwide**," the BCP states, inter alia:

> **Your Responsibilities and Obligation to Take Action**
>
> Everything we do is a reflection of Apple. We expect you to:
>
> - **Follow the Policy**. Comply with the letter and spirit of Apple's Business Conduct Policy and all applicable legal requirements.
>
> - **Speak up**. If you see or hear of any violation of Apple's Business Conduct Policy, other Apple policies, or legal or regulatory requirements, you must notify either your manager, People Team, Legal, or Business Conduct.

- **Use good judgment and ask questions**. Apply Apple's principles of business conduct, and review our policies and legal requirements. When in doubt about how to proceed, discuss it with your manager, your People Business Partner, Legal, or Business Conduct. Any failure to comply with Apple's Business Conduct Policy—or failure to report a violation—may result in disciplinary action, up to and including termination of employment.

You are also required to fully cooperate in any Apple investigation, and keep any information shared with you confidential to safeguard the integrity of the investigation.

(b)     Under the section heading "**The Way We Do Business Worldwide**," the

2020 BCP further states:

**Your Rights as an Employee**

While we expect employees to follow the Business Conduct Policy, nothing in this Policy should be interpreted as being restrictive of your right to speak freely about your wages, hours, or working conditions.

In the August 2022 BCP, this subsection was modified to read as follows:

**Your Rights as an Employee**

You are permitted to speak freely about your wages, hours, and working conditions, including information about harassment, discrimination, or any other conduct you have reason to believe is unlawful, and nothing in this Policy, or any Apple policy, should be interpreted as being restrictive of your right to do so.

(c)     Under the section heading "**Protecting Apple**," the BCP states:

**Protecting Apple's Assets and Information**

You play a key role in helping us protect Apple. Assets include Apple's proprietary information (such as intellectual property, confidential business plans, unannounced product plans, sales and marketing strategies, and other trade secrets), as well as physical assets such as cash, equipment, supplies and product inventory.

- **Watch what you say**. Being aware of where you are, who is around you, and what they might see or overhear is an important way we all protect Apple's secrets.

- **Protect our assets**. Keep track of the assets and information Apple has entrusted you, and prevent loss, misuse, waste, or theft.

- **Set an example**. Model behavior that protects our assets and information at all times.

(d)     Under the section heading "**Protecting Apple**," the BCP further states:

**Apple Confidential Information**

One of our greatest assets is information about our products and services, including future product offerings. Never disclose confidential, operational, financial, trade-secret, or other business information without verifying with your manager whether such disclosure is appropriate. We are very selective when disclosing this type of information to vendors, suppliers, or other third parties, and only do so once a non-disclosure agreement is in place. Even with Apple, confidential information should only be shared on a need-to-know basis. The Intellectual Property Agreement that you signed when you joined Apple outlines your duty to protect our information.

For more information, visit the Global Security website.

(e)     Under the section heading "**Protecting Apple**," the BCP further states:

**Non-Disclosure/Confidentiality Agreements**

Never share confidential information about Apple's products or services without your manager's approval. When there is a business need to share confidential information with a supplier, vendor, or other third party, never volunteer more than what is necessary to address the business at hand. Any confidential information shared outside Apple should be covered by a non-disclosure/confidentiality agreement (NDA). Contact Legal in your region to obtain an NDA. In the United States, you can find NDA information and support on the Legal website.

(f)     Under the section heading "**Protecting Apple**," the BCP further states:

**Accuracy of Records and Reports**

Accurate and honest records are critical to meeting our legal, financial, and management obligations. You should ensure that all records and reports, including timecards, customer information, technical and product information, correspondence, and public communications are comprehensive, fair, accurate, timely, and understandable.

Do not misstate facts, omit critical information, or modify records or reports in any way to mislead others, and never assist others in doing so. Intentional manipulation of Apple records is a form of fraud.

(g)     Under the section heading "**Protecting Apple**," the BCP further states:

**Public Speaking and Press Inquiries**

All public or outside speaking engagements that relate to Apple's business or products must be pre-approved by your manager and Corporate Communications. If your request is approved, you may not request or accept any form of personal compensation from the organization that requested your participation, but you may accept reimbursement for incurred expenses. All inquiries from the media, industry, or financial analyst community must be referred to Corporate Communications or Investor Relations.

(h)      Under the section heading "**Protecting Apple,**" the BCP further states:

**Publishing Articles**

If you want to contribute an article or other type of submission to a publication or blog on a topic that relates to Apple's business or products or could be seen as a conflict of interest, you must first request approval from Corporate Communications. If your contribution is technical or academic and relates to Apple, complete the Academic and Industry-Related Activities Questionnaire to obtain review from Legal and Business Conduct. If your contribution is determined to be a conflict of interest, you will need to get senior vice president approval. For additional information, see the Social Media and Online Communications guidelines.

(i)      Under the section heading "**Individual Accountability,**" the BCP states:

**Avoiding Conflicts of Interest**

A conflict of interest is any activity that may damage Apple's reputation or financial interests, or gives the appearance of impropriety or divided loyalty. Avoid any situation that creates a real or perceived conflict of interest. If you are unsure about a potential conflict, talk to your manager, Business Conduct, or your People Business Partner.

(j)      Under the section heading "**Individual Accountability,**" the BCP further states:

**Conflicts of Interest and Outside Activities**

You may participate in outside activities, including secondary employment, businesses, inventions, and serving on boards, only if they do not present a conflict of interest and you adhere to the rules set out below.

Apple generally considers an outside activity to be a conflict of interest if it:

[…]

6

- Would require you to disclose or use confidential Apple information.

[…]

- Arises from your role in Apple's business relationship with the organization.

(k)  Under the sub-heading "**Conflicts of Interest and Outside Activities**," the

BCP further states:

Work with your manager and Business Conduct to evaluate a potential conflict of interest. If an outside activity presents a conflict of interest, you must partner with a People Business Partner, and obtain written approval from your manager, Legal (if applicable), and the senior most person reporting to the CEO of both your and any relevant organizations. Contact Business Conduct to assist with Legal review.

(l)  Under the sub-heading "**Conflicts of Interest and Outside Activities**," the

BCP further states:

Any employee, full or part-time, who is participating in an outside activity, must comply with the following rules. **Do not:**

- Use any time at work or any Apple assets for your outside activity. This includes Apple's workspace, phones, computers, internet access, photocopiers, and any other Apple assets or services.

[…]

- Use confidential Apple information.

(m)  Under the section heading "**Individual Accountability**," the BCP further states:

**Outside Employment and Inventions**

Before participating in creating inventions or businesses that are in the same area as your work for Apple, or that compete with or relate to Apple's present or reasonably anticipated business, products or services, you must have written permission from your manager and the senior vice president of your organization. Before taking any paid employment outside of Apple, you should notify your manager. Visit the Conflicts of Interest page for more information on what would be considered a conflict.

(n)  Under the section heading "**Business Integrity**," the BCP states:

**Private Employee Information**

You should never share a coworker or prospective employee's personal information. This includes information regarding their employment history, personal contact information, compensation, health information, or performance and disciplinary matters. Any Legal or business need-to-know exceptions should be approved by your manager and Legal.

(o)     Under the section heading "**Business Integrity**," the BCP further states:

As an Apple employee, you should understand that subject to local laws and regulations and in accordance with Apple's review process, we may do one of the following when you access Apple's network or systems, or use any device, regardless of ownership, to conduct Apple business:

- Access, search, monitor, and archive all data and messages sent, accessed, viewed, or stored (including those from iCloud, Messages, or other personal accounts).

- Conduct physical, video, or electronic surveillance, search your workspace (e.g. file cabinets, desk drawers, and offices, even if locked), review phone records, or search any non-Apple property (e.g. backpacks, handbags) while on company premises.

- Disclose to law enforcement, without prior notice, any information discovered during a search that may indicate unlawful behavior.

(p)     Under the section heading "**Business Integrity**," the BCP further states:

While limited personal use of Apple equipment and systems is allowed, Apple may monitor equipment and systems. You should not have any expectation about the privacy of content or personal information on Apple systems or networks, including VPN. To learn more, read our Information Security Policies and guidance on Personal Information Privacy on the People site, which explain Apple's rights and your rights when conducting Apple business or using Apple-provided equipment. For more information, contact the Privacy team.

6.     Since at least April 13, 2021, Respondent has maintained an "**About Workplace Policies**" (AWP) page on its intranet, a copy of which is attached to this Complaint as Attachment D and is incorporated herein in its entirety.

(a)     Under the section heading "**Important points to know**," the AWP states, inter alia:

- If you have knowledge of a possible violation of Apple's Business Conduct Policy (PDF), any other Apple policy, or legal or regulatory requirements, you must notify your manager, your People Business Partner, People Support, or the Business Conduct Helpline.

7.      Since at least April 13, 2021, Respondent has maintained a **Workplace Searches and Privacy Policy** (WSPP), a copy of which is attached to this Complaint as Attachment E and is incorporated herein in its entirety.

(a)      The first paragraph of the WSPP states:

In order to protect Apple confidential and sensitive information and maintain the security and integrity of our networks and equipment, any use of Apple property, as well as use of your personal devices for Apple business or for accessing Apple networks, is subject to this policy.

(b)      Under the section heading "**Use of Apple systems and data**," the WSPP states:

All Apple facilities, furnishings, supplies, equipment, networks, and electronic systems (such as internet and intranet access, voicemail, email, instant messaging, and collaboration tools) are company property and are provided to conduct Apple business. Personal use is permitted as long as such use is reasonable and doesn't interfere with normal business activities. It must also not affect your performance, violate Apple policies and practices, or applicable local laws.

Generally, you should use Apple equipment to conduct Apple business. If you use your personal property to conduct Apple business (such as computers, data storage devices, mobile devices, and so on), or to access Apple networks, you must act in accordance with Apple policies. In addition, your property may be subject to search and the Apple-related content may be removed.

(c)      Under the section heading "**Workplace searches**," the WSPP states:

Only in cases where allowed under local law, Apple may:

- Access, search, monitor, archive, and delete Apple data stored on all of its property, as well as non-Apple property, if used for Apple business or if used for accessing Apple data, servers, or networks. This includes all data and messages sent, accessed, viewed, or stored (including those from iCloud, Messages, or other personal accounts) using Apple equipment, networks, or systems.

- Conduct physical, video, or electronic surveillance, search your workspace such as file cabinets, desks, and offices (even if locked), review phone records, or search any non-Apple property (such as backpacks, purses) on company premises.

This means that you have no expectation of privacy when using your or someone else's personal devices for Apple business, when using Apple systems or networks, or when on Apple premises.

The search or removal of Apple-related content on a device will be determined on a case-by-case basis when there is a business need and subject to local approval processes. Refusing to permit a search or removal of Apple-related content may result in disciplinary action up to and including termination of employment.

8.      Since at least April 13, 2021, Respondent has maintained a "**Misconduct and Discipline Policy**" (MDP), a copy of which is attached to this Complaint as Attachment F and is incorporated herein in its entirety.

(a)      Under the section heading "**Conduct warranting immediate termination**," the MDP states, inter alia:

Conduct that may warrant immediate termination of employment includes, but isn't limited to:

**Policy violations**

- Violating confidential, proprietary, and trade secret information obligations (including those stated in Apple's Intellectual Property Agreement).

- Using Apple time, materials, facilities, equipment, or electronic resources for purposes unrelated to Apple business without your manager's express permission

(b)      Under the section heading "**Conduct warranting immediate termination**," the MDP further states:

**Other violations**

- Video or audio recording others without their prior consent. Apple may use recording or surveillance equipment for safety or security reasons.

- Photography at any Apple facility or home office or during meetings at any location where Apple confidential information could be compromised.

9.      Since at least April 13, 2021, Respondent has maintained a "**Social Media and Online Communications Policy**" (SMOCP), a copy of which is attached to this Complaint as Attachment G and is incorporated herein in its entirety.

(a)      The SMOCP states, inter alia:

Most of us rely on online resources such as email, social media, blogs, and wikis to stay connected.

It's your decision whether or not to engage in these or other online communications. But keep in mind that Apple's policies and guidelines apply to any activities that affect your performance, the performance of other Apple employees, or Apple's business interests.

This is true even if you blog, tweet, write, post, comment, share visual or other media, or otherwise communicate online outside of work — even if you do not identify yourself as an Apple employee. So before you click or tap "send," keep these guidelines in mind:

- **Protect Apple's confidential information**. As we conduct business around the world, our competitive strategy requires us to keep Apple's intellectual property and proprietary information confidential. This includes non-public information such as the timing, pricing, and design of Apple products; Apple's overall business performance; and the layout of our stores (including back-of-house areas, which contain competitive business operations information, customer data, sales targets, and other proprietary information).

All Apple employees have an obligation to protect this information. Doing so respects the significant amount of time and energy Apple puts into introducing our customers to new products and new retail stores. For more information on confidentiality, see the Intellectual Property Agreement you signed when you were hired. You can also learn more about protecting Apple's assets and confidential information in Apple's Business Conduct Policy.

[…]

Nothing in these guidelines should be interpreted as restricting your right to speak freely about your wages, hours, or working conditions.

10.     Since at least April 13, 2021, Respondent has maintained a "**Confidentiality Obligations Upon Termination of Employment Policy**" (COTEP), a copy of which is attached to this Complaint as Attachment H and is incorporated herein in its entirety.

(a)     The COTEP states, inter alia:

During your employment, you had access to proprietary information of Apple Inc. and its subsidiaries (Apple). Examples of such proprietary information means all information not generally known outside Apple and/or kept confidential by Apple including for example and without limitation (a) trade secrets, R&D records, reports, samples, manuals plans, specifications, inventions, ideas, designs, prototypes, software, source code, or any other materials or information relating to past, existing, and future products and services whether or not developed, marketed, used, or rejected by Apple or persons or companies dealing with Apple; (b) sales, profits, organization, customer lists, pricing, sources of material, supply, costs, manufacturing, financials, forecasts, budgets, market research, marketing or advertising plans, or any other information relating to business operations or affairs of Apple or persons or companies dealing with Apple; (c) the employment and personnel information of Apple, such as compensation, training, recruiting, and other human resource information. You may have created such information in the course of your everyday work. You may have additionally had access to proprietary information in the course of your work at Apple obtained by third parties including subsidiaries, affiliates, vendors, suppliers, customers, consultants, licensees, and dealers. You are obligated not to disclose any above described proprietary information to any other person or company (other than with Apple's prior consent) or use it for your own benefit. Furthermore you are obligated to have returned to Apple all documents and materials of any kind pertaining to your work at Apple and containing any proprietary information.

Certainly Apple has no desire to prevent you from the lawful exercise of your professional skills. However, any unauthorized disclosure or use of Apple proprietary information in conjunction with your new employment— or otherwise—would be a breach of your agreement with Apply, as well as a violation of the laws relating to the protection of such information. Your obligations continue until such time as the proprietary information is generally available to the public.

[…]

If you have any questions regarding the Confidentiality and Intellectual Property Agreement, if you are concerned about the use or disclosure of proprietary information, or if you should find yourself in a position where you are uncertain about whether an idea or invention should have been

disclosed to Apple, please promptly contact the *Apple IP Transactions Department* at [redacted] and we will be pleased to review the matter with you.

11.     Since at least April 13, 2021, Respondent has maintained a "**Checklist for Employees Leaving Apple**" (Checklist), a copy of which is attached to this Complaint as Attachment I and is incorporated herein in its entirety.

> (a)     The Checklist states, inter alia:
>
> Confidentiality: As a reminder, you are expected to continue to abide by the provisions of the Intellectual Property Agreement after your employment with Apple ends. Examples include but are not limited to unreleased product information, new product schedules, budgets, marketing plans, organization charts, customer lists, and vendor contacts.

12.     By the conduct described above in paragraphs 3, 4(a), 4(c), 5(a), 5(c) – 5(p), and 6 – 11, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

13.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

**WHEREFORE,** as part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring:

- Respondent to physically and electronically post, and electronically distribute to all current and former employees employed by Respondent at any time since April 13, 2021 at all its facilities in the United States and its Territories, any Notice that may issue in these proceedings if Respondent customarily uses electronic means such as an electronic bulletin board, e-mail, website, text messaging, internal apps, or intranet to communicate with those employees.

The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the complaint.  The answer must be **electronically filed with this office on or before Friday, October 11, 2024.**  Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.   To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions.  Responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented.  See Section 102.21.  If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if

an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the complaint are true.

### <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE THAT on **January 22, 2025, at 9:00 a.m.** at the National Labor Relations Board, Region 21, 312 N. Spring Street, 10th Floor, Los Angeles, CA, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated:  September 27, 2024

William B. Cowen
Regional Director, Region 21
National Labor Relations Board
US Court House, Spring Street
312 N Spring Street, 10th Floor
Los Angeles, CA 90012

Attachments

FORM NLRB 4338
(6-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

Case 32-CA-284428

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements ***will not be granted*** unless good and sufficient grounds are shown ***and*** the following requirements are met:

(1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2)  Grounds must be set forth in ***detail***;

(3)  Alternative dates for any rescheduled hearing must be given;

(4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Tim Cook, Chief Executive Officer
Apple, Inc.
One Apple Park Way
Cupertino, CA 95014
tcook@apple.com

Christopher Foster, Attorney at Law
McDermott Will & Emory LLP
415 Mission Street, Suite 5600
San Francisco, CA 94105
cfoster@mwe.com

Syed Mannan, Attorney at Law
McDermott Will & Emery LLP
415 Mission Street, Suite 5600
San Francisco, CA 94105
smannan@mwe.com

Crystal S. Carey, Attorney at Law
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178
crystal.carey@morganlewis.com

Brian Mahoney, Attorney at Law
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
brian.mahoney@morganlewis.com

Kelcey J. Phillips, Attorney at Law
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave
Washington, DC 20004
kelcey.phillips@morganlewis.com

(continue' s next page)

Mark L. Stolzenburg, Attorney at Law
Morgan Lewis & Bockius LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
mark.stolzenburg@morganlewis.com

Harry I. Johnson III, Attorney at Law
Morgan, Lewis & Bockius LLP
2049 Century Park E Ste 700
Los Angeles, CA 90067-3109
harry.johnson@morganlewis.com

Ashley Marie Gjovik

ashleymgjovik@protonmail.com

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.**  If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations.  The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently.  To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts.  You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**.  The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations.  In addition, you should be aware of the following:

- **Special Needs**:  If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance.  Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference**:  One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference.  You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.   DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations.  Please note in particular the following:

- **Witnesses and Evidence**:  At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:  Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered**

Form NLRB-4668
(6-2014)

**in evidence.**  If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

# EXHIBIT B

## THE CHARGE

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| **32-CA-284428** | **10-12-2021** |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br><br>Apple Inc. | b. Tel. No. (408) 996-1010 |
| | c. Cell No. |
| | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way, Cupertino, CA 95014 | e. Employer Representative<br>Tim Cook<br>Chief Executive Officer | g. e-Mail |
| | | h. Number of workers employed<br>200+ |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Office complex | j. Identify principal product or service<br>Computer hardware | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Within the past six months and continuing to the present date, the above-named employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by promulgating, maintaining, and enforcing work rules that prevent or discourage employees from engaging in protected concerted activities, including the employment agreement policy, the confidentiality agreement policy, the business conduct policy, and other policies enforced against employees contained within the employee handbook.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

Ashley Marie Gjovik

| | |
|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)*<br>████████████████ | 4b. Tel. No. █████ |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail<br>ashleymgjovik@protonmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. ████████ |
|---|---|
| By *(signature of representative or person making charge)*   Ashley Gjovik, an Individual<br>*(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | Fax No. |
| Address ████████████   *(date)* | e-Mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

 An official website of the United States government  **Here's how you know** ⌄

Español | Other Languages 🌐

 **NLRB**
**National Labor**
**Relations Board**

≡ **MENU**

Home

# Case Search Results

## Apple Inc.

E-File     Follow

**Case Number:** 32-CA-284428          **Location:** Cupertino, CA
**Date Filed:** 10/12/2021             **Region Assigned:** Region 32, Oakland, California
**Status:** Open

## Docket Activity

**Items per page**  10 ⌄

| Date ⇅ | Document | Issued/Filed By |
|---|---|---|
| 09/27/2024 | Complaint and Notice of Hearing* | NLRB - GC |
| 10/12/2021 | Signed Charge Against Employer* | Charging Party |

The Docket Activity list does not reflect all actions in this case.

* This document may require redactions before it can be viewed. To obtain a copy, please file a request through our FOIA Branch.

## Related Documents

Related Documents data is not available.

## Allegations

- 8(a)(1) Coercive Rules

https://www.nlrb.gov/case/32-CA-284428

## Participants

| Participant | Address | Phone |
| --- | --- | --- |
| **Charged Party / Respondent**<br>Legal Representative<br>Mahoney, Brian<br>Morgan, Lewis & Bockius LLP | 1701 Market Street<br>Philadelphia,, PA<br>19103-2921 | (215)963-5293 |
| **Charged Party / Respondent**<br>Legal Representative<br>Foster, Christopher<br>McDermott Will & Emory LLP | 415 Mission Street<br>Suite 5600<br>San Francisco, CA<br>94105 | (628)218-3826 |
| **Charged Party / Respondent**<br>Legal Representative<br>Carey, Crystal<br>Morgan, Lewis & Bockius, LLP | 101 Park Avenue<br>New York, NY<br>10178 | (212)309-6694 |
| **Charged Party / Respondent**<br>Legal Representative<br>Johnson, Harry<br>Morgan, Lewis & Bockius LLP | 2049 Century Park E Ste 700<br>Los Angeles, CA<br>90067-3109 | (310)255-9005 |
| **Charged Party / Respondent**<br>Legal Representative<br>Phillips, Kelcey<br>Morgan, Lewis & Bockius LLP | 1111 Pennsylvania Ave<br>Washington, DC<br>20004 | (202)739-5455 |
| **Charged Party / Respondent**<br>Legal Representative<br>Stolzenburg, Mark<br>Morgan Lewis & Bockius LLP | 110 North Wacker Drive, Suite 2800<br>Chicago, IL<br>60606 | (312)324-1733 |
| **Charged Party / Respondent**<br>Employer<br>Apple, Inc. | Cupertino, CA<br>95014 | |
| **Charging Party**<br>Individual | | |

https://www.nlrb.gov/case/32-CA-284428