**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | CAND No. 3:23-CV-04597-EMC |
| | 9th Cir No.: 24-6058 |
| Plaintiff, | |
| | **Plaintiff's Memorandum of Points & Authorities In Support of Motion to Disqualify** |
| vs. | |
| **Apple Inc.**, a corporation, | |
| | HEARING: |
| Defendant. | Dept: Courtroom 5 (& Zoom) Judge: Honorable Edward M. Chen Date: February 27, 2025 Time: 1:30 PM PT |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    Table of Authorities ................................................................. iii

II.    Issues to be Decided. .......................... Error! Bookmark not defined.

III.    Statements Of Facts .......................... Error! Bookmark not defined.

IV.    Legal Standard ...................................................................... 1

V.    Arguments ........................................................................... 3

A.    Defense Counsel Must Be Disqualified Under ABA Model Rule 3.7 (Lawyer as a Witness) ...................................................... 3

B.    Orrick's Prior Representation Creates a Lawyer-as-Witness Conflict and Warrants Disqualification ................................................ 8

C.    Defense Counsel's Role in Witness Intimidation and Retaliation ..... 10

D.    Defense Counsel's Concealment of Material Evidence and Fraud on the court ......................................................................... 11

E.    Orrick's Lack of Competence in Environmental and Privacy Law & Its Impact on These Proceedings ............................................. 13

F.    Failure to Disclose Evidence ................................................. 15

G.    The Defendant's Improper and Malicious Conduct ...................... 16

H.    Vicarious Liability and Corporate Ratification of Misconduct ......... 18

VI.    Conclusion ......................................................................... 20

# I. Table of Authorities

**Trial and Circuit Court Cases**

*Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999) ........................ 8, 9, 10

*Dept. of Corrections v. Speedee Oil Change Syst.,* 20 Cal. 4th 1135, 1143 (1999) .... 3

*Estate of Adams v. City of San Bernardino,* 658 F. Supp. 3d 784, 788-89 (C.D. Cal. 2023). ........................................................................................................... 2

*Estate of Adams v. City of San Bernardino, 6*58 F. Supp. 3d 784, 791 (C.D. Cal. 2023) ..................................................................................................................... 2

*FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) ............................ 18

*Felarca v. Birgeneau*, Case No. 11-cv-05719-YGR, 2 (N.D. Cal. May. 12, 2015) 4, 5

*Felarca v. Birgeneau,* Case No. 11-cv-05719-YGR, 2 (N.D. Cal. May. 12, 2015).... 5

*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 12. .................................... 7

*Great Lakes Constr., Inc.*, 186 Cal. App. 4th at 1358, 114 Cal.Rptr.3d 301 .......... 2

*Hazard v. Shulman*, 556 F. Supp. 1171 (S.D.N.Y. 1983) .................................... 4

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944) ........... 12

*In re A.C.* (2000) 80 Cal.App.4th 994, 1001, 96 Cal.Rptr.2d 79. ....................... 3

*In re A.C.,* 80 Cal.App.4th 994, 1001 (2000)...................................................... 6

*In re Abrams*, 521 N.E.2d 1104 (N.Y. 1988) ..................................................... 3

*In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) .......................... 2

*In re County of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000).........................15

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004) ...........................................................................................................19

*In re Marriage of Reese & Guy*, 73 Cal. App. 5th 562, 570 (2021) ......................13

*In re Marriage of Reese & Guy,* 73 Cal.App.4th 1214, 1220-21 (Cal. Ct. App. 1999) ............................................................................................................................... 7

*Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)..................................15

*Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1204, 135 Cal.Rptr.3d 545 (2011) ... 2

*Kennedy v. Eldridge,* 201 Cal. App. 4th 1197, 1205 (2011) ................................13

*Kennedy v. Eldridge,* 201 Cal. App. 4th 1197, 1210 (2011) ................................ 5

*Kennedy v. Eldridge*, 201 Cal.App.4th 1197, 1205 (Cal. Ct. App. 2011)............... 3

*Kennedy v. Eldridge*, 201 Cal.App.4th 1197, 1208-9 (Cal. Ct. App. 2011) ........... 4

*Kohlman v. Village of Midlothian*, 833 F. Supp. 2d 922, 932 (N.D. Ill. 2011) .......14

*Legacy Villas at La Quinta Homeowners Ass'n v. Centex Homes,* Case No. EDCV 11-00845 VAP (OPx), 9 (C.D. Cal. Apr. 30, 2012). .........................................  3

*Love v. Permanente Med. Grp.*, 2016 WL 4492586 (N.D. Cal. 2016) ..................13

*Lyle v. Superior Court*, 122 Cal. App. 3d 470, 482 (1981) .............................8, 10

*People v. Donaldson*, 93 Cal.App.4th 916, 927-28 (2001)................................... 5

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 235 (2014)...19

*Smith v. Superior Court,* 68 Cal. App. 4th 706, 714 (1998) ...................................14

*Tech., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 906 (C.D. Cal. 2012) .................................................................................................................. 2

*Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980) ......................................... 2

*United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) ......................... 18

*United States v. Locascio,* 6 F.3d 924 (2d Cir. 1993) ............................. 3

*United States v. Prantil,* 764 F.2d 548, 553 (9th Cir. 1985) ............................. 5

**Statutes**

29 U.S. Code  §§ 107, 109 .............................................................. 8

Cal. Code Civ. Proc. § 527.3. ......................................................... 8

**Rules & Regulations**

ABA Model Rule 1.1 ....................................................................14

ABA Model Rule 3.3 ..................................................................... 3

ABA Model Rule 3.4 (Fairness in Litigation) ......................................11

ABA Model Rule 3.7...............................................................3, 5, 8

ABA Model Rule 3.7 [Comment 2]. .................................................. 5

ABA Model Rule 8.4(d) ................................................................ 3

ABA Model Rule 8.4(g) ................................................................ 4

ABA Model Rules 3.3 (Candor to the Tribunal) ..................................11

California Rule of Professional Conduct 1.1 ....................................14

California Rule of Professional Conduct 3.7 .................................... 8

California Rules of Professional Conduct 3.3(a)(1)........................... 12

California Rules of Professional Conduct Rule 3.7 ............................ 3

California Rules of Professional Conduct Rule 8.4 ............................ 3

California Rules of Professional Conduct Rule 8.4.1 ......................... 4

Fed. R. Civ. P. 12(f) .....................................................................i

Federal Rule of Civil Procedure 12(b)(6) .......................................17

Federal Rule of Civil Procedure 37 (Sanctions for Discovery Violations) ..........13

Federal Rule of Evidence 613 ......................................................13

Federal Rule of Evidence 801(d)(2) ............................................. 10

**Treatises**

Luna, *Avoiding a "Carnival Atmosphere"*: *Trial Court Discretion and the Advocate-witness Rule* (1997) 18 Whittier L.Rev. 447, 452–453....................................... 4

## Plaintiff's Motion to Disqualify Defense Counsel
## Points & Authorities

1.    Plaintiff, Ashley Gjovik, appearing pro se, moves this Court for an order disqualifying Orrick, Herrington & Sutcliffe LLP ("Orrick") as defense counsel for Defendant, Apple Inc, due to multiple conflicts of interest, ethical violations, fraudulent misrepresentations to the Court, obstruction of justice, and violations of professional responsibility rules. The continued participation of Orrick as defense counsel irreparably prejudices Plaintiff, taints these proceedings, and violates fundamental principles of fairness and justice.

2.    This motion is brought pursuant to the American Bar Association (ABA) Model Rules of Professional Conduct, applicable state bar ethical rules, local rules, and relevant case law governing disqualification of counsel where attorneys have become fact witnesses, engaged in fraud, and participated in improper litigation conduct.

3.    Defense counsel's involvement in Plaintiff's employment matters, termination strategy, and whistleblower complaints make them material witnesses, necessitating their disqualification. Defense counsel played an active role in advising Defendant on employment matters, apparently including Plaintiff's suspension and termination, making them key fact witnesses in the dispute. Despite this, they have concealed their prior involvement, failed to disclose their dual role, and improperly invoked attorney-client privilege over factual business decisions rather than legal advice.

## II. Legal Standard

4.    Federal courts apply state law to decide motions to disqualify. *Advanced Messaging Tech., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 906 (C.D. Cal. 2012) (citing *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)). Pursuant to Rule 11-1 of the Local Rules of the Northern District of California, attorneys who practice in this district must *"comply with the standards of professional conduct required of members of the State Bar of California."* L.R. 11-1. Ultimately, the decision to disqualify counsel is within the district court's discretion. *Trone v. Smith*,

621 F.2d 994, 999 (9th Cir. 1980). "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm." *SpeeDee Oil,* 20 Cal. 4th at 1139, 86 Cal.Rptr.2d 816, 980 P.2d 371. *Estate of Adams v. City of San Bernardino,* 658 F. Supp. 3d 784, 788-89 (C.D. Cal. 2023).

5.      A nonclient may bring a motion to disqualify based on a third-party conflict of interest or ethical violation in a case "where the ethical breach is manifest and glaring and so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of his or her claims." *Kennedy v. Eldridge,* 201 Cal. App. 4th 1197, 1204, 135 Cal.Rptr.3d 545 (2011). Where an "attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." *Id.* at 1205, 135 Cal.Rptr.3d 545.  *Estate of Adams v. City of San Bernardino, 6*58 F. Supp. 3d 784, 791 (C.D. Cal. 2023).

6.      "In reviewing a motion to disqualify counsel, the district court must make 'a reasoned judgment and comply with the legal principles and policies appropriate to the particular matter at issue.'" *Visa U.S.A., Inc.,* 241 F. Supp. 2d at 1104 (quoting *Gregori*, 207 Cal. App. 3d at 300). "The district court is permitted to resolve disputed factual issues in deciding a motion for disqualification and must make findings supported by substantial evidence." Id. (citing *Dept. of Corrections v. Speedee Oil Change Syst.,* 20 Cal. 4th 1135, 1143 (1999)). *Legacy Villas at La Quinta Homeowners Ass'n v. Centex Homes,* Case No. EDCV 11-00845 VAP (OPx), 9 (C.D. Cal. Apr. 30, 2012).

7.      "[T]he court has an *independent interest* in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them." *In re A.C.* (2000) 80 Cal.App.4th 994, 1001, 96 Cal.Rptr.2d 79. Accordingly, where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel. *Kennedy v. Eldridge*, 201 Cal.App.4th 1197, 1205 (Cal. Ct. App. 2011).

8.      Under California Rules of Professional Conduct Rule 3.7 and ABA Model Rule 3.7, a lawyer shall not act as an advocate at trial where they are likely to be a necessary witness, except under limited exceptions that do not apply here. Courts have consistently held that when an attorney has direct knowledge of material facts underlying the litigation, they must withdraw from representation. See *United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) (disqualifying attorney due to his role as a material fact witness).

9.      Under California Rules of Professional Conduct Rule 8.4 and ABA Model Rule 8.4(d), it is professional misconduct for an attorney to engage in conduct that is prejudicial to the administration of justice, including witness intimidation, retaliation, and the use of legal proceedings as a tool of harassment. Courts have held that when a lawyer facilitates or participates in improper coercion or suppression of evidence, disqualification is warranted. See *In re Abrams*, 521 N.E.2d 1104 (N.Y. 1988) (attorney disqualified for engaging in coercive and retaliatory tactics against opposing party).

10.     Under California Rules of Professional Conduct Rule 8.4 and ABA Model Rule 3.3, an attorney has a duty of candor to the court and must not knowingly make false statements of fact or law or fail to correct a material omission. Courts have consistently ruled that attorneys who deliberately conceal evidence or misrepresent facts must be disqualified. See *Hazard v. Shulman*, 556 F. Supp. 1171 (S.D.N.Y. 1983) (disqualifying attorneys for fraudulently misrepresenting material evidence).

11.     Under California Rules of Professional Conduct Rule 8.4.1 and ABA Model Rule 8.4(g), that it is professional misconduct for a lawyer to "engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination." Engaging in or facilitating online harassment to intimidate an opposing party violates this ethical standard.

## III.   Arguments

### A.   Defense Counsel Must Be Disqualified Under ABA Model Rule 3.7 (Lawyer as a Witness)

12.     The Plaintiff previously worked in Defendant's legal department, leading efforts to draft the company's first ethics policy regarding the responsible use of artificial intelligence, which

— 3 —

directly related to Defendant's use of an application that surreptitiously collected biometric data and took photos of employees without consent. Plaintiff's complaints about this application and Defendant's unethical legal tactics form one of the bases of her claims in this case.

13.    The "advocate-witness rule," which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics in the American legal system, and traces its roots back to Roman Law. (Luna, *Avoiding a "Carnival Atmosphere"*: *Trial Court Discretion and the Advocate-witness Rule* (1997) 18 Whittier L.Rev. 447, 452–453). Luna quotes a 1980 version of rule 3.7 of the Model Rules of Professional Conduct of the American Bar Association (ABA Model Rules). *Felarca v. Birgeneau*, Case No. 11-cv-05719-YGR, 2 (N.D. Cal. May. 12, 2015) quoting *Kennedy v. Eldridge*, 201 Cal.App.4th 1197, 1208-9 (Cal. Ct. App. 2011). The American Bar Association Model Rules of Professional Conduct also address the "advocate-witness rule," requiring disqualification of an attorney as an advocate at trial where the attorney is "likely to be a necessary witness" unless such disqualification "would work a substantial hardship on the client." *Id*. at 1209 (citing 2007 amendment of ABA Model Rule 3.7) *Felarca v. Birgeneau*, Case No. 11-cv-05719-YGR, 2 (N.D. Cal. May. 12, 2015).

14.    As explained by the California Court of Appeals in *People v. Donaldson*, 93 Cal.App.4th 916, 927-28 (2001), the advocate-witness rule is necessary, in part, because "if a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." *Id*. at 927-928. *Felarca v. Birgeneau*, Case No. 11-cv-05719-YGR, 2 (N.D. Cal. May. 12, 2015).

15.    The Comments to ABA Model Rule 3.7 note that the rule is necessary because "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." ABA Model Rule 3.7 [Comment 2]. Further, and as noted by the court in Kennedy, supra, the interconnected entanglements inherent in being both advocate and potential

witness may create an "appearance of impropriety and undermine the integrity of the judicial system." *Kennedy*, 201 Cal.App.4th at 1211. "The very fact of a lawyer taking on both roles will affect the way in which a jury evaluates the lawyer's testimony, the lawyer's advocacy, and the proceedings themselves." *Donaldson*, 93 Cal.App.4th at 928. *Felarca v. Birgeneau,* Case No. 11-cv-05719-YGR, 2 (N.D. Cal. May. 12, 2015).

16.    The Ninth Circuit has held that the advocate-witness rule is "a necessary corollary to the more fundamental tenet of our adversarial system that juries are to ground their decisions on the facts of a case and not on the integrity or credibility of the advocates." *United States v. Prantil,* 764 F.2d 548, 553 (9th Cir. 1985). "[A]dherence to this time-honored rule is more than just an ethical obligation of individual counsel; enforcement of the rule is a matter of institutional concern implicating the basic foundations of our system of justice." Id.

17.    Thus, courts have applied CRC 5-210 and ABA Model Rule 3.7 to find that an attorney who takes on the role of a percipient witness should be disqualified. See *Kennedy v. Eldridge,* 201 Cal. App. 4th 1197, 1210 (2011) (disqualifying counsel in custody proceeding before the court); *Donaldson*, 93 Cal. App.4th at 928 (disqualifying prosecutor in criminal case of child endangerment). Further, "the court has an independent interest in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them." *In re A.C.,* 80 Cal.App.4th 994, 1001 (2000). *Felarca v. Birgeneau,* Case No. 11-cv-05719-YGR, 3 (N.D. Cal. Feb. 3, 2016).

### 1. Orrick's Pattern of Retaliatory Online Harassment and Its Role in Coordinated Intimidation Tactics Against Plaintiff

18.    Newly discovered evidence strongly suggests that the attorneys from Orrick have been directly involved in online harassment, intimidation, and retaliatory legal tactics against Plaintiff since at least 2021, even before Plaintiff was terminated. Orrick's involvement in this harassment campaign is particularly evident from the timing and pattern of online attacks against Plaintiff, which correlate directly with Orrick's legal setbacks in other employment cases where they represented Apple. These bursts of harassment have repeatedly escalated immediately after Orrick has lost key motions in Apple-related employment cases, further suggesting a coordinated

1  effort to intimidate Plaintiff and others who have brought legal claims against Apple.

2      19.    A striking example of this pattern is the massive escalation of online harassment
3  immediately following Orrick's filing of a notice of appearance in Plaintiff's U.S. Department of
4  Labor whistleblower retaliation case. Prior to this, Plaintiff had already experienced targeted
5  harassment and intimidation efforts linked to Apple's legal team, but the intensity and organization
6  of these attacks increased dramatically after Orrick formally appeared in that proceeding. Notably,
7  in the weeks leading up to the deadline for Orrick to submit Apple's official position statement in
8  the U.S. DOL case, there was a deliberate and strategic effort to silence Plaintiff through a
9  retaliatory legal attack—namely, the fraudulent restraining order and gag order lawsuit.

10     20.    The sequence of events strongly suggests that Orrick was not merely defending
11  Apple in litigation but was actively involved in orchestrating harassment and intimidation against
12  Plaintiff as part of Apple's broader retaliation strategy. Specifically:

13  -  Shortly after Orrick appeared in the U.S. DOL case, an intensification of online harassment
14     occurred, mirroring prior spikes in harassment following Orrick's legal losses in other
15     Apple employment lawsuits.

16  -  Between January and February 2022, during one of the most aggressive waves of online
17     harassment, there were coordinated efforts by anonymous accounts to provoke Plaintiff into
18     making statements that could later serve as a pretext for the retaliatory gag order lawsuit.

19  -  Once the gag order lawsuit was filed, additional suspicious social media accounts appeared,
20     dedicated to harassing Plaintiff, taunting her that she would "never work again" and that she
21     would "never be able to become a lawyer." These statements were designed to inflict
22     maximum reputational harm and align precisely with Apple's and Orrick's interests.

23  -  Orrick and Apple's legal team requested and obtained a copy of the restraining order on the
24     same day they filed Apple's position statement with the Department of Labor, suggesting
25     the order was a deliberate, premeditated tactic to suppress Plaintiff's ability to present
26     evidence.

27  -  Now, in this lawsuit, Orrick refuses to provide any discovery on key issues, asserting blanket
28     attorney-client privilege over all communications regarding these events—an implicit

1    admission that they were involved in these coordinated retaliation tactics.

2        21.    These facts create a strong inference that Orrick's attorneys have not only been

3    representing Apple in litigation but have also been directly involved in Apple's retaliatory campaign

4    against Plaintiff, including efforts to silence Plaintiff through strategic harassment, intimidation,

5    and suppression of evidence. Such conduct goes far beyond zealous legal advocacy and instead

6    crosses into unethical, coercive, and potentially unlawful misconduct.

7        22.    A bad faith action or tactic is considered *"frivolous"* if it is *"totally and completely*

8    *without merit"* or instituted *"for the sole purpose of harassing an opposing party."* (§ 128.5, subd. (b)(2).)

9    Whether an action is frivolous is governed by an objective standard: Any reasonable attorney would

10    agree it is totally and completely without merit. *In re Marriage of Reese & Guy,* 73 Cal.App.4th 1214,

11    1220-21 (Cal. Ct. App. 1999) quoting *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 12. Here,

12    if the Defendant and its counsel had disclosed that its key evidence in this labor and environmental

13    dispute are naked photos of the Plaintiff emailed to Apple's legal team by Appleseed, then any

14    request for an injunction against the plaintiff specific to Appleseed, including her role in the Apple

15    litigation, would be "*totally and completely without merit*" considering 29 U.S. Code §§ 107, 109 and

16    Cal. Code Civ. Proc. § 527.3.

17        **2. Orrick Cannot Serve as Defense Counsel If It Is a Fact Witness**
        **in Coordinated Retaliation and Harassment**

18

19        23.    Given the substantial evidence linking Orrick's attorneys to acts of intimidation and

20    retaliatory harassment, Plaintiff has a strong basis for conducting discovery on Orrick's role in these

21    events. If the firm's attorneys have engaged in, coordinated, or had prior knowledge of retaliatory

22    attacks, then their communications, documents, and internal discussions about these matters are

23    relevant and discoverable. Courts have recognized that when defense counsel becomes a fact

24    witness in the litigation they are defending, disqualification is necessary to preserve fairness and

25    avoid undue advantage. See *Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999) (holding that

26    disqualification is warranted where an attorney's continued representation would threaten the

27    integrity of the adversarial process).

28        24.    Further, under ABA Model Rule 3.7 and California Rule of Professional Conduct

3.7, attorneys who are likely to be necessary witnesses in a case cannot continue to represent a client in the same matter. Orrick's direct involvement in the timing, coordination, and execution of retaliatory legal maneuvers suggests that its attorneys may be key witnesses in discovery and potential trial testimony. Disqualification is necessary to prevent Orrick from shielding its own misconduct under the guise of legal representation while simultaneously obstructing discovery into its own actions. See *Lyle v. Superior Court*, 122 Cal. App. 3d 470, 482 (1981) (holding that disqualification is required where an attorney's role as a fact witness would taint the trial).

25.    The mounting evidence of Orrick's involvement in Plaintiff's harassment and intimidation campaign, along with its refusal to provide discovery on these matters, necessitates disqualification. A law firm cannot ethically serve as defense counsel while simultaneously acting as a fact witness to the very retaliation and obstruction at issue in the case. Further, if Orrick's attorneys were directly involved in the retaliatory restraining order litigation, suppression of evidence, or online harassment campaigns against Plaintiff, this conduct constitutes unethical and potentially unlawful activity that must be fully investigated through discovery. Given these circumstances, Plaintiff respectfully requests that the Court grant this motion to disqualify Orrick and allow Plaintiff to conduct discovery on the firm's role in Apple's broader retaliation campaign.

26.    Courts have consistently disqualified attorneys where their failure to disclose material facts and active participation in misleading the Court would prejudice the opposing party and compromise the integrity of the judicial process. See *Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999) (finding that disqualification is warranted when an attorney's role as a fact witness threatens the adversarial process).

## B.    Orrick's Prior Representation Creates a Lawyer-as-Witness Conflict and Warrants Disqualification

27.    Part of Apple's defense in this case is premised on the assertion that there were no prior complaints and no known issues regarding one of Plaintiff's supervisors. However, evidence establishes that Apple's external counsel, Orrick, Herrington & Sutcliffe LLP ("Orrick"), and counsel Jessical Perry specifically, previously defended Apple in a lawsuit brought by Plaintiff's coworker, Crystal, in 2018—alleging discrimination, harassment, and intentional infliction of

emotional distress ("IIED") against the same supervisor.[1] This prior lawsuit was settled in mid-2019 and directly contradicts Apple's claim that there was no history of complaints against the supervisor and demonstrates that Apple HR's statements to Plaintiff were false.

28.     Because an Orrick attorney was directly involved in managing Apple's defense in the 2018 lawsuit, that attorney has firsthand knowledge that Apple's HR statements to Gjovik were misleading or false. This places Orrick's lawyers in an impossible ethical position—they are now both Apple's legal advocates and key fact witnesses to a material issue in dispute.

29.     Under California Rules of Professional Conduct Rule 3.7 (Lawyer as Witness Rule), an attorney must not act as an advocate in a trial where they are likely to be a necessary witness. Here, the Orrick attorney's testimony is necessary to impeach Apple HR's statements and establish that Apple knowingly misrepresented the existence of prior complaints against the supervisor. Given the centrality of this issue, Orrick's continued representation of Apple in this matter would violate ethical standards and prejudice Plaintiff's ability to litigate her claims fairly.

30.     Courts have routinely disqualified counsel where their direct knowledge of disputed facts makes them a material fact witness. See *Lyle v. Superior Court,* 122 Cal. App. 3d 470, 482 (1981) (holding that disqualification is required where an attorney's testimony is necessary to resolve key factual disputes); *Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999) (finding that disqualification is necessary when an attorney's role as a fact witness threatens the integrity of the adversarial process).

31.     Furthermore, under Federal Rule of Evidence 613 (Prior Inconsistent Statements), Plaintiff is entitled to use the Orrick attorney's testimony to impeach Apple HR's false statements regarding the history of complaints against Plaintiff's supervisor. Because the Orrick attorney was responsible for defending Apple in the 2018 lawsuit, their testimony about their direct knowledge of that case and Apple's awareness of prior complaints is not only relevant—it is critical to proving that Apple engaged in fraudulent concealment of material facts. Additionally, under Federal Rule of Evidence 801(d)(2) (Admission by a Party Opponent), the Orrick attorney's knowledge is non-

---

[1] *Crystal Brown v. Apple Inc*, Santa Clara County Superior Court, No. 18CV330796, filed June 28, 2018, settled and dismissed April 12 2019.

1  hearsay and admissible as an admission against Apple. This further underscores the necessity of

2  disqualifying Orrick as Apple's defense counsel, as their attorneys cannot simultaneously serve as

3  both advocates and key witnesses without undermining the fairness of these proceedings.

4      For these reasons, Plaintiff respectfully requests that the Court disqualify Orrick,

5  Herrington & Sutcliffe LLP from representing Apple in this matter and permit Plaintiff to conduct

6  discovery on the firm's knowledge of prior complaints against Plaintiff's supervisor. The lawyer-

7  as-witness conflict, coupled with Apple's concealment of material evidence, renders Orrick's

8  continued representation untenable and prejudicial to the integrity of this litigation.

9  ### C. Defense Counsel's Role in Witness Intimidation and

10  ### Retaliation

11      32.    In August 2021, Plaintiff publicly disclosed that Defendant had improperly obtained

12  nude photos of her during prior litigation (Batterygate) and retained them with no legitimate

13  justification. Shortly after these disclosures, Plaintiff was subjected to harassment, intimidation,

14  and threats from anonymous social media accounts, which explicitly warned her against speaking

15  out about Defendant. Plaintiff repeatedly complained that these accounts were linked to Defendant

16  and/or its legal representatives.

17      33.    The harassment escalated when, in January 2022, a global security employee from

18  Defendant's legal team—who had previously sent the nude photos to Defendant—filed a

19  restraining order lawsuit against Plaintiff. The lawsuit effectively criminalized Plaintiff's ability to

20  discuss key facts related to her whistleblower complaints, including the nude photos and witness

21  intimidation. Plaintiff later overturned the restraining order and discovered that Defendant's legal

22  team had actively used the lawsuit to attempt to suppress critical evidence and further intimidate

23  her.

24      34.    Courts have held that misconduct designed to suppress evidence and intimidate a

25  litigant is grounds for attorney disqualification. See *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197,

26  1205 (2011). However, this misconduct needs to be investigated as part of the claims in this lawsuit,

27  which also calls for disqualification.

28

### D.  Defense Counsel's Concealment of Material Evidence and Fraud on the court

35.    Plaintiff, through a FOIA request, obtained government records proving that Defense counsel falsely reported Plaintiff's OSHA complaint to OSHA itself, accusing her of leaking confidential information. This act constitutes a direct retaliatory measure against protected whistleblower activity. Additionally, Defense counsel strategically sent only one witness to the U.S. Department of Labor to defend the employer—the same global security employee who had sent the nude photos and later filed a lawsuit against Plaintiff. In 2023, this global security employee again contacted U.S. Department of Labor officials and falsely accused Plaintiff of fraud. Despite these facts, Defense counsel failed to disclose this individual as a key witness in their initial disclosures, refused to provide discovery on the matter, and falsely asserted attorney-client privilege over non-privileged evidence. This constitutes fraud on the court and obstruction of justice.

36.    Defendant Apple, through its legal counsel, has deliberately misrepresented and suppressed the role of a key defense witness, referred to herein as "Appleseed." Appleseed has submitted multiple declarations to this Court in support of Apple's legal filings, portraying themselves as an independent, neutral third party. However, Defendant and its counsel have concealed that:

- Appleseed was directly involved in Apple's retaliatory campaign against Plaintiff.
- Appleseed personally transmitted unauthorized nude photos of Plaintiff to Apple, which Apple later used as pretextual "evidence" to justify Plaintiff's termination.
- Appleseed's declarations are part of a broader harassment and intimidation effort coordinated with Apple and its legal team.
- Orrick knowingly withheld these facts from the Court while allowing Appleseed to submit sworn declarations in support of Apple.
- These deliberate omissions constitute fraud upon the court, obstruction of justice, and a violation of Orrick's ethical obligations as legal counsel.

37.    Under ABA Model Rule 3.3 (Candor to the Tribunal) and ABA Model Rule 3.4

(Fairness in Litigation), attorneys may not engage in conduct involving fraud on the court, withholding of evidence, or obstructive tactics.

### 3.  Orrick's Concealment of Material Facts Violates Rule 3.3(a)(1) (Duty of Candor to the Tribunal)

38.     Under California Rules of Professional Conduct 3.3(a)(1), attorneys must not knowingly make false statements of fact or law to a tribunal or fail to correct false statements previously made. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944) (holding that suppression of material evidence and misleading court submissions constitute fraud upon the court).

39.     Here, Orrick failed to inform the Court that Appleseed was not an independent witness, but a key defense participant in Apple's retaliatory scheme against Plaintiff. Orrick's silence allowed Apple to rely on Appleseed's declarations without disclosing Appleseed's history of misconduct, bias, and direct involvement in transmitting unauthorized nude images of Plaintiff to Apple.

### 4.  Orrick's Suppression of Appleseed's Role Violates Rule 3.4(a) (Duty to Disclose Evidence)

40.     Under California Rules of Professional Conduct 3.4(a), a lawyer must not unlawfully obstruct another party's access to evidence or alter, destroy, or conceal a document with potential evidentiary value. See *Kennedy v. Eldridge,* 201 Cal. App. 4th 1197, 1205 (2011) (disqualifying counsel where misrepresentations and suppression of material evidence tainted the fairness of the proceeding).

41.     Here, Orrick not only failed to disclose Appleseed's true role in Apple's retaliation scheme, but also suppressed evidence that would reveal Appleseed's credibility issues and bias. Courts have long held that an attorney's intentional failure to disclose material evidence warrants disqualification and potential sanctions. See *In re Marriage of Reese & Guy*, 73 Cal. App. 5th 562, 570 (2021) (finding that attorneys may not use litigation tactics to conceal material conflicts in a witness's testimony).

### 5. Appleseed's False Declarations Are Grounds for Exclusion and Sanctions

42.    Under Federal Rule of Evidence 613, a party may impeach a witness with prior inconsistent statements or concealed information. If the Court had been aware of Appleseed's role in transmitting Plaintiff's private images to Apple and the evidence of their direct involvement in retaliatory efforts, it would have severely undermined the credibility of Appleseed's declarations. Orrick's intentional suppression of these facts has deprived Plaintiff of the ability to fully impeach Appleseed's statements and may have prejudiced this court against the Plaintiff.

43.    Additionally, under Federal Rule of Civil Procedure 37 (Sanctions for Discovery Violations), courts may impose sanctions when a party fails to disclose or actively suppresses evidence relevant to a case. See *Love v. Permanente Med. Grp.*, 2016 WL 4492586 (N.D. Cal. 2016) (holding that suppression of key evidence warrants sanctions and potential disqualification of counsel).

### E. Orrick's Lack of Competence in Environmental and Privacy Law & Its Impact on These Proceedings

44.    Under ABA Model Rule 1.1 and California Rule of Professional Conduct 1.1, lawyers have a duty of competence, requiring that they possess the necessary legal knowledge, skill, thoroughness, and preparation to handle a given legal matter. Courts have recognized that attorneys must be reasonably knowledgeable in the substantive areas of law at issue in a case and that representation in a highly technical field—such as environmental law or privacy law—requires specialized expertise. See *Smith v. Superior Court,* 68 Cal. App. 4th 706, 714 (1998) (holding that attorneys who accept representation in complex cases must have "the necessary competence or must associate with those who do").

45.    Here, Orrick has staffed this case with employment lawyers, despite the fact that environmental violations, toxic torts, and privacy breaches form the core of Plaintiff's claims. Instead of engaging counsel with environmental expertise, Orrick has attempted to reframe the litigation as purely an employment dispute, seeking to dismiss or minimize all environmental claims by arguing they are too complex or unnecessary for the court to consider. This is an improper litigation strategy designed to distort the nature of the case, rather than a legitimate legal defense.

— 13 —

46.     By failing to assign environmental counsel, Defendant and Orrick have knowingly deprived the court of informed legal arguments, expert-driven defenses, and an accurate assessment of liability under environmental laws. The absence of environmental expertise is particularly alarming given the pending EPA and BAAQMD investigations and the fact that Defendant's misconduct includes hazardous waste violations, unlawful toxic emissions, and concealment of regulatory breaches that pose a direct risk to public health. This failure to obtain competent legal representation in environmental law is an obstructionist tactic aimed at suppressing Plaintiff's legitimate claims. See *Kohlman v. Village of Midlothian*, 833 F. Supp. 2d 922, 932 (N.D. Ill. 2011) (disqualifying counsel where their lack of expertise in the central issues of the case suggested an attempt to "artificially narrow the scope of litigation in a prejudicial manner").

### 6. Bad-Faith Litigation Strategy to Eliminate Environmental Claims

47.     Orrick's insistence on minimizing, dismissing, or avoiding the environmental claims—despite their centrality to the case—further evidences a bad-faith litigation strategy designed to mislead the court and obstruct justice. Courts have held that repeated mischaracterization of the core issues of a case to avoid scrutiny of a defendant's conduct may warrant disqualification. See *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (disqualifying counsel where their litigation strategy "obscured the real issues at play" in a way that prejudiced the opposing party).

48.     Here, Orrick's refusal to engage with the substantive environmental violations— including those that have already been confirmed by regulatory agencies—demonstrates a deliberate effort to shield Defendant from accountability. This is particularly problematic because environmental law is highly specialized, requiring knowledge of federal and state environmental regulations, administrative agency procedures, and scientific evidence related to toxic exposure. Employment lawyers with no expertise in these areas cannot ethically or competently argue that these claims are irrelevant or unnecessary to the case. By continuing to do so, Orrick is acting in bad faith and engaging in obstructionist tactics that undermine the fair administration of justice.

### 7. Failure to Hire Environmental Counsel Undermines Judicial Integrity & Warrant Disqualification

49.    Defendant's failure to retain qualified environmental counsel—and Orrick's insistence on litigating complex environmental and privacy matters without expertise in these fields—creates a significant ethical problem and threatens the integrity of these proceedings. Courts have an obligation to ensure that all parties receive competent legal representation and that litigation is conducted in a manner that allows for the full and fair adjudication of all claims. When a law firm deliberately avoids engaging competent counsel in an effort to suppress certain claims or strategically misrepresent the nature of the case, disqualification may be warranted to prevent further prejudice. See *In re County of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000) (holding that disqualification is necessary where "counsel's continued representation would create an unfair advantage by obscuring the issues properly before the court").

Orrick's continued representation of Defendant—without the necessary expertise in environmental and privacy law—violates ethical duties of competence, misleads the court, and prejudices Plaintiff's ability to litigate her claims fully. The firm's refusal to hire qualified environmental counsel while simultaneously seeking to dismiss or diminish Plaintiff's environmental claims is a deliberate strategy to obstruct justice, rather than a legitimate legal defense. Given these ethical violations and the prejudicial impact on Plaintiff's case, Orrick must be disqualified from further representation of Defendant in this matter.

### F.    FAILURE TO DISCLOSE EVIDENCE

50.    During discovery, Apple withheld critical evidence that would have exposed the full scope of Appleseed's actions. Apple failed to produce emails, internal communications, and photographs that were directly relevant to Plaintiff's claims. It was only through Plaintiff's own independent investigation, including filing a FOIA request, that the full extent of Appleseed's misconduct came to light. Apple's deliberate concealment of this evidence constitutes an obstruction of justice and a violation of Plaintiff's right to a fair trial.

51.    For over two years, Apple has failed to disclose key documents and evidence related to Appleseed's role in Plaintiff's termination. Notably, Apple concealed a critical email from

1    Appleseed containing private communications and compromising photographs of Plaintiff that
2    were used as a basis for Plaintiff's wrongful termination. This information was only revealed to
3    Plaintiff after a FOIA request to the U.S. Department of Labor in December 2023. By withholding
4    this evidence, Apple has deprived Plaintiff of the opportunity to fully understand the basis of her
5    termination and mount an adequate defense.

6         52.    Apple has acted in bad faith by failing to disclose Appleseed as a key witness in this
7    case. Apple has consistently failed to mention Appleseed's involvement in Plaintiff's termination,
8    despite the fact that Appleseed's statements and actions have been used as evidence in the U.S.
9    Department of Labor case. Furthermore, Appleseed filed multiple declarations in this case under
10   the premise that she does not know the Plaintiff and has nothing to do with the case. For example:

11   -    "…*Plaintiff uses this public lawsuit against Apple Inc, who has no stake in the way Plaintiff*
12        *characterizes me, to make statements that Apple Inc's lack of denial of her allegations about me is*
13        *some kind of proof that what she has alleged is true*…" Dkt. 99  at ¶ 3.

14   -    "…*No plaintiff should be permitted to impede on the rights of another person, harassing them via*
15        *court…. This is a lawsuit between the Plaintiff and Apple Inc." Dkt 99 at page 4.*

16   -    *"I have no stake in the outcome of this case*…" Dkt 66 at ¶ 3.

17   -    "…*lawsuit against a corporation by a person I have never even met...*" Dkt 62 at ¶ 4.

18   -    "…*My inclusion in this lawsuit is improper*…" Dkt 62 at ¶ 4.

19
20        53.    Apple's silence regarding Appleseed's testimony and their refusal to disclose
21   documents related to her involvement is an obstructionist tactic that cannot be tolerated by the
22   Court. Apple has also failed to take any meaningful steps to protect Plaintiff from further retaliation
23   or to stop Appleseed's ongoing campaign of defamation and intimidation.

24   **G.   The Defendant's Improper and Malicious Conduct**

25        54.    Apple's actions throughout this litigation demonstrate a flagrant disregard for the
26   Court's authority, the procedural rules, and basic principles of fairness. Plaintiff's case is based on
27   well-supported claims that involve serious violations of law, including labor misconduct and
28   whistleblower retaliation. Despite the strength of these claims, Apple has made repeated attempts

1  to derail the proceedings with motions that are legally unfounded and designed to frustrate
2  Plaintiff's ability to seek redress.

3      55.    The motion to dismiss currently before the Court represents Apple's fifth attempt
4  to dismiss the Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Notably, the
5  Defendant's argument in this motion flies in the face of newly discovered evidence. Apple's
6  repeated motions to dismiss, demonstrate an improper attempt to avoid responsibility and delay
7  the litigation process in bad faith.

8      56.    In addition to its ongoing motions to dismiss, Apple's discovery practices have been
9  equally problematic. The Defendant has repeatedly failed to comply with its discovery obligations,
10 withholding critical documents that would substantiate Plaintiff's claims. Only after extensive,
11 independent efforts did Plaintiff uncover additional evidence showing how Appleseed, under
12 Apple's direction or knowledge, engaged in retaliatory behavior that impacted the Plaintiff's
13 professional and personal life. Apple's failure to produce this evidence in a timely manner not only
14 violates discovery rules but also undermines the Plaintiff's ability to pursue justice in an effective
15 and timely manner.

16     57.    As outlined in Plaintiff's prior filings and the Court's rulings, Apple has engaged in
17 a systematic pattern of bad faith litigation practices that have delayed and obstructed Plaintiff's
18 pursuit of her claims. Apple has concealed critical evidence, misrepresented facts, filed frivolous
19 motions, and engaged in discovery violations designed to harass and intimidate Plaintiff. These
20 actions have caused undue delay and significant prejudice to Plaintiff's ability to prosecute her case.
21 The Court should not allow this conduct to continue unchecked.

22 ## H.  Mandatory Disclosure of Data Breach Impact on Plaintiff

23     58.    Orrick, Herrington & Sutcliffe LLP, as Defendant's legal counsel, has been in
24 possession of Plaintiff's private and intimate images, which Defendant claims were used as
25 justification for Plaintiff's termination. However, in 2023-2024, Orrick suffered a significant data
26 breach impacting over 637,000 individuals, leading to an $8 million settlement in a class action
27 lawsuit. If Plaintiff's private images were stored by Orrick and compromised in this breach, this
28

constitutes a severe violation of Plaintiff's privacy rights under California Civil Code § 1708.85, negligence, and a breach of ethical duties to maintain the confidentiality of privileged materials. Further, Orrick has not disclosed whether Plaintiff's private data was impacted by this breach, nor have they taken steps to mitigate the potential harm caused by the unauthorized disclosure of such sensitive material.

59.    Regardless of if Orrick is disqualified from this matter, the firm must be compelled to disclose whether Plaintiff's private and intimate images were among the data compromised in its 2023-2024 data breach. Plaintiff has a fundamental right to know whether her sensitive materials were leaked, improperly accessed, or disseminated. California law, including the California Consumer Privacy Act (CCPA) (Cal. Civ. Code § 1798.100 et seq.), requires entities to notify individuals if their personal data was breached. If Plaintiff's private images were exposed due to Orrick's negligence, Orrick may be liable under California Civil Code § 1708.85, privacy statutes, and other state and federal laws.

## I.   Vicarious Liability and Corporate Ratification of Misconduct

60.    Under agency and respondeat superior principles, Defendant is liable for the actions of its attorneys and employees when those actions are undertaken in furtherance of the company's defense strategy. By allowing its legal representatives to engage in misconduct and benefitting from it, Defendant has ratified these unethical practices, further justifying disqualification.

61.    Under well-established legal principles, a corporate defendant can be held liable for the acts of its attorneys when those attorneys act as the corporation's agents in furtherance of its interests. An attorney retained by a corporation is not merely an independent advocate; rather, they function as the corporation's legal representative and agent, meaning their misconduct, fraud, or unethical behavior in the course of representation is imputable to the client. Courts have consistently recognized that a principal (here, Defendant Apple) is responsible for the actions of its attorneys when they act within the scope of their agency. See *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (holding that "an attorney's acts on behalf of a client may be attributable to the client for legal liability purposes"); *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995)

1    (confirming that "as a general rule, the knowledge and conduct of an attorney acquired within the

2    scope of employment are imputed to the client").

3         62.    Here, Defendant Apple has knowingly retained and continues to employ Orrick,

4    Herrington & Sutcliffe LLP ("Orrick") despite mounting evidence that the firm has engaged in

5    unethical, obstructive, and potentially unlawful conduct. This includes concealing key evidence,

6    obstructing discovery, suppressing whistleblower retaliation evidence, participating in or

7    facilitating a coordinated harassment campaign against Plaintiff, and misrepresenting material facts

8    to regulatory agencies and the Court. Apple cannot claim to be insulated from liability for these

9    actions when Orrick's conduct was carried out in Apple's defense and on Apple's behalf in multiple

10   legal proceedings. See *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908

11   (9th Cir. 2004) (holding that a corporation may be held liable for the conduct of its attorneys where

12   they act as agents in legal proceedings).

13        63.    Moreover, by refusing to disqualify Orrick despite clear evidence of ethical and legal

14   violations, Defendant is not only tolerating but actively ratifying and endorsing the firm's

15   misconduct. Under agency law, a principal that retains an agent after learning of wrongful acts is

16   deemed to have ratified those acts and may be held directly responsible. See *Rutherford Holdings,*

17   *LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 235 (2014) (holding that "when a principal, with full

18   knowledge of the material facts, retains the benefits of the unauthorized act of an agent, ratification

19   is established as a matter of law"). Here, Apple is on notice of Orrick's misconduct and nonetheless

20   insists on keeping the firm as its defense counsel. By doing so, Apple signals its endorsement of

21   Orrick's actions, making Apple equally responsible for the firm's misconduct.

22        64.    For these reasons, Orrick's continued representation of Defendant is not only

23   improper, but Apple's decision to retain the firm despite its misconduct should be construed as

24   ratification of those wrongful acts. Plaintiff respectfully requests that this Court disqualify Orrick

25   from representing Apple in this matter and take any further steps necessary to prevent Apple from

26   benefiting from its attorneys' unethical and obstructive behavior.

27

28

1  # IV. CONCLUSION

2      In conclusion, for the foregoing reasons, Plaintiff respectfully requests that

3  this Court disqualify Orrick from representing Defendant in this matter. Their

4  continued representation is a fundamental conflict of interest that undermines the

5  fairness of these proceedings.

6      Please note: Plaintiff has not yet read Defendant's Reply at Dkt 152, so

7  nothing in this motion is a response to Defendant's Reply.

8

9

10

11  Dated: Jan. 31 2025

12

13  Signature:

14

15

16

17

18  _____

19  **/s/ Ashley M. Gjovik**

20  *Pro Se Plaintiff*

21

22  **Email**: legal@ashleygjovik.com

23  **Physical Address**:
    Boston, Massachusetts

24

25  **Mailing Address**:

26  2108 N St. Ste. 4553 Sacramento, CA, 95816

27  **Phone**: (408) 883-4428

28