**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| Plaintiff, | |
| vs. | **Plaintiff's Opposition to Defendant's Admin. Motion to Stay Plaintiff's Motion to Amend And Motion To Disqualify, And Plaintiff's Cross-Motion To Stay Defendant's Motion To Dismiss Pending Resolution Of Plaintiff's Motions To Amend And Disqualify** |
| **Apple Inc.**, a corporation, | |
| Defendant. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................. 3

II.  ARGUMENT ................................................. 4

A.   THE COURT SHOULD ADDRESS PLAINTIFF'S MOTION TO
DISQUALIFY PRIOR TO CONSIDERING DEFENDANT'S MOTION TO
DISMISS ................................................... 4

B.   APPLE'S MOTION TO STAY IS AN ATTEMPT TO PREJUDICE
PLAINTIFF BY FORCING THE COURT TO RULE ON A POTENTIALLY
FRAUDULENT AND OBSTRUCTED MOTION TO DISMISS ..................... 5

C.   THIS IS ALL AN EXTENSION OF BATTERYGATE, AND APPLE IS
CONTINUING THE FRAUD AND BAD FAITH TACTICS IT DEPLOYED
THROUGHOUT BATTERYGATE. ............................................. 7

D.   PLAINTIFF'S CROSS-MOTION TO STAY APPLE'S MOTION TO
DISMISS IS THE PROPER PROCEDURAL REMEDY ................................ 9

III. CONCLUSION ............................................... 10

**PLAINTIFF′S OPPOSITION TO DEFENDANT′S ADMINISTRATIVE MOTION TO STAY PLAINTIFF′S MOTION TO AMEND AND MOTION TO DISQUALIFY, AND PLAINTIFF′S CROSS-MOTION TO STAY DEFENDANT′S MOTION TO DISMISS PENDING RESOLUTION OF PLAINTIFF′S MOTIONS TO AMEND AND DISQUALIFY**

## I. Introduction

Plaintiff, Ashley Gjovik, appearing pro se, respectfully opposes Defendant Apple Inc.′s administrative motion to stay Plaintiff′s Motion to Amend and Supplement Complaint (Dkt. 155) and moves for a cross-motion requesting that this Court stay Apple's Motion to Dismiss (Dkt. 145) pending resolution of Plaintiff's Motion to Amend and Motion to Disqualify Defendant's counsel (Dkt. 156). Apple's request is procedurally improper, unjustified, and prejudicial to Plaintiff, as it seeks to force the Court to rule on a Motion to Dismiss that is now based on an incomplete record due to Apple's own misconduct, including withholding evidence and ongoing conflicts of interest.

Moreover, Apple misrepresents its interactions with Plaintiff regarding this motion. Apple falsely claims that it sought Plaintiff's stipulation, but in reality, Apple only provided Plaintiff with two hours' notice before filing its motion—a blatant attempt to mislead the Court and manufacture prejudice against Plaintiff. Apple's intentional omission of this fact from its motion further demonstrates its bad-faith litigation tactics.

## II. ARGUMENT

### A. THE COURT SHOULD ADDRESS PLAINTIFF'S MOTION TO DISQUALIFY PRIOR TO CONSIDERING DEFENDANT'S MOTION TO DISMISS

Courts have long recognized that a motion to amend should be resolved before ruling on a motion to dismiss, especially where the amendments clarify factual disputes and eliminate judicial inefficiencies. See *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) (holding that *"motions to amend should generally be granted unless there is strong evidence of futility or undue delay"*). Because Plaintiff's motion to amend is not futile and is based on newly discovered evidence and misconduct by Defendant, it must be resolved before considering Apple's Motion to Dismiss.

Under FRCP 15(a), leave to amend *"shall be freely given when justice so requires." See Miller v. Rykoff-Sexton,* 845 F.2d 209, 214 (9th Cir.1988). In Zurich *Am. Ins. Co. of Ill. v. Vforce Inc.*, No. 2:18-cv-02066-TLN-CKD, 6 (E.D. Cal. May. 26, 2020), the court explained that "*[t]he court should freely give leave [to amend] when justice so requires," bearing in mind "the underlying purpose of Rule 15 … [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." –* quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)."

Defendant, Apple Inc, arguments in its Motion to Stay are based nearly entirely on "*technicalities*," and not the merits of the litigation. Plaintiff apologizes for errors, typos, delays, and mistakes – but she is one person, who is not an attorney, managing complex litigation against one of the wealthiest and most powerful corporations in history. Plaintiff cannot keep up with all of Defendant's many filings and arguments, which is certainly one of the objectives of Defendant's many filings and arguments.

## B. Apple's Motion to Stay is an Attempt to Prejudice Plaintiff by Forcing the Court to Rule on a Potentially Fraudulent and Obstructed Motion to Dismiss

Apple's motion to dismiss (Dkt. 145) seeks to dispose of claims that Plaintiff has now demonstrated were based on fraud, withheld evidence, obstruction, and conflicts of interest. Apple's request to stay Plaintiff's Motion to Amend and Motion to Disqualify while allowing its Motion to Dismiss to proceed is not only procedurally improper but would result in extreme prejudice to Plaintiff. The Court should not rule on a motion to dismiss claims that Plaintiff has substantiated through new evidence, agency findings, and conflict disclosures that Apple actively concealed.

Apple's request to stay the Motion to Amend contradicts its own prior positions. Apple argues that Plaintiff's filings impose a burden on the Court while simultaneously engaging in a strategy of deliberate concealment and obstruction to prevent Plaintiff from obtaining justice. If Apple genuinely believed that the Court's resources should not be wasted, it would support a ruling on the Motion to Disqualify, as proceeding with conflicted counsel would be a much greater judicial waste. *"Tactics undertaken with the intent to increase expenses, or delay, may also support a finding of bad faith."* S*ave the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025 (9th Cir. 2012).

It is clear that Apple's bad faith tactics are intentional and part of its unlawful business operations – which are subject to this RICO lawsuit, as alleged by Plaintiff starting in the first complaint in Sept. 2023. In this very court, less than two months ago, Defendant, Apple Inc, was criticized by Judge Hixson on Dec. 3 2024 for unlawfully withholding critical information from the Plaintiff if another lawsuit. The court found that Apple had misused confidentiality to avoid

disclosing important corporate documents related to the App Store, thereby hindering Epic Games' ability to access pertinent information. *Epic Games, Inc. v. Apple Inc.,* No. 4:20-cv-05640-YGR (N.D. Cal. Dec. 3, 2024).

> With respect to document production concerning compliance with the injunction, Apple has produced about 95,000 documents and has withheld about 57,000 documents, meaning that Apple has asserted privilege over more than one third of the responsive documents.... Privilege does not descend like a giant fog bank over every document that is in some way connected with an effort to achieve legal compliance. Lawyers can tell their client what is legally permissible and impermissible, and those communications are privileged. But it is also true that business people decide among the options legally available to them, and they consider things like profit, cost, competition, and so on; those communications are not privileged.

*Id.*

Additionally, Apple's attempt to mislead the Court regarding its request for stipulation demonstrates yet another instance of its pattern of bad-faith litigation tactics. Apple waited until two hours before filing to contact Plaintiff, then falsely implied that Plaintiff refused to engage. This misrepresentation alone is sufficient grounds for the Court to deny Apple's motion. *"Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." Guetschow v. Giese,* 869 F.2d 1298 (9th Cir. 1989).

### C. THIS IS ALL AN EXTENSION OF BATTERYGATE, AND APPLE IS CONTINUING THE FRAUD AND BAD FAITH TACTICS IT DEPLOYED THROUGHOUT BATTERYGATE.

Apple's Batterygate scandal involved the company secretly throttling iPhone performance through software updates, misleading consumers into thinking their devices were naturally slowing down or failing. Instead of disclosing the issue, Apple hid the truth, leading to massive legal and regulatory fallout, including a $500 million class action settlement, a $113 million multi-state attorney general settlement, and federal investigations by the DOJ and SEC.[1] The core allegations against Apple were that it engaged in fraud, misrepresentation, and concealment of material facts, all in an effort to protect its reputation and financial interests. [See attached Exhibits A-E]. Apple's handling of Batterygate also created internal turmoil, as employees and witnesses became aware of the deception and the company's aggressive efforts to suppress dissent.

The plaintiff was one of those witnesses. She raised concerns about Apple's misconduct during Batterygate and later complained that the company was intimidating witnesses to keep them from speaking to federal investigators. Apple knew Plaintiff was positioned to provide damaging information about what she saw internally during the scandal, and shortly before her termination, she publicly accused Apple of using nude photos as a form of coercion to silence people from speaking to regulators, including the Plaintiff. Two weeks later, Apple fired her—using her own nude photos as the justification.

Apple's termination decision was not just an act of retaliation; it was structured in a way that ensured Plaintiff's allegations about Batterygate would never be litigated without her suffering extreme personal and reputational harm.

---

[1] *In re Apple Inc Device Performance Litigation*, U.S. District Court, Northern District of California, No. 18-md-02827.

Apple forced Plaintiff into the exact scenario she had warned about, ensuring that if she pursued legal action, her nude photos would become public record—an act of calculated intimidation, coercion, and retaliation.

This is not just a continuation of Apple's misconduct during Batterygate; it is evidence that Apple's playbook for deception, suppression, and retaliation extends beyond misleading consumers to actively silencing those who could expose its wrongdoing.

Apple's motion to stay Plaintiff's Motion to Amend and Motion to Disqualify is just another attempt to manipulate the legal process and evade accountability, just as it did during Batterygate. Plaintiff has demonstrated that Apple withheld key evidence, engaged in intimidation, and structured her termination to silence her about misconduct she witnessed during Batterygate. Apple now seeks to delay the Court's consideration of these facts while rushing forward with its own Motion to Dismiss—an attempt to get the case thrown out before the Court even addresses the full extent of Apple's misconduct.

The same tactics Apple used to cover up Batterygate—secrecy, coercion, and manipulation—are being deployed here to prevent the Court from ruling on its bad-faith litigation conduct. Plaintiff's cross-motion to stay Apple's Motion to Dismiss is essential to prevent Apple from benefitting from its suppression of evidence and its continued deception. Apple cannot be allowed to shield its wrongdoing behind procedural maneuvering, particularly when that wrongdoing includes direct retaliation against a key witness to its past fraud. The Court must address Apple's withholding of evidence, conflicts of interest, and fraudulent litigation tactics before allowing Apple to proceed with its efforts to dismiss claims that it has actively worked to obscure.

### D. Plaintiff's Cross-Motion to Stay Apple's Motion to Dismiss is the Proper Procedural Remedy

Given Plaintiff's allegations of Defendant's counsel withholding evidence and engaging in fraudulent conduct, it is imperative that the Court addresses these serious issues before ruling on Defendant's Motion to Dismiss. Given the serious ethical violations, evidence suppression, and factual disputes raised in Plaintiff's Motion to Amend and Motion to Disqualify, the Court should stay Apple's Motion to Dismiss until the Court resolves these threshold issues.

Courts have broad discretion to manage their dockets to ensure fairness and efficiency. See *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("*the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort*").

Plaintiff respectfully requests that the Court issue a stay of Apple's Motion to Dismiss pending a ruling on Plaintiff's Motion to Amend and Motion to Disqualify, as failure to do so would severely prejudice Plaintiff and reward Apple's procedural gamesmanship.

## III. CONCLUSION

In conclusion, Defendant's attempt to stay Plaintiff's motions while pressing forward with its Motion to Dismiss, coupled with misrepresenting the nature of its communication with Plaintiff regarding stipulation, exemplifies bad-faith litigation tactics. Such conduct further supports the need for the Court to prioritize the resolution of Plaintiff's Motion to Disqualify to uphold the integrity of these proceedings.

**FOR THE FOREGOING REASONS, PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT:**

1. Deny Apple's administrative motion to stay Plaintiff's Motion to Amend and Motion to Disqualify.
2. Grant Plaintiff's cross-motion to stay Apple's Motion to Dismiss pending resolution of Plaintiff's Motion to Amend and Motion to Disqualify.
3. Take into consideration Apple's bad-faith tactics in misrepresenting its request for stipulation and misleading the Court.

Dated: Feb. 3 2025

Respectfully submitted,

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

# Exhibits

# Exhibit A



**Subscribe to Our Newsletter**   | Enter your email |   Subscribe



## ROB BONTA
### *Attorney General*

# Attorney General Becerra Announces $113 Million Multistate Settlement Against Apple for Misrepresenting iPhone Batteries and Performance Throttling

Press Release   /  *Attorney General Becerra Announces $113 Million Multistate S…*

Wednesday, November 18, 2020

Contact: (916) 210-6000, agpressoffice@doj.ca.gov

*The settlement provides California with $24.6 million and terms that protect Californians' ability to make informed purchasing decisions*

**SACRAMENTO** – California Attorney General Xavier Becerra, alongside 33 other states and the district attorneys for the counties of Los Angeles, Alameda, Santa Clara, San Diego and Santa Cruz, today announced a $113 million settlement against Apple. The settlement resolves allegations that the company made misrepresentations about iPhone batteries and software updates that throttled processing performance in order to manage insufficient battery power in its phones. "Throttling" refers to the purposeful reduction in system performance to prevent the automatic shutdown of phones with

2/3/25, 7:04 PM       Attorney General Becerra Announces $113 Million Multistate Settlement Against Apple for Misrepresenting iPhone Batteries and Perf…

Case 3:23-cv-04597-EMC    Document 159     Filed 02/03/25     Page 14 of 43

aging batteries. California will receive $24.6 million of the total settlement, which also includes injunctive terms that will provide transparency to consumers and deter future misrepresentations regarding Apple's battery capability.

"Apple withheld information about their batteries that slowed down iPhone performance, all while passing it off as an update," **said Attorney General Becerra**. "This type of behavior hurts the pockets of consumers and limits their ability to make informed purchases. Today's settlement ensures consumers will have access to the information they need to make a well-informed decision when purchasing and using Apple products."

"My Office works very hard on behalf of consumer rights throughout the county and the state. We are proud to act in conjunction with the California Attorney General, district attorney offices throughout California, and attorneys general around the country to ensure that Apple is held accountable for not telling customers that their iPhones might be slowed down as a result of the upgrade," **said Alameda County District Attorney Nancy O'Malley**. "When a company, large or small, acts in a manner that may mislead consumers, we will take action."

"We are pleased that Apple Inc. has agreed to comply with state consumer laws," **said Los Angeles County District Attorney Jackie Lacey**. "With this settlement, the technology company has pledged to provide clear and conspicuous communication to consumers about lithium-ion batteries, unexpected shutdowns and performance management. We as prosecutors are here to protect consumers and ensure that all companies, large and small, provide transparency so that their customers are fully informed when they spend money on products."

"We are proud to be one of the initiating prosecutorial agencies in this consumer protection case," **said Santa Cruz District Attorney Jeffrey Rosell**. "Our office works diligently to protect the people of Santa Cruz County, even against the largest

corporations in the world. We are committed to protecting the rights of all California consumers, especially those in Santa Cruz County, and work collaboratively with other agencies to achieve this goal."

California's complaint alleges that Apple equipped their iPhone 6 and 7 generation phones with batteries that were particularly susceptible to performance loss, which led to unexpected power-offs when those batteries could not provide sufficient voltage to support phone processing performance. According to the complaint, Apple tried to manage the problem through software updates that avoided unexpected power-offs by throttling the phones' processing performance. Apple also allegedly misrepresented the effects of the software updates by claiming they would improve power management rather than admitting that the updates would actually reduce performance.

In addition to paying $113 million, Apple has agreed to injunctive terms, which include:

- Maintaining a prominent and accessible webpage on their website that provides clear and easily visible information to consumers about how the company manages battery performance issues, such as by throttling iPhone processing performance;
- Providing a clear and easily visible notice to all affected consumers when an iOS update materially affects iPhone processing performance;
- Providing information in the iPhone settings menu about the consumer's battery performance and maximum capacity as well as a notice of when a battery has experienced performance degradation of a significance that the consumer should service the battery; and
- Training its consumer-facing staff regarding compliance with this injunction and the information that this injunction requires Apple to provide to consumers.

Apple has also settled private class action litigation that resulted in up to $500 million in restitution for consumers who were affected by the misconduct alleged in California's complaint.

A copy of the complaint and California's stipulated judgment are available here and here.

# # #

---

Office of the Attorney General     Accessibility     Privacy Policy     Conditions of Use     Disclaimer

© 2025 DOJ

EXHIBIT B

# Apple to pay up to $500 million to settle U.S. lawsuit over slow iPhones

reuters.com/article/us-apple-iphones-settlement/apple-to-pay-up-to-500-million-to-settle-u-s-lawsuit-over-slow-iphones-idUSKBN20P2E7

Jonathan Stempel

FILE PHOTO: An Apple Store employee walks past an illustration of iPhones at the new Apple Carnegie Library during the grand opening and media preview in Washington, U.S., May 9, 2019. REUTERS/Clodagh Kilcoyne Purchase Licensing Rights ⧉ , opens new tab

(Reuters) - Apple Inc has agreed to pay up to $500 million to settle litigation accusing it of quietly slowing down older iPhones as it launched new models, to induce owners to buy replacement phones or batteries.

The preliminary proposed class-action settlement was disclosed on Friday night and requires approval by U.S. District Judge Edward Davila in San Jose, California.

It calls for Apple to pay consumers $25 per iPhone, which may be adjusted up or down depending on how many iPhones are eligible, with a minimum total payout of $310 million.

Apple denied wrongdoing and settled the nationwide case to avoid the burdens and costs of litigation, court papers show.

The Cupertino, California-based company did not immediately respond on Monday to requests for comment.

Friday's settlement covers U.S. owners of the iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7Plus or SE that ran the iOS 10.2.1 or later operating system. It also covers U.S. owners of the iPhone 7 and 7 Plus that ran iOS 11.2 or later before Dec. 21, 2017.

Consumers contended that their phones' performance suffered after they installed Apple software updates. They said this misled them into believing their phones were near the end of their lifecycles, requiring replacements or new batteries.

Apple attributed the problems mainly to temperature changes, high usage and other issues, and said its engineers worked quickly and successfully to address them. Analysts sometimes refer to the slowing of iPhones as "throttling."

Lawyers for the consumers described the settlement as "fair, reasonable, and adequate."

They called payments of $25 per iPhone "considerable by any degree," saying their damages expert considered $46 per iPhone the maximum possible.

The lawyers plan to seek up to $93 million, equal to 30% of $310 million, in legal fees, plus up to $1.5 million for expenses.

Following an initial outcry over slow iPhones, Apple apologized and lowered the price for replacement batteries to $29 from $79.

The case is In re Apple Inc Device Performance Litigation, U.S. District Court, Northern District of California, No. 18-md-02827.

Reporting by Jonathan Stempel in New York; Editing by Dan Grebler

EXHIBIT C



23490117

1 XAVIER BECERRA
Attorney General of California
2 Nicklas A. Akers
Senior Assistant Attorney General
3 Michael Elisofon, SBN 240707
Supervising Deputy Attorney General
4 Sarah E. Kurtz, SBN 99881
Devin Mauney, SBN 2946394
5 Daniel Osborn, SBN 311037
Deputy Attorneys General
6      1515 Clay St., 20th Floor
     Oakland, CA 94612
7      Telephone: (510) 879-1300
     E-mail: Daniel.Osborn@doj.ca.gov
8
9 JACKIE LACEY
District Attorney of Los Angeles County
10 Hoon Chun, SBN 132516
Assistant Head Deputy
11 Steven Wang, SBN 221950
Deputy District Attorney
12 Jessie Lee Ann McGrath, SBN 131702
Deputy District Attorney
13      211 W. Temple Street, Ste 1000
     Los Angeles, CA  90012
14      Telephone: (213) 257-2450
     Email: hchun@da.lacounty.gov
15

FILED
ALAMEDA COUNTY

NOV 18 2020

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

NANCY E. O'MALLEY
District Attorney of Alameda County
Matthew L. Beltramo, SBN 184796
Assistant District Attorney
Nancy H. Tung, SBN 203236
Autrey B James, SBN 236516
Deputy District Attorneys
     7677 Oakport Street, Suite 650
     Oakland, CA 94621
     Telephone: (510) 383-8600
     Facsimile: (510) 383-8615
     Email: matthew.beltramo@acgov.org

**NO FEE PURSUANT TO
GOVERNMENT CODE § 6103**

16 (Additional attorneys for the People appearing on the Appendix)

17
18                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

19                                    COUNTY OF ALAMEDA

20

21

22 **PEOPLE OF THE STATE OF
CALIFORNIA,**
23
                                    Plaintiff,
24
                v.
25
**APPLE, INC.**
26
                                    Defendant.
27

Case No. RG20080113

**COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF**

(BUS. & PROF. CODE, §§ 17200 et seq.;
17500 et seq.)

28

1

1

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

2      1.   Plaintiff, the PEOPLE OF THE STATE OF CALIFORNIA ("Plaintiff" or "the

3   People"), by and through Xavier Becerra, Attorney General of the State of California, Jackie

4   Lacey, District Attorney of Los Angeles County, Nancy E. O'Malley, District Attorney of

5   Alameda County, Summer Stephan, District Attorney of San Diego County, Jeffrey Rosen,

6   District Attorney of Santa Clara County, and Jeffrey Rosell, District Attorney of Santa Cruz

7   County, brings this action against Defendant, Apple, Inc. ("Apple" or "Defendant"), for violating

8   the California Unfair Competition Law ("UCL") (Bus. & Prof. Code § 17200 et seq.) and the

9   California False Advertising Law ("FAL") (Bus. & Prof. Code § 17500 et seq.), and alleges the

10   following on information and belief.

11

**JURISDICTION AND VENUE**

12      2.   Defendant has transacted business within the State of California, including in the

13   Counties of Alameda, Santa Clara, San Diego, Los Angeles, and Santa Cruz, at all times relevant

14   to this complaint. The violations of law described herein occurred in the Counties of Alameda,

15   Santa Clara, San Diego, Los Angeles, and Santa Cruz, and elsewhere in the State of California.

16

**DEFENDANT**

17      3.   Defendant Apple, Inc., is a California corporation with its principal place of business

18   at One Apple Park Way, Cupertino, California 95014.

19

**BACKGROUND**

20      4.   Apple is one of the world's largest cell-phone manufacturers, and makes the popular

21   line of iPhone smartphones. Apple's iPhones are powered by lithium-ion batteries, which lose the

22   ability to provide voltage over time. Because utilizing peak processing power with a degraded

23   battery can damage a phone's electronic hardware, iPhones are programmed to automatically shut

24   off when a battery can no longer provide sufficient voltage to support necessary processing

25   power. Apple equipped their iPhone 6 and iPhone 7 generation phones, as well as their first

26   generation iPhone SE phones, with batteries that were particularly susceptible to such

27

28

2

1  performance loss over time, which led to a higher than expected number of "unexpected power-

2  offs" ("UPOs") as the phones aged.

3       5.     In January 2017, Apple released an update to its iPhone 6 operating system called

4  iOS 10.2.1, which managed the UPO problem by downgrading iPhone processing performance as

5  the battery lost power. In other words, iOS 10.2.1 struck a trade-off: in order to prolong battery

6  life and prevent shutdowns, 10.2.1 slowed down—or "throttled"—iPhone processing

7  performance.

8       6.     In December 2017, Apple released iOS 11.2, which struck the same tradeoff between

9  battery life and processing performance in Apple's iPhone 7 models. All iOS updates between

10  iOS 10.2.1 and iOS 11.2.6, inclusive, throttled iPhone processing in order to compensate for

11  insufficient battery performance.

12       7.     The iPhone models affected by these iOS updates were:

13          •  iPhone 6;

14          •  iPhone 6 Plus;

15          •  iPhone 6S;

16          •  iPhone 6S Plus;

17          •  First generation iPhone SE;

18          •  iPhone 7; and

19          •  iPhone 7 Plus.

20       8.     Throttled iPhone performance manifested itself in many ways noticeable to iPhone

21  owners. For example, throttled phones experience longer app launch times, lower frame rates

22  while scrolling, reduced screen brightness, and lower speaker volume. Overall, iPhone

23  performance was noticeably slower in throttled phones.

24  **APPLE'S DECEPTIVE ACTS AND PRACTICES**

25       9.     Apple was not candid or forthright about throttling its iPhones, and chose instead to

26  mislead consumers about the purpose and effect of its iOS updates.

27       10.    From the very beginning, Apple's public statements about the iPhone 6, the first-

28  generation iPhone SE, and the iPhone 7 were directly contrary to the realities of the battery

3

1  performance and UPO problem Apple knew these phones were facing. For example, when Apple

2  released the iPhone 6, it touted that the phone had "blazingly fast performance and power

3  efficiency," and that it "deliver[ed] higher sustained performance with great battery life."

4  Similarly, Apple claimed that the new iPhone SE had "blazingly fast speeds [and] longer battery

5  life" and that the iPhone 7 delivered "more power and performance with the best battery life

6  ever."

7        11.    Apple compounded the deception created by its inaccurate claims regarding battery

8  and processing performance when it launched iOS 10.2.1—the first iOS update to throttle

9  iPhones—for iPhone 6 models on January 23, 2017. Upon release, Apple did not explain that iOS

10  10.2.1 would throttle iPhone performance. Rather, Apple misrepresented the purpose of the iOS

11  10.2.1 update in the description it provided to iPhone 6 owners, saying only that it "*improves*

12  *power management* during peak workloads to avoid unexpected shutdowns on iPhone."

13  [Emphasis added.]

14        12.    Approximately one month later, in February 2017, Apple doubled down on

15  misrepresenting the purpose and effect of the iOS 10.2.1 update when it provided a statement to

16  numerous media outlets about the iOS 10.2.1 update. Instead of explaining that iOS 10.2.1

17  throttled performance in order to compensate for poor battery performance, Apple claimed once

18  again that it, "*made improvements* to reduce occurrences of unexpected shutdowns." [Emphasis

19  added.]

20        13.    When Apple launched iOS 11.2 on December 2, 2017 for iPhone 7 models, it chose

21  to ignore altogether that iOS 11.2 throttled iPhone 7s in the same way that iOS 10.2.1 throttled

22  iPhone 6 models and the iPhone SE. Specifically, in the description Apple provided of the iOS

23  11.2 update to iPhone 7 users, Apple stated only that "iOS 11.2 introduces Apple Pay Cash to

24  send, request, and receive money from friends and family with Apple Pay. This update also

25  includes bug fixes and improvements." Nowhere did Apple mention battery management or

26  performance throttling.

27        14.    On December 18, 2017, a technology blogger published the results of independent

28  testing demonstrating that Apple had throttled its iPhones in response to battery performance

problems. This blog post touched off an intense round of media scrutiny criticizing Apple for misleading consumers about its iPhone throttling practices. Only after the December 18 blog post and the resulting media scrutiny did Apple come clean about its prior misrepresentations regarding the UPO problem and its throttling of iPhone performance.

15.   Prior to launching iOS 10.2.1, Apple knew that it had a problem. Specifically, Apple knew that its iPhone customers were unhappy with the high rates of UPOs, but it also knew that iPhone customers would be unhappy if Apple throttled phone performance to fix the problem. Rather than being candid or forthright with its customers, Apple chose to misrepresent both the nature of the UPO problem, and the throttling solution, to its customers. Apple did not reverse course on this internal decision until it was publicly called out for its deception by the press in late December 2017.

16.   Apple's misrepresentations harmed iPhone users in myriad ways. First, some consumers who purchased iPhones likely would not have had they been aware of Apple's battery power problems and performance throttling solution. Second, because consumers were not aware that the *battery* was in fact the cause of UPOs and performance throttling, some consumers likely purchased an entirely new phone when they experienced diminished performance though, in fact, a much cheaper battery replacement would have remedied the problem. Third, some consumers likely suffered through diminished performance that they could have avoided. Ultimately, the value of these consumers' iPhones was lower relative to what it would have been had Apple equipped these customers with the information and agency to make informed choices about their devices.

## VIOLATIONS OF LAW

### FIRST CAUSE OF ACTION: CALIFORNIA UNFAIR COMPETITION LAW

17.   The People reallege and incorporate each and every allegation contained in the preceding paragraphs 1 through 16, inclusive, as though set forth here in full.

18.   Apple has engaged in business acts or practices that were unlawful, unfair, deceptive, or misleading, and therefore violated Business and Professions Code section 17200. These acts and practices include material misrepresentations and/or omissions regarding the nature of the

5

1   UPO problem and Apple's performance throttling solution, including but not limited to,

2   statements regarding: (1) the ability of the lithium-ion batteries in its iPhones to provide sufficient

3   power to support necessary phone processing; (2) the nature and cause of the high numbers of

4   UPOs, which were in fact caused by insufficient battery power, and; (3) the nature of the iOS

5   updates that throttled phone processing. These misrepresentations and/or omissions were material

6   and likely to deceive a reasonable iPhone customer or prospective customer.

7               **SECOND CAUSE OF ACTION: CALIFORNIA FALSE ADVERTISING LAW**

8           19.     The People reallege and incorporate each and every allegation contained in the

9   preceding paragraphs 1 through 18, inclusive, as though set forth here in full.

10          20.     Apple has engaged in business acts or practices that constitute violations of Business

11  and Professions Code section 17500. These acts and practices include making misrepresentations

12  and/or omissions regarding the nature of the UPO problem and Apple's performance throttling

13  solution, which Defendants knew, or by the exercise of reasonable care should have known, were

14  untrue or misleading at the time Apple made them. These misrepresentations and omissions

15  include, but are not limited to, statements regarding: (1) the ability of the lithium-ion batteries in

16  its iPhones to provide sufficient power to support necessary phone processing; (2) the nature and

17  cause of the high numbers of UPOs, which were in fact caused by insufficient battery power, and;

18  (3) the nature of the iOS updates that throttled phone processing. These misrepresentations and/or

19  omissions were material and likely to deceive a reasonable iPhone customer or prospective

20  customer.

21                              **PRAYER FOR RELIEF**

22          WHEREFORE, the People of the State of California respectfully request that this

23  honorable Court enter an order:

24          A.      Issuing an injunction prohibiting Apple, its agents, employees, and all other persons

25  and entities, corporate or otherwise, in active concert or participation with any of them, from

26  engaging in unfair, deceptive or misleading conduct;

27          B.      Assessing a civil penalty against defendant for each violation of Business and

28  Professions Code section 17200 and Business and Professions Code section 17500.

6

C.    Ordering Apple to pay Plaintiff's costs of suit, including but not limited to all costs of prosecution and investigation;

D.    Granting such other and further relief as the Court deems equitable and proper.

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California

Dated: November 18, 2020          By: _____
                                   Nicklas A. Akers
                                   Senior Assistant Attorney General
                                   Michael Elisofon
                                   Supervising Deputy Attorney General
                                   Daniel Osborn
                                   Deputy Attorney General

                                   *Attorneys for the Plaintiff, People of the State of California*


JACKIE LACEY
District Attorney, Los Angeles County

Dated: November 18, 2020          By: _____
                                   Hoon Chun
                                   Assistant Head Deputy District Attorney
                                   Steven Wang
                                   Deputy District Attorney
                                   Jessie Lee Ann McGrath
                                   Deputy District Attorney

                                   *Attorneys for the Plaintiff, People of the State of California*

7

Complaint for Injunctive and Other Relief
*People v. Apple, Inc.*

1

2

NANCY E. O'MALLEY
District Attorney, Alameda County

3

Dated:  November 18, 2020

4

By: _____
Matthew L. Beltramo
Assistant District Attorney

5

6

*Attorneys for the Plaintiff, People of the
State of California*

7

8

SUMMER STEPHAN
District Attorney, San Diego County

9

10

Dated:  November 18, 2020

11

By: _____
Thomas A. Papageorge, Head
Consumer Protection Unit

12

13

*Attorneys for the Plaintiff, People of the
State of California*

14

15

JEFFREY ROSEN
District Attorney, Santa Clara County

16

17

Dated:  November 18, 2020

18

By: _____
Bud Porter
Supervising Deputy District Attorney

19

20

*Attorneys for the Plaintiff, People of the
State of California*

21

22

JEFFREY ROSELL
District Attorney, Santa Cruz County

23

Dated:  November 18, 2020

24

By: _____
Douglas Allen
Francisca Allen
Assistant District Attorneys

25

26

*Attorneys for the Plaintiff, People of the
State of California*

27

28

8

# APPENDIX

The following additional attorneys also appear in this action as counsel for Plaintiff, the People of the State of California:

SUMMER STEPHAN
District Attorney of San Diego County
Thomas A. Papageorge, SBN 77690
Deputy District Attorney
Colleen Huschke, SBN 191402
Deputy District Attorney
330 West Broadway, Ste. 750
San Diego, CA 92101
Telephone: (619) 531-3971
Facsimile: (619) 531-3350
Email: Thomas.papageorge@sdcda.org

JEFFREY F. ROSEN
District Attorney, County of Santa Clara
Bud Porter, SBN 197277
Supervising Deputy District Attorney
70 W. Hedding St., West Wing
San Jose, CA 95110
Telephone: (408) 299-7400
Email: bporter@dao.sccgov.org

JEFFREY ROSELL
District Attorney, County of Santa Cruz
Douglas Allen, SBN 99239
Assistant District Attorney
Francisca Allen, SBN 99402
Assistant District Attorney
701 Ocean St., Suite 200
Santa Cruz, CA 95060
Telephone: (831) 454-2930
Email: douglas.allen@santacruzcounty.us

9

Complaint for Injunctive and Other Relief
*People v. Apple, Inc.*

EXHIBIT D

XAVIER BECERRA
Attorney General of California
Nicklas A. Akers
Senior Assistant Attorney General
Michael Elisofon, SBN 240707
Supervising Deputy Attorney General
Sarah E. Kurtz, SBN 99881
Devin Mauney, SBN 294634
Daniel Osborn, SBN 311037
Deputy Attorneys General
    1515 Clay St., Suite 2000
    Oakland, CA 94612
    Telephone: (510) 879-1300
    E-mail: Devin.Mauney@doj.ca.gov

JACKIE LACEY
District Attorney of Los Angeles County
Hoon Chun, SBN 132516
Assistant Head Deputy
Steven Wang, SBN 221950
Deputy District Attorney
Jessie Lee Ann McGrath, SBN 131702
Deputy District Attorney
    211 W. Temple Street, Ste. 1000
    Los Angeles, CA  90012
    Telephone: (213) 257-2450
    Email: hchun@da.lacounty.gov

NANCY E. O'MALLEY
District Attorney of Alameda County
Matthew L. Beltramo, SBN 184796
Assistant District Attorney
Nancy H. Tung, SBN 203236
Autrey B James, SBN 236516
Deputy District Attorneys
    7677 Oakport Street, Suite 650
    Oakland, CA 94621
    Telephone: (510) 383-8600
    Facsimile: (510) 383-8615
    Email: matthew.beltramo@acgov.org

(Additional attorneys for the People appearing on the Appendix)

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE OF CALIFORNIA,

        Plaintiff,

   v.

APPLE INC.,

        Defendant.

Case No.

**[PROPOSED] FINAL JUDGMENT**

1

1

2    Plaintiff, the People of the State of California (hereinafter, Plaintiff or People), represented

3    by Xavier Becerra, Attorney General of the State of California, by Devin Mauney, Deputy

4    Attorney General; Jackie Lacey, District Attorney of Los Angeles County, by Hoon Chun,

5    Assistant Head Deputy District Attorney, and Steven Wang, Deputy District Attorney; Nancy E.

6    O'Malley, District Attorney of Alameda County, by Matthew Beltramo, Assistant District

7    Attorney; Summer Stephan, District Attorney of San Diego County, by Thomas Papageorge,

8    Deputy District Attorney, and Colleen E. Huschke, Deputy District Attorney; Jeffrey Rosen,

9    District Attorney of Santa Clara County, by Bud Porter, Supervising Deputy District Attorney;

10   Jeffrey Rosell, District Attorney of Santa Cruz County, by Douglas Allen and Francisca Allen,

11   Assistant District Attorneys; and defendant Apple Inc., a corporation ("Defendant" or "Apple"),

12   appearing through its attorneys Covington & Burling LLP, by Winslow Taub, having stipulated

13   and consented to the Court's entry of this Final Judgment ("Judgment") in this proceeding and

14   accepting this Judgment as the final adjudication of this civil action without taking proof and

15   without trial, without this Judgment constituting evidence of or an admission by Defendant

16   regarding any issue of law or fact alleged in the Complaint, without Defendant admitting any

17   liability, and with all parties having waived their right to appeal.

18   This Judgment is entered to resolve the investigations of Defendant undertaken by the

19   Attorneys General of the states and commonwealths of Alaska, Arizona, Arkansas, California[1],

20   Connecticut, Florida, Hawaii,[2] Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana,

21   Michigan, Minnesota, Missouri, Montana, Nevada, Nebraska, New Jersey, North Carolina, North

22   Dakota, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia,

23   Wisconsin, and the District Of Columbia (the "Attorneys General" or "States") pursuant to each of

24

25   _____

26   [1] References to the California Attorney General include the California Attorney General's Office and the District Attorneys of Los Angeles, San Diego, Alameda, Santa Clara, and Santa Cruz.

27   [2] Hawaii is represented by its Office of Consumer Protection. For simplicity purposes, the entire group will be referred to as the "Attorneys General," or individually as "Attorney General." Such designations, however, as they pertain to Hawaii, shall refer to the Executive Director of the Office of Consumer Protection, a division of the Department of Commerce and Consumer Affairs.

28

2

the States' respective Consumer Protection Laws, including unfair and deceptive acts or practices statutes.

The Court having considered the matter and good cause appearing:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

## PARTIES

1.      Plaintiff is the People of the State of California.

2.      Defendant is Apple Inc., a company with its principal office located in Cupertino, California.

## JURISDICTION AND VENUE

3.      Apple, at all relevant times, has transacted business in the State of California, including but not limited to business in the Counties of Alameda, Santa Clara, San Diego, Los Angeles, and Santa Cruz.

4.      This Court has jurisdiction over the Complaint and the parties necessary for the Court to enter this Judgment and any orders hereafter appropriate.

5.      Venue is proper in the County of Alameda.

6.      This Judgment is entered pursuant to and subject to the Unfair Competition Law, Business and Professions Code section 17200 et seq. (the "UCL") and False Advertising Law, Business and Professions Code section 17500 et seq. (the "FAL").

## DEFINITIONS

7.       "Clear and Conspicuous" means that statements, disclosures, or other information, by whatever medium communicated, including all electronic devices, are (a) in readily understandable language and syntax, and (b) in a type size, font, color, appearance, and location sufficiently noticeable for a consumer to read and comprehend them, in a print that contrasts with the background against which they appear.

8.      "Consumer Protection Laws" means the consumer protection laws enforced by Plaintiff, including, as relevant herein, the UCL (Bus. & Prof. § 17200 et seq.) and the FAL (Bus. & Prof. § 17500 et seq.).

3

9.    "Covered Conduct" means Apple's business practices, acts and omissions, including its representations and disclosures, related to Performance Management in Relevant iOS Versions between 2016 and the Effective Date.

10.    "Effective Date" means November 25, 2020.

11.    "iOS" means the operating system software made available by Apple for iPhones and other mobile devices.

12.    "iPhone" means the personal devices designed and marketed by Apple.

13.    "Performance Management" means the functionality first introduced in iOS 10.2.1 for managing the performance of the Relevant iPhones to match the peak power delivery of lithium-ion batteries.

14.    "Person" means any natural person or the person's legal representative, partnership, domestic or foreign corporation, company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate or trustee of the same.

15.    "Relevant iOS Versions" means all iOS versions between iOS 10.2.1 and 11.2.6, inclusive.

16.     "Relevant iPhones" means the iPhone models relevant to the People's claims, which are as follows:

       a.  iPhone 6;

       b.  iPhone 6 Plus;

       c.  iPhone 6S;

       d.  iPhone 6S Plus;

       e.  First generation iPhone SE;

       f.  iPhone 7; and

       g.  iPhone 7 Plus.

### INJUNCTIVE RELIEF

17.    The injunctive provisions of this Judgment shall apply to Apple and its directors, officers, employees, representatives, agents, affiliates, parents, subsidiaries, predecessors, assigns

and successors and shall be effective for three (3) years from the Effective Date of this Judgment.

18.     Apple will maintain easily accessible and prominent webpage(s) that provide Clear and Conspicuous information to consumers about lithium-ion batteries, unexpected shutdowns, and Performance Management. The webpage(s) will provide guidance to consumers on steps they can take to maximize battery health. The webpage(s) will also describe the operation of Performance Management and its impact on iPhone battery and performance.

19.     If a future iOS update materially changes the impact of Performance Management when downloaded and installed on an iPhone, Apple will notify consumers in a Clear and Conspicuous manner of those changes in the installation notes for the update.

20.     Apple will provide information to consumers in the iPhone user interface (e.g., Settings > Battery > Battery Health) about the battery, such as the battery's maximum capacity and information about its peak performance capability, as well as a notification of the option to service the battery once the performance of the battery has become significantly degraded.

21.     Apple will implement procedures to ensure its consumer-facing staff and Apple-authorized iPhone retailers:

      a.     are sufficiently familiar with the information in the webpage(s) described in paragraph 18 of this Judgment, and the iPhone user interface described in paragraph 20;

      b.     communicate such information to consumers wherever relevant; and

      c.     refer consumers to such webpage(s) or interface, where appropriate.

## DISPUTE RESOLUTION

22.     If one or more Attorneys General reasonably believe that Apple has failed to comply with any term of the injunctive relief, each Attorney General shall provide written notice to Apple, unless the failure to comply threatens the health or safety of the citizens of their state(s) and/or creates an emergency requiring immediate action.  Apple shall have sixty (60) days from receipt of such notice to provide a good faith written response, including either a statement that Apple believes it is in full compliance with the relevant provision or a statement explaining how the violation occurred, how it has been addressed or when it will be addressed, and what Apple

5

will do to make sure the violation does not occur again.  The Attorney(s) General may agree to provide Apple with more than sixty (60) days to respond.  During the sixty (60) day period, each of the Attorney(s) General shall engage in good faith discussions with Apple, before taking any enforcement action(s), in an attempt to resolve the alleged non-compliance. If Apple notifies the Attorneys General in writing that two or more Attorneys General have notified Apple of alleged violations, the Attorney(s) General that provided notice of alleged violations shall engage in those good faith discussions collectively if possible.

23.    Nothing herein shall be construed to exonerate any contempt or failure to comply with any provision of this Judgment after the date of its entry, or to prevent any of the agencies representing the People in this action from initiating a proceeding for any contempt or other sanctions for failure to comply, or to compromise the authority of a court to punish as contempt any violation of this Judgment.  Further, nothing in paragraph 22 shall be construed to limit the authority of the agencies representing the People in this action to protect the interests of California or its residents.

## **MONETARY PAYMENT**

24.    Apple shall pay a total of One Hundred and Thirteen Million Dollars ($113,000,000.00) to the Attorneys General, to be apportioned amongst the Attorneys General at their sole discretion.  As part of this total payment, and pursuant to Business and Professions Code section 17206, Defendant shall pay the sum of twenty-four million six hundred thousand dollars ($24,600,000.00) to the California Attorney General's Office and the District Attorney's Offices representing the People of the State of California in this action. Payment instructions shall be provided to Apple by the Attorney General no later than seven (7) days after the Effective Date.  If the Court has not entered this Judgment by the Effective Date, Apple shall make the payment within sixty (60) days of the Effective Date or within thirty (30) days of the date of entry of the Judgment, whichever is later. Upon completion of the payment described above, Apple shall have no further obligation to assist the agencies representing Plaintiff in their use of the payment. Payment shall be apportioned as follows:

a.    Four million one hundred thousand dollars ($4,100,000) shall be paid to the California Attorney General's Office.

6

b.  Four million one hundred thousand dollars ($4,100,000) shall be paid to the District Attorney's Office for the County of Alameda.

c.  Four million one hundred thousand dollars ($4,100,000) shall be paid to the District Attorney's Office for the County of Los Angeles.

d.  Four million one hundred thousand dollars ($4,100,000) shall be paid to the District Attorney's Office for the County of San Diego.

e.  Four million one hundred thousand dollars ($4,100,000) shall be paid to the District Attorney's Office for the County of Santa Clara.

f.  Four million one hundred thousand dollars ($4,100,000) shall be paid to the District Attorney's Office for the County of Santa Cruz.

25.    Also out of the total amount due to the Attorneys General set forth in paragraph 24, Apple will make a single payment on behalf of and at the direction of the States, within sixty (60) days of the Effective Date, to funds maintained in trust by the National Association of Attorneys General, in an amount designated and communicated to Apple by the Arizona Attorney General.

## **RELEASE**

26.    By its execution of this Judgment, California releases and forever discharges Apple and its past and present directors, officers, employees, representatives, agents, affiliates, parents, subsidiaries, predecessors, assigns and successors ("Releasees") from any and all civil causes of action or claims for damages, costs, attorneys' fees, or penalties of any kind that the Attorneys General and agencies representing the People in this action have asserted or could have asserted concerning the Covered Conduct. The Attorneys General and the agencies representing the People in this action execute this release in their official capacity and release only claims that the Attorneys General and said agencies have the authority to bring or release.  Nothing contained in this paragraph shall be construed to limit the ability of the agencies representing the People in this action to enforce Apple's obligations under this judgment.

27.    Notwithstanding any term of this Judgment, specifically reserved and excluded from the release in paragraph 26 as to any entity or Person, including the Releasees, are any and all of the following:

a.  any criminal liability that any Person or entity, including Releasees, has or

7

1    may have to the States;

2    b.  any civil or administrative liability that any Person or entity, including

3    Releasees, has or may have to the States under any statute, regulation or rule

4    giving rise to any and all of the following claims;

5        i.   state or federal antitrust violations;

6        ii.  state or federal securities violations; or

7        iii. state or federal tax claims.

8    28.    Nothing in this Judgment shall be construed as excusing or exempting Apple from

9    complying with any applicable state or federal law, rule, or regulation, and no provision of this

10   Judgment shall be deemed to authorize or require Apple to engage in any acts or practices

11   prohibited by any state or federal law, rule, or regulation.

12                                **GENERAL PROVISIONS**

13   29.    The provisions of this Judgment shall be construed in accordance with the laws

14   of California.

15   30.    Nothing in this Judgment shall be construed as an approval by the Attorneys

16   General, the agencies representing the People in this action, or any other agency of Apple's past,

17   present, or future conduct.

18   31.    Apple shall not represent or imply that the Attorneys General or the agencies

19   representing the People in this action or any other agency has approved or approves of any of

20   Apple's actions or past, present, or future business practices.

21   32.    This Judgment shall not bar the California Attorney General, the agencies

22   representing the People in this action, or any other governmental entity from enforcing

23   applicable laws, regulations, or rules against Apple for conduct subsequent to date of entry of

24   this Judgment or otherwise not covered by this Judgment.

25   33.    Apple willingly has entered into this Judgment in order to resolve the Attorney

26   General's and the agencies representing this action's claims under the UCL and FAL as to the

27   matters addressed in this Judgment and thereby avoid significant expense, inconvenience, and

28   uncertainty.

34.    Apple has entered into this Judgment solely for the purposes of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Apple expressly denies.    No part of this Judgment, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Apple. This document and its contents are intended to be used in resolving this litigation and not by any other party or for any other purpose.

35.    This Judgment shall not be construed or used as a waiver or limitation of any defense otherwise available to Apple in any other action, or of Apple's right to defend against, or make any agreements in, any private individual action, class claims or suits, or any other governmental or regulatory action relating to the subject matter or terms of this Judgment. Notwithstanding the foregoing, the California Attorney General and the agencies representing the People in this action may file an action to enforce the terms of this Judgment.

36.    No part of this Judgment shall create, waive, release or limit a private cause of action or confer any right to any third party for a violation of any state or federal statute.

37.    The exclusive right to enforce any violation or breach of this Judgment shall be with the parties to this Judgment and the Court.

38.    Nothing in this Judgment constitutes an agreement by the Plaintiff concerning the characterization of the amounts paid hereunder for purposes of any proceeding under the Internal Revenue Code or any state tax laws.    The Judgment takes no position with regard to the tax consequences of the Judgment with regard to federal, state, local, and foreign taxes.

39.    This Judgment is binding upon Plaintiff and Apple, and any of Apple's respective successors, assigns, or other entities or persons otherwise bound by law.

40.    The parties will bear their own costs in this action, including any first appearance filing fees, attorneys' fees, and other costs of investigation.

41.    If any provision of this judgment is found to be invalid or unenforceable in any degree, the provision will be enforced to the maximum extent permissible by law to effectuate the intent of the parties, and the remainder of this judgment will continue in full force.

9

42.     This Judgment represents the entire agreement between the parties, and there are no representations, agreements, arrangements, or understandings, oral or written, between the parties relating to the subject matter of this Judgment not fully expressed herein or attached hereto.

43.     Jurisdiction is retained by the Court for the purpose of enabling any party to the Judgment to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for constructing this Judgment's terms, for modifying any of the injunctive provisions, for enforcing compliance, and for punishing violations, if any.

44.     This Judgment becomes effective upon entry, which is ordered forthwith.   No notice of entry of judgment is required to be served upon Defendant.

45.     This is a final judgment that resolves all outstanding claims expressly identified in the Complaint filed in the above captioned matter.

46.     Any notices or other documents required to be sent to the Parties pursuant to this Judgment shall be sent to the following addresses via first class and electronic mail, unless a different address is specified in writing by the party changing such address:


For the Attorney General:

Michael Elisofon
Daniel Osborn
California Attorney General's Office
Consumer Protection Section
1515 Clay Street, 20th Floor
Oakland, CA 94612
Michael.Elisofon@doj.ca.gov
Daniel.Osborn@doj.ca.gov


//
//
//
//
//
//

1

2    For Apple Inc.:

3    Winslow Taub
     Covington & Burling LLP
4    415 Mission Street, Suite 5400
     San Francisco, CA 94105-2533
5    wtaub@cov.com

6    Apple Inc.
     Attn: General Counsel
7    1 Apple Park Way
     Cupertino, CA 95014
8

9

10   DATED this _____ day of _____, 2020.

11

12   _____

13   JUDGE OF THE SUPERIOR COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Final Judgment
*People v. Apple, Inc.*

EXHIBIT E



D<small>IRECTION</small> G<small>ENERALE DE LA</small> C<small>ONCURRENCE, DE LA</small> C<small>ONSOMMATION ET DE LA</small> R<small>EPRESSION DES</small> F<small>RAUDES</small>

| *Communiqué de presse* | *Communiqué de presse* |
|---|---|

**www.economie.gouv.fr/dgccrf**



*Paris, le 07 février 2020*

### Ralentissement du fonctionnement de certains iPhone : une enquête de la DGCCRF conduit au paiement d'une amende transactionnelle de 25 M€ par le groupe Apple

À la suite d'une enquête de la direction générale de la concurrence, de la consommation et de la répression des fraudes (DGCCRF) et après accord du Procureur de la République de Paris, le groupe Apple a accepté de payer une amende de 25 M€ dans le cadre d'une transaction pénale.

Saisie le 5 janvier 2018 par le Parquet de Paris pour enquêter sur la plainte d'une association à l'encontre d'Apple, la DGCCRF a en effet montré que des détenteurs d'iPhone n'avaient pas été informés que les mises à jour du système d'exploitation iOS (10.2.1 et 11.2) qu'ils installaient étaient susceptibles de conduire à un ralentissement du fonctionnement de leur appareil. Ces mises à jour, diffusées au cours de l'année 2017, comportaient un dispositif de gestion dynamique de l'alimentation qui, pouvait, sous certaines conditions et notamment lorsque les batteries étaient anciennes, ralentir le fonctionnement des modèles d'iPhone 6, SE et 7. Dans l'incapacité de revenir à la version précédente du système d'exploitation, de nombreux consommateurs auraient été contraints de changer de batterie voire même d'acheter un nouveau téléphone.

Le Service National des Enquêtes de la DGCCRF a donc transmis au Parquet de Paris en 2019 les conclusions de ses investigations estimant que ce défaut d'information des consommateurs constituait une pratique commerciale trompeuse par omission. Avec l'accord du procureur de la République, il a été proposé au groupe Apple – qui l'a accepté – une transaction comprenant le paiement de la somme de 25 M€ et la publication, pendant un mois, d'un communiqué sur son site internet.

Contact presse DGCCRF  01 44 97 23 91 - communication@dgccrf.finances.gouv.fr

