(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:  +1 650 614 7400
Facsimile:  +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　　　Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO MOTION TO DISQUALIFY**<br><br>Dept:　Courtroom 5, 17th Floor<br>Judge:　Honorable Edward M. Chen<br>Date:　March 13, 2025<br>Time:　1:30 p.m. |

1  KATE E. JUVINALL (SBN 315659)
   kjuvinall@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   631 Wilshire Blvd., Suite 2-C
3  Santa Monica, CA 90401
   Telephone:    +1 310 633 2800
4  Facsimile:    +1 310 633 2849

5  RYAN D. BOOMS (SBN 329430)
   rbooms@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   2100 Pennsylvania Avenue NW
7  Washington, D.C. 20037
   Telephone:    +1 202 339 8400
8  Facsimile:    +1 202 339 8500

9  Attorneys for Defendant
   Apple Inc.

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................... 4
II. LEGAL STANDARD ............................................................................................................... 4
III. ARGUMENT ............................................................................................................................ 5
    A. The Advocate-Witness Rule Does Not Warrant Disqualification Here .................. 5
        1. No Orrick Attorney Is Likely to Be a Witness in This Case ......................... 5
        2. Apple Can Consent to Orrick's Continued Representation Even If an Orrick Attorney Were to Be a Witness. ................................................. 7
    B. Orrick Did Not Engage in Any Misconduct. ........................................................... 7
    C. Plaintiff's Motion Is Another Example of Plaintiff's Bad-Faith Litigation Tactics. .................................................................................................................... 11
IV. CONCLUSION ....................................................................................................................... 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff's Motion to Disqualify is frivolous and should be denied. The Motion—which is rambling and difficult to follow—appears to assert two purported bases for disqualification, neither of which has any merit.

*First*, Plaintiff asserts that Orrick should be disqualified pursuant to the advocate-witness rule, yet she provides no legitimate reason why any Orrick attorney is likely to be a witness in this case. Even if an Orrick attorney were to be a witness, this is not a basis to disqualify a law firm, because the California Rules of Professional Conduct provides that a client can consent to its lawyer continuing to represent it. Plaintiff has no right to deny Apple its chosen counsel.

*Second*, Plaintiff accuses Orrick of misconduct, but her accusations are nothing more than wild speculation and a continuation of her pattern of conduct in this case.[1] Disqualification is a drastic remedy that should not be granted absent a compelling justification, and Plaintiff has failed to provide any justification (let alone a compelling one).

Plaintiff's Motion appears to be little more than yet another flurry of papers to confuse the issues in this case and to interfere with Apple's chosen representation. Because Plaintiff's arguments lack both factual and legal support, her Motion should be denied. In addition, the Court should admonish Plaintiff to stop filing frivolous motions which waste the time of the Court and the parties.

## II.  LEGAL STANDARD

"[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *7 (N.D. Cal. Aug. 31, 2017). "[T]he 'drastic measure' of disqualification is 'generally disfavored and should only be imposed when absolutely necessary.'" *ESC-Toy Ltd. v. Sony Interactive Ent. LLC*, No. 21-CV-00778-EMC, 2024

---

[1] Separate from arguing that Orrick engaged in misconduct warranting disqualification, Plaintiff lobs a slew of spurious allegations and arguments that Apple engaged in various misconduct. *See, e.g.*, Dkt. No. 156-1 ("Mot.") ¶¶32-34. None of the purported misconduct by Apple provides a basis for the relief Plaintiff seeks in this Motion, and therefore Apple does not address such allegations or arguments in this Opposition despite their baseless nature.

1  WL 1335079, at *6 (N.D. Cal. Mar. 27, 2024). "Accordingly, a motion to disqualify should be
2  carefully examined 'to ensure that literalism does not deny the parties substantial justice.'" *Id.*
3  (quoting *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th
4  1135, 1144 (1999)). "The relevant considerations will vary depending on the circumstances, but
5  they 'involve such considerations as a client's right to chosen counsel, an attorney's interest in
6  representing a client, the financial burden on a client to replace disqualified counsel, and the
7  possibility that tactical abuse underlies the disqualification motion.'" *Id.* (quoting *People ex rel.
8  Dept. of Corporations*, 20 Cal.4th at 1145); *see also In re Cnty. of Los Angeles*, 223 F.3d 990, 996
9  (9th Cir. 2000) ("[A] motion to disqualify a law firm can be a powerful litigation tactic to deny an
10 opposing party's counsel of choice" and thus raises "a specter of abuse."). "Because of this potential
11 for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl
12 Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal
13 quotation marks omitted).

### III.  ARGUMENT

#### A.  The Advocate-Witness Rule Does Not Warrant Disqualification Here.

Plaintiff moves to disqualify Orrick pursuant to the advocate-witness rule applicable to California attorneys which states, in relevant part, that an attorney "shall not act as an advocate in a trial in which the lawyer is likely to be a witness *unless . . . (3) the lawyer has obtained informed written consent from the client.*" Cal. R. Prof. Conduct 3.7(a) (emphasis added). The advocate-witness rule does not warrant disqualification here because no Orrick attorney is likely to be a witness, and even if an Orrick attorney were to be a witness, Apple can consent to Orrick's continued representation.

##### 1.  No Orrick Attorney Is Likely to Be a Witness in This Case.

*First*, Plaintiff argues that Orrick attorneys are fact witnesses because "attorneys from Orrick have been directly involved in online harassment, intimidation, and retaliatory legal tactics against Plaintiff." Mot. ¶ 18. Most of what Plaintiff claims is nothing more than rampant

speculation[2] and is patently false; Orrick has never been involved, directly or indirectly, in any harassment, intimidation, or retaliation against Plaintiff. *See* Perry Decl. ¶ 3.

To support her allegation, Plaintiff claims: (1) Orrick requested and obtained a copy of a publicly available restraining order issued against Plaintiff,[3] which allegedly "suggest[s]" that Orrick was somehow involved in seeking the restraining order itself; and (2) Orrick "refuses to provide any discovery on key issues" and "assert[s] blanket attorney-client privilege over all communications regarding these events." Mot. ¶ 20. Orrick had no role in seeking the restraining order against Plaintiff (Perry Decl. ¶ 4), and it is simply untrue that Orrick has "refuse[d]" to provide "any" key discovery in this case. Apple has produced 2,102 pages of documents in this case, including 553 pages in response to Plaintiff's October 30, 2024 requests for production. *Id.* ¶ 5. Notably, Plaintiff has not properly raised this purported discovery dispute before Judge Westmore, instead attempting to transmute what is at most a discovery dispute into a basis to disqualify Apple's counsel altogether. *See id.* ¶ 6.[4] In fact, it is **Plaintiff** who has refused to provide discovery: to date, Plaintiff has not served any objections or responses to Apple's December 3, 2024 requests for production and interrogatories, nor has Plaintiff provided any responsive documents or information.

---

[2] *See, e.g.*, Mot. ¶ 18 ("Newly discovered evidence **strongly suggests** that the attorneys from Orrick have been directly involved in online harassment…" (emphasis added)); *id.* ¶20 ("The sequence of events **strongly suggests** that Orrick … was actively involved in orchestrating harassment and intimidation against Plaintiff as part of Apple's broader retaliation strategy …" (emphasis added)); *id.* ¶21 ("These facts create a **strong inference** that Orrick's attorneys … have [] been directly involved in Apple's retaliatory campaign against Plaintiff" (emphasis added)).

[3] On March 1, 2022, Judge Lisa N. Toole issued a restraining order against Plaintiff in a matter to which Apple was neither a party nor participant. *See Scarlett v. Gjovik*, King County District Court, State of Washington, Case No. 22CIV01704KCX.

[4] On February 11, 2025—11 days after Plaintiff filed this Motion—Plaintiff filed four "discovery dispute" letters to Judge Westmore. Dkt. Nos. 162-165. The first letter (Dkt. No. 162) requests a telephonic conference with Judge Westmore to resolve purported disputes Plaintiff raises in her other three letters (Dkt. Nos. 163-165). None of these letters puts any discovery dispute properly before the Court, however. Though Section 13(a) of Judge Westmore's Standing Order permits a request for a telephonic conference with Judge Westmore "[i]n the rare event that the parties are unable to meet and confer [in person or by video conference regarding the purported discovery disputes]," Plaintiff did not ask Orrick to meet and confer in person or by video conference prior to filing her "discovery dispute" letters. *See* Perry Decl. ¶ 6. Thus, there is no basis for Plaintiff's request for a telephonic conference with Judge Westmore to resolve the purported disputes she raises, and the relief Plaintiff requests in her letters should be denied. *See* Standing Order, Section 13(a) ("**The failure to meaningfully comply with the meet and confer requirement will result in the termination of the discovery dispute.**" [emphasis in original]). In any event, Plaintiff's letters do not demonstrate any discovery violation by Apple or Orrick and provide no basis for disqualification of Orrick.

1  *Id.* ¶ 7.

2  **Second**, Plaintiff claims that a separate lawsuit in which Orrick defended Apple (*Brown v. Apple Inc.*, Santa Clara County Superior Court, Case No. 18CV330796) "contradicts Apple's claim that there was no history of complaints against [her former] supervisor and demonstrates that Apple HR's statements to Plaintiff were false" (Mot. ¶ 27).[5] Even assuming for the sake of argument that someone at Apple told Plaintiff that there was no history of complaints against one of her former supervisors, that does not make Orrick's attorneys witnesses. Apple's counsel at Orrick gaining knowledge about Brown's allegations through its representation of Apple does not make anyone at the firm "a witness" to any purported complaint made by an entirely separate employee (Brown) about one of Plaintiff's former supervisors.

**2. Apple Can Consent to Orrick's Continued Representation Even If an Orrick Attorney Were to Be a Witness.**

Apple has the right to consent to Orrick's continued representation of it, even if an Orrick attorney is "likely to be a witness" in this case (and, as discussed above, no Orrick attorney is). Cal. R. Prof. Conduct 3.7(a). Plaintiff's attempt to disqualify Apple's chosen counsel as a litigation tactic should be rejected. *See Solorio v. CareCo, LLC*, No. 8:24-CV-00663-JVS-JDE, 2024 WL 3915234, at *9 (C.D. Cal. July 2, 2024) (denying motion to disqualify where advocate obtained consent from client to testify if necessary and plaintiffs failed to make "convincing demonstration of detriment to [them] or injury to the integrity of the judicial process," especially given "the possibility [plaintiffs were] using the motion to disqualify for purely tactical reasons").

**B. Orrick Did Not Engage in Any Misconduct.**

Plaintiff also appears to contend that Orrick should be disqualified because it purportedly engaged in misconduct—but this allegation, too, has no basis in fact. **First**, Plaintiff argues that Orrick engaged in misconduct during its representation of Apple in connection with the separate OSHA whistleblower retaliation complaint Plaintiff filed against Apple (*Gjovik v. Apple Inc.*, OSHA Case No. 9-3290-22-051). Specifically, she claims that Orrick "falsely reported Plaintiff's

---

[5] Nowhere in the operative complaint does Plaintiff allege that Apple's HR department made "false statements" to Plaintiff "regarding the history of complaints against Plaintiff's supervisor" (Mot. ¶ 31). *See* 5AC *generally*. Nor does she elaborate on this new allegation in her Motion. Because this allegation is not at issue in this lawsuit, there is no need for testimony from **anyone** about it.

1  OSHA complaint to OSHA itself, accusing her of leaking confidential information." Mot. ¶ 35.
2  Plaintiff appears to be referring to an email that Orrick sent to OSHA in November 2022 informing
3  OSHA that Plaintiff publicly posted a version of her OSHA complaint, which contained Apple
4  confidential information. *See* Perry Decl. ¶ 8. There is nothing improper about informing OSHA of
5  Plaintiff's disclosure of additional confidential information when she publicly posted her OSHA
6  complaint that contained multiple references to Apple confidential information, as detailed in the
7  email to OSHA. *See id.*, Ex. A. This was additional evidence of Plaintiff violating her
8  confidentiality obligations – the very reason Apple terminated Plaintiff's employment – and thus
9  additional cause for dismissal of her retaliation claims pending before OSHA. *See id.*

10  Plaintiff also claims that Orrick "strategically sent only one witness [Cher Scarlett] to the
11  U.S. Department of Labor to defend the employer." Mot. ¶ 35. Again, Plaintiff offers no evidence
12  for this statement and it is false since Orrick has never communicated with Cher Scarlett. *See* Perry
13  Decl. ¶ 9. Plaintiff's repeated insistence that Orrick, in its representation of Apple, somehow
14  conspired or coordinated with a former Apple employee who separately filed litigation against
15  Plaintiff simply does not make it so.

16  **Second**, Plaintiff claims that Apple's "discovery practices" in this matter have been
17  "problematic." Mot. ¶¶ 56-57. But this argument, too, is frivolous. Plaintiff has not properly raised
18  any discovery dispute before Judge Westmore, much less met and conferred with Orrick via video
19  conference regarding any dispute, as is required before any party raises a dispute with Judge
20  Westmore. Perry Decl. ¶ 6. Nonetheless, Plaintiff accuses Orrick of (1) failing to disclose evidence;
21  (2) failing to identify an allegedly key witness; (3) asserting attorney-client privilege over non-
22  privileged evidence; and (4) concealing its purported involvement with the Scarlett declarations.
23  None of these accusations has any merit.

24  **Alleged Failure to Disclose Evidence:** Plaintiff argues that Apple failed to disclose
25  evidence in violation of Cal. R. Prof. Conduct 3.4, pointing to a purported "email from [Scarlett]"
26  that she contends contains "private communications and compromising photographs of Plaintiff
27  that were used as a basis for Plaintiff's wrongful termination." *See* Mot. ¶¶ 50-51; *see also id.* ¶ 36
28  (claiming that "[Apple] and its counsel concealed that [Scarlett] personally transmitted

unauthorized nude photos of Plaintiff to Apple"). Plaintiff appears to be referring to Dkt. No. 155-2 at 30-45 ("the September 15 email")—part of a request for judicial notice associated with her Motion—which is one of several documents Plaintiff claims she received from OSHA "after a FOIA request to the U.S. Department of Labor in December 2023." Mot. ¶ 51.

As an initial matter, Plaintiff grossly mischaracterizes the document at issue: an email that was sent on September 15, 2021, **six days after Plaintiff's employment was terminated**. Dkt. No. 155-2 at 31. The email—which the Court can review for itself—is from a member of Apple's Business Conduct team stating that "[t]he Business Conduct Helpline received concern for your review" and embedding a communication from Scarlett stating, "[Plaintiff] informed me that she had sent Zoe Schiffer from the Verge details and images from [Gobbler]…." *Id.* The communication from Scarlett includes screenshots of a text message exchange between Plaintiff and Scarlett, wherein Plaintiff admitted to Scarlett, "I'm helping Zoe [Schiffer from the Verge] with the privacy article. I gave her [Gobbler] details.… I'm even letting her include a few pics from [Gobbler].…" *Id.* at 37. This email—sent six days after Plaintiff's termination—could not have been a "basis" for Plaintiff's termination, as Plaintiff claims. Rather, it is Plaintiff's ***admission*** in her accompanying texts to Scarlett that she shared photographs created by Gobbler with a reporter that provides further justification for Plaintiff's termination. *See id.*; *see also* Dkt. No. 155-2 at 15.

Importantly, the unredacted[6] version of the September 15 email *does not contain any nude photographs of Plaintiff*. Perry Decl. ¶ 10. In addition, it was **Plaintiff herself who chose to send the photographs to Scarlett**, that Scarlett in turn provided to Apple when reporting her concern that Plaintiff was leaking confidential Apple product information to the press. *See* Dkt. No. 155-2 at 31, 37, 44-45. Plaintiff's blatant mischaracterization of the document as containing "nude photos" of

---

[6] The September 15 email, as provided by Plaintiff at Dkt. No. 155-2 at 31-45, contains two layers of redactions. *First*, on September 30, 2022, Apple provided a partially-redacted version of the email to OSHA in connection with *Gjovik v. Apple Inc.*, OSHA Case No. 9-3290-22-051, in response to a request from OSHA for "[d]ocumentation to support Ms. Gjovik intentionally disclosed confidential information about Apple products on Twitter and to the press" (*see* Dkt. No. 155-2 at 25). Perry Decl. ¶ 11. The copy of the email that Apple provided to OSHA was partially redacted to protect Apple's confidential information. *Id*. *Second*, OSHA provided the partially redacted version of the email to Plaintiff with further redactions made by OSHA, as is evident from Dkt. No. 155-2 at 31-45 ("This page was received by OSHA with redactions. Redactions made by OSHA for FOIA contain Exemptions per the FOIA.").

her, and false suggestion that Apple provided such "nude photos" of her to OSHA (*see* Mot. ¶ 36) does not support her claim that Apple's counsel failed to disclose evidence that would support a disqualification request.

To the extent Plaintiff attempts to argue that Orrick engaged in misconduct by providing the email to OSHA as part of an administrative proceeding but not to Plaintiff in discovery in this case, that is plainly a discovery dispute—not a basis to disqualify—that Plaintiff has not raised before Judge Westmore through a proper discovery motion. Perry Decl. ¶ 6. And to the extent she claims Orrick somehow engaged in misconduct because it did not produce an unredacted version of the September 15 email in this case, that is because it contains confidential information and, despite Orrick's requests, Plaintiff has refused to agree to any protective order. Perry Decl. ¶¶ 12-15.[7]

**Alleged Failure to Identify Key Witness:** Plaintiff argues that Orrick failed to disclose Scarlett as a "key witness" in this case. Mot. ¶ 35; *id.* ¶52. Scarlett is not a "key witness"; as discussed above, the September 15 email was sent six days ***after*** Plaintiff's termination and thus was not—and could not have been—a "basis" for Plaintiff's termination. In any event, if Plaintiff believes that Orrick failed to disclose a key witness, that is, if anything, a discovery dispute that she may raise pursuant to Judge Westmore's Standing Order, not a basis for disqualification.

**Alleged Improper Assertion of Attorney-Client Privilege:** Plaintiff accuses Orrick of "falsely assert[ing] attorney-client privilege over non-privileged evidence." Mot. ¶ 35. But Plaintiff fails to identify a single instance where Orrick made an improper privilege claim, let alone demonstrate any misconduct that would justify disqualification. Moreover, if Plaintiff genuinely believes a discovery violation had occurred, again an appropriate next step would have been to meet and confer with Orrick via video conference and then, absent a resolution, raise the issue with Judge Westmore, not to seek disqualification as a litigation tactic. *See* Perry Decl. ¶ 6. Plaintiff's

---

[7] Over a year ago, Apple provided Plaintiff "a proposed protective order based on the form Northern District order" and invited Plaintiff to provide "any comments or proposed revisions." Perry Decl. ¶13. Instead of engaging in a good faith negotiation, Plaintiff filed an NLRB charge against Apple alleging that Apple violated Section 8(a)(1) by proposing that Plaintiff enter into a protective order modeled on this District's form. *Id.* To date, Plaintiff has refused to agree to any protective order, nor has she provided any concrete alternative to Apple's proposals. *Id.* ¶¶14-15.

failure to follow the Court's rules and procedures further underscores that her Motion is not a legitimate attempt to address perceived misconduct but rather a baseless attempt to remove Orrick for strategic advantage.

**Alleged Concealment Related to Scarlett Declarations:** Plaintiff contends, without evidence, that Orrick "concealed" that Scarlett's publicly filed declarations—filed in April 2024 (Dkt. Nos. 62 and 66) and August 2024 (Dkt. No. 99)—"are part of broader harassment and intimidation effort coordinated with Apple and its legal team" in violation of Cal. Cal. R. Prof. Conduct 3.3(a)(1). Mot. ¶¶ 36, 39. Plaintiff's accusation that Orrick and Scarlett "coordinated" on Scarlett's declarations is baseless and yet another conspiracy theory. No attorney at Orrick has ever communicated with Scarlett, let alone coordinated the declarations she chose to file. Perry Decl. ¶ 9.

### C. Plaintiff's Motion Is Another Example of Plaintiff's Bad-Faith Litigation Tactics.

Plaintiff's Motion—filed nine days after she submitted an untimely and deficient opposition to Apple's Motion to Dismiss (*see* Dkt. No. 150) and on the same day that she filed a flurry of additional, untimely opposition briefs (*see* Dkt. Nos. 154, 154-1, 154-2) and a motion to amend (*see* Dkt. No. 155)—is clearly a litigation tactic. As discussed above, Plaintiff's Motion relies on unfounded assertions and provides no legal basis for disqualification. Moreover, much of Plaintiff's Motion appears to have been generated by AI, resulting in citations to non-existent cases and blatant mischaracterizations of actual case law (which, if true, would create an apparent pattern of conduct [*see* Dkt. No. 152 at 17 n.8]). For example, to support her argument that Orrick should be disqualified due to an alleged lack of competence, Plaintiff (1) incorrectly cites to *Smith v. Superior Court* as appearing at 68 Cal. App. 4th 706, 714 (1998) when it does not; (2) cites to two cases that have nothing to do with the disqualification of counsel and do not even include the language quoted in Plaintiff's parentheticals (*Kohlman v. Village of Midlothian*, 833 F. Supp. 2d 922 (N.D. Ill. 2011) and *Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003)); and (3) cites to one case where the motion to disqualify was ***denied***, in part because "a motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice" and thus raises "a specter

1  of abuse." (*In re Cnty. of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000)). Plaintiff's Motion to Disqualify is exactly the kind of bad-faith tactic courts regularly warn against. The timing, baseless arguments, and reliance on AI-generated misinformation make clear that this Motion is not about ensuring fairness but instead about harassing and imposing further expense and distraction on Apple.

## IV.   CONCLUSION

Plaintiff's Motion to Disqualify is a baseless litigation tactic, aimed at attacking Apple's choice of counsel rather than addressing any real ethical concern. Plaintiff has not shown—because she cannot—that anyone at Orrick is likely to be a witness. Nor has she identified a shred of misconduct, let alone anything warranting disqualification. The Court should reject Plaintiff's blatant gamesmanship, deny her Motion and admonish Plaintiff to stop filing frivolous motions which waste the time of the Court and the parties.

Dated: February 14, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____*/s/ Melinda S. Riechert*_____
MELINDA S. RIECHERT
Attorneys for Defendant, Apple Inc.