# Exhibit A

Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

ASHLEY GJOVIK,                    )
                                  )
            Plaintiff,            )
                                  )
   VS.                            )        NO. 23-CV-04597-EMC
                                  )
APPLE, INC.,                      )
                                  )
            Defendant.            )
_____ )

                        San Francisco, California
                        Tuesday, July 16, 2024

       TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS

APPEARANCES:

For Plaintiff:
                        ASHLEY M. GJOVIK, PRO SE
                        2108 N Street, Suite 4553
                        Sacramento, CA 95816

For Defendant:
                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                        405 Howard Street, 7th Floor
                        San Francisco, CA 94105
                   BY:  KATHRYN G. MANTOAN, ATTORNEY AT LAW

                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                        1000 Marsh Road
                        Menlo Park, CA 94025
                   BY:  MELINDA S. RIECHERT, ATTORNEY AT LAW


REPORTED REMOTELY BY:  Kendra A. Steppler, RPR, CRR
                        Official United States Reporter

1    talking about this case before me, that won't get recorded.

2    Now, if you want to have another conversation about NLRB

3    evidence gathering, that's between you all and the NLRB, not --

4    I'm not intervening there.

5            MS. GJOVIK:  Understood, Your Honor.  I am concerned

6    though -- I mean, this is four years running -- about

7    misrepresentations of communications when they're not written.

8    This has been an ongoing issue with the defendant.  And I even

9    asked if I can bring a witness just to sit with me, so if

10   someone had to testify to what happened, there could be someone

11   that's not just me.  And they said "no," expressly.  If

12   recordings are completely forbidden, can I get approval to have

13   a witness with me?

14           THE COURT:  I'm going to allow the magistrate judge to

15   determine what is the best process for you all to

16   meet-and-confer, whether you meet and confer in a physical

17   place, maybe with a magistrate judge, or, you know, you can

18   talk to the magistrate judge about the disputes you've had and

19   whether it makes any sense or not, at this point, until further

20   developments.

21       So let me ask about ADR.  Defendant indicates that there's

22   been a meet-and-confer, but -- and I see that plaintiff's

23   preference -- what are your thoughts about mediation or some

24   form of ADR?

25           MS. RIECHERT:  We're willing to consider it at some

**Exhibit B**

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| | DO NOT WRITE IN THIS SPACE |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Apple Inc | b. Tel. No.<br>(408) 996-1010 |
|---|---|
| | c. Cell No. |
| | f. Fax. No. |

| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way<br><br>CA Cupertino 95014 | e. Employer Representative<br><br>Tim Cook<br>CEO | g. e-mail<br><br>tcook@apple.com |
|---|---|---|
| | | h. Number of workers employed<br>100 |

| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Technology | j. Identify principal product or service<br>Computers |
|---|---|

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 1,4                                          of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Ashley Marie Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>███████ | 4b. Tel. No.<br>███████ |
|---|---|
| | 4c. Cell No.<br>███████ |
| | 4d. Fax No. |
| | 4e. e-mail<br>ashleymgjovik@protonmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief. | Tel. No.<br>███████ |
|---|---|
| *(signature)*  _____    Ashley Marie Gjovik | Office, if any, Cell No.<br>███████ |
| *(signature of representative or person making charge)*     *(Print/type name and title or office, if any)* | Fax No. |
| Address ███████          Date 12/29/2023 05:00:38 PM | e-mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
| --- |
| Claiming Employee"s performance reviews are secret |
| Claiming Employee"s pay/benefits are a secret |
| Claiming Employer"s handbook policies are secret |
| Claiming Employee discipline records are secret |
| Claiming Employees complaint to Employer is secret |
| Claiming Employer spying on Employees is secret |
| Claiming Employer 24/7 video of Employee is secret |
| Claiming Employee"s safety complaints are secret |
| Claims Employees retaliation complaints are secret |

**Ashley M. Gjovik, JD**
*Complainant*

Boston, MA

# NATIONAL LABOR RELATIONS BOARD

**Inquiry No. 1-3413659041**

**Violations of NLRA §§ 8(A)(1) & 8(A)(4)**

**ASHLEY GJOVIK**, *an individual*,

      Complainant,

**Filed: 12/29/2023**

**APPLE INC**, *a corporation*,

      Respondent.

**Related Complaints:**
***32-CA-282142; 32-CA-283161; 32-CA-288816***
Assigned to Region 21; Under Review with
Division of Advice/GC since May 2022

**Related Cases:**
***NLRB v Apple Inc (32-CA-284441; 32-CA-284428)***
Assigned to Region 21; Decision of Merit in
January 2023

## TABLE OF CONTENTS

I.     SUMMARY.................................................................................................2

II.    BACKGROUND ON CLAIM.................................................................3

NLRB COVER LETTER                          JANUARY 1 2024

## I.    SUMMARY

1.      Ashley Gjovik ("Charging Party") files this charge against Apple Inc ("Employer") for violations of the Act which occurred in the last six months. Gjovik was an employee of Apple Inc from February 23 2015 through her termination September 9 2021 and final day September 10 2021, making her an Employee within the meaning of the Act. The violations of the Act that have occurred in this charge occurred from multiple locations in the United States, initiated by agents of the Employer (ie, Employer's law firm retained to defend Employer in Gjovik's non-NLRB labor and whistleblower cases) in at least three cities in California (Menlo Park, San Francisco, and Santa Monica) and in Washington DC. The injury occurred to Gjovik in Boston, Massachusetts where Gjovik lives.

2.      While Gjovik was no longer an employee on the date she filed this specific charge, she has open NLRB charges and cases against the employer and this is a continuation of Employer's retaliation against her for her protected activity including her unfair labor practice charges filed August 26 2021, September 16 2021, and January 10 2022. In addition, this charge provides evidence for her policy charges (now cases) filed October 12 2021. Further, any person may file a charge alleging that any person has engaged in or is engaging in any unfair labor practice affecting commerce.[1] [2]

3.      At all times, Employer has been a California corporation with its headquarters located in Cupertino, California, and a large office and multiple retail stores in Boston and Cambridge, Massachusetts. The Employer has numerous facilities located throughout the United States including corporate offices, retail stores, data centers, distribution centers, repair centers, manufacturing plants, call centers, research & development offices, and even health care facilities. As of November 2 2023, the Employer had approximately 161,000 full-time employees.[3]

4.      The Employer is engaged in the research, development, production, manufacture, hosting, publishing, and sale of a number of products and services, including: consumer electronics, accessories, audio products, semiconductors, applications and other software, books

---

[1] 29 C.F.R. § 102.9; see Gen. Furniture Mfg. Co., 26 N.L.R.B. 74, 76 n.3 (1940); *Indiana & Michigan Electric*, 318 U.S. at 17–18; *Hearings on S. 1958 Before the S. Comm. on Educ. and Labor*, 74th Cong. 430–32 (1935).
[2] *FDRLST Media v. National Labor Relations Board,* No. 20-3492, United States Court of Appeals for the 3rd Circuit (05/20/2022); On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board (NLRB Case No. 02-CA-243109).
[3] Annual Reports on Form 10-K, 2023, https://investor.apple.com/investor-relations/default.aspx

NLRB COVER LETTER                                                    JANUARY 1 2024

and magazines, television and movie production, music and podcasts, advertising, events such as concerts, internet service provision, low-orbit satellites, medical services, credit cards and financial loans, biogas energy creation and sales, health and fitness services, customer support services, and other various activities. Employer enters into contracts with airlines, does business internationally, and provides goods and services to the federal government and in the District of Columbia. Employer is an employer within the meaning of Section 2 of the Act.[4]

5.    During the past twelve months, Employer derived gross revenues in excess of $383,000,000,000. During the same period, the Employer's business sold goods and materials valued in excess of $220,000,000,000 from points outside of the United States. As such, Employer, at all material times, was an employer engaged in commerce within the meaning of Section 2 the Act.[5]

6.    As Chief Executive Officer of the Employer, Tim Cook is an agent of the Employer withing the meaning of Section 2 of the Act.

## II.    BACKGROUND ON CLAIM

7.    Due to excessive delays and thus uncertainty with her government labor charges, Gjovik resorted to filing a civil lawsuit against the Employer on September 7 2023, in order to ensure her statute of limitations did not expire for civil claims (she was terminated September 9 2021). Gjovik filed her first NLRB charge against the Employer on August 26 2021.

8.    The NLRA is not part of Gjovik's civil lawsuit, nor does the NLRA preempt Gjovik's civil lawsuit. However, the civil lawsuit contains multiple state labor claims (originally filed with California Department of Labor, but then removed for the civil lawsuit), in addition to whistleblower and other claims. The state labor statutes include several claims for retaliation for speaking about work conditions.

9.    Apple's attorneys assigned to the civil lawsuit have engaged in bad faith, coercive, intimidating, threatening, and retaliatory conduct towards Gjovik in at least December 2023. This conduct occurred primarily in emails to Gjovik that are not part of the court record, and then also in one of the firm's legal filings.

10.    None of the matters reported here are queued to be decided by the Judge in civil case. The legal filing will have a decision made based on Gjovik's prior Complaint related to the

---

[4] Id.
[5] Article I, Section 8, of the U.S. Constitution

state labor code only (Apple's arguments don't alter the merit of the claims), and the emails occurred during meet/confer communications that are not privileged. Thus, the claims in this charge standalone from the concurrent lawsuit. Gjovik may report Apple to the Judge later for some of their conduct under Rule 11 Sanctions, however the legal analysis for Sanctions is completely different than the NLRA. The NLRB can act here without disturbing the civil lawsuit, procedurally or substantively.

11.    Gjovik bases this charge on the foundation of NLRA precedent finding violations in the Act in civil lawsuits and litigation activities,[6] as well as the employer's liability for extended retaliation post-termination (a continuing violation).

---

[6] See, *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), etc.

NLRB COVER LETTER                                           JANUARY 1 2024

**Ashley M. Gjovik**
Pro Se Complainant
Location: Boston, MA
ashleymgjovik@protonmail.com

# THE UNITED STATES OF AMERICA

# NATIONAL LABOR RELATIONS BOARD

*ASHLEY GJOVIK*

              Charging Party,

&

*APPLE INC.*

              Charged Party.

Charge No. 01-CA-332897
Charge Filed: 12/29/2023

**POSITION STATEMENT**

*Statement Filed: January 21 2024*

**CHARGES**
1.  NLRA Section 8(a)(1)
2.  NLRA Section 8(a)(4)

**RELATED CASES:**
- U.S. NLRB, Case No. 32-CA-284428 & 32-CA-284441 (Decision of Merit on January 30 2023)
- U.S. NLRB Charges: 32-CA-282142, 32-CA-283161, 32-CA-288816 (Pending)
- *Ashley Gjovik v Apple Inc*, U.S. Department of Labor OALJ, CERCA, 2024-CER-00001 (Docketed)
- U.S. Department of Labor DWPP, OSH Act, Gjovik/Apple/9-3290-22-051 (Appealed)
- *Ashley Gjovik v Apple Inc*, Case No. 3:23-CV-04597-EMC, US District Court, District of Northern California, SF Division (Underway)

# I.    Table of Contents

I.    TABLE OF CONTENTS ..................................................................................................2

II.    SUMMARY ............................................................................................................3

    A.    PERSONS INVOLVED IN CHARGE ..........................................................................3

III.    PRIOR PCA & ULPS ............................................................................................4

IV.    PROTECTED ACTIVITY ......................................................................................8

V.    VICARIOUS LIABLITY & ETHICS RULES ........................................................10

VI.    NEW UNFAIR LABOR PRACTICES ....................................................................11

    B.    UNLAWFUL WORK RULES: CONFIDENTIAL INFORMATION ................................12

    C.    UNLAWFUL WORK RULES: WORK CONDITIONS ................................................15

    D.    COERCION: FAKE DISCOVERY (ABUSE OF PROCESS)........................................18

    E.    COERCION: INVASION OF PRIVACY ..................................................................20

    F.    COERCION: ATTORNEY MISCONDUCT ..............................................................21

    G.    DISCRIMINATION: HARASSMENT ABOUT PRIOR TERMINATION ........................23

    H.    COERCION & UNLAWFUL WORK RULES: FACE GOBBLER ................................24

    I.    INTERFERENCE: MISCONDUCT POLICY & EXISTING CASE ..............................25

VII.    CONCLUSION ......................................................................................................26

## II.    SUMMARY

1.      Ashley Gjovik ("Charging Party") files this position statement to the NLRB investigator(s) for Charge No. 01-CA-33297 again Apple Inc ("Charged Party").

2.      Related to this charge are NLRB Charge No. 32-CA282142 filed by Charging Party on August 26 2021; Charge No. 23-CA-283161 filed by Charging Party on September 16 2021; and Charge No. 32-CA-288816 filed by Charging Party on January 10 2022. Also related to this charge is the case consisting of 32-CA-284428 and 32-CA-284441 which were filed by Charing Party on October 12 2021 with a Decision of Merit on January 30 2023.

### A.  Persons Involved in Charge

3.      At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors and/or agents of Charged Party within the meaning of Section 2(11) of the Act[1] and/or agents of Charged Party within the meaning of Section 2(13) of the Act.[2]

| | | |
|---|---|---|
| Tim Cook (Apple) | — | Apple CEO & Board Member |
| Kate Adams (Apple) | — | Apple General Counsel |
| Jessica R. Perry (on behalf of Apple) | — | Orrick, Herrington & Sutcliffe |
| Melinda S. Riechert (on behalf of Apple) | — | Orrick, Herrington & Sutcliffe |
| Kathryn G. Mantoan (on behalf of Apple) | — | Orrick, Herrington & Sutcliffe |
| Kate E. Juvinall (on behalf of Apple) | — | Orrick, Herrington & Sutcliffe |
| Rayn D. Booms (on behalf of Apple) | — | Orrick, Herrington & Sutcliffe |

"*A lawyer acts on behalf of the client, representing the client, with consequences that bind the client. Lawyers act as a client's agents in transactional settings as well as in litigation.*"[3]

4.      Gjovik is an ex-employee, but the Board explains that former employees are entitled to the same protections under the Act based on the statutory language of Section 2(3), which states that "the term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer." The Board reiterated that Section 7 rights are not limited to discussions with

---

[1]  §2 (11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

[2]  §2 (13) In determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

[3] Deborah A. DeMott, *The Lawyer as Agent,* Fordham Law Review, Volume 67, pg301 (1998),

coworkers, as they do not depend on the existence of an employment relationship between the employee and the employer. In addition, former employees can play an important role in providing evidence to the NLRB and otherwise sharing information about the working conditions they experienced, in a way that constitutes both mutual aid and protection.[4]

### III.   PRIOR PCA & ULPs

5.        Ashley Gjovik ("Charging Party") was an employee of Apple Inc ("Charged Party") from February 23 2015 through her termination September 9 2021 and final day September 10 2021, making her an Employee within the meaning of the Act.

6.        Charging Party engaged in concerted activities with other employees for the purposes of mutual aid and protection in the following conduct beginning in September 2020 with the identification of a chemical emergency caused by Apple's manufacturing operations and coordination of a response with and for her coworkers; beginning in March 2021 with inquiries and complaints about the Employer's office on the TRW Microwave Superfund site and coordination of a response with and for her coworkers; and beginning in June 2021 with Charging Party's organizing of employees and public statements about and on behalf of her coworkers. In June-July 2021, Charging Party had become a lead organizer for a number of employee organizing efforts at Apple, including creating and organizing petitions (which Gjovik sent to CEO Tim Cook on behalf of thousands of employees); engagement in press interviews about work conditions; creation and design of employee pay surveys; creation and support of forums for discussion of work conditions including a Slack discussion group focused on organizing worker's around improving Employer's response to employee complaints; and creating and participating in worker coalitions.

7.        Charging Party engaged in concerted activities with other employees for the purposes of mutual aid and protection in the following conduct beginning in August 2021 with Charging Party's first NLRB charge and participation in Board proceedings.

8.        "Concerted activity occurs when an individual employee attempts to organize other employees, regardless of whether those attempts succeed. Concerted activity also occurs when an individual speaks to management on behalf of a group of employees. In another

---

[4] *Cedars-Sinai Medical Center*, 368 NLRB No. 83, slip op. at 8 fn. 7 (2019); *Waco, Inc.*, 273 NLRB 746, 747 fn. 8 (1984); *Little Rock Crate & Basket Co.*, 227 NLRB 1406 (1977); *Briggs Manufacturing Co.*, 75 NLRB 569, 570 (1947).

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

formulation, the board has explained that a single employee's actions are concerted activity if that employee acts "with or on the authority of other employees, and not solely . . . on behalf of the employee himself."[5]  This is because actions taken by an individual employee can be essential precursors to, or foundations of, employees' collective activity.

9.      Charged Party violated the Act repeatedly starting around February 2021 through current day in the following conduct which constitutes a multitude of threats[6] (of discipline, of termination,[7] and of unspecified reprisal[8]), coercive statements,[9] surveillance,[10] interrogations,[11] and other discipline. The following list is not exclusive and is instead a brief summary for the sake of reminder.

10.      From March 2021 through August 2021, Employer repeatedly told Charging

---

[5] *Meyers Indus.*, 281 N.L.R.B. 882, 885 (1986).

[6] To qualify as a threat, an employer's statement to an employee must warn of adverse consequences in a way that "would tend to coerce a reasonable employee" not to exercise her labor rights. *Garry Mfg.* Co., 630 F.2d at 938.

[7] The Board has long held that statements by an employer like that the Company will be run '*anyway the employer wants and if employees don't like, they should find another job*', implicitly threaten discharge because they convey the impression that the employer considers complaining about working conditions and engaging in union activity incompatible with continued employment. *Equipment Trucking Co., Inc., and Smith Trucking Company,* NLRB, Case 14–CA–25052 formerly 33–CA–12592, Decision & Order, (September 28, 2001); *Padre Dodge*, 205 NLRB 252 (1973); *Stoody Co.,* 312 NLRB 1175, 1181 (1993). Employer's statement that, if employee could not support the respondent's policies, there were other jobs out there and perhaps "this wasn't the place for him" was an implied threat in violation of 8(a)(1)). *Medco Health Solutions Of Las Vegas, Inc*., 357 NLRB No. 25 (2011).

[8] An example of a threat of unspecified reprisal is when supervisor unlawfully threatened employee with reprisal by telling an employee that if he did not stop protected activities he would "talk" to him again; implies that the talk will not be mere conversation but will concern the employment of the offending employee. *Yale New Haven Hospital*, 309 NLRB 363, 368 (1992). In addition, a supervisor's statement that "this isn't a threat, but I want to kick your ass", held unlawful as employees could reasonably fear that the owner was clearly disposed to unfavorably exercising his authority as an employer against any employee involved in the protected activity; fact that the owner did not elaborate on his metaphor by specifically mentioning "forms of retaliation" does not significantly lessen the ominous nature of the statement coming from a company. *Cox Fire Protection*, 308 NLRB 793 (1992).

[9] The test for coercion is objective: "the employer's intent is irrelevant and the proper inquiry is the impression of a reasonable employee." *Allegheny Ludlum Corp. v. NLRB*, 301 F.3d 167, 176 (3d Cir. 2002). Proof of actual coercion is unnecessary; the tendency of an employer's statement to coerce a reasonable employee is sufficient to find an unfair labor practice. *Garry Mfg. Co*., 630 F. at 938.

[10] A statement reasonably tends to interfere with the free exercise of the employee's Section 7 rights to engage in protected union and concerted activities when it creates the impression that such activities were under surveillance. *Challenge Manufacturing Company, LLC*, Case 07-CA-199352, 368 NLRB No. 35 (August 1 2019); affm Challenge Manufacturing Company, Llc v National Labor Relations Board, Case Nos. 19-2140/2160, United States Court Of Appeals For The Sixth Circuit (June 9 2020). The test is whether the employee would reasonably assume from the statement that their union or protected activities had been placed under surveillance. *Register Guard*, 344 NLRB 1142, 1144 (2005); *Flexsteel Industries*, 311 NLRB 257, 257 (1993).   In order to find surveillance, the Board does not need to prove an employer based no adverse employment action on the information it obtained. *National Captioning Institute, Inc*., Cases 16–CA–182528, 16–CA–183953, 16–CA–187150, 16–CA–188322, 16–CA–188346, 368 NLRB No. 105, (October 29, 2019).

[11] It may be a violation of the Act for an employer to threaten employees with discharge for their social media activity; interrogating employees about their social media activity; and/or informing employees that they were being discharged for their social media activity. *Triple Play v. National Labor Relations Board*, Case 14-3284, United States Court Of Appeals For The Second Circuit (10/21/2015).

5

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

Party that her concerns about workplace safety were to be kept 'private', and she was not to talk to her coworkers about her concerns or about any suspected safety issues. During this period, Employer also told Charging Party not to tell her coworkers about the harassment and retaliation she was facing from Employer, which was caused due to her reporting safety issues to her Employer and reporting her Employer to the U.S. Environmental Protection Agency. In July 2021, Employer interrogated Charging Party on several occasions about these activities and repeatedly asked her to keep workplace concerns 'private' and to not speak with her coworkers about work conditions.

11.     On August 4 2021, the Employer 'removed' Charging Party from 'the workplace and all workplace interactions' in a coercive effort to stop Charging Party from organizing with employees and prevent her from gathering evidence of unfair labor practices, as well as to retaliate against her for protected concerted activity.  On August 5 2021, Employer sent Charging Party a threatening and coercive email about her suspension and cited Charging Party's Twitter posts. This email created the impression of surveillance as well as confirmed actual surveillance. The Employer once again requested Charing Party keep her concerns and discussion of work conditions 'private.'

12.     On September 3 and 7 2021, Employer contacted Gjovik claiming it wanted to speak with her about the supposed investigation into Gjovik's concerns, however, per Apple's post-hoc rationalization, Apple would have already been planning on firing Gjovik, and thus the investigator was using false pretenses to attempt to lure Gjovik into a WebEx meeting where he would likely interrogate, threaten, and terminate her.

13.     On September 9 2021, the Employer sent a 'Workplace Violence' interrogator to contact Charging Party. The interrogator demanded Charging Party get on the phone with him 'within the hour' but refused to tell her why or to assure her the call was not to tamper with her testimony for the NLRB charge which was to occur the next day. Charging Party complained of federal witness intimidation to Employer and told the interrogator she was informing the NLRB.[12] On September 9 2021, the Employer suddenly and inexplicitly terminated Gjovik's

---

[12] Under the *Atlantic Steel* test, there are four factors to be considered in determining whether an employee's conduct is protected or loses the protection of the Act: (1) the place of the discussion, (2) subject matter of the discussion, (3) the nature of the employee's outburst, and (4) whether the outburst was, in any way, provoked by the employer's unfair labor practice. *Atlantic Steel Co.*, 245 NLRB 814 (1979). Generally, employees are permitted "some leeway for impulsive behavior." *Tampa Tribune*, 351 NLRB 1324, 1324-25 (2007), enf. denied *Media General Operations, Inc. v. N.L.R.B.*, 560 F.3d 181 (4th Cir. 2009); *NLRB v. Local Union. No. 1229, IBEW (Jefferson Standard)*, 346 US 464, 471-472 (1953); *Mountain Shadows Golf Resort*, 330 NLRB

employment.[13]

14.    On September 15 2021, Employer's lawyers emailed Charging Party a letter implying she was terminated due to several Twitter posts and the video content in a news article. Employer pointed to the URLs and asked Charging Party to remove the content, which was black and white photos of Charging Party secretly taken from her iPhone to gather her biometrics without her consent; a video showing a number of these photos including in her living room, bedroom, bathroom, and in public spaces; and Twitter posts where Charging Party complained about Employer's surveillance, intimidation tactics, overly restrictive confidentiality policies, and ex-Intelligence/ex-military corporate paramilitary team known was the "Worldwide Loyalty Team." This letter created the implication of surveillance and confirmed actual surveillance. The message from Employer also expressly told Charging Party that Employer's surveillance of its employees is 'confidential' and speaking of it publicly can result in immediate termination. [14] On September 15 2021, Charging Party responded to Employer confirming she would delete her Twitter posts but wrote that she did not believe that information was confidential.

15.    On September 15 2021, Apple suddenly and unexpectedly announced a Global All Hands meeting hosted by Tim Cook and sent a survey where employees could ask Tim Cook questions beforehand which he may answer during the meeting.  On September 17 2021, Tim Cook led the Global All Hands meeting and answered a small number of questions – none of which included the questions Charging Party's coworkers told her they had submitted about their shared concerns.  On September 21 2021, Employer's CEO Tim Cook emailed his global staff with a message threatening them to not speak about work conditions publicly and threatening surveillance and unspecified reprisals against the workers. Supervisor Cook sent the email from

---

1238, 1238-1239, 1241 (2000).

[13] Discipline imposed pursuant to an overbroad rule may be unlawful per se. As explained in *The Continental Group,* it is a per se violation of the Act to discipline of an employee who violated an unlawful rule when (1) engaging in protected conduct and/or (2) engaging in conduct that otherwise implicates the concerns underlying Section 7 of the Act. *Double Eagle Hotel & Casino; The Continental Group* 357 NLRB No. 39 (2011).

[14] Here, like in the recent *Lush Cosmetics* case, the employer's statement that it considered employee's protected activity to be "unacceptable" and that, should he persist in such conduct, it would be deemed "misconduct," strongly suggested that future postings about employees' terms and conditions of employment would result in discipline or other unspecified reprisals. The employee would reasonably understand that he could be subject to discipline or other unspecified reprisals if he continued to post protected comments addressing employees' wages or working conditions on discussion websites. *Lush Cosmetics, LLC*, Case 20–CA–272392, 372 NLRB No. 54 (February 10, 2023).

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

his Apple email account and signed it from 'Tim.'

16.     Beginning on and/or around August 2021, the Employer and agents of the Employer began harassing, intimidating, and threatening Charging Party in retaliation for her Protected Concerted Activity; and in order to coerce her to stop engaging in Protected Concerted Activity, including withdrawing her NLRB charges. In January 2022, Employer and its agents filed a meritless retaliatory lawsuit against Charging Party and repeatedly maliciously reported Gjovik to law enforcement.

17.     Charged Party engaged in the conduct described above under "Unfair Labor Practices" because the Charging Party engaged in the conduct described in "Protected Concerted Activity" and to discourage employees from engaging in those or other concerted activities. By the conduct described, Charged Party has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1), 8(a)(3), and 8(a)(4) of the Act. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

18.     Employer's misconduct also includes unlawful rules[15] (such as a ban on talking about safety concerns, a five-point balancing test for talking about safety and environmental concerns, ban on talking to the media,[16] ban on talking about surveillance concerns, ban on talking about terms and conditions of employment, and more) in violation of the Act. By the policies and work rules described, Charged Party has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1), 8(a)(3), and 8(a)(4) of the Act. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

## IV.    **PROTECTED ACTIVITY**

---

[15] *Lutheran Heritage Village- Livonia,* 343 NLRB 646 (2004).When evaluating a facially neutral policy, rule or handbook provision that, when reasonably interpreted, would potentially interfere with the exercise of NLRA rights, the Board will evaluate: (i) the nature and extent of the potential impact on NLRA rights, and (ii) legitimate justifications associated with the rule. *BMW Manufacturing Co*., Case 10–CA–178112, 370 NLRB No. 56 (December 10, 2020); *Great Dane Trailers, Inc*., 388 U.S. 26, 33–34 (1967)

[16] The right of employees to communicate with the media concerning labor disputes and terms and conditions of employment (and to do so without having to obtain preauthorization from their employer) is "central to the Act." *Boeing*, 365 NLRB No. 154, slip op. at 15; *Tesla, Inc.,* 370 NLRB No. 101 (Mar. 25, 2021); Tesla, Inc. v. Nat'l Lab. Rels. Bd., 63 F.4th 981 (5th Cir. 2023). The Board has a longstanding, 'deeply engrained' position that categorical prohibitions on speaking to the news media are unlawful. *Maine Coast Regional Health Facilities, d/b/a Maine Coast Memorial Hospital,* 369 NLRB No. 51, slip op. at 1 (2020).

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

19.     The NLRA's protection of employee organizing and collective bargaining is rooted in employees' abilities to communicate about their working conditions with each other, their employers, and the public. Thus, § 7 of the NLRA states that employees have the right to engage in "concerted activities" for "mutual aid or protection," and § 8(a)(1) of the act makes it illegal for employers to "interfere with, restrain, or coerce" employees who are exercising their § 7 rights.

20.     Within the six months prior to the charge being filed (June 29 2023 – December 29 2023), examples of when Gjovik engaged in Protected Concerted Activity for Mutual Aid and Protection include when she filed a RICO lawsuit against Apple which included claims of violations of labor and safety laws impacting Gjovik and her coworkers and requests remedies for Gjovik's coworkers;[17] when she filed a report to the US EPA alleging violations of health/safety and environmental laws at Apple's semiconductor fabrication plant and which complaint did initiate an investigation; when she participated in NLRB Board proceedings and investigations; and when she spoke publicly and with current employees of Apple about her NLRB charges and other labor rights activism.[18]  These protected activities were all logical outgrowth of Gjovik's prior concerns when she was an employee and raised with other employees.

21.     On or around September 7 2023, Gjovik filed a lawsuit in federal civil court against Apple. Apple was served and attorneys at Orrick contacted Gjovik stating they were representing Apple in the lawsuit. On or around December 8 2023 US Department of Labor OSHA abruptly and belligerently dismissed Gjovik's OSH Act and CERCLA retaliation claims, and Gjovik announced she would appeal to DWPP and OALJ, and she did so within 15 days and 30 days respectively. Gjovik filed a First Amended Complaint in the civil lawsuit in October 2023, and then a Second Amended Complaint around December 21 2023, and an Opposition to Apple's Motion to Dismiss around December 22 2023, and a Motion for Judicial Notice on December 25 2023. Apple's agents knew Gjovik intended to and did do such things before, during, and after they occurred. On December 29 2023 Gjovik filed this NLRB charge and

---

[17] *200 E. 81st Restaurant Corp.*, NLRB (2015) – (Despite the fact that plaintiff filed the class action suit without the support or consent of any of the other employees, the NLRB determined that plaintiff's actions constituted "concerted" activity.); D. R.Horton, 357 NLRB No. 184,737 F.3d 344 (5th Cir.2013).
[18] *Meyers Industries*, 268 NLRB 493 (1984) (Meyers I), remanded sub nom. Prill v. NLRB, 755 F.2d 941 (D.C. Cir.), cert.denied, 474 U.S. 948 (1985), reaffd., 281 NLRB 882 (1986) (Meyers II), enfd. sub nom. Prill v. NLRB, 835 F.2d 1481 (D.C. Cir. 1987), cert. denied, 487 U.S. 1205 (1988).

notified Apple she did so.

## V.    **VICARIOUS LIABLITY & ETHICS RULES**

22.    As discussed, lawyers are agents of the company they represent, thus when a lawyer defends an Employer from claims by an employee, the lawyer is an agent of the Employer. Vicarious liability is automatic in the consumer litigation field, where courts tend not to see creditors as "clients" but as predators who should not be allowed to hide behind their attorneys or sophisticated actors that have a duty to control and monitor their attorneys' activities. [19]

23.    Interactions between attorney's and pro se litigants are primarily governed by Ruel 4.3 of the ABA's Model Rules of Professional Conduct.[20] Prudent counsel will take the "reasonable effort" of preceding all communications with a pro se litigant by way of a cautionary admonition - preferably in writing - providing the information required by Rule 4.3.[21]  Comment 2 expressly permits attorneys dealing with pro se litigants to negotiate with them the terms of a transaction, settle a dispute, prepare documents for their signature, explain the meaning of the documents to them, and offer a "lawyer's view of the underlying legal obligations."[22]

24.    Several other provisions of the Model Rules of Professional Conduct provide additional guidance for the attorney dealing with an pro se litigant. These include the provisions in the Preamble stating that every lawyer is, inter alia, "an officer of the legal system" who, as a negotiator, "seeks a result advantageous to the client but consistent with requirements of honest dealings with others." The lawyer "should use the law's procedures only for legitimate purposes and not to harass or intimidate others".[23]

25.    Rule 3.4, entitled "Fairness to Opposing Party and Counsel," provides additional duties, including prohibitions upon unlawfully obstructing a party's access to evidence, or altering, destroying, or concealing evidence; falsifying evidence, or counseling or assisting a witness to testify falsely; disobeying obligations under the rules of a tribunal; making frivolous

---

[19] *Police v. National Tax Funding, L.P.,* 225 F.3d 379, 405 (3rd Cir. 2000); *Fontell v. Hassett*, 870 F. Supp.2d 395, 412 (D. Md. 2012) ("A debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA").
[20] Jona Goldschmidt, *Strategies for Dealing with Self-Represented Litigants*, North Carolina Central Law Review, Volume 30, Number 2, Article 3, pg133 (4-1-2008).
[21] Jona Goldschmidt, *Strategies for Dealing with Self-Represented Litigants*, North Carolina Central Law Review, Volume 30, Number 2, Article 3, pg134 (4-1-2008).
[22] MODEL RULES OF PROF'L CONDUCT R. 4.3 cmt. 2.
[23] Id at pg136, footnote 24.

CHARGING PARTY'S POSITION STATEMENT                NLRB CHARGE NO: 01-CA-332897

discovery requests, or failing to diligently respond to discovery requests; alluding to matters at trial not reasonably relevant or admissible, asserting personal knowledge of facts unless testifying, or stating personal opinions regarding the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused; or requesting a person other than a client to refrain from giving testimony, unless the person is a relative, employee or other agent of the client, or where the lawyer reasonably believes the person's interests will not be adversely affected by refraining from giving such information[24]

26.    See also Rule 4.1, entitled "Truthfulness in Statements to Others," which prohibits knowingly making a false statement of material fact or law to a third person, or failing to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless such fact is confidential.[25]

## VI.    NEW UNFAIR LABOR PRACTICES

27.    Section 8(a)(1) of the NLRA is a "broad, remedial provision" that Congress enacted to "guarantee that employees will be able to enjoy their rights protected by § 7—including the right to unionize [and] the right to engage in concerted activity for mutual aid and protection—without fear of restraint, coercion, discrimination, or interference from their employer." [26]

28.    A lawsuit "may be used by an employer as a powerful instrument of coercion or retaliation." [27] The Supreme Court clearly held, "Congressional policy, as expressed in the NLRA, remains that employers are not permitted to obtain injunctions of secondary activity." [28] In addition, an Employer's motions can be found to be unfair labor practices when filed and maintained with a retaliatory or coercive motive. [29] This precedent reflects the understanding of the coercive, intimidating, and threatening impact of an Employer undertaking a litigation posture against the employee that could be considered: bad faith, bullying, scorched earth, goliath, coming on strong, hardball, and/or Rambo-Lawyering.

29.    Apple engaged in the conduct described under "Unfair Labor Practices" because

---

[24] Id at pg136, footnote 24.
[25] Id.
[26] Bill Johnson's, 461 U.S. at 740.
[27] Bill Johnson's, 461 U.S. at 740.
[28] *Milum Textile Services*, 357 N.L.R.B. 2047 (N.L.R.B-BD 2011); *Burlington-Northern Rail-road Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 448 (1987).
[29] *Milum Textile Services*, 357 N.L.R.B. 2047 (N.L.R.B-BD 2011).

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

the Charging Party engaged in the conduct described in "Protected Concerted Activity" and to discourage employees from engaging in those or other concerted activities.

30.  By the conduct described, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1), 8(a)(3), and 8(a)(4) of the Act. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

## B.  Unlawful Work Rules: Confidential Information

31.  An employer's handbooks and work rules carry particular weight in nonunion workplaces, because nonunion employees typically do not have the opportunity to bargain about the terms and conditions of employment. In any setting, a work rule that expressly limits employees' § 7 rights violates the NLRA. A work rule that does not expressly limit § 7 rights is subject to a balancing test that weighs the rule's potential to restrict § 7 rights against the employer's legitimate business interests in promulgating the rule.[30]

32.  At issue in this charge, is Apple's baseless and malicious use of a civil court's General Order and draft Protective Order to create and maintain work rules claiming information about work conditions is confidential and secret. The General Order, General Order 71 (which does not actually apply to the case), instructs the employer defendant to produce to the Plaintiff records, including but not limited to: the plaintiff employee's personnel file; performance evaluations; compensation and benefits; discipline and termination records; unemployment claims; investigatory reports; job descriptions; and workplace policies related to discipline, termination, performance reviews, misconduct, and retaliation.[31]

33.  In Apple's "Initial Disclosures" they note several categories and examples of documents which they said they will only release to Gjovik "pursuant to a Protective Order." Apple's draft Protective Order prohibits Gjovik from sharing any of the information covered, and Apple declares that information is its property and Gjovik must destroy her copies of that information after the litigation, never speak of it again, and if Gjovik was to leak the information, Gjovik could be found in contempt of court and face sanctions. Meanwhile, Apple's examples of this "Protected Material" include:

---

[30] *Boeing Co.,* 365 N.L.R.B. No. 154 (2017).
[31] US Courts, General Order 71, https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_71_2-1-2020.pdf

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

- "All communications concerning the factual allegations or claims at issue in this lawsuit among or between: (i) [Gjovik] and [Apple]; (ii) [Gjovik's] manager(s), and/or supervisor(s), and/or [Apple's] human resources representative(s)." (pg1-2)
- "[Gjovik's] performance evaluations and formal discipline." (pg4)
- "Documents relied on to make the decision to terminate [Gjovik's] employment." (Pg4)
- Apple's employee "Misconduct and Discipline Policy" (pg4)
- "Non-privileged documents showing [Gjovik's] compensation and benefits from during her employment with Defendant," pg5
- "Non-privileged documents relied upon to make the employment decision(s) at issue in this lawsuit," (pg4).
- "Responsive, non-privileged, non-work-product documents that are directly related to Plaintiff's alleged wrongful termination," (Pg6)

34.     The majority of these topics are protected content under the NLRA and California Labor Codes. It would be against public policy, and the law, to declare these topics are secret and that Gjovik cannot talk about them. (see Labor Code § 1198.5, § 432, etc). The NLRA may find violations of federal labor law even in legal filings under certain factual scenarios.

35.     Apple did release some limited initial disclosures without a protective order, including: two offer letters (but not four), the IPA, Gjovik's resume, the termination letter (but not email), Biz Conduct and EEO policies, pay stubs, W2s, RSUs, ESPP, beneficiaries, 401k, disability leave, ADA requests, and more.

36.     Apple's  initial disclosures did not include, and thus implied they were secret, included: position description, offer letter/role under Evan and in Legal, any other policies, student loan reimbursement, transit benefits, Apple Wellness, worker's compensation claim, injury reports, safety complaint about laser or watch band burn, any records about decision to terminate, nothing about investigatory report, no annual performance reviews, her promotion, anything about her 2021 mid or annual review, attendance/sick days, relocation, extreme condition leave, and more.

37.     Apple wrote to Gjovik on December 18 2023, attaching the draft Protection Order and their Initial Disclosures: "*We are providing Apple's written disclosures and non-confidential document production per General Order 71. ... Apple has additional responsive, confidential documents that it will produce under an agreed-upon protective order. We have attached for your review a proposed protective order based on the form Northern District order. Please let us know if you have any comments or proposed revisions*."

38.     Under the NLRA, an employer cannot prohibit external disclosure outside the company of "personnel information and documents" or "workers' compensation injuries, and personal health information."[32] Union information requests under the NLRA group types of information into three categories. Category 1 information is presumptively relevant and must be turned over to the union, Category 2 information is not presumptively relevant and requires further evaluation, and Category 3 information is confidential and may be withheld.[33] Category 1 information should include information that concerns the terms and conditions of employment of the employees working in the bargaining unit. This information is "presumptively relevant" and the employer must turn it over in most cases.[34] Similarly, it may be unlawful for an employer to ask an employee to keep a workplace investigation confidential.[35] Employees have a Section 7 right to discuss pending workplace disciplinary investigations involving themselves or other employees.[36]

39.     Category 1 information includes dates of hire, seniority dates, shifts and schedules, hours worked, compensation, wages, bonuses, classifications and job titles, performance reviews, attendance records, disciplinary documents including warnings, other documents contained within an employee personnel file, and all written policies that apply to the employee including handbooks and work rules, and all benefit information including insurance information, incentive programs, and safety/health information.[37] Category one also includes information related to investigations, including internal investigation reports.[38] None of these items are confidential, yet Apple claims many are confidential.

40.     The NLRB already found merit that Apple's employment policies violate federal law. However, where those policies once only threatened a breach of contract lawsuit against the worker, now the employer wants to put the employee at risk of Sanctions and Contempt, if she was to speak about the same topics and even identical documents. Confidentiality obligations

---

[32] *Flex Frac Logistics* and *Kathy Lopez* and *Costco Wholesale Corporation and United Food and Commercial Workers Union, Local 371*,

[33] Employer's Duty to Provide Information under the National Labor Relations Act Checklist, A Lexis Practice Advisor® Practice Note by Mark Theodore, Proskauer Rose LLP

[34] Employer's Duty to Provide Information under the National Labor Relations Act Checklist, A Lexis Practice Advisor® Practice Note by Mark Theodore, Proskauer Rose LLP

[35] Banner Health System, 362 N.L.R.B. slip. op. 137 (Jun. 26, 2015).

[36] Fresh & Easy Neighborhood Market, 361 N.L.R.B. slip op. 12 (2014); Hyundai America Shipping Agency, 357 N.L.R.B. slip op. 80 (2011).

[37] Employer's Duty to Provide Information under the National Labor Relations Act Checklist, A Lexis Practice Advisor® Practice Note by Mark Theodore, Proskauer Rose LLP

[38] Employer's Duty to Provide Information under the National Labor Relations Act Checklist, A Lexis Practice Advisor® Practice Note by Mark Theodore, Proskauer Rose LLP

that preclude employees from cooperating with NLRB investigations or litigation of unfair labor practices are prohibited because employees must be permitted to assist coworkers with workplace issues concerning their employers.[39] Further, discovery is intended to serve in part to "force a full disclosure" to the public.[40]

41.     Under the NLRA, a party seeking a protective order with respect to disclosure of subpoenaed documents bears the burden of demonstrating "good cause" under FRCP 26(c) "or that disclosure would cause clearly defined and serious harm."[41]  The motion must be supported by a particular and specific demonstration of fact, as opposed to a mere conclusory or speculative claim of harm.[42]

42.     The NLRA guarantees employees the right to engage in concerted activities for mutual aid or protection. [section 158(a)(3)] Employees may engage in protected concerted activity "when they seek to improve their lot as employees through channels outside the employee-employer relationship."[43]  A communication becomes protected concerted activity – regardless of whether the communication is with coworkers, unilateral, to a government, or to reporter – if that communication is in relation to group action, in the interest of the employees, and/or about topics that are the logical outgrowth of concerns expressed by the group.[44]  Under the *Meyers* test, "*to be concerted, individual employee activity must be engaged in with, or on the authority of other employees, and not solely by and on behalf of the employee himself.*"[45] This may include communications to government agencies and the press.

## C.  Unlawful Work Rules: Work Conditions

43.     In *Lafayette Park Hotel*, the Board held an employer may violate Section 8(a)(1) through the mere maintenance of certain work rules even in the absence of enforcement. The appropriate inquiry is: whether the rule in question "would reasonably tend to chill employees in

---

[39] McLaren Macomb, 372 NLRB No. 58 (2023).

[40] *Olympic Ref. Co. v. Carter,* 332 F.2d 260, 264 (9th Cir.), cert. denied, 379 U.S. 900 (1964).

[41] Impremedia, 29-CA-131066, unpub. Board order issued Jan. 14, 2015 (2015 NLRB LEXIS 19, 2015 WL 193732), at 1 n. 2 (denying respondent's request because it failed to establish either).

[42] See also Loomis v. Unum Group Corp., 338 F.R.D. 225, 228– 229 (E.D. Tenn. 2021); NLRB v. CEMEX, Inc., 2009 U.S. Dist. LEXIS 123404, 2009 WL 5184695 (D. Ariz. Dec. 22, 2009); Serrano v. Cintas Corp., 699 F.3d 884, 901(6th Cir. 2012), cert. denied, 134 S. Ct. 92 (2013); Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005); Foltz v. State Farm Mutual Automobile Insurance Co., 331 F.3d 1122, 1130 (9th Cir. 2003); and In re Terra International, Inc., 134 F.3d 302, 306 (5th Cir. 1998)

[43] Eastex, 437 U.S. at 565.

[44] *Mike Yurosek & Son, Inc*., 306 NLRB 1037, 1038 (1992).

[45] Myers, 268 NLRB at 497; 281 NLRB at 885; *Whittaker Corp*., 289 NLRB 993, 993–994 (1988); *Relco Locomotive, Inc*., 358 NLRB No. 32 (April 12, 2012).

the exercise of their Section 7 rights."

44.    On November 16 2023, Apple's Counsel at Orrick, Herrington & Sutcliffe filed a Motion to Dismiss nine of Gjovik's twelve civil claims for failure to state a claim. Gjovik then had until December 21 2023 to file her Second Amended Complaint and Opposition to the Motion, per the prior Stipulation.

45.    Gjovik's First Amended Complaint claimed a violation of Cal. Labor Code §§ 98.6/96k. Gjovik wrote, "Under Labor Code Section 96(k), Apple may not demote, suspend, discharge from employment, threaten discharge, or otherwise discriminate against any employee for lawful conduct occurring during nonworking hours away from the employer's premises when that conduct involves exercise of a "recognized constitutional right" and/or a right protected by the Labor Code… The fact Gjovik was posting about work conditions in her personal time does not transform Gjovik's personal time into work time." (Gjovik, FAC, pg 290, October 25 2023).

46.    In response, Apple's Counsel wrote: "to state a Section 98.6 claim predicated on an alleged violation of Section 96(k), Plaintiff must allege that she was terminated because she asserted a recognized constitutional right … Plaintiff alleges only that she asserted the right to "free speech," but free speech is an insufficient basis to state a claim. Specifically, Plaintiff alleges Apple retaliated against her for "asserting 'recognized constitutional rights' (free speech, speaking about work conditions, protesting unlawful conduct, protesting unlawful surveillance and unfair business practices), occurring during nonworking hours (while she was on leave), away from Apple's premises." FAC ¶988. Under well-established case law, "a private employee [like Plaintiff] has no recognized constitutional protection from termination by a private employer [like Apple] based on speech." (Orrick, Motion to Dismiss, November 16 2023).

47.    Apple equates "free speech" to "speaking about work conditions" and declares both are unprotected and employees can be fired for their speech. In footnotes, Apple then suggests the Court strike Gjovik's claim about being supposedly terminated due to her speech about work conditions and the terms/conditions of her employment. Counsel writes, "In the alternative, Apple moves to strike Plaintiff's Section 98.6 claim predicated on a Section 96(k) violation as immaterial under FRCP 12(f). Rule 12(f) permits a Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter…"[46] (Orrick, Motion to Dismiss,

---

[46] *Barajas v. Carriage Servs., Inc*., 2020 WL 1189854, at *5 (N.D. Cal. Mar. 12, 2020) ("[M]options to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action.").

November 16 2023).

48.  Apple's explanation for terminating Gjovik is that it punished Gjovik for Gjovik speaking publicly, in her own time, outside of work, about work conditions. Apple views Gjovik's right as a worker to speak publicly about the terms and conditions of her employment as…Immaterial? Impertinent? Scandalous? All of these adjectives likely violate the law.

49.  Beyond Labor Code, the California Constitution in Article 1 Section 1 includes broad protections including: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Section 2 adds: "(a) Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." California Constitution Article XIV Section 1 explains: "The Legislature may provide for minimum wages and for the general welfare of employees and for those purposes may confer on a commission legislative, executive, and judicial powers" integrating the Labor Code into the Constitutional protections.

50.  In addition, under the NLRA: "there is some expression for which employers cannot legally fire their employees."[47]  Apple, via its Counsel as its agent, irritated and agitated the NLRA with multiple Section 8(a)(1) and 8(a)(4) violations. Apple's proposed Protection Order would potentially make it unlawful for Gjovik to testify in an open NLRB case against Apple's employment policies, including the Misconduct and Discipline policy (it is literally an exhibit on Gjovik's affidavit). Apple's statements addressed here also likely violate Cal. Labor Code §§ 1102.5, 232.5, and 98.6, as noted in Gjovik's Opposition to Apple's motion to dismiss.

51.  Based on extant Board law, overly broad provisions in any employer communication to employees that tend to interfere with, restrain or coerce employees' exercise of Section 7 rights would be unlawful if not narrowly tailored to address a special circumstance justifying the impingement on workers' rights.[48] Confidentiality clauses that are narrowly-tailored to restrict the dissemination of proprietary or trade secret information for a period of time based on legitimate business justifications may be considered lawful. However, confidentiality clauses that

---

[47] *Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978); Charlotte Garden, Was it something I said? Legal protections for employee speech, EPI, (May 5 2022), https://www.epi.org/unequalpower/publications/free-speech-in-the-workplace/
[48] US NLRB, Office of General Counsel, MEMORANDUM GC 23-05, Guidance in Response to Inquiries about the McLaren Macomb Decision (March 23 2023).

have a chilling effect that precludes employees from assisting others about workplace issues and/or from communicating with the Agency, a union, legal forums, the media or other third parties are unlawful.[49] This is the case here. Apple's declaration of what is "secret" in the civil case is illegal and untenable.

### D.  Coercion: Fake Discovery (Abuse of Process)

52.      Normally, after the defendant has filed an answer or a motion to dismiss the complaint, the judge holds a pretrial conference, sometimes referred to as a case management conference. A schedule for discovery is generally set at this conference, and a trial date is sometimes also scheduled.[50] In cases where General Order 71 does apply, "parties in cases to which the Protocols apply will find applicable language and instructions in the Initial Case Management Conference Scheduling Order in their case and on the case docket."[51] General Order 71 was not noted in the Order or docket for this case.

53.      Apple and their agents misrepresented Discovery requirements and court rules in order to coerce Gjovik into sharing sensitive documents she did not need to, entering an unlawfully restrictive contract enforceable with sanctions, and making records about Gjovik's work conditions confidential. Discovery abuse often includes trickery, harassment, threats, and interference.[52] In *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc*., like here, an attorney engaged in trickery when he "secur[ed] documents under false pretenses" during discovery.[53] Apple and its lawyers lied to Gjovik and coerced her under duress of an implied allegation Gjovik violated a court deadline for discovery, in order to interfere with Gjovik's ability to organize with employees and speak about her work conditions. It's been said, "the most harmful

---

[49] *McLaren Macomb* allows for narrowly-tailored provisions, and I believe that approving a withdrawal request when a non-Board settlement has a confidentiality clause only with regard to non-disclosure of the financial terms comports with the Board's decision, would not typically interfere with the exercise of Section 7 rights, and promotes quick resolution of labor disputes.

[50] United States Courts, Covering Civil Cases – Journalist's Guide, Pre-Trial Proceedings, https://www.uscourts.gov/statistics-reports/covering-civil-cases-journalists-guide

[51] United States Courts, CAND, Northern District Renews One-Year Pilot of Initial Discovery Protocols for Employment Cases Alleging Adverse Action, https://cand.uscourts.gov/notices/northern-district-renews-one-year-pilot-of-initial-discovery-protocols-for-employment-cases-alleging-adverse-action/

[52] *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 573 (Tex. App. 2011); Adelman v. Brady, No. 89-4714, 1990 WL 39147, at *2 (E.D. Pa. Mar. 28, 1990).; Prize Energy Res., 345 S.W.3d at 573; Florida Bar v. Ratiner, 46 So.3d 35, 37 (Fla. 2010).

[53] *Prize Energy Res.,* 345 S.W.3d at 577; David R. Hague, *Fraud on the Court and Discovery Abuse*, Nevada Law Journal, Volume 16:707; page 711-712 (Spring 2016).

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

form of discovery abuse is likely in the form of attorney deceit."[54]

54.    The NLRB issued a decision in *Milum Textile Services Co*., where it found that an employer violated the NLRA by seeking a temporary restraining order (TRO) against a union engaged in a campaign. The employer's application for a TRO in US District Court could constitute an unfair labor practice (ULP) for retaliatory litigation when it was a component of an otherwise non-frivolous litigation against the union. Here, Apple and its agents attempted to deceive Gjovik that Gjovik missed a court deadline for a protocol that did not actually apply to their case, in order to get Gjovik to sign a Protective Order that would apply to Gjovik's work conditions and Apple's employee handbook, out of fear that was the only way to complete her discovery obligations that night.

55.    Conduct warranting reprimand in NLRB hearing includes willfully taking frivolous positions at the trial to delay and abuse the Board's processes.[55] Section 102.21 specifically provides for disciplinary action against an attorney or representative for willfully filing an answer that is not supported by good grounds and is interposed for delay. In certain circumstances, a respondent counsel's questions or statements to or in the presence of witnesses at the hearing may also constitute an unfair labor practice.[56]

56.    This type of discovery abuse is especially egregious when conducted against a pro se litigant. "Most pro se litigants have no concept of the purpose or scope of discovery."[57] An employer who weaponizes the litigation procedures to discriminate against the employee abuses court process through an illegal and improper perverted use of the process, which was neither warranted nor authorized by the process; ulterior motive or purpose of a person in exercising such illegal, perverted, or improper use of process; and resulting damage or injury.[58]

---

[54] David R. Hague, *Fraud on the Court and Discovery Abuse*, Nevada Law Journal, Volume 16:707; page 711-712 (Spring 2016).
[55] Nursing Center at Vineland, 318 NLRB 337, 344 (1995).
[56] See AM Property Holding Corp., 350 NLRB 998 n. 4 (2007) (granting the General Counsel's motion to amend the complaint during the hearing and finding that the respondent's counsel violated Section 8(a)(1) and (4) of the Act by stating on the record, in the presence of the witness, that he would "have to get an investigator" and "find out whether [the witness] is here in this country illegally"); and Imperial Sales, Inc., 365 NLRB No. 95, slip op. at 3 nn. 13–15, and 20 (2017) (granting the General Counsel's motion to amend the complaint during the hearing and finding that the respondent's counsel violated Section 8(a)(1) by telling the alleged discriminatees in the hearing room that he would report them to the immigration authorities and that they would "not get a penny"), enfd. 740 Fed. Appx. 216 (2d Cir. 2018)
[57] Jona Goldschmidt, *Strategies for Dealing with Self-Represented Litigants*, North Carolina Central Law Review, Volume 30, Number 2, Article 3, pg144-145 (4-1-2008).
[58] Restatement (Second) of Torts § 682, Cmt a (1977).

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

An abuse of process claim can be initiated before the legal proceeding is concluded. [59]

57.    Other examples of discovery misuses in California Civil Procedure 2023.010 include using a discovery method in a manner that does not comply with its specified procedures, and employing a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. Further, Rule 11 of the Federal Rules of Civil Procedure provides in part that "[b]y presenting to the [federal] court a pleading, written motion, or other paper," the proponent of the document is certifying that, inter alia, the document "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." [60]

58.    Like with Severance Agreements, whether or not the employee actually signed the severance agreement is irrelevant for purposes of finding a violation of the NLRA since the proffer itself inherently coerces employees by conditioning severance benefits on the waiver of statutory rights such as the right to engage in future protected concerted activities and the right to file or assist in the investigation and prosecution of charges with the Board. [61]  That the employee did not sign the agreement does not render the employer's conduct lawful.[62]

## E.  Coercion: Invasion of Privacy

59.    An NLRA violation can be found based on an employer's discovery requests during civil litigation.[63] In one example, an employer who was a "repeat violator" of the Act submitted a discovery request asking for the names of union members, which was not relevant to the lawsuit.[64] The scope of discovery under General Order No. 71 is broad and invasive. The Order temporality "relevant time period" begins "three years before the date of the adverse action."[65] The "Documents that Plaintiff must produce to Defendant" includes, but is not limited to, incredibly invasive records such as: "Diary, journal, and calendar entries maintained by the plaintiff concerning the factual allegations or claims at issue in this lawsuit;" and "Documents concerning: (i) communications with potential employers; (ii) job search efforts; and (iii) offer(s)

---

[59] Restatement (Second) of Torts § 682, Cmt a (1977).
[60] Fed. R. Civ. P. 11(b) and (b)(1).
[61] US NLRB, Office of General Counsel, MEMORANDUM GC 23-05, Guidance in Response to Inquiries about the McLaren Macomb Decision (March 23 2023).
[62] *Metro Networks*, 336 NLRB 63, 67, fn. 20 (2001); *Shamrock Foods*, 366 NLRB No. 117, slip op. at 2-3 & fn. 23 (2018), enfd. 779 Fed. Appx. 752 (D.C. Cir. 2019).
[63] Dilling Mechanical Contractors (357 NLRB No. 56).
[64] Dilling Mechanical Contractors (357 NLRB No. 56).
[65] US Courts, General Order 71, https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_71_2-1-2020.pdf

of employment, job description(s), and income and benefits of subsequent employment."[66]

60.    In addition to everything else Apple did, Apple also attempted to coerce, and did coerce, Gjovik to reactively send Apple documents as she thought she had to in order to comply with court rules, however those rules did not apply. Apple's request included that Gjovik send Apple her personal diary that night. This was an egregious attempt by Apple to once again violate Gjovik's privacy and dignity.

61.    Under California Rule 4.3 "Communicating with an Unrepresented Person," says "In communicating on behalf of a client with a person* who is not represented by counsel, a lawyer shall not seek to obtain privileged or other confidential information the lawyer knows or reasonably should know the person may not reveal without violating a duty to another or which the lawyer is not otherwise entitled to receive."[67]

62.    US Courts Northern District of California explains "Guidelines for Professional Conduct are adopted to apply to all lawyers who practice in the United States District Court for the Northern District of California. .. Every attorney who enters an appearance in this matter shall be deemed to have pledged to adhere to the Guidelines."[68] It explains, "All matters should be handled with due respect for the privacy rights of parties and non-parties."

## F.  Coercion: Attorney Misconduct

63.    Over the last three years, Apple and their agents have engaged in a significant amount of attorney misconduct including failure to provide Upjohn warnings, failure to provide pro se litigant warnings, and misleading statements about the 'confidentiality' of conversations.

64.    Model Rule of Professional Conduct 4.4 codifies the principle that, in the course of representing a client, a lawyer will not take action to violate the legal rights of a person. In the labor context, this implicates a balancing of legal rights – for the corporation to maximize its profits and decision-making independence, and for workers to come together and collectively bargain.[69] "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence

---

[66] General Order 71, supra.
[67] Rule 4.3 Communicating with an Unrepresented Person* (Rule Approved by the Supreme Court, Effective November 1, 2018), https://www.calbar.ca.gov/portals/0/documents/rules/rule_4.3-exec_summary-redline.pdf
[68] US Courts, CAND, Guidelines for Professional Conduct, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/
[69] Daphne Assimakopoulos, *Ethical Considerations for Lawyers Engaging in Union-Avoidance Persuasion, Including the Impact of the "Persuader" Rule*, The Georgetown Journal Of Legal Ethics, Vol. 35:509, pg512-513 (2022).

that violate the legal rights of such a person."[70]

65.    The Model Rules raise concerns about presenting misleading information. Some persuasion activity can violate the Model Rules and thus should be subject to disciplinary action. The Model Rules should be read to limit the extremes to which union-avoidance consultants may go to defeat a unionization campaign, and call into question the appropriateness of law firms explicitly offering union avoidance services. [71]

66.    Workers central to an organizing effort may be represented by union counsel or may be unrepresented. They are thus parties covered by 4.2 and 4.3.[72] Model Rule 8.4 addresses "maintaining the integrity of the profession" and defines conditions of professional misconduct. Specifically, 8.4(c) states that it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."[73]

67.    Rule 4.3 of the Model Rules of Professional Conduct, adopted with only slight variation in almost all U.S. jurisdictions, bars giving any advice to an unrepresented person who is adverse to your client – except the advice to secure counsel.  The rule also cautions against implying that you are "disinterested."  You are an advocate solely for your client, and you must avoid any appearance to the contrary.

68.    Under California Rule 4.3 "Communicating with an Unrepresented Person," says "If the lawyer knows or reasonably should know* that the interests of the unrepresented person are in conflict with the interests of the client, the lawyer shall not give legal advice to that person, except that the lawyer may, but is not required to, advise the person to secure counsel."[74] This rule is intended to protect unrepresented persons, whatever their interests, from being misled when communicating with a lawyer who is acting for a client. [75]

69.    CAND "Guidelines for Professional Conduct are adopted to apply to all lawyers

---

[70] Model Rule of Professional Conduct 4.4

[71] Daphne Assimakopoulos, *Ethical Considerations for Lawyers Engaging in Union-Avoidance Persuasion, Including the Impact of the "Persuader" Rule*, The Georgetown Journal Of Legal Ethics, Vol. 35:509, pg513 (2022).

[72] Daphne Assimakopoulos, *Ethical Considerations for Lawyers Engaging in Union-Avoidance Persuasion, Including the Impact of the "Persuader" Rule*, The Georgetown Journal Of Legal Ethics, Vol. 35:509, pg514 (2022).

[73] Daphne Assimakopoulos, *Ethical Considerations for Lawyers Engaging in Union-Avoidance Persuasion, Including the Impact of the "Persuader" Rule*, The Georgetown Journal Of Legal Ethics, Vol. 35:509, pg515 (2022).

[74] Rule 4.3(b) Communicating with an Unrepresented Person* (Rule Approved by the Supreme Court, Effective November 1, 2018), https://www.calbar.ca.gov/portals/0/documents/rules/rule_4.3-exec_summary-redline.pdf

[75] Rule 4.3, Comment 1, Communicating with an Unrepresented Person* (Rule Approved by the Supreme Court, Effective November 1, 2018).

who practice in the United States District Court for the Northern District of California. .. Every attorney who enters an appearance in this matter shall be deemed to have pledged to adhere to the Guidelines."[76]  It explains, "A lawyer should not make statements which are false, misleading, or which exaggerate, for example, the amount of damages sought in a lawsuit, actual or potential recoveries in settlement or the lawyer's qualifications, experience or fees.  A lawyer should not create a false or misleading record of events or attribute to an opposing counsel a position not taken." [77]

### G.  Discrimination: Harassment about Prior Termination

70.    Apple did all of this while admitting it does not have a legitimate reason for its termination of Gjovik in the documents itself that were part of the sham discovery request. When prompted if there are "Any other document(s) upon which [Apple] relies to support the defenses, affirmative defenses, and counterclaims, including any other document(s) describing the reasons for the adverse action [against Gjovik]," Apple responded that "There is no operative answer on file." (pg6)

71.    Apple added in the Initial Disclosures: "Defendant's investigation of [Gjovik's] claims is ongoing and Defendant reserves the right to amend this response…." (pg7) It is over two years after Apple fired Gjovik and Apple still has not come up with a reasonable or consistent explanation as to why it retaliated against Gjovik and terminated her employment. Further, upon questioning, Apple claimed that it thought General Order No. 71 applied to the case because following their filing of a Motion to Dismiss, Apple was going to proceed as if the motion was already granted (which still does not explain why the Employer things it can pretend to be a Judge). One of the claims in Apple's Motion to Dismiss was the § 98.6 claim about retaliation for speaking about work conditions, the claim where Apple also wildly suggested the Judge just strike Gjovik's complaints about Apple censoring her.

72.    One union-avoidance consultant leader put it this way: Union busting is a field populated by bullies and built on deceit. A campaign against a union is an assault on individuals and a war on the truth. . .. The only way to bust a union is to lie, distort, manipulate, threaten, and always, always attack. . .. Each "union prevention" campaign, as the wars are called, turns

---

[76] US Courts, CAND, Guidelines for Professional Conduct, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/
[77] US Courts, CAND, Guidelines for Professional Conduct, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

on a combined strategy of disinformation and personal assaults.[78]

73.    Section 8(a)(4) makes it an unfair labor practice for an employer "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act." This provision guards the right of employees to seek the protection of the Act by using the processes of the NLRB. Like the previous section, it forbids an employer to discharge, layoff, or engage in other forms of discrimination in working conditions against employees who have filed charges with the NLRB, given affidavits to NLRB investigators, or testified at an NLRB hearing.

## H.  Coercion & Unlawful Work Rules: Face Gobbler

74.    It is presumptively unlawful for employers and unions to conduct overt or covert surveillance of employees' § 7 activities. Prohibited surveillance must be distinguished from mere observation. Employers and unions are free to observe employees who are publicly conducting concerted activity. But employers and unions may not videorecord or photograph employees who are exercising their § 7 rights, whether in public or in private. Recording and photography present a heightened risk of intimidating employees, because those processes create permanent records of individuals' actions that could be used against them later. Finally, it is unlawful to create a mere perception of surveillance, because even that perception might chill § 7 activity. [79]

75.    During all of these other violations, Gjovik had also requested a copy of the Gobbler Informed Consent Form that Apple cited (per Orrick) in their US Department of Labor position statement, and Apple repeated denied Gjovik's request. Gjovik attempted to request under state labor code and also under contract law (statute of frauds), but Apple would not budge. Apple's egregious conduct with Gobbler, and terminating Gjovik with the false justification that she complained about Gobbler, and insistence she 'consented' to Gobbler – is made even more egregious with Apple's rampant refusal to provide Gjovik a copy of the ICF. Apple did not include it or even mention it in their sham initial disclosures. Assumably Apple plans to demand that a Protective Order must be in place before it would ever lend Gjovik a copy of this supposed agreement that supposedly symbolizes Gjovik's "consent."

76.    Employees have a Section 7 right to concertedly appeal to third parties, including

---

[78] Martin Jay Levitt, Confessions Of A Union Buster 1 (1993).
[79] Randell Warehouse of Arizona, Inc., 347 N.L.R.B. 591 (2006); F.W. Woolworth Co., 310 N.L.R.B. 1197 (1993).

their employer's customers, for support in a labor dispute.[80] [81]

## I. Interference: Misconduct Policy & Existing Case

77.        The Decision of Merit Gjovik obtained from NLRB in January 2023 was covered in the press and even became a section in the LegalTemplates website on NDAs, under a section titled "*A Crime is NOT Confidential Information*."[82]  The site wrote: *"Senior program manager Ashley Gjøvik was fired by Apple in September 2021. Apple claimed Gjøvik was terminated for violating its confidentiality policies. Still, Gjøvik believed the firing was Apple's retaliation for her public complaints about Apple's surveillance of employees and other wrongful conduct, of which the employees should have the right to report to authorities regardless of a confidentiality agreement in place. The US National Labor Relations Board prosecutors initiated an investigation and eventually found Apple's policies imposed on employees were "illegal" as they "violate workers' rights."*

78.        At some point, NLRB is to file a Complaint against Apple over this handbook/NDA case. During the hearing, evidence will include Apple's handbook and employment policies under the charge, which included many policies obtained and produced by Gjovik, and assumably Gjovik will also be expected to testify in court about those policies. Apple knows this.

79.        Among the many other issues caused by Apple's misconduct, Apple attempted to declare evidence in Gjovik's charge and NLRB's case against Apple, is secret, actually, and if anyone was to share it or even speak of it, a Judge should be able to find them in contempt of court. In addition to coercion and intimidation, Apple's actions constitute threats of unspecified reprisals [83] and implied threats.[84] Apple's conduct here could possibly rise to Obstruction of Justice.

---

[80] *La Specialty Produce Co.,* 368 NLRB No. 93 (Oct. 10, 2019)
[81] See *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978); *Trinity Protection Services,* 357 NLRB 1382, 1383 (2011); *Kinder-Care Learning Centers*, 299 NLRB 1171, 1171-1172 (1990); *Allied Aviation Service Co. of New Jersey*, 248 NLRB 229, 230 (1980), enfd. mem. 636 F.2d 1210 (3d Cir. 1980).
[82] LegalTemplates, *Confidential Information: Definition and Examples*, (June 5 2023), https://legaltemplates.net/resources/business/confidential-information-in-nda/#what-can-not-be-considered-confidential-information
[83] Valerie Manor, Inc., 351 NLRB 1306 (2007) (threat of unspecified reprisals).
[84] Double D Construction Group, Inc., 339 NLRB 303 (2003) – shaking finger and saying "...remember

CHARGING PARTY'S POSITION STATEMENT                    NLRB CHARGE NO: 01-CA-332897

## VII.   <u>CONCLUSION</u>

Apple has intentionally, willfully, and deliberately violated the NLRA, again. I declare under penalty of perjury that the statements made in this statement are correct and accurate, and this statement was not made for any improper purpose.

DATED: JANUARY 21 2024

Respectfully submitted,

By_____
Ashley M. Gjovik, J.D.
*Pro Se* Complainant

1
2
3
4
5
6
7
8
**Exhibit: Memo/Grievance Submitted to Apple**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

This grievance was sent to the Apple lawyers on 12/29/23.

2

3

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

4

5

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

6

7

8

**CASE NO. 3:23-CV-04597-EMC**

9

10

**PLAINTIFF GJOVIK'S OBJECTIONS TO**

**ASHLEY GJOVIK**, *an individual*,

11

Plaintiff,

**DEFENDANT APPLE INC.'S DEMAND OF "INITIAL DISCOVERY UNDER GENERAL ORDER 71"**

12

v.

13

**& MISUSE OF PROTECTIVE ORDERS IN VIOLATION OF LABOR LAWS & PUBLIC POLICY**

14

**APPLE INC**, *a corporation*,

15

Defendant.

**& VIOLATIONS OF NLRA §§ 8(A)(1) AND 8(A)(4) [12/29/2023]**

16

17

18

19

20

**TABLE OF CONTENTS**

21

I.     SUMMARY ................................................................................................................. 2

22

II.    STATEMENT OF FACTS ......................................................................................... 2

23

III.   GENERAL ORDER 71 ............................................................................................. 7

24

IV.    FRCP INITIAL DISCLOSURES ............................................................................. 9

V.     DISCOVERY PROTECTIVE ORDERS ............................................................... 10

25

VI.    APPLE'S OVERBROAD DISCLOSURES + PROTECTIVE ORDER ............... 12

26

VII.   APPLE'S VIOLATIONS OF THE NLRA AND CAL. LABOR CODE ............... 14

27

VIII.  CONCLUSION ......................................................................................................... 17

28

1

## I.    SUMMARY

1.    This is a federal RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT case subject to FEDERAL RULES OF CIVIL PROCEDURE ("F.R.C.P.") Rule 26. In addition to the RICO claim and embedded criminal and civil Predicate Acts, the case also includes toxic torts (Nuisance and Ultrahazardous activities) at two facilities, violations of the BANE AND RALPH CIVIL RIGHTS ACTS, and IIED/NIED. All of these claims related to Gjovik's employment and retaliation claims, however they also standalone on their own. In addition to these claims, Gjovik also claims whistleblower retaliation under DODD-FRANK, SOX, Cal. Labor Code §§ 1102.5, 98.6, and 6310; and a *Tamney* claim for a termination of employment in violation of public policy.

2.    The Case Management Conference for *Gjovik v Apple* was cancelled in October 2023 due to a Judge reassignment, and has not been rescheduled yet. The deadline for Initial Disclosures was tied to the Conference and was provided via a Judge's Order. A new Order had not yet been issued. At the same time, Gjovik's case is not exempt under FRCP 26(a)(1)(B), nor is it an "employment case" under General Order 71.

## II.    STATEMENT OF FACTS

3.    On November 16 2023, Apple's Counsel at "Orrick, Herrington & Sutcliffe" ("Orrick") filed a Motion to Dismiss nine of Gjovik's twelve civil claims for failure to state a claim. Gjovik then had until December 21 2023 to file her Second Amended Complaint and Opposition to the Motion, per the prior Stipulation.

4.    On November 28 2023 Gjovik contacted Apple's four law firms assigned to Gjovik and asked: "*I am requesting copies of all instruments I signed (physical and electronic signatures) relating to my obtainment and holding of employment at Apple Inc. This request is governed by California Labor Code, Article 3, § 432.[1] The litigation exception to § 1198.5 does not apply to § 432. I am requesting that the Face Gobbler related instrument(s) be released first and expeditiously.*" (Gjovik, November 28 2023, 12:25am EST).

5.    Gjovik did not hear back for some time, and nudged it again December 8 2023, saying: "*since Gobbler is the crux of Apple's legal defense in this matter, I'd think that the alleged Gobbler NDA would be easily on hand and it should only take a couple days at most to*

---

[1] Cal. Labor Code § 432 ("If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request.")

*send over. Its been 10 days now. Please send or confirm it no longer exists.*" (Gjovik, December 8 2023, 9:35pm).

6.     On December 8 2023, the US Department of Labor abruptly dismissed Gjovik's CERCLA and OSH Act charges, leaving Gjovik only 30 days to appeal the CERCLA charge (de novo hearing with OALJ) and 15 days to appeal the OSH Act charge. Gjovik's Second Amended Complaint ("SAC") and Opposition to Apple's Motion to Dismiss were also already due on December 21 2023. Also with a full time job, Gjovik had a lot to do.

7.     Apple's lawyers finally responded to Gjovik about her request for the Informed Consent Form on December 14 2023, with Orrick saying: "*Regarding your request for documents under Labor Code section 432, former employees are not permitted to seek documents under this section.[2] Given this authority, Apple will not be providing documents in response to your request. Please note, however, that some of the documents that otherwise would be encompassed in a Section 432 request will be produced during the federal court litigation.*" (Kate Juvinall, Orrick, December 14 2023, 3:25pm EST).

8.     Apple was arguing that because Apple fired Gjovik, citing the alleged contract post hoc, that Apple no longer had to give Gjovik a copy of the alleged contract, because Apple fired Gjovik, supposedly based on the contract, that she cannot have, – and all of which supposedly symbolizes Gjovik's "consent."

9.     Gjovik then replied: "*…I will also request a copy of the Face Gobbler ICF from Apple once more, now under contract law. Apple has cited that alleged Gobbler ICF in their defense, and claim it is evidence supporting their decision to terminate me. However, Apple has not provided me a copy of that document, and when I attempted to access that document prior to my termination, I could not -- the prior link said it no longer existed. If I was to sign such a thing, it assumably had obligations that lasted longer than 1 year, and thus statute of frauds is implicated. If there is no proof of signed document, then there is no contract....*" (Gjovik, December 14 2023, 8:06pm).

10.     With no reply, Gjovik added the next day: "*FYI, I talked with two people at CalDOL DIR today about Section 432 and both said it applies to ex-employees of California*

---

[2] Orrick: "See *Harper v. Charter Commc'ns, LLC*, No. 219CV00902WBSDMC, 2021 WL 603724, at *19 (E.D. Cal. Feb. 16, 2021) ("Because plaintiffs do not dispute that their requests for records were made after they were no longer employees, § 432 cannot apply here"); *Harris v. Best Buy Stores, L.P.*, No. 15-CV-00657-HSG, 2016 WL 4073327, at *10 (N.D. Cal. Aug. 1, 2016) (same)."

1    *employers. I'm now waiting for written confirmation from the California Labor Commissioner's*
2    *Office.*" (Gjovik, December 15 2023, 3:09pm).

3        11.    On December 18 2023, at 5:10pm EST, Apple's counsel at Orrick abruptly sent
4    Gjovik three emails between 5:10pm-5:25pm EST, without introduction or context.  Counsel
5    wrote: "*We are providing Apple's written disclosures and non-confidential document production*
6    *per General Order 71... Apple has additional responsive, confidential documents that it will*
7    *produce under an agreed-upon protective order. We have attached for your review a proposed*
8    *protective order based on the form Northern District order.*" (Kate Juvinall, Orrick, Dec 18
     2023, 5:16pm EST)

9        12.    Confused, Gjovik inquired: "*Can you please provide more context what this is*
10   *about. I thought discovery was pending because you filed a motion to dismiss, which has not yet*
11   *been decided upon -- and further the case management conference was cancelled and has not*
12   *yet been rescheduled.  You also recently declined my request for documents under Cal. Labor*
13   *Code... We haven't discussed initial disclosure timing or scope at all yet. If it was supposed to*
14   *begin now, there was no discussion, notice, or planning about it... Your email seems like an odd*
15   *way to initiate discovery and at the worst time possible for me... Please share more on what you*
16   *are trying to do here.*" (Gjovik, December 18 2023 7:24pm EST). [Indeed, Gjovik was
17   frantically trying to finish all of the legal research and writing for filings due in only three days,
     and Apple's counsel was notified of Gjovik's US DOL dismissals, so they knew this].

18       13.    Apple's Counsel responded on December 18 2023 saying: "*Hi Ashley, Northern*
19   *District General Order 71 is attached and linked [link].[3] It applies to all employment cases*
20   *alleging adverse action, with a few exceptions that do not apply here. GO 71 outlines certain*
21   *disclosures that parties must make. They are due 30 days after a defendant's responsive motion*
22   *or pleading, which is why Apple is providing them today. Judge Chen's standing orders (also*
23   *attached) both reference compliance with the Northern District's General Orders, and the*
24   *"EMC Standing Order Civil Discovery" specifically references GO 71. They are linked on*
25   *Judge Chen's webpage, which is here [link].[4] Further, General Orders and Standing Orders are*
26   *referenced/called out in the pro se litigant handbook (which is docket entry no. 5 on the ECF*
     *portal)."* (Kate Juvinall, Orrick, December 18 2023 8:06pm EST).

27
28

---

[3] Orrick: "https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_71_2-1-2020.pdf"
[4] Orrick: "https://www.cand.uscourts.gov/judges/chen-edward-m-emc/"

P'S OBJECTIONS TO D'S GO17 DEMAND | 3:23-CV-04597-EMC                     DECEMBER 29 2023

14.     Gjovik panicked. It was getting late and she already needed to pull another all-nighter to work on her legal filings, but she was now faced with an implied allegation from Apple Inc that she had missed a critical deadline for discovery in her lawsuit, there was no way she could complete it that day, and thus that could lead to sanctions or even getting her case dismissed. Thus, Gjovik spent over three hours (~8pm-11:30pm) frantically preparing documents and disclosures. Gjovik replied: "*I'm attaching several documents I was able to gather tonight as a starting point, and as a show of good faith, and to show my intention in satisfying the requirements of General Order 71... As for the remainder of most of the documents, I would like to consider ...the terms of the protective order prior to sharing them.*" (Gjovik, December 18 2023 11:31pm EST). Gjovik added,

> "In response to your message -- the Pro Se handbook mentions general orders and standing orders generally and says nothing about this. Judge Chen's standing orders also reference general orders and standing orders generally, and mentions General Order 71 by title and nothing more, nothing about timing. The Order Setting Initial Case Mgmt Conf Deadlines also does not mention this. Maybe I'm missing something in my quick reviewing these resources tonight, but otherwise I'm not sure what you intend to imply by citing those documents… I will also want to discuss, once I've had more time to review, which documents you will only release under a protective order. Since the documents you sent me today are almost entirely documents I already have, I assume you are requesting the protective order cover everything. I will need some time to look into the law to challenge that where I feel its reasonable to challenge. I will also need some time to review the proposed protective order as this is the first I'm seeing of this very complicated agreement."

(Gjovik, December 18 2023 11:31pm EST).

15.     Apple's Counsel replied to Gjovik's request for the Gobbler ICF, "*As you know, the federal rules of civil procedure allow you to request these types of documents during discovery after the Rule 26(f) conference occurs. We are not aware of any statute governing contracts that allows you to seek these types of documents outside of the formal discovery process. If you are referring to a specific statute, please send us the citation.*" (Kate Juvinall, Orrick, December 19 2023, 1:28pm EST). Apple, illogically said this while also claiming discovery started 30 days prior.

16.     Apple's Counsel replied to Gjovik's questions about the General Order: "*Apple's ... deadline to provide GO71 disclosures was yesterday, Monday, December 18. Additionally, we provided Judge Chen's standing orders and pointed you to the Pro Se Handbook in response to your comment that there was no notice regarding your obligation to provide disclosures*

5

*under GO71, with which we disagree. At this point, while your GO71 disclosures are already late, we appreciate you working to gather the information and documents and to produce them as promptly as you can*." (Kate Juvinall, Orrick, December 19 2023 7:35pm)

17.    Apple's Counsel contacted Gjovik past a deadline to essentially provide a request to Gjovik knowing they had put her in a situation where she would not be able to fulfill the request, and also not have time to investigate if the request was even legitimate. Apple implied Gjovik had missed a major deadline and could get in trouble with the Court, and a reasonable person in her shoes would feel pressured to quickly sign anything that needs signed and hand over as much evidence as quickly as possible. It was coercive and predatory.

18.    Gjovik asked Apple's Counsel on December 19 2023, "*Can you please respond directly to my inquiry as to what basis Apple is relying on to deny the Bane/Ralph/RICO employment GO71 releases because there's a pending MTD? I did not see that exception in the order. More files will be coming soon after my imminently due filings are submitted this week. I will also have some specific questions about some of the disclosures, substantively as well as what is being released when. Like, is Apple's position that the Gobbler NDA is not subject to GO71 disclosures? If so, why?*" (Gjovik, December 19 2023 8:19pm) Gjovik added, "*Per your reply to the other email chain today, I am still waiting for the Labor Commissioner's written statement on statutory analysis. I talked to their office again yesterday and they're working on it. Your response felt combative when I already told you I'm seeking an authoritative statement on the matter and that request is in progress. Further, transition statements like "as you know" aren't terribly relevant with me as I've never done this before and never planned to litigate, so I don't know….*" (Gjovik, December 19 2023 8:19pm)

19.    On December 20 2023, Apple's Counsel responded, "*Apple is not producing information that is subject to the pending motion to dismiss, as GO71 is focused on information about claims "at issue" in the lawsuit that concern alleged adverse employment action. Once the pleadings are finalized, we will reevaluate whether Apple needs to supplement its disclosures*." (Kate Juvinall, Orrick, December 20 2023 2:02pm). [Note: that's now how that works].

20.    So Apple's position was that as soon as they filed the Motion to Dismiss, they were going to act as if they already won the motion on every count, and as such decided to unilaterally reclassify Gjovik's lawsuit to an employment suit, and invoke a special type of

discovery with no warning whatsoever to Gjovik they were going to do so, while claiming that Gjovik missed deadlines she was never assigned.

21.    Gjovik, distressed, then redirected her attention to her many imminently due legal filings and did not have the time to return to this matter until Friday December 29 2021. Upon which, Gjovik quickly realized how egregious Apple's conduct was, including demands for unlawful secrecy agreements for records related to Gjovik's work conditions and the terms/conditions of her employment. Gjovik memorializes all of this here, and takes additional actions considering the escalating misconduct.

### III.    GENERAL ORDER 71

22.    The US District Court Northern District of California website explains that General Order 71 is " intended to supersede the parties' obligations to make initial disclosures pursuant to F.R.C.P. 26(a)(1)" **and that "Parties in cases to which the Protocols apply will find applicable language and instructions in the Initial Case Management Conference Scheduling Order in their case and on the case docket**."[5] The Order itself also explains that General Order 71 is for "employment cases" and even only "certain employment cases."[6] Searching the court dockets quickly reveals employment cases where General Order 71 notifications were filed to the docket to warn the parties of the obligation.[7] [Compare/contrast to Apple's Counsel's unilateral decision that this Order now applied to Gjovik's lawsuit].

23.    The protocols in General Order 71 "create a new category of information exchange, replacing initial disclosures with initial discovery specific to employment cases alleging adverse action." This obligation supersedes the parties' obligations to provide initial

---

[5] US District Court, Northern District of California, *Northern District Pilots Initial Discovery Protocols for Employment Cases Alleging Adverse Action*, 2018, https://web.archive.org/web/20180220143617/https://www.cand.uscourts.gov/news/223; *Northern District Renews One-Year Pilot of Initial Discovery Protocols for Employment Cases Alleging Adverse Action,* 2019, https://www.cand.uscourts.gov/notices/northern-district-renews-one-year-pilot-of-initial-discovery-protocols-for-employment-cases-alleging-adverse-action/
[6] US District Court, Northern District of California, *General Order 71*, https://www.cand.uscourts.gov/filelibrary/3308/GO_71_1-16-2018.pdf; Kevin M. Carlson, *The Use of Initial Discovery Protocols for Employment Cases Alleging Adverse Actions, Fed. Law.,* January/February 2014, at 47, 48; *Judge Chen Standing Orders*, https://www.cand.uscourts.gov/wp-content/uploads/judges/chen-emc/Standing-Order-Civil-General-REVISED-12-1-2022.pdf
[7] For Example: *Anoke v. Twitter, Inc*., 3:23-cv-02217, US District Court, N.D. California, Dock #15 (2023-) [442 employment discrimination case]; *Mobley v. Workday, Inc*., 3:23-cv-00770, US District Court, N.D. California, Dock #5 (2023-) [442 employment discrimination case]; *CA. Dept. of Fair Employment & Housing v. Cisco Systems, Inc.,* 5:20-cv-04374, US District Court, N.D. California, Dock #4 (2020) [442 employment discrimination case]; etc.

disclosures pursuant to F.R.C.P. 26(a)(1). The parties also then use the documents and information exchanged in accordance with the Initial Discovery Protocols to prepare the F.R.C.P. 26(f) discovery plan.[8] The General Order 71 discovery is provided by both sides within 30 days of the defendant's responsive pleading or motion.[9]

24.    Under the General Order 71 Protocols, the plaintiff's early discovery obligations are extensive.[10] Further, discovery deadlines are critical. The Courts webpage with "*Tips for Pro Se Filers*" warns: "It is very important that you know what is going on in your case and when you have deadlines. Meet every deadline. If you do not know exactly how to do something, try to get help, and do your best; it is more important that you turn things in on time than that you do everything perfectly. You can lose your case if you miss your deadlines."[11]

25.    Yet, Apple transmitted their supposed Initial Disclosures to Gjovik on December 18 2023 after 5pm EST (Gjovik's time zone). While concurrently surprising Gjovik with this request and activity, Apple's disclosures also started by objecting to "*each and every category*" they could possibly object that is protected by "*any applicable privilege*" and/or from sources that are "*not reasonably accessible*." Apple said generally they object "*to providing the documents and will not do so*."   Further, while General Order 71 supposedly has a scope of three years, Apple's "initial disclosures" only agreed to release communications about the facts and/or claims at issue in the lawsuit if the communications occurred from March 1 2021 and September 9 2021.[12] Apple also narrowed the documents they will share with Gjovik to communications between Gjovik and only 7 specific Apple employees (at least two of which no longer work at Apple). Because Gjovik would be on all of those emails, she likely already has a copy. It's also unclear why Helen Polkes and Tony Lagares were not included. [See, Apple's Initial Disclosures ("ID") pg8].

26.    As for pending claims/complaints with any shared facts as this lawsuit, Apple claimed there is only US Department of Labor and US NLRB. Apple fails to disclose the two

---

[8] Brittany K.T. Kauffman, *Initial Disclosures: The Past, Present, and Future of Discovery*, 51 Akron L. Rev. 783, 798 (2017).
[9] FJC, *Discovery Protocols for Employment Cases,*
https://www.fjc.gov/sites/default/files/2016/Discovery%20Protocols%20Employment.pdf
[10] Kevin M. Carlson, The Use of Initial Discovery Protocols for Employment Cases Alleging Adverse Actions, Fed. Law., January/February 2014, at 47, 48.
[11] US District Courts, Northern District of California, Tips for Pro Se Filers,
https://cand.uscourts.gov/pro-se-litigants/tips-for-pro-se-filers/
[12] US District Court, Northern District of California, *General Order 71*,
https://www.cand.uscourts.gov/filelibrary/3308/GO_71_1-16-2018.pdf ("For this Initial Discovery, the relevant time period begins three years before the date of the adverse action, unless otherwise specified.")

US EPA responses to Gjovik's complaints (CERCLA and RCRA/CAA), which Apple did respond to including having to allow mandatory site inspections and ordered correction actions/follow-ups. Apple also denied any records related to Gjovik's unemployment claim, despite the government agency reporting they contacted Apple about it at least twice.

27.    Apple also fails to mention Brad Reigel and Dan West in the list of her managers (Apple's ID pg2), and fails to provide any position descriptions for any of Gjovik's roles (*Id* at 5), or any documentation about Gjovik's move under Evan Buyze after Brad Reigel (*Id* at 3). Also when asked directly to provide a copy of any policies relevant to adverse actions taken against Gjovik, Apple does not even mention the Gobbler ICF, and as noted earlier, also refused repeatedly to provide Gjovik a copy of the document, despite supposedly quoting it directly in Counsel's March 4 2022 US Department of Labor Position Statement. Finally, Apple also failed to provide any addresses, phone numbers, or present/last known employment for all of the "persons" it listed.[13] (Note, Apple also listed all employees as current employees, yet at least two had left – and West had apparently been reassigned).

## IV.    FRCP INITIAL DISCLOSURES

28.    Gjovik's lawsuit here is a R.I.C.O. case. It is coded as R.I.C.O. on the cover sheet ("470 – RICO").[14] There was no notice on the case docket or in any Order filed to the docket mentioning General Order 71 or referring to Gjovik's lawsuit as an 'employment suit.' As such, Gjovik's lawsuit follows standard discovery procedures under FRCP 26.

29.    A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order.[15] Under Rule 26(d)(1), a party may not seek discovery prior to the parties' discovery conference under Rule 26(f), unless the court orders, or the parties agree to, expedited discovery. This time limitation applies to discovery sought from a nonparty pursuant to a subpoena under Rule 45 as well as to discovery of parties under the discovery rules.[16]

---

[13] US District Court, Northern District of California, *General Order 71*, https://www.cand.uscourts.gov/filelibrary/3308/GO_71_1-16-2018.pdf ("When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) present or last known place of employment; (iv) present or last known job title; and (v) relationship, if any, to the plaintiff or defendant.")
[14] CAND, Civil Cover Sheet, https://cand.uscourts.gov/wp-content/uploads/forms/civil-forms/JS-CAND-44_fillable_10-2020.pdf
[15] Rule 26. Duty to Disclose; General Provisions Governing Discovery, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 26
[16] 32 No. 6 Fed. Litigator NL 12

30.     Expedited discovery (like what Apple attempted to coerce Gjovik into) is not the norm, and a party seeking such discovery must make some prima facie showing of the need and good cause for the departure from usual discovery procedures. The party must show (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the other party (Gjovik) will suffer if expedited relief is granted.[17]

31.     Once its time to start discovery, in favoring litigants' rights to broad pretrial discovery, the courts apply a standard of substantial liberality in providing access to information, documents, and materials. The goal of the discovery process is full disclosure, and thus liberal discovery is favored.[18]

## V.     DISCOVERY PROTECTIVE ORDERS

32.     Generally, a party may publicly disseminate materials produced during discovery so long as there is no protective order directing otherwise. Under F.R.C.P. 26(c), a party seeking to protect information from discovery or dissemination must show good cause. "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."[19]

33.     Under the First Amendment, the press and the public have a presumed right of access to court proceedings and documents that can be overcome only by an overriding right or interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Further, in many states it is unlawful and a violation of public policy to enter any order that has the purpose or effect of concealing information about a public hazard.[20]  (Meanwhile, safety and environmental hazards are the core of Gjovik's lawsuit).

34.     "Parties simply have no authority to contractually waive the public's interest in disclosure of information regarding public health and safety hazards."[21] Some confidentiality

---

[17] § 26:25. Expedited discovery, 10 Fed. Proc., L. Ed. § 26:25*; Yokohama Tire Corp. v. Dealers Tire Supply, Inc.,* 202 F.R.D. 612 (D. Ariz. 2001)
[18] 27 C.J.S. Discovery § 7
[19] *Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1130.) "Simply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents does not satisfy the burden." (*Kamakana v. City and County of Honolulu* (9th Cir. 2006) 447 F.3d 1172, 1184.)
[20] Fla. Stat. Ann. § 69.081; Wash. Rev. Code § 4.24.611(2); Tex. R. Civ. P. 76a.
[21] Walter W. Heiser, *Public Access to Confidential Discovery: The California Perspective*, 35 W. St. U. L. Rev. 55, 68–69 (2007); Cf. Mary R. v. B. & R. Corp., 149 Cal. App. 3d 308, 314-315 (Cal. Super.

1    orders should be denied. Even information concerning the hazardous nature of a consumer

2    product cannot be a trade secret.[22] In some cases, there may be no legitimate need for

3    confidentiality. More importantly, if information bears on public health or safety, then a court

4    should balance the need for confidentiality against the public interest in disclosure, and it should

5    deny the protective order if the protective order is unjustified under the circumstances.[23]

6        35.    A strong common-law presumption of access attaches to pretrial documents

submitted in connection with litigation, including all material filed in connection with non-

7    discovery pretrial motions, whether these motions are case dispositive or not.[24] Merely

8    embarrassing information that details corporate mismanagement or the injuries occurring from a

9    faulty product is not entitled to protection.[25] The mere fact that documents are proprietary is not

10   necessarily justification for confidentiality.[26]

11       36.    Examples of narrow categories of information for a protection order could

12   include Trade Secrets (under the Uniform Trade Secrets Act), research and development of a

13   highly competitive sensitive nature, and/or personal information protected by state and/or federal

---

App. Dept. 1983) (holding stipulated confidentiality order that prohibited the parties from discussing alleged sexual molestation by a physician with anyone, including the state agency charged with policing the medical profession, violated public policy).

[22] *Rucklehaus v. Monsanto Co.* (1984) 467 U.S. 986, 1011 n.15 ["If…a public disclosure of data reveals, for example, the harmful side effects of the submitter's product [that] cannot constitute the taking of a trade secret."].

[23] Howard M. Erichson, *Court-Ordered Confidentiality in Discovery*, 81 Chi.-Kent L. Rev. 357, 368–69 (2006); See *Shingara v. Skiles*, 420 F.3d 301, 307-08 (3d Cir. 2005) (vacating **protective order** based in part on "the fact that this case involves public officials and issues important to the public"); Sedona Guidelines, supra note 11, at 201 ("In determining whether good cause exists to issue or uphold a **protective order** under Fed. R. Civ. P. 26(c), a court is required to balance the parties' asserted interest in privacy or confidentiality against the public interest in disclosure of information of legitimate public concern.").

[24] § 26:351. Common-law right of access to pretrial material, judicial records, and discovery material, 10A Fed. Proc., L. Ed. § 26:351; Fed. R. Civ. P. 26(c). *Ground Zero Center for Non-Violent Action v. United States Department of Navy,* 860 F.3d 1244 (9th Cir. 2017). § 20:1. Motion for protective order, 2 Discovery Proceedings in Federal Court § 20:1 (3d ed.); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1213 (9th Cir. 2002); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17, 38 Fed. R. Serv. 2d 1606 (1984).

[25] See *Kamakana v. City and County of Honolulu* (9th Cir. 2006) 447 F.3d 1172, 1179 ["[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."]

[26] For example, a federal court in Kentucky rejected Home Depot's argument that its training manuals and standard operating procedures should be protected. (*Mitchell v. Home Depot U.S.A.* (W.D. Ky. Jun. 14, 2012) No. 3:11-CV-332, 2012 WL 2192279, *5.)

law and where disclosure of that information would be highly offensive to a reasonable person and is not of public concern.[27]

37.    Defendants should not be permitted to convert information that was previously publicly available into "confidential" information through the use of a protective order. If documents produced in discovery were also acquired outside the discovery process, those cannot be made confidential. The same is true for information obtainable under the Freedom of Information Act or state sunshine laws. And any information that has been widely disseminated (even within an organization or corporation) is not worthy of confidential designation, as it cannot be considered a trade secret. While the Protective Order mostly aligns with the Model version on the CAND website, Apple's interpretation of the Order per it's Initial Disclosures document is untenable.

## VI.    APPLE'S OVERBROAD DISCLOSURES + PROTECTIVE ORDER

38.    Apple's draft Protection Order defined "*Confidential*" as "*information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).*" It defined "*Protected Material*" as "*any Disclosure or Discovery Material that is designated as "Confidential.*" (Pg3.)

39.    It claimed the scope was of the Order covered "Protected Materials" and also "*any information copied or extracted from Protected Material… all copies, excerpts, summaries, or compilations of Protected materials,*" and "*any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.*"

40.    It also included an exception the Order would not cover "any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order." (Pg3-4) However, the Order prohibits the disclosure of information and items designated "Confidential" with only the exception of Party's, their lawyers, Experts, the Court and personnel, jurors, witnesses" and anyone who already knows or who created it. (Pg7-8). Further, Gjovik had many of these documents already, and also made many public, but now if she entered the agreement with Apple, she could no longer make anymore public.

---

[27] FRCP 26(c)(1)(G); *see Sega Enters. v. Accolade, Inc*., 977 F.2d 1510, 1532 (9th Cir.1993); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir.1994); *Julius M. Ames Co. v. Bostitch, Inc*., 235 F.Supp. 856, 857 (S.D.N.Y.1964).

41.     Under Apple's proposed Order, if Gjovik wanted to file "Protected Material" information to the public record, she must request to file it sealed, and if denied by the Court, then she may file the information to the public record. Sealing is intended for information that is "*privileged, protectable as a trade secret, or otherwise entitled to protection under the law."* (Pg 10). That is an incredible amount of secrecy. Further, the duration of the secrecy can be indefinite. "*Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs*." (Pg4)

42.     The order, based on a Model Order explains that parties must take care to limit any "confidential" designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order." (Pg4). However, Apple's application of the Order ignores the policy and violates this rule egregiously.

43.     Litigants often seek to use discovery information obtained in one case to prepare and develop another related case. The concept known as "discovery sharing" flows from a basic, uncontested proposition: Litigants may freely distribute discovery information unless a valid court order forbids them from doing so. Plaintiffs' attorneys typically contend that sharing information between similar cases allows them to avoid wastefully reinventing the wheel by repeatedly conducting virtually identical discovery. Beyond these efficiency gains, sharing proponents contend that exchanging information allows isolated plaintiffs to prepare cases collaboratively, leveling the playing field with large law firms and national collaboration on the other side of the docket. Sharing also increases discovery accountability by allowing parties to compare discovery responses against responses in a similar case.[28]

44.     However, Apple added to the draft Protection Order: "Pursuant to Fed. R. Evid. 502(d), the production of a privileged … document[s], whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  Apple's attempted to block Gjovik from using this discovery material in her other active cases against Apple.

---

[28] Dustin B. Benham, *Proportionality, Pretrial Confidentiality, and Discovery Sharing*, 71 Wash. & Lee L. Rev. 2181, 2198–99 (2014)

1

2          VII.    APPLE'S VIOLATIONS OF THE NLRA AND CAL. LABOR CODE

3          45.    In Apple's "Initial Disclosures" they note several categories and examples of

4   documents which they said they will only release to Gjovik "*pursuant to a Protective Order*."

5   As mentioned, Apple's draft Protective Order prohibits Gjovik from sharing any of the

6   information covered, and Apple declares that information is its property and Gjovik must

7   destroy her copies of that information after the litigation, never speak of it again, and if Gjovik

8   was to leak the information, Gjovik could be found in contempt of court and face sanctions.

9          46.    Meanwhile, Apple's examples of this "Protected Material" include:

10  -   "All communications concerning the factual allegations or claims at issue in this lawsuit
        among or between: (i) [Gjovik] and [Apple]; (ii) [Gjovik's] manager(s), and/or
11      supervisor(s), and/or [Apple's] human resources representative(s)." (pg1-2)

12  -   "[Gjovik's] performance evaluations and formal discipline." (pg4)
    -   "Documents relied on to make the decision to terminate [Gjovik's] employment." (Pg4)
13  -   Apple's employee "Misconduct and Discipline Policy" (pg4)
    -   "Non-privileged documents showing [Gjovik's] compensation and benefits from during
14      her employment with Defendant," pg5
15  -   "Non-privileged documents relied upon to make the employment decision(s) at issue in
        this lawsuit," (pg4).
16  -   "Responsive, non-privileged, non-work-product documents that are directly related to
        Plaintiff's alleged wrongful termination," (Pg6)
17

18         47.    Note: the majority of these topics are protected content under the NLRA and

19  California Labor Codes. It would be against public policy, and the law, to declare these topics

20  are secret and that Gjovik cannot talk about them.[29] (see Labor Code § 1198.5, § 432, etc). The

21  NLRA may find violations of federal labor law even in legal filings under certain factual

22  scenarios.[30]

23

24  _____

    [29] Worker.gov, Social Media Activity, ("You have the right to join with coworkers to address
25  conditions at work. You have the right to form, join, or assist a labor organization for collective
    bargaining purposes or work together with coworkers to improve terms and conditions of
26  employment. This protection extends to certain work-related conversations on social media. For
    example, employees have a right to address work-related issues and share information about pay,
27  benefits, and working conditions with coworkers on social media platforms like Facebook,
    Twitter, YouTube and others. You can't be fired, disciplined, demoted, or penalized in any way for
28  engaging in these activities..") https://www.worker.gov/social-media-activity
    [30] *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731 (1983)

                                                14

48.     Apple's drafted Protection Order suggested Gjovik sign her name to say she "acknowledge[s] and declare[s] that [she has] received a copy of the Protective Order ("Order") in *Ashley Gjovik v. Apple Inc*., United States District Court, Northern District of California, San Francisco Division, Civil Action No. 23-cv-4597-EMC. Having read and understood the terms of the Order, [she] agree[s] to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of  any proceeding to enforce the terms of the Order." (Exhibit A).

49.     Apple wrote to Gjovik on December 18 2023, attaching the draft Protection Order and their Initial Disclosures: "*We are providing Apple's written disclosures and non-confidential document production per General Order 71. ... Apple has additional responsive, confidential documents that it will produce under an agreed-upon protective order. We have attached for your review a proposed protective order based on the form Northern District order. Please let us know if you have any comments or proposed revisions*."

50.     The NLRB already found merit that Apple's employment policies violate federal law.[31] However, where those policies once only threatened a breach of contract lawsuit against the worker, now the employer wants to put the employee at risk of Sanctions and Contempt, if she was to speak about the same topics and even identical documents.

51.     Even if Gjovik wanted to enter this agreement with Apple on current terms, which she does not: "One who breaches a contract risks being sued in a breach of contract action. One who violates a court order, however, is subject to contempt; Parties should not have the power to turn their own contracts into court orders, enforceable by the power of contempt."[32]

52.     This is not to say there should not be any protective order for discovery during this lawsuit. Complex corporate litigation often requires some sort of protective order. However, protective orders cannot be so broad (facially or as applied) as to violate the law and/or public policy. Further, its illogical to agree to a complicated Protection Order prior initial disclosures or the first case management meet and confer, or before Defendant files an answer, and to plan to predominantly use the Order to hide and silence the Plaintiff about her work conditions, complaints of unlawful actions taken by the employer, and the terms and condition of her employment. In fact, that is likely illegal.

---

[31] TechCrunch, *Labor officials found that Apple execs infringed on workers' rights*, Jan. 30 2023, https://techcrunch.com/2023/01/30/labor-officials-found-that-apple-execs-infringed-on-workers-rights/
[32] Howard M. Erichson, *Court-Ordered Confidentiality in Discovery*, 81 Chi.-Kent L. Rev. 357, 371–72 (2006)

53.     This comes after Apple's coercive statements in its November 16 2023 Motion to Dismiss. Gjovik's First Amended Complaint claimed a violation of Cal. Labor Code §§ 98.6/96k. Gjovik wrote, "*Under Labor Code Section 96(k), Apple may not demote, suspend, discharge from employment, threaten discharge, or otherwise discriminate against any employee for lawful conduct occurring during nonworking hours away from the employer's premises when that conduct involves exercise of a "recognized constitutional right" and/or a right protected by the Labor Code… The fact Gjovik was posting about work conditions in her personal time does not transform Gjovik's personal time into work time*."[33] (Gjovik, FAC, pg 290, October 25 2023).

54.     In response, Apple's Counsel wrote: "to state a Section 98.6 claim predicated on an alleged violation of Section 96(k), Plaintiff must allege that she was terminated because she asserted a recognized constitutional right … Plaintiff alleges only that she asserted the right to "free speech," but free speech is an insufficient basis to state a claim. Specifically, Plaintiff alleges Apple retaliated against her for "asserting 'recognized constitutional rights' (free speech, speaking about work conditions, protesting unlawful conduct, protesting unlawful surveillance and unfair business practices), occurring during nonworking hours (while she was on leave), away from Apple's premises." FAC ¶988. Under well-established case law, "a private employee [like Plaintiff] has no recognized constitutional protection from termination by a private employer [like Apple] based on speech."[34] (Orrick, *Motion to Dismiss*, November 16 2023). Apple equates "free speech" to "speaking about work conditions" and declares both as unprotected and employees can be fired for their speech.

55.     In footnotes, Apple then suggests the Court strike Gjovik's claim about being supposedly terminated due to her speech about work conditions and the terms/conditions of her employment. Counsel writes, "*In the alternative, Apple moves to strike Plaintiff's Section 98.6 claim predicated on a Section 96(k) violation as immaterial under FRCP 12(f). Rule 12(f) permits a Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter…Barajas v. Carriage Servs., Inc., 2020 WL 1189854, at *5 (N.D. Cal. Mar. 12, 2020) ("[M]options to strike are proper, even if the material is not prejudicial to the moving*

---

[33] *Ashley Gjovik v Apple Inc*, Case 3:23-cv-04597-EMC, Document #17, Plaintiff's First Amended Complaint, Filed 10/25/23, pg 290.
[34] *Ashley Gjovik v Apple Inc*, Case 3:23-cv-04597-EMC, Document #30, Defendant Apple's Motion to Dismiss, Filed 11/16/23, pg 30.

*party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action.").[35]* (Orrick, *Motion to Dismiss*, November 16 2023).

56.     Apple's explanation for terminating Gjovik is that it punished Gjovik for Gjovik speaking publicly, in her own time, outside of work, about work conditions. Apple views Gjovik's right as a worker to speak publicly about the terms and conditions of her employment as…Immaterial? Impertinent? ***Scandalous***? All of these adjectives likely violate the law.

57.     Apple, via its Counsel as its agent, irritated and aggitated the NATIONAL LABOR RELATIONS ACT with multiple Section 8(a)(1) and 8(a)(4) violations. Apple's proposed Protection Order would potentially make it unlawful for Gjovik to testify in an open NLRB case against Apple's employment policies, including the Misconduct and Discipline policy (it is literally an exhibit on Gjovik's affidavit). Apple's statements addressed here also likely violate Cal. Labor Code §§ 1102.5, 232.5, and 98.6, as noted in Gjovik's Opposition to Apple's motion to dismiss.

## VIII.   CONCLUSION

58.     When prompted if there are "*Any other document(s) upon which [Apple] relies to support the defenses, affirmative defenses, and counterclaims, including any other document(s) describing the reasons for the adverse action [against Gjovik],*" Apple responded that ***"There is no operative answer on file."*** (pg6)

59.     Apple added in the Initial Disclosures: "*Defendant's investigation of [Gjovik's] claims is ongoing and Defendant reserves the right to amend this response….*" (pg7) It is over two years after Apple fired Gjovik and Apple still has not come up with a reasonable or consistent explanation as to why it retaliated against Gjovik and terminated her employment.

60.     Further, until the December 18 2023 document, Apple had not admitted who supposedly made the decision to terminate Gjovik. Apple now claimed it was solely Yannick Bertolus, conveniently two months after Bertolus "retired" from Apple.[36]  In fact, Apple nominates seven people as key witnesses (for unknown reasons excusing Polkes, Lagares, and

---

[35] *Ashley Gjovik v Apple Inc*, Case 3:23-cv-04597-EMC, Document #30, Defendant Apple's Motion to Dismiss, Filed 11/16/23, pg 30.
[36] Bloomberg, *A top Apple hardware executives has left the company*, October 15 2023, **("**Yannick Bertolus, a vice president of hardware engineering, has retired. He reported directly to hardware chief John Ternus, as well as Ternus' predecessor, Dan Riccio. For over a decade, Bertolus was in charge of product quality and testing but was shifted last year to a role as the company's top hardware product manager.") https://www.bloomberg.com/news/newsletters/2023-10-15/apple-october-2023-executive-promotions-new-vps-of-retail-software-operations-lnrh4t94

Apple's two tipsters noted in the March 4 2022 Position Statement), and of the people mentioned, at least ~29% are no longer employees at Apple.

61.    In a complex lawsuit such as this one, now is the time to establish a firm schedule for the filing and hearing of responsive pleadings, including motions under F.R.C.P. 9(b), 12, and 56. Now is the time to consider staying formal discovery pending resolution of motions challenging jurisdiction and concurrent litigation (such as the concurrent criminal federal and state District Attorney cases), and conflict of law with the other cases/claims.[37] Apple should focus on its Answer (which is due 21 days from 12/21/2023), then focus on the Case Management Conference and Statement, and then start to engage in discovery. Apple's blitzkrieg of early discovery demands and coercive gag orders requested against Gjovik helped no one and only delayed Gjovik's progress on her filings, leaving her distressed, distracted, and submitting an unfinished SAC.

---

[37] 35.32. Initial Conference, Ann. Manual Complex Lit. § 35.32 (4th ed.)

# Exhibit C

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
| --- | --- |
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Apple Inc | | b. Tel. No.<br>(408) 996-1010 |
| --- | --- | --- |
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way<br><br>CA Cupertino 95014 | e. Employer Representative<br>Tim Cook<br>CEO | g. e-mail<br>tcook@apple.com |
| | | h. Number of workers employed<br>300 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Technology | j. Identify principal product or service | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections) 1,4                                                of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the

meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Ashley Marie Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No.<br>███████ |
| --- | --- |
| ██████████ | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-mail<br>ashleymgjovik@protonmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION
I declare that I have read the above charge and that the statements
are true to the best of my knowledge and belief.

| *(signature of representative or person making charge)* | Ashley Marie Gjovik<br>*(Print/type name and title or office, if any)* | Tel. No.<br>███████ |
| --- | --- | --- |
| | | Office, if any, Cell No. |
| | | Fax No. |
| Address ███████████ | Date 07/10/2024 05:20:24 AM | e-mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 07/07/2024 |
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 06/25/2024 |
| Ashley Gjovik | Intimidation and Interference | 06/20/2024 |
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 07/05/2024 |
| Ashley Gjovik | False Allegations | 07/05/2024 |
| Ashley Gjovik | Harassment | 06/20/2024 |
| Ashley Gjovik | Threat of Interrogation | 07/07/2024 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 07/07/2024 |
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 06/25/2024 |
| Ashley Gjovik | Intimidation and Interference | 06/20/2024 |
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 07/05/2024 |
| Ashley Gjovik | False Allegations | 07/05/2024 |
| Ashley Gjovik | Threat of Interrogation | 07/07/2024 |
| Ashley Gjovik | Harassment | 06/20/2024 |

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threats, Intimidation, Coercion, | 07/07/2024 |

| | Interference | |
|---|---|---|
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 06/25/2024 |
| Ashley Gjovik | Intimidation and Interference | 06/20/2024 |
| Ashley Gjovik | Threats, Intimidation, Coercion, Interference | 07/05/2024 |
| Ashley Gjovik | False Allegations | 07/05/2024 |
| Ashley Gjovik | Threat of Interrogation | 07/07/2024 |
| Ashley Gjovik | Harassment | 06/20/2024 |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| **Work Rule** |
|---|
| Claimed EH&S issues are confidential/trade secret |
| Claimed vapor intrusion test results are secret |
| Claimed EH&S at 825 Stewart is confidential |
| Claimed Gobbler is confidential |
| Claimed wanting to scan my ears is confidential |
| Claimed indoor air quality at 825Stewart is secret |
| Required conversations occur "without any witness" |

## Additional Information in Support of Charge

**Charging Party Name :** Ashley Marie Gjovik
**Inquiry Number :** 1-3506347791
**Date Submitted :** 07/10/2024 05:20:24 AM

Please provide a brief description of the specific conduct involved in your charge. The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed. After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

**Additional Information Provided:**

On June 20 2024, Apple via their counsel as agents (Orrick), proposed a joint legal filing, to be filed by them and Charing Party (CP) to an official record, claiming that CP believes she is subject to the farcical discovery process they attempted to deceive her with in December 2023 and which is a main subject of NLRB Charge No. 01-CA-332897, which alleges their actions violated federal law. Counsel thus implies that CP filed and continues to participate in the NLRB inquiry into 01-CA-332897 in bad faith, and attempted to coerce her to admit such in a federal legal filing to a Judge.

On June 25 2024, Apple and CP held a meet/confer on Zoom. Apple's counsel requested there be no witnesses or court reporter, and CP agreed for the first time since August 2021. During the meeting Apple threatened CP regarding Protective Orders and retaliated against Complainant for requesting specific written protections about her right to share information related to public safety without any approval process. There were additional threats and intimidation.

On July 5 2024, Apple filed an Opposition to CP's Motion to Compel in the DOL OALJ environmental whistleblower case where they made numerous false allegations against her including about the Zoom meeting, and again attempted to claim she was subject to their fascial discovery process, was acting in bad faith, and was lying to a Judge. In this filing, Apple also implies that any evidence to support CP's concerns about environmental and safety issues at her office, and illegal surveillance & experiments, may be "confidential, proprietary, and/or trade secret" - implicitly asking for the Protective Order.

On July 7 2024, Apple lied again about the June 25 meeting, denying CP's version of events. (Note: CP recorded this call, expecting they would violate the NLRA again, and Apple did). Apple also now demands they will only meet/confer with CP if there are "no witnesses" or record, after lying about their prior meeting.

# Exhibit D

# Re: Your latest NLRB charge

| From | legal@ashleygjovik.com <legal@ashleygjovik.com> |
|------|---|
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Mantoan, Kathryn G.<kmantoan@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Juvinall, Kate<kjuvinall@orrick.com>, Riechert, Melinda<mriechert@orrick.com> |
| Date | Monday, July 15th, 2024 at 6:25 PM |

Hello Apple's lawyers,

Respectfully, I think you're confused. Last year, the NLRB made clear that the NLRA pre-empts two party consent laws when the recording is PCA. It sounds like you may not understand the legal precedent, as the question is not if the subject of the recording is PCA (though I'd argue that meeting was PCA based on some of the things we discussed) -- but the question as to whether a recording is PCA or not, is a contextual question about if the act of recording itself is PCA. One example of recordings as PCA is workers recording a meeting or conversation with the employer (who you are an agent of) in order to gather and preserve evidence to be used in a NLRB proceeding and/or grievance, for example capturing evidence of unfair labor practices (violations of federal law) -- which is what occurred here.

The only audience for the recording I captured is the NLRB. (and maybe US DOL if they decide to follow US NLRB's ruling as well). The recording has not been shared with anyone else and I have no plan to share with anyone else other than NLRB (and maybe DOL). Even if its used as evidence in an agency trial, I believe you / Morgan Lewis will have an opportunity to lobby that it be sealed. I probably would not oppose your request.

The meeting was not solely about the civil lawsuit. The NLRB was mentioned three times, Dept of Labor was mentioned five times, labor and human rights were mentioned five times, protected speech under labor laws was mentioned eight times, protective orders were mentioned 15 times, and confidential was mentioned 45 times. That discussion also included a threat made to me that you might get the US Judge to issue the type of blanket protective order I've been protesting if I don't voluntarily agree to it prior - which is absolutely relevant to 01-CA-332897 and I have already alleged it was another ULP.

The Google case you cited is completely different in that the party published the recording publicly on social media. I have not published the recording to social media. Similarly, you cited two other cases were the recording was done "illegally," but here, as it is a recording for NLRB, its not illegal. Again, I have not shared the recording with anyone, especially on social media, and it is solely intended to be evidence for the NLRB (a federal agency). Because the only audience for the recording is NLRB, you are thus demanding I delete evidence to be used in an NLRB proceeding. I believe that's actually a federal crime?

You are also threatening me that you will try to manipulate the US Judge to force me to delete evidence and get him to assist you in interfering with the pending NLRB proceeding - which is probably a violation of both NLRA and federal criminal law, at the same time. You also cannot unilaterally inform me that I am / was not engaging in PCA under the NLRA, and I believe that statement is likely also another violation of federal law.

I will be amending charge 01-CA-345931 to add additional claims of violations of 8(a)(1) and 8(a)(4) based on the email you sent at 5:24 pm EST today. I've already forwarded your email to the NLRB investigator as well.

Here's some references to help you get up to speed on NLRA recording protection developments:

*NLRB hearing against Starbucks begins with judge OKing secret recording of company meeting*
https://www.wbfo.org/business-economy/2022-07-12/nlrb-hearing-against-starbucks-begins-with-judge-oking-secret-recording-of-company-meeting

*NLRB Punches Holes in No-Recording Policies*
https://labornotes.org/blogs/2023/02/nlrb-punches-holes-no-recording-policies

*Say What? NLRB Rules Employees May Tape Record Others in Violation of State Law.*
https://www.laboremploymentreport.com/2023/03/10/say-what-nlrb-rules-employees-may-tape-record-others-in-violation-of-state-law/

*Employees Have Legally Protected Reasons to Record Workplace Activities*
https://www.levyemploymentlaw.com/employees-have-legally-protected-reasons-to-record-workplace-activities/

If you insist on raising this issue to Judge Chen tomorrow, I ask that you please file a motion with your request and give me an opportunity to respond in a meaningful way, including attaching exhibits of evidence to my response in order to support my position (ie, the NLRB charges, our emails, etc.). If you really believe that Judge Chen would force me to destroy legally obtained evidence for another proceeding, and fully understanding that's what he is doing - then you should not have any issue documenting your request in writing and filing it to the public docket.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, July 15th, 2024 at 5:18 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> I was shocked to read in your latest NLRB charge that you had recorded our meet and confer call.  I did not give you permission to record the call, and you did not tell me you were recording the call.  As you know, this is a violation of California Penal Code Section 632 which provides:

, "anyone who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record it, or to use a telegraph, telephone, or another device, will be punished by a fine up to $2,500 per violation, or up to one year ...

We intend to bring this to the attention of Judge Chen at the upcoming Case Management Conference and request that Judge Chen order you to delete all recordings and cease any further recordings. *Stebbins v. Google LLC*, 2023 WL 6139454, at *3 (N.D. Cal. Aug. 31, 2023) (pro se plaintiff who recorded the "parties' meet and confer prior to a Rule 26(f) scheduling conference" and posted it to YouTube was "ordered to immediately remove the recording from YouTube, delete copies of this or any recording Plaintiff has retained between Plaintiff and Defendant, and cease any future recording" and warned that "[f]ailure to comply with the Court's order may result in terminating sanctions with prejudice"); *Ewing v. Aliera Healthcare*, 2019 WL 3778746, at *3 (S.D. Cal. Aug. 12, 2019) (ordering plaintiff to cease any recording of conversations between Plaintiff and defense counsel moving forward in this litigation); *see also Focally LLC v. Win Elements*, LLC, No. EDCV212105JGBKKX, 2022 WL 17078436, at *9 (C.D. Cal. Nov. 2, 2022), *appeal dismissed sub nom. Yondr, Inc. v. Win Elements, LLC*, 2023 WL 2213184 (9th Cir. Jan. 10, 2023), *and vacated sub nom. Yondr, Inc. v. Win Elements LLC*, 2023 WL 9743749 (C.D. Cal. July 21, 2023) (pro se plaintiff who illegally recorded a meet and conference in violation of California Penal Code § 632 committed sanctionable misconduct).

You were not engaging in concerted protected activity under the National Labor Relations Act when we were having our meet and confer call in connection with your federal lawsuit against Apple.  In any event the NLRB's interpretation of the NLRA doesn't trump an Article III judge's ability to regulate activity connected to a case pending in Federal Court.

**Melinda Riechert**

Partner

Orrick
Silicon Valley

T 650/614-7423
M 6507591929
mriechert@orrick.com



---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**Exhibit E**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State, Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| **Ashley Gjovik** <ashleymgjovik@protonmail.com> **2108 N ST STE 4553 Sacramento, CA 95816** | |

TELEPHONE NO.: **415-964-6272**    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* **Ashley M. Gjovik**

**United States District Court, Northern District of California**

STREET ADDRESS: **450 Golden Gate Ave. 16th Floor**

MAILING ADDRESS: **450 Golden Gate Ave. 16th Floor**

CITY AND ZIP CODE: **San Francisco 94102**

BRANCH NAME: **Phillip Burton Federal Building**

| PLAINTIFF/PETITIONER: **Ashley M. Gjovik** | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: **Apple Inc.** | **3:23-cv-04597-EMC** |

| **PROOF OF SERVICE (CIVIL)** | HEARING DATE/TIME: | HEARING DEPT./DIV.: | Ref. No. or File No.: |
|---|---|---|---|
| | | | **ChambersCopies20250211** |

**BY FAX**

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of *(specify documents):*
**PLAINTIFF'S DECLARATION & REQUEST FOR TELEPHONIC CONFERENCE; ATTACHMENT A; PROSPED ORDER GRANTING PLAINTIFF'S REQUEST FOR A TELEPHONIC CONFERENCE; REQUEST FOR PRODUCTION - DISCOVERY DISPUTE; PROPOSED ORDER DISCOVERY DISPUTE; DISCLOSURES - DISCOVERY DISPUTE; PRIVILEGE & PLANNING - DISCOVERY DISPUTE; PROPOSED ORDER DISCOVERY DISPUTE: CONFIDENTIALITY, PRIVLEDGE, & PLANNING**

3. a. Party served *(specify name of party as shown on documents served):*
   **United States District Court Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse**

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b whom substituted service was made) *(specify name and relationship to the party named in item 3a ):*
   **Angela H, I delivered the documents to Angela H who identified themselves as the person authorized to accept with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 45-55 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.**

4. Address where the party was served:
   **1301 Clay St, Suite 400 S, Oakland, CA 94612**

5. I served the party *(check proper box)*

   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **02/18/2025** at *(time):* **11:26 AM**

   b. [ ] **by substituted service.** On *(date):*        at *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* from *(city):*        or [ ] a declaration of mailing is attached.

Code of Civil Procedure. § 1011

**PROOF OF SERVICE (CIVIL)**

Tracking #: **0159033973**

REF: **ChambersCopies20250211**

| PLAINTIFF/PETITIONER: Ashley M. Gjovik | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Apple Inc. | 3:23-cv-04597-EMC |

(5) ☐    I attach a **declaration of diligence** stating actions taken first to attempt personal service.

c. ☐    **by mail and acknowledgement of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

     (1) on *(date):*                        (2) from *(city):*

     (3) ☐    with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30)

     (4) ☐    to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐    **by other means** *(specify means of service and authorizing code section):*

     ☐    Additional page describing service is attached.

6.   **Person who served papers**

   a. Name:                **Shahid Hussain**
   b. Address:            **1710 Ward St, Apt D, Berkeley, CA 94703**
   c. Telephone number:    **510-309-7609**
   d. The fee for service was: **$ 75.00**
   e. I am:

     (1) ☐   not a registered California process server.

     (2) ☐   exempt from registration under Business and Professions Code section 22350(b).

     (3) ☒   registered California process server:

         (i) ☐ owner   ☐ employee   ☒ independent contractor.    For:      **ABC Legal Services, LLC**

         (ii) ☒ Registration No.: **1659**              Registration #: **6779**

         (iii) ☒ County:     **Alameda County**           County:     **Los Angeles**

**BY FAX**

7. ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

8. ☐   **I am a California sheriff or marshal and I certify** that the foregoing is true and correct.

Date: 02/18/2025

**Shahid Hussain**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                                (SIGNATURE)



REF: **ChambersCopies20250211**

 **Invoice**

Pay now at abclegal.com | ABC Legal Services, LLC | 1099 Stewart St, Suite 700, Seattle, WA 98101 | 206-521-9000 | ar@abclegal.com | Tax ID: 91-1153514

**BILL TO:**

**Ashley Gjovik <ashleymgjovik@protonmail.com>**
**2108 N ST STE 4553**
**Sacramento, CA 95816**

| | |
|---|---|
| INVOICE# | ▊▊▊▊▊ |
| DATE | Feb 12, 2025 |
| ACCOUNT# | 169031 |
| ATTENTION | ashleymgjovik@protonmail.com |
| REFERENCE# | ChambersCopies20250211 |

**AMOUNT DUE**  **$ 0.00**

CASE #      N/A
CASE TITLE   N/A
COURT       N/A

**SERVICES PERFORMED**

| DESCRIPTION | NOTE | AMOUNT |
|---|---|---|
| **Prepare Suit** | | |
| Process Service - Web Upload | Uploaded File(s): GjovikvAppleChambersCopiesDiscoveryDispute.pdf<br>Rush Requested: No<br>Parties To Serve: 1 | 75.00 |
| | | |
| | SUBTOTAL | $ 75.00 |
| | SALES TAX | $ 0.00 |
| | **TOTAL CHARGES** | **$ 75.00** |

**PAYMENTS**

| SOURCE | DATE | AMOUNT |
|---|---|---|
| ▊▊▊▊▊▊ | February 12, 2025 | 75.00 |
| | | |
| | **AMOUNT PAID** | **$ 75.00** |

| | **AMOUNT DUE** | **$ 0.00** |
|---|---|---|

OFFICIAL PROCESS SERVER TO U.S. DEPARTMENT OF JUSTICE AND U.S. STATE DEPARTMENT    Page 1 of 1