**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | Case No. 3:23-CV-04597-EMC |
| | Ninth Circuit No. 24-6058 |
| Plaintiff, | |
| | **Plaintiff's Reply** |
| vs. | |
| | MOTION TO DISQUALIFY |
| | ORRICK, HERRINGTON & |
| **Apple Inc.**, a corporation, | SUTCLIFFE LLP |
| Defendant. | |
| | HEARING: |
| | Dept: Courtroom 5, 17th Floor. |
| | Judge: Edward M. Chen |
| | Date: March 13 2025 |
| | Time: 1:30 PM PT |

**PLAINTIFF'S REPLY IN SUPPORT OF HER FIRST MOTION TO DISQUALIFY DEFENDANT'S COUNSEL** ............................. 1

    I.   APPLE'S FAILURE TO ADDRESS THE ISSUE ....................... 1

    II.  APPLE'S ABUSE OF ATTORNEY-CLIENT PRIVILEGE ............. 2

    III. APPLE'S BAD-FAITH ENGAGEMENT WITH THE PLAINTIFF..... 3

    IV.  APPLE'S KEY WITNESS ENGAGED IN PERJURY. ................ 4

    V.   APPLE IS FEIGNING AMNESIA & WITHHOLDING INFORMATION 6

    VI.  OMISSIONS & DIVERSIONS ........................................ 9

    VII. APPLE'S ATTEMPT TO USE PLAINTIFF'S PRIVATE IMAGES AS A DEFENSE AND THREAT ............................................. 11

    VIII. APPLE'S NEWLY RAISED ARGUMENTS ARE MISLEADING AND IRRELEVANT ................................................................ 12

    IX.  ENVIRONMENTAL LAW IS COMPLICATED & IMPORTANT. ..... 13

    X.   JUVINALL'S ABRUPT WITHDRAWAL ............................. 14

    XI.  CONCLUSION ..................................................... 15

# PLAINTIFF'S REPLY IN SUPPORT OF HER FIRST MOTION TO DISQUALIFY DEFENDANT'S COUNSEL

1. Plaintiff, Ashley Gjovik respectfully submits the following Reply in support of her pending Motion to Disqualify. Defendant Apple Inc. ("Apple") counsel, Orrick, Herrington & Sutcliffe LLP ("Orrick"), have filed an opposition to Plaintiff's Motion to Disqualify (Dkt No. 156-1) that is rife with contradictions, mischaracterizations, misrepresentations, and omissions. Apple's response fails to meaningfully rebut the key arguments for disqualification and instead relies on conclusory statements, misstatements of fact, redirection, and legally deficient justifications.

2. The Court should reject Apple's attempts to sidestep Orrick's clear conflicts of interest and grant Plaintiff's motion in full. Apple also attempts to confuse and distract by introducing a draft Protective Order, framed as if it was something Plaintiff agreed to, but which Plaintiff fervently opposes, and as such Plaintiff will concurrently file an Objection to Apple's statements about the order in its Opposition.

3. Apple's opposition fails to meaningfully address several core issues raised in Plaintiff's motion. Plaintiff's Motion to Disqualify (Dkt No. 156-1) set forth multiple independent grounds for disqualification, each of which Apple either fails to rebut or tacitly concedes. Rather than addressing these facts, Apple asserts a blanket denial without evidence. Apple also fails to cite any authority supporting its claim that attorneys who act as key witnesses should nonetheless be allowed to represent a party. For these reasons, and those outlined in Plaintiff's motion, this Court should grant Plaintiff's motion and disqualify Defendant's counsel.

### I. APPLE'S FAILURE TO ADDRESS THE ISSUE

4. Plaintiff's motion outlined how Apple's legal counsel is a material witness to the events leading to Plaintiff's termination and engaged in conduct that directly gives rise to the claims in this case. Apple, in its opposition, provides no substantive response to this critical argument. The defendant has known there are material conflicts in this lawsuit for years. The plaintiff filed this civil lawsuit on Sept. 7 2023. Apple's counsel (Orrick) filed notices of appearance and contacted Plaintiff for the first time on Oct. 5 2023. On Oct. 5 2023, Plaintiff responded and provided notice of potential conflicts of interest in this litigation for the Orrick attorneys who had contacted her. (*see concurrently filed Declaration*). Orrick never even responded to Plaintiff's concerns.

5. Defendant's counsel claims: *"Defendant's legal counsel has never been a witness to any*

*material fact in this litigation."* Further, Counsel focuses on the retaliation conflicts and avoids acknowledge that they material witnesses in relation to Plaintiff's statute of limitations tolling theory for her toxic torts – as Orrick actively misled her about the semiconductor fabrication during the U.S. Dept. of Labor proceedings, acting as agents of Apple.

6. Plaintiff demonstrated that Apple's legal team was involved in creating the rationale for Plaintiff's termination, making them key witnesses. Apple does not dispute this involvement, nor does it offer any legal argument to justify allowing conflicted counsel to continue representing the company. Courts routinely disqualify counsel when attorneys become material witnesses. See *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1205 (2011) (*"An attorney who is a material witness to disputed facts must be disqualified to protect the integrity of judicial proceedings."*). An attorney who becomes a material witness in a case must withdraw from representation to avoid conflicts of interest and ethical violations." *Kennedy v. Eldridge*, 201 Cal. App. 3d 718, 727 (1988) "

7. Orrick attorneys were directly involved in Apple's internal response to Plaintiff's whistleblower complaints, termination decision-making, and legal strategy regarding Apple's dissemination of Plaintiff's private photographs. The advocate-witness rule prohibits attorneys from acting as both counsel and witnesses. Apple conclusory states that "no Orrick attorney is likely to be a witness" but fails to rebut the specific examples provided in Plaintiff's motion. Apple does not deny that Orrick attorneys had direct communication about these key issues. The advocate-witness rule applies when attorneys have firsthand knowledge of disputed facts material to the case. Apple's refusal to acknowledge this does not negate the rule's application.

## II. Apple's Abuse of Attorney-Client Privilege

8. Apple is attempting to withhold any documents concerning the decision to terminate Plaintiff by claiming they are protected by attorney-client privilege. (*see concurrently filed Declaration*). "Privilege does not apply to factual business decisions related to employment actions." *Wellpoint Health Networks, Inc. v. Superior Ct.,* 59 Cal. App. 4th 110 (1997). "A corporation cannot shield business decisions from discovery under the guise of attorney-client privilege." *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009).

9. Plaintiff has presented credible evidence that Apple's legal team was involved in fabricating a paper trail to justify termination. Apple's Opposition did not directly deny this allegation, effectively conceding its validity. Apple has admitted this issue for years. In Apple's Dec. 18 2023

— 2 —

Plaintiff's Reply re: Motion to Disqualify | Case No. 3:23-CV-04597-EMC

General Order 71 Initial Disclosures, Apple responded to the prompt about any documents "upon which the defendant relies to support the defense" and any "documents describing the reasons for the adverse action" by saying *"There is no operative answer on file."* (*see Declaration*). Courts have held that the knowing creation of false evidence is grounds for disqualification *(People v. Bell,* 49 Cal. 3d 502, 537 (1989)). If Apple knows it will lose this case on the merits, it should consider engaging in a settlement process in good faith, instead of wasting the court and plaintiff's time.

### III. Apple's Bad-Faith Engagement with The Plaintiff.

10. Apple attempted to fabricate misconduct allegations against Plaintiff during prior meet-and-confers. When Plaintiff recorded a meet-and-conference proving Apple was lying, Apple demanded she delete it. Apple is again demanding a meet-and-confer where no record is allowed, setting the stage for more false claims. This is witness intimidation—Plaintiff was fired for requesting written records to prevent lies like this.

11. During the April 1 2024 26(f)-styled meet and confer between Apple (Orrick) and Plaintiff for the Dept. of Labor matter, Apple's counsel stonewalled the Plaintiff and refused to share even basic information with her. Apple asked about Plaintiff's claims and Plaintiff detailed her allegations. Plaintiff then asked Defendant about their defenses and Defendant refused to answer the Plaintiff, despite persistent questioning from Plaintiff, other than saying their defense is *"what the [OSHA] investigator found -- that is what our defenses are."* Adding: *"If you want to know what our claims are, just read the [OSHA] investigator's opinion. That's a summary of our claims"* (id at 13) and "*Why do you need me to read the opinion of the investigator to tell you what our defenses are?*" (id at 13-14).

12. Because Appleseed was the one and only witness that OSHA interviewed in Gjovik's complaints against Apple, and on April 1 2024, Apple insisted that its defense with OSHA is its only defense, (a defense that required Appleseed), that makes Appleseed a material witness for Apple's defense in all pending litigation and adjudication on the same issues.

13. During the April 1 2024 meeting, Plaintiff questioned Defendant about how Apple plans to handle the EPA inspection of her office that occurred due to her disclosures. Plaintiff complained that this same counsel hid this inspection from her and from U.S. Dept. of Labor for nearly a year. Apple's counsel simply responded that the inspection was irrelevant because they "*will show [her] why [she was] let go and whether if [her] making a complaint to the EPA was or was not the reason.*" (Id at 18). Adding, *"It's very simple."* (Id at 18-19). The plaintiff repeatedly objected to this line of response, but

Apple persisted.

14. During the April 1 2024 call the Defendant made it clear they did not want to participate in discovery. The plaintiff asked Apple if Apple planned to request any discovery from her and what types of documents she should prepare. Counsel stammered and responded, "*Well at this time I don't…*" with the other interrupting her "*I'm sorry this is…*" (inaudible mumbling). Counsel then blurted out "*I'm late for my call, but we haven't decided*" and both ended the meeting. (Id at 27). Despite repeated requests from Plaintiff to Defendant as to what kind of discovery they will want related to their defenses, Defendant has refused to answer other than a repeated belligerent insistence that Plaintiff immediately provide them full General Order 71 discovery (which is likely to be tens of thousands of documents – due to the wide range of protected activity and cornucopia of retaliation tactics deployed against her).

## IV. Apple's Key Witness Engaged in perjury.

15. Apple's key witness in its defense that it was not engaging in witness intimidation and whistleblower retaliation against the Plaintiff, was only involved in Apple's defense as a result of Apple intimidating and retaliating against Appleseed., in order to coerce her to help them falsify a paper trail.

16. Apple claims it's never talked to Appleseed, yet Appleseed was the one and only witness that U.S. Dept. of Labor interviewed for *Gjovik v. Apple* OSHA investigation. OSHA did not interview any of Gjovik's witnesses and only interviewed one of the Apple's witnesses – Appleseed. (*see Declaration*). OSHA's case notes explained that based on the information provided by Apple's counsel (including the email from Appleseed with photos of Plaintiff's breasts) and the testimony, actions, and information provided by Appleseed, they found in favor of Apple. Apple's counsels are claiming that they never communicated with and have no connection to their one and only witness, who they effectively weaponized to get OSHA to dismiss the plaintiff's complaint in Dec. 2023.

17. Apple's reliance on this individual—who has demonstrably committed perjury— undermines the integrity of its defense. Apple offers no response to the fact that this witness's actions amount to obstruction of justice. This is a clear attempt to rewrite the record and avoid accountability. Further, Apple's unethical use of Plaintiff's private photos in a retaliatory manner exemplifies its bad faith. Apple claims ownership over Plaintiff's personal images, alleging Plaintiff had no right to share them. Yet, Apple fails to explain how it can claim "ownership" over Plaintiff's body, particularly when the photos were unlawfully distributed by Apple's own key witness. The implications of this argument

are deeply troubling, and Apple's failure to address this issue head-on speaks volumes.

18. Apple's primary defense witness, who fabricated a paper trail to justify Plaintiff's termination, has submitted three declarations and claimed she has never met Plaintiff. This directly contradicts Apple's claims and raises serious credibility issues regarding its defense. This witness was also responsible for distributing the private photos that Apple is now using as a defense, demonstrating bad faith and unethical litigation tactics. Perjury and obstruction of justice are independent grounds for disqualification (*See United States v. Talao*, 222 F.3d 1133, 1139 (9th Cir. 2000)). Apple does not address this contradiction. By failing to explain this contradiction, Apple effectively concedes that its witness's credibility is compromised. This further underscores the need for disqualification, as Orrick attorneys are implicated in coordinating this defense.

19. The witness engaged in perjury by falsely claiming that she was not involved in Plaintiff's case. However, email records, internal reports, and Apple's own prior statements contradict this assertion. (*See, e.g., United States v. Contreras*, 581 F.3d 1163, 1168 (9th Cir. 2009) (*"False testimony under oath that materially affects the proceedings constitutes perjury."*)). Apple offers no response to the fact that this witness's actions amount to obstruction of justice. This same witness was instrumental in Apple's scheme to falsify the record of Plaintiff's termination, creating a complaint after the decision to terminate had already been made. This constitutes fraud on the court and necessitates disqualification. (*See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (*"When an attorney is complicit in falsifying evidence, disqualification is necessary to preserve the fairness of proceedings."*)).

20. The record clearly establishes that Apple engaged in coercion and intimidation by pressuring Appleseed to assist in its retaliation against whistleblowers, including Plaintiff. As documented in the NLRB case no. 32-CA-282396, the U.S. government has already found substantial evidence that by Sept. 1 2021, Apple made Appleseed's continued employment conditioned on her abandonment of protected NLRA activities and that Apple made illegal threats to stop the protected NLRA activities Appleseed already started. (Id at 5-6, 9). At this time Plaintiff had an open NLRB charge against Apple, and the exact same external counsel were representing Apple on both Plaintiff and Appleseed's cases (MWE, a *"union avoidance"* firm).

21. During this same time frame, the NLRB found that Apple illegally threatened Plaintiff and illegally terminated Plaintiff's employment in retaliation for Plaintiff's protected NLRA activities, among other protected conduct (See Notice of Pendency). All of this lawless intimidation and coercion

— 5 —

Plaintiff's Reply re: Motion to Disqualify | Case No. 3:23-cv-04597-EMC

converged on September 15, 2021, with Appleseed's coerced complaint against Plaintiff, which included Plaintiff's private nude photos.

22. Then, on December 20, 2021, Apple's attorneys at McDermott Will & Emery (MWE)—the same firm handling Apple's legal defense against Plaintiff's NLRB charges—sent Appleseed a demand letter threatening her with litigation and potential financial ruin for alleged violations of a settlement agreement. (*see Declaration*). This letter was issued Appleseed was employed at Apple just a few weeks prior, and just weeks later she proceeded to report Plaintiff to law enforcement, including the police and FBI, and then initiated her lawsuit against Plaintiff. (*see Declaration*). Given this well-documented record (see exhibits), Apple's current attempt to distance itself from Appleseed or feign ignorance of her role is both disingenuous and contradicted by its own prior conduct.

23. Around Feb. 1 2023, Appleseed publicly posted that she filed a complaint to the U.S. SEC about Apple, and as part of that complaint she disclosed (which was the first time Plaintiff learned this fact), that in late August 2021, her Global Security coworkers had been threatening her that she must condemn the Plaintiff for speaking out about work conditions, and on Sept. 15 2021, she was threatened that Apple was obtaining Plaintiff's private text messages and would find out that she spoke with Plaintiff about Plaintiff's privacy concerns and could be fired for not openly condemning Plaintiff's protected activities – leading her to file the complaint, which became Apple's key evidence in their farcical defense. (*see Declaration*). Appleseed noted in the SEC complaint that the complaint she filed for Apple against Plaintiff "*served no legal purpose.*" (Id.)

### V. Apple is Feigning Amnesia & Withholding Information

24. Apple's attorneys claiming they have never communicated with Appleseed is beyond absurd. Appleseed was the central and, in fact, only witness Apple relied on in the OSHA investigation, providing testimony and evidence that directly led to the dismissal of the case against Apple. If Apple truly never communicated with Appleseed, then how did they acquire and submit her evidence? How did she know to repeatedly contact OSHA in Apple's defense? Apple's own filings in the OSHA matter confirm that they relied on Appleseed's statements as a key justification for their actions against me— yet now they want to pretend they have no connection to her? Either they are blatantly lying, or they are admitting to a level of negligence that is legally indefensible.

25. Apple's attempt to distance itself from Appleseed is barred by judicial estoppel, which

prevents parties from taking contradictory positions in different legal proceedings. The U.S. Supreme Court has made clear that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter assume a contrary position, simply because his interests have changed." *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001). Here, Apple successfully relied on Appleseed's testimony to defend itself before OSHA. Now, faced with the reality that their connection to Appleseed is legally inconvenient, Apple reverses course and denies any relationship. Such a blatant contradiction is precisely what judicial estoppel is designed to prevent. See also *Rissetto v. Plumbers & Steamfitters,* 94 F.3d 597, 600 (9th Cir. 1996) (holding that judicial estoppel applies even when a party's initial position was made in an administrative proceeding, like OSHA).

26.     If Apple falsely stated in this litigation that they never communicated with Appleseed, while simultaneously using her as their sole witness in the OSHA matter, that would constitute fraud on the court. Courts have held that "[t]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). Fraud on the court occurs when a party engages in "an unconscionable plan or scheme" to mislead the tribunal. *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995). If Apple deliberately withheld information about its communications with Appleseed or falsely claimed there were none, then they have engaged in precisely the kind of deception courts condemn.

27.     If Apple is not outright lying and truly never communicated with Appleseed, then their actions reflect gross negligence in submitting unverified, uncorroborated information to a federal agency. Courts have long held that a party submitting evidence has a duty to ensure its reliability. For instance, in *Napue v. Illinois,* 360 U.S. 264 (1959), the Supreme Court found that knowingly presenting false or misleading testimony constitutes misconduct. Similarly, in *Brady v. Maryland,* 373 U.S. 83 (1963), the Court underscored that material evidence must be properly disclosed and verified. By Apple's own admission, it used Appleseed's statements as a justification for my termination, yet now claims it never followed up, questioned Appleseed's credibility, or verified the plaintiff's claims. That kind of reckless disregard for the truth is not only irresponsible but legally indefensible.

28.     Allowing a corporation like Apple to weaponize an unverified witness for its benefit in one proceeding, only to later disown that witness when challenged, undermines the integrity of both administrative and judicial processes. The judicial system relies on parties acting in good faith and

maintaining consistent positions. If Apple is permitted to get away with such a blatant contradiction, it sends a dangerous signal that large corporations can manipulate government agencies and courts at will, without consequence.

29. Furthermore, OSHA and other administrative agencies depend on accurate, truthful information to ensure workplace safety and whistleblower protection. If Apple truly submitted Appleseed's statements without ever communicating with her, that would mean they influenced a federal agency's decision without exercising due diligence—a reckless practice that should not be tolerated. As the Ninth Circuit has noted, when parties submit false or misleading statements in official proceedings, it "corrupts the truth-seeking function of the process" and "undermines public confidence in the fairness of government adjudications." *United States v. Estate of Hage*, 810 F.3d 712, 720 (9th Cir. 2016). Fortunately - now we have the chance to adjudicate and litigate these claims properly under California labor laws like 6310, 1102.5 and the Tameny termination in violation of public policy tort.

30. Plaintiff learned the Sept. 15 2021 complaint including nude photos of her through a FOIA request to OSHA, despite OSHA delaying a year and attempting to get Plaintiff to give up on her request. In addition to the nude photos, Plaintiff also discovered Apple lied about the supposed Informed Consent Form they say she signed related to the Gobbler application. Plaintiff has requested a copy of this ICF from Apple repeatedly and they refuse to provide her a copy but insist she "consented." Apple either lost the ICF records, or the document is so illegal Apple knows it cannot be shared outside the company – because it told OSHA it provided the document but instead provided a general NDA for a completely different program that took place over a year after Apple signed Plaintiff up for Gobbler. Apple intentionally redacted the headers and documented information that would have revealed it was a different document than what they told OSHA it was. (*see Declaration*). Plaintiff had also complained to OSHA in 2022 that Apple's position statement, made under penalty of perjury, referenced multiple meetings that never happened, and emails that were never sent – and when asked for documentation, Apple had nothing to provide OSHA, because Apple lied. (*see Declaration*).

31. Defendant and OSHA both knew how harmful this information is to Apple's position, especially following Appleseed's retaliatory lawsuit against Plaintiff in 2022 over Plaintiff's federal complaints against Apple. In Apple's Dec. 18 2023 General Order 71 disclosures, Apple attempted to intimidate and coerce the Plaintiff to not try to file FOIA requests to NLRB or U.S. Dept of Labor related to her Apple complaints. Apple's counsel argued to her in the disclosures that "the FOIA is not

1  intended to function as a private discovery tool." (*see Declaration*).

2  32.  At its core, Apple's argument in its Opposition is either a blatant lie or an admission of gross misconduct. They do not get to use Appleseed's statements when it benefits them and then pretend, she doesn't exist when it doesn't. The record is clear: Apple and Appleseed were in communication, and Apple leveraged her testimony and actions when it suited them. They don't get to disown that relationship now.

## VI. Omissions & Diversions

33.  "A lawyer's misconduct, including falsification of records or participation in witness intimidation, may serve as grounds for disqualification." *United States v. Talao*, 222 F.3d 1133, 1139 (9th Cir. 2000). "Disqualification is appropriate when an attorney's prior representation or misconduct prejudices the integrity of judicial proceedings." *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at *2 (N.D. Cal. Apr. 1, 2011). One of the most fundamental and determinative facts in evaluating the disqualification issue is the date when Apple's counsel first began providing legal advice related to Plaintiff. If that date were, for example, December 2021, then Apple's attorneys would have a much stronger argument that they had not played a material role in the September 2021 termination decision. However, if the date were instead May 2021—or even earlier—then that would present a serious and undeniable conflict, as it would confirm that Apple's current counsel was directly involved in the decision-making leading up to Plaintiff's termination.

34.  If Apple had a clean answer that supported their position, they would have every incentive to provide it clearly and enthusiastically. Instead, they have refused to disclose this crucial information and are attempting to distract the Court by improperly shifting the focus to protective orders and discovery disputes—issues entirely irrelevant to the threshold disqualification question.

35.  The Ninth Circuit has recognized that when a party withholds key information that should be readily available, it raises a strong inference that the truth is unfavorable to them. See *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1092 (9th Cir. 2007) (finding that a party's refusal to provide material evidence supported an inference that the withheld information was averse to their position).

36.  Moreover, courts have held that when a party facing disqualification deliberately evades providing a key fact that would resolve the dispute, it suggests bad faith. In *Clark v. Superior Court,* 196 Cal. App. 4th 37, 52 (2011), the court stated that "[w]hen a party in exclusive possession of material

information refuses to provide it, an adverse inference may be drawn." Apple's refusal to disclose this one essential date—the first moment its counsel became involved—suggests that disclosure would reveal a conflict so clear and undeniable that it would compel disqualification.

37.  Apple's legal team has engaged in a pattern of harassment against Plaintiff through anonymous social media accounts, with the timing of these attacks closely aligning with key developments in employment cases involving Apple. These bursts of online harassment were not random; rather, they escalated at pivotal moments, including major filings, hearings, and investigative actions. (*see Declaration*). Given the sophisticated coordination and insider knowledge required to time these incidents with litigation events, and the language used being similar and very similar to the language of an attorney, the evidence strongly suggests that Apple's counsel, or individuals acting under their direction, were involved in an effort to intimidate and retaliate against Plaintiff through extrajudicial means. Such conduct violates professional ethics and legal prohibitions against attorney misconduct, including the duty to refrain from conduct prejudicial to the administration of justice. See ABA Model Rule 8.4(d) ("It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."); see also California Rule of Professional Conduct 8.4.1 (prohibiting discrimination, harassment, and retaliation by attorneys).

38.  Further demonstrating this pattern of misconduct, Appleseed's lawsuit against Plaintiff commenced immediately after Apple was required to file an answer in the U.S. Department of Labor case. Instead of timely responding, Apple repeatedly sought extensions and strategically delayed its answer until after securing a gag order against Plaintiff on March 4, 2022. (*see Declaration*). This timing was not coincidental. The delay ensured that if Plaintiff discovered and attempted to expose Apple's and Appleseed's misuse of her private images—including the unauthorized distribution of her nude photographs—she could be subjected to incarceration for speaking out. Such conduct constitutes an abuse of the judicial process and violates established case law prohibiting strategic litigation conduct designed to suppress adverse information. See *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991) ("[F]raud on the court includes conduct that abuses the judicial process in a manner inconsistent with the orderly administration of justice."); see also *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980) (holding that courts have inherent authority to sanction parties who engage in bad-faith litigation practices).

39.  The deliberate synchronization of these events—harassing social media attacks, legal

delays, and the strategic use of gag orders—reflects a calculated campaign to intimidate and suppress Plaintiff. Apple's actions go beyond aggressive litigation tactics and enter the realm of unlawful retaliation and witness intimidation. Courts have routinely recognized that retaliatory legal actions designed to silence a party or suppress evidence constitute an abuse of process and may warrant sanctions. See *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 970 (9th Cir. 1999) ("The right to petition includes the right of access to courts, but that right does not extend to litigation that is a mere sham to cover an abuse of process."). The Court should not allow Apple to benefit from its misconduct, nor should it permit the continued abuse of legal mechanisms to silence Plaintiff.

### VII. Apple's Attempt to Use Plaintiff's Private Images as a Defense and Threat

40. Apple has further demonstrated bad faith litigation tactics by attempting to justify Plaintiff's termination based on a fabricated intellectual property claim over her own nude images. Apple's key witness obtained and distributed Plaintiff's private photos, and Apple has since attempted to use these images to justify Plaintiff's firing under a disturbing claim of property ownership over her body. Apple and its counsel engaged in post hoc justifications for termination, weaponizing Plaintiff's personal privacy against her.

41. Apple's recent attempts to downplay Appleseed's involvement and dismiss the significance of the email containing Plaintiff's intimate images are both factually incorrect and legally indefensible. Apple asserts that the email was not part of the termination decision, which is technically accurate only because the email was sent six days after Plaintiff's termination. However, this argument overlooks the critical context: the email was part of a post-termination effort to fabricate a justification for the retaliatory firing. Appleseed admitted she sent the email under coercion from Apple and acknowledged it lacked any legitimate legal purpose.

42. If Apple now contends that the email is legally irrelevant, then its own actions—repeatedly referencing the email in official proceedings, including its OSHA position statement where the email was cited and attached—were also without legal merit. This pattern of behavior aligns with harassment and retaliation, precisely as Plaintiff alleges. Moreover, Apple's portrayal of Appleseed as an uninvolved third party is contradicted by the facts. Appleseed was Apple's sole witness in the OSHA investigation, yet Apple deliberately omitted her from its initial disclosures, creating a false impression of her non-involvement. Appleseed not only provided the primary witness statement for Apple but also

1  proactively contacted OSHA to advocate for the dismissal of Plaintiff's case and reported Plaintiff's
2  protected disclosures and complaints as misconduct. These actions demonstrate a concerted effort by
3  Apple to retaliate against Plaintiff and manipulate the investigatory process.

4  43.  Apple's counsel also claim that the email does not include any nude photographs,
5  however, the email (*see Declaration*), clearly shows the first message that Appleseed distributed to
6  Apple included Plaintiff introducing the photo as "More boobs…. Nips removed." (Plaintiff meant
7  *redacted*). In the conversation, which was filed to Apple in the Sept. 15 2021 complaint, Plaintiff
8  complained to Appleseed (a member of Apple's Global Security team and someone who potentially
9  could impact Apple's surveillance policies), that she has "nudes in this too that [she] thinks get
10 uploaded [to Apple]." When Apple filed its statement to OSHA, Apple redacted the photo of Plaintiff's
11 breasts and also omitted Plaintiff's complaint about nude photos, including surrounding text but
12 replacing the complaint about Apple hoarding non-consensual nude photos of the plaintiff., with an
13 ellipsis. (*see Declaration*). Apple knew and knows that its claim was absurd and highly offensive. Apple
14 demanded that Apple treat its position statement (its only real Answer its filed in 3 years), be treated
   as Confidential information.

15 44.  Apple's response to this motion is not only legally deficient but also a blatant
16 continuation of the very misconduct Plaintiff has alleged. This is an ongoing effort to silence her
17 through threats of punishment while they continue to violate her rights. The plaintiff has already
18 alleged that Apple conspired with Appleseed to retaliate against her and suppress her complaints about
19 their misconduct. Apple's latest demand for a protective order is merely a further escalation of this
20 strategy. Instead of addressing the serious ethical concerns raised in this motion to disqualify, Apple is
21 now asking this Court to actively participate in silencing Plaintiff by imposing judicial sanctions if she
22 continues to speak out about their ongoing violations. Apple is not seeking a protective order in good
   faith—it is attempting to co-opt the Court's authority to further its unlawful retaliation.

## VIII. Apple's Newly Raised Arguments Are Misleading and Irrelevant

25 45.  Rather than substantively rebutting Plaintiff's arguments, Apple raises several new,
26 misleading points in its opposition. These include: a mischaracterization of Plaintiff's legal claims; a
27 baseless assertion that disqualification would "prejudice" Apple; and an attempt to shift blame onto
28 Plaintiff for Apple's own misconduct. Apple fails to explain how disqualifying conflicted counsel would

prejudice a corporation with vast legal resources. Courts routinely hold that a party's choice of counsel is not an absolute right when ethical violations are present. (*See In re Cendant Corp. Sec. Litig., 124 F. Supp. 2d 235, 238 (D.N.J. 2000)*). Further, Apple's already hired four different law firms on this matter.

46. Apple asserts that removing Orrick would unfairly prejudice its ability to defend against Plaintiff's claims.: Courts have consistently held that attorney disqualification is warranted when an advocate's continued representation would create an unfair advantage or compromise the integrity of the proceedings. The fact that disqualification may inconvenience Apple does not outweigh the ethical violations at issue. Apple falsely claims that Plaintiff unreasonably delayed filing this motion. In reality, Plaintiff moved for disqualification promptly after obtaining evidence of misconduct. The Ninth Circuit has ruled that a party seeking disqualification must act diligently, and Plaintiff has met this standard (*See Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at *2 (N.D. Cal. Apr. 1, 2011)). Further, Apple is the party that has repeatedly refused to engage in good faith discovery discussions, evaded Court-ordered disclosures, and stonewalled depositions. If any party is engaged in delay tactics, it is Apple. The Plaintiff has no incentive to delay.

### IX. Environmental Law is Complicated & important.

47. Apple's opposition to this motion to disqualify completely ignores one of the most fundamental issues: their attorneys are not environmental lawyers, yet they insist on litigating a case that is at its core, an environmental and toxic tort claims (including much of the protected activity that is the basis of the retaliation claims). Throughout this litigation, Apple's counsel has categorically refused to engage in any substantive discussion of environmental law or science, dismissing these issues as "irrelevant" simply because they do not serve Apple's goal of getting the case dismissed. Apple's position is not based on the actual legal or factual merits—it is based entirely on what is most convenient for them procedurally. This is not how litigation is supposed to work, and it raises serious concerns about their ability to competently represent their client in this case.

48. Attorneys handling environmental and toxic tort litigation are required to have the necessary legal and scientific competence to understand and engage with the complex factual and regulatory issues at stake. The American Bar Association's Model Rule 1.1 mandates that attorneys provide "competent representation," which includes the legal and technical knowledge required for the case. Courts have repeatedly recognized that where an attorney lacks the expertise necessary for a particular field of law, they must either acquire the knowledge, associate with specialists, or decline

representation altogether. Instead of meeting this ethical obligation, Apple's attorneys have taken the opposite approach: they have attempted to narrow the scope of this case to avoid addressing the environmental claims at all, rather than ensuring they are qualified to litigate them. Their refusal to engage in discussions of environmental science and law is not just bad lawyering, it is a deliberate litigation strategy designed to sidestep the core merits of the case. This is not a good-faith defense; it is a blatant attempt to manipulate the court process to avoid accountability.

49. Apple's failure to address this argument in its opposition speaks volumes. If Apple's attorneys had a legitimate basis to claim they are competent to litigate an environmental and toxic tort case, they would have said so. Instead, they simply pretend the issue doesn't exist, much like they pretend the environmental violations themselves do not exist. This Court should not permit Apple's attorneys to use procedural tactics to evade the core legal and factual issues of this case, particularly when their own lack of expertise in environmental law is a key reason, they continue to misrepresent the scope and relevance of Plaintiff's claims.

## X. Juvinall's Abrupt Withdrawal

50. Apple's legal team repeatedly argued that there is no conflict of interest requiring disqualification and that Apple never engaged in harassment or misconduct. They even went as far as to weaponize Plaintiff's filing of an NLRB complaint—which explicitly raised concerns about Apple's counsel threatening the plaintiff regarding a protective order and discovery—as supposed evidence of plaintiff's own improper conduct.

51. Yet, two days ago, the very Orrick attorney at the center of those threats and the NLRB charge (Kate Juvinall, *esq.*) suddenly withdrew from representation, with a new Orrick attorney taking her place. (Dkt. No. 169). This abrupt withdrawal directly contradicts Apple's prior representations to the court. If there were truly no conflict and no misconduct, why did Apple's attorney—who had been involved from the beginning—remove herself from the case at this critical moment? The timing makes it clear: there was a conflict, there was a basis for disqualification, and instead of acknowledging it, Apple's attorneys deliberately misled this Court.

52. This kind of bad faith litigation conducts warrant scrutiny under well-established legal precedent. Courts have long held that attorneys cannot misrepresent material facts to avoid disqualification, only to later take actions that reveal the truth. In *Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.,* 534 F.2d 1322 (9th Cir. 1976), the Ninth Circuit affirmed that disqualification is warranted

— 14 —

where an attorney's prior conduct gives rise to ethical concerns, and failing to disclose such conflicts can compromise the fairness of the proceedings. Similarly, in *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135 (1999), the California Supreme Court emphasized that a conflict requiring disqualification exists when an attorney's prior actions could materially affect their ability to represent a client impartially and ethically—even if the attorney denies the conflict.

53. Furthermore, the timing of this withdrawal underscores the deceptive nature of Apple's litigation tactics. In *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993), the Third Circuit held that an attorney's withdrawal—when done in a manner that suggests prior misrepresentations to the court—can itself be grounds for sanctions. This is precisely what has happened here. Apple's counsel fought disqualification, denied conflicts, and tried to gaslight the Court into believing there was no misconduct, only to quietly remove the attorney in question once the scrutiny intensified. Such tactics erode the integrity of judicial proceedings and should not be tolerated.

## XI. Conclusion

54. Apple's opposition fails to meaningfully rebut Plaintiff's core arguments for disqualification. Instead, it relies on obfuscation, misrepresentation, and outright contradictions. Apple's legal team is directly implicated in the actions giving rise to this lawsuit, rendering continued representation improper under binding precedent. Apple's Counsel's role as material fact witnesses mandates disqualification (*Kennedy v. Eldridge*, *People v. Bell*). Their involvement in fabricating evidence further supports removal (*United States v. Talao*). Their abuse of privilege to hide employment decisions is legally improper (*Wellpoint Health Networks*, *United States v. Ruehle*). Their contradictions on discovery scope are sanctionable (*Payne v. Exxon Corp.*, *Nat'l Ass'n of Radiation Survivors*). The Court should reject Apple's attempt to shield its counsel from the consequences of their misconduct. Disqualification is necessary to preserve the integrity of these proceedings. For the foregoing reasons, Plaintiff respectfully requests that the court: Grant Plaintiff's Motion to Disqualify Orrick, Herrington & Sutcliffe LLP; bar Orrick from further representation of Apple in this matter; and Order Apple to identify new, non-conflicted counsel within a reasonable timeframe.[1]

Dated: Feb. 21 2025

---

[1] OMM and MWE are also conflicted for similar reasons.

1
2
3
4
5  /s/ Ashley M. Gjovik
6  *Pro Se Plaintiff*
7
8  **Email**: legal@ashleygjovik.com
9  **Physical Address**:
10 Boston, Massachusetts
11 **Mailing Address:**
   2108 N St. Ste. 4553 Sacramento, CA, 95816
12 **Phone**: (408) 883-442
13