Cher Swan Scarlett
PO BOX 1679 #5955
Sacramento, CA 95812
hello@cher.dev

FILED
FEB 26 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY GJOVIK, *an individual*, | Case No.: **3:23-CV-04597-EMC** |
| Plaintiff, | |
| v. | **DECLARATION** OF CHER S. SCARLETT |
| APPLE INC, *a corporation*, | |
| Defendant. | |

I.  **DECLARATION OF CHER S. SCARLETT**

**Pursuant to 28 U.S.C. § 1746, I, Cher S. Scarlett, hereby declare as follows:**

1. My name is Cher Swan Scarlett. I am referred to as "Joanna Appleseed", "JA", "Appleseed", and "Applegate" in various pleadings in the above captioned matter. I make this declaration based on my personal knowledge and could and would testify completely thereto. I make this declaration on my own volition and without solicitation by any person(s).

2. I have never perjured myself in any of my prior declarations before this court, nor will this one contain any false statements. As previously described, I encountered the Plaintiff while we both were employed by the Defendant in a work application called Slack while we were both advocating for permanent remote work on or around in the latter half of June 2021, though we did not speak to each other until on or around July 16, 2021. Our interactions were semi-regular on the text chat software iMessage, we also spoke a few times on the video chat software FaceTime, but mainly our interactions were mutual support on the social media platform Twitter, now called X. This only lasted until the last half of August 2021. I mentioned I never met the Plaintiff *in person* to make clear the nature of our relationship; it was brief and shallow, and broke down, in part, because the Plaintiff begun spreading a conspiracy theory that I was coordinating with journalists to keep her story out of the press. This included going so far as to circulate a <u>fabricated</u> conversation on the messaging service Signal between herself and Tekendra Parmar, who was at the time an editor of the periodical *Business Insider*, as proof of this conspiracy. The Plaintiff blocked me after I was profiled in the *Washington Post* on October 15, 2021. The Plaintiff and I hardly know each other; <u>we certainly *never* had *any* kind of *intimate* relationship</u>.

3. The Plaintiff has never sent me nude photographs, nor have I ever solicited any such photographs from the Plaintiff. Such photographs would have been unwanted and unwelcome and would have rightly been reported to Human Resources as sexual harassment. Rather, on or around August 20, 2021, the Plaintiff sent me unsolicited screenshots of an internal application "Alpha" she informed me she sent to a journalist for an article about employee privacy. None of the images contained any nudity from what I could see, though she did say she had censored one of them. I did not open it, but if I had, and it contained nudity, as I said, I would have reported her to Human Resources for sexual harassment. I did not quite understand what I was looking at or what she was upset about, as is evident from the conversation. The article in reference was published on August 30, 2021, and I shared it. I was not a source for the article, nor did I attempt to contribute to it.

4. On or around September 2, 2021, my attorney contacted me after Apple's internal counsel reached out to inquire if I would speak with them alone about a "sensitive intellectual property matter." In the days and weeks prior, I had been accused of leaking confidential information by coworkers, which I thought at the time was related to a wage survey I had started the month before. My attorney advised me not to speak with Apple without an attorney present and I did not hear about it again. On or around September 9, 2021, the Plaintiff was terminated for leaking confidential information. Because the Plaintiff had been posting internal documents and such for many weeks on social media, this did not come as a surprise. However, I *was* surprised to see the Plaintiff denying such a thing had occurred. After a mutual friend told me she was planning to hand over her device to Apple at the advice of her attorney, I realized that I had been subject to investigation for the leak of Alpha, and that's what she had been terminated for leaking. I then looked at what the Plaintiff had sent me with more scrutiny.

Within those messages I found screenshots of *another* internal application which described in detail the business purpose and other clearly trade secret type material regarding Alpha.

5. On September 15, 2021, I filed a Business Conduct report explaining that I had not been involved in the leak, or the article, that I had been under the impression that the Plaintiff was going to take ownership as the source of the material, that I hadn't really inspected what she sent me, and that I hadn't realized at the time it was a Business Conduct violation. No one told me to report the Plaintiff, nor could anyone have. Only the Plaintiff and I knew about these conversations. I reported the Plaintiff, and included the screenshots, because I felt it was the ethical thing to do. I referred to myself as a "witness" after learning these screenshots were used in the Defendant's replies to the Plaintiff's claims-the Plaintiff already knows I used this term incorrectly, as the screenshots are evidence.

6. I am not, nor have I ever been, in cahoots with the Defendant. I was not involved in any employment decisions about any employee, let alone the Plaintiff, and had no knowledge, nor could I have, other than what she told me herself. As I said in previous declarations, I was a software engineer in a different department far removed from the Plaintiff, and I worked on security tools. I have never been contacted by any of the defendant's attorneys about the Plaintiff. I have never been contacted by OSHA or the Department of Labor about the Plaintiff. I have never given testimony, been deposed, or been interviewed about the Plaintiff regarding her employment with Apple by anyone, let alone the attorneys representing Apple in this case or any government entity. I have never filed a complaint against Apple that referenced or mentioned the Plaintiff. None of my colleagues or any other Apple employees threatened me about anything regarding the Plaintiff, nor have I ever said such a thing.

7. On January 31, 2022, I petitioned for an anti-harassment order against Ms. Gjovik in King County, Washington, where I resided at the time. I did not consult Apple, it

-4-

was not for Apple, and the matter had nothing to do with Apple. I petitioned for her to be restrained because she would not stop harassing me and my family and I had already begged and bargained with her to stop. The legal purpose it served is exactly what was achieved: Ms. Gjovik was restrained from further harassing me and my family for a period of 5 years when the order was granted by Judge O'Toole on March 1, 2022. Several months later, it was reversed on appeal. The Appellate court held the opinion that the order violated Ms. Gjovik's constitutional right to free speech. The court assured me I was free to re-petition the court for an order that did not violate the constitution and that the Findings of Fact held. Despite her repeated claims that the restraining order was without merit, the record of that proceeding makes it abundantly clear that it was necessary by any reasonable person's standards. Again, this had nothing to do with Apple, other than the fact that Ms. Gjovik and I both worked there, and Ms. Gjovik was publishing documents she claimed to be unfair labor practices of Apple that contained hundreds of references to me and my family, the vast majority of which were defamation and harassment, and none of which had anything to do with Apple or Ms. Gjovik.

8. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on FEBRUARY 21, 2025.

**EXECUTED ON**: February 21, 2025

s/ CHER S. SCARLETT






PRIORITY MAIL EXPRESS®

UNITED STATES POSTAL SERVICE®

EMS

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

EP13F May 2020
OD: 12 1/2 x 9 1/2

PS10001000006

GUARANTEED* ■ TRACKED ■ INSURED

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.

# PRIORITY MAIL EXPRESS®
## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

**PRESS FIRMLY TO SEAL**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; May 2020; All rights reserved.

---

US POSTAGE IMI
$31.40
SSK
PME
02/24/25    Mailed from 92628

**PRIORITY MAIL EXPRESS®**    2.20 oz    RDC 07    C004

CHER SCARLETT
PO BOX 1679
SACRAMENTO CA 95812-1679

WAIVER OF SIGNATURE REQUESTED

SCHEDULED DELIVERY DAY: 02/25/25 06:00 PM

SHIP TO:
COURT CLERK
US DC NDC - EMC
450 GOLDEN GATE AVE
SAN FRANCISCO CA 94102-3661

USPS TRACKING® NUMBER

9570 1065 7006 5055 3455 51

**RECEIVED**
FEB 26 2025
CLERK
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES POSTAL SERVICE®

EP13F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.
USPS.COM/PICKUP

PS10001000006