**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik,**<br>*an individual*,<br><br><br>Plaintiff,<br><br>vs.<br><br><br><br>**Apple Inc.,**<br>*a corporation,*<br><br><br>Defendant. | **Case No. 3:23-cv-04597-EMC**<br><br>**Plaintiff's Motion Requesting Certification of Appealability Under Fed. R. Civ. P. 54(b)**<br><br><br>**Motion & Memorandum of Points & Authorities**<br><br>**Hearing:**<br>Dept: Courtroom 5, 17th Floor & Zoom<br>Judge: The Honorable Edward M. Chen<br>Date: May 8 2025 \| Time: 1:30 PM |

# TABLE OF CONTENTS

I.      TABLE OF AUTHORITIES ..................................................................2

II.     INTRODUCTION ...............................................................................3

III.    PROCEDURAL POSTURE ..................................................................4

IV.     LEGAL STANDARD UNDER RULE 54(B) ........................................4

V.      ARGUMENT ......................................................................................6

    A.    Finality of Dismissed Claims ....................................................6

    B.    No Just Reason for Delay .........................................................9

    C.    Apple Cannot Claim Factual Entanglement After Moving to Dismiss Based On
    Separability ................................................................................11

    D.    Rule 54(b) Certification Will Not Cause Piecemeal Litigation—Denying It Will ........ 12

    E.    Plaintiff Would Be Severely Prejudiced by Further Delay ........................................ 14

    F.    This Case Will Not Resolve at Trial Without Rule 54(B)—It Will Fracture .................. 15

    G.    Denying Certification Risks Multiple Trials, Inconsistent Verdicts, And Irreparable
    Prejudice ................................................................................ 16

    H.    The Need to Protect the Legal Rights of All Harmed ............................................. 17

    A.    Public Policy Supports Certification ................................................................. 18

    B.    Retroactive Certification ................................................................................ 20

VI.     CONCLUSION ................................................................................ 20

VII.    EXHIBIT A ..................................................................................... 23

# I. TABLE OF AUTHORITIES

## SUPREME COURT CASES

*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576–77 (1996) .............................. 10

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–10 (1980) ................................... 4

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) ........................................ 8

*Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) .................................................... 13, 14

## TRIAL AND CIRCUIT COURT CASES

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ...........7

*Anderson v. Cryovac, Inc., 96 F.R.D. 431 (D. Mass. 1983)* ............................................ 19

*Cheng v. Comm'r*, 878 F.2d 306, 309 (9th Cir. 1989)................................................... 8

*Frank Briscoe Co. v. Morrison-Knudsen Co.,* 776 F.2d 1414, 1416 (9th Cir. 1985) ...3, 4, 12

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987). ...................... 18

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1066 (9th Cir. 2002)........................... 8

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 (9th Cir. 2002) ........................ 15

*Morrison-Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir. 1981) ............................. 20

*Pakootas v. Teck Cominco Metals, Ltd.,* 905 F.3d 565, 577 (9th Cir. 2018) ................... 20

*Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 797–98 (9th Cir. 1991)...................................... 3

*Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88 (2d Cir. 2000) ................................. 19

*WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) ................ 6, 8

*Wood v. GCC Bend, LLC*, 422 F.3d 873, 878-879 (9th Cir. 2005) ........................... 9, 12

*Wood v. GCC Bend, LLC*, 422 F.3d 873, 880 (9th Cir. 2005) ................................. 4, 13

# PLAINTIFF'S MOTION FOR RULE 54(B) CERTIFICATION: MEMORANDUM OF POINTS & AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-2, Plaintiff, Ashley Gjovik, respectfully moves for certification of final judgment as to certain dismissed claims. The dismissed claims involve legally distinct and separate causes of action that have been resolved fully and finally, and there is no just reason for delay in certifying them for appeal.

**NOTICE OF MOTION.** TO DEFENDANT APPLE INC: PLEASE TAKE NOTICE that on May 8, 2025, at 1:30 p.m. in Courtroom 5, on the 17th Floor of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, and virtually via Zoom, Plaintiff, Ashley Gjovik, will move the Court for an Order granting final judgement and certificate of appealability of certain of Plaintiff's dismissed claims. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete pleadings and records on file, and other evidence and arguments as may be presented at the hearing on this Motion. The plaintiff will also be imminently filing responsive motions to Defendant's Answer and intends to schedule those motions for this same May 8 2025 hearing.

## II. INTRODUCTION

On February 27, 2025 at Dkt. No. 179, this Court issued an order dismissing several of Plaintiff's claims with prejudice and without leave to amend. These dismissals resolved those claims in their entirety and left no further factual or legal issues remaining as to those matters. The dismissed claims include causes of action under federal constitutional law, federal statutory protections, and state tort law, all of which were fully briefed and resolved on the merits.

Plaintiff filed a Motion to Amend on Jan. 31 2025 at Dkt. No. 155, requesting to replead a number of her claims including under the RICO Act, Dodd-Frank Act, and Bane Civil Rights Act. The court's Feb. 27 2025 (Dkt. No. 179) also denied this request and denied leave to amend, further finalizing these dismissals.

The Ninth Circuit has held that Rule 54(b) certification is appropriate when the dismissed claims

are legally and factually separable and when an immediate appeal would promote judicial efficiency. See *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 797–98 (9th Cir. 1991); *Frank Briscoe Co. v. Morrison-Knudsen Co.,* 776 F.2d 1414, 1416 (9th Cir. 1985). Since Plaintiff's dismissed claims satisfy these conditions, certification is warranted.

## III.  PROCEDURAL POSTURE

On February 27, 2025, the Court entered an order granting Defendant's motion to dismiss several of Plaintiff's claims with prejudice and without leave to amend. The dismissed claims include constitutional, statutory, and tort claims that were fully resolved on the merits. A separate order was entered the same day denying Plaintiff's motion for leave to amend. Together, those orders fully and finally disposed of the affected claims.

The plaintiff subsequently filed a Rule 54(b) motion on March 18, 2025, seeking certification of final judgment as to the dismissed claims. That motion was submitted using the administrative motion filing category in the Court's ECF system, which, at the time, appeared to be the most appropriate procedural workflow available.

On March 23, 2025, the Court issued a docket entry denying that motion without prejudice, indicating that requests for Rule 54(b) certification must be filed as regularly noticed motions under Civil Local Rule 7-2. The Court stated that Plaintiff may refile her motion in accordance with that rule.

Plaintiff now submits this motion under the "Judgment under 54(b)" category in the ECF system, which appears to align with the Court's instruction, and respectfully requests that the Court consider it under the applicable standard.

## IV.  LEGAL STANDARD UNDER RULE 54(B)

Federal Rule of Civil Procedure 54(b) provides that when an action involves multiple claims or parties, the Court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the Court expressly determines that there is no just reason for delay. This rule serves as a limited exception to the general rule that a final judgment must dispose of all claims as to all parties.

The Supreme Court has emphasized that Rule 54(b) certification is appropriate where the dismissed claims are final and severable, and where entry of judgment will not result in piecemeal or

duplicative appellate review. See *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–10 (1980). A district court must make two determinations: (1) that the order is a "final judgment" as to one or more claims or parties, and (2) that there is "no just reason for delay." *Id.* at 7–8.

The Ninth Circuit applies Rule 54(b) certification where the dismissed claims are "*sufficiently separate and distinct*" from the remaining claims, such that appellate resolution will not interfere with or overlap the ongoing litigation. See *Wood v. GCC Bend, LLC*, 422 F.3d 873, 880 (9th Cir. 2005); *Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir. 1985).

Rule 54(b) is intended to promote judicial efficiency by allowing immediate review of final orders when appropriate, rather than forcing parties to wait for the resolution of unrelated or factually distinct claims. Courts are encouraged to consider whether an immediate appeal may streamline further proceedings or avoid unnecessary relitigation.

- To assist the Court in evaluating this motion, Plaintiff notes the following orders form the basis for the final judgments sought:
    - ECF No. 112 (October 1, 2024): Dismissal with prejudice of multiple state-law tort and retaliation claims;
    - ECF No. 179 (February 27, 2025): Final dismissal with prejudice of environmental nuisance and IIED claims, as well as denial of leave to amend;
    - Together, these rulings resolve numerous discrete claims that are legally and factually distinct from those still pending.

These orders, read together, fully adjudicate multiple claims such that Rule 54(b) certification is appropriate.

Rule 54(b) requires that the claims for which final judgment is sought be fully adjudicated. Plaintiff seeks certification only as to claims that have been dismissed with prejudice and without leave to amend, and which are no longer subject to further litigation in this Court. Plaintiff does not seek certification as to any claims that remain pending or partially unresolved, such as the retaliation claims.

Specifically, Plaintiff seeks entry of final judgment under Rule 54(b) for the following causes of action, which have been finally adjudicated and dismissed with prejudice:

- Racketeer Influenced and Corrupt Organizations Act (RICO): 18 U.S.C. §§ 1962(a), (c), (d);

- Sarbanes-Oxley Act Whistleblower Protection: 18 U.S.C. § 1514A;

- Dodd-Frank Act Whistleblower Protection: 15 U.S.C. § 78u-6(h)(1)(A)(iii);

- Bane Civil Rights Act: Cal. Civ. Code § 52.1;

- Ralph Civil Rights Act: Cal. Civ. Code § 51.7;

- California Business & Professions Code § 17200 (Unfair Competition Law);

- Common Law Tort Claims:

    o Intentional Infliction of Emotional Distress (IIED) – including "fear of cancer" and traditional variants;

    o Negligent Infliction of Emotional Distress (NIED);

    o Ultrahazardous Activities (Strict Liability);

    o Nuisance (Private, Absolute, Per Se).

Each of the above claims was dismissed on the merits, with prejudice, and without leave to amend—either in the Court's October 1, 2024 order (ECF No. 112) or the February 27, 2025 order (ECF No. 179). No further factual or legal issues remain for these claims. Plaintiff does not seek Rule 54(b) certification for any claims that are factually or legally intertwined with active retaliation or employment-based causes of action that continue to be litigated.

## V.  ARGUMENT

### A.  FINALITY OF DISMISSED CLAIMS

Rule 54(b) permits certification of final judgment where one or more claims have been fully resolved and there is no just reason for delay. In the Ninth Circuit, a claim is "final" when it has been dismissed with prejudice or when leave to amend has been denied following an earlier dismissal. *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Plaintiff seeks Rule 54(b) certification only for claims that have been finally adjudicated and are not intertwined with the active causes of action still pending in this case. Each of the claims below has been resolved either by a dismissal with prejudice or by a denial of leave to amend after Plaintiff sought to reassert them.

- **RICO – 18 U.S.C. §§ 1962(c), (d):** Dismissed with (b) and without (c, d) prejudice,

then the plaintiff later sought to reassert the claim, and the Court denied leave to amend in ECF No. 179 (Feb. 27, 2025). The claims are now final.

- **Sarbanes-Oxley – 18 U.S.C. § 1514A:** Dismissed with prejudice and the Court denied leave to amend in ECF No. 179 (Feb. 27, 2025). The claim is now final.

- **Dodd-Frank – 15 U.S.C. § 78u-6(h)(1)(A)(iii):** Dismissed with prejudice and the Court denied leave to amend in ECF No. 179 (Feb. 27, 2025). The claim is now final.

- **Bane Act – Cal. Civ. Code § 52.1:** Dismissed without prejudice and plaintiff later sought leave to replead; the Court denied leave in ECF No. 179. The dismissal is now final.

- **Ralph Act – Cal. Civ. Code § 51.7:** Dismissed without prejudice and plaintiff later sought leave to replead; the Court denied leave in ECF No. 179. The dismissal is now final.

- **Unfair Competition Law – Cal. Bus. & Prof. Code § 17200:** Initially dismissed with leave to amend in ECF No. 73 (May 20, 2024); reasserted and dismissed again in ECF No. 112; leave to replead was later denied in ECF No. 179. The dismissal is final.

- **Intentional Infliction of Emotional Distress (IIED):** Dismissed with prejudice in ECF No. 179, including the "fear of cancer" theory.

- **Negligent Infliction of Emotional Distress (NIED):** Dismissed earlier with leave to amend; Plaintiff later sought to reassert, and the Court denied leave to amend in ECF No. 179. The claim is now final.

- **Ultrahazardous Activities (Strict Liability):** Dismissed with prejudice in ECF No. 179.

- **Nuisance (Private, Absolute, Per Se):** Dismissed with prejudice in ECF No. 179.

Courts routinely certify such claims where they do not overlap factually and legally with remaining claims. See *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Additionally, Defendant Apple Inc. has repeatedly asserted that these claims are legally and factually distinct. In its Motion to Dismiss, Apple argued:

- *"Claims regarding alleged environmental issues at an Apple facility separate from Plaintiff's workplace, and of alleged emotional distress tethered to those issues, are plainly time-barred and should be excised from the case once and for all."* [Dkt. No. 145].

- *"Plaintiff has repeatedly attempted to expand a case that should be centered on the basis for her termination from Apple into a forum to air her sprawling critiques of Apple's environmental practices."* [Dkt. No. 145].

- *"Apple requests that the Court grant its motion and dismiss these claims with prejudice and without any further opportunity to amend, and that the Court direct the parties to proceed on the termination and retaliation-related claims that remain."* [Dkt. No. 145].

The Court's Order Granting Motion to Dismiss further supports this distinction:

- *"Ms. Gjovik's claims for nuisance and IIED (fear of cancer) are time-barred. The Court dismisses with prejudice because it previously gave Ms. Gjovik an opportunity to address the time bar but she failed to do so on amendment."* [Dkt. No. 179].

These statements confirm that the dismissed claims are legally distinct and fully resolved, justifying Rule 54(b) certification.

Finality for the purposes of Rule 54(b) does not require a separate judgment document for each claim. Rather, the Ninth Circuit has long held that a claim is final if it has been dismissed with prejudice, because such a ruling fully disposes of the claim and leaves nothing further for the district court to resolve. See *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) ("A dismissal with prejudice is a final judgment for purposes of appeal."). In this case, multiple claims—including Plaintiff's emotional distress torts, nuisance theory, and federal statutory claims under SOX and Dodd-Frank—were dismissed with prejudice. No amendment was permitted, and those rulings are final and immediately appealable.

Even where certain claims were originally dismissed without prejudice, the Court's subsequent denial of leave to amend rendered those dismissals final. The Ninth Circuit has made clear that when a district court denies further amendment after a dismissal without prejudice, "*the order becomes final and appealable.*" *WMX Techs.*, 104 F.3d at 1136; see also *Cheng v. Comm'r*, 878 F.2d 306, 309 (9th Cir. 1989). Here, Plaintiff sought to reassert several claims—including RICO, the Bane Act, Ralph Act, and the UCL—in later pleadings or through a motion for leave to amend. The Court denied leave in its February 27, 2025 order (ECF No. 179). Those claims are now procedurally and substantively final.

Finally, Rule 54(b) certification is proper when the district court has definitively resolved a claim and denied further opportunity to amend, even if the claim was not dismissed with prejudice in the first

instance. See *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1066 (9th Cir. 2002); *Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir. 1985). In Plaintiff's case, the Court's February 27, 2025 order denying the motion to amend functionally closed the door on any reassertion of these claims. As a result, each claim listed in this motion has been finally adjudicated and is properly subject to entry of judgment under Rule 54(b).

### B.  No Just Reason for Delay

Once a district court determines that a claim has been finally adjudicated, it must then assess whether there is "any just reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). This inquiry requires consideration of both judicial administrative interests and the equities specific to the case. Id.; see also *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878–79 (9th Cir. 2005).

Here, there is no just reason to delay entry of judgment. The claims for which Plaintiff seeks certification—specifically, those alleging direct physical harm from toxic exposures—are legally and factually distinct from the claims that remain pending. The dismissed claims, including those for private nuisance, ultrahazardous activities, and intentional infliction of emotional distress (IIED) based on fear of cancer, require Plaintiff to prove that Apple's conduct directly caused her physical harm through the release of toxic substances. For instance, to establish a private nuisance, Plaintiff must demonstrate that Apple's conduct was unreasonable and resulted in a substantial interference with her use and enjoyment of property. Similarly, claims involving ultrahazardous activities impose strict liability on defendants engaging in activities that inherently carry significant risk, regardless of the care exercised. The IIED claim based on fear of cancer necessitates showing that Apple's outrageous conduct led to Plaintiff's severe emotional distress stemming from a reasonable fear of developing cancer. These claims focus on the nature of Apple's actions and their direct impact on Plaintiff's health and safety.

In contrast, the surviving retaliation claims under the California Labor Code focus on whether Plaintiff engaged in protected activities, whether Apple was aware of these activities, and whether any adverse employment actions were taken as a result. The merits of these claims do not hinge on whether the alleged toxic exposures actually occurred or caused harm but rather on the reasonableness of Plaintiff's disclosures and Apple's response to them.

Although some of the dismissed and surviving claims arise from overlapping factual scenarios—

such as Plaintiff's allegations regarding hazardous chemical exposure at Apple facilities—the claims are legally and analytically distinct. The dismissed toxic tort and racketeering claims require proof of injury, causation, and legal responsibility for the underlying conduct. In contrast, the surviving retaliation claims under the California Labor Code turn on whether Plaintiff engaged in protected activity, whether Apple was aware of that activity, and whether it retaliated. The merits of the remaining claims do not depend on whether the alleged chemical exposures actually occurred or caused harm, but rather on the reasonableness of Plaintiff's disclosures and Apple's response.

These differences in legal theories, elements, burdens of proof, and remedies demonstrate that appellate review of the dismissed claims would not overlap with or interfere with the ongoing litigation. See *Wood*, 422 F.3d at 878 n.2 (claims need not be "factually unrelated" to be separable under Rule 54(b)). Entry of judgment now would thus avoid delay without creating a risk of duplicative litigation or piecemeal review.

In addition to the legal separability of the claims, there is an equitable imperative for early appellate review. Plaintiff joined these claims in a single action precisely because they arise from a series of related events involving her working conditions, environmental exposures, and Apple's response to her complaints. Although the legal theories are distinct, resolution of the dismissed claims in Plaintiff's favor would materially enhance the coherence and completeness of her case at trial. An appellate ruling restoring these claims would allow the jury to consider, in one proceeding, whether Apple engaged in dangerous and unlawful conduct, concealed its wrongdoing, and then retaliated against an employee who came close to uncovering it.

Importantly, the toxic tort claims Plaintiff seeks to certify under Rule 54(b) do not require any analysis of Apple's motive, knowledge, or intent to retaliate against the Plaintiff through her employment with the Defendant. Those claims are based on independent legal duties—such as the duty not to engage in ultrahazardous activity, the duty not to substantially interfere with a person's health and safety through a private nuisance, and the duty not to cause emotional distress through extreme and outrageous conduct. The legal sufficiency of these claims turns on whether Apple's conduct caused physical harm, not whether Plaintiff was later terminated or retaliated against. Evidence of retaliation is not required to establish liability under these tort theories. However, if the dismissed and surviving claims were ultimately

presented together to a jury, that body could evaluate the full scope of Apple's conduct, including whether any ongoing retaliatory behavior exacerbated the harms already inflicted—an important consideration in any punitive damages analysis. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576–77 (1996) (punitive damages must be based on reprehensibility of conduct and its relation to the harm caused). Early appellate review would therefore not only avoid inefficiency but could restore a case framework in which the factfinder can assess Apple's conduct holistically and with appropriate evidentiary context.

Rule 54(b) exists not only to protect finality but to serve practical case management. See *Curtiss-Wright*, 446 U.S. at 8 ("sound judicial administration" is a central factor). Here, early appellate review may ultimately narrow the scope of trial, clarify evidentiary boundaries, and enable more efficient resolution of this case. Entry of judgment now would advance—not hinder—the just and efficient administration of justice.

## C. Apple Cannot Claim Factual Entanglement After Moving to Dismiss Based On Separability

Apple will likely argue that the dismissed claims and the surviving retaliation claims arise from the "same set of facts," and thus must be reviewed together to avoid piecemeal litigation. That argument is both legally unsound and factually inconsistent with Apple's own prior positions.

### 1. A. Apple Previously Argued These Claims Were Speculative, Conclusory, or Unrelated

In its prior motions to dismiss, Apple asserted that many of the claims now subject to this Rule 54(b) motion failed because Plaintiff allegedly did not plead sufficient factual support to sustain them—particularly as to causation, injury, or duty. For example:

- o Apple argued that Plaintiff's toxic tort and emotional distress claims lacked specificity as to the nature, source, and consequences of any harmful exposures.

- o Apple argued that the constitutional and civil rights claims were unsupported by any state action, discriminatory animus, or viable theory of standing.

- o Apple asserted that claims based on public policy or criminal conduct were improperly pleaded or insufficiently connected to actionable harm.

In doing so, Apple explicitly downplayed any overlap between those claims and Plaintiff's core

employment-based causes of action. It relied on factual distinctions to secure dismissals. Apple cannot now reverse course and assert that those same claims are "too intertwined" with the surviving ones to allow certification under Rule 54(b). "A party cannot, on the one hand, argue that a claim is unsupported by any specific facts, and on the other, argue that the same claim is so deeply interwoven with other claims that it must remain bound to them for appeal." — *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel prevents a party from taking contradictory positions in litigation).

### 2. Legal Distinctness, Not Factual Isolation, Is the Rule 54(b) Standard

Rule 54(b) does not require that claims be "factually unrelated." The Ninth Circuit has repeatedly held that claims may arise from the same factual setting and still qualify for Rule 54(b) certification where they involve distinct legal rights, elements, and relief. "*We have never held that claims must be factually unrelated in order to be separate*." — *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 n.2 (9th Cir. 2005).

In *Wood*, the Ninth Circuit emphasized that the relevant question is not whether claims share a common background, but whether appellate review of one claim would involve legal or factual determinations that would overlap with the others. *Id.* at 880. Here, the dismissed claims require resolution of entirely different legal theories than the remaining retaliation claims—e.g., tort liability, civil rights violations, strict liability doctrines—which the Ninth Circuit can review independently.

### 3. Apple Cannot Manufacture "Entanglement" After the Fact

Having secured dismissal of these claims on grounds of independence, Apple cannot now invoke "factual entanglement" to avoid appellate scrutiny. Any such reversal is not only legally dubious, but it also contradicts Apple's own litigation strategy. This is especially problematic where the only connection between the dismissed and surviving claims is the general timeline of Plaintiff's employment—a background that does not defeat separability under Rule 54(b). See *Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir. 1985) (Rule 54(b) certification proper where resolved claims did not "substantially overlap" with remaining claims despite shared chronology).

### D. Rule 54(b) Certification Will Not Cause Piecemeal Litigation— Denying It Will

Apple may argue that granting Rule 54(b) certification will promote piecemeal litigation and judicial inefficiency. That objection misstates both the governing law and the actual structure of this case. In truth, certifying the dismissed claims now would avoid duplication, promote efficient resolution, and prevent multiple trials and discovery phases that would otherwise be necessary if these claims were revived later.

### 4.    RULE 54(B) DOES NOT BAR ALL PIECEMEAL APPEALS—ONLY DUPLICATIVE ONES

Rule 54(b) exists to permit partial appeals—that is its entire function. What the rule guards against is duplicative or overlapping appellate review, where the Ninth Circuit might have to revisit the *same* legal or factual questions more than once. But where, as here, the certified claims are legally distinct and can be reviewed in isolation, Rule 54(b) serves its purpose: allowing a clean, self-contained appeal of resolved issues. "*The standard under Rule 54(b) is not whether the claims arise out of the same transaction, but whether they are sufficiently separable to avoid duplicate appellate review.*" — *Wood v. GCC Bend, LLC*, 422 F.3d 873, 880 (9th Cir. 2005).

Apple cannot identify any issue of law or fact that would require the Ninth Circuit to revisit its analysis in a subsequent appeal of the surviving retaliation claims. Each claim for which certification is sought requires a different legal framework, different factual proof, and different remedies.

### 5.    DENYING CERTIFICATION WOULD GUARANTEE INEFFICIENCY AND DUPLICATIVE PROCEEDINGS

Far from avoiding piecemeal litigation, denying certification now would guarantee it. If the Ninth Circuit later reverses one or more of the dismissed claims, this Court would need to:

- ○ Reopen discovery on those claims,
- ○ Re-brief and potentially re-litigate motions *in limine* or summary judgment,
- ○ Conduct a second trial, or a retrial, with overlapping evidence and witnesses.

This would burden both parties, the Court, and the appellate system itself. Rule 54(b) was designed to avoid exactly this kind of waste. "*Rule 54(b) was adopted... to avoid the hardship of delaying appeal until the entire case is concluded.*" — *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009). The Court can avoid this by certifying the claims now, allowing the Ninth Circuit to rule once, efficiently, and with no disruption to the ongoing litigation of Plaintiff's remaining claims.

### 6.    APPLE HAS ALREADY FRAGMENTED THIS CASE THROUGH

## Successive Dismissals

Ironically, Apple is the party that introduced segmentation and "piecemeal litigation" by seeking serial dismissals across multiple rounds of amended complaints. It should not now be heard to object to the logical procedural consequence of its own motion practice—namely, an immediate appeal of the claims it sought to sever from trial. *"A party that has pressed for final dismissal cannot simultaneously oppose the procedural consequences of that finality."* — *Cf. Curtiss-Wright*, 446 U.S. at 10 (certification appropriate where party sought full dismissal of claims now subject to appeal). This motion seeks to resolve what Apple has already carved away. That is not piecemeal litigation, it is judicial housekeeping.

## E.    Plaintiff Would Be Severely Prejudiced by Further Delay

Apple may contend that denying Rule 54(b) certification would not materially prejudice Plaintiff. That argument is not only legally incorrect—it is chillingly detached from the facts of this case. The plaintiff was exposed to lethal levels of arsine gas in her home, leading to severe physical harm, including heart failure, seizures, neurological damage, and long-term injury. This exposure occurred while Plaintiff was employed at Apple, and the company—upon learning she was investigating the source—fired her, stalked her, harassed her, burglarized her home, defamed her publicly, and ended her career.

Apple's conduct, if proven, would support multiple counts of civil and criminal liability. Yet its position in this litigation is effectively: *"There's no urgency to review these claims."* That is not a neutral posture—it is a calculated legal strategy to deny Plaintiff meaningful redress for what amounts to attempted corporate manslaughter and a campaign of terror.

## 7.    Plaintiff Has Suffered Irreparable Harm and Massive Financial Loss

Plaintiff's injuries are not speculative. She endured:

- o   Documented exposure to toxic semiconductor gases in her residential bedroom;
- o   Medical trauma, including cardiac events and neurological complications;
- o   Professional denylisting and reputational damage following her termination;
- o   Active retaliation, including surveillance, interference with housing, and digital and physical harassment;
- o   And economic damages valued at millions of dollars, including property damage, career

and relationship disruption, medical care, and safety-related costs.

Apple's actions transformed Plaintiff's life, and its litigation posture has only magnified the harm.

### 8. Further Delay Is Functionally a Denial of Justice

Plaintiff is now facing imminent bankruptcy after four years of waiting for justice. Apple's requested delay—effectively asking Plaintiff to wait another 2–3 years for appellate review—would mean that claims concerning chemical injury may never be heard by a jury. "Rule 54(b) exists to prevent hardship caused by undue delay. It was created so litigants would not be forced to 'wait interminably' to vindicate claims already resolved by the district court." — *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009). The suggestion that Plaintiff's near-fatal exposure, medical collapse, and sustained harassment do not justify appellate review is not just inaccurate—it is an insult to the principles of due process and judicial equity.

### F. This Case Will Not Resolve at Trial Without Rule 54(b)—It Will Fracture

Apple may argue that Rule 54(b) certification is unnecessary because Plaintiff can simply proceed to trial on the remaining claims, and appeal everything together at the end. That argument misunderstands both the structure of this case and the purpose of Rule 54(b). Without certification, Plaintiff cannot appeal the dismissed claims at all, and the trial that Apple envisions would proceed without a central piece of the story—the toxic exposure, the civil rights violations, and the emotional and physical injury—that Apple worked so hard to suppress.

### 9. Dismissed Claims Will Not "Resolve" at Trial—They Are Already Resolved

The trial will not include the dismissed claims unless they are reinstated. Without Rule 54(b) certification, Plaintiff has no immediate appellate remedy. And if the Court later proceeds to final judgment solely on the remaining claims, Plaintiff may never have a clean procedural window to challenge the dismissals. See *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 (9th Cir. 2002) (absent 54(b) certification, appellate jurisdiction does not attach to resolved claims). This is not a matter of timing—it's a matter of jurisdiction. The appellate court cannot review the dismissed claims until this Court certifies them.

### 10. Trial on the Surviving Claims Will Be Fragmented

## Without Resolution of the Dismissed Ones

The surviving retaliation claims cannot fill the evidentiary or narrative gap left by the dismissed tort and statutory claims. The jury will not hear the details of Plaintiff's toxic exposures, emotional trauma, or Apple's concealment unless those claims are reinstated. That will leave the trial structurally incomplete—and in many ways, misleading. Apple seeks to proceed to trial on a curated record, one in which the conduct that caused Plaintiff's harm is excluded, while only the fallout is litigated. That is not judicial efficiency. That is strategic sanitization of the trial record through procedural delay.

## 11. This Case Is Not "One Trial, One Appeal"—It Is Already a Split Case

This litigation is not a single-track action. Apple already splintered it with multiple rounds of motion practice. The case now contains:

- o   Final dismissals of toxic torts, emotional distress, racketeering, and civil rights claims;
- o   Ongoing employment retaliation claims;
- o   Procedural denial of leave to amend several core claims;
- o   And disputed factual overlap across claim sets.

What remains is a fractured case—and without Rule 54(b), it becomes an unreviewable one. Certification is the only procedural mechanism available to ensure the appellate court can weigh in now, rather than years from now—when key witnesses, evidence, and Plaintiff's ability to litigate may be gone.

## G. Denying Certification Risks Multiple Trials, Inconsistent Verdicts, And Irreparable Prejudice

If Rule 54(b) certification is denied, Plaintiff will be forced to wait until the conclusion of her surviving retaliation claims to appeal the dismissed causes of action. In that scenario, Plaintiff would proceed to trial on a partial case—one that omits core facts, legal theories, and damages associated with Apple's alleged toxic exposures and concealment of harm. The jury would award relief, if any, based on a limited and artificially narrowed record.

If the Ninth Circuit later reverses the dismissal of Plaintiff's toxic tort or civil rights claims, a second trial would be required—reopening discovery and fact-finding on events that occurred in 2020 or earlier. Key evidence may no longer exist. Apple may assert that records have been discarded as part of

routine document retention schedules. Witnesses may be unavailable, or their memories eroded. Yet Plaintiff would be forced to reassemble her case under far worse conditions than those available today.

Even if Plaintiff succeeds in that second trial, a third proceeding may be necessary—this time to correct or expand the punitive damages award in the retaliation case. A jury that never heard about the underlying chemical exposures, Apple's environmental practices, or its cover-up campaign could not have properly calibrated its damages assessment. To reach a just outcome, Plaintiff would be forced to seek post-judgment relief, a new trial on damages, or vacatur of prior verdicts. The very inefficiency Rule 54(b) seeks to avoid would come to pass—in triplicate.

This is not hypothetical excess—it is procedural inevitability. Certifying the dismissed claims now allows all parties to avoid this spiral, and ensures that Plaintiff's case is heard as a cohesive whole.

## H. The Need to Protect the Legal Rights of All Harmed

This case involves not only the rights of a single whistleblower, but also allegations of corporate misconduct involving hazardous chemicals, public safety, and the concealment of dangerous activity in highly sensitive environments. (See Exhibit A, the public U.S. EPA website page for Apple's factory showing multiple, serious violations that Apple's failed to correct over the last two years). The public has a right to know whether federal and state environmental safety laws are being properly enforced—and whether companies that expose employees and communities to dangerous toxins can evade judicial scrutiny through procedural delay.

Apple's conduct in this litigation reflects a broader pattern of aggressive defense tactics, including serial motion practice, procedural maneuvering, and weaponized delay. These tactics are not neutral—they are part of a strategy to deprive Plaintiff of access to timely adjudication and to exhaust her financial and emotional resources. The Court has the authority to consider a party's litigation posture when evaluating "just reason for delay" under Rule 54(b). See *Curtiss-Wright*, 446 U.S. at 10. Apple's tactics here exemplify the kind of abusive litigation behavior Rule 54(b) was designed to check.

The toxic tort claims dismissed in this case do not merely concern private injury. They implicate alleged chemical exposures affecting tens of thousands of individuals living or working near Apple's facilities—individuals who may have been exposed without notice, informed consent, or access to medical surveillance. Plaintiff's case alleges exposure to arsine gas and other semiconductor process emissions that

are among the most dangerous industrial chemicals known, including known carcinogens, neurotoxins, mutagens (alerting and mutating DNA), and cardiotoxic agents.

This Court's rulings—particularly those addressing the statute of limitations, accrual, and causation standards for toxic tort claims in California—now stand as precedents that may be cited against others similarly harmed. Unless and until those rulings are reviewed and clarified on appeal, they may operate to foreclose legal recourse for potentially thousands of people who have yet to understand or even discover that they were exposed.

Rule 54(b) certification is not just about one plaintiff's claims—it is about preserving appellate jurisdiction to clarify and correct rulings that impact a broader class of potential victims. Allowing appellate review now ensures that any errors of law or fact will not continue to ripple outward, damaging other injured parties' chances to seek redress in the future. The public has a compelling interest in ensuring that legal doctrines governing toxic exposures—especially those involving corporate secrecy, environmental concealment, and delayed discovery of injury—are subject to timely appellate review.

This case is not isolated. It is the first judicial test of alleged systemic contamination connected to Apple's industrial processes. The outcome of these claims may affect how public agencies, environmental monitors, injured workers, and civil litigants understand and address chemical injury arising from high-tech manufacturing. Rule 54(b) certification is not only the correct legal mechanism to preserve appellate jurisdiction—it is also a gateway to public accountability. Certification would allow affected individuals, advocacy organizations, environmental watchdogs, labor groups, and medical experts to participate through amicus briefs and ensure that the Ninth Circuit has the benefit of broader policy perspectives and scientific insight when reviewing the serious legal questions this case presents.

The consequences of the Court's dismissal order will extend far beyond this plaintiff. Rule 54(b) offers the Court a narrow but powerful procedural tool to permit immediate review, promote consistency in the law, and allow the voices of others potentially impacted by the same toxic exposures to be heard.

## A. Public Policy Supports Certification

The ramifications of this case extend beyond individual or community grievances, touching upon the health and safety of numerous others potentially exposed to similar hazardous conditions. Toxic tort litigation serves as a pivotal mechanism not only for addressing individual harms but also for safeguarding

public health and prompting governmental regulatory action.

Toxic tort cases often reveal systemic issues affecting entire communities. For instance, in *In re Agent Orange Product Liability Litigation*, veterans exposed to the herbicide Agent Orange during the Vietnam War suffered severe health consequences, leading to extensive litigation and subsequent compensation for affected individuals. This case underscored the widespread impact of toxic substances on both military personnel and civilians. *See*, *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987).

The *Camp Lejeune* water contamination incident exposed thousands of military personnel and their families to hazardous chemicals, leading to widespread health issues and subsequent legal actions.[1] Similarly, the *Exide lead contamination case* in Los Angeles County highlighted the dangers of industrial pollution, affecting the health of nearby residents and prompting extensive environmental cleanup efforts.[2]

Such litigation frequently acts as a catalyst for governmental agencies to enforce environmental laws more stringently. The *Woburn Toxic Trial* (*Anderson v. Cryovac, Inc., 96 F.R.D. 431 (D. Mass. 1983)*) involved allegations that industrial solvents contaminated the local water supply, leading to a cluster of leukemia cases. The case not only resulted in settlements for the affected families but also spurred the Environmental Protection Agency to intensify its oversight and remediation efforts under the Comprehensive Environmental Response, Compensation, and Liability Act.

By holding corporations accountable for environmental hazards, toxic tort litigation serves as a deterrent against negligent practices. In *Wiwa v. Royal Dutch Petroleum Co.*, the plaintiffs alleged that the company was complicit in human rights abuses and environmental degradation in Nigeria. See, *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88 (2d Cir. 2000). The settlement brought attention to corporate responsibility and environmental justice, reinforcing the necessity for companies to adhere to ethical and environmental standards.

Courts have increasingly recognized the importance of environmental justice, particularly for marginalized communities disproportionately affected by environmental hazards. The *Times Beach, Missouri* incident, where dioxin contamination led to the evacuation and demolition of an entire town,

---

[1] National Research Council (US) Committee on Contaminated Drinking Water at Camp Lejeune. *Contaminated Water Supplies at Camp Lejeune: Assessing Potential Health Effects,* Washington (DC): National Academies Press (US); 2009.
[2] Californnia EPA, DTSC, *Exide Cost Recovery Litigation, https://dtsc.ca.gov/exide-cost-recovery-litigation/*

highlighted the need for stringent environmental regulations and equitable enforcement to protect vulnerable populations.[3]

### B.  Retroactive Certification

In addition to certifying the February 27, 2025 dismissal order, Plaintiff requests that this Court also certify the October 1, 2024 dismissal order for finality under Rule 54(b). The Ninth Circuit has long recognized that a district court has discretion to retroactively certify interlocutory dismissals as final judgments, particularly when appellate review would provide clarity and resolve distinct issues. See *Pakootas v. Teck Cominco Metals, Ltd.,* 905 F.3d 565, 577 (9th Cir. 2018) (holding that a district court may issue Rule 54(b) certification after an initial interlocutory dismissal if it determines that no just reason exists for further delay). Similarly, in *Morrison-Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir. 1981), the Ninth Circuit emphasized that Rule 54(b) certification should be granted where the dismissed claims have been finally resolved and are factually distinct from remaining claims—a standard met here.

The Ninth Circuit's own concerns about the finality of the October 1 dismissal order further support this request. Rather than risk additional procedural complications or further delays in appellate review, this Court can resolve any lingering ambiguity by formally certifying the October 1, 2024 order as final under Rule 54(b). Doing so ensures that Plaintiff's pending interlocutory appeal proceeds efficiently and in accordance with the Ninth Circuit's jurisdictional requirements. Given that the October 1 order dismissed certain claims with prejudice and without leave to amend, its finality is not in dispute—what remains is only a procedural certification to allow the Ninth Circuit to proceed with review. Thus, to prevent unnecessary delay and procedural inefficiency, this Court should certify both the February 27, 2025 and October 1, 2024 dismissal orders as final.

## VI.  CONCLUSION

The plaintiff confirmed with the Ninth Circuit Clerk's office that she must file a second notice of appeal for the Feb. 27 2025 decision (in addition to her existing notice for the Oct. 1 2024 decision). The plaintiff lacked the funds to pay for the second notice of appeal but has now successfully completed

---

[3]  U.S. EPA, *A Town, a Flood, and Superfund: Looking Back at the Times Beach Disaster Nearly 40 Years Later,* https://www.epa.gov/mo/town-flood-and-superfund-looking-back-times-beach-disaster-nearly-40-years-later

fundraising from interested members of the public to cover the cost of the second appeal. The plaintiff plans to file a Protective Notice of Appeal to the Ninth Circuit prior to the 30-day statute of limitations if a decision is not issued at that time on this request.

The plaintiff respectfully requests that the Court enter a final judgment under Federal Rule of Civil Procedure 54(b) as to the claims that have been fully and finally adjudicated. These claims—dismissed with prejudice, or dismissed without leave to amend—are legally distinct from the remaining retaliation causes of action and involve separate elements, factual inquiries, and remedies. Their resolution will not interfere with the litigation of surviving claims and will, if anything, promote judicial economy by reducing the risk of duplicative proceedings, evidentiary fragmentation, and inconsistent verdicts.

Rule 54(b) was designed to prevent litigants from being trapped in procedural limbo when discrete claims are resolved but appellate review is otherwise unavailable. That is precisely the situation Plaintiff now faces. Without certification, she risks losing the opportunity to pursue substantial claims involving physical injury, constitutional harm, and corporate misconduct of the highest order. And if those claims are later revived on appeal, this Court will be burdened with reopening discovery, retrying claims, and recalibrating damages years after the relevant events—and potentially after the evidence has disappeared.

Accordingly, Plaintiff respectfully requests that the Court:

- Certify its prior orders of dismissal as final judgments under Rule 54(b)[4] ;
- Enter final judgment on the following dismissed claims[5]:
    - Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(a), (c), (d);
    - Sarbanes-Oxley Act, 18 U.S.C. § 1514A;
    - Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A)(iii);
    - California Civil Code §§ 52.1 (Bane Act) and 51.7 (Ralph Act);
    - California Business and Professions Code § 17200;
    - Claims for intentional infliction of emotional distress;

---

[4] Plaintiff does not include her breach of contract and breach of the implied covenant of good faith and fair dealing claims, or any dismissed sub-claims under surviving claims (such as under Cal. Labor Codes §§ 1102.5, 6310, 98.7, etc.) in this request due to factual and legal overlaps with the active district court claims – but does not waive her right to appeal these later.
[5] With RICO and IIED claims encompassing the common laws of the state of California, the state of New York, and the Commonwealth of Massachusetts.

- o  Negligent infliction of emotional distress;

- o  Strict liability for ultrahazardous activities;

- o  Nuisance (private, absolute, and per se).

- Grant any further relief the Court deems just and proper.

*Justice delayed is justice denied—and these claims have already waited long enough.*

Dated: March 23 2025

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

# VII. EXHIBIT A

## RE: 3250 SCOTT BLVD (NUISANCE, ULTRAHAZARDOUS ACTIVITIES, IIED) [3/23/25]



**Enforcement and Compliance**

## RCRA Compliance Pipeline (Compliance Monitoring → Violations → Enforcement Actions) (10 Years)

This table shows how violations relate to compliance monitoring (CM) activities and enforcement. Currently available for CAA and RCRA only. Full CM history available below.

| | Compliance Monitoring | | | Violations | | | | | Enforcement Actions | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Source ID | Compliance Monitoring Type | Compliance Monitoring Agency | Compliance Monitoring Date | Violation Type | Violation Agency | Violation Determined Date | Return to Compliance Date | | Enforcement Type | Enforcement Action Date | Penalty Assessed | Comp Action Cost |
| CAR000278176 | Focused Compliance Inspection | EPA | 01/16/2024 | 262.A Generators - General | EPA | 01/16/2024 | Open | | Inspection Report Written | 04/30/2024 | -- | -- |
| | | | | 262.B Generators - Manifest | EPA | 01/16/2024 | Open | | | | | |
| | | | | 265.BB: TSD IS-Air Emission Standards - Equipment Leaks | EPA | 01/16/2024 | Open | | | | | |
| | | | | 265.CC: TSD IS-Air Emission Standards - Tank/SI/Container | EPA | 01/16/2024 | Open | | | | | |
| | | | | 265.J-TSD IS-Tank System Standards | EPA | 01/16/2024 | Open | | | | | |
| | | | | 270.A Permits - General Information | EPA | 01/16/2024 | Open | | | | | |
| | | | | 270.A Permits - General Information | EPA | 08/17/2023 | Open | | | | | |
| CAR000278176 | Compliance Evaluation Inspection | EPA | 08/17/2023 | 262.A Generators - General | EPA | 08/17/2023 | 09/08/2024 | | Inspection Report Written | 04/30/2024 | -- | -- |
| | | | | 262.A Generators - General | EPA | 08/17/2023 | 09/08/2024 | | | | | |
| | | | | 262.A Generators - General | EPA | 08/17/2023 | 09/08/2024 | | | | | |
| | | | | 262.A Generators - General | EPA | 08/17/2023 | 09/08/2024 | | | | | |

## Three-Year Compliance History by Quarter

⊕ Download Data

| Status | Program/Pollutant/Violation Type | | QTR 1 04/01-06/30/22 | QTR 2 07/01-09/30/22 | QTR 3 10/01-12/31/22 | QTR 4 01/01-03/31/23 | QTR 5 04/01-06/30/23 | QTR 6 07/01-09/30/23 | QTR 7 10/01-12/31/23 | QTR 8 01/01-03/31/24 | QTR 9 04/01-06/30/24 | QTR 10 07/01-09/30/24 | QTR 11 10/01-12/31/24 | QTR 12+ 01/01-03/31/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RCRA [Source ID: CAR000278176] | | | | | | | | | | | | | |
| | Facility-Level Status | | No Violation Identified | No Violation Identified | No Violation Identified | No Violation Identified | No Violation Identified | Violation Identified | Violation | Violation Identified | Violation | Violation | Violation | Violation |
| | Violation | Agency | | | | | | | | | | | | |
| RCRA | 262.A Generators - General | EPA | | | | | | 08/17/2023 | ↑ | ↑ | ↑ | ↑ | ↑ | ↑ |
| RCRA | 262.A Generators - General | EPA | | | | | | 08/17/2023 | ↑ | ↑ | ↑ | 09/08/2024 | ↑ | ↑ |
| RCRA | 262.A Generators - General | EPA | | | | | | 08/17/2023 | ↑ | ↑ | ↑ | 09/08/2024 | ↑ | ↑ |
| RCRA | 262.B Generators - General | EPA | | | | | | | | 01/16/2024 | ↑ | ↑ | ↑ | ↑ |
| RCRA | 265.J-TSD IS-Tank System Standards | EPA | | | | | | | | 01/16/2024 | ↑ | ↑ | ↑ | ↑ |
| RCRA | 270.A Permits - General Information | EPA | | | | | | | | 01/16/2024 | ↑ | 09/08/2024 | ↑ | ↑ |
| RCRA | 262.A Generators - General | EPA | | | | | | 08/17/2023 | ↑ | ↑ | ↑ | ↑ | ↑ | ↑ |
| RCRA | 270.A Permits - General Information | EPA | | | | | | 08/17/2023 | ↑ | ↑ | ↑ | ↑ | ↑ | ↑ |
| RCRA | 262.A Generators - General | EPA | | | | | | | | 01/16/2024 | ↑ | ↑ | ↑ | ↑ |
| RCRA | 265.BB: TSD IS-Air Emission Standards-Equipment Leaks | EPA | | | | | | | | 01/16/2024 | ↑ | ↑ | ↑ | ↑ |
| RCRA | 265.CC: TSD IS-Air Emission Standards-Tank/SI/Container | EPA | | | | | | | | 01/16/2024 | ↑ | ↑ | ↑ | ↑ |

**U.S. EPA, Apple Inc, 3250 Scott Blvd,** https://echo.epa.gov/detailed-facility-report?fid=110001168254#





**U.S. EPA, Apple Inc, 3250 Scott Blvd,** https://echo.epa.gov/air-pollutant-report?fid=110001168254