CASE NO. 25-2028

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

ASHLEY M. GJØVIK, *an individual*,

*Plaintiff-Appellant*

v.

APPLE INC., *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court

for the Northern District of California

No. 3:23-CV-04597

The Honorable Judge Edward M. Chen

---

APPELLANT'S OPENING BRIEF

---

Ashley M. Gjøvik, JD
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

| | |
|---|---|
| TABLE OF AUTHORITIES | V |
| INTRODUCTION | 8 |
| JURISDICTIONAL STATEMENT | 2 |
| AUTHORITIES | 3 |
| ISSUES PRESENTED | 3 |
| STATEMENT OF THE CASE | 4 |
| SUMMARY OF THE ARGUMENT | 5 |
| STANDARD OF REVIEW | 7 |
| ARGUMENT | 8 |
| I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING REQUESTS FOR INJUNCTIVE RELIEF. | 9 |
| A. CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200 (UCL) INJUNCTIVE RELIEF. | 9 |
| B. *MARSY'S LAW* & CVRA RIGHTS INJUNCTIVE RELIEF. | 11 |
| C. GJOVIK'S REQUEST FOR JURISDICTION TRANSFER OF THE CERCLA RETALIATION CLAIM. | 13 |
| D. GJOVIK'S REQUEST FOR PRO SE DEFERENCE. | 15 |
| E. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO DISQUALIFY. | 16 |
| II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING CLAIMS WITH PREJUDICE AND/OR WITHOUT LEAVE TO AMEND. | 17 |
| F. THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING CLAIMS BASED ON LACK OF DETAIL WHERE THE REQUIRED DETAIL WAS IN THE SECOND AMENDED COMPLAINT. | 17 |
| G. THE DISTRICT COURT ABUSED ITS DISCRETION IN ALLOWING REPEATED 12G AND 12H VIOLATIONS TO FACILITATE DISCRETIONARY AND ERRONEOUS DISMISSALS. | 17 |
| H. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING RULE 12B6 DISMISSALS OF TOXIC TORT CLAIMS BASED ON IRRELVANT EVIDENCE AND FRAMED AS SANCTIONS. | 17 |
| I. THE DISTRICT COURT ERRORED WHEN REFUSING TO GRANT LEAVE TO SUPPLEMENT CLAIMS WITH ADDITIONAL VIOLATIONS | 18 |
| J. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND APPELLANT'S RICO 1962(A), (C), AND (D) CLAIMS. | 20 |
| K. THE DISTRICT COURT ERRORED IN REFUSING LEAVE TO AMEND AND SUPPLEMENT WITH EXTORTION AND SEXTORTION STATUTES | 22 |
| L. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING LEAVE TO AMEND THE BANE ACT CLAIMS, GIVEN GJOVIK'S RELIANCE ON THE COURT'S GUIDANCE AND ABILITY TO CURE | 24 |

M.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING LEAVE TO AMEND THE BANE ACT CLAIMS, GIVEN GJOVIK'S RELIANCE ON THE COURT'S GUIDANCE AND ABILITY TO CURE          26

III.  **THE DISTRICT COURT ERRORED IN DISMISSING CLAIMS WITH PREJUDICE.**          27

N.   THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS DUE TO STATUTE OF LIMITATIONS BASED ON AN INCORRECT LEGAL STANDARD.          28

O.   THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS WITHOUT CONSIDERING THE CLAIMS AS PUBLIC INTEREST.          30

P.   THE DISTRICT COURT ERRORED & ABUSED ITS DISCRETION BY DISMISSING THE 17200 CLAIM BASED ON AN IMPROPER LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS.          32

Q.   THE DISTRICT COURT ERRORED IN DISMISSING CLAIMS BASED ON AN INCORRECT THEORY OF LIABILITY, AND REFUSING TO CONSIDER THEORIES OF CONSPIRACY, ACCOMPLICE LIABILITY, AND RICO ENTERPRISE.          32

R.   THE DISTRICT COURT ERRORED BY DISMISSING THE RICO 1962(A) AND (D) BASED ON (A) CLAIM UNDER AN INCORRECT LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS.          33

S.   THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S RICO 1962(C) AND (D) CLAIMS DUE TO LACK OF ENTERPRISE.          36

T.   THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S RICO 1962(C) AND (D) CLAIMS DUE TO LACK OF CONTINUITY.          39

U.   THE DISTRICT COURT ERRORED IN DISMISSING RICO CLAIMS DUE TO PREDICATE ACTS CONTAINING EMPLOYMENT RETALIATION.          40

V.   THE DISTRICT COURT ERRORED BY DISMISSING THE ULTRAHAZARDOUS ACTIVITIES CLAIM BASED ON AN INCORRECT LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS.          42

W.   THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS WITHOUT CONSIDERATION OF CRIME VICTIM'S RESTITUTION RIGHTS.          44

X.   THE DISTRICT COURT ERRORED IN DISMISSING IIED/NIED CLAIMS BASED ON AN INCORRECT LEGAL STANDARD AND MISCHARACTERIZATION OF GJOVIK'S CLAIMS.          45

IV.  **THE COURT OF APPEALS SHOULD CONSIDER EXERCISING PENDENT JURISDICTION TO CORRECT ERRORS IN ALL CLAIMS.**          47

Y.   THE DISTRICT COURT ERRORED BY DISMISSING ANY RETALIATION CLAIMS DUE TO EXISTING PLAUSIBILITY.          47

Z.   THE DISTRICT COURT ERRORED WHEN DISMISSING 6399.7 BASED ON AN INCORRECT LEGAL STANDARD.          48

AA.   The District Court errored in Denying Dodd-Frank, SOX, and CERCLA Whistleblower claims under an incorrect legal theory and based on characterization of Gjovik's complaints.                                                           49

**CONCLUSION & RELIEF REQUESTED**                                            **50**

**STATEMENT OF RELATED CASES (FORM 17)**                                     **52**

**CERTIFICATE OF COMPLIANCE (FORM 8)**                                       **53**

**CERTIFICATE OF SERVICE**                            ERROR! BOOKMARK NOT DEFINED.

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Boyle v. United States,* 556 U.S. 938 (2009) ---------------------------------------------- 40

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006)------------------------51

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) ------------------------------------- 9

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) ----------------------------- 9

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980) ----------------------------- 3

*Erickson v. Pardus,* 551 U.S. 89 (2007) ----------------------------------------------------16

*Foman v. Davis,* 371 U.S. 178, 182 (1962)-----------------------------------------------passim

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 491 (2010) --15

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) ---------------------------- 20

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011).------------------------------10

*Leedom v. Kyne*, 358 U.S. 184, 190 (1958) -----------------------------------------------15

*Luthringer v. Moore*, 31 Cal. 2d 489 (1948) ----------------------------------------------- 45

*Medical Marijuana, Inc. v. Horn*, 604 U.S. ____ (2025) ----------------------------------37

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)------------------------------- 8

*Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009)-------------------------------14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ----------------------- 3

*NLRB v. Gissel Packing Co.*, 395 U.S. 575, 620 (1969) ----------------------------------- 50

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ---------------------------------------- 38

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) -------------------------------------- 50

*Thompson v. INS,* 375 U.S. 384 (1964) -----------------------------------------------------9

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ------------------------------------15

## US COURT OF APPEALS CASES

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) -----------------8, 9

*Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987)-------------------------------------12

*Earth Island Inst. v. Nash*, 92 F.4th 1104, 1114 (9th Cir. 2024) -------------------------------8, 9

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)---------------- 7, 21, 49

*Gant v. County of Los Angeles*, 772 Fed. Appx. 564, 565 (9th Cir. 2019) --------------------------- 26

*Gant*, 772 Fed. Appx. at 565. -------------------------------------------------------------------------------- 27

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018) --------------------------------------------- 38

*In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008)------------------------------ 46

*Karim–Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988)------------------------------16

*Kenna v. U.S. Dist. Court for the C.D. Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006)----------------- 47

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018) ------------------------19

*Kneevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000)----------------------- 22

*Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011)----------------------------------------- 50, 51

*Lopez v. Smith,* 203 F.3d 1122, 1129–30 (9th Cir. 2000)------------------------------------------------16

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) -----------------------------------------------------19

*Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) --------------------------------------------- 9

*Okonowsky v. Garland*, No. 23-55404 (2024) ------------------------------------------------------- 42

*Olsen v. H&R Block*, 682 F.2d 831 (9th Cir. 1982) --------------------------------------------------- 30

*Olsen v. H&R Block*, 682 F.2d 831, 833 (9th Cir. 1982) ---------------------------------------------- 30

*Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009) -----------------------------------------------3, 8, 9

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010)----------------------------------------------12

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1155 (9th Cir. 2009) -------------------------------------- 9

*Reed v. NLRB*, 927 F.2d 1249, 1254 (D.C. Cir. 1991) --------------------------------------------- 50

*Reese v. Cnty. of Sacramento,* 888 F.3d 1030 (2018). ------------------------------------------------ 27

*Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018) --------------------------------- 26

*United States v. Gordon,* 393 F.3d 1044, 1052 (9th Cir. 2004)-------------------------------------- 47

*United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc) ------------------------- 8

*United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) ---------------------------- 9

*United States v. Luis,* 765 F.3d 1061, 1066 (9th Cir. 2014) ------------------------------------------ 47

*United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)------------------------------------- 7

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) -----------------------------------------19

*Wolfe v. Barnhart,* 446 F.3d 1096 (9th Cir. 2006)-----------------------------------------------------17

## US District Court Cases

*Epic Games v. Apple Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. Apr. 30, 2025) ------------ 43

## U.S. CONSTITUTION

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ----------------------------------------------------- 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) --------------------------------------- 7

*U.S. Bank v. Vill. at Lakeridge*, 138 S. Ct. 960, 967 (2018). ------------------------------- 7

## STATE CASES

*Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979). ----------------------------------------- 48

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ------------------------------39

*Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 880 (2007).------------------- 28

*Bundren v. Superior Court*, 145 Cal. App. 3d 784, 791 (1983)---------------------------- 48

*Christensen v. Superior Court,* 54 Cal. 3d 868, 903 (1991)--------------------------------------21, 48

*Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017) -------------------- 26

*Cornell v. City and County of San Francisco*, 17 Cal. App. 5th at 804------------------------------- 26

Cornell, 17 Cal. App. 5th at 804------------------------------------------------------------------- 27

*County of Los Angeles* (2004) 32 Cal.4th 820, 841-843 ("Venegas I") ----------------------------- 26

*Doe v. Superior Court,* 16 Cal. App. 4th 196 (1993) ------------------------------------------14

*Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980 (1991) -------------------------------- 45

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). ----------------------------------------- 48

*Hughes v. Pair,* 46 Cal.4th 1035 (2009) ------------------------------------------------ 43

*Koebke v. Bernardo Heights Country Club,* 36 Cal. 4th 824, 841 (2005) ---------------------------- 28

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) -------------------------10

*Schuck v. Beck*, No. 37213-8-III (Wash. Ct. App. 2021) ------------------------------------- 46

*Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 843 (2004) -------------------------------- 26

## U.S. AND STATE STATUTES

18 U.S.C. § 1512 --------------------------------------------------------------- 25, 41, 44

18 U.S.C. § 1513 ------------------------------------------------------------------------ 42

18 U.S.C. § 1951 ------------------------------------------------------------------------ 24

18 U.S.C. § 1951 (The Hobbs Act) -------------------------------- 23

18 U.S.C. § 1961(1)-------------------------------------- 20, 44

18 U.S.C. § 3771(e) -------------------------------------- 47

28 U.S.C. § 1291---------------------------------------- 3, 29

28 U.S.C. § 1292(a)(1)------------------------------------2, 9, 11

28 U.S.C. § 2201 ---------------------------------------15

42 U.S.C. § 9613----------------------------------------15

Cal. Civ. Code § 51.7------------------------------------- 28

California Fair Employment and Housing Act (FEHA) ----------------11

California Government Code § 12945.8------------------------------12

California Labor Code §§ 230 and 230.1 -------------------------- 11

California Penal Code §§ 518, 518.5------------------------------ 23

California Penal Code Section 518.5 ----------------------------- 24

Clean Air Act, 42 U.S.C. § 7413(c) ----------------------------- 47

Crime Victims' Rights Act (CVRA)-------------------------------13

Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d)------------------------ 47

### U.S. AND STATE RULES & REGULATIONS

Federal Rule of Civil Procedure 12(b)(6) -------------------------- 7

Federal Rule of Civil Procedure 54(b) ----------------------------- 2

### TREATISES

Fisher Phillips, "*New Law Reframes Victim-of-Violence Leave in California,*" Sept. 30, 2024 ---12

Restatement (Second) of Torts § 520-------------------------------- 45

# LEGISLATIVE HISTORY

Assembly Bill 2499 (AB 2499) --------------------------------------17

# INTRODUCTION

Ashley Gjøvik (pronounced "JOE-vick") is an employee who, after exposing serious environmental and safety violations within Apple, was subjected to corporate retaliation that escalated into harassment, surveillance, and intimidation. This brief supports her appeal of the district court's dismissal of her RICO, 17200, IIED, and toxic tort claims against Apple. The claims should not have been dismissed at the Rule 12(b)(6) stage, as the complaints properly allege a pattern of racketeering and toxic exposure that not only violate federal and state laws but also harm public interest and societal values concerning transparency, corporate accountability, public health, and environmental protection.

Gjovik's case against Apple presents critical legal questions surrounding corporate accountability and environmental harm. The District Court's dismissal of her RICO and toxic tort claims at the 12(b)(6) stage overlooked substantial factual allegations of systemic corporate misconduct, including fraud, retaliation, and unlawful toxic waste dumping. These briefs support Gjovik's appeal to the Ninth Circuit, urging the Court to reinstate her claims based on a compelling legal framework that aligns with both federal statutes and public policy regarding corporate malfeasance, environmental protection, and the rights of whistleblowers.

This appeal is brought to correct what Gjovik believes are significant legal errors, not to impugn the integrity of the district court or its judge. Judge Edward Chen is a distinguished jurist, deeply respected for his commitment to civil rights and public service. Gjovik recognize the complexity of this case and the challenges posed by the conduct of the defendants, who have at times escalated rather than resolved conflict. Gjovik believes Judge Chen did his best with a difficult record, and nothing in this brief is intended as a personal criticism. Gjovik's concern lies with ensuring that the legal standards are correctly and consistently applied.

Appellant (holding a J.D. and a Certificate in Public International Law from Santa Clara University School of Law, 2022) appears pro se by choice and necessity. The scope and complexity of this litigation — spanning constitutional violations, retaliation, labor law violations, threats, harassment, RICO claims, concurrent

1

agency actions, criminal investigations, and environmental harms — has made self-representation the only practical way to fully present the matters at issue.

Apple has declined to engage in settlement discussions, making litigation necessary. For professional attorneys, litigation against this particular defendant — appears to be economically unviable. Additionally, due to the case's volume and interdisciplinary nature, retaining counsel would likely require significant narrowing or abandonment of key claims that Gjovik is prepared to develop and which raise important matters of public interest. Accordingly, Gjovik proceeds without counsel to ensure that the legal and factual record is preserved and presented as fully as possible and makes every effort to comply with the Court's rules despite extremely limited resources.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under multiple, independently sufficient grounds: First, pursuant to 28 U.S.C. § 1292(a)(1), this Court has jurisdiction over the district court's interlocutory orders denying injunctive relief. These are immediately appealable as of right. The orders in question denied preliminary or permanent relief to prevent ongoing harm, and their denial has serious, irreparable consequences.

Second, under the collateral order doctrine, this Court has jurisdiction to review certain discretionary dismissals that are conclusive, resolve important questions of law, and are effectively unreviewable on final appeal. The District Court dismissed several claims by applying incorrect legal standards or exercising discretion in ways that defy procedural norms and evade appellate review unless addressed now.

Third, although the district court declined to enter judgment under Federal Rule of Civil Procedure 54(b), the dismissed claims are functionally final. They are separate from those remaining, involve distinct legal theories and factual records, and their dismissal precludes meaningful relief. Accordingly, these dismissals qualify as final decisions under 28 U.S.C. § 1291, or alternatively, warrant appellate review under *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

2

Finally, this Court may exercise pendent appellate jurisdiction over related non-final orders where they are *"inextricably intertwined"* with the properly appealable rulings or necessary to ensure meaningful review. Appellant raises systemic legal errors that affect ongoing claims, and review of these errors is necessary to prevent ongoing legal harm and to clarify governing doctrine.

In the interest of ensuring orderly procedure and avoiding duplicative filings, Appellant respectfully submits that the time to appeal the relevant orders should be deemed tolled, or alternatively, subject to equitable principles, during the pendency of the reconsideration motion. Gjovik now brings this appeal following the Court's recent disposition and does so in good faith and with the aim of ensuring the merits may be fully and properly addressed.

Although the district court denied Gjovik's motion for Rule 54(b) certification, that denial does not preclude appellate review. The Ninth Circuit evaluates the appealability of orders independently and may exercise jurisdiction where the district court's decision effectively ends the litigation on separable claims, qualifies under the collateral order doctrine, or denies injunctive relief. See *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). Here, the claims at issue are factually and legally distinct, the challenged rulings are conclusive, and several grounds for appellate jurisdiction apply regardless of Rule 54(b) certification.

## AUTHORITIES

All relevant statutory, constitutional, and regulatory authorities, including full versions of the excerpted portions here, appear in the Addendum to this brief.

## ISSUES PRESENTED [1]

---

[1] Appellant-Plaintiff was unable to finish her brief on time within page limits if she listed out every issue presented, due to the numerous issues and complexity -- so here lists issues in groups, which are reflective of the argument sections, where issues are then detailed per topic / group. If that is not sufficient, Plaintiff will happily file a supplement with the additional content if allowed.

3

- The U.S. Court of Appeals should accept jurisdiction of this case. (Section I).
- The District Court abused its discretion in denying requests for Injunctive Relief (Section II).
- The District Court abused its discretion in dismissing # claims with prejudice and/or without leave to amend. (Section III).
- The District Court Errored in Dismissing Claims with Prejudice. (Section IV).
- The Court of Appeals should consider exercising pendent Jurisdiction to correct errors made in non-Final claims. (Section V).

## STATEMENT OF THE CASE

This appeal arises from a high-stakes and multifaceted dispute involving retaliation, environmental harm, and systemic corporate misconduct, including violations under RICO, California civil rights statutes, and common law torts. Following Apple's termination of Ashley Gjovik in September 2021, Apple engaged in an aggressive campaign of intimidation, denylisting, and retaliation aimed at deterring protected activity and litigation. Among these actions, Apple resorted to SWATing, burglary, hacking, witness tampering, threats, and various threats designed to silence Gjovik and prevent her from speaking out.

The District Court dismissed Gjovik's RICO claims under Rule 12(b)(6), initially granting leave to amend the § 1962(c) and (d) claims but later denying any amendment and dismissing these claims with prejudice. The court similarly dismissed civil rights claims under the Ralph and Bane Acts, as well as intentional infliction of emotional distress (IIED), concluding that the alleged conduct was either not legally actionable or that amendment would be futile.

Additionally, Gjovik alleged exposure to unlawful industrial emissions and the concealment of toxic risks associated with semiconductor fabrication byproducts, which were not disclosed by Apple. Claims for nuisance, toxic tort, and negligent infliction of emotional distress (NIED) were dismissed based on statute of limitations grounds, despite the fact that Gjovik filed her suit only months after discovering the

4

source and nature of her exposure in 2023. The court rejected the application of the discovery rule, asserting that Gjovik should have identified the fabrication facility and its emissions sooner, which was not reasonable given the company's concealment of crucial information.

Gjovik now seeks review of the district court's improper dismissal of her claims without leave to amend, its denial of injunctive relief, and its refusal to fully address the scope of post-employment retaliation and systemic misconduct outlined in her pleadings. The Ninth Circuit must consider the gravity of these claims, as Apple's actions—ranging from intimidation and harassment to exposure to harmful substances—should not be shielded by procedural dismissals at the 12(b)(6) stage. These claims raise critical issues of corporate accountability, employee rights, and public health, which warrant proper adjudication and remedy.

## Summary of the Argument

First, the district court's denial of an injunction under California's UCL (Business and Professions Code § 17200) was improper. Gjovik sought an injunction to address Apple's fraudulent practices and retaliatory conduct against her as a whistleblower. The court's refusal to grant injunctive relief prevented Gjovik from addressing ongoing harm, including reputational damage and unlawful business conduct. The denial of such relief undermines the policy goals of the UCL, which seeks to stop unfair business practices, including those based on fraud and public harm.

Second, the district court wrongly denied injunctive relief under the CVRA, which guarantees victims rights. Gjovik, as a victim of corporate misconduct involving toxic waste dumping and witness intimidation, should have been afforded these rights under the CVRA. The denial of an injunction to protect her rights to participate in the criminal justice process constitutes an error, especially when her toxic torts claim involves ongoing harm that requires immediate intervention to prevent further violations of her rights. The court acknowledged she has well pled

5

uncontested claims for retaliation due to status a victim of crime (230e), yet refused to provide her any of the rights designated for crime victims.

Regarding the final dismissals of Gjovik's claims, the district court's decision to dismiss her RICO claims, particularly those arising from fraudulent business practices, toxic waste disposal, and witness intimidation, should be reversed. The court failed to recognize that the predicate acts under 18 U.S.C. §§ 1962(a), (c), and (d), clearly support a RICO violation. Gjovik's allegations show a pattern of corporate misconduct, and the court's refusal to allow amendment to her RICO claim, despite presenting valid factual support for these allegations, was an abuse of discretion. The district court's dismissal of the Bane Act and Ralph Act claims should also be reversed. These claims involve serious civil rights violations stemming from retaliation and intimidation, which were improperly dismissed under the mistaken belief that they did not meet the legal threshold for these statutory claims. Similarly, the IIED and NIED claims, which stem from the retaliatory and harmful conduct of Apple, should have been allowed to proceed, as they clearly meet the legal standard for outrageous conduct.

Finally, Gjovik's toxic tort claims related to the toxic waste dumping and subsequent health effects should have survived dismissal. The district court misapplied the statute of limitations and discovery rule, ignoring the fact that fraudulent concealment and retaliatory actions delayed her awareness of the full extent of her injuries. These claims involve ongoing harm, and the court improperly prevented her from proceeding to trial based on an incorrect legal theory.

The district court's denial of injunctive relief under the CVRA and UCL, along with the final dismissal of key claims (RICO, Bane Act, Ralph Act, IIED, NIED, and toxic torts), was a legal error and an abuse of discretion. The Ninth Circuit should reverse the district court's decisions and allow Gjovik's claims to proceed, as these issues raise significant public policy concerns and corporate accountability related to environmental harm, whistleblower retaliation, and fraud. The CVRA rights to participate in the criminal process and the UCL protections

6

against fraudulent business practices must be upheld for justice to be served.

## STANDARD OF REVIEW

Because this appeal arises from orders granting motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), and denying leave to amend, all legal issues are reviewed de novo. The Court accepts the well-pleaded allegations in the complaint as true and determines whether they state a claim upon which relief can be granted. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions, constitutional issues, and mixed questions of law and fact are also subject to de novo review. See *U.S. Bank v. Vill. at Lakeridge*, 138 S. Ct. 960, 967 (2018).

A district court's denial of leave to amend is reviewed for abuse of discretion, but this standard is applied with extreme liberality, especially where amendment could cure pleading deficiencies. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal is improper where a complaint plausibly alleges facts that, if true, would entitle the plaintiff to relief, or where amendment would not be futile. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In this context, "abuse of discretion" is a misnomer. The Ninth Circuit has made clear that denial of leave to amend at the pleading stage must be justified by compelling reasons and is not entitled to significant deference, especially when amendment is sought early, offered in good faith, and presents plausible claims. See *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); *Foman v. Davis,* 371 U.S. 178, 182 (1962).

The denial of injunctive relief is reviewed for abuse of discretion, but that standard is applied with rigor. A district court abuses its discretion if it bases its decision on an erroneous legal standard, applies the correct standard improperly, or makes clearly erroneous factual findings. See *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Earth Island Inst. v. Nash*, 92 F.4th 1104, 1114 (9th Cir. 2024). Legal conclusions underlying injunctive rulings are reviewed de novo. See

*United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

Appellate review of collateral orders—those falling within the exception of the final judgment rule—also turns on legal content. Whether an order satisfies the *Cohen* criteria is a question of law, reviewed de novo. See *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). If the collateral order involves the denial of injunctive relief or the rejection of constitutional protections, the Court must assess both the jurisdictional threshold and the substantive ruling under appropriate standards—typically de novo for legal issues and abuse of discretion for remedy-based decisions.

## ARGUMENT

Gjovik exposed Apple's covert orchestration of massive toxic waste dumping, corruption and cover-ups, and intimidation and retaliation. When this misconduct is viewed from an expanded viewpoint, it's clear Apple's conduct violates the Racketeer Influenced and Corrupt Organizations (RICO) Act and numerous other federal statutes. The Ninth Circuit must consider the gravity of these claims, as the company's actions — including intimidation, harassment, and exposure to harmful substances — should not be shielded by a procedural dismissal at the 12(b)(6) stage.

Appellant respectfully submits that this appeal is timely under either standard appellate timelines or, in the alternative, under established equitable doctrines. A prior notice of appeal was filed within 30 days of the district court's denial of injunctive relief and other relevant rulings. That notice was dismissed by the Court following a motion by Appellees. Appellant then submitted a motion for reconsideration or clarification of jurisdiction, which remained under submission until last week, when the Court concluded those proceedings.

Courts have recognized that under appropriate circumstances, the time to appeal may be tolled or deemed preserved when a litigant has acted in good faith, sought clarification, and awaited guidance before re-filing. See, e.g., *Thompson v. INS*, 375 U.S. 384 (1964). Appellant respectfully asks that the Court view the current

8

notice of appeal in that light and permit the appeal to proceed to briefing and disposition on the merits.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING REQUESTS FOR INJUNCTIVE RELIEF.

This Court has jurisdiction to review the denial of injunctive relief under 28 U.S.C. § 1292(a)(1) and may also review certain interlocutory rulings under the collateral order doctrine. See *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Injunctive rulings are reviewed for abuse of discretion but underlying legal conclusions and the application of incorrect legal standards are reviewed de novo. See *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Earth Island Inst. v. Nash*, 92 F.4th 1104, 1114 (9th Cir. 2024). A district court abuses its discretion when it misstates the law, misapplies the correct standard, or fails to meaningfully engage with the facts alleged. See *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

The collateral order doctrine permits immediate appeal of a narrow class of non-final orders that conclusively resolve important legal issues, are separate from the merits, and would be unreviewable after final judgment. See *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). This doctrine often applies to orders implicating constitutional protections, or irreparable rights. Review is de novo where the collateral order turns on legal interpretation. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1155 (9th Cir. 2009). Where the district court has applied the wrong legal framework or failed to consider critical legal rights, appellate review is required. Although discretionary in form, the rulings challenged here rest on legal error, and thus merit non-deferential review.

### A. CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200 (UCL) INJUNCTIVE RELIEF.

California's Unfair Competition Law prohibits unfair, unlawful, or fraudulent business practices, including deceptive advertising and misuse of data. Cal. Bus. &

Prof. Code § 17200. To establish standing under the UCL, plaintiffs must show they have suffered an injury in fact and that they have lost money or property as a result of the defendant's unlawful conduct. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Gjovik can demonstrate economic loss by proving that Apple's conduct caused them to either pay more for a product than they otherwise would have, lose a property interest, or engage in a transaction that was unnecessarily costly. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011).

Gjovik alleges that Apple engaged in covert biometric data harvesting under the guise of workplace wellness and product testing. Apple directed its employees, including Gjovik, to participate in internal projects involving the collection of secret videos/photos and sensitive biometric data, such as facial geometry, gait, and vital signs. This data was used to develop internal algorithms, with no meaningful consent provided by employees, and customers were never informed of the data usage. (Note that Ninth Circuit court staff who live and work near Apple employees, may also have had secret photos, videos, and biometrics captured of them previously, secretly from these employees phones, and sent back to Apple to store and use for commercial purposes, with Apple threatening staff the secret photos of you are a trade secret).

When Gjovik raised concerns about the ethics and legality of these practices, she was punished and ultimately terminated. This practice presents an unsettled legal issue at the intersection of employee rights, consumer privacy, and biometric data regulation. There is a critical need for judicial review to clarify the boundaries of acceptable business practices versus exploitative and retaliatory data harvesting.

Gjovik sought preliminary and permanent injunctive relief to prevent Apple from continuing its illegal biometric data practices. However, the district court denied the injunction without meaningful analysis, and subsequently dismissed Gjovik's UCL claim. Apple then weaponized the dismissal to seek protective orders to classify these unlawful practices as "confidential" or "trade secrets," effectively suppressing discovery and discussion of its misconduct.

This Court should review the district court's denial of injunctive relief under

10

28 U.S.C. § 1292(a)(1), particularly in light of the chilling effect of allowing defendants to shield potentially illegal conduct.The core issue is not simply whether the UCL claim was dismissed, but whether the Court will allow Apple to institutionalize secrecy around its unlawful practices, effectively preventing meaningful redress for the public and employees. [See also, Appellant's 5/7 Motion for Injunctive Relief related to the basis of the UCL claim].

### B. *Marsy's Law* & CVRA Rights Injunctive Relief.

Appellant invoked her rights under *Marsy's Law*, the California Constitution, and parallel statutes to be treated as a crime victim during the discovery phase of this litigation. She cited multiple predicate acts, including physical harm, threats, obstruction of justice, and retaliatory surveillance. The District Court summarily denied the request without analysis.  As states increasingly embed constitutional victim rights into both criminal and civil contexts, courts must determine when those rights carry enforceable procedural weight. This appeal provides an opportunity to clarify the constitutional floor of dignity and protection owed to those who suffer criminal harms intertwined with civil retaliation.

Assembly Bill 2499 (AB 2499), signed into law by Gov. Newsom on Sept. 29, 2024, represents a legislative watershed moment for the protection of employees who are victims of violent crime. Effective Jan. 1 2025, AB2499 repeals former California Labor Code §§ 230 and 230.1 and recasts their protections as enforceable civil rights under the California FEHA, codified at California Government Code § 12945.8. This expansion unambiguously confirms the California Legislature's intent to elevate the status of crime victims in the workplace to that of a protected class, granting them full access to the courts and civil enforcement mechanisms to seek redress against retaliation, discrimination, and ongoing victimization.

Collateral order appeals are particularly recognized in discovery disputes that implicate rights not fully remediable after final judgment. In, *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Ninth Circuit permitted an appeal of an order

11

compelling internal campaign communications on First Amendment grounds. The Court held that compelled disclosure of expressive association materials could chill constitutional rights and was unreviewable later In *Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987), the court allowed interlocutory appeal from a discovery order threatening the movant's privacy rights. Thus, where a litigant claims that a discovery order violates state constitutional rights (e.g., privacy or free association under a state bill of rights) or federal statutory protections and where such violation would not be correctable on appeal from final judgment, the Ninth Circuit has discretion to exercise jurisdiction under the *Cohen* doctrine.

Gjovik respectfully submits that the Ninth Circuit must establish a judicial test for determining the procedural rights of crime victims in civil litigation. This includes ensuring that crime victims' constitutional and statutory rights are upheld during discovery and litigation — especially when abusive tactics, retaliation, and harassment by the Apple threaten to obstruct or silence the victim's participation in the legal process.

The lower court denied Gjovik's right to invoke Marsy's Law (California Constitution, Article I, § 28(b)), AB 2499, and CVRA during discovery proceedings -- which is a clear error. The Ninth Circuit should reverse the district court's ruling and establish clear guidelines for how crime victims' rights are respected in civil discovery. This case presents an issue of first impression, and the Ninth Circuit is in the unique position to set precedent that will ensure victim rights are respected nationwide. The Ninth Circuit must determine whether the individual asserting crime victim rights in civil litigation qualifies as a crime victim. The Crime Victims' Rights Act (CVRA) applies nationwide to federal witnesses, protecting them from intimidation or retaliation in civil matters.

If the district court has denied a crime victim's right to participate fully in civil litigation, the Ninth Circuit should find that such a decision constitutes a collateral order and should be immediately appealable. This denial results in irreparable harm from abusive discovery tactics that retraumatize crime victims, obstruct government

12

investigations and proceedings, and silence their ability to testify and report further misconduct to law enforcement or regulators. *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009) clarifies that denials of victim rights in civil discovery can be immediately reviewed under the collateral order doctrine.

A stay of district court proceedings should also be granted, as the stakes are high, any damage done during discovery cannot be undone later, and much damage has already been done. [see Motion for Injunction]. Federal courts have an obligation to enforce state legal protections on matters of victim rights under *Erie Railroad Co. v. Tompkins* (1938). As recognized in *Doe v. Superior Court,* 16 Cal. App. 4th 196 (1993), courts must balance discovery with constitutional protections for privacy and dignity, particularly in cases involving mental health records, trauma, or victimization.

### C. Gjovik's Request for Jurisdiction Transfer of the CERCLA Retaliation Claim.

Gjovik brought a retaliation claim under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(h), arising from protected disclosures related to violations of the site's Record of Decision, Land Use Covenant, and vapor intrusion safety requirements. CERCLA does not include administrative exhaustion requirements and does not delegate whistleblower adjudication to the Department of Labor or any agency tribunal. Instead, it expressly places jurisdiction over enforcement actions and related retaliation claims in the U.S. District Courts.

Despite this clear statutory directive, the Department of Labor has retained jurisdiction over Gjovik's CERCLA retaliation claim since 2021 through its whistleblower program, erroneously asserting authority that Congress did not grant. Gjovik requested the District Court assert jurisdiction over the claim and prohibit further administrative proceedings, but the court declined or failed to act, effectively permitting the *ultra vires* retention of the matter by the agency. This failure amounts to a constructive denial of equitable relief and opens a jurisdictional vacuum that

13

contradicts both the statutory scheme and fundamental constitutional principles.

Nothing in CERCLA authorizes the Department of Labor to adjudicate retaliation claims. Unlike other environmental statutes (e.g., the Clean Air Act or RCRA), CERCLA lacks provisions granting OSHA or the Secretary of Labor adjudicatory authority over whistleblower complaints. The relevant section, 42 U.S.C. § 9613, clearly situates jurisdiction for CERCLA-based claims in the U.S. District Courts, not in administrative proceedings.

Any attempt by the Department to retain such a claim is an exercise of power not delegated by Congress, rendering the proceeding void ab initio and violative of the separation of powers. See *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 491 (2010) ("The separation of powers does not depend on the views of individual Presidents, nor on whether the encroached-upon branch approves the encroachment."); see also *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) (allowing pre-enforcement review where agency proceedings pose constitutional or jurisdictional questions not committed to the agency).

Gjovik's request was narrowly tailored: to have the District Court assert jurisdiction over the CERCLA claim, declare it no longer within the agency's authority, and prohibit duplicative administrative action on the matter. The Court was not asked to enjoin the agency generally, nor to interfere in unrelated matters — only to protect the Gjovik's access to a proper forum for her claim.

This relief is well within the District Court's equitable powers under 28 U.S.C. § 2201 and its inherent authority to protect its jurisdiction. It is also consistent with federal precedent permitting courts to enjoin *ultra vires* agency actions that threaten constitutional rights or exceed statutory authority. See also *Leedom v. Kyne*, 358 U.S. 184, 190 (1958) ("This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.")

Because the CERCLA retaliation claim was improperly retained by the Department of Labor and the District Court failed to assert jurisdiction or prohibit

14

agency overreach, this Court should reverse the effective denial of equitable relief, hold that the CERCLA claim is properly before the District Court, and direct the court below to enter an order prohibiting further agency adjudication of the CERCLA matter. Further, if the court feels adventurous, it does seem proper to enjoin U.S. DOL from claiming exclusive jurisdiction over claims of which they have no jurisdiction (i.e., CERCLA whistleblower retaliation). [2]

### D. Gjovik's Request for Pro Se deference.

The Ninth Circuit has long held that pro se litigants are entitled to notice, opportunity to amend, and hearings before dismissal, unless the complaint is legally frivolous — which this was not. *Karim-Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988); *Lopez v. Smith,* 203 F.3d 1122, 1129-30 (9th Cir. 2000). Gjovik received no meaningful hearing, was denied scheduling and oversight, and was procedurally cornered into default without formal adjudication. This violates due process.

In the Ninth Circuit, pro se litigants—individuals who represent themselves without the assistance of an attorney—are generally afforded some level of leniency in recognition of the challenges they face in navigating the legal system. This leniency can include deference in procedural matters. Notably, the Ninth Circuit recognizes that a pro se litigant is not held to the same standard as a licensed attorney, especially when it comes to legal procedures, complex motions, or strict adherence to court rules.

Here, the court issued procedural rules and expectations that far exceeded the FRCP and local rules, and the court did not hold Apple's counsel to these rules, and admonished Gjovik about any imperfections in procedure or timing. ("Admonished" is the characterization used by Apple's counsel while gloating about it in a later

---

[2] The District Court's interpretation of the CERCLA is reviewed de novo. See Arconic, Inc. v. APC Inv. Co., 969 F.3d 945, 950 (9th Cir. 2020), cert. denied sub nom. APC Inv. Co. v. Howmet Aerospace Inc., 141 S. Ct. 2838 (2021). Jurisdictional issues are also reviewed de novo. See United States v. Shell Oil Co., 294 F.3d 1045, 1052 (9th Cir. 2002).

15

hearing and gleefully urging the court to "further admonish" Gjovik).

Plaintiff's responses repeatedly asked the court to provide her the deference of a pro se litigate because she was not an attorney, was overpowered by Apple's resources, had no resources, have ADHD and autism, suffer from severe PTSD, and was suffering extremely severe emotional distress from the events and situation. The court repeatedly said no, even expressly saying PTSD is no excuse to request an extension – in a crime victim retaliation & IIED case. It would be impossible for Gjovik to plead an IIED claim while concurrently having no severe distress.

### E. The District Court Abused its Discretion in Denying the Motion to Disqualify.

Gjovik filed a Motion to Disqualify Apple's counsel due to them being fact witnesses as they were retained and involved in her case well prior to the defendant's termination of Gjovik's employment – something they hid until after it was too late for Plaintiff to raise again – waiting over a year to share their privilege log, which recently revealed this. Only through FOIA did Gjovik also then learn that these same counsel were involved in concocting the farcical pretext for her termination, and they intentionally chose to use naked photos of Gjovik in the formal documentation for the termination. These naked photos were taken by the face "Gobber" application on Gjovik's phone and were distributed by the global security employee Appleseed, who later sued and stalked Gjovik, and even sent several letters to the district court with sworn declaration making false allegations against Gjovik and demanding to have all evidence and allegations about her removed from the case.

The U.S. District Court errored in cancelling the hearing and not questioning Apple's counsel, and instead taking them at their word, despite these facts, allegations, and evidence. Gjovik also complained about years of digital harassment from accounts she believed to be controlled by these attorneys, and cited harassment through the formal litigation process as well. Apple told the court that they were not witnesses, said they never harassed her, and claimed the motion was baseless. The court denied the motion to disqualify in error of law and procedure, and with abuse

16

of discretion. Due to the situation there should have at least been an evidentiary hearing; plaintiff even filed multiple exhibits.

## II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING CLAIMS WITH PREJUDICE AND/OR WITHOUT LEAVE TO AMEND.

### F. THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING CLAIMS BASED ON LACK OF DETAIL WHERE THE REQUIRED DETAIL WAS IN THE SECOND AMENDED COMPLAINT.

The District Court dismissed half of Gjovik's claims for failing to meet Rule 12(b)(6) plausibility standards, despite (1) the factual detail included in the original, comprehensive complaint, and (2) the district court's own acknowledgment that the longer version contained the relevant facts. This dismissal is not only logically inconsistent — it is substantively indefensible in light of the actions taken by two separate federal agencies on the very same factual basis.

### G. THE DISTRICT COURT ABUSED ITS DISCRETION IN ALLOWING REPEATED 12G AND 12H VIOLATIONS TO FACILITATE DISCRETIONARY AND ERRONEOUS DISMISSALS.

The District court errored in allowing Apple filed repeated subsequent 12(b)(6) and 12(f) motions, in knowing violation of 12(g) and 12(h). The court allowed it, refused to allow Gjovik additional supplementation or briefing, and dismissed these claims for almost entirely discretionary and erroneous reasons. Reflecting upon Gjovik's complaint the 12(b)(6) motions were harassment, he said they were not, because he did dismiss things, but it was all erroneous.

### H.   THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING RULE 12B6 DISMISSALS OF TOXIC TORT CLAIMS BASED ON IRRELVANT EVIDENCE AND FRAMED AS SANCTIONS.

While evidentiary rulings such as judicial notice are generally discretionary, the Court reviews de novo whether a district court improperly considered or excluded materials in resolving a Rule 12(b)(6) motion. See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018). A dismissal based on

17

selective or inconsistent application of the incorporation-by-reference doctrine, or reliance on facts outside the pleadings without converting the motion to one for summary judgment, is improper. See *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, the district court dismissed several claims after granting judicial notice to materials offered by Defendant, while declining to consider Gjovik's responsive materials filed days after the opposition deadline—despite timely filing the opposition itself. To the extent the court relied on disputed materials or treated the timing as grounds to disregard substantive content without analysis, the dismissal reflects not only procedural imbalance but a misapplication of the Rule 12(b)(6) standard, which requires accepting the complaint's allegations as true and drawing all inferences in the Gjovik's favor.

## I.  The District Court Errored when refusing to Grant Leave to Supplement Claims with Additional Violations

Gjovik also requests to amend the complaint to add claims supported by new evidence that were not previously available, including an additional predicate act under the RICO statute and a new basis for the IIED claim. The new evidence strengthens Gjovik's allegations of corporate misconduct, particularly with respect to Defendant's systematic use of intimidation, retaliation, and unlawful surveillance.

First, the new predicate act under RICO arises from Defendant's use of Gjovik's personal photographs to further their campaign of harassment and retaliation. This act directly ties into the broader pattern of racketeering activity under 18 U.S.C. §§ 1512 and 1513, involving witness intimidation and retaliation against Gjovik for her whistleblowing actions. The unlawful possession and use of Gjovik's private images qualify as a new form of harassment and coercion, which constitutes a violation of RICO. Under 18 U.S.C. § 1961(1), these acts are recognized as valid predicate offenses of racketeering. By incorporating this new predicate act, Gjovik's RICO claims are further substantiated, showing a continuous and

coordinated pattern of racketeering activity orchestrated by Defendant.

The Ninth Circuit has consistently held that the key to determining whether a pattern of racketeering exists is whether the acts are related and continuous. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, the continuous and related acts of harassment, use of personal images, and obstruction clearly demonstrate that Defendant's actions constitute a sustained effort to suppress Gjovik's disclosures and retaliate against her for exposing wrongdoing. This is the type of ongoing and coordinated activity that RICO is designed to address.

Second, the newly discovered evidence provides a new basis for Gjovik's claim of Intentional Infliction of Emotional Distress (IIED). The use of Gjovik's private photographs for purposes of harassment and intimidation further exacerbates the emotional and psychological harm she suffered. This action constitutes extreme and outrageous conduct, which directly contributed to the severe emotional distress that Gjovik experienced, including anxiety, depression, and other psychological symptoms. The Defendant's actions, including retaliation, surveillance, and the use of private photographs to manipulate and harass Gjovik, rise to the level of "outrageous" conduct necessary to sustain an IIED claim under California law. Given the severity of the harm caused by these actions, and the new evidence, Gjovik's IIED claim should be amended to include this additional basis for recovery.

As *Christensen v. Superior Court,* 54 Cal. 3d 868, 903 (1991), makes clear, IIED claims are permissible when a defendant's actions are "outrageous." In order to even proceed with the instant litigation, she has to face that Apple will be using nonconsensual naked photos of her as their primary "defense" in this case. [See Plaintiff's Motion for Injunction].

The Court should allow Gjovik to amend her IIED claim to reflect the full scope of her emotional distress caused by Defendant's misconduct. Allowing Gjovik to amend her complaint to include the new predicate act under RICO and the expanded IIED claim would ensure that all relevant facts are considered and properly adjudicated. The newly discovered evidence demonstrates a pattern of corporate

19

misconduct and harassment that was previously undisclosed, and it provides additional grounds for Gjovik to seek redress for the harm she has suffered. The Court should grant leave to amend to ensure that Gjovik's claims are fully and fairly presented.

### J. The District Court Abused its Discretion in Denying leave to amend Appellant's RICO 1962(a), (c), and (d) Claims.

The District Court abused its discretion by denying leave to amend Appellant's RICO §§ 1962(a), (c), and (d) claims. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely granted unless there is evidence of undue delay, bad faith, or futility. The Ninth Circuit applies a liberal standard in favor of amendment when new facts are discovered that could cure deficiencies in a Gjovik's original allegations. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Gjovik has credibly alleged that Apple's environmental misconduct falls within the purview of predicate acts such as wire fraud, obstruction of justice, and retaliation against whistleblowers. Apple's decision to retaliate against Gjovik — including stalking, harassment, and other intimidating tactics — is consistent with behaviors of organized criminal enterprises that seek to silence those who threaten to expose their wrongdoing. RICO's definition of "enterprise" includes any group of individuals associated with conducting illegal activities. Apple, by its internal structure and its intent to cover up violations, qualifies as such an entity.

Additionally, Gjovik's allegations of fraud, particularly regarding the deceptive reporting of waste diversion under Apple's *"zero waste"* program, reflect widespread corporate manipulation. This is evident in the way Apple purportedly diverted hazardous waste in ways that violated environmental laws but boosted executive pay and made the company appear environmentally responsible. Such actions mirror the systemic fraud seen in previous RICO cases involving corporate malfeasance.

The court's decision to deny amendment in this case was not based on merits

20

but was a discretionary judgment that failed to consider new evidence Gjovik uncovered regarding additional unlawful conduct. The fact that Gjovik discovered more evidence of wrongdoing after the original dismissal, which would have supported the RICO claims, should have warranted leave to amend the complaint.

Gjovik's RICO claims, dismissed without prejudice, were sufficiently pled to meet the basic requirements under *Twombly* and *Iqbal*. The District Court's denial of leave to amend was not based on any substantive legal analysis but on an arbitrary preference for an expedited resolution. When a claim is plausible, plaintiffs should be given the opportunity to amend, especially where they have not been afforded a fair chance to fully plead their case. Denying this opportunity to amend was an abuse of discretion that deprived Gjovik of a fair opportunity to substantiate her claims.

The Ninth Circuit has repeatedly stated that dismissals with prejudice and denials of amendment are subject to strict scrutiny, particularly when new facts arise that could potentially strengthen the claims. *See Kneevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). The District Court, by denying amendment, effectively prevented Appellant from presenting a full record of misconduct. Given the complexity of the alleged wrongdoing and the ongoing nature of the fraudulent activities, the Ninth Circuit should find that the denial of leave to amend was an abuse of discretion, especially since newly discovered evidence could have provided the necessary factual basis to support Appellant's claims under RICO.

In denying leave to amend, the district court expressed a preference for expedited resolution, suggesting Gjovik refrain from amending to allow Apple to answer and move the case forward. However, Rule 12(b)(6) is not a procedural tool to dismiss meritorious claims simply for the sake of efficiency. *Foman v. Davis,* 371 U.S. at 182, dictates that courts must permit amendment unless the claims are entirely unamendable. Gjovik's RICO claims were plausibly pled and could have been strengthened through amendment. The refusal to allow amendment contradicts the fundamental principle that plaintiffs should be given the chance to cure deficiencies in their pleadings unless the claims are beyond saving.

21

For the reasons stated above, the dismissal of Gjovik's RICO §§ 1962(a) and (d) claims with prejudice was improper and should be reversed. The District Court's dismissal of RICO §§ 1962(c) and (d) based on c claims should also be reversed, and Gjovik should be given an opportunity to amend and fully state the enterprise and continuity elements, as leave to amend is routinely granted in the Ninth Circuit. Finally, the district court's refusal to allow any further amendments was an abuse of discretion and inconsistent with well-established rules of civil procedure. Gjovik's claims are plausible and deserve the opportunity to be fully litigated.

### K. The District Court Errored in Refusing Leave to Amend and Supplement with Extortion and Sextortion Statutes

Gjovik also seeks to amend her complaint to include claims of extortion and sextortion under Cal. Penal Code §§ 518, 518.5, as well as federal extortion statutes under 18 U.S.C. § 1951 (The Hobbs Act). These statutes are relevant because they criminalize coercive conduct that involves the use of threats to obtain something of value or to compel a person to do something against their will. The newly discovered evidence, particularly involving the unlawful possession and dissemination of Gjovik's private photographs, forms the foundation for these claims. alifornia Penal Code Section 518 defines extortion as the obtaining of property from another through the wrongful use of force, fear, or threats. *Sextortion*, specifically addressed under California Penal Code Section 518.5, involves threats to distribute private, intimate images unless the victim complies with certain demands.

In this case, the sextortion claims raised by Gjovik are deeply connected to the witness intimidation she experienced after exposing Apple's corporate wrongdoing in the Batterygate incident.[3] Gjovik alleges that Defendant's conduct—harassing, intimidating, extorting, and coercing her using her private nude photographs,

---

[3] See for example, iPhone Slowdown Class Action $500 million Settlement (USA – March 2020); "Batterygate" Multistate $113 million Settlement (USA – November 2020); French "Batterygate" €25 million Fine (France – February 7, 2020).

22

combined with the objectives of Apple's extortion being obstructing her from being a witness to U.S. government against Apple, and the threat of Apple using these images to further manipulate of her—is a scheme fits squarely within the statutory definitions of extortion and sextortion (and racketeering). Defendant's use of Gjovik's private photos in retaliation for whistleblowing, and to prevent more whistleblowing, not only subjected Gjovik to unlawful control but also severely compromised her personal privacy and safety.

Gjovik's allegations show that after she complained about Apple's use of sextortion in connection with her role as a witness to corporate misconduct, Apple escalated its harassment by engaging in further sextortion in retaliation for her whistleblowing. This type of conduct, wherein sextortion is used as both a tool of witness intimidation and retaliation, is precisely the kind of activity that falls within the RICO framework. Under 18 U.S.C. § 1512 (witness tampering) and § 1513 (retaliation against informants), such retaliatory acts are predicate offenses under RICO, as they are intended to interfere with legal processes and intimidate individuals from exposing corporate malfeasance.

The District Court erred in dismissing the motion to amend, as the sextortion and witness intimidation claims are legitimate predicates for RICO violations and should have been allowed to proceed. These claims are grounded in serious legal concerns, including fraud, obstruction of justice, and witness tampering, which directly relate to Gjovik's business losses, emotional distress, and the systemic retaliation she experienced. These claims should have been allowed to proceed because they meet the criteria under RICO and have been supported by numerous cases where retaliation in the form of witness intimidation or sextortion has been sufficient to sustain a pattern of racketeering.

The Ninth Circuit's precedents strongly favor liberally granting motions to amend, especially when claims involve serious allegations like witness retaliation or extortion, which serve to preserve public policy objectives by deterring illegal corporate practices and supporting the rights of whistleblowers. Allowing Gjovik to

23

amend her complaint to incorporate these new causes of action under the extortion and sextortion statutes would provide a more complete picture of Defendant's unlawful conduct. These claims align with the broader pattern of racketeering and retaliation, adding another layer of protection for individuals who are subject to corporate abuse and exploitation.

### L. The District court Abused its Discretion when denying Leave to Amend the Bane Act claims, Given Gjovik's Reliance on the Court's Guidance and Ability to Cure

The Bane Act provides a cause of action where a person's constitutional or statutory rights are interfered with, or attempted to be interfered with, by threats, intimidation, or coercion. To state a claim, a Gjovik must allege a specific right secured by the Constitution or laws of the United States or California; interference or attempted interference with that right; by threats, intimidation, or coercion. See *Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 843 (2004); *Cornell v. City and County of San Francisco,* 17 Cal. App. 5th 766, 801 (2017). The Bane Act does not require that the coercive conduct occur during employment. Post-employment conduct — including witness intimidation, retaliation for whistleblowing, or interference with court access — can constitute actionable threats or coercion under the statute if they chill or suppress the exercise of protected rights.

Courts have recognized Bane Act claims where an employer or agent retaliates against a former employee for testifying or preparing to testify; there is intimidation aimed at preventing reporting of legal violations or participation in legal proceedings; and the coercion targets First Amendment or due process rights, especially in retaliation for litigation activity. See *Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018); *Gant v. County of Los Angeles*, 772 Fed. Appx. 564, 565 (9th Cir. 2019); *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th at 804.

In this case, the complaint alleges a campaign of post-termination retaliation, including witness intimidation and interference with judicial processes, clearly

24

implicating constitutional rights such as petition clause (First Amendment); due process (access to courts); rights as a whistleblower under California law (e.g., Lab. Code § 1102.5). This type of coercive post-employment conduct, especially if targeted and repeated, supports a plausible Bane Act claim under both state and federal interpretations.

To state a Bane Act claim, a plaintiff must allege interference (or attempted interference) with legal or constitutional rights through threats, intimidation, or coercion. See, *County of Los Angeles* (2004) 32 Cal.4th 820, 841-843 ("Venegas I"). Importantly, the coercion need not be violent or physical — it may include psychological pressure or retaliatory actions designed to suppress protected activity. *Reese v. Cnty. of Sacramento,* 888 F.3d 1030 (2018). Here, Gjovik alleged a campaign of post-termination retaliation; threats and intimidation aimed at deterring cooperation from potential witnesses; actions designed to interfere with Gjovik's exercise of rights under the First Amendment, whistleblower protections, and access to courts. Here, one of the named actors even sent sworn declarations to this docket making false allegations against Gjovik and urging that her case be dismissed.

These allegations are not only consistent with the text of the Bane Act but are precisely the type of conduct the law was designed to deter — systemic abuse of power aimed at chilling civil rights. The Ninth Circuit and California courts have held that where coercion targets rights such as speech, litigation, or whistleblowing, and where that coercion is distinct from or in addition to the underlying violation, the Bane Act applies. Cornell, 17 Cal. App. 5th at 804; Gant, 772 Fed. Appx. at 565.

The District Court erred in concluding that Gjovik failed to plead "coercion" because the complaint included detailed factual allegations about reputational threats, professional interference, and targeted obstruction of legal proceedings. Under *Eminence Capital,* denial of leave to amend is improper unless amendment would be futile, unduly prejudicial, or pursued in bad faith. 316 F.3d at 1052. Here, none of those factors applied. Gjovik was explicitly told by the district court not to amend in the first instance in order to "move the case forward." Gjovik reasonably

25

relied on that instruction, and the result was procedural disadvantage.

Gjovik later sought to amend based on additional factual context — including further retaliatory incidents and clarifying language regarding the nature and timing of the threats. The proposed amendment would have addressed any perceived deficiencies under Rule 8 and plausibility standards. By denying leave without allowing the record to be supplemented, the court effectively converted its permissive suggestion into a procedural bar — which contradicts Ninth Circuit precedent favoring amendment, particularly at the pleading stage.

### M.  The District court Abused its Discretion when denying Leave to Amend the Bane Act claims, Given Gjovik's Reliance on the Court's Guidance and Ability to Cure

The Ralph Civil Rights Act guarantees all individuals the right to be free from violence or threats of violence because of their protected characteristics (e.g., race, gender, religion, sexual orientation, disability), or exercise of constitutional or legal rights To state a claim, a plaintiff must allege the defendant committed violence or threats of violence; the conduct was motivated, at least in part, by a protected characteristic or by the Gjovik's exercise of a protected right;

The plaintiff was harmed; and the defendant's conduct was a substantial factor in causing that harm. See *Koebke v. Bernardo Heights Country Club,* 36 Cal. 4th 824, 841 (2005); *Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 880 (2007). The Ralph Act has been applied to both actual violence and credible threats of violence, including harassment campaigns designed to cause fear, retaliation, or suppression of civil rights. "Violence" includes not only physical attacks but also threats that reasonably place a person in fear of imminent harm.

A SWATing attempt — calling law enforcement to falsely report criminal activity in hopes that a militarized response will be triggered — is a textbook example of a threat of violence. Courts have recognized that such acts can form the basis of civil rights claims when motivated by discriminatory or retaliatory animus. Where

threats are linked to whistleblowing, legal action, or other protected conduct, the Ralph Act is implicated even outside traditional discrimination claims.

The Ralph Civil Rights Act prohibits violence and threats of violence against persons based on protected traits or rights. Cal. Civ. Code § 51.7; *Koebke v. Bernardo Heights etc.,* 36 Cal. 4th 824 (2005). A SWATing attempt is a dangerous and well-documented form of retaliatory violence designed to cause extreme distress, physical harm, or death — and often used to silence, punish, or intimidate individuals who engage in protected conduct. California courts have found that plaintiffs need not wait until actual harm occurs; a credible and targeted threat of violence, particularly where law enforcement is weaponized, falls squarely within the statute. *Austin B. v. Escondido Union School Dist.,* 57 Cal.Rptr.3d 454 149 Cal. App. 4th 860, 880 (2007). Allegations that Apple initiated or encouraged this form of harassment are sufficient to survive a motion to dismiss.

The Ralph Act also protects individuals targeted for asserting legal rights, including whistleblower activity and litigation. Gjovik's allegations tie the threats to a campaign of post-employment retaliation and interference with legal proceedings — a protected category under the statute. The District Court's failure to acknowledge the legal nexus between the threats and Gjovik's civil rights was error.

Even if the court viewed the initial allegations as insufficiently detailed, Gjovik later moved to amend the complaint to describe the SWATing incident, timing, reporting chain, and subsequent chilling effect. Denying leave to amend under these circumstances constitutes abuse of discretion, particularly given the extreme liberality mandated under the Ninth Circuit precedent. *Eminence Capital*, 316 F.3d at 1052. Amendment would have allowed the record to fully reflect the severity and timing of the threats. A SWATing attempt is not speculative — it is a violent, life-endangering act. Refusing to consider these facts at the pleading stage unfairly prejudices Gjovik and invites the misuse of procedure to insulate unlawful retaliation.

## III.  THE DISTRICT COURT ERRORED IN DISMISSING CLAIMS WITH PREJUDICE.

## N. The District court Errored in Dismissing environmental personal injury claims due to statute of limitations based on an incorrect legal standard.

The statute of limitations for toxic tort claims typically begins when the plaintiff knows, or should know, of the injury and its cause. However, the discovery rule tolls the statute of limitations in cases where the plaintiff is unaware of the injury's connection to the toxic exposure due to its latent effects. Gjovik's health issues, allegedly caused by toxic fumes from Apple's semiconductor facility, did not manifest immediately, and her understanding of the exposure required time to develop. The District Court's reliance on publicly available building permits as triggering notice for the statute of limitations is legally flawed because such documents do not alert employees to the specific health risks associated with a facility's operations.

Additionally, Apple's fraudulent concealment and retaliatory tactics delayed Gjovik's awareness of both the toxic exposure and the company's illegal practices. The Ninth Circuit has previously held that when fraudulent concealment or retaliation is involved, the statute of limitations can be tolled until the plaintiff could reasonably discover the harm. *See Doe v. Abbott Labs.*, 576 F.3d 1304 (9th Cir. 2009); *Olsen v. H&R Block*, 682 F.2d 831, 833 (9th Cir. 1982).

Given these circumstances, Ninth Circuit should reverse the district court's dismissal of Gjovik's toxic tort claims, recognizing that the discovery rule and tolling due to fraudulent concealment and retaliation apply. The District Court's reasoning that building permits should have alerted Gjovik to the facility's operations fails to account for the gradual onset of her injuries and the retaliatory actions that obstructed her understanding of the full scope of harm. Public policy strongly favors allowing plaintiffs to pursue claims where fraud and retaliation have delayed their ability to discover the injury, as seen in *Doe* and *Olsen*. The Ninth Circuit is likely to find that the statute of limitations should be tolled in this case, allowing Gjovik to

28

seek redress for the harm she suffered.

One of the most compelling reasons why Gjovik's claim should not have been dismissed is the argument that Apple's active concealment of its illegal actions—through retaliation and obstruction—should toll the statute of limitations. Fraudulent concealment (or in this case, the covert retaliatory actions to prevent Gjovik from understanding the full scope of the harm) is well-established as a reason for tolling the statute of limitations under California law & US law. See *Olsen v. H&R Block*, 682 F.2d 831 (9th Cir. 1982); *Doe v. Abbott Labs.*, 576 F.3d 1304 (9th Cir. 2009).

In Gjovik's case, Apple did not just fail to disclose its toxic practices; the company actively retaliated against her by harassing, stalking, and intimidating her. These actions were meant to prevent her from understanding the full impact of her toxic exposure and the nature of the environmental hazards at play. This active concealment of the truth is directly tied to the delay in her discovery of the illegal toxic dumping, and under the doctrine of fraudulent concealment, the statute of limitations should not have begun until she could reasonably connect the harm with the company's actions.

Gjovik's mental distress and fear of retaliation should also be considered as factors in why she was unable to recognize the full extent of her injury earlier. Retaliatory actions are not just psychologically damaging but also serve to suppress critical information. In the context of toxic tort claims, it is unreasonable to expect a victim to immediately connect health symptoms with illegal chemical exposure, especially when the company intentionally withholds such knowledge or impedes investigation. This further strengthens the argument that the statute of limitations should be tolled in cases of active concealment.

As the Ninth Circuit has recognized in cases involving fraudulent concealment, applying the statute of limitations too harshly, especially in ultrahazardous activities cases, would undermine public policy by shielding corporations from liability for actions that endanger public health. This case involves the highest degree of environmental risk, where the toxic exposure was preventable

29

but was instead intentionally hidden. To deny Gjovik the opportunity to bring these claims based solely on a one-year delay (when her retaliation and concealment occurred over that period) would be an injustice. This would allow Apple to escape liability for endangering her health and the public, effectively giving the corporation a free pass to continue its dangerous behavior.

The statute of limitations should be tolled under the discovery rule due to Apple's fraudulent concealment and retaliatory actions, which prevented Appellant from timely discovering the full scope of the harm. In cases involving fraudulent concealment or retaliation, the Ninth Circuit has held that the statute of limitations does not begin to run until the plaintiff reasonably discovers the injury or the wrongdoing. *See Doe v. Abbott Labs.*, 576 F.3d 1304 (9th Cir. 2009); *Olsen v. H&R Block*, 682 F.2d 831, 833 (9th Cir. 1982).

Appellant's claims were delayed due to Apple's efforts to suppress evidence and silence Appellant through retaliatory tactics. Apple's fraudulent actions not only hindered Appellant's ability to understand the full scope of the injury but also delayed the discovery of additional criminal conduct by Apple, further justifying the tolling of the statute of limitations. The Ninth Circuit has recognized that retaliation and fraudulent concealment prevent plaintiffs from discovering harm and should toll the statute until the plaintiff can reasonably connect the injury to the defendant's illegal conduct.

The court of appeals reviews the district court's conclusion regarding an application of the statute of limitations de novo. *Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1055 (9th Cir. 2021); *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1147 (9th Cir. 2020) (reviewing the district court's decision and rulings on the appropriate statute of limitations de novo). The District Court's dismissal based on statute of limitations is also reviewed de novo. *See Mills v. City of Covina*, 921 F.3d 1161, 1165 (9th Cir. 2019).

### O. THE DISTRICT COURT ERRORED IN DISMISSING ENVIRONMENTAL PERSONAL INJURY CLAIMS WITHOUT CONSIDERING THE CLAIMS AS PUBLIC INTEREST.

30

Toxic tort claims are critical not just for compensating individual harm but for addressing broader societal risks. Apple's systemic approach to illegal toxic waste disposal is not just a private concern but a public interest issue. The illegal dumping of toxic waste affects both Gjovik and other employees and surrounding communities, exposing them to long-term health risks, and contributing to environmental degradation. By permitting Gjovik's toxic tort claims to move forward, the court can recognize the broader implications of environmental wrongdoing and the need to hold corporations accountable when they jeopardize public health for financial gain.

The harm caused by toxic waste is not limited to individual plaintiffs but affects communities. The impact of Apple's alleged actions is far-reaching, with public health and environmental integrity at risk. Courts have consistently recognized that toxic tort claims serve the public interest by holding corporations accountable for environmental degradation that could affect entire neighborhoods (see *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000)).

Apple operated a secretive semiconductor fabrication facility near residential housing, schools, and parks in Santa Clara, California. The facility handled highly toxic and volatile chemicals, including silane, phosphine, fluorine gas, and NMP, and documented leaks and emissions affected the surrounding environment. Apple failed to disclose these risks to nearby tenants or government agencies, despite multiple regulatory citations.

California courts have historically applied strict liability to activities posing an unreasonable risk of serious harm that cannot be eliminated even with reasonable care. This appeal presents a novel opportunity for the Court to clarify that modern semiconductor fabrication — when conducted in secret, near residential zones, and in violation of environmental standards — qualifies as an ultrahazardous activity warranting strict liability under California law.

The concept of ultrahazardous activities is highly relevant in Gjovik's case, as it touches directly on Apple's semiconductor fabrication facility and its role in

31

producing and disposing of toxic waste in an irresponsible manner. This claim goes beyond ordinary toxic torts; it implicates the very heart of corporate moral bankruptcy—where companies knowingly engage in highly dangerous activities for financial gain while endangering public health and safety.

### P. The District Court Errored & Abused its discretion by dismissing the 17200 claim based on an improper legal theory and mischaracterization of Gjovik's claims.

As discussed above, the UCL claim was dismissed with abuse of discretion and due to error. The court admitted in dicta that there appeared to be merit, and Gjovik had filed a proposed supplement with a much more extensive pleading, but the court struck the proposed supplement and dismissed her claims with prejudice, due to reasons not related to merit. For one, the court misrepresented her claims as if it was a much smaller version of what she argued and dismissed based on that small scope while ignoring the larger claims. Second, the court dismissed under statute of limitations despite numerous viable tolling theories as well as ongoing conduct. Third, there seemed to be confusion as to whether a financial injury was needed or not for a fully injunctive claim and when Gjovik clarified her intention with the claim was fully for injunctive relief, the court said no.

Then upon proposing a supplement pled for restitution as well, the court struck the sur-rely. The basis of the 17200 claim is representative of the protected activity that Apple claims it fired Gjovik over. Gjovik wanted to argue that her disclosures were protected and important, and she would continue her escalation on the matter in court – yet, despite the merit of her claims, and how critical they are to the retaliation case, the court dismissed the claims regardless of merit – essentially creating a death knell on the topic of face Gobbler, which Apple's counsel is already trying to exploit in discovery.

### Q. The District Court errored in dismissing claims based on an incorrect theory of liability, and refusing to consider theories of conspiracy,

32

### ACCOMPLICE LIABILITY, AND RICO ENTERPRISE.

Gjovik has pled more than a mere workplace grievance. The retaliation she suffered included a coordinated campaign of harassment and intimidation, directed not only by her former employer but by a former internal operative acting through a sham union structure, and closely aligned with the employer's legal goals.

These actions — including a fraudulent ex-parte gag order, repeated false sworn declarations, and continued public retaliation after litigation began — meet California's standard for extreme and outrageous conduct. Courts routinely allow IIED claims to proceed where retaliation is carried out by co-conspirators, aligned third parties, or former employees, particularly in whistleblower contexts. This is precisely such a case.

Retaliation today often does not come from the corporate front desk. It comes from the shadows — a fake union here, a former insider there. Employers increasingly rely on covert actors to harass and discredit whistleblowers while preserving formal deniability. But when those actors file false declarations, enforce gag orders, and publicly retaliate against witnesses — all in alignment with the employer's legal strategy — the law cannot allow that to be a free zone of impunity. Whether by civil conspiracy, RICO enterprise, or ratified agency, the employer becomes accountable for the weapon it helped build and never disavowed.

The criminal law recognizes proxy retaliation as obstruction, intimidation, or enterprise conduct. Civil law must not blind itself to the same pattern simply because it's executed by lawyers or former insiders instead of mobsters. "Only a sophisticated entity with the resources of a major tech employer could orchestrate retaliation through a faux labor organization, complete with court filings, perjured declarations, and coordinated legal support — and still maintain formal deniability. To deny liability here is to teach every powerful employer exactly how to retaliate without consequence: outsource it. That's not justice. That's a roadmap for abuse.

### R. THE DISTRICT COURT ERRORED BY DISMISSING THE RICO 1962(A) AND (D) BASED ON (A) CLAIM UNDER AN INCORRECT

33

LEGAL THEORY AND MISCHARACTERIZATION OF GJOVIK'S
CLAIMS.

The District Court's dismissal of Gjovik's RICO §§ 1962(a) and (d) claims was based on an incorrect legal theory and a mischaracterization of Gjovik's claims. Specifically, the court dismissed these claims under the assumption that the money laundering scheme was insufficiently pled. However, Gjovik's allegations clearly outlined racketeering activities, including fraudulent schemes and the use of proceeds from those activities to invest in and sustain the enterprise. The standard for RICO §§ 1962(a) and (d) does not require an exhaustive description of the money laundering mechanism at the pleading stage. As established in *Foman v. Davis,* leave to amend should be granted unless it is clear that the claims are entirely without merit. The District Court's refusal to allow amendment, based on an incomplete understanding of the facts, was therefore an abuse of discretion. Gjovik should have been given an opportunity to clarify how the illegal proceeds were used to further the racketeering activity within the enterprise.

Under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, plaintiffs must demonstrate a pattern of racketeering activity that includes at least two acts of racketeering activity within a 10-year period. Gjovik's claims fall squarely within the ambit of this statute due to the systematic and coordinated corporate misconduct orchestrated by Apple's leadership, who were engaged in illegal actions for the purpose of financial gain—including toxic waste dumping, fraudulent ESG claims, and the illegal retaliation against whistleblowers.

The reinvestment into the witness intimidation campaigns along with personal bonuses, meets the laundering standard, and also the direct injury as it powered Apple's to further harass Gjovik in more innovative ways. Gjovik cited to active, current cases of actual criminal charges against Apple executives (see Moyer – bribery of public official, Levoff – wire & securities fraud, etc.). Gjovik also obtained evidence of U.S. government complaints about potential environmental crimes at the secret semiconductor fab at issue here. Gjovik already has a stack of evidence, and

34

dismissal under 12(b)(6) was not warranted, especially without even allowing her to submit a "RICO case statement" for complex cases such as this.

Further, the recent SCOTUS *Medical Marijuana* case clarified that RICO claims can proceed even when the alleged economic injuries are intertwined with personal harm. This ruling resolves a critical issue in understanding how personal injuries—such as health impairments—can lead to recoverable business and property losses under RICO. Specifically, it highlights that RICO is not restricted to claims of economic injury disconnected from personal harm but allows for recovery when the economic consequences of such injuries (like employment loss, foregone income, and reputational damage) result from racketeering activity.

This principle is directly applicable here, where the physical harm caused by the toxic exposure, compounded by the retaliation and obstruction, contributed to significant economic and property injuries that flowed directly from the racketeering activities of Apple's corporate actions.

The Supreme Court's decision in *Medical Marijuana, Inc. v. Horn* supports the notion that even where physical and emotional harm are involved, the resulting economic consequences—which are tied to racketeering activities—are actionable under RICO. In *Medical Marijuana, Inc. v. Horn*, 604 U.S. ____ (2025), the United States Supreme Court resolved a longstanding circuit split by holding that civil RICO claims under 18 U.S.C. § 1964(c) are not categorically barred merely because the economic injuries derive from personal harm. The Court ruled that RICO allows recovery for "injury to business or property" even where such injury is causally related to personal harm, so long as the Gjovik's alleged damages are economic and fall within the zone of interest protected by the statute.

This ruling squarely reinforces Gjovik's RICO claims, where business and property losses—including lost employment, foregone income, and reputational harm—resulted directly from predicate acts under §§ 229 (relating to chemical weapons) and §§ 1512, 1513 (witness intimidation and retaliation). The chemical contamination that caused serious illness not only impaired Gjovik's ability to work,

35

but also triggered retaliatory termination after Plaintiff reported the criminal conduct. These injuries are economic in nature and flow directly from an actionable pattern of racketeering activity. The Supreme Court's reasoning supports a broad reading of § 1964(c) where the Gjovik alleges distinct property and employment injuries caused by racketeering acts, and when those injuries are tethered to criminal acts involving violence, toxic gases, and/or coercion.

## S. The District Court Erred in Dismissing Appellant's RICO 1962(c) and (d) Claims due to lack of Enterprise.

The District Court erred in dismissing Appellant's RICO §§ 1962(c) and (d) claims on the grounds of insufficient pleading of the enterprise element. Under RICO, a plaintiff must allege that the defendant conducted or participated in the operation or management of an enterprise through a pattern of racketeering activity. Gjovik has adequately pled the existence of an enterprise—Apple's management structure, which engaged in coordinated illegal activities, including fraudulent environmental claims and retaliation against whistleblowers. The court's failure to recognize the enterprise constituted an error, as RICO was designed to address the misuse of corporate structures for illegal conduct. Gjovik's allegations fit squarely within the statutory framework, as the corporate actions were coordinated, intentional, and aimed at furthering the illegal enterprise. The dismissal based on the failure to establish the enterprise element should be reversed, and Gjovik should be allowed to amend if necessary to further clarify this point.

The District Court's dismissal of Appellant's RICO § 1962(c) and (d) claims without prejudice should be reviewed de novo, as it was based on the application of incorrect legal standards. Under Rule 12(b)(6), the court is required to accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court's reasoning that the RICO claims failed to meet the continuity or enterprise requirements may have been legally flawed. Specifically, the district court may have misapplied the standards

36

for determining the existence of an enterprise and whether the allegations of ongoing racketeering activity were sufficient to establish continuity. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (explaining that a plaintiff must show the defendant conducted or participated in the operation or management of the enterprise).

The Ninth Circuit has held that dismissal with prejudice is improper unless it is "clear that the plaintiff cannot possibly amend the complaint to state a claim." *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018). Since Appellant's RICO claims were dismissed without prejudice, the court should have allowed an opportunity to amend the complaint if any deficiencies existed. The substantive legal errors in the district court's ruling on the initial dismissal should therefore be corrected by the Ninth Circuit. Given that Appellant's claims involve complex corporate misconduct, the Ninth Circuit should find that the allegations, if proven true, could support the legal elements necessary for a RICO claim.

Here, Gjovik alleged that the employer previously employed Appleseed (the leader of the astroturf company union), in a loyalty and secrecy legal unit, benefited from her retaliatory actions, failed to repudiate her misconduct, and used her legal filings and sworn declarations to support its own motions. Simultaneously, Appleseed created a shell organization presented to the public as a labor group, filed a retaliatory gag order in a foreign jurisdiction, made perjured statements in state and federal court, and submitted three sworn declarations in direct support of the employer's dismissal efforts here. This conduct is not independent — it is coordinated, retaliatory, and enterprise-based. Even apart from RICO, California law allows liability where a third party acts in furtherance of a shared purpose with the defendant, or where the defendant ratifies the third party's misconduct by accepting its benefit or failing to repudiate it. See *Perkins v. Blauth,* 163 Cal. 782 (1912); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994).

If Appleseed acted in alignment with the employer — filing retaliatory declarations, pursuing gag orders, targeting a whistleblower — then her actions help *form* the enterprise. Dismissing the employer on grounds that the enterprise wasn't

37

distinct, while severing and isolating the third party from the employer, effectively immunizes a coordinated retaliation scheme by dividing liability between formalism and function. RICO was built to close that very gap. Under *Boyle v. United States,* 556 U.S. 938 (2009), a RICO enterprise need not be formally structured or legally distinct from its components. It need only involve an association-in-fact, share a common unlawful purpose, and engage in coordinated activity that furthers that purpose.

In this case, the employer accepted the benefits of Appleseed's lawsuits and filings against Gjovik, never denied Appleseed's alignment with its litigation goals, and admittedly did nothing to stop Appleseed from continuing with these activities. That is sufficient for conspiracy or ratification liability under California law — particularly when the underlying conduct includes perjury, legal process abuse, and intimidation of a government witness.

The facts here bear striking resemblance to *United States v. eBay* (2024), and *United States v. Baugh* (2020), in which executives at eBay used proxies — including security contractors and former insiders — to harass, intimidate, and surveil critics of the company. Some of eBay leaders were ex-police and engaged the Santa Clara Police Department (their prior long-time workplace) to help assist them in their criminal conduct on behalf of eBay. That conduct was charged as conspiracy, obstruction, and cyberstalking — despite being carried out by off-book actors, and even unaware state actors. What distinguished that case was not who signed the orders or gave commands, but: who benefited, who coordinated, who stayed silent. [See Request for Judicial Notice].

In Gjovik's case, the employer created a culture of loyalty and secrecy, deployed an army of employees, ex-employees, and contractors to silence a federal witness and to "*ruin*" Gjovik in retaliation for prior participation with the government. That is enterprise conduct — and to hold otherwise is to open a massive black hole in whistleblower protection law. The enterprise element was sufficiently described as a racketeering organization, and Gjovik clearly alleged that the continuity requirement was met by ongoing illegal activities. The court's denial of

38

leave to amend on the grounds of continuity and enterprise is inconsistent with the liberal amendment policies outlined in Ninth Circuit case law, as the deficiencies could easily have been cured with further factual allegations.

### T. The District Court Erred in Dismissing Appellant's RICO 1962(c) and (d) Claims due to lack of Continuity.

The District Court erred in dismissing Appellant's RICO §§ 1962(c) and (d) claims based on an alleged lack of continuity. RICO's continuity requirement is met when there's a sustained, coordinated pattern of racketeering activity, not just isolated incidents. Gjovik sufficiently alleges that Apple engaged in prolonged misconduct, including fraudulent environmental practices, illegal waste disposal, and whistleblower retaliation. These acts, aimed at deceiving the public and evading oversight, constitute a continuous pattern that satisfies RICO's continuity requirement.

Appellant has shown that Apple's internal enterprise engaged in coordinated obstruction and retaliation against whistleblowers, evading regulation and protecting profits. The predicate acts include witness retaliation (18 U.S.C. § 1513) and obstruction of justice (18 U.S.C. § 1512). Apple retaliated against Gjovik after she warned them of illegal environmental practices, demonstrating a systematic pattern of retaliation that was central to protecting the company's unlawful activities. Recent evidence further supports these claims, including reports confirming environmental violations, obstruction of justice in a separate legal case, and retaliation through illegal NDA agreements and workplace harassment. The latest evidence—ranging from confirmed federal environmental violations at Apple's semiconductor facility, evidence of months of secret executive escalations about Gjovik's disclosures prior to her suspension and termination, and new federal investigations—bolsters the claim of a broader racketeering enterprise.

The allegations of harassment and surveillance are also relevant in light of the Ninth Circuit's decision in *Okonowsky v. Garland*, No. 23-55404 (2024), where

employer liability for social media harassment was affirmed. Apple's failure to intervene in harassment, including the use of private images for intimidation, aligns with this precedent and highlights its role in fostering a hostile environment. Similarly, Apple's conduct mirrors patterns seen in corporate misconduct cases like *United States v. eBay Inc,* 1:24-cr-10003-PBS, U.S. District of Massachusetts (2024); where companies were held accountable for obstructing justice, tampering with witnesses, and concealing evidence. Apple's actions in obstructing investigations and retaliating against the Gjovik are consistent with these cases, strengthening the argument for RICO violations.

### U. The District Court Errored in Dismissing RICO Claims due to Predicate Acts Containing Employment Retaliation.

The District Court improperly dismissed Gjovik's RICO claims due to the inclusion of employment retaliation as a predicate act. Retaliation against employees who expose corporate wrongdoing is a well-established predicate act under RICO, specifically witness retaliation (18 U.S.C. § 1513). Gjovik has alleged that after exposing Apple's illegal toxic waste disposal practices, she was subjected to ongoing harassment, retaliation, and intimidation by the company, actions that qualify as predicate acts under RICO.

Employment retaliation is not only a valid predicate act, but it also aligns with the public policy goals of RICO, which aims to curb abuse of power by corporations and individuals engaged in systematic misconduct. The court's dismissal of the RICO claims based on these allegations mischaracterized the law and failed to consider the broader implications of corporate misconduct and the need to protect whistleblowers.

Gjovik alleged ongoing coordination among Defendant's agents and legal representatives to intimidate her through legal process, retaliate against her for filing NLRB and environmental claims, obstruct justice through false allegations and fabricated claims, and shield Defendant's criminal liability through coerced

40

confidentiality and litigation harassment.

Gjovik described credible, detailed harms including coercive legal threats and gag orders, ongoing intimidation during pro se litigation, targeted retaliation in response to whistleblowing, harassment connected to her role as a crime victim and witness. California law recognizes IIED claims where the conduct is outrageous, intentional, and causes severe emotional distress. *Hughes v. Pair,* 46 Cal.4th 1035 (2009). The Court's dismissal disregarded the ongoing nature of retaliatory litigation and threats, which are increasingly recognized as IIED in civil rights and labor retaliation cases.

These allegations are reinforced by independent judicial findings in *Epic Games v. Apple Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. Apr. 30, 2025), where the Court issued an 80-page contempt order holding Apple in civil contempt, finding willful violations of a federal injunction, and explicitly stating that Apple executives lied under oath. Judge Yvonne Gonzalez Rogers referred both Apple and its Vice President of Finance to the Department of Justice for potential criminal prosecution. This referral underscores the plausibility — and chargeability — of Appellant's alleged predicate acts.

This judicially confirmed misconduct directly mirrors the RICO theories asserted here: using corporate legal and compliance structures to suppress lawful disclosures, falsify compliance data, and retaliate against those who challenge the enterprise. Because predicate acts need only be 'chargeable' under the statute — not proven in the civil action — the DOJ referral itself satisfies the threshold for racketeering plausibility. By permitting Gjovik's claims to proceed under RICO, the Ninth Circuit would signal that corporate retaliation and obstruction of justice cannot be tolerated, especially in cases involving high-stake public health and environmental integrity.

The violence and improvised theater of Apple's corporate malfeasance, particularly the burglaries and harassment that occurred while Gjovik was and is attempting to defend herself in the legal process—serve as powerful evidence of a

41

RICO claim. Apple's actions fit well within the pattern of racketeering activity under RICO, particularly as it relates to obstruction of justice, witness tampering, and corporate violence. The Ninth Circuit should allow these claims to proceed, sending a message that such corporate improvised violence and cover-ups will not be tolerated, and that public policy demands accountability. Dismissing potentially meritorious claims simply out of convenience is not accountability.

Gjovik explicitly warned Apple that its conduct — including toxic dumping, ESG fraud, and surveillance — constituted racketeering. Shortly thereafter, she was terminated. The termination was followed by ongoing retaliation, surveillance, and attempts to suppress her speech and litigation. These actions constitute violations of 18 U.S.C. § 1512 (witness tampering) and § 1513 (retaliation against informants), both of which are enumerated RICO predicate offenses under 18 U.S.C. § 1961(1). The Ninth Circuit has not yet addressed whether retaliation against whistleblowers — particularly where the retaliation itself directly furthers the goals of an illegal enterprise — can serve as a standalone RICO predicate. This case presents a doctrinally clean and factually compelling opportunity to do so.

## V. The District Court Errored by Dismissing the Ultrahazardous Activities claim based on an incorrect legal theory and mischaracterization of Gjovik's claims.

The District Court erred by dismissing Gjovik's ultrahazardous activities claim, based on an incorrect legal theory and a mischaracterization of the allegations. Under the Restatement (Second) of Torts § 520, ultrahazardous activities involve a high degree of risk of harm that cannot be mitigated by the actor's reasonable care. These include activities that release toxic chemicals or pose severe danger to the public, like semiconductor fabrication with hazardous gases.

Apple's semiconductor operations, which allegedly involve the use of lethal chemicals such as arsine, phosphine, and silane, fit squarely within this definition. These activities, especially when conducted near residential areas without adequate

42

containment, present a substantial risk of harm to workers and the surrounding community. California law holds defendants strictly liable for ultrahazardous activities, regardless of whether reasonable precautions were taken. See *Luthringer v. Moore*, 31 Cal. 2d 489 (1948); *Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980 (1991)). Gjovik has plausibly alleged that Apple's semiconductor operations involve toxic chemicals that pose a substantial risk of serious harm. These chemicals, even with reasonable care, present significant health risks, including cancer, respiratory issues, and organ damage. The environmental harm from these chemicals is often irreversible, fitting the characteristics of ultrahazardous activities, as seen in previous cases involving toxic waste disposal and hazardous manufacturing.

Apple's failure to prevent or mitigate these risks, coupled with its illegal dumping of toxic waste, exemplifies the kind of ultrahazardous conduct that merits strict liability. The company's moral depravity, as evidenced by the alleged fraudulent environmental claims to secure bonuses, underscores the egregiousness of the conduct. Apple's actions align with similar cases involving large corporations, like *ExxonMobil,* which were held strictly liable for environmental harm due to their inherently dangerous operations.

The District Court acknowledged that semiconductor fabrication could qualify as an ultrahazardous activity, but mischaracterized Gjovik's claims as involving a less dangerous activity. This legal error led to the wrongful dismissal of the claim, despite Gjovik's clear allegations of Apple's involvement in toxic semiconductor fabrication. Even if there were ambiguities in Gjovik's allegations, the court should have allowed for amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962), and *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) dictate that courts should grant leave to amend when a claim is legally viable but insufficiently pled. The dismissal should not have occurred based on the court's misunderstanding of the allegations. Gjovik even provided detailed requests for judicial notice with history and policy references, and proposed supplemented content, but the court refused to review the documents, and struck the supplement, and then dismissed the claim.

43

Finally, the Ninth Circuit has not fully addressed the doctrine of ultrahazardous activities since *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008). This case provides an ideal opportunity to clarify and extend the doctrine, as shown in *Schuck v. Beck*, No. 37213-8-III (Wash. Ct. App. 2021), which applied Restatement § 520 factors to define ultrahazardous activities. The case involved the operation of a dangerous chemical facility near residential areas, similar to the situation at hand. The Ninth Circuit should adopt this framework to modernize the application of strict liability in cases involving inherently hazardous industrial practices. In sum, the facts alleged by Gjovik support an ultrahazardous activities claim under California law, and the court's dismissal was an error. Gjovik should be allowed to present evidence supporting this claim, as the conduct involved meets the criteria for strict liability.

## W. The District Court Errored in Dismissing Environmental Personal Injury Claims without Consideration of Crime Victim's Restitution rights.

The dismissal of Gjovik's complaint — which included claims for restitution, harm from toxic exposure, and whistleblower retaliation — effectively stripped her of her statutory rights under the CVRA and relevant environmental protection statutes. This undermines the very purpose of these laws, which are designed not only to punish environmental wrongdoers, but to ensure redress for those harmed by their conduct.

Congress enacted the CVRA to make victims independent participants in the criminal justice process, with enforceable rights to restitution, fairness, and participation." *Kenna v. U.S. Dist. Court for the C.D. Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006). Moreover, federal courts may not preemptively extinguish restitution claims when those claims arise from active or parallel enforcement actions. See *United States v. Luis,* 765 F.3d 1061, 1066 (9th Cir. 2014) ("Victims of financial and environmental crimes are entitled to restitution as a matter of statute."), and *United*

44

States v. Gordon, 393 F.3d 1044, 1052 (9th Cir. 2004) (restitution is "mandatory and not discretionary" under the MVRA when victims are identified).

Under the Crime Victims' Rights Act, any person *"directly and proximately harmed as a result of the commission of a federal offense"* qualifies as a crime victim. 18 U.S.C. § 3771(e). Gjovik's disclosures and injuries arise from and relate directly to conduct that violates federal environmental law, including criminal provisions of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d), and the Clean Air Act, 42 U.S.C. § 7413(c). Where a whistleblower has made disclosures triggering agency enforcement and suffered retaliation or health harms as a result, those harms fall squarely within the CVRA's purview. Its contrary to public policy to dismiss a toxic tort claim for reasons other then merit, when the plaintiff has a concurrent claim by right to restitution following a criminal trial on the same matter.

## X. The District Court errored in Dismissing IIED/NIED claims based on an incorrect legal standard and mischaracterization of Gjovik's claims.

Under California law, to prevail on a claim for IIED, a plaintiff must demonstrate that the defendant′s conduct was extreme and outrageous, the defendant acted with intent to cause emotional distress or reckless disregard for the probability of causing distress, that the distress was severe, and that it was caused by the defendant′s actions. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Courts have found that outrageous conduct includes actions that exceed all bounds of what is usually tolerated in a civilized society, such as patterned harassment, threats of violence, stalking, or intentional infliction of fear. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Here, Gjovik's allegations meet the threshold for outrageous conduct, as the defendant′s actions go far beyond the bounds of typical workplace disputes.

Gjovik alleges that Defendant engaged in retaliatory and harassing conduct, including ongoing surveillance, intimidation, and threats of violence. These actions

45

culminated in attempts to destroy Gjovik's professional reputation and personal distress, including SWATing attempts—a serious and potentially life-threatening act where law enforcement is falsely alerted to a supposed threat, designed to elicit an armed response at the Gjovik's home or workplace. Such actions are extreme and go well beyond the ordinary insults or indignities tolerated in employment contexts. Intentional psychological abuse designed to destabilize Plaintiff, including efforts to impede her civil rights and damage her livelihood, is sufficient to meet the outrageous conduct standard under California law. *See Bundren v. Superior Court*, 145 Cal. App. 3d 784, 791 (1983); *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979).

Gjovik has also sufficiently alleged that Defendant's actions meet the requirements for Negligent Infliction of Emotional Distress. Under California law, NIED requires that the defendant's conduct be negligent and foreseeable, and that it occurred within a special relationship that gives rise to a duty to protect the Gjovik's emotional well-being. Apple's retaliatory actions—including ongoing harassment, interference with legal rights, and threats of violence—were not only foreseeable but intentional. This conduct occurred in the context of the employer-employee relationship, where the employer has a duty to protect the emotional well-being and rights of the employee, including the right to speak out against illegal conduct. Gjovik has alleged that these actions caused severe emotional distress, including panic attacks, anxiety, PTSD symptoms, and other psychological harm.

The District Court erred by dismissing Gjovik's IIED and NIED claims under Rule 12(b)(6). The court focused on mischaracterizing Gjovik's allegations, failing to recognize the severity of the emotional abuse and outrageous nature of the conduct alleged. The court prematurely concluded that Gjovik's claims would fail, disregarding the fact that Gjovik's allegations, if proven true, clearly support a claim for IIED and NIED. The intentional harassment, threats of violence, and coercive tactics described by Gjovik should not have been dismissed at this stage. Instead, the court should have allowed Gjovik the opportunity to amend the complaint, as these claims are highly plausible and well supported by the facts alleged. *See Lopez v. Smith*,

203 F.3d 1122, 1130 (9th Cir. 2000) (holding that emotional distress claims should not be dismissed at the early pleading stage).

Furthermore, dismissal without leave to amend was improper. Gjovik had already identified key facts in her complaint, such as documented threats, ongoing harassment, and evidence of psychological harm, which could have been expanded upon with additional factual details. Amendment would have allowed Gjovik to further substantiate these claims, including providing medical evidence, detailing specific symptoms (such as diagnosed anxiety), and clarifying the full extent of Defendant's retaliatory conduct. By denying Gjovik leave to amend, the district court improperly deprived her of the chance to fully develop her claims in line with the liberal amendment standards established under the Federal Rules of Civil Procedure. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Gjovik's allegations reflect a pattern of sustained emotional abuse, psychological destabilization, and retaliatory tactics that meet the outrageous conduct standard under both California law and the higher threshold set by New York and Massachusetts for IIED claims. In these jurisdictions, intentional emotional harm and harassment are sufficient grounds for claims under IIED, especially when a special relationship exists, such as between employer and employee. *See Crouch v. Trinity Christian Center*, 39 Cal. App. 5th 995, 1007-08 (2019); *Gallela v. Onassis*, 487 F.2d 986 (2d Cir. 1973).

## IV. The Court of Appeals should consider exercising pendent Jurisdiction to correct errors in all claims.

### Y. The District Court Errored by Dismissing any Retaliation Claims due to existing Plausibility.

The NLRB's formal complaint confirms that Gjovik was the subject of retaliatory termination and illegal threats in violation of Section 8(a)(1) of the National Labor Relations Act. See *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 620 (1969) (recognizing the agency's independent evaluation of credible labor

47

violations); *Reed v. NLRB*, 927 F.2d 1249, 1254 (D.C. Cir. 1991) (holding that issuance of an NLRB complaint reflects administrative judgment that a claim has factual and legal merit).

Further, the EPA has exercised its enforcement authority in response to Gjovik's protected disclosures. Federal courts have repeatedly recognized that such administrative action supports the plausibility — if not the legal sufficiency — of related claims. See *Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011) (noting that plausibility under *Twombly* should be informed by relevant agency findings); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (courts may consider agency views for their persuasive authority in related legal proceedings).

Where federal agencies find sufficient evidence to justify enforcement, including environmental enforcement and retaliation claims, courts should not substitute a premature disbelief under Rule 12(b)(6) for the determinations of agencies acting under statutory mandates and evidentiary procedures. Dismissal of Gjovik's claims as implausible — while two arms of the federal government have acted on those same facts — frustrates the structure and purpose of whistleblower protections.

### Z. The District Court errored when dismissing 6399.7 based on an incorrect legal standard.

Gjovik's disclosures to federal authorities have already resulted in multiple EPA inspections, corrective actions for hazardous waste mismanagement, hundreds of environmental violations, and two separate NLRB enforcement complaints, including one finding that Gjovik was unlawfully terminated. The court dismissed with prejudice Gjovik's "Right to Know" retaliation claim, despite it being a basis of her case and claims, and her repeatedly arguing to the court she is a "Right to Know" whistleblower. The court proceeded to dismiss her claim based partially on discretionary reasons and also a misunderstanding of the law – leading the court to extinguish whistleblower protections for the employees of the state of California under HAZWOPER protections (which are federal as well as state). The court

48

decided there's only "Right to Know" protections from retaliation if the employee is exercising rights about hazardous materials, but not hazardous waste. This expressly contradicts these statutes, legislative history, and precedent.

### AA. The District Court errored in Denying Dodd-Frank, SOX, and CERCLA Whistleblower claims under an incorrect legal theory and based on characterization of Gjovik's complaints.

Gjovik reported internal and intentional fraud, corruption, racketeering, smuggling, and a number of other serious crimes to Apple, and then also to the U.S. Government including the U.S. SEC and U.S. FBI, prior to Apple terminating her, and Apple was aware of her protected disclosures. Plaintiff filed an SEC tip prior to her termination alleging fraud and a scheme around greenwashing and systemic false statements being made to the government and public by Apple related to their environmental practices.  After the court made Gjovik follow the 75 page limit, the court would not allow her to reference her prior 660 page complaint, but did let Apple reference it to try to use against her, and also let Apple introduce Gjovik's SEC tip against Apple, which they found themselves and did not get authenticated, and used it to argue she's not a whistleblower, in a 12(b)(6) motion. The court also refused to let Gjovik properly plead her Dodd-Frank retaliation claims which included things like the smuggling complaints, but the court ignored her complaints and did not engage with them.

Gjovik has met with SEC Enforcement at least three times about her disclosures, and some of her disclosures to SEC led to no-action letters and letters from politicians calling for investigations. But the district court dismissed with prejudice, with no leave to amend, and let the basis of that dismissal be her actual pre-termination complaint to SEC, produced by the subject of the confidential complaint. The dismissal of whistleblower claims despite public enforcement actions and retaliation findings was arbitrary, ignored the statute's purpose, and violated liberally construed pro se pleading standards. Gjovik's allegations were

49

presumptively credible and independently supported by agency action.

## Conclusion & Relief Requested

For the reasons outlined above, Gjovik's RICO, IIED, Bane, Ralph, and toxic tort claims should have survived dismissal. The alleged misconduct—including unlawful toxic waste disposal, retaliatory harassment, and fraudulent environmental disclosures—reflects systemic corporate practices that implicate both public health and broader questions of corporate accountability. These are not private grievances, but issues of substantial public concern that warrant full judicial review. The District Court's dismissal at the pleading stage precluded development of the factual record on matters that affect environmental integrity, worker safety, and the credibility of corporate regulatory compliance. Public health, environmental justice, and the integrity of the legal system depend on this outcome.

The Ninth Circuit now has the opportunity to ensure these serious allegations are tested on the merits. Allowing these claims to proceed would affirm the legal system's role in protecting whistleblowers and addressing environmental harm, especially where hazardous materials and retaliation intersect. Public interest demands more than procedural finality requires a meaningful opportunity to expose and remediate systemic abuse. The Court should reverse the dismissals and permit full adjudication of the claims in alignment with governing law and fundamental principles of accountability. In addition, the Court should please consider Gjovik's request for injunctive relief. The harms alleged are ongoing, irreparable, and implicate both individual rights and broader public safety concerns. The District Court's denial of injunctions was premised on a reactive and legally erroneous analysis that failed to apply the proper standards or consider the factual context. Where constitutional rights, environmental integrity, and the chilling of protected activity are at stake, preliminary relief is essential to preserve the status quo and prevent further harm. The Court should reverse the denial of injunctive relief and either grant or remand for proper consideration under the correct legal framework.

Dated: May 6 2025

**Ashley M. Gjøvik**
/s/ Ashley M. Gjovik
Pro Se Plaintiff-Appellant [4]

---

[4] In preparing this brief, Appellant utilized publicly available generative AI tools, specifically OpenAI's ChatGPT and ScholarGPT, to assist with legal research, citation formatting, and drafting support. All substantive arguments, factual statements, and representations of law reflect Appellant's independent review, verification, and judgment. These tools were used as writing aids, not as substitutes for legal analysis or personal authorship.

# Statement of Related Cases (Form 17)

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

### 9th Cir. Case Number(s): 25-2028

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Civil Litigation
Ashley M. Gjovik v. Apple Inc., 23-cv-04597-EMC (N.D. Cal. 2023-)

U.S. Dept. of Labor Adjudication
Ashley Gjovik v Apple Inc, 2024-CER-00001 (OALJ); Ashley Gjovik v Apple Inc, 2024-0060 (ARB).

U.S. NLRB Adjudications
In Re: Ashley Gjovik & Apple Inc., (unlawful NDAs and employment policies), 32-CA-284428, NLRB (2023-).
In Re: Ashley Gjovik & Apple Inc., (suspension, termination, unlawful work rules, & coercive statements), 32-CA-282142, 32-CA-283161 (2024-).
In Re: Ashley Gjovik & Apple Inc., (Tim Cook's illegal email) 32-CA-284441 (2023).

Ashley M. Gjøvik
/s/ Ashley M. Gjovik
Pro Se Plaintiff-Appellant

52

## CERTIFICATE OF COMPLIANCE (FORM 8)

### 9th Cir. Case Number(s): 25-2028

I am the self-represented party.

This brief contains 50 pages and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

X complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(selectonly one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Ashley M. Gjøvik**
**/s/ Ashley M. Gjovik**
**Pro Se Plaintiff-Appellant**

53

CASE NO. 25-2028

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

ASHLEY M. GJØVIK, *an individual*,

*Plaintiff-Appellant*

v.

APPLE INC., *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court

for the Northern District of California

No. 3:23-CV-04597

The Honorable Judge Edward M. Chen

---

APPELLANT'S OPENING BRIEF | ADDENDUM

---

Ashley M. Gjøvik, JD
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

**CALIFORNIA CONSTITUTION, ARTICLE I - DECLARATION OF RIGHTS, SECTION 1. (CA CONSTITUTION ART I § 1)** .......................................................3

**CALIFORNIA CONSTITUTION, ARTICLE I - DECLARATION OF RIGHTS, SECTION 28. (CA CONSTITUTION ART I § 28)** ........................................3

**CALIFORNIA CIVIL CODE § 52.1 ("TOM BANE CIVIL RIGHTS ACT")** ...................9

**CALIFORNIA CIVIL CODE § 51.7 ("RALPH CIVIL RIGHTS ACT")** ........................ 12

**CALIFORNIA CIVIL CODE ("NUISANCE") §§ 3479-3484** ........................................ 16

**SANTA CLARA CITY CODE: CHAPTER 8.30 (PUBLIC NUISANCES)** .................... 18

**SANTA CLARA ZONING CODE CHAPTER 18.16 – OFFICE AND INDUSTRIAL ZONES (LO-RD, HO-RD, LI, HI)** ........................................................................... 22

**CALIFORNIA PENAL CODE § 518 (EXTORTION)** .................................................... 24

**CALIFORNIA PENAL CODE § 647(J)(4) (SEXTORTION)** ....................................... 24

**CALIFORNIA CODE, PENAL CODE § 136.1** ............................................................. 30

**CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 -17208** ........................ 32

**CALIFORNIA LABOR CODE 98.6** ............................................................................. 39

**CALIFORNIA LABOR CODE 98.7.** ............................................................................. 42

**CALIFORNIA LABOR CODE §§ 230.2 – 230.5** ......................................................... 47

**CALIFORNIA LABOR CODE § 232** ........................................................................... 53

**CALIFORNIA LABOR CODE § 232.5** .......................................................................... 53

**CALIFORNIA LABOR CODE §§ 1101-1102** ............................................................... 54

**CALIFORNIA LABOR CODE §§  1102.5 – 1105** ......................................................... 54

**CALIFORNIA LABOR CODE § 6310** ......................................................................... 58

**CALIFORNIA LABOR CODE §§ 6361, 6399.7., HAZARDOUS SUBSTANCES INFORMATION AND TRAINING ACT** ..................................................................60

1

CLEAN AIR ACT (CAA) 42 U.S.C. §7622 EMPLOYEE PROTECTION. ..................... 61

42 U.S. CODE § 9610 – (CERCLA) EMPLOYEE PROTECTION ................................ 63

29 CFR § 24.112 - JUDICIAL REVIEW (U.S. DOL/CERCLA) ..................................... 66

42 U.S. CODE § 9613 – (CERCLA) CIVIL PROCEEDINGS ....................................... 67

18 U.S. CODE § 1961 – (RICO) DEFINITIONS ........................................................ 68

18 U.S. CODE § 1962 – (RICO) PROHIBITED ACTIVITIES .................................... 72

18 U.S. CODE § 1964 – (RICO) CIVIL REMEDIES .................................................... 73

18 USC §3771. CRIME VICTIMS' RIGHTS................................................................. 74

18 U.S. CODE § 1512 - TAMPERING WITH A WITNESS, VICTIM, OR AN
INFORMANT ............................................................................................................... 79

18 U.S. CODE § 1513 - RETALIATING AGAINST A WITNESS, VICTIM, OR AN
INFORMANT ............................................................................................................... 82

18 U.S. CODE § 1514 - CIVIL ACTION TO RESTRAIN HARASSMENT OF A VICTIM
OR WITNESS ............................................................................................................... 84

18 U.S. CODE § 229 - PROHIBITED ACTIVITIES ("RELATING TO CHEMICAL
WEAPONS") ................................................................................................................ 87

18 U.S. CODE § 1951 - INTERFERENCE WITH COMMERCE BY THREATS OR
VIOLENCE ("THE HOBBS ACT")............................................................................. 88

29 U.S. CODE § 158 - UNFAIR LABOR PRACTICES (NLRA) .................................... 89

# Addendum

All applicable statutes, etc., are contained in the brief or this addendum.

## California Constitution, Article I - Declaration of Rights, Section 1. (CA Constitution art I § 1)

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. (Sec. 1 added Nov. 5, 1974, by Proposition 7. Resolution Chapter 90, 1974.)

## California Constitution, Article I - Declaration of Rights, Section 28. (CA Constitution art I § 28)

(a) The People of the State of California find and declare all of the following:

(1) Criminal activity has a serious impact on the citizens of California. The rights of victims of crime and their families in criminal prosecutions are a subject of grave statewide concern.

(2) Victims of crime are entitled to have the criminal justice system view criminal acts as serious threats to the safety and welfare of the people of California. The enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system fully protecting those rights and ensuring that crime victims are treated with respect and dignity, is a matter of high public importance. California's victims of crime are largely dependent upon the proper functioning of government, upon the criminal justice system and upon the expeditious enforcement of the rights of victims of crime described herein, in order to protect the public safety and to secure justice when the public safety has been compromised by criminal activity.

(3) The rights of victims pervade the criminal justice system. These rights include personally held and enforceable rights described in paragraphs (1) through (17) of subdivision (b).

(4) The rights of victims also include broader shared collective rights that are held in

3

common with all of the People of the State of California and that are enforceable through the enactment of laws and through good-faith efforts and actions of California's elected, appointed, and publicly employed officials. These rights encompass the expectation shared with all of the people of California that persons who commit felonious acts causing injury to innocent victims will be appropriately and thoroughly investigated, appropriately detained in custody, brought before the courts of California even if arrested outside the State, tried by the courts in a timely manner, sentenced, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance.

(5) Victims of crime have a collectively shared right to expect that persons convicted of committing criminal acts are sufficiently punished in both the manner and the length of the sentences imposed by the courts of the State of California. This right includes the right to expect that the punitive and deterrent effect of custodial sentences imposed by the courts will not be undercut or diminished by the granting of rights and privileges to prisoners that are not required by any provision of the United States Constitution or by the laws of this State to be granted to any person incarcerated in a penal or other custodial facility in this State as a punishment or correction for the commission of a crime.

(6) Victims of crime are entitled to finality in their criminal cases. Lengthy appeals and other post-judgment proceedings that challenge criminal convictions, frequent and difficult parole hearings that threaten to release criminal offenders, and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated. This prolonged suffering of crime victims and their families must come to an end.

(7) Finally, the People find and declare that the right to public safety extends to public and private primary, elementary, junior high, and senior high school, and community college, California State University, University of California, and private college and university campuses, where students and staff have the right to be safe and secure in their persons.

(8) To accomplish the goals it is necessary that the laws of California relating to the criminal justice process be amended in order to protect the legitimate rights of victims of crime.

4

(b) In order to preserve and protect a victim's rights to justice and due process, a victim shall be entitled to the following rights:

(1) To be treated with fairness and respect for his or her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal or juvenile justice process.

(2) To be reasonably protected from the defendant and persons acting on behalf of the defendant.

(3) To have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the defendant.

(4) To prevent the disclosure of confidential information or records to the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, which could be used to locate or harass the victim or the victim's family or which disclose confidential communications made in the course of medical or counseling treatment, or which are otherwise privileged or confidential by law.

(5) To refuse an interview, deposition, or discovery request by the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, and to set reasonable conditions on the conduct of any such interview to which the victim consents.

(6) To reasonable notice of and to reasonably confer with the prosecuting agency, upon request, regarding, the arrest of the defendant if known by the prosecutor, the charges filed, the determination whether to extradite the defendant, and, upon request, to be notified of and informed before any pretrial disposition of the case.

(7) To reasonable notice of all public proceedings, including delinquency proceedings, upon request, at which the defendant and the prosecutor are entitled to be present and of all parole or other post-conviction release proceedings, and to be present at all such proceedings.

(8) To be heard, upon request, at any proceeding, including any delinquency proceeding, involving a post-arrest release decision, plea, sentencing, post-conviction release decision, or any proceeding in which a right of the victim is at issue.

5

(9) To a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings.

(10) To provide information to a probation department official conducting a pre-sentence investigation concerning the impact of the offense on the victim and the victim's family and any sentencing recommendations before the sentencing of the defendant.

(11) To receive, upon request, the pre-sentence report when available to the defendant, except for those portions made confidential by law.

(12) To be informed, upon request, of the conviction, sentence, place and time of incarceration, or other disposition of the defendant, the scheduled release date of the defendant, and the release of or the escape by the defendant from custody.

(13) To restitution.

(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.

(B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.

(C) All monetary payments, monies, and property collected from any person who has been ordered to make restitution shall be first applied to pay the amounts ordered as restitution to the victim.

(14) To the prompt return of property when no longer needed as evidence.

(15) To be informed of all parole procedures, to participate in the parole process, to provide information to the parole authority to be considered before the parole of the offender, and to be notified, upon request, of the parole or other release of the offender.

6

(16) To have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made.

(17) To be informed of the rights enumerated in paragraphs (1) through (16).

(c) (1) A victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision (b) in any trial or appellate court with jurisdiction over the case as a matter of right. The court shall act promptly on such a request.

(2) This section does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the State or of any of its political subdivisions, or any officer or employee of the court.

(d) The granting of these rights to victims shall not be construed to deny or disparage other rights possessed by victims. The court in its discretion may extend the right to be heard at sentencing to any person harmed by the defendant. The parole authority shall extend the right to be heard at a parole hearing to any person harmed by the offender.

(e) As used in this section, a "victim" is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act. The term "victim" also includes the person's spouse, parents, children, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated. The term "victim" does not include a person in custody for an offense, the accused, or a person whom the court finds would not act in the best interests of a minor victim.

(f) In addition to the enumerated rights provided in subdivision (b) that are personally enforceable by victims as provided in subdivision (c), victims of crime have additional rights that are shared with all of the People of the State of California. These collectively held rights include, but are not limited to, the following:

(1) Right to Safe Schools. All students and staff of public primary, elementary, junior high, and senior high schools, and community colleges, colleges, and universities have the inalienable right to attend campuses which are safe, secure and peaceful.

7

(2) Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press.

(3) Public Safety Bail. A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the safety of the victim, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. Public safety and the safety of the victim shall be the primary considerations.
A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail.
Before any person arrested for a serious felony may be released on bail, a hearing may be held before the magistrate or judge, and the prosecuting attorney and the victim shall be given notice and reasonable opportunity to be heard on the matter.
When a judge or magistrate grants or denies bail or release on a person's own recognizance, the reasons for that decision shall be stated in the record and included in the court's minutes.

(4) Use of Prior Convictions. Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court.

(5) Truth in Sentencing.Sentences that are individually imposed upon convicted criminal wrongdoers based upon the facts and circumstances surrounding their cases shall be carried out in compliance with the courts' sentencing orders, and shall not be substantially diminished by early release policies intended to alleviate overcrowding in custodial facilities. The legislative branch shall ensure sufficient funding to adequately house inmates for the full terms of their sentences, except for

8

statutorily authorized credits which reduce those sentences.

(6) Reform of the parole process. The current process for parole hearings is excessive, especially in cases in which the defendant has been convicted of murder. The parole hearing process must be reformed for the benefit of crime victims.

(g) As used in this article, the term "serious felony" is any crime defined in subdivision (c) of Section 1192.7 of the Penal Code, or any successor statute.
*(Sec. 28 amended Nov. 4, 2008, by Prop. 9. Initiative measure.)*

# CALIFORNIA CIVIL CODE § 52.1 ("TOM BANE CIVIL RIGHTS ACT")

**California Civil Code § 52.1** [1]

(a) This section shall be known, and may be cited, as the Tom Bane Civil Rights Act.

(b) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.

---

[1] California Legislative Information, Civil Code, Accessed on May 6 2025.

9

(c) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute in their own name and on their own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (b).

(d) An action brought pursuant to subdivision (b) or (c) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has their place of business. An action brought by the Attorney General pursuant to subdivision (b) also may be filed in the superior court for any county wherein the Attorney General has an office, and in that case, the jurisdiction of the court shall extend throughout the state.

(e) If a court issues a temporary restraining order or a preliminary or permanent injunction in an action brought pursuant to subdivision (b) or (c), ordering a defendant to refrain from conduct or activities, the order issued shall include the following statement: VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER SECTION 422.77 OF THE PENAL CODE.

(f) The court shall order the plaintiff or the attorney for the plaintiff to deliver, or the clerk of the court to mail, two copies of any order, extension, modification, or termination thereof granted pursuant to this section, by the close of the business day on which the order, extension, modification, or termination was granted, to each local law enforcement agency having jurisdiction over the residence of the plaintiff and any other locations where the court determines that acts of violence against the plaintiff are likely to occur. Those local law enforcement agencies shall be designated by the plaintiff or the attorney for the plaintiff. Each appropriate law enforcement agency receiving any order, extension, or modification of any order issued pursuant

10

to this section shall serve forthwith one copy thereof upon the defendant. Each appropriate law enforcement agency shall provide to any law enforcement officer responding to the scene of reported violence, information as to the existence of, terms, and current status of, any order issued pursuant to this section.

(g) A court shall not have jurisdiction to issue an order or injunction under this section, if that order or injunction would be prohibited under Section 527.3 of the Code of Civil Procedure.

(h) An action brought pursuant to this section is independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law, including, but not limited to, an action, remedy, or procedure brought pursuant to Section 51.7.

(i) In addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to subdivision (c), the court may award the petitioner or plaintiff reasonable attorney's fees.

(j) A violation of an order described in subdivision (e) may be punished either by prosecution under Section 422.77 of the Penal Code, or by a proceeding for contempt brought pursuant to Title 5 (commencing with Section 1209) of Part 3 of the Code of Civil Procedure. However, in any proceeding pursuant to the Code of Civil Procedure, if it is determined that the person proceeded against is guilty of the contempt charged, in addition to any other relief, a fine may be imposed not exceeding one thousand dollars ($1,000), or the person may be ordered imprisoned in a county jail not exceeding six months, or the court may order both the imprisonment and fine.

(k) Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person

11

threatening violence had the apparent ability to carry out the threat.

(l) No order issued in any proceeding brought pursuant to subdivision (b) or (c) shall restrict the content of any person's speech. An order restricting the time, place, or manner of any person's speech shall do so only to the extent reasonably necessary to protect the peaceable exercise or enjoyment of constitutional or statutory rights, consistent with the constitutional rights of the person sought to be enjoined.

(m) The rights, penalties, remedies, forums, and procedures of this section shall not be waived by contract except as provided in Section 51.7.

(n) The state immunity provisions provided in Sections 821.6, 844.6, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer, as those terms are defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or directly against a public entity that employs a peace officer or custodial officer, under this section.

(o) Sections 825, 825.2, 825.4, and 825.6 of the Government Code, providing for indemnification of an employee or former employee of a public entity, shall apply to any cause of action brought under this section against an employee or former employee of a public entity.

*(Amended by Stats. 2021, Ch. 409, Sec. 3. (SB 2) Effective January 1, 2022.)*

## California Civil Code § 51.7 ("Ralph Civil Rights Act")

**California Civil Code § 51.7** [2]

---

[2] California Legislative Information, Civil Code, Accessed on May 6 2025.

(a) This section shall be known, and may be cited, as the Ralph Civil Rights Act of 1976.

(b) (1) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

(2) For purposes of this subdivision, "intimidation by threat of violence" includes, but is not limited to, making or threatening to make a claim or report to a peace officer or law enforcement agency that falsely alleges that another person has engaged in unlawful activity or in an activity that requires law enforcement intervention, knowing that the claim or report is false, or with reckless disregard for the truth or falsity of the claim or report.

(3) For purposes of this subdivision, "intimidation by threat of violence" includes, but is not limited to, terrorizing the owner or occupant of private property with the distribution of materials on the private property, without authorization, with the purpose of terrorizing the owner or occupant of that private property.

(4) For purposes of this subdivision, "terrorize" means to cause a person of ordinary emotions and sensibilities to fear for personal safety.

(c) (1) A person shall not require another person to waive any legal right, penalty, remedy, forum, or procedure for a violation of this section, as a condition of entering into a contract for goods or services, including the right to file and pursue a civil action or complaint with, or otherwise notify, the Attorney General or any other public prosecutor, or law enforcement agency, the Civil Rights Department, or any court or other governmental entity.

(2) A person shall not refuse to enter into a contract with, or refuse to provide goods or services to, another person on the basis that the other person refuses to waive any legal right, penalty, remedy, forum, or procedure for a violation of this section, including the right to file and pursue a civil action or complaint with, or otherwise

13

notify, the Attorney General or any other public prosecutor, or law enforcement agency, the Civil Rights Department, or any other governmental entity.

(3) Any waiver of any legal right, penalty, remedy, forum, or procedure for a violation of this section, including the right to file and pursue a civil action or complaint with, or otherwise notify, the Attorney General or any other public prosecutor, or law enforcement agency, the Civil Rights Department, or any other governmental entity shall be knowing and voluntary, in writing, and expressly not made as a condition of entering into a contract for goods or services or as a condition of providing or receiving goods and services.

(4) Any waiver of any legal right, penalty, remedy, forum, or procedure for a violation of this section that is required as a condition of entering into a contract for goods or services shall be deemed involuntary, unconscionable, against public policy, and unenforceable. This subdivision does not affect the enforceability or validity of any other provision of the contract.

(5) A person who seeks to enforce a waiver of any legal right, penalty, remedy, forum, or procedure for a violation of this section has the burden of proving that the waiver was knowing and voluntary and not made as a condition of the contract or of providing or receiving the goods or services.

(6) The exercise of a person's right to refuse to waive any legal right, penalty, remedy, forum, or procedure for a violation of this section, including a rejection of a contract requiring a waiver, does not affect any otherwise legal terms of a contract or an agreement.

(7) This subdivision does not apply to an agreement to waive any legal rights, penalties, remedies, forums, or procedures for a violation of this section after a legal claim has arisen.

(8) This subdivision applies to an agreement to waive any legal right, penalty, remedy, forum, or procedure for a violation of this section, including an agreement to accept private arbitration, entered into, altered, modified, renewed, or extended on or after January 1, 2015.

(d) This section does not apply to statements concerning positions in a labor dispute that are made during otherwise lawful labor picketing.

14

(e) (1) Speech alone shall not support an action brought pursuant to this section, except upon a showing of all of the following:

(A) The speech itself threatens violence against a specific person or group of persons.

(B) The person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property.

(C) The person threatening violence is acting in reckless disregard for the threatening nature of their speech.

(D) The person threatening violence has the apparent ability to carry out the threat.

(2) This subdivision shall not be construed to negate or otherwise abrogate the requirements set forth in subdivisions (b) to (d), inclusive, to bring an action pursuant to this section.

(f) The Legislature finds and declares that this section was enacted as part of the Ralph Civil Rights Act of 1976, in Chapter 1293 of the Statutes of 1976.

(g) This section does not negate or otherwise abrogate the provisions of Sections 1668, 1953, and 3513.

*(Amended by Stats. 2024, Ch. 584, Sec. 1. (AB 3024) Effective September 25, 2024.)*

## California Civil Code § 51.1

If a violation of Section 51, 51.5, 51.7, 51.9, or 52.1 is alleged or the application or construction of any of these sections is in issue in any proceeding in the Supreme Court of California, a state court of appeal, or the appellate division of a superior court, each party shall serve a copy of the party's brief or petition and brief, on the State Solicitor General at the Office of the Attorney General. No brief may be accepted for filing unless the proof of service shows service on the State Solicitor General. Any party failing to comply with this requirement shall be given a reasonable opportunity to cure the failure before the court imposes any sanction and, in that instance, the court shall allow the Attorney General reasonable additional time to file a brief in the matter.

*(Added by Stats. 2002, Ch. 244, Sec. 1. Effective January 1, 2003.)*

**California Civil Code § 52** [3]

(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

(b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:
(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.
(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice.
(3) Attorney's fees as may be determined by the court.

*(Chapter 7 enacted 1872.)*

## CALIFORNIA CIVIL CODE ("NUISANCE") §§ 3479-3484

**California Civil Code Section 3479**

---

[3] California Legislative Information, Civil Code, Accessed on May 6 2025.

16

Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

*(Amended by Stats. 1996, Ch. 658, Sec. 1. Effective January 1, 1997.)*

## California Civil Code Section 3480

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.

*(Amended by Code Amendments 1873-74, Ch. 612.)*

## California Civil Code Section 3481.

Every nuisance not included in the definition of the last section is private.

*(Enacted 1872.)*

## California Civil Code Section 3483.

Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it.

*(Enacted 1872.)*

## California Civil Code Section 3484.

The abatement of a nuisance does not prejudice the right of any person to recover damages for its past existence.

*(Enacted 1872.)*

# Santa Clara City Code: Chapter 8.30 (Public Nuisances)

## 8.30.010 Findings and purpose.

(a) The City Council of the City of Santa Clara does hereby find that it is necessary to provide for the abatement of conditions which are offensive or annoying to the senses, detrimental to property values and community appearance, an obstruction to or interference with the comfortable enjoyment of adjacent property or premises, or hazardous or injurious to the health, safety, or welfare of the general public in such ways to constitute a public nuisance; and, to provide standards to safeguard life, health, and public welfare in keeping with the character of the City by allowing for the maintenance of property or premises for each of the following purposes:

(1) To safeguard the health, safety, and welfare of the people by maintaining property or premises in good and appropriate condition;

(2) To promote a sound and attractive community appearance; and

(3) To enhance the economic value of the community, and each area in it, through the regulation of the maintenance of property or premises.

(b) Accordingly, the City Council finds and declares that the purpose of this chapter is to:

(1) Reduce the threat to health, safety, welfare, appearance, and economic value due to the decline in property condition(s) by lawfully delineating the circumstances under which such condition(s) may be considered illegal and/or abated; and further finds that:

(2) Abatement of such condition(s) is in the best interest of the health, safety, and welfare of the residents of the City because maximum use and enjoyment of property or premises in proximity to one another depends upon maintenance of those properties or premises at or above the minimum standard. (Ord. 1663 § 1, 11-1-94. Formerly § 22A-1).

## 8.30.020 Definitions.

18

For the purpose of this chapter, the following words and phrases are defined as follows:

(a) "Abandoned," in addition to those definitions provided by State codes, local ordinances, and case law, means and refers to any item which has ceased to be used for its designed and intended purpose. The following factors, among others, will be considered in determining whether or not an item has been abandoned:

(1) Present operability and functional utility;

(2) The date of last effective use;

(3) The condition of disrepair or damage;

(4) The last time an effort was made to repair or rehabilitate the item;

(5) The status of registration or licensing of the item;

(6) The age and degree of obsolescence;

(7) The cost of rehabilitation or repair of the item versus its market value; and

(8) The nature of the area and location of the item.

(b) "Abate" means to repair, replace, remove, destroy, or otherwise remedy the condition in question by such means and in such a manner and to such an extent as the enforcement officer in his/her judgment shall determine is necessary in the interest of the general health, safety, and welfare of the community.

(c) "Attractive nuisance" means any condition, instrument, or machine which is unsafe, unprotected, and may prove detrimental to children whether in a building, on the premises of a building, or on an unoccupied lot. This includes any abandoned wells, shafts, basements, or excavations; abandoned refrigerators and motor vehicles; any structurally unsound fences or structures; or, any lumber, trash, fences, debris, or vegetation which may prove hazardous or dangerous to inquisitive minors.

(d) "Dismantled" means that from which essential equipment, parts, or contents

19

have been removed or stripped and the outward appearance verifies the removal.

(e) "Enforcement officer" means that City officer or employee as may be designated in writing by the City Manager to enforce property or premises maintenance, zoning, and other City Code violations, as authorized by Penal Code Section 836.5.

(f) "Inoperative" means incapable of functioning or producing activity for mechanical or other reasons.

(g) "Lienholder" means any person, as defined in this chapter, who has a recorded interest in real property, including mortgagee, beneficiary under a deed of trust, or holder of other recorded liens or claims of interest in real property.

(h) "Nuisance" means any public nuisance known at common law or in equity jurisprudence.

(i) "Owner" means the registered owner of a vehicle, the person(s) to whom property tax is assessed on real or personal property, as shown on the last equalized assessment roll of the County, renter(s), lessor(s), and other occupants residing permanently or temporarily on property.

(j) "Person" means individual, partnership, joint venture, corporation, association, social club, fraternal organization, trust, estate, receiver, or any other entity.

(k) "Premises" means any building, lot, parcel, real estate, or land or portion of land, whether improved or unimproved, occupied or unoccupied, including adjacent streets, sidewalks, parkways, and parking strips.

(l) "Property" means any real property, including, but not limited to land, lot, or parcel of land, or any hereditament held by any owner, and shall include any alley, sidewalk, parkway, or unimproved public easement abutting such real property, lot, or parcel of land.

(m) "Structure" means anything constructed, built, or planted upon, any edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner, which structure requires location on the ground or is attached to something having a location on the ground, including fences, gates, garages, carports, swimming and wading pools, patios, outdoor areas, paved

areas, walks, tennis courts, and similar recreation areas.

(n) "Wrecked" means that which has the outward manifestation or appearance of damage to parts and contents that are essential to operation. (Ord. 1663 § 1, 11-1-94. Formerly § 22A-2).

## 8.30.030 Property maintenance – Public nuisances.

It is hereby declared to be a public nuisance for any owner or other person in control of said property or premises to keep or maintain property, premises, or rights-of-way in such a manner that any of the following conditions are found to exist:

(a) Abandoned, dismantled, wrecked, inoperable, unlicensed and discarded objects, equipment or appliances such as, but not limited to, vehicles, boats, water heaters, refrigerators, furniture which is not designed for outdoor use, household fixtures, machinery, equipment, cans, or containers standing or stored on property or on sidewalks or streets which can be viewed from a public street or walkway, alley, or other public property which items are readily accessible from such places, or which are stored on private property in violation of any other law or ordinance;

(b) Discarded putrescibles, garbage, rubbish, refuse, or recyclable items which have not been recycled within thirty (30) days of being deposited on the property which are determined by an enforcement officer to constitute a fire hazard or to be detrimental to human life, health, or safety;

(c) Oil, grease, paint, other petroleum products, hazardous materials, volatile chemicals, pesticides, herbicides, fungicides, or waste (solid, liquid, or gaseous) which is determined by an enforcement officer to constitute a fire or environmental hazard, or to be detrimental to human life, health, or safety;

(d) Lumber (excluding lumber for a construction project on the property with a valid permit), salvage materials, including but not limited to auto parts, scrap metals, tires, other materials stored on premises in excess of seventy-two (72) hours and visible from a public street, walkway, alley, or other public property;

(e) Receptacles for discarded materials and recyclables which are left in the front yard following the day of the regularly scheduled refuse pick-up for the property;

21

(f) Swimming pool, pond, spa, other body of water, or excavation which is abandoned, unattended, unsanitary, empty, which is not securely fenced, or which is determined by the enforcement officer to be detrimental to life, health, or safety;

(g) Any premises that detrimentally impacts the surrounding neighborhood because of dilapidation, deterioration, or decay or is unsafe for the purpose for which it is being used, or is not secured, or is improperly secured; and

(h) Any condition on a property that meets the requirements of subsections (h)(1) and (2):

(1) Is injurious to health, is indecent or offensive to the senses, or is an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property; and

(2) Affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal. (Ord. 1663 § 1, 11-1-94. Formerly § 22A-3).

**8.30.040 Responsibility for property maintenance.**

The owner, occupant, lessee, or tenant of any property within the city shall be responsible for the maintenance of property and premises in a manner consistent with the provisions of this chapter and this Code. (Ord. 1663 § 1, 11-1-94. Formerly § 22A-4).

*(The Santa Clara City Code is current through Ordinance 2075, passed February 25, 2025.)* [4]

# Santa Clara Zoning Code Chapter 18.16 – Office and Industrial Zones (LO-RD, HO-RD, LI, HI)

## 18.16.010 – Purpose of Office and Industrial Zones

---

[4] City of Santa Clara, https://www.codepublishing.com/CA/SantaClara/

A. The purpose of this Chapter is to describe the character and intent of the City's office and industrial zones, identify any supplemental land use regulations applicable to office and industrial zones, describe allowed land uses and permit requirements in office and industrial zones, and establish development standards for the same. B. The purpose of the individual office and industrial uses and the way they are applied are as follows:

**1. Low-Intensity Office/Research and Development (LO-RD).** The purpose of the RDOL Office/Research and Development – Low Intensity Zone is to provide areas for the construction, use, and occupancy of office/research and development uses, data centers, limited manufacturing, and employee-serving retail. The intent of this zone is to encourage the development of a richly landscaped campus park like industrial setting. The maximum FAR is 1.00. This zone implements the Low-Intensity Office/Research and Development land use designation in the General Plan.

**2. High-Intensity Office/Research and Development (HO-RD).** The purpose of the HO-RD High-Intensity Office/Research and Development Zone is to provide areas for the construction, use, and occupancy of office/research and development uses, ancillary data centers, limited manufacturing, and other Minor Industrial Uses, and employee-serving retail. The intent of this zone is to encourage the development of compact and urbanized developments that include a mix of mid- to high-rise structures in a richly landscaped campus park like industrial setting. The maximum FAR is 2.00. This zone implements the High-Intensity Office/Research and Development land use designation in the General Plan.

**3. Light Industrial Zone (LI).** The purpose of the LI Light Industrial Zone is to provide areas for the construction, use, and occupancy of a broad range of industrial uses including manufacturing, warehousing (including data centers), and wholesale establishments, as well as ancillary office uses and employee-serving commercial uses. Due to the potential presence of noxious and hazardous materials associated with industrial processes, nonindustrial uses that attract sensitive receptors are strictly limited. The maximum FAR is 0.60. This zone implements the Light Industrial land use designation in the General Plan.

**4. Heavy Industrial Zone (HI).** The purpose of the HI Heavy Industrial Zone is to provide areas for the construction, use, and occupancy of a broad range of heavy

23

industrial uses, including heavy manufacturing and other facilities that use and store noxious and hazardous materials, as well as ancillary office uses and employee-serving retail. Due to the presence of noxious and hazardous materials, nonindustrial uses that attract sensitive receptors are strictly limited. The maximum FAR is 0.45. This zone implements the Heavy Industrial land use designation in the General Plan.

## CALIFORNIA PENAL CODE § 518 (EXTORTION)

(a) Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right.

(b) For purposes of this chapter, "consideration" means anything of value, including sexual conduct as defined in subdivision (b) of Section 311.3, or an image of an intimate body part as defined in subparagraph (C) of paragraph (4) of subdivision (j) of Section 647.

(c) Notwithstanding subdivision (a), this section does not apply to a person under 18 years of age who has obtained consideration consisting of sexual conduct or an image of an intimate body part.

*(Amended by Stats. 2017, Ch. 518, Sec. 1. (SB 500) Effective January 1, 2018.)*

## CALIFORNIA PENAL CODE § 647(J)(4) (SEXTORTION)

Except as provided in paragraph (5) of subdivision (b) and in subdivisions (k) and (l), every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

(a) An individual who solicits anyone to engage in or who engages in lewd or dissolute conduct in a public place or in a place open to the public or exposed to public view.

(b) (1) An individual who solicits, or who agrees to engage in, or who engages in, an act of prostitution with the intent to receive compensation, money, or anything of value from another person. An individual agrees to engage in an act of prostitution when, with specific intent to so engage, the individual manifests an acceptance of an

24

offer or solicitation by another person to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in an act of prostitution.

(2) An individual who solicits, or who agrees to engage in, or who engages in, an act of prostitution with another person who is 18 years of age or older in exchange for the individual providing compensation, money, or anything of value to the other person. An individual agrees to engage in an act of prostitution when, with specific intent to so engage, the individual manifests an acceptance of an offer or solicitation by another person who is 18 years of age or older to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in an act of prostitution.

(3) An individual who solicits, or who agrees to engage in, or who engages in, an act of prostitution with another person who is a minor in exchange for the individual providing compensation, money, or anything of value to the minor. An individual agrees to engage in an act of prostitution when, with specific intent to so engage, the individual manifests an acceptance of an offer or solicitation by someone who is a minor to so engage, regardless of whether the offer or solicitation was made by a minor who also possessed the specific intent to engage in an act of prostitution.

(4) A manifestation of acceptance of an offer or solicitation to engage in an act of prostitution does not constitute a violation of this subdivision unless some act, in addition to the manifestation of acceptance, is done within this state in furtherance of the commission of the act of prostitution by the person manifesting an acceptance of an offer or solicitation to engage in that act. As used in this subdivision, "prostitution" includes any lewd act between persons for money or other consideration.

(5) Notwithstanding paragraphs (1) to (3), inclusive, this subdivision does not apply to a child under 18 years of age who is alleged to have engaged in conduct to receive money or other consideration that would, if committed by an adult, violate this subdivision. A commercially exploited child under this paragraph may be adjudged a dependent child of the court pursuant to paragraph (2) of subdivision (b) of Section 300 of the Welfare and Institutions Code and may be taken into temporary custody pursuant to subdivision (a) of Section 305 of the Welfare and Institutions Code, if the conditions allowing temporary custody without warrant are met.

(c) Who accosts other persons in a public place or in a place open to the public for the purpose of begging or soliciting alms.

(d) Who loiters in or about a toilet open to the public for the purpose of engaging in

25

or soliciting a lewd or lascivious or an unlawful act.

(e) Who lodges in a building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it.

(f) Who is found in a public place under the influence of intoxicating liquor, a drug, controlled substance, toluene, or a combination of an intoxicating liquor, drug, controlled substance, or toluene, in a condition that they are unable to exercise care for their own safety or the safety of others, or by reason of being under the influence of intoxicating liquor, drug, controlled substance, toluene, or a combination of an intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of a street, sidewalk, or other public way.

(g) If a person has violated subdivision (f), a peace officer, if reasonably able to do so, shall place the person, or cause the person to be placed, in civil protective custody. The person shall be taken to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates. A peace officer may place a person in civil protective custody with that kind and degree of force authorized to effect an arrest for a misdemeanor without a warrant. A person who has been placed in civil protective custody shall not thereafter be subject to criminal prosecution or juvenile court proceeding based on the facts giving rise to this placement. This subdivision does not apply to the following persons:
(1) A person who is under the influence of a drug or under the combined influence of intoxicating liquor and a drug.
(2) A person who a peace officer has probable cause to believe has committed a felony, or who has committed a misdemeanor in addition to subdivision (f).
(3) A person who a peace officer in good faith believes will attempt escape or will be unreasonably difficult for medical personnel to control.

(h) Who loiters, prowls, or wanders upon the private property of another, at any time, without visible or lawful business with the owner or occupant. As used in this subdivision, "loiter" means to delay or linger without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.

(i) Who, while loitering, prowling, or wandering upon the private property of

26

another, at any time, peeks in the door or window of an inhabited building or structure, without visible or lawful business with the owner or occupant.

(j) (1) A person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, camcorder, mobile phone, electronic device, or unmanned aircraft system, the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside. This subdivision does not apply to those areas of a private business used to count currency or other negotiable instruments.

(2) A person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another identifiable person under or through the clothing being worn by that other person, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person and invade the privacy of that other person, under circumstances in which the other person has a reasonable expectation of privacy. For the purposes of this paragraph, "identifiable" means capable of identification, or capable of being recognized, meaning that someone, including the victim, could identify or recognize the victim. It does not require the victim's identity to actually be established.

(3) (A) A person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another identifiable person who may be in a state of full or partial undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, in the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which that other person has a reasonable expectation of privacy, with the intent to invade the privacy of that other person. For the purposes of this paragraph, "identifiable" means capable of identification, or capable of being recognized, meaning that someone, including the victim, could identify or recognize the victim. It does not require the victim's identity to actually be established.

(B) Neither of the following is a defense to the crime specified in this paragraph:

(i) The defendant was a cohabitant, landlord, tenant, cotenant, employer, employee,

27

or business partner or associate of the victim, or an agent of any of these.

(ii) The victim was not in a state of full or partial undress.

(4) (A) (i) A person who intentionally distributes or causes to be distributed the image of the intimate body part or parts of another identifiable person, or an image of the person depicted engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation by the person depicted or in which the person depicted participates, when subclauses (I) to (III), inclusive, are all true:

(I) The person distributing the image knows or should know that the distribution of the image will cause serious emotional distress.

(II) The person depicted suffers serious emotional distress.

(III) One of the following has occurred:

(ia) The person depicted in the image and the person distributing the image had agreed or had an understanding that the image shall remain private.

(ib) The image was knowingly recorded, captured, or otherwise obtained by the person distributing the image without the authorization of the person depicted, and the image was recorded or captured under circumstances in which the person depicted had a reasonable expectation of privacy.

(ic) The image is knowingly obtained by the person distributing the image by exceeding authorized access from the property, accounts, messages, files, or resources of the person depicted.

(ii) A person who intentionally creates and distributes or causes to be distributed any photo realistic image, digital image, electronic image, computer image, computer-generated image, or other pictorial representation of an intimate body part or parts of another identifiable person, or an image of the person depicted engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation by the person depicted or in which the person depicted participates that was created in a manner that would cause a reasonable person to believe the image is an authentic image of the person depicted, under circumstances in which the person distributing the image knows or should know that distribution of the image will cause serious emotional distress, and the person depicted suffers that distress. This clause shall not apply to a person who was under 18 years of age at the time the person committed the offense.

(B) (i) A person intentionally distributes an image described in subparagraph (A) when that person personally distributes the image.

(ii) A person intentionally causes an image described in subparagraph (A) to be distributed when that person arranges, specifically requests, or intentionally causes another person to distribute the image.

28

(C) As used in this paragraph, the following terms have the following meanings:

(i) "Distribute" includes exhibiting in public or giving possession.

(ii) "Identifiable" has the same meaning as in paragraphs (2) and (3).

(iii) "Intimate body part" means any portion of the genitals, the anus and, in the case of a female, also includes any portion of the breasts below the top of the areola, that is either uncovered or clearly visible through clothing.

(D) It shall not be a violation of this paragraph to distribute an image described in subparagraph (A) if any of the following applies:

(i) The distribution is made in the course of reporting an unlawful activity.

(ii) The distribution is made in compliance with a subpoena or other court order for use in a legal proceeding.

(iii) The distribution is made in the course of a lawful public proceeding.

(iv) The distribution is related to a matter of public concern or public interest. Distribution is not a matter of public concern or public interest solely because the depicted individual is a public figure.

(5) This subdivision does not preclude punishment under any section of law providing for greater punishment.

(6) A defendant shall not be punished for both a violation of paragraph (4) of subdivision (j) and paragraph (2) of subdivision (j) or Section 502 if that punishment would be barred under Section 654.

(k) (1) Except as provided in paragraph (3), a second or subsequent violation of subdivision (j) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not exceeding two thousand dollars ($2,000), or by both that fine and imprisonment.

(2) Except as provided in paragraph (3), if the victim of a violation of subdivision (j) was a minor at the time of the offense, the violation is punishable by imprisonment in a county jail not exceeding one year, or by a fine not exceeding two thousand dollars ($2,000), or by both that fine and imprisonment.

(3) If the victim of a violation of paragraph (3) of subdivision (j) was a minor at the time of the offense, a second or subsequent violation of paragraph (3) of subdivision (j) is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment. This paragraph shall not apply to a person who was under 18 years of age at the time that they committed the offense.

(l) (1) (A) If a crime is committed in violation of subdivision (b) by a defendant who

29

is 18 years of age or older, the person who was solicited was a minor at the time of the offense, and the defendant knew or should have known that the person who was solicited was a minor at the time of the offense, the violation is punishable by imprisonment in a county jail for not less than two days and not more than one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both that fine and imprisonment, except as provided in paragraph (2).

(B) The court may, in unusual cases, when the interests of justice are best served, reduce or eliminate the mandatory two days of imprisonment in a county jail required by this paragraph. If the court reduces or eliminates the mandatory two days' imprisonment, the court shall specify the reason on the record.

(2) (A) If the solicited minor was under 16 years of age at the time of the offense, or if the person solicited was under 18 years of age at the time of the offense and the person solicited was a victim of human trafficking under Section 236.1, the violation is punishable by either of the following:

(i) Imprisonment in the county jail not exceeding one year and a fine not to exceed ten thousand dollars ($10,000).

(ii) Imprisonment pursuant to subdivision (h) of Section 1170.

(B) A second or subsequent violation of this paragraph is punishable as a felony by imprisonment pursuant to subdivision (h) of Section 1170.

*(Amended by Stats. 2024, Ch. 617, Sec. 2.7. (SB 1414) Effective January 1, 2025.)*

# CALIFORNIA CODE, PENAL CODE § 136.1

(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

(1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

(2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

(3) For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice.

(b) Except as provided in subdivision (c), every person who attempts to prevent or

30

dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

(2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.

(3) Arresting or causing or seeking the arrest of any person in connection with that victimization.

(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

(1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.

(2) Where the act is in furtherance of a conspiracy.

(3) Where the act is committed by any person who has been convicted of any violation of this section, any predecessor law hereto or any federal statute or statute of any other state which, if the act prosecuted was committed in this state, would be a violation of this section.

(4) Where the act is committed by any person for pecuniary gain or for any other consideration acting upon the request of any other person. All parties to such a transaction are guilty of a felony.

(d) Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section.

(e) Nothing in this section precludes the imposition of an enhancement for great bodily injury where the injury inflicted is significant or substantial.

(f) The use of force during the commission of any offense described in subdivision (c) shall be considered a circumstance in aggravation of the crime in imposing a term

31

of imprisonment under subdivision (b) of Section 1170.

*Current as of January 01, 2023 .*

# CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 - 17208

## *(Preservation & Regulation of Competition)*

**17200**.

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.
*(Amended by Stats. 1992, Ch. 430, Sec. 2. Effective January 1, 1993.)*

**17201**.

As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.
*(Added by Stats. 1977, Ch. 299.)*

**17201.5**.

As used in this chapter:
(a) "Board within the Department of Consumer Affairs" includes any commission, bureau, division, or other similarly constituted agency within the Department of Consumer Affairs.
(b) "Local consumer affairs agency" means and includes any city or county body which primarily provides consumer protection services.
*(Added by Stats. 1979, Ch. 897.)*

**17202**.

Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition.

*(Added by Stats. 1977, Ch. 299.)*

## 17203.  Injunctive Relief—Court Orders

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

*(Amended November 2, 2004, by initiative Proposition 64, Sec. 2.)*

## 17204.  Actions for Injunctions by Attorney General, District Attorney, County Counsel, and City Attorneys

Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a city attorney of a city having a population in excess of 750,000, or by a county counsel of any county within which a city has a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.

*(Amended by Stats. 2021, Ch. 140, Sec. 1. (SB 461) Effective January 1, 2022. Note: This section was amended on Nov. 2, 2004, by initiative Prop. 64.)*

## 17205.

Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.

*(Added by Stats. 1977, Ch. 299.)*

### 17206.  Civil Penalty for Violation of Chapter

(a) Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, by any city attorney of a city having a population in excess of 750,000, or by a county counsel of any county within which a city has a population in excess of 750,000, by any city attorney of any city and county, or, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor, in any court of competent jurisdiction.

(b) The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(c) (1) If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the General Fund.

(2) If the action is brought by a district attorney or county counsel, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered.

(3) (A) Except as provided in subparagraph (B) and subdivision (e), if the action is brought by a city attorney or city prosecutor, one-half of the penalty collected shall be paid to the treasurer of the city in which the judgment was entered, and one-half

34

to the treasurer of the county in which the judgment was entered.

(B) If the action is brought by the City Attorney of San Diego, the penalty collected shall be paid to the treasurer of the City of San Diego.

(4) The aforementioned funds shall be for the exclusive use by the Attorney General, the district attorney, the county counsel, and the city attorney for the enforcement of consumer protection laws.

(d) The Unfair Competition Law Fund is hereby created as a special account within the General Fund in the State Treasury. The portion of penalties that is payable to the General Fund or to the Treasurer recovered by the Attorney General from an action or settlement of a claim made by the Attorney General pursuant to this chapter or Chapter 1 (commencing with Section 17500) of Part 3 shall be deposited into this fund. Moneys in this fund, upon appropriation by the Legislature, shall be used by the Attorney General to support investigations and prosecutions of California's consumer protection laws, including implementation of judgments obtained from such prosecutions or investigations and other activities which are in furtherance of this chapter or Chapter 1 (commencing with Section 17500) of Part 3. Notwithstanding Section 13340 of the Government Code, any civil penalties deposited in the fund pursuant to the National Mortgage Settlement, as provided in Section 12531 of the Government Code, are continuously appropriated to the Department of Justice for the purpose of offsetting General Fund costs incurred by the Department of Justice.

(e) If the action is brought at the request of a board within the Department of Consumer Affairs or a local consumer affairs agency, the court shall determine the reasonable expenses incurred by the board or local agency in the investigation and prosecution of the action.

Before any penalty collected is paid out pursuant to subdivision (c), the amount of any reasonable expenses incurred by the board shall be paid to the Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund, the moneys shall be paid to the Treasurer. The amount of any reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality or county that funds the local agency.

(f) If the action is brought by a city attorney of a city and county, the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered for the exclusive use by the city attorney for the enforcement of consumer protection laws. However, if the action is brought by a city

35

attorney of a city and county for the purposes of civil enforcement pursuant to Section 17980 of the Health and Safety Code or Article 3 (commencing with Section 11570) of Chapter 10 of Division 10 of the Health and Safety Code, either the penalty collected shall be paid entirely to the treasurer of the city and county in which the judgment was entered or, upon the request of the city attorney, the court may order that up to one-half of the penalty, under court supervision and approval, be paid for the purpose of restoring, maintaining, or enhancing the premises that were the subject of the action, and that the balance of the penalty be paid to the treasurer of the city and county.

*(Amended by Stats. 2021, Ch. 140, Sec. 2. (SB 461) Effective January 1, 2022. Note: This section was amended on Nov. 2, 2004, by initiative Prop. 64.)*

## 17206.1.

(a) (1) In addition to any liability for a civil penalty pursuant to Section 17206, a person who violates this chapter, and the act or acts of unfair competition are perpetrated against one or more senior citizens or disabled persons, may be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which may be assessed and recovered in a civil action as prescribed in Section 17206.
(2) Subject to subdivision (d), any civil penalty shall be paid as prescribed by subdivisions (b) and (c) of Section 17206.

(b) As used in this section, the following terms have the following meanings:
(1) "Senior citizen" means a person who is 65 years of age or older.
(2) "Disabled person" means a person who has a physical or mental impairment that substantially limits one or more major life activities.
(A) As used in this subdivision, "physical or mental impairment" means any of the following:
(i) A physiological disorder or condition, cosmetic disfigurement, or anatomical loss substantially affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; or endocrine.
(ii) A mental or psychological disorder, including intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities.
"Physical or mental impairment" includes, but is not limited to, diseases and

36

conditions including orthopedic, visual, speech, and hearing impairment, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, and emotional illness.

(B) "Major life activities" means functions that include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(c) In determining whether to impose a civil penalty pursuant to subdivision (a) and the amount thereof, the court shall consider, in addition to any other appropriate factors, the extent to which one or more of the following factors are present:

(1) Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons.

(2) Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer any of the following: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

(3) Whether one or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

(d) A court of competent jurisdiction hearing an action pursuant to this section may make orders and judgments as necessary to restore to a senior citizen or disabled person money or property, real or personal that may have been acquired by means of a violation of this chapter. Restitution ordered pursuant to this subdivision shall be given priority over recovery of a civil penalty designated by the court as imposed pursuant to subdivision (a), but shall not be given priority over a civil penalty imposed pursuant to subdivision (a) of Section 17206. If the court determines that full restitution cannot be made to those senior citizens or disabled persons, either at the time of judgment or by a future date determined by the court, then restitution under this subdivision shall be made on a pro rata basis depending on the amount of loss.

*(Amended by Stats. 2012, Ch. 457, Sec. 3. (SB 1381) Effective January 1, 2013.)*

**17206.2.**

(a) (1) In addition to any liability for a civil penalty pursuant to Section 17206, a person who violates this chapter, if the act or acts of unfair competition are perpetrated against one or more service members or veterans, may be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which may be assessed and recovered in a civil action as prescribed in Section 17206. (2) Any civil penalty shall be paid as prescribed by subdivisions (b) and (c) of Section 17206.

(b) As used in this section, the following terms have the following meanings:
(1) "Service member" means a person who is a member of the Army, Navy, Air Force, Marine Corps, Space Force, or Coast Guard, or the active militia of this state.
(2) "Veteran" means a person who was formerly a service member.

*(Added by Stats. 2022, Ch. 620, Sec. 2. (SB 1311) Effective January 1, 2023.)*

**17207**.

(a) Any person who intentionally violates any injunction prohibiting unfair competition issued pursuant to Section 17203 shall be liable for a civil penalty not to exceed six thousand dollars ($6,000) for each violation. Where the conduct constituting a violation is of a continuing nature, each day of that conduct is a separate and distinct violation. In determining the amount of the civil penalty, the court shall consider all relevant circumstances, including, but not limited to, the extent of the harm caused by the conduct constituting a violation, the nature and persistence of that conduct, the length of time over which the conduct occurred, the assets, liabilities, and net worth of the person, whether corporate or individual, and any corrective action taken by the defendant.

(b) The civil penalty prescribed by this section shall be assessed and recovered in a civil action brought in any county in which the violation occurs or where the injunction was issued in the name of the people of the State of California by the Attorney General or by any district attorney, any county counsel of any county within which a city has a population in excess of 750,000 or any county counsel that is authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney in any court of competent jurisdiction within the attorney's jurisdiction without regard to the county from which the original

38

injunction was issued. An action brought pursuant to this section to recover civil penalties shall take precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law.

(c) If such an action is brought by the Attorney General, one-half of the penalty collected pursuant to this section shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the State Treasurer. If brought by a district attorney or county counsel the entire amount of the penalty collected shall be paid to the treasurer of the county in which the judgment is entered. If brought by a city attorney or city prosecutor, one-half of the penalty shall be paid to the treasurer of the county in which the judgment was entered and one-half to the city, except that if the action was brought by a city attorney of a city and county the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment is entered.

(d) If the action is brought at the request of a board within the Department of Consumer Affairs or a local consumer affairs agency, the court shall determine the reasonable expenses incurred by the board or local agency in the investigation and prosecution of the action.
Before any penalty collected is paid out pursuant to subdivision (c), the amount of the reasonable expenses incurred by the board shall be paid to the State Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund, the moneys shall be paid to the State Treasurer. The amount of the reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality or county which funds the local agency.

*(Amended by Stats. 2021, Ch. 140, Sec. 3. (SB 461) Effective January 1, 2022.)*

**17208**.  Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section shall be revived by its enactment.

*(Added by Stats. 1977, Ch. 299.)*

# CALIFORNIA LABOR CODE 98.6

(a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to their rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that they are owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of themselves or others of any rights afforded them.

(b) (1) Any employee who is discharged, threatened with discharge, demoted, suspended, retaliated against, subjected to an adverse action, or in any other manner discriminated against in the terms and conditions of their employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer. If an employer engages in any action prohibited by this section within 90 days of the protected activity specified in this section, there shall be a rebuttable presumption in favor of the employee's claim.

(2) An employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

(3) In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation.

(c) (1) Any applicant for employment who is refused employment, who is not selected for a training program leading to employment, or who in any other manner is

40

discriminated against in the terms and conditions of any offer of employment because the applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the applicant has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to employment and reimbursement for lost wages and work benefits caused by the acts of the prospective employer.

(2) This subdivision shall not be construed to invalidate any collective bargaining agreement that requires an applicant for a position that is subject to the collective bargaining agreement to sign a contract that protects either or both of the following as specified in subparagraphs (A) and (B), nor shall this subdivision be construed to invalidate any employer requirement of an applicant for a position that is not subject to a collective bargaining agreement to sign an employment contract that protects either or both of the following:

(A) An employer against any conduct that is actually in direct conflict with the essential enterprise-related interests of the employer and where breach of that contract would actually constitute a material and substantial disruption of the employer's operation.

(B) A firefighter against any disease that is presumed to arise in the course and scope of employment, by limiting their consumption of tobacco products on and off the job.

(d) The provisions of this section creating new actions or remedies that are effective on January 1, 2002, to employees or applicants for employment do not apply to any state or local law enforcement agency, any religious association or corporation specified in subdivision (d) of Section 12926 of the Government Code, except as provided in Section 12926.2 of the Government Code, or any person described in Section 1070 of the Evidence Code.

(e) An employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any conduct delineated in this chapter.

(f) For purposes of this section, "employer" or "a person acting on behalf of the employer" includes, but is not limited to, a client employer as defined in paragraph

41

(1) of subdivision (a) of Section 2810.3 and an employer listed in subdivision (b) of Section 6400.

(g) Subdivisions (e) and (f) shall not apply to claims arising under subdivision (k) of Section 96 unless the lawful conduct occurring during nonwork hours away from the employer's premises involves the exercise of employee rights otherwise covered under subdivision (a).

*(Amended by Stats. 2023, Ch. 612, Sec. 1. (SB 497) Effective January 1, 2024.)*

# CALIFORNIA LABOR CODE 98.7.

(a) (1) Any person who believes that they have been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within one year after the occurrence of the violation. The one-year period may be extended for good cause. The complaint shall be investigated by a discrimination complaint investigator in accordance with this section. The Labor Commissioner shall establish procedures for the investigation of discrimination complaints, including, but not limited to, relief pursuant to paragraph (2) of subdivision (b). A summary of the procedures shall be provided to each complainant and respondent at the time of initial contact. The Labor Commissioner shall inform complainants charging a violation of Section 6310 or 6311, at the time of initial contact, of the complainant's right to file a separate, concurrent complaint with the United States Department of Labor within 30 days after the occurrence of the violation.

(2) The division may, with or without receiving a complaint, commence investigating an employer, in accordance with this section, that it suspects to have discharged or otherwise discriminated against an individual in violation of any law under the jurisdiction of the Labor Commissioner. The division may proceed without a complaint in those instances where suspected retaliation has occurred during the course of adjudicating a wage claim pursuant to Section 98, or during a field inspection pursuant to Section 90.5, in accordance with this section, or in instances of suspected immigration-related threats in violation of Section 244, 1019, or 1019.1.

(b) (1) Each complaint of unlawful discharge or discrimination shall be assigned to a

discrimination complaint investigator who shall prepare and submit a report to the Labor Commissioner based on an investigation of the complaint. The Labor Commissioner or the commissioner's designee shall receive and review the reports. The investigation shall include, where appropriate, interviews with the complainant, respondent, and any witnesses who may have information concerning the alleged violation, and a review of any documents that may be relevant to the disposition of the complaint. The identity of a witness shall remain confidential unless the identification of the witness becomes necessary to proceed with the investigation or to prosecute an action to enforce a determination. The investigation report submitted to the Labor Commissioner or designee shall include the statements and documents obtained in the investigation, and the findings of the investigator concerning whether a violation occurred. The Labor Commissioner may hold an investigative hearing whenever the Labor Commissioner determines that a hearing is necessary to fully establish the facts. In the hearing the complainant and respondent shall have the opportunity to present evidence. The Labor Commissioner shall issue, serve, and enforce any necessary subpoenas. If a complainant files an action in court against an employer based on the same or similar facts as a complaint made under this section, the Labor Commissioner may, at the commissioner's discretion, close the investigation. If a complainant has already challenged the complainant's discipline or discharge through the State Personnel Board, or other internal governmental procedure, or through a collective bargaining agreement grievance procedure that incorporates antiretaliation provisions under this code, the Labor Commissioner may reject the complaint.

(2) (A) The Labor Commissioner, during the course of an investigation pursuant to this section, upon finding reasonable cause to believe that any person has engaged in or is engaging in a violation, may petition the superior court in any county in which the violation in question is alleged to have occurred or in which the person resides or transacts business, for appropriate temporary or preliminary injunctive relief, or both temporary and preliminary injunctive relief.

(B) Upon filing of a petition pursuant to this paragraph, the Labor Commissioner shall cause notice of the petition to be served on the person, and the court shall have jurisdiction to grant temporary injunctive relief as the court determines to be just and proper.

(C) In addition to any harm resulting directly to an individual from a violation of any law under the jurisdiction of the Labor Commissioner, the court shall consider the

43

chilling effect on other employees asserting their rights under those laws in determining if temporary injunctive relief is just and proper.

(D) If an employee has been discharged or faced adverse action for raising a claim of retaliation for asserting rights under any law under the jurisdiction of the Labor Commissioner, a court shall order appropriate injunctive relief on a showing that reasonable cause exists to believe that an employee has been discharged or subjected to adverse action for raising a claim of retaliation or asserting rights under any law under the jurisdiction of the Labor Commissioner.

(E) The temporary injunctive relief shall remain in effect until the Labor Commissioner issues a determination or citations, or until the completion of review pursuant to subdivision (b) of Section 98.74, whichever period is longer, or at a time certain set by the court. Afterwards, the court may issue a preliminary or permanent injunction if it is shown to be just and proper. Any temporary injunctive relief shall not prohibit an employer from disciplining or terminating an employee for conduct that is unrelated to the claim of the retaliation.

(F) Notwithstanding Section 916 of the Code of Civil Procedure, injunctive relief granted pursuant to this section shall not be stayed pending appeal.

(c) (1) If the Labor Commissioner determines a violation has occurred, the Labor Commissioner may issue a determination in accordance with this section or issue a citation in accordance with Section 98.74. If the Labor Commissioner issues a determination, the commissioner shall notify the complainant and respondent and direct the respondent to cease and desist from any violation and take any action deemed necessary to remedy the violation, including, where appropriate, rehiring or reinstatement, reimbursement of lost wages and interest thereon, payment of penalties, payment of reasonable attorney's fees associated with any hearing held by the Labor Commissioner in investigating the complaint, and the posting of notices to employees. If the respondent does not comply with the order within 30 days following notification of the Labor Commissioner's determination, the Labor Commissioner shall bring an action promptly in an appropriate court against the respondent. An action by the Labor Commissioner seeking injunctive relief, reimbursement of lost wages and interest thereon, payment of penalties, and any other appropriate relief, shall not accrue until a respondent fails to comply with the order for more than 30 days following notification of the commissioner's determination. The Labor Commissioner shall commence an action within three

44

years of its accrual, regardless of whether the commissioner seeks penalties in the action. If the Labor Commissioner fails to bring an action in court promptly, the complainant may bring an action against the Labor Commissioner in any appropriate court for a writ of mandate to compel the Labor Commissioner to bring an action in court against the respondent. If the complainant prevails in their action for a writ, the court shall award the complainant court costs and reasonable attorney's fees, notwithstanding any other law. Regardless of any delay in bringing an action in court, the Labor Commissioner shall not be divested of jurisdiction. In any action, the court may permit the claimant to intervene as a party plaintiff to the action and shall have jurisdiction, for cause shown, to restrain the violation and to order all appropriate relief. Appropriate relief includes, but is not limited to, rehiring or reinstatement of the complainant, reimbursement of lost wages and interest thereon, and any other compensation or equitable relief as is appropriate under the circumstances of the case. The Labor Commissioner shall petition the court for appropriate temporary relief or a restraining order unless the commissioner determines good cause exists for not doing so.

(2) If the Labor Commissioner is a prevailing party in an enforcement action pursuant to this section, the court shall determine the reasonable attorney's fees incurred by the Labor Commissioner in prosecuting the enforcement action and assess that amount as a cost upon the employer.

(3) An employer who willfully refuses to comply with an order of a court pursuant to this section to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for such relief, or who refuses to comply with an order to post a notice to employees or otherwise cease and desist from the violation shall, in addition to any other penalties available, be subject to a penalty of one hundred dollars ($100) per day for each day the employer continues to be in noncompliance with the court order, up to a maximum of twenty thousand dollars ($20,000). Any penalty pursuant to this section shall be paid to the affected employee.

(d) (1) If the Labor Commissioner determines no violation has occurred, the commissioner shall notify the complainant and respondent and shall dismiss the complaint. The Labor Commissioner may direct the complainant to pay reasonable attorney's fees associated with any hearing held by the Labor Commissioner if the Labor Commissioner finds the complaint was frivolous, unreasonable, groundless, and was brought in bad faith. The complainant may, after notification of the Labor

45

Commissioner's determination to dismiss a complaint, bring an action in an appropriate court, which shall have jurisdiction to determine whether a violation occurred, and if so, to restrain the violation and order all appropriate relief to remedy the violation. Appropriate relief includes, but is not limited to, rehiring or reinstatement of the complainant, reimbursement of lost wages and interest thereon, and other compensation or equitable relief as is appropriate under the circumstances of the case. When dismissing a complaint, the Labor Commissioner shall advise the complainant of their right to bring an action in an appropriate court if the complainant disagrees with the determination of the Labor Commissioner, and in the case of an alleged violation of Section 6310 or 6311, to file a complaint against the state program with the United States Department of Labor. Any time limitation for a complainant to bring an action in court shall be tolled from the time of filing the complaint with the division until the issuance of the Labor Commissioner's determination.

(2) The filing of a timely complaint against the state program with the United States Department of Labor shall stay the Labor Commissioner's dismissal of the division complaint until the United States Secretary of Labor makes a determination regarding the alleged violation. Within 15 days of receipt of that determination, the Labor Commissioner shall notify the parties whether the commissioner will reopen the complaint filed with the division or whether the dismissal will be reaffirmed.

(e) The Labor Commissioner shall notify the complainant and respondent of the commissioner's determination under subdivision (c) or paragraph (1) of subdivision (d), not later than one year after the filing of the complaint. Determinations by the Labor Commissioner under subdivision (c) or (d) shall be final and not subject to administrative appeal except for cases arising under Sections 6310 and 6311, which may be appealed by the complainant to the Director of Industrial Relations pursuant to an appeal process, including time limitations, that is consistent with the mandates of the United States Department of Labor. The appeal from a determination for cases arising under Sections 6310 and 6311 shall set forth specifically and in full detail the grounds upon which the complainant considers the Labor Commissioner's determination to be unjust or unlawful, and every issue to be considered by the director. The director may consider any issue relating to the initial determination and may modify, affirm, or reverse the Labor Commissioner's determination. The director's determination shall be the determination of the Labor Commissioner for cases arising under Sections 6310 and 6311 that are appealed to the director. The director shall notify the complainant and respondent of the director's determination

46

within 10 days of receipt of the appeal.

(f) The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other law.

(g) In the enforcement of this section, there is no requirement that an individual exhaust administrative remedies or procedures.

*(Amended by Stats. 2020, Ch. 344, Sec. 1. (AB 1947) Effective January 1, 2021.)*

## CALIFORNIA LABOR CODE §§ 230.2 – 230.5

**California Labor Code Section 230.2**

(a) As used in this section:
(1) "Immediate family member" means spouse, child, stepchild, brother, stepbrother, sister, stepsister, mother, stepmother, father, or stepfather.
(2) "Registered domestic partner" means a domestic partner, as defined in Section 297 of the Family Code, and registered pursuant to Part 2 (commencing with Section 298) of Division 2.5 of the Family Code.
(3) "Victim" means a person against whom one of the following crimes has been committed:
(A) A violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code.
(B) A serious felony, as defined in subdivision (c) of Section 1192.7 of the Penal Code.
(C) A felony provision of law proscribing theft or embezzlement.

(b) An employer, and any agent of an employer, shall allow an employee who is a victim of a crime, an immediate family member of a victim, a registered domestic partner of a victim, or the child of a registered domestic partner of a victim to be absent from work in order to attend judicial proceedings related to that crime.

(c) Before an employee may be absent from work pursuant to subdivision (b), the employee shall give the employer a copy of the notice of each scheduled proceeding that is provided to the victim by the agency responsible for providing notice, unless advance notice is not feasible. When advance notice is not feasible or an unscheduled absence occurs, the employer shall not take any action against the employee if the employee, within a reasonable time after the absence, provides the employer with

47

documentation evidencing the judicial proceeding from any of the following entities:

(1) The court or government agency setting the hearing.

(2) The district attorney or prosecuting attorney's office.

(3) The victim/witness office that is advocating on behalf of the victim.

(d) An employee who is absent from work pursuant to subdivision (b) may elect to use the employee's accrued paid vacation time, personal leave time, sick leave time, compensatory time off that is otherwise available to the employee, or unpaid leave time, unless otherwise provided by a collective bargaining agreement, for an absence pursuant to subdivision (b). The entitlement of any employee under this section shall not be diminished by any collective bargaining agreement term or condition.

(e) An employer shall keep confidential any records regarding the employee's absence from work pursuant to subdivision (b).

(f) An employer may not discharge from employment or in any manner discriminate against an employee, in compensation or other terms, conditions, or privileges of employment, including, but not limited to the loss of seniority or precedence, because the employee is absent from work pursuant to this section.

(g) (1) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated or retaliated against in the terms and conditions of employment by his or her employer because the employee has exercised his or her rights as set forth in subdivision (b) may file a complaint with the Division of Labor Standards Enforcement of the Department of Industrial Relations pursuant to Section 98.7.

(2) Notwithstanding any time limitation in Section 98.7, an employee filing a complaint with the division based upon a violation of subdivision (b) shall have one year from the date of occurrence of the violation to file his or her complaint.

(h) District attorney and victim/witness offices are encouraged to make information regarding this section available for distribution at their offices.

*(Added by Stats. 2003, Ch. 630, Sec. 1. Effective January 1, 2004.)*

## California Labor Code Section 230.3.

(a) An employer shall not discharge or in any manner discriminate against an employee for taking time off to perform emergency duty as a volunteer firefighter, a reserve peace officer, or emergency rescue personnel.

48

(b) An employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has taken time off to perform emergency duty as a volunteer firefighter, a reserve peace officer, or emergency rescue personnel shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

(c) (1) Subdivisions (a) and (b) of this section shall not apply to any public safety agency or provider of emergency medical services if, as determined by the employer, the employee's absence would hinder the availability of public safety or emergency medical services.

(2) An employee who is a health care provider shall notify his or her employer at the time the employee becomes designated as emergency rescue personnel and when the employee is notified that he or she will be deployed as a result of that designation.

(d) (1) For purposes of this section, "volunteer firefighter" shall have the same meaning as the term "volunteer" in Section 50952 of the Government Code.

(2) For purposes of this section, "emergency rescue personnel" means any person who is an officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, or of a sheriff's department, police department, or a private fire department, or of a disaster medical response entity sponsored or requested by this state, whether that person is a volunteer or partly paid or fully paid, while he or she is actually engaged in providing emergency services as defined by Section 1799.107 of the Health and Safety Code.

(3) For purposes of this section, "health care provider" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act.

(Amended by Stats. 2014, Ch. 343, Sec. 1. (AB 2536) Effective January 1, 2015.)

49

**California Labor Code Section 230.4.**

(a) An employee who performs duty as a volunteer firefighter, a reserve peace officer, or as emergency rescue personnel, as defined in Section 230.3, and who works for an employer employing 50 or more employees, shall be permitted to take temporary leaves of absence, not to exceed an aggregate of 14 days per calendar year, for the purpose of engaging in fire, law enforcement, or emergency rescue training.

(b) An employee who works for an employer employing 50 or more employees who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has taken time off to engage in fire, law enforcement, or emergency rescue training as provided in subdivision (a), is entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

(c) An employee seeking reinstatement and reimbursement pursuant to this section may file a complaint with the Division of Labor Standards Enforcement in accordance with Section 98.7 and, upon receipt of this type of complaint, the Labor Commissioner shall proceed as provided in that section.

(Amended by Stats. 2014, Ch. 71, Sec. 108. (SB 1304) Effective January 1, 2015.)

**California Labor Code Section 230.5.**

(a) (1) An employer shall not discharge or in any manner discriminate or retaliate against an employee who is a victim of an offense listed in paragraph (2) for taking time off from work, upon the victim's request, to appear in court to be heard at any proceeding, including any delinquency proceeding, involving a postarrest release decision, plea, sentencing, postconviction release decision, or any proceeding in which a right of the victim is at issue.

(2) The offenses include all of the following:

(A) Vehicular manslaughter while intoxicated, as defined in subdivision (b) of Section 191.5 of the Penal Code.

(B) Felony child abuse likely to produce great bodily harm or a death, as defined in Section 273a of the Penal Code.

50

(C) Assault resulting in the death of a child under eight years of age, as defined in Section 273ab of the Penal Code.

(D) Felony domestic violence, as defined in Section 273.5 of the Penal Code.

(E) Felony physical abuse of an elder or dependent adult, as defined in subdivision (b) of Section 368 of the Penal Code.

(F) Felony stalking, as defined in Section 646.9 of the Penal Code.

(G) Solicitation for murder, as defined in subdivision (b) of Section 653f of the Penal Code.

(H) A serious felony, as defined in subdivision (c) of Section 1192.7 of the Penal Code.

(I) Hit-and-run causing death or injury, as defined in Section 20001 of the Vehicle Code.

(J) Felony driving under the influence causing injury, as defined in Section 23153 of the Vehicle Code.

(K) Sexual assault as set forth in Section 261, 261.5, 262, 265, 266, 266a, 266b, 266c, 266g, 266j, 267, 269, 273.4, 285, 286, 287, 288, 288.5, 289, or 311.4 of, or former Section 288a of, the Penal Code.

(b) (1) As a condition of taking time off for a purpose set forth in subdivision (a), the employee shall give the employer reasonable advance notice of the employee's intention to take time off, unless the advance notice is not feasible.
(2) When an unscheduled absence occurs, the employer shall not take any action against the employee if the employee, within a reasonable time after the absence, provides a certification to the employer. Certification shall be sufficient in the form of any of the following:

(A) A police report indicating that the employee was a victim of an offense specified in subdivision (a).

(B) A court order protecting or separating the employee from the perpetrator of an

51

offense specified in subdivision (a), or other evidence from the court or prosecuting attorney that the employee has appeared in court.

(C) Documentation from a medical professional, domestic violence advocate or advocate for victims of sexual assault, health care provider, or counselor that the employee was undergoing treatment for physical or mental injuries or abuse resulting in victimization from an offense specified in subdivision (a).

(3) To the extent allowed by law, the employer shall maintain the confidentiality of any employee requesting leave under subdivision (a).

(c) An employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated or retaliated against in the terms and conditions of employment by his or her employer because the employee has taken time off for a purpose set forth in subdivision (a) shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure or hearing authorized by law is guilty of a misdemeanor.

(d) (1) An employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated or retaliated against in the terms and conditions of employment by his or her employer because the employee has exercised his or her rights as set forth in subdivision (a) may file a complaint with the Division of Labor Standards Enforcement of the Department of Industrial Relations pursuant to Section 98.7.

(2) Notwithstanding any time limitation in Section 98.7, an employee may file a complaint with the division based upon a violation of subdivision (a) within one year from the date of occurrence of the violation.

(e) An employee may use vacation, personal leave, or compensatory time off that is otherwise available to the employee under the applicable terms of employment, unless otherwise provided by a collective bargaining agreement, for time taken off for a purpose specified in this section. The entitlement of any employee under this section shall not be diminished by any collective bargaining agreement term or condition.

(f) For purposes of this section, "victim" means any person who suffers direct or

threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act. The term "victim" also includes the person's spouse, parent, child, sibling, or guardian.

(Amended by Stats. 2018, Ch. 423, Sec. 40. (SB 1494) Effective January 1, 2019.)

## CALIFORNIA LABOR CODE § 232

No employer may do any of the following:

(a) Require, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages.

(b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose the amount of his or her wages.

(c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses the amount of his or her wages.

*(Amended by Stats. 2002, Ch. 934, Sec. 1. Effective January 1, 2003.)*

## CALIFORNIA LABOR CODE § 232.5

No employer may do any of the following:

(a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions.

(b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions.

(c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions.

(d) This section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer.

*(Added by Stats. 2002, Ch. 934, Sec. 2. Effective January 1, 2003.)*

## California Labor Code §§ 1101-1102

1101. No employer shall make, adopt, or enforce any rule, regulation, or policy:
(a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.
(b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees.
*(Enacted by Stats. 1937, Ch. 90.)*

1102. No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.
*(Enacted by Stats. 1937, Ch. 90.)*

## California Labor Code §§ 1102.5 – 1105

1102.5 (a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that

54

the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

(d) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised their rights under subdivision (a), (b), or (c) in any former employment.

(e) A report made by an employee of a government agency to their employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

(f) (1) In addition to other remedies available, an employer is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section to be awarded to the employee who was retaliated against.

(2) In assessing this penalty, the Labor Commissioner shall consider the nature and seriousness of the violation based on the evidence obtained during the course of the investigation. The Labor Commissioner's consideration of the nature and seriousness of the violation shall include, but is not limited to, the type of violation, the economic or mental harm suffered, and the chilling effect on the exercise of employment rights in the workplace, and shall be considered to the extent evidence obtained during the investigation concerned any of these or other relevant factors.

(g) This section does not apply to rules, regulations, or policies that implement, or to actions by employers against employees who violate, the confidentiality of the lawyer-client privilege of Article 3 (commencing with Section 950) of, or the physician-patient privilege of Article 6 (commencing with Section 990) of, Chapter

4 of Division 8 of the Evidence Code, or trade secret information.

(h) An employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any acts protected by this section.

(i) For purposes of this section, "employer" or "a person acting on behalf of the employer" includes, but is not limited to, a client employer as defined in paragraph (1) of subdivision (a) of Section 2810.3 and an employer listed in subdivision (b) of Section 6400.

(j) The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions.

*(Amended by Stats. 2023, Ch. 612, Sec. 2. (SB 497) Effective January 1, 2024.)*

1102.6  In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.
(Added by Stats. 2003, Ch. 484, Sec. 3. Effective January 1, 2004.)

1102.61.  In any civil action or administrative proceeding brought pursuant to Section 1102.5, an employee may petition the superior court in any county wherein the violation in question is alleged to have occurred, or wherein the person resides or transacts business, for appropriate temporary or preliminary injunctive relief as set forth in Section 1102.62.
(Added by Stats. 2017, Ch. 460, Sec. 3. (SB 306) Effective January 1, 2018.)

1102.62.  (a) Upon the filing of the petition for injunctive relief, the petitioner shall cause notice thereof to be served upon the person, and thereupon the court shall have jurisdiction to grant such temporary injunctive relief as the court deems just and proper.
(b) In addition to any harm resulting directly from the violation of Section 1102.5, the

56

court shall consider the chilling effect on other employees asserting their rights under that section in determining whether temporary injunctive relief is just and proper.

(c) Appropriate injunctive relief shall be issued on a showing that reasonable cause exists to believe a violation has occurred.

(d) The order authorizing temporary injunctive relief shall remain in effect until an administrative or judicial determination or citation has been issued or until the completion of a review pursuant to subdivision (b) of Section 98.74, whichever is longer, or at a time certain set by the court. Thereafter, a preliminary or permanent injunction may be issued if it is shown to be just and proper. Any temporary injunctive relief shall not prohibit an employer from disciplining or terminating an employee for conduct that is unrelated to the claim of the retaliation.

(e) Notwithstanding Section 916 of the Code of Civil Procedure, injunctive relief granted pursuant to this section shall not be stayed pending appeal.

*(Added by Stats. 2017, Ch. 460, Sec. 4. (SB 306) Effective January 1, 2018.*

1102.7  (a) The office of the Attorney General shall maintain a whistleblower hotline to receive calls from persons who have information regarding possible violations of state or federal statutes, rules, or regulations, or violations of fiduciary responsibility by a corporation or limited liability company to its shareholders, investors, or employees.

(b) The Attorney General shall refer calls received on the whistleblower hotline to the appropriate government authority for review and possible investigation.

(c) During the initial review of a call received pursuant to subdivision (a), the Attorney General or appropriate government agency shall hold in confidence information disclosed through the whistleblower hotline, including the identity of the caller disclosing the information and the employer identified by the caller.

(d) A call made to the whistleblower hotline pursuant to subdivision (a) or its referral to an appropriate agency under subdivision (b) may not be the sole basis for a time period under a statute of limitation to commence. This section does not change existing law relating to statutes of limitation.

*(Added by Stats. 2003, Ch. 484, Sec. 4. Effective January 1, 2004.)*

1102.8.  (a) An employer shall prominently display in lettering larger than size 14 point type a list of employees' rights and responsibilities under the whistleblower laws, including the telephone number of the whistleblower hotline described in Section 1102.7.

(b) An employer shall be deemed in compliance with the posting requirement set forth in subdivision (a) if the employer posts the model list described in Section 98.11.

(c) A state agency required to post a notice pursuant to Section 8548.2 of the Government Code or subdivision (b) of Section 6128 of the Penal Code shall be deemed in compliance with the posting requirement set forth in subdivision (a) if the notice posted pursuant to Section 8548.2 of the Government Code or subdivision (b) of Section 6128 of the Penal Code also contains the whistleblower hotline number described in Section 1102.7.
*(Amended by Stats. 2024, Ch. 105, Sec. 2. (AB 2299) Effective January 1, 2025.)*

1103. An employer or any other person or entity that violates this chapter is guilty of a misdemeanor punishable, in the case of an individual, by imprisonment in the county jail not to exceed one year or a fine not to exceed one thousand dollars ($1,000) or both that fine and imprisonment, or, in the case of a corporation, by a fine not to exceed five thousand dollars ($5,000).
*(Amended by Stats. 2013, Ch. 732, Sec. 7. (AB 263) Effective January 1, 2014.)*

1104. In all prosecutions under this chapter, the employer is responsible for the acts of his managers, officers, agents, and employees.
*(Enacted by Stats. 1937, Ch. 90.)*

1105. Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter.
*(Enacted by Stats. 1937, Ch. 90.)*

# California Labor Code § 6310

(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following:

(1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative.

(2) Instituted or caused to be instituted any proceeding under or relating to their rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of themselves, or others of any rights afforded to them.

(3) Participated in an occupational health and safety committee established pursuant to Section 6401.7.

(4) Reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. Sec. 651 et seq.), except in cases where the employee alleges they have been retaliated against because they have filed or made known their intention to file a workers' compensation claim pursuant to Section 132a, which is under the exclusive jurisdiction of the Workers' Compensation Appeals Board.

(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by their employer because the employee has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative, of unsafe working conditions, or work practices, in their employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

(c) An employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any acts protected by this section.

(d) For purposes of this section, "employer" or "a person acting on behalf of the employer" includes, but is not limited to, a client employer as defined in paragraph (1) of subdivision (a) of Section 2810.3 and an employer listed in subdivision (b) of Section 6400.

(e) Notwithstanding Section 6303 or other law, as used in this section, "employee" includes a domestic work employee, except for a person who performs household domestic service that is publicly funded, including publicly funded household domestic service provided to a recipient, client, or beneficiary with a share of cost in

59

that service.

*(Amended by Stats. 2020, Ch. 288, Sec. 1. (AB 2658) Effective January 1, 2021.)*

# CALIFORNIA LABOR CODE §§ 6361, 6399.7., HAZARDOUS SUBSTANCES INFORMATION AND TRAINING ACT

**CA Labor Code § 6361**

(a) The Legislature finds and declares the following:

(1) Hazardous substances in the workplace in some forms and concentrations pose potential acute and chronic health hazards to employees who are exposed to these substances.

(2) Employers and employees have a right and a need to know the properties and potential hazards of substances to which they may be exposed, and such knowledge is essential to reducing the incidence and cost of occupational disease.

(3) Employers do not always have available adequate data on the contents and properties of specific hazardous substances necessary for the provision of a safe and healthful workplace and the provision of information and training to employees as is the responsibility of the employer under existing law.

(4) Many effective employee information and training programs now exist, and with the increased availability of basic information and with the extension of such programs to all affected employees, preventable health risks in the workplace would be further reduced.

(b) The Legislature, therefore, intends by this chapter to ensure the transmission of necessary information to employees regarding the properties and potential hazards of hazardous substances in the workplace.

*(Added by Stats. 1980, Ch. 874.)*

**CA Labor Code § 6399.7**

No person shall discharge or in any manner discriminate against, any employee because such employee has filed any complaint or has instituted, or caused to be instituted, any proceeding under or related to the provisions of this chapter, or has testified, or is about to testify, in any such proceeding, or because of the exercise of any right afforded pursuant to the provisions of this chapter on such employee's behalf or on behalf of others, nor shall any pay, seniority, or other benefits be lost for exercise of any such right. A violation of the provisions of this section shall be a violation of the provisions of Section 6310. Notwithstanding Section 6303 or other law, as used in this section, "employee" includes a domestic work employee, except for a person who performs household domestic service that is publicly funded, including publicly funded household domestic service provided to a recipient, client, or beneficiary with a share of cost in that service.

*(Amended by Stats. 2020, Ch. 288, Sec. 4. (AB 2658) Effective January 1, 2021.)*

## CLEAN AIR ACT (CAA) 42 U.S.C. §7622 EMPLOYEE PROTECTION.

(a) Discharge or discrimination prohibited. No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)-
(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this Act or a proceeding for the administration or enforcement of any requirement imposed under this Act or under any applicable implementation plan,
(2) testified or is about to testify in any such proceeding, or
(3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this Act.

(b) Complaint charging unlawful discharge or discrimination; investigation; order.
(1) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, within thirty days after such violation occurs, file (or have any person file on his behalf a complaint with the Secretary of Labor (hereinafter in this subsection referred to as the

"Secretary") alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary shall notify the person named in the complaint of the filing of the complaint. (2)

(A) Upon receipt of a complaint filed under paragraph (1), the Secretary shall conduct an investigation of the violation alleged in the complaint. Within thirty days of the receipt of such complaint, the Secretary shall complete such investigation and shall notify in writing the complainant (and any person acting in his behalf) and the person alleged to have committed such violation of the results of the investigation conducted pursuant to this subparagraph. Within ninety days of the receipt of such complaint the Secretary shall, unless the proceeding on the complaint is terminated by the Secretary on the basis of a settlement entered into by the Secretary and the person alleged to have committed such violation, issue an order either providing the relief prescribed by subparagraph (B) or denying the complaint. An order of the Secretary shall be made on the record after notice and opportunity for public hearing. The Secretary may not enter into a settlement terminating a proceeding on a complaint without the participation and consent of the complainant.

(B) If, in response to a complaint filed under paragraph (1), the Secretary determines that a violation of subsection (a) has occurred, the Secretary shall order the person who committed such violation to

(i) take affirmative action to abate the violation, and

(ii) reinstate the complainant to his former position together with the compensation (including back pay), terms, conditions, and privileges of his employment, and the Secretary may order such person to provide compensatory damages to the complainant. If an order is issued under this paragraph, the Secretary, at the request of the complainant, shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary, by the complainant for, or in connection with, the bringing of the complaint upon which the order was issued.

(c) Review.

(1) Any person adversely affected or aggrieved by an order issued under subsection (b) may obtain review of the order in the United States court of appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred. The petition for review must be filed within sixty days from the issuance of the Secretary's order. Review shall conform to chapter 7 of title 5 of the United States Code [5 USCS §701 et seq.]. The commencement of proceedings under this subparagraph shall not, unless ordered by the court, operate as a stay of the

Secretary′s order.

(2) An order of the Secretary with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in any criminal or other civil proceeding.

(d) Enforcement of order by Secretary. Whenever a person has failed to comply with an order issued under subsection (b)(2), the Secretary may file a civil action in the United States district court for the district in which the violation was found to occur to enforce such order. In actions brought under this subsection, the district courts shall have jurisdiction to grant all appropriate relief including, but not limited to, injunctive relief, compensatory, and exemplary damages.

(e) Enforcement of order by person on whose behalf order was issued.

(1) Any person on whose behalf an order was issued under paragraph (2) of subsection (b) may commence a civil action against the person to whom such order was issued to require compliance with such order. The appropriate United States district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such order.

(2) The court, in issuing any final order under this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines such award is appropriate.

(f) Mandamus. Any nondiscretionary duty imposed by this section shall be enforceable in a mandamus proceeding brought under section 1361 of title 28 of the United States Code.

(g) Deliberate violation by employee. Subsection (a) shall not apply with respect to any employee who, acting without direction from his employer (or the employer′s agent), deliberately causes a violation of any requirement of this Act.

## CAL AIR CODE BAAQMD (ADD)

# 42 U.S. CODE § 9610 – (CERCLA) EMPLOYEE PROTECTION

## 42 U.S. Code § 9610 - Employee protection

(a)Activities of employee subject to protection

No person shall fire or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has provided information to a State or to the Federal Government, filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

(b)Administrative grievance procedure in cases of alleged violations

Any employee or a representative of employees who believes that he has been fired or otherwise discriminated against by any person in violation of subsection (a) of this section may, within thirty days after such alleged violation occurs, apply to the Secretary of Labor for a review of such firing or alleged discrimination. A copy of the application shall be sent to such person, who shall be the respondent. Upon receipt of such application, the Secretary of Labor shall cause such investigation to be made as he deems appropriate. Such investigation shall provide an opportunity for a public hearing at the request of any party to such review to enable the parties to present information relating to such alleged violation. The parties shall be given written notice of the time and place of the hearing at least five days prior to the hearing. Any such hearing shall be of record and shall be subject to section 554 of title 5. Upon receiving the report of such investigation, the Secretary of Labor shall make findings of fact. If he finds that such violation did occur, he shall issue a decision, incorporating an order therein and his findings, requiring the party committing such violation to take such affirmative action to abate the violation as the Secretary of Labor deems appropriate, including, but not limited to, the rehiring or reinstatement of the employee or representative of employees to his former position with compensation. If he finds that there was no such violation, he shall issue an order denying the application. Such order issued by the Secretary of Labor under this subparagraph shall be subject to judicial review in the same manner as orders and decisions are subject to judicial review under this chapter.

(c)Assessment of costs and expenses against violator subsequent to issuance of order of abatement

64

Whenever an order is issued under this section to abate such violation, at the request of the applicant a sum equal to the aggregate amount of all costs and expenses (including the attorney's fees) determined by the Secretary of Labor to have been reasonably incurred by the applicant for, or in connection with, the institution and prosecution of such proceedings, shall be assessed against the person committing such violation.

(d)Defenses

This section shall have no application to any employee who acting without discretion from his employer (or his agent) deliberately violates any requirement of this chapter.

(e)Presidential evaluations of potential loss of shifts of employment resulting from administration or enforcement of provisions; investigations; procedures applicable, etc.

The President shall conduct continuing evaluations of potential loss of shifts of employment which may result from the administration or enforcement of the provisions of this chapter, including, where appropriate, investigating threatened plant closures or reductions in employment allegedly resulting from such administration or enforcement. Any employee who is discharged, or laid off, threatened with discharge or layoff, or otherwise discriminated against by any person because of the alleged results of such administration or enforcement, or any representative of such employee, may request the President to conduct a full investigation of the matter and, at the request of any party, shall hold public hearings, require the parties, including the employer involved, to present information relating to the actual or potential effect of such administration or enforcement on employment and any alleged discharge, layoff, or other discrimination, and the detailed reasons or justification therefore.[1] Any such hearing shall be of record and shall be subject to section 554 of title 5. Upon receiving the report of such investigation, the President shall make findings of fact as to the effect of such administration or enforcement on employment and on the alleged discharge, layoff, or discrimination and shall make such recommendations as he deems appropriate. Such report, findings, and recommendations shall be available to the public. Nothing in this subsection shall be construed to require or authorize the President or any State to modify or withdraw any action, standard, limitation, or any other requirement of this chapter.

*(Pub. L. 96–510, title I, § 110, Dec. 11, 1980, 94 Stat. 2787.)*

# 29 CFR § 24.112 - Judicial review (U.S. DOL/CERCLA)

### § 24.112 Judicial review.

(a) Except as provided under paragraphs (b) through (d) of this section, within 60 days after the issuance of a final order (including a decision issued by the Secretary upon his or her discretionary review) for which judicial review is available, any person adversely affected or aggrieved by the order may file a petition for review of the order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation. A final order of the ARB (or a decision issued by the Secretary upon his or her discretionary review) is not subject to judicial review in any criminal or other civil proceeding.

(b) Under the Federal Water Pollution Control Act, within 120 days after the issuance of a final order (including a decision issued by the Secretary upon his or her discretionary review) for which judicial review is available, any person adversely affected or aggrieved by the order may file a petition for review of the order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation.

(c) Under the Solid Waste Disposal Act, within 90 days after the issuance of a final order (including a decision issued by the Secretary upon his or her discretionary review) for which judicial review is available, any person adversely affected or aggrieved by the order may file a petition for review of the order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation.

(d) Under the Comprehensive Environmental Response, Compensation and Liability Act, after the issuance of a final order (including a decision issued by the Secretary upon his or her discretionary review) for which judicial review is available, any person adversely affected or aggrieved by the order may file a petition for review of the order in the United States district court in which the violation allegedly occurred. For purposes of judicial economy and consistency, when a final order

under the Comprehensive Environmental Response, Compensation and Liability Act also is issued under any other statute listed in § 24.100(a), the adversely affected or aggrieved person may file a petition for review of the entire order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation. The time for filing a petition for review of an order issued under the Comprehensive Environmental Response, Compensation and Liability Act and any other statute listed in § 24.100(a) is determined by the time period applicable under the other statute(s).

(e) If a timely petition for review is filed, the record of a case, including the record of proceedings before the administrative law judge, will be transmitted by the ARB or the ALJ, as appropriate, to the appropriate court pursuant to the Federal Rules of Appellate Procedure and the local rules of the court.

*[85 FR 30618, May 20, 2020]*

## 42 U.S. Code § 9613 – (CERCLA) Civil Proceedings

(a) Review of regulations in Circuit Court of Appeals of the United States for the District of Columbia

Review of any regulation promulgated under this chapter may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia. Any such application shall be made within ninety days from the date of promulgation of such regulations. Any matter with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or to obtain damages or recovery of response costs.

(b) Jurisdiction; venue

Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy. Venue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principal office. For the purposes of this section, the Fund shall reside in the District of Columbia.

(c)Controversies or other matters resulting from tax collection or tax regulation review

The provisions of subsections (a) and (b) of this section shall not apply to any controversy or other matter resulting from the assessment of collection of any tax, as provided by subchapter II [1] of this chapter, or to the review of any regulation promulgated under title 26.

....

(h)Timing of review

No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1)An action under section 9607 of this title to recover response costs or damages or for contribution.

(2)An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3)An action for reimbursement under section 9606(b)(2) of this title.

(4)An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5)An action under section 9606 of this title in which the United States has moved to compel a remedial action.

## 18 U.S. CODE § 1961 – (RICO) DEFINITIONS

(1)"racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by

68

imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 932 (relating to straw purchasing), section 933 (relating to trafficking in firearms), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or

69

packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic),[2] sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

(2) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof;

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of

70

which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

(6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

(7) "racketeering investigator" means any attorney or investigator so designated by the Attorney General and charged with the duty of enforcing or carrying into effect this chapter;

(8) "racketeering investigation" means any inquiry conducted by any racketeering investigator for the purpose of ascertaining whether any person has been involved in any violation of this chapter or of any final order, judgment, or decree of any court of the United States, duly entered in any case or proceeding arising under this chapter;

(9) "documentary material" includes any book, paper, document, record, recording, or other material; and

(10) "Attorney General" includes the Attorney General of the United States, the Deputy Attorney General of the United States, the Associate Attorney General of the United States, any Assistant Attorney General of the United States, or any employee of the Department of Justice or any employee of any department or agency of the United States so designated by the Attorney General to carry out the powers conferred on the Attorney General by this chapter. Any department or agency so designated may use in investigations authorized by this chapter either the investigative provisions of this chapter or the investigative power of such department or agency otherwise conferred by law.

*(Added Pub. L. 91–452, title IX, § 901(a), Oct. 15, 1970, 84 Stat. 941; amended Pub. L. 95–575, § 3(c), Nov. 2, 1978, 92 Stat. 2465; Pub. L. 95–598, title III, § 314(g), Nov. 6, 1978, 92 Stat. 2677; Pub. L. 98–473, title II, §§ 901(g), 1020, Oct. 12, 1984, 98 Stat. 2136, 2143; Pub. L. 98–547, title II, § 205, Oct. 25, 1984, 98 Stat. 2770; Pub. L. 99–570,*

*title I, § 1365(b), Oct. 27, 1986, 100 Stat. 3207–35; Pub. L. 99–646, § 50(a), Nov. 10, 1986, 100 Stat. 3605; Pub. L. 100–690, title VII, §§ 7013, 7020(c), 7032, 7054, 7514, Nov. 18, 1988, 102 Stat. 4395, 4396, 4398, 4402, 4489; Pub. L. 101–73, title IX, § 968, Aug. 9, 1989, 103 Stat. 506; Pub. L. 101–647, title XXXV, § 3560, Nov. 29, 1990, 104 Stat. 4927; Pub. L. 103–322, title IX, § 90104, title XVI, § 160001(f), title XXXIII, § 330021(1), Sept. 13, 1994, 108 Stat. 1987, 2037, 2150; Pub. L. 103–394, title III, § 312(b), Oct. 22, 1994, 108 Stat. 4140; Pub. L. 104–132, title IV, § 433, Apr. 24, 1996, 110 Stat. 1274; Pub. L. 104–153, § 3, July 2, 1996, 110 Stat. 1386; Pub. L. 104–208, div. C, title II, § 202, Sept. 30, 1996, 110 Stat. 3009–565; Pub. L. 104–294, title VI, §§ 601(b)(3), (i)(3), 604(b)(6), Oct. 11, 1996, 110 Stat. 3499, 3501, 3506; Pub. L. 107–56, title VIII, § 813, Oct. 26, 2001, 115 Stat. 382; Pub. L. 107–273, div. B, title IV, § 4005(f)(1), Nov. 2, 2002, 116 Stat. 1813; Pub. L. 108–193, § 5(b), Dec. 19, 2003, 117 Stat. 2879; Pub. L. 108–458, title VI, § 6802(e), Dec. 17, 2004, 118 Stat. 3767; Pub. L. 109–164, title I, § 103(c), Jan. 10, 2006, 119 Stat. 3563; Pub. L. 109–177, title IV, § 403(a), Mar. 9, 2006, 120 Stat. 243; Pub. L. 113–4, title XII, § 1211(a), Mar. 7, 2013, 127 Stat. 142; Pub. L. 114–153, § 3(b), May 11, 2016, 130 Stat. 382; Pub. L. 117–159, div. A, title II, § 12004(a)(3), June 25, 2022, 136 Stat. 1328.)*

## 18 U.S. Code § 1962 – (RICO) Prohibited Activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b)It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c)It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d)It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

*(Added Pub. L. 91–452, title IX, § 901(a), Oct. 15, 1970, 84 Stat. 942; amended Pub. L. 100–690, title VII, § 7033, Nov. 18, 1988, 102 Stat. 4398.)*

## 18 U.S. Code § 1964 – (RICO) Civil Remedies

(a)The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b)The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c)Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection

with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

(d)A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

*(Added Pub. L. 91–452, title IX, § 901(a), Oct. 15, 1970, 84 Stat. 943; amended Pub. L. 98–620, title IV, § 402(24)(A), Nov. 8, 1984, 98 Stat. 3359; Pub. L. 104–67, title I, § 107, Dec. 22, 1995, 109 Stat. 758.)*

# 18 U.S. Code §3771 - Crime victims' rights

## 18 USC 3771: Crime victims' rights

(a) Rights of Crime Victims.-A crime victim has the following rights:

(1) The right to be reasonably protected from the accused.

(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

(3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5) The reasonable right to confer with the attorney for the Government in the case.

(6) The right to full and timely restitution as provided in law.

(7) The right to proceedings free from unreasonable delay.

(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

(9) The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement.

(10) The right to be informed of the rights under this section and the services described in section 503(c) of the Victims' Rights and Restitution Act of 1990 (42 U.S.C. 10607(c)) 1 and provided contact information for the Office of the Victims' Rights Ombudsman of the Department of Justice.

(b) Rights Afforded.-

(1) In general.-In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). Before making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding. The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

(2) Habeas corpus proceedings.-

(A) In general.-In a Federal habeas corpus proceeding arising out of a State conviction, the court shall ensure that a crime victim is afforded the rights described in paragraphs (3), (4), (7), and (8) of subsection (a).

(B) Enforcement.-

(i) In general.-These rights may be enforced by the crime victim or the crime victim's lawful representative in the manner described in paragraphs (1) and (3) of subsection (d).

(ii) Multiple victims.-In a case involving multiple victims, subsection (d)(2) shall also apply.

(C) Limitation.-This paragraph relates to the duties of a court in relation to the rights of a crime victim in Federal habeas corpus proceedings arising out of a State

75

conviction, and does not give rise to any obligation or requirement applicable to personnel of any agency of the Executive Branch of the Federal Government.

(D) Definition.-For purposes of this paragraph, the term "crime victim" means the person against whom the State offense is committed or, if that person is killed or incapacitated, that person's family member or other lawful representative.

(c) Best Efforts To Accord Rights.-

(1) Government.-Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a).

(2) Advice of attorney.-The prosecutor shall advise the crime victim that the crime victim can seek the advice of an attorney with respect to the rights described in subsection (a).

(3) Notice.-Notice of release otherwise required pursuant to this chapter shall not be given if such notice may endanger the safety of any person.

(d) Enforcement and Limitations.-

(1) Rights.-The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in subsection (a). A person accused of the crime may not obtain any form of relief under this chapter.

(2) Multiple crime victims.-In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings.

(3) Motion for relief and writ of mandamus.-The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant

may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure. The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed, unless the litigants, with the approval of the court, have stipulated to a different time period for consideration. In deciding such application, the court of appeals shall apply ordinary standards of appellate review. In no event shall proceedings be stayed or subject to a continuance of more than five days for purposes of enforcing this chapter. If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.

(4) Error.-In any appeal in a criminal case, the Government may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal relates.

(5) Limitation on relief.-In no case shall a failure to afford a right under this chapter provide grounds for a new trial. A victim may make a motion to re-open a plea or sentence only if-

(A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied;

(B) the victim petitions the court of appeals for a writ of mandamus within 14 days; and

(C) in the case of a plea, the accused has not pled to the highest offense charged.

This paragraph does not affect the victim's right to restitution as provided in title 18, United States Code.

(6) No cause of action.-Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages. Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.

(e) Definitions.-For the purposes of this chapter:

(1) Court of appeals.-The term "court of appeals" means-

(A) the United States court of appeals for the judicial district in which a defendant is being prosecuted; or

(B) for a prosecution in the Superior Court of the District of Columbia, the District of Columbia Court of Appeals.

(2) Crime victim.-

(A) In general.-The term "crime victim" means a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia.

(B) Minors and certain other victims.-In the case of a crime victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter, but in no event shall the defendant be named as such guardian or representative.

(3) District court; court.-The terms "district court" and "court" include the Superior Court of the District of Columbia.

(f) Procedures To Promote Compliance.-

(1) Regulations.-Not later than 1 year after the date of enactment of this chapter, the Attorney General of the United States shall promulgate regulations to enforce the rights of crime victims and to ensure compliance by responsible officials with the obligations described in law respecting crime victims.

(2) Contents.-The regulations promulgated under paragraph (1) shall-

(A) designate an administrative authority within the Department of Justice to receive and investigate complaints relating to the provision or violation of the rights of a crime victim;

(B) require a course of training for employees and offices of the Department of Justice that fail to comply with provisions of Federal law pertaining to the treatment of crime victims, and otherwise assist such employees and offices in responding more effectively to the needs of crime victims;

(C) contain disciplinary sanctions, including suspension or termination from employment, for employees of the Department of Justice who willfully or wantonly fail to comply with provisions of Federal law pertaining to the treatment of crime victims; and

(D) provide that the Attorney General, or the designee of the Attorney General, shall be the final arbiter of the complaint, and that there shall be no judicial review of the final decision of the Attorney General by a complainant.

*(Added Pub. L. 108–405, title I, §102(a), Oct. 30, 2004, 118 Stat. 2261 ; amended Pub. L. 109–248, title II, §212, July 27, 2006, 120 Stat. 616 ; Pub. L. 111–16, §3(12), May 7, 2009, 123 Stat. 1608 ; Pub. L. 114–22, title I, §113(a), (c)(1), May 29, 2015, 129 Stat. 240 , 241.)*

## 18 U.S. CODE § 1512 - TAMPERING WITH A WITNESS, VICTIM, OR AN INFORMANT

(a)
(1)Whoever kills or attempts to kill another person, with intent to—
(A)prevent the attendance or testimony of any person in an official proceeding;
(B)prevent the production of a record, document, or other object, in an official proceeding; or
(C)prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
shall be punished as provided in paragraph (3).

(2)Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—
(A)influence, delay, or prevent the testimony of any person in an official proceeding;
(B)cause or induce any person to—
(i)withhold testimony, or withhold a record, document, or other object, from an

official proceeding;

(ii)alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

(iii)evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv)be absent from an official proceeding to which that person has been summoned by legal process; or

(C)hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(3)The punishment for an offense under this subsection is—

(A)in the case of a killing, the punishment provided in sections 1111 and 1112;

(B)in the case of—

(i)an attempt to murder; or

(ii)the use or attempted use of physical force against any person;

imprisonment for not more than 30 years; and

(C)in the case of the threat of use of physical force against any person, imprisonment for not more than 20 years.

(b)Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1)influence, delay, or prevent the testimony of any person in an official proceeding;

(2)cause or induce any person to—

(A)withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B)alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C)evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D)be absent from an official proceeding to which such person has been summoned by legal process; or

(3)hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation [1]

supervised release,,[1] parole, or release pending judicial proceedings;
shall be fined under this title or imprisoned not more than 20 years, or both.

(c)Whoever corruptly—
(1)alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
(2)otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than 20 years, or both.

(d)Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—
(1)attending or testifying in an official proceeding;
(2)reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation 1 supervised release,,1 parole, or release pending judicial proceedings;
(3)arresting or seeking the arrest of another person in connection with a Federal offense; or
(4)causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;
or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

(e)In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

(f)For the purposes of this section—
(1)an official proceeding need not be pending or about to be instituted at the time of the offense; and
(2)the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

(g)In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance—
(1)that the official proceeding before a judge, court, magistrate judge, grand jury, or

81

government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or

(2)that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

(h)There is extraterritorial Federal jurisdiction over an offense under this section.

(i)A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

(j)If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

(k)Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

*(Added Pub. L. 97–291, § 4(a), Oct. 12, 1982, 96 Stat. 1249; amended Pub. L. 99–646, § 61, Nov. 10, 1986, 100 Stat. 3614; Pub. L. 100–690, title VII, § 7029(a), (c), Nov. 18, 1988, 102 Stat. 4397, 4398; Pub. L. 101–650, title III, § 321, Dec. 1, 1990, 104 Stat. 5117; Pub. L. 103–322, title VI, § 60018, title XXXIII, § 330016(1)(O), (U), Sept. 13, 1994, 108 Stat. 1975, 2148; Pub. L. 104–214, § 1(2), Oct. 1, 1996, 110 Stat. 3017; Pub. L. 104–294, title VI, § 604(b)(31), Oct. 11, 1996, 110 Stat. 3508; Pub. L. 107–204, title XI, § 1102, July 30, 2002, 116 Stat. 807; Pub. L. 107–273, div. B, title III, § 3001(a), (c)(1), Nov. 2, 2002, 116 Stat. 1803, 1804; Pub. L. 110–177, title II, § 205, Jan. 7, 2008, 121 Stat. 2537.)*

## 18 U.S. Code § 1513 - Retaliating against a witness, victim, or an informant

(a)

(1)Whoever kills or attempts to kill another person with intent to retaliate against any person for—

(A)the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(B)providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings, shall be punished as provided in paragraph (2).

(2)The punishment for an offense under this subsection is—

(A)in the case of a killing, the punishment provided in sections 1111 and 1112; and

(B)in the case of an attempt, imprisonment for not more than 30 years.

(b)Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—

(1)the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(2)any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

(c)If the retaliation occurred because of attendance at or testimony in a criminal case, the maximum term of imprisonment which may be imposed for the offense under this section shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

(d)There is extraterritorial Federal jurisdiction over an offense under this section.

(e)Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

(f) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(g) A prosecution under this section may be brought in the district in which the official proceeding (whether pending, about to be instituted, or completed) was intended to be affected, or in which the conduct constituting the alleged offense occurred.

*(Added Pub. L. 97–291, § 4(a), Oct. 12, 1982, 96 Stat. 1250; amended Pub. L. 103–322, title VI, § 60017, title XXXIII, § 330016(1)(U), Sept. 13, 1994, 108 Stat. 1975, 2148; Pub. L. 104–214, § 1(1), Oct. 1, 1996, 110 Stat. 3017; Pub. L. 107–204, title XI, § 1107(a), July 30, 2002, 116 Stat. 810; Pub. L. 107–273, div. B, title III, § 3001(b), (c)(2), title IV, § 4002(b)(4), Nov. 2, 2002, 116 Stat. 1804, 1807; Pub. L. 110–177, title II, §§ 204, 206, Jan. 7, 2008, 121 Stat. 2537.)* [5]

# 18 U.S. Code § 1514 - Civil action to restrain harassment of a victim or witness

(a)

(1) A United States district court, upon application of the attorney for the Government, shall issue a temporary restraining order prohibiting harassment of a victim or witness in a Federal criminal case if the court finds, from specific facts shown by affidavit or by verified complaint, that there are reasonable grounds to believe that harassment of an identified victim or witness in a Federal criminal case exists or that such order is necessary to prevent and restrain an offense under section 1512 of this title, other than an offense consisting of misleading conduct, or under section 1513 of this title.

(2)(A) A temporary restraining order may be issued under this section without written or oral notice to the adverse party or such party's attorney in a civil action under this section if the court finds, upon written certification of facts by the attorney for the Government, that such notice should not be required and that there is a reasonable probability that the Government will prevail on the merits.

(B) A temporary restraining order issued without notice under this section shall be

─────────────

[5] Cornell Law School, Legal Information Institute, Accessed May 6 2025.

endorsed with the date and hour of issuance and be filed forthwith in the office of the clerk of the court issuing the order.

(C)A temporary restraining order issued under this section shall expire at such time, not to exceed 14 days from issuance, as the court directs; the court, for good cause shown before expiration of such order, may extend the expiration date of the order for up to 14 days or for such longer period agreed to by the adverse party.

(D)When a temporary restraining order is issued without notice, the motion for a protective order shall be set down for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character, and when such motion comes on for hearing, if the attorney for the Government does not proceed with the application for a protective order, the court shall dissolve the temporary restraining order.

(E)If on two days notice to the attorney for the Government, excluding intermediate weekends and holidays, or on such shorter notice as the court may prescribe, the adverse party appears and moves to dissolve or modify the temporary restraining order, the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

(F)A temporary restraining order shall set forth the reasons for the issuance of such order, be specific in terms, and describe in reasonable detail (and not by reference to the complaint or other document) the act or acts being restrained.

(b)

(1)A United States district court, upon motion of the attorney for the Government, or its own motion, shall issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case or investigation if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case or investigation exists or that such order is necessary to prevent and restrain an offense under section 1512 of this title, other than an offense consisting of misleading conduct, or under section 1513 of this title.

(2)In the case of a minor witness or victim, the court shall issue a protective order prohibiting harassment or intimidation of the minor victim or witness if the court finds evidence that the conduct at issue is reasonably likely to adversely affect the willingness of the minor witness or victim to testify or otherwise participate in the Federal criminal case or investigation. Any hearing regarding a protective order under this paragraph shall be conducted in accordance with paragraphs (1) and (3), except that the court may issue an ex parte emergency protective order in advance of a hearing if exigent circumstances are present. If such an ex parte order is applied for or issued, the court shall hold a hearing not later than 14 days after the date such

order was applied for or is issued.

(3)At the hearing referred to in paragraph (1) of this subsection, any adverse party named in the complaint shall have the right to present evidence and cross-examine witnesses.

(4)A protective order shall set forth the reasons for the issuance of such order, be specific in terms, describe in reasonable detail the act or acts being restrained.

(5)The court shall set the duration of effect of the protective order for such period as the court determines necessary to prevent harassment of the victim or witness but in no case for a period in excess of three years from the date of such order's issuance. The attorney for the Government may, at any time within ninety days before the expiration of such order, apply for a new protective order under this section, except that in the case of a minor victim or witness, the court may order that such protective order expires on the later of 3 years after the date of issuance or the date of the eighteenth birthday of that minor victim or witness.

(c)Whoever knowingly and intentionally violates or attempts to violate an order issued under this section shall be fined under this title, imprisoned not more than 5 years, or both.

(d) (1)As used in this section—

(A)the term "course of conduct" means a series of acts over a period of time, however short, indicating a continuity of purpose;

(B)the term "harassment" means a serious act or course of conduct directed at a specific person that—

(i)causes substantial emotional distress in such person; and

(ii)serves no legitimate purpose;

(C)the term "immediate family member" has the meaning given that term in section 115 and includes grandchildren;

(D)the term "intimidation" means a serious act or course of conduct directed at a specific person that—

(i)causes fear or apprehension in such person; and

(ii)serves no legitimate purpose;

(E)the term "restricted personal information" has the meaning give [1] that term in section 119;

(F)the term "serious act" means a single act of threatening, retaliatory, harassing, or violent conduct that is reasonably likely to influence the willingness of a victim or witness to testify or participate in a Federal criminal case or investigation; and

(G)the term "specific person" means a victim or witness in a Federal criminal case

or investigation, and includes an immediate family member of such a victim or witness.

(2)For purposes of subparagraphs (B)(ii) and (D)(ii) of paragraph (1), a court shall presume, subject to rebuttal by the person, that the distribution or publication using the Internet of a photograph of, or restricted personal information regarding, a specific person serves no legitimate purpose, unless that use is authorized by that specific person, is for news reporting purposes, is designed to locate that specific person (who has been reported to law enforcement as a missing person), or is part of a government-authorized effort to locate a fugitive or person of interest in a criminal, antiterrorism, or national security investigation.

*(Added Pub. L. 97–291, § 4(a), Oct. 12, 1982, 96 Stat. 1250; amended Pub. L. 111–16, § 3(2), (3), May 7, 2009, 123 Stat. 1607; Pub. L. 112–206, § 3(a), Dec. 7, 2012, 126 Stat. 1490.)*

## 18 U.S. Code § 229 - Prohibited activities ("Relating to Chemical Weapons")

(a)Unlawful Conduct.—Except as provided in subsection (b), it shall be unlawful for any person knowingly—

(1)to develop, produce, otherwise acquire, transfer directly or indirectly, receive, stockpile, retain, own, possess, or use, or threaten to use, any chemical weapon; or

(2)to assist or induce, in any way, any person to violate paragraph (1), or to attempt or conspire to violate paragraph (1).

(b)Exempted Agencies and Persons.—

(1)In general.—

Subsection (a) does not apply to the retention, ownership, possession, transfer, or receipt of a chemical weapon by a department, agency, or other entity of the United States, or by a person described in paragraph (2), pending destruction of the weapon.

(2)Exempted persons.—A person referred to in paragraph (1) is—

(A)any person, including a member of the Armed Forces of the United States, who is authorized by law or by an appropriate officer of the United States to retain, own, possess, transfer, or receive the chemical weapon; or

(B)in an emergency situation, any otherwise nonculpable person if the person is attempting to destroy or seize the weapon.

(c)Jurisdiction.—Conduct prohibited by subsection (a) is within the jurisdiction of

the United States if the prohibited conduct—
(1)takes place in the United States;
(2)takes place outside of the United States and is committed by a national of the United States;
(3)is committed against a national of the United States while the national is outside the United States; or
(4)is committed against any property that is owned, leased, or used by the United States or by any department or agency of the United States, whether the property is within or outside the United States.

*(Added Pub. L. 105–277, div. I, title II, § 201(a), Oct. 21, 1998, 112 Stat. 2681–866.)*

## 18 U.S. Code § 1951 - Interference with commerce by threats or violence ("The Hobbs Act")

(a)Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b)As used in this section—
(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45.

*(June 25, 1948, ch. 645, 62 Stat. 793; Pub. L. 103–322, title XXXIII, § 330016(1)(L), Sept. 13, 1994, 108 Stat. 2147.)*

# 29 U.S. Code § 158 - Unfair labor practices (NLRA)

(a)Unfair labor practices by employer

It shall be an unfair labor practice for an employer—

(1)to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2)to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(3)by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such

an agreement: Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4)to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5)to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

(b)Unfair labor practices by labor organization

It shall be an unfair labor practice for a labor organization or its agents—
(1)to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

(2)to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(3)to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;

(4) (i)to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to

perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

(A)forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e);

(B)forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

(C)forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

(D)forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

Provided, That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter: Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

(5)to require of employees covered by an agreement authorized under subsection (a)(3) the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory under all the circumstances. In making such a finding, the Board shall consider, among other relevant factors, the practices and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;

(6)to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

(7)to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A)where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title,

(B)where within the preceding twelve months a valid election under section 159(c) of this title has been conducted, or

(C)where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection.

(c)Expression of views without threat of reprisal or force or promise of benefit

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

(d)Obligation to bargain collectively

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: Provided, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1)serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2)offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3)notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4)continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

The duties imposed upon employers, employees, and labor organizations by paragraphs (2) to (4) of this subsection shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 159(a) of this title, and the duties

so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract. Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer. Whenever the collective bargaining involves employees of a health care institution, the provisions of this subsection shall be modified as follows:

(A)The notice of paragraph (1) of this subsection shall be ninety days; the notice of paragraph (3) of this subsection shall be sixty days; and the contract period of paragraph (4) of this subsection shall be ninety days.

(B)Where the bargaining is for an initial agreement following certification or recognition, at least thirty days' notice of the existence of a dispute shall be given by the labor organization to the agencies set forth in paragraph (3) of this subsection.

(C)After notice is given to the Federal Mediation and Conciliation Service under either clause (A) or (B) of this sentence, the Service shall promptly communicate with the parties and use its best efforts, by mediation and conciliation, to bring them to agreement. The parties shall participate fully and promptly in such meetings as may be undertaken by the Service for the purpose of aiding in a settlement of the dispute.

(e)Enforceability of contract or agreement to boycott any other employer; exception

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [1] and void: Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: Provided further, That for the purposes of this subsection and subsection (b)(4)(B) the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms

"any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: Provided further, That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.

(f) Agreement covering employees in the building and construction industry

It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: Provided, That nothing in this subsection shall set aside the final proviso to subsection (a)(3): Provided further, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

(g) Notification of intention to strike or picket at any health care institution

A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of subsection (d). The notice shall state the date and time that such action will commence. The notice, once given, may be extended by the written agreement of

both parties.

*(July 5, 1935, ch. 372, § 8, 49 Stat. 452; June 23, 1947, ch. 120, title I, § 101, 61 Stat. 140; Oct. 22, 1951, ch. 534, § 1(b), 65 Stat. 601; Pub. L. 86–257, title II, § 201(e), title VII, §§ 704(a)–(c), 705(a), Sept. 14, 1959, 73 Stat. 525, 542–545; Pub. L. 93–360, § 1(c)–(e), July 26, 1974, 88 Stat. 395, 396.)*