Case No. 25-2028

---

## In the United States Court of Appeals
## For the Ninth Circuit

---

**Ashley M. Gjøvik**, *an individual*,

*Plaintiff-Appellant*

v.

**Apple Inc.**, *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court

for the Northern District of California

No. 3:23-CV-04597

The Honorable Judge Edward M. Chen

---

## Appellant's Motion for Injunction

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                    IV

INTRODUCTION & LEGAL BASIS                                             1

STATEMENT OF THE CASE                                                  2

ARGUMENT                                                               3

I.   GJOVIK IS A VICTIM OF CRIME, A WITNESS, AND INFORMANT FOR THE

GOVERNMENT, AND A WHISTLEBLOWER.                                       3

A.  MARSY'S LAW IN CALIFORNIA (ARTICLE I, § 28 OF THE CAL. CONST.)      5

B.  CRIME VICTIMS' RIGHTS ACT (18 U.S.C. § 3771)                        5

C.  RECOGNIZING ENVIRONMENTAL CRIMES AS VIOLENT CRIMES FOR VICTIMS'

RIGHTS                                                                 7

II.  RIGHT TO ENFORCE CRIME VICTIM RIGHTS UNDER THE CVRA (18 U.S.C. §

3771) AND MARSY'S RIGHTS.                                              9

D.  THE COURT'S DENIAL OF RIGHTS IN DISCOVERY COULD LEAD TO IRREPARABLE

HARM                                                                   10

E.  THE NINTH CIRCUIT SHOULD PROVIDE INJUNCTIVE RELIEF TO PREVENT

FUTURE HARM                                                            11

III.  LIKELIHOOD OF SUCCESS ON THE MERITS                              11

IV.  GJOVIK FACES ONGOING IRREPARABLE HARM                             12

F.   *LOPEZ* & *EPIC* NORTHERN DISTRICT OF CAL. CASES          14

G.   DEFENDANT'S DISCOVERY TACTICS INTERFERE WITH FEDERAL LAW

ENFORCEMENT INTERESTS AND THREATEN OBSTRUCTION OF JUSTICE          16

H.   DEFENDANT'S COUNSEL IS RETALIATING THROUGH THREATS, FALSE

ALLEGATIONS, AND PROCEDURAL BULLYING TO OBSTRUCT GJOVIK'S ACCESS TO

JUSTICE          17

**V.  BALANCE OF EQUITIES**          **18**

**CONCLUSION & RELIEF REQUESTED**          **19**

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ------------------------------------------------------------- 14

*Nken v. Holder*, 556 U.S. 418 (2009)-------------------------------------------------------------------------- 2

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985).------------------------------------------------- 12

*Winter v. NRDC*, 555 U.S. 7, 20 (2008)---------------------------------------------------------------------- 2

## US COURT OF APPEALS CASES

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) --------------------------------- 2

In *re Grand Jury Subpoenas Dated March 2, 2015*, 816 F.3d 1179 (9th Cir. 2016). ----------------------------- 14

*Kaiser Foundation Health Plan, Inc. v. The California Nurses Association* (9th Cir. 2005) ------------------- 10

*Leiva Perez v. Holder.* 640 F.3d 962 (9th Cir. 2011).---------------------------------------------------------- 2

*United States v. Nichols*, 504 F.3d 1221 (9th Cir. 2007)----------------------------------------------------- 6

*United States v. Pendergraft,* 297 F.3d 1198 (11th Cir. 2002). --------------------------------------------- 12

## US DISTRICT COURT CASES

*Ashley Gjovik v. State of Washington,* 2:22-cv-00807, District Court, W.D. Washington (2022) --- 15

*Epic Games v. Apple Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. Apr. 30, 2025) ------------------ 17

*Lopez v. Apple Inc,* Case 4:19-cv-04577-JSW, Dkt. 120, 07/21/23 ----------------------------------- 18

*Lopez v. Apple Inc.,* Case No. 4:19-cv-04577-JSW, United States District Court, Northern District

of California. --------------------------------------------------------------------------------------------- 17

*United States v. PG&E,* No. CR 14-00175 (N.D. Cal. 2016).----------------------------------------------- 16

## CALIFORNIA CONSTITUTION

Cal. Const. art. 1, § 28(b)(2). ----------------------------------------------------- 18

Cal. Const. art. I, § 28 -------------------------------------------------------------- 4

Cal. Const. art. I, § 28(b) ----------------------------------------------------------- 1

## STATE CASES

*Britt v. Superior Court*, 20 Cal.3d 844 (1978) ------------------------------------- 19

*Harris v. Superior Court*, 3 Cal. App. 4th 661, 665 (1992) ---------------------- 17

## U.S. AND STATE STATUTES

18 U.S. Code § 1514 ---------------------------------------------------------------- 19

18 U.S. Code § 1962 ---------------------------------------------------------------- 19

18 U.S. Code 3771(d)(3). ------------------------------------------------------------ 7

18 U.S.C. § 1512 ------------------------------------------------------------------ 3, 17

18 U.S.C. § 1512(b) ----------------------------------------------------------------- 16

18 U.S.C. § 1513 -------------------------------------------------------------------- 3

18 U.S.C. § 1962 -------------------------------------------------------------------- 4

18 U.S.C. § 1964(a) ----------------------------------------------------------------- 1

18 U.S.C. § 1964(c) ----------------------------------------------------------------- 1

18 U.S.C. § 3771 ------------------------------------------------------------------ 5, 9

18 U.S.C. § 3771(d)(3) ------------------------------------------------------------ 5, 10

18 U.S.C. §§ 1512 and 1513 ------------------------------------------------------- 12

28 U.S. Code § 1651 ---------------------------------------------------------------- 12

28 U.S.C. § 1292(a)(1) -------------------------------------------------------------- 4

All Writs Act (28 U.S.C. § 1651) ------------------------------------------------- 19

Cal. Gov't Code § 12945.8 ------------------------------------------------------- 4, 17

Cal. Labor Code § 1102.5 --------------------------------------------------------------------------16

Cal. Labor Code § 230(e) ---------------------------------------------------------------------1, 5, 17

Cal. Labor Code §§ 1102.5, 230(e)-----------------------------------------------------------------19

California Labor Code § 230(e)----------------------------------------------------------------------- 3

California Penal Code § 633.5--------------------------------------------------------------------------18

California Penal Code § 679.10-----------------------------------------------------------------------9, 10

Crime Victims' Rights Act (CVRA) ------------------------------------------------------------- 5, 8

## U.S. AND STATE RULES & REGULATIONS

Federal Rule of Appellate Procedure 8-------------------------------------------------------------- 1

Federal Rule of Appellate Procedure 8(a)(2) ------------------------------------------------------19

Federal Rule of Civil Procedure 62(c)--------------------------------------------------------------- 1

## TREATISES

CRS Report, *Crime Victims' Rights Act: A Summary and Legal Analysis of 18 U.S.C. § 3771,* No. RL33679

( June 2021) -------------------------------------------------------------------------------------------- 7

Law360, *Apple Sanctioned in Siri Privacy Suit for Deleting Recordings* ( June 18 2024).-------------------------16

Law360, *Apple, Atty Face Sanctions Bid Over 'Unnerving' Deposition* ( July 24 2023) ----------------------------15

Leader, A.R. *A SLAPP in the Face of Free Speech*, 17 First Amend. L. Rev. 441 (2018).------------------------12

Paul G. Cassell et al., Crime Victims' Rights During Criminal Investigations, 104 J. Crim. L. &

Criminology 59 (2014). ----------------------------------------------------------------------------16

Paul G. Cassell, Nathanael J. Mitchell, and Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act Before Criminal Charges Are Filed*, 104 J. Crim. L. & Criminology 59 (2014). ----------------------------------------------------------------------------- 7

S.A. Scheindlin & J. Elofson, *Judges, Juries, and Sexual Harassment*, 17 Yale L. & Pol'y Rev. 813 (1999) --12

# Introduction & Legal Basis

Plaintiff-Appellant Ashley Gjovik respectfully moves this Honorable Court for a preliminary injunction, pursuant to 18 U.S.C. § 1964(a) (RICO), CVRA, Marsy's Law, Cal. Labor Code 1102.5, All Writs Act, and/or 18 U.S.C. § 1514, to prevent further retaliation, harassment, and harm that Gjovik currently experiences as a result of Apple's ongoing unlawful actions, including predicate acts of witness tampering & retaliation against a whistleblower, witness, and victim of crime. Gjovik respectfully moves this Court for immediate injunctive relief and a stay of proceedings, including discovery, pursuant to the Court's inherent equitable powers and Federal Rule of Civil Procedure 62(c) and/or Federal Rule of Appellate Procedure 8, pending resolution of this appeal currently before the Ninth Circuit.

The Motion is filed with the Opening Brief and Addendum and will be concurrently filed with the Experts from the Record, a Request for Judicial Notice, and a Declaration (targeting all by 5/8). This appeal concerns the District Court's denial of Gjovik's attempt to assert her crime victim rights under Cal. Const. art. I, § 28(b) and Cal. Labor Code § 230(e), and to request injunctive equitable relief under the RICO and other acts. Gjovik has suffered ongoing and irreparable harm due to Defendants' unlawful actions, including harassment and retaliation in direct violation of federal and state law. Gjovik fears more retaliation, including further physical, emotional, and financial harm, as well as destruction of evidence and interference with this litigation.

RICO allows for a civil suit under 18 U.S.C. § 1964(c) for individuals who have been harmed by a pattern of racketeering activity. If the predicate acts involve violations of § 1512 (witness tampering) and § 1513 (retaliation), these can serve as the necessary predicate acts to establish a RICO claim. RICO provides for injunctive relief in addition to damages. Under 18 U.S.C. § 1964(a), a civil Gjovik can seek a court order to prevent further violations of RICO, including injunctive relief. The statute reads: "*The court shall award...injunctive relief as it deems necessary to prevent*

1

*and restrain violations of section 1962 of this chapter…"* The court has discretion to issue injunctive relief as necessary to prevent further violations.

Whistleblowers who have been subjected to retaliation under 18 U.S.C. §§ 1512 and 1513 are entitled to seek injunctive relief to prevent further retaliation. To obtain a preliminary injunction, Gjovik must demonstrate a likelihood of success on the merits, a likelihood of irreparable harm if the injunction is not granted, that the balance of equities favors the plaintiff, and that an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). *Nken v. Holder*, 556 U.S. 418 (2009); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

*Hilton* permitted a stay for a substantial case on the merits, so long as the other factors support it. *Hilton*, 481 U.S. at 778. With regard to the likelihood of success factor, *Nken* said only that it is not enough that the chance of success on the merits be better than negligible & more than a mere possibility of relief is required. 129 S.Ct. at 1761. There's many ways to articulate the minimum quantum of success necessary to justify a stay—be it a "reasonable probability" or "fair prospect," as *Hollingsworth*, 130 S.Ct. at 710, suggests; "a substantial case on the merits," in *Hilton's* words, 481 U.S. at 778; or, as articulated in *Abbassi*, 143 F.3d at 514, that "serious legal questions are raised." *Leiva Perez v. Holder.* 640 F.3d 962 (9th Cir. 2011).

## STATEMENT OF THE CASE

This case involves serious claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), related to the Defendant's efforts to dump toxic waste, obstruct justice, lie to the public and government, and intimidate witnesses. The claims include allegations of public corruption and improper coordination between Apple and various government agencies, individuals, and private firms. Since filing her claims, Gjovik has experienced significant harassment from parties connected to Apple, particularly aimed at discrediting her and influencing the course of this litigation.

These actions are intended to intimidate her and obstruct Gjovik's ability to

2

pursue her claims. Despite Gjovik's complaints, the government has failed to take meaningful action to investigate these allegations or hold Apple accountable. Despite her repeated attempts to engage with the DOJ, FBI, and the EPA, she has not received any meaningful updates regarding the criminal investigations into Apple's obstruction and the ongoing harassment. The FBI opened an investigation in late 2022, and the EPA launched a criminal probe into Apple in 2023-2024, but Gjovik has not received any further information from these agencies, leaving Gjovik vulnerable to continued interference and obstruction in her legal proceedings & life.

## ARGUMENT

### I. GJOVIK IS A VICTIM OF CRIME, A WITNESS, AND INFORMANT FOR THE GOVERNMENT, AND A WHISTLEBLOWER.

Gjovik is a *pro se* litigant, a federal witness and informant, a constitutional crime victim under California law, and a whistleblower whose disclosures led to multiple federal and state investigations, including two NLRB enforcement actions and formal U.S. EPA inspections. Gjovik is a recognized victim of crime and whistleblower under California Labor Code § 230(e), AB 2499 (2024), and the Cal. Const. (Marsy's Law), among other legal authorities. The NLRB has already found that Apple illegally retaliated and threatened Plaintiff, and the ongoing civil litigation arises from the same, similar, and related conduct.

Gjovik's claims arise from Defendants' pattern of racketeering activity, including predicate acts of witness tampering in violation of 18 U.S.C. § 1512 and retaliation against a witness in violation of 18 U.S.C. § 1513. This included a formal complaint of "witness intimidation" to Apple and the U.S. government. Shortly after her public formal complaints to various federal agencies including the EPA, SEC, and FBI, Apple attempted to interrogate Gjovik about her protected disclosures via a "*Workplace Violence*" investigator demanding to speak with her "within the hour," while she was on mandatory administrative leave. She warned Apple to stop the threats, and they did not, and then upon informing Apple that she just reported them

3

to the U.S. government for witness intimidation and retaliation again, Apple then promptly and abruptly terminated her employment, and mailed her possessions back broken, bugged, and covered in glass shards. [See Second Amended Complaint].

These actions are just some narrow examples of the multitude of criminal conduct Apple has engaged in which constitute a violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, among other legal violations. Further, even if *Marsy's Law* is not enforceable in federal court directly, the FEHA-based rights under Cal. Gov't Code § 12945.8 are enforceable as civil rights, and there are implied rights under the federal Crime Victim Act.

Gjovik has filed an appeal to the Ninth Circuit under the denied injunction and collateral order doctrine. The District Court denied her request to exercise Marsy's Law protections during discovery. Before discovery began in the district court, Gjovik moved to enforce her rights under *Marsy's Law* (Cal. Const. art. I, § 28). She requested procedural and participatory protections, supervised depositions, scrutiny of Apple's requests, court oversight of potential harassment and retaliation, and coordination with parallel federal administrative actions. These requests were denied. The lawsuit was filed Sept. 7 2023 and as of today there is no case schedule, no hearing scheduled, no future case management meeting, and no discovery plan.

A preliminary injunction or temporary stay is appropriate pending resolution of the Ninth Circuit collateral order appeal and coordination with criminal investigations. The district court denied those rights and then proceeded with unsupervised discovery. Retaliation and intimidation worsened. Gjovik's constitutional rights as a victim and whistleblower were not merely ignored — they were functionally erased during active litigation. The present appeal challenges those errors, including denial of injunctive relief (appealable under 28 U.S.C. § 1292(a)(1)), procedural abandonment of crime victim protections, and improper dismissal of state and federal claims with supporting agency findings. To preserve her rights and safety while this appeal is pending, Gjovik asks this Court to pause the proceedings

4

and restore the case to the pre-discovery stage.

## A. Marsy's Law in California (Article I, § 28 of the Cal. Const.)

Marsy's Law is a set of provisions enshrined in the Cal. Const. under Article I, § 28, aimed at protecting the rights of crime victims. The law, passed in 2008, guarantees specific rights to crime victims, ensuring they are treated with dignity, respect, and fairness throughout the criminal justice process. It provides crime victims with constitutional protections similar to those found in the Crime Victims' Rights Act (CVRA) at the federal level. The rights guaranteed under Marsy's Law include the right to be heard, and the right to be free from harassment and intimidation from the accused.

Cal. Labor Code § 230(e) and Marsy's Law confer *enforceable legal status* on crime victims. These rights include the right to bring civil claims directly, with full court protections intended. Victims have statutory civil rights enforceable as FEHA violations (similar to Title VII) and grounded in status-based protection. Gjovik's retaliation and intimidation claims involve constitutionally protected participation in legal processes. Coercive discovery or retaliation chills those rights.

## B. Crime Victims' Rights Act (18 U.S.C. § 3771)

The CVRA, codified at 18 U.S.C. § 3771, is a significant federal law designed to protect the rights of crime victims throughout the criminal justice process. It provides various rights to victims of federal crimes, including the right to be treated with fairness and respect, the right to be reasonably protected from the accused, and the right to be heard at public proceedings related to the offense. The CVRA also includes the right to confer with the government attorney in a case and the right to full and timely restitution. Under the CVRA, victims may petition for a court order to enforce their rights. Specifically, 18 U.S.C. § 3771(d)(3) provides that victims may assert their rights under the Act by filing a motion in the district court, which must then consider the petition and grant relief if the victim's rights have been violated.

The CVRA's focus on harm, rather than the type of crime, allows for an

inclusive interpretation that encompasses victims of environmental crimes. The direct and proximate harm caused by the unlawful release of toxic substances, leading to injuries like chemical burns, poisoning, or even death, clearly aligns with the statutory language of the CVRA. Even if the harm is widespread, as in the case of communities affected by industrial pollution or waste dumping, individuals suffering from physical injuries or long-term health consequences should be entitled to the rights provided under the CVRA.

If a federal court determines that a victim's rights under the CVRA have been violated, the court may issue appropriate orders to enforce these rights, including ordering actions such as ensuring the victim is notified about certain hearings or allowing the victim to participate in proceedings. The court's orders in such cases may resemble injunctive relief, especially if the violation is ongoing or a future violation is likely without court intervention. In *United States v. Nichols*, 504 F.3d 1221 (9th Cir. 2007), the Ninth Circuit held that crime victims have standing to enforce their rights under the CVRA in federal court. The court ruled that the CVRA grants crime victims an enforceable right to participate in certain proceedings (such as the right to be heard at sentencing) and that victims could petition the court to enforce these rights.

The U.S. FBI and Congress both define crime victim under the CVRA simply as "*Under the CVRA, a crime victim means a person who has been directly and proximately harmed (physically, emotionally, or financially) as a result of the commission of a federal offense*." Congressional Research Services further explains that this includes "victims of crimes committed in furtherance of a scheme, conspiracy, or pattern conviction." CRS Report, *Crime Victims' Rights Act: A Summary and Legal Analysis of 18 U.S.C. § 3771,* No. RL33679 (June 2021). The federal statute codified an inherent right for Victims of Crime to seek mandamus from the U.S. Court of Appeal.

> The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the

> crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus."

18 U.S. Code 3771(d)(3). Congress "directly envisioned the victims' rights law to apply during the detection and investigation phases of criminal cases," prior to charges being filed. CVRA's plain language indicates that the victims have protected rights under the Act even before any charges are filed. See, Paul G. Cassell, Nathanael J. Mitchell, and Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act Before Criminal Charges Are Filed*, 104 J. Crim. L. & Criminology 59 (2014).

While environmental crimes like the illegal disposal of toxic waste are not often traditionally categorized as "violent crimes," the harm they cause can be as severe as that of more traditionally recognized violent offenses. For instance, exposure to toxic substances can result in serious physical injuries, such as burns, respiratory failure, or life-threatening diseases like cancer. In some cases, death can also occur. These outcomes meet the fundamental criteria for violent crimes, which are typically defined as crimes resulting in bodily injury or death.

The CVRA's protections are designed to cover all victims who experience physical harm, regardless of the nature of the offense. Therefore, even if a crime is not traditionally classified as a violent crime, victims who experience physical injuries due to an environmental crime should be recognized as victims of violent crime under the CVRA. This interpretation is consistent with the evolving understanding of "violence" in the legal system, which now extends to crimes that cause severe bodily harm, whether intentional or reckless.

## C. Recognizing Environmental Crimes as Violent Crimes for Victims' Rights

The Ninth Circuit should formally recognize that environmental crimes, such as the illegal dumping of dangerous hazardous waste in residential areas, should be classified as violent crimes for purposes of victims' rights protections, including the

7

CVRA at the federal level and Marsy's Law in California. Individuals harmed by toxic waste or hazardous substance dumping, resulting in physical injury, health deterioration, or death, are victims of violent crime and therefore entitled to all the rights afforded to victims of violent crimes under these laws.

In the case of arsine and phosphine poisoning, (like what Apple did to Gjovik), victims may suffer chemical burns, seizures, organ failure, and death, all of which involve significant physical harm and meet the standard for a violent crime. The key factor in determining whether a crime is violent should not necessarily be the statutory classification of the crime, but whether the victim experiences physical violence. When an environmental crime leads to death, severe injury, or prolonged suffering, the physical harm suffered by the victim fits the definition of a violent crime under both the CVRA and Marsy's Law.

Federal RCRA violations and other environmental crimes often involve reckless or intentional harm to individuals. Courts and legal scholars have consistently recognized that when environmental crimes lead to physical injury or death, the conduct is violence. The intent or recklessness behind these crimes is often akin to manslaughter, assault, or even murder, depending on the facts. The Ninth Circuit should formalize the application of victims' rights protections to those harmed by toxic waste crimes or other environmental offenses that result in physical injury or death. The court should recognize that these crimes, when they cause harm to individuals, qualify as violent crimes for purposes of both CVRA and Marsy's Law.

Environmental crimes, such as toxic waste dumping, which result in physical harm or death to individuals should be classified as violent crimes for the purpose of victims' rights protections. The CVRA and Marsy's Law do not limit the definition of violent crime to traditional violent offenses and should be interpreted to ensure that victims of environmental violence are afforded the same rights and protections as victims of other violent crimes. The Ninth Circuit should formally adopt this interpretation, ensuring that victims of toxic waste crimes, who suffer bodily injury,

illness, or death, are entitled to the full array of rights that protect victims of violence under federal and state law.

## II.   Right to Enforce Crime Victim Rights Under the CVRA (18 U.S.C. § 3771) and Marsy's Rights.

The CVRA provides crime victims with specific rights, including the right to be treated with fairness and respect for their dignity and privacy, the right to be reasonably protected from the accused, and the right to confer with the attorney for the Government in a case involving federal crimes. The Ninth Circuit has recognized that victims of federal crimes have standing to enforce their rights under the CVRA, and that courts must ensure these rights are respected.

The defendant's harassment, intimidation, and threats against the plaintiff, combined with ongoing federal criminal investigations, underscore the need for the victim's rights to be respected. Marsy's Law specifically protects victims from harassment, intimidation, and threats from offenders, and the victim has a right to be reasonably protected from the accused (18 U.S.C. § 3771). The district court erred in denying the request to exercise these rights in discovery, as allowing harassment or retaliation in discovery would run counter to the victim's right to be protected and respected during the legal process. While Marsy's Law does not explicitly authorize traditional injunctive relief (e.g., temporary restraining orders or permanent injunctions), victims do have the right to enforce their rights in court. Under California Penal Code § 679.10, victims can assert their rights by filing a petition with the court to enforce specific rights granted under Marsy's Law.  The California Supreme Court has clarified that the law provides crime victims with constitutional rights but does not authorize a general cause of action for damages outside the specific rights provided by the statute.

Marsy's Law provides crime victims in California with constitutional rights designed to protect their dignity, safety, and participation in criminal justice proceedings. While the law does not explicitly provide for traditional injunctive relief or create a broad implied right of action for damages, victims can enforce their rights

9

through the court system. Courts may issue orders that resemble injunctive relief, such as ensuring victims are notified of proceedings, are allowed to participate, and are protected from harassment or intimidation by the defendant. California Penal Code § 679.10 allows victims to petition the court for enforcement of their rights, and while Marsy's Law does not create a general cause of action for damages, it provides victims with powerful tools to protect their rights and ensure their involvement in the criminal justice process.

### D. The Court's Denial of Rights in Discovery Could Lead to Irreparable Harm

One critical aspect is that the victim, who is pro se, is currently facing threats and harassment by the defendant. The denial of her CVRA rights in discovery could lead to irreparable harm. Irreparable harm is a key factor in granting injunctive relief, especially when a party's constitutional or statutorily protected rights are being violated, or when there is a risk of harm that cannot be undone by monetary damages or other remedies. In *Kaiser Foundation Health Plan, Inc. v. The California Nurses Association* (9th Cir. 2005), the Ninth Circuit recognized that injunctions are appropriate to prevent irreparable harm. Here, the victim's ongoing harassment and intimidation (along with the potential for future threats) would be difficult to remedy with money alone. The Ninth Circuit should consider that denying the victim's rights could lead to continued harassment, emotional distress, and potentially dangerous situations.

Under the CVRA, the district court has the discretion to issue orders to ensure that the victim's rights are respected, including in discovery. As 18 U.S.C. § 3771(d)(3) allows crime victims to request the enforcement of their rights in court, the district court should have used its discretion to balance the need for discovery against the victim's right to safety, protection, and participation in the legal process. Denying these rights, especially when the victim is under threat, violates the CVRA and Marsy's Law, which both require the court to protect the victim's well-being during legal proceedings.

10

### E. The Ninth Circuit Should Provide Injunctive Relief to Prevent Future Harm

Given the serious nature of the allegations (harassment, threats, and intimidation), the Ninth Circuit should issue an injunction to prevent further harm. The injunction could take several forms including requiring the defendant to cease all forms of harassment or intimidation against the plaintiff; allowing the victim to exercise her CVRA rights in discovery, including the right to confer with and to be protected from the defendant's harassment; ensuring the safety of the victim during the litigation process, especially given the potential criminal investigations against the defendant. This would not only enforce the victim's rights but also serve to prevent further harm or obstruction of justice in the case. The Ninth Circuit has historically issued injunctions in cases where victims' rights are being violated or where harm is imminent, and it should do so in this case to protect the victim from ongoing threats.

The district court's denial of the victim's request to exercise her Marsy's Law and CVRA rights in discovery, in the context of ongoing harassment and threats from the defendant, was an error that violates the victim's statutory rights. The Ninth Circuit should reverse this denial and grant the victim injunctive relief to protect her from further harm. The victim's rights under the CVRA should be upheld, and the court should order appropriate protections to ensure the victim's safety and participation in the discovery process, as well as safeguard her right to be treated with fairness and respect throughout the legal proceedings.

### III.  Likelihood of Success on the Merits

The denial of Marsy's Law protections during active discovery is legally erroneous. Article I, § 28 is self-executing and enforceable in civil proceedings, particularly when Gjovik is both a crime victim and a federal witness under 18 U.S.C. §§ 1512 and 1513. At the time of denial, Gjovik had active claims supporting injunctive relief under Labor Code § 1102.5, *Tameny*, 28 U.S. Code § 1651 (the All Writs Act), RICO, and federal civil rights statutes. *Sedima, S.P.R.L. v. Imrex Co., Inc.*,

11

473 U.S. 479 (1985).

Gjovik has a strong likelihood of success on the merits of both the RICO claims and whistleblower retaliation claims under 18 U.S.C. §§ 1512 and 1513. Defendants have engaged in a clear pattern of retaliatory behavior in violation of federal law, including witness tampering and retaliating against Gjovik for whistleblowing activities. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011); *United States v. Pendergraft,* 297 F.3d 1198 (11th Cir. 2002).

Courts have a non-discretionary role to safeguard the integrity of the litigation environment. When harassment, especially retaliatory or intimidating conduct—is allowed to proceed unchallenged, the court becomes complicit in obstructing justice. They insist that judges must intervene to prevent systemic coercion, especially where civil rights or whistleblower claims are involved. *See,* S.A. Scheindlin & J. Elofson, *Judges, Juries, and Sexual Harassment*, 17 Yale L. & Pol'y Rev. 813 (1999). Civil harassment and retaliation law includes behavior intended to chill legal speech or reporting, regardless of whether agency or conspiracy can be proven in full. The risk to plaintiffs' constitutional rights demands preventive, not reactive, judicial intervention. *See,* Leader, A.R. *A SLAPP in the Face of Free Speech*, 17 First Amend. L. Rev. 441 (2018).

## IV.    Gjovik Faces Ongoing Irreparable Harm

Gjovik has faced years of ongoing, severe harassment and retaliation by Defendants. These actions are not only damaging Gjovik's personal and professional well-being, but they also threaten to undermine the integrity of this legal action. The harm Gjovik faces is irreparable, as monetary damages alone cannot fully remedy the ongoing emotional, reputational, and professional damage caused by Defendants' actions. The harm is not hypothetical. Defendant's counsel continues with ongoing retaliation and intimidation.

In the last few weeks, Apple's counsel threatened Gjovik with Rule 11 sanctions for requesting Judicial Notice of a trilateral national settlement agreement between Gjovik, Apple, and the U.S. NLRB regarding Apple's national

12

confidentiality policies where Apple was agreeing to stop violating federal labor laws. Apple then threatened Gjovik with Rule 11 sanctions for mentioning it in the civil case, despite the Northern District of California being the exact court NRLB would go to enforce the order. Similarly, Apple also just tried to add new terms to Gjovik's prior confidentiality contract with the company, forbidding her from sharing information with the government without consulting with them first. Gjovik objected loudly.

Apple is now also threatening to obtain a confidentiality privilege order against the Plaintiff despite her strong objections following the Rule 11/contract update events, and Apple admitted their only plan for it now is to make her protected disclosures "confidential" under court order. Gjovik complained that they were just trying again to get her incarcerated to stop her from whistleblowing, referencing the prior illegal gag order Apple obtained against her that prohibited her from talking about some of the most important aspects of her claims, even privately, causing extreme psychological trauma.

Apple's lawyers included in their notes that Gjovik was concerned they were trying to get her arrested *again*. See more on the prior litigation at *Ashley Gjovik v. State of Washington,* 2:22-cv-00807, District Court, W.D. Washington (2022) and in the district court docket. Further, in a prior meet/confer Apple's counsel told Gjovik they only  wanted the court protective order to use to threaten her. (All of these meetings are recorded & Gjovik can provide the court/DOJ the audio! 😊 )

Thus far, the court has denied protective measures, effectively forcing Gjovik, the victim, into open, isolated, repeated, adversarial, and abusive confrontation with her perpetrator. In addition to incessant threats and false allegations, the disclosure of sensitive trauma-related information, under threat, creates irreversible psychological and constitutional harm. Once disclosed, such information cannot be "*undisclosed*." The request itself is also deeply harmful. This also meets the standard for irreparable harm.

13

Gjovik has endured continuing retaliation and threats during litigation; denial of hearings and case supervision, unsupervised discovery used as a tool of coercion and surveillance, and threat of potentially unlawful protective orders designed to silence protected disclosures. Without a stay, this harm will continue. Post-judgment remedies will not suffice to undo the damage already occurring. Without a stay, Gjovik is subject to coercive, invasive discovery from the employer accused of committing the crime, with no protection despite having statutory rights to safety and nondiscrimination. The federal court's refusal to recognize even Gjovik's right to raise Marsy's Law arguments — and denial of deposition guardrails — places your health, safety, and rights in imminent danger. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), holds that substantive rights must be accompanied by fair enforcement mechanisms. District court's failure to acknowledge your rights creates a structural denial of justice.

In a Ninth Circuit case, the court addressed whether the crime-fraud exception to attorney-client privilege applied to communications related to sham litigation. The court held if a client uses an attorney's services to further a fraudulent litigation scheme, those communications are not protected and can be disclosed. I*n re Grand Jury Subpoenas Dated March 2, 2015,* 816 F.3d 1179 (9th Cir. 2016). Similarly, PG&E's legal team was caught withholding critical safety evidence and coaching staff to deflect blame in state and federal investigations after a deadly explosion. Prosecutors pushed them to disqualify in-house lawyers involved in the cover-up. Court limited PG&E's litigation autonomy, and imposed structural oversight, requiring all communications between legal and technical teams be documented. PG&E was convicted of six felonies, and its legal team was publicly censured. See, *United States v. PG&E,* No. CR 14-00175 (N.D. Cal. 2016).

### F. *Lopez* & *Epic* Northern District of Cal. Cases

Last week in *Epic Games v. Apple Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. Apr. 30, 2025), at the same district court where Gjovik's case is, the Court

14

issued an 80-page contempt order holding Apple in civil contempt, finding willful violations of a federal injunction, and explicitly stating that Apple executives lied under oath. Judge Yvonne Gonzalez Rogers referred both Apple and its Vice President of Finance to the Department of Justice for potential criminal prosecution. This referral underscores the plausibility — and chargeability — of Appellant's alleged predicate acts.

In late 2024, Apple reached a proposed $95 million settlement to end a class-action lawsuit in the U.S. concerning Siri's voice recordings and privacy. The lawsuit alleged that Apple's voice assistant Siri was inadvertently recording users' private conversations without consent, and that some of these recordings (including sensitive discussions) were sent to Apple's servers and heard by third-party contractors. *Lopez v. Apple Inc.,* Case No. 4:19-cv-04577-JSW, United States District Court, Northern District of California. The case cited instances where triggering Siri accidentally (e.g., by homophones of "Hey Siri") led to targeted ads on their devices, suggesting their conversations were recorded and shared. Apple denied the allegations of privacy invasion, but after public revelations, the company agreed to settle. A preliminary settlement was filed in an Oakland federal court on Jan. 2, 2025, covering Siri users from 2015–2019 and later. Apple will pay $95 million into a fund for affected users. In addition to compensation, Apple was to institute privacy reforms in 2019 – such as obtaining explicit opt-in from users to allow Siri audio review – in response to the underlying issue.

In 2023, the plaintiff's lawyers in *Lopez v. Apple* requested sanctions against Apple for conduct from Apple's lawyers during a deposition of an Apple executive (someone who Gjovik may also need to depose in her instant litigation – as he is in a leadership function related to privacy and "consent"). The plaintiff attorneys complained Apple's conduct was "unnerving," "aggressive," "overtly aggressive," "demeaning," "screaming," and "unacceptable for an officer of the court." "Mr. Roberts' conduct created a hostile environment in which no attorney should be

15

required to endure to examine a corporate witness," they said. *Lopez v. Apple Inc,* Case 4:19-cv-04577-JSW, Dkt. 120, 07/21/23. Law360, *Apple, Atty Face Sanctions Bid Over 'Unnerving' Deposition* ( July 24 2023). Last year, in this same Apple case, in the same district as Gjovik's cases, and the same district where Apple was just subject to a referral for DOJ criminal investigation due to obstruction in the *Epic* case, in 2024 Apple was sanctioned in the same *Lopez* case for destroying evidence of allegedly illegal surveillance and personal data collection of millions of people without their knowledge or consent. Law360, *Apple Sanctioned in Siri Privacy Suit for Deleting Recordings* ( June 18 2024).

These events from the *Lopez* case strongly mirror Gjovik's complaints about Apple's unlawful practices with the "face Gobbler" biometrics and surveillance footage data collection. Like with both *Epic* and *Lopez*, in the same district as her own lawsuit, Gjovik is dealing with Apple's counsel harassing her, threatening her, hiding evidence from her, obstructing her ability to the basic details of her case, and insisting anything that may incriminate them is "*Apple Confidential.*" In *Epic* and *Lopez*, the plaintiff's finally got the court's attention and intervention, however they had large law firms and professional attorneys. Gjovik is a pro se worker, whistleblower, victim, informant, and witness – and the U.S. District of Northern California left her completely unsupervised with Apple's "Rambo" litigation team.

## G. Defendant's Discovery Tactics Threaten Obstruction of Justice

Gjovik has previously made disclosures regarding alleged criminal conduct to government agencies and is aware of ongoing investigatory interest from federal authorities, including U.S. DOJ. Apple is aware of Gjovik's whistleblower and victim status and has now engaged in a campaign of litigation retaliation — including attempting to obtain protected medical and psychological records unrelated to their defense in this litigation; discredit Gjovik's credibility as a potential witness through humiliation and trauma-focused discovery. See, Paul G. Cassell et al., Crime Victims' Rights During Criminal Investigations, 104 J. Crim. L. & Criminology 59 (2014).

16

This conduct implicates 18 U.S.C. § 1512(b) (witness tampering), Cal. Labor Code § 1102.5, and the broader goals of protecting government witnesses from coercive private litigation tactics. Because DOJ lacks standing until charges are filed, this Court must serve as the only immediate safeguard against obstruction and interference with Gjovik's rights. Protective orders must not be used to shield employer wrongdoing, especially when the underlying information involves criminal conduct, harassment, or intimidation of the litigant. See, Cal. Labor Code § 230(e), AB 2499, Cal. Gov't Code § 12945.8. Discovery may not be used to coerce settlement or chill litigation through burdening a party's privacy, especially when the requesting party lacks a viable affirmative defense. *Harris v. Superior Court*, 3 Cal. App. 4th 661, 665 (1992). Gjovik objects to Apple's proposed subpoena for ten years of medical and mental health records. The request is not narrowly tailored, lacks any factual predicate in Defendant's Answer or Initial Disclosures, and violates Gjovik's fundamental right to privacy. Apple is doing exactly what AB 2499 and Cal. Labor Code § 230(e) were designed to prohibit: retaliating against a crime victim for pursuing legal protection and justice.

## H.   DEFENDANT'S COUNSEL IS RETALIATING THROUGH THREATS, FALSE ALLEGATIONS, AND PROCEDURAL BULLYING TO OBSTRUCT GJOVIK'S ACCESS TO JUSTICE

Gjovik is not only a statutory crime victim, but also a self-represented litigant navigating an increasingly hostile litigation environment engineered by Defendant's legal team. The defendant has repeatedly made baseless allegation against her through numerous public filings and agency complaints. Apple also claimed Gjovik's filings are "improper" because they are supported by legally permissible writing assistance tools (e.g., AI), which is not prohibited for *pro se* litigants and is not evidence of misconduct. No court rule or authority bars a *pro se* litigant from using tools to draft or structure arguments. These accusations are part of a pattern of litigation-based intimidation. Further, on May 3, 2025, Defendant's counsel threatened Gjovik with harm if Gjovik filed additional motions in any

17

litigation. This is a violation of the court's authority, a form of retaliation, and possible criminal act under 18 U.S.C. § 1512. [See Declaration].

Recognizing the potential for retaliation, the magistrate judge overseeing discovery entered an order authorizing Gjovik to record conversations with Defendant's counsel without their consent, consistent with California Penal Code § 633.5 exceptions and federal safety provisions. Gjovik has exercised that right to preserve evidence of threats, retaliation, coercion during meet-and-confers and deposition scheduling. Defendant protested this order, further confirming their intent to operate without accountability or documentation.

## V.    BALANCE OF EQUITIES

Gjovik is a *pro se* litigant, already burdened by asymmetry in resources, risk, and representation. Preserving the status quo imposes no substantial hardship on Apple. The balance of equities strongly favors Gjovik's interests. Apple's actions are illegal and harmful, whereas any harm to Apple from the issuance of an injunction is minimal compared to the serious and ongoing harm Gjovik continues to experience. Apple will suffer no meaningful prejudice from a temporary stay, while Gjovik faces the permanent loss of dignity, privacy, and safety. California also has a self-executing right for Victims' Rights to Fair Treatment, Respect for Their Privacy and Dignity and To Be Free from Intimidation, Harassment and Abuse. *"In order to preserve and protect a victim's rights to justice and due process, a victim shall be entitled to the following right [] . . . [t]o be reasonably protected from the defendant and persons acting on behalf of the defendant."* Cal. Const. art. 1, § 28(b)(2).

This case involves enforcement of a state constitutional right for crime victims, whistleblower retaliation tied to environmental and labor violations, procedural integrity of federal discovery, constitutional access to justice for pro se litigants. The public interest favors a justice system that protects — not punishes — victims who participate in legal proceedings and uncover public harms. The reason congress and state legislatures were able to enact these laws is because it is well known the that criminal perpetrators will attempt to harm victims, witnesses,

18

informants, and whistleblower in very predictable and severe ways, including assault and murder. State and federal governments understand the need to protect victims from this predictable violence and bad faith conduct. Gjovik has checked all of the boxes as a victim and witness and informant, and Apple has checked all the boxes egregious intimidation, threats, and retaliation. Yet four years in, the world has watched Apple effectively destroy Gjovik and ruin her life, with little to no intervention from the government.

The public has a significant interest in protecting whistleblowers and ensuring that retaliation does not occur in violation of federal law. Issuing an injunction will further the public interest by preventing further illegal retaliation and encouraging others to report unlawful conduct without fear of reprisal. Protecting the rights of crime victims is a matter of public policy and statutory mandate under both Marsy's Law and AB 2499. This litigation concerns whether courts can ignore those rights when the victim seeks justice in civil court. California's Constitution explicitly guarantees a right to privacy (Article I, Section 1), and courts take this very seriously when it comes to mental health and medical records — especially when the person asserting privacy is a crime victim. Individuals have a right to withhold private records unless directly relevant and narrowly tailored. *Britt v. Superior Court*, 20 Cal.3d 844 (1978). Gjovik has a right to report crimes (First Amendment + Cal. Labor Code §§ 1102.5, 230(e), etc.) Apple demanding a confidentiality order so they can accuse Gjovik of "leaking" when she reported crime is retaliation on its face. It's designed to weaponize the court's neutrality, create a pretext for firing the Gjovik again and/or harming her credibility, and chill her reporting of misconduct.

## CONCLUSION & RELIEF REQUESTED

WHEREFORE, Gjovik respectfully requests that the court grant a preliminary injunction pursuant to 18 U.S. Code § 1964 (RICO), 18 U.S. Code § 1514, Federal Rule of Appellate Procedure 8(a)(2), and All Writs Act (28 U.S.C. § 1651) to:

- Issue an order compelling Apple Inc. and its agents to cease engaging in further

19

retaliation, harassment, or intimidation against Plaintiff.
- Impose a protective order to prevent further actions that would disrupt the litigation and intimidate the plaintiff.
- Bar any discovery that seeks to reframe, reduce, or deny the nature of Gjovik's trauma.
- Prevent Defendant from using "confidentiality" orders as a retaliatory narrative device; and to obstruct government access to evidence.
- Require any future discovery requests be submitted to the Court with justification and proposed trauma-informed limits.
- Set a hearing for a preliminary injunction, if required, to be heard as soon as practicable.
- Refer the conduct of Apple for criminal investigation, should the Court find it appropriate, along with the *Epic* lawsuit referral.
- Stay all proceedings in the district court, including discovery and motions practice.
- Restore the status quo ante as it existed immediately prior to the commencement of discovery, at which point Plaintiff–Appellant's constitutional crime victim rights were denied; and
- Direct the District Court to take no further action until the Ninth Circuit rules on the appeal of the denial of injunctive relief and dismissal of Gjovik's claims.
- Grant any other relief that the Court deems just and proper.

For the reasons outlined above, Gjovik respectfully asks this Court to grant this motion for intervention and to issue the appropriate orders to stop Apple's harassment and obstruction of justice, as well as refer this matter for further investigation. Gjovik request the court grant this motion in full and issue an order staying all district court proceedings, suspending discovery and protective orders, and restoring the status quo ante as it existed before Gjovik was denied her constitutional rights and subjected to retaliatory litigation tactics.

Apple's legal team has demonstrated a pattern of conduct that undermines the integrity of these proceedings, including withholding discoverable evidence; intimidating and retaliating against whistleblowers; and making misleading representations to the court. These acts, taken together, warrant the Court's exercise of its inherent power to disqualify counsel or impose structural remedies to protect the judicial process. Thank you for your attention to this matter, and I trust that the Court will take the necessary steps to protect the integrity of this litigation.

20

This motion contains twenty pages and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

Dated: May 7 2025

**Ashley M. Gjøvik**
/s/ Ashley M. Gjovik
Pro Se Appellant