**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY GJOVIK**, *an individual*, Plaintiff, v. **APPLE INC**, *a corporation*, Defendant. | **U.S. C.A. Case No. 25-2028** <br><br> **U.S. D.C. Case No. 3:23-CV-04597-EMC** <br><br> **NLRB Case No's 32-CA-284428, 32-CA-282142, 32-CA-283161, & 32-CA-284441** <br><br><br> **MOTION TO QUASH DISCOVERY LETTER & STAY DISCOVERY PENDING APPEAL** <br><br> **Fed. R. Civ. P. Rule 62(d)** <br> **Fed. R. Appl. P. Rule (a)(1)(A)** <br><br><br> <u>HEARING:</u> <br> Dept: Courtroom 5, 17th Floor & Zoom <br> Judge: The Honorable Edward M. Chen <br> Date: Thurs. June 26 2025 <br> Time: 1:30 PM PST |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES — 3 —

INTRODUCTION — 1 —

ARGUMENT — 3 —

I.    THE PENDING APPEAL AND MOTION DIVEST THE DISTRICT COURT OF JURISDICTION  - 3 -

II.   APPLE'S UNLAWFUL ATTEMPT TO COERCE "CONSENT" FROM GJOVIK FOR AN

UNLAWFUL GAG ORDER — 4 —

A.    COERCED FILING TO AVOID CRIMINAL EXPOSURE UNDER 18 U.S.C. §§ 1512 AND 1513    - 5 -

III.  IMPROPER MAGISTRATE REFERRAL AND CONFLICT WITH FEDERAL LAW AND

REFERRAL SCOPE — 6 —

B.    THE DISCOVERY REFERRAL WAS CONDITIONAL AND CONTEXT-SPECIFIC    - 6 -

C.    THE MAGISTRATE JUDGE'S PROCEDURES CONFLICT WITH FRCP AND CONTROLLING LAW    - 6 -

IV.   APPLE'S REQUEST IS SUBSTANTIVE AND DESIGNED TO SUPPRESS LIABILITY AND

RETALIATION EVIDENCE — 8 —

D.    APPLE SEEKS TO USE THE PROTECTED MATERIAL TO JUSTIFY PLAINTIFF'S TERMINATION — WHILE HIDING

IT   - 8 -

E.    THE SAME DOCUMENT IS CORE EVIDENCE SUPPORTING SURVIVING AND APPEALED CLAIMS    - 8 -

F.    THE DOCUMENT IS ALSO EVIDENCE OF POTENTIAL CRIMINAL OBSTRUCTION    - 9 -

G.    APPLE SEEKS TO REIMPOSE TERMS IT WAS ORDERED TO RESCIND IN A FEDERAL SETTLEMENT    - 10 -

V.    PLAINTIFF'S OBJECTIONS WERE TIMELY, PRESERVED, AND LEGALLY SUFFICIENT UNDER

FEDERAL LAW — 10 —

H.    PLAINTIFF OBJECTED IN WRITING AND ON THE RECORD TO APPLE'S REQUEST    - 11 -

I.    PLAINTIFF SUBMITTED A FORMAL RESPONSE IN COMPLIANCE WITH THE RULES    - 11 -

J.    PLAINTIFF PRESERVED OBJECTIONS THROUGH MEET-AND-CONFER AND RULE 26(F) COMPLIANCE    - 12 -

K.    PLAINTIFF COMPLIED WITH LOCAL PROCESS WHILE OBJECTING TO ITS LAWFULNESS    - 12 -

VI.   SYSTEMIC DEFICIENCIES IN THE DISTRICT'S PROTECTIVE ORDER PRACTICES — 13 —

L.    THE DISTRICT'S MODEL PROTECTIVE ORDER IS MISCHARACTERIZED AS A PRESUMPTIVE DEFAULT    - 13 -

M.    STANDING ORDERS AND LOCAL PRACTICE IMPROPERLY LIMIT MOTION PRACTICE    - 14 -

N.    CLARIFICATION AND OVERSIGHT ARE REQUIRED WHERE RIGHTS ARE AT RISK    - 15 -

**VII.    IRREPARABLE HARM AND PUBLIC INTEREST IMPLICATIONS    - 15 -**

O.    MAGISTRATE JUDGE'S PREDISPOSITION MAKES FURTHER HARM INEVITABLE    - 16 -

P.    THE PROTECTIVE ORDER WOULD VIOLATE A BINDING FEDERAL SETTLEMENT AND OBSTRUCT FEDERAL

OVERSIGHT    - 16 -

Q.    THE PUBLIC INTEREST AND SYSTEMIC STAKES ARE PROFOUND    - 17 -

R.    FEDERAL PREEMPTION BARS THE COURT FROM ADJUDICATING NLRA-PROTECTED CONDUCT    - 19 -

S.    APPLE'S REQUEST VIOLATES THE NLRA AND CONSTITUTES AN ONGOING UNFAIR LABOR PRACTICE    - 20 -

**RELIEF REQUESTED    - 21 -**

**CONCLUSION    - 23 -**

**EXHIBITS    - 25 -**

**VIII.    EXHIBIT A    - 26 -**

**IX.    EXHIBIT B    - 27 -**

**X.    EXHIBIT C    - 28 -**

**I.    EXHIBIT D    - 29 -**

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Bank of Nova Scotia v. United States,* 487 U.S. 250, 255 (1988)----------------------------------------- - 16 -

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 887–88 (2009). ------------------------------------- - 18 -

*Frazier v. Heebe*, 482 U.S. 641, 645 (1987) --------------------------------------------------------------- - 18 -

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ------------------------------ - 5 -, - 7 -

*Griggs v. Provident*, 459 U.S. 56, 58 (1982) -------------------------------------------------------------- - 14 -

## US COURT OF APPEALS CASES

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992) -------------------------- - 17 -

*Facebook, Inc. v. Power Ventures, Inc.,* 844 F.3d 1058, 1065–66 (9th Cir. 2016) --------------------- - 15 -

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131–32 (9th Cir. 2003).-------------------- - 10 -

*Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1181–83 (9th Cir. 2006) -------------------- - 17 -

*Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006)------------------- - 10 -

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) -------------------------------------------------------- - 14 -

*Leiva-Perez v. Holder,* 640 F.3d 962, 964–65 (9th Cir. 2011) ---------------------------------------------- 7 -

*Leiva-Perez v. Holder,* 640 F.3d 962, 968 (9th Cir. 2011)----------------------------------------------------- 6 -

*McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir.

    1982)------------------------------------------------------------------------------------------------------------ 7 -

*Natural Resources Defense Council v. Southwest Marine*, 242 F.3d 1163, 1166 (9th Cir. 2001) ------- 6 -

*Natural Resources Defense Council v. Southwest Marine, Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001)- 7 -

*United States v. Heller,* 551 F.3d 1108, 1112 (9th Cir. 2009) ----------------------------------------- - 14 -

*United States v. Vroman,* 997 F.3d 811, 816 (9th Cir. 2021) ------------------------------------------ - 8 -


## U.S. CONSTITUTION

U.S. Constitution First Amendment ------------------------------------------------------------------ - 6 -


## CALIFORNIA CONSTITUTION

California Constitution, Article I, Section 1 ----------------------------------------------------- - 11 -


## U.S. AND STATE STATUTES

18 U.S.C. § 1512(b)(3) ------------------------------------------------------------------------------ - 11 -

**18 U.S.C. §§ 1512 and 1513** ----------------------------------------------------------------------- - 6 -

28 U.S.C. § 2071 ---------------------------------------------------------------------------------- - 17 -

29 U.S.C. § 158 ----------------------------------------------------------------------------------- - 22 -

Cal. Bus. & Prof. Code § 17200 ---------------------------------------------------- - 1 -, - 4 -, - 13 -

Cal. Business & Professions Code § 17200 ------------------------------------------------------- - 10 -

Cal. Labor Code § 1102.5 ------------------------------------------------------- - 1 -, - 5 -, - 10 -, - 11 -

Cal. Labor Code § 232.5 --------------------------------------------------------------------------- - 10 -

Cal. Labor Code §§ 1102.5, 232.5 ---------------------------------------------------------------- - 13 -

Crime Victims' Rights Act ------------------------------------------------------------------ - 11 -, - 26 -

Crime Victims' Rights Act (CVRA) ----------------------------------------------------------- - 5 -, - 22 -

National Labor Relations Act -------------------------------------------------------------------- - 26 -

NLRA -------------------------------------------------------------------------------------------- - 5 -

NLRA Section 8(a)(1) ------------------------------------------------------------------------------ - 22 -

NLRA Section 8(a)(4) -------------------------------------------------------------------------------- - 23 -

Sarbanes-Oxley Act----------------------------------------------------------------------------------- - 11 -

### U.S. AND STATE RULES & REGULATIONS

28 U.S.C. § 1292(a)(1) ------------------------------------------------------------------------- - 1 -, - 3 -

29 C.F.R. § 101.14 ------------------------------------------------------------------ - 19 -, - 22 -, - 23 -

Civil Local Rule 7-2---------------------------------------------------------------------------------- - 25 -

Fed. R. App. P. 8 -------------------------------------------------------------------------------------- - 24 -

Fed. R. Civ. P. 26(c) -------------------------------------------------------------- - 1 -, - 9 -, - 24 -, - 25 -

Fed. R. Civ. P. 26(c)(1) ----------------------------------------------------------------------------- - 14 -

Fed. R. Civ. P. 72(a)------------------------------------------------------------------------ - 12 -, - 13 -

Fed. R. Civ. P. 83(a)(1) ----------------------------------------------------------------------------- - 17 -

Fed. R. Civ. Pro Rule 11----------------------------------------------------------------------------- - 12 -

Fed. R. Civ. Pro. Rule 26(c)------------------------------------------------------------------------- - 18 -

Local Rule 37-1(a) ------------------------------------------------------------------------------------ - 14 -

# INTRODUCTION

1.        Plaintiff Ashley Gjøvik respectfully moves this Court to revoke the referral of discovery disputes to the assigned magistrate judge, recognize the current jurisdictional limitations imposed by Plaintiff's pending appeal and motion for injunction before the Ninth Circuit, and require that any further request by Defendant Apple Inc. for a protective order be presented as a formal motion subject to full briefing and hearing under the Federal Rules of Civil Procedure.

2.        This motion is necessitated by escalating procedural and constitutional conflicts involving Apple's pending request for a protective order. Specifically, Apple seeks to suppress core evidence relevant to Plaintiff's surviving and appealed claims—including retaliation under Cal. Labor Code § 1102.5 and 232, invasion of privacy, and unlawful business practices under Cal. Bus. & Prof. Code § 17200—through an informal joint discovery letter filed with the magistrate judge. Apple's proposed use of this protective order is not a discovery matter under Fed. R. Civ. P. 26(c), but rather a substantive attempt to preemptively define the factual basis for Plaintiff's termination while concealing evidence of retaliatory and potentially unlawful conduct.

3.        This effort proceeds despite the fact that (1) Plaintiff's appeal (*Gjøvik v. Apple, Inc.,* No. 25-2028) is pending before the United States Court of Appeals for the Ninth Circuit; (2) that appeal includes claims for injunctive relief under § 17200, which are appealable as of right under 28 U.S.C. § 1292(a)(1); and (3) Plaintiff's Rule 8 motion for an injunction and stay of proceedings—including discovery—is currently under consideration by the Court of Appeals.

4.        Under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), and reaffirmed by the Ninth Circuit in *Natural Resources Defense Council v. Southwest Marine,* 242 F.3d 1163, 1166 (9th Cir. 2001), the district court is divested of jurisdiction "over those aspects of the

case involved in the appeal." That includes any court action which would prejudge or suppress material at the center of Plaintiff's appellate claims or deprive the Court of Appeals of its full jurisdiction to decide the pending motion. See also *Leiva-Perez v. Holder,* 640 F.3d 962, 968 (9th Cir. 2011) (confirming that Rule 8 motions must be evaluated with full consideration of irreparable harm, likelihood of success, and public interest).

5.      Furthermore, the referral to the magistrate judge for discovery matters (Dkt. 83) was predicated on a judicial understanding—expressly stated during the July 16, 2024 hearing (Dkt. 88)—that the magistrate would work flexibly and equitably with Plaintiff, who proceeds pro se in a case involving novel statutory and public interest claims. That expectation has not been fulfilled. The magistrate judge has:

- Indicated she intends to grant the protective order without formal motion, briefing, or evidentiary showing;
- Denied Plaintiff the right to a hearing, despite qualifying under her own Standing Order ¶ 23 as a young lawyer;
- Treated the model protective order as presumptively appropriate, contrary to Fed. R. Civ. P. 26(c) and Ninth Circuit precedent; and
- Maintained policies that foreclose motion practice, restrict objections to 1.5-page submissions, and limit Plaintiff's ability to preserve error or raise constitutional objections.

6.      These circumstances compel this Court's supervisory intervention to preserve the jurisdictional integrity of the appellate process, ensure compliance with controlling law, and protect Plaintiff's procedural and substantive rights under Rule 26(c), the U.S. Constitution First Amendment, and multiple federal and state whistleblower statutes.

7.      This Court lacks jurisdiction to proceed with adjudication or facilitation of a protective order—particularly one involving evidence directly implicated in Plaintiff's pending

appeal and Rule 8 motion—because appellate jurisdiction has attached under controlling precedent.

# ARGUMENT

## I.   THE PENDING APPEAL AND MOTION DIVEST THE DISTRICT COURT OF JURISDICTION

8.      It is well established that the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). This principle has been consistently applied by the Ninth Circuit in cases where interlocutory appeal is taken under 28 U.S.C. § 1292(a)(1), or where a motion for injunction or stay is pending. See *Natural Resources Defense Council v. Southwest Marine, Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001); *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir. 1982). Here, Plaintiff has:

- Appealed the dismissal of her Cal. Bus. & Prof. Code § 17200 claim, which sought injunctive relief against Apple's unlawful business practices, including retaliation, surveillance, and coercive confidentiality policies;
- Filed a Rule 8 motion with the Ninth Circuit Court of Appeals seeking an injunction and stay of all district court proceedings, including discovery, protective order litigation, and retaliation-facilitating procedural actions;
- Placed the Court of Appeals on notice that the evidentiary material Apple seeks to shield—via protective order—is itself central to the appellate claims.

9.      Plaintiff's Rule 8 motion remains pending and has not been denied. Under *Leiva-Perez v. Holder,* 640 F.3d 962, 964–65 (9th Cir. 2011), the filing of such a motion, when it implicates irreparable harm and public interest (as here), triggers an obligation of restraint by the district court while the appellate court considers the motion. See also *United States v. Vroman,* 997 F.3d 811, 816

(9th Cir. 2021) (district court may not proceed on matters "involved in the appeal").

10. The protective order Apple seeks would impose procedural and legal restraints on Plaintiff's use, reporting, and public reference to precisely the materials she argues are protected under the First Amendment, NLRA, Cal. Labor Code § 1102.5, the Crime Victims' Rights Act (CVRA), and the pending § 17200 claim. The district court is therefore jurisdictionally barred from facilitating Apple's request at this time.

## II. APPLE'S UNLAWFUL ATTEMPT TO COERCE "CONSENT" FROM GJOVIK FOR AN UNLAWFUL GAG ORDER

11. For over a year, Defendant has threatened to pursue a protective order — with or without Plaintiff's consent — in order to reimpose confidentiality provisions already found unlawful in NLRB proceedings. On May 13, 2025, Defendant finalized a joint discovery letter and exhibits and insisted Plaintiff authorize its filing.

12. After Plaintiff provided written authorization — under protest and with express objections preserved — Defendant reversed course and refused to file unless Plaintiff removed language documenting the coercive and retaliatory circumstances under which the filing was negotiated. When Plaintiff refused, Defendant attempted to offload filing responsibility onto Plaintiff, despite having insisted for months that it would file the letter unilaterally.

13. To preserve the record and prevent further procedural manipulation, Plaintiff filed the discovery letter and exhibits as Exhibit D to this Motion to Quash, rather than through the magistrate judge, where the dispute was previously directed. This filing was made not as a consent, but to document the history and context of the protective order request.

14.     Plaintiff does not request that the magistrate judge resolve this issue. To the contrary, Plaintiff requests that the Court quash the prior order to meet and confer and report back on this very issue (Dkt. 181-182), as it improperly delegates decision-making over matters currently subject to appellate jurisdiction and NLRB proceedings. Exhibit D is submitted solely to preserve the factual record, and to illustrate the extent of Defendant's procedural coercion.

## A. COERCED FILING TO AVOID CRIMINAL EXPOSURE UNDER 18 U.S.C. §§ 1512 AND 1513

15.     After Plaintiff-Appellant specifically raised concerns that Defendant's protective order tactics violated 18 U.S.C. §§ 1512 and 1513 — federal laws prohibiting witness tampering and retaliation — defense counsel abruptly reversed course and refused to file the joint discovery letter she had spent the entire day finalizing. Despite insisting for months that she would file over Plaintiff's objections, counsel suddenly demanded that Plaintiff, a *pro se* whistleblower and crime victim, file the unlawful document herself.

16.     This reversal occurred immediately after Plaintiff invoked § 1512–1513 in writing and described how the filing would be used to suppress testimony and retaliate for participation in NLRB and federal whistleblower proceedings. Defendant's counsel evidently recognized that filing the document herself — while certifying it under Rule 11 — would amount to a knowing, retaliatory act against a testifying witness in an official proceeding, and potentially expose counsel to personal criminal liability. Shifting the filing burden to Plaintiff appears to be not just a tactical evasion, but an additional act of coercion aimed at forcing the victim to carry out the act of her own silencing.

17.     This conduct should be considered in evaluating the broader pattern of retaliation surrounding Defendant's misuse of discovery procedures and its efforts to reimpose unlawful work rules through federal court orders.

## III.   IMPROPER MAGISTRATE REFERRAL AND CONFLICT WITH FEDERAL LAW AND REFERRAL SCOPE

### B.   THE DISCOVERY REFERRAL WAS CONDITIONAL AND CONTEXT-SPECIFIC

18.    The referral of discovery matters to Magistrate Judge Kandis A. Westmore (Dkt. 83) was issued by this Court as part of a case management framework that recognized the complexity of this litigation and Plaintiff's pro se status. During the July 16, 2024 hearing, this Court stated on the record that it would direct the magistrate judge to assist Plaintiff with discovery management in a manner responsive to her unique needs and aligned with phased litigation strategy. See Hr'g Tr. Dkt. 88, at 6–8. That referral did not, and could not, authorize:

- Prejudgment of disputed factual matters without briefing;
- Procedural restraints that prevent Plaintiff from preserving error;
- Delegation of dispositive, jurisdictionally sensitive issues related to constitutional rights, public interest claims, and statutory whistleblower protections;
- Or the application of court policies that conflict with the Federal Rules of Civil Procedure or Ninth Circuit precedent.

19.    The current protective order dispute—due to its content, context, and posture—exceeds the scope of a routine discovery matter and exceeds the discretionary authority contemplated by the referral.

### C.   THE MAGISTRATE JUDGE'S PROCEDURES CONFLICT WITH FRCP AND CONTROLLING LAW

20.    Since referral, the magistrate judge has repeatedly declined to permit Plaintiff to file motions or request relief, invoking her Standing Order, which limits discovery disputes to joint letters not to exceed five pages and discourages formal motion practice. See Standing Order ¶¶ 13–

14. While such constraints may be administratively efficient in ordinary commercial litigation, they are legally insufficient where:

- The dispute implicates protected whistleblower disclosures;
- A party seeks to invoke First Amendment rights and report government misconduct;
- The evidence at issue is central to both retaliation claims and a pending appeal.

21. Plaintiff has attempted to raise these issues with the magistrate judge through the limited discovery procedures permitted, including:

- A joint discovery letter,
- A separate objections letter (filed May 2, 2025),
- A formal response to Apple's proposed protective order.

22. Despite these efforts, the magistrate judge has indicated—on the record and in communications—that she intends to grant the protective order without formal briefing, motion, or hearing, and without requiring Apple to make any showing of good cause as required by Fed. R. Civ. P. 26(c).

23. This is procedurally improper. As the Ninth Circuit has held: "A party seeking a protective order must show good cause by demonstrating harm with specificity... Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006). Further, protective orders may not be used to preclude public access to evidence of misconduct, nor may they operate to adjudicate contested legal issues under the guise of discovery. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131–32 (9th Cir. 2003).

24. Additionally, the magistrate's refusal to permit oral argument violates her own Standing Order ¶ 23, which invites young lawyers (within four years of graduation) to argue

motions. As a member of the bar and a 2021 law graduate, Plaintiff qualifies for this protection and has requested a hearing accordingly.

## IV.  APPLE'S REQUEST IS SUBSTANTIVE AND DESIGNED TO SUPPRESS LIABILITY AND RETALIATION EVIDENCE

25.     Apple's proposed protective order is not a legitimate effort to manage confidential discovery material under Fed. R. Civ. P. 26(c). Rather, it constitutes an improper attempt to (1) shield from scrutiny the alleged justification for Plaintiff's termination, (2) suppress Plaintiff's primary evidence in multiple claims, (3) obstruct regulatory oversight and retaliation inquiries, and (4) circumvent a national settlement agreement entered with the federal government

### D.     APPLE SEEKS TO USE THE PROTECTED MATERIAL TO JUSTIFY PLAINTIFF'S TERMINATION — WHILE HIDING IT

26.     During the May 2, 2025 meet-and-confer, Apple identified a single document it seeks to shield under the proposed order—an alleged "consent agreement" that it claims supports its decision to terminate Plaintiff. Apple refuses to produce this document, refusing to even disclose it to Plaintiff, and instead intends to:

- Interrogate Plaintiff about the document under oath;
- Rely on it as a defense in this litigation;
- Shield it from disclosure to the public, the Court, and potentially to regulatory or criminal authorities.

27.     Plaintiff maintains this document is coercive, legally deficient, and inconsistent with labor and civil rights laws. Apple appears to recognize its indefensibility and therefore seeks to hide it through preemptive confidentiality, rather than test it in adversarial litigation.

### E. THE SAME DOCUMENT IS CORE EVIDENCE SUPPORTING

### Surviving and Appealed Claims

28.    This same document constitutes direct evidence supporting Plaintiff's claims for:

- Retaliation under Cal. Labor Code § 1102.5;
- Gag retaliation under Cal. Labor Code § 232.5;
- Invasion of privacy under California Constitution, Article I, Section 1;
- Unlawful practices under Cal. Business & Professions Code § 17200, which is the subject of Plaintiff's appeal.

29.    Granting Apple's protective order without requiring identification or review of the evidence, and without full briefing, would suppress material central to the litigation at both the trial and appellate levels.

### F. The Document Is Also Evidence of Potential Criminal Obstruction

30.    Apple's counsel submitted a different version of the referenced "agreement" to the U.S. Department of Labor during an active federal investigation—claiming it was the operative document. Plaintiff informed counsel in writing that the document submitted was false and asserted this constituted potential fraud. During the May 2 meet-and-confer, Apple's counsel:

- Acknowledged Plaintiff's objection;
- Admitted the wrong document may have been submitted;
- Offered to show the "correct" version now—but only under the condition that it be marked confidential and subject to a protective order.

31.    This arrangement would prevent Plaintiff from:

- Submitting the accurate version of the document to federal regulators;
- Reporting the misrepresentation to enforcement agencies;
- Using the document to support criminal or administrative obstruction complaints.

32.     This directly implicates 18 U.S.C. § 1512(b)(3), which prohibits tampering or retaliation against individuals who report federal crimes, and violates whistleblower protections under the Sarbanes-Oxley Act, Cal. Labor Code § 1102.5, and the Crime Victims' Rights Act.

## G.    APPLE SEEKS TO REIMPOSE TERMS IT WAS ORDERED TO RESCIND IN A FEDERAL SETTLEMENT

33.     In April 2025, Apple entered into a national settlement agreement with the NLRB and the U.S. Government—also involving Plaintiff—wherein Apple:

- Rescinded company-wide confidentiality provisions used to justify the termination at issue in this case;
- Agreed to stop enforcing those same confidentiality rules against current or former employees;
- Acknowledged that enforcement of such terms violated federal labor law.

34.     Apple now seeks to reimpose those confidentiality restrictions through a protective order. It has not disclosed this settlement in its filings, and when Plaintiff sought judicial notice of it, Apple threatened Fed. R. Civ. Pro Rule 11 sanctions, arguing the court should not even review the document. Such conduct demonstrates that the protective order is not being used for discovery purposes, but rather to:

- Undermine binding federal orders;
- Gag Plaintiff from using and discussing evidence of misconduct;
- Prejudice ongoing regulatory processes by removing critical information from public or agency view.

# V.    PLAINTIFF'S OBJECTIONS WERE TIMELY,

## PRESERVED, AND LEGALLY SUFFICIENT UNDER FEDERAL LAW

35.     Plaintiff has repeatedly and explicitly objected to Defendant Apple Inc.'s request for a protective order through proper procedural channels, while complying with both local rules and the magistrate judge's Standing Order to the extent legally possible. These objections were not only timely, but also preserved under Fed. R. Civ. P. 72(a) and the Ninth Circuit's standards for safeguarding due process during discovery and pretrial procedure.

### H.    PLAINTIFF OBJECTED IN WRITING AND ON THE RECORD TO APPLE'S REQUEST

36.     On April 25, 2025, Plaintiff filed a formal letter opposing Apple's proposed protective order, citing:

- The lack of any formal motion under Fed. R. Civ. P. 26(c)(1);
- Apple's refusal to identify specific documents or categories of materials it sought to protect, as required by Standing Order ¶ 20;
- The improper use of confidentiality to restrain statutory speech and whistleblower activity.

37.     This objection meets the standards for procedural preservation set forth in *United States v. Heller,* 551 F.3d 1108, 1112 (9th Cir. 2009), which holds that district courts must allow parties to make meaningful objections when court procedures affect constitutional or statutory rights.

### I. PLAINTIFF SUBMITTED A FORMAL RESPONSE IN COMPLIANCE WITH THE RULES

38.     On May 2, 2025, Plaintiff filed a detailed formal written response opposing the protective order, citing:

- The improper invocation of Rule 26(c) for a document Apple seeks to weaponize against

Plaintiff while shielding it from scrutiny;

- The overlap between the confidential material and Plaintiff's surviving claims under Cal. Labor Code §§ 1102.5, 232.5, and Cal. Bus. & Prof. Code § 17200;

- The pending Ninth Circuit appeal and related Rule 8 motion divesting the district court of jurisdiction under *Griggs v. Provident*, 459 U.S. 56, 58 (1982), and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).

39.    This satisfies the notice and preservation standard under Fed. R. Civ. P. 72(a) and Local Rule 72-2, which permit a district judge to review a magistrate's order "where the interests of justice so require.

## J. Plaintiff Preserved Objections Through Meet-and-Confer and Rule 26(f) Compliance

40.    Plaintiff also raised the same objections:

- During the March 25 and May 2 meet-and-confer sessions,
- In follow-up emails and letter briefing,
- On the record through attached transcripts and supporting declarations.

41.    These communications satisfy the good faith conference requirement of Fed. R. Civ. P. 26(c)(1) and Local Rule 37-1(a). The Ninth Circuit has emphasized that a party is not required to repeat objections through a duplicative procedural form if their substance is already preserved in written and verbal record. See *Facebook, Inc. v. Power Ventures, Inc.,* 844 F.3d 1058, 1065–66 (9th Cir. 2016).

## K.    Plaintiff Complied with Local Process While Objecting to Its Lawfulness

42.    Despite the procedural limitations of Magistrate Judge Westmore's Standing Order [Exhibit D], which:

- Limits objections to 1.5-page joint letter briefs (¶14),
- Discourages briefing or motion practice for protective orders (¶13),

- And treats the Model Protective Order as presumptively appropriate (¶12),

43.    Plaintiff fully participated in all permitted discovery channels and requested oral argument pursuant to Standing Order ¶23, which invites "young lawyers" to present arguments in open court. As a 2021 graduate and member of the bar, Plaintiff qualifies under this provision and invoked this opportunity in writing.

44.    Where district court procedures threaten to curtail constitutional and statutory rights, courts must not elevate form over substance. See *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255 (1988). Plaintiff has met every legal and procedural threshold to preserve objections and deserves full review on the merits.

## VI.    SYSTEMIC DEFICIENCIES IN THE DISTRICT'S PROTECTIVE ORDER PRACTICES

45.    While this motion arises in the context of a specific protective order dispute, Plaintiff respectfully notes that the procedural deficiencies encountered here appear to reflect broader systemic ambiguity within the Northern District of California regarding the legal standard and process for entering protective orders—particularly where they implicate constitutional rights, whistleblower protections, or pending appeals.

### L. The District's Model Protective Order Is Mischaracterized as a Presumptive Default

46.    The District's publicly available Model Stipulated Protective Order for Standard Litigation offers no warning that protective orders are disfavored under federal law, nor that courts must independently assess whether good cause exists before entry. The document is titled for use in "standard litigation," without defining that term or advising that:

- The Federal Rules of Civil Procedure do not authorize blanket protective

orders;

- The burden remains on the requesting party to demonstrate good cause for each document or category of information;
- The Court must balance any claimed harm against the First Amendment, public interest, and discovery fairness.

47.    This institutional framing risks inconsistent application and conflicts with controlling Ninth Circuit authority, which has emphasized that protective orders are not automatic and cannot be used to shield public interest litigation from scrutiny.

48.    A stipulated protective order is not automatically valid. A court must independently determine whether 'good cause' exists under Rule 26(c). *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992). A court may not rubber-stamp an agreed-upon confidentiality order where statutory or constitutional rights are implicated. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1181–83 (9th Cir. 2006).

## M.    Standing Orders and Local Practice Improperly Limit Motion Practice

49.    Multiple magistrate judges in this District—including the assigned magistrate judge in this case—maintain standing orders that:

- Restrict discovery disputes to 5-page joint letter briefs with no independent briefing permitted;
- Limit or outright bar formal motion practice under Fed. R. Civ. P. 26(c);
- Encourage stipulated protective orders without indicating that such stipulations must comply with federal law;
- Fail to provide procedural exceptions for pro se litigants, whistleblower disputes, or cases with concurrent appellate review.

50.    These policies, while perhaps administratively convenient, are not law and cannot

override binding federal rules. Under 28 U.S.C. § 2071 and Fed. R. Civ. P. 83(a)(1), district court procedures must not conflict with Acts of Congress or the Federal Rules, and they must "preserve the substantive rights of the parties."

51.     Even a facially neutral local rule cannot abridge rights guaranteed by the Federal Rules or Constitution. *Frazier v. Heebe*, 482 U.S. 641, 645 (1987). Court policy cannot operate to silence constitutional claims or restrict judicial access when protected disclosures are at issue. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 887–88 (2009).

## N.     Clarification and Oversight Are Required Where Rights Are at Risk

52.     This case does not involve a standard discovery squabble over commercial terms or trade secrets. It involves:

- Protected disclosures under whistleblower statutes,
- Alleged misconduct by corporate counsel,
- Core First Amendment rights to speak publicly about regulatory cooperation and retaliation,
- A live Rule 8 motion in the Court of Appeals,
- And an attempted protective order to reimpose gag restrictions recently invalidated by federal settlement.

53.     The public interest and constitutional complexity of this case warrant judicial clarification and supervisory review, not summary resolution under local standing policy.

# VII.   IRREPARABLE HARM AND PUBLIC INTEREST IMPLICATIONS

54.     The harm Plaintiff faces from the proposed protective order is not speculative or remote — it is imminent, irreparable, and national in consequence. The protective order Apple seeks is not theoretical or tentative — the magistrate judge has already stated on the record that

she intends to grant it, regardless of Plaintiff's objections or the absence of a formal motion, briefing, or evidentiary record. Under these conditions, Plaintiff faces imminent and irreparable harm, and waiting for further action by the magistrate would only confirm that harm rather than prevent it.

## O.    Magistrate Judge's Predisposition Makes Further Harm Inevitable

55.    The assigned magistrate judge has already stated, on the record, that she intends to grant Apple's protective order regardless of Plaintiff's objections, without requiring briefing, a motion, or identification of what materials Apple seeks to protect. In this posture, Plaintiff is not being given a fair opportunity to contest the order under Fed. R. Civ. Pro. Rule 26(c) or to be heard in accordance with due process.

56.    Waiting for the protective order to issue would only confirm that irreparable harm has already occurred. This posture directly implicates First Amendment rights, federal whistleblower protections, and ongoing regulatory processes, including active proceedings involving the Department of Labor and National Labor Relations Board (NLRB).

## P. The Protective Order Would Violate a Binding Federal Settlement and Obstruct Federal Oversight

57.    The order, as Apple proposes and the magistrate appears prepared to adopt, would facially violate Apple's April 2025 trilateral national settlement agreement with the NLRB and U.S. government, entered into after a federal enforcement proceeding and submitted into this record at Dkt. 203. That agreement required Apple to: "Rescind any employment policy, practice, rule, provision, or agreement that prohibits, or would reasonably be interpreted to prohibit, employees from discussing or disclosing information related to their employment... including information

about workplace investigations, discipline, terms or conditions of employment, and communications with government agencies." (*Dkt. 203, Ex. B, at 3–4*)

58.    Plaintiff is a named party in that federal agreement and continues to serve as a representative whistleblower in matters monitored by the U.S. Department of Labor and the NLRB. Under 29 C.F.R. § 101.14, enforcement of NLRB settlements lies squarely with U.S. District Courts. If this Court issues a protective order that knowingly restricts speech or evidentiary access on matters Apple was federally ordered not to conceal, it would risk:

- Violating the NLRB order itself;
- Undermining federal labor policy;
- And enabling Apple to do indirectly (via the court) what it agreed not to do directly.

59.    Plaintiff is not merely a beneficiary of the NLRB settlement — she is the Charging Party, and the employee representative named in the April 2025 national agreement. The Agreement was entered not only for her protection, but for the benefit of all current and former employees affected by Apple's now-rescinded confidentiality policies.

## Q.    THE PUBLIC INTEREST AND SYSTEMIC STAKES ARE PROFOUND

60.    This case involves not just retaliation against an individual whistleblower, but an attempt by one of the world's largest corporations to use judicial process to circumvent a federal settlement affecting hundreds of thousands of employees. Plaintiff's disclosures — including evidence of invasive surveillance, coercive "consent" agreements, and wrongful termination for whistleblowing — are matters of national concern, subject to active federal scrutiny.

61.    Any protective order that covers this conduct, if entered over Plaintiff's objection and without jurisdiction, would:

- Suppress evidence necessary to regulatory enforcement;

- Enable a chilling effect on future disclosures;
- And reinforce a litigation strategy of sealing misconduct through procedural shortcuts.

62.     This Court has both the authority and responsibility to ensure it does not issue orders that conflict with federal enforcement priorities, retaliate against protected disclosures, or erode whistleblower protections embedded in law and federal policy.

63.     Plaintiff is not merely a pro se litigant — she is a party to a federal whistleblower and civil rights case concerning:

- Workplace surveillance,
- Coerced nondisclosure agreements,
- Retaliatory termination for regulatory cooperation,
- And evidence tampering or obstruction of justice by opposing counsel.

64.     These issues are not only the subject of surviving claims in this Court, but also the foundation of a pending appeal in which Plaintiff seeks injunctive relief on behalf of herself and a class of similarly situated employees.

65.     Indeed, Apple's proposed use of a protective order in this context would not just silence a party to litigation — it would have far-reaching implications for the enforcement of national labor and confidentiality policy. Plaintiff is a named party in the April 2025 national NLRB settlement agreement, in which Apple agreed to:

- Rescind its illegal confidentiality provisions,
- Stop enforcing retaliatory speech restrictions,
- And cease termination practices based on protected disclosures.

66.     "This matter involves not only individual retaliation, but an attempt by a large employer to use federal litigation procedures to restore policies previously found unlawful under

federal labor law. Plaintiff is the named Charging Party in a national settlement affecting Apple's entire U.S. workforce. If the Court permits those policies to re-enter through protective order, it would not only harm Plaintiff but risk systemic noncompliance with an active NLRB resolution, threatening the Board's remedial efficacy and enforcement credibility.

## R.     Federal Preemption Bars the Court from Adjudicating NLRA-Protected Conduct

67.     Under the doctrine of *Garmon* preemption, federal courts lack jurisdiction over matters that are "arguably protected or prohibited" by the National Labor Relations Act. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

68.     Here, Apple's proposed protective order would regulate and suppress speech:

- About the same termination rationale the NLRB has already taken enforcement action against;

- Involving the same documents addressed by a formal Board complaint (32-CA-282142);

- And covered by a binding national settlement agreement.

69.     The Court therefore lacks jurisdiction to grant a protective order that would functionally interfere with an active Board proceeding, suppress testimony and evidence under NLRB subpoena, and contradict a settlement enforced under 29 C.F.R. § 101.14. This issue is not merely procedural; it implicates exclusive federal enforcement jurisdiction. As detailed further below the protective order would directly violate Apple's April 2025 settlement with the NLRB, which bars enforcement of confidentiality rules that suppress protected speech or cooperation with government agencies.

70.     The First Amendment, the NLRA, and the Crime Victims' Rights Act (CVRA) all prohibit the Court from functioning as a mechanism for enforced silence in retaliation for reporting

unlawful conduct. The risk to the broader system of labor and regulatory protection cannot be overstated.

## S. Apple's Request Violates the NLRA and Constitutes an Ongoing Unfair Labor Practice

71.      In addition to its constitutional and whistleblower implications, Apple's request for a protective order and the manner in which it has prosecuted that request violate the National Labor Relations Act. Plaintiff will file a new unfair labor practice charge with the National Labor Relations Board asserting that Apple's conduct constitutes a violation of Section 8(a)(1) and Section 8(a)(4) of the NLRA, 29 U.S.C. § 158.

72.      NLRA Section 8(a)(1) prohibits an employer from interfering with, restraining, or coercing employees in the exercise of rights guaranteed under Section 7, including the right to speak freely about working conditions, internal investigations, and misconduct. The protective order Apple seeks would prohibit Plaintiff—herself a named party in a federal labor settlement—from publicly discussing the basis for her termination, Apple's surveillance practices, and evidence of retaliation, all of which fall within the scope of Section 7. Use of court process to accomplish such restraints amounts to a de facto gag clause in violation of federal labor law.

73.      Moreover, under NLRA Section 8(a)(4), it is unlawful to retaliate against an individual for filing a charge or giving testimony under the NLRA. Apple's recent threats of Rule 11 sanctions in response to Plaintiff's attempt to submit the NLRB's April 2025 national settlement agreement into the record (Dkt. 194, 201) were designed to deter protected activity and suppress disclosure of Apple's legal obligations under that very agreement. These threats—combined with Apple's request to now seal the same subject matter—constitute a textbook violation of 8(a)(4) and implicate the Court's duty to avoid facilitating retaliatory enforcement mechanisms.

74.    Finally, the protective order as requested would facially violate the April 2025 NLRB settlement agreement (Dkt. 203), which prohibits Apple from "promulgating or enforcing any agreement that prohibits employees from discussing workplace conditions or cooperating with government agencies." If the Court issues a protective order covering exactly that category of speech, knowing Plaintiff is a party to the federal agreement, it risks undermining the enforcement structure of the NLRB and violating 29 C.F.R. § 101.14, which places enforcement responsibility with the U.S. District Courts.

75.    For all these reasons, the protective order now at issue carries not only personal constitutional and statutory consequences, but also structural implications for federal labor enforcement and national public policy. The harm is not merely to Plaintiff — it is to the system of labor rights and whistleblower protections this Court is entrusted to uphold.

# RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1.    Acknowledge the jurisdictional limits imposed by the pending appeal in *Gjøvik v. Apple, Inc.*, No. 25-2028, and the concurrently pending Rule 8 motion for injunction and stay, which divests this Court of authority over matters involving the disputed protective order, especially where the subject matter directly overlaps with appellate claims and constitutional rights.

2.    Suspend or revoke the existing referral of discovery matters to Magistrate Judge Kandis A. Westmore with respect to the proposed protective order, or any procedural ruling that:

    o    Limits Plaintiff's access to briefing or hearing;

- o Invokes discovery policy to foreclose constitutional or statutory defenses;
- o Prejudices the Court of Appeals' ability to evaluate the pending motion under Fed. R. App. P. 8.

3. Stay Apple's current joint discovery letter request for a protective order (Exhibit D) as procedurally improper, jurisdictionally defective, and incompatible with Fed. R. Civ. P. 26(c), Ninth Circuit precedent, and due process protections.

4. Order that any request for a protective order by Apple be submitted via a formal, noticed motion to this Court, not the magistrate judge, and that such a motion must:

- o Identify with specificity the documents Apple seeks to protect;
- o Demonstrate, by declaration, the factual basis for the claimed harm or need for confidentiality;
- o Be subject to full briefing under Civil Local Rule 7-2 and Fed. R. Civ. P. 26(c);
- o Permit oral argument if requested, especially under Standing Order ¶ 23 for eligible young lawyers, which includes the Plaintiff-Appellant (Santa Clara Law Class of 2022).

5. Retain jurisdiction over any future motion for protective order, or in the alternative, instruct the magistrate judge to refrain from ruling on any such motion or joint letter while appellate jurisdiction remains active.

76.    Plaintiff respectfully submits that the public interest, statutory protections for whistleblowers, and the constitutional guarantee of due process weigh strongly in favor of judicial oversight and procedural transparency in this context.

77.    Plaintiff explicitly preserves her objections under:

- The First Amendment (compelled silence, prior restraint),

- The Due Process Clause (procedural denial of hearing),

- The Separation of Powers Doctrine, where judicial process is used to override the jurisdiction of an independent federal agency,

- All other relevant statutory, constitutional, and common law -- rights, privileges, and authorities.

78.    No waiver of rights, arguments, or agency coordination is intended or implied by Plaintiff's participation in this motion. These objections are preserved for all purposes, including appeal and collateral proceedings.

# CONCLUSION

79.    Apple intends to ask this court to enter an order that would suppress protected disclosures, obstruct ongoing regulatory oversight, and enable the reimplementation of policies Apple was federally ordered to abandon—all while jurisdiction over these matters rests with the United States Court of Appeals for the Ninth Circuit. Apple's request for a protective order is not a routine discovery measure. It is a substantive, retaliatory act that seeks to weaponize court process to constrain speech, hide evidence of misconduct, and nullify binding federal labor agreements.

80.    Plaintiff has repeatedly objected through every available procedural channel. The magistrate judge's stated intent to approve the order without briefing or a hearing only compounds the urgency. The First Amendment, the National Labor Relations Act, the Crime Victims' Rights Act, and multiple whistleblower statutes prohibit the use of litigation as a tool of silence and intimidation. This is not merely a procedural infraction—it is an ongoing constitutional and regulatory breach.

81.    Because the disputed evidence is central to Plaintiff's pending appeal and Rule 8 injunction request, and because Apple seeks to shield it while relying on it for its defense, the

district court is jurisdictionally barred from facilitating or adjudicating the protective order request. *Griggs*, *Southwest Marine*, and *Leiva-Perez* require deference to the appellate court's jurisdiction during pendency of such motions.

82.    In light of these extraordinary circumstances, Plaintiff respectfully requests that this Court intervene to prevent irreparable harm, ensure procedural integrity, and preserve the jurisdictional authority of the Ninth Circuit during the pendency of Plaintiff's appeal and Rule 8 motion. Any action taken in this moment will have consequences far beyond this case—potentially affecting not only Plaintiff's rights, but the rights of hundreds of thousands of employees nationwide who rely on public court access, regulatory enforcement, and judicial integrity to protect them from unlawful retaliation.

**Dated: May 13 2025**

_____

**/s/ Ashley M. Gjovik**

***Pro Se Plaintiff***

# EXHIBITS

| Exhibit | Title |
|---------|-------|
| Exhibit A | NLRB Charge No. (May 13 2025 ) |
| Exhibit B | NLRB Charge Cover Letter (May 13 2025) |
| Exhibit C | May 13 2025 Emails |
| Exhibit D | Defendant's proposed Discovery Letter filing |

# VIII.   EXHIBIT A

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br><br>Apple Inc | | b. Tel. No.<br>(408) 996-1010 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>One Apple Park Way<br><br>CA Cupertino, 95014 | e. Employer Representative<br><br>Tim Cook<br>Chief Executive Officer | g. e-mail<br>tcook@apple.com |
| | | h. Number of workers employed<br>200 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Computer Hardware | j. Identify principal product or service | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 1,4                                                    of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Ashley Marie Gjovik

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>2108 N St. Ste. 4553<br>CA Sacramento 95816 | 4b. Tel. No.<br>(415) 964-6272 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-mail<br>ashleymgjovik@protonmail.com |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief. | Tel. No.<br>(415) 964-6272 |
|---|---|
| *(signature of representative or person making charge)*          Ashley Marie Gjovik<br><br>          *(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | Fax No. |
| Address   2108 N St. Ste. 4553<br>Sacramento CA 95816          Date 05/13/2025 07:59:53 PM | e-mail<br>ashleymgjovik@protonmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of federal court sanctions | |
| Ashley Gjovik | Threat of gag order | |
| Ashley Gjovik | Threats of unspecific reprisals | |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of federal court sanctions | |
| Ashley Gjovik | Threat of gag order | |
| Ashley Gjovik | Threats of unspecific reprisals | |

**8(a)(4)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) filed charges or cooperated with the NLRB.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Ashley Gjovik | Threat of federal court sanctions | |
| Ashley Gjovik | Threat of gag order | |
| Ashley Gjovik | Threats of unspecific reprisals | |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from forming, joining, or supporting a labor organization.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from contacting and/or filing

charges with the National Labor Relations Board.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from engaging in protected concerted activities.

| Work Rule |
| --- |
| Informed Consent Agreements are secret |
| Workplace personal data collection is secret |
| Workplace contracts are secret |
| Can discipline due to privacy invasion complaints |
| Surveillance photos & videos of worker are secret |
| Can fire workers for reporting legal violations |
| Can fire workers for speaking with the press |
| Can fire workers for posting on social media |
| Workers cannot talk about NLRB settlement |
| Workers cannot reference NLRB settlement in court |
| Worker cannot report violations of NLRB settlement |
| Employer use of AI on workers is secret |
| Employer can unilaterally expand scope of NDAs |
| Employer experiments on workers is secret |
| Taking photos of worker in bathroom is secret |
| Taking photos of worker in bed is secret |
| Taking photos of worker naked is secret |
| Worker consent cannot be revoked |
| Surveillance practices are secret |
| Worker biometric data collection is secret |
| Employee must notify employer before testifying |
| Workers must notify Apple before contacting gov |
| Workers cannot retain evidence of NLRA violations |
| Workers may not use generative AI for legal filing |
| Workers cannot discuss retaliation lawsuits |
| Workers may not dispute Apple's public statements |
| Workers cannot testify on ULPs in legal proceeding |

## Additional Information in Support of Charge

**Charging Party Name :** Ashley Marie Gjovik
**Inquiry Number :** 1-3656577121
**Date Submitted :** 05/13/2025 07:59:53 PM

Please provide a brief description of the specific conduct involved in your charge. The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed. After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

**Additional Information Provided:**
Since December 2024, Apple has retaliated against me for participating in NLRB proceedings and exercising Section 7 rights. This includes seeking a federal court protective order to suppress testimony and evidence central to Case No. 32-CA-282142.

Apple has threatened Rule 11 sanctions for referencing the NLRB settlement in court. It has attempted to reinstate policies rescinded in Case 32-CA-284428. It has pressured me to accept an unlawful confidentiality policy and asked the court to enforce that policy. It has repeatedly stated it fired me for violating policies already found unlawful by the NLRB. It has attempted to obtain a gag order on my testimony in Board proceedings and has used court filings to suppress NLRB-related evidence.

Apple has also demanded copies of my confidential reports to the DOJ, SEC, and EPA, and requested privileged emails with my legal counsel related to those reports. These actions constitute retaliation for protected conduct and interference with Board proceedings.

Apple's conduct violates Sections 8(a)(1) and 8(a)(4) of the Act. Its efforts chill employee willingness to engage in protected activity, silence testimony, and undermine enforcement of a national NLRB settlement.

I am the Charging Party in both the ongoing complaint and the April 2025 national settlement. Apple's actions interfere with my role as employee representative under that agreement and threaten the Board's remedial authority by using court process to reimpose gag rules and suppress protected testimony.

A cover letter is attached with additional facts and legal detail. I request a new charge be docketed under 8(a)(1) and 8(a)(4), and that Region 21 investigate Apple's retaliation and unlawful litigation tactics.

# IX.   EXHIBIT B

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# The United States
# National Labor relations Board

<table>
<tr><td>

**Ashley M. Gjovik,**
*an individual,*


      Charging Party,


  & 


**Apple Inc.,**
*a corporation,*


      Charged Party.

</td><td>

**Charge No.**

**Charging Party's
New Charge
Cover Letter**


**May 13 2025**

</td></tr>
</table>

# TABLE OF CONTENTS

**COMPLAINT SUMMARY** ....................................................... **3**

I.  Ongoing Interference with Section 7 Rights and Retaliation for Board Participation............................................................................3

II.  Background ........................................................................4

III.  Ongoing Pattern of Unlawful Interference ...........................5

IV.  Jurisdictional Encroachment and *Garmon* Preemption .............6

V.  Suppression of Testimony and Interference with Material Evidence in Board Proceedings .......................................................................7

VI.  Violations of the NLRA .......................................................9

   A.  Violation of Section 8(a)(1): Interference with Section 7 Rights  10

   B.  Violation of Section 8(a)(4): Retaliation for Participation in Board Proceedings ..................................................................11

   C.  Legal Violations and Precedent ..........................................11

   D.  Failure to Enforce the National Settlement and Protect Covered Employees ...................................................................... 13

**IV. REQUESTED RELIEF** .......................................................**13**

# Charging Party's Unfair Labor Practice Charge Cover Letter

*Violation of Board Settlement Agreement, NLRB Case 32-CA-284428*

*New Violations of Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act*

# Complaint Summary

## I. Ongoing Interference with Section 7 Rights and Retaliation for Board Participation

1.      To Whom It May Concern: I am filing this unfair labor practice charge against Apple Inc. under Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act (29 U.S.C. § 158). The conduct at issue arises from Apple's efforts to suppress and retaliate against protected activity through ongoing federal court litigation, including a recent attempt to obtain a judicial protective order that would functionally reimpose the same overbroad confidentiality provisions the Board previously found unlawful.

2.      This behavior violates both the April 2025 national NLRB settlement agreement between Apple and the Board in *Case 32-CA-284428*, and the Board's formal complaint against Apple in *Case 32-CA-282142*, which alleges that Apple unlawfully discharged me for engaging in protected activity, threatened me with discipline and enforcement of unlawful confidentiality terms, and maintained rules restricting Section 7 communications.

3.      I write to formally request that Region 21 issue a new and supplemental unfair labor practice (ULP) complaint against Apple Inc. for fresh and ongoing violations of Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act (NLRA). These violations stem from Apple's non-compliance with the April 4, 2025 settlement agreement in Case No. 32-CA-284428, as well as retaliatory litigation tactics employed immediately after that agreement's execution. My request is supported by:

- My Memorandum of Concerns About Non-Compliance, submitted to the Region on April 14, 2025;
- My Statement of Joinder & Reservation of Rights, filed April 3, 2025;
- The NLRB-Approved Informal Settlement Agreement and associated Notice to Employees;

- Documentary evidence including Apple's civil filings (e.g., Dkt 199–201 in *Gjovik v. Apple*, N.D. Cal. 3:23-cv-04597) and Apple counsel's sanction threats.
- A forthcoming Position Statement.

4.    Apple's current litigation tactics — including attempts to designate its termination rationale and underlying documents as confidential — mirror and escalate the very conduct previously challenged by the Board. These efforts chill protected speech, retaliate for prior NLRB cooperation, and seek to restore voided contractual terms under a new judicial mechanism.

## II. BACKGROUND

5.    In 2021, I filed multiple charges with the Board against Apple Inc. concerning its maintenance and enforcement of unlawful confidentiality and surveillance policies, as well as its retaliatory suspension and eventual termination of my employment. In response, the NLRB issued a consolidated complaint in *Case No. 32-CA-282142*, alleging violations of Section 8(a)(1), including unlawful discharge, threats, coercion, and maintenance of workplace rules that unlawfully restricted protected activity. The Board is currently prosecuting these allegations.

6.    In April 2025, Apple entered into a national settlement agreement in *Case No. 32-CA-284428* under Board supervision. As part of that agreement, Apple formally rescinded and agreed to no longer enforce multiple unlawful confidentiality and speech restrictions, including provisions in its Confidentiality and Intellectual Property Agreement (IPA), Business Conduct Policy, and related workplace rules. Apple acknowledged in the Notice to Employees that it "will not maintain or enforce any rule that prohibits employees from discussing or disclosing information about their terms and conditions of employment."

7.    Despite these proceedings and commitments, Apple is now seeking a protective order in federal court (*Gjøvik v. Apple Inc.*, No. 3:23-cv-04597, N.D. Cal.) to suppress evidence and communications that fall squarely within the protections of Section 7. During a court-ordered meet-and-confer on May 2, 2025, Apple's counsel confirmed that the company seeks to designate as confidential:

- Documents relating to the purported "consent" form that Apple claims justifies

my termination;

- Internal investigative or privacy-related policies;
- Evidence already disclosed in government filings or referenced in protected disclosures.

8.    Apple has refused to identify the specific documents it seeks to shield, while simultaneously claiming the right to question me under oath about those same materials — all while preventing me from sharing or reporting the content. This is not legitimate discovery conduct. It is a retaliatory attempt to silence a whistleblower by judicial proxy.

## III.  ONGOING PATTERN OF UNLAWFUL INTERFERENCE

9.    Apple's conduct, both historical and current, falls within a continuous pattern of unlawful interference with protected activity under the National Labor Relations Act. The Board has already intervened on two separate tracks:

A. In Case 32-CA-282142, the Board issued a consolidated complaint alleging that Apple:

- o  Unlawfully suspended and discharged me for engaging in NLRA-protected activity;
- o  Threatened me with discipline and enforcement of overbroad workplace rules;
- o  Maintained and applied policies in a manner that "interfered with, restrained, and coerced employees in the exercise of their Section 7 rights."

B. In Case 32-CA-284428, the Board obtained a national settlement agreement requiring between Apple, myself, and U.S. gov. requiring Apple to:

- o  Rescind specific provisions of its Confidentiality and Intellectual Property Agreement (IPA), Business Conduct Policy, and other internal rules;
- o  Cease and desist from enforcing any rule that could reasonably be construed to prohibit employees from discussing workplace concerns or reporting to government agencies;
- o  Publicly post a Notice acknowledging its prior violations and committing to comply with Section 7 rights moving forward.

10.    Notwithstanding this settlement and the Board's pending prosecution, Apple has

now requested a judicial protective order in *Gjovik v. Apple*, No. 3:23-cv-04597 (N.D. Cal.), which seeks to:

- Designate as confidential documents central to its defense that I was "terminated because she leaked confidential Apple information on social media and to the press" (Joint Discovery Letter, May 13, 2025, at 2);

- Prevent me from discussing or referencing those documents publicly, including in proceedings before the NLRB;

- Bar me from using deposition testimony or evidence in *Case 32-CA-282142*—where Apple's stated termination rationale is already the subject of federal charges.

11.    These actions, if permitted, would result in the judicial reenforcement of confidentiality provisions that Apple has been federally barred from enforcing. They would also functionally gag a charging party from presenting or defending protected disclosures in an NLRB hearing, despite prior Board findings that those disclosures form the basis of unlawful retaliation.

12.    Such conduct is incompatible with the Board's remedial authority, undermines the statutory protections guaranteed by Sections 7 and 8, and constitutes an attempt to restore illegal policies through an alternative adjudicative forum.

## IV. Jurisdictional Encroachment and *Garmon* Preemption

13.    Apple's litigation conduct, in addition to being retaliatory and coercive, directly conflicts with the doctrine of federal labor preemption established in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). Under *Garmon*, when an activity is "arguably protected or prohibited" under the NLRA, state and federal courts lack jurisdiction to adjudicate it. This includes matters that:

- Fall within the Board's exclusive enforcement discretion;

- Are actively under NLRB prosecution, including the basis for an employee's termination;

- Involve conduct that the NLRB has already regulated through settlement or complaint.

14.    Here, the termination rationale Apple seeks to shield through a court protective order — disclosure of internal policies and "consent agreements" — is central to the NLRB's pending complaint in Case 32-CA-282142. By attempting to silence discussion of that subject matter, Apple seeks to use federal court process to preempt the Board's jurisdiction, violating long-standing labor preemption doctrine.

15.    Accordingly, I object to any adjudication or limitation of speech or evidence relating to my termination or protected disclosures in any non-NLRB forum. The National Labor Relations Board retains primary jurisdiction over these issues, and any overlapping discovery or evidentiary orders from federal or state courts would impermissibly intrude upon the Board's exclusive remedial authority. See *NLRB v. Nash-Finch Co.*, 404 U.S. 138 (1971).

16.    I formally preserve my objection to subject-matter jurisdiction in civil court over matters now pending before the Board, and assert that Apple's requested relief in the Northern District of California constitutes impermissible forum shopping and nullification of the Board's mandate.

## V.  Suppression of Testimony and Interference with Material Evidence in Board Proceedings

17.    Apple's misconduct has now escalated beyond general retaliation and entered the territory of material obstruction of a pending federal enforcement proceeding.

18.    On May 13, 2025, Apple filed a joint discovery letter with the U.S. District Court for the Northern District of California explicitly requesting a blanket protective order that would:

- Designate as confidential the very documents and rationale Apple claims justified my termination—namely, my refusal to sign or adhere to an internal "Informed Consent Agreement" and related privacy policies;

- Suppress public or regulatory disclosure of those materials, even though they are already cited in NLRB complaints and referenced in protected disclosures to the EPA, DOJ, and SEC;

- Prevent me from testifying or introducing these materials as evidence in Case 32-CA-282142—despite the Board having explicitly charged Apple with unlawful retaliation based on this termination rationale.

19.   This conduct is not hypothetical. Apple has:

- Demanded production of sealed whistleblower evidence related to active federal investigations;

- Attempted to override privilege and retaliation protections under the guise of a civil protective order;

- Misrepresented the content of sealed declarations to falsely infer wrongdoing and compel judicial silence.

20.   This is an attempt to gag a charging party's testimony about facts that are themselves under NLRB prosecution, in direct conflict with the Board's complaint and April 2025 settlement in Case 32-CA-284428.

21.   It is tantamount to a private actor asking a federal court to nullify a federal labor order — a move that both violates *Garmon* preemption and functions as witness tampering under 18 U.S.C. § 1512, as well as a potential violation of whistleblower protection laws enforced by OSHA and the SEC.

22.   Apple's request, if granted, would prevent me from:

- Complying with Board subpoenas or deposition questions;

- Cross-examining Apple witnesses using relevant documents;

- Responding publicly to ongoing retaliation or misrepresentations;

- Exercising basic rights of due process in agency proceedings.

23.   This conduct not only violates Sections 8(a)(1) and 8(a)(4), but also directly interferes with the administration of federal labor law by suppressing key evidence and chilling the participation of others.

24.   Additionally, Apple's suppression efforts would impair my participation in federal whistleblower investigations, including those under the:

- Toxic Substances Control Act (TSCA) and Clean Air Act, enforced by the U.S. EPA;

- Sarbanes-Oxley Act and Dodd-Frank, enforced by the U.S. SEC;

- Criminal investigation opened by the DOJ and FBI in 2024–2025 concerning related misconduct.

25.   Apple's proposed protective order would interfere with my ability to comply with

federal subpoenas, testify in proceedings protected under 18 U.S.C. § 1514, and would risk violating the Whistleblower Protection Enhancement Act, OSHA 11(c), and other anti-retaliation laws. These implications must be reviewed in parallel with the Board's jurisdiction and cannot be waived or preempted by civil court procedure.

## VI. Violations of the NLRA

26. Apple's ongoing conduct violates both the substantive protections of Section 7 and the prohibitions against retaliation and coercive litigation tactics under Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act.

27. Pursuant to Casehandling Manual § 10158.3 and applicable precedent including *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731 (1983); *Stericycle, Inc.*, 372 NLRB No. 113 (2023); and *Sears, Roebuck & Co.*, 307 NLRB 385 (1992), I allege the following conduct constitutes new, discrete unfair labor practices:

- On or about April 8–13, 2025, Apple and its counsel filed federal court briefs (Dkts 199–201) asserting I committed "AI-generated hallucinations," requesting judicial sanctions (Rule 11), and demanding exclusion of the NLRB Agreement from evidence.

- Apple then reiterated those threats by email (Exhibit F-2, April 13) even after being reminded this was protected § 7/§ 8(a)(4) activity.

- These threats chill the exercise of rights explicitly affirmed in the Agreement and violate the "No-Threat" clause (¶ 4(c)), as well as the Board's holdings in Pacific Beach Hotel, 356 NLRB 1397 (2011) and Component Sys., 318 NLRB 969 (1995).

- Apple filed a public opposition brief (Dkt 201) branding my judicial notice filing of the NLRB settlement as sanctionable — a chilling signal to other employees.

- Apple's filings intentionally omit the existence of the Board settlement, misleading courts, the public, and regulators, and thereby nullifying the remedial effect of the Agreement.

- The "AI hallucination" smear was launched immediately after I disclosed reliance on generative tools due to loss of access to legal research software —

a digital-era attempt to strip a pro se complainant of the means to advocate.

- Apple's filings were not preceded by a Rule 11 safe-harbor letter, indicating a purely retaliatory motive.

- On May 13 2025, Apple filed a letter to the U.S. District Court misrepresenting my statements, making false inferences against me, and attempting to coerce the court into issuing a Blanket Protective Order covering the reasons it says it fired me.

The Settlement (¶ 2) required Apple to rescind all versions of the IPA and internal work policies that chilled Section 7 rights. In its post-settlement federal Answer and briefing, Apple continues to cite those exact policies as a basis for my 2021 termination and as affirmative defenses (e.g., Dkt 199 at 17:3–12). Apple has not withdrawn these defenses, in direct violation of Stericycle, and continues to assert the same "Confidentiality" clauses invalidated by the Board as justification for discipline. This undermines both the Board's remedial bargain and the validity of the Notice language, which advises employees those rules are no longer in effect.

Apple now attempts to coerce a U.S. District Court into declaring its justification for firing me, and its Confidentiality policies, are legitimate and lawful in violation of the NRLA and doctrines like Garmon Preemption.

### A. Violation of Section 8(a)(1): Interference with Section 7 Rights

28.    Under Section 8(a)(1), it is an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7." The protective order Apple seeks would directly interfere with my Section 7 rights by:

1. Restricting my ability to discuss terms and conditions of employment, including the alleged basis of my termination;

2. Gagging disclosures that the Board has already found to be within the scope of protected activity under pending complaints;

3. Blocking the use or discussion of evidence at my own NLRB hearing, including deposition testimony and documents related to Apple's internal practices, surveillance, and termination justification.

29.    The Board has consistently held that even neutral-sounding confidentiality

policies are unlawful if they would reasonably chill Section 7 activity. See:

- *T-Mobile USA, Inc.*, 363 NLRB No. 171 (2016) (confidentiality rules that restrict non-public discussion of internal matters violate Section 7);
- *Banner Health System*, 362 NLRB No. 137 (2015) (confidentiality instructions during investigations unlawful absent narrow tailoring);
- *Quicken Loans, Inc.*, 359 NLRB No. 141 (2013) (NDAs that prohibit speech about workplace practices violate Section 7).

30.    The proposed protective order replicates the same overbroad restrictions already addressed in *Case 32-CA-284428*, and Apple's attempt to secure this gag order through federal litigation is an impermissible end-run around the Board's prior remedial action.

## B.    Violation of Section 8(a)(4): Retaliation for Participation in Board Proceedings

31.    Section 8(a)(4) prohibits an employer from discharging, threatening, or otherwise discriminating against any employee for filing charges or participating in proceedings under the NLRA. Apple's attempt to shield its termination rationale from scrutiny—while asserting that same rationale as a defense in federal court—constitutes a retaliatory suppression of the very activity for which the Board is already prosecuting Apple. Moreover, Apple's requested order would impair my ability to:

- Introduce evidence of unlawful retaliation into the record of the pending NLRB case;
- Cross-examine Apple's witnesses regarding pretext;
- Use my own deposition testimony in a case where I am the named charging party.

32.    In *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983), the Supreme Court held that retaliatory litigation may constitute an unfair labor practice if it seeks to punish or chill NLRA-protected activity. Similarly, the Board has found that post-hoc confidentiality enforcement can violate Section 8(a)(4) where the employer seeks to discipline, silence, or penalize participation in NLRB proceedings.

## C.    Legal Violations and Precedent

33.    Apple's conduct constitutes ongoing violations of both Section 8(a)(1) and Section

8(a)(4) of the NLRA.

34.    Under Section 8(a)(1), it is unlawful for an employer to "interfere with, restrain, or coerce employees" in the exercise of their Section 7 rights. Apple's current request for a protective order, which seeks to prohibit me from discussing or disclosing the basis of my termination and related working conditions, would directly suppress rights long held to be protected under Board precedent. The Board has repeatedly struck down confidentiality policies that prohibit discussion of workplace concerns, internal investigations, and employer conduct, including in:

- *Banner Health System,* 362 NLRB No. 137 (2015): Broad confidentiality instructions in investigations found unlawful.

- *T-Mobile USA, Inc.*, 363 NLRB No. 171 (2016): Policy banning disclosure of "non-public company information" violated Section 7.

- *Quicken Loans, Inc.,* 359 NLRB No. 141 (2013): Overbroad NDAs restricting workplace speech were unlawful.

35.    The Board has also held that even post-employment gag orders and litigation-based confidentiality terms that restrict or penalize protected activity violate Section 7.

36.    Under Section 8(a)(4), it is unlawful for an employer to retaliate against an individual for filing or participating in an NLRB proceeding. The Board's consolidated complaint in *32-CA-282142* already charges Apple with unlawfully suspending and discharging me for engaging in protected conduct, including filing Board charges. Apple is now doubling down on the same justification for my termination and seeking to shield that rationale and related evidence from public or regulatory scrutiny — a move that constitutes direct retaliation for my protected participation in prior Board proceedings.

37.    In this context, Apple's use of litigation to reassert unlawful confidentiality policies — already addressed in a formal settlement — is not only retaliatory but functionally nullifies the Board's remedial efforts in *32-CA-284428*.

38.    These violations are not merely statutory but also implicate constitutional rights, including:

- First Amendment rights to speak about workplace conditions and protected disclosures;

- Due process rights to present evidence and defend against retaliatory

accusations;

- And the public interest in enforcement of labor and environmental laws.

39.    The Board's enforcement authority exists not only to remediate personal retaliation, but to protect the integrity of public-regarding statutes. Apple's efforts to cloak retaliation behind confidentiality enforcement jeopardize the enforceability of multiple federal mandates and deny whistleblowers, courts, and agencies access to material truth.

### D.    Failure to Enforce the National Settlement and Protect Covered Employees

40.    Apple's conduct threatens not only my rights as the original Charging Party, but also the rights of all employees and former employees covered under the April 2025 national settlement agreement in Case 32-CA-284428. That agreement was not individualized — it required Apple to rescind overbroad policies and cease conduct that could chill Section 7 activity corporate-wide.

41.    I am the Charging Party and employee representative under that settlement. If Apple is willing to retaliate against me so aggressively — including:

- seeking protective orders to silence protected disclosures,
- threatening judicial sanctions over Board references,
- and attempting to block testimony and cooperation with federal agencies —

then it is reasonable to infer that similar conduct may be ongoing toward other Apple employees who raise workplace concerns, disclose safety issues, or cooperate with regulators.

42.    The NLRB has an obligation to ensure that the remedial effect of a national settlement is real and enforceable — not just on paper. If Apple can violate the terms of this agreement with impunity, retaliate against the party who helped secure it, and seek judicial orders that nullify its purpose, then the Board must ask: what is the value of this settlement?

43.    I therefore urge the Region to treat this not only as a matter of individual retaliation, but as a compliance and enforcement crisis that affects hundreds — if not thousands — of covered employees.

# IV. REQUESTED RELIEF

Pursuant to CHM § 10158.3, CHM § 10590, and 29 CFR § 101.8, I respectfully request that

the National Labor Relations Board:

1. Docket a supplemental ULP complaint or open a new case file;

2. Seek 10(j) injunctive relief to:

    o Enjoin further threats or sanction efforts;

    o Preserve the evidentiary and public weight of the Board's settlement;

3. Order Apple to withdraw the Rule 11 accusations from Dkt 201 and file corrective pleadings;

4. Extend the posting period by 60 days *from the actual date of posting* and require a curative notice regarding the right to reference settlement terms;

5. Expand posting scope to include physical postings at offices and direct mail to current and former employees;

6. Require training on labor compliance and retaliation for legal, HR, public relations, and executive teams;

7. Reinstate the original complaint if Apple refuses to comply.

8. Initiate an investigation into Apple Inc.'s use of federal court litigation as a mechanism to restrain NLRA-protected activity and suppress evidence relevant to ongoing Board proceedings;

9. Determine that Apple's request for a protective order — as currently framed — constitutes an ongoing violation of Sections 8(a)(1) and 8(a)(4), by:

    o Seeking to reinstate overbroad confidentiality restrictions previously rescinded in *Case 32-CA-284428*;

    o Preventing a charging party from using or discussing material evidence in *Case 32-CA-282142*;

    o Retaliating against my participation in Board matters through judicial proxy;

10. Issue supplemental complaint(s), compliance directives, or enforcement action, as warranted, to preserve the Board's remedial jurisdiction and ensure the integrity of ongoing proceedings;

11. Notify the United States District Court for the Northern District of California that Apple's litigation position conflicts with prior Board orders, protected rights under Section 7, the settlement agreement in *Case 32-CA-284428*, and ongoing adjudication

in *Case 32-CA-282142*.

44.    Apple's conduct since April 4 constitutes flagrant non-compliance, retaliation, and procedural bad faith. Left unaddressed, these violations undermine the Board's credibility and the enforceability of labor rights across the tech industry.

45.    I respectfully urge Region 21 to take immediate and public-facing steps to preserve the remedial purpose of this landmark settlement.

46.    Please do not hesitate to contact me with any questions or requests for further documentation. I will concurrently submit a Form NLRB-501 and supporting exhibits.

/s/ Ashley M. Gjovik

*Pro Se Plaintiff*

May 13 2025

Email: legal@ashleygjovik.com
Physical Address: Boston, Massachusetts
Mailing Address: 2108 N St. Ste. 4553 Sacramento, CA, 95816
Phone: (408) 883-4428

# X.  EXHIBIT C

# RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Quilici, Jeffrey<jquilici@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Luo, Ashley<aluo@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Tuesday, May 13th, 2025 at 8:08 PM |

Counsel,

I acknowledge your request regarding the joint discovery letter and exhibits. Due to how much time this has already consumed today, I will file the documents with the court at your request.

However, I want to be absolutely clear that I do not agree that the joint document reflects my consent, nor do I accept the process by which it was developed.

I've now spent over ten hours today reviewing your edits, responding to redlines, and managing shifting demands — all while under repeated threats that you would file the letter without my agreement, and while attempting to meet deadlines in other active federal matters.

After insisting for weeks that you would file regardless of my objections (following over a year of threats to seek this order by any means), your sudden reversal — solely because I declined to revise or retract my documented protest — is both inappropriate and transparent.

Your attempt to offload responsibility at the last minute, while distancing yourself from the very record you spent all day finalizing, is not acceptable.

You should receive notice of the filing within the next 30 minutes.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 7:50 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
>
> In light of your protests, I would feel more comfortable if you file it.  See attached.  You have my authorization to file.

**Melinda Riechert**

Partner

Orrick

Silicon Valley Ⓥ

T 650/614-7423

M 6507591929

mriechert@orrick.com



**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Tuesday, May 13, 2025 4:21 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Quilici, Jeffrey <jquilici@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

**[EXTERNAL]**

Counsel,

You already have my authorization to file the joint letter and exhibits. ("*You have my authorization to sign my name and e-file this document…*"). I spent the entire day responding to your emails and document revisions, and I explicitly authorized you to file this document.

What you're now requesting is not additional authorization — it is a demand that I alter the record to erase the fact that you are proceeding over my objections and under circumstances I have described as coercive and retaliatory. I will not do that.

You have what you need to file. What you're asking now is not legally required, and your effort to pressure me into softening my position will be treated as further witness intimidation and retaliation under the NLRA, Crime Victims Rights Act, Marsy's Law, 18 U.S.C. § 1512 - 1513, and applicable labor and whistleblower protections.

Any further efforts to coerce me regarding how I characterize my own consent will be documented and submitted to the courts and relevant oversight agencies.

File the letter as agreed — and include my full statement in the record.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 7:14 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> We are fine with the changes to the exhibits.
>
> But we are concerned with your statement:
>
>> You have my authorization to sign my name and e-file this document under protest and subject to extensive legal objections, as outlined in our prior correspondence.
>>
>> This authorization is made under coercion and duress, in light of your insistence that you will file regardless of my stated concerns

Either we have your authorization to file or we don't.  If we don't, we will proceed in accordance with Section 17 of Judge Westmore's standing order.


Please let us know.


**Melinda Riechert**

Partner


Orrick

Silicon Valley 


T 650/614-7423

M 6507591929

mriechert@orrick.com





**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Tuesday, May 13, 2025 3:50 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Quilici, Jeffrey <jquilici@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda


[EXTERNAL]


*Subject: Re: Gjovik v. Apple – Discovery Letter Exhibits & Filing Authorization*


Counsel,

Please proceed with this attached version of the exhibits, which I assumed you would have combined, but it appears you plan to file separately.

This version of the PDF includes:

- A revised cover page with a descriptive title;
- Exhibit labels restored on two pages that were missing them;
- Formatting adjustments to align with standard filing practices.

You have my authorization to sign my name and e-file this document under protest and subject to extensive legal objections, as outlined in our prior correspondence.

This authorization is made under coercion and duress, in light of your insistence that you will file regardless of my stated concerns.

Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 6:20 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

See attached.

**Melinda Riechert**

Partner

Orrick

Silicon Valley ⊙

T 650/614-7423

M 6507591929

mriechert@orrick.com



**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Tuesday, May 13, 2025 2:37 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Quilici, Jeffrey <jquilici@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

**[EXTERNAL]**

The edits look okay but I asked to see the version with the exhibits too please.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 5:30 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Received and checking - one moment.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 5:18 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> See redline attached and PDF. A "blanket confidentiality protective order" is not an accurate description of what defendant is requesting. What we are seeking is entry of the model protective order. I also changed "it" to "she" in Paragraph 2 of the attestation. If you prefer "it" let me know.
>
> Let me know if we have your authorization to file.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
> Silicon Valley 
>
> T 650/614-7423
> M 6507591929
> mriechert@orrick.com



**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Tuesday, May 13, 2025 1:45 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Quilici, Jeffrey <jquilici@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

**[EXTERNAL]**

Hello,

For clarity I'm re-attaching the document you sent me with your initials added to show those were your edits not mine, and a version with my initials AG3 for a proposed final version.

I edited the cover page to correct the title to factually align with what this request is, and i updated the confirmations at bullet 2 to reflect that we are each saying that only ourselves followed the rules, as I do not want to imply I think Apple complied with the rules, because I do not think Apple did.

Please send a final draft of combined PDF with all exhibits and signatures prior to filing, for my review and ok prior to filing.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 4:33 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Reviewing now - one moment.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**


Sent with Proton Mail secure email.


On Tuesday, May 13th, 2025 at 4:29 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> The attestation only needs to say that "the parties met and conferred … by video conference prior to filing the letter" and that the parties "have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter, as well as the signature of both parties or counsel." Your additions to the attestation are unnecessary. I have moved part of it to the beginning of the letter.  I have deleted from the attestation the following:  However, Plaintiff has filed multiple objections to Defendant alleging that Defendant has not complied with basic Professional Conduct rules and has violated criminal obstruction laws."  If you want to add that to your section of the letter, please do so. If you are OK with the attached (along with your exhibits) do I have your authorization to file?
>
>
> I also changed the date to today's today.
>
>
> Melinda Riechert

Partner

Orrick

Silicon Valley 

T 650/614-7423

M 6507591929

mriechert@orrick.com

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Tuesday, May 13, 2025 12:00 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Quilici, Jeffrey <jquilici@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

**[EXTERNAL]**

Hello,

See my draft attached. If this works for you I will send my exhibits shortly.

—

Ashley M. Gjøvik

BS, JD, PMP

Sent with Proton Mail secure email.

On Tuesday, May 13th, 2025 at 2:03 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

Following the conversation on Thursday May 8 2025, later on Friday May 9 2025 at 1:27 pm, the US District Court posted my Motion for Injunctive Relief and Stay, that I filed to the Ninth Circuit, signaling the District Courts have now lost jurisdiction to hear matters under appeal and subject to the motion.

Then, yesterday, Monday May 12 at 11:04 AM PST, I asked you if you still planned to proceed with this request. It is well established that the District Court has now lost jurisdiction on this matter, but I asked for you to confirm your plans and position, following the notice posted by the District Court on Friday afternoon. I also explained that if you do plan to proceed, that I would still submit my portion of the joint filing and I would do so that day (May 12).

I did not receive a response from you by 8:30 PM EST last night so at that point I went to sleep, since I had not slept much for several days, as I previously explained -- I was exhausted. Upon waking up this morning around 10:30 AM I have been exclusively working on responses to your two emails from late last night, including this one. You will receive a completed letter and response from me prior to 12PM PST today.

Again, there is no jurisdiction to decide these matters pending appeal and the motion for injunction relief; this request itself is unlawful and possibly criminal; your conduct related to this request has been coercive, fraudulent, obstructive, and threatening. Further, your admitted plans for use of this Order would not be for production of documents, but instead for a gag order about things you want to unlawfully interrogate me about during a deposition -- specifically my protected activity, evidence of criminal conduct by Apple, and subject matter which Apple already obtained an illegal gag order against me in 2022 and which the Courts vacated, deciding it was unlawful and violated my Constitutional rights, and which is also part of my appeal and request for an injunction.

Note for Morgan Lewis -- that's the gag order your colleagues at MWE, noticed as Apple's prior defense counsel in the NLRB matters, quickly formally requested a copy of, following Apple's ex-Global Security employee unlawfully obtaining it through fraud on the court at a state court of limited jurisdiction in a state I've never even lived in, where she also claimed the NLRB told her to request it -- which NLRB GC's office fervently denied.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, May 12th, 2025 at 9:06 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> We disagree with your conclusions regarding the district court's jurisdiction.
>
> On May 7, we provided our portion of the joint letter regarding the protective order and asked you to provide your portion by close of business on May 12. On May 8, you told us that you would provide your portion by today, May 12. I confirmed on May 8 that we agreed that you had until May 12 to submit your portion of the joint letter: "Please add whatever you want to add to the attached document, being sure it meets the court's required page limits, and we can submit it to the Magistrate on May 12." We therefore agreed that the deadline to add your section of the joint letter is today. We have not yet received it.  We are willing to provide you with one additional extension. If you provide us your portion of the joint letter by noon Pacific time tomorrow, we will file the joint letter tomorrow. If you do not provide us with your portion by noon Pacific tomorrow, we plan on proceeding in accordance with Section 17 of Judge Westmore's standing order.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
> Silicon Valley Ⓥ

T 650/614-7423

M 6507591929

mriechert@orrick.com



**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Monday, May 12, 2025 11:04 AM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Quilici, Jeffrey <jquilici@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

<span style="background-color:red;color:white">**[EXTERNAL]**</span>

Hello, I'm very behind. I had to pull more all night-ers and still haven't' finished filing my declarations, exhibits, and requests for judicial notice for the appeal.

Before I spend the time working on it, I wanted to check if you still plan to proceed with the protective order request today. The district court posted my motion for an injunction on Friday evening, which means the District Court formally lost jurisdiction over the matters in my appeal, at least for the scope of the Motion -- which includes your discovery tactics including the protective order requests.

If you still plan to ask for it despite there not being jurisdiction to ask for it, I'll work on my bit after I get some food. I just filed my unsealed declarations for the motion for injunction, and need to get the sealed version done asap as well.

- Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, May 8th, 2025 at 5:20 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

Please add whatever you want to add to the attached document, being sure it meets the court's required page limits, and we can submit it to the Magistrate on May 12.

**Melinda Riechert**

Partner

Orrick
Silicon Valley ⊙

T 650/614-7423
M 6507591929
mriechert@orrick.com

orrick

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, May 8, 2025 2:11 PM
**To:** Riechert, Melinda <mriechert@orrick.com>; Quilici, Jeffrey <jquilici@orrick.com>
**Cc:** Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

**[EXTERNAL]**

Dear Counsel,

I am in receipt of your May 7 email and Apple's proposed draft joint letter. I submit the following for the record, consistent with my May 7 Notice regarding discovery procedures and the current posture of this litigation.

The material Apple seeks to designate as confidential is central to my pending appeal and Motion for Injunction before the Ninth Circuit in Case No. 25-2028. The so-called "Informed Consent Form / Agreement" that Apple has withheld is already referenced in the appellate record. Under *Griggs v. Provident,* 459 U.S. 56 (1982), the district court is divested of jurisdiction over matters presently under review by the Court of Appeals. (see also, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985)). Apple's proposed protective order reaches the very evidence at issue on appeal, and the Court may not issue binding orders or sanctions over that material.

Apple's stated basis for the protective order centers on this one document. During our May 2, 2025 meet and confer, Apple confirmed:

- It will not produce the "Informed Consent Agreement" unless a protective order is entered;
- It intends to use the document at my deposition and then designate both the document and my testimony as confidential;
- It would consider any public reference to the document or testimony a violation, subject to contempt;
- It declined to consider redactions, stipulations, or in-camera review;
- It refused to identify any additional documents it intends to designate under the proposed order.

As discussed, Apple previously submitted a different document—unrelated to the program at issue—to the U.S. Department of Labor during a federal investigation. That document was dated 2018 and associated with a different platform. I obtained evidence of this submission through a FOIA request to the Department of Labor, as Apple has repeatedly refused to produce the same evidence to me in discovery. I have raised concerns that Apple's submission of an unrelated "Informed Consent Form" as material evidence to justify my termination constitutes a false submission under 18 U.S.C. § 1519. Apple now seeks to conceal the actual document from public and judicial review. This pattern raises serious concerns under federal obstruction statutes and RICO predicate acts (18 U.S.C. §§ 1512, 1513).

The proposed protective order is not aimed at protecting proprietary information—it is a pretext to suppress whistleblower-related testimony, obscure systemic unlawful conduct, and avoid public accountability. This conduct is part of the record on appeal and cannot be addressed through a local, limited discovery mechanism.

Apple's selective quotation from a March 25, 2025 meet and confer is also misleading. That meeting involved general discussion of the model protective order. The current dispute arises from the May 2, 2025 meet and confer, which focused on Apple's new attempt to designate whistleblower-related evidence as confidential. Between March 25 and May 2, Apple engaged in substantial conduct that I allege is retaliatory and unlawful, including submission of misleading documents and improper threats, as discussed during the May 2 call, my emails, and my court filing. Judge Westmore's Standing Order requires the meet and confer to occur within five business days of submitting a joint discovery letter. Citing a meet and confer from over two months prior to justify a new protective order is inconsistent with both the letter and intent of that rule.

I also object to Apple's continued failure to disclose the roles of Ashley Luo and now also Nick Weaver. Ms. Luo has professional affiliations with this Court and the U.S. Attorney's Office, and Apple has not filed a notice of appearance or otherwise explained her role in this litigation. She is in a position to make prejudicial statements about the Plaintiff to court staff without them knowing she is directly involved in this matter. Mr. Weaver, an eDiscovery defense specialist, has been included despite Apple's refusal to engage in any discovery planning, propose an ESI protocol, or identify document custodians. The introduction of litigation suppression specialists in a one-document dispute—with no supporting discovery plan—raises concerns about the true purpose of Apple's proposed order.

There are also two separate NLRB proceedings that directly relate to the issues underlying Apple's proposed protective order. First, the NLRB has already issued a nationwide complaint against Apple and entered into a formal settlement agreement concerning Apple's unlawful confidentiality and employment policies—including its misuse of overbroad confidentiality designations to suppress protected disclosures. That settlement confirms that employee speech regarding workplace

conditions, including disclosures of potentially unlawful conduct, is protected under Section 7 of the NLRA and may not be restricted or penalized.

Second, the NLRB has issued a formal complaint in the currently pending case concerning Apple's termination of my employment. Apple's asserted basis for that termination—as reflected in its own communications and agency filings—relates directly to the same "Informed Consent Agreement" Apple now seeks to withhold and declare confidential in this litigation. The General Counsel has already found merit to my charge that Apple's justification was pretextual and retaliatory. At minimum, this means the NLRB has found substantial evidence that Apple's stated basis for termination was false. It also raises serious questions as to whether Apple has made false or misleading representations to the federal government—conduct that could constitute a separate violation under both labor and criminal law.

Accordingly, I reiterate that Apple's actions regarding this document and related disclosures violate the National Labor Relations Act, including but not limited to interference with protected concerted activity and retaliatory confidentiality practices. I am preparing additional charges with the NLRB as necessary. Apple has now intentionally removed its NLRB counsel from at least three separate email threads concerning this subject matter. Please ensure that Apple's labor counsel is included on all future communications relating to the "Informed Consent Agreement," NLRA-protected activity, or whistleblower disclosures. Kindly confirm that Apple will maintain labor counsel on all such correspondence moving forward. As Apple is represented by multiple law firms in overlapping matters, including parallel NLRB proceedings, Apple's counsel has an ethical and procedural obligation to ensure all counsel of record are coordinated and that material representations or procedural positions are not selectively compartmentalized across matters. Its unclear why Orrick counsel continue to add apparently unrelated counsel to these emails, while concurrently removing directly involved counsel from other firms from the same emails.

Finally, Apple's May 7 email states that the joint letter deadline is May 12. However, in prior correspondence, Apple represented the deadline as May 9. Judge Westmore's Standing Order requires filing within five business days of the meet and confer, which occurred on May 2. Depending on how the calendar is applied, either date might be arguable—but the shift in Apple's position has not been acknowledged or explained. Please clarify whether Apple considers May 12 a revised or extended deadline. Regardless, I will provide my contribution to the joint letter by May 12.

Sincerely,

Ashley M. Gjovik

Pro Se Plaintiff

On Wednesday, May 7th, 2025 at 10:26 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

Pursuant to our meet and confer call last Friday and Section 3 on page 3 of your "Notice of Protective Discovery Pause Pending Appeal & Request for Injunction" we received today, Apple does intend to pursue a protective order concerning confidentiality and is willing to submit a joint letter to Judge Westmore in compliance with the Judge's Standing Order. Attached please find a draft of Apple's proposed language for its section of the joint letter together with 4 exhibits.  Please also note:

- The first six lines is our proposal for the "section which sets forth the unresolved dispute and any pertinent factual background" per section 14(a)(ii) of the standing order.
- After those six lines, each party has 67 lines for their position per section 14(a)(iii) of the standing order.
- The parties may only attach 12 pages of exhibits per section 14(b)(ii) of the standing order; we intend to attach 6 pages of exhibits, so you may also include up to 6 pages of exhibits.

We are anxious to move this case forward. Please send your additions to the Joint Letter by close of business Monday May 12, 2025.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 6507591929

mriechert@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, May 7th, 2025 at 9:06 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

*Subject: Discovery Notice and Objections*

Counsel,

Please see the attached notice and objections regarding civil discovery in light of the pending Ninth Circuit appeal and motion for injunctive relief.

Additionally, I acknowledge receipt of counsel's recent correspondence and notes. However, I have not yet had the opportunity to fully review or respond to their content, and I do not intend to formally engage on those points until after I complete my current Ninth Circuit filings. (I still need to file several critical motions and exhibits.)

For the avoidance of doubt: nothing in this message—or the timing of my response—should be construed as agreement with or waiver of any objections to the substance of counsel's communications.

Best regards,

Ashley Gjovik

(*Pro Se* Plaintiff-Appellant)

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, May 2nd, 2025 at 8:33 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Hi,
>
> Thanks for sending your notes. I'm confirming receipt of your response, but I will read what you wrote later and respond after I file my appellate brief.
>
> I reserve all rights to later object or clarify. Thanks. Have a good weekend.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, May 2nd, 2025 at 8:18 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

Your summary below is incorrect. I made no unlawful threats against you, nor any threats of any kind. You raised the issue of filing another motion to disqualify because you said the privilege log revealed that Jessica Perry was a witness in this case because she was consulted by Apple prior to your termination and the privilege log showed her declaration was inaccurate. I pointed out that (1) there were no inaccuracies in Jessica Perry's declaration (2) the privilege log did not reveal any inaccuracies in Jessica Perry's declaration (3) the Judge had already decided the motion for disqualification (4) there was no basis for you to file another motion for disqualification.  I explained that Apple was entitled to consult with legal counsel on issues prior to your termination, which does not make the attorney a witness in the case and justify a motion to disqualify. I also pointed out that your motions contain cases that did not exist, as discussed in the fully briefed motions, and you needed to stop filing motions for which there was no basis (such as another motion to disqualify) and that contain citations that did not exist.

I did not acknowledge that a protective order allows Apple to seek sanctions in court directly, rather than filing a separate breach of contract or trade secret suit. You were the one who raised this issue, and said Apple wanted to put you in jail, which I disputed.

Here is a summary of what I recall we discussed based on my notes.  I have not listened to the recording but will have my assistant send it to you by Liquid Files since it is too big to email.

**Regarding the protective order,** you first asked that I confirm whether we have additional documents to produce once a protective order is entered, and I confirmed we do.  I explained why we feel it is appropriate to enter into a protective order which is the court's model order and standard in litigation.  I explained that if we produced documents pursuant to the protective order that you did not feel were confidential, there was a process in the protective order to challenge the designations. You suggested that a protective order was not necessary because you had signed an IPA.  I noted that this case was about your violation of your IPA. You suggested that instead of a protective order we could produce redacted documents. I said this would not be sufficient.  You suggested that you review the documents at an Orrick office.  I said that we wanted to use the documents at your deposition.  I said we should write a letter to the Magistrate Judge explaining our respective positions on the protective order.  You said you wanted to continue to meet and confer, and suggested I provide you with the number of documents that we were withholding until a protective order is entered, since that might cause you to change your mind on the entry of a protective order.  I agreed to consider this request and get back to you. We agreed to file a joint letter with the Magistrate by May 9 if we were unable to resolve this issue before then. I will send you our portion of the letter.

**Regarding the discovery plan**, I advised that I believed that our prior Joint Case Management Conference Statement was sufficient, and no additional discovery plan was needed. You suggested we ask the court to hold a case management conference on June 12 and submit a joint case management conference statement in advance of that conference, containing the information required by the Court's rules on Case Management Conference statements, which includes a proposed trial date and other deadlines. I said this was fine with me. You said you still wanted to draft a discovery plan and would send one over for our review.

You asked if we were going to **amend our answer**, and I said that would be decided by the Judge on June 12.

**Regarding Initial Disclosures**, you asked if we intended to supplement them.  I said we did not currently intend to supplement

them, but may do so in the future as more information becomes available.

**Regarding the privilege log**, I explained why there can be privileged documents in the months before the termination and why there can be privileged documents between non-lawyers (who were acting at the direction of an attorney). We discussed that if you had specific questions regarding entries on the privilege log you would send them to me, but I thought the descriptions we provided were very detailed.

**Regarding depositions**, you said you wanted to take the depositions of:

- Debra Rubinstein. I noted she was an attorney and what she would know is privileged. You said you wanted to ask her about a conversation you had with her in 2020 about Superfund sites which would not be privileged.
- Yannick Bertolus. You noted he was a former employee and asked if Apple would be producing him voluntarily.
- Antonio Lagares. You said he was responsible for the suicide nets in Beijing. I said I didn't understand what that had to do with this case. You noted he was a former employee and asked if Apple would be producing him voluntarily.
- Michael Steiger . You noted he was a former employee and asked if Apple would be producing him voluntarily

You asked if we intended to take the depositions of any of your hippie friends. I said I had no information about what your hippie friends might know about the case but would learn more at your deposition.

**Regarding ESI**, you said you would include what you want regarding ESI in your draft discovery plan.

**You confirmed that you are not yet withholding any documents based on privilege.**

**Regarding discovery served by you on Apple**, you said that if we had issues with the discovery requests you served being overbroad,

you would like us to discuss our concerns with you.

**You agreed to provide a verification to the interrogatory answers.**

**Regarding your response to Interrogatory number 2** regarding the medical providers you have seen related to counts 1-IV of the Fifth Amended Complaint, I noted that your response referred us to the initial disclosures which might be overbroad since those health care providers may not all relate to the remaining issues in the case. You said it would be hard to distinguish between which medical providers related to the remaining claims. You also said Apple has your medical records through Apple Health, which I disputed. You said you would produce medical records. I said we wanted to subpoena records from the relevant medical providers.  You suggested that instead we take an IME.  I noted that the physician performing the IME would want to see your medical records.  You agreed to consider this issue further.

**Regarding your response to Interrogatory No. 3**, for the names of all individuals and entities you have worked for since Apple, I noted this interrogatory was not premature, as your response claims.  Now that full discovery has opened up, there is no phased discovery, so the interrogatory is not premature.  You agreed to send names, dates worked, and amounts received by May 9.

**Regarding interrogatory No. 4 and 5** for information regarding your social networks, you agreed to provide this information for the period June 1 to September 10, 2021.

**Regarding Apple's response to your discovery requests**, you stated you were not planning on escalating at this time.

Melinda Riechert

Partner



Orrick

Silicon Valley

T 650/614-7423

M 6507591929

mriechert@orrick.com

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Friday, May 2, 2025 2:51 PM
**To:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

[EXTERNAL]

Dear Counsel,

Thank you for meeting today to discuss the pending discovery and case management issues.

Pursuant to Judge Westmore's Standing Order, please provide a copy of the recording from our meet and confer at your earliest availability.

As noted during the call, I will be focused on my Ninth Circuit opening brief until it is filed on May 6, 2025. In the meantime, feel free to send any initial joint letter drafts, and I will review and respond starting May 7.

**Discovery Plan & Scheduling**

As discussed, I will send you on May 7:

- A draft joint letter to Judge Westmore regarding the absence of a discovery plan, and
- An alternative draft stipulated case management statement and proposed Rule 16(b) schedule for submission to Judge Chen.

If Apple is willing to stipulate to the schedule and plan, we can file those materials jointly to Judge Chen and Judge Westmore. If not, I will proceed to finalize and file the joint (or individual) letter on the discovery plan dispute by May 9, 2025, in accordance with Standing Order ¶14. Please confirm by May 9 whether you intend to join either filing.

**Interrogatories & Follow-Up**

As discussed, I will provide updated interrogatory responses next week or the week after, including:

- A corrected version with a sworn verification statement, and
- Clarifications and proposed modifications to scope and timing.

To reiterate: I have not refused to answer Apple's interrogatories. I raised objections and proposals — which we discussed today — regarding how best to respond within procedural and privacy boundaries.

**Privilege Log & Depositions**

I will send a formal challenge letter regarding specific entries in Apple's privilege log, along with requests for clarification, as a starting point for resolving disputes collaboratively.

Thank you for confirming that you are gathering further information regarding witness availability for depositions.

**Confidentiality & Protective Order**

We discussed the following:

- I asked why redactions cannot be used instead of a protective order. Apple
  provided only one example (document authentication) and asserted that
  redaction would not work for "anything."
- I asked why my existing IPA does not cover the allegedly confidential
  information. Apple responded that I had already violated that agreement. When
  I asked what a protective order provides that the IPA does not,
- Apple stated that documents are being withheld under a confidentiality claim
  but refused to identify which documents or how many. Apple said it is
  considering my request to at least disclose the number being withheld.

### Disqualification

When I raised concerns about the need to disqualify Jessica Perry based on newly
revealed privilege log entries, Apple's counsel made several unlawful threats against
me. Similar to what occurred regarding the NLRB settlement, Apple's counsel implicitly
threatened me with Rule 11 sanctions if I filed another motion to disqualify counsel or
raise claims of fraud on the court.

For the record, I am formally objecting to multiple statements made by Apple's counsel
during today's call that I believe constitute unlawful threats and coercion. Specifically,
Apple's counsel made at least three separate comments that did:

- Interfere with my right to engage in protected concerted activity,
- Chill my ability to report retaliation, obstruction, and harassment to the
  government or courts, and
- Intimidate me with threats of legal consequences for accessing the judicial
  process.

Apple also again made allegations against me related to AI and citing false cases. Like I
responded in my filings and emails, I again pointed out that Apple appear to be
referring to five cases from one filing, in WestLaw, and which I do not have access to
due to my financial distress, and I asked again for them to share some sort of proof
that the cases don't exist -- such as a PDF of the WestLaw screen showing they don't
exist, and counsel told me no, again.

I objected at the time and I memorialize my objection again here. When I asked
counsel to clarify or explain these threats, she declined. That refusal does not diminish
their seriousness or legal implications.

### Disqualification

When I raised concerns about the need to disqualify Jessica Perry based on newly revealed privilege log entries, Apple's counsel responded by making several unlawful threats against me. As occurred previously regarding the NLRB settlement, Apple's counsel again implicitly threatened me with Rule 11 sanctions if I filed another motion to disqualify counsel or raised concerns regarding potential fraud on the court.

For the record, I am formally objecting to multiple statements made by Apple's counsel during today's call that I believe constitute unlawful threats and coercion. Specifically, Apple's counsel made at least three separate comments that:

- Interfered with my right to engage in protected concerted activity;
- Attempted to chill my ability to report retaliation, obstruction, and harassment to government agencies or the courts; and
- Sought to intimidate me with threats of legal consequences for accessing the judicial process and raising legitimate misconduct concerns.

In addition, Apple again made vague allegations against me regarding AI usage and citation of "fake cases." As I previously explained in filings and correspondence, I believe Apple is referring to five cases cited from a single Westlaw search, which I no longer have access to due to my financial hardship. I asked Apple's counsel once again to provide some proof — such as a screenshot or PDF from Westlaw showing the cases were invalid — and again, Apple's counsel refused.

I objected at the time on the record and I am memorializing those objections here. When I asked counsel to clarify or explain the basis for these threats, she declined. That refusal does not reduce the seriousness or legal consequences of the statements.

I will follow up with additional notes and next steps as time permits after my appellate deadline.

Thank you again,

Ashley M. Gjovik

Pro Se Plaintiff

May 2, 2025

On Friday, May 2nd, 2025 at 3:37 PM, Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com> wrote:

Dear Counsel,

Attached is a detailed outline of discovery planning items that must be addressed in
our May 2, 2025 meet and confer. This checklist is structured to track Apple's
specific positions on each issue relevant under FRCP 26(f), 16(b), and Judge
Westmore's Standing Order ¶14, and will serve as the basis for joint letter drafting
on any unresolved disputes.

We can walk through the questions live during today's meeting, and I am
requesting written confirmation of Apple's position on each item no later than close
of business on May 6, 2025, to facilitate timely drafting of joint discovery letters by
the required deadline of Friday, May 9, 2025.

**Proposed Outline: Discovery Planning Discussion (Meet & Confer)**

**Gjovik v. Apple – May 2, 2025**

As part of our meet and confer scheduled for May 2, 2025, Plaintiff requests that
Apple provide specific positions on each of the following discovery planning items.
These questions reflect requirements under FRCP 26(f), FRCP 16(b), and the
standing orders of the assigned judges. This outline will also form the basis for joint
letter drafting, potential scheduling stipulations, and further motion practice if
necessary.

**<u>Purpose of This Planning Discussion</u>**

Confirm we are fulfilling obligations under FRCP 26(f), FRCP 16(b), and local
standing orders.

Clarify that this discussion will form the basis for a joint discovery letter and/or a
proposed Rule 16(b) scheduling order.

**>> Status of Discovery Plan and Case Management Obligations**

Has Apple completed its 26(f) obligations?

Has Apple ever proposed a full Rule 26(f) discovery plan?

Has Apple drafted or agreed to a Rule 26(f) discovery plan?

☐ Yes ☐ No

Will Apple now agree to jointly prepare a full discovery plan by May 9?

☐ Yes ☐ No

If not, why does Apple believe one is not required?

Will Apple consider the Westlaw/Nexis guides I circulated showing a standard plan includes deadlines, ESI, and privilege framework?

☐ Yes ☐ No

Why has Apple refused to stipulate to scheduling, deadlines, or custodians?

**>> Initial Disclosures**

Have both sides served complete FRCP 26(a)(1) initial disclosures?

Has Apple served full and final Rule 26(a)(1) disclosures?

☐ Yes ☐ No

Will Apple supplement its disclosures to identify:

Individuals involved in Plaintiff's termination? ☐ Yes ☐ No

Those with knowledge of whistleblower, labor, and other protected activity events? ☐ Yes ☐ No

Who remains employed vs. who has left? ☐ Yes ☐ No

**>> Subjects and Scope of Discovery**

What subject areas does Apple agree are within the scope of discovery under Rule 26(b)(1)?

What factual issues will Apple agree are within the scope of discovery?

Does Apple assert that any subject is off-limits or outside 26(b)(1)?

Can Apple explain how its affirmative defenses apply?

Are there any topics Apple claims are outside scope or irrelevant?

☐ Yes ☐ No → If Yes, which? [Open notes]

Will Apple identify which affirmative defenses apply to which claims and facts?

☐ Yes ☐ No

Does Apple intend to amend its Answer to clarify defenses?

☐ Yes ☐ No

Will Apple engage in a joint letter to resolve absence of discovery plan, custodians, or topics?

☐ Yes    ☐ No

Will Apple propose or respond to a complete Rule 26(f) plan by May 9?

☐ Yes    ☐ No

## >> Depositions

Will Apple identify all individuals involved in the termination decision?

☐ Yes ☐ No

Will Apple confirm which of those people are still employed?

☐ Yes ☐ No

Will Apple voluntarily make these individuals available for deposition?

☐ Yes ☐ No

Will Apple permit questions about Plaintiff's termination and protected disclosures during depositions?

☐ Yes ☐ No

Will Apple agree to meet and confer by May 9 re: witness list, availability, and scope?

☐ Yes    ☐ No

If no agreement, will Apple join joint letter to compel or clarify?

☐ Yes    ☐ No

**>> Electronically Stored Information (ESI)**

Will Apple stipulate to a basic ESI protocol?

☐ Yes ☐ No

What systems or platforms are within scope (e.g., email, Slack, chat, mobile devices)?

Who are the designated ESI custodians?

**>> Privilege Assertions**

Will Apple revise its privilege log to address the objections raised (non-attorney communications, business documents)?

☐ Yes ☐ No

Will Apple stipulate to a clawback agreement?

☐ Yes ☐ No

Will Apple agree to in camera review of challenged documents?

☐ Yes ☐ No

Will Apple provide a category-level privilege log, or further justification for broad assertions?

☐ Yes ☐ No

Will Apple engage in joint letter regarding privilege log issues (e.g., non-legal comms, overuse)?

☐ Yes    ☐ No

Will Apple meet again by May 9?

☐ Yes    ☐ No

**>> Trial Scheduling and Pretrial Deadlines**

Will Apple stipulate to the proposed trial and discovery schedule I circulated?

☐ Yes ☐ No

If not, will Apple propose an alternative schedule today?

☐ Yes ☐ No

Will Apple join a Rule 16(b) stipulation for Judge Chen?

☐ Yes ☐ No

If no, why not.

Will Apple stipulate to a schedule or respond with proposed dates by May 9?

☐ Yes    ☐ No

If not, will Apple join a joint letter or respond to Plaintiff's admin motion?

☐ Yes    ☐ No

## >> Preservation and Spoliation

Will Apple stipulate to a preservation protocol? Has Apple preserved devices, messaging apps, or relevant files?

Has Apple implemented a litigation hold for this case?

☐ Yes ☐ No

Will Apple stipulate to a preservation plan (per Form 6A3)?

☐ Yes ☐ No

Has Apple preserved relevant Slack, mobile, and personal device communications?

☐ Yes ☐ No

## >> Confidentiality & Protective Order

Is Apple currently withholding any documents based on confidentiality?

☐ Yes ☐ No

Will Apple identify what documents it actually seeks to protect?

Why does Apple believe my existing IPA is insufficient to protect any legitimate concerns?

Why does Apple believe redactions or targeted designations would be insufficient?

Will Apple respond to my 7 written questions about scope and use of the protective order?

☐ Yes ☐ No

Will Apple withdraw or delay its threatened unilateral filing, and instead proceed through a joint letter as required?

☐ Yes ☐ No

Will Apple agree to engage in a joint letter by May 9 if dispute remains unresolved?

☐ Yes      ☐ No

Will Apple meet again May 7–9 if needed?

☐ Yes      ☐ No

## >> Disqualification / Conflict Issues (Orrick)

Will Apple respond to the request for voluntary withdrawal before motion is filed?

☐ Yes      ☐ No

If not, will Apple engage in meet-and-confer or respond to renewed motion?

☐ Yes      ☐ No

## >> Interrogatory Objections / Clarifications

Will Apple meet and confer regarding Plaintiff's objections and scope of discovery?

☐ Yes      ☐ No

Will Apple agree to proceed via joint letter if unresolved?

☐ Yes    ☐ No


**>> Next Steps and Joint Letter Planning**


Will Apple agree to finalize a discovery plan by May 9?


Will Apple participate in joint letter drafting next week?

☐ Yes ☐ No


If not, Plaintiff will proceed unilaterally and certify Apple's nonparticipation as required.


Reminder: Participation in discovery planning and good-faith meet-and-confer is not optional. See Fed. R. Civ. P. 26(f), Local Rule 37-1, and Standing Order ¶14. Failure to respond to these issues individually will be documented and presented in joint letters or motions as necessary.


Failure to take a position on any of the above items will be treated as either a refusal, a waiver, or an indication that Apple intends to obstruct discovery. Non-responses will be noted explicitly in joint letter certifications and may be presented to the Court as part of a motion under FRCP 37(a), Rule 16(f), or Local Rule 37-1.


Plaintiff requests that Apple's positions on each item be confirmed in writing within 3 business days (by May 7, 2025) so that any unresolved items may be incorporated into joint letter drafting no later than May 9, 2025.


Thank you,

Ashley M. Gjovik

Pro Se Plaintiff

May 2, 2025

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Friday, May 2nd, 2025 at 3:04 PM, Ashley M. Gjøvik <[ashleymgjovik@protonmail.com](mailto:ashleymgjovik@protonmail.com)> wrote:

> Dear Counsel,
>
> This is formal notice that if Apple proceeds with a unilateral filing of a proposed protective order or any related motion without first completing the joint letter process required under **Judge Westmore's Standing Order ¶14**, I will file an **additional NLRB charge** for ongoing unfair labor practices — including the use of litigation procedures to suppress protected disclosures.
>
> We are expected to meet and confer today not just on the protective order, but on **all pending issues Apple continues to avoid**, including:
>
> - **Protective order / confidentiality scope:** Apple's refusal to explain why redaction or targeted designations are insufficient, or why my existing IPA is inadequate;
> - **Whether any documents are being withheld under confidentiality** (you've stated "no," which makes your urgency unclear);
> - **Privilege log concerns:** Overbroad assertions over HR and ER communications, press drafts, and documents that don't involve

attorneys — or involve attorneys acting outside the scope of attorney–client privilege functions;

- **Discovery plan and scheduling:** Despite Rule 26(f) and multiple orders from Judge Chen, Apple continues to deny any obligation to jointly develop a plan, stipulate to a trial schedule, or confer in good faith;
- **Deposition planning:** Apple still refuses to identify exactly who was involved in my termination, how the events unfolded, what your defenses are, who remains employed, or who is available for deposition.

You effectively **refused to meet and confer on several of these topics** in your May 1st email, including the discovery plan and privilege log. That refusal is improper under **FRCP 26(f), Rule 30**, and the Court's standing orders. I object to Apple's continued efforts to avoid engagement while threatening unilateral filings and accusing me of misconduct.

Attached are my formal objections and supporting documentation, including letters on the protective order, privilege issues, deposition planning, discovery plan, interrogatories, and disqualification. I've also included **reference materials from Westlaw and Nexis** describing the elements and expectations of a proper discovery plan under the federal rules. Given that counsel for Apple **lead national employment litigation departments and have been practicing for decades**, there is no plausible argument that these obligations are unclear or unfamiliar. Apple's refusal to engage with basic discovery planning and privilege review duties is not oversight — it is a choice.

You are on notice. I expect Apple to engage in a real meet and confer today. If Apple escalates further or bypasses the rules, I will pursue all available relief before the Court and relevant federal agencies.

And to be clear: I am a pro se litigant with a Ninth Circuit appellate brief due on May 6, and the barrage of obstruction and threats Apple has unleashed over the last few weeks appears calculated to distract me from that critical filing, among other critical tasks I have on my plate. I will not be derailed — I will finish my brief, I will defend my rights, and I will hold Apple accountable.

I will speak with you soon.

Respectfully,

**Ashley M. Gjovik**

Pro Se Plaintiff

May 2, 2025

## ATTACHMENTS - PLAINTIFF'S LETTERS:

- Gjovik_v_Apple_20250502_Plaintiff_Objections_Letter_Final.pdf
- Gjovik_v_Apple_20250502_Response_re_Deposition_Final.pdf
- Gjovik_v_Apple_20250502_Response_re_DiscoveryPlan_Final.pdf
- Gjovik_v_Apple_20250502_Response_re_Disqualify_Final.pdf
- Gjovik_v_Apple_20250502_Response_re_Interogatories_Final.pdf
- Gjovik_v_Apple_20250502_Response_re_PrivLog_Final.pdf
- Gjovik_v_Apple_20250502_Response_re_ProtOrder_Final.pdf
- Gjovik_v_Apple_20250502_Stip_Hearing_Schedule_Final.pdf

## ATTACHMENTS - DISCOVERY PLAN EXAMPLES:

- Discovery Plan - Failing to participate in framing discovery plan.pdf
- Discovery Plan - Discovery Toolkit.pdf
- Discovery Plan - E-Discovery in Employment Cases Practical Considerations for Employers.pdf
- Discovery Plan - Form 6A1 Joint discovery plan.pdf
- Discovery Plan - Form 6A3 Stipulated preservation plan And order (1).pdf
- Discovery Plan - Form 6A4 Stipulated discovery plan And order (1).pdf
- Discovery Plan - Scope of Discovery from Defendants in Employment Discrimination Cases.pdf
- Discovery Plan - Scope of Discovery from Plaintiffs in Employment Discrimination Cases.pdf

On Thursday, May 1st, 2025 at 4:07 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley,

We are still working on attempting to download Productions 4 and 5 and the videos. You do not need to send them to me separately.

For tomorrow's meet and confer, you have identified the following topics for discussion, and we have added our position on each.

- *(1) Northern District's model stipulated protective order.*
  - We believe the parties should stipulate to entry of the model order.  Since this issue has been dragging on so long, if propose submitting the model protective order to the Judge by end of day tomorrow and tell her we are unable to agreement.
- *(2) Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).*
  - Apple has satisfied its obligations to develop a proposed discovery plan under FRCP 26(f) and Local Rule 16-9. *See* Dkt. Nos. 77 at 5-6; 97 at 7-9; 166 at 5-6. However, we are happy to meet and confer with you about the topic, just as we did during our March 25, 2025 meet and confer. It would be helpful identify the issues you wish to discuss in advance of the call.
- *(3) Your "requests for depositions in lieu of Apple's March 2025 privilege log"*
  - We are unaware of any such requests.
- *(4) Privilege log.*
  - Apple's privilege log complies with FRCP 26 and Judge Westmore's standing order. Apple properly asserted attorney-client privilege and work product protection.
- *(5) Your allegation of "prior misrepresentations regarding counsel's involvement in Plaintiff's termination."*
  - You identified no misrepresentations in your April 29 email, and there have been none.

In addition to the topics listed above, we would like to discuss your recent responses to Apple's discovery.

**<u>Verification</u>**:

FRCP 33(b)(3) requires interrogatory responses to verified under oath. Please verify your responses under oath by May 9, 2025.

**Interrogatory Responses**:

FRCP 33(b)(3) requires full and complete answers to interrogatories that are not evasive and do not include vague references to other documents. *See also* FRCP 37(a)(3)(B) (iii)).

No. 2: Please provide a full and complete response to this interrogatory. Your reference to the initial disclosures is inadequate because your disclosures did not distinguish which providers relate to your dismissed toxic tort claims and which providers relate to your emotional distress damages.

No. 3: Please provide a full and complete response to this interrogatory. This discovery is not premature. Apple is entitled to conduct discovery into income that may be offset against any damages you seek in this action.

Nos. 4 and 5: Please provide a full and complete response to these interrogatories. Asserting that Apple can view public posts is insufficient because Apple is not aware of each account and name you may be posting under.

**Requests for Production**:

You assert objections based on privilege that suggest privileged documents exist while also stating that you are not withholding any privileged documents. Please confirm whether any privileged documents exist. If there are privileged documents, please provide a privilege log. Additionally, please confirm that you are producing any medical records related to the emotional distress damages you seek under Counts 1 through 4. It seems you are agreeing to do so, but we would like to confirm we are interpreting your response correctly.

**Deposition:**

Copy of the Transcript: You will need to make arrangements with the court reporter to review your deposition transcript.

Technical Details/Personal Recording: The court reporter service is responsible for setting up and recording the remote deposition. This is not something Orrick handles. While we typically do not have technical issues, we cannot promise a technical issue will not arise in a remote deposition. If it happens, we will work with you to address the issue. In terms of your ability to personally record the deposition, I do not know whether two parties to a Zoom call both can simultaneously record the same call. So long as your recording does not interfere with the Court reporter's official recording, we do not have a problem with you independently recording the deposition.

Other objections: You may object to questions and both parties reserve the right to bring any issues that may arise to the attention of the Court.

I look forward to speaking with you tomorrow.

**Melinda Riechert**

Partner

Orrick

◉ Silicon Valley

T 650/614-7423
M 6507591929
mriechert@orrick.com

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Tuesday, April 29, 2025 12:27 PM
**To:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R.
<jperry@orrick.com>; Mantoan, Kathryn G.
<kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms,
Ryan <rbooms@orrick.com>; Mahoney, Brian
<brian.mahoney@morganlewis.com>; Stolzenburg, Mark L.
<mark.stolzenburg@morganlewis.com>; harry.johnson
<harry.johnson@morganlewis.com>;
kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC |
Update Regarding Discovery, Productions, and Meet and Confer
Agenda

[EXTERNAL]

Dear Counsel,

I write with several updates and requests for our upcoming meet and confer
scheduled for Friday.

First, you should have now received Production Four and Production Five
(via GoldFinch) and the first video production set (via Google Drive). Please
confirm receipt. Note, Melinda, it appears your Orrick account may not be
configured to allow access to Google Drive links, per an error message
received from Google. Kindly advise if you require alternative delivery for
those files.

Second, please be advised that many additional productions are underway,
and I expect to transmit at least one to two more batches this week.

Third, regarding my Requests for Admission: I will need additional time to finalize them. The recently received privilege log raises several complex factual and legal issues that require careful strategic consideration. I intend to serve my Requests later this week, pending further analysis.

Finally, I request that we add an additional topic to the agenda for Friday's meet and confer: *Plaintiff's intention to seek relief relating to Defendant's prior misrepresentations regarding counsel's involvement in Plaintiff's termination.*

Specifically, newly produced evidence (Defendant's March 27, 2025 privilege log) directly contradicts representations made to the Court in opposition to Plaintiff's prior Motion to Disqualify Orrick Herrington & Sutcliffe LLP from this litigation. According to Apple's own privilege log, Orrick has been directly involved in the legal claims at issue in this lawsuit since at least August 14, 2021, and has been providing legal advice regarding Plaintiff's employment matters since at least August 17, 2021. For clarity: Apple terminated my employment on September 9, 2021. Apple has consistently claimed (including through Orrick) that I was fired solely because of an action I allegedly took on August 28, 2021, that no issues were ever found with my prior complaints, and that no investigation of me occurred before August 28. These new privilege log entries directly refute those assertions and demonstrate that Apple and its counsel have made multiple, related, intentional, material misrepresentations to the Court. Given the seriousness of these developments — including implications for judicial integrity and potential fraud upon the Court — I respectfully request that you be fully prepared to address this issue during Friday's discussion.

Thank you for your attention to these matters. I look forward to speaking with you Friday.

Sincerely,

Ashley M. Gjøvik

*Pro Se*

—

**Ashley M. Gjøvik**

BS, JD, PMP

Sent with Proton Mail secure email.

On Monday, April 28th, 2025 at 12:56 PM, Ashley M. Gjøvik
<ashleymgjovik@protonmail.com> wrote:

> Dear Counsel,
>
> There was never any final agreement regarding a Protective Order.
>
> Apple's subsequent conduct — including coercive statements,
> misrepresentations, threats of Rule 11 sanctions, inexplicable delays in
> response, unlawful modification demands, refusal to meet and confer,
> and improper privilege assertions — voided any prior tentative
> discussions.
>
> The default status in litigation is no Protective Order. If Apple seeks
> special protections, it must justify them properly under Rule 26(c).
>
> I remain willing to meet and confer regarding:
>
> - Apple's renewed Protective Order request;
> - The creation of a Discovery Plan;
> - My requests for depositions in lieu of Apple's March
>   2025 privilege log; and
> - Issues regarding Apple's privilege log designations.
>
> I am available Friday between 12:00 PM ET and 5:00 PM ET for a
> recorded video meet and confer.
>
> I plan to circulate documents in support of my Discovery Plan proposal
> and privilege log concerns in advance of the meeting. If Apple has any
> offers or counteroffers regarding a Protective Order, I request that they

be transmitted prior to the meeting for meaningful review. I respectfully decline Apple's prior request that I unilaterally submit draft proposals.

Please confirm your availability. Thanks.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, April 28th, 2025 at 12:23 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> In addition to the March 25 email, you agreed during the last meet and confer to the model protective order:
>
> > **Melinda Riechert [00:00:31]:**
> > Start with the protective order, because that's 1 of the things we want to get done.  Is that okay?
> >
> > **Ashley Gjovik [00:00:38]:**
> > So it sounds like she's going to issue the default one, anyways.  I do not want Apple's modified one, but
> >
> > **Melinda Riechert [00:00:44]:**
> > Okay.
> >
> > **Ashley Gjovik [00:00:44]:**
> > Default one. We're just gonna have to go.  I'm gonna have to challenge stuff if apple abuses it, and we'll just have to go through that process

**Melinda Riechert [00:00:51]:**
Yeah, there's a there's a process in there. If you disagree with the designations as a process to be followed. I don't think that it prevents you from talking to the Government. But whatever, if you want, if you're just ready to go with the model one that I mean the model one. Then we'll just go with the model one

**Ashley Gjovik [00:01:09]:**
Yeah, the model one. so we can stipulate to that. That might make her happy that we actually agreed to something. so we can do that one. I do think it would be helpful to proactively define confidentiality, since that is like the number one dispute I'm having with Apple and all of the litigation is what is confidential.  So if there's anything that you might need to talk amongst yourselves, but if there's anything we can do to try to clarify that. You know the Federal rules of Civil procedure defines it.  As you know, trade secrets and and actually confidential.  So we can go through that organically, but I thought it might be helpful if we can come to some of that. Understanding ourselves proactively too

It sounds like you have now changed your mind. I am happy to meet and confer with you any time Tuesday through Friday of this week.  Please send us a redline of the model protective order (attached) with the changes you propose in advance of the call so that we can have a productive discussion. .

**Melinda Riechert**

Partner

Orrick

Silicon Valley 

T 650/614-7423
M 6507591929
mriechert@orrick.com

**From:** Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com>
**Sent:** Monday, April 28, 2025 8:45 AM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>;
Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G.
<kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>;
Booms, Ryan <rbooms@orrick.com>; Mahoney, Brian
<brian.mahoney@morganlewis.com>; Stolzenburg, Mark L.
<mark.stolzenburg@morganlewis.com>; harry.johnson
<harry.johnson@morganlewis.com>;
kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-
EMC

[EXTERNAL]

Dear Counsel,

I write in response to your April 25, 2025 communication regarding
the Protective Order and discovery plan.

First, as previously explained, the Standing Order for Magistrate
Judge Westmore requires that the parties meet and confer in real
time within five (5) business days prior to filing any discovery
letter. (See attached copy of Judge Westmore's Standing Order at
pages 3-4.) Your assertion that a March 25, 2025 discussion satisfies
this requirement is incorrect. That meeting occurred more than one
month ago and does not meet the Standing Order's contemporaneity
requirement. Thus, a new meet and confer is mandatory prior to
submission of any letter. This makes practical sense: much can occur
during complex litigation within even a few weeks, as has happened
here.

Second, significant developments occurred after March 25:

- Orrick threatened me with Rule 11 sanctions regarding the NLRB settlement's relevance, chilling my ability to participate openly in litigation and related labor organizing;
- Apple's counsel finally provided me their first discovery privilege log which detailed a timeline of egregious, intentional, premeditated, malicious surveillance, threats, coercion, and retaliation against me directly for protected activities under state and federal laws;
- Apple's counsel rejected my limited consideration of a Protective Order by unilaterally demanding modifications (e.g., a carve-out blocking whistleblower disclosures and a retroactive privilege expansion);
- Apple's counsel promulgated unlawfully narrow definitions of confidential information, and upon my raising objections, engaged in further oppressive and retaliatory conduct;
- I clearly withdrew any tentative consent after these developments, communicated my objections, and repeatedly expressed willingness to continue discussions through a proper meet and confer.

Accordingly, a full, real-time meet and confer remains necessary.

Third, while preparing for the anticipated improper filing of a Protective Order motion without a valid meet and confer, I prepared a fully drafted objection — attached here for your reference. This draft was finalized and ready for immediate filing as of Friday, April 25, 2025. I am providing it now as a courtesy to facilitate a more informed discussion of the serious procedural, constitutional, and public policy issues implicated by Apple's demands. Please review the attached document carefully, as it outlines the full legal objections I intend to raise if necessary. **Attachment:** Gjovik_v_Apple_20250425_Objection_re_POMotion_Final.pdf

Fourth, regarding scheduling: Please provide at least three (3) specific times you are available for a video meet and confer this week. I expect real proposed times — not blank templates as were sent Friday night — in full compliance with the Standing Order's requirements.

We should meet and confer on both:

- The proposed Protective Order; and
- The discovery plan (I will circulate several draft outlines shortly after transmitting my remaining pending deliverables).

Refusing to meet and confer, or failing to engage in good faith, would be inconsistent with the Standing Order and the Federal Rules of Civil Procedure.

Finally, while I am behind schedule today on some discovery tasks, I note that this delay is largely due to the substantial time I was forced to divert to addressing the improper IPA revisions emailed to me by Morgan Lewis on the eve of the NLRB settlement compliance deadline, and drafting the attached objection due to Orrick's lingering threat of unilateral Protective Order filing — which was not rescinded until after 10:00 PM on Friday night.

Additional document production, as well as the two Requests for Admission noted earlier, are forthcoming.

Thank you for your attention to these matters. I look forward to your prompt response.

Sincerely,

Ashley M. Gjovik

Pro Se Plaintiff

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, April 25th, 2025 at 10:42 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> In accordance with Judge Westmore's March 11, 2025 order (Dkt. No. 181), we already met and conferred regarding the Northern District's model

stipulated protective order on March 25. Both in that recorded call and also following it, you confirmed you were stipulating to the CAND model protective order. *See e.g.*, your email dated March 25: "we agreed to stipulate to the CAND model protective order." Now you have apparently changed your mind. In light of that, we need to follow Magistrate Westmore's discovery dispute process and submit a joint letter of no more than 5 pages laying out our respective positions by May 2. We will provide you our portion of the letter by April 30.

As for your request to discuss a discovery plan, we have satisfied our obligations to develop a proposed discovery plan under FRCP 26(f) and Local Rule 16-9. *See* Dkt. Nos. 77 at 5-6; 97 at 7-9; 166 at 5-6. To the extent you believe that we have further obligations, we are happy to meet and confer with you pursuant to Judge Westmore's standing order, which provides that "any party may demand such a meeting on ten (10) business days' notice." Please identify the issues you wish to discuss and let us know when within this availability window you are available: _____.

To the remaining items in your email:

- We are in receipt of the documents you listed.
- There is no requirement that Ashley Luo enter a notice of appearance.
- To your question about "scientific disclosures," any such documents should be served in the same manner as the other documents that you serve.
- We are willing to accept production of videos and audio recordings via a secure Google Drive or Dropbox folder.

**Melinda Riechert**

Partner



Orrick

Silicon Valley

T 650/614-7423

M 6507591929

mriechert@orrick.com

**From:** Ashley M. Gjøvik
<ashleymgjovik@protonmail.com>
**Sent:** Friday, April 25, 2025 9:42 AM
**To:** Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Perry,
Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G.
<kmantoan@orrick.com>; Luo, Ashley
<aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>;
Mahoney, Brian <brian.mahoney@morganlewis.com>;
Stolzenburg, Mark L.
<mark.stolzenburg@morganlewis.com>; harry.johnson
<harry.johnson@morganlewis.com>;
kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-
EMC

[EXTERNAL]

Hello,

**NOTICE RE: PROTECTIVE ORDER**

Orrick previously threatened to file a unilateral request for a
protective order today (April 25) without meet and confer,
despite the multiple objections and public policy concerns raised

by the Plaintiff (see emails below). Proceeding as announced would violate Local Rule 37-1, Judge Westmore's Standing Order, and federal labor law, including the April 2025 NLRB national settlement. If Orrick were to proceed as announced, their conduct today would establish new violations under NLRA Sections 7, 8(a)(1), and 8(a)(4), and I will file new NLRB charges accordingly. I again demand that Apple comply with its settlement obligations, confer in good faith, cease attempting to impose unlawful confidentiality restrictions, and stop acting like "*Rambo litigators.*" Apple NLRB counsel is again being copied on this message. See attached Gjovik_v_Apple_20250425_Objection_re_ProtectiveOrde

### Service of Requests & Responses

Dear civil Counsel,

Please be advised that I am today serving the following documents in Gjovik v. Apple, U.S. District Court, N.D. Cal., Case No. 3:23-CV-04597-EMC. These materials are now formally part of my discovery responses and requests. Please confirm receipt.

### Documents Served Today (April 25, 2025):

- Gjovik_v_Apple_20250425_Response_re_RFSI_Final.pdf
- Gjovik_v_Apple_20250425_Objection_re_Planning_Final.p
- Gjovik_v_Apple_20250425_Objection_re_Production_Final
- Gjovik_v_Apple_20250425_Objection_re_ProtectiveOrder_
- Gjovik_v_Apple_20250425_Request_RFP_Set_Two_Final.p
- Gjovik_v_Apple_20250425_Response_re_Deposition_Final
- Gjovik_v_Apple_20250425_Response_re_RFP_Final.pdf

### Coming Shortly:

- Two Requests for Admission
  - One regarding fact assertions
  - One regarding document authentication
- Additional document production

The documents and requests should be served later today, or worst case, before start of business on Monday at the latest.

**Pending Issues:**

- I am reiterating concerns that Ashley Luo, Esq. appears to be participating in this case but has not entered a notice of appearance in civil court or with the labor agencies. Please clarify her status.
- I have made significant progress investigating the incident(s) next to 3250 Scott Blvd related to the injury to my hair and scalp. My claims regarding hair loss and suspected fungal exposure may now involve joint liability between Apple and Irvine Company. Please advise: Do you have environmental/public health litigators working on this matter, or should I direct scientific disclosures to your team at Orrick? Ideally I can speak with someone familiar with zoology, hydrology/geology, and genetic mutations due to exposure to acutely toxic chemicals and mutagens.

**Question re: Video Files:**

I have a substantial number of responsive videos and audio recordings. Due to financial limitations and file size, I cannot host them directly on the discovery platform. Please confirm whether you will accept production via a secure Google Drive or Dropbox folder. I will ensure coherent labeling in lieu of Bates stamps, and can supplement metadata if needed. Let me know if you have any objections to this method or require a specific platform or format. I will also plan to create an index of the files and identify when / where / and who are in the movies and audio recordings.

Regards,

Ashley M. Gjovik

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, April 17th, 2025 at 9:32 PM, Ashley M. Gjovik
(Legal Matters) <legal@ashleygjovik.com> wrote:

> Hello,
>
> The events that occur in this litigation do not occur in a
> vacuum. You cannot infer I'm delaying the case when Apple
> is taking extensive, incessant actions to delay the case itself -
> - and when I point out the conduct by Apple I believe to
> represent that allegation, then you claim Apple's actions are
> irrelevant, because it is inconvenient for the false narrative
> you're attempting to build. That is deceptive, and intentional
> sabotage.
>
> If you want to escalate an issue to Judge Westmore, per your
> own position, we need to meet/confer about it prior to that
> escalation. Let me know when you're available for a recorded
> meet/confer to discuss Apple's claim that a protective order is
> required for this litigation, and to discuss what documents
> Apple is currently withholding under a pre-emptive claim of
> confidentiality.
>
> Note - if Apple is implying that my concerns about Apple
> abusing confidentiality provisions are delaying the case, while
> Apple concurrently and intentionally withholds discovery
> production that is not actually confidential, I believe you will
> have built yourself a procedural ouroboros as well as another
> NLRB charge.
>
> We also still need a discovery plan. During the last
> meet/confer you again refused to create a discovery plan. Its
> required per the FRCP, so we need to create one. I've asked
> multiple times, for over a year.
>
> Once I get a chance to take breath, I will also be serving
> Reqs for Admiss, Req for Prod, and Interrogatories. I also

have another production coming soon. However, I have been delayed in doing all this due to all of the extra work Apple has been creating.


-Ashley


—

**Ashley M. Gjøvik**

**BS, JD, PMP**



Sent with Proton Mail secure email.


On Thursday, April 17th, 2025 at 9:11 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
>
> We are in receipt of your email below.  My email dealt only with the protective order, not other things that have been happening in the case. We believe the case needs to move forward (including with discovery that requires a confidentiality order be in place). We will submit the attached standard ND Cal protective order to Judge Westmore **on Friday April  4/25** absent further response from you, and will let Judge Westmore know we were unable to secure your agreement.
>
>
>
> **Melinda Riechert**
>
>
> Partner

Orrick

Silicon Valley 

T 650/614-7423
M 6507591929
mriechert@orrick.com

**From:** Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com>
**Sent:** Wednesday, April 16, 2025 4:53 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik
<ashleymgjovik@protonmail.com>; Perry, Jessica R.
<jperry@orrick.com>; Mantoan, Kathryn G.
<kmantoan@orrick.com>; Luo, Ashley
<aluo@orrick.com>; Booms, Ryan
<rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-
04597-EMC

[EXTERNAL]

Hi Apple's lawyers,

Thanks for checking in.

It appears that in your recent follow-up, you
inadvertently removed portions of our prior
correspondence, resulting in a thread that omits multiple
emails where I responded resulting in a thread that omits
multiple emails where I responded. I've reinserted the
exchange inline below and attached the complete thread
for the record.

As mentioned, I've been extremely busy and will get back to this shortly. The delay is due to several overlapping legal deadlines, including the following:

**Apple's filings in the Ninth Circuit (Appeal):**

- 4/7: Apple's motion to stay or dismiss the appeal, with voluminous exhibits
- 4/7: Opposition to my motion to consolidate and clarification request
- 4/8: My response to Apple's motion to stay/dismiss
- 4/15: My notice regarding the district court's Rule 54(b) ruling
- 4/15: Apple's reply to its own dismissal motion, re-filing the same order
- Ongoing: Drafting my Ninth Circuit appellate brief — which is both critical and highly time-consuming

**NLRB compliance and national settlement:**

- 4/4: Trilateral national settlement agreement finalized (Apple, myself, NLRB)
- 4/11–4/13: Email correspondence with Apple's counsel regarding noncompliance, including representations made in federal filings and email threats
- 4/14: Formal compliance complaint submitted to the NLRB and served on counsel
- 4/14: NLRB compliance materials received, and my subsequent obligation to notify Apple coworkers of their rights under the posting

**This case:**

- 4/10: Apple's opposition to my motion to strike, motion for more definite statement, and objections to my RJN — including improper threats of Rule 11 sanctions for activity clearly protected under the NLRA, and unlawful threats to stop engaging in protected concerted activity

- 4/14: My reply to Apple's Rule 54(b) opposition
- 4/14: Apple's email accusing me of "demanding" that it provide a factual and legal basis for its threats — and stating it refuses to comply with those demands
- 4/15: My Notice of Pendency regarding the NLRB settlement
- 4/15: Judge Chen's denial of Rule 54(b) certification and cancellation of hearing
- 4/16–4/17: I am actively drafting replies to Apple's oppositions to my motions regarding its Answer

I list these not only to explain the delay, but to correct the implication — created by your redacted email thread — that no response or engagement has occurred since April 8. That is incorrect. I replied promptly, and since then have been addressing an avalanche of filings, including misconduct and threats by Apple, some of which relate directly to confidentiality.

As to the USDC confidentiality protective order: I've consistently stated that I do not want to enter into any confidentiality agreement at all, and that I believe doing so would be contrary to public policy. I only previously acquiesced — reluctantly — due to Judge Westmore's indication that she might approve the standard version regardless of my position. However, in light of recent developments — particularly concerning Apple's conduct towards me and my coworkers related to confidentiality, including what appears to be direct violations of the federal consent decree it just entered — I need more time to fully consider whether entering into any new confidentiality agreement is appropriate. This is not a refusal. I simply request time to weigh the implications carefully, especially given the potential legal exposure and public policy implications raised by the conduct I've documented elsewhere. This is not a matter of 'failing to reply,' and it does not authorize Apple to execute an agreement on my behalf.

I'll follow up after I've filed my pending responses, assuming there are no additional surprises from Apple.

Thanks,

Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, April 16th, 2025 at 3:27 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> I am following up on my email below regarding the protective order and Rule 12 declaration, so that we can finalize our document production and move this case forward, now the pleadings are settled.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
> Silicon Valley ⊻
>
> T 650/614-7423
> M 6507591929
> mriechert@orrick.com

On Monday, April 14th, 2025 at 9:02 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> We've explained in our papers the issues with your case citations and our position. We decline your demand below.
>
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
>
> M 6507591929
>
> mriechert@orrick.com

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Sunday, April 13, 2025 6:27 AM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan

<rbooms@orrick.com>

**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

[EXTERNAL]

Hello,

Are you going to please provide me evidence that the cases you claim don't exist, don't exist? This appears to be seven cases total -- all WestLaw. This could be a WestLaw search showing "no results," which is something I would have expected to be included as an exhibit in your filing, and it was not. As mentioned I have no way to verify your claims without you providing evidence of those claim. Whether its WestLaw or PACER, I have no money to purchase access to view these documents directly.

Similarly, the last time you raised concerns about my citations, which you claim now is a pattern of hallucination, you complained that one of my citations was to a real case but you acknowledged there was simply a typo in the case name -- not that the case did not exist. The other prior complaints were similar to the complaints you're' making here, which seems to be that you're concerned that the exact substantive and procedural facts in the cited cases do not match the exact procedural and substantive cases in our lawsuit, which is not something required by any rule that I've ever heard of. So it appears your hallucination claims are brand new with these latest motions about your Answer.

Similarly, are you going to explain exactly why you think my citations to cases you confirm do exist, are so improper as to justify sanctions (such as dismissal)? The commentary in your motions point out concerns, that even if they were valid, would not rise to sanctionable conduct, and if it did, Apple engaged in similar and worse conduct prior in this same case -- so it is unclear what Apple's argument is to why my conduct is so evil, horrible, and urgently requiring punishment.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](Proton Mail) secure email.

On Sunday, April 13th, 2025 at 5:42 AM, Riechert, Melinda <[mriechert@orrick.com](mriechert@orrick.com)> wrote:

> Ashley,
>
> Apple is not yet seeking formal sanctions under Rule 11, though it remains very concerned about your use of hallucinating citations in your filings with the Court.  Instead, Apple has noted that the Court has the authority to deny your motions and your request for judicial notice solely based on your failure to verify the accuracy of the cases you contend support your legal positions. If Apple seeks formal Rule 11 sanctions, it will do so through a noticed motion.
>
> **Melinda Riechert**
>
> Partner
>
> [Orrick](Orrick)
>
> Silicon Valley
>
> T 650/614-7423
>
> M 6507591929
>
> [mriechert@orrick.com](mriechert@orrick.com)
>
> **From:** Ashley M. Gjøvik
> <[ashleymgjovik@protonmail.com](ashleymgjovik@protonmail.com)>
> **Sent:** Friday, April 11, 2025 1:31 AM
> **To:** Riechert, Melinda

<mriechert@orrick.com>

**Cc:** Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com>; Perry, Jessica
R. <jperry@orrick.com>; Mantoan,
Kathryn G. <kmantoan@orrick.com>;
Luo, Ashley <aluo@orrick.com>; Booms,
Ryan <rbooms@orrick.com>

**Subject:** RE: Gjovik v. Apple - N.D. Cal.
No. 3:23-cv-04597-EMC

**[EXTERNAL]**

Dear Apple's Counsel,

I am following up regarding your recent
filings opposing my Motion to Strike,
Motion for a More Definite Statement,
and related matters.

Your latest inflammatory accusations
regarding my case citations repeat
arguments you previously raised in your
Opposition to my Motion to Disqualify
(Dkt. No. 167) and at Dkt. No. 152,
n.8. I addressed those allegations in
my prior filings, and the Court declined
to issue any sanctions or adverse
findings. You did not pursue sanctions
at that time.

You are now repeating similar
accusations in public filings (Dkt. Nos.
202–204), but again you have not
provided any supporting materials or
attempted to contact me beforehand to
clarify these points. I note this is
inconsistent with your recent position
that parties should meet and confer
before raising disputes in court filings.

As you are aware, Rule 11 sanctions
require a showing of improper purpose
or that legal arguments were frivolous
and unsupported by law. Imperfect
citations or paraphrasing of general
legal principles — particularly under
extraordinary time constraints and

resource limitations — do not meet this threshold. If you are asserting that my conduct satisfies the Rule 11 standard of misconduct, please specify which allegations you believe rise to this level, and provide your explanation as to how you believe they satisfy the standard of "knowingly false or frivolous."

If you are not pursuing Rule 11 sanctions, I do not understand why you continue to pursue this line of harassment against me when my use of citations appears to align with general practice by licensed attorneys. In fact, I had previously complained about Apple's counsel misrepresenting citations in prior motions, and the Court also failed to respond to those complaints.

Further, you are aware of my severe financial hardship, which I have disclosed, including in my pending bankruptcy preparations. I currently have no access to Westlaw or comparable paid legal research databases. While I acknowledge this limits my ability to verify certain case references, particularly Westlaw-specific citations, my inability to pay for commercial legal tools does not render the law nonexistent, nor does it equate to misconduct or bad faith. If you contend otherwise, please provide your authority for that position.

I will be providing you additional production this weekend and will ensure to include documents related to this, including the closure of my credit cards, electricity shutoff notices, my cancellation of Westlaw with an outstanding bill of over $400 that I will be unable to pay (and Westlaw will become a creditor in the bankruptcy filing), late payments on rent, my

inability to pay for medical insurance which will result in no medical insurance coverage at all (thus no prescriptions or medical treatment going forward), and other related records.

To clarify your position and allow me to respond accurately, I request:

1. A list of the case citations you claim are "non-existent," with any supporting documentation. Because I have no Westlaw access, I cannot check Westlaw-specific cases, and this appears to be the entirety of the cases you seem to contest.
2. Copies of any cases you claim were misquoted or mischaracterized, for similar reasons.
3. Clarification as to whether you contend that my use of quotation marks around general legal principles — not attributed to any case — is part of your accusations, and if so, please expand upon the basis for your complaint.
4. Clarification as to whether you intend to pursue Rule 11 sanctions, and if so, whether you intend to comply with Rule 11's procedural requirements.

You are also aware that I am currently under strict deadlines in my Ninth Circuit appellate matter, and your accusations have now forced me to divert substantial time and resources to address these issues, which I otherwise would have devoted to my appellate briefing. This additional burden appears unnecessary, especially as you made no effort to meet and confer before raising these accusations publicly.

Finally, I note that your public litigation statements occur in the context of my raising concerns about Apple's compliance with the NLRB settlement, and I will be addressing these issues in correspondence with Apple's labor counsel and the NLRB Regional Office. I will include a copy of this correspondence in my forthcoming court filings for completeness of the record.

Please let me know if you intend to provide the requested materials.

Respectfully,

Ashley M. Gjovik
Pro Se Plaintiff

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, April 9th, 2025 at 5:49 PM, Ashley M. Gjovik <[ashleymgjovik@protonmail.com](#)> wrote:

Hello,

Received your email & will get back you to. Things are currently hectic with the NLRB policy & surveillance settlement now finalized & public.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Tuesday, April 8th, 2025 at 5:37 PM, Riechert, Melinda <[mriechert@orrick.com](#)> wrote:

Ashley

Attached please find the default protective order.  May we please have your permission to sign your name to it and submit it to the Judge Westmore.  We would also submit a declaration required by Rule 12 of Judge Westmore's standing order stating it is identical to the model stipulated protective order for standard litigation except for the addition of case-identifying information. Once the order is entered, we will complete our document production with the documents subject to the protective order.

Regarding your Apple Card, we do not represent Apple on issues involving your credit card.

**Melinda Riechert**

Partner

Orrick
Silicon Valley

T 650/614-7423
M 6507591929
mriechert@orrick.com

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Friday, April 4, 2025 3:51 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>

**Subject:** RE: Gjovik v. Apple - N.D. Cal.
No. 3:23-cv-04597-EMC

**[EXTERNAL]**

Hello,

I oppose your motion to stay my appeal, and I oppose any request to dismiss the appeal.

Thank you for confirming the download.

I do not want any protective orders. If Apple insists on a protective order, then we can sign the default order, as already suggested by Judge Westmore. If Apple does not agree to the default protective order, then we can proceed with no protective order. If Apple would like to challenge this, we can meet and confer about it, and write a letter to Judge Westmore about our positions on protective orders.

I also need to hear back on the Apple Card asap. I've asked about this for months already, and i received three separate emails from Apple about my balance while waiting for your reply just this last time.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, April 4th, 2025 at 1:06 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,

> On Monday, we intend to file a motion to stay your recent Ninth Circuit appeal pending resolution of the Rule 54(b)

motion, or alternatively, to dismiss the appeal. Do you intend to oppose? Please let us know today.

We've downloaded the production you sent on Monday.

As for the stipulated protective order, section 11 of the Northern District's model order provides, in part, "Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court." We would like to reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection. We suggest incorporating language into the stipulated protective order from the Northern District's model ESI order, which provides, "Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding." Please let us know if you are willing to agree to the attached stipulated protective order, which includes the standard FRE 502(d) language from

the N.D. model ESI order. If you agree, we can sign for you and file it with the Court, along with the declaration required by section 12 of Judge Westmore's standing order.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 6507591929

mriechert@orrick.com

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy

at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may

collect, store and transfer information about you.

Please see our privacy policy

at https://www.orrick.com/Privacy-Policy to learn

about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**From:** Riechert, Melinda
**Sent:** Tuesday, April 8, 2025 2:38 PM
**To:** Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com>
**Cc:** Ashley M. Gjøvik
<ashleymgjovik@protonmail.com>; Perry,
Jessica R. <jperry@orrick.com>; Mantoan,
Kathryn G. <kmantoan@orrick.com>; Luo,
Ashley <aluo@orrick.com>; Booms, Ryan
<rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

Ashley


Attached please find the default protective order.
May we please have your permission to sign your
name to it and submit it to the Judge Westmore.  We
would also submit a declaration required by Rule 12
of Judge Westmore's standing order stating it is
identical to the model stipulated protective order for
standard litigation except for the addition of case-
identifying information. Once the order is entered, we
will complete our document production with the
documents subject to the protective order.


Regarding your Apple Card, we do not represent
Apple on issues involving your credit card.


**Melinda Riechert**

Partner


Orrick
Silicon Valley


T 650/614-7423
M 6507591929
mriechert@orrick.com


**From:** Ashley M. Gjovik (Legal Matters)
<legal@ashleygjovik.com>
**Sent:** Friday, April 4, 2025 3:51 PM
**To:** Riechert, Melinda <mriechert@orrick.com>

**Cc:** Ashley M. Gjøvik
<ashleymgjovik@protonmail.com>; Perry,
Jessica R. <jperry@orrick.com>; Mantoan,
Kathryn G. <kmantoan@orrick.com>; Luo,
Ashley <aluo@orrick.com>; Booms, Ryan
<rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-
cv-04597-EMC

[EXTERNAL]

Hello,

I oppose your motion to stay my appeal, and I
oppose any request to dismiss the appeal.

Thank you for confirming the download.

I do not want any protective orders. If Apple insists
on a protective order, then we can sign the default
order, as already suggested by Judge Westmore. If
Apple does not agree to the default protective order,
then we can proceed with no protective order. If
Apple would like to challenge this, we can meet and
confer about it, and write a letter to Judge Westmore
about our positions on protective orders.

I also need to hear back on the Apple Card asap. I've
asked about this for months already, and i received
three separate emails from Apple about my balance
while waiting for your reply just this last time.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, April 4th, 2025 at 1:06 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> On Monday, we intend to file a motion to stay your recent Ninth Circuit appeal pending resolution of the Rule 54(b) motion, or alternatively, to dismiss the appeal. Do you intend to oppose? Please let us know today.
>
> We've downloaded the production you sent on Monday.
>
> As for the stipulated protective order, section 11 of the Northern District's model order provides, in part, "Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court." We would like to reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection. We suggest incorporating language into the stipulated protective order from the Northern District's model ESI order, which provides, "Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or

otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding." Please let us know if you are willing to agree to the attached stipulated protective order, which includes the standard FRE 502(d) language from the N.D. model ESI order. If you agree, we can sign for you and file it with the Court, along with the declaration required by section 12 of Judge Westmore's standing order.

**Melinda Riechert**

Partner

Orrick
Silicon Valley

T 650/614-7423
M 6507591929
mriechert@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a

communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us

immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at

https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

# I.  Exhibit D

ASHLEY M. GJOVIK
2108 N. St. Ste 4553
Sacramento, CA 95816
(408) 883-4428
legal@ashleygjovik.com

*Pro Se* Plaintiff

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant Apple Inc.

*[Additional counsel on following page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>                    Plaintiff,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 23-cv-4597-EMC<br><br>**DISCOVERY DISPUTE JOINT LETTER RE:**<br><br>**DEFENDANT'S REQUEST FOR ENTRY OF N.D. CAL. MODEL PROTECTIVE ORDER**<br><br>Judge: Honorable Kandis A. Westmore |

1    RYAN D. BOOMS (SBN 329430)
     rbooms@orrick.com
2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1152 15th Street, N.W.
3    Washington, D.C. 20005-1706
     Telephone:    +1 202 339 8400
4    Facsimile:    +1 202 339 8500

5    Attorneys for Defendant Apple Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION PURSUANT TO SECTION 14 OF
## JUDGE WESTMORE'S STANDING ORDER

2

3      1.      The parties met and conferred by video conference on May 2, 2025, prior to filing

4    this joint letter.

5      2.      Plaintiff confirms that she has complied with Section 9 of the Northern District's

6    Guidelines for Professional Conduct regarding discovery prior to filing this joint letter.

7    Defendant confirms that it has complied with Section 9 of the Northern District's Guidelines for

8    Professional Conduct regarding discovery prior to filing this joint letter.

9

10   Dated: May 13, 2025                         By:  _____
                                                              */s/ Ashley M. Gjovik*
11                                                          ASHLEY M. GJOVIK
                                                                  Plaintiff
12

13   Dated: May 13, 2025                         By:  _____
                                                            */s/ Melinda S. Riechert*
14                                                        MELINDA S. RIECHERT
                                                    Attorneys for Defendant Apple Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By way of this Court's March 11, 2025 Order (Dkt. 181), Judge Westmore directed the parties to meet and confer regarding the Northern District's Model Stipulated Protective Order (the "Model Order"; available at https://cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.Feb2022.pdf).

Plaintiff's Position

Plaintiff objects to Defendant Apple Inc.'s request for a protective order. Defendant has failed to identify specific documents it seeks to protect, has made no showing of good cause under Federal Rule of Civil Procedure 26(c), and has admitted that it intends to use the protective order to shield evidence it plans to rely upon against Plaintiff, while denying her access to it, and which is also Plaintiff's evidence against Defendant. (See Exhibits B - H).

During the May 2, 2025 meet-and-confer, Defendant confirmed it seeks to apply the protective order to a document it claims justified Plaintiff's termination (an "Informed Consent Agreement" from 2017). Plaintiff asserts that this document is unlawful, retaliatory, and central to her surviving claims under *Tamney*, California Labor Code § 1102.5, § 98.6, § 232, and her claims under RICO and Business and Professions Code § 17200. (See Appellate Brief & Motion).

Apple refuses to produce the document or disclose its contents, yet seeks to interrogate Plaintiff about it under oath while designating it confidential. Defendant's purpose is not discovery management—it is to prevent Plaintiff from speaking about unlawful conduct, in violation of the Federal Rules, public policy, whistleblower protections, criminal law, and labor law. (Ex. B-H).

Defendant has filed no formal motion and has not supported its request with any evidentiary showing, as required by *Kamakana v. Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006). There is no pending discovery dispute—there is a pending appeal and a motion for injunction and stay before the Ninth Circuit, which divest this Court of jurisdiction over the matters implicated here. The

JOINT LETTER RE: PROTECTIVE ORDER
[23-CV-4597-EMC]

Court may not resolve substantive legal issues through a 1.5-page letter process, especially where constitutional rights, federal settlements, and public interest claims are involved.

Plaintiff also clarifies that she previously engaged with Defendant in limited negotiation under coercion, after the Court indicated it would grant the order regardless of objections. Since then, Defendant has violated a federal settlement agreement with the NLRB (Dkt. 203) by seeking to suppress disclosures the agreement expressly permits and also threatened Plaintiff with sanctions for exercising federally protected rights. Defendant also produced a privilege log suggesting a possible criminal cover-up involving misrepresentations to federal agencies. Plaintiff immediately rescinded any prior acquiescence—which was never knowing or voluntary—and Defendant's claim of consent is false and prejudicial. (See Exhibits B - H).

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's request. If the Court nonetheless intends to grant such relief, Plaintiff requests that Defendant be required to file a formal motion under Rule 26(c), and that Plaintiff be afforded full briefing and a hearing, consistent with the Federal Rules and due process. If the Court issues the protective order on the current record, Plaintiff will seek immediate appellate review and intervention.

Plaintiff submits Exhibits A – H in support of her objections. These exhibits exceed Judge Westmore's standing order page limit for discovery dispute exhibits, however Plaintiff believes this matter 1) is not a discovery dispute, 2) is part of the Defendant's ongoing attempts to conduct fraud on the court, 3) will require Judge Westmore to read and review the Plaintiff's Appellate Brief and Motion for Injunction as well, and 4) is part of the Defendant's ongoing racketeering, witness intimidation, and labor violation schemes. As such full context is required under Crime Victim Rights statutes, the NLRA, state and federal whistleblower protection statutes, the Due Process clause of the U.S. Condition and the RICO Act – among other laws.

Defendant has asked Plaintiff to reduce the number of exhibits to six pages. Plaintiff is objecting and insisting on her full set of exhibits. Thus the court should not punish Defendant for the page number exceeding the court rules related to Plaintiff's filings, and Defendant should proceed to file the letter with the full exhibits and now Plaintiff's 2-page letter including this disclosure and objection.

<u>Defendant's Position</u>

Apple respectfully requests that the Court enter the Model Order for the following reasons:

- Discovery in this case will involve confidential information, and the Model Order requires good faith confidentiality designations and establishes an appropriate process by which a receiving party may contest confidentiality designations made by the producing party as to particular documents or information.

- The Court previously expressed that it was inclined to adopt the Model Order should the parties disagree on any alternative protective order. *See* Dkt. No. 181 at 2.

- Plaintiff previously agreed to stipulate to entry of the Model Order. In accordance with the Court's March 11, 2025 order (Dkt. No. 181), the parties conferred on March 25, 2025 in a recorded call during which Plaintiff agreed to stipulate to entry of the Model Order. Following the call, Plaintiff sent an email confirming her agreement. *See* **Ex. A.**

- Plaintiff has provided no alternative language to the Model Order. On April 28, 2025, counsel for Apple asked Plaintiff to provide a redline of the Model Order with any proposed changes. Plaintiff declined to do so. *See* **Ex. B.**

"[B]lanket protective orders governing the handling of confidential information exchanged in discovery are routinely approved by courts in civil cases." *Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*, No. C 09-5376 JF (PVT), 2010 WL 2889178, at *1 (N.D. Cal. July 22, 2010). "While blanket protective orders are usually based on a joint request of the parties, the agreement of all parties is not required so long as certain conditions are met." *Id.* Specifically, the Court may enter a protective order where the requesting party makes a threshold showing that discovery will involve confidential information and agrees to invoke confidentiality designations in good faith;

the opposing party has the right to challenge confidentiality designations; and the burden for proving confidentiality rests on the party asserting confidentiality. *Id.*

Here, all the above conditions are satisfied. Discovery in this case will involve confidential information. For example, one of Apple's defenses in this case is that Plaintiff was terminated because she leaked confidential Apple information on social media and to the press. Apple therefore will need to produce documents pertaining to the confidential information that Plaintiff leaked. Apple also may need to demonstrate that it terminated other employees for similar reasons, which will necessarily implicate third-party privacy concerns that can only be mitigated through a protective order. Further, Section 5.1 of the Model Order requires the parties to invoke confidentiality designations in good faith, and Section 6 establishes a process by which a party may contest confidentiality designations that places the burden on the designating party to establish that documents so designated meet the applicable confidentiality standard.

Plaintiff previously agreed. The parties met and conferred on March 25, 2025 in a recorded call, which included in relevant part:

| | |
|---|---|
| **PLAINTIFF:** | So it sounds like [Judge Westmore's] going to issue the default [protective order] anyways. I do not want Apple's modified one – |
| **APPLE'S COUNSEL:** | Okay. |
| **PLAINTIFF:** | – but the default one. We're just gonna have to go – I'm gonna have to challenge stuff if Apple abuses it, and we'll just have to go through that process… |
| **APPPLE'S COUNSEL:** | Yeah, there's a process in there. If you disagree with the designations, there's a process to be followed … If you're just ready to go with the model one … then we'll just go with the model one. |
| **PLAINTIFF:** | Yeah, the model one. So we can stipulate to that. That might make [Judge Westmore] happy that we actually agreed to something. |

Following the call, Plaintiff confirmed in writing via email that the parties had agreed to stipulate to the Model Order. *See* Ex. A ("We agreed to stipulate to the CAND model protective order.").

On April 8, 2025 and again on April 16, 2025, counsel for Apple emailed Plaintiff a copy of the Model Order and asked for permission to sign her name to it and submit it to the Court. **Ex. C**; **Ex. D** at 2. Plaintiff responded, insisting that she has "consistently stated that [she does] not want to enter into any confidentiality agreement at all[.]" *Id.* On April 28, 2025, the parties agreed

JOINT LETTER RE: PROTECTIVE ORDER
[23-CV-4597-EMC]

to a second meet and confer regarding the Model Order. *See* Ex. B. Apple's counsel asked Plaintiff, "Please send us a redline of the model protective order with the changes you propose in advance of the call so that we can have a productive discussion." *Id.* at 2. Plaintiff responded, "I respectfully decline Apple's prior request that I unilaterally submit draft proposals." *Id.* at 1.

Plaintiff has stated that she prefers that Apple redact confidential information contained in documents it produces rather than produce them under any protective order. However, this would inhibit Apple's ability to demonstrate that Plaintiff improperly disclosed Apple's confidential information—which necessarily requires producing evidence of the confidential information that was disclosed. Plaintiff also believes the Confidentiality and Intellectual Property Agreement ("IPA") she signed during her employment with Apple is sufficient. But the IPA does not govern how documents produced in this litigation should be handled or filed, does not include a process for challenging designations, and does not address what to do with such information at the conclusion of this litigation. Nor would the IPA necessarily cover all confidential information that might be produced in this litigation.  As a result, the Model Order is appropriate and should be entered in this case.

Dated: May 13, 2025                     By:   _____
                                                    */s/ Ashley M. Gjovik*
                                              ASHLEY M. GJOVIK
                                                      Plaintiff


Dated: May 13, 2025                     By:   _____
                                                  */s/ Melinda S. Riechert*
                                            MELINDA S. RIECHERT
                                         Attorneys for Defendant Apple Inc.


## CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION

Per L.R. 5-1(i)(3), I attest the other signatory has concurred in the filing of this document.

Dated: May 13, 2025                       _____
                                                 */s/ Ashley M. Gjovik*
                                              Ashley M. Gjovik

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | **U.S. C.A. Case No. 25-2028** |
| | **U.S. D.C. Case No. 3:23-CV-04597-EMC** |
| **ASHLEY GJOVIK**, | |
| *an individual*, | **US NLRB Case No. 32-CA-284428, 32-CA-282142, 32-CA-283161, & 32-CA-284441** |
| Plaintiff, | |
| v. | |
| | **PLAINTIFF′S EXHIBITS** |
| **APPLE INC**, | |
| *a corporation*, | **IN OBJECTION TO DEF.′S REQUEST FOR A BLANKET PROTECTIVE ORDER** |
| Defendant. | |

# Exhibit A

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**SETTLEMENT AGREEMENT**

**IN THE MATTER OF**

**APPLE INC.**                                                      **Case 32-CA-284428**

Subject to the approval of the Regional Director for the National Labor Relations Board, the Charged Party Apple Inc. and the Charging Party Ashley Marie Gjovik

**HEREBY AGREE TO SETTLE THE ABOVE MATTER AS FOLLOWS**:

**POSTING OF NOTICE TO EMPLOYEES** — The Charged Party will post a link to a copy of the Notice in English and in additional languages if the Regional Director decides that it is appropriate to do so, on the Policies and Notices page of its People intranet and keep such link continuously posted there for 60 consecutive days from the date it was originally posted. Such link will read, "This Notice is Posted Pursuant to a Settlement Agreement Approved by the Regional Director of Region 21 of the National Labor Relations Board in Case 32-CA-284428." Charged Party will also post, on a public-facing website maintained indefinitely by Charged Party containing legal notices, an explanation of revisions to the definition of Confidential Information (or comparable term) in the Confidentiality and Intellectual Property Agreement. To document its compliance with this requirement, the Charged Party will submit screen shots of the posting to include screen shots of the path to the intranet page that shows the Notice, along with a fully completed Certification of Posting form, via the Agency's e-filing portal at www.nlrb.gov.  Should further investigation or verification of the intranet or website posting become necessary, the Charged Party will provide appropriate intranet or website access to the Compliance Assistant or Compliance Officer assigned to the case(s).

**COMPLIANCE WITH NOTICE** — The Charged Party will comply with all the terms and provisions of said Notice**.**

**NON-ADMISSION**—By entering into this Agreement the Charged Party does not admit to any violation of the National Labor Relations Act ("Act").

**ADDITIONAL TERMS** – The Charged Party agrees that it will not enforce the definition of Proprietary Information (or similar terms) set forth in any version of the Confidentiality and Intellectual Property Agreement ("IPA") effective as of the date that this Agreement is executed to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act.

A further material term of this Agreement is that the Charged Party is directed to prospectively clarify the definition of Proprietary Information (or similar terms) in the IPA and make other clarifications to the IPA relating to the Section 7 rights of employees or at its option issue a new IPA for certain employees with prospective effect, with such clarified definition of Proprietary

Charged Party Initials: __MLS__                    Charging Party Initials: __AMG__

Information (or similar terms) or such new agreement as reflected in the attached Appendix A, and has agreed to revise certain other policies, as reflected in the attached Appendix B.[1]

**SCOPE OF THE AGREEMENT** — This Agreement settles only the allegations in the above-captioned case(s), including all allegations covered by the attached Notice to Employees made part of this agreement, and does not settle any other case(s) or matters, including, but not limited to, 32-CA-282142, 32-CA-283161, and 32-CA-284441. It does not prevent persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters that happened before this Agreement was approved regardless of whether General Counsel knew of those matters or could have easily found them out. The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the above-captioned case(s) for any relevant purpose in the litigation of this or any other case(s), and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.

**PARTIES TO THE AGREEMENT** — If the Charging Party fails or refuses to become a party to this Agreement and the Regional Director determines that it will promote the policies of the National Labor Relations Act, the Regional Director may approve the settlement agreement and decline to issue or reissue a Complaint in this matter. If that occurs, this Agreement shall be between the Charged Party and the undersigned Regional Director. In that case, a Charging Party may request review of the decision to approve the Agreement. If the General Counsel does not sustain the Regional Director's approval, this Agreement shall be null and void.

**AUTHORIZATION TO PROVIDE COMPLIANCE INFORMATION AND NOTICES DIRECTLY TO CHARGED PARTY** — Counsel for the Charged Party authorizes the Regional Office to forward the cover letter describing the general expectations and instructions to achieve compliance, a conformed settlement, original notices and a certification of posting directly to the Charged Party. If such authorization is granted, Counsel will be simultaneously served with a courtesy copy of these documents.

Yes _____        No  MLS  _____
           Initials                              Initials

**PERFORMANCE** — Performance by the Charged Party with the terms and provisions of this Agreement shall commence immediately after the Agreement is approved by the Regional Director, or if the Charging Party does not enter into this Agreement, performance shall commence immediately upon receipt by the Charged Party of notice that no review has been requested or that the General Counsel has sustained the Regional Director. The Charged Party agrees that in case of non-compliance with any of the terms of this Settlement Agreement by the Charged Party, and after 14 days notice from the Regional Director of the National Labor Relations Board of such non-compliance without remedy by the Charged Party, the Regional Director will reissue the complaint previously issued on October 3, 2024, in the instant case. Thereafter, the General Counsel may file a motion for default judgment with the Board on the

---

[1] Charged Party, through counsel, will provide Charging Party with notice of these revisions.

Charged Party Initials:  MLS  _____            Charging Party Initials:  AMG  _____

allegations of the complaint. The Charged Party understands and agrees that the allegations of the aforementioned complaint will be deemed admitted and its Answer to such complaint will be considered withdrawn. The only issue that may be raised before the Board is whether the Charged Party defaulted on the terms of this Settlement Agreement. The Board may then, without necessity of trial or any other proceeding, find all allegations of the complaint to be true and make findings of fact and conclusions of law consistent with those allegations adverse to the Charged Party on all issues raised by the pleadings. The Board may then issue an order providing a full remedy for the violations found as is appropriate to remedy such violations. The parties further agree that a U.S. Court of Appeals Judgment may be entered enforcing the Board order ex parte, after service or attempted service upon Charged Party/Respondent at the last address provided to the General Counsel.

**NOTIFICATION OF COMPLIANCE** — Each party to this Agreement will notify the Regional Director in writing what steps the Charged Party has taken to comply with the Agreement.  This notification shall be given within 5 days, and again after 60 days, from the date of the approval of this Agreement.  If the Charging Party does not enter into this Agreement, initial notice shall be given within 5 days after notification from the Regional Director that the Charging Party did not request review or that the General Counsel sustained the Regional Director's approval of this agreement.  No further action shall be taken in the above captioned case(s) provided that the Charged Party complies with the terms and conditions of this Settlement Agreement and Notice.

| **Charged Party Apple Inc.** | **Charging Party Ashley Marie Gjovik** |
|---|---|
| By:        Name and Title      Date | By:        Name and Title                  Date |
| /s/ Mark L. Stolzenburg        March 25, 2025 | *Ashley M. Gjovik*        April 3 2025 |
| Print Name and Title below | Print Name and Title below |
| Attorney for Apple Inc. | **Ashley M. Gjovik, Charging Party** |
| Recommended By:                    Date | Approved By:                          Date |
| /s/ Elvira Pereda        4/4/2025 | *NM Gol*    Digitally signed by NATHAN SEIDMAN  Date: 2025.04.04 11:53:05 -07'00' |
| ELVIRA PEREDA | NATHAN M. SEIDMAN |
| Counsel for the Acting General Counsel | Acting Regional Director, Region 21 |

Charged Party Initials: __MLS__          Charging Party Initials: __AMG__

32-CA-284428

FORM NLRB-4722




# NOTICE TO EMPLOYEES

## POSTED PURSUANT TO A SETTLEMENT AGREEMENT APPROVED BY A REGIONAL DIRECTOR OF THE NATIONAL LABOR RELATIONS BOARD

### AN AGENCY OF THE UNITED STATES GOVERNMENT

**THE NATIONAL LABOR RELATIONS ACT GIVES YOU THE RIGHT TO:**

- Form, join, or assist a union;
- Choose a representative to bargain with us on your behalf;
- Act together with other employees for your benefit and protection;
- Choose not to engage in any of these protected activities.

**WE WILL NOT** interfere with, restrain, or coerce you in the exercise of the above rights.

**YOU HAVE THE RIGHT** to discuss wages, hours and working conditions and **WE WILL NOT** do anything to interfere with your exercise of that right.

**WE WILL NOT** promulgate, maintain, or enforce any rule that defines confidential information as "anything not explicitly, publicly, or purposefully disclosed by Apple."

**WE WILL NOT** promulgate, maintain, or enforce a Confidentiality and Intellectual Property Agreement, Business Conduct Policy, Misconduct and Discipline Policy, Social Media and Online Communications Policy, Confidentiality Obligations Upon Termination of Employment statement, or a Business Conduct and Global Compliance FAQ regarding confidential information that broadly defines "confidential" or "proprietary" information, or relies upon any other overly broad definitions of those terms, without contemporaneously notifying employees of their rights to discuss wages, hours, or working conditions and their rights to engage in union or other protected, concerted activity under the NLRA.

**WE WILL NOT** promulgate, maintain, or enforce a Business Conduct Policy that broadly restricts public speaking, responses to press inquiries and publishing articles without contemporaneously notifying employees of their rights to speak publicly, respond to press inquiries and publish articles regarding their wages, hours, or working conditions, or their union or other protected, concerted activity under the NLRA.

**WE WILL NOT** promulgate, maintain, or enforce a Business Conduct Policy that broadly restricts "conflicts of interest" or "outside activities," without contemporaneously notifying employees that such policies do not restrict their right to form, join or assist a union, or engage in other protected, concerted activity and that these activities are not considered to be conflicts of interest or outside activities under such policy.

**WE WILL NOT** promulgate, maintain, or enforce a Business Conduct Policy that broadly prohibits sharing of employee personal identifying information if such policy could be interpreted as prohibiting the sharing of personal contact information, employment history, compensation or other terms and conditions of employment.

**WE WILL NOT** promulgate, maintain, or enforce a Workplace Searches and Privacy Policy that advises you that we have the right to access Apple's network or systems, or any non-Apple device used to conduct Apple business, without contemporaneously advising you that we will not exercise our right of access to monitor your union or other protected, concerted activity.

The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. We conduct secret-ballot elections to determine whether employees want union representation and we investigate and remedy unfair labor practices by employers and unions. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below or you may call the Board's toll-free number 1-844-762-NLRB (1-844-762-6572). Hearing impaired callers who wish to speak to an Agency representative should contact the Federal Relay Service (link is external) by visiting its website at https://www.federalrelay.us/tty (link is external), calling one of its toll free numbers and asking its Communications Assistant to call our toll free number at 1-844-762-NLRB.
**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE.**
THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST NOT BE ALTERED DEFACED OR COVERED BY ANY OTHER MATERIAL. ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE WITH ITS PROVISIONS MAY BE DIRECTED
TO: THE ASSISTANT TO THE REGIONAL DIRECTOR NATHAN SEIDMAN AT nathan.seidman@nlrb.gov or (213) 894-2818. **PANEL 1 OF 3**

32-CA-284428

FORM NLRB-4722



# NOTICE TO EMPLOYEES



### POSTED PURSUANT TO A SETTLEMENT AGREEMENT APPROVED BY A REGIONAL DIRECTOR OF THE NATIONAL LABOR RELATIONS BOARD

### AN AGENCY OF THE UNITED STATES GOVERNMENT

**THE NATIONAL LABOR RELATIONS ACT GIVES YOU THE RIGHT TO:**

- Form, join, or assist a union;
- Choose a representative to bargain with your employer on your behalf;
- Act together with other employees for your benefit and protection;
- Choose not to engage in any of these protected activities.

**WE WILL NOT** promulgate, maintain, or enforce a Misconduct and Discipline Policy that fails to reiterate employee rights during investigations that Apple may conduct regarding alleged unfair labor practices under the National Labor Relations Act, and/or contains overly broad restrictions on photography and recording.

**WE WILL NOT** advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information or for failing to report alleged violations of overly broad rules relating to confidential or proprietary information.

**WE WILL NOT** advise you that you are subject to discipline for violating overly broad rules regarding photographing, video or audio recording that prohibit the recording of protected, concerted activity.

**WE HAVE** clarified the aspects of the Confidentiality and Intellectual Property Agreement described above and revised it to make clear that the definition of "Proprietary Information," which was changed to "Apple Confidential Information," does not include wages, hours, and working conditions, to reiterate employee rights about discussing terms and conditions of employment and reporting to governmental agencies, and to make clear that prohibitions against "conflicting outside interests" do not cover forming or joining (or refraining from joining) labor organizations of an employee's choice and **WE HAVE** informed employees of these clarifications.

**WE HAVE** rescinded the aspects of Business Conduct and Global Compliance FAQ regarding Confidential Information described above and revised it to conform with the definition of Apple Confidential Information described above and **WE HAVE** informed employees of these revisions.

**WE HAVE** rescinded the aspects of the Business Conduct Policy described above and revised it to make clear that Apple Confidential Information does not include wages, hours, and working conditions, that employees may communicate about labor disputes, to clarify that employees may not respond to public inquiries or participate in speaking engagements where employees could be construed as speaking on behalf of Apple, to clarify that employees may publish articles but must receive approval about articles about Apple products or services or could be seen as a conflict of interest, make clear that a conflict of interest does not include forming, joining, or assisting a union, or engaging in protected, concerted activity, to make clear that employees do not need to notify a manager of outside employment that complies with our policy, and to inform employees that searches will not be used to monitor employees' protected, concerted activity, and **WE HAVE** informed employees of these revisions.

*The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. We conduct secret-ballot elections to determine whether employees want union representation and we investigate and remedy unfair labor practices by employers and unions. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below or you may call the Board's toll-free number 1-844-762-NLRB (1-844-762-6572). Hearing impaired callers who wish to speak to an Agency representative should contact the Federal Relay Service (link is external) by visiting its website at https://www.federalrelay.us/tty (link is external), calling one of its toll free numbers and asking its Communications Assistant to call our toll free number at 1-844-762-NLRB.*

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE.**

THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST NOT BE ALTERED DEFACED OR COVERED BY ANY OTHER MATERIAL. ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE WITH ITS PROVISIONS MAY BE DIRECTED TO **THE ASSISTANT TO THE REGIONAL DIRECTOR NATHAN SEIDMAN AT nathan.seidman@nlrb.gov or (213) 634-6518.**

**PANEL 2 OF 3**

32-CA-284428

FORM NLRB-4722





# NOTICE TO EMPLOYEES

**POSTED PURSUANT TO A SETTLEMENT AGREEMENT
APPROVED BY A REGIONAL DIRECTOR OF THE
NATIONAL LABOR RELATIONS BOARD**

## AN AGENCY OF THE UNITED STATES GOVERNMENT

**THE NATIONAL LABOR RELATIONS ACT GIVES YOU THE RIGHT TO:**

- Form, join, or assist a union;
- Choose a representative to bargain with your employer on your behalf;
- Act together with other employees for your benefit and protection;
- Choose not to engage in any of these protected activities.

**WE HAVE** rescinded the aspects of the Workplace Searches and Privacy Policy described above and revised it to conform with the definition of Apple Confidential Information described above and to inform employees that searches will not be used to monitor employees' protected, concerted activity and **WE HAVE** informed employees of these revisions.

**WE HAVE** rescinded the aspects of the Misconduct and Discipline Policy described above and revised it to conform with the definition of Apple Confidential Information described above, to reiterate employee rights under the National Labor Relations Act relating to certain workplace investigations relating to alleged unfair labor practices under the National Labor Relations Act, to clarify when recording and photography is permitted and prohibited, and **WE HAVE** informed employees of these revisions.

**WE HAVE** rescinded the aspects of the Social Media and Online Communications Policy described above and revised it to conform with the definition of Apple Confidential Information described above and **WE HAVE** informed employees of these revisions.

**WE HAVE** rescinded the prior version of the Confidentiality Obligations Upon Termination of Employment statement, which contained an overbroad definition of proprietary information, and revised it to conform with the definition of Apple Confidential Information described above and **WE HAVE** informed employees of these revisions.

**WE WILL NOT** in any like or related manner interfere with your rights under Section 7 of the Act.

**APPLE INC.**

_____
(Charged Party)

**Dated:** _____   **By:** _____
                                    (Representative)          (Title)

*The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. We conduct secret-ballot elections to determine whether employees want union representation and we investigate and remedy unfair labor practices by employers and unions. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below or you may call the Board's toll-free number 1-844-762-NLRB (1-844-762-6572). Hearing impaired callers who wish to speak to an Agency representative should contact the Federal Relay Service (link is external) by visiting its website at https://www.federalrelay.us/tty (link is external), calling one of its toll free numbers and asking its Communications Assistant to call our toll free number at 1-844-762-NLRB.*

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE.**

THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST NOT BE ALTERED DEFACED OR COVERED BY ANY OTHER MATERIAL. ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE WITH ITS PROVISIONS MAY BE DIRECTED TO **THE ASSISTANT TO THE REGIONAL DIRECTOR NATHAN SEIDMAN AT** nathan.seidman@nlrb.gov **or (213) 634-6510.**

**PANEL 3 OF 3**

Exhibit B

**Ashley M. Gjovik, JD**
*In Propria Persona*
April 25 2025.
legal@ashleygjovik.com

# United States District Court

## Northern District of California

<table>
<tr><td>

**Ashley M. Gjovik,**

*an individual,*


Plaintiff,


vs.


**Apple Inc.,**

*a corporation,*


Defendant.

</td><td>

**Plaintiff's Response to Defendant's Request for Protective Order**

**(No Formal Request Filed by Defendant)**


**U.S. District Court Case No.:**
- *Gjovik v. Apple,* 3:23-CV-04597-EMC


**Related Cases:**
- **U.S. Court of Appeals for the Ninth Circuit:** 25-2028; 24-6058
- **U.S. NLRB Case. No.'s:** 32-CA-282142; 32-CA-283161; 32-CA-284428; 32-CA-284441
- **U.S. Dept. of Labor ARB Case No.'s:** 2024-0060; 2024-CER-00001.
- **U.S. EPA & California EPA BAAQMD** enforcement actions

</td></tr>
</table>

# TABLE OF CONTENTS

**PLAINTIFF'S OBJECTIONS TO PROPOSED PROTECTIVE ORDER AND DEMAND FOR CLARIFICATION ..................................................2**

I.    **Procedural Background ............................................................. 2**

II.    **Objections ....................................................................... 2**

    A.    Lack of Good Cause ........................................................ 2

    B.    Standing Order Violation................................................... 3

III.    **Conflict with NLRB Settlement and Pending Violations ............... 3**

IV.    **Retaliatory and Coercive Conduct ........................................... 3**

V.    **Constitutional and Statutory Protections: Prior Restraint and NLRA Violations ...................................................................... 4**

VI.    **Demand for Clarification ..................................................... 5**

VII.    **Conclusion and Reservation of Rights ................................... 6**

# PLAINTIFF'S OBJECTIONS TO PROPOSED PROTECTIVE ORDER AND DEMAND FOR CLARIFICATION

1.     Plaintiff Ashley M. Gjovik, appearing pro se, hereby submits these formal objections and requests clarification concerning Defendant Apple Inc.'s proposed protective order, pursuant to Federal Rule of Civil Procedure 26(c) and Judge Westmore's Standing Order (rev. May 9, 2024).

## I.  PROCEDURAL BACKGROUND

2.     On May 2, 2025, Defendant Apple Inc. indicated its intent to unilaterally submit a discovery letter and proposed protective order to the Court immediately following a scheduled 4:00 PM meet and confer. Plaintiff objects on the basis that:

1. Judge Westmore's Standing Order ¶¶13–14 requires a joint discovery letter no more than five (5) business days after a real-time meet and confer.

2. Defendant has rejected all offers to co-draft a joint letter or provide redlines.

3. Defendant has refused to identify the categories of documents it seeks to protect, explain its confidentiality rationale, or demonstrate good cause as required by Rule 26(c).

4. Defendant has repeatedly refused to clarify whether any further production is forthcoming or whether its production is complete.

## II.  OBJECTIONS

3.     Plaintiff objects on the following grounds:

## A.  LACK OF GOOD CAUSE

4.    Defendant has failed to make the "particular and specific demonstration of fact" required to justify a protective order. See *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Broad claims of confidentiality and vague references to potential future harm are not sufficient under Rule 26(c).

## B.  Standing Order Violation

5.    Defendant's stated plan to file a unilateral discovery letter violates ¶14 of the Standing Order, which mandates a joint submission unless one party refuses after good-faith effort. Plaintiff has made multiple attempts to meet and confer and was explicitly willing to file a joint letter per Standing Order.

## III.  Conflict with NLRB Settlement and Pending Violations

6.    Apple's ongoing assertions of "confidentiality" directly conflict with its April 2025 NLRB settlement agreement in Case No. 32-CA-284428. That agreement requires Apple to:

- Rescind its overbroad confidentiality definitions, including those in the IPA and Business Conduct Policy;
- Refrain from threats or discipline relating to protected disclosures;
- Post mandatory public disclosures acknowledging the limits of "Apple Confidential" material.

7.    Apple's refusal to explain why this federal agreement does not preclude its current protective order demand undermines its credibility and indicates bad faith.

## IV.  Retaliatory and Coercive Conduct

8.    Plaintiff has documented:
- Threats of Rule 11 sanctions tied to NLRB participation;

- Misuse of the protective order "to threaten" the Plaintiff (transcripts on record);
- Filing litigation positions that contradict binding administrative agreements;
- A pattern of conduct inconsistent with transparency or lawful advocacy.

9.    This context renders the current attempt to impose confidentiality inherently coercive and prejudicial.

## V.  Constitutional and Statutory Protections: Prior Restraint and NLRA Violations

10.    Plaintiff objects not only on procedural and factual grounds, but also on the basis that entry of a protective order under the circumstances Apple now seeks would be unconstitutional and illegal.

11.    As a former employee and current whistleblower protected under Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, and the April 2025 NLRB settlement agreement in Case No. 32-CA-284428, Plaintiff retains an unqualified federal right to speak publicly and participate in legal proceedings regarding workplace conditions, misconduct, and protected disclosures. Any attempt to silence such speech by means of a court order is preempted by federal labor law.

12.    Separately, Plaintiff asserts that Apple's proposed protective order — if granted over her express objections, without a showing of good cause, and applied to non-confidential or previously disclosed information — would operate as a prior restraint on speech in violation of the First Amendment.

13.    Under longstanding Supreme Court precedent Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity. *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963)

14.    A protective order that suppresses truthful, non-confidential information — especially where the subject matter involves public interest and regulatory compliance — must satisfy strict scrutiny, and Apple has not attempted to meet this burden.

15.    Plaintiff places both Apple and the Court on notice: If a protective order is granted and Apple misuses it even once to chill or suppress protected speech, Plaintiff will immediately seek appellate review by the Ninth Circuit, pursuant to Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), and subsequent First Amendment doctrine governing court-issued confidentiality orders.

16.    Given Apple's past and ongoing retaliatory threats — including demands for Rule 11 sanctions, refusal to define "confidential," and attempts to suppress speech about government proceedings — the constitutional implications of any court order granting Apple's request without narrowly tailored, factual justification are profound.

## VI. Demand for Clarification

17.    To facilitate any further meet and confer, and to properly evaluate any forthcoming motion, Plaintiff hereby requests that Defendant respond in writing within 14 calendar days to the following questions:

1.    What specific documents or categories of documents does Defendant believe require confidentiality protections?

2.    Is Defendant withholding documents pending a protective order? If not, what is the urgency in filing unilaterally?

3.    Why are existing IP/confidentiality agreements insufficient to protect any legitimate proprietary information?

4.    Why has Defendant refused to consider targeted redaction or privilege logs as a less restrictive alternative?

5. What specific harm does Defendant claim would result from public disclosure of any discovery documents?

6. Does Defendant agree that the NLRB settlement prohibits use of certain confidentiality clauses as a basis for litigation or threats?

7. Will Defendant agree to pause protective order briefing until a joint letter is finalized, as required by the Standing Order?

This seems like a basic first step in this process.

## VII. Conclusion and Reservation of Rights

18.     Plaintiff remains available to engage in a good-faith, joint drafting process for a discovery letter as required. However, until Defendant provides clear answers to the above and complies with Rule 26 and this Court's procedural rules, Plaintiff objects to entry of any protective order, reserves all rights, and will seek appropriate judicial relief if a unilateral filing proceeds.

Respectfully submitted,



---

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*
Dated: May 2, 2025

Exhibit C

# RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com> |
| CC | Riechert, Melinda<mriechert@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Luo, Ashley<aluo@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Riechert, Melinda<mriechert@orrick.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, kelcey.phillips@morganlewis.com |
| Date | Friday, May 2nd, 2025 at 5:51 PM |

Dear Counsel,

Thank you for meeting today to discuss the pending discovery and case management issues.

Pursuant to Judge Westmore's Standing Order, please provide a copy of the recording from our meet and confer at your earliest availability.

As noted during the call, I will be focused on my Ninth Circuit opening brief until it is filed on May 6, 2025. In the meantime, feel free to send any initial joint letter drafts, and I will review and respond starting May 7.

## Discovery Plan & Scheduling
As discussed, I will send you on May 7:
    - A draft joint letter to Judge Westmore regarding the absence of a discovery plan, and
    - An alternative draft stipulated case management statement and proposed Rule 16(b) schedule for submission to Judge Chen.

If Apple is willing to stipulate to the schedule and plan, we can file those materials jointly to Judge Chen and Judge Westmore. If not, I will proceed to finalize and file the joint (or individual) letter on the discovery plan dispute by May 9, 2025, in accordance with Standing Order ¶14. Please confirm by May 9 whether you intend to join either filing.

## Interrogatories & Follow-Up
As discussed, I will provide updated interrogatory responses next week or the week after, including:
    - A corrected version with a sworn verification statement, and
    - Clarifications and proposed modifications to scope and timing.

To reiterate: I have not refused to answer Apple's interrogatories. I raised objections and proposals — which we discussed today — regarding how best to respond within procedural and privacy boundaries.

## Privilege Log & Depositions
I will send a formal challenge letter regarding specific entries in Apple's privilege log, along with requests for clarification, as a starting point for resolving disputes collaboratively.

Thank you for confirming that you are gathering further information regarding witness availability for depositions.

## Confidentiality & Protective Order
We discussed the following:
    - I asked why redactions cannot be used instead of a protective order. Apple provided only one example (document authentication) and asserted that redaction would not work for "anything."
    - I asked why my existing IPA does not cover the allegedly confidential information. Apple responded that I had already violated that agreement. When I asked what a protective order provides that the IPA does not, Apple acknowledged that a protective order allows them to seek sanctions in court directly, rather than filing a separate breach of contract or trade secret suit.
    - Apple stated that documents are being withheld under a confidentiality claim, but refused to identify which documents or how many. Apple said it is considering my request to at least disclose the number being withheld.

## Disqualification

Exhibit D

# Gjovik v Apple 2025-05-02 Meet and Confer Recording

[Ashley Gjovik (Pro Se)] (0:03 - 0:11)

Beautiful. And I know we've had some conflicts about having witnesses, but I did bring a witness today.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (0:12 - 0:31)

I see that. What's your witness? You have to disclose the name of your witness for the record.

I know. Will you allow this one time, this exception? One time exception.

State the name of your witness for the record. This is Captain Jake Ballard. Hello, Captain.

How are you today? Mama being a good girl?

[Ashley Gjovik (Pro Se)] (0:32 - 0:39)

Taking you for lots of walks? All through the night, and he's like, I really don't like this. I want to play fetch.

I want to go outside. And I'm like, hold on, I know.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (0:40 - 0:57)

All right. Well, we have to take care of our pets. I have a Boston Terrier myself.

You have two dogs or one dog? Just one, a Boston Terrier. My name is Bella, and she's beautiful.

Bella? Yes, Bella the Beautiful. That's pretty.

[Ashley Gjovik (Pro Se)] (0:58 - 1:18)

Dogs are the best. I thought it would be more straightforward. The last thing I said was just the questions to ask, and then we can just go through them, even if it's something that maybe we think we've kind of talked about prior.

At least just get a solid yes, no to help us move forward on next steps.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:19 - 2:00)

All right. Well, I just got your email. I haven't had much time to study it.

I haven't eaten yet today, so I can take a bite if you want to skim so I can eat something today. No, please eat. Absolutely eat.

Very important. I skimmed it. I just don't have answers to all your questions, but I thought we

should start with a protective order because that seems to be the most urgent.

I'm a little surprised because I have both in writing from you and orally during our last meet and confer that you were fine with the model protective order, and that's why we were going to submit it. But then it sounds like, and I just asked for your permission to send it in, and then it doesn't sound like you're fine with it anymore.

[Ashley Gjovik (Pro Se)] (2:01 - 2:34)

That's a very small window of occurrences, disregarding everything that happened for years prior and everything that's happened in the weeks since. As you know, you found the most favorable view of your current argument, and I was open to potentially just acquiescing on it prior to all the most recent threats and aggression. But even then when I said, should we do it, you guys didn't respond.

We actually expired that window after our last meet and confer, because you guys wouldn't respond whether you wanted it or not. You wanted to add something about clawbacks for privilege, and then just didn't respond at all. So I don't think you can put this on me.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (2:35 - 3:00)

Well, it said in writing and orally that you were fine with it, so I have to get your permission to send it to the judge because you had said you were fine with it, that's what I had asked for. But whatever. We want the memorial protective order.

You want us to take—and you don't want it. I guess you now want us to take it to the magistrate with a three-page document.

[Ashley Gjovik (Pro Se)] (3:00 - 4:55)

I would prefer that we don't have to escalate it at all. I feel like there's some very basic fundamental things that we still have not talked through that might even eliminate the need for such a drastic remedy like a protective order. Like, for instance, Apple's still not disclosed to me if they're holding back any docs under that order, if so, what they are, what the justification is of that privilege.

You know, that's—if there's not even—I think at one point you said you were done producing, so if that's true, there's no documents, why do you need the order? If you are holding back stuff, what exactly is the justification? And this goes—this is extremely critical now.

Again, that acquiescence was prior to Apple's national settlement with the NLRB over their confidentiality policies and then immediately violating it multiple times to me, at least. So, like, there's a lot, you know, we can't just package up one statement in isolation when you wore me down after three years. There's a lot of concerns, but again, like, I don't even know if we need this order.

It's my position why I'm so—why I get so confused why Apple is pushing so hard on something so blunt and broad and severe when we haven't even talked about could we use redactions? Like, if I know what kind of documents you're saying you don't want to release, which you won't tell me, but if you were to tell me, here's an example of what that would look like, we could talk through it potentially of, like, well, I don't need those code names. You can react those code names unless I need to come back later and ask for more, but we can do it later if we have to do that.

Like, that seems simple. The very beginning, I even—because I know Apple, I worked in Apple legal, I know how they are, so I volunteer. I could come to an Oracle office and just look at the stuff in your office of the most contentious stuff and then ask specifically, like, that is so—me offering something that is, like, supposed to be my right to get this stuff to begin with.

So I've been, like, trying to find ways to compromise. They'll give Apple some of the stuff it wants, but I can still get access to the information I need and try to figure out the case strategy and understand what Apple's case strategy is.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (4:57 - 5:53)

Okay, so first of all, yes, we are withholding documents pursuant to the lack of a protective order. We've produced the documents that were not subject, that are not confidential, that we don't think need to be produced pursuant to protective order. So it's not correct that we've agreed we produced all documents.

We've only agreed to be produced all documents other than those that we intend to produce under a protective order. Secondly, protective order is standard in all cases. I have never had a case where we didn't have one.

Third, you wanted an example. For example, one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one.

I need to show you the entire document so that you can agree that that is the document that you signed. And so a reduction doesn't help because— I signed.

[Ashley Gjovik (Pro Se)] (5:53 - 5:58)

You won't give me a copy of a contract I signed without a confidentiality order about the contract.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (5:59 - 6:05)

I will not give you a copy of the consent order, the consent agreement that you signed without a confidentiality agreement.

[Ashley Gjovik (Pro Se)] (6:05 - 6:43)

Turboscribe AI Transcription

That's just one example of many— That's exactly why you won't tell me this stuff and why I want to know it. Because I'm like, yes, we will contest that to a judge because that's also like the nexus of the case. If you can't say some weird contract that probably has a bunch of illegal terms that I was coerced into signing with armed guards in a parking lot on a 100-degree day is somehow confidential and I can't even tell people what's in this agreement I signed and you won't give me a copy.

I think that violates contract law, employment law, labor law, probably like Dodd-Frank sock stuff. So each of these are things that I think are ripe issues to bring in front of the court for the purpose of public policy conversations.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (6:43 - 6:46)

And you're absolutely entitled to do that under the protective order.

[Ashley Gjovik (Pro Se)] (6:46 - 6:54)

But doesn't that give you kind of this blank until it is resolved I can be jailed for talking about whatever it is?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (6:55 - 7:02)

I don't know if jailed is the right word, but you would be subject to the protective order. Yes, you could be held in contempt if you violate it.

[Ashley Gjovik (Pro Se)] (7:02 - 7:19)

That's prior restraint. And if I know you're going to do prior restraint on stuff that I believe in my heart of hearts violates public policy and the law, like I would not intentionally enter into that kind of agreement with Apple again. I did that a few times and now we're here sorting that out.

I'm not going to do that again.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (7:19 - 7:39)

So we want a protective order. We want the model protective order. If you don't want to enter into a protective or any protective order or the model one, then feel free to write the beginnings of the three-page letter.

We'll add our three-page letter, the rest of it to the three-page letter and we'll let the judge decide.

[Ashley Gjovik (Pro Se)] (7:39 - 7:44)

So we can do that, but I think we haven't addressed like why would redactions not address your concerns?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (7:44 - 8:12)

Because I need to show you the unredacted document for you to agree that it was the document you signed. That's just one of them. There are other things in there that are confidential and we want to produce them to you.

We think you're entitled to them and we'll give them to you, but we can't have you not agreeing that they remain confidential and that you'll use them pursuant to the protective order. That's all it is. This is really not a big thing.

[Ashley Gjovik (Pro Se)] (8:12 - 9:28)

So I would feel more comfortable, I think. I can't go into stuff just like, I assume Apple's going to do the right thing at this point, as you can imagine. So I just need some proof though.

If you could give me a confidentiality privilege law, which maybe you were even required to give me if you're withholding this stuff, I don't know. But actually detail like you did with the attorney client one of what the documents are. If I see stuff and I'm like, okay, that's in the realm of Apple normalcy.

I'm not going to fight that stuff. Maybe I let it go. But if I see stuff, like I saw with the attorney client privilege law, where I'm like, that's like seven motions coming out of this now.

I need to be able to tell what kind of stuff I need to deal with now, as you know, expert litigator. So I'm going to be really hard on this stuff because some of this stuff is intentionally you guys trying to go in and block me from not only my litigation advocacy, but my public policy advocacy about the cases. And so I see that I'm checking you.

I'm saying no for the joint letter. Yes, I will file a joint letter with you regardless. But I would like to talk more about like the confidentiality log, the narrow protective order, the redactions, also the IPA.

Why does my intellectual property agreement, especially for a contract you say I signed under my employment, if that is actually confidential, why does my IPA not cover that?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (9:28 - 9:39)

Because you'll recall that the whole issue in this case is that you posted documents in violation, what we believe is in violation of your IPA. That's what the case is about.

[Ashley Gjovik (Pro Se)] (9:39 - 9:42)

So if I actually violated it, you could sue me.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (9:44 - 9:45)

No.

Turboscribe AI Transcription

[Ashley Gjovik (Pro Se)] (9:45 - 9:55)

A freestanding agreement, right? You can sue me for leaking trade secrets, appropriating trade secrets, breach of contract. You just have to show damages, actual harm, and that what I did was actually a violation.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (9:56 - 10:07)

We are trying to protect our private and confidential information, and we want to produce it to you, and we want to do it through a protective order that is very standard in these types of litigation.

[Ashley Gjovik (Pro Se)] (10:07 - 11:09)

The way it's being interpreted is not standard and is contrary to every single piece of academic and litigation writing and judges writing and everything I've seen is this is the exact opposite of what these orders are supposed to be used for. And so you guys are very cleverly doing this is normal, this is modeled, but we're going to interpret it as. And so that's why I'm really putting my foot down of like, I'm not necessarily against it as a process generally.

I'm sure it works fine for cases, even there's probably employment cases where based on the situation, it might not be abused. But it is right for abuse here. It is already being used for abuse.

I've already had to file multiple charges to the federal government about this. So, you know, again, I would like to detail, like, are redactions sufficient to cover confidential information? And this could be you redacting an entire document as a starting point.

But like, if not, why are redactions not good enough?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (11:10 - 12:20)

We do not believe redactions are sufficient. I've given you one example. I want to show you a full and complete document and have you authenticate that that is a document that you signed.

There are many other documents that contain confidential information that you're entitled to see, that we want to give you, that are about this case, but that are confidential. And we want you to agree to keep them confidential. If you don't want to sign a protective order, that's fine.

You need to tell the judge why not. But I've been practicing law for over 40 years. I've never had this issue come up before with anybody subjected to a model protective order.

I'm not trying to interpret it. I just want it to be signed and entered. Then if you think that we, and then we will give you all the documents.

The way it works is you sign the protective order, the court enters it, we send you all the documents. Then you say to the judge, or you say to us in a meet and confer, this document should not be marked as confidential. And if we agree, then we'll take it out of the protective order.

If we disagree, then it goes to the judge, and the judge decides if it's within the protective order. That's all written in the protective order. There's a whole process for doing that.

[Ashley Gjovik (Pro Se)] (12:20 - 12:26)

I understand, but it gives you guys a lot more arena to harass me and accuse me of stuff and do all sorts of stuff.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (12:26 - 12:31)

I'm not doing anything. I'm just asking you to sign a protective order, and then we will give you documents.

[Ashley Gjovik (Pro Se)] (12:31 - 13:54)

I'm not signing another contract. Here's the thing. We can do the letter, you can ask.

If the court grants it, I'm pretty sure I will appeal it. Like, I will intervene because I'm not allowing Apple to put any other further restriction on me after everything that's happened the last how many years, and everything in this litigation. It's not fair play.

It's not going to be fair play. There's no reason to think it'd be fair play, and so I'm not allowing that to be put on me. We'll write the letter, but you said one, a document authorization.

That seems like something you could do with a request for admission. With a targeted, limited, little protective order, we could just stipulate to ourselves. If you're like, we want you to authorize this, but we don't want you to share this document, you could appeal that later, but can you just...

And then I'd probably be like, sure, fine, for the sake of authorizing. And if it is that document you mentioned prior, that's not even the document, the ones from 2017. So like, okay, it'd be good to get these conversations going.

I think there's ways to do this in a much more limited, constrained way. If you're saying that kind of agreement in an order where you could later say she lied and then she leaked it is not good enough. We need a protective order.

You're just saying we want a protective order because we want an easier way to get her into court jail. Like, I don't know what that is. And then what are the other examples?

Okay, document odd doesn't make sense with redactions, but then what are the other ones and

why wouldn't they make sense with redactions?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (13:55 - 14:08)

Yeah, I'm not going to go through every document that we believe is subject to the protective order. That's not what it's about. You get the protective order, we send you the documents, you disagree, we meet and confer, we take it to the judge.

That's the process.

[Ashley Gjovik (Pro Se)] (14:08 - 14:23)

Assumedly, if you're withholding documents, as you said, pending a protective order, you have already outlined each of these documents and why they are confidential and why they require a protective order. I am just asking for at least some summary of that information you would assumably already have on hand.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (14:24 - 14:25)

That's not the way it works.

[Ashley Gjovik (Pro Se)] (14:26 - 15:02)

It sounds like most of the time lawyers acquiesce to you guys and I understand why. I'm understanding so much about the economics of litigation that they can't make any money if they fight you on even 95% of the stuff you guys bring up. But you know, I'm in a different situation, so I'm going full public policy on all of this.

I'm broke anyway, my life's over anyways, so let's do this the right way. You're saying, and I want to say for these, you're saying point blank redactions aren't good enough, point blank the IPA doesn't cover stuff, won't cover this stuff, whatever is in this stuff you're currently holding back is not protected by the intellectual property agreement, is what you're saying?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (15:03 - 15:17)

No, that's not what I'm saying. I believe it is protected by that. But in this case, I want a protective order.

In addition to your IPA, in part because you already violated the IPA, but also that that's the way we handle it in litigation.

[Ashley Gjovik (Pro Se)] (15:18 - 15:48)

I don't want no tradition or consensus or status quo stuff, first principles of litigation. You're saying, okay, you're saying I breached my IPA according to you guys, and you're saying that's why you're fired and you sent emails about that. You have taken no action against me related to that.

It's not even a counterclaim, so that's kind of weak. And then also, is there any even like one example of me so far sharing something that you think was confidential that wasn't confidential like in the last like year?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (15:48 - 15:54)

I haven't sent you the confidential documents yet. And I have no idea who you shared documents with, sorry.

[Ashley Gjovik (Pro Se)] (15:55 - 17:50)

Held back all sorts of stuff that I have that I've been tweeting unredacted and sharing stuff and sharing with the press. So like we're clearly, and so what I'm saying, we're clearly not meeting, I understand why you want that, but what I'm gonna make clear in my side of this joint letter is this is Apple unilaterally trying to shut me up publicly. It's trying to get the court to do a prior restraint on me again with threat of incarceration if I was to violate it again for talking about my activism and public policy and these cases, and that's not cool.

And I don't know if you saw, but yesterday, this exact same courthouse referred Apple to, referred Apple's case to the USDOJ for a criminal investigation for obstruction of justice. So like, I don't think the mood in the courthouse is gonna be as chilled as you're maybe hoping it is normally. Like I think the situation raises, again, like I'm not just outright saying no, I'm like, let's talk about redactions.

Let's talk about the IPA. Let's talk about showing the documents you're withholding. Like if the documents you're saying you're withholding is like five things and it's things I don't even need, then why would I have that agreement put on me and enter all that stuff and go through all that drama if I don't even need that stuff?

You're giving me no information about what you're even holding back other than that one example, which sounds like was a fraudulent statement to the DOL about a document that wasn't actually the agreement that was signed. Like that's the one example. So I'm hoping we can like simplify and just talk about like what documents are being held back?

Are there other ways to get them forward? And if some type of protective order is needed, what are the specific like business requirements that you think that protective order is a solution for? And are there other solutions we could design for whatever your business requirements are that are not such a huge ultimate, like the ultimate major response to that type of situation that's zero to 60?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (17:51 - 18:06)

Okay, we want the protective order. It is the model. We will, once it's entered, we'll give you the documents.

If you disagree, we will submit a three-page brief to the judge. We'll write our page and a half. You write your page and a half and the judge will make a decision.

[Ashley Gjovik (Pro Se)] (18:08 - 18:18)

So you're refusing outright to talk any further about redactions or IPA coverage or any type of non-protective order type agreements to protect information.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (18:19 - 18:40)

Right, I believe that that is not sufficient. The IPA is not sufficient and redactions are not sufficient to deal with the issues that we have. We would give you too many redactions if we redacted out all the confidential stuff and that's not the purpose.

The purpose is for you to see the documents, not to see big black pages of documents because- What about when I said the in-camera review thing?

[Ashley Gjovik (Pro Se)] (18:40 - 18:56)

Like I go to an ORC office and you just show me whatever 20 documents. I want to show them to you in your deposition and that would become- In a deposition without me signing a confidentiality order, which would then also make the deposition confidential?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (18:57 - 18:57)

Correct.

[Ashley Gjovik (Pro Se)] (18:57 - 19:09)

If a reporter- Oh Melinda, you guys are so good at this. Like this is so exhausting and frustrating because you guys are like, wrote the playbook on every single part of this. Absolutely not.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (19:09 - 19:57)

Okay, so it is typical in cases that we handle that there are documents that are subject to a protective order and testimony that's subject to the protective order and if there are documents and testimony that's subject to protective order, we mark those documents and that testimony as subject to the protective order. The protective order deals with all of this. So that is the way it's handled.

If there is confidential stuff in the deposition or exhibits, then they are marked as confidential under the protective order. The rest of the deposition is not. The rest of the deposition that's not confidential is not subject to protective order.

I'm just talking about me in this case.

[Ashley Gjovik (Pro Se)] (19:57 - 20:09)

No, I spend a lot of time reflecting just on workers and like the power dynamics of all of this. I digress. Okay, so you're also saying then if no protective order is granted, that you're going to cancel the deposition?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (20:11 - 20:17)

If there is no protective order at all, I haven't even contemplated them. But no, I will.

[Ashley Gjovik (Pro Se)] (20:17 - 20:31)

You are planning that some portion of the content of the deposition you want to include documents that you think are under the protective order. And so if you would not get that protective order, that content would at least not be part of the planned deposition.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (20:31 - 20:53)

Correct. We would take that issue up with the court and figure out a way for us to use documents that we need in this case. But I can't believe a court will not enter the model protective order.

So I have not thought about what might happen if the court doesn't. But if it doesn't, then we'll deal with it at that time. That's what we deal in litigation.

[Ashley Gjovik (Pro Se)] (20:54 - 21:07)

Yeah. Okay, so for those specific documents of the deposition, is there any other way that you are willing to deal with them confidentiality-wise other than a blanket protective order?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (21:08 - 21:10)

I hadn't. No, I don't think so.

[Ashley Gjovik (Pro Se)] (21:11 - 21:13)

Can I get a yes or no?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (21:13 - 21:33)

Yeah, no. No, I do not think so. I think that a protective order is needed in this case, and I think we should use the model protective order of the court.

And I cannot think of any other way to produce documents to you that we consider confidential other than through a protective order.

[Ashley Gjovik (Pro Se)] (21:34 - 21:47)

I understand your position. Okay, so you're saying no for those documents. Are you going to tell me, I asked for a list of which documents you're withholding until you get a confidentiality order, and you are saying no, you will not give me a list of documents?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (21:48 - 21:57)

That is correct. I will not give you in advance a list of the documents that we intend to withhold pursuant to the protective order.

[Ashley Gjovik (Pro Se)] (21:59 - 22:07)

Okay. And that's not by document name, not even by groups of documents, not even general information of how many documents as of now?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (22:09 - 22:10)

Would that make a difference?

[Ashley Gjovik (Pro Se)] (22:10 - 22:10)

Yes.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (22:11 - 22:15)

Okay. So would you agree to the protective order if I told you the number of documents?

[Ashley Gjovik (Pro Se)] (22:17 - 22:33)

I would incorporate it into my consideration of your request for a protective order, and it may, depending on the outcome of your answer, cause me to lean towards being more agreeable, or perhaps the opposite, depending on what the outcome of your answer is.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (22:34 - 22:48)

Okay. So if I, what you're asking for is send me the list of the number of documents you're withholding pursuant to the protective order, and then you would consider whether you would enter into the model protective order.

[Ashley Gjovik (Pro Se)] (22:49 - 23:54)

Until we're done meeting and conferring and file our joint letter, I am open to negotiating and talking through it and meeting and conferring. So if you can give me any additional information that I don't currently have, like the number is such a bare minimum thing, like more than that would be great. But if you can appeal to, I'm hyper-logical.

I worked at Apple where everyone's just harassing each other all the time but I got stuff done because I'm logical. So if you can appeal to me with logic of why something makes sense and is

practical, there's a good chance I might come around to it. But if you just don't tell me any information, like, and I'm kind of have to assume worst case at this point.

So like, convince me. You know, maybe, maybe I will be willing. So if you're like, we're holding back three documents.

That's all we plan to hold back. And then we're done. And the documents are just these agreements we want you to authorize.

I might decide it's a better use of everyone's time to like, maybe acquiesce on that. But if it's going to be this ongoing thing with a bunch of stuff and a bunch of fighting. So I need more data input into my database brain, please.

Okay.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (23:57 - 23:59)

All right. Should we move on to discovery plan?

[Ashley Gjovik (Pro Se)] (24:00 - 24:04)

Yeah. So, okay. So for protective order, we're going to keep me in conferring a bit.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (24:05 - 24:18)

I'm going to decide whether I'm going to tell you the number of documents. And then you will tell me shortly thereafter, because we have got to get this entered. So we can go ahead with the deposition.

[Ashley Gjovik (Pro Se)] (24:19 - 24:37)

I'm going to file a joint letter by the 9th. And if I don't file it, and you file a unilateral, I'm planning on filing it with you. I'm just saying until then, as all of the guides and we're entrusted to say, we should continue to meet and confer and see if we can meet some kind of agreement or see each other side of things to avoid having to file it.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (24:39 - 24:49)

So I will look into whether I can tell you the number of documents and we agree to file the joint letter by the 9th. Do you want to start it or do you want us to start it? Or how do you want to have it?

[Ashley Gjovik (Pro Se)] (24:49 - 25:22)

You can start it. I mentioned some of the stuff I felt, I'm going to have to be just 100% 9th circuit brief until I file it on the 6th. So once I'm out of that on the 6th, then I'm all you for 7th to 9th on these letters.

# Exhibit E

## RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Luo, Ashley<aluo@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, kelcey.phillips@morganlewis.com |
| Date | Monday, April 28th, 2025 at 12:56 PM |

Dear Counsel,

There was never any final agreement regarding a Protective Order.

Apple's subsequent conduct — including coercive statements, misrepresentations, threats of Rule 11 sanctions, inexplicable delays in response, unlawful modification demands, refusal to meet and confer, and improper privilege assertions — voided any prior tentative discussions.

The default status in litigation is no Protective Order. If Apple seeks special protections, it must justify them properly under Rule 26(c).

I remain willing to meet and confer regarding:

- Apple's renewed Protective Order request;

- The creation of a Discovery Plan;

- My requests for depositions in lieu of Apple's March 2025 privilege log; and

- Issues regarding Apple's privilege log designations.

I am available Friday between 12:00 PM ET and 5:00 PM ET for a recorded video meet and confer.

I plan to circulate documents in support of my Discovery Plan proposal and privilege log concerns in advance of the meeting. If Apple has any offers or counteroffers regarding a Protective Order, I request that they be transmitted prior to the meeting for meaningful review. I respectfully decline Apple's prior request that I unilaterally submit draft proposals.

Please confirm your availability. Thanks.

—

# Exhibit G

# RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

---

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Luo, Ashley<aluo@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Wednesday, April 16th, 2025 at 7:52 PM |

Hi Apple's lawyers,

Thanks for checking in.

It appears that in your recent follow-up, you inadvertently removed portions of our prior correspondence, resulting in a thread that omits multiple emails where I responded resulting in a thread that omits multiple emails where I responded. I've reinserted the exchange inline below and attached the complete thread for the record.

As mentioned, I've been extremely busy and will get back to this shortly. The delay is due to several overlapping legal deadlines, including the following:

**Apple's filings in the Ninth Circuit (Appeal):**
- 4/7: Apple's motion to stay or dismiss the appeal, with voluminous exhibits
- 4/7: Opposition to my motion to consolidate and clarification request
- 4/8: My response to Apple's motion to stay/dismiss
- 4/15: My notice regarding the district court's Rule 54(b) ruling
- 4/15: Apple's reply to its own dismissal motion, re-filing the same order
- Ongoing: Drafting my Ninth Circuit appellate brief — which is both critical and highly time-consuming

**NLRB compliance and national settlement:**
- 4/4: Trilateral national settlement agreement finalized (Apple, myself, NLRB)
- 4/11–4/13: Email correspondence with Apple's counsel regarding noncompliance, including representations made in federal filings and email threats
- 4/14: Formal compliance complaint submitted to the NLRB and served on counsel
- 4/14: NLRB compliance materials received, and my subsequent obligation to notify Apple coworkers of their rights under the posting

**This case:**
- 4/10: Apple's opposition to my motion to strike, motion for more definite statement, and objections to my RJN — including improper threats of Rule 11 sanctions for activity clearly protected under the NLRA, and unlawful threats to stop engaging in protected concerted activity
- 4/14: My reply to Apple's Rule 54(b) opposition
- 4/14: Apple's email accusing me of "demanding" that it provide a factual and legal basis for its threats — and stating it refuses to comply with those demands
- 4/15: My Notice of Pendency regarding the NLRB settlement
- 4/15: Judge Chen's denial of Rule 54(b) certification and cancellation of hearing
- 4/16–4/17: I am actively drafting replies to Apple's oppositions to my motions regarding its Answer

I list these not only to explain the delay, but to correct the implication — created by your redacted email thread — that no response or engagement has occurred since April 8. That is incorrect. I replied promptly, and since then have been addressing an avalanche of filings, including misconduct and threats by Apple, some of which relate directly to confidentiality.

# Exhibit H

# Gjovik v Apple 2025 03 25 Meet & Confer Recording

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:00 - 0:06)

I'm going to say a report to the cloud and see what happens. Did it tell you I'm recording it?

[Ashley Gjovik (Pro Se)] (0:06 - 0:10)

It says it's recording, and if it doesn't work, I'll send you a copy of mine.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:11 - 0:21)

All right, sounds good. All right, I have looked at all your items yesterday in response to my items, so let's see what I have here.

[Ashley Gjovik (Pro Se)] (0:23 - 0:31)

And I could just go through, I organized some of my outstanding items by the letters too, so we could just go checklist item by item.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:31 - 0:37)

Let's start with the protective order, because that's one of the things we want to get done. Is that okay?

[Ashley Gjovik (Pro Se)] (0:38 - 0:51)

So it sounds like she's going to issue the default one anyways. I do not want Apple's modified one, but the default one, we're just going to have to go, I'm going to have to challenge stuff if Apple abuses it, and we'll just have to go through that process.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:52 - 1:09)

Yeah, there's a process in there if you disagree with the designations, there's a process to be followed. I don't think that it prevents you from talking to the government, but whatever. If you want, if you're just ready to go with the model one, I mean the model one, then we'll just go with the model one.

[Ashley Gjovik (Pro Se)] (1:10 - 1:52)

Yeah, the model one. So we can stipulate to that, that might make her happy that we actually agreed to something. So we can do that one.

I do think it would be helpful to proactively define confidentiality, since that is the number one dispute I'm having with Apple in all of the litigation, is what is confidential. So if there's anything that, and you might need to talk amongst yourselves, but if there's anything we can do to try to clarify that, the Federal Rules of Civil Procedure defines it as trade secrets and actually

confidential. So we can go through that organically, but I thought it might be helpful if we can come to some of that understanding ourselves proactively too.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:53 - 2:05)

Well, I think, I mean, obviously the Protective Order defines it. And if you, and we mark something as confidential and you disagree that it's confidential, then there's a whole process in the Protective Order for you to challenge our designation.

[Ashley Gjovik (Pro Se)] (2:06 - 2:14)

Understood. But then the, what is confidential at the end of that challenge is, what does the Federal Rules of Civil Procedure in case law say is confidential?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (2:16 - 2:24)

Right. But the Protective Order describes it, right? And if you don't like the one, what we've done, then I don't think we need to change the Protective Order is what I'm saying.

[Ashley Gjovik (Pro Se)] (2:24 - 3:03)

We're not going to change the Protective Order. The Protective Order does not define confidential. It defines the process for parties to designate things confidential.

I'm just, as you can probably understand, even if you don't want to say so, concerned about what Apple's going to try to designate as confidential. So trying to figure out if there's anything we can do, since we've already had disputes on this topic of what is confidential and what's not, and a lot of discovery held back under this guise that stuff's confidential that I disagree with. So we can just go through that whole process organically.

I was hoping there's something we might be able to do. You've done this a lot more than me.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (3:05 - 3:05)

Many years.

[Ashley Gjovik (Pro Se)] (3:06 - 3:10)

So you used to run litigation at Morgan Lewis, right? For employment?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (3:10 - 3:19)

No, I was just one of many, many people. So I don't think we can define it in the abstract, is what I'm saying.

[Ashley Gjovik (Pro Se)] (3:19 - 3:34)

So if there's just anything that can try to... I know that you guys like to create the friction, but if

there's anything we can do to try to streamline this at all, would be really, really helpful. You can get back to me on that one.

But yeah, we can stipulate.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (3:34 - 4:04)

No, I just, I don't think... I mean, it says confidential information is what is qualified for protection under the 2060s. So I think, again, I just go back to, we market as confidential.

You disagree, follow the protective order. And I don't think we can further define it. Okay.

Because it's like, there's so many different versions of confidential and different things that are confidential that we can't try to say.

[Ashley Gjovik (Pro Se)] (4:04 - 4:26)

We have a bunch of individual little battles then, probably. Or maybe we'll all agree. Who knows what will happen.

Okay. So that sounds good. We can stipulate to that right away.

And then hopefully that means that Apple's willing to... So I guess that goes to the number one thing on my list of, has discovery started or not? And if it's not, what is needed to get it started?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (4:27 - 4:31)

Well, I mean, I don't know that we have to fuss about that because let's just go forward.

[Ashley Gjovik (Pro Se)] (4:33 - 4:41)

As I said... I mean, that's the fundamental question of discovery is whether discovery is actually started or if it stayed or... You know?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (4:41 - 5:03)

So, as you know, we believe that Go71 is not part of discovery. It's a disclosure. And yes, that started.

And yes, it was required. And the judge also ordered discovery on phase one. And yes, that started some time ago.

And yes, we served it. And yes, you haven't responded. So...

But we don't have to fuss about that if you're going to respond.

[Ashley Gjovik (Pro Se)] (5:04 - 5:07)

You're saying full discovery has not started yet.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (5:07 - 5:30)

Well, I think it might start. You mean beyond phase one? Yeah.

Yeah. I'm fine to do discovery based on the complaint that exists now. I think we can say, even though the judge's order hasn't changed, we can say...

What he said, I think, was once the pleadings are set, then we can go into full discovery.

[Ashley Gjovik (Pro Se)] (5:33 - 5:38)

If you guys are willing to say we can start it today, I'm just willing to say we're just going to agree that we're starting it today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (5:38 - 5:44)

No. We started it. We did the case.

Go71 is old. The discovery...

[Ashley Gjovik (Pro Se)] (5:44 - 5:49)

You just said that's not part of discovery. So you can't have it both ways. If you said that's not part of discovery...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (5:49 - 5:53)

It is not part of discovery. And it was due. And...

[Ashley Gjovik (Pro Se)] (5:53 - 6:13)

Okay, put that aside, though. My question is, outside of that conversation you're having, full discovery, because pleadings are settled now and all this stuff. Can we say that today you and I are going to put aside all of our other differences about discovery starting prior, full discovery, and just say it's going to start today?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (6:14 - 6:25)

No. So phase one discovery already started some time ago. We served phase one discovery.

That is past due. We don't need to fight about it as long as you're willing to answer it.

[Ashley Gjovik (Pro Se)] (6:25 - 6:53)

I see what you're doing. You guys are very good at this. I went to law school to get away from this, by the way.

Defendant Apple Inc.'s

Exhibits to Discovery Dispute Joint Letter

Re: Defendant's Request for

Entry of N.D. Cal. Model Protective Order

# Exhibit A

RE: Discovery Issues – Apple Inc. v. Gjovik



Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
To  🔴 Riechert, Melinda
Cc  ○ Luo, Ashley; 🟡 Perry, Jessica R.; ○ Mantoan, Kathryn G.; 🟢 Booms, Ryan



Tue 3/25/2025 2:37 PM

**[EXTERNAL]**

Hello! Thanks so much for meeting today.

I'll send my detailed notes in a bit but I wanted to capture the main agreements now:

- we agreed that full FRCP discovery would start today
- I agreed I'd start producing FRCP discovery docs with the first batch targeting this week
- we agreed to stipulate to the CAND model protective order
- Apple believes it has completed production in response to my prior RFP, but is following up on several questions and concerns
- I agreed that I do not see a need for an immediate letter to Judge Westmore based on the conversation, and will wait to review the production and privilege logs that Apple said it planned to provide later this week
- Apple wants to depose me in May between 5/20-5/30 via video - i will look at my schedule and get back to you with some dates/times in that window
- Melinda will share a copy of the Zoom recording once its processed in the cloud

Thanks,
Looking forward to working with you on this!

-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

# Exhibit B

**Booms, Ryan**

| | |
|---|---|
| **Subject:** | RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC |

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Monday, April 28, 2025 12:56 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik (Legal Matters) <legal@ashleygjovik.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; kelcey.phillips@morganlewis.com
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

**[EXTERNAL]**

Dear Counsel,

There was never any final agreement regarding a Protective Order.

Apple's subsequent conduct — including coercive statements, misrepresentations, threats of Rule 11 sanctions, inexplicable delays in response, unlawful modification demands, refusal to meet and confer, and improper privilege assertions — voided any prior tentative discussions.

The default status in litigation is no Protective Order. If Apple seeks special protections, it must justify them properly under Rule 26(c).

I remain willing to meet and confer regarding:

- Apple's renewed Protective Order request;
- The creation of a Discovery Plan;
- My requests for depositions in lieu of Apple's March 2025 privilege log; and
- Issues regarding Apple's privilege log designations.

I am available Friday between 12:00 PM ET and 5:00 PM ET for a recorded video meet and confer.

I plan to circulate documents in support of my Discovery Plan proposal and privilege log concerns in advance of the meeting. If Apple has any offers or counteroffers regarding a Protective Order, I request that they be transmitted prior to the meeting for meaningful review. I respectfully decline Apple's prior request that I unilaterally submit draft proposals.

Please confirm your availability. Thanks.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, April 28th, 2025 at 12:23 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> In addition to the March 25 email, you agreed during the last meet and confer to the model protective order:

**Melinda Riechert [00:00:31]:**
Start with the protective order, because that's 1 of the things we want to get done.  Is that okay?

**Ashley Gjovik [00:00:38]:**
So it sounds like she's going to issue the default one, anyways.  I do not want Apple's modified one, but

**Melinda Riechert [00:00:44]:**
Okay.

**Ashley Gjovik [00:00:44]:**
Default one. We're just gonna have to go.  I'm gonna have to challenge stuff if apple abuses it, and we'll just have to go through that process

**Melinda Riechert [00:00:51]:**
Yeah, there's a there's a process in there. If you disagree with the designations as a process to be followed. I don't think that it prevents you from talking to the Government. But whatever, if you want, if you're just ready to go with the model one that I mean the model one. Then we'll just go with the model one

**Ashley Gjovik [00:01:09]:**
Yeah, the model one. so we can stipulate to that. That might make her happy that we actually agreed to something. so we can do that one. I do think it would be helpful to proactively define confidentiality, since that is like the number one dispute I'm having with Apple and all of the litigation is what is confidential.  So if there's anything that you might need to talk amongst yourselves, but if there's anything we can do to try to clarify that. You know the Federal rules of Civil procedure defines it.  As you know, trade secrets and and actually confidential.  So we can go through that organically, but I thought it might be helpful if we can come to some of that. Understanding ourselves proactively too

It sounds like you have now changed your mind. I am happy to meet and confer with you any time Tuesday through Friday of this week.  Please send us a redline of the model protective order (attached) with the changes you propose in advance of the call so that we can have a productive discussion. .

**Melinda Riechert**
Partner

Orrick
Silicon Valley
T 650/614-7423
M 6507591929
mriechert@orrick.com



# **Exhibit C**

**Booms, Ryan**

| | |
|---|---|
| **From:** | Riechert, Melinda |
| **Sent:** | Tuesday, April 8, 2025 5:38 PM |
| **To:** | Ashley M. Gjovik (Legal Matters) |
| **Cc:** | Ashley M. Gjøvik; Perry, Jessica R.; Mantoan, Kathryn G.; Luo, Ashley; Booms, Ryan |
| **Subject:** | RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC |
| **Attachments:** | CAND_StandardProtOrd.Feb2022 plus parties.docx |

Ashley

Attached please find the default protective order.  May we please have your permission to sign your name to it and submit it to the Judge Westmore.  We would also submit a declaration required by Rule 12 of Judge Westmore's standing order stating it is identical to the model stipulated protective order for standard litigation except for the addition of case-identifying information. Once the order is entered, we will complete our document production with the documents subject to the protective order.

Regarding your Apple Card, we do not represent Apple on issues involving your credit card.

**Melinda Riechert**
Partner

Orrick
Silicon Valley
T 650/614-7423
M 6507591929
mriechert@orrick.com


orrick

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Friday, April 4, 2025 3:51 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Luo, Ashley <aluo@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC



Hello,

I oppose your motion to stay my appeal, and I oppose any request to dismiss the appeal.

Thank you for confirming the download.

I do not want any protective orders. If Apple insists on a protective order, then we can sign the default order, as already suggested by Judge Westmore. If Apple does not agree to the default protective order, then we can proceed with no protective order. If Apple would like to challenge this, we can meet and confer about it, and write a letter to Judge Westmore about our positions on protective orders.

# Exhibit D

**Booms, Ryan**

| | |
|---|---|
| **From:** | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| **Sent:** | Wednesday, April 16, 2025 7:53 PM |
| **To:** | Riechert, Melinda |
| **Cc:** | Ashley M. Gjøvik; Perry, Jessica R.; Mantoan, Kathryn G.; Luo, Ashley; Booms, Ryan |
| **Subject:** | RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC |
| **Attachments:** | Gjovik v Apple - Email Chain with Apple removing Recent Replies.pdf; Gjovik v Apple - Email Chain with Recent Replies Included.pdf |

**[EXTERNAL]**

Hi Apple's lawyers,

Thanks for checking in.

It appears that in your recent follow-up, you inadvertently removed portions of our prior correspondence, resulting in a thread that omits multiple emails where I responded resulting in a thread that omits multiple emails where I responded. I've reinserted the exchange inline below and attached the complete thread for the record.

As mentioned, I've been extremely busy and will get back to this shortly. The delay is due to several overlapping legal deadlines, including the following:

**Apple's filings in the Ninth Circuit (Appeal):**

- 4/7: Apple's motion to stay or dismiss the appeal, with voluminous exhibits
- 4/7: Opposition to my motion to consolidate and clarification request
- 4/8: My response to Apple's motion to stay/dismiss
- 4/15: My notice regarding the district court's Rule 54(b) ruling
- 4/15: Apple's reply to its own dismissal motion, re-filing the same order
- Ongoing: Drafting my Ninth Circuit appellate brief — which is both critical and highly time-consuming

**NLRB compliance and national settlement:**

- 4/4: Trilateral national settlement agreement finalized (Apple, myself, NLRB)
- 4/11–4/13: Email correspondence with Apple's counsel regarding noncompliance, including representations made in federal filings and email threats
- 4/14: Formal compliance complaint submitted to the NLRB and served on counsel
- 4/14: NLRB compliance materials received, and my subsequent obligation to notify Apple coworkers of their rights under the posting

**This case:**

- 4/10: Apple's opposition to my motion to strike, motion for more definite statement, and objections to my RJN — including improper threats of Rule 11 sanctions for activity clearly protected under the NLRA, and unlawful threats to stop engaging in protected concerted activity
- 4/14: My reply to Apple's Rule 54(b) opposition
- 4/14: Apple's email accusing me of "demanding" that it provide a factual and legal basis for its threats — and stating it refuses to comply with those demands
- 4/15: My Notice of Pendency regarding the NLRB settlement
- 4/15: Judge Chen's denial of Rule 54(b) certification and cancellation of hearing
- 4/16–4/17: I am actively drafting replies to Apple's oppositions to my motions regarding its Answer

I list these not only to explain the delay, but to correct the implication — created by your redacted email thread — that no response or engagement has occurred since April 8. That is incorrect. I replied promptly, and since then have been addressing an avalanche of filings, including misconduct and threats by Apple, some of which relate directly to confidentiality.

As to the USDC confidentiality protective order: I've consistently stated that I do not want to enter into any confidentiality agreement at all, and that I believe doing so would be contrary to public policy. I only previously acquiesced — reluctantly — due to Judge Westmore's indication that she might approve the standard version regardless of my position. However, in light of recent developments — particularly concerning Apple's conduct towards me and my coworkers related to confidentiality, including what appears to be direct violations of the federal consent decree it just entered — I need more time to fully consider whether entering into any new confidentiality agreement is appropriate. This is not a refusal. I simply request time to weigh the implications carefully, especially given the potential legal exposure and public policy implications raised by the conduct I've documented elsewhere. This is not a matter of 'failing to reply,' and it does not authorize Apple to execute an agreement on my behalf.

I'll follow up after I've filed my pending responses, assuming there are no additional surprises from Apple.

Thanks,
Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, April 16th, 2025 at 3:27 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> I am following up on my email below regarding the protective order and Rule 12 declaration, so that we can finalize our document production and move this case forward, now the pleadings are settled.
>
> **Melinda Riechert**
> Partner
>
> Orrick
> Silicon Valley ⊙
> T 650/614-7423
> M 6507591929
> mriechert@orrick.com



# RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC | Update Regarding Discovery, Productions, and Meet and Confer Agenda

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Quilici, Jeffrey<jquilici@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Luo, Ashley<aluo@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, kelcey.phillips@morganlewis.com |
| Date | Tuesday, May 13th, 2025 at 11:24 AM |

Dear Ms. Riechert,

I am responding to your May 12 email concerning sealed appellate filings in *Gjovik v. Apple,* No. 25-2028. You were previously cc'd on my formal notice to the Court and lead counsel for Apple as Appellee, which included my Motion to File Under Seal and Certificate of Service. You chose not to respond to that message at the time. Your new message was sent via an unrelated thread — one that includes counsel from an separate matter, creating confusion about the forum, procedural context, and audience. For clarity, I've reattached the original sealing notice, related emails, and am including the correct thread inline.

If counsel for Morgan Lewis wishes to better understand the current appellate record, the full Ninth Circuit docket is available here: https://www.courtlistener.com/docket/69805803/gjovik-v-apple-inc/ ; and the U.S. District Court record is available here: https://www.courtlistener.com/docket/67772913/gjovik-v-apple-inc/?page=1

**Procedural Status of Sealed Materials**

As you are likely aware, the Ninth Circuit Rule 27-13(c) provides that sealed materials are ordinarily served on opposing counsel. However, Rule 27-13(d) permits a litigant to request that service be withheld pending the Court's determination. I made such a request explicitly in my Motion to Seal, and this request is now pending before the Court. In accordance with that rule and FRAP 25.3(b), I served the Motion and Certificate of Service properly and gave formal notice that I was withholding the sealed declaration and exhibits unless otherwise directed by the Court. Until the Ninth Circuit issues a ruling, I will not bypass that process at your informal request. If you disagree, the appropriate path is to file a motion with the Court.

**Legal Status of the Materials You Seek**

The documents you are requesting include:
- Confidential communications with federal law enforcement and regulatory agencies, relating to ongoing investigations into Apple,
- Privileged communications with legal counsel, including strategic litigation records and bar complaints,
- Financial and medical documentation, which I stated may be available in discovery, and the material info in which was detailed in the public declaration which you were served.

As of now, these materials are protected under multiple legal doctrines and statutes, including the attorney–client privilege, the law enforcement investigatory privilege, 18 USC 1512/1513/1514, RICO Act, the Crime Victims' Rights Act (CVRA), Marsy's Law, and federal whistleblower protection statutes. Some of the disclosures you are requesting would be categorically exempt from discovery, and others — particularly communications with law enforcement — could not be lawfully disclosed under federal law.

**Legal and Ethical Concerns Raised by Your Demand**

As a senior partner at your firm and the named actor in multiple retaliation and obstruction allegations within this case, your demand is concerning. Rather than engage with the Court, you issued an informal directive — on the wrong thread, to the wrong audience — seeking sealed and legally protected materials outside of judicial process.

More troublingly, your demand includes:
- Confidential victim communications with federal investigators about potential criminal acts by your client,
- Documents that would be considered core privileged matter,

And all of this done while the Ninth Circuit is actively considering the issue of whether these materials should be served at all. This is not a procedural disagreement. This is an attempt to compel a pro se crime victim to violate the law, break privilege, and undermine judicial oversight — all while bypassing formal court channels. In the case of the law enforcement materials, your demand approaches conduct that is prohibited under 18 U.S.C. § 1512(b)(3).

In some cases, compliance with your request would expose me to legal jeopardy, and in others, disclosure would be categorically prohibited. The legal authorities implicated include:
- Federal Criminal Law – Witness Tampering 18 U.S.C. § 1512(b)(3); Prohibits knowingly attempting to obtain or influence the disclosure of information to or from law enforcement relating to a potential federal offense. Your request for sealed law enforcement communications related to ongoing federal investigations into Apple likely falls within this statute. Disclosure of such materials without proper judicial or agency authorization would itself be unlawful.
- Victim Rights Statutes 18 U.S.C. § 3771 (CVRA).  Guarantees crime victims the right to dignity, privacy, and protection from intimidation, harassment, and unwarranted disclosure.
- California Constitution, Article I, Section 28 (Marsy's Law) - Extends similar protections under state constitutional law, including rights against coercive or retaliatory demands for sensitive information.
- Whistleblower and Public Interest Protections
- Federal Whistleblower Laws (e.g., 5 U.S.C. § 2302, SEC, EPA, OSHA frameworks), Prohibit retaliation and unauthorized disclosure of complaints, agency correspondence, and investigative referrals made in the public interest.
- Labor Code § 1102.5 and § 230(e) (California) - Specifically protects employees who disclose information about unlawful conduct to law enforcement or government agencies.
- Attorney–Client Privilege Your request also seeks privileged communications with legal counsel, including bar complaints and internal litigation materials. These are categorically protected under:
- Federal common law privilege doctrine,
- California Evidence Code § 950 et seq and California common law,
- New York CPLR § 4503 and New York common law,
- Massachusetts Guide to Evidence § 502 and Massachusetts common law, and
- Work product doctrine (Fed. R. Civ. P. 26(b)(3)).

These materials are not subject to disclosure in civil discovery and certainly not through informal email requests. Further, communications with the DOJ, FBI, EPA, SEC, and other federal enforcement bodies may only be disclosed with agency authorization. If you file a motion to the US Court of Appeals with your concerns, and if the Ninth Circuit were to grant your request, I would be required to notify the DOJ and potentially initiate a formal authorization process before any release

Unless the Ninth Circuit directs otherwise, I will await the Court's ruling. Collectively, your demand circumvents the judicial process and improperly seeks access to categories of documents that are either privileged, statutorily protected, or currently before the Court under seal. It is not an appropriate procedural inquiry; it is a demand for materials that I am legally prohibited from producing and/or have a codified right to withhold.

Sincerely,
Ashley M. Gjøvik
Pro Se Appellant

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, May 12th, 2025 at 9:16 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> In response to your email below about your filing sealed documents in the Ninth Circuit, I note you did not serve us with those documents as you are required to do under the Federal Rules of Appellate Procedure and under the 9th Circuit Rules. Under the Federal Rules of Appellate Procedure, "[a]ny affidavit or other paper necessary to support a motion **must be served and filed** with the motion.  Fed. R. App. P. 27(a)(2)(B)(1) (emphasis added). Ninth Circuit rules confirm that this applies to documents filed under seal: "any notice or motion submitted under seal **and any document associated with such notice or motion shall be served on opposing counsel** in paper form or, with consent, via email."  9th Cir. R. 27-13(c) (emphasis added). We consent to email service of sealed papers, rather than your having to serve them in paper form.  In short even though documents filed under seal are not downloadable through PACER and not automatically served by the CM/ECF system,  9th Circuit. R. 27-13(b), (c), they must be served on us.  Please immediately email us the documents you filed under seal today as required by the Court's rules.
>
>
> **Melinda Riechert**
>
> Partner
>
> [Orrick](#)
> Silicon Valley 
>
>  T 650/614-7423
>  M 6507591929
>  [mriechert@orrick.com](#)
>
>

On Monday, May 12th, 2025 at 6:58 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> *Subject: Filing of Motion to Seal – Gjovik v. Apple, No. 25-2028*
>
> Hi Mr. Quilici,

I hope this message finds you well. I'm writing to serve my Motion to File a Declaration and Exhibit Under Seal and the accompanying Certificate of Service in compliance with the Ninth Circuit's sealed filing procedures.

As outlined in the motion, I am not serving the sealed declaration or exhibits on Appellee at this time. This is consistent with Ninth Circuit Rule 27-13, which allows litigants to request that sensitive documents remain nonpublic and unserved pending the Court's review. The materials submitted under seal include personal financial information, privileged attorney–client records, and communications with federal law enforcement agencies regarding potential criminal violations. Given the nature of these filings — including public safety risks and potential prejudicial disclosures — I have requested that they not be served unless and until the Court orders otherwise.

Regarding the financial documents (Category Three), I am open to providing redacted versions upon request, if necessary for discussion. However, these materials would likely be exchanged in discovery in the ordinary course of litigation.

Please let me know if you have any questions or wish to discuss a service protocol contingent on the Court's ruling.

Sincerely,
**Ashley M. Gjøvik**
Pro Se Appellant-Plaintiff
BS, JD, PMP

Sent with Proton Mail secure email.

On Friday, May 9th, 2025 at 5:13 PM, Quilici, Jeffrey <jquilici@orrick.com> wrote:

> Ms. Gjovik,
>
> We disagree with your inaccurate statements and characterization of our conduct. However, it appears that further dialogue is likely to be unproductive so I will not continue to engage with you regarding this topic.
>
> Sincerely,
> Jeff Q.
>
> **Jeff Quilici**
> Of Counsel
>
> Orrick 
> Austin
> T +1-512-582-6916
> jquilici@orrick.com
>
> Confidential. May contain privileged or work-product information.
>
> ---
>
> **From:** "Ashley M. Gjøvik" <ashleymgjovik@protonmail.com>
> **Date:** Thursday, May 8, 2025 at 7:21 PM
> **To:** "Quilici, Jeffrey" <jquilici@orrick.com>

**Cc:** "Perry, Jessica R." <jperry@orrick.com>, "Riechert, Melinda" <mriechert@orrick.com>, "Mantoan, Kathryn G." <kmantoan@orrick.com>
**Subject:** Re: Gjovik v. Apple Inc. 25-2028 - 013 - Opening Brief Submitted for Filing

**[EXTERNAL]**

Hi Mr. Quilici,

Please see the attached letter memorandum, which I am also filing with the Ninth Circuit in support of my Motion for Injunction Pending Appeal.

As reflected in the record, I contacted you on May 7 2025 in a good-faith effort to coordinate on the Excerpts of Record and supporting exhibits, consistent with Ninth Circuit guidance encouraging cooperation to reduce the burden on the Court. You declined to collaborate, refused to provide any examples of materials you believed appropriate or necessary for the record, and expressly stated that you would not participate further in the process.

You also acknowledged my same-day notice that the exhibits would be filed separately, and substantively engaged with that plan—confirming receipt and stating you believed no additional materials were needed. This demonstrates both timely notice and your opportunity to raise any objections, which you declined.

Separately, I requested clarification regarding who should be included on communications, after Melinda informed me she was not involved in the appeal. You responded that I should include "everyone who has noticed an appearance," but then selectively copied three attorneys—excluding Ryan Booms, who has in fact filed a notice of appearance and remains listed on the docket. Meanwhile, you included Melinda, despite her earlier refusal to confer. Please clarify which counsel are actively involved and in what capacity.

As for the pending filings before the Ninth Circuit, I understand that you have declined further engagement, and I will proceed independently from this point forward.


Respectfully,
Ashley M. Gjovik
Pro Se Appellant


—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, May 8th, 2025 at 4:14 PM, Quilici, Jeffrey <jquilici@orrick.com> wrote:


Ms. Gjovik,

Thanks for reaching out. I'll try to walk through the issues you raise below in a sensible order.  One initial matter, though: in the future, please copy all of the Orrick attorneys listed on the Ninth Circuit matter, as I've done here.

I want to start with a small point at the end of your email, because it relates to much of what I'll say below. You noted that you lost sleep in order to file your opening brief "on time," and I confess I was surprised you chose to file an opening brief now.  As Apple noted, the briefing schedule was automatically stayed under circuit rules when Apple filed its motion requesting dismissal of the appeal.  See Dkt. 5.1 at 1 n.2 (citing 9th Cir. Rule 27-11(a)(1)).  No opening brief was due until the court acts on that motion and, if

appropriate, issues a new briefing schedule.  Neither has happened yet.  For the same reason, Apple does not presently "have a deadline … to respond" to your brief, as you suggest.

You also asked about the contents of an "Appendix" you plan to file.  I agree that as a pro-se filer you were not required to file Excerpts of Record (which this court requires instead of an Appendix, see 9th Cir. Rule 30-1) alongside your brief.  That said, if you choose to file Excerpts anyway, they—like all of your filings—must conform to the court's rules, including 9th Cir. Rule 30-1.4, which dictates the contents of the Excerpts.  You haven't identified exactly what you plan to include, but you say below that it's at least "all orders, complaints/answer, joint case mgmt statements, hearing transcripts, and hearing minutes," plus additional "excerpts of exhibits and other filings."

I disagree that most of that very broad list is appropriate.  Your notice of appeal states that it is taken from "the final judgment and related dismissal orders" entered by the district court, including DE 179.  Leaving aside that there is no final judgment (as the district court again confirmed in denying your Rule 54(b) motion below), only orders dismissing claims arguably fall within that notice.  And with the exception of the most recent partial dismissal order (DE 179), all the dismissal orders issued far more than 30 days before your notice of appeal, so the Ninth Circuit lacks jurisdiction over them at this time.  See Dkt. 5.1 at 8 n.7 (citing Fed. R. App. P. 4(a)(1)).  For the same reason, the earlier complaints and other papers are not "parts … of the record that are relevant to deciding the appeal."  9th Cir. R. 30-1.4(b).

In short, the only order from which you've timely noticed an appeal is DE 179.  And as Apple explained in its motion to dismiss, that order is plainly interlocutory on its face, and thus not appealable at this time.  The denial of your Rule 54(b) motion only confirms that conclusion.  So at this point, if you do intend to file something, I would ask only that you include DE 179 itself, the briefing that led to it, the Fifth Amended Complaint to which it pertains, and the denial of your Rule 54(b) motion.  But I think the better course would be to save the effort and wait until the motions panel rules on the pending motion to dismiss—there may be no reason to file Excerpts at all, and there are no deadlines at present.  Apple will consider what to include in a Supplemental Excerpts of Record if and when filing one ever becomes necessary.

Finally, as to your Motion for Injunction, I won't comment on the merits at this stage, but I will point out one thing: I think you say below that you plan to include materials in the "Appendix" that relate only to the Motion, such as a declaration, materials from other proceedings, and so on. That's not permitted; anything you rely on to support your motion, such as exhibits or declarations, "must be served and filed with the motion."  Fed. R. App. P. 27(a)(2)(B)(2).

I also appreciate your offer to provide materials; that won't be necessary.

Sincerely,
Jeff Q.


Jeff Quilici
Of Counsel


Orrick
Austin

T +1-512-582-6916
jquilici@orrick.com

Confidential. May contain privileged or work-product information.

On May 7, 2025, at 7:13 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

**[EXTERNAL]**

Hey Jeffrey,

I'm working my Appendix/Excerpts for the Ninth Circuit brief and targeting to file it tomorrow, along with declarations and request for judicial notice. (This is a lot of work!)

Last week Melinda said something like she has nothing to do with the appeal, so I'm just emailing you directly. If there's other Orrick counsel who filed notices and are actually working on the appeal, feel free to let me know or cc them yourself in a response.

It appears that because I'm *pro se* I don't have to file the formal appendix or follow the appendix creation procedures, but for sake of efficiency, I wanted to ask you if there's anything specific you want included in it when when I file it. I'm planning on including all orders, complaints/answer, joint case mgmt statements, hearing transcripts, and hearing minutes. Then I'll include some excerpts of exhibits and other filings as applicable to my arguments. If there's not anything in the above list that you want to include, let me know, and maybe we can file a final version this week -- I bet they'd like that.

As for the request for injunction I filed today, I plan to include some of the case records as noted above (as well as my filings requesting relief which were denied); and I will request judicial notice of case documents in *Lopez*, *Epic*, *eBay*, *Levoff*, *Moyer*, and *Raniere* (ie, indictments, orders, decisions, DOJ press releases, settlement agreements). My declaration will then include exhibits from the record, emails with counsel, meet/confer transcripts, and also Apple's privilege log from the district court litigation.

Because I will likely be a day late filing the exhibits (I didn't sleep for a few days trying to file on time and am still behind) and you have a deadline of which to respond that starts with the motion/brief, I wanted to ensure you were on notice as to what else was coming.

Let me know if you have any questions or if you need early copies of anything. I assume the district court counsel already provided you with emails/privilege log/etc.

-Ashley
*Pro Se* Plaintiff-Appellant

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

------- Forwarded Message -------
From: ACMS@ca9.fedcourts.us <ACMS@ca9.fedcourts.us>
Date: On Wednesday, May 7th, 2025 at 2:49 PM
Subject: Gjovik v. Apple Inc. 25-2028 - 013 - Opening Brief Submitted for Filing
To: ashleymgjovik@protonmail.com <ashleymgjovik@protonmail.com>


**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**


**United States Court of Appeals for the Ninth Circuit**

**Notice of Docket Activity**

The following transaction was entered on 05/06/2025 11:54:28 PM PDT and filed on 05/06/2025

**Case Name:** Gjovik v. Apple Inc.

**Case Number:** 25-2028

**Docket Text:**

**OPENING BRIEF** submitted for filing by Appellant Ashley M. Gjovik.--[COURT UPDATE: Attached addendum, filed at DE 14] [Entered: 05/06/2025 11:58 PM] [Edited: 05/07/2025 11:45 AM]

**Document:** Brief
**Document:** Addendum


**Notice will be electronically mailed to:**

Ashley M. Gjovik ; ashleygjovik@recap.email, ashleymgjovik@protonmail.com
Kathryn Mantoan ; kmantoan@orrick.com
Jessica R. Perry ; tmcbride@orrick.com, jperry@orrick.com
Melinda S. Riechert ; mriechert@orrick.com, jromero@orrick.com, casestream@ecf.courtdrive.com
Ryan Booms ; rbooms@orrick.com
Mr. Jeffrey Todd Quilici ; jquilici@orrick.com, phowell@orrick.com

**Case participants listed below will not receive this electronic notice:**