**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY GJOVIK**, *an individual*, Plaintiff, v. **APPLE INC**, *a corporation*, Defendant. | **U.S. D.C. Case No.** 3:23-CV-04597-EMC<br><br>**Judge**: The Honorable Edward M. Chen<br><br>**Discovery Magistrate:** Judge Kandis A. Westmore<br><br><br>**PLAINTIFF'S OBJECTION TO DEFENDANT'S UNILATERAL DISCOVERY LETTER (DKT. 219), REQUEST TO STRIKE IN PART, AND REQUEST FOR TELEPHONIC CONFERENCE**<br><br><br>**U.S. C.A. Case No**. 25-2028<br><br>**NLRB Case No.'s:** 32-CA-282142; 32-CA-283161; 32-CA-284441; 01-CA-365726.<br><br>**NLRB Settlement Agreement No.:** 32-CA-284428 |

# TABLE OF CONTENTS

I.    PLAINTIFF'S POSITION: ................................................................. - 3 -

   A.    THE MAY 13, 2025 EMAIL EXCHANGE ........................................ - 3 -

   B.    PLAINTIFF'S SUBSEQUENT ACTIONS ......................................... - 5 -

II.    OBJECTIONS ..................................................................... - 5 -

III.    BACKGROUND ON PREVIOUS ADJUDICATIONS .......................... - 6 -

   C.    DEFENDANT'S REFUSAL TO MEET AND CONFER ....................... - 7 -

   D.    THE "INFORMED CONSENT" AGREEMENT ISSUE ...................... - 11 -

   E.    HISTORICAL CONTEXT AND PRIOR ADJUDICATIONS .................. - 11 -

   F.    THE 2025 NLRB SETTLEMENT ............................................ - 13 -

   G.    DISCOVERY ISSUES AND DEFENDANT'S CONDUCT ..................... - 13 -

IV.    IMPROPER USE OF DISCOVERY PROCESS ................................ - 14 -

V.    PENDING MOTION FOR RECONSIDERATION AND TO STRIKE DEFENDANT'S AMENDED ANSWER ................................................................ - 15 -

VI.    NLRB CHARGE, SETTLEMENT VIOLATION, AND JUDICIAL OVERREACH RISK ........ - 17 -

VII.    CONCLUSION .................................................................. - 18 -

VIII.    EXHIBITS ..................................................................... - 20 -

# PLAINTIFF'S OBJECTION TO DEFENDANT'S UNILATERAL DISCOVERY LETTER (DKT. 219), REQUEST TO STRIKE IN PART, AND REQUEST FOR TELEPHONIC CONFERENCE

## I.    PLAINTIFF'S POSITION:

1.    Plaintiff objects to Defendant's Letter. Defendant declined to meet and confer or draft a joint discovery letter and instead filed a unilateral letter (Dkt. No. 219). Plaintiff now submits this response. Plaintiff does not oppose the Court holding a telephonic discovery conference regarding the proposed protective order and ongoing discovery issues—indeed, Plaintiff previously requested such a conference through multiple discovery letters and case management filings (i.e., Dkt. Nos. 162-166) and attaches written records showing her meet-and-confer requests and Defendant's refusal (Ex. A).

> "Plaintiff has made numerous requests that Defendant Apple Inc. bring unresolved discovery disputes before Judge Westmore for resolution. Apple has consistently refused, instead choosing to escalate its obstructionist tactics. — Apple has refused to meet and confer in good faith, despite Plaintiff 's repeated written requests…Apple has
> used discovery conferences as a pretext to falsely accuse Plaintiff of misconduct while refusing to substantively discuss disputes"

Dkt. 162 at 2-3, filed Feb. 11, 2025.

2.    Plaintiff and Defendant held two meet-and-confer sessions on March 25, 2025, and May 2, 2025. Transcripts of both are attached as Exhibits H and I. On May 2, Plaintiff served formal discovery objections and continued raising related concerns through May 29, including that Defendant appeared to admit to spoliation of evidence, which Plaintiff documented in follow-up email.

3.    On June 12, despite this documented sequence of objections and attempted engagement, Defendant wrote to the Court claiming that "*Plaintiff … has engaged in bad faith tactics every step of the way."* Defendant further asserted that *"when it came time to submit the joint letter on May 13, 2025, Plaintiff abruptly shifted her position again and insisted that Apple only had her authorization to file the joint letter."* (Dkt. 219 at 3–4.) All of Plaintiff's supposed misconduct appears to have occurred between May 13 and June 12, 2025—not even a complete month.

## A. The May 13, 2025 Email Exchange

4.    The record shows the following sequence of events on May 13, 2025 (Ex. A):

On Tuesday, May 13, 2025 at 3:50 PM, Plaintiff wrote:

"Please proceed with this attached version of the exhibits … this version of the PDF includes: A revised cover page with a descriptive title; Exhibit labels restored on two pages that were missing them; Formatting adjustments to align with standard filing practices. You have my authorization to sign my name and e-file this document under protest and subject to extensive legal objections, as outlined in our prior correspondence. This authorization is made under coercion and duress, in light of your insistence that you will file regardless of my stated concerns."

On Tuesday, May 13, 2025 at 7:14 PM, Defense Counsel Riechert wrote:

"…We are concerned with your statement… Either we have your authorization to file or we don't. If we don't, we will proceed in accordance with Section 17 of Judge Westmore's standing order."

On Tuesday, May 13, 2025 at 7:20 PM, Plaintiff replied:

"You already have my authorization to file the joint letter and exhibits…What you're now requesting is not additional authorization — it is a demand that I alter the record to erase the fact that you are proceeding over my objections and under circumstances I have described as coercive and retaliatory. I will not do that. You have what you need to file. What you're asking now is not legally required, and your effort to pressure me into softening my position will be treated as further witness intimidation and retaliation … and applicable labor and whistleblower protections. Any further efforts to coerce me regarding how I characterize my own consent will be documented and submitted to the courts and relevant oversight agencies. File the letter as agreed — and include my full statement in the record."

At 7:50 PM, Defense Counsel Riechert wrote:

"Ashley. In light of your protests, I would feel more comfortable if you file it. See attached. You have my authorization to file."

At 8:08 PM, Plaintiff responded:

"I will file the documents with the court at your request. However, I want to be absolutely clear that I do not agree that the joint document reflects my consent, nor do I accept the process by which it was developed. I've now spent over ten hours today reviewing your edits, responding to redlines, and managing shifting demands — all while under repeated threats that you would file the letter without my agreement, and while attempting to meet deadlines in other active federal matters/

After insisting for weeks that you would file regardless of my objections (following over a year of threats to seek this order by any means), your sudden reversal — solely because I declined to revise or retract my documented protest

— is both inappropriate and transparent. Your attempt to offload responsibility at the last minute, while distancing yourself from the very record you spent all day finalizing, is not acceptable."

## B. Plaintiff's Subsequent Actions

5.    At 9:03 PM on May 13, 2025, Plaintiff wrote:

"I have filed the Motion to Quash Defendant's Request for a Protective Order and Request to Stay Discovery Pending Appeal. It is docketed at ECF No. 211, with a hearing set for June 26, 2025, before Judge Chen. Defendant's opposition, if any, is due by May 27, 2025, and my reply is due by June 3, 2025. The joint discovery letter has been filed as Exhibit D to the motion — not to request relief from the magistrate, but to preserve the record and document the conduct described in the motion. This matter is now stayed pending Judge Chen's resolution of the motion. No further action should be taken in front of the magistrate judge on the issue of protective orders, meet-and-confer deadlines, or discovery posture.

In parallel, I have just filed a new NLRB charge alleging violations of Sections 8(a)(1) and 8(a)(4), based on recent litigation conduct. This includes threats, coercion, attempted suppression of protected testimony, and reassertion of previously rescinded policies. The new charge may be referenced via Exhibits A and B to the motion. Morgan Lewis attorneys have been re-added to this chain for notice purposes, given their direct involvement in the conduct forming the basis of these additional NLRB allegations. Now I need to work on my overdue appellate filings which were further delayed nearly 12 hours due to your requests and demands related to this matter."

**Note:** Apple never responded to this communication.

## II.    OBJECTIONS

6.    Plaintiff respectfully warns the Court that the subject matter for which Defendant seeks a confidentiality designation—based on its own representations during the parties' meet-and-confer and recent filings—would functionally operate as a dispositive ruling on contested issues, and impose prior restraint on testimony that the U.S. government has already found to be protected activity. (Dkt. Nos. 35-4, 111, 151, 171, 203). The only justification Apple now offers involves internal policies it was required to rescind as part of a 2025 national NLRB settlement. (Dkt. No. 203).

7.    Plaintiff strongly objected to Apple's planned use of a discovery order, and Apple attempted to coerce her to file the request for them, which she refused. Instead, Plaintiff filed a Motion

to Quash (Dkt. 211, May 13, 2025), which was dismissed sua sponte the next day, condoning a broad unjustified prior restraint, in violation of Plaintiff's constitutional rights.

8.    Plaintiff then asked the Ninth Circuit to intervene. (25-2028 Dkt. No. 22, May 14, 2025). The court dismissed for lack of jurisdiction on May 27, 2025 (Dkt. No. 32), and Plaintiff filed a Motion for Reconsideration on June 3, 2025 (25-2028 Dkt. No. 33; Exhibit G), again complaining about Defendant's attempts to get an illegal gag order and substantive and public policy arguments about the criminal misconduct the Defendant is attempting to cover up.

9.    Plaintiff has the right to file Motions, the right to file Appeals, and the right to file NLRB charges as long as she does so in good faith. Defendant has made no showing as to a bad faith motive by the Plaintiff, nor is there any apparent motive on the Plaintiff's part to obstruct proceedings which she is working relentlessly to keep on track. Litigants have a constitutional right to protest prior restraint and unlawful censorship of lawful speech. Apple already attempted to get a similar gag order in 2022, and it was reversed and dismissed upon appeal, finding it violated the Plaintiff's constitutional rights. (Dkt. No. 35-10, 96).

## III.    BACKGROUND ON PREVIOUS ADJUDICATIONS

10.    As noted in Plaintiff's May 2025 filing with the Ninth Circuit (Case No. 25-2028, Dkt. No. 26, 5/20/2025), in a request for injunctive relief: this case is now narrowed to labor and retaliation claims, many of which have already been partially adjudicated in Plaintiff's favor by the NLRB and the State of California. Given this record, Plaintiff believes that Apple has had a full opportunity to present its position, and that sufficient evidence already exists to support her claims. Plaintiff respectfully asks the Court to consider entering a case management schedule to limit further discovery to issues requiring prima facie resolution or requiring further showing by Defendant, and to advance the case toward trial. Plaintiff's concern is Defendant's use of discovery to harass and silence her. This is an issue Plaintiff raised in all of her complaints with agencies and to this court, starting in 2021. (See Dkt. No. 1, 17, 32, 47, 76, 142, etc.)

11.    Plaintiff respectfully objects to Defendant's request for unilateral discovery procedures and entry of a protective order. Plaintiff requests that the Court deny the request in full, with one exception: Plaintiff renews her request for a telephonic discovery conference, which she previously sought through joint letter submissions. Plaintiff has repeatedly attempted to meet and confer with Defendant regarding the scope of a protective order, deposition scheduling, interrogatories, discovery coordination, privilege and confidentiality claims, and document production.

12.    Defendant declined to engage further, stating in writing that it would not participate in any additional correspondence with Plaintiff. "*...Apple does not intend to further respond to your emails at this time. We will seek guidance from the Court regarding how to proceed.*" (Exhibit A, EMAIL: Melinda Riechert, counsel of Defendant, on June 5, 2025 at 8:20 PM).

## C. Defendant's Refusal to Meet and Confer

13.    Defendant now seeks an order excusing further meet-and-confer obligations, permitting unilateral filings on discovery issues, and precluding Plaintiff from filing oppositions. In support of this request, Defendant cites vague allegations of Plaintiff's purported "*misconduct*" and mischaracterizes Plaintiff's prior positions, including a tentative expression of cooperation later withdrawn both in writing and on transcript due to unlawful conduct by the Defendant.

14.    Defendant has misrepresented Plaintiff's position regarding the protective order. Plaintiff initially indicated a willingness to cooperate only after the Court expressed that it was inclined to grant the order. When Plaintiff later learned, including through transcript admissions, that Defendant intended to use the order to suppress testimony regarding a *"consent agreement"* which Defendant has never produced—and which Plaintiff does not have—she withdrew her cooperation. On May 2 2025, during a recorded Meet and Confer, Plaintiff complained that:

> "Apple's still not disclosed… if they're holding back any docs under that order, if so, what they are…. I think at one point you said you were done producing, so if that's true, there's no documents, why do you need the order? If you are holding back stuff, what exactly is the justification? … Again, that acquiescence was prior to Apple's national settlement with the NLRB over their confidentiality policies and then immediately violating it multiple times [with its conduct towards] me, at least. So, like there's a lot, you know, we can't just package up one statement in isolation when you wore me down after three years. There's a lot of concerns." Exhibit I.

Defense Counsel responded saying:

> "For example, one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one. I need to show you the entire document so that you can agree that that is the document that you signed. And so a reduction doesn't help."

Plaintiff responded:

> "You won't give me a copy of a contract I signed without a confidentiality order about the contract."

Defense counsel responded:

"I will not give you a copy of the consent order, the consent agreement that you signed without a confidentiality agreement."

Plaintiff responded:

"We will contest that to a judge because that's also like the nexus of the case. If you can't say some weird contract that probably has a bunch of illegal terms that I was coerced into signing with armed guards in a parking lot on a 100-degree day is somehow confidential and I can't even tell people what's in this agreement I signed and you won't give me a copy. I think that violates contract law, employment law, labor law, probably like Dodd-Frank and SOX stuff. So each of these are things that I think are ripe issues to bring in front of the court for the purpose of public policy conversations."

Defense counsel responded:

"And you're absolutely entitled to do that under the protective order."

Plaintiff responded:

"But doesn't that give you kind of this blank [check] until it is resolved I can be jailed for talking about whatever it is?"

Defense counsel responded:

"I don't know if jailed is the right word, but you would be subject to the protective order. Yes, you could be held in contempt if you violate it."

Plaintiff responded:

"That's prior restraint. And if I know you're going to do prior restraint on stuff that I believe in my heart of hearts violates public policy and the law, like I would not intentionally enter into that kind of agreement with Apple again. I did that a few times and now we're here sorting that out. I'm not going to do that again….This stuff is intentionally you guys trying to go in and block me from not only my litigation advocacy, but my public policy advocacy about the cases. I'm saying no for the joint letter. Yes, I will file a joint letter with you regardless. But I would like to talk more about like the confidentiality log, the narrow protective order, the redactions, also the IPA. Why does my intellectual property agreement, especially for a contract you say I signed under my employment, if that is actually confidential, why does my IPA not cover that?"

Defense counsel responded:

"Because you'll recall that the whole issue in this case is that you posted documents in violation, what we believe is in violation of your IPA. That's what the case is about."

Plaintiff responded:

"So if I actually violated it, you could sue me."

Defense counsel responded:

"No."….

Plaintiff responded:

"I'm gonna make clear in my side of this joint letter is this is Apple unilaterally trying to shut me up publicly. It's trying to get the court to do a prior restraint on

me again with threat of incarceration if I was to violate it again for talking about my activism and public policy and these cases, and that's not cool. And I don't know if you saw, but yesterday, this exact same courthouse referred Apple to, referred Apple's case to the USDOJ for a criminal investigation for obstruction of justice. So like, I don't think the mood in the courthouse is gonna be as chill as you're maybe hoping it is normally. Like I think the situation raises, again, like I'm not just outright saying no, I'm like, let's talk about redactions. Let's talk about the IPA. Let's talk about showing the documents you're withholding. Like if the documents you're saying you're withholding – if is like five things and it's things I don't even need, then why would I have that agreement put on me and enter all that stuff and go through all that drama if I don't even need that stuff? You're giving me no information about what you're even holding back other than that one example, which sounds like was a fraudulent statement to the DOL about a document that wasn't actually the agreement that was signed. Like that's the one example. So I'm hoping we can like simplify and just talk about like what documents are being held back? Are there other ways to get them forward? And if some type of protective order is needed, what are the specific like business requirements that you think that protective order is a solution for? And are there other solutions we could design for whatever your business requirements are that are not such a huge ultimate, like the ultimate major response to that type of situation that's zero to 60."

Defense counsel responded:

Okay, we want the protective order. It is the model. We will, once it's entered, we'll give you the documents. If you disagree, we will submit a three-page brief to the judge. We'll write our page and a half. You write your page and a half and the judge will make a decision."

Plaintiff responded:

So you're refusing outright to talk any further about redactions or IPA coverage or any type of non-protective order type agreements to protect information."

Defense counsel responded:

"Right, I believe that that is not sufficient. The IPA is not sufficient and redactions are not sufficient to deal with the issues that we have. We would give you too many redactions if we redacted out all the confidential stuff and that's not the purpose. The purpose is for you to see the documents, not to see big black pages of documents because."

Plaintiff responded:

"What about when I said the in-camera review thing? Like I go to an [Orrick] office and you just show me whatever 20 documents."

Defense counsel responded:

"I want to show them to you in your deposition."

Plaintiff responded:

"In a deposition with me signing a confidentiality order, which would then also make the deposition confidential?"

Defense counsel responded:

"Correct. …and I will not give you in advance a list of the documents that we intend to withhold pursuant to the protective order."

Plaintiff responded:

"Until we're done meeting and conferring and file our joint letter, I am open to negotiating and talking through it and meeting and conferring. So if you can give me any additional information that I don't currently have, like the number is such a bare minimum thing, like more than that would be great. But if you can appeal to, I'm hyper-logical. I worked at Apple where everyone's just harassing each other all the time but I got stuff done because I'm logical. So if you can appeal to me with logic of why something makes sense and is practical, there's a good chance I might come around to it. But if you just don't tell me any information, like, and I'm kind of have to assume worst case at this point. So like, convince me. You know, maybe, maybe I will be willing. So if you're like, we're holding back three documents. That's all we plan to hold back. And then we're done. And the documents are just these agreements we want you to authorize. I might decide it's a better use of everyone's time to like, maybe acquiesce on that. But if it's going to be this ongoing thing with a bunch of stuff and a bunch of fighting. So I need more data input into my database brain, please."

Defense counsel responded:

"Okay."

The conversation continues at Exhibit I, then Defense counsels stopped responding to the Plaintiff, did continue to threaten the Plaintiff, vaguely accuse her of perjury, and then announce they will no longer speak with her at all; and then today they have now filed a unilateral letter to the court and requested discovery sanctions against the Plaintiff claiming she refuses to meet and confer.

15.    Plaintiff expressly cited due process concerns and conflict with NLRA rights. Further, despite Plaintiff's prior acquiescence on the matter following the court's statement it was inclined to grant the order regardless of Plaintiff's position,[1] it was Defendant who failed to agree to the document, failing to e-file a signed copy, and failing to raise concerns during a Meet and Confer. In

---

[1] Ex. H: March 27 2025 transcript. Melinda: "Let's start with the protective order, because that's one of the things we want to get done. Is that okay?" Ashley: "So it sounds like she's going to issue the default one anyways. I do not want Apple's modified one, but the default one, we're just going to have to go, I'm going to have to challenge stuff if Apple abuses it, and we'll just have to go through that process…. I do think it would be helpful to proactively define confidentiality, since that is the number one dispute I'm having with Apple in all of the litigation."

fact, Defendant noted concerns they wanted the order to expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement about the evidence she received from Apple during discovery – which the Plaintiff complained was criminal obstruction.

### D. The "Informed Consent" Agreement Issue

16.     During the May 2, 2025 recorded meet-and-confer session, Defendant indicated that the protective order was being pursued primarily to restrict Plaintiff's testimony concerning an internal *"informed consent"* agreement and *"why they fired her."* (25-2028 Dkt. No. 19-3). Defendant asserts this document authorizes the collection and retention of personal images of Plaintiff and of the public, including photos of naked bodies, by internal Apple applications without notice or ability to opt-out, and which they intentionally stated in internal documents knowingly violates French and German privacy laws. (Dkt. No. 47, 76; 25-2028 Dkt. No. 27-6, 33).

17.     Plaintiff filed Discovery Objection Letters about Defendant's improper request for a protective order on February 11, 2025. Plaintiff wrote to the court that Apple:

> "…designated virtually every document exchanged in discovery as 'Confidential' by default, regardless of whether it actually contains sensitive material. Courts reject such blanket confidentiality designations… Apple's default designations are particularly troubling given its refusal to provide even basic employment records unless Plaintiff agrees to its overbroad restrictions…. Apple insists on a protective order that would prevent Plaintiff from using discovery materials in regulatory or legal proceedings. Such provisions improperly restrict a whistleblower's ability to report misconduct and violate public policy…. Apple has refused reasonable compromises. "

Dkt. 165 at 4-5, Feb. 11, 2025 filing.

### E. Historical Context and Prior Adjudications

18.     Defendant has declined to produce the agreement or permit review. This rationale echoes prior allegations made by Defendant in 2021, when it sent Plaintiff a cease and desist email, a week after she was fired, vaguely mentioning images Plaintiff posted of herself on Twitter and shared with a reporter. That rationale was publicly criticized at the time, including in national media, and subsequently discredited by independent adjudicators. For example, on October 14, 2021, Gizmodo described Apple's post-hoc, stated reason for firing the Plaintiff as *"settl[ing] on an absurd*

*excuse."* (Dkt. No. 35-12 at 81-96).)[2] Plaintiff's counsel at that time also sent Apple a cease & desist letter demanding that Apple drop their baseless allegations of "*leaking*." (Ex. F). Apple's counsel never responded.

19.    On July 27, 2022, an ALJ at the California Unemployment Office of Appeals, Judge Douglas Bird, held that based on the evidence, Defendant fired Plaintiff for reasons other than misconduct by the Plaintiff. (Dkt. No. 35-6 at 26-28). The ALJ found Apple's communications with Plaintiff about the termination to be "*vague and incomplete*" and despite Plaintiff "*request[ing] specific information from the employer, no specific information was provided*" and "*the evidence shows that the [Plaintiff] ...was discharged for reasons other than misconduct.*" (Exhibit E: CUIAB Case. No. 7253819).

20.    In 2024, the National Labor Relations Board issued a formal complaint concluding that Defendant unlawfully threatened, suspended, and terminated Plaintiff in violation of federal labor law. (Dkt. No. 151 at 12-21, 203). The NLRB's December 18, 2024 Complaint reads:

"(a) From about March 22, 2021, to about September 2021, [Gjovik] concertedly complained to [Apple] regarding the wages, hours, and working conditions of [Apple's] employees, by inter alia, raising workplace environmental health and safety concerns.

(b) From about June 2021, to about September 2021, [Apple's] employee Gjøvik engaged in concerted activities for the purposes of mutual aid and protection, by, inter alia, circulating a petition amongst employees regarding return-to-work concerns, talking to newspaper outlets about employees' workplace complaints and concerns, posting about workplace complaints and concerns on social media as well as on Respondent's Slack channel platform.

(c) About August 4, 2021, [Apple] suspended its employee Gjøvik.

(d) About September 9, 2021, [Apple] discharged its employee Gjøvik.

(e) Respondent engaged in the conduct described above in paragraphs 8(c) and 8(d), because Gjøvik engaged in the conduct described above in paragraphs 8(a)

---

[2] Dell Cameron, "*Apple Wanted Her Fired. It Settled on an Absurd Excuse. The reasons for firing Ashley Gjøvik include tweeting a photo of herself—taken by her own phone.*" Gizmodo. Oct. 14 2021, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789; INPUT, *"Apple is leaning on weak arguments to defend a senior engineer's firing Such as claiming a tweeted selfie is the company's intellectual property."* Oct. 15 2025, https://www.inverse.com/input/culture/apple-is-leaning-on-weak-arguments-to-defend-a-senior-engineers-firing

and 8(b), and to discourage employees from engaging in these or other concerted activities."

The NLRB Complaint seeks remedies including reinstatement, expungement of disciplinary records, back pay, and a formal apology. (Ex. B).

## F. The 2025 NLRB Settlement

21.     In March-April 2025, Apple settled a separate NLRB case filed by the U.S. NLRB due to Gjovik's complaints over Defendant's illegal confidentiality and surveillance policies: These are the same policies it now seeks to enforce via this motion. (Dkt. No. 203). The federally required three-page notice includes an express statement compelling Defendant to inform employees: *"WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information."* Further, the notice states: "*WE HAVE rescinded the aspects of the Business Conduct Policy described above and revised it to make clear that Apple Confidential Information does not include wages, hours, and working conditions"* and "*that employees may communicate about labor disputes*." The Notice also included "*WE HAVE rescinded the aspects of the Social Media and Online Communications Policy."* (Dkt. No. 203).

22.     In these matters before the court, Apple is asking the court to reincarnate its unlawful policies in direct violation of a national settlement with the NLRB. (See, Exhibit D: federal Settlement Agreement in Case No. 32-CA-284428.). Further, the evidence that Apple is slowly producing is direct evidence of retaliation and misconduct by Apple, with even Apple's privilege logs showing (but withholding) internal Apple emails from before the alleged "*misconduct*" by Plaintiff, which reference her protected social media posts and *"exit outcomes,"* establishing direct pretext. (Case No. 25-2028, Dkt. 19.3 pg 3-26).

## G. Discovery Issues and Defendant's Conduct

23.     Further, Plaintiff reiterates that no meet-and-confer occurred regarding Defendant's request filed to Docket No. 219. Plaintiff repeatedly offered to confer, and Defendant expressly declined, stating in writing on June 5, 2025:

> "In light of your recent assertions that Apple's conduct is causing you 'severe PTSD episodes and panic attacks,' and your request that Apple 'refrain from trying to make [your] symptoms worse,' Apple does not intend to further respond to your emails at this time. We will seek guidance from the Court regarding how to proceed. However, to be clear, we disagree with your allegations of misconduct by us or our client."

(Exhibit A).

24. Plaintiff responded the same day, explaining that Apple had not responded to her emails since May 27, but did file a second deficient answer on June 2, 2025 which still did not provide a factual basis for most defenses and also now vaguely accused the Plaintiff of perjury. Plaintiff wrote:

> "I asked you to stop making my PTSD symptoms worse through threats and similar misconduct. This is the most basic request for professional conduct imaginable.... I only asked you to stop engaging in intentional misconduct such as threats, that would make my PTSD worse. But I also have a number of outstanding requests for you and I am still expecting answers in response to. Apple cannot simultaneously demand my discovery participation while refusing to communicate. There is no local or federal rule that permits you to refuse to communicate with me if I ask you to stop threatening me. This probably violates the ADA actually. The Federal Rules require good faith meet and confer and you appear to be saying you cannot do that because of an accommodation request I made."

25. No joint discovery letter was drafted or proposed by Defendant. Defendant did not provide a draft, redline, or any written summary of their position for Plaintiff's review. Notably, Plaintiff has previously been denied similar relief by this Court for failure to meet the §14 joint-letter timing requirement. Defendant now seeks to bypass that same requirement without justification.

## IV. IMPROPER USE OF DISCOVERY PROCESS

26. Defendant appears to be using the discovery process to seek what is, in effect, dispositive relief. Their motion indicates that the protective order is aimed primarily at deposition testimony regarding a document they claim justifies Plaintiff's termination. This is not a proper basis for a protective order and instead constitutes an improper attempt at summary judgment through discovery motion practice.

27. Plaintiff has a legal and protected right to file charges with the National Labor Relations Board. Defendant has framed Plaintiff's recent NLRB charge as "*misconduct*" and referenced it disparagingly in federal filings. This characterization constitutes a further unlawful threat under the NLRA and a misrepresentation of federally protected activity. The NLRB settlement agreement entered in 2025 controls in this matter. That agreement required Apple to rescind the very confidentiality policies it now seeks to enforce through this motion. Federal courts have jurisdiction over NLRB settlement enforcement and must ensure due process when interpreting or applying such agreements.

28. Defendant is continuing to withhold discovery. Apple has not responded to repeated inquiries about deposition scheduling, nor has it coordinated or produced a corporate representative for deposition. These omissions continue to delay discovery and prejudice Plaintiff. Defendant's

interrogatories remain incoherent and incomplete. For example, Interrogatory Set Two, No. 17, asks Plaintiff to *"explain how you calculated your social media usernames,"* an item with no basis in relevance or clarity, and which appears to result from an unreviewed copy-paste drafting error. (See Ex. L). Now Apple's letter at Dkt. 219 urges the court to compel Plaintiff to complete these illogical interrogatories and to prohibit the Plaintiff from complaining about them. (*"No opposition shall be filed until the Court grants leave to file an opposition.*" – Dkt. No. 219 at 2).

29.     Finally, Defendant has failed to respond to Plaintiff's request for clarification regarding medical records. Apple served as Plaintiff's occupational medical provider from 2015 through 2020. Defendant now requests Plaintiff produce documents relating to care provided by its own doctors while also claiming it has no copies of such records. (Ex. L). Plaintiff objected on the basis that if Apple has no copies, it has either improperly withheld or destroyed evidence. Several days later, Apple terminated all communication with Plaintiff entirely. (Ex. A).

## V.    PENDING MOTION FOR RECONSIDERATION AND TO STRIKE DEFENDANT'S AMENDED ANSWER

30.     Plaintiff also notes that she has a pending Rule 27-10 motion for reconsideration before the United States Court of Appeals for the Ninth Circuit in Case No. 25-2028. That motion seeks reinstatement of Plaintiff's dismissed California Business and Professions Code §17200 claim, which challenges Defendant's use of confidentiality agreements and surveillance policies as unfair business practices under state law. The factual basis of that claim includes the same conduct Defendant now seeks to designate as confidential in this proceeding. (Ex. G).

31.     Plaintiff further asks the Court to scrutinize the framing used in Defendant's motion. Apple's request is not limited to protecting confidential production; it includes an attempt to prohibit Plaintiff from discussing facts underlying a pending crime victim retaliation claim, and to classify deposition testimony as confidential without producing the document in question.

32.     Apple has acknowledged that it intends to use the protective order to assert that Plaintiff violated an undisclosed "*informed consent agreement,"* while declining to provide a copy of that agreement. This raises significant concerns regarding prior restraint, procedural fairness, evidence of additional unlawful threats and harassment, and the potential obstruction of Plaintiff's rights as both a litigant and a victim reporting criminal conduct. (See Order at Dkt. No 179; filings at Dkt. No. 155-156 and, Case No. 25-2028, Dkt. No. 27).



*Plaintiff's Fifth Amended Complaint*, Dkt. No. 142 at 38, Nov. 26 2024.



*Plaintiff's Motion for Judicial Notice,* Dkt. No. 95 at 26, Aug. 18 2024.

33.    It's also worth noting that Plaintiff has repeatedly filed exhibits of the "*Face Gobbler*" images and content in this docket and in the Ninth Circuit docket, and this filing here now too (see above); but Defendant has not once complained to the court about confidentiality, moved to strike, or even commented on it in any of their dozens of motions. Plaintiff also filed a copy of a different "Informed Consent Agreement" which Apple had title a "Deed Poll." In this case, Apple used a Informed Consent Agreement/Deed Poll it to claim secrecy over a physical injury (a deep skin burn) caused to Plaintiff by one of Apple's products. Apple also never looked to strike or seal that document as well, while concurrently claiming the Gobbler version is top secret. Defendant knows that its arguments are indefensible when examined in the light.

34.    Plaintiff respectfully submits that permitting Defendant to use a discovery protective order to restrict testimony or public reference to material facts still subject to pending appellate review would improperly interfere with the appellate process and create a risk of conflicting rulings between courts. Plaintiff asks that the Court refrain from issuing any order that would preclude her from continuing to assert rights already under review in a parallel judicial proceeding.

35.    Plaintiff further notes that the Court previously granted her motion to strike Defendant's affirmative defenses for failure to allege supporting facts. In that order, the Court found that Apple's original affirmative defenses were insufficient under Rule 8 and failed to provide notice of the factual basis for its claimed justifications. Defendant subsequently re-filed its Answer with amended defenses, which still lack specific factual allegations regarding the reasons for Plaintiff's termination. Plaintiff has notified the Court that she intends to file a second motion to strike on that basis. Despite failing to articulate a valid factual defense, Defendant now seeks to impose a protective order premised on the alleged legitimacy of its termination decision. Plaintiff respectfully submits that it is improper to request confidentiality orders tied to a defense that has not been pled with the requisite specificity and that has already been deemed insufficient by this Court. (Dkt. 215).

## VI.    NLRB CHARGE, SETTLEMENT VIOLATION, AND JUDICIAL OVERREACH RISK

36.    Defendant has characterized Plaintiff's recent filing of a new National Labor Relations Board charge as "misconduct." However, the National Labor Relations Act explicitly protects the right of individuals to file charges with the Board, and such filings may not lawfully be treated as grounds for discipline, retaliation, or adverse inference. In this case, the filing in question alleges that Defendant's conduct—including its discovery threats and this motion—violates the April 2025 national settlement agreement between Defendant, Plaintiff, and the Board.

37.     That agreement required Apple to rescind multiple work policies that the Board determined were unlawful under the NLRA, including confidentiality restrictions and internal surveillance policies. Plaintiff was terminated under those same policies, and Apple acknowledged in the settlement that they were withdrawn. The settlement arose from a Board complaint alleging that Apple had unlawfully suspended, threatened, and terminated Plaintiff. The new charge (Ex. B) alleges that Defendant has violated the settlement by attempting to reassert those same policies in the present litigation.

38.     Under the NLRA, enforcement and interpretation of Board settlement agreements occurs in federal district court, including where the underlying events giving rise to enforcement arise. Accordingly, this Court is the proper forum for assessing whether Apple's conduct—including its invocation of rescinded policies and framing of protected Board activity as "misconduct"—comports with federal labor law. Plaintiff respectfully submits that Apple is seeking not only procedural relief, but judicial statements or inferences that may be used in its defense before the NLRB. Plaintiff further submits that these statements may constitute improper anticipatory findings on matters still pending before the Board. Plaintiff respectfully asks the Court to decline any such invitation—either expressly or by implication—and to preserve the integrity of the settlement enforcement process within its appropriate procedural framework.

## VII.    CONCLUSION

39.     Plaintiff does not oppose judicial involvement in the discovery process. To the contrary, given Apple's conduct—including its written refusal to communicate with Plaintiff, its accusations of misconduct based on protected activity, and its request that Plaintiff be prohibited from filing oppositions—Plaintiff would welcome structured discovery conferences and close judicial oversight of discovery requests and responses. That would provide clarity, accountability, and fairness. Plaintiff's objection here is not to that possible outcome, but to how Apple has attempted to reach it: by bypassing meet-and-confer requirements, misrepresenting the record, and seeking extraordinary restrictions on Plaintiff's speech, autonomy, and participation in her own case.

40.     Plaintiff is currently pursuing an active claim for crime victim retaliation in this proceeding, which the Court has allowed to move forward. (Dkt. No. 138, 179). Under Article I, Section 28 of the California Constitution, crime victims have the right to speak about the crimes they report. To issue a protective order that prohibits Plaintiff from testifying about those same facts—or from identifying them publicly—would not only silence a litigant, but directly violate both federal statutory and California constitutional protections specific to victims of crime.

**Respectfully submitted,**

_____

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

**Dated: June 12 2025**

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

## VIII.    EXHIBITS

- **Exhibit A:** email correspondence between Plaintiff and Defense counsel.

- **Exhibit B:** NLRB charge No. 01-CA-365726 (NLRB v. Apple re: Gjovik)

- **Exhibit C:** NLRB Complaint in case no. 32-CA-282142; 32-CA-283161 (NLRB v. Apple re: Gjovik)

- **Exhibit D:** NLRB Settlement in case no. 32-CA-284428 (NLRB v. Apple re: Gjovik)

- **Exhibit E:** ALJ Order in Case No. 7253819, Issue No. 1256 (Gjovik v. Apple, CUIAB Case. No. 7253819).

- **Exhibit F:** Plaintiff's Cease & Desist Letter to Defendant (Oct. 4 2021).

- **Exhibit G:** Plaintiff's Motion for Reconsideration 25-2028 Dkt. No. 33 ( June 3 2025).

- **Exhibit H:** March 25 2025 Meet and Confer Transcript

- **Exhibit I:** May 5 2025 Meet and Confer Transcript

- **Exhibit J:** The May 13 2025 email exchange about filing the Protective Order.

- **Exhibit K:** Plaintiff's May 13 2025 Motion to Quash and May 14 2025 Motion to Stay

- **Exhibit L:** Plaintiff's Opposition to Request for Interrogatories (May 2025).