Case No. 25-2028

---

# In the United States Court of Appeals
# For the Ninth Circuit

---

**Ashley M. Gjøvik**, *an individual*,

*Plaintiff-Appellant*

v.

**Apple Inc.**, *a corporation*,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-CV-04597
The Honorable Judge Edward M. Chen

---

## Appellant's Motion for Reconsideration (27-10)

---

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N. St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... IV

MOTION FOR RECONSIDERATION ..................................................... 1

I. JURISDICTIONAL ERROR: THE COURT HAS MANDATORY JURISDICTION UNDER 28 U.S.C.
§ 1292(A)(1) ........................................................................................ 2

A. ONE DISMISSED CLAIM SOUGHT ONLY INJUNCTIVE RELIEF ................................. 2

B. NINTH CIRCUIT PRECEDENT MANDATES IMMEDIATE APPEALABILITY ................... 3

II. INCONSISTENT RULING VIOLATES LAW OF THE CASE .................................... 5

III. THE COURT CREATED AN IMPERMISSIBLE PROCEDURAL TRAP BY DENYING AMENDMENT
6

IV. RULE 12(G) AND 12(H) VIOLATIONS AND SUBSTANTIVE LEGAL ERRORS ..................... 7

C. MULTIPLE DEFENSES WERE WAIVED UNDER RULE 12(G) ........................................ 7

D. THE COURT VIOLATED BASIC RULE 12(B)(6) STANDARDS BY ACKNOWLEDGING DEFECTS
COULD BE CURED .................................................................................... 9

E. THE COURT'S *IMPROPER RELIEF* RULING VIOLATES BASIC STANDING PRINCIPLES ............. 10

F. IMPROPER PARTIAL ANALYSIS OF § 17200 CLAIMS .................................................. 11

V. THE DISTRICT COURT COMMITTED A REVERSIBLE ERROR BY STRIKING GJOVIK'S
TOLLING ARGUMENTS THEN HOLDING SHE *WAIVED* THEM ........................................ 12

VI. PROCEDURAL DUE PROCESS ISSUES AND CHALLENGING BRIEFING CIRCUMSTANCES ... 15

VII. RECENT FEDERAL LEGISLATION CONFIRMS THE NATIONAL IMPORTANCE AND
URGENCY OF THESE ISSUES ........................................................................ 16

VIII.  FEDERAL RECOGNITION OF GJOVIK'S CASE AS EXEMPLIFYING SYSTEMIC

SURVEILLANCE RETALIATION .......................................................................... 19

IX.  RECENT CALIFORNIA AI LEGISLATION CONFIRMS STATE-LEVEL URGENCY AND PUBLIC

POLICY IMPERATIVES ....................................................................................... 22

X.  GJOVIK'S LEGISLATIVE ADVOCACY DIRECTLY PROMPTED CALIFORNIA'S BIOMETRIC

PRIVACY LEGISLATION ..................................................................................... 26

XI.  THE PANEL'S DISMISSAL AND REFUSAL TO ADDRESS GJOVIK'S PENDING MOTION FOR

INJUNCTIVE RELIEF .......................................................................................... 28

XII.  BROADER LITIGATION CONTEXT AND JUDICIAL ECONOMY ...................................... 30

XIII.  GJOVIK'S UCL CLAIM REPRESENTED A LAST RESORT FOR SELF-PROTECTION .......... 31

XIV.  CONCLUSION AND RELIEF REQUESTED .............................................................. 32

EXHIBITS ................................................................................................................. 34

I.  EXHIBIT A (ORDER, 5/20/24, DKT 73) ............................................................ 35

II.  EXHIBIT B (COMPLAINT, 6/18/24, DKT 76) .................................................... 39

III.  EXHIBIT C (OPPOSITION, 7/31/24, DKT 84) .................................................. 45

I.  EXHIBIT D (SUR-REPLY, 8/18/24, DKT 93-94) ............................................... 47

II.  EXHIBIT E (ORDER, 8/22/24, DKT 98) ........................................................... 56

III.  EXHIBIT F (ORDER, 10/1/24, DKT 112) ........................................................ 58

IV.  EXHIBIT G (MOTION TO AMEND, 1/31/25, DKT 155-1) ................................. 62

V.  EXHIBIT H (ORDER, 2/27/25, DKT 179) ........................................................ 66

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Carson v. American Brands, Inc.,* 450 U.S. 79 (1981).------------------------------------- 4

*Foman v. Davis,* 371 U.S. 178 (1962). --------------------------------------------------- 8

*Mathews v. Eldridge*, 424 U.S. 319 (1976). -------------------------------------------16

## US COURT OF APPEALS CASES

*Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023) ------------------------------12

*Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000). ---------------------------------------- 11

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ------------------------29

## CALIFORNIA CONSTITUTION

Cal. Const. art. I, § 28--------------------------------------------------------------------30

California's Crime Victims' Rights Act (Marsy's Law) ------------------------------------ 5

## STATE CASES

Aryeh v. Canon Bus. Solns., Inc., 55 Cal. 4th 1185, 1198 (2013)------------------------15

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).------------------------------------------12

# U.S. AND STATE STATUTES

18 U.S.C. § 1951 ------------------------------------------------------------------------------------8, 31

18 U.S.C. § 1964(a) -----------------------------------------------------------------------------------30

18 U.S.C. § 3771 --------------------------------------------------------------------------------------30

18 U.S.C. §§ 1512, 1513, 1514 --------------------------------------------------------------------30

28 U.S. Code § 1292(a)(1) ---------------------------------------------------------------------3, 33

28 U.S.C. § 1292(a)(1)------------------------------------------------------------------------------ 2

42 U.S.C. § 6972 (Resource Conservation and Recovery Act) ------------------------32

47 U.S.C. § 223(h) -----------------------------------------------------------------------------------18

California Business & Professions Code § 17200 -------------------------------------3, 12

California Civil Code § 1708.85 ------------------------------------------------------------- 7

Crime Victims′ Rights Act --------------------------------------------------------------------30

U.S.C. § 7604 (Clean Air Act)---------------------------------------------------------------32

# U.S. AND STATE RULES & REGULATIONS

Fed. R. Civ. P. 12(g) ----------------------------------------------------------------- 9, 10, 13

Fed. R. Civ. P. 12(h)(2) or (3) -------------------------------------------------------------- 9

Fed. R. Civ. P. 12. --------------------------------------------------------------------------- 9

Fed. R. Civ. P. Rule 12(g)------------------------------------------------------------------- 9

# LEGISLATIVE HISTORY

AI Whistleblower Protection Act, S. 1792, 119th Cong. (introduced May 15, 2025); see also H.R. 3460, 119th Cong. (companion bill). ------------------------------------------------- 17

Cal. Bill Analysis, S.B. 53, 2025-2026 Reg. Sess. (Cal. 2025). ---------------------------------24

Cal. Lab. Code § 1107.1(a) (proposed), S.B. 53, 2025-2026 Reg. Sess. (Cal. 2025). --------24

Cal. SB 1189: Biometrics Information (2021-2022) --------------------------------------------27

Cal. Senate Judiciary Committee Analysis, SB 1189 (Apr. 5, 2022) ---------------------------29

Cal. Senate Judiciary Committee Analysis, SB 1189 (Apr. 5, 2022). --------------------------28

Cal. Senate Judiciary Committee Analysis, SB 53, 2025-2026 Reg. Sess. (Cal. 2025). ---24, 25

Digital Surveillance of Workers: Tools, Uses, and Stakeholder Perspectives | U.S. GAO, GAO-24-107639, https://www.gao.gov/products/gao-24-107639 ------------------------- 20

Press Release, Sen. Scott Wiener, Senator Wiener Introduces Legislation to Protect AI Whistleblowers & Boost Responsible AI Development (2025) -----------------------------25

Press Release, Sen. Steve Padilla, California State Senate Approves the California Artificial Intelligence Bill of Rights (2025). --------------------------------------------26

S.B. 420, § 1(c)(2), 2025-2026 Reg. Sess. (Cal. 2025). -------------------------------------25

Senate Judiciary Committee Press Release (May 15, 2025). -------------------------------- 17

TAKE IT DOWN Act, Pub. L. No. 119-12, 47 U.S.C. § 223(h) (2025)----------------------18

# MOTION FOR RECONSIDERATION
## TO THE HONORABLE COURT:

Plaintiff-Appellant, Ashley Gjovik, respectfully moves for reconsideration of the Court's dismissal of the appeal in this matter. The panel failed to address mandatory appellate jurisdiction under 28 U.S.C. § 1292(a)(1)[1] and dismissed the appeal based on lack of finality without considering the specific statutory exception for injunctive relief orders. The underlying dismissal resulted from multiple procedural violations, and the district court's denial of Gjovik's subsequent motion to amend created an impermissible procedural trap. Recent federal legislation confirms the national importance of these issues and the urgency of immediate appellate review.

The plaintiff respectfully acknowledges that the vast majority of *pro se* RICO appeals seeking interlocutory review likely facially lack merit and are appropriately dismissed for want of jurisdiction. This Court's careful gatekeeping function protects judicial resources and prevents abuse of the appellate process. However, Gjovik respectfully submits that this case presents the exceptional circumstances

---

[1] "(a)Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from…(1)Interlocutory orders of the district courts of the United States… or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

that warrant the Court's patient consideration: a federal crime victim and whistleblower seeking immediate protection from ongoing retaliation while serving as a witness in government investigations, whose state-law claim for injunctive relief was dismissed in direct contradiction of the district court's prior ruling, and whose pending motion for federal injunctive relief was ignored entirely.

Gjovik asks for the Court's patience in reviewing what she believes demonstrates clear jurisdictional error under controlling Ninth Circuit precedent, compounded by fundamental procedural violations that have left a crime victim without any forum for relief from continuing federal violations.

## I. JURISDICTIONAL ERROR: THE COURT HAS MANDATORY JURISDICTION UNDER 28 U.S.C. § 1292(A)(1)

The panel erred by dismissing this appeal for lack of finality without addressing Gjovik's jurisdictional basis under 28 U.S. Code § 1292(a)(1), which provides mandatory jurisdiction over appeals from orders *"refusing"* injunctions.

### A. ONE DISMISSED CLAIM SOUGHT ONLY INJUNCTIVE RELIEF

The district court dismissed Gjovik's California Unfair Competition Law claim under California Business & Professions Code § 17200 with prejudice.

EXHIBIT F: District Court Order Granting Motion to Dismiss (U.S. D.C. Dkt. 112, Oct. 1, 2024)

This claim sought **only** injunctive relief, not monetary damages. In Gjovik's

2

opposition to the motion to dismiss, Gjovik explicitly clarified: *"Gjovik does not need economic restitution – and instead requests disgorgement (deletion) of data and software – not money."* **EXHIBIT C:** Plaintiff's Opposition to Motion to Dismiss (U.S. D.C. Dkt. 84, 18, July 31, 2024)

The Fourth Amended Complaint requested only that the court *"order Apple to disgorge unlawful data"* and *"prohibit Apple from using personal employee data in for-profit product development."* **EXHIBIT B:** Fourth Amended Complaint (U.S. D.C. Dkt. 76, ¶¶ 206-07, June 18, 2024)

## B. Ninth Circuit Precedent Mandates Immediate Appealability

Under controlling Ninth Circuit precedent, dismissal with prejudice of a claim seeking injunctive relief constitutes *"refusing"* an injunction under § 1292(a)(1). *Carson v. American Brands, Inc.,* 450 U.S. 79, 83-86 (1981). The Ninth Circuit has jurisdiction to hear appeals from orders denying injunctions, including permanent and preliminary injunctions, under § 1292(a)(1) even if the case is still ongoing in the district court. When § 1292(a)(1) applies, this Court has mandatory jurisdiction—it is not discretionary.

Gjovik argued irreparable harm in her Fourth Amended Complaint, saying *"Apple's extensive use of these illegal practices will make calculating damages a challenge. Without injunctive equitable relief, Gjovik and her prior coworkers will suffer irreparable*

*injury, which damage remedies cannot readily remedy. Apple should be ordered to disgorge unlawful data and the fruit of the poisoned data.*" **EXHIBIT B:** Fourth Amended Complaint (U.S. D.C. Dkt. 76, 61, June 18, 2024)

The panel cannot simply dismiss for lack of finality under § 1291 without addressing this independent jurisdictional basis. The urgency of immediate appellate review is underscored by the ongoing irreparable harm. Apple continues to possess Gjovik's intimate images obtained through the unlawful data collection scheme and continues to weaponize them in litigation. Gjovik also sought protection under California's Crime Victims' Rights Act / *Marsy's Law* related to this conduct, which the court similarly denied. (25-2028, Dkt. 13-15).

The district court's refusal of injunctive relief leaves Gjovik with no protection from continuing violations while Apple maintains possession of compromising material and continues the challenged practices. This ongoing irreparable harm—for which no adequate remedy at law exists—exemplifies precisely the type of injury that § 1292(a)(1) was designed to address through immediate appellate review.

The panel's dismissal order stated only that the case wasn't final without any analysis of § 1292(a)(1). This represents a clear oversight of controlling Ninth Circuit precedent, not a substantive disagreement with Gjovik's legal theory. Courts of appeals are required to address jurisdictional arguments, and failure to

4

do so constitutes reversible error.

## II.   INCONSISTENT RULING VIOLATES LAW OF THE CASE

The district court's dismissal contradicted its own prior ruling in violation of the law of the case doctrine.

In its May 20, 2024 order, the district court explicitly held that Gjovik had standing to pursue injunctive relief under § 17200: "*Apple does not explain why she would not have standing to pursue injunctive relief.*" <u>EXHIBIT A</u>: District Court Order Granting Motion to Dismiss in Part (U.S. D.C. Dkt. 73, 45-46, May 20, 2024). The court expressly noted Plaintiff-Appellant had standing to seek injunctive relief, writing "*Ms. Gjovik has standing to seek injunctive relief but she has not alleged how she has standing for monetary relief.*" (*Id* at 48). The court granted Apple's motion only as to monetary relief but allowed the injunctive relief claim to proceed.

Following the court's guidance, Gjovik amended her complaint and clearly stated in her opposition that she sought only injunctive relief, not monetary damages. In the Fourth Amended Complaint, Plaintiff pled economic harm in addition to privacy and other personal injuries and should retain her injunctive standing.

> "Injunction and disgorgement are appropriate here, and the court has broad powers to issue injunctive relief under California Business and Professions Code §§ 17200, including the power to order restitution

and disgorgement.

**EXHIBIT B:** Fourth Amended Complaint (U.S. D.C. Dkt. 76, 60, June 18, 2024)

"Plaintiff does not need economic restitution – and instead requests disgorgement (deletion) of data and software – not money."

**EXHIBIT C:** Plaintiff's Opposition to Motion to Dismiss (U.S. D.C. Dkt. 84, 26, July 31, 2024)

After Gjovik clarified she sought only the relief the court had previously found viable, the district court dismissed the entire claim. **EXHIBIT F:** District Court Order Granting Motion to Dismiss (U.S. D.C. Dkt. 112, Oct. 1, 2024).  This directly contradicts the court's May 20 ruling and violates the law of the case doctrine.

## III.    THE COURT CREATED AN IMPERMISSIBLE PROCEDURAL TRAP BY DENYING AMENDMENT

The district court's dismissal becomes even more problematic in light of Gjovik's subsequent motion to amend. After the court dismissed the UCL claim in October 2024 for allegedly failing to address Apple's arguments, Gjovik promptly filed a motion to amend in January 2025 that directly addressed those concerns.

**EXHIBIT G:** Plaintiff's Motion for Leave to Amend (U.S. D.C. Dkt. 155-1, Jan. 31, 2025). The proposed amendment included:

- A new predicate "*unlawful*" act under California Civil Code § 1708.85 (revenge porn statute)
- Clear allegations of economic injury from termination and employment denylisting

6

- Concrete factual basis for the UCL violation based on newly discovered facts about Apple's use of intimate images.
- Direct allegations of Hobbs Act extortion violations (18 U.S.C. § 1951) based on Apple's use of intimate images to coerce employee compliance.

This amendment directly addressed every concern the court had raised about the UCL claim while providing multiple independent legal theories supporting the same factual allegations.

The district court denied this motion not on substantive grounds, but stating only that *"pleadings in this case need to be settled so that the litigation can proceed."* **EXHIBIT H:** District Court Order Denying Motion to Amend (U.S. D.C. Dkt. 179, Feb. 27, 2025). This denial violated Rule 15(a)'s mandate to *"freely give leave when justice so requires"* without any valid *Foman* factor such as undue delay, bad faith, or futility. *Foman v. Davis,* 371 U.S. 178 (1962).

The court dismissed the original claim for not addressing certain issues, then denied Gjovik's attempt to cure those exact defects. Such procedure violates fundamental fairness and reinforces the need for immediate appellate review under § 1292(a)(1).

## IV.  Rule 12(g) And 12(h) Violations and Substantive Legal Errors
### C. Multiple Defenses Were Waived Under Rule 12(g)

Subdivision (g) forbids a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which

was available to him at the time he made the first motion and which he could have

included, but did not in fact include therein. Fed. R. Civ. P. 12. Except as provided

in Fed. R. Civ. P. 12(h)(2) or (3), a party that makes a motion under this rule must

not make another motion under this rule raising a defense or objection that was

available to the party but omitted from its earlier motion. Fed. R. Civ. P. 12(g).

The district court allowed Gjovik's UCL claim to proceed in its May 20,

2024 order, finding that *"Ms. Gjovik has standing to seek injunctive relief."* Dkt. 73 at

48. The court did not dismiss the claim based on statute of limitations or *"improper*

*relief"* arguments at that time. However, the court later reconsidered and dismissed

the same UCL claim with prejudice on October 1, 2024, citing both statute of

limitations and *"improper relief"* as the grounds. **EXHIBIT F:** District Court Order

Granting Motion to Dismiss (U.S. D.C. Dkt. 112, Oct. 1, 2024)

Gjovik had expressly objected to Apple's requests violation 12(g) and 12(h)

and asked that if the court were to allow Apple to violate those rules, she be told so

and allowed to brief her response. **EXHIBIT C:** Gjovik's Opposition to Motion to

Dismiss (U.S. D.C. Dkt. 84, July 31, 2024).

The court dismissed her claims in violation of 12(g) and 12(h), did not allow

her further briefing, and additionally claimed because she did not proactively brief,

she voluntarily "*waived*" these any arguments. **EXHIBIT F.**

This violated Fed. R. Civ. P. 12(g) by allowing Defendant to re-raise defenses

that were available but not successfully pursued in earlier motion practice. Both the statute of limitations defense and the *"improper relief"* argument were available to Apple during the initial motion practice but were either not raised or were rejected by the court. Fed. R. Civ. P. 12(g) prohibits defendants from making successive motions raising defenses that *"were available"* but *"omitted from"* earlier motions.

Then, after Gjovik's first appeal (24-6058) was dismissed on October 25, 2024, the district court compounded the error by denying Gjovik's motion to amend on February 27, 2025 without addressing the UCL claim the court had previously found viable. **EXHIBIT H:** District Court Order Denying Motion to Amend (U.S. D.C. Dkt. 179, Feb. 27, 2025). In fact, the court failed to even mention her request to appeal the UCL claim despite her Motion addressing it directly. **EXHIBIT G:** Gjovik's Motion for Leave to Amend (U.S. D.C. Dkt. 155-1, 19-20, Jan. 31, 2025). [2]

The court's inconsistent treatment—first allowing the UCL claim to proceed, then dismissing it on previously waived grounds — violates the basic principles of Fed. R. Civ. P. 12(g) that prevent piecemeal litigation.

### D. The Court Violated Basic Rule 12(b)(6) Standards by Acknowledging Defects Could Be Cured

---

[2] Gjovik's Motion to Amend, "*Request to Replead Retaliation & UCL Claims Based on New Revenge Porn Facts: Violation of Cal. Bus. & Prof. Code § 17200.*" (pages 19-20).

Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely. *Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000). However, granting leave to amend will enable a plaintiff with a meritorious claim to cure any technical defects and courts must allow amendment when defects are curable. *Id.*

The court's own words prove amendment could cure the defects: *"Ms. Gjovik could have, but did not, contend there is no time bar because there is some kind of continuing accrual, i.e., because Gobbler is still on her personal account."* **EXHIBIT F:** District Court Order Granting Motion to Dismiss (U.S. D.C. Dkt. 112, 33, Oct. 1, 2024)

By acknowledging a specific argument that could overcome the time bar, the court demonstrated that the amendment was not futile and dismissal with prejudice was improper under *Lopez v. Smith*.

## E. The Court's *"Improper Relief"* Ruling Violates Basic Standing Principles

The court erroneously conflated individual injunctive relief with impermissible representative relief. Gjovik sought to stop Apple's illegal data practices affecting her personally. The fact that this injunction would incidentally benefit others does not convert it into *"representative relief"* requiring class

certification.

In *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023), the injunction was issued based on Epic's own injury from Apple's anti-steering rules, but the relief (allowing all developers to link to alternative payments) benefited the broader developer and consumer community. This kind of *Public Injunctive Relief* is a relief that primarily benefits the general public, by stopping future violations. It's not just aimed at redressing harm to the individual plaintiff. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).

The court's ruling would eliminate all individual UCL injunctive relief against widespread illegal conduct—an absurd result that contradicts the UCL's primary purpose of providing injunctive relief.

### F. Improper Partial Analysis of § 17200 Claims

Even if some of the conduct is time barred under California Business & Professions Code § 17200, Gjovik can still seek prospective injunctive relief for ongoing violations. The court cannot dismiss an entire claim based on statute of limitations for only one theory while ignoring others.

Gjovik specifically alleged ongoing harm: the Gobbler application *"still tries to connect to her personal iCloud account, even years after her termination."* **EXHIBIT D:** Gjovik's Sur-Reply (U.S. D.C. Dkt. 93, 29, Aug. 18, 2024) [STRUCK]. This supports prospective injunctive relief regardless of any statute of limitations on past

conduct.

The district court improperly considered Defendant's improper relief and statute of limitations argument. If Defendant failed to raise this defense in their first Rule 12 motion, it was waived under Fed. R. Civ. P. 12(g). The court cannot consider waived defenses.

## V.   THE DISTRICT COURT COMMITTED A REVERSIBLE ERROR BY STRIKING GJOVIK'S TOLLING ARGUMENTS THEN HOLDING SHE "*WAIVED*" THEM

The district court's statute of limitations ruling represents a fundamental denial of due process that requires immediate appellate correction. The court created an impossible procedural trap by striking Gjovik's detailed tolling arguments, then penalizing her for failing to raise the very arguments it refused to consider.

## THE DISTRICT COURT STRUCK GJOVIK'S COMPREHENSIVE TOLLING ARGUMENTS WITHOUT CONSIDERATION

The struck sur-reply was directly responsive to Apple's misrepresentations in its reply brief. Gjovik specifically noted: "*Apple repeatedly claimed Gjovik conceded to its arguments…. I concede nothing.*" **EXHIBIT D**: Gjovik's Sur-Reply (U.S. D.C. Dkt. 93, 6, Aug. 18, 2024) [STRUCK]. Gjovik further warned that Apple was making "*misleading and/or inflammatory arguments*" and using false quotes "*not actually things she said and are not in the referenced documents.*" *Id.*

On August 22, 2024, the district court struck Gjovik's sur-reply containing

extensive § 17200 statute of limitations tolling arguments:

> "Plaintiff's motion for leave to file a sur-reply is DENIED. The brief is not targeted to any alleged new contention in Defendant's reply. Furthermore, the proposed sur-reply is more than seventy pages in length, exceeding the page lengths permitted for motions, oppositions, and reply briefs. The Court therefore STRIKES the sur-reply and the documents submitted in support."

**EXHIBIT E:** District Court Order Striking Sur-Reply (U.S. D.C. Dkt. 98, Aug. 22, 2024).

The struck sur-reply contained detailed continuing accrual arguments directly responsive to Apple's statute of limitations defense, including:

> "The Gobbler app still tries to connect to her personal iCloud account, even years after her termination. [8/18 Declaration Exhibit I]... A California Unfair Competition Law (UCL) claim generally accrues when each of the elements of the cause of action (wrongdoing, harm, and causation) are satisfied... The UCL also supports equitable tolling which suspends or extends the statute of limitations... the continuing violation doctrine by which a series of wrongs or injuries are aggregated, and the limitations period accrues for all of them on commission of the last of them... and the continuous accrual rule by which a series of wrongs or injuries is viewed as each triggering its own limitations period... All of these apply here."

**EXHIBIT D:** Gjovik's Sur-Reply (U.S. D.C. Dkt. 93, 64-68 Aug. 18, 2024) [STRUCK].

Gjovik also submitted a declaration with evidence of ongoing violations:

*"Attached as Exhibit I are true and correct images captured of Gobbler still trying to access my personal iCloud account for years after I was fired."* **EXHIBIT D:** Gjovik's

13

Declaration in Support of Sur-Reply (U.S. D.C. Dkt. 94, Aug. 18, 2024) [STRUCK]

## THE DISTRICT COURT THEN HELD GJOVIK "WAIVED" ARGUMENTS IT HAD REFUSED TO CONSIDER

Despite striking these comprehensive tolling arguments, the district court ruled:

> "Ms. Gjovik could have, but did not, contend there is no time bar because there is some kind of continuing accrual, i.e., because Gobbler is still on her personal account. See Aryeh v. Canon Bus. Solns., Inc., 55 Cal. 4th 1185, 1198 (2013) (noting that, under the continuing accrual theory, 'recurring invasions of the same right can each trigger their own statute of limitations'). Any such argument has been waived."

**EXHIBIT F**: District Court Order Granting Motion to Dismiss (U.S. D.C. Dkt. 112, 33-34, Oct. 1, 2024).

This ruling is factually and legally erroneous. Gjovik did make continuing accrual arguments—the court simply struck them without consideration. The court even referenced the exact factual basis ("*Gobbler is still on her personal account*") that Gjovik had documented with photographic evidence in her struck declaration.

## THIS PROCEDURAL TRAP VIOLATES DUE PROCESS AND CREATES REVERSIBLE ERROR

A court cannot find a "*waiver*" of arguments it intentionally refuses to

14

consider. The district court's approach—striking comprehensive legal arguments then penalizing Gjovik for not making them—violates fundamental fairness and due process. The error is particularly egregious because:

1. **The continuing accrual arguments were directly responsive** to Apple's statute of limitations defense.
2. **Gjovik provided actual evidence** of ongoing violations through screenshots of Gobbler attempting to access her account "years after termination."
3. **The court referenced the exact factual basis** Gjovik had documented but struck.

This procedural error requires reversal because it denied Gjovik the opportunity to present valid legal defenses to Apple's statute of limitations challenge. The district court cannot create an insurmountable procedural barrier, then use that barrier to justify dismissal of substantive claims.

## VI. Procedural Due Process Issues and Challenging Briefing Circumstances

In Gjovik's prior Ninth Circuit case 24-6058, Apple filed a motion to dismiss on October 24, 2024 (24-6058, Dkt. 5), and this Court dismissed Gjovik's appeal the very next day (24-6058, Dkt. 7, Oct. 25, 2024) without allowing any response whatsoever. This 24-hour dismissal without briefing denied Gjovik the fundamental right to be heard before an adverse ruling. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Facing the same counsel in this case and expecting expedited proceedings

based on 24-6058, Gjovik responded quickly to what was docketed as a *"motion to stay."* The motion's title led Gjovik to focus her briefing on stay factors rather than substantive dismissal arguments, expecting that dismissal briefing would occur through separate motion practice if needed. When the Court treated the motion as seeking dismissal, Gjovik had not provided her strongest arguments on the merits of the dismissal question, having focused her limited briefing time on the stay request.

## VII.   RECENT FEDERAL LEGISLATION CONFIRMS THE NATIONAL IMPORTANCE AND URGENCY OF THESE ISSUES

The urgency and federal significance of these claims is confirmed by two federal statutes enacted while this appeal was pending. On May 15, 2025, Senator Grassley introduced the AI Whistleblower Protection Act, recognizing that artificial intelligence companies' use of *"illegally restrictive NDAs"* to silence employees from making protected disclosures requires specific federal whistleblower protections. AI Whistleblower Protection Act, S. 1792, 119th Cong. (introduced May 15, 2025); see also H.R. 3460, 119th Cong. (companion bill).

Senator Grassley's legislation directly responds to widespread industry practices, including at OpenAI, where *"illegally restrictive non-disclosure agreements"* were used to prevent employees from warning regulators about AI safety risks. Senate Judiciary Committee Press Release (May 15, 2025). As Grassley noted: *"For*

*over a decade, I've sounded the alarm about restrictive NDAs that hinder oversight and improperly silence employees from making protected disclosures."* Letter from Sen. Chuck Grassley to Sam Altman, CEO, OpenAI (Aug. 1, 2024).[3]

On May 19, 2025, the TAKE IT DOWN Act became law, creating federal criminal penalties and civil remedies for non-consensual sharing of intimate imagery. TAKE IT DOWN Act, Pub. L. No. 119-12, 47 U.S.C. § 223(h) (2025). This new federal law directly applies to Gjovik's allegations that Apple took intimate images of her and distributed them via email as purported "evidence" for her termination.

Critically, Apple has claimed Gjovik "consented" to this conduct, but the new federal law defines consent as *"an affirmative, conscious, and voluntary authorization made by an individual free from force, fraud, duress, misrepresentation, or coercion."* 47 U.S.C. § 223(h)(9)(A). Consent obtained through workplace coercion from a whistleblower facing retaliation cannot meet this federal standard.

Even more significantly, Apple sought a *"blanket protective order"* to keep their alleged *"informed consent form"* confidential (D.C. Dkt. 213; 25-2028, Dkt 22), while simultaneously this Court failed to respond to Gjovik's emergency motion to stay

---

[3] Letter from Sen. Chuck Grassley to Sam Altman, CEO, OpenAI (Aug. 1, 2024), https://www.grassley.senate.gov/imo/media/doc/grassley_to_openai_-_ndas.pdf.

that order (25-2028, Dkt. 22.1). The district court's authorization of proceedings to silence Gjovik about conduct that became federally criminal during this appeal demonstrates the urgent need for immediate appellate intervention.

These developments demonstrate that:

1. Congress recognizes that tech companies like Apple use *"illegally restrictive NDAs"* to silence AI whistleblowers, requiring federal protection (S. 1792/H.R. 3460)
2. Apple's alleged conduct—taking and distributing intimate images under workplace coercion, as a tool of retaliation and intimidation—now constitutes an express federal crime (Pub. L. 119-12)
3. The district court's simultaneous efforts to impose a protective order silencing Gjovik about federally criminal conduct violates the precise federal policies Congress is enacting.

Gjovik's case represents the exact intersection of AI whistleblowing and tech company retaliation that prompted Congress to enact emergency federal protections while this appeal was pending. The fact that conduct central to Gjovik's UCL claim became a federal crime during the pendency of this appeal demonstrates the exceptional importance and urgency of these issues.

The convergence of these federal developments with the district court's efforts to silence Gjovik demonstrates the exceptional urgency requiring immediate appellate review. Denying immediate appellate review forces a federal crime victim to pursue state remedies for conduct that Congress has now recognized requires federal intervention and immediate legal redress.

## VIII. Federal Recognition of Gjovik's Case as Exemplifying Systemic Surveillance Retaliation

The federal significance of Plaintiff's case is definitively established by the U.S. Government Accountability Office's August 2024 report to Congress, which specifically incorporated and analyzed Gjovik's public comments about Apple's surveillance practices and the exact subject matter of her § 17200 claim.

GAO reviewed 217 public comments submitted by 211 stakeholders—including workers, advocacy organizations, unions, researchers, technology developers, and trade associations—to the White House Office of Science and Technology Policy (OSTP) regarding the use of automated digital surveillance.[4] (GAO-24-107639).

## GAO Report Specifically Cited Plaintiff's Experience as Representative of Industry-Wide Problems

On June 29, 2023, Gjovik submitted detailed public comments to the White House Office of Science and Technology Policy's Request for Information on *"Automated Worker Surveillance and Management"* (Federal Register Document ID: OSTP_FRDOC_0001-0008). These comments described her direct experiences with Apple's biometric surveillance, mobile device monitoring, privacy violations, and subsequent retaliation for raising concerns about these practices.

---

[4] Digital Surveillance of Workers: Tools, Uses, and Stakeholder Perspectives | U.S. GAO, GAO-24-107639, https://www.gao.gov/products/gao-24-107639

19

The GAO report included a case study that directly parallels Gjovik's experience:

> "One worker reported being fired from a large technology company after raising concerns about the company's privacy policy, which empowered managers to access, search, monitor, archive, and delete data stored on any worker's devices."

By quantifying the report as "one worker," the reply implies this comment is specifically Gjovik's experience, demonstrating that federal investigators recognized her case as representative of systemic industry practices requiring congressional attention.

## B. Congressional Recognition of the Inadequacy of Legal Remedies

The GAO report documented extensive negative effects of workplace surveillance, including that *"constant surveillance can amplify workers' stress and anxiety levels"* and *"workers increasingly reported feeling that they cannot voice concerns or share suggestions out of fear that their digital footprint will bite back."*[5] The report specifically found that *"Being perpetually watched can also eat away at a workers' sense of autonomy and privacy. Consequently, some workers feel it discourages workplace solidarity and unionization efforts."* (*Id*).

---

[5] U.S. GAO, "*'Why do I feel like somebody's watching me?' Workplace Surveillance Can Impact More Than Just Productivity,*" October 29, 2024, https://www.gao.gov/blog/why-do-i-feel-somebodys-watching-me-workplace-surveillance-can-impact-more-just-productivity

These findings directly support Gjovik's UCL claim for injunctive relief. The GAO's documentation that workplace surveillance creates ongoing psychological harm and chills protected speech demonstrates precisely the type of irreparable injury that monetary damages cannot cure—the exact standard for injunctive relief under California Business & Professions Code § 17200.

### Federal Policy Recognition Supports Immediate Appellate Review

The GAO report was specifically requested by Senator Robert Casey Jr., and Rep. Robert "Bobby" Scott, demonstrating high-level congressional concern about these issues. Sen. Robert Casey, Jr. is a member of the Committee on Health, Education, and Labor, and the chair of the Senate Special Committee on Aging. Rep. Robert "Bobby" Scott is the Ranking Member on the House Committee on Education and the Workforce.[6]

The fact that Congress commissioned federal investigation into the exact conduct underlying Gjovik's dismissed UCL claim demonstrates compelling public interest in immediate appellate resolution. Denying appellate review forces Congress and federal agencies to address these issues without judicial guidance on the scope of available state-law remedies.

### Gjovik's Advocacy Directly Influenced Federal Policy

---

[6] Biometric Update, *US workers concerned about employers' digital snooping: GAO,* Sept. 12 2024, https://www.biometricupdate.com/202409/us-workers-concerned-about-employers-digital-snooping-gao

**DEVELOPMENT**

Gjovik's June 2023 comments to OSTP directly contributed to federal policy development on workplace surveillance issues. The GAO report analyzed stakeholder perspectives on digital surveillance tools, finding that *"most workers say being watched gives them the creeps"* and documenting concerns about *"the potential for digital surveillance to create bias or discrimination."* [7]

The incorporation of Gjovik's specific experiences into congressional-level policy analysis proves this case involves matters of exceptional public importance transcending individual litigation. The district court's dismissal of Gjovik's injunctive relief claim eliminates judicial oversight of conduct that federal investigators have identified as representative of industry-wide problems requiring immediate policy intervention at a national level.

This federal recognition eliminates any question about the public interest in immediate appellate review under 28 U.S.C. § 1292(a)(1). When Congress specifically studies a plaintiff's case as exemplifying systemic problems requiring federal attention, that case cannot be dismissed as lacking public significance or urgency.

## IX.  RECENT CALIFORNIA AI LEGISLATION CONFIRMS STATE-

---

[7] U.S. GAO, "*'Why do I feel like somebody's watching me?' Workplace Surveillance Can Impact More Than Just Productivity,*" October 29, 2024, https://www.gao.gov/blog/why-do-i-feel-somebodys-watching-me-workplace-surveillance-can-impact-more-just-productivity

### Level Urgency and Public Policy Imperatives

California has simultaneously recognized the critical importance of these issues through comprehensive AI legislation that directly validates the public policy underlying Gjovik's claims. The state′s legislative findings explicitly recognize that AI whistleblowers represent *"the last line of defense when corporate incentives prioritize growth, profit, or competitive advantage over public welfare."* Senate Judiciary Committee Analysis, SB 53, 2025-2026 Reg. Sess. (Cal. 2025).[8]

Senator Scott Wiener′s SB 53 (2025) specifically targets the conduct at issue in this case, prohibiting developers from *"making, adopting, or enforcing"* rules *"that prevent an employee from disclosing"* information about AI safety risks and expressly prohibiting retaliation. Cal. Lab. Code § 1107.1(a) (proposed), S.B. 53, 2025-2026 Reg. Sess. (Cal. 2025).[9] The legislation recognizes that *"company contracts may prevent [employees] from reporting concerns"* because *"broad non-disclosure and non-disparagement agreements...can prevent employees from sharing a good faith public safety concern...."* Bill Analysis, S.B. 53, 2025-2026 Reg. Sess. (Cal. 2025).[10]

Senator Wiener's press release emphasized that *"Whistleblowers—employees*

---

[8] https://sd18.senate.ca.gov/news/california-state-senate-approves-california-artificial-intelligence-bill-rights.

[9] https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260SB53.

[10] https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202520260SB53

of the largest labs who speak out about safety and security risks posed by the advanced AI systems they are developing—have emerged as a key window into the safety practices of large AI labs." Press Release, Sen. Scott Wiener, Senator Wiener Introduces Legislation to Protect AI Whistleblowers & Boost Responsible AI Development (2025).[11]

The California Legislature's findings in SB 420 establish that individuals have fundamental rights regarding AI systems, including "the right to control their personal data" and requirements for "informed, explicit consent" before personal data is used in AI systems. S.B. 420, §1(c)(2), 2025-2026 Reg. Sess. (Cal. 2025).[12] These protections directly contradict Apple's claimed authority to collect and distribute intimate imagery of employees (and anyone undressed near their iPhones).

Most critically, California's legislative analysis recognizes that "technical complexity...creates significant information asymmetry between companies and outside regulators" making "whistleblowers uniquely positioned to identify issues that might otherwise remain hidden." Cal. Senate Judiciary Committee Analysis, SB 53, 2025-2026 Reg. Sess. (Cal. 2025). The analysis further notes that "Most governmental bodies lack the specialized expertise to effectively evaluate these systems without insider

---

[11] https://sd11.senate.ca.gov/news/senator-wiener-introduces-legislation-protect-ai-whistleblowers-boost-responsible-ai

[12] https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260SB420

24

*information.*" *Id.*

The legislative record demonstrates California's recognition that:

1. AI companies use "*broad non-disclosure and non-disparagement agreements*" to silence employees about safety concerns (*id.*)

2. "*Without protected channels for these voices, companies may face fewer checks on irresponsible development practices until after harm has occurred*" (*id.*)

3. Whistleblowers serve as "*an essential safety valve*" when "*potential consequences...can affect millions, if not billions, of people.*" (*id.*)

Senator Padilla's statement accompanying SB 420 emphasized that "*Tech companies would have us believe any regulation at all would be disastrous. The truth is it would be disastrous to allow tech titans to operate AI without oversight, accountability, or restraint.*" Press Release, Sen. Steve Padilla, California State Senate Approves the California Artificial Intelligence Bill of Rights (2025).[13]

Gjovik's case represents the exact intersection of AI company retaliation and whistleblower silencing that prompted California's comprehensive legislative response. The state's explicit finding that such conduct threatens public welfare—combined with federal criminalization of Apple's specific tactics—demonstrates that immediate appellate review serves compelling public interests beyond the

---

[13] https://sd18.senate.ca.gov/news/california-state-senate-approves-california-artificial-intelligence-bill-rights.

25

parties′ individual dispute.

## X.    Gjovik′s Legislative Advocacy Directly Prompted California′s Biometric Privacy Legislation

Gjovik's case represents exactly the type of widespread biometric privacy violation that prompted California′s comprehensive legislative response. After Gjovik contacted her California Senator about Apple's biometric collection practices in fall 2021, that same Senator introduced SB 1189: Biometric Information (2021-2022), California′s first comprehensive biometric privacy bill. This legislative sequence demonstrates that Gjovik identified a genuine public policy crisis requiring immediate judicial attention.[14]

### Apple′s Gobbler Study Created Mass Biometric Collection Without Consent

The struck sur-reply documented that "*Gobbler was gathering biometrics of anyone around the phone, not just me, so also the public.*" **EXHIBIT D**: Gjovik's Declaration in Support of Sur-Reply (U.S. D.C. Dkt. 94, Aug. 18, 2024) [STRUCK]. This mass collection of biometric data from unsuspecting third parties without any consent mechanism represents precisely the conduct California sought to regulate through comprehensive privacy legislation.

### California′s Legislative Response Directly Parallels Gjovik′s Claims

---

[14] Note: Gjovik also filed a complaint over Gobbler and Apple other unlawful data practices to the Cal. Dept. of Justice in 2022. See 25-2028 Dkt 27-6 at 35-39.

SB 1189′s legislative findings mirror Gjovik′s allegations about Apple′s conduct:

> "While the use of this information provides many benefits, serious concerns have arisen with the widespread collection and disclosure of this highly sensitive biometric information without the informed consent of the people to whom the information pertains. These issues are compounded by the commodification of biometric data and its disclosure for for-profit purposes."

Cal. Senate Judiciary Committee Analysis, SB 1189 (Apr. 5, 2022).

The California Legislature specifically identified the employment context abuse that Gjovik experienced:

> "On the employee side, it is reported that Walmart requires employees to record their voice using voice recognition software... In addition, TopGolf recently settled a lawsuit that alleged the company was improperly collecting biometric information from its employees without informed consent when it required them to scan their fingerprints to ′punch the clock′ at work."

*Id.*

## SB 1189 Would Have Prohibited Apple′s Exact Conduct

The proposed statute directly addressed Apple′s violations:

- **§ 1798.302(b)(2): Prohibiting combination with employment contracts**—exactly what Apple did by making Gobbler participation a job requirement and claiming the Gjovik somehow violating an "*informed consent agreement*" justified her termination.
- **§ 1798.305: Mandating reasonable security standards**—which Apple violated by sharing intimate employee data
- **§ 1798.306(a)(1): Providing statutory damages of $100-$1,000 per day**—recognizing ongoing daily harm

27

- **§ 1798.306(d): Authorizing *"equitable or declaratory relief"***—confirming monetary damages are inadequate

## THIS LEGISLATIVE RESPONSE ESTABLISHES PUBLIC INTEREST AND INADEQUACY OF LEGAL REMEDIES

California's comprehensive biometric privacy legislation confirms two critical elements for appellate review. First, significant public interest: The Legislature found that biometric privacy violations *"risk empowering discriminative business practices, degrading privacy, and imposing heightened security risks on consumers."* Senate Judiciary Committee Analysis, SB 1189 (Apr. 5, 2022). Gjovik's case addresses exactly these statewide concerns affecting millions of Californians.

Second, inadequacy of legal remedies: SB 1189's authorization of equitable relief alongside statutory damages demonstrates California's recognition that monetary compensation cannot cure ongoing biometric privacy violations. Under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), this legislative finding supports injunctive relief under UCL § 17200.

The fact that Gjovik's advocacy directly prompted state legislation addressing these exact harms proves this case involves matters of exceptional public importance requiring immediate appellate guidance rather than prolonged district court proceedings.

## XI.   THE PANEL'S DISMISSAL AND REFUSAL TO ADDRESS GJOVIK'S PENDING MOTION FOR INJUNCTIVE RELIEF

The panel's jurisdictional error is compounded by its failure to address Gjovik's pending Motion for Preliminary Injunction and Stay filed on May 7, 2025. (25-2028, Dkt. 15.1). This motion sought immediate injunctive relief under multiple federal statutes including:

- 18 U.S.C. § 1964(a) (RICO injunctive relief)
- Crime Victims' Rights Act (18 U.S.C. § 3771)
- California's Marsy's Law (Cal. Const. art. I, § 28)
- Witness protection statutes (18 U.S.C. §§ 1512, 1513, 1514)

Gjovik's motion documented ongoing retaliation, harassment, and witness tampering while she serves as a victim, witness, and informant in federal criminal investigations. The motion detailed open law enforcement investigations, active environment enforcement actions, ongoing harassment aimed at discrediting and intimidating Gjovik, and obstruction of federal law enforcement interests.

By dismissing the appeal without addressing the pending motion for injunctive relief, the panel left Gjovik completely without remedy for ongoing federal crimes. This creates precisely the situation § 1292(a)(1) was designed to prevent: forcing victims of ongoing irreparable harm to wait for final judgment while suffering continued violations.

Under the Crime Victims' Rights Act and related federal statutes, and the California Constitution, crime victims have independent procedural rights that

cannot be subordinated to traditional finality requirements. The panel's failure to address these rights while dismissing for lack of finality violates federal statutory mandates protecting crime victims.

## XII.    BROADER LITIGATION CONTEXT AND JUDICIAL ECONOMY

The resolution of this jurisdictional issue has implications beyond this immediate appeal. The district court dismissed multiple claims without prejudice but denied leave to amend, stating a desire to "*move the case along*" despite the absence of any case schedule and after Defendant filed five successive 12(b)(6) motions over 17 months. **EXHIBIT H:** District Court Order Denying Motion to Amend (U.S. D.C. Dkt. 179, Feb. 27, 2025). (See also, 25-2028, 26.1, Dkt. 15-17).

If this Court declines to exercise its mandatory jurisdiction under § 1292(a)(1), Gjovik will be compelled to pursue the same underlying conduct under alternative federal legal theories in other jurisdictions where such claims remain viable. This includes enhanced RICO claims with additional predicate acts of extortion under the Hobbs Act (18 U.S.C. § 1951), interstate transportation of stolen property, and coercion arising from Apple's systematic use of intimate employee images to maintain compliance with unlawful data collection practices.

These claims would be brought alongside new causes of action under recently enacted federal legislation including the TAKE IT DOWN Act and the California Revenge Porn statute. Additional pending matters would also include

citizen enforcement actions under the 42 U.S.C. § 7604 (Clean Air Act) and 42

U.S.C. § 6972 (Resource Conservation and Recovery Act) following the required

sixty-day notice to EPA, replacing her toxic torts, following the discretionary

dismissal also in violation of Rules 12(g) and 12(h).

Prompt resolution of the immediately appealable injunctive relief claim

would serve judicial economy and provide necessary guidance on the scope of

California UCL protections in this emerging area of employee data privacy rights,

particularly given Congress's recognition of the federal significance of these issues.

## XIII.   Gjovik's UCL Claim Represented a Last Resort For Self-Protection

The California UCL claim at issue represents Gjovik's attempt at self-help

through the civil justice system when law enforcement failed to provide adequate

protection. As a federal crime victim, witness, and informant, Gjovik sought the

strongest available state-law injunctive relief to stop ongoing illegal conduct while

proceedings and investigations remained pending.

The district court's dismissal of this claim—despite previously finding it

viable for injunctive relief—leaves Gjovik without any forum for protection from

continuing federal crimes. The court dismissed it not based on legal deficiencies,

but apparently due to case management frustrations after Apple's prolonged

motion practice. This cannot be the intended result of federal jurisdictional rules

when a crime victim seeks basic protection from ongoing violations.

The panel's failure to address 28 U.S. Code § 1292(a)(1) jurisdiction over this injunctive relief claim, combined with its dismissal of Gjovik's pending motion for federal injunctive relief, creates an unconscionable situation: a federal crime victim and witness is left defenseless against continuing retaliation and harassment while serving the public interest.

## XIV.    Conclusion and Relief Requested

For the foregoing reasons, the Court should:

1. **Grant reconsideration** based on the jurisdictional error under § 1292(a)(1).

2. **Reinstate the appeal** and exercise mandatory jurisdiction over the dismissal of Gjovik's injunctive relief claim; or

3. **Alternatively, remand to the district court** to allow proper briefing on the motion to dismiss and reconsideration of the dismissal order.

The procedural violations, jurisdictional error, and ongoing irreparable harm require correction. Gjovik's claim seeking only injunctive relief was improperly dismissed and is immediately appealable under controlling Ninth Circuit precedent. Recent federal legislation confirms the national importance of these issues and the need for prompt appellate resolution.

Respectfully submitted,

Dated: June 3 2025

_____

**Ashley M. Gjøvik**
/s/ Ashley M. Gjovik
Pro Se Appellant

# EXHIBITS

## I.   Exhibit A (Order, 5/20/24, Dkt 73)

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 42 of 74
Case 3:23-cv-04597-EMC  Document 220-7  Filed 06/12/25  Page 42 of 74

Case 3:23-cv-04597-EMC  Document 73  Filed 05/20/24  Page 45 of 49

1  have "assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object").

2  Apple argues, for instance, that it did not assume a duty to Ms. Gjovik in which her emotional

3  condition was an object.  Ms. Gjovik does not clearly respond to this argument in her papers, and

4  thus the Court dismisses the NIED claim in its entirety.  The Court shall give Ms. Gjovik leave to

5  amend; in amending, she must include nonconclusory, factual, and plausible allegations as to duty.

6  She must also bear in mind the Court's ruling above on workers' compensation exclusivity.

7  N.      Violation of California Business & Professions Code § 17200 (Count 15)

8          Finally, in Count 15, Ms. Gjovik asserts a claim for violation of California Business &

9  Professions Code § 17200.  The claim seems to be based on three factual predicates: (1) Apple's

10  coercing employees to provide personal data for Apple's commercial use, such as with the

11  Gobbler application, *see* TAC ¶ 255 (alleging that no consent was obtained or compensation

12  provided); (2) Apple's coercing employees to be a part of invasive studies, *see* TAC ¶ 258; and (3)

13  Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly.

14  *See* TAC ¶ 259.  (To be frank, the Court does not understand the allegations made with respect to

15  (3).)

16          Apple moves to dismiss the § 17200 claim on the basis that Ms. Gjovik lacks standing –

17  *i.e.*, she has failed to allege that she lost money to Apple which Apple should be forced to

18  disgorge.  *See* Cal. Bus. & Prof. Code § 17203 (providing that a "court may make such orders or

19  judgments . . . as may be necessary to restore to any person in interest any money or property, real

20  or personal, which may have been acquired by means of such unfair competition"); *see also*

21  *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California

22  Supreme Court has "held that the only remedy expressly authorized by section 17203 was

23  restitution to individuals who had an ownership interest in money paid to the defendants; there

24  was nothing, either in the express language of the statute or in its legislative history, to indicate

25  that the legislature intended to authorize a court to 'order a defendant to disgorge all profits to a

26  plaintiff who does not have an ownership interest in those profits'").  As an initial matter, the

27  Court bears in mind that Ms. Gjovik seeks not only disgorgement as a remedy but also injunctive

28  relief.  *See* TAC ¶ 260.  Apple does not explain why she would not have standing to pursue

45

36

1          based on Apple's conduct at the Aria factory (not time barred).

2      •   Negligent infliction of emotional distress (Count 14).  The claims is dismissed with

3          leave to amend.

4      •   Violation of California Business & Professions Code § 17200 (Count 15).  The

5          claim is dismissed with leave to amend.  Ms. Gjovik has standing to seek injunctive

6          relief but she has not alleged how she has standing for monetary relief.

7      As for the motion to strike, the Court denies it but without prejudice.

8          Ms. Gjovik shall file an amended complaint (again, within the page limits previously set

9  by the Court) by June 17, 2024.  Apple shall then file a response (whether an answer or another

10 motion to dismiss) by July 15, 2024.

11         Although the Court is giving Ms. Gjovik leave to amend on the bulk of the dismissed

12 claims, it suggests that she use some discretion in deciding which claims to amend (as the Court is

13 not requiring her to amend).  As the Court indicated at the hearing, some claims can probably be

14 amended such that they would survive a 12(b)(6) challenge (assuming, as likely, that Apple

15 responds to an amended pleading with another motion to dismiss).  These claims are largely

16 predicated on the theory that Apple retaliated against Ms. Gjovik for complaining about safety.

17 On the other hand, there are also some claims that the Court views with skepticism.  For these

18 claims, the Court is not able to say at this juncture that they are futile; however, their viability

19 appears problematic.  It also is not clear that Ms. Gjovik needs them in her suit; Ms. Gjovik

20 conceded as much by stating at the hearing that she does not intend to litigate all of her claims to a

21 jury, should the case reach that stage).  There are questions as to what these claims really add to

22 her suit.

23         At the hearing, Ms. Gjovik indicated that she was including these claims to ensure her

24 ability to get broad discovery.  But Apple is not contesting (at this point at least) two of her claims

25 (Counts 10 and 11), and these are two of her *primary* claims; thus, Ms. Gjovik's discovery

26 concern seems to be unfounded or at least overstated.  Furthermore, it is more than likely that, if

27 Ms. Gjovik were to replead, *e.g.*, her § 1962(c) claim or Bane and Ralph civil rights claims, Apple

28 would respond with another motion to dismiss, which, in the long run, means that resolution on

48

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 44 of 74
Case 3:23-cv-04597-EMC   Document 220-7   Filed 06/12/25   Page 44 of 74

Case 3:23-cv-04597-EMC   Document 73   Filed 05/20/24   Page 49 of 49

1   her primary claims would be delayed.  Although Ms. Gjovik is free to litigate her case as she

2   chooses (so long as she does so in good faith and in compliance with her Rule 11 obligations), it is

3   not clear that, as a practical matter, the benefit, if any, is worth the burden (*e.g.*, pleading a § 1962

4   claim is not an easy task given, *e.g.*, the multiple elements needed for a viable claim).

5        The Court sets an initial case management conference ("CMC") for **July 16, 2024, at 1:30**

6   **p.m.**  The parties shall file a joint CMC statement one week in advance.

7        This order disposes of Docket Nos. 48, 49, and 64.

8

9   **IT IS SO ORDERED**.

10

11   Dated: May 20, 2024

12

13

14                               EDWARD M. CHEN
                               United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

II.    Exhibit B (Complaint, 6/18/24, Dkt 76)

1    bonuses, salary increases, and RSU stock grants, and was recently promoted. Gjovik substantially

2    performed, or tendered performance, for her job duties. During each of Gjovik's six annual

3    performance reviews, she always received a salary increase, a large RSU grant, and a performance

4    bonus. All conditions required for Apple's performance had occurred. Apple breached the covenant

5    by intentionally terminating Gjovik when her annual performance review was due, which would have

6    been accompanied by a performance bonus that she had already earned through her successful

7    performance in 2020-2021. (The end of the fiscal was June 30 2021).

8    

9        191.    In violation of the covenant of good faith and fair dealing, Apple deliberately

10   undermined Gjovik's ability to fulfill her contractual obligations, evading the spirit of the agreement,

11   and frustrating her ability to benefit from the agreement. Gjovik was damaged due to Apple's breach

12   and is owed the performance bonus due to her, with interest.

13   

14                        **COUNT NINE: CAL. UNFAIR COMPETITION LAW**

15                   **(Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*)[44]**

16       192.    Apple has engaged in business acts or practices that were unlawful, unfair, deceptive,

17   or misleading, and therefore violated California's Unfair Competition Law ("UCL"), Cal. Bus. &

18   Prof. Code § 17200, *et seq.* This UCL prohibits any unlawful, unfair, or fraudulent business act or

19   practice, including but not limited to any act or practice that constitutes deception, fraud,

20   misrepresentation, or the concealment, suppression, or omission of a material fact in a consumer

21   transaction, or that is likely to deceive the consuming public.

22   

23       193.    Apple is unlawfully coercing employees to provide personal data, including

24   biometrics, which Apple can use for research and development, including training machine learning

25   models, without actual consent or compensation, and in violation of federal competition laws and

26   state and federal data protection laws. Apple's Whistleblowing Policy acknowledges that reports of

27   

28   _____

     [44] The SAC § 17200 claims were previously nested under § 6310 and *Tanney* claims.

---

FOURTH AMENDED COMPLAINT | 3:23-CV-04597-EMC          PAGE 57 of 74

"*anti-competitive conduct*" and "*attempts to cover up any of these behaviors*" are whistleblower disclosures. Apple should obtain ethical and legal data for product development instead of treating its workforce like lab rats.

194.    Gjovik suffered an economic and/or property injury due to Apple's Unfair Business Practices. Apple knew or should have known that its wrongful acts and omissions alleged herein were likely to deceive the consuming public in California and the rest of the United States. Apple committed those acts and omissions anyway for their financial gain, including improving their financial condition, increasing the likelihood of receiving new capital from investors, increasing their revenue and profits, and increasing the company's value.

195.    Apple repeatedly implied to Gjovik that her participation was not option. Gjovik's annual performance reviews made express note of Gjovik's participation in Apple's studies and experiments and praised her for her unpaid labor in facilitating the numerous invasions into her privacy.

196.    Gjovik participated in several other health, anatomy, and personal data collection studies during her time working for Apple. This included a sleep study with Apple placing a sensor under her while she slept every night, recording her vitals and movements, and sharing the data with Apple for commercial purposes. When Gjovik was invited to participate in these events, the team often would not disclose what the study was until the 'volunteers' arrived physically on site to a secure building where ex-FBI security personal would threaten her and her workers to not even tell their friends or family what happens at Apple, and especially studies like these.

197.    When Apple asked Gjovik to scan her ears and her ear canals, Gjovik declined "indefinitely." Similarly, Gjovik repeatedly declined Apple's requests to study and collect data about her menstruation for product development. Even after Gjovik declined the ear studies, Apple has claimed its secret they even asked her in the first place.

Case 3:23-cv-04597-EMC  Document 220-7  Filed 06/12/25  Page 48 of 74
Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 48 of 74

Case 3:23-cv-04597-EMC  Document 76  Filed 06/18/24  Page 59 of 74

198.  Gjovik also attempted to decline participating in the Gobbler program, but she was tricked into enrollment through Apple's misrepresentations of the years long study and data collection as a one-time social event. Gjovik was only told what the study involved (Gobbler) after she entered a locked compounds with several Apple Global Security guards surrounding her, asking her if she would 'consent.' After that day Gobbler has always been attached to Gjovik's iCloud account. Gjovik still sees Gobbler listed as part of her personal account today and no way to remove it.

199.  Further, the way Gobbler works, employees are then also taking videos and gathering the biometrics of anyone around their iPhones, and per Apple's termination of Gjovik, Apple's policy is that employees would be fired if they tried to warn consumers and others around them that Apple was capturing videos of them and their biometrics for product development. Apple's declaration that it can terminate employees for protesting these invasions and warning the public is "*sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.*" One must assume Apple also has hundreds of thousands (or even millions) of non-consensual biometrics and face-prints of non-employees – including children – that are used to train Apple's machine learning models. These photos/videos most certainly include nudity, sexual acts, and use of toilets– along with biometric information.

200.  Apple tells consumers it would never do what it is doing with Gobbler. Apple told employees nothing until after the employees signed the non-disclosure agreements for the program, and then Apple told employees they could not tell anyone what the program would now be doing on their iPhones. Apple was aware Gobbler was not a market-ready product (nor was it intended to be) and that the data collection performed by Gobbler was not legitimate data collection for commercial research and development, yet Apple used the app anyway while continuing to promise customers that Apple would never collect their data and biometrics.

201.  Gjovik's opposition and complaints about Apple's coercion of employees into unpaid

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 49 of 74
Case 3:23-cv-04597-EMC   Document 220-7   Filed 06/12/25   Page 49 of 74

Case 3:23-cv-04597-EMC   Document 76   Filed 06/18/24   Page 60 of 74

labor through aggressive dogfooding (testing internal software/products as if it were a normal personal device) and Apple's weird anatomical and medical experiments on employees was all protected conduct. In addition, Apple exploited Gjovik's identity without Gjovik's consent and for commercial purposes, violating California's common law Right of Publicity. Apple's unauthorized use and appropriation of Gjovik's identity, likeness, and private information were for Apple's commercial advantage, and Gjovik suffered injury because of it. Apple exploited Gjovik's image and biometric identifiers for profit and then fired her when she complained, claiming they could fire employees without notice for protesting these unfair business practices.

202.     Apple requested, coerced, and tricked Gjovik into participating in a number of studies, experiments, and invasions which Gjovik was not compensated for. The studies also caused Gjovik unexpected and otherwise unnecessary expenses. In order to attend these physical meetings, so she could be threatened and intimidated, and expose even more of her personal data to Apple and  to ensure she obtained a positive performance review. Gjovik had to pay out of pocket for Lyft and Uber costs for transportation. Gjovik does not have a driver's license and the company shuttles rarely went to these special, secure buildings. Gjovik is owed restitution for all of the transportation costs, and other operational costs, she paid with her own money as required for these coercive and exploitive studies.

203.     Injunction and disgorgement are appropriate here, and the court has broad powers to issue injunctive relief under California Business and Professions Code §§ 17200, including the power to order restitution and disgorgement.

204.     Apple coerces employees and tricks consumers into allowing Apple to extract their data and exploit it in the research and development of commercial, for-profit products, without consent, in violation of the FTC Act and § 17200. As a result of Apple's unfair business practices, Apple has reaped unfair benefits and illegal profits at the expense of Gjovik, her co-workers, and the

1   public. Apple should be required to restore these monies to Gjovik, her former co-workers, and the

2   public.

3       205.    However, Apple's extensive use of these illegal practices will make calculating

4   damages a challenge. Without injunctive equitable relief, Gjovik and her prior coworkers will suffer

5

6   irreparable injury, which damage remedies cannot readily remedy. Apple should be ordered to

7   disgorge unlawful data and the fruit of the poisoned data.

8       206.    Gjovik requests an order that prohibits Apple from using personal employee data in

9   for-profit product development, including medical experiments, anatomical measurements, and

10  imaging, gathering employee biometrics, any use of the Face "Gobbler" application, and other

11  conduct violating their rights of privacy.

12

13      207.    Gjovik also requests in injunctive relief of an order for disgorgement of the unlawfully

14  and unethically obtained data, at the very least of Gjovik's data, including any products developed

15  using Gjovik's personal data, including Gobbler images.

16                  **COUNT TEN: IIED – OUTRAGEOUS CONDUCT**

17              **(Intentional Infliction of Emotional Distress – Traditional)**

18      208.    The statute of limitations for IIED claims under California state law is two years from

19  the date of injury and under New York state law it is one year from the act. Gjovik lived in California

20  until August 31 2022 and then lived in the state of New York from September 1 2022 up to the date

21

22  the complaint was filed on September 7 2023. The New York statute of limitations covers Gjovik's

23  presence in New York from September 7 2022 through September 7 2023. The California statute of

24  limitations cover's Gjovik's presence in California from September 7 2021 through September 1

25  2022.[45] Apple terminated Gjovik's employment on September 9 2021 and thus only two days fall

26

27

28  [45] Gjovik also reserves the right to claim IIED under Massachusetts law if Apple continues inflicting emotional
    distress upon her through the trial.

FOURTH AMENDED COMPLAINT | 3:23-CV-04597-EMC          PAGE 61 of 74

44

III.    Exhibit C (Opposition, 7/31/24, Dkt 84)

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 52 of 74
Case 3:23-cv-04597-EMC    Document 220-7    Filed 06/12/25    Page 52 of 74

Case 3:23-cv-04597-EMC    Document 84    Filed 07/31/24    Page 26 of 37

1    rights statute at issue in order to avoid dismissal of their employment action;
2    *Alvarez v. Hill* (9th Cir. 2008) 518 F3d 1152, 1158; *Wilson v. Birnberg* (5th Cir.
3    2012) 667 F3d 591, 595.
4
5    **H.   The UCL Section 17200 claim is viable for injunctive relief.**
6       49.   Prior, Plaintiff successfully pled a claim for injunctive relief under
7    Section 17200, including with concrete, particularized harm. Plaintiff cleaned up
8    the claim in the 4AC, focusing on the experiments and data collection and
9    dropping a focus on Apple Wellness Center. Plaintiff pled factual allegations
10   regarding the specific programs and applications she was subject to, and even
11   included exhibits of the communications and her data gathered by Apple.
12      50.   See *Birdsong v. Apple, Inc.* , 590 F.3d 955, 960-61 (9th Cir. 2009)
13   (finding lack of standing where the risk of injury "is not concrete and
14   particularized *as to [plaintiffs]* "); *Cahen v. Toyota Motor Corp.* , 147 F. Supp. 3d
15   955, 972 (N.D. Cal. 2015) (dismissing claims for lack of standing where plaintiffs
16   did not allege that they themselves were affected by defendant's alleged
17   behavior); *Google Assistant Privacy Litig.* , 457 F. Supp. 3d at 816-17 (rejecting
18   allegations based on third party report where "Plaintiffs do not allege that any of
19   [the reported private] recordings covered Plaintiffs' communications"); *cf.In re*
20   *Facebook Privacy Litig.* , 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (finding
21   standing where defendant engaged in "dragnet" surveillance that affected all of its
22   customers, and plaintiffs were customers). *Lopez v. Apple, Inc.*, 519 F. Supp. 3d
23   672, 681-82 (N.D. Cal. 2021).
24      51.   In the 4AC, Plaintiff pled economic harm in addition to privacy and
25   other personal injuries and should retain her injunctive standing. Plaintiff does
26   not need economic restitution – and instead requests disgorgement (deletion) of
27   data and software – not money.
28

PL.'S OPP. TO DEF.'S. MOT. TO DISMISS | CASE NO. 3:23-CV-04597-EMC

I.    Exhibit D (Sur-Reply, 8/18/24, Dkt 93-94)

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 54 of 74
Case 3:23-cv-04597-EMC Document 220-7 Filed 06/12/25 Page 54 of 74

Case 3:23-cv-04597-EMC Document 93 Filed 08/18/24 Page 1 of 77

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:23-CV-04597-EMC

**PLAINTIFF'S OMNIBUS MOTION FOR LEAVE TO FILE SUR-REPLY AND OBJECTIONS; SUR-REPLY AND OBJECTIONS.**

**ASHLEY M. GJOVIK**, *an individual*,

Plaintiff,

vs.

APPLE INC., a corporation,

Defendant.

*In Opposition to Defendant's Fourth Fed. R. Civ. P. § 12(b)(6) Motion to Dismiss, Third § 12(f) Motion to Strike, and Replies.*

**Motion Hearing & Case Management Conference:**
Dept: Courtroom 5 (Zoom)
Judge Edward M. Chen
Date: August 28, 2024
Time: 9:30 AM PT

**REQUEST BASIS: EQUITY & FAIRNESS.**

**VIGILANTIBUS ET NON D ORMIENTIBUS JURA SUB VENIUNT.**

— 1 —

Additionally, the Second Amended Complaint is referenced to prove the claims can be plead sufficiently with enough time and pages.

# I. OBJECTIONS

## A. Plaintiff concedes nothing!

11. Apple repeatedly claimed Plaintiff conceded to its arguments. [Reply 8/5 at 4, 5, 9, 10, 13]. **I concede nothing.** Plaintiff responds to substantive points with additional detail herein. As for the Defendant's many misleading and/or inflammatory arguments – Plaintiff asks the Court to review what was actually filed if Apple attempts to quote Plaintiff's documents, as several "quotes" are not actually things she said and are not in the referenced documents. Apple similarly quoted the Court several times in misleading ways that attempt to prejudice the Court against the Plaintiff, [4] and so Plaintiff urges the Court to factcheck Apple's references and quotes to court filings as well.[5]

## B. Defendant repeatedly misrepresented Plaintiff's Fourth Amended Complaint and her Opposition to their 4th MTD.

---

[4] Apple repeatedly intentionally quotes the Court's May 20 2024 Order and Decision, but drops any mention of environmental issues, privacy, or harassment from the quotes, even if it means quoting a sentence fragment. Apple: "As the Court recognized in its May 20, 2024 order regarding Plaintiff's prior complaint, "[*t]he gist of [Plaintiff's] suit is that Apple retaliated against her because she complained about conduct at the company[.]*" Dkt. 73 (the "May 20 Order")." Def's MTD at 1, 23. Similar statement also at Def's Reply pg1-2 and MTS pg1.

[5] The Court actually wrote: "*The gist of her suit is that Apple retaliated against her because she complained about conduct at the company, including but not limited to environmentally unsafe conditions.*" May 20 2024 Order, Docket #73 at 1. (Continued at FN 3). The Court added: *"(1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment. (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, i.e., a Superfund site, and she became ill because of Apple's actions/omissions related to the site. (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy. (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment."* -May 20 2024 Order, #73 at 2.

— 6 —

Case 3:23-cv-04597-EMC Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 56 of 74 Document 220-7 Filed 06/12/25 Page 56 of 74

Case 3:23-cv-04597-EMC Document 93 Filed 08/18/24 Page 28 of 77

62. Action accrual in statute of limitations commenced to run at the time the plaintiff becomes aware of her exposure and defendants' responsibility for it. *In re Hawaii Federal Asbestos Cases*, 734 F. Supp. 1563, 1570 (D. Haw. 1990) – ("the statute of limitations does not begin to run until plaintiffs knew or should have known that they have suffered the functional impairment, that defendants manufactured a defective product, and that there exists a causal connection between the two.") Action accrues not simply with knowledge of injury but with knowledge an injury was caused by the wrongdoing of another. *Kernan v. Regents of the Univ. of Cal.*, No. A162750, 7 (Cal. Ct. App. Aug. 29, 2022). Constructive suspicion is not enough. *Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal.App.4th 1202, 1205 (Cal. Ct. App. 2006).

63. Finally, Apple and their agents (including these Orrick attorneys) went out of their way to ensure Plaintiff did not discover what Apple had done to her, including making false statements to the government. They failed to provide her information and tried to point her in other directions, all the while mercilessly harassing and tormenting her. Further they had a duty to disclose not only to her, but to the community and government too, what they were doing and had done, under multiple Right to Know, environmental, health and safety, and labor laws.

## H. Apple's Unfair Business Practices, in violation of UCL § 17200, caused Plaintiff harm to her property and economically.

64. Defendant attacks Plaintiff's § 17200 standing and injuries. Plaintiff did more legal research, worried that without pleading restitution, her injunctive claim could be dismissed per Defendant's arguments. She reintegrates content from the SAC, and she proposes a supplemented pleading as follows. This also includes additional injury for standing, though she believes what she pled was sufficient. (Apple argues that a Lyft charge would not count because it's just going to the building before, they do things to her and ignores the fact, she would also

— 28 —

ued to take a Lyft to leave the building). Further, studies like Gobbler were injuring her continuously.[27] The Gobbler app still tries to connect to her personal iCloud account, even years after her termination. [8/18 Declaration Exhibit I].

> Plaintiff suffered numerous injuries due to Defendant's Unfair Business Practices including the cost of transportation to visit the "black sites" where Apple conducted some of these studies and hosted the secrecy trainings; and also costs of buying a required safe to store the prototype at home as required by many hardware programs. In addition, the time Plaintiff had to spend on these activities, is time that could have been spent on professional development and consulting. Plaintiff lost the opportunity to make additional income due to Dependent's policies and requests to spend so much time on these studies and data collection.[28]

> But worse, Defendant claims it terminated Plaintiff because she publicly complained about these activities. Plaintiff's UCL claim also argues its unlawful and unfair that Apple requires secrecy about these activities. Thus, terminating her because she did not maintain that secrecy is a direct injury to her financially (i.e., lost income and benefits)[29] and to her property (i.e., trade libel; destroying her possessions from her desk prior to mailing them back to her, etc.) due to Apple's unfair business practices.[30]

> In addition, due to Apple's "live on" policies, Plaintiff's only electronics

---

[27] *Clayworth v Pfizer, Inc.* (2010) 49 C4th 758, 789, 111 CR3d 666 (declining to read into Bus & P C § 17204 requirement that plaintiffs prove compensable loss at outset).

[28] *Cal. Med. Ass'n v. Aetna Health of Cal.*, 14 Cal.5th 1075, 1084-1085, 1089-1090 (Cal. 2023) — "CMA may not have incurred additional out-of-pocket costs in responding to Aetna's allegedly illegal practices; its employees were salaried and would have been paid regardless. But the economic value CMA received from their labor was reduced...That injury suffices for standing purposes."

[29] *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal.App.4th 544, 561 (Cal. Ct. App. 2013 ) — "having alleged that he had been forced to pay increased advertising costs and to reduce his prices for services in order to compete, and that he had lost business and the value of his law practice had diminished, succeeded in alleging at least an identifiable trifle of injury as necessary for standing under the UCL."

[30] *Animal Legal Defense Fund v. LT Napa Partners LLC*, 234 Cal.App.4th 1279, 1283-84, (Cal. Ct. App. 2015) - "Where the economic injury is diversion of resources, the proper focus of the inquiry is ... on whether the plaintiff 'undertook the expenditures in response to, and to counteract, the effects of the defendants' alleged [misconduct].'"

Case 3:23-cv-04597-EMC   Document 220-7   Filed 06/12/25   Page 58 of 74
Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 58 of 74

Case 3:23-cv-04597-EMC   Document 93   Filed 08/18/24   Page 30 of 77

were Apple products, inclnding the ones she bonght herself as a consumer.
However, dne to Apple's extensive surveillance capabilities, Apple's
privacy policies which say she has no privacy ever again, and all of Apple's
retaliation – Plaintiff had to pnrchase non-Apple compnters, phones, and
peripherals in 2021. This cost Gjovik a lot of money, and she lost the
money she had invested in the Apple prodncts, and it was only dne to
Apple's nnfair business practices.

In addition to the requested injnnctive and declaratory relief, inclnding
enjoining these Unfair Business Practices and disgorging at least the data
of Gjovik and any prodncts bnilt off that data, Plaintiff also requests
restitntion of the back pay she is owed from Plaintiff. Becanse this claim
is under UCL and not an employment or labor claim, the after acqnired
evidence and other imbalanced employment damages policies should not
apply here. If Defendant attempts to argue these policies to rednce her
damages nnder the labor and employment claims, Plaintiff asks that the
back pay instead be restituted from the UCL claims withont deductions,
and with interest.[31]

    65.    Data and software disgorgement is appropriate here and there is
precedent of FTC nsing software disgorgement as a remedy with at least five cases
since 2019, inclnding against Amazon and Cambridge Analytica.[32] There is also
recent FTC precedent for enjoining a company's use of biometric technology
following violations of the Act.[33]

    66.    A California Unfair Competition Law (UCL) claim generally accrues

---

[31] *Espejo v. Copley Press, Inc.*, 13 Cal.App.5th 329, 377 (Cal. Ct. App. 2017) – "[T]he trial court's
discretion to award restitution under the UCL is very broad....when necessary in order to arrive
at fair compensation, the court in the exercise of a discretion may include interest or its
equivalent as an element of damages."

[32] IAPP, *Algorithm disgorgement 'significant part' of FTC's AI enforcement strategy,*
https://iapp.org/news/a/algorithm-disgorgement-significant-part-of-ftcs-ai-enforcement-strategy/

[33] US FTC, *"Rite Aid Banned from Using AI Facial Recognition After FTC Says Retailer Deployed
Technology without Reasonable Safeguards,"* Dec 19 2023, https://www.ftc.gov/news-events/news/press-releases/2023/12/rite-aid-banned-using-ai-facial-recognition-after-ftc-says-retailer-deployed-technology-without (Rite Aid's unlawful conducted included
employees using an app on their mobile phones to capture photos of customers that gathered
the person's biometrics without notifying the person. Rite Aid is now prohibited from using
facial recognition technology for surveillance purposes for five years.)

when each of the elements of the cause of action (wrongdoing, harm, and causation) are satisfied.[34] Defendant argues Plaintiff cannot prove the discovery rule for Gobbler, but the discovery rule is not relevant for Gobbler. [Def's MTD at 8].

67. The UCL also supports equitable tolling which suspends or extends the statute of limitations where a plaintiff has reasonably chosen to pursue one remedy among several remedies and the notice function of the statute of limitations has been served;[35] the continuing violation doctrine by which a series of wrongs or injuries are aggregated, and the limitations period accrues for all of them on commission of the last of them;[36] and the continuous accrual rule by which a series of wrongs or injuries is viewed as each triggering its own limitations period…[37]). All of these apply here.

68. In addition, there is duress as Apple threatened employees with termination if they were to even speak to their friends about the study [8/18 RJN Exhibit R], let alone file suit. Further, Apple claims it terminated Plaintiff over her speaking publicly about it and may still file a related counterclaim in this lawsuit, thus there is certainly still continuing and imminent harm. In addition, when Gjovik checks the settings of her "personal" iCloud account, it still shows "Gobbler" trying to connect to her data.

69. It's also unlawful to propose an agreement for sale of consumer goods/services with provisions waiving consumer's right to make statements regarding the seller or its employees or agents or concerning the goods/services, and unlawful to penalize consumers for exercising these rights. Any contract with such terms is contrary to public policy and unenforceable. Cal. Civ Code

---

[34] *Beaver v. Tarsadia Hotels,* C.A.9 (Cal. )2016, 816 F.3d 1170, certiorari denied 137 S.Ct. 113, 580 U.S. 823, 196 L.Ed.2d 41.

[35] 3 Cal. Proc. (5th), Actions, § 720 et seq; § 147 Statute of Limitations., 13 Witkin, Summary 11th Equity § 147 (2024).

[36] 3 Cal. Proc. (5th), Actions, § 564.

[37] 3 Cal. Proc. (5th), Actions, § 522 et seq.

— 31 —

53

1670.8(a). The deed poll is just one example of the contracts Apple coerced employees to sign and is clearly unenforceable. [4AC ¶112; P's 8/18 RJN Ex. R].

70.     Apple's highly restrictive, and unlawful, policies threatened employees with punishment if they were to even speak to their family abont what happen was doing to them. The Deed Poll includes restrictions on speech, a highly intimidating 'opt out' procedure, and a deeply unbalanced exchange between parties. This specific docnment was provided to Gjovik for a physical safety issue cansed by a consumer prodnct that Gjovik had bonght with her own money. Gjovik was burned by the prodnct, resulting in rashes and a blister, bnt Apple's contract says that is now a secret and she conld be fired if she told anyone. She had been injnred by prodncts prior as well, mostly prototypes that Apple had her "live on" to do QA for them in her personal time, prototype batteries, rough edges, or development lasers. In 2019 Gjovik reported her "live on" iPhone had jnst blasted her in the face with a flash from the Face ID lasers that bnrnt her eyes. Apple Global Security rnshed over to her and took her iPhone away in a Pelican Case. Is that a secret too?

71.     Cal. HSC 24170-24179.5 provides statntory rights for those harmed by unlawful experiments and to penalize those who conduct unlawful experiments. Among other requirements, human experiments but use informed consent with disclosnre of the experiment prior to consent, deciding whether to consent without coercion or undue influence, and providing the participant a copy of the consent form. (Apple followed none of these rnles with Gjovik & Gobbler, and other studies). A number of other statntes also protect Gjovik and her coworker from these experiments – including the prohibition of tracking employee's GPS ontside of work while Gjovik "lived on" prototype Air Tags, or even the iPhones for that matter

**I.     Apple's Conduct was Outrageous, and it Iutended to and Did Canse Extreme Distress.**

— 32 —

Case: 25-2028  06/03/2025  DktEntry: 33.1  Page: 61 of 74
Case 3:23-cv-04597-EMC  Document 220-7  Filed 06/12/25  Page 61 of 74

Case 3:23-cv-04597-EMC  Document 94  Filed 08/18/24  Page 18 of 18

# I. Declaration Exhibit I: Gobbler still trying to Access Plaintiff's Account



II.    EXHIBIT E (ORDER, 8/22/24, DKT 98)

United States District Court
Northern District of California

1

2

3

4               UNITED STATES DISTRICT COURT

5               NORTHERN DISTRICT OF CALIFORNIA

6

7    ASHLEY M GJOVIK,                          Case No.  23-cv-04597-EMC

8              Plaintiff,

                                              **ORDER DENYING PLAINTIFF'S
9         v.                                   MOTION FOR LEAVE TO FILE SUR-
                                               REPLY**
10   APPLE INC.,

11             Defendant.                      Docket Nos. 93-96

12

13

14        Plaintiff's motion for leave to file a sur-reply is **DENIED**.  The brief is not targeted to any

15   alleged new contention in Defendant's reply.  Furthermore, the proposed sur-reply is more than

16   seventy pages in length, exceeding the page lengths permitted for motions, oppositions, and reply

17   briefs.

18        The Court therefore **STRIKES** the sur-reply and the documents submitted in support.  The

19   declaration is also improper as the motion pending before the Court is a 12(b)(6) motion and not,

20   *e.g.*, a summary judgment motion.

21        Finally, to the extent Plaintiff has asked the Court to consider additional case authorities,

22   *see* Docket No. 96, the Court reserves ruling as to whether it shall do so.

23        **IT IS SO ORDERED**.

24

25   Dated: August 22, 2024

26

27                                          _____
                                            EDWARD M. CHEN
28                                          United States District Judge

III.    EXHIBIT F (ORDER, 10/1/24, DKT 112)

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 65 of 74
Case 3:23-cv-04597-EMC    Document 220-7    Filed 06/12/25    Page 65 of 74

Case 3:23-cv-04597-EMC    Document 112    Filed 10/01/24    Page 32 of 41

United States District Court
Northern District of California

1    4.    Summary

2    Count 12 is dismissed with prejudice. Counts 11 and 13 are dismissed but with leave to

3    amend. For Count 11, there is the time-bar problem. For Count 13, there is both the time-bar

4    problem and a merits problem. Any amendment will have to overcome these problems.

5    F.    Remaining Claims

6        1.    Count 9 – Claim Related to Privacy Violation

7    Count 9 is Ms. Gjovik's claim for violation of § 17200.

8    In its prior order, the Court noted that the claim (as pled in the TAC) seemed

9        to be based on three factual predicates: (1) Apple's coercing
        employees to provide personal data for Apple's commercial use,
10       such as with the Gobbler application, *see* TAC ¶ 255 (alleging that
         no consent was obtained or compensation provided); (2) Apple's
11       coercing employees to be a part of invasive studies, *see* TAC ¶ 258;
         and (3) Apple's establishment of a health care clinic, called AC
12       Wellness, which it then used improperly. *See* TAC ¶ 259. (To be
         frank, the Court does not understand the allegations made with
13       respect to (3).)

14    Docket No. 73 (Order at 45).

15    Apple argued that Ms. Gjovik lacked statutory standing to proceed with the claim because

16    she failed to allege that she lost money to Apple which Apple should disgorge. *See* Cal. Bus. &

17    Prof. Code § 17203 (providing that a "court may make such orders or judgments . . . as may be

18    necessary to restore to any person in interest any money or property, real or personal, which may

19    have been acquired by means of such unfair competition"); *see also Shersher v. Superiar Caurt*,

20    154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California Supreme Court has "held that

21    the only remedy expressly authorized by section 17203 was restitution to individuals who had an

22    ownership interest in money paid to the defendants; there was nothing, either in the express

23    language of the statute or in its legislative history, to indicate that the legislature intended to

24    authorize a court to 'order a defendant to disgorge all profits to a plaintiff who does not have an

25    ownership interest in those profits'"). The Court agreed with Apple that disgorgement would not

26    be an available remedy but stated that Apple had failed to explain why Ms. Gjovik lacked standing

27    to pursue injunctive relief. The Court added that it was giving Ms. Gjovik leave to amend to

28    clarify her claim based on AC Wellness. *See* Docket No. 73 (Order at 45-46).

32

United States District Court
Northern District of California

1    In the pending motion, Apple moves to dismiss the § 17200 claim as repleaded in the 4AC,

2    even though Ms. Gjovik now seeks only injunctive relief and has dropped allegations related to

3    AC Wellness. *See, e.g.*, 4AC ¶¶ 205-06 (asking the Court to order Apple "to disgorge unlawful

4    data and the fruit of the poisoned data" and to prohibit Apple "from using personal employee data

5    in for-profit product development"); *see also* Opp'n at 18 (stating that "Plaintiff does not need

6    economic restitution – and instead requests disgorgement (deletion) of data and software – not

7    money"). Apple has made multiple arguments – that Ms. Gjovik has made an amendment beyond

8    the scope permitted; that she lacks statutory standing to proceed with the claim; that she also lacks

9    Article III standing; that the claim is time barred; and that the relief sought is improper. In her

10   opposition, Ms. Gjovik addresses at most the standing issues. Because Ms. Gjovik has failed to

11   address the remaining arguments made by Apple, the Court deems any opposition waived, and

12   therefore dismissal of the claim is appropriate.

13   The Court also concludes, based on its independent review, that, at the very least, Apple's

14   arguments on the time bar and improper relief have merit. Regarding the time bar, there is a four-

15   year limitations period under California Business & Professions Code § 17208. Apple notes that,

16   in her prior pleading (the SAC), Ms. Gjovik alleged that Apple "coerced her to provide personal

17   data in August 2017, nearly seven years before she introduced this cause of action in March

18   2024." Mot. at 8; *see also* SAC ¶¶ 136-42 (alleging that, in August 2017, an Apple engineering

19   manager emailed a list of Apple employees, including Ms. Gjovik, about a Gobbler user study and

20   that Ms. Gjovik was coerced to use the Gobbler application to provide biometrics and videos at a

21   supposed social event). Ms. Gjovik cannot avoid her own allegations even if these allegations

22   were made in a prior pleading. *See Bang Energy Drink*, 2021 U.S. Dist. LEXIS 146977, at *10

23   (N.D. Cal. June 30, 2021) (indicating that "factual allegations in a prior complaint are 'judicial

24   admissions,' and 'when the party fails to provide a credible explanation for its "error," the [c]ourt

25   may disregard the contradictory pleading").

26   Ms. Gjovik could have, but did not, contend there is no time bar because there is some

27   kind of continuing accrual, *i.e.*, because Gobbler is still on her personal account. *See Aryeh v.*

28   *Canon Bus. Solns., Inc.*, 55 Cal. 4th 1185, 1198 (2013) (noting that, under the continuing accrual

33

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 67 of 74
Case 3:23-cv-04597-EMC   Document 220-7   Filed 06/12/25   Page 67 of 74

Case 3:23-cv-04597-EMC   Document 112   Filed 10/01/24   Page 34 of 41

1   theory, "recurring invasions of the same right can each trigger their own statute of limitations").

2   Any such argument has been waived.

3          As for improper relief, Apple argues that, at best, Ms. Gjovik can only obtain relief for

4   herself and not others, especially as she has not pled a class action.  The Court agrees.  Section

5   17203 provides in relevant part:

6                  Any person may pursue representative claims or relief on behalf of
                   others only if the claimant meets the standing requirements of
7                  Section 17204 *and* complies with Section 382 of the Code of Civil
                   Procedure, but these limitations do not apply to claims brought
8                  under this chapter by the Attorney General, or any district attorney,
                   county counsel, city attorney, or city prosecutor in this state.
9
     Cal. Bus. & Prof. Code § 17203 (emphasis added).  Section 382 in turn provides:
10
                   If the consent of any one who should have been joined as plaintiff
11                 cannot be obtained, he may be made a defendant, the reason thereof
                   being stated in the complaint; and when the question is one of a
12                 common or general interest, of many persons, or when the parties
                   are numerous, and it is impracticable to bring them all before the
13                 court, one or more may sue or defend for the benefit of all.

14   Cal. Code Civ. Proc. § 382; *see also Woods v. Am. Film Instit.*, 72 Cal. App. 5th 1022, 1028-29

15   (2021) ("A lawsuit may proceed as a class action 'when the question is one of a common or

16   general interest, of many persons, or when the parties are numerous, and it is impracticable to

17   bring them all before the court.'  (Code Civ. Proc., § 382.)").  The California Supreme Court has

18   noted:

19                 The voters restricted private enforcement of the UCL in 2004, by
                   approving Proposition 64. . . . Proposition 64 . . . required that
20                 representative actions by private parties must "compl[y] with
                   Section 382 of the Code of Civil Procedure."  Therefore, a private
21                 plaintiff must file a class action in order to represent the interests of
                   others.
22
     *Zhang v. Superior Court*, 57 Cal. 4th 364, 372 (2013).
23
            Accordingly, the Court dismisses the § 17200 claim because, even if Ms. Gjovik has
24
     standing (both statutory and Article III), she has failed to address the other arguments made by
25
     Apple.  Apple's arguments on the time bar and improper relief also have merit.
26
            2.      Count 10 – Claim Related to Post-Termination Conduct
27
            Count 10 is another claim for IIED.  In Count 10, Ms. Gjovik largely targets post-
28

United States District Court
Northern District of California

34

61

**IV.    EXHIBIT G (MOTION TO AMEND, 1/31/25, DKT 155-1)**

1
2
3
4

frandulent criminal accusations and the misuse of legal proceedings as a weapon to obstruct justice and suppress Plaintiff's claims further reinforce Apple's role in a RICO enterprise using coercion, threats, and legal retaliation as a means of control and suppression.

## REQUEST TO REPLEAD RETALIATION & UCL CLAIMS BASED ON NEW "REVENGE PORN" FACTS

5
6
7

### TERMINATION IN VIOLATION OF PUBLIC POLICY & CAL. LABOR CODE 1102.5

8     58.    Plaintiff's claims under Cal. Civil Code § 1708.85 directly reinforce her
9   whistleblower retaliation (Cal. Lab. Code § 1102.6) and wrongful termination in violation of public
10  policy (Tameny) claims, as the employer's misconduct constitutes both retaliation for protected
11  disclosures and violations of fundamental public policy. Under Cal. Labor Code § 1102.6, once a
12  plaintiff demonstrates that they engaged in protected activity—such as reporting misconduct or
13  violations of law—the burden shifts to the employer to prove that the adverse action was based on
14  legitimate, non-retaliatory reasons. *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703
15  (2022).

16    59.    Here, Plaintiff reported Apple's unlawful surveillance practices, privacy violations,
17  and the misuse of intimate images both internally and to regulatory agencies, constituting protected
18  activity under California law. Apple and its agents retaliated by using Plaintiff's nude images to
19  intimidate and discredit her, falsely asserting confidentiality over them, and weaponizing legal
20  threats to silence her. These acts violate public policy protections enshrined in Civil Code §
21  1708.85, which prohibits the malicious distribution of private images, making it a fundamental
      policy concern of the state.

22    60.    Because Tameny claims require a nexus between termination and a violation of
23  public policy, Apple's actions—retaliating against Plaintiff by intentionally misusing her intimate
24  images after she engaged in protected activity—directly satisfy the public policy exception to at-
25  will employment. *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). Thus, the employer's
26  retaliatory conduct not only substantiates liability under Civil Code § 1708.85 but also strengthens
27  Plaintiff's claims under Labor Code § 1102.6 and *Tameny* for wrongful termination in violation of
28  public policy.

MOTION TO AMEND | 3:23-CV-04597-EMC | PAGE 15

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 70 of 74
Case 3:23-cv-04597-EMC   Document 220-7   Filed 06/12/25   Page 70 of 74

Case 3:23-cv-04597-EMC   Document 155-1   Filed 01/31/25   Page 20 of 35

**VIOLATION OF CAL. BUS. & PROF. CODE § 17200 (UCL)**

61.     Plaintiff also seeks leave to amend the complaint to replead and supplement the cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), predicated on the unlawful dissemination or threatened dissemination of intimate images in violation of Cal. Civ. Code § 1708.85 ("*Revenge Porn*" or nonconsensual pornography statute). This request is supported by newly discovered facts regarding the unauthorized capture and/or sharing of Plaintiff's nude photographs, and it aligns with Rule 15(a)'s instruction to *"freely give leave"* where justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

62.     The employer (and/or its agents, including the Global Security Employee obtained nude or intimate photographs of Plaintiff without her effective knowledge or consent. Defendants, through employees and agents, threatened to share or indeed shared these intimate images, in retaliation for Plaintiff's whistleblowing and other protected activities. This conduct violates Cal. Civ. Code § 1708.85, which prohibits the intentional distribution or threatened distribution of intimate images without consent, when done to cause emotional distress. By engaging in a practice that is "unlawful" (i.e., violating Cal. Civ. Code § 1708.85), Defendants' acts also constitute unlawful business practices under Cal. Business & Professions Code § 17200.

63.     California's UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice" (Cal. Bus. & Prof. Code § 17200). To state a claim under the "unlawful" prong, a plaintiff need only allege a violation of another law—that violation then serves as the predicate act rendering the business practice unlawful. (*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003).)

64.     Here, a new underlying predicate violation is Civ. Code § 1708.85, which expressly prohibits the intentional or reckless dissemination of intimate images without consent, commonly known as "*revenge porn*" or "*nonconsensual pornography.*" By engaging in this unlawful conduct— threatening and actually disseminating Plaintiff's nude photos—Defendants have committed a statutory violation that "*independently violates the law.*" *See Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383 (1992).

65.     Under the UCL, a private plaintiff must demonstrate economic injury (Cal. Bus. & Prof. Code § 17204). Plaintiff was severely injured by the Defendant terminating her employment

MOTION TO AMEND | 3:23-CV-04597-EMC | PAGE 16

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 71 of 74
Case 3:23-cv-04597-EMC    Document 220-7    Filed 06/12/25    Page 71 of 74

Case 3:23-cv-04597-EMC    Document 155-1    Filed 01/31/25    Page 21 of 35

1  and denylisting her from future employment, cansing direct and tangible losses of income and
2  benefits. Plaintiff anticipates showing that she snffered economic losses, such as costs incurred to
3  protect herself from fnrther dissemination (e.g., security measures, internet takedown services, or
4  other expenditures), as well as harm to her earning capacity or employment prospects stemming
5  from the disclosnre or threat of disclosure of intimate images.

6      66.    Plaintiff would be entitled to injunctive relief, restitution, or other relief authorized
7  nnder the UCL. *Cel-Tech*, 20 Cal.4th at 179; *Korea Supply*, 29 Cal.4th at 1144. While the UCL does
8  not typically allow damages, it can provide equitable remedies—inclnding injunctions to prohibit
9  further sharing of the images and restitution to restore any money or property lost due to
10  Defendants' misconduct.

11     67.    Plaintiff only recently became aware of concrete evidence confirming the nnde
12  photos were captured and threatened to be shared in retaliation, thus clarifying the Civ. Code §
13  1708.85 violation. Defendant had this information for years, and intentionally concealed it from
14  Plaintiff – however, as long as Plaintiff pursned her legal claims, it was always certain to come ont
15  eventually – or at least allow Apple to send nude photos of Plaintiff to any agency that would
    investigate her claims.
16
17     68.    The Legislatnre's enactment of Cal. Civ. Code § 1708.85 demonstrates a keen policy
18  interest in protecting victims from nonconsensual pornography. Preventing such unlawful conduct
    is precisely the type of protective measure that Cal. Bus. & Prof. Code § 17200 was designed to
19  address. (*See Cel-Tech*, 20 Cal.4th at 181.) Defendants cannot claim prejudice, as discovery is
20  ongoing, and the Conrt has yet to resolve the matters on the merits. Adding a UCL claim at this
21  juncture ensures all related issnes are addressed in a single lawsuit, preserving jndicial resources.

22     69.    Given Rule 15(a)'s "extreme liberality" (*Eminence Capital, LLC v. Aspeon, Inc.*, 316
23  F.3d 1048, 1051 (9th Cir. 2003)), and the absence of any Foman factor snch as bad faith, undue
24  delay, or futility (*Foman, 371 U.S. at 182*), the Court should grant Plaintiff leave to amend her
25  complaint to add a UCL cause of action predicated on the "unlawful" prong violation (Cal. Civ.
26  Code § 1708.85 ).

27  **REPLEAD IIED CLAIMS TO INCLUDE REVENGE PORN**

28     70.    The newly revealed nnde photographs taken by the employer's app, along with the

MOTION TO AMEND | 3:23-CV-04597-EMC | PAGE 17

V.   Exhibit H (Order, 2/27/25, Dkt 179)

1    her environmental safety claims or her IIED claim based on post-termination conduct, that

2    argument is moot. Those claims are dismissed for the reasons stated above.

3        Apple, however, still contends that Ms. Gjovik made amendments outside the scope

4    permitted for the § 1102.5 and § 98.6 claims. Here, the only amendment that is problematic is the

5    following: for the § 98.6 claim related to wage disclosures, Ms. Gjovik alleges in ¶ 246 that she

6    "shared information and commented on Twitter about an earlier U.S. Department of Justice

7    lawsuit against Apple for illegal wage-fixing practices." 5AC ¶ 246. That factual allegation is

8    stricken as wage fixing is a subject matter not implicated in any previous complaint.

9        The other amendments complained about by Apple, however, present a closer call – *e.g.*,

10    new allegations about alleged adverse actions. *See* Mot. at 6. Although the Court recognizes

11    Apple's concern – *i.e.*, that discovery is dictated by the parameters of the complaint – it is hard to

12    say that these factual allegations are *necessarily* improper in this case because, even if not made in

13    a prior complaint, they are still related to allegations that Ms. Gjovik *did* make in her prior

14    complaints. The Court will not dismiss those allegations and shall rely on the good faith of the

15    parties and/or the rulings of the discovery judge to determine the permissible scope of discovery.

16    G.    Motion to Amend (Docket No. 155)

17        Now that the Court has resolved the motion to dismiss, it turns to Ms. Gjovik's motion to

18    amend. The Court previously stayed briefing and a hearing on the motion to amend so that it

19    could address first the motion to dismiss.

20        The Court has reviewed the motion to amend. Ms. Gjovik seeks to:

21        • Add claims that the Court previously dismissed with leave to amend but Ms.

22            Gjovik did not amend. This includes: the RICO claim, the Bane Act claim, the

23            Ralph Act claim, and the claim for nuisance per se.

24        • Replead claims that the Court previously dismissed with prejudice because she

25            purportedly has new support. This includes: the claim for ultrahazardous activity

26            and the part of the § 1102.5 claim related to privacy.

27        • Add new facts about the Gobbler application (related to privacy). She indicates

28            this will strengthen one of her IIED claims because Apple has engaged in "revenge

33

United States District Court
Northern District of California

Case: 25-2028, 06/03/2025, DktEntry: 33.1, Page 74 of 74
Case 3:23-cv-04597-EMC   Document 220-7   Filed 06/12/25   Page 74 of 74

Case 3:23-cv-04597-EMC   Document 179   Filed 02/27/25   Page 34 of 34

1    porn."

2    • "Revise" her vicarious liability theory.

3    At the hearing, the Court stated that it was not inclined to allow any further amendment because

4    Ms. Gjovik is already on her 5AC and the pleadings in this case need to be settled so that the

5    litigation can proceed.  Nothing in Ms. Gjovik's motion to amend alters the Court's initial views.

6    Ms. Gjovik has had ample multiple opportunities to plead her claims.  No further amendment shall

7    be allowed absent Court order.  Accordingly, the Court hereby **DENIES** the motion for leave to

8    amend.

9                                   III.    **CONCLUSION**

10           For the foregoing reasons, the motion to dismiss is granted in part and denied in part.

11   Based on the Court's rulings, Ms. Gjovik's case is essentially a retaliation case (Counts 1, 2, 3,

12   and 4).  Apple did not challenge Counts 1 and 3.  Counts 2 and 4 have been limited with respect to

13   civil penalties – *i.e.*, the claims for civil penalties are partially time barred.

14           This order disposes of Docket Nos. 145 and 155.

15

16   **IT IS SO ORDERED**.

17

18   Dated: February 27, 2025

19

20

21                                          EDWARD M. CHEN
                                            United States District Judge

22

23

24

25

26

27

28

34