# Gjovik v Apple 2025 03 25 Meet & Confer Recording

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:00 - 0:06)

I'm going to say a report to the cloud and see what happens. Did it tell you I'm recording it?

[Ashley Gjovik (Pro Se)] (0:06 - 0:10)

It says it's recording, and if it doesn't work, I'll send you a copy of mine.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:11 - 0:21)

All right, sounds good. All right, I have looked at all your items yesterday in response to my items, so let's see what I have here.

[Ashley Gjovik (Pro Se)] (0:23 - 0:31)

And I could just go through, I organized some of my outstanding items by the letters too, so we could just go checklist item by item.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:31 - 0:37)

Let's start with the protective order, because that's one of the things we want to get done. Is that okay?

[Ashley Gjovik (Pro Se)] (0:38 - 0:51)

So it sounds like she's going to issue the default one anyways. I do not want Apple's modified one, but the default one, we're just going to have to go, I'm going to have to challenge stuff if Apple abuses it, and we'll just have to go through that process.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (0:52 - 1:09)

Yeah, there's a process in there if you disagree with the designations, there's a process to be followed. I don't think that it prevents you from talking to the government, but whatever. If you want, if you're just ready to go with the model one, I mean the model one, then we'll just go with the model one.

[Ashley Gjovik (Pro Se)] (1:10 - 1:52)

Yeah, the model one. So we can stipulate to that, that might make her happy that we actually agreed to something. So we can do that one.

I do think it would be helpful to proactively define confidentiality, since that is the number one dispute I'm having with Apple in all of the litigation, is what is confidential. So if there's anything that, and you might need to talk amongst yourselves, but if there's anything we can do to try to clarify that, the Federal Rules of Civil Procedure defines it as trade secrets and actually

confidential. So we can go through that organically, but I thought it might be helpful if we come to some of that understanding ourselves proactively too.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:53 - 2:05)

Well, I think, I mean, obviously the Protective Order defines it. And if you, and we mark something as confidential and you disagree that it's confidential, then there's a whole process in the Protective Order for you to challenge our designation.

[Ashley Gjovik (Pro Se)] (2:06 - 2:14)

Understood. But then the, what is confidential at the end of that challenge is, what does the Federal Rules of Civil Procedure in case law say is confidential?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (2:16 - 2:24)

Right. But the Protective Order describes it, right? And if you don't like the one, what we've done, then I don't think we need to change the Protective Order is what I'm saying.

[Ashley Gjovik (Pro Se)] (2:24 - 3:03)

We're not going to change the Protective Order. The Protective Order does not define confidential. It defines the process for parties to designate things confidential.

I'm just, as you can probably understand, even if you don't want to say so, concerned about what Apple's going to try to designate as confidential. So trying to figure out if there's anything we can do, since we've already had disputes on this topic of what is confidential and what's not, and a lot of discovery held back under this guise that stuff's confidential that I disagree with. So we can just go through that whole process organically.

I was hoping there's something we might be able to do. You've done this a lot more than me.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (3:05 - 3:05)

Many years.

[Ashley Gjovik (Pro Se)] (3:06 - 3:10)

So you used to run litigation at Morgan Lewis, right? For employment?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (3:10 - 3:19)

No, I was just one of many, many people. So I don't think we can define it in the abstract, is what I'm saying.

[Ashley Gjovik (Pro Se)] (3:19 - 3:34)

So if there's just anything that can try to... I know that you guys like to create the friction, but if

there's anything we can do to try to streamline this at all, would be really, really helpful. You can get back to me on that one.

But yeah, we can stipulate.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (3:34 - 4:04)

No, I just, I don't think... I mean, it says confidential information is what is qualified for protection under the 2060s. So I think, again, I just go back to, we market as confidential.

You disagree, follow the protective order. And I don't think we can further define it. Okay.

Because it's like, there's so many different versions of confidential and different things that are confidential that we can't try to say.

[Ashley Gjovik (Pro Se)] (4:04 - 4:26)

We have a bunch of individual little battles then, probably. Or maybe we'll all agree. Who knows what will happen.

Okay. So that sounds good. We can stipulate to that right away.

And then hopefully that means that Apple's willing to... So I guess that goes to the number one thing on my list of, has discovery started or not? And if it's not, what is needed to get it started?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (4:27 - 4:31)

Well, I mean, I don't know that we have to fuss about that because let's just go forward.

[Ashley Gjovik (Pro Se)] (4:33 - 4:41)

As I said... I mean, that's the fundamental question of discovery is whether discovery is actually started or if it stayed or... You know?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (4:41 - 5:03)

So, as you know, we believe that Go71 is not part of discovery. It's a disclosure. And yes, that started.

And yes, it was required. And the judge also ordered discovery on phase one. And yes, that started some time ago.

And yes, we served it. And yes, you haven't responded. So...

But we don't have to fuss about that if you're going to respond.

[Ashley Gjovik (Pro Se)] (5:04 - 5:07)

You're saying full discovery has not started yet.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (5:07 - 5:30)

Well, I think it might start. You mean beyond phase one? Yeah.

Yeah. I'm fine to do discovery based on the complaint that exists now. I think we can say, even though the judge's order hasn't changed, we can say...

What he said, I think, was once the pleadings are set, then we can go into full discovery.

[Ashley Gjovik (Pro Se)] (5:33 - 5:38)

If you guys are willing to say we can start it today, I'm just willing to say we're just going to agree that we're starting it today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (5:38 - 5:44)

No. We started it. We did the case.

Go71 is old. The discovery...

[Ashley Gjovik (Pro Se)] (5:44 - 5:49)

You just said that's not part of discovery. So you can't have it both ways. If you said that's not part of discovery...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (5:49 - 5:53)

It is not part of discovery. And it was due. And...

[Ashley Gjovik (Pro Se)] (5:53 - 6:13)

Okay, put that aside, though. My question is, outside of that conversation you're having, full discovery, because pleadings are settled now and all this stuff. Can we say that today you and I are going to put aside all of our other differences about discovery starting prior, full discovery, and just say it's going to start today?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (6:14 - 6:25)

No. So phase one discovery already started some time ago. We served phase one discovery.

That is past due. We don't need to fight about it as long as you're willing to answer it.

[Ashley Gjovik (Pro Se)] (6:25 - 6:53)

I see what you're doing. You guys are very good at this. I went to law school to get away from this, by the way.

Like, this is like engineering. Okay, so we have... Let's say we have three buckets of discovery.

We have what you're referring to as the general 71 non-discovery, but we'll just call that GO71. We have the phase one discovery that was in Judge Ten's order. And then we have full federal rules of civil procedure discovery.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (6:53 - 6:54)

Yes.

[Ashley Gjovik (Pro Se)] (6:54 - 6:57)

This third bucket, can it begin today?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (6:59 - 7:06)

So full discovery, but that doesn't mean that phase one discovery and GO71 discovery didn't start before and is already past due.

[Ashley Gjovik (Pro Se)] (7:07 - 7:13)

I'm not going to concede to that stuff, but there's still the big open question of, can full discovery start today?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (7:13 - 7:24)

Yeah, I'm fine with that. You still have to answer the phase one and do the GO71. But if you want to say, now we can start more discovery, that's fine with me.

But it doesn't change the fact.

[Ashley Gjovik (Pro Se)] (7:24 - 7:36)

On me saying that the other stuff you did was legitimate, if we can just put aside all of our other stuff and say, you and I are agreeing today that we're just going to start full discovery, period.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (7:38 - 7:43)

Yeah. As long as you answer the discovery we've served and get us the GO71 responses, that's fine.

[Ashley Gjovik (Pro Se)] (7:43 - 7:47)

I'm not making a decision on that because if we're starting today, that means you need to reserve your stuff today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (7:48 - 7:52)

No, I don't need to reserve them because they were already served.

[Ashley Gjovik (Pro Se)] (7:52 - 8:07)

Very, very clear. Any kind of requests served during a stay are not valid. So if you want to fight this, this will be our first letter is you saying you think that these things were valid during that stay.

I say they're not. I say you need to reserve your stuff today. You said, no, that stuff's valid.

I'm late. That'll be our first letter.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (8:08 - 8:10)

But why do we need to fuss over it? Why don't you just answer it?

[Ashley Gjovik (Pro Se)] (8:11 - 8:14)

Because you want me to acquiesce that I was supposed to do something.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (8:14 - 8:22)

No, I just want you to answer the discovery. You don't have to concede anything. You don't have to agree to anything.

Just answer the discovery. That's all I'm saying.

[Ashley Gjovik (Pro Se)] (8:22 - 8:23)

Just resend it today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (8:23 - 8:40)

Why do I need to do that? I already served it. Because that's the rules.

No, it isn't. I looked it up. Just answer the discovery.

And then we don't have to go to the judge. Don't waste the judge's time about whether there was discovery started or didn't discovery decided. Just answer the discovery.

That's the easiest answer.

[Ashley Gjovik (Pro Se)] (8:40 - 8:46)

Because you guys have already made public allegations against me about the judge of me missing deadlines that I was not obligated to meet.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (8:47 - 8:52)

Just put it behind you. Put it all behind you. That's what I'm saying to you.

We already served.

[Ashley Gjovik (Pro Se)] (8:52 - 9:03)

You just need to resend. And I sent you a request for production you denied like two months ago. And I'm saying, I'm not going to fight that one.

I'm going to resend it today. Because we just agreed it's starting. So I'm going to let that go.

Can you just send it today?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (9:03 - 9:20)

I'm happy to meet and confer today on the... You don't need to resend the discovery. Let's meet and confer on which of the responses you don't like.

That's what we're supposed to do as part of the meet and confer. You go through each one of the requests. And then you tell us which ones you disagree with and why.

[Ashley Gjovik (Pro Se)] (9:21 - 9:35)

All of them. And I had already outlined that there's very, very broad rejections. That you can't do that.

You have to be more specific. You can't just say because this generally seems to be... There's narrow stuff.

I've already outlined all the main...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (9:36 - 9:49)

We have to go through each request. That's what the magistrates order. And I have the request in front of me.

I can share it if you want. And then we go through each request. And then you tell us whether you're okay with the answer.

And if not, why not?

[Ashley Gjovik (Pro Se)] (9:49 - 9:50)

Okay. Yeah. Share, please.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (9:51 - 10:18)

Should we do that? Yeah. Okay.

Let's see. Do I not have a share thing here? Pause.

Stop recording. Break room. So share.

There it is. I think this is the right one. Okay.

Request number one. I assume you're okay with that?

[Ashley Gjovik (Pro Se)] (10:20 - 10:37)

Because we will... Hold on. Because Weibull never conducted an investigation into plaintiff into Joe Bigstar.

Well, no. The discovery documents you showed me showed that Helen and Jenna were talking...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (10:38 - 10:40)

Can you talk up a little bit?

[Ashley Gjovik (Pro Se)] (10:41 - 10:54)

The discovery documents released so far showed that Helen Pokes and Jenna Weibull were either investigating or getting consultation about how to handle me as the issue per an escalation from my boss.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (10:56 - 10:57)

Okay. But we answered the question.

[Ashley Gjovik (Pro Se)] (10:58 - 11:00)

We don't have it because Ms. Weibull never conducted.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (11:01 - 11:01)

Yeah.

[Ashley Gjovik (Pro Se)] (11:03 - 11:11)

So is that like a formal... Okay. So if there's no formal...

You're saying there's no formal investigation opens. There's no case file for that.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (11:12 - 11:18)

Right. There's no investigation. So there was no case file.

So that one's okay.

[Ashley Gjovik (Pro Se)] (11:19 - 11:21)

I'll think about... I'm not conceding it.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (11:21 - 11:22)

Yeah. It's fine.

[Ashley Gjovik (Pro Se)] (11:22 - 11:24)

Okay. Case management concern.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (11:25 - 11:29)

So this one has some objections, but we gave the answers. We gave some answers.

[Ashley Gjovik (Pro Se)] (11:30 - 11:45)

Go back. Scroll back up to two, please. I can't see the top part.

The next page above it, please.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (11:45 - 11:46)

You want to go up or down?

[Ashley Gjovik (Pro Se)] (11:53 - 11:58)

Go up a little bit more. Can I see my...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (11:58 - 12:02)

You can skip through the objections as long as you're okay with the answer.

[Ashley Gjovik (Pro Se)] (12:03 - 12:06)

Well, remind me of what the question is. I can't see it.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (12:06 - 12:07)

Oh, yeah. Sorry.

[Ashley Gjovik (Pro Se)] (12:08 - 12:39)

The case file from the Federal Employee Relations Concerning General Weibull is starting. Including any comments from people other than Weibull. So, yeah, I definitely would object when the scope is narrowed to those specific claims when it's a retaliation case.

So anything related to protected activity, complaints, investigations, all of that is relevant under

discovery.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (12:39 - 12:45)

Right. But then we answer the question. Didn't have a case file regarding investigation into concerns you raised.

[Ashley Gjovik (Pro Se)] (12:52 - 13:09)

We have no documents responsive to this. Because you've done this a million times, and I've never done this, and I'm sure you're playing some board games. But if I was to resubmit this and say, documents instead of case file, would there be things?

Do I just need to resend it with fine tuning? I feel like you guys should be interpreting this liberally.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (13:10 - 13:23)

Well, we interpret them the way the question is asked. You asked for the case file. But we told you in our part here that we didn't have any documents responsive because she didn't conduct an investigation.

[Ashley Gjovik (Pro Se)] (13:30 - 13:44)

Okay. So this is where I'm like, if I resubmit it, making it more broad, because I know there are just more documents. And maybe you're using these terms to not give me these very specific things.

Then I have to resubmit it more broad. And last time I did that, you said that's too broad.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (13:45 - 13:56)

Yeah. So here you wanted to know if she did an investigation, and we said she didn't. So there's no point in you asking for anything else about an investigation because she didn't do one.

That's what we've said.

[Ashley Gjovik (Pro Se)] (13:56 - 14:03)

Well, a formal coded designation. Okay. I understand what you're saying, and I will get back to you on that.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (14:04 - 14:15)

All right. Sounds good. So here's Okpo's investigation, so then you can get to the end.

[Ashley Gjovik (Pro Se)] (14:26 - 14:36)

So this one, are you saying that there was never a case file that Okpo had either? Yep. If there was no case file, why did you have nine other objections?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (14:37 - 14:45)

I don't know. Sometimes people put in objections just to preserve them, but that's why you look at the answer.

[Ashley Gjovik (Pro Se)] (14:49 - 15:14)

Well, I mean, if you have objections that are not even relevant, that seems like an issue. Your associates are overly ambitious with their objections. Okay.

So you're saying there is a case file from Okpo, or there's not? There's no case file at all for any of them?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (15:14 - 15:29)

We did not maintain a case file into your concerns. And if it means an investigation, then we don't have that either. So we're trying to help you to say there's no case file, there's no investigation documents.

[Ashley Gjovik (Pro Se)] (15:30 - 15:38)

So I need to find a way to ask you for documents with not too vague, but also enough of a net to actually get some stuff. Understood. Okay.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (15:38 - 15:42)

I don't know what you're looking for, but we've given you the answers to that one.

[Ashley Gjovik (Pro Se)] (15:42 - 15:53)

Case file from Respondent's Employee Relations Concern. So, okay, you're saying there's no case files whatsoever in any platforms? And that's into me or about my concerns?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (15:54 - 16:00)

The question was, case file from Respondent's Employee Relations Platform concerning an investigation into Jovic.

[Ashley Gjovik (Pro Se)] (16:01 - 16:08)

And the other one was an investigation into my concerns. So you're saying there's no case files about Ashley?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (16:08 - 16:09)

Right. Okay.

[Ashley Gjovik (Pro Se)] (16:13 - 16:31)

That's concerning issue confirmation, including drafts, timestamps, objects. Okay. So this one, there definitely is.

When I saw that thing, it was clear at least five lawyers wrote it. So there had to have been drafts and conversation. Help me understand the objections on this one.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (16:32 - 16:46)

Okay. So don't worry about that. Get to the answer.

Defendant understands you to seek all documents concerning the August 2021 issue confirmation sent. And then we're saying we've given you those. So assuming we answered it the way you meant it, we've given you the documents.

[Ashley Gjovik (Pro Se)] (16:47 - 16:50)

Those are emails I was already on that did not give me any information I did not already have.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (16:54 - 17:00)

We're telling you we've given you all the documents that are responsive to that request that we've been able to find.

[Ashley Gjovik (Pro Se)] (17:00 - 17:05)

So you're saying that anything you did not give me, you are claiming attorney-client privilege for?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (17:06 - 17:10)

You'll get a privilege log this week. So if there's anything that's privileged, you'll get it.

[Ashley Gjovik (Pro Se)] (17:10 - 17:19)

So if like this is not listed on that, then I should assume it's because you're saying it's not relevant under the scope of the claims or private.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (17:19 - 17:23)

We're saying we've given you everything that's not privileged. Okay.

[Ashley Gjovik (Pro Se)] (17:24 - 17:44)

So we're going to have to challenge that. I know this is Apple's favorite I've seen. I've looked at

a lot of Apple cases.

We're going to challenge the privilege. So if you can at least just make it clear when the main claim is privileged, that will help the pipeline of those challenges. Because right now I can see like nine different challenges and I'm wondering what the main ones are.

Okay.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (17:44 - 17:52)

Well, you have to look at the privilege log. There's a whole process in the magistrate's order about challenging a privilege log. So if you want to challenge it, follow the process.

[Ashley Gjovik (Pro Se)] (17:52 - 17:53)

I don't have a privilege log yet.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (17:54 - 17:55)

No, I know. You're going to get it this week.

[Ashley Gjovik (Pro Se)] (17:56 - 17:57)

Wonderful. Thank you.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (17:59 - 18:03)

So I don't think you should have any problem with that because we answered it.

[Ashley Gjovik (Pro Se)] (18:06 - 18:13)

As long as it's clear that... So I still have a concern of I get the privilege log, you say, okay, the issue confirmation stuff, we're claiming privilege for...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (18:15 - 18:21)

Well, I don't know. If it's on the privilege log, then we claim privilege for it. If it's not on the privilege log, then there's no privilege.

[Ashley Gjovik (Pro Se)] (18:21 - 18:30)

Well, that's what I'm saying. So then I'm wondering if it's... Well, if it's on the log, are you also claiming all these other objections?

The problem is when it's the junk drawer...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (18:30 - 18:31)

Privilege log is just for privilege.

[Ashley Gjovik (Pro Se)] (18:32 - 18:37)

That's what I'm saying. So if I need to figure out how to challenge this, do I need to challenge this under the like six different objections?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (18:38 - 18:41)

No, because we're telling you, we've given you all non-privileged documents.

[Ashley Gjovik (Pro Se)] (18:43 - 18:58)

No, what I'm saying is I'm going to fight for those documents. You're saying it's privileged, but this also says like five other objections. So should I just...

I guess I will... If this is the objection you guys are going with, that when I challenge it, I'm going to have to challenge all of the objections listed for each of it.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (18:58 - 19:06)

No, because we're telling you, we're giving you the answers. There's no point in challenging anything if we gave you the answer.

[Ashley Gjovik (Pro Se)] (19:07 - 19:10)

No, there's a point in challenging it if I don't agree with the assessment of its category.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (19:10 - 19:31)

No, because I mean, we're saying, look, it was only phase one discovery and we're not going to waive any objections to that. But then we also say, notwithstanding the objections, subject to and without... Sorry, notwithstanding.

Don't worry about the objections. That's my view. We're giving you the documents, all non-privileged documents about the issue confirmation.

[Ashley Gjovik (Pro Se)] (19:32 - 19:36)

You said, or wait, are you saying you already did or are you going to give me another production?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (19:37 - 19:55)

I believe... So we have produced, I think all of the ones on this. There's going to be one more production out this week.

I don't think it relates to the issue confirmation, but you'll get the privilege log and the remainder of our documents this week. And then you will be able to see that we have produced everything responsive to the request.

[Ashley Gjovik (Pro Se)] (19:58 - 20:08)

Okay, so for sake of time then, it sounds like since this is still kind of pending then. So if you're going to give me more documents in response to this request, is that what you're saying?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (20:08 - 20:11)

I don't think they're any more responsive to this request.

[Ashley Gjovik (Pro Se)] (20:13 - 20:20)

Okay, okay. So what were you saying about phase one discovery in this then? You're saying that even in full discovery, this request is complete?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (20:20 - 20:21)

Yes.

[Ashley Gjovik (Pro Se)] (20:21 - 21:00)

Okay. So you're saying my request for production in full discovery, complete. So if I was to resubmit this to you today, you would say same answers as before?

Yes. Okay. Business conduct system record, does not have any documents because it's pendant.

Complaint, any notes, updates, resolution. I mean, that one, you're definitely holding some stuff back. I got some stuff from OSHA that seemed like it fits that category.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (21:02 - 21:20)

The business conduct system record for your business conduct complaint. So I guess we're saying that's not related to the claims in the fourth amended complaint.

[Ashley Gjovik (Pro Se)] (21:21 - 21:32)

But that is when I submitted the whole issue confirmation to business conduct, which included tons of stuff in that complaint. And that shows the full knowledge of Apple business conduct of what my complaints were outside even employee relations.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (21:36 - 21:38)

And how does that relate to your retaliation complaint?

[Ashley Gjovik (Pro Se)] (21:39 - 21:40)

Knowledge is a prima facie problem.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (21:44 - 21:49)

So you want the answer to that to show that Apple had knowledge of what you were complaining about?

[Ashley Gjovik (Pro Se)] (21:50 - 21:51)

Apple business conduct.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (21:52 - 21:55)

Okay. I'll get back to you on that one.

[Ashley Gjovik (Pro Se)] (21:59 - 22:35)

Okay. So the office, you know, this is protected activity. This is Nexus.

This is pretext. This is knowledge. If it shows that, you know, Apple is doing all this testing parallel of my complaints and some of it contradicted things they were telling me.

That shows there was an issue that they had motive to cover up. All of that is extremely basic in a retaliation case. So I think relevance is not an argument here.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (22:36 - 22:44)

When you have to show you the retaliation cases, I complained and they fired me. So this doesn't relate to your complaints, right?

[Ashley Gjovik (Pro Se)] (22:44 - 22:46)

That you complained about those things.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (22:47 - 22:51)

Right. But then they would give you documents about your complaints.

[Ashley Gjovik (Pro Se)] (22:52 - 23:40)

And that because there's so much case law, there's buckets of case law of the motive of whether there was an actual issue is an absolutely key factor in these retaliation cases. It goes both ways. If it shows that Apple was just doing a super normal thing and they found no issues and there was nothing weird going on, that hurts my case.

So what I'm asking for is information that I don't know if it's going to help me or hurt me. You know, I assume it's going to help me, but I don't know because I need to understand for my lawsuit, what was going on with Apple related to the things I was complaining about, whether there was a cover-up, you know, retaliation is often a cover-up. So is there stuff they were trying to cover up?

Was there peculiar behavior? Were they doing things outside of the norm? Did they find concrete issues?

Are there emails where they say, uh-oh, hope Ashley doesn't find out about this. Like all of that is super relevant.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (23:42 - 23:46)

And September 11th was the day you were fired? Is that what you're saying, to mid-10th?

[Ashley Gjovik (Pro Se)] (23:47 - 23:49)

September 9th and then effective September 10th.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (23:49 - 24:03)

Okay, all right. I will go back and look at that one. So I'm going to look at five, six, and seven and see if we disagree with you and whether we're willing to rest on our objection.

Thank you.

[Ashley Gjovik (Pro Se)] (24:08 - 25:01)

Same thing, Ani. I think that is kind of one of the biggest pieces of what I just discussed of that inspection. Um, so all of that seems material to me.

So in the, the FAB is still in scope for the same thing of motive. I have the Crime Victims Act, the legislative witness, you know, I have claims that are critical to that. So while the toxic torts are out for now, I mean, that means there's a lot of stuff that I would have asked for otherwise that I won't now, especially stuff after, you know, way after I was fired.

But this, again, goes to clearly to motive and knowledge and pretext and all of that.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (25:03 - 25:07)

Okay, I will look at nine again. Seven, eight, nine, ten.

[Ashley Gjovik (Pro Se)] (25:11 - 25:15)

That one, same thing with a real underlying on pretext.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (25:16 - 25:18)

Well, but we've given you a bunch of stuff on that one.

[Ashley Gjovik (Pro Se)] (25:19 - 26:18)

Most of the stuff I already had. You gave me a few things, but if we're in full discovery, I assume

there's a lot more to be given. And so that one specifically is for, you know, impeachment of my questions, the responses I was getting, me not being happy with those answers, you know, if there was a really great plan and they were saying, actually, there's no plan, that's suspicious.

If there's no plan at all, and I'm complaining there's no plan, and they say it's fine if there's emails or something about like, hey, we need to create a plan, like that's also seems material. Again, it's that was everything they're doing super normal and reasonable and not weird at all, or was at what they were doing super suspicious and contradictory and deceptive or somewhere in between. I can't figure that out without this kind of information.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (26:26 - 26:38)

So that's kind of, that's like the other two. You want those documents to show this motive and you want to know if there's anything else that we're not giving you responsive to the request.

[Ashley Gjovik (Pro Se)] (26:38 - 27:23)

Yeah, like motive or maybe there's not, right? So like if it proves that Apple is actually being super normal, I think that's something Apple would be happy to send over. You're like, actually, look, we're being super normal, right?

And then the mid-year performance review, I didn't get one, which was weird. And there was some of those emails going on with HR and stuff. So if there's anything about what, oh, we didn't do a mid-year with Ashley, you know, that's- We've said there are no documents, so that's the end of it.

I mean, he would have, my boss would have got an email saying, hey, you haven't submitted your mid-year with Ashley or he submitted and said he did in the system and then he would have lied.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (27:24 - 27:31)

So- Right, but we're saying there are no documents. So that's what I'm saying is if we say there are no documents, then we have no documents.

[Ashley Gjovik (Pro Se)] (27:32 - 28:02)

So what I'm saying is the Merlin systems and stuff make him like check in and say whether or not he's done those. Dan would ask for status from them to make sure they say they've done all their mid-years. So he either expressly said I didn't do Ashley's and here's why.

He gets pressure from Dan and wouldn't do it. Feel like I still work for him four years later. So he either would have expressly said I didn't do it and here's why and Dan would have had to accept that or he would have lied and said he did it and both of those same material.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (28:04 - 28:12)

Okay. We're saying there are no documents. So I can go back- I know they're saying that, but they're- I can go back and have them see if there's anything in the Merlin systems.

[Ashley Gjovik (Pro Se)] (28:13 - 29:34)

Merlin or Dan would ask his directs to like confirm that they had done these. This is something he would ask at his staff. That was one of the things I'd asked for is their staff meeting notes because Megan Gates or whoever their admin was at that time would have been taking notes on things like this of him asking did everyone do their mid-years and it would have been in the notes if it was yes or if someone had said not yet and then Dan would like yell at them and be like you gotta go do it.

So there should be something. Number 12, annual- Thank you for sending those drafts. That was helpful.

One thing I was going to ask, some of those documents weren't timestamped. There weren't dates on them. It would be really helpful for the timeline to piece together the undated stuff if possible.

I assume there's like metadata on those documents that could be somehow adhered to them and I just got, you know, the drafts of the documents. I assume there were emails about it too and is that where you're claiming attorney-client privilege?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (29:35 - 29:36)

It'll be on the Privilege Blog if we are.

[Ashley Gjovik (Pro Se)] (29:37 - 30:06)

Okay, so I'm gonna have to go, for all of that I'll go through and compare and probably have some follow-up questions. Okay, all the drafts, termination letter. Okay, so we'll wait for the log on that and you guys are still claiming attorney-client privilege for any of the stuff happening before the stuff you have given me?

Or outside of it?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (30:07 - 30:11)

If there was a communication with an attorney about it, then it would be privileged.

[Ashley Gjovik (Pro Se)] (30:15 - 30:31)

And that'll be... So the things where you're talking about like the facts of what occurred, not even like... Like you could at least like redact a document other than dates and people or something just to give me an idea of what's occurring or are you guys claiming attorney-client privilege to just like everything?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (30:32 - 30:36)

Well, the Privilege Log gives you a log of what we're claiming as privileged.

[Ashley Gjovik (Pro Se)] (30:36 - 30:39)

You previously said it would only be categorical. Are you going to do it by document now?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (30:41 - 30:43)

You'll see it when it comes. It's not by document, no.

[Ashley Gjovik (Pro Se)] (30:43 - 31:09)

Okay, so that... I mean, that's where if it was by document, which it's supposed to be, I'll probably have to challenge that. That's where I could glean a lot of this information.

So either getting that type of information document by document through a production with heavy redactions or something or having the document... The groups of documents for document by document production log would hopefully give me that information. But either way, that seems like very relevant information.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (31:13 - 31:23)

We'll have a look at the Privilege Log and then we can follow the judge's order on meeting and conferring about the Privilege Log. Yeah. Okay, 14.

[Ashley Gjovik (Pro Se)] (31:28 - 31:43)

For that though, I mean... I guess if you guys are willing to meet and confer now, we can do another one on it. Okay.

Whether that they were terminating... I guess we just talked about that one.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (31:45 - 31:45)

Nope.

[Ashley Gjovik (Pro Se)] (31:46 - 31:48)

Any documents agreement is supposedly signed.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (31:49 - 31:52)

Oh, and then this... So this categorical Privilege Log, that's what we're going to give you.

[Ashley Gjovik (Pro Se)] (31:53 - 31:59)

So that's not sufficient. Case law says that's not sufficient. You can do groups of documents...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (31:59 - 32:00)

We'll meet and confer on it.

[Ashley Gjovik (Pro Se)] (32:00 - 32:01)

But you can't do document by document.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (32:02 - 32:06)

We believe it is, you believe it isn't. Let's meet and confer on it when you see it.

[Ashley Gjovik (Pro Se)] (32:07 - 32:25)

Okay. Spend lots of time together, Brenda. Yep.

Any documents, contracts, agreements. So yeah, and I requested this back in December 2023. I want all contracts I signed with Apple.

You guys had previously said something like maybe you'd release them with a protective order. So once we agree to the protective order, is that something you'll provide?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (32:26 - 32:27)

Yep. Okay.

[Ashley Gjovik (Pro Se)] (32:28 - 32:32)

And that includes the Gobbler Informed Consent Agreement?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (32:33 - 32:41)

If we have one, it'll include it. Yeah, Gobbler definitely includes... It definitely includes Gobbler.

I've seen the Gobbler one.

[Ashley Gjovik (Pro Se)] (32:42 - 32:49)

So the thing that was included for the OSHA that said it was Gobbler, that wasn't Gobbler. That was a completely different study. And that was like over a year after.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (32:50 - 32:57)

Okay. Well, the one that I think we produced, but anyway, the one you have or will get with a protective order is the Gobbler one.

[Ashley Gjovik (Pro Se)] (32:57 - 32:58)

From 2017.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (32:59 - 33:00)

I don't remember what date it was.

[Ashley Gjovik (Pro Se)] (33:01 - 33:17)

The one sent to OSHA was not Gobbler. It said it was, but it was not. That was like 2018.

That was an overall live on. So for the Gobbler 2017 one, if I'm not getting that, I do need an explanation why. If it doesn't exist, I need that explanation too.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (33:18 - 33:20)

Oh, you'll get the one for Gobbler.

[Ashley Gjovik (Pro Se)] (33:20 - 33:30)

Okay. Oh yeah, this one's super important.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (33:32 - 33:34)

Are we on 16? Yeah. Okay.

[Ashley Gjovik (Pro Se)] (33:42 - 34:03)

I mean, the decision to terminate me, that's kind of a hand wavy of who made that decision, but that's also cat's paw. I mean, we need to establish cat's paw. It seems like that definitely happened with the email that you need.

So then it goes to who knew? And how do I know who knew? Unless you tell me who knew.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (34:07 - 34:08)

We've given you the answer.

[Ashley Gjovik (Pro Se)] (34:13 - 34:34)

Okay. So you guys are sticking to that objection on that one. Yeah.

Okay. So 16. Challenge right away.

Um, 17. Same thing. Is that the same thing?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (34:34 - 34:36)

Oh, that's about the Verge?

[Ashley Gjovik (Pro Se)] (34:36 - 34:37)

Yeah.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (34:38 - 34:40)

So Davenda doesn't have any documents responsive to this request.

[Ashley Gjovik (Pro Se)] (34:41 - 35:17)

The reporter had told me, she sent it to them on the Friday before, I think it was published on a Sunday or Monday. And she said they'd sent it multiple days ahead of time and like reminded them. She had said that they weren't responding to her at least prior to production, but she had confirmed to me.

And that's completely like standard procedure. And it says we asked Apple for comment. So it's hard for me to believe that they got that email from Verge about that article and then no one saw it or said a word about it.

I don't know what this process is. Like if I need to send you the text that she sent me.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (35:18 - 35:29)

This is Apple writing back. You're asking responses from Apple to the Verge. Not emails to Apple from the Verge.

And we're saying we didn't respond.

[Ashley Gjovik (Pro Se)] (35:29 - 35:31)

From the Verge to Apple.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (35:31 - 35:45)

Any responses triple transmitted from Apple to the Verge or Shoei or Zoe. Okay. We didn't transmit anything to the Verge or Zoe.

[Ashley Gjovik (Pro Se)] (35:46 - 36:37)

Okay. And then you said did not. 17 did not transmit to Verge.

Okay. Or Zoe. And then 18 whatever emails that were referred to in their US Department of Labor response.

So I got those through OSHA, mostly redacted. It would be helpful if you can send me those emails not redacted. And more emails if there's more emails.

Or if you guys are saying you didn't give me those documents prior because of objections, if you can add those objections because they're not currently listed, just as you gave me everything.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (36:46 - 36:50)

Well, we've said we gave it to you, but I will see if there are any redactions on them.

[Ashley Gjovik (Pro Se)] (37:00 - 37:12)

Oh, I apologize. I was reading that as much as I was. That was just the July 20th email.

Oh, I forgot. This is a very narrow one I sent you. Yes.

You previously said that that didn't exist.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (37:14 - 37:22)

I don't know. We said we've given you something and we've given the numbers, the Bates numbers. So we've responded to that request.

[Ashley Gjovik (Pro Se)] (37:24 - 37:27)

That was an email where I said I didn't want to be on leave.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (37:28 - 37:40)

Yeah, I don't know. I don't know what is there, but I'm just saying we've responded to the request so there's no reason to meet and confer on it. There's no reason to take it to the magistrate because we gave you the response.

[Ashley Gjovik (Pro Se)] (37:46 - 38:04)

Um, I'm going to have to look into this because the response was not what you said existed. And I believe an email you said that thing you said to OSHA is not actually an email that exists, in which case there's, I guess, nothing for me to ask for. So I will think about it.

I'll drink some coffee about that one.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (38:05 - 38:16)

All right. We've now met and conferred on that. I'm going to get back to you on some things.

You're going to look at some things and hopefully we will get progress on that.

[Ashley Gjovik (Pro Se)] (38:16 - 38:34)

We're going to start our full discovery. Jesus, fonts. Did no one tell him about like the muting, the darker red and the darker green?

Anyways, so we're going to agree that we're going to start full discovery today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (38:35 - 38:56)

No, I'm not agreeing to that. I'm just telling you that you need to respond. You need to give us the Go71 stuff and you need to respond to the document request that we already sent.

You want to send more discovery on phase two? I'm agreeing that we start full discovery today because beyond phase one and beyond Go71.

[Ashley Gjovik (Pro Se)] (38:59 - 39:04)

Okay. So we agree we're just separate from everything else. We're starting full discovery today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (39:05 - 39:10)

Full discovery. But we still have to answer the Go71 and the prior discovery requests we sent.

[Ashley Gjovik (Pro Se)] (39:11 - 39:17)

And I'm saying you can send me, now that we're starting today, you can send me a request today and I'm happy to respond to them.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (39:17 - 39:34)

So we talked about three buckets, the Go71, the phase one and full. Go71 already started, you owe us the stuff. Phase one already started, you owe us the stuff.

Beyond phase one, we're starting today. Correct. But we still have to do the first two buckets.

[Ashley Gjovik (Pro Se)] (39:34 - 39:39)

So for the first two buckets, we're in dispute on that. And it sounds like we need a letter. I had said this like months ago.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (39:39 - 39:42)

Just answer them. Just answer them. Why do we need a letter?

[Ashley Gjovik (Pro Se)] (39:43 - 39:48)

You know, I can read Ryan's email about me. Yeah, you're sharing that with me.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (39:48 - 39:49)

Oh, I'm sorry about that.

[Ashley Gjovik (Pro Se)] (39:50 - 39:52)

I am not reading it or screenshotting.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (39:52 - 39:54)

Funny, it says, it doesn't say share.

[Ashley Gjovik (Pro Se)] (39:55 - 39:58)

When you shared your screen for the document, you must have shared your entire desktop.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (40:01 - 40:05)

I can't explain that because it's not saying it's sharing anything.

[Ashley Gjovik (Pro Se)] (40:06 - 40:08)

I can knock it off.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (40:13 - 40:16)

You can allow multiple presentations to share.

[Ashley Gjovik (Pro Se)] (40:21 - 40:25)

If you go to the bottom where it says share, if you click it again, you should be able to turn it off.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (40:28 - 40:29)

It's not showing it's on.

[Ashley Gjovik (Pro Se)] (40:30 - 40:35)

It might not, but if you click it, it will have like a stop sharing, even though it looks like it's...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (40:35 - 40:45)

No, I don't have a stop. I could, oh, stop share. There we go.

You're right. I see it on the third screen. I have three screens.

All right. Now we're back in the right place here.

[Ashley Gjovik (Pro Se)] (40:46 - 40:52)

That's why I was like, what is his colors? He's using on his writing. Yes, he's very aggressive color choices.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (40:52 - 40:53)

All right.

[Ashley Gjovik (Pro Se)] (40:54 - 40:57)

Okay. So we're going to be in disagreement on the first two. If you guys want to fight that.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (40:57 - 41:00)

Yeah, but just answer the discovery.

[Ashley Gjovik (Pro Se)] (41:00 - 41:21)

We don't need to fight about whether it started or whether it didn't start. These laws on my side here, there's no, absolutely no reason for you to not just resend it now, now that we're agreeing it starts. If you guys want to hold onto the fact that I am out of compliance with this thing, you say I'm overdue on because I saw your guys' way.

You want to come after me and try to get sanctions against me for discovery.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (41:21 - 41:24)

No, I just want you to answer it. That's all I ask.

[Ashley Gjovik (Pro Se)] (41:24 - 42:29)

No, I see how you guys do. So I'm not acquiescing to any of that because I was not in the wrong. So if you guys want to start that fight, we need to start it now.

So you guys can go in and say, she was supposed to do this general order 71 stuff. She won't, she won't. And I will say, I said, send me my federal rules of civil procedure request right now and I will do them under federal rules of civil procedure.

And you'll say, no, that's not good enough. We want this special thing that we created because you're bad. And then we'll, you know, we're going to have to raise that and you guys need to articulate that now.

I'm not going to let this stuff build and fester for you to create some false case against me later. I see you guys do that really well, but I'm not going to play that game. So if you want to do that stuff, do it, we can do the letters.

But if you send me a normal request for production today, I will happily respond within the federal rules of civil procedure for whatever it is. As far as general order 71, I was working on that until discovery was stayed. Once discovery was stayed, my understanding is that the first phase of discovery did not include general order 71.

And now that full discovery is starting, general 71 is just folded into normal discovery. So.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (42:30 - 42:32)

Hey, will you answer general 71?

[Ashley Gjovik (Pro Se)] (42:32 - 42:36)

About that, we can, we can have some letters and ask for the judge to clarify.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (42:36 - 42:39)

No, I just want you to answer it. That's all I'm asking.

[Ashley Gjovik (Pro Se)] (42:39 - 42:40)

You can just send it to me today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (42:41 - 42:50)

What, the GO 71, there's nothing to send. So GO 71 is in the order. It tells you what you have to produce.

And so just produce it.

[Ashley Gjovik (Pro Se)] (42:50 - 42:52)

You can send me a request for production today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (42:52 - 43:01)

No, I know you want me to do that, but I'm just talking about GO 71. Will you give us GO 71 by what does Ryan say here, the 24?

[Ashley Gjovik (Pro Se)] (43:01 - 43:05)

If you give me a request for production today, asking for it, I will respond.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (43:05 - 43:12)

I don't have to ask you for GO 71. GO 71 is a court order. I don't ask you for anything.

You have to.

[Ashley Gjovik (Pro Se)] (43:12 - 43:14)

It was paused and then.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (43:14 - 43:17)

Whatever. Just give it to me now. That's all I'm asking.

[Ashley Gjovik (Pro Se)] (43:18 - 43:24)

So this isn't like frivolous either. What you're asking is for me to do all of my discovery expedited within 30 days.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (43:24 - 43:28)

No, I'm asking you to comply with GO 71. That's all I'm asking.

[Ashley Gjovik (Pro Se)] (43:28 - 43:29)

We're going to write a letter about this.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (43:30 - 43:35)

So you're saying you're not going to comply with GO 71 by April 24th?

[Ashley Gjovik (Pro Se)] (43:35 - 43:38)

I'm going to say, I asked you to send me a request for production today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (43:38 - 43:51)

I understand, but that's separate from GO 71, right? There's a GO 71 and there's a request for production. But I don't send you a request for production on GO 71.

That's a court order. There's nothing I can say.

[Ashley Gjovik (Pro Se)] (43:51 - 43:53)

We don't have a court order for it. You're just making it.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (43:54 - 44:03)

Okay. I thought the judge had already ordered you to produce this. I believe that it's in the court order, but whether it is or not, just give it to us.

[Ashley Gjovik (Pro Se)] (44:04 - 44:12)

Again, I'm happy to respond to whatever. Good. Federal rules of civil procedure aligned requests, formal requests you send me starting today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (44:14 - 44:19)

But I can't do anything about GO 71 because that's a court order.

[Ashley Gjovik (Pro Se)] (44:20 - 44:32)

It's not. So, I mean, this is exactly what we should bring to Judge Wismore. You think there's a court order.

I think there's not. I'm happy to go with just federal rules of civil procedure. You think there's a court order in addition to it.

So let's ask her for clarification.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (44:35 - 44:39)

So are you not going to give us GO 71? Just yes or no.

[Ashley Gjovik (Pro Se)] (44:39 - 44:50)

I will happily give you all the documents within scope under the civil rules of civil procedure for any formal in procedure requests you send me starting today as discovery starting today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (44:51 - 44:54)

Okay. There's still a question. Will you give me GO 71 or not?

[Ashley Gjovik (Pro Se)] (44:55 - 44:58)

I plan to give you all relevant documents.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (44:58 - 45:03)

No, no, that's not. Will you give me what's required by GO 71? Yes or no?

[Ashley Gjovik (Pro Se)] (45:04 - 45:06)

As part of discovery...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (45:07 - 45:08)

No, yes or no.

[Ashley Gjovik (Pro Se)] (45:08 - 45:21)

...or the discovery. So yes, but not of responding to your request specifically way before it was... when discovery was stayed and da, da, da, da, da.

I'm not doing that. But I'm going to give you all relevant discovery documents.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (45:22 - 45:30)

That's what I want to know. Are you going to give me the documents required by GO 71? Yes or no?

Nothing about discovery requests. Nothing about anything else.

[Ashley Gjovik (Pro Se)] (45:30 - 45:34)

I'm just saying, are you going to get the documents as noted in General Order 71 period?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (45:35 - 45:35)

Yes, I'm...

[Ashley Gjovik (Pro Se)] (45:35 - 45:37)

Yes, you're going to get those.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (45:37 - 45:38)

Will you do that by April 24?

[Ashley Gjovik (Pro Se)] (45:40 - 45:46)

If you want a deadline associated with it, you need to give me a request for production under federal rules or civil procedure.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (45:46 - 45:49)

We're talking about two different things. GO 71 and request for production.

[Ashley Gjovik (Pro Se)] (45:50 - 45:54)

I know we separated it for our prior thing, but I'm saying...

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (45:54 - 46:03)

It's separated under the rules. GO 71 and Rule 26 and the discovery rules, FRCP discovery rules. So I'm focusing now just on GO 71.

[Ashley Gjovik (Pro Se)] (46:04 - 46:15)

That is not a requirement. So I'm going to say, here's just a broad thing. Anytime Apple in discovery wants to create requirements that I don't think are actually requirements, I'm going to say, we're going to bring that to a judge.

And this can be the first one.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (46:15 - 46:19)

So will not respond to GO 71. Is that fair?

[Ashley Gjovik (Pro Se)] (46:21 - 46:23)

I just said I would.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (46:23 - 46:25)

Oh, you will respond.

[Ashley Gjovik (Pro Se)] (46:25 - 46:40)

I will provide all relevant documents as described in General Order 71 as part of the process and discovery. If you think you need them in 30 days, I'm saying you need to send me a formal request for production to attach a timeline to that.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (46:40 - 47:09)

All right, so let's keep this separate. GO 71, all communications concerning the factual allegations or claims at issue in this lawsuit between plaintiff and defendant. That's what GO 71 requires.

Regardless of document requests, you have to give us that. And the question is, will you give us that? Because that's what GO 71 is telling you.

So I just need to know yes or no. Wrote I wrote no, and now you're saying yes. The answer is yes.

So is it no or yes?

[Ashley Gjovik (Pro Se)] (47:11 - 48:18)

I hate this. So I think we need to figure out just like what we're saying is discovery started or not before we can have any other conversations about that discovery. We need to say whether General Order 71 was actually applied, active, and I do owe things under it.

Because if I don't, we just need to follow the normal procedures under federal rules of civil procedure. So I'm not going to say yes or no to stuff until we have an answer whether it even applies or not. Because I can't tell you yes or no if I earnestly think that it does not apply and we're just following the normal discovery process.

And I'm telling you repeatedly, I am more than happy to provide you all relevant documents that are non-privileged, non-competent, whatever, through this process, which includes all, assumably all those documents under General Order 71. So I'm not withholding documents or information. I'm not saying I won't cooperate in discovery.

What Apple is saying is that they want to say that this rule applies and they want to say that I have to do all of that discovery within 30 days. And so if Apple wants to argue that, then let's bring it to Judge Westmore. And I'm not, I don't want you quoting me saying I'm not going to provide documents.

What I'm saying is I don't think that rule applies. So, you know.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (48:18 - 48:26)

We'll not respond to GO71 because doesn't think GO71 applies in this case will only respond to

document requests. Is that fair?

[Ashley Gjovik (Pro Se)] (48:28 - 48:41)

I don't even think it's fair to say I'm not going to respond to General Order 71 because I am telling you, I'm going to give you all those documents. What the difference you're asking is you want me to give you all that stuff within 30 days under the guise of General Order 71.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (48:44 - 48:45)

That's what I want.

[Ashley Gjovik (Pro Se)] (48:45 - 48:52)

And I'm saying I'm not playing that game. I'm going to give you all the relevant documents. I'm going to participate in discovery.

If you think you need something really urgent, send me a request for production.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (48:53 - 49:04)

I just want you to give me the GO71 stuff. This is an employment case. No doubt it's an employment case.

GO71 applies to employment cases. The judge has already said GO71 applies to this case.

[Ashley Gjovik (Pro Se)] (49:04 - 49:09)

Was going to, but then Apple demanded you stay discovery. So again, like Apple's creating all this.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (49:09 - 49:29)

Doesn't matter whether it stayed or not. Now you have to give us the GO71 stuff. Now we've agreed.

There is no more stay on discovery. I don't think GO71 was discovery. I don't think it was ever stayed.

But regardless, now we're agreeing. Discovery is open. You got to give us GO71 or you've got to say, I don't believe GO71 applies and I'm not going to give you GO71.

[Ashley Gjovik (Pro Se)] (49:29 - 49:37)

But this is a straw man because what I'm telling you is I'm going to give you those documents. Okay, so should I change my answer here?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (49:38 - 49:42)

That you are now going to give us the GO71 documents without a document.

[Ashley Gjovik (Pro Se)] (49:42 - 49:52)

Documents described in General Order 71 are documents relevant for this case and you will be getting them through the discovery process. If you would like them urgently, I'm saying you need to send me a request for production.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (49:52 - 49:59)

All right. I don't need them urgently. I just need you to give me the GO71 documents by April 24th.

Yes or no.

[Ashley Gjovik (Pro Se)] (49:59 - 50:05)

That's urgently. That's not the full like year of discovery. So you can send me if you, and you want to justify.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (50:05 - 50:13)

I'm not going to send you a document request on GO71. You either say you're going to give it or and right now you've said, no, I'm not going to give it to you.

[Ashley Gjovik (Pro Se)] (50:13 - 50:28)

Because what I'm telling you is I am not going to give you those documents by April, whatever, unless you give me a request for production. And then I will follow the timeline for that request for production. Otherwise I'm giving you those documents, but I'm not agreeing to the deadline of April, whatever.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (50:35 - 50:44)

So I think I have an answer. I will confirm it back to you in an email. You don't believe that GO71 applies.

You will give us the GO71 documents, but only if we put them in a document request.

[Ashley Gjovik (Pro Se)] (50:46 - 50:55)

If you want them with a 30 day timeline, only if they're in a document request. If you are okay, just following the normal cadence of discovery, you will just get them.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (50:57 - 51:00)

I need a deadline by which I'm going to get the GO71 documents.

[Ashley Gjovik (Pro Se)] (51:01 - 51:02)

Then request for production.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (51:03 - 51:15)

Got it. So I've got, will not respond because doesn't think GO71 applies to this case. Will only respond to document requests.

Not going to give them to us by April 24th, only if we put them in document requests.

[Ashley Gjovik (Pro Se)] (51:16 - 51:34)

No, I will give you all those documents. Period. I'm not saying I will not give you those documents.

It does take a bunch of time though. And for me to expedite it, I need a request for production. So if you need them expedited, I am requesting a request for production.

Otherwise I'm telling you, you will get all those documents for me through this discovery process starting today.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (51:39 - 51:45)

Well, I'll try and put all of that in an email to you and you can explain it. And then we can decide if we need to take it to the judge.

[Ashley Gjovik (Pro Se)] (51:47 - 51:50)

You'll be getting the documents. So like, that should make you happy.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (51:51 - 51:55)

I know, but this case is a year old. We don't have anything yet. This was due years, a long time ago.

[Ashley Gjovik (Pro Se)] (51:57 - 52:00)

I've asked you repeatedly if there's anything you urgently need and you let me know.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (52:00 - 52:14)

No, I know. We need what we asked for in the document requests. That's what we need.

We need what's, GO71 requires. That's what we need. And it's nothing to do with urgent.

They're long past due. And we just need you to get us those documents.

[Ashley Gjovik (Pro Se)] (52:16 - 52:44)

I will work on them as much as I can. I will say though, I am skeptical of that position because Apple's defense is basically, we fired her for this thing completely separate from everything else. Therefore, none of these documents would assumably be relevant, but I am happily gonna provide you all these documents.

Okay, so initial disclosures. I've objected that. I don't think Apple gave me my 26 F disclosures.

Is Apple holding a line at their disclosures? That's their final initial disclosures?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (52:45 - 52:46)

Yeah, what's wrong with them?

[Ashley Gjovik (Pro Se)] (52:48 - 52:53)

It lists like five people who aren't even my bosses. It didn't list the key witnesses.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (52:53 - 53:06)

Those are the, we think of the witnesses. So initial disclosures is, we think these people are the witnesses. Generally, unless you update them, those are the only witnesses you can call at trial.

So we have an obligation.

[Ashley Gjovik (Pro Se)] (53:08 - 53:19)

They're so bad. There's an ongoing joke, but they're like, we better never get deposed. They're funny.

Okay, so if that's your final set, I wanna make sure that we're formalizing that, that you guys are saying that.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (53:19 - 53:32)

Well, it's final for now. And then if we update all through the case, you can update your initial disclosures. But those are the people that at this time, at the time we sent them, we believed were the witnesses in this case.

If we think there are more, we'll update it.

[Ashley Gjovik (Pro Se)] (53:33 - 53:47)

Am I gonna get any additional information now that there's, we're gonna have a confidential order of the decision-making process of terminating me? You gave me a few other names. But it's still a mystery of how all that played out.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (53:47 - 54:01)

But once we have the protective order, you will get any documents we were withholding because there wasn't a protective order. Then you will say, if you decide we've given you enough and you look at that and you look at the privilege log and that should give you what we need.

[Ashley Gjovik (Pro Se)] (54:02 - 54:05)

So you are gonna give me more about the termination?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (54:06 - 54:15)

If we withheld them based on not having a protective order, we will give them to you. If we withheld them based on attorney-client privilege, we will not give them to you.

[Ashley Gjovik (Pro Se)] (54:15 - 54:29)

So I'm asking that right now because if it's attorney-client privilege, we can put that in our letter. If it's, you're saying, if it ends up not being listed as attorney-client privilege and I think we have to have another meeting before I can send the letter about the, hey, this is.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (54:36 - 54:46)

So I repeat, if once we get the protective order, we will produce any additional documents. If there's anything that's privileged, we'll put it on the privilege log and then we can meet and confer on the privilege log.

[Ashley Gjovik (Pro Se)] (54:48 - 54:51)

Can we create a discovery plan, please?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (54:51 - 55:27)

Yes, I have a discovery plan. So we can find this. All right.

So I'm not sure what you think about a discovery plan is, but we want to take your deposition. We would like to pick a date in May that we can do that. And, but that assumes you get the documents by April 25th.

So are you ready for your deposition in May?

[Ashley Gjovik (Pro Se)] (55:28 - 55:31)

Well, I think the question is, when are you ready to take a deposition?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (55:31 - 55:45)

Again, we're ready in May. We'll be, if you get, if we get the documents by April 25th, we would be ready in May. So let's schedule the deposition for May and then we can always take it off if

we don't have the documents.

[Ashley Gjovik (Pro Se)] (55:46 - 55:53)

Okay. Because when I respond, so wait, are you saying you are going to send me a request for production today?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (55:54 - 56:09)

Uh, if I need to, I mean, if I think there's more documents I need, or if I decide to reserve the one I already said, I haven't agreed to do that yet because I don't think I need to. But if I decide to do that, then, uh, let's see.

[Ashley Gjovik (Pro Se)] (56:09 - 56:24)

I'm doing stuff I don't think I need to either today. So if we can both just compromise a bunch to try to get stuff unstuck, that would be wonderful. Um, so if you want to put it on the calendar for May, you know, I don't know if I'm going to be able to get you all that stuff in 30 days.

Part of it's going to have to be responses.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (56:24 - 56:30)

Yeah, but it's been months. So I mean, it's been almost a year. So hopefully you've got it all in place.

[Ashley Gjovik (Pro Se)] (56:30 - 57:07)

I don't know if you've noticed, but I am pro se and I don't have a team of associates. So I'm going to have to go through individually all this stuff. I only start doing stuff when it becomes something right for me to do, because there's a million things that I have to do myself in addition to living my life.

So I'm going to have to sit down and start taking all this stuff and going through every single little document. I have it all, but as you know, it's going to take a lot of time to actually, unless I can borrow some of your associates. Maybe, maybe two or three.

You know, it's going to take a minute. I can't promise right now that I'm going to, I don't know how long it's going to take.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (57:07 - 57:12)

Well, let's pick a date and then, and then if you can't get us the documents, we can change the date.

[Ashley Gjovik (Pro Se)] (57:13 - 57:19)

And then I have literally no money. I can't even buy groceries. So you need to depose me here.

We need to do it on video.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (57:19 - 57:38)

We just do it by Zoom. So how about 20th, 21st, 22nd, 23rd? That gives us a little more time to get the documents.

28th, 26th, 27th, 28th, 29th, 30th.

[Ashley Gjovik (Pro Se)] (57:38 - 58:00)

I wasn't prepared to schedule something today. So I'll put that in my email notes, which ones, but you said between the 20th and 30th? Yep.

For my depositions, is Apple going to have any objections to me using like audio video reporting instead of a court reporter?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (58:02 - 58:03)

We'll have a court reporter.

[Ashley Gjovik (Pro Se)] (58:03 - 58:18)

I know you will. But if I want to do a deposition with a like video recording and Apple gets a copy of the video and all of that, and then if I end up wanting to use it for court, I would probably have to pay for it, a formal transcription or something. But if that's how I want to do the deposition, is that something you're going to object to?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (58:18 - 58:26)

We'll have it videoed. We'll have it transcribed. I don't know if the court reporter allows you to create your own video.

And I don't know if you created it.

[Ashley Gjovik (Pro Se)] (58:27 - 58:29)

Oh, I'm talking about me deposing someone like Dan West.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (58:30 - 58:41)

Oh, yeah. Yeah, you can do a video. I mean, I don't know.

I think you have to have a certified video or something or other to be able to use a video. I don't remember all the rules, but whatever the rules.

[Ashley Gjovik (Pro Se)] (58:41 - 58:44)

I'm doing this the MacGyver way, but okay, cool.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (58:53 - 58:55)

All right. So what else do you want to talk about on the discovery plan?

[Ashley Gjovik (Pro Se)] (58:57 - 59:20)

I was hoping we could like outline the scope, but it sounds like we're probably just going to have to go issue by issue like we are. We've made a ton of progress in this meeting today compared to emails. So we can do it that way.

You're going to send the privilege log. I do think it would be helpful to have an overall discovery plan and schedule.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (59:21 - 59:32)

Just tell me what you're thinking. I think it's a little premature to do a cutoff on discovery and those things, but you tell me what you want to do and I'm happy to talk about it.

[Ashley Gjovik (Pro Se)] (59:34 - 1:00:50)

You're saying you'd be premature to have a cutoff, but then you want all the documents in 30 days. This is where I'm like, what's this timeline we're looking at? Yeah.

So I don't know, maybe now that we've made, we've made a lot of progress today. So maybe we go back and think, I'm going to think more about what it could look like, what it should look like. I didn't even know if we would be able to start discovery today.

So I'm really happy you agreed to that. Thank you. Let's see.

So it looks like outstanding. The only thing I said that I was ready to like challenge today then would be that one thing about the verge, which that's, I'm not ready to just challenge that individually. So I will wait to see what you said this week and get back to you if I have questions or objections about that.

I am saying I'm not going to send further responses to the stuff you sent me out when I believe discovery was stayed and I found the case law that supports that because that's just making the other side do busy work. Apparently that's a thing you guys do. So I don't have to do that.

I was right. But whatever you sent me today, happy to respond.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:00:50 - 1:00:52)

You say you were right. I'm not agreeing you were right.

[Ashley Gjovik (Pro Se)] (1:00:53 - 1:00:53)

I know.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:00:53 - 1:00:55)

Don't try to trick me into agreeing.

[Ashley Gjovik (Pro Se)] (1:00:56 - 1:01:03)

I'm just, I have to talk to myself as I'm talking. Um, so, but whatever you sent me starting today, happy to respond.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:01:03 - 1:01:09)

What am I, what did you want me to send you? I wouldn't think I was sending you anything today unless I decide to resolve the discovery.

[Ashley Gjovik (Pro Se)] (1:01:10 - 1:01:11)

Whatever you want to send me.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:01:11 - 1:01:37)

Otherwise, and I'm starting it. But I'm not agreeing to that. I'm just telling you.

I can choose to do that if I want. And if I choose not to do that, then I will say that you need to respond to the ones we've already said. You said you refuse to do that.

And then the magistrate can decide whether you, uh, do that. But it's a silly thing to bring to the magistrate because- Agreed. Right.

So just answer them. But if you want me to- No, you've got me stuffed today.

[Ashley Gjovik (Pro Se)] (1:01:37 - 1:02:21)

Otherwise I'm, the case was on my side. You know, I looked it up. Case was on my side.

So I'm not going to do something that I think is not right. And the case law supports me not having to do it. I'd much rather focus my time.

I'm getting you these documents now, uh, through a normal way and starting discovery. So regardless if you send me anything or not, we're starting today. So I'm sure I have documents.

I'm sure I have documents. We did agree discovery starts today, right? Though we're going to hold that- Hold discovery.

Hold discovery starts today. So I'm sure I have, I can send a good faith bunch of them to you by

end of the week. I'm sure, uh, uh, you know, I've sent you a few things.

There was a December 23 one when I sent you stuff. I didn't have to. Send me discovery requests.

The one to show you- Emails don't count.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:02:22 - 1:02:24)

Don't send me emails. Send me a discovery request.

[Ashley Gjovik (Pro Se)] (1:02:24 - 1:02:31)

I'll send you, um, since you're targeting to send stuff this week, I will also target to send a first batch of stuff. Good faith this week.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:02:31 - 1:02:37)

I'm not targeting to send anything this week. Just, just to be clear, I may choose to resubmit discovery requests.

[Ashley Gjovik (Pro Se)] (1:02:38 - 1:02:39)

You can use a document production and privilege log.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:02:39 - 1:02:45)

Oh yeah. Yeah. To complete the document production and get you the privilege log.

I agreed to do that this week. I was talking about discovery requests.

[Ashley Gjovik (Pro Se)] (1:02:46 - 1:03:36)

I know. So, and then I will send you an Ashley Good Faith production of something this week to get it started. Whether or not you send me anything else, you don't have to say anything.

And I will just, I will be sending you some documents this week. Um, if you send me requests for production or admissions or interrogatories or whatever, I will happily respond within federal as a civil procedure following those. But otherwise I will just be proactively sending you the stuff that I feel I am obligated to send you through.

Captain! Leave it! Captain!

Quiet! It's a very good guard trail walk. Okay.

So there's that. So I, at this point, we'll wait to see what I hear and get from Apple. Um, I don't have anything urgently to bring to the magistrate now since we've made so much progress today.

Thank you.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:03:46 - 1:04:39)

All right. Well, we will. So the only thing that's pending, so we're going to tell the magistrate that we agreed to the model protective order and then she can enter that.

And then we're going to decide whether to reserve the prior set of discovery or whether to take to the magistrate the issue whether you should have responded to it before. Okay. And otherwise we don't have any.

And then we're going to serve the privilege load this week and the remaining production this week. And we're going to look at, you're going to give me a date to your deposition between the 20th and 30th of May. We've gone through the discovery requests.

I'm going to decide if we're going to supplement our answers to some of the requests. Okay. And I think that's it.

[Ashley Gjovik (Pro Se)] (1:04:40 - 1:04:41)

That was a ton of progress.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:04:41 - 1:04:52)

Thank you so much. And then GOES-71, you're still not going to, you're not going to respond to GOES-71 because you didn't think it applies. But if we put the GOES-71 documents in a document request, you would respond.

[Ashley Gjovik (Pro Se)] (1:04:53 - 1:04:55)

A normal like request for production?

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:04:55 - 1:04:56)

Yes.

[Ashley Gjovik (Pro Se)] (1:04:56 - 1:05:34)

Today, that you sent today. Then yes, I would. I have to say I'm learning a ton from you guys to all the stuff I have to jump through with you guys.

It's a very experiential testing, learning experience. It's like a really terrible externship. So thank you for working through this.

We both made some compromises on here. We'll both think about some more stuff and follow up. It's on Apple, whether you want to bring stuff to the magistrate judge or not now.

My stuff right now, I'll just wait to see what you send this week.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:05:35 - 1:05:36)

Sounds good.

[Ashley Gjovik (Pro Se)] (1:05:37 - 1:05:38)

Sounds great. Thank you, Melinda.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:05:38 - 1:05:40)

Now I got to figure out how to get this recording.

[Ashley Gjovik (Pro Se)] (1:05:41 - 1:05:43)

I think when you end it, it just automatically ends it.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:05:44 - 1:05:46)

Okay. Yeah, but do I get a copy of it?

[Ashley Gjovik (Pro Se)] (1:05:47 - 1:05:48)

Oh, you're probably going to talk to your tech people.

[Melinda (Partner at Orrick, Herrington & Sutcliffe)] (1:05:49 - 1:05:52)

You receive an email notification when the cloud recording is ready.