# Gjovik v Apple 2025-05-02 Meet and Confer Recording

[Ashley Gjovik (Pro Se)] (0:03 - 0:11)

Beautiful. And I know we've had some conflicts about having witnesses, but I did bring a witness today.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (0:12 - 0:31)

I see that. What's your witness? You have to disclose the name of your witness for the record.

I know. Will you allow this one time, this exception? One time exception.

State the name of your witness for the record. This is Captain Jake Ballard. Hello, Captain.

How are you today? Mama being a good girl?

[Ashley Gjovik (Pro Se)] (0:32 - 0:39)

Taking you for lots of walks? All through the night, and he's like, I really don't like this. I want to play fetch.

I want to go outside. And I'm like, hold on, I know.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (0:40 - 0:57)

All right. Well, we have to take care of our pets. I have a Boston Terrier myself.

You have two dogs or one dog? Just one, a Boston Terrier. My name is Bella, and she's beautiful.

Bella? Yes, Bella the Beautiful. That's pretty.

[Ashley Gjovik (Pro Se)] (0:58 - 1:18)

Dogs are the best. I thought it would be more straightforward. The last thing I said was just the questions to ask, and then we can just go through them, even if it's something that maybe we think we've kind of talked about prior.

At least just get a solid yes, no to help us move forward on next steps.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:19 - 2:00)

All right. Well, I just got your email. I haven't had much time to study it.

I haven't eaten yet today, so I can take a bite if you want to skim so I can eat something today. No, please eat. Absolutely eat.

Very important. I skimmed it. I just don't have answers to all your questions, but I thought we

should start with a protective order because that seems to be the most urgent.

I'm a little surprised because I have both in writing from you and orally during our last meet and confer that you were fine with the model protective order, and that's why we were going to submit it. But then it sounds like, and I just asked for your permission to send it in, and then it doesn't sound like you're fine with it anymore.

[Ashley Gjovik (Pro Se)] (2:01 - 2:34)

That's a very small window of occurrences, disregarding everything that happened for years prior and everything that's happened in the weeks since. As you know, you found the most favorable view of your current argument, and I was open to potentially just acquiescing on it prior to all the most recent threats and aggression. But even then when I said, should we do it, you guys didn't respond.

We actually expired that window after our last meet and confer, because you guys wouldn't respond whether you wanted it or not. You wanted to add something about clawbacks for privilege, and then just didn't respond at all. So I don't think you can put this on me.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (2:35 - 3:00)

Well, it said in writing and orally that you were fine with it, so I have to get your permission to send it to the judge because you had said you were fine with it, that's what I had asked for. But whatever. We want the memorial protective order.

You want us to take—and you don't want it. I guess you now want us to take it to the magistrate with a three-page document.

[Ashley Gjovik (Pro Se)] (3:00 - 4:55)

I would prefer that we don't have to escalate it at all. I feel like there's some very basic fundamental things that we still have not talked through that might even eliminate the need for such a drastic remedy like a protective order. Like, for instance, Apple's still not disclosed to me if they're holding back any docs under that order, if so, what they are, what the justification is of that privilege.

You know, that's—if there's not even—I think at one point you said you were done producing, so if that's true, there's no documents, why do you need the order? If you are holding back stuff, what exactly is the justification? And this goes—this is extremely critical now.

Again, that acquiescence was prior to Apple's national settlement with the NLRB over their confidentiality policies and then immediately violating it multiple times to me, at least. So, like, there's a lot, you know, we can't just package up one statement in isolation when you wore me down after three years. There's a lot of concerns, but again, like, I don't even know if we need this order.

It's my position why I'm so—why I get so confused why Apple is pushing so hard on something so blunt and broad and severe when we haven't even talked about could we use redactions? Like, if I know what kind of documents you're saying you don't want to release, which you won't tell me, but if you were to tell me, here's an example of what that would look like, we could talk through it potentially of, like, well, I don't need those code names. You can react those code names unless I need to come back later and ask for more, but we can do it later if we have to do that.

Like, that seems simple. The very beginning, I even—because I know Apple, I worked in Apple legal, I know how they are, so I volunteer. I could come to an Oracle office and just look at the stuff in your office of the most contentious stuff and then ask specifically, like, that is so—me offering something that is, like, supposed to be my right to get this stuff to begin with.

So I've been, like, trying to find ways to compromise. They'll give Apple some of the stuff it wants, but I can still get access to the information I need and try to figure out the case strategy and understand what Apple's case strategy is.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (4:57 - 5:53)

Okay, so first of all, yes, we are withholding documents pursuant to the lack of a protective order. We've produced the documents that were not subject, that are not confidential, that we don't think need to be produced pursuant to protective order. So it's not correct that we've agreed we produced all documents.

We've only agreed to be produced all documents other than those that we intend to produce under a protective order. Secondly, protective order is standard in all cases. I have never had a case where we didn't have one.

Third, you wanted an example. For example, one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one.

I need to show you the entire document so that you can agree that that is the document that you signed. And so a reduction doesn't help because— I signed.

[Ashley Gjovik (Pro Se)] (5:53 - 5:58)

You won't give me a copy of a contract I signed without a confidentiality order about the contract.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (5:59 - 6:05)

I will not give you a copy of the consent order, the consent agreement that you signed without a confidentiality agreement.

[Ashley Gjovik (Pro Se)] (6:05 - 6:43)

That's just one example of many— That's exactly why you won't tell me this stuff and why I want to know it. Because I'm like, yes, we will contest that to a judge because that's also like the nexus of the case. If you can't say some weird contract that probably has a bunch of illegal terms that I was coerced into signing with armed guards in a parking lot on a 100-degree day is somehow confidential and I can't even tell people what's in this agreement I signed and you won't give me a copy.

I think that violates contract law, employment law, labor law, probably like Dodd-Frank sock stuff. So each of these are things that I think are ripe issues to bring in front of the court for the purpose of public policy conversations.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (6:43 - 6:46)

And you're absolutely entitled to do that under the protective order.

[Ashley Gjovik (Pro Se)] (6:46 - 6:54)

But doesn't that give you kind of this blank until it is resolved I can be jailed for talking about whatever it is?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (6:55 - 7:02)

I don't know if jailed is the right word, but you would be subject to the protective order. Yes, you could be held in contempt if you violate it.

[Ashley Gjovik (Pro Se)] (7:02 - 7:19)

That's prior restraint. And if I know you're going to do prior restraint on stuff that I believe in my heart of hearts violates public policy and the law, like I would not intentionally enter into that kind of agreement with Apple again. I did that a few times and now we're here sorting that out.

I'm not going to do that again.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (7:19 - 7:39)

So we want a protective order. We want the model protective order. If you don't want to enter into a protective or any protective order or the model one, then feel free to write the beginnings of the three-page letter.

We'll add our three-page letter, the rest of it to the three-page letter and we'll let the judge decide.

[Ashley Gjovik (Pro Se)] (7:39 - 7:44)

So we can do that, but I think we haven't addressed like why would redactions not address your concerns?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (7:44 - 8:12)

Because I need to show you the unredacted document for you to agree that it was the document you signed. That's just one of them. There are other things in there that are confidential and we want to produce them to you.

We think you're entitled to them and we'll give them to you, but we can't have you not agreeing that they remain confidential and that you'll use them pursuant to the protective order. That's all it is. This is really not a big thing.

[Ashley Gjovik (Pro Se)] (8:12 - 9:28)

So I would feel more comfortable, I think. I can't go into stuff just like, I assume Apple's going to do the right thing at this point, as you can imagine. So I just need some proof though.

If you could give me a confidentiality privilege law, which maybe you were even required to give me if you're withholding this stuff, I don't know. But actually detail like you did with the attorney client one of what the documents are. If I see stuff and I'm like, okay, that's in the realm of Apple normalcy.

I'm not going to fight that stuff. Maybe I let it go. But if I see stuff, like I saw with the attorney client privilege law, where I'm like, that's like seven motions coming out of this now.

I need to be able to tell what kind of stuff I need to deal with now, as you know, expert litigator. So I'm going to be really hard on this stuff because some of this stuff is intentionally you guys trying to go in and block me from not only my litigation advocacy, but my public policy advocacy about the cases. And so I see that I'm checking you.

I'm saying no for the joint letter. Yes, I will file a joint letter with you regardless. But I would like to talk more about like the confidentiality log, the narrow protective order, the redactions, also the IPA.

Why does my intellectual property agreement, especially for a contract you say I signed under my employment, if that is actually confidential, why does my IPA not cover that?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (9:28 - 9:39)

Because you'll recall that the whole issue in this case is that you posted documents in violation, what we believe is in violation of your IPA. That's what the case is about.

[Ashley Gjovik (Pro Se)] (9:39 - 9:42)

So if I actually violated it, you could sue me.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (9:44 - 9:45)

No.

Turboscribe AI Transcription

[Ashley Gjovik (Pro Se)] (9:45 - 9:55)

A freestanding agreement, right? You can sue me for leaking trade secrets, appropriating trade secrets, breach of contract. You just have to show damages, actual harm, and that what I did was actually a violation.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (9:56 - 10:07)

We are trying to protect our private and confidential information, and we want to produce it to you, and we want to do it through a protective order that is very standard in these types of litigation.

[Ashley Gjovik (Pro Se)] (10:07 - 11:09)

The way it's being interpreted is not standard and is contrary to every single piece of academic and litigation writing and judges writing and everything I've seen is this is the exact opposite of what these orders are supposed to be used for. And so you guys are very cleverly doing this is normal, this is modeled, but we're going to interpret it as. And so that's why I'm really putting my foot down of like, I'm not necessarily against it as a process generally.

I'm sure it works fine for cases, even there's probably employment cases where based on the situation, it might not be abused. But it is right for abuse here. It is already being used for abuse.

I've already had to file multiple charges to the federal government about this. So, you know, again, I would like to detail, like, are redactions sufficient to cover confidential information? And this could be you redacting an entire document as a starting point.

But like, if not, why are redactions not good enough?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (11:10 - 12:20)

We do not believe redactions are sufficient. I've given you one example. I want to show you a full and complete document and have you authenticate that that is a document that you signed.

There are many other documents that contain confidential information that you're entitled to see, that we want to give you, that are about this case, but that are confidential. And we want you to agree to keep them confidential. If you don't want to sign a protective order, that's fine.

You need to tell the judge why not. But I've been practicing law for over 40 years. I've never had this issue come up before with anybody subjected to a model protective order.

I'm not trying to interpret it. I just want it to be signed and entered. Then if you think that we, and then we will give you all the documents.

The way it works is you sign the protective order, the court enters it, we send you all the documents. Then you say to the judge, or you say to us in a meet and confer, this document should not be marked as confidential. And if we agree, then we'll take it out of the protective order.

If we disagree, then it goes to the judge, and the judge decides if it's within the protective order. That's all written in the protective order. There's a whole process for doing that.

[Ashley Gjovik (Pro Se)] (12:20 - 12:26)

I understand, but it gives you guys a lot more arena to harass me and accuse me of stuff and do all sorts of stuff.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (12:26 - 12:31)

I'm not doing anything. I'm just asking you to sign a protective order, and then we will give you documents.

[Ashley Gjovik (Pro Se)] (12:31 - 13:54)

I'm not signing another contract. Here's the thing. We can do the letter, you can ask.

If the court grants it, I'm pretty sure I will appeal it. Like, I will intervene because I'm not allowing Apple to put any other further restriction on me after everything that's happened the last how many years, and everything in this litigation. It's not fair play.

It's not going to be fair play. There's no reason to think it'd be fair play, and so I'm not allowing that to be put on me. We'll write the letter, but you said one, a document authorization.

That seems like something you could do with a request for admission. With a targeted, limited, little protective order, we could just stipulate to ourselves. If you're like, we want you to authorize this, but we don't want you to share this document, you could appeal that later, but can you just...

And then I'd probably be like, sure, fine, for the sake of authorizing. And if it is that document you mentioned prior, that's not even the document, the ones from 2017. So like, okay, it'd be good to get these conversations going.

I think there's ways to do this in a much more limited, constrained way. If you're saying that kind of agreement in an order where you could later say she lied and then she leaked it is not good enough. We need a protective order.

You're just saying we want a protective order because we want an easier way to get her into court jail. Like, I don't know what that is. And then what are the other examples?

Okay, document odd doesn't make sense with redactions, but then what are the other ones and

why wouldn't they make sense with redactions?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (13:55 - 14:08)

Yeah, I'm not going to go through every document that we believe is subject to the protective order. That's not what it's about. You get the protective order, we send you the documents, you disagree, we meet and confer, we take it to the judge.

That's the process.

[Ashley Gjovik (Pro Se)] (14:08 - 14:23)

Assumedly, if you're withholding documents, as you said, pending a protective order, you have already outlined each of these documents and why they are confidential and why they require a protective order. I am just asking for at least some summary of that information you would assumably already have on hand.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (14:24 - 14:25)

That's not the way it works.

[Ashley Gjovik (Pro Se)] (14:26 - 15:02)

It sounds like most of the time lawyers acquiesce to you guys and I understand why. I'm understanding so much about the economics of litigation that they can't make any money if they fight you on even 95% of the stuff you guys bring up. But you know, I'm in a different situation, so I'm going full public policy on all of this.

I'm broke anyway, my life's over anyways, so let's do this the right way. You're saying, and I want to say for these, you're saying point blank redactions aren't good enough, point blank the IPA doesn't cover stuff, won't cover this stuff, whatever is in this stuff you're currently holding back is not protected by the intellectual property agreement, is what you're saying?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (15:03 - 15:17)

No, that's not what I'm saying. I believe it is protected by that. But in this case, I want a protective order.

In addition to your IPA, in part because you already violated the IPA, but also that that's the way we handle it in litigation.

[Ashley Gjovik (Pro Se)] (15:18 - 15:48)

I don't want no tradition or consensus or status quo stuff, first principles of litigation. You're saying, okay, you're saying I breached my IPA according to you guys, and you're saying that's why you're fired and you sent emails about that. You have taken no action against me related to that.

It's not even a counterclaim, so that's kind of weak. And then also, is there any even like one example of me so far sharing something that you think was confidential that wasn't confidential like in the last like year?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (15:48 - 15:54)

I haven't sent you the confidential documents yet. And I have no idea who you shared documents with, sorry.

[Ashley Gjovik (Pro Se)] (15:55 - 17:50)

Held back all sorts of stuff that I have that I've been tweeting unredacted and sharing stuff and sharing with the press. So like we're clearly, and so what I'm saying, we're clearly not meeting, I understand why you want that, but what I'm gonna make clear in my side of this joint letter is this is Apple unilaterally trying to shut me up publicly. It's trying to get the court to do a prior restraint on me again with threat of incarceration if I was to violate it again for talking about my activism and public policy and these cases, and that's not cool.

And I don't know if you saw, but yesterday, this exact same courthouse referred Apple to, referred Apple's case to the USDOJ for a criminal investigation for obstruction of justice. So like, I don't think the mood in the courthouse is gonna be as chilled as you're maybe hoping it is normally. Like I think the situation raises, again, like I'm not just outright saying no, I'm like, let's talk about redactions.

Let's talk about the IPA. Let's talk about showing the documents you're withholding. Like if the documents you're saying you're withholding is like five things and it's things I don't even need, then why would I have that agreement put on me and enter all that stuff and go through all that drama if I don't even need that stuff?

You're giving me no information about what you're even holding back other than that one example, which sounds like was a fraudulent statement to the DOL about a document that wasn't actually the agreement that was signed. Like that's the one example. So I'm hoping we can like simplify and just talk about like what documents are being held back?

Are there other ways to get them forward? And if some type of protective order is needed, what are the specific like business requirements that you think that protective order is a solution for? And are there other solutions we could design for whatever your business requirements are that are not such a huge ultimate, like the ultimate major response to that type of situation that's zero to 60?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (17:51 - 18:06)

Okay, we want the protective order. It is the model. We will, once it's entered, we'll give you the documents.

If you disagree, we will submit a three-page brief to the judge. We'll write our page and a half. You write your page and a half and the judge will make a decision.

[Ashley Gjovik (Pro Se)] (18:08 - 18:18)

So you're refusing outright to talk any further about redactions or IPA coverage or any type of non-protective order type agreements to protect information.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (18:19 - 18:40)

Right, I believe that that is not sufficient. The IPA is not sufficient and redactions are not sufficient to deal with the issues that we have. We would give you too many redactions if we redacted out all the confidential stuff and that's not the purpose.

The purpose is for you to see the documents, not to see big black pages of documents because- What about when I said the in-camera review thing?

[Ashley Gjovik (Pro Se)] (18:40 - 18:56)

Like I go to an ORC office and you just show me whatever 20 documents. I want to show them to you in your deposition and that would become- In a deposition without me signing a confidentiality order, which would then also make the deposition confidential?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (18:57 - 18:57)

Correct.

[Ashley Gjovik (Pro Se)] (18:57 - 19:09)

If a reporter- Oh Melinda, you guys are so good at this. Like this is so exhausting and frustrating because you guys are like, wrote the playbook on every single part of this. Absolutely not.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (19:09 - 19:57)

Okay, so it is typical in cases that we handle that there are documents that are subject to a protective order and testimony that's subject to the protective order and if there are documents and testimony that's subject to protective order, we mark those documents and that testimony as subject to the protective order. The protective order deals with all of this. So that is the way it's handled.

If there is confidential stuff in the deposition or exhibits, then they are marked as confidential under the protective order. The rest of the deposition is not. The rest of the deposition that's not confidential is not subject to protective order.

I'm just talking about me in this case.

[Ashley Gjovik (Pro Se)] (19:57 - 20:09)

No, I spend a lot of time reflecting just on workers and like the power dynamics of all of this. I digress. Okay, so you're also saying then if no protective order is granted, that you're going to cancel the deposition?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (20:11 - 20:17)

If there is no protective order at all, I haven't even contemplated them. But no, I will.

[Ashley Gjovik (Pro Se)] (20:17 - 20:31)

You are planning that some portion of the content of the deposition you want to include documents that you think are under the protective order. And so if you would not get that protective order, that content would at least not be part of the planned deposition.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (20:31 - 20:53)

Correct. We would take that issue up with the court and figure out a way for us to use documents that we need in this case. But I can't believe a court will not enter the model protective order.

So I have not thought about what might happen if the court doesn't. But if it doesn't, then we'll deal with it at that time. That's what we deal in litigation.

[Ashley Gjovik (Pro Se)] (20:54 - 21:07)

Yeah. Okay, so for those specific documents of the deposition, is there any other way that you are willing to deal with them confidentiality-wise other than a blanket protective order?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (21:08 - 21:10)

I hadn't. No, I don't think so.

[Ashley Gjovik (Pro Se)] (21:11 - 21:13)

Can I get a yes or no?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (21:13 - 21:33)

Yeah, no. No, I do not think so. I think that a protective order is needed in this case, and I think we should use the model protective order of the court.

And I cannot think of any other way to produce documents to you that we consider confidential other than through a protective order.

[Ashley Gjovik (Pro Se)] (21:34 - 21:47)

I understand your position. Okay, so you're saying no for those documents. Are you going to tell me, I asked for a list of which documents you're withholding until you get a confidentiality order, and you are saying no, you will not give me a list of documents?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (21:48 - 21:57)

That is correct. I will not give you in advance a list of the documents that we intend to withhold pursuant to the protective order.

[Ashley Gjovik (Pro Se)] (21:59 - 22:07)

Okay. And that's not by document name, not even by groups of documents, not even general information of how many documents as of now?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (22:09 - 22:10)

Would that make a difference?

[Ashley Gjovik (Pro Se)] (22:10 - 22:10)

Yes.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (22:11 - 22:15)

Okay. So would you agree to the protective order if I told you the number of documents?

[Ashley Gjovik (Pro Se)] (22:17 - 22:33)

I would incorporate it into my consideration of your request for a protective order, and it may, depending on the outcome of your answer, cause me to lean towards being more agreeable, or perhaps the opposite, depending on what the outcome of your answer is.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (22:34 - 22:48)

Okay. So if I, what you're asking for is send me the list of the number of documents you're withholding pursuant to the protective order, and then you would consider whether you would enter into the model protective order.

[Ashley Gjovik (Pro Se)] (22:49 - 23:54)

Until we're done meeting and conferring and file our joint letter, I am open to negotiating and talking through it and meeting and conferring. So if you can give me any additional information that I don't currently have, like the number is such a bare minimum thing, like more than that would be great. But if you can appeal to, I'm hyper-logical.

I worked at Apple where everyone's just harassing each other all the time but I got stuff done because I'm logical. So if you can appeal to me with logic of why something makes sense and is

practical, there's a good chance I might come around to it. But if you just don't tell me any information, like, and I'm kind of have to assume worst case at this point.

So like, convince me. You know, maybe, maybe I will be willing. So if you're like, we're holding back three documents.

That's all we plan to hold back. And then we're done. And the documents are just these agreements we want you to authorize.

I might decide it's a better use of everyone's time to like, maybe acquiesce on that. But if it's going to be this ongoing thing with a bunch of stuff and a bunch of fighting. So I need more data input into my database brain, please.

Okay.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (23:57 - 23:59)

All right. Should we move on to discovery plan?

[Ashley Gjovik (Pro Se)] (24:00 - 24:04)

Yeah. So, okay. So for protective order, we're going to keep me in conferring a bit.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (24:05 - 24:18)

I'm going to decide whether I'm going to tell you the number of documents. And then you will tell me shortly thereafter, because we have got to get this entered. So we can go ahead with the deposition.

[Ashley Gjovik (Pro Se)] (24:19 - 24:37)

I'm going to file a joint letter by the 9th. And if I don't file it, and you file a unilateral, I'm planning on filing it with you. I'm just saying until then, as all of the guides and we're entrusted to say, we should continue to meet and confer and see if we can meet some kind of agreement or see each other side of things to avoid having to file it.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (24:39 - 24:49)

So I will look into whether I can tell you the number of documents and we agree to file the joint letter by the 9th. Do you want to start it or do you want us to start it? Or how do you want to have it?

[Ashley Gjovik (Pro Se)] (24:49 - 25:22)

You can start it. I mentioned some of the stuff I felt, I'm going to have to be just 100% 9th circuit brief until I file it on the 6th. So once I'm out of that on the 6th, then I'm all you for 7th to 9th on these letters.

But I'm so behind on 9th circuit because all this stuff that's been happening the last few weeks in this, in the NLRB case. So, but yes, I will. So if you want to do a first draft, that would probably be helpful.

Discovery plan. We need like an actual written, stipulated discovery plan. It's normal.

There's like drafts of them. I attached some from Westlaw, normal.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (25:22 - 25:37)

I know, but look at the rules in the Northern District. So we have done that already. That's what the joint case management conference statement said.

That is the Northern District version of the discovery plan. It's right there in the joint case.

[Ashley Gjovik (Pro Se)] (25:37 - 25:40)

And it says it twice, even after those, that we still need a plan.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (25:41 - 26:18)

So we have complied with the 9th circuit rule, with the Northern District rules on discovery plan, we believe, by including that information in our joint case management conference statement. If you want to prepare, and this is exactly what we discussed last time. If you want to prepare something else, by all means, prepare it.

I think we've complied with our obligations under rule 26. And so if you think not, then send me what you're looking for. Send me a document that you want us to sign, because I think we did all that in our joint case management conference statement.

[Ashley Gjovik (Pro Se)] (26:19 - 26:54)

OK, I sent a bunch of examples in this latest bit. If you want me to draft one of a formal stipulated to Judge Chen with the stuff that we can just talk about the dates, we can do that. I also included a stipulated, I want to ask him for our next upcoming hearing to issue a scheduling order.

We don't have a hearing date still. He was supposed to do that a year ago and then forgot. So I want to see if you're willing to stipulate to a schedule.

I can incorporate that draft. I emailed into this draft I'm sending for the discovery plan. So it can be a stipulated discovery plan and hearing schedule and ask him if he can officiate some of that.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (26:54 - 27:00)

Sure, I'm always happy to that. I'm not sure when he's setting trial dates. I'm not sure.

Turboscribe AI Transcription

[Ashley Gjovik (Pro Se)] (27:00 - 27:02)

We have someone coming up in June.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (27:02 - 27:10)

Yeah, so that's usually, we have a case management conference and the judge does all of that at the case management conference. So I don't know that we need anything before that, but.

[Ashley Gjovik (Pro Se)] (27:10 - 27:12)

We didn't schedule one this time. So I thought it would be good.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (27:12 - 27:33)

No, I know, but I, because we didn't have the pleadings. Now the pleadings are done. We can now move forward to scheduling the trial date.

So that usually would come up at the case management conference. I can't remember if we have to submit another joint case management conference statement beforehand, but if we do, we will. And then he will set the trial dates and all the other dates at the conference.

[Ashley Gjovik (Pro Se)] (27:33 - 27:46)

How about this? So we have that upcoming one. We can joint motion to, hey, we want to do a case management check in also with this, please.

We skipped it over last time. And in that we can include our stipulated schedule order and stuff and discovery.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (27:46 - 28:01)

That's all is, that's in the joint case management conference statement. That's what I'm saying. You're calling it something different than the way that we call it and the Northern District calls it.

So let's see. Is that on the 12th?

[Ashley Gjovik (Pro Se)] (28:02 - 28:23)

I believe they moved it to June 12th. Yeah. So by the 9th, I can have the draft ish for you on that 9th.

When we're finishing all of our stuff, if that looks good, I can just, we'll send it to him and just say an admin request to add case management update to the hearing and discuss proposed stipulated schedule.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (28:24 - 28:27)

OK, well, why don't we do a joint case management conference statement then?

[Ashley Gjovik (Pro Se)] (28:29 - 28:32)

We can do that. I still want to attach an actual plan, though, discovery plan.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (28:32 - 28:34)

But yeah, like the ones I got from last time.

[Ashley Gjovik (Pro Se)] (28:34 - 28:35)

That's the last lot that I attach.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (28:36 - 28:46)

Right. You're welcome to send that. I've never done it before in the Northern District.

It's not the way we do it, but there's no reason that I can't look at it if you want to send me one.

[Ashley Gjovik (Pro Se)] (28:47 - 29:12)

Thank you. OK, I will. And then we can plan on doing a proactive joint case management statement for the June 12th-ish hearing.

That sounds great. Is Apple planning at all to update their initial disclosures or voluntarily update their answer based on all the information in that privilege log that shows people that were not disclosed?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (29:13 - 29:56)

OK, so there's a number of things in there. Let's talk about the answer. We believe the answer is adequate.

That, I believe, is the motion on the 12th. Is that correct? Yes.

So the judge will decide on the 12th if the answer is adequate or not. If he thinks it's adequate, we don't need to amend it. If he thinks it's inadequate, we'll amend it.

OK, so that was one of them. The other thing is on the initial disclosures. We believe the initial disclosures are adequate.

We supplemented them, I think, once. Each of us can always supplement them as the case goes on, but right now we don't feel a need to supplement.

[Ashley Gjovik (Pro Se)] (29:57 - 30:32)

OK, so if I'm telling you, I'm going to complain again that I still don't know exactly what the

process was leading to me getting fired, who initiated what decision, who was behind it, the privilege log just opened even more questions and doors. So is there any willingness at all to revise the initial disclosures for my request for witnesses involved in the retaliation, termination, pretext, all that stuff, with, like, slightly more information of the date ranges involved, or the ways they were involved, so I can actually figure out who to send my deposition and interrogatories to.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (30:32 - 31:03)

So the initial disclosures, which we gave, is the name and address of every witness likely to have discoverable information that they may use to support the claims or defenses, identifying the subjects of the information. So that's what we did. But there's a bunch of people that were never on that list that are on the privilege log on critical emails about- These are the people that we believe are the people who have discoverable information that we're disclosing.

If you want to put more names on your list, you're welcome to do that.

[Ashley Gjovik (Pro Se)] (31:03 - 31:21)

But this is our list, and this is what we think- When you're saying discoverable, let's hone in on this, you're saying, there's probably other people, but anyone else that was involved, we are claiming privilege. And so we are not going to have discoverable documents from those people even if they clearly were on emails about this, because we're claiming privilege.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (31:21 - 31:38)

Well, it's discoverable information that we may use to support our claims or defenses. So the disclosure under 26A1A is who has discoverable information that we believe we may use to support our claims or defenses.

[Ashley Gjovik (Pro Se)] (31:38 - 32:26)

For your defense only, okay. So then when I do a request for production and say, hey, I want all this, and then you guys said, no, but- And then now you have all the privilege of saying we're not going to tell you anything about this. I'm still- So this is a novel situation.

It's probably not that novel for like your guys' cases because you're like, this is like litigation, like class 501. Like you guys are doing such wild, complicated stuff. But like, I need to know what happened for like all prima facie elements of my case.

You guys are making it very, very difficult for me to get to that information. So my request for production that was denied, that goes to one of my letters that I want to send asking, hey, like this privilege log, one, oh, do you want to talk? Can we talk about the privilege log?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (32:26 - 32:29)

The privilege log, yes. So I'm happy to talk about the privilege log.

[Ashley Gjovik (Pro Se)] (32:30 - 32:43)

If there's no like attorney involved and your guys' answer and all your defenses previously said that there was no, like Apple was doing just everything normal and I was in trouble and there was no threat of litigation until like August, but you guys are claiming privilege back to like March.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (32:44 - 33:01)

Right, so there's a slight misconception on your part, I think. One is you thought the privilege log only related to termination and that's inaccurate. Apple is entitled to get legal advice on issues unrelated to the termination and did so.

[Ashley Gjovik (Pro Se)] (33:01 - 33:02)

Or retaliation.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (33:03 - 33:23)

My case is a retaliation. No, not retaliation. Anything that it wanted to get legal advice on, it can get legal advice on.

And I believe you were making, there were some things that came up from as early as March that you were involved in that Apple sought legal advice on. Unrelated to the termination.

[Ashley Gjovik (Pro Se)] (33:23 - 33:25)

Because expecting litigation.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (33:25 - 34:11)

Well, that's what product, but attorney client is different. Attorney client is, did the client talk to an attorney about an issue? Also, there's not, it doesn't have to be, the attorney doesn't have to be on the email.

For example, if I go to a client and I say, please go and investigate this issue so that I can give you legal advice, the person I speak to can then go out and investigate it and can talk to other people and then comes back to me and says, this is what I learned when you asked me to investigate it and then I can give legal advice. So it doesn't have to be that the attorney is on all the communications as long as the person who was doing the work was acting under the direction of counsel.

[Ashley Gjovik (Pro Se)] (34:11 - 34:32)

I'm sending you an order again. This is from also our courthouse. This one was from December,

also in the Epic Games, which is not- Okay, I'm not involved in Epic Games.

They complain that Apple can't just vaguely assert attorney client privilege on everything. Like it's a fog, he says, like a fog that rolls into the room.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (34:33 - 34:35)

And so I- I know nothing about the Epic Games case.

[Ashley Gjovik (Pro Se)] (34:35 - 35:06)

That's why I encourage you to read that decision, that order I just sent though, that's from our courthouse, which should give a preview of their kind of position on some of this stuff. And so I prefer to not have to challenge you guys with letters and fighting and wasting the court's time. I'd rather if you guys are willing to step back and at least try like maybe a slightly amended version.

We'll do some baby steps of stuff that, you know, you'd expect you probably would lose in an argument in front of a judge about whether it's actually privileged or not. Like maybe we can, we can find some compromise on here without having to actually file a bunch of letters.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (35:07 - 35:37)

Okay, we believe that what we put on the privilege log is privileged. If you want us, if you want to pick out something and say, why is this privileged? You didn't explain it clearly enough in your privilege log.

I'm happy to talk to you about that. And I've given you the reasons why things can be privileged even before many months before your termination. And I've explained why things can be privileged even if there isn't an attorney on an email.

[Ashley Gjovik (Pro Se)] (35:37 - 36:03)

You've explained why Apple views that it is a potentially reasonable argument to make such an argument. But I think it'd be a good, I think, you know, exactly the stuff we're going to be hashing out for the next couple of years. So I think getting a response on each of these clearly of your position, that sounds like a ton of work.

I'm sorry, but you know, otherwise, I don't know how else we move forward other than just making the judge happy to pick it all apart. So if I can get more information from you, I can file some.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (36:03 - 36:42)

I've given you the privilege log gives you the information on each document. I have answered your questions. Generic generally on why there might be privileged documents from before the

termination from months before and why there might be privileged documents, even if there's not an attorney on it.

If you have specific concerns that you want to raise, I'm happy to look at that particular document and explain further if you want further information, why it is privileged. But I would have thought that you could look at the very detailed description we gave for the on the privilege log, that explains why it's privileged.

[Ashley Gjovik (Pro Se)] (36:42 - 37:55)

I turned into a database. I have like a million follow up questions about all of it. So much stuff.

But like, let's let's ease in. This sounds like a reasonable first step of dealing with this situation. So I will go through and pick my top.

Like, can you tell me more about this one specifically and explain why I have questions? And then if you can respond and provide more info, that's that's a very good next step. I still am kind of concerned, though, about like, you know, taking time bomb of I need to schedule my depots and our auditories and stuff.

So like, I need some help from you guys. And so there's like, we've kind of lost mechanisms. You've done a very good job of that.

I don't have a clear mechanism to get this information. But instead of having to file a bunch of stuff, trying to find creative ways to get it, is there anything you guys can just like direct me towards like who the key people were? And then also, like, if I send if I would want to depose Deborah Rubinstein a thousand percent, because I told her about getting sick by the FAB back in like 2020.

And then she's on all this stuff following, which is if I was to send her stuff, would you allow her to answer? Or are you going to claim attorney client privilege on anything she would say?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (37:56 - 38:11)

Pretty much anything she would say that I can think of would be privileged. And so you would not be able to take her deposition because there's lots of case law out there that says people can't take depositions of attorneys because they don't have any relevant non-privileged information to give.

[Ashley Gjovik (Pro Se)] (38:13 - 38:48)

I need to look because if I send you a request for a depo and you deny it, and then I lose one of my depos, I'm not going to do it. But I need to get you to like say this directly because I'm going to challenge it because there's also a ton of case law I found that you can't put lawyers on stuff at the beginning for a cover up. And if you're doing a cover up and bring lawyers intentionally trying to do privilege, then all of that's thrown out.

And actually there's great evidence against the defendant. So like, this is something we really we're going to have to hash this one out. She's going to be super key.

The other one I had asked you guys about is like Yannick. I need to depose Yannick. He sent that email.

He doesn't work at Apple anymore. Are you going to make him available or am I going to have to file for a subpoena?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (38:49 - 39:10)

I haven't asked about him because I've never heard from you whose depositions you want to take. So Yannick is one whose deposition you want to take. I will certainly find out from Apple whether they are going to produce him or whether you need to subpoena him.

[Ashley Gjovik (Pro Se)] (39:11 - 39:13)

Same question for Antonio Ligueras, please.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (39:13 - 39:14)

What was that?

[Ashley Gjovik (Pro Se)] (39:14 - 39:16)

Same question for Antonio Ligueras.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (39:17 - 39:17)

Antonio.

[Ashley Gjovik (Pro Se)] (39:18 - 39:24)

He was the head of Corporate Employee Relations. Mr. Suicide Nets. He set up the Suicide Nets in Beijing and then was leading employee relations.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (39:24 - 39:25)

Yeah, but that doesn't have anything to do with this case.

[Ashley Gjovik (Pro Se)] (39:26 - 39:27)

He was, he...

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (39:28 - 39:31)

The Suicide Net in Beijing has nothing to do with this case.

[Ashley Gjovik (Pro Se)] (39:31 - 39:46)

Oh, no, it is because I complained that he was doing that and we scoffed about it. And then Department of Liberty But that's, that wouldn't be a... for dismissing my case thing.

I was harassing him. So actually, it is part of it. That was brought in.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (39:47 - 39:56)

Anyway, so a complaint about setting up a Suicide Net in Beijing would not be a complaint of illegal activity. And I don't believe that's the subject of your lawsuit. I don't believe that's...

[Ashley Gjovik (Pro Se)] (39:56 - 40:34)

Well, you can't say it's not relevant when it's something he and I talked to directly when I was coming to God that I was realizing Apple is not going to do anything to help. And when I talked about it, I was like, you're Mr. Suicide Nets and now you're pretending like you're going to help me. And we had a lovely conversation about how I was very distressed because mostly Apple was lying to me.

And I kept saying if they're going to act like this, like some of these corporations act, they should have just told us instead of misleading us. And he actually said that that marketing makes his job a lot harder. And then if you notice, he kind of dropped off and now he's a student at a university.

It seems like he's also over it. So I'd love to talk to him. Michael Steger, third one.

Michael Steger, no longer at Apple. Do I have to subpoena or is he going to be made available? He was the HS manager at the office.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (40:35 - 40:37)

I'll ask about those three people.

[Ashley Gjovik (Pro Se)] (40:38 - 40:40)

Do you want an email about that specifically the trip or driving?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (40:40 - 40:42)

No, I've made a note.

[Ashley Gjovik (Pro Se)] (40:46 - 40:53)

Is there like checking you can do with the Rubenstein thing to see if they would let me talk to her at all? Or do we kind of know already that she's going to be a no?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (40:54 - 41:02)

I can find out. That's the fourth one you want to take is what you're saying. I can find out if

there's any information that she has that is non-privileged.

[Ashley Gjovik (Pro Se)] (41:03 - 41:41)

And specifically, I'm going to want to talk to her and get her, and maybe this is just interrogatory instead of depo, but that I did talk to her in 2020 and I told her about what happened and talk to her about the Apple office being on a Superfund site. Like we had a conversation in November of 2020 that I don't think she can claim privilege. Okay, so that's four.

This is huge progress, Melinda. Thank you. Let's see, ESI.

There's ESI plans, draft plans. I want to try to include that in my draft discovery plan. I'm going to send you guys.

Do you guys have any objections to the ESI?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (41:41 - 41:44)

I don't know, send me what you want. Okay.

[Ashley Gjovik (Pro Se)] (41:48 - 42:15)

Oh, and I need to, I think, I didn't get a chance to respond to every great thing you sent. You sent like 20 things. One of them, you said something about claims of privilege for me so far.

I'll send a written thing. I'm not making any claims of privilege. I've not found any documents that I'm claiming anything for that yet, but I'm still going through stuff.

So I'll be very clear if I am and when I am. Trunk scheduling, we did that. Yeah, I want a preservation order.

So I'll include that in the proposed stuff.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (42:15 - 42:25)

I lost all my- I think that's also in the case management conference statement. You don't need to repeat the things we've already put in our case management conference.

[Ashley Gjovik (Pro Se)] (42:25 - 42:30)

Yeah, what you're saying is like a statement of like, we talked about it, but we're supposed to have like a stipulated agreement.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (42:31 - 42:35)

Yeah, so you'll look at the case management conference statement that we already filed.

[Ashley Gjovik (Pro Se)] (42:35 - 42:37)

I'm aware of what you're talking about. That's not the same.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (42:37 - 42:38)

Okay, good.

[Ashley Gjovik (Pro Se)] (42:38 - 43:06)

There's even like a model ESI order next to your favorite protective order you keep asking for, but you didn't want- you never wanted the ESI one. You actually said in those joint case management statements you don't want one. So I'm just going to include Ashley's like ideal stipulated discovery plan and trial schedule and all that stuff and we can sort through it.

I'm going to try to use the model stuff from the court website where I can. Let's see.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (43:06 - 43:20)

This evidence preservation is in section six of the joint case management conference statement. The parties have reviewed the guidelines relating to the discovery. Electronically stored information have met and conferred regarding reasonable proportional steps.

[Ashley Gjovik (Pro Se)] (43:21 - 43:44)

So just a pro tip from me, who's an expert in Apple contradicting themselves constantly, you might want to try to find some alignment if you're saying must have protective order with huge binding agreement, but refuse to have any of the other orders the courts say are default and say that this one's super normal and everyone has it and always do it, but don't do any of this other stuff that are also model and normal. I'm going to lean into that divide a lot.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (43:44 - 43:48)

OK, I haven't said that. I've said if you want an ESI order, send it to me.

[Ashley Gjovik (Pro Se)] (43:48 - 43:54)

OK, I'm going to send you a beautiful portfolio of all the examples and then let's see.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (43:54 - 44:00)

I don't want lots of examples. I want on a caption in this case what you want the ESI order to say.

[Ashley Gjovik (Pro Se)] (44:00 - 44:45)

Yes, so I mean I'm going to integrate those. I'm not going to try to make it up myself. I'm going to pull from the Westlaw stuff and the model orders and let you know where I pulled the stuff

from.

But yes, I'll have something that's like you want to sign this now and then we can negotiate the terms. The disqualification thing, I'm deeply distressed to see that Jessica Perry was involved in those termination emails back to early August with her response with the sworn declaration of the court with my prior motion to disqualify, which feels very material and misleading. I am considering the best path forward.

Right now I'm thinking maybe reviving the motion to disqualify. I may also do a fraud on the court to try to undo some prior decisions for withholding information. I know you guys already took Kate off.

What's her name?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (44:46 - 44:46)

Juvenile.

[Ashley Gjovik (Pro Se)] (44:48 - 45:04)

Perry is like the biggest issue here. It looks like she had an associate on it at that time who's not on the litigation that I can tell, which is good. I think I'd have a very hard time getting ORC disqualified if Perry stepped back.

Perry is the biggest issue. She was sending emails during that time.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (45:05 - 45:36)

Yeah, there's nothing wrong with we never disputed that we were involved in giving advice to Apple with respect to you. Never disputed that. And that's not what Perry's declaration says.

So go back. She's not a witness. That was the whole point of the disqualification motion.

You said that she was a witness. We said she was not a witness. Witness mean is she going to be called at the trial to testify under oath?

And the answer is no, she's no. We have no plans and you can't call lawyers to be witnesses.

[Ashley Gjovik (Pro Se)] (45:36 - 46:06)

But that's why they're supposed to be disqualified. If I can make a showing that she is someone that could be an important witness for the case, then she should not be defense attorney because that's the direct conflict of interest that she's protecting her own stuff because she was implicated. So she's not completely loyal to Apple is the number one.

And then two, she could be covering up her own stuff. She can't work impartially. The disqualification is a conflict of interest thing.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (46:07 - 46:10)

And you already argued that and the judge already denied it.

[Ashley Gjovik (Pro Se)] (46:10 - 46:12)

And you guys misled about your involvement.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (46:13 - 46:21)

You've got to show there's something false in the declaration and there is nothing false. We've all gone back and look at it. There is nothing false in the declaration.

[Ashley Gjovik (Pro Se)] (46:22 - 46:23)

We all went back and looked at it.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (46:25 - 46:34)

So if you want to renew your motion, but by the way, there's got to be an end to these motions. You can't keep filing all these motions all the time.

[Ashley Gjovik (Pro Se)] (46:34 - 46:36)

You guys filed six motions to dismiss.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (46:37 - 46:43)

Yeah, but they were consecutive and they were granted. You've been filing endless motions and they're denied.

[Ashley Gjovik (Pro Se)] (46:43 - 46:44)

What motion?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (46:45 - 46:51)

I can't even list all the motions you filed. Sometimes they come in for a day, whatever. So- For a day.

[Ashley Gjovik (Pro Se)] (46:52 - 46:58)

You say I filed four motions a day and you cannot tell me what a single one of those motions are except for the motion to disqualify.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (46:58 - 47:06)

Four discovery motions. I remember the motion to disqualify the motion. I have a list of all your motions here somewhere, but it's obviously on the court docket.

[Ashley Gjovik (Pro Se)] (47:07 - 47:21)

And you're telling me that I need to stop filing motions? Motions that have no basis. Which of my motions have no basis?

Most of them, all of them as far as I could tell. A dismissal or a denial is not the same as no basis.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (47:22 - 47:36)

And we believe they have no basis and we believe that the use of these AI generated stuff is unacceptable and the motions have no basis. And there just has to be a stop to these motions.

[Ashley Gjovik (Pro Se)] (47:37 - 47:46)

So my motions are about Apple violating the LRA, Apple's settlement agreement, a motion to disqualify. I have the motion to strike and ask for a more definite statement.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (47:47 - 47:47)

Yeah.

[Ashley Gjovik (Pro Se)] (47:47 - 47:50)

I've had motions of notice of pendency.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (47:51 - 47:53)

Those are- Four discovery motions.

[Ashley Gjovik (Pro Se)] (47:53 - 47:53)

These are what you're saying are baseless?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (47:54 - 47:55)

Four discovery motions.

[Ashley Gjovik (Pro Se)] (47:55 - 47:59)

And you're saying AI generated nonsense and is abuse of the court. Yeah.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (48:00 - 48:03)

And you have four discovery motions to the magistrate.

[Ashley Gjovik (Pro Se)] (48:03 - 48:04)

Discovery motions.

Turboscribe AI Transcription

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (48:05 - 48:13)

And as I say, I do not have in front of me a list of all the motions, but all I can say is that there needs to be an end to these motions.

[Ashley Gjovik (Pro Se)] (48:13 - 48:19)

Can you elaborate further on your coercive statement to help me understand exactly what you were saying?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (48:19 - 48:23)

Yes. So I've said it all in the motions. I really have.

[Ashley Gjovik (Pro Se)] (48:23 - 48:38)

You're saying there has to be an end with like a gravelly tone, which is very close to violating the NLRA again. So I'm just asking for more information of exactly what you're trying to censor and stop and suppress and what this implied threat is at the gravelly end of the statement.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (48:39 - 48:46)

This is not on our agenda for this call. We have enough to cover in the call without going through the fact.

[Ashley Gjovik (Pro Se)] (48:47 - 49:19)

Just to be clear, if I feel like a motion should be filed and there's a valid reason to file it, I'm going to file it. And I'm trying to be as responsible as I can with how I file and how much research I can do. But as you know, you guys have like 30 billion dollars and I have negative everything and I am one person and you have hundreds of thousands.

How much does it work out? So that's unfair bullying for you to come at me saying it's not perfect. Whatever.

Anyways, I object to that generally and I find that to be harassment.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (49:20 - 49:44)

But I've already told you in our oppositions to your motions why we believe the motions are without merit. And the judge will end up deciding those whether the motions are without merit or not. But we have said everything we intend to say with respect to the repeated filing of motions with cases that don't exist.

And no, I don't mind.

[Ashley Gjovik (Pro Se)] (49:44 - 49:50)

Turboscribe AI Transcription

You refuse to give me any evidence that nothing exists. I've asked repeatedly for some kind of evidence of nonexistence.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (49:50 - 49:59)

It's all in the brief. Every time you had a site, we went and looked at that site and it doesn't exist. I can't give you evidence that something doesn't exist.

[Ashley Gjovik (Pro Se)] (49:59 - 50:05)

But you can. You go into Westlaw, you search it. It says no result.

You give me a copy. I asked for that three times and you expressly said no.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (50:06 - 50:16)

No, I haven't expressly said no on anything. It's all in our motion. We're not going to debate.

We're not going to debate the motions that are currently pending. The judge will decide those. They're fully.

[Ashley Gjovik (Pro Se)] (50:16 - 50:23)

You're making allegations against me about filing frivolous motions and saying that I'm incompetent and that I'm using false cases.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (50:23 - 50:24)

I haven't said any of those things.

[Ashley Gjovik (Pro Se)] (50:24 - 50:31)

You won't give me evidence that something doesn't even exist when all you have to do is print a PDF to show it doesn't exist?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (50:32 - 50:55)

I haven't said you were incompetent in any sense. I've said you file briefs that cite to cases that don't exist. Those motions are fully briefed.

The judge will decide them. You've already made your point that we did not produce proof that they didn't exist and the judge will decide if that's a valid objection or not. Okay.

But we're not here to re-argue the motions.

[Ashley Gjovik (Pro Se)] (50:56 - 51:16)

I am considering what to do about that. I'm not doing anything immediately on that. Let's see.

Preservation, that'll be included. Trial scheduling will include. Religious searchings will include.

ESI we talked about. Are you planning on deposing other people on my side? If so, what kind of notice do I get of that?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (51:16 - 51:27)

So I don't have any current intentions. To do so. But I obviously might at some point in the future.

And you will get whatever notice.

[Ashley Gjovik (Pro Se)] (51:27 - 51:36)

My friends are terrified of you? My normal Portland-y, hipstery friends. And if I can just reassure them that there's nothing currently because they're stressed out too.

You guys are scary.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (51:37 - 51:59)

I have no current plans to take the depositions of your hipster friends. I don't even know who your hipster friends are. I don't know what they might know about the facts of this case.

So I have no current intention. But after your deposition, you might reveal information that leads me to believe that there are witnesses whose depositions I need to take. And in that case, I would do so.

[Ashley Gjovik (Pro Se)] (51:59 - 52:55)

And I am including screenshots and chats and stuff I have with friends, including non-employees, just to show what was going on in my mind and what I knew and things I'm hearing for reasonableness. So you guys have that information. And then let's see.

Subject scope of discovery. I sent you guys a new request for production, just for clarity of this prior stuff that was denied for whatever reasons. I incorporated them in the last two.

So hopefully, whatever you say, like, no to on this one will be our good. Like, this is full discovery. Now you're saying no.

There's stuff I have to challenge. I have to challenge. I'd previously asked, like, if I give you a request for production and there's something confusing or it seems too broad, like, let me know and work with me.

And I will try to... I do FOIA requests all the time still. Like, just be like a FOIA office.

Actually, that's too broad. Can we narrow it? Happy to work with you guys.

Instead, I just keep getting all these blanket rejections at the end. So, like, if you want to send associates or something to me to, like, narrow stuff down, please do.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (52:57 - 53:14)

Yeah, that's why we respond and we do what the rules require, which is if they're overbroad, then we tell you they're overbroad and we give you what's relevant if there's anything relevant. But it would be better for you to draft more tailored requests sometimes. I need feedback.

[Ashley Gjovik (Pro Se)] (53:14 - 53:47)

You're not giving me any, like, directed feedback of, when you say this, this implicates five different tools or this is... If you... Again, I have a database in my brain and I'm used to Apple troubleshooting.

So, if you tell me the thing you're requesting would require us to search 20 different systems or the thing you're requesting, there's no universal search, so we'd have to, like, pull individual people. If you give us five people to pull, we could do that. Like, just work with me and I will troubleshoot and try to refine them to make them as, like, logical and reasonable and easy as possible.

But if you don't tell me anything on your side, then I can't.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (53:51 - 54:01)

All right. So, should we go through the discovery requests, our requests to you? We need to meet and confer on those before we bring a motion to compel.

[Ashley Gjovik (Pro Se)] (54:02 - 54:02)

Go ahead.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (54:03 - 54:05)

So, first of all, you need to sign the send verifications.

[Ashley Gjovik (Pro Se)] (54:05 - 54:06)

I will.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (54:06 - 54:20)

Okay, good. So, on some of the interrogatories... See what I had on those.

[Ashley Gjovik (Pro Se)] (54:30 - 54:36)

There was one that was asking for medical records back to 2015, and some of my objections are, like, Apple has those. Apple was my doctor.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (54:37 - 54:43)

Okay, Apple has no medical records of yours. We do not have your medical records, I assure you.

[Ashley Gjovik (Pro Se)] (54:44 - 54:58)

Apple Wellness Center is a privately-owned, for-profit subsidiary of Apple Inc., and I got all my digital records from them, which were sent through my emails and my Apple emails, and it shows that Apple started reporting on my email a long time ago. So, they clearly have it.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (54:58 - 55:01)

We do not have your medical records.

[Ashley Gjovik (Pro Se)] (55:02 - 56:15)

And then Jenna was passing around that mammogram. That was disturbing. Jenna.

Because then there was the ADA stuff, and you guys got the documents from... Oh, and no, I don't know if they're telling you the truth, because my one medical got an Apple request for that ADA thing for all of my medical records on September 1st. I got from my records from the doctor I requested for, like, all logs.

So, Apple did request all my medical records September 1st, 2021. And all of this to say, I don't have to make a stink about all of this, if we can just have reasonable requests narrowed. But, like, if Apple's gonna do something so...

And I looked it up. This is the kind of stuff that employers will do, and courts will say, don't do that. What are you doing?

You're harassing the employee. Like, this falls in that category of weird stuff that's not terribly justified. So, if we can narrow it to something that you actually need and is justified and makes sense, happy to give it to you.

But if you're gonna do brute force and threaten to compel, then I'm gonna bring up all sorts of stuff like this. Attaching the Jenna Mammogram email, attaching the request to one medical, attaching, you know, all this stuff, to be like, I don't even know what they're asking for.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (56:16 - 56:37)

Okay, so let's go through the interrogatories. On number two, we asked you for the medical providers regarding the claims in the Fifth Amendment complaint. And you referred us to our initial disclosures.

And what we're looking for is the documents that are responsive to that request.

[Ashley Gjovik (Pro Se)] (56:38 - 56:42)

Which I said I was producing separately, so I didn't know why there was an interrogatory in addition to the production.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (56:44 - 56:52)

So, we want to know which of your medical providers relate to the dismissed claims and which ones relate to the remaining claims.

[Ashley Gjovik (Pro Se)] (56:52 - 57:13)

We are gonna bring that in front of a judge if you guys pursue that, because one that's super messed up. Like, could you imagine if one of your daughters was going through this and a lawyer said that to them, of, I need you to distinguish all of your emotional trauma from when we dumped a bunch of toxic waste on your face, and then we're retaliating and ruining your life, because those can't be combined or overlapping. So, first things first, please separate those two.

That's really messed up.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (57:13 - 57:17)

Okay, if you can't distinguish, then you can give them all to us.

[Ashley Gjovik (Pro Se)] (57:18 - 57:50)

But if you want to- I'm giving you all the stuff, and I told you I already offered, which seems like a really big deal that you guys have not acknowledged. You can do a mental exam. You guys pay for it.

We can do a mental exam. It can be on the record. That seems like the best way for you to figure out this kind of stuff.

Get an expert to decide what kind of damage there is, what I went through, what kind of stuff triggered, whatever. Like, get a formal report about it. Like, an interrogatory or production of documents like that is not going to answer your question.

That's expert witnesses and testimony, you know? Like, that's way more complicated than interrogatory.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (57:50 - 58:12)

So, one of the things that the IME wants to see, the doctor who does the IME, wants to see is the contemporaneous medical records. So, you can either give us the medical records that relate to the remaining claims in this case, and if you can't distinguish which ones relate to the remaining claims in the case and the ones that were dismissed, then give us all the medical

records.

[Ashley Gjovik (Pro Se)] (58:13 - 58:22)

I'm giving you all the medical records for everything pending, including appeal. And if it's specifically for the medical examiner person, I prefer just to give it to them directly if possible.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (58:23 - 58:33)

So, are you saying that all of the healthcare providers that you listed in your initial disclosures relate to the remaining claims in this case?

[Ashley Gjovik (Pro Se)] (58:36 - 59:51)

I am saying I gave you guys a long list of medical providers related to this overall case, including my pending Ninth Circuit ones, which I argue are, you know, very much part of this for protected activity, as well as, like, even if that was separate, the argument about punitive damages for traumatizing me after, you know, what I went through, all of it's meshed together. So, like, I don't, I'm not going to play any games of separating it myself. That would be expert witnesses of the medical examiners, but also for damages experts if we're going to do that.

So, like, that's not today. That's much later. I have no problem giving you medical records of everything related to all of my claims, in this case, in the Ninth Circuit case.

And I've been, you know, merging in DOL and LRB and stuff too, like, all together, because there's not much that's actually, like, separate. So, I'm not holding back anything. You guys were the ones that were holding back stuff on appeal or pending, settling pleadings.

But as far as, like, privacy goes, I would prefer, like, if the request for my medical records at this point, primarily, is for a medical exam, then I would prefer if there's a way just to give those documents to that doctor instead of having to give them to Apple would be preferable.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (59:52 - 59:57)

Okay. So, we would need to subpoena the medical providers that and get their records from them.

[Ashley Gjovik (Pro Se)] (59:58 - 1:00:01)

You can't just me provide it, you have to get it directly from them?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:00:01 - 1:00:19)

We have to get it from them. Because then we know we got everything. So, we need to know which medical providers we should subpoena.

We could either subpoena all of the people that you listed in your initial disclosures, and that's

fine too. Or if you think that some of them don't relate to the remaining claims, and you don't want us to subpoena those, then just tell us which ones.

[Ashley Gjovik (Pro Se)] (1:00:20 - 1:00:26)

If you're subpoenaing, you're getting, like, everything. And I think that's overkill. Like, what exactly are you trying to get from them?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:00:26 - 1:00:37)

I want to get the medical providers that relate to the remaining claims in this case, which is the emotional distress you suffered as a result of the claims that are remaining in this case.

[Ashley Gjovik (Pro Se)] (1:00:37 - 1:00:48)

No, I know. But I can show you, like, oh, I had an appointment. Here's the after-visit summary.

And I can show you, oh, here's a receipt that I paid this money. But you're, you want everything. You want their internal notes.

You want, why?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:00:50 - 1:01:03)

Because that's what we're entitled to. Are you? If it's relevant, yes.

Because if you've raised the claim of emotional distress, then you've put your emotional distress at issue in the case, and we're entitled to get medical records relating to that claim.

[Ashley Gjovik (Pro Se)] (1:01:03 - 1:01:08)

Yeah, but that doesn't explain why you go to a primary care provider and request everything.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:01:08 - 1:01:25)

Well, that's what I'm asking you. That's exactly why I'm asking you. So which of the medical providers relate to the emotional distress claims you're making in the case?

And then I'll subpoena them. I don't need to subpoena people if they are not related to the claims you're making in this case. That's why I'm asking you to distinguish.

[Ashley Gjovik (Pro Se)] (1:01:25 - 1:01:31)

When are you planning on, do we have like a couple months to sort this out? Because I have a million other things in my brain right now, and this is going to require a lot more thinking.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:01:33 - 1:02:03)

Okay, so I want to get these. Sometimes it takes a while to get medical records from doctors. And obviously it would be ideal to get them before your deposition so that we have them in hand in connection with your deposition.

So that's why we'd like an answer to interrogatory number two. But if the answer is, which is what I think it is, everybody I listed in my initial disclosures relates to the claims in the case, then we can just subpoena all of them.

[Ashley Gjovik (Pro Se)] (1:02:03 - 1:03:05)

No, and I'm now like saying like what I said prior is for what I understood prior. You just gave me a lot more context to what you're doing and what you're looking for. And I need to consider all of that.

If this is something where like you'd move the depo if you don't get any time, like ideally you'd send me like a letter summarizing all these things you're telling me and exactly what you're looking for. I'm going to object to some of them. I can tell you already a lot of this is overbroad.

And there's, it looks like specific rules of like when something is actually relevant or not for this type of question. So like what does it matter that some doctors said this or that when a medical examiner was like, oh, it's just PTSD and there's testing, whatever, showing it got way worse. And she told me all about all this stuff.

You know, I need to, I need to sort through, I'm sure there's a bunch of guides on this stuff. It seems nuanced. I want to sort it out.

I can't promise you I'm going to get you a quick response because of everything else I'm also dealing with. So anything you can do to try to.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:03:07 - 1:03:13)

Okay. Well, your answer was all the people listed in the initial disclosures. So I just wanted to be sure.

[Ashley Gjovik (Pro Se)] (1:03:14 - 1:03:59)

On behalf of a someone who's going to do the medical exam who wants all the records for this stuff. And it's like, I kind of was like, slow your roll was my response. It wasn't, I'm not giving you anything else.

It was, we're very early in on this. I already gave you a bunch of names. Why are you asking for all this information right now?

I don't even know what your defense is. So I didn't say no. The things you were telling me make some sense.

And I can see your reasoning of wanting this stuff. There's stuff I'm going to have to like reshape and push back on some of it. But I agree what you're asking for sounds like a overall reasonable request in this type of litigation.

So I want to help facilitate that. But like, just became way more complicated than what I thought this issue was at this point.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:04:01 - 1:04:26)

Okay. So the number three is the people that you've worked for since you left Apple and how much you've earned from them. And that's relevant because you're seeking lost wages in this case.

And we're not even there yet. We're there from now that discovery has started. There's no phased discovery.

Discovery starts and we're entitled to discovery on all the issues that are remaining in the case.

[Ashley Gjovik (Pro Se)] (1:04:27 - 1:04:28)

What are you planning on doing with this information?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:04:29 - 1:04:39)

So then we would deduct that what you've earned from the lost wages that you're claiming. And then that would determine how much the lost wage claim is.

[Ashley Gjovik (Pro Se)] (1:04:40 - 1:04:48)

So why can't I just give you like the documents of the pay statements and stuff? Why do you need formal names? Are you going to depose these people too?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:04:50 - 1:05:01)

I don't know. It depends. We'll make that decision.

But right now we don't have anything. You said it's premature. And what I'm saying is there's no such thing as premature discovery.

Now that discovery is open, it's not premature.

[Ashley Gjovik (Pro Se)] (1:05:02 - 1:05:21)

Well, I said you're prioritizing weird things sooner. And I also complained that like one of them had a job that Apple got me fired from. Not fired.

They severed the contract with Wilshire Law over that fraud lawsuit that they won against Apple. Big settlement. But I got kicked off and they were defaming me.

Turboscribe AI Transcription

They made me read my tweets out loud during their meet and confer session.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:05:22 - 1:05:24)

This has nothing to do with the interrogatory and I have no idea what you're talking about.

[Ashley Gjovik (Pro Se)] (1:05:24 - 1:05:29)

Yes, it does. Because that was one of the employers. And Apple got me fired from the employer.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:05:29 - 1:05:43)

I have no idea what that's about. All I can say is the interrogatory asks you for the name and address of the employers that you've worked for since you left Apple. And we're entitled to that information.

So we need a response to that discovery.

[Ashley Gjovik (Pro Se)] (1:05:46 - 1:05:51)

I think I said you'd get it in the document production. I can't remember what I said.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:05:51 - 1:06:12)

You said plaintiff's discovery plaintiff contends the discovery is premature because this discovery only goes to the potential offset of damages and refuses to provide a response out of fear that Apple will further retaliate against her as she alleged it did for her prior expert consulting engagement in response to an article she published in the magazine about her experience with autism.

[Ashley Gjovik (Pro Se)] (1:06:12 - 1:06:18)

That was MWE. That was another law firm. It was Mofo, I think, who was harassing me with that other one.

And then I got a job.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:06:18 - 1:06:20)

You wanted to know what your response.

[Ashley Gjovik (Pro Se)] (1:06:20 - 1:06:33)

And MWE's on there saying she's a liar and making vandalizing pictures about how I got fat because I'm so depressed to what Apple did to me. And I'm like, yeah, I did because they're mean. What the hell?

You're making 200,000 like.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:06:34 - 1:06:38)

I have no idea what you're talking about. All I want to know is you asked me what your response was.

[Ashley Gjovik (Pro Se)] (1:06:38 - 1:06:40)

These are literally the answers you're getting.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:06:41 - 1:06:48)

No, I want to know the I want the answer to the question. So will you provide us with the answer to question number three?

[Ashley Gjovik (Pro Se)] (1:06:49 - 1:07:07)

I'll give you names and amounts just like that. I'm going to ask that you hold back on anything related to Northeastern. Right now, I'm under a really weird situation where I don't even know if I'm allowed to say stuff.

I have to bring in DOJ if you want to talk about.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:07:07 - 1:07:11)

I just I just want the names. Just want the answer to the question.

[Ashley Gjovik (Pro Se)] (1:07:12 - 1:07:16)

So just it's like I was like, what are you going to do with that information?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:07:16 - 1:07:19)

That doesn't matter. You have to answer the question.

[Ashley Gjovik (Pro Se)] (1:07:19 - 1:07:33)

It does. If you're using it to harass, it's literally one of the criteria. I will agree right now, though, by our ninth deadline or sending all their stuff, I will send the names, times and amount made on each.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:07:38 - 1:07:53)

Number four, ask for social media platforms. And you said that we already have this information and actually we don't. So we need you to tell us which social media platforms that you've posted on.

[Ashley Gjovik (Pro Se)] (1:07:53 - 1:07:55)

So I'm sorry, how does this go to Apple's defense?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:07:56 - 1:07:58)

Well, it depends what you've said.

[Ashley Gjovik (Pro Se)] (1:07:59 - 1:08:00)

So you're searching for after acquired evidence?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:08:01 - 1:08:08)

No, no. We're searching for what you have said on social media platforms. And all we want to know is what they are.

[Ashley Gjovik (Pro Se)] (1:08:09 - 1:08:29)

No, I want to what are you? If I was to tell just to a court, they're going to ask, what are you trying to achieve from this? What does it have to do with the outline of the case of these burdens of things you're trying to prove, what your defenses are?

That's what I'm asking, what the judge would ask you. What kind of evidence do you think you are going to obtain from this? And where does it plug into the outline of the case of how you would use it?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:08:30 - 1:08:40)

So, for example, you might have published confidential information about Apple. You might have, there's all sorts of things that you could have done. All I'm asking is for the name of the platforms.

[Ashley Gjovik (Pro Se)] (1:08:41 - 1:08:43)

You're asking for me for like 10 years.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:08:45 - 1:08:56)

Since 2021, March 1st, 2021. Five years, which that's so broad. I don't know how many platforms have you posted on, a hundred, five hundred?

Okay, give me a number.

[Ashley Gjovik (Pro Se)] (1:08:58 - 1:09:51)

So here's the thing though. This is like one, invasion of privacy. There's a lot of court procedure, law precedent about that.

This is chilling of my NLRA activity. You're literally asking to go spy on all my stuff where you

know I was engaged in protective activity while concurrently threatening me about stuff. You're not giving me a clear answer of like what exactly you use it for other than trying to find something to use against me generally, including your example, leaking confidential information.

So like if we can put a pin in this and spend some more time thinking about this, I want to give you like everything I posted on any social media platform during that like August to I was fired window. I agree. Everything there seems super relevant.

I was already going to produce all of that. All of that gets sent out. But you're doing like a drag net.

Way beyond that.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:09:51 - 1:09:54)

I'm always just asking for the names of the platforms. It's not that hard.

[Ashley Gjovik (Pro Se)] (1:09:55 - 1:09:57)

And usernames and all this stuff.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:09:58 - 1:10:09)

Well, I mean, that would tell us who who posted, right? So it's not not passwords or anything. It's just a Jovic if you did that or I hate Apple or whatever.

[Ashley Gjovik (Pro Se)] (1:10:09 - 1:10:13)

It's illegal in California. I'd even ask employees that now. That's against the labor code.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:10:13 - 1:10:16)

I'm not allowed to ask for passwords, but I can ask for the names.

[Ashley Gjovik (Pro Se)] (1:10:16 - 1:10:21)

You can't even not be on passwords. You can't even ask them what their accounts are. So the lots happen the last five years.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:10:21 - 1:10:25)

I'm very aware of employment laws, but unfortunately, you're not an employee anymore.

[Ashley Gjovik (Pro Se)] (1:10:26 - 1:10:31)

So I'm just saying there's a lot of public policy for you to not snoop on all my stuff. And I'm going to fight this one.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:10:31 - 1:10:41)

Yeah, but that wasn't the response. The response you gave is we already have this information. And I'm telling you that that response is inadequate because we don't already have the names of all the sites that you post.

[Ashley Gjovik (Pro Se)] (1:10:41 - 1:10:50)

I believe I said you have it for that time period I specified and I'm producing all the documents for that time period. And then I complained a lot about surveillance and privacy and stuff.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:10:50 - 1:11:07)

Plaintiff asserts that all relevant social media content in her possession will be produced and that Apple is free to view any publicly accessible content independently. And we agree with that, but we have to know the sites in order to view it. So that's all we're asking is tell me the sites and then we will go review it.

[Ashley Gjovik (Pro Se)] (1:11:08 - 1:11:28)

How about this? Would you be willing to narrow this interrogatory and you have more stuff you can file later to social media accounts during June 1 to September 10, 2021. If you are willing to narrow it to that, I will give you a beautiful little spreadsheet.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:11:29 - 1:11:38)

I will take that back and get back to you on that one. And then the number five was the usernames. Okay, should we go to the request for documents?

[Ashley Gjovik (Pro Se)] (1:11:38 - 1:11:40)

Yeah, the fifth one, same deal.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:11:40 - 1:11:48)

Yeah, same one. So on the privilege, we've confirmed that you're not withholding any documents based on privilege.

[Ashley Gjovik (Pro Se)] (1:11:49 - 1:11:49)

Currently, no.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:11:50 - 1:11:56)

Right, currently. And then medical records, you're going to produce the medical records that you have.

[Ashley Gjovik (Pro Se)] (1:11:57 - 1:13:11)

Turboscribe AI Transcription

I'm planning on producing medical records. I already disclosed some doctors. I understand your request though.

And it does not, my response does not exactly meet the parameters of your request and I don't want to ignore that gap. So I need to think about, I mean, maybe me producing this stuff might be enough for the depot for you. Like, again, if there's something very specific you're looking for, tell me, like, if you ask me point blank for something and I have it, I'm not going to lie.

I don't know how to lie, Melinda. It's very inconvenient, actually. You ask me for something, I'm just going to give it to you or I'm going to tell you no, but why?

I'm not going to pretend it doesn't exist. So like, tell me. I will do that.

Otherwise, trying to produce all this stuff, gather all this stuff, all this other stuff's going on, but trying to do that more urgently now that I, you know, if you give me heads up of stuff you want before that depot, I can try to prioritize that over other stuff. So like, give me a bolded list or something. And I'm going to have to wrap my head around the medical exam with the prior records.

I know that there's a huge knowledge base on this topic specifically because it's so often contested and I don't have any familiarity at this moment. So I need to go brief myself before I respond further on it. But all that to say is I'm working on it, I'm doing it partially, and I'm trying to figure out the rest of it.

I'm not saying no.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:13:13 - 1:13:23)

And then on the depot notice, I gave you the answers in my email I sent you. The email I sent you to set up this yesterday, I think it was.

[Ashley Gjovik (Pro Se)] (1:13:24 - 1:13:25)

The depot notice.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:13:26 - 1:13:38)

Yes, you had some concerns about how you were going to get the transcript. And that's all in the email, so I don't think we need to go over that. Okay.

So do you want to meet and confer also on your RFPs to Apple?

[Ashley Gjovik (Pro Se)] (1:13:39 - 1:13:41)

If you have something you want to say already.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:13:43 - 1:13:46)

Turboscribe AI Transcription

Well, I don't know if you were unhappy with our responses.

[Ashley Gjovik (Pro Se)] (1:13:47 - 1:14:19)

Oh, so that's why I kind of incorporate into this latest one because you did a good job with your fog veils of making it kind of confusing of not full discovery pending stuff. So I'm going to wait to protest anything from you guys until you respond to this latest one I sent that also incorporates those prior ones. So I want like final, final.

No, like we said final then, but things change, confusion in the air. So once you respond to this latest one I sent, then I'm going to pick stuff I might escalate, but I'm not planning on escalating anything at this point otherwise.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:14:34 - 1:14:40)

Okay, so there's no reason to discuss any of your discovery to us, our responses to your discovery to us at this time.

[Ashley Gjovik (Pro Se)] (1:14:43 - 1:14:54)

Okay, then I think that might be it on my list. Did you have other stuff on your list?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:14:54 - 1:14:55)

I think that's it.

[Ashley Gjovik (Pro Se)] (1:14:56 - 1:15:06)

Okay, I'm going to go over all my notes and try to summarize, but also I'm probably not going to surface again until the 7th after I file Ninth Circuit. That's a lot of work.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:15:07 - 1:15:09)

I'm not involved in the Ninth Circuit case. I don't know.

[Ashley Gjovik (Pro Se)] (1:15:10 - 1:15:27)

I'm just lawyer to lawyer. That's a lot of brand new baby lawyer doing Ninth Circuit. So I'm going to try to focus as much as I can on that.

But I feel like we made a lot of good progress on this. I really appreciate you talking through this stuff. I know it's not easy sometimes.

So thank you.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:15:28 - 1:15:29)

All right, we'll be in touch.

[Ashley Gjovik (Pro Se)] (1:15:30 - 1:15:30)

Thanks.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:15:30 - 1:15:30)

Bye.