**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY M. GJOVIK**, *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br> **APPLE INC.**, *a corporation,* <br><br> Defendant. | Case No. 3:23-CV-04597-EMC <br><br> **NOTICE OF PENDENCY** <br> Civil L.R. 3-13 <br><br> **U.S. EPA CITIZEN SUIT** <br> RCRA, CAA, CWA, <br> EPCRA, TSCA + <br> Public Nuisance <br><br> **Court: San José District Court, Northern District of California** |

# Notice of Administrative Pendency

## U.S. EPA Environmental Citizen Suit

### (RCRA, CAA, CWA, EPCRA, TSCA, & Public Nuisance)

Plaintiff, Ashley Gjovik, files this notice of civil pendency regarding the subject matter of her active *Tamney*, and Cal. Labor Code §§ 1102.5, 6310, and 98.7 claims. (Dkt. No. 142).

Plaintiff is filing a federal Citizen Suit against Apple, the city of Santa Clara, and the property owner of 3250 Scott Blvd, in Santa Clara, California under the RCRA, Clean Air Act, Clean Water Act, EPCRA, and TSCA. She is also filing a Public Nuisance suit against the same parties.

In compliance with the governing Citizen Suit statutes, Plaintiff has provided sixty-day notice to the defendants, to U.S. EPA, and to California EPA. (Exhibit A – "Sixty Day Notice"). All defendants and the U.S. EPA will receive certified USPS mail, which was filed yesterday and is in transit. Additionally, they were all digitally notified via email.

Citizen Suits are filed in the U.S. District Court nearest to where the violations occurred, which here would be the U.S. District Court located in San José, California. If this court in San Franscisco wishes to consolidate that action with this instant action, or otherwise provide oversight on the portfolio of cases, the Plaintiff does not object.

Please note that Apple executives were served with a courtesy digital notice at 4:44PM PT on June 30 2025. (Exhibit B). Defendant's counsel then, after this notice, proceeded to file an opposition to a pending motion in this case (Dkt. 224), where Defendant requested sanctions against the Plaintiff, and asked the Court to declare the Plaintiff a vexatious petitioner. Critically, this request for sanctions

was filed <u>after</u> Apple received notice of the incoming Citizen Suit.[1] This likely constitutes another attempt by Defendant to obstruct justice.

Plaintiff expects Apple to retain different counsel for both the Citizen Suit and the U.S. EPA Enforcement action because Orrick does not have an environmental practice and the firm has recently informed Plaintiff they do not plan to communicate with her going forward. (see Plaintiff's objections at Dkt. 220).[2]


Respectfully,


/s/ **Ashley M. Gjovik**

*Pro Se Plaintiff*

Boston, Massachusetts.


Dated: July 1 2025

---

[1] Note: Further objections to Apple's filing at Dkt 224 will be filed this week.
[2] Note: Plaintiff plans to file a formal response this week to Defendant's Opposition filed at Dkt. 224.

# Exhibit A

## Sixty Day Notice

### Dated and Served: June 30 2025

**Ashley M. Gjøvik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# U.S. Environmental Protection Agency

## SIXTY-DAY NOTICE OF INCOMING CITIZEN SUIT

| | |
|---|---|
| **Ashley M. Gjøvik,** *an individual*, | **Sixty Day Notice** |
| **Plaintiff,** | **Clean Air Act,** 42 U.S.C. § 7604 |
| vs. | **Resource Conservation & Recovery Act,** 42 U.S.C. § 6972 |
| **Apple Inc.,** *a corporation,* | **Clean Water Act,** 33 U.S.C. § 1365 |
| **Santa Clara,** *a city*, | **Emergency Planning and Community Right-to-Know Act (EPCRA),** 42 U.S.C. § 11046 |
| **Mr. Kalil Jenab** and/or **Cushman & Wakefield** | **Toxic Substances Control Act (TSCA),** 15 U.S.C. § 2619 |
| **Defendants.** | **California Public Nuisance** Cal. Civ. Code 3491 |

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................1

PROPERTY .................................................................................................1

DEFENDANTS ..........................................................................................12

   I.    Corporation: Apple Inc. (Operator) ...................................... 12

   II.   City of Santa Clara (CUPA) ............................................... 13

   III.  Kalil Jenab (Property Owner) ............................................ 14

STATUTORY AND REGULATORY FRAMEWORK ...............................14

   IV.   Clean Air Act (§ 304) ....................................................... 14

   V.    Resource Conservation and Recovery Act (§ 7002) .............. 16

   VI.   Clean Water Act (§ 505) .................................................... 17

   VII.  Emergency Planning and Community Right-to-Know Act (§ 326) ................. 20

   VIII. Toxic Substances Control Act (§ 20) ................................... 21

   IX.   Public Nuisance (Cal. Civ Code § 3491) ............................. 22

VIOLATIONS DURING CONSENT DECREE (2016-2020) ...................23

THE UNDERLYING CRIMINAL SCHEME ..........................................26

ONGOING VIOLATIONS NEAR SENSITIVE RECEPTORS ..................27

FAILURE OF ENFORCEMENT AGENCIES .........................................29

   X.    The U.S. DOJ and U.S. EPA's Failure to Diligently Prosecute .......................... 30

   XI.   The City's Facilitation of Violations & Failure to Enforce Federal Environmental Laws  31

   XII.  The City's Systemic Failure to regulate Apple within the City of Santa Clara . 32

     A.   335 Brokaw Rd Apple Inc (CAR000276360) .............................................32

     B.   2630 Walsh Ave Apple Inc (CAT000603704) ............................................34

PERSONAL INJURIES AND STANDING .............................................35

RELIEF SOUGHT ....................................................................................37

   XIII. Injunctive Relief .............................................................. 37

   XIV. Civil Penalties ................................................................. 37

   XV.  Supplemental Environmental Projects ................................ 37

   XVI. Costs and Fees ................................................................. 38

CONCLUSION ..........................................................................................38

CERTIFICATE OF SERVICE ..................................................................39

# RE: 3250 SCOTT BLVD (SIXTY DAY NOTICE)

## INTRODUCTION

1.     **TO ALL DEFENDENTS:** This Notice is served pursuant to notify you of violations of federal environmental laws and to provide the required 60-day notice before commencing a citizen enforcement action. This Notice complies with all requirements of Clean Air Act § 304(b), RCRA § 7002(b), CWA, TSCA, and EPCRA prior to commencing a citizen suit. The statute of limitations for harms caused by the facility, and for claims by the Plaintiff, is hereby tolled as of service of this notice.[1]

## PROPERTY

2.     In early 2015, Apple started stealth semiconductor fabrication activities in a facility located at 3250 Scott Blvd. in Santa Clara, California. (APN 216-29-117). In June 2015, Apple registered the facility as a Large Quantity Haz. Waste Generator, and for Hazardous Chemical Management, Chemical Storage, Hazardous Waste Treatment. (CAR000278176). Apple reported to U.S. EPA that the facility operates 24/7 five days a week.

3.     The facility operated less than three hundred feet from thousands of homes where Plaintiff lived in 2020 (the Santa Clara Square Apartments owned by The Irvine Company). Also within three hundred feet of the building were two public parks (Creekside Park and Meadow Park), picnic tables, outdoor fitness stations, and a children's playground. Within one thousand feet of 3250 Scott there was also a church, a school, elder care facility, and the San Tomas Aquino Creek and public trail.

4.     The Environmental Impact Report for the development of the apartments was finalized in December of 2015, at least six months after Apple started operations, and the EIR never mentioned Apple's facility despite being directly across the street from the development. The City was actively involved in Apple's new facility yet approved the EIR despite knowing and intentional omission of Apple's fabrication activities.[2]  When Apple was seeking approval from the city for the facility in 2014-2015, City documents noted zoning concerns if there was residential adjacent, and the need for air permits, but those concerns were not revisited in subsequent approvals.

---

[1] The private nuisance, ultrahazardous activities, and IIED claims brought by the Plaintiff elsewhere are also tolled and pending appeal.
[2] It is unclear whether The Irvine Company was aware of Apple's activities.

5.      Apple installed an "Acid Waste Neutralization" (AWN) system in September 2015 under the RCRA "Permit by Rule" regulations. Apple noted the first required inspection under 22 CCR 66265.192 was in September 2015, the inspections were required every five years, and they did not complete their next inspection until November 2020. The specifications in the records obtained by U.S. EPA show the system was designed for Apple in December of 2014 and was built in January 2015. (Oct. 2022 TRC Assessment).

6.      Apple installed a "Heavy Metals Rinse" (HMR) System at some point around 2015 under the RCRA "Permit by Rule" regulations, but did not disclose the date. The specifications obtained by U.S. EPA showed that the system was designed for Apple in 2013 - 2014. It appears Apple did not obtain qualification of the complete system until 2017. Apple noted "the system generally handles heavy metals (potentially toxic) waste liquids generated from laboratory activities." (Oct. 2022 TRC Assessment). It is unclear why Apple referred to 'potentially toxic' heavy metals, as heavy metals are inherently hazardous under RCRA.

7.      Upon initiating operations at 3250 Scott, Apple was quickly cited for building, environmental, health, safety, and fire code violations in at least 2015 (stop work order due to construction without permits), 2016 (spill of cooling water into storm drains, fire code and California ASPA violations, health and safety code violations, failure to properly monitor wastewater discharge), 2019 (wastewater testing violations), and 2020 (fire code violations, using two EPA ID numbers, inaccurate hazardous materials inventory data, no spill plans or training, no business permit, no signature from supervisor on records, and failure to properly monitor wastewater discharge again).

8.      The City inspected Apple's facility on August 24 2016 and found Apple failed "to have a business plan readily available to personnel of the business or the unified program facility with responsibilities for emergency response or training. HSC 6.95 25505(c)" and Apple was not inspecting their fire sprinkler systems on a quarterly basis or maintaining records on site. The City also noted that Apple needed to "add the diversion tank to the AWN on CERS as tank 5." (The AWN is one of Apple's Permit-by-Rule hazardous waste treatment systems).

9.      On Nov. 8 2016, Apple submitted a "Tiered Permit" application to the CalEPA DTSC, a year after they already started operations, and it was approved on Nov. 22 2016 without any further follow up from CalEPA. California DTSC approved the apartment development as a Brownfield restoration

project in November of 2016. California DTSC also approved Apple's request for a RCRA Permit-by-Rule in November of 2016. California DTSC never publicly disclosed that Apple was operating a semiconductor fabrication plant across the street from the apartments – during the development, or after when residents began reporting chemical exposure and severe medical issues.

10.     The Final 2016 Santa Clara Square EIR noted unexpected findings of Benzene and Vinyl Chloride in the shallow topsoil (<1") on the property where the apartments were to be developed, explained as an anomaly, despite its proximity to Apple's facility and the absence of any alternative contamination source in the area. It appears Apple had multiple solvent spills and/or was intentionally dumping into that field.

11.     Apple installed a "Solvent Waste System" in 2017 but did not report or register it under the RCRA. Apple noted: "the solvent waste lift station, collection cabinet and associated ancillary piping were constructed in 2015. The solvent tank was constructed in June 2017 and installation of the tank and ancillary piping was completed in 2018."  (Oct. 2022 TRC Assessment). The assessment notes the tank is governed by RCRA:

> Purpose: 22 CCR 66265.192 requires that owners of a new hazardous waste tank system (subject to 22 CCR 67450.2 "Permit by Rule") to ensure that the tank system is adequately designed and constructed, and obtain and keep on file at the Facility a written assessment reviewed and certified by an independent, qualified, professional engineer, registered in California that attests to the tank system's integrity.

However, despite requesting an RCRA related assessment, and receiving a formal document the RCRA applicability, Apple never reported the storage and treatment system. The Assessment also does not discuss the exhaust system for the tank. Further, the specifications obtained by U.S. EPA show the system was designed for Apple in Dec. 2014 and showed pressure tests occurring in Sept. 2015, despite Apple claiming they did not use the system until 2017.

12.     City Fire Department records for 3250 Scott contain at least sixteen chemical spill/leak incident reports at 3250 Scott within only three years. These incident reports included eight confirmed leaks/spills: leaks of phosphine and silane on June 1 2019; a phosphine leak on October 21 2019; a Tetraethyl Orthosilicate ("TEOS") leak on July 17 2020; a major phosphine leak on April 30 2021; a 5% fluorine gas leak on April 18 2022, a Hexafluorobutadiene leak on May 29 2022, and leaks of two unnamed toxic gases on September 20 2022 and December 21 2022.

13.     On Sunday June 1 2019, a toxic gas alarm went off at the facility triggered by silane and

phosphine gases. Apple stated they were 'purging their lines' but did not place the system in 'test mode,' and said that the release was part of routine operations. (Santa Clara City Fire Department Incident Report 2019-1904285). No notice was made to the public and no report was filed to the county, state, or federal governments.

14.     Beginning around 2021, TCE began spiking in groundwater samples collected directly downgradient from Apple's facility. Earlier, in 2017 the NPDES sampling of Apple's wastewater showed unexpected TCE in Apple's discharge (24 ug/L). Apple's inventories, manifests, chemical reporting never included TCE. This implies Apple was covertly using TCE at the facility and quietly disposing of it by pouring it down the drain and/or into the groundwater (perhaps via the CERCLA wells).

15.     On Monday, October 21, 2019, a toxic gas alarm went off at the facility triggered by phosphine gas and Apple said, "the gas cabinet would remain shut down and that it would be serviced by the appropriate technician." (Santa Clara City Fire Department Incident Report 2019-1908541). No notice was made to the public and no report was filed to the county, state, or federal governments.

16.     On Friday, July 17, 2020 an alarm went off due to a Tetraethyl Orthosilicate (TEOS) leak. The report noted "an engineer was working on tool and the plumbing had been installed backward." (Santa Clara City Fire Department Incident Report 2020-2005200). Again, there was no notice provided.

17.     Monday, August 17, 2020 a toxic gas alarm went off at the facility and Apple told the city that that "the building had a power outage which caused a shutdown and subsequent activation of all of the toxic gas alarms. Once the system came back online, the meters were checked and all showed readings that no gasses were released" revealing that Apple's toxic gas alarms did not function during power outages and would not detect releases during those times. (Santa Clara City Fire Department Incident Report 2020-2006068)

18.     In 2020 the City HazMat cited Apple for fire code violations, using two EPA ID numbers, inaccurate hazardous materials inventory data, no spill plans or training, no business permit, no signature from supervisor on records, and failure to properly monitor wastewater discharge again.

19.     The City's inspection of the facility on 10/13/2020 was coded as Haz. Waste Generator (Routine) and Permit by Rule (Routine). The City's notification to Apple included the following violations:

- **RCRA Hazardous Waste Generator**
  - **Minor Violation: 3010002 - Hazardous Waste Generator: Identification Number.** Facility has two IDs, inactivate the ID not currently in use and provide documentation for reason on

keeping two different IDs.

- **RCRA Permit by Rule (PBR)**
  - **Minor Violation: 2405 HSC 25200.3(f) (CA), HSC 25201.5(d)(7)(A), CCR 67450.2(b)(3)(B) Plot plan correctly shows unit locations. (3210).** Administration/Documentation – General. Plot plan does not show location of FTU-01 and FTU-02, also plot plan labeling is not readable. Citation: 22 CCR Multiple ; 40 CFR 1 265; HSC 6.5 Multiple; 22 CCR Multiple ; 40 C.F.R. 1 265; HSC 6.5 Multiple; 40 CFR 1 265; HSC 6.5 Multiple

- **HMRRP - Hazardous Materials Release Response Plans (HMRRP)**
  - **Minor Violation: Failure to electronically submit complete and accurate hazardous material inventory information for all hazardous materials on site at or above reportable quantities. HSC 6.95 25505(a)(1), 25506, 25508(a)(1), 25508(a)(3).** Provide correct inventory with corrected reporting measurements - 1700 gallons Diesel Is missing, Argon is reported in pounds, zero amount of chlorine reported; update chemical inventory on CERS with corrected list and amounts of chemicals on site.

- **Aboveground Petroleum Storage Act (APSA)**
  - **Class II Violation: 2517 HSC 25270.6(a)(1) or (2) Failed to file tank facility statement or business plan. (4010032).** Failure to submit a tank facility statement on or before January 1 annually unless a current Business Plan has been submitted. Last submittal on 5/18/18, submit details on CERS within 30 days. Citation: HSC 6.67 25270.6(a)(1); HSC 6.67 25270.6(a)(2); HSC 6.67 25270.6(a)(1), 25270.6(a)(2)
  - **Minor Violation: 2528 HSC 25270.12(a) 25270.4.5(a) SPCC Plan shall include training program (40 C.F.R. 112.7(f)) (4020001).** Failure to provide the following training to all oil-handling personnel: 1. Operation and maintenance of equipment to prevent discharges. 2. Discharge procedure protocols. 3. Applicable pollution control laws, rules, and regulations. 4. General facility operations. 5. Contents of the SPCC Plan. Provide training record for tank inspection personnel. Citation: HSC 6.67 25270.4.5(a); 40 CFR 1 112.7(f)(1); HSC 6.67 25270.4.5(a)
  - **Minor Violation: 2529 HSC 25270.12(a), 25270.4.5(a).** Records of inspections or tests not signed by supervisor or inspector (40 CFR 112.7(e)) (4010021). Failure to comply with one or more of the following requirements: 1. Have record of inspections and tests, including integrity tests, signed by the appropriate supervisor or inspector. 2. Keep written procedures and records of inspections and tests, including integrity tests, for at least three years. 3. Keep comparison records. Citation: 40 CFR 1 112.7(e); 40 CFR 1 112.8(c)(6); HSC 6.67 25270.4.5(a)
  - **Minor Violation: 2547 Failed to conduct annual spill prevention briefings (40 CFR 112.7(f)(3)) (4010023).** Failure to include in the SPCC plan an adequate description of employee training. Training shall address, at a minimum: operation and maintenance of equipment to prevent discharges; discharge procedure protocols; applicable pollution control laws, rules, and regulations; general facility operations; content of the facility SPCC plan; and annual discharge prevention briefings for oil-handling personnel to assure adequate understanding of the SPCC plan. Provide record of annual briefing (not available on site). Citation: 40 CFR 1 112.7(f)(1), 112.7(f)(3); HSC 6.67 25270.4.5 (a)
  - **Minor Violation: 2502 H&SC 25270.4.5(a) Facility owner/operator shall implement SPCC Plan element(s). [ref. CFR 112.3] (4010001).** Failure to prepare a Spill Prevention,

Control, and Countermeasures (SPCC) Plan. Citation: 40 CFR 1 112.3, 112.6; HSC 6.67 25270.4.5(a)

20.    The City's inspection of the facility on 10/26/2020 was coded as Large Quantity Hazardous Waste Generator (Routine). At least one RCRA violation was recorded and reported to Apple with no information provided as to what the violation is, and it was not recorded in the city's list of violations found during inspections. (Oct. 26 2020 email sent to Luca Maestri and Tom Huynh at Apple).

21.    Plaintiff notified Apple of the chemical exposure at her apartment in Sept. 2020 and spoke with an executive in Apple's EH&S team because she saw an Apple building was next door and thought they may have insights into the risk of the existing Superfund site (the apartments and factory are located on the Synertek Superfund site). Plaintiff also spoke with Apple's EHS lawyer in Nov. 2020 about her interest in environmental law and mentioned what happened to her in 2020 and the proximity of the Apple building. Under information and belief, Apple knew it was responsible for Plaintiff's severe injuries no later than Nov. 2020.

22.    The City's inspection of the facility on 12/23/2020 was recorded as Permit by Rule (Not Routine), HWLGQ (Routine), HMRRP (Not Routine), and ASPA (Not Routine). The city noted new violations including failure to provide five-year certification for the fire sprinkler/standpipe system (0064), that fire alarms were not tested on an annual basis and records were not maintained on site (0078), and that there were no annual test reports for the toxic gas alarms (0082). At least two RCRA violations were recorded and reported to Apple with no information provided as to what the violation was, and it was not recorded in the city's list of violations found during inspections. (Dec. 23 2020 email sent to Luca Maestri and Tom Huynh at Apple). Note: the prior Oct. 2020 inspection reports also sent emails to Apple and did include details of those violations, including specific statutes violated.

23.    The city only reported six total violations to CERS for all of Apple's activities at the facility – five violations of the Aboveground Petroleum Storage Act, and one violation of the Hazardous Materials Release Response Plans, all dated Oct. 13 2020. The two RCRA violations were not sent to CERS, and the U.S. EPA was not notified. (CERS 10633816).

24.    Per a review of Apple's manifests, Apple did not replace the carbon/charcoal in its exhaust system for over five years, with the first replacement occurring December 14, 2020 – only after Plaintiff notified Apple EH&S and environmental legal about what occurred to her near 3250 Scott.

25.    On Friday April 30 2021, a toxic gas alarm went off due to another phosphine leak. The city noted "the ventilation system was increased to exhaust the gas out of the facility as fast as possible."  The city added "ARIAs EHS staff was advised to contact CAL OES for their required notification" and noted the Fire Dept. "contacted CAL OES to obtain an incident number 21-2288."  (Santa Clara City Fire Department Incident Report 2021-2103124). The Fire Department used the codename "ARIA" in their own report, and the term "Responsible Party" in the CalOES report, and never used Apple's actual name in either report. Apple never reported the leak to California OES or any other government agency.

26.     Less than two weeks following the April 2021 phosphine leak, Apple's manifests included 60lbs of "*vacuum filters contaminated with glass dust*," implying there may have been a phosphine explosion.

27.    On June 30, 2021, Apple via Susan Creighton ("Global Research EHS Manager") filed Apple's only TRI report for the facility. Apple reported that in 2020 disposed of 260.17 pounds of NMP through "Stack or Point Air Emissions" gas "gaseous" waste and used an "absorber" as a treatment method that had an expected efficient of > 50% but < or = 95%. Apple also reported treating 2,342 pounds onsite and transporting an additional 14,743 pounds for offsite treatment. (95051NTRSL3250S doc. Cont. No. 1320219310885).

28.    On Monday, April 18, 2022 toxic gas alarms went off at the facility and the city noted Apple said "an employee accidentally turned on the bottle for 5% gas fluorine while it was in the cabinet. The system automatically alarmed upon detection of the gas and evacuated it to the atmosphere as designed" and the "the sensor inside the cabinet was reading at 4.38 PPM, but the staff advises that the sensor may be over saturated and takes time before it drops."(Santa Clara City Fire Department Incident Report 2022-2203209). No notice was made to the public and no report was filed to the county, state, or federal governments.

29.    On Sunday, May 29, 2022 toxic gas alarms went off due to a Hexafluorobutadiene leak. The city noted "per the engineer who developed the exhaust system, if the identified levels for the leak have zeroed out then you can allow 30 minutes of the exhaust systme to work and the entire lab should be safe to make entry." (sic). The city added "the chemical is a known respiratory and fire hazard." (Santa Clara City Fire Department Incident Report 2022-2204500). No notice was made to the public and no report was filed to the county, state, or federal governments.

30.    In 2023, there were two vague incident reports. The city has claimed there are no further

incident reports following 2023 per Public Records Requests. The first report was on Friday, January 13, 2023 in response to a toxic gas or fire alarm but was "cancelled while still enroute." (Incident Report 2023-2300384).

31.     The second and last report was for Friday, May 12, 2023 where "all alarm activations were spiked levels that immediately returned to normal. He stated this would not happen if there was a gas release. He stated there was a power outage that appeared to cause the alarm...The Facilities Manager stated they would have their alarm system checked." (Incident Report 2023-2304092).

32.      During three federal RCRA inspections in August 2023 and January 2024, the U.S. EPA found at least nineteen unique violations of the RCRA, with over hundred unique occurrences, including criminal versions of the statute. Among other issues were literal piles of toxic waste (see below) and Apple unilaterally declaring that hazardous waste was not hazardous waste, & transporting hundreds of shipments of hazardous waste with intentionally falsified manifests.

33.     The most significant issue for the nearby community was U.S. EPA's discovery that Apple was operating an unpermitted, unlawful 1,700 gallon hazardous waste storage and treatment system which was venting solvent exhaust into the atmosphere.

34.     U.S. EPA noted that "the tank was marked with the words, 'Hazardous Waste,' and used for the accumulation of spent solvent waste. At the time of the inspection, the solvents were being managed as California Only Waste." (EPA CEI, Attachment A, page 6).




U.S. EPA photo 4a dated 8/17/23.          U.S. EPA photo 13a dated 1/16/2024.






U.S. EPA photo 6a dated 8/17/23.          Photos from Apple's SWT report (2022).

35.     The EPA ordered Apple to notify the BAAQMD of the tank, and on September 13 2023,

Apple applied for a permit with Tom Huynh writing:

> 36.     Apple Inc. (Apple) currently owns and operates emission sources under
> BAAQMD Plant #22839, located in Santa Clara, CA. Apple is requesting an authority to
> construct and permit to operate for a 1,700 gallon solvent waste tank (S-NEW) at the
> facility. S-NEW is a horizontal aboveground tank receiving waste solvent and water from
> solvent spray benches and wet benches from S-1 (Semiconductor Fab Research and
> Development Facility). … We appreciate BAAQMD's ongoing support. If you have any
> questions regarding the attached application, please call me at [number].

(Apple Inc. Plant #22839, Ref. 0664430).

37.     Among other issues, Apple did not disclose in their letter that they had actually be operating

this tank since 2017 and Apple appeared to be asking BAAQMD to call him if they have any questions in

an effort to not create any paper trail of questions or concerns. Deeper in the application Apple did

discloses the initial operation of the tank was "approximately" July 15 2017. The specifications for the tank

were attached on page 29 and the document was reviewed and signed by Apple's contractors on Oct. 18

2016. This contradicts Apple's own timeline, as attached contractor records dated October 2016 show

fabrication and pressure testing occurred well before the claimed operational date.

38.     In addition, the U.S. EPA found this tank was venting the solvent exhaust to the roof. Apple

was using a 55-gallon container filled with "Activated Carbon". The U.S. EPA noted "the container was

not labeled or identified in Apple's air permit or their RCRA tank assessment."   The U.S. EPA also

captured a photo of the exhaust and noted that it was "a photo of three vents connected to Apple's 55-gallon container filled with "Activated Carbon". The two vents on the left are emergency vents for the double-walled tank. The vent on the right is the main vent." (Attachment A, page 8, photograph 7b). Notably the exhaust vent is extremely narrow and pointed downward, away from the air flow at roof level.

39.    After Plaintiff learned of Apple's activities at 3250 Scott Blvd and announced her discovery publicly in Feb. 2023, Defendant Apple then proceeded to file permits in early April for "*installation of a new VOC abatement system*" with "*two new solvent exhaust fans.*" (Permit BLD23-68895). The EPA's inspection reported noted that the exhaust system for the solvent tank was not referenced in Apple's Oct. 2022 system assessment. Apple claimed the devices were already included in their BAAQMD permit; however, it was never mentioned in that application. (CEI pg13-14).

40.    It appears that based on the timelines and inconsistencies, Apple obtained the new activated charcoal abatement system after Plaintiff learned about their activities and they rushed to install it prior to the U.S. EPA inspection, and in their haste, it appears they connected the wrong vent pipes, venting to the curved down backup pipe as a primary exhaust – then upon EPA questioning them about it, it appears Apple decided to present the issue as negligence instead of an intentional cover-up, as there is no other logical explanation why they would install their exhaust this way.



U.S. EPA photo 7b dated 8/17/23.

41.    U.S. EPA's Aug 17 2024 Compliance Evaluation Inspection cited Apple for violations of RCRA requirements related to hazardous waste generators and RCRA permits including:
-    262.11  Generators must determine if their solid waste is a hazardous waste.
-    262.17(a)(1)(iv): Closed container during storage in LGQ CAA, with limited exceptions.

- 262.17(a)(5)(i)(C): date each period of accumulation begins is marked and visible on each LQG container
- 262.17(a)(5)(ii)(B): Mark or label its tanks with an indication of the hazards of the contents (examples include, but are not limited to, the applicable hazardous waste characteristic(s) (i.e., ignitable, corrosive, reactive)
- 262.17(b): If LQG accumulates for longer than 90 days, it is a storage facility, unless granted an extension
- 270.1(c): Permit And Post-Closure Permit Requirements

42.    It also appears, per U.S. EPA's report, that the Santa Clara City Fire Dept. made an unexpected visit to Apple's factory the morning of the U.S. EPA's inspection, effectively putting Apple on notice and obstructing the U.S. EPA's ability to surprise Apple, as is standard with unannounced inspections. The U.S. EPA report noted that the EPA inspection was unannounced, and the Assistant Fire Marshall for the City of Santa Clara said he had scheduled inspections three weeks prior. (pg3). However, there is no record of these inspections on CERS or in the agency records, and the agency repeatedly refused to respond to Public Records Requests related to this supposed pre-planned inspection.

43.    Then U.S. EPA's Jan. 16 2025 Focused Compliance Inspection of Apple's facility found additional violations including:

- 262.11  Generators must determine if their solid waste is a hazardous waste.
- 262.17(a)(5)(i)(C): Date each period of accumulation begins is marked and visible on each LQG container
- 262.17(a)(5)(ii)(B): Mark or label its tanks with an indication of the hazards of the contents (examples include, but are not limited to, the applicable hazardous waste characteristic(s) (i.e., ignitable, corrosive, react
- 262.20(a)(1): A generator who transports, or offers for transport a hazardous waste for offsite treatment, storage, or disposal (TSD), or a TSD facility who offers for transport a rejected hazardous waste load
- 265.195(a): Daily inspection requirements
- 265.1063(b)(3): Calibration of instrument by procedures specified in reference method 21
- 265.1083(c)(1): Tank, surface impoundment, or container for which entering hazardous waste has average VO concentration at point of origination < 500 PPMW; how VO concentration shall be determined; frequency of review
- 270.1(c): o/o permit and post-closure permit requirements

(U.S. ECHO page for 3250 Scott Blvd).[3]

44.    The most recent update posted by the City of Santa Clara related to 3250 Scott Blvd is from June 10 2025 and cited Apple for a number of fire code violations at the facility including: "it is unclear what the emergency power off button serves in FACP room," "clear storage in front of exterior exit door

---

[3] U.S. EPA, https://echo.epa.gov/detailed-facility-report?fid=110001168254

obstructing egress in the small parts room," "MOCVD bunker. Relocate 'danger' sign from exit door." (Permit FOP25-10526).

# DEFENDANTS

## I. Corporation: Apple Inc. (Operator)

45.    Apple Inc. owns and operates an unpermitted semiconductor fabrication facility at 3250 Scott Blvd, Santa Clara, California. Apple has operated this facility since approximately 2015 without required federal air permits or hazardous waste permits, while misrepresenting its operations as a simple research and development office.

46.    Per City records, Apple began planning use of the facility around 2014, with August 11 2014 meeting notes between Apple and the city Fire Dept. (2014_095 AA) noting that at that time "*no residential use was proposed*" so "*no off site consequences studies*" are assumed, and also noted that one area in Apple's facility may need "*explosion control.*" (pg2). The notes also expressly stated "*air permit will be thru BAAQMD*" and that they need to discuss "CalARP" with the fire department. (pg1).

47.    Apple is fully aware of the relevant environmental violations as its currently employs a prior U.S. EPA Administrator and much of her prior U.S. EPA staff, in its Government Affairs and Lobbying team. Further, Apple has stated to the U.S. EPA and public that is a leader in environmental compliance, including in applying for U.S. EPA "chemical safety" awards as recently as last year.[4] Apple's Supplier Responsibility documents also extensively detail the environmental and safety legal obligations for operations at its  factories. Apple knew what the law is and intentionally chose to violate those laws in pursuit of the economic benefits of noncompliance.

48.    Apple has been subject to multiple environmental lawsuits and consent agreements in the United States including recently in California (see Violations During Consent Decree below) and North Carolina.[5] Further, the only other known instance of Apple operating a semiconductor fab facility in the United States was described by a union leader, as published in The American Prospect, as "*easily the most*

---

[4] U.S. EPA, 2024 Safer Choice Partner of the Year Award Winners,
https://www.epa.gov/saferchoice/2024-safer-choice-partner-year-award-winners
[5] The Carolina Journal, *Apple clean energy project fined for environmental violations*, Don Carrington, Oct. 6 2017, https://www.carolinajournal.com/apple-clean-energy-project-fined-for-environmental-violations/

*unsafe sites"* the leader had *"ever walked on."*[6]

49.    Apple has also been caught exposing its employees to dangerous gases including in North Carolina,[7] China,[8] and in recently in Arizona. In Arizona, the gas exposure was handled by lying to the employees that the evacuation alarm was simply a fire drill.[9]

## II.  CITY OF SANTA CLARA (CUPA)

50.    The City has knowingly permitted and facilitated the illegal operations at 3250 Scott since 2015, failed to enforce applicable regulations, and actively concealed violations from affected residents and regulatory agencies. The City has been delegated authority by California EPA to implement and enforce various federal environmental programs within its jurisdiction, including but not limited to air quality permitting, wastewater pretreatment oversight, hazardous waste regulation, and emergency planning coordination. The City has assumed regulatory oversight responsibilities over the Facility's environmental compliance through its delegated authority under state and federal environmental programs.

51.    The City Fire Department has been under CUPA corrective action oversight by CalEPA for years. The most recent status report, dated Sept. 16 2024, notes that the Santa Clara government was still unable to correct multiple systemic deficiencies that were identified in 2020 including five items CalEPA said they were carrying through to the 2024 evaluation including that  Santa Clara city is not consistently following up and documenting return to compliance in CERS for Hazardous Waste Generators, the City is not ensuring all businesses comply with Hazardous Materials Business Plans, the City is not inspecting each facility subject to HMBP requirements at least once every three years, the City is not inspecting all Hazardous Waste Generator facilities with appropriate frequency, and the City is not regulating all facilities subject to the Hazardous Waste Generator Program. (pg. 1-2).

---

[6] The American Prospect, *Chipmaker's Scramble to Build Marred by Mistakes and Injuries,* June 22 2023, https://prospect.org/labor/2023-06-22-tsmc-semiconductor-factory-phoenix-accidents/
[7] The Guardian, *Five injured in chlorine gas leak at Apple data centre: Workers treated at the scene in North Carolina by paramedics before being taken to hospital after exposure to noxious fumes*, June 2 2015. https://www.theguardian.com/technology/2015/jun/02/injured-chlorine-gas-leak-apple-data-centre
[8] NBC News, *Report: Deadly gas leak at Apple supplier's plant in China,* July 27 2012, https://www.nbcnews.com/news/world/report-deadly-gas-leak-apple-suppliers-plant-china-flna714480
[9] The American Prospect: "People were told that there was an active-shooting drill, and they were running, and [told] to evacuate the area. So our guys got out of the area. And they found out later that it was a gas leak. And they were just trying to hide that. So no one trusts them."

### III. KALIL JENAB (PROPERTY OWNER)

52.     Defendant Kalil Jenab is the property owner and landlord of the site at 3250 Scott Blvd. As owner, he is responsible for leasing, maintaining, and overseeing the condition of the premises. Under federal and state hazardous waste laws, property owners who knowingly allow dangerous activities, hazardous waste accumulation, and unpermitted chemical operations to occur on their land — particularly where ongoing contamination or exposure is occurring — may be held jointly liable for the resulting environmental and health harms.

53.     Mr. Jenab has continued to lease the property to Apple Inc. despite years of documented violations, chemical spills, fires, and regulatory findings of environmental endangerment. He has taken no apparent steps to abate these conditions, to restrict unlawful activities on-site, or to notify regulators or nearby residents. His continuing passive ownership and lease enable the hazardous conditions to persist and expand, in violation of environmental law and common law duties to prevent public nuisance and protect human health.

54.     It is unclear if Mr. Jenab owns the property as a private investment or as part of his work managing real estate at Cushman & Wakefield, so for now, both are noticed.

## STATUTORY AND REGULATORY FRAMEWORK

55.     The U.S. EPA is the federal agency responsible for enforcing the Clean Air Act, RCRA, TSCA, CWA, and EPCRA. The U.S. EPA has actual knowledge of the violations described herein through its 2023-2025 investigation. Despite this knowledge and the imminent and substantial endangerment to public health, the U.S. EPA has failed to take enforcement action.

56.     The California EPA delegated federal environmental oversight of operational activities to the regional air board (BAAQMD) and the City Fire Department. The CUPA overseeing the facility at 3250 Scott Blvd is the Santa Clara City Fire Department and HazMat team. (The City opted out of Santa Clara County DEH oversight).

57.     The San Jose Regional Wastewater Treatment Facility oversees sewer discharges. The City of Santa Clara Code Enforcement oversees stormwater discharges.

### IV. CLEAN AIR ACT (§ 304)

58.     Apple intentionally vented its fabrication exhaust, unabated, and consisting of toxic solvent

vapors, gases, and fumes, into the ambient outdoor air. The factory was one story, while the apartments were four stories high, creating a high likelihood that Apple's factory exhaust entered the interior air of the apartments through open windows and the 'fresh air intake' vents.

59.     The Defendants have violated the Clean Air Act through unpermitted air emissions, air emissions in violation of air pollution standards, and failure to obtain required permits related to exhaust and air releases. The Defendants violations are in the past, but also ongoing, and also expected to continue in the future without judicial intervention. Enforcement is available under 42 USC § 7604(a).

60.     On May 1 2023, Apple obtained a Bay Area Air Quality Management District Permit to Operate a "Semiconductor fab." (PLANT# 22839). Apple previously had no air permits for their fabrication exhaust. The permit conditions included maximum limits for chemical usage and emissions. Apple filed an updated request to include the exhaust from their unpermitted hazardous waste treatment tank on Sept. 15 2023, and it was approved around April 2024. (Permit 32236).

61.     Plaintiff filed a complaint against Apple with the BAAQMD in July of 2024 and shared the U.S. EPA RCRA inspection report with the agency, leading them conduct their own onsite investigations on Aug. 29 2024 and Sept. 12 2024. BAAQMD then cited Apple for a number of air quality violations at the facility including multiple violations of 2-1-301 and 2-1-302 (Permit Requirements – Authority to Construct and Permit to Operate) and 9-7-307.1 (NOx and CO Emission limits). (Violations A64215A, A64215B, A64219A, A64218A, A64216A, and A64216B).

62.     The Facility conducts activities that require permits under the CAA. The Defendant and its agents conduct these activities, and the Landowner and City have knowledge that these activities require CAA permits but have failed to ensure that proper permits were obtained. The Landowner and City have allowed Apple and the  Facility to continue operating without required CAA permits despite having actual knowledge of the permit requirements. These unpermitted activities constitute ongoing violations of the CAA.

63.     Apple also reported to the Bay Area Air Quality Management Board, in difficult to find agency filings, that in at least 2019-2021, 3250 Scott exhausted reportable amounts of mercury, arsenic, carbon monoxide, and formaldehyde into the ambient air around the factory.

64.     **DUMPING:**  The Defendants have violated 42 U.S.C. § 7410 (Section 110) by dumping hazardous substances into the atmosphere that exceed state-specific emission limits.

65.    **DUMPING**: The Defendants have violated 42 U.S.C. § 7411 (Section 111) by dumping hazardous substances into the atmosphere which exceed emission standards, including chemicals like Arsine, Phosphine, Silane, Benzene, Mercury, and NMP.

66.    **DUMPING**: The Defendants have violated 42 U.S.C. § 7412 (Section 112) by dumping hazardous substances into the atmosphere that knowingly and intentionally does not comply with MACT standards.

67.    **PERMITS/STANDARDS**: The Defendants have violated 42 U.S.C. § 7411 (Section 111) by failing to comply with standards of performance for stationary sources.

68.    **PERMITS/STANDARDS**: The Defendants have violated 42 U.S.C. § 7412 (Section 112) by failing to comply with national emission standards for hazardous air pollutants.

69.    **PERMITS/STANDARDS**: The Defendants have violated 42 U.S.C. § 7410 (Section 110) by failing to comply with state implementation plan requirements.

70.    **PERMITS/STANDARDS**: The Defendants have violated 42 U.S.C. § 7491 (Section 169) by failing to comply with visibility protection standards.

## V.  RESOURCE CONSERVATION AND RECOVERY ACT (§ 7002)

71.    The Defendants have violated the RCRA, and enforcement is available under 2 U.S.C. § 6901. The Facility generates, transports, treats, and disposes of hazardous waste subject to RCRA regulation. The Defendants violations are in the past, but also ongoing, and also expected to continue in the future without judicial intervention. The entirety of the U.S. EPA RCRA CEI report is incorporated here, including facts, allegations, and RCRA violations.

72.    **DUMPING**: Defendants have violated 42 U.S.C. § 3001-3005 by improper treatment and disposal of hazardous waste, including open dumping of hazardous waste into the air, soil, and water.

73.    **DUMPING & PUBLIC DANGER:** Defendants have violated 42 U.S.C. § 6973 (Section 7003) by creating and maintaining an imminent and substantial endangerment to the community and the environment.

74.    **PERMITS/STANDARDS:** The Defendants have violated 42 U.S.C. § 6922, 40 C.F.R. Part 262 (Section 3002) by failure to properly characterize hazardous waste streams; improper storage of hazardous waste beyond regulatory time limits; failure to properly manifest hazardous waste shipments; and inadequate personnel training and emergency procedures.

75.    **PERMITS/STANDARDS:** The Defendants have violated 42 U.S.C. § 6923, (Section 3003) by failing to keep required records, failing to properly label waste, failing to comply with manifest rules, and transporting hazardous waste without manifests and without proper categorization.

76.    **PERMITS/STANDARDS:** The Defendants have violated 42 U.S.C. § 6924, (Section 3004) by failing to comply with treatment, storage, and disposal standards. The Defendants have violated 40 C.F.R. Part 264-265, through uncontrolled air emissions from hazardous waste treatment tanks; failure to install required air emission control devices; failure to conduct required air emission monitoring and testing; and failure to maintain emission control equipment in proper working order.

77.    **PERMITS/STANDARDS**: The Defendants have violated 42 U.S.C. § 6925, 40 C.F.R. Parts 264, 270 (Section 3005) by operating hazardous waste treatment facility without required RCRA permit; operating without other required permits; and  violating permit terms and conditions.

78.    **FEDERAL DELEGATION:** The City serves as the primary oversight agency for RCRA permit compliance for multiple aspects of the Facility's hazardous waste operations. The City has allowed unpermitted hazardous waste activities and processes to occur at the Facility and failed to report RCRA violations to appropriate state and federal agencies despite having knowledge of such violations.

## VI. Clean Water Act (§ 505)

79.    The Defendants have violated the Clean Water Act, and enforcement is available under 33 USC § 1365(a)(1). The Defendants violations are in the past, but also ongoing, and also expected to continue in the future without judicial intervention. The City co-operates the municipal wastewater treatment system and has delegated authority under the CWA's National Pollutant Discharge Elimination System (NPDES) pretreatment program.

80.    The Facility discharges wastewater into the City's sewer system, which ultimately reaches the Pacific Ocean (U.S. Waters). The San Tomas Aquino Creek and Saratoga Creek also flow to the SF Bay and then into the Pacific Ocean, the Waters of the United States under Section 301/402.  Further,  the city's website explains that "any pollutant that flows into the storm drain ends up in our creeks, the San Francisco Bay and eventually the ocean. The City of Santa Clara has three ephemeral creeks (Calabazas Creek, Saratoga Creek and San Tomas Aquino Creek) and the Guadalupe River. … Nothing besides clean

water may be dumped or allowed to flow into a storm drain. "[10]

81.    On November 19, 2015, the San Jose-Santa Clara Regional Wastewater Facility notified Apple of their status as a Significant Industrial User as defined under 40 CFR 403.3(t)(i) and (ii), and of their responsibilities as industrial users under the RCRA. (Permit SC-461B).

82.    The Wastewater Facility also discovered Apple was doing semiconductor fabrication and revoked Apple's prior "research and development" NPDES permit and issued a different and more comprehensive one specific for semiconductor fabrication on Oct. 21 2016. The Wastewater Facility said the new permit was to comply with 40 C.F.R. 469 Subpart A. The Wastewater Facility also cc'd Environmental Compliance Officer for the City of Santa Clara.

83.    On March 30 2016, Apple was cited by the San Jose-Santa Clara Regional Wastewater Facility for Failure to Use Proper Sample Method in Discharge Reports in violation of 40 CFR 403.12 (g)(3) and SCCC-13.10.580. On April 11 2016, Apple was cited by the San Jose-Santa Clara Regional Wastewater Facility for Inappropriate sample frequency in violation of 40 CFR 403.12(h) and SCCC-13.10.500. On May 11 2016, Apple was also cited for Late Reporting Discharge Reports in violation of SCCC-13.10.580. (Permit SC-461B Warning Notice WN-009174). The Notice of Violation explained:

"The permit conditions contained in the San José-Santa Clara Regional Wastewater Facility Industrial Discharge Permit, SC-461B for Apple, Inc. requires sample analyses by 40 CFR 136 methods and sampling during the monitoring period from 9/1/2015 to 2/29/2016 for Self Monitoring Report due on 3/31/2016. Apple Inc. failed to analyze samples collected for Self-Monitoring Report (SMR) using 40 CFR 136 methods and failed to sample during the monitoring period. Apple, Inc. did re-analyze samples using correct methods, but the final and complete self monitoring report was not received until 5/11/2016, after the permit required due date of 3/31/2016."

(Warning Notice WN-009174, May 23 2016).

84.    On March 30 2016, the San Jose-Santa Clara Regional Wastewater Facility approved a request for Apple to discharge wastewater from their "deionization system and fab plumbing" to the sewer system but instructed all discharges must comply with 40 CFR 403.5 "National Pretreatment Standards: Prohibited Discharges" and warned Apple that "the discharge of water or wastewater which causes pollution or violation of any effluent limitations, national standard of performance, or national pretreatment or toxicity standard may result in the assessment of civil penalties and/or suspension of sewer

---

[10] Santa Clara City, Stormwater Pollution Prevention, https://www.santaclaraca.gov/our-city/departments-g-z/public-works/environmental-programs/stormwater-pollution-prevention

service to your facility." (March 30 2016).

85.     On June 6 2016, Apple responded via Linda Knudsen, explaining despite operating for a year at the facility, "inadequate systems were in place to predict a permit response requirement in a timely manner" and "procedures with the lab were not set up for collection of samples." Knudsen noted that one of the remedies taken was that "Apple reviewed plans with the City to ensure accurate understanding of the requirements for the submittal."

86.     On June 9 2016, a Santa Clara City Stormwater Inspector reported that Apple had dumped cooling water into the storm drains at the site. The ticket was not updated until Feb. 10 2022, six years later, when it was closed as completed 27 minutes after being assigned. (Santa Clara Spill Ticket #1657490).

87.     Santa Clara city Code Enforcement team then conducted their first Stormwater Inspection of the facility on April 5 2022. The reported noted that two bioretention areas were missing required cobblestones or had too many, the other bioretention area "*does not appear to be a bioretention area or other stormwater treatment facility*" and noted that none of Apple's storm drains at the facility had required "No Dumping" medallions. Santa Clara city marked the site as "in compliance – implement corrective actions." Upon reinspection on June 3 2022, the bioretention areas had not been corrected and the storm drains still did not have "No Dumping" medallions. No updated reports were provided by the city.

88.     On September 21 2020, Apple was cited by the San Jose-Santa Clara Regional Wastewater Facility for inappropriate sample frequencies in violation of 40 CFR 403.12(g) and SCCC-13.10.420.

> "The permit condition contained in the San José-Santa Clara Regional Wastewater Facility Industrial Permit, SC-461B for Apple, Inc., requires sampling during the monitoring period from 3/1/2020 to 8/31/2020 for Self Monitoring Report due on 9/30/2020. Apple, Inc., did not collect samples during the monitoring period."

(Warning Notice WN-009573, Jan. 29 2021).

89.     Apple's leaks, spills, and releases were not limited to the air. Apple's wastewater discharge monitoring repeatedly showed the presence of heavy metals and organic solvents. In 2017, the government mandated testing revealed the presence of 29 µg/L of 1,1-Dichloropropane, 24 µg/L of Trichloroethylene ("TCE"), and 6.7 µg/L of Ethyl tertiary-butyl ether (ETBE). Among other issues, it's unclear why Apple had TCE on site but not in any of its chem. inventories, and then, in addition, why exactly Apple was pouring that TCE down the drain.

90.     3250 Scott reported an average daily water usage of around 44,000 gallons per day and the

sewer pipes carrying 3250 Scott's discharges flowed downhill and directly around the apartment where Plaintiff lived in 2020. In 2020, the government had already started investigating the plumbing at her apartment as a possible vector for some unknown solvent vapor pollution.

91.     **DUMPING**: The Defendants have violated 33 U.S.C. §§ 1311, 1316, 1317 with unpermitted discharges, discharges in violation of effluent limits, and without permits.

92.     **DUMPING**: The Defendants have violated 33 U.S.C. §§ 1313, 1345 with violations of water quality standards and unlawful disposal of sewage sludge.

93.     **DUMPING**: The Defendants have violated 33 U.S.C. § 1342 (NPDES) by discharging without appropriate permits and violation of stormwater permit conditions

94.     **PERMITS/STANDARDS**: The Defendants have violated 33 U.S.C. § 1342 (NPDES) by discharging in violation of permit terms and conditions. Defendants have falsified discharge monitoring and have not reported what they're actually discharging. Defendants have failed to pretreat discharge.

95.     **FEDERAL DELGATION:** The City has knowledge that discharges from the Facility into the sewer system are causing downstream residents to become ill. Despite this knowledge, the City has failed to take appropriate enforcement action to stop the harmful discharges.

## VII. Emergency Planning and Community Right-to-Know Act (§ 326)

96.     The Defendants have violated the EPCRA, and enforcement is available under 42 USC § 11046. The Defendants violations are in the past, but also ongoing, and also expected to continue in the future without judicial intervention.

97.     Apple's most recent chemical inventory for the site, submitted Feb. 28 2025, still lists extensive amounts of very dangerous substances including Silane, Chlorine gas, Ammonia ($NH_3$), sulfuric acid, and dichlorosilane.[11] Apple's hazardous waste manifests for the site show that in 2024 its still processing at least 120 tons of arsenic, at least 50 tons of ignitable waste, and at least 36 tons of corrosive waste at this single facility. It's also disposed of at least thirty tons of "unspecified sovlent mixture" as "non-RCRA" waste in just 2025.[12]

98.     Defendant's have only filed one TRI report for the facility since beginning operations in

---

[11] CalEPA, https://siteportal.calepa.ca.gov/nsite/map/results/detail/385316/chemicals
[12] U.S. EPA, https://hwts.dtsc.ca.gov/facility/CAR000278176

2014-2015. The report was filed in 2021 with emission data from 2020. It is unclear why no reports were filed prior or after, and why Apple chose to file a report only for the year in which it nearly killed its employee, Plaintiff, with its illegal emissions. The 2020 TRI report includes emissions of 16,083.62 pounds of CAPS, 15,607.9 pounds of VOCs, and 260.17 pounds of TRI Air Toxics. This included air releases of Benzene, Carbon Monoxide, Acetaldehyde, Formaldehyde, Nickel, Sulfur Dioxide, and NMP.[13]

99.     **STANDARDS:** The Defendants have violated EPCRA §302, 42 U.S.C. § 11002 ("Emergency planning notification") by failure to notify State Emergency Response Commission (SERC) and failure to designate facility representative.

100.    **STANDARDS:** The Defendants have violated EPCRA § 304, 42 U.S.C. § 11004, ("Emergency Release Notification") by failing to report releases of extremely hazardous substances and CERCLA substances that exceeded reportable quantities and failing to provide community notifications. The City has knowledge of chemical releases from the Facility but has failed to notify the community as required under EPCRA § 304.

101.    **STANDARDS**: The Defendants have violated the EPCRA §§ 311 and 312 (Hazardous Chemical Inventory Reporting) by failing to keep an accurate and up-to-date inventory of hazardous chemicals and failing to report those inventories to the state and local government.

102.    **STANDARDS**: The Defendants have violated the EPCRA § 313, 42 U.S.C. § 11023, ("Toxic Chemical Release Inventory") by failing to report toxic chemical releases (TRI reporting) TRI reporting failures for TCE, NMP, arsenic compounds. The City has failed to ensure that the Facility submits required Toxics Release Inventory (TRI) reports under EPCRA § 313.

## VIII. Toxic Substances Control Act (§ 20)

103.    The Defendants have violated the TSCA through conduct related to lead, and multiple violations of other rules and orders. The Defendants violations are in the past, but also ongoing, and also expected to continue in the future without judicial intervention. Enforcement is available under 15 USC § 2619(a).

104.    Apple's most recent chemical inventory for the site, submitted Feb. 28 2025, lists a number of TSCA regulated chemicals including, but not limited to, extensive amounts of n-methyl-2-pyrrolidone

---

[13] U.S. EPA, https://echo.epa.gov/air-pollutant-report-new?fid=110001168254

(NMP), lead, and glycol ethers.[14]

105.    **DUMPING**: Apple reported to the government that in the year 2020, Apple released at least 7.8 tons (15,608 pounds) of volatile organic compounds and 260 pounds of the combustible solvent N-Methyl-2-pyrrolidone (NMP) into the atmosphere around 3250 Scott. In 2022, the EPA severely restricted the legal use of NMP as *"it presents an unreasonable risk of injury to human health"* under TSCA.

106.    **STANDARDS:** The Defendants have violated the TSCA Section 6, 15 U.S.C. § 2605, ("Regulation of hazardous chemical substances and mixtures") by unlawful manufacturing, processing, and/or distribution; violations of use restrictions; and failure to comply with phase-out requirements.

107.    **STANDARDS**: The Defendants have violated the TSCA Section 15, 15 U.S.C. § 2614, ("Prohibited acts") by manufacturing, processing, or distributing prohibited chemicals and failure to comply with orders, rules, or regulations.

## IX.  PUBLIC NUISANCE (CAL. CIV CODE § 3491)

108.    In violation of California Civ Code §§ 3479, 3480, 3490, 3491, and 3493, Defendants have created and maintained a public nuisance which affects an entire community, neighborhood, and a considerable number of persons. Defendant's conduct is an obstruction of public right.

109.    In violation of Santa Clara City Code Chapter 8.30, Defendants have created a public nuisance with conditions which are offensive or annoying to the senses, detrimental to property values and community appearance, an obstruction to or interference with the comfortable enjoyment of adjacent property or premises, and hazardous or injurious to the health, safety, or welfare of the general public.

110.    In violation of Santa Clara City Code Section 8.30.030 (Ord. 1663 § 1, 11-1-94), Defendant's created conditions which are injurious to health, is indecent or offensive to the senses, and is an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property; and which affects at the same time an entire community or neighborhood, and considerable number of persons.

111.    Defendants created an attractive nuisance in violation of Santa Clara City Code 8.30.020(c) by creating unsafe conditions directly adjacent to a public playground.

112.    Defendants spread of smoke, dust, and fumes over a considerable area filled with private

---

[14] CalEPA, https://siteportal.calepa.ca.gov/nsite/map/results/detail/385316/chemicals

residences, effects numerous people, and interferes with the use of public spaces is an express public nuisance under the Restatement 2ⁿᵈ of Torts Section 821(b) comment g.

113.     Defendants activities are injurious to health, including, but not limited to, the indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, and unlawfully obstruct the free passage or use of public streets, public creeks, public parks, and public squares.

114.     Defendants conduct in creating and maintaining this nuisance violates multiple statutes and thus is a *per se* nuisance.

115.     Defendants creation and maintenance of a public nuisance, and willful omission to perform legal duties relating to the removal of a public nuisance, are misdemeanors in violation of Cal. Penal Code Title 10, Crimes against the Public Health and Safety, Section 372.

116.     The harm created by Defendants actions and inactions is severe, imminent, prospective, and continuous. The injuries created by the harm are irreparable. Injunctive relief to protect the public and restore the environment serve an important interest and are justified and required to effectuate the congressional intent of the related environmental statutes.

117.     Plaintiff is enabled to maintain an action for public nuisance because this public nuisance was especially injurious to herself. Plaintiff was harmed to a different degree and of a different kind, than the general public. (See Personal Injuries and Standing).

## VIOLATIONS DURING CONSENT DECREE (2016-2020)

118.     During the period of most egregious violations (including plaintiff's poisoning), Apple was operating under an active Consent Decree with the State of California for hazardous waste violations at another facility. (*People of the state of California v. Apple Inc*, 16CV303579 Superior Court of the state of California County of Santa Clara). The timing of consent decree termination immediately following Apple's knowledge of plaintiff's poisoning demonstrates consciousness of guilt and obstruction of justice.

119.     The Complaint was filed by DTSC under Cal. Health and Safety Code, §§ 25100 et seq. and Paragraph 31 listed the violations which included:

"Causing **treatment and disposal of hazardous waste at an unauthorized point**, at and from Sunnyvale Facility (Health & Saf. Code,§ 25189.2, subds. (c) and (d)).

**Transportation of hazardous waste without manifests** from Sunnyvale Facility (Health & Saf. Code §25160, Cal. Code Regs., tit. 22, §§ 66262.20, 66262.23. 66268.7).

**Failure to report and track export of hazardous waste** from Tantau Avenue Facility (Health & Saf. Code § 25162.1, Cal. Code Regs, tit. 22, §§ 66273.40, 66262.53, 66262.56, 66262.57).

**Failure to label or otherwise clearly mark** used oil containers as ″**Hazardous Waste**″ (Cal. Code Regs., tit. 22, § 66262.34, subd. (f))."

*The People of California v. Apple Inc,* Complaint, page 7, paragraph 31 (2016).

120.    The permanent injunction, Ordered Dec. 08 2016, and docketed Dec. 12 2016, included the following:

"The terms of this Stipulation and the Final Judgment shall apply to and be binding on (a) Apple its successors, and its officers, directors, and employees, and all persons acting within the control of Apple …**at any facility in California owned or operated by Apple at which electronic waste or any other hazardous waste is treated,** or recycled (″Apple Facility″) and (b) the Department and any successor agency of the Department that may have responsibility for, and  jurisdiction over, the subject matter of the Complaint and Final Judgment….

Section 7: Apple shall be enjoined and ordered as follows:

a. Apple shall ensure that its officers, directors, and employees, representatives, and all persons acting within the control of Apple **at any Apple Facility** comply with **all of the laws and regulations specifically identified in the violations alleged in Paragraph 31** of the Complaint.

b. Any officer or employee of Apple assuming responsibility for, or oversight of, hazardous waste management at Apple, including Apple′s Facility manager, primary and secondary emergency coordinators, and the technicians responsible for baghouse maintenance and operations, must attend and successfully complete Modules 1-V relating to hazardous waste at California Compliance School within six months of their hire, promotion, or assumption of  responsibility unless they have attended the California Compliance School and passed the relevant modules within the last five years before the date of their hiring, promotion, or assumption of responsibility.

c. Apple shall ensure that e-waste labeled as Universal Waste, including shredded e- waste, is not mixed or otherwise placed in containers with dust derived from its shredding operations.

d. Apple **shall conduct weekly inspections of all areas of its facilities where hazardous waste is generated or accumulated**, including an inspection of all municipal waste containers and e-waste containers to inspect for improper management of hazardous waste. **Apple shall maintain a written log on-site of the inspections** required by Cal. Code of Regs, tit. 22, section 66265.15. The log shall be furnished upon request, and shall be made available at all reasonable times for inspection, to any officer, employee or representative of

DTSC or the local Certified Unified Program Agency ("CUPA")."
Emphasis added.

121.    On Dec. 09-11 2020, Apple and the California Dept. of Justice stipulated to end the permanent injunction against Apple. Scott B. Murray signed for Apple on Dec. 11 2020 as "Director, Commercial Litigation" and the document was prepared and filed by Apple's defense counsel, William F. Tarantino (head of environmental litigation at Morrison & Foerster, and prior staff at U.S. EPA Region IX Office of Regional Counsel for prosecution of violations of the CAA, CWA, and RCRA).[15]

122.    Reed Soto, Deputy AG, signed on behalf of the California government dated Dec. 09 2020. The stipulation included the text: "the Department has reviewed Apple's history of compliance with the terms of the Fina Judgment, and the Department, as of this date, has no information that Apple has not substantially complied with its obligations under the Final Judgment."

123.    As discussed, the city of Santa Clara did not report any RCRA or related violations on CERS or to the U.S. EPA from the inspection ins 2016 or in Dec. of 2020. The city did report several APSA and one HMRRP violation from Oct. 13 2020, but only on CERS. In 2023, the city told the U.S. EPA that there were no RCRA violations in any prior inspections. (see 2024 U.S. EPA RCRA Inspection Report details).

124.    The October 2020 inspection followed Plaintiff's reports to the city (including this Fire Dept/HazMat team) and Apple's EH&S/Real Estate teams about becoming severely ill due to chemical exposure at the apartments directly next to Apple's factory. It appears connected that the city inspected the facility within four weeks of Plaintiff's report.

125.    If Apple set up their Solvent Waste Tank in 2017, then the Oct. 2020 inspection would have been the first time the City of Santa Clara saw the tank in use. The City would have known it was being operated without permits and was exhausting to the roof, yet did not cite Apple for it, and made no note of it. Reporting Apple's unauthorized tank would have violated multiple points in Apple's consent agreement with the state of California and put Apple's ability to end the permanent injunction at risk, so assumably Apple pressured the city to not report is unlawful hazardous waste tanks and activities.

126.    In Dec. 2020, Apple filed its first manifests to dispose of solvent saturated activated carbon, signifying they changed their carbon filters for the first time and/or legally disposed of the filters for the

_____

[15] William F. Tarantino, https://www.mofo.com/people/william-tarantino

first time. The 2024 U.S. EPA RCRA report notes that Apple reported the management of activated carbon as a waste only starting around Dec. 14 2020. (EPA CEI pg 13-14). It appears Apple was not abating its exhaust prior to that, and the implication is they only started after realizing they were responsible for Plaintiff (and many others) suffering severe chemical injuries. Among other issues, EPA also noted the solvent saturated carbon is an RCRA waste and Apple had been unlawfully disposing of it as non-RCRA waste. (pg14).

127.    The Order ending the consent agreement was signed by the court on Dec. 22 2020 and docketed Jan. 14 2021. (*The People of California v. Apple Inc*, 16-cv-303579, Superior Court of California, Santa Clara County).

128.    The CalEPA CUPA Evaluation Progress Report for City of Santa Clara was finalized on July 8 2024 for the period ranging from July 2020-Dec 2020.

## THE UNDERLYING CRIMINAL SCHEME

129.    Starting in 2021, Apple intentionally devised or intended to devise a scheme to defraud using materially false or fraudulent pretenses (e.g., use of the word 'diversion' to mean illegal dumping, etc.), representations (e.g., claiming they are recycling or reducing waste, etc.), or promises (e.g., "zero waste," etc.) over interstate wire communications related to Apple's hazardous waste creation and disposal practices. Apple told the public and government that it is engaging in environmentally friendly practices to reduce waste. However, Apple is only reducing the paper trail and cost of its waste by illegally disposing of dangerous chemicals in neighborhoods. Apple's scheme to defraud under environmental laws was undertaken with a reckless disregard for the truth or falsity of its hazardous waste representations.

130.    Apple reported in its annual Environmental Report, a formal document they transmitted and published over interstate wires, that Apple transported 1,599 tons of hazardous waste in 2021 and 1,839 tons in 2020 to disposal facilities from Apple's corporate facilities globally. Based on California DTSC tracked manifests, 32% (512 tons) of Apple's global hazardous waste transported to landfills/disposal facilities came from Apple's semiconductor fabrication factory at 3250 Scott Blvd. [16] Statements and activities related to waste at this facility are material for Apple Inc.

131.    Apple's Environmental Progress Report is a formal document Apple transmits over

---

[16] Apple, 2022, Environmental Progress Report, pg 87.

interstate wires. Apple reports on the amount of waste that Apple allegedly "*diverted from landfills.*" Apple highlighted this number in the report under the program called "*Zero Waste*" and claimed Apple is moving towards "*waste-free operations.*"[17] Apple said, "*We maintain our commitment to the safe and responsible management of hazardous waste, both onsite and offsite.*" [18] In 2019, Apple published a press release over interstate wires stating, "*Apple has…strengthened its efforts to…reduce pollution. In prioritizing Zero Waste to Landfill, Apple suppliers diverted 1 million tons of garbage in three years.*" [19]

132.    Apple's statements are false and misleading. They are not reducing pollution—Apple is creating incredible amounts of pollution, at least at the facility, which is an acute danger to public health. Apple is also not innocently '*diverting*' waste from landfills – Apple is '*diverting*' waste by exhausting unabated solvent vapors, fumes, and toxic gases from their one-story exhaust vents – which created dense gas and vapor plumes that surrounded the nearby four-story apartments with thousands of residents, as well as an open-air children's playground and making many people sick.[20]

133.    On August 15, 2021, Alisha Johnson (who reports to Lisa Jackson) emailed over the wire to the US EPA a document with Apple's talking points about Apple's environmental practices. Including: "*In fiscal year 2020, we diverted more than 70% of waste across Apple facilities …. We have active Zero Waste to Landfill goals for retail, corporate facilities, and our supply chain.*"   Again, these are false and misleading statements. In 2020, at least some of that 70% of 'diverted' waste was the NMP fumes Apple blasted into Gjovik's home. This also explains that Apple's illegal dumping was at the direction of the Board of Directors and executives as a formal "goal."

## ONGOING VIOLATIONS NEAR SENSITIVE RECEPTORS

134.    Apple was fully aware of this facility and its operations, including the vast number of hazardous materials and hazardous waste, as every year, Apple submitted a financial assurance document to the Santa Clara Fire Department which detailed hazardous waste treatment and disposal operations, and was signed by Apple's CFO, Luca Maestri – including affixing a company seal. Each financial assurance filing also attached a detailed confirmation letter from Apple's third-party auditor, E&Y, on behalf of Apple.

---

[17] Apple, 2021, Environmental Progress Report, pg 51.
[18] Apple, 2021 Environmental Progress Report, pg 70.
[19] Apple, *Apple releases 13th annual Supplier Responsibility Progress Report*, March 6 2019.
[20] Apple, 2022 Environmental Progress Report, pg 87.

Mr. Maestri was also on the email distribution list for notification of hazardous waste violations at the facility.

135.    The apartments went through a full multi-year EIR process with multiple government agencies and public notice/comment, however it was never disclosed that Apple was operating a stealth semiconductor fabrication facility, and emitting tons of toxic chemicals into the atmosphere.[21] The City of Santa Clara knew Apple was doing this and never included it in the EIR, nor did they ever warn residents about it.[22]

136.    The facility, apartments, and other surrounding buildings and public access ways sit on a federal Superfund site and state-managed Brownfield clean-up site. The areas is already saturated with hazardous waste and efforts are supposed to be underway to clean up the existing contamination, not create new and more contamination, as Apple is doing.

137.    Apple's operations are extremely dangerous inside the building, but also outside, with 2023 photos taken by the City of Santa Clara revealing two 4-4-4 fire diamonds at the back of the building, and one also including the sign for a violent reaction to water. Notably these signs were not far from Apple's VOC exhaust vents, creating the possibility for a catastrophic explosion.

138.    The San Tomas Aquino Creek is located ~ 700 feet from the factory. The Creek is exposed, and air pollution can easily settle in the water and on the banks of the creek. The Creek flows north out to Guadalupe Slough, into the SF Bay, and into the Pacific Ocean.

139.    The Saratoga Creek historically runs directly between Apple's buildings at 3260 Scott Blvd and 3250 Scott Blvd, flowing north to the bay from Saratoga and the St. Cruz Mountains. It's unclear where the Saratoga Creek now flows, but assumably it's underneath the buildings at or near the facility.

140.    The facility is ~100 feet from a large apartment complex (~2,000 units), ~200 feet from an outdoor children's playground (see photo from Google Street View), ~800 feet from Opa! Greek restaurant with an outdoor patio, ~1,000 feet from a University of California, Santa Cruz Silicon Valley Extension campus., ~1,000 feet from a Whole Foods grocery store, and ~1,000 feet from the Silicon Valley Christian

---

[21] City of Santa Clara, SCSA,
https://www.santaclaraca.gov/Home/Components/BusinessDirectory/BusinessDirectory/121/3650?alpha=S
[22] CalEPA, DTSC, SCSA,
https://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=60002212

Assembly church (specifically the Main building specializing in Mandarin language services).



Google Street View of the apartments and Meadow Park to the right,
and with the fab behind the apartments and to the left, in a deep smog haze. ( Jan. 2023).

# FAILURE OF ENFORCEMENT AGENCIES

141.    The U.S. EPA was made aware of the chemical emergency in Sept. of 2020 and failed to diagnose the source to this location at 3250 Scott Blvd. The Santa Clara City Fire Dept./HazMat was made aware of the chemical exposure in Sept. of 2020 and must have known it was due to Apple's facility but said nothing. The Mayor of Santa Clara was put on notice about the health issues, including with reports from additional victims in spring of 2021, but did nothing.

142.    The issues and violations are ongoing at this facility and at least two other facilities (see The City's Systemic Failure to Regulate Apple below). Apple's counsel testified in federal court in Feb. 2025 that the government is taking no action against them over 3250 Scott Blvd.

143.    Apple's counsel Melinda Riechert testified that "*The agencies couldn't figure out [what Apple was doing at 3250 Scott] because there was no problem. Believe me, they would have come after Apple if there was a problem. It's [Gjovik] who's claiming there's a problem not the agencies.*" (Feb. 21 2025, page 13 at lines 17-21). (*Gjovik v. Apple,* 3:23-CV-04597-EMC, Northern District of California).

144.    The five-year statute of limitations for what Apple did in 2020 expires in a few months. The U.S. EPA has failed to diligently prosecute this matter and as such, the case can now be pursued by a member of the public action on behalf of U.S. EPA and U.S. DOJ, if the U.S. government does not file suit within the next sixty days.

145.    Plaintiff's personal toxic tort claims were dismissed by a U.S. Court due to expiration of statute of limitations, finding that based on just the permits the City of Santa Clara approved for Apple's fab, that Plaintiff should have figured out Apple was operating an off books fab next to Plaintiff's home, assumed it was Apple who nearly killed the Plaintiff in 2020, and Plaintiff was to sue Apple prior to 2023 – regardless of Apple intentionally covering up their activities, and their ongoing harassment and retaliation against the Plaintiff. (*Gjovik v. Apple,* 3:23-CV-04597-EMC, Northern District of California).

146.    The statute of limitations for these citizen suit actions is now tolled upon service of this notice and Plaintiff will promptly file suit at the expiration of those sixty days.

## X.    The U.S. DOJ and U.S. EPA's Failure to Diligently Prosecute

147.    The U.S. EPA, Cal. EPA, Santa Clara County, and city of Santa Clara received Plaintiff's complaint about the fab in June 2023. The complaint noted that Plaintiff may pursue a citizen suit over the issues if the U.S. EPA does not act. The U.S. EPA confirmed they opened an RCRA investigation, did conduct inspections, did document violations, but has taken no further public actions. The U.S. EPA never confirmed they were actually investigating the CAA violations, despite being directly requested by Plaintiff, and the BAAQMD finding at least six air quality violations at the site.

148.    Despite conducting a comprehensive inspection in 2023-2024 that documented extensive violations including potential criminal violations, EPA has failed to open any investigation into any violations of the CAA, CWA, EPCRA, or TSCA.

149.    The EPA has failed to commence an enforcement action against the Defendants for clear RCRA violations.

150.    The EPA has failed to notify residents of exposure. The EPA has failed to issue emergency orders to address imminent endangerment, including immediate installation of required emission controls.

151.    The U.S. EPA, instead, has provided Apple with "chemical safety" awards.[23]

152.    EPA's delay in enforcement, and decision to instead celebrate the Defendant's conduct instead, is unreasonable given the severity of violations, including hundreds of violations across multiple regulatory programs; documented poisonings and ongoing exposure to thousands of people; extremely

---

[23] U.S. EPA, 2024 Safer Choice Partner of the Year Award Winners,
https://www.epa.gov/saferchoice/2024-safer-choice-partner-year-award-winners

dangerous activities occurring next to a playground; and misconduct and violations ongoing since ~2015 with no signs of voluntary compliance.

153.    The government's inaction is potentially explained by the extensive revolving-door and patronage system Apple has enacted including:

- Defendant Apple's Lobbying & Government Affairs head (former U.S. EPA Administrator Lisa Jackson) maintaining inappropriate influence over current EPA enforcement decisions, including documented attempts to influence Region 9 leadership selection.[24]
- Apple General Counsel (Kate Adams) prior tenure as a U.S. Dept. of Justice trial attorney in the Environment and Natural Resources Division (assumably the same division who would file suit against Apple over these issues).
- Apple Senior Legal & Global Security executive (Sophi Jacobs) orchestrating the illegal, retaliatory termination of the whistleblower in this matter (Plaintiff) on Sept. 9 2021, after recently working as an Asst. U.S. District Attorney from 2006-2016.
- Defendant's ability to secure termination of California consent decree in Jan. 2021 (despite ongoing violations across multiple facilities) facilitated by hiring CalEPA leadership, Jared Blumenfeld, into Apple's venture capital operations in 2022.[25] Prior to becoming "President" of Lisa Jackson's $3B green energy investment fund, Blumenfeld was Secretary for Environmental Protection for the state of California from Jan. 2019 – Sept. 2022, including the period when Apple was able to terminate the injunction.

The systematic regulatory capture demonstrated by the revolving door between Apple's leadership and these environmental agencies renders traditional enforcement mechanisms ineffective, making citizen enforcement essential to protect public health.

## XI. THE CITY'S FACILITATION OF VIOLATIONS & FAILURE TO ENFORCE FEDERAL ENVIRONMENTAL LAWS

154.    The City has violated the Clean Air Act at § 304(a)(3) by an unreasonable delay in enforcement of the CAA despite actual knowledge of severe and ongoing violations of the CAA.

155.    The City has violated the RCRA at § 7002(a)(1)(B) by failure to prevent or abate an ongoing imminent and substantial endangerment to the public and environment.

---

[24] FOIA records showed Jackson sending the U.S. EPA Admin a "letter of recommendation" for the head of the Region 9 U.S. EPA office in Nov. 2021.
[25] PR Newswire, *Waverley Street Foundation Names Jared Blumenfeld as Inaugural President,* Aug 12 2022, https://www.prnewswire.com/news-releases/waverley-street-foundation-names-jared-blumenfeld-as-inaugural-president-301605165.html

156.    The City has violated the Cal PRA in denying Public Records related to the facility.

157.    The City has obstructed the U.S. EPA investigation into operations at the facility.

158.    The City has concealed violations from EPA, BAAQMD, and affected residents.

159.    The City has unlawfully issued building permits for unpermitted hazardous waste treatment facility.

160.    The City has approved the facility's "R&D" designation while knowing actual semiconductor manufacturing operations.

161.    The City failed to require federal permits before allowing operations to commence.

## XII.  The City's Systemic Failure to regulate Apple within the City of Santa Clara

162.    Apple has other facilities in Santa Clara that show the same pattern of egregious violations of environmental, health/safety, and fire code laws – and the same pattern of agency neglect and failure to enforce environmental laws. Two examples are listed below to show that this is serious, systemic negligence on the part of Santa Clara and Apple, and that intervention is required to stop this misconduct and protect public safety, starting with the semiconductors fab at 3250 Scott.

### A. 335 Brokaw Rd Apple Inc (CAR000276360)

163.    Apple has another facility in Santa Clara at 335 Brokaw Road that's been registered as a RCRA Large Quantity Hazardous Waste Generator and chemical Storage Facility since July 2016 (CAR000276360, 10686187). Per CERS, the first inspection of the facility by the City of Santa Clara was on Feb. 23 2023 and they found six violations of RCRA and HMRRP. [26]

164.    The violations included failure to electronically submit complete and accurate chemical inventory information for all hazardous material onsite or above reportable quantities, unpermitted long-term storage of lithium in mineral oil in the service yard, failure to provide hazardous waste training to "most employees," no hazardous waste tank assessment for waste water tank system, no record of weekly inspections, and unknown hazardous waste in a mop bucket with "pink/purple debris." The City cited Apple for violations of:

- **22 CCR 12 66262.11:** California Code of Regulations, Title 22, Chapter 12, Section(s) 66262.11
- **22 CCR 12 66262.34(a):** California Code of Reg, Title 22, Chapter 12, Section(s) 66262.34(a)
- **22 CCR 12 66262.34(a)(1):** California Code of Reg, Title 22, Chapter 12, Section(s) 66262.34(a)(1)

---

[26] CalEPA CERS, https://siteportal.calepa.ca.gov/nsite/map/results/detail/374758

- **22 CCR 12 66262.34(a)(4):** California Code of Reg, Title 22, Chapter 12, Section(s) 66262.34(a)(4)
- **22 CCR 12 66262.34(c):** California Code of Reg, Title 22, Chapter 12, Section(s) 66262.34(c)
- **22 CCR 15 66265.16:** California Code of Regulations, Title 22, Chapter 15, Section(s) 66265.16
- **22 CCR 15 66265.174:** California Code of Regulations, Title 22, Chapter 15, Section(s) 66265.174
- **22 CCR 15 66265.192(a):** California Code of Reg, Title 22, Chapter 15, Section(s) 66265.192(a)
- **HSC 6.5 25123.3(b)(1):** California Health and Safety Code, Chapter 6.5, Section(s) 25123.3(b)(1)
- **HSC 6.95 25505(a)(1):** California Health and Safety Code, Chapter 6.95, Section(s) 25505(a)(1)
- **HSC 6.95 25506:** California Health and Safety Code, Chapter 6.95, Section(s) 25506
- **HSC 6.95 25508(a)(1):** California Health and Safety Code, Chapter 6.95, Section(s) 25508(a)(1)
- **HSC 6.95 25508(a)(3):** California Health and Safety Code, Chapter 6.95, Section(s) 25508(a)(3)

The City also warned Apple that "Apple needs to provide a plan to adequately train employees that deal with hazardous waste" and "submit a copy of the inspection log to the CUPA demonstrating that the hazardous waste storage area is being inspected weekly." (2/23/23 violations).

165.    Due to the severity and extent of the violations, and the apparent lack of inspections for six years, it can be assumed that all of these violations were occurring in 2016-2020 during the period Apple was under the consent agreement with the state of California over some of these exact laws and assumably had the city of Santa Clara actually inspected the facility and reported the issues prior to Dec. 2020, the permanent injunction would not have been removed.

166.    On Aug. 15 2024, the City of Santa Clara returned to the Brokaw location for a follow up RCRA inspection and found a new HMRRP violation noting "industrial waste collection tanks size 2000 and 5000 gallons containing industrial waste were not reported in chemical inventory; report all chemical inventory including waste above reporting quantities and resubmit using CERS within next 30 days." The City cited Apple for violations of the following statutes, and the violation remains open. It's unclear if this is another unpermitted hazardous waste tank.
- **HSC 6.95 25505(a)(1):** California Health and Safety Code, Chapter 6.95, Section(s) 25505(a)(1)
- **HSC 6.95 25506:** California Health and Safety Code, Chapter 6.95, Section(s) 25506
- **HSC 6.95 25508(a)(1):** California Health and Safety Code, Chapter 6.95, Section(s) 25508(a)(1)
- **HSC 6.95 25508(a)(3):** California Health and Safety Code, Chapter 6.95, Section(s) 25508(a)(3)

167.    The city did not report any RCRA violations to the U.S. EPA and the EPA ECHO page shows the site is in compliance since at least 2022.[27]

168.    On April 29 2025 Apple was cited by BAAQMD for violations at 335 Brokaw Road in Santa Clara for violations of air quality regulation 9-7-506 for releasing unlawful amounts of NOx and/or CO into the atmosphere. (Violation A65128A).

---

[27] U.S. EPA ECHO, https://echo.epa.gov/detailed-facility-report?fid=110070158229

169.    The CalEPA DTSC page for the facility reports Apple is generating upwards of eighty tons a year of hazardous waste including lead, benzene, MEK, Naphthalene, solvents – yet claims that over seventy tons of that waste is not RCRA waste including categories like "oxygenated solvents" and "unspecific solvent mixture" which appear to represent additional RCRA violations.[28]

170.    The location of this Apple facility is ~400 feet from one large apartment complex (Orlo) and ~600 feet from another large apartment complex (The Benton), both featuring extensive outdoor amenities including outdoor, open-air swimming pools. This Apple facility is also < 400 feet from the Santa Clara Costco store location. This Apple facility is also < 200 feet away from the Santa Clara Police Department and ~100 feet from the entrance to the Brokaw Road Caltrain/VA transit center. Per Google Maps aerial view, Apple's facility at this location also appears to have a large outdoor industrial yard and at least ten open air evaporation pools filled with teal and yellow colored liquids.

## B. 2630 Walsh Ave Apple Inc (CAT000603704)

171.    Apple has a different facility in Santa Clara, not far from 3250 Scott Blvd, at 2630 Walsh Ave that is registered as a RCRA Large Quantity Hazardous Waste Generator and a Chemical Storage Facility since 2013. (CAT000603704). This location is <600 feet from a public park with a playground (Bracher Park), and <700 feet from an apartment complex with an outdoor, open-air swimming pool.

172.    CERS shows the first inspection of the facility by City of Santa Clara appears to be Feb. 15 2022. During this inspection, Santa Clara City reported at least three RCRA violations under the RCRA HWLGQ program including failure to have source reduction documentation on site, failure to inspect emergency equipment, and failure to have proper training documentation. Santa Clara cited violations of:

- **22 CCR 12 66262.34(a)(4):** California Code of Reg, Title 22, Chapter 12, Sect. 66262.34(a)(4)
- **22 CCR 15 66265.16:** California Code of Regulations, Title 22, Chapter 15, Section(s) 66265.16
- **22 CCR 15 66265.33:** California Code of Regulations, Title 22, Chapter 15, Section(s) 66265.33
- **22 CCR 31 67100.3:** California Code of Regulations, Title 22, Chapter 31, Section(s) 67100.3
- **22 CCR 31 67100.4:** California Code of Regulations, Title 22, Chapter 31, Section(s) 67100.4
- **22 CCR 31 67100.5:** California Code of Regulations, Title 22, Chapter 31, Section(s) 67100.5
- **HSC 6.5 25244.19:** California Health and Safety Code, Chapter 6.5, Section(s) 25244.19
- **HSC 6.5 25244.21:** California Health and Safety Code, Chapter 6.5, Section(s) 25244.21

173.    The city of Santa Clara did report these violations on CERS and to the U.S. EPA, and they

---

[28] CalEPA DTSC, https://hwts.dtsc.ca.gov/facility/CAR000276360

are visible on the U.S. EPA ECHO page, unlike the violations the City found at 3250 Scott Blvd. [29] The CERS and ECHO sites show at least one violation found in 2022 remains open and uncorrected (262.D – Recordkeeping).

174.    On June 9 2025, the City reported a follow up inspection and said they found no violations under any of the RCRA related programs.

175.    The DTSC Hazardous Waste Tracking System page for the site reports generation and disposal of upwards of forty-one tons of hazardous waste each year, including lead, silver, cadmium, chromium, MEK, solvents, toluene, and up to twenty-six tons / year of "corrosives." Apple's non-RCRA waste includes suspect terms such as "unspecified solvent mixture" and "liquids with Chromium VI." [30]

# PERSONAL INJURIES AND STANDING

176.    Plaintiff Ashley Gjovik was a resident of Santa Clara, California, who has been and continues to be injured by the ongoing violations described herein. Plaintiff resided within the direct exposure pathway of uncontrolled toxic air pollutant emissions from the semiconductor fabrication facility operated by Apple Inc. at 3250 Scott Blvd, Santa Clara, California.

177.    From February through Oct. 2020, Plaintiff lived in the Santa Clara Square Apartments, directly across the street from Apple's facility at 3250 Scott Blvd. Plaintiff's apartment was approximately three hundred feet from Apple's unpermitted semiconductor fabrication operations.

178.    Beginning in February 2020, Plaintiff experienced severe and sudden onset of symptoms consistent with chemical exposure, including severe fainting spells, dizziness, chest pain, cardiac arrhythmias (bradycardia and premature ventricular contractions), volatile blood pressure, exhaustion, skin rashes and burns.

179.    Plaintiff's symptoms correlated directly with toxic gas releases from Apple's facility. Of the documented gas leaks during 2019-2021, most occurred during timeframes when Plaintiff reported her symptoms were consistently worst (8-9 AM, 10-11 PM, and 2-3 AM). VOC monitoring data showed chemical spikes occurred primarily early morning and late at night, consistent with automated exhaust systems from industrial operations. Apple has a significant quantity of arsine gas onsite, and Plaintiff's medical tests from September 2020, on the morning after a 3 AM attack, revealed significant arsenic in her

---

[29] U.S. EPA ECHO, 2630 Walsh Ave, https://echo.epa.gov/detailed-facility-report?fid=110009554614
[30] CalEPA DTSC, https://hwts.dtsc.ca.gov/facility/CAT000603704

blood with no other explanation than arsine gas exposure within the prior 8hrs.

180.     In September 2020, Plaintiff discovered elevated volatile organic compounds (VOCs) in her apartment using air monitoring equipment. Testing revealed the presence of multiple chemicals used by Apple at 3250 Scott, including acetone, acetonitrile, acetaldehyde, benzene, dichloroethane, ethylbenzene, hexane, methylene chloride, toluene, and xylene.

181.     Plaintiff transitioned her medical care to a different clinic and provider after her Apple primary care provider at AC Wellness refused to help her triage her 2020 medical issues (due to exposure to Apple's factory exhaust). Instead, she suggested Plaintiff could be suffering from anxiety, and enrolled Plaintiff in an Apple internal user study related to B.P., requiring Plaintiff share her iPhone medical and fitness data with Apple, and participate in weekly life coaching sessions (while being exposed to Apple's solvent vapor and gas exhaust).

182.     Plaintiff notified Apple executives about her chemical exposure and proximity to their facility beginning in September 2020. Despite multiple communications with Apple's Environmental Health & Safety team and legal counsel in September and November 2020, Apple never disclosed the nature of their operations at 3250 Scott or warned Plaintiff of potential dangers.

183.     Plaintiff did not discover that Apple was responsible for her chemical exposure until February 21, 2023, when she learned of Apple's semiconductor fabrication activities at 3250 Scott. Until that date, Plaintiff was unaware that Apple operated the facility that caused her injuries or that the chemicals she was exposed to were potentially lethal. This discovery was only possible through extensive public records research, as Apple operated the facility without proper permits, failed to disclose the nature of their operations, and used misleading designations in regulatory filings.

184.     Plaintiff has standing as a person who has been and continues to be injured by Defendants' ongoing violations. The facility continues to operate with documented ongoing violations, creating continued risk of exposure for Plaintiff and other community members. Plaintiff's injuries include past harm from the 2020 exposure, ongoing injury from the continued illegal operations and imminent threat of future exposure, and the ongoing retaliation she faces for her continued participation in these investigations. The violations described herein create an imminent and substantial endangerment to public health and the environment. Plaintiff has exhausted available administrative remedies and has no adequate remedy at law for the ongoing violations and continued endangerment.

185.     Plaintiff has an active whistleblower retaliation and labor violation lawsuit against Defendant Apple Inc, with claims approved to move ahead including a termination in violation of policy, retaliation against her as a victim of crime (these environmental crimes), and retaliation for acting as a legislative witness (including about this chemical exposure). The U.S. government is also suing Apple over their termination of Plaintiff employment and Apple's unlawful employment and confidentiality policies (which Apple settled in April 2025).

186.     Apple's systematic concealment of their operations, use of illegal confidentiality agreements, and retaliation against Plaintiff for reporting these violations demonstrates the necessity of citizen enforcement to protect public health and ensure compliance with environmental laws.

# RELIEF SOUGHT

Plaintiff intends to seek the following relief:

## XIII.  INJUNCTIVE RELIEF

187.     Injunctive relief is required to ENFORCE the environmental laws that the Defendants are violating, including installation of required emission controls meeting all federal standards, and restoration of the environment caused by these violations.

188.     Injunctive relief is required to RESTRAIN the Defendants from continuing their violations of these environmental laws, including prohibiting all future unpermitted discharges into the air, water, and ground, and ordering a federal monitor to oversee compliance auditing.

189.     Injunctive relief is required to RESTRAIN the Defendants from maintaining their imminent and substantial risk of danger to the public and environment, including remediation of contamination, providing comprehensive air monitoring with real-time public disclosure, and community health monitoring program for all affected residents. A preliminary injunction is required to order the immediate CESSATION of all semiconductor fabrication operations until full compliance is assured.

## XIV.  CIVIL PENALTIES

190.     All penalties available under applicable statutes with fines for federal violations to be paid to the U.S. Treasury. Penalties should be enhanced for knowing and willful violations and should include recovery of economic benefits obtained by avoiding compliance.

## XV.  SUPPLEMENTAL ENVIRONMENTAL PROJECTS

191.    The maximum allowable penalty funds should be directed towards community projects including community air monitoring network installation and operation, medical monitoring program for exposed residents (especially the children), environmental restoration of contaminated areas, and emergency response capability enhancement.

## XVI.  Costs and Fees

192.    Attorney's fees and costs; expert witness fees and technical consultant costs; environmental investigation and monitoring costs; all other costs and fees the court deems proper.

# CONCLUSION

193.    The violations described in this Notice represent one of the most egregious examples of environmental non-compliance in recent history. A major corporation has operated an unpermitted semiconductor facility for nearly a decade, poisoning residents including their own employee, while regulatory agencies fail to act despite documented knowledge of extensive violations.

194.    The imminent and substantial endangerment to thousands of residents, including children playing in nearby parks, demands immediate action. Plaintiff has exhausted administrative remedies and has no alternative but to seek judicial enforcement of federal environmental laws designed to protect public health and the environment. If the violations described herein are not remedied within 60 days of service of this Notice, plaintiff will commence a citizen enforcement action in federal district court seeking all available relief under federal environmental statutes.

195.    To the best of my knowledge, no agency civil or criminal action is diligently prosecuting the violations described herein. This Notice complies with all requirements of Clean Air Act § 304(b), RCRA § 7002(b), CWA, TSCA, and EPCRA prior to commencing a citizen suit.


Filed: June 30 2025

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*


**Email**: legal@ashleygjovik.com | **Phone**: (408) 883-4428
**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Sixty-Day Notice of Intent to Sue was served on June 30, 2025 by certified mail (unless otherwise indicated) and/or electronic mail to the following:

**Defendant: Apple Inc**
Personal Service to: 10355 N De Anza Blvd Cupertino, CA 95014
Email to: tcook@apple.com and kate.adams@apple.com
Certified Mail to C T Corporation System (Service Agent) at 330 North Brand Blvd. Suite 700 Glendale, California 91203

**Defendant: Kalil Jenab** (Cushman & Wakefield)
Certified Mail to 525 University Avenue, Suite 220, Palo Alto, California 94301
Email to: kalil.jenab@crushwake.com

**Defendant: City of Santa Clara**
Certified Mail to 1500 Warburton Avenue Santa Clara, CA 95050
Email to: manager@santaclaraca.gov, cityattorney@santaclaraca.gov

**Agency: U.S. Environmental Protection Agency**

**Office of the Administrator**
Certified Mail to 1200 Pennsylvania Avenue, 1101A, N.W. Washington, D.C. 20460

**Region 9, Regional Administrator**
Certified Mail to 75 Hawthorne Street, San Francisco, CA 94105

**Courtesy copies are emailed to:**

California EPA HQ
complaints@calepa.ca.gov

California EPA Department of Toxic Substances Control
dtsc_eerd@dtsc.ca.gov

Bay Area Air Quality Management District
compliance@baaqmd.gov

# Exhibit B

## Notice to Apple Inc

### Email Notice on June 30 2025

## NOTICE: 60-Day Notice of Incoming EPA Citizen Suit Against Apple & Santa Clara, re: 3250 Scott Blvd

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | tcook@apple.com, kate.adams@apple.com |
| Date | Monday, June 30th, 2025 at 4:44 PM |

Hello,

Please see attached for a digital copy of the sixty-day notice of an incoming US EPA Citizen Suit that was mailed to you and the other defendants, and the US and CalEPA today.

You will receive a paper copy via certified mail, however a digital copy is also attached for your convenience and to ensure all parties are on notice on the same timeline.

Let me know if you have any questions.

Respectfully,
-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

**752.98 KB**   1 file attached

In Re 3250 Scott Blvd - 20250630 Sixty Day Notice.pdf  752.98 KB