UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 23-cv-04597-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND FOR PROTECTIVE ORDER; AND GRANTING IN PART PLAINTIFF'S REQUEST FOR SCHEDULING ORDER**<br><br>Docket Nos. 221, 228 |

Previously, the Court granted in part and denied in part Ms. Gjovik's motion to strike certain affirmative defense pled in Apple's answer. *See* Docket No. 215 (order). The Court gave Apple leave to amend. Apple has since filed an amended answer; now pending before the Court is Ms. Gjovik's motion to strike affirmative defenses as pled in the amended answer. The Court finds that this matter can be resolved without oral argument and, accordingly, **VACATES** the hearing on the motion. Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** the motion to strike. It also **DENIES** the motion for a protective order. Finally, the Court **GRANTS** in part Ms. Gjovik's request for a scheduling order.

## I.　DISCUSSION

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Ms. Gjovik has moved to strike from Apple's answer a number of affirmative

1  defenses. She focuses in particular on three affirmative defenses (¶¶ 5, 7, and 14[1]). However, she
2  also refers in passing to additional affirmative defenses. *See, e.g.*, Mot. at 19 (asking the Court to
3  strike affirmative defenses "2-4, 6-11, and 14-15"[2]).

4      To the extent Ms. Gjovik has challenged an affirmative defense other than the fifth,
5  seventh, and fourteenth, her motion for relief is denied. She has failed to demonstrate that the
6  defenses are deficient and has made at most only conclusory arguments. Her repeated claim that
7  Apple has never identified why she was terminated is incorrect. To the extent Ms. Gjovik
8  complains that Apple has not identified which policies she allegedly violated, Apple is not
9  obligated to identify each policy by name in its answer. *See Izett v. Crown Asset Mgmt., LLC*, No.
10  18-cv-05224-EMC, 2018 U.S. Dist. LEXIS 211459, at *2 (N.D. Cal. Dec. 14, 2018) (stating that
11  "courts in this District, including this Court, have 'consistently'" applied the *Twombly* and *Iqbal*
12  standard to affirmative defenses"; but "'a defense need not include extensive factual allegations in
13  order to give fair notice'"). It is clear from the answer that the policies at issue concern
14  confidentiality of business information and cooperation in internal investigations. Furthermore,
15  Apple will need to produce the policies as part of initial disclosures, and nothing prevents Ms.
16  Gjovik from doing follow-up discovery on the policies. Ms. Gjovik is aware of at least one
17  specific policy (Apple's Misconduct and Discipline policy), as reflected in her reply. *See* Reply at
18  7.

19      The Court likewise finds the bulk of Ms. Gjovik's arguments related to the fifth, seventh,
20  and fourteenth affirmative defenses without merit.

21      For example, Apple does not need to plead more in the fifth affirmative defense related to
22  failure to mitigate by seeking alternative employment. Even if Apple is aware of a position at a
23  research university that Ms. Gjovik did have for a period time (based on the allegations in her
24  5AC), that does not mean that there were no other alternative jobs for Ms. Gjovik. Also, whether

---

[1] In her motion, Ms. Gjovik refers to the sixth, eighth, and fifteenth affirmative defenses but that appears to be an error.

[2] As above, this numbering appears to be erroneous – *e.g.*, in the amended answer, Apple has asserted only fourteen affirmative defenses, not fifteen.

there were alternative jobs is, in large part, a matter within Ms. Gjovik's possession, custody, or control.

Similarly, for the fourteenth affirmative defense – related to a set-off if any workers' compensation was paid – even if Apple is aware of any workers' compensation related to Ms. Gjovik's employment with Apple, that does not foreclose workers' compensation from another job. In her reply brief, Ms. Gjovik raises a new argument; specifically, she contends that, if she did receive any workers' compensation, that would have been for medical treatment, and "[r]educing employment damages because someone who received medical care, from a different party, is economically incoherent and legally unsupported." Reply at 9. Because this argument was not raised until reply, the Court does not entertain it. Furthermore, Ms. Gjovik has not established that workers' compensation would only have covered medical care and not lost wages. She cites no authority in support. In any event, even if there is a factual basis for her response to the defense, that does not entirely negate the defense, and is not a basis for striking it.

As for the seventh affirmative defense, here, Apple alleges that Ms. Gjovik's

> recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages. Plaintiff's employment was terminated for legitimate, non-discriminatory and/or non-retaliatory business reasons. Specifically, Apple determined that she had engaged in conduct that warrants termination of employment, including, but not limited to, violations of Apple policies. Plaintiff disclosed confidential product-related information in violation of Apple policies and her obligations under her Intellectual Property Agreement. Apple also found that she had failed to cooperate and to provide accurate and complete information during the Apple investigatory process. Moreover, Apple learned – shortly after Plaintiff's employment was terminated – that Plaintiff admitted that she disclosed confidential product-related information to a journalist at the Verge in violation of Apple policies and her obligations under her Intellectual Property Agreement. Moreover, in the years since Plaintiff's employment was terminated, Plaintiff has continued to provide inaccurate and/or incomplete information to government entities and the public.

Ans. (seventh affirmative defense). Ms. Gjovik makes a number of arguments challenging the defense – *e.g.*, that Apple is essentially claiming fraud or misconduct on her part so it should be subject to a heightened pleading standard; Apple has falsely claimed that it did not know about the

3

Verge article until after it terminated her; Apple should be compelled to allege more because the defense is predicated on information in its possession, custody, or control.

To get to the heart of the matter, the only part of the affirmative defense that initially posed some concern to the Court is the last sentence of the defense. The other information contained in the defense is sufficiently specific, whether the standard applied is Rule 8 or Rule 9(b). In addition, whether Apple falsely claimed not to know about the Verge article until after it terminated her is a merits issue, not to be resolved at the pleading stage.[3]

The last sentence of the defense initially presented some concern to the Court because it is arguably vague. Apple, however, has now sufficiently addressed that concern. In its opposition, Apple points to specific paragraphs in its amended answer to substantiate its claim that incorrect or incomplete information was given to the government and/or public. *See* Opp'n at 6 (citing Am. Ans. ¶¶ 97, 132, and 183). In her reply brief, Ms. Gjovik raises a new argument – *i.e.*, that it is illegal to engage in an adverse employment action such as termination if an employee has engaged in protected activity such as reaching out to a government agency. Because this is a new argument not raised until reply, the Court does not entertain it. In addition, Ms. Gjovik has not cited authority to support the proposition that giving false or inaccurate information (as alleged by Apple) is protected activity, at least if done so knowingly and absent a reasonable belief. *Cf.* Cal. Lab. Code § 1102.5(a) (providing protection for a whistleblower "if the employee has *reasonable cause* to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation") (emphasis added); *Smith v. Cnty. of Santa Clara*, No. 5:11-cv-05643-EJD2016 U.S. Dist. LEXIS 101357, at *43-44 (N.D. Cal. Aug. 1, 2016) (noting that plaintiff showed "she had a reasonable belief Defendants' were engaging in unlawful and unethical practices," and, even if her "belief was later determined to be incorrect, her retaliation claim is actionable so long as her mistaken belief was made in good

---

[3] In its opposition, Apple maintains that Ms. Gjovik has mischaracterized the matter – *i.e.*, Apple has alleged that it did not learn of her *admission* that she had disclosed confidential information to a journalist until after the termination. *See* Opp'n at 6. Contrary to what Ms. Gjovik argues, even though it is a fair inference from the content of the Verge article that she voluntarily disclosed information to the journalist, an admission may still be a material point.

4

1 faith").

2     Accordingly, the Court denies the motion to strike.  To the extent Ms. Gjovik also seeks a
3 protective order, that request is denied as well.   Moreover, Apple's seeking discovery such as
4 medical records and financial information is just as related to Ms. Gjovik's prima facie case as any
5 affirmative defense.  If Ms. Gjovik has concern about overbreadth of any discovery request, that
6 should be raised with the magistrate judge, not this Court.

7     Finally, the Court addresses three collateral matters.  First, the Court notes that it
8 previously admonished Ms. Gjovik for not checking the accuracy of citations after using AI to
9 assist her in drafting her briefs.  *See* Docket No. 215 (Order at 10-12).  Based on the pending
10 motion, Ms. Gjovik's solution appears to be not citing any real authority in her brief.  Ms. Gjovik
11 is free to pursue that path if she so wishes, but there may be consequences to that decision – *e.g.*, a
12 lack of any authorities to support her position.

13     Second, in its opposition brief, Apple suggests that the Court consider whether Ms. Gjovik
14 should be subject to a pre-filing screening before she is allowed to file another request for relief.
15 *See* Opp'n at 11 (asking that the Court "give Plaintiff notice and an opportunity to be heard that it
16 is considering entering a pre-filing order requiring Plaintiff to seek leave before filing any further
17 motions").  The request is denied without prejudice.  The Court also notes that, if there is a future
18 request for sanctions such as this, it should be made in a regularly noticed motion, not in an
19 opposition brief.  Ms. Gjovik, however, is forewarned that the Court's ruling here does not
20 preclude the Court from issuing sanctions in the future, if warranted.

21     Finally, the Court notes that, in conjunction with her reply brief, Ms. Gjovik has requested
22 a status conference so that the Court can enter a scheduling order.  The Court grants in part her
23 motion for relief.  The Court agrees that a scheduling order should be put in place and therefore
24 sets a status conference for August 5, 2025, at 2:30 p.m.  The parties shall meet and confer and file
25 a status report one week in advance of the status conference.  The status report should address
26 dates such as the close of fact discovery and expert discovery, the last day to hear dispositive
27 motions, and trial.

28     The Court, however, denies Ms. Gjovik's request that all discovery be stayed.  Both Ms.

United States District Court
Northern District of California

Gjovik's claims and Apple's defenses are fact intensive, and those facts need to be developed through discovery, both oral and written.  If Ms. Gjovik wishes to file an early motion for summary judgment (prior to the close of discovery), the Court does not preclude her from doing so.  But the Court forewarns Ms. Gjovik that, under its standing order, a party is allowed to file only one motion for summary judgment (absent good cause and the Court's granting leave to file a second motion).  Furthermore, as a practical matter, early summary judgment proceedings usually do not advance litigation unless there are pure legal issues in need of resolution.

This order disposes of Docket Nos. 221 and 228.

**IT IS SO ORDERED**.

Dated: July 3, 2025

_____
EDWARD M. CHEN
United States District Judge