**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik,** *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br> **Apple Inc.,** *a corporation,* <br><br> Defendant. | Case No. 3:23-CV-04597-EMC <br> Discovery: Judge Kandis A. Westmore <br><br> **DISCOVERY DISPUTE** <br> **Plaintiff's Letter & Motion to Compel Production of the August 2017 "Gobbler" Informed Consent Form (RFP Set 1 No. 15)** <br> **or Alternatively, Plaintiff's Motion for a Briefing on Sanctions due to Defendant's Spoliation of Evidence.** <br><br> Fed. R. Civ. P. Rule 34, 37 <br> Discovery Letter Brief |

# Discovery Letter Brief: Motion to Compel RFP Set One, No. 15 "Gobbler Informed Consent Form"

1. Pursuant to Standing Order ¶ 17, and the Order at Dkt. 230, Plaintiff Ashley M. Gjovik files this discovery dispute letter regarding Defendant Apple Inc.'s refusal to produce a document (Set 1, No. 15) cited in its own defense and which Defendant appears to have either destroyed or lost.

2. ATTESTATION: Plaintiff has met and confer repeatedly with Defendant on this matter since 2024, however Plaintiff also initiated a final five-business-day meet-and-confer period on August 4 2025 per the court's Order at Dkt. 230. Despite multiple attempts to resolve this dispute, Apple failed to provide any substantive or good faith response during the meet-and-confer period or prior.

3. Defendant's proffered "legitimate business justification" for terminating the Plaintiff's employment was the employee's disclosures about an iOS application called "Gobbler" in an August 30 2021 labor article titled "*Apple cares about privacy unless you work at Apple*." (Ex. RFA No. 17 at 11). This "defense" is also a subject of Plaintiff's Cal. Labor Code §§ 98.7, 1102.5, and *Tamney* retaliation claims.

4. Starting in at least Apple's March 2022 position statement to the U.S. Dept. of Labor, and then in this case through its Answer (Dkt. 218 at ¶ 218[1]), Joint Case Mgmt Statements (Dkt. 77, 97, 166), and Interrogatories (Ex. Interr. No. 1 at 9-10), Apple has maintained this defense including that Plaintiff signed an "Informed Consent Form" when she was enrolled in "Gobbler" which, Apple claims, somehow neutralized her later objections to the application. One of Apple's affirmative defenses relies on this theory of "consent." (Dkt. 218, No. 4, page 43).

## Background & Meet and Confer

5. On August 7 2017, Defendant transmitted an email to Plaintiff inviting her to a "Social Event." Upon accepting the invitation, on August 8 2017, Defendant then transmitted another email stating Plaintiff had to sign an Informed Consent Form. (Plaintiff's Production, Batch Six, Bates: 06192, 06189). The August 7 2017 Confluence "ICF Process for Gobbler" page and these emails described Defendant's ICF process. (Plaintiff's Production, Batch Six, Bates: 06190-06191, 01711-01712). The Gobbler application was then installed on Plaintiff's devices at the August 2017 "social event."

6. Apple admits it plans to use this 2017 ICF document in its defense and Plaintiff expressly

---

[1] "Prior to using Gobbler app, Plaintiff signed a User Study Informed Consent, which explained that her decision to participate in the study was completely voluntary… informed her that the app would capture photos and video while she interacted with her phone and that she would be able to review each capture and decide whether to remove it." Dkt. 218 at ¶ 218, page 34.

requested a copy of this 2017 ICF as early as Nov. 28 2023. However, Defendant has persistently refused to produce a copy in violation of Rule 26(a)(1)(A)(ii), General Order 71, and existing rules and case law.

7. On Dec. 19 2024, Plaintiff obtained a copy of her U.S. Dept. of Labor case file through FOIA (No. 2024-F-03430) and discovered the government requested a copy of the document on Sept. 16 2022 (FOIA Ex. 4-C). Then on Sept. 30 2022, Apple instead produced an agreement Plaintiff signed on July 9, 2018 regarding a "live on" program for a new iPhone model, the iPhone XS Max, prior to Apple's public announcement of the new product. (FOIA Ex-4-C). Apple claimed the document it produced was the "(Gobbler) Study consent form" and redacted information about the actual study.

**8.** Plaintiff complained that Defendant filed incorrect document to Dept. of Labor. Defendant then produced the same 2018 document on Jan. 6 2025 as an email attachment titled "GAELG_00002096-2102." Platiniff again requested the actual 2017 Gobbler ICF on May 15 2024. On June 14 2025, Defendant objected to the request, refused to produce it, and moved to stay all discovery. (Ex. U.S. Dept. of Labor RFP No. 49., Case No. 2024-CER-00001 at 1-2).

9. Plaintiff requested the 2017 Gobbler ICF again on August 26 2024 but Defendant requested another stay and refused to produce documents. Plaintiff requested the 2017 Gobbler ICF again on Oct. 30 2024. Then, on Nov. 29 2024, Defendant objected again, agreed to search for and produce the ICF (Ex. FRP No. 15 at 9), but did not produce it. Plaintiff requested the 2017 Gobbler ICF document again on Jan. 13 2025. Then, on Feb. 12 2025, Defendant responded that it could not find any documents related to Plaintiff's RFP No. 15 regarding the Gobbler ICF. (Ex. RFP Set 1, No. 15 at 8-9).

10. During Meet and Confer on March 25 2025, Plaintiff asked Defendant if they will produce the 2017 ICF and Defendant responded "If we have one, it'll include it" and "I've seen the Gobbler one." (Dkt. 220-8, 32:33 - 32:41). Platiniff added,

> "The thing that was included for the OSHA that said it was Gobbler, that wasn't Gobbler. That was a completely different study. And that was like over a year after… So for the Gobbler 2017 one, if I'm not getting that, I do need an explanation why. If it doesn't exist, I need that explanation too."

Defendant added, "Oh, you'll get the one for Gobbler." (Dkt. 220-8, 32:42 - 33:20).

11. On May 2 2025 meet and confer, Defendant acknowledged Plaintiff's complaints saying "one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one." (Dkt. 220-9, 4:57 - 5:53). Defense counsel then claimed they wanted to show her the unredacted version of the incorrect agreement but required a protective order and would show her during a deposition and would not produce

the unredacted version and would redact her testimony. (Dkt. 220-9, 6:05 - 6:43)

12. On May 27 2025, Apple reiterated its position that Apple "served its amended objections and responses on February 12, 2025 and stands on those objections and responses." (Ex. RFP Set 2, No. 64 at 8). To date, Defendant still has not produced the 2017 Gobbler ICF. During the July 3 2023 discover conference with Judge Westmore, Apple again confirmed their intent to rely on the ICF saying "And it is correct that one of the documents we are relying on to support the fact that we terminated Ms. Gjovik because she revealed confidential information is a document that she signed consenting to her participation in a study that Apple was running" (Transcript page 10, Lines 17-22). "We have produced it and redacted the confidential information." (page 11, Line 11-12). Plaintiff objected:

> "That document you're referring to is what you gave to the Department of Labor, and I said "That is not the agreement you're talking about." That was the year prior. And I said you gave the Department of Labor a false document. …that's 2018. That's a completely different program …and I said there was a different one in 2017 that I had signed under the armed guards in the hot parking lot and all of that. And you have not given me a copy."

(page 11, lines 17-22; page 12, Lines 19-25).

13. The court noted "Ms. Riechert…. if you really are going to be withholding documents entirely that should be produced then that will be the subject of another… letter." (Page 14, Lines 2-7). Plaintiff also complained that Defendant's plan to use the protective order during a deposition without producing the ICF would result in Apple claiming the testimony "was confidential under the protective order, so (she) couldn't even challenge what they did." (Page 7, Lines 5-9). The court noted "That's not how the protective order is used." (Page 7, Lines 12-13).

14. On August 4 2025, Plaintiff started the five-day meet and confer over spoliation concerns regarding the 2017 ICF and asked "did Apple spoiliate its own primary evidence?" (Aug. 4 2025). On August 7 2025, Defense Counsel responded "as we explained to you on July 17, Apple has already produced a User Study Informed Consent form specific to Gobbler. *See* APL-GAELG_00002096." On August 8 2025, Plaintiff responded:

> "…The Gobbler ICF document was from 2017, I shared with Orrick copies of the email confirmation and document URL as far back as 2022 … This ICF document was repeatedly cited by Apple as material evidence in its defense. I also have evidentiary record of the existence of the document. I demand a response as to whether Apple is withholding it or Apple has lost the document. There is only one answer."

On August 11 2025, Defense counsel responded "With respect to the Gobbler ICF, we are working to collect, review, and (as appropriate) produce additional documents related to other ICFs, but will not be able to complete that process by your unilateral deadline of today."

15. On August 11 2025, Plaintiff responded:

"Apple was the party to request unilateral five-day deadlines and the court approved Apple's request. I re-sent you the documentation.. from 2017 with direct URLs to the document. Your comment below still implies you don't know if the Gobbler ICF exists, and now that you're not even looking for it specifically ("other ICFs")…its the primary basis of Apple's defense, yet Apple continues to act like it may not exist and has no knowledge of it. I will thus consider this the end of our extended meet/confer on this topic (five days per Apple's meet/confer rule, but really twenty months regarding this specific document)."

On August 11 2025, Defense counsel responded "That's not how it works. If you want a document, you send us a document request." Plaintiff responded detailing her prior document production requests and escalations, and warned one last time: "Once again, please produce the document by midnight, or else I will seek court intervention tomorrow morning." As of 1pm ET, Defendant still has not responded.

## Motion to Compel & Spoliation

16. This month, Apple proposed an ESI protocol to only preserve documents starting from "September 10, 2018" despite material evidence existing prior to 2018, including in 2017 when the ICF was allegedly signed. Further, Apple's known to use a five-year document retention cut off and Apple's also known to "forget" to turn off its document purging despite anticipated and ongoing litigation. See, *Lopez v. Apple Inc,* 19-cv-04577-JSW (SK), (N.D. Cal. June 17 2024).

17. In this case, the five-year destruction would have occurred around Aug. 2022, after Apple cited the ICF in its U.S. Dept. of Labor position statement in March 2022, but prior to U.S. Dept. of Labor requesting Apple provide evidence to support its position Sept. 2022. Apple assumably realized in Sept. 2022 that it deleted its own evidence but that it also could not change its "legitimate business justification" mid-way without making its own defense appear even more pretextual. Thus, Apple appears to have chosen to mislead the U.S. agencies and these U.S. Courts. Courts sanction employers for exactly this kind of misconduct. See *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 318 (S.D.N.Y. 2003).

18. Fed. R. Civ. P. 34 requires production of documents in a party's possession, custody, or control. Courts routinely preclude parties from using documents as evidence when they refuse to produce them in discovery. Rule 37 allows for sanctions due to discovery abuse including spoliation, including failure to preserve evidence. *Willard v. Caterpillar, Inc.* (1995) 40 Cal.App.4th 892, 907. Further. Cal Bus. & Prof. Code § 6106, § 6077 and Rules Prof. Conduct, Rule 5-220 prohibit counsel from destroying or suppressing evidence. A fundamental principle underlying Rule 34 is that parties cannot simultaneously rely on documents in their pleadings while refusing to produce those same documents in discovery. See

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

19. The timeline strongly implicates that Apple failed to preserve material documents for this litigation despite citing those very documents in its position statement, and in direct violation of the very standards it argued for in *Apple Inc. v. Samsung Electronics Co., Ltd.,* 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). See also, *In re Napster, Inc. Copyright Litig.* 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). This court has held that the failure to turn off the auto-delete setting may constitute a "practice of destroying potentially discoverable material [that] shows both willfulness and bad faith." *WeRide Corp. et al. v. Huang, et al.*, Case No. 5:18-cv-07233-EJD (N.D. Cal. Apr. 16, 2020). Further, this court has an active referral to the U.S. Dept. of Justice accusing Apple of obstruction of justice in federal court proceedings in the same courthouse. *Epic Games v. Apple Inc,* 4:20-cv-05640-YGR, (N.D. Cal. Apr. 30, 2025).

## Requested Relief

20. Plaintiff asks this Court to direct Apple to produce the complete, unredacted 2017 Gobbler Informed Consent Form within 10 days. If Apple cannot produce the document, order Apple to file a sworn declaration within 10 days explaining: (a) what happened to evidence central to their defense, (b) why they did not disclose to Plaintiff or the court their evidence was gone, (c) what preservation efforts were undertaken, and (d) what steps can be taken to recover the document. Plaintiff also asks this Court to direct Apple to immediately preserve all systems, backup tapes, archives, and repositories where the 2017 Gobbler ICF might exist pending resolution of this dispute.

21. If Apple cannot recover the document, Plaintiff requests for a briefing schedule for a Motion for Sanctions and/or Order for Apple to Show Cause why Sanctions should not be granted. Even if Defendant does now produce the document, Plaintiff requests sanctions including a negative inference to be made against Apple due to Apple withholding its own documents for two years and/or destroying its own evidence. *Contra spoliatorem omnia praesumuntur.* See*, Cedar-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 12-13, 954 P.2d 511, 518 (1998).

Respectfully submitted,

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*
Boston, Massachusetts.
Dated: August 12 2025

Note: Attached are 12 pages of the exact copies of interrogatories, requests for production of documents and/or responses, per Standing Order 14(b)(i)-(ii).

# EXHIBITS

1  proprietary business information. Respondent objects to this Request because it is overbroad as to
2  time.
3      Respondent will supplement this Response pursuant to 29 C.F.R. § 18.53, if appropriate,
4  following resolution of which claims, if any, are properly before this Court. Discovery is ongoing,
5  and Respondent reserves the right to amend and/or supplement this response. Respondent is also
6  willing to meet and confer and cooperate with Complainant regarding this Request, Respondent's
7  objections, and the discovery limitations set forth in 29 C.F.R. § 18.51(b)(4).

8  **REQUEST FOR PRODUCTION NO. 49:**
9      All documents concerning the "Gobbler" / "Glimmer" Informed Consent Forms and/or
10  NDAs.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**
12      Respondent objects to this Request on the grounds that 29 C.F.R. § 18.51 limits discovery
13  to "nonprivileged matter that is relevant to any party's claim or defense" and Respondent is unable
14  to determine what nonprivileged matters are "relevant" to any claims or defenses that will proceed
15  in this matter given the Court's May 23, 2024 Order. At this time, it is unclear what (if any) claims,
16  and thus what defenses, will proceed and thus it is impossible to determine what matters would be
17  "relevant to any party's claim or defense." If Complainant's Motion to Amend is denied and
18  Respondent's Motion to Dismiss is granted, for example, there would be no claims before this
19  Court and no discovery would be proper.
20      Respondent objects to this Request on the grounds that "All documents" lacks particularity
21  and is overbroad, unduly burdensome, and not proportional to the needs of the case.  Respondent
22  objects to this Request on the grounds that it seeks information not relevant nor reasonably
23  calculated to lead to the discovery of admissible evidence. Respondent objects to this Request to
24  the extent that the burden or expense of the proposed discovery outweighs its likely benefit,
25  considering the needs of the case the amount in controversy, the parties resources, the importance
26  of the issues at stake in the action, and the importance of the discovery in resolving the issues.
27  Respondent objects to this Request to the extent it calls for information protected from disclosure
28  by the attorney-client privilege, attorney work-product doctrine, or any other applicable privileges.

1. Respondent objects to this Request to the extent it seeks information protected from disclosure by the privacy rights of third parties. Respondent objects to this Request to the extent it seeks disclosure of confidential, trade secret, or proprietary business information. Respondent objects to this Request on the ground that it is unlimited as to time.

Respondent will supplement this Response pursuant to 29 C.F.R. § 18.53, if appropriate, following resolution of which claims, if any, are properly before this Court. Discovery is ongoing, and Respondent reserves the right to amend and/or supplement this response. Respondent is also willing to meet and confer and cooperate with Complainant regarding this Request, Respondent's objections, and the discovery limitations set forth in 29 C.F.R. § 18.51(b)(4).

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning IRB review of the use of "Gobbler" / "Glimmer".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Respondent objects to this Request on the grounds that 29 C.F.R. § 18.51 limits discovery to "nonprivileged matter that is relevant to any party's claim or defense" and Respondent is unable to determine what nonprivileged matters are "relevant" to any claims or defenses that will proceed in this matter given the Court's May 23, 2024 Order. At this time, it is unclear what (if any) claims, and thus what defenses, will proceed and thus it is impossible to determine what matters would be "relevant to any party's claim or defense." If Complainant's Motion to Amend is denied and Respondent's Motion to Dismiss is granted, for example, there would be no claims before this Court and no discovery would be proper.

Respondent objects to this Request because it is vague, ambiguous, and lacks particularity as to the terms "IRB review". Respondent objects to this Request on the grounds that "All documents" lacks particularity and is overbroad, unduly burdensome, and not proportional to the needs of the case. Respondent objects to this Request on the grounds that it seeks information not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Respondent objects to this Request to the extent that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving

**REQUEST FOR PRODUCTION NO. 15:**

Any documents, contracts, or agreements that Plaintiff supposedly signed, accepted, or otherwise responded to related to the "Gobbler"/"Glimmer" app between Jan. 1 2016 and Sept. 10 2021. This includes any Informed Consent Forms and/or NDAs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant objects to this Request to the extent it seeks disclosure of confidential and proprietary Apple product information.

Subject to and without waiving the forgoing objections, Defendant will produce all responsive documents located after a reasonably diligent search subject to appropriate protections.

**REQUEST FOR PRODUCTION NO. 16:**

Any emails or other documents, in possession of her management chain (David Powers, Dan West, Yannick Bertolus, John Ternus, Tim Cook) or Human Resources/Employee Relations (Helen Polkes and her management chain, Waibel and Okpo and their management chain) discussing the Aug. 31 2021 "Apple Cares About Privacy, Unless you Work at Apple," Verge article, dated from Aug. 20 2021 through Sept. 10 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Defendant objects to this Request as overbroad because it seeks documents from custodians who were not involved in the decision to terminate Plaintiff's employment. For that reason, Defendant also objects to this Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the forgoing objections, Defendant limits this Request to custodians that were involved in the decision to terminate Plaintiff's employment (who Defendant has already identified for Plaintiff), including Yannick Bertolus, Megan Bowman, Aleks Kagramanov, Ekelemchi Okpo, Joni Reicher, Jennifer Waldo, and Adelmise Warner. Defendant will produce responsive, non-privileged documents located after a reasonably diligent search as

Defendant's Response to Plaintiff's Request for Production, Phase 1 (2/12/25)

**REQUEST FOR PRODUCTION NO. 13:**

Any drafts, comments, or revisions of the termination letter and notice sent to Complainant on Sept. 9 2021. (Please include timestamps when possible).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the forgoing objections, Defendant has already produced all responsive, non-privileged documents located after a reasonably diligent search: APL-GAELG_00001143, APL-GAELG_00001176, APL-GAELG_00001166, APL-GAELG_00001144, APL-GAELG_00001513, APL-GAELG_00001548, APL-GAELG_00001538, and APL-GAELG_00001516. Defendant will produce a categorical privilege log.

**REQUEST FOR PRODUCTION NO. 14:**

Any email discussion, meeting notes, or other documents between Plaintiff's management chain, Human Resources, Employee Relations, or Global Security that involved planning whether or not they would terminate Plaintiff, and how they would terminate Plaintiff dated from Jan. 1 2021 through Sept. 10 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the forgoing objections, Defendant has already produced all responsive, non-privileged documents located after a reasonably diligent search: APL-GAELG_00001513, APL-GAELG_00001548, APL-GAELG_00001538, and APL-GAELG_00001516. Defendant will produce a categorical privilege log.

**REQUEST FOR PRODUCTION NO. 15:**

Any documents, contracts, or agreements that Plaintiff supposedly signed, accepted, or otherwise responded to related to the "Gobbler"/"Glimmer" app between Jan. 1 2016 and Sept. 10 2021. This includes any Informed Consent Forms and/or NDAs.

Defendant's Response to Plaintiff's Request for Production, Phase 1 (2/12/25)

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

2  Defendant objects to this Request to the extent it seeks disclosure of confidential and
3  proprietary Apple product information.

4  Subject to and without waiving the forgoing objections, Defendant has produced all
5  responsive documents located after a reasonably diligent search.

6  **REQUEST FOR PRODUCTION NO. 16:**

7  Any emails or other documents, in possession of her management chain (David Powers,
8  Dan West, Yannick Bertolus, John Ternus, Tim Cook) or Human Resources/Employee Relations
9  (Helen Polkes and her management chain, Waibel and Okpo and their management chain)
10  discussing the Aug. 31 2021 "Apple Cares About Privacy, Unless you Work at Apple," Verge
11  article, dated from Aug. 20 2021 through Sept. 10 2021.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

13  Defendant objects to this Request to the extent it seeks information protected from
14  disclosure by the attorney-client privilege and/or attorney work product doctrine. Defendant objects
15  to this Request as overbroad because it seeks documents from custodians who were not involved
16  in the decision to terminate Plaintiff's employment. For that reason, Defendant also objects to this
17  Request on the grounds that it seeks information that is neither relevant nor reasonably calculated
18  to lead to the discovery of admissible evidence.

19  Subject to and without waiving the forgoing objections, Defendant limits this Request to
20  custodians that were involved in the decision to terminate Plaintiff's employment (who Defendant
21  has already identified for Plaintiff), including Yannick Bertolus, Megan Bowman, Aleks
22  Kagramanov, Ekelemchi Okpo, Joni Reicher, Jennifer Waldo, and Adelmise Warner. Defendant
23  does not have any non-privileged documents that are responsive to this request located after a
24  reasonably diligent search as they are kept in the ordinary course of business. Defendant will
25  produce a categorical privilege log.

26  **REQUEST FOR PRODUCTION NO. 17:**

27  Any responses transmitted from Apple to The Verge and/or the reporter Zoe Schiffer, about
28  the Apple Cares About Privacy, Unless you Work at Apple," Verge article, in response to the

EXHIBITS: PAGE 5

- 9 -

APPLE'S RESPONSES TO PLAINTIFF'S PART 1, REQUEST FOR PRODUCTION OF PHASE 1 DISCOVERY [23-CV-4597-EMC]

or agency complaints.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Apple objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the terms "[a]ll internal tracking records, case files, decision logs," "reflecting deliberation, planning, or decision-making," "about whether and how to take any adverse employment action" and "following coworker communications or agency complaints." Apple objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or calls for a legal conclusion. Apple objects to this Request on the grounds that it is overbroad in scope and time and unduly burdensome as a result. Apple objects to this Request on the grounds that it seeks information not relevant nor reasonably calculated to lead to the discovery of admissible information. Apple objects to this Request on the grounds that it seeks documents, including but not limited to ESI, that is not proportional to the needs of the case.

Subject to and without waiving any of its objections, Apple responds: Apple will conduct a diligent search and reasonable inquiry and produce any non-privileged responses to complaints between March 1, 2021 and September 10, 2021 about Plaintiff that are centrally maintained in Apple's systems of record for People Support, Business Conduct, EthicsPoint, or Employee Relations, to the extent such documents exist, on a rolling basis and as they are kept in the usual course of business.

**REQUEST FOR PRODUCTION NO. 17:**

All NDAs, confidentiality agreements, or contract provisions signed or offered to Plaintiff, from 2015 to 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Apple objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the terms "[a]ll NDAs, confidentiality agreements, or contract provisions ... offered." Apple objects to this Request on the grounds that it is overbroad in scope and time and unduly burdensome as a result. Apple objects to this Request on the grounds that it seeks information not relevant nor reasonably calculated to lead to the discovery of admissible information. Apple objects

to this Request on the grounds that it seeks documents, including but not limited to ESI, that is not proportional to the needs of the case.

Subject to and without waiving any of its objections, Apple responds: Apple will conduct a diligent search and reasonable inquiry and produce all agreements signed by Plaintiff not previously produced in its possession, custody, or control, to the extent such documents exist, on a rolling basis as they are kept in the usual course of business.

**REQUEST FOR PRODUCTION NO. 18:**

All internal communications or policy drafts referencing Apple's treatment, enforcement, or modification of NDAs, confidentiality language, or severance terms as applied to employees raising complaints about: Workplace safety; Wage transparency; Harassment; Toxic exposure; Government cooperation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Apple objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the terms "policy drafts," "Apple's treatment, enforcement or modification of NDAs, confidentiality language, or severance terms," "raising complaints," "Workplace safety," "Toxic exposure," and "Government cooperation." Apple objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine. Apple objects to this Request on the grounds that it is overbroad in scope and time and unduly burdensome as a result. Apple objects to this Request on the grounds that it seeks information not relevant nor reasonably calculated to lead to the discovery of admissible information. Apple objects to this Request on the grounds that it seeks documents, including but not limited to ESI, that is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 19:**

Any communications, meeting notes, or strategy documents created by Apple's Legal, ER, or HR teams about Plaintiff's compliance or noncompliance with confidentiality provisions.

discovery sought in that case, along with any responses thereto, is moot and does not exist within the context of the current litigation.

**REQUEST FOR PRODUCTION NO. 64:**

This RFP incorporations Plaintiff's require RFP on Oct. 30 2024 to the extent the Defendant denied any requests due to "unsettled pleadings," or other reasons which have sense been resolved. This instant request is the first request Plaintiff has filed to Defendant in a mutually agreed full civil discovery. The majority of this prior request was denied by the Defendant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Apple objects to this Request on the grounds that it is unintelligible. With respect to Plaintiff's RFPs, Set 1, Apple already served its amended objections and responses on February 12, 2025 and stands on those objections and responses. Apple remains willing to meet and confer in good faith regarding Plaintiff's RFPs, Set 1, as it has already done on multiple occasions including on March 25, 2025 and on May 2, 2025.

Dated: May 27, 2025                                         ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                                           */s/ Melinda S. Riechert*
                                                                           MELINDA S. RIECHERT
                                                                           Attorneys for Defendant
                                                                           APPLE INC.

Defendant Apple Inc. ("Apple") responds to Plaintiff Ashley Gjovik's Interrogatories, Set One, served on July 3, 2025, as follows:

**INTERROGATORY NO. 1:**

State in detail Defendant Apple Inc's complete and formal reason(s) for terminating Employee, Ashley Gjovik's, employment as of the time of the termination on Sept. 9 2021

**RESPONSE TO INTERROGATORY NO. 1:**

Apple objects to this Interrogatory on the grounds that it is vague, overly broad, and unduly burdensome, particularly in its request that Apple state the "complete and formal" reasons for the termination of Plaintiff's employment. This Request imposes an unreasonable demand that could be construed to require an investigation or response beyond what is relevant or proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and based on its understanding of the request, Apple responds as follows:

As a Senior Engineering Program Manager, Plaintiff had access to proprietary and trade secret information about unreleased products and features under development, which was shared internally only with those who had a business need to know. From time to time, Plaintiff was given the opportunity to participate in new product or feature user studies and to test unreleased prototypes. Participation in certain studies was voluntary and required her to agree to confidentiality obligations that prohibited her from disclosing any information about the existence of the study or her participation in it.

During her employment, Plaintiff participated in a user study of an internal and proprietary application called Alpha,[1] which tested face identification for certain Apple devices. Because the application was still in testing phase and unavailable to the public, Apple required all participants—as a condition of participating—to maintain strict confidentiality. Plaintiff voluntarily chose to participate in the study and signed the Alpha Study Consent Form expressly acknowledging that any information about the study, including her participation, was confidential under the

---

[1] To safeguard Apple's confidential information, the study is referenced as "Alpha" for purposes of this response.

Docusign Envelope ID: B84FDE8C-4EE0-4783-8CEB-7A5992CF2A71
Case 3:23-cv-04597-EMC   Document 240   Filed 08/12/25   Page 17 of 19
Defendant's Response to Plaintiff's Interrogatories Set 1 (8/4/25)

==Confidentiality Agreement and could not to be disclosed to third parties. The form read, in part, "YOUR CONFIDENTIALITY OBLIGATIONS … By agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple."==

Further, upon joining Apple, Plaintiff had agreed to comply with Apple's confidentiality policies relating to proprietary information related to Apple's research and development. She signed a Confidentiality and Intellectual Property Agreement (the "Confidentiality Agreement"). The provisions of the Confidentiality Agreement legally prohibited the dissemination of information relating to product development and research. It provided that employees were prohibited from disseminating the following:

(a) Trade secrets, R&D records, reports, samples, manuals, plans, specifications, inventions, ideas, designs, prototypes, software, source code, or any other materials or information relating to past, existing, and future products and services whether or not developed, marketed, used, or rejected by Apple or persons or companies dealing with Apple . . .

Plaintiff agreed to "strictly comply" with Apple's rules and policies relating to confidential product information and understood that breach of the agreement through prohibited disclosure of confidential product information could result in termination of her employment. Additionally, the importance of protecting Apple's confidential pre-release product information is clearly set out in the company's Business Conduct Policy: "One of [Apple's] greatest assets is information about [its] products and services, including future product offerings."

On August 28, 2021, Plaintiff tweeted details about a separate proprietary study Apple was conducting, the "Omega"[2] study, which she learned about in connection with her employment, was invited to participate in, but ultimately declined to participate. Like the Alpha study, the details of the Omega study were not known except to a small select group within Apple, and certainly not outside Apple, and thus they were covered by Plaintiff's Confidentiality Agreement in which she

---

[2] To safeguard Apple's confidential information, the study is referenced as "Omega" for purposes of this response.

1   Apple admits that in September 2021, an attorney representing Apple sent a letter to
2   Plaintiff asking her to "remove certain images and video that [she] ha[d] displayed publicly in
3   violation of [her] Confidentiality and Intellectual Property Agreement with Apple dated January
4   31, 2015." Plaintiff has referred to this letter as "threatening" (*see* Second Amended Complaint
5   (Dkt. No. 32-1) ¶ 550), though Apple denies that characterization is accurate and thus denies the
6   Request on that basis and to that extent.

**REQUEST FOR ADMISSION NO. 15:**

Admit that Apple did not notify Plaintiff at any time prior to September 9, 2021, that she was under investigation, subject to discipline, or at risk of termination for any conduct, including any social media activity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Based on its understanding of the Request, Apple responds:

Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that on September 9, 2021, prior to Apple terminating the Plaintiff, Plaintiff wrote to Apple and stated that she was willing to cooperate with any investigation Apple was conducting.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Apple objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the terms "cooperate."

Based on its understanding of the Request, Apple responds:

Denied.

**REQUEST FOR ADMISSION NO. 17:**

Admit that on or about August 30, 2021, the publication The Verge published an article titled "Apple cares about privacy, unless you work at Apple" that included an embedded video of Plaintiff [sic] face and upper body, recorded on Plaintiff's phone through the Gobbler application.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Apple objects to the Request to the extent it seeks information to which Apple does not have personal knowledge or information sufficient to admit or deny the request as phrased.

- 9 -

APPLE'S RESPONSES TO PLAINTIFF'S
REQ. FOR ADMISSION, SET ONE
CASE NO. 23-CV-4597-EMC

Based on its understanding of the Request, Apple responds:

On information and belief, Apple admits that The Verge published an article titled, "Apple cares about privacy, unless you work at Apple" on or about August 30, 202, as indicated by the following URL: https://www.theverge.com/22648265/apple-employee-privacy-icloud-id. On information and belief, Apple further admits that the article features an embedded video composed of, among other things, images showing Plaintiff's face (or parts of her face) and parts of her upper body. On information and belief, Apple further admits that the images were captured on Plaintiff's phone by an application that has been called Gobbler. Apple denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Apple was contacted by The Verge for comment prior to publication of the article, and did not provide a comment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Apple objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the term "the article." Apple further objects to this Request on the grounds that it is compound. *See* Fed. R. Civ. P. 36(a)(2); *Weil v. Raisin City Elementary Sch. Dist.*, No. 1:21-cv-00500-JLT-EPG, 2024 WL 4826233, at *5 (E.D. Cal. Nov. 19, 2024).

Based on its understanding of the Request, Apple responds:

Apple admits that a reporter from the Verge reached out to an employee at Apple "for comment" prior to the publication of the article titled, "Apple cares about privacy, unless you work at Apple" and that Apple did not provide a comment prior to the publication of the article. Apple denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 19:**

Admit that Apple did not inform Plaintiff at any time prior to September 9, 2021, that her social media posts or communications regarding Apple's surveillance practices violated any confidentiality or employment policies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Apple objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the terms "surveillance policies" and "confidentiality or employment policies." Apple