```
                  UNITED STATES DISTRICT COURT

             FOR THE NORTHERN DISTRICT OF CALIFORNIA

                     _____


  Ashley M. Gjovik,              )
                                 ) No. 3:23-cv-04597-EMC
                 Plaintiff,      )
                                 )
          vs.                    )
                                 ) San Francisco,
  Apple Inc.,                    ) California
                                 ) August 5, 2025
                 Defendant.      ) 2:32 p.m.
  _____)



        BEFORE:  THE HONORABLE EDWARD M. CHEN, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM VIDEOCONFERENCE


                      STATUS CONFERENCE
```

Official Court Reporter:
**Andrea K. Bluedorn, RMR, CRR**
United States District Court Reporter
Northern District of California
14418 S 42nd Street
Phoenix, AZ 85044
(715) 965-2298

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

|   |   |
|---|---|
| 1 | **A P P E A R A N C E S** |
| 2 | (By Zoom Videoconference) |
| 3 | For the Plaintiff: |
| 4 | **Ashley M. Gjovik**<br>In propria persona |
| 5 | 2108 N St, Suite 4553<br>Sacramento, CA 95816 |
| 6 | |
| 7 | For the Defendant:<br>ORRICK HERRINGTON & SUTCLIFFE LLP |
| 8 | By:  **Melinda S. Riechert, Esq.**<br>1000 Marsh Road |
| 9 | Menlo Park, CA 94025 |

UNITED STATES DISTRICT COURT

**P R O C E E D I N G S**

COURTROOM DEPUTY: Next case the Court will be hearing is Gjovik versus Apple. Those attendees participating in the hearing, please raise your hand and I'll promote you as panelist.

Court is now calling Gjovik versus Apple Inc., case number 23-4597. Counsel, please state your appearance for the record beginning with the plaintiff.

MS. GJOVIK: My name is Ashley Gjovik. I'm the plaintiff.

THE COURT: Thank you, Ms. Gjovik.

You're muted, Ms. Riechert.

MS. RIECHERT: Sorry about that. This is Melinda Riechert representing Apple for the defendant.

THE COURT: All right. Thank you, Ms. Riechert. So I see in July the plaintiff filed Chapter 7 in Massachusetts.

MS. GJOVIK: That's correct, Your Honor.

THE COURT: How does that affect these proceedings?

MS. GJOVIK: It's my understanding that until the appointment trustee abandons it, that any kind of settlement agreement would need to go through him as he's now taken control over any pending litigation that could be used to pay the creditors, however, Apple has made it their position clear throughout they have no interest in settling so I expect the

1    trustee will likely abandon it after our first meeting with the
2    creditors which is August 21st.
3            THE COURT:  So right now, the trustee hasn't abandoned
4    it so that means technically control of litigation is still --
5    at least until that abandonment -- is up in the air?
6            MS. GJOVIK:  Correct.  So I gave him notice that we
7    were having a status meeting today and sent him a copy of the
8    joint case management statement and asked him how involved he
9    would like to be.  It's my understanding they have very full
10   plates and they can't do everything so I've disposed all the
11   pending litigation.
12           It's up to him to decide if he wants to step in, but
13   the primary concern would be getting a settlement to pay the
14   creditors.  So I think from Apple's position, it seems like he
15   probably would not be involved.
16           THE COURT:  Well, then let me ask because I know you
17   had met with Judge C and the case did not resolve.  Where did
18   you leave it with Judge C?  Is there any plans for any future
19   meetings or at some point a check-in or anything?
20           Where did you all leave it with Judge C?
21           MS. GJOVIK:  I mentioned it when I talked -- so I had
22   expressed concerns at the beginning of it that Apple had seemed
23   like they weren't actually interested in a conference, and from
24   what I heard, they positioned it as if they -- I asked it for
25   not them and that they were offended to even be there.  And at

1  the end after I explained I thought it would be helpful to have
2  evidence to review instead of the he said she said, he agreed.
3  And he said if we were to have another one, it would be helpful
4  to actually review some evidence.  And I concur.
5          I think early neutral evaluation would be
6  exceptionally helpful.  I had raised eagerness for some sort of
7  summary judgment motion to move this along.  Perhaps early
8  neutral evaluation is a good reality check reinforcement
9  function for both parties to look at what evidence is on hand
10 and where we both stand.
11         THE COURT:  All right.  Ms. Riechert, your view of ADR
12 process and where it goes from here.
13         MS. RIECHERT:  Yes.  We did attend the settlement
14 conference.  We came with settlement authority.  Based on what
15 the magistrate said, he said there was no hope that the case
16 would be settled and we ended the settlement conference.
17         MS. GJOVIK:  So, Your Honor, just to be clear, I made
18 clear that I was willing to discuss settlement and no offer was
19 ever made.
20         THE COURT:  All right.  Let me ask defendants reaction
21 to the idea of E&E with evidence presented to get an E&E
22 evaluation.  What's your view of that, Ms. Reichert?
23         MS. RIECHERT:  We don't think that's productive, Your
24 Honor.  There's a very far -- based on the settlement
25 conference, the parties are very, very far apart on their ideas

1  of the settlement value of this case.
2          THE COURT: All right. If this case does not get
3  resolved by settlement -- and takes two to tango, obviously --
4  it sounds like -- I know there's some discovery disputes but
5  that's a matter for Judge Westmore. I believe she's the one
6  assigned to this and will be facing and addressing those
7  issues.
8          From a case management perspective, it sounds like the
9  next step both sides have indicated an intent to file summary
10 judgment motions. Is that -- do you -- do both sides foresee
11 that as sort of the next major juncture here?
12         MS. RIECHERT: Yes, Your Honor.
13         MS. GJOVIK: That's correct.
14         THE COURT: And maybe give me a one minute or 30
15 second preview from the plaintiff's perspective what will your
16 -- what do you anticipate your motion for summary judgment will
17 be about?
18         MS. GJOVIK: My motion for summary judgment would be
19 heavily showing the protected activity, the temporal nexus, the
20 adverse action, and then the statutory factual already in
21 evidence flags of pretext and changing stories and showing that
22 they're making up an excuse after a fact, the post hoc
23 rationalizations. There's already a substantial amount of
24 evidence to support the full prima facie case. NLRB has
25 already filed a complaint thinking they have enough evidence

1  and they have far less than I have on hand.
2          THE COURT: Where is the NLRB -- what is -- where is
3  that at right now?
4          MS. GJOVIK: Yeah, they have filed a complaint and
5  scheduled a hearing.  There's a new general counsel appointed
6  under the new administrations which is actually one of Apple's
7  defense attorneys on my case, which I have raised concerns
8  about potential conflict of interest on that.  She's withdrawn
9  from the case, but she is now going to be general counsel
10 confirmed by the Senate.
11         And when she was appointed, they pulled back the
12 hearing and said they're having a look the complaint again.  I
13 don't know what the ETA is for that, but I have not heard
14 anything about them taking a less aggressive stance on that.
15 And we did settle the NDA case which was Apple's first national
16 settlement with the NLRB and they had to update I think over a
17 dozen policies, which is phenomenal progress, and that's still
18 in place.
19         THE COURT: Ms. Riechert, any comment about the status
20 of the NLRB?
21         MS. RIECHERT: We do not represent them in connection
22 with the NLRB matter but I believe that what Ms. Gjovik says is
23 accurate in the sense that there is no current hearing
24 scheduled.  That was the last I heard.
25         THE COURT: All right.  But the summary judgment

1    motion would be focused on the elements of retaliation,
2    objectivity, causation, etcetera, etcetera.  And you think --
3    you think that even though the standard is there has to be no
4    genuine dispute of material fact, that despite the usual
5    factual nature of these questions that you can make your case
6    as a matter of law.
7            MS. GJOVIK:  I feel there is overwhelming documentary
8    evidence between both things that would be judicially noticed
9    as well as already admissible evidence that, yes, Your Honor, I
10   do feel confident that I could make my case already on the
11   retaliation and labor violations.
12           THE COURT:  Okay.  And what about the defendant's
13   motion, Ms. Riechert?  What's that going to look?
14           MS. RIECHERT:  Yes.  We would present evidence that
15   Ms. Gjovik posted confidential information belonging to the
16   company on her Twitter, X account, and that's why she was fired
17   along with her failure to properly participate in the
18   investigation that Apple was conducting in connection with the
19   conduct that she was ultimately fired for.
20           THE COURT:  You think, again, that there are no
21   genuine disputes of material fact in that regard?
22           MS. RIECHERT:  That's correct, Your Honor.  There's no
23   doubt that she posted the information.  There's no doubt that
24   the information was confidential.  There was no doubt she had
25   no right to post that information and those were all undisputed

1  issues of fact.

2          THE COURT: But if they're conflicting discretions as
3  to the causal reasons, the motivation, one legitimate, not
4  legitimate.  Do you think that's still something that's summary
5  judgment-able?

6          MS. RIECHERT: Yes, Your Honor.  As I say, there's no
7  doubt that she did a wrongful act, and other people at Apple
8  have been fired for the same wrongful act, disclosing
9  confidential information, and so we don't believe that there's
10 any reason to believe that that was not the legitimate reason
11 that Apple did in fact fire her for that conduct and the fact
12 that she had complained previously about various things at
13 Apple does not create a disputed issue of fact that she engaged
14 in wrongful conduct and that she was fired for that act and
15 that other people had been fired for the same thing.

16         THE COURT: When do you think each of you would be
17 filing -- prepared to file your motions?

18         MS. RIECHERT: We're trying to take the plaintiffs
19 deposition right now but we've been having some discovery
20 disputes and we do need to take the plaintiffs deposition, and
21 once that's taken place, we will be in a better position to
22 assess the summary judgment motion.

23         MS. GJOVIK: Your Honor, we have an agreement about --
24 sorry, go ahead.

25         THE COURT: Your best case, Ms. Riechert, is what,

```
 1  couple months from now or what do you think?
 2           MS. RIECHERT:  Longer than that.  I'm not sure where
 3  we are at on getting the deposition taken.
 4           THE COURT:  But months from now?
 5           MS. RIECHERT:  Yeah.  I think Ms. Gjovik brought up
 6  October for the deposition.  Was that correct?
 7           MS. GJOVIK:  We had agreed to October.  There wasn't
 8  an open dispute on this.
 9           THE COURT:  Okay.  When do you think you would be
10  prepared to file your motion, Ms. Gjovik?
11           MS. GJOVIK:  So, Your Honor, my concern is it sounds
12  like we have a bifurcated case so I would be filing for prima
13  facie.  They -- I think there's an open question if they think
14  they're ready for prima facie.  They appear to be making their
15  affirmative defense case but I still have not been disclosed
16  from them of what all of their affirmative defenses are.
17           That said, I feel like I could make my prima facie
18  case now, like 60 day, 90 day.
19           THE COURT:  Well, I don't want to -- I think we should
20  structure it as cross-motions because they do overlap a fair
21  amount and so I don't want you to file yours then say, well, I
22  need more information to get the second half.  So it sounds
23  like there needs to be some discovery on both sides.
24           MS. GJOVIK:  From the defense -- I am waiting for
25  their interrogatories of what they even are in detail and how
```

1  they plan to present them.  I will say, you know, it sounds
2  like they're sticking with generally the defense they've had
3  for two, three, four years now.  And even if we went on forward
4  on that in 60 or 90, I do feel like I have enough evidence to
5  show that their defenses are false such as other people sharing
6  the same information who were not fired, me not hiding I was
7  sharing information, the information being clearly protected.
8          Yeah.
9          THE COURT:  Why don't we do this, let's schedule a
10 come back -- I'm going to assume that working with Judge
11 Westmore you're going to hopefully get some discovery done, get
12 the depositions taken, and within 60 days when we reconvene, we
13 can then set a firm date or have a better idea of when we can
14 get these things on file.
15         MS. GJOVIK:  I think that's a great idea.  I am
16 concerned though that Judge Westmore -- so when we first spoke,
17 Your Honor, a year and a half ago about planning discovery.
18 You had mentioned in the transcript you were hoping Judge
19 Westmore could help us mediate our main concern and help us
20 create a discovery plan.
21         She expressed that she can't do that, that would be a
22 special master so she can't be involved in that at all.  We
23 still have no discovery plan.  Apple has been very resistant to
24 the idea.
25         We also have ongoing disputes about spoliation and

|   |   |
|---|---|
| 1 | other issues.  I did want to raise that I feel like it would |
| 2 | help to have some court oversight of the discovery process |
| 3 | especially since Apple continues to make many false accusations |
| 4 | that would be easily disprovable if we had a plan, a document |
| 5 | plan and agreement to show it was actually agreed upon.  And |
| 6 | I've seen sometimes the Court will have both parties kind of |
| 7 | submit a joint plan. |
| 8 | Sometimes some are high level, sometimes very |
| 9 | detailed.  But just to have something on the record of what the |
| 10 | plan is.  I would ask that we could maybe consider something |
| 11 | like that because Judge Westmore said she would not be involved |
| 12 | in that is why I'm raising it to you. |
| 13 | THE COURT:  Well, I will discuss with Judge Westmore |
| 14 | how to supervise this; and if we need to bring in the change of |
| 15 | process, I will consider that but I'm going to talk with her |
| 16 | about that.  Obviously, we want to get things underway. |
| 17 | So what I would like to do is, again, set up a status |
| 18 | conference 60 to 90 days from now so we can see how far we've |
| 19 | gotten and what needs to be done and when we can start hearing |
| 20 | these motions. |
| 21 | MS. RIECHERT:  I would like to say, Your Honor, that I |
| 22 | do not believe that was an accurate statement of what Judge |
| 23 | Westmore said.  She said she would resolve discovery disputes |
| 24 | that were properly brought up to her.  She set up a whole |
| 25 | procedure to bring discovery disputes to her. |

```
 1              What she also said was if these disputes are too
 2   voluminous and I'm spending too much time on them, I may have
 3   to talk about getting a special master involved.
 4              THE COURT:  Right.  Well, that's why I'm going to talk
 5   to her --
 6              MS. GJOVIK:  That's not what she -- I have a recording
 7   of the --
 8              THE COURT:  In any event, I'm going to talk to Judge
 9   Westmore.  I'm going to get it straight from the horses mouth,
10   as they say.
11              So, Vicky, for the status.
12              COURTROOM DEPUTY:  October 21st at 2:30, Your Honor.
13              MS. RIECHERT:  I'm fine with that date.  I just want
14   to be sure we had the plaintiffs deposition before that
15   since --
16              MS. GJOVIK:  I will give it before then.
17              THE COURT:  Okay.  Good.  All right.
18              Good, we will have some progress, and we'll see you on
19   the 21st at 2:30 on Zoom.
20              MS. GJOVIK:  Thank you, Your Honor.
21              THE COURT:  Thank you.
22
23       (Proceedings conclude at 2:46 p.m.)
24                           ---oOo---
25
```

**C E R T I F I C A T E**

I, ANDREA K. BLUEDORN, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Northern California.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 25th day of August, 2025.

/s/ Andrea K Bluedorn
Andrea K. Bluedorn, RMR, CRR