**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

**Ashley M. Gjovik,**

*an individual*,

Plaintiff,

vs.

**Apple Inc.,**

*a corporation,*

Defendant.

Case No. 3:23-CV-04597-EMC
(RICO, Civil Rights, Retaliation, Labor Code Violations, Toxic Torts, Cal. Bus. & Prof. Code § 17200, IIED/NIED).

## Plaintiff's Opposition to Defendant's Emergency Motion for a Stay

HEARING:
Dept: Courtroom 5, 17th Fl. & Zoom
Judge: Honorable Edward M. Chen
Date: October 23 2025
Time: 1:30 PM PST

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Chapman* v. *County of Douglas,* 107 U.S. 348, 355 (1883). ---------------------------------------- 3

*Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000) ------------- 17

*Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) ------------------------------------------ 17

## US COURT OF APPEALS CASES

*Blausey v. U.S. Trustee,* 552 F.3d 1124, 1133 (9th Cir. 2009) ---------------------------------- 6

*Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) ---------------------------------------- 21

*Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997) ------------------------------------------ 25

*In re A & C Properties* 784 F.2d 1377 (9th Cir. 1986) ----------------------------------------- 6

*In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.), cert. denied, 484 U.S. 819, 108 S. Ct. 77, 98 L.

Ed. 2d 40 (1987) ------------------------------------------------------------------------------- 6

*Katz v. Comm'r.,* 335 F.3d 1121, 1127 (10th Cir. 2003) ------------------------------------- 4

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005) ------- 21

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ------------------- 4

*Parker v. Bain,* 68 F.3d 1131 (9th Cir. 1995) ------------------------------------------- 1, 6

*Read v. Duck (In re Jacksen),* 105 B.R. 542, 545 (9th Cir. BAP 1989) ---------------------------1

*St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982) ----- 6

*United States v. Aguilar,* 515 U.S. 593, 609-10 (1995) --------------------------------------- 24

*United States v. Koziol,* 993 F.3d 1160, 1170 (9th Cir. 2021) --------------------------------- 25

*United States v. Lester,* 749 F.2d 1288 (9th Cir. 1984) --------------------------------------- 24

*United States v. Rasheed,* 663 F.2d 843, 851 (9th Cir.1981) --------------------------------- 24

*United States v. Thomas,* 612 F.3d 1107, 1123-24 (9th Cir.2010)------------------------------ 24

*United States v. Weisman*, 624 F.2d 1118, 1123–24 (2d Cir. 1980) -------------------------------- 20

*United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). ----- 23

1

## US DISTRICT COURT CASES

2

3

*Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989)------------------ 6

*Barletta v. Tedeschi,* 1990 WL 194478 (N.D.N.Y. Dec. 3, 1990) ------------------------------------- 9

4

*Callan v. State Chemical Mfg. Co.,* 584 F. Supp. 619, 622 (E.D. Penn. 1984) ------------------- 24

5

*Carley Capital Group v. Fireman's Fund Insurance Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989) ---- 6

6

*Perrong v. DVD II Group, LLC,* 2023 WL 3229934 (E.D. PA. May 3, 2023). -------------------- 14

7

*Williams v. Hall,* 683 F. Supp. 639, 642 (E.D. Ky. 1988)--------------------------------------------- 24

8

9

## U.S. AND STATE STATUTES

10

11 U.S. Code § 525(a)-(b) ----------------------------------------------------------------------------- 11

11

11 U.S.C. § 327 -------------------------------------------------------------------------------- 5, 9, 11

12

11 U.S.C. § 362(b) ------------------------------------------------------------------------------------ 6

13

11 U.S.C. § 521 ---------------------------------------------------------------------------------------- 8

14

11 U.S.C. § 521(a)(1)(B)(i)-------------------------------------------------------------------------- 2

15

11 U.S.C. § 541 ----------------------------------------------------------------------------------- 8, 17

16

11 U.S.C. § 541(d) ----------------------------------------------------------------------------------- 17

17

11 U.S.C. § 554 ---------------------------------------------------------------------------------------- 9

18

11 U.S.C. § 554(b)-(c) -------------------------------------------------------------------------------- 9

19

11 U.S.C. § 704(a) (1) -------------------------------------------------------------------------------- 5

20

11 U.S.C. § 704(a)(1) ----------------------------------------------------------------------------- 5, 9

21

11 U.S.C. § 726(a)(1)-(6) ----------------------------------------------------------------------------- 6

22

11 U.S.C. §§ 101-1330 --------------------------------------------------------------------------------- 7

23

18 U.S.C. § 1341/1343 -------------------------------------------------------------------------------- 20

24

18 U.S.C. § 1503------------------------------------------------------------------------------ 20, 23, 24

25

18 U.S.C. § 1512 -------------------------------------------------------------------------------------- 23

26

18 U.S.C. § 152 ----------------------------------------------------------------------------------- 24, 25

27

18 U.S.C. § 1961(1) ----------------------------------------------------------------------------------- 23

28

18 U.S.C. §§ 1001 ------------------------------------------------------------------------------------- 20

PLAINTIFF'S OPP. TO DEFENDANT'S MOTION TO STAY | CASE NO. 3:23-CV-04597

18 U.S.C. §§ 1341 and 1343 ------------------------------------------------------ 25

18 U.S.C. §§ 1341, 1343 --------------------------------------------------------- 25

28 U.S.C. § 1334 ------------------------------------------------------------- 4, 7

33 U.S.C. § 1365(b)(1)(B) --------------------------------------------------- 17

### U.S. AND STATE RULES & REGULATIONS

Fed. R. Bankr. P. 2002 ---------------------------------------------------------- 5

Fed. R. Bankr. P. 6004 ------------------------------------------------------ 5, 9, 12

Fed. R. Bankr. P. 6007 ---------------------------------------------------------- 9

Fed. R. Civ. P. 24 --------------------------------------------------------------- 4

Fed. R. Civ. P. 24 and 25 ------------------------------------------------------ 14

Fed. R. Civ. P. 25 --------------------------------------------------------------- 4

Fed. R. Civ. P. Rules 24 and 25 ------------------------------------------------- 3

PLAINTIFF'S OPP. TO DEFENDANT'S MOTION TO STAY | CASE NO. 3:23-CV-04597

# Table of Contents

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT'S EMERGENCY MOTION
FOR A STAY ................................................................................................. 1

SUMMARY ................................................................................................. 1

THE BANKRUPTCY TRUSTEE LACKS AUTHORITY TO AGREE TO ANY
LITIGATION STAY; THIS COURT SHOULD DEFER TO BANKRUPTCY COURT
JURISDICTION ........................................................................................ 3

    I.     Defendant's Motion Relies on Legally Void Communications from a Non-Party ...... 4

    II.    Bankruptcy Court Has Primary Jurisdiction Over Trustee Authority and Conduct
        4

    III.    The Trustee's Procedural Violations Render His "Agreement" Invalid ................. 5

    IV.    Defendant Cannot Eliminate Plaintiff Through Unauthorized Trustee
        Communications ................................................................................ 5

    V.     This Court Should Deny the Motion ................................................... 7

DEFENDANT'S "MISCONDUCT" ALLEGATIONS ARE LEGALLY FRIVOLOUS AND
MISSTATE BANKRUPTCY LAW ................................................................ 8

    VI.    Defendant Confuses Disclosed Claims with Undisclosed Claims - Two Entirely
        Different Legal Doctrines ................................................................... 8

    VII.    Debtor Standing Continues Until Trustee Formal Administration or
        Abandonment ................................................................................... 9

    VIII.    Misrepresentation of the Role of Exemptions in Bankruptcy Law ................. 10

    IX.    Investigation Is Not Administration - Debtor Standing Continues During
        Investigation Period ........................................................................ 11

    X.     Plaintiff's "Abandonment Expectation" Was Reasonable, Not Misconduct ......... 12

    XI.    Defendant's Motion Seeks to Weaponize Bankruptcy Procedures .................... 12

NO EMERGENCY EXISTS ........................................................................ 13

XII.    Defendant Forum Shops to Avoid Discovery Judge Westmore ..................... 14

XIII.    Defendant Intends to Obtain a Court Order Based on Misstatement of Law and its Own Misconduct In order to Block an EPA Citizen Suit ........................................ 16

XIV.    This is Not the First Time Defendant has Tried to Remove Plaintiff from her Lawsuit in Order to Avoid Discovery Obligations .................................................... 17

DEFENDANT IDENTIFIES NEED FOR TRUSTEE CLARITY; THE COURT CAN PROVIDE IT ................................................................................................... 19

PLAINTIFF'S REQUEST TO AMEND / PRESERVATION OF RIGHT TO ADD ADDITIONAL PREDICATE ACTS TO RICO CLAIMS ....................................... 19

XV.    Systematic False Statements and Evidence Concealment Across Multiple Proceedings ....................................................................................................... 19

XVI.    Attempted Interference with Possible FCA Enforcement Action ................... 21

XVII.    Additional Predicate Acts Arising from concurrent Bankruptcy Proceedings .. 22

XVIII.    Reservation of Rights / Request for Reconsideration and/or Leave to Amend 25

CONCURRENTLY FILED MOTIONS WITH THE BANKRUPTCY COURT ................ 26

CONCLUSION ............................................................................................... 28

CERTIFICATE OF SERVICE ............................................................................. 29

# Plaintiff's Omnibus Opposition to Defendant's Emergency Motion for a Stay

1. Plaintiff Ashley Marie Gjovik hereby fundamentally objects and opposes the Defendant's Emergency Motion to Stay (Dkt. 247-248). As such, rather than brief the supposed 'emergency' separately, Plaintiff submits this comprehensive omnibus response addressing issues raised in both of Defendant's motions.

2. This Court can resolve these matters immediately without emergency procedures, as the only 'emergency' is Defendant's attempt to avoid standard litigation procedures. However, if the court was to rule adversely to the Plaintiff, the Plaintiff respectfully requests a hearing and oral arguments prior to the court's decision.

# Summary

3. Here, Defendant seeks to stay two years of federal litigation based on an informal email from a Chapter 7 bankruptcy trustee who has never appeared in this Court, is not admitted to practice in the Northern District of California, and lacks any authority to agree to litigation stays. Further, Fed. R. Bankr. P. 6009 expressly allows the Plaintiff/Debtor to "prosecute … and defend any pending action or proceeding by … the debtor, or commence and prosecute any action or proceeding on behalf of the estate before any tribunal." *Read v. Duck (In re Jacksen),* 105 B.R. 542, 545 (9th Cir. BAP 1989); *Parker v. Bain,* 68 F.3d 1131 (9th Cir. 1995). The Defendant's motion represents a meritless and bad faith attempt at a procedural end-run around standard discovery practices they do not want to participate in, and their motion should be denied.

4. Defendant (a disputed creditor in Plaintiff's Estate) appears to have coordinated improperly with the Trustee of Plaintiff's Estate and unilaterally agreed to stay Plaintiff's litigation without investigation, notice, or authority. Plaintiff is concurrently filing a motion in bankruptcy court to address this apparent misconduct by the Trustee, and will also file a copy to this docket as a pending matter. The bankruptcy court must resolve what the trustee is actually doing before any federal court can rely on his communications. Further, Defendant's motion relies on an email from someone who is not a party to this litigation, has never filed a notice of appearance, and cannot be

1  served with this Court's orders. This Court cannot manage litigation based on informal
2  communications from non-parties.

3      5.      Next, rather than following Local Rules and Court Orders for discovery disputes,
4  Defendant has escalated dozens of discovery issues by seeking to stay the entire case. Defendant
5  refused to engage in meet-and-confer, draft joint letters, or raise discovery objections with the
6  discovery judge, and instead seeks emergency relief to avoid discovery procedures.

7      6.      In addition, Defendant's legal arguments are facially absurd. Defendant argues that
8  Plaintiff committed misconduct by properly disclosing litigation on bankruptcy schedules as
9  required by federal law. Their argument confuses disclosed claims with undisclosed claims by citing
10  cases involving debtors who hid assets, not those who properly disclosed them. 11 U.S.C. §
11  521(a)(1)(B)(i). Apple's arguments would punish honest bankruptcy disclosure, and create
12  incentives for debtors to conceal assets. Defendant further misunderstands basic bankruptcy
13  procedures by ignoring that trustee investigation does not equal trustee administration.

14      7.      The timing of Defendant's Motion to Stay reveals classic forum shopping. Plaintiff
15  filed Chapter 7 bankruptcy on July 21, 2025, properly disclosing this litigation. Plaintiff filed a
16  Notice of Pendency to this case's docket on the same day (Dkt. 237) and also filed a notice of her
17  student loan discharge case to this docket on July 29 2025 (Dkt. 238).

18      8.      Both Plaintiff and Defendant also mentioned the Plaintiff's bankruptcy in their July
19  29 2025 Joint Case Management Statement. (Dkt 239 at 8, 11). Plaintiff wrote that "Plaintiff
20  recently filed for Chapter 7 bankruptcy in the District of Massachusetts" and "considering
21  Plaintiff's pending Chapter 7 bankruptcy and Defendant's ongoing refusal to meet/confer in good
22  faith, Plaintiff requests a second settlement conference, but this time, specifically ENE."(Dkt. 239
23  at 8, 11). Defendant wrote "On July 21, 2025, Plaintiff filed for Chapter 7 bankruptcy in the United
24  States Bankruptcy Court for the District of Massachusetts." (Dkt. 239 at 11).

25      9.      At the August 5, 2025 federal court hearing, Defendant raised no questions about
26  the bankruptcy or Plaintiff's standing, nor did they question Gjovik's sole presence at the hearing
27  or agency to enter agreements for schedules and case management next steps. Plaintiff also told
28  this court the Estate included her legal claims. Thus, Defendant "slept upon [its] rights" to raise

objections or ask questions then. *Chapman* v. *County of Douglas,* 107 U.S. 348, 355 (1883).

10.     During the August 5 2025 hearing, the court approved the plan to proceed to Summary Judgement. Only on August 26, 2025, with summary judgment being planned and discovery finally underway, does Defendant suddenly claim Plaintiff's bankruptcy filing eliminated Plaintiff's standing and demand an emergency stay. This represents obvious forum shopping - seeking emergency relief to avoid unfavorable litigation posture.

11.     This Court should require all parties to follow established procedures. Discovery disputes should be filed as proper objections with the discovery judge per Local Rules and court Orders. If the trustee seeks involvement, he must file notice of appearance and proper intervention or substitution motions per Fed. R. Civ. P. Rules 24 and 25. Bankruptcy issues should be resolved by the bankruptcy court before this federal court relies on trustee communications. Discovery should continue per the existing schedule while proper procedures resolve jurisdictional questions.

12.     This Court should deny Defendant's motion because, among other issues, it relies on communications from an unauthorized non-party who has never appeared in this Court, violates standard discovery procedures by seeking emergency stays instead of raising objections properly, makes legally frivolous misconduct allegations that punish honest bankruptcy disclosure, represents obvious forum shopping to avoid adverse discovery rulings and summary judgment, and creates an unworkable procedural precedent of managing litigation through informal emails from non-parties. The only emergency here is Defendant's attempt to escape standard litigation procedures. This Court should deny the motion and require all parties to follow established rules for discovery disputes, trustee intervention, and case management. Plaintiff respectfully submits that normal litigation procedures, not emergency intervention, will resolve any legitimate concerns while preserving this Court's limited resources for actual emergencies.

# THE BANKRUPTCY TRUSTEE LACKS AUTHORITY TO AGREE TO ANY LITIGATION STAY; THIS COURT SHOULD DEFER TO BANKRUPTCY COURT JURISDICTION

## I. Defendant's Motion Relies on Legally Void Communications from a Non-Party

13. Defendant's motion fundamentally relies on an informal email from Chapter 7 Trustee Mark DeGiacomo stating he "does not object" and thinks it "appropriate" to stay this litigation. Plaintiff fervently objected. The Trustee's communication has no legal effect because the Trustee lacks standing in this Court and authority under bankruptcy law to make such agreements.

14. The Trustee has never filed a Notice of Appearance in this Court, filed a motion to intervene under Fed. R. Civ. P. 24, sought substitution as a party under Fed. R. Civ. P. 25, obtained bankruptcy court approval to control this litigation, or (per his website profile) been admitted to practice in the U.S. District of Northern California. An informal email from someone who is not a party to this litigation cannot provide basis for emergency relief, nor does a Trustee extinguish a Plaintiff/Debtor's legal rights. See, *Katz v. Comm'r.,* 335 F.3d 1121, 1127 (10th Cir. 2003) (in a bankruptcy, a debtor and the estate are distinct legal entities).

## II. Bankruptcy Court Has Primary Jurisdiction Over Trustee Authority and Conduct

15. 28 U.S.C. § 1334 grants bankruptcy courts exclusive jurisdiction over estate administration, including determinations of trustee authority to control litigation assets. The question of whether Trustee DeGiacomo has authority to agree to litigation stays is squarely within the bankruptcy court's exclusive jurisdiction. Plaintiff concurrently files a motion in bankruptcy court challenging the Trustee's authority on this matter and seeking protective orders regarding his conduct. This motion raises fundamental questions about whether the Trustee properly assumed control of this litigation as an estate asset, whether the Trustee's improper coordination with Defendant violated bankruptcy procedures, and whether the Trustee has authority to agree to litigation stays without court approval.

16. This Court should defer ruling on Defendant's motion pending the bankruptcy court's determination of these threshold jurisdictional issues. See *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (federal court should defer to bankruptcy court's exclusive jurisdiction over estate administration).

## III. The Trustee's Procedural Violations Render His "Agreement" Invalid

17.    Even if the Trustee had standing, his informal email agreement violates multiple bankruptcy procedures. Despite inexplicitly converting this case to "asset" status over one month ago, the Trustee never investigated this litigation or sought court approval to control it under Fed. R. Bankr. P. 6004. The Trustee never requested employment of specialized counsel under 11 U.S.C. § 327 for retaliation litigation, yet purports to make strategic decisions about the case.

18.    Fed. R. Bankr. P. 2002 requires notice to interested parties before trustees take actions affecting estate assets. The Trustee provided no notice before his improper agreement with Defendant. 11 U.S.C. § 704(a)(1) requires trustees to "collect and reduce to money the property of the estate." The Trustee's agreement to stay the estate's primary asset directly contradicts this statutory mandate. The Trustee's procedural violations render his "agreement" *void ab initio*.

19.    Prepetition legal claims not exempted by the debtor may be administered and liquidated by the trustee. 11 U.S.C. § 704(a) (1).  The trustee is responsible for 'administering' the estate's assets, which basically means managing those assets for the estate. But a trustee cannot act without approval from the bankruptcy court."[1]

## IV. Defendant Cannot Eliminate Plaintiff Through Unauthorized Trustee Communications

20.    Defendant argues that Plaintiff "no longer has standing" based on the Trustee's informal email. This argument is procedurally impossible and legally frivolous. Until formal court proceedings occur, Plaintiff remains the proper party to this litigation. Trustee substitution requires formal motion practice with proper service and notice, not informal email agreements. Defendant's attempt to eliminate Plaintiff through unauthorized communications violates Fed. R. Civ. P. 25.

21.    During bankruptcy, the Estate "owns" the Debtor's legal claims and pending litigation but that ownership relates to the fiscal outcome of litigation with non-exempt pecuniary damages (settlements, judgements, etc.). Further, even as the "owner" of a claim, the trustee will

---

[1] Tina Tellado and Todd Werts, An Ounce of Prevention: Perspectives on a Civil Plaintiff Filing Bankruptcy From Both Sides of the 'V', https://learwerts.com/wp-content/uploads/2020/09/2020-09-02-Federal-Bar-An-Ounce-of-Prevention-Revision.pdf

need to move for Bankruptcy court approval of any settlement or intervention. *In re A & C Properties* 784 F.2d 1377 (9th Cir. 1986). Then, after payment of all claims, the "[p]roperty of the estate shall be distributed . . . to the debtor." 11 U.S.C. § 726(a)(1)-(6).

22. The automatic stay does not eliminate debtors as parties. The automatic stay only stays litigation against the debtor. See 11 U.S.C. § 362(b) discussing the stay of claims "against the debtor." Critically, 11 U.S.C. § 362 "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." *St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982); *In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.), cert. denied, 484 U.S. 819, 108 S. Ct. 77, 98 L. Ed. 2d 40 (1987).

23. The stay also protects debtors from counter-claims during bankruptcy. *Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989) (where plaintiff-debtor enters bankruptcy, defendant may not assert counterclaim against bankrupt plaintiff), aff'd without op., 902 F.2d 1558 (3d Cir. 1990). "The debtor and property of its bankruptcy estate are protected by the automatic stay in section 362 of the Bankruptcy Code from creditor collection efforts… including litigation, enforcement of judgments, and acts 'to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.'"[2]

24. The stay does not apply to "claims by, not against, the debtor," and where "successful prosecution would inure to the benefit of the bankruptcy estate." *Parker v. Bain,* 68 F.3d 1131 (9th Cir. 1995) quoting *Carley Capital Group v. Fireman's Fund Insurance Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989) (quoting *St. Croix,* 682 F.2d at 448). [3]

25. Here, Defendant has reversed the plain text reading and congressional intent of this rule. Further, Apple, a creditor in Plaintiff's Estate (creditor no. 21011446), is improperly using legal filings in an effort to take unlawful possession of this litigation, which is property of the Estate in Boston, Massachusetts.

---

[2] JD Supra, *Tenth Circuit: Bankruptcy Court Did Not Relinquish Its Jurisdiction by Granting Relief from Automatic Stay,* Sept. 23 2024, https://www.jdsupra.com/legalnews/tenth-circuit-bankruptcy-court-did-not-5500139/
[3] "'The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded." *Blausey v. U.S. Trustee,* 552 F.3d 1124, 1133 (9th Cir. 2009).

# V. This Court Should Deny the Motion

26. Because Defendant's motion relies almost entirely on discovery dispute escalation, reckless misrepresentation of the law, and communications from someone without authority to make them, this Court should either deny the motion for failure to establish proper basis for relief. Meanwhile, the Massachusetts bankruptcy court's ruling on trustee authority will be dispositive of Trustee's authorized role in this litigation. A bankruptcy court's original and exclusive jurisdiction is over matters under Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 ("Bankruptcy Code") and is set forth in 28 U.S.C. § 1334.

27. Ultimately, even if Apple was raising a legitimate issue, which it is not, this court cannot bypass the Bankruptcy Court, the District Court of Massachusetts, or the First Circuit and make decisions under Bankruptcy Code, impacting a Boston-based bankruptcy, in a case relating to that Bankruptcy Estate. Apple's efficiency argument also fails because no deadlines are threatened, discovery can proceed while trustee issues resolve, and their own delay tactics created any timing issues. Moreover, the current procedural posture demonstrates that any stay would be improper. If the Trustee lacks authority (as the bankruptcy motion contends), then Defendant's entire premise fails. If the Trustee has authority, then he must follow proper procedures including formal intervention in this Court. Either way, Defendant's emergency motion fails and should be denied.

28. Further, the Trustee's email communication was based on Defendant's suggestion they would simply file a Motion to Stay this case as some sort of accommodation for the Trustee, supposedly to protect the Estate. The Trustee approved while he was on vacation and never responded to Plaintiff's objections, and it does not appear he was provided a draft of what Apple filed prior to Apple filing. Because the content of Apple's motion is extremely harmful to the Plaintiff's position, and thus also harmful to the Estate, it must be assumed the Trustee did not know what Apple actually intended to file and would have never agreed to Apple's conduct.

29. Trustees are officers of the court, and thus Apple made materially false statements to the trustee about what they intended to file, in order to solicit his approval in writing, only to then turn around and file something extremely damaging to the estate, and only provide notice of what they filed after they filed and the damage was already done. Apple's conduct in doing so

actually appears to give rise to multiple chargeable criminal offenses as discussed below in the Request to Amend and RICO predicate act section.

30.     Further, Apple's motion fails every factor courts consider for litigation stays. First, granting a stay would cause substantial damage by halting two years of litigation progress, allowing evidence to deteriorate, and rewarding Apple's discovery misconduct. Second, Apple suffers no hardship from proceeding: they actively participated in discovery for over a month after Plaintiff's bankruptcy filing, waiving any standing objections through their own conduct. Third, staying this litigation would destroy the orderly course of justice by abandoning established procedures, encouraging forum shopping, and creating precedent for managing cases through informal emails from non-parties rather than proper court rules. Apple's emergency motion is procedural gamesmanship designed to escape adverse discovery, not legitimate legal relief.

# DEFENDANT'S "MISCONDUCT" ALLEGATIONS ARE LEGALLY FRIVOLOUS AND MISSTATE BANKRUPTCY LAW

## VI.  DEFENDANT CONFUSES DISCLOSED CLAIMS WITH UNDISCLOSED CLAIMS - TWO ENTIRELY DIFFERENT LEGAL DOCTRINES

31.     Defendant's motion fundamentally misunderstands bankruptcy law by conflating properly disclosed claims (Plaintiff's situation) with undisclosed claims (which can constitute misconduct). These are opposite legal scenarios with completely different consequences.

32.     When debtors properly list litigation on their bankruptcy schedules, those claims become property of the bankruptcy estate under 11 U.S.C. § 541. The trustee must then either investigate and administer the claims or abandon them under 11 U.S.C. § 554. There is no misconduct in properly disclosing assets as required by law. Plaintiff properly disclosed this litigation on Schedule B as required by 11 U.S.C. § 521.

33.     Defendant's attempt to apply "concealment" cases to a properly disclosed claim demonstrates a fundamental misrepresentation of bankruptcy law. The cases Defendant cites involve debtors who failed to list a known actual or potential claim on the bankruptcy schedules and

1   later tried to pursue those claims in separate litigation. Courts apply judicial estoppel and standing

2   defenses against such debtors because they knowingly and fraudulently concealed assets from the

3   bankruptcy court.

4       34.    None of Defendant's cited cases involve debtors who properly disclosed litigation

5   and continued managing it during the trustee's investigation period. Defendant's legal theory would

6   penalize debtors for following disclosure requirements - an absurd result that no court has ever

7   endorsed. Further, the law to cite in support of the current status of this case simply includes the

8   Federal Rules of Civil Procedure.

9   **VII.  Debtor Standing Continues Until Trustee**

10  **Formal Administration or Abandonment**

11      35.    Defendant fundamentally misunderstands when debtors lose standing to pursue

12  disclosed litigation. Simply disclosing claims does not immediately eliminate debtor standing - the

13  trustee must take affirmative action.  Upon disclosure, trustees have a duty under 11 U.S.C. §

14  704(a)(1) to investigate estate assets.

15      36.    This includes evaluating disclosed litigation for potential value to the estate. After

16  investigation, trustees must either: formally administer the claim (requiring court approval and

17  specialized counsel employment under 11 U.S.C. § 327), or formally abandon the claim under 11

18  U.S.C. § 554. Abandonment in a bankruptcy proceeding occurs: (1) if, on request by the trustee and

19  after notice and hearing, the court finds that the property is "burdensome" or of "inconsequential

20  value and benefit to the estate"; or (2) automatically when the bankruptcy case is closed. 11 U.S.C.

21  § 554(b)-(c); *Barletta v. Tedeschi,* 1990 WL 194478 (N.D.N.Y. Dec. 3, 1990).

22      37.    Despite abruptly converting this case to "asset" status over one month ago, Trustee

23  DeGiacomo has not provided any explanation for that action or taken any formal action regarding

24  the known, disclosed litigation. He's filed no employment motion for specialized retaliation

25  counsel under 11 U.S.C. § 327; no court approval to control the litigation under Fed. R. Bankr. P.

26  6004; no notice of appearance in this federal litigation; no formal abandonment notice under Fed.

27  R. Bankr. P. 6007. The trustee's informal statement to Defendant cannot substitute for required

28  bankruptcy procedures. Fed. R. Bankr. P. 6007 requires formal notice and hearing procedures for

abandonment, and trustees must follow specific protocols to administer estate assets.

## VIII.  Misrepresentation of the Role of Exemptions in Bankruptcy Law

38.    There are formal procedures under the Federal Rules of Bankruptcy Procedure for trustee substitution in pending cases (Rule 2012, 2015) and intervention. The trustee must typically seek court approval for significant litigation decisions, especially settlements above certain thresholds. Before seeking intervention/substitution, the trustee will evaluate whether there's any meaningful recovery for the estate after exemptions. If the debtor properly claimed and can cover the entire potential recovery with valid exemptions, there may be no economic incentive for the trustee to get involved.

39.    Under Rule 4003(b), parties have 30 days after the 341 meeting (or amendment of schedules) to object to exemptions. If no timely objection is filed, the exemptions are generally deemed allowed under § 522(l). The trustee might still want to monitor or even intervene in cases involving claimed exempt assets because the actual recovery might exceed what was exempted. The cost-benefit analysis usually drives the decision. Defendant's Motion to Stay argues that until there is "resolution" of Plaintiff's exemptions (i.e., "back pay, front pay, and personal injury damages"), that Plaintiff cannot manage the day-to-day litigation in long-running lawsuits if those lawsuits contain damages reflected in the exemption form. Further, Defendant's ETA for when this court should release a stay is based on that exemption resolution process. There's no legal or factual basis for Defendant's assertion.

40.    The exemption process is administrative in nature (determining what property ultimately belongs to whom) rather than a litigation management mechanism. Exemptions become operationally significant upon actual recovery through settlement or judgment, when the court must determine what portion (if any) of the proceeds exceeds exempted amounts and belongs to the estate. Until that point of concrete recovery, claimed exemptions support continued debtor control over litigation, and the mere fact that exemptions remain technically unresolved provides no basis for litigation stays or automatic trustee substitution, as the underlying exemption right exists independent of the administrative approval timeline.

41.     Further, Defendant's Emergency Motion to Stay shows that Defendant studied the Plaintiff's bankruptcy filings and schedules in detail and have now used her legally required disclosures in  a separate matter as some sort of basis for their motion that accuses Plaintiff of misconduct, attempts to claim she is not longer party to her own lawsuit. While Apple also claims a non-party who is not even authorized to be involved or noticed in this court is now the Plaintiff in this case and will apparently communicate with the court through emails with Apple.

42.     Among other issues, Apple's conduct here is intimidating and discriminatory, and will deter other debtors from making legally required disclosures due to this overt retaliation and harassment, which would increase bankruptcy fraud. Apple's conduct is also unlawful discrimination under 11 U.S. Code § 525(a)-(b) ("No private employer may… discriminate with respect to employment against, an individual who is or has been a debtor… solely because such debtor or bankrupt is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act.")

## IX.  Investigation Is Not Administration - Debtor Standing Continues During Investigation Period

43.     Defendant argues that any trustee interest in disclosed claims immediately eliminates debtor standing. This is legally incorrect and would create an impossible administrative gap. Section 704(a)(1) requires trustees to investigate potential estate assets. This investigation period does not constitute "administration" under Section 554. If mere investigation eliminated debtor standing, disclosed claims would exist in legal limbo - with neither trustee nor debtor able to act. The trustee's statements about wanting to "talk more" about claims and scheduling additional meetings constitute investigation, not administration. Courts require formal procedures before trustees can control disclosed litigation.

44.     Even if the trustee intended to administer this litigation, his current actions violate fundamental bankruptcy procedures and civil procedure. He currently has no court approved specialized counsel, as retaliation litigation requires employment of specialized employment counsel under 11 U.S.C. § 327. He has no court authorization as complex litigation administration

1  requires court approval under Fed. R. Bankr. P. 6004. He also apparently engaged in improper

2  coordination evidenced by Trustee's agreement with this adverse creditor and which violates notice

3  requirements under Fed. R. Bankr. P. 2002. Aside from other factors, these procedural violations

4  cannot create valid trustee administration that divests debtor standing.

5  **X.  PLAINTIFF'S "ABANDONMENT EXPECTATION" WAS**
6  **REASONABLE, NOT MISCONDUCT**

7       45.     Defendant characterizes Plaintiff's statement about expected abandonment as

8  misrepresentation. This argument demonstrates ignorance of standard bankruptcy practice.

9  Trustees routinely abandon assets when "after deducting the costs of sale, the trustee's

10 commission, any amount due a creditor with a lien against the property, and any exemption owed

11 to [the Debtor], there is nothing or little left to distribute to creditors."[4]

12      46.     A $30 million retaliation lawsuit, nested within a larger RICO lawsuit, against a team

13 of Rambo defense litigators, presents exactly this scenario: requires specialized employment

14 counsel (expensive); complex federal litigation with discovery and appeals (time-consuming);

15 uncertain outcome against sophisticated corporate defendant with Big Law Partners; and the case

16 was initially "no asset" with disputed claims from the same defendant. Expecting abandonment of

17 complex, expensive-to-prosecute litigation in a no-asset case is standard practice, not misconduct.

18      47.     Further, Defendant is both the litigation adversary and a creditor with disputed

19 claims. This creates obvious conflicts of interest that support abandonment expectations. The

20 Trustee cannot simultaneously represent estate interests against a creditor while that creditor

21 influences estate administration, settling with a creditor-defendant creates complex priority and

22 distribution issues, and fighting Defendant while they claim competing creditor status makes

23 litigation economically questionable. Plaintiff's abandonment expectation was an admittedly

24 speculative opinion based on sound legal and practical reasoning, not deception.

25 **XI.  DEFENDANT'S MOTION SEEKS TO WEAPONIZE**
26 **BANKRUPTCY PROCEDURES**

27 _____

28 [4] NOLO, When Will the Trustee Abandon Property in Chapter 7 Bankruptcy?, https://www.nolo.com/legal-encyclopedia/trustee-abandon-property-chapter-7-bankruptcy.html

48.    Defendant's argument reveals their true motive: using bankruptcy filing to escape adverse litigation rather than defending on the merits. When facing summary judgment with full discovery, now Defendant suddenly claims bankruptcy filing eliminates Plaintiff's standing. This is classic forum shopping to escape unfavorable litigation posture.

49.    Defendant also sent Orrick counsel Ryan Booms (noticed in this proceeding) to Plaintiff's 11 U.S. Code § 341 "Meeting of Creditors,"[5] which Plaintiff identified as an attempt to intimidate and harass her, and accordingly immediately reported it to the Trustee as such, and also complained to Defendant's counsel. Defendant has now proceeded, per Booms sworn declaration at Dkt. 247-1, to admit that Apple and its counsel at Orrick were spying on Plaintiff at that 11 U.S. Code § 341 "Meeting of the Creditors," looking for her to make statements that Defendant could use against her in this proceeding. Defendant further claims that the Trustee's standard comment that he and the Plaintiff would talk about her legal claims further after the meeting, somehow shows that the Plaintiff perjured herself and misled the federal court about her bankruptcy (she did not and the allegation is facially absurd).

50.    Further, again, Defendant's "misconduct" allegations are legally baseless because they confuse disclosed and undisclosed claims (citing inapplicable precedent); misunderstand trustee investigation vs. administration (ignoring required procedures); ignore debtor standing during investigation periods creating impossible legal gaps; characterize reasonable expectations as lies (misapplying standard bankruptcy practice); and abuse bankruptcy procedures to escape adverse litigation.

51.    This Court should reject Defendant's misconduct allegations as frivolous and deny their motion accordingly. Defendant further claims that their baseless allegations are now a justification for staying this entire case, which is one of, or the, primary known asset in the Estate. This scheme is in itself probably evidence of multiple chargeable criminal acts by the Defendant.

# NO EMERGENCY EXISTS

---

[5] U.S. Department of Justice, U.S. Trustee Program, *Section 341 Meeting of Creditors,* https://www.justice.gov/ust/moc

1  ## XII.  Defendant Forum Shops to Avoid Discovery Judge
2  ## Westmore

3   52.   Defendant's real emergency is facing summary judgment with full discovery. Rather
4  than raising discovery objections with the discovery judge per standard procedure, or admitting
5  they cannot survive summary judgement, Defendant instead seeks emergency relief in hopes of
6  more favorable forum. This Court should reject Defendant's dilatory tactics and require Defendant
7  to follow standard discovery objection procedures before considering stays. There is no emergency
8  here - only Defendant's preference for gamesmanship and procedural shortcuts over defending this
9  litigation on its merits. *Perrong v. DVD II Group, LLC,* 2023 WL 3229934 (E.D. PA. May 3, 2023).

10   53.   This Court can cure Defendant's procedural violations immediately by ordering that
11  Defendant must meet and confer on any discovery disputes per Local Rules; discovery objections
12  must be raised with discovery judge per standard procedure; if Trustee seeks litigation control, he
13  must file proper intervention/substitution motions per Fed. R. Civ. P. 24 and 25; and all parties,
14  and third-parties seeking to intervene, must comply with the federal and local rules. Notably,
15  Trustee DeGiacomo is not even a party to this litigation and would not receive service of any order
16  this Court issues. However, given Defendant's improper and ex parte coordination with Trustee,
17  Defendant would presumably provide him with any favorable orders so they could 'work together'
18  on compliance - the same improper coordination that created this procedural mess and risks to
19  destroy the Plaintiff's estate.

20   54.   Defendant's motion to stay should also be viewed in the context of the suspicious
21  timing surrounding its filing. On August 15, 2025 (3.5 weeks after Plaintiff's bankruptcy filing and
22  during the period Defendant now claims Plaintiff had no standing to participate in litigation),
23  Defendant sent Plaintiff discovery documents via email and treating Plaintiff as a full party with
24  discovery rights. These documents included devastating evidence that contradicts Defendant's key
25  defenses in this litigation, and reveals a pattern of false statements to this Court.

26   55.   The Gobbler Informed Consent Form shows Defendant's supposed justification for
27  terminating Plaintiff's employment in 2021, based on allegations of misconduct in 2021, referenced
28  a consent form that was limited to a 20-minute user study in 2017 and does not contain Plaintiff's

1  signature on the document (Exhibit B).

2       56.     Additionally, Defendant produced a business conduct investigation report showing

3  that as of July 23, 2021, the Plaintiff was formally under investigation by Defendant for her

4  workplace safety complaints and disclosures made to the New York Times. This contradicts

5  Defendant's representations that the suspension and termination was based solely on late August

6  2021 conduct regarding Gobbler and three-dimensional ear scans (Exhibit C).

7       57.     Defendant's motion is not a legitimate procedural concern but rather a transparent

8  attempt to halt litigation immediately after producing evidence that exposes years of litigation

9  misconduct. As detailed in Plaintiff's Motion for leave to file Sanctions, the recently produced

10  documents reveal that Defendant made "multiple knowing false statements in its prior Motions to

11  Dismiss and Oppositions in this court" and had "filed prior discovery responses affirmatively stating

12  it did not have these documents" when they clearly possessed them throughout the litigation.

13  Plaintiff's Aug. 22 2025 Motion for Leave to File Sanctions at Dkt. 245).

14       58.     Defendant cannot credibly argue Plaintiff lacked standing to participate in discovery

15  when Defendant's own conduct (actively producing discovery documents to Plaintiff during the

16  contested time period) directly contradicts this position.  Further, Defendant knows it cannot

17  survive summary judgement, has no evidence to support its defense, and the existing evidence

18  overwhelmingly supports the Plaintiff's claims.

19       59.     In the July 29 2025 Joint Casement Management Status Report, Plaintiff wrote

20  "Plaintiff intends to file a motion for summary judgment" and "Plaintiff feels strongly that

21  Defendant needs a 'reality check' about the actual evidence." (Dkt. 239 at 5 and 11). Defendant

22  wrote "Defendant intends to file a motion for summary judgment under Rule 56 for resolution of

23  this case" but also that "Defendant believes it is premature to expedite the presentation of

24  evidence." (Dkt. 239 at 5 and 12). Defendant said nothing about Plaintiff not having standing to

25  litigate, but Defendant did note "the Parties are currently negotiating an ESI order" and

26  "discovery should proceed." (Dkt. 239 at 8-9).

27       60.     During the August 5 2025 hearing, Apple again did not object to Plaintiff continuing

28  to litigate the case. When the court asked if the Parties are prepared for Summary Judgement

1    Plaintiff noted "I feel there is overwhelming documentary evidence between both things that would

2    be judicially noticed as well as already admissible evidence that, yes, Your Honor, I do feel confident

3    that I could make my case already on the retaliation and labor violations." (8/5 Transcript page 8).

4         61.    The court said "Okay" and then turned to the Defendant. Defendant's counsel

5    presented their position to which the court noted "You think… that there are no genuine disputes

6    of material fact in that regard?" and "but if they're conflicting discretions as to the causal reasons,

7    the motivation, one legitimate, not legitimate. Do you think that's still something that's summary

8    judgment-able?" (8/5 Transcript page 8-9).

9         62.    During the hearing the Defendant responded to the idea of a settlement conference

10   or discussing possible settlement as "we don't think that's productive." (8/5 Transcript page 8-5).

11   The Civil Minutes noted "Defendants noted that Early Neutral Evaluation will unlikely resolve the

12   issues based on the last settlement conference" and "both parties indicated an intent to file Motion

13   for Summary Judgment." (Dkt. 242).

14        63.    If Defendant has no interest in discussing a settlement, and instead only intends to

15   refuse to meaningfully participate in discovery for a prolonged period of time, then there's no

16   justification to invest taxpayer money into the Estate taking over this litigation and Apple certainly

17   knows that – thus their offer to "stay" in support of the estate is frivolous.  The timing further

18   reveals Defendant's true motive: avoiding accountability for litigation misconduct and the

19   substantive implications of their possession and concealment of evidence that destroys their

20   defense, and their failure and refusal to provide any basic facts in discovery related to that defense.

## XIII.   DEFENDANT INTENDS TO OBTAIN A COURT ORDER BASED ON MISSTATEMENT OF LAW AND ITS OWN MISCONDUCT IN ORDER TO BLOCK AN EPA CITIZEN SUIT

24        64.    On June 30-July 1, 2025, Plaintiff provided complete sixty-day notice of intent to file

25   an EPA Citizen Suit to U.S. EPA, U.S. DOJ, and defendants Apple, City of Santa Clara, and the

26   property owner of 3250 Scott Blvd. (Dkt. 226). The sixty-day notice period required under 33

27   U.S.C. § 1365(b)(1)(A) is a mandatory statutory prerequisite and integral part of the citizen suit

28   process. Once this notice period commenced, the citizen suit litigation was effectively "pending"

prior to the bankruptcy filing. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (notice requirements are "mandatory conditions precedent to commencing suit"). The U.S. DOJ has not yet commenced any civil or criminal enforcement action despite receiving proper notice. Under 33 U.S.C. § 1365(b)(1)(B), citizen suits are barred only when "the Administrator or State has commenced and is diligently prosecuting" enforcement action—which has not occurred here. The Plaintiff has made it known she plans to sue on Sept. 2 2025 in the U.S. District Court in San Jose (nearest to the factory) if U.S. DOJ does not file their own lawsuit by then.

65.     Environmental citizen suits are not property of the estate under 11 U.S.C. § 541 because they are held in trust for the public, not for the debtor's economic benefit. Property "that the debtor holds in trust for another is not property of the estate." 11 U.S.C. § 541(d); *Nelson Mullins Bankruptcy Basics*. Environmental citizen suits "act as a potent lever to ensure that corporations, individuals, and agencies follow the law" and protect "public interests, not debtor's economic interests." The debtor seeks only injunctive relief and civil penalties paid to the U.S. Treasury—creating no economic benefit to the estate.

66.     Apple has been served with this notice and knows this lawsuit is imminent, which is another reason it appears to have filed this meritless "Motion for a Stay," fishing for a court order prohibiting the Plaintiff from litigating in federal courts in hope it would prevent her from suing Apple under these federal environmental statutes over their illegal semiconductor fabrication plant that is actively poisoning a community. The pending EPA citizen suit should proceed as scheduled in federal court, as Congress intended when it created these essential environmental enforcement mechanisms. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000).

## XIV.    THIS IS NOT THE FIRST TIME DEFENDANT HAS TRIED TO REMOVE PLAINTIFF FROM HER LAWSUIT IN ORDER TO AVOID DISCOVERY OBLIGATIONS

67.     This is notably not the first time that Apple and their counsel have weaponized the very injuries they caused and continue to cause the Plaintiff, and then raise that harm to this court as supposed misconduct by the Plaintiff, in order to avoid their discovery obligations.  Only last month, on July 2 2025, at a conference the Defendant demanded with Judge Westmore and the

1    Plaintiff, Defendant made false allegations against the Plaintiff, tried to deprive her of basic due

2    process rights, and also attempted to request sanctions based on their meritless accusations.

3        68.    This conference also included Apple's counsel, Melinda Reichert, claiming she

4    stopped communicating with the Plaintiff and would not engage in discovery because she was

5    concerned Defendant and their counsel's conduct could cause the Plaintiff to kill herself.

6        69.    Thus, the Defendant essentially requested approval from this court to either not

7    have to communicate with Plaintiff at all, and/or have the Plaintiff promise to this court she will

8    not kill herself, and/or approval from the court to be able to harass the Plaintiff to the point that the

9    Plaintiff may commit suicide but without consequence for the Defendant.

10   **Ashley Gjovik (pro se):** "…They said that they wouldn't talk to me anymore going
     forward.. There was no way to meet and confer about anything. And they've said that they
11   won't even communicate with me." (7/2/25 Transcript, pg 15).

12   **Melinda Riechert (Apple):** "…She's talking about the alternative remedies that we
     requested." (7/2/25 Transcript, pg 15).

13   **Ashley Gjovik (pro se):** "…This is coming after I accused them of evidence spoliation.
     They claimed they don't have data that they absolutely would have if they had not deleted
14   it. I was asking for a deposition. They said they'd never talk to me again. They haven't
15   produced documents. This is a clever approach by Apple's counsel to try to get ahead of me
     raising very real discovery disputes…." (7/2/25 Transcript, pg 23-24).

16   **Ashley Gjovik (pro se): "**…the email they sent said they won't talk to me anymore. They
     won't even email…" (7/2/25 Transcript, pg 48).
17   **The Court:** "…Well, they have to talk to you…." (7/2/25 Transcript, pg 48).

18   **Melinda Riechert (Apple):** "Let me first explain that….That's why I felt nervous about
     communicating with her, because I don't want to be responsible for her committing suicide
19   and triggering her PTSD when she's unmedicated because she can't afford her medication.
20   So that's the reason that we stopped writing to her. And this is in my declaration…" (7/2/25
     Transcript, pg 48-49).

21   **Ashley Gjovik (pro se):** "…You did this after I requested deposition of the corporation.
     This is when I requested a 30(b)(6) deposition and accused you of evidence spoliation.
22   Then all of a sudden you decided you weren't going to talk to me anymore."(7/2/25
23   Transcript, pg 50).

24   **Melinda Riechert (Apple):** "I'm not going to be responsible for having you commit suicide
     or triggering your PTSD. If my emails have that effect on you, then I don't want to trigger
25   you. I have no desire to cause you any harm." (7/2/25 Transcript, pg 50).

26   **Ashley Gjovik (pro se):** "That's not true. Then, like, five days later you accused me of
     perjury in your amended answer." (7/2/25 Transcript, pg 50).

27   **Melinda Riechert (Apple):** "So what we write in pleadings is protected. I'm just talking
     about when I sent you emails that I --." (7/2/25 Transcript, pg 50-51).

28   **Ashley Gjovik (pro se):** "Anyway…I think it would be good if we just maybe closed

everything that happened prior, start fresh. We can use this new procedure, see how it works. I'm happy to work with them to schedule some of the basic stuff…" (7/2/25 Transcript, pg 50-51).

**The Court: "…**I think that there's no way to avoid talking to each other because you are in litigation. So that's just not -- Ms. Riechert, I'm sorry. I know that's stressful." (7/2/25 Transcript, pg 51).

**Melinda Riechert (Apple):** "It is. It's very stressful. it's very stressful for me, and I shouldn't have to go through that…" (7/2/25 Transcript, pg 51).

# DEFENDANT IDENTIFIES NEED FOR TRUSTEE CLARITY; THE COURT CAN PROVIDE IT

70.    Defendant correctly notes that Trustee involvement may be necessary for any settlement or judgment resolution. Rather than emergency stays, this Court should establish reasonable procedures to clarify trustee status while allowing discovery to proceed. A Case Management Order could include instructions like: "Any future settlement or judgment discussions during Plaintiff's open bankruptcy will include the Estate of Ashley Gjovik and will occur through proper bankruptcy procedures."

71.    In contrast, Defendant's motion creates an unworkable procedural situation. They seek relief based on communications from someone who is not a party to this litigation, cannot be served with this Court's orders, and has never appeared before this Court. The Court cannot manage litigation involving non-parties through informal email agreements.  There is no reason to halt two years of litigation progress while waiting for a trustee to follow basic federal court procedures he should have followed initially. Accordingly, Defendant's motion should be denied.

# PLAINTIFF'S REQUEST TO AMEND / PRESERVATION OF RIGHT TO ADD ADDITIONAL PREDICATE ACTS TO RICO CLAIMS

## XV.  SYSTEMATIC FALSE STATEMENTS AND EVIDENCE CONCEALMENT ACROSS MULTIPLE PROCEEDINGS

72.    Defendant's bankruptcy interference represents the culmination of a multi-year pattern of systematic abuse of legal proceedings designed to avoid accountability for unlawful conduct. Apple filed false justifications for Plaintiff's termination with federal agencies while

1    simultaneously concealing evidence that demonstrated the facial illegality of their actions. For
2    years, Apple dragged out these proceedings, while accusing the Plaintiff of gross misconduct and
3    concurrently withholding direct evidence that would exonerate the Plaintiff. In doing so, Defendant
4    financially destroyed the Plaintiff through prolonged litigation costs and denial of employment
5    opportunities, driving her into bankruptcy, then retaliating against her for that bankruptcy.

6        73.    This conduct spans multiple federal institutions and constitutes additional
7    violations of 18 U.S.C. § 1001 (false statements to federal agencies), 18 U.S.C. § 1341/1343
8    (mail/wire fraud schemes), and 18 U.S.C. § 1503 (obstruction of justice). See similar, overlapping,
9    and related RICO claims in Plaintiff's Complaints at Dkt. 1, 32, 47.

10       74.    Apple's recent production of long-concealed evidence (only after Plaintiff requested
11   sanctions for their discovery misconduct at Dkt. 240), reveals the deliberate nature of Apple's
12   concealment strategy. In partnership and conspiracy with Apple's external law firms, including
13   Orrick, the enterprise was able to successfully use false government filings and litigation
14   concealment to drive Plaintiff into bankruptcy. Now Apple, with and through its enterprise, seeks
15   to weaponize that very bankruptcy filing to permanently escape accountability and devalue any
16   potential bankruptcy estate value.

17       75.    This systematic approach demonstrates a coordinated enterprise designed to
18   manipulate multiple legal proceedings across different institutions, easily satisfying the "pattern of
19   racketeering activity" element essential to RICO liability. *United States v. Weisman*, 624 F.2d 1118,
20   1123–24 (2d Cir. 1980) (conspiracy to commit offense involving bankruptcy fraud is a RICO
21   predicate act) *cert. denied,* 449 U.S. 871 (1980). The bankruptcy interference cannot be viewed in
22   isolation but must also be understood as another component of Apple's multi-year scheme to avoid
23   consequences for their unlawful termination through systematic abuse of legal processes.

24       76.    This conduct demonstrates that Apple's use of external counsel created a
25   continuing criminal enterprise spanning multiple years and forums, from false agency filings,
26   through discovery concealment, to bankruptcy manipulation. The pattern shows Apple directing
27   their legal enterprise to engage in systematic interference with federal proceedings rather than
28   legitimate legal representation, warranting amendment to include these additional predicate acts

and enterprise theories. See *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005)(finding associated-in-fact enterprise could be formed between defendant corporation, law firms employed by it and expert witnesses retained by law firm, quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

## XVI.   ATTEMPTED INTERFERENCE WITH POSSIBLE FCA ENFORCEMENT ACTION

77.     Defendant's Emergency Motion for a Stay (Dkt. 247) repeatedly cites and quotes a document filed by Debtor in her bankruptcy case (25-11496, Dkt. 17, August 19 2025). That document also references and incorporates the complaint filed by Plaintiff in her student loan discharge case (Dkt. 238) (25-01104, Dkt. 1, July 29 2025).

78.     Notably the document Defendant references (25-11496, Dkt. 17) was not presented to this court, was not shared with Apple directly, and was clearly intentionally written by Plaintiff in a way that recognizes, and expressly noted, the need for secrecy around pending federal law enforcement activities. Apple's use of provocative citations and quotes from this sensitive document in their "Motion to Stay" further reveals that Apple unlawful and improper motives.

79.     In Apple's Motion, Apple selectively quotes from that filing and presents those quotes out of context and in a prejudicial framing to the Plaintiff. By doing so, Defendant forces Plaintiff, through threat of harm to her reputation (through false misconduct allegations) and the integrity of this litigation (by removing the actual plaintiff who understands the case, without another person filing notice, and leaving Apple the only party), to compromise sensitive federal enforcement matters by detailing them here in a case and docket closely watched by journalists and the public.

80.     Defendant's surveillance and strategic quotation serves no legitimate purpose. Apple cites matters from bankruptcy proceedings simply to provoke disclosure of information that Plaintiff previously warned required discretion regarding potential federal enforcement activities. The Trustee or DOJ have not disclosed to the Plaintiff what the asset is, but the theorized action seemed reasonable based on the facts and could justify the Trustee's immediately and inexplicable request for the court approve public funds for $565/hr accountants "to advise the Trustee

regarding the tax implications of asset recovery" and "to advise and assist the Trustee with respect to evaluating and objecting to proofs of claim submitted by federal and state taxing authorities" for the otherwise insolvent Plaintiff's previously "no asset" estate (25-11496, Dkt. 15).

81.  Apple's actions constitute deliberate interference with possible law enforcement proceedings. Apple seeks to force public revelation of enforcement theories that could compromise ongoing recovery of stolen funds, which may also provide the Plaintiff a qui tam 'relator' share, which would then bolster the Plaintiff's credibility and allow her to hire a law firm her represent her in this case, and thus would then harm Defendant's defense position in this litigation.

82.  The expected enforcement action is assumed by Plaintiff to not be against Apple, but instead against the Plaintiff's only other employer after Apple. This also gives Apple motive to sabotage any enforcement action against that entity because otherwise, a False Claims Act action with a potentially high-dollar relator payment to the Plaintiff, would severely harm Apple's remaining affirmative defenses in this litigation.

83.  Apple's conduct thus reveals systematic obstruction. They are monitoring bankruptcy proceedings of their litigation opponent, extracting information expressly noting federal enforcement sensitivity, then weaponizing that information to force damaging disclosures from a witness and victim of those criminal acts, through threats of harm to that witness and victim's reputation and financial interests, with a four day deadline.

84.  By attempting to compromise potential federal enforcement through forced disclosure (selectively quoting Plaintiff's bankruptcy filing in order to make her choose between appearing potentially unhinged and deceptive if she does not explain, or compromising sensitive enforcement matters), obtained by intimidation (forcing the Plaintiff to respond to the "Emergency Motion to Stay" which is full of accusations of misconduct by the Plaintiff and threatens to remove her from her own lawsuit), and based on information gathered during improper surveillance – Apple engages in exactly the type of systematic interference with legal proceedings that forms the basis of several of Plaintiff's existing RICO claims.

## XVII.  ADDITIONAL PREDICATE ACTS ARISING FROM CONCURRENT BANKRUPTCY PROCEEDINGS

85.     By seeking to halt the estate's assumed/known primary asset through false legal arguments immediately after producing damaging evidence, Defendant is directly interfering with estate administration for their own benefit as a disputed creditor. The coordination between surveillance at Plaintiff's 341 meeting, immediate emergency filings with false law, and forcing disclosure of potential FCA law enforcement matters shows sophisticated planning to use multiple pressure points simultaneously. Bankruptcy interference also affects the estate's ability to recover against a multi-billion dollar corporation, directly impacting creditor recovery and Plaintiff's financial rehabilitation.

86.     In the RICO context, Defendant's Motion to Stay isn't just procedural gamesmanship - it's evidence of the enterprise's continuing criminal activity. Defendant is using the same pattern (i.e., harassment and intimidation, false statements to courts and agencies, evidence manipulation and obstruction) that established some of the original RICO claims, just now also applied to bankruptcy proceedings and False Claims Act enforcement, in addition to the underlying employment case and environmental claims.

87.     Accordingly, Plaintiff also preserves her right to claims arising from Defendant's systematic interference with bankruptcy proceedings and obstruction of potential FCA enforcement action; acts which are chargeable violations of federal criminal statutes that serve as RICO predicate acts under 18 U.S.C. § 1961.

88.     **Witness Tampering in Violation of 18 U.S.C. § 1512**: Defendant sent litigation counsel Ryan Booms to attend Plaintiff's 341 Meeting of Creditors on August 21 2025 for the express purpose of surveillance and intelligence gathering. (Exhibit D). Defendant then used this surveillance to file sworn declarations in this federal court containing false and misleading claims about Plaintiff's statements and conduct during the bankruptcy proceeding. This conduct appears designed to intimidate Plaintiff's participation in statutory bankruptcy proceedings, obstruct litigation, and constitutes witness tampering under 18 U.S.C. § 1512, a RICO predicate act. *United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987).

89.     **Obstruction of Justice in Violation of 18 U.S.C. § 1503**: Defendant coordinated with the bankruptcy trustee and made material false statements in order to corruptly interfere with

the administration of the estate's assumed primary asset (this litigation) without bankruptcy court approval, notice to parties in interest, or compliance with bankruptcy procedures. Defendant's coordination was designed to circumvent this Court's jurisdiction and obstruct the orderly administration of bankruptcy proceedings. This interference with federal judicial proceedings constitutes obstruction of justice under 18 U.S.C. § 1503, a RICO predicate act. *United States v. Thomas,* 612 F.3d 1107, 1123-24 (9th Cir.2010); *United States v. Rasheed,* 663 F.2d 843, 851 (9th Cir.1981); *United States v. Aguilar,* 515 U.S. 593, 609-10 (1995).

90.    **False Statements to Federal Courts in Violation of 18 U.S.C. § 1503 and 18 U.S.C. § 152:** Defendant's emergency motion contains numerous materially false statements about bankruptcy law and procedures, including: misrepresenting when debtors lose standing in disclosed litigation; falsely claiming that properly disclosed litigation constitutes misconduct; and mischaracterizing standard bankruptcy procedures as evidence of perjury. These false statements were made to gain litigation advantage and interfere with both this Court's and the bankruptcy court's proceedings, constituting obstruction of justice under 18 U.S.C. § 1503 and bankruptcy fraud under 18 U.S.C. § 152. *In re Garlock Sealing Techs.,* LLC, 504 B.R. 71 (Bankr. W.D.N.C. 2014)(a RICO case with the court remarking on a "startling pattern of misrepresentation" in a law firm's discovery responses and finding the litigation activity not protected). See also, *United States v. Lester*, 749 F.2d 1288 (9th Cir. 1984).

91.    Defendant's August 15 2025 discovery production also shows Defendant intentionally and knowingly made false statements to this court and to the U.S. government for multiple years about the actual facts underlying its termination of Plaintiff's employment. *Williams v. Hall,* 683 F. Supp. 639, 642 (E.D. Ky. 1988); *Callan v. State Chemical Mfg. Co.,* 584 F. Supp. 619, 622 (E.D. Penn. 1984). Because the termination is part of this lawsuit's RICO claims, and counsel was involved in the operation and management of the enterprise, and the acts impacted Plaintiff's property and business interests, there is no litigation privilege for Defendant or their external counsel as part of the Enterprise.

92.    **Hobbs Act Violations (18 U.S. Code § 1951):** When the Defendant threatened the Plaintiff with theft of her property (this California lawsuit, a potential qui tam relator fee in

1  Massachusetts, her reputation) in order to compel the Plaintiff to disclose sensitive details about a
2  potential law enforcement action and to make public statements against her Estate trustee, the
3  Defendant attempted and conspired to obstruct, delay, and affect commerce through extortion in
4  violation of the Hobbs Act. The Defendant and counsel in California, Oregon, Washington D.C.
5  took these acts in furtherance of their unlawful goal to take property from the Plaintiff and reduce
6  the value of the Estate under threat of economic harm to the Plaintiff. *United States v. Koziol,* 993
7  F.3d 1160, 1170 (9th Cir. 2021)("[T]hreats of sham litigation, which are made to obtain property to
8  which the defendant knows he has no lawful claim, are 'wrongful' under the Hobbs Act.").

9      93.     **Wire/Mail Fraud in Violation of 18 U.S.C. § 1343**: Defendant materially false
10  statements to the Trustee about Defendant's intention to file this "Motion to Stay," claiming it was
11  something to protect the Estate but instead intending to sabotage this litigation and thus also the
12  Estate, in order to induce the Trustee's consent, was a chargeable act of wire fraud. Further,
13  Defendant's false statements to federal courts in this "Motion to Stay" constitutes a scheme to
14  defraud designed to interfere with judicial proceedings and gain unfair litigation advantage. These
15  communications, transmitted by wire to the Trustee and the federal courts, constitute wire fraud
16  under 18 U.S.C. § 1343 and are RICO predicate acts. The commission of mail/wire fraud with
17  intent to reduce the value of a bankruptcy estate is an established RICO predicate act. *Handeen v.
18  Lemaire*, 112 F.3d 1339 (8th Cir. 1997).

19      94.     **Pattern of Racketeering Activity**: The conduct described above, combined with
20  the underlying RICO violations alleged in this action, further establishes a pattern of racketeering
21  activity spanning multiple years and involving systematic interference with federal proceedings,
22  witness intimidation, and false statements to federal courts. This pattern demonstrates Defendant's
23  ongoing criminal enterprise designed to avoid accountability through procedural manipulation and
24  interference with federal judicial proceedings.

25 **XVIII.  Reservation of Rights / Request for Reconsideration
and/or Leave to Amend**

26

27      95.     Plaintiff requests leave from the court to file a Motion to Amend to re-add her RICO
28  claims, and/or asks the court to reconsider her January 31 2025 "Motion to Amend" filed at Dkt.

155, along with the new issues noted, either bifurcating and allowing a RICO case to proceed concurrently, or combining with the retaliation case at least related to the predicate acts directly injuring the Plaintiff related to her employment with, whistleblowing against, participation in federal and state proceedings about, and witnessing and informing to the government about the Defendant and other wrongdoers.

96.    Plaintiff asks for the court's similar consideration of Amendment for at least her Bane Civil Rights Act, Ralph Civil Rights Act, Dodd Frank whistleblower, SOX whistleblower, IIED/NIED, Toxic Torts, Breach of Contract and Breach of Good Faith/Fair Dealing, and Cal. Bus. & Prof. Code § 17200 claims (See, Complaint at Dkt. 1, SAC at Dkt. 32, TAC at Dkt. 47, 4AC at Dkt. 76, and 5AC at Dkt. 142), at least where those claims are similarly related to the pending retaliation and labor violation claims. Plaintiff does not waive any rights to later appeal these or other dismissals.

97.    Plaintiff preserves the right to seek leave to amend this complaint to include these additional RICO predicate acts and related claims arising from Defendant's bankruptcy interference. Plaintiff requests amendment and notes these potential violations to prevent any waiver argument and to establish the full scope of Defendant's misconduct relevant to this Court's analysis of their current motion. Plaintiff also requests the court's reconsideration of her January 31 2025 "Motion to Disqualify" Apple's law firm of Orrick, Herrington & Sutcliffe from this lawsuit as they have admitted they were retained weeks prior to the termination (Dkt. 156).

# Concurrently Filed Motions with the Bankruptcy Court

98.    Plaintiff will concurrently filed a Motion for Order to Show Cause and Sanctions in bankruptcy court (*In re Ashley M. Gjovik*, 25-11496, D. Mass.), which details Apple's systematic interference with estate administration and abuse of bankruptcy procedures.

99.     This filing reveals Apple's fundamental conflict of interest: they simultaneously serve as defendant in the estate's primary asset (this $30 million retaliation lawsuit) and as a disputed creditor through Apple Card debt. Notably, in 2024 the Consumer Financial Protection Bureau fined both Apple and Goldman Sachs $89 million primarily for launching the Apple Card

before legal requirements were met - yet Apple had enrolled Plaintiff months before even that premature launch.

100.    On July 21 2025, Plaintiff mentioned this disputed debt and her bankruptcy filing on Twitter saying "Apple pressured some employees to enroll starting in April 2019 (four months before it 'launched') and statements say like "beta" / "seed design" but it's a real credit card. Did CFPB ever learn about this?"[6] Goldman Sachs Bank immediately responded despite not being tagged and asked to speak with Plaintiff on the phone.[7]

101.    Plaintiff responded "I didn't even tag you, Goldman, where'd you even come from?" and responded that the Plaintiff thought that Goldman Sachs would "have to go through Apple's lawyers" noting "[she] asked [Apple] to talk to [Goldman Sachs] about this debt like 20x times and [Apple] refused... Apple's main lawyers on the retaliation/labor stuff where they owe [her] the money [she] needs to pay off the card are Orrick for civil" and the Plaintiff is "not supposed to talk to [Orrick's] 'client' directly or [Orrick] sends [her] angry emails about it."[8]

102.    Goldman Sachs Bank would logically have contacted the exact same Orrick attorneys representing Apple in this litigation about this disputed claim, and about Apple's "beta test" which could trigger more CFPB enforcement. Now, about one month later, Orrick and Apple are engaging in the misconduct described herein that directly harms the same bankruptcy estate.

103.    This implies coordinated conduct by the same Apple legal team across multiple contexts. In just the bankruptcy proceeding, Apple's dual role creates perverse incentives to sabotage estate recovery while defending their own disputed claims and the underlying misconduct, directly contrary to other creditors' interests and explaining at least one motive for their systematic interference with both the bankruptcy proceeding and this federal litigation.

104.    Plaintiff has concurrently filed a Motion for Protective Order and to Compel Trustee Action in bankruptcy court (*In re Ashley M. Gjovik,* 25-11496, D. Mass.), seeking emergency relief to prevent further waste of estate assets caused by the trustee's procedural violations. This motion details how Trustee Mark DeGiacomo, while admittedly on vacation, agreed to Apple's

---

[6] Twitter/X, Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947176283760189657
[7] Twitter/X, Goldman Sachs Bank, July 21 2025, https://x.com/gsbanksupport/status/1947321165430555090
[8] Twitter/X, Ashley Gjovik, July 21 2025, https://x.com/ashleygjovik/status/1947324385058005245

litigation stay request within 27 minutes of receiving their email - despite having comprehensive knowledge of Apple's conflicts with estate interests, including the disputed Apple Card debt that could constitute an additional estate asset, and no background on the status of this litigation.

105.    When Plaintiff notified the Trustee that Apple had weaponized his informal email agreement and used it as a basis to file extensive false allegations and sought to "tank this entire litigation," the Trustee dismissed her concerns with "Enough... I will not be responding to any further emails until [Sept. 8]," refusing to address the urgent estate business his unauthorized actions had created.  This is the same person Apple claims should now be the only party in this lawsuit – someone who has not filed a Notice of Appearance, does not appear to be admitted to practice in this court, who has no background on this litigation, and who after agreeing to stay this entire case without even consulting the Plaintiff, was on notice that Apple's motion severely damaged the estate, and then declared that he will not even respond to emails for two weeks.  This Bankruptcy court will now have a motion in front of it to review and rule on the Trustee's unauthorized agreements and subsequent refusal to take accountability for their implementation.

# CONCLUSION

106.    In conclusion, the Plaintiff strongly objects to Defendant's Emergency Motion to Stay and believes it is actually direct evidence of criminal conduct so egregious it would and does qualify as additional chargeable Predicate Acts in this RICO lawsuit, and she would like to amend accordingly.

107.    Plaintiff also urges the court to consider that the effort and resources Apple and its counsel invested into these meritless motions, and that it likely exceeds the total amount of debt that the Plaintiff owes in her Chapter 7 bankruptcy.

108.    At the very least, the Defendant's Motion should be denied. Plaintiff also requests consideration of sanctions, reconsideration of her Motion to Amend and Motion to Disqualify, and also potential referral of this case to the U.S. Department of Justice for a criminal investigation and/or other relevant investigative bodies.

1

2

3

4

_____

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*

Filed: August 27 2025

**Email**: legal@ashleygjovik.com
**Physical Address**: Boston, Massachusetts
**Mailing Address**: 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Phone**: (408) 883-4428

# CERTIFICATE OF SERVICE

A copy of this motion and exhibits was efiled through the CAND electronic filing system, and will be served via email to Trustee Mark DeGiacomo on August 28 2025, and was also filed as an exhibit to the bankruptcy court docket for case *In re Ashley Marie Gjovik,* 25-11496, United States Bankruptcy Court, District of Massachusetts on August 28 2025.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibits

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

# RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

| | |
|---|---|
| From | Perry, Jessica R.  <jperry@orrick.com> |
| To | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com> |
| CC | Mark G. DeGiacomo<mdegiacomo@harrisbeachmurtha.com>, Ashley Gjovik<ashleymgjovik@protonmail.com>, Riechert, Melinda<mriechert@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Monday, August 25th, 2025 at 9:20 PM |

Ashley,

We object to your attempt to distort the record by intersplicing emails here that are not sequential in a chain.

We also disagree with your characterization and misrepresentations of our prior communications and our filing today.

Regards,

Jessica

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 4:47 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

8/28/25, 2:53 AM
Case 3:23-cv-04597-EMC    Document 350    Filed 08/27/25    Page 39 of 70
Filed 08/27/25 · hjovik@proton.mail.com · Proton Mail

**[EXTERNAL]**

(re-adding separate 7:10 and 7:36 PM emails to the chain below)

Counselors,

It appears that I sent my last email as you already filed nine separate documents (55 pages) to the docket at 7:07-7:10 PM ET, which despite what you said in your earlier email, seem to focus primarily around making false allegations against me of discovery misconduct, including and especially around our ongoing discovery disputes where I had been trying to meet with you in good faith prior to having to escalate the matters to the court -- and our most recent communications, as noted, simply stated you wouldn't engage with me further. In fact, in your "motions to stay" you even highlight my pending request for leave to file a motion for sanctions, as misconduct by me that has harmed Apple. That's not what you said these motions were about, and even if you did, you know that's improper.

You now claim that my FRCP discovery requests, my proper and good faith objections, my attempts to meet/confer, and even my requests to partner with Apple to write joint letters were done in bad faith, were misconduct, and were somehow abusive and prejudicial to Apple. This appears to be your primary justification for these motions to stay, and in addition to your prior misinterpretation of bankruptcy law, this also has no basis for these motions. However, what you've now done is absolutely outrageous and completely unacceptable, and I'm speechless at how to even respond to this conduct.

Instead of filing a motion to stay and administrative motion asking to make it an emergency stay, you have preempted my ability to properly escalate discovery disputes to our discovery judge. Instead you raised dozens of issues directly to the U.S. Judge while making false statements against me, baselessly accusing me of misconduct, forcing me on the defensive, and further, and most egregious and completely out of line, is you are forcing me to respond to ALL OF THIS by August 29 2025, knowing this week I'm working on my EPA Citizen Complaint to be filed on 9/2. You know, now I have to spend all week responding to you essentially filing what consists of probably 20 separate motions at once, with a four day deadline for my response. This is honestly one of the craziest and most inappropriate things you've done in this litigation.

I honestly don't even know how I could possibly respond to all of those allegations against me, all of the misstatements, and also put forward my own escalations as I had previously planned to, AND ALSO respond to the Motion to Stay/Request for Emergency Motion that you had originally said this was about, and which I already said I did not have time to oppose under the schedule you proposed, and asked you repeatedly to meet/confer with me in good faith. Instead you've filed what's essentially a nuclear warhead attack on this litigation and on me, including extensive smears and false allegations.

I'm still sorting through the pages and pages you just filed, but I'll also note is appears you are justifying Ryan Booms presence at my 341 meeting as gathering intelligence you then plan to use as part of the basis for your emergency motion to stay, that is also concurrently based on your false allegations of misconduct by me, and which basically, based on what you alleged, asks the court to sanction me and dismiss the entire lawsuit, which is just like mindbogglingly evil and inappropriate.

There's literally no way I can even possible begin to properly oppose the hundreds of things you just queued up in these motions, that have a material impact on my litigation and reputation, and put me at risk for sanctions from the court, in literally four days. Again, this is a blitzkrieg attack that could tank this entire litigation, without even telling me or the Trustee what you actually had planned, and doing this when you know my Trustee is on vacation and I cannot even consult with him about how to deal with this -- since what you've done isn't to ask for stay -- what you've done is attempted to get the entire case dismissed based on false allegations of misconduct by me. This would be outrageous for me to have to respond to under a normal timeline, let alone four days.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](https://...) secure email.

On Monday, August 25th, 2025 at 7:36 PM, Perry, Jessica R. <jperry@orrick.com> wrote:

> Ashley,
>
> You are incorrect. I emailed you back prior to you sending this email. Please stop trying to create a false record.
>
> Our motion is on file.
>
> Thanks,
> Jessica

On Monday, August 25th, 2025 at 7:10 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Apple counsel,
>
> As it is now 7pm ET / 4pm PT, and I have received no response from you to any of my emails today, I write you again, to urge you to meet and confer with me about these motions prior to and instead of your prior stated plan to file your motions by end of day today under a unilateral declaration that I no longer have any authority or agency in my own lawsuit against you.
>
> I propose we schedule a Zoom video conference meet and confer for later this week to discuss your concerns (whatever they may be). Perhaps we can reach a compromise regarding any legitimate issues or concerns. I can make myself available to meet with you on a 30min-1hr video call this Thursday or Friday (8/28-8/29) anytime between 9am-3pm PT (12pm-5pm ET).

Please let me know. Let's please talk through whatever this is about in good faith.


-Ashley


—

**Ashley M. Gjøvik**

**BS, JD, PMP**


—

Ashley M. Gjøvik

BS, JD, PMP


Sent with Proton Mail secure email.


On Monday, August 25th, 2025 at 7:03 PM, Perry, Jessica R. <jperry@orrick.com> wrote:

> Ashley:
>
> We believe you are mistaken that this is still your lawsuit to manage and control. We cited in our initial email authority supporting our motion to stay.  *See In re Bronner*, 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992) (noting the rule that prepetition legal claims become "property of the estate as of the commencement of [a Chapter 7 bankruptcy] case"); *see also id*. at 647 (citing 11 U.S.C. § 541(a)(1)) ("A debtor's estate is comprised of all legal or equitable interests owned by the debtor

as of the commencement of the case. Title to estate property generally remains in the trustee unless the property is abandoned or intentionally re-vested.").

Other courts hold similarly and underscore that where a trustee has not abandoned prepetition legal claims, a plaintiff/debtor lacks standing to prosecute them. *See In re Meehan,* No. AP 13-01208-ES, 2014 WL 4801328, at *4 (B.A.P. 9th Cir. Sept. 29, 2014), *aff'd,* 659 F. App'x 437 (9th Cir. 2016) ("Only a trustee may pursue a cause of action belonging to the bankruptcy estate. The debtor can pursue such claims only if they are abandoned by the estate.") (citations omitted); *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) ("Because a Chapter 7 debtor forfeits his prepetition assets to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim unless the trustee abandons the asset, which then returns the claim to the possession and control of the debtor.") (citation omitted); *In re Harris*, 450 B.R. 324, 335 n. 46 (Bankr. D. Mass. 2011) (holding that where prepetition claims "have not been formally abandoned by the Trustee, … it remains the Trustee, and not the Debtor, who has standing to prosecute those claims") (citations omitted).

We will proceed to file our motion to stay, and are requesting a briefing schedule that permits time for opposition and reply briefs.

As to my emails to you regarding the meet and confer process related to your interrogatories, your characterization is inaccurate.

Regards,
Jessica

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, August 25, 2025 2:53 PM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** mdegiacomo@harrisbeachmurtha.com; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>;

Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>

**Subject:** Re: Motion for Stay in Gjovik v Apple in ND Cal in light of Chapter 7 bankruptcy proceedings

**[EXTERNAL]**

Apple counsel,

I'm checking in again and asking for your response to my request for information, as detailed and sent to you nearly five hours ago.

Mr. DeGiacomo is on vacation, and I am not scheduled to speak with him or anyone else at/with Office of the Trustee regarding my bankruptcy case until Sept. 8 2025 at the earliest. There has been not yet been any substantive discussion about this civil litigation in my bankruptcy case, and thus this threatened request for an emergency stay appears to be originating unilaterally from Apple.

Therefore, my requested information about the statements you made this morning and your threat to file these motions by EOD today regardless of my position, needs to be provided to me and would only come from Apple's counsel.

This is still my lawsuit, I am still managing it, and you need to make an attempt to meet/confer with me in good faith prior to filing motions like this. There is no rule, law, or policy that says once someone files bankruptcy that the DOJ Office of the Trustee would suddenly by default have to approve each and every motion that person files or any litigation decision that person makes -- other then matters related to settlements (which you said on the record on 8/5 that you do not want to discuss and see no point in any further conference).

You cannot just unilaterally declare that I'm no longer party to this lawsuit, or this is no longer my lawsuit, or that I cannot file or respond to motions in my own lawsuit without DOJ approval. That's absurd.

Thus far, I've heard nothing from you other than your three emails at midnight last night essentially saying you won't talk to me anymore going forward (again). The Court already told you that you can not say that and you have to participate in this proceeding, including at least some form of meet/confer. Then this morning you now claim this isn't even my lawsuit anymore -- which is inaccurate and bizarre.

It's already past 5PM my time and tomorrow is my birthday. I'd prefer to not have to deal with this matter late tonight or at all tomorrow. If we can instead please meet/confer this week about whatever your actual concerns are, perhaps we can sort out a compromise and avoid unnecessary motion practice.

To start, please respond to my earlier questions and my request for information.

Thank you.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, August 25th, 2025 at 12:57 PM, Ashley M. Gjovik (Legal Matters) <[legal@ashleygjovik.com](#)> wrote:

Hello,

I am unable to respond to you substantively at this time other than to object, because there's no disclosed legal basis for this request. As a preliminary matter, I seek information as to the basis for requesting a stay, and why that stay would be considered an emergency.

In my Bankruptcy case, the Trustee has not consulted me regarding any Trustee plans or interest in this *Gjovik v Apple* civil litigation, or told me there was any communication with Apple about this litigation, or about any of my other litigation with Apple. This is required under Rule 2015(a) and 11 U.S.C. § 704(a)(9) prior to intervening or otherwise disrupting a debtor's pending affairs -- unless some other federal statute preempts this request, but that has not been disclosed to me.

While the U.S. government controls my pecuniary legal claims during a Chapter 7 bankruptcy proceeding, this case also includes injunctive and declaratory relief, as well as punitive damages and statutory fines. I also have a right to information about estate administration as a "party in interest," and as of now, that has not been provided to me regarding this request. See, 11 U.S.C. § 704(a)(9).

Further, there are no approved employment applications for Trustee lawyers to manage this litigation generally, nor are there any pending applications for employment/labor attorneys who would know how to properly manage the litigation of the retaliation claims. See, Rule 2014 and 11 U.S.C. § 327(a).

In addition, while the DOJ abruptly and without explanation switched my bankruptcy case from "no asset" to "asset," as of today, no one has informed me what DOJ thinks that asset is (which is required by bankruptcy law). To my own actual knowledge, I have no vested assets and no funds that could pay creditors, and as such my bankruptcy would be a full discharge. Therefore, there's no apparent basis that could justify stopping litigation midway and investing government resources (and taxpayer dollars) into this long-running civil litigation without even consulting the Plaintiff/Debtor.

This civil litigation has been ongoing since September 2023, with the similar adjudications ongoing since August 2021, and counsel from Orrick retained to defend Apple from my retaliation claims starting in August 2021 (four years ago). The next civil case events are a deadline for a Joint Case Management Report on October 14 and a Status Conference on October 21. (Dkt. 242). Beyond that, I have a pending motion for leave to request sanctions against Apple, two notices of requests for depositions of Apple employees in September 2025 pending with Apple, and multiple discovery disputes awaiting Apple's response.

Most recently, I formally complained to Apple/Orrick about improper discovery misconduct that would be a new basis for sanctions and asked Orrick to file a joint letter to the court about it, and also complained about what appeared to be intimidation and harassment by their counsel at my 341 meeting on 8/21. Orrick responded late last night (on a Sunday) refusing to meet/confer on open issues or discuss further. As such, this request to stay, based on my own knowledge, thus appears to be Apple's attempt to obstruct my open requests and planned escalations.

The legal standard for granting a stay of litigation is clearly not met here, and no one has attempted to provide a proffered legal basis as to success on the merits, irreparable harm in the absence of relief, the balance of equities, or the public interest -- or even basic justification as to why it would be needed considering there are no major case events until an October 21 2025 status conference -- more than two months away. Similarly, a request could simply be filed to reschedule that conference instead of stay all litigation, if there was even a justification for that.

Even more untethered is any supposed basis to treat this request as an emergency motion for a stay, where supposedly irreparable harm would occur during the time needed to consider a response. Yet no one has offered any sort of basis for the request, the request appears to directly conflict with and violate bankruptcy rules and norms, and there's no case events or outcomes impacted by Trustee consideration in parallel with ongoing litigation. Thus the request instead appears to be Apple's counsel trying to avoid their discovery obligations and the consequences for their prior discovery misconduct in this case.

To both Apple and the Trustee, I request more information about what this request is about, why its being made, and what the justification is.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, August 25th, 2025 at 10:27 AM, Perry, Jessica R. <[jperry@orrick.com](mailto:jperry@orrick.com)> wrote:

> Mr. DeGiacomo and Ms. Gjovik:
>
> I write to advise that Apple intends to file a motion to stay today in N.D. Cal. Case No. 23-cv-04597 – a prepetition litigation brought by Ms. Gjovik, which is now property of her Chapter 7 bankruptcy estate (*see In re Bronner,* 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992)) – to allow the Trustee time to determine how to proceed in this action as the real party in interest.
>
> We will also be filing an administrative motion to have the motion to stay be heard on shortened time, and will request that the hearing on the motion to stay be held next Thursday, September 4, 2025 at 1:30 p.m. PT (with any opposition due by August 29 and any reply due by September 2).

Although we believe only the Trustee's agreement/stipulation to the motion to shorten time is necessary (given that the Chapter 7 bankruptcy estate, not Ms. Gjovik, is the lone party with standing at present to continue the case), we would appreciate hearing from each of you whether you will agree/stipulate to the administrative motion to shorten time.  We would also appreciate confirmation that the Trustee agrees that entry of a stay would be appropriate in this circumstance.

Thank you,

Jessica

**Jessica Perry**

Partner

Orrick
Silicon Valley 

T +1-650-614-7350
jperry@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

**USER STUDY INFORMED CONSENT FORM**

**Study Title: Social Hours Study**

| Research Leads: | Redacted |
|---|---|

This is a voluntary user study undertaken by Apple Inc. ("Apple"). **Your decision to participate in this study is completely voluntary and you may decline to participate or stop your participation at any time.** You are not required to participate in this study as a condition of your employment and will not be penalized if you choose not to participate or if you stop your participation.

**WHY IS THIS STUDY BEING DONE?**
The purpose of this study is to collect audio, video and photo images of faces.  The results of this study may be used to develop and improve technologies and algorithms that operate on images, video, depth data, and/or audio data in Apple products and services, such as algorithms and technologies for expression, focusing, white point, color, contrast, recognition and identification, image processing, communication, health research, and immersive multi-media.

**WHAT WILL HAPPEN IF I TAKE PART IN THIS RESEARCH STUDY?**
You will be given a Red device during the study session.  At the beginning of the study session you will be asked to sign into the Gobbler App using your apple email address then a 6 digit code will be assigned you.  As you interact with the device video recordings of your interactions will be logged on the device.  During the  session, you will be asked to do series of tasks while standing, sitting, and walking between various locations in the outdoor study environment.  At the end of the study session, you will be asked to review all captured data and **upload only selected data you would like to share with the study researchers**. Once your selected data is sent from the device, all the captured data will be deleted from device storage.

**WHERE WILL THIS STUDY TAKE PLACE?**
This study will take place in Mariani 3B, 20400 Mariani Ave., Cupertino, CA.

**HOW LONG WILL MY PARTICIPATION IN THIS STUDY TAKE?**
This study will last approximately 20 minutes.

**WHO CAN PARTICIPATE IN THIS STUDY?**

Before entering the study, you must meet all of the following criteria:
- You are a full-time Apple employee who is disclosed to Red and Reda
- You are between the ages of 18 and 79 years old.
- You are able to independently operate a handheld device.

You cannot participate in this study if any of the following apply:
- You have one of the following medical eye condition:
  - Porphyria (build-up of molecules in the eye that cause someone to be sensitive to light)
  - Retinitis pigmentosa (and derivates of this disease)
  - Stargardts
  - Cone Dystrophies
  - Pattern Dystrophies
  - Gyrate Atrophy
  - Oguchi disease
  - Goldman - Favre
  - Kearns - Sayre
  - Lebers congenital amaurosis
  - Choroidiremia
  - Alports
- You are currently taking photosensitizing medications or have any known photosensitizing medical conditions.
- You have recently had neck injury, or suffer from arthritis, neck stiffness, or any other condition that causes discomfort when rotating your head.

**WHAT DATA WILL BE COLLECTED?**  As part of this study, the information that may be collected from you may include the following (we call this "Study Data"):
- **Contact Information:** Name, Email Address
- **Photo/Video/Audio:**  Images and video recordings of your face
- **Sensitive Health Data:** Ocular and facial health conditions
- **Documented Study Data:** Birth year, Gender, Handedness, Ethnicity, Height

APL-GAELG_00002861

**HOW WILL MY INFORMATION BE KEPT CONFIDENTIAL?**
Your Contact Information will be held confidentially by the Study Research Team and access limited to those on the Study Team who need access in order to administer and conduct the Study.  Your remaining Study Data will be separated from your Contact Information and assigned a Key Code (we call this "KeyCoded Study Data").  Your KeyCoded Study Data will be maintained either in a central study database or by the Study Research Team directly. For more information on how Study Data will be kept secure and confidential, please contact the Research Lead listed above.

Although all Study Data that identifies you will be protected and treated as confidential, total confidentiality cannot be guaranteed. It is possible that Study Researchers could identify you just from your KeyCoded Study Data (for instance if the KeyCoded Study Data includes photo images of you), or there could be unauthorized access to, or security breaches of, the systems used to store your Study Data. There may be other privacy risks that we have not foreseen.

**HOW WILL STUDY DATA BE USED, DISCLOSED & DESTROYED?**
By signing this consent form, you agree to allow Apple, Apple personnel, external entities with whom Apple may choose to collaborate, and designated third parties acting on behalf of Apple, to collect, use, store, process, and disclose ("use and disclose") your information for the purposes described in this consent and for the development, design, approval, production or support of Apple products, technologies, and services. Apple will take steps to ensure the confidentiality of data shared with external entities and third parties, such as the use of contractual obligations where appropriate. Your Study Data will be used, disclosed, and destroyed as follows:

- **Contact Information:**  Will generally only be used by the Study Coordinators and the Database Administrators of Study Teams, to conduct this study and to contact you about this or future studies. Research Study Teams will generally not have access to your Contact Information as your Study Data will be anonymized.  Your Contact Information will be deleted within one year after the date listed on this consent.
- **Photo/Video/Audio:**  Will generally only be used by the Study Team and other research teams working on this Study or subsequent related studies.  This data will not be shared with research teams for unrelated studies without going through an internal approval process or obscuring/blurring any images of you that might otherwise directly identify you (for example, blurring a full face photograph), or obtaining your additional consent. Your Photo/Video/Audio data will be deleted within 15 years after the date listed on this consent.
- **Sensitive/Health Data:**  Will generally be used by the Study Team and other research teams working on this Study or subsequent related studies.  This data may be shared with other study teams so long as the data is KeyCoded and does not otherwise include data that by itself identifies you.  Your KeyCoded Sensitive/Health Data may be retained as long as necessary for the purposes described in this consent.
- **Documented Study Data:**  Will generally be used by the Study Team and other research teams working on this Study or subsequent related studies.  This data may be shared with other study teams so long as the data is assigned a unique subject ID and does not otherwise include data that by itself identifies you. Your anonymized Documented Study Data may be retained as long as necessary for the purposes described in this consent.

All Study Data, including your Contact Information, may be used in connection with selection and recruitment efforts for future Apple studies.  The Study Coordinator and the Database Administrator of this Study may share your Contact Information with approved Study Coordinators and Database Administrators of other related studies for such recruitment as well as to merge your Study Data with other Study Data.  All Study Data, may also be provided to public, regulatory, or government authorities, including law enforcement, when required by law, legal process, or litigation.

You may contact the Research Lead at any time to request deletion of your data, however, note that in some circumstances, deletion of your data may not be feasible (for instance if your data has been de-linked from your Contact Information and the subject ID).  However, reasonable efforts will be made to delete identifiable data within a reasonable amount of time.

**WHAT RISKS OR DISCOMFORTS SHOULD I EXPECT FROM BEING IN THIS STUDY?**
The study involves using visible and non-visible light to capture images of your face.  No significant risks or permanent side effects are anticipated or expected, and all testing will be non-invasive.

The devices that you are being asked to use for this study contain a Class 1 laser, which is considered safe under normal use conditions.  Please follow all instructions provided by the study personnel. If the devices that you are asked to use in the study are damaged, abused, or misused, you may get injured.  Please immediately notify the study personnel onsite if you drop the device or see any signs of damage.  The devices may also prompt further action by you or provide further warnings.  Please tell onsite study personnel  immediately if you have any

APL-GAELG_00002862

questions or are unclear on what to do next.  If you have any concerns about the safety of the study or have any questions please ask the study personnel onsite or call one of the Research Leads before signing this consent.

If any pain, discomfort or side effects are experienced during or after the study, contact a member of the study personnel onsite or one of the Research Leads.

There may additionally be some unknown and unforeseeable risks.  **If you experience any pain, discomfort, side effects notify a Research Lead.**

**WHAT HAPPENS IF I AM INJURED BECAUSE OF THE STUDY?**
Every effort to prevent injury as a result of your participation will be taken. If, however, complications or injuries occur that are the result of a procedure or test required for this study, you will be reimbursed the standard charges for the treatment of these complications or injuries, provided that these charges have not been reimbursed by your nongovernment medical insurance or other third party.  The compensation described in this section will be the only form of compensation provided to you for complications or injuries related to this study.

**WILL I RECEIVE COMPENSATION FOR TAKING PART IN THIS STUDY?**
Food and beverage will be provided for your participation in the study.

**HOW DO I WITHDRAW FROM THIS STUDY?**
You can withdraw from this study at any time by contacting the Research Lead.  If you withdraw from the study, your Contact Information and Study Data will be used and maintained as stated above, unless you request that it be deleted, in which case it will be deleted where feasible as stated above.

**WHO CAN ANSWER MY QUESTIONS ABOUT THE STUDY?**
If a study-related problem should occur, or if you have any questions about the study at any time, please contact a Research Lead.

Should you desire to voice complaints or concerns about the study, have questions not addressed by the Research Lead or his/her designee, or have questions about your rights in the study, please contact [ Redacted ] Human Studies Review Board, at [ Redacted ] or [ Redacted ] Apple Legal, at [ Reda ] [ Redacted ]

**YOUR CONFIDENTIALITY OBLIGATIONS**
By agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple.

---

**CONSENT**

I acknowledge that I have read this consent carefully, that I understand all of its terms, and that I enter into this study voluntarily.  I understand that I can withdraw at any time.

I understand that I may ask for a copy of this consent.


_____     _____     _____
Participant's Name                               Signature                                      Date


_____     _____     _____
Person Conducting Consent                   Signature                                      Date

APL-GAELG_00002863

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

## Ethics

Manage Attachments (2): Screen Shot 2021-07-23 at 2.04.15 PM.png  [download]    Screen Shot 2021-07-23 at 2.04.43

| | | | |
|---|---|---|---|
| **Number** | HRC000015205 | **State** | Closed Complete |
| **Subject person** | Ashley Gjovik | **Priority** | 3 - Low |
| **Opened for** | Anonymous User | **Source** | Inbound Email |
| **HR service** | Business Conduct Helpline | **Opened** | 2021-07-23 13:59:42 |
| **HR Service Subtype** | Report a concern | **Opened by** | CST Guest |
| **Assignment group** | BCGC SN Access | **Collaborators** | |
| **Assigned to** | Timos Gies | **Watch list** | |
| | | **Restricted** | ☐ |

**Title**    Speaking about Apple to the media

**Description:**

CASE
2021-7-4227 - Other

A HW employee was quoted in The NY Times speaking about Apple's return to work practice that goes into effect in the fall. The matter was raised to ER to determine if this violates the policy on public communication.

**Additional comments:**

**Work notes (Private)**

Conversation



☑ All (33)  ☑ Assigned to (1)  ☑ Assignment group (1)  ☑ Source (1)  ☑ Description (2)  ☑ HR service (1)
☑ Opened by (1)  ☑ Opened for (1)  ☑ Priority (1)  ☑ Title (2)  ☑ Pending Reason (1)  ☑ State (4)  ☑
☑ Subject person (2)  ☑ Case Resolution (1)  ☑ Business Conduct Policy (1)  ☑ Investigation Team (1)  ☑ HR
Service Subtype (1)  ☑ Restricted (1)  ☑ System update (2)  ☑ Work notes (3)  ☑ Email (5)

**2021-08-09 16:31:51**  **Timos Gies**  - Changed:  Case Resolution, State, Work notes

Case Resolution: Duplicate Report

State: Closed Complete    was: Pending

ER confirmed they already have a case open on this matter, so I have closed this as a duplicate.

**2021-07-29 18:16:11**  Case HRC000015205 -- work notes added  - Email sent

Sent: timos [ Redacted ]

**2021-07-29 18:16:04**  **Antonio Lagares**  - Changed:  Work notes

Hi Timos,

We are aware of this matter and it is part of a broader investigation and collaboration with ER/Legal.

TL

APL-GAELG_00002331

On Jul 29, 2021, at 11:09, Business Conduct < [ Redacted ] > wrote:

Hi,

This anonymous report is considered a Business Conduct matter. Please keep us advised of the outcome of this investigation.

The reporter has been asked if they are willing to speak with an investigator and we will provide updates if they reply. Best regards,

Timos

***

Select your employment category.:
Apple Employee
Please identify the person(s) engaged in this behavior:
Ashley Gjovik - EPM
Is management aware of this problem?
Do Not Know / Do Not Wish To Disclose
What is the general nature of this matter?
Going on record representing Apple to the media
Where did this incident or violation occur?
New York Times article
Please provide the specific or approximate time this incident occurred:
Friday, July 23
How long do you think this problem has been going on?
Don't know
How did you become aware of this violation?
Other
If other, how?
read it on a Slack channel after being made aware of it by a coworker
Details:
Person represented Apple in a way that doesn't seem to represent the company appropriately. Of course, if they were authorized to speak on behalf of Apple it is different, but it did not appear that way.

Article link: https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html <https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html>

Link also provided on the Slack channel citing additional coverage of the article: https://law.scu.edu/news/ashley-gjovik-jd-22-quoted-in-the-the-new-york-times-responding-to-apples-plans-for-employees-to-return-to-the-office-this-fall/ <https://law.scu.edu/news/ashley-gjovik-jd-22-quoted-in-the-the-new-york-times-responding-to-apples-plans-for-employees-to-return-to-the-office-this-fall/>

Portion of article relevant to this (quote in fourth paragraph):

"In June, Apple's chief executive, Tim Cook, told employees that they would be required to return to the office at least three days a week, starting in September. About 1,800 employees sent Mr. Cook a letter calling for a more flexible approach.

He did not respond, but days later Apple posted an internal video in which company executives doubled down on bringing workers back to the office. In the video, Dr. Sumbul Desai, who helps run Apple's digital health division, encouraged workers to get vaccinated but stopped short of saying they would be required to, according to a transcript viewed by The Times.

The video didn't sit well with some employees.

APL-GAELG_00002332

"OK, you want me to put my life on the line to come back to the office, which will also decrease my productivity, and you're not giving me any logic on why I actually need to do that?" said Ashley Gjovik, a senior engineering program manager.

When the company delayed its return-to-office date on Monday, a group of employees drafted a new letter, proposing a one-year pilot program in which people could work from home full time if they chose to. The letter said an informal survey of more than 1,000 Apple employees found that roughly two-thirds would question their future at the company if they were required to return to the office."

Department:
Hardware

<Screen Shot 2021-07-23 at 2.04.15 PM_MSG1627582131193_1895.png><Screen Shot 2021-07-23 at 2.04.43 PM_MSG1627582131174_3649.png>

**2021-07-29 18:15:51**  Re: Case HRC000015205: Speaking to Reporters, Hardware  *- Email Received*

Received: CST Guest

**2021-07-29 11:10:11**  **Timos Gies**  *- Changed:  Business Conduct Policy, Description, Investigation Team, Title*

Business Conduct Policy: Public Communications

Description:
CASE 2021-7-4227 - Other A HW employee was quoted in The NY Times speaking about Apple's return to work practice that goes into effect in the fall. The matter was raised to ER to determine if this violates the policy on public communication.

Investigation Team: Employee Relations

Title: Speaking about Apple to the media  *was: NEW CASE ADDED FROM HOTLINE: Case 2021-7-4227 - Other*

**2021-07-29 11:10:10**  **Timos Gies**  *- Changed:  Pending Reason, State, Work notes*

Pending Reason: Process

State: Pending  *was: Work in Progress*

Pending Reason - Pending ER review

**2021-07-29 11:04:09**  Case HRC000015205: Speaking to Reporters, Hardware  *- Email sent*

Sent: US_Corp_ER_BC [ Redacted ]

**2021-07-29 11:03:57**  **Timos Gies**  *- Changed:  System update*

System update:
Inserted File Name: Screen Shot 2021-07-23 at 2.04.43 PM.png / By: timos [ Redacted ]

**2021-07-29 11:03:57**  **Timos Gies**  *- Changed:  System update*

System update:
Inserted File Name: Screen Shot 2021-07-23 at 2.04.15 PM.png / By: timos [ Redacted ]

**2021-07-29 11:00:38**  **Timos Gies**  *- Changed:  State, Subject person*

State: Work in Progress  *was: Ready*

Subject person: Ashley Gjovik  *was: Anonymous User*

**2021-07-28 17:00:11**  Case HRC000015205 has been assigned to you  *- Email sent*

Sent: timos [ Redacted ]

APL-GAELG_00002333

**2021-07-28 17:00:08** **Kathleen Emery**  - Changed:  Assigned to

Assigned to: Timos Gies

**2021-07-23 13:59:42** **CST Guest**  - Changed:  Assignment group, Description, HR service, HR Service Subtype, Opened by, Opened for, Priority, Restricted, Source, State, Subject person, Title

Assignment group: BCGC SN Access

Description:
CASE 2021-7-4227 - Other NOTIFICATION RULE New cases LINK TO CASE https://apple.ethicspointvp.com/case.aspx?caseId=8826 Please click the link above to view case information. NAVEX Global www.navexglobal.com This is a system-generated email. If you would like to be unsubscribed, please contact your administrator. NAVEX Global reference: d712add9-8511-4498-91dc-cbd42d066021 *************** CONFIDENTIALITY NOTICE *************** This e-mail and any attachments may contain private, confidential, and privileged information for the sole use of the intended recipient. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please contact the sender at NAVEX Global, keep the contents confidential and immediately delete the message and any attachments from your system. ********************************************************

HR service: Business Conduct Helpline - Deactivated

HR Service Subtype: Report a concern

Opened by: CST Guest

Opened for: Anonymous User

Priority: 3 - Low

Restricted: false

Source: Inbound Email

State: Ready

Subject person: Anonymous User

Title: NEW CASE ADDED FROM HOTLINE: Case 2021-7-4227 - Other

**2021-07-23 13:59:38** NEW CASE ADDED FROM HOTLINE: Case 2021-7-4227 - Other  - Email Received

Received: noreply@navexglobal.com

## Service Details

| | | | |
|---|---|---|---|
| **Business Conduct Policy** | Public Communications | **Results** | |
| **Business Conduct Sub-Policy** | | **Directed by counsel** | ☐ |
| **Investigation Team** | Employee Relations | **Whistleblower** | ☐ |

## Resolution

| | |
|---|---|
| **Case Resolution** | Duplicate Report |

## Comments/Worknotes

APL-GAELG_00002334

## HR Tasks Parent = HRC000015205  0 HR Tasks

| Number | State | Title | Assignment group | Assigned to | Task type |
|--------|-------|-------|------------------|-------------|-----------|

No records to display

## Interactions Sys ID in  0 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|--------|--------|-------------------|------------|-------|------|-------------|---------|------------|

No records to display

## Child Cases Parent = HRC000015205  0 HR Cases

| Number | State | Opened for | People Business Partner | Subject person | People Business Partner | HR service | Title | Assignment group | Assigned to | Opened | Updated |
|--------|-------|-----------|-------------------------|----------------|-------------------------|-----------|-------|------------------|-------------|--------|---------|

No records to display

## Knowledge Source Task = HRC000015205  0 Knowledge

| Number | Active | Article ID | Article type | Author | Base Version | Can Read | Cannot Read | Category | Configuration item |
|--------|--------|-----------|--------------|--------|--------------|----------|-------------|----------|--------------------|

No records to display

## Related Cases Active = true AND Record ID [Document ID] = 28c25699b72130104c5dfcbb6a8c0290  0 Related Records

| Related Record ID | Title | State | Created |
|-------------------|-------|-------|---------|

No records to display

## Attachments Active = true AND Record sys ID = 28c25699b72130104c5dfcbb6a8c0290  2 Attachment Metadatas

| File name | Hidden | Uploaded by | Uploaded on |
|-----------|--------|-------------|-------------|
| Screen Shot 2021-07-23 at 2.04.15 PM.png | false | timos-1169384853 | 2021-07-29 11:03:56 |
| Screen Shot 2021-07-23 at 2.04.43 PM.png | false | timos-1169384853 | 2021-07-29 11:03:56 |

APL-GAELG_00002335

# Ethics

Manage Attachments (7): IMG_1383.jpeg [download]  Screen Shot 2021-07-24 at 1.49.23 PM.png [download]  Screen

| | | | |
|---|---|---|---|
| **Number** | HRC000015213 | **State** | Closed Complete |
| **Subject person** | Ashley Gjovik | **Priority** | 3 - Low |
| **Opened for** | Redacted | **Source** | Inbound Email |
| **HR service** | Business Conduct Helpline | **Opened** | 2021-07-24 14:05:56 |
| **HR Service Subtype** | Report a concern | **Opened by** | Redacted |
| **Assignment group** | BCGC SN Access | **Collaborators** | |
| **Assigned to** | Kathleen Emery | **Watch list** | |
| | | **Restricted** | ☐ |

**Title**  Concerns with ee posts

**Description:**

An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office.
Referred to ER

**Additional comments:**

**Work notes (Private)**

Conversation

☑ All (40)  ☑ Assigned to (1)  ☑ Assignment group (1)  ☑ Additional comments (1)  ☑ Source (1)  ☑ Description (2)  ☑ HR service (1)  ☑ Opened by (1)  ☑ Opened for (1)  ☑ Priority (1)  ☑ Title (3)  ☑ State (3)  ☑ Subject person (2)  ☐ Case Resolution (1)  ☑ Business Conduct Policy (1)  ☑ Investigation Team (1)  ☑ HR Service Subtype (1)  ☑ Restricted (1)  ☑ System update (7)  ☑ Work notes (3)  ☑ Email (7)

**2021-08-02 15:44:40  Kathleen Emery**  - Changed:  State

State: Closed Complete   was: Work in Progress

**2021-08-02 15:44:34  Kathleen Emery**  - Changed:  Work notes

ER acknowledged

**2021-07-28 17:57:40  Case HRC000015213 -- work notes added**  - Email sent

Sent: kemery  Redacted

**2021-07-28 17:57:38  Antonio Lagares**  - Changed:  Work notes

We are aware and addressing this issue.

TL

On Jul 28, 2021, at 17:47, Business Conduct  Redacted  wrote:

APL-GAELG_00002339

Hi ER

I am forwarding this email and attachments from [ Redacted ] PBP for ISS, about Ashley Gjovik's twitter posts and false accusations.

We do not need an update.

Kathleen

////

Hi Business Conduct,

An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office and that we are putting people's lives at risk).

This same employee is part of the remote work advocacy Slack channel, and has also made some troubling comments in that Slack channel.

As a member of the People Team who has been involved in helping with the communications to employees who have expressed concern about returning to work, I know we have taken great care in connecting with our employees to understand their perspective and to address these concerns in a thoughtful way. It's very concerning to me that someone would go out of their way to accuse Apple of putting people's lives at risk in such public news forums, including making statements that are not true.

Thanks,
[ Redacted ]

https://twitter.com/ashleygjovik/status/1418969039099994112
<https://twitter.com/ashleygjovik/status/1418969039099994112>
[ Redacted ] |  People Business Partner - AI/ML | [ Redacted ]
<mailto: [ Redacted ] >

Additional information:

Full-length article in which the original quote and other Apple confidential information originally appears:

https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html?
referringSource=articleShare <https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html?referringSource=articleShare>

Specific excerpts:
There is no mention of the fact that People Business Partners individually reached out and contacted the 1500+ employees who signed the letter to better understand their individual situations and summarize this info to share back with Tim, only a statement that "Tim did not respond".

Tweets where multiple Apple employees are publicly sharing and commenting on internal Apple documents in a way that could be damaging to our employment

<84e08ca5-4ac5-425b-860d-e7dbb95b9ea5_MSG1627519457976_4238.png><Screen Shot 2021-07-24 at 1.49.35 PM_MSG1627519462591_6904.png><image0_MSG1627519460351_3278.png>
<image1_MSG1627519461439_7471.png><86147da3-eb20-412d-a3c6-95e15d60f1aa_MSG1627519459955_8905.png><IMG_1383_MSG1627519462191_7424.jpeg><Screen Shot 2021-07-

APL-GAELG_00002340

24 at 1.49.23 PM_MSG1627519462193_2943.png>

**2021-07-28 17:57:10** Re: Hardware Employees comments Twitter post Case HRC000015213 - Email Received

Received: CST Guest

**2021-07-28 17:48:08 Kathleen Emery** - Changed: Case Resolution, Description, Investigation Team, Title

Case Resolution: Directed to Appropriate Resources

Description:
An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office. Referred to ER

Investigation Team: Employee Relations

Title: Concerns with ee posts was: Concerning by Apple employee

**2021-07-28 17:44:10** Case HRC000015213 -- comments added - Email sent

Sent: | Redacted |

**2021-07-28 17:43:50 Kathleen Emery** - Changed: Additional comments, Assigned to, Business Conduct Policy, HR Service Subtype, State, Subject person, Title

HI | Redacted |
Thanks for reaching out regarding Ashley Gjovi's comments. I forwarded the emails to ER for Hardware.
Kathleen

Assigned to: Kathleen Emery

Business Conduct Policy: Not Business Conduct

HR Service Subtype: Report a concern

State: Work in Progress was: Ready

Subject person: Ashley Gjovik was: | Redacted |

Title: Concerning by Apple employee was: Concerning comments in NYT Article and on Twitter by Apple employee

**2021-07-28 17:37:35** Hardware Employees comments Twitter post Case HRC000015213 - Email sent

Sent: US_Corp_ER_BC | Redacted |

**2021-07-25 09:14:02 Help Central** - Changed: System update

System update:
Inserted File Name: image0.png / By | Redacted |

**2021-07-25 09:14:02 Help Central** - Changed: System update

System update:
Inserted File Name: 86147da3-eb20-412d-a3c6-95e15d60f1aa.png / By | Redacted |

**2021-07-25 09:14:02 Help Central** - Changed: System update

System update:
Inserted File Name: image1.png / By | Redacted |

**2021-07-25 09:14:02 Help Central** - Changed: System update

System update:

APL-GAELG_00002341

Inserted File Name: 84e08ca5-4ac5-425b-860d-e7dbb95b9ea5.png / By: [ Redacted ]

**2021-07-25 09:13:51** [ Redacted ] - Changed: Work notes

Additional information:

Full-length article in which the original quote and other Apple confidential information originally appears:

https://www.nytimes.com/2021/07/23/business/return-to-office-vaccine-mandates-delta-variant.html?referringSource=articleShare

Specific excerpts:

There is no mention of the fact that People Business Partners individually reached out and contacted the 1500+ employees who signed the letter to better understand their individual situations and summarize this info to share back with Tim, only a statement that "Tim did not respond".

Tweets where multiple Apple employees are publicly sharing and commenting on internal Apple documents in a way that could be damaging to our employment

Sent from my iPhone

> On Jul 24, 2021, at 2:06 PM, Business Conduct [ Redacted ] wrote:
>
>
>
> Thank you for contacting
> Business Conduct Office
> A case has been created for you regarding your inquiry and we will reply with more information as soon as we can. If you have any additional details or questions you'd like to share, please put them in a reply to this email.
> Your reply to this email will be automatically posted to the Case Activity Log.
>

**2021-07-25 09:13:49** Re: Business Conduct Helpline Case HRC000015213 has been opened - Email Received

Received: [ Redacted ]

**2021-07-24 14:06:10** Business Conduct Helpline Case HRC000015213 has been opened - Email sent

Sent: [ Redacted ]

**2021-07-24 14:06:03** **Help Central** - Changed: System update

System update:
Inserted File Name: Screen Shot 2021-07-24 at 1.49.35 PM.png / By: [ Redacted ]

**2021-07-24 14:06:03** **Help Central** - Changed: System update

System update:
Inserted File Name: Screen Shot 2021-07-24 at 1.49.23 PM.png / By: [ Redacted ]

**2021-07-24 14:06:03** **Help Central** - Changed: System update

System update:
Inserted File Name: IMG_1383.jpeg / By: kmichallik@apple.com

APL-GAELG_00002342

**2021-07-24 14:05:56** [Redacted] - Changed: Assignment group, Description, HR service, Opened by, Opened for, Priority, Restricted, Source, State, Subject person, Title

Assignment group: BCGC SN Access

Description:
Hi Business Conduct, An Apple employee has made false accusations regarding Apple's return to work plans and remote work pilot publicly as part of a New York Times article and on Twitter (saying that we have not articulated why we are asking employees to come back into the office and that we are putting people's lives at risk). This same employee is part of the remote work advocacy Slack channel, and has also made some troubling comments in that Slack channel. As a member of the People Team who has been involved in helping with the communications to employees who have expressed concern about returning to work, I know we have taken great care in connecting with our employees to understand their perspective and to address these concerns in a thoughtful way. It's very concerning to me that someone would go out of their way to accuse Apple of putting people's lives at risk in such public news forums, including making statements that are not true. Thanks, [Redacted] https://twitter.com/ashleygjovik/status/1418969039099994112 [Redacted]  People Business Partner - AI/ML | [Redacted]

HR service: Business Conduct Helpline - Deactivated

Opened by:        [Redacted]
Opened for:       [Redacted]

Priority: 3 - Low

Restricted: false

Source: Inbound Email

State: Ready

Subject person: [Redacted]

Title: Concerning comments in NYT Article and on Twitter by Apple employee

**2021-07-24 14:05:51**  Concerning comments in NYT Article and on Twitter by Apple employee  - Email Received

Received:        [Redacted]

## Service Details

| | | | |
|---|---|---|---|
| **Business Conduct Policy** | Not Business Conduct | **Results** | |
| **Business Conduct Sub-Policy** | | **Directed by counsel** | ☐ |
| **Investigation Team** | Employee Relations | **Whistleblower** | ☐ |

## Resolution

**Case Resolution**   Directed to Appropriate Re

## Comments/Worknotes

APL-GAELG_00002343

## HR Tasks   Parent = HRC000015213                                  0 HR Tasks

| Number | State | Title | Assignment group | Assigned to | Task type |
|--------|-------|-------|-------------------|-------------|-----------|

No records to display

## Interactions   Sys ID in                                  0 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|--------|--------|-------------------|------------|-------|------|-------------|---------|------------|

No records to display

## Child Cases   Parent = HRC000015213                                  0 HR Cases

| Number | State | Opened for | People Business Partner | Subject person | People Business Partner | HR service | Title | Assignment group | Assigned to | Opened | Updated |
|--------|-------|-----------|-------------------------|----------------|-------------------------|------------|-------|------------------|-------------|--------|---------|

No records to display

## Knowledge   Source Task = HRC000015213                                  0 Knowledge

| Number | Active | Article ID | Article type | Author | Base Version | Can Read | Cannot Read | Category | Configuration item |
|--------|--------|-----------|--------------|--------|--------------|----------|-------------|----------|--------------------|

No records to display

## Related Cases   Active = true AND Record ID [Document ID] = a5cd536db729b0104c5dfcbb6a8c02cb                                  0 Related Records

| Related Record ID | Title | State | Created |
|-------------------|-------|-------|---------|

No records to display

## Attachments   Active = true AND Record sys ID = a5cd536db729b0104c5dfcbb6a8c02cb                                  7 Attachment Metadatas

| File name | Hidden | Uploaded by | Uploaded on |
|-----------|--------|-------------|-------------|
| 84e08ca5-4ac5-425b-860d-e7dbb95b9ea5.png | false | | 2021-07-25 09:13:49 |
| 86147da3-eb20-412d-a3c6-95e15d60f1aa.png | false | | 2021-07-25 09:13:49 |
| image0.png | false | | 2021-07-25 09:13:48 |
| image1.png | false | Redacted | 2021-07-25 09:13:48 |
| IMG_1383.jpeg | false | | 2021-07-24 14:05:51 |
| Screen Shot 2021-07-24 at 1.49.23 PM.png | false | | 2021-07-24 14:05:51 |
| Screen Shot 2021-07-24 at 1.49.35 PM.png | false | | 2021-07-24 14:05:51 |

APL-GAELG_00002344

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit D

## RE: Gjovik v Apple | Regarding Orrick's Attendance at Plaintiff's August 21 2025 Bankruptcy Proceedings (341 Meeting of Creditors)

| | |
|---|---|
| From | Perry, Jessica R. <jperry@orrick.com> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com>, Booms, Ryan<rbooms@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Riechert, Melinda<mriechert@orrick.com> |
| Date | Sunday, August 24th, 2025 at 11:49 PM |

Ashley,

We disagree that it was inappropriate for a person from Orrick to attend the public hearing in the bankruptcy court that occurred on Thursday. And we reject your attempt to blame us for any failure on your part to provide complete and accurate information in the proceedings, as well as your other baseless accusations.

Regards,

Jessica

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, August 21, 2025 9:40 AM
**To:** Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R. <jperry@orrick.com>
**Subject:** Gjovik v Apple | Regarding Orrick's Attendance at Plaintiff's August 21 2025 Bankruptcy Proceedings (341 Meeting of Creditors)

[EXTERNAL]

Dear Counsel,

I write to document my concerns regarding Orrick's attendance at my Section 341 Meeting of Creditors on Aug. 21 2025 in the U.S. Bankruptcy Court.

While I acknowledge your right to attend public court proceedings, I must note the inappropriate nature of your firm's conduct and its impact on my testimony to the bankruptcy court, as I objected to in the proceeding.

Apple knows I primarily blame it for denylisting me and causing my financial demise, including driving me into bankruptcy. Apple is also a creditor regarding my AppleCard debt (which is almost entirely WestLaw fees), along with Goldman Sachs. Yet, Apple chose to send Ryan Booms, who serves as noticed employment litigation defense counsel in civil litigation (3:23-cv-04597) and the Dept. of Labor whistleblower adjudication, rather than bankruptcy or financial counsel who would typically handle such proceedings. It also appears that Goldman Sachs did not appear -- nor did any of my other creditors. Apple's choice to appear with retaliation defense counsel also occurred during active discovery disputes in our employment litigation.

The visible presence of opposing retaliation counsel created a chilling effect on my testimony and may have compromised my ability to provide the complete financial disclosure that bankruptcy proceedings require. This apparent intentional intimidation by Apple continues a documented pattern of Apple monitoring and interfering with my participation in legal proceedings beyond the scope of our employment dispute, and beyond the boundaries of lawful litigation tactics. Federal and state agencies have already determined that Apple's retaliation was unlawful and that my underlying disclosures identified genuine violations and safety concerns -- thus there's no legitimate basis for Apple's conduct here.

Apple's tactics today create an impossible position where Apple's mere presence, which is intentionally intimidating and chilling, would cause any reasonable person in my position to be unable to fully exercise their rights in bankruptcy proceedings without facing retaliation in separate litigation or further obstruction of other proceedings. This ongoing, systematic harassment reflects a continuance of the very retaliation claims that brought us to litigation in the first place including my complaints about civil rights violations and intentional infliction of emotional distress.

While you may characterize your attendance as information gathering, the choice to send named employment litigation counsel rather than appropriate finance counsel, and the lack of Goldman Sachs or any other creditor, reveals Apple and Orrick's true purpose as intimidation rather than legitimate case development. Apple's appearance today also appeared to me, to represent Apple delighting in the spectacle of my financial demise, which Apple itself expressly threatened me would occur in 2021, if I was to pursue litigation and adjudication against it, which I did.

I preserve all objections to this conduct, its harm to me generally, and its interference with my constitutional rights in bankruptcy proceedings.

- Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](Proton Mail) secure email.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.