**Ashley M. Gjøvik, JD**
*In Propria Persona*
(415) 964-6272
ashleymgjovik@protonmail.com
Boston, MA

# United States Bankruptcy Court

## District of Massachusetts

In Re:

**Estate of**
**Ashley M. Gjovik,**

**Chapter 7 Case No: 25–11496**

**A.P. No. 25-01104**

**Judge Christopher J. Panos**

**Debtor's Motion For A Protective Order & To Compel Trustee Action**

**Private Trustee:**
**Mark DeGiacomo, esq.**

**Fed. R. Bankr. P. Rule 9013**

# TABLE OF AUTHORITIES

## US SUPREME COURT CASES

*Mosser v. Darrow,* 341 U.S. 267, 274 (1951) ----------------------------------------------------------------16

## US COURT OF APPEALS CASES

*In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983) -------------------------------------14

*In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 7 (1st Cir. 1999). ------------------------- 16, 17

*In re S. Found Corp.,* 641 F.2d 182, 184–85 (4th Cir. 1981) --------------------------------------------16

*Kowalski-Schmidt v. Forsch (In re Giordano),* 212 B.R. 617 624 (B.A.P. 9th Cir. 1997) ----------------17

*Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.),* 847 F.2d 931 942 (1st Cir. 1988) --17

## US DISTRICT COURT CASES

*Gjovik v. Apple Inc.,* Case No. 3:23-cv-04597-EMC (N.D. Cal.) ----------------------------------5, 7, 17

*Gonzalez v. Musso,* No. 08-CV-3026, 2008 WL 3194179, at *2 (E.D.N.Y. Aug. 6, 2008) -------------16

*In re Dalen*, 259 B.R. 586, 610 (Bankr. W.D. Mich. 2001) ----------------------------------------------15

*In re Heinsohn,* 231 B.R. 48, 65-66 (Bankr. E.D. Tenn. 1999) -----------------------------------------14

## U.S. AND STATE STATUTES

11 U.S.C. § 323 --------------------------------------------------------------------------------------15

11 U.S.C. § 327 --------------------------------------------------------------------------------- 16, 18

11 U.S.C. § 327(d) ----------------------------------------------------------------------------------16

11 U.S.C. § 327. -------------------------------------------------------------------------------------16

11 U.S.C. § 554 --------------------------------------------------------------------------- 14, 15, 18

11 U.S.C. § 704(7) ----------------------------------------------------------------------------------15

11 U.S.C. § 704(a)(1) -------------------------------------------------------------------------------15

11 U.S.C. § 704(a)(7) -------------------------------------------------------------------------------15

11 U.S.C. § 704(a)(9) -------------------------------------------------------------------------------12

11 U.S.C. § 704(s) -----------------------------------------------------------------------------------15

11 U.S.C. §§ 330 and 704(a) ------------------------------------------------------------------------------17

11 U.S.C. §§ 704(a)(1) and 704(a)(3) ----------------------------------------------------------------15

28 U.S.C. § 586 ------------------------------------------------------------------------------------------16

## U.S. AND STATE RULES & REGULATIONS

Fed. R. Bankr. P. 2002 ---------------------------------------------------------------------------- 16, 18

Fed. R. Bankr. P. 2015 --------------------------------------------------------------------------------12

Fed. R. Bankr. P. 6004 ---------------------------------------------------------------------------- 16, 18

Fed. R. Bankr. P. 6007 ---------------------------------------------------------------------------- 14, 18

Fed. R. Civ. P. 24 --------------------------------------------------------------------------------------16

Fed. R. Civ. P. 24/25 ----------------------------------------------------------------------------------18

## AGENCY ADJUDICATIONS

*Ashley M. Gjovik, Apple Inc,* NLRB Case No. 32-CA-282142, 32-CA-283161 (2021-) ------------------ 6

*Ashley M. Gjovik, Apple Inc,* NLRB Trilateral National Settlement No. 32-CA-284428 with

   Permanent Injunction (2021-2025). ------------------------------------------------------------------ 6

*In re Apple Inc.,* CFPB Admin. Proc. File No. 2024-CFPB-0012, Consent Order (Oct. 23, 2024) ---- 6

*In re Goldman Sachs Bank USA,* CFPB Admin. Proc. File No. 2024-CFPB-0011, Consent Order (Oct.

   23, 2024) --------------------------------------------------------------------------------------------- 6

# TABLE OF CONTENTS

**NATURE OF EMERGENCY AND REQUEST FOR EXPEDITED RELIEF** ...... 4

**FACTUAL BACKGROUND** .................................................................... 4

    Case Administration and Asset Conversion ...................................... 6

    The Potential Financial Claim Against Apple and Goldman Sachs ...................... 5

    The Retaliation Lawsuit ........................................................ 6

    Trustee's Unauthorized Ex Parte Coordination ................................. 7

    Weaponization by Adverse Party .............................................. 8

**TRUSTEE'S COORDINATION WITH APPLE DESPITE EXPLICIT KNOWLEDGE OF MULTIPLE CONFLICTS AND POTENTIAL ESTATE ASSETS** ............................................................................... 9

    Apple Card Debt Constitutes Potential Estate Asset Worth Investigation ........... 9

    Trustee's Coordination Despite Explicit Knowledge Demonstrates Willful Breach ................................................................................. 9

    Trustee's Actions Convert Potential Estate Assets to Apple's Benefit .............. 10

    Professional Standards Require Explanation of Inexplicable Conduct ............... 10

    Trustee's Conduct Is Indefensible Regardless Of Undisclosed Asset Status ....... 11

    Trustee's Dismissive Response To Urgent Estate Business Demonstrates Abandonment Of Duties ...................................................... 11

**LEGAL ARGUMENT** ....................................................................... 13

    Trustee Violated Fiduciary Duties ............................................. 13

    Trustee Violated Statutory Duties ............................................. 14

    Trustee Lacks Authority for His Actions ....................................... 15

    Waste of Estate Assets ........................................................ 16

**RELIEF REQUESTED** ..................................................................... 16

    Emergency Protective Order ................................................... 16

    Compel Proper Trustee Action ................................................ 17

    Additional Relief .............................................................. 17

**CONCLUSION** ............................................................................. 18

**CERTIFICATE OF SERVICE** ........................................................... 19

# Debtor's Motion For Protective Order & To Compel Trustee Action

1.      Debtor, Ashley Marie Gjovik, respectfully moves this Court for an emergency protective order and to compel proper trustee action regarding the administration of estate assets. This motion seeks immediate relief to prevent further waste and destruction of estate assets caused by the Chapter 7 Trustee's procedural violations and unauthorized conduct.

## NATURE OF EMERGENCY AND REQUEST FOR EXPEDITED RELIEF

2.      This matter requires immediate court intervention. Trustee Mark DeGiacomo has:

- Agreed ex parte to stay the estate's most significant known asset (a multi-million dollar retaliation lawsuit) mid-discovery and without investigation, notice, or authority;
- Coordinated ex parte with an adverse creditor to destroy estate value;
- Refused to respond to or correct the adverse consequences of his unauthorized actions; and
- Created an imminent threat to one of the estate's only known primary source of creditor recovery.

3.      Creditor/defendant and Trustee already raised this matter through an Emergency Motion to Stay the litigation in the federal court in *Gjovik v. Apple Inc.,* Case No. 3:23-cv-04597-EMC (N.D. Cal.) at Dkt. 247-248 on August 25 2025. Without immediate intervention, the estate's most valuable asset will be irreparably harmed.

## FACTUAL BACKGROUND

4.      Debtor filed for Chapter 7 bankruptcy on July 21, 2025. (Dkt. 1). JP Morgan Chas's legal team had recently called her and informed her they planned to sue her over her credit card debt by end of August 2025. At the time of filing, she did not believe she had any meaningful assets, has no income other than public donations, and her unemployment insurance had just run out several weeks prior and she expected to be unable to pay her rent or basic expenses without help from the public.

5.      Debtor is a well-known Big Tech whistleblower and activist, who's disclosures and

complaints were covered by international press starting in July 2021 when she started criticizing Apple's business practices, reporting Apple's environmental violations, and making allegations of systemic misconduct by the company. She worked for Apple for over six years and at the time Apple fired her in August 2021, her title was "Senior Engineering Program Manager" and her total compensation the year prior was over $380,000.

6.     Since then, she's had multiple federal government decisions in her favor against Apple including complaints filed against Apple, inspections of Apple's facilities, and national settlements with the U.S. NLRB and U.S. EPA. See, *Ashley M. Gjovik, Apple Inc,* NLRB Case No. 32-CA-282142, 32-CA-283161 (2021-); *Ashley M. Gjovik, Apple Inc,* NLRB Trilateral National Settlement No. 32-CA-284428 with Permanent Injunction (2021-2025).

## The Potential Financial Claim Against Apple and Goldman Sachs ( July 23 2025).

7.     On July 23, 2025, Debtor sent Trustee DeGiacomo a detailed email explicitly disclosing Apple's multiple conflicts with estate interests and potential additional estate assets. Exhibit A.

8.     Debtor specifically informed the Trustee that she intended to "challenge my debt with the employer (the 'Apple Card') as I believe it may be an unlawful contract and CFPB has already taken formal action on both Apple and Goldman Sachs" for Apple Card failures, including an $89 million regulatory fine.  See, *In re Apple Inc.,* CFPB Admin. Proc. File No. 2024-CFPB-0012, Consent Order (Oct. 23, 2024); *In re Goldman Sachs Bank USA,* CFPB Admin. Proc. File No. 2024-CFPB-0011, Consent Order (Oct. 23, 2024).

9.     Debtor further disclosed that "Apple & GS also appear to have concealed they 'piloted' the card on employees prior to formally 'launching' the card, and may have never disclosed that to CFPB." This evidence suggests additional regulatory violations that could generate estate claims or cause for additional CFPB enforcement actions.

10.     Debtor warned the Trustee that "Apple also claims all these 'beta programs' are secret, and will not give me copies of the 'agreements' I signed, even in civil discovery," demonstrating Apple's pattern of concealing information relevant to estate assets.

11.     Debtor explicitly stated her intent to "file an action in the proceeding over this" regarding the Apple Card debt and asked whether the Trustee "may also be interested in doing" the same, directly

offering to collaborate on developing this potential estate asset.

## The Retaliation Lawsuit

12.      Debtor properly disclosed ongoing federal litigation against Apple Inc. on Schedule B (*Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.) - a $30 million retaliation/whistleblower case within a larger RICO, Civil Rights, Antitrust, and Toxic Torts lawsuit) that likely represents the estate's most significant potential asset and primary source of creditor recovery that's currently known to the Debtor and public.

13.      This litigation has been pending for approximately two years and was approaching summary judgment with discovery substantially complete.

14.      Notably, Apple Inc. is both the litigation defendant and a creditor with a disputed claim in this bankruptcy case, that could provide the basis for a substantial recovery through a Adversary Proceeding or other claim against Apple, thus creating an inherent conflict of interest.

15.      Debtor/Plaintiff filed a Notice of Pendency to the civil case's docket on the same day (Dkt. 237) and also filed a notice of her student loan discharge case to that docket on July 29 2025 (Dkt. 238).

## Case Administration and Asset Conversion (August 13 2025).

16.      On or about August 13 2025, approximately two weeks after the petition filing, Trustee Mark DeGiacomo unilaterally converted this case from "no asset" to "asset" status without explanation to the Debtor or identification of specific assets justifying conversion (Dkt. 13).

17.      Trustee simultaneously filed employment applications for auditors and attorneys (Dkt. 14-15), suggesting expectation of significant estate recoveries, yet failed to specify the source of anticipated assets.

## The 11 U.S. Code § 341 Meeting (August 21 2025)

18.      On August 21 2025, Apple sent their litigation counsel Ryan Booms to attend Debtor's 341 Meeting of Creditors for the express purpose of gathering intelligence to use against the estate in federal litigation. Ryan Booms is a lawyer at Orrick apparently specializing in "complex litigation" around "product liability and commercial contracts."[1]

---

[1] Orrick, *Ryan Booms,* https://www.orrick.com/en/People/E/9/0/Ryan-Booms

19.     Within an hour after the meeting on August 21 2025, Debtor sent an email to the Trustee complaining about Apple's conduct. On that day, the Trustee received comprehensive disclosure from Debtor that she believed that Apple′s litigation counsel had strategically attended the 341 meeting to gather intelligence, that Apple had recently threatened Debtor with sanctions to coerce disclosure of sealed law enforcement communications, and that Debtor considered the retaliation claims against Apple to be her ′primary potential asset.′ Exhibit B.

20.     Apple's decision to send Booms, which inherently implied surveillance and intimidation tactics, violates the purpose of 341 meetings, represents abuse of statutory bankruptcy procedures for litigation advantage, and may also be evidence of witness intimidation/tampering. (See concurrently filed civil opposition and request to amend the RICO case to add additional predicate acts).

21.     Despite receiving explicit notice of Apple′s pattern of intimidation and strategic interference with legal processes, and now interference with the bankruptcy process, Trustee coordinated with Apple just days later and refused to consult with Debtor at all. Apple then proceeded to file Motion to Stay, under the color of Trustee approval, that included a sworn declaration from Ryan Booms, citing Debtor's testimony from that 341 meeting as supposed evidence of Debtor lying to a federal court.

## Trustee′s Unauthorized Coordination (August 25 2025)

22.     Despite converting to asset status over one month ago, Trustee never investigated, discussed, or took any action regarding the disclosed litigation. However, on August 25, 2025, while on vacation, Trustee received a communication from Apple Inc. requesting agreement to stay the federal litigation; confirmation that Trustee, not Debtor, has exclusive standing in the lawsuit; and support for Apple′s ″emergency″ timing arguments. Within 27 minutes, while admittedly on vacation, Trustee responded: ″I do not object and also I think it′s appropriate to stay.″

23.     Plaintiff′s detailed communications to the Trustee explained the sophisticated legal strategy being executed against the estate′s interests. Plaintiff warned that Defendant had filed ″nine separate documents (55 pages)″ rather than the simple stay motion they had described, that these documents contained ″extensive false allegations″ against Plaintiff′s character and credibility, and that Defendant was seeking to ″tank this entire litigation″ through procedural warfare. Plaintiff further explained that any adverse ruling would be weaponized against the estate′s other litigation in multiple

federal forums, including pending NLRB, Department of Labor, and EPA matters.

24.     Trustee never consulted with the Debtor, ignored her immediate objections and demand for information, ignored her complaints that what Apple then proceeded to file was a full-frontal attack on Debtor's character and competence, and finally responded saying "Enough" and he would not respond to any further emails for two weeks.

## Weaponization by Adverse Party

25.     Apple immediately weaponized Trustee's unauthorized email, filing motions claiming the Debtor has "no standing" and committed "misconduct" by continuing to manage the litigation; claimed/implied the Trustee's email constitutes official endorsement of their arguments; and said Emergency relief is needed to prevent "irreparable harm" from continued discovery with the Debtor. Exhibit G.

26.     When Debtor objected and sought clarification, Trustee refused to respond or correct Apple's mischaracterizations of his authority.

27.     Any competent trustee would investigate disclosed litigation before converting the case and before hiring professionals, would consult the Debtor about the potential impact of staying that litigation, and would investigate if Debtor reports to the Trustee that an adverse party and disputed creditor had just greatly devalued the Estate.

28.     Instead, the Trustee here said he would not communicate with Debtor for two weeks, refused to assist Debtor in rescuing the damaged asset, acknowledged he read the Debtor's objections, but only proceeded to schedule the first substantive discussion of legal claims for Sept. 8, after participating in the destruction the primary known claim. Exhibit E.

29.     On August 25, 2025, Trustee sent the following response to Debtor's requests for clarification:

> "Enough.... I am not going to tell you what to do or what not to do. I am not your attorney. I am the bankruptcy trustee for your bankruptcy estate. I strongly suggest that you hire an attorney to represent you, pro bono if necessary...During our scheduled meeting on the eighth...I look forward to a productive discussion....I will not be responding to any further emails until then."

Exhibit E.

30.     This response came after Trustee had already inserted himself into the litigation through his ex parte/unauthorized agreement with Apple, creating the very problem he now refuses to address.

# TRUSTEE'S COORDINATION WITH APPLE DESPITE EXPLICIT KNOWLEDGE OF MULTIPLE CONFLICTS AND POTENTIAL ESTATE ASSETS

31.     Trustee's actions violate fundamental bankruptcy procedures. Despite converting to asset case, Trustee never investigated the litigation's value or merits; Trustee provided no notice to Debtor before agreeing to stay affecting estate's primary asset; Trustee never filed notice of appearance, motion to intervene, or sought court approval to control the litigation; Trustee is not admitted to practice in the Ninth Circuit where the litigation is pending; and Trustee apparently coordinated with adverse creditor behind Debtor's back, and made decisions for a court case with no notice of appearance.

## APPLE CARD DEBT CONSTITUTES POTENTIAL ESTATE ASSET WORTH INVESTIGATION

32.     If Apple's employee credit card program violated federal regulations by enrolling employees before meeting legal requirements, the resulting debt contracts may be void or voidable, creating potential estate claims against Apple and Goldman Sachs.

33.     The CFPB's $89 million fine confirms that Apple Card operations violated federal consumer protection laws. Exhibit C. Evidence that Apple enrolled employees months before the card's formal launch suggests additional violations that were not part of the original CFPB enforcement action. Exhibit D.

34.     Apple's refusal to provide beta program agreements even in federal court discovery suggests they are concealing evidence of regulatory violations that could support estate claims for damages, debt cancellation, or regulatory enforcement actions.

## TRUSTEE'S COORDINATION DESPITE EXPLICIT KNOWLEDGE DEMONSTRATES WILLFUL BREACH

35.     Despite receiving comprehensive disclosure of Apple's conflicts and potential additional estate liabilities on July 23, 2025, Trustee DeGiacomo agreed to Apple's litigation stay request on August 26, 2025, within 27 minutes of receiving their email. Exhibit F.

36.     The Trustee cannot claim ignorance of Apple's conflicts with estate interests - he was explicitly informed that Apple was both the primary litigation defendant and a creditor with disputed

claims that could constitute estate assets.

37.     The Trustee knew Apple had a pattern of concealing information and refusing discovery cooperation, yet agreed to coordinate with them regarding the estate's primary asset without investigation or court approval.

38.     No competent trustee would agree to an adverse creditor's request to stay estate litigation after being explicitly informed that the same creditor had multiple regulatory violations and disputed claims that could benefit the estate.

## TRUSTEE'S ACTIONS CONVERT POTENTIAL ESTATE ASSETS TO APPLE'S BENEFIT

39.     By agreeing to stay the estate's primary litigation at Apple's request, the Trustee effectively prevented development of evidence that could support both the retaliation claims and additional Apple Card regulatory violations.

40.     Apple's coordination with the Trustee serves their interests in avoiding accountability for both the primary litigation and potential additional CFPB enforcement actions based on evidence in the estate's possession.

41.     The Trustee's conduct transforms potential estate assets (Apple Card debt cancellation, regulatory enforcement claims) into benefits for Apple by preventing investigation and development of evidence supporting those claims.

## PROFESSIONAL STANDARDS REQUIRE EXPLANATION OF INEXPLICABLE CONDUCT

42.     The Trustee's decision to coordinate with Apple despite explicit knowledge of their conflicts requires immediate court intervention.

43.     No reasonable explanation exists for a trustee to agree to an adverse creditor's litigation stay request after being comprehensively informed of that creditor's multiple conflicts with estate interests and potential additional liabilities.

44.     The Trustee's refusal to provide any explanation for his decision-making suggests awareness that his conduct cannot be justified under professional standards or fiduciary duties.

## TRUSTEE'S CONDUCT IS INDEFENSIBLE REGARDLESS OF UNDISCLOSED ASSET STATUS

45.    The Trustee's conduct regarding the disclosed litigation creates an inescapable logical contradiction. His actions are professionally indefensible whether the undisclosed "mystery assets" that prompted case conversion are substantial or speculative.

46.    The Trustee's conduct creates an inescapable logical contradiction that violates his duties under either possible scenario. If substantial undisclosed assets exist that eclipse the disclosed $30 million litigation's importance, the Trustee violated 11 U.S.C. § 704(a)(9) by failing to communicate estate priorities, forcing Debtor to invest resources defending litigation he knew was no longer relevant. If the Trustee converted the case based on speculative hopes rather than identified assets, his conduct represents reckless estate administration—destroying a concrete $30 million asset while chasing unknown possibilities in violation of his fiduciary duties.

47.    The timeline demonstrates systematic mismanagement regardless of underlying asset status: converting to asset status without debtor consultation (August 14), employing expensive professionals for undisclosed recoveries (August 15), coordinating with adverse parties to destroy disclosed litigation (August 25), then scheduling the first discussion of disclosed legal claims after the damage was complete (September 8). This sequence violates basic estate administration principles and Fed. R. Bankr. P. 2015's requirements for trustee communication and reporting.

48.    The Trustee's refusal to explain his decision-making or priorities suggests awareness that neither scenario justifies his conduct. A trustee with legitimate substantial assets would readily explain why litigation became a lower priority; a trustee lacking such assets cannot explain destroying concrete litigation value for speculative alternatives without revealing professional negligence.

## TRUSTEE'S DISMISSIVE RESPONSE TO URGENT ESTATE BUSINESS DEMONSTRATES ABANDONMENT OF DUTIES

49.    After Trustee DeGiacomo inserted himself into this litigation through informal coordination with Defendant, Plaintiff immediately notified him that Defendant had weaponized his email for purposes far beyond what he had authorized. Exhibit E. Rather than addressing the urgent estate business he had helped create, the Trustee dismissed Plaintiff's concerns.

50.    This response demonstrates the fundamental contradiction in Trustee's position: he

claims he won't tell Plaintiff "what to do or what not to do" immediately after telling Defendant what to do (agree to a litigation stay); he disclaims being Plaintiff's attorney while simultaneously acting as her representative in federal litigation; and he acknowledges his role as "bankruptcy trustee for your bankruptcy estate" while refusing to address urgent estate business affecting the estate's primary asset.

51.    The Trustee's response was to refuse engagement until September 8, 2025 - well after the August 27 federal court deadline and after the completion of the procedural attack he had helped facilitate. By scheduling estate discussions after all litigation deadlines had passed, the Trustee effectively abandoned the estate's defense when his unauthorized actions were being exploited. This timing is not mere negligence - it represents willful refusal to address urgent estate business affecting the estate's primary asset.

52.    The Trustee abandoned the case and the Debtor, leaving the Debtor two days to file a response to Apple's Motion to Stay and to try to recover and protect the Estate all by herself, after Trustee enabled the very damage she was now forced to deal with. Exhibit H.

53.    Trustee DeGiacomo's position is legally untenable: he claims authority to agree to litigation stays while simultaneously disclaiming responsibility for the consequences of that agreement. This creates an impossible situation where Trustee has informal authority to make litigation decisions via email; Trustee disclaims formal responsibility for how those decisions are implemented; Debtor loses standing based on trustee's informal agreement; and the Estate loses protection when trustee refuses to monitor implementation

54.    Federal courts cannot operate under such procedural chaos. If trustees can make informal agreements affecting federal litigation, they must accept responsibility for monitoring and correcting how those agreements are implemented. The Trustee cannot have informal authority without formal accountability.

55.    The Trustee's dismissive response violates basic professional standards for estate administration. When a trustee's unauthorized actions create urgent estate business (particularly involving the estate's only known primary asset and multiple related federal litigation matters) the trustee has an immediate duty to address those consequences rather than scheduling discussions after the damage is complete.

56.    Model Rules of Professional Conduct require trustees to act competently and diligently in

representing estate interests. Refusing to address urgent estate business for two weeks while litigation deadlines pass represents abandonment of those duties.

57.     The Trustee's refusal to engage with the consequences of his informal litigation agreement demonstrates that he never had proper authority to make such agreements in the first place. A trustee with legitimate authority to control federal litigation would necessarily have procedures to monitor and respond to developments in that litigation.

58.     The Trustee's dismissive response confirms that his email to Defendant was an unauthorized communication from someone lacking both the authority to make litigation agreements and the competence to manage their implementation.

59.     If the Trustee intended to abandon the estate's litigation interests, formal abandonment procedures require court approval under 11 U.S.C. § 554 and Fed. R. Bankr. P. 6007. Informal dismissal of estate business through "Enough" emails does not constitute legal abandonment. However, the Trustee then cannot simultaneously claim authority to agree to litigation stays while abandoning responsibility for estate interests through informal dismissal. Either the litigation is estate property requiring proper administration, or it should be formally abandoned through bankruptcy court procedures.

60.     The Trustee's dismissive response to urgent estate business demonstrates that his informal email agreement with Defendant was unauthorized and unenforceable. No trustee with legitimate authority would refuse to address how that authority was being implemented in federal court proceedings affecting the estate's primary asset.

# LEGAL ARGUMENT

## TRUSTEE VIOLATED FIDUCIARY DUTIES

61.     Courts have called the trustee a "fiduciary" regarding his/her relationship to the debtor and creditors, which are often referred to as "beneficiaries" of the estate. *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983); *In re Heinsohn,* 231 B.R. 48, 65-66 (Bankr. E.D. Tenn. 1999).[2]

62.     As a fiduciary, a trustee's fiduciary duties include "the duty of care (i.e., the obligation not to act negligently), the duty of loyalty (i.e., the obligation not to act in the fiduciary's own interests),

---

[2] Steven Rhodes, *The Fiduciary and Institutional Obligations of a Chapter 7 Bankruptcy Trustee,* 80 AM. BANKR. L.J. 147, 156, 172

and the duty of obedience (i.e., the obligation not to act outside the fiduciary's permitted authority)." *In re Dalen*, 259 B.R. 586, 610 (Bankr. W.D. Mich. 2001).

63.    When a trustee fails to adhere to either the statutory or fiduciary duties on behalf of the estate, there may be a cause of action against the trustee under a theory of personal liability. 11 U.S.C. § 323 of the Bankruptcy Code also states that trustees have the "capacity to …be sued." Common allegations in lawsuits against bankruptcy trustees include the trustee's failure "to collect and reduce to money property of the estate as expeditiously and reasonably as possible, to protect assets of the estate, … to bring and defend lawsuits in a timely manner,… or to notice properly those matters which must be brought to the attention of parties in interest to the estate."[3]

## Trustee Violated Statutory Duties

64.    **11 U.S.C. § 704(a)(1)** requires trustees to "collect and reduce to money the property of the estate." Trustee's conduct directly contradicts this mandate by actively facilitating destruction of the estate's primary asset.

65.    **11 U.S.C. §§ 704(a)(1) and 704(a)(3)** require that if the property has value for the estate, the trustee must ensure that the debtors timely perform their intentions or the trustee should timely file a motion seeking the court's determination that the property is of consequential value or benefit to the estate to avoid the property being abandoned. Here, the Trustee is abandoning and forcing Debtor to also abandon estate property.

66.    **11 U.S.C. § 704(a)(7)** requires a trustee to have a system in place to timely respond to reasonable inquiries on behalf of debtors, creditors, attorneys, the court, and other interested parties.

67.    **11 U.S.C. § 704(s)** requires the trustee to be accountable for all property, including protecting and preserving assets. "If a loss occurs as a result of the trustee's failure to insure or protect estate property, the trustee could be subject to liability." (DOJ Handbook for Chapter 7 Trustees pg 4-7).

68.    **11 U.S.C. § 704(7)** requires the trustee furnish such information concerning the estate and the estate's administration as is requested by a party in interest.

69.    **11 U.S.C. § 554** requires trustees to either investigate and pursue estate assets or formally

---

[3] Elizabeth H. McCullough, *Bankruptcy Trustee Liability: Is there a Method in the Madness?* 15 Lewis and Clark L. Rev. 153, 158 (2011).

abandon them to the debtor. The trustee cannot simply ignore disclosed assets while allowing third parties to destroy them.

70.    **28 U.S.C. § 586** requires trustees to act with "integrity and competence." Trustee's conduct fails both standards.

71.    **Fed. R. Bankr. P. 2002** requires notice to interested parties before trustees take actions affecting estate assets. Trustee's ex parte coordination with Apple violated this fundamental requirement.

## TRUSTEE LACKS AUTHORITY FOR HIS ACTIONS

72.    The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment. *Mosser v. Darrow,* 341 U.S. 267, 274 (1951); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 7 (1st Cir. 1999).

73.    "A trustee, with court approval, may act as an attorney or accountant for the estate, if such employment is in the best interest of the estate." DOJ Handbook for Trustees pg 4-22; 11 U.S.C. § 327(d). However, "a trustee must be sensitive to the best interest of each individual estate and any conflict of interest problems that may be posed by acting as an attorney or accountant for the estate." DOJ Handbook for Trustees pg 4-22; 11 U.S.C. § 327.

74.    Here, the Trustee's informal email agreement was improper, has no legal effect, and has no immunity because the Trustee never sought bankruptcy court approval to control the litigation under Fed. R. Bankr. P. 6004; the Trustee never requested employment of specialized counsel under 11 U.S.C. § 327 for retaliation litigation; the Trustee never filed notice of appearance or motion to intervene in the federal litigation under Fed. R. Civ. P. 24; and the Trustee (per his professional webpage) is not admitted to practice in the Northern District of California and cannot act in that court.

75.    The general rule is that when the trustee is acting "within the discretionary bounds of his authority. *In re S. Found Corp.,* 641 F.2d 182, 184–85 (4th Cir. 1981). "A trustee will enjoy absolute immunity so long as he does not act in the clear absence of all jurisdiction, or at least acts under the supervision of the bankruptcy judge." *Gonzalez v. Musso,* No. 08-CV-3026, 2008 WL 3194179, at *2 (E.D.N.Y. Aug. 6, 2008). "A trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure to creditors and the court." See

*Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.),* 847 F.2d 931 942 (1st Cir. 1988) (citing *Mosser v. Darrow,* 341 U.S. 267, 274 (1951).

## WASTE OF ESTATE ASSETS

76.    The trustee has requested what appears to be tens of thousands of dollars to be invested in lawyers and accountants despite not disclosing what asset would already be vested or quickly obtainable, and could create such a value. "The threshold question for the employment of any professional is the necessity of employment. The trustee must determine whether the services of a professional are needed and whether the cost is warranted." DOJ Handbook for Trustees; 11 U.S.C. §§ 330 and 704(a).

77.    Trustee has created the worst possible scenario: incurring professional employment costs for unknown assets while simultaneously destroying the estate's only disclosed significant asset. This constitutes gross mismanagement requiring immediate intervention. A trustee loses judicial immunity when he "prevaricates or otherwise acts in bad faith." *Kowalski-Schmidt v. Forsch (In re Giordano),* 212 B.R. 617 624 (B.A.P. 9th Cir. 1997); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 7 (1st Cir. 1999).

# RELIEF REQUESTED

78.    WHEREFORE, Debtor respectfully requests this Court:

## EMERGENCY PROTECTIVE ORDER

79.    **ENJOIN** Trustee from taking any further action regarding the federal litigation without prior court approval;

80.    **PROHIBIT** any further ex parte communications between Trustee and any adverse parties, creditors, or litigation opponents regarding estate assets or litigation matters;

81.    **COMPEL** Trustee to file immediate written correction with the federal court in *Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.), clarifying that: a. His informal email agreement was unauthorized and without legal effect; b. He has not obtained court approval to control the litigation; c. He has not been admitted to practice in the Ninth Circuit; d. Any litigation coordination requires formal court procedures;

82.     **ORDER** that any future litigation coordination by Trustee must comply with: a. Fed. R. Bankr. P. 6004 - court approval for use, sale, or disposition of estate property; b. 11 U.S.C. § 327 - employment of specialized litigation counsel before assuming control of complex litigation; c. Fed. R. Civ. P. 24/25 - formal intervention or substitution procedures in federal court; d. Fed. R. Bankr. P. 2002 - proper notice to parties in interest;

83.     **COMPEL** Trustee to either: a. File proper motions for court approval to pursue the disclosed litigation, including employment applications for specialized retaliation and whistleblower counsel; OR b. Formally abandon the disclosed litigation to Debtor under 11 U.S.C. § 554 and Fed. R. Bankr. P. 6007 with proper notice and hearing procedures;

## COMPEL PROPER TRUSTEE ACTION

84.     **ORDER** Trustee to provide written explanation within **7 days** of this Order addressing: a. The specific basis for converting this case from "no asset" to "asset" status; b. Identification of assets that justified employment of accounting and legal professionals; c. The relationship, if any, between employed professionals' work and disclosed litigation assets; d. Current status and timeline expectations for estate administration;

85.     **COMPEL** Trustee to either: a. File proper motions for employment of counsel and court approval to pursue the litigation, or b. Formally abandon the litigation back to Debtor under 11 U.S.C. § 554;

86.     **REQUIRE** Trustee to file monthly written status reports with the Court and serve copies on Debtor, detailing: a. Progress on asset investigation and recovery efforts; b. Professional fees incurred and work performed; c. Estate priorities and resource allocation decisions; d. Any communications with third parties regarding estate matters;

87.     **MANDATE** that Trustee provide 14 days advance written notice to Debtor and the Court before: a. Taking any action affecting disclosed litigation assets; b. Coordinating with any litigation opponents or adverse parties; c. Making decisions that could impact estate asset values; d. Filing any motions or agreements in other courts;

## ADDITIONAL RELIEF

88.     **ESTABLISH** procedures for confidential estate matters that balance transparency with

legitimate confidentiality needs: a. Sealed status reports may be filed ex parte if necessary to protect ongoing investigations or attorney-client privilege; b. Public notice filings must be made when sealed reports are filed, stating general nature of confidential matter without disclosing specifics; c. Debtor notice required within 48 hours when any sealed filings are made affecting estate administration; d. Quarterly status conferences with Debtor to discuss estate progress within allowable confidentiality limits;

89.     **REQUIRE** that all future professional employment applications include: a. Detailed explanation of specific work to be performed; b. Relationship to identified estate assets; c. Expected timeline and cost estimates; d. Coordination plans with other employed professionals;

90.     **SCHEDULE** status conferences every **30 days** until Trustee demonstrates consistent compliance with all requirements of this Order;

91.     **GRANT** such other and further relief as the Court deems just and proper.

# CONCLUSION

92.     The Trustee's unauthorized coordination with an adverse creditor to destroy the estate's primary asset while refusing to provide any explanation or correction constitutes a clear breach of fiduciary duty requiring immediate court intervention. Without emergency relief, the estate's most valuable asset will be irreparably harmed, directly contrary to the interests of creditors and the estate.

93.     Wherefore, Debtor respectfully requests this Court grant the relief requested herein and establish clear procedural requirements that ensure proper estate administration regardless of underlying asset complexity or confidentiality requirements.

94.     In compliance with Local Rule 9013-1(b), supporting Declarations and Documents are concurrently filed with this Motion as Exhibits.

95.     I declare under penalty of perjury under the laws of the United States of America, and in compliance with Fed.R.Bankr.P. Rule 9011, that the foregoing is true and correct. Executed on August 28 2025 in Boston, Massachusetts.

Respectfully submitted,



/s/ Ashley M. Gjovik
*In Propria Persona*
18 Worcester Square, Apt 1
Boston, MA 02118
Dated: August 28 2025

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served upon parties (Trustee) via the Court's electronic filing system and email on or around August 28 2025 (when the pro se clerk posts it). The Trustee will also be served via email on August 28 2025.

Apple and the U.S Court are noticed via posting a copy of this Motion to the federal docket for *Gjovik v. Apple Inc,* 3:23-cv-04597-EMC (N.D. Cal.) August 28 2025.

Debtor's July 23 2025 Consumer Financial Protection Bureau whistleblower tip will be provided an updated with email service of this motion on August 28 2025.

# EXHIBITS

**Exhibit A** - Email Exchange Between Debtor and Trustee, July 22-23, 2025 (Debtor's disclosure of Apple Card conflicts and potential estate assets)

**Exhibit B** - Email from Debtor to Trustee, August 21, 2025 (Debtor's complaint about Apple's strategic attendance at 341 meeting and intimidation tactics)

**Exhibit C** – Record of CFPB 2024 Enforcement on the "Apple Card"

**Exhibit D** – Debtor's whistleblower tip to CFPB re: "Apple Card"

**Exhibit E** - Email Communications Between Debtor and Trustee, August 25, 2025 (Apple's stay request, Trustee's 27-minute agreement, and Trustee's "Enough" dismissal; Debtor's objections to Apple's weaponization of Trustee's email and requests for clarification)

**Exhibit F** - Email Communications Between Trustee, Apple, Apple, August 25 2025

**Exhibit G** - Apple's Federal Court Filings, August 25, 2025 (Emergency Motion to Stay and supporting documents, Case No. 3:23-cv-04597-EMC, Dkt. 247-248)

**Exhibit H** – Debtor/Plaintiff's Opposition to Apple's Federal Court Filings, August 25, 2025 (Emergency Motion to Stay and supporting documents, Case No. 3:23-cv-04597-EMC, Dkt. 247-248)