ASHLEY M. GJOVIK
2108 N. St. Ste 4553
Sacramento, CA 95816
(408) 883-4428
legal@ashleygjovik.com

*Pro Se* Plaintiff

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant
Apple Inc.

(Additional counsel on following page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>        Plaintiff,<br><br>   v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 23-cv-4597-EMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Dept:    Courtroom 5, 17th Floor<br>Judge:   Honorable Edward M. Chen<br>Date:    January 13, 2026<br>Time:   2:30 p.m. |

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:   +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
Apple Inc.

Plaintiff Ashley Gjovik ("Plaintiff") and Defendant Apple Inc. ("Defendant" or "Apple," and collectively with Plaintiff, the "Parties") hereby jointly submit this Joint Case Management Statement in advance of the January 13, 2026 Status Conference.

## I.   JURISDICTION AND SERVICE

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the Parties are diverse. Defendant has been served.

## II.   FACTS

<u>Plaintiff's Position</u>: From 2015-2021, the Plaintiff was employed as a Senior Engineering Program Manager at Apple in Cupertino, California. She received positive performance review, bonuses, raises, promotions, and Apple indicated they considered her "irreplaceable" and a "top performer." In 2020, the Plaintiff moved into an apartment in Santa Clara across the street from where Apple was conducting stealth computer chip manufacturing and releasing metrics tons of hazardous chemicals into the air and outside her windows. She became terribly ill and disabled and nearly died from the injuries. Other victims were also injured by Apple's emissions. In Sept. 2020, Plaintiff discovered the harm was caused by industrial chemicals but neither she nor EPA could locate the source until 2023. Apple knew in 2020 that it was responsible for these injuries.

In March 2021, the Plaintiff discovered her Apple office was on a toxic waste dump site, that Apple had not performed testing or maintenance for seven years, there was prior TCE exposure, and that the barrier to prevent TCE exposure was compromised. She complained to Apple and notified the U.S. EPA and Cal. EPA. Apple tried to conceal its activities at her office and the chip fab, tried to discredit the Plaintiff and ruin her reputation, and harassed her in order to try to silence her. Apple subjected her to severe and escalating retaliation including quadrupling her workload, removing her successful projects, assigning her projects that were destined to fail and made executives upset with her, ordering her to not talk to her coworkers about workplace safety or work conditions, harassing her friends, and opening farcical investigations into her concerns that were used to extract her medical records, intimidate her coworkers, and harass and threaten the Plaintiff.

In July 2021, the Plaintiff began speaking with the press about her concerns. The NYT wanted to draft an article about her office and her apartment. She also spoke with NYT about her

concerns about workplace safety related to COVID-19 and NYT published that article first and also cited her quote as the "Quote of the Day" for the paper. In late July 2021, Apple opened a formal investigation into the Plaintiff for her speaking with the NYT and Apple claimed she leaked confidential information by speaking out about her workplace safety concerns.

In July 2021, the US EPA then notified Apple that it was coming on site to inspect the vapor intrusion mitigation equipment due to the Plaintiff's tip. Then, Apple placed the Plaintiff on indefinite administrative leave. The Plaintiff filed retaliation complaints with NLRB, OSHA, Cal. Dept. of Labor, and other agencies and continued speaking with the press about workplace safety, corporate ethics, environmental compliance, and retaliation. Apple told the Plaintiff's coworkers that she was not coming back, refused to allow her to attend a training she was registered for, and told her not to talk to her coworkers. The EPA inspection found numerous issues including that Apple had configured the toxic TCE gas exhaust to reenter the building through the HVAC.

Apple then sent a Workplace Violence investigator to threaten the Plaintiff the day before her NLRB affidavit against Apple. She complained of "witness intimidation" but said she'd answer their questions in writing. Apple then vaguely declared she was fired for misconduct but refused to tell her what. Apple then mailed her possessions back to her broken and covered in glass shards. Since then, Apple attempted to defend their actions by making false statements and filing fabricated documents to the government, engaging in an extensive smear and harassment campaigns, interfering with Plaintiffs attempts to obtain work, and repeatedly engaging in criminal conduct including hacking, burglary, threats, extortion, and misuse of intimate images.

Apple's post hoc justification for firing the Plaintiff was that she "leaked" when she complained in an article titled "Apple Cares about Privacy Unless You Work at Apple," that Apple was violating their employee's privacy and autonomy including by capturing secret videos of employees and their families/friends, in their homes and during private activities like medical appointments, sex, or bathing; that Apple was coercively pressuring employees to allow Apple to collect extensive anatomical scans of employees faces and ears; and that Apple's lawyers leveraged naked photos of her in order to silence her about Apple's misconduct during Batterygate. Apple fired the Plaintiff a week after this article but only cited it a week after firing the Plaintiff and

1  claimed she violated an agreement in 2021 that wasn't signed and only covered 20 minutes in 2017.

2  <u>Defendant's Position</u>: Defendant disagrees with Plaintiff's characterizations of events. Plaintiff worked for Defendant from February 2015 until Defendant terminated her employment in September 2021 because she disclosed confidential product-related information and then refused to meaningfully participate in the internal investigation regarding that disclosure. In July 2018, Plaintiff voluntarily agreed to participate in a confidential user study of an internal and proprietary application (the "Application") and agreed to maintain strict confidentiality. On August 28, 2021, Plaintiff publicly disclosed on Twitter (now known as X) details about a proprietary study Defendant was conducting about a confidential Apple product that Plaintiff had agreed to keep confidential. On August 30, 2021, Plaintiff tweeted photographs and a video of herself created by the Application, thus disclosing Apple confidential information, and linked to a story published in a technology blog, in which she disclosed her participation in the Application study. Upon learning of her unauthorized disclosures, Defendant began an investigation. On September 9, 2021, an Apple investigator requested to speak with Plaintiff. Plaintiff refused to be interviewed. Defendant completed its investigation, concluded that Plaintiff had disclosed Apple confidential information, and terminated her employment. Apple had likewise terminated the employment of other employees who disclosed Apple confidential information. Defendant denies any wrongdoing.

## III. **LEGAL ISSUES**

<u>Plaintiff's Position</u>: Legal and mixed issues include causation, nexus, malice, animus, intent, pretext, protected activities, foreseeability, and offensiveness. When Plaintiff filed this case there were seemingly novel privacy issues which were later codified in state and federal statutes protecting the Plaintiff and condemning Apple's conduct.

<u>Defendant's Position</u>: Legal issues include: whether Plaintiff engaged in protected activity under Cal. Labor Code §§ 98.6, 1102.5, and/or 6310 and/or *Tameny*, and, if so, whether the protected activity was a substantial motivating reason for Defendant's decision to terminate Plaintiff's employment; whether Plaintiff is entitled to any relief and if so, the type and/or amount; and whether Plaintiff has adequately mitigated any damages she claims to have incurred. The relevant legal issues are only those related to the specific claims that remain in this case.

1  IV.   **MOTIONS**

2      <u>Plaintiff's Position</u>: Plaintiff intends to file a motion for summary judgment (as discussed
3  in prior Case Management conferences and which is the subject of this hearing).

4      <u>Defendant's Position</u>: Defendant is evaluating whether to file a motion for summary
5  judgment and/or partial summary judgment under Rule 56 for resolution of some or all claims.

6  V.   **AMENDMENT OF PLEADINGS**

7      <u>Plaintiff's Position</u>: If the court would like the Complaint to reflect the major fact patterns
8  in the evidence, then the Plaintiff will need to Amend or Supplement information from recently
9  produced documents, including that Apple was also secretly recording audio via the Gobbler
10 application (which reveals additional legal violations), put Plaintiff into a special access group that
11 automatically uploaded all of the recordings (audio, video, biometrics) to Apple, and that Defendant
12 opened a formal investigation into the Plaintiff in July 2021 due to her speaking with the NYT
13 about workplace safety concerns, prior to the events cited by Defendants for the termination, and
14 prior to suspending and terminating her in Aug.-Sept. 2021 (Dkt. 245).

15     <u>Defendant's Position</u>: No further amendments to the Fifth Amended Complaint should be
16 permitted. *See* Dkt. No. 179 at 34 ("No further amendment shall be allowed absent Court order.").

17 VI.  **EVIDENCE PRESERVATION**

18     <u>Plaintiff's Position</u>: Plaintiff disclosed toxic tort evidence preservation issues to Defendant.
19     <u>Defendant's Position</u>: The Parties have reviewed the Guidelines Relating to the Discovery
20 of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil
21 Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant
22 to the issues reasonably evident in this action. Defendant disagrees with Plaintiff's position.

23 VII. **DISCLOSURES**

24     <u>Plaintiff's Position</u>: Provided July 9 2024, amended Sept. 16 2025, & amendment pending.
25     <u>Defendant's Position</u>: The Parties have fully and timely complied with the initial disclosure
26 requirements of Fed. R. Civ. P. 26. Defendant has fully and timely complied with the initial
27 disclosure requirements of General Order 71 ("GO 71"). Plaintiff has not fully complied with GO
28 71's requirements (specifically, she has not confirmed that she has provided all documents under

(a)-(e), (h), and (j)).

## VIII. DISCOVERY

- **Discovery taken to date:**

Plaintiff's Position: Plaintiff filed request for production, interrogatories, and depositions. Apple denied most requests, delayed others, and withheld critical information and records for multiple years. Plaintiff has produced documents, interrogatory response, and deposition.

Defendant's Position: Defendant disagrees with Plaintiff's characterizations of its conduct. Written discovery and documents have been exchanged between the parties, and Defendant took seven hours of Plaintiff's deposition on December 16, 2025. Defendant was unable to complete the deposition and needs additional time to complete the deposition, which it intends to request from Magistrate Judge Westmore if Plaintiff will not agree.

- **Scope of anticipated discovery:**

Plaintiff's Position: Defendant has consistently refused to participate in discovery while instead manufacturing discovery conflicts, allowing issues to fester, and then raising the issues they created in order to justify additional delays and seek adverse judgments against the Plaintiff. The Defendant refuses to answer any additional interrogatories from Plaintiff, nor will it produce documents she requests, but Plaintiff already has sufficient evidence to prevail in Summary Judgement on the merits and oppose Defendant's formal written defenses. Defendant will not define what discovery needs to be completed, what facts its trying to find, or explain its defenses.

Defendant's Position: Defendant disagrees with Plaintiff's characterizations of its conduct. Defendant needs to complete Plaintiff's deposition and will seek additional time from Magistrate Judge Westmore if Plaintiff will not agree. Defendant is also in the process of issuing subpoenas to Plaintiff's identified health care providers. Defendant intends to conduct an Independent Medical Examination of Plaintiff pursuant to Rule 35. There may be a need for additional written discovery.

- **Proposed limitations or modifications of the discovery rules:**

Plaintiff's Position: Defendant refuses to create a discovery plan, enter an ESI agreement, or complete the 26(f) conference. If the Plaintiff's scheduling proposal is granted, any further discovery should only proceed under a protective order with court approval for scope to be justified

by each party in order to ensure discovery is not used to harass, delay, and waste resources.

Defendant's Position: Defendant disagrees with Plaintiff's characterizations of its conduct. Other than providing Defendant with additional time to complete Plaintiff's deposition, Defendant contends there should be no modifications of the discovery rules.

- **A brief report on whether the parties have considered entering into a stipulated e-discovery order:**

Plaintiff's Position: Plaintiff repeatedly requested this & Defendant repeatedly refused.

Defendant's Position: The Parties are currently negotiating an ESI order.

- **Proposed discovery plan pursuant to Fed. R. Civ. P. 26(f):**
  - **(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;**

Plaintiff's Position: The Defendant should be locked into its current incomplete, misleading, and fragmented disclosures and discovery responses for Summary Judgement and trial, unless it promptly makes a good faith effort to improve those response (~30 days).

Defendant's Position: On September 16, 2024, the Parties fully and timely complied with the initial disclosure requirements of Fed. R. Civ. P. 26. Defendant made its initial GO 71 disclosures on December 18, 2023 and has since supplemented them. Plaintiff has not fully complied with GO 71's initial disclosure requirements.

  - **(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;**

Plaintiff's Position: If Plaintiff's request to bifurcate merits and remedies is granted, then merit discovery would end prior to the Summary Judgement proceeding, and discovery for remedies should proceed as a Phase II and under a protective order requiring scope justification.

Defendant's Position: Discovery may be needed on the claims and defenses asserted in the pleadings. Non-expert fact discovery should be completed by March 31, 2026. Discovery should not be conducted in phases or be otherwise limited to particular issues.

  - **(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;**

Plaintiff's Position: Yes and concerns were raised to Judge Westmore.

Defendant's Position: The Parties are currently negotiating an ESI order.
- **(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;**

Plaintiff's Position: Defendant continues to abuse privilege and confidentiality claims and engaged in conduct during the Dec. 2025 deposition that likely violated the NLRA at least twice.

Defendant's Position: Defendant disagrees with Plaintiff's characterizations of its conduct. Defendant proposes that the Court enter a Rule 502(d) Order to govern this case.
- **(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed;**

Plaintiff's Position: See above.

Defendant's Position: None at this time, other than providing Defendant with additional time to complete Plaintiff's deposition.

- **Identified discovery disputes:**

Plaintiff's Position: 1) refusal to engage in 26(f) and discovery planning; 2) withholding material evidence; 3) refusal to respond to interrogatories for irrational reasons (motion to Judge Westmore to be filed shortly); 4) refusal to produce the majority of documents requested; 5) made prior false statements to the Plaintiff and Court about material evidence; 6) concealing the identities of key defense witnesses; 7) failure to provide initial disclosures of key actors in the suspension and termination; 8) use of Deposition to ask Plaintiff ambiguous, vague, misleading, and speculative questions; 9) repeated labor law violations throughout; 10) refusal to meet and confer.

Defendant's Position: Plaintiff has not fully complied with GO 71's initial disclosure requirements. The Parties continue to meet and confer regarding Plaintiff's objections and responses to Defendant's discovery requests. Defendant requires additional time to complete Plaintiff's deposition.

## IX.   RELATED CASES

Plaintiff's Position: Plaintiff has filed Notices of Pendency for related cases as they progress and concurrently files a Notice of Pendency regarding the NLRB case, U.S. EPA enforcement

1  action, and a new Environmental Citizen Suit related to Apple's chip fab. On Nov. 21 2025, the
2  NLRB notified Plaintiff that they will be "postponing the hearing" for her retaliation cases because
3  Apple "has expressed a strong interest in settling the cases." Apple has said nothing directly to the
4  Plaintiff about this and repeatedly refused to engage in ADR in this case.

5  <u>Defendant's Position</u>: On August 26, 2021, Plaintiff filed a charge against Defendant before
6  the National Labor Relations Board alleging Defendant retaliated against her because she engaged
7  in protected concerted activity. Plaintiff filed a second charge on September 16, 2021 alleging
8  similar allegations. On December 18, 2024, the NLRB issued a complaint pertaining to those
9  charges, and on September 25, 2025, the NLRB dismissed certain allegations from the complaint,
10 including all allegations that Defendant suspended and terminated Plaintiff for engaging in
11 protected concerted activities; Plaintiff appealed this dismissal on November 21, 2025. No hearing
12 has occurred with regard to the remaining allegations, and there have been no findings of fact or
13 legal conclusions relating to those allegations.

14 Plaintiff has also filed three NLRB charges relating to this litigation. Plaintiff withdrew the
15 first two charges. The NLRB dismissed the third charge on September 4, 2025.

16 On August 29, 2021 and November 2, 2021, Plaintiff filed whistleblower retaliation
17 complaints with the U.S. Department of Labor (DOL) alleging that her suspension and termination
18 amounted to retaliation in violation of the Sarbanes-Oxley Act (SOX), the Occupational Safety and
19 Health Act (OSHA 11(c)), and the Comprehensive Environmental Response, Compensation and
20 Liability Act (CERCLA). With respect to her SOX claim, this Court dismissed it with prejudice on
21 May 20, 2024. With respect to her CERCLA and OSHA 11(c) claims, DOL found no reasonable
22 cause on December 8, 2023. On April 29, 2024, the Secretary of Labor concluded on administrative
23 review that there was insufficient evidence to establish any violation of OSHA 11(c); this is a final
24 DOL decision. On January 7, 2024, Plaintiff requested a hearing before the Office of
25 Administrative Law Judges regarding her CERCLA claim; the ALJ dismissed that matter for failure
26 to state a claim on August 7, 2024. On August 21, 2024, Plaintiff filed a petition for review with
27 the Administrative Review Board; the petition remains pending.

28

**X.    RELIEF**

　　Plaintiff's Position: Plaintiff requests damages (compensatory, expectancy, consequential, punitive, nominal, restitution, tax offsets, interest, pro se attorney's fees, and legal costs), as well as injunctive and declaratory relief. Plaintiff notes Defendant's initial settlement offer in July of 2021, before suspending and firing her exceeded $500,000 but demanded a full liability waiver for toxic exposure.

　　Defendant's Position: Defendant denies that Plaintiff is entitled to any recovery in this case and denies making the "initial settlement offer" Plaintiff alleges above.

**XI.   SETTLEMENT AND ADR**

　　Plaintiff's Position: After firing the Plaintiff, Apple has refused to discuss any settlement other than suggesting the Plaintiff drop all claims and walk away with no remedy for the harm caused to her. The 2024 Conference was abused by Defendant who still had no intent to settle.

　　Defendant's Position: On January 13, 2025, the Parties participated in a settlement conference before Magistrate Judge Alex G. Tse. The case did not settle. Defendant disagrees with Plaintiff's characterizations of its conduct.

**XII.  OTHER REFERENCES** – N/A

**XIII. NARROWING OF ISSUES**

　　Plaintiff's Position: Defendant is engaging in "attrition litigation" including fabricating false complexity, delays, and issues which abuses the Plaintiff and wastes court resources. The remainder of the case should be bifurcated into Summary Judgement on liability with injunctive relief and a Jury trial on remedies. Discovery for liability (prima facie and defenses) is complete.

　　Defendant's Position: Defendant is evaluating whether to file a motion for summary judgment and/or partial summary judgment. Defendant believes it is premature to expedite the presentation of evidence at trial or to request to bifurcate issues, claims, or defenses. Defendant disagrees with Plaintiff's characterizations of its conduct.

**XIV.  SCHEDULING**

　　Plaintiff's Position: Plaintiff suggests the following schedule:

- Jan 23. 2026: Plaintiff to supplement Complaint to reflect new evidence (if needed)

1      - Jan. 30 2026: Liability discovery closes.
2      - Feb. 13 2026: Liability discovery disputes to be filed to Judge Westmore
3      - March 20 2026: Summary Judgement papers due from both parties.
4      - March 20 2026: Plaintiff to file motion for Injunctive Relief requesting immediate reinstatement with the pay and benefits at the time of her termination, requested to be granted upon a concurrent finding against Defendant regarding the termination in advance of the full trial on remedies and with that pay to be deducted from the final amount owed.
8      - April 3 2026: Opposition filings due from both parties.
9      - April 10 2026: Replies or joint briefing due from both parties.
10     - April 30 2026: Summary Judgement hearing & oral arguments
11     - May 2 2026: Discovery for damages/remedies closes.
12     - May-June 2026: Pre-trial motions & conference
13     - Late June 2026: Jury Trial on remedies

Defendant's Position: Defendant proposes the following schedule: October 5, 2026: trial; September 8, 2026: pretrial conference; August 13, 2026: expert discovery closes; July 30, 2026: rebuttal expert disclosures; July 9, 2026: initial expert disclosures; June 4, 2026: last day to hear dispositive motions; April 30, 2026: last day to file dispositive motions; March 31, 2026: non-expert discovery closed. Defendant disagrees that the late June 2026 trial date Plaintiff proposes is reasonable.

## XV. TRIAL

Plaintiff's Position: Plaintiff requests a five day Jury trial.

Defendant's Position: Defendant anticipates the Parties would need five days for trial.

## XVI. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff's Position: Filed at Dkt. No. 2.

Defendant's Position: Defendant filed the required certification. *See* Dkt. No. 11.

## XVII. PROFESSIONAL CONDUCT

Defendant's Position: Defendant's attorneys reviewed the Professional Conduct Guidelines.

## XVIII. OTHER MATTERS – N/A

Dated: January 6, 2026

By:     */s/ Ashley M. Gjovik*
ASHLEY M. GJOVIK
Plaintiff

Dated: January 6, 2026

By:     */s/ Melinda S. Riechert*
MELINDA S. RIECHERT
Attorneys for Defendant Apple Inc.

## CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION

Per L.R. 5-1(i)(3), I attest the other signatory has concurred in the filing of this document.

Dated: January 6, 2026      */s/ Melinda S. Riechert*
Melinda S. Riechert