Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | **Case No. 3:23-cv-04597-EMC** |
| Plaintiff, | **Plaintiff's Opposition to Defendant's Discovery Letter at Dkt. 276** |
| vs. | |
| **Apple Inc.**, *a corporation*, | |
| Defendant. | |

## Opposition to Apple's Discovery Letter at Dkt. 276

The Plaintiff files this Opposition to Defendant Apple's Discovery Letter at Dkt. 276. The Plaintiff has not filed objections to Apple's request to file subpoena and was not the one to bring this matter before the Court. She has produced documents, agreed to an IME, responded to Apple's interrogatories, and prior to Apple's filing, had already urged Apple to proceed with serving its subpoenas. Apple's only request is for something unusual, unnecessary, unripe, and found to be expressly prohibited by at least one state appellate court located within the Ninth Circuit. Apple also fails to explain why it has refused to serve its own subpoenas for almost a year or why it needs court intervention to subpoena itself.

For background, the active claims in this lawsuit include whistleblower retaliation and labor law violations alleged under the laws of the state of California. Over a dozen sub-claims are scheduled for trial including *Tameny* claims for termination in violation of public policy (including retaliation for protesting invasions of privacy); whistleblower retaliation in violation of Cal. Labor Code §§ 98.6, 1102.5, and 6310; retaliation for exercising state constitutional rights (including protesting invasions of privacy) violating § 96(k); and unlawful retaliation due to the employee's status as a victim of violent crime violating § 230(e), where the alleged crimes were committed by the employer itself, Apple Inc.

This case was filed under diversity jurisdiction when the Plaintiff was seeking employment on the East Coast, prior to her returning to California two weeks ago. The Plaintiff had, and now has again, an inalienable constitutional right to privacy under the California constitution which cannot be waived in such a way as to prevent her from objecting to substantial violations of her privacy or to compel her to consent to privacy violations. She also has self-executing rights to privacy and dignity as a victim of crime under her constitutional *Marsy's Rights*. The Defendant terminated the Plaintiff's employment in Sept. of 2021 and due to the long delays in the adjudication and litigation, the Plaintiff is now in Chapter 7 bankruptcy and unhoused, has no medical insurance, and is living in a motel in San José. The Plaintiff wants more than anyone to expedite these proceedings and resolve these matters as swiftly and effectively as possible.

### Plaintiff Opposes Apple's letter brief (Dkt. No. 276).

The Plaintiff agrees that she placed her emotional condition at issue in this case and agrees that Apple is entitled to discovery related to her emotional distress damages. The matters Apple spends the bulk of its letter arguing (relevance, *Vinson*, *Gavin* factors, patient-litigant exception, etc.) are not in dispute regarding Apple's right to discovery. The Plaintiff disclosed her medical providers in her Initial and Amended Disclosures; provided contact information in response to Apple's interrogatory; produced medical records without Apple filing a request for production; agreed to an FRCP 35 Independent Medical Exam; and told Apple to serve its subpoenas. The only matter before the Court is Apple's request that Plaintiff be compelled to sign a "stipulation" drafted by Apple in which Plaintiff "consents" to waiving her HIPAA rights. She declined to sign the stipulation but told Apple to serve its subpoenas. Apple refuses to serve its subpoenas and blames the Plaintiff.

### This Dispute Is Not Ripe

To the Plaintiff's knowledge, as of today, Apple has not served any subpoenas on any medical providers. Plaintiff has not filed objections to any subpoenas, has not filed or indicated she planned to file

a motion to quash, and has not sought a protective order. Plaintiff told Apple to serve its subpoenas. Apple refused. Nothing prevents Apple from serving its subpoenas today.

Apple's letter is structured as a motion to compel and refutes "objections" that Apple claims "have no merit." (Dkt. 276 at 4.) But the Plaintiff has not filed discovery objections with this Court and never served Apple a discovery response with objections because the stipulation is unnecessary. Under the Federal Rules, if a party objects to discovery, that party raises the objection. If a party does not, objections are waived. There is nothing for Apple to compel and nothing for the Court to overrule.

In its Order at Dkt. 270, this Court found that Plaintiff filed "prematurely" when the Defendant indicated it was in the process of resolving the issue. While the Plaintiff maintains her prior objections to those specific facts, the standard should apply to both parties. Here, Plaintiff told Apple if they insist on a waiver and are willing to compromise, that she would draft revisions. She confirmed on February 6 she was working on proposals, but Apple filed five days later without requesting an update and knowing she had just arrived in California. Apple was drafting subpoenas in early 2025, had nearly a year to serve them, and has chosen not to. Any urgency regarding the discovery deadline is a product of Apple's own delay.

### Apple's Letter Violates This Court's Standing Order

Apple's Exhibit is an informal email Plaintiff sent during negotiations — not a formal discovery response. The Court's Standing Order ¶ 14(b)(i)-(ii) limits exhibits to *"exact copies of interrogatories, requests for production of documents and/or responses, privilege logs, and relevant deposition testim*ony." An informal negotiation email is none of these. Apple extracted five "objections" from Plaintiff's January 27 email (her initial reaction sent less than an hour after Apple's request) and devoted four pages to refuting her frustration with Apple's demand she "consent" to waiving her privacy rights. The correspondence continued for eight more days, during which the discussion evolved considerably, but Apple ignores this.

Apple states that "Plaintiff initially refused to permit any discovery." (Dkt. 276 at 1.) Plaintiff's Jan. 27 email states: "I already agreed to a neutral medical exam. I also produced and can continue to produce records directly." (Dkt. 276-1 at 2). Plaintiff also sat for a nine-hour deposition at which Apple chose not to ask about emotional distress or medical injuries. Plaintiff refused the HIPAA waiver — not "any discovery." If Apple believed Plaintiff was refusing discovery, this is the first time it has raised the issue with the Court, and it does so under a request for a compelled stipulation rather than a motion to compel discovery, and with no evidence provided of the Plaintiff refusing any requests for discovery under FRCP.

Apple states that Plaintiff "provided no detail as to what she would agree was permissible." As recently as Feb. 4, Plaintiff wrote that if Apple narrowed the scope to something "reasonable and actually relevant," she would "draft something you could file with your requests to those providers" including "a document with me explaining what I was agreeing to release and why and I would sign that myself as a declaration in my own words." Apple states that Plaintiff "did not commit to a timeframe." On February 6, Plaintiff wrote: "Working on it this weekend and hope we'll be able to find common ground."

Plaintiff also told Apple she strongly preferred a Joint Letter. Apple refused. Apple then filed a unilateral letter raising issues beyond the scope of the meet-and-confer, attributing positions to Plaintiff that Plaintiff did not take, and attaching no evidence of Plaintiff's actual discovery responses or formal objections — despite her filing detailed responses to Apple's prior requests over the last year. Plaintiff also

informed Apple she was updating her disclosures with additional providers and would be filing a Notice of Pendency with details of medical injuries caused by other parties — directly relevant to Apple's stated alternative-stressors purpose. That Notice will be field concurrently with this Opposition today. The Amended Disclosures will follow shortly. Apple refused to wait and filed a Letter instead and would have to revise its proposed Stipulation anyways because it is missing providers and Apple was told that.

### Apple Has Declined Every Standard Discovery Tool

On February 2, Plaintiff emailed Apple saying she would not move to quash and that Apple should serve its subpoenas so the parties could work through any issues through the normal FRCP 45 process. Apple refused to serve its own subpoenas. Plaintiff offered to produce all medical records in her possession via FRCP 34 as a first step to identify gaps. Apple refused to serve a document request. Plaintiff offered to respond to interrogatories identifying other sources of harm, directly addressing Apple's contribution-analysis purpose. Apple refused to serve interrogatories. Apple had the opportunity to question Plaintiff about her medical history and alternative stressors at her full-day deposition and chose not to.

Apple's letter asserts that Plaintiff "has not produced records from many of these providers and has confirmed that she does not have access to some of them." (Dkt. 276 at 5.) Apple does not attach a request for production, a response refusing production, or any communication in which Plaintiff makes this statement — because none exist. Plaintiff offered to produce records and did produce records; but Apple refused to request records and implied she already produced too many documents, complaining in a Joint Status about how many pages of documents she sent Apple already.

The scope of Apple's subpoena is hopelessly overbroad, burdensome, invasive, and inappropriate. Apple refuses the simplest and least intrusive procedures and insists on the most invasive. "The scope of discovery must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." *Davis v. Superior Court*, 7 Cal. App. 4th 1008, 1014 (1992); *Britt v. Superior Court,* 20 Cal. 3d 844, 849 (1978); *Allen v. Superior Court*, 151 Cal. App. 3d 447, 449 (1984) (court abused its discretion by permitting disclosure without requiring "a less intrusive method of discovery"). The Plaintiff objects generally and does not waive any of her rights to object to admission of evidence. However, fighting Apple's requests will be time consuming and cause delays, so the Plaintiff is tolerating Apple's conduct.

### The Court Cannot Compel A "Stipulation" Of "Consent"

Here, today, the only thing Apple asks this Court to do is compel Plaintiff to sign a document Apple drafted (styled as a "stipulation") in which Plaintiff "consents" to waiving her HIPAA rights and authorizes the release of her medical records as defined by Apple to even include sound/video recordings. A stipulation is a voluntary agreement. FRCP 29. The Court has broad authority to issue discovery orders, but courts lack the power to order discovery beyond that permitted by the statutes. *Haniff v. Superior Court*, 9 Cal. App. 5th 191, 199 (2017). Neither the Federal Rules nor any statute authorizes a court to compel a party to sign a stipulation that purports to "consent" to waiving rights. Ordering nonconsensual "consent" is compelled speech, abuse of discretion, and a violation of basic human rights.

The Washington Court of Appeals addressed Apple's request directly in *Sastrawidjaya v. Mughal*, No. 47777-7-II (Wash. Ct. App. Oct. 18, 2016). There, a defendant asked the court to compel plaintiffs to sign stipulations for the release of medical records. The trial court ordered the plaintiffs to sign. The

appellate court reversed, holding that nothing in the court rules allows a trial court to compel a plaintiff to sign medical record stipulations. The court noted that discovery rules give courts broad authority, but that discretion extends only to methods authorized by the rules — and compelling a stipulation is not among them. Document production rules require a party to produce documents in its possession, but do not require a party "to stipulate to allow the opposing party to obtain documents independently." (Id.)

### Apple Wants, But Does Not Need, A HIPAA Waiver

Apple argues providers may not release records without a signed authorization. (Dkt. 276 at 1.) Apple has not tested this — no subpoena has been served and no provider has refused. Apple also stated during the meet-and-confer that Plaintiff's "medical records are not protected by HIPAA." (Ex. E). If that is Apple's position, it is unclear why Apple requires a HIPAA waiver. HIPAA provides three litigation-specific disclosure mechanisms, none of which require patient authorization: (1) a court order, 45 C.F.R. § 164.512(e)(1)(i); (2) a subpoena with notice to the patient, § 164.512(e)(1)(ii); and/or (3) a subpoena with a qualified protective order, § 164.512(e)(1)(v). See *Tucker v. AMCO Ins. Co.,* No. 1:17-cv-01761, Doc. 37 (E.D. Cal. 2019). The existing Protective Order (Dkt. No. 235) may already satisfy these requirements but Apple has pursued none of these paths. The patient-litigant exception under *Vinson v. Superior Court,* 43 Cal. 3d 833, 839 (1987), operates by operation of law. A signed waiver is not a legal prerequisite. If a signed waiver were a standard requirement in cases involving injuries, it would be part of the Federal Rules or standard litigation procedure, but it is not.

### Apple is One of the Providers on its own List

Apple's redacted provider list includes "AC Wellness Medical Group" at 20730 Valley Green Drive, Cupertino, CA 95014 (Dkt. 276-1, p. 7; Ex. D). AC Wellness Medical Group (a/k/a "Apple Wellness Center" on Plaintiff's medical records) is a wholly owned subsidiary of Apple Inc. (Ex. G, H). It appears to be the only provider on Apple's list for the period 2015 to approximately March 2020. The Plaintiff's current Complaint includes allegations about Apple and this medical clinic including that:

> "Gjovik transitioned her medical care to a different clinic and provider after her Apple primary care provider at AC Wellness refused to help her triage her 2020 medical issues (due to exposure to Apple's factory exhaust). Instead, she suggested Gjovik could be suffering from anxiety, and enrolled Gjovik in an Apple internal user study related to blood pressure, requiring Gjovik share her iPhone medical and fitness data with Apple, and participate in weekly life coaching sessions (while being exposed to Apple's solvent vapor and gas exhaust)."  (Dkt. 128 at ¶ 37).

The Plaintiff also complains in the operative Complaint that Apple violated the disability and privacy laws related to her medical records; the same records and providers Apple asks this court to compel her to consent to waiving her HIPAA rights for.

> "[HR] also told Gjovik she had to submit an ADA accommodation request if Gjovik did not want to be exposed to the vapor intrusion, attempted to get Gjovik to release all of her medical requests to "Apple Inc.," and then suggested Apple get her an air purifier at her desk for the TCE. Gjovik complained that ADA accommodations are not supposed to be used for employees to ask their bosses not to poison them. By July 2021, somehow Waibel even got ahold of a copy of Gjovik's May 2021 mammogram results." (Dkt. 128 at ¶ 112).

Apple is requesting this Court order Plaintiff to "consent" to waiving her privacy rights with Apple, for the benefit of Apple, in a lawsuit about Apple violating the Plaintiff's privacy rights and retaliating against her when she complained about those violations — where Apple's defense includes the claim that Plaintiff "consented" to the violations. The Plaintiff said she never consented. Apple now asks this Court to compel her to "consent."

Apple also does not explain why its wholly owned subsidiary would refuse to provide records to Apple if subpoenaed. Apple does not explain why it needs Plaintiff's HIPAA waiver to access records its own organization generated and maintains. Further, in Apple's response to Plaintiff's Request for Admission, Apple claimed to be unable to confirm if it provided medical treatment to the Plaintiff due to HIPAA (Ex. C). But then during meet/confer prior to filing this letter, Apple's counsel stated HIPAA doesn't apply to the records it wants to subpoena. Apple's HR team was also emailing Plaintiff's medical records describing the density of the Plaintiff's breasts while actively investigating the Plaintiff for "leaking" her workplace safety concerns to the New York Times. (Ex. B & F). Yet, now Apple requests this court to compel the Plaintiff to "consent" to waiving her HIPAA rights regarding Apple's same subsidiary, to purport to nullify Plaintiff's rights related to records already in dispute in the litigation.

## Conclusion

The Plaintiff does not dispute that her emotional condition is at issue and the Plaintiff does not dispute Apple's entitlement to damages-related discovery. However, the Plaintiff reserves all rights to object to the scope and substance of any subpoenas Apple may serve. Providers receiving subpoenas of this breadth would have independent grounds to object under FRCP 45(d)(3). If the Court considers granting any part of Apple's request, Plaintiff requests the Court require Apple to substantiate its allegations with evidence and direct Apple toward the standard discovery procedures Plaintiff has already agreed to cooperate with. See *Allen*, 151 Cal. App. 3d at 449.

Apple has not served subpoenas, document requests, or further interrogatories. Plaintiff offered to respond to all three. Apple refused all three. The only request before the Court is for a compelled "stipulation" of "consent" to a HIPAA waiver — for subpoenas that do not exist, addressing objections that were never filed. Plaintiff respectfully requests the Court deny Apple's motion. Apple should serve its subpoenas with the existing Protective Order and adequate notice to Plaintiff; serve FRCP 34 requests for records in Plaintiff's possession; and serve FRCP 33 interrogatories regarding alternative stressors. If disputes arise from properly initiated discovery, the parties can present them at that time.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik Plaintiff, Pro Se**
Dated: Feb. 16 2026, Alviso, San José, California

# Exhibit A

**Plaintiff's Response to Defendants Interrogatories, with Disclosure of Medical Providers, including Apple Wellness Center and AC Wellness.**

> 11.  Plaintiff identifies the name, business address, and phone number of each treating facility, consistent with the language of Defendant's Interrogatory. To the extent Defendant seeks the names of individual practitioners within those entities, Plaintiff is willing to meet and confer or respond to a more specific request.
>
> 12.  Plaintiff response to Defendant's Interrogatory No. 2 is as follows:
>
> **Provider 1**
> Name: Apple Wellness Center a.k.a. A.C. Wellness a.k.a. Apple Inc.
> Address: 20730 Valley Green Drive, Cupertino, California 95014
> Number: (408) 783-4000
> Source: https://apple-wellnesscenter.com/; https://www.acwellness.com/
>
> **Provider 2**
> Name: One Medical Center a.k.a. Amazon One Medical
> Address: One Embarcadero Center, Suite 1900, San Francisco, CA 94111
> Number: 1-888-ONEMED1
> Source: https://www.onemedical.com/contact-us/
>
> ---
>
> [1] Merriam Webster, Treatment (1)(c) & (2)(a), https://www.merriam-webster.com/dictionary/treatment
> [2] Merriam Webster, Injury (2)(a)-(b), https://www.merriam-webster.com/dictionary/injury
> [3] CACI No. 1604. *"Intentional Infliction of Emotional Distress - "Severe Emotional Distress" Defined,"* https://www.justia.com/trials-litigation/docs/caci/1600/1604/
>
> P's Response to D's Interrogatory | Set 1 | Case No. 3:23-CV-04597-EMC | 4

## EXHIBIT B

**Plaintiff's Response to Defendant's Interrogatories** *(Set Two)* **Served: May 29 2025; with Plaintiff's Objections Regarding Apple's treatment of Apple Wellness Center aka A.C. Wellness Records**

### IV. CLARIFICATION DEMANDED RE: SPOILIATION OF MEDICAL RECORDS

107. Plaintiff objects to requests related to her medical treatment at Apple Wellness Center (a.k.a. A.C. Wellness) from 2015-2020. These requests seeks information already in defendant's possession or control from defendant's provision of healthcare services to plaintiff from 2015-2020, violating the principle that discovery should not burden parties with providing information already available to the requesting party. Further objects as overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1).

108. Defendant's interrogatories seek medical records defendant already possesses from its provision of healthcare services to plaintiff from 2015-2020. See Exhibit I (example of defendant's own medical records for plaintiff). Additionally, defendant has already obtained plaintiff's 2021 medical records through third-party ADA requests to plaintiff's current healthcare providers, as shown in Exhibit J, despite denying such requests when confronted. ("*Apple has no medical records of yours. We do not have your medical records, I assure you.*" – 54:37 - 54:43, 5/2/25 Transcript, Exhibit C). I complained that "Apple Wellness Center is a privately-owned, for-profit subsidiary of Apple Inc., and I got all my digital records from them, which were sent through my emails and my Apple emails, and it shows that Apple started reporting on my email a long time ago. So, they clearly have it." Defendant then responded again: "*We do not have your medical records.*" (54:58 - 55:01, 5/2/25 Transcript, Exhibit C). To which I further complained, "And then [Apple Employee Relations] was passing around that mammogram. That was disturbing." (55:02 - 56:15, 5/2/25 Transcript, Exhibit C).

109. Attached at Exhibit I is an example of Apple Wellness Center's medical records for the Plaintiff. Attached as Exhibit J is a the receipt of Apple's request for Plaintiff's Medical Records at One Medical on 9/1/21. Attached at Exhibit K is a document from Apple's own discovery production, showing Apple Human Resources Employee Relations team discussing Plaintiff's mammograms in June 2021. These interrogatories therefore constitute bad faith discovery designed to harass plaintiff rather than obtain information, in violation of Fed. R. Civ. P. 26(g).

110. Defendant was plaintiff's healthcare provider from 2015-2020 and had a legal duty to retain plaintiff's medical records. Defendant's representation that it does not possess these records raises serious questions about potential spoliation of evidence that defendant was legally obligated to preserve. Alternatively, if defendant does possess these records but is misrepresenting their availability, this constitutes bad faith discovery in violation of Fed. R. Civ. P. 26(g).

# Exhibit C

**Defendant's Response to Plaintiff's Requests for Admission Set One.**

26 **REQUEST FOR ADMISSION NO. 30:**

27  Admit that between 2015-2020, Plaintiff received primary medical care from Apple Inc

28 directly or through Apple subsidiaries generally known as "AC Wellness" or "Apple Wellness."

- 15 -

APPLE'S RESPONSES TO PLAINTIFF'S
REQ. FOR ADMISSION, SET ONE
CASE NO. 23-cv-4597-EMC

1 **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

2  Apple objects to this Request on the grounds that it is vague and ambiguous, including but
3 not limited to the term "Apple subsidiaries generally known as 'AC Wellness' or 'Apple
4 Wellness.'" Apple will interpret this term to mean "AC Wellness Center LLC." Apple objects to
5 this Request as vague and ambiguous with respect the phrase "primary medical care."

6  Based on its understanding of the Request, Apple responds:

7  Apple has made a reasonable inquiry, and the information it can readily obtain is insufficient
8 to enable Apple to admit or deny whether "between 2015-2020, Plaintiff received primary medical
9 care … through" AC Wellness Center LLC. AC Wellness Center LLC is prohibited by HIPAA
10 from disclosing to Apple whether Plaintiff received medical care through AC Wellness Center
11 LLC. Apple denies the remainder of this Request.

12 Dated: August 4, 2025                ORRICK, HERRINGTON & SUTCLIFFE LLP

13                                         /s/ Melinda S. Riechert
14                                      MELINDA S. RIECHERT
                                        Attorneys for Defendant
15                                         APPLE INC.

# Exhibit D

**Apple's Feb. 2026 proposed Stipulation sent to the Plaintiff, as provided to the Plaintiff prior to Defendant's Letter.**

---

Plaintiff Ashley Gjovik and Defendant Apple, Inc. (collectively, the "Parties"), represent and stipulate to the following:

1. Trial is currently set for October 19, 2026.
2. Plaintiff claims that as a result of Defendant's alleged wrongful conduct, she has suffered or continues to suffer: emotional distress, humiliation, loss of enjoyment, annoyance, discomfort, inconvenience, disfigurement, pain and suffering, mental anguish, and reputational harm.
3. Defendant intends to subpoena Plaintiff's medical records so that Defendant may evaluate Plaintiff's alleged emotional distress and properly prepare its defense for trial.
4. Specifically, Defendant intends to subpoena medical records from the following providers:
   a. One Medical, 312 W. El Camino Real, Sunnyvale, CA 94087
   b. **AC Wellness Medical Group, 20730 Valley Green Drive, Cupertino, CA 95014**
   c. South Valley Neurology, 18431 Technology Dr, Morgan Hill, CA 95037

---

# EXHIBIT E

**Feb. 4 2026 email from Apple's counsel saying Plaintiff's records "are not protected by HIPAA."**

> **RE: Medical subpoenas**
>
> **From:** Riechert, Melinda <mriechert@orrick.com>     Feb 4
> **To:** Ashley Gjovik, Ashley M. Gjovik (Legal Matters), Perry, Jessica R., Mantoan...
>
> *Apple Computer*
>
> Ashley
>
> You are incorrect. I sent you the stipulation and subpoena on 1/27 at 9.31 am pacific. Therefore, we followed the proper process.

….

> We need to get the records from the providers. The fact that you agreed to a medical exam does not mean we don't get copies of the medical records from the providers. **Your medical records are not protected by HIPAA.** You have put your medical and mental condition at issue, and we are entitled to copies of the records from the providers. The fact that experts haven't been disclosed is irrelevant.
>
> Melinda Riechert

## Exhibit F

### May 2 2025 Meet/Confer transcript at Dkt. 220-9, 06/12/25.
### Filed in Opposition to Apple's Motion to Compel a Protective Order.

> Case 3:23-cv-04597-EMC     Document 220-9     Filed 06/12/25     Page 32 of 45
>
> [Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (54:37 - 54:43)
>
> Okay, Apple has no medical records of yours. We do not have your medical records, I assure you.
>
> [Ashley Gjovik (Pro Se)] (54:44 - 54:58)
>
> Apple Wellness Center is a privately-owned, for-profit subsidiary of Apple Inc., and I got all my digital records from them, which were sent through my emails and my Apple emails, and it shows that Apple started reporting on my email a long time ago. So, they clearly have it.
>
> [Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (54:58 - 55:01)
>
> We do not have your medical records.
>
> [Ashley Gjovik (Pro Se)] (55:02 - 56:15)
>
> And then Jenna was passing around that mammogram. That was disturbing. Jenna.
>
> Because then there was the ADA stuff, and you guys got the documents from... Oh, and no, I don't know if they're telling you the truth, because my one medical got an Apple request for that ADA thing for all of my medical records on September 1st. I got from my records from the doctor I requested for, like, all logs.
>
> So, Apple did request all my medical records September 1st, 2021. And all of this to say, I don't have to make a stink about all of this, if we can just have reasonable requests narrowed. But, like, if Apple's gonna do something so...
>
> And I looked it up. This is the kind of stuff that employers will do, and courts will say, don't do that. What are you doing?
>
> You're harassing the employee. Like, this falls in that category of weird stuff that's not terribly justified. So, if we can narrow it to something that you actually need and is justified and makes sense, happy to give it to you.
>
> But if you're gonna do brute force and threaten to compel, then I'm gonna bring up all sorts of stuff like this. Attaching the Jenna Mammogram email, attaching the request to one medical, attaching, you know, all this stuff, to be like, I don't even know what they're asking for.
>
> [Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (56:16 - 56:37)
>
> Okay, so let's go through the interrogatories. On number two, we asked you for the medical providers regarding the claims in the Fifth Amendment complaint. And you referred us to our initial disclosures.
>
> And what we're looking for is the documents that are responsive to that request.

[Ashley Gjovik (Pro Se)] (56:38 - 56:42)

Which I said I was producing separately, so I didn't know why there was an interrogatory in addition to the production.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (56:44 - 56:52)

So, we want to know which of your medical providers relate to the dismissed claims and which ones relate to the remaining claims.

[Ashley Gjovik (Pro Se)] (56:52 - 57:13)

We are gonna bring that in front of a judge if you guys pursue that, because one that's super messed up. Like, could you imagine if one of your daughters was going through this and a lawyer said that to them, of, I need you to distinguish all of your emotional trauma from when we dumped a bunch of toxic waste on your face, and then we're retaliating and ruining your life, because those can't be combined or overlapping. So, first things first, please separate those two.

That's really messed up.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (57:13 - 57:17)

Okay, if you can't distinguish, then you can give them all to us.

[Ashley Gjovik (Pro Se)] (57:18 - 57:50)

But if you want to- I'm giving you all the stuff, and I told you I already offered, which seems like a really big deal that you guys have not acknowledged. You can do a mental exam. You guys pay for it.

We can do a mental exam. It can be on the record. That seems like the best way for you to figure out this kind of stuff.

Get an expert to decide what kind of damage there is, what I went through, what kind of stuff triggered, whatever. Like, get a formal report about it. Like, an interrogatory or production of documents like that is not going to answer your question.

That's expert witnesses and testimony, you know? Like, that's way more complicated than interrogatory.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (57:50 - 58:12)

So, one of the things that the IME wants to see, the doctor who does the IME, wants to see is the contemporaneous medical records. So, you can either give us the medical records that relate to the remaining claims in this case, and if you can't distinguish which ones relate to the remaining claims in the case and the ones that were dismissed, then give us all the medical

**Turboscribe AI Transcription**

records.

[Ashley Gjovik (Pro Se)] (58:13 - 58:22)

I'm giving you all the medical records for everything pending, including appeal. And if it's specifically for the medical examiner person, I prefer just to give it to them directly if possible.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (58:23 - 58:33)

So, are you saying that all of the healthcare providers that you listed in your initial disclosures relate to the remaining claims in this case?

[Ashley Gjovik (Pro Se)] (58:36 - 59:51)

I am saying I gave you guys a long list of medical providers related to this overall case, including my pending Ninth Circuit ones, which I argue are, you know, very much part of this for protected activity, as well as, like, even if that was separate, the argument about punitive damages for traumatizing me after, you know, what I went through, all of it's meshed together. So, like, I don't, I'm not going to play any games of separating it myself. That would be expert witnesses of the medical examiners, but also for damages experts if we're going to do that.

So, like, that's not today. That's much later. I have no problem giving you medical records of everything related to all of my claims, in this case, in the Ninth Circuit case.

And I've been, you know, merging in DOL and LRB and stuff too, like, all together, because there's not much that's actually, like, separate. So, I'm not holding back anything. You guys were the ones that were holding back stuff on appeal or pending, settling pleadings.

But as far as, like, privacy goes, I would prefer, like, if the request for my medical records at this point, primarily, is for a medical exam, then I would prefer if there's a way just to give those documents to that doctor instead of having to give them to Apple would be preferable.

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (59:52 - 59:57)

Okay. So, we would need to subpoena the medical providers that and get their records from them.

[Ashley Gjovik (Pro Se)] (59:58 - 1:00:01)

You can't just me provide it, you have to get it directly from them?

[Melinda Reichert (Partner at Orrick, Herrington & Sutcliffe)] (1:00:01 - 1:00:19)

We have to get it from them. Because then we know we got everything. So, we need to know which medical providers we should subpoena.

We could either subpoena all of the people that you listed in your initial disclosures, and that's

Turboscribe AI Transcription

# Exhibit G

### News articles about Apple launching AC Wellness Center with Primary Medical Care for Employees.



CNBC, *Apple is launching medical clinics to deliver the 'world's best health care experience' to its employees,* Feb 27 2018, https://www.cnbc.com/2018/02/27/apple-launching-medical-clinics-for-employees.html

EXHIBIT H

**Apple's AC Wellness Medical Group webpage saying the group delivers** *"healthcare to the Apple employee population at Apple Wellness Centers."*

> 2/16/26, 5:06 PM                                     Careers — AC Wellness Medical Group
>
> **AC WELLNESS MEDICAL GROUP**
>
> # WE'RE HIRING.
>
> AC Wellness is dedicated to delivering high-quality healthcare to the Apple employee population at the Apple Wellness Centers. Our patient-centric care model drives us to source great talent from around the Bay Area and beyond. If you are interested in being a part of the team, have a passion for wellness and a concierge-like approach to the patient experience, visit our job site to see our current openings.

AC Wellness Medical Group, "Careers: We're Hiring", https://www.acwellness.com/careers, accessed Feb. 16 2026