Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, <br><br>Plaintiff, <br><br>vs. <br><br>**Apple Inc.**, *a corporation*, <br><br>Defendant. | **Case No. 3:23-CV-04597-EMC** <br><br> **Plaintiff's Motion to Quash the Feb. 20 2026 Sanctions/TRO/Contempt Private Phone Call Conference** |

## **TABLE OF CONTENTS**

**PLAINTIFF'S EMERGENCY MOTION TO QUASH FEBRUARY 20 CONFERENCE AND FOR RECONSIDERATION OF PROTECTIVE ORDER**    **2**

**ARGUMENT**    **3**

    Apple's Letter and the Court's Acceptance of the Request for a Conference are Only 1 of 2 Things    3

    The Designations Escalated by Apple all Represent Information in the Public Domain    4

    The Magistrate Judge Lacks Statutory Authority Over the Relief Apple Seeks    5

    Contempt Finding Would Resolve the Central Merits Dispute — Without Summary Judgment    6

    Multiple Independent Jurisdictional Bars Prevent Any Relief for Apple at this Juncture    7

    The Proceedings Violate Due Process and the Court's Standing Order    9

    The Protective Order Has Been Used Exclusively as a Gag Order    10

    Prior Experience With This Magistrate Warrants This Court's Oversight    11

    Apple Must Follow the Rules    12

**RELIEF REQUESTED**    **13**

# PLAINTIFF'S EMERGENCY MOTION TO QUASH FEBRUARY 20 CONFERENCE AND FOR RECONSIDERATION OF PROTECTIVE ORDER

Plaintiff Ashley M. Gjovik respectfully moves this Court on an emergency basis to **(1) quash the telephonic conference scheduled before Magistrate Judge Westmore, February 20, 2026, at 2:15 PM, (2) require Apple to file proper motions before this Court for the relief it seeks, and (3) reconsider the protective order entered at Dkt. 235.**

On February 19, 2026, Apple filed a five-page letter (Dkt. 280) requesting sanctions, a finding of contempt, a restraining order on Plaintiff's speech, compelled deletion of publications with speech of public concern, enforcement of a procedural "protective order" as if it was a court ordered personalized restraining order, and implied sealing of docket entries. All content protested by Apple is already public information, most of which was made public by Apple, and otherwise represent worker complaints about work conditions and workplace privacy violations.

Apple addressed the letter to the magistrate judge and demanded a telephonic conference within 48 hours. The call is currently scheduled as non-public, non-recorded, with no opposition briefing, and no evidentiary review. The Plaintiff requested until Monday, February 23 to file a response and the Magistrate implicitly rejected this request implying the conference would go forward without any filings or input from the Plaintiff, no evidentiary review, and no formal procure or recording/transcript. **The conference is scheduled for 2:15 PM Feb. 20 2026. It should not go forward.**

First, the magistrate judge lacks statutory authority over any of the relief Apple seeks. 28 U.S.C. § 636(b)(1)(A); § 636(e). There are also at multiple independent jurisdictional bars: the bankruptcy automatic stay, *Garmon* preemption, the Norris-LaGuardia Act, and the California Anti-SLAPP Act. Each of these prevent any relief regardless of procedure. Further, the proceedings violate the Fifth Amendment's due process requirements and the Court's own Rules and Standing Orders.

Finally, critically for your Honor, a contempt finding would resolve the central merits dispute in this case — whether Plaintiff was terminated for protected activity or for "leaking" — without summary judgment, without evidence, and without briefing. That question belongs before this Court, not the magistrate, and it belongs in a Rule 56 motion, not a private telephone call without evidence or briefing.

This Motion to Quash is filed concurrently with a formal Opposition/Objections filed in response to Apple's "Letter" (with exhibits showing the full content of the NLRB Charges, and social medial and blog posts); and a Notice of Pendency of a Motion for Sanctions in the Bankruptcy Proceeding.

# ARGUMENT

## Apple's Letter and the Court's Acceptance of the Request for a Conference are Only 1 of 2 Things

What is this Feb. 20 Conference? In its letter (Dkt. 280), originally sent via private email and not even filed to the docket, Apple asks the Court to "make clear to Plaintiff her obligations," to "address" her alleged breaches of the protective order, and to "make any further orders the Court may deem necessary to ensure compliance with its orders." The Plaintiff objected and demanded Apple file proper motions.

The magistrate scheduled a conference for the following day. Plaintiff objected again that the escalation was improper, Apple was not using proper motions for its requests, the matter was not a discovery dispute, the request was retaliatory, evidence must be reviewed, she must be able to file an opposition, any hearing must be recorded with a Court Reporter, and that Apple's conduct was harassment. The Court ignored every objection, scheduled the conference next day, with a private line, no Court Reporter or recording, and no confirmation any Opposition or evidence would be reviewed or considered. The court's own scheduling decisions tell Plaintiff and the public what is coming: the magistrate is going to take action as Apple requested with a predetermined view of the dispute.

At minimum — the floor — the conference will consist of a federal magistrate judge scolding and threatening a pro se worker-plaintiff to stop engaging in protected activity, based entirely on Apple's unsworn characterization of that activity, in a private unrecorded proceeding with no pending motion, no evidence, and no opportunity for the employee to be heard. That is not a function of a federal court. Nothing in Article III, the Federal Rules of Civil Procedure, or 28 U.S.C. § 636 authorizes a magistrate judge to summon a party to a private telephone call to deliver warnings and threats on behalf of the opposing party about the party's public speech, her NLRB charges, and her discussion of her own body and workplace conditions.

A verbal warning from a federal judge is not a neutral act — it presupposes that Apple's designations are valid, that the employee's speech is wrongful, and that the employee's characterization of her own workplace experiences as protected activity is wrong. Each of those is a contested issue in this litigation. The first is the subject of a pending challenge under the protective order which Apple refuses to engage with. The last is the central merits question heading to summary judgment. An informal warning adopts Apple's position on all of them without deciding any of them — and unlike a formal order, it cannot be appealed, cannot be reviewed, and will not appear in any record. It simply hangs over the Plaintiff, chilling her and her coworkers speech, with no mechanism to challenge it and no limit on its scope.

If the conference is instead intended to go beyond coercive threats and result in formal action — sanctions, a finding of contempt, a restraining order on speech, or an order compelling deletion of published expression (as Apple implicitly demands claiming irreparable harm if the Plaintiff does not delete posts and stop making statements) — then the remainder of this motion urgently applies.

## The Designations Escalated by Apple all Represent Information in the Public Domain

The employer's motion for contempt fails because the confidentiality designation on which it relies is invalid. A unilateral designation under a stipulated blanket protective order is not a judicial finding — it is a provisional label the designating party must defend when challenged. *Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th Cir. 2003); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

The N.D. Cal. Model Protective Order confirms that the order extends "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles," that "mass, indiscriminate, or routinized designations are prohibited" and expose the designating party to sanctions, and that "the parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not — without the submission of competent evidence — constitute good cause." N.D. Cal. Model Protective Order §§ 1, 5.1, 13.2.

The employer — a technology company whose publicly known products are menstrual/ovulation tracking software and bed-based vital-signs sensors — designated as "confidential" testimony in which the employee complained about being pressured to submit to employer-directed study of the employee's menstruation and cervical mucus, and about the employer requiring the employee's sexual partners to sign NDAs to sleep in a bed equipped with the employer's sensors.

That a menstrual-health technology company studies menstruation is not a trade secret; it is the company's publicly marketed purpose. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984). The employee disclosed no algorithms, sensor specifications, or study data — only complaints about workplace conduct. The designation is facially pretextual and sanctionable. *See Del Campo v. Am. Corrective Counseling Servs.*, No. C-01-21151 JW, 2007 WL 3306496 (N.D. Cal. 2007).

Even if the employee had shared the transcript itself, contempt cannot issue because the employee's own pre-existing knowledge is not "discovery material." The Supreme Court held that a discovery protective order survives First Amendment scrutiny only where it "does not restrict the dissemination of the information if gained from other sources." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984). The

employee did not learn about being interrogated about the employee's menstrual cycle from discovery — the employee lived it.

The Model Order recognizes this, excluding from its protections "any information known to the Receiving Party prior to the disclosure." N.D. Cal. Model Protective Order § 3. The employer's further claim that even acknowledging the designation's existence is a "leak" is self-refuting: the Model Order's challenge mechanism requires the challenging party to provide "written notice of each designation it is challenging" and "explain the basis for its belief that the confidentiality designation was not proper." *Id.* § 6.2. If identifying a designation were itself a violation, no party could ever challenge one.

Finally, the employer's attempt to weaponize the protective order to silence harassment complaints implicates public policies that independently bar contempt. The employee's statements are protected opposition activity under Title VII, 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Congress and California have specifically prohibited using confidentiality mechanisms to silence such complaints: the Speak Out Act of 2022, Pub. L. No. 117-224, invalidates pre-dispute nondisclosure provisions in harassment disputes; California's Silenced No More Act, Cal. Gov. Code § 12964.5 (SB 331), prohibits any provision preventing disclosure of unlawful workplace conduct. The employer is asking this Court to accomplish through a discovery protective order what it could not accomplish through a private NDA under either federal or California law. The motion should be denied, and the Court should consider whether the employer's designations constitute sanctionable abuse under Model Order § 5.1 and independent retaliation under Title VII and FEHA, Cal. Gov. Code § 12940(h).

## The Magistrate Judge Lacks Statutory Authority Over the Relief Apple Seeks

None of the relief in Apple's letter is within the magistrate judge's authority.

*Injunctive relief.* A magistrate judge cannot grant injunctive relief. Section 636(b)(1)(A) explicitly exempts "motion[s] for injunctive relief" from a magistrate's authority over pretrial matters. Apple seeks a restraining order on speech and compelled deletion of published posts. These are injunctive relief regardless of how Apple captions them. At most, the magistrate could submit proposed findings and recommendations to this Court under § 636(b)(1)(B), subject to de novo review. But that is not what is happening — Apple is seeking an immediate ruling on a telephone call this afternoon.

**Contempt.** A magistrate judge's contempt authority is sharply constrained. Summary contempt under § 636(e)(2) is limited to misbehavior in the magistrate's presence. Social media posts are not conduct in the magistrate's presence. Criminal and civil contempt under §§ 636(e)(3)-(4) are available only in cases

where the magistrate presides with the consent of the parties — this is a non-consent referral. For contempt occurring outside the magistrate's presence, the statute requires that "the magistrate judge shall forthwith certify the facts to a district judge" who then conducts the hearing and determines punishment. § 636(e)(6)(B)(ii). The Advisory Committee Notes to Fed. R. Civ. P. 73 confirm: "A hearing on contempt is to be conducted by the district judge upon certification of the facts and an order to show cause by the magistrate."

In practice, certifying facts requires finding facts. Finding facts requires evidence — sworn testimony, authenticated exhibits, briefing from both sides, and a record. What is scheduled for Feb. 20 is none of those things. The magistrate is convening a private, unrecorded telephone conference with no sworn testimony, no authenticated evidence, no briefing from Plaintiff, and no court reporter. If the magistrate questions Plaintiff on an unrecorded call and then summarizes what she believes Plaintiff said — without a transcript, without sworn testimony, without Plaintiff having filed anything — that is not fact-finding. There are no facts to certify because there has been no process by which facts could be found.

**The magistrate's own domain.** The magistrate recognized this boundary at the July 2, 2025 hearing where the protective order was adopted: "I want to make sure that I focus — stick to, you know, my domain which is discovery. Fortunately for me, I don't have to deal with all the rest of this case." (July 2, 2025 Tr. at 34:19-22). Apple's letter asks the magistrate to do exactly what she said she does not do: adjudicate contempt, impose sanctions, issue a speech injunction, and order deletion — none of which are discovery.

**Apple's own letter concedes this exceeds discovery.** Apple states that the underlying conduct "directly implicates the substantive issues" in the retaliation litigation and cites the "Confidentiality and Intellectual Property Agreement" (Dkt. 280, fn. 2) — a substantive contract claim — as independent grounds. Apple cannot simultaneously argue this is a routine discovery dispute properly before the magistrate and that it directly implicates the merits and involves contractual obligations independent of the protective order.

## Contempt Finding Would Resolve the Central Merits Dispute — Without Summary Judgment

This is the point that requires this Court's immediate attention. Apple says it fired Plaintiff for publicly discussing Apple's workplace studies. Apple's defense is that Plaintiff was "leaking" confidential information. Plaintiff's *Tamney* wrongful termination claim, her Labor Code § 1102.5 whistleblower claim, and her § 96(k) claim rest on the position that she was engaged in protected protest of invasions of privacy

under the California Constitution, Article I, § 1. Whether that speech was "leaking" or "protected protest" is the single most contested issue heading to summary judgment.

Apple's emergency letter frames the current dispute identically to its termination defense. Apple says Plaintiff "leaked" studies in 2021 and is "leaking" the same studies now. If a court finds Plaintiff in contempt for discussing the studies publicly — on a telephone call, without a motion, without evidence, without opposition — Apple will argue at summary judgment: "A federal court already found this speech was wrongful, not protected." Plaintiff's *Tamney* claim would be gutted — not through a Rule 56 motion with a statement of undisputed facts, evidence, opposition, and a hearing, but through a five-page discovery letter and an unrecorded phone call.

A finding would also establish breach of the IPA, giving Apple damages leverage it cannot currently obtain because the bankruptcy stay prohibits breach of contract claims and because the IPA terms Apple is currently trying to enforce were rescinded by the April 2025 NLRB settlement. Further, it would prejudice the NLRB proceedings, where three pending charges allege the designations are unlawful work rules, if there is even jurisdiction for this court to hear the same issues. The Court would be issuing an advisory opinion on a matter within the NLRB's exclusive jurisdiction.

Plaintiff warned the Court about this at the July 2, 2025 hearing. She told the magistrate that Apple's use of the protective order "appeared to be their attempt to do a summary judgment motion without summary judgment. They want to say they fired me for something confidential, whether or not if it was confidential." (July 2, 2025 Tr. at 6:22-24). That is a precise description of what Dkt. 280 is attempting to accomplish. This Court told Plaintiff at Dkt. 213 that she could "contest a designation." A contempt finding for contesting a designation would contradict this Court's own order.

## Multiple Independent Jurisdictional Bars Prevent Any Relief for Apple at this Juncture

***Bankruptcy Automatic Stay.*** Plaintiff is a Chapter 7 debtor (Case No. 25-11496, D. Mass.). The automatic stay under 11 U.S.C. § 362(a) bars "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor" (§ 362(a)(1)) and "any act to collect, assess, or recover a claim against the debtor" (§ 362(a)(6)). Apple has actual knowledge of the bankruptcy and retained bankruptcy counsel (Pillsbury Winthrop Shaw Pittman LLP). Apple seeks sanctions, contempt, and injunctive relief against the debtor and cites the IPA — a prepetition employment agreement — as independent grounds. Apple never sought stay relief.

In the Ninth Circuit, actions taken in violation of the automatic stay are void — not just voidable.

*Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571-72 (9th Cir. 1992). See also *In re Hruby,* 512 B.R. 262, 274 (Bankr. D. Colo. 2014) (employer must seek stay relief before pursuing injunctive enforcement of confidentiality provisions against Chapter 7 debtor). Any order entered on this would be a nullity with no legal effect. Apple's willful violation also exposes it to mandatory actual damages and potential punitive damages under § 362(k)(1). The Court should not permit a proceeding whose outcome will be void as a matter of law. A Motion for Sanctions against Apple for violating the Stay was also filed today and is filed concurrently as a Notice of Pendency.

**Garmon Preemption.** "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959); see also *Glacier Northwest, Inc. v. Teamsters Local 174*, 598 U.S. ___ (2023) (preserving Garmon's core holding).

Plaintiff's speech is at minimum "arguably" protected by the NLRA. Filing NLRB charges is protected under § 8(a)(4). Social media posts about workplace conditions are protected concerted activity under § 7. See *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978) (Section 7 protects employee communications about working conditions to the public). The NLRB has docketed three charges alleging Apple's designations are unlawful work rules. See also *Banner Health System*, 362 NLRB 1108 (2015) (employer confidentiality rules restricting employee discussion of workplace matters violate § 8(a)(1)). This Court must defer to the Board's exclusive competence.

Apple's own letter identifies Plaintiff's posting of her NLRB charge as one of the alleged "breaches." (Dkt. 280 at 3). Filing an NLRB charge and publicizing it is protected activity under § 8(a)(4). Apple is seeking sanctions for protected activity. That is textbook retaliation, and the NLRB — not this Court — has jurisdiction over it.

**Norris-LaGuardia Act.** "No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter." 29 U.S.C. § 101. Section 104(e) specifically prohibits injunctions against "giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." Federal law expressly protects the Plaintiff's conduct in publicizing her labor dispute with Apple about Apple's continued claims that worker complaints about these user studies are somehow "leaking."

Even where injunctive relief might theoretically be available, § 107 requires testimony of witnesses in open court with opportunity for cross-examination, review of evidence, findings of fact filed in the

record, a finding of substantial and irreparable injury, and a finding that public officers cannot furnish adequate protection. An unrecorded telephone conference satisfies none of these requirements.

*California's Anti-SLAPP Statute.* If Apple files the proper motions this Court requires — a Rule 65 motion, a contempt petition, or a sanctions motion — each would arise from Plaintiff's exercise of free speech and petition rights and would be subject to California's anti-SLAPP statute, CCP § 425.16, which the Ninth Circuit applies in federal court. *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999). Plaintiff's NLRB charges are statements before an official proceeding (§ 425.16(e)(1)-(2)). Her public posts about workplace safety and privacy are statements on issues of public interest (§ 425.16(e)(3)). Apple would bear the burden of demonstrating a probability of prevailing, *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002), and would face mandatory fee-shifting upon failure. § 425.16(c)(1). Apple cannot obtain relief through a letter, and proper motions would trigger anti-SLAPP — closing both doors.

## The Proceedings Violate Due Process and the Court's Standing Order

*Due Process. Contempt is quasi-criminal.* It requires specific written notice of the charges, reasonable time to prepare a defense, an evidentiary hearing with sworn testimony and cross-examination, and proof by clear and convincing evidence (civil) or beyond a reasonable doubt (criminal*). International Union, UMWA v. Bagwell*, 512 U.S. 821, 826-32 (1994); Taylor v. Hayes, 418 U.S. 488, 498-99 (1974); Fed. R. Crim. P. 42(a). Apple filed no sworn affidavits, no authenticated evidence, and no witness testimony. Plaintiff received less than 24 hours' notice. No opposition was permitted. The conference is unrecorded — meaning no record for this Court to review and no transcript for the Ninth Circuit on appeal. 28 U.S.C. § 753 requires verbatim recording of court proceedings.

A speech injunction triggers the most demanding constitutional protections. A prior restraint on speech is "the most serious and least tolerable infringement on First Amendment rights," carrying a "heavy presumption" against constitutional validity. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Compelled deletion of already-published speech is arguably more extreme than a classic prior restraint. See *Rasawehr v. Bey* (Ohio S. Ct. 2020) (unanimously striking down social media deletion order); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (mandatory injunctions subject to heightened standard). No First Amendment analysis appears anywhere in Apple's filing.

*The Standing Order.* The Standing Order requires five days for meet and confer, then one side files

a letter, then the other side files an opposition, then the judge decides. Apple's own letter admits Plaintiff contested the designations and initiated the meet and confer prior to Apple's escalations, but that Apple refuses to engage in meet/confer or substantiate the designations prior to requesting sanctions (Dkt. 280 at 2). Prior to Apple ever responding to a single designation challenge — Apple emailed the courtroom deputy requesting an emergency conference. The meet and confer process has not even begun because of Apple's refusal, let alone concluded. Apple is demanding punishment for a dispute it refuses to adjudicate.

The Standing Order expressly says any Motion for Sanctions cannot be filed until the preliminary meet/confer, letters, and adjudication is complete. The magistrate also established five business days for oppositions at the 2025 hearing, rejecting Apple's proposal to deny Plaintiff the right to file oppositions and stating that such a restriction would "start to sound like interfering with the opportunity for both sides to be heard." (July 2, 2025 Tr. at 35:25-36:2). Apple's emergency letter achieved the same result the magistrate rejected: Plaintiff requested time to respond and received none. Apple's filing violates the orders in that it seeks to punish the Plaintiff prior to ever adjudicating the merits of the underlying dispute.

## The Protective Order Has Been Used Exclusively as a Gag Order

This Court should know what Apple has done with the protective order it granted. Apple has designated **zero** produced documents. Apple confirmed this as recently as February 10, 2026. Apple has also withheld approximately 98% of the documents Plaintiff requested. The order that was obtained to facilitate document production has facilitated none.

Apple initially designated pages 66 through 305 of a 336-page deposition transcript — approximately 72% — under a blanket designation that violated the protective order's prohibition on "mass, indiscriminate, or routinized designations." That designation remained in effect for 50 days. When Apple narrowed it, approximately 99% of the previously designated material was conceded non-confidential. The remaining designations — over 140 terms on an unsigned, undated six-page PDF — included facially absurd entries such as the letter "N" and the word "hardware."

The designations at the center of Apple's emergency letter are not product names or technology terms. They are Plaintiff's complaints that Apple should not be asking employees about their menstruation, should not be monitoring employees' ovulation, should not be requesting employee's sex partners sign NDAs about sleeping in the employee's beds, and should not be studying employees' cervical mucus. Apple's counsel reviewed the transcript, identified each instance where Plaintiff protested invasions of her bodily privacy and advocated for coworkers, and designated those complaints as Apple Confidential. The

subject matter of the designations is inseparable from the protected concerted activity at issue in this case.

Both courts understood the protective order as a document-handling mechanism. The magistrate explained it as governing "confidential information that is ***produced*** to you in this litigation." (July 2, 2025 Tr. at 13:18-23). This Court wrote that "even if Apple designates certain ***documents*** as confidential, that does not bar Ms. Gjovik from contesting a designation." Dkt. 213 at 3. Both said "documents." Neither contemplated that Apple would designate zero documents and use the order exclusively to designate an employee's spoken complaints, then seek contempt for the employee's continued public speech.

A confidentiality designation governs how material appears in court filings — redacted or under seal — and limits access within the litigation. It does not prohibit a party from discussing her own experiences on social media, publicizing her NLRB charges, or petitioning the government about workplace safety. Apple has never cited any provision of the protective order that prohibits public discussion of the general subject matter of designated material — because no such provision exists.

When Apple claims its designations operate as a prohibition on Plaintiff's speech ***outside*** of court — that Plaintiff cannot discuss these topics on social media, in blog posts, in NLRB charges, or with coworkers — Apple is not enforcing a litigation designation. Apple is imposing a work rule. The legality of employer work rules restricting employee speech about working conditions is a matter for the NLRB. *Banner Health System*, 362 NLRB 1108 (2015). That is why Plaintiff filed NLRB charges, and that is why three charges are now pending.

Apple's letter (Dkt. 280, fn. 2) also cites the "Confidentiality and Intellectual Property Agreement" as independent grounds for suppressing Plaintiff's speech. This is the same agreement Apple promised the NLRB it would stop enforcing in the April 2025 national settlement (Case No. 32-CA-284428). That settlement required Apple to rescind overbroad confidentiality policies, post a nationwide notice promising not to discipline employees for discussing working conditions, and cease enforcing its "Proprietary Information" definition to the extent it covered terms and conditions of employment.

The settlement included a self-executing default provision: upon non-compliance, the Regional Director would reissue the October 2024 complaint, Apple's allegations would be deemed admitted, and the Board could enter a full remedy without trial. Apple is citing to this Court the very agreement it told the NLRB it would no longer enforce.

### Prior Experience With This Magistrate Warrants This Court's Oversight

Plaintiff raises these facts not to relitigate the July 2, 2025 hearing, but to explain why this Court

Plaintiff's Motion to Quash | Case No. 3:23-cv-04597-EMC | Page 11

— not the magistrate on an unrecorded telephone call — must decide the issues Apple has raised. At the July 2 hearing, the magistrate stated she would not read Plaintiff's filings: "I'm not going to read all of these pages and pages." ( July 2, 2025 Tr. at 13:4-7). Those filings included three NLRB charges and complaints, the NLRB settlement in which Apple agreed to stop enforcing the exact confidentiality provisions now at issue, the meet and confer transcripts documenting Apple's counsel's conduct (including her explicit statement that Plaintiff "could be held in contempt" for violating the order), and the Motion to Quash explaining why the protective order would function as a gag order. These materials are the foundation of the dispute Apple is now asking the magistrate to adjudicate on an emergency call. The magistrate declined to review them.

The magistrate opened the hearing by diagnosing the problem as Plaintiff's personality — "it's too personal for you ... you can't separate yourself and your personal feelings and emotions" (id. at 3:10-17) — before any engagement with substance. Plaintiff was pressured to sign the protective order that day: "Ms. Gjovik, can you sign it as soon as possible? ... Today would be great." (Id. at 18:10-14).

Apple's counsel weaponized Plaintiff's private mental health disclosures, reading from a private email about the Boeing whistleblower's suicide and Plaintiff's PTSD to justify cutting off meet/confer, asked to prohibit the Plaintiff from being able to file Oppositions, and repeatedly accusing the Plaintiff of having meritless claims and suggesting she should be on a vexatious petitions list. (Id. at 49:1-50:21). The same counsel stated she could not agree to refrain from harassing Plaintiff during the deposition: "There's always a condition to it. 'You have to agree not to harass me.' ... I can't agree to that." (Id. at 47:22-24). The designations from that deposition where counsel insisted upon her "right" to "harass" the Plaintiff, are now the basis for Apple's contempt request.

These proceedings should be before this Court, on the record, with proper process. Plaintiff is willing to attend hearings with full due process protections — briefing, evidence, a court reporter, and a public proceeding. Plaintiff should not be required to attend a private, unrecorded conference where these dynamics will recur without any record for this Court to review.

## APPLE MUST FOLLOW THE RULES

If Apple wants a restraining order on speech, Apple must file a Rule 65 motion before this Court — with affidavits, a showing of irreparable harm, likelihood of success on the merits, balance of equities, public interest, and strict scrutiny analysis. Fed. R. Civ. P. 65(a)-(b); *Winter v. NRDC*, 555 U.S. 7 (2008). Any speech injunction must "state its terms specifically and describe in reasonable detail the act or acts restrained." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

If Apple wants sanctions, Apple must file a Rule 11 motion with the required 21-day safe harbor (Fed. R. Civ. P. 11(c)(2)) or a Rule 37 motion, per N.D. Cal. Civil L.R. 7-8. If Apple wants a contempt finding, it must file a petition for contempt or seek an order to show cause before this Court with full due process protections. If Apple wants docket entries sealed, it must file a motion under N.D. Cal. Civil L.R. 79-5 meeting the "compelling reasons" standard. See *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

If Apple believes Plaintiff breached the IPA — which Apple cites at Dkt. 280, fn. 2 — Apple must file a counterclaim or separate breach of contract action. But the bankruptcy automatic stay prohibits that until Apple obtains stay relief. There is no shortcut.

None of these remedies are available through a five-page discovery letter and a next-day telephone conference. Apple is represented by Orrick Herrington & Sutcliffe and Morgan Lewis & Bockius — firms that know exactly what filings are required for each type of relief. The decision to proceed by letter was deliberate, because proper motions require proper process.

# RELIEF REQUESTED

**Plaintiff respectfully requests:**

1. **Quash the February 20, 2026, 2:15 PM conference.** The magistrate judge lacks statutory authority over the relief Apple seeks, the proceedings violate due process, the bankruptcy automatic stay renders any resulting order void, and the conference risks resolving the central merits question in this case without summary judgment.

2. **Order Apple to file proper motions before this Court.** If Apple wishes to pursue sanctions, contempt, injunctive relief, or speech restrictions, Apple must file the appropriate motion under the applicable rule or statute — with proper notice, briefing, sworn evidence, and an opportunity for Plaintiff to respond.

3. **Reconsider the protective order (Dkt. 235).** This Court's May 14, 2025 order (Dkt. 213) stated that the Motion to Quash appeared "premature" and that "even if Apple designates certain documents as confidential, that does not bar Ms. Gjovik from contesting a designation."

Those circumstances have changed. Apple has made designations — not of documents, but of Plaintiff's complaints about employer misconduct. Plaintiff contested them. Apple is now seeking contempt for the contestation — which contradicts this Court's assurance that Plaintiff could contest designations.

Apple's position requires the court to simultaneously holds that that NLRA-protected activity is sanctionable misconduct, to enforce an agreement the NLRB required Apple to rescind due to it violating federal labor statutes, and to issue an injunction Congress expressly prohibits. Any entertainment of Apple's escalations on this matter is contributing to Apple's anti-labor conduct which the NLRB already found violates the NLRA and chills workplace organizing.

Further, on Feb. 18, Apple claimed the Plaintiff "leaked" information that was efiled to this court on Feb. 17 in the Notice of Pendency at Dkt. 278 with the full unredacted NLRB charge and cover letter at pp. 40-73. The blog post and Twitter/X posts at issue are also now filed as Exhibit to the Opposition/ Objections. This court can see that the words that Apple claims are "confidential" are literally "menstruation," "cervical mucus," "co-sleepers," "sexual activity," and "ovulation" -- and phrases include "measuring female employee's cervical mucus" and "the cervical mucus secretion." The Plaintiff was complaining it was inappropriate and improper for Apple to involve itself in its employees genital secretions and sexual activity, especially for commercial purposes where it should just pay for legitimate consensual data through normal processes, not coerce its engineering employees to let Apple examine, track, and "study" the moisture levels of their vaginas during the workday.

Every prediction Plaintiff made in her May 13, 2025 Motion to Quash (Dkt. 211, 205 pages) has materialized. The protective order should be vacated, or at minimum, the designations at issue should be affirmatively ordered to not be enforced in any way pending proper adjudication. If Apple thought their designations were legitimate, it would have signed and dated them, actually served them, and had no issue adjudicating them through normal channels, but instead Apple is doing this.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed Feb. 20 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816