JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>              Plaintiff,<br><br>       v.<br><br>APPLE INC.,<br><br>              Defendant. | Case No. 23-cv-4597-EMC<br><br>**DECLARATION OF MELINDA S. RIECHERT IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Date:        April 2, 2026<br>Time:        1:30 p.m.<br>Dept:        Courtroom TBD<br>             1301 Clay Street<br>             Oakland, CA 94612<br>Judge:       Honorable Kandis A. Westmore |

I, Melinda S. Riechert, declare as follows:

1. I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. ("Apple") in this action. I submit this declaration in support of Apple's Motion to Enforce Protective Order. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2. As counsel for Apple, I deposed Plaintiff in this action on December 16, 2025. A true and correct copy of excerpts of Plaintiff's deposition transcript is attached as **Exhibit A**.

3. On January 7, 2026, the certified court reporter provided the transcript of Plaintiff's December 16, 2025 deposition to me via email.

4. On February 4, 2026, counsel for Apple provided its more limited and targeted Confidentiality designations for the deposition transcript by emailing them simultaneously to the court reporter and Plaintiff. A true and correct copy of Apple's confidentiality designations for the transcript of Plaintiff's December 16, 2025 deposition is attached as **Exhibit B**.

5. Attached as **Exhibit C** is a true and correct copy of an email I sent to Plaintiff on February 18, 2026, and the response I received from her two hours later.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed February 26, 2026 in Menlo Park, California.

Dated: February 26, 2026

_/s/ Melinda S. Riechert_
Melinda S. Riechert

RIECHERT DECL. ISO APPLE'S MOT. TO
ENFORCE PROTECTIVE ORDER
CASE NO. 23-CV-4597-EMC

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**CERTIFIED TRANSCRIPT**

ASHLEY GJOVIK,

      Plaintiff,

vs.                   CASE NO. 23-cv-4597-EMC

APPLE INC.,

      Defendant.

_____/


VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION OF

ASHLEY MARIE GJOVIK


Pages 66 to 305 MARKED CONFIDENTIAL


DATE:         Tuesday, December 16, 2025

TIME:         9:07 a.m. - 5:53 p.m.

LOCATION:    (All attendees appearing remotely.)

REPORTED BY: JULIE L. ANDERSON, CSR
             Stenographic California CSR No. 11422


             Talty Court Reporters
             2131 The Alameda, Suite D
             San Jose, California 95126

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

```
 1   next section of this deposition as confidential
 2   pursuant to the protective order.
 3   BY MS. RIECHERT:
 4       Q.  Any information that -- testimony you give
 5   until I say it's not confidential pursuant to the
 6   protective order is going to be covered by the
 7   protective order.  Do you understand that?
 8       A.  No.  How can you claim that my statements
 9   are confidential if what I said is not confidential?
10       Q.  Because under the protective order, I have
11   the right to designate deposition testimony as
12   confidential.  If you disagree with that, then you
13   have the right, under the protective order, to
14   follow the procedures in the protective order.
15       A.  Yeah, but I believe you -- sorry.  Go ahead.
16       Q.  But meanwhile, I'm designating this as
17   confidential pursuant to the protective order.  And
18   if you disagree, then follow the procedures in the
19   protective order.
20       A.  Yes.  But, Melinda, I don't think you can
21   just say -- you don't know what I'm going to say and
22   if I say stuff that's clearly not confidential, you
23   just can't proactively say it's confidential.
24       Q.  I have the right to do that under the
25   protective order, and you have the right to
```



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1      A.  From August 2018, I don't.

2      Q.  Okay.

3          MS. RIECHERT:  It's 12:00 o'clock.  Time for

4    a lunch break.  How long -- let's go off the record

5    and then we'll discuss how long everybody needs.

6          THE VIDEOGRAPHER:  This marks the -- this

7    marked the end of Media Number 2.  We are now going

8    off the record.  The time is 12:06 p.m.

9          (Lunch recess:  12:06 p.m. to 1:02 p.m.)

10                      -oOo-

11          ::: AFTERNOON SESSION :::

12          THE VIDEOGRAPHER:  We are going on the

13    record at 1:02 Pacific Standard Time.  This marks

14    the beginning of Media Number 3 in the deposition of

15    Ashley Gjovik on December 16, 2025.

16          Please continue.

17    BY MS. RIECHERT:

18      Q.  With respect to the protective order issue,

19    we are designating this portion of the transcript as

20    subject to the protective order.  Once we get the

21    transcript itself, we will go back to you and tell

22    you which words or which sentences or which

23    questions or which answers we want to be held

24    confidential.  So right now we're being cautious

25    because I don't know what your answers are going to

1  be by designating everything related to this as

2  confidential, but that doesn't mean I intend to

3  permanently keep it that way.  As soon as I get the

4  transcript, I will let me know which words, which

5  sentences, we need to designate as confidential, and

6  the rest of it we'll unrelease.

7        Does that make sense?

8     A.  Yeah.  Thank you, ma'am.  And then so I can

9  request a copy too so it's, like, a joint thing?

10  It's not just --

11    Q.  Yes.

12    A.  Okay.

13    Q.  Yeah.  You'll have a copy of the transcript.

14  When we get a copy, you'll get a copy.  And you --

15  and then I will send you an email maybe with the

16  transcript and say, "Here are the parts that we deem

17  confidential.  The rest of it is not subject to the

18  protective order."

19    A.  So do I -- do I still have to request my own

20  or you guys -- I just get a copy when you get a

21  copy?

22    Q.  That's up to the court reporter whether they

23  give you a copy or you have to go somewhere and look

24  at it or whether you have to buy it.  I don't know

25  anything about that.  I know I have to buy it.

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

 1   And, yes, I did worry about saying no to stuff, but

 2   there was some stuff I'd just draw the line, I

 3   didn't want to do.

 4       Q.  But you said to Dan, "Hey, they asked me to

 5   participate in this ear study, and I don't want to

 6   do it," is that what you said essentially?

 7       A.  I think I was complaining more generally of,

 8   like, Apple is doing some really invasive stuff that

 9   seems weird.  Like when they were doing the

10   ███████████████████████████████████████

11   ███████████████████████████.  I was pointing out,

12   like, I think Apple is crossing some lines --

13           (Reporter clarification and admonition.)

14           THE WITNESS:  They were doing ██████████

15   studies where they were ████████████████████████

16   ██████████████, and I said I think that's too far.

17   BY MS. RIECHERT:

18       Q.  And did you ask to participate in that

19   study?

20       A.  No.

21       Q.  Or did you agree to participate -- excuse

22   me -- in that study?

23       A.  Oh, and the one I also pulled out of --

24       Q.  Hold on a second.  I didn't hear the answer

25   on the ██████████ study.

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1      A.  No.

2      Q.  Okay.  Are there other -- was that in 2021

3   by the way?

4      A.  I think they started asking about that stuff

5   in, like, 2019.  And then they were still asking

6   in -- by 2021.  I said no.

7      Q.  Okay.  Were there other studies that you

8   were asked to participate in that you said, no,

9   thank you?

10      A.  Yes.  There was one that I had signed up for

11   and pulled out because I didn't realize the terms

12   until it was underway and it bothered me, which was

13   the ███████████████████████████████████

14   ████████████████████████████████████████

15   ████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████████

18   ██████████████████████████████████████

19   ████████████████████████████████████

20   ██████████████████████████████████████

21   ██████████████████████████████████

22   ███████████████████████████████████

23   ██████████████████████████████████████

24   ████████████████.

25      Q.  And so you pulled out of the study?

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1        Was there anything else you said to Dan
2   about your unhappiness with studies that Apple was
3   doing?
4        A.  Yeah.  I think it was generally just kind of
5   like a -- we need a boundary here of what --
6   because, you know, I would do a lot of the LiveOn
7   on, like, a Mac computer and file bugs and stuff.
8   And that's a lot different than my employer asking
9   to request status of ███████████.  And so it
10  was kind of, like, I feel like we need to sort as a
11  company what we're doing here generally and using
12  myself as kind of case study of my reaction to some
13  of those requests.  But as -- I don't remember them
14  ever really doing anything different, and I remember
15  even making privacy, kind of, invasion complaints
16  even I think, like, in May 2021 --
17       Q.  Way beyond my question.
18       A.  Okay.
19       Q.  You said Dan brushed it off.  Do you recall
20  the gist of what he said when you said, "I don't
21  like these creepy studies that Apple's doing"?
22       A.  He typically brushed most of my complaints
23  off, so it would be a similar --
24       Q.  On this -- on this -- on this -- yeah.
25  Focus on my question.



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1    emails to you guys.  I said indefinitely I did not

2    want to participate in the ear scanning study.

3         Q.  And was there a reason for that?

4         A.  Yeah.  And that was one of the things I

5    raised to Dan that I feel like it crossed a line.

6    It was too far of an invasion of privacy to ask

7    employees to participate in something like that

8    because it's hard for employees to say no and that

9    is too invasive of our privacy and bodily autonomy.

10        Q.  And what did you feel invasive about an ear

11   scanning study?

12        A.  Ears are very personal, and they are an --

13   they're an orifice.  You know, it's a bodily

14   orifice.  It's kind of like the ███████████

15   ████████████████████.  Not as bad as that one,

16   but it's like that -- that's something that's so

17   personal that it doesn't seem appropriate for an

18   employer to ask.  And because I participated in

19   these studies, I know that it involves pressing up

20   against my body, putting things, like, on my body.

21   Things where I'm like -- like I mentioned earlier,

22   physically uncomfortable during the process, even

23   somewhat painful.  And like the thought of -- and

24   they can last a long time.  So, like, the thought of

25   Apple spending a bunch of time scanning, like, the

1    inside of my ears and my ears made me have a

2    visceral reaction that I didn't want that.  And that

3    I was also why I just -- I said no.  That was one of

4    the very few things I said no expressly in email.  I

5    said no.  I think I made an excuse, like, I'm too

6    busy, but I'm not going to do that.  And then Apple

7    wanted to keep -- they're going to keep these images

8    of our ears.  And they bragged publicly earlier that

9    they had the biggest, like, ear library in the

10   world, and that was concerning to me.  It's

11   concerning to me that they'd brag about that, and I

12   don't want my ears in their giant ear library.  You

13   know, like, my ears are personal to me.  I don't

14   want them to just be in a library of ears.

15        Q.  Okay.

16        A.  And because I had said no and they asked

17   three times in a very short period of time, I was --

18   I was wondering why are they asking me so much, and

19   it looked like it was going to an email group, but

20   you don't really know who is on what group.  And so

21   I was -- I was disturbed about them still wanting to

22   scan my ears.

23        Q.  Do you agree that posting these emails was a

24   breach of your confidentiality agreement with Apple?

25        A.  No, I don't agree.



1       Q.   And why not?

2       A.   This is not trade secret.  This is not

3    proprietary.  It was public information that Apple

4    was scanning ears.  It was public information where

5    Apple was bragging they had a giant library of ear

6    scans.  It is known that Apple does user studies on

7    their employees.  None of this is -- none of that

8    was even secret information.  And I was complaining

9    about something that I thought was an invasion of

10   privacy.  I have a constitutional right to privacy

11   in this great state of California where I can

12   protest about my employer trying to invade my

13   privacy.

14        I also thought it was harassment.  I didn't

15   know if they were doing it on purpose.  Sometimes

16   Apple has been known to do weird, petty stuff to try

17   to get a reaction.  And I wanted them to stop doing

18   this kind of stuff, and this was the exact same time

19   I was calling out other conduct and systemic issues

20   at Apple that I did not approve of and wanted them

21   to reform on, and so this fit with me trying to call

22   out stuff that I thought crossed a line.

23      Q.   Did you write back to -- in response to any

24   of these emails saying "I don't want to

25   participate"?

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)          December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

1              ::: CERTIFICATE OF REPORTER :::

2

3              I, JULIE L. ANDERSON, a Certified
   Shorthand Reporter, holding a valid and current
4  license issued by the State of California, CSR No.
   11422, duly authorized to administer oaths, do
5  hereby certify:
               That the witness in the foregoing remote
6  deposition was administered an oath remotely to
   testify to the whole truth in the within-entitled
7  cause.
               That said deposition was taken down
8  remotely by me in shorthand at the time and place
   therein stated and thereafter transcribed into
9  typewriting, by computer, under my direction and
   supervision.
10
   (X) Reading and signing was requested/offered.
11
               Should the signature of the witness not be
12 affixed to the original deposition transcript, the
   witness shall not have availed himself/herself of
13 the opportunity to sign or the signature has been
   waived.
14 The dismantling, unsealing, or unbinding of the
   original transcript will render the Reporter's
15 Certificate null and void.

16             I further certify that I am neither counsel
   for nor related to any party in the foregoing
17 depositions and caption named nor in any way
   interested in the outcome thereof.

18

19

20 DATED:  January 5, 2026

21

22

23 _____
   JULIE L. ANDERSON, CSR
24 California Certified Shorthand Reporter 11422

25

# EXHIBIT B

*CONFIDENTIAL*

***Ashley Gjovik v. Apple Inc.***
**N.D. Cal. Case No. 23-cv-4597-EMC**

**APPLE INC.'S CONFIDENTIALITY DESIGNATIONS PURSUANT TO THE JULY 7, 2025, STIPULATED PROTECTIVE ORDER FOR THE DEPOSITION OF ASHLEY GJOVIK TAKEN ON DECEMBER 16, 2025.**

Apple Inc. designates the deposition transcript as indicated below. While pages 66–305 were initially marked confidential, Apple has now limited its designation to only the specific testimony identified in the chart below.

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 5:11 | Confidential | |
| 112:11 | Confidential | |
| 113:5 | Confidential | |
| 113:8 | Confidential | |
| 115:19 | Confidential | |
| 115:24 | Confidential | |
| 115:25 | Confidential | |
| 116:1 | Confidential | |
| 116:6 | Confidential | |
| 116:16 | Confidential | |
| 116:17 | Confidential | |
| 116:24 | Confidential | |
| 121:21 | Confidential | |
| 121:22 | Confidential | |
| 121:25 | Confidential | |
| 122:11 | Confidential | |
| 122:12 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 122:14 | Confidential | |
| 122:16 | Confidential | |
| 122:18 | Confidential | |
| 122:22 | Confidential | |
| 130:16 | Confidential | |
| 130:22 | Confidential | |
| 131:6 | Confidential | |
| 134:18 | Confidential | |
| 138:3 | Confidential | |
| 138:4 | Confidential | |
| 138:5 | Confidential | |
| 138:7 | Confidential | |
| 147:16-24 | Confidential | |
| 153:5 | Confidential | |
| 161:6-9 | Confidential | |
| 161:21-22 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 162:6-8 | Confidential | |
| 163:16 | Confidential | |
| 164:10-11 | Confidential | |
| 164:14 | Confidential | |
| 164:15-16 | Confidential | |
| 164:25 | Confidential | |
| 165:13-24 | Confidential | |
| 166:1-2 | Confidential | |
| 166:4 | Confidential | |
| 166:14 | Confidential | |
| 167:17 | Confidential | |
| 168:19 | Confidential | |
| 169:1 | Confidential | |
| 169:10 | Confidential | |
| 169:23 | Confidential | |
| 169:25 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 170:9 | Confidential | |
| 171:21 | Confidential | |
| 172:13 | Confidential | |
| 172:14 | Confidential | |
| 172:16 | Confidential | |
| 176:16 | Confidential | |
| 183:23 | Confidential | |
| 197:15 | Confidential | |
| 197:17 | Confidential | |
| 197:18 | Confidential | |
| 197:21 | Confidential | |
| 197:23 | Confidential | |
| 198:3 | Confidential | |
| 199:10 | Confidential | |
| 200:11 | Confidential | |
| 200:24 | Confidential | |
| 203:4 | Confidential | |
| 203:5 | Confidential | |
| 205:4-9 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 205:11-13 | Confidential | |
| 205:15-16 | Confidential | |
| 205:17 | Confidential | |
| 206:4-5 | Confidential | |
| 207:10-11 | Confidential | |
| 207:20-21 | Confidential | |
| 207:24-25 | Confidential | |
| 208:1 | Confidential | |
| 208:13 | Confidential | |
| 208:15 | Confidential | |
| 208:17-18 | Confidential | |
| 208:19 | Confidential | |
| 209:4 | Confidential | |
| 209:6 | Confidential | |
| 209:7 | Confidential | |
| 209:8-10 | Confidential | |
| 209:13-14 | Confidential | |
| 225:25 | Confidential | |
| 226:1 | Confidential | |

*CONFIDENTIAL*

| Cite Page(s):Line(s) | Designation | Text |
|---|---|---|
| 226:3 | Confidential | |
| 226:4 | Confidential | |
| 236:14-15 | Confidential | |
| i5 (351) | Confidential | |
| i6 (352) | Confidential | |
| i8 (354) | Confidential | |
| i9 (355) | Confidential | |
| i11 (357) | Confidential | |
| i12 (358) | Confidential | |
| i20 (366) | Confidential | |
| i22 (368) | Confidential | |
| i25 (371) | Confidential | |
| i28 (374) | Confidential | |
| i30 (376) | Confidential | |
| i31 (377) | Confidential | |
| i32 (378) | Confidential | |
| i34 (380) | Confidential | |
| i35 (381) | Confidential | |

# EXHIBIT C

| | |
|---|---|
| **From:** | Ashley M. Gjøvik <ashleymgjovik@protonmail.com> |
| **Sent:** | Wednesday, February 18, 2026 12:26 PM |
| **To:** | Riechert, Melinda |
| **Cc:** | Ashley M. Gjovik (Legal Matters); Perry, Jessica R.; Mantoan, Kathryn G.; Horton, Nicholas J.; Weaver, Nicholas; Russell, Zoe; Booms, Ryan; Stolzenburg, Mark L.; Kelcey Phillips; Mahoney, Brian; harry.johnson |
| **Subject:** | Re: URGENT |

**[EXTERNAL]**

Hello agents of the Employer and Charged Party, Apple Inc,

Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.

You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.

Thanks,
-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.

**Melinda Riechert**
Partner
Orrick
Silicon Valley 

1

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.