Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

**Ashley M. Gjovik**,
*an individual*,

    Plaintiff,

vs.

**Apple Inc.**,
*a corporation,*

    Defendant.

**Case No. 3:23-cv-04597-EMC**

**Plaintiff's Rule 72 Objections to the Written & Oral Orders at Dkt. 288 (Feb. 20 2026 Conference)**

**A Certified Transcript of the Feb. 20 2026 Hearing is Attached as Exhibit A**

# Rule 72 Objections to the Order at Dkt. 288

## INTRODUCTION

1. The Plaintiff files and serves these objections under Federal Rule of Civil Procedure Rule 72. On February 20, 2026, this Court denied Plaintiff's Motion to Quash (Dkt. 285) in a text-only order directing that issues be raised *"in the first instance"* with Magistrate Judge Westmore. Plaintiff understands that Apple characterized its request as a routine discovery dispute appropriate for informal conference. The Court's order reflected that understanding. The first instance proceeding has now occurred.

2. Plaintiff submits the certified transcript of the February 20, 2026 conference as *Exhibit A*. The conference was not a routine discovery call. Apple sought six forms of extraordinary relief — sanctions, contempt, injunctive relief, compelled deletion of published speech, protective order enforcement, and sealing — without filing a single required motion.

3. During the 65-minute call the Magistrate issued an oral directive to immediately delete published social media posts, discussed contempt and sanctions, and repeatedly characterized Plaintiff as having violated the protective order — all without sworn evidence, without an evidentiary hearing, and without the procedural protections that attach to proceedings of this character. Further, two of Plaintiff's pre-conference filings documenting her objections were sealed without motion or findings on the same day. (Dkt. 282-283). Despite all of this, the written order issued from the conference is one sentence.

4. Plaintiff asks this Court for three things: (1) legal clarification of the protective order's scope on a pure question of text and controlling Supreme Court authority; (2) clarification of the Magistrate's authority over injunctive and quasi-criminal proceedings; (3) clarification of a new motion format; and (4) unsealing of two docket entries restricted without process. Each is within this Court's direct supervisory authority and none requires reaching the merits of any discovery dispute.

5. Ultimately, the Magistrate's own ultimate conclusions support the same results. By the close of the conference she stated that Apple must file a proper motion, acknowledged that Plaintiff *"may be right"* about the public nature of the designated content (Tr. at 32), and confirmed she would *"ultimately rule on"* Plaintiff's arguments after reviewing evidence and briefing (Tr. at 70). Plaintiff asks this Court to confirm those conclusions for the record so that Apple cannot selectively cite the earlier, conflicting portions of the transcript in future proceedings, and to ensure clarify for both parties about court procedures.

# STANDARD OF REVIEW

6. This Court's order directed first instance with the Magistrate (Dkt. 287). That proceeding has now occurred and the written order at Dkt. 288 is now subject to objection under FRCP 72(a) and 28 U.S.C. § 636(b)(1). The fourteen-day period runs from entry of Dkt. 288 on February 20, 2026. Legal errors are reviewed de novo as questions of law. Rulings contrary to law are reviewed under FRCP 72(a)'s *"contrary to law"* prong without deference. Jurisdictional errors receive no deference.

# OBJECTIONS

## Objection: The Protective Order Does Not Apply

*The Protective Order Does Not Apply — By Its Own Express Terms and Under Controlling Constitutional Authority — To Information Plaintiff Pled In Her Complaint, Knew From Her Own Experience, Or Obtained Independently of the Discovery Process*

7. This is a retaliation lawsuit. Plaintiff's claims are that Apple fired her for publicly complaining about workplace practices including the monitoring of employees' bodies. The factual basis of those claims — the workplace practices she was fired for discussing — is the same information Apple designated as confidential and sought to suppress through discovery proceedings. That alignment is not coincidental.

### 1. The Protective Order's Own Text Is Dispositive

8. N.D. Cal. Model Protective Order § 3 states in plain text that the order's protections do not apply to: *"Any information that is in the public domain… Any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party."* (Dkt. 229).

9. This exclusion is self-executing. It does not require a motion, a meet-and-confer, or a court order to take effect. It means the protective order never applied to this category of information. Apple's designation of excluded information is not a provisional restriction pending adjudication — it is a nullity. The challenge mechanism at § 6.2 exists for legitimately contested designations, not to convert facially inapplicable designations into temporary restrictions during the pendency of the challenge process.

10. Plaintiff's knowledge of her own bodily experiences, her own workplace complaints, and her own prior public statements about Apple's monitoring practices was not obtained through discovery. She lived these experiences. She complained about them to government agencies before this litigation began. She pled them in her complaint — a public document on this Court's docket, accessible to anyone

on PACER, reviewed by this Court in ruling on Apple's motion to dismiss. The information cannot simultaneously be a public court record sufficient to state a legal claim and Apple Confidential subject to suppression by threat of contempt. The § 3 exclusion applies on the face of the order.

11. However, the transcript shows that there appears to be ambiguity and confusion with the Magistrate Judge's interpretation and application of the text of the Protective Order.

### 2. SEATTLE TIMES REQUIRES THIS READING AS A CONSTITUTIONAL MATTER

12. On Feb. 20 2026, before backtracking due to the Plaintiff's objections, Magistrate Judge Westmore attempted to order and compel the Plaintiff to delete published content and agree to a gag order, without any hearing, evidentiary review, or due process.

> Plaintiff: "It's my experience. It's public information. It's my own thoughts. It's existing 1workplace complaints. It's whistleblower complaints. It's stuff I've pled in my complaint for this lawsuit..."

(Ex. A, Feb. 20 2026 Cert. Tr. pp. 10).

> Plaintiff: "the order doesn't cover because it's already public information or my opinions or me talking about my own body or whatever…that's just not legitimate anyways, so if I was to treat that as a gag order, that would violate my constitutional rights."
> Court: "I don't think that that's what Apple was trying to do. I think there are specific sections that they are highlighting here that should have been redacted."
> Plaintiff: "But that's my -- that's my whistleblower complaints. That's stuff pled in the complaint in this lawsuit. It's existing complaints. It's my own experiences. And the No. [one] word they are redacting is literally the word "menstruation….it's my own testimony. It's my own experience. So then it does function as a gag order."
> Court: "…It's just temporarily…"
> Plaintiff: "I object to that. I will not waive on that. I highly object and I would ask that we review the actual evidence. And if they want to claim that this stuff should be, then they should file it under seal and show exactly what they're saying and make a justification of why they say it's actually confidential."
> Court: "That's just not how the order works."

(Ex. A, Feb. 20 2026 Cert. Tr. pp. 11-13).

> Court: "if Apple is being unreasonable and asking for things that are already out in the public domain to be kept confidential, the court is not going to look very fondly on wasting the court's time on confidentiality designations that should not be made."

(Ex. A, Feb. 20 2026 Cert. Tr. pp. 18).

> Court: "You have to take it down… You have to take it down because the court order –"
> Plaintiff: "I'm not going to, your Honour. I'm sorry. You're going to have to order me to take it down."
> Court: "I'm ordering you to take it down right now."
> Plaintiff: "You're going to have to write it in an order for me to do it. I'm not going to do it willingly. I feel like it's completely within my rights. I feel like I've briefed it. I would ask your Honour to read in detail my opposition –"
> Court: "No –"
> Plaintiff: "-- the legal cites, the statutes, the case law..."

> Court: "I'm reading the court's protective order"
> Plaintiff: "Your Honour, you started this saying you would not say that. You said this wasn't going to be about any injunctions. This wasn't going to be about any contempt. This wasn't going to be about sanctions. This is just going to be informal. And then now you're threatening to –"
> Court: "Because it's not. If you just comply… it doesn't involve any of that."
> Plaintiff: "I'm not going to voluntarily do something that I objected to and then make it informal because -- your Honour, I'm sorry. I'm not. And I think that's very coercive to say you're not going to issue sanctions but then say only if I voluntarily do what the sanctions would tell me to do is very unfair."
> …
> Apple: "She absolutely posted on the public…"
> Plaintiff: "The menstrual words. Just menstrual, menstruation, cervical mucus, that's it."
> Apple: "We had designated those as confidential."
> Plaintiff: "So I'm not allowed to say the word "menstruation" publicly until we resolve our dispute?"
> …
> Apple: "No. You posted the NLRB charge with the actual deposition words unredacted. That's the problem."
> …
>
> Court: "If those excerpts that have been designated confidential should not be confidential, for all the reasons you are stating, you need to write that to me in a motion, and you need to do a declaration under penalty of perjury explaining why each thing should not be confidential so that I can make a ruling."

(Ex. A, Feb. 20 2026 Cert. Tr. Pg 22-26).

> Plaintiff: "The thing they're pointing to is already completely public information and something pled"
> Court: "You can argue, Ms Gjovik…"
> Plaintiff: "in the complaint in this case"
> Court: "Ms Gjovik, you can argue all of that stuff in your opposition to their motion."

(Ex. A, Feb. 20 2026 Cert. Tr. Pg 70).

13.    *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), upheld discovery protective orders against First Amendment challenge on a specific and essential basis: the order survived because it "does not restrict the dissemination of the information if gained from other sources." 467 U.S. at 37. That limiting principle is the entire constitutional justification for discovery protective orders. Without it, a protective order is not a discovery management tool — it is a prior restraint on speech.

14.    Prior restraints carry the heaviest presumption against constitutional validity in American law. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Mandatory injunctions compelling deletion of existing speech are subject to an even higher standard. *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Apple has never attempted to satisfy strict scrutiny because the informal conference format made that impossible.

15. The court's coercive discovery power did not compel Plaintiff to disclose her knowledge of her own body or her own prior public complaints. Applying the protective order to information she knew from her own experience removes the constitutional justification for the restriction. What remains is a prior restraint. The N.D. Cal. Model Protective Order incorporated the *Seattle Times* limitation into § 3 precisely because the drafters understood this requirement.

16. The Magistrate's repeated statements indicating that all unilaterally designated information (even information that's been public for years) is restricted pending adjudication — regardless of the § 3 exclusion — contradicts both the order's text and the Constitution.

### 3. This Is a Retaliation Case, Not a Trade Secret Case

17. In a trade secret case, the protective order and the merits run in the same direction. In this retaliation case, the protective order and the merits run in opposite directions. Many of Plaintiff's claims rest on the position that she publicly complained about Apple's workplace practices and was fired for it. It's one of the reasons she strongly opposed and repeatedly objected to the entry of any protective order – even asking this court to quash Apple's demand for the order and raising the issue to the Ninth Circuit - - terrified Apple was going to do exactly what its doing now. (Dkt. 211, 213, 214, 220, etc.).[1]

18. Every restriction on her ability to discuss those practices simultaneously weakens her claims and strengthens Apple's defense. Apple is using a discovery designation to establish as a procedural matter — without bearing any burden of proof — that the factual predicate of Plaintiff's own claims is Apple Confidential. That is not what protective orders are used for.

### 4. The Magistrate's Own Conclusions Support Clarification

19. The Magistrate never affirmatively held that the designated content is validly confidential. When Plaintiff argued the content was public, the Magistrate stated: *"And you may be right, but you have to follow the process."* (Tr. at 32:14-15.) The Judge stated that designations of public domain content by Apple, if true, would not be looked upon favorably. (Tr. at 18:4-8.) However, she directed Plaintiff's arguments to the motion process and confirmed she would "*ultimately rule on that.*" (Tr. at 70:22-23.).

---

[1] "Plaintiff respectfully warns the Court that the subject matter for which Defendant seeks a confidentiality designation—based on its own representations during the parties' meet-and-confer and recent filings—would functionally operate as a dispositive ruling on contested issues, and impose prior restraint on testimony that the U.S. government has already found to be protected activity. (Dkt. Nos. 35-4, 111, 151, 171, 203). The only justification Apple now offers involves internal policies it was required to rescind as part of a 2025 national NLRB settlement." Dkt. 220 at 5. (June 12 2025).

20. If public and already known information is not covered by the protective order, as the text of the orders states, then there is nothing to file motions about – except a motion for sanctions against Apple if Apple insists on claiming public information is Apple Confidential. Thus, clarification of the governing legal framework — that § 3 and *Seattle Times* exclude public information and already known content from coverage — ensures the Magistrate's ultimate ruling applies the correct standard.

21. Clarification is requested: that the protective order does not apply to public and already known information, by its own express terms at § 3 and under *Seattle Times*, which would include information Plaintiff pled in her complaint, knew from her own experience prior to discovery, or obtained independently of the discovery process; and that this framework governs all proceedings in this case including any motion Apple files before the Magistrate regarding the protective order.

## OBJECTION: THE MAGISTRATE LACKED AUTHORITY TO ISSUE INJUNCTIVE RELIEF

*The Magistrate Lacked Authority to Issue Injunctive Relief
and the Conference Format Was Constitutionally Inadequate for Quasi-Criminal Proceedings;
the Magistrate's Own Conclusions Support Clarification*

### 5. THE ORAL TAKEDOWN ORDER EXCEEDED THE MAGISTRATE'S AUTHORITY

22. 28 U.S.C. § 636(b)(1)(A) explicitly exempts "motion[s] for injunctive relief" from the matters a magistrate judge may determine. During the February 20 conference, the Magistrate stated: *"I'm ordering you to take it down right now." (Tr. at 22:4.)* An order directing a party to delete published speech is injunctive relief regardless of the informality of the proceeding in which it is issued. The substance of an order governs its characterization for statutory purposes. No FRCP 65 motion was filed. No affidavits were submitted. No irreparable harm was shown. No First Amendment analysis was conducted.

23. The Magistrate effectively abandoned the oral order herself. She subsequently stated: *"There's no injunction"* (Tr. at 41:3), and *"if you want me to order her to take it — take down certain things, then I need a motion so you can tell me exactly what — to take down."* (Tr. at 45:1-4.) Her own ultimate conclusion — that injunctive relief requires a proper motion — is consistent with § 636(b)(1)(A) and FRCP 65. Clarification will confirm that conclusion and prevents Apple from treating the oral directive as a qualified statement or order in future proceedings.

### 6. A PRIVATE TELEPHONE CALL IS NOT A CONSTITUTIONALLY ADEQUATE VEHICLE FOR QUASI-CRIMINAL PROCEEDINGS

24. Apple's letter explicitly requested a finding of contempt, sanctions, and injunctive relief.

Once contempt was on the table, the proceeding took on quasi-criminal character regardless of how it was labeled. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 826-32 (1994).

25. Quasi-criminal proceedings require specific written notice of charges, reasonable time to prepare, an evidentiary hearing with sworn testimony and cross-examination, and proof by clear and convincing evidence. *Taylor v. Hayes,* 418 U.S. 488, 498-99 (1974). The right to a public trial applies to contempt proceedings. *In re Oliver,* 333 U.S. 257 (1948). 28 U.S.C. § 753 requires verbatim recording of court proceedings as a structural guarantee of appellate review.

26. None of these requirements were satisfied. Plaintiff demanded a court reporter, a public hearing, and an opportunity for opposition briefing in her filings at Dkt. 279, 282, and 283 before the conference occurred. Those demands were not addressed. Apple submitted no sworn affidavits, no authenticated evidence, and no witness testimony. The factual basis for the Magistrate's characterizations of Plaintiff as a violator was never established through any process adequate to contempt proceedings.

27. The Magistrate acknowledged as much. She stated at p. 39 that she lacked "*all of that level of detail to know exactly where each thing comes from*" and would need "*formal declarations telling me exactly what was posted where.*" That admission came after the oral takedown order had already been issued, and after she scheduled this conference based on Apple asking for exactly what was initially delivered. That was an error by the court.

28. At the close of the conference the Magistrate concluded: "[T]he parties are not able to resolve this informally, so then that leaves nothing but the formal motion practice as an option." (Tr. at 40:2-5.) She directed a "full motion... 35 days notice motion" with declarations, a hearing, and oral argument. (Tr. at 42:14-19.) That is the Magistrate's own acknowledgment that the conference format was inadequate for the proceedings that occurred.

29. Clarification is requested: that proceedings in which contempt, sanctions, or injunctive relief are sought require a public record consistent with 28 U.S.C. § 753, the procedural protections of *Bagwell* and *In re Oliver,* and that injunctive relief requires a motion before this Court under FRCP 65 and § 636(b)(1)(A), regardless of how the proceeding is characterized.

### OBJECTION: THE MAGISTRATE DIRECTED A PROCEEDING WITH NO GOVERNING RULE OR DEFINED STANDARD

*The Magistrate Directed Both Parties to a Proceeding That Has No Governing Rule, No Defined Standard of Proof, No Defined Remedy, and No Defined Standard of Appellate Review, Creating an Immediate Due Process Problem That Requires This Court's Clarification*

30. At the close of the February 20 conference, the Magistrate directed both parties to file what she variously called a "motion for violation of the protective order" and a "motion regarding violating the protective order" — as a full noticed motion with 35 days notice, declarations, a hearing, and oral argument, before the Magistrate. (Tr. at 42:14-43:4.)

31. This vehicle does not exist in the Federal Rules of Civil Procedure. The Federal Rules provide specific vehicles for addressing alleged violations of court orders. Rule 37(b) governs violations of discovery orders and carries defined requirements, burdens, and remedies. Rule 11 governs frivolous filings and requires a 21-day safe harbor. Civil contempt proceedings are quasi-criminal and require specific written charges, sworn evidence, an evidentiary hearing, proof by clear and convincing evidence, and — outside the magistrate's presence without party consent — certification to the district judge under § 636(e)(6)(B)(ii). Criminal contempt requires proof beyond a reasonable doubt. Each vehicle has a defined standard of proof, a defined set of available remedies, and a defined standard of appellate review.

32. The "motion for violation of the protective order" the Magistrate directed has none of these. No Federal Rule governs it. No standard of proof was identified. No available remedy was specified. No appellate review standard exists because no rule defines what the ruling is. Apple's own counsel recognized this: she attempted to direct the motion to this Court, stating *"that's not a discovery motion, it's — "* before the Magistrate cut her off and kept it. (Tr. at 41:8-10.) The Magistrate did not identify what rule she was applying or what authority she had to retain jurisdiction over a proceeding Apple's own counsel recognized belonged before the district judge.

33. The due process problem this creates for Plaintiff is immediate. Plaintiff is currently under a directive to respond to a motion with no defined legal standard. She cannot prepare a meaningful opposition when she does not know what Apple must prove, what burden Apple must meet, or what remedy the court is contemplating granting. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976): due process requires that a party know what they must defend against. A party facing a proceeding with no governing rule has been given no meaningful notice of the legal standard that will be applied to their conduct.

34. The problem is compounded by the free speech issues noted earlier. If this Court confirms the § 3 exclusion, Apple's anticipated motion fails at the threshold regardless of what rule it is filed under — because designation validity is a prerequisite to any violation finding and designations of prior known information are invalid on the face of the order. But if this Court does not address the undefined vehicle, the Magistrate will conduct a proceeding with no legal framework while simultaneously being asked to resolve the threshold § 3 question without guidance from this Court on the governing standard.

35.     Clarification is requested: that this Court identify which Federal Rule governs the proceeding the Magistrate directed, confirm the applicable standard of proof and available remedies, and confirm whether the Magistrate has authority under § 636(b)(1)(A) and § 636(e) to conduct and rule on such a proceeding — or whether the motion belongs before this Court consistent with Apple's own counsel's recognition that it is not a standard discovery matter.

### Objection: Docket Entries 282 and 283 Were Sealed
*Docket Entries 282 and 283 Were Sealed Without Motion, Findings, or Notice, and Must Be Unsealed*

36.     On February 19, 2026, Plaintiff filed Dkt. 282 and Dkt. 283 — notices attaching off-docket email communications between Apple and Court staff concerning Apple's request for a conference demanding sanctions against the Plaintiff. Both entries were modified to restrict access to case participants by court staff on February 20, 2026. The docket notation for each reads: "Modified on 2/20/2026 to restrict access to case participants. (Court Staff)."

37.     No motion to seal was filed by either party. No declaration of good cause was submitted. No judicial finding was made. No notice was provided to Plaintiff. N.D. Cal. Civil L.R. 79-5 requires an administrative motion and judicial finding before any filed document's access may be restricted. *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006), establishes a strong presumption of public access to court records requiring specific findings to overcome. None of that process occurred.

38.     The sealed documents contain the evidence of how the Feb. 20 conference came to be scheduled — Apple's off-docket email communications with the Court before any formal filing, and Apple's request for a private proceeding. This Court denied Plaintiff's Motion to Quash (Dkt. 285) on the same day these documents were sealed. Whether this Court had access to these documents when it ruled is not apparent from the record.

39.     Unsealing is requested: that this Court order Dkt. 282 and Dkt. 283 restored to public access, and that any future restriction of access to filed documents comply with the motion and findings requirements of L.R. 79-5.

## CONCLUSION

40.     Additional arguments will be raised in full in opposition to Apple's pending motion for a "Breach of the Protective Oder," before the Magistrate, where additional arguments bear directly on threshold questions of jurisdiction and the merits of any violation finding. Plaintiff expressly reserves all such arguments.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Confirm that the N.D. Cal. Model Protective Order does not apply, by its own express terms at § 3 and under *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), to information Plaintiff pled in her complaint, was already public, knew from her own experience, or obtained independently of the discovery process —including the workplace monitoring practices and studies that form some of the factual predicate of her retaliation claims — and that this legal framework governs future proceedings in this case including motions Apple files before the Magistrate;

2. Confirm that proceedings in which contempt, sanctions, or injunctive relief are sought require a public record consistent with 28 U.S.C. § 753 and the procedural protections of *International Union, UMWA v. Bagwell,* 512 U.S. 821 (1994), and *In re Oliver,* 333 U.S. 257 (1948); that injunctive relief requires a motion before this Court under FRCP 65 and 28 U.S.C. § 636(b)(1)(A); and that the informal discovery conference format is not an adequate vehicle for proceedings of this character;

3. Identify which Federal Rule governs the proceeding the Magistrate directed at the close of the February 20 conference, confirm the applicable standard of proof and available remedies, and confirm whether the Magistrate has authority to conduct and rule on such a proceeding or whether it belongs before this Court , and

4. Order that Dkt. 282 and Dkt. 283 be restored to public access and that future restrictions of access comply with N.D. Cal. Civil L.R. 79-5.

Respectfully submitted,

_____
**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 6 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816