```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

 4    --------------------------------x

      ASHLEY GJOVIK, an individual,      :

 5                      Plaintiff,       : U.S. D.C. Case No.:

          v.                             : 23-cv-4597-EMC(KAW)

 6    APPLE INC, a corporation,          :

                        Defendant.       :

 7    --------------------------------x

 8

 9                 Telephonic Conference Call

10                 Friday, February 20, 2026

11                          AT:

12                        2:14pm

13

14                                              CERTIFIED

15

16              Taken via Zoom videoconference

17

18

19

20
21    Court Reporter:

22    KATHERINE SCHILLING, RPR

23    CA CSR No. 14163
```

A Court Reporting Transcript by Epiq

1    Friday, 20 February 2026

2    (2.14 pm)

3    CLERK:  Good afternoon.  Please be advised that according to

4        General Order 58, any recording of a court proceeding

5        held by video or teleconference, including screenshots

6        or other visual copying of a hearing, is strictly

7        prohibited.

8            Calling the matter 23-cv-4597-EMC for Gjovik versus

9        Apple, Inc.  If I can have appearances starting with the

10       plaintiff, please.

11   MS GJOVIK:  This is the plaintiff, Ashley Gjovik.

12   CLERK: Ms Riechert, if you can state your appearance.

13   MS RIECHERT:  Yeah.  This is Melinda Reichert for the

14       defendant, Apple.

15   THE COURT: All right.  Good afternoon.  This is a telephone

16       conference and it's an informal one.  So Ms Gjovik, you

17       don't have to have your video on.  It's just that we

18       started using Zoom for our telephone conferences now,

19       because -- just because Zoom offers the telephone

20       conference feature.

21   MS GJOVIK:  Your Honour, I might -- I have the stomach flu

22       and I've been really sick, so if I don't answer,

23       I might be sick, and if you just don't see me, then

24       maybe that answers the question.  I'm not feeling great

A Court Reporting Transcript by Epiq

1      today.

2   THE COURT:  Okay.  And you can turn your video off.  You

3      don't have to have your video on.

4   MS GJOVIK:  Well, that's what I'm saying, that if, like, I'm

5      not responding to you but you see the video but I'm

6      just not there, then you can maybe put it together that

7      I'm dealing with -- like, I'm really -- sorry, I'm

8      really sick today.

9   THE COURT:  Oh, no.  I'm so sorry to hear that.  But,

10      anyway, I just would like to make sure that I'm --

11   MS RIECHERT:  And I didn't realize this was a video

12      conference, so I just got on my phone.  But I certainly

13      can get on a video.

14   THE COURT:  No, you don't need to.  It's supposed to be

15      a phone call.  It's just that it's through Zoom.

16   MS RIECHERT:  Yeah, that's what I thought.

17   THE COURT:  Yeah.  So you -- and you can click on the link

18      and join with video capabilities, but this is meant to

19      be a telephone conference.

20   MS RIECHERT:  Okay.

21   THE COURT:  So Ms Gjovik, I just really want to make sure

22      that I'm easing your mind for today, because I think

23      based on everything that I've seen you filing, that you

24      were of the impression that this is some sort of motion

1      hearing or a motion for a TRO or, you know, motion for

2      sanctions or something like that.  And it simply is not.

3      This is an informal discovery call, like a telephone

4      conference call, that is a pretty common tool that

5      judges use to deal with discovery disputes.

6           So sometimes people are in depositions and, you

7      know, they're having a dispute about questions being

8      asked or things like that, and they just need it to be

9      resolved pretty quickly.  So, you know, my standing

10     order allows for people to call me if they can't figure

11     something out because, you know, they just need to get

12     through it.

13  MS GJOVIK:  Thank you, your Honour.

14  THE COURT:  And so that's sort of what this is, and the

15     reason why I scheduled it is because I really want to

16     just help the parties get back on track.

17  MS GJOVIK:  Yeah.

18  THE COURT:  As opposed to, you know, filing formal motions

19     and, you know, having Apple, you know, need to, you

20     know, decide that it needs to file some sort of a

21     motion for sanctions because of, you know, violations

22     of the protective order.  You know, anything like that.

23          So I really want to just go through with the

24     parties what is going on and see if I can help you get

1    back on track, because the protective order in this

2    case is really what governs how this process is

3    supposed to work, and it's sort of the reason why the

4    court shouldn't even really be involved at this point.

5        So my understanding -- and, Ms Gjovik, can you tell

6    me at any time if you disagree with these facts, but

7    just the facts that I've been given up to this point

8    are that you had a deposition.

9  MS GJOVIK:  Yes.

10  THE COURT:  Your deposition was taken on December 16th of

11    2025.

12  MS GJOVIK:  Correct.

13  THE COURT:  And during that deposition, Apple's counsel

14    designated certain -- a certain part or certain parts

15    of the deposition as confidential and said, you know,

16    from this point on this is going to be the confidential

17    section.  And --

18  MS GJOVIK:  They did a blanket.  They did one blanket that

19    covered hours of the deposition, yes.

20  THE COURT:  Okay.  And so -- and then they said something,

21    you know --

22  MS GJOVIK:  I objected.  I said you have to designate,

23    narrow, and then eventually 50 days later they did

24    narrow.

A Court Reporting Transcript by Epiq

1    THE COURT:  Okay.  And so there was a discussion, and I have

2        part of the -- what the discussion was.  And it seemed

3        like you came to some agreement, though, about how that

4        was going to be proceed.  And they did tell you that

5        they would, after the depo, narrow it down to specific

6        parts of the testimony that needed to be designated

7        "confidential", which is a correct thing to do because

8        if you're over-designating then, you know, that's not

9        right either.

10   MS GJOVIK:  Yeah.

11   THE COURT:  So to do that, and then more clearly identify

12       those portions that absolutely need to be confidential

13       is what it sounded like the plan was going to be.  And

14       then I have that on January 7th, that was when you

15       guys -- the transcript was provided to the parties, and

16       then on February 4th Apple did provide a more limited

17       designation.

18   MS GJOVIK:  It's questionable -- they never served it to me

19       and it's not signed or dated and I repeatedly asked

20       them to actually send it to me directly, and they

21       refused.  So I'm also arguing they still haven't even

22       served those designations.

23   THE COURT:  Okay.

24   MS GJOVIK:  But they did create a document they sent to the

A Court Reporting Transcript by Epiq

1    court reporter that had supposed designations, even

2    though it wasn't signed or dated.

3  THE COURT:  Okay.  So they sent it to the court reporter,

4    not to you.

5  MS GJOVIK:  And they said "FYI for Ashley's awareness", and

6    I said "Can you serve me these if you're saying these

7    are designations?"  And they've refused.

8  THE COURT:  Mm-hmm.  Okay.

9  MS RIECHERT:  They were served on -- they were sent to her

10    at the same time they were sent to the court reporter.

11  MS GJOVIK:  That said "for your awareness" and you refused

12    to send me -- anyways, I would love to get back on

13    track.  I am not going to waive on any of my rights on

14    this during this call, but if there's some way that we

15    can just get back on track to have the normal

16    designation dispute process and not have to bother the

17    court with it, I think that would be wonderful.

18  THE COURT:  Yes.

19  MS GJOVIK:  Because we do have more discovery to get to.

20  THE COURT:  Okay.  And so I want to just acknowledge what

21    has happened so far.

22        So then February -- okay.  Then February, I'm not

23    sure what date, I think it might have been the 18th,

24    that, Ms Gjovik, you said you disagreed with the

1        confidential designations.

2    MS GJOVIK:  I disagreed immediately when they sent them, and

3        I warned them I was going to file an NLRB charge as

4        soon as they sent them on the 4th, and so we've been

5        emailing since then.

6    THE COURT:  Oh, so you had been emailing before that?

7    MS GJOVIK:  Yeah.

8    THE COURT:  Okay.  But you told them that you disagreed with

9        the confidential designation.

10   MS GJOVIK:  Yeah.

11   THE COURT:  And then what I'm reading here is that Apple

12       planned to respond to your objections to the

13       confidential designations.

14   MS GJOVIK:  They haven't responded yet, though.

15   THE COURT:  Right.  But what they note -- the reason why

16       they wrote to me, though, is because they said on the

17       18th -- I guess you -- you told them at about 1.09 pm

18       about your efforts to meet and confer about this or

19       something, and --

20   MS GJOVIK:  I sent the final detail -- they made about a 160

21       designations, and I'm arguing that almost all of them

22       are nonsense.  So I put them in an Excel sheet and I did

23       the detail for each of them, but it was detailing what

24       I had already objected to in email --

1    THE COURT:  Okay.

2    MS GJOVIK:  -- that they can't claim these things

3        aren't -- so a lot of it was protected, a lot of it

4        was, like, explicitly they can't claim that that's

5        confidential.  And then other stuff was public

6        information.  And then just general terminology.

7    THE COURT:  Mm-hmm.

8    MS GJOVIK:  So I was detailing each of those and sent it to

9        them, and they haven't responded.

10   THE COURT:  Okay.  And you gave them the spreadsheet?

11   MS GJOVIK:  Yeah.

12   THE COURT:  Okay.  And then they wrote to me, though, and

13       said that the issue was that they planned to respond,

14       they wanted to meet and confer, and they didn't object

15       to your efforts to challenge the confidentiality

16       designation, but they said that they noticed or it had

17       been realized that these things entirely were already

18       publicly posted.

19   MS GJOVIK:  They were served on the 17th, a notice of

20       pendency filed in the docket for this case that had an

21       NLRB charge, including a cover letter which is exactly

22       what they cited and quoted in the letter they filed to

23       your Honour.  They failed to mention that they were

24       served to it from this docket.  It's a public -- on

A Court Reporting Transcript by Epiq

1       a public docket that has that detailed cover letter

2       that they were claiming had all these issues, and it

3       was the problem was public, which is also -- they

4       should have filed a motion to seal, if they want to

5       seal that.  They're claiming that's confidential.  But

6       that is assumably based on the temporal proximity, how

7       they're saying they became aware of it was through

8       that.

9  THE COURT:  Well, there is a process, though, if you want to

10      post something publicly, whether it's on a docket or on

11      a website or on X or whatever.  When something has been

12      designated confidential, that's where the protective

13      order procedures really kick in.

14  MS GJOVIK:  I understand.  It's my experience.  It's public

15      information.  It's my own thoughts.  It's existing

16      workplace complaints.  It's whistleblower complaints.

17      It's stuff I've pled in my complaint for this lawsuit.

18  THE COURT:  I'm not talking about those things.  I'm talking

19      about --

20  MS GJOVIK:  Okay.  No, yeah, I understand that, like,

21      a document or whatever I couldn't just go and Tweet it

22      if they designated it.  We'd need to go through and

23      dispute it.

24  THE COURT:  Exactly.

1    MS GJOVIK:  Yeah.

2    THE COURT:  So you understand that, then.  You've -- so

3        you've read --

4    MS GJOVIK:  Of course.

5    THE COURT:  -- part of the protective order that requires

6        you to continue treating it like it's confidential --

7    MS GJOVIK:  Of course, yeah.

8    THE COURT:  -- until you get an order from the court

9        otherwise.

10   MS GJOVIK:  Yeah.  But for the stuff that I feel is -- that

11       the order doesn't cover because it's already public

12       information or my opinions or me talking about my own

13       body or whatever --

14   THE COURT:  Oh, yeah.

15   MS GJOVIK:  -- that, to me I was, like, that's just not

16       legitimate anyways, so if I was to treat that as a gag

17       order, that would violate my constitutional rights and

18       I assume the Northern District of California developed

19       that protective order not intending it to be used as

20       a gag order about that sort of stuff.

21   THE COURT:  I don't think that that's what Apple was trying

22       to do.  I think there are specific sections that they

23       are highlighting here that should have been redacted.

24   MS GJOVIK:  But that's my -- that's my whistleblower

A Court Reporting Transcript by Epiq

1       complaints.  That's stuff pled in the complaint in this

2       lawsuit.  It's existing complaints.  It's my own

3       experiences.  And the No. 1 word they are redacting is

4       literally the word "menstruation."

5    THE COURT:  Mm-hmm.

6    MS GJOVIK:  You know, this is very personal stuff.  This is

7       my right to privacy, to protest --

8    THE COURT:  Right.  But, Ms Gjovik --

9    MS GJOVIK:  Yes.

10   THE COURT:  -- those are the things that you have to

11      litigate before the court before you post them.  If they

12      are things that were in this portion of the deposition

13      that were designated "confidential", you cannot post

14      them on the public --

15   MS GJOVIK:  But it's my own testimony.  It's my own

16      experience.  So then it does function as a gag order.

17   THE COURT:  But it doesn't -- it's not.  It's just

18      temporarily, if it's confidential, it's designated --

19   MS GJOVIK:  I object to that.  I will not waive on that.

20      I highly object and I would ask that we review the

21      actual evidence.  And if they want to claim that this

22      stuff should be, then they should file it under seal

23      and show exactly what they're saying and make

24      a justification of why they say it's actually

1        confidential.

2    THE COURT:  That's just not how the order works.  The order

3        requires that if you disagree with the confidentiality

4        designation, that you have to file something with the

5        court.  If you're unable to come to some agreement with

6        Apple, then you have to file something with the court,

7        challenging the designation of confidentiality,

8        explaining in a declaration why each part they've

9        designed is not -- should not be confidential.

10   MS GJOVIK:  They do.  They have to defend it.  And that's

11       for admissibility, though.  They're talking about my

12       out-of-court speech.  They're talking about stuff that's

13       completely out of the jurisdiction of the court.

14       They're talking about NLRB charges.  And --

15   THE COURT:  No, no.  That's not what I'm talking about.  I'm

16       talking about the actual testimony from the deposition

17       transcript being posted on the public docket being

18       posted on a website, being posted on your website.

19       Those are the things --

20   MS GJOVIK:  It's the word "menstruation."

21   THE COURT:  Well, I don't know --

22   MS GJOVIK:  I'm talking about my own menstruation, my own

23       period.

24   THE COURT:  I don't know what the words are that they were

A Court Reporting Transcript by Epiq

1       trying to designate --

2   MS GJOVIK:  That's what I'm saying the problem is.

3   THE COURT:  I'm just saying that if --

4   MS GJOVIK:  Because if you say, it's cervical mucus, it's

5       cervical mucus secretions, it's menstruation, it's

6       sexual partners.  It was me complaining Apple was trying

7       to force -- if I wanted to have someone sleep in my bed

8       with me and have sexual intercourse, they want them to

9       sign an NDA.  And I was protesting that.  And I was

10      saying "That's an invasion of privacy.  You shouldn't be

11      doing that to workers".

12          And then they want to redact "sexual activity" and

13      "co-sleepers".  And I'm complaining "You shouldn't be

14      studying employees' cervical mucus.  You should be

15      paying for that data in a normal way and not coercing

16      your employees and monitoring their cervical mucus".

17      And then they want to redact "cervical mucus".  Well,

18      it's something I've been advocating about and doing

19      newspaper interviews with and posting on social media

20      and complaining about.  And then now they're trying to

21      say that I can't say those words and I can't complain

22      that the employer is now trying to use a discovery

23      process and misuse a protective order that was

24      certainly never intending to be used this way.

1    THE COURT:  I don't know -- I mean, based on what I've read,

2        I'm not reading that Apple is trying to prevent those

3        kind of things from being posted.

4    MS GJOVIK:  But that's what they redacted.

5    THE COURT:  I'm not seeing that.

6        Does Apple want to respond to this allegation that

7        you're trying to keep her from talking about her own

8        personal body activities or --

9    MS RIECHERT:  Absolutely.

10   THE COURT:  -- secretions or whatever?

11   MS RIECHERT:  So Apple conducted various very confidential

12       studies and it asked people who worked there, "Do you

13       want to participate in this study?"  And some people

14       said "yes" and some people said "no".  Some of those

15       studies related to cervical mucus, if you want to call

16       it that, but the fact that Apple was conducting these

17       studies is what is confidential.  And that is what we

18       designated as confidential under the protective order.

19       And I agree with your Honour that if the plaintiff

20       doesn't think that those things should have been

21       designated as confidential, then she's entitled and

22       we're entitled to go through the process in the

23       protective order.

24   THE COURT:  Right.

A Court Reporting Transcript by Epiq

1    MS RIECHERT:  But she totally preempted that process in the

2        protective order and is continuing to do so even today

3        by filing the very things, the very deposition

4        testimony that we've designated as confidential.  So

5        what she did wrong is to post in public forums the very

6        deposition testimony that we had designated as

7        confidential.  And that's what the protective order --

8    MS GJOVIK:  There's a fundamental misstatement you're making

9        which is that this is secret.  It's public.  Apple has

10       press releases saying they do these studies.  There's

11       public releases from Stanford and Harvard about these

12       studies.  None of these features are secret.

13   THE COURT:  But Ms Gjovik, you're not listening to me.  I'm

14       trying to tell you something.

15          If those excerpts that have been designated

16       confidential should not be confidential, for all the

17       reasons you are stating, you need to write that to me

18       in a motion, and you need to do a declaration under

19       penalty of perjury explaining why each thing should not

20       be confidential so that I can make a ruling.

21   MS GJOVIK:  I'm sorry, your Honour.  I thought the order

22       meant that they had to be the ones to file the motion

23       to bring it to you, so I was waiting for them to go

24       through this process, and they've been dragging it out

A Court Reporting Transcript by Epiq

1    for months.

2  THE COURT:  No.  If you want to -- if you want to challenge

3      the confidentiality, you can do that at any time.

4      That's what the order says.  You can do it at any time.

5      And if the parties meet and confer and they can't come

6      to some agreement, you can file a motion with the court

7      to have those de-designated.

8  MS GJOVIK:  I would have done that the next day, if I had

9      known.

10  THE COURT:  Or the order also talks about the fact that they

11      can waive their confidentiality designation if they

12      don't file a motion to maintain the confidentiality.

13  MS GJOVIK:  That's what I thought too.  But I still stand

14      behind this, that it's not confidential --

15  THE COURT:  But they still have time --

16  MS GJOVIK:  -- because it's work conditions, it's preempted,

17      and this is also why the NLRB is supposed to say it's

18      a separate issue.

19  THE COURT:  But that's -- but that's premature, Ms Gjovik.

20  MS GJOVIK:  It's not because -- sorry, so I'm just going to

21      go with my written objections on that.  I detailed all

22      the law.  I feel very strongly that the law supports my

23      position on that.  So I'm not going to delete anything,

24      and I'm not going to promise to not -- [sic] to stop

1        talking about these topics, but I completely agree with

2        you about this generally.  And if this was something

3        like product specs or an actual secret something,

4        I would agree with you.  But this is my own experiences,

5        my existing whistleblower complaints.

6             So these are things I've pled in my complaint from

7        my 17200 complaint, my whistleblower retaliation

8        complaints.  This is stuff, details that are in the

9        written docket.  And now Apple is starting to claim that

10       my actual, like, legal claims are secret so I can't

11       talk about it and I have to take months where I can't

12       talk about the fact they're even trying to claim that

13       my legal claims are secret, is just nonsense to me.  It

14       makes my head explode.

15  THE COURT:  Well, it actually doesn't take months.  It just

16       takes a matter of filing a motion with the court.  And

17       if Apple is being unreasonable and asking for things

18       that are already out in the public domain to be kept

19       confidential, the court is not going to look very

20       fondly on wasting the court's time on confidentiality

21       designations that should not be made.  So --

22  MS GJOVIK:  If I'm able to file -- so your Honour, I feel

23       like I've gotten in trouble constantly for not meeting

24       and conferring with them endlessly and waiting for them

A Court Reporting Transcript by Epiq

1        on everything, and so I feel powerless here.  But if

2        this is something that I can just file a motion for and

3        challenge right away, I would have done that right

4        away.  I just felt like it wasn't going to be fruitful

5        based on how my motions have been handled previously.

6   THE COURT:  No, you can file the motion.  But I felt like

7        you started the meet-and-confer process.  It's just that

8        you didn't finish it.

9   MS GJOVIK:  They haven't, though.  And I objected a long

10       time ago, and I feel like this would have been resolved

11       had they not done that blanket thing --

12  THE COURT:  Yeah.

13  MS GJOVIK:  -- in December.  That dragged it out for months.

14       They should have just done it during the actual depo.

15  THE COURT:  And so what is Apple's plan in terms of

16       responding to -- it sounds like Ms Gjovik has put

17       together a whole spreadsheet for your consideration

18       about the various things that she objects to in terms

19       of confidentiality designation.

20  MS RIECHERT:  Right.  She did that, but after she had

21       already posted the designated portions of the

22       deposition and is continuing to post the designated

23       portions.

24  THE COURT:  Right.

A Court Reporting Transcript by Epiq

1    MS RIECHERT:  So, yes, she did at whatever it was, 1.19 pm,

2         and that starts under the protective order the 14-day

3         process for us to meet and confer with respect to her

4         designations.

5    THE COURT:  Correct.

6    MS RIECHERT:  And then if under section 6.3 of the

7         protective order, if we can't reach an agreement, then

8         Apple has to file a motion regarding -- to retain the

9         confidentiality under local rule 7 within 21 days of

10        the initial challenge and it's all in the protective

11        order.

12   MS GJOVIK:  But I feel like, to move forward if Apple wants

13        to file a motion for sanctions or contempt, it should.

14        A TRO -- file it.  File the actual paperwork.  I don't

15        want to argue that on this call.  I would love to talk

16        about how we can get them to actually participate in

17        the designation process, per the protective order to

18        move forward on this.

19   THE COURT:  But Ms Gjovik -- Ms Gjovik, the reason why

20        I wanted to have this call is because when I had found

21        out that you'd already posted things that had been

22        designated confidential, right or wrong, the protective

23        order requires you to not do that until it's resolved

24        by the court.

1    MS GJOVIK:  But it doesn't apply to the things that they

2        claimed and I have preemption -- like, if they file

3        these motions, I feel confident I would win and they're

4        going to get in trouble.  They're going to lose the NLRB

5        charge for even filing it.  So I feel very confident.

6        And this is also where the NLRB says, like, the court

7        shouldn't have to get involved in this, because it's a

8        very different dynamic when you have a labour dispute.

9        They actually encourage and statutorily protect

10       publicising labour disputes.  So this isn't --

11   THE COURT:  I'm not really sure what the NLRB has to --

12   MS GJOVIK:  Well, that's the thing, your Honour.  They

13       should file the motion so we can have a full briefing

14       and show whatever judge is hearing it the actual law

15       behind all of this.  Instead, they're trying to, I feel

16       like, hijack this process to try to coerce me to do

17       stuff that's, again -- so I don't want to argue.  I'd

18       rather just them respond to my spreadsheet --

19   THE COURT:  But you have to take it down.

20   MS GJOVIK:  So that's -- your Honour, the fact that you've

21       even said that, I have to put in the NLRB charge now

22       because they've now caused you to say that and that's

23       coercive in --

24   THE COURT:  You have to take it down because the court

1       order --

2       MS GJOVIK:  I'm not going to, your Honour.  I'm sorry.

3          You're going to have to order me to take it down.

4       THE COURT:  I'm ordering you to take it down right now.

5       MS GJOVIK:  You're going to have to write it in an order for

6          me to do it.  I'm not going to do it willingly.  I feel

7          like it's completely within my rights.  I feel like I've

8          briefed it.  I would ask your Honour to read in detail

9          my opposition --

10      THE COURT:  No --

11      MS GJOVIK:  -- the legal cites, the statutes, the case law.

12      THE COURT:  I'm reading the court's protective order that's

13         been on file since July, and you cannot put things in

14         the public docket that have been designated

15         confidential without getting the court order first.

16      MS GJOVIK:  Your Honour, you started this saying you would

17         not say that.  You said this wasn't going to be about

18         any injunctions.  This wasn't going to be about any

19         contempt.  This wasn't going to be about sanctions.

20         This is just going to be informal.  And then now you're

21         threatening to --

22      THE COURT:  Because it's not.  If you just comply -- if you

23         just comply with the order and go through the process

24         that the order requires, it doesn't involve any of

A Court Reporting Transcript by Epiq

1     that.

2   MS GJOVIK:  I'm not going to voluntarily do something that

3       I objected to and then make it informal because -- your

4       Honour, I'm sorry.  I'm not.  And I think that's very

5       coercive to say you're not going to issue sanctions but

6       then say only if I voluntarily do what the sanctions

7       would tell me to do is very unfair.

8   THE COURT:  That's -- I'm asking you to comply with the

9       order, Ms Gjovik.  The order is very specific --

10  MS GJOVIK:  I feel like I have.  I feel like I'm not in

11      violation of it, and --

12  THE COURT:  You posted it in the public domain before having

13      an order from this court saying these things are not

14      confidential.

15  MS GJOVIK:  Well, what did I put out there?  I didn't put

16      any documents.  They haven't designated a single

17      document as confidential.

18  THE COURT:  We're talking about deposition testimony right

19      now.

20  MS GJOVIK:  Yeah.

21  THE COURT:  That's all we're talking about.

22  MS GJOVIK:  I haven't posted anything from a deposition

23      testimony that they said was confidential other than

24      the words "menstruation" and "cervical mucus."

1    THE COURT:  I think I saw an entire section of the

2        transcript.

3    MS GJOVIK:  They didn't claim that was confidential.

4    THE COURT:  That was not part of the part --

5    MS GJOVIK:  That was them trying to say I'm not now going to

6        claim everything going forward is confidential, and

7        I said that's the NLRB violation, you can't do that.

8        And it was directly after I was protesting about NLRB.

9        But I didn't include what she actually said after she

10       said "now it's confidential."

11   THE COURT:  Is that --

12   MS RIECHERT:  She absolutely posted on the public, in her

13       Twitter account and on the court records and many other

14       places, her website, information -- the actual

15       deposition testimony that we had designated as

16       confidential.

17   MS GJOVIK:  The menstrual words.  Just menstrual,

18       menstruation, cervical mucus, that's it.

19   MS RIECHERT:  We had designated those as confidential under

20       the protective order, and you cannot, under the

21       protective order, publicly disclose that until a court

22       says you can do it.

23   MS GJOVIK:  So I'm not allowed to say the word

24       "menstruation" publicly until we resolve our dispute?

A Court Reporting Transcript by Epiq

1    THE COURT:  You're not allowed to post the deposition

2        testimony.

3    MS GJOVIK:  I didn't.

4    THE COURT:  That's what --

5    MS RIECHERT:  You did, actually.

6    THE COURT:  -- it looks like from what I'm looking at, these

7        excerpts are specifically quoting deposition.

8    MS GJOVIK:  On the NLRB -- so they complained about -- this

9        is why I'm like we need an evidentiary review so it's

10       not just Apple accusing random stuff.  The Twitter post

11       they're complaining about just said, I was complaining

12       that Apple was saying my menstruation was their IP and

13       my menstruation was secret.  I just used the word

14       "menstruation" and they're saying that was leaking,

15       that I used the word "menstruation" and complained,

16       they said that me saying "menstruation" was secret, and

17       they said that's a breach.  I said no it's not.

18   MS RIECHERT:  No.  You posted the NLRB charge with the

19       actual deposition words unredacted.  That's the problem.

20   THE COURT:  That's what I saw, was the actual deposition

21       testimony.

22   MS RIECHERT:  Not the use of the word "menstruation."

23   MS GJOVIK:  But you quoted a Tweet where you redacted the

24       word "menstruation" that didn't have anything about the

A Court Reporting Transcript by Epiq

1          transcript.  This is where -- they're making a ton of

2          accusations, and if their only complaint is about this

3          NLRB charge, then it's -- we have anti-SLAPP.  We have

4          the preemption.  We have this is a public record.  We

5          have -- whatever.  And ultimately, they should be

6          concerned about admissibility for trial, which that's

7          not at issue here.

8               They still are designating all this, of whether

9          this is actual admissible evidence or not, and I should

10         be allowed to complain when I think they do things that

11         violate federal statutes and an ongoing consent

12         agreement they signed with me and NLRB, promising they

13         would stop doing exactly this.  And if my coworkers

14         don't know that they're still doing this, my coworkers

15         are at a huge disadvantage because they're very tricky

16         and sneaky and like this, doing stuff behind the

17         scenes.

18               So they need to know -- I have a ton of coworkers

19         who are also in litigation with them.  And it's very

20         hard to litigate with them because they have these huge

21         firms who are constantly doing dirty tricks to try to

22         win outside the merits.  And so any kind of thing like

23         this we can share to help each other is huge.  And

24         that's the organising and sharing information and

1        trying to have each other's backs.

2            And that's why I was also like, this isn't

3        something like the five-page letter and informal, you

4        know, conference if they're actually asking me to

5        suppress my speech.  If I was to delete those with

6        tweets with thousands, tens of thousands of views, all

7        my coworkers watching, what that says is "don't talk

8        about your work conditions, don't complain about Apple

9        or they'll drag you in front of a judge who will make

10       you delete your already published speech and get you in

11       trouble, so just shut your mouth and stop organising".

12       And that's why the NLRB protects this stuff, because it

13       has a huge effect.

14   THE COURT:  Ms Gjovik, Ms Gjovik, if you are unwilling to

15       comply with the protective order, then you can say so.

16       I hear you're telling me you're not going to comply --

17   MS GJOVIK:  I will comply with the protective order.

18   THE COURT:  No, you're telling me you're not --

19   MS GJOVIK:  But I don't believe that it applies to me

20       deleting my tweets.

21   THE COURT:  You're telling me you're not going to comply

22       because you're allowing them to be in the public record

23       without having a judge's order first --

24   MS GJOVIK:  But, your Honour, they just said my tweet did

A Court Reporting Transcript by Epiq

1       not include the transcript.  And then now they're saying

2       I have to delete my tweet even though it didn't include

3       the transcript.  So what are they even asking for?

4    THE COURT:  So then we'll have to have -- what Apple will

5       have to do, if you guys can't work this out, is Apple

6       will have to file its motion --

7    MS GJOVIK:  Yeah.

8    THE COURT:  -- to keep everything designated confidential,

9       confidential.  We'll have a motion hearing date, and if

10      you are in violation of the protective order,

11      Ms Gjovik, I was trying to prevent this but, you know,

12      they can file a motion for sanctions because it is

13      sanctionable conduct.

14   MS GJOVIK:  They have to get a release of the stay in my

15      bankruptcy and then they should file it, and they

16      should sign it with a rule 11 signature and promise

17      they're not doing this for an improper purpose.  And

18      then we should argue it on the merits.

19         I'm not afraid of them filing a motion for

20      sanctions.  I am afraid for them going behind the scenes

21      to try to coerce me to drop complaints and stop

22      exposing stuff I feel is unlawful conduct.

23   THE COURT:  I don't think that's what happening.  I think

24      what's happening is they're trying to enforce the

1      protective order right now, Ms Gjovik, and I'm trying

2      to get you to understand that you have to comply.

3   MS GJOVIK:  It doesn't apply here, though.  And I feel very

4      confident about that.

5   THE COURT:  Okay.  It's up to you.  I'm fine with that if

6      that's the way you want to keep it.  I just wanted to

7      have this conversation with you so that I could try to

8      get you back on track to comply with the protective

9      order process.  If you're not going to do it --

10  MS GJOVIK:  Your Honour, again I just want to object for the

11     record -- thank you for recording this -- but this was

12     misleading to come in and say that that was informal

13     and it wouldn't be about sanctions or contempt or

14     making me delete tweets.

15  THE COURT:  It's not.

16  MS GJOVIK:  And then you just said the whole thing was about

17     trying to get me to delete my tweets.

18  THE COURT:  Because you've jumped the gun.

19  MS GJOVIK:  I don't think I did.

20  THE COURT:  You posted --

21  MS GJOVIK:  And I feel like there hasn't actually been an

22     evidentiary discovery of what happened.  And these

23     assertions are being made against me that are going to

24     be used and quoted by Apple in summary judgment and

A Court Reporting Transcript by Epiq

1     quoted by Apple in all these other proceedings without

2     actually understanding what was shared or why, because

3     Apple also skipped the whole, like, what was even their

4     designations?  What was this even about?  And when it

5     come out that this is completely already public

6     information, already pled in complaints, already

7     whistleblower disclosures, already interviews --

8  THE COURT:  And you may be right, but you have to follow the

9     process and file that in a motion to say why it should

10    not be confidential --

11 MS GJOVIK:  If it was a document, your Honour.  But this is

12    testimony about my own experiences.

13 THE COURT:  But they're able to --

14 MS GJOVIK:  That the order says it doesn't apply to that.

15 THE COURT:  No, the order actually talks about "for

16    testimony given in a deposition."

17 MS GJOVIK:  Yeah.

18 THE COURT:  How it's supposed to be done.

19 MS GJOVIK:  But it doesn't apply to prior existing facts,

20    information gained in other places.  They're going in

21    and taking stuff that I knew ahead of it, my own

22    experiences, stuff that's already public --

23 THE COURT:  That would be the kind of stuff that you would

24    put in your motion to object to the designation --

A Court Reporting Transcript by Epiq

1    MS GJOVIK:  That's what I'm saying.  We should do that.

2        I don't want to do it this way.  I want to do the

3        motions with the evidence and the legal arguments,

4        because I think I'd win and Apple would get in trouble

5        for what they're doing right now.

6    THE COURT:  Okay.  So Apple will have to file the motion.

7    MS GJOVIK:  Yes.

8    THE COURT:  And Ms Gjovik will file her opposition --

9    MS GJOVIK:  Yes.

10   THE COURT:  -- to that motion.  And we will look at each and

11       every part of what has been posted in the public

12       record, and have a full hearing.

13   MS GJOVIK:  I don't love that this happening, but I think

14       that's the way to do it.

15   THE COURT:  35 days.  I was trying to avoid formal motion

16       practice by just trying to get the parties to work this

17       out informally, but it sounds like we have to go

18       through the whole formal process.

19   MS GJOVIK:  Well, I would also ask your Honour, can Apple

20       just drop this?  Like, you've been -- the whole thing

21       was about "Well, Ashley, delete your tweets".  And it

22       never was, "Apple, is this actually that important to

23       you?" was never asked.

24   THE COURT:  Well, that's not -- the question is not whether

A Court Reporting Transcript by Epiq

1       "is that important to you?"  The question is whether or

2       not the designation of confidentiality has been

3       addressed by the parties.  And it sounds like it hasn't

4       been fully addressed.

5   MS GJOVIK:  They're the ones not addressing it, and they're

6       the ones asking to get me sanctioned.

7   THE COURT:  But the protective order governs how this

8       process is supposed to work.

9   MS GJOVIK:  And I'm following it.  They're not.  They've

10      violated it multiple times, and I feel like this stuff

11      I've shared, as I've said, is not covered by the

12      protective order.  So I feel like the whole premise is

13      just false.

14  THE COURT:  Okay.  So Apple knows how it needs to proceed.

15      And when we -- we will schedule a motion, 35 days.

16      We'll have a hearing on one of my law and motion

17      calendar days, on that motion for keeping the

18      confidentially designated parts confidential.

19  MS GJOVIK:  Could we do this just for all of theirs -- like

20      do a bulk one?  Or how would you want to do this?

21      Because they have like 160 designations they made.

22  THE COURT:  Well, if it's -- if Apple seriously wants all

23      160 designations to remain confidential, then it will

24      have to meet its burden to show why all 160

A Court Reporting Transcript by Epiq

1     designations should be kept confidential.

2  MS GJOVIK:  Could we do it all in that hearing so we don't

3     have to do this multiples times?

4  THE COURT:  Oh, yeah.  But the purpose of -- but the purpose

5     of the meet-and-confer process is to try to narrow down

6     the disputes.  So it could be that, you know, maybe 20

7     of those 160, the parties can agree, "Okay, that's

8     fine, we're not going to try to keep that part

9     confidential."

10  MS GJOVIK:  And I already told them for some of these, well,

11     I might disagree that it's not confidential, that if

12     they want to redact it on their evidence, then it's not

13     worth bringing it to your Honour and bothering your

14     Honour with it.  I don't know how that's supposed to

15     work.

16       But there's stuff where it's, like, if this is just

17     about evidentiary admission and you really feel so

18     strongly that you need to redact this thing that I

19     don't think is confidential at all but is immaterial,

20     then I don't care.  And so I was just kind of conceding

21     on some of them.  I don't know if that's how you're

22     supposed to do it, but --

23  THE COURT:  Well, that's part of your discussion when you're

24     meeting and conferring with Apple.

1    MS GJOVIK:  Yeah.  Well, so I said that.  And so I'm trying

2        to narrow it from my side too.  So it's up to them if

3        they want to fight all of this just for the sake of

4        having your Honour say it's confidential or not,

5        I guess.

6    THE COURT:  Right.  Because I'm not going to make an opinion

7        one way or the other about if it's confidential right

8        now.  I'd have to look at what each and every thing is

9        that's been designated confidential and then make

10       a determination about whether or not each and every one

11       of those 160 things, if that's how many things we're

12       talking about should or should not be designated

13       confidential.  But it's so much better and such a better

14       use of time if the parties meet and confer about the

15       160 designations.

16   MS GJOVIK:  I agree.  I tried.

17   THE COURT:  And then only come to me for the things that you

18       can't agree on.

19   MS GJOVIK:  Agreed.  Again, this was -- I complained about

20       this with the HIPAA thing Apple filed.  They're

21       proactively filing stuff without me even objecting to,

22       like, object to my objections I never even made and

23       bothering your Honour with stuff we could just resolve

24       ourselves.  And I feel like that's a waste of time.

A Court Reporting Transcript by Epiq

1    THE COURT:  All right.  So is Apple going to, then, just go

2        ahead and try and address the 160 designations and

3        I guess plaintiff's Excel spreadsheet on that and try

4        to see if you can meet and confer on some of those

5        things, or just file the motion?

6    MS RIECHERT:  So first of all, we will absolutely follow the

7        protective order process to meet and confer.  We now as

8        of two days ago finally got the plaintiff's objections

9        to our designations.

10    THE COURT:  Okay.

11    MS RIECHERT:  And we will respond to that as provided in the

12        protective order.  And if we can't agree, we will follow

13        the protective order.  But this is totally different

14        from the fact that the plaintiff has violated the

15        protective order, and I was hoping, as your Honour was,

16        that we could work that out.  We did not want to bring

17        a motion for sanctions or for contempt for violation.

18        We hoped --

19    MS GJOVIK:  Because you'll lose, Melinda.  Just file it.

20    MS RIECHERT:  Wait, wait, I'm talking.

21    MS GJOVIK:  Just file it.  If you're going to do it, just

22        file it.

23    MS RIECHERT:  So we were hoping that, as your Honour

24        mentioned, that we could work this out and we wouldn't

A Court Reporting Transcript by Epiq

1        have to bring a sanctions and contempt motion, because

2        that would be the better way to resolve this.  But if

3        your Honour isn't willing to order her to take it down

4        as we requested, then we'll have to decide what the

5        process is.  But it's unacceptable for a party to

6        a lawsuit to violate a protective order.  We were

7        willing to let it go --

8  MS GJOVIK:  I didn't violate it, though, Melinda.  It's not

9        violated.

10 MS RIECHERT:  We were willing to let it go if we could just

11        get resolution with her taking it down and agreeing not

12        to continue to post deposition transcript --

13 MS GJOVIK:  I object to that too.  The email they sent me

14        didn't even tell me what they are saying the violation

15        was, it didn't point to what social media it was, it

16        didn't point to what filings, it didn't designate which

17        words they were concerned about.  And that's another

18        things NLRB finds, because that means they want me to

19        go self-censor.  They want me to go read all of my posts

20        and figure out what might be upsetting Apple and delete

21        all of it, and then not say anything more that also

22        might upset Apple with Apple -- I'm -- not even

23        outlining what they're supposedly upset about, which

24        their email is completely vague.  There is nothing in

1      it.

2   MS RIECHERT:  What we're upset about is the posting of the

3      deposition transcript portions which we designated as

4      confidential under the protective order, and you posted

5      unilaterally those designated portions in violation of

6      the protective order.

7   MS GJOVIK:  Are you talking about the quoted portions --

8   THE COURT:  The actual --

9   MS GJOVIK:  -- in the NLRB charge?

10  THE COURT:  The actual transcript --

11  MS RIECHERT:  Yes.

12  THE COURT:  I did see the actual transcript that was

13     attached.

14  MS GJOVIK:  And that wasn't confidential.  That portion went

15     up until the point where she said, "Now everything is

16     confidential", and then I didn't include anything after

17     that.  So it's not confidential.  It was --

18  THE COURT:  Is that right?

19  MS RIECHERT:  You included the parts from page 164 -- the

20     parts that we quoted in the letter to the judge.

21  MS GJOVIK:  You're talking about the actual PDF of the

22     transcript, Melinda; right?

23  MS RIECHERT:  I'm talking about the parts of the transcript

24     that we had designated as confidential that you posted,

1      and the actual deposition --

2    MS GJOVIK:  She's confusing this, your Honour.  The pages

3        I included from that transcript, I specifically did not

4        include anything that had a pending designation and

5        which I felt was direct evidence of them violating the

6        NLRB because that was me shrieking in that transcript,

7        "You're violating the NLRB, Melinda.  Don't do this".

8        And then she's like, "I'm going to do it anyways".  But

9        this stuff, otherwise --

10   MS RIECHERT:  You've already brought these charges against

11       me on this.  But we designated page 164.  164 was the

12       portion that we -- one of the portions we designated.

13       And you posted that exact portion of the transcript,

14       lines 7 to 17.

15   MS GJOVIK:  She's talking about me quoting parts of the

16       transcript in the NLRB charge which was different than

17       the PDFs of -- this is why I was like, we need an

18       evidentiary hearing.  Because your Honour should have

19       this evidence in front of yourself to actually see

20       what's being said to make an educated decision.  Right

21       now, this is probably very confusing.  You don't even

22       know what we're talking about.

23   THE COURT:  Well, I --

24   MS RIECHERT:  It doesn't matter what was said.  The fact is

1      we designated it was confidential --

2  MS GJOVIK:  It does matter what was said because you're

3      accusing me of saying specific things as violations.  So

4      it does matter what was said because that would be the

5      violation.  So that's very critical, Melinda.

6  THE COURT:  So I would say that since Ms Gjovik is disputing

7      that she's actually posted the parts of the transcript

8      that were designated confidential, that, you know, the

9      parties don't have much choice, other than to just do

10     the full motion process.  Because --

11 MS GJOVIK:  I think it would be a good way to do it, so we

12     can just go through the normal process.

13 THE COURT:  I don't have all of that level of detail to know

14     exactly where each thing comes from.  We need -- I'll

15     need formal declarations telling me exactly what was

16     posted where and --

17 MS GJOVIK:  Prior restraint raises the highest level of

18     scrutiny --

19 THE COURT:  And how much --

20 MS GJOVIK:  -- you need very -- a lot of detail toward

21     documents -- yes.

22 THE COURT:  -- confidentially designated part was posted and

23     where.  You know.

24 MS GJOVIK:  Yeah.

1    THE COURT:  So, unfortunately, the parties are not able to

2        resolve this informally, so then that leaves nothing

3        but the formal motion practice as an option.  And it's

4        really unfortunate, because it really does use up a lot

5        of the court's time.

6    MS GJOVIK:  I'm sorry, your Honour, for insisting on that.

7        I don't want this at all, and I feel like their motion

8        is bogus and that they shouldn't be filing it.  But if

9        they want to do this, if they want to make this request

10       and they won't drop it, then I feel like they should do

11       it on proper paperwork instead of trying to do it in

12       the shadows.  That's my position.  Otherwise, then I'm

13       conceding my rights and hurting me and my coworkers

14       just because they're doing something unlawful and

15       unnecessary, and that's not right either.

16   THE COURT:  Mm-hmm.

17   MS GJOVIK:  So I'm sorry for the extra work and burden and

18       all of this.  And if I end up -- you end up deciding I'm

19       the wrong one, then I'm sure you'll let me know in your

20       order and figure it out.

21   MS RIECHERT:  We're going to have to file a motion for

22       violating the protective order, and we were hoping not

23       to have to do that --

24   MS GJOVIK:  Yes, go ahead, Melinda.  I told you to.  You

A Court Reporting Transcript by Epiq

```
1        have to get the stay lifted first, though.

2   THE COURT:  You're going to have to -- yeah, you'll have to

3        file a full notice motion.

4   MS GJOVIK:  They're hoping I'm afraid of them, so I just

5        voluntarily censor my speech.  But after four or five

6        years of this, I'm just not.  They should just file it,

7        if they're going to file it.  Because I don't think they

8        are going to win.  But they should just --

9   MS RIECHERT:  Would that be filed before Judge Chen, the

10       motion for violation of the protective order?  Because

11       that's not a discovery motion, it's --

12  THE COURT:  No.  No, that would be a discovery motion filed

13       with me.

14  MS RIECHERT:  Okay.

15  MS GJOVIK:  Is -- so if they're requesting an injunction,

16       though -- so if they're requesting to have stuff

17       deleted and they're requesting --

18  THE COURT:  No.  There's no injunction, but there -- if you

19       actually are -- if it turns out the information shows

20       that you really are in violation of the protective

21       order, the court can order sanctions.

22  MS GJOVIK:  So that -- how does -- so when I was looking at

23       the rules, that would be --

24  THE COURT:  A sanction could be --
```

1   MS GJOVIK:  -- if contempt -- based on evidence in

2       a hearing, that's sent to Judge Chen and Judge Chen

3       issues then the finding of contempt and whatever it is?

4   THE COURT:  No, no, no.  I don't know if it's going to be

5       any sort of motion for contempt.  I don't know what

6       Apple is going to file, but they're talking about

7       filing a motion regarding violating the protective

8       order.  So that's one.

9   MS GJOVIK:  This would be like a formal 25-page, though, not

10      this five-page thing?

11  THE COURT:  Right.  A full motion.

12  MS GJOVIK:  Okay.  Good.

13  THE COURT:  A full motion with, you know, notice motion, 35

14      days notice motion.

15  MS GJOVIK:  And would actually get a hearing and oral

16      arguments and evidence and all that?

17  THE COURT:  Right, yeah.

18  MS GJOVIK:  Okay.  Cool.  I mean, not cool that Apple is

19      doing this, but I like due process, and if they're

20      going to do it, I'd much rather it be out in the open

21      in their record and other people to see what they're

22      doing.  So it's known.

23  THE COURT:  Okay.  And if you do file anything --

24  MS RIECHERT:  So it sounds like Ms Gjovik is going to

A Court Reporting Transcript by Epiq

1    continue to post confidential information --

2    MS GJOVIK:  Melinda, then you can file a TRO.  There's

3        a motion for that too and you get to justify with

4        evidence and sworn declarations and actually argue why

5        this is harming your company, and all that stuff.  This

6        isn't an informal phone call.

7    THE COURT:  You can file whatever -- Apple, it's -- I think,

8        Ms Gjovik, you're missing sort of the point of this

9        phone call, and the point of this phone call is to

10       really avoid all of these long motions.

11   MS GJOVIK:  I know, your Honour, but that's where -- Apple

12      and I are way past that.

13   THE COURT:  And in discovery, usually parties try to work

14      things out when it comes to discovery.

15   MS GJOVIK:  But they're trying to get me to delete my

16      Twitter posts that are talking about protected activity

17      and federal NLRB charges against Apple.  Like, that's

18      just outrageous.  I compromise with them constantly,

19      just so you know.  I'm constantly picking my battles.

20        There's, like, 20 motions I would have filed to

21      you, and letters, but I'm just not.  I'm letting a ton

22      of discovery issues go because I still think I can win

23      on the merits and summary judgment.  And I don't want to

24      bother your Honour, even though I could raise a ton of

1        stuff.  I'm just not.  It's not worth your time, it's

2        not worth my time.  I think Apple gets their kicks on

3        fighting this stuff.  So I'm just not.  Which might be

4        why they're now stirring up stuff that doesn't even

5        need to be stirred up.

6   THE COURT:  Mm-hmm.

7   MS GJOVIK:  So maybe I should just file a couple so they can

8        get it out of their system a little bit, instead of

9        this.  But it's too late, I guess.

10           So, Melinda, if you're going to file these motions,

11       if your client is insisting on this, then just file

12       them.  I'm not going to do it in the background.  I have

13       hundreds of thousands of coworkers watching every move

14       I make, and how I react with you informs how they're

15       going to be organising and interacting with your

16       client.  So I can't budge.  So if you're going to do

17       this, you're going to do this.  We're going to have to

18       fight it out.  It's going to waste the court's time, and

19       then you're going to have egg on your face when it

20       comes out that what you're trying to fight is public

21       information and whistleblower disclosures.  But that's

22       your client's choice.

23  MS RIECHERT:  That's not what I was trying to fight.  It's

24       the deposition designations.  That's all I care about.

1       Otherwise we can talk about anything you want --

2    MS GJOVIK:  Well, then send me your stuff.  Let's work it

3       out.  You haven't even emailed me anything other than

4       threats to delete tweets.

5    THE COURT:  I think the next best thing to do would be to

6       respond to Ms Gjovik's whatever she sent you with the

7       spreadsheet attached so that you can just --

8    MS RIECHERT:  Yes.

9    THE COURT:  I know it's only been a few days, so you need

10      to --

11   MS RIECHERT:  Right.  But that doesn't excuse violation of

12      the protective order.  That's my problem is, if a party

13      to a case doesn't follow a court's order, there has to

14      be consequences to that.

15   MS GJOVIK:  But you haven't established that I violated it.

16   MS RIECHERT:  I will definitely follow the --

17   THE COURT:  Yeah, but I think if you want me to order her to

18      take it -- take down certain things, then I need

19      a motion so you can tell me exactly what --

20   MS RIECHERT:  Yeah.

21   THE COURT:  -- to take down, where it needs to be taken

22      down, what it says.

23   MS GJOVIK:  And the point, Melinda, is it's your choice.  Do

24      you want to file that motion tomorrow, or do you want

1    to try to do these designation disputes too, maybe in

2    parallel?  Or is it just about trying to get me to

3    delete tweets?

4        Because it looks bad that you're not even working

5    through the normal process on the basic stuff.  We're

6    months behind.  The deposition was in December.  And you

7    said you wanted to do a second deposition.  So now

8    you're going to schedule the second deposition until we

9    work this out?

10   THE COURT:  Are you having another deposition?

11   MS GJOVIK:  They said that -- they finished their seven

12   hours but are insisting they want more.  And this was

13   another thing I decided not to raise, your Honour, and

14   I gave them four more hours.  They haven't scheduled it,

15   though.  It's been like a month since they said they

16   wanted it.

17   THE COURT:  Okay.

18   MS RIECHERT:  We only got your objections to the

19   designations two days ago.

20   MS GJOVIK:  That doesn't stop you from scheduling your

21   subsequent deposition you said you want, and then you

22   might try to hold up our summary judgment saying you

23   need it after you didn't schedule it for months like

24   you did the last time.  Just schedule it.  If you want

A Court Reporting Transcript by Epiq

```
 1        it, just schedule it.  I don't even have to give it to

 2        you and I'm giving you four more hours and you won't

 3        schedule it.

 4   MS RIECHERT:  We're a little bit off track right now, which

 5        is where we were with the deposition, which is why it

 6        took so long.  So what we're talking about now is the

 7        deposition designations and the violations of

 8        protective order.  We are --

 9   THE COURT:  Right.

10   MS RIECHERT:  We will have talked separately about

11        additional depositions.  We've talked separately about

12        the medical records which you're not giving us.  We're

13        going to work through -- with the court on the medical

14        records --

15   MS GJOVIK:  I'm giving -- no.  The medical records, you have

16        not given me a [request for] document production.  I've

17        given you documents.  The only thing you're asking for

18        is a HIPAA waiver, which I said I wouldn't give.  But

19        you also are refusing to serve your own subpoenas.  Have

20        you served your subpoenas yet, Melinda?  You've had them

21        for a year.

22   THE COURT:  Ms Gjovik.

23   MS RIECHERT:  So we agree --

24   THE COURT:  Ms Gjovik -- yeah.  I don't want to get off on
```

A Court Reporting Transcript by Epiq

1       all of these other areas involved in your litigation.

2       I'm only here to really address --

3    MS GJOVIK:  I know, your Honour.

4    THE COURT:  -- the issue --

5    MS GJOVIK:  She's raising this, though, to try to prejudice

6        the situation.  She's trying to make it sound like I'm

7        the bad one.

8    THE COURT:  I'm actually not even listening to any of that.

9        Because it's not relevant to what I'm here for.

10   MS GJOVIK:  Okay.

11   THE COURT:  I'm only here to talk about the protective

12       order, the process involved with the protective order,

13       and to make sure that the parties are in full

14       compliance with the protective order.  The protective

15       order is an order of this court.  And so, therefore, it

16       must be complied with by both sides.  So I just want to

17       remind the parties of that.

18   MS GJOVIK:  Oh, sorry.  Your Honour, to that point, if Apple

19       is going to do this too.  Apple did violate it a bunch

20       of times.  And I would also -- like, if they're going to

21       complain about me violating it, then I guess I should

22       complain about them violating it.  So would I file,

23       like, a countermotion if I also want to accuse them of

24       violating it?

```
 1   THE COURT:  I think that you need to meet and confer with
 2       the parties about the claim --
 3   MS GJOVIK:  I've already told them about this and documented
 4       it.  Like, the blanket thing where they had five weeks
 5       of five hours of testimony claimed was completely
 6       improper.
 7   THE COURT:  Whatever your other issues are regarding
 8       discovery, you should meet and confer before filing any
 9       sort of --
10   MS GJOVIK:  Sorry.  I meant when you said that if Apple is
11       going to proceed to file theirs, but do you
12       have -- would I file, like, a separate motion if I'm
13       going to also make counteraccusations against them
14       about violations?
15   THE COURT:  Whatever your allegations are, you would file as
16       a separate letter, discovery letter, yes.
17   MS GJOVIK:  Oh, sorry.  So you had said "motion".  So if
18       they're accusing me of violating the protective order,
19       you said they should file a motion.  So if I'm going to
20       accuse them of violating the protective order, which
21       I already have and we've already been talking about
22       it --
23   THE COURT:  Mm-hmm.
24   MS GJOVIK:  -- I would file a motion also?
```

1    THE COURT:  Yes.  If you want to -- you can file a motion as

2        well, if you believe they have violated the

3        protective --

4    MS GJOVIK:  Okay.  We should schedule it that way, then, if

5        they're going to do it.  Because I also want to call out

6        that they were violating it too, because I think that's

7        important context.  And also --

8    THE COURT:  Well, I'm not going to schedule anything.

9    MS GJOVIK:  Okay.

10   THE COURT:  The parties are going to file whatever they're

11       going to file and they're going to notice their motions

12       how they choose to notice them.

13   MS GJOVIK:  Oh, I'd assume you'd want one hearing where

14       you'd hear both if we're both filing.

15   THE COURT:  It depends.  It doesn't necessarily have to be

16       that way.

17   MS GJOVIK:  Okay.

18   THE COURT:  Because you may be arguing completely different

19       things about the protective order that are being

20       violated than what they're talking about.  Right now,

21       we're talking about this specific designation from your

22       deposition that they are saying is what is violating --

23   MS GJOVIK:  That's the only thing they've ever claimed on

24       this protective order.  They have claimed nothing else

1       other than this deposition.  And it was my testimony

2       under the deposition.  They didn't even claim the

3       documents during the deposition were confidential.  It's

4       only my speech, is the only thing they've ever used

5       this order for.

6   THE COURT:  Yeah, but they have a right to do that.

7   MS GJOVIK:  I know.  I'm just saying when you said it could

8       be other stuff, I'm like, "No, it's just this".

9   THE COURT:  Yeah.

10  MS GJOVIK:  So if I'm also contesting that their

11      designations during that deposition testimony violate

12      the protective order, I'll file it on maybe an

13      administrative order when I file mine and ask you if

14      you want to consolidate schedules.

15  THE COURT:  But you can also address any improper

16      designations in your opposition to their motion.  You

17      don't need to file a separate motion.

18  MS GJOVIK:  Yeah.  But if they're accusing me of stuff,

19      I want them found -- like, if they're found that they

20      filed this improperly to begin with, I'd rather have,

21      like, counterclaims that then they can get in trouble

22      for.

23  THE COURT:  But that's not how motions work.  It's not about

24      making claims or counterclaims.  It's if you have an

A Court Reporting Transcript by Epiq

1      opposition to their designation of confidentiality,

2      that's what you put in your opposition too.

3   MS GJOVIK:  But then would your Honour find that they

4      violated the protective order if I was only filing

5      an opposition for --

6   THE COURT:  No.

7   MS GJOVIK:  That's what I'm saying.  So I would file my own,

8      with my own claims that your Honour could potentially

9      find that they also, or only they violated the

10     protective order.

11  THE COURT:  Right.  To the extent that --

12  MS GJOVIK:  Okay.

13  THE COURT:  -- you're not just opposing their

14     confidentiality designations.

15  MS GJOVIK:  Correct.

16  THE COURT:  Yes.

17  MS GJOVIK:  Yeah.

18  THE COURT:  But as far as the confidentiality designations,

19     I'll make the final call about whether or not they

20     should be confidential or not.

21  MS GJOVIK:  Okay.

22  THE COURT:  Yeah.  All right.  So I'm sorry that this didn't

23     get resolved in a much easier way, but obviously that's

24     not what's going to happen.  So we'll go ahead and have

1      the parties hopefully try to meet and confer to try to

2      narrow the scope.

3    MS GJOVIK:  Oh, and I'm sorry, your Honour.  You had said

4      that we don't even have to really talk to each other,

5      it can just be emails.  And the emails have not been

6      fruitful.  When you originally made that alternative

7      order, you even said you didn't think it would work

8      and --

9    THE COURT:  It doesn't usually.  It doesn't usually.

10   MS GJOVIK:  And I said, I didn't think it was going to work,

11     and I thought they're going to abuse it.  I felt they

12     have.

13        So if we want to work through this, I think it

14     would be really helpful to force them to, like -- we

15     could do a phone call versus video or something, but,

16     like, to actually have to talk to each other, because

17     otherwise the emails just cause more problems.

18   THE COURT:  Mm-hmm, mm-hmm.

19   MS RIECHERT:  I disagree with that, your Honour.  Remember,

20     we had a motion before.  In fact, we were excused from

21     having oral meet-and-confers because of the issues that

22     arose.

23   MS GJOVIK:  That's what I'm complaining about.  She said on

24     the transcript she didn't think it was going to work.

1        And I said I don't think it's going to work either.  And

2        she said she would reconsider it if it doesn't work.

3        That's what I'm re-raising, Melinda.

4    THE COURT:  I think the dynamic is different, you know, when

5        it's a pro se litigant versus attorneys, sometimes we

6        just allow the parties to do separate filings because

7        it's too hard to get the pro se plaintiff to do

8        something jointly.

9    MS GJOVIK:  I've always -- I've been asking them repeatedly

10       to do joint, and they'll refuse.  They've insisted that

11       your Honour's order authorises them to file completely

12       separately, even if I would want to do joint, that they

13       don't have to, so they won't.  But that's a second

14       issue.

15           The first issue is the fact that they won't even,

16       like, get on the call to meet and confer.  They say they

17       don't have to.  So they'll send like one email, and as

18       soon as five days is over, they say, "Five days is

19       over, now we're filing ours.  Bye".  And so they're not

20       even making any effort to resolve any of this stuff.

21   THE COURT:  I thought that I just heard that they were going

22       to respond to your objections to their confidentiality

23       designations.

24   MS GJOVIK:  They said they would, but what I'm saying is

1        they think they don't have to get on the phone call or

2        have any kind of video.  They'll just do an email, and

3        their emails thus far have been not productive at all.

4   THE COURT:  Mm-hmm.

5   MS GJOVIK:  And I thought the whole point of trying to

6        require a meet-and-confer over the phone or some kind

7        of conversation is it's far more productive than

8        emails.  Especially when there's bad blood between the

9        parties, because it forces the folks to get on the call

10       and actually try to find a resolution, which I would

11       like to try to do more.

12           And I feel like the longer we go where they think

13       they can just send one email, wait five days and then

14       file a single letter, they're just creating more

15       problems.  They're not even trying to solve anything.

16       And so at least -- I'm a project manager.  If I can at

17       least get them on the phone and try to talk to them,

18       I can at least hopefully reduce some of the problems

19       and issues.  But otherwise, there's nothing I can do.

20       My hands are completely tied.

21   THE COURT:  I don't think that both sides agreed that

22       talking on the telephone was productive.  Is that right?

23   MS GJOVIK:  It was just them.

24   MS RIECHERT:  That was absolutely true.  And that's what we

A Court Reporting Transcript by Epiq

1       raised at the last hearing, and that's why the court

2       said we could to do it by exchanging emails and we did

3       not have to meet and confer by --

4    MS GJOVIK:  But they didn't explain why.  I included

5       transcripts showing me trying to get them to resolve

6       stuff, and them refusing.  So there's no evidentiary

7       review to actually decide that it wasn't productive.  It

8       was just Apple saying they didn't want to, and this

9       court saying we'd try it out.  But I feel like the last

10      few motions show that this stuff isn't working.

11          Like we should try the original, the default

12      processes in this court, because -- you know, I don't

13      want to be here, I didn't want to be fired, I don't

14      want to be fighting this long.  But I want to get

15      through this, and I'm a professional project manager.

16      It's my job to work through complex issues and work

17      with people, even in hot disputes.  So if I can try to

18      get them in a position or I can get them to try to move

19      forward on stuff, I will.  Be professional and try to

20      get stuff moving.

21          But I feel like they've kind of put themself in

22      a fortress now where they don't even have to talk to

23      me, they don't have to respond to stuff.  They can just

24      file stuff independently and then make up whatever

                    A Court Reporting Transcript by Epiq

1           version they want and that wastes your Honour's time

2           not just with pointless escalations but also having to

3           figure out what's actually going on.  Because you're

4           just getting multiple sides of stuff, instead of, like,

5           the actual just raising the dispute from both parties.

6   THE COURT:  Right.

7   MS RIECHERT:  I think that this call has shown how an oral

8           conversation is not productive, that we need to have it

9           in writing which the court can review and make sure the

10          parties have met with their obligations to meet and

11          confer, and that's the process the court said is fine.

12  THE COURT:  Yes.

13  MS RIECHERT:  And I think we should continue with that

14          process.

15  THE COURT:  Yeah.  I'm not going to change that, because

16          I -- I just -- I don't think that phone conversations

17          will be productive in this particular case.  I really

18          don't.  So I think, unfortunately, things are going to

19          have to stay the way that they are in terms of, you

20          know, putting everything in writing.  But I do think

21          Apple should respond to Ms Gjovik's last written form

22          of objections and --

23  MS GJOVIK:  Your Honour, I would ask -- I don't understand

24          why the phone calls wouldn't be productive.

A Court Reporting Transcript by Epiq

1    THE COURT:  Because --

2    MS GJOVIK:  I feel like the transcripts showed they were.

3        But if it has to be in writing, I would ask that they

4        have to show that they actually put stuff in writing

5        and tried.  Because most of the time, they're not.

6    THE COURT:  Mm-hmm.  Yeah.  I think, well, you can attach

7        whatever you want --

8    MS RIECHERT:  We would absolutely --

9    THE COURT:  You can attach those things to any motion that

10       you file.

11   MS GJOVIK:  Your Honour, the order says don't attach

12       anything other than the formal discovery responses.

13   THE COURT:  Right.  And so in terms -- but for arguing

14       regarding the meet-and-confer efforts, if you need to,

15       you can attach your meet-and-confer efforts.

16   MS GJOVIK:  But then, I mean so if we're doing it right,

17       that's like a ton of pages.  Right?  So they're trying

18       to set it up so it looks like a couple things and

19       trying to -- it's just --

20   THE COURT:  No.  I want it to be limited to what this issue

21       is that we're talking about right now, which is this

22       deposition testimony and how it's been designated

23       confidential and whether or not the protective order

24       has been violated.  That's all I want to hear about.

```
1    MS GJOVIK:  Oh, I mean, we should do like a joint status for

2        you or something on it, then.

3    THE COURT:  Yeah, but I don't think the parties can do

4        anything jointly.

5    MS GJOVIK:  We file joint statuses all the time.  It's just

6        them not wanting to -- them convincing your Honour that

7        they can't somehow, but we've filed joint statuses to

8        Judge Chen.  We've filed like six of them.  They're all

9        on time, they're beautiful, they're glorious.  Your

10       Honour can read them.

11   THE COURT:  Have you really?

12   MS GJOVIK:  Yes.

13   THE COURT:  Oh.  Well, you can file something joint if

14       you're capable of working on something joint.  My

15       understanding --

16   MS GJOVIK:  They're just telling you they're incapable

17       because they don't want to.

18   THE COURT:  -- that it broke down to the point where you

19       could not do that.

20   MS GJOVIK:  Because they're refusing.  So they're just

21       saying they refuse, they can't, they're incapable of

22       doing it, not that I won't.  I'm completely capable of

23       doing it.  We've been filing this stuff for two and a

24       half years now.
```

A Court Reporting Transcript by Epiq

1    THE COURT:  Okay.

2    MS GJOVIK:  They're just trying to get your Honour to

3        think -- I don't know what they're trying to do.  But

4        we're completely capable of, if they agree to.  So it's

5        more of they don't want to and want your Honour to

6        authorise their refusal to do it as somehow blocking

7        them doing it.

8    THE COURT:  Is it true that Apple is doing joint filings

9        with Ms Gjovik otherwise in this case?

10   MS RIECHERT:  The only thing that we filed jointly is the

11       status report that Judge Chen requires, and we send in

12       our section and at the very end of the deadline she

13       sends in her section, and we file it.

14   MS GJOVIK:  We go back and forth.  We have different

15       revisions.  We filed, like, five of them, and they are

16       detailed.  They are 10 pages, and it covers all of the

17       stuff in the court's standing order.

18   MS RIECHERT:  What you're asking for now is a full hearing

19       on 35-day briefing, not a joint --

20   MS GJOVIK:  I'm not asking for it.  You're saying you want

21       to file this, so I said then you have to do it the

22       right way, Melinda.

23   MS RIECHERT:  No, I wanted to get it resolved today without

24       a full hearing.

A Court Reporting Transcript by Epiq

1    MS GJOVIK:  That's an -- then you're getting another NLRB

2        charge for that, too, Melinda, of trying to coerce me

3        to delete stuff.  It's not proper.

4    MS RIECHERT:  I know.  It will be my fault.  It'll be my

5        fault, then --

6    MS GJOVIK:  It's your client's fault.  You're an agent of

7        your client.  But we can work together to do this joint

8        stuff to move it forward.  The only way we're ever

9        getting out of this, Melinda, is if we can get to

10        summary judgment and the trial, which means we need to

11        work through all the discovery issues, and we have to

12        resolve all this stuff and just actually get to trial.

13        That's what I want to do.  And so there's no point in

14        having a ton of issues and a ton of fights and a ton of

15        motions and stuff.

16    THE COURT:  When is your trial date, anyway?

17    MS GJOVIK:  October.

18    THE COURT:  Oh, it's in October.  Okay.

19    MS GJOVIK:  Yeah.

20    THE COURT:  And when is the discovery cut-off?  April?

21    MS GJOVIK:  End of April.

22    THE COURT:  Okay.  So you don't have too much more discovery

23        fighting to do.

24    MS GJOVIK:  Well, that's why I was like, let's get through

A Court Reporting Transcript by Epiq

1        this stuff.  Let's just plow through it.  Like, if the

2        whole point is they need information, let's get them

3        that information.  And so, like, if they're saying they

4        need medical docs, I'm like "tell me what you need and

5        I'll send you whatever I have that you think you want.

6        Send your subpoenas to my doctors, get that stuff."

7   MS RIECHERT:  No, we need them from the doctors.

8   MS GJOVIK:  Well, then send your subpoenas, Melinda.

9   THE COURT:  Oh, I don't want to talk about that.  That's

10       a totally different issue.

11  MS GJOVIK:  Okay.  But to that point --

12  THE COURT:  We're getting off on another tangent.

13  MS GJOVIK:  -- we do joint stuff.  We're completely able to

14       file it.  We're able to work together.  They're kind of

15       exploiting your Honour of their kind of one-sided stuff

16       of trying to, I think, make me sound unreasonable or

17       difficult.  But the proof is on the docket that we're

18       able to file it jointly.

19  THE COURT:  So why is Apple able to work with Ms Gjovik on

20       a joint status report but not able to meet and confer

21       about her spreadsheet about, you know, regarding the

22       confidentiality designations?

23  MS RIECHERT:  We absolutely are going to meet and confer.

24       We only just got it on Wednesday afternoon.  It's now

A Court Reporting Transcript by Epiq

1    Friday afternoon.  So we are working on meeting and

2    conferring.  We have no problem with that, and we will

3    intend to comply with the protective order to the T and

4    meet and confer.  And if we are unable to agree, then we

5    intend to bring -- follow the procedure in the

6    protective order and bring it to the attention of the

7    court.

8  MS GJOVIK:  But why won't you have a phone call?  Why can't

9    we have it --

10 THE COURT:  But can you do it -- I guess what I'm asking you

11    is: Can you have a phone call with her about those

12    things?

13 MS RIECHERT:  It has been totally unproductive, as you can

14    tell from today, to have phone calls.  We have reached

15    no agreement today on anything, and that's the way it

16    was before when we tried to reach agreement.  So it's

17    much better to have it documented --

18 MS GJOVIK:  It's not true.  The transcripts I attached for

19    your Honour previously show I got them to cave on a ton

20    of stuff.  I made a ton of progress.  They just don't

21    like it because I'm a really good project manager and

22    I got them to cave on stuff and compromise.  That's why

23    they don't want to do it.  I'm very effective on the

24    phone.

A Court Reporting Transcript by Epiq

1   MS RIECHERT:  Absolutely not.  Better to have it documented

2       in writing.

3   MS GJOVIK:  That's very true.  You can see on the

4       transcripts.

5   THE COURT:  Yeah.  I can see that this is not a productive

6       use of my time, so I'm going to be bringing this

7       particular call to an end, and what I'm going to just

8       say is that the parties need to comply with the

9       protective order.  I'm not going to order Apple to have

10      phone calls with Ms Gjovik.  I'm going to order the

11      parties to comply.  And to comply with the protective

12      order does require that you meet and confer.

13          So if you file a motion and you haven't met your

14      obligation to meet and confer, then I may not consider

15      the motion because you haven't done it.  So you need --

16  MS GJOVIK:  Can you define that a little bit more

17      for -- because they might say that their threatening

18      email just telling me to randomly delete tweets was

19      their meet-and-confer.  And they're trying to -- they've

20      been recently trying to do that sort of thing that

21      they're like, "We did, we sent her" --

22  THE COURT:  No.  The meet-and-confer should consist of the

23      substantive discussion about all of the designations

24      and whether or not they are confidential or not.

A Court Reporting Transcript by Epiq

1    MS GJOVIK:  Agreed.

2    THE COURT:  And maybe some compromise as to some of them.

3        And then to the extent that there are some left that

4        you can't come to some agreement with, then those

5        should be the ones that are the subject of the motion.

6    MS GJOVIK:  I agree.  And like I said, I already caved on

7        like half of them, where I was like, "I don't agree

8        that it's confidential, but I don't care if you redact

9        this, you guys".  Like, "If you want to fight, die on

10        that hill, fine, but I don't".  There's not enough time

11        for --

12    THE COURT:  Right.  I mean, it's really just about putting

13        it in the public domain.  The protective order outlines

14        very specifically who you can provide those things to.

15        So I would just say that's how you should be complying

16        with the protective order and not posting them on

17        public websites and things.

18    MS GJOVIK:  I just want to assure your Honour, I have not

19        posted any documents on -- well, they haven't claimed

20        any documents.

21    THE COURT:  No, I'm not talking about documents.  We're

22        only -- Ms Gjovik, we're only talking about the

23        deposition transcript and the parts that were

24        designated confidential.  We're not talking about

1          documents.  We're not talking about anything else.

2          That's it.  That's the only thing we're talking about.

3     MS GJOVIK:  Okay.

4     THE COURT:  So those are the things that should be met and

5          conferred about.  And then to the extent you cannot

6          agree, those items should be the subject of any motion

7          that you file.

8     MS GJOVIK:  I feel like we should be able to sort this out

9          ourselves without involving you, which I personally --

10    THE COURT:  Just file -- just make sure that you're walking

11         through the protective order and complying with it

12         fully.

13    MS GJOVIK:  I feel like I have, your Honour, again.  So --

14    THE COURT:  Well, I tend to be concerned about that,

15         Ms Gjovik, because if you really did post excerpts from

16         the deposition that were designated confidential

17         without a court order saying they are not confidential,

18         then that would be a violation of the protective order.

19         But --

20    MS GJOVIK:  I think it's more complicated than that if it's

21         already public information talking about just my own

22         experiences or saying the word "menstruation", but

23         I understand.

24    THE COURT:  I know.  I heard all of that.

1   MS GJOVIK:  But I understand what you're saying, yes.

2   THE COURT:  But if those are things that you should have

3       brought to the court so that the court could agree with

4       you or not before you posted them, then --

5   MS GJOVIK:  I didn't realise I could've filed a motion right

6       away on myself.  I would -- because Apple, I was afraid

7       they were going to drag this out for months anyways and

8       it was just going to take forever.  If I could have just

9       filed a motion like right away, I would've.

10  THE COURT:  Yeah.  And you could.  But I feel like the

11      parties have just not finished the meet-and-confer

12      process and so I think that is what needs to happen

13      next.

14  MS GJOVIK:  It's been -- you know, the deposition was, like,

15      over two months ago now.  It was a really long time ago.

16  THE COURT:  Yeah.  It was December 16th.

17  MS GJOVIK:  Yeah.

18  THE COURT:  It's been two months.

19  MS RIECHERT:  It took a while to get transcripts.  We didn't

20      get that until January.

21  THE COURT:  Yeah, January --

22  MS GJOVIK:  But you could have made the designations

23      during -- per the protective order, you were supposed

24      to make your designations during the actual deposition,

1    not do a blanket.  So that was kind of on you guys.  If

2    you had done it during the actual thing, we would've

3    saved a lot of time.

4    MS RIECHERT:  Well, we didn't know what you were going to

5    say that would be subject to protective order.

6    MS GJOVIK:  But if you know it's confidential as soon as

7    I say it, say that's confidential -- anyway, she

8    doesn't need to hear this.  We can talk about this

9    later.

10   THE COURT:  Right.  Those are the things that you could talk

11   about in your meet-and-confer.

12        But I would say, please, just look at each of the

13   designations.  If they really are broken down into 160

14   of them, please try to narrow those as much as you

15   possibly can before filing any motion.  And so

16   we'll -- I'll be expecting, if you can't work it out,

17   some sort of notice motion being filed by Apple.

18   MS GJOVIK:  And I will file one too if they're filing one.

19   THE COURT:  And you can file one too if you need to.

20   MS GJOVIK:  Yeah.

21   THE COURT:  Yeah.  Okay?

22   MS RIECHERT:  We're talking about two different motions.

23   One is the motion on whether the stuff should be

24   confidential or not.  And the other is the motion for

1      violating the protective order.

2    MS GJOVIK:  It was together, though, right?  I thought it

3      was one thing.

4    THE COURT:  Well, the issues are overlapping because I'd

5      have to determine -- well, I guess not.  That's not

6      true.  Because --

7    MS RIECHERT:  There's not overlapping because she didn't

8      have the right to violate the protective order, whether

9      they were properly designated --

10   THE COURT:  But I'd need to -- so, yes, you have -- right.

11     So you'd have to show that the things that she posted

12     were specifically designated confidential during the

13     deposition.

14   MS RIECHERT:  Yes.

15   THE COURT:  Right.

16   MS RIECHERT:  And I can absolutely show that.

17   MS GJOVIK:  But they'd have to show that they're -- like, so

18     it's going to be more complex legal arguments in that

19     as well, though.  Like, because that protective order is

20     being stretched incredibly thin with what they're

21     doing.  This isn't a straightforward, like, me talking

22     about some trade secret or the details of some internal

23     thing.  Like, it was just public information.  It seems

24     incredibly important for anti-SLAPP, for preemption

1    that if the thing they're pointing to is already

2    completely public information and something pled --

3  THE COURT:  You can argue, Ms Gjovik --

4  MS GJOVIK:  -- in the complaint in this case --

5  THE COURT:  Ms Gjovik, you can argue all of that stuff in

6    your opposition to their motion.

7  MS GJOVIK:  Okay.

8  THE COURT:  But --

9  MS GJOVIK:  So if they do two motions, then we just argue it

10    two times in front of you?

11  THE COURT:  No.  If they file a motion saying you're in

12    violation of the protective order and they establish

13    a record that they designated certain things during

14    your deposition as confidential, and then you

15    nonetheless posted them in the public domain without

16    first getting an order from this court saying they are

17    not confidential, then that is a violation of the

18    protective order.  So --

19  MS GJOVIK:  Your Honour, I think it's more complicated than

20    that in our situation.

21  THE COURT:  You can argue a lot of -- all the things that

22    you think make it more complicated.  That's what you put

23    in your opposition, and then I'll ultimately rule on

24    that.

1    MS GJOVIK:  Good.  And again, your Honour, I'm not trying to

2        violate anything.  I really don't think I did.

3        I wouldn't do that intentionally, and I think it's an

4        issue when it gets misused like this, because those are

5        in there for a reason.  And it's supposed to streamline

6        the process, not create more issues, which is what's

7        happening right now.

8    THE COURT:  All right.  So that's how that will go.  And,

9        you know, we'll see how it goes.

10   CLERK:  Does your Honour want any deadlines in the minutes

11       set, or just the general parties to meet and confer

12       with any motions to be filed on?

13   THE COURT:  No.

14   CLERK:  Okay.

15   THE COURT:  Yeah, I'm not setting any dates because I'm not

16       asking the parties to file any kind of motions.

17   MS GJOVIK:  We might be able to sort it out.  Melinda,

18       I think we should talk to Morgan Lewis and sort through

19       this.

20   THE COURT:  I think you should talk -- I think the parties

21       should meet and confer for sure.  I am ordering the

22       parties to complete the meet-and-confer process on this

23       issue before filing any motion, though.

24   MS GJOVIK:  I think that's a good idea.

A Court Reporting Transcript by Epiq

1   THE COURT:  Okay.  All right.  Thank you.  Thank you, both.

2   MS RIECHERT:  Thank you.

3   MS GJOVIK:  Thank you, your Honour.

4   MS RIECHERT:  Bye.

5   CLERK:  And that concludes the hearing.  We're adjourned.

6

7   [End of audio]