1  JESSICA R. PERRY (SBN 209321)
   jperry@orrick.com
2  MELINDA S. RIECHERT (SBN 65504)
   mriechert@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA 94025-1015
   Telephone:    +1 650 614 7400
5  Facsimile:    +1 650 614 7401

6  KATHRYN G. MANTOAN (SBN 239649)
   kmantoan@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
8  405 Howard Street
   San Francisco, CA 94105-2669
9  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
10

11 RYAN D. BOOMS (SBN 329430)
   rbooms@orrick.com
12 ORRICK, HERRINGTON & SUTCLIFFE LLP
   2100 Pennsylvania Avenue NW
13 Washington, D.C. 20037
   Telephone:    +1 202 339 8400
14 Facsimile:    +1 202 339 8500

15 Attorneys for Defendant
   APPLE INC.

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                     OAKLAND DIVISION

19

20  ASHLEY GJOVIK,                          Case No. 23-cv-4597-EMC

21              Plaintiff,                  **DECLARATION OF MICHAEL
                                            DIVINCENT IN SUPPORT OF
22       v.                                 DEFENDANT APPLE INC.'S MOTION
                                            TO RETAIN CONFIDENTIALITY
23  APPLE INC.,                             DESIGNATIONS AND MOTION TO
                                            SEAL**
24              Defendant.
                                            Date:      April 16, 2026
25                                          Time:      1:30 p.m.
                                            Dept:      Courtroom TBD
26                                                     1301 Clay Street
                                                       Oakland, CA 94612
27                                          Judge:     Honorable Kandis A. Westmore

28

I, Michael DiVincent, declare as follows:

1.      I am a Senior Director of Human Engineering at Apple Inc. ("Apple") and have worked for Apple since 2008 (and in my current Senior Director role since 2018).  In my role at Apple, I have managed a number of internal Apple product-related user studies, and am familiar with Apple's processes with respect to the confidentiality of such studies. I submit this declaration in support of Apple's Motion to Retain Confidentiality Designations and Apple's Motion to Seal. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.      Apple is a leading multinational technology company that designs, develops, and sells consumer electronics, software, and online services. Apple's core products include the iPhone, iPad, Mac computers, Apple Watch, Apple TV, and AirPods. Its core services include the App Store, iCloud, Apple Music, and Apple TV+.

3.      Apple devotes significant time, money, and resources to developing innovative products and services to stay at the leading edge of the industry. Because Apple employees can obtain access to non-public information related to Apple's development and refinement of its products and services, Apple requires employees to agree to a Confidential and Intellectual Property Agreement ("IPA") as a condition of their employment with Apple. The IPA covers information an Apple employee learns about proprietary product-related information that is not generally known outside of Apple and/or product-related information that Apple treats as confidential. This type of confidential product-related information includes, but is not limited to, trade secrets, research and development records, reports, samples, manuals, plans, specifications, inventions, ideas, designs, prototypes, software, source code, or any other materials or information relating to past, existing, and future products and services. Apple treats this information as confidential, and requires its employees to do so, regardless of whether the product or service is ultimately developed, marketed, used, or rejected by Apple because things that Apple tries that do not work or are rejected are equally valuable to Apple's competitors as the products and services that Apple sends to market.

4.      Apple has a robust research and development process that is constantly evaluating the functionality of its existing products and services to make them better, as well as developing

DIVINCENT DECLARATION
[23-cv-4597-EMC]

new products and services that are at the leading edge of the technology industry. To do this, Apple sometimes asks employees if they are willing to volunteer to participate in select internal user studies. Participation in these studies is voluntary, and each participant signs an Informed Consent Form ("ICF") to participate in the study that explains the data the study is collecting and how Apple uses that data. The ICFs also reiterate the employee's confidentiality obligations. An example of the type of language used in an ICF follows: "**YOUR CONFIDENTIALITY OBLIGATIONS**: By agreeing to participate in this study, you acknowledge that any information about the Study, including any Study details or the fact of your participation, are considered Apple Confidential Information, and are covered by the obligations under your agreements with Apple." Participants can stop participating in a study after a study begins if they change their mind.

5.      Many of Apple's internal product-related studies are confidential, and employees are expected to treat them as such. The data retrieved through these studies is only available to a limited and identified group of employees who have a need to know this information based on the work they are doing related to the product or service. Apple often assigns random user numbers to each participant in the study so that any data collected does not identify the participant. In other instances, data is aggregated without individual identification. Apple managers typically do not have access to data indicating whether any of their employees are participating in user studies. Participants are reimbursed for participating in these internal studies. The IPA covers studies that employees learn about through their employment with Apple that they decline to participate in, as well as studies the employee volunteer to participate in.

6.      Given Apple's position in the market, there is an entire industry outside of Apple whose focus is trying to figure out what products and services Apple is working on, how it develops its products and services, what studies it is conducting, how it is conducting those studies, and the results of those studies. The purpose of this industry is to gain a competitive advantage over Apple by gleaning insight into what Apple is working on and how it develops its products. Apple has maintained its position in the market by introducing innovative products and services that are unexpected or novel. Apple's ability to provide unique technological solutions and to surprise customers with new or better solutions is a foundation of Apple's success. This success relies on

DIVINCENT DECLARATION
[23-cv-4597-EMC]

Apple's ability to conduct confidential research and development. Allowing this industry to have access to Apple's confidential product-related information—particularly information about the content, methods, or processes of Apple's internal product-related studies—harms Apple. This harm does not just flow from access by other multinational technology companies competing against Apple across the spectrum of products and services Apple provides, but it also arises from any entrepreneur seeking to cheaply create applications developed for Apple's devices by using Apple's methods and processes without the cost and burden of determining the best approach to any particular study.

7.      I have reviewed Apple's confidentiality designations in this matter that Plaintiff has challenged. The challenged portions fall into two buckets of information that Apple treats as confidential and takes measures to protect from public disclosure, as described above: (1) testimony that purports to describe internal code words used for Apple's products and services; and (2) testimony that purports to describe the content, methods, and processes for internal Apple product-related studies. It is my opinion that disclosure of this information will cause harm to Apple.

8.      Apple often uses code words for existing and future products and services it is refining or developing to add an additional level of security in the event of an improper or unlawful leak of confidential information about the development of these products or services. A person with access to the meaning of code words will know specifics about the product or service that Apple is developing that others who are not privy to the code words will not. This type of information is highly sought after by the industry that exists to obtain insight into Apple's development processes. The public disclosure of Apple's code words may also require Apple to redesignate its code words to correct for this breach of security, which will in turn require informing employees using such code words to have to redesignate the code words in their internal product-related materials.

9.      Similarly, in my experience, competitors and other third parties regularly try to obtain insight into the content, methods, and processes of Apple's research and development. The remaining confidentiality designations that Plaintiff challenges appear to relate to her descriptions of several internal user studies Apple conducted. I am familiar with the studies Plaintiff discusses. While Apple also supports external studies that may be publicly available, I believe Plaintiff is

DIVINCENT DECLARATION
[23-cv-4597-EMC]

referring to internal studies and not external studies based her testimony about the methods and processes she believes were used in these studies. Plaintiff's testimony discusses her understanding of the content, methods, and processes of these studies, to include equipment used in the study. Whether certain methods, processes, or equipment was used or not used is confidential. Permitting this information to be publicly disclosed will harm Apple by allowing competitors to use and rely upon Apple's internal research and development processes.

10.     The studies she discusses relate to collecting data that assisted Apple with developing software and hardware to refine how its devices and features function.  These types of studies are attempting to facilitate solutions to incredibly complex research and development problems. It is my opinion that permitting a competitor to learn Apple's internal methods and processes, including the specific equipment used and testing conducted, will harm Apple because it will assist competitors in directly competing against Apple without enduring the iterative cost of figuring out which measurements are relevant and which equipment can be used to best provide data necessary to complete the study.  This could in turn enable competitors to bring products and services to market at a lower cost than Apple because they are not required to spend as much time and money on refining their testing processes to solve highly technical issues, like the complex issues these studies addressed. Indeed, these studies relate to Apple product features that remain in use in the market.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

DIVINCENT DECLARATION
[23-cv-4597-EMC]

11.     As stated above, my review of Plaintiff's testimony indicates that she is testifying about her understanding of internal Apple product-related research and development studies, not external studies. To my knowledge Apple has not publicly disclosed the methods, processes, or equipment used in the internal product-related studies she testified about. Likewise, publicly available information about external studies conducted by research institutions that Apple may have supported do not disclose the methods, processes, or equipment used in Apple's internal product-related research and development studies that are not publicly disclosed. Indeed, the methods, processes, and equipment used in external studies often varies from Apple's internal studies. For example, there are external studies related to women's health regarding some of the issues Plaintiff testified about, but these could differ from Apple's internal studies in terms of content, scope, duration, questions asked, information gathered, and, in some cases, equipment used.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed March 11, 2026, in Cupertino, California.

_Michael DiVincent_
_____

MICHAEL DIVINCENT

DIVINCENT DECLARATION
[23-cv-4597-EMC]