Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

**Ashley M. Gjovik**,

*an individual*,


      Plaintiff,


   vs.


**Apple Inc.**,

*a corporation*,


      Defendant.

**Case No.**

**3:23-CV-04597-EMC**


**Plaintiff's Opposition to Defendant's Motion at Dkt. 294 with Memorandum of P&A.**


**HEARING:**
**Location: Oakland (TBD)**
**Date: April 2 2026**
**Time: 1:30 PM**

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                                          B

TABLE OF AUTHORITIES                                                                                       II

ISSUES TO BE DECIDED                                                                                       2

STATEMENT OF RELEVANT FACTS                                                                                2

ARGUMENT                                                                                                   4

APPLE'S MOTION HAS NO COGNIZABLE LEGAL AUTHORITY                                                           4

THIS 'MOTION TO ENFORCE PROTECTIVE ORDER' IS NOT A RECOGNIZED MOTION UNDER THE FRCP OR
LOCAL RULES                                                                                                5

NO STANDARD OF REVIEW, NO PROPOSED ORDER, NO ENFORCEABLE RELIEF                                            6

MULTIPLE INDEPENDENT JURISDICTIONAL BARS  PRECLUDE ANY RELIEF                                              7

THE BANKRUPTCY AUTOMATIC STAY                                                                              7

GARMON PREEMPTION AND THE NLRB'S EXCLUSIVE JURISDICTION                                                    8

THE NORRIS-LAGUARDIA ACT                                                                                   8

THE MAGISTRATE JUDGE'S STATUTORY AUTHORITY                                                                 9

THE FEDERAL SPEAK OUT ACT OF 2022 & CALIFORNIA'S SILENCED NO MORE ACT (SB 331)                             9

CALIFORNIA CONSTITUTIONAL PROTECTION FOR LAWFUL CONDUCT OUTSIDE THE WORKPLACE                              10

THE CALIFORNIA ANTI-SLAPP STATUTE                                                                          11

BINDING AGREEMENTS, JUDICIAL ADMISSIONS, AND ESTOPPEL BAR RELIEF                                           11

THE APRIL 2025 NLRB NATIONAL SETTLEMENT AGREEMENT                                                          11

JUDICIAL ADMISSIONS, AND EQUITABLE AND JUDICIAL ESTOPPEL                                                   12

THE PROTECTIVE ORDER'S OWN TEXT, AND BINDING CONSTITUTIONAL LAW, EXCLUDE
ALL DESIGNATED CONTENT                                                                                     13

THE ORDER'S EXPRESS EXCLUSIONS ARE DISPOSITIVE                                                             13

THE SUPREME COURT'S SEATTLE TIMES FRAMEWORK                                                                14

A DESIGNATION CANNOT RETROACTIVELY CLASSIFY PRE-EXISTING KNOWLEDGE AS A TRADE SECRET                       14

APPLE'S CASES DO NOT SUPPORT ITS POSITION                                                                  15

CONFIDENTIALITY IS A LIVE MERITS QUESTION; APPLE HAS ADMITTED IT KNOWS THIS                                15

APPLE'S TERMINATION DEFENSE AND THIS ENFORCEMENT PROCEEDING ARE IDENTICAL IN POSTURE AND
LEGAL THEORIES                                                                                             15

A FINDING OF VIOLATION WOULD PRE-ADJUDICATE THE CENTRAL SUMMARY JUDGMENT QUESTION                          16

A FINDING OF VIOLATION WOULD ALSO PREJUDICE THE PENDING NLRB PROCEEDINGS                                   16

APPLE SEEKS TO PUNISH PLAINTIFF FOR INDEPENDENTLY PROTECTED ACTIVITY UNDER
MULTIPLE FEDERAL AND STATE LAWS                                                                            17

THE NLRA: SECTION 7 AND SECTION 8(A)(4)                                                                    17

TITLE VII, THE EEOC, AND THE DFEH (CAL. GOV. CODE § 12940)                                                 17

REPORTING ANTICOMPETITIVE BEHAVIOR (FTC ACT)                                                               18

CALIFORNIA PRIVACY LAWS AND CONSTITUTIONAL PROTECTIONS                                                     18

VII.  APPLE HAS NOT AND CANNOT SATISFY THE LEGAL STANDARDS FOR THE RELIEF IT
SEEKS                                                                                                      18

APPLE CANNOT SATISFY THE MANDATORY INJUNCTION STANDARD                                                     18

APPLE CANNOT SATISFY THE PRIOR RESTRAINT STANDARD                                                          19

Apple Cannot Satisfy the Sealing Standard ................................................................ 19

Apple Cannot Satisfy the Sanctions Standard ............................................................ 20

THE DESIGNATED CONTENT HAS BEEN PUBLICLY KNOWN FOR YEARS — DISCLOSED BY
PLAINTIFF AND BY APPLE ITSELF ............................................................................ 20

Plaintiff's Disclosures — Years of Public Record Predating the Protective Order ........ 20

Apple's Own Public Disclosures — Academic Studies, Clinical Trials, Press Releases, and
Marketing ............................................................................................................... 22

APPLE'S MOTION SEEKS RELIEF THAT DIRECTLY CONTRADICTS THE RELIEF PLAINTIFF
REQUESTS IN HER COMPLAINTS .............................................................................. 23

What Plaintiff Has Asked This Court to Order Apple to Do ......................................... 23

What Apple's Conduct Actually Was — as Pled in the Surviving Claims ...................... 24

The Irreconcilable Contradiction at the Heart of Apple's Motion ................................ 25

X.  APPLE'S MOTION IS RELIEF ON UNPLED, WAIVED COUNTERCLAIMS ..................... 26

APPLE CANNOT SEEK EQUITY WITH UNCLEAN HANDS ............................................. 26

THE PROTECTIVE ORDER IS UNENFORCEABLE AS WRITTEN AND AS APPLIED .............. 28

If the Protective Order Is a Stipulation: No Mutual Assent ......................................... 28

California Statutes Independently Prohibit Its Enforcement ........................................ 28

If the Protective Order Is a Court Order: No Required Showing Was Made ................... 28

If the Protective Order Is a Local Rule (Model Template): It Was Never Adopted Through
Rule 83 .................................................................................................................. 29

The FRCP Prohibit Using the Protective Order to Abridge Substantive Rights .............. 29

The Protective Order Cannot Authorize What No Court Could Order Directly ............... 30

APPLE'S MOTION ITSELF CONSTITUTES ACTIONABLE VIOLATIONS AND CAUSES
COMPENSABLE HARM — INCLUDING VIOLATIONS APPLE SPENT FIVE MOTIONS TO
DISMISS TRYING TO HAVE ADJUDICATED OUT OF THIS CASE .................................... 30

The Filing Independently Violates Multiple Statutes Whose Violations Are Already
Alleged .................................................................................................................. 30

Apple Used Five Rounds of 12(b)(6) Motions to Narrow the Claims — Then Committed the
Violations Explicitly on the Record .......................................................................... 32

The Compensable Harm From This Motion Is Real, Present, and Redressable .............. 33

CONCLUSION AND RELIEF REQUESTED ................................................................... 34

# TABLE OF AUTHORITIES

## PLAINTIFF′S OPPOSITION TO DEFENDANT′S MOTION (Dkt. 294)

1.      Plaintiff Ashley Gjovik respectfully files this opposition to Defendant Apple Inc.′s Motion to Enforce Protective Order (Dkt. 294). Apple also filed motions to seal, a motion for expedited schedule, and a motion to retain designations.

2.      Concurrently filed are supporting declarations, a request for judication notice, and an administration motion to consider this motion and hearing with the other motions Apple has filed/triggered scheduled for a hearing on April 16 2026.

3.      Apple Inc.′s Motion to Enforce the Protective Order (Dkt. 294) irregular, improper, and unlawful. Apple asks this Court to compel deletion of published speech, issue a prior restraint on future speech, and seal the Plaintiff′s court filings (including an NLRB charge) —on the basis of vague assertions of confidentiality, with improper procedural designations that are void for multiple independent reasons, over content that has been publicly known since before the protective order was ever entered and constitutes protected disclosures and complaints, through a procedural vehicle that does not exist under the Federal Rules of Civil Procedure, and in direct defiance of state and federal labor laws and this Court′s express order to complete meet-and-confer before filing any motion.

4.      The subject matter Apple seeks to suppress is not a trade formula, source code, or competitive intelligence. It is an employee′s testimony about her own experiences, complaints about unlawful conduct and undesirable work conditions, and her pled allegations in this litigation The NLRB, the Norris–LaGuardia Act, the federal Speak Out Act, California′s Silenced No More Act, California Labor Code (i.e. 232.5, 1102.5, etc.) and the First Amendment all independently prohibit and employer from requesting a court order to achieve what Apple is attempting to achieve here and most if not all remove the court's jurisdiction to grant an employer's request.

5.      As of the filing of this opposition, Apple has filed a Motion to Retain Designations (Dkt. 304-305, filed March 11, 2026), in which — after conceding that the vast majority of its prior designations were improper— Apple continues to assert confidentiality over the reproductive and sexual content described above as well as many claims that could simply be redacted. Critically, the only legal authority Apple cites for the remaining designations is the now Plaintiff's now mostly defunct Confidentiality and Intellectual Property Agreement (IPA) — the same employment agreement Apple signed a national settlement with the NLRB and Plaintiff in April 2025 where Apple promised to stop enforcing the very terms it now claim justifies and provides a legal basis for the extraordinary relief it seeks from the court.

(See Request for Judicial Notice and Declaration).

6.      Apple also includes in Dkt. 304-305 certain designations that Plaintiff already agreed Apple could redact, yet Apple seeks affirmative judicial findings on those terms as well, revealing that the goal is not confidentiality management but the creation of judicial records Apple can use in its termination defense. Plaintiff will oppose the Motion to Retain Designations separately. But the fact that Apple's only legal justification is a contract it is legally prohibited from invoking confirms the fundamental defect running through every aspect of this enforcement proceeding.

## ISSUES TO BE DECIDED

7.      Apple's motion requests the following forms of relief but each raises the following issues. First, whether Plaintiff violated the Protective Order by publicly discussing and filing content that: (a) is excluded from the Order's scope by its own express terms; (b) was publicly known and pled on this docket before the deposition occurred; (c) concerns Plaintiff's own body and lived experience gained outside of discovery; and (d) is subject to no valid designation, as Apple's blanket designation lapsed by its own 21-day waiver provision and the subsequent narrowed designation was an unsigned, undated, unserved legal nullity under Fed. R. Civ. P. 26(g)(2).

8.      Next, whether this Court has authority to compel deletion of published blog posts and social media content as a mandatory injunction — and if so, whether Apple has satisfied the legal standard for a mandatory injunction, including likelihood of success, irreparable harm, balance of equities, public interest, and the heightened prior restraint analysis required when compelled deletion of speech is sought.

9.      Additionally, whether this Court has authority to issue a prohibitory injunction prohibiting future publication of designated content — and if so, whether that injunction can survive strict scrutiny under the First Amendment given that the designated content concerns an employee's own bodily experiences, her NLRB charges, and the factual basis of her pending lawsuit. Also, whether this Court has authority to seal filings addressed to or already adjudicated by Judge Chen (Dkt. 278 and 285); whether Apple has complied with the procedure required under N.D. Cal. Civil L.R. 79-5 for sealing another party's filings; and whether Apple has met the 'compelling reasons' standard required to overcome the First Amendment and common-law presumption of public access to judicial records.

## STATEMENT OF RELEVANT FACTS

10.      The Plaintiff filed this lawsuit against Apple Inc on Sept. 7 2023. The current lawsuit includes numerous claims under whistleblower, retaliation, and labor statutes (Cal. Labor Code §§ 1102.5,

6310, 98.6, 232.5 § 96(k), etc.) and also a tort claim for a termination in violation of public policy (*Tamney*). (Dkt. 142). The Tamney claim (and others) include claims about Illegal Data Harvesting in violation of the California Constitution Article I, Section 1; FTC Act; Employment/Sex Discrimination in violation of the California DFEH and U.S. EEOC; Crime Victim/Witness Discrimination in violation of the California Labor Code § 230(e), and Legislative Witness Discrimination in violation of the California Government Code § 9414.

11.     The original lawsuit also included claims under The RICO Act (18 U.S. Code § 1962) including that the Defendant was engaging in criminal obstruction of justice in furtherance of suppressing whistleblower reports, labor complaints, and disclosures to the government about unlawful conduct and this scheme included the Defendant's termination of the Plaintiff's employment. The original lawsuit also included a claim for violations of the Bane Civil Rights Act (California Civil Code § 52.1), including violations arising from the Defendant's use of unlawful NDAs, unlawful restraining orders and court injunctions, misuse of police services and private investigators, and other unlawful tactics undertaken in order to interfere with and obstruct the Plaintiffs' participation in government proceedings. The Honorable Judge Chen dismissed the Plaintiff's RICO and Bane Act claims without prejudice and with leave to amend, acknowledging Apple would fight the claims and voluntarily dropping them would expedite the proceedings. Apple then proceeded to file a total of five Rule 12(b)(6) motions to dismiss anyways.

12.     The NLRB has issued numerous decisions in favor of the Plaintiff's charges against Apple including finding dozens of Apple's employment policies, NDAs, and work rules/practices violate federal labor law, suing Apple, and Apple settling in its first national settlement agreement with the NLRB. (Case No. 32-CA-284428). The NLRB also sued Apple for illegally threatening, coercing, suspending, and terminating the Plaintiff – with the complaint demanding Apple re-hire her, apologize to her publicly, and promise to stop violating the NLRA. (Case No. 2-CA-282142, 32-CA-28316). The EPA also repeatedly found in favor of the Plaintiff' complaints including onsite federal safety inspections due to disclosures made by the Plaintiff during her employment, and findings of CERLCA compliance and safety issues just weeks before Apple fired the Plaintiff. The EPA RCRA team acted upon the Plaintiff's complaints about Apple's off books chip fab that nearly killed the Plaintiff in 2020, resulting in the first formal environmental enforcement action by the EPA against Apple ever; including a consent agreement, fines, and multiple inspections. The settlement agreement and press credited the Plaintiff for the enforcement action.

13.     In this proceeding, Apple obtained the Protective Order (Dkt. 235, July 7, 2025) over Plaintiff's objections and opposition, on one stated purpose: producing the "Gobbler" informed consent

form for deposition authentication. ( July 2, 2025 Tr. at 10:17-11:11, Dkt. 230). That's assumably why the court insisted on the Protective Order, yet Apple never used the Order for that purpose, never designated a single produced document as confidential (confirmed Feb. 6, 2026 in writing), and was compelled to produce the Gobbler form by court order (Dkt. 240) without invoking the Order.

14.     Instead Apple has made of the Order is to designate Plaintiff's deposition testimony about her own body, her and her coworkers bodily autonomy and privacy rights, and her workplace complaints and whistleblower disclosures as Apple Confidential, then file enforcement proceedings expressly connecting those designations to its termination defense. (Dkt. 280 fn. 2: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place.").

15.     In this litigation, Plaintiff had pled a claim for Cal.B&P.C. § 17200 but it was dismissed under statute of limitations theories and failure to plead a class action in the Fourth Amended Complaint and without leave to amend. (4AC, Dkt. 76 at ¶ 192-207, p. 57-61). ("Apple is unlawfully coercing employees to provide personal data, including biometrics, which Apple can use for research and development, including training machine learning models, without actual consent or compensation, and in violation of federal competition laws and state and federal data protection laws. "anti-competitive conduct" and "attempts to cover up any of these behaviors" are whistleblower disclosures. Apple should obtain ethical and legal data for product development instead of treating its workforce like lab rats." 4AC, Dkt 76,, ¶193).

> "Apple repeatedly implied to Gjovik that her participation was not option. Gjovik's annual performance reviews made express note of Gjovik's participation in Apple's studies and experiments and praised her for her unpaid labor in facilitating the numerous invasions into her privacy. Gjovik participated in several other health, anatomy, and personal data collection studies during her time working for Apple. This included a sleep study with Apple placing a sensor under her while she slept every night, recording her vitals and movements, and sharing the data with Apple for commercial purposes. When Gjovik was invited to participate in these events, the team often would not disclose what the study was until the 'volunteers' arrived physically on site to a secure building where ex-FBI security personal would threaten her and her workers to not even tell their friends or family what happens at Apple, and especially studies like these. When Apple asked Gjovik to scan her ears and her ear canals, Gjovik declined "indefinitely." Similarly, Gjovik repeatedly declined Apple's requests to study and collect data about her menstruation for product development. Even after Gjovik declined the ear studies, Apple has claimed its secret they even asked her in the first place."

Plaintiff's 4AC, Dkt 76, ¶ 195-197.

# ARGUMENT

## APPLE'S MOTION HAS NO COGNIZABLE LEGAL AUTHORITY

## This 'Motion to Enforce Protective Order' Is Not a Recognized Motion Under the FRCP or Local Rules

16.     Neither the Federal Rules of Civil Procedure nor the Northern District's Local Rules recognize a "Motion to Enforce Protective Order" as a procedural vehicle with its own standard of review, prescribed process, or enumerated remedies. Apple cites Fed. R. Civ. P. 37(b)(2)(A) as authority, but Rule 37(b) governs sanctions for failure to obey a court order — it does not create a standalone motion type, does not authorize injunctive relief, and does not authorize compelled deletion of published speech. Apple's citation of the Court's "inherent powers" fares no better: inherent powers supplement, but do not override, the specific procedural requirements the Federal Rules impose on each specific form of relief.

17.     Apple has bundled approximately a dozen distinct categories of substantive and procedural relief into one motion. As Plaintiff documented in Dkt. 297, each category has its own procedural requirements and in several instances its own jurisdictional assignment. Apple has not complied with the proper procedure for any of them:

> (1) Seal Apple's own declaration [Dkt. 293]: Admin Motion to Seal under L.R. 79-5 — filed but defective, cites protective order designation as sole basis, asks to seal entire document. (2) Seal Plaintiff's filings and publications [buried in Dkt. 293]: Requires separate noticed motion under L.R. 79-5(f) before Judge Chen — improperly filed as admin motion with no opposition allowed. (3) Seal Plaintiff's Opposition at Dkt. 284 [buried in Dkt. 294]: No motion filed. (4) Seal Notice of Pendency at Dkt. 278 (addressed to Judge Chen) [buried in Dkt. 294]: No motion filed; jurisdictional problem — must go to Judge Chen. (5) Seal Motion to Quash at Dkt. 285 (ruled on by Judge Chen) [buried in Dkt. 294]: No motion filed; district judge already ruled on it. (6) Seal Plaintiff's NLRB charges and filings [buried in Dkts. 293 and 294]: No proper vehicle exists — highly unlawful and continues to violate the NLRA. (7) Compel deletion of published speech and issue prior restraint [Dkt. 294]: Requires a TRO/preliminary injunction motion under Rule 65 before Judge Chen — no Rule 65 motion filed; magistrate lacks authority under § 636(b)(1)(A). (8) Declaratory finding of protective order 'breach' [Dkt. 294]: Requires full noticed formal motion on 35-day schedule — filed without court-ordered meet-and-confer, not a recognized motion type. (9) Declaratory finding that Plaintiff's 'breach' justified Apple terminating Plaintiff in 2021 [buried in Dkts. 293, 294, 295]: Requires summary judgment — currently scheduled for June 2026 before Judge Chen. (10) Shorten time from 35 days to 5 days [Dkt. 295]: Filed — based solely on urgency of requests #1-9, each of which is itself improper. (11) Finding Apple did not violate the NLRA [buried in Dkts. 293-295]: NLRB has original and exclusive jurisdiction; Garmon preempted. (12) Injunction in labor dispute [buried throughout]: Generally prohibited by the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115. (Dkt. 297, Table at p. 2-3).

Each distinct remedy Apple seeks requires its own independent procedural vehicle, its own showing, and — in several cases — its own jurisdictional assignment:

18.     Sanctions require either (a) a Rule 11 motion, which must be served 21 days before filing

under the mandatory safe-harbor provision of Fed. R. Civ. P. 11(c)(2), or (b) a Rule 37 motion. N.D. Cal. Civil L.R. 7-8 requires that a motion for sanctions be separately filed and set for hearing in conformance with L.R. 7-2. No motion for sanctions may be filed until after the meet-and-confer and letter-briefing process is complete. Apple filed no Rule 11 motion. Apple served no 21-day safe-harbor notice. Apple filed no separate sanctions motion under L.R. 7-8.

19.    Civil or criminal contempt requires a petition or order to show cause under 18 U.S.C. §§ 401-403, with notice of specific charges, reasonable time to prepare a defense, an evidentiary hearing with testimony under oath, opportunity for cross-examination, and proof by clear and convincing evidence (civil) or beyond a reasonable doubt (criminal). *International Union, UMWA v. Bagwell*, 512 U.S. 821, 832 (1994); *Taylor v. Hayes*, 418 U.S. 488, 498-99 (1974); Fed. R. Crim. P. 42(a). Apple filed no contempt petition. No sworn affidavits were submitted. No evidentiary hearing has been requested or scheduled.

20.    A restraining order on speech requires a motion under Fed. R. Civ. P. 65, with affidavits, a showing of irreparable harm and likelihood of success on the merits, balance of equities, and public interest analysis. *Winter v. NRDC,* 555 U.S. 7 (2008). Because the requested order targets speech, strict scrutiny applies and a prior restraint carries a "heavy presumption of invalidity." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Compelled deletion of already-published speech is a mandatory injunction, subject to a heightened standard above and beyond a prohibitory injunction. Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Apple filed no Rule 65 motion, submitted no affidavits meeting the Winter standard, and presented no First Amendment analysis.

21.    Sealing a judicial record requires a motion under N.D. Cal. Civil L.R. 79-5, a showing of "compelling reasons" supported by specific factual findings, and a declaration explaining why sealing is warranted for each specific portion of each specific document. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The First Amendment and common law create a strong presumption against sealing court records. Apple seeks to seal three of Plaintiff's filings — without filing a proper 79-5 motion for any of them, without identifying with specificity the portions to be redacted, and without providing declarations establishing sealability.

## No Standard of Review, No Proposed Order, No Enforceable Relief

22.    Apple's motion includes no proposed order. This is not an oversight. Apple cannot draft an enforceable order because the relief it seeks is substantively incapable of precise definition. Any speech injunction must "state its terms specifically and describe in reasonable detail the act or acts restrained." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Apple's retained designations include the words "ovulation,"

"menstruation," and "cervical mucus."

23.    Would an enforcement order prohibit Plaintiff from using these words in any context? From describing her NLRB charges — which expressly reference these designations — in communications with the NLRB? From testifying before a Board agent? From discussing the factual basis of her pending lawsuit with her attorneys? There is no limiting principle, no sunset provision, and no mechanism for enforcement that does not simultaneously prohibit conduct independently protected under federal labor law, federal anti-retaliation statutes, and the First Amendment.

24.    At best, the motion can be understood as a request for declaratory relief — a judicial declaration that Plaintiff violated the Protective Order. But even that relief is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201, which requires an actual controversy ripe for adjudication, and by the procedural requirements for a noticed motion under L.R. 7-2 on the schedule this Court already ordered: 35 days with full briefing. Apple has not satisfied those requirements here either.

## MULTIPLE INDEPENDENT JURISDICTIONAL BARS PRECLUDE ANY RELIEF

### THE BANKRUPTCY AUTOMATIC STAY

25.    Plaintiff filed a Chapter 7 bankruptcy petition on July 21, 2025, in the United States Bankruptcy Court for the District of Massachusetts (Case No. 25-11496). The automatic stay under 11 U.S.C. § 362(a) operates as a federal injunction prohibiting "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor" (§ 362(a)(1)) and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" (§ 362(a)(6)).

26.    Apple has actual knowledge of the bankruptcy. Apple retained bankruptcy counsel (Pillsbury Winthrop Shaw Pittman LLP) and filed an opposition in the bankruptcy case on September 11, 2025. Apple has never sought relief from the automatic stay before filing enforcement motions against Plaintiff personally.

27.    In the Ninth Circuit, actions taken in violation of the automatic stay are void — not merely voidable. *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 571-72 (9th Cir. 1992). See also *In re Hruby,* 512 B.R. 262, 274 (Bankr. D. Colo. 2014) (employer must seek stay relief before enforcing confidentiality provisions against debtor-employee). Apple's willful violation of the automatic stay also exposes it to mandatory actual damages under § 362(k)(1). Any order this Court enters against Plaintiff on this motion would be a legal nullity.

## Garmon Preemption and the NLRB's Exclusive Jurisdiction

28.      "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959). The Supreme Court preserved this holding in Glacier Northwest, Inc. v. Teamsters Local 174, 598 U.S. 771 (2023).

29.      Filing NLRB charges is protected under § 8(a)(4). Publicizing the subject matter of a labor dispute on social media is protected concerted activity under § 7. Eastex, Inc. v. NLRB, 437 U.S. 556, 565-66 (1978) (Section 7 protects employee communications about working conditions to the public). Discussing working conditions — including workplace surveillance, invasive medical studies, and confidentiality demands — with coworkers and the press is at the heartland of Section 7 protection. Banner Health System, 362 NLRB 1108 (2015) (employer confidentiality rules restricting employee discussion of workplace matters violate § 8(a)(1)).

30.      Three NLRB charges are pending against Apple — Case Nos. 32-CA-381277 and two related charges — alleging that the exact designations Apple is enforcing through this motion constitute unlawful work rules. This Court cannot adjudicate whether Plaintiff's speech violates the Protective Order without simultaneously deciding whether that speech is protected concerted activity. That determination is the NLRB's exclusive province. Under Garmon, this Court must defer. Any finding this Court makes in Apple's favor on this motion risks issuing an advisory opinion that contradicts a subsequent NLRB finding that Apple's designations are unlawful — an outcome that would mean this Court helped Apple suppress federally protected labor organizing.

## The Norris-LaGuardia Act

31.      The Norris-LaGuardia Act provides: "No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter." 29 U.S.C. § 101. Section 104(e) specifically prohibits injunctions against "giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C. § 104(e).

32.      This case involves and grows out of a labor dispute. Plaintiff was terminated after publicly complaining about Apple's invasive employee surveillance programs. Three NLRB charges are pending. The April 2025 NLRB settlement between Apple, Plaintiff, and the NLRB governs some of the same confidentiality provisions Apple is attempting to enforce through this Court. Apple's request to compel

deletion of social media posts about working conditions and NLRB charges is a textbook injunction against "giving publicity to … the facts involved in … a labor dispute." 29 U.S.C. § 104(e). Congress stripped federal courts of jurisdiction to issue such relief. The jurisdictional bar is absolute; the Court cannot grant this relief through any procedure.

33.     Even if injunctive relief were theoretically available, § 107 of the Norris-LaGuardia Act requires: testimony of witnesses in open court with opportunity for cross-examination; findings of fact filed in the record; a finding of substantial and irreparable injury; and a finding that public officers cannot furnish adequate protection. 29 U.S.C. § 107. Apple has met none of these requirements.

## The Magistrate Judge's Statutory Authority

34.     Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may determine any pretrial matter "except a motion for injunctive relief." The relief Apple seeks in Dkt. 294 — compelled deletion of published speech and a prohibition on future publication — is injunctive relief regardless of how Apple captions it. This Court recognized this constraint at the February 20, 2026 conference, when it stated: "No, there is no injunction." (Feb. 20, 2026 Tr. at 38:56). A magistrate judge may address injunctive requests only by issuing proposed findings and a recommendation to the district judge under § 636(b)(1)(B), subject to de novo review. That is not what Apple is seeking — Apple seeks an immediate enforceable ruling from this Court.

35.     A magistrate judge's contempt authority is similarly constrained. Summary contempt under § 636(e)(2) is limited to misbehavior in the magistrate's presence. Social media posts are not conduct in the magistrate's presence. For contempt occurring outside the magistrate's presence, the statute requires the magistrate to "certify the facts to a district judge" who then conducts the hearing and determines punishment. § 636(e)(6)(B)(ii). The Advisory Committee Notes to Fed. R. Civ. P. 73 confirm: "A hearing on contempt is to be conducted by the district judge upon certification of the facts and an order to show cause by the magistrate." Finding facts requires evidence. An unrecorded telephone conference — or the present motion, decided without sworn testimony or an evidentiary hearing — cannot constitute the fact-finding required to certify anything to Judge Chen.

36.     Finally, Apple asks this Court to seal Dkt. 278 and Dkt. 285 — filings addressed to and already adjudicated by Judge Chen. A magistrate judge cannot seal a filing the district judge has already ruled on.

## The Federal Speak Out Act of 2022 & California's Silenced No More Act (SB 331)

37.     The Speak Out Act, Pub. L. No. 117-224, 136 Stat. 2290 (2022), invalidates pre-dispute nondisclosure provisions that would prevent employees or contractors from disclosing information related to sexual harassment or sexual assault disputes. The Act provides that "a nondisclosure clause in a dispute that has not yet been filed ... shall not be judicially enforceable." The subject matter of Apple's retained designations — including Plaintiff's testimony about Apple's demands concerning her reproductive physiology, sexual partners, and intimate bodily functions in the employment context — falls within the scope of sexual harassment and privacy-related workplace conduct that the Speak Out Act was designed to protect. A court order enforcing a confidentiality provision to suppress disclosure of this content would violate the Act.

38.     California Government Code § 12964.5, enacted as SB 331 (the Silenced No More Act), prohibits any provision that prevents employees from disclosing information about unlawful workplace conduct, including conduct related to harassment, discrimination, and other violations of the California Fair Employment and Housing Act. The Act renders such provisions void as against public policy and prohibits courts from issuing orders that would have the same effect. Apple's confidentiality designations — applied to Plaintiff's complaints about employer-directed study of her menstrual cycle and sexual partners — cover precisely the category of workplace conduct SB 331 protects. A court order enforcing those designations is a court order doing what SB 331 expressly prohibits.

39.     This also includes the Speak Out Act / STAND Act provisions applicable to this proceeding, including provisions of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act where applicable, and any additional state or federal statutes specifically protecting employee disclosures about intimate-conduct-related workplace violations.]

## California Constitutional Protection for Lawful Conduct Outside the Workplace

40.     California Labor Code § 96(k), which survived five rounds of Apple's motions to dismiss in this case, prohibits employer retaliation for employee conduct that is "lawful ... occurring during nonworking hours away from the employer's premises" and that implicates rights guaranteed by the California Constitution. California Constitution Article I, § 1 guarantees the right of privacy as an inalienable right, and California courts have held this provision protects individuals from intrusion into "private matters" including sexual and reproductive privacy.

41.     Plaintiff's speech — including social media posts describing Apple's demands regarding her menstrual cycle and sexual partners, and her complaints about those demands — is precisely the exercise

of rights the California Constitution protects. An employer-directed injunction against speech about bodily autonomy, sexual partners, and intimate physiological experiences falls squarely within the zone of privacy rights that California law protects as lawful out-of-workplace conduct. See Cal. Lab. Code § 96(k); Cal. Const. art. I, § 1.

## THE CALIFORNIA ANTI-SLAPP STATUTE

42.     California Code of Civil Procedure § 425.16, which the Ninth Circuit applies in federal court (Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963 (9th Cir. 1999)), provides that a cause of action arising from a person's exercise of free speech or petition rights in connection with a public issue is subject to a special motion to strike, with mandatory fee-shifting. Plaintiff's NLRB charges are statements before an official proceeding (§ 425.16(e)(1)-(2)). Her public posts about workplace safety and privacy are statements on issues of public concern (§ 425.16(e)(3)). If Apple files proper motions as required — a Rule 65 motion, contempt petition, or sanctions motion — each would constitute a cause of action arising from Plaintiff's protected speech, and Apple would bear the burden of demonstrating a probability of prevailing. Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). Apple cannot meet this burden. Apple would also be liable for Plaintiff's fees and costs. § 425.16(c)(1).

## BINDING AGREEMENTS, JUDICIAL ADMISSIONS, AND ESTOPPEL BAR RELIEF

### THE APRIL 2025 NLRB NATIONAL SETTLEMENT AGREEMENT

43.     In April 2025, Apple entered a national settlement agreement with the NLRB (Case Nos. 32-CA-284428 and related cases). (Dkt. 194 at 17-20). The settlement is a binding federal agreement. Its terms directly bar the relief Apple seeks:

> *"Apple agrees that it will not enforce the definition of Proprietary Information (or similar terms) set forth in any version of the Confidentiality and Intellectual Property Agreement ('IPA') effective as of the date that this Agreement is executed to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act."*

44.     The settlement further required Apple to post a nationwide notice stating: "WE WILL NOT promulgate, maintain, or enforce a Confidentiality and Intellectual Property Agreement, Business Conduct Policy, Misconduct and Discipline Policy, Social Media and Online Communications Policy, Confidentiality Obligations Upon Termination of Employment statement, or a Business Conduct and Global Compliance FAQ regarding confidential information that broadly defines 'confidential' or 'proprietary' information ... WE HAVE rescinded the aspects of the Social Media and Online Communications Policy described above ... WE HAVE rescinded the prior version of the Confidentiality

Obligations Upon Termination of Employment statement." (Dkt. 194 at 18-20).

45.    The settlement included a self-executing default provision: upon non-compliance, the Regional Director may reissue the October 2024 complaint, Apple's allegations shall be deemed admitted, its answer withdrawn, and the Board may enter a full remedy without trial.

46.    Apple's Motion to Retain Designations (Dkt. 304-305) cites the IPA as the sole legal authority for its retained confidentiality designations — the same IPA Apple promised the NLRB it would stop enforcing. Apple is asking this Court to enforce an agreement that Apple is legally prohibited from enforcing. The April 2025 settlement is a federal agreement that preempts Apple's invocation of the IPA in any forum.

## Judicial Admissions, and Equitable and Judicial Estoppel

47.    Apple's own court filings constitute binding judicial admissions about the purpose and intended operation of its designations. Apple's letter at Dkt. 280, footnote 2, states: "Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed. But Plaintiff has disregarded those obligations before; indeed, it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place."

48.    This admission establishes: (1) Apple's enforcement theory rests on the IPA — a contract it is legally prohibited from enforcing; (2) Apple explicitly views the current proceeding as parallel to, and in service of, its termination defense; and (3) a finding of violation in this proceeding would therefore constitute a judicial endorsement of Apple's termination justification — precisely the merits pre-adjudication that Rule 56 exists to prevent.

49.    Apple also admitted during meet-and-confer before entry of the Protective Order that it "noted concerns they wanted the order to expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement about the evidence she received from Apple during discovery." (Dkt. 220 at 10-11, ¶ 15). A protective order designed to prevent testimony to federal law enforcement is not a discovery management tool. The Court entered the Order despite this admission.

50.    Apple represented to this Court that it needed the Protective Order to produce the Gobbler informed consent form. Apple never used the Order for that purpose, and never designated the Gobbler form as confidential. Apple may not now invoke the Order it obtained by misrepresenting its intended use to obtain a fundamentally different form of relief — suppression of Plaintiff's speech about workplace conditions — than the one Apple described.

51.    Furthermore, Apple represented to the NLRB in the April 2025 settlement that it would stop enforcing the IPA to cover terms and conditions of employment. Apple cannot take contrary positions in different federal proceedings. New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001) (judicial estoppel prevents parties from adopting inconsistent positions in different proceedings).

## THE PROTECTIVE ORDER'S OWN TEXT, AND BINDING CONSTITUTIONAL LAW, EXCLUDE ALL DESIGNATED CONTENT

### THE ORDER'S EXPRESS EXCLUSIONS ARE DISPOSITIVE

52.    The Protective Order states in its preamble that it "does not confer blanket protections on all disclosures" and that "the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." (Dkt. 235 § 1). Section 3 expressly lists content the Order does not cover:

> "The protections conferred by this Stipulation & Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party ... and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party." (Dkt. 235 § 3).

Both prongs of § 3 are fully satisfied here. Every item Apple designated falls within one or both exclusions:

53.    Section 3(a) — Public Domain: Apple's menstruation and ovulation studies have been publicly pled in every version of Plaintiff's complaints since September 2023 and addressed in Judge Chen's published orders. The bed-sensor NDA program is described in the Second Amended Complaint (Dkt. 32 at 58) and has been reported on publicly since at least 2021. The same content appears in NLRB filings, a White House OSTP public comment, a GAO Report to Congress, and multiple media publications. Dkt. 297 at pp. 8-11 provides a detailed citation-by-citation accounting of each designated category's prior public availability.

54.    Section 3(b) — Prior Knowledge: Plaintiff does not know that Apple asked about her menstrual cycle because of the deposition. She knows because it happened to her. The deposition testimony Apple designated describes Plaintiff's own physiological experiences, her own workplace complaints to management and coworkers, and her own protected concerted activity — all of which predated the deposition by years. The Order excludes this content from its scope by its own express terms. An attempt to 'designate' excluded content as confidential is void. One cannot violate a provision of an order over content the order expressly says it does not govern.

55.     The canon against surplusage requires this Court to give effect to the Order's exclusions. If the § 3 exclusions are not operative, they are surplusage — and courts are not authorized to interpret provisions to be meaningless. See Scalia & Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). The Order's exclusions mean exactly what they say.

## THE SUPREME COURT'S SEATTLE TIMES FRAMEWORK

56.     The governing constitutional framework for blanket discovery protective orders was established in Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984). The Supreme Court held that a protective order restricting dissemination of information obtained through discovery survives First Amendment scrutiny only when it meets two conditions: (1) it is "limited to the context of pretrial civil discovery," and (2) it "does not restrict the dissemination of the information if gained from other sources." Id. at 37 (emphasis added).

57.     Apple's enforcement theory fails both conditions. It is not limited to the discovery context — Apple seeks to suppress Plaintiff's public speech about her own body and her workplace experiences, which she discussed publicly long before any deposition and which she knows from her own lived experience. And it does precisely what Seattle Times prohibits: it attempts to restrict dissemination of information that Plaintiff "gained from other sources" — namely, from being the person to whom these things happened.

58.     Lower courts have faithfully applied Seattle Times. The First Circuit held in Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 780 (1st Cir. 1988), that "[p]arties to litigation have general First Amendment freedoms with regard to information gained through discovery and ... absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." The Ninth Circuit applied the same reasoning in Foltz v. State Farm, 331 F.3d 1122, 1131 (9th Cir. 2003) — confirming that a blanket protective order does not justify restricting information a party gained independently of the discovery process.

## A DESIGNATION CANNOT RETROACTIVELY CLASSIFY PRE-EXISTING KNOWLEDGE AS A TRADE SECRET

59.     Apple's theory of the Protective Order would permit a party to render any factual knowledge — regardless of its prior public availability — legally secret by designating it in a deposition transcript. This is not what protective orders do, and it is not what they are constitutionally permitted to do. A confidentiality designation under a stipulated protective order is a unilateral label applied by one party. It is a provisional placeholder the designating party must defend when challenged. See Beckman

Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (burden remains on designating party to justify each designation when challenged).

60.    The Ninth Circuit has confirmed that the burden to demonstrate confidentiality under Rule 26(c) requires the movant to show "specific prejudice or harm will result" from disclosure; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). Apple has identified no specific competitive harm from disclosure of an employee's personal testimony about her own reproductive experiences. Apple's circular argument — the information is confidential because Apple designated it confidential — cannot satisfy this standard.

## APPLE'S CASES DO NOT SUPPORT ITS POSITION

61.    Apple relies on Harmston v. City & County of San Francisco, 2007 WL 3306526 (N.D. Cal. 2007); Gonzales v. Charter Communications, LLC, 2022 WL 570003 (C.D. Cal. 2022); I.F. v. City of Vallejo, 2021 WL 601054 (E.D. Cal. 2021); and Ma v. San Francisco Estuary Institute, 2026 WL 388720 (N.D. Cal. 2026). Each is distinguishable.

62.    Each of Apple's cases involved: (1) a validly made designation — not a lapsed blanket designation and an unsigned, undated nullity; (2) information that was not in the public domain; and (3) information that was not independently known to the disclosing party from pre-litigation experience. None involves an attempt to designate a party's own testimony about her own body as a corporate trade secret. None involves the Seattle Times framework's limitation on restricting information gained from independent sources. The observation in I.F. v. City of Vallejo that the "propriety of the original designation" may be "beside the point" presupposes a valid designation exists — a presupposition that is false here.

## CONFIDENTIALITY IS A LIVE MERITS QUESTION; APPLE HAS ADMITTED IT KNOWS THIS

### APPLE'S TERMINATION DEFENSE AND THIS ENFORCEMENT PROCEEDING ARE IDENTICAL IN POSTURE AND LEGAL THEORIES

63.    Apple fired Plaintiff in September 2021. Apple's stated justification — preserved through five rounds of motions to dismiss — is that Plaintiff disclosed "confidential" information about Apple's employee studies. Plaintiff's surviving claims rest on the contrary position: that her public discussion of Apple's invasive workplace studies was constitutionally protected protest of invasions of privacy under California Constitution Article I, § 1; protected whistleblowing under Labor Code § 1102.5; and protected

activity under § 96(k) for exercising rights guaranteed by the California Constitution.

64.     Apple's letter at Dkt. 280, footnote 2, makes the connection explicit: "Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed. But Plaintiff has disregarded those obligations before; indeed, it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." Apple has thus confirmed, in a court filing, that this enforcement proceeding concerns the same speech, the same studies, and the same confidentiality theory as its termination defense.

## A Finding of Violation Would Pre-Adjudicate the Central Summary Judgment Question

65.     If this Court finds that Plaintiff's speech about Apple's studies violated the Protective Order — on a discovery enforcement motion, without Rule 56 process, without a statement of undisputed facts, without evidence, and without the legal standards applicable to wrongful termination claims — Apple will argue at summary judgment: "A federal court already held that Plaintiff's speech was wrongful conduct, not protected activity. That finding is preclusive." Plaintiff's Tamney wrongful termination claim, her § 1102.5 claim, and her § 96(k) claim would be gutted before they reached the merits.

66.     The Court may not use a discovery motion to resolve the central question of a retaliation case. Plaintiff raised this warning before the Protective Order was entered (July 2, 2025 Tr. at 6:22-24) and has renewed it in every subsequent filing. The structural problem is not hypothetical — Apple has now made the connection explicit in its own papers. Summary judgment is currently scheduled for June 2026. That is where this question belongs.

## A Finding of Violation Would Also Prejudice the Pending NLRB Proceedings

67.     Three NLRB charges are pending, alleging that the designations Apple is enforcing through this motion are unlawful work rules. A finding by this Court that Plaintiff "violated" those designations would constitute a federal district court holding that Apple's work rules are lawful — a holding directly contrary to what the NLRB may find, and one that would prejudice the NLRB proceedings that were pending before Apple filed this motion. Under Garmon, this Court must defer; it cannot issue advisory opinions on matters within the NLRB's exclusive jurisdiction.

68.     A finding of violation would also establish a basis for Apple to claim breach of the IPA — providing Apple with damages leverage it cannot currently obtain because: (a) the bankruptcy stay prohibits breach of contract claims against Plaintiff; and (b) Apple agreed in the April 2025 NLRB settlement to stop

enforcing the IPA. A contempt or violation finding would also contradict Judge Chen's order at Dkt. 213, which stated that "even if Apple designates certain documents as confidential, that does not bar Ms. Gjovik from contesting a designation." A finding of violation for contesting a designation would directly contradict the district court's assurance on which Plaintiff relied.

## APPLE SEEKS TO PUNISH PLAINTIFF FOR INDEPENDENTLY PROTECTED ACTIVITY UNDER MULTIPLE FEDERAL AND STATE LAWS

### THE NLRA: SECTION 7 AND SECTION 8(A)(4)

69.     Section 7 of the NLRA protects employees' rights to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The NLRB and courts have consistently held that employees retain the right to discuss working conditions — including complaints about invasive employer surveillance, medical studies, and privacy violations — with coworkers and with the public. Eastex, Inc. v. NLRB, 437 U.S. 556 (1978). Section 8(a)(4) separately prohibits retaliation against employees for filing charges with the NLRB or cooperating with the Board.

70.     Plaintiff's speech — including her social media posts, her blog post, her NLRB charges, and her court filings describing Apple's designations — is protected under both provisions. Apple's designation of this speech as "confidential" is itself an unlawful work rule under Banner Health System, 362 NLRB 1108 (2015). Apple's request for sanctions and injunctions against Plaintiff for this speech is textbook § 8(a)(4) retaliation — directly acknowledged in NLRB Charge No. 32-CA-381277.

### TITLE VII, THE EEOC, AND THE DFEH (CAL. GOV. CODE § 12940)

71.     Title VII of the Civil Rights Act prohibits retaliation against employees who oppose practices they reasonably believe to be unlawful, including through public statements. 42 U.S.C. § 2000e-3(a); Crawford v. Metropolitan Gov't of Nashville, 555 U.S. 271, 276 (2009); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Plaintiff's statements constitute opposition to practices she reasonably believed violated Title VII and California's Fair Employment and Housing Act: specifically, employer interrogation of employees about their menstrual cycles, ovulation, and cervical mucus; and employer demands that employees' sexual partners sign NDAs with the company as a condition of intimate contact. These are practices that a reasonable employee could believe constitute sex-based harassment or discrimination.

72.     An order holding Plaintiff in violation of a court order for complaining about these practices, or compelling her to delete those complaints, would accomplish through judicial process what

Title VII's anti-retaliation provision is specifically designed to prevent.

#### Reporting Anticompetitive Behavior (FTC Act)

73.    There is a protected status of speech reporting anticompetitive practices under Section 5 of the FTC Act and any applicable whistleblower provisions, including whether Plaintiff's disclosures about Apple's commercial exploitation of employee biometric data — using coerced and uncompensated employee participation in product development studies — constitute protected reporting of unfair or deceptive trade practices.]

#### California Privacy Laws and Constitutional Protections

74.    The California Consumer Privacy Act (CCPA), Cal. Civ. Code § 1798.100 et seq., and California's constitutional right to privacy under Article I, § 1, protect individuals' rights to control information about their own bodies, including biometric and reproductive health data. An employer's demand that employees allow collection, storage, and commercial use of their menstrual, ovulation, and cervical-mucus data — under threat of workplace consequences for refusal — implicates these protections directly. Plaintiff's public disclosure of these practices is protected activity under both the CCPA's non-retaliation provisions and the California constitutional right to control one's own private information.

75.    Lopez v. Apple Inc., Case No. 4:19-cv-04577-JSW (N.D. Cal.), is instructive: in that case, Apple was sanctioned for concealing and destroying evidence of surveillance and personal data collection from users without consent, including during sexual activity — the same category of intimate-data collection that Plaintiff's workplace complaints describe. Apple's characterization of complaints about this data collection as "confidential business information" that employees cannot discuss publicly is precisely the concealment rationale courts have found sanctionable.

### VII.  APPLE HAS NOT AND CANNOT SATISFY THE LEGAL STANDARDS FOR THE RELIEF IT SEEKS

#### Apple Cannot Satisfy the Mandatory Injunction Standard

76.    A mandatory injunction — which compels affirmative action rather than merely prohibiting future conduct — is subject to a heightened standard above and beyond the ordinary Winter test. Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994); Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The movant must show that the facts and law clearly favor the moving party, and that the balance of equities weighs heavily in the movant's favor. Id.

77.    Apple cannot satisfy any element of this standard. (1) Likelihood of success: Apple's designations are void, the Order's scope exclusions apply, and the jurisdictional bars independently

preclude relief. Apple's probability of prevailing is near zero. (2) Irreparable harm: Apple identifies no concrete competitive harm. Its circular argument — the information is confidential, therefore disclosure causes harm — does not constitute the "specific, concrete evidence" of irreparable harm that the Ninth Circuit requires. (3) Balance of equities: Compelled deletion of published speech about labor organizing and workplace privacy violations is an extraordinary remedy with severe constitutional implications; Apple's claimed interest in suppressing an employee's description of her own bodily experiences does not outweigh this. (4) Public interest: the public interest in transparency about employer surveillance practices, the NLRB process, and workplace privacy rights weighs heavily against the relief Apple seeks.

## Apple Cannot Satisfy the Prior Restraint Standard

78.     A prior restraint on speech is "the most serious and least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). Prior restraints carry a "heavy presumption" against constitutional validity, and the government — or the party seeking the restraint — bears the burden of overcoming that presumption through strict scrutiny. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963). Internet speech receives full First Amendment protection. Reno v. ACLU, 521 U.S. 844, 870 (1997).

79.     Social media gag orders and social media deletion orders have been repeatedly struck down. See Rasawehr v. Bey (Ohio S. Ct. 2020) (unanimously striking down social media deletion order as impermissible prior restraint). Apple's motion contains no First Amendment analysis, no strict scrutiny showing, and no authority for the proposition that a discovery protective order can function as a prior restraint on a party's speech about her own body and her NLRB charges. The absence of any First Amendment analysis is itself fatal.

## Apple Cannot Satisfy the Sealing Standard

80.     A party seeking to seal a judicial record "bears the burden of overcoming th[e] strong presumption" of public access by meeting the "compelling reasons" standard. Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The court must articulate specific factual findings supporting sealing that outweigh the public interest. Foltz v. State Farm, 331 F.3d 1122, 1135 (9th Cir. 2003). Apple's sole basis for sealing — a circular assertion that the information is confidential because Apple designated it confidential — has been rejected by this Court, by Judge Pitts in Apple Inc. v. Rivos, Inc., 2024 WL 748394 (N.D. Cal. Feb. 23, 2024) (denying Apple sealing of deposition testimony about "Apple's practices with respect to its employees" and warning against generic sealing contentions), and by Civil Local Rule 79-5(c)'s first sentence: "Reference to a stipulation or protective order that allows a party

to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable."

81.    Apple also seeks to seal entire documents — Dkt. 278, 284, and 285 in their entirety — in direct violation of L.R. 79-5(a)'s requirement that parties "avoid wherever possible sealing entire documents." The sealing requests fail procedurally, substantively, and constitutionally.

## Apple Cannot Satisfy the Sanctions Standard

82.    Sanctions require a showing of willful non-compliance or, under Rule 11, certification that the filing is frivolous or filed for an improper purpose — with a mandatory 21-day safe-harbor notice before any sanctions motion is filed. Fed. R. Civ. P. 11(c)(2). Apple served no Rule 11 safe-harbor notice. Apple filed no Rule 37 motion under L.R. 7-8. Apple submitted no sworn affidavits and no authenticated evidence. Apple's letter and motion rest entirely on Apple's unsworn characterization of events. A court cannot impose sanctions based on unsworn allegations in a motion, without an evidentiary hearing and the process the quasi-criminal nature of contempt requires. Bagwell, 512 U.S. at 826-32.

## THE DESIGNATED CONTENT HAS BEEN PUBLICLY KNOWN FOR YEARS — DISCLOSED BY PLAINTIFF AND BY APPLE ITSELF

83.    Apple's designations purport to cloak as "Apple Confidential" information that has been in the public domain for years — disclosed not only by Plaintiff through government filings, journalism, social media, and this litigation, but also independently disclosed by Apple itself through academic publications, clinical trial registrations, press releases, and commercial marketing. No protective order designation can restore confidentiality to information already in the public domain regardless of who placed it there.

## Plaintiff's Disclosures — Years of Public Record Predating the Protective Order

84.    The subject matter Apple designates as confidential — Apple's employee bodily studies, the sleep-sensor program requiring sexual partners to sign Apple NDAs, the ovulation and menstruation tracking requests, and Plaintiff's workplace complaints about each of these — has been the subject of continuous, detailed public disclosure by Plaintiff since August 2021, nearly four years before this motion was filed.

85.    ***Government Agency Filings (2021–2026).*** Plaintiff filed the first of her NLRB charges in August 2021, describing Apple's invasive employee studies and Apple's use of secrecy oaths to suppress employee complaints. Those charges, and the underlying facts, have been the subject of federal agency proceedings ever since. The April 2025 national NLRB settlement (Dkt. 194) — publicly filed on this

docket — expressly references Apple's policies covering the same subject matter. The pending NLRB Charge No. 32-CA-381277 (filed February 16, 2026, publicly filed as Dkt. 278 on this docket) specifically identifies Apple's confidentiality designations targeting Plaintiff's complaints about bodily studies as NLRA violations. Plaintiff also submitted a formal public comment to the White House Office of Science and Technology Policy (OSTP) describing Apple's employee surveillance, biometrics collection, and sleep-sensor program in detail. That comment was published in the Federal Register (OSTP_FRDOC_0001-0008, "Automated Worker Surveillance and Management") and was cited in a GAO Report to Congress (GAO-24-107639, August 2024) — both permanent public records. (25-2028, Dkt. 33.1).

86.    ***This Litigation — Five Complaints on This Docket (2023–2024)***. Plaintiff filed the original complaint in this case on September 7, 2023. Through five successive complaints, each filed publicly on this Court's docket, Plaintiff described Apple's coercive employee studies in extensive factual detail:

87.    The Second Amended Complaint (Dkt. 32, December 2023) alleged that "Apple wanted to study her ovulation cycles and menstruation, which she denied. Apple asked to study Gjovik's vitals while she ran and swam, which she denied. Apple asked to study Gjovik's vitals and sleep while she slept, which she accepted for a few months, but then left the program due to how invasive it felt." (SAC Dkt. 32 ¶ 144). The sleep study included "Apple placing a sensor under her while she slept every night, recording her vitals and movements, and sharing the data with Apple for commercial purposes," along with requirements that sexual partners sign NDAs with Apple before sleeping in Plaintiff's bed. (SAC Dkt. 32 at 58). These allegations were incorporated, expanded, and carried through the Third (Dkt. 47), Fourth (Dkt. 76), and Fifth (Dkt. 142) Amended Complaints.

88.    Judge Chen's orders — which are public records of this Court — describe Apple's invasive employee studies as among the "main categories of alleged misconduct" in this case. (Dkt. 73 at 7-8; Dkt. 179 at 2). Judge Chen's May 2024 order states: "Apple frequently requested that Gjovik and her coworkers participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA tests, biometrics data collection (like the Gobbler app), and other highly personal examinations." (Dkt. 73 at 7-8). These are this Court's own public orders describing the same subject matter Apple now asks to seal.

89.    ***Journalism and Media (2021–2023)*** Apple's bodily employee studies and the Gobbler application were publicly reported in detail in multiple major publications prior to the entry of the Protective Order. These include: Bloomberg (2021); The Verge (2021), which published Apple's employment agreement language verbatim (Dkt. 35-12); Gizmodo; Der Spiegel; TechCrunch; and

Telerama magazine (France, March 14, 2023), which described Apple's menstrual cycle monitoring of employees, including cervical mucus tracking, with a former coworker of Plaintiff providing photographs of the physical kit Apple distributed to female engineers. Apple was contacted for comment by Telerama and declined. The Verge article is filed as Exhibit 12 to Docket 35 in this case — it has been on this Court's public docket for over two years. Apple filed no motion to seal it.

90.    ***Ninth Circuit, NLRB, U.S. Dept. of Labor, and Bankruptcy Court Filings***. Plaintiff has filed detailed factual descriptions of Apple's employee studies, Gobbler, and the sleep-sensor co-sleeper NDA program in the Ninth Circuit (Case No. 25-2028, including DktEntry 15.1 at 13) and in her Chapter 7 bankruptcy proceedings (Case No. 25-11496, D. Mass.), where they appear on additional federal court dockets accessible to the public.

### APPLE'S OWN PUBLIC DISCLOSURES — ACADEMIC STUDIES, CLINICAL TRIALS, PRESS RELEASES, AND MARKETING

Apple's confidentiality argument is particularly untenable given that Apple itself has publicly disclosed the existence of its employee health studies through multiple official channels.

91.    Apple has registered employee health research studies on ClinicalTrials.gov, the federal government's public clinical trial registry maintained by the National Institutes of Health. ClinicalTrials.gov registrations are public records describing study protocols, participant characteristics, and data collection procedures — information Apple now claims is too sensitive to discuss in a deposition. Apple has also published academic research based on its employee health studies in peer-reviewed scientific journals, co-authored by Apple employees and Apple's research partners, describing data collection from Apple employees including physiological measurements and biometric monitoring. These publications are permanently in the scientific literature.

92.    Apple has issued press releases and made investor disclosures about its health research capabilities and the data collection that underlies them. Apple's marketing for the Apple Watch and its health features — including menstrual cycle tracking, sleep monitoring, and biometric data collection — directly implicates the commercial applications of the same employee research programs Apple now seeks to suppress. Apple has made these disclosures publicly and cannot simultaneously argue that an employee describing in deposition what she experienced in the same programs is disclosing Apple's trade secrets.

93.    Apple cannot designate as confidential the same subject matter it has publicly registered with the NIH, published in journals, announced in press releases, and marketed in television commercials. The Protective Order's § 3 exclusions for public-domain information apply fully. So does the principle that information "known to the Receiving Party prior to disclosure" — here, from Plaintiff's own life experience

— cannot be designated. (Dkt. 235 § 3). And so does Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984): a protective order cannot restrict dissemination of information obtained from independent sources.

94.     The combined effect of years of public disclosure by Plaintiff and years of public disclosure by Apple itself is that there is no confidential information left to protect. Apple's designations are a legal fiction — an attempt to use court process to suppress information that ceased to be confidential long before the Protective Order was entered. No designation, court order, or protective order can un-ring this bell. The information is in the public record, on this Court's docket, in federal agency files, in the Federal Register, in peer-reviewed journals, in GAO reports to Congress, in newspaper archives across multiple countries, and on Plaintiff's public blog. The motion should be denied on this basis alone.

## APPLE'S MOTION SEEKS RELIEF THAT DIRECTLY CONTRADICTS THE RELIEF PLAINTIFF REQUESTS IN HER COMPLAINTS

95.     Apple asks this Court to declare that the subject matter of its employee bodily studies is confidential — and that Plaintiff violated a court order by speaking about it. But from the Third through the Fifth Amended Complaint, Plaintiff has affirmatively asked this Court to declare the opposite: that Apple's conduct is unlawful, that its secrecy regime is unlawful, and that Apple should be ordered to disgorge the data, stop the studies, and be civilly penalized. Apple's motion, if granted, would function as a pre-trial adverse ruling on Plaintiff's own claims — extinguishing the very injunctive relief Plaintiff seeks before the case ever reaches trial.

### What Plaintiff Has Asked This Court to Order Apple to Do

96.     Across three versions of the operative complaint, Plaintiff has requested this Court enter injunctive and declaratory relief requiring Apple to stop its coercive employee study program and disgorge the data it collected. Specifically:

97.     Third Amended Complaint (Dkt. 47, ¶ 261): "Gjovik requests an order that prohibits Apple from using personal employee data in for-profit product development, including medical experiments, anatomical measurements, and imaging, gathering employee biometrics, any use of the Face 'Gobbler' application, and other conduct violating their rights of privacy. Gjovik also requests in injunctive relief of an order for disgorgement of the unlawfully and unethically obtained data, at the very least of Gjovik's data, including any products developed using Gjovik's personal data, including Gobbler images."

98.     Fourth Amended Complaint (Dkt. 76, ¶¶ 203-207): "Injunction and disgorgement are appropriate here, and the court has broad powers to issue injunctive relief under California Business and Professions Code §§ 17200, including the power to order restitution and disgorgement.... Without

injunctive equitable relief, Gjovik and her prior coworkers will suffer irreparable injury, which damage remedies cannot readily remedy. Apple should be ordered to disgorge unlawful data and the fruit of the poisoned data.... Gjovik requests an order that prohibits Apple from using personal employee data in for-profit product development, including medical experiments, anatomical measurements, and imaging, gathering employee biometrics, any use of the Face 'Gobbler' application, and other conduct violating their rights of privacy." (4AC ¶¶ 203-207).

99.    Fifth Amended Complaint (Dkt. 142, ¶ 219): "Apple also violated § 5 of the FTC Act in unlawfully coercing employees to provide personal and sensitive data for commercial product development, which was also engaging in unfair acts or practices that can harm consumers, cannot be avoided by consumers, and are unreasonable and misleading statements to consumers."

### What Apple's Conduct Actually Was — as Pled in the Surviving Claims

100.    The conduct Apple now seeks to permanently suppress as confidential is the same conduct Plaintiff has pled as unlawful across every version of her complaint. Plaintiff alleged in the Fourth Amended Complaint (Dkt. 76, ¶¶ 195-202):

101.    "Apple repeatedly implied to Gjovik that her participation was not optional. Gjovik's annual performance reviews made express note of Gjovik's participation in Apple's studies and experiments and praised her for her unpaid labor in facilitating the numerous invasions into her privacy.... This included a sleep study with Apple placing a sensor under her while she slept every night, recording her vitals and movements, and sharing the data with Apple for commercial purposes. When Gjovik was invited to participate in these events, the team often would not disclose what the study was until the 'volunteers' arrived physically on site to a secure building where ex-FBI security personal would threaten her and her workers to not even tell their friends or family what happens at Apple, and especially studies like these." (4AC ¶¶ 196-197).

102.    "Apple did not disclose the details of the experiments until after Gjovik signed a secrecy oath and 'consented' to the activity, and then repeatedly threatened Gjovik with termination if she was to speak about it even to a doctor or attorney (as was expressly written in one Deed Poll)." (4AC ¶ 112).

103.    "Apple's declaration that it can terminate employees for protesting these invasions and warning the public is 'sufficiently serious in its nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.'" (4AC ¶ 199).

104.    The Fifth Amended Complaint (Dkt. 142, ¶¶ 157-164) describes the same events in Plaintiff's active surviving claims:

105.     "Plaintiff complained that Apple often asked that Plaintiff and her coworkers participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA tests, biometrics data collection, and other highly personal examinations. Apple did not disclose the details of the experiments until after Plaintiff signed a secrecy oath and 'consented' to the activity, and then repeatedly threatened Plaintiff with termination if she was to speak about it even to a doctor or attorney (as was expressly written in one Deed Poll)." (5AC ¶ 158).

## The Irreconcilable Contradiction at the Heart of Apple's Motion

106.     Apple's motion asks this Court to find that Plaintiff violated a court order by publicly complaining about Apple's bodily studies of its employees. Plaintiff's complaints ask this Court to find that Apple violated federal and state law by conducting those studies and using secrecy oaths to suppress employee complaints about them. These two requests cannot both be granted. They are fundamentally irreconcilable.

107.     Apple's Cal. Bus. & Prof. Code § 17200 argument — that Apple's coercive data collection from employees constitutes an unfair and unlawful business practice — was a surviving claim through the Fourth Amended Complaint. (4AC ¶¶ 192-207). Judge Chen dismissed it only on statute of limitations grounds in that amendment — not on the merits, and not with a finding that Apple's conduct was lawful. The privacy invasion, FTC Act, and Tamney sub-claim versions of the same factual predicate remain live in the Fifth Amended Complaint. (5AC ¶¶ 214-255).

108.     The relief Plaintiff has consistently requested — an injunction prohibiting Apple from coercing employees into bodily studies, disgorgement of unlawfully obtained data, and civil penalties — presupposes that the studies are unlawful and that Apple's secrecy regime is unlawful. Apple's motion presupposes the opposite: that the studies are protectable confidential business information and that Apple's secrecy regime is enforceable. Apple cannot ask this Court to adjudicate the latter without first winning the former through proper summary judgment proceedings.

109.     Apple's own filing at Dkt. 280, footnote 2, makes the connection explicit: Apple argues that the current enforcement proceeding is analogous to Apple's justification for terminating Plaintiff's employment in 2021, and that both are governed by the IPA. ("it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place.") But whether Apple's termination of Plaintiff violated public policy — specifically, the public policy against suppressing employee complaints about illegal invasions of privacy, unlawful data collection, and coercive employer studies — is a jury question scheduled to be resolved at trial. Apple cannot obtain through a discovery

enforcement motion what it must establish through summary judgment: that Plaintiff's speech was wrongful rather than protected.

110.    Finally, the Cal. Lab. Code § 96(k) claim (surviving in 5AC ¶¶ 243-255) specifically protects Plaintiff's right to speak about Apple's coercive study program during non-working hours away from Apple premises. The Tamney claim (surviving in 5AC ¶¶ 214-242) is premised on Apple's termination of Plaintiff for making these exact public disclosures. Granting Apple's motion would amount to finding, before trial, that these disclosures were not protected — undermining Plaintiff's Tamney and § 96(k) claims before the first witness is sworn. That is precisely the kind of pre-adjudication on the merits that Rule 56 and the Summary Judgment schedule exist to prevent.

## X. APPLE'S MOTION IS RELIEF ON UNPLED, WAIVED COUNTERCLAIMS

111.    Apple's motion rests at bottom on the IPA — a contract between Plaintiff and Apple that Apple claims independently prohibits Plaintiff's speech. Apple stated this directly in Dkt. 280, footnote 2: Plaintiff is "also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed." Apple repeated this theory in Dkt. 294 and in its Motion to Retain Designations (Dkt. 304-305), where the IPA is the sole identified legal authority for the retained designations.

112.    If Apple believes Plaintiff breached the IPA, Apple must file a counterclaim or separate breach of contract action — with a pleading, an answer to any defenses, and the evidentiary process the claim requires. Apple has filed no such counterclaim. Fed. R. Civ. P. 13(a)-(b). Under well-established doctrine, a party that fails to plead a compulsory counterclaim in its answer waives that claim. Fed. R. Civ. P. 13(a)(1); see also Pochiro v. Prudential Ins. Co., 827 F.2d 1246, 1249 (9th Cir. 1987). Apple filed its answer in this case without pleading breach of contract or breach of confidentiality as a counterclaim. Those claims are waived.

113.    A motion to enforce a protective order cannot serve as a substitute pleading for an unpled breach of contract claim. Apple cannot seek, through a discovery motion, relief that depends on a contractual theory Apple failed to plead. The bankruptcy automatic stay independently prohibits Apple from asserting any claim against Plaintiff as a debtor without first obtaining stay relief. Until the stay is lifted, Apple cannot pursue contractual relief regardless of whether it was previously pled.

## APPLE CANNOT SEEK EQUITY WITH UNCLEAN HANDS

114.    Apple's motion requests equitable relief — declaratory, injunctive, and mandatory

remedies in equity. The fundamental maxim of equity is that courts of equity do not entertain relief for parties with unclean hands. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244-45 (1933). Apple's hands are demonstrably unclean, in multiple independent respects documented in this Court's own record:

115.    ***Apple's Designations Are a Procedural Nullity***. As established in Section II above and in Plaintiff's Dkt. 302, Apple's blanket designation lapsed under the Protective Order's 21-day rule; Apple's February 4 narrowed designation was unsigned, undated, and unserved in violation of Rule 26(g)(1); and Apple expressly refused to cure the deficiency after specific written notice. Apple is seeking equity to enforce designations that were never validly made.

116.    ***Apple Obtained the Protective Order on False Pretenses***. Apple represented to this Court that it needed the Protective Order to produce the Gobbler informed consent form. Apple never used the Order for that purpose. The sole use Apple has made of the Order — by Apple's own filings — is to suppress Plaintiff's speech about the factual basis of her own termination. Equity does not favor a party that obtained a court order by misrepresenting its intended use and then seeks to enforce it for the purpose it misrepresented.

117.    ***Apple Filed This Motion in Violation of Court Orders***. Apple filed this motion in direct defiance of this Court's February 20, 2026 order requiring meet-and-confer before any motion practice, seven documented refusals to comply with that order notwithstanding. Apple is asking this Court to grant equitable relief for a perceived violation of a court order — while simultaneously and willfully violating a court order.

118.    ***Apple Designated Protected Speech to Suppress NLRB Activity***. Apple's blanket designation was imposed at the precise moment Plaintiff began testifying about her NLRA rights — before any of that testimony was spoken. Apple's counsel admitted during meet-and-confer that Apple wanted the Protective Order to prohibit Plaintiff from "testifying to government agencies and law enforcement" about evidence she received in discovery. (Dkt. 220 at 10-11, ¶ 15). These are improper purposes that independently disqualify Apple from equitable relief.

119.    ***Apple Is Violating the NLRB Settlement***. Apple's citation of the IPA — in this motion and in Dkt. 304-305 — violates the April 2025 national settlement agreement Apple entered with the NLRB, in which Apple promised to stop enforcing the IPA to cover terms and conditions of employment. Apple cannot seek equitable relief through this Court while simultaneously violating a binding agreement with a federal agency.

# THE PROTECTIVE ORDER IS UNENFORCEABLE AS WRITTEN AND AS APPLIED

## If the Protective Order Is a Stipulation: No Mutual Assent

120. A stipulation is a contract between parties and is governed by contract law. For a contract to be enforceable, the parties must have reached mutual assent — a genuine meeting of the minds on the material terms. Cal. Civ. Code § 1580; Restatement (Second) of Contracts § 17. Here, Plaintiff did not voluntarily agree to the Protective Order. She objected at every stage, filed a 205-page motion to quash, appealed to the Ninth Circuit, and told the Court on the record that she would not sign unless ordered to. The Court then pressured her to sign immediately at the July 2, 2025 hearing, saying "Ms. Gjovik, can you sign it as soon as possible? ... Today would be great." (July 2, 2025 Tr. at 18:10-14), and implicitly communicating that the Order would be entered whether she agreed or not.

121. A signature obtained under these conditions — over objection, after being told refusal would lead to the same outcome — does not constitute voluntary mutual assent. The Protective Order cannot be enforced as a stipulation because there was no genuine stipulation.

## California Statutes Independently Prohibit Its Enforcement

122. Even if the Order were a valid stipulation, the terms Apple seeks to enforce — a prohibition on employees discussing their bodies, their workplace complaints, and their labor rights — are independently void under California law. The Silenced No More Act (Cal. Gov. Code § 12964.5) prohibits any agreement or provision preventing employees from disclosing information about unlawful workplace conduct, including conduct related to harassment and discrimination. Apple's IPA, and by extension any Order enforcing those same terms, is prohibited by this statute. The Speak Out Act reaches the same conclusion under federal law. Cal. Lab. Code § 432.5 prohibits employers from requiring employees to sign agreements that violate any law. An NDA or confidentiality clause that prohibits discussion of harassment or NLRA-protected activity violates California law and cannot be enforced by any California court, including this one sitting in diversity on California law claims.

## If the Protective Order Is a Court Order: No Required Showing Was Made

123. If the Protective Order is treated as a court-ordered protective order under Fed. R. Civ. P. 26(c) — rather than a stipulation — it required Apple to demonstrate "good cause" for the protection it sought, supported by a showing of specific harm. Fed. R. Civ. P. 26(c)(1). Apple made no such showing. Apple filed no motion seeking the protective order and submitted no declaration establishing that any specific information required protection. The Court entered the Order at Apple's request without requiring

the showing Rule 26(c) mandates.

124.    A protective order imposed without the Rule 26(c) showing required by the Federal Rules is void as entered — and courts in this Circuit have refused to enforce such orders. See also the First Amendment overlay: because the Order restricts speech, it is subject to strict scrutiny regardless of its procedural vehicle, and a prior restraint imposed without the constitutionally required showing of necessity cannot be enforced. Cf. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 562 (1976) (prior restraints permissible only upon an "extraordinary" showing of necessity).

## If the Protective Order Is a Local Rule (Model Template): It Was Never Adopted Through Rule 83

125.    The Northern District's Model Stipulated Protective Order is a template published by the Court for parties' convenience. If its terms have force as a local rule — such that violation of those terms constitutes contempt of a court-issued directive — then the template must have been adopted through the rulemaking process required by Fed. R. Civ. P. 83 and 28 U.S.C. § 2071. Rule 83 requires that any local rule be adopted after public notice and a reasonable opportunity for comment. A template order that was never adopted through the Rule 83 process cannot be enforced as a local rule.

126.    Apple cannot have it both ways: either the Protective Order derives its authority from the parties' stipulation (in which case, there was no valid stipulation), or it derives authority from the Court's Rule 26(c) authority (in which case, no required showing was made), or it derives authority as a local rule (in which case, it was never validly adopted through Rule 83). Under any of these theories, the Order as Apple seeks to apply it is unenforceable.

## The FRCP Prohibit Using the Protective Order to Abridge Substantive Rights

127.    The Rules Enabling Act, 28 U.S.C. § 2072, grants authority to promulgate the Federal Rules of Civil Procedure but expressly provides that such rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). The Federal Rules themselves — including the discovery rules under which a protective order is authorized — cannot be applied to abridge substantive rights, and neither can orders issued pursuant to those rules.

128.    Apple's application of the Protective Order — to prohibit an employee from publicly discussing her own body, her NLRB charges, her workplace complaints, and the factual basis of her lawsuit — abridges substantive rights guaranteed under the NLRA, Title VII, the California Constitution, the Speak Out Act, and the Silenced No More Act. Each of these creates substantive rights that the Federal Rules cannot abridge. The Rules Enabling Act itself thus prohibits the application Apple is seeking.

## THE PROTECTIVE ORDER CANNOT AUTHORIZE WHAT NO COURT COULD ORDER DIRECTLY

129.    Courts in this Circuit have recognized that a discovery protective order cannot be used to accomplish indirectly what a court could not accomplish directly. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (protective order survives First Amendment scrutiny only within its constitutionally permissible scope); see also Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006). A court could not issue a direct prior restraint prohibiting an employee from discussing her reproductive health, sexual partners, or NLRB charges on social media — the First Amendment, the NLRA, and the Norris-LaGuardia Act all independently prohibit it. Apple cannot obtain through a discovery protective order what no court could order directly.

## APPLE'S MOTION ITSELF CONSTITUTES ACTIONABLE VIOLATIONS AND CAUSES COMPENSABLE HARM — INCLUDING VIOLATIONS APPLE SPENT FIVE MOTIONS TO DISMISS TRYING TO HAVE ADJUDICATED OUT OF THIS CASE

130.    The filing of this motion is not a neutral procedural event. It is an act — a specific, datable, documented act by a named party, through retained counsel, in a federal judicial proceeding — that constitutes violations of the same statutes whose violations are the subject of Plaintiff's operative complaint. Many of the causes of action Plaintiff brought based on Apple's pre-suit suppression conduct were dismissed not because the conduct was lawful, but on narrow procedural grounds: statutes of limitations, specificity of pleading, and the limits of employer liability for agent conduct. Apple now commits the same violations explicitly, on the record, in this Court, under its own name, without any of those procedural shields. The statutory purposes of those causes of action are fulfilled, not frustrated, by recognizing that Apple's continued course of conduct — including through this motion — causes the compensable injuries those statutes were enacted to remedy.

## THE FILING INDEPENDENTLY VIOLATES MULTIPLE STATUTES WHOSE VIOLATIONS ARE ALREADY ALLEGED

131.    Each of the following violations is not merely anticipated or analogized from past conduct — it is committed by the act of filing Dkt. 294 and by Apple's associated written threats and designations:

132.    **NLRA §§ 7 and 8(a)(1), (4):** Apple's motion explicitly seeks to punish and deter Plaintiff's public speech about her workplace conditions, her NLRB charges, and Apple's labor practices. Filing a federal court motion threatening contempt against an employee for publicly discussing her NLRB charges and workplace complaints is a textbook Section 8(a)(1) unfair labor practice — it coerces an employee in

the exercise of Section 7 rights. Section 8(a)(4) additionally prohibits discharging or taking any adverse action against an employee for filing charges with the NLRB. Using federal court process to suppress the same speech Plaintiff engaged in while filing those charges — and to create a judicial record that the speech was wrongful — constitutes adverse action under § 8(a)(4). The NLRB has already issued a charge on this exact conduct. (NLRB Charge No. 32-CA-381277, Dkt. 278).

133.    **Cal. Lab. Code § 1102.5 (surviving in 5AC):**  Section 1102.5 prohibits an employer from retaliating against an employee for disclosing information the employee reasonably believes discloses a violation of law to a governmental agency or the public. Apple's motion explicitly targets Plaintiff's disclosures to the NLRB, the press, and the public about Apple's invasive employee studies, its unlawful NDA terms, and its environmental violations. Filing a motion in federal court demanding that Plaintiff delete those disclosures and restraining future ones is retaliation — the motion is the retaliatory act, committed after the lawsuit was filed, creating a fresh, timely § 1102.5 violation.

134.    **Cal. Lab. Code §§ 232.5 and 96(k) via § 98.6 (surviving in 5AC):**  Section 232.5 prohibits coercing or threatening employees for disclosing information about their working conditions. Section 96(k) protects employees from employer discipline for lawful conduct during nonworking hours. Apple's motion, which seeks a prior restraint on Plaintiff's future speech and a court finding that her past speech violated a court order, directly coerces Plaintiff in the exercise of both statutory rights. The threatened consequences — contempt of court, sanctions, deletion orders — are a form of discipline for off-duty lawful conduct that § 96(k) was enacted to prevent.

135.    **April 2025 NLRB Settlement Agreement (Dkt. 194 at 17-20):**  The settlement expressly requires Apple to stop enforcing the IPA to cover terms and conditions of employment, with a self-executing default provision. Apple's Motion to Retain Designations (Dkt. 304-305) cites the IPA as its sole remaining legal authority. Filing an enforcement motion whose stated legal basis is a contract Apple agreed to stop enforcing is a breach of the settlement agreement — committed in a federal court filing, on the record, under counsel's signature. The self-executing default provision of the settlement is triggered by this conduct.

136.    **Cal. Civ. Code § 52.1 (Bane Act) (dismissed Dkt. 73 — but see below):**  The Bane Act prohibits interference by threats, intimidation, or coercion with the exercise of constitutional or statutory rights. Apple's motion threatens Plaintiff with contempt of court — a criminal-adjacent sanction — for publicly discussing her reproductive health, her NLRB charges, and her workplace complaints. That is interference by threat with Plaintiff's First Amendment, NLRA, and California constitutional rights. The

Bane Act requires a specific intent to deprive the plaintiff of those rights. Apple's own filing at Dkt. 280, footnote 2, supplies that specific intent in writing: Apple states that the purpose of the enforcement is to protect the same secrecy regime that Apple claims justified terminating Plaintiff's employment in the first place.

## Apple Used Five Rounds of 12(b)(6) Motions to Narrow the Claims — Then Committed the Violations Explicitly on the Record

137.    Plaintiff's original and amended complaints alleged that Apple engaged in a systematic pattern of suppressing employee disclosures through unlawful NDAs, retaliatory litigation, threats of legal consequences, and misuse of court process. Apple filed five successive motions to dismiss, arguing that Plaintiff's allegations were too speculative, insufficiently specific, time-barred, or lacked the requisite employer attribution for certain claims. Some claims were dismissed:

138.    The RICO claims (18 U.S.C. § 1962(c) and (d), 3AC Dkt. 47 ¶¶ 120-157) were dropped voluntarily at Judge Chen's suggestion that doing so would expedite the proceedings — not because the allegations were found meritless. Those claims alleged that Apple, its employees, and its outside counsel (including Orrick) formed an association-in-fact enterprise engaged in obstruction of government investigations, witness intimidation, and wire fraud, with the specific goal of suppressing employee disclosures and maintaining a false public reputation for legal compliance. (3AC ¶ 123: Apple's scheme "bridge[d] the gap between its actual practices and what it reports to its customers, the public and press, and the government through a scheme of witness intimidation and tampering, systemic retaliation against employees and contractors who report issues, unlawful NDAs and over-restrictive policies, threats of specific and unspecific reprisals for gathering evidence or reporting issues."). Apple's counsel at Orrick — the same firm that signed Dkt. 294 — is named as a participant in that alleged enterprise. The filing of Dkt. 294 is, on its face, the type of conduct the RICO allegations described.

139.    The Bane Act claim (Cal. Civ. Code § 52.1, 3AC Dkt. 47 ¶¶ 187-196) was dismissed without prejudice (Dkt. 73). The dismissal raised concerns about specificity and employer liability for the conduct of agents. Here, there are no such issues: Apple's retained counsel (Orrick) filed Dkt. 294 explicitly under Apple Inc.'s name, as Apple's authorized legal representative, making Apple directly and unambiguously responsible for the threat. The specific intent element is satisfied in writing by Dkt. 280, footnote 2. The Bane Act claim as dismissed targeted conduct primarily occurring before this lawsuit was filed; the conduct here occurs during and because of this litigation, is clearly documented, and has full employer attribution.

140.    The California UCL claim (Cal. Bus. & Prof. Code § 17200, 4AC Dkt. 76 ¶¶ 192-207) was

dismissed on statute of limitations grounds (Dkt. 76 order). The SOL concern addressed Apple's pre-2020 and pre-2021 conduct. Apple's filing of Dkt. 294 in February 2026 is well within any limitations period. The UCL claim alleged that Apple unlawfully coerced employees to provide biometric data for product development without consent, fired those who protested, and suppressed public disclosure of these practices — conduct that Apple's motion attempts to continue and judicially ratify by obtaining a court finding that Plaintiff violated an order by discussing it.

141.    The pattern is not coincidental. Apple litigated aggressively — across five rounds of motions, over eighteen months — to have allegations about this exact conduct removed from the operative complaint. Apple succeeded in removing some of them on procedural grounds. Apple then, apparently emboldened by those dismissals, proceeded to commit the same violations explicitly, in open federal court, on the record, under its own name, represented by the same law firm identified in the prior RICO allegations. Every procedural shield that produced those dismissals — the statute of limitations, the specificity requirement, the employer-agent attribution question — is inapplicable to the conduct Apple commits through this motion. This is a fresh, timely, fully attributed, explicitly documented violation.

## The Compensable Harm From This Motion Is Real, Present, and Redressable

142.    The harm from Apple's filing is not theoretical or speculative. Plaintiff is a Chapter 7 debtor (Case No. 25-11496, D. Mass.) responding pro se to a motion filed by a large law firm, in violation of a court order, without legal authority, and citing a contract Apple agreed to stop enforcing. The specific, present harms include:

143.    (1) Chilling of Plaintiff's ongoing NLRA-protected speech — Plaintiff cannot discuss her NLRB charges, her workplace complaints, or the subject matter of this lawsuit without risk of Apple claiming another contempt violation. This is a prior restraint in practical effect, regardless of whether the Court formally grants Apple's motion.

144.    (2) Chilling of Plaintiff's ongoing NLRB proceedings — The three pending NLRB charges involve testimony and evidence about the same subject matter Apple has designated as confidential. Apple's motion, if granted, would obstruct those federal administrative proceedings. The NLRB has already charged Apple with this conduct; the charge is pending.

145.    (3) Forced expenditure of time and resources — Plaintiff, a pro se debtor in bankruptcy, has been compelled to prepare multiple opposition filings (Dkts. 284, 285, 297, 302, and this brief) to respond to a motion Apple filed in defiance of this Court's direct order. The resources consumed in responding to

a legally baseless, court-order-violating motion constitute cognizable harm under fee-shifting statutes and Rule 26(g) sanctions standards.

146.    (4) Harm to the bankruptcy estate — Apple is asserting claims against Plaintiff as a debtor without obtaining stay relief. 11 U.S.C. § 362(a)(1) and (6) stay all acts to collect, assess, or recover claims against the debtor. Any harm Apple causes to the estate through this motion — including by chilling Plaintiff's ability to prosecute the claims that constitute estate assets — is a violation of the automatic stay and causes direct harm to the bankruptcy estate and Plaintiff's creditors.

147.    (5) Reputational and professional harm — Apple's motion publicly characterizes Plaintiff as having violated a court order. That characterization, if it stands unchallenged, causes ongoing harm to Plaintiff in her professional and public capacity — the same category of harm that Apple's retaliatory termination caused, and that Plaintiff's surviving Tamney and § 1102.5 claims seek to remedy.

148.    The causes of action in this lawsuit exist because the conduct Apple engages in through this motion causes this type of harm. The statutes Plaintiff invokes — § 1102.5, § 96(k), § 232.5, the NLRA, the Speak Out Act — were enacted specifically to prohibit employers from using the threat of legal consequences to silence employees. Apple's filing of Dkt. 294 is not a response to litigation; it is the litigation equivalent of the conduct Plaintiff's lawsuit is about. The Court should deny the motion, recognize that the filing itself requires response in the sanctions and relief framework already before it (Dkt. 302), and order Apple to obtain bankruptcy stay relief before filing any further actions against Plaintiff in these proceedings.

## CONCLUSION AND RELIEF REQUESTED

149.    Apple's Motion to Enforce the Protective Order is, at its core, an attempt to do through a discovery motion what Apple cannot do through any legitimate legal procedure: suppress an employee's public speech about her own body, her own workplace complaints, and her active NLRB charges against Apple; pre-adjudicate the central merits question in a retaliation lawsuit; and enforce a defunct employment agreement that Apple promised the NLRB it would stop enforcing. Plaintiff predicted — on the record, before the Order was ever entered — that Apple would attempt exactly this. The record confirms it.

150.    No valid designation exists to enforce. The Protective Order's own text excludes all designated content. The motion was filed in defiance of court orders. Multiple independent federal and state jurisdictional bars preclude any relief. The designated content has been public for years — disclosed by Plaintiff through government filings, journalism, and five complaints on this docket, and disclosed by

Apple itself through clinical trial registrations, academic publications, and commercial marketing. Apple's motion seeks the precise inverse of the relief Plaintiff's own complaints demand. Apple's designations were made for an admitted improper purpose. The requested relief would improperly pre-adjudicate the live merits question in this case. Apple has not satisfied any element of the legal standard for any of the relief it seeks. Apple's equitable hands are unclean. Apple's IPA theory relies on unpled, waived counterclaims. The Protective Order is unenforceable as analyzed in Section XII. And the act of filing this motion is itself a fresh violation of NLRA §§ 8(a)(1) and 8(a)(4), Cal. Lab. Code §§ 1102.5 and 96(k), and the April 2025 NLRB settlement — committed openly, under counsel's signature, after Apple spent five rounds of motions to dismiss trying to have allegations about this same conduct removed on procedural grounds. This Court should deny the motion in its entirety, recognize that the filing requires sanctions response, and order Apple to obtain bankruptcy stay relief before any further action in this proceeding.

Plaintiff respectfully requests that the Court:

**1.** DENY Apple's Motion to Enforce Protective Order (Dkt. 294) in its entirety.

**2.** DENY Apple's Motion to Seal (Dkt. 293) and Motion to Shorten Time (Dkt. 295).

**3.** DECLARE that no valid confidentiality designation exists over any portion of Plaintiff's deposition transcript: Apple's blanket designation lapsed automatically under Protective Order § 6.3, and Apple's February 4, 2026 narrowed designation is a legal nullity under Fed. R. Civ. P. 26(g)(2).

**4.** DECLARE that the Protective Order does not apply to the designated content, which is excluded from the Order's scope under § 3, and which the Order cannot constitutionally reach under Seattle Times Co. v. Rhinehart.

**5.** GRANT Plaintiff's Motion for Declaratory Relief and Sanctions under Rule 26(g) (Dkt. 302).

**6.** ORDER Apple to obtain relief from the bankruptcy automatic stay before taking any further action against Plaintiff in this proceeding.

**7.** ORDER Apple to complete genuine meet-and-confer on each remaining designation before filing any further enforcement motions.

**8.** GRANT such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 12 2026 in San José, California

(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816