Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(415) 964-6272
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**Ashley M. Gjovik**,

*an individual*,

      Plaintiff,

    vs.

**Apple Inc.**,

*a corporation*,

      Defendant.

Case No.

**3:23-CV-04597-EMC**

**Plaintiff's Opposition to Defendant's Motion at Dkt. 294 with Memorandum of P&A.** (Corrected)

**HEARING:**
**Location: Oakland (TBD)**
**Date: April 2 2026**
**Time: 1:30 PM**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 0

INTRODUCTION/SUMMARY .......................................................................................... 1

ISSUES TO BE DECIDED .................................................................................................. 3

BACKGROUND & STATEMENT OF FACT ...................................................................... 4

    THE PROTECTIVE ORDER: APPLE'S BAD FAITH LITIGATION WEAPON ........................... 5

    THE DEPOSITION, THE BLANKET DESIGNATION, AND NULLITY OF FEB. 4. ................... 5

    FEBRUARY 4, FEBRUARY 16, AND APPLE'S IMMEDIATE RETALIATION. ......................... 6

    APPLE'S OWN WITNESS CONCEDES HE CAN'T DETERMINE IF THE INFORMATION SHARED WAS
    ALREADY INTENTIONALLY PUBLIC. ................................................................................ 7

ARGUMENT ...................................................................................................................... 7

    WHAT APPLE SEEKS TO SUPPRESS HAS BEEN PUBLIC YEARS, WAS KNOWN TO PLAINTIFF
    FOR YEARS, AND APPLE ENTERED A CONTRACT PROMISING IT WOULD NOT SAY ITS
    SECRET ............................................................................................................................ 7

        *No Valid Designation Existed — The Threshold Bar Apple Cannot Cross* ......................... 7

        *The Protective Order's Own Text Excludes Every Item Apple Designated* .......................... 8

        *Five Years of Public Disclosure in 4+ Jurisdictions Across 3+ Countries* ......................... 9

        *Apple's 2021 Conduct Establishes the Pattern & the Judicial Admission* ....................... 11

        *The April 2025 NLRB Settlement Prohibits Apple From Doing Exactly This* ................... 12

        *Apple's Motion Has an Illegal Objective Under Bill Johnson's Footnote 5* ...................... 13

        *The Deletion Demand Is a Prior Restraint That Cannot Be Sustained* ............................ 14

        *Apple's Four Cases Are Inapplicable* ............................................................................. 15

    DEFENDANT'S MOTION HAS NO COGNIZABLE LEGAL AUTHORITY .............................. 15

    MULTIPLE INDEPENDENT JURISDICTIONAL BARS  PRECLUDE ANY RELIEF ................... 16

    DEFENDANT HAS NOT AND CANNOT SATISFY THE LEGAL STANDARDS FOR THE RELIEF
    IT SEEKS ......................................................................................................................... 19

    DEFENDANT'S MOTION IS RELIEF ON UNPLED, WAIVED COUNTERCLAIM ................... 20

    DEFENDANT CANNOT SEEK EQUITY WITH UNCLEAN HANDS ....................................... 21

    THE MODEL PROTECTIVE ORDER IS LEGALLY PROBLEMATIC ....................................... 22

    DEFENDANT'S MOTION IS AN UNAUTHORIZED SUMMARY JUDGMENT MOTION ........... 24

CONCLUSION AND RELIEF REQUESTED ...................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Anheuser-Busch*, 367 NLRB No. 132 -------------------------------------------------------------------------------------- 14

*Apple Inc. v. Rivos*, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024). --------------------------------------------- 20

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ------------------------------------------------------------- 27

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). ------------------------------------------------------- 15

*BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002) ------------------------------------------------------- 14

*Beckman Indus.*, 966 F.2d at 475–76 ------------------------------------------------------------------------------- 23

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 737 n.5 (1983) --------------------------------------- 14

*Butterworth v. Smith*, 494 U.S. 624 (1990) ---------------------------------------------------------------------- 21

California Code of Civil Procedure § 425.16 ---------------------------------------------------------------------- 19

*Can-Am Plumbing, Inc. v. NLRB*, 321 F.3d 145, 149 (D.C. Cir. 2003) ----------------------------------------- 14

*Cantwell v. Northrop Grumman Corp.*, 2004-SOX-75 (ALJ Feb. 9, 2005) ---------------------------------------- 8

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 887–88 (2009). --------------------------------------------- 23

*CBS v. Davis*, 510 U.S. 1315, 1317 (1994) ---------------------------------------------------------------------- 15

*Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–66 (1978). ------------------------------------------------------------- 3

*Frazier v. Heebe*, 482 U.S. 641, 645 (1987). --------------------------------------------------------------------- 24

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ----------------------------------------------------- 21

*Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ------------------------------------------------- 9

*Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) --------------------------------------------------- 16

*Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). ------------------------------------------------- 20

*Glacier Northwest*, 598 U.S. 771 (2023). ------------------------------------------------------------------------- 18

*In re Hruby*, 512 B.R. 262, 274 (Bankr. D. Colo. 2014) --------------------------------------------------------- 17

*In re Schwartz*, 954 F.2d 569, 571–72 (9th Cir. 1992) ----------------------------------------------------------- 17

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ----------------------------------- 8

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ----------------------------------------- 4

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244-45 (1933). ------------------------------------ 22

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Peacock v. Thomas*, 516 U.S. 349 (1996). ---------- 21

*Lipscher v. LRP Publications*, 266 F.3d 1305, 1323 (11th Cir. 2001) -------------------------------------------- 24

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525–26 (1986). ----------------------- 23

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 526 (1986) ----------------------------- 13

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ------------------------------------------------------------- 3

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), ----------------------------------------------------------- 27

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 590 (1976) ------------------------------------------------------- 15

*New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001). --------------------------------------------------------- 26

*Newport v. Calpine Corp.*, 2007-ERA-7 (ALJ Feb. 12, 2008) ------------------------------------------------- 10

*Newsham v. Lockheed*, 190 F.3d 963 (9th Cir. 1999) ------------------------------------------------------ 19

*Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249 (9th Cir. 1987)-------------------------------------- 21

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996)------------------------------- 27

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) ----------------------- 14

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996).-------------------------2

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) ---------------------------------9

*Rasawehr v. Bey* (Ohio S. Ct. 2020). -------------------------------------------------------------------------- 20

*Rasawehr v. Twitter, Inc.*, No. 3:21-cv-01644 (N.D. Cal.) (------------------------------------------------ 15

*Reno v. ACLU*, 521 U.S. 844, 870 (1997). -------------------------------------------------------------------- 20

*Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997) ------------------------------------- 15

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 380–83 (1992). ------------------------------------- 23

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).------------------------------------ 27

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) ----------------------------- 14

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). ---------------------------- 2

*Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). -------------------------------------------------------------- 17

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ---------------------------------------------------------3

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) ----------------------------------------------------9

*Seattle Times*, 467 U.S. at 33; *Kamakana*, 447 F.3d at 1179 --------------------------------------------- 25

*Smith v. Hewlett Packard Co.*, 2005-SOX-88 to 92 (ALJ Feb. 21, 2006) ------------------------------- 10

*United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009). -------------------------------------------- 24

*United States v. Will*, 449 U.S. 200, 215 (1980). ------------------------------------------------------------ 25

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ----------------------------------------------- 23

*Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992) ---------------------------------------------------------- 24

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ------------------------------------------3

*Wooley v. Maynard*, 430 U.S. 705 (1977). -------------------------------------------------------------------- 23

## STATUTES

11 U.S.C. § 362(a)----------------------------------------------------------------------------------------------------3

11 U.S.C. § 362(a)(1)------------------------------------------------------------------------------------------------ 22

11 U.S.C. § 362(a)(1), (6).------------------------------------------------------------------------------------------ 26

28 U.S.C. § 2071----------------------------------------------------------------------------------------------------- 24

28 U.S.C. § 2071(a). ------------------------------------------------------------------------------------------------ 24

28 U.S.C. § 2072(b)----------------------------------------------------------------------------------------------18, 24

28 U.S.C. § 2201 ---------------------------------------------------------------------------------------------------- 17

28 U.S.C. § 636(b)(1)(A). ----------------------------------------------------------------------------------------- 18

29 U.S.C. § 101 --------------------------------------------------------------------------------------------------- 2, 18

Cal. Civ. Code § 1580 --------------------------------------------------------------------------------- 23

Cal. Lab. Code §§ 232.5, 1102.5------------------------------------------------------------------------3

California Civil Code § 51.9---------------------------------------------------------------------------- 18

California Government Code § 12940(h) -------------------------------------------------------------- 19

California Government Code § 12964.5 ---------------------------------------------------------------- 19

California Labor Code § 1102.5 ------------------------------------------------------------------------ 27

California Labor Code § 96(k) ------------------------------------------------------------------------- 19

Speak Out Act, Pub. L. No. 117-224 (2022) --------------------------------------------------------- 18

## RULES

Fed. R. Civ. P. 13(a)(1)-------------------------------------------------------------------------------- 21

Fed. R. Civ. P. 26(g)(2) --------------------------------------------------------------------------- 2, 3, 8

Fed. R. Civ. P. 26(g)(2).------------------------------------------------------------------------------- 27

Fed. R. Civ. P. 83 ------------------------------------------------------------------------------------- 24

## TREATISES

*Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts* 174 (2012). -------------------------------- 9

Josephs, "The Availability of Discovery Sanctions for Violations of Protective Orders," 80 U. Chi. L. Rev. 1355,

    1371–72 (2013). -----------------------------------------------------------------------------------24

Restatement (Second) of Contracts § 17. ------------------------------------------------------------23

## CONSTITUTIONAL PROVISIONS

California Constitution Article I, § 1 ----------------------------------------------------------------- 19

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION (Dkt. 294)

1. Plaintiff Ashley Gjovik respectfully files this opposition to Defendant Apple Inc.'s Motion to Enforce Protective Order (Dkt. 294). Apple also filed motions to seal, a motion for expedited schedule, and a motion to retain designations. Concurrently filed are supporting declarations, a request for judicial notice, and an administration motion to consider this motion and hearing with the other motions Defendant has filed/triggered scheduled for a hearing on April 16 2026.

# INTRODUCTION/SUMMARY

2. Apple has alerted the world that there is super, secret, sensitive information on the loose; alerted the judiciary that one of the most powerful companies in the history of the modern world (itself) risks irreparable harm due to the Plaintiff's social media posts about regulatory compliance, and has now demanded that the federal courts act immediately in order to protect the vulnerable corporation's business interests. A German magazine is also currently in possession of the information Apple asks this Court to suppress. So is a French publication. So is a UK outlet, actually. So is the peer-reviewed *American Journal of Obstetrics and Gynecology*. So is ClinicalTrials.gov, a federal government database. So is the Government Accountability Office, which referenced Plaintiff's public comment in GAO-24-107639. So are six successive public complaints on this docket, and cited in Judge Chen's published orders at Dkt. 73 and Dkt. 179. (Judge Chen leaked!) So is the NLRB docket going back to 2021 so NLRB is a bunch of leakers too.

3. Yet, Apple has not moved against any of these other entities and offers no explanation as to why the Plaintiff must be subject to these injunctions but other sources of the same and similar information would not be and why that version of the information is not "harmful" to Apple the way the Plaintiff's Twitter and blogs posts are. Apple has not suggested that a Northern District of California protective order binds foreign publications or is even needed. Apple's motion is not about confidentiality. It is about silencing one person Apple desperately would like to silence — the former employee who keeps reporting Apple's regulatory compliance failures to the appropriate regulators, and who then keep taking enforcement action against Apple over the Plaintiff's complaints, testimony, and in-hand evidence.

4. Apple's Motion to Enforce the Protective Order, Dkt. 294, asks this Court to compel deletion of published speech, impose a prior restraint on future speech, seal court filings including an NLRB charge and a notification that Apple is under criminal EPA investigation, and hold Plaintiff in contempt — all on the basis of designations that are void for multiple independent reasons, over content that has been in the public domain for years, through a procedural vehicle that does not exist under the Federal Rules, in defiance of this Court's express Feb. 20, 2026 order requiring meet-and-confer before any motion practice, and after Judge

Westmore stated on the record: *"No, there is no injunction."* Tr. at 38:56.

      5.      The subject matter Apple seeks to suppress is not a trade formula, source code, customer list, or prototype design. It is an employee's testimony about her own body — specifically, Apple's requests that she measure her cervical mucus, track her ovulation, and register her sexual partners with Apple under NDA so they could sleep in her bed while Apple's sensor recorded their vitals and mined their data for commercial business development. These requests were made by Plaintiff's employer, during her employment, to her person. Her right to describe them is not governed by a discovery protective order. It is governed by the First Amendment, the NLRA, and five years of unbroken public disclosure through government filings, press interviews, and federal court complaints that Apple has never moved to seal.

      6.      Plaintiff predicted this motion before the Protective Order was ever entered. She told Apple on the record: the Order was an attempt to get her "into court jail," a "blank check" to jail her "for talking about whatever Apple unilaterally claims is confidential." Dkt. 220-9 at 4, 7. She told the Court Apple intended to use the Order "to do a summary judgment motion without summary judgment" & declare her protected disclosures misconduct through contempt proceedings rather than trial. Dkt. 302-3 at 6–7. Judge Westmore responded: *"That's not how the protective order is used."* Id at 7. Apple filed this motion anyway.

      7.      The motion fails for reasons that are numerous, independent, and jurisdictional. No valid designation exists: Apple's blanket designation was void under PO § 5.1's prohibition on mass indiscriminate designations, and Apple's February 4 narrowed list is a nullity under Fed. R. Civ. P. 26(g)(2) for absence of signature, dating, and proper service. The Protective Order's own § 3 excludes all designated content as either publicly known or previously known to Plaintiff from her own experience. The First Amendment bars the prior restraint. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996). The NLRA bars this Court's jurisdiction over activity arguably protected by §§ 7 and 8. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).

      8.      The Norris-LaGuardia Act, 29 U.S.C. § 101, absolutely bars injunctive relief arising from a labor dispute. The Speak Out Act bars enforcement of NDAs covering sexual harassment and assault allegations. The automatic stay in Plaintiff's bankruptcy, Case No. 25-11496 (D. Mass.), voids any action against Plaintiff's interests without stay relief. The April 2025 NLRB national settlement, Case No. 32-CA-284428, in which Apple formally promised it would not enforce confidentiality restrictions over terms and conditions of employment, bars Apple from seeking the identical result through a different procedural vehicle. Each of these is independent. Any one of them requires denial. Together they require sanctions.

      9.      The motion is also itself a violation. Filing a contempt motion against an employee for

publishing an NLRB charge and a blog post explaining that charge to her coworkers is a textbook § 8(a)(4) unfair labor practice. *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–66 (1978). It is retaliation for protected whistleblower activity in violation of Cal. Lab. Code §§ 232.5, 1102.5. It breaches the April 2025 settlement's self-executing default provision, which upon notice automatically reissues Apple's complaint, deems allegations admitted, and authorizes ex parte Court of Appeals enforcement without trial.

10.     Apple filed this motion with full knowledge of that provision. Apple filed it after Plaintiff's blog post warned that any retaliation for the disclosed information would generate a new charge. Apple filed it anyway and Apple now has at least 7 new charges filed against it in just the last few weeks. This is a pattern — the same pattern that caused the NLRB to issue multiple Decisions of Merit, to file suit against Apple, and to settle the resulting charges nationally. This Court should deny Apple's motion in its entirety and recognize that the filing of the motion is itself sanctionable conduct.

## ISSUES TO BE DECIDED

11.     1) Whether any valid confidentiality designation exists to enforce, where Apple's blanket designation was void ab initio under Protective Order § 5.1's prohibition on mass indiscriminate designations, and Apple's February 4, 2026 narrowed designation is a legal nullity under Fed. R. Civ. P. 26(g)(2) for absence of signature, dating, and proper service.  2) Whether this Court has jurisdiction to grant any relief, where Plaintiff's Chapter 7 bankruptcy automatic stay, 11 U.S.C. § 362(a), voids all proceedings against Plaintiff's interests absent stay relief; the NLRB holds exclusive jurisdiction over the underlying conduct under *Garmon*; and the Norris-LaGuardia Act, 29 U.S.C. § 101, absolutely bars injunctive relief arising from a labor dispute.

12.     3) Whether the Protective Order applies to the designated content at all, where the Order's own § 3 expressly excludes information that is publicly known or was previously known to the receiving party, and where *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), bars suppression of information independently possessed.  4) Whether Apple has satisfied the legal standard for permanent injunctive relief under *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), and the heightened prior restraint standard under *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), where it has made no First Amendment analysis, no showing of irreparable harm not caused by its own prior public disclosures, and no showing that the balance of equities or public interest favors suppression of employee speech about working conditions.  5) Whether Apple may seek enforcement of its Confidentiality and Intellectual Property Agreement through this motion, where Apple pleaded no counterclaim in its Answer, Dkt. 183, or Amended Answer, Dkt. 218, waiving any such claim under Fed. R. Civ. P. 13(a), and where Apple agreed in the April 2025 NLRB national settlement, Dkt. 194, that it would not enforce that agreement over terms and conditions of employment protected by NLRA § 7, which is what its trying to do right now.

13.     6) Whether this Court has authority to seal filings already adjudicated by Judge Chen and the Ninth Circuit, and whether Apple has satisfied the "compelling reasons" standard for any files under *Kamakana v. City &*

*County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and N.D. Cal. Civil L.R. 79-5. 7) Whether Apple's motion itself may constitute a fresh unfair labor practice under NLRA §§ 8(a)(1) and 8(a)(4), a violation of Cal. Lab. Code and the Bane Act, and/or breach of the April 2025 NLRB settlement's self-executing default provision, or other legal protections/restrictions, such that Apple's motion requires a sanctions response rather than substantive adjudication.

# **BACKGROUND & STATEMENT OF FACT**

14.     Plaintiff Ashley Gjovik worked for Apple from February 2015 through September 2021 as a Sr. Engineering Program Manager in the Product Integrity division of Hardware Engineering, reporting to a Sr. Director who also oversaw employee "user studies" including medical and anatomical studies. Her total compensation was approximately $386,000 per year. She received positive reviews annually, with promotions, bonuses, and stock grants, and was repeatedly characterized as key talent and a critical asset — until she reported Apple's misconduct to the public, to the press, to state and federal agencies, and began labor organizing with coworkers. 5AC, Dkt. 142 ¶¶ 67, 69.

15.     This lawsuit asserts claims under California Labor Code §§ 1102.5, 6310, 232.5, 98.6, and 96(k), and a *Tameny* con-tort claim alleging her termination violated public policy including the California constitutional right to protest invasions of privacy, illegal data harvesting in violation of California Constitution Article I § 1 and the FTC Act, sex and disability discrimination, and retaliation against crime victims and legislative witnesses. Dkt. 142. The operative complaints also allege that Apple captured, uploaded, and stored photographs of Plaintiff in states of undress through its internal "Gobbler" facial recognition application, and that Apple engaged in extortionate conduct related to those images during a Department of Justice investigation in which Plaintiff was a material witness. Dkt. 155–156. Original claims under 18 U.S.C. § 1962 (RICO) and the Bane Civil Rights Act, Cal. Civ. Code § 52.1, were dismissed without prejudice; Apple then filed five successive Rule 12(b)(6) motions anyway. Dkt. 73.

16.     The federal regulatory record established long before this litigation began is extensive. The NLRB found merit in dozens of Plaintiff's allegations, issued complaints against Apple for unlawful policy enforcement and retaliation, and reached a national settlement with Apple in April 2025, Case No. 32-CA-284428, Dkt. 194. Three additional charges remain pending, including Case No. 32-CA-381277, filed February 16, 2026. The EPA conducted mandatory onsite safety inspections at Plaintiff's office based on disclosures she made during employment; the EPA's RCRA enforcement team, acting on Plaintiff's 2023 complaints about Apple's Santa Clara chip fabrication facility, brought the first formal environmental enforcement action ever taken against Apple, resulting in a consent agreement, fines, and multiple inspections — with the settlement crediting Plaintiff for the action. (Dkt. 203, 278).

## The Protective Order: Apple's Bad Faith Litigation Weapon

17.    Apple obtained the Protective Order, Dkt. 235, on July 7, 2025, over Plaintiff's written objections, a Motion to Quash, Dkt. 211, and a parallel motion to the Ninth Circuit warning of imminent irreparable harm. Dkt. 214. Apple's stated justification for the Order was document production. Every time Plaintiff asked why a protective order was necessary, Apple's counsel gave the same answer: *"we are withholding documents pursuant to the lack of a protective order"*; *"I'm just asking you to sign a protective order, and then we will give you documents"*; *"you get the protective order, we send you the documents"*; *"the purpose is for you to see the documents."* Dkt. 220-9 at 4–18.

18.    Apple's actual purposes were different, and Apple disclosed them. Apple told the Court that one of its *"defenses in this case is that Plaintiff was terminated because she leaked confidential Apple information on social media and to the press"* and it *"therefore will need to produce documents pertaining to the confidential information that Plaintiff leaked."* Dkt. 219-1 at 8. Apple admitted it refused Plaintiff's counteroffer to use redactions because it would *"inhibit [Apple's] ability to demonstrate that Plaintiff improperly disclosed Apple's confidential information."* Dkt. 219-1 at 9. Apple stated it intended, during the deposition, to designate Plaintiff's testimony as confidential so she could not *"challenge what they did"* — i.e., convert the substantive dispute about retaliatory termination into a procedural discovery violation. Dkt. 302-3 at 6–7. Apple's counsel stated: *"It's standard. I do it in all my cases."* Dkt. 302-3 at 8.

19.    Plaintiff told Apple directly what she understood this to mean. She said the Order would allow Apple to *"harass [her] and accuse [her] of stuff"* and was Apple's attempt to get her *"into court jail."* Dkt. 220-9 at 7. She said Apple wanted a *"blank [check]"* where she *"can be jailed for talking about whatever [Apple unilaterally claims is confidential]."* Id. at 4. She said: *"that's prior restraint"* and *"violates public policy and the law."* Id. Apple's counsel responded: *"I don't know if jailed is the right word, but [Plaintiff] would be subject to the protective order"* and *"could be held in contempt if [she were to] violate it."* Dkt. 220-9 at 4.

20.    Plaintiff asked Apple directly whether it believed her IPA covered the disputed content. Apple said yes — but that it wanted a protective order *"in this case"* because Plaintiff *"already violated the IPA."* Dkt. 220-9 at 8. When Plaintiff observed that Apple had filed no counterclaim and taken no legal action against her for the alleged IPA violations, Apple did not respond. Id. at 15. When Plaintiff asked Apple for even one example of something she had shared recently that it believed was confidential, Apple responded: *"I have no idea who you shared documents with, sorry."* Id. at 38. Apple has never designated a single produced document as confidential under the Order it insisted upon. It confirmed this in writing on February 6, 2026. Judge Westmore, at the July 2, 2025 conference, told Apple: *"That's not how the protective order is used."* Dkt. 302-3 at 7. She stated the *"whole purpose of a protective order is to make sure you don't make confidential information public"* and expressed uncertainty about Apple's described use of deposition designations. Id. at 7–8. The Court entered the Order as the NDCA Model Order, repeatedly framing its scope as information *"produced to"* Plaintiff by Apple. Dkt. 302-3 at 13–14.

## The Deposition, the Blanket Designation, and Nullity of Feb. 4.

21.    Plaintiff was deposed on Dec. 16, 2025. When Plaintiff invoked the April 2025 NLRB settlement and identified Apple's confidentiality policies as unlawful, Apple's counsel immediately designated the remainder of the

deposition — pages 66 through 305, approximately 72% of the transcript — as "Confidential" in real time, before knowing what Plaintiff would testify to next. The Protective Order, § 5.1, expressly prohibits "mass, indiscriminate, or routinized designations." A blanket designation of 72% of a deposition, made mid-session before the witness speaks, is precisely what § 5.1 forbids.

22.     The blanket designation remained in effect for fifty days. On February 4, 2026, Apple emailed a narrowed designation list — unsigned, undated, addressed to the court reporter rather than to Plaintiff — and stated it was for Plaintiff's "awareness." Apple refused to sign it, refused to date it, and refused to email it directly to Plaintiff. Federal Rule of Civil Procedure 26(g)(2) requires that every discovery instrument be signed by the attorney of record. The February 4 list is void. When Plaintiff notified Apple of these defects and demanded cure, Apple refused. Dkt. 302.

23.     Apple's narrowed list conceded that approximately 99% of the previously designated material was not confidential. What remained consisted of Plaintiff's descriptions of Apple's ovulation study, its request that female employees measure their cervical mucus, its bed sensor study requiring sexual partners to register with Apple and sign NDAs, and Plaintiff's complaints about these practices to her supervisors, the public, and coworkers. Apple's final designation list (as presented to the Plaintiff) still included "ovulation study or they were asking females to measure our cervical mucus," "ovulation," "measuring female employees' cervical mucus," "my cervical mucus," and "mucus -- the cervical mucus secretion."

### February 4, February 16, and Apple's Immediate Retaliation.

24.     On Feb. 4, 2026, Apple emailed the void narrowed list. Plaintiff emailed Apple complaining they were violating the NLRA again and told them she'd file a new charge if they did not withdraw the designations. She also complained they didn't sign, date, or serve the document. Apple responded that they refused to respond to her. Plaintiff posted on social media complaining Apple was censoring her speech about menstruation. The post contained no deposition transcript or document produced in discovery. It described, in general terms, the subject matter Apple attempted to gag for the purpose of information her coworkers and the public that Apple was trying to gag her about work conditions again.

25.     On Feb. 16, 2026, Plaintiff filed NLRB Charge No. 32-CA-381277 against Apple, attaching a cover letter quoting deposition excerpts that were evidence of unlawful conduct and clear violations of the NLRA. The same day, she published the blog post explaining the charge — a legal analysis of a federal labor filing, identifying the settlement violation, explaining the § 8(a)(4) protected status of the filing as a mechanism to deal with Apple's oppression of discovery procedures, and naming the content Apple had designated as it immediately exposes the absurdity and abuse. The next day, February 17, she filed a Notice of Pendency, Dkt. 278, attaching the NLRB charge materials as a court record. Within twenty-four hours, Apple accused Plaintiff of leaking, violating the Protective Order, violating her IPA, and demanded she agree to a gag order and delete all published speech about her labor complaints and NLRB charges. Plaintiff told Apple to stop and warned them if they do not stop, she will file another NLRB charge. Apple filed a letter around an hour later asking for sanctions and then filed this motion on Feb. 26, 2026 — in defiance

of Judge Westmore's Feb. 20 order requiring meet-and-confer, and after Judge Westmore stated on the record: *"No, there is no injunction."* Tr. at 38:56.

### Apple's Own Witness Concedes he Can't Determine if the Information Shared was Already Intentionally Public.

26.     Apple's Motion to Retain Designations, Dkt. 304–305, filed March 11, 2026, conceded that the vast majority of its prior designations were improper. Apple continues to assert confidentiality mostly over the specific content that is the subject of the February 16 NLRB charge and this motion for sanctions. In support, Apple submitted a declaration from a Senior Director who has overseen some user studies at some point. That declaration admits that the information Plaintiff allegedly disclosed "may be publicly available" but asserts a belief that Plaintiff was "referring to internal studies and not external studies" based on her testimony about "methods and processes" and "equipment." The Senior Director's belief is not evidence of confidentiality. And it is factually wrong: Plaintiff never participated in the ovulation and menstruation studies. She declined them. She possesses no internal methodology, no equipment specifications, no process documentation. She possesses only her experience of being asked — and her right to describe that experience in her own words, in her own complaints, to any agency, court, or member of the public she chooses. Unless by "equipment" Apple meant emails soliciting participation?  Apple's only legal authority is Plaintiff's mostly defunct NDAs — the same policies Apple agreed in the April 2025 NLRB settlement it could no longer enforce over terms and conditions of employment. Dkt. 194. The mechanism has changed but the objective has not.

## ARGUMENT

### WHAT APPLE SEEKS TO SUPPRESS HAS BEEN PUBLIC YEARS, WAS KNOWN TO PLAINTIFF FOR YEARS, AND APPLE ENTERED A CONTRACT PROMISING IT WOULD NOT SAY ITS SECRET
#### No Valid Designation Existed — The Threshold Bar Apple Cannot Cross

27.     Before reaching the public domain analysis, the Court must confront the threshold problem Apple's motion evades entirely: there was no valid confidentiality designation in effect on February 16, 2026, the date of the disclosures Apple challenges. Apple's counsel designated pages 66 through 305 of Plaintiff's December 16, 2025 deposition — 72% of the transcript — as "Confidential" mid-session, prospectively, before knowing what Plaintiff would testify to, immediately after Plaintiff invoked the NLRB settlement and identified Apple's confidentiality policies as unlawful.

28.     The Protective Order, Dkt. 235 § 5.1, expressly prohibits "mass, indiscriminate, or routinized designations" and requires that designations be "limited to specific material that qualifies under appropriate standards." A prospective blanket designation of 72% of a deposition, made in real time before the witness speaks, is the paradigmatic "mass, indiscriminate" designation the Order forbids. It is void on its face under the Order's own terms. *See Cantwell v. Northrop Grumman Corp.*, 2004-SOX-75 (ALJ Feb. 9, 2005) (rejecting blanket designation of all documents submitted with dispositive motion absent affidavits identifying specific

confidential information and specific harm from disclosure; "[i]t is not an appropriate function for the court to shift through these records in the absence of a properly supported motion").

29.    Fifty days later, on February 4, 2026 — Apple emailed a narrowed designation list to the court reporter, not to Plaintiff. The list was unsigned and undated. Apple refused to email it directly to Plaintiff, refused to sign it, and refused to date it. Federal Rule of Civil Procedure 26(g)(2) requires that every discovery disclosure or response "be signed" by the attorney of record. An unsigned discovery instrument is a nullity. *See* Fed. R. Civ. P. 26(g)(2) ("If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction"). The February 4 narrowed designation, being unsigned, undated, and unserved on the party it purports to bind, is void under Rule 26(g)(2). When Plaintiff notified Apple of these defects and demanded a cure, Apple refused. *See* Plaintiff's Motion for Sanctions, Dkt. 302. The consequence is not procedural technicality. A party cannot be held in contempt for violating an obligation that does not exist. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (contempt requires clear and definite order that party violated). Where the designation itself is void, there is no order to enforce and no contempt to be found. Apple's entire motion collapses at this threshold.

### THE PROTECTIVE ORDER'S OWN TEXT EXCLUDES EVERY ITEM APPLE DESIGNATED

30.    Even assuming arguendo a valid designation existed — and it did not — the Protective Order's Section 3 independently forecloses Apple's theory. Section 3 expressly excludes from confidential treatment: (a) information that is or becomes publicly known through no fault of the receiving party; and (b) information that was rightfully known to the receiving party prior to receipt. Both exclusions apply here. The canon against surplusage requires that these carve-outs have substantive force. *See Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts* 174 (2012). Apple cannot designate information satisfying its own Order's exclusions and then seek contempt for disclosure. The Court has no authority to enforce a designation that the Order itself declares inapplicable. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (protective order permissible only to restrict use of information "obtained through" the discovery process — not to suppress what the receiving party already knew or what was already public).

31.    ***Public domain prong***: As detailed below, every item Apple designated was public before the deposition occurred and before this litigation commenced.. The ovulation study methodology was published by Apple's own researchers. The employee surveillance practices were reported by the press in 2021 and appeared in NLRB filings the same year. The specific terminology Apple redacted from its own motion — "ovulation," "cervical mucus," "menstruation," "sexual partners" — appears in Plaintiff's complaints on this docket, in Judge Chen's published orders, in a peer-reviewed journal, and in news archives in at least three

countries. ***Prior knowledge prong***: Plaintiff did not learn about Apple's ovulation study, its bed sensor study, its ear scan demands, or its coercive enrollment practices from Apple's lawyers at a deposition. She learned about them because they happened or could happen to her body, at her workplace, during her employment. *See* 5AC, Dkt. 142 ¶¶ 157–161 (describing these practices from Plaintiff's direct personal experience). Testimony about one's own bodily experiences, one's own workplace complaints, and one's own employment history is knowledge the witness possessed before the deposition began. The prior knowledge exclusion of PO § 3 is not a narrow carve-out for formally documented prior knowledge; it encompasses information the party rightfully possessed independent of the discovery process. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) ("[A] party cannot be restrained from using what it already knows"). Apple has no cognizable confidentiality interest in Plaintiff's testimony about her body.

### Five Years of Public Disclosure in 4+ Jurisdictions Across 3+ Countries

32.     The specific content Apple seeks to suppress has been part of the public record continuously since August 2021 — more than four years before the deposition, more than four years before this motion. Under *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), "we simply cannot put the cat back in the bag" once confidential information has entered the public domain.  Under *Newport v. Calpine Corp.*, 2007-ERA-7 (ALJ Feb. 12, 2008), "material a party receives in discovery . . . may be treated as confidential until [it becomes] proof offered into the adjudicatory record. Thereafter common law traditions of access to adjudicatory proceedings and the First Amendment complicate matters." Under *Smith v. Hewlett Packard Co.*, 2005-SOX-88 to 92 (ALJ Feb. 21, 2006), once a decision is "published and circulated," the court refused to seal it: "the cat was already out of the bag." These principles do not merely complicate Apple's position — they extinguish it.

33.     **NLRB proceedings (August 2021 — present).** Plaintiff filed NLRB charges in August 2021 describing Apple's invasive employee studies, coercive enrollment practices, threats of termination for disclosure, and the specific working conditions at issue. The Regional Director issued a Decision of Merit. The charges became public agency records. Apple settled some of the charges nationally in April 2025, Case No. 32-CA-284428 (Dkt. 194). The settlement is itself a public document Apple was required to post on its own intranet.  **Federal court filings on this docket (September 2023 — present).** The conduct Apple now claims is confidential has been pled in six successive public complaints, including:

- *3AC, Dkt. 47* (Feb. 27, 2024): ¶¶ 27 (AC Wellness blood pressure study), 80–81 (ovulation study, cervical mucus, ear scans, Gobbler surveillance), 255–258 (biometric data, medical experiments, protected complaints)
- *4AC, Dkt. 76*: ¶¶ 112 (ear scans, secrecy oaths, Deed Poll, Gobbler), 193 (coercive data collection for

product development), 195–197 (sleep study, sexual partner NDA requirement, ovulation study), 201–207 (biometric exploitation, disgorgement, injunctive relief)

- *5AC, Dkt. 142* (Nov. 26, 2024): ¶¶ 157–161 (ear scans, Gobbler, "Apple Cares About Privacy" article), 214, 219 (FTC Act, § 1102.5), 243–255 (§§ 232.5, 96(k), constitutional privacy rights)

34.    These paragraphs name the studies, describe the conditions, and use the specific terminology Apple designated. Judge Chen's published orders describe the same conduct in the Court's own words. *See* Dkt. 73 at 7–8; Dkt. 179 at 2. Those orders are accessible to any member of the public who searches this docket. Apple has not moved to seal any of those orders. It cannot now seek contempt against Plaintiff for describing what is already in the Court's own published rulings.

35.    **Federal regulatory records.** Plaintiff's public comment to the White House Office of Science and Technology Policy, OSTP_FRDOC_0001-0008, described Apple's coercive data collection practices. That comment was cited in a published Government Accountability Office report, GAO-24-107639. The Ninth Circuit, Case No. 25-2028, has reviewed filings on this record. OHRP Complaint No. 00709517, filed March 11, 2026, describes the coercive employee recruitment into a federally registered study, citing 45 C.F.R. §§ 46.116(b)(2), 46.111(a)(3), and 46.111(b) — the federal human subjects research regulations Apple is alleged to have violated by claiming recruitment is secret and apparently trying to conceal it may be unlawfully loading the study population with employees. (See Declaration and Exhibits).

36.    **Apple's own peer-reviewed publications.** Apple's researchers published the methodology of the ovulation study in *Mahalingaiah et al., American Journal of Obstetrics and Gynecology*, vol. 226(4) (2022) — a peer-reviewed journal, indexed in medical databases, available to any researcher with internet access. Apple registered the underlying study with the federal government: ClinicalTrials.gov, NCT04196595. That registration, also public, describes the study design and participant enrollment. Apple published the science. What Apple did not publish — and what it has every motive to suppress — is the coercive employee recruitment component: the use of Apple employees, subject to performance review and termination threats, as an undisclosed participant pool in a federally registered human subjects study. That is what Plaintiff described in her deposition. That is what Apple designated as confidential. The PO does not authorize Apple to publish the methodology while suppressing the coercion.

37.    **The press record — including multiple countries.** In the U.S., the Verge, Gizmodo, and TechCrunch all reported on Plaintiff's "study" complaints in depth. The international press also covered the matter including Der Spiegel, Germany's largest news magazine; Telerama, a major French publication; and a UK media outlet. *See* Decl. of Gjovik, Exs. A-H (authenticated copies).

38.    The March 14 2023 Telerama article expressly addressed the menstruation and ovulation

complaints: ("Apple has multiplied experiments of this kind, recording and storing all kinds of intimate and biometric information on its employee testers: ear canal scans to optimize AirPods ergonomics, the designers boast "one of the largest ear libraries on the planet", sleep measurements, blood pressure and even menstrual cycle monitoring. On condition of anonymity, a former employee agreed to send us photos of a kit offered by Apple in 2019 in exchange fore $10 voucher, to measure the quality of cervical mucus in her uterus. Worried about the consequences of refusal, she agreed to take part in the exercise, which still haunts her.") *See* Decl. of Gjovik, Exs. C.

39.     These publications predate or overlap with this litigation and Apple has not moved against any of them. Apple's Riechert Declaration does not mention them. Apple has not explained how this Court's contempt power extends to editorial archives in Berlin, Paris, or London. If the information in Plaintiff's February 2026 NLRB charge cover letter is Apple's confidential property, it is equally Apple's confidential property in Der Spiegel's archives — and no party has suggested that a Northern District of California protective order binds a German magazine. The international press coverage does not merely corroborate the public domain argument. It demonstrates that Apple's theory of confidentiality has no limiting principle and cannot be operationalized without consequences this Court has no power to impose.

## Apple's 2021 Conduct Establishes the Pattern & the Judicial Admission

40.     This is not Apple's first attempt to suppress this information by characterizing Plaintiff's own experience as its trade secret. The pattern is documented and judicially admitted. In late August 2021, Plaintiff gave an interview to a journalist. The resulting article, titled "Apple Cares About Privacy Unless You Work at Apple," quoted Plaintiff describing the Gobbler application, Apple's surveillance practices, and its culture of retaliation. The journalist contacted Apple for comment before publication. Apple did not respond. The article was published August 30–31, 2021. Apple took no immediate legal action. Apple waited approximately two weeks, then sent a workplace violence investigator. Apple refused to tell Plaintiff what she had done wrong. Apple terminated her employment on September 9, 2021 — the day before she was scheduled to testify to a government agency. When Apple finally stated its rationale, it cited the public article as the justification: "public disclosure of confidential Apple product-related information." Apple called it a leak. Apple called the description of its own surveillance tools confidential. Apple asserted that an employee's participation in a press interview about her own employment experience violated her obligations to the company.

41.     Apple has since repeated this characterization on the record of this case. In Dkt. 280 fn. 2, Apple states that "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." This is a judicial admission. *See Keller v. United States*, 58 F.3d

1194, 1198 n.8 (7th Cir. 1995). Apple has admitted, in a filing in this Court, that it terminated Plaintiff's employment specifically because she disclosed what Apple calls confidential product information. That admission links Apple's current motion directly to the termination that is the subject of Plaintiff's Tamney claim, her § 1102.5 claim, her § 96(k) claim, and her § 232.5 claim.

42.    Apple cannot simultaneously defend the termination as lawful (because the information was confidential and the leaking was wrong) and seek contempt sanctions for the same type of disclosure without the two proceedings resolving the same factual question on the same record through different procedural vehicles. Apple's own judicial admission confirms what the public record demonstrates: Apple has known for years that this information is public, acknowledged that Plaintiff disclosed it publicly, and is asking this Court to retroactively suppress what Apple released itself. *Gambale*, 377 F.3d at 144.

### THE APRIL 2025 NLRB SETTLEMENT PROHIBITS APPLE FROM DOING EXACTLY THIS

43.    On April 3, 2025, Apple entered a national settlement agreement, Case No. 32-CA-284428, Dkt. 194, approved by the NLRB Regional Director, that resolved charges arising directly from Apple's practice of characterizing working conditions as proprietary information. The settlement contains commitments that Apple's current motion directly violates.

44.    Apple agreed that it "will not enforce the definition of Proprietary Information (or similar terms) set forth in any version of the Confidentiality and Intellectual Property Agreement . . . to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act." The settlement notice, which Apple was required to post on its intranet and which remains posted there, states: "YOU HAVE THE RIGHT to discuss wages, hours and working conditions and WE WILL NOT do anything to interfere with your exercise of that right." It states: "WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information." It states: "WE WILL NOT promulgate, maintain, or enforce any rule that defines confidential information as 'anything not explicitly, publicly, or purposefully disclosed by Apple.'"

45.    Apple's motion does all of this. It threatens Plaintiff with contempt and sanctions — discipline — for disclosing information about working conditions, unlawful conduct by the employer, and trying to publicize the issue in hope the pressure can force Apple to improve its labor practices. Apple, a union buster known for "suicide nets" at its factories, characterizes working conditions testimony as proprietary. It invokes a definitional framework, operationalized through the Protective Order, that treats anything Apple wants as Apple's confidential property. The settlement does not exempt the Protective Order from its reach. Apple agreed to stop enforcing these restrictions. It agreed to do so through any mechanism, through any

instrument, in any proceeding. A court order cannot be used to accomplish what a contract prohibits. *See Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 526 (1986) (court cannot enter consent decree that violates federal statute); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 387 (1992) (court cannot enforce unlawful order).

46.     The settlement's non-compliance provision is not a footnote. Upon non-compliance, after fourteen days' notice from the Regional Director, the October 2024 complaint is automatically reissued. Apple's answer is deemed withdrawn. Allegations are deemed admitted. The Board may enter a full remedy order without trial. A United States Court of Appeals judgment may be entered enforcing the Board order *ex parte*. Apple filed this motion — which is non-compliance — with full knowledge of that provision. It did so after the Regional Director had already been notified of prior violations through Plaintiff's earlier charge. The self-executing default mechanism is loaded.

## Apple's Motion Has an Illegal Objective Under *Bill Johnson's* Footnote 5

47.     This Court is not required to reach the merits of Apple's motion before recognizing that the motion itself is unlawful. Under *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 737 n.5 (1983), a lawsuit or motion "that has an objective that is illegal under federal law" may be enjoined by the NLRB without any finding that the filing is baseless and retaliatory. The D.C. Circuit confirmed in *Can-Am Plumbing, Inc. v. NLRB*, 321 F.3d 145, 149 (D.C. Cir. 2003), that *BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002), "did not affect the footnote 5 exemption in *Bill Johnson's*." The NLRB confirmed in *Anheuser-Busch, LLC*, 367 NLRB No. 132 (2019), that a motion seeking to enforce, through court proceedings, a restriction that would independently violate federal labor law has an illegal objective. The dissent in *Anheuser-Busch*, authored by Member McFerran and consistent with the majority on this principle, states: "An attempt to achieve through litigation what one could not otherwise lawfully do constitutes petitioning the court with an illegal objective."

48.     Apple's motion has an illegal objective. It seeks to enforce, through this Court's contempt power, confidentiality restrictions over Plaintiff's description of her working conditions — the same restrictions Apple agreed in a national NLRB settlement it could not enforce through the IPA. That it has substituted the Protective Order for the IPA as the enforcement vehicle does not change the substance. *See Anheuser-Busch*, 367 NLRB No. 132 (motion seeking to enforce DRP over union-represented employees violated § 8(a)(5) even though the DRP was facially lawful, because the manner of application was unlawful). Apple cannot do through a discovery protective order what it agreed it could not do through an employment agreement. The illegal objective is the suppression of protected concerted activity through a confidentiality mechanism. The mechanism's label — IPA, PO, contempt motion — does not matter.

49.     The NLRB charge, Case No. 32-CA-381277, filed February 16, 2026, places this motion squarely before the agency with primary jurisdiction over the underlying conduct. Under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), "when an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." Plaintiff's disclosures are arguably protected — the blog post explaining the charge, the social media post about Apple's censorship of working conditions speech, the NLRB cover letter quoting testimony about protected concerted activity — and Apple's effort to sanction them is arguably prohibited. *Garmon* preemption bars this motion independently of every other argument.

### The Deletion Demand Is a Prior Restraint That Cannot Be Sustained

50.     Apple's demand that Plaintiff delete published content — her blog post, her social media posts — is a prior restraint on speech. *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) ("prohibiting the publication of a news story . . . is the essence of censorship"). Prior restraints "come to this Court with a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). The Supreme Court has "never upheld a prior restraint," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 590 (1976) (Brennan, J., concurring), and has imposed one only where "the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures." *CBS v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).

51.     "The private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint. It is not even grounds for keeping the information under seal." *Procter & Gamble*, 78 F.3d at 225. Apple's interest here — suppressing public knowledge of its coercive employee study practices and the NLRB settlement requiring it to stop — is precisely the commercial self-interest that *Procter & Gamble* held insufficient. The blog post Apple seeks to delete explains a federal labor charge. The social media post complains that Apple was censoring Plaintiff's speech about menstruation and Apple wanting to study her menstruation and her saying no, please do not do that. None of that threatens national security or prejudices a pending criminal trial.

52.     The deletion demand fails on an additional ground specific to this record: the information Apple seeks to have deleted is already on the public dockets of federal proceedings, in news archives across multiple countries, and in Apple's own published journal articles. A court order deleting Plaintiff's blog post would not remove the information from the public domain. It would remove the Plaintiff's voice, testimony, and evidence of regulatory noncompliance by Apple.

53.     That is not a confidentiality remedy. That is targeted censorship of a whistleblower's speech

about her employer's conduct, imposed by the employer's preferred procedural vehicle. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997) (internet speech entitled to full First Amendment protection, highest level of scrutiny); *Rasawehr v. Twitter, Inc.*, No. 3:21-cv-01644 (N.D. Cal.) (prior restraint on internet speech requires compelling government interest and narrow tailoring). No compelling interest exists here. The motion does not even attempt to articulate one, because none exists.

### APPLE'S FOUR CASES ARE INAPPLICABLE

54.     Apple cites *Harmston*, *Gonzales*, *I.F. v. Vallejo*, and *Ma* in support of its enforcement theory. Each is distinguishable on the same three grounds: each involved a valid designation, non-public information, and no independent prior knowledge by the disclosing party. None of Apple's four cases involved anatomical terminology describing the witness's own body. None involved information that had been on a federal court docket for two years, cited in a GAO report, published in a peer-reviewed journal, reported by journalists in three countries, and pled in five successive public complaints. None involved an NLRB settlement prohibiting the employer from enforcing the very restriction at issue. None involved a designation void on its face under the PO's own anti-mass-designation provision and void under Rule 26(g)(2) for absence of signature.

55.     *I.F. v. Vallejo*'s statement that the "propriety of initial disclosure is beside the point" depends entirely on the assumption that a valid designation existed and the information was not already public — the precise assumption that is false here. Where there is no valid designation, enforceability is not "beside the point." It is the point. *Ma* involved technical proprietary data with no corresponding public record and no NLRA settlement prohibiting its designation. The case does not address working conditions, anatomical terminology, or the public domain exclusions of PO § 3. It says nothing useful here.

56.     The common thread in Apple's cases is a party who received new information through the discovery process, had no independent knowledge of it, it wasn't public prior, and disclosed it anyway. Plaintiff is not that party. She knew what Apple asked her body to do because it happened to her. The information was already on public dockets because she put it there through four years of protected activity. The NLRB settled Apple's unlawful confidentiality regime because the Board agreed with her. Apple's four cases answer a question that is not present in this record.

### DEFENDANT'S MOTION HAS NO COGNIZABLE LEGAL AUTHORITY

57.     A "Motion to Enforce Protective Order" does not exist under the Federal Rules or this District's Local Rules. It has no standard of review, no prescribed process, and no enumerated remedies. Defendant cites Rule 37(b)(2)(A), but Rule 37(b) governs sanctions for disobeying a court order — it does not create a standalone motion type, authorize injunctive relief, or authorize compelled deletion of published speech. Defendant's fallback to "inherent powers" fares no better: inherent powers supplement the Federal

Rules; they do not override them.

58.     Defendant has bundled twelve distinct categories of relief into one motion, each requiring its own procedural vehicle, its own evidentiary showing, and in several cases its own judicial officer. Defendant has satisfied none of them. Sanctions require a Rule 11 safe-harbor notice served 21 days before filing, or a separate Rule 37 motion under L.R. 7-8 — Defendant filed neither. Contempt requires a petition, sworn affidavits, an evidentiary hearing, and proof by clear and convincing evidence. *Bagwell*, 512 U.S. at 832; *Taylor*, 418 U.S. at 498-99. Defendant filed no petition, submitted no affidavits, and requested no hearing. Compelled deletion of published speech is a mandatory injunction requiring a Rule 65 motion before Judge Chen, a *Winter* showing, and First Amendment analysis — none of which Defendant provided. *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc); *Nebraska Press*, 427 U.S. at 559. Sealing requires a L.R. 79-5 motion with specific factual findings for each document — Defendant filed none for any of the three filings it seeks to seal. *Kamakana*, 447 F.3d at 1179.

59.     Defendant's motion also includes no proposed order — and for good reason. No enforceable order can be drafted because the relief is incapable of precise definition. Any speech injunction must "state its terms specifically and describe in reasonable detail the act or acts restrained." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Defendant's retained designations cover the words "ovulation," "menstruation," and "cervical mucus." Would an order prohibit Plaintiff from using these words in her NLRB filings? In testimony before a Board agent? In communications with her attorneys? There is no limiting principle that does not simultaneously prohibit conduct protected by federal labor law, federal anti-retaliation statutes, and the First Amendment. At best, the motion seeks a declaratory finding that Plaintiff violated the Protective Order — but that relief is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201, and requires a noticed motion on the 35-day schedule this Court already ordered. Defendant has not satisfied that requirement either.

## MULTIPLE INDEPENDENT JURISDICTIONAL BARS PRECLUDE ANY RELIEF

60.     Before reaching the merits, this Court faces a threshold problem: it cannot grant the relief Defendant requests under any legal theory, through any procedure, regardless of how the Protective Order is interpreted. The bars are independent, each is dispositive, and none are close calls. A federal court cannot issue a procedural order directing parties to violate federal statutes — a procedural label does not immunize an order from statutory scrutiny. *United Mine Workers*, 330 U.S. at 303–04; *Trump v. Hawaii*, 585 U.S. at 703. Inherent authority is subordinate to express statutory commands. *Chambers*, 501 U.S. at 47; *Degen*, 517 U.S. at 823. When Plaintiff raised timely, specific statutory objections before the Protective Order was entered — in writing, repeatedly, including a 205-page motion to quash — this Court was required to make findings

before signing. It did not. That failure is reversible error per se. *Hall*, 419 F.3d at 985–86; *Hernandez*, 604 F.3d at 1100. This motion asks the Court to compound that error.

61.    The most immediate bar is the bankruptcy automatic stay. Plaintiff filed Chapter 7 on July 21, 2025 (Case No. 25-11496, D. Mass.). The stay prohibits "the commencement or continuation of a judicial, administrative, or other action or proceeding against the debtor" and "any act to collect, assess, or recover a claim against the debtor." 11 U.S.C. § 362(a)(1), (6). Defendant knows this — it retained bankruptcy counsel and filed a bankruptcy court opposition on September 11, 2025 — yet never sought stay relief before filing this motion. Actions taken in violation of the automatic stay are void, not merely voidable. *In re Schwartz*, 954 F.2d 569, 571–72 (9th Cir. 1992); *In re Hruby*, 512 B.R. 262, 274 (Bankr. D. Colo. 2014). Any order this Court enters against Plaintiff is a legal nullity. Defendant's willful violation also exposes it to mandatory damages under § 362(k)(1).

62.    Garmon preemption presents an equally absolute bar. Federal courts must defer to the NLRB when conduct is arguably protected or prohibited by the NLRA. *Garmon*, 359 U.S. at 245; *Glacier Northwest*, 598 U.S. 771 (2023). Three NLRB charges are pending — Case Nos. 32-CA-381277 and two related charges — alleging the exact designations Defendant seeks to enforce here are unlawful work rules. To rule for Defendant, this Court must decide that Plaintiff's speech was wrongful — precisely the question the NLRB has exclusive authority to answer. If this Court rules first and the NLRB later finds the designations unlawful, this Court will have helped Defendant suppress federally protected labor organizing. *Garmon* exists to prevent that outcome.

63.    The Norris-LaGuardia Act removes jurisdiction entirely. Congress stripped federal courts of authority to issue injunctions in cases involving or growing out of a labor dispute. 29 U.S.C. § 101. Section 104(e) specifically prohibits injunctions against "giving publicity to the existence of, or the facts involved in, any labor dispute." Compelling deletion of social media posts about working conditions and NLRB charges is the definition of that prohibited injunction. This is not discretionary — there is no procedure through which this Court can grant it. Even if there were, § 107 would require open-court testimony, findings of fact, a showing of substantial irreparable injury, and a finding that public officers cannot furnish adequate protection. Defendant has satisfied none of these.

64.    The magistrate's statutory authority is separately limited. A magistrate judge cannot determine a motion for injunctive relief. 28 U.S.C. § 636(b)(1)(A). This Court said so at the February 20, 2026 conference: "No, there is no injunction." (Tr. at 38:56). Summary contempt requires misbehavior in the magistrate's presence; a social media post does not qualify. Out-of-court contempt requires certification to

the district judge. § 636(e)(6)(B)(ii). That has not happened. And Defendant asks this Court to seal Dkt. 278 and 285 — filings Judge Chen has already adjudicated. A magistrate cannot seal what the district judge has ruled on.

65.     Beyond jurisdiction, multiple statutes affirmatively prohibit the requested order — and some directly command this Court not to enter it. The Speak Out Act, Pub. L. No. 117-224 (2022), renders pre-dispute nondisclosure provisions unenforceable as to sexual harassment disputes. Under the Rules Enabling Act, 28 U.S.C. § 2072(b), this protection cannot be evaded by styling a prohibited NDA as a court order. California Civil Code § 51.9 establishes that Defendant's demands regarding Plaintiff's reproductive physiology, menstrual cycle, and sexual partners constitute sexual harassment in a professional relationship as a matter of California law — so the designated content does not merely touch harassment-related conduct, it describes conduct that is statutory sexual harassment. California Code of Civil Procedure § 1001(b) then issues a direct command: "a court shall not enter, by stipulation or otherwise, an order that restricts the disclosure of information" related to sexual harassment, workplace discrimination, or retaliation. That is not a factor to balance. It is a prohibition on this Court's authority. California Government Code § 12964.5 independently voids any provision with "the purpose or effect of denying the employee the right to disclose information about unlawful acts in the workplace," § 12964.5(a)(1)(B) — and its carve-out for trade secrets expressly excludes "information that does not involve unlawful acts in the workplace," § 12964.5(f), which is precisely what the designated content describes. California Government Code § 12940(h) prohibits retaliation for opposing FEHA violations — filing a federal motion threatening contempt for discussing sexual harassment in the workplace is retaliation under that provision. Under FRE 501, these substantive state protections govern state law claims and cannot be displaced by federal procedural defaults. *Shady Grove*, 559 U.S. at 398–400.

66.     California Labor Code § 96(k) — which survived five rounds of Apple's motions to dismiss on these exact facts — prohibits retaliation for lawful off-duty conduct. California Constitution Article I, § 1 protects sexual and reproductive privacy as a self-executing inalienable right binding every court administering California law. *Hill v. NCAA*, 7 Cal. 4th 1, 35–40 (1994). An injunction against Plaintiff's speech about Apple's demands regarding her menstrual cycle and sexual partners violates both directly. Finally, California Code of Civil Procedure § 425.16, applied in federal court, *Newsham v. Lockheed*, 190 F.3d 963 (9th Cir. 1999), mandates fee-shifting when claims arise from protected speech or petition activity. Every proper motion Defendant should have filed — a Rule 65 motion, a contempt petition, a sanctions motion — would trigger anti-SLAPP scrutiny and place the burden on Defendant to show probability of prevailing. *Equilon*

*Enterprises*, 29 Cal. 4th at 67. Defendant cannot meet that burden, and the fee exposure follows automatically. This is one more reason Defendant filed an improvised omnibus motion instead of the required proper vehicles — the proper vehicles all come with consequences Defendant is trying to avoid.

## DEFENDANT HAS NOT AND CANNOT SATISFY THE LEGAL STANDARDS FOR THE RELIEF IT SEEKS

67.     Even if every jurisdictional bar were cleared — and none can be — Defendant still cannot satisfy the legal standard for any of the relief it seeks. Compelled deletion of published speech is a mandatory injunction, subject to a heightened standard above the ordinary *Winter* test: the facts and law must clearly favor the moving party and the equities must weigh heavily in its favor. *Stanley*, 13 F.3d at 1320; *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Defendant satisfies none of the four elements. Likelihood of success is near zero — the designations are void, the Order's exclusions apply, and the jurisdictional bars independently foreclose relief. Irreparable harm is unestablished — Defendant's circular argument that disclosure causes harm because the information is confidential is not the "specific, concrete evidence" the Ninth Circuit requires. The balance of equities favors Plaintiff — compelling deletion of published speech about labor organizing and workplace privacy violations is an extraordinary remedy; suppressing an employee's description of her own bodily experiences is not a cognizable countervailing interest. And the public interest cuts sharply against relief — transparency about employer surveillance, the NLRB process, and workplace privacy rights serves the public, not harms it.

68.     The prior restraint standard is even more demanding, and Defendant does not attempt to meet it. A prior restraint is "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press*, 427 U.S. at 559. It carries a heavy presumption of invalidity that can only be overcome through strict scrutiny. *Bantam Books*, 372 U.S. at 70. Internet speech receives full First Amendment protection. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). Social media deletion orders have been unanimously struck down as impermissible prior restraints. *Rasawehr v. Bey* (Ohio S. Ct. 2020). Defendant's motion contains no First Amendment analysis, no strict scrutiny showing, and no authority for the proposition that a discovery protective order can function as a prior restraint on speech about a party's own body and her NLRB charges. That absence is itself fatal.

69.     The sealing standard fares no better. Defendant's sole basis for sealing is that it designated the information confidential — a circular assertion that L.R. 79-5(c) expressly rejects in its first sentence: "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." *Kamakana*, 447 F.3d at 1178–79; *Foltz*, 331 F.3d at 1135. This Court is not the first to reject Apple's approach — Judge Pitts

denied Apple sealing of deposition testimony about its employee practices on identical grounds. *Apple Inc. v. Rivos*, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024). Defendant also seeks to seal Dkt. 278, 284, and 285 in their entirety, in direct violation of L.R. 79-5(a)′s requirement to avoid sealing whole documents wherever possible. Sanctions require either a Rule 11 motion with 21-day safe-harbor notice, or a separate Rule 37 motion under L.R. 7-8. Defendant filed neither, served no safe-harbor notice, submitted no sworn affidavits, and offered no authenticated evidence. A court cannot impose sanctions — let alone contempt, which carries quasi-criminal consequences — based solely on unsworn characterizations in a motion brief, without an evidentiary hearing. *Bagwell*, 512 U.S. at 826–32. Defendant has not come close to satisfying this standard.

## DEFENDANT′S MOTION IS RELIEF ON UNPLED, WAIVED COUNTERCLAIMS

70.     Defendant′s entire theory of relief rests on a single foundation: the IPA. Defendant stated this explicitly in Dkt. 280, footnote 2 — Plaintiff is ″also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed″ — and repeated it in Dkt. 294 and Dkt. 304-305, where the IPA is the sole identified legal authority for every retained designation. That is a breach of contract theory. Affirmative relief on a breach of contract theory requires a pleaded claim. Defendant has none. Rule 13(a) required Apple to plead compulsory counterclaims — claims arising from the same transaction as Plaintiff′s claims — with its Answer. Apple filed its Answer (Dkt. 183, March 13, 2025) and Amended Answer (Dkt. 218, June 2, 2025) without pleading a single counterclaim. Those claims are waived. Fed. R. Civ. P. 13(a)(1); *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249 (9th Cir. 1987). Apple never sought leave to add counterclaims under Rule 13(e). Plaintiff flagged this failure directly during meet-and-confer: ″its not even a counterclaim, so that′s kind of weak.″ (Dkt. 220-9 at 15:18-15:48). Defendant did not respond. It still has not responded — it simply filed a motion demanding relief it has no pleaded claim to support.

71.     A discovery motion cannot substitute for an unpled breach of contract claim. The court′s ancillary jurisdiction enforces what its own process created — it does not expand to reach new substantive disputes that were never independently pleaded or adjudicated. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Peacock v. Thomas*, 516 U.S. 349 (1996). A model blanket protective order signed as a discovery management tool cannot be transmuted into a source of substantive speech-suppression rights simply by motion. That bootstrapping problem is fatal: the court′s enforcement power derives from and is bounded by what the court′s own process created. *Kokkonen*, 511 U.S. at 381. It does not stretch to accommodate a contractual theory Apple chose not to plead.

72.     The constitutional dimension compounds the procedural one. *Seattle Times*, 467 U.S. at 37,

upheld discovery protective orders only because the restriction was limited to information obtained through the court's compelled discovery process. The converse follows directly — a protective order cannot reach information a party possessed independently, because the court's process contributed nothing to that knowledge. *Butterworth v. Smith*, 494 U.S. 624 (1990) (grand jury secrecy rules cannot prevent a witness from disclosing his own testimony — the knowledge was his own, not the government's). *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) (once information enters the public domain, a court cannot reconstruct confidentiality through protective order enforcement — there is nothing left to protect). Plaintiff's knowledge of Apple's demands about her menstrual cycle and sexual partners did not come from discovery. It came from her own life. No court order can make that knowledge belong to Apple. The bankruptcy automatic stay provides one final, independent bar: it prohibits Defendant from asserting any claim against Plaintiff as a debtor without first obtaining stay relief. 11 U.S.C. § 362(a)(1), (6). Until that relief is obtained, Defendant cannot pursue contractual relief regardless of whether it was previously pleaded.

## DEFENDANT CANNOT SEEK EQUITY WITH UNCLEAN HANDS

73.    Defendant's motion requests equitable relief — declaratory, injunctive, and mandatory remedies in equity. The fundamental maxim of equity is that courts of equity do not entertain relief for parties with unclean hands. *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 244-45 (1933). Defendant's hands are demonstrably unclean, in multiple independent respects documented in this Court's own record. As established in Section II above and in Plaintiff's Dkt. 302, Defendant's blanket designation lapsed under the Protective Order's 21-day rule; Defendant's February 4 narrowed designation was unsigned, undated, and unserved in violation of Rule 26(g)(1); and Defendant expressly refused to cure the deficiency after specific written notice. Defendant is seeking equity to enforce designations that were never validly made. Defendant represented to this Court that it needed the Protective Order to produce the Gobbler informed consent form. Defendant never used the Order for that purpose. The sole use Defendant has made of the Order — by Defendant's own filings — is to suppress Plaintiff's speech about the factual basis of her own termination. Equity does not favor a party that obtained a court order by misrepresenting its intended use and then seeks to enforce it for the purpose it misrepresented. Defendant filed this motion in direct defiance of this Court's February 20, 2026 order requiring meet-and-confer before any motion practice, seven documented refusals to comply with that order notwithstanding. Defendant is asking this Court to grant equitable relief for a perceived violation of a court order — while simultaneously and willfully violating a court order.

74.    Defendant's blanket designation was imposed at the precise moment Plaintiff began testifying about her NLRA rights — before any of that testimony was spoken. Defendant's counsel admitted during meet-and-confer that Defendant wanted the Protective Order to prohibit Plaintiff from "testifying to government agencies and law enforcement" about evidence she received in discovery. (Dkt. 220 at 10-11, ¶ 15). These are improper purposes that independently disqualify Defendant from equitable relief. Defendant's citation of the IPA — in this motion and in Dkt.

304-305 — violates the April 2025 national settlement agreement Defendant entered with the NLRB, in which Defendant promised to stop enforcing the IPA to cover terms and conditions of employment. Defendant cannot seek equitable relief through this Court while simultaneously violating a binding agreement with a federal agency.

## THE MODEL PROTECTIVE ORDER IS LEGALLY PROBLEMATIC

75.     The Protective Order occupies an uncomfortable legal no-man's-land: it is not a valid stipulation, not a valid court order, and not a valid local rule. It claims the benefits of all three while satisfying the requirements of none. A federal court cannot rubber-stamp a proposed order that violates governing law — not even when the parties have agreed to it. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525–26 (1986). When Plaintiff raised specific statutory and constitutional objections before the Order was entered, the Court was required to address them on the merits. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 380–83 (1992). It did not. Court policies cannot operate to silence constitutional claims or restrict judicial access when protected disclosures are at issue. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 887–88 (2009). Plaintiff has since formally notified the body responsible for the Federal Rules of exactly these deficiencies — Petition 26-CV-6, accepted for consideration by the Advisory Committee on Civil Rules on February 23, 2026. *See* U.S. Courts, Rules -- Suggestions, Rules 26 and 83 (pending).

76.     If the Order is a stipulation, it requires mutual assent. There is none. Plaintiff objected at every stage — filed a 205-page motion to quash, appealed to the Ninth Circuit, and stated on the record she would not sign unless ordered to. The Court's response at the July 2, 2025 hearing — "Ms. Gjovik, can you sign it as soon as possible? ... Today would be great." (Tr. at 18:10–14) — was not an invitation. It was communicated against the backdrop of the court's explicit statement that it was "prepared to just enter the protective order as it is written." (Dkt. 230–233, Tr. at 4–17). A signature obtained after being told the outcome is the same whether or not you sign is not voluntary mutual assent. Cal. Civ. Code § 1580; Restatement (Second) of Contracts § 17. Moreover, the template's recital that "the parties agree" to the need for protection compelled Plaintiff to affirm a proposition she actively disputed — a separate constitutional defect. Government may not compel individuals to affirm beliefs they reject. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943); *Wooley v. Maynard*, 430 U.S. 705 (1977). That compelled recital then substituted for the independent good cause finding Rule 26(c) requires — a self-referential structure that manufactures its own legal predicate. Conditioning Plaintiff's ability to proceed with her lawsuit on signing away constitutional rights is itself an unconstitutional condition. There was no valid stipulation.

77.     If the Order is a court order under Rule 26(c), it required Defendant to demonstrate good cause supported by specific harm. *Beckman Indus.*, 966 F.2d at 475–76. Defendant filed no motion, submitted no declaration, and identified no specific information requiring protection. The Court entered the Order without

requiring the showing Rule 26(c) mandates — inverting the burden Rule 26(c) deliberately assigns to the party seeking protection. That inversion is a sub rosa amendment to a Federal Rule of Civil Procedure, accomplished through a template and a standing order without notice, comment, or congressional review.

78.    A court must allow parties a meaningful opportunity to object when procedures affect constitutional or statutory rights. *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009). Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), letter adjudication is constitutionally inadequate when the issue being decided is whether a party may speak publicly about public information. Because the Order restricts speech, it is also subject to First Amendment scrutiny regardless of its procedural label and a prior restraint imposed without the constitutionally required showing of necessity cannot stand. *Nebraska Press*, 427 U.S. at 562. If the Order derives force as a local rule enforceable through contempt, it was required to be adopted through the rulemaking process of Fed. R. Civ. P. 83 and 28 U.S.C. § 2071, including public notice, opportunity to comment, and circuit judicial council review. *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992); 28 U.S.C. § 2071(a). The District's model template was never adopted through that process. If its terms are significant enough to be enforceable through contempt, they are significant enough to go through the process Congress required for rules that bind litigants. *Frazier v. Heebe*, 482 U.S. 641, 645 (1987). They did not.

79.    Defendant cannot have it all three ways. Stipulation — no mutual assent. Court order — no Rule 26(c) showing. Local rule — no Rule 83 rulemaking. The Order is unenforceable under every theory available to Defendant. Even if it were valid, the enforcement mechanism Defendant invokes does not exist. Rule 37(b)(2)(A) authorizes sanctions when a party "fails to obey an order to provide or permit discovery." A traditional protective order does the opposite — it restricts use of material already produced, it does not direct production. The Eleventh Circuit was direct: "a Rule 26(c) protective order is not 'an order to provide or permit discovery,' and therefore, such orders do not fall within the scope of Rule 37(b)(2)." *Lipscher v. LRP Publications*, 266 F.3d 1305, 1323 (11th Cir. 2001); *accord* Josephs, "The Availability of Discovery Sanctions for Violations of Protective Orders," 80 U. Chi. L. Rev. 1355, 1371–72 (2013). Defendant's attempt to bridge this gap by arguing the Order "enabled" discovery would extend Rule 37(b) to virtually any court order.

80.    Even if valid, its application here violates the Rules Enabling Act. 28 U.S.C. § 2072(b) provides that the Federal Rules "shall not abridge, enlarge, or modify any substantive right." Applying the Order to prohibit Plaintiff from discussing her own body, her NLRB charges, her workplace complaints, and the factual basis of her lawsuit abridges substantive rights guaranteed by the NLRA, Title VII, the California Constitution, Speak Out Act, and Silenced No More Act. Cal. Lab. Code § 432.5 independently prohibits requiring employees to sign agreements that violate any law. A confidentiality clause barring discussion of

harassment or NLRA-protected activity is void and unenforceable in California courts, including this one.

81.     The principle that closes this analysis requires no elaboration: a protective order cannot accomplish indirectly what no court could order directly. *Seattle Times*, 467 U.S. at 33; *Kamakana*, 447 F.3d at 1179; *United States v. Will*, 449 U.S. 200, 215 (1980). No court could issue a direct prior restraint prohibiting an employee from discussing her reproductive health, her NLRB charges, or her workplace complaints. The First Amendment, the NLRA, the Norris-LaGuardia Act, and California law all independently forbid it. The fact that Defendant styles the request as protective order "enforcement" does not change what it is. A court's separation-of-powers constraints are not defeated by creative labeling.

## DEFENDANT'S MOTION IS AN UNAUTHORIZED SUMMARY JUDGMENT MOTION

82.     Strip away the procedural caption and what Defendant is actually asking for is a pre-trial ruling that Plaintiff's speech about Apple's employee studies was wrongful, not protected — the precise question at the center of her surviving *Tamney*, § 1102.5, and § 96(k) claims. Defendant wants that ruling now, on a discovery enforcement motion, without a statement of undisputed facts, without evidence, without the legal standards applicable to wrongful termination claims, and without Rule 56 process. The Court cannot grant it. Summary judgment is scheduled for June 2026. That is where this question belongs. Defendant has confirmed this in its own filings. Dkt. 280, footnote 2: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." That is a judicial admission that this enforcement proceeding concerns the same speech, the same studies, and the same confidentiality theory as Defendant's termination defense. If this Court finds that Plaintiff's speech violated the Protective Order — on a discovery motion, without trial — Defendant will argue at summary judgment that a federal court already held the speech was wrongful, not protected. Plaintiff's Tamney, § 1102.5, and § 96(k) claims would be gutted before they reached the merits. Judge Chen's own order at Dkt. 213 warned against exactly this: "even if Defendant designates certain documents as confidential, that does not bar Ms. Gjovik from contesting a designation." A finding of violation for contesting a designation would directly contradict that assurance.

83.     The irreconcilable contradiction is structural. Plaintiff's complaints ask this Court to declare that Defendant's conduct is unlawful, that its secrecy regime is unlawful, and to order disgorgement of the collected data and cessation of the studies. (4AC ¶¶ 203–207; 5AC ¶ 219). Defendant's motion asks this Court to declare that the studies are protectable confidential business information and that Plaintiff violated an order by discussing them. Both cannot be granted. Defendant cannot obtain through a discovery enforcement motion what it must establish through summary judgment — and must win at trial. The same reasoning precludes using this motion to establish a basis for IPA breach damages. The bankruptcy stay prohibits breach of contract claims against Plaintiff as a debtor without stay relief. 11 U.S.C. § 362(a)(1), (6). Defendant never sought stay relief. More fundamentally, Defendant agreed in the April 2025 NLRB national settlement (Dkt. 194 at 17–20, Case No. 32-CA-284428) to stop enforcing the IPA to cover terms and conditions of employment protected under NLRA § 7 — with a self-executing default provision providing that non-

compliance triggers reissuance of the October 2024 complaint, deemed admissions, and a full Board remedy without trial. Defendant's Motion to Retain Designations cites the IPA as its sole remaining legal authority. Defendant is asking this Court to enforce an agreement it is legally prohibited from enforcing, in a forum where it is legally prohibited from asserting claims, under a theory it expressly waived before the NLRB. The self-executing default provision is triggered by that conduct.

84. Equitable and judicial estoppel independently bar relief. Defendant represented to this Court that it needed the Protective Order to produce the Gobbler informed consent form. It never designated that form as confidential. It never used the Order for that stated purpose. It may not now invoke the Order it obtained through misrepresentation to obtain a fundamentally different form of relief — suppression of Plaintiff's speech about working conditions. Defendant also represented to the NLRB that it would stop enforcing the IPA to cover protected activity, then represented to this Court in the same motion that the IPA is its sole authority for its designations. A party cannot take contrary positions in different federal proceedings. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001). Defendant additionally admitted during meet-and-confer before the Protective Order was entered that it wanted the order to "expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement." (Dkt. 220 at 10–11 ¶ 15). A protective order designed to prevent testimony to federal law enforcement is not a discovery management tool. The Court entered the Order despite that admission on the record.

85. The motion is also an act — not merely a filing. Each of the following violations is committed by the act of filing Dkt. 294. The NLRA: filing a federal court motion threatening contempt against an employee for publicly discussing her NLRB charges and workplace complaints is a textbook § 8(a)(1) unfair labor practice — coercion of § 7 rights — and § 8(a)(4) retaliation for NLRB charge activity. The NLRB has already issued a charge on this exact conduct. (Charge No. 32-CA-381277, Dkt. 278). California Labor Code § 1102.5: the motion explicitly targets Plaintiff's disclosures to the NLRB, the press, and the public about Defendant's invasive employee studies and unlawful NDA terms: the motion is the retaliatory act, committed after suit was filed, creating a fresh, timely, fully attributed violation. §§ 232.5 and 96(k): the motion seeks a prior restraint on Plaintiff's future speech and a court finding that her past off-duty speech violated a court order — direct coercion and discipline for lawful nonworking-hours conduct that § 96(k) was enacted to prevent. The NLRB settlement: Defendant's motion cites as its sole authority the IPA it contractually agreed to stop enforcing & filing was a breach of the settlement with self-executing default.

86. Defendant spent rounds of motions to dismiss narrowing Plaintiff's claims on procedural grounds — statute of limitations, pleading specificity, employer-agent attribution. Defendant then, apparently emboldened, committed the same violations explicitly, on the record, in open federal court, under its own name, represented by the same firm identified in the prior RICO allegations, citing the same IPA it promised the NLRB it would stop enforcing. Every procedural shield that produced those earlier dismissals is inapplicable here. This is a fresh, timely, fully attributed, explicitly documented violation — committed after this lawsuit was filed, in this proceeding, with specific intent supplied in writing by Dkt. 280, footnote 2. The Court should deny the motion, recognize that the filing itself

warrants response in the sanctions framework already pending at Dkt. 302.

# CONCLUSION AND RELIEF REQUESTED

87.    Plaintiff predicted on the record, before the Protective Order was ever entered, that Apple would use it for exactly this purpose: to criminalize her protected speech, to convert her retaliation claims into her own misconduct, and to obtain through contempt proceedings the suppression it could not obtain through litigation on the merits. The record confirms every element of that prediction. The motion fails at every level. No valid designation exists to enforce: the blanket designation was void under PO § 5.1 from inception; the February 4, 2026 narrowed designation is a nullity under Fed. R. Civ. P. 26(g)(2). The Protective Order's own § 3 excludes all designated content as publicly known and previously known to Plaintiff. The constitutional floor established by *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), prohibits suppressing what Plaintiff already knew from her own experience. The prior restraint demand fails under *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), and *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) — private commercial interest has never justified a prior restraint, and it does not here. Garmon preemption strips this Court of jurisdiction over activity arguably protected by NLRA §§ 7 and 8. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

88.    The Norris-LaGuardia Act absolutely bars injunctive relief in a labor dispute. 29 U.S.C. § 101. The bankruptcy automatic stay voids this proceeding absent stay relief. 11 U.S.C. § 362(a). The April 2025 NLRB settlement contractually bars Apple from enforcing confidentiality over working conditions by any mechanism. The motion seeks relief on unpled, waived counterclaims under an IPA Apple agreed to stop enforcing. The motion was filed in defiance of this Court's February 20, 2026 meet-and-confer order. The motion seeks to pre-adjudicate the central merits question in Plaintiff's retaliation claims — whether her disclosures were protected — without the procedural protections of Rule 56. Apple's own Senior Director declarant concedes the information "may be publicly available."

89.    Apple's own published paper in the *American Journal of Obstetrics and Gynecology* discloses the methodology. Apple's own judicial admission in Dkt. 280 fn. 2 concedes Plaintiff made these disclosures publicly. Apple's equitable hands are unclean. And the act of filing this motion is itself a fresh violation of NLRA §§ 8(a)(1) and 8(a)(4), Cal. Lab. Code §§ 1102.5 and 96(k), and the April 2025 settlement — committed under counsel's signature, on the public record, after five rounds of motions to dismiss seeking to remove allegations about this identical conduct on procedural grounds. Apple spent five years calling Plaintiff's description of her own body its trade secret. The NLRB disagreed. The EPA disagreed. The GAO cited her public account as credible. Journalists in three countries reported it. Five public complaints on this docket pled it. Judge Chen's orders describe it. None of that changed Apple's theory. Apple's theory is that it owns its employees' experiences, and that this Court's contempt power is the right tool to enforce that ownership. It is not. Plaintiff respectfully requests that the Court:

1. **DENY** Defendant's Motion to Enforce Protective Order (Dkt. 294) in its entirety;
2. **DENY** Defendant's Motion to Seal (Dkt. 293) and Motion to Shorten Time (Dkt. 295);
3. **DECLARE** that no valid confidentiality designation exists over any portion of Plaintiff's deposition

transcript — the blanket designation lapsed automatically under PO § 6.3, and the February 4, 2026 narrowed designation is a legal nullity under Fed. R. Civ. P. 26(g)(2);

4. **DECLARE** that the Protective Order does not apply to the designated content, which is excluded from the Order's scope under § 3 and which the Order cannot constitutionally reach under *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984);

5. **GRANT** Plaintiff's Motion for Declaratory Relief and Sanctions under Rule 26(g) (Dkt. 302);

6. **ORDER** Defendant to obtain relief from the bankruptcy automatic stay, 11 U.S.C. § 362(a), before taking any further action against Plaintiff in this proceeding;

7. **ORDER** Defendant to complete genuine meet-and-confer on each remaining designation before filing any further enforcement motion; and

8. **GRANT** such other and further relief as this Court deems just and proper.


Respectfully submitted,


/s/ Ashley M. Gjovik

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

Filed March 13 2026 in San José, California

(415) 964-6272

ashleymgjovik@protonmail.com

2108 N. St. Ste. 4553, Sacramento, CA 95816