Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK**,

*an individual*,

      Plaintiff,

  vs.

**APPLE INC.**,

*a corporation,*

      Defendant.

**CASE NO. 3:23-CV-04597-EMC**

**PLAINTIFF'S DECLARATION IN SUPPORT OF HER OPPOSITION TO APPLE'S MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS & MOTION TO SEAL (DKT. 304-305)**

**HEARING:**
**Location: Oakland (TBD)**
**Date: April 16 2026**
**Time: 1:30 PM**

# DECLARATION OF ASHLEY M. GJOVIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DKT. 304-305

I, Ashley M. Gjovik, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action, appearing in propria persona. I have personal knowledge of all facts stated herein.

2. I make this Declaration in support of my Opposition to Defendant's Motion to Retain Confidentiality Designations & Motion to Seal (Dkt. 304-305).

3. Attached hereto as Exhibit A is a true and correct copy of email chains between the parties dated February 4 through March 6, 2026, regarding Apple's confidentiality designations on my December 16, 2025 deposition transcript. This email chain includes:

   a) My February 4, 2026 email at 4:22 PM to Apple's counsel requesting Apple's confidentiality designations and noting that Apple's blanket designation had already auto-waived under PO § 6.3;

   b) Apple's counsel Kathryn Mantoan's February 4, 2026 email at 4:32 PM sending Apple's designation chart to the court reporter—not to me—and copying me "for notice purposes";

   c) My February 4, 2026 email at 4:39 PM objecting that Apple had excluded me from the designation process and demanding Apple send its claims to me for meet-and-confer;

   d) My February 4, 2026 email at 6:15 PM providing a detailed, substantive challenge to all of Apple's designations, specifically identifying the designations involving cervical mucus, ovulation, and sexual activity as unlawful, demanding a meet-and-confer call, and warning Apple that an NLRB charge would follow if Apple did not withdraw those designations;

   e) The actual designation challenge spreadsheet I sent Apple on Feb. 18 2026 which challenges all of Apple's designations contrary to Apple's assertion that some designations were not challenged;

   f) Apple's counsel Melinda Riechert's March 2, 2026 email stating Apple was "in the process of preparing" responses to my challenges "which you provided on February 18, 2026"— ignoring my February 4 challenge entirely;

g) My March 2, 2026 email responding that Apple had already waived its designations and that when I "tried to get you to talk about this in Feb 2026, you outright refused and said 'there's nothing to talk about'";

h) Apple's March 4, 2026 "meet and confer" letter, which responded only to my February 18, 2026 Excel spreadsheet, provided no Rule 26(c) good cause for any retained designation, failed to respond to 53 lines of challenged designations, and spent a significant portion of its three pages arguing Apple was justified in terminating my employment; and

i) My March 6, 2026 email responding comprehensively to Apple's March 4 letter, reiterating all objections raised since February 4, identifying Apple's failure to respond to over half the challenged designations, and again demanding Apple provide signed, dated, served designations as required by FRCP 26(g)(1).

4. This email chain is relevant because Apple's Dkt. 304 motion states: "it was not until February 18, 2026, that Plaintiff provided Apple a spreadsheet itemizing her position." (Dkt. 304 at 3). That statement is false. I challenged all designations on February 4, 2026—the same day Apple sent them. Apple's motion also claims that "[i]n lieu of responding to Apple's narrowed designations, Plaintiff filed a meritless motion for sanctions." (Dkt. 304 at 4). That is also false. I responded on March 6, 2026. Apple never responded to my March 6 email and filed its motion five days later.

5. Based on Apple's recent conduct on this topic, including its pending motions about the asserted designations, I filed new complaints with federal agencies and institutional review boards regarding Apple's workplace studies. Attached hereto as Exhibit B is a true and correct copy of my correspondence with the National Institutes of Health ("NIH") and the Office for Human Research Protections ("OHRP") at the U.S. Department of Health and Human Services regarding Apple's federally registered reproductive health study (ClinicalTrials.gov Identifier NCT04196595). In this correspondence, I raised concerns about Apple's use of its own employees as study participants, the adequacy of the informed consent process, the lack of independent oversight, and Apple's current pending motions, accusations, requests for gag orders and sanctions, and claims about the studies.

6. Attached hereto as Exhibit C is a true and correct copy of my correspondence with Harvard T.H. Chan School of Public Health IRB regarding its role as a collaborating institution on Apple's

Women's Health Study. Harvard is identified as a co-investigator institution in the study's ClinicalTrials.gov registration and in the published AJOG article describing the study methodology (Mahalingaiah et al., 2022). They confirmed they are investigating my complaints including about Apple's pending motions (including this motion).

7.  Attached hereto as Exhibit D is a true and correct copy of my correspondence with the Advarra Institutional Review Board ("Advarra IRB"), which served as the reviewing IRB for Apple's Women's Health Study as identified in the study's federal registration. In this correspondence, I raised concerns about the adequacy of IRB oversight for a study conducted by an employer on its own employees, the potential for coercion, the use of confidentiality agreements to prevent participants from reporting concerns, and Apple's pending motions. They said they were investigating and asked me to provide them copies of the type of evidence that Apple is claiming is secret and must be sealed.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 25 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# Exhibit A: Meet/Confer

# Re: Apple-Gjovik - letter responding to challenges to confidentiality designations

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, Trechter, Reed C.<reed.trechter@pillsburylaw.com>, Troop, Andrew M.<andrew.troop@pillsburylaw.com>, Jimenez, Catherine M.<catherine.jimenez@pillsburylaw.com>, Park, Julie Y.<JuliePark@mofo.com>, Tarantino, William F.<WTarantino@mofo.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Russell, Zoe<zrussell@orrick.com>, Weaver, Nicholas<nweaver@orrick.com> |
| Date | Friday, March 6th, 2026 at 7:21 PM |

Counselors,

None of this is Confidential. All of this is improper and unlawful. Apple's alleged designations violate the NLRA, the April 2025 settlement, the Protective Order, and the FRCP.

A motion for sanctions under Rule 26(g) and Rule 72 Objections have been filed today — courtesy copies attached. Also attached is my detailed response to Apple's March 4 letter -- reiterating everything I've been saying for months.

Despite my repeated attempts to meet and confer on these issues since February 4, Apple has refused to engage on the foundational defects I have raised at every opportunity. Apple still has not served signed, dated designations as required by FRCP 26(g)(1). The blanket designation from 12/16 auto-waived under PO § 6.3 after Apple missed the 21-day deadline. Apple's March 4 letter continues to ignore these threshold issues, mischaracterizes my objections, and provides no Rule 26(c) good cause for any alleged retained designation.

I remain willing to meet and confer. In the meantime, please send a signed, dated, served list of any designations Apple claims remain active.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, March 4th, 2026 at 8:13 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley:

Pursuant to Paragraph 6.2 of the Protective Order in this matter (Dkt. No. 235), attached please find a meet and confer letter responding to your challenges to Apple's confidentiality designations related to your December 16, 2025 deposition, which you included in an Excel spreadsheet sent to us on February 18, 2026.

**Melinda Riechert**

Partner

Orrick

Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Tuesday, March 3rd, 2026 at 1:11 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:
Hello counselors,

Please see attached for your client's electronic notice of a April 2 2026 court hearing scheduled by Judge Panos, and the associated filing deadlines, regarding the pending Motion for Sanctions against Creditor Apple Inc at the Bankruptcy Court in the District of Massachusetts.

Pillsbury would have received the MAB court's efiled notice earlier today, and Orrick just received an efiled notice in the CAND case. Physical mail copies are also going out shortly.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

On Monday, March 2nd, 2026 at 8:15 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello Melinda,

Thanks for the update. Regarding designations, you already waived your right to contest the NLRA reported items. Your 21 days for all designations ran out in Jan 2026, and your second 14-21 days for these specifically ran out in Feb 2026 (if the Order even applied, which it does not). When I tried to get you to talk about this in Feb 2026, you outright refused and said "there's nothing to talk about". All NLRA tagged items no longer have any designations at all because of, among other reasons, your refusal to meet and confer within the timeline prescribed by the Protective Order, which you claim governs this entire matter -- and the order itself says you never had these designations because the info is public info/already known so not covered at all, and even if you did have designations (which you didn't and don't), you then lost them because you intentionally refused to meet/confer, again.

Its also critical to note that the motion you filed to the court requires the court to adjudicate the designations themselves because the order doesn't apply to public and already known information, especially after a designation is already auto-revoked, so then there's no breach of those terms because the order never applied.

Further, as I emailed you on Feb 4 2026 (below), Apple lost all of its designations because you blew past the 21 days deadline regarding the blanket designation dispute, and you've still refused to serve me designations, or sign or date any, so you never actually made any new designations.  But on Feb 4, I did invite you to still meet/confer regarding any items that Apple earnestly thinks could actually be trade secret or proprietary -- even though it didn't seem like there were any at all, as I noted.

After my willingness to compromise, I'd expect any items you raise prior to your imminent deadline (2 days left after a deposition 2.5 months ago) for those remaining designations should at least be colorably proprietary.  I really don't want to see you arguing the word "hardware" or letter "N" are a trade secret (and those items are assumably also never covered by the protective order because they're literally just general words/letters).

Finally, based on your response, I'm not opening those documents then because your statements are coercive and include unlawful work rules and implied threats arising from my engagement with/response to what you've done and said that I already complained was an NLRA violation. I also object again to your ongoing bad faith conduct and unfair labor practices on behalf of Apple Inc: you have not retracted any prior threats, coercive statements, or work rules -- you have not ceased the ULP despite repeated warnings -- and instead you, on behalf of Apple, continue to take acts against me that are overt and express retaliation, discipline, and intimidation -- all of which is unlawful.

I strongly encourage counsel and its client to come into compliance with relevant regulations and statutes asap.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Monday, March 2nd, 2026 at 7:48 PM, Riechert, Melinda <mriechert@orrick.com> wrote:
Ashley:

We provided copies of the documents lodged under seal ("LUS") at Dkt. No. 293-3, 293-4, and 298. The same documents are filed publicly at Dkt. No. 294, 294-1 at Ex. A, and 294-1 at Ex. B (respectively). Apple filed Dkt. No. 294, 294-1 at Ex. A, and 294-1 at Ex. B in redacted form, and sought to seal portions of those documents, precisely because the designated material remains Confidential under the protective order until the Court rules on any challenges to specific designations. The reason is simple: Apple is not required to publicly file documents that are at present Confidential in order to enforce the Protective Order requiring you to respect those designations while the challenge process plays out (nor would any such requirement make any sense).

None of the material Apple redacted from the public versions of those documents is unknown to you. The material consists entirely of excerpts from your own previous public filings (quoted in the Motion to Enforce Protective Order), your deposition transcript (which you appear to already have in full), and Apple's confidentiality designations (which we provided to you on February 4, 2026). We nonetheless furnished you copies of the LUS versions we provided to the Court to avoid any suggestion that the failure to do so would hinder your ability to respond to the Motion to Enforce Protective Order.

We have no objection to your opening the LUS versions and personally reviewing them for purposes of litigating this case. *See* Dkt. No. 235 ¶ 1 (designated materials protected "from use for any purpose other than prosecuting this litigation"). However, the fact that we have furnished these LUS versions to you for that purpose does not give you the right to publicize the Confidential portions of them (or any quotes or extracts from those portions) to any third-party; the LUS versions cannot be disclosed by the receiving party (you) until the Court has ruled on the administrative motion to seal them and directed the parties how to proceed.  *See also* https://cand.uscourts.gov/cases-e-filing/cmecf-information/e-filing-case-documents ("If your administrative motion is GRANTED in its entirety, the unredacted document remains under seal, and only the redacted version (if any) will be publicly accessible. If your Administrative Motion is DENIED in its entirety, or GRANTED/DENIED IN PART, the Court will alert you whether it will consider the information sought for sealing if filed publicly, permit its withdrawal without considering the information, or otherwise direct your next step.").

Apple disputes any suggestion that the NLRA somehow overrides or voids basic procedural rules that govern litigation in federal court, including those related to protective orders and filings under seal.  *See, e.g., Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 499, 515 (2018). We expect you to abide by the applicable rules and orders governing your federal court litigation against Apple, including as concerns the LUS versions we provided to you.

Finally, I reiterate that Apple is in the process of preparing its responses to your challenges to specific confidentiality designations (which you provided on February 18, 2026) as part of the meet and confer process outlined in Section 6.2 of the Protective Order. If those efforts do not resolve your challenges, Apple will file a motion to retain confidentiality as required by Section 6.3 of that order. You can and will have an opportunity to argue to the Court why you think any or all of Apple's designations are improper; the motion currently before the Court (and to which the LUS versions relate) seeks only to require you to comply with the Protective Order and maintain designated materials in confidence as that process plays out.

**Melinda Riechert**

Partner

Orrick

Silicon Valley
V-
card

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

Orrick

Signature 365 Pixel

[EXTERNAL]

Hello,

I had no way to open those files on PACER. You didn't send them to me until two days after you filed these, which was also two days after my deadline (if you gave me one at all) for opposing your motion -- which was difficult with 2 hours to respond, the motion being incorrectly styled as ex parte, and with me having no visibly to the content filed. It was almost like it was set up to ensure I could see what was filed, or have a way to oppose or complain, or have any say at all since a decision was also requested from the court the next day.

These files assumably contain my social media posts, blog posts, and my NLRB charges (along with cover letters or other supporting documents) -- since you've been saying my NLRB charges, complaints about NLRA violations, and public advocacy about those charges and violations -- are all illegal and your motions about about destroying that PCA, concealing the alleged ULPs, and obstructing my participation in Board proceedings and Board investigations.

So, based on everything else you've done and are doing I have to ask you:

If I open these files, is Apple then going to claim that my already public, known, and filed posts/charges/complaints/etc. are now supposedly "Confidential" because they're now supposedly provisionally filed under seal by Apple?

So, for instance, Apple might say ok so maybe the IPA doesn't restrict this anymore, and maybe Apple got carried away with the Protective Order stuff, however now the content is provisionally sealed so Apple would say that if I share any of that information, or even still refuse to delete it, that I'm now supposed violating some rules/laws about sealed documents too/instead?

If so, I'm not opening that stuff and its all another ULP.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Saturday, February 28th, 2026 at 10:05 AM, Riechert, Melinda <[mriechert@orrick.com](mailto:mriechert@orrick.com)> wrote:

Ashley:

We will send to you via LiquidFiles (a secure transfer service) copies of the lodged under seal ("LUS") versions of Apple's Motion to Enforce Protective Order and Exhibits A and B to the Riechert Declaration in support of that motion.  We are providing these directly to you even though we already submitted them with our filing, in the event you do not have access to the LUS versions via the docket.

The public and LUS versions correlate as follows:

| Document | Public Version | LUS Version |
|---|---|---|
| Motion to Enforce Protective Order | Dkt. No. 294 | Dkt. No. 293-3 |
| Exhibit A to Riechert Declaration in Support of Motion for Protective Order | Dkt. No. 294-1 at Ex. A | Dkt. No. 293-4 |
| Exhibit B to Riechert Declaration in Support of Motion for Protective | Dkt. No. 294-1 at Ex. B | Dkt. No. 298 (correcting Dkt. No. 293-5) |

Order

Of course, these LUS versions contain material (and/or information extracted from material) designated as Confidential under the Protective Order, and thus are subject to the same restrictions on use and publication.

**Melinda Riechert**

Partner

Orrick

Silicon Valley  V-card

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

Orrick

Signature 365 Pixel

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, March 2, 2026 9:58 AM

**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>
**Subject:** Re: Gjovik v. Apple: Records filed under seal

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

------- Forwarded Message -------
From: Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
Date: On Wednesday, February 4th, 2026 at 6:15 PM
Subject: Re: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations
To: Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
CC: Mantoan, Kathryn G. <kmantoan@orrick.com>, Riechert, Melinda <mriechert@orrick.com>, Perry, Jessica R. <jperry@orrick.com>, Horton, Nicholas J. <nhorton@orrick.com>, Booms, Ryan <rbooms@orrick.com>

***Attn: new NLRB charge***

Hello,

I'm removing Talty from this thread and I'm going to ask you one more time to meet/confer with me on this, because you have refused to meet/confer on this, you waited well past the 30-day deadline for substantiating your claims, and the document you sent tonight contains content that violates state and federal law -- including at least labor, whistleblower, consumer, privacy, medical, and professional ethics laws.

Certainly you had to expect that I would complain about Apple claiming my own menstruation, cervical mucus, and sexual activity are "Apple Confidential."

You also must have known that I would be further disgusted to see Apple claim that my complaints about Apple invading my, and my coworkers, privacy rights regarding menstruation, cervical mucus, and the people we choose to have sexual intercourse with in our own homes is also "Apple Confidential" so our complaints about privacy violations by Apple, and Apple's underlying conduct, are somehow secret.

You also know that in my lawsuit and some of the administrative proceedings, I cite these exact topics as protected disclosures, concrete harms/injuries, unfair business practices, and/or work conditions -- and I allege Apple's own conduct is unlawful, harmful, and requiring enforcement action including injunctive relief.

You have refused to even attempt to justify these confidentiality claims, disregarded and refused to comply with the exact process you insisted be put in place and where you had promised confidentiality disputes would be addressed, and instead you have now taken action to formalize and permanently record your client's illegal assertions.

Further, this deposition is about my employment at Apple, my concerns about work conditions and the rights of Apple employees generally, and its partially in response to my claims of unlawful labor practices -- which means that Apple's about to get a new NLRB charge filed against it, arising from your document today.

While NLRB has resisted taking action that could interfere with standard court procedures in this case, here Apple has chosen to refuse to engage with standard court procedures, cut off my access to standard procedures, and is literally claiming in an official legal document that Apple thinks it has some sort of vested business interest and secrecy claim to its employees... genital secretions.

So even an NLRB run by Apple's own lawyer will have a hard time dismissing this one -- unless, maybe if you come to the table and actually participate in this process in good faith.

I stress again, you're not even attempting to offer some nonsense, vague justification for these claims -- you're just refusing to engage in the process completely while concurrently threatening to take unjustified actions to further invade my privacy, interfere with my exercise of my privacy rights and right to bodily autonomy, and to implicitly threaten other employees to not engage in the same protected activity that I did including reporting retaliation and harassment by Apple. That sounds illegal!

So let me know if we do a video call or phone call or something where we can actually at least pretend to meet/confer about this -- or if you're just going sticking to your current path of claiming that Apple has intellectual property rights over their worker's vaginas -- because that's where we're at tonight and its extremely disturbing.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, February 4th, 2026 at 4:39 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:
Apple counsel,

I sent you an email about this a few moments ago (re-adding below) and instead of replying to me, you sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case.

You need to send **me** your claims and then we are to meet/confer about those claims.

Talty Ho is not the Magistrate Judge in our case and will not be deciding the validity of claims.

Once we agree to the claims, then they should be reflected in the transcript -- and you were supposed to do this with me over a month ago.

I ask that  you send me your claims to discuss -- as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this.


—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, February 4th, 2026 at 4:32 PM, Mantoan, Kathryn G. <kmantoan@orrick.com> wrote:

Talty CR Production Team:


I write regarding the deposition transcript we received on 1/7/2026 in this matter.


Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text) for which confidentiality is being asserted.


Plaintiff is copied on this email for notice purposes.


Thank you,

Katie



**Kathryn G. Mantoan**


Attorney

Pronouns: she / her / hers

Orrick

San Francisco | Portland

T +1-415-773-5887

M+1-415-218-4865

T +1-503-943-4870

kmantoan@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Wednesday, February 4th, 2026 at 4:22 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I'm adding Apple to this thread.

Apple's counsel,

We need to complete our review of the transcript, submit any corrections, and ensure that we don't then need more corrections based on the other party's corrections.

We also need to finalize the Confidentiality claims and ensure the record accurately represents those claims including for any exhibits. I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you -- and nothing to actually narrow, define, and substantiate any of your Confidentiality claims.

The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims.

Under the Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now.

However, there's probably at least a few statements/terms that are plausibly Confidential, I am still bound by the lawful/legitimate terms within the NDAs I consented to and signed, and I feel it would be proper to allow Apple to still substantiate the things that may actually be Confidential.

That said, you're already overdue and I need a timeline from you as to when you will be done and to ensure it can still be reflected in this deposition transcript.

I also ask if you're submitting any requests for corrections to this records, and if so, to please share with me what you ask for.

I also need to submit my request for corrections so please let me know if you'd like any process for that other then being cc'd or receiving a copy of what I submit to the Talty team.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

---

**4.93 MB**   6 files attached   3 embedded images

| | |
|---|---|
| Gjovik v Apple - 20260304 - Re Apple's Designations .pdf 1.09 MB | gov.uscourts.cand.417952.302.3.pdf 206.41 KB |
| gov.uscourts.cand.417952.302.2_1.pdf 319.59 KB | gov.uscourts.cand.417952.301.0.pdf 346.73 KB |
| gov.uscourts.cand.417952.302.0.pdf 493.95 KB | gov.uscourts.cand.417952.302.1_1.pdf 2.51 MB |

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# PLAINTIFF'S RESPONSE TO APPLE'S MARCH 4 2026 LETTER

*Ashley Gjovik v. Apple Inc.,* N.D. Cal. Case No. 23-cv-4597-EMC

# I. INTRODUCTION

1. On Dec. 16 2025, during the Defendant Apple's deposition of the Plaintiff, Apple declared a blanket "confidentiality" designation that covered hours of the deposition, which directly violated the Protective Order's terms prohibiting mass designations and requiring all designations be targeted to specific information (not indiscriminate) and be made prior to the end of a deposition. The Plaintiff objected to Apple and demanded Apple narrow its designation. Apple then took fifty days to narrow its designations. Even then, Apple has refused to serve, date, or sign its destinations. Apple also failed to justify any of its designations other than stamping the Plaintiff's own speech as "confidential."

2. The Plaintiff sent Apple objections on Feb. 4 2026 regarding Apple's designations and specific to her complaints about Apple invading employee privacy regarding sexual activity, reproductive anatomy, and genetical secretions – warning Apple she was planning on filing a new NLRB charge if they did not drop those designations. Apple still has not addressed or responded to the Feb. 4 2026 email.

3. On March 4 2026, Apple sent a letter that purports to respond to all of Plaintiff's challenges to Apple's confidentiality designations; however, this letter does not respond to the Plaintiff's objections during the deposition on Dec. 16 2025; detailed meet/confer emails starting Feb. 4 2026; or in the legal filings/charges. Instead, Apple acts as if the Plaintiff made no complaints at all until a Feb. 18 2026 Excel spreadsheet, responds only to some of the text in parts of the spreadsheet, and ignores all other communications as if they were waived.

4. The Plaintiff's Excel spreadsheet was converted from Apple's unsigned, undated, unserved PDF that listed designations in a table format but frequently grouped multiple terms into each line. Even then the table has over 100 lines of designation (~160 if combined terms are separated)– and is exclusively the Plaintiff's own speech. In the March 4 2026 letter, Apple de-designated around 23 lines and failed to respond at all to 53 lines. Apple retained ~29 lines but failed to provide any legal justification for its designations – instead indicating Apple's own policies and practices are an independent justification.

5. The deposition was Dec. 16 2025 and as of March 5. 2026 Apple has failed to respond to all threshold objections; still refuses to serve, date, or sign its designations; has failed to respond to objections for more than half of its supposedly pending designations; and by its own de-designation and waiver, admitted that 99% of its initial designation from Dec. 16 2025 was frivolous (yet kept it in place for fifty days), and then at least ~70% of its "narrowed" designations from Feb. 4 2026 were also improper (yet

kept them in place for a month).

6.    As of today, Apple still refuses to offer any Rule 26(c) good cause for any designation it retains. Instead, Apple mischaracterizes Plaintiff′s objections, refuses to respond to the Plaintiff′s objections, and spends a significant portion of its long-overdue, evasive, three-page letter arguing it was justified in firing the Plaintiff in 2021 and complaining about the Plaintiff′s NLRB charges against Apple.

7.    The designations Apple still claims it retains are exclusively about female genitalia or sexual activity (i.e., cervical mucus, ovulation, menstruation, sexual partners, and cosleepers). Apple′s March 4 2026 Letter de-designated speech about all other user studies (including: yoga,  swimming, eye tracking, grip testing, spinning in chairs, and exercise monitoring). Apple retained ″measuring female employees′ cervical mucus,″ ″ovulation,″ ″registering of people you′re having sexual relations with outside of work,″ ″who I was sleeping with and have them sign NDAs.″

8.    Other than Apple′s perplexing retention of the designation claim that the letter "N" is confidential, the only variable between what Apple de-designated and what Apple retained is whether the content involves female reproductive biology and sexual activity. Apple makes these outrageous claims while Apple concurrently violated nearly every procedural requirement of the Protective Order.

## II. APPLE HAS NO VALID DESIGNATIONS

9.    Apple′s procedural failures are each independently fatal and create a result where Apple has never actually made any valid designations. Apple's failures include:

- Apple never signed its designations as required by FRCP 26(g)(1). Plaintiff objected February 4, 2026, and repeatedly thereafter. Apple still has not corrected this and has offered no explanation why it believes it does not have to comply with FRCP 26(g)(1). Apple also never dated its designations & has not corrected this.
- Apple also never served its designations on Plaintiff — sent to the court reporter ″for notice purposes″ instead. Apple has not corrected this and its only explanation indicated it was sending the designations at the end of the Plaintiff′s thirty-day response period for the deposition transcript draft, assumably in order to then claim the Plaintiff cannot correct/remove their designations from that record. Apple never sent the designations to the Plaintiff, never intended to meet/confer, and only intended to force its unlawful and admittedly improper designations into a formal court record in such a way as to prevent the Plaintiff from opposition or trying to stop them.
- Apple imposed a blanket designation over the entire multi-hour deposition on December 16, 2025, designating every word spoken as ″Confidential″ rather than identifying specific content as PO § 5.2(b) requires. This violated PO § 5.1′s prohibition on ″*[m]ass, indiscriminate, or routinized designations*.″ Apple′s own subsequent narrowing (from every word over multiple hours, to 29 brief retained citations) admits the blanket designation was indiscriminate. PO § 5.1 provides that such designations ″*expose the Designating Party to sanctions*.″
- Plaintiff challenged the blanket designation on the record at the deposition and in subsequent communications. The transcript was delivered January 7, 2026. Under PO § 6.3, and Apple had 21 days to file a motion to retain its blanket confidentiality but Apple filed nothing. Thus, the blanket designations automatically waived on January 28, 2026. Apple then sent narrowed designations on February 4 (unsigned, undated, served on the court reporter not the Plaintiff) — which Plaintiff immediately challenged. Those designations, if valid at all, auto-waived on February 25, 2026. Yet, Apple filed its Motion to Enforce (Dkt. 294) on February 26 (one day after the second auto-waiver).

Apple′s March 4 letter now arrives five weeks after the first auto-waiver and one week after the second, de-designating all prior designations other than the ones currently underlying its pending motions and the Plaintiff's NLRB charge, as well as the letter "N."

- Apple has never complied with PO § 6.2′s voice-to-voice dialogue requirement despite repeated requests. Apple also delayed, obstructed, and still refused to meet/confer about these issues – in direct violation of this court′s February 20 order.
- Apple has had months to correct any of these. Apple chose not to.

Despite the above, Plaintiff has repeatedly offered good-faith engagement on anything colorably proprietary — in filings, emails, and at the February 20 conference. Apple′s response was to withdraw most designations and retain only those Plaintiff expressly identified as unlawful (and the letter N).

# IV. APPLE FAILS TO RESPOND TO & MISCHARACTERIZES PLAINTIFF′S OBJECTIONS

10.     Apple′s letter fails to respond to ~55 designations including internal codenames, general hardware terminology, and non-sexual study descriptions (telephony, spinning, eye tracking, grip testing). Apple did not de-designate these but also did not retain them and Apple provided no response at all.

11.     Apple then asks Plaintiff to *"advise if you agree to the narrowed list of designations set forth in this letter, or if you continue to challenge any or all of Apple's designations (and, if so, which ones)."* Apple converts its own failure to respond into a burden on Plaintiff to re-challenge designations Apple was required to address. Under PO § 6.2, upon receiving a challenge, Apple must *"explain the basis for the chosen designation."* Apple′s failure to respond to over half the challenged designations is a failure to meet that obligation. Apple cannot manufacture consent through its own default.

12.     Apple responds only to the Excel spreadsheet. Plaintiff′s objections are documented across emails, motions, complaints, filings, the deposition transcript— all received by Apple and many cited by Apple in its own letters and emails. Yet, Apple ignores the Plaintiff′s arguments in these filings while simultaneously citing them (including the NLRB charge and cover letter) as a Protective Order violation — meaning Apple has read it and knows the objections in it yet is still refusing to engage substantive with the objections and still refusing to provide a justification for its designation.

13.     Apple′s letter creates its own categories — "Code Names," "Industry Terminology," "Internal Studies" — and assigns Plaintiff′s objections to them. Plaintiff did not make those categories. Apple collapsed the Plaintiff′s objections into Apple-defined buckets, responded to arguments Plaintiff did not make, and refused to respond to arguments the Plaintiff did make. For example, Apple treats all study-related designations as a single "Internal Studies" category and responds as if the only objection was the NLRA — ignoring that Plaintiff separately raised objections regarding public information (the studies are publicly known) and public brand names (Beddit).

14.     The PO expressly does not apply to *"any information that is in the public domain"* or *"known to the Receiving Party prior to the disclosure."* PO § 3. The PO also places the burden on Apple. PO § 6.2-6.3 requires Apple to *"explain the basis for the chosen designation."* The basis must arise from "applicable legal principles" beyond the designation itself, per PO § 1. Apple must independently substantiate each designation. Apple has not done this for any of its designations – even the ones it claims to retain now..

# V. APPLE'S LETTER ADMITS PRIOR VIOLATIONS & CREATES NEW ONES

15.     Apple narrowed from blanket designation of most of the deposition, to ~160 designations, then down to approximately 29 retained citations. This drastic narrowing admits Apple's designations have been improper and indiscriminate under PO § 5.1. Apple's remaining designations and the limited justification for those designations also admits Apple had an improper purpose from the start and all of this conduct was for the purpose of concealing, obstructing, and silencing the Plaintiff's complaints about work conditions, Apple's unfair business practices, and Apple's unethical exploitation of employee personal data for commercial purposes – something increasingly regulated by California.

16.     Apple's March 4 2026 treatment of 165:13-24 is particularly telling. Apple de-designated only: "*and I found that very disturbing*" but Apple retained everything else. Once you remove the de-designated expression of distress and the other content Apple conceded is not confidential elsewhere (sensors, vitals, monitoring), what Apple is actually retaining is: "*Apple asked for NDAs of any cosleepers. So if you were to ever have anyone over like if you were dating and wanted to have sex with them or they're going to sleep in your bed, they had to get registered with Apple and sign an NDA for the product if they were to be there.*" Apple retained the employee's disclosure about what she believes to be unethical and unlawful conduct, and concealed that the nature of the issue is private sexual sexuality.

17.     Apple's letter also says it retains "N" (2 designations: 197:18, 197:21). because "in context, this testimony relates to the meaning of the letter within Apple's internal code names." So Apple treats "N" as a code name component. But Apple de-designated or abandoned every other code name and code name component— and all hardware development terminology. Plaintiff offered to allow redaction of all codenames as a courtesy, yet Apple retains the letter "N" —— while abandoning every substantive codename.

18.     Beddit is a product Apple acquired in 2017, marketed, and sold publicly to consumers — not a pre-release or unreleased product.[1] It shipped, had a brand name, and customers bought it. It is publicly known. Apple likely wants the name redacted precisely because it identifies a shipping product, not a secret one — revealing that the studies at issue involved existing commercial products, not unreleased prototypes. (Beddit: 6 designations: 166:4, 166:14, 167:17, 168:19, 169:1, 169:10). But a public product name cannot be designated confidential under PO § 3 (excluding "information that is in the public domain"). Apple offers no Rule 26(c) basis despite repeated demands for it to do so.

19.     Apple also failed to provide a list of what designations it claims it retains but a manual cross-check indicates that it appears Apple' remaining designations are:

- "cervical" / "cervical mucus" / "mucus" / "cervical mucus secretion" / "measuring female employees' cervical mucus" / "my cervical mucus" / "cervical mucus menstruation" (7 designations: i6, 164:10-11, 164:15-16, 170:9, 226:4, 236:14-15, i20 partial)
- "ovulation" / "ovulation study" (5 designations: 164:10-11, 164:14, 164:25, 169:25, i22)

---

[1] CNET, *Apple buys Beddit, maker of sleep-tracking device: The $150 device fits between your sheet and mattress to measure such things as total sleep time, resting heart rate and respiration rate.*, May 9 2017, https://www.cnet.com/home/smart-home/apple-buys-sleep-tracking-device-maker-beddit/

- "menstrual" / "menstruation" (3 designations: 176:16, i20 partial, 226:4 partial)
- *"registering of people you're having sexual relations with outside of work"* / *"who I was sleeping with and have them sign NDAs"* / *"of people I was sleeping with"* / "cosleepers" (4 designations: 166:1-2, 226:1, 226:3, i8)
- "sex" / "sexual" / "sensors" (1 designation: i28)
- "period; bed" (1 designation: 205:17)
- Beddit sleep study passage including cosleepers, dating, sex, registering partners (1 designation: 165:13-24, minus *"and I found that very disturbing"*)
- "Beddit; sleeping" (1 designation: 225:25)
- "B-E-D-D-I-T; Beddit" in index alongside sex-related terms (1 designation: i5)

20.    Apple's letter states the retained material is the Plaintiff's "*characterization of the content, methods, and processes of certain internal Apple product-related studies.*" But the de-designated testimony is also the employee's characterization of internal studies — characterizing what the studies involved (sensors, vitals monitoring, exercising in Apple's lab), what the employee was asked to do (spin in chairs, hold phones, track eyes), and the general purpose. Apple de-designated all of those characterizations. ("*go to yoga or running or swimming where they wanted to strap a bunch of sensors on me and, like, monitor all my vitals while I was, like, exercising in some Apple lab.*" designated 161:6-9).

21.    The only characterizations Apple retained involve cervical mucus, ovulation, menstruation, sexual partners, and cosleepers. Apple's own stated justification ("characterization" of studies") does not distinguish between what Apple retained and what Apple abandoned. The only distinguishing factor is the sexual content, which claims are also the subject matter of the pending NLRB charge, and Apple's subsequent motion to "Enforce the PO" in retaliation for the NLRB charge and Plaintiff's complaints.

# VII. APPLE PROVIDES NO RULE 26(c) GOOD CAUSE

22.    PO § 2.2 defines "CONFIDENTIAL" as information "that qualifies for protection under Federal Rule of Civil Procedure 26(c)." The Ninth Circuit requires that any confidentiality claim requires "good cause" showing under Fed.R.Civ.P. 26(c) and warns that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986). Facing a request for disclosure, its inadequate for the Designating party to simply rely on a blanket Protective Order without any showing of "good cause" *Olympic Refining Company v. Carter,* 332 F.2d 260, 264-65 (9th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964).

23.    "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. United States Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir. 1999). "Rule 26(c) only authorizes a district court to override this presumption where `good cause' is shown." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Claims of confidentiality include actual "trade secret or other confidential research, development, or commercial information." Id; Fed. R. Civ. P. 26(c), 26(c) (7).

24.    A conditions precedent for Court granting a protective order requires that the party seeking to make something confidential, must make "particularized showing of good cause with respect to any individual document." *San Jose Mercury News, Inc.*, 187 F.3d at 1102. "If good cause is not shown, the

discovery materials in question should not receive judicial protection and therefore would be open to the public." *In re Agent Orange Product Liability Litig.,* 821 F.2d 139, 145 (2d Cir. 1987). Even if there is a showing of particularized harm, the Court may still deny a protective order based on a balancing of public and private interest. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

25.     *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) explains that "the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court. This common law right of access to inspect various judicial documents is well settled in the law of the Supreme Court and this circuit." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

26.     This common law right, as described in *Phillips ex rel.,* "creates a strong presumption in favor of access" to judicial documents which "can be overcome" only by showing "sufficiently important countervailing interests." *San Jose Mercury News, Inc.*, 187 F.3d at 1102; *see also Hagestad*, 49 F.3d at 1434. "In deciding whether sufficient countervailing interests exist, the courts will look to the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets'." *Tragesser*, 49 F.3d at 1434. The burden is on the party seeking to protect information to make a particularized showing. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

27.     Apple provides: no trade secret identification, no competitive harm, no case law. Apple cites one citation which was to *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018) — an FAA/NLRA case about class-action waivers in arbitration, not about protective orders or confidential information, and inapposite. Apple's sole justification thus far is: the material is the Plaintiff's "characterization of the content, methods, and processes of certain internal Apple product-related studies." This is a description, not a showing. What is the trade secret in "cervical mucus"? What competitive harm results from "ovulation"? What proprietary interest is served by "registering of people you're having sexual relations with outside of work"? How are public information, personal experiences, and complaints about work conditions confidential? Apple has had months to answer these questions and still refuses.

# VIII. APPLE'S OWN FILINGS CONTRADICT ITS POSITIONS

### INTERROGATORY SET 1: APPLE USED CODE NAMES FOR THE STUDIES IT SAYS JUSTIFIED TERMINATION — THEN DIDN'T DESIGNATE THEM.

28.     In response to Interrogatory No. 1 asking for Apple's "complete and formal reason(s) for terminating" Plaintiff, Apple stated (Orrick, August 4, 2025, verified under penalty of perjury by Apple HR Director Megan Bowman and Melinda Riechert): "To safeguard Apple's confidential information, the study is referenced as 'Alpha' for purposes of this response" and "to safeguard Apple's confidential information, the study is referenced as 'Omega' for purposes of this response." Apple described the "Alpha" and "Omega" studies in detail — how they worked, the consent forms, the confidentiality requirements, and how Plaintiff's disclosures about them led to termination. One year ago, Apple treated these studies as

the confidential information requiring pseudonyms to protect.

29. Apple′s Interrogatory Set 1 response states: ″On August 28, 2021, Plaintiff tweeted details about a separate proprietary study Apple was conducting, the ′Omega′ study... Plaintiff′s tweet both identified the name and purpose of the study regarding an unreleased product under development.″ Apple added that ″on August 30, 2021, Plaintiff tweeted photographs of herself created by the Alpha application, thus again disclosing confidential Apple product information.″ Dkt. 280 fn. 2 states: ″it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place.″

30. Then, at the December 16 2025 deposition, these same studies — Gobbler (Apple′s ″Alpha″) and the ear scan studies — were discussed extensively and Apple did not designate a single line of that testimony as confidential. Apple did not even maintain the pseudonyms — the studies were discussed by name with no designation. Apple claims this information was so secret that sharing it justified it in terminating the Plaintiff′s employment – then Apple didn't designate it at all. But in 2026, Apple did designate the employee′s testimony about cervical mucus, ovulation, and sexual partners as confidential and sent multiple letters/motions/emails indicating it would have fired the Plaintiff for talking about these topics as well, but not designating the content it says it did fire the employee over.

31. It's well established that Apple conceals complaints and retaliates against workers who complain about work conditions or organize to improve work conditions. That appears to be Apple's only basis for any of these confidentiality claims – Apple insists its misconduct is secret and that complaints about Apple's wrongdoing is misconduct, assumably because it exposes that Apple's public claims about those same business practices are false and misleading. [2]

32. In its discovery response, Apple admits the Verge article about the Gobbler study was published (RFA No. 17: Apple admits ″the article features an embedded video composed of, among other things, images showing Plaintiff′s face (or parts of her face) and parts of her upper body″ and ″admits that the images were captured on Plaintiff′s phone by an application that has been called Gobbler″). Apple admits it was contacted for comment before publication and did not respond or send a cease-and-desist (RFA No. 20: ″Apple admits that a reporter from the Verge reached out to an employee at Apple ′for comment′ prior to the publication of the article... and that Apple did not provide a comment prior to the

---

[2] NYT, *Regulators Find Apple's Secrecy Violates Workers' Rights: After a yearlong investigation, a federal labor board determined that the tech giant's rules interfere with employees' right to organize.* Jan. 31 2023, https://www.nytimes.com/2023/01/31/technology/apple-workers-rights.html; HR Grapevine, *Apple faces Federal complaint for silencing workers through confidentiality policies,* Nov. 5 2024, https://www.hrgrapevine.com/us/content/article/2024-11-05-apple-faces-federal-complaint-for-sliencing-workers-through-confidentiality-policies; HRD Magazine, *Apple drops gag orders for employees talking harassment, discrimination,* Dec. 15 2022, https://www.hcamag.com/us/specialization/employment-law/apple-drops-gag-orders-for-employees-talking-harassment-discrimination/430851; Engadget, *Report: Apple retaliated against women who complained about misconduct: Its corporate culture is at odds with the image it presents, multiple women said.,* Aug. 4 2022, https://www.engadget.com/report-apple-retaliated-against-misconduct-victims-094505393.html; PASTE, *Apple Reportedly Lied in Recent Memo about NDAs and Silencing Employees,* Nov. 23 2021, https://www.pastemagazine.com/tech/apple/apple-lied-in-recent-memo-silences-employees; Business and Human Rights Centre, *Apple employees raise concerns company does not protect and at times invades their personal privacy*, Aug. 30 2021, https://www.business-humanrights.org/en/latest-news/apple-employees-raise-concerns-company-does-not-protect-and-at-times-invades-their-personal-privacy/; etc.

publication of the article").[3]

33.     Apple claims Gobbler disclosures were confidential and they justified termination. Yet, Apple did not send a cease-and-desist when it had the chance, did not respond when asked to comment on an article characterizing Apple's explanation as "absurd,"[4] and did not designate Gobbler testimony at the deposition. Apple designates cervical mucus and sexual partners under the same IPA theory. If the product studies are what's confidential — as Apple says under oath — then the employee's complaints about different topics are not.

34.     Further, Plaintiff's Fifth Amended Complaint alleges (¶ 158): "*Apple frequently requested that Gjovik and her coworkers participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA tests, biometrics data collection (like the Gobbler app), and other highly personal examinations.*" (Dkt. 142). Apple's answer was that: "Apple lacks knowledge or information sufficient to admit or deny the allegations and on that basis denies them" (Dkt. 218). Then, Apple simultaneously describes the same studies in detail in Interrogatory Set 1, claims no knowledge in responses to Requests for Admission, and designates testimony about them as confidential. Apple cannot lack knowledge about studies it describes under oath and designates as its confidential property.

35.     Apple told this court (Dkt. 224, p. 11): "Gjovik's claims and Apple's defenses are fact intensive, and those facts need to be developed through discovery, both oral and written." He said the claims and defenses are "so intertwined" they cannot be separated. Apple then designates the employee's deposition testimony about these facts as confidential under the theory that these facts also represent things it would fire the Plaintiff for disclosing like it did with the Gobbler and ear scan issues. Yet, Apple also refused to answer Interrogatory Set 3 questions about "Plaintiff's Disclosures concerning Privacy" — the exact subject Apple now claims justifies the designations.

36.     Apple's affirmative defenses repeat: "Plaintiff disclosed confidential product-related information in violation of Apple policies and her obligations under her Intellectual Property Agreement." But Apple refuses to identify which policies, which provisions, or which specific conduct violated which specific term. The court noted Apple would need to produce policies in initial disclosures (Dkt. 234). Apple has not — and Apple refuses to provide any further information – while Apple does designate Plaintiff's testimony as confidential assumably based on those unproduced, unidentified policies.

37.     The sex-based content Apple retains corresponds to the content Apple cited in its Motion to Enforce (Dkt. 294) and Motion to Seal (Dkt. 293). If Apple de-designated this content, those motions would be moot — Apple would be seeking sanctions for disclosing content Apple itself concedes is not

---

[3] The Verge, *Apple cares about privacy, unless you work at Apple: The company has taken a strong stance on safeguarding its customers' data — but some employees don't believe it protects theirs,* Aug. 30 2021, https://www.theverge.com/22648265/apple-employee-privacy-icloud-id

[4] Gizmodo, Apple Wanted Her Fired. It Settled on an Absurd Excuse: The reasons for firing Ashley Gjøvik include tweeting a photo of herself—taken by her own phone., Oct. 14 2021, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789 ("Late in the evening on Sept. 15….a letter popped up in her inbox. It was from a high-powered law firm, O'Melveny & Myers LLP…. It didn't point to any sensitive documents… The information it contained wasn't new. Nor was it particularly newsworthy. Had it been anything otherwise, one of the dozens of reporters following Gjøvik would've noticed…the emails shared publicly by Gjøvik were neither labeled confidential nor contained anything that could be considered secret or otherwise proprietary…The posted image of the email merely noted what was already known to the public…Apple did not respond to a request for comment.")

confidential. Apple maintains the designations not because the content is secret but because withdrawing them collapses the pending motions and admits to the NLRA violations.

38.    Maintaining designations to support litigation rather than to protect legitimately confidential information is an improper purpose under PO § 5.1: designations "made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions."

39.    However, Apple's defense to this is even worse—that its intentionally claiming employee complaints about Apple regarding sexual harassment, bodily autonomy, invasion of privacy, and the employer studying employee vaginal secretions and sexual activity is all "confidential" even if the study consists of otherwise public information – if the employee complains about Apple's conduct, then the complaint and underlying facts become "confidential" per Apple. This is Apple's MO for years.

## Judicial Estoppel; and Orrick v Morgan Lewis

40.    Morgan Lewis filed Apple's Answer to the NLRB Amended Complaint on November 21, 2025, denying every substantive allegation. Morgan Lewis denies Apple "directed employees to refrain from talking about workplace environmental health and safety concerns with other employees" (response to ¶ 5). Morgan Lewis denies Apple told employees to use a "five-point balancing test in advance of communicating workplace health and safety concerns" (response to ¶ 6(a)). Morgan Lewis denies Apple told employees "to refrain from discussing their terms and conditions of employment" (response to ¶ 6(c)).

41.    Orrick's designations and this letter impose exactly those restrictions: don't discuss workplace studies publicly, don't characterize Apple's internal practices, don't share complaints about what Apple did to your body. Morgan Lewis denies to the NLRB that Apple makes these rules. Orrick enforces them in this court. Morgan Lewis's defenses also include that Apple's statements "contain no threat of reprisal or force or promise of benefit" (Defense 5, citing Section 8(c) of the NLRA). Orrick's conduct — sanctions threats, gag orders, case dismissal — is threats of reprisal. Morgan Lewis's own defense framework defeats Orrick's conduct.

42.    Apple's counsel (Riechert/Orrick) told the court in the January 6, 2026 Joint Case Management Update (Dkt. 269, p. 10): "On September 25, 2025, the NLRB (Case No. 32-CA-282142) dismissed certain allegations from the complaint, including all allegations that Defendant suspended and terminated Plaintiff for engaging in protected concerted activities; Plaintiff appealed this dismissal on November 21, 2025. No hearing has occurred with regard to the remaining allegations, and there have been no findings of fact or legal conclusions relating to those allegations."

43.    Apple's March 4 letter states: "the NLRB has already determined that your revealing 'confidential product development information about [an Apple] study' is not 'protected activity' under the NLRA." Apple told the court: no findings, dismissal appealed. Apple now tells Plaintiff: the NLRB has "determined." Apple is judicially estopped from representing a non-final, appealed GC dismissal — which its own counsel confirmed is on appeal and has no "findings" — as a Board "determination."

44.    Further, Plaintiff did not cite Case 32-CA-282142 in her designation objections. Apple introduced it. Having opened that door: the partial dismissal Apple cites addressed revealing "confidential product development information about [an Apple] study." Apple's retained designations are not product development information — they are cervical mucus, ovulation, and sexual partners. Yet, Apple again

bases its designations on its similarly unsubstantiated claims it was justified in terminating the Plaintiff's employment – which also refusing to provide any factual or legal basis for that argument.

45.   The still-active NLRB amended complaint in that same case retains allegations that Apple violated Section 8(a)(1) by directing employees to refrain from discussing workplace health and safety concerns (¶ 5), telling employees to use a five-point balancing test before communicating workplace concerns (¶ 6(a)), and telling employees to first communicate concerns directly with Apple before discussing them (¶ 6(c)). Orrick's designations and this letter impose those same restrictions. So, Apple (via Morgan Lewis) is trying to settle those claims while Apple (via Orrick) is committing the same violations, admitting they are doing so, but now claiming its lawful and appropriate for them to do so.

# X. APPLE'S CONDUCT VIOLATES APPLICABLE LAW, THE PROTECTIVE ORDER, & COURT RULES

46.   Apple's March 4 2026 letter, Feb. 18 Letter (Dkt. 280 fn. 2), emails, and the February 20 conference confirm the Plaintiff's mostly defunct IPA is Apple's only basis for designation. Apple provides no independent Rule 26(c) justification, violates the requirements of the Protective Order Apple insisted upon having ordered in this case, and refuses to engage in meaningful meet/confer.

47.   The use of the IPA to justify any confidentiality claim for this subject matter is prohibited by at least: the April 2025 NLRB settlement (requiring rescission); the Speak Out Act, Pub. L. 117-224 (2022) (voiding pre-dispute NDAs preventing speech about sexual harassment)[5]; the STAND and Silenced No More Acts, Cal. Lab. Code § 1001 (prohibiting enforcement of agreements preventing disclosure of unlawful workplace acts)[6]; and more.  Further, the bankruptcy automatic stay also prohibits the pending motion for sanctions (hearing before Judge Panos, April 2, 2026, Dkt. 299).  These arguments are set forth in detail in Plaintiff's prior filings, NLRB charges, emails, and other communications to Apple on this matter and are incorporated by reference.

48.   As of March 4 2026, Apple has now de-designated every user study-related term/phrase unrelated to genitals and sexual activity (involving de-designating exercise, grip testing, eye tracking, and physical activity monitoring). Apple retained every designation involving cervical mucus, ovulation, menstruation, sexual partners, and cosleepers. The only variable is whether the content involves female reproductive biology and sexual activity. Apple provides no Rule 26(c) justification for any retained designation.

49.   Under Title VII and FEHA, unwelcome conduct of a sexual nature creating a hostile environment constitutes sexual harassment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993); Cal. Gov. Code § 12940(j). Courts have found harassment where employers made "offensive, explicit references to women's bodies and sexual conduct," *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994); comments about women's bodies and references to genitalia, *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 539-40 (2d Cir. 2010); "comments on the breasts,

---

[5] Pub. L. No. 117-224, 136 Stat. 2290 (2022) (codified at 42 U.S.C. §§ 19401–19404).
[6] 2018 Cal. Stat. 6262 (codified as amended at CAL. CIV. PROC. CODE § 1001. Stand Together Against Non-Disclosure (STAND) Act, See CAL. CIV. PROC. CODE § 1001(a) (West 2024).

buttocks, and physical appearance of individual women," *Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1373 (9th Cir. 1990); and repeated close examination of female employees' bodies, *EEOC v. R&R Ventures*, 244 F.3d 334, 339 (4th Cir. 2001).

50.    The DOJ confirms "asking about a person's sexual preferences" violates Title VII. The EEOC confirms examples of retaliation for employee's opposing sexual harassment includes the employer "filing a civil action," "work-related threats, warnings, or reprimands," "increase scrutiny," and "make the person's work more difficult." All of this is happening here now. NDA's concealing sexual harassment "silence and isolate victims but also enable wrongdoers to continue their behavior without accountability."[7] NDAs used to conceal sexual harassment and misconduct, rather than trade secrets, are a corporate "weapon used to benefit the powerful and corrupt and gag victims."[8]

51.    This is one reason the legislative history of the STAND Act explains it prohibits an employer from requiring an employee to sign a nondisparagement agreement … denying the employee the right to disclose information about those acts." S.B. 331, 2021-2022 Leg., Reg. Sess. (Cal. 2021). The law applies retroactively to all prior NDAs including the one the Plaintiff signed with Apple. Under California's STAND and Silenced No More laws, an employer like Apple is barred from the enforcement of any pre-lawsuit NDA preventing individuals from seeking help or speaking out about illegal workplace misconduct involving sexual assault and harassment – which is exactly what Apple claims its justification for confidentiality is here. S.B. 331, 2021-2022 Leg., Reg. Sess. (Cal. 2021).

52.    The Speak Out Act is an "enacted public law" that "specifically inhibits courts from enforcing nondisclosure clauses or non-disparagement clauses that are entered into before the occurrence of a sexual assault or harassment dispute." Speak Out Act, S. 4524,117th Cong. (2022).[9] The Act "precludes the court's enforcement of blanket NDAs regarding allegations of sexual assault and harassment." [10]

53.    Apple is waging their entire PO enforcement campaign (Feb.–March 2026, with four+ motions, dozens of M&C refusals, sealing demands, gag orders, sanctions threats, and this letter ) about a female employee's vaginal discharge, menstrual cycle, ovulation, and sexual partners. Apple refuses to substantiate why any of this is confidential but demands the employee justify why Apple should not be permitted to designate her reproductive and sexual information as Apple's property. This inverts the PO's burden (§ 6.3) and compounds the violation with each communication.

54.    This is also sexual harassment of the Plaintiff. The decision-makers are predominantly male. (Lead counsel in the NLRB cases are men (2+ men with Morgan Lewis, 2+ men with MWE), lead counsel for OMM was a man, lead counsel with MoFo is a man, Apple's CEO and executive teams are

---

[7] See, e.g., Stephanie Russell-Kraft, *How to End the Silence Around Sexual Harassment Settlements*, THE NATION ( Jan. 12, 2018), https://perma.cc/6H27-57C2 ("[Secrecy] leaves other employees vulnerable to harassment by repeat perpetrators, and deprives the public of information about how widespread the problem of workplace harassment is.")

[8] Johanna Shinners, *Safeguarding Silence: The Weaponization of Nondisclosure Agreements and the Need for More Regulation,* 25 Marq. Ben & Soc. Welfare L. Rev. 229 (2024).

[9] Elizabeth A. Lalik et al., President Biden Enacts Speak Out Act Curtailing the Use of Pre-Dispute Non-Disclosure and Non-Disparagement Clauses Involving Sexual Assault and Harassment Claims, LITTLER MENDELSON P.C. (Dec. 12, 2022),

[10] Johanna Shinners, *Safeguarding Silence: The Weaponization of Nondisclosure Agreements and the Need for More Regulation,* 25 Marq. Ben & Soc. Welfare L. Rev. 229 (2024).

almost entirely men, and noticed counsel in this case also includes a man (Ryan Booms).  Regardless of the nature of the proceeding, all of Apple's counsel have made personal attacks against the Plaintiff in the cases and outside the proceedings (harassing her on social media about her body, accusing her of misconduct, bullying her about her appearance, etc.).

55.     While it's a woman currently sending these communications (Melinda Reichert), behind her is an army of male executives and legal counsel, and they're all claiming Apple has an inherent right to study employee vaginas and private sex acts, and the Plaintiff's opposition and complaints to this are secret and misconduct by the Plaintiff. After the Plaintiff complained in an NLRB charge that Apple "doesn't own her vagina" and can't claim any rights or ownership to employee genitals, Apple filed a motion for sanctions against the Plaintiff, wanting the filing sealed, and the Plaintiff gagged and bound by the court.

56.     This case already alleges sex-based harassment during Plaintiff's employment — including supervisors who discriminated based on sex and created a hostile work environment with sexual harassment, among many other issues (Fifth Amended Complaint ¶¶ 72-74, 242-243). Apple's current litigation conduct seeks to conceal and normalize the prior abuse and unlawful conduct through a "protective order." Apple seeks to use this PO to strike, dismiss, or otherwise nullify the Plaintiff's pleaded complaints in this litigation about these very issues – in addition to obstructing NLRB and other agency proceedings.

57.     Apple's conduct also directly violates the same Protective Order. For instance,

- PO § 1: The order "does not confer blanket protections" and extends "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." Apple has demonstrated entitlement under no applicable legal principle.
- PO § 3: Protections "do not cover" information "in the public domain" or "known to the Receiving Party prior to the disclosure." The designated content is public in the Fifth Amended Complaint, Judge Chen's orders (Dkts. 73, 112), the Verge article, NLRB filings, and press coverage.
- PO § 5.1: Mass and indiscriminate designations are prohibited and sanctionable. Designations made for improper purpose are sanctionable.

58.     Apple's conduct has also violated the FRCP including FRCP 26(g)(1) because discovery responses must be signed and Apple refuses to sign these designations. The signature is to certify the filing is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Apple's designations are unsigned — and if signed, would violate this certification.  The context (including the Feb. 4 2026 email) shows that Apple is refusing to sign these designations because Apple knows the designations are not legitimate and the serving attorney could face sanctions. Yet under FRCP 26(g)(3), sanctions are mandatory for 26(g)(1) violations, which includes their intentional refusal to sign, date, or serve the designation.

59.     Apple also violated the Court's Professional Conduct Guidelines with this misconduct including  their refusal to practice with "honesty, care, and decorum" (Civil L.R. 11-4(a)), to be free of "prejudice and bias" Civil L.R. 11-4(b); using, inquiring, and threatening to use "facts about the private lives of any party… for the purpose of gaining an unfair advantage" Guideline 17 (Privacy); and "engaging in conduct that exhibits or is intended to appeal or engender bias against a person on account of that person's . . . sex." (Guideline 18).

60.    This list is not all inclusive – Apple violated too many rules, laws, and policies to count here – but the first step is for Apple to simply follow the basic requirements of the FRCP, Local Rules, and Protective Order – which it is still refusing to do nearly three months after the deposition.

# XI. CONCLUSION AND NOTICE

61.    Apple's letter fails on every level. Apple has no valid designations. Apple failed to respond to over half the challenged designations. Apple provides no Rule 26(c) good cause for any retained designation. Apple's 29 retained designations consist of: one code name component retained as apparent pretext (the letter "N," 2 designations), a public brand name (Beddit, 6 designations), and worker complaints about corporate misconduct related to female employee reproductive biology and sexual activity (21 designations).

62.    Apple de-designated every non-sexual user study characterization and retained every sexual one — while claiming its basis is the employee's "characterization" of studies, admitting to animus about workplace complaints. Apple maintains these designations to avoid mooting its pending sanctions motions, not to protect confidential information. Apple's conduct violates the PO, the FRCP, this court's Professional Conduct Guidelines, Title VII, FEHA, the Speak Out Act, the Silenced No More Act, the NLRA, the April 2025 settlement, and many other legal protections, rules, and restrictions.

63.    Apple needs to follow the rules – and so far Apple continues to intentionally defy those rules instead. I reserve all rights and arguments, including those set forth in my prior filings, emails, and communications.

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March. 5 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBITS

## EXHIBIT A:
### PLAINTIFF'S FEB. 4 2026 EMAIL

# RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
|---|---|
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com> |
| Date | Friday, February 6th, 2026 at 3:10 PM |

Hello counselor,

During the deposition you provided a number of exhibits you had not previously produced (I noted this expressly on the transcript itself for one of them) and you still have not produced those documents outside the deposition, and I don't think sending them via chat during a deposition is production either -- so there is no prior designation for those documents.

In fact, this deposition was the very first time you sent any documents to me designated confidential. So it appears if anything that you changed multiple prior designations from not-confidential to now make claim they are confidential when they were not prior, but your only documentation about this is a stamp on the new record, that wasnt even produced -- just sent via chat, and nothing is noted in your confidentiality claim document.

As noted prior, the Protective Order said that confidentiality designations were due at the deposition itself -- so you should have made your designations for any actual confidential claim during the deposition itself -- not as a blanket claim. You should have done the per item targeted claims at that time -- your delay waiting for the transcript was only because you violated the order's instructions during the deposition.

Also, as I said, I will follow the Orders process for challenging when you actually serve me your designations, in a doc that's signed and dated, with complete information for your claims (like including any exhibits you're making claims about).

Your response still refuses to actually directly send me a document with your claims thats signed and dated -- the only thing you sent was to a third party and you expressly said it wasn't sent to me -- still.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, February 6th, 2026 at 2:46 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,

Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do.

The Protective Order requires Apple to designate portions of the transcript as confidential on the record. *See* Dkt. No. 235, ¶ 5.2(b). Apple did so.

During the deposition I also told you that Apple would be willing to review the transcript upon receipt to narrow its confidentiality designations and you agreed to that process and thanked me. *See* Dep. Tr. 141:17-142:8; *see also* 343:14-344:8 (you confirm the parties will work through the confidentiality issues after receipt of the transcript). A party has thirty days after receiving the transcript to make or narrow confidentiality designations because the transcript is not final until the witness's time for correcting the transcript has expired. Here, Apple did not receive the transcript until January 7, 2026. Before then, it was impossible to narrow the confidentiality designations because Apple did not have a copy of the transcript to review. Per our agreement on the record, Apple reviewed the transcript and substantially narrowed its designations from the portion designated confidential on the record. Apple provided those designations to the court reporter and you on February 4, 2026, two days before your deadline to make corrections to the transcript. Nothing else is required from Apple.

As to exhibits marked at the deposition, they retain the same designation as when they were produced. We have not modified any prior designations.

If you want to challenge the remaining confidential designations that Apple has made, please follow the process set forth in paragraph 6.2 of the Protective Order by identifying the specific designations you are challenging and "explain[ing] the basis for [your] belief that the confidentiality designation was not proper." Apple will then review your challenge(s) and respond.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com



.

[EXTERNAL]

You haven't responded so just food for thought here but you could make your client sign it. I assume their legal HR team are the ones behind these truly cutting edge and innovative designations anyways so maybe make them be the ones to put their names on it. But someone does need to sign it.

If I don't hear back the objections will treat all exhibits marked as confidential as Apple saying the entire document is confidential even if it includes protected disclosures, protected activity, or evidence of misconduct by your client and I will respond accordingly.

I will also have specific objections to Apple & its counsel's outright refusal to 1) sign or 2) date the document or 3) serve it to me directly or 4) answer my questions about exhibits and 5) send it six weeks after the deadline following the 6) use of blanket designations  w/ duration based blank check confidentiality claims 7) immediately following me exercising my labor rights under the NLRA and 8) them applying that blanket designation to my protected statements and 9) letting it marinate as an illegal gag order for six weeks before finally narrowing it at all.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 9:08 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> The order said you had to finalize your designations by the end of the depo and you did not do that -- instead you waited six weeks. You also still haven't served me anything signed/dated with your designations so you're not done here.
>
> I'm asking you again to send me a signed/dated version of your designations since you're sending them after the fact, and already said it wasnt even a document for me originally.
>
> Once you do that, I will send you a detailed challenge, as I noted below already.
>
> I also asked you to confirm regarding the designations for exhibits and you didn't respond to my question so please respond to my question, either in your signed/dated notice you're about to send me or at least in email.
>
> Thanks.
>
> —
>
> **Ashley M. Gjøvik**
>
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 4th, 2026 at 8:33 PM, Riechert, Melinda <mriechert@orrick.com> wrote:
>
>> Ashley

We followed the procedures in the protective order and you should too.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com



.

**[EXTERNAL]**

Hello,

I do appreciate you revoking the hours-long blanket claims of confidentiality, so thank you for that; however you were legally required to do that anyways and it was due like six weeks ago, hence my inherent frustration about this generally right now.

I'm going to translate your emails to mean that the document you sent to Talty is now being repurposed as your service to me of your confidentiality claims -- however the only document you've sent is not signed or

dated; nor does it provide any explanation, standard, or reasoning for the designations claimed.

If Apple's not going to provide any additional information about its reason for designations beyond whats in the document you admittedly drafted only for the contractor and not even for me, and you want to repurpose that document for party meet/confer, then I'd ask you actually serve (email) me a signed and dated copy with some lawyer actually signing it with their name.

If you had done this during the depo as the protective order required, then the depo transcript would have Melinda named as the person making the designations-- but here, there's no names, its a mystery -- which is a problem for sanctions or professional ethics complaints. (If intentional on your part, then yes, I would also be concerned about it if i were you too, since you're claiming some sort of IP rights arising from a female employee's menstruation and vaginal discharge, which is, you know, very very bad).

Once you actually serve me a signed document as your official claim of designations then yes, I can respond with formal, detailed challenges to the already challenged claims. If you can provide any further detail about the basis for your claims, ask Ive asked, it may reduce what I have to challenge, but at the very least the document needs a name, sig, and date

Please also confirm if that document includes your confidentiality claims on the documents you used as exhibits or if you are continuing to claim that all of the exhibits currently marked confidential and being designated as entirely confidentiality with no narrowing of the designated content at issue.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 6:53 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

We designated select testimony "CONFIDENTIAL" at your December 16, 2025 deposition pursuant to Section 5.2(b) of the Protective Order governing this case, and subsequently substantially narrowed those designations following our review of the transcript received on January 7, 2026, within the timeframe specified in the Protective Order.

Please follow Section 6 of the Protective Order – which should not involve the Talty team – should you wish to challenge any of Apple's designations.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

.

[EXTERNAL]

Apple counsel,

I sent you an email about this a few moments ago (re-adding below) and instead of replying to me, you sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case.

You need to send **me** your claims and then we are to meet/confer about those claims.

Talty Ho is not the Magistrate Judge in our case and will not be deciding the validity of claims.

Once we agree to the claims, then they should be reflected in the transcript -- and you were supposed to do this with me over a month ago.

I ask that  you send me your claims to discuss -- as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 4:32 PM, Mantoan, Kathryn G. <kmantoan@orrick.com> wrote:

> Talty CR Production Team:
>
> I write regarding the deposition transcript we received on 1/7/2026 in this matter.
>
> Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text)

for which confidentiality is being asserted.

Plaintiff is copied on this email for notice purposes.

Thank you,

Katie

**Kathryn G. Mantoan**

Attorney

Pronouns: she / her / hers

Orrick

San Francisco | Portland

T +1-415-773-5887

M +1-415-218-4865

T +1-503-943-4870

kmantoan@orrick.com

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Wednesday, February 4th, 2026 at 4:22 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I'm adding Apple to this thread.

Apple's counsel,

We need to complete our review of the transcript, submit any corrections, and ensure that we don't then need more corrections based on the other party's corrections.

We also need to finalize the Confidentiality claims and ensure the record accurately represents those claims including for any exhibits. I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you -- and nothing to actually narrow, define, and substantiate any of your Confidentiality claims.

The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims.

Under the Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now.

However, there's probably at least a few statements/terms that are plausibly Confidential, I am still bound by the lawful/legitimate terms within the NDAs I consented to and signed, and I feel it would be proper to allow Apple to still substantiate the things that may actually be Confidential.

That said, you're already overdue and I need a timeline from you as to when you will be done and to ensure it can still be reflected in this deposition transcript.

I also ask if you're submitting any requests for corrections to this records, and if so, to please share with me what you ask for.

I also need to submit my request for corrections so please let me know if you'd like any process for that other then being cc'd or receiving a copy of what I submit to the Talty team.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Wednesday, February 4, 2026 4:40 PM
**To:** Mantoan, Kathryn G. <kmantoan@orrick.com>
**Cc:** production@taltys.com; Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Subject:** Re: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

**Sent:** Wednesday, February 4, 2026 8:28 PM

**To:** Riechert, Melinda <mriechert@orrick.com>

**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>

**Subject:** RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

**Sent:** Friday, February 6, 2026 12:11 PM

**To:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>

**Cc:** Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>

**Subject:** RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**3.99 KB**    3 embedded images

EXHIBIT B:
PLAINTIFF'S FEB. 18 2026 EMAIL

## Re: URGENT

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com> |
| Date | Wednesday, February 18th, 2026 at 1:07 PM |

Hello,

I'm also attaching my "objections" to your excessive confidentiality designations. Since you refused to send designations in a document I could easily respond to (in addition to refusing to date it, sign it, or send it to me directly) I converted it to an excel and put my responds there.

I also object that you never made designations if you never actually put them on the record or served them to me, or signed them, or dated them. Similarly there's no basis for a blanket gag order under that protective order which expressly prohibits exactly that, so Apple's actually never made any "designations" but instead has only issued unlawful work rules, threats, and coercive statements -- in addition to violating many other laws and policies and my constitutional rights.

The short story is none of your designations, even if they are designations, which they are not, are confidential and most of them are unlawful restrictions on speech, in addition to your 7-week long blanket prohibition on hours of speech which was especially egregious and illegal.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 12:26 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello agents of the Employer and Charged Party, Apple Inc,

Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.

You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.

Thanks,
-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**932.75 KB**   2 files attached   3 embedded images

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations.xlsx 15.29 KB

CHG.32-CA-381277.Initial Charge.pdf 913.46 KB

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations

| Cite Page(s): Line(s) | Apple's Designation | Apple's Justification | Objections by Employee Ashley Gjovik |
|---|---|---|---|
| 5:11 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 112:11 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 113:5 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 113:8 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 115:19 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 115:24 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 115:25 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 116:1 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 116:6 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 116:16 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 116:17 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 116:24 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 121:21 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 121:22 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 121:25 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 122:11 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 122:12 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 122:14 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 122:16 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 122:18 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 122:22 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 130:16 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 130:22 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 131:6 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 134:18 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |

Feb. 18 2026

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations

| Cite Page(s): Line(s) | Apple's Designation | Apple's Justification | Objections by Employee Ashley Gjovik |
|---|---|---|---|
| 138:3 | Confidential | None | This is not confidential and should not be redacted. This is an industry-wide abbreviation of a hardware development  phase |
| 138:4 | Confidential | None | This is not confidential and should not be redacted. This is an industry-wide abbreviation of a hardware development  phase |
| 138:5 | Confidential | None | This is not confidential and should not be redacted. This is an industry-wide abbreviation of a hardware development  phase |
| 138:7 | Confidential | None | This is not confidential and should not be redacted. This is an industry-wide abbreviation of a hardware development  phase |
| 147:16-24 | Confidential | None | This is not "Confidential" but I agree Apple can redact this due to the sensitve nature of the comment, with the caveat that I will challenge the redacting if Apple makes claims or deffenses which make this quote material or otherwise important to have un-redacted. |
| 153:5 | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 161:6-9 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 161:21-22 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 162:6-8 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 163:16 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 164:10-11 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 164:14 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 164:15-16 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 164:25 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 165:13-24 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 166:1-2 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 166:4 | Confidential | None | This is a public brand name and there is no justification to claim it is confidential. |
| 166:14 | Confidential | None | This is a public brand name and there is no justification to claim it is confidential. |
| 167:17 | Confidential | None | This is a public brand name and there is no justification to claim it is confidential. |
| 168:19 | Confidential | None | This is a public brand name and there is no justification to claim it is confidential. |

Feb. 18 2026

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations

| Cite Page(s): Line(s) | Apple's Designation | Apple's Justification | Objections by Employee Ashley Gjovik |
|---|---|---|---|
| 169:1 | Confidential | None | This is a public brand name and there is no justification to claim it is confidential. |
| 169:10 | Confidential | None | This is a public brand name and there is no justification to claim it is confidential. |
| 169:23 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 169:25 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 170:9 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 171:21 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 172:13 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 172:14 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 172:16 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 176:16 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 183:23 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 197:15 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit. However "HWE" is an industry standard term and should not be redacted. |
| 197:17 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 197:18 | Confidential | None | This is simply the letter "N" and is not confidential. |
| 197:21 | Confidential | None | This is simply the letter "N" and is not confidential. |
| 197:23 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 198:3 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 199:10 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 200:11 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 200:24 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit. However the term "Hardware" should not be redacted. |
| 203:4 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit However, the letter "A" is not confidentail and should not redacted. |
| 203:5 | Confidential | None | Its well establisheed in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| 205:4-9 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |

Feb. 18 2026

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations

| Cite Page(s): Line(s) | Apple's Designation | Apple's Justification | Objections by Employee Ashley Gjovik |
|---|---|---|---|
| 205:11-13 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 205:15-16 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 205:17 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 206:4-5 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 207:10-11 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 207:20-21 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 207:24-25 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 208:1 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 208:13 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 208:15 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 208:17-18 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 208:19 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 209:4 | Confidential | None | This is an industry standard term and is not Confidential and should not be redacted. |
| 209:6 | Confidential | None | This is an industry standard term and is not Confidential and should not be redacted. |
| 209:7 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 209:8-10 | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| 209:13-14 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 225:25 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 226:1 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 226:3 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |

Feb. 18 2026

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations

| Cite Page(s): Line(s) | Apple's Designation | Apple's Justification | Objections by Employee Ashley Gjovik |
|---|---|---|---|
| 226:4 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| 236:14-15 | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i5 (351) | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit. Beddit is a public brand name and should not be redacted, its not confidential. |
| i6 (352) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i8 (354) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i9 (355) | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| i11 (357) | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| i12 (358) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i20 (366) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i22 (368) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i25 (371) | Confidential | None | This is not confidential and should not be redacted. This is an industry-wide abbreviation of a hardware development  phase |
| i28 (374) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i30 (376) | Confidential | None | This is not Confidential. However, this specific example is not material to my case nor has Apple mentioned it in the litigation, so if Apple insists on redacting it I will not object as a courtesy. I do however object to a Confidential designation. |
| i31 (377) | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit. re "swimming" This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i32 (378) | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit |
| i34 (380) | Confidential | None | This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |
| i35 (381) | Confidential | None | Its well established in case law that a codename is not Confidential; but if Apple insist on redacting this text in this transcript, the Platiniff does not object to Apple's request for a redaction as a courtesy because this does not appear to be material to the lawsuit. re: Yoga, This is not Confidential. Apple's unlawful blanket and text-specific work rules about Employee's speech about work conditions violated the NLRA and is now tracked in NLRB charge 32-CA-381277, as Apple was notified on 2/17/26. This speech was protected under a variety of laws and public policy, and Apple has no justification to claim it is Confidential. Apple's desigation was unlawful, abusive, coercive, and unethical. |

Feb. 18 2026

### EXHIBIT C:
### APPLE'S MARCH 4 2026 LETTER



**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

+1 650 614 7400

**orrick.com**


**Melinda Riechert**

**E** mriechert@orrick.com
**D** +1 650 614 7423
**F** +1 650 614 7401

March 4, 2026

*Via Email*

Ashley Gjovik
ashleymgjovik@protonmail.com

**Re:**   ***Ashley Gjovik v. Apple Inc.***
**N.D. Cal. Case No. 23-cv-4597-EMC**
**Meet and Confer regarding Apple's Confidentiality Designations**

Dear Ashley:

This letter responds to your challenges to Apple's confidentiality designations related to your December 16, 2025 deposition, which you provided in an Excel spreadsheet on February 18, 2026.[1]

For many of Apple's designations, you indicated you do not believe the designated material is Confidential but that you do not object to Apple redacting this information from the public record. Apple does not understand you to have made a challenge to any of these designations within the meaning of the Protective Order.

We address below the designations you have challenged.

**1.   Internal Code Names**

While you have generally not objected to Apple redacting testimony related to code names, there are a few designations that appear to be in issue.

First, you have asked Apple to de-designate certain words contained within the codenames because you contend that, on their own, those words are not Confidential. While Apple disagrees with your premise, in the spirit of cooperation, Apple will agree to de-designate the following words contained in the parentheses:

>   **Willing to de-designate**: 197:15 ("HWE"), 200:24 ("Hardware"), 203:4 ("A")

Second, you contend that the following designations of a particular letter are not Confidential:

---

[1] Although neither your February 18, 2026 email nor the spreadsheet you attached recited that any challenges to confidentiality were being made in accordance with Paragraph 6.2 of the Protective Order (as that paragraph requires; *see* Dkt. No. 235 ¶ 6.2), we are treating that email and attachment from you as having been intended to initiate a meet and confer under that paragraph.

Ashley Gjovik
March 4, 2026
Page 2



**Retains Confidential designation**: 197:18, 197:21

Apple will not de-designate this challenged testimony. In context, this testimony relates to the meaning of the letter within Apple's internal code names for product development and should be treated as Confidential consistent with the other code name designations. Therefore, Apple continues to believe these designations are appropriate and should be treated consistent with the other designations related to Apple's code.

## 2. Industry Terminology

You contend the certain designations refer to standard industry terms that should not be redacted. While Apple disagrees with your position, in the spirit of cooperation, Apple will agree to de-designate this material.

**Willing to de-designate**: 138:3, 138:4, 138:5, 138:7, 209:4, 209:6, i25 (371)

## 3. Apple's Internal Studies

You contend the following designations relating to your testimony purporting to characterize certain internal Apple studies cannot be considered Confidential based on a variety of objections, including because some of this testimony relates to what you claim is protected concerted activity under the National Labor Relations Act ("NLRA"):

161:6-9, 161:21-22, 162:6-8, 163:16, 164:10-11, 164:14, 164:15-16, 164:25, 165:13-24, 166:1-2, 166:4, 166:14, 167:17, 168:17, 168:19, 169:1, 169:10, 169:23, 169:25, 170:9, 176:16, 205:15-16, 205:17, 208:1, 208:17-18, 209:13-14, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i12 (358), i20 (366), i22 (368), i28 (374), i31 (377) ("swimming"), i34 (380), i35 (381) ("yoga")

Apple disagrees with your contention as well as your suggestion that the NLRA dictates whether and to what extent the federal court overseeing your wrongful termination suit against Apple can properly order that discovery material from that case be treated as Confidential. As an initial matter, the NLRB has already determined that your revealing "confidential product development information about [an Apple] study" is not "protected activity" under the NLRA. Sept. 25, 2025 Order Withdrawing Certain Allegations of Consolidated Complaint, Order Partially Dismissing Charge 32-CA-282142, Order Dismissing Charge 32-CA-283161 and Notice of Right of Appeal (Sept. 25, 2025) at 2. And in any event, Apple disputes any suggestion that the NLRA somehow overrides or voids basic procedural rules that govern litigation in federal court, including those related to protective orders. *See, e.g., Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 499, 515 (2018); Fed. R. Civ. P. 26(c) (protective order may appropriately "requir[e] that … confidential research, development, or commercial information not be revealed or be revealed only in a specified way").

You also contend that this testimony is protected under "a variety of laws and public policy." This vague catch-all is not a meaningful attempt to meet and confer. Assuming the "laws and public policy"

Ashley Gjovik
March 4, 2026
Page 3



you are referencing relate to what you assert are your privacy rights, you are again incorrect. Apple did not ask any questions about your personal physiology or any private matter. Nor did your responses relate to your personal physiology or any other private matter. Instead, the testimony related to internal Apple studies, the majority of which you chose not to participate in. Whether you disagree with Apple's decision to conduct those studies, or how Apple conducted them, is irrelevant to determining about whether the subject matter and processes of those studies are properly designated as Confidential under the Protective Order.

Some of these designations you object to on the basis that they are public brand names; however, that ignores that the context of the discussion relates to the content, methods, or processes of internal Apple product-related studies.

However, in the spirit of cooperation Apple is willing to compromise and agree to de-designate certain of the citations referenced above—namely, all those that are not included in the following list:

> **Retains Confidential designation**: 164:10-11, 164:14, 164:15-16, 164:25, 165:13-23 (de-designating only ", and I found that very disturbing."), 166:1-2, 166:4, 166:14, 167:17, 168:19, 169:1, 169:10, 169:25, 170:9, 176:16, 205:17, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i20 (366), i22 (368), i28 (374)

Apple will not de-designate these challenged portions, which reflect your characterization of the content, methods, and processes of certain internal Apple product-related studies.

## II.    CONCLUSION

Please advise if you agree to the narrowed list of designations set forth in this letter, or if you continue to challenge any or all of Apple's designations (and, if so, which ones).

To be clear, Apple's designations do not prohibit you from relying upon this testimony in support of your case. Indeed, Apple's confidentiality designations and the Protective Order entered by the Court simply require certain procedural safeguards to be utilized (*e.g.*, a motion to seal) to ensure that Confidential information is not publicly disclosed.

Please let us know if you agree with the above compromises. We look forward to your response and hope to resolve these issues without the need for further motion practice. In the interim, the Protective Order requires you to treat the material Apple has designated Confidential as such, until such time as the Court rules otherwise. You must comply with the Court's Order while this process plays out.

Very truly yours,

*Melinda Riechert*

Melinda Riechert

EXHIBIT D:
NLRB CHARGE 32-CA-381277
PLAINTIFF'S COVER LETTER

**Ashley M. Gjovik, JD**
*In Propria Persona*
San Jose, California
2108 N St. Ste. 4553
Sacramento, CA, 95816
legal@ashleygjovik.com

# UNITED STATES

## NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| **ASHLEY M. GJOVIK,** *an individual*, | **Case No. _____** |
| | **Respondent: Apple Inc.** |
| Charging Party, | |
| & | **NLRB CHARGE COVER LETTER FEB. 16 2026** |
| **APPLE INC.,** *a corporation*, | |
| Charged Party. | |

# UNFAIR LABOR PRACTICE CHARGE COVER LETTER

**RE: UNFAIR LABOR PRACTICE CHARGE AGAINST APPLE INC.**

**Charging Party**: Ashley Gjovik

**Charged Party:** Apple Inc., One Apple Park Way, Cupertino, CA 95014

## I.    INTRODUCTION

1.    On Feb. 16 2026, I filed a new unfair labor practice charge against Apple Inc. alleging violations of Sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (a)(4). This filing presents TEN COUNTS:

2.    Regarding the DECEMBER 16 2025 DEPOSITION, the Employer ordered:
- (1) Retaliatory gag orders about and following Protected Concerted Activity;
- (2) A **seven-week** long gag order and prohibition on Protected Concerted Activity;
- (3) Unlawful work rules issued through confidentiality designations of deposition testimony about working conditions, discussing of Protected Concerted Activity, and the subject of NLRB charges/cases;
- (4) Continued threats and enforcement of rescinded confidentiality and work policies (including the IPA, Misconduct and Discipline policy, and others) and in retaliation for Protected Concerted Activity.
- (5) Issuance of work rules and enforcement of prior work rules in violation of the April 2025 National Settlement Agreement in Case 32-CA-284428 (again);
- (6) Unlawful work rules conditioning the right to protest or discuss the employer's unlawful surveillance on whether the coworker was also subjected to the same unlawful conduct by the employer;
- (7) Accusing the employee of "leaking" to a coworker when the employee and coworker were expressly discussing ways to improve work conditions;

3.    Regarding THE EMPLOYEE'S EMPLOYMENT, the employer conducted:
- (8) Years of unlawful surveillance of the employee through "whitelisting" of the employee's personal device for continuous 24/7 audio, video, biometric, and GPS capture, only recently admitted to the employee and while claiming the actions were lawful and it was misconduct for the employee to protest;

4.    Regarding    THE    TERMINATION    OF    THE    EMPLOYEE'S EMPLOYMENT AND ONGOING DENYLISTING:
- (7) Threatening to cite the employee's subsequent employer's termination of the employee's

employment in order to deny the employee remedies for this employer's unlawful retaliation and in further retaliation for the employee's protected activity, after the employer ordered that subsequent employer to terminate the same employee, and the subsequent employer did terminate the employee, driving the employee in Chapter 7 bankruptcy and homelessness.

Regarding THE EMPLOYEE'S PARTICIPATION IN BOARD PROCEEDINGS:

- (10) Declaring the employee's only recourse for NLRA violations is "confidential" memos to the Charged Party, and "sealed" escalations to a Magistrate Judge; banning the employee from filing NLRB charges.

This charge is filed on February 16, 2026, within the six-month limitations period under Section 10(b) for all allegations.

## 1. COUNT: RETALIATORY GAG ORDER IMMEDIATELY FOLLOWING PROTECTED CONCERTED ACTIVITY DISCUSSING THE SETTLEMENT AGREEMENT

5.     During the Dec. 16 2025 Deposition I exercised my rights under the NLRA, repeatedly mentioned the NLRA, and repeatedly objected to the Employer's line of questioning as potential violations of the NLRA.

6.     The Employer then responded by declaring anything I said going forward was now "*Confidential*" indicating I could face Contempt of Court and Sanctions if I was to share the Employer's questions or the content of my statements with anyone else including coworkers, the public, or the NLRB. Part of this exchange is at Exhibit A and an excerpt is below:

- Employer: "…I'm asking you now whether you understood that conduct warranting immediate termination could include violating confidential… information obligations…."
- Me: "Asked and answered. · I already said I don't understand that."
- Employer: "You did not understand that that was a policy violation?"
- Me: "Well, I understand that it's on the policy as written, as stated, but I don't understand what it means."
- Employer: "You don't understand what it means to violate your confidential… information obligations?· Is that what you're saying?"
- Me: "Asked and answered.· I already said I don't. And [objection, the] NLRB… said those terms were unlawful and that Apple could no longer enforce them and had to withdraw them from their policies."
- Employer: "I'm going to designate the next section of this deposition as

confidential pursuant to the protective order. Any... testimony you give until I say it's not confidential pursuant to the protective order is going to be covered by the protective order.· Do you understand that?"

- Me: "No.· How can you claim that my statements are confidential if what I said is not confidential?"
- Employer: "...I'm designating this as confidential pursuant to the protective order.· And if you disagree, then follow the procedures in the protective order."
- Me: "... But, Melinda, I don't think you can just say -- you don't know what I'm going to say and if I say stuff that's clearly not confidential, you just can't proactively say it's confidential.... You can't just proactively say that something is confidential when I'm actively talking about the NLRA saying that Apple is misusing confidentiality terms... to hide protected statements and then you're saying whatever I say next is under a confidentiality order without knowing what I'm going to say.· That's not right, Melinda.· I object."
- Employer: "...The following portion of the deposition is designated as confidential pursuant to the protective order."

[Exhibit A].

### 2. COUNT: UNLAWFUL SEVEN-WEEK GAG ORDER

7.    Apple abused the Protective/Confidentiality Order in the civil lawsuit to declare Protected Concerted Activity was "confidential" and to put a six-week gag order on me about my Protected Concerted Activity, Apple's NLRA violations during that deposition and prior, and Apple's misuse of the Court's order.

8.    This was the same Order that Apple insisted on having in the civil litigation, for which I objected in that litigation, escalated to the US Judge, requested injunctive relief from the Ninth Circuit to block, and for which I filed a Charge with the NLRB about, certain that Apple would use it to restrict my Protected Concerted Activity and to violate the NLRB Consent Agreement.

9.    During the deposition, Apple responded to my objections and my exercise of my rights by asking for a Court to waive Apple's liability for its plan to engage in such severe harassment of me in that litigation that Apple believed it would drive me to commit suicide. Apple's lawyer indicated it was Apple's lawyer "job" to harass me

to the point of suicide.

10.    Apple further asked the Judge to order me not to complain about Apple's harassment that could cause me to kill myself or to communicate if I want to kill myself. The Judge then ordered me to not express "emotions" and consoled Apple for their distress about hearing my objections to their conduct while they engaged in conduct they themselves admitted on the record they thought would foreseeably drive me to commit suicide. Apple then demanded a confidentiality order to censor my speech about my protected disclosures and their misconduct, and applied it to my Protected Concerted Activity.

11.    Apple has now used this Protective Order (that the same Judge then pressured me and coerced me to "stipulate to" against my will, at the same time the statements above were made about driving me to suicide), to declare that roughly 72% of Appe's deposition of me was considered by Apple to be "Confidential." (pages 65-234 were marked confidential, with the entire transcript ranging from page 8 to page 344, and totally 336 pages).

12.    Apple's lawyers repeatedly argued it had a right to pre-declare an entire portion of the deposition to be confidential regardless of what was said, and that any objection I had must go through the "Protective Order" process after the fact. When I objected during the deposition and insisted Apple's counsel follow the rules, Apple's counsel declared I was being uncooperative, and instead I must continue as Apple ordered. Apple finally agreed to narrow their claims but only after the fact, and they took seven weeks (50 days). All of Apple's conduct violated the Order.

13.    The Protective Order expressly said that "for testimony given in deposition... the Designating Party identify on the record, before the close of the deposition...  all protected testimony" (5.2(b)) however, any designation must be limited "to specific material that qualifies under appropriate standards... so that other portions of... communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order." (5.1). The Order further states "mass,

indiscriminate, or routinized designations are prohibited." (5.1).

14. Apple insisted that it was authorized by the order to declare anything said from that point on was "Confidential," use that Confidentiality claim on over 70% of the deposition, and leave that claim as a gag order for 7 weeks, covering content that ultimately 99% of which even Apple admitted was not confidential. Apple finally produced its list of narrowed Confidentiality designations on Feb. 4 2026, seven weeks (fifty days) later. Until that point, Apple claimed that entire 72% of the deposition transcript was Confidential on par with Trade Secrets and proprietary information.

### 3. COUNT: PROHIBITION ON DISCUSSING WORK CONDITIONS RELATED TO EMPLOYER STUDIES ON GENITALS, SEXUAL INTERCOURSE, AND BODILY SECRETIONS

15. The "narrowed" confidentiality claims that Apple communicated on Feb. 4 2026 were on a six-page PDF that was not dated or signed and which Apple refused to email to me directly. They emailed it to the Court Reporter and said it was for "my awareness." When I demanded they serve me a copy directly, and sign and date it, they refused. I asked multiple times and they would not sign or date it, or send it to me directly, but did claim that was Apple narrowing its Confidentiality claims.

16. Apple also insisted my only recourse was to write them a memorandum arguing why I do not think Apple's claims are justified and why I think each disputed item is not confidential, and if we do not agree, Apple will escalate the matter to the Judge who coerced me to enter that Protective Order while currently issuing a gag order against me to not have "emotions" and to not complain or warn anyone if Apple was to drive me to suicide. This same Judge has denied every request I've filed and found in favor of Apple for everything Apple has requested.

17. Apple's recent confidentiality claims included a final list of over 140 items—including clearly arbitrary terms like the letter "N" and the term "hardware," immaterial codenames, and general engineering development phrases – none of which is confidential, but is also not material to this matter or the retaliation case and

accordingly is not raised here.

18.    What is material here is Apple is claiming the very subject matter of my Protected Concerted Activity is "confidential." Additionally, many of the terms Apple is claiming are "confidential" are highly sensitive, personal, and protected subject matter under a variety of other laws including the terms: "

19.    Examples of deposition transcript content that Apple designated was "confidential" for seven weeks, and then expressly claimed terms and the subject matter was "confidential" include:

**NLRA Violation, Example One:**
- Employer: (did you tell your manager you didn't want to do that study?)
- Employee "…I was complaining more generally of, like, Apple is doing some really invasive stuff that seems weird.· Like when they were doing the ovulation study or they were asking females to measure our cervical mucus.· I was pointing out, like, I think Apple is crossing some lines --
- (Court Reporter asks for clarification)
- Employee: "They were doing ovulation studies where they were measuring female employees' cervical mucus, and I said I think that's too far.
- Employer: "….Were there other studies that you were asked to participate in that you said, no, thank you?"
- Employee: "Yes.· There was one that I had signed up for and pulled out because I didn't realize the terms until it was underway and it bothered me, … it's a sensor on the bed where you're sleeping and it's monitoring your vitals… But Apple asked for NDAs of any cosleepers.· So if you were to ever have anyone over like if you were dating and wanted to have sex with them or they're going to sleep in your bed, they had to get registered with Apple and sign an NDA … if they were to be there, and I found that very disturbing."

**Deposition Transcript pages 164-165 (entirely "confidential" for 50 days).**
Apple's active confidentiality claims include: **"ovulation study or they were asking females to measure our cervical mucus," "ovulation," "measuring female employees' cervical mucus,"** and **"ovulation."**

**NLRA Violation, Example Two:**
- Employer: "Was there anything else you said to [Supervisor] about your unhappiness with studies that Apple was doing?"
- Employee: Yeah.· I think it was generally just kind of like a --  we need a boundary here of what  --

- because, you know, I would do a lot of the LiveOn on, like, … And that′s a lot different than my employer asking to request status of my cervical mucus.· And so it was kind of, like, I feel like we need to sort as a company what we′re doing here generally and using myself as kind of case study of my reaction to some of those requests.· But as -- I don′t remember them ever really doing anything different, and I remember even making privacy, kind of, invasion complaints even I think, like, in May 2021 –"

- Employer: "Way beyond my question."

**Deposition Transcript pages 170. (entirely "confidential" for 50 days).**

Apple's active confidentiality claims include: "**my cervical mucus**"

### NLRA Violation, Example Three:

- The Employer asked me about my protests about the ear scans: "what did you feel invasive about an ear scanning study?"
- Employee: Ears are very personal, and they are an -- they′re an orifice.· You know, it′s a bodily orifice.· It′s kind of like the mucus – the cervical mucus secretion.· Not as bad as that one, but it′s like that -- that′s something that′s so personal that it doesn′t seem appropriate for an employer to ask.· And because I participated in these studies, I know that it involves pressing up against my body, putting things, like, on my body. Things where I′m like -- like I mentioned earlier, physically  uncomfortable during the process, even somewhat painful.· And like the thought of – and they can last a long time.· So, like, the thought of Apple spending a bunch of time scanning, like, the inside of my ears and my ears made me have a visceral reaction that I didn′t want that.· And that I was also why I just -- I said no.· That was one of the very few things I said no expressly in email. I said no.· I think I made an excuse, like, I′m too busy, but I′m not going to do that.· And then Apple wanted to keep -- they′re going to keep these images of our ears.· And they bragged publicly earlier that they had the biggest, like, ear library in the world, and that was concerning to me.· It′s concerning to me that they′d brag about that, and I don′t want my ears in their giant ear library.· You know, like, my ears are personal to me.· I don′t want them to just be in a library of ears.
- Employer: "Okay."
- Employee: "And because I had said no and they asked three times in a very short period of time, I was -- I was wondering why are they asking me so much, and it looked like it was going to an email group, but you don′t really know who is on what group.· And so I was -- I was disturbed about them still wanting to scan my ears.
- Employer: Do you agree that posting these emails was a breach of your confidentiality agreement with Apple?
- Employee: No, I don′t agree.
- Employer: And why not?

- Employee: …None of this is -- none of that was even secret information.· And I was complaining about something that I thought was an invasion of privacy.· I have a constitutional right to privacy in this great state of California where I can protest about my employer trying to invade my privacy…   And I wanted them to stop doing this kind of stuff, and this was the exact same time I was calling out other conduct and systemic issues at Apple that I did not approve of and wanted them to reform on, and so this fit with me trying to call out stuff that I thought crossed a line….”

**Deposition Transcript pages 236-238). (entirely "confidential" for 50 days).** Apple's active confidentiality claims include: "**mucus -- the cervical mucus secretion**"

20.    Apple claimed confidentiality and some sort of business interest/ownership rights to my own testimony, my own words, describing my complaints about invasive workplace practices directed at me and my coworkers' bodies, my organizing activity with and on behalf of coworkers, my protected disclosures and advocacy, and my genital secretions and sexual activity.

21.    Apple does not own my vagina, has no legitimate interest in who I have sex with, and its outrageous Apple would even imply it could make these claims, let along expressly argue these claims on an unsigned PDF and demand I be the one to argue why Apple employees' genital secretions are not Apple Confidential.

### 4. Count: Continued Enforcement of Rescinded Policies

I filed NLRB charges (Case 32-CA-284428 and related cases), resulting in a General Counsel complaint and national settlement. I filed a federal retaliation lawsuit where I invoked NLRA and other rights during the deposition. All of this is protected under Section 7 and Section 8(a)(4).

Apple's counsel interrogated me at deposition about the policies and terms they claimed they had rescinded and would not enforce, whether I was "permitted" or "authorized" to discuss work conditions with coworkers, whether talking about work conditions was a "breach of [my] confidentiality obligations," and whether my coworkers were "whitelisted" by Apple to communicate with me about work

conditions. I objected and repeatedly reminded Apple about the rights their employees, including me, having under the NLRA and warned the attorney that she appeared to be repeatedly violating the NLRA in her questioning.

Apple's lawyer then declared 72% of the deposition was "confidential" for seven weeks, and then claimed my cervical mucus was Apple Confidential and the burden was on me to argue why it was not, and then we could raise the dispute Apple ownership of its facts around its employee's cervical mucus to the Judge who already issued an implied gag order against me to not have "emotions" while Apple pursued its plan to drive me to suicide.

Apple's questioning and conduct regarding the deposition and protective order enforces the prior secrecy, coercion, and confidentiality framework Apple agreed to rescind in the April 2025 settlement. Apple is exploiting the Court's deference to an extremely powerful, local corporation in a very public and closely watched lawsuit to threaten its employees and chill their protected activity through its ongoing harassment of the Charging Party.

### 5. COUNT: VIOLATION OF THE SETTLEMENT AGREEMENT

22.   As stated above and below, Apple also issued new work rules that clearly violate the terms of the Settlement Agreement, including:

- (1) Revised IPA, Appendix A, § I(C): "[N]othing in this Agreement restricts Your right to... discuss or disclose information about Your or others' wages, hours, or working conditions." Apple designated my testimony about my working conditions as confidential.
- (2) Notice: "WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information." Apple's counsel asked me under oath whether discussing working conditions was a "breach of your confidentiality obligations."
- (3) Additional Terms: "The Charged Party agrees that it will not enforce the definition of Proprietary Information... to the extent that such definition covers terms and conditions of employment." Apple's designations enforce that definition through a different mechanism.
- (4) Catch-all: "WE WILL NOT in any like or related manner interfere with your rights under Section 7."

Violation of a settlement agreement resolving 8(a)(1) charges is itself an independent 8(a)(1) violation. The settlement's Performance provision provides that upon non-compliance, the Regional Director will reissue the October 3, 2024 complaint, the allegations will be deemed admitted, Apple's answer deemed withdrawn, and the Board may enter a full remedy order without trial. A Court of Appeals judgment may be entered ex parte.

23.    The settlement was the Board's remedy for Apple's unlawful confidentiality policies. If Apple can reimpose the substance of those policies through a protective order designation in any employee litigation and without consequence, the settlement is a nullity. Every Apple employee who saw the settlement notice and believed the rules had changed is now learning that they have not.

24.    As noted, I also previously filed a charge with the Board alleging that Apple violated the April 2025 settlement agreement through its litigation conduct in this same federal case. The Region and Compliance Office, declined to investigate or take action on that charge, and refused to state any findings in writing. This was after Apple's own defense counsel was appointed to be the new NLRB General Counsel.

25.    The Region's prior refusal to act has emboldened Apple. Since the Region declined to investigate the first reported violation, Apple's conduct has escalated: Apple now designates the word "cervical mucus" as its confidential business information and interrogates former employees under oath about whether discussing working conditions with coworkers was a "breach of confidentiality obligations." The trajectory is clear. Each time the Board declines to enforce its own settlement, Apple pushes further. This charge presents the Board with a choice: enforce the agreement it brokered, or watch it become a nullity and see just how far Apple will go.

### 6. COUNT: UNLAWFUL SURVEILLANCE

26.    Apple was surveilling me at all times, including all Section 7 activity conducted through or in the presence of my personal phone: conversations with coworkers about working conditions, communications with the NLRB, communications

with journalists, organizing discussions, and personal conversations outside work touching on employment concerns.

27. Apple placed my cell phone and my personal iCloud account on a "whitelist", causing it to continuously capture and automatically upload photographs, video, audio recordings, biometric data, and GPS location whenever the camera detected a face—24/7 including outside the workplace—without any prior review or consent, but lied for years that I consented and was approving uploads.

28. This was not limited to work hours or Apple premises. The device recorded in my home, including images of me in states of undress. This also violates the federal Wiretap Act, 18 U.S.C. § 2511 (interception of communications without consent), Cal. Penal Code § 632 (felony recording of confidential communications), Cal. Penal Code § 647(j) (invasion of privacy), and other statutes. Apple also obtained dismissal of my related state-law claims by representing it was not doing exactly what it was actually doing.

29. Section 8(a)(1) prohibits employer surveillance that would reasonably tend to coerce employees in the exercise of Section 7 rights. See *Nat'l Steel & Shipbuilding Co.,* 324 NLRB 499 (1997); *Aladdin Gaming, LLC*, 345 NLRB 585 (2005). Continuous 24/7 audio and video capture from an employee's personal device—recording conversations with coworkers, the NLRB, journalists, and family—is surveillance that would chill any reasonable employee from exercising Section 7 rights. The federal Wiretap Act violation is an aggravating factor the Board may consider.

30. An employee whose personal phone is recording and uploading everything cannot freely discuss working conditions with coworkers, contact the Board, or communicate with journalists. Once the data is captured, its also collateral and inherently coercive. The surveillance captured the full scope of Section 7 activity—including the protected disclosures and organizing that are the subject of this litigation. I became aware of the QA whitelisting and its implications within the past six months, as Apple withheld this information for years and only recently admitted it, and so I file this charge within a tolled Section 10(b) limitations period.

### 7. COUNT: UNLAWFUL WORK RULES RELATED TO ORGANIZING WITH COWORKERS ABOUT WORKPLACE SURVEILLANCE

31.    I discussed Apple's surveillance practices with a coworker as part of organizing efforts to improve working conditions. I testified that we were "organizing together" "making Apple better" and that sharing information about invasive workplace practices with a fellow employee was "absolutely NLRA... protected concerted activity of coworkers trying to make a better workplace." This included "my protest that Apple was requesting us to share all of our medical records directly with Apple if we were to request disability or ADA accommodations." (Deposition transcript page 295-296).

32.    Apple's counsel asked repeatedly whether my coworker was "whitelisted" to talk about work conditions with me—establishing a rule that an employee may only discuss the employer's surveillance with coworkers who were also subjected to the same surveillance. The premise is that a coworker who was not "whitelisted"—i.e., not also subjected to criminal surveillance—has no right to receive information about it, and that sharing it with her is a confidentiality breach. Apple then designated my testimony about sharing this information as confidential. This creates a work rule: discussion of the employer's criminal surveillance is permitted only among its victims, and discussing it with any other coworker violates confidentiality obligations.

33.    Section 8(a)(1) prohibits rules that condition the exercise of Section 7 rights on employer authorization. An employee's right to discuss working conditions with coworkers does not depend on whether the employer "whitelisted" the listener for the same labor violations. The right to discuss working conditions is unconditional under Section 7. A rule that permits discussion of employer misconduct only among its victims—and treats discussion with anyone else as a confidentiality breach—is an unlawful work rule restricting Section 7 activity.

- Employer: "Do you agree that sharing this information with [coworker] was a breach of your confidentiality obligations with Apple?"
- Employee: "Absolutely not."
- Employer: "Why not?"
- Employee: :One, [coworker] was an active Apple employee."

- Employer: "…Do you believe you were able to share confidential information about Apple with all Apple employees?"
- Employee: "Confidential is a broad term I don't understand.· But second, some of this stuff was highly protected.· This includes naked photos of me. I shared –"
- Employer: "I'm just asking you a question.· Do you agree that sharing this information with [coworker] was a breach of your confidentiality obligations…?.. "Do you believe that you were entitled to share all confidential information you got from Apple with all Apple employees?..."
- Employer: "….Where is the naked photo?..."
- Employee: "….the AI is just taking photos whenever it thinks it sees a face.· It doesn't care if you're topless…   I had photos it was taking that include my nipples and other parts of my naked body."
- Employee: "….And then -- what was I saying?· Why it was -- oh, because we were organizing about work conditions.· I was protesting this and said I don't like this.· I want Apple to stop.· And if she was organizing with me at that time  … trying to help improve our work conditions, then sharing this with her for her understand -- and she seemed very upset about this as well -- was absolutely NLRA, the National Labor Relations Act, and California Labor Law, protected concerted activity of coworkers trying to make a better workplace for themselves and their other coworkers.· And whistleblower disclosures that something is going on that seems unethical or unlawful, and there's nothing in here that's trade secret and other reasons…."
- Employer: "Do you know if [coworker] was whitelisted…"
- Employee: "I have no idea."
- Employer: "But you had no reason to believe that she was whitelisted
- Employee: "It's a very, like, weird question.· I don't know how to answer your question."
- Employer: "Okay.· Well, you couldn't answer my whitelisted question.· You were totally incapable of [answering] it."
- Employer: "Do you have any reason to believe that you were permitted to share [work condition] information with [coworker]?·
- Employer: "….So I don't know how to answer that question with the "permitted" term."
- Employer: "Okay.· You don't know what "permitted" means?"
- Employee :"I don't know what "permitted" means."
- Employer: "How about allowed?· Is that any better? A-L-L-O-W-E-D?"
- Employee :"No."
- Employer: "Okay.· Don't know what "permitted" and "allowed" mean. · · · · Okay.· Are Apple employees allowed to share confidential information with Apple – Apple employees who are not … who are not whitelisted to receive the confidential information?"
- Employee :"I don't know what "allowed" or "whitelisted" means in your question."
- Employer: "Okay."

**Deposition pages 298-305. (entirely "confidential" for 50 days).**

34.    Apple's rules and threats isolate victims of employer misconduct from the coworkers best positioned to help them. Apple declares that an employee who discovers her employer is illegally recording her, and taking naked photos of her, can only discuss it with other employees who are also being illegally recorded and having naked photos also taken of them—and those employees may not know they're being recorded, and if they do know they may be horrified about it, so the practical effect is silence. It conditions the right to discuss working conditions on the employer's own authorization, which must accompany the employer surveilling the employee and hoarding nude photos of that employee, which is the antithesis of Section 7 and closer to a sex cult then corporate employment.

### 8. Count: "Leaking" Work Conditions to Coworkers

35.    See above.

### 9. Count: Termination of Subsequent Employment with another Employer ordered by the Prior Employer

36.    Recent actions and statements have made it clear that Apple was directly involved in Northeastern University's termination of my employment in the autumn of 2024. I suspected this for some time and accused Apple of it prior, however only recently did Apple implicitly confirm this.

37.    Apple provided me notice it intended to subpoena extensive employment records from Northeastern University to use as evidence against me in the Apple retaliation litigation and adjudication. Apple knows there is an NLRB case against NEU and that I allege retaliation for numerous types of protected activity including opposing what amounted to be systemic federal grant fraud by that university. Apple indicated it would request records from NEU to made it look like I was at fault and use my protected activity at NEU in its defense in the Apple litigation.

38.    I complained to Apple again that based on the timing and extremely suspicious circumstances of that termination, I was certain Apple was behind the second firing, and if Apple sent the subpoena they threatened, I would then subpoena NEU's lawyers for any communications with Apple or Apple's lawyers.

39.    Apple then dropped that matter completely and has not raised it again. Apple has not said a word about it since I assured them I was certain there would at least be phone call records between these entities leading up to the abrupt notice of termination while I was on protected medical leave, which had just been extended by NEU and made the termination absurd. Apple's silence confirms their culpability.

10.    **COUNT: PROHIBITING THE EMPLOYEE FROM FILING NLRB CHARGES**

40.    Under *San Diego Building Trades Council v. Garmon,* 359 U.S. 236 (1959), when activity is arguably subject to Section 7 or Section 8 of the NLRA, federal courts must defer to the exclusive competence of the Board. Under *Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976), the Board's preemptive jurisdiction extends to conduct that Congress intended to leave unregulated as well as conduct it intended to regulate.

41.    The federal district court lacks jurisdiction to determine whether Apple's designation of testimony about Section 7 activity as confidential constitutes interference with NLRA rights. That determination belongs exclusively to the Board.

42.    Accordingly, Apple's insistence that my "only option" is to argue to Apple and the Judge who indicated she doesn't care if kill myself as a result of Apple's conduct, and that I have no other recourse for Apple's misconduct, is also a violation of the NLRA. Apple's statements indicate that I am not "allowed" to file an NLRB charge over their confidentiality designations because they say the non-consensual Protective Order somehow stripped the NLRB of jurisdiction and/or is a gag order on me from reporting NLRA violations to the NLRB – but none of that is true.

43.    The opposite is true. If Apple violates the NLRA, and interferes with Board proceedings, then Garmon preemption removes the federal district court's jurisdiction to review the matter at all. Accordingly, Apple's directive to not file charges to the NLRB and only route complaints to a venue with no jurisdiction to adjudicate them, is Apple illegally prohibiting me from filing NLRB charges.

44.

## II.    CONCLUSION

45.    This Cover Letter is filed in support of the Feb. 16 2026 Charge.

46.    In addition, a detailed Legal Memorandum will be subsequently filed as well with additional exhibits and evidence.

47.    The alleged violations in this charge are clearly within the scope of the NLRA. Apple's unlawful conduct during and related to the deposition occurred as part of a civil lawsuit, but directly arose out of NLRA activity, interfere with NLRA rights, and threaten to interfere with NLRB proceedings.

48.    My disclosure here of the subject matter of Apple's claims to confidentiality may cause Apple to escalate and even seek sanctions against me for violating their protective order. If Apple does such a thing, then an additional NLRB charge will be filed to capture the continuing violations of the NLRA by Apple.


Respectfully submitted,


**/s/ Ashley M. Gjovik**
*Pro Se Charging Party*
San Jose, California
Dated: Feb. 16 2026

# EXHIBIT A

leak, that we had to report it.  I reported it.
But, again, like even the -- the first sentence of
that email says "not sure how much this matters,"
and then I reported it anyways.

Q.  And you reported it because you thought it
might be a breach of their confidentiality
obligations to Apple; correct?

A.  Yeah.

MS. RIECHERT:  Mr. Videographer, if you
could mark as Exhibit Number 6, tab 6-02 Apple's
misconduct and discipline policy.

THE VIDEOGRAPHER:  Exhibit 6.

(DEPOSITION EXHIBIT 6 WAS MARKED.)

THE WITNESS:  Okay.  It's open.

BY MS. RIECHERT:

Q.  Looking at Exhibit 6, which is Apple's
misconduct and discipline policy, do you agree that
that is a copy of Apple's misconduct and discipline
policy?  And because you asked me to do that before,
I would note that on the bottom right-hand corner
are Bates numbers that were placed -- we believe
were placed on this document by you.  These were
documents produced by you.

A.  Oh, I see, yes.  And the timestamp on the --
this one has a timestamp.  The business conduct

policy didn't have a timestamp.  This timestamp matches when I downloaded this document, and this is an exhibit in the NLRB case with the settlement agreement I mentioned.

Q.  The question is do you agree that this was a policy that was in effect during your employment at Apple?

A.  What does "in effect" mean?

Q.  That it was in existence.

A.  Yes.  This policy was in existence at my time at Apple as of the date I downloaded it, which is dated on the document as May 4, 2021.

Q.  And do you agree that you were aware of this policy at the time you downloaded this document on May 4, 2021?

A.  Yes.

Q.  And you read it during your employment at Apple; correct?

A.  The policy we're looking at -- all I know is -- existed as worded as of May 2021.  Apple might have had different versions earlier, and I don't have copies of the prior policies from, like, 2015. But I know that this definitely existed in May of 2021.

Q.  And you understood it; correct?



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                 December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

A.   That's broad.  Can you be more narrow in your question?

Q.   Did you understand the policy when you read it and downloaded it?

A.   Yeah.  What does "understand" mean?

Q.   Know what it means.

A.   I'd say no.  And that was one of the reasons -- so I was downloading -- I downloaded a bunch of policies at that point.  I had become very concerned that they were unlawful, and I had been making statements about that with coworkers and on Slack, and that was when I started --

Q.   But you've gone beyond the question.  My question is did you understand this policy when you read it and downloaded it on May 4, 2021?

A.   That's what I was going to say.  I didn't -- the terms were so broad.  One of the reasons it was flagged for me --

(Reporter asks for clarification.)

BY MS. RIECHERT:

Q.   The question is did you understand it or did you not understand it?

A.   No, I didn't understand it.

Q.   Okay.  Which parts of it did you not understand?

A.   These are -- I can go through the terms and a lot of these terms were flagged in my complaint to NLRB about this particular policy --

Q.   You're going way beyond my question.  The question is --

A.   I know.  You're asking what I didn't understand.  I'd like to answer that question.

Q.   Okay.  Which terms did you not understand? I don't need to talk about the NLRB.  I just want to know which terms you did not understand.

A.   Appropriate is vague and over -- so terms that I feel are vague and overbroad in such a way that you cannot understand what is actually being requested and which likely become unlawful that they are so overbroad because they restrict protected behavior and conduct are terms appropriate, behavior, policies, guidance, ethics, discretion, appropriate, guidelines, not limited to, warnings.

(Reporter interruption.)

THE WITNESS:  Can you see me?  I turned my video off so I wasn't just staring at me.  Can you see me here?

THE VIDEOGRAPHER:  Yes.

BY MS. RIECHERT:

Q.   If you don't want to look at yourself in the

video.  I can take yourself --

A.  I did, but then she said she can't see my face, but then I couldn't see where my face was.  So I was concerned she couldn't see my face.

Conduct.  Let's see, not limited to, policy violations, confidential, proprietary.

Q.  You didn't understand what those words meant is what you're telling me?

A.  Uh-huh.  I'm still going.  Oh, using Apple equipment for electronic resources because that to me also meant, like, our personal iPhones or computers too.  It was very unclear.

Q.  I withdraw that question, and I'm going to ask you another question.

Did you --

A.  I still have more though.

Q.  I understand.  I'm just going to withdraw that question.

Did you understand that this policy said that it was a policy violation for you to violate your confidential proprietary information -- proprietary and trade secret information obligations, including those stated in Apple's intellectual property agreement?

A.  So you're referring to under policy



violations, the first bullet?

Q.   Correct.

A.   Can I read it just so it's on the record of what you're asking?

Q.   Absolutely.

A.   So the policy violations -- the policy says, "Violating confidential, proprietary, and trade secret information obligations (including those stated in Apple's intellectual property agreement)," and that is under "Conduct warranting immediate termination.  Conduct that may warrant immediate termination of employment includes, but is not limited to," and then the bullet you just said.

So I can confirm that the document that we're reviewing, that is the text as I just read, is on that document and that I had a copy of that document.

Q.   And you understood it?

A.   No.  I just said I don't understand this document.

Q.   Okay.  Didn't understand that part of the document?

A.   I don't understand most of the document.  I was still going of listing all the words I don't understand.



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)          December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

Q.   Okay.  I'm asking you now whether you understood that conduct warranting immediate termination could include violating confidential, proprietary, and trade secret information obligations including those stated in Apple's intellectual property agreement?

A.   Asked and answered.  I already said I don't understand that.

Q.   You did not understand that that was a policy violation?

A.   Well, I understand that it's on the policy as written, as stated, but I don't understand what it means.

Q.   You don't understand what it means to violate your confidential, proprietary, and trade secret information obligations?  Is that what you're saying?

A.   Asked and answered.  I already said I don't. And the objections of NLRB already said that was unlawful that Apple would --

(Reporter admonition.)

THE WITNESS:  NLRB said those terms were unlawful and that Apple could no longer enforce them and had to withdraw them from their policies.

MS. RIECHERT:  I'm going to designate the



next section of this deposition as confidential

pursuant to the protective order.

BY MS. RIECHERT:

Q.   Any information that -- testimony you give until I say it's not confidential pursuant to the protective order is going to be covered by the protective order.  Do you understand that?

A.   No.  How can you claim that my statements are confidential if what I said is not confidential?

Q.   Because under the protective order, I have the right to designate deposition testimony as confidential.  If you disagree with that, then you have the right, under the protective order, to follow the procedures in the protective order.

A.   Yeah, but I believe you -- sorry.  Go ahead.

Q.   But meanwhile, I'm designating this as confidential pursuant to the protective order.  And if you disagree, then follow the procedures in the protective order.

A.   Yes.  But, Melinda, I don't think you can just say -- you don't know what I'm going to say and if I say stuff that's clearly not confidential, you just can't proactively say it's confidential.

Q.   I have the right to do that under the protective order, and you have the right to



challenge it if you disagree.

A.   Well, I'm filing objections immediately then that you can't just proactively say that something is confidential when I'm actively talking about the NLRA saying that Apple is misusing confidentiality terms and the stuff to hide protected statements and then you're saying whatever I say next is under a confidentiality order without knowing what I'm going to say.  That's not right, Melinda.  I object.

MS. RIECHERT:  All right.  So why don't we take a break before I ask my question?

If the videographer would bring in the tab Number 2-04 into the chat.

We're going to take a five-minute break, and I am designating the following information as confidential pursuant to the protective order.

Let's take a five-minute break.

THE WITNESS:  Okay.

THE VIDEOGRAPHER:  This marks the end of Media Number 1.  We are now going off the record.  The time is 10:19 a.m.

(Off the record:  10:19 a.m. to 10:29 a.m.)

THE VIDEOGRAPHER:  We are now on the record.  The time is 10:29 Pacific Standard Time.  This marks the beginning of Media Number 2 in the deposition of



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

Ashley Gjovik on December 16, 2025.

Please continue.

(DEPOSITION EXHIBIT 7 WAS MARKED.)

MS. RIECHERT:  The following portion of the deposition is designated as confidential pursuant to the protective order.

(THE FOLLOWING PAGES, 66 TO 305, WERE DESIGNATED CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER.)

-oOo-



:::  CONFIDENTIAL  :::

(THE FOLLOWING PAGES, 66 TO 305, WERE DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER.)

BY MS. RIECHERT:

Q.  Please look at Exhibit Number 7 and let me know if this is a document that you received in connection with your employment at Apple.

A.  Yes.  And lodging again that I don't like the blanket confidentiality when we don't know what we're going to talk about.  And also lodging that I've tweeted this document.  This is already public record.  It's not confidential.

But this does appear to be an email that I believe I did receive from Apple.  It's dated August 7, 2017.

Q.  And when did you tweet the document?

A.  I think multiple times.  And it's on my website.  It's part of my government complaints in the exhibits for the government cases.

Q.  Did you tweet this document during your employment at Apple?

A.  I don't think so, no.

Q.  You were invited to participate in a data collection social hour; correct?

A.  I -- can I just read the email?



Q.  Absolutely.

A.  Yeah.  So the email was sent from --

Q.  Okay.  Don't read it out loud.  Just read it to yourself.

A.  No.  I want to read it for the record so they know what we're talking about.

Q.  No, please don't.  Please read it to yourself.

A.  But you said it's confidential.

Q.  The exhibit -- the exhibit is in the record, and so you don't need to read it into the record because the exhibit is already part of the record.

A.  What did you just ask me?  What was the question?

Q.  The question is were you invited to participate in a data collection social hour?

A.  But you're reading the email and you're saying I can't read the email.

Q.  No.  I'm saying you can read the email.  I just don't want you to read it out loud into the record.

A.  But you -- the question you're asking me reflects what is said in the email.  So for me to confirm what the email said would answer your question, and you're saying I can't read the email.



## Confirmation

You have successfully E-Filed Charge Against Employer . You will receive an E-mail acknowledgement from this office when it receives your submission. This E-mail will note the official date and time of the receipt of your submission. Please save this E-mail for future reference. Please print this page for your records.

**NOTE:** This confirms only that the form was filed. It does not constitute acceptance by the NLRB.

**Confirmation Number:** 1111720524
**Date Submitted:** Monday, February 16, 2026 11:59 PM (Pacific Standard Time)
**Form Submitted to Office:** Region 32, Oakland, California

File New Charge / Petition

# RE: Apple-Gjovik - Motion to Seal

| From | Riechert, Melinda <mriechert@orrick.com> |
|------|------------------------------------------|
| To | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com> |
| CC | Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Russell, Zoe<zrussell@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, Jimenez, Catherine M.<catherine.jimenez@pillsburylaw.com>, Trechter, Reed C.<reed.trechter@pillsburylaw.com>, Troop, Andrew M.<andrew.troop@pillsburylaw.com> |
| Date | Tuesday, March 10th, 2026 at 3:51 PM |

Thanks for getting back to me. I assume based on your answer that you will not stipulate to an order to seal and we will be filing a motion to seal.

**Melinda Riechert**

Partner

<u>Orrick</u>

Silicon Valley  Ⓥ

T 650/614-7423

M 650 759 1929

<u>mriechert@orrick.com</u>



[EXTERNAL]

Counselor,

Apple has no valid confidentiality designations. The blanket designation lapsed under Protective Order § 6.3 no later than January 6, 2026. The February 4 narrowing is a nullity under Fed. R. Civ. P. 26(g)(2) — unsigned, undated, unserved, and not cured after specific written notice. This has been explained to Apple repeatedly and is the subject of the pending motion at Dkt. 302 -- which you are saying you plan to ask to seal and conceal from public view while concurrently demanding gag orders, findings of contempt, and sanctions over non-existent designations specific to my genitals , genital secretions, and sexual activity.

Regarding the proposed sealing: as I previously informed you, Civil Local Rule 79-5(c) states in its first sentence that a protective order designation is not sufficient to establish sealability. (And additionally, a designation that is procedurally void provides no basis at all.) Apple requires an independent compelling reason supported by specific factual findings. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

Apple's only previously stated independent basis is alleging the Plaintiff violated the Plaintiff's employment agreement with Apple. That basis independently violates: (1) the April 2025 trilateral NLRB settlement, in which Apple expressly agreed not to enforce confidentiality provisions over working conditions and labor dispute communications; and (2) the automatic stay in Plaintiff's Chapter 7 proceeding (11 U.S.C. § 362), which prohibits Apple from asserting claims against the Debtor arising from pre-petition executory contracts without first obtaining relief from Judge Panos. (In addition to the Norris–LaGuardia Act and other prohibitions previously mentioned) with hearing on Plaintiff's sanctions motion for Apple's existing stay violations is scheduled for April 2, 2026. *In re Hruby,* 512 B.R. 262, 274 (Bankr. D. Colo. 2014).

Additionally, seeking to seal Plaintiff's NLRB charges and workplace complaints, and conditioning Plaintiff's access to her own litigation on accepting unlawful and bad faith confidentiality restrictions over that content, constitutes an independent unfair labor practice under NLRA § 8(a)(1) and § 8(a)(4) and a further violation of the April 2025 settlement agreement.

Finally, as I previous informed you, you cannot ask one judge to seal the filings before a different judge. If you insist on seeking to "seal" my Rule 72 Objections and the Certified Transcript of a federal court hearing, both records just ruled upon by Judge Chen, then your motion should be directed to Judge Chen, not Judge Westmore - but either way your motion is frivolous and another instance of ongoing harassment and labor violations.

Thus, any additional motions Apple files certifying the validity of designations that are procedurally void and independently unlawful, will be addressed as an additional violation under Fed. R. Civ. P. 26(g)(3), the NLRA, and the

bankruptcy stay.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, March 10th, 2026 at 2:22 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Apple intends to move the Court for an order to retain its confidentiality designations. In support of that Motion, Apple will need to file material it designated Confidential pursuant to the Protective Order. Additionally, your recent filings again publicly disclose information Apple designated as Confidential.
>
> Accordingly, Apple intends to seek an order to seal material Apple designated as Confidential that is referenced in either Apple's Motion to Retain Confidentiality or the evidence to be filed in support of that Motion, as well as Docket Entries 301, 301-1, 302, 302-1, and 302-2,  until such time as any challenges to Apple's confidentiality designations have been ruled upon. **Pursuant to Local Rules 79-5 and 7-11, please let us know if you are willing to stipulate to an order to seal as detailed above.**
>
> **Melinda Riechert**
>
> Partner

Orrick


Silicon Valley  Ⓥ


T 650/614-7423

M 650 759 1929

mriechert@orrick.com




**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.


**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Tuesday, March 10, 2026 3:45 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>
**Subject:** RE: Apple-Gjovik - Motion to Seal

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**3.99 KB**     3 embedded images

# Exhibit B: NIH

# RE: [EXTERNAL] Re: study complaint

From   Ashley Gjovik <ashleymgjovik@protonmail.com>

To     Green, Jonathan (NIH/OD) [E]<jonathan.green3@nih.gov>

Date   Friday, March 20th, 2026 at 1:52 PM

FYI - ORARC responded today (via Alyssa Speier) and confirmed they're looking into the complaint. Thanks, Dr. Green!

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

On Thursday, March 19th, 2026 at 1:05 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello Dr. Green,
>
> That sounds great. I forwarded my complaint to the Advarra email along with the Harvard IRB and study group emails, so its now in their queue to review.
>
> Please do fee free to contact Harvard directly and you can also share the full email I sent NIH and/or a summary, and also feel free to provide my contact information. I really appreciate your help escalating this matter.
>
> It would be deeply unfortunate if a private company's misconduct creates risk to the scientific and medical benefits of that study and the data its collecting. It does sound like a important study addressing a critical gap in research data. Hopefully following both of our contacts, someone in one of these groups can intervene and help Apple understand how these things are supposed to work & get things back on track.
>
> Thanks again,
> -Ashley
>
> —
>
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> On Thursday, March 19th, 2026 at 12:51 PM, Green, Jonathan (NIH/OD) [E] <jonathan.green3@nih.gov> wrote:
>
>> Hi
>>
>> I will send a brief note to the Harvard IRB, and if you would like, I can include your contact information and summary of the complaint.  You note below that the reviewing IRB was Advarra.  Many studies, even those that are conducted by academic medical centers, are reviewed now by commercial IRBs.  You can contact that IRB directly at the email address they provided, and I would encourage you to do so.  Even if Advarra reviewed the study, it is important for the institutional IRB to be aware of your concerns.

Sincerely


Jonathan






Hello Dr. Green,


Thank you for your response. I'd appreciate it very much if you would be willing to contact the leadership of the study's IRB and inquire about my complaints. The study's email was actually on the "to" line of the email I sent NIH on March 11 2026. I had assumed that email included representation from the study's IRB, but I could be incorrect.


Let me also clarify that upon review, I had previously contacted the Harvard study's group email address provided for questions/concerns about the study per ClinicalTrials, but I had not contacted the Longwood IRB via the email you provided below, as it appeared the study was using an external, commercial IRB:


(" The study was approved by the Advarra Central Institutional Review Board (number PRO00037562) and registered to ClinicalTrials.gov." per doi:10.1016/j.ajog.2021.09.041).


("If you have any questions about your rights as a research participant, and/or concerns or complaints regarding this research study, contact... adviser@advarra.com" per https://hsph.harvard.edu/research/apple-womens-health-study/frequently-asked-questions/)


Today, I replied to my prior communications with the study email and added the Longwood IRB email you provided, and the Advarra email, and asked for an update. If you'd like we can wait to see if they respond, and if they still don't respond, I can let you know Monday and then you can reach out then, if you're willing.


I appreciate your assistance on this.

Thanks,

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Thursday, March 19th, 2026 at 8:39 AM, Green, Jonathan (NIH/OD) [E] <jonathan.green3@nih.gov> wrote:

> Dear Ms Gjovik,
>
> I can confirm that the nature of NIH's collaboration in this research does not provide us with any regulatory oversight over the conduct of the research.  However, if you desire,  I am happy to reach out to the leadership of the Harvard IRB, as they would be responsible for the ethical and regulatory oversight of the research.  I can either inquire generally as to their awareness of this complaint, or if you wish I can provide them with the email you initially sent to NIH.
>
> Thank you for bringing your concerns to us. I hope that you will be able to reach a satisfactory resolution. Please let me know if you would like me to contact the Harvard IRB.
>
> Sincerely
>
> Jonathan
>
> **Jonathan M Green, MD, MBA | Director**
>
> Office of Human Subjects Research Protections
>
> Office of the Director, National Institutes of Health

**p:** (301) 402-4387    **f:** (301) 402-3443    **m:** (301) 547-1277

**OHSRP:** (301) 402-3713



Hello Mr. Green,

Thank you for your response. I did contact Harvard's IRB and they did not respond, prior to me filing the complaint, which I mentioned in the complaint, and as of today they still have not responded. Its Apple's position I cannot talk to anyone except Apple and to do otherwise is sanctionable conduct (per Apple's pending motions in court requesting sanctions, contempt, gag orders, and other punishment of me).

It was my assumption that there may be some sort of trigger for NIH to investigate my complaint because Apple and Harvard chose to list it on the NIH website and also because NIH is apparently a formal partner in the study.

***NIH Partners With Apple and Harvard University on Women's Health Study:*** The new study will allow participants to track their menstrual cycles and help researchers understand their relationship to other health-related conditions., National Institute of Environmental Health Sciences News Releases, https://www.niehs.nih.gov/newsreleases/nih-partners-with-apple-and-harvard-university-on-womens-health-study

... The National Institute of Environmental Health Sciences (NIEHS), the NIH institute involved in the partnership, has several of the world's leading scientists on women's health and population studies. NIEHS will provide expert advice and data analysis for the Apple Women's Health Study.. "This is an exciting opportunity for NIEHS researchers to contribute to the study design and use the resulting data to answer novel questions, not only important to women of reproductive age, but to women of all ages," said Dale Sandler, Ph.D., chief of the NIEHS Epidemiology Branch. Allen Wilcox, M.D., Ph.D., Scientist Emeritus at NIEHS, has spent 40 years studying fertility and pregnancy, and welcomes this opportunity to work with Apple and colleagues at Harvard. He is optimistic about the medical advances that could come from this collaboration. "Studies conducted with commercial cycle and fertility tracking apps have great potential for

making important contributions to science, because they can enroll much larger samples of women and from far more diverse backgrounds," added Wilcox. "We want to do our part to make this new method of data collection a scientifically valid source of health information."

Can you please check and confirm what the NIH partnership status means regarding filing human research complaints?

Thank you!

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Wednesday, March 18th, 2026 at 1:11 PM, Green, Jonathan (NIH/OD) [E] <jonathan.green3@nih.gov> wrote:

> Dear Ms Gjovik
>
> A copy of the complaint email that you sent to NIEHS with regard to the Apple Womens Health Study was forwarded to me.  First, thank you for bringing this to our attention and for raising these important concerns.  I understand you have also filed a formal complaint with the Office of Human Research Protections (OHRP).
>
> As the research is not funded by the NIH, we have no jurisdiction over this research.  NIEHS involvement in this research is limited only to the analysis of de-identified data and has no other involvement in the conduct of this research.  The study is being conducted by the Harvard T. H. Chan School of Public Health.  The IRB that reviews research conducted by those investigators is the Harvard Longwood Campus IRB.  I would recommend you reach out directly to them and bring this important matter to their attention.  They would be the primary office responsible for investigating these allegations.  Their information can be found here https://hsph.harvard.edu/office/regulatory-affairs-and-research-compliance/harvard-longwood-campus-human-research-protection-program-hrpp/.  According to the website, their email contact is orarc@hsph.harvard.edu.

The Office of Human Research Protections within the Office of the Assistant Secretary for Health,  is responsible for oversight of the Common Rule and their jurisdiction is generally limited to federally funded or conducted research.  As you have filed directly with them, they will determine if they have regulatory authority over this research.

Again, thank you for raising these concerns and I am truly sorry for any distress that you may have experienced related to research.

Sincerely,

Jonathan

**Jonathan M Green, MD, MBA | Director**

Office of Human Subjects Research Protections

Office of the Director, National Institutes of Health

**p:** (301) 402-4387    **f:** (301) 402-3443   **m:** (301) 547-1277

**OHSRP:** (301) 402-3713



CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are confident the content is safe.

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Wednesday, March 18, 2026 4:58 PM
**To:** Green, Jonathan (NIH/OD) [E] <jonathan.green3@nih.gov>
**Cc:** Jukic, Anne Marie (NIH/NIEHS) [E] <jukica@niehs.nih.gov>; Gommel, Tiffany (NIH/OD) [E] <tiffany.gommel@nih.gov>; Grant, Nicole (NIH/OD) [E] <grantn@mail.nih.gov>; Sanders, Margaret (NIH/OD)

[E] <margaret.sanders@nih.gov>

**Subject:** [EXTERNAL] Re: study complaint

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are confident the content is safe.

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, March 19, 2026 2:49 PM
**To:** Green, Jonathan (NIH/OD) [E] <jonathan.green3@nih.gov>
**Subject:** RE: [EXTERNAL] Re: study complaint

**20.06 KB**    1 embedded image

# Exhibit C: Harvard IRB

# RE: Reporting an Incident to OHRP: Trial ID NCT04196595 (Apple Women's Health Study)

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | ORARC<orarc@hsph.harvard.edu> |
| CC | HSPH-Apple Women's Health Study<AppleWomensHealthStudy@hsph.harvard.edu>, ORARC<orarc@hsph.harvard.edu> |
| Date | Friday, March 20th, 2026 at 11:46 AM |

Hello Ms. Speier,

Thank you for the update and confirming the complaint is being reviewed.

I'm happy to provide more information or documentation if needed - just let me know.

Thank you.

Respectfully,
-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

On Friday, March 20th, 2026 at 10:23 AM, ORARC <orarc@hsph.harvard.edu> wrote:

> Hi Ashley,
>
> Thank you for your email.  We are looking into this and will be in touch if we have any questions.
>
> Best,
>
> Alyssa
>
> **Alyssa AK Speier, MS, CIP** (she/her)  /  Senior Associate Director
> Office of Regulatory Affairs & Research Compliance  /  Harvard T.H. Chan School of Public Health
>
> aspeier@hsph.harvard.edu  /  Office of Regulatory Affairs and Research Compliance | Harvard T.H. Chan School of Public Health
>
> Join the conversation: News | Facebook | LinkedIn | YouTube | Instagram | TikTok

**HARVARD T.H. CHAN** | SCHOOL OF PUBLIC HEALTH
Powerful ideas for a healthier world

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>

**Sent:** Thursday, March 19, 2026 2:38 PM

**To:** HSPH-Apple Women's Health Study <AppleWomensHealthStudy@hsph.harvard.edu>; ORARC <orarc@hsph.harvard.edu>

**Subject:** Fw: Reporting an Incident to OHRP: Trial ID NCT04196595 (Apple Women's Health Study)

Hello,

I still have not received any response from this group regarding this matter.

NIH leadership urged me to notify The Harvard Longwood Campus IRB about my complaint so I am cc'ing the email NIH provided here and adding our prior correspondence below.

If for some reason you did not consider my prior communications to be official complaints and requests for investigation, let me clarify that they were/are, I reiterate that here, and I hope to receive an update soon.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

------- Forwarded Message -------
From: Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
Date: On Wednesday, March 11th, 2026 at 2:05 AM
Subject: Reporting an Incident to OHRP: Trial ID NCT04196595 (Apple Women's Health Study)
To: OHRP-DCO@hhs.gov <OHRP-DCO@hhs.gov>

CC: AppleWomensHealthStudy@hsph.harvard.edu <AppleWomensHealthStudy@hsph.harvard.edu>, jukica@niehs.nih.gov <jukica@niehs.nih.gov>, baird@niehs.nih.gov <baird@niehs.nih.gov>

**OHRP Incident Report**

**Incident Type:** Serious Non-Compliance / Unanticipated Problem Involving Risks to Subjects

**Regulatory Framework**: 45 CFR Part 46 (Common Rule); 42 U.S.C. § 282(j)

**Reported by**: Ex-employee of Sponsor / Responsible Party

**Study Title:** Apple Women's Health Study

**Trial ID:** NCT04196595

**Principal Investigator / Conducting Institution:** Harvard T.H. Chan School of Public Health

**Sponsor / Responsible Party:** Apple Inc.

**Additional Federal Partner:** National Institute of Environmental Health Sciences (NIEHS)

**Trial Registration Date:** 2019 (ongoing as of 2026)

**Stated Study Goals:** (1) Identify Menstrual Cycle Patterns; (2) Epidemiologic Description of Menstrual Cycle; (3) Determine prevalence of gynecologic health conditions

Hello,

This complaint concerns the Apple Women's Health Study (AWHS), a clinical trial registered on ClinicalTrials.gov (NCT04196595 (https://clinicaltrials.gov/study/NCT04196595)) since 2019 and currently ongoing. The trial is sponsored by Apple Inc. and conducted by Harvard T.H. Chan School of Public Health, in partnership with NIEHS as part of what has been described as a major long-term study of women's health. Medscape reported the study in 2023 as "a 10-year project among Harvard, Apple, and the National Institute of Environmental Health Sciences (NIEHS) that is unprecedented in size and scope." (Medscape, 2023 (https://www.medscape.com/s/viewarticle/996078?form=fpf)) The subject matter involves collection of highly sensitive and intimate reproductive health data, specifically related to ovulation and menstruation. The ClinicalTrials page lists the top study goals as "Identify Menstrual Cycle Patterns" and "Epidemiologic Description of Menstrual Cycle" with a secondary goal of "Determine prevalence of gynecologic health conditions."

The subject matter of the trial involves ovulation and menstruation — intimate reproductive health data of a highly personal nature. The corporate sponsor has actively recruited its own employees as research subjects to increase enrollment numbers since at least 2019. This practice creates a structural and inescapable conflict of interest: employees being asked to participate by or through their employer (who is simultaneously the trial's sponsor) face an inherent power imbalance in which declining to participate may reasonably be perceived as carrying professional consequences. The team's own reports indicate that as of 2023, when the overall participation was around one hundred thousand, that only two states provided more than ten thousand participants -- California and Texas -- where the corporation's headquarters are located. In fact, California is the only state indicated to be well above ten thousand indicating it may even account for over 80% of the participants -- with a large amount originating from its corporate offices or the family members of its corporate employees. (Overall participant enrollment by state, https://hsph.harvard.edu/research/apple-womens-health-study/study-updates/2023-apple-womens-health-study-newsletter-four-years-in-review/).

Overall, the team's conduct raises serious compliance concerns under:

- 45 CFR 46.116(b)(2): Informed consent must be free from coercion or undue influence. Employer-to-employee recruitment by the sponsoring corporation constitutes a paradigmatic example of undue influence, as employees cannot freely decline without fear of workplace consequences.
- 45 CFR 46.111(a)(3) and 46.111(b): The IRB is required to ensure equitable subject selection and to apply additional protections when subjects are vulnerable to coercion. Employees of a trial's corporate sponsor constitute a vulnerable population in precisely the sense these provisions are designed to address. The IRB either approved this recruitment pathway without adequate safeguards, or the recruitment occurred without IRB knowledge — both of which are reportable failures.

This study/trial has been registered and operating since 2019. The recruitment of employees by the corporate sponsor appears to be a sustained and ongoing recruitment strategy, not an isolated incident. This constitutes continuing non-compliance within the meaning of 45 CFR Part 46. The IRB's apparent failure to identify or correct this practice over a multi-year period is itself a significant matter of concern warranting investigation.

This complaint concerns Apple Inc.'s response to a non-enrolled individual — a former Apple employee who declined enrollment and subsequently spoke publicly about the coercive nature of the study's recruitment practices and raised questions about the integrity of the trial's enrollment and consent process. In response, Apple Inc. has pursued legal action in federal court against that individual. In the matter of *Ashley Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.), Apple has taken the position that the employee's testimony, speech, and complaints about the corporation's recruitment practices are confidential, and has sought sealing orders, compelled deletion of public criticism, prior restraint gag orders, and sanctions against the individual for filing complaints with government agencies and speaking publicly about concerns that Apple's recruitment of employees into a highly personal medical study is unethical, improper, and likely

unlawful and that Apple was trying to designate her complaints as "confidential". (See *Ashley Gjovik v Apple Inc,* 3:23-cv-04597-EMC, Northern District of California, https://www.courtlistener.com/docket/67772913/gjovik-v-apple-inc/?filed_after=&filed_before=&entry_gte=&entry_lte=&order_by=desc).

The specific nature of the data at issue warrants particular attention. Apple's own litigation filings reveal that the study's scope as implemented includes monitoring of employee cervical mucus and vaginal secretions, and at the same time Apple also sought to register employees' sex partners and require those sex partners to execute non-disclosure agreements for a separate "study". I complained about both of these things -- while I worked at Apple and after. My deposition testimony at issue was simply summarizing my prior complaints about Apple's recruitment practices for this and other studies. Apple then further claimed in that litigation that employee complaints about being asked to submit to this type of study and monitoring are themselves confidential like trade secrets, and is currently seeking a gag order prohibiting employees from discussing any of it. The IRB's privacy assessment under 45 CFR 46.111(a)(7) must be evaluated against this specific reality — not merely the abstract description of a menstrual health study, but an employer asserting proprietary control over employees' reproductive and sexual data, the identities of their sexual partners, and the complaints those employees made about being subjected to it.

In making this complaint to you right now and when I attach a copy in my court filings for this matter, Apple will claim the content in this email is confidential and proprietary, should be sealed, and I should be sanctioned for continuing to violate court "rules" (where the corporation is abusing a protective order to apply to existing complaints and to use as a private prior restraint against employees and critics about its operations). This secrecy includes, and is targeted to conceal, how Apple runs recruitment for clinical trials including ones that are done as a formal partnership with the government (like here, with NIEHS). An employer recruiting its own employees to disclose intimate reproductive health information as research subjects raises acute privacy concerns that the IRB was required to specifically address under 45 CFR 46.111(a)(7) (The IRB must ensure adequate provisions to protect the privacy of subjects and to maintain the confidentiality of data). When the entity collecting this data is also the subject's employer, the adequacy of any privacy protections is inherently compromised. Employees have reasonable cause to fear that reproductive health information disclosed in a sponsor-controlled study may not remain segregated from their employment relationship.

Apple's position, as stated in that litigation including attached filings, is that it is impermissible for the complainant to raise these concerns publicly, to communicate them to third parties, or to submit this very complaint to OHRP. Apple appears to be mis-using a legal processes as a private prior restraint mechanism against employees and critics discussing how the corporation operates clinical trials conducted in formal partnership with the federal government. This raises a question about how often Apple engages in this kind of conduct and how else it's obstructed complaints about this study.

Further, Apple's conduct implicates a number of issues in the clinical trial and human research regulatory framework:

- **42 U.S.C. § 282(j):** Clinical trial registration exists precisely because human subjects research is subject to public accountability. Apple Inc. cannot simultaneously hold a registered trial out as a public research enterprise — particularly one conducted in federal partnership with NIEHS — and seek court orders suppressing public speech about how that trial recruits its subjects.
- **45 CFR 46.116(b)(8):** Informed consent must identify whom subjects may contact with questions or concerns about the research and their rights. This provision reflects the regulatory framework's treatment of the ability to raise concerns as an intrinsic right — not a privilege the sponsor may litigate away through injunctive relief.
- **Chilling Effect on Current and Future Subjects:** By pursuing legal action against a person who declined to enroll and raised compliance concerns, Apple has sent a direct signal to every current and potential subject that raising concerns about this trial carries severe legal consequences. This compounds the coercive environment described above and further undermines the voluntariness of any consent obtained from employees in this environment.
- **Sponsor's Posture Toward Compliance:** The decision to pursue legal suppression of scrutiny — rather than address the underlying recruitment concerns — is directly relevant to OHRP's assessment of whether Apple Inc. can be trusted to operate a compliant human subjects research program. It reflects an institutional posture that treats public accountability as a threat to be neutralized rather than an obligation to be met.

The complainant respectfully requests that OHRP:

- Investigate the IRB's review and approval of the employee recruitment pathway, and assess whether adequate protections against undue influence were required and implemented.
- Assess whether consent processes conducted under this coercive recruitment environment meet the voluntariness requirements of 45 CFR 46.116.
- Determine how many participants in the total participants for this study are Apple employees or direct family members of Apple employees, and determine what % of the total population of the study makes the study population impermissibly dominant with employees.
- Evaluate whether the IRB's privacy provisions under 45 CFR 46.111(a)(7) adequately address the risks created by a corporate employer-sponsor collecting reproductive health data from its own employees.
- Consider Apple Inc.'s litigation conduct in *Gjovik v. Apple Inc.,* No. 3:23-cv-04597-EMC (N.D. Cal.), as evidence bearing on the sponsor's compliance posture and the integrity of the trial's ongoing operations.
- Inquire whether other complaints or concerns about this study have been similarly suppressed by Apple through any type of conduct, including litigation "protective orders"
- Determine whether suspension or additional oversight of the trial is warranted pending investigation.

The following documents are submitted in support of this complaint or are available upon request:

- ClinicalTrials.gov registration record (https://clinicaltrials.gov/study/NCT04196595)
- Documentation of legal action and threatened speech restraints and other injunctive relief against complainant (*Ashley Gjovik v Apple Inc,* 3:23-cv-04597-EMC, Northern District of California)
- AWHS 2023 Four Years in Review Newsletter (participant enrollment by state): HSPH.edu (https://hsph.harvard.edu/research/apple-womens-health-study/study-updates/2023-apple-womens-health-study-newsletter-four-years-in-review/)
- Medscape coverage of AWHS scope: Medscape, 2023 (https://www.medscape.com/s/viewarticle/996078?form=fpf)
- March 14 2023 Telerama magazine article (translated from French to English) where I and my coworkers criticized Apple's use of employee data for this specific study.

Note: I contacted the Study's contact list at Harvard (cc'd here) on March 8th, asking for a response on these matters but received no response by March 10th. I told them if I didn't receive a response I'd file by end of day, and no response was provided so now I'm filing that complaint.

This complaint is submitted in good faith based on direct knowledge of the events described. The complainant is aware that Apple Inc. may contend that the submission of this complaint itself violates litigation-related orders or confidentiality designations. The complainant submits that the filing of a good-faith regulatory complaint with a federal oversight body is protected activity and that any such contention by Apple would itself constitute further evidence of the sponsor's attempt to suppress oversight of a federally registered human subjects research study. The complainant understands that OHRP may contact the submitter for additional information.

**Ashley Gjovik, B.S., PMP, J.D.**
Dated: March 11 2026

San Jose, California

Ex-Apple Employee (2015-2021)

-----

Prior Correspondence

----

On Tuesday, March 10th, 2026 at 1:26 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

No one has responded.

According, I plan to file the complaint to US gov by end of day today.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Sunday, March 8th, 2026 at 8:35 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I have some questions about the Apple Women's Health Study (trial id. NCT04196595).

Apple is currently asserting legal claims against me in federal court alleging that this study is secret, any prior requests to participate in this study or communications about participation are secret, people's experiences or thoughts related to this study are secret, and that I should be sanctioned and held in contempt for even talking about the existence of this public study-- with Apple asking for a gag order to be issued against me prohibiting me from talking about this study, any of Apple's communications to employees about their menstruation or vaginal secretions, and that Apple also asked to register employee sex partners and make the sex partners sign NDAs -- all of which Apple claims is secret.

I'd like to understand from the study administrators what their position is on this matter and if Harvard will work with Apple to resolve this issue. Otherwise, I'm preparing to file a complaint to NIH regarding Apple's conduct about this study.

The lawsuit with Apple's pending motions requesting sanctions, contempt findings, gag orders, and injunctions is at *Ashley M. Gjovik v. Apple Inc.,* 23-cv-04597-EMC (N.D. Cal. 2023-pending). https://www.courtlistener.com/docket/67772913/gjovik-v-apple-inc/?page=2

If I file a complaint to NIH, I will definitely include Apple's filings with their lawyers arguments that even if the studies are public, if anyone complains about the studies, the complaint and underlying facts then become "confidential" and sharing that information with the government, courts, public, or others would be equivalent to violating an NDA, "leaking" trade secret information, and justify immediate termination of employment or other comparable punishment.

Its my understanding that such misconduct by Apple could likely cause NIH to cancel the study and to take disciplinary action against both Apple and Harvard. Accordingly, I'd assume you folks would appreciate an opportunity to talk some sense into Apple about all of this.

Please let me know how you'd like to proceed.

-Ashley


—

**Ashley M. Gjøvik, B.S., J.D., PMP**

---

**7.48 KB**    1 embedded image

# Exhibit D: Advarra IRB

# Re: Concern Regarding Apple Women's Health study (#1166204)

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To      Nicole Burbul<nicole.burbul@advarra.com>

Date    Wednesday, March 25th, 2026 at 11:02 AM

Hello Ms. Burbul,

Thank you for reaching out and for looking into this matter.

To clarify my primary concern: Apple Inc., as the sponsor of this study, is asserting that any and all recruitment of its employees into the study is "confidential." Apple's legal filings in *Gjovik v. Apple Inc.,* No. 3:23-cv-04597-EMC (N.D. Cal.), state that employees—including myself—would violate their employment agreements by disclosing to anyone, including oversight bodies such as yours, that Apple was recruiting employees. Apple has moved to restrain my speech on this subject, to seal court records discussing this matter, and to sanction me for raising these complaints. I attached those filings when I contacted NIH and Harvard; if you did not receive them, please let me know and I will send them to you directly. The filings include Apple's counsel making each of these arguments on the record.

This is directly relevant to your request for recruitment communications. Apple expressly claimed its recruitment emails as "confidential." One of the grounds Apple cited as a "legitimate" basis for terminating my employment in 2021—rather than acknowledging retaliation for my reporting of hazardous waste violations to the EPA and filing NLRB charges, among other protected activity—was that I had complained about a recruitment email for a separate "study" Apple was conducting, which involved capturing high-resolution three-dimensional scans of ears and ear canals. Apple maintained that that study, and all of its studies, are so confidential that they cannot be discussed with anyone outside the company—and in some cases, even with others inside the company. In other words, Apple has already taken the position that an employee sharing or even complaining about a study recruitment email is a terminable offense. Apple has now also claimed my social media, blog posts, and legal filings about Apple's recruitment practices and communications are secret akin to trade secrets.

Accordingly, given Apple's pending motions (not yet ruled upon), if I were to produce those recruitment materials, Apple would assert that I was violating the intellectual property provisions of my employment agreement and engaging in conduct for which it is already seeking sanctions, contempt findings, and gag orders. I respectfully submit that Advarra, as the IRB, has both the authority to request recruitment materials directly from the study team and from Apple as the corporate sponsor. The IRB should not need to rely on a complainant to produce documents that the sponsor is actively litigating to suppress. Apple's position—that recruitment materials for a federally registered clinical trial cannot be disclosed even to the overseeing IRB—itself warrants scrutiny by your office.

That said, I am happy to cooperate with your office and provide what I can. My complaints about Apple's recruitment practices for this and other studies have been public for years, were pleaded in the same lawsuit in which Apple now claims the information is secret, and were covered in published news articles—including one in which a former coworker described the cervical mucus kit Apple provided to her and expressed deep regret about having participated in such a study with her employer.

Apple's principal defense, when confronted with the fact that the study is already public, has been to claim that even if it is already public that Apple is studying menstruation and ovulation, Apple's communications with employees—including the very fact that Apple is recruiting employees—are confidential and cannot be discussed. Apple has further represented that it may be conducting a separate internal study performing the same or similar observations, which it claims is not public, while conceding that the information I disclosed was the same regardless of which study it pertained to. Apple's position is that it was the employee's act of complaining about the employer's recruitment and study-administration conduct that rendered the disclosure sanctionable.

Apple is advancing all of these arguments on a public docket, which creates a coercive effect on current employees who may be monitoring the proceedings or who read the filings at a later date. Notably, Apple is subject to a federal consent agreement with the National Labor Relations Board and me in which it agreed to stop claiming that employee complaints about work conditions are confidential; its present arguments are in breach of that agreement. Apple has also never acknowledged that, even if it maintains a separate internal study, employees retain the right to discuss this publicly registered study.

Finally, Apple's representation that it may be conducting a parallel internal study collecting the same or similar reproductive health data also raises serious independent concerns. Under 45 CFR Part 46, any research involving human subjects requires IRB review and approval. If Apple is conducting such a study, it must have undergone independent IRB review—and the IRB of record for the public study would need to be aware of overlapping research to properly assess cumulative risks to participants, particularly if any participants are enrolled in both. Participants in the public study were also entitled under 45 CFR 46.116 to be informed if their data could be combined with, compared to, or supplemented by a parallel undisclosed data set; the omission of that information from the consent process would be material. Additionally, under 42 U.S.C. § 282(j), applicable clinical trials must be registered on ClinicalTrials.gov—an unregistered parallel study collecting the same data would raise questions about whether the sponsor is evading federal registration requirements.

Further, the public study is associated with federal grant funding from NIH and involves a formal partnership with the National Institute of Environmental Health Sciences. Under the NIH Grants Policy Statement and 2 CFR Part 200 (Uniform Guidance), grant recipients have an affirmative obligation to disclose all other support, including any ongoing or pending research with scientific overlap. A parallel sponsor-controlled study collecting the same reproductive health data would constitute overlapping research that must be disclosed to the funding agency. The public study has also produced published academic articles, and under ICMJE guidelines—which govern publication in virtually all major biomedical journals—researchers are required to disclose all related research, funding sources, and the existence of related data sets. Failure to disclose a parallel study in either the grant reporting or the published literature would implicate federal grant compliance requirements and scientific research integrity standards. It does not appear that Apple has disclosed any such parallel study to Advarra, to Harvard, to NIH, or in any published materials—nor has there been any public explanation of how each data set is being used, whether the data sets are being combined, or how participants' informed consent accounts for any of this. I note that it is also entirely possible that what Apple characterizes as a separate "internal" study is in fact the same study or an extension of it (such as with Apple providing its own "cervical mucus measuring kit")—which would make Apple's secrecy arguments all the more untenable.

Respectfully,
-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

On Tuesday, March 24th, 2026 at 7:25 AM, Nicole Burbul <nicole.burbul@advarra.com> wrote:

> Good morning Ashley,
>
> My name is Nicole Burbul, and I am the Associate Director of IRB Support here at Advarra, working closely with the Safety Team. I received your concerns regarding a study under Dr. Shruthi Mahalingaiah via our Advarra Adviser. Thank you for raising these concerns, as we take them seriously.
>
> One of the main concerns seems to be the recruitment of employees by the corporate sponsor. Could you please elaborate on that aspect and provide any information such as flyers, emails, etc that may have been used for recruitment for us to review?
>
> Thank you,
>
> Nicole
>
> **Nicole Burbul** | Associate Director, IRB Support
> **O** 240-406-9802 | nicole.burbul@advarra.com
> Eastern Time | **Main Office** 410-884-2900 | **advarra.com**
> Follow us on **LinkedIn**
> **Pronouns** she/her
> _____

On Thursday, March 19th, 2026 at 11:48 AM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:
> + adviser@advarra.com (Pro00037562)
>
> —
>
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> On Thursday, March 19th, 2026 at 11:37 AM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:
>> Hello,

I still have not received any response from this group regarding this matter.

NIH leadership urged me to notify The Harvard Longwood Campus IRB about my complaint so I am cc'ing the email NIH provided here and adding our prior correspondence below.

If for some reason you did not consider my prior communications to be official complaints and requests for investigation, let me clarify that they were/are, I reiterate that here, and I hope to receive an update soon.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

------- Forwarded Message -------
From: Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
Date: On Wednesday, March 11th, 2026 at 2:05 AM
Subject: Reporting an Incident to OHRP: Trial ID NCT04196595 (Apple Women's Health Study)
To: OHRP-DCO@hhs.gov <OHRP-DCO@hhs.gov>
CC: AppleWomensHealthStudy@hsph.harvard.edu <AppleWomensHealthStudy@hsph.harvard.edu>, jukica@niehs.nih.gov <jukica@niehs.nih.gov>, baird@niehs.nih.gov <baird@niehs.nih.gov>

## OHRP Incident Report

**Incident Type:** Serious Non-Compliance / Unanticipated Problem Involving Risks to Subjects
**Regulatory Framework**: 45 CFR Part 46 (Common Rule); 42 U.S.C. § 282(j)
**Reported by**: Ex-employee of Sponsor / Responsible Party

**Study Title:** Apple Women's Health Study
**Trial ID:** NCT04196595
**Principal Investigator / Conducting Institution:** Harvard T.H. Chan School of Public Health
**Sponsor / Responsible Party:** Apple Inc.
**Additional Federal Partner:** National Institute of Environmental Health Sciences (NIEHS)
**Trial Registration Date:** 2019 (ongoing as of 2026)
**Stated Study Goals:** (1) Identify Menstrual Cycle Patterns; (2) Epidemiologic Description of Menstrual Cycle; (3) Determine prevalence of gynecologic health conditions

Hello,

This complaint concerns the Apple Women's Health Study (AWHS), a clinical trial registered on ClinicalTrials.gov (NCT04196595 (https://clinicaltrials.gov/study/NCT04196595)) since 2019 and currently ongoing. The trial is sponsored by Apple Inc. and conducted by Harvard T.H. Chan School of Public Health, in partnership with NIEHS as part of what has been described as a major long-term study of women's health. Medscape reported the study in 2023 as "a 10-year project among Harvard, Apple, and the National Institute of Environmental Health Sciences (NIEHS) that is unprecedented in size and scope." (Medscape, 2023 (https://www.medscape.com/s/viewarticle/996078?form=fpf)) The subject matter involves collection of highly

sensitive and intimate reproductive health data, specifically related to ovulation and menstruation. The ClinicalTrials page lists the top study goals as "Identify Menstrual Cycle Patterns" and "Epidemiologic Description of Menstrual Cycle" with a secondary goal of "Determine prevalence of gynecologic health conditions."

The subject matter of the trial involves ovulation and menstruation — intimate reproductive health data of a highly personal nature. The corporate sponsor has actively recruited its own employees as research subjects to increase enrollment numbers since at least 2019. This practice creates a structural and inescapable conflict of interest: employees being asked to participate by or through their employer (who is simultaneously the trial's sponsor) face an inherent power imbalance in which declining to participate may reasonably be perceived as carrying professional consequences. The team's own reports indicate that as of 2023, when the overall participation was around one hundred thousand, that only two states provided more than ten thousand participants -- California and Texas -- where the corporation's headquarters are located. In fact, California is the only state indicated to be well above ten thousand indicating it may even account for over 80% of the participants -- with a large amount originating from its corporate offices or the family members of its corporate employees. (Overall participant enrollment by state, https://hsph.harvard.edu/research/apple-womens-health-study/study-updates/2023-apple-womens-health-study-newsletter-four-years-in-review/).

Overall, the team's conduct raises serious compliance concerns under:
- 45 CFR 46.116(b)(2): Informed consent must be free from coercion or undue influence. Employer-to-employee recruitment by the sponsoring corporation constitutes a paradigmatic example of undue influence, as employees cannot freely decline without fear of workplace consequences.
- 45 CFR 46.111(a)(3) and 46.111(b): The IRB is required to ensure equitable subject selection and to apply additional protections when subjects are vulnerable to coercion. Employees of a trial's corporate sponsor constitute a vulnerable population in precisely the sense these provisions are designed to address. The IRB either approved this recruitment pathway without adequate safeguards, or the recruitment occurred without IRB knowledge — both of which are reportable failures.

This study/trial has been registered and operating since 2019. The recruitment of employees by the corporate sponsor appears to be a sustained and ongoing recruitment strategy, not an isolated incident. This constitutes continuing non-compliance within the meaning of 45 CFR Part 46. The IRB's apparent failure to identify or correct this practice over a multi-year period is itself a significant matter of concern warranting investigation.

This complaint concerns Apple Inc.'s response to a non-enrolled individual — a former Apple employee who declined enrollment and subsequently spoke publicly about the coercive nature of the study's recruitment practices and raised questions about the integrity of the trial's enrollment and consent process. In response, Apple Inc. has pursued legal action in federal court against that individual. In the matter of *Ashley Gjovik v. Apple Inc.*, Case No. 3:23-cv-04597-EMC (N.D. Cal.), Apple has taken the position that the employee's testimony, speech, and complaints about the corporation's recruitment practices are confidential, and has sought sealing orders, compelled deletion of public criticism, prior restraint gag orders, and sanctions against the individual for filing complaints with government agencies and speaking publicly about concerns that Apple's recruitment of employees into a highly personal medical study is unethical, improper, and likely unlawful and that Apple was trying to designate her complaints as "confidential". (See *Ashley Gjovik v Apple Inc,* 3:23-cv-04597-EMC, Northern District of California, https://www.courtlistener.com/docket/67772913/gjovik-v-apple-inc/?filed_after=&filed_before=&entry_gte=&entry_lte=&order_by=desc).

The specific nature of the data at issue warrants particular attention. Apple's own litigation filings reveal that the study's scope as implemented includes monitoring of employee cervical mucus and vaginal secretions, and at the same time Apple also sought to register employees' sex partners and require those sex partners to execute non-disclosure agreements for a separate "study". I complained about both of these things -- while I worked at Apple and after. My deposition testimony at issue was simply summarizing my prior complaints about Apple's recruitment practices for this and other studies. Apple then further claimed in that litigation that employee complaints about being asked to submit to this type of study and monitoring are themselves confidential like trade secrets, and is currently seeking a gag order prohibiting employees from discussing any of it. The IRB's privacy assessment under 45 CFR 46.111(a)(7) must be evaluated against this specific reality — not merely the abstract description of a menstrual health study, but an employer asserting proprietary control over employees' reproductive and sexual data, the identities of their sexual partners, and the complaints those employees made about being subjected to it.

In making this complaint to you right now and when I attach a copy in my court filings for this matter, Apple will claim the content in this email is confidential and proprietary, should be sealed, and I should be sanctioned for continuing to violate court "rules" (where the corporation is abusing a protective order to apply to existing complaints and to use as a private prior restraint against employees and critics about its operations). This secrecy includes, and is targeted to conceal, how Apple runs recruitment for clinical trials including ones that are done as a formal partnership with the government (like here, with NIEHS). An employer recruiting its own employees to disclose intimate reproductive health information as research subjects raises acute privacy concerns that the IRB was required to specifically address under 45 CFR 46.111(a)(7) (The IRB must ensure adequate provisions to protect the privacy of subjects and to maintain the confidentiality of data). When the entity collecting this data is also the subject's employer, the adequacy of any privacy protections is inherently compromised. Employees have reasonable cause to fear that reproductive health information disclosed in a sponsor-controlled study may not remain segregated from their employment relationship.

Apple's position, as stated in that litigation including attached filings, is that it is impermissible for the complainant to raise these concerns publicly, to communicate them to third parties, or to submit this very complaint to OHRP. Apple appears to be mis-using a legal processes as a private prior restraint mechanism against employees and critics discussing how the corporation operates clinical trials conducted in formal partnership with the federal government. This raises a question about how often Apple engages in this kind of conduct and how else it's obstructed complaints about this study.

Further, Apple's conduct implicates a number of issues in the clinical trial and human research regulatory framework:

- **42 U.S.C. § 282(j):** Clinical trial registration exists precisely because human subjects research is subject to public accountability. Apple Inc. cannot simultaneously hold a registered trial out as a public research enterprise — particularly one conducted in federal partnership with NIEHS — and seek court orders suppressing public speech about how that trial recruits its subjects.
- **45 CFR 46.116(b)(8):** Informed consent must identify whom subjects may contact with questions or concerns about the research and their rights. This provision reflects the regulatory framework's treatment of the ability to raise concerns as an intrinsic right — not a privilege the sponsor may litigate away through injunctive relief.
- **Chilling Effect on Current and Future Subjects:** By pursuing legal action against a person who declined to enroll and raised compliance concerns, Apple has sent a direct signal to every current and potential subject that raising concerns about this trial carries severe legal consequences. This

compounds the coercive environment described above and further undermines the voluntariness of any consent obtained from employees in this environment.

- **Sponsor's Posture Toward Compliance:** The decision to pursue legal suppression of scrutiny — rather than address the underlying recruitment concerns — is directly relevant to OHRP's assessment of whether Apple Inc. can be trusted to operate a compliant human subjects research program. It reflects an institutional posture that treats public accountability as a threat to be neutralized rather than an obligation to be met.

The complainant respectfully requests that OHRP:

- Investigate the IRB's review and approval of the employee recruitment pathway, and assess whether adequate protections against undue influence were required and implemented.
- Assess whether consent processes conducted under this coercive recruitment environment meet the voluntariness requirements of 45 CFR 46.116.
- Determine how many participants in the total participants for this study are Apple employees or direct family members of Apple employees, and determine what % of the total population of the study makes the study population impermissibly dominant with employees.
- Evaluate whether the IRB's privacy provisions under 45 CFR 46.111(a)(7) adequately address the risks created by a corporate employer-sponsor collecting reproductive health data from its own employees.
- Consider Apple Inc.'s litigation conduct in *Gjovik v. Apple Inc.,* No. 3:23-cv-04597-EMC (N.D. Cal.), as evidence bearing on the sponsor's compliance posture and the integrity of the trial's ongoing operations.
- Inquire whether other complaints or concerns about this study have been similarly suppressed by Apple through any type of conduct, including litigation "protective orders"
- Determine whether suspension or additional oversight of the trial is warranted pending investigation.

The following documents are submitted in support of this complaint or are available upon request:

- ClinicalTrials.gov registration record (https://clinicaltrials.gov/study/NCT04196595)
- Documentation of legal action and threatened speech restraints and other injunctive relief against complainant (*Ashley Gjovik v Apple Inc,* 3:23-cv-04597-EMC, Northern District of California)
- AWHS 2023 Four Years in Review Newsletter (participant enrollment by state): HSPH.edu (https://hsph.harvard.edu/research/apple-womens-health-study/study-updates/2023-apple-womens-health-study-newsletter-four-years-in-review/)
- Medscape coverage of AWHS scope: Medscape, 2023 (https://www.medscape.com/s/viewarticle/996078?form=fpf)
- March 14 2023 Telerama magazine article (translated from French to English) where I and my coworkers criticized Apple's use of employee data for this specific study.

Note: I contacted the Study's contact list at Harvard (cc'd here) on March 8th, asking for a response on these matters but received no response by March 10th. I told them if I didn't receive a response I'd file by end of day, and no response was provided so now I'm filing that complaint.

This complaint is submitted in good faith based on direct knowledge of the events described. The complainant is aware that Apple Inc. may contend that the submission of this complaint itself violates litigation-related orders or confidentiality designations. The complainant submits that the filing of a good-faith regulatory complaint with a federal oversight body is protected activity and that any such contention by Apple would itself constitute further evidence of the sponsor's attempt to suppress oversight of a federally registered human subjects research study. The complainant understands that OHRP may contact the submitter for additional

information.

**Ashley Gjovik, B.S., PMP, J.D.**
Dated: March 11 2026
San Jose, California
Ex-Apple Employee (2015-2021)

-----

Prior Correspondence

----

On Tuesday, March 10th, 2026 at 1:26 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

No one has responded.

According, I plan to file the complaint to US gov by end of day today.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

On Sunday, March 8th, 2026 at 8:35 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I have some questions about the Apple Women's Health Study (trial id. NCT04196595).

Apple is currently asserting legal claims against me in federal court alleging that this study is secret, any prior requests to participate in this study or communications about participation are secret, people's experiences or thoughts related to this study are secret, and that I should be sanctioned and held in contempt for even talking about the existence of this public study-- with Apple asking for a gag order to be issued against me prohibiting me from talking about this study, any of Apple's communications to employees about their menstruation or vaginal secretions, and that Apple also asked to register employee sex partners and make the sex partners sign NDAs -- all of which Apple claims is secret.

I'd like to understand from the study administrators what their position is on this matter and if Harvard will work with Apple to resolve this issue. Otherwise, I'm preparing to file a complaint to NIH regarding Apple's conduct about this study.

The lawsuit with Apple's pending motions requesting sanctions, contempt findings, gag orders, and injunctions is at  *Ashley M. Gjovik v. Apple Inc.,* 23-cv-04597-EMC (N.D. Cal. 2023-pending). https://www.courtlistener.com/docket/67772913/gjovik-v-apple-inc/?page=2

If I file a complaint to NIH, I will definitely include Apple's filings with their lawyers arguments that even if the studies are public, if anyone complains about the studies, the complaint and underlying facts then become "confidential" and sharing that information with the government, courts, public, or others would be equivalent to violating an NDA, "leaking" trade secret information, and justify immediate termination of employment or other comparable punishment.

Its my understanding that such misconduct by Apple could likely cause NIH to cancel the study and to take disciplinary action against both Apple and Harvard. Accordingly, I'd assume you folks would appreciate an opportunity to talk some sense into Apple about all of this.

Please let me know how you'd like to proceed.

-Ashley

—

**Ashley M. Gjøvik, B.S., J.D., PMP**