Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br> **Apple Inc.**, *a corporation,* <br><br> Defendant. | **Case No.** <br> **3:23-CV-04597-EMC (KAW)** <br><br> **Discovery Letter** <br><br> **Re. Production Protocol for Plaintiff's Medical Records** |

## Discovery Letter re: Medical Records

Dear Judge Westmore:

1.    The Plaintiff writes in connection with the pending Protective Order dispute (Dkts. i.e., 284, 297, 302, 304, 307, 320, etc.) to raise an urgent related issue. Apple is now serving medical records subpoenas on Plaintiff's healthcare providers. The subpoenas direct all production exclusively to Apple's counsel, pre-designate all records as "CONFIDENTIAL Pursuant to the Protective Order," and contain no provision for production to Plaintiff. Apple rejected Plaintiff's HIPAA-and California compliant authorization that would have resolved all of these issues, and instead chose to serve subpoenas that route Plaintiff's own medical records through the same Protective Order already at issue before this Court which Plaintiff had asked to revoke/nullify. Plaintiff respectfully requests guidance before records begin flowing.

2.    (1) That the Court direct Apple to amend its subpoenas to include dual-production language directing providers to produce Plaintiff's medical records simultaneously to both parties, so that Plaintiff receives unrestricted copies of her own records outside the Protective Order framework. The Court has authority to specify the terms and method of discovery under FRCP 26(c)(1)(B)-(C). (2) That the Court clarify that the Protective Order's return/destruction provision (§ 12) does not require Plaintiff to destroy copies of her own medical records at the conclusion of this litigation and cannot be subject to prior restraint or other speech restrictions regarding her own medical records. (3) In the alternative, that the Court confirm Plaintiff may independently request copies of the same records from her providers under her statutory rights (HIPAA 45 C.F.R. § 164.524; Cal. Health & Safety Code § 123110; Cal. Evid. Code § 1158), and that records so obtained are not discovery material subject to the Protective Order. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984) (protective order "does not restrict the dissemination of the information if gained from other sources").

## APPLE'S SUBPOENAS ARE DEFICIENT AND WILL CAUSE PROVIDER CONFUSION

3.    Apple's counsel previously told this Court that an authorization was required to obtain these records. (Dkt. 276 - *Discovery Letter Brief Regarding Subpoenas for Plaintiff's Medical Records filed by Apple Inc*) Plaintiff drafted multiple authorizations that complied with HIPAA and California law. Apple repeatedly rejected them and  instead insisted upon serving subpoenas without any authorization — leaving providers to evaluate Apple's subpoenas against the requirements of 45 C.F.R. § 164.512(e), which permits disclosure in response to a subpoena only with satisfactory assurances regarding notice or a qualified protective order. Apple's subpoena (Ex. D) contains deficiencies that Plaintiff identified, raised to Apple, and corrected in her draft authorization — corrections Apple intentionally chose to disregard.

4.    ***No separation of psychotherapy notes.*** Exhibit D requests "Psychotherapy notes, psychiatric and psychological reports and summaries" (item 1.e) bundled with all other records in a single demand. Under HIPAA, psychotherapy notes receive heightened protection and require a separate, standalone authorization that may not be combined with an authorization for other PHI. 45 C.F.R. § 164.508(a)(2), (b)(3)(ii). Plaintiff's draft authorization addressed this by separating psychotherapy into a standalone exhibit. (Ex. B at 5-6.) Apple rejected that draft and served a subpoena that bundles everything together. Providers — particularly therapists and psychiatrists — have a legally supportable basis to object

to or decline production in response to the subpoena as served.

5. ***No protective order provided to providers.*** Exhibit D directs production as "CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025." Apple did not include a copy of the Protective Order with the subpoena. Non-party providers have to find the PACER docket and have no way to know what "CONFIDENTIAL" means under an order they have never seen — what obligations it imposes on them, who may access the records, or what the retention and destruction requirements are.

6. ***Missing standard protections***. Because Apple chose to serve subpoenas without an authorization, providers must independently assess whether the subpoena satisfies § 164.512(e)'s requirements for disclosure. Apple's subpoena includes no expiration date, no revocation terms, and no patient notices — protections that Plaintiff's draft authorization included and that providers expect to see before releasing PHI. The absence of these protections increases the likelihood of provider objections, delayed production, and further motion practice — all of which Plaintiff's authorization would prevent.

7. ***No production to Plaintiff.*** Apple's subpoena directs production exclusively to Orrick. Plaintiff requested dual production in her authorization, in emails on March 12, 16, 20, and 25, and directly asked Apple: "*Is there a reason you're still refusing to use the medical authorization I drafted with the request to produce records to me directly?*" (Mar. 25, 2026 email, Ex. A.) Apple never provided a reason.

8. ***Pre-designation of all records as Confidential for all parties.*** The last line of Exhibit D states: "All documents should be produced as CONFIDENTIAL Pursuant to the Protective Order." This is a blanket, pre-review designation — applied before any record is reviewed, to every document, regardless of content, on both parties in the litigation . The Protective Order itself (Dkt. 235, § 5.1) prohibits "mass, indiscriminate, or routinized designations." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (blanket designations without particularized showing are disfavored).

## THE PROTECTIVE ORDER CREATES A STRUCTURAL IMPOSSIBILITY FOR PLAINTIFF'S OWN RECORDS

9. Apple has never given Plaintiff a straight answer on the confidentiality of these records. Plaintiff raised the core problem directly: if Apple insists that records flow through the Protective Order to Apple first and then to Plaintiff, then the records arrive to Plaintiff already designated "CONFIDENTIAL" — because Apple's subpoena instructs providers to designate them that way. Plaintiff asked Apple to confirm that her own records would not be treated as confidential as to her. Apple's response was that it "will not add a confidentiality designation" — but that is not the same thing, because the designation is already in the subpoena. Plaintiff pointed this out explicitly: "your subpoena says the providers have to provide the records to you as confidential under the protective order. You're then now saying you won't 'add' a confidentiality designation, but there would already be one from the provider, per your request in the subpoena. What am I missing here?" (Mar. 25, 2026 email, Ex. A.) Apple did not answer.

10. Plaintiff then went to the heart of the problem: if her records contain complaints about Apple — about the chip fab exposure, the user studies, the workplace injuries — Apple would claim that information is Apple's confidential information and fight to keep the designation. Plaintiff would then have to challenge the designation under PO § 6. But the PO's challenge mechanism is binary: if Plaintiff wins,

the designation is removed for both parties — meaning the records are no longer confidential for Apple either. Plaintiff cannot get unrestricted access to her own records without stripping the confidentiality protections that Apple itself needs for medical records in its possession. Plaintiff raised this exact problem in her emails. (Feb. 28, Mar. 25, 2026 emails, Ex. A.) Apple's response was to repeat that it would "not add" a designation — never addressing the designation already embedded in the subpoena, and never addressing the structural impossibility Plaintiff identified.

11.     The challenge mechanism does not work for a party's own records. Under PO § 6, if Plaintiff challenges a Confidential designation, the designating party must justify it or the designation is removed — for both parties. There is no mechanism for asymmetric treatment. For Plaintiff to obtain unrestricted access to her own medical records, she must argue those records are not confidential at all — which strips the privacy protections that should bind Apple. The PO forces Plaintiff to choose between accepting restrictions on her own health records or removing protections that Apple itself needs. This binary is the product of applying a commercial-litigation confidentiality order to a plaintiff-patient's own medical records — a purpose the order was not designed to serve. The return/destruction provision confirms the mismatch. Under PO § 12, Confidential material must be returned or destroyed at the end of litigation. If Plaintiff's medical records are routed through the PO, she would be required to destroy copies of her own health records when this case concludes. The HIPAA qualified protective order requirement (45 C.F.R. § 164.512(e)(1)(v)(B)) contemplates return to the covered entity — not destruction by the patient of her own records.

12.     Dual production resolves the structural problem. If providers produce directly to Plaintiff, her copies are not discovery material and the PO does not apply to them. *Seattle Times,* 467 U.S. at 34, 37. Apple's copies remain subject to confidentiality. Both parties get what they need. Plaintiff's proposed Qualified Protective Order (Ex. B at 7-9) was designed for exactly this purpose — it provided dual production (¶ 3), preserved Plaintiff's independent right to her own records (¶ 8), and maintained Apple's confidentiality obligations (¶¶ 5-7, 11). Apple rejected it.

## APPLE REJECTED PLAINTIFF'S AUTHORIZATION AND PROPOSED QUALIFIED PROTECTIVE ORDER

13.     Following this Court's February 23 Order (Dkt. 291) directing further meet-and-confer, Plaintiff drafted a nine-page package that included: (a) a HIPAA-compliant authorization with a separate standalone psychotherapy notes authorization (Ex. B at 1-6); and (b) a proposed Qualified Protective Order specifically governing Plaintiff's PHI (Ex. B at 7-9). Plaintiff's proposed QPO would have resolved every issue now before the Court. It provided for dual production to both parties (¶ 3); required any subpoena to attach a copy of the order so providers would know what "Confidential" means (¶ 2); required return of records to the covered entity — not destruction by the patient — within 60 days of the conclusion of litigation (¶ 7); and explicitly preserved Plaintiff's independent right to her own records: "Plaintiff's copies of her own PHI, whether obtained through this litigation or independently, are not subject to any use restriction, disclosure restriction, confidentiality obligation, or return-or-destroy obligation under this Order" (¶ 8). It also provided for CMIA compliance (¶ 14) and required Apple to bear the burden before using designated records (¶ 11).

14.    The authorization itself corrected the deficiencies in Apple's draft: it separated psychotherapy into a standalone form per 45 C.F.R. § 164.508(a)(2); added HIPAA-required expiration dates, revocation terms, and patient notices; referenced the CMIA (Cal. Civ. Code § 56.13); identified two additional providers Apple's list was missing; and directed providers to produce duplicate copies directly to Plaintiff.

15.    The parties exchanged revisions from February 26 through March 12. Apple reinserted the disputed Protective Order throughout, removed Plaintiff's proposed QPO entirely, removed dual production to Plaintiff, changed the expiration date from the discovery cutoff to November 15, 2026, and added pre-authorization for Apple to share records with Apple's in-house legal department — which Plaintiff had previously objected to — without asking Plaintiff first. On March 12, Plaintiff sent a near-final draft and told Apple: "I'm still willing to sign an authorization for you to use for this request." (Ex. A.) The sole remaining disagreement was Apple's insistence on incorporating the disputed Protective Order. Apple rejected the draft the same afternoon and gave Plaintiff notice of intent to serve subpoenas the next day — without any authorization, despite telling this Court on February 10 that an authorization was required (Dkt. 276). Apple then waited two weeks before actually serving providers, undermining the urgency Apple invoked to abandon the authorization process.

16.    Plaintiff's providers have already communicated confusion and concern about the subpoenas. Today — March 26, 2026 — Plaintiff was contacted by a therapist who received Apple's subpoena, believed she still needed a signed patient authorization before releasing records to a non-patient third party, and had only a standard medical release form available — which would authorize release to Apple without any of the PHI protective order requirements that normally accompany litigation subpoenas for therapy records. The therapist had approximately one week to respond to Apple's demand for eleven years of records.

17.    Apple refused Plaintiff's authorization twice. In early February, Plaintiff offered to draft a custom authorization and Apple escalated to the Court instead, insisting on a blanket HIPAA waiver stipulation or nothing. (Dkt. 276.) After the Court ordered further meet-and-confer (Dkt. 291), Plaintiff spent days drafting a nine-page package including a HIPAA-compliant authorization, a separate psychotherapy authorization, and a proposed Qualified Protective Order for PHI — during which time Apple sought adverse consequences against Plaintiff for a delayed filing, despite knowing Plaintiff was spending that time on the authorization Apple told the Court it urgently needed. Apple rejected that authorization too, and served raw subpoenas that are now generating exactly the provider confusion and compliance problems the authorization would have resolved. Apple is requesting production of eleven years of records across every category — including sound and video recordings — within approximately one week. The Court should not have to manage the fallout from Apple's refusal to use the tool Plaintiff built for this purpose.

## APPLE IS SUBPOENAING ITS OWN SUBSIDIARY

18.    AC Wellness Medical Group is Apple's wholly-owned subsidiary. (Dkt. 142 ¶ 37; Dkt. 277 Exs. G-H.) This Court recognized that AC Wellness is "presumably bound by the same privacy requirements as other medical providers." (Dkt. 291 at 2.) It is the only provider on Apple's list with records

going back to 2015 under Plaintiff's prior surname — confirming the temporal scope and name inclusion were designed to capture Apple's own clinic records. Apple controls the entity that holds these records. The operative Complaint alleges AC Wellness dismissed Plaintiff's chemical exposure symptoms as anxiety and enrolled her in an Apple **user** **study** rather than treating her. (Dkt. 142 ¶ 37.) Judge Chen identified Apple's invasive workplace studies — including those at AC Wellness — as among the "main categories of alleged misconduct." (Dkt. 73 at 7-8; Dkt. 179 at 2.) These records are evidence of Apple's alleged misconduct at Apple's own clinic. Apple's protective order dispute claims all "studies" are secret.

19.     Apple's counsel has already indicated how Apple will treat these records: asserting that anything Plaintiff told Apple's own clinic about Apple's workplace hazards constitutes "confidential information" Plaintiff must "keep confidential." (Mar. 25, 2026 email, Ex. A.) Plaintiff's complaints to Apple's clinic about workplace injuries — protected concerted activity under the NLRA and whistleblower activity under Cal. Labor Code §§ 1102.5 and 6310 — and complaints about the user studies (which is likely a regulatory issues) -- would be recharacterized as Plaintiff "disclosing Apple's confidential information."

20.     As Plaintiff detailed in her Opposition at Dkt. 320 (¶¶ 56-75), Apple's own SEC filings tell shareholders that the risk Apple faces is that litigation could "reveal deficiencies in Apple's practices or compliance." Apple tells the SEC its data practices are subject to heightened legal requirements and that noncompliance leads to litigation. (Apple 10-K, Oct. 2025, Item 1A; quoted and cited at Dkt. 320 ¶¶ 61-65.) This case is an example of that litigation. The AC Wellness records document the alleged noncompliance. Designating them as Apple's "CONFIDENTIAL" information and asserting Plaintiff cannot discuss her own medical care is not a legitimate use of the Protective Order — it is the concealment pattern the operative Complaint describes. (Dkt. 320 ¶ 75; 3AC ¶¶ 122-127.) The Protective Order should not serve as the instrument that conceals evidence of the conduct Plaintiff is suing about. *Foltz v. State Farm*, 331 F.3d 1122, 1133 (9th Cir. 2003).

## CONCLUSION

21.     The Court's February 23 Order addressed whether Apple could obtain Plaintiff's medical records. It did not address how. Plaintiff asks that the production protocol ensure she is not required to destroy her own health records, is not subjected to confidentiality restrictions over her own medical history, and is not forced into hundreds of document-by-document designation challenges over records that belong to her — under a Protective Order that this Court already has extensive pending motions about.

22.     Plaintiff's authorization and proposed Qualified Protective Order (Ex. B) solved all of these problems. Apple rejected them. The Court can solve them now by ordering dual production, entering Plaintiff's proposed QPO (or a modified version), or at minimum confirming that Plaintiff may obtain her own records independently and that such copies are not subject to the Protective Order.

Respectfully submitted,

**/s/ Ashley M. Gjovik**

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

Filed March 26 2026 in San José, California

(408) 883-4428

ashleymgjovik@protonmail.com

2108 N. St. Ste. 4553, Sacramento, CA 95816

## [PROPOSED] ORDER RE: MEDICAL RECORDS PRODUCTION PROTOCOL

Re: Dkt. No. [_____]

Having considered Plaintiff's Discovery Letter Re: Medical Records Production Protocol, the Declaration of Ashley M. Gjovik, and any response thereto, the Court hereby ORDERS as follows:

1. DUAL PRODUCTION. Within two (2) business days of this Order, Defendant shall serve amended or supplemental subpoenas on all medical providers to whom subpoenas have been issued in this action, directing each provider to produce all responsive records simultaneously to both (a) Orrick, Herrington & Sutcliffe LLP, Attn: Melinda Riechert, 1000 Marsh Road, Menlo Park, CA 94025, and (b) Plaintiff Ashley M. Gjovik at legal@ashleygjovik.com. If any provider has already produced records prior to entry of this Order, Defendant shall provide Plaintiff with a complete copy of all records received within five (5) business days of this Order.

2. PLAINTIFF'S COPIES NOT SUBJECT TO PROTECTIVE ORDER. Copies of medical records produced directly to Plaintiff by her healthcare providers, or provided to Plaintiff by Defendant pursuant to Paragraph 1, shall not be deemed discovery material subject to the Protective Order (Dkt. 235). Plaintiff's copies of her own medical records are not subject to any confidentiality designation, use restriction, or return-or-destroy obligation under the Protective Order.

3. DEFENDANT'S COPIES. Defendant's copies of medical records received from Plaintiff's healthcare providers shall be treated as "Confidential" under the Protective Order (Dkt. 235) and subject to the terms thereof, including the use restrictions and return/destruction provisions of Sections 7 and 12.

4. RETURN/DESTRUCTION CLARIFICATION. The return-or-destroy provision of the Protective Order (Dkt. 235, § 12) does not require Plaintiff to return or destroy copies of her own medical records at the conclusion of this litigation. That provision applies to Defendant, Defendant's counsel, and any person or entity who received Plaintiff's medical records through Defendant's counsel.

5. PLAINTIFF'S INDEPENDENT ACCESS RIGHTS PRESERVED. Nothing in this Order or the Protective Order (Dkt. 235) restricts Plaintiff's right to independently request, obtain, inspect, copy, use, retain, or disclose her own medical records from her healthcare providers under HIPAA (45 C.F.R. § 164.524), the California Health & Safety Code (§ 123110), the California Evidence Code (§ 1158), or any other applicable law. Records Plaintiff obtains independently from her providers are not discovery material and are not subject to the Protective Order.

6. COPY OF ORDER TO PROVIDERS. Defendant shall include a copy of this Order with any amended or supplemental subpoena served pursuant to Paragraph 1.

IT IS SO ORDERED.

Dated: _____

_____
HON. KANDIS A. WESTMORE
United States Magistrate Judge