Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

ASHLEY M. GJOVIK,

*an individual*,

Plaintiff,

vs.

APPLE INC.,

*a corporation,*

Defendant.

CASE NO.

3:23-CV-04597-EMC (KAW)

DECLARATION & EXHIBITS IN SUPPORT OF DISCOVERY LETTER

RE. PRODUCTION PROTOCOL FOR PLAINTIFF'S MEDICAL RECORDS

**DECLARATION AND EXHIBITS IN SUPPORT OF
PLAINTIFF'S DISCOVERY LETTER RE: PLAINTIFF'S MEDICAL RECORDS**

I, Ashley M. Gjovik, declare as follows:

1. I am the Plaintiff in this action, proceeding in propria persona. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called as a witness.

2. On January 27, 2026, Apple's counsel first contacted me regarding medical records subpoenas. From January 27 through March 25, 2026, I exchanged extensive correspondence with Apple's counsel regarding the scope, terms, and handling of these subpoenas and a proposed patient authorization. True and correct copies of relevant portions of that correspondence, dated March 12 through March 25, 2026, are attached hereto as Exhibit A.

3. Following this Court's February 23, 2026 Order (Dkt. 291) directing further meet-and-confer regarding a medical records authorization, I drafted a nine-page package consisting of: (a) a HIPAA-compliant authorization for the release of medical records (pages 1-4); (b) a separate, standalone authorization for psychotherapy notes pursuant to 45 C.F.R. § 164.508(a)(2) (pages 5-6); and (c) a proposed Qualified Protective Order governing Plaintiff's protected health information pursuant to 45 C.F.R. § 164.512(e), FRCP 26(c), and the California Confidentiality of Medical Information Act (pages 7-9). I sent the initial version of this package to Apple's counsel on February 26, 2026, and sent a revised near-final version on approximately March 2, 2026 after incorporating feedback from Apple's counsel. A true and correct copy of my draft authorization package is attached hereto as Exhibit B.

4. On March 12, 2026, Apple's counsel sent me a redlined version of my authorization reflecting Apple's proposed changes. Apple's redline reinserted references to the disputed Protective Order (Dkt. 235) throughout; removed my proposed Qualified Protective Order (Exhibit B of the authorization) entirely; removed the provision for dual production of records directly to me as the patient; changed the expiration date from the April 16, 2026 discovery cutoff to November 15, 2026; and added a pre-authorization for Apple to share my medical records with Apple's in-house legal department — a provision Apple had never previously raised and which I had previously objected to.

5. On March 12, 2026, I responded to Apple's redline, accepted certain changes, objected to the

reinsertion of the disputed Protective Order, and told Apple's counsel: "I'm still willing to sign an authorization for you to use for this request." Apple's counsel rejected my draft the same evening, stating I had made "a number of significant changes," and gave me notice that Apple intended to serve subpoenas the next day without any authorization. A true and correct copy of this is attached hereto as Exhibit C.

6. Apple gave me notice of intent to serve subpoenas on approximately March 12-13, 2026, but did not begin actually serving providers until a couple days ago.

7. Apple's subpoenas include an Attachment A that directs providers to produce all records as "CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025." Based on my review of the subpoena notice, Apple did not include a copy of the Protective Order with the subpoena. A true and correct copy of Apple's Notice of Subpoena to AC Wellness Medical Group, including the subpoena form and Attachment A, is attached hereto as Exhibit D.

8. AC Wellness Medical Group is Apple's wholly-owned subsidiary, located at 20730 Valley Green Drive, Cupertino, CA 95014 — on Apple's corporate campus. AC Wellness is the only provider on Apple's subpoena list with records going back to 2015 and the only provider that would have records under my prior surname, Ashley Henderson. No other provider listed would have records, Apple was informed of this repeatedly, and Apple insists on the current temporal range and surnames.

9. On March 25, 2026, Apple's counsel Melinda Riechert stated in email: "We will send the records we receive to you as we receive them from your health care providers and will not add a confidentiality designation. But just because you provided confidential information to your health care providers does not release you from your confidentiality obligations, so you must continue to keep the information confidential." I asked Apple's counsel to explain the contradiction between this statement and the subpoena's directive to providers to produce all records as "CONFIDENTIAL" under the Protective Order. Apple did not address this. These emails are included in Exhibit A.

10. On March 25, 2026, I also asked Apple's counsel: "Is there a reason you're still refusing to use the medical authorization I drafted with the request to produce records to me directly?" Apple did not respond to this question. This email is included in Exhibit A.

11. On March 26, 2026, I was contacted by one of my healthcare providers — a therapist — who had received Apple's subpoena. The therapist indicated she believed she still needed a signed patient authorization before releasing therapy records to a non-patient third party and had only a standard

medical release form available, which would authorize release to Apple without any of the protections that typically accompany litigation-related disclosure of therapy records. The therapist indicated she had approximately one week to respond to Apple's demand.

12. Throughout the meet-and-confer process, I repeatedly requested that Apple include a provision for dual production — directing providers to send copies of records directly to me in addition to Apple's counsel. I made this request in my February 26, 2026 draft authorization, in emails on March 12, March 16, March 20, and March 25, 2026. Apple refused each time without providing any explanation for refusing dual production.

13. I identified and corrected the following deficiencies in Apple's proposed authorization during the meet-and-confer process: a. Apple's draft did not separate the psychotherapy notes authorization from the general medical records authorization, as required by 45 C.F.R. § 164.508(a)(2). I created a standalone psychotherapy authorization as Exhibit A to the authorization (Ex. B at 5-6). b. Apple's draft did not include a HIPAA-required expiration date. I added the discovery cutoff date of April 16, 2026. c. Apple's draft did not include revocation terms or patient notices required by HIPAA. I added both. d. Apple's draft did not reference the California Confidentiality of Medical Information Act. I added references to Cal. Civ. Code § 56.13. e. Apple's draft did not include any provision for production of records to me as the patient. I added dual production. f. Apple's subpoena list was missing two providers — MD Live and Atrius Health — which I identified in my February 26, 2026 supplemental disclosures. g. Apple's draft did not include or reference any Qualified Protective Order for PHI. I drafted a complete proposed QPO as Exhibit B to the authorization (Ex. B at 7-9).

14. I am prepared to sign the authorization attached as Exhibit B if the Court directs Apple to use it or include a dual-production provision in its subpoenas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 26, 2026, in Alviso, San Jose, California.

Respectfully submitted,



**/s/ Ashley M. Gjovik**

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

Filed March 26 2026 in San José, California

(408) 883-4428

ashleymgjovik@protonmail.com

2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT A: Emails

# Re: Apple/Gjovik - updated subpoenas

From    Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To    Riechert, Melinda<mriechert@orrick.com>

CC    Ashley Gjovik<ashleymgjovik@protonmail.com>, Weaver, Nicholas<nweaver@orrick.com>,
Booms, Ryan<rbooms@orrick.com>, Perry, Jessica R.<jperry@orrick.com>,
Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>

Date    Wednesday, March 25th, 2026 at 3:36 PM

Is there a reason you're still refusing to use the medical authorization I drafted with the request to produce records to me directly?

—

**Ashley M. Gjøvik**

**BS, JD, PMP**


On Wednesday, March 25th, 2026 at 3:32 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Attached please find two notices for subpoenas to medical providers that we will be serving tomorrow. Each of these two providers needs to be served at location different from the one in the original notice
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley Ⓥ
>
> T 650/614-7423
>
> M 650 759 1929
>
> mriechert@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**3.99 KB**     3 embedded images

# RE: FW: Gjovik v. Apple: Authorizations for Release of Medical Records

From    Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>,
        Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>,
        harry.johnson<harry.johnson@morganlewis.com>

Date    Wednesday, March 25th, 2026 at 3:14 PM

Counselor,

First of all, thus far Apple has yet to provide one example of actually confidential information that I shared with anyone improperly in the last six+ years, so stop calling my protected concerted activity, whistleblower disclosures, and other protected speech "confidential" and acting like its misconduct for me to exercise my rights and that Apple somehow has a right to violate my rights -- it doesn't. You're violating the NLRB consent agreement again and the NLRA again and a variety of other laws and I'd like you to please stop.

Regarding the medical records, your subpoena says the providers have to provide the records to you as confidential under the protective order. You're then now saying you won't "add" a confidentiality designation, but there would already be one from the provider, per your request in the subpoena.

What am I missing here?

—

**Ashley M. Gjøvik**

**BS, JD, PMP**


On Wednesday, March 25th, 2026 at 2:48 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> That is not correct.  We will send the records we receive to you as we receive them from your health care providers and will not add a confidentiality designation. But just because you provided confidential information to your health care providers does not release you from your confidentiality obligations, so you must continue to keep the information confidential.

**Melinda Riechert**

Partner

Orrick

Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



[EXTERNAL]

Hello,


So your email confirms then that if my medical providers produce documents to you, it will be designated confidential under the existing protective order, and if the records contain comments, records, etc. by me related to anything Apple feels is "internal" such as "user studies" -- then Apple would not produce those documents to me as "not confidential" as you said prior, and instead Apple would produce them designated confidential and force me to dispute confidently issues with them through the protective order process and attempt to enforce its IPA-related confidentiality claims through that protective order and protective order process. Apple would then claim or reclaim gag orders against me about my own experiences based on my medical records -- and if its designated "confidential" also force me to destroy my own medical records at the end of the litigation --  is that correct?


—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Wednesday, March 25th, 2026 at 12:45 PM, Riechert, Melinda <<u>mriechert@orrick.com</u>> wrote:

> Ashley,
>
> We don't understand your email. We have a protective order in this case entered by the court, and regardless of whether you agree with it, we are both obligated to comply with it. We have confirmed that Apple will do so with respect to any medical records it receives in response to its subpoenas.
>
> You remain subject to your obligations regarding confidential information you learned while at Apple. If you disclosed such information to your health care providers, that does not mean you are free to disclose it to others.
>
> **Melinda Riechert**
>
> Partner
>
> <u>Orrick</u>
>
> Silicon Valley  Ⓥ
>
> T 650/614-7423
> M 650 759 1929
> <u>mriechert@orrick.com</u>
>
>

[EXTERNAL]

Hello,

Your response does not address my concerns and actually raises more concerns.

To be clear, Apple must treat all PHI records as confidential per governing law, and all records should be produced under a protective order -- and I repeatedly requested a protective order compliant with requirements for medical records -- which Apple rejected. I also objected to any continued use of the current protective order since I did not consent to it, there was no mutual assent, Apple never made a showing of good cause, and Apple's only abused it for improper purposes -- and Apple sent subpoenas using the non-compliance protective order with motions pending asking to revoke that very order.  It's almost as if you insisted on using an inadequate protective order only as a defensive mechanism to try to fabricate a defense as to why the court should not revoke the current protective order -- likely raising Apple's use of the order for these records during the upcoming hearings.

Further, your subpoenas ask the doctors to designate records confidential under the disputed protective order. You now say you will handle records as they are received without adding more confidential designations -- but your own subpoena says they must be produced as confidential under the same order -- and you must keep these records confidential and also refused a PHI protective order without justification.

I also fail to understand how you believe you can produce these records to me as non-confidential, if they were produced to Apple as confidential, have to be confidential for Apple, and will very likely include information and records I do not have and could not get myself due to the broad scope of Apple's subpoena -- which would be providing me new, non-public information as part of discovery which will be designated confidential and Apple's prior arguments in this case was anything designated confidential - especially if not made "public"  by Apple - equates to a gag order on the Plaintiff regarding that information.

For example, I complained about Apple a lot to my doctors -- including the extensive and various ways Apple's misconduct physically harmed me -- including with Apple's "studies." I talked about Apple's "studies" with my doctors. My doctors may have also talked about Apple's "studies". But Apple's filings say anything related to "studies" is secret and cannot be shared, must be confidential under the protective order, and a protective order designation of confidentiality equates to a gag order. So, when Apple sends me copies of my medical records that include me and/or my doctors talking about Apple's "studies" -- assumably Apple would still claim that's confidential? And use the designation to claim a gag order on that information?

These logical incontinences and absurd results are exactly why I protested Apple's current plan and offered multiple other solutions including spending days drafting an authorization that Apple refused to use for no reason -- and all of my proposals were refused by Apple who insisted instead on completely unnecessary chaos and complexity.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Wednesday, March 25th, 2026 at 11:07 AM, Riechert, Melinda <[mriechert@orrick.com](mailto:mriechert@orrick.com)> wrote:

> Ashley
>
> This confirms that Apple will provide you copies of the medical records we receive. We will send them to you in the same way they were received by us from the medical providers, and we will not add any confidentiality designations. While I understand you don't want them designated as confidential pursuant to the protective order, we will treat them as confidential pursuant to the terms of the protective order.  To be clear, we are not claiming the records are confidential as to you and are imposing no gag order on you about your own medical records. You are free to disclose them to whoever you wish.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley  ⓥ
>
> T 650/614-7423
> M 650 759 1929
> [mriechert@orrick.com](mailto:mriechert@orrick.com)



**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

[EXTERNAL]

My medical providers are notifying me they're receiving these subpoenas and appear to have a number of concerns - which is understandable considering the scope and timeline of Apple's request.

Further, you still have not responded to my email below. Please respond regarding the handling of my medical records. You apparently are requesting the records be produced in one-week from now -- making my concerns and request extremely urgent.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Friday, March 20th, 2026 at 1:48 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> Apple has requested records far beyond what I would receive from a medical record request -(no one gets security footage or audio recordings in a records request) - in fact that the expansive scope was Apple's entire basis for their subpoena -- claiming it was insufficient for me to produce my records as I receive them from my providers. Unless you're now saying that you think your subpoenas would return

the exact same records I could have produced and accordingly are unnecessary and Apple insisted upon the subpoenas, authorizations, and weeks of meet/confer for no reason.

Please confirm Apple will provide me copies without designating them confidential to me, but while maintaining Apple's confidentiality requirements. As I complained prior, Apple doing it this way, under the disputed Protective Order, implies Apple would claim my own records are confidential to me and also that I have a gag order on me about my own medical records -- or -- I have to release all confidentiality claims including for Apple -- both of which I objected to.

Apple had repeated opportunities to request providers send me copies directly -- and has refused to include that provision without any explanation.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Friday, March 20th, 2026 at 1:28 PM, Perry, Jessica R. <jperry@orrick.com> wrote:

> Ashley,
>
> As the patient, you may obtain your medical records directly from your providers without the need for a subpoena. However, Apple will provide you a courtesy copy of the medical records it receives in response to its subpoenas.
>
> Best,
>
> Jessica
>
> [EXTERNAL]

Counselor,

You just emailed me notices of depositions you say you plan to send tomorrow that do not say anything about providing me copies of records.

Please respond to my email and confirm that you are forcing me to have to file a duplicate subpoena to get unrestricted access to my own medical records despite repeated requests to include this in your request, days of revisions of a medical authorization you refused to use for no reason, and a general refusal to meet/confer at all on this.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Monday, March 16th, 2026 at 11:11 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> No one has responded to this email. Please confirm if you're refusing to ask my medical providers to send me these records directly -- while receiving them under the defunct and disputed "Protective Order" - and thus I need to file my own subpoena for these same records.
>
> I am not allowed to serve my own subpoenas as a pro se litigant, so I will need to file a Letter to Judge Westmore approving a duplicate subpoena because Apple refused to incorporate any of my requests or feedback despite weeks of meet/confer.
>
> Let me know.
>
> —
>
> **Ashley M. Gjøvik**

**BS, JD, PMP**

On Thursday, March 12th, 2026 at 8:50 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Counselor,
>
> I do not think any of the changes I made were significant or controversial, and it was your side that sat on these drafts for weeks -- focusing on trying to get me sanctioned rather than engaging in meet/confer on this. In a fair world, I also could bill you for my time on at least an associate rate for my revisions getting your draft into compliance with state and federal law -- which it was not when you started. You could also just remove the stuff you don't want and send it back and ask me if I'm ok with that and it would take like 10 minutes probably -- and you swore to the court an authorization of some sort was a requirement -- but now, again, you're saying its not -- so you lied your prior letter, I guess.
>
> Ultimately I don't care if you just want to send your subpoenas raw, as long as I still get copies of my own records without any confidentiality rules.
>
> Please confirm if you will include on your subpoenas to send me copies directly as I had put on my authorization. Otherwise, I will have to move Judge Westmore for a subpoena from me to my own providers for whatever they send you and explain that I have to do it that way because Apple still refused to negotiate an authorization and also refused to enter a medical-record specific protective order for this. Depending on what you send I may also move the court for additional relief.
>
> —
>
> **Ashley M. Gjøvik**
>
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 8:38 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

It appears you have made a number of significant changes to the document. We can no longer continue to delay serving the subpoenas while we attempt to negotiate an authorization. Accordingly, will go ahead and serve the subpoenas.  Attached please find a zip folder containing notices for the subpoenas to medical providers that we will be serving tomorrow.

**Melinda Riechert**

Partner

Orrick

Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

[EXTERNAL]

I understand but I think that's something we can sort out after you send this right?

Unless if you insist it be included, then I'd say provide a short list of names and titles rather then just Apple HR legal. Preferably I'd also like to review whatever records you want to share prior to do doing so, so I have a chance to object and request help from the court if needed.

Further, Apple likes to say its department names and org charts are secret and/or don't exist, so that makes a vague organization reference even more problematic, imo.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 8:20 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Consistent with our ethical obligations, we have to be able to show the records to the attorneys in the legal department we are working with on the case. That is why I limited it to just these people.
>
> **Melinda Riechert**

Partner

Orrick

Silicon Valley  ⓥ

T 650/614-7423

M 650 759 1929

mriechert@orrick.com



[EXTERNAL]

Thank you for your revisions regarding the disputed Protective Order, however you then added an authorized transfer of documents to parties you never asked me prior about, and I have previously objected to sharing my medical records with (as the complaint literally includes me protesting Apple wanting me to release my records to Apple Inc which then asks me to do). If you want to share the records with other folks you should ask me about it and we can draft an agreement about it if its reasonable -- but that would be done between us, not pre-authorized.

I'm attaching a proposed revision that I'd be okay signing now if you guys are okay and write something simple and not outrageous for your signature / attestation. Because I'm saying "we agree" but there's nothing actually binding us to that agreement and your client is known to act erratically and reneg on its agreements, I think it would be prudent to have a signature from counsel and/or Apple on the document specific to the terms stated as "agreements." The other option is Exhibit B just being a statement from Orrick and/or Apple reiterating the things it agrees to regarding record handling etc. where I had said we agreed to whatever it is.

Let me know.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 7:27 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> How does this look?
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley Ⓥ
>
> T 650/614-7423
> M 650 759 1929
> mriechert@orrick.com
>
> orrick

_____

**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

[EXTERNAL]

Hello Apple's lawyers,

I'm still willing to sign an authorization for you to use for this request and I feel like the attached draft is very close to a version I could willingly sign for you -- however Apple appears to be making the authorization contingent on my written approval and acquiesce to the disputed Protective Order which is currently subject to numerous federal complaints, two motion for sanctions against Apple, and year of objections.

Additionally, I object to Apple framing this authorization as urgent while having failed to serve its subpoenas or advance this matter for nearly a year, and then failing to respond to my correspondence for weeks. I further object to being given less than one business day to respond with a binary choice: agree to the disputed Protective Order or receive no authorization.

Apple represented to the court that an authorization was required and that it was blocked without one. Apple is now saying the authorization is unnecessary unless I agree to incorporate a protective order I have objected to, contested, have open NLRB charges about, Apple is facing two motions for sanctions about, and which I'm seeking to revoke. Apple's position is inconsistent with Apple's prior representations to the court regarding the authorization and creates the appearance that Apple is intentionally sabotaging meet/confer for improper reasons.

That said, I have reviewed your redline. I'm willing to accept all proposed changes except the edits re-inserting the disputed Protective Order. This drafted document would be my authorization and I do not agree that the model PO sufficient or appropriate for this purpose, as I stated repeatedly prior in this email change and in the document revisions.

For instance, the CAND model order does not mention HIPAA, PHI, or 45 C.F.R. § 164.512(e). It is a generic commercial litigation confidentiality order and accordingly should not even be in place for this public interest lawsuit. It seems to me that providers and their counsel are unlikely to treat it as a Qualified Protective Order without explicit language, and a court reviewing a provider's challenge would have to infer QPO status rather than find it stated. There's also ambiguity for the provider's rights under the order that would be resolved with a proper PHI protective order.

CMIA creates additional issues with the model order. Cal. Civil Code § 56 et seq. applies concurrently with HIPAA and is not preempted where it is more stringent. The model order contains no reference to § 56.10, no patient notification mechanism aligned with California requirements, and no acknowledgment of the CMIA's civil and criminal penalty framework. it seems to me that a California provider's counsel presented with this order alone has a legally supportable basis to decline production.

Again, I am willing to execute an authorization without the PO references, and I remain open to negotiating a HIPAA- and CMIA-compliant qualified protective order specific to medical record production. The ball is in Apple's court and it appears the only issue left to be resolved is ensuring there's a proper PHI protective order for these records and that its not the disputed model order.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 1:40 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley,

Attached is a draft of the authorization with our proposed revisions, along with a redline comparing the last version you sent us to this revised version. Please let us know if you agree to execute the authorization in this form, and we will send you an authorization for each provider to execute today.

If you do not agree to the authorization in this form, then tomorrow we will issue the subpoenas without authorizations, per Judge Westmore's February 26, 2026 order.

**Melinda Riechert**

Partner

Orrick

Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**[EXTERNAL]**

Hello,

I'm attaching a draft with my proposed revisions which is mostly reversions. The last version you sent me had no revision tracking or redline, so I created one and

attached it as well. This looks done-ish to me if you don't have any further objections.

However, I suspect there are likely substantive deficiencies regarding the lack of a qualified protective order however I'd need you folks to be willing to re-consider a medical record PO targeted for HIPAA & California medical legal compliance -- otherwise I don't see any other options if the providers find the current version of the subpoena/auth + the contested PO insufficient. We'd prob need to create one later if there are objections - if you're willing.

Regardless though you'll certainly receive more records with an auth then without one, so that's still progress.

Regarding your proposal to serve subpoenas with production dates extending months beyond the non-expert discovery cutoff. I do not agree to this schedule, and the law does not support it. N.D. Cal. Civil L.R. 37-3 defines the discovery cutoff as the date by which all responses to written discovery are due and all depositions must be concluded. This is a completion deadline.

Discovery must be served sufficiently in advance of the cutoff to allow responses before discovery closes, and courts will not order discovery to take place after the cutoff date absent an extension for good cause. See Fed. R. Civ. P. 16(b)(4) (scheduling orders may be modified only for good cause and with the judge's consent); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) ("If [the moving] party was not diligent, the inquiry should end."). There is no authority for the proposition that a party may unilaterally schedule discovery compliance dates beyond a court-ordered cutoff.

Rule 45 subpoenas are discovery tools governed by the same scheduling order constraints as any other form of discovery. They cannot be used to circumvent court-ordered deadlines. See *Hatcher v. Precoat Metals,* 271 F.R.D. 674, 675 (N.D. Ala. 2010) (quashing subpoena as an attempt to circumvent Rule 34 requirements and the scheduling order where party had months to obtain the same information through standard discovery); *Rice v. United States,* 164 F.R.D. 556, 558 n.1 (N.D. Okla. 1995) ("Rule 45 subpoena duces tecum cannot be used as a form of discovery to circumvent deadlines."); *Dees v. Hyundai Motor Mfg. Ala., LLC*, No. 2:06-cv-00438, 2008 WL 821061 (M.D. Ala. 2008) (subpoena seeking employment records was properly considered a discovery device and

was therefore untimely because it was served after the discovery deadline). See also *McLean v. Prudential S.S. Co.,* 36 F.R.D. 421, 425 (E.D. Va. 1965) ("It is unthinkable that the effect of Rule 34 can be emasculated by the use of Rule 45."); Fed. R. Civ. P. 45, Advisory Committee Notes to subdivision (c) of the 1991 amendments (Rule 45(c) "is not intended to diminish rights conferred by Rules 26-37 or any other authority").

To the extent you contend these subpoenas fall outside the discovery cutoff as "trial" subpoenas or some other mechanism, the Federal Rules draw no such distinction for scheduling purposes. See *Chrysler Int'l Corp. v. Chemaly, 2*80 F.3d 1358, 1362 n.8 (11th Cir. 2002) (identical treatment of discovery and de bene esse depositions for timing purposes is consistent with the Federal Rules, which draw no distinction between the two)*; Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556, 558-59 (S.D. Cal. 1999) ("The Federal Rules of Civil Procedure do not distinguish between depositions taken for discovery purposes and those taken strictly to perpetuate testimony for presentation at trial," and "a sound argument can be made that if a party wishes to introduce deposition testimony at trial, that testimony should be procured during the time set by the court to conduct discovery absent exceptional circumstances."); *Sanofi-Synthelabo v. Apotex, Inc.,* No. 04-cv-4183, 2005 WL 469594, at *1 (S.D.N.Y. Feb. 18, 2005) ("both types of depositions are governed by the scheduling order"). A party who assumes the court will draw a distinction the Rules do not make "assume[s] a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date." *Chrysler*, 280 F.3d at 1362 n.8.

Courts have consistently sanctioned or excluded evidence where a party delayed obtaining third-party discovery until after the close of fact discovery. See *Beacon Navigation GmbH v. Bayerische Motoren Werke AG,* No. 2:12-cv-10593, 2023 WL 8981689 (E.D. Mich. 2023) (finding Rule 26(e) violation where party served third-party subpoena approximately 30 days before the fact discovery cutoff and obtained production after the deadline; the court noted that "delaying third-party discovery of source code was [the party's] own litigation strategy" and that "compliance with the scheduling order necessarily entails parallel, not successive, settlement discussions and fact discovery"); *Donk v. Miller,* No. 97-cv-1755, 2000 WL 218400, at *5 (S.D.N.Y. Feb. 24, 2000) ("The fact that the [parties] unilaterally decided to participate only selectively in pretrial discovery is not a justification for allowing them to take additional depositions.").

So I'm not going to "stipulate" to any production schedule that extends beyond the court-ordered non-expert discovery cutoff, especially as part of a medical

authorization form, due to your proposed "revisions" for my authorization.

If you believe there is good cause to extend the discovery period, you are free to seek leave from the Court under Fed. R. Civ. P. 16(b)(4) and Civil L.R. 6-2. Absent such an order, I'd expect all discovery to be completed by the existing deadline. Fed. R. Civ. P. 37(c)(1

Personally, and this isnt legal advice because I'm not an attorney, but you may want to reconsider the scope of your request and tailor it to be more narrow and specific, which would likely get quicker production then a very broad version -- at least thats how it works with FOIA requests, and I'm good at FOIA, so I don't know, think about it.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Saturday, February 28th, 2026 at 6:52 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello counselor,
>
> Thank you for the clarifications below. I will work on a revised draft and send to you tomorrow, or Monday at the latest, to review -- incorporating the points below as conditions on my authorization, rather then the standalone medical information protective order.
>
> I do need to look at case decisions about discovery cutoff & production before I'd agree to extend my authorization date past the end of discovery. But to that

point I'd ask if Apple would be willing to use the date for the end of discovery and then if they need to extend it further, we discuss that then, get court approval if needed, and at which point I could provide a supplemental authorization.

It just seems to me that if Apple's still getting documents after the discovery cutoff and wants to use any for litigation, it will have to raise that to Judge Westmore because of the confidentiality requirements, and Judge Westmore likely assumes she will not be receiving discovery disputes after the end of discovery, so it seems logical and practical and probably procedurally required that the cut off for this discovery request be aligned with the cutoff for discovery overall.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Saturday, February 28th, 2026 at 5:10 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Thanks for getting back to us and we appreciate your willingness to work with us on the authorization. To respond, I wanted to make it clear that:
>
> 1. Apple agrees to keep all the medical records confidential and will not share them with anyone other than its counsel and the health care provider who is conducting the IME.
> 2. Apple agrees to give you copies of all the medical records it receives and will not in any way limit who you can share them with.
> 3. Apple agrees you are free to share your medical history with anyone you want to.

4. I am not confident that all the health care providers will have provided us with records by the discovery cutoff. We will serve the subpoenas right away, and once we have received all the records requested from the health care provider, then your authorization will end.  Does that work?

**Melinda Riechert**

Partner

Orrick

Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

[EXTERNAL]

Hello,

It's Saturday and I'm very tired after having to pull all nighters due to Apple's frivolous and harassing emergency motions but I'll respond briefly to your points below.

Overall, Apple is responding to a courteous voluntary offer by me to provide an authorization to release records, which I'm under no obligation to do, and I'm offering even after extensive bad faith and harassing conduct by

Apple regarding their overall request -- with Apple demanding one of two options 1) either Apple declares all of my medical records going back my entire life to be confidential and secret to **me** as well as Apple, creating another illegal gag order preventing me from talking about my own health, medical history, and medical care -- or 2) Apple wants copies of all of the above that by default will not be confidential and Apple can share them with whoever they want and keep them forever, unless I take on hundreds of hours of unnecessary work to fight Apple on this because Apple won't agree to a completely typical and expected HIPAA-compliance protective order required for subpoenaing medical records in litigation and insists on exclusively using an Protective Order I've repeatedly said is illegal and is being solely used to violate my civil rights.

For confidentiality, all third-party records released to Apple must be considered confidential. Even a HIPAA waiver I might sign would be invalid if those records are not considered confidential under a qualifying protective order, and it also seems very unlikely any doctor would produce these records if they were not considered confidential and had retention limits, etc required by the non-patient subpoenaing party.

My request is that I want copies of my own records that are not considered confidential as applied to me, because they're my own records.

The Protective Order also should not and cannot function as a gag order about my own history and experiences or records I may already have or could request myself -- but that's exactly how Apple's already using it and has motions for sanctions against me pending on this bogus legal theory -- so Apple would assumably apply the same theory to these medical records -- and I will not facilitate further violations of my civil rights.

Notably this would also put a gag order on me about Apple's handling of my medical issues caused by Apple's chip fab and the malpractice by Apple Wellness Center regarding those injuries -- which included my notifying Apple Wellness that other Apple employee were injured at that location, that I was organizing with them about the injuries and asked Apple to investigate including screening medical complaints for the location (of its chip fab) to identify if an environmental hazard was hurting my coworkers too. That's protected concerted activity, whistleblowing, and involves my

own health records -- but Apple would then assumably claim that's secret and confidential too?

Your proposed revision suggests that all medical records and health information about me would be released to Apple as not-confidential so Apple could do whatever it wants with it (share it, publish it, tweet about it) unless I take on the burden of being the one who designates it confidential and at which point I've just assumably designated confidential for myself too, taking away my own rights. I'm not doing that - that would be very silly, Melinda.

I'm also not agreeing to discovery production through Nov 2026. I'm holding that discovery production should end at the end of discovery in April. Under your rationale, you don't plan to complete production to me of documents I request until Nov. 2026, at trial. That's not how that works - discovery ends when discovery ends and if Apple needs an extension it needs to ask the court for an extension. If Apple thinks providers won't meet the April 2026 deadline then Apple should have sent its subpoenas a year ago when it originally drafted them and now it needs to ask Judge Westmore to ask Judge Chen to modify Judge Chen's case order and explain why.

Similarly, this is my authorization so I can put whatever date I feel is proper for my consensual authorization and if I'm pressured to extend dates past when I think is proper, or authorize records I think are improper, or waive my privacy rights, or free speech and bodily autonomy rights, or take on extra work that should be done by Apple, etc. then its clearly not consensual.

Regarding the protective order i think it comes down to this. If Apple wants the records released to it under the Protective Order and they would all be designated by confidential as default for Apple, in compliance with state and federal regulatory requirements -- then I just need Apple to confirm that it would then not claim its own confidentiality requirements apply to the records I'm having produced from the same providers directly to me (and not under any order, because its my records). If Apple will agree to that, then this may be a non-issue between me and Apple, though my providers are likely to object to that Protective Order, especially with a docket history of my repeatedly objecting to it and saying I didn't want to enter it and

complaining its being used to violate my rights. However, Apple can deal with that if they get push back from the physicians.

Let me know. And reminder you were prepared to have to send this without any authorization at all, and I'm offering you something, so even if it doesn't give you everything you want, its assumably better than nothing.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Saturday, February 28th, 2026 at 10:01 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Attached please find a revised version of the authorization. Let us know if this works for you.  If so, we will send you copies to sign for all the health care providers.
>
> We already have a protective order in place, so we don't think we need another one. Once the health care provider produces the records pursuant to the subpoena, Apple will not designate them as confidential under the protective order. You will have the opportunity to review them and designate them as confidential if you want to do so.  They are your medical records and you are free to do with them as you wish.

Regarding the expiration, we propose November 15, 2026. This gets us through trial, and has a fixed expiration date as your requested.

**Melinda Riechert**

Partner

Orrick

Silicon Valley Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

[EXTERNAL]

Hey counselor,

Thanks for the response. Regarding the scope -- I wrote my scope for the authorization, you can include whatever scope you want for your subpoena. As long as you're ok with my authorization being smaller then your subpoena scope, then you'll just need to manage the delta in between them. Does that make sense?

Regarding the Protective Order, the issue is the Confidentially designation regarding my copy of the records. If Apple will produced all copies to me without claiming they're confidential to me but keeping its own confidentiality designation on its copies, then that may work.

Regarding discovery cut-off, even if we don't use the official case management date, we'd need a cutoff -- like you know, not past trial? Cause then why are you still receiving records after trial.  What would be a more reasonable date?

Thanks!

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, February 27th, 2026 at 10:31 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> Thank you for your revisions. Attached is a redline and clean. Let us know if this works and we will send you PDFs to sign for each of the medical providers, including the two new ones you identified in your amended discovery responses.  Let us know if you prefer we send them via DocuSign.
>
> We have accepted most of your revisions but have a few issues regarding the scope, your request for a new protective order, and your revisions to the expiration of these authorizations.

**Scope**:  Judge Westmore has already indicated she is likely to approve Apple's requested scope if this comes to motion practice because she confirmed you have put your medical and mental condition at issue in this lawsuit.  Moreover, your initial disclosures indicate you received mental health treatment dating back to 2015. That is the basis for Apple's date range and why Apple also included Ashley Henderson as a patient name. You have put your mental health at issue and Apple is entitled to discover mental health treatment you received prior to your alleged injuries arising from your termination, particularly any treatment you listed in your disclosures. For the same reason, Apple cannot agree to your limitation of "physical and mental injuries", as this may cause the provider to omit illnesses or other diagnoses which could serve as alternative stressors that Apple is entitled to discover. For example, your proposed limitation may exclude treatment you received for your autism or ADHD. Likewise, if you have another chronic illness, Apple is entitled to discovery of this information as an alternative stressor.

**Protective Order**:  Both you and Apple signed, and the Court subsequently entered, the Northern District of California's Model Protective Order to apply to this case. *See* Dkt. No. 235. That Protective Order expressly contemplates designations for materials produced by Non-Parties. Apple will not revisit the issue of what protective order is appropriate for discovery in this case, but will agree that any medical records produced by your providers will be governed by the current Protective Order. Apple will also agree to instruct the providers to produce the records as Confidential pursuant to the Protective Order if that helps alleviate your concerns.

**Expiration**: We understand that you do not want the authorization to exist for the duration of the lawsuit and have proposed a compromise that the authorization remain valid until the provider has completed a full production of records pursuant to the subpoena and the resolution of motion practice related to these records, if any. Providers can be very slow in producing documents and we want to account for any possibility that the records are not produced prior to the discovery cutoff.

**Melinda Riechert**

Partner

Orrick

Silicon Valley Ⓥ

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, February 26, 2026 9:12:09 PM (UTC-08:00) Pacific Time (US & Canada)
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Russell, Zoe <zrussell@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>
**Subject:** Re: Gjovik v. Apple: Authorizations for Release of Medical Records

[EXTERNAL]

Hello,

You gave me a very tight deadline to work on this request and I completed what I think is a solid draft of an authorization I'd be willing to agree to -- and despite a flurry of other emails about sanctions motions and protective orders -- you've failed to reply to this email chain at all.

You made a specific request, I fulfilled it, and then I asked you for feedback on the proposal. There's an Apple-set timeline of only three business hours left to finalize this -- so its critical that you respond quickly if you're otherwise going to refuse to meet/confer further on this after noon tomorrow.

Apple said it was critical to get an authorization and now I'm offering one. I can't image you'd have any major objections to this version, so hopefully we can finalize this tomorrow, and then you can get your subpoenas sent out with it attached, while still on the same timeline you previously demanded.

Btw, you're welcome.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Thursday, February 26th, 2026 at 4:13 PM, Ashley M. Gjovik (Legal Matters) <[legal@ashleygjovik.com](#)> wrote:

> Hello counselor,
>
> Due to very short time frame you provided to meet/confer on this matter, I dropped everything today in order to draft a response for

you. Attached is a proposed amended authorization form with an attached proposed PHI-specific protective order for third-party production of my medical records.

I also made several corrections as it appears you needed to separate the psychotherapy request into its own document per the California governing statute, so I did that in my draft. I also corrected the HIPAA required end dates, revocation terms, and other required information/sections that might have delayed you getting a response to your request.

Let me know what you think about this draft and if you have any counter-proposals, or want to talk more about it.

If you'd be okay with sending something like what I have attached, then I'm open to signing an authorization like this for you to attach with your subpoenas.

Also, as noted in my prior email, earlier this morning I sent you revised Initial Disclosures and Supplemented Interrogatories which include two additional providers (MD Live & Atrius Health). You likely want to send me, or indicate, your proposes subpoenas for those providers asap so you can satisfy the 14 day notification window.

I do strongly object to the scope noted in Apple's drafts which includes records back to 2015 (despite expressly saying they would not request that far back), and asking for records well beyond the reasonable scope and relevance of this litigation. I also object to Apple's previously stated plan to have these records released only to Apple, under the protective order (which I objected to and never consensually signed), and which would assumably (per Apple) then indicate any records produced by Apple to me under that order would make my own medical records secret to me, assumably (based on Apple's prior/ongoing assertions) put gag orders on me about my own medical records (including Apple Wellness Center) and medical conditions, and gag orders on me about any of my complaints about Apple's

handling of these requests. However, I believe my draft helps address all of those concerns.

Regarding protective orders, Apple has confidentiality obligations if it wants to obtain and review these records, but I do not have, and cannot have, confidentiality obligations regarding my own records. Accordingly, I updated my version to request to have duplicate copies sent to me directly along with whatever Apple receives.

If Apple will not ensure that I can obtain copies of these records and in such a way there is no claim by Apple that I have "confidentiality" duties regarding my own medical records and Apple's handling of those records, then that will be yet another NLRB charge against Apple in addition to me being forced to challenge the "confidentiality" claim as applied to me, for every single document, or else have to file my own subpoenas for copies of the same records which requires court approval and I'll have to explain that Apple refused to agree to this voluntarily.

Respectfully,

-Ashley


—

**Ashley M. Gjøvik**

**BS, JD, PMP**


Sent with Proton Mail secure email.


On Wednesday, February 25th, 2026 at 7:53 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Hello counselor,

I received your 7:39 PM PST email and will review your request and the attachment and get back to you during business hours.

I further note that you have provided me a 1.5-day hard deadline to respond and complete any meet/confer, which is not a standard meet/confer timeline and certainly not what the court had in mind.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 25th, 2026 at 7:39 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> Pursuant to the Court's February 23rd Order requiring the parties "to further meet and confer regarding executing an authorization to release the medical records sought" (Dkt. No. 291 at 2), please find the attached authorizations for release of medical records to the providers Apple intends to subpoena as identified in your discovery responses.  If you are unwilling to sign these authorizations for the release of these records, please let us know by noon Friday and we will issue the subpoenas pursuant to the Court's instructions.

If you prefer we send the authorizations via DocuSign, please let us know.

**Melinda Riechert**

Partner

Orrick

Silicon Valley ⓥ

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

# RE: Medical subpoenas

From     Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To       Riechert, Melinda<mriechert@orrick.com>

CC       Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>,
         Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
         Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
         Booms, Ryan<rbooms@orrick.com>

Date     Wednesday, February 4th, 2026 at 7:58 PM

Counselor,

I'd me more than happy to red-line your drafted subpoena and send you proposed edits to narrow the scope to something more reasonable then the current version. Thank you for starting the meet and confer on that tonight.

But no, I will not complete meet/confer within a negative amount of business hours just because you finally agreed to listen to my feedback about the scope issues in this request only after I threated to file more federal charges against your client, and reminded you that i'm now literally homeless and also running from the literal mob.

If you want to file your Letter knowing that I'm willing to meet/confer on the topic and working on changes and would object saying you didn't even start the meet and confer until like 7pm the night before you filed -- then go ahead, and I'll let he Judge know and cite her prior Order dismissing my Letter claiming I filed it too early because the other side claimed to be vaguely working on the issue and I should have just waited indefinitely for them to respond. You can't have it both ways.

I've been raising these same concerns for like literally an entire year and you had refused to budge, would not discuss my concerns, and made it clear you had no intent to modify your planned request -- in fact I tried the meet/confer process several times with you and it always ended with you refusing to engage. You also have like seven more months of discovery and this is about damages mitigation, assumably, so its unclear why you're so rushed while concurrently refusing to communicate.

Also as you stated below and have stated over & over today, and which I agree, the only thing you asked me previously is that if I have any redlines to a document with the sole and express purpose of me waiving my HIPAA rights.

Then, more recently, you claimed the documents aren't even protected by HIPAA so its entirely unclear why you would need HIPAA rights waived if you don't believe HIPAA is at issue.

That said, if Apple was to narrow the scope of their request to something at least somewhat reasonable and actually relevant, then I might actually be willing to draft something you could file with your requests to those providers. It would not be a HIPAA waiver as you drafted, but it would probably be a document with me explaining what I was agreeing to release and why and I would sign that myself as a declaration in my own words. That would assumably get you what you actually need and would not require me to broadly waive away any of my rights.

However it would require you being willing to compromise on the scope of your request, which as a I noted above, you have never indicated you'd be willing to do until tonight. So thanks again and I'll work on the redline and if you file tomorrow knowing I'm working on the redline, then like I said, I'll point out you're intentionally escalating issues that could still be resolved and despite knowing the other side says they're working on them, which is not cool.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 6:49 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley:
>
> We disagree with the characterizations and conclusions in your emails below.
>
> On January 27, 2026, we emailed you to notify you that we intended to subpoena records from the medical providers you had identified in discovery in this case; identified by name and address the 13 specific providers we intended to subpoena; and attached a copy of a proposed Attachment A to those subpoenas specifying the scope of records we would be requesting. We asked that you sign a stipulation agreeing to production of those specific records from those specific providers. You declined to do so and to date have provided no alternative proposal or language.
>
> If you have specific edits to or a proposed narrowing of either the stipulation or Attachment A – which I've attached again here for ease of reference – please send a redline tomorrow morning (Thursday, February 5) and we are happy to consider it.  If the parties are still at an impasse, though, we will file a letter brief with Magistrate Judge Westmore consistent with the alternative procedures for discovery disputes she set forth in the attached minute order. We do not consider following those procedures an "abuse of [the] process."
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley  ⓥ

# EXHIBIT B: DRAFT 1

# AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

To:        UCSF Medical Center ("Provider")
           6425 Christie Avenue, Suite 400, Emeryville, CA 94608

Re:        *Ashley Gjovik v. Apple, Inc.*, U.S. District Court for the Northern District of
           California, Case No. 3:23-cv-04597-EMC

Patient:   ASHLEY GJØVIK
           Date of Birth: August 26, 1986
           Social Security Number: XXX-XX-2419


## PURPOSE

You are receiving this authorization because of discovery requests made by Defendant, Apple Inc, in the matter of *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

I am the Plaintiff in the above noted lawsuit and my Complaint (Dkt. 142, Nov. 26 2024) in the lawsuit claims mental, emotional, and physical injuries and I am seeking compensatory and punitive damages. Accordingly, I acknowledge that the Defendant generally has a right to discovery of relevant evidence.

## RELEASE OF MEDICAL RECORDS TO THE DEFENDANT'S LAW FIRM

I authorize and request the Custodian of Records at the above-named Provider to disclose to the law firm of Orrick, Herrington & Sutcliffe LLP (representing Defendant, Apple Inc) the below stated records, including those that may contain information protected health information (PHI), regarding **ASHLEY GJOVIK**.

Apple Inc has requested that the records disclosed to them be sent to: Orrick, Herrington & Sutcliffe LLP Attn: Melinda Riechert for Apple Inc (mriechert@orrick.com). Orrick/Apple will provide their own instructions in their attached subpoena.

**As a condition of my authorization to release these records, I am requesting that copies of all of the documents sent to the Defendant above should also be sent digitally to me as the Plaintiff/patient at: Attn: Ashley Gjovik  legal@ashleygjovik.com or via a document sharing tool. In addition to other purposes, your production directly to me will allow me to have full ownership and control over my medical records outside of this litigation.**

AUTHORIZATION TO DISCLOSE HEALTH INFORMATION | PAGE 1 of 7

## MEDICAL RECORDS AUTHORIZED

The term "document" as used herein includes but is not limited to paper documents and information stored in electronic form.

The documents and tangible things requested by the Defendant and authorized by the Patient to be disclosed for the purposes stated are:

1. Relevant documents relating to your treatment of me, Ashley Gjøvik (DOB 8/26/1986), from Jan. 1, 2020 to present for any physical, mental, or emotional injuries, including, but not limited to,
    a. Intake and admission forms, including statements, questionnaires and histories.
    b. Admission and discharge summaries.
    c. After Visit summaries, visit notes, and provider recommendations.
    d. Referrals to specialists and/or other departments.
    e. Examination and consultation reports and records
    f. Nursing records and reports.
    g. Psychotherapy notes, psychiatric and psychological reports, diagnoses, and summaries.
    h. Inpatient and outpatient records.
    i. Prescription, medication, and/or pharmacy records.
    j. Diagnostic assessments, batteries and/or tests and reports.
    k. Documents relating to or concerning any neurological, neuro-cognitive, psych-educational, neuropsychological, psychological and/or psychiatric evaluation, assessment and/or testing.

2. Relevant billing records to relating to your treatment of me, Ashley Gjøvik (DOB 8/26/1986), from Jan. 1 2020 to present, including any invoices or bills, records of payments made and insurance information/payment.

## EXPIRATION, RETENTION, AND REVOCATION

Unless revoked in writing, my authorization here within (requested by Apple and to accompany Apple Inc's subpoena to produce documents) shall be valid until the close of Discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC (KAW) which is scheduled to conclude on April 16. 2026 (Dkt. 274 Case Management and Pretrial Order).

This authorization allows for Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) to temporarily retain records produced, but only for permissible uses in this litigation and in compliance with relevant law, and only until the conclusion of this lawsuit (including the exhustion of appeals). The Defendant has agreed that within thirty days of the

AUTHORIZATION TO DISCLOSE HEALTH INFORMATION | PAGE 2 of 7

completion of the lawsuit, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) will delete all records received, ensure any other authorized entities who were provided records also delete all records received, and will confirm deletion of the records to me, the Plaintiff, and the disclosing Provider.

As a condition for the release of these records, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) has agreed to treat all records received as "Confidential" PHI, and that no other entity will receive the disclosed medical information without further stipulation with me and/or order of the Court, and only in accordance with applicable law.

A digital copy of this authorization may be used in place of and with the same force and effect as the paper original. This authorization has no legal impact on the Provider's right and ability to file objections or other papers to the Court in this matter in response to the Defendant's subpoena of that Provider. This authorization is made simply to aid the Defendant's request, due to the limited remaining time for discovery, and as a product of meet/confer regarding the scope and terms of said authorization.

## NOTICE

The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to the Provider and/or Orrick, Herrington & Sutcliffe LLP, at mriechert@orrick.com and/or 1000 Marsh Road, Menlo Park, CA 94025 except to the extent that the entity has already lawfully and in good faith relied upon this authorization to disclose protected health information (PHI).

I understand that the neither the covered entity Provider to whom this authorization is directed, or the covered entity Defendant recipient, may condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.

I have read the foregoing authorization and understand that it authorizes the above-named entity to disclose medical records with PHI to Orrick, Herrington & Sutcliffe LLP (on behalf of their client Apple Inc), to receive the records described within for the sole purpose of evidence discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

Pursuant to the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56.13), any recipient of medical information disclosed under this authorization may not further disclose that information without further stipulation or court order and in accordance with applicable law. Any use or disclosure of medical information by Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) shall be in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy.

AUTHORIZATION TO DISCLOSE HEALTH INFORMATION | PAGE 3 of 7

## SIGNATURE OF PATIENT/PLAINTIFF

_____          _____
Signature                                                    Date

Ashley M. Gjovik
Date of Birth: Aug. 26 1986
Phone: (415) 964-6272
Email: ashleymgjovik@protonmail.com
Physical Address: temporary housing in San Jose, California
Mailing Address: 2108 N. St Ste. 4553, Sacramento, CA 95816

## ATTESTATION OF THE DEFENDANT/REQUESTER

SEE ATTACHED EXHIBIT B.

## EXHIBIT A: SEPARATE AUTHORIZATION TO DISCLOSE PSYCHOTHERAPY NOTES

*Pursuant to 45 C.F.R. § 164.508(a)(2) and (b)(3)(ii), this authorization is limited exclusively to psychotherapy notes and may not be combined with any authorization for other protected health information.*

**To:** [Provider Name and Address]
**Re:** Ashley Gjøvik
**Date of Birth:** August 26, 1986
**Case:** *Ashley Gjovik v. Apple, Inc.,* U.S. District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC

I authorize the above-named Provider to disclose to Orrick, Herrington & Sutcliffe LLP (representing Defendant, Apple Inc) **psychotherapy notes**, as defined by 45 C.F.R. § 164.501, relating to my treatment from Jan. 1 2020 to present for physical and/or emotional injuries.

**Purpose:** Discovery in the above-referenced case, in which I pled mental, emotional, and physical injuries and requested compensatory and punitive damages.

**Recipients:** Orrick, Herrington & Sutcliffe LLP (for Apple Inc), Attn: Melinda Riechert, 1000 Marsh Road, Menlo Park, CA 94025; mriechert@orrick.com. Duplicate digital copies should also be sent to the Plaintiff/patient for her own review and preservation at legal@ashleygjovik.com.

**Expiration**: Unless revoked in writing, my authorization here within (requested by Apple and to accompany Apple Inc's subpoena to produce documents) shall be valid until the close of Discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC (KAW) which is scheduled to conclude on April 16. 2026 (Dkt. 274 Case Management and Pretrial Order).

**Handling of Records:** All psychotherapy notes disclosed under this authorization shall be governed in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy. This authorization allows for Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) to temporarily retain records produced, but only for permissible uses in this litigation and in compliance with relevant law, and only until the conclusion of this lawsuit (including the exhaustion of appeals).

The Defendant has agreed that within thirty days of the completion of the lawsuit, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) will delete all records received, ensure any other authorized entities who were provided records also delete all records received, and will confirm deletion of the records to me, the Plaintiff, and the disclosing Provider.

# NOTICE

The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to the Provider and/or Orrick, Herrington & Sutcliffe LLP, at mriechert@orrick.com and/or 1000 Marsh Road, Menlo Park, CA 94025 except to the extent that the entity has already lawfully and in good faith relied upon this authorization to disclose protected health information (PHI).

I understand that the neither the covered entity Provider to whom this authorization is directed, or the covered entity Defendant recipient, may condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization. This authorization has no legal impact on the Provider's right and ability to file objections or other papers to the court in this matter in response to the Defendant's subpoena of that Provider.

I have read the foregoing authorization and understand that it authorizes the above-named entity to disclose medical records with PHI to Orrick, Herrington & Sutcliffe LLP (on behalf of their client Apple Inc), to receive the records described within for the sole purpose of evidence discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

Pursuant to the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56.13), any recipient of medical information disclosed under this authorization may not further disclose that information without further stipulation or court order and in accordance with applicable law. Any use or disclosure of medical information by Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) shall be in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy.

**<u>SIGNATURE OF PATIENT/PLAINTIFF</u>**

_____         _____
 Signature                                                                    Date

Ashley M. Gjovik
Date of Birth: Aug. 26, 1986
Phone: (415) 964-6272
Email: ashleymgjovik@protonmail.com
Physical Address: temporary housing in San Jose, California
Mailing Address: 2108 N. St Ste. 4553, Sacramento, CA 95816

## EXHIBIT B: ATTESTATION OF THE DEFENDANT

(write something about representing Apple and being Orrick and that you agree to the terms stated in the Authorization where I said "we agreed that…")

_____         _____

 Signature                                      Date

(Signature block)

# EXHIBIT C: DRAFT 2

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

To:    UCSF Medical Center ("Provider")
       6425 Christie Avenue, Suite 400, Emeryville, CA 94608

Re:    *Ashley Gjovik v. Apple, Inc.*, U.S. District Court for the Northern District of
       California, Case No. 3:23-cv-04597-EMC

Patient:    ASHLEY GJØVIK
            Date of Birth: August 26, 1986
            Social Security Number: XXX-XX-2419


### PURPOSE

You are receiving this authorization because of discovery requests made by Defendant, Apple Inc, in the matter of *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

I am the Plaintiff in the above noted lawsuit and my Complaint (Dkt. 142, Nov. 26 2024) in the lawsuit claims mental, emotional, and physical injuries and I am seeking compensatory and punitive damages. Accordingly, I acknowledge that the Defendant generally has a right to discovery of relevant evidence.

### RELEASE OF MEDICAL RECORDS TO THE DEFENDANT'S LAW FIRM

I authorize and request the Custodian of Records at the above-named Provider to disclose to the law firm of Orrick, Herrington & Sutcliffe LLP (representing Defendant, Apple Inc) the below stated records, including those that may contain information protected health information (PHI), regarding **ASHLEY GJOVIK**.

Apple Inc has requested that the records disclosed to them be sent to: Orrick, Herrington & Sutcliffe LLP Attn: Melinda Riechert for Apple Inc (mriechert@orrick.com). Orrick/Apple will provide their own instructions in their attached subpoena.

**As a condition of my authorization to release these records, I am requesting that copies of all of the documents sent to the Defendant above should also be sent digitally to me as the Plaintiff/patient at: Attn: Ashley Gjovik  legal@ashleygjovik.com or via a document sharing tool. In addition to other purposes, your production directly to me will allow me to have full ownership and control over my medical records outside of this litigation.**

AUTHORIZATION TO DISCLOSE HEALTH INFORMATION | PAGE 1 of 7

## MEDICAL RECORDS AUTHORIZED

The term "document" as used herein includes but is not limited to paper documents and information stored in electronic form.

The documents and tangible things requested by the Defendant and authorized by the Patient to be disclosed for the purposes stated are:

1. Relevant documents relating to your treatment of me, Ashley Gjøvik (DOB 8/26/1986), from Jan. 1, 2020 to present for any physical, mental, or emotional injuries, including, but not limited to,
    a. Intake and admission forms, including statements, questionnaires and histories.
    b. Admission and discharge summaries.
    c. After Visit summaries, visit notes, and provider recommendations.
    d. Referrals to specialists and/or other departments.
    e. Examination and consultation reports and records
    f. Nursing records and reports.
    g. Psychotherapy notes, psychiatric and psychological reports, diagnoses, and summaries.
    h. Inpatient and outpatient records.
    i. Prescription, medication, and/or pharmacy records.
    j. Diagnostic assessments, batteries and/or tests and reports.
    k. Documents relating to or concerning any neurological, neuro-cognitive, psych-educational, neuropsychological, psychological and/or psychiatric evaluation, assessment and/or testing.

2. Relevant billing records to relating to your treatment of me, Ashley Gjøvik (DOB 8/26/1986), from Jan. 1 2020 to present, including any invoices or bills, records of payments made and insurance information/payment.

## EXPIRATION, RETENTION, AND REVOCATION

Unless revoked in writing, my authorization here within (requested by Apple and to accompany Apple Inc's subpoena to produce documents) shall be valid until the close of Discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC (KAW) which is scheduled to conclude on April 16. 2026 (Dkt. 274 Case Management and Pretrial Order).

This authorization allows for Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) to temporarily retain records produced, but only for permissible uses in this litigation and in compliance with relevant law, and only until the conclusion of this lawsuit (including the exhaustion of appeals). The Defendant has agreed that within thirty days of the

completion of the lawsuit, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) will delete all records received, ensure any other authorized entities who were provided records also delete all records received, and will confirm deletion of the records to me, the Plaintiff, and the disclosing Provider.

As a condition for the release of these records, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) has agreed to treat all records received as "Confidential" PHI, and that no other entity will receive the disclosed medical information without further stipulation with me and/or order of the Court, and only in accordance with applicable law.

A digital copy of this authorization may be used in place of and with the same force and effect as the paper original. This authorization has no legal impact on the Provider's right and ability to file objections or other papers to the Court in this matter in response to the Defendant's subpoena of that Provider. This authorization is made simply to aid the Defendant's request, due to the limited remaining time for discovery, and as a product of meet/confer regarding the scope and terms of said authorization.

## NOTICE

The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to the Provider and/or Orrick, Herrington & Sutcliffe LLP, at mriechert@orrick.com and/or 1000 Marsh Road, Menlo Park, CA 94025 except to the extent that the entity has already lawfully and in good faith relied upon this authorization to disclose protected health information (PHI).

I understand that the neither the covered entity Provider to whom this authorization is directed, or the covered entity Defendant recipient, may condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.

I have read the foregoing authorization and understand that it authorizes the above-named entity to disclose medical records with PHI to Orrick, Herrington & Sutcliffe LLP (on behalf of their client Apple Inc), to receive the records described within for the sole purpose of evidence discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

Pursuant to the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56.13), any recipient of medical information disclosed under this authorization may not further disclose that information without further stipulation or court order and in accordance with applicable law. Any use or disclosure of medical information by Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) shall be in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy.

AUTHORIZATION TO DISCLOSE HEALTH INFORMATION | PAGE 3 of 7

**<u>SIGNATURE OF PATIENT/PLAINTIFF</u>**

_____        _____
Signature                                          Date

Ashley M. Gjovik
Date of Birth: Aug. 26 1986
Phone: (415) 964-6272
Email: ashleymgjovik@protonmail.com
Physical Address: temporary housing in San Jose, California
Mailing Address: 2108 N. St Ste. 4553, Sacramento, CA 95816

**ATTESTATION OF THE DEFENDANT/REQUESTER**

SEE ATTACHED EXHIBIT B.

## EXHIBIT A: SEPARATE AUTHORIZATION TO DISCLOSE PSYCHOTHERAPY NOTES

*Pursuant to 45 C.F.R. § 164.508(a)(2) and (b)(3)(ii), this authorization is limited exclusively to psychotherapy notes and may not be combined with any authorization for other protected health information.*

**To:** [Provider Name and Address]
**Re:** Ashley Gjøvik
**Date of Birth:** August 26, 1986
**Case:** *Ashley Gjovik v. Apple, Inc.,* U.S. District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC

I authorize the above-named Provider to disclose to Orrick, Herrington & Sutcliffe LLP (representing Defendant, Apple Inc) **psychotherapy notes**, as defined by 45 C.F.R. § 164.501, relating to my treatment from Jan. 1 2020 to present for physical and/or emotional injuries.

**Purpose:** Discovery in the above-referenced case, in which I pled mental, emotional, and physical injuries and requested compensatory and punitive damages.

**Recipients:** Orrick, Herrington & Sutcliffe LLP (for Apple Inc), Attn: Melinda Riechert, 1000 Marsh Road, Menlo Park, CA 94025; mriechert@orrick.com. Duplicate digital copies should also be sent to the Plaintiff/patient for her own review and preservation at [legal@ashleygjovik.com](mailto:legal@ashleygjovik.com).

**Expiration**: Unless revoked in writing, my authorization here within (requested by Apple and to accompany Apple Inc's subpoena to produce documents) shall be valid until the close of Discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC (KAW) which is scheduled to conclude on April 16. 2026 (Dkt. 274 Case Management and Pretrial Order).

**Handling of Records:** All psychotherapy notes disclosed under this authorization shall be governed in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy. This authorization allows for Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) to temporarily retain records produced, but only for permissible uses in this litigation and in compliance with relevant law, and only until the conclusion of this lawsuit (including the exhaustion of appeals).

The Defendant has agreed that within thirty days of the completion of the lawsuit, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) will delete all records received, ensure any other authorized entities who were provided records also delete all records received, and will confirm deletion of the records to me, the Plaintiff, and the disclosing Provider.

## NOTICE

The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to the Provider and/or Orrick, Herrington & Sutcliffe LLP, at mriechert@orrick.com and/or 1000 Marsh Road, Menlo Park, CA 94025 except to the extent that the entity has already lawfully and in good faith relied upon this authorization to disclose protected health information (PHI).

I understand that the neither the covered entity Provider to whom this authorization is directed, or the covered entity Defendant recipient, may condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization. This authorization has no legal impact on the Provider's right and ability to file objections or other papers to the court in this matter in response to the Defendant's subpoena of that Provider.

I have read the foregoing authorization and understand that it authorizes the above-named entity to disclose medical records with PHI to Orrick, Herrington & Sutcliffe LLP (on behalf of their client Apple Inc), to receive the records described within for the sole purpose of evidence discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

Pursuant to the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56.13), any recipient of medical information disclosed under this authorization may not further disclose that information without further stipulation or court order and in accordance with applicable law. Any use or disclosure of medical information by Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) shall be in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy.

**SIGNATURE OF PATIENT/PLAINTIFF**

_____          _____
 Signature                                              Date

Ashley M. Gjovik
Date of Birth: Aug. 26, 1986
Phone: (415) 964-6272
Email: ashleymgjovik@protonmail.com
Physical Address: temporary housing in San Jose, California
Mailing Address: 2108 N. St Ste. 4553, Sacramento, CA 95816

**EXHIBIT B: ATTESTATION OF THE DEFENDANT**

(write something about representing Apple and being Orrick and that you agree to the terms stated in the Authorization where I said "we agreed that…")

_____     _____

 Signature                                                                    Date

(Signature block)

# EXHIBIT D: AC WELLNESS

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:     +1 202 339 8400
Facsimile:     +1 202 339 8500

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ASHLEY GJOVIK,<br><br>                 Plaintiff,<br><br>        v.<br><br>APPLE INC.,<br><br>                 Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF SUBPOENA TO AC WELLNESS MEDICAL GROUP** |

TO PLAINTIFF ASHLEY GJOVIK:

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Apple Inc. intends to serve the attached Subpoena on the Custodian of Records for AC Wellness Medical Group, 20730 Valley Green Drive, Cupertino, CA 95014 on March 13, 2026, or as soon thereafter as service may be effected.


Dated: March 12, 2026                                   ORRICK, HERRINGTON & SUTCLIFFE LLP


*Melinda Riechert*

_____

MELINDA S. RIECHERT
Attorney for Defendant
APPLE INC.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| Ashley Gjovik | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 23-cv-4597-EMC |
| | ) | |
| Apple Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:      Custodian of Records for AC Wellness Medical Group
20730 Valley Green Drive, Cupertino, CA 95014

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Orrick, Herrington & Sutcliffe LLP<br>Attn: Melinda Riechert<br>1000 Marsh Road, Menlo Park, CA 94025 | Date and Time:<br><br>04/03/2026 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      03/12/2026

| | | |
|---|---|---|
| *CLERK OF COURT* | | *Melinda Riechert* |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant, Apple Inc. _____ , who issues or requests this subpoena, are:
Melinda Riechert (SBN 65504) Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025;
(650) 614-7400; mriechert@orrick.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 23-cv-4597-EMC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## ASHLEY GJØVIK / ASHLEY HENDERSON

## (Date of Birth: August 26, 1986) (Social Security No. XXX-XX-2419)

The following records of Ashley Gjøvik / Ashley Henderson from 2015 through the present:

1. All documents relating to your treatment of Ashley Gjøvik / Ashley Henderson (DOB 8/26/1986) from 2015 to present, including, but not limited to,

   a. Intake and admission forms, including statements, questionnaires and histories.
   b. Admission and discharge summaries.
   c. Examination and consultation reports and records, including handwritten notes, clinical charts, and records received from other providers.
   d. Nursing records and reports.
   e. Psychotherapy notes, psychiatric and psychological reports and summaries.
   f. Inpatient and outpatient records.
   g. Prescription/medication/pharmacy records, including NDC numbers, lot numbers, drug information handouts and monographs.
   h. Correspondence to, from, and concerning ASHLEY GJØVIK / ASHLEY HENDERSON.
   i. Sound and video recordings, including audiotapes and CDs.
   j. Diagnostic assessments, batteries and/or tests and reports.
   k. Documents relating to or concerning any neurological, neuro-cognitive, psych-educational, neuropsychological, psychological and/or psychiatric evaluation, assessment and/or testing.

2. All billing records to relating to your treatment of Ashley Gjøvik / Ashley Henderson (DOB 8/26/1986) from 2015 to present, including but not limited to any invoices or bills, records of payments made and insurance information/payment.

   *INCLUDE BILLING RECORDS*

All documents should be produced as CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M GJOVIK,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 3:23-cv-04597-EMC (KAW)

**ORDER REGARDING APPLE'S SUBPOENAS FOR PLAINTIFF'S MEDICAL RECORDS**

Re: Dkt. Nos. 276, 277

On February 10, 2026, Defendant Apple Inc. filed a discovery letter pertaining to Plaintiff's refusal to authorize the release of her medical records despite claims of severe emotional distress. (Def.'s Letter, Dkt. No. 276.) Apple contends that they attempted to negotiate the scope of the subpoenas with Plaintiff, including sending her drafts to which she promised revisions to narrow the scope. *Id.* at 2. Plaintiff never provided the revisions. *Id.*

On February 16, 2026, Plaintiff filed a response, in which she acknowledged that she was claiming severe emotional distress, that her medical and mental conditions have been put "in controversy," and that Apple is entitled to damages-related discovery. (Pl.'s Letter, Dkt. No. 277 at 5.) Even so, she argues that Apple's letter was premature because it has not served the subpoenas. *Id.* She also contends that she reserves her right to object to scope and substance of any subpoena Apple may serve, and that she cannot be forced to consent to a HIPAA waiver. *Id.*

Plaintiff is correct in that the Court will not make her consent to release her medical records. (Pl.'s Letter at 5.) Plaintiff, however, is advised that she has placed her medical and mental conditions at issue in this case and has, therefore, waived any privilege over her medical records. *See Bangoura v. Andre-Boudin Bakeries*, No. C 12-3229 MMC DMR, 2012 WL 5349991, at *2 (N.D. Cal. Oct. 29, 2012) (waived privilege based on seeking $600,000 in

emotional distress damages). The fact that Plaintiff has agreed to undergo an IME is of no consequence. (*See* Pl.'s Letter at 1.) Moreover, the Court can order her providers to release her records over her objection. *See City & Cnty. of San Francisco v. Superior Ct. In & For City & Cnty. of San Francisco*, 37 Cal. 2d 227, 232, 231 P.2d 26, 28 (1951) ("The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.")

Plaintiff raises other arguments that are unavailing. First, Apple is not required to propound discovery on Plaintiff before or in lieu of subpoenaing medical records from her providers. *See id.* at 3. Second, Plaintiff's assertion that Apple should have no difficulty subpoenaing medical records from wholly owned subsidiary AC Wellness Medical Group is not well taken, because that entity is presumably bound by the same privacy requirements as other medical providers. *See id.* at 4.

Finally, based on a cursory review, the Court takes no issue with Apple's Attachment A to the proposed stipulation. (Def.'s Letter, Ex. A at 9.) If those categories of medical records are sought by way of subpoena, the Court is inclined to permit the discovery of same.

Accordingly, while the Court finds this dispute technically premature, since no subpoena has been served, Plaintiff has put her medical and mental conditions "in controversy," such that her medical records are discoverable. The parties are ordered to further meet and confer regarding executing an authorization to release the medical records sought. If Plaintiff refuses to authorize release, Apple should subpoena the records, and, if it is unsuccessful, may file a discovery letter and proposed order compelling Plaintiff's medical providers to release her records based on this order.

This resolves Dkt. Nos. 276 & 277.

IT IS SO ORDERED.

Dated: February 23, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

2