Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

Ashley M. Gjovik,
*an individual*,

Plaintiff,

vs.

Apple Inc.,
*a corporation,*

Defendant.

Case No.
3:23-CV-04597-EMC

PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO MAGISTRATE JUDGE'S ORDER AT DKT. 326

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STANDARD OF REVIEW ................................................................................... 3

THE ORDER AT ISSUE ...................................................................................... 3

ISSUE 1: WHAT MOTION WAS THE DE-PUBLICATION ORDER GRANTED ON?............................ 3

ISSUE 2: IS THE PROSPECTIVE SPEECH RESTRICTION A PRIOR RESTRAINT ISSUED WITHOUT A MOTION, WITHOUT STATUTORY AUTHORITY, WITHOUT CONSTITUTIONAL FINDINGS, AND WITH TERMS THAT DELEGATE THE DEFINITION OF PROHIBITED SPEECH TO THE OPPOSING PARTY? ................................................................................ 4

ISSUE 3: IS THE DE-PUBLICATION ORDER A MANDATORY INJUNCTION COMPELLING DESTRUCTION OF EXISTING EXPRESSION, ISSUED WITHOUT A MOTION, WITHOUT STATUTORY AUTHORITY, AND WITHOUT MEETING THE HEIGHTENED STANDARD FOR MANDATORY INJUNCTIONS? ..................................................................... 6

ISSUE 4: DO VALID CONFIDENTIALITY DESIGNATIONS EXIST? THE COURT ISSUED ORDERS PRESUPPOSING THE ANSWER TO A PENDING THRESHOLD MOTION IT HAS NOT RESOLVED............................................................................................................ 7

ISSUE 5: HAS ANY COURT MADE A FINDING THAT DISCLOSURE OF THE SPECIFIC DESIGNATED TESTIMONY WOULD CAUSE APPLE PARTICULARIZED HARM? ................10

ISSUE 6: DOES THE ORDER COMPLY WITH SEATTLE TIMES BY DISTINGUISHING DISCOVERY MATERIAL FROM INDEPENDENT KNOWLEDGE? ..........................................................11

ISSUE 7: DOES APPLE'S UNILATERAL DESIGNATION SATISFY RULE 26(C)'S GOOD CAUSE REQUIREMENT? ................................................................................................11

ISSUE 8: WAS THE SEALING DIRECTIVE ISSUED WITHOUT THE FINDINGS REQUIRED BY KAMAKANA? ......................................................................................................12

ISSUE 9: DID THE COURT ADDRESS THE PROPERLY RAISED JURISDICTIONAL AND LEGAL BARS? ...............................................................................................................12

ISSUE 10: DOES THE UNDISPUTED RECORD SHOW THE PROTECTIVE ORDER WAS OBTAINED FOR ONE PURPOSE AND USED EXCLUSIVELY FOR ANOTHER? ......................................14

ISSUE 11: WAS THE UNDERLYING PROTECTIVE ORDER VOLUNTARILY STIPULATED?..............15

ISSUE 12: HAS THE COURT ADDRESSED PLAINTIFF'S PENDING OBJECTIONS TO THE
PROTECTIVE ORDER, INCLUDING HER MOTION TO QUASH, NINTH CIRCUIT APPEAL,
AND NLRB CHARGES? .......................................................................................16

ISSUE 13: ARE THE PROTECTIVE ORDER'S OWN EXCLUSIONS FOR PUBLIC AND PREVIOUSLY
KNOWN INFORMATION ENFORCEABLE?.......................................................17

ISSUE 14: DO THE UNRESOLVED DESIGNATIONS FORCE PLAINTIFF TO CHOOSE BETWEEN
PERJURY AND CONTEMPT WHEN FILING HER SUMMARY JUDGMENT MOTION? ...........19

ISSUE 15: DO THE ORDERS VIOLATE PLAINTIFF'S CALIFORNIA CONSTITUTIONAL RIGHT TO
PROTEST INVASIONS OF PRIVACY? ............................................................. 20

ISSUE 16: DOES THE PRECEDENT CREATED BY THESE ORDERS IMPLICATE CONSTITUTIONAL
PROTECTIONS FOR SPEECH ABOUT REPRODUCTIVE HEALTH AND INTIMATE SEXUAL
CONDUCT?.......................................................................................................21

**CERTIFICATION FOR INTERLOCUTORY APPEAL** ........................................................ 23

**RELIEF REQUESTED** ........................................................................................ 24

**CONCLUSION** ................................................................................................. 25

## PLAINTIFF'S OBJECTIONS UNDER RULE 72(A) TO MAGISTRATE JUDGE'S ORDER AT DKT. 326
### (ORDER DENYING MOTION TO ENFORCE PROTECTIVE ORDER; SUA SPONTE DE-PUBLICATION, GAG, AND SEALING DIRECTIVES)

1.      This filing is made as of right under Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and N.D. Cal. Civil Local Rule 72-2. It objects to the Magistrate Judge's order at Dkt. 326 and presents sixteen issues for this Court's review. These include questions of constitutional law (prior restraints on speech, First Amendment, due process), jurisdictional questions (the Norris-LaGuardia Act, Garmon preemption, the bankruptcy automatic stay), and questions of statutory authority (28 U.S.C. § 636(b)(1)(A)), each of which is reviewed de novo as "contrary to law." Local Rule 72-2 provides that the assigned judge "shall consider the objections and modify or set aside any portion of the order" found to be clearly erroneous or contrary to law. Plaintiff respectfully requests that this Court address each numbered issue on the merits and requests oral argument.

# INTRODUCTION

2.      Plaintiff respectfully objects under Rule 72(a) to the order at Dkt. 326, entered March 30, 2026. The Magistrate Judge denied Apple's Motion to Enforce the Protective Order (Dkt. 294) for failure to meet and confer. Having denied the only pending motion, the Magistrate Judge then sua sponte ordered relief more expansive than what the denied motion requested: a prospective gag order prohibiting Plaintiff from discussing information Apple designated "Confidential"; a retrospective de-publication order compelling Plaintiff to delete speech she has already published; a directive to negotiate sealing of public docket entries; and a pre-announced inclination to grant sealing if the parties cannot agree. No party moved for any of this relief. Plaintiff had no notice it was being considered and no opportunity to oppose it.

3.      This Court's order at Dkt. 303 addressed Plaintiff's objections to the February 20, 2026 telephonic conference and found that the Magistrate Judge had "simply said" the parties were to meet and confer. Dkt. 303 at 1. This Court held that designations could "temporarily remain in place while Judge Westmore adjudicates the issue of confidentiality." Dkt. 303 at 2. That framework rested on two premises: that the Magistrate Judge would adjudicate, and that Apple's designations were made in good faith. On March 30, the Magistrate Judge ordered the remedy — compelled de-publication and sealing — without completing the adjudication. Plaintiff's Rule 26(g) motion (Dkt. 302), which challenges whether any valid

designation has ever existed, was fully briefed by March 27 and remains unresolved. The Magistrate Judge did not address it before ordering enforcement of the designations it challenges.

4.    The order's most consequential feature is what it implies about the Protective Order's scope. The Protective Order's own Section 3 expressly excludes "any information that is in the public domain" and "any information known to the Receiving Party prior to the disclosure." Every item Apple designated falls within these exclusions — the subject matter has been publicly pled since 2023, appears in this Court's published orders, and is documented in NLRB proceedings, peer-reviewed journals, the federal ClinicalTrials.gov registry, and a GAO report. By ordering de-publication without addressing Section 3, the court implicitly held that the Protective Order covers publicly known information and information Plaintiff knew from her own experience — reading out the exclusions the order's own text provides. Under this interpretation, the Protective Order has operated as a gag order since Apple imposed the blanket designation on December 16, 2025 — over three months of ongoing speech restriction, with no findings, no analysis, and no end date.

5.    These orders are not merely erroneous — they are void. The de-publication and gag orders are injunctions arising from a labor dispute. Under the Norris-LaGuardia Act, 29 U.S.C. § 101, no federal court has jurisdiction to issue an injunction in a labor dispute without meeting the specific requirements of § 107 — none of which the Magistrate Judge satisfied. Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may not determine motions for injunctive relief. The speech restrictions constitute irreparable harm per se. *Elrod v. Burns,* 427 U.S. 347, 373 (1976). The harm compounds daily: Plaintiff must file her summary judgment motion by April 27, but the designation framework forces her to file under seal with a declaration she believes is false — or file publicly and risk contempt. The court's implicit position is that restricting a party's speech about publicly known workplace conditions causes no cognizable harm. That position is contrary to law.

6.    This filing presents sixteen issues for completeness and appellate preservation, but this Court need not reach all of them. If this Court resolves Issue 4 (whether valid designations exist) and Issue 13 (whether the Protective Order's own Section 3 exclusions are enforceable), the de-publication, gag, and sealing directives collapse on the Protective Order's own terms. Alternatively, Issue 9(c) (the Norris-LaGuardia Act) is jurisdictional and dispositive standing alone: if the de-publication and gag orders are labor injunctions issued without § 107 findings, they are void regardless of any other analysis.

# STANDARD OF REVIEW

7.     Under Rule 72(a), a magistrate judge's order on a non-dispositive pretrial matter must be set aside if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Legal questions — including statutory interpretation, application of the Federal Rules, and constitutional questions — are reviewed de novo as "contrary to law." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). Jurisdictional questions receive no deference. Constitutional questions, including the validity of speech restrictions, are reviewed de novo. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36-37 (1984).

# THE ORDER AT ISSUE

8.     The Magistrate Judge denied Apple's Motion to Enforce Protective Order (Dkt. 294) because Apple failed to adequately meet and confer after the February 20, 2026 discovery conference. Having denied the only pending motion, the Magistrate Judge then issued the following directives sua sponte: **Dkt. 326:** "[I]f Plaintiff has published information designated 'Confidential' by Apple, that information is considered Confidential until found otherwise, and must be de-published until the Court resolves the pending motion to retain confidentiality (Dkt. No. 304)." The order further directs the parties to "meet and confer regarding a stipulation to seal" public docket entries and states the court will be "inclined to grant" Apple's undefined and unlimited sealing motion if the parties cannot agree. The order also states Plaintiff "is advised that she is bound by the stipulated protective order, including Section 6, which sets forth the method of challenging confidentiality designations."

### ISSUE 1: WHAT MOTION WAS THE DE-PUBLICATION ORDER GRANTED ON?

*Standard: Contrary to law — de novo review. Due process (Fifth Amendment).*

9.     Apple filed one motion: a Motion to Enforce Protective Order (Dkt. 294). The Magistrate Judge denied it. The Motion to Shorten Time (Dkt. 295) was terminated as moot. No motion requesting de-publication of speech was filed. No motion requesting sealing of the specific docket entries referenced in the order was filed.

10.     After denying the only motion before her, the Magistrate Judge sua sponte ordered: (1) Plaintiff must de-publish "information designated 'Confidential' by Apple"; (2) the parties must negotiate a "stipulation to seal" public docket entries; (3) the court would be "inclined to grant" Apple's sealing motion if the parties cannot agree.

11.     A court may not grant relief that no pending motion requests. See *Conn v. City of Reno*, 591 F.3d 1081, 1099 (9th Cir. 2010); *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (courts are "essentially passive instruments of government" and must rely on parties to "frame the issues"). Where a court contemplates acting sua sponte, due process requires notice. *Jones v. L.A. Cent. Plaza LLC*, No. 22-55489, 2023 WL 4805896 (9th Cir. July 26, 2023) (unpublished) ("a district court generally must provide the parties with adequate notice that it is contemplating invoking a particular procedural device sua sponte"). *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Plaintiff had no notice the court was considering de-publication or sealing relief, no opportunity to brief those issues, and no opportunity to oppose. The relief actually ordered is more expansive than what the denied motion sought.

12.     **Requested ruling:** Was there a pending motion authorizing the de-publication directive and sealing directive in Dkt. 326? If not, are the directives void for lack of a procedural vehicle?

## ISSUE 2: IS THE PROSPECTIVE SPEECH RESTRICTION A PRIOR RESTRAINT ISSUED WITHOUT A MOTION, WITHOUT STATUTORY AUTHORITY, WITHOUT CONSTITUTIONAL FINDINGS, AND WITH TERMS THAT DELEGATE THE DEFINITION OF PROHIBITED SPEECH TO THE OPPOSING PARTY?

*Standard: Contrary to law — de novo review. First Amendment; § 636(b)(1)(A); due process.*

13.     The order states that information designated "Confidential" by Apple "is considered Confidential until found otherwise." This is a standing prohibition on Plaintiff's future speech about an undefined category of "information" — effective immediately, indefinite in duration, with no endpoint other than whenever the court rules on a challenge. That is a prior restraint on speech. It is analyzed here separately from the retrospective de-publication order (Issue 3) because it is a distinct legal act with distinct constitutional problems.

14.     **(a) No motion.** No party filed a motion requesting a prospective speech restriction. Apple's Motion to Enforce (Dkt. 294) was denied. The gag order was issued sua sponte. Plaintiff had no notice this relief was being considered and no opportunity to oppose it.

15.     **(b) No statutory authority.** A standing order prohibiting a party from speaking about designated subjects, enforceable through contempt, is injunctive relief. 28 U.S.C. § 636(b)(1)(A) excludes "a motion for injunctive relief" from a magistrate judge's authority. That exclusion is jurisdictional. *Gomez v. United States*, 490 U.S. 858, 876 (1989).

16.     **(c) No constitutional findings.** Prior restraints bear a heavy presumption of unconstitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). To survive, a speech restriction must be supported by specific findings of harm, narrowly tailored, and necessary to serve a compelling interest. *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). The order contains no findings of any kind.

17.     **(d) The scope of prohibited speech is defined by the opposing party.** The restriction covers "information designated 'Confidential' by Apple." This means a private party — the opposing party in the litigation — controls what Plaintiff may say. Apple designates; the court enforces the designation as a speech prohibition without independent review. No court has evaluated whether any specific designation is valid. The court has outsourced the definition of a prior restraint to one side of the litigation. The enforcement mechanism compounds the problem: if Apple identifies content it claims falls within the designations and demands removal, Plaintiff's only options are to comply or risk contempt. There is no pre-enforcement judicial review of whether the specific content Apple identifies is actually covered.

18.     **(e) The restriction is unconstitutionally vague.** An injunction restricting speech must "state its terms specifically and describe in reasonable detail the act or acts restrained." *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999). The term "information" is undefined. Can Plaintiff say the word "menstruation" in a blog post? Can she describe the subject of her NLRB charges, which reference the designated testimony? Can she discuss her own workplace experiences with a journalist, a coworker, or an NLRB investigator? The order does not say. The vagueness chills speech that is indisputably protected.

19.     **(f) The restriction is indefinite and has no temporal scope.** It continues "until found otherwise" — with no time limit, no sunset provision, and no guaranteed mechanism for resolution. If no one files the right motion, or if the court declines to rule (as it has on the pending 26(g) motion), the restriction continues indefinitely. The restriction also has no temporal floor: Apple's enforcement filings

identify speech published over a period of years, including blog posts, social media posts, NLRB filings, and public comments predating the Protective Order itself. (Dkt. 302-2, cataloguing designated content spanning 2021 through 2026). The de-publication order covers all of it without distinguishing between speech that postdates the order and speech that predates it by years. A court order requiring deletion of speech published years before the order existed, based on a protective order the speaker objected to and never consented to, is without precedent.

20.    **(g) The Magistrate Judge's own prior statements contradict the order.** At the February 20, 2026 conference, the Magistrate Judge stated she would need to review the evidence and identify specific content before any takedown could issue. (Dkt. 301-1). On March 30, the Magistrate Judge issued a blanket de-publication order without reviewing the evidence, without identifying specific content, and without holding the hearing she said would be required. This Court characterized the February 20 conference as one in which the Magistrate Judge "simply said" that formal motions would be needed. (Dkt. 303 at 1). The March 30 order bypassed the process both courts described.

21.    **(h) The restriction potentially reaches protected activity.** Plaintiff's speech about workplace conditions is arguably protected under NLRA § 7. Three NLRB charges are pending. Filing NLRB charges is protected under § 8(a)(4). The gag order makes no exception for communications with the NLRB, testimony before government agencies, or protected concerted activity with coworkers. A speech restriction that potentially prohibits federally protected labor activity requires, at minimum, analysis of that conflict. The order contains none.

22.    **Requested ruling:** (a) Is the prospective speech restriction a prior restraint? (b) Was it issued without a pending motion? (c) Does a magistrate judge have statutory authority to issue it? (d) Does it satisfy the constitutional requirements for a prior restraint — findings of harm, narrow tailoring, necessity? (e) Can the scope of a court-ordered speech restriction be defined by the opposing party's unilateral designations? (f) Does the restriction satisfy the specificity requirement of Schmidt v. Lessard? (g) Is an indefinite speech restriction with no sunset "until found otherwise" constitutionally permissible?

## ISSUE 3: IS THE DE-PUBLICATION ORDER A MANDATORY INJUNCTION COMPELLING DESTRUCTION OF EXISTING EXPRESSION, ISSUED WITHOUT A MOTION, WITHOUT STATUTORY AUTHORITY, AND WITHOUT MEETING THE HEIGHTENED STANDARD FOR MANDATORY INJUNCTIONS?

*Standard: Contrary to law — de novo review. First Amendment; § 636(b)(1)(A).*

23.    Separate from the prospective gag order in Issue 2, the order directs that designated information "must be de-published." This is a retrospective order: it compels Plaintiff to go back and remove speech she has already published. This is a mandatory injunction — it requires affirmative action (the destruction of existing expression) rather than merely prohibiting future conduct.

24.    **(a) Mandatory injunctions are subject to a heightened standard.** The Ninth Circuit applies a heightened standard to mandatory injunctions because they alter the status quo rather than preserve it. *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Compelling deletion of published speech is more extreme than preventing future speech — it requires the speaker to affirmatively destroy her own expression. No court has applied any standard, let alone a heightened one.

25.    **(b) No statutory authority.** For the same reasons stated in Issue 2(b), a mandatory injunction compelling removal of published speech is "injunctive relief" beyond a magistrate judge's authority under § 636(b)(1)(A). The Magistrate Judge acknowledged this limitation during the February 20, 2026 conference. When Plaintiff objected to compelled deletion, the Magistrate Judge stated: "No, there is no injunction." (Dkt. 301-1 (audio recording at 38:56)). This Court characterized these statements favorably at Dkt. 303, finding the Magistrate Judge had "simply said" that motions were required. The March 30 order does the thing the Magistrate Judge said she would not do on February 20 and that this Court characterized her as not doing at Dkt. 303.

26.    **(c) No specificity.** The order does not identify what must be removed. It does not list URLs. It does not identify specific posts, publications, or filings. It says "information" must be "de-published" without defining either term. Plaintiff cannot comply because she cannot determine what the order requires. An injunction must "describe in reasonable detail the act or acts restrained." Fed. R. Civ. P. 65(d)(1)(C).

27.    **(d) No motion.** As with the prospective restriction, no party requested a de-publication order. It was issued sua sponte after denial of the only pending motion.

28.    **Requested ruling:** (a) Is the de-publication order a mandatory injunction? (b) Does a magistrate judge have statutory authority to issue it? (c) Does the order satisfy the heightened standard for mandatory injunctions? (d) Does the order satisfy Rule 65(d)(1)(C)'s specificity requirement?

### ISSUE 4: DO VALID CONFIDENTIALITY DESIGNATIONS EXIST?

## THE COURT ISSUED ORDERS PRESUPPOSING THE ANSWER TO A PENDING THRESHOLD MOTION IT HAS NOT RESOLVED.

*Standard: Contrary to law — de novo review.*

29.    Independent of Issue 1, the three March 30 orders share a common predicate: each presupposes that valid confidentiality designations exist under the Protective Order. Dkt. 326 states information "is considered Confidential until found otherwise." Dkt. 327 directs production "subject to the stipulated protective order." Dkt. 329 recites "good cause to seal having been shown" based on Apple's designations.

30.    Whether valid designations exist is not a settled question. It is the subject of Plaintiff's Rule 26(g) Motion (Dkt. 302), filed March 6, 2026, fully briefed as of March 27, 2026, and set for hearing April 16, 2026. The motion presents undisputed evidence that no valid designation has ever existed:

31.    (a) Apple imposed a blanket designation covering approximately 72% of the deposition on December 16, 2025, triggered at the moment Plaintiff began discussing the NLRB settlement. (Dkt. 302 at 18; Dkt. 302-2, Dep. Tr. at 63:14-64:2).

32.    (b) Plaintiff objected on the record. Apple acknowledged the objection and agreed to narrow. (Dkt. 304-2, Ex. A at 141:18-142:25).

33.    (c) Apple filed no motion to retain confidentiality within 21 days as required by Protective Order § 6.3. Under § 6.3's mandatory language, designations "shall automatically be considered waived." The blanket designation was waived no later than January 6, 2026.

34.    (d) Apple's February 4, 2026 narrowed designation chart was unsigned, undated, and unserved. It was emailed to the court reporter with Plaintiff copied "for notice purposes." (Dkt. 302 at 9-11).

35.    (e) Plaintiff called the Rule 26(g)(1) signature deficiency to Apple's attention repeatedly in writing. Apple expressly refused to cure: "Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM).

36.    (f) Rule 26(g)(2) provides that the court "must strike" an unsigned discovery document when the omission has been called to the party's attention and not promptly cured. "Must" is mandatory. There is no balancing test or substantial justification exception for the striking itself.

37.    If the blanket designation was waived under § 6.3 and the narrowed designations must be

stricken under Rule 26(g)(2), then no valid designation has ever existed. Every order premised on those designations rests on a predicate that a pending, fully briefed motion demonstrates is false. The error is compounded by three additional features of Dkt. 326:

38.     First, the order ties the de-publication to Apple's Motion to Retain Confidentiality Designations (Dkt. 304) — not to the 26(g) motion (Dkt. 302). The court orders de-publication "until the Court resolves the pending motion to retain confidentiality (Dkt. No. 304)." But Dkt. 302 is the threshold motion. If the 26(g) motion succeeds, there are no valid designations and the retention motion at Dkt. 304 is moot. By tying the de-publication to Dkt. 304 while ignoring Dkt. 302, the court skipped the threshold question.

39.     Second, the order directs Plaintiff to comply with Section 6 of the Protective Order — the challenge procedure for designations. But the 26(g) motion argues the designations are nullities, not merely disputed designations. A party does not "challenge" a nullity through Section 6; a nullity has no legal existence. By directing Section 6 compliance, the court assumed the designations were validly made, which is the question the 26(g) motion raises.

40.     Third, the Protective Order's own Section 3 expressly excludes from its coverage "any information that is in the public domain" and "any information known to the Receiving Party prior to the disclosure." The information at issue — Plaintiff's testimony about her own body and workplace complaints — falls within both exclusions. The court did not address Section 3 or determine whether the designated information is excluded from the order's scope by its own terms.

41.     This is a separate error from Issue 1. Even if the de-publication order had been issued on a proper motion with full briefing, it would still be error to enforce designations whose validity is the subject of an unresolved threshold motion the court has declined to decide.

42.     The 26(g) motion also does not appear in the Magistrate Judge's plan for resolving outstanding issues. Dkt. 327 establishes a new omnibus briefing schedule for "all outstanding fact discovery issues not otherwise pending." The 26(g) motion is set for hearing April 16 but is not referenced in any of the three March 30 orders. The Magistrate Judge has not indicated when or whether she will rule on it. Meanwhile, the de-publication order—which depends on the validity of the designations that motion challenges—is in effect now.

43.     **Requested ruling:** (a) Must the court resolve the pending Rule 26(g) motion (Dkt. 302)

before issuing orders that presuppose the validity of the designations that motion challenges? (b) If the designations are stricken under Rule 26(g)(2) or waived under § 6.3, do the three March 30 orders have a remaining legal basis? (c) Should this Court order the Magistrate Judge to resolve Dkt. 302 before or concurrently with any enforcement of the designations?

## ISSUE 5: HAS ANY COURT MADE A FINDING THAT DISCLOSURE OF THE SPECIFIC DESIGNATED TESTIMONY WOULD CAUSE APPLE PARTICULARIZED HARM?

*Standard: Contrary to law — de novo review.*

44. Issues 2 and 3 address the procedural and structural deficiencies of the speech restrictions. This issue addresses the missing factual predicate. No court at any stage of this litigation has evaluated the specific testimony Apple designated and found that its disclosure would cause Apple particularized harm.

45. Apple's sole remaining designations cover Plaintiff's deposition testimony about Apple asking employees to participate in studies of their menstruation, ovulation, and cervical mucus. That a menstrual-health technology company studies menstruation is not a trade secret; it is the company's publicly marketed purpose. See *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1011 n.15 (1984). Plaintiff disclosed no algorithms, sensor specifications, or study data — only complaints about workplace conduct. The same subject matter appears in: this Court's published orders (Dkt. 73 at 7-8: "invasive, oppressive, and humiliating medical studies"; Dkt. 179 at 2); six successive complaints on this docket dating to December 2023; NLRB proceedings dating to August 2021 (Case No. 32-CA-284428); a peer-reviewed publication in the American Journal of Obstetrics and Gynecology (Mahalingaiah et al., vol. 226(4) (2022)); the federal ClinicalTrials.gov registry (NCT04196595); a Government Accountability Office report (GAO-24-107639); and press coverage in the United States, Germany, France, and the United Kingdom. (Dkt. 321, Request for Judicial Notice, 197 pages of publicly available evidence).

46. The court issued speech restrictions and sealing directives based on Apple's designation alone, without any evidentiary showing that disclosure of this specific testimony would cause any harm to Apple, let alone the particularized harm required to justify restricting speech.

47. **Requested ruling:** Has any court made a particularized finding that disclosure of the designated testimony would harm Apple? Can speech restrictions and sealing orders rest on a party's designation alone, without any evidentiary showing of harm?

## ISSUE 6: DOES THE ORDER COMPLY WITH SEATTLE TIMES BY DISTINGUISHING DISCOVERY MATERIAL FROM INDEPENDENT KNOWLEDGE?

*Standard: Contrary to law — de novo review. Constitutional question.*

48.　Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984), holds that protective orders survive First Amendment scrutiny because they "do not restrict the dissemination of the information if gained from other sources." This is the substantive constitutional boundary that makes protective orders permissible. Independent of the procedural deficiencies identified in Issues 2 through 5, the de-publication order fails this substantive test.

49.　The deposition testimony at issue consists of Plaintiff's own words describing her own experiences — her body, her workplace complaints, her interactions with management. Plaintiff possessed this knowledge before any discovery. She reported these facts to the NLRB, the EPA, and the press years before her deposition. She pled them in her complaint in December 2023 — a public docket filing this Court relied on in ruling on Apple's motion to dismiss.

50.　The order directs de-publication of "information" without distinguishing between the deposition transcript (a discovery document) and the underlying facts (Plaintiff's independent knowledge). If Plaintiff described events in her deposition and separately described the same events in an NLRB charge, a blog post, or a public filing in this case, it is impossible to determine from the order whether the independent speech must come down.

51.　**Requested ruling:** Does the Protective Order apply to information Plaintiff knew from her own experience prior to and independent of discovery? Does the order's use of the undefined term "information" violate Seattle Times by potentially reaching independent knowledge?

## ISSUE 7: DOES APPLE'S UNILATERAL DESIGNATION SATISFY RULE 26(c)'S GOOD CAUSE REQUIREMENT?

*Standard: Contrary to law — de novo review.*

52.　Independent of the procedural defects identified in Issue 4, the de-publication order fails substantively. Rule 26(c)(1) requires "good cause shown" supported by a particularized demonstration that specific harm will result from disclosure of specific information. *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992). The burden is on the party seeking protection. *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003).

53. The order states designated information "is considered Confidential until found otherwise." This treats Apple's designation as self-proving and places the burden on Plaintiff to disprove it. No court has made an independent finding that any specific portion of Plaintiff's deposition testimony would cause Apple particularized harm.

54. **Requested ruling:** Does Apple's unilateral act of designating material as "Confidential" satisfy the good cause requirement of Rule 26(c)? Does the order improperly invert the Rule 26(c) burden by requiring Plaintiff to prove designations invalid rather than requiring Apple to prove them valid?

## ISSUE 8: WAS THE SEALING DIRECTIVE ISSUED WITHOUT THE FINDINGS REQUIRED BY KAMAKANA?

*Standard: Contrary to law — de novo review.*

55. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), requires particularized findings before court records may be sealed. N.D. Cal. Civil L.R. 79-5(c) provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." The court ordered the parties to "meet and confer regarding a stipulation to seal" public docket entries and stated it would be "inclined to grant" sealing. This pre-decides a sealing question without any Kamakana analysis — no findings, no weighing of public access, no consideration of alternatives — and on a basis the Local Rules expressly say is insufficient.

56. **Requested ruling:** Does the sealing directive satisfy Kamakana? Can a court pre-announce an inclination to seal before any motion is filed, any showing is made, or any findings are entered?

## ISSUE 9: DID THE COURT ADDRESS THE PROPERLY RAISED JURISDICTIONAL AND LEGAL BARS?

*Standard: Contrary to law — de novo review. Jurisdictional questions receive no deference.*

57. Plaintiff raised three independent jurisdictional bars and one legal bar on enforceability in her February 20, 2026 filings (Dkt. 284, 285) and throughout this litigation. The March 30 orders do not address any of them.

58. **(a) Garmon preemption.** Plaintiff's speech about workplace conditions is arguably protected under NLRA §§ 7 and 8. Three NLRB charges are docketed (32-CA-381277 and two related charges) alleging Apple's designations are unlawful work rules. Under *San Diego Building Trades Council v.*

*Garmon,* 359 U.S. 236, 245 (1959), when activity is "arguably subject to § 7 or § 8," federal courts must defer to the NLRB's exclusive competence. The court cannot adjudicate whether Plaintiff's speech about Apple's workplace studies violates the protective order without deciding whether it is protected concerted activity — which is the NLRB's province.

59.    (b) Bankruptcy automatic stay. Plaintiff is a Chapter 7 debtor (Case No. 25-11496, D. Mass.). The automatic stay under 11 U.S.C. § 362(a) bars "the commencement or continuation of a judicial action or proceeding against the debtor." The de-publication order at Dkt. 326 — compelling a debtor to remove published speech under threat of contempt — operates as an enforcement proceeding against the debtor's interests. Plaintiff does not contend that the stay bars all case management in this action, but an order compelling affirmative conduct by the debtor under threat of contempt is distinguishable from ordinary pretrial administration. Apple has actual knowledge of the bankruptcy, retained bankruptcy counsel, and never sought stay relief. Actions taken in violation of the stay are void in the Ninth Circuit. *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 571-72 (9th Cir. 1992). Plaintiff raises this issue to preserve it and requests that this Court address whether the stay applies to the de-publication and sealing directives.

60.    **(c) Norris-LaGuardia Act — the injunctions are void.** 29 U.S.C. § 101 provides that "[n]o court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute." This is not a defense or an affirmative bar — it is a jurisdictional strip. An injunction issued without Norris-LaGuardia jurisdiction is void, not merely voidable. Section 104(e) specifically protects "giving publicity to the existence of, or the facts involved in, any labor dispute." The de-publication and gag orders compel removal of publicity about a labor dispute.

61.    This is a labor dispute. Plaintiff was terminated by her employer. She filed NLRB charges alleging retaliation for workplace speech. Three charges are pending (32-CA-381277 and two related charges). The dispute is the subject of a national NLRB settlement (Case No. 32-CA-284428). Plaintiff's claims sound in retaliation for protected workplace activity under federal and state labor law.

62.    Under 29 U.S.C. § 107, no injunction may issue in a labor dispute unless the court: (1) holds a hearing with witnesses subject to cross-examination; (2) finds that unlawful acts have been threatened and will be committed unless restrained; (3) finds that substantial and irreparable injury to the complainant's property will follow; (4) finds that greater injury will be inflicted on the complainant by

denial of relief than on the defendant by granting it; and (5) finds that the complainant has no adequate remedy at law. The Magistrate Judge held no hearing, called no witnesses, made no findings on any of the five statutory requirements, reviewed no evidence, and expressly admitted she had not reviewed Plaintiff's 68 pages of exhibits. (Dkt. 327 at 6 n.5). The injunctions are void under the Act. This is not a discretionary question — a federal court lacks jurisdiction to issue them.

63.     **(d) The NLRB settlement.** Unlike the three jurisdictional bars above, this is a legal bar on the enforceability of the specific restrictions Apple seeks. Apple entered a national settlement with the NLRB in April 2025 (Case No. 32-CA-284428; settlement filed at Dkt. 194 in this action) in which it agreed it "will not enforce the definition of Proprietary Information . . . to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act." The settlement required Apple to post a notice stating: "YOU HAVE THE RIGHT to discuss wages, hours and working conditions and WE WILL NOT do anything to interfere with your exercise of that right" and "WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information." Apple is now using the Protective Order to reimpose the same category of restriction it agreed with the federal government to withdraw. A court should not enforce through a protective order confidentiality restrictions that a binding federal settlement agreement requires the designating party to rescind. Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525-26 (1986).

64.     Each of these was raised in writing, with legal authority, in filings before the Magistrate Judge. None was addressed in any of the three March 30 orders.

65.     **Requested ruling:** (a) Does Garmon preemption divest this court of jurisdiction to adjudicate whether Plaintiff's speech violates the protective order while NLRB charges are pending? (b) Does the bankruptcy automatic stay bar enforcement proceedings against the debtor without stay relief? (c) Does the Norris-LaGuardia Act strip jurisdiction over the de-publication order? (d) Does the NLRB settlement preclude Apple from using the Protective Order to enforce confidentiality restrictions it agreed to withdraw?

## ISSUE 10: DOES THE UNDISPUTED RECORD SHOW THE PROTECTIVE ORDER WAS OBTAINED FOR ONE PURPOSE AND USED EXCLUSIVELY FOR ANOTHER?

*Standard: Contrary to law — de novo review.*

66.    This issue does not require findings about Apple's subjective intent. The following facts are undisputed and documented in the record:

67.    Apple represented to the court that it needed the Protective Order to produce the Gobbler informed consent form for deposition authentication. (July 2, 2025 Tr. at 10:17-11:11). Apple never produced the document under the order. Apple never designated a single produced document as confidential. Apple confirmed this on February 6, 2026: "All documents used in the deposition were produced either by Apple or by you. None was designated confidential." (Dkt. 302 at 3). When Plaintiff moved to compel production of the Gobbler document, Apple produced it without invoking the Protective Order. (Dkt. 270 at 1).

68.    The order's sole operational use has been designating Plaintiff's deposition testimony about Apple's workplace studies involving menstruation and ovulation. This was the use Plaintiff warned about before the order was entered: "their attempt to do a summary judgment motion without summary judgment" (July 2, 2025 Tr. at 6:22-24), and the use the Magistrate Judge herself identified as improper: "That's not — that's not how the protective order is used." (July 2, 2025 Tr. at 7:12-13).

69.    Apple's own enforcement filing connects the designations to its termination defense: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." (Dkt. 280, fn. 2). A protective order is a shield for legitimate confidentiality interests, not a sword for litigation advantage. See Foltz, 331 F.3d at 1130 ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted"). Where the sole use of the order is to designate testimony that supports the designating party's merits position, the order is being used to adjudicate the central question — whether Plaintiff's speech was wrongful or protected — outside the summary judgment process this Court has established.

70.    **Requested ruling:** Does the record establish that Apple obtained the Protective Order for one stated purpose and used it exclusively for another? Does enforcing Apple's designations risk adjudicating the central merits question outside of summary judgment?

## ISSUE 11: WAS THE UNDERLYING PROTECTIVE ORDER VOLUNTARILY STIPULATED?

*Standard: Contrary to law — de novo review. Question of first impression.*

71.     All three March 30 orders derive authority from the "stipulated protective order" at Dkt. 235. The record reflects that the outcome was predetermined long before Plaintiff signed. On March 11, 2025, the Magistrate Judge announced she was "inclined to adopt the model order for standard litigation" if the parties could not agree. (Dkt. 181 at 2). At the July 2, 2025 hearing, the court directed Plaintiff to sign the model template, stating "all of the district judges and magistrate judges in the Northern District got together and agreed on that Model Order"; "we expect people to use it"; "can you sign it as soon as possible?" (Dkt. 230; July 2, 2025 Tr. at 4:1-17:25). The court never required Apple to file a formal motion or make a particularized good cause showing.

72.     Plaintiff did not consent. She filed a Motion to Quash (Dkt. 211, May 13, 2025), raising Garmon preemption, NLRA violations, First Amendment concerns, and the gag order risk. Judge Chen denied it the next day (Dkt. 213). She sought emergency relief from the Ninth Circuit (Case No. 25-2028, Dkt. 22), which dismissed for lack of jurisdiction. She filed NLRB charges. She objected in writing, on the record, and in every available forum. (Dkt. 220 at 4-5, documenting Plaintiff's authorization was given "under coercion and duress" and "under protest and subject to extensive legal objections"). A signature obtained after the court announced it would impose the order regardless, over documented objections filed in three forums, is not a stipulation. There is no contract.

73.     An order procured through this process is not a voluntary stipulation. Whether a compelled signature on a judge-authored template satisfies Rule 26(c)'s good cause requirement has not been addressed by the Ninth Circuit. Plaintiff raises this issue to preserve it for appellate review and does not ask this Court to resolve the question of first impression in these objections.

74.     **Requested ruling:** Does this Court adopt the premise that the Protective Order was voluntarily stipulated? If so, on what record basis? Plaintiff preserves the objection that it was not.

### ISSUE 12: HAS THE COURT ADDRESSED PLAINTIFF'S PENDING OBJECTIONS TO THE PROTECTIVE ORDER, INCLUDING HER MOTION TO QUASH, NINTH CIRCUIT APPEAL, AND NLRB CHARGES?

*Standard: Contrary to law — de novo review. Preservation issue.*

Plaintiff has never consented to the Protective Order. She has challenged it through every available procedural mechanism:

• Motion to Quash (Dkt. 211, May 13, 2025), raising Garmon preemption, NLRA violations, First

Amendment concerns, and the risk that the order would be used as a gag order. Denied the next day by Judge Chen (Dkt. 213).

- Emergency relief sought from the Ninth Circuit (Case No. 25-2028, Dkt. 22, May 14, 2025). Dismissed for lack of jurisdiction.

- Motion for Reconsideration to the Ninth Circuit (25-2028, Dkt. 33, June 3, 2025).

- NLRB charges alleging Apple's use of the Protective Order and confidentiality designations constitute unfair labor practices.

- Written objections stating authorization was given "under coercion and duress" and "under protest and subject to extensive legal objections." (Dkt. 220 at 4-5).

75.    None of these challenges has been resolved on the merits. The Motion to Quash was denied on procedural grounds (Dkt. 213). The Ninth Circuit dismissed for lack of jurisdiction, not on the merits. No court has addressed Plaintiff's substantive arguments that the Protective Order violates Garmon preemption, the First Amendment, or the NLRA. A party's constitutional objections to a court order must eventually be resolved on the merits; procedural deferrals that leave the objections permanently unaddressed while the order remains enforceable deny due process. See *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

76.    Plaintiff's constitutional rights have been repeatedly violated through the enforcement of an order she has objected to since before it was entered. She warned that it would be used as a gag order. It has been. She warned that Apple would use designations to suppress testimony about publicly known workplace conditions. It has. The uses of the order that Plaintiff identified in her pre-entry objections have occurred. The order should be revoked, or at minimum, Plaintiff's pending challenges should be resolved on the merits before the order is enforced to compel deletion of speech, seal the public record, and restrict Plaintiff's ability to present her case at summary judgment.

77.    **Requested ruling:** (a) Has any court resolved Plaintiff's substantive challenges to the Protective Order on the merits? (b) Should this Court revoke or modify the Protective Order in light of its demonstrated use to suppress speech about publicly known workplace conditions? (c) Plaintiff preserves her objection that the Protective Order was entered in violation of her constitutional rights and renews her request for its revocation.

### ISSUE 13: ARE THE PROTECTIVE ORDER'S OWN EXCLUSIONS FOR PUBLIC AND PREVIOUSLY KNOWN INFORMATION ENFORCEABLE?

*Standard: Contrary to law — de novo review.*

78.    Protective Order § 3 excludes from its coverage: (a) "any information that is or becomes publicly known through no fault of the receiving party"; and (b) "any information known to the receiving party prior to the disclosure." These exclusions are part of the order's text. They are self-executing: if information falls within either exclusion, the order's restrictions do not apply, and no designation of that information is valid.

79.    The Magistrate Judge's March 30 orders treat all information Apple designated as Confidential regardless of whether it falls within the Section 3 exclusions. The order states designated information "is considered Confidential until found otherwise" and directs Plaintiff to comply with Section 6's challenge procedure. But Section 6 is the process for challenging designations of material that is properly within the order's scope. Section 3's exclusions define what is outside the order's scope in the first place. A party does not "challenge" information that was never covered.

80.    Every item Apple designated falls within at least one of the Section 3 exclusions. The designated subject matter — Apple's employee studies involving menstruation, ovulation, and cervical mucus — has been in the public domain since 2021 through NLRB filings, complaints on this docket, this Court's published orders, a peer-reviewed journal article, the federal ClinicalTrials.gov registry, a GAO report, and international press coverage. (Dkt. 321, 197-page Request for Judicial Notice). The information was also known to Plaintiff prior to discovery because it consists of her own experiences during employment. These are not close cases — the subject matter was pled in the original complaint that this Court relied on in ruling on Apple's motion to dismiss.

81.    By ordering de-publication, sealing, and treatment as Confidential without addressing Section 3, the Magistrate Judge implicitly held that the Protective Order's own exclusions are not enforceable — that the text of Section 3 is surplusage. A court order, like a contract, must be interpreted to give effect to all its provisions; no clause should be rendered meaningless. See United States v. Gonzales, 520 U.S. 1, 5 (1997) (courts should give effect to every word rather than treating terms as surplusage). If Section 3 means what it says, the designated information was never covered by the order. If it does not, this Court should say so, because that is a ruling Plaintiff can appeal.

82.    **Requested ruling:** (a) Are the Section 3 exclusions in the Protective Order enforceable? (b) If yes, has any court determined that the designated information falls outside those exclusions? (c) If the

designated information is publicly known and was known to Plaintiff prior to discovery, can it be the subject of a valid confidentiality designation under the Protective Order's own terms?

### ISSUE 14: DO THE UNRESOLVED DESIGNATIONS FORCE PLAINTIFF TO CHOOSE BETWEEN PERJURY AND CONTEMPT WHEN FILING HER SUMMARY JUDGMENT MOTION?

*Standard: Contrary to law — de novo review. Due process.*

83.     This issue arises from the interaction of Dkt. 326, Dkt. 329, and the unresolved 26(g) motion, as applied to Plaintiff's summary judgment filing. Plaintiff's summary judgment motion will necessarily discuss the designated testimony — the testimony is central to the case. Under the current framework, Plaintiff must file the motion under seal because it references information the court has ordered treated as Confidential. Under N.D. Cal. Civil L.R. 79-5(b), a party seeking to file under seal must submit a declaration establishing that the material is "sealable" within the meaning of the rule. Under Kamakana, the party must demonstrate particularized good cause.

84.     Plaintiff's position — the entire basis of the pending 26(g) motion — is that the designations are invalid and no good cause exists. She cannot in good faith submit a declaration stating that the designated material should be sealed when her pending motion argues precisely the opposite. But under the March 30 orders, she must treat the material as Confidential or face contempt.

85.     The problem is not limited to the existing designations challenged in the 26(g) motion. The court has ordered four more hours of deposition by April 8 (Dkt. 327) and Plaintiff has scheduled a deposition of the Gobbler study manager. Under the March 30 framework, Apple can designate any testimony from these depositions as Confidential, the gag order attaches automatically, and there is no resolution mechanism before summary judgment. Apple's categorical position is that all user study information is confidential. Every hour of court-ordered testimony potentially expands the universe of material Plaintiff must file under seal with a declaration she believes is false. The court is simultaneously ordering Plaintiff to generate more testimony and providing no mechanism to resolve the designation disputes that testimony will create before the dispositive filing deadline.

86.     The court has placed Plaintiff in a position where she must either: (a) file under seal with a supporting declaration she believes is false, which implicates Rule 11 and her obligations as an officer of the court; or (b) file publicly in accordance with her good-faith legal position that the designations are

invalid, and risk contempt for violating the order. A framework that forces a party to choose between a declaration she believes is false and contempt of court is a denial of due process. The solution is to resolve the 26(g) motion before Plaintiff must file her summary judgment motion.

87.    **Requested ruling:** (a) Must the 26(g) motion be resolved before Plaintiff is required to file a summary judgment motion that necessarily references the designated material? (b) If the designations remain unresolved, how should Plaintiff file her summary judgment motion without submitting a sealing declaration she believes is false and without risking contempt for filing publicly?

## ISSUE 15: DO THE ORDERS VIOLATE PLAINTIFF'S CALIFORNIA CONSTITUTIONAL RIGHT TO PROTEST INVASIONS OF PRIVACY?

### Standard: Contrary to law — de novo review. Cal. Const. art. I, § 1.

88.    The California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1. This is a self-executing provision. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 15-16 (1994).

89.    Plaintiff's claims in this action include Tameny claims for termination in violation of public policy — specifically, retaliation for protesting invasions of privacy. (Dkt. 142 ¶¶ 280-312). Plaintiff alleges she was terminated for objecting to Apple's collection of intimate biometric and reproductive health data from employees. The protected activity at the core of this case *is speech protesting invasions of privacy*. The gag order and de-publication directive prohibit Plaintiff from engaging in the very activity that forms the basis of her claims.

90.    California's constitutional privacy right is broader than the federal right and includes informational privacy — the right to control disclosure of personal information, particularly medical and reproductive information. *Heller v. Norcal Mutual Ins. Co.*, 8 Cal. 4th 30, 43 (1994). The designated testimony concerns Plaintiff's own menstruation, ovulation, and cervical mucus — among the most intimate categories of personal health information. An order compelling a woman to remove her own public statements about her reproductive health, and prohibiting her from making future statements, implicates the core of California's privacy guarantee. The order does not protect privacy — it suppresses the protest of privacy violations.

91.    Because the Tameny claims arise under California law and this Court exercises diversity

jurisdiction, California constitutional protections apply to the adjudication of Plaintiff's state-law claims. A court order that prohibits the very speech the state constitution protects as a basis for a wrongful termination claim is contrary to the public policy the claim vindicates.

92.    Requested ruling: (a) Does the gag order prohibit speech that constitutes protected activity under Plaintiff's Tameny claims? (b) Can a court enforce a speech restriction that suppresses the conduct forming the basis of the plaintiff's wrongful termination claim? (c) Does California's constitutional right to privacy protect Plaintiff's right to speak publicly about invasions of her own reproductive and medical privacy?

### ISSUE 16: DOES THE PRECEDENT CREATED BY THESE ORDERS IMPLICATE CONSTITUTIONAL PROTECTIONS FOR SPEECH ABOUT REPRODUCTIVE HEALTH AND INTIMATE SEXUAL CONDUCT?

*Standard: Contrary to law — de novo review. First Amendment; substantive due process.*

93.    This issue does not ask the Court to resolve a constitutional question in the abstract. It asks the Court to consider what rule of law its order establishes before entering it.

94.    If the March 30 orders stand, they establish the following precedent: a private employer can obtain a court order — without filing a motion, without a hearing, without findings — prohibiting a female employee of reproductive age from speaking publicly about menstruation, ovulation, cervical mucus, her sexual partners, and related topics. The order compels the employee to delete what she has already published. It does so based solely on the employer's unilateral designation, without any judicial determination that the information is actually confidential, and despite the fact that the information is publicly known, has been the subject of federal agency proceedings, and appears in peer-reviewed scientific literature.

95.    The constitutional concerns are not hypothetical. The designated testimony concerns Plaintiff's own body, her reproductive functions, and her intimate sexual conduct. Apple's workplace study asked employees to track and report menstrual cycles, ovulation, cervical mucus, and sexual activity with partners. The de-publication order requires Plaintiff to remove her public speech about these subjects. The gag order prohibits future speech about them. The sealing directive removes from public view court filings that discuss them. The combined effect is that a woman's speech about her own reproductive health and sexual life is suppressed at every level — past, present, and future — at the direction of her former

employer.

96.    The Supreme Court has recognized that the Constitution protects a zone of privacy surrounding intimate and sexual life from government intrusion. *Lawrence v. Texas*, 539 U.S. 558, 562, 578 (2003) (the State "cannot demean [individuals'] existence or control their destiny by making their private sexual conduct a crime"; liberty protects "the most private human conduct, sexual behavior, and in the most private of places, the home"). *See also Griswold v. Connecticut*, 381 U.S. 479, 485-86 (1965) (recognizing zones of privacy around intimate decisions); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992) (liberty interest in "intimate and personal choices" central to "personal dignity and autonomy"). While *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), altered the landscape of reproductive rights, it did not disturb the First Amendment's protection of speech about reproductive health or sexual conduct, nor did it authorize courts to issue gag orders suppressing women's public discussion of their own bodies at the request of their employers.

97.    If the government may not criminalize private sexual conduct because of the dignity interests at stake, *Lawrence*, 539 U.S. at 578, it follows that a court should not — at a private employer's request — order a woman to delete her own public statements about her sexual partners, her menstrual cycle, and her reproductive health, and prohibit her from speaking about those subjects in the future. The order does not protect privacy. It inverts it: the employer that collected this intimate information from its employees now uses the court to prevent the employee from speaking about the collection.

98.    The Court should consider whether the rule it is creating — that an employer's unilateral confidentiality designation can silence an employee's speech about her own reproductive health and sexual life, enforced through contempt — is a rule it intends to establish as precedent in this District.

99.    Requested ruling: (a) Before entering the de-publication and gag orders, has the Court considered the precedential effect of authorizing employer-initiated speech restrictions on an employee's public discussion of her own reproductive health and intimate sexual conduct? (b) Does the constitutional protection of intimate and sexual privacy recognized in *Lawrence* and *Griswold* require heightened scrutiny before a court enforces speech restrictions targeting these subjects? (c) Should the Court require Apple to demonstrate that its interest in confidentiality outweighs the constitutional concerns before enforcing restrictions on speech about menstruation, ovulation, cervical mucus, and sexual partners?

# CERTIFICATION FOR INTERLOCUTORY APPEAL

100.    If this Court declines to set aside the de-publication directive, gag order, and sealing directives, Plaintiff respectfully requests certification for interlocutory appeal under 28 U.S.C. § 1292(b) and preserves her right to seek appellate relief through mandamus or other extraordinary writ.

101.    **Prior restraints on speech are subject to immediate appellate review.** This is not a discretionary question. The Supreme Court has held repeatedly that orders restricting speech cannot await ordinary appellate processes because the harm is irreparable and accrues with every passing day. *National Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43, 44 (1977) (per curiam) (state court's failure to provide "immediate appellate review" of an injunction restricting speech was itself a constitutional violation — the Court reversed on that basis alone). *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (prior restraints carry a "heavy presumption" against constitutional validity and demand immediate judicial scrutiny). *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (vacating prior restraint because "each passing day may constitute a separate and cognizable infringement of the First Amendment"). *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

102.    The de-publication and gag orders are prior restraints. They compel deletion of published speech and prohibit future speech about subjects defined by the opposing party's unilateral designations. They have been in effect since March 30, 2026 — and the Protective Order's interpretation they enforce has effectively restricted Plaintiff's speech since December 16, 2025. Every day these orders remain in force constitutes a separate First Amendment injury that cannot be undone. Speech that is chilled is not spoken. Speech that is deleted may not be recoverable. The harm is categorically irreparable and demands immediate review.

103.    **Certification under § 1292(b) is independently warranted.** Section 1292(b) permits certification when an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). All three requirements are met. *Controlling question of law.* The orders raise multiple controlling legal questions that no court has resolved on the merits: whether a magistrate judge may issue

sua sponte injunctive speech restrictions without a pending motion and without statutory authority under § 636(b)(1)(A); whether the Norris-LaGuardia Act strips jurisdiction over speech injunctions arising from a labor dispute when none of the § 107 requirements have been satisfied; whether a protective order's own exclusions for publicly known information are enforceable against the designating party; and whether confidentiality designations that are unsigned, untimely, and uncured under Rule 26(g) can serve as the basis for de-publication, gag, and sealing orders. Each of these, if resolved in Plaintiff's favor, would eliminate the speech restrictions entirely.

104.    *Substantial ground for difference of opinion.* The Magistrate Judge's own conduct demonstrates the ground for disagreement. On February 20, 2026, she stated there was "no injunction" and that she would need to review evidence and identify specific content before any takedown could issue. On March 30, she issued a blanket de-publication order without reviewing evidence or identifying specific content. This Court at Dkt. 303 characterized the February 20 conference as non-controversial. The question of whether the March 30 orders constitute prior restraints subject to constitutional scrutiny, or routine protective order enforcement subject to deference, is precisely the type of legal question on which reasonable jurists disagree.

# RELIEF REQUESTED

105.    These objections are timely. The order at Dkt. 326 was issued March 30, 2026. Rule 72(a) allows objections within 14 days. This filing is submitted within that period. Plaintiff respectfully requests that this Court rule on each of the sixteen numbered issues above, and:

- 1. Set aside the sua sponte de-publication directive, gag order, and sealing directives in Dkt. 326. The Magistrate Judge denied the only pending motion (Dkt. 294). All relief ordered thereafter was sua sponte, without a motion, without notice, without findings, and without statutory authority;
- 2. Order resolution of the pending Rule 26(g) motion (Dkt. 302) before any enforcement of confidentiality designations, and before Plaintiff is required to file her summary judgment motion. If the Magistrate Judge will not hear it, this Court should resolve it directly or order her to do so by a date certain;
- 3. Rule on the jurisdictional bars: Garmon preemption, the bankruptcy automatic stay, the Norris-LaGuardia Act, and the NLRB settlement;
- 4. Rule on whether the Protective Order's Section 3 exclusions for public and previously known information are enforceable;
- 5. Revoke or modify the Protective Order, or resolve Plaintiff's pending challenges on the merits, in light of its demonstrated use to suppress publicly known speech in a whistleblower case;

- 6. Establish an emergency escalation process for designation disputes arising from the court-ordered depositions, so that challenges can be resolved before summary judgment;
- 7. Clarify how Plaintiff should file her summary judgment motion without submitting a sealing declaration she believes is false and without risking contempt for filing publicly;
- 8. Rule on whether the gag order and de-publication directive violate Plaintiff's California constitutional right to protest invasions of privacy, and whether the precedent created by these orders — authorizing employer-initiated speech restrictions on an employee's public discussion of her own reproductive health and intimate sexual conduct — is consistent with constitutional protections recognized in *Lawrence*, *Griswold*, and *Hill*;"
- 9. If the Court declines to set aside the de-publication directive, gag order, and sealing directives, certify this Court's ruling on these objections and the underlying order at Dkt. 326 for interlocutory appeal under 28 U.S.C. § 1292(b),
- 10. Grant such other relief as this Court deems just.

# CONCLUSION

106.    The de-publication and gag orders are prior restraints on speech that have been in effect since March 30, 2026, and the Protective Order interpretation they enforce has restricted Plaintiff's speech since December 16, 2025. Speech restrictions constitute irreparable harm per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The harm accrues daily and cannot be remedied after final judgment.

107.    The solutions are straightforward. The Protective Order's own Section 3 excludes publicly known information and information the receiving party already knew. Everything Apple designated falls within these exclusions. If this Court enforces Section 3, there is nothing to de-publish, nothing to seal, no gag order to enforce, and no Hobson's choice at summary judgment. If Section 3 does not resolve the matter, the 26(g) motion at Dkt. 302 does — the designations are unsigned, untimely, and uncured, and Rule 26(g)(2) says "must strike." None of this requires new law. It requires applying the Protective Order's own text and the Federal Rules to the record.

108.    If the orders are not set aside, the consequences extend beyond speech. Plaintiff must file summary judgment by April 27 under a framework that forces her to choose between a false sealing declaration and contempt. She is a Chapter 7 debtor who has been without income since late 2021, without permanent housing, and without medical treatment for months. This Court has indicated that preliminary injunctive relief may be available at the summary judgment stage. Every day the speech restrictions and unresolved discovery disputes persist is another day Plaintiff is denied access to the remedy this Court's own framework contemplates.

Respectfully submitted,

/s/ Ashley M. Gjovik
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 31 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816