JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>           Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>           Defendant. | Case No. 23-cv-4597-EMC<br><br>**DECLARATION OF JESSICA R. PERRY IN SUPPORT OF DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF, PURSUANT TO CIVIL LOCAL RULES 6-3 AND 7-11, TO EXTEND THE DISCOVERY CUT-OFF DEADLINE**<br><br>Judge:  Honorable Edward M. Chen<br>Dept:   Courtroom 5, 17th Floor |

I, Jessica R. Perry, declare as follows:

1. I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for defendant Apple Inc. in this action. I submit this declaration in support of Apple's Motion for Administrative Relief to Extend the Discovery Cut-Off Deadline. I have personal knowledge as to the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2. On April 11, 2024, Plaintiff served an expert witness list identifying five treating medical providers related to her dismissed claims alleging chemical exposure in her apartment.

3. On July 9, 2024, Plaintiff served her Initial Disclosure identifying at least twelve treating medical providers with treatment ranging from 2015 to 2023.

4. On September 17, 2024, Plaintiff amended her initial disclosures and again included at least twelve treating medical providers with treatment ranging from 2015 to 2023.

5. On February 26, 2026, Plaintiff amended her initial disclosures and identified at least fourteen treating medical providers with treatment ranging from 2015 to 2025 and two purported chemical exposure doctors.

6. Apple served Plaintiff with Interrogatories, Set One on March 26, 2025 seeking the identity of medical providers for treatment listed in her Initial Disclosures and those who provided treatment for injuries Plaintiff alleges were caused by retaliatory treatment by Apple. A true and correct copy of relevant excerpts of Plaintiff's April 25, 2025 response to Apple's Interrogatories, Set One is attached as **Exhibit A**.

7. Apple served Interrogatories, Set Two on Plaintiff on April 17, 2025 seeking information related to her medical treatment, including for her alleged physical, mental, or emotional injuries. A true and correct copy of excerpts of Plaintiff's response to Apple's Interrogatories, Set Two is attached as **Exhibit B**.

8. A true and correct copy of excerpts of Apple's Request for Production of Documents, Set One, served March 26, 2025 seeking documents regarding physical, mental, or emotional conditions she alleges was caused by Apple, is attached as **Exhibit C**.

9. A true and correct copy of excerpts of Plaintiff's Response to Apple's Request for

- 1 -

PERRY DECL. ISO DEF.'S ADMIN. MOT. TO
EXTEND DISCOVERY CUT-OFF DEADLINE
[23-CV-4597-EMC]

Production of Documents, Set One, served April 25, 2025, is attached as **Exhibit D**. To date, Plaintiff has produced very limited medical records (consisting of about 20 documents containing some bills and lab results totaling approximately 34 pages) and has not produced any records from many of the providers she identified in her disclosures despite having direct access to her own medical records.

10. In January 2026, Apple initiated meet and confer with Plaintiff about obtaining an authorization to attach to subpoenas for her medical record to ensure their timely production. When those negotiations reached an impasse, Apple promptly filed a discovery letter brief with Judge Westmore that resulted in Judge Westmore issuing an order on February 23, 2026, directing the parties to further meet and confer. The order also directed Apple to issue the subpoenas if an agreement could not be reached with the understanding that a motion to compel compliance with the subpoenas may be necessary, which Judge Westmore indicated she was inclined to grant.

11. A true and correct copy of meet and confer efforts between the parties regarding a medical authorization for Plaintiff's medical records following Judge Westmore's February 23, 2026 Order is attached as **Exhibit E**. The parties then spent over two weeks exchanging multiple rounds of proposals and counter-proposals regarding a potential authorization until negotiations reached an impasse on March 12, 2026, in part, because Plaintiff insisted on limiting the scope of the records and Apple's ability to use the records, among other requirements, that went far beyond simply authorizing the providers to produce her records. Plaintiff's revisions included limiting the scope of the records sought and imposing onerous limitations on Apple's ability to use the records in its defense of this action.

12. After reaching an impasse, on March 13, 2026, Apple proceeded pursuant to the February 23 Order and began subpoenaing Plaintiff's medical providers. The subpoenas were directed to physicians and mental health providers who treated Plaintiff for the physical, mental, and emotional conditions at issue. Each of the 14 subpoenas served sought the same categories of medical records the Court previously indicated it was inclined to permit discovery of, including treatment records, psychotherapy notes, and billing records from 2015 to the present. A true and correct copy of a representative subpoena is attached as **Exhibit F**.

PERRY DECL. ISO DEF.'S ADMIN. MOT. TO EXTEND DISCOVERY CUT-OFF DEADLINE
[23-CV-4597-EMC]

13.    Since the subpoenas were served, at least three of the medical providers have indicated they will not produce subpoenaed records absent a court order. A true and correct copy of a response from The Clinic is attached as **Exhibit G**. A true and correct copy of the response from AC Wellness is attached as **Exhibit H**. A true and correct copy of the response from Dr. Emily Hugo, including Plaintiff sending her own version of the authorization to Dr. Hugo, is attached as **Exhibit I**. Other medical providers have not yet provided records in response to the validly served subpoenas. Only one provider has complied with the subpoena and produced records.

14.    Plaintiff has previously suggested she would undergo an independent medical examination, and Defendant has retained an Independent Medical Examiner who needs to review the medical records before conducting the examination.

15.    On April 6, 2026, I contacted Plaintiff to request she stipulate to extend the fact discovery deadlines related to medical records and expert discovery. A true and correct copy of my meet and confer efforts with Plaintiff is attached as **Exhibit J**.

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed April 7, 2026, in Menlo Park, California.

_/s/ Jessica R. Perry_
Jessica R. Perry

PERRY DECL. ISO DEF.'S ADMIN. MOT. TO
EXTEND DISCOVERY CUT-OFF DEADLINE
[23-CV-4597-EMC]

# EXHIBIT A

**Ashley M. Gjovik, JD**
*In Propria Persona*
April 25 2025.
legal@ashleygjovik.com

# United States District Court

# Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik,** *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br><br> **Apple Inc.,** *a corporation*, <br><br> Defendant. | **Plaintiff's Response to Defendant's Request for Interrogatories** <br> **Set No. One (March 27 2025)** <br><br> **U.S. District Court Case No.:** <br> • *Gjovik v. Apple,* 3:23-CV-04597-EMC <br><br> **Related Cases:** <br> • **U.S. Court of Appeals for the Ninth Circuit:** 25-2028; 24-6058 <br> • **U.S. NLRB Case. No.'s**: 32-CA-282142; 32-CA-283161; 32-CA-284428; 32-CA-284441 <br> • **U.S. Dept. of Labor ARB Case No.**'s: 2024-0060; 2024-CER-00001. <br> • **U.S. EPA & California EPA BAAQMD** enforcement actions |

# PLAINTIFF'S RESPONSES TO DEFENDANT APPLE INC.'S SPECIAL INTERROGATORIES, SET ONE

1.    Plaintiff Ashley Gjovik, appearing *pro se,* hereby responds to Defendant Apple Inc.'s Special Interrogatories, Set One, (served March 27 2025), as follows:

## A. INTERROGATORY No. 1: IDENTIFY ALL MEDICAL PROVIDERS THAT YOU HAVE CONSULTED WITH SINCE FEBRUARY 23, 2015.

**Response to Interrogatory No. 1:**

1.    Defendant already has much of this information. Apple knows that Plaintiff's primary care medical provider from 2015-2020 was, *Apple*. Then, in 2020, Plaintiff transferred to One Medical as her primary care provider from 2020-2022, which Apple also knows, as Apple requested all of her medical records from One Medical around Sept. 1 2021 through an ADA accommodation request process, despite already planning to terminate her employment.

2.    In addition, despite Plaintiff's protests, in summer of 2021, her medical information was provided by Sedgwick directly to Apple's HR teams, including the Employee Relations team, who was emailing about Plaintiff's *mammogram* results, after Apple already admittedly began preparing to be sued by Plaintiff, but prior to notifying Plaintiff she was out of favor at the company.

3.    The plaintiff further objects to this interrogatory on the grounds that it is overly broad, not proportional to the needs of the case, and seeks information not relevant to any claim or defense presently at issue. Plaintiff is not actively asserting a claim for physical injury or toxic exposure in this proceeding, and such claims are currently the subject of a pending interlocutory appeal. Discovery into Plaintiff's general medical history is not warranted and invades Plaintiff's privacy.

4.    Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, not relevant to any claim or defense in this action, and not proportional to the needs of the case. Defendant has not asserted any valid or factually supported defense that would justify inquiry into Plaintiff's medical or mental health history. Plaintiff further objects to the extent the interrogatory seeks confidential health information unrelated to the claims at issue and protected under federal and state privacy laws. Subject to and without waiving the foregoing objections, the Plaintiff states that no such information is relevant or discoverable at this time but is willing to meet and confer with the Defendant on the matter.

## B. Interrogatory No. 2: Identify all medical providers that you have seen for any treatment for any injury you attribute to Defendant regarding Counts I–IV.

**Response to Interrogatory No. 2:**

5.    Plaintiff objects to this interrogatory to the extent it seeks disclosure of medical or mental health providers beyond the scope of relevant discovery, and to the extent it invades Plaintiff's psychotherapist–patient privilege and rights under federal and state privacy laws.

6.    Subject to these objections, Plaintiff will identify treating providers beginning in September 2021 in relation to emotional distress stemming from the alleged wrongful termination through production served concurrently with, or soon following, these responses, including billing records and appointment documentation from those sessions.

7.    Further, dozens of doctors were already named and identified in Plaintiff's initial disclosures, initially sent over a year ago, and the Defendant was already served with that information.

8.    The plaintiff does not seek damages for treatment costs beyond what

is reflected in those records and strongly objects to any attempt by the Defendant to subpoena privileged therapy records or compel testimony from healthcare providers.

9.    Plaintiff objects to this interrogatory to the extent it seeks information that is not relevant to the claims or defenses in this action, is not proportional to the needs of the case, and invades Plaintiff's right to medical and mental health privacy. The plaintiff specifically objects to any request for medical or mental health records or information dated prior to 2020, which are wholly unrelated to the claims at issue.

10.    Subject to and without waiving these objections, through document production, Plaintiff identifies mental health providers and therapy sessions beginning in or around mid- 2021, in connection with emotional distress suffered as a result of Defendant's alleged wrongful termination. The production served concurrently with these responses includes billing records and appointment documentation from those sessions. Plaintiff does not seek treatment costs as a distinct category of damages beyond what is reflected in those records. If Apple wants to raise a defense about the strength of Plaintiff's mental distress claims, Apple needs to amend its Answer, and then, if the amendment is sufficient, parties can meet and confer about Apple paying for a mental examination.

11.    Plaintiff affirms that these materials are sufficient to support her claims of emotional distress under the *Tameny* claim and any other claims that support it. The plaintiff does not believe any further discovery or testimony from her therapists or medical providers is warranted. Plaintiff expressly reserves all applicable objections to any attempt by Defendant to subpoena her health care providers or compel production of privileged records or testimony protected by the psychotherapist–patient privilege and/or federal and state privacy laws.

## C.  Interrogatory No. 3: Identify all individuals or entities for whom you have worked or currently

20.    Plaintiff objects to this interrogatory as overbroad, burdensome, and not proportional to the needs of the case. It seeks private and potentially pseudonymous information, which is not relevant to the issues at hand. Plaintiff is producing all relevant public social media content and any relevant non-public or pseudoatomic messages and posts.

21.    Defendant has not articulated any basis in its Answer or Initial Disclosures to justify this request. Should Defendant wish to pursue this inquiry, Plaintiff requests a meet and confer to narrow the scope and explain the relevance, and amendment to its disclosure and Answer.

## I. CONCLUSION

22.    The Plaintiff looks forward to meeting and conferring with the Defendant on these matters in order to find a mutually acceptable resolution for each issue.

**/s/ Ashley M. Gjovik**

*Pro Se Plaintiff*

Dated: April 25, 2025

**Email**: legal@ashleygjovik.com

**Physical Address**:
Boston, Massachusetts

**Mailing Address:**

███████████████████████

**Phone**: ▮▮▮▮▮▮▮▮▮

# EXHIBIT B

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**,

*an individual*,

        Plaintiff,

        v.

**APPLE INC**,

*a corporation*,

        Defendant.

**Case No. 3:23-CV-04597-EMC**

**RESPONSE TO DEFENDANT'S INTERROGATORIES**

*(Set Two - April 17, 2025)*

**Served: May 29 2025,**

**following appellate "*Protective Pause*"**

## I.    INTRODUCTION & GENERAL OBJECTIONS

1.    Plaintiff incorporates all prior objections and procedural notices made on the record during the May 2, 2025 meet and confer (Exhibit C), April 25 2025 objections to Set One (Exhibit A), May 2 2025 Objection (Exhibit B), objections in subsequent email exchanges, and in the Notice of Protective Discovery Pause (May 7, 2025).

2.    Defendant's interrogatories Sets One and Two are overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1). The scope, temporal breadth, and level of detail sought are not proportional to the issues at stake, the amount in controversy, the parties' resources, or the importance of the discovery in resolving the claims. These interrogatories violate Fed. R. Civ. P. 26(g), which requires that discovery requests be warranted by existing law, have a good faith basis for believing relevant information will be obtained, and not be interposed for harassment or to increase litigation costs unnecessarily. Several interrogatories contain erroneous cross-references to non-existent interrogatories, demonstrating lack of care in preparation contrary to Rule 26(g) requirements.

3.    Multiple interrogatories seek information already in Defendant's possession or control, either from Defendant's provision of healthcare services to Plaintiff or from Defendant's own prior discovery efforts. Such requests violate the principle that discovery should obtain information not reasonably accessible to the requesting party. Many interrogatories lack any apparent connection to claims or defenses actually pled in this action. The Court struck Defendant's affirmative defenses for failure to state sufficient facts, and Defendant has not pled counterclaims that would support the scope of discovery sought. Certain interrogatories seek information already provided in Plaintiff's initial disclosures under Fed. R. Civ. P. 26(a)(1), constituting improper duplicative discovery.

4.    Plaintiff previously objected to Apple's broad requests for personal medical history as overly broad, invasive, not proportional to the needs of the case, and not tied to any valid defense, particularly where Apple had failed to plead or substantiate any affirmative defense requiring such disclosure. These objections are especially relevant to Interrogatories Nos. 12–17 in Set Two, which improperly seek Plaintiff's full medical and psychiatric history going back a decade without limitation or specificity. Further, Plaintiff demands a response from Apple regarding potential spoliation of evidence related to Apple Wellness Center records, per counsel's statement during the May 2 2025 Meet and Confer that she "*promises*" Apple does not her medical records despite Apple being her primary care provider from 2015-2020. (See Section III and Exhibit C).

5.    Plaintiff also objects to the Set One and Set Two interrogatories to the extent they are duplicative, overbroad, irrelevant, harassing, improperly phased, are based on dismissed defenses, and/or seek discovery on matters already disclosed in Plaintiff's Initial Disclosures served September 2024. These responses are made under protest, without waiving any objections, rights to privacy, or privilege, and with all rights reserved. Under FRCP 26(b)(1) and 33(a), Plaintiff further objects to interrogatories that infringe on privacy, seek premature analysis, and/or were raised without a Rule 26(f) discovery plan or scheduling order.  Plaintiff identified dozens of medical providers and produced medical documentation in her Initial Disclosures and reiterated this in her prior interrogatory response. Apple's current interrogatories seek to duplicate or circumvent that disclosure, including attempts to recharacterize that data for subpoena purposes.

6.    For example,, several requests seek privileged medical information spanning 10+ years for limited emotional distress damages stemming from 2021 retaliation. The temporal scope and breadth of medical information sought bears no reasonable relationship to plaintiff's claims and violates medical privacy where the burden vastly outweighs any probative value. Further objects that the scope seeks information protected by physician-patient privilege. Defendant has not pled any defense challenging medical causation of plaintiff's emotional distress damages. In employment retaliation cases, plaintiffs need not prove specific psychiatric conditions to recover emotional distress damages from wrongful termination. This interrogatory appears designed to harass plaintiff rather than support any viable defense theory.

7.    Plaintiff objects that Defendant seeks damages calculations and mitigation information without having disclosed its own damages theories, calculation methods, or categories of damages sought in its initial disclosures as required by Fed. R. Civ. P. 26(a)(1)(A)(iv). Defendant cannot seek detailed damages discovery while failing to provide reciprocal disclosure of its own damages positions, including any claimed offsets, after-acquired evidence, or mitigation theories. (See Exhibit E, Exhibit H). Further, Defendant's initial disclosures identify witnesses and documents related to plaintiff's termination and workplace complaints from 2021. None of defendant's disclosed evidence supports interrogatories seeking a decade of medical history including minor illnesses (flu, COVID) or extensive social media/employment history. These requests exceed the scope of defendant's disclosed case and lack any nexus to defendant's identified witnesses or documents. Defendant's interrogatories contradict positions taken in defendant's March 4, 2022 position statement to the Department of Labor. In that statement, defendant argued this case was limited to specific safety concerns from March 2021, that a 'six-month time gap is too attenuated

to support any inference causation,' and that termination was solely for confidentiality violations. Defendant cannot now seek discovery spanning 10 years when it previously argued even 6 months was 'too attenuated' for relevance.

8.      Plaintiff also objects to these interrogatories on the ground that they seek discovery in support of affirmative defenses that the District Court has explicitly struck from Defendant's operative Answer.  For example, In its May 19, 2025 Order, the Court dismissed Apple's Sixth and Seventh Affirmative Defenses — including *failure to mitigate damages* and *offset* — for lack of factual specificity. See Dkt. No. 215 at Section B(2). (Exhibit F). Until Apple successfully repleads these defenses with adequate factual support, it has no standing to pursue discovery tied to them.  To the extent Interrogatories 6 through 18 seek to explore Plaintiff's alleged failure to mitigate, entitlement to damages, offset of income, or personal medical history to support barred theories (e.g., workers' comp exclusivity or after-acquired evidence), they are procedurally improper and legally void under Federal Rule of Civil Procedure 26(b)(1).

9.      Plaintiff further objects that Apple has failed to seek discovery into any issues material to Plaintiff's *prima facie* claims under the Fifth Amended Complaint — including causation, pretext, or Apple's knowledge and response to protected conduct. Instead, Apple's interrogatories focus exclusively on damages, many of which are speculative or tangential (e.g., decades of medical history, social media metadata, or alleged post-employment benefits). Discovery that avoids the elements of liability while fixating on peripheral or reputational harm signals an improper purpose, particularly in a whistleblower and retaliation case, and violates both FRCP 26(g) and the proportionality mandate of Rule 26(b)(1).

10.      Plaintiff objects to the timing of these interrogatories. There is no trial date, no summary judgment schedule, and no completed Rule 16(b) order. Under typical practice — especially in employment cases — damages discovery is phased after liability issues are resolved. Apple has neither requested nor justified a deviation from that standard. Moreover, Apple declined to engage in good-faith Rule 26(f) discovery planning, has previously refused to stipulate to discovery phases, and has not demonstrated why intrusive questions about past or future income, emotional harm, or private medical records must be answered now. Plaintiff has already served Initial Disclosures compliant with Rule 26(a)(1)(A)(iii), on July 9 2024 and amended Sept. 16 2024 (Exhibit D), and Apple has had the opportunity to review those materials for more than nine months.

11.      Plaintiff also objects that Apple has disclosed an intent to subpoena all of Plaintiff's listed medical providers, as well as request a mental examination (IME) — not for diagnostic purposes, but to

interrogate Plaintiff using a full historical record. (See Exhibit C). Plaintiff has not yet consented to an IME, and reserves all rights to oppose such a request. During the May 2, 2025 meet and confer, Plaintiff explicitly objected to this approach, stating: "*This falls in that category of weird stuff that's not terribly justified… You're harassing the employee… You can do a mental exam. You guys pay for it… That seems like the best way.*" (Exhibit C, Transcript at 56:15–58:18). Despite that, Apple continues to seek sweeping disclosures with the apparent aim of retroactively justifying invasive medical subpoenas. This is not how Rule 35 works, and the Court should not permit Defendant to bypass procedural safeguards or transform discovery into a tool of coercion.

12.    Plaintiff objected to Apple's sweeping demands for account handles, pseudonyms, and platform usage as intrusive, not relevant to the claims or defenses, and potentially chilling under federal labor law. These objections are reiterated in response to Interrogatories Nos. 4–5 and apply here to any attempts to further mine Plaintiff's private online activity.

13.    Plaintiff also objected under public policy and labor rights ("*It's illegal in California…. that's against the labor code.*" 1:10:09 - 1:10:13), to which counsel replied to Plaintiff: "*I'm very aware of employment laws, but unfortunately, you're not an employee anymore.*" (Exhibit C, 1:10:21 - 1:10:25).

14.    Further, Defendant admits awareness of plaintiff's public social media posts that form the basis of the alleged adverse action. This request seeks private social media information unrelated to the admitted public posts and appears designed to harass and chill protected whistleblowing activity rather than elicit relevant information.

15.    Defendant admits it has no specific basis for believing plaintiff posted anything improper, but seeks social media information hoping to find 'all sorts of things' plaintiff 'could have done.' See Meet and Confer Transcript, Exhibit C, at 1:08:30-1:08:40. This constitutes an impermissible fishing expedition lacking any connection to defendant's actual claims or defenses.

16.    Further, Defendant's interrogatories contradict positions taken in defendant's March 4, 2022 position statement to the Department of Labor. (Exhibit H). In that statement, defendant argued this case was limited to specific safety concerns from March 2021, that a 'six-month time gap is too attenuated to support any inference causation,' and that termination was solely for confidentiality violations. Defendant cannot now seek discovery spanning 10 years when it previously argued even 6 months was 'too attenuated' for relevance.

17.    In the prior response, Plaintiff clearly invited Apple to meet and confer under Fed. R. Civ. P. 26(c) and Local Rule 37-1 before attempting to escalate these issues or seek court intervention. Apple

*motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses.*" (Exhibit F, pages 7-8).

## Interrogatory No. 12: All Injuries

**57.    DEFENDANT'S REQUEST: Describe each physical, mental, or emotional injury that you attribute to Defendant under Counts One, Two, Three, and Four in the 5AC.**

58.    **PLAINTIFF RESPONSE & OBJECTIONS**: Plaintiff is not a medical expert and cannot separate emotional harms without formal analysis. Plaintiff further objections to this request on the basis that Defendant's sixth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses.*" (Exhibit F, pages 4-5).

59.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense.*" (Exhibit F, page 7).

60.    Plaintiff further objections to this request on the basis that Defendant's eighth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*In the eighth affirmative defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control.*" (Exhibit F, page 5).

61.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment*

*decision toward Plaintiff (which they were not), Apple would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses*." (Exhibit F, pages 7-8).

## Interrogatory No. 13: Prospective Diagnoses

62.    **DEFENDANT'S REQUEST: Identify each medical provider who has advised you that you may require future or additional treatment for any injury that you attribute to the Defendant under Counts One, Two, Three, and Four in the 5AC. (For purposes of this Interrogatory, "identify" means to state the name, business address, and telephone number of the individual or entity.)**

63.    **PLAINTIFF RESPONSE & OBJECTIONS**: This interrogatory seeks speculative medical predictions that responsible healthcare providers typically do not make. Mental health treatment is generally evaluated on an ongoing basis with periodic reassessment rather than predetermined timelines. The interrogatory assumes a level of medical certainty about future treatment that does not reflect standard mental health care practices. Premature and vague. Plaintiff has not yet received any final future-treatment plans and proposes a neutral IME (as discussed on May 2, 2025, Exhibit C). Further, medical providers are listed in Plaintiff's Initial Disclosures (Exhibit D, Section II).

64.    Plaintiff also objects to this interrogatory on the grounds that it seeks highly sensitive identifying information — including the names, addresses, and telephone numbers of third parties — without any procedural protections in place. During the May 2, 2025 meet and confer, Apple's counsel confirmed their intention to use any names disclosed to subpoena the entirety of those individuals' records regarding Plaintiff, regardless of scope or privilege. Plaintiff objected on the record and explicitly declined to authorize the release of such data without a protective order or court supervision. See Transcript (Exhibit C, 5/2/2025 at approx. 58:13–1:03:05).

65.    Plaintiff reasserts her objection and will seek a Rule 26(c) protective order covering any disclosure of medical providers, former employers, or other third parties. Plaintiff is willing to engage in a mutually agreed discovery plan that outlines limits, scope, and procedural protections, but will not produce subpoena-targeting information until such framework is adopted.

66.    Plaintiff further objections to this request on the basis that Defendant's sixth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative*

*defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses.*" (Exhibit F, pages 4-5)

67.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense.*" (Exhibit F, page 7).

68.    Plaintiff further objections to this request on the basis that Defendant's eighth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*In the eighth affirmative defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control.*" (Exhibit F, page 5).

69.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment decision toward Plaintiff (which they were not), Apple would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses*." (Exhibit F, pages 7-8).

## Interrogatory No. 14: Medical Services (Prosthetics)

**70.    DEFENDANT'S REQUEST: Describe all medical services (*e.g.*, ambulance, nursing, prosthetics) that you have received for any injury that you attribute to the Defendant under Counts One, Two, Three, and Four in the 5AC.**

71.    **PLAINTIFF RESPONSE & OBJECTIONS**: Overbroad, duplicative, and strange. This interrogatory appears to be copied from personal injury litigation forms and seeks information about

medical services (ambulance, prosthetics) that have no conceivable relevance to emotional distress claims arising from workplace retaliation. The reference to prosthetics demonstrates Defendant has not tailored its discovery to the actual claims in this case."

72.     Plaintiff further objections to this request on the basis that Defendant's sixth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses.*" (Exhibit F, pages 4-5)

73.     Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense.*" (Exhibit F, page 7).

74.     Plaintiff further objections to this request on the basis that Defendant's eighth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*In the eighth affirmative defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control.*" (Exhibit F, page 5).

75.     Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment decision toward Plaintiff (which they were not), Apple would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses.*" (Exhibit F, pages 7-8).

76. In addition, Plaintiff is preparing production of medical records tied to active claims. Plaintiff reserves all privacy rights under state and federal law.

## Interrogatory No. 15: Medications Taken from 2015-2025

77. **DEFENDANT'S REQUEST: State each medication, prescribed or not, that you have taken since February 23, 2015.**

78. **PLAINTIFF RESPONSE & OBJECTIONS**: Wildly overbroad and not proportional under Rule 26(b)(1). Plaintiff will not provide a decade-long pharmaceutical inventory without specific justification tied to surviving claims.

79. *"The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses."* (pages 4-5).

80. *"Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense."* (page 7).

81. *"In the eighth affirmative defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control."* (page 5).

82. *"Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment decision toward Plaintiff (which they were not), Apple would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses."* (pages 7-8).

## Interrogatory No. 16: All Medical Conditions from 2015-2025

83.    **DEFENDANT'S REQUEST: State each medical condition (*e.g.*, flu, COVID-19, anemia, diabetes, stroke, stress, depression, generalized anxiety disorder, schizophrenia, post-traumatic stress disorder) that you have suffered since February 23, 2015.**

84.    **PLAINTIFF RESPONSE & OBJECTIONS**:    Overbroad, unduly burdensome, disproportionate, and harassing under Fed. R. Civ. P. 26(b)(1). This interrogatory seeks a comprehensive medical history spanning 10 years including minor, temporary conditions (flu, COVID-19) that bear no reasonable relationship to plaintiff's limited emotional distress damages from 2021 workplace retaliation. The temporal scope (2015-present) and breadth (every medical condition regardless of severity or relevance) constitutes a fishing expedition designed to harass rather than obtain relevant information. The burden of recreating a decade of minor illnesses vastly outweighs any conceivable probative value to defendant's defenses.

85.    Seeks private medical information protected by constitutional privacy rights where no compelling need is shown. To the extent any response is required, plaintiff objects to the temporal scope and will limit response to mental health conditions as reasonable. The plaintiff will provide medical records tied to current mental/emotional damage claims as discovery proceeds.

86.    Plaintiff further objections to this request on the basis that Defendant's sixth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses.*" (Exhibit F, pages 4-5)

87.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense.*" (Exhibit F, page 7).

88.    Plaintiff further objections to this request on the basis that Defendant's eighth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*In the eighth affirmative*

*defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control.*" (Exhibit F, page 5).

89.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment decision toward Plaintiff (which they were not), Apple would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses*." (Exhibit F, pages 7-8).

## Interrogatory No. 17: All Diagnosing Physicians from 2015-2025

**90.    DEFENDANT'S REQUEST: For each medical condition identified in your response to Interrogatory No. 19, identify the person who diagnosed it. (For purposes of this Interrogatory, "identify" means to state the name, business address, and telephone number of the individual or entity.)**

91.    **PLAINTIFF RESPONSE & OBJECTIONS**: Defendant asks Plaintiff to "identify" persons related to her "*response to Interrogatory no. 19*" however Defendant has not served any Interrogatories numbered as 19.  The erroneous cross-reference to non-existent 'Interrogatory No. 19' suggests defendant removed interrogatories from an earlier draft but failed to renumber properly. This supports plaintiff's position that these requests represent harassment rather than carefully crafted discovery tailored to this case.

92.    Assuming defendant means No. 16, instead of No. 19, Plaintiff objects to this interrogatory on the grounds that it seeks highly sensitive identifying information — including the names, addresses, and telephone numbers of third parties — without any procedural protections in place. During the May 2, 2025 meet and confer, Apple's counsel confirmed their intention to use any names disclosed to subpoena the entirety of those individuals' records regarding Plaintiff, regardless of scope or privilege. Plaintiff objected on the record and explicitly declined to authorize the release of such data without a protective order or court supervision. See Transcript (Exhibit C, 5/2/2025 at approx. 58:13–1:03:05).

93.     Objections to Nos. 15–16 are also incorporated here. Further, medical professionals involved in Plaintiff's treatment have already been listed in the Initial Disclosures (Exhibit D, Sept. 2024).

94.     Plaintiff reasserts her objection and will seek a Rule 26(c) protective order covering any disclosure of medical providers, former employers, or other third parties. Plaintiff is willing to engage in a mutually agreed discovery plan that outlines limits, scope, and procedural protections, but will not produce subpoena-targeting information until such framework is adopted.

95.     Plaintiff further objections to this request on the basis that Defendant's sixth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses.*" (Exhibit F, pages 4-5)

96.     Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense.*" (Exhibit F, page 7).

97.     Plaintiff further objections to this request on the basis that Defendant's eighth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*In the eighth affirmative defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control.*" (Exhibit F, page 5).

98.     Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment decision toward Plaintiff (which they were not), Apple would have made the same decisions toward*

*Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses.*" ([Exhibit F,](#) pages 7-8).

## Interrogatory No. 18: All Damages

99.    **DEFENDANT'S REQUEST: Describe all damages (to, *e.g.*, property, reputation, security) other than those that you have already identified or described in your responses to prior interrogatories that you attribute to Defendant under Counts One, Two, Three, and Four in the 5AC.**

100.    **PLAINTIFF RESPONSE**: Plaintiff objects that this interrogatory is cumulative, vague, and seeks an exhaustive catalog of hypothetical or non-economic damages outside of what has already been disclosed in Initial Disclosures ([Exhibit D](#), Sept. 16, 2024). See Sections IV and V. Plaintiff has identified current categories of damages sought and reserves the right to amend or supplement as additional facts or expert reports become available. Additional damage categories will be developed via testimony and expert reports. The plaintiff reserves the right to supplement.

101.    Plaintiff refers to previously described reputational harms, retaliatory disclosures, and diminished career security. For example: Transcript ([Exhibit C,](#) 5/2, 1:05:02): "*They made me read my tweets aloud during their meet and confer session... They severed the contract... and they were defaming me.*"

102.    Plaintiff further objections to this request on the basis that Defendant's sixth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*The sixth affirmative defense is "failure to exercise reasonable care and diligence to mitigate any damages ... The seventh affirmative defense is... Apple is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed by Apple... The Court grants the motion to strike... Apple... should still provide some concrete allegations along the lines of the above to support the defenses.*" ([Exhibit F,](#) pages 4-5)

103.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts that 'no conduct by or attributable to it was the cause in fact or legal cause of the damages, if any, suffered by Plaintiff," and "[s]hould it be determined that Plaintiff was damaged, then said damages were proximately caused by Plaintiff's own conduct.'... The Court grants the motion to strike, but with leave to amend...Apple should still provide some concrete allegations to that effect to support the defense.*" ([Exhibit F,](#) page 7).

104.    Plaintiff further objections to this request on the basis that Defendant's eighth affirmative defense, as related to this request, was stricken by the court on May 19 2025. "*In the eighth affirmative defense, Apple asserts: Plaintiff's recovery is barred in whole or in part by her own unclean hands and by the doctrines of unclean hands, in pari delicto and/or after-acquired evidence, or in the alternative, these doctrines cut off or reduce her alleged damages.... The Court grants the motion to strike, but with leave to amend.... Apple should still provide some concrete allegations along the lines of the above to support the defense, particularly because this information is, at least in part, within its possession, custody, or control.*" (Exhibit F, page 5).

105.    Plaintiff further objections to this request on the basis that Defendant's affirmative defenses, as related to this request, was stricken by the court on May 19 2025. "*Apple asserts 'assuming arguendo that discriminatory or retaliatory reasons had been a motivating factor in any employment decision toward Plaintiff (which they were not), Apple would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or nonretaliatory business reasons'... The motion to strike is granted, but with leave to amend... The Court strikes the defenses only because Apple has not provided concrete facts to support the defenses.*" (Exhibit F, pages 7-8).

## III.   OBJECTIONS RELATED TO DEFENDANT'S PLAN FOR MEDICAL EXAM

106.    Defendant has admitted that the purpose of these interrogatories is to obtain medical records for defendant's independent medical examiner to review, rather than for legitimate discovery purposes. See Meet and Confer Transcript, Exhibit C, at 57:50-58:12. Additionally, defendant falsely claims it does not possess plaintiff's medical records from 2015-2020 when defendant provided healthcare services to plaintiff during that period, while simultaneously having obtained plaintiff's 2021 medical records through third-party ADA requests. (Exhibit J). This constitutes bad faith discovery designed to harass plaintiff rather than obtain relevant information.

## IV.   CLARIFICATION DEMANDED RE: SPOILIATION OF MEDICAL RECORDS

107.    Plaintiff objects to requests related to her medical treatment at Apple Wellness Center (a.k.a. A.C. Wellness) from 2015-2020. These requests seeks information already in defendant's possession or control from defendant's provision of healthcare services to plaintiff from 2015-2020, violating the principle that discovery should not burden parties with providing information already

available to the requesting party. Further objects as overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1).

108.    Defendant's interrogatories seek medical records defendant already possesses from its provision of healthcare services to plaintiff from 2015-2020. See Exhibit I (example of defendant's own medical records for plaintiff). Additionally, defendant has already obtained plaintiff's 2021 medical records through third-party ADA requests to plaintiff's current healthcare providers, as shown in Exhibit J, despite denying such requests when confronted. ("*Apple has no medical records of yours. We do not have your medical records, I assure you.*" – 54:37 - 54:43, 5/2/25 Transcript, Exhibit C).  I complained that "Apple Wellness Center is a privately-owned, for-profit subsidiary of Apple Inc., and I got all my digital records from them, which were sent through my emails and my Apple emails, and it shows that Apple started reporting on my email a long time ago. So, they clearly have it." Defendant then responded again: "*We do not have your medical records.*"  (54:58 - 55:01, 5/2/25 Transcript, Exhibit C). To which I further complained, "And then [Apple Employee Relations] was passing around that mammogram. That was disturbing." (55:02 - 56:15,  5/2/25 Transcript, Exhibit C).

109.    Attached at Exhibit I is an example of Apple Wellness Center's medical records for the Plaintiff. Attached as Exhibit J is a the receipt of Apple's request for Plaintiff's Medical Records at One Medical on 9/1/21. Attached at Exhibit K is a document from Apple's own discovery production, showing Apple Human Resources Employee Relations team discussing Plaintiff's mammograms in June 2021. These interrogatories therefore constitute bad faith discovery designed to harass plaintiff rather than obtain information, in violation of Fed. R. Civ. P. 26(g).

110.    Defendant was plaintiff's healthcare provider from 2015-2020 and had a legal duty to retain plaintiff's medical records. Defendant's representation that it does not possess these records raises serious questions about potential spoliation of evidence that defendant was legally obligated to preserve. Alternatively, if defendant does possess these records but is misrepresenting their availability, this constitutes bad faith discovery in violation of Fed. R. Civ. P. 26(g).

## V.    CLARIFICATION REGARDING SETTLEMENT DISCUSSIONS:

111.    If Defendant's extensive damages-related interrogatories constitute an indirect attempt to initiate settlement discussions, Plaintiff respectfully requests that Defendant clearly state such intent.

112.    Plaintiff is open to good faith settlement negotiations conducted through appropriate channels and in compliance with applicable rules governing settlement communications. However, Plaintiff will not engage in disguised settlement discussions through abusive discovery requests that seek

detailed damages calculations while Defendant has failed to plead viable defenses or disclose its own damages methodologies.

113. Any genuine settlement discussions should be conducted transparently and in good faith, not through harassing discovery designed to extract Plaintiff's damages theories for Defendant's strategic advantage.

## VI. DEFENDANT'S THREATS TO COMPEL AND BAD FAITH DISCOVERY CONDUCT

114. Based on Defendant's prior threats, Plaintiff anticipates that Defendant may claim waiver of these objections or file a motion to compel responses despite the fundamental deficiencies identified herein. Any such motion would be frivolous and brought in bad faith. Plaintiff's objections are timely filed and properly preserved. Defendant's interrogatories demonstrate a lack of good faith preparation required under Fed. R. Civ. P. 26(g). The requests contain:

- Copy-paste errors referencing non-existent interrogatories (Interrogatory 17 references "Interrogatory No. 19")
- Form requests inappropriate for this case type (seeking prosthetics for emotional distress claims)
- Obvious template language from personal injury litigation applied without consideration to employment retaliation claims
- Multiple basic drafting errors indicating lack of care in preparation

115. The pattern of overbroad, irrelevant requests (including 10-year medical histories for minor illnesses) combined with sloppy preparation demonstrates these interrogatories were designed to harass rather than obtain relevant information, in violation of Fed. R. Civ. P. 26(g).

116. Defendant seeks discovery on defenses that the Court struck on May 19 2025 (Exhibit F) for failure to state sufficient facts. Additionally, defendant's counsel threatened plaintiff during meet and confer proceedings for filing the very motion that the Court subsequently granted, demonstrating defendant's bad faith approach to discovery and litigation conduct generally.

117. The interrogatories appear to be edited from a longer list, with numbering errors suggesting removed requests. This supports our position that defendant is conducting a fishing expedition rather than seeking information relevant to specific defense theories.

118. The interrogatories, viewed collectively, appear designed to harass, intimidate, and impose unreasonable costs on Plaintiff rather than to obtain information reasonably necessary for Defendant's defense of this action.

119.   Should Defendant file any motion to compel these responses, Plaintiff reserves the right to seek Rule 37(a)(5) cost-shifting, Rule 26(g) sanctions for bad faith discovery, and such other relief as the Court deems just and proper. The Court should award Plaintiff reasonable attorney fees and costs incurred in opposing any frivolous motion to compel responses to fundamentally deficient discovery requests.

## VII.   CONCLUSION

120.   In the interest of judicial economy and proportionate discovery, Plaintiff offers that if the Court grants Defendant leave to file an amended Answer with properly pled affirmative defenses supported by adequate factual allegations, Defendant may serve amended interrogatories that are appropriately tailored to such viable defenses. In such event, Plaintiff will not count the current deficient interrogatories against Defendant's 25-interrogatory limit under Fed. R. Civ. P. 33(a)(1), provided any amended interrogatories comply with the Federal Rules and are relevant to properly pled claims or defenses.

## VIII.   VERIFICATION

I, Ashley M. Gjovik, declare under penalty of perjury under the laws of the United States that the foregoing responses are true and correct to the best of my knowledge, information, and belief.

Executed on May 29, 2025, at Boston, Massachusetts.

**Dated: May 29 2025**

_____

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*

# EXHIBIT C

(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DEFENDANT APPLE INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF, SET ONE** |
| v. | |
| APPLE INC., | |
| Defendant. | |

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant Apple Inc.

In accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Apple Inc. requests that Plaintiff Ashley Gjovik produce the documents, records, and other tangible evidence described below to mriechert@orrick.com and kmantoan@orrick.com within thirty days of service.

### INSTRUCTIONS

1.      Any document should be produced in PDF format with the following metadata fields, where applicable, included in an associated load file (referred to as a "Concordance" load file format in litigation): Beginning Bates, Ending Bates, Beginning Attach, Ending Attach, Page Count, Document Date, Author, From, To, CC, BCC, Subject, Custodian, and Text Path. If documents cannot be produced in this manner ensuring the requested metadata fields are preserved and produced, documents should be produced in their original native format, with any metadata associated with such native files.

2.      All documents shall be produced with Bates numbers consisting of a unique identifier consisting of a prefix followed by numbers (*e.g.*, PLAINTIFF000001). Each page of a document must have its own Bates number, Bates numbers should be sequential, and all documents included in a "family" (*e.g.*, emails plus their attachments) shall be organized together in sequential order. Any documents produced in native format shall be assigned a unique Bates number the same as if produced as a PDF. The native file itself shall be named using the unique Bates number assigned to it followed by the original file extension.

### DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All documents concerning the factual allegations or claims in Count I – Wrongful Discharge; Count II – Labor Code §1102.5; Count III – Labor Code §6310; and Count IV – Labor Code §98.6 in the Fifth Amended Complaint, though nothing in this Request should be construed as requesting the production of any affidavits regarding testimony that you or anyone else may have given to the National Labor Relations Board.

**REQUEST FOR PRODUCTION NO. 2:**

Claims, lawsuits, administrative charges, and complaints by you that rely upon any of the

**REQUEST FOR PRODUCTION NO. 9:**

Documents concerning the termination of any employment or consulting arrangement held by you since your employment at Apple ended.

**REQUEST FOR PRODUCTION NO. 10:**

Any other documents upon which you rely to support the following claims in Count I – Wrongful Discharge; Count II – Labor Code §1102.5; Count III – Labor Code §6310; and Count IV – Labor Code §98.6 in the Fifth Amended Complaint, though nothing in this Request should be construed as requesting the production of any affidavits regarding testimony that you or anyone else may have given to the National Labor Relations Board.

**REQUEST FOR PRODUCTION NO. 11:**

All documents upon which you relied to draft Count I – Wrongful Discharge; Count II – Labor Code §1102.5; Count III – Labor Code §6310; Count IV – Labor Code §98.6 in the Fifth Amended Complaint, though nothing in this Request should be construed as requesting the production of any affidavits regarding testimony that you or anyone else may have given to the National Labor Relations Board.

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any physical, mental, or emotional distress that you claim was caused by Defendant regarding the following claims: Count I – Wrongful Discharge; Count II – Labor Code §1102.5; Count III – Labor Code §6310; and Count IV – Labor Code §98.6 in the Fifth Amended Complaint.

**REQUEST FOR PRODUCTION NO. 13:**

All documents that support the damages you allege to have sustained regarding the following claims: Count I – Wrongful Discharge; Count II – Labor Code §1102.5; Count III – Labor Code §6310; and Count IV – Labor Code §98.6 in the Fifth Amended Complaint.

///

///

///

///

DEF.'S RFPS, SET ONE
[23-CV-4597-EMC]

Dated:  March 26, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  _____*/s/ Melinda S. Riechert*_____
                    MELINDA S. RIECHERT
                    Attorney for Defendant
                    APPLE INC.

# EXHIBIT D

**Ashley M. Gjovik, JD**
*In Propria Persona*
(408) 883-4428
legal@ashleygjovik.com
April 25, 2025

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY M. GJOVIK**, *an individual*, <br><br> Plaintiff, <br><br> vs. <br><br> **APPLE INC.**, *a corporation*, <br><br> Defendant. | **RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION** (SET NO. ONE) <br><br> **U.S. District Court Case No.**: <br> • *Gjovik v. Apple,* 3:23-CV-04597-EMC <br><br> **Related Cases:** <br> • **U.S. Court of Appeals for the Ninth Circuit:** 25-2028; 24-6058 <br> • **U.S. NLRB Case. No.'s**: 32-CA-282142; 32-CA-283161; 32-CA-284428; 32-CA-284441 <br> • **U.S. Dept. of Labor ARB Case No.**'s: 2024-0060; 2024-CER-00001. <br> • **U.S. EPA & California EPA BAAQMD** enforcement actions |

TABLE OF CONTENTS

PLAINTIFF'S RESPONSES TO DEFENDANT APPLE INC.'S REQUESTS
FOR THE PRODUCTION OF DOCUMENTS, SET ONE .......................2

I.    General Response & Preservation of Objections ........................... 2

    A.    Response To Request for Production No. 1 – 13:.............................. 3

II.    Conclusion ................................................................... 3

# PLAINTIFF'S RESPONSES TO DEFENDANT APPLE INC.'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS, SET ONE

1.    Plaintiff Ashley Gjovik, appearing *pro se,* hereby responds to Defendant Apple Inc.'s Request for Production of Documents, Set One (served March 26 2025), as follows:

## I.  GENERAL RESPONSE & PRESERVATION OF OBJECTIONS

2.    The plaintiff is actively gathering and producing responsive documents. As of the date of this response, no documents have been withheld under any claim of privilege, confidentiality, or other protection. Should documents later be withheld or redacted, Plaintiff will produce an appropriate privilege and/or confidentiality log.

3.    Plaintiff objects to producing documents protected by the attorney work product doctrine, including documents prepared in anticipation of litigation, legal strategy notes, and related communications created in Plaintiff's capacity as her own legal counsel. Plaintiff also objects to producing communications protected by the attorney–client privilege, including confidential communications with attorneys consulted for legal advice relating to this matter. Certain documents may also be protected under privileges relating to ongoing civil and criminal investigations involving Defendant, and/or may require review and authorization by the United States government prior to any disclosure.

4.    The Plaintiff further notes that Defendant has provided no factual allegations, contentions, or disclosures—either in its Answer or Initial Disclosures—that would justify inquiry into Plaintiff's general medical history or healthcare providers. Should Defendant wish to pursue any request implicating such information, Plaintiff requests a meet and confer pursuant to Fed. R. Civ. P. 26(c) and N.D. Cal. Local Rule 37-1. Defendant must identify the factual or legal

basis for asserting that such information is relevant and proportional to the claims and defenses currently pending in this matter.

5.    Subject to and without waiving the foregoing, Plaintiff responds to each request as follows:

### A. RESPONSE TO REQUEST FOR PRODUCTION NO. 1 – 13:

6.    The plaintiff has begun producing responsive, non-privileged documents and will continue to do so on a rolling basis. The plaintiff will supplement this production as additional documents are identified and reviewed, and will provide amended responses as appropriate.

## II. CONCLUSION

7.    The responsive production is ongoing.

/s/ Ashley M. Gjovik

*Pro Se Plaintiff*

Dated: April 25, 2025

# EXHIBIT E

**Subject:** RE: FW: Gjovik v. Apple:  Authorizations for Release of Medical Records
**From:** Riechert, Melinda mriechert@orrick.com
**To:** Ashley M. Gjøvik ashleymgjovik@protonmail.com
**Cc:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>

Ashley

It appears you have made a number of significant changes to the document. We can no longer continue to delay serving the subpoenas while we attempt to negotiate an authorization. Accordingly, will go ahead and serve the subpoenas.  Attached please find a zip folder containing notices for the subpoenas to medical providers that we will be serving tomorrow.

**Melinda Riechert**
Partner
Orrick
Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, March 12, 2026 8:32 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>
**Subject:** RE: FW: Gjovik v. Apple: Authorizations for Release of Medical Records

**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

**[EXTERNAL]**

I understand but I think that's something we can sort out after you send this right?

Unless if you insist it be included, then I'd say provide a short list of names and titles rather then just Apple HR legal. Preferably I'd also like to review whatever records you want to share prior to do doing so, so I have a chance to object and request help from the court if needed.

Further, Apple likes to say its department names and org charts are secret and/or don't exist, so that makes a vague organization reference even more problematic, imo.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 8:20 PM, Riechert, Melinda <mriechert@orrick.com> wrote:


Consistent with our ethical obligations, we have to be able to show the records to the attorneys in the legal department we are working with on the case. That is why I limited it to just these people.

**Melinda Riechert**
Partner
Orrick
Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com




**[EXTERNAL]**

Thank you for your revisions regarding the disputed Protective Order, however you then added an authorized transfer of documents to parties you never asked me prior about, and I have previously objected to sharing my medical records with (as the complaint literally includes me protesting Apple wanting me to release my records to Apple Inc which then asks me to do). If you want to share the records with other folks you should ask me about it and we can draft an agreement about it if its reasonable -- but that would be done between us, not pre-authorized.

I'm attaching a proposed revision that I'd be okay signing now if you guys are okay and write something simple and not outrageous for your signature / attestation. Because I'm saying "we agree" but there's nothing actually binding us to that agreement and your client is known to act erratically and reneg on its agreements, I think it would be prudent to have a signature from counsel and/or Apple on the document specific to the terms stated as "agreements." The other option is Exhibit B just being a statement from Orrick and/or Apple reiterating the things it agrees to regarding record handling etc. where I had said we agreed to whatever it is.

Let me know.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 7:27 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

How does this look?

**Melinda Riechert**
Partner
Orrick
Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

**[EXTERNAL]**

Hello Apple's lawyers,

I'm still willing to sign an authorization for you to use for this request and I feel like the attached draft is very close to a version I could willingly sign for you -- however Apple appears to be making the authorization contingent on my written approval and acquiesce to the disputed Protective Order which is currently subject to numerous federal complaints, two motion for sanctions against Apple, and year of objections.

Additionally, I object to Apple framing this authorization as urgent while having failed to serve its subpoenas or advance this matter for nearly a year, and then failing to respond to my correspondence for weeks. I further object to being given less than one business day to respond with a binary choice: agree to the disputed Protective Order or receive no authorization.

Apple represented to the court that an authorization was required and that it was blocked without one. Apple is now saying the authorization is unnecessary unless I agree to incorporate a protective order I have objected to, contested, have open NLRB charges about, Apple is facing two motions for sanctions about, and which I'm seeking to revoke. Apple's position is inconsistent with Apple's prior representations to the court regarding the authorization and creates the appearance that Apple is intentionally sabotaging meet/confer for improper reasons.

That said, I have reviewed your redline. I'm willing to accept all proposed changes except the edits re-inserting the disputed Protective Order. This drafted document would be my authorization and I do not agree that the model PO sufficient or appropriate for this purpose, as I stated repeatedly prior in this email change and in the document revisions.

For instance, the CAND model order does not mention HIPAA, PHI, or 45 C.F.R. § 164.512(e). It is a generic commercial litigation confidentiality order and accordingly should not even be in place for this public interest lawsuit. It seems to me that providers and their counsel are unlikely to treat it as a Qualified Protective Order without explicit

language, and a court reviewing a provider's challenge would have to infer QPO status rather than find it stated. There's also ambiguity for the provider's rights under the order that would be resolved with a proper PHI protective order.

CMIA creates additional issues with the model order. Cal. Civil Code § 56 et seq. applies concurrently with HIPAA and is not preempted where it is more stringent. The model order contains no reference to § 56.10, no patient notification mechanism aligned with California requirements, and no acknowledgment of the CMIA's civil and criminal penalty framework. it seems to me that a California provider's counsel presented with this order alone has a legally supportable basis to decline production.

Again, I am willing to execute an authorization without the PO references, and I remain open to negotiating a HIPAA- and CMIA-compliant qualified protective order specific to medical record production. The ball is in Apple's court and it appears the only issue left to be resolved is ensuring there's a proper PHI protective order for these records and that its not the disputed model order.

-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**


Sent with [Proton Mail](#) secure email.

On Thursday, March 12th, 2026 at 1:40 PM, Riechert, Melinda <[mriechert@orrick.com](#)> wrote:


Ashley,

Attached is a draft of the authorization with our proposed revisions, along with a redline comparing the last version you sent us to this revised version. Please let us know if you agree to execute the authorization in this form, and we will send you an authorization for each provider to execute today.

If you do not agree to the authorization in this form, then tomorrow we will issue the subpoenas without authorizations, per Judge Westmore's February 26, 2026 order.

**Melinda Riechert**
Partner
Orrick
Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
[mriechert@orrick.com](#)



**[EXTERNAL]**

Hello,

I'm attaching a draft with my proposed revisions which is mostly reversions. The last version you sent me had no revision tracking or redline, so I created one and attached it as well. This looks done-ish to me if you don't have any further objections.

However, I suspect there are likely substantive deficiencies regarding the lack of a qualified protective order however I'd need you folks to be willing to re-consider a medical record PO targeted for HIPAA & California medical legal compliance -- otherwise I don't see any other options if the providers find the current version of the subpoena/auth + the contested PO insufficient. We'd prob need to create one later if there are objections - if you're willing.

Regardless though you'll certainly receive more records with an auth then without one, so that's still progress.

Regarding your proposal to serve subpoenas with production dates extending months beyond the non-expert discovery cutoff. I do not agree to this schedule, and the law does not support it. N.D. Cal. Civil L.R. 37-3 defines the discovery cutoff as the date by which all responses to written discovery are due and all depositions must be concluded. This is a completion deadline.

Discovery must be served sufficiently in advance of the cutoff to allow responses before discovery closes, and courts will not order discovery to take place after the cutoff date absent an extension for good cause. See Fed. R. Civ. P. 16(b)(4) (scheduling orders may be modified only for good cause and with the judge's consent); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) ("If [the moving] party was not diligent, the inquiry should end."). There is no authority for the proposition that a party may unilaterally schedule discovery compliance dates beyond a court-ordered cutoff.

Rule 45 subpoenas are discovery tools governed by the same scheduling order constraints as any other form of discovery. They cannot be used to circumvent court-ordered deadlines. See *Hatcher v. Precoat Metals,* 271 F.R.D. 674, 675 (N.D. Ala. 2010) (quashing subpoena as an attempt to circumvent Rule 34 requirements and the scheduling order where party had months to obtain the same information through standard discovery); *Rice v. United States,* 164 F.R.D. 556, 558 n.1 (N.D. Okla. 1995) ("Rule 45 subpoena duces tecum cannot be used as a form of discovery to circumvent deadlines."); *Dees v. Hyundai Motor Mfg. Ala., LLC*, No. 2:06-cv-00438, 2008 WL 821061 (M.D. Ala. 2008) (subpoena seeking employment records was properly considered a discovery device and was therefore untimely because it was served after the discovery deadline). See also *McLean v. Prudential S.S. Co.,* 36 F.R.D. 421, 425 (E.D. Va. 1965) ("It is unthinkable that the effect of Rule 34 can be emasculated by the use of Rule 45."); Fed. R. Civ. P. 45, Advisory Committee Notes to subdivision (c) of the 1991 amendments (Rule 45(c) "is not intended to diminish rights conferred by Rules 26-37 or any other authority").

To the extent you contend these subpoenas fall outside the discovery cutoff as "trial" subpoenas or some other mechanism, the Federal Rules draw no such distinction for scheduling purposes. See *Chrysler Int'l Corp. v. Chemaly, 2*80 F.3d 1358, 1362 n.8 (11th Cir. 2002) (identical treatment of discovery and de bene esse depositions for timing purposes is consistent with the Federal Rules, which draw no distinction between the two)*; Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556, 558-59 (S.D. Cal. 1999) ("The Federal Rules of Civil Procedure do not distinguish between depositions taken for discovery purposes and those taken strictly to perpetuate testimony for presentation at trial," and "a sound argument can be made that if a party wishes to introduce deposition testimony at trial, that testimony should be procured during the time set by the court to conduct discovery absent exceptional circumstances."); *Sanofi-Synthelabo v. Apotex, Inc.,* No. 04-cv-4183, 2005 WL 469594, at *1 (S.D.N.Y. Feb. 18, 2005) ("both types of depositions are governed by the scheduling order"). A party who assumes the court will draw a distinction the Rules do not make "assume[s] a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date." *Chrysler*, 280 F.3d at 1362 n.8.

Courts have consistently sanctioned or excluded evidence where a party delayed obtaining third-party discovery until after the close of fact discovery. See *Beacon Navigation GmbH v. Bayerische Motoren Werke AG,* No. 2:12-cv-10593, 2023 WL 8981689 (E.D. Mich. 2023) (finding Rule 26(e) violation where party served third-party subpoena approximately 30 days before the fact discovery cutoff and obtained production after the deadline; the court noted that "delaying third-party discovery of source code was [the party's] own litigation strategy" and that "compliance with the scheduling order necessarily entails parallel, not successive, settlement discussions and fact discovery"); *Donk v. Miller,* No. 97-cv-1755, 2000 WL 218400, at *5 (S.D.N.Y. Feb. 24, 2000) ("The fact that the [parties]

unilaterally decided to participate only selectively in pretrial discovery is not a justification for allowing them to take additional depositions.").

So I'm not going to "stipulate" to any production schedule that extends beyond the court-ordered non-expert discovery cutoff, especially as part of a medical authorization form, due to your proposed "revisions" for my authorization.

If you believe there is good cause to extend the discovery period, you are free to seek leave from the Court under Fed. R. Civ. P. 16(b)(4) and Civil L.R. 6-2. Absent such an order, I'd expect all discovery to be completed by the existing deadline. Fed. R. Civ. P. 37(c)(1

Personally, and this isnt legal advice because I'm not an attorney, but you may want to reconsider the scope of your request and tailor it to be more narrow and specific, which would likely get quicker production then a very broad version -- at least thats how it works with FOIA requests, and I'm good at FOIA, so I don't know, think about it.

-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Saturday, February 28th, 2026 at 6:52 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello counselor,

Thank you for the clarifications below. I will work on a revised draft and send to you tomorrow, or Monday at the latest, to review -- incorporating the points below as conditions on my authorization, rather then the standalone medical information protective order.

I do need to look at case decisions about discovery cutoff & production before I'd agree to extend my authorization date past the end of discovery. But to that point I'd ask if Apple would be willing to use the date for the end of discovery and then if they need to extend it further, we discuss that then, get court approval if needed, and at which point I could provide a supplemental authorization.

It just seems to me that if Apple's still getting documents after the discovery cutoff and wants to use any for litigation, it will have to raise that to Judge Westmore because of the confidentiality requirements, and Judge Westmore likely assumes she will not be receiving discovery disputes after the end of discovery, so it seems logical and practical and probably procedurally required that the cut off for this discovery request be aligned with the cutoff for discovery overall.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Saturday, February 28th, 2026 at 5:10 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

Thanks for getting back to us and we appreciate your willingness to work with us on the authorization. To respond, I wanted to make it clear that:

1.  Apple agrees to keep all the medical records confidential and will not share them with anyone other than its counsel and the health care provider who is conducting the IME.

2. Apple agrees to give you copies of all the medical records it receives and will not in any way limit who you can share them with.
3. Apple agrees you are free to share your medical history with anyone you want to.
4. I am not confident that all the health care providers will have provided us with records by the discovery cutoff. We will serve the subpoenas right away, and once we have received all the records requested from the health care provider, then your authorization will end.  Does that work?

**Melinda Riechert**
Partner
Orrick
Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



<span style="background-color:red">**[EXTERNAL]**</span>

Hello,

It's Saturday and I'm very tired after having to pull all nighters due to Apple's frivolous and harassing emergency motions but I'll respond briefly to your points below.

Overall, Apple is responding to a courteous voluntary offer by me to provide an authorization to release records, which I'm under no obligation to do, and I'm offering even after extensive bad faith and harassing conduct by Apple regarding their overall request -- with Apple demanding one of two options 1) either Apple declares all of my medical records going back my entire life to be confidential and secret to **me** as well as Apple, creating another illegal gag order preventing me from talking about my own health, medical history, and medical care -- or 2) Apple wants copies of all of the above that by default will not be confidential and Apple can share them with whoever they want and keep them forever, unless I take on hundreds of hours of unnecessary work to fight Apple on this because Apple won't agree to a completely typical and expected HIPAA-compliance protective order required for subpoenaing medical records in litigation and insists on exclusively using an Protective Order I've repeatedly said is illegal and is being solely used to violate my civil rights.

For confidentiality, all third-party records released to Apple must be considered confidential. Even a HIPAA waiver I might sign would be invalid if those records are not considered confidential under a qualifying protective order, and it also seems very unlikely any doctor would produce these records if they were not considered confidential and had retention limits, etc required by the non-patient subpoenaing party.

My request is that I want copies of my own records that are not considered confidential as applied to me, because they're my own records.

The Protective Order also should not and cannot function as a gag order about my own history and experiences or records I may already have or could request myself -- but that's exactly how Apple's already using it and has motions for sanctions against me pending on this bogus legal theory -- so Apple would assumably apply the same theory to these medical records -- and I will not facilitate further violations of my civil rights.

Notably this would also put a gag order on me about Apple's handling of my medical issues caused by Apple's chip fab and the malpractice by Apple Wellness Center regarding those injuries -- which included my notifying Apple Wellness that other Apple employee were injured at that location, that I was organizing with them about the injuries and asked Apple to investigate including screening medical complaints for the location (of its chip fab) to identify if an environmental hazard was hurting my coworkers too. That's protected concerted activity, whistleblowing, and involves my own health records -- but Apple would then assumably claim that's secret and confidential too?

Your proposed revision suggests that all medical records and health information about me would be released to Apple as not-confidential so Apple could do whatever it wants with it (share it, publish it, tweet about it) unless I take on the burden of being the one who designates it confidential and at which point I've just assumably designated confidential for myself too, taking away my own rights. I'm not doing that - that would be very silly, Melinda.

I'm also not agreeing to discovery production through Nov 2026. I'm holding that discovery production should end at the end of discovery in April. Under your rationale, you don't plan to complete production to me of documents I request until Nov. 2026, at trial. That's not how that works - discovery ends when discovery ends and if Apple needs an extension it needs to ask the court for an extension. If Apple thinks providers won't meet the April 2026 deadline then Apple should have sent its subpoenas a year ago when it originally drafted them and now it needs to ask Judge Westmore to ask Judge Chen to modify Judge Chen's case order and explain why.

Similarly, this is my authorization so I can put whatever date I feel is proper for my consensual authorization and if I'm pressured to extend dates past when I think is proper, or authorize records I think are improper, or waive my privacy rights, or free speech and bodily autonomy rights, or take on extra work that should be done by Apple, etc. then its clearly not consensual.

Regarding the protective order i think it comes down to this. If Apple wants the records released to it under the Protective Order and they would all be designated by confidential as default for Apple, in compliance with state and federal regulatory requirements -- then I just need Apple to confirm that it would then not claim its own confidentiality requirements apply to the records I'm having produced from the same providers directly to me (and not under any order, because its my records). If Apple will agree to that, then this may be a non-issue between me and Apple, though my providers are likely to object to that Protective Order, especially with a docket history of my repeatedly objecting to it and saying I didn't want to enter it and complaining its being used to violate my rights. However, Apple can deal with that if they get push back from the physicians.

Let me know. And reminder you were prepared to have to send this without any authorization at all, and I'm offering you something, so even if it doesn't give you everything you want, its assumably better than nothing.

-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**


Sent with Proton Mail secure email.

On Saturday, February 28th, 2026 at 10:01 AM, Riechert, Melinda <mriechert@orrick.com> wrote:


Ashley

Attached please find a revised version of the authorization. Let us know if this works for you.  If so, we will send you copies to sign for all the health care providers.

We already have a protective order in place, so we don't think we need another one. Once the health care provider produces the records pursuant to the subpoena, Apple will not designate them as confidential under the protective order. You will have the opportunity to review them and designate them as confidential if you want to do so.  They are your medical records and you are free to do with them as you wish.

Regarding the expiration, we propose November 15, 2026. This gets us through trial, and has a fixed expiration date as your requested.

**Melinda Riechert**
Partner
Orrick
Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**[EXTERNAL]**

Hey counselor,

Thanks for the response. Regarding the scope -- I wrote my scope for the authorization, you can include whatever scope you want for your subpoena. As long as you're ok with my authorization being smaller then your subpoena scope, then you'll just need to manage the delta in between them. Does that make sense?

Regarding the Protective Order, the issue is the Confidentially designation regarding my copy of the records. If Apple will produced all copies to me without claiming they're confidential to me but keeping its own confidentiality designation on its copies, then that may work.

Regarding discovery cut-off, even if we don't use the official case management date, we'd need a cutoff -- like you know, not past trial? Cause then why are you still receiving records after trial.  What would be a more reasonable date?

Thanks!

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, February 27th, 2026 at 10:31 AM, Riechert, Melinda <mriechert@orrick.com> wrote:


Ashley,

Thank you for your revisions. Attached is a redline and clean. Let us know if this works and we will send you PDFs to sign for each of the medical providers, including the two new ones you identified in your amended discovery responses.  Let us know if you prefer we send them via DocuSign.

We have accepted most of your revisions but have a few issues regarding the scope, your request for a new protective order, and your revisions to the expiration of these authorizations.

**Scope**:  Judge Westmore has already indicated she is likely to approve Apple's requested scope if this comes to motion practice because she confirmed you have put your medical and mental condition at issue in this lawsuit.  Moreover, your initial disclosures indicate you received mental health treatment dating back to 2015. That is the basis for Apple's date range and why Apple also included Ashley Henderson as a patient name. You have put your mental health at issue and Apple is entitled to discover mental health treatment you received prior to your alleged injuries arising from your termination, particularly any treatment you listed in your disclosures. For the same reason, Apple cannot agree to your limitation of "physical and mental injuries", as this may cause the provider to omit illnesses or other diagnoses which could serve as alternative stressors that Apple is entitled to discover. For example, your proposed limitation may exclude treatment you received for your autism or ADHD. Likewise, if you have another chronic illness, Apple is entitled to discovery of this information as an alternative stressor.

**Protective Order**:  Both you and Apple signed, and the Court subsequently entered, the Northern District of California's Model Protective Order to apply to this case. *See* Dkt. No. 235. That Protective Order expressly contemplates designations for materials produced by Non-Parties. Apple will not revisit the issue of what protective order is appropriate for discovery in this case, but will agree that any medical records produced by your providers will be governed by the current Protective Order. Apple will also agree to instruct the providers to produce the records as Confidential pursuant to the Protective Order if that helps alleviate your concerns.

**Expiration**: We understand that you do not want the authorization to exist for the duration of the lawsuit and have proposed a compromise that the authorization remain valid until the provider has completed a full production of records pursuant to the subpoena and the resolution of motion practice related to these records, if any. Providers can be very slow in producing documents and we want to account for any possibility that the records are not produced prior to the discovery cutoff.

**Melinda Riechert**
Partner
Orrick
Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com



**From:** Ashley M. Gjøvik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, February 26, 2026 9:12:09 PM (UTC-08:00) Pacific Time (US & Canada)
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Russell, Zoe <zrussell@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>
**Subject:** Re: Gjovik v. Apple: Authorizations for Release of Medical Records

[EXTERNAL]

Hello,

You gave me a very tight deadline to work on this request and I completed what I think is a solid draft of an authorization I'd be willing to agree to -- and despite a flurry of other emails about sanctions motions and protective orders -- you've failed to reply to this email chain at all.

You made a specific request, I fulfilled it, and then I asked you for feedback on the proposal. There's an Apple-set timeline of only three business hours left to finalize this -- so its critical that you respond quickly if you're otherwise going to refuse to meet/confer further on this after noon tomorrow.

Apple said it was critical to get an authorization and now I'm offering one. I can't image you'd have any major objections to this version, so hopefully we can finalize this tomorrow, and then you can get your subpoenas sent out with it attached, while still on the same timeline you previously demanded.

Btw, you're welcome.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**


Sent with [Proton Mail](link) secure email.

On Thursday, February 26th, 2026 at 4:13 PM, Ashley M. Gjovik (Legal Matters) <[legal@ashleygjovik.com](mailto:legal@ashleygjovik.com)> wrote:

Hello counselor,

Due to very short time frame you provided to meet/confer on this matter, I dropped everything today in order to draft a response for you. Attached is a proposed amended authorization form with an attached proposed PHI-specific protective order for third-party production of my medical records.

I also made several corrections as it appears you needed to separate the psychotherapy request into its own document per the California governing statute, so I did that in my draft. I also corrected the HIPAA required end dates, revocation terms, and other required information/sections that might have delayed you getting a response to your request.

Let me know what you think about this draft and if you have any counter-proposals, or want to talk more about it.

If you'd be okay with sending something like what I have attached, then I'm open to signing an authorization like this for you to attach with your subpoenas.

Also, as noted in my prior email, earlier this morning I sent you revised Initial Disclosures and Supplemented Interrogatories which include two additional providers (MD Live & Atrius Health). You likely want to send me, or indicate, your proposes subpoenas for those providers asap so you can satisfy the 14 day notification window.

I do strongly object to the scope noted in Apple's drafts which includes records back to 2015 (despite expressly saying they would not request that far back), and asking for records well beyond the reasonable scope and relevance of this litigation. I also object to Apple's previously stated plan to have these records released only to Apple, under the protective order (which I objected to and never consensually signed), and which would assumably (per Apple) then indicate any records produced by Apple to me under that order would make my own medical records secret to me, assumably (based on Apple's prior/ongoing assertions) put gag orders on me about my own medical records (including Apple Wellness Center) and medical conditions, and gag orders on me about any of my complaints about Apple's handling of these requests. However, I believe my draft helps address all of those concerns.

Regarding protective orders, Apple has confidentiality obligations if it wants to obtain and review these records, but I do not have, and cannot have, confidentiality obligations regarding my own records. Accordingly, I updated my version to request to have duplicate copies sent to me directly along with whatever Apple receives.

If Apple will not ensure that I can obtain copies of these records and in such a way there is no claim by Apple that I have "confidentiality" duties regarding my own medical records and Apple's handling of those records, then that will be yet another NLRB charge against Apple in addition to me being forced to challenge the "confidentiality" claim as

applied to me, for every single document, or else have to file my own subpoenas for copies of the same records which requires court approval and I'll have to explain that Apple refused to agree to this voluntarily.

Respectfully,
-Ashley


—
**Ashley M. Gjøvik**
**BS, JD, PMP**


Sent with Proton Mail secure email.

On Wednesday, February 25th, 2026 at 7:53 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

Hello counselor,

I received your 7:39 PM PST email and will review your request and the attachment and get back to you during business hours.

I further note that you have provided me a 1.5-day hard deadline to respond and complete any meet/confer, which is not a standard meet/confer timeline and certainly not what the court had in mind.


—
**Ashley M. Gjøvik**
**BS, JD, PMP**


Sent with Proton Mail secure email.

On Wednesday, February 25th, 2026 at 7:39 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley,

Pursuant to the Court's February 23rd Order requiring the parties "to further meet and confer regarding executing an authorization to release the medical records sought" (Dkt. No. 291 at 2), please find the attached authorizations for release of medical records to the providers Apple intends to subpoena as identified in your discovery responses. If you are unwilling to sign these authorizations for the release of these records, please let us know by noon Friday and we will issue the subpoenas pursuant to the Court's instructions.

If you prefer we send the authorizations via DocuSign, please let us know.

**Melinda Riechert**
Partner
Orrick
Silicon Valley  Ⓥ

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

# EXHIBIT F

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DEFENDANT APPLE INC.'S NOTICE OF SUBPOENA TO AC WELLNESS MEDICAL GROUP** |
| v. | |
| APPLE INC., | |
| Defendant. | |

TO PLAINTIFF ASHLEY GJOVIK:

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Apple Inc. intends to serve the attached Subpoena on the Custodian of Records for AC Wellness Medical Group, 20730 Valley Green Drive, Cupertino, CA 95014 on March 13, 2026, or as soon thereafter as service may be effected.


Dated: March 12, 2026                                    ORRICK, HERRINGTON & SUTCLIFFE LLP


*Melinda Riechert*

_____

MELINDA S. RIECHERT
Attorney for Defendant
APPLE INC.

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| Ashley Gjovik | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  23-cv-4597-EMC |
| Apple Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: 
Custodian of Records for AC Wellness Medical Group
20730 Valley Green Drive, Cupertino, CA 95014

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Orrick, Herrington & Sutcliffe LLP<br>Attn: Melinda Riechert<br>1000 Marsh Road, Menlo Park, CA 94025 | Date and Time:<br><br>04/03/2026 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    03/12/2026

| CLERK OF COURT | OR | *Melinda Riechert* |
|---|---|---|
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* 
Defendant, Apple Inc. , who issues or requests this subpoena, are:
Melinda Riechert (SBN 65504) Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025;
(650) 614-7400; mriechert@orrick.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   23-cv-4597-EMC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## ASHLEY GJØVIK / ASHLEY HENDERSON

**(Date of Birth:** ▮▮▮▮▮▮▮▮ **) (Social Security No.** ▮▮▮▮▮▮▮▮ **)**

The following records of Ashley Gjøvik / Ashley Henderson from 2015 through the present:

1. All documents relating to your treatment of Ashley Gjøvik / Ashley Henderson (DOB ▮▮▮▮▮▮) from 2015 to present, including, but not limited to,

   a. Intake and admission forms, including statements, questionnaires and histories.
   b. Admission and discharge summaries.
   c. Examination and consultation reports and records, including handwritten notes, clinical charts, and records received from other providers.
   d. Nursing records and reports.
   e. Psychotherapy notes, psychiatric and psychological reports and summaries.
   f. Inpatient and outpatient records.
   g. Prescription/medication/pharmacy records, including NDC numbers, lot numbers, drug information handouts and monographs.
   h. Correspondence to, from, and concerning ASHLEY GJØVIK / ASHLEY HENDERSON.
   i. Sound and video recordings, including audiotapes and CDs.
   j. Diagnostic assessments, batteries and/or tests and reports.
   k. Documents relating to or concerning any neurological, neuro-cognitive, psych-educational, neuropsychological, psychological and/or psychiatric evaluation, assessment and/or testing.

2. All billing records to relating to your treatment of Ashley Gjøvik / Ashley Henderson (DOB ▮▮▮▮▮▮) from 2015 to present, including but not limited to any invoices or bills, records of payments made and insurance information/payment.

   *INCLUDE BILLING RECORDS*

All documents should be produced as CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M GJOVIK,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 3:23-cv-04597-EMC (KAW)

**ORDER REGARDING APPLE'S SUBPOENAS FOR PLAINTIFF'S MEDICAL RECORDS**

Re: Dkt. Nos. 276, 277

On February 10, 2026, Defendant Apple Inc. filed a discovery letter pertaining to Plaintiff's refusal to authorize the release of her medical records despite claims of severe emotional distress. (Def.'s Letter, Dkt. No. 276.) Apple contends that they attempted to negotiate the scope of the subpoenas with Plaintiff, including sending her drafts to which she promised revisions to narrow the scope. *Id.* at 2. Plaintiff never provided the revisions. *Id.*

On February 16, 2026, Plaintiff filed a response, in which she acknowledged that she was claiming severe emotional distress, that her medical and mental conditions have been put "in controversy," and that Apple is entitled to damages-related discovery. (Pl.'s Letter, Dkt. No. 277 at 5.) Even so, she argues that Apple's letter was premature because it has not served the subpoenas. *Id.* She also contends that she reserves her right to object to scope and substance of any subpoena Apple may serve, and that she cannot be forced to consent to a HIPAA waiver. *Id.*

Plaintiff is correct in that the Court will not make her consent to release her medical records. (Pl.'s Letter at 5.) Plaintiff, however, is advised that she has placed her medical and mental conditions at issue in this case and has, therefore, waived any privilege over her medical records. *See Bangoura v. Andre-Boudin Bakeries*, No. C 12-3229 MMC DMR, 2012 WL 5349991, at *2 (N.D. Cal. Oct. 29, 2012) (waived privilege based on seeking $600,000 in

United States District Court
Northern District of California

emotional distress damages). The fact that Plaintiff has agreed to undergo an IME is of no consequence. (*See* Pl.'s Letter at 1.) Moreover, the Court can order her providers to release her records over her objection. *See City & Cnty. of San Francisco v. Superior Ct. In & For City & Cnty. of San Francisco*, 37 Cal. 2d 227, 232, 231 P.2d 26, 28 (1951) ("The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.")

Plaintiff raises other arguments that are unavailing. First, Apple is not required to propound discovery on Plaintiff before or in lieu of subpoenaing medical records from her providers. *See id.* at 3. Second, Plaintiff's assertion that Apple should have no difficulty subpoenaing medical records from wholly owned subsidiary AC Wellness Medical Group is not well taken, because that entity is presumably bound by the same privacy requirements as other medical providers. *See id.* at 4.

Finally, based on a cursory review, the Court takes no issue with Apple's Attachment A to the proposed stipulation. (Def.'s Letter, Ex. A at 9.) If those categories of medical records are sought by way of subpoena, the Court is inclined to permit the discovery of same.

Accordingly, while the Court finds this dispute technically premature, since no subpoena has been served, Plaintiff has put her medical and mental conditions "in controversy," such that her medical records are discoverable. The parties are ordered to further meet and confer regarding executing an authorization to release the medical records sought. If Plaintiff refuses to authorize release, Apple should subpoena the records, and, if it is unsuccessful, may file a discovery letter and proposed order compelling Plaintiff's medical providers to release her records based on this order.

This resolves Dkt. Nos. 276 & 277.

IT IS SO ORDERED.

Dated: February 23, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

2

# EXHIBIT G

**From:** ▮▮▮▮▮▮▮▮▮▮
**Sent:** Wed, 25 Mar 2026 20:36:15 +0000
**To:** mriechert@orrick.com
**Cc:**
**Subject:** Gjovika, A - ▮▮▮▮▮▮

Good afternoon,

We have received your request but are unable to process it. A Release of Information or a court order must be in place before any information can be provided. I have attached a blank release here if needed.

To open the encrypted files, you can save to your desktop and then click to open it. A passcode will then be sent to your email address.

Thank you,

▮▮▮▮

▮▮▮▮▮▮▮▮

Health Information Specialist

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

*--SecureDelivery--*

# EXHIBIT H

# Apple Wellness Center
**Provided by AC Wellness**

March 25, 2026

**VIA EMAIL AND CERTIFIED MAIL**

Melinda Riechert, Esq.
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
mriechert@orrick.com

**Re: Objection to Subpoena for Medical Records**
*Ashley Gjovik vs Apple Inc., Case No. 23-cv-4597-EMC*
*United States District Court, Northern District of California*

Dear Ms. Riechert:

AC Wellness ("ACW") has received your subpoena dated March 12, 2026 requesting the medical records of Ashley Gjovik. ACW respectfully objects and will not produce the requested records at this time for the following reasons.

**1. The subpoena is not accompanied by a court order.** HIPAA permits a covered entity to disclose protected health information ("PHI") in response to legal process only under specific conditions. *See* 45 C.F.R. § 164.512(e). Because the subpoena was issued by counsel — not by a judge or court clerk — it does not constitute a court order for HIPAA purposes, and the streamlined disclosure pathway under 45 C.F.R. § 164.512(e)(1)(i) is unavailable.

**2. The patient has an active, unresolved objection.** Under 45 C.F.R. § 164.512(e)(1)(ii), disclosure in response to an attorney-issued subpoena requires satisfactory assurance that the patient received notice and has not objected, or that a HIPAA-qualified protective order is in place. It is ACW's understanding that the patient has raised an objection to disclosure that remains pending before the Court. ACW cannot produce PHI over an unresolved patient objection.

**3. The referenced Protective Order has not been confirmed to satisfy HIPAA requirements.** Attachment A references a Protective Order entered July 7, 2025. A protective order qualifies under HIPAA only if it expressly prohibits use of PHI outside the litigation and requires its return or destruction upon conclusion of the case. *See* 45 C.F.R. § 164.512(e)(1)(v). ACW has not yet confirmed that the July 7, 2025 Order meets both requirements and therefore cannot rely upon it as a basis for disclosure.

Should the defendant wish to pursue production of these records, ACW respectfully requests that defendant obtain a court order directed at ACW pursuant to 45 C.F.R. § 164.512(e)(1)(i). ACW will promptly comply with any properly issued court order.

Please contact the AC Wellness Privacy Officer at ████████████████████ with any questions.

Respectfully,

Michelle Nash
Privacy Officer
AC Wellness
████████████████

Apple Wellness Center

# EXHIBIT I

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Monday, April 6, 2026 3:05:15 PM (UTC-08:00) Pacific Time (US & Canada)
**To:** ███████████████████████████████████████
**Cc:** Riechert, Melinda <mriechert@orrick.com>
**Subject:** Re: Ashley Gjovik v. Apple, Inc.

**[EXTERNAL]**

Hello Ms. Licht,

I have no issue using the attached authorization. As you noted, I draft it myself. Apple has previously refused to use it but I'm not certain why as their prior feedback was incorporated into that revised draft. Accordingly, I'm signing that authorization and unless Apple further objections, I suspect that should allow your client to proceed with production.

Let me know if you need anything further from me.

Thanks,
-Ashley

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

On Monday, April 6th, 2026 at 1:03 PM, ████████████████████████████████████████████████ wrote:

> Dear Ms. Riechert:
>
> This office represents Dr. Emily Hugo with respect to the subpoena received a few days ago.  Please direct all communication to me.
>
> Dr. Hugo would like to cooperate with you despite the untimely and improper service and has asked that I reach out to you to assist in this process.  Please let me know when we can speak.
>
> In addition, as you are seeking mental health records and did not include any indication that the consumer was notified, please provide me with proof of service.
>
> Despite improper service, Dr. Hugo would like to cooperate with the subpoena; however, as a licensed psychologist, she has a legal and ethical obligation to keep client information confidential unless she receives a written authorization to release information signed by the holder of the psychotherapist patient privilege or an order from the trial court judge.

1

We ask that the parties meet and confer and provide Dr. Hugo with an agreement with respect to any disclosure of information, written authorization to release information signed by the holder of the psychotherapist patient privilege or an order from the Court.  As a licensed therapist, Dr. Hugo cannot make any legal determinations.

Attached please find an Authorization to Disclose Psychotherapy Notes.  The public docket indicates that the consumer proposed this authorization.  If the attached authorization is acceptable to you, please have consumer sign it.  Once received, Dr. Hugo will send the records to you.

Again, Dr. Hugo would very much like to cooperate with you and will comply with an order from the trial court judge or a written authorization from the holder of the psychotherapist-patient privilege.

You can email me at █████████████████████

Very truly yours,

Michele

████████████████████

Michele H. Licht, Esq.

2

## EXHIBIT A: SEPARATE AUTHORIZATION TO DISCLOSE PSYCHOTHERAPY NOTES

*Pursuant to 45 C.F.R. § 164.508(a)(2) and (b)(3)(ii), this authorization is limited exclusively to psychotherapy notes and may not be combined with any authorization for other protected health information.*

**To:** [Provider Name and Address]
**Re:** Ashley Gjøvik
**Date of Birth:** █████████
**Case:** *Ashley Gjovik v. Apple, Inc.,* U.S. District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC

I authorize the above-named Provider to disclose to Orrick, Herrington & Sutcliffe LLP (representing Defendant, Apple Inc) **psychotherapy notes**, as defined by 45 C.F.R. § 164.501, relating to my treatment from Jan. 1 2020 to present for physical and/or emotional injuries.

**Purpose:** Discovery in the above-referenced case, in which I pled mental, emotional, and physical injuries and requested compensatory and punitive damages.

**Recipients:** Orrick, Herrington & Sutcliffe LLP (for Apple Inc), Attn: Melinda Riechert, 1000 Marsh Road, Menlo Park, CA 94025; mriechert@orrick.com. Duplicate digital copies should also be sent to the Plaintiff/patient for her own review and preservation at legal@ashleygjovik.com.

**Expiration**: Unless revoked in writing, my authorization here within (requested by Apple and to accompany Apple Inc's subpoena to produce documents) shall be valid until the close of Discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC (KAW) which is scheduled to conclude on April 16. 2026 (Dkt. 274 Case Management and Pretrial Order).

**Handling of Records:** All psychotherapy notes disclosed under this authorization shall be governed in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy. This authorization allows for Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) to temporarily retain records produced, but only for permissible uses in this litigation and in compliance with relevant law, and only until the conclusion of this lawsuit (including the exhaustion of appeals).

The Defendant has agreed that within thirty days of the completion of the lawsuit, Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) will delete all records received, ensure any other authorized entities who were provided records also delete all records received, and will confirm deletion of the records to me, the Plaintiff, and the disclosing Provider.

AUTHORIZATION TO DISCLOSE HEALTH INFORMATION | PAGE 5 of 7

## NOTICE

The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to the Provider and/or Orrick, Herrington & Sutcliffe LLP, at mriechert@orrick.com and/or 1000 Marsh Road, Menlo Park, CA 94025 except to the extent that the entity has already lawfully and in good faith relied upon this authorization to disclose protected health information (PHI).

I understand that the neither the covered entity Provider to whom this authorization is directed, or the covered entity Defendant recipient, may condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization. This authorization has no legal impact on the Provider's right and ability to file objections or other papers to the court in this matter in response to the Defendant's subpoena of that Provider.

I have read the foregoing authorization and understand that it authorizes the above-named entity to disclose medical records with PHI to Orrick, Herrington & Sutcliffe LLP (on behalf of their client Apple Inc), to receive the records described within for the sole purpose of evidence discovery in *Ashley Gjovik v. Apple, Inc.*, United States District Court for the Northern District of California, Case No. 3:23-cv-04597-EMC.

Pursuant to the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56.13), any recipient of medical information disclosed under this authorization may not further disclose that information without further stipulation or court order and in accordance with applicable law. Any use or disclosure of medical information by Orrick, Herrington & Sutcliffe LLP (on behalf of Apple Inc) shall be in compliance with all other relevant local, state, and federal laws including the California Constitution and public policy.

### SIGNATURE OF PATIENT/PLAINTIFF

Ashley M. Gjovik, J.D.

Digitally signed by
Ashley M. Gjovik, J.D.
Date: 2026.04.06
15:02:51 -07'00'

_____    _____
Signature                                               Date

Ashley M. Gjovik
Date of Birth: ███████████
Phone: ███████████████
Email: ashleymgjovik@protonmail.com
Physical Address: ███████████████████
Mailing Address: 2████████████████████████

# EXHIBIT J

████████████

| | |
|---|---|
| **From:** | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| **Sent:** | Monday, April 6, 2026 3:08 PM |
| **To:** | Perry, Jessica R. |
| **Cc:** | Riechert, Melinda; Mantoan, Kathryn G.; Horton, Nicholas J.; Booms, Ryan; Weaver, Nicholas; Davidson, Sarah |
| **Subject:** | Re: RE: Gjovik v. Apple: Stipulation to Extend Discovery Cut-Off to Resolve Medical Records Issue |

**[EXTERNAL]**

Actually, the draft I wrote doesn't prohibit you from sharing those records as allowed by law so your point is also moot. I signed my draft and emailed it to you and counsel for the provider. You'll need to sort through their other objections with them yourself though --as they noted, your service and notice was flawed and insufficient otherwise.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

On Monday, April 6th, 2026 at 2:56 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Actually, are you saying that if I agree you can release the records to Apple legal and the IME for this that you'll agree to the authorization?
>
> If that's the language you're insisting on, then fine, send the redlines. As long as you confirm only people who need access will get access and they will delete it all after, then i"ll sign it.
>
> —
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> On Monday, April 6th, 2026 at 2:38 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:
>
>> Counsel,
>>
>> Please send a revised draft of a authorization you would agree to
>>
>> You've offered nothing but refusal to dismiss or cooperate
>>
>> You've also failed to identify why you want agree to the document I drafted and the provider would accept
>>
>> It appears this current escalation is simply looking for an excuse to extend discovery

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent from [Proton Mail](#) for Android.

-------- Original Message --------
On Monday, 04/06/26 at 14:23 Perry, Jessica R. <jperry@orrick.com> wrote:

Ashley,

Your statements below misrepresent the record here.

Over the course of two weeks, the parties exchanged multiple rounds of proposals and counter-proposals regarding a potential authorization. You rejected Apple's fourth proposal, objecting to language stating that we (Orrick) would be required to treat your medical records as "Confidential" pursuant to the Protective Order in this matter. Apple then offered its fifth proposal, omitting references to the Protective Order and clarifying that Orrick would be permitted to disclose your records to "employees in the Legal Department at Apple Inc. working on this matter, the health care provider conducting the IME of the Patient, court reporters and experts retained in this matter." You rejected this proposal too. We cannot agree to the authorization that you proposed because it would not permit us to disclose your medical records to appropriate individuals at Apple and experts retained by Apple.

Based on your email directly below, we understand that you will not sign the authorization that one of your providers sent us and you will not agree to the stipulation we proposed. We have therefore exhausted our efforts to try to reach resolution on this issue.

Judge Chen issued the January 13, 2026 Case Management and Pretrial Order (Dkt. No. 274), so a motion to extend the

2

deadlines set forth therein would be appropriately addressed to Judge Chen. We will proceed to file our motion.

Thank you.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, April 6, 2026 10:38 AM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Davidson, Sarah <sdavidson@orrick.com>
**Subject:** Re: Gjovik v. Apple: Stipulation to Extend Discovery Cut-Off to Resolve Medical Records Issue

**[EXTERNAL]**

Counselor,

I drafted an authoritazation i would sign and you refused to use it. I filed a Motion to the court about your refusal to use my authorization.

Your statement that I would refuse any authorization is patently false. If you would agteee to use my authorization, it sounds like there is no no need to consider any extensions.

I do not agree to any extensions and I insist Apple respond why it refuses to use an authorization it demanded and I drafted then it abandoned and now claims never occurred-- while the same matter was ruled upon and is pending objections with Judge Chen.

Further Judge Westmore ordered the parties are not to file anything further until her scheduled motion practice. I believe

3

what you are stating you plan to do would violate her court order. If you'd like to oppose her scheduling order, I believe the proper path would be filing your own Rule 72 onjections.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent from Proton Mail for Android.

-------- Original Message --------
On Monday, 04/06/26 at 08:48 Perry, Jessica R. <jperry@orrick.com> wrote:

Ashley,

Some of your medical providers have indicated they will not produce subpoenaed records absent a court order. Consistent with the Court's February 23, 2026 Order (Dkt. 291), Apple intends to seek an order compelling production from those providers as part of the omnibus motions directed by Judge Westmore. However, one of your providers sent the attached authorization that can be used in lieu of a court order. We assume based on our prior negotiations that you will not sign this authorization, but please let us know if that is not true.

Because additional time will be needed beyond the current deadlines related to expert discovery to resolve the medical records issue, we propose that the parties stipulate to extend all deadlines related to expert discovery by

4

approximately 90 days for the limited purpose of completing discovery related to your medical records. To be clear, this extension would apply solely to the discovery cut-off for third-party medical records and discovery related thereto, including Apple's independent medical examination ("IME") and subsequent expert reports. All other deadlines in the case would remain unchanged. The revised schedule would be as follows:

- **Opening Expert Reports:**

  - Current: April 16, 2026 → **Proposed: July 15, 2026**

- **Rebuttal Expert Reports:**

  - Current: May 7, 2026 → **Proposed: August 5, 2026**

- **Expert Discovery Cut-Off:**

  - Current: May 28, 2026 → **Proposed: August 26, 2026**

This would allow sufficient time to resolve the outstanding provider issues and complete expert discovery related to your medical records, including Apple's IME and related expert reports. Please let us know whether you agree with this stipulation.

Best,

Jessica

**Jessica Perry**
Partner
Orrick
Silicon Valley
T +1-650-614-7350
jperry@orrick.com

5



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communic received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Plea the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication priv received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify u the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.