Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **Ashley M. Gjovik**, *an individual*, | **Case No.** **3:23-CV-04597-EMC** |
| Plaintiff, | |
| vs. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO EXTEND DISCOVERY SCHEDULE** |
| **Apple Inc.**, *a corporation*, | |
| Defendant. | |

## PL.'s OPP. TO DEF.'S MOTION TO EXTEND DISCOVERY

1.      Apple's *Motion to Extend the Discovery Cut-Off Deadline* (Dkt. 341) asks this Court to extend the discovery schedule by three months, makes fabricated allegations against the Plaintiff with demonstrably false statements, and asserts the Plaintiff is responsible for Apple's own failure to complete basic discovery deliverables despite the Plaintiff's frequent reminders. Apple's motion should be denied.

2.      Apple's counsel, Orrick, Herrington & Sutcliffe, has been retained on this dispute since no later than August 2021—before Plaintiff was even terminated on September 9, 2021. This lawsuit was filed September 7, 2023. Apple had Plaintiff's complete medical provider list since **July 9 2024**, with supplemental contact information provided in Interrogatory responses since **August 25 2025**. In the most recent Joint Status Update, Apple suggested it was ready to complete non-expert discovery by March 31 2026 and make "initial expert disclosures" by July 9 2026. (Dkt. 269 at 12). The Court rejected Apple's proposal and issued a Case Management Scheduling Order with a Non-Expert Discovery and Expert Report Cut-Off of April 16 2026 (Dkt. 274).

3.      Despite over four years of representation, twenty months with provider information in hand, and a Jan. 13 2026 Scheduling Order providing an Expert Report deadline of April 16 2026 – Apple did not initiate the subpoena process for medical records until **March 12 2026**. Apple also spent six weeks rejecting the Plaintiff's many attempts at drafting a California law and HIPAA-compliant authorization; it intentionally served deficient subpoenas that even Apple's *own medical clinic* refused to comply with; and —as of the date of its motion—had never made a single expert disclosure under Rule 26(a)(2), never identified an IME examiner to Plaintiff, and never served Plaintiff with a Request for Production of Documents seeking medical records. Apple's proposed order reveals further misconduct. Apple seeks months of additional discovery for itself while providing that *"[t]his extension does not authorize Plaintiff to propound any additional discovery on Defendant or any other third parties."* (Dkt. 341-2.) This is a request for one-sided tactical advantage, built on Apple's own delays, requested with unclean corporate hands.

## I. THE MOTION IS PROCEDURALLY IMPROPER

4.      Apple filed a 5-page motion with a 79-page declaration. Under Civil L.R. 6-3, a motion to enlarge time is limited to 5 pages. Under this Court's Discovery Standing Order, discovery disputes must be raised in a joint letter brief of no more than three pages, with an in-person meet-and-confer certification and each party's last offer of compromise. Apple also filed this motion on April 7, 2026—one week after

Magistrate Judge Westmore issued an Discovery Order (Dkt. 327) establishing a final discovery dispute process with specific deadlines and page limits for both parties. The Magistrate said that process was designed to resolve all remaining discovery disputes. Apple's administrative motion to Judge Chen circumvents the magistrate's Order rather than filing Objections under Rule 72 regarding the restrictions.

5.      Moreover, Plaintiff raised Apple's subpoenas and medical record production protocol with the magistrate on March 26, 2026. (Dkt. 324.) The magistrate declined to address the substance, ruling without reviewing Plaintiff's evidence and without obtaining Apple's response. (Dkt. 327.) Plaintiff filed Rule 72(a) objections to that ruling on April 6, 2026 (Dkt. 337), which remain pending before this Court. Apple filed the instant motion the next day—seeking to extend discovery based on the same medical records problems that Plaintiff tried to get the court to resolve, that remain the subject of pending objections, and Apple itself created by rejecting Plaintiff's authorization and serving deficient subpoenas.

## II. LEGAL STANDARD

6.      Under Rule 16(b)(4), a schedule may be modified "only for good cause and with the judge's consent." Good cause "primarily considers the diligence of the party seeking the amendment," and "[i]f that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023). Prejudice to the opposing party "might supply additional reasons to deny a motion," but "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Kamal*, 88 F.4th at 1277. A strategic choice to delay pursuing available discovery is not diligence. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006); *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002); *Wilson v. Target Corp.* (N.D. Cal. Nov. 6, 2025).

## III. APPLE WAS NOT DILIGENT

7.      Orrick has been retained since August 2021. This case has been pending since September 2023. The parties have no discovery plan—Plaintiff has requested one since November 2024 and Plaintiff escalated the issue to the magistrate in February 2025, but still no plan exists. Further, Apple has never made a single expert disclosure under Rule 26(a)(2) and never identified an IME examiner to Plaintiff.

8.      Apple's declaration now reveals for the first time that "Defendant has retained an Independent Medical Examiner who needs to review the medical records before conducting the examination." (Perry Decl. ¶ 14.) Apple never disclosed this person under Rule 26(a)(2). Apple's position

has also shifted: in its February 10 letter, Apple told the Court that "retaining an expert is not a prerequisite to discovery" and that Apple wanted records "to assess whether an expert is necessary." (Dkt. 276 at 5.) Now Apple claims it has already retained an examiner who is waiting for records. Apple's justifications shift to fit the argument of the moment. *See Cornwell*, 439 F.3d at 1027; *Wilson* (N.D. Cal. Nov. 6, 2025).

9.      Plaintiff served initial disclosures with a full provider list on July 9, 2024, amended them September 17, 2024, and served interrogatory responses with provider information on August 25, 2025. (Exs. W, O, P.) Apple did not contact Plaintiff about subpoenas until **January 27, 2026**—eighteen months later. (Perry Decl. ¶ 10.) "Carelessness is not compatible with a finding of diligence." *Johnson*, 975 F.2d at 610. Apple had every opportunity to pursue this discovery and chose not to. *Kamal*, 88 F.4th at 1277.

10.      Apple's claim that Plaintiff produced "very limited medical records" (Perry Decl. ¶ 9) omits a critical fact: Apple never served a Request for Production of Documents asking Plaintiff for her medical records. When Plaintiff offered to produce records directly—telling Apple on the record before the magistrate, "***tell me what you need and I'll send you whatever I have that you think you want***"— Apple's counsel refused, stating: "***No, we need them from the doctors.***" (Ex. H.) Plaintiff replied: "***Well, then send your subpoenas, Melinda.***" (Ex. H.) Apple chose not to serve an RFP, refused Plaintiff's offer to produce, insisted on subpoenas, and then rejected the authorization that would have facilitated those subpoenas. Apple cannot block every path to obtaining records and blame Plaintiff for the records' absence.

11.      On February 10, 2026—eighteen months after receiving Plaintiff's provider list—Apple still had not served a single subpoena. Instead of serving them, Apple filed a discovery letter (Dkt. 276) asking the magistrate to compel Plaintiff to sign a "stipulation" to waiving her HIPAA rights. In that letter, Apple's counsel told the Court: "*In the experience of the undersigned, many medical providers—particularly mental health care providers—will not release records, even pursuant to a duly-issued subpoena, without a signed authorization from the plaintiff-patient.*" (Dkt. 276 at 1.) The magistrate noted that the dispute was "technically premature, since no subpoena has been served," and ordered the parties to "further meet and confer regarding executing an authorization to release the medical records sought." (Dkt. 291 at 2.)

12.      Plaintiff complied with the Court's order immediately, drafting a HIPAA-compliant authorization package—including a standalone psychotherapy notes authorization per 45 C.F.R. § 164.508(a)(2) and proposed Qualified Protective Order. (Dkt. 324-1 ¶ 3.) The parties exchanged revisions from Feb. 26 through March 12. Apple's declaration characterizes the impasse as Plaintiff "insisting on

limiting the scope of the records and Apple's ability to use the records." (Perry Decl. ¶ 11.) Plaintiff's provisions addressed legally required HIPAA protections—separation of psychotherapy notes, expiration dates, revocation terms, and patient notices—that Apple chose to strip out. (Dkt. 324-1 ¶¶ 4, 13.)

13.     At the February 20, 2026 discovery conference, Plaintiff offered to produce records and urged Apple to send its subpoenas. (Ex. H.) On April 6, 2026, Plaintiff signed the authorization and sent it directly to a provider, telling Apple: *"I told you guys we should have just used my authorization."* (Ex. A.) Apple's narrative that Plaintiff's "misconduct" caused the delay is contradicted by Apple's own correspondence and exhibits, years of objections on this docket, and the record before the magistrate.

14.     On March 12, Plaintiff told Apple: "***I'm still willing to sign an authorization for you to use for this request.***" (Ex. A.) Plaintiff spent hours drafting revisions to the authorization. At 8:38 PM that day, Apple rejected the authorization completely and stated they would serve the subpoenas "tomorrow." However, per Apple's own exhibit they apparently had already started serving their subpoenas on March 12 2026 (Dkt. 324-1, p.67), indicating that Apple had no intention to use the Plaintiff's authorization and was misleading her to believe Apple would knowing the Plaintiff was wasting hours of her time on pointless drafting – and Apple now blames the Plaintiff for delays based on the same misconduct by Apple.

15.     Apple was still serving subpoenas on April 6, 2026—ten days before the cutoff—and sending them to addresses without first verifying the addresses with providers. (Gjovik Decl. Ex. A at p. 2.). Plaintiff recognized Apple's strategy, telling Apple on April 6: "*It appears this current escalation is simply looking for an excuse to extend discovery*." (Gjovik Decl. Ex. B.). Two weeks ago, even Apple's own subsidiary. AC Wellness Medical Group—Apple's wholly-owned, on-campus medical clinic at Apple's Cupertino headquarters—objected to Apple's subpoena on March 25, 2026, citing three HIPAA deficiencies: (1) the subpoena was not accompanied by a court order; (2) the patient has an active, unresolved objection; and (3) the referenced Protective Order has not been confirmed to satisfy HIPAA's qualified protective order requirements. (Perry Decl. Ex. H, Dkt. 324-1, p.67).

16.     Apple knew providers would refuse. Plaintiff warned Apple the subpoenas were deficient. Plaintiff drafted an authorization that would have prevented the refusals. Apple rejected the authorization, served subpoenas anyway, and now asks the Court for more time because providers refused—exactly as predicted they would. When a party's own subsidiary refuses to comply with that party's own subpoena for the exact reasons the opposing party warned about, the resulting delay is self-inflicted by any definition.

Apple now claims that "at least three" providers have refused to produce records (Perry Decl. ¶ 13), but this is the predictable consequence of Apple's choice to serve subpoenas it knew were deficient. *See MGI Digital Tech. SA v. Duplo USA Corp.*, No. 8-22-cv-00979 (C.D. Cal. Oct. 17, 2023).

## IV. APPLE'S ACCUSATIONS ARE IMPROPER AND IRRELEVANT

17. Apple's 79-page declaration raises accusations for the first time—never through the required joint letter brief process, never before the magistrate, never after any meet-and-confer. Apple stockpiled these false and misleading accusations to provide post hoc justification for an extension it wants arising from its own delays. Even if every accusation were true—and they are not—they are irrelevant to the good cause inquiry. The focus is the *moving party's* diligence. *Kamal*, 88 F.4th at 1277; *Cornwell*, 439 F.3d at 1027. Apple's accusations do not explain why Apple waited eighteen months to subpoena providers whose information it had since July 2024. They do not explain why Apple never served an RFP for medical records. They do not explain why Apple rejected Plaintiff's authorization. They do not explain why Apple served subpoenas so deficient that its own clinic refused them. And they do not explain why Apple has not disclosed a single expert after four and a half years on this matter. Granting this motion would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier," which is Apple Inc. *Johnson*, 975 F.2d at 610; *Cornwell*, 439 F.3d at 1027.

## V. CONCLUSION

18. Apple had provider information for twenty months. Apple never served an RFP for medical records. Apple refused when Plaintiff offered to produce records directly. Apple filed a motion (Dkt. 276) instead of serving its subpoenas—telling the Court that providers would not release records without an authorization. The Court ordered the parties to negotiate an authorization. Plaintiff drafted one and exchanged revisions for two weeks. Apple consistently rejected it. Apple then served subpoenas without an authorization, knowing providers would refuse—and they did, including Apple's own clinic. Apple has made zero expert disclosures while secretly retaining an IME examiner it never identified to Plaintiff. Apple now seeks a one-sided extension while explicitly barring Plaintiff from additional discovery—without explaining what it would do with the time or why this time would be different.

19. Plaintiff's Rule 72(a) objections (Dkt. 337) regarding the medical records production protocol remain pending before this Court. Under Rule 16(b)(4), *Johnson*, *Kamal*, *Cornwell*, and this Court's Standing Order, Apple has not demonstrated diligence. The motion should be denied.

Declaration of Ashley M. Gjovik filed concurrently. Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed April 8 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816