Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK**, *an individual*,

    Plaintiff,

    vs.

**APPLE INC.**, *a corporation,*

    Defendant.

**CASE NO.**

**3:23-CV-04597-EMC**

**PLAINTIFF'S DECLARATION IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO EXTEND DISCOVERY SCHEDULE**

# PL.'s DECLARATION IN SUPPORT OF PL.'s OPP. TO DEF.'s MOTION TO EXTEND DISCOVERY

I, Ashley M. Gjovik, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action. I am proceeding in propria persona. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2. I submit this declaration in support of my Opposition to Defendant Apple Inc.'s Administrative Motion to Extend the Discovery Cut-Off Deadline (Dkt. 341). The exhibits attached hereto are true and correct copies of the referenced documents.

3. Attached hereto as **Exhibit A** is a true and correct copy of email correspondence dated April 6, 2026, from Plaintiff to counsel for her medical provider, copying Apple's counsel Melinda Riechert, transmitting Plaintiff's signed medical records authorization and a related email to Apple's counsel noting that Apple had been sending subpoenas to unverified addresses.

4. Attached hereto as **Exhibit B** is a true and correct copy of email correspondence dated April 6, 2026, from Plaintiff to Apple's counsel Jessica R. Perry, regarding Apple's request for a stipulation to extend the discovery cut-off deadline.

5. Attached hereto as **Exhibit C** is a true and correct copy of excerpts from Plaintiff's Declaration and Exhibits in Support of Discovery Letter Re. Production Protocol for Plaintiff's Medical Records, filed March 26, 2026 (Dkt. 324-1).

6. Attached hereto as **Exhibit D** is a true and correct copy of excerpts from Plaintiff's Discovery Letter Re. Production Protocol for Plaintiff's Medical Records, filed March 26, 2026 (Dkt. 324).

7. Attached hereto as **Exhibit E** is a true and correct copy of email correspondence dated March 19, 2026, from Apple's counsel Melinda Riechert to Plaintiff, giving the Plaintiff Apple's first notice of Apple's plan to serve subpoenas for Plaintiff's medical records.

8. Attached hereto as **Exhibit F** is a true and correct copy of email correspondence dated on or about March 12, 2026, from Plaintiff to Apple's counsel regarding authorizations for release of medical records.

9. Attached hereto as **Exhibit G** is a true and correct copy of the Court's Order Regarding Apple's Subpoenas for Plaintiff's Medical Records, dated February 23, 2026 (Dkt. 291).

10. Attached hereto as **Exhibit H** is a true and correct copy of excerpts from the certified transcript of the February 20, 2026 Discovery Conference before Magistrate Judge Westmore (Dkt. 301-1).

11. Attached hereto as **Exhibit I** is a true and correct copy of email correspondence between Plaintiff and Apple's counsel regarding medical record subpoenas.

12. Attached hereto as **Exhibit J** is a true and correct copy of email correspondence dated February 10, 2026, from Apple's counsel Melinda Riechert to Plaintiff regarding medical record subpoenas and the proposed stipulation for authorization.

13. Attached hereto as **Exhibit K** is a true and correct copy of email correspondence from Plaintiff to Apple's counsel regarding medical subpoenas.

14. Attached hereto as **Exhibit L** is a true and correct copy of email correspondence from Apple's counsel Melinda Riechert to Plaintiff regarding medical subpoenas.

15. Attached hereto as **Exhibit M** is a true and correct copy of email correspondence from Plaintiff to Apple's counsel regarding medical subpoenas.

16. Attached hereto as **Exhibit N** is a true and correct copy of email correspondence from Apple's counsel Melinda Riechert to Plaintiff regarding medical subpoenas.

17. Attached hereto as **Exhibit O** is a true and correct copy of email correspondence from Plaintiff to Apple's counsel regarding medical subpoenas, including references to Plaintiff's supplemental interrogatory responses identifying medical providers.

18. Attached hereto as **Exhibit P** is a true and correct copy of email correspondence dated August 1, 2025, from Plaintiff to Apple's counsel confirming inclusion of medical provider information in Plaintiff's supplemental interrogatory responses.

19. Attached hereto as **Exhibit Q** is a true and correct copy of email correspondence dated July 31, 2025, from Plaintiff to Apple's counsel regarding interrogatory responses.

20. Attached hereto as **Exhibit R** is a true and correct copy of email correspondence dated July 24, 2025, from Plaintiff to Apple's counsel regarding agreement to provide medical provider information.

21. Attached hereto as **Exhibit S** is a true and correct copy of email correspondence from Apple's counsel regarding further meet and confer on responses to Apple's First Set of Interrogatories.

22. Attached hereto as **Exhibit T** is a true and correct copy of email correspondence dated July 22, 2025, from Apple's counsel Melinda Riechert regarding Apple's interrogatories.

23. Attached hereto as **Exhibit U** is a true and correct copy of email correspondence dated July 18, 2025, from Plaintiff to Apple's counsel regarding the scope of medical records discovery.

24. Attached hereto as **Exhibit V** is a true and correct copy of email correspondence from Apple's counsel regarding further meet and confer on responses to Apple's First Set of Interrogatories pursuant to Magistrate Judge Westmore's Order.

25. Attached hereto as **Exhibit W** is a true and correct copy of email correspondence referencing the dates of Plaintiff's Initial Disclosures (served July 9, 2024) and Amended Initial Disclosures (served September 17, 2024).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 8, 2026, in San José, California.

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed April 8 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBITS

## EXHIBIT A

### Re: Ashley Gjovik v. Apple, Inc.

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Michele Licht<michelelicht@gmail.com> |
| CC | Riechert, Melinda<mriechert@orrick.com> |
| Date | Monday, April 6th, 2026 at 3:05 PM |

Hello Ms. Licht,

I have no issue using the attached authorization. As you noted, I draft it myself. Apple has previously refused to use it but I'm not certain why as their prior feedback was incorporated into that revised draft. Accordingly, I'm signing that authorization and unless Apple further objections, I suspect that should allow your client to proceed with production.

Let me know if you need anything further from me.

Thanks,
-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

---

### Re: Ashley Gjovik v. Apple, Inc.

| | |
|---|---|
| From | Ashley Gjovik <ashleymgjovik@protonmail.com> |
| To | Perry, Jessica R.<jperry@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Riechert, Melinda<mriechert@orrick.com> |
| Date | Monday, April 6th, 2026 at 2:00 PM |

I told you guys we should have just used my authorization

Are you still objecting to it and if so why?

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

On Monday, April 6th, 2026 at 1:03 PM, michelelicht@gmail.com <michelelicht@gmail.com> wrote:

## Re: Apple-Gjovik - subpoena

From    Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To    Perry, Jessica R.<jperry@orrick.com>

CC    Riechert, Melinda<mriechert@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>,
Booms, Ryan<rbooms@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
Weaver, Nicholas<nweaver@orrick.com>, Davidson, Sarah<sdavidson@orrick.com>,
Perry, Jessica R.<jperry@orrick.com>

Date    Monday, April 6th, 2026 at 2:41 PM

I used the addresses on their websites and/or prior billing statements

You were also given phone numbers where you could have contacted them to confirm prior to serving

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent from Proton Mail for Android.

-------- Original Message --------
On Monday, 04/06/26 at 14:22 Perry, Jessica R. <jperry@orrick.com> wrote:

> Ashley,
>
> The addresses you provided for some of your medical providers were inaccurate. Attached please find a notice for a subpoena to a medical provider that we will be serving today. This provider needs to be served at a location different from those in the prior notices.
>
> Thank you.

## EXHIBIT B

**Re: RE: Gjovik v. Apple: Stipulation to Extend Discovery Cut-Off to Resolve Medical Records Issue**

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | Perry, Jessica R.<jperry@orrick.com> |
| CC | Riechert, Melinda<mriechert@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Davidson, Sarah<sdavidson@orrick.com>, Perry, Jessica R.<jperry@orrick.com> |
| Date | Monday, April 6th, 2026 at 2:38 PM |

Counsel,

Please send a revised draft of a authorization you would agree to

You've offered nothing but refusal to dismiss or cooperate

You've also failed to identify why you want agree to the document I drafted and the provider would accept

It appears this current escalation is simply looking for an excuse to extend discovery

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Monday, April 6, 2026 10:38 AM
**To:** Perry, Jessica R. <jperry@orrick.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Davidson, Sarah <sdavidson@orrick.com>
**Subject:** Re: Gjovik v. Apple: Stipulation to Extend Discovery Cut-Off to Resolve Medical Records Issue

[EXTERNAL]

Counselor,

I drafted an authoritazation i would sign and you refused to use it. I filed a Motion to the court about your refusal to use my authorization.

Your statement that I would refuse any authorization is patently false. If you would agteee to use my authorization, it sounds like there is no no need to consider any extensions.

# EXHIBIT C

Document 324-1 Filed 03/26/26 | Plaintiff's Declaration & Exhibits in Support of Discovery Letter Re. Production Protocol for Plaintiff's Medical Records

## APPLE'S SUBPOENAS ARE DEFICIENT AND WILL CAUSE PROVIDER CONFUSION

3.      Apple's counsel previously told this Court that an authorization was required to obtain these records. (Dkt. 276 - *Discovery Letter Brief Regarding Subpoenas for Plaintiff's Medical Records filed by Apple Inc*) Plaintiff drafted multiple authorizations that complied with HIPAA and California law. Apple repeatedly rejected them and  instead insisted upon serving subpoenas without any authorization — leaving providers to evaluate Apple's subpoenas against the requirements of 45 C.F.R. § 164.512(e), which permits disclosure in response to a subpoena only with satisfactory assurances regarding notice or a qualified protective order. Apple's subpoena (Ex. D) contains deficiencies that Plaintiff identified, raised to Apple, and corrected in her draft authorization — corrections Apple intentionally chose to disregard.

4.      *No separation of psychotherapy notes.* Exhibit D requests "Psychotherapy notes, psychiatric and psychological reports and summaries" (item 1.e) bundled with all other records in a single demand. Under HIPAA, psychotherapy notes receive heightened protection and require a separate, standalone authorization that may not be combined with an authorization for other PHI. 45 C.F.R. § 164.508(a)(2), (b)(3)(ii). Plaintiff's draft authorization addressed this by separating psychotherapy into a standalone exhibit. (Ex. B at 5-6.) Apple rejected that draft and served a subpoena that bundles everything together. Providers — particularly therapists and psychiatrists — have a legally supportable basis to object

PLAINTIFF'S LETTER RE: MEDICAL RECORDS | CASE NO. 3:23-CV-04597 | PAGE 1

to or decline production in response to the subpoena as served.

5.    ***No protective order provided to providers.*** Exhibit D directs production as "CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025." Apple did not include a copy of the Protective Order with the subpoena. Non-party providers have to find the PACER docket and have no way to know what "CONFIDENTIAL" means under an order they have never seen — what obligations it imposes on them, who may access the records, or what the retention and destruction requirements are.

6.    ***Missing standard protections.*** Because Apple chose to serve subpoenas without an authorization, providers must independently assess whether the subpoena satisfies § 164.512(e)'s requirements for disclosure. Apple's subpoena includes no expiration date, no revocation terms, and no patient notices — protections that Plaintiff's draft authorization included and that providers expect to see before releasing PHI. The absence of these protections increases the likelihood of provider objections, delayed production, and further motion practice — all of which Plaintiff's authorization would prevent.

7.    ***No production to Plaintiff.*** Apple's subpoena directs production exclusively to Orrick. Plaintiff requested dual production in her authorization, in emails on March 12, 16, 20, and 25, and directly asked Apple: *"Is there a reason you're still refusing to use the medical authorization I drafted with the request to produce records to me directly?"* (Mar. 25, 2026 email, Ex. A.) Apple never provided a reason.

8.    ***Pre-designation of all records as Confidential for all parties.*** The last line of Exhibit D states: "All documents should be produced as CONFIDENTIAL Pursuant to the Protective Order." This is a blanket, pre-review designation — applied before any record is reviewed, to every document, regardless of content, on both parties in the litigation . The Protective Order itself (Dkt. 235, § 5.1) prohibits "mass, indiscriminate, or routinized designations." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (blanket designations without particularized showing are disfavored).

## APPLE REJECTED PLAINTIFF'S AUTHORIZATION AND PROPOSED QUALIFIED PROTECTIVE ORDER

13.    Following this Court's February 23 Order (Dkt. 291) directing further meet-and-confer, Plaintiff drafted a nine-page package that included: (a) a HIPAA-compliant authorization with a separate standalone psychotherapy notes authorization (Ex. B at 1-6); and (b) a proposed Qualified Protective Order specifically governing Plaintiff's PHI (Ex. B at 7-9). Plaintiff's proposed QPO would have resolved every issue now before the Court. It provided for dual production to both parties (¶ 3); required any subpoena to attach a copy of the order so providers would know what "Confidential" means (¶ 2); required return of records to the covered entity — not destruction by the patient — within 60 days of the conclusion of litigation (¶ 7); and explicitly preserved Plaintiff's independent right to her own records: "Plaintiff's copies of her own PHI, whether obtained through this litigation or independently, are not subject to any use restriction, disclosure restriction, confidentiality obligation, or return-or-destroy obligation under this Order" (¶ 8). It also provided for CMIA compliance (¶ 14) and required Apple to bear the burden before using designated records (¶ 11).

14.    The authorization itself corrected the deficiencies in Apple's draft: it separated psychotherapy into a standalone form per 45 C.F.R. § 164.508(a)(2); added HIPAA-required expiration dates, revocation terms, and patient notices; referenced the CMIA (Cal. Civ. Code § 56.13); identified two additional providers Apple's list was missing; and directed providers to produce duplicate copies directly to Plaintiff.

15.    The parties exchanged revisions from February 26 through March 12. Apple reinserted the disputed Protective Order throughout, removed Plaintiff's proposed QPO entirely, removed dual production to Plaintiff, changed the expiration date from the discovery cutoff to November 15, 2026, and added pre-authorization for Apple to share records with Apple's in-house legal department — which Plaintiff had previously objected to — without asking Plaintiff first. On March 12, Plaintiff sent a near-final draft and told Apple: "I'm still willing to sign an authorization for you to use for this request." (Ex. A.) The sole remaining disagreement was Apple's insistence on incorporating the disputed Protective Order. Apple rejected the draft the same afternoon and gave Plaintiff notice of intent to serve subpoenas the next day — without any authorization, despite telling this Court on February 10 that an authorization was required (Dkt. 276). Apple then waited two weeks before actually serving providers, undermining the urgency Apple invoked to abandon the authorization process.

16.    Plaintiff's providers have already communicated confusion and concern about the subpoenas. Today — March 26, 2026 — Plaintiff was contacted by a therapist who received Apple's subpoena, believed she still needed a signed patient authorization before releasing records to a non-patient third party, and had only a standard medical release form available — which would authorize release to Apple without any of the PHI protective order requirements that normally accompany litigation subpoenas for therapy records. The therapist had approximately one week to respond to Apple's demand for eleven years of records.

# EXHIBIT D

Document 324 Filed 03/26/26 | Plaintiff's Discovery Letter Re. Production Protocol for Plaintiff's Medical Records

## DECLARATION AND EXHIBITS IN SUPPORT OF
## PLAINTIFF'S DISCOVERY LETTER RE: PLAINTIFF'S MEDICAL RECORDS

I, Ashley M. Gjovik, declare as follows:

1. I am the Plaintiff in this action, proceeding in propria persona. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called as a witness.

2. On January 27, 2026, Apple's counsel first contacted me regarding medical records subpoenas. From January 27 through March 25, 2026, I exchanged extensive correspondence with Apple's counsel regarding the scope, terms, and handling of these subpoenas and a proposed patient authorization. True and correct copies of relevant portions of that correspondence, dated March 12 through March 25, 2026, are attached hereto as Exhibit A.

3. Following this Court's February 23, 2026 Order (Dkt. 291) directing further meet-and-confer regarding a medical records authorization, I drafted a nine-page package consisting of: (a) a HIPAA-compliant authorization for the release of medical records (pages 1-4); (b) a separate, standalone authorization for psychotherapy notes pursuant to 45 C.F.R. § 164.508(a)(2) (pages 5-6); and (c) a proposed Qualified Protective Order governing Plaintiff's protected health information pursuant to 45 C.F.R. § 164.512(e), FRCP 26(c), and the California Confidentiality of Medical Information Act (pages 7-9). I sent the initial version of this package to Apple's counsel on February 26, 2026, and sent a revised near-final version on approximately March 2, 2026 after incorporating feedback from Apple's counsel. A true and correct copy of my draft authorization package is attached hereto as Exhibit B.

4. On March 12, 2026, Apple's counsel sent me a redlined version of my authorization reflecting Apple's proposed changes. Apple's redline reinserted references to the disputed Protective Order (Dkt. 235) throughout; removed my proposed Qualified Protective Order (Exhibit B of the authorization) entirely; removed the provision for dual production of records directly to me as the patient; changed the expiration date from the April 16, 2026 discovery cutoff to November 15, 2026; and added a pre-authorization for Apple to share my medical records with Apple's in-house legal department — a provision Apple had never previously raised and which I had previously objected to.

5. On March 12, 2026, I responded to Apple's redline, accepted certain changes, objected to the

reinsertion of the disputed Protective Order, and told Apple's counsel: "I'm still willing to sign an authorization for you to use for this request." Apple's counsel rejected my draft the same evening, stating I had made "a number of significant changes," and gave me notice that Apple intended to serve subpoenas the next day without any authorization. A true and correct copy of this is attached hereto as Exhibit C.

6. Apple gave me notice of intent to serve subpoenas on approximately March 12-13, 2026, but did not begin actually serving providers until a couple days ago.

7. Apple's subpoenas include an Attachment A that directs providers to produce all records as "CONFIDENTIAL Pursuant to the Protective Order entered by the Court on July 7, 2025." Based on my review of the subpoena notice, Apple did not include a copy of the Protective Order with the subpoena. A true and correct copy of Apple's Notice of Subpoena to AC Wellness Medical Group, including the subpoena form and Attachment A, is attached hereto as Exhibit D.

8. AC Wellness Medical Group is Apple's wholly-owned subsidiary, located at 20730 Valley Green Drive, Cupertino, CA 95014 — on Apple's corporate campus. AC Wellness is the only provider on Apple's subpoena list with records going back to 2015 and the only provider that would have records under my prior surname, Ashley Henderson. No other provider listed would have records, Apple was informed of this repeatedly, and Apple insists on the current temporal range and surnames.

9. On March 25, 2026, Apple's counsel Melinda Riechert stated in email: "We will send the records we receive to you as we receive them from your health care providers and will not add a confidentiality designation. But just because you provided confidential information to your health care providers does not release you from your confidentiality obligations, so you must continue to keep the information confidential." I asked Apple's counsel to explain the contradiction between this statement and the subpoena's directive to providers to produce all records as "CONFIDENTIAL" under the Protective Order. Apple did not address this. These emails are included in Exhibit A.

10. On March 25, 2026, I also asked Apple's counsel: "Is there a reason you're still refusing to use the medical authorization I drafted with the request to produce records to me directly?" Apple did not respond to this question. This email is included in Exhibit A.

11. On March 26, 2026, I was contacted by one of my healthcare providers — a therapist — who had received Apple's subpoena. The therapist indicated she believed she still needed a signed patient authorization before releasing therapy records to a non-patient third party and had only a standard

medical release form available, which would authorize release to Apple without any of the protections that typically accompany litigation-related disclosure of therapy records. The therapist indicated she had approximately one week to respond to Apple's demand.

12. Throughout the meet-and-confer process, I repeatedly requested that Apple include a provision for dual production — directing providers to send copies of records directly to me in addition to Apple's counsel. I made this request in my February 26, 2026 draft authorization, in emails on March 12, March 16, March 20, and March 25, 2026. Apple refused each time without providing any explanation for refusing dual production.

13. I identified and corrected the following deficiencies in Apple's proposed authorization during the meet-and-confer process: a. Apple's draft did not separate the psychotherapy notes authorization from the general medical records authorization, as required by 45 C.F.R. § 164.508(a)(2). I created a standalone psychotherapy authorization as Exhibit A to the authorization (Ex. B at 5-6). b. Apple's draft did not include a HIPAA-required expiration date. I added the discovery cutoff date of April 16, 2026. c. Apple's draft did not include revocation terms or patient notices required by HIPAA. I added both. d. Apple's draft did not reference the California Confidentiality of Medical Information Act. I added references to Cal. Civ. Code § 56.13. e. Apple's draft did not include any provision for production of records to me as the patient. I added dual production. f. Apple's subpoena list was missing two providers — MD Live and Atrius Health — which I identified in my February 26, 2026 supplemental disclosures. g. Apple's draft did not include or reference any Qualified Protective Order for PHI. I drafted a complete proposed QPO as Exhibit B to the authorization (Ex. B at 7-9).

14. I am prepared to sign the authorization attached as Exhibit B if the Court directs Apple to use it or include a dual-production provision in its subpoenas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 26, 2026, in Alviso, San Jose, California.

Respectfully submitted,

## EXHIBIT E

### RE: FW: Gjovik v. Apple: Authorizations for Release of Medical Records

From    Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>, Weaver, Nicholas <nweaver@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>,
        Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>,
        harry.johnson<harry.johnson@morganlewis.com>

Date    Wednesday, March 25th, 2026 at 11:22 AM

Hello,

These logical incontinences and absurd results are exactly why I protested Apple's current plan and offered multiple other solutions including spending days drafting an authorization that Apple refused to use for no reason -- and all of my proposals were refused by Apple who insisted instead on completely unnecessary chaos and complexity.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

### Subpoenas for medical records

From    Riechert, Melinda <mriechert@orrick.com>

To      Ashley Gjovik<ashleymgjovik@protonmail.com>, Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>

CC      Booms, Ryan<rbooms@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>,
        Horton, Nicholas J.<nhorton@orrick.com>, Perry, Jessica R.<jperry@orrick.com>

Date    Thursday, March 19th, 2026 at 9:54 PM

Ashley

Attached please find two notices for subpoenas to medical providers that we will be serving tomorrow.

**Melinda Riechert**

# NOTE: INTERROGATORIES

Response to Defendant's Special Interrogatories Set #1, Q.2 Response Served: Aug.25 2025 Amendment Served: Feb. 26 2026

## EXHIBIT F

### RE: FW: Gjovik v. Apple: Authorizations for Release of Medical Records

| | |
|---|---|
| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley Gjovik<ashleymgjovik@protonmail.com>, Booms, Ryan<rbooms@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com> |
| Date | Thursday, March 12th, 2026 at 8:50 PM |

Counselor,

I do not think any of the changes I made were significant or controversial, and it was your side that sat on these drafts for weeks -- focusing on trying to get me sanctioned rather than engaging in meet/confer on this. In a fair world, I also could bill you for my time on at least an associate rate for my revisions getting your draft into compliance with state and federal law -- which it was not when you started. You could also just remove the stuff you don't want and send it back and ask me if I'm ok with that and it would take like 10 minutes probably -- and you swore to the court an authorization of some sort was a requirement -- but now, again, you're saying its not -- so you lied your prior letter, I guess.

Ultimately I don't care if you just want to send your subpoenas raw, as long as I still get copies of my own records without any confidentiality rules.

Please confirm if you will include on your subpoenas to send me copies directly as I had put on my authorization. Otherwise, I will have to move Judge Westmore for a subpoena from me to my own providers for whatever they send you and explain that I have to do it that way because Apple still refused to negotiate an authorization and also refused to enter a medical-record specific protective order for this. Depending on what you send I may also move the court for additional relief.

—

Ashley M. Gjøvik
BS, JD, PMP

## RE: FW: Gjovik v. Apple: Authorizations for Release of Medical Records

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Booms, Ryan<rbooms@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>

Date    Thursday, March 12th, 2026 at 8:14 PM

Thank you for your revisions regarding the disputed Protective Order, however you then added an authorized transfer of documents to parties you never asked me prior about, and I have previously objected to sharing my medical records with (as the complaint literally includes me protesting Apple wanting me to release my records to Apple Inc which then asks me to do). If you want to share the records with other folks you should ask me about it and we can draft an agreement about it if its reasonable -- but that would be done between us, not pre-authorized.

I'm attaching a proposed revision that I'd be okay signing now if you guys are okay and write something simple and not outrageous for your signature / attestation. Because I'm saying "we agree" but there's nothing actually binding us to that agreement and your client is known to act erratically and reneg on its agreements, I think it would be prudent to have a signature from counsel and/or Apple on the document specific to the terms stated as "agreements." The other option is Exhibit B just being a statement from Orrick and/or Apple reiterating the things it agrees to regarding record handling etc. where I had said we agreed to whatever it is.

Let me know.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

## RE: FW: Gjovik v. Apple: Authorizations for Release of Medical Records

From    Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley Gjovik<ashleymgjovik@protonmail.com>, Booms, Ryan<rbooms@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>,
        Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>,
        harry.johnson<harry.johnson@morganlewis.com>

Date    Thursday, March 12th, 2026 at 2:46 PM

Hello Apple's lawyers,

I'm still willing to sign an authorization for you to use for this request and I feel like the attached draft is very close to a version I could willingly sign for you -- however Apple appears to be making the authorization contingent on my written approval and acquiesce to the disputed Protective Order which is currently subject to numerous federal complaints, two motion for sanctions against Apple, and year of objections.

Additionally, I object to Apple framing this authorization as urgent while having failed to serve its subpoenas or advance this matter for nearly a year, and then failing to respond to my correspondence for weeks. I further object to being given less than one business day to respond with a binary choice: agree to the disputed Protective Order or receive no authorization.

Apple represented to the court that an authorization was required and that it was blocked without one. Apple is now saying the authorization is unnecessary unless I agree to incorporate a protective order I have objected to, contested, have open NLRB charges about, Apple is facing two motions for sanctions about, and which I'm seeking to revoke. Apple's position is inconsistent with Apple's prior representations to the court regarding the authorization and creates the appearance that Apple is intentionally sabotaging meet/confer for improper reasons.

That said, I have reviewed your redline. I'm willing to accept all proposed changes except the edits re-inserting the disputed Protective Order. This drafted document would be my authorization and I do not agree that the model PO sufficient or appropriate for this purpose, as I stated repeatedly prior in this email change and in the document revisions.

For instance, the CAND model order does not mention HIPAA, PHI, or 45 C.F.R. § 164.512(e). It is a generic commercial litigation confidentiality order and accordingly should not even be in place for this public interest lawsuit. It seems to me that providers and their counsel are unlikely to treat it as a Qualified Protective Order without explicit language, and a court reviewing a provider's challenge would have to infer QPO status rather than find it stated. There's also ambiguity for the provider's rights under the order that would be resolved with a proper PHI protective order.

CMIA creates additional issues with the model order. Cal. Civil Code § 56 et seq. applies concurrently with HIPAA and is not preempted where it is more stringent. The model order contains no reference to § 56.10, no patient notification mechanism aligned with California requirements, and no acknowledgment of the CMIA's civil and criminal

penalty framework. it seems to me that a California provider's counsel presented with this order alone has a legally supportable basis to decline production.

Again, I am willing to execute an authorization without the PO references, and I remain open to negotiating a HIPAA- and CMIA-compliant qualified protective order specific to medical record production. The ball is in Apple's court and it appears the only issue left to be resolved is ensuring there's a proper PHI protective order for these records and that its not the disputed model order.

-Ashley

—

Ashley M. Gjøvik

BS, JD, PMP

Sent with Proton Mail secure email.

On Thursday, March 12th, 2026 at 1:40 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> Attached is a draft of the authorization with our proposed revisions, along with a redline comparing the last version you sent us to this revised version. Please let us know if you agree to execute the authorization in this form, and we will send you an authorization for each provider to execute today.
>
> If you do not agree to the authorization in this form, then tomorrow we will issue the subpoenas without authorizations, per Judge Westmore's February 26, 2026 order.

## EXHIBIT G

Document 291 Filed 02/23/26 | ORDER REGARDING APPLE′S SUBPOENAS FOR PLAINTIFF′S MEDICAL RECORDS Re: Dkt. Nos. 276, 277

On February 16, 2026, Plaintiff filed a response, in which she acknowledged that she was claiming severe emotional distress, that her medical and mental conditions have been put "in controversy," and that Apple is entitled to damages-related discovery. (Pl.'s Letter, Dkt. No. 277 at 5.) Even so, she argues that Apple's letter was premature because it has not served the subpoenas. *Id.* She also contends that she reserves her right to object to scope and substance of any subpoena Apple may serve, and that she cannot be forced to consent to a HIPAA waiver. *Id.*

Plaintiff is correct in that the Court will not make her consent to release her medical records. (Pl.'s Letter at 5.) Plaintiff, however, is advised that she has placed her medical and

# EXHIBIT H

Document 301-1 Filed 03/06/26 Exhibit Feb. 20 2026 Discovery Conference Certified Transcript (Dkt. 281, 288)

MS RIECHERT:  We will have talked separately about
    additional depositions.  We've talked separately about
    the medical records which you're not giving us.  We're
    going to work through -- with the court on the medical
    records --

MS GJOVIK:  I'm giving -- no.  The medical records, you have
    not given me a [request for] document production.  I've
    given you documents.  The only thing you're asking for
    is a HIPAA waiver, which I said I wouldn't give.  But
    you also are refusing to serve your own subpoenas.  Have
    you served your subpoenas yet, Melinda?  You've had them
    for a year.

THE COURT:  Ms Gjovik.

MS RIECHERT:  So we agree --

THE COURT:  Ms Gjovik -- yeah.  I don't want to get off on

A Court Reporting Transcript by Epiq

all of these other areas involved in your litigation.

I'm only here to really address --

MS GJOVIK:  I know, your Honour.

THE COURT:  -- the issue --

MS GJOVIK:  She's raising this, though, to try to prejudice the situation.  She's trying to make it sound like I'm the bad one.

THE COURT:  I'm actually not even listening to any of that. Because it's not relevant to what I'm here for.

MS GJOVIK:  Okay.

MS GJOVIK:  Yeah.

THE COURT:  And when is the discovery cut-off?  April?

MS GJOVIK:  End of April.

THE COURT:  Okay.  So you don't have too much more discovery fighting to do.

MS GJOVIK:  Well, that's why I was like, let's get through

A Court Reporting Transcript by Epiq

this stuff.  Let's just plow through it.  Like, if the whole point is they need information, let's get them that information.  And so, like, if they're saying they need medical docs, I'm like "tell me what you need and I'll send you whatever I have that you think you want.  Send your subpoenas to my doctors, get that stuff."

MS RIECHERT:  No, we need them from the doctors.

MS GJOVIK:  Well, then send your subpoenas, Melinda.

THE COURT:  Oh, I don't want to talk about that.  That's a totally different issue.

MS GJOVIK:  Okay.  But to that point --

THE COURT:  We're getting off on another tangent.

## NOTE: LETTER

Document 276 Filed 02/10/26 Defendant's Letter Brief Regarding Subpoenas for Plaintiff's Medical Records

## EXHIBIT I

**RE: Medical subpoenas**

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>

Date    Tuesday, February 10th, 2026 at 9:51 AM

Counselor,

We're still in the five day meet/confer window and I told you I would be working on this.

If you had asked for a status update prior to filing I'd tell you I've still been working non stop on the Boston issue, which are medical issues too, and that additional information was surfaced that caused additional work and that's all I've been doing -- only sleeping a few hours a night because I'm under a tight deadline that I'm still over due.

But that I was almost done and still fully intended to work with you on this matter, as I said repeatedly, and still had time within the five days to do. I also told you that I wnat to file a joint letter. You ignored all of this and filed your own letter without attempting to meet/cofer or wait for me at all, knowing I'm rushing on all of the other stuff and exploited my vulnerability on that.

You didn't even check in with me and ask me for an update then said you filed because there was no update even though I still had time and you never asked.

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

## EXHIBIT J

On Tuesday, February 10th, 2026 at 9:20 AM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley,

Having heard nothing from you regarding potential revisions to the scope of Apple's subpoena or the stipulation consenting to the release of records from providers you identified in discovery and with a discovery deadline upcoming, we will be bringing this issue to Judge Westmore.

**EXHIBIT K**

## RE: Medical subpoenas

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>

Date    Wednesday, February 4th, 2026 at 9:13 PM

Thanks, Counselor. I'm working on it and will send it as soon as I'm able to along with those updated disclosures I mentioned we should also include.

I have to finish some urgent Boston and Ch7 stuff that has a very tight deadline, and is interlinked with other stuff, and also has to be part of the Notice of Pendency/disclosures I still have to make in this case, that I mentioned to you a few weeks ago -- so I'm trying to get that done first, since its overdue and urgent.

Its very complicated and taking a lot of time, but now that I'm out of the undersea cave dungeon hostage situation, its seems like I'm working more quickly, and so I should get this to you soon.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

**EXHIBIT L**

## RE: Medical subpoenas

From    Riechert, Melinda <mriechert@orrick.com>

To      Ashley Gjovik<ashleymgjovik@protonmail.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>

Date    Wednesday, February 4th, 2026 at 2:47 PM

Ashley

You are incorrect. I sent you the stipulation and subpoena on 1/27 at 9.31 am pacific. Therefore, we followed the proper process.

You responded on 1/27 at 10.21 am Pacific that that you were not "stipulating to releasing those records", that you had already agreed to a neutral medical exam, that you have and can continue to produce records directly, and that Apple has not yet disclosed any experts.  You ended "I'm not stipulating to this"

We need to get the records from the providers. The fact that you agreed to a medical exam does not mean we don't get copies of the medical records from the providers.  Your medical records are not protected by HIPAA.  You have put your medical and mental condition at issue, and we are entitled to copies of the records from the providers. The fact that experts haven't been disclosed is irrelevant.

# EXHIBIT M

## RE: Medical subpoenas

From    Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley Gjovik<ashleymgjovik@protonmail.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>

Date    Wednesday, February 4th, 2026 at 3:12 PM

Counselor,

Your email to me specifically asked me only to stipulate to consent to waiving HIPAA rights. ("*Please let us know if you have any revisions to the Stipulation.*") You never asked to meet/confer on the scope or substance of your subpoena. You never asked me to review the subpoena, or for feedback on the content of the subpoena, or mentioning any other scope of this meet/confer beyond a stipulation to waiving HIPAA rights. You specifically framed the entire conversation as being about HIPAA rights waivers.

You cannot then claim your email was a good faith meet/confer about the scope and relevancy of the subpoena itself. And in fact, I replied to your email (while dealing with literal homelessness and emergency relocation due to hazardous conditions and imminent threats of violence - which you know I've been dealing with and which has caused me extreme distress and illness), and I raised to you again that we have an open dispute regarding the scope and relevancy of the the subpoena itself -- and you never responded. I also suggested, again, that we raise all of these issues together, in a joint letter, and you never responded -- until I asked again today for a joint letter and then you outright refused.

So to recap:
   - You never asked for feedback on the content/scope of your subpoena until today and even then, today, you
     asked only under the framing of a HIPAA waiver
   - You know I've filed objections to your prior statements of your intention of what the scope of these requests
     would be, that I feel it was likely (and now is) overbroad, not tailored, includes irrelevant information, is a
     fishing expedition, and refuses to cooperate with me to find scope we can agree on and/or to target more
     relevant and less invasive records prior to something like this
   - Today you presented a final draft subpoena to me with a statement that you plan to ask a Judge to
     order/compel those documents and yet you still refuse to discuss the scope/content of the subpoena, refuse to
     meet/confer with me about my prior concerns or ask for my feedback about your final version, and again refuse
     to write a joint letter about the scope dispute prior to you unilateral letter demanding compelled speech and
     involuntary waiver of constitutional rights as if that's the first step.

If we could actually meet/confer over video to talk about all of this we would be far more likley to come to some agreement, and at least have a coherent conversation and be prepared for a joint escalation to Judge Westmore.

At this point, I have no idea what you even plan to escalate to Judge Westmore. You said it was about compelling the HIPAA waiver -- but now you seem to imply to plan to say this five days was a meet/confer about this entire matter, which it was not. I said we should do a joint letter, which would give me some insight into what issues you're even

planning to escalate, but you're refusing a joint letter, ensuring I'm completely in the dark about 1) the issues you're raising to the court 2) the framing of those issues with overall discovery 3) what you plan to say my position is on any of these issues you plan to escalate.

If you want to do a meet/confer about this matter, I agree we should, and we should do so ideally over a video chat or phone call, but at least in an email chain that from the first day frames that meet/confer as actually covering the full scope of issues in dispute.

If you proceed to file a single letter that misrepresents our conversations, attempts to escalate issues that were never raised by you as a meet/confer topic (ie anything other than the HIPAA waiver), or otherwise abuse the five-day/single-party letter process, I will use it as an example with my own motion to ask again for the court to revoke you special no-meet-and-confer-because-we-get-stressed-that-ashley-is-stressed-so-we-dont-want-to-talk-to-her-for-our-own-anxiety-mgmt-because-were-intentionally-harrasing-her-to-cause-her-stress" process (as you expressly testified was your intent with this) and force you to comply with basic meet/confer expectations and court rules.

-Ashley

—

Ashley M. Gjøvik

BS, JD, PMP

# EXHIBIT N

## RE: Medical subpoenas

From    Riechert, Melinda <mriechert@orrick.com>

To      Ashley Gjovik<ashleymgjovik@protonmail.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
        Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
        Booms, Ryan<rbooms@orrick.com>

Date    Wednesday, February 4th, 2026 at 2:47 PM

Ashley

You are incorrect. I sent you the stipulation and subpoena on 1/27 at 9.31 am pacific. Therefore, we followed the proper process.

You responded on 1/27 at 10.21 am Pacific that that you were not "stipulating to releasing those records", that you had already agreed to a neutral medical exam, that you have and can continue to produce records directly, and that Apple has not yet disclosed any experts. You ended "I'm not stipulating to this"

We need to get the records from the providers. The fact that you agreed to a medical exam does not mean we don't get copies of the medical records from the providers. Your medical records are not protected by HIPAA. You have put your medical and mental condition at issue, and we are entitled to copies of the records from the providers. The fact that experts haven't been disclosed is irrelevant.

## EXHIBIT O

## RE: Medical subpoenas

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To    Riechert, Melinda<mriechert@orrick.com>

CC    Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>,
      Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>,
      Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>,
      Booms, Ryan<rbooms@orrick.com>

Date    Wednesday, February 4th, 2026 at 12:25 PM

Counselor,

I told you I would not stipulate to this, but I did tell you I want to file a joint letter.

Are you refusing to file a joint letter with me?

Are you insisting on filing a single-party discovery letter even when the other party is directly asking to file a joint letter with you (which is the default requirement under the court's rules)?

If so, why are you refusing to file a joint letter?

-Ashley

# NOTE: INTERROGATORIES

Response to Defendant's Special Interrogatories Set #1, Q.2 Response Served: Aug. 25 2025

(INCLUDED LIST OF PROVIDERS WITH CONTACT INFORMATION)

# EXHIBIT P

## Re: FW: [EXTERNAL] RE: Further meet and confer regarding responses to Apple's First Set of Interrogatories pursuant to Judge Westmore's order

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To      Riechert, Melinda<mriechert@orrick.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Booms, Ryan<rbooms@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>

Date    Friday, August 1st, 2025 at 7:30 PM

Ok, thanks for confirming. The response will include a lot of providers so you should not be surprised by the quantity when I serve it to you next week, nor do I expect objections from you on the quantity, as I repeatedly attempted to narrow the request.

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, August 1st, 2025 at 8:56 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> Thank you for agreeing to supplement your response to Interrogatory No. 2. To respond to your request for clarification: Interrogatory No. 2 asks you to identify all medical providers you have seen for any injury (i.e., emotional distress) that you attribute to Apple in connection with the four claims that remain in this case. All four of these claims pertain to alleged retaliation in 2021. Therefore, Interrogatory No. 2 asks you to identify all medical providers you have seen for the alleged emotional distress that you attribute to the alleged retaliation in 2021.
>
> You also referenced Interrogatory No. 1 in your July 24 email. While we may wish to discuss that interrogatory at a later time, for now, we ask that you please supplement your response to Interrogatory No. 2 as you have indicated you are willing to do. We expect to receive your supplemented response by the end of next week.

# EXHIBIT Q

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, July 31, 2025 3:54 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Booms, Ryan <rbooms@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>
**Subject:** RE: [EXTERNAL] RE: Further meet and confer regarding responses to Apple's First Set of Interrogatories pursuant to Judge Westmore's order

[EXTERNAL]

Hello,

Please respond to my request for clarification so I can then work on this and send it to you.

—

Ashley M. Gjøvik

## EXHIBIT R

On Thursday, July 24th, 2025 at 10:15 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

Hello counselor,

Thank you for sharing prior decisions from Judge Westmore on this topic. I concur that I did allege specific injuries (PTSD, anxiety, etc) that under the test cited, would elevate the claim above "garden variety" distress, even without the IIED claim.

I will provide you an initial answer with a least a limited response next week, but I still take issue with many aspects of this request, primarily arising out the broad scope and Apple's failure to front-load this request without any explanation, justification, or rationalization why the request was being made other than suggesting the neutral medical examiner would misuse a neutral exam to interrogate me about my health records. Since then, in response to my repeated requests for information, you have now, in pieces, provided some rationalization and context, and alternative reasons for the request. Had you attempted at the start to simply make your case as to why you feel this information is necessary, reasonably related to the dispute, proportional, and within precedent for requesting -- this exchange would have gone much more smoothly. I still take issue with the unlimited temporal scope, plan for the medical examiner, and the plan to subpoena all records from any doctor who also happened to see me related to mental distress -- which is basically all of my doctors.

As such, please confirm if your request also includes the emotional distress I complained of while working at Apple starting 2015, or only the distress starting with the retaliation in 2021, or some other timeframe. If you are looking back to 2015, this will be basically the same list of medical providers requested in No. 1. As stated in my complaint, Apple has caused me severe distress since the start of my employment with the corporation -- however, not all of that distress is material to this litigation.

**EXHIBIT S**

## RE: [EXTERNAL] RE: Further meet and confer regarding responses to Apple's First Set of Interrogatories pursuant to Judge Westmore's order

From    Riechert, Melinda <mriechert@orrick.com>

To      Ashley Gjovik<ashleymgjovik@protonmail.com>

CC      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Booms, Ryan<rbooms@orrick.com>,
        Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>

Date    Thursday, July 24th, 2025 at 5:54 PM

Ashley,

As you know, this meet and confer thread began on 7/17, and now it is five business days later. If we are unable to resolve the remaining issues in this thread, we expect to escalate those issues to Judge Westmore by 7/31.

**Interrogatories No. 3-5:** At this time, we are *not* asking you to provide responsive information for the full date range originally requested, though we have reserved the right to request such information in the future.

**Interrogatory No. 1:** We have not raised Interrogatory No. 1 for discussion in this meet and confer thread, though we reserve the right to seek this information at a later time.

**Interrogatory No. 2:** This interrogatory asks you to identify all medical providers that you have seen for any treatment for any injury (i.e., emotional distress) you attribute to Apple regarding your retaliation claims.

This interrogatory is not overbroad. It is narrowly tailored to seek information directly relevant to the alleged emotional distress you have placed at issue in this case. *See Amatrone v. Champion*, No. 15-CV-01356-JST, 2017 WL 1316544, at *2 (N.D. Cal. Apr. 10, 2017) ("In Interrogatories 2 and 3, Defendants requested the identities of the health care providers who consulted on or treated those injuries Plaintiffs allege arose from [Defendants' conduct]. ... Because [Plaintiff] put her health at issue by filing this lawsuit, she must identify her medical providers. The Court orders [Plaintiff] to provide the information requested in Defendants Interrogatories 2 and 3."). Apple is entitled to this information so that it may subpoena records from your medical providers and, in turn, assess your claim of emotional distress. *Dornell v. City of San Mateo*, No. CV1206065CRBKAW, 2013 WL 5443036, at *4 (N.D. Cal. Sept. 30, 2013) (denying plaintiff's motion to quash subpoena for her psychological records where plaintiff put her mental condition at issue). You may designate such records as confidential pursuant to the protective order. That order permits disclosure of confidential materials to experts, provided that they sign the "acknowledgment and agreement to be bound."

Given that Interrogatory No. 2 is clearly relevant to your claim of emotional distress, do you agree to supplement your response to identify the medical providers that you have seen for the alleged emotional distress you attribute to Apple regarding your retaliation claims, and if so by what date?

## EXHIBIT T

On Tuesday, July 22nd, 2025 at 10:02 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley,

While your email below raises several issues unrelated to Apple's Interrogatories, Set One, our response will focus on the initial subject of this meet and confer thread. If you wish to meet and confer about any of the additional issues you have raised, please do so in a separate email thread. This will help us address each topic in an organized way and avoid confusion.

**Interrogatory Nos. 3-5:** Thank you for sending supplemented responses to Interrogatory Nos. 3-5. Please note, however, that Apple did not "agree to reduce the scope" of Interrogatory Nos. 4-5, as you state in your supplemented responses; rather, we explicitly reserved the right to further meet and confer regarding Interrogatory Nos. 4 and 5, including the right to request responsive information for the full date range originally requested.

**Interrogatory No. 2:** To be clear, this interrogatory does not seek "10 years of medical records." Rather, it asks you to identify all medical providers that you have seen for any treatment for any injury (i.e., emotional distress) you attribute to Apple. All of your claims pertain to alleged retaliation in 2021; therefore, any medical providers you have seen for the alleged emotional distress you attribute to Apple would have been seen in 2021 or later.

Apple is entitled to information relevant to your claims (not just Apple's defenses). Thus, Apple is entitled to information regarding your claims of emotional distress. The information requested by Interrogatory No. 2 will be necessary for Apple to subpoena medical records so that it can evaluate, among other things, the nature and extent of your alleged injuries and potential alternative causes.

Are you willing to supplement your response to Interrogatory No. 2 to identify the medical providers that you have seen for the alleged emotional distress you attribute to Apple regarding your retaliation claims, and if so by what date?

**EXHIBIT U**

On Friday, July 18th, 2025 at 11:42 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

Per No. 2, I objected to it being overbroad generally (10 years of medical records), and after learning about why you wanted the information requested, I told you we first need to discuss the medical exam. You said you are asking for this information to subpoena all of my medical records for a decade, and specifically to provide it to a medical examiner. That is in the transcripts. We can't meet and confer about your request if we cannot discuss the scope and reason you are requesting that information. I still do not understand why Apple feels its reasonable to ask me to disclose 10 years of medical providers, for Apple subpoena all of my providers and request all of my private personal medical records for a decade, to then give them to a medical examiner to review and interrogate me about -- instead of simply providing a neutral mental exam.

Further, Apple has no affirmative defenses related to health (mental or otherwise), and I do not understand what Apple is trying to achieve through this request. I'm also asking why Apple is insisting on this request when Apple was my medical provider from 2015-2020 (five of the six years I worked at Apple) and has their own copy of the records, but you claimed Apple does not have have any of its own medical records, and I demanded you provide a response on evidence spoliation related to my medical records with Apple Wellness Center. I also pointed out I have records from my One Medical provider that Apple requested all my medical records from 2020-2021 nine days prior to firing me, so it already has all of those records too, but you also claimed Apple doesn't have those records, which made me ask again about spoliation. You still have not responded to my inquires. (this is also an ESI issue and a situation like this should be addressed in an ESI agreement).

# EXHIBIT V

**Further meet and confer regarding responses to Apple's First Set of Interrogatories pursuant to Judge Westmore's order**

From    Riechert, Melinda <mriechert@orrick.com>

To      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Ashley Gjovik<ashleymgjovik@protonmail.com>

CC      Booms, Ryan<rbooms@orrick.com>, Perry, Jessica R.<jperry@orrick.com>,
        Mantoan, Kathryn G.<kmantoan@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>,
        Horton, Nicholas J.<nhorton@orrick.com>

Date    Thursday, July 17th, 2025 at 12:29 PM

Ashley

We write to further meet and confer regarding your responses to Apple's First Set of Interrogatories and request you provide complete responses. In particular:

- Interrogatory No. 2 ("Identify all medical providers that you have seen for any treatment for any injury you attribute to Defendant regarding [your claims]."): In your response, you referenced the medical providers identified in your initial disclosures. During our 5/2/2025 meet and confer, however, you indicated that you would need some time to determine whether all of the medical providers identified in your initial disclosures relate to your emotional distress damages under your remaining claims. Are you now prepared to respond, and if so by what date?

- Interrogatory No. 3 ("Identify all individuals or entities for whom you have worked or currently work ... since the termination of your employment with Defendant."): During our 5/2/2025 meet and confer, you said that you would provide the "names, times, and amount made on each" by 5/9/2025. In a 5/23/2025 email, you appeared to agree that your updates to your responses to Apple's Interrogatories, Set One "would now be overdue." Do you intend to supplement your response per your agreement on 5/2/2025, and if so by what date?

- Interrogatories No. 4 ("State the names of all social media platforms you have posted on since March 1, 2021.") and No. 5 ("State each username you have used for each social media platform identified in response to Interrogatory No. 4."): During our 5/2/2025 meet and confer, you indicated that you would be willing to provide responsive information at least for the period 6/1/2021 to 9/10/2021. Are you still willing to provide this information, and if so by what date? We reserve all rights to pursue responsive information for the full date range, but appreciate you promptly providing the information you agree is responsive and discoverable.

Please consider this email the first exchange in the contemplated process pursuant to Judge Westmore's 7/2/2025 order that the parties meet and confer in writing for a period of 5 business days.

Your responses to Apple's Second Set of Interrogatories and your production in response to Apple's First Set of Requests for Production are also deficient. However, for now, we would like to focus on your responses to Apple's First Set of Interrogatories – and to bring any remaining disputes to Judge Westmore promptly – and expressly reserve all rights to return to discuss your other responses at a later point.

**EXHIBIT W**

## RE: May 30 Deposition Notice – Formal Objection and Procedural Response

From    Ashley Gjovik <ashleymgjovik@protonmail.com>

To    Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>

CC    Riechert, Melinda<mriechert@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>,
Perry, Jessica R.<jperry@orrick.com>, Luo, Ashley<aluo@orrick.com>,
Weaver, Nicholas<nweaver@orrick.com>, Quilici, Jeffrey<jquilici@orrick.com>,
Mahoney, Brian<brian.mahoney@morganlewis.com>,
Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>,
harry.johnson<harry.johnson@morganlewis.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>

Date    Thursday, May 29th, 2025 at 2:11 PM

Hello Orrick counselors,

Please find attached Plaintiff's responses and objections to Defendant's Second Set of Interrogatories, served this date in accordance with the Federal Rules of Civil Procedure.

After extensive review, Plaintiff identified numerous fundamental deficiencies in Defendant's discovery requests that required comprehensive objection and analysis. These include interrogatories seeking calculations for social media usernames, then calculations for those calculations, requests for information about prosthetics related to emotional distress claims, cross-references to non-existent interrogatories, and demands for decade-long pharmaceutical inventories bearing no relationship to the claims at issue.

Additionally, Plaintiff was compelled to address concerning revelations that emerged during our May 2, 2025 meet and confer, including Defendant's possession of Plaintiff's medical records while claiming not to have them, Plaintiff's longtime patient relationship at Apple Wellness Center, and further evidence from Defendant's own discovery production showing internal distribution of Plaintiff's private medical records. Counselors statements promising Apple does not have Plaintiff's medical records now raise a question of potential spoliation, if Defendant intentionally destroyed her medical records (which are also evidence of Defendant's culpability in her injuries from the toxic exposure).

In addition, as discussed, the prior objections are now re-served with the verification statement. They are included in the attached exhibits.

Due to the extensive time required to properly respond to these deficient discovery requests and preserve the record regarding potential spoliation and Rule 26(g) violations, Plaintiff's other pending discovery obligations will be delayed accordingly. Plaintiff will supplement her remaining responses as soon as practicable.

Plaintiff remains willing to engage in good faith discovery that complies with the Federal Rules and is proportional to the actual claims and defenses at issue in this litigation.

Thanks,
Ashley M. Gjovik

## NOTE: INITIAL DISCLOSURES:

Plaintiff sent: July 9 2024 with full list of medical providers

Plaintiff sent amended: September 17 2024, with full list of medical providers