Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

| | |
|---|---|
| **ASHLEY M. GJOVIK,** | **Case No. 23-cv-04597-EMC** |
| **Plaintiff,** | |
| **v.** | **DECLARATION OF ASHLEY M. GJOVIK IN SUPPORT OF PLAINTIFF'S 2ND ADMIN. MOTION TO AMEND ORDER** |
| **APPLE INC.,** | **[Dkt. No. 345]** |
| **Defendant.** | |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

## SERVICE OF SUBPOENAS

1. I am the Plaintiff in this action and make this declaration of my own personal knowledge.

2. On April 2, 2026, I obtained four subpoenas duces tecum from the Clerk of Court for the Northern District of California, directed to the following non-parties: (a) Kate Juvinall; (b) Northeastern University; (c) Wikimedia Foundation; and (d) X Corp (formerly Twitter, Inc.).

3. On April 3, 2026, I served all four subpoenas via United States Postal Service Priority Mail with Signature Confirmation. The subpoenas directed to X Corp, Wikimedia Foundation, and Northeastern University were served on the respective entities' registered agents and offices. The subpoena directed to Kate Juvinall was served at her personal residence address.

4. All four subpoenas were confirmed delivered on April 6, 2026, as reflected in the USPS proof-of-delivery receipts attached to the respective exhibits. Each subpoena set a production date of April 10, 2026.

## Subpoena to Kate Juvinall

5. On April 10, 2026, at approximately 11:36 AM, I received an email from Janie Crowley, a legal assistant at Long & Levit LLP in San Francisco, stating that the firm was serving "Non-Party Kate Juvinall's Objection to Plaintiff Ashley M. Gjovik's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action." A true and correct copy of this email, the attached objection, the subpoena, the USPS shipping label, and the proof of delivery are attached hereto as **Exhibit A**.

6. The Juvinall subpoena seeks records relating to social media accounts used to target the Plaintiff, including the Twitter/X account "Beezie Wacks" (@beezie_wacks) and associated accounts, as well as personal communications between Ms. Juvinall and Apple Inc. or Orrick, or with the Plaintiff herself, relating to the Plaintiff and the matters in this litigation.

7. On January 31, 2025, I filed a Motion to Disqualify Orrick, Herrington & Sutcliffe LLP (Dkt. No. 156), which raised issues including defense counsel's role in witness intimidation and retaliation – including an extensive social media harassment campaign, which is alleged in all complaints for this litigation, concealment of material evidence, and fraud on the Court. In or around February 2025—contemporaneous with the filing of that motion—Ms. Juvinall withdrew from this case and departed Orrick entirely. It appears she still has not joined another firm and assumably entered some settlement agreement with Orrick with her termination during the Motion to Disqualify.

8. In August 2025, I informed Apple's lead counsel, Melinda Riechert, of my intent to subpoena records relating to the "Beezie Wacks" Twitter account and Ms. Juvinall. In an August 18, 2025 email, I informed counsel that I intended to request a subpoena for Twitter/X payment records for the "Beezie Wacks" promoted tweets, and that depending on what payment information was revealed, I would then move for a subpoena of Orrick and/or Ms. Juvinall. I noted Ms. Juvinall's departure from Orrick and the suspicious timing. Ms. Riechert responded the same day, stating: "Your assumptions are completely unfounded. Any attempt to subpoena records or testimony from Orrick or Kate Juvinall is baseless and we

will object." A true and correct copy of this email exchange is included in Exhibit A.

9.    Notably, Ms. Juvinall has now retained outside counsel—Long & Levit LLP—to object to the subpoena, rather than relying on Orrick or Apple's counsel to do so on her behalf. Apple's counsel also did not include objections to this subpoena in their final list of discovery objections due April 9 2026. This all suggests that Ms. Juvinall's interests may be adverse to Orrick's and Apple's, further underscoring the relevance of the records sought.

10.    Ms. Juvinall's objection, served through outside counsel, indicates that formal service of process will be required before she will comply with the subpoena. Effectuating formal service will take at least one additional week, after which additional time will be needed for Ms. Juvinall to compile and produce responsive documents.

### Subpoena to Northeastern University

11.    On April 10, 2026, at approximately 11:17 AM, I received an email from Maria Torres-Masferrer, a legal support assistant at Seyfarth Shaw LLP in Los Angeles, attaching "Objections to Gjovik Subpoena." A true and correct copy of this email, the subpoena, the USPS shipping label, and the proof of delivery are attached hereto as **Exhibit B**.

12.    The Northeastern University subpoena seeks, among other things: (a) all documents produced or to be produced by Northeastern to Apple in response to Apple's own January 28, 2026 subpoena to Northeastern (a copy of which is attached as part of Exhibit B); (b) employment records including positive performance evaluations and records relating to Plaintiff's termination while on protected medical leave; and (c) all communications between Northeastern and Apple or Orrick relating to Plaintiff.

13.    Apple itself subpoenaed Northeastern University on or about January 28, 2026, seeking Plaintiff's personnel file, employment records, compensation records, and communications relating to Apple and the Plaintiff's termination. Plaintiff objected to Apple's subpoena in a January 21, 2026 email exchange with Apple's counsel on multiple grounds, including that Apple had not first sought these records from Plaintiff, that the subpoena constituted further retaliation, and that Plaintiff was on protected medical leave when Northeastern terminated her – and stated if Apple filed their subpoena she would object and file her own subpoena. Apple did not tell the Plaintiff they served their subpoena until March 27 2026 but

did serve it, allegedly, on January 28, 2026. These email exchanges are attached as part of Exhibit B.

14.    Northeastern's objection, served through outside counsel, indicates that formal service of process will be required before Northeastern will comply. Effectuating formal service on an out-of-state institution will take at least one additional week, after which additional time will be needed for Northeastern to compile and produce responsive documents.

## Subpoena to the Wikimedia Foundation

15.    On April 10, 2026, at approximately 9:17 AM, I received an email from Zoe Kossak, Associate Counsel at the Wikimedia Foundation, acknowledging receipt of the subpoena and requesting an extension of fifteen calendar days to respond. Ms. Kossak stated that the Foundation would "require additional time to review the request in accordance with the Foundation's Privacy Policy and the Data Retention Guidelines, and coordinate with the internal teams." A true and correct copy of this email, the subpoena, the USPS shipping label, the proof of delivery, and the attached exhibits to the subpoena are attached hereto as **Exhibit C**.

16.    The Wikimedia Foundation subpoena seeks nonpublic records relating to several Wikipedia user accounts that were identified as sockpuppet (intentionally fake and misleading) accounts used to edit articles about Plaintiff, targeting the claims in this litigation, her NLRB charges, and her professional reputation. Wikipedia's own internal Sockpuppet Investigation confirmed many of the accounts are linked and that one of the master accounts, (someone who previously worked in Apple's Legal & Global Security organization), was permanently banned by the community for sockpuppetry and for evading an Arbitration Committee interaction ban relating to the Plaintiff's Wikipedia article. The subpoena seeks IP addresses, registration information, CheckUser records, and related account data that would identify the individual(s) operating these accounts.

17.    The Wikimedia Foundation accepted service via mail. Its fifteen-day extension request would place its earliest response date at approximately April 25, 2026—nine days past the current April 16, 2026 cutoff.

## Subpoena to X Corp (formerly Twitter, Inc.)

18.    On April 3, 2026, I served a subpoena on X Corp (formerly Twitter, Inc.) via its registered agent, CT Corporation, at 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203. The subpoena was sent via

USPS Priority Mail with Signature Confirmation (tracking number 9410 8301 0935 5008 9854 39) and was confirmed delivered on April 6, 2026, at 12:04 PM, signed by "J DLR." A true and correct copy of the subpoena, the USPS shipping label, the proof of delivery, and the attached schedule and exhibits are attached hereto as **Exhibit D**.

19. The X Corp subpoena seeks non-content transactional records relating to a specific paid Twitter promotion (a "Promoted Tweet") targeting Plaintiff that was published on or about September 10, 2021, shortly after Plaintiff's termination from Apple. The promoted post, by the account @beezie_wacks, contained harassing content directed at Plaintiff by name. The subpoena seeks payment records, IP addresses, and account identification for the account that purchased the promotion. The subpoena specifically limits its requests to non-content records permissible under the Stored Communications Act, 18 U.S.C. §§ 2701–2712.

20. As of the date of this declaration, X Corp has not responded to the subpoena in any manner.

## Plaintiff's Diligence

21. I obtained all four subpoenas from the Clerk of Court on April 2, 2026. I prepared and mailed all four subpoenas on April 3, 2026. All four were confirmed delivered on April 6, 2026—ten days before the April 16 fact discovery cutoff. The responses I received on April 10, 2026, demonstrate that none of these subpoenas can be completed by April 16, and the delays are entirely attributable to the third-party recipients' own requirements.

22. I was unable to serve these subpoenas earlier due to the compressed discovery timeline caused by Apple's three-month stay of litigation (September–November 2025), the delayed publication of the case schedule (January–February 2026), and Apple's weeks-long campaign of protective order motions (February–April 2026) that required extensive opposition briefing and consumed my limited time during the discovery window.

## Service Errors and Re-Service

23. I acknowledge that I made errors in service of the subpoenas directed to Kate Juvinall and Northeastern University. I served Ms. Juvinall's subpoena by mailing it to her residential address rather than by personal service as required under Federal Rule of Civil Procedure 45. I served Northeastern University's subpoena by mailing it to the university's Office of the General Counsel rather than by

personal service. I am proceeding pro se in this action and had not previously served third-party subpoenas. I will correct these deficiencies and re-serve both subpoenas properly.

24.    The subpoenas to the Wikimedia Foundation and X Corp were served on those entities' registered agent, CT Corporation, via Priority Mail with Signature Confirmation, and both deliveries were confirmed with signatures. The Wikimedia Foundation accepted service and responded substantively. X Corp has not responded but has not objected to service.

25.    Re-serving the subpoenas presents a practical difficulty. As a pro se litigant who is not an attorney of record, I cannot sign subpoenas under Federal Rule of Civil Procedure 45(a)(3). I must therefore return to the Clerk's office at the courthouse to have new subpoenas issued with updated return dates. This process requires several hours of travel and waiting time—time I urgently need for other discovery tasks, including the opening discovery brief due April 23, 2026 under the Omnibus Discovery Order (Dkt. No. 327). If the Court were to authorize me to re-serve the existing Clerk-signed subpoenas with amended return dates, that would significantly reduce the burden and allow me to focus on the substantive discovery work this case requires.

26.    I further note that the objections from Juvinall and Northeastern were received on April 10, 2026—one day after the April 9, 2026 cutoff for raising new discovery disputes under the Omnibus Discovery Order's briefing schedule (Dkt. No. 327). I have no available procedural mechanism to bring these third-party subpoena disputes before Judge Westmore because the deadline for raising new issues has passed, and the existing briefing process extends well past the April 16 fact discovery cutoff. The only available recourse is to request an extension from Judge Chen.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 10, 2026, in San Jose, California.

Respectfully submitted,

/s/ Ashley M. Gjovik

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed April 10 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# <u>EXHIBIT A</u>

# Ashley M. Gjovik v. Apple Inc. - USDC, Northern District Case No. 3:23-CV-04597-EMC - Service Document

From    Crowley, Janie <jcrowley@longlevit.com>

To      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Ashley Gjovik<ashleymgjovik@protonmail.com>

CC      McMonigle, Joseph<jmcmonigle@longlevit.com>, Sullivan, John<jsullivan@longlevit.com>, Baig, Sarah<sbaig@longlevit.com>, Rybiy, Katherine<krybiy@longlevit.com>

Date    Friday, April 10th, 2026 at 11:36 AM

---

Good morning,

Attached please find the following service document:

- NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION.

Thank you.

Janie Crowley | Legal Assistant to

Jennifer W. Suzuki, Douglas J. Melton, Shane M. Cahill, Sarah Baig
and Jacklyn Martello-Berg



Main:  (415) 397-2222 / Direct: (415) 438-4324

465  California  Street, 5th  Fl. San Francisco, CA  94104

---

**278.66 KB**    1 file attached    1 embedded image

Gjovik v. Apple - Juvinall Objection to Subpoena.pdf 272.35 KB

# RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

| | |
|---|---|
| From | Riechert, Melinda <mriechert@orrick.com> |
| To | Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Ashley Gjovik<ashleymgjovik@protonmail.com> |
| CC | Booms, Ryan<rbooms@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com> |
| Date | Monday, August 18th, 2025 at 1:30 PM |

Ashley,


Your assumptions are completely unfounded. Any attempt to subpoena records or testimony from Orrick or Kate Juvinall is baseless and we will object.



**Melinda Riechert**


Partner


Orrick

Silicon Valley  Ⓥ


T 650/614-7423

M 6507591929

mriechert@orrick.com





[EXTERNAL]

Hello,

JOSEPH P. MCMONIGLE, Bar No. 66811
JOHN B. SULLIVAN, Bar No. 238306
SARAH BAIG, Bar No. 355527
Long & Levit LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        jmcmonigle@longlevit.com
              jsullivan@longlevit.com
              sbaig@longlevit.com


Attorney for Non-Party,
KATE JUVINALL

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M. GJOVIK,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 3:23-CV-04597-EMC<br><br>**NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** |

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO
PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A
CIVIL ACTION
4897-3552-1696, v. 2

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and the Local Rules ("FRCP") for the Northern District of California, non-party Kate Juvinall ("Responding Party") hereby submits the following objections and responses to Ashley M. Gjovik's ("Plaintiff's") "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" delivered on April 2, 2026 (the "Requests"), as follows:

### PRELIMINARY STATEMENT

These responses are made solely for the purposes of this action. Each answer is given subject to objections.

### GENERAL OBJECTIONS

The following General Objections apply to the subpoena and every Request propounded and are incorporated into each response by reference as if set forth fully therein. The statement of any general or specific objection herein does not act as a waiver of any other general or specific objections. The failure to include any General Objection in any specific response shall not constitute a waiver of any General Objection to that Request. Responding Party's responses to the Requests are made to the best of her current knowledge, information, and belief. Notwithstanding the responses herein set forth, Responding Party makes the following General Objections to the Requests on the following grounds:

a. The Request(s) was not properly served in multiple respects: it was served by mail and by a party, contrary to the requirements of FRCP 45 which requires personal service by a non-party.

b. Plaintiff failed to provide Responding Party with "a reasonable time to comply" as required by FRCP 45.

c. The Request(s) seek irrelevant material, and are not reasonably calculated to lead to the discovery of admissible evidence.

d. The request(s) are oppressive in that same seek the production of documents equally available to the demanding party and/or information obtainable from some other source that is more convenient, less burdensome, and/or less expensive.

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

**RESPONSE AND OBJECTIONS TO REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the creation, ownership, operation, or use of the Twitter/X account known as "Beezie Wacks" or any account using that name or a variation thereof, including but not limited to account registration information, login credentials, email addresses associated with the account, and phone numbers associated with the account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**:

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it purports to require production of documents that are public, already in Plaintiff's possession, equally available to the Plaintiff, or otherwise obtainable from other sources to which Plaintiff has access.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All documents relating to the creation, ownership, operation, or use of any social media account using the name "Mel Nayer" or any variation thereof on any platform, including but not limited to account registration information, login credentials, email addresses associated with the account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Responding Party reasserts and incorporates each of its General Objections herein by

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

reference.  Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case.  Responding Party further objects on the ground that she was not given a reasonable time to comply.  Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it purports to require production of documents that are public, already in Plaintiff's possession, equally available to the Plaintiff, or otherwise obtainable from other sources to which Plaintiff has access.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request.  Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 3:**

All documents relating to the creation, ownership, operation, or use of any social media account, on any platform, that was used to post, comment, or communicate about Ashley Gjovik between July 1 2021-current day, including but not limited to Twitter/X, Reddit, Wikipedia, Facebook, Instagram, LinkedIn, Glassdoor, Blind, and any other platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Responding Party reasserts and incorporates each of its General Objections herein by reference.  Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case.  Responding Party further objects on the ground that she was not given a reasonable time to comply.  Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it purports to require production of documents that are public, already in Plaintiff's possession, equally available to the Plaintiff, or otherwise obtainable from other sources to which Plaintiff has access.

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to the payment for, purchase of, or authorization of any "promotion," "boost," or paid advertising on Twitter/X or any other social media platform in connection with any post or content referring to or relating to Ashley Gjovik, including receipts, invoices, confirmation emails, credit card or payment account statements, and screenshots.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it purports to require production of documents that are public, already in Plaintiff's possession, equally available to the Plaintiff, or otherwise obtainable from other sources to which Plaintiff has access.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 5:**

All posts, comments, messages, replies, direct messages, or other content posted by you on any social media platform, under any account name or pseudonym, referring to or relating to Ashley

5                                                                                    Case No. 3:23-CV-04597-EMC

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

Gjovik.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it purports to require production of documents that are public, already in Plaintiff's possession, equally available to the Plaintiff, or otherwise obtainable from other sources to which Plaintiff has access.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to any Wikipedia editing, including any edits, talk page contributions, or other activity on any Wikipedia article or page referring to or relating to Ashley Gjovik, Apple Inc., or any subject matter at issue in *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC, including usernames and login credentials for any Wikipedia accounts used.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

extent it purports to require production of documents that are public, already in Plaintiff's possession, equally available to the Plaintiff, or otherwise obtainable from other sources to which Plaintiff has access.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 7:**

All communications between you and Apple Inc., its employees, agents, officers, or representatives, referring to or relating to Ashley Gjovik, from September 1, 2021 to the present, including communications sent or received after your departure from Orrick, Herrington & Sutcliffe LLP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

All communications between you and any attorney, employee, agent, or representative of

7    Case No. 3:23-CV-04597-EMC

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

Orrick, Herrington & Sutcliffe LLP, referring to or relating to Ashley Gjovik, from July 1, 2021 to the present, including communications sent or received after your departure from Orrick.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it is overly broad, burdensome, and oppressive because it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Pursuant to the foregoing objections, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 9:**

All communications between you and any third party (other than those identified in Requests 7–8) referring to or relating to Ashley Gjovik, sent or received from any account other than your Orrick work email, including but not limited to personal email accounts, social media accounts, messaging applications, or any other non-Orrick communication channel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 10:**

All documents relating to any direction, instruction, authorization, or request from Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, to you to create, operate, post from, or pay for any social media account or content referring to or relating to Ashley Gjovik.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 11:**

All documents relating to your departure from Orrick, Herrington & Sutcliffe LLP in or around February 2025, including but not limited to separation agreements, severance agreements, nondisclosure agreements, nondisparagement agreements, or any other agreement restricting your

9                                                      Case No. 3:23-CV-04597-EMC

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

ability to disclose information about your work at Orrick or about *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request because it seeks information that is protected from disclosure by the right to privacy guaranteed by the Constitution for the State of California and/or the United States Constitution. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 12:**

All documents relating to any internal investigation, review, complaint, or disciplinary action at Orrick, Herrington & Sutcliffe LLP concerning your conduct in connection with the representation of Apple Inc. in *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC, or concerning any social media activity, online activity, or communications relating to Ashley Gjovik, or related to the Motion to Disqualify Orrick, Herrington & Sutcliffe LLP in said lawsuit pending at the time of the termination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was

delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request because it seeks information that is protected from disclosure by the right to privacy guaranteed by the Constitution for the State of California and/or the United States Constitution. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request. Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 13:**

All documents you retained, copied, downloaded, or took with you upon your departure from Orrick, Herrington & Sutcliffe LLP that relate to Ashley Gjovik or to *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Responding Party reasserts and incorporates each of its General Objections herein by reference. Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case. Responding Party further objects on the ground that she was not given a reasonable time to comply. Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this

Request.  Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 14:**

All documents relating to any document retention, litigation hold, or preservation instruction you received from Orrick, Herrington & Sutcliffe LLP or Apple Inc. regarding documents related to Ashley Gjovik or *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC, and documents sufficient to show your compliance with any such instruction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Responding Party reasserts and incorporates each of its General Objections herein by reference.  Responding Party objects on the ground that service was ineffective in that it was delivered by mail and by a party to the case.  Responding Party further objects on the ground that she was not given a reasonable time to comply.  Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine.

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request.  Accordingly, Responding Party will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 15:**

All documents on any personal device, personal email account, personal cloud storage, or other non-Orrick system or account in your possession, custody, or control that relate to Ashley Gjovik or to *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Responding Party reasserts and incorporates each of its General Objections herein by reference.  Responding Party objects on the ground that service was ineffective in that it was

12                                        Case No. 3:23-CV-04597-EMC

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

delivered by mail and by a party to the case.  Responding Party further objects on the ground that she was not given a reasonable time to comply.  Responding Party also objects to this Request on the ground that it calls for information not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent that it seeks information or documents protected by the attorney-client privilege and the attorney work product doctrine

Subject to and without waiving her objections, Responding Party responds as follows: Responding Party is not in possession, custody, or control of any documents responsive to this Request.  Accordingly, Responding Party will not produce any documents in response to this Request.

Dated:  April 10, 2026

LONG & LEVIT LLP

_____

JOHN B. SULLIVAN
Attorney for Non-Party
KATE JUVINALL

Case No. 3:23-CV-04597-EMC
NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

**PROOF OF SERVICE**

I, the undersigned, declare:

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 465 California Street, 5th Floor, San Francisco, California  94104.

On April 10, 2026, I served the document(s) named below on the following attorney(s) of record and/or interested parties in the case of *Ashley M. Gjovik v. Apple Inc.,* U.S.D.C., Norther District Case No. 3:23-CV-04597-EMC.

**NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

***Plaintiff in Pro Se***

Ashley M. Gjovik
2108 N. Street, Ste. 4553
Sacramento, CA 95816
Tel:    (415) 964-6272
Email: legal@ashleygjovik.com
          ashleymgjovik@protonmail.com

☒          by transmitting via email or electronic transmission the document(s) listed above to the person(s) at the email address(es) set forth below.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 10, 2026, at San Francisco, California.



Janie Crowley

NON-PARTY KATE JUVINALL'S OBJECTION TO PLAINTIFF ASHLEY M. GROVIK'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

4897-3552-1696, v. 2

Please respond and let me know.

Also, I just noticed that during my Motion to Disqualify Orrick earlier this year, that Kate Juvinall didn't just withdraw from the case in Feb 2025, but left Orrick entirely in Feb 2025 and didn't join a new firm in April 2025. (per LinkedIn: https://www.linkedin.com/in/kate-juvinall-73ab762b/)

I'm going to guess you guys know she did some very bad things in this case and had to remove her from Orrick entirely in order to continue providing Apple representation, and since Jessica's defended Apple's retaliation cases for 20yrs+, it would make sense you'd be willing to sacrifice someone with less tenure, and since Jessica is also clearly implicated generally herself per the privilege log and interrogatory response.

At this point I'm going to assume Kate was probably Beezie, and Mel Nayer, and so on -- and as you know that is clearly not anything that would ever be protected by Attorney Client Privilege. Further, what ever credit card was used to pay Beezie's "promotions" is also not anything that could be covered by ACP or work product.

I'm going to request a subpoena for relevant records from Orrick, since assumably Apple wouldn't have copies of whatever she did directly, or would try to claim ACP if she was like texting updates to Apple counsel.

Please let me know the proper department / address / contact for where Orrick receives subpoenas for something like this. Please also continue to retain all documents related to this case, including Orrick's own documents, and also send Kate a document retention notice in case she has records on her personal devices. Please also also confirm if I should contact Kate directly or if Orrick wants me to go through them to communicate with her.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.



*Cut on dotted line.*

## Instructions

1. Please use a laser or laser-quality printer.

2. Adhere shipping label to package with tape or glue - DO NOT TAPE OVER BARCODE. Be sure all edges are secure. Self-adhesive label is recommended.

3. Place label so that it does not wrap around the edge of the package.

4. Each shipping label number is unique and can be used only once - DO NOT PHOTOCOPY.

5. Please use this shipping label on the "ship date" selected when you requested the label.

6. If a mailing receipt is required, present the article and Online e-Label Record at a Post Office for postmark.

**9405 5301 0935 5328 3897 30**

| | |
|---|---|
| Print Date: **2026-04-03** | PRIORITY MAIL® **$10.30** |
| Ship Date: **2026-04-03** | Extra Services: **$0.00** |
| | Fees: **$0.00** |
| | Total: **$10.30** |

From: **ASHLEY GJOVIK**
**2108 N ST PMB 4553**
**SACRAMENTO CA 95816-5712**

To:

**KATE ELSA JUVINALL**
**22653 CASS AVE**
**WOODLAND HILLS CA 91364-2913**

\* Commercial Pricing PRIORITY MAIL® rates apply. There is no fee for USPS Tracking® service on PRIORITY MAIL® service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | | |
|---|---|---|
| Ashley M. Gjovik | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:23-cv-04597 |
| Apple Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Kate Jovinall

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Schedule A.

| Place: Electronic mail to Ashley M. Gjovik at legal@ashleygjovik.com | Date and Time: 04/10/2026 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   4/2/26

CLERK OF COURT

_____          OR          _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Ashley Gjovik (pro se) _____ , who issues or requests this subpoena, are:
Ashley Gjovik (pro se); legal@ashleygjovik.com; 415-964-6272; 2108 N. St Ste. 4553, Sacramento, CA 95816

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# KATE JUVINALL | ATTACHMENT A

## DOCUMENTS AND RECORDS TO BE PRODUCED BY KATE JUVINALL

---

## *Ashley M. Gjovik v. Apple Inc.,*

## 23-cv-04597-EMC (N.D. Cal.)

---

### PART I:  SOCIAL MEDIA ACCOUNTS AND ACTIVITY

1. All documents relating to the creation, ownership, operation, or use of the Twitter/X account known as "Beezie Wacks" or any account using that name or a variation thereof, including but not limited to account registration information, login credentials, email addresses associated with the account, and phone numbers associated with the account.

2. All documents relating to the creation, ownership, operation, or use of any social media account using the name "Mel Nayer" or any variation thereof on any platform, including but not limited to account registration information, login credentials, email addresses associated with the account, and phone numbers associated with the account.

3. All documents relating to the creation, ownership, operation, or use of any social media account, on any platform, that was used to post, comment, or communicate about Ashley Gjovik between July 1 2021-current day, including but not limited to Twitter/X, Reddit, Wikipedia, Facebook, Instagram, LinkedIn, Glassdoor, Blind, and any other platform.

4. All documents relating to the payment for, purchase of, or authorization of any "promotion," "boost," or paid advertising on Twitter/X or any other social media platform in connection with any post or content referring to or relating to Ashley Gjovik, including receipts, invoices, confirmation emails, credit card or payment account statements, and screenshots.

5. All posts, comments, messages, replies, direct messages, or other content posted by you on any social media platform, under any account name or pseudonym, referring to or relating to Ashley Gjovik.

6. All documents relating to any Wikipedia editing, including any edits, talk page contributions, or other activity on any Wikipedia article or page referring to or relating to Ashley Gjovik, Apple Inc., or any subject matter at issue in *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC, including usernames and login credentials for any Wikipedia accounts used.

### PART II:  COMMUNICATIONS WITH APPLE INC., ORRICK, AND NORTHEASTERN UNIVERSITY

7. All communications between you and Apple Inc., its employees, agents, officers, or representatives, referring to or relating to Ashley Gjovik, from September 1, 2021 to the present, including communications sent or received after your departure from Orrick, Herrington & Sutcliffe LLP.

8.  All communications between you and any attorney, employee, agent, or representative of Orrick, Herrington & Sutcliffe LLP, referring to or relating to Ashley Gjovik, from July 1, 2021 to the present, including communications sent or received after your departure from Orrick.

9.  All communications between you and any third party (other than those identified in Requests 7–8) referring to or relating to Ashley Gjovik, sent or received from any account other than your Orrick work email, including but not limited to personal email accounts, social media accounts, messaging applications, or any other non-Orrick communication channel.

10.  All documents relating to any direction, instruction, authorization, or request from Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, to you to create, operate, post from, or pay for any social media account or content referring to or relating to Ashley Gjovik.

**PART III:  YOUR DEPARTURE FROM ORRICK AND RELATED RECORDS**

11.  All documents relating to your departure from Orrick, Herrington & Sutcliffe LLP in or around February 2025, including but not limited to separation agreements, severance agreements, nondisclosure agreements, nondisparagement agreements, or any other agreement restricting your ability to disclose information about your work at Orrick or about *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

12.  All documents relating to any internal investigation, review, complaint, or disciplinary action at Orrick, Herrington & Sutcliffe LLP concerning your conduct in connection with the representation of Apple Inc. in *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC, or concerning any social media activity, online activity, or communications relating to Ashley Gjovik, or related to the Motion to Disqualify Orrick, Herrington & Sutcliffe LLP in said lawsuit pending at the time of the termination.

13.  All documents you retained, copied, downloaded, or took with you upon your departure from Orrick, Herrington & Sutcliffe LLP that relate to Ashley Gjovik or to *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

14.  All documents relating to any document retention, litigation hold, or preservation instruction you received from Orrick, Herrington & Sutcliffe LLP or Apple Inc. regarding documents related to Ashley Gjovik or *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC, and documents sufficient to show your compliance with any such instruction.

15.  All documents on any personal device, personal email account, personal cloud storage, or other non-Orrick system or account in your possession, custody, or control that relate to Ashley Gjovik or to *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

Dated: April 2 2026

Respectfully submitted,

**/s/ Ashley M. Gjovik**

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

San José, California

(415) 964-6272

ashleymgjovik@protonmail.com

2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT B

# Gjovik v. Apple Inc. --Northeastern University Subpoena

From    Torres-Masferrer, Maria <mtorresmasferrer@seyfarth.com>

To      Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>

CC      Mora, Jennifer L<jmora@seyfarth.com>, Fisher, Robert A<RFisher@seyfarth.com>,
        Ayers-Mann, John T<JAyers-Mann@seyfarth.com>, Dieckman, Alyson D.<ADieckman@seyfarth.com>,
        Roberts, Michael<miroberts@seyfarth.com>, Hovey, Kim<KHovey@seyfarth.com>,
        Olivas, Karla<kolivas@seyfarth.com>, Carvente, Marybell<mcarvente@seyfarth.com>

Date    Friday, April 10th, 2026 at 11:17 AM

Ms. Gjovik,

Please see attached.

Best,
Maria

**Maria Torres-Masferrer** | Legal Support Assistant | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Assistant To:Lorraine H. O'Hara, David D. Jacobson, Bethany Pelliconi, Joshua Salinas, Catherine S. Feldman & John Ayers-Mann
Direct: +1-310-201-9245
mtorresmasferrer@seyfarth.com | www.seyfarth.com



CONFIDENTIALITY WARNING:  This email may contain privileged or confidential information and is for the sole use of the intended recipient(s).  Any unauthorized use or disclosure of this communication is prohibited.  If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**115.04 KB**   1 file attached

2026-04-10 Objections to Gjovik Subpoena(325184226.1).pdf  115.04 KB

SEYFARTH SHAW LLP
Jennifer L. Mora (SBN 283569)
jmora@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549


SEYFARTH SHAW LLP
John T. Ayers-Mann (SBN 348249)
jayers-mann@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219


Attorneys for Third Party
Northeastern University

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ashley Gjovik,<br><br>                Plaintiff,<br><br>    v.<br><br>Apple Inc.,<br><br>                Defendant. | Case No. 23-cv-04597-EMC<br><br>**OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY** |

Third Party Northeastern University ("Northeastern"), a non-party to this action, hereby submits the following objections and responses to the Subpoena to Produce Documents, Information, or Objects dated April 2, 2026 ("the Subpoena") and purportedly served in connection with *Gjovik v. Apple Inc.*, Case No. 23-cv-04597-EMC (N.D. Cal.) (the "Litigation"). Northeastern submits these objections pursuant to Federal Rule of Civil Procedure 45(d)(2)(B). Northeastern reserves all rights to supplement these objections and to move to quash or for a protective order.

OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY

**PRELIMINARY OBJECTION**

Northeastern objects to the Subpoena as it was improperly served. Northeastern was not personally served with the Subpoena as required by Federal Rule of Civil Procedure 45(b)(1). Service by United States Postal Service is insufficient under FRCP 45, and therefore, the Subpoena is invalid and unenforceable.

**SPECIFIC OBJECTIONS TO REQUESTS**

**REQUEST NO. 1:**

All documents produced or to be produced by Northeastern University to Defendant Apple Inc. or its counsel, Orrick, Herrington & Sutcliffe LLP, in response to the subpoena served by Apple Inc. on Northeastern University on or about January 28, 2026, in *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC (N.D. Cal.) (a copy of which is attached hereto as Exhibit A).

**RESPONSE TO NO. 1:**

Northeastern objects to Request No. 1 to the extent that it seeks information deemed confidential and subject to the Protective Order in the Litigation without regard to that designation. Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to provide the documents it supplied to counsel for Apple, Inc. and subject to the terms of the Protective Order in the Litigation.

**REQUEST NO. 2:**

Any privilege log, objection, or correspondence between Northeastern University and Apple Inc. or Orrick, Herrington & Sutcliffe LLP regarding the scope of, objections to, or production in response to the subpoena identified in Request No. 1.

**RESPONSE TO NO. 2:**

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to provide its written response and objections to the subpoena from Apple, Inc.

1

OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY

**REQUEST NO. 3:**

Any documents withheld from production to Apple Inc. in response to the subpoena identified in Request No. 1, together with a privilege log or other description of such documents sufficient to identify the basis for withholding.

**RESPONSE TO NO. 3:**

Northeastern objects to Request No. 3 as irrelevant, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Northeastern further objects to this Request as it directly seeks materials protected by the attorney-client privilege and work product doctrine.  Federal Rule of Civil Procedure 45 does not require production of documents expressly withheld as privileged.

**REQUEST NO. 4:**

Documents reflecting positive performance evaluations, commendations, awards, promotions, pay increases, or positive feedback from supervisors, colleagues, or students regarding Ashley Gjovik during her employment or contractual relationship with Northeastern University.

**RESPONSE TO NO. 4:**

Northeastern objects to Request No. 4 as overly broad, unduly burdensome, vague and ambiguous, and not proportional to the needs of this case.  Northeastern also objects to this Request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern understands this Request to seek information that is unrelated to the claims or defenses in the Litigation and instead improperly targets matters arising from Plaintiff's separate employment disputes with Northeastern.  Northeastern further objects to the extent Request No. 4 seeks the production of documents outside its possession, custody, and control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern states that it is willing to produce any formal performance evaluations provided to Gjovik without characterizing whether such evaluation is "positive."  Northeastern further states that it has no

2

OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY

documents relating to any promotion, formal commendation, award or pay increase issued to Ms. Gjovik.

## REQUEST NO. 5:

Documents reflecting Northeastern University's awareness of Ashley Gjovik's litigation with Apple Inc., her complaints or charges filed with the National Labor Relations Board about Apple or Northeastern, Northeastern University's response to the NLRB charges filed against them by Gjovik, her complaints or reports to any other government agency, her public advocacy, media appearances, or whistleblower activity, whether learned from Ms. Gjovik, from Apple Inc. or its agents, from media or public sources, or from any other source.

## RESPONSE TO NO. 5:

Northeastern objects to Request No. 5 as overly broad, unduly burdensome, and to the extent it lacks temporal limits and reasonable particularity. Northeastern further objects to this Request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in the Litigation, particularly to the extent it seeks information regarding Northeastern that is wholly unrelated to the dispute with Apple. Northeastern objects to the Request to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. Northeastern objects to this Request to the extent that it seeks information that Northeastern submitted to the National Labor Relations Board ("NLRB"). Such information is irrelevant to the Litigation as Ms. Gjovik's employment with Northeastern postdated the facts that give rise to the Litigation, and Northeastern submitted the information to the NLRB as part of its confidential investigation into Ms. Gjovik's unfair labor practice charges. Ms.Gjovik is not entitled to obtain this information via Subpoena. Northeastern further objects to Request No. 5 as vague and ambiguous as to the meaning of the terms "public advocacy," "media appearances," and "whistleblower activity."

3

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to produce copies of the unfair labor practice charges that Ms. Gjovik filed with the National Labor Relations Board.

**REQUEST NO. 6:**

All inquiries, communications, or contacts received by Northeastern University from any third party concerning Ashley Gjovik, including but not limited to reference checks, background inquiries, employment verifications, or informal inquiries from any person or entity other than Ms. Gjovik herself.

**RESPONSE TO NO. 6:**

Northeastern objects to Request No. 6 as overly broad, unduly burdensome, vague, irrelevant, speculative, and not reasonably calculated to lead to the discovery of admissible evidence.  Northeastern further objects to the extent Request No. 6 is duplicative of Request No. 18.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to provide any formal reference requests or employment verification requests regarding Ms. Gjovik received by Northeastern's Human Resources, if any.

**REQUEST NO. 7:**

All documents relating to Ashley Gjovik's request for, approval of, and status under any medical leave, family leave, FMLA leave, state-law protected leave, or disability accommodation, and any documents relating to the decision to terminate Ms. Gjovik's employment or contractual relationship while she was on any such leave, including any legal review or analysis of whether the termination complied with applicable leave protection laws.

**RESPONSE TO NO. 7:**

Northeastern objects to Request No. 7 as overly broad, unduly burdensome, and not reasonably calculated to result in the discovery of admissible evidence.  Northeastern states that this Request is wholly unrelated to this Litigation and appears to be an attempt by Ms. Gjovik to

4

obtain documents through the Subpoena in connection with her alleged claims against Northeastern. Northeastern further objects to this Request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

Subject to a properly served Subpoena and the foregoing objections, Northeastern states that it is willing to produce Ms. Gjovik's personnel file.

## REQUEST NO. 8:

Any legal memoranda, opinions, or analyses prepared by or for Northeastern University's Office of General Counsel, in-house legal department, or outside counsel regarding the decision to terminate Ashley Gjovik's employment or contractual relationship, including any analysis of legal risk, potential liability, or compliance with applicable employment, leave protection, or whistleblower protection laws.

## RESPONSE TO NO. 8:

Northeastern objects to Request No. 8 as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in the Litigation. Northeastern understands this Request to seek information that is unrelated to the claims or defenses in the Litigation and instead improperly targets matters that are not before the Court arising from Ms. Gjovik's separate employment disputes with Northeastern. Northeastern further objects to the extent this Request seeks information protected by the attorney-client privilege and work product doctrine.

## REQUEST NO. 9:

All complaints, reports, or concerns raised by Ashley Gjovik to Northeastern University regarding retaliation, blacklisting, interference, or harassment by Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any third party in connection with Ms. Gjovik's whistleblower activity, litigation with Apple Inc., or protected concerted activity.

5

OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY

**RESPONSE TO NO. 9:**

Northeastern objects to Request No. 9 as overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence in the Litigation. Northeastern further objects to this Request as vague and ambiguous as to the meaning of the terms "retaliation," "blacklisting," "interference," "harassment," "whistleblower activity," and "protected concerted activity." Northeastern also objects to the extent Request No. 9 seeks information in Plaintiff's possession, custody, or control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern states that it is willing to conduct a reasonable search for any complaints by Ms. Gjovik regarding Apple, Inc., if any.

**REQUEST NO. 10:**

Documents sufficient to identify all individuals at Northeastern University who were involved in, consulted regarding, or informed of the decision to terminate Ashley Gjovik's employment or contractual relationship, and documents sufficient to show the date, time, and manner in which that decision was made, communicated internally, and communicated to Ms. Gjovik.

**RESPONSE TO NO. 10:**

Northeastern objects to Request No. 10 as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in this Litigation. Northeastern states that this request is wholly unrelated to this Litigation and appears to be an attempt by Ms. Gjovik to obtain documents through the Subpoena in connection with her alleged claims against Northeastern. Northeastern further objects to the extent this Request seeks the production of information protected by the attorney-client privilege and work product doctrine. Northeastern also objects to Request No. 10 as it lacks temporal limits and reasonable particularity, and to the extent it seeks production of information in Plaintiff's possession, custody, or control.

6

Subject to a properly served Subpoena and the foregoing objections, Northeastern states that it is willing to produce Ms. Gjovik's personnel file.

**REQUEST NO. 11:**

All communications between Northeastern University, its employees, agents, officers, or representatives, and Apple Inc., its employees, agents, officers, or representatives, referring to or relating to Ashley Gjovik.

**RESPONSE TO NO. 11:**

Northeastern objects to the extent Request No. 11 is duplicative of Request Nos. 12, 13, and 14. Northeastern further objects to Request No. 11 as overly broad, unduly burdensome, vague and ambiguous, and lacking reasonable particularity. Northeastern also objects to Request No. 11 on the grounds that it lacks temporal, custodial, or subject matter limits such that Northeastern cannot reasonably respond to it. Northeastern further objects to this Request as speculative and not proportional to the needs of the case and as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern further objects to the extent this Request seeks production of information protected by the attorney-client privilege, common interest privilege, and work product doctrine. Northeastern also objects to Request No. 11 to the extent it seeks production of information outside its possession, custody, and control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to produce communications between it and Apple, Inc. in connection with Ms. Gjovik, if any.

**REQUEST NO. 12:**

All communications between Northeastern University, its employees, agents, officers, or representatives, and Orrick, Herrington & Sutcliffe LLP, or any of its attorneys, staff, or agents, referring to or relating to Ashley Gjovik.

**RESPONSE TO NO. 12:**

Northeastern objects to the extent Request No. 12 is duplicative of Request Nos. 11, 13, and 14. Northeastern further objects to Request No. 12 as overly broad, unduly burdensome, vague

7

and ambiguous, and lacking reasonable particularity. Northeastern also objects to Request No. 12 on the grounds that it lacks temporal, custodial, or subject matter limits such that Northeastern cannot reasonably respond to it. Northeastern further objects to this Request as speculative and not proportional to the needs of the case and as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern further objects to the extent this Request seeks production of information protected by the attorney-client privilege, common interest privilege, and work product doctrine. Northeastern also objects to Request No. 12 to the extent it seeks production of information outside its possession, custody, and control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to produce communications between it and Apple, Inc. in connection with Ms. Gjovik, if any.

**REQUEST NO. 13:**

All communications between Northeastern University's in-house legal department or Office of General Counsel, and Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, referring to or relating to Ashley Gjovik, including but not limited to communications relating to Ms. Gjovik's employment, performance, termination, leave of absence, or any legal proceeding involving Ms. Gjovik.

**RESPONSE TO NO. 13:**

Northeastern objects to Request No. 13 to the extent it is duplicative of Request Nos. 11, 12 and 14. Northeastern also objects to Request No. 13 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern understands this Request to seek information that is unrelated to the claims or defenses in the Litigation and instead improperly targets matters arising from Plaintiff's separate employment disputes with Northeastern. Northeastern also objects to this Request as it seeks communications protected by the attorney-client privilege, common interest privilege, and work product doctrine. Northeastern further objects to this Request as overly broad, unduly burdensome, vague and ambiguous, and to the

8

extent it lacks reasonable particularity.  Northeastern also objects to the extent this Request seeks production of information outside its possession, custody, and control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to produce communications between it and Apple, Inc. in connection with Ms. Gjovik, if any.

**REQUEST NO. 14:**

All communications between Northeastern University's outside counsel and Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, referring to or relating to Ashley Gjovik, including but not limited to communications relating to Ms. Gjovik's employment, performance, termination, leave of absence, or any legal proceeding involving Ms. Gjovik.

**RESPONSE TO NO. 14:**

Northeastern objects to Request No. 14 to the extent it is duplicative of Request Nos. 11, 12, and 13.  Northeastern also objects to Request No. 14 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Northeastern understands this Request to seek information that is unrelated to the claims or defenses in the Litigation and instead improperly targets matters arising from Plaintiff's separate employment disputes with Northeastern.  Northeastern also objects to this Request as it seeks communications protected by the attorney-client privilege, common interest privilege, and work product doctrine.  Northeastern further objects to this Request as overly broad, unduly burdensome, vague and ambiguous, and to the extent it lacks reasonable particularity.  Northeastern also objects to the extent this Request seeks production of information outside its possession, custody, and control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to produce communications between it and Apple, Inc. in connection with Ms. Gjovik, if any.

**REQUEST NO. 15:**

All communications between Northeastern University, its employees, agents, officers, representatives, in-house counsel, or outside counsel, and Apple Inc., Orrick, Herrington &

9

OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY

Sutcliffe LLP, or any of their attorneys, agents, or representatives, relating to the subpoena served by Apple Inc. on Northeastern University on or about January 28, 2026 in the Litigation, Gjovik v. Apple Inc., Case No. 23-cv-4597-EMC.

**RESPONSE TO NO. 15:**

Northeastern objects to Request No. 15 to the extent it is duplicative of Request No. 2.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to produce communications between it and Apple, Inc. in connection with Ms. Gjovik, if any.

**REQUEST NO. 16:**

All documents reflecting, memorializing, or relating to any meeting, telephone call, videoconference, or other communication between any representative of Northeastern University and any representative of Apple Inc. or Orrick, Herrington & Sutcliffe LLP, referring to or relating to Ashley Gjovik, including but not limited to calendar invitations, meeting notes, agendas, and summaries.

**RESPONSE TO NO. 16:**

Northeastern objects to Request No. 16 as overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern further objects to Request No. 16 to the extent it seeks the production of information protected by the attorney-client privilege, common interest privilege, or work product doctrine. Northeastern also objects to the extent Request No. 16 seeks production of documents outside its possession, custody, and control.

Subject to a properly served Subpoena and the foregoing objections, Northeastern states that there are no non-privileged documents responsive to this request.

**REQUEST NO. 17:**

All documents relating to the decision to terminate Ashley Gjovik's employment or contractual relationship with Northeastern University, including but not limited to any

10

communications with, input from, or involvement of Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives in that decision.

**RESPONSE TO NO. 17:**

Northeastern objects to Request No. 17 as duplicative of Request No. 7. Northeastern objects to Request No. 17 as overly broad, unduly burdensome, vague and ambiguous, speculative and not proportional to the needs of this case. Northeastern further objects to Request No. 17 to the extent it lacks reasonable particularity. Northeastern also objects to Request No. 17 on the grounds that it lacks temporal, custodial, or subject matter limits such that Northeastern cannot reasonably respond to it. Northeastern also objects to Request No. 17 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern understands this Request to seek information that is unrelated to the claims or defenses in the Litigation and instead improperly targets matters arising from Plaintiff's separate employment disputes with Northeastern. Northeastern further objects to the extent Request No. 17 seeks the production of documents outside its possession, custody, and control. Northeastern also objects to the extent Request No. 17 seeks production of information protected by the attorney-client privilege, common interest privilege, or work product doctrine.

Subject to a properly served Subpoena and the foregoing objections, Northeastern refers to its responses to Request Nos. 1 and 7 and states that there are no documents reflecting "communications with, input from, or involvement of Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives in" Northeastern's decision to terminate Ms. Gjovik.

**REQUEST NO. 18:**

All documents relating to any reference check, background inquiry, employment verification, or other inquiry made by or on behalf of Apple Inc. or Orrick, Herrington & Sutcliffe LLP to Northeastern University regarding Ashley Gjovik.

11

---

**RESPONSE TO NO. 18:**

Northeastern objects to Request No. 18 as overly broad, unduly burdensome, irrelevant, speculative, and not reasonably calculated to lead to the discovery of admissible evidence. Northeastern further objects to the extent Request No. 18 is duplicative of Request No. 6. Northeastern further objects to the phrase "other inquiry" as vague and ambiguous.

Subject to a properly served Subpoena and the foregoing objections, Northeastern is willing to provide any formal reference requests or employment verification requests regarding Ms. Gjovik received by Northeastern's Human Resources, if any.

DATED: April 10, 2026                          SEYFARTH SHAW LLP

By: _____
                          Jennifer Mora
                          John T. Ayers-Mann
                          Attorneys for Third Party
                          Northeastern University

12

OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY

**PROOF OF SERVICE**

STATE OF CALIFORNIA            )
                                     )   SS
COUNTY OF LOS ANGELES     )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021. On April 10, 2026, I served the within document(s):

**OBJECTIONS TO SUBPOENA RE NORTHEASTERN UNIVERSITY**

☐ I sent such document from facsimile machines (310) 201-5219 on April 10, 2026. I certify that said transmission was completed and that all pages were received and that a report was generated by said facsimile machine which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

☒ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

    Ashley Gjovik                            ***PRO PER PLAINTIFF***
                                         Email: legal@ashleygjovik.com

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on April 10, 2026, at Los Angeles, California.

                                                    Maria Torres-Masferrer

325180326v.1

![UNITED STATES POSTAL SERVICE]

April 6, 2026

Dear Ashley Gjovik:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9410 8301 0935 5008 9854 46**.

| Item Details | |
| --- | --- |
| **Status:** | Delivered to Agent, Left with Individual |
| **Status Date / Time:** | April 6, 2026, 12:15 pm |
| **Location:** | BOSTON, MA 02115 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Signature Confirmation™ |
| | Up to $100 insurance included |
| **Actual Recipient Name:** | F CLERK |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

| Shipment Details | |
| --- | --- |
| **Weight:** | 5.0oz |

| Recipient Signature | |
| --- | --- |

Signature of Recipient:
(Authorized Agent)

Address of Recipient:



Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| Ashley M. Gjovik | ) |
| *Plaintiff* | ) |
| v. | ) |
| Apple Inc. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  3:23-cv-04597

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: **Northeastern University**

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Schedule A.

| Place: Electronic mail to Ashley M. Gjovik at legal@ashleygjovik.com | Date and Time: 04/10/2026 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4/2/26

CLERK OF COURT

_____          OR          _____
*Signature of Clerk or Deputy Clerk*                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Ashley Gjovik (pro se) _____, who issues or requests this subpoena, are:

Ashley Gjovik (pro se); legal@ashleygjovik.com; 415-964-6272; 2108 N. St Ste. 4553, Sacramento, CA 95816

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# NORTHEASTERN UNIVERSITY | ATTACHMENT A

## DOCUMENTS AND RECORDS TO BE PRODUCED BY NORTHEASTERN UNIVERSITY

---

## *Ashley M. Gjovik v. Apple Inc.,*

## 23-cv-04597-EMC (N.D. Cal.)

---

### PART I:  RECORDS RESPONSIVE TO DEFENDANT'S SUBPOENA

1. All documents produced or to be produced by Northeastern University to Defendant Apple Inc. or its counsel, Orrick, Herrington & Sutcliffe LLP, in response to the subpoena served by Apple Inc. on Northeastern University on or about January 28, 2026, in *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC (N.D. Cal.) (a copy of which is attached hereto as Exhibit A).

2. Any privilege log, objection, or correspondence between Northeastern University and Apple Inc. or Orrick, Herrington & Sutcliffe LLP regarding the scope of, objections to, or production in response to the subpoena identified in Request No. 1.

3. Any documents withheld from production to Apple Inc. in response to the subpoena identified in Request No. 1, together with a privilege log or other description of such documents sufficient to identify the basis for withholding.

### PART II:  ADDITIONAL EMPLOYMENT RECORDS

4. Documents reflecting positive performance evaluations, commendations, awards, promotions, pay increases, or positive feedback from supervisors, colleagues, or students regarding Ashley Gjovik during her employment or contractual relationship with Northeastern University.

5. Documents reflecting Northeastern University's awareness of Ashley Gjovik's litigation with Apple Inc., her complaints or charges filed with the National Labor Relations Board about Apple or Northeastern, Northeastern University's response to the NLRB charges filed against them by Gjovik, her complaints or reports to any other government agency, her public advocacy, media appearances, or whistleblower activity, whether learned from Ms. Gjovik, from Apple Inc. or its agents, from media or public sources, or from any other source.

6. All inquiries, communications, or contacts received by Northeastern University from any third party concerning Ashley Gjovik, including but not limited to reference checks, background inquiries, employment verifications, or informal inquiries from any person or entity other than Ms. Gjovik herself.

7. All documents relating to Ashley Gjovik's request for, approval of, and status under any medical leave, family leave, FMLA leave, state-law protected leave, or disability accommodation, and any documents relating to the decision to terminate Ms. Gjovik's employment or contractual relationship while she was on any such leave, including any legal review or analysis of whether the termination complied with applicable leave protection laws.

8. Any legal memoranda, opinions, or analyses prepared by or for Northeastern University's Office of General Counsel, in-house legal department, or outside counsel regarding the decision to terminate Ashley Gjovik's employment or contractual relationship, including any analysis of legal risk, potential liability, or compliance with applicable employment, leave protection, or whistleblower protection laws.

9. All complaints, reports, or concerns raised by Ashley Gjovik to Northeastern University regarding retaliation, blacklisting, interference, or harassment by Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any third party in connection with Ms. Gjovik's whistleblower activity, litigation with Apple Inc., or protected concerted activity.

10. Documents sufficient to identify all individuals at Northeastern University who were involved in, consulted regarding, or informed of the decision to terminate Ashley Gjovik's employment or contractual relationship, and documents sufficient to show the date, time, and manner in which that decision was made, communicated internally, and communicated to Ms. Gjovik.

## PART III:  COMMUNICATIONS WITH APPLE INC., ITS AGENTS, AND COUNSEL

11. All communications between Northeastern University, its employees, agents, officers, or representatives, and Apple Inc., its employees, agents, officers, or representatives, referring to or relating to Ashley Gjovik.

12. All communications between Northeastern University, its employees, agents, officers, or representatives, and Orrick, Herrington & Sutcliffe LLP, or any of its attorneys, staff, or agents, referring to or relating to Ashley Gjovik.

13. All communications between Northeastern University's in-house legal department or Office of General Counsel, and Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, referring to or relating to Ashley Gjovik, including but not limited to communications relating to Ms. Gjovik's employment, performance, termination, leave of absence, or any legal proceeding involving Ms. Gjovik.

14. All communications between Northeastern University's outside counsel and Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, referring to or relating to Ashley Gjovik, including but not limited to communications relating to Ms. Gjovik's employment, performance, termination, leave of absence, or any legal proceeding involving Ms. Gjovik.

15. All communications between Northeastern University, its employees, agents, officers, representatives, in-house counsel, or outside counsel, and Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives, relating to the subpoena served by Apple Inc. on Northeastern University on or about January 28, 2026 in this action, *Gjovik v. Apple Inc.*, Case No. 23-cv-4597-EMC.

16. All documents reflecting, memorializing, or relating to any meeting, telephone call, videoconference, or other communication between any representative of Northeastern University and any representative of Apple Inc. or Orrick, Herrington & Sutcliffe LLP, referring to or relating to Ashley Gjovik, including but not limited to calendar invitations, meeting notes, agendas, and summaries.

17. All documents relating to the decision to terminate Ashley Gjovik's employment or contractual relationship with Northeastern University, including but not limited to any communications with, input from, or involvement of Apple Inc., Orrick, Herrington & Sutcliffe LLP, or any of their attorneys, agents, or representatives in that decision.

18. All documents relating to any reference check, background inquiry, employment verification, or other inquiry made by or on behalf of Apple Inc. or Orrick, Herrington & Sutcliffe LLP to Northeastern University regarding Ashley Gjovik.


Dated: April 2 2026


Respectfully submitted,


**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

**EXHIBIT A: APPLE'S SUBPOENA**

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:     +1 202 339 8400
Facsimile:     +1 202 339 8500

Attorneys for Defendant
Apple Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>                    Plaintiff,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF SUBPOENA TO NORTHEASTERN UNIVERSITY** |

TO PLAINTIFF ASHLEY GJOVIK AND HER ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Apple Inc. intends to serve the attached Subpoena on the Northeastern University, 360 Huntington Avenue, Boston, MA 02115 on January 20, 2026, or as soon thereafter as service may be effected.

Dated: January 20, 2026                                ORRICK, HERRINGTON & SUTCLIFFE LLP


_Melinda Riechert_

_____

MELINDA S. RIECHERT
Attorney for Defendant
APPLE INC.

DEFENDANT'S NOTICE OF SUBPOENA TO
NORTHEASTERN UNIVERSITY
CASE NO. 23-CV-4597-EMC

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Ashley Gjovik | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  23-cv-4597-EMC |
| | ) | |
| Apple Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Northeastern University
360 Huntington Avenue, Boston, MA 02115

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Orrick, Herrington & Sutcliffe LLP 222 Berkeley Street, Suite 2000 Boston, MA 02116 | Date and Time: 02/20/2026 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:

CLERK OF COURT

OR     *Melinda Riechert*

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant, Apple Inc. _____ , who issues or requests this subpoena, are:
Melinda Riechert (SBN 65504) Orrick, Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA 94025;
(650) 614-7400; mriechert@orrick.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 23-cv-4597-EMC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**ASHLEY GJØVIK  / ASHLEY HENDERSON**

**(Date of Birth: August 26, 1986) (Social Security No. XXX-XX-2419)**

The following records related to Ashley Gjøvik (DOB 08/26/1986):

1. Ashley Gjøvik's personnel file;

2. Documents relating to Ashley's Gjøvik's hiring or retention, including, but not limited to limited to applications, resumes, interview notes, applicant evaluations, offer letters, acceptance letters, and any contracts and/or agreements entered with Ashley Gjovik;

3. Documents relating to compensation and benefits Ashley Gjøvik received from Northeastern, including but not limited to, salary, wages, commissions or other remuneration paid to Ashley Gjovik, W-2 forms, time sheets and records of time off the job and reasons therefore, including sick leave and vacation;

4. Documents relating to any payments made to Ashley Gjøvik as an independent contractor, including but not limited to, 1099 forms, time sheets and records, and invoices for services;

5. Documents regarding Ashley Gjøvik's job performance and disciplinary record;

6. Documents sufficient to show Ashley Gjøvik's job responsibilities and scope of responsibility during her employment or the scope of services she provided pursuant to any contractual relationship with Northeastern University;

7. Documents related to Ashley Gjøvik's termination of employment, including but not limited to documents regarding the reasons for the termination and any agreements with Ashley Gjovik regarding the termination or since the termination;

8. Documents related to the termination of any contractual relationship between Ashley Gjovik and Northeastern University including but not limited to documents regarding the reasons for the termination and any agreements with Ashley Gjovik regarding the termination or since the termination;

9. All communications between Ashley Gjøvik and Northeastern University relating to Apple and Ms. Gjøvik's termination from Apple;

10. Documents regarding any complaints, criticisms, or concerns raised by Ashley Gjøvik arising from her employment or contractual relationship with Northeastern University, including, but not limited to, any legal proceeding threatened or initiated by Ashley Gjøvik against Northeastern University;

11. Any complaints, criticisms, or concerns raised about Ashley Gjøvik during her employment or contractual relationship with Northeastern University.

Pursuant to the Protective Order entered by the Court on July 7, 2025, CONFIDENTIAL documents should be designated as such. The Protective Order defines CONFIDENTIAL as "information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)."

# RE: Subpoena to Northeastern

From    Riechert, Melinda <mriechert@orrick.com>

To    Ashley Gjovik<ashleymgjovik@protonmail.com>, Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>

CC    Horton, Nicholas J.<nhorton@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>

Date    Friday, March 27th, 2026 at 12:32 PM

Ashley

The subpoena was served on Northeastern on 1/28/26.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

.

[EXTERNAL]

Hello,

You never responded. Please confirm if you served this subpoena or not, and if so, when you did. I will send you a RFP of those records and file my own subpoena to the clerk, as mentioned.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

On Wednesday, January 21st, 2026 at 12:57 PM, Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> wrote:

> Hello,
>
> First, your discovery request would likely not include documents related to any colluding between Apple and NEU because its likely any colluding was over the phone and/or between external counsel, as is typical for such things. I would need to subpoena NEU's legal dept and their third party counsel, and request those records, which I will plan to do if needed.
>
> Second, yes we will need to raise this to Judge Westmore. Subpoenaing later employers, especially with the scope of your request, is highly disfavored in California. California and 9th Circuit case law are clear that doing what you announced you want to do constitutes an individual act of denylisting and further retaliation. Further considering the government investigations and pending NEU NLRB case (partial merit was issued already as well), I believe what you plan to do would also likely violate additional labor and whistleblower protection laws.
>
> Third, regarding your statement that I wouldn't have documents that are relevant -- certainly performance reviews, compliance complaints, notice of termination, etc would be relevant? Maybe even asking me how that employment ended? Anything at all? I'm not against providing you some statement on the record about it -- but I fervently object to you subpoenaing NEU.
>
> —

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Wednesday, January 21st, 2026 at 1:28 PM, Riechert, Melinda <[mriechert@orrick.com](#)> wrote:

> Ashley
>
> We disagree that the Northeastern records are not relevant to this case. In addition, we are not required to first get information from you, and it is likely Northeastern has documents you do not have. Nor does any NLRB or DOJ matter you may have against Northeastern prevent the issuance of the subpoena. The subpoenaed documents will also confirm that Apple and Orrick were not involved in your termination from Northeastern. Likewise, there is no merit to your other objections, which you are free to raise with Judge Westmore if you want.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
>
> M 650 759 1929
>
> [mriechert@orrick.com](#)



[EXTERNAL]

Hello,

I object to your subpoena generally as there is no relation to any of Apple's stated defenses. I further object that you have not attempted to request any of this information from me directly and instead have announced you plan to request thousands of documents from an entity I worked for two years after Apple. I further object, that as you know, there's a pending NLRB and DOJ matter about that employment with NEU and may of these records underly the claims in those cases, of which Apple has no justification to request and should not interfere with.

I further object that, as stated prior, the timeline and sequence events strongly implied that Apple and/or Orrick was coordinating with NEU to send the abrupt notice of my termination while I was on protected medical leave and just a couple hours before a federal court hearing with Apple and Orrick -- which created a reasonably foreseeable outcome that I would be upset and distracted during the hearing, among other issues.

I further object that I was on PMFL due to a debilitating nervous breakdown in 2024 and I was on protected leave while I was terminated, and your requests invade my protected medical and private rights.

I further object that US DOJ recently notified me that Apple is requesting discovery documents related to me, from DOJ, in the antitrust lawsuit against Apple filed by DOJ.

It appears Apple is building a collection of my complaints about Apple, and others, to create some sort of defense about me complaining about things too much and being a whiner -- but that's not in your Answer or

your Interrogatory defense and it would not be relevant to your stated defense about terminating my employment due to public posts and comments I made on social media and in a news article in 2021.

If you plan to proceed with the subpoena despite these objections, I will move for a protective order from Judge Westmore to block this subpoena and order you to first request records from me (which you have not done) and then if you need a subpoena after that, then to narrowly tailor it and ensure it reflects Apple's stated defense, otherwise its irrelevant and harassment.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Tuesday, January 20th, 2026 at 3:51 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Attached please find a copy of the subpoena we are serving on Northeastern.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley

# EXHIBIT C

# Ashley M. Gjovik v. Apple, Inc. - Wikimedia Foundation Subpoena Extension Request

| | |
|---|---|
| From | Wikimedia Legal <legal@wikimedia.org> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com> |
| Date | Friday, April 10th, 2026 at 9:17 AM |

Dear Ms. Gjøvik,

We are in receipt of a subpoena dated April 7, 2026 for **Ashley M. Gjovik v. Apple, Inc.**, case number 23-cv-04597-EMC (N.D. Cal.) ("**Subpoena**"). The Subpoena seeks information regarding several IP addresses and other related account data for users that made certain contributions to English- Wikipedia from December 2021 through the date of production. The Subpoena further requests the information to be shared by **April 10, 2026**.

Given the scope of the Subpoena, we will require additional time to review the request in accordance with the Foundation's Privacy Policy and the Data Retention Guidelines, and coordinate with the internal teams. In light of the foregoing, we propose an extension of 15 calendar days for the Foundation to respond.

Please let us know if it works well for your team.

On behalf of the Wikimedia Foundation Inc.

Sincerely,

Zoe Kossak
Associate Counsel
Wikimedia Foundation



Cut on dotted line.

## Instructions

1. Please use a laser or laser-quality printer.

2. Adhere shipping label to package with tape or glue - DO NOT TAPE OVER BARCODE. Be sure all edges are secure. Self-adhesive label is recommended.

3. Place label so that it does not wrap around the edge of the package.

4. Each shipping label number is unique and can be used only once - DO NOT PHOTOCOPY.

5. Please use this shipping label on the "ship date" selected when you requested the label.

6. If a mailing receipt is required, present the article and Online e-Label Record at a Post Office for postmark.

**9410 8301 0935 5008 9854 53**

| | |
|---|---|
| Print Date: **2026-04-03** | PRIORITY MAIL® $10.30 |
| Ship Date: **2026-04-03** | Extra Services: $3.95 |
| | Fees: $0.00 |
| | Total: $14.25 |

From: **ASHLEY GJOVIK**
**2108 N ST PMB 4553**
**SACRAMENTO CA 95816-5712**

To: **CT CORP (WIKIMEDIA FOUNDATION)**
**STE 700**
**330 N BRAND BLVD**
**GLENDALE CA 91203-2336**

* Commercial Pricing PRIORITY MAIL® rates apply. There is no fee for USPS Tracking® service on PRIORITY MAIL® service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

**UNITED STATES POSTAL SERVICE**

April 6, 2026

Dear Ashley Gjovik:

The following is in response to your request for proof of delivery on your item with the tracking number: **9410 8301 0935 5008 9854 53**.

| Item Details | |
|---|---|
| **Status:** | Delivered, PO Box |
| **Status Date / Time:** | April 6, 2026, 12:04 pm |
| **Location:** | GLENDALE, CA 91209 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Signature Confirmation™ |
| | Up to $100 insurance included |
| **Actual Recipient Name:** | J DLR |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

| Shipment Details | |
|---|---|
| **Weight:** | 4.0oz |

| Recipient Signature |
|---|

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | |
|---|---|
| Ashley M. Gjovik | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No.   3:23-cv-04597 |
| Apple Inc. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Wikimedia Foundation (a.k.a. "Wikipedia")

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See attached Schedule A.

| Place: Electronic mail to Ashley M. Gjovik at legal@ashleygjovik.com | Date and Time: 04/10/2026 12:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   4/2/26

CLERK OF COURT

_____    OR    _____
    _Signature of Clerk or Deputy Clerk_                           _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Ashley Gjovik (pro se) _____ , who issues or requests this subpoena, are:

Ashley Gjovik (pro se); legal@ashleygjovik.com; 415-964-6272; 2108 N. St Ste. 4553, Sacramento, CA 95816

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# WIKIMEDIA FOUNDATION | WIKIPEDIA | SCHEDULE A
## DOCUMENTS AND RECORDS TO BE PRODUCED
## PURSUANT TO FED. R. CIV. P. 45

## *Ashley M. Gjovik v. Apple Inc.,*

## 23-cv-04597-EMC (N.D. Cal.)

## I. DEFINITIONS

As used in this Schedule, the following terms shall have the meanings set forth below:

A. **"Subject Accounts"** means the following registered Wikipedia user accounts: SquareInARoundHole; Say ocean again; CodeHitchhiker; Bobrossghost; Sebastien1118; You Make Me Fade

B. **"Subject Articles"** includes but is not limited to the following Wikipedia articles: Ashley Gjøvik; List of whistleblowers; List of Superfund sites in California; TRW Inc; Apple Inc.

C. **"SPI Investigations"** means the Sockpuppet Investigations conducted on Wikipedia's Sockpuppet Investigations noticeboard concerning any of the Subject Accounts, including but not limited to: Exhibit A.

D. **"CheckUser Records"** means any and all records generated, maintained, or reviewed in connection with the use of the CheckUser tool on the English Wikipedia or any other Wikimedia project, including technical evidence, CheckUser results, internal notes, IP correlation data, and any other records or findings produced by CheckUser-authorized users in connection with the SPI Investigations or any related investigation into the Subject Accounts.

E. **"Relevant Period"** means Dec. 1 2021 through the date of production.

## II. INSTRUCTIONS

1. This Schedule seeks nonpublic records as that term is used in the Wikimedia Foundation's Privacy Policy and Requests for User Information Procedures and Guidelines.

2. This Schedule encompasses records retained beyond the standard retention period pursuant to the Wikimedia Foundation Data Retention Guidelines, including any records preserved in connection with investigations into potential violations of the Terms of Use or community-based policies.

3. Documents shall be produced as they are kept in the ordinary course of business or organized and labeled to correspond to the categories in which they are requested.

4. If any document responsive to this Schedule has been deleted, purged, anonymized, or aggregated pursuant to the Wikimedia Foundation Data Retention Guidelines or otherwise, identify the document, the approximate date of its deletion or purging, and the reason therefor.

## III.  DOCUMENTS AND RECORDS REQUESTED

**Request No. 1:  IP Addresses for Subject Accounts**

All Internet Protocol (IP) addresses used by or associated with each of the Subject Accounts to access, edit, or perform any logged action on any Wikimedia project during the Relevant Period, including any IP address data available through the CheckUser tool, server logs, or any other system maintained by the Wikimedia Foundation.

**Request No. 2:  Account Registration and Subscriber Information**

For each of the Subject Accounts: the email address associated with the account, the date and time of account registration, the IP address used at the time of account registration, and any other subscriber or account profile information on file.

**Request No. 3:  SPI Investigation and CheckUser Records**

All CheckUser Records generated in connection with the SPI Investigations, including but not limited to: the full results of any CheckUser queries run against any of the Subject Accounts; any technical findings, IP correlation analyses, or reports identifying relationships among the Subject Accounts or between the Subject Accounts and other accounts or IP addresses; any internal notes, communications, or memoranda among CheckUser-authorized users, SPI clerks, administrators, Arbitration Committee members, or Wikimedia Foundation staff concerning the SPI Investigations or the Subject Accounts; and any records documenting the basis for, or results of, any blocks, bans, or other enforcement actions taken against the Subject Accounts in connection with the SPI Investigations.

**Request No. 4:  Records Preserved Under Extended Retention**

Any and all records concerning the Subject Accounts that have been retained beyond the standard retention period set forth in the Wikimedia Foundation Data Retention Guidelines, including any records preserved pursuant to the exception for enforcement or investigation of potential violations of the Terms of Use, Privacy Policy, or community-based policies, or in connection with the investigation or defense of legal threats or actions.

**Request No. 5:  Related Accounts**

The usernames of any additional accounts identified through the SPI Investigations or CheckUser analysis as being operated by or connected to the same individual or individuals operating the Subject Accounts, together with the IP addresses, email addresses, and registration information associated with those additional accounts.

Dated: April 2 2026

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

San José, California

(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

**Exhibit A**



**WIKIPEDIA**

25 years of the free encyclopedia

# User contributions for You Make Me Fade

Results for You Make Me Fade (talk | block log | uploads | logs | global block log | global account | filter log)
A user with 142 edits. Account created on 11 January 2023.

> This user is currently blocked. The latest active block log entry is provided below for reference:
>
> - 03:47, 11 February 2023 GeneralNotability (talk | contribs) blocked You Make Me Fade (talk | contribs) with an expiration time of indefinite (account creation blocked) *(Sock puppetry User:CodeHitchhiker)* *(Tag: Twinkle)*

(newest | oldest) View (newer 50 | older 50) (20 | 50 | 100 | 250 | 500)

- 07:44, 11 February 2023 (diff | hist) . . (+227) . . User talk:You Make Me Fade *(→February 2023: Reply)* *(Tag: Reply)*
- 07:34, 11 February 2023 (diff | hist) . . (+169) . . User talk:You Make Me Fade *(→February 2023: Reply)* *(Tag: Reply)*
- 21:26, 10 February 2023 (diff | hist) . . **(+1,186)** . . List of whistleblowers *(→2010s: Added Tesla 2)*
- 21:11, 10 February 2023 (diff | hist) . . (+11) . . m TRW Inc. *(→Superfund site: Fixed typo)*
- 19:51, 10 February 2023 (diff | hist) . . (+15) . . List of Superfund sites in California *(→Superfund sites: Changed wikilink)*
- 19:50, 10 February 2023 (diff | hist) . . (+25) . . Ashley Gjøvik *(→Environmental health and safety concerns: Added wikilink)* *(Tag: Visual edit: Switched)*
- 19:49, 10 February 2023 (diff | hist) . . (+37) . . N TRW Microwave Superfund *(←Redirected page to TRW Inc.#Superfund site)* **(current)** *(Tag: New redirect)*
- 19:48, 10 February 2023 (diff | hist) . . (+22) . . N TRW Microwave *(←Redirected page to TRW Inc.)* *(Tag: New redirect)*
- 19:45, 10 February 2023 (diff | hist) . . **(+33,359)** . . TRW Inc. *(→Superfund site: New section)* *(Tag: nowiki added)*
- 16:57, 10 February 2023 (diff | hist) . . (+52) . . List of whistleblowers *(→2020s: Added picture)* *(Tag: Visual edit)*
- 16:54, 10 February 2023 (diff | hist) . . (+4) . . m Rebekah Jones *(→Lead: Added wikilink)* *(Tag: Visual edit: Switched)*
- 16:51, 10 February 2023 (diff | hist) . . **(+3,569)** . . Rebekah Jones *(→Firing from the Florida Department of Health: Added other claims and outcome from sourcings.)* *(Tag: Visual edit)*
- 15:22, 10 February 2023 (diff | hist) . . **(+893)** . . List of whistleblowers *(→2010s: Added Tesla)* *(Tags: Visual edit: Switched, Disambiguation links added)*
- 13:31, 10 February 2023 (diff | hist) . . (+181) . . Rebekah Jones *(Fixed grammar)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 13:21, 10 February 2023 (diff | hist) . . (+4) . . List of whistleblowers *(Fixed typo)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 13:19, 10 February 2023 (diff | hist) . . (+34) . . List of whistleblowers *(Added from sourcing)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 12:40, 10 February 2023 (diff | hist) . . (+139) . . List of whistleblowers *(Fixed typo)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 12:36, 10 February 2023 (diff | hist) . . (+214) . . Talk:List of whistleblowers *(→Rebekah Jones: new section)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 12:34, 10 February 2023 (diff | hist) . . (+64) . . List of whistleblowers *(Added sourcing)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 12:27, 10 February 2023 (diff | hist) . . **(+1,069)** . . List of whistleblowers *(Fixed cell)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 12:06, 10 February 2023 (diff | hist) . . (+83) . . List of whistleblowers *(Added Florida)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*
- 11:56, 10 February 2023 (diff | hist) . . (+1) . . m Rick Bright *(Fixed typo)* *(Tags: Mobile edit, Mobile app edit, iOS app edit)*



**WIKIPEDIA**

25 years of the free encyclopedia

# Wikipedia:Sockpuppet investigations/SquareInARoundHole/Archive

< Wikipedia:Sockpuppet investigations | SquareInARoundHole

## SquareInARoundHole

SquareInARoundHole (https://en.wikipedia.org/wiki/User:SquareInARoundHole) (talk+ (https://en.wikipedia.org/w/index.php?title=User_talk%3ASquareInARoundHole&action=edit&section=new) · tag (https://en.wikipedia.org/w/index.php?title=User%3ASquareInARoundHole&preload=Template%3ACheckuser%2FPreload&preloadparams%5B%5D=%3C%21--+insert+sock+master+here+--%3E&action=edit) · contribs · logs (https://en.wikipedia.org/w/index.php?title=Special%3ALog&user=SquareInARoundHole) · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseLog&wpSearchUser=SquareInARoundHole) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock&page=User%3ASquareInARoundHole) · CA)

### 13 June 2022

#### Suspected sockpuppets

- Sebastien1118 (https://en.wikipedia.org/wiki/User:Sebastien1118) (talk+ (https://en.wikipedia.org/w/index.php?title=User_talk%3ASebastien1118&action=edit&section=new) · tag (https://en.wikipedia.org/w/index.php?title=User%3ASebastien1118&preload=Template%3ACheckuser%2FPreload&preloadparams%5B%5D=SquareInARoundHole&action=edit) · contribs · logs (https://en.wikipedia.org/w/index.php?title=Special%3ALog&user=Sebastien1118) · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseLog&wpSearchUser=Sebastien1118) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock&page=User%3ASebastien1118) · CA)
- **Tools**: Editor interaction utility (https://tools.wmflabs.org/sigma/editorinteract.py?users=SquareInARoundHole&users=Sebastien1118) · Interaction Timeline (https://tools.wmflabs.org/interaction-timeline?wiki=enwiki&user=SquareInARoundHole&user=Sebastien1118) · SPI Tools (https://spi-tools.toolforge.org/spi/?caseName=SquareInARoundHole)

I came across this issue after seeing this notification (https://en.wikipedia.org/w/index.php?title=User_talk:SquareInARoundHole&diff=1092602388&oldid=1092471559) because I have the talk page of SquareInARoundHole added to my watchlist, having warned him earlier.[1] (https://en.wikipedia.org/w/index.php?title=User_talk:SquareInARoundHole&diff=prev&oldid=1089054647)

Sebastien1118 was created just 3 days ago and is sharing the same tactics as SquareInARoundHole.

Both are the largest contributors to Ashley Gjøvik, after GorillaWarfare, the former arbitrator.

Their edits can be best said to have adopted the approach of having the deepest but unbalanced analysis into one side of the dispute [2] (https://en.wikipedia.org/w/index.php?title=Ashley_Gj%C3%B8vik&diff=1063040227&oldid=1062920532) or have none.[3] (https://en.wikipedia.org/w/index.php?title=Ashley_Gj%C3%B8vik&diff=1092792272&oldid=1092599777) Something I also saw in the edits of SquareInARoundHole elsewhere.

Both make the same argument in order to object the sources they don't like. Such as claiming that sources "are not about the subject".[4] (https://en.wikipedia.org/w/index.php?title=Wikipedia:Articles_for_deletion/Ashley_Gj%C3%B8vik&oldid=1092601765)[5] (https://en.wikipedia.org/w/index.php?title=Talk:Claire_Danes&diff=1090023308&oldid=1090011549)

SquareInaRoundHole reported HazelBasil to be socking,[6] (https://en.wikipedia.org/w/index.php?title=Wikipedia:S ockpuppet_investigations/HazelBasil&oldid=1064188392) and Sebastien1118 reported HazelBasil to be socking on ANI.[7] (https://en.wikipedia.org/w/index.php?title=Wikipedia:Administrators%27_noticeboard/Incidents&diff=pre v&oldid=1092818154)

Their format of ANI reports is also very unique and the same.[8] (https://en.wikipedia.org/w/index.php?title=Wikiped ia:Administrators%27_noticeboard/Incidents&diff=prev&oldid=1090669086)[9] (https://en.wikipedia.org/w/index.p hp?diff=prev&oldid=1092818154)

Sebastien1118's first edit was to nominate the article on Ashley Gjovik for deletion.[10] (https://en.wikipedia.org/w/in dex.php?title=Ashley_Gj%C3%B8vik&diff=prev&oldid=1092599777) SquareInARoundHole is alleged to have COI with Ashley Gjovik as per Wikipedia:Conflict of interest/Noticeboard/Archive 184 which remains 'unresolved'.[11] (htt ps://en.wikipedia.org/w/index.php?title=Wikipedia%3AArticles_for_deletion%2FAshley_Gj%C3%B8vik&type=revisi on&diff=1092858035&oldid=1092821764) TolWol56 (talk) 23:24, 13 June 2022 (UTC)

Upon discovery of sock-puppetry, I would recommend indef block on all accounts because this is apparently a long-running issue and the suspected master's own history of unresolved COI,[12] (https://en.wikipedia.org/w/index.php?ti tle=User_talk:SquareInARoundHole&diff=1057324272&oldid=1055697917)[13] (https://en.wikipedia.org/wiki/Wikip edia:Conflict_of_interest/Noticeboard/Archive_184) and disruptive editing needs to be addressed. I see that an IP related to HazelBasil has been blocked by Tamzin.[14] (https://en.wikipedia.org/wiki/Special:Contributions/73.158.4 7.129) They are welcome to take a look here. TolWol56 (talk) 23:33, 13 June 2022 (UTC)

> @Tamzin and TonyBallioni: Thanks for your response.
> While the history of SquareInARoundHole (likely a sock himself) with Ashley Gjøvik has been already explained, he is also alleged of COI on Cher Scarlett where he made his 3rd edit [15] (https://en.wikipedia.org/w/index.php?t itle=Cher_Scarlett&diff=prev&oldid=1055692195) and didn't take long to make a large edit to Ifeoma Ozoma,[16] (https://en.wikipedia.org/w/index.php?title=Ifeoma_Ozoma&diff=prev&oldid=1056958889) where he is also alleged of having COI.
> It seems Bobrossghost was also used for months for socking at Ashley Gjøvik. We can say that Gjøvik was herself not wrong by accusing SquareInARoundHole of harassment.[17] (https://en.wikipedia.org/wiki/Wikipedia: Conflict_of_interest/Noticeboard/Archive_184) This whole chapter looks like a clear case of WP:NOTHERE. TolWol56 (talk) 00:15, 14 June 2022 (UTC)

## Comments by other users

*Accused parties may also comment/discuss in this section below. See Defending yourself against claims.*

## Clerk, CheckUser, and/or patrolling admin comments

- ⊕ **Clerk endorsed** based on shared priorities, some of the behavioral similarities presented above, and a distinctive edit summary I noticed. -- Tamzin[*cetacean needed*] (she/they) 23:47, 13 June 2022 (UTC)

- ⊕ **Likely** to one another and to Bobrossghost (https://en.wikipedia.org/wiki/User:Bobrossghost) (talk+ (https://en.wi kipedia.org/w/index.php?title=User_talk%3ABobrossghost&action=edit&section=new) · tag (https://en.wikipedia.org/w/i ndex.php?title=User%3ABobrossghost&preload=Template%3ACheckuser%2FPreload&preloadparams%5B%5D =%3C%21--+insert+sock+master+here+--%3E&action=edit) · contribs · logs (https://en.wikipedia.org/w/index.php?t itle=Special%3ALog&user=Bobrossghost) · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseL og&wpSearchUser=Bobrossghost) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock &page=User%3ABobrossghost) · CA). All three have slightly different UAs, so could be meat. TonyBallioni (talk) 00:01, 14 June 2022 (UTC)

- Thanks, Tony. This is a case where I don't think it really matters whether it's sock or meat, since either way SIARH is evading an ArbCom IBAN (which explicitly covers edits to the Gjøvik article). Furthermore, at least in the case of Sebastien, I'm pretty confident that this is true socking, owing to the distinctive edit summary I mentioned ("MOS:STYLE"). There's a subtler tell shared with Bobrossghost that makes me favor the same conclusion there. Both sox ✅ **Blocked and tagged**.

  I've gone back and forth on SquareInARoundHole. We don't normally indef for first-offense socking. SIARH is not a single-purpose account, so I am hesitant to unilaterally brand them NOTHERE. At the same time, serious sanctions are in order. SquareInARoundHole is **blocked 1 month as an arbitration enforcement action for the IBAN**

**violation, and an additional month for sockpuppetry**. If there's a desire for broader sanctions than that, that can be discussed at WP:AN/I. -- Tamzin[*cetacean needed*] (she/they) 01:00, 14 June 2022 (UTC)

- Noting also a factual finding that the various 2600:387::/32 IPs in Special:PageHistory/Ashley Gjøvik are likely SIARH. No point in blocking, though, as that range has since been blocked due to an unrelated LTA. -- Tamzin[*cetacean needed*] (she/they) 02:54, 14 June 2022 (UTC)

  - Noting also my exchange (https://en.wikipedia.org/w/index.php?title=User_talk%3ATamzin&type=revision&d iff=1093124561&oldid=1093044978) with SVTCobra about suspicious SPAs Delhowder (https://en.wikipedi a.org/wiki/User:Delhowder) and Wafflenugget (https://en.wikipedia.org/wiki/User:Wafflenugget). (TL;DR: No action, but reasonable to revert them.) -- Tamzin[*cetacean needed*] (she/they) 18:57, 14 June 2022 (UTC)

## 18 November 2022

**Suspected sockpuppets**

- 166.198.34.86 (https://en.wikipedia.org/wiki/User:166.198.34.86) (talk[+] (https://en.wikipedia.org/w/index.php?title=Us er_talk%3A166.198.34.86&action=edit&section=new) · tag (https://en.wikipedia.org/w/index.php?title=User%3A166.1 98.34.86&preload=Template%3ACheckip%2FPreload&preloadparams%5B%5D=SquareInARoundHole&action=edi t) · contribs · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseLog&wpSearchUser=166.198.3 4.86) · WHOIS (https://whois-referral.toolforge.org/gateway.py?ip=166.198.34.86&lookup=true) · RBLs (https://ww w.robtex.com/rbls/166.198.34.86.html) · proxy check (https://ipcheck.toolforge.org/index.php?ip=166.198.34.86) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock&page=User%3A166.198.34.86) · cross-wiki contribs (https://guc.toolforge.org/?user=166.198.34.86&by=date))
- **Tools**: Editor interaction utility (https://tools.wmflabs.org/sigma/editorinteract.py?users=SquareInARoundHole&user s=166.198.34.86) · Interaction Timeline (https://tools.wmflabs.org/interaction-timeline?wiki=enwiki&user=SquareInA RoundHole&user=166.198.34.86) · SPI Tools (https://spi-tools.toolforge.org/spi/?caseName=SquareInARoundHol e)

Disrupting the same paragraph as SquareInARoundHole.[18] (https://en.wikipedia.org/w/index.php?title=Claire_Da nes&diff=1089644289&oldid=1089643993)[19]  (https://en.wikipedia.org/w/index.php?title=Claire_Danes&diff=pre v&oldid=1121391345)

This IP's service provider, ASN, etc. matches with the earlier IPs abused by SquareInARoundHole.[20] (https://en.wiki pedia.org/wiki/Special:Contributions/2600:387:F:571A:0:0:0:9)[21] (https://en.wikipedia.org/wiki/Special:Contribut ions/166.198.34.86)[22] (https://whatismyipaddress.com/ip/166.198.34.86)[23] (https://whatismyipaddress.com/ip/ 2600:387:F:571A:0:0:0:9) The IP socking was also concluded in the previous SPI.[24] (https://en.wikipedia.org/w/ind ex.php?title=Wikipedia:Sockpuppet_investigations/SquareInARoundHole&diff=1093128673&oldid=1093025808)

@Tamzin: I am sure this IP cannot be blocked due to inactivity of 5 days now but let's agree that SquareInARoundHole has failed to maintain 6 months forced break. TolWol (talk) 11:38, 18 November 2022 (UTC)

## Comments by other users

*Accused parties may also comment/discuss in this section below. See Defending yourself against claims.*

## Clerk, CheckUser, and/or patrolling admin comments

- Seems more likely than not, but I don't think there's anything to be done at this moment. (I.e., even if it weren't stale, I'm not sure it would be at the confidence level for a block.) -- Tamzin[*cetacean needed*] (she|they|xe) 11:47, 18 November 2022 (UTC)
- Oh, just looked at the /24. Dammit, SIARH. I thought we'd come to an understanding. /24 blocked 1 month. -- Tamzin[*cetacean needed*] (she|they|xe) 11:58, 18 November 2022 (UTC)

## 21 November 2022

**Suspected sockpuppets**

- CodeHitchhiker (https://en.wikipedia.org/wiki/User:CodeHitchhiker) (talk⁺ (https://en.wikipedia.org/w/index.php?title=User_talk%3ACodeHitchhiker&action=edit&section=new) · tag (https://en.wikipedia.org/w/index.php?title=User%3ACodeHitchhiker&preload=Template%3ACheckuser%2FPreload&preloadparams%5B%5D=SquareInARoundHole&action=edit) · contribs · logs (https://en.wikipedia.org/w/index.php?title=Special%3ALog&user=CodeHitchhiker) · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseLog&wpSearchUser=CodeHitchhiker) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock&page=User%3ACodeHitchhiker) · CA)
  - **Tools**: Editor interaction utility (https://tools.wmflabs.org/sigma/editorinteract.py?users=SquareInARoundHole&users=CodeHitchhiker) · Interaction Timeline (https://tools.wmflabs.org/interaction-timeline?wiki=enwiki&user=SquareInARoundHole&user=CodeHitchhiker) · SPI Tools (https://spi-tools.toolforge.org/spi/?caseName=SquareInARoundHole)

 This portion of the filing has been blanked as a courtesy.

In sum, just on behavioral evidence, I am fairly confident that this is either sockpuppetry or meatpuppetry, probably the former; and in either case, when in doubt, we treat as socking.

I referred this to ArbCom for right of first refusal; they deferred it to SPI, but a check was run, with results between ⊜ **Possilikely** (a mix between possible and likely) and ⊕ **Likely** and a recommendation to ask for a second opinion, which I am doing now. If the reviewing CU sees this similarly, that would put me at the necessary confidence threshold to block indefinitely as a suspected sock, on CU + interests + location + edit-summary tells + article-writing tells.

Please note: No previously-oversighted or otherwise private information influences this analysis. -- `Tamzin`[*cetacean needed*] (she|they|xe) 03:26, 21 November 2022 (UTC)

## Comments by other users

*Accused parties may also comment/discuss in this section below. See Defending yourself against claims.*

@Tamzin: I had mentioned suspicious activity at Cher Scarlett on June.[25] (https://en.wikipedia.org/w/index.php?title=Wikipedia:Sockpuppet_investigations/SquareInARoundHole&diff=1093011284&oldid=1093007893) Anyway, WP:SOCK has been violated.

- Same kind of addition with same edit summary on High school dropouts in the United States.[26] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1076768649)[27] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1066061910)
- Major addition at Sara Nelson (union leader) but marks the edit as minor.[28] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1115177311)[29] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1072931706)
- Has significantly edited Walla Walla, Washington as CodeHitchhiker[30] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1075652944)[31] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1074176333) but when it came to mentioning "Cher Scarlett" then SquareInARoundHole was used.[32] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1073990697)
- Also see edits on California Department of Fair Employment and Housing v. Activision Blizzard.[33] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1115353018)[34] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1072056772) It shows that CodeHitchhiker is doing incomplete work of SquareInARoundHole because SquareInARoundHole is blocked.
- Tags a paragraph on Marcus Whitman Hotel with citation needed tag and adds citation with another account.[35] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1077008652)[36] (https://en.wikipedia.org/w/index.php?diff=prev&oldid=1077002716)

Same edit summaries:- "additional details",[37] (https://en.wikipedia.org/w/index.php?title=Kristina_Halvorson&diff=prev&oldid=1058483943)[38] (https://en.wikipedia.org/w/index.php?title=Badfish_(song)&diff=prev&oldid=1072727680) "initial article"[39] (https://en.wikipedia.org/w/index.php?title=Linea_Johnson&oldid=1076788534)[40] (https://en.wikipedia.org/w/index.php?title=Mily_Trevi%C3%B1o-Sauceda&oldid=1077411136), "add redirect".[41] (h

ttps://en.wikipedia.org/w/index.php?title=Tragedy_at_Waiilatpu&oldid=1081491683)[42] (https://en.wikipedia.org/w/index.php?title=AppleCore&oldid=1086027998)

The fact is clear here that they are the same person. Even if they were not the same person, then it's still a violation of sockpuppetry because: 1) SquareInARoundHole has been used to evade WP:COI concerns of CodeHitchhiker, 2) CodeHitchhiker is now being used for evading SquareInARoundHole's ban. TolWol (talk) 12:45, 21 November 2022 (UTC)

> I would like to echo Tamzin's final thoughts on the matter. It's a shame that this has happened, but I do think there is a chance that CodeHitchhiker can make a productive return. –MJL -**Talk**-△ 17:06, 21 November 2022 (UTC)

## Clerk, CheckUser, and/or patrolling admin comments

- 🟡 **Relisted** from initial non-SPI check, per above. -- Tamzin[*cetacean needed*] (she|they|xe) 03:26, 21 November 2022 (UTC)
- 🕐 **In progress**. --Blablubbs (talk) 13:06, 21 November 2022 (UTC)
- I'd call this ⊕ **Likely** from a technical perspective. --Blablubbs (talk) 13:17, 21 November 2022 (UTC)
- Based on my previous comments, two sets of CU findings, and TolWol's comment (point 3 of which had been raised to me by the first CU, and point 6 of which intersects with my and another clerk's findings regarding edit summaries), I am blocking CodeHitchhiker indefinitely as a suspected sockpuppet. Due to the BLP implications here, I will blank and categorize her userpage in lieu of tagging. @CodeHitchhiker: This is a shame. I still think you have the potential to be a constructive editor here. But any path to that would need to start with a considerable period of time without editing. -- Tamzin[*cetacean needed*] (she|they|xe) 13:26, 21 November 2022 (UTC)

## 24 July 2024

### Suspected sockpuppets

- 2605:b100:d13:bc93:a9a4:699:30ff:5f16 (https://en.wikipedia.org/wiki/User:2605:B100:D13:BC93:A9A4:699:30FF:5F16) (talk+ (https://en.wikipedia.org/w/index.php?title=User_talk%3A2605%3AB100%3AD13%3ABC93%3AA9A4%3A699%3A30FF%3A5F16&action=edit&section=new) · tag (https://en.wikipedia.org/w/index.php?title=User%3A2605%3AB100%3AD13%3ABC93%3AA9A4%3A699%3A30FF%3A5F16&preload=Template%3ACheckip%2FPreload&preloadparams%5B%5D=SquareInARoundHole&action=edit) · contribs · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseLog&wpSearchUser=2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16) · WHOIS (https://whois-referral.toolforge.org/gateway.py?ip=2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16&lookup=true) · RBLs (https://www.robtex.com/rbls/2605:b100:d13:bc93:a9a4:699:30ff:5f16.html) · proxy check (https://ipcheck.toolforge.org/index.php?ip=2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock&page=User%3A2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16) · cross-wiki contribs (https://guc.toolforge.org/?user=2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16&by=date))

- 69.58.107.246 (https://en.wikipedia.org/wiki/User:69.58.107.246) (talk+ (https://en.wikipedia.org/w/index.php?title=User_talk%3A69.58.107.246&action=edit&section=new) · tag (https://en.wikipedia.org/w/index.php?title=User%3A69.58.107.246&preload=Template%3ACheckip%2FPreload&preloadparams%5B%5D=SquareInARoundHole&action=edit) · contribs · filter log (https://en.wikipedia.org/w/index.php?title=Special%3AAbuseLog&wpSearchUser=69.58.107.246) · WHOIS (https://whois-referral.toolforge.org/gateway.py?ip=69.58.107.246&lookup=true) · RBLs (https://www.robtex.com/rbls/69.58.107.246.html) · proxy check (https://ipcheck.toolforge.org/index.php?ip=69.58.107.246) · block log (https://en.wikipedia.org/w/index.php?title=Special%3ALog%2Fblock&page=User%3A69.58.107.246) · cross-wiki contribs (https://guc.toolforge.org/?user=69.58.107.246&by=date))

- **Tools**: Editor interaction utility (https://tools.wmflabs.org/sigma/editorinteract.py?users=SquareInARoundHole&users=2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16&users=69.58.107.246) · Interaction Timeline (https://tools.wmflabs.org/interaction-timeline?wiki=enwiki&user=SquareInARoundHole&user=2605%3Ab100%3Ad13%3Abc93%3Aa9a4%3A699%3A30ff%3A5f16) · SPI Tools (https://spi-tools.toolforge.org/spi/?caseName=SquareInARoundHole)

Signing barnstars as SquareInARoundHole, e.g. here (https://en.wikipedia.org/w/index.php?title=User_talk:GenerationZ2024&diff=prev&oldid=1236278902). Cordless Larry (talk) 18:51, 24 July 2024 (UTC)

Case 3:23-cv-04597-EMC    Document 347-1    Filed 04/10/26    Page 81 of 95

69.58.107.246 seems to be related; see this (https://en.wikipedia.org/w/index.php?title=Wikipedia:Teahouse&diff=prev&oldid=1236461183). Cordless Larry (talk) 08:04, 25 July 2024 (UTC)

Hi there, thanks for removing the scam thing. I haven't achieved it yet but i knew my award, which goes under the name of SquareInARoundHole, is a fake. GenerationZ2024 (talk) 21:27, 24 July 2024 (UTC)

## Comments by other users

*Accused parties may also comment/discuss in this section below. See Defending yourself against claims.*

## Clerk, CheckUser, and/or patrolling admin comments

- The IPs are blocked, closing. Bbb23 (talk) 15:35, 25 July 2024 (UTC)

Retrieved from "https://en.wikipedia.org/w/index.php?title=Wikipedia:Sockpuppet_investigations/SquareInARoundHole/Archive&oldid=1236801979"



**WIKIPEDIA**
25 years of the free encyclopedia

# Category:Wikipedia sockpuppets of SquareInARoundHole



This category lists confirmed sockpuppets of:
**SquareInARoundHole** (**talk** · **contribs** · **page moves** (https://en.wikipe dia.org/wiki/Special:Log/move?user=SquareInARoundHole) · **logs** (ht tps://en.wikipedia.org/w/index.php?title=Special:Log&user=SquareI nARoundHole) · **block log** (https://en.wikipedia.org/w/index.php?title =Special:Log/block&page=User:SquareInARoundHole) · **arb** · **rfc** · **lta** · **SPI**)

To add an account to this category use `{{Sockpuppet|SquareInARoundHole|confirmed}}` if confirmed by a checkuser or `{{Sockpuppet|SquareInARoundHole|proven}}` if the behavioural evidence makes the link beyond reasonable doubt.

## Subcategories

This category has only the following subcategory.

### S

Suspected Wikipedia sockpuppets of SquareInARoundHole (1 P)

## Pages in category "Wikipedia sockpuppets of SquareInARoundHole"

The following 2 pages are in this category, out of 2 total. This list may not reflect recent changes.

### B

- User:Bobrossghost

### S

- User:Sebastien1118

Retrieved from "https://en.wikipedia.org/w/index.php?title=Category:Wikipedia_sockpuppets_of_SquareInARoundHole&oldid=1093012929"



**WIKIPEDIA**

25 years of the free encyclopedia

# Category:Suspected Wikipedia sockpuppets of SquareInARoundHole



This category lists suspected sockpuppets of:
**SquareInARoundHole (talk · contribs · page moves (https://en.wikipe dia.org/wiki/Special:Log/move?user=SquareInARoundHole) · logs (ht tps://en.wikipedia.org/w/index.php?title=Special:Log&user=SquareI nARoundHole) · block log (https://en.wikipedia.org/w/index.php?title =Special:Log/block&page=User:SquareInARoundHole) · arb · rfc · lta · SPI)**

To add a sockpuppet to this category, use {{Sockpuppet|SquareInARoundHole|blocked}}.

## Pages in category "Suspected Wikipedia sockpuppets of SquareInARoundHole"

This category contains only the following page. This list may not reflect recent changes.

**C**

- User:CodeHitchhiker

Retrieved from "https://en.wikipedia.org/w/index.php?
title=Category:Suspected_Wikipedia_sockpuppets_of_SquareInARoundHole&oldid=1123047318"



**WIKIPEDIA**

25 years of the free encyclopedia

# Block log

*View the **list of active blocks** or **calculate a rangeblock**. See also the global block log and the log of local enabling/disabling of global blocks.*

This is a log of user-block/unblock actions. Auto-blocked IP addresses are not listed here, but can be found at Special:AutoblockList. See Special:BlockList for the full list of currently operational blocks. See Wikipedia:Blocking policy for further details.

You may enter the name of the blocking/unblocking administrator and/or the user or IP who was blocked/unblocked.

- **Performer** is the name of the admin, without any prefix
- **Target** is the name of the user, IP or IP range, written with the prefix "User:"

---

## User logs

> Block log

Performer:

> _____

Target (title or User:username for user):

> User:SquareInARoundHole

From date (and earlier):

> No date selected

Tag filter:

> _____

Type of block:

> All

> **Show**

---

- 20:40, 14 June 2022 Tamzin (talk | contribs) changed block settings for SquareInARoundHole (talk | contribs) with an expiration time of indefinite (account creation blocked) *(Banned by the community)*
- 01:01, 14 June 2022 Tamzin (talk | contribs) changed block settings for SquareInARoundHole (talk | contribs) with an expiration time of 01:00, 14 August 2022 (account creation blocked) *(the 1st month of this block is an arbitration enforcement action for evading this IBAN through sockpuppets (Wikipedia:Sockpuppet investigations/SquareInARoundHole). the 2nd month is a regular sockpuppetry block)*
- 01:00, 14 June 2022 Tamzin (talk | contribs) blocked SquareInARoundHole (talk | contribs) with an expiration time of 2 months (account creation blocked) *(the 1st month of this block is an arbitration enforcement action for evading this IBAN through sockpuppets (Wikipedia:Sockpuppet investigations/SquareInARoundHole). the 2nd month is a regular sockpuppetry block)*

---

Retrieved from "https://en.wikipedia.org/wiki/Special:Log"

# <u>EXHIBIT D</u>

**UNITED STATES POSTAL SERVICE**

April 6, 2026

Dear Ashley Gjovik:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9410 8301 0935 5008 9854 39**.

| Item Details | |
|---|---|
| **Status:** | Delivered, PO Box |
| **Status Date / Time:** | April 6, 2026, 12:04 pm |
| **Location:** | GLENDALE, CA 91209 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Signature Confirmation™ |
| | Up to $100 insurance included |
| **Actual Recipient Name:** | J DLR |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

| Shipment Details | |
|---|---|
| **Weight:** | 3.0oz |

| Recipient Signature | |
|---|---|

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004



*Cut on dotted line.*

## Instructions

1. Please use a laser or laser-quality printer.

2. Adhere shipping label to package with tape or glue - DO NOT TAPE OVER BARCODE. Be sure all edges are secure. Self-adhesive label is recommended.

3. Place label so that it does not wrap around the edge of the package.

4. Each shipping label number is unique and can be used only once - DO NOT PHOTOCOPY.

5. Please use this shipping label on the "ship date" selected when you requested the label.

6. If a mailing receipt is required, present the article and Online e-Label Record at a Post Office for postmark.

**9410 8301 0935 5008 9854 39**

| | |
|---|---|
| Print Date: **2026-04-03** | PRIORITY MAIL® $10.30 |
| Ship Date: **2026-04-03** | Extra Services: $3.95 |
| | Fees: $0.00 |
| | Total: $14.25 |

From:   **ASHLEY GJOVIK**
**2108 N ST PMB 4553**
**SACRAMENTO CA 95816-5712**

To:   **CT CORP (X CORP)**
**STE 700**
**330 N BRAND BLVD**
**GLENDALE CA 91203-2336**

\* Commercial Pricing PRIORITY MAIL® rates apply. There is no fee for USPS Tracking®
service on PRIORITY MAIL® service with use of this electronic rate shipping label.
Refunds for unused postage paid labels can be requested online 30 days from the
print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| Ashley M. Gjovik | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   3:23-cv-04597 |
| Apple Inc. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    X Corp. (a.k.a. "X")

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Electronic mail to Ashley M. Gjovik at legal@ashleygjovik.com | Date and Time: 04/10/2026 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   4/2/26

CLERK OF COURT

_____    OR    _____
    *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ Ashley Gjovik (pro se) _____, who issues or requests this subpoena, are:

Ashley Gjovik (pro se); legal@ashleygjovik.com; 415-964-6272; 2108 N. St Ste. 4553, Sacramento, CA 95816

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## X CORP / XAI / TWITTER | SCHEDULE A
### DOCUMENTS AND RECORDS TO BE PRODUCED
### PURSUANT TO FED. R. CIV. P. 45

---

### *Ashley M. Gjovik v. Apple Inc.,*

### 23-cv-04597-EMC (N.D. Cal.)

---

## I. DEFINITIONS

As used in this Schedule, the following terms shall have the meanings set forth below:

A. **"Subject Post"** means the post or content identified by Exhibit A, originally published on or about September 10, 2021, which was the subject of a paid promotion through the Platform's advertising or promotion services.

B. **"Promotion Transaction"** means the transaction or series of transactions by which a user purchased, ordered, or otherwise initiated the paid promotion, boost, or advertising of the Subject Post through the Platform's advertising or promotion services.

C. **"Platform"** means Twitter and/or X including all affiliated services, applications, and websites operated by xAI.

D. **"Promoting Account"** means the user account through which the Promotion Transaction was initiated, placed, or executed.

## II. INSTRUCTIONS

1. The time period covered by this Schedule is limited to the period from August 1, 2021 through Dec. 31, 2021, unless otherwise specified in a particular request below.

2. This Schedule seeks only non-content records as that term is understood under the Stored Communications Act, 18 U.S.C. §§ 2701–2712. No content of any communication is sought.

3. Documents shall be produced as they are kept in the ordinary course of business or organized and labeled to correspond to the categories in which they are requested.

4. If any document responsive to this Schedule has been lost, discarded, or destroyed, identify such document, including its subject matter, the date of its loss, discard, or destruction, and the reason therefor.

## III. DOCUMENTS AND RECORDS REQUESTED

The following non-content records related solely to the Promotion Transaction for the Subject Post:

**Request No. 1: Payment Method and Cardholder Information**

The name of the cardholder or account holder associated with the payment method used to fund or pay for the Promotion Transaction, including the type of payment method (e.g., credit card, debit

card, PayPal, or other payment service), the last four digits of the card or account number, and the billing name as it appeared on the payment instrument at the time of the Promotion Transaction.

**Request No. 2:  Date and Amount of Payment**

The date(s) on which payment was made or charged in connection with the Promotion Transaction, and the amount(s) paid or charged for the promotion of the Subject Post.

**Request No. 3:  Billing Address**

The billing address, mailing address, or any other physical address associated with the payment method or the Promoting Account used in connection with the Promotion Transaction.

**Request No. 4:  IP Address Records**

The Internet Protocol (IP) address(es) used to access the Promoting Account at the time the Promotion Transaction was initiated, submitted, or completed, including any IP address(es) logged in connection with the session(s) during which the Promotion Transaction was placed.

**Request No. 5:  Account Identification for the Promoting Account**

The account name, username, account ID number, and email address associated with the Promoting Account through which the Promotion Transaction was initiated.

## IV.  BASIS FOR PRODUCTION

### A.  The Promotion Transaction Constitutes Commercial Speech Entitled to Reduced First Amendment Protection

The records sought relate exclusively to a paid commercial promotion—a transaction in which a user paid money to the Platform to amplify the distribution of the Subject Post. Paying to promote content is, by definition, commercial speech: it "does no more than propose a commercial transaction" between the purchaser and the Platform. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980). The Supreme Court has long held that "the Constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Id.* at 563.

The Ninth Circuit has directly addressed the reduced protection afforded to commercial speech in the context of discovery seeking the identity of anonymous speakers. In *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011), the court held that "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes," and that "in discovery disputes involving the identity of anonymous speakers, the notion that commercial speech should be afforded less protection than political, religious, or literary speech is hardly a novel principle." *Id.* at 1176–77. The Ninth Circuit accordingly held that courts should not apply heightened standards, such as the *Doe v. Cahill*, 884 A.2d 451 (Del. 2005), summary-judgment standard, to commercial speech. *Id.* at 1177.

The Ninth Circuit's holding drew on decisions from two other circuits reaching the same conclusion in the commercial context. See *NLRB v. Midland Daily News*, 151 F.3d 472 (6th Cir. 1998) (addressing subpoena seeking identity of anonymous advertiser); *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240 (4th Cir. 2009) (allowing discovery of anonymous speaker's identity in securities fraud class action involving commercial speech).

The present request involves speech that is even more clearly commercial than the speech at issue in *Anonymous Online Speakers*. In that case, the court classified anonymous blog posts criticizing a company's business practices as commercial speech because the posts went "to the heart of [the company's] commercial practices and its business operations." *Id.* at 1176. Here, the Promotion Transaction is not merely speech *about* commerce—it is itself a commercial advertising purchase, the functional equivalent of buying advertising space. Any First Amendment interest in anonymity is accordingly at its lowest ebb.

## B. The Balance of Interests Favors Disclosure

To the extent a balancing of interests is required, the applicable standard in this District is set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005). Under *Highfields*, the requesting party must present a "real evidentiary basis" for the claims it seeks to assert, and the court must determine that enforcing the subpoena "would cause relatively little harm to the defendant's First Amendment and privacy rights" and "is necessary to enable plaintiff to protect against or remedy serious wrongs." *Id.* See also *Art of Living Found. v. Does 1–10*, No. 10-CV-05022, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) (applying *Highfields* framework).

That balance favors disclosure here. The information sought is narrowly limited to transactional records associated with a single identified Promotion Transaction. The records do not reveal the content of any communication, private message, or post. Payment and billing records associated with a commercial advertising purchase carry a minimal expectation of anonymity. The requesting party has a substantial need for this information to identify the party responsible for the paid promotion at issue in this litigation, and this information is not available from any other source. See *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999) (recognizing that where identifying information is exclusively within a third party's control, discovery from that third party is appropriate).

## C. The Records Sought Are Non-Content Records Permissibly Disclosed Under the Stored Communications Act

The records sought in this Schedule consist exclusively of non-content transactional and subscriber records. None of the requests seek the content of any electronic communication as defined by 18 U.S.C. § 2510(8). The Stored Communications Act expressly permits electronic communication service providers and remote computing service providers to disclose non-content customer records to non-governmental entities. See 18 U.S.C. § 2702(c)(6).

The information sought—including the name, address, and means and source of payment associated with a subscriber or customer—is the type of basic subscriber information that Congress identified in 18 U.S.C. § 2703(c)(2). Payment records, billing addresses, and IP logs are widely recognized as non-content data that may be disclosed in response to lawful process. See, e.g., *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, No. 16-mc-80263-RS (N.D. Cal. 2017) (basic subscriber information obtainable by subpoena).

Moreover, the Promotion Transaction constitutes a commercial advertising transaction between the Promoting Account holder and the Platform. The billing and payment records associated with this transaction are commercial business records of the Platform, generated in connection with the Platform's advertising services. These records do not implicate the privacy interests that the SCA was designed to protect with respect to the content of private electronic communications. See *Snap, Inc. v.*

*Superior Court*, No. D083446, 2024 WL 3507024, at *1 (Cal. Ct. App. July 23, 2024) (holding that where the business models of social media companies provide them with the ability to access and use customer information, the SCA does not foreclose production).

Dated: April 2 2026

Respectfully submitted,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
San José, California

(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

**EXHIBIT A**



Twitter, https://twitter.com/beezie_wacks/status/1436340545194905608

Twitter, https://twitter.com/beezie_wacks/status/1436776446005968900



Internet Archive:
https://web.archive.org/web/20220129211157/https://twitter.com/beezie_wacks/status/14363405451
94905608



**Beezie Wacks**
@beezie_wacks

Hey @ashleygyovik you went to law school and achieved a high GPA with such diligence at @SantaClaraUniv So how supported were you at work? #ashleygyovik

7:39 PM · Sep 11, 2021 · Twitter for iPhone

Internet Archive,
https://web.archive.org/web/20220202045657/https://twitter.com/beezie_wacks/status/1436776446005968900

# RE: Gjovik v. Apple - N.D. Cal. No. 3:23-cv-04597-EMC

| From | Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com> |
|------|-----------------------------------------------------------|
| To | Riechert, Melinda<mriechert@orrick.com> |
| CC | Ashley Gjovik<ashleymgjovik@protonmail.com>, Booms, Ryan<rbooms@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com> |
| Date | Monday, August 18th, 2025 at 1:51 PM |

Hello,

In that case, I'll be requesting the court grant a subpoena for the Twitter/X payment for Beezie's "promotions." Depending on what card was used for that payment and name/company attached, I will then move for a subpoena of Orrick and/or Kate.

If you are certain that Orrick and Apple were not involved in the Beezie Twitter posts, then you should assumably support my subpoena because it would then clear Orrick and Apple from the matter. Please confirm if you will object or if I can say you stipulate/agree to my request.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with [Proton Mail](#) secure email.

On Monday, August 18th, 2025 at 4:30 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> Your assumptions are completely unfounded. Any attempt to subpoena records or testimony from Orrick or Kate Juvinall is baseless and we will object.
>
> **Melinda Riechert**
>
> Partner