Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court

## Northern District of California

| | |
|---|---|
| Ashley M. Gjovik,<br>*an individual*,<br><br>    Plaintiff,<br><br>    vs.<br><br><br>Apple Inc.,<br>a corporation,<br><br>    Defendant. | Case No.<br>3:23-CV-04597-EMC<br><br>Plaintiff's Part 1,<br>Request for Production,<br>Of Phase 1 Discovery<br><br>Preparation for the ADR<br>Settlement Conference<br><br>Served: Oct. 30 2024 |

# SUMMARY

Pursuant to Rule 34 of the Code of Federal Regulations Title 29, and the Orders of the court in *Ashley Gjovik v. Apple Inc*, 3:23-CV-04597-EMC, Ashley Gjovik ("Plaintiff") serves Apple ("Defendant") this request for production of documents within the scope of the court's Order for "Phase 1" discovery for Claims 1 and 3 in the Fourth Amended Complaint (ie *Tamney* and § 6310), as discussed with Defendant since May 2024, and with the scope of the latest Order on Oct. 1 2024.

Plaintiff refers to this request as Part 1 of Phase 1 discovery and this specific request is limited at this time to discovery within the scope of Claims 1 and 3, however does not foreclose Plaintiff from filing additional Part 1 discovery requests for additional retaliation claims not challenged or otherwise survived, or further discovery on Claim 1 and 3.

Pursuant to the Federal Rules of Civil Procedure 26 and 34, Defendant shall, within thirty (30) days, produce copies of the following documents via email, document repository / sharing tool, or other agreed upon digital format. For

— 1 –

records that cannot be transmitted digitally, Defendant and Plaintiff shall work out a physical meeting for Plaintiff to inspect the documents / records (such as a Boston-based Apple office/store or Orrick offices).

Prior discussions of Phase 1 discovery did not include formal requests for production, and many documents had been requested in email, for months, with no production given. Defendant has known of these types of requests since February 2024, eight months ago. There should be no delay. Documents shall be produced with rolling production whenever possible and reasonable.

Defendant shall please identify the source of each of the documents produced and label them to correspond to the categories in this request. Where a document exists in a non-PDF format, such as a Word or Pages document, Plaintiff requests PDF production and also production of the digital file via a file sharing tool and/or CD-ROM with metadata preserved.

If it is claimed that the attorney-client privilege or any other privilege is applicable to any document sought, Defendant shall specific the privilege claimed and the factual basis Defendant contends supports the assertion of privilege, and identify the document's date, nature, subject

— 2 —

matter, author/preparer, addressee/recipients, and number of pages.  A PRIVLEDGE LOG MUST BE PROVIDED TO PLAINTIFF WITH THE PRODUCTION.

In the event that any document sought by this request has been destroyed, discarded, or otherwise disposed of, that document is to be identified as completely as possible including the author/preparer, addressee/recipients, date, subject matter, reason for disposals, person who authorized disposal, and persons who disposed of the document.

Defendant shall promptly contact Plaintiff to clarify any ambiguities, to request reduced scope of requests if otherwise would object to the request, and/or to request answers to any blocking questions related to this request.

# DEFINITIONS

The term "document(s)" is used in the broadest possible sense and means, without limitation, any written, printed, typed, digitized, photographic, computerized, recorded, or otherwise reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. It includes the original and any nonidentical copies thereof, whether

— 3 —

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

different from the originals by reason of any notation made on such copies or otherwise.

The term "concerning" means referring to, describing, evidencing, or constituting.

The terms "relate to" and "related to" shall be construed in their broadest possible sense and shall mean and refer to reflecting, referring, evidencing, describing, constituting, showing, memorializing or otherwise connected to the subject matter referred to in a particular request.

The term "person" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

The term "Gjovik's management chain" means David Powers, Dan West, Yannick Bertolus, John Ternus, and Tim Cook. (Also Dan Riccio if/when he was in that role).

The term "communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, emails, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

— 4 —

Phase 1; Part 1

<u>Employee Relations Case Management Platform, Case File Record for and about Plaintiff</u>

1.  The case file from Defendant's Employee Relations Case Management Platform concerning Jenna Waibel's investigation into Gjovik starting at or before March 2021 (or whatever it was coded as when Waibel became involved in March 2021) through September 10 2021. (Including notes or comments from people other than Waibel).

2.  The case file from Defendant's Employee Relations Case Management Platform concerning Jenna Waibel's investigation into Gjovik's concerns starting in March 2021 through September 10 2021. (Including notes or comments from people other than Waibel).

3.  The case file from Defendant's Employee Relations Case Management Platform concerning Ekelemchi Okpo's investigation into Gjovik's concerns starting in July 2021 through September 10 2021. (Including notes or comments from people other than Okpo).

4.  The case file from Respondent's Employee Relations Case Management Platform concerning any investigation into Gjovik starting on August 4 2021 through September 10 2021.

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

(Including notes or comments from people other than Okpo).

5. All documents concerning the August 2021 "Issue Confirmation", document for Plaintiff, and from document Plaintiff, including drafts (with time stamps and/or metadata) and associated emails or other communications, through Sept. 10 2021.

6. The Business Conduct system record for Complainant's August 2021 Business Conduct Complaint including any notes, updates, status, and/or resolution. Also any emails were sent by Business Conduct about the Complaint through Sept. 10 2021.

Inspections & Reports

7. All indoor air testing results and reports, air test plans, cracked slab repair plans, cracked slab inspection reports, cracked slab sealing reports, SSD/SSV maintenance reports, engineer certifications of work performed, invoices, work orders, related to the CERCLA engineering controls at 825 Stewart Drive from Jan 1 2021 through Sept 10 2021.

8. Any status report, meeting notes, or other type of summary sent to or from Gjovik's management chain and/or

— 6 —

Helen Polkes, Jenna Waibel, Ekelemchi Okpo, or Tony Lagares concerning the August 19 2021 US EPA inspection of 825 Stewart Drive, from July 25 2021 through Sept. 10 2021.

9.   All documents in possession of Gjovik's management chain, Helen Polkes, Jenna Waibel, Ekelemchi Okpo, Tony Lagares, Atone Jain, Michael Seiger, or Tom Huynh that concern both the Plaintiff and the property at 3250 Scott Blvd, from Sept. 1 2020 through Spet. 10 2021.

10.  Any "safety plan" or "EHS plan" or "operations and maintenance plan" for 825 Stewart Drive or 3250 Scott Blvd in place between Jan. 1 2020 and Sept. 10 2021.

## Performance Reviews

11. All documents or communications with Gjovik's management chain, Helen Polkes, Jenna Waibel, Ekelemchi Okpo, or Tony Lagares, concerning Complainant's 2021 mid-year performance review, dated from Jan 1 2021 through Sept. 10 2021.

12. All documents or communications with Gjovik's management chain, Helen Polkes, Jenna Waibel, Ekelemchi Okpo, or Tony Lagares, concerning Complainant's 2021 annual performance review and compensation determination dated

— 7 –

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

from Jan 1 2021 through Sept. 10 2021. This includes the peer feedback received in the HR tool from Gjovik's peers, and any drafts of the review in that tool.

Termination Letter

13. Any drafts, comments, or revisions of the termination letter and notice sent to Complainant on Sept. 9 2021. (Please include timestamps when possible).

14. Any email discussion, meeting notes, or other documents between Plaintiff's management chain, Human Resources, Employee Relations, or Global Security that involved planning whether or not they would terminate Plaintiff, and how they would terminate Plaintiff dated from Jan. 1 2021 through Sept. 10 2021.

Creepy User Studies

15. Any documents, contracts, or agreements that Plaintiff supposedly signed, accepted, or otherwise responded to related to the "Gobbler" / "Glimmer" app between Jan. 1 2016 and Sept. 10 2021. This includes any Informed Consent Forms and/or NDAs.

16. Any emails or other documents, in possession of

— 8 —

her management chain (David Powers, Dan West, Yannick Bertolus, John Ternus, Tim Cook) or Human Resources/Employee Relations (Helen Polkes and her management chain, Waibel and Okpo and their management chain) discussing the Aug. 31 2021 "*Apple Cares About Privacy, Unless you Work at Apple,*" Verge article, dated from Aug. 20 2021 through Sept. 10 2021.

17. Any responses transmitted from Apple to The Verge and/or the reporter Zoe Schiffer, about the *Apple Cares About Privacy, Unless you Work at Apple,*" Verge article, in response to the reporter's request for comment prior to publication. (Including any responses after publication, through Sept. 10 2021).

Other

18. Whatever email or emails that Orrick referred to in their U.S. Dept. of Labor response in 2022, that were dated at or around July 20 2021, that Orrick says includes comments from Plaintiff about a medical leave or administrative leave.

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

Signed By:

_____

Ashley Gjovik (pro se)

/s/ Ashley Gjovik

DATED: Oct. 30 2024

Physical Address: Boston, Massachusetts

Mailing Address: 2108 N St. Ste. 4553 Sacramento, CA, 95816

Phone: (408) 883-4428

Email: legal@ashleygjovik.com

— 10 —

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

# Appendix

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

# Appendix: 4AC Claim One Text Excerpt

I.   Count One: Wrongful Discharge in Violation of Public Policy (California *Tamney* tort claim)

Apple retaliated against Gjovik and discharged Gjovik's employment for a variety of reasons that violated public policy. Among other unlawful reasons, Gjovik was terminated in violation of the "*strong public interest*" reflected "*in encouraging employee reports of illegal activity in the workplace.*" Certain concurrent claims are incorporated here as Tamney sub-claims. Specifically: Cal.Lab.C. §§ 96(k), 98.6, 232, 232.5, 1102.5, and 6310. The following sub-claims are included in addition:

a. <u>Illegal Data Harvesting [Cal. Const. Article I, Section 1; FTC Act]</u>

Apple's coercive and unlawful data collection of biometric, genetic, anatomical, and surveillance data is a gross and egregious violation of Article I Section 1 of the California Constitution; the California Privacy Rights Act; the U.S. FTC Act; Cal.Pen.C. § 637.7, and the International Covenant on Civil and Political Rights: Article VII on Free Consent.

Apple's supposedly legitimate reason for terminating Gjovik, while false and pretextual, is an illegality itself. Apple claims it fired Gjovik for complaining about Apple's surveillance of employees, including coercive data collection of biometrics and invasive 24/7 video recording. Apple discriminated against Gjovik (including terminating her employment) due to Gjovik's actions related to her constitutional and statutory right to privacy, which are rights that benefit the public, are substantial and fundamental rights, and which were firmly established at the time of discharge. Apple's decision to use this as their excuse for terminating Gjovik reveals Apple's animus against California employees' privacy rights.

Apple also intruded into Gjovik's seclusion, physically

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

and constructively invading Gjovik's privacy [Cal. Civ. Code § 1708.8(a), (b), (d)], and Apple surveilled Gjovik and forced Gjovik to surveil others with the always-on video camera in her iPhone, including in bathrooms and locker rooms in violation of California Labor Code § 435. The Gobbler app did take videos and photos of Gjovik in the bathroom and Gjovik has copies of those images.

Apple's use of Gobbler on Gjovik's phone also forced Gjovik to participate in Apple's unlawful acts by facilitating Apple's secret capture, storage, and processing of photos, videos, and biometric information of the public without their knowledge or consent. Apple's termination of Gjovik also stated that if Apple were to warn people what was occurring on her phone, she would be fired. Therefore, Apple's unfair business practices made consent from the public impossible. The public had a reasonable expectation of privacy for their highly sensitive biometrics.

Apple also violated Section 5 of the FTC Act in unlawfully coercing employees to provide personal and sensitive data for commercial product development, which was also engaging in unfair acts or practices that can harm consumers, cannot be avoided by consumers, and are unreasonable, and misleading statements to consumers.[1] Employees can be consumers under the FTC Act as an employee of Apple who goes out and buys an iPhone is an Apple customer who now owns an Apple product with consumer protection laws protecting them. (This sub-claim is connected to the Cal. B&P Code § 17200 *et seq.* claim).

b. <u>Employment Discrimination [Cal. DFEH; U.S. EEOC]</u>
Gjovik reported and testified about topics including complaints about sex, gender, and disability discrimination, which are "fundamental" rights for the purpose of a *Tamney* claim. Gjovik filed Cal. DFEH and U.S.

---

[1] US FTC, FTC Act Section 5: Unfair or Deceptive Acts or Practices, Consumer Compliance Handbook

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

EEOC claims on August 12 2021, and proceeded to testify and provide evidence, requesting a Right to Sue letter, which she was granted on September 9 2021, just hours before Apple fired her.

Apple retaliated against Gjovik for opposing Apple's discriminatory practices. Gjovik also reported to U.S. NLRB and the U.S. Department of Justice Civil Rights before her termination. Apple discriminated against Gjovik (including terminating her employment) due to Gjovik's actions related to a constitutional and statutory right to be protected from discrimination due to her sex and due to her disabilities, which is a right that benefits the public, is a substantial and fundamental right, and which was firmly established at the time of discharge.

    c. <u>Crime Victim/Witness Discrimination [Cal. Labor Code § 230(e)]</u>

Apple discriminated against Gjovik (including terminating her employment) due to Gjovik's actions related to a constitutional and statutory right to be protected from crime and seek justice for injury caused by crime, which is a right that benefits the public, is a substantial and fundamental right, and which was firmly established at the time of discharge [Cal. Lab. Code § 230(e)]. Gjovik was a *"victim of a crime that caused physical injury"* and she suffered *"physical, psychological, and financial harm due to the attempted commissions of a crime or delinquent act."*

    d. <u>Legislative Witness Discrimination [Cal. Gov. Code § 9414]</u>

Apple knew Gjovik was talking to legislatures about what occurred to her next to ARIA, and Apple knew that it was Apple who was responsible for Gjovik's harm, despite Gjovik not knowing that fact yet. Apple knew Gjovik may testify at legislative committees about the air pollution caused by Apple. Apple undertook an effort to ensure Gjovik did not testify and to harass Gjovik because Gjovik may testify to a committee.

— 14 —

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC

Apple also knew Gjovik was talking to elected officials about its retaliation against Gjovik after her termination, including a State Senator, a US Representative, and a US Senator. It is enough to establish a nexus that Apple had reason to think Gjovik planned to be a witness for an agency or committee. It is also illegal under California Penal code to intimidate witnesses, or to threaten witnesses before and/or after testimony. [Cal Penal Code 140(a) 137(b) 136.1].

Further, Apple's also violated Cal. Gov. Code § 9414 (a misdemeanor public offense) by harassing and retaliating against Gjovik, by attempting to prevent and dissuade Gjovik's testimony for a proceeding, and by depriving, threatening, and attempting to deprive or requesting Gjovik not be employed due to Gjovik being a witness for a committee, and giving testimony to a committee as a witness or victim.

4AC pages 45–48.

## Appendix: 4AC Claim Three Text Excerpt

II.Count Three: Cal. Labor Code § 6310 (Violation of Cal. Labor Code § 6310)

Apple violated § 6310 via discrimination, suspension, discharge, or threat of discharge against Gjovik for Gjovik complaining about unsafe work conditions or practices, instituting, or causing to be instituted proceedings related to her right to safe and healthful working conditions, testifying about workplace safety, and exercised her rights under the California OSH Act. Apple also took the above negative actions due to fear that Gjovik would engage, or engage further, in the activities above. Gjovik's safety complaints and inquiries were a substantial motivation reason for Apple's decision to discharge, discipline, and

discriminate against Gjovik.

Apple discriminated against and discharged Gjovik because Gjovik complained about safety and health conditions or practices at the workplace to Apple managers and her coworkers, including chemical exposure. Apple discriminated against and discharged Gjovik because Gjovik reported work-related injuries and illnesses, and requested information about work-related injury and illness reports or records. Apple knew about Gjovik's complaints through conversations, emails, meeting notes, internal complaints, external complaints, public interviews, and social media posts. Gjovik filed a Retaliation claim with the California Department of Labor on August 29 2021, and Apple was notified of such before her termination. Gjovik complained of unsafe work conditions and internal violations of safety laws/rules/standards to Apple, the U.S. EPA, CalEPA, and OSHA.

Gjovik complained about violations of, and issues related to, numerous topics, including:
- HazCom and employee exposure to chemicals [Cal.Lab.C. §§ 6398, 6400–6405, 6408; 8 Cal. Code. Reg. § 340.2; 29 CFR Z; OSH Act § 1910.1020]
- COVID–19 safety and communication [Cal.Labor.C. §§ 6325; 6409.6, 6432]
- Wildfire smoke safety [Cal.C.Reg. Title 8, § 5141.1]
- Employee injury tracking and reporting [8 Cal.C.Reg. § 14300]
- Efforts to reduce e-waste; and Apple's prior e-waste (Universal Hazardous Waste) violations. [Cal. Health/Safety; RCRA]
- Environmental safety including vapor intrusion exposure [Cal.Lab.C. § 6406; CERCLA/SARA, RCRA, CAA, CWA, OSH Act HazCom]
- Right to Know [EPCRA; Cal.Lab.C. § 6399.7] and Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986 [Cal. Health & Safety Code §§ 25249.5 to 25249.14].
- OSH Act Workplace Violence [Cal.Lab.C. §§ 6401.7,

— 16 —

6401.9]

Apple retaliated against Gjovik preemptively out of fear that Gjovik would file additional complaints related to health and safety at the workplace. Apple hoped its retaliation would cause Gjovik to drop her existing complaints out of fear and intimidation, and to prevent Gjovik from filing additional complaints.

4AC pages 51-52.

Pl's Req. for Prod., Phase 1, part 1, req 1 | Case 3:23-CV-04597-EMC