Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**,
*an individual*,

**Plaintiff**,

v.

**APPLE INC.**,
*a corporation*,

**Defendant**.

**Case No. 3:23-cv-04597-EMC**

**District Judge**: Honorable Edward M. Chen

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION**

**Under Cal. Labor Code 98.6, 1102.5 6310, & the Tamney Termination in Violation of Public Policy**

**Hearing:**

Dept: Courtroom 5, 17th Floor, San Francisco

Date: June 11 2026 1:30 p.m.

i

## TABLE OF CONTENTS

I.   NOTICE OF MOTION AND MOTION                                    1

II.  MEMORANDUM OF POINTS AND AUTHORITIES                           1

A.   INTRODUCTION                                                   1

B.   STATEMENT OF ISSUES TO BE DECIDED                              2

C.   STATEMENT OF FACTS                                             3

D.   LEGAL STANDARDS                                                8

   i.   THE SUMMARY JUDGMENT STANDARD REQUIRES THE COURT
   TO APPLY THE SUBSTANTIVE LEGAL STANDARD TO THE
   UNDISPUTED FACTS OF THIS CASE.                                   8

   ii.  TAMENY TERMINATION IN VIOLATION OF PUBLIC POLICY            9

   iii. CAL. LABOR CODE §§ 98.6/98.7; § 98.6 via §§ 96(k) & 232.5   10

   iv.  CAL. LABOR CODE § 1102.5                                    10

   v.   CAL. LABOR CODE § 6310                                      11

E.   ARGUMENT                                                       11

   i.   THE MATERIAL FACTS ARE UNDISPUTED ON DEFENDANT'S
   OWN RECORD.                                                      11

   ii.  PLAINTIFF ENGAGED IN PROTECTED ACTIVITY UNDER EACH OF
   THE FOUR STATUTES AS A MATTER OF LAW.                           13

   iii. DEFENDANT'S ADMITTED REASONS ARE DIRECT EVIDENCE OF
   RETALIATION; OVERLAPPING AFFIRMATIVE DEFENSES FAIL.            17

   iv.  CAUSATION IS ESTABLISHED UNDER THREE INDEPENDENT
   THEORIES.                                                       19

F.   CONCLUSION                                                     25

ii

# TABLE OF AUTHORITIES

**I.    Cases**

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) — 25

*Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) — 9, 18, 20

*Barbee v. Household Auto. Fin. Corp.*, 113 Cal.App.4th 525 (2003) — 9, 10, 13, 14, 16

*Boston v. Penny Lane Ctrs., Inc.*, 170 Cal.App.4th 936 (2009) — 9

*Cabesuela v. Browning-Ferris Indus.*, 68 Cal.App.4th 101 (1998) — 11, 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) — 8

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) — 21

*Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93 (1998) — 23, 24

*Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009) — 15

*Dawson v. Entek Int'l*, 630 F.3d 928 (9th Cir. 2011) — 21

*DeJung v. Superior Court*, 169 Cal.App.4th 533 (2008) — 9

*Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108 (9th Cir. 2011) — 25

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) — 9

*France v. Johnson*, 795 F.3d 1170 (9th Cir. 2015) — 21

*Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003) — 11, 16

*Gantt v. Sentry Ins.*, 1 Cal.4th 1083 (1992) — 9

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1998) — 9

*Green v. Ralee Eng. Co.*, 19 Cal.4th 66 (1998) — 9

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317 (2000) — 20

*Haney v. Aramark Uniform Servs., Inc.*, 121 Cal.App.4th 623 (2004) — 20

*Hanna v. Plumer*, 380 U.S. 460 (1965) — 9

*Harris v. City of Santa Monica*, 56 Cal.4th 203 (2013) — 11

*Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997) — 9

*Hentzel v. Singer Co.*, 138 Cal.App.3d 290 (1982) — 11, 16

*Hill v. NCAA*, 7 Cal.4th 1 (1994) — 9

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) — 12

*Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973 (9th Cir. 2022) — 11, 14, 15

*Kortan v. California*, 5 F.Supp.2d 843 (C.D. Cal. 1998) — 18

*Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703 (2022) — 2, 11, 20

*Light v. Cal. Dep't of Parks & Recreation*, 14 Cal.App.5th 75 (2017) — 20

*Lujan v. Minagar*, 124 Cal.App.4th 1040 (2004) — 11, 16, 21

*Marano v. Dep't of Justice*, 2 F.3d 1137 (Fed. Cir. 1993) — 20

*McRae v. Dep't of Corr. & Rehab.*, 142 Cal.App.4th 377 (2006) — 12

*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) — 16

*Miller v. Dep't of Corr.*, 36 Cal.4th 446 (2005) — 15

*Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243 (2009) — 24

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493 (9th Cir. 2000) 21

*Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007) — 22

*Porter v. Cal. Dep't of Corr.*, 419 F.3d 885 (9th Cir. 2005) — 22

*Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95 (2004) — 21

*Roman Catholic Bishop v. Superior Court*, 42 Cal.App.4th 1556 (1996) — 16

*Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993) — 11, 21

*Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406 (9th Cir. 1996) — 9

*Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080 (9th Cir. 2001) — 9, 19

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011) — 2, 21

*Stevenson v. Superior Court*, 16 Cal.4th 880 (1997) — 9

*Tameny v. Atl. Richfield Co.*, 27 Cal.3d 167 (1980)                                        9
*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009)                 12
*Wallace v. County of Stanislaus*, 245 Cal.App.4th 109 (2016)          9, 18, 20
*Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir. 1994)                        12
*Winter v. NRDC*, 555 U.S. 7 (2008)                                                            25
*Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346 (9th Cir. 1984)            15
*Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005)                       15, 16, 18
*Zirpel v. Alki David Prods., Inc.*, 93 Cal.App.5th 563 (2023)              10, 14

**II.     Statutes**
42 U.S.C. § 2000e-3(a)                                          15
Cal. Evid. Code § 603                                          9, 10, 19
Cal. Evid. Code § 605                                          19
Cal. Gov. Code § 12923                                       15
Cal. Gov. Code § 12940(h)                                   10, 15, 16, 19
Cal. Gov. Code § 12964.5                                     10, 14
Cal. Lab. Code § 96(k)                                         10, 17, 18
Cal. Lab. Code § 98.6                                           1, 2, 3, 9, 10, 14, 16, 17, 18, 19, 25
Cal. Lab. Code § 98.7                                           10
Cal. Lab. Code § 232.5(c)                                     10, 17
Cal. Lab. Code § 1102.5                                       2, 3, 10, 15, 16, 17, 19, 25
Cal. Lab. Code § 1102.6                                       2, 20
Cal. Lab. Code § 6310                                         2, 3, 11, 16, 17, 20, 25

**III.     Rules**
Fed. R. Civ. P. 56                                               8
Fed. R. Civ. P. 65                                               1
Fed. R. Evid. 302                                               9, 10, 19
CACI 4605                                                         11, 20
Civ. L.R. 7-2                                                     1
Civ. L.R. 7-4(a)(3)                                             2

**IV.     Constitutional Provisions**
Cal. Const. Art. I, § 1                                         9, 10, 13, 18

iv

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION

## V.    NOTICE OF MOTION AND MOTION

1.    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on June 11 2026 at 1:30 PM, in Courtroom 5, 17th Floor, Plaintiff Ashley Gjovik will move the Court under Federal Rules of Civil Procedure 56 and 65 for: (1) partial summary judgment on liability for specific theories under her *Tameny* claim and her retaliation claims under California Labor Code §§ 98.6, 1102.5, and 6310, with damages reserved for trial; and (2) a preliminary injunction reinstating Plaintiff to payroll and medical benefits at the level in effect on the date of her termination. Plaintiff's other pending claims and/or subclaims are preserved for trial. This Motion is based on this Notice, the Memorandum of Points and Authorities, the concurrently filed Declarations of Ashley Gjovik and hyperlinked exhibits, the pleadings and records on file, and any further evidence received at the hearing. The schedule was set by the Order at Dkt. No. 273 and Motion filed in compliance with Civ. L.R. 7-2 - 7.5.

## VI.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    <u>INTRODUCTION</u>

2.    Defendant Apple Inc. fired Plaintiff on September 9, 2021, and stated three reasons. Each is itself conduct California law protects against retaliation: (1) a Twitter post made during nonworking hours complaining about a culture of retaliation and the employer's surveillance of workers; (2) a repeated request that investigatory communications be in writing due to concerns of misrepresentation and made to preserve a record for her NLRB proceeding and her other pending complaints; and (3) Plaintiff's sexual harassment complaint against her senior director. Defendant has admitted this record across its sworn pleadings, interrogatory responses, RFA responses, and the depositions of five witnesses, including the Vice President who sent the termination email. The material facts are undisputed.

1

3.     Three independent causation theories support liability; any one suffices. First, Labor Code § 98.6(b)(1), effective January 1, 2024, creates a rebuttable presumption of retaliation when an employer takes adverse action within 90 days of protected activity. The presumption attaches on undisputed facts and cannot be rebutted: retaliation does not rebut a presumption of retaliation. Second, under *Lawson v. PPG Architectural Finishes, Inc.,* 12 Cal.5th 703 (2022), contributing-factor causation is established by Defendant's own characterization of its decision, and Defendant cannot carry its clear-and-convincing § 1102.6 same-decision burden because no legitimate independent reason exists in the record.

4.     Third, the undisputed evidentiary record independently establishes causation: Defendant's explanations are conflicting, shifting, and ever-changing; termination came within days/weeks of protected activity; Defendant gave no warnings and skipped every step of its progressive-discipline policy; Defendant shifted rationales across five sworn sources; and cat's-paw causation under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), runs through HR, Legal, and Global Security into the Vice President's decision on Defendant's own deposition record.

5.     Plaintiff also seeks a preliminary injunction reinstating her to payroll and to her medical, dental, and vision insurance pending final judgment, per the Court's direction to include that request in this Motion. (Order at Dkt. 273, Jan. 13, 2026.)

## B.     <u>STATEMENT OF ISSUES TO BE DECIDED</u>

6.     This Motion addresses liability under four claims in the Fifth Amended Complaint (Dkt. No. 142): *Tameny* (Count One); § 1102.5 (Count Two); § 6310 (Count Three); and § 98.6 (Count Four). All other factual theories and subclaims are reserved for trial. Under Civ. L.R. 7-4(a)(3), the issues are: Whether the § 98.6(b)(1) rebuttable presumption attaches on the undisputed facts and is unrebutted, establishing liability under § 98.6; Whether Defendant's admitted reasons for the termination are themselves protected activity as a matter of law,

2

establishing liability under § 98.6 and *Tameny*; Whether the undisputed evidentiary record establishes causation under the applicable substantive standards, establishing liability under *Tameny*, § 1102.5, § 98.6, and § 6310; Whether Plaintiff is entitled to a preliminary injunction reinstating her to payroll and to medical, dental, and vision insurance pending final judgment.

### C.    STATEMENT OF FACTS

7.    Plaintiff was employed by Apple as a Senior Engineering Program Manager from February 23, 2015 until her termination on September 9, 2021, reporting up through Director David Powers and Senior Director Dan West to Yannick Bertolus (SW QE Engineering VP, Hardware). (Answer ¶¶ 153, 183; Ex. 32, Bertolus Dep. 22:13-15, 24:10-14, 27:3-4.) She received positive reviews, raises, and promotions each year. (FAC ¶¶ 59-60, 69.)

8.    On March 17, 2021, Plaintiff emailed her management chain raising vapor-intrusion concerns about her office at 825 Stewart Drive, a federal Superfund site. (Answer ¶¶ 72, 73.) On March 18, Michael Steiger (EH&S) forwarded that email internally to Schmidt, Sidlow, and Creighton. (Ex. 16.) Powers forwarded Plaintiff's email stating Plaintiff "should be keeping these emails private and not needlessly scaring the team about something she doesn't know about." (Answer ¶ 75.) On March 22, Powers told Plaintiff she was "not allowed" to discuss her safety concerns with anyone other than him, EHS, and investigator Jenna Waibel. (Ex. 19 at 16.) On April 5, West texted Plaintiff that raising EHS concerns was "kicking a hornet's nest." (Answer ¶ 79.) Plaintiff reported concerns about environmental compliance at her office to the U.S. EPA from April 2021 through Aug. 2021. (Answer ¶ 89; Ex. 12.)

9.    Plaintiff was organizing with coworkers around COVID-19 safety concerns. On June 14, 2021, Plaintiff emailed Tim Cook and SVP of People and Retail Deirdre O'Brien with a petition/letter, video, survey results, and employee signatures. On July 23, 2021, the New York Times quoted Plaintiff criticizing Apple's COVID-19 return-to-work response; on July 24, it

3

made her quote the Quotation of the Day. (Answer ¶ 115.) Apple admits press outlets covered Plaintiff through August and September 2021, that she provided quotes and information to journalists, and that it reviewed her public social-media posts before terminating her. (Answer ¶¶ 206, 246.) Apple opened an investigation into the Plaintiff due to her public communications about workplace safety related to COVID-19. (Ex. 2-3).

10.    Between July 23 and August 23, 2021, Apple opened at least ten Business Conduct tickets tracking Plaintiff's press activity, Twitter posts, Slack activity, and website. (Exs. 2-11.) Employee Relations Business Partner Manager Antonio Lagares, supervisor of Waibel, Okpo, and Kagramanov, personally updated the first tickets: "we are aware and addressing this issue" (July 28); "we are aware of this matter and it is part of a broader investigation and collaboration with ER/Legal" (July 29). (Exs. 2-3.) Subsequent entries directed that "any case having to do with Ashley G. is currently being escalated to Adelmise [Warner, Sr. Director, Employee Relations] and or Debbie [Rice, Sr. Director, Legal – HR] directly and is being investigated." (Exs. 4-11.)

11.    Plaintiff had complained to EPA that there were cracks in the floor and Apple refused to tell EPA. Between July 27 and August 2, 2021, Apple was notified that the EPA had requested an inspection of Plaintiff's office. (Answer ¶ 117.) Apple asked EPA to sign a nondisclosure agreement asserting the inspection and any violations were Apple Confidential; EPA refused. (Ex. 13.) On August 4, 2021, Apple EHS began air testing at Plaintiff's office and began sealing cracks and gaps in the floor, work continuing through August 18. (Ex. 17.) Within hours of testing commencing, Okpo placed Plaintiff on indefinite administrative leave and "removed her from the workplace". (Ex. 34, Okpo Dep. 71:9-15.)

12.    Apple admits telling Plaintiff the leave "ensures that [she] [is] removed from the workplace." (Answer ¶ 249.) Plaintiff was planning to retrieve from her office the next day,

4

August 5, a laptop containing text-message evidence relevant to her harassment complaint against West. (Ex. 19 at 21.) Okpo later cited Plaintiff's inability to produce the full text exchange as the basis for his "misleading complaint" finding. (Ex. 34, Okpo Dep. 121:7-18.) EPA's August 19 inspection report noted "freshly sealed cracks" (Exs. 14-15.)

13.    On August 16, 2021, Okpo sent Plaintiff a draft "Issue Confirmation" of her complaints; Plaintiff revised and finalized it on August 23 and filed it through the Business Conduct Helpline as Ticket HRC000017207, which was directed on August 23 to Rice and Warner and closed August 27. (Ex. 33; Ex. 19; Ex. 11.) Okpo testified that "anything that was in the [I]ssue [C]onfirmation was something that [he] investigated." (Ex. 34, Okpo Dep. 41:20-25.) The document records Plaintiff's complaints of sexual harassment, hostile work environment, discrimination, workplace safety issues, and retaliation, including West's 2017 arrangement of a sexual or romantic liaison between Plaintiff and a sous chef at a restaurant where West, Bertolus, and the head chef are personal friends, accompanied by a $200+ dinner West paid for. (Ex. 19 at 5-31.) Okpo's document provided that "the scope of [his] investigation does not include the concerns that [Plaintiff] raised with [Apple's] Environmental Health and Safety team." (Ex. 34, Okpo Dep. 44:2-10.) Okpo testified that Waibel's prior investigation had closed in June 2021 and that he does not know who was investigating Plaintiff's retaliation-for-EHS complaints during July-September 2021. (Ex. 34, Okpo Dep. 45:5-47:1.)

14.    On August 12, 2021, Plaintiff filed a charge with DFEH and the EEOC; her Right to Sue letter issued September 9, 2021, hours before termination. (Answer ¶ 220; Exs. 20-21.) On August 26, she filed NLRB Case No. 32-CA-282142. (Answer ¶¶ 152, 208, 220; Ex. 22.) On August 29, she filed an OSHA Whistleblower Protection Program complaint and a California Labor Commissioner complaint. (Answer ¶¶ 155, 230-31, 239; Ex. 23.) On August 26, 2021 — three days after Plaintiff transmitted her Issue Confirmation to Rice and Warner, and four days

5

before the Twitter post Bertolus identified as the basis for his termination decision — Apple circulated by email an internal Keynote file entitled "Draft Exit Outcomes ACP.key." (Apple's Resp. to Pl.'s RFA No. 29.)

15.    On August 30, 2021 at 9:35 AM, Plaintiff posted on Twitter stating: "We're learning about #Apple's long history of systemic oppression & retaliation against employees when employees express concerns about discrimination, harassment, & other abuse. Why wouldn't Apple try to use our data & their internal surveillance infrastructure against us?" The post included a screenshot image. (Ex. 27.) Bertolus later identified this tweet as the one that triggered his termination decision. (Ex. 32, Bertolus Dep. 2005-2012.) Earlier that day, The Verge published an article titled "Apple Cares About Privacy, Unless You Work at Apple," including quotes from the Plaintiff and which noted "Apple did not respond to a request for comment from The Verge." (Ex. 28.) Apple admits Plaintiff shared the article, provided information, and helped the reporter. (Answer ¶¶ 159, 232.)

16.    On September 3, 2021, Okpo emailed Plaintiff asking to meet; Plaintiff responded in writing requesting communications continue in writing, citing her pending government complaints. (Answer ¶ 165.) Okpo did not respond for four days. (Ex. 34, Okpo Dep. 102:13-20.) On September 7 Okpo emailed again. (Answer ¶ 165.) Okpo testified his outreach concerned only the Chez TJ text exchange; he closed his entire investigation of all of Plaintiff's complaints because she requested written communications about that sub-issue; and he acknowledged no Apple policy prohibits written-communication investigations or requires oral only communication. (Ex. 34, Okpo Dep. 103:6-10, 106:6-10, 116:4-14, 118:11-16.)

17.    On September 9, 2021 at 12:24 PM, Waibel emailed Elizabeth Schmidt and Antone Jain transmitting notes from the July 7 meeting with Plaintiff regarding her EHS concerns and asserting Apple did not need to involve EPA. (Ex. 18.) At 2:08 PM, Kagramanov

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC        APRIL 23 2026

emailed Plaintiff from Employee Relations, without subject line, referencing a "sensitive intellectual property matter" and demanding she "connect as soon as possible today, within this hour." (Answer ¶ 174.) At 2:10 PM, Plaintiff offered in writing to participate in writing. (Answer ¶ 175.) At 2:27 PM, Plaintiff replied that the timing — the day before her NLRB affidavit — felt like witness intimidation and that she had forwarded the exchange to the NLRB attorney. (Answer ¶ 176.)

18.    At 2:50 PM, without responding to Plaintiff's offer, Kagramanov emailed that "[s]ince you have chosen not to participate in the discussion, we will move forward with the information that we have," and suspended Plaintiff's system access — 42 minutes after initial contact. (Answer ¶ 178; Ex. 35, Kagramanov Dep. 69:18-25, 72:3-6.) Kagramanov sent screenshots of the exchange to SVP Deidre O'Brien and copied Sr. Director Joni Reicher and Corporate Attorney Manager Isela Perez; he testified this was the only case in his three years at Apple in which he communicated directly with O'Brien, and that he cannot recall any other case of suspending system access within an hour of initial contact. (Ex. 35, Kagramanov Dep. 72:7-13, 115:20-116:1, 118:21-119:3, 130:13-131:5.)

19.    At 6:20 PM, Bowman (HR Business Partner Director, BHR Hardware (R&D)) emailed Bertolus summarizing that Kagramanov and Sophi Jacobs (Corporate Attorney Manager, Investigations) "reached out to Ashley to talk with her about allegations that she had disclosed confidential product-related information on Twitter." (Ex. 30.) Six minutes later, Bertolus replied: "Understood. I agree with the termination decision." (*Id.*) At 6:54 PM, Bertolus sent Plaintiff the termination letter drafted by Bowman. (Exs. 29, 31; Answer ¶ 183.)

20.    The letter stated: "Apple has determined that you have engaged in conduct that warrants termination of employment, including, but not limited to, violations of Apple policies. You disclosed confidential product-related information in violation of Apple policies and your

7

obligations under the Intellectual Property Agreement (IPA). We also found that you failed to cooperate and to provide accurate and complete information during the Apple investigatory process." (Ex. 29.) The letter identified no product, tool, study, image, or policy term. (*Id.*)

21.    On September 15, 2021, Apple's outside counsel David Eberhart (O'Melveny & Myers) emailed Plaintiff articulating additional termination rationales not in the September 9 email, including Plaintiff's complaints about Apple's requests to scan her ear canals and her disclosure of Gobbler-application images, and demanded Plaintiff remove three additional tweets and the Verge video. (Answer ¶ 184; Ex. 26.)

22.    On March 4, 2022, Apple counsel Jessica Perry (Orrick) submitted a DOL/OSHA position statement identifying two termination reasons using undefined code names "Alpha" and "Omega," and omitting any "misleading" hostile-work-environment complaint reason. (Ex. 25.) On August 4, 2025, Apple verified Rog #1 through Bowman, using the same undefined code names, adding an August 28 "Omega" tweet and omitting the "misleading" complaint reason. (Ex. 24.) In its Amended Answer, Apple pleads three termination reasons including the "misleading" complaint. (Answer ¶ 211.) Apple's Seventh Affirmative Defense pleads that Apple "learned — shortly after Plaintiff's employment was terminated — that Plaintiff admitted that she disclosed confidential product-related information to a journalist at the Verge." (Answer, Seventh Affirmative Defense.)

## D.    **LEGAL STANDARDS**

i.    **THE SUMMARY JUDGMENT STANDARD REQUIRES THE COURT TO APPLY THE SUBSTANTIVE LEGAL STANDARD TO THE UNDISPUTED FACTS OF THIS CASE.**

23.    Rule 56 "mandates the entry of summary judgment" where the record would not permit a rational trier of fact to find for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Summary adjudication is available on "each claim or defense — or the part of each claim or defense — on which summary judgment is sought." *Id.*;

8

*Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). Because state law supplies the rule of decision, substantive standards, presumptions, and burdens of proof are governed by California law. Fed. R. Evid. 302; *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 460 (1965); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090-91 (9th Cir. 2001). California Evidence Code §§ 603 and 605 govern the operation of § 98.6(b)(1)'s rebuttable presumption.

24.     Where the employer's own words supply direct evidence that protected activity motivated the adverse action, *McDonnell Douglas* burden-shifting is unnecessary. *Wallace v. County of Stanislaus*, 245 Cal.App.4th 109, 123 (2016); *DeJung v. Superior Court*, 169 Cal.App.4th 533, 550 (2008); *Bachelder v. Am. West Airlines*, 259 F.3d 1112, 1124-25 (9th Cir. 2001); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). The direct-evidence standard requires evidence that, if believed, proves retaliatory motive "without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

**ii.      TAMENY TERMINATION IN VIOLATION OF PUBLIC POLICY**

25.     California recognizes a tort claim for wrongful discharge where termination contravenes a fundamental public policy tethered to a statutory or constitutional provision. *Tameny v. Atl. Richfield Co.*, 27 Cal.3d 167, 172 (1980). The policy must be (a) delineated in a statutory or constitutional provision; (b) public; (c) well-established at the time of discharge; and (d) substantial and fundamental. *Stevenson v. Superior Court*, 16 Cal.4th 880, 889-90 (1997); *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1095 (1992).

26.     Multiple statutory and constitutional provisions supply the required public-policy tether. Article I, § 1 of the California Constitution is self-executing and confers a private right of action. *Hill v. NCAA*, 7 Cal.4th 1, 15-20 (1994); *Barbee v. Household Auto. Fin. Corp.*, 113 Cal.App.4th 525 (2003). Workplace-safety reporting to regulatory agencies also satisfies *Tameny*. *Green v. Ralee Eng. Co.*, 19 Cal.4th 66, 79 (1998); *Boston v. Penny Lane Ctrs., Inc.*,

9

170 Cal.App.4th 936, 947 (2009). Plaintiff's *Tameny* claim is tethered to Article I, § 1, Cal. Labor Code §§ 96(k), 232.5, 1102.5, and 6310, and Gov. Code § 12940(h).

### iii.    CAL. LABOR CODE §§ 98.6/98.7; § 98.6 via §§ 96(k) & 232.5

27.    Section 98.6(a) prohibits retaliation for "conduct described in § 96" and for the exercise of other rights within the Labor Code. Section 96(k), incorporated into § 98.6(a), reaches "lawful conduct occurring during nonworking hours away from the employer's premises." Cal. Lab. Code § 96(k); *Barbee*, 113 Cal.App.4th at 535-37. Section 232.5(c) independently prohibits discharge for disclosure of "information about the employer's working conditions." "Working conditions" is construed broadly to encompass wages, workplace safety, harassment and discrimination practices, workload, and internal policies affecting employees. *Grant-Burton v. Covenant Care, Inc*., 99 Cal.App.4th 1361, 1371 (2002). The California Court of Appeal has affirmed liability under §§ 232.5 and 1102.5, applying the "substantial motivating reason" standard. *Zirpel v. Alki David Prods., Inc.,* 93 Cal.App.5th 563, 578-82 (2023).

28.    Government Code § 12964.5 independently declares unenforceable any agreement or policy that "purports to deny the employee the right to disclose information about unlawful acts in the workplace," including information the employee reasonably believes pertains to unlawful conduct. Cal. Gov. Code § 12964.5(a)(2), (b). Section 98.6(b)(1), enacted by SB 497 and effective January 1, 2024, provides that where an employer takes adverse action within 90 days of protected activity, "there shall be a rebuttable presumption in favor of the employee's claim." Its operation is governed by California Evidence Code §§ 603 and 605, which shift the burden of proof to the employer. Cal. Evid. Code §§ 603, 605; Fed. R. Evid. 302.

### iv.    CAL. LABOR CODE § 1102.5

29.    Section 1102.5(b) prohibits retaliation for disclosing information the employee reasonably believes reveals a legal violation. Supervisors qualify regardless of investigatory authority, and the reasonable-belief standard does not require citation of a specific statute.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC          APRIL 23 2026

*Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 984-90 (9th Cir. 2022). Section 1102.6 establishes the burden-shifting framework: once the employee demonstrates by a preponderance that protected activity was "a contributing factor" in the adverse action, the employer bears the burden of proving by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons absent the protected activity. *Lawson*, 12 Cal.5th at 713, 718.

### v.     CAL. LABOR CODE § 6310

30.     An employer may not retaliate against an employee who makes a complaint about unsafe working conditions or work practices, whether made to the employer, Cal/OSHA, or "other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health." Cal. Lab. Code § 6310(a), (b); *Cabesuela v. Browning-Ferris Indus.*, 68 Cal.App.4th 101, 109 (1998); *Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 299 (1982); *Freund v. Nycomed Amersham*, 347 F.3d 752, 758-60 (9th Cir. 2003).  Section 6310 also prohibits preemptive retaliation — adverse action taken because the employer fears the employee may file a safety complaint. *Lujan v. Minagar*, 124 Cal.App.4th 1040, 1046 (2004); *cf. Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993). Causation is analyzed under the "substantial motivating reason" standard. CACI 4605; *Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013).

## E.     ARGUMENT

### i.     THE MATERIAL FACTS ARE UNDISPUTED ON DEFENDANT'S OWN RECORD.

31.     This Motion addresses the three reasons stated in the September 9, 2021 termination email (Ex. 29) and confirmed in Apple's Amended Answer (Answer ¶ 211) and in Bertolus's sworn deposition testimony (Ex. 32, Bertolus Dep. 99:11-15, 179:22-180:2). Additional rationales articulated by Defendant after termination — in the September 15, 2021 Eberhart letter, the March 2022 DOL position statement, and the August 2025 verified Rog #1

responses — are addressed below as evidence of pretext and as foreclosing same-decision defense. The prima facie burden is protected activity, adverse action, and causation, and the showing on summary judgment is "minimal." *McRae v. Dep't of Corr. & Rehab.*, 142 Cal.App.4th 377, 386 (2006); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

32.    A party cannot defeat summary judgment by contradicting its own prior sworn admissions. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991); *Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 998-99 (9th Cir. 2009). The material facts are established by Defendant's own sworn record: the Amended Answer, Apple's verified Response to Plaintiff's Rog #1 (Aug. 4, 2025), Apple's DOL position statement (Mar. 4, 2022), the termination email and Bowman-Bertolus email chain (Exs. 29, 30), and the depositions of Bertolus, West, Okpo, Kagramanov, and McKeon.

33.    Protected activity, knowledge, and adverse action are admitted. Defendant admits the Twitter post and Verge article (Answer ¶¶ 159, 232); the written-communications requests to Okpo and Kagramanov (Answer ¶¶ 165, 175, 180); the hostile-work-environment complaint concerning West (Answer ¶¶ 102, 211), the full scope of which Plaintiff documented in her August 23 Issue Confirmation (Ex. 19); Plaintiff's EPA reporting beginning April 2021 (Answer ¶ 89) and her complaints of retaliation for that activity (Ex. 34, Okpo Dep. 35-47); her NYT COVID-19 quotation (Answer ¶ 115); her Remote Work Advocacy campaign addressed to Cook and O'Brien (Ex. 1); and her filings with agencies (Answer ¶¶ 152, 155, 208, 220, 230-31, 239).

34.    Defendant admits reviewing Plaintiff's social-media posts before termination (Answer ¶ 246); each ER investigation and Business Conduct ticket system documents knowledge in real time, with Lagares personally updating tickets tracking Plaintiff's protected speech (Exs. 2-11). The August 23 Issue Confirmation was directed to Rice and Warner (Ex. 11); Kagramanov sent screenshots to O'Brien (Ex. 35, Kagramanov Dep. 115:20-116:1, 118:21-

12

119:3). Defendant admits the suspension of Plaintiff's system access (Answer ¶ 178), her administrative leave (Answer ¶ 249), and her termination (Answer ¶¶ 153, 183).

35.     Apple has conceded in verified discovery that Plaintiff raised "concerns during her employment with Apple, at least some of which may be construed as protected activity as defined under federal or state whistleblower, retaliation, or labor laws," and has identified the August 23 Issue Confirmation as the document setting forth those concerns. (Apple's Am. Resp. to Pl.'s Rog No. 3 (Set Three), Apr. 6, 2026.)

36.     Bertolus admitted he relied on characterizations from HR, Legal, and Global Security and had not independently reviewed the underlying records. (Ex. 32, Bertolus Dep. 102:2-12, 131:4-7.) The morning of his deposition, Bertolus spoke with non-lawyer employees Robert McKeon and Sophi Jacobs "to confirm that what you leaked was proprietary" (*id.* 2112-2128, 2134-2148), contradicting his earlier testimony that he "only worked with the lawyers" (*id.* 394-397); Apple's counsel instructed him not to answer whose idea it was (*id.* 2129-2132). Knowledge is undisputed at every level of the organization that participated in the termination.

**ii.     PLAINTIFF ENGAGED IN PROTECTED ACTIVITY UNDER EACH OF THE FOUR STATUTES AS A MATTER OF LAW.**

37.     Whether Plaintiff's conduct qualifies as protected activity is a question of statutory construction the Court decides on the undisputed facts. Each category qualifies under multiple provisions. **Privacy / working conditions — Twitter post and linked Verge article.** Plaintiff's August 30 Twitter post linking to the Verge article (Ex. 27) is protected under California public policy, each of which tethers the *Tameny* claim. Apple admits Plaintiff shared the article, helped the reporter, provided Gobbler-application details, and allowed inclusion of screenshots. (Answer ¶¶ 159, 232.) Bertolus testified this tweet was the basis for his termination decision. (Ex. 32, Bertolus Dep. 2005-2012.)

38.     Article I, § 1 of the California Constitution declares privacy an inalienable right,

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC          APRIL 23 2026

self-executing and enforceable against private actors. *Hill*, 7 Cal.4th at 15-20; *Barbee*, 113 Cal.App.4th 525. Plaintiff's public speech about employer surveillance of her body, home, and personal activities concerns a legally protected privacy interest. Section 96(k) via § 98.6(a) reaches lawful conduct during nonworking hours off the employer's premises. *Barbee*, 113 Cal.App.4th at 535-37. Section 232.5(c) via § 98.6(a) prohibits discharge for disclosure of "working conditions," broadly construed; surveillance of employees through company applications and biometric collection are working conditions. *Zirpel*, 93 Cal.App.5th at 578-82. Government Code § 12964.5 independently declares unenforceable any agreement purporting to restrict disclosure of reasonably-believed-unlawful workplace conduct. Section 1102.5(b) independently covers disclosure of practices Plaintiff reasonably believed violated state and federal law. *Killgore*, 51 F.4th at 984-90.

39.    Apple testified that it believes "[t]he only communications Apple is aware of pertaining to Plaintiff raising concerns about 'Privacy' involve her public dissemination of confidential Apple product information," specifically identifying the August 30 tweet, the Verge article, and related communications. (Apple's Am. Resp. to Pl.'s Rog No. 8 (Set Three), Apr. 6, 2026.) Apple's own sworn response confirms that the protected privacy speech and the conduct it labels a "confidential disclosure" are the same conduct.

40.    Apple's position on the Verge article is internally contradictory. Apple's verified Rog #1 and its verified factual bases for Affirmative Defenses Nos. 1, 2, 3, 8, 9, 10, and 13 each treat the August 30 Verge article as a pre-termination basis for the decision. Apple's Seventh Affirmative Defense pleads the same Verge article as something Apple "learned — shortly after Plaintiff's employment was terminated." (Answer, Seventh Affirmative Defense.) Apple has admitted it was contacted by the Verge for comment before publication and chose not to respond. (Apple's Resp. to Pl.'s RFA No. 18.) The article itself reports that "Apple did not

respond to a request for comment." (Ex. 28.) Apple's pre-termination awareness is established on its own admission.

41.    **Sexual harassment complaint — DFEH/EEOC and Issue Confirmation.** Plaintiff's DFEH/EEOC charge (Exs. 20-21), her August 23 Issue Confirmation (Ex. 19), and her ongoing complaints from May 2021 through August 2021 (Apple's Am. Resp. to Pl.'s Rog No. 2 (Set Two, AD #1), Apr. 6, 2026) are protected activity. EEOC/DFEH charges are categorically protected under Title VII's participation clause, 42 U.S.C. § 2000e-3(a), and Gov. Code § 12940(h); participation protection is not conditioned on the merits. *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1356 (9th Cir. 1984). Plaintiff's internal complaints are separately protected under the FEHA opposition clause. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1043, 1046-47 (2005). Statements made during an employer's internal investigation are independently protected. *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009).

42.    West's sexual-matchmaking conduct combined with the $200+ dinner, within a power-imbalance relationship West himself acknowledged, is conduct a reasonable person could believe unlawful. *Miller v. Dep't of Corr.*, 36 Cal.4th 446, 461-73 (2005); Cal. Gov. Code § 12923. West testified that Apple's own ER investigators told West his conduct was "not appropriate" and reflected a "power imbalance" — confirming the reasonableness of Plaintiff's belief from Apple's own witnesses. (Ex. 36, West Dep. 24:20-21, 25:1.) The complaint is also a § 1102.5(b) disclosure to persons with authority over another employee. *Killgore*, 51 F.4th at 984-90. Plaintiff's 2021 performance review included feedback from West dated July 2, 2021: "sometime during the year a switch flipped where Ashley seemed to stop assuming good intent with most leadership. I see the leadership team as largely aligned on I&D topics, yet she is letting perfection [be] the enemy of the progress." (Ex. 46.) This criticized Plaintiff for making complaints related to Inclusion and Diversity at Apple and treated her performance improvement

15

as requiring her to cease raising such concerns.

43.     Defendant's theory that Plaintiff's complaint was "misleading" arises out of an assertion that Plaintiff texted during the 2017 dinner that the sous chef was "cute" and had accepted the dinner. That is an independent FEHA violation. FEHA does not condition the right to complain on contemporaneous protest. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68 (1986) (voluntariness not a defense; welcomeness is the inquiry). Treating a protected complaint as itself misconduct is retaliation under § 12940(h). *Yanowitz*, 36 Cal.4th at 1043.

44.     Okpo testified the basis of his September 3 and 7 outreach — the outreach on which Apple built Reason (2) — was that Plaintiff had texted during the 2017 dinner that the sous chef was "cute," and he refused to communicate in writing about it. (Ex. 34, Okpo Dep. 3048-3060, 102:13-20, 116:4-14.) Reason (2) thus rests on Plaintiff's refusal to submit to unrecorded oral questioning, by a male investigator, about whether she had been interested in engaging in sexual activity the man her supervisor set her up with during the conduct underlying her harassment complaint. Plaintiff has a right to complain and a right to be free from intrusive questioning regarding her sexual activities. *Barbee*, 113 Cal.App.4th at 540 (citing *Roman Catholic Bishop v. Superior Court*, 42 Cal.App.4th 1556, 1567 (1996)).

45.     **Hazardous waste / EHS — Stewart 1 / TRW Microwave Superfund Site.** Plaintiff's EPA reporting and internal EHS complaints (see SOF; Answer ¶¶ 89, 117; Exs. 12-18) are protected under § 6310(a), § 98.6(a), § 1102.5(b), and *Tameny* (via *Green*, 19 Cal.4th at 82). This activity is protected under § 6310(a), § 98.6(a), § 1102.5(b), and *Tameny* (via *Green*, 19 Cal.4th at 82). *Hentzel*, 138 Cal.App.3d at 299-300; *Cabesuela*, 68 Cal.App.4th at 109; *Freund*, 347 F.3d at 758-60. Section 6310 also prohibits preemptive retaliation, which is directly on point given Apple's August 4 pre-inspection crack-sealing and its simultaneous removal of Plaintiff from the workplace. *Lujan*, 124 Cal.App.4th at 1046.

46.    **COVID-19 / return-to-work and Remote Work Advocacy.** Public statements about Apple's COVID-19 return-to-work response concern employee working conditions under § 232.5 and implicate workplace safety under § 6310. The statements occurred during nonworking hours and are further protected under § 96(k) via § 98.6(a). Each provision tethers *Tameny*. Plaintiff's June 14 direct communication to O'Brien establishes actual knowledge by the SVP — the same executive to whom Kagramanov later sent screenshots of the September 9 exchange in a pattern he testified was the only such communication in his three years at Apple. (Ex. 35, Kagramanov Dep. 115:20-116:1, 130:13-131:5.)

47.    **Participation in proceedings — agency filings and written-communications request.** The agency filings and written-communications requests are each protected under § 1102.5(b), which reaches employees "providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry." The NLRB, EEOC, DFEH, OSHA, and California Labor Commissioner are each public bodies. Plaintiff's California Labor Commissioner complaint provides an independent § 98.6 basis. The *Tameny* claim is tethered to § 1102.5's public-body provision and to the state-law filings. Okpo admitted he closed the entire investigation of all of Plaintiff's complaints because she requested written communications about a single sub-issue, and acknowledged no Apple policy prohibits written-communication. (Ex. 34, Okpo Dep. 103:6-10, 106:6-10, 116:4-14, 118:11-16.) Kagramanov admitted the "refusal to cooperate" determination rested on Plaintiff's request for a written record, and acknowledged no written Apple policy requires live investigation meetings. (Ex. 35, Kagramanov Dep. 57:7-15, 65:1-2, 106:6-10.) Apple's "refusal to cooperate" rationale therefore rests on conduct in which Plaintiff expressly offered, in writing, to cooperate. (Apple's Resp. to Pl.'s RFA No. 22.)

iii.    **DEFENDANT'S ADMITTED REASONS ARE DIRECT EVIDENCE OF RETALIATION; OVERLAPPING AFFIRMATIVE DEFENSES FAIL.**

48.    Defendant admits it terminated Plaintiff on September 9, 2021 (Answer ¶¶ 153,

17

183), the August 4 administrative leave (Answer ¶ 249), and the September 9 suspension of system access (Answer ¶ 178). Termination is the paradigmatic adverse action; suspension and forced leave also qualify. *Yanowitz*, 36 Cal.4th at 1054; *Kortan v. California*, 5 F.Supp.2d 843, 853 (C.D. Cal. 1998). Where the employer's own words supply direct evidence that protected activity motivated the adverse action, no burden-shifting analysis is required. *Wallace*, 245 Cal.App.4th at 123; *Bachelder*, 259 F.3d at 1124-25. Each of Defendant's three stated reasons is direct evidence of retaliation, because each is itself protected activity.

49.    **Reason (1) — August 30 Twitter post.** Defendant's termination email cites Plaintiff's disclosure of "confidential product-related information" under the IPA. (Ex. 29.) The operative conduct is the August 30 tweet Bertolus identified at deposition — a post complaining about Apple's "long history of systemic oppression & retaliation against employees" and Apple's use of "internal surveillance infrastructure" against employees, illustrated by a screenshot image. (Ex. 27; Ex. 32, Bertolus Dep. 2005-2012.) That tweet is protected under Art. I § 1, §§ 96(k), 232.5, 1102.5(b), and 98.6, and tethers *Tameny*. Terminating Plaintiff for this tweet is per se retaliation: Apple fired her for a tweet complaining of Apple's retaliation against employees.

50.    **Reason (2) — request for written communications.** Defendant's termination email cites Plaintiff's "fail[ure] to cooperate and to provide accurate and complete information." (Ex. 29.) The operative conduct is Plaintiff's September 3 and September 9 written-communications requests — made to preserve a record for her NLRB affidavit and pending government complaints. (Answer ¶¶ 165, 175; Ex. 34, Okpo Dep. 102:13-20; Ex. 35, Kagramanov Dep. 57:7-15.) Kagramanov and Okpo both testified the "refusal to cooperate" determination rested on this request, and each admitted no Apple policy prohibits written-communication investigations. (Ex. 35, Kagramanov Dep. 57:7-15, 65:1-2, 106:6-10; Ex. 34, Okpo Dep. 106:6-10, 116:4-14.) That conduct is protected under § 98.6 and *Tameny*.

18

51.    **Reason (3) — hostile-work-environment complaint.** Defendant characterizes Plaintiff's complaint about West as "misleading." (Answer ¶ 211.) Plaintiff' opposed West's 2017 conduct and her complaints were documented in her August 23 Issue Confirmation. (Ex. 19; Answer ¶ 220.) The conduct is protected under FEHA § 12940(h), Title VII, § 1102.5(b), § 98.6, and *Tameny*. Apple has verified, under oath, that its "misleading" finding rested on Plaintiff's account of "an incident regarding a Sous Chef at a local restaurant." (Apple's Am. Resp. to Pl.'s Rog No. 2 (Set Two, AD #1), Apr. 6, 2026.) It's retaliation for the complaint.

### iv.    CAUSATION IS ESTABLISHED UNDER THREE INDEPENDENT THEORIES.

#### 1)    THE § 98.6(B)(1) REBUTTABLE PRESUMPTION ATTACHES AND CANNOT BE REBUTTED.

52.    Section 98.6(b)(1), effective January 1, 2024, provides that when an employer takes adverse action within 90 days of protected activity, "there shall be a rebuttable presumption in favor of the employee's claim." The presumption attaches mechanically from four objective facts: protected activity within § 98.6, employer knowledge, adverse action, and adverse action within 90 days. Because § 98.6(b)(1) is created by a California statute governing the substantive element of causation in a California claim, California law governs its operation in federal court. Fed. R. Evid. 302; *Snead*, 237 F.3d at 1090-91. Under California Evidence Code § 605, a presumption affecting the burden of proof shifts the burden of proof — not merely production — to the party against whom the presumption operates. Section 98.6(b)(1) is a § 605 presumption: construing it as a mere § 603 burden-of-production presumption would render the enactment surplusage, because § 98.6's existing prima facie case already required the same showing. The statute shifts the burden of proof to the employer to establish a legitimate, independent reason. Defendant cannot rebut the presumption. Its only stated reasons are the three in the September 9 termination email, each itself protected activity. Retaliation cannot rebut a presumption of retaliation. See *Bachelder*, 259 F.3d at 1124-25. Every protected activity

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC          APRIL 23 2026

addressed in this Motion falls within the 90-day window.

## 2) DEFENDANT'S ADMISSION THAT IT FIRED PLAINTIFF FOR PROTECTED ACTIVITY ESTABLISHES CAUSATION DIRECTLY.

53.     Where the employer's own statement of its reasons is direct evidence that protected activity motivated the adverse action, no burden-shifting analysis is required. *Wallace*, 245 Cal.App.4th at 123; *Bachelder*, 259 F.3d at 1124-25. Defendant has admitted that each of its three stated reasons is conduct Plaintiff engaged in; each is protected activity as a matter of law.

54.     Under § 1102.6, Plaintiff must show that protected activity was "a contributing factor" — any factor which, alone or in combination, "tends to affect in any way the outcome of the decision." *Marano v. Department of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993), adopted in *Lawson*, 12 Cal.5th at 713. An admitted reason is, by definition, a factor that affected the outcome. The *Tameny* and § 6310 "substantial motivating reason" standards are satisfied by the same admission. *Haney v. Aramark Uniform Servs., Inc.*, 121 Cal.App.4th 623, 641 (2004); CACI 4605. Defendant cannot carry its § 1102.6 same-decision burden. Defendant has articulated no legitimate independent reason.

## 3) THE UNDISPUTED EVIDENTIARY RECORD INDEPENDENTLY ESTABLISHES CAUSATION.

55.     Circumstantial evidence is evaluated under the totality of the circumstances. *Light v. Cal. Dep't of Parks & Recreation*, 14 Cal.App.5th 75, 94 (2017); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 361 (2000). Every category of circumstantial evidence of retaliation is present. *Temporal proximity.* Termination occurred 10 days after the Twitter post; within 6 days of the September 3–7 written-communications requests; 14 days after the NLRB filing; 11 days after the OSHA and Labor Commissioner filings; 21 days after EPA's inspection; 28 days and hours after the EEOC/DFEH charge; and 17 days after the Issue Confirmation was transmitted to Rice and Warner. Kagramanov suspended Plaintiff's system access 42 minutes after initial contact on September 9; Bertolus approved termination six minutes after receiving Bowman's summary.

20

Proximity this close "can by itself constitute sufficient circumstantial evidence of retaliation." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

56.    *Preemptive retaliation and evidence-blocking.* Section 6310 prohibits action taken in anticipation of further protected activity. *Lujan*, 124 Cal.App.4th at 1046; *Sauers*, 1 F.3d at 1128. Defendant began sealing cracks in Plaintiff's office on August 4 in anticipation of EPA's August 19 inspection (Ex. 17); EPA's inspection identified "freshly sealed cracks" as a concern (Exs. 14-15). On the same August 4, Okpo removed Plaintiff from the workplace on administrative leave, hours before she planned to retrieve laptop evidence from her office relevant to her harassment complaint against West (Ex. 19 at 21; Ex. 34, Okpo Dep. 71:9-15). Okpo later cited Plaintiff's inability to produce the full text exchange as the basis for his "misleading complaint" finding. (Ex. 34, Okpo Dep. 121:7-18.) The timing is Defendant's admission that Plaintiff was removed from the workplace to block her access to evidence.

57.    *Cat's-paw causation.* An employer is liable where a biased subordinate's act is a proximate cause of the adverse action, even if the final decisionmaker is not personally biased. *Staub*, 562 U.S. at 422. Independent review does not sever causation where the review relies on facts supplied by the biased subordinate. *Id.* at 421; *France v. Johnson*, 795 F.3d 1170, 1177-80 (9th Cir. 2015). California applies the same framework. *Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95, 113-14 (2004). Apple's three ER investigators on Plaintiff's matter each reported to ER Business Partner Manager Antonio Lagares, who personally updated the Business Conduct tickets tracking Plaintiff's protected speech. (Exs. 2-11.) Kagramanov transmitted screenshots of his September 9 exchange to SVP O'Brien, Sr. Director Reicher, and Corporate Attorney Manager Perez. (Ex. 35, Kagramanov Dep. 115:20-116:1, 118:21-119:3, 130:13-

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC    APRIL 23 2026

131:5.) On the evening of September 9, HR Business Partner Director Bowman emailed Bertolus a summary of the investigators' characterizations at 6:20 PM (Ex. 30); Bertolus admitted he relied on characterizations supplied by HR, Legal, and Global Security and had not reviewed the underlying records. (Ex. 32, Bertolus Dep. 102:2-12, 131:4-7.) Bertolus's reliance on subordinate characterizations extends further. Asked whether he recalled any details of the "refusal to cooperate" ground beyond Bowman's email: "No." (*Id.* 1842-1847.) Asked for factual details underlying that finding: "I think that would be better answered by Global security." (*Id.* 2526-2527.) Asked for any other information about the refusal-to-cooperate basis: "No." (*Id.* 2562-2568.) As to the image, Bertolus testified he saw only the image as presented to him by an unspecified person at Apple, stripped of its surrounding anti-retaliation speech context. (*Id.* 1849-1864.) *Poland* is satisfied. *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007).

58.    *Deviation from procedure.* Defendant skipped every step of its normal disciplinary sequence. Plaintiff received no warning, no performance improvement plan, no counseling, and no contemporaneous explanation of the subject of the investigation. (FAC ¶¶ 59-60, 69.) Kagramanov refused to identify the subject of the Sept. 9 inquiry (Ex. 35, Kagramanov Dep. 38:22-39:4), suspended Plaintiff's access within 42 minutes (*id.* 72:3-13), and testified he could not recall any other case of suspending an employee's access within an hour of initial contact (*id.* 72:7-13) or any other case of communicating directly with SVP O'Brien (*id.* 130:13-131:5). Deviation from established procedure supports causation. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).

59.    *Pre-planned exit.* Apple has admitted that on August 26, 2021 it circulated an internal Keynote titled "Draft Exit Outcomes ACP.key." (Apple's Resp. to Pl.'s RFA No. 29.) The exit deck predates the Twitter post Bertolus identified as the trigger (Ex. 32, Bertolus Dep. 2005-2012) by four days, and predates Bertolus's "six-minute" approval (Ex. 30) by fourteen

22

days. An exit drafted before the stated reason arose cannot have been caused by that reason. Further, Apple has verified that in late July 2021 Plaintiff's proposed resolutions included "transferring to a new role under new management or an exit package with compensation and benefits." (Apple's Am. Resp. to Pl.'s Rog No. 2 (Set Two, AD #1), Apr. 6, 2026.) Six weeks later, Apple terminated Plaintiff for cause and paid no severance. An employer that rejects a negotiated separation and then manufactures a for-cause termination on the same underlying facts has supplied its own evidence of pretext. Apple has further admitted that in the nearly five years since termination, it has never "initiated or threatened Plaintiff with formal legal proceedings" for any alleged breach of contract or intellectual-property violation. (Apple's Resp. to Pl.'s RFA No. 14.)

60.    *Shifting and internally contradictory explanations.* Defendant's statement of reasons has shifted across every sworn and official account: the September 9 termination email (two reasons, no specifics, Ex. 29); the September 15 Eberhart letter (adding ear-scan and Gobbler rationales, Answer ¶ 184; Ex. 26); the March 2022 DOL position statement (two reasons using undefined code names "Alpha" and "Omega," characterizing administrative leave as Plaintiff's own request, omitting any "misleading" complaint reason, Ex. 25); the August 2025 verified Rog #1 (same undefined code names, adding an August 28 tweet, again omitting the "misleading" complaint, Ex. 24); and the Amended Answer (pleading three reasons including the "misleading" complaint, Answer ¶ 211). Apple's Seventh Affirmative Defense simultaneously pleads the Verge article as after-acquired while Apple's other accounts treat it as a pre-termination basis. Apple's DOL account treats the leave as Plaintiff's own request; the Amended Answer admits the leave "ensures that [she] [is] removed from the workplace" (Answer ¶ 249).

61.    *Inadequate and biased investigation; Cotran privilege problem.* An employer cannot rely on an investigation as a legitimate basis for termination unless the investigation

produced "a reasoned conclusion . . . supported by substantial evidence" through "an appropriate investigation." *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93, 108 (1998). An inadequate or biased investigation is itself evidence of pretext. *Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243, 277-83 (2009). Okpo closed the entire investigation of Plaintiff's Issue Confirmation because she requested written communications about a single sub-issue. (Ex. 34, Okpo Dep. 116:4-14.) Kagramanov declared Plaintiff in "refusal to cooperate" within 42 minutes on the basis of an unwritten policy. (Ex. 35, Kagramanov Dep. 57:7-15, 72:3-6.) Bertolus did not review the full text exchange, did not read the Verge article, could not identify the tool in the Twitter image, and could not name the policies he invoked without prompting. (Ex. 32, Bertolus Dep. 2005-2012, 2008-2009, 131:4-7, 1012-1019, 1307-1341.)

62. Defendant cannot simultaneously shield the investigation's substance from discovery and rely on it as a legitimate independent reason. Across the depositions, Defendant invoked privilege over: the content of Okpo's investigation (Ex. 34, Okpo Dep. 974-976, 1254-1272, 2027-2028, 2715-2716) and the basis for Kagramanov's "refusal to cooperate" determination (Ex. 35, Kagramanov Dep. 2383-2388). An employer that withholds investigation substance under privilege cannot rely on those investigations to satisfy *Cotran*. *Disparate treatment.* McKeon — the DRI for the application at issue and the person Bertolus consulted the morning of his deposition — had himself published extensive LinkedIn and Medium articles about Face ID, user studies, and Apple development processes from 2018 through 2022 without discipline. (Ex. 37, McKeon Dep. 81:14-17, 90:20-24, 93:9-18.) McKeon could offer no coherent basis distinguishing his publications from Plaintiff's image. (*Id.* 99:5-9, 81:22-25.) Asked whether, as a manager, he would discipline a subordinate for publishing articles like his own or seek HR guidance: "I would not." "No. It would not." (*Id.* 2342-2362.) Selective enforcement of confidentiality designations supports an inference of retaliatory motive. *Earl v.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC      APRIL 23 2026

*Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113-14, 1117 (9th Cir. 2011). Under the totality of the undisputed record, no rational trier of fact could find that protected activity was unrelated to Plaintiff's termination. The combined evidence of temporal proximity, preemptive action, deviation from procedure, shifting and internally contradictory explanations, biased and inadequate investigation, and disparate treatment satisfies each causation standard.

## F.    CONCLUSION

63.    On the undisputed record, Plaintiff has established liability under the *Tameny*, § 98.6, § 1102.5, and § 6310 claims on the protected activities and admitted reasons addressed in this Motion. Per the Court's direction, Plaintiff separately seeks a preliminary injunction reinstating her to payroll and to medical, dental, and vision insurance at the level in effect on September 9, 2021, pending final judgment. (Order at Dkt. No. 273, Jan. 13, 2026.) *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Irreparable harm is established by Plaintiff's ongoing loss of income and employer-provided health coverage; loss of health insurance threatening access to medical care is irreparable harm. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020).

64.    The balance of equities favors reinstatement: Defendant's own witness testified he would provide Plaintiff an equivalent position if legally ordered to reinstate. (Ex. 36, West Dep. 86:12-25.) The public interest favors enforcement of California's anti-retaliation statutes. Plaintiff respectfully requests that the Court enter an Order: Granting summary adjudication of liability on Plaintiff's Tameny, § 1102.5, § 98.6, and § 6310 claims on the protected activities, admitted reasons, and causation theories addressed in this Motion, with damages and remaining factual theories reserved for trial; Granting a preliminary injunction reinstating Plaintiff to payroll and restoring her medical insurance coverage pending final judgment; and granting such further relief as the Court deems proper.

Respectfully filed,

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC    APRIL 23 2026

/s/ Ashley M. Gjovik

**Ashley Gjovik (Plaintiff/*In Propria Persona*)**

Filed April 24 2026 in San José, California

(408) 883-4428

ashleymgjovik@protonmail.com

2108 N. St. Ste. 4553, Sacramento, CA 95816

26