Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY GJOVIK**, *an individual*, <br><br> **Plaintiff**, <br><br> v. <br><br> **APPLE INC.**, *a corporation*, <br><br> **Defendant**. | **Case No. 3:23-cv-04597-EMC** <br><br> **District Judge**: Honorable Edward M. Chen <br><br> **MOTION FOR LEAVE TO FILE PAST DEADLINE AND OPPOSITION TO DEFENDANT'S ADMIN. MOTION** <br><br> **REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION** <br><br> **Hearing:** <br> Dept: Courtroom 5, 17th Floor, San Francisco <br> Date: June 11 2026 1:30 p.m. |

i

# MOTION FOR LEAVE TO FILE PAST DEADLINE; OPPOSITION TO ADMIN. MOTION

1.    Plaintiff respectfully apologizes for filing her Motion for Summary Judgment and Preliminary Injunction (Dkt. No. 359) and supporting Declaration (Dkt. No. 360) on April 24, 2026, one day after the April 23 deadline set in Dkt. No. 273. Chambers copies were mailed by FedEx 2-day shipping today, April 25 2026, and set to arrive to the court Monday April 27 2026.

2.    Plaintiff respectfully requests (a) leave under Fed. R. Civ. P. 6(b)(1)(B) to accept Dkt. Nos. 359 and 360 as filed, and (b) extension of Defendant's opposition deadline from May 7 to May 11, 2026. Plaintiff complied with every other directive in Dkt. No. 273: the motion is exactly 25 pages in Times New Roman 12-point, double-spaced, one-inch margins; the preliminary injunction is included within the motion; declaration is 19 pages of combined testimony and document authentication. Plaintiff missed the date because the operative basis for the Defendant's termination reasons did not crystallize until six days before the deadline, requiring redirection of the motion's legal theory in compressed time, by a *pro se* plaintiff drafting her first Motion for Summary Judgement in her first litigation with no support.

## I.    THE OPERATIVE TERMINATION RATIONALE DID NOT CRYSTALLIZE ON THE RECORD UNTIL APRIL 17, 2026

3.    From the inception of this litigation, Defendant identified a variety of vague and undefined reasons for terminating Plaintiff on September 9, 2021. Despite much protest from the Plaintiff demanding details, it was not until April 17 2026 that Defendant confirmed there were three reasons for the termination at the time of the termination and what those reasons were.

4.    The first two reasons — a single Twitter post, apparently made around August 30, 2021, but which Defendant could not conclusively identify – and Plaintiff's request that discussions with Apple's investigators be conducted in writing while she had pending federal

labor charges filed against them --- were mostly disclosed in some form prior. However, the third — that Plaintiff had created a "misleading impression" or that there were "inconsistencies" in her account during an internal investigation — was repeatedly pled and represented to Plaintiff, this Court, and government agencies in vague, unspecified terms for nearly five years and the underlying facts were never disclosed in any detail until April 6 2026 and then confirmed and further detailed on April 17 2026.

5.    Plaintiff repeatedly sought to compel Defendant to identify the substance of its rationale for terminating her. Plaintiff's motions to strike Defendant's affirmative defenses (Dkt. Nos. 192-93, 221) led to this Court's May 19, 2025 order requiring Defendant to plead concrete factual allegations, observing that the supporting information was "at least in part, within [Defendant's] possession, custody, or control." Dkt. No. 215 at 4-8. Defendant's amended Answer continued to use boilerplate. *See* Am. Ans. ¶ 211.

6.    On July 3 and July 17, 2025, Plaintiff served Special Interrogatories Sets One and Two, asking for the complete factual basis of each stated termination reason and each affirmative defense. Defendant refused to answer most of the interrogatories—and where it did, it used generalities and still refused to provide a factual basis. On March 16, 2026, Plaintiff filed a motion to compel; Defendant defended its prior responses as adequate (Dkt. No. 317). On March 30, 2026, Magistrate Judge Westmore rejected Defendant's interrogatory-counting methodology, granted the motion to compel, and ordered supplementation. Dkt. No. 327. The same order observed that this case has produced "an unprecedented number of discovery disputes" expending "a considerable amount of the Court's limited judicial resources." *Id.* at 1.

7.    Defendant's amended response (served April 6, 2026) added a single phrase to its prior boilerplate for its Affirmative Defense: that the "inconsistencies" Defendant had referenced for years included "an incident regarding a Sous Chef at a local restaurant." Gjovik Decl. ¶ 7 &

1

Ex. E (redline). The phrase identified a topic but not the substance — what the inconsistency was, what Plaintiff had allegedly misrepresented, and how it bore on a termination decision the central decisionmaker had made nearly five years earlier remained undefined. Apple also still did not mention this in its response to the interrogatory asking for the formal reason for firing the employee at the time of the termination – indicating this was a post hoc rationalization rather than formal documented justification at the time of the termination.

8.    The actual factual basis only came out at deposition and it came out after the close of discovery. Defendant did not make its witnesses available until April 7-17, 2026, with the Vice President who sent the termination letter — Yannick Bertolus — produced on April 17, one day after the discovery cutoff. Dkt. No. 352 at 2 (Court confirming Bertolus "is not available for a deposition until April 17, 2026"). Apple has still refused the Rule 30(b)(6) deposition seeking to obtain additional details about its investigations into the Plaintiff and other material facts – and even after this court ordered it to comply and sit for the deposition, it has refused to respond to the Plaintiff's emails on the matter and will not commit to a date.  On April 22, 2026, Magistrate Judge Westmore characterized Defendant's position on the Rule 30(b)(6) deposition as "unreasonable" and stated that Defendant "should know better." Dkt. No. 357 at 1-2.

9.    Regarding the "sous chef incident," the April 7 Okpo and April 13 West depositions complicated the picture rather than clarifying it. Mr. Okpo, the Employee Relations investigator who produced the "misleading impression" finding, testified that the finding rested on Plaintiff's in-the-moment text describing the sous chef as "cute" — but also testified that he was not involved in the termination decision and did not know Plaintiff had been fired. Mr. West, Plaintiff's skip-level supervisor whose conduct was the subject of Plaintiff's complaint, testified that Defendant's own ER investigators told him his conduct toward Plaintiff at the dinner was "not appropriate." He also confirmed under oath that he had told Plaintiff in text

messages that what he did that night with the sous chef "was one of the worst things [he'd] ever done." He also disclosed that the sous chef is now deceased.

10. Mr. Bertolus's April 17 testimony was therefore the first occasion on which a person with authority to terminate Plaintiff confirmed under oath that this rationale was a stated reason for the September 9, 2021 termination — not an internal ER finding (Okpo), not feedback to the supervisor (West), but an actual reason for firing Plaintiff.

11. At his deposition, his decision to terminate the employee was based on her July-August 2021 complaint of sexual misconduct against Dan West related to the dinner in 2017. Bertolus testified that he had reviewed only a limited version of the underlying text exchange between Plaintiff and West, provided to him by Apple legal; that he had "absolutely no idea" the subject was the sous chef, having thought it was his "personal friend," the head chef Jared Gallagher; and that, when shown the full exchange Defendant had produced in discovery, he saw "not even as much" at the time of termination. Yet, Bertolus maintained the Plaintiff was the one to mislead and her complaint was made in bad faith. When asked whether the supervisor's communications with Plaintiff were appropriate, Mr. Bertolus responded: "you seem pretty feminine — I don't even want to even go there and speculate." When questioned later, Bertolus stated he did not remember saying that and Apple's counsel objected to the line of questioning.

12. Plaintiff, knowing how critical the deposition testimony was, told the court reporter during the deposition that she would need an urgent copy because it was required for her Motion for Summary Judgement. She also repeatedly contacted the service provider asking for updates and ETAs. Plaintiff did not receive a copy of the Bertolus transcript until 3:25 PM on April 22, 2026, the day before the motion was due. Gjovik Decl. ¶ 4 & Ex. B. Plaintiff has been billed for $4,036.09 for the expedited transcript – required to make the April 23 deadline.

## II.   THE RULE 6(B)(1)(B) FACTORS FAVOR ACCEPTANCE

3

13.    Excusable neglect under Rule 6(b)(1)(B) is a "flexible" inquiry considering prejudice to the opposing party, length of delay, reason for delay, and good faith. *Pioneer Investment Services, Inc. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993); *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004) (en banc); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-25 (9th Cir. 2000). *Pro se* status is a relevant equitable consideration. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997). Defendant identified no prejudice, the hearing date is unaffected, and Plaintiff already offered to provide Defendant with additional days to respond.

14.    The good-faith analysis turns on the realistic capacity of a *pro se* plaintiff in Plaintiff's circumstances to integrate the operative record, after the Defendant concealed material facts for years, on a six-day timeline. This is the first motion for summary judgment Plaintiff has ever drafted, the first depositions she has ever taken, and the first complex federal discovery she has ever conducted. She has no associates, paralegal, support staff, or professional baseline against which to estimate time for unfamiliar procedural tasks. She is in Chapter 7 bankruptcy, presently homeless, insolvent, and disabled, and supports this litigation through public donations. Dkt. No. 360 ¶¶ 50-56.

15.    Plaintiff received the Bertolus transcript one day before the deadline. Plaintiff worked through the night of April 23-24 to bring an initial 50-page draft within the Court's 25-page limit (Dkt. No. 273) rather than file an over-length motion in violation of the order; she filed when she could comply with the order. Plaintiff sent contemporaneous notice to chambers between filing the motion and the declaration on April 24. Gjovik Decl. ¶ 5 & Ex. C. Plaintiff also warned Defendant's counsel in writing on April 21 and April 22, 2026 that Defendant's conduct was making her late and asked them to stop engaging in conduct that would prevent her from working on the motion. Gjovik Decl. ¶ 3 & Ex. A.

4

PLAINTIFF'S REQUEST FOR LEAVE TO FILE | 3:23-CV-04597-EMC                    APRIL 25 2026

### III.   DEFENDANT'S ADMINISTRATIVE MOTION

16.    Civil L.R. 7-11 governs "miscellaneous administrative matters, not otherwise governed by a federal statute, Federal or local rule or standing order of the assigned judge." Striking a summary judgment motion is not a miscellaneous administrative matter; it is case-dispositive relief. Defendant cites no Rule, no Ninth Circuit authority, and no analysis under Rule 6(b)(1)(B) or *Pioneer*. Defendant's stipulation effort consisted of a single 2:55 PM email on April 24 demanding withdrawal and announcing intent to file.

17.    Plaintiff responded substantively at 4:25 PM, directing Defendant to the cause of delay set out in the filed Declaration (Dkt. No. 360). Defendant filed that evening without further communication. Defendant's motion does not address Plaintiff's declaration, the cause of the delay, or good cause under Rule 6(b)(1)(B). Defendant's substantive arguments rely on selective quotation of Plaintiff's January 13, 2026 readiness statement and this Court's April 8, 2026 observation (Dkt. No. 344 at 6) — both of which preceded the Defendant's long overdue disclosures about material facts and the foundation of its defense in this litigation (finally disclosed April 6-17, 2026). Defendant's response to Plaintiff's motion is ordered for May 7 with a 25-page allowance (Dkt. No. 273); any timeliness objection belonged in that opposition and the proper meet/confer would be stipulating a request for the May 11, 2026 extension to formalize Plaintiff's offer – which Plaintiff requests here instead.

### IV.   CONCLUSION

18.    Plaintiff respectfully requests that the Court (a) grant leave under Fed. R. Civ. P. 6(b)(1)(B) to accept Dkt. Nos. 359 and 360 as filed; (b) deny Defendant's Administrative Motion (Dkt. No. 361); and (c) maintain the existing briefing schedule, with Defendant's opposition extended from May 7 to May 11, 2026 (Plaintiff has informally so extended; Plaintiff's reply remains due May 21). A proposed order is submitted herewith.

PLAINTIFF'S REQUEST FOR LEAVE TO FILE | 3:23-CV-04597-EMC                        APRIL 25 2026

Respectfully filed,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed April 25 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

6

# [PROPOSED] ORDER

Upon consideration of Defendant's Administrative Motion (Dkt. No. 361), Plaintiff's Motion for Leave to File Past Deadline under Fed. R. Civ. P. 6(b)(1)(B) and Opposition thereto, the Declaration of Ashley Gjovik in support, and the record, and good cause appearing,

**IT IS HEREBY ORDERED THAT:**

1. Defendant's Administrative Motion (Dkt. No. 361) is DENIED.

2. Plaintiff's Motion for Summary Judgment and Preliminary Injunction (Dkt. No. 359) and supporting Declaration (Dkt. No. 360) are accepted as filed.

3. The summary judgment briefing schedule set in Dkt. No. 273 remains in effect, except that Defendant's opposition and cross-motion deadline is extended from May 7, 2026 to May 11, 2026. Plaintiff's reply and opposition deadline remains May 21, 2026. The hearing remains set for June 11, 2026 at 1:30 p.m.

**IT IS SO ORDERED.**

_____

Judge Edward M. Chen

Dated: _____

PLAINTIFF'S REQUEST FOR LEAVE TO FILE | 3:23-CV-04597-EMC          APRIL 25 2026