JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:      +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:      +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone:     +1 202 339 8400
Facsimile:      +1 202 339 8500

Attorneys for Defendant
Apple Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>                    Plaintiff,<br><br>     v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S OPENING BRIEF RE REMAINING DISCOVERY DISPUTES AND OPPOSITION TO PLAINTIFF'S OPENING BRIEF RE DISCOVERY DISPUTES**<br><br>Dept:        Courtroom TBD<br>             1301 Clay Street<br>             Oakland, CA 94612<br>Judge:      Honorable Kandis A. Westmore |

**TABLE OF CONTENTS**

**Clause**                                                             **Page**

APPLE'S OPENING BRIEF ................................................................................................. 1

I.     INTRODUCTION ................................................................................................. 1

II.    ISSUE 2: APPLE IS ENTITLED TO MEDICAL AND MENTAL CONDITION DISOVERY .......................................................................................................... 1

     A.    The Court Should Order an IME.................................................................. 1

     B.    Plaintiff's Medical Providers Should be Compelled to Produce Records. ............. 2

III.   ISSUE NO. 5: PLAINTIFF MUST PRODUCE ALL DOCUMENTS REFLECTING HER DISCLOSURES OF CONFIDENTIAL APPLE PRODUCT INFORMATION (RFP 1 AND 10). .................................................................. 4

IV.   CONCLUSION .................................................................................................... 7

APPLE'S RESPONSE REGARDING ISSUES RAISED BY PLAINTIFF ................................. 7

I.     INTRODUCTION ................................................................................................. 7

II.    PLAINTIFF DID NOT MEET AND CONFER IN GOOD FAITH, AND HER DEMANDS SHOULD BE REJECTED FOR THAT REASON ALONE. ........................ 8

III.   NONE OF THE ISSUES RAISED BY PLAINTIFF MERIT FURTHER DISCOVERY ........................................................................................................ 9

     A.    Plaintiff's sweeping demand for even more "environmental records" are not proportionate to the needs of the case........................................................ 9

     B.    Apple's responses to RFPs 4, 7, 11-16, 36, 43, 44, 55, 56, and 60 (Set Two) and its associated document productions were substantial and appropriate.............................................................................................. 14

     C.    Apple properly disclosed witnesses in its initial disclosures. .............................. 18

     D.    Apple complied with this Court's standing order and has already confirmed in writing that its production is complete.............................................................. 19

     E.    Apple responded to Plaintiff's untimely RFP for records Apple obtained from Plaintiff's subsequent employer and has provided her copies. .................... 20

     F.    Plaintiff's catch-call additional disputes are meritless........................................ 20

IV.   CONCLUSION.................................................................................................... 22

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*,
No. CV 16-1968-GW, 2017 WL 10339007 (C.D. Cal. Aug. 9, 2017) ..................................... 9

*Anderson v. Graybar Elec. Co.*,
No. CIV.09-251, 2010 WL 2545508 (D. Minn. June 18, 2010).............................................. 12

*Bozeman v. Per-Se Techs., Inc.*,
No.1:03-CV-3970-RLV-JMF, 2006 WL 8431279 (N.D. Ga. May 23, 2006)........................ 10

*In re Convergent Techs. Sec. Litig.*,
108 F.R.D. 328 (N.D. Cal. 1985) ............................................................................................ 8

*Herrera v. Gen. Atomics*,
No. 21CV1632-AJB(BLM), 2022 WL 1343001 (S.D. Cal. May 3, 2022)............................. 17

*Hollander v. Am. Cyanamid Co.*,
895 F.2d 80 (2d Cir. 1990)..................................................................................................... 10

*McAllan v. Von Essen*,
517 F. Supp. 2d 672 (S.D.N.Y. 2007).................................................................................... 10

*Mikkelsen Graphic Eng'g Inc. v. Zund Am. Inc.*,
No. 07C0391, 2009 WL 3061978 (E.D. Wis. Sept. 23, 2009) ............................................... 17

*Perius v. Abbott Labs.*,
No. 07 C 1251, 2008 WL 3889942 (N.D. Ill. Aug. 20, 2008) ............................................... 10

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*,
No. 17-cv-03695, 2018 WL 6079617 (N.D. Cal. Nov. 21, 2018) .......................................... 17

*Wheeler v. Aliceson*,
No. 12-CV-00860-LJO, 2015 WL 3507369 (E.D. Cal. June 3, 2015) ................................... 10

*Wilson v. Aargon Agency, Inc.*,
262 F.R.D. 561 (D. Nev. 2010)........................................................................................ 9, 16

**Other Authorities**

Fed. R. Civ. P. 26 ..........................................................................................................*passim*

Fed. R. Civ. P. 35 ................................................................................................. 1, 18, 19

Pursuant to this Court's March 30, 2026 Order setting a consolidated briefing schedule for remaining discovery disputes (Dkt. No. 327), Defendant Apple Inc. submits two discovery disputes that require Court intervention and responds to Plaintiff's brief raising thirteen discovery disputes.

**APPLE'S OPENING BRIEF**

I.   **INTRODUCTION**

As directed, on April 9, Apple initiated meet and confer on its outstanding discovery issues. Apple narrowed its requests and focused on what is truly needed, and raises only two issues here:

**Issue No. 2**: Discovery regarding Plaintiff's alleged emotional distress damages as to two sub-issues: (1) a Rule 35 independent medical examination ("IME"), and (2) medical records by subpoena; and

**Issue No. 5**: Plaintiff's failure to produce documents evidencing the full extent of her disclosure of Apple's confidential product-related information (RFP 1 and 10).

Apple made good faith efforts to resolve these targeted issues without Court intervention— its April 9, 2026 email identified a handful of issues for resolution— but was unable to do so. Apple attaches as Exhibit A the record of its attempts to meet and confer with Plaintiff as to these issues.[1] Of note, while Apple initially raised five categories of potential discovery issues with Plaintiff, it brings only two of them to the Court.

II.   **ISSUE 2: APPLE IS ENTITLED TO MEDICAL AND MENTAL CONDITION DISCOVERY**

A.   **The Court Should Order an IME.**

Apple's April 9 email noted Apple's intent to pursue a Rule 35 IME in this case. Ex. A at p. 43. Plaintiff previously "agreed to FRCP 35 Independent Medical Exam." Dkt. No. 277 at PDF p. 2; *see also* PDF p. 13 (transcript of meet and confer confirming "You can do a mental exam. You guys pay for it. We can do a mental exam. It can be on the record. That seems the best way for you to get this kind of stuff."). Apple has made clear, including when it raised issues with the

---

[1] Throughout the meet and confer process, Plaintiff ignored the Court's Order to maintain two separate email chains (*see* Dkt. No. 327 at 7 ["Plaintiff sends one email to Defendant with all outstanding disputes and vice versa"]) and repeatedly merged and branched the email chains deleting certain of Apple's responses. Apple has endeavored to provide the Court a complete set of the relevant emails regarding the issues it raised and will supply any additional information the Court needs, if necessary.

timing of its subpoenas for medical records needed for the IME, that it was awaiting these medical records to conduct the IME and Judge Chen recognized the problem when he extended the time for Apple to conduct the IME to June 30, 2026. Dkt. No. 345. Until this morning, Apple did not believe there was any dispute.

In an email this morning, Plaintiff is now apparently reneging on her agreement (similar to how she reneged on her agreement to sit for additional deposition time). She asserts for the first time that "Apple lost its opportunity to conduct an IME"—apparently because of her mistaken belief (addressed further below, in response to one of her would-be disputes) that Apple was required to name the individual who will conduct the IME in its initial disclosures (which it was not). Ex. A at p. 1. Although Plaintiff confirmed she is available to sit for examination on June 1, 2026, she insists she will only do so if ordered by the Court. *Id.* The Court should issue that order, and make clear in any order that Apple is not barred from later bringing issues about the IME to this Court's attention if Plaintiff attempts to impose unreasonable conditions on the IME or fails to appear.

**B.      Plaintiff's Medical Providers Should be Compelled to Produce Records.**

Apple's April 9 email addressed Plaintiff's alleged emotional distress damages, and made clear Apple intended to ask this Court to order compliance with any medical records subpoenas it has issued to obtain that information to which it had not received a response as of today's date. Ex. A at p. 42-43. The Court should issue those orders.

This Court previously concluded that Plaintiff has put her medical and mental conditions "in controversy" and addressed Apple's attempt to subpoena medical records from medical providers Plaintiff identified in discovery:

> The parties are ordered to further meet and confer regarding executing an authorization to release the medical records sought. If Plaintiff refuses to authorize release, Apple should subpoena the records, and, if it is unsuccessful, may file a discovery letter and proposed order compelling Plaintiff's medical providers to release her records based on this order.

Dkt. No. 291 at 2. The Court further noted it took "no issue" with the scope or types of records sought by Apple and that "[i]f those categories of medical records are sought by way of subpoena,

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

the Court is inclined to permit the discovery of same." *Id*.

Thereafter the parties met and conferred and were unable to reach an agreement regarding a signed medical authorization.[2] Following the Court's direction, Apple then subpoenaed the records using the language that it had previously presented to this Court. *See* Exs. E-O. Some providers refused to produce records without either an authorization or a court order, and others have not responded at all. For providers that shared their own form authorization, Apple forwarded it to Plaintiff who refused to use it. Plaintiff provided her own limited authorization to two providers without Apple's consent, and one of those providers produced some records.

Pursuant to Dkt. No. 291, Apple requests an Order compelling the production of records consistent with the subpoenas that Apple served, each of which is filed with this brief, from:

1.    Sutter Health PAMF (authorization or court order required)

2.    Boston Medical Center (claims will not respond to out-of-state subpoena despite FRCP 45)

3.    Atrius Health (claims will not respond to out-of-state subpoena despite FRCP 45)

4.    The Clinic / Optum Behavioral Care (court order required)

5.    AC Wellness Group (court order required)

6.    MD Live by Evernorth (court order required)

7.    Paragon Consulting Group (acknowledged receipt but has not responded)

8.    Delmar Family Medicine (acknowledged receipt but has not responded)

9.    Heally (provided multiple addresses, never responded)

10.    Aptihealth (never responded)

11.    One Medical (never responded)

*See* Exs. E-O.

---

[2] While not relevant to this motion, several sticking points were Plaintiff's insistence on limiting the scope of and time frame for the records sought, imposing a requirement the provider determine and produce only "relevant" records, and asking for two separate sets of records (*i.e.*, one directly to her that is not confidential and another to Apple labeled as Confidential). While this Court previously rejected Plaintiff's request to force Apple to include "dual-production language" and confirmed Apple "is under no obligation" to produce copies of records it subpoenaed (Dkt. No. 327 at 6), Apple already compromised by agreeing to voluntarily produce any records it receives from these subpoenas to Plaintiff (and has already made such production with records received to date).

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

### III.   ISSUE NO. 5: PLAINTIFF MUST PRODUCE ALL DOCUMENTS REFLECTING HER DISCLOSURES OF CONFIDENTIAL APPLE PRODUCT INFORMATION (RFP 1 AND 10).

Issue No. 5 from Apple's April 9 email relates to Plaintiff's apparent failure to produce all documents reflecting her disclosure of confidential Apple product information to unauthorized parties during her employment. Those disclosures are at the heart of the case, and Plaintiff should have produced them long ago. She has produced 35,000 new pages of documents since the close of fact discovery—including over 12,000 pages in the last 24 hours after Apple finished her deposition—making it impossible for Apple to conclusively say whether this dispute has, in fact, been resolved.

Apple's defenses to all of Plaintiff's claims in this case center on the fact that it terminated Plaintiff's employment because she disclosed Apple's confidential product information in violation of her Intellectual Property Agreement and Apple policies. Most significantly, these included disclosures of images from an internal Apple application (Glimmer a/k/a Gobbler) related to an internal FaceID user study in which she voluntarily consented to participate.

Plaintiff admits she disclosed these images, but claims she did so while protesting what she believes was a privacy violation—meaning that these disclosures were, in her view, protected activity that form the basis of Counts I-IV in her operative complaint (Dkt. No. 142; the "5AC"). Apple's RFP 1 seeks "all documents concerning the factual allegations or claims" in Counts I-IV of her 5AC and RFP 10 seeks "[a]ny documents upon which you rely to support the [] claims" in Counts I-IV of her 5AC. Ex. A at p. 45; Ex. B (relevant excerpts of Apple's RFP). Plaintiff's initial responses in April 2025 represented that she had "begun producing responsive, non-privileged documents and will continue to do so on a rolling basis." Ex. C.

Apple noted in its April 9 email that Plaintiff did not appear to have produced all responsive documents. Ex. A at p. 45. In particular, Plaintiff's 5AC alleges that she regularly "complained" that Apple was engaged in what she contends was impermissible "biometrics data collection" involving the Gobbler application. Dkt. No. 142 ¶¶ 158-59, 232; *see also* Dkt. No. 128 (first iteration of 5AC) ¶ 171 ("Gjovik complained that Apple frequently requested that Gjovik and her coworkers participate in …biometrics data collection (like the Gobbler app)"). Any documents that

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

reflect Plaintiff "complaining about any user study that utilized the Glimmer/Gobbler applications—including all such communications that contained internal images from the Glimmer application"—should have been produced, as Apple explained to Plaintiff. *See* Ex. A p. 45. Apple has in its possession (and has produced to Plaintiff) hotline reports from other Apple employees who expressed concerns about her disclosures of Glimmer images—and that one of those employees shared with Apple text messages received from Plaintiff where she had ***again*** leaked those images—yet Plaintiff had never produced those text messages herself. Apple rightly wondered what, if any, other responsive documents Plaintiff might be withholding.

Initially, Plaintiff indicated she would produce such information (Ex. A at p. 39 ["I will be candid – I did not remember Apple had served those RFPs … production is underway."]) and Apple reiterated its expectation that the production would include "the documents specifically identified [in Apple's 4/9/2026 meet and confer]." *Id*. at p. 37. Plaintiff again confirmed she was working to produce these documents. *Id*. at p. 34 ("I already told you I'm working on all of these items today") & p. 38 (separate email chain from 4/16/2026 that Plaintiff cut and pasted below Apple's 4/14/2026 email, stating "i'm going to be working until late to get you all the outstanding discovery deliverables today"). Plaintiff produced tens of thousands of pages of additional documents after the fact discovery cut-off—on April 17 (12,208 pages) and April 20 (11,731 pages)—but included only some of these communications. On April 17, 2026, Plaintiff served amended responses indicating she had produced responsive documents. *Id*. at p. 33 ("The final batches of document production … should be arriving in the next hour."); *see also* Ex. D (amended responses).

Apple reviewed her additional production and informed her that it appeared to still be missing documents responsive to RFPs 1 and 10 because Apple was aware of some communications she did not produce. Ex. A at p. 21. Plaintiff then introduced new conditions to her production in response to Apple's meet and confer, attempting to require Apple to first identify who she shared the information with (which of course Apple is in no position to do). *See id* at p. 14-15 ("I … complained to a lot of people about this topic" and "[i]f you insist on me producing copies of my exchanges with someone—please provide me the name, in writing, of the person you are referring to and I will do so."). She also seemed to confirm her production was not, in fact,

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

complete—contrary to her representations in written discovery. *Id*. ("I believe I have included *some* of these messages already" (emphasis added)). Apple responded reminding Plaintiff of her obligation to locate and produce *all* responsive documents given her admission she "complained to a lot of people." *Id*. at pp. 13. Plaintiff responded by again attempting to shift the burden to Apple. *See id*. at pp. 11-12 (calling Apple's request "cryptic" and stating "simply ask me to produce whatever documents you think are so material to your defense and if reasonable I'll produce them. You know that I shared lots of internal Apple information on social media and with the press for months prior to being terminated. If you really want everything I shared I can provide that to you – however  I could see you equally complaining that I was drowning you with thousands of pages of records in producing exactly that. So just tell me what you want with reasonable specificity and I'll work on getting it to you."; "I'll work to get it to you prior to April 27 … [b]ut April 24 2026 is impossible if you're really asking for thousands of pages of records.").

Further back and forth failed to clarify whether Plaintiff has, in fact, completed a reasonable and diligent search for and produced all documents showing her disclosing Glimmer app images to others. Ex. A at pp. 1-11. On April 29, Plaintiff produced 9,732 pages—which, based on an initial review, do not appear to be newly created documents but instead ones she has had in her possession for years and simply withheld. She elected to produce these documents the day *after* her court-ordered deposition—not before, meaning she could not be asked about them—and an initial review indicates there are *dozens if not hundreds* of Glimmer app images in the trove.

With this document dump, Plaintiff asserted she has completed her production from the documents she currently has access to (Ex. A at p. 1), subject to her admission that she sold her iPhone and deleted her iCloud account shortly after her termination (spoliating evidence in the process) and that the only backup she has is on a computer that is in storage that she has forgotten the password to access. *Id*. at pp. 4-5. But then, just this morning, Plaintiff produced an *additional* 2,442 pages—now two full weeks after the discovery cut-off; it is unclear if any other responsive documents are part of this set. *Id.* at p. 1.

The documents Apple is seeking are plainly relevant to the claims at issue; represent a tailored, targeted request by Apple; and should have been produced years earlier in this litigation.

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

Plaintiff has put Apple and this Court in the untenable position of needing to determine if any "dispute" exists as to this issue before Apple has been able to meaningfully review her belated productions to confirm if her representation is true. At this point, Apple requests that the Court simply make clear that Apple would be permitted to seek further relief regarding these related productions and apparent spoliation, if and as appropriate.

## IV.    CONCLUSION

For the forgoing reasons, this Court should order the relief requested by Apple on the three discrete discovery issues it has raised: (1) order Plaintiff to appear for an IME on June 1, 2026; (2) order Plaintiff's medical providers to produce records responsive to Apple's subpoenas; and (3) permit Apple to seek further relief regarding Plaintiff's belated productions and apparent spoliation, if and as appropriate.

**APPLE'S RESPONSE REGARDING ISSUES RAISED BY PLAINTIFF**

## I.    INTRODUCTION

Plaintiff's April 9 meet and confer initiation raised 12 sweeping discovery disputes, including two disputes (Nos. 6 and 7) purporting to cover deficiencies with Apple's response to nearly *every* RFP she propounded at any point in the case, along with a reservation of rights to raise additional disputes. Plaintiff did not include her April 9 email or Apple's response to it with her brief. And she ignored this Court's instruction to maintain a separate email chain with her disputes; instead she repeatedly merged and branched email chains. By doing so, Plaintiff has made it difficult, if not impossible, to follow the parties' respective positions on the disputes she raised; the Court should dismiss her request for relief on this ground alone.[3]

Instead of presenting discrete disputes that were at issue when the Court ordered this process on March 30, Plaintiff took the Court's order as an open invitation to raise every conceivable grievance after years of litigation. The Court should not endorse Plaintiff's dilatory conduct to wait until the end of discovery to raise all 65 RFPs in Set Two of her document requests without any

---

[3] To ensure the record clearly reflects what Plaintiff did (and did not) seek to put at issue on April 9, and Apple's initial response thereto, Apple has attached Plaintiff's April 9 email and Apple's April 14 response as Exhibit P to this opposition.

consideration of Apple's objections, the disproportionate nature of the RFPs, and her absolute refusal to negotiate reasonable compromises during meet and confer. Other "disputes" she seeks to raise are moot. Her remaining disputes are meritless; they either do not reflect real discovery "disputes" (instead just Plaintiff's incredulity that Apple's production is complete), or seek materials untethered to the needs of this case. No further discovery should be ordered from Apple.

## II.    PLAINTIFF DID NOT MEET AND CONFER IN GOOD FAITH, AND HER DEMANDS SHOULD BE REJECTED FOR THAT REASON ALONE.

Discovery in federal court is expected to be self-executing with minimal court intervention. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985) ("[Parties] should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests."). Rule 26 now expressly requires the parties to consider "proportionality," meaning that "[i]t is no longer sufficient, as a precondition for conducting discovery, to show that the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Id*. (quoting former Fed. R. Civ. P. 26(b)(1)). Proportionality can and must be considered. Litigants must also make "common sense" determinations that, *inter alia*, "the information sought is of sufficient potential significance to justify the burden the discovery probe would impose" and "that the timing of the probe is sensible." *Id*. Parties must meet and confer and negotiate to resolve disputes consistent with "common sense and good faith." *Id*.

Plaintiff's April 9 meet and confer did not raise discrete issues or make any "common sense" proposals proportionate to the needs of this case. Ex. P; *see also* Dkt. No. 344 at 6 (Judge Chen anticipating disputes "should not be numerous given that fact discovery is set to close on April 16, 2026"). Instead, Plaintiff identified 12 sweeping disputes covering every aspect of discovery, including one "dispute" that purported to challenge Apple's response to all 65 RFPs in her second set. She does not even discuss any of Apple's objections or attempt to narrow any of her RFPs to address proportionality concerns; she simply rejects Apple's position and reiterates her demand that Apple make a production consistent with her objectionable RFPs. Even after Apple laid out a fulsome response on April 14—a response Plaintiff omitted from her submission to the

Court—Plaintiff again just repeated the responses were deficient without any effort to engage on the substance. And even after Apple provided additional information and offered further compromises on April 23, Plaintiff barged ahead. This is not a good faith attempt to meet and confer. *See Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010) (simply saying responses are "wholly inadequate" not good faith meet and confer). Plaintiff's request for action as to her disputes should be denied for that reason alone.

The Court should also reject Plaintiff's belated attempt to litigate every conceivable dispute in the last two weeks of discovery after failing to diligently pursue these issues for years. Because Plaintiff did not meet and confer with Apple at that time of its responses and objections in February 2025 (Set One) and May 2025 (Set Two), Apple proceeded to collect, review, and produce documents consistent with its responses and objections. Plaintiff's April 9 email—sent a year after Apple served its responses and just days before the close of discovery—raises scores of discovery issues for the first time, comes far too late, and is prejudicial to Apple. *See, e.g.*, *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, No. CV 16-1968-GW (JEMX), 2017 WL 10339007, at *1, 4 (C.D. Cal. Aug. 9, 2017) (denying motion to compel brought six months after responses were served and one month prior to the close of discovery). Plaintiff's April 9 email was not a "good faith" meet and confer on outstanding issues for this additional reason.

## III.   <u>NONE OF THE ISSUES RAISED BY PLAINTIFF MERIT FURTHER DISCOVERY</u>

### A.   <u>Plaintiff's sweeping demand for even more "environmental records" are not proportionate to the needs of the case.</u>

Section I of Plaintiff's brief is her introduction. Section II pertains to RFPs 7-10 (Set One) and 24, 28-32 (Set Two) which seek sprawling records related to two facilities that Plaintiff alleges she raised environmental safety concerns about during her employment. Those facilities are 825 Stewart—an office building where Apple rented space and where Plaintiff worked—and 3250 Scott—an entirely separate facility located near an apartment building where Plaintiff once lived for eight months. Plaintiff insists the Court has already determined her environmental safety concerns about both sites are categorically relevant and therefore anything Plaintiff seeks must be produced. *See* Dkt. No. 358 ¶¶ 3-4. Apple disagrees and Plaintiff's demand for additional

environmental records should be rejected for three reasons.

*First*, Apple's environmental practices writ large are not at issue in this employment retaliation case. Instead, Plaintiff has a *separate* lawsuit against Apple that seeks to directly challenge Apple's environmental practices at 3250 Scott. *See* N.D. Cal. Case No. 5:25-cv-07360-PCP (the "Environmental Case"). She is not entitled to conduct discovery for that case in this one.

Courts regularly deny unbounded fishing expeditions into the company's underlying practices in retaliation cases, because a plaintiff need not show her complaints had merit to prevail. *See, e.g., Wheeler v. Aliceson*, No. 12-CV-00860-LJO, 2015 WL 3507369, at \*6 n.2 (E.D. Cal. June 3, 2015) (retaliation case: documents proving that "purported complaints against [defendant] were true" have "minimal, if any relevance" because plaintiff "may prove his case whether or not his []complaints against [defendant] had merit"); *Perius v. Abbott Labs.*, No. 07 C 1251, 2008 WL 3889942, at \*4-5 (N.D. Ill. Aug. 20, 2008) (where plaintiff alleged retaliation for reporting marketing practices he believed violated regulations and argued proving defendant violated those regulations would be relevant to decision-makers' state of mind, court granted protective order, reasoning such discovery "is not relevant to, or likely to lead to admissible evidence on, any claims or defenses"); *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 677-78 (S.D.N.Y. 2007) (retaliation case rejecting plaintiff's request for discovery to "prove that his criticism … was valid," reasoning "discovery regarding the truth of plaintiff's comments will not uncover any evidence relevant to this action"); *Bozeman v. Per-Se Techs., Inc.*, No.1:03-CV-3970-RLV-JMF, 2006 WL 8431279, at \*1,4 (N.D. Ga. May 23, 2006) (denying motion to compel discovery into defendant's accounting practices and procedures in retaliation case where plaintiff asserted evidence would show defendant motivated to silence plaintiff because "it is not [plaintiff's] place to litigate whether [defendant], in fact, was involved in unethical conduct"); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84, 86 (2d Cir. 1990) (retaliation case denying discovery regarding "merits of the underlying complaint").

This body of law confirms that broad discovery into the validity of Plaintiff's alleged environmental concerns is not proportionate to the needs of this case because such information has "minimal, if any relevance" to her claims. This is especially true here where Apple *does not dispute* that Plaintiff may have engaged in protected activity. This alone is grounds to deny Plaintiff's

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

motion.

*Second*, these RFPs are much broader than what was at issue in Plaintiff's prior RFP 23, which this Court addressed in Dkt. No. 327 and for which Apple has already produced all responsive documents. RFPs 7-10 (Set One) and 24, 28-32 (Set Two) seek voluminous records pertaining to *all* communications and records on *any potential environmental issue* at 825 Stewart and 3250 Scott, including all maintenance records, invoices, and work orders; all communications with contractors; every photo, diagram, map, or schematic pertaining to a variety of issues including basic construction; and four months of security camera footage. None of that is proportionate.

The Court's prior order permitting production of reports, audits, and assessments at these buildings is not tantamount to a finding that *any* RFP connected to 825 Stewart or 3250 Scott is *both* categorically relevant *and* indisputably proportionate to the needs of this case. Instead, the Court stated: "Plaintiff's retaliation case includes allegations that that she was retaliated against for reporting environmental hazards to the California Department of Industrial Relations ("DIR"). It would follow that the existence of those hazards may be relevant to Plaintiff's retaliation claims." Dkt. No. 327 at 4:18-20. The Court's finding does not support unfettered access to any document about these two facilities and, by definition, any **potentially** relevant discovery must be limited to the concerns of "hazards" she raised in her complaints to DIR—as, in a retaliation case, the only potential relevance of these environmental records would be tethered to the complaints Plaintiff made for which she claims Apple retaliated. Those complaints were limited, as follows:

**825 Stewart**: Even if the validity of Plaintiff's concerns about the office Apple leased at 825 Stewart were at issue (it is not), Plaintiff's DIR complaint focused on her concern about floor cracks and resulting potential vapor intrusion at the building. *See* Dkt. No. 142 (operative complaint) ¶ 76 (alleging Plaintiff emailed others about 825 Stewart and potential vapor intrusion from the floor cracks, asking "for details of what type of testing was to be performed and for what duration, if there would be a risk assessment, and if EH&S would share the findings with the employees in the building" and confirming "EH&S initially agreed to meet with Plaintiff to discuss her concerns"), ¶101 (alleging with respect to sealing floor cracks at 825 Stewart that she "complained that [Apple was] legally required to notify the EPA, have the EPA oversee the repair

and testing plan, and test the air before and after the repairs"). To the extent any records about 825 Stewart are both relevant and proportionate to the needs of this case, those records must pertain to what Plaintiff actually complained about—vapor intrusion mitigation related to air quality testing and sealing of floor cracks in 2021. Apple already produced those records in response to RFP 23; documents Apple produced show test results from before and after the floor cracks were sealed, locations and images of floor cracks and sealing, and where in the building samples were taken for the air quality tests. Further inquiry into every other conceivable environmental issue at 825 Stewart is neither relevant nor proportionate to the needs of this case.[4]

**3250 Scott**: No discovery about 3250 Scott is relevant because Plaintiff's DIR complaint says nothing about 3250 Scott or her apartment. *See* Dkt. No. 179 at 25; *see also* Dkt. No. 35-5 at PDF p. 6 and 9. The reason Plaintiff never complained to DIR about 3250 Scott is clear: Plaintiff *admits* she did not form concerns about Apple's operations at 3250 Scott until 2023—long after her 2021 DIR complaints were filed, and long after she was fired for disclosing confidential product information. *See* Dkt. No. 142 at ¶120 ("At the time [July 2021], the plaintiff did not know about the activities and spills at the 3250 Scott facility near her apartment"), ¶259 (alleging she first "received documents revealing disturbing information about Apple's operations at 3250 Scott" on "February 21, 2023"); *Anderson v. Graybar Elec. Co.*, No. CIV. 09-251 (MJD/FLN), 2010 WL 2545508, at *9 (D. Minn. June 18, 2010) (post-termination complaints "cannot form the basis for a whistleblower retaliation claim."). Indeed, Plaintiff's operative complaint makes clear that in 2021 her complaints related to her apartment, not any Apple facility. *See* Dkt. No. 142 ¶ 78 (alleging she informed people in 2021 that her "apartment was built on toxic waste"). And there is no evidence that anyone at Apple ever construed her statements about her apartment to be related to 3250 Scott in any way (they did not). Plaintiff's rife speculation that telling people at Apple or

---

[4] Indeed, records Plaintiff has already obtained from the EPA make clear that the Agency concluded "the likelihood for vapor intrusion is low and not expected." *See* Dkt. No. 360, Ex. 15 at PDF p. 122; *see also id*. Ex. 12 at PDF pp. 92, 94 (confirming no issues). Plaintiff's continued insistence on more and more and more records she claims will prove a hazard, where the EPA has already found otherwise, is not reasonable or proportionate. Plaintiff already has information confirming that the alleged "hazards" she says she complained about did not exist. There is no basis to permit additional voluminous discovery into other irrelevant environmental issues she has since manufactured that were never part of her DIR complaints during her employment.

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

third-parties (*e.g.*, regulators, law enforcement, or legislatures) that her apartment was toxic somehow establishes a complaint about the operation of 3250 Scott during her employment that led to an adverse action does not support any discovery about the operation of 3250 Scott—let alone the disproportionate discovery she seeks. This is nothing more than another fishing expedition.

*Third*, no further discovery should be permitted as to 3250 Scott in particular because of Plaintiff's readily apparent purpose of using fishing expeditions in this case to obtain documents for use in her other actions against Apple—and, in doing so, to once again violate the Court's Protective Order by publicly filing information she has obtained through discovery in this case that Apple designated as Confidential.

Plaintiff's motion for summary judgment filed on April 24 makes no mention of 3250 Scott (or any alleged complaints about the facility to Apple during her employment) at all; the suggestion that she needs further discovery about that site for purposes of this case is disingenuous. Instead, Plaintiff is attempting to use discovery in this proceeding to support her separate Environmental Case against Apple, the City of Santa Clara, and others currently pending in this district. She publicly filed documents in the Environmental Case that Apple produced in this case in response to RFP 23 just 14 days after Apple produced them, in support of a hastily-assembled Motion for Preliminary Injunction in that case. *See* Environmental Case, Dkt. No. 80-3 ¶¶ 44-45, 47, 59 (referencing APL-GAELG bates numbers produced in this case). ***Critically, one page of those documents—a floor plan providing details about the operations of 3250 Scott—was produced as Confidential pursuant to the Protective Order in this case***. *Id*., at PDF p. 70 (bates number APL-GAELG_00003278 labeled "CONFIDENTIAL" by Apple in this case). The Protective Order expressly limits her right to use information designated Confidential by Apple in this case "only for prosecuting, defendant, or attempting to settle ***this litigation***." Dkt. No. 235 ¶ 7.1 (emphasis added). The Protective Order further requires Plaintiff to treat the information as Confidential unless and until the Court rules on any challenge to confidentiality. *Id*. 6.3. And the Court has repeatedly reminded Plaintiff of her obligations after she previously breached the Protective Order in this case. No further production related to 3250 Scott should be ordered given Plaintiff's apparent

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

collateral purpose and refusal to respect the Protective Order concerning any documents produced.

**B.** **Apple's responses to RFPs 4, 7, 11-16, 36, 43, 44, 55, 56, and 60 (Set Two) and its associated document productions were substantial and appropriate.**

Section III of Plaintiff's motion pertains to RFPs 4, 7, 11-16, 36, 43, 44, 55, 56, and 60 (Set Two) which seek documents Plaintiff contends relate to her protected activities including, *inter alia*:

- all documents (including documents authored by or sent to or from Apple Legal) referencing any concern about "vapor intrusion; toxic exposure; environmental violations; privacy violations; discrimination; wage transparency; NDAs; and retaliation";

- all documents (including Apple Legal documents) regarding her disclosure of confidential product information, or sent to or from management that so much as "referenc[e]" Plaintiff from March 2021 through her termination six months later;

- all communications between any Apple employees discussing her Slack or social media activity; and

- various aspects of Apple's privileged investigations and decision-making that also expressly seek communications with "Apple Legal."

Apple has produced all non-privileged documents responsive to these requests, as it understands them and as framed by the claims in the operative complaint, that it located after a reasonable and diligent search.[5] Its production amounted to over 4,000 pages of documents, including the documents Apple committed to search for and produce in response to the vast majority of the RFPs Plaintiff listed in this section (RFPs 4, 7, 11-16, 36, 55, 56, and 60 (Set Two)) and, as confirmed during meet and confer, documents responsive to RFP 44 (notwithstanding its objections). Plaintiff's relentless focus on what she believes are problems with how Apple worded

---

[5] For example, RFP 11 seeks, *inter alia*, "[a]ll documents, communications, or reports received by Apple management, HR/ER, Legal, or Security, between March 1, 2021 and September 10, 2021, from any Apple employee, contractor, or third party, referencing Plaintiff"—in other words, literally every email sent or received by anyone in "Apple management" about Plaintiff for a six month period, whether or not related in any way to the claims in this case. Apple appropriately structured its collection and review to identify documents "referencing Plaintiff" related to her claims in the case—not every email with her name sent or received ever in any of those months.

its written responses and objections ignores the reality that Apple's productions were fulsome and appropriate. Regarding the lone other RFP Plaintiff flagged in this section—RFP 43—Plaintiff's primary contention appears to be that Apple Legal cannot have directed privileged investigations into concerns by or about Plaintiff, and that she is entitled to invade the privilege; but Apple's privilege objections were appropriate.

Plaintiff classifies her arguments about these RFPs into five categories (though, as best as Apple understands this section, not all arguments apply to every RFP at issue): (1) Apple has not produced any documents responsive to these RFPs, (2) Apple's responses and privilege assertions supposedly contradict the testimony of ER investigator Ekelemchi Okpo, (3) Apple's privilege assertions are categorical and overbroad, (4) Apple improperly asserted privilege during depositions, and (5) Apple has not properly identified documents on its privilege log. The first two assertions are false; the latter three are wrong as a matter of law.

**First**, Plaintiff's suggestion that Apple has not produced documents related to her alleged protected activities (*see* Dkt. No. 358 ¶ 9) appears based on her failure to download and review all of Apple's document productions. Apple produced 14 production volumes in this case between December 18, 2023 and April 16, 2026, encompassing over 4,000 pages of documents Bates numbered APL-GAELG_00000001-APL-GAELG_00004037, through a secure file transfer service that notifies the sender when the documents relayed are accessed. Plaintiff does not appear to have ever even looked at Production Volume 8 (APL-GAELG_00002243-APL-GAELG_00002300), produced on August 15, 2025.

Despite Apple's voluminous production (including many communications and documents related to her alleged protected activities), Plaintiff falsely suggests Apple has only produced "a single Issue Confirmation document … and some of Plaintiff's own email exchanges with Apple." Dkt. No. 358. at 5; *see also* Dkt. No. 358-1 at PDF pp. 3-4. That statement is simply not true. During the parties' meet and confer, Apple repeatedly underscored the breadth of documents it had produced (including where its productions included documents she appeared to be claiming were being improperly withheld despite being responsive to various RFPs, *e.g.*, RFPs 4 & 44). *See* Ex. P and Dkt. No. 358-1. For RFPs 11-16, 36, 55, and 56, Apple noted that Plaintiff failed to identify

any additional custodians she claimed Apple should have searched for potentially responsive documents, and that she failed to explain how any further searches would be proportionate to the needs of the case in any event. *Id*. Plaintiff's simply demanding Apple produce more documents in response to these RFPs—without any attempt to narrow the scope of the issues based on each of Apple's objections and the documents she already has—is not a good faith meet and confer. *See Wilson*, 262 F.R.D. at 564.

*Second*, Plaintiff insists Apple's RFP responses and/or document productions (it is unclear which) are "contradicted by" Mr. Okpo's deposition testimony. *See* Dkt. No. 358 ¶ 10. While Plaintiff did not put Mr. Okpo's deposition testimony before the Court, it is not necessary to address Plaintiff's flawed logic. She contends that Mr. Okpo confirmed certain documents exist, thereby "contradicting" Apple's responses and objections – but none of Apple's written responses deny the existence of any documents. On the contrary, Apple committed to search for and produce certain non-privileged documents in response to RFPs 4, 7, 11-16, 36, 55, 56, and 60 (Set Two) and provided objection-only responses to RFPs 43 and 44 (though, following meet and confer, responsive non-privileged responses to RFP 44 have been produced). Apple has completed its production of responsive documents. There is no discovery dispute here.

*Third*, Plaintiff's contention that Apple improperly asserted a categorical privilege over Mr. Okpo's investigation into complaints she raised (*see* Dkt. No. 358 ¶ 11) is plainly wrong. *See, e.g.*, Dkt. No. 358-8[6] at PDF 20-23 (Apple's privilege log entry Nos. 293-297, 299-301, 303-304, 307-312, and 314 clearly identify documents related to Mr. Okpo's investigation). As Apple has repeatedly told Plaintiff (and as his deposition testimony confirmed), ***Mr. Okpo's investigation was conducted at the direction of counsel, is privileged, and Apple is not waiving privilege***. But more to the point, Apple's privilege log already includes documents from Mr. Okpo's investigation that Plaintiff wrongly claims were not logged. Nothing more is required.

*Fourth*, Plaintiff insists that Apple asserted improper privilege objections and instructions

---

[6] Plaintiff did not include all of Apple's privilege log entries with her motion. Apple provided Plaintiff two supplemental privilege logs in this matter prior to the close of fact discovery that extend through Entry No. 325.

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

during depositions (*see* Dkt. No. 358 ¶ 12)—but that is irrelevant to the discovery dispute she seems to be trying to frame, which concerns whether Apple's responses to these RFPs or its document productions are sufficient. Those privilege objections were not raised in the meet and confer process ordered by the Court and are therefore not at issue.

**Fifth**, Plaintiff insists that Apple's privilege log does not comply with this Court's requirements for privilege logs because (1) "Apple provided no log at all for its depositions privilege claims" and (2) Apple allegedly refused to search for documents responsive to RFP 43. *See* Dkt. No. 358 ¶ 13. Plaintiff cites no authority, and Apple is aware of none, requiring a party to create a privilege log for privilege objections and instructions asserted during a deposition. Furthermore, as Apple told Plaintiff during meet and confer (with supporting authority), when a request seeks ***clearly privileged*** information, the responding party is not required to log those documents because Rule 26 confirms privileged information is not discoverable. Dkt. No. 358-1 at PDF p. 7 (citing *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. 17-cv-03695, 2018 WL 6079617, at *2 (N.D. Cal. Nov. 21, 2018); *Herrera v. Gen. Atomics*, No. 21CV1632-AJB(BLM), 2022 WL 1343001, at *6 (S.D. Cal. May 3, 2022); *Mikkelsen Graphic Eng'g Inc. v. Zund Am. Inc.*, No. 07C0391, 2009 WL 3061978, at *3 (E.D. Wis. Sept. 23, 2009)). As these authorities confirm, writing an RFP that expressly seeks communications to or from in-house attorneys or outside counsel "creates an unreasonable burden on Defendant to identify every privileged document" and no log is appropriate or required. *Herrera*, 2022 WL 1343001, at *6; *see also Mikkelsen Graphic Eng'g Inc.*, 2009 WL 3061978, at *3 (rejecting suggestion defendant must "waste resources on the preparation of a privilege log listing obviously privileged information" and that plaintiffs should "tailor [ ] requests to exclude materials that are obviously privileged, such as communications between defendants and their counsel relating to the present litigation").

Plaintiff never addressed this authority in meet and confer and makes no attempt to do so in her motion other than to disingenuously suggest the case law is distinguishable because the RFPs at issue in *Herrera* and *Mikkelsen* defined "YOU" to include attorneys. Dkt. No. 358 ¶ 13. Plaintiff ignores that RFP 43 is a far more direct assault on the attorney-client privilege than simply defining "YOU" to include attorneys: RFP 43 expressly seeks "between or among" what Plaintiff describes

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

as "cross-group" communications with "Apple Legal or internal investigations teams" (*i.e.*, communications among Apple Legal and individuals acting at the direction of Legal). *Id.*; *see also* Dkt. No. 358-5 at PDF p 47. The RFP is facially objectionable because it clearly seeks non-discoverable information.

And in any event, Plaintiff's suggestion that Apple did not log documents that could be potentially responsive to RFP 43 (*see* Dkt. No. 358 ¶ 13) is also plainly wrong. *See generally* Dkt. No. 358-8 (entries include many communications between Human Resources, Employee Relations, security personnel, attorneys, and investigation teams related to documents identified by Apple in response to other less-objectionable RFPs that overlap with the documents requested in RFP 43). There is nothing more for Apple to do in response to a request which facially seeks to invade the attorney-client privilege and for which potentially responsive privileged documents have already been logged in response to less objectionable RFPs seeking overlapping information.

### C.     Apple properly disclosed witnesses in its initial disclosures.

Section IV argues that Apple's Rule 26 disclosures are incomplete because, according to Plaintiff: (1) Apple has not disclosed all persons she believes must have been "involved" in her termination; (2) Apple "is signaling" it might call a witness not identified in its disclosures; and (3) Apple has not disclosed the identity of the medical examiner who will conduct the Rule 35 IME. She is wrong. Rule 26(a) requires Apple to disclose witnesses that it "may use to support its claims or defenses" and to disclose experts consistent with the Court's scheduling order. Apple complied with Rule 26(a).

**Plaintiff's termination**. Plaintiff's argument that Apple has not identified every person "involved" in her termination (*see* Dkt. No. 358 ¶ 17) misstates Rule 26 and regurgitates an argument this Court already rejected when it determined that Apple's response to Interrogatory No. 1—regarding the reasons for Plaintiff's termination—was "robust." *See* Dkt. No. 327 at 1-2. Apple's initial GO71 Disclosures on December 18, 2023 identifies Mr. Bertolus as the person who "made the decision to terminate Plaintiff's employment." Ex. Q. Apple's Supplemental GO71 Disclosures further identified Megan Bowman, Aleks Kagramanov, Ekelemchi Okpo, Jennifer Waldo, Adelmise Warner, and Apple's counsel as others who were "'involved' in the decision

(broadly construed)." Ex. R. Plaintiff concedes that "Apple has represented throughout this litigation that Yannick Bertolus was the decision maker." Dkt. No. 358 ¶ 17. Apple's disclosures are complete and the Court should reject Plaintiff's attempt to relitigate this issue.

**Apple's defense witnesses**. Plaintiff suggests that Apple is "signaling" that it may use witnesses not identified in its disclosures, including another Apple employee to whom Plaintiff admits she disclosed confidential product information that employee did not otherwise have access to while at Apple. *See* Dkt. No. 358 ¶ 18. As a threshold failure, Plaintiff did not raise this as an issue in her April 9 email. *See* Ex. P. But in any event Plaintiff's unfounded speculation is misplaced. Her incredulity alone does not mean there is any actual issue.

**Identity of the Rule 35 Independent Medical Examiner**. Plaintiff complains Apple has not identified the name of its independent medical examiner. Dkt. No. 358 ¶ 19. As a threshold failure, Plaintiff did not raise this as an issue in her April 9 email, so it is waived. *See* Ex. P. And the deadline to disclose expert witnesses is not until June 30, 2026, which is the deadline set by Judge Chen for producing initial expert reports and the close of IME discovery. *See* Dkt. No. 345; *see also* Rule 26(a)(2)(D) (a party must make expert disclosures "at the time and in the sequence that the court orders" or, absent a stipulation, "at least 90 days before the date set for trial"). It makes no sense that a party would be required, in its initial disclosures, to identify expert witnesses it may eventually call to provide opinion testimony based on the facts disclosed in discovery. Nonetheless, on April 28, 2026, Apple identified Dr. Frederick Stampler, Psy.D. as the provider who will conduct the IME that Plaintiff has repeatedly agreed to sit for. This issue is moot.

> **D.** **Apple complied with this Court's standing order and has already confirmed in writing that its production is complete.**

Section V argues that Apple should be compelled to state on an "RFP-by-RFP basis whether production is complete or documents are withheld." Dkt. No. 358 at p. 10. As a threshold failure, Plaintiff did not raise this issue in her April 9 email, so it is waived. *See* Ex. P. Nonetheless, Plaintiff demands more than this Court requires. The standing order simply requires that Apple "promptly after the production, confirm in writing that they have produced all such materials so described [in their responses] that are locatable after a diligent search of all locations at which such materials

might plausibly exist." Judge Westmore Civil Standing Order, ¶ 15. Apple confirmed in writing on April 14 that it would complete its production by April 16 (*see* Ex. P, 4/14/2026 email); it completed production on that date; and it followed up on April 20 in writing confirming that its production was complete. *See* Dkt. No. 358-1 at PDF p. 15 of 44 ("Apple confirms that it has satisfied its document production obligations, consistent with its discovery responses."). During meet and confer, Apple offered to search for and produce still more documents, if any exist; it is doing so (even though Plaintiff rejected Apple's attempt to compromise) and it will confirm in writing once that additional production is complete. Nothing more is required.

**E.    Apple responded to Plaintiff's untimely RFP for records Apple obtained from Plaintiff's subsequent employer and has provided her copies.**

Section VI seeks an order compelling documents Apple obtained from its subpoena to Plaintiff's subsequent employer, Northeastern University. This "dispute" also appears nowhere in her April 9 meet and confer email. Ex. P. Her motion admits her RFP was not served until April 2, 2026—less than thirty days before the fact discovery cut-off—making it untimely. *See* N.D. Cal. L-R 37-3; *see also* Dkt. No. 353 (Judge Chen denied extending discovery cut-off for Plaintiff's untimely subpoena to Northeastern, calling it a "fishing expedition"). In any event, to avoid additional unnecessary disputes, Apple produced these records on April 27 and served responses to this RFP on April 28 confirming its production. Ex. S. This issue is moot.

**F.    Plaintiff's catch-call additional disputes are meritless.**

In Section VII, Plaintiff argues that a variety of additional issues remain in dispute. None of her arguments about alleged deficiencies has merit.

**RFPs 40-42**. Plaintiff argues that Apple's response to RFP 40-42—that following "reasonable and diligent search, no non-privileged documents exist"—is "implausible" and "not credible on its face." Dkt. No. 358 ¶ 29. Plaintiff relies on nothing other than her own speculation that Apple was surreptitiously monitoring her communications prior to her termination in a manner that would have generated responsive "access logs, audit trails, and internal monitoring records from Apple's internal systems." That some documents produced in this case reference members of Apple's legal team being aware of Plaintiff's public statements does not mean something non-

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

privileged exists. Apple properly claimed privilege over communications that it interprets might fall within the overbroad nature of these vague RFPs, and nothing more is required.

**RFP 49**. Plaintiff argues that shortly before filing she proposed narrowing this RFP to Slack messages sent to or from Dave Powers (her supervisor), reports of Dave Powers, other managers in MSQ (the organization in which she worked), Dan West (her skip-level manager), direct reports of Dan West, Yannick Bertolus (a VP three levels above her), or a more senior VP four levels above her. Dkt. No. 358 ¶ 30. However, Plaintiff's purported "narrowing" is the opposite—it expands the original RFP because her newly requested custodians fall outside of the originally requested "peers, supervisors, or project teams" and attempts to sweep in senior level leaders who were multiple levels above her, did not directly supervise her, and had no knowledge of her day to day work. Furthermore, the RFP remains vague and overbroad as to all communications "that refer to Plaintiff directly or indirectly"—regardless of whether those communications pertain to any issue relevant to her remaining retaliation claims. Apple's production of documents related to her complaints has been fulsome (*see* Section III.B, *supra*) and nothing more is appropriate.

**RFPs 61-62**. Though it is not entirely clear what issue Plaintiff intends to raise here, Plaintiff again appears to assert that Apple's discovery responses are somehow inconsistent with deposition testimony of Mr. Okpo. Dkt. No. 358 ¶ 31. Apple believes she misinterprets Mr. Okpo's testimony and there is nothing contradictory about it. But regardless, Apple's responses confirm that it produced all non-privilege documents responsive to these RFPs. *See* Dkt. No. 358-5 at PDF pp. 62-63. Apple has repeatedly informed Plaintiff that it is not waiving privilege over communications or documents related to Mr. Okpo's attorney-directed investigations of Plaintiff's myriad complaints. There is nothing further for Apple to produce.

**Amended Responses**. Plaintiff demands further amended responses reflecting Apple's positions stated in its April 23 meet and confer email. Dkt. No. 358 ¶ 32. However, Rule 26(e)(1)(A) requires a party to supplement its prior responses "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Apple informed Plaintiff "in writing" that it would search for and produce additional documents, if any are located, in response to numerous RFPs. Rule 26 does not demand more, and requiring

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]

Apple to further amend its written responses with information Apple has already confirmed "in writing" is a waste of time and resources. Pursuant to this Court's standing order, Apple will also confirm in writing once this supplemental production is complete. Nothing more is required.

**RFPs 7, 19, 43, 47, 51 and 59**. Plaintiff argues that she is entitled to compel further responses to these RFPs seeking multiple different forms of communications with "Legal"— including "legal memos created by Apple or outside counsel"—based on her prior arguments about Apple's "categorical privilege and Rule 26(b)(5)(A)." Dkt. No. 358 ¶ 33. She is still wrong for the reasons Apple set forth in Section V above. Apple's communications on these issues were conducted at the direction of counsel—or, indeed, by counsel themselves—and Apple is not waiving privilege over core attorney-client communications or attorney work product. Plaintiff is not entitled to know what Apple discussed with its lawyers, no matter how many times she demands that information.

## IV.    CONCLUSION

The Court should deny any further relief and issue no further orders on any of the litany of broadsides Plaintiff raised in her brief, including issues she never addressed in meet and confer despite this Court's order. Discovery in this case can and should close, Plaintiff's further fishing expeditions should be rejected, and resolution on the merits should proceed.[7]

Dated: April 30, 2026                                ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    _____/s/ Melinda S. Riechert_____
                    MELINDA S. RIECHERT
                    Attorneys for Defendant
                    APPLE INC.

---

[7] Apple expects that Plaintiff's responsive brief (due May 7) shall "not …address any disputes raised in the opening brief or raise any new issues," and shall be limited to (as this Court ordered) "respond[ing] only to the disputes Apple is raising" (*i.e.*, the two issues identified by Apple in pages 1-7 above). If Plaintiff does not comply, Apple requests that the Court either strike any improper additional argument as to disputes raised in Plaintiff's opening brief or, at a minimum, permit Apple the opportunity to respond.

DEF.'S BRIEF RE DISCOVERY
DISPUTES & OPP'N TO PLT.'S DISPUTES
[23-CV-4597-EMC]