Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**,

*an individual*,

Plaintiff,

v.

**APPLE INC**,

*a corporation*,

Defendant.

**CASE NO. 3:23-cv-04597-EMC-KAW**

**MAGISTRATE JUDGE**:
Honorable Kandis A. Westmore

**PLAINTIFF'S REPLY BRIEF (DKT. NO. 365)**

**EXHIBIT A**

**RE FINAL FACT DISCOVERY DISPUTE PROCESS PER OMNIBUS ORDER AT ECF NO. 327**

0

## I.   <u>**EXHIBIT A**</u>

(IN SUPPORT OF PLAINTIFF'S RESPONSIVE BRIEF AT ECF NO. 365)

## **EXCERPT OF DEFENDANT APPLE'S**
## **DEC. 16  2025 DEPOSITION**
## **OF PLAINTIFF ASHLEY GJOVIK**

REGARDING CHER SCARLETT, THE GOBBLER APPLICATION, & THE PLAINTIFF'S DISCLOSURE SHE DOES NOT HAVE A COPY OF THE JUNE 2021-SEPT. 2021 TEXT EXCHANGES WITH CHER SCHARLETT & ONLY SCARLETT MAY HAVE A COPY.

PLAINTIFF'S REPLY RE: DISCOVERY DISPUTES | 3:23-CV-04597-EMC          MAY 6 2026

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**CERTIFIED TRANSCRIPT**

ASHLEY GJOVIK,

      Plaintiff,

vs.                                      CASE NO. 23-cv-4597-EMC

APPLE INC.,

      Defendant.

_____/

VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION OF

ASHLEY MARIE GJOVIK

Pages 66 to 305 MARKED CONFIDENTIAL

DATE:          Tuesday, December 16, 2025

TIME:          9:07 a.m. - 5:53 p.m.

LOCATION:      (All attendees appearing remotely.)

REPORTED BY:   JULIE L. ANDERSON, CSR
               Stenographic California CSR No. 11422


               Talty Court Reporters
               2131 The Alameda, Suite D
               San Jose, California 95126

::: APPEARANCES :::

FOR THE PLAINTIFF:

ASHLEY MARIE GJOVIK, IN PRO PER
ashleymgjovik@protonmail.com
(415) 964-6272

FOR THE DEFENDANT:

ORRICK, HERRINGTON & SUTCLIFFE LLP
BY:  MELINDA S. RIECHERT, ATTORNEY AT LAW
     (APPEARING VIA VIDEOCONFERENCE)
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025
(650) 614-7423
mriechert@orrick.com

- AND -

ORRICK, HERRINGTON & SUTCLIFFE LLP
BY:  RYAN D. BOOMS, ATTORNEY AT LAW
     (APPEARING VIA VIDEOCONFERENCE)
2100 PENNSYLVANIA AVENUE NW
WASHINGTON, D.C. 20037
(202) 339-8400
rbooms@orrick.com

- AND -

ORRICK, HERRINGTON & SUTCLIFFE LLP
BY:  NICHOLAS J. HORTON, ATTORNEY AT LAW
     (APPEARING VIA VIDEOCONFERENCE)
400 CAPITAL MALL, SUITE 3000
SACRAMENTO, CALIFORNIA 95814
(916) 329-4906
nhorton@orrick.com

- AND -

APPLE INC.
BY:  ISELA PEREZ, ATTORNEY AT LAW
     (APPEARING VIA VIDEOCONFERENCE)
1 APPLE PARK WAY, M/S 37-2BE
CUPERTINO, CALIFORNIA 95014

ALSO APPEARING REMOTELY:

MICHAEL MACK, VIDEOGRAPHER



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

question?

BY MS. RIECHERT:

Q.   No.   Because you didn't understand my question.  You didn't understand what product-related information meant.  You didn't understand what tools -- internal tools meant.  So if you don't understand the question and you don't understand what those words mean, then we can move on to another question.  If you understand what product-related information is and if you understand what internal tools are then you can answer the question.

A.   I mean, if you're asking, like, about me sharing Gobbler, a lot.  Telerama wrote an in-depth thing.  So did --

(Reporter clarification.)

THE WITNESS:  If you're talking about that I shared Gobbler, for example, I shared with Telerama. It's a French paper.  Telerama.  And they wrote a very in-depth article about it as did Der Spiegel. It's a German magazine, and they also wrote a very in-depth magazine article.  I shared a lot with those reporters and other reporters too.  Some of that was -- most of that was after I was terminated.

/ / /

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

BY MS. RIECHERT:

Q. Anybody else other than --

A. Yeah, a lot.

Q. Okay.

A. Congress too. And I was included and cited in that government accountability report about employee privacy concerns published --

Q. Regarding who you shared it with. You've got Telerama, Der Spiegel, and Congress. Anybody else?

A. The agencies.

Q. Government agencies?

A. There were other reporters. A lot of other reporters and I've shared stuff, social media, and in the court case.

Q. What other reporters?

A. Probably dozens. I'd have to go back and, like, itemize the whole list.

Q. Okay. What about during your employment? Did you share this information with anybody other than Zoe Schiffer? Apple's product-related information or internal tools?

A. Talking about Gobbler.

Q. Apple's product-related information or internal tools?

A.   I don't know what those terms mean.

Q.   Okay.  We're back to that again.  Okay.  If you find out what you think they mean, let me know and we can get the question answered.

A.   I need a definition from you that's more specific than those general terms.

Q.   Understand.  Okay.  So let's look at Exhibit Number 20, which is tab 3-01.

A.   Okay.

Q.   Okay.  Is this a text message that you sent to Cher Scarlett?

A.   Looks like it, yeah.

Q.   Okay.  And who is Cher Scarlett?

A.   She's an ex-Apple global security employee who sued me and accused me of criminal extortion and harassment and blackmail and then was stalking me for multiple years, and I had to file multiple police reports against her.

Q.   Why did you share this information with Cher Scarlett?

A.   We were organizing together for a brief period of time in July and, like, very early August. We seemed to have some intersecting interests in organizing about making Apple better.  And at this time we were still communicating, and she had been



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

encouraging me -- my advocacy and my disclosures and this was something -- a topic, the privacy stuff, that she was specifically very interested in and she'd even been sharing some of my stuff herself from her own Twitter account.  Like my protest that Apple was requesting us to share all of our medical records directly with Apple if we were to request disability or ADA accommodations.

Q.  And in that message you confirm that you gave all of this information to Zoe; correct?

A.  I said, [As read]:  "I gave all of this to Zoe as background.  Some engineering told her about it a while ago.  I'm letting her use those pics of me for the article to show how invasive it is.  I chose the pretty ones because most are not."

Q.  And Zoe is referring to the Verge reporter who published the article with your Glimmer pictures and video; correct?

A.  Yeah.  Cher helped connect me to Zoe.  Cher had been working with Zoe --

Q.  Okay.  I didn't ask that.  I'm just asking if that's who Zoe is when you refer to Zoe.  "I gave all of this to Zoe," you were referring to Zoe who wrote the Verge article -- that published the article with your Glimmer pictures and video;



correct?

A.   Yeah.   Zoe Schiffer of the Verge.

Q.   Okay.   And when you say "all of this," you're referring to the screenshots that you were sharing in the text thread with Cher; is that correct?

A.   I don't have the full text anymore.   I got locked out of --

(Reporter clarification.)

THE WITNESS:   -- my old iMac.   So I can't go back and confirm exactly what it is.   We're just working off of Cher's documents I think at this point.

BY MS. RIECHERT:

Q.   But you did share this information with -- that's in this exhibit with Cher; correct?

A.   Cher's falsified and fabricated a number of documents --

Q.   Okay.   Did you or did you not share this information with Cher?   Yes, no, I don't know.

A.   The first page -- that screenshot included just in that first page does look like something I did share with Zoe on background, the article for her to do fact checking.

Q.    And the other pictures that are in here and

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)          December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

the other information that's in here, did you share that with Zoe -- excuse me -- with Cher?

A. Again, I lost my copies of this so --

Q. Yes, no, I don't know?

A. So the timing, the ordering, it looks like I -- some of that stuff with Zoe, but it looks like some of this I was just sharing with Cher to show to her because she wasn't familiar with the app, so there's two different things happening it looks like in this chain.

Q. So when you say, "I gave all of this to Zoe as background," what are you referring to?

A. That's where I'd have to go back and look in the chain. I think some of this -- it looks like some of this stuff I'd shared with Cher, like, later in this PDF and the later pages was stuff I was just showing Cher because she said she wasn't aware -- she indicated she was not aware of the app, so I wanted to show Cher more of what the app looked like, and Cher was an active Apple employee.

(Reporter admonition.)

BY MS. RIECHERT:

Q. Do you agree that sharing this information with Cher was a breach of your confidentiality obligations with Apple?

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

A.   Absolutely not.

Q.   Why not?

A.   One, Cher was an active Apple employee.

Q.   And were you permitted to share confidential information with all Apple employees?

A.   Ask your question again.

Q.   Yes.  Do you believe you were able to share confidential information about Apple with all Apple employees?

A.   Confidential is a broad term I don't understand.  But second, some of this stuff was highly protected.  This includes naked photos of me. I shared --

Q.   I'm just asking you a question.  Do you agree that sharing this information with Cher was a breach of your confidentiality obligations, and you said no.  And I said why not?  And you said she's an Apple employee.  And then I said, "Do you believe that you were entitled to share all confidential information you got from Apple with all Apple employees?"

A.   I was answering your other question of why I thought it was okay, which I was not done answering, and I don't want it to appear that that was my only answer to your question of why I thought it was fine



sharing it with her.

Q.   Okay.   The answer number one was she was an Apple employee.   Okay.   Keep -- keep going on why you thought it was okay to share this confidential information -- this information with Cher?

A.   One, Apple employee -- engineering employee. Two, this includes stuff very protected, such as naked photos of me.

Q.   Where is the naked photo?

A.   There's one on here of my -- I don't know if you included it in this document, but it was of my, like, full chest to show that this app is fully capable of -- because it's taking -- the AI is just taking photos whenever it thinks it sees a face.   It doesn't care if you're topless.

Q.   Are you talking about the document that's on page 9 of 10?

A.   There was 68, which if you open that one it shows far deeper than what you're seeing as well. And then there was the --

Q.   When you say "68," what are you -- are you talking about 2268?

A.   Yes, ma'am.

Q.   Okay.   And you said -- you talked about naked photos.   Is the photo on 2268 what you



referred to when you said it was sharing naked photos of you?

A.   It was one of them.

Q.   Okay.  And that was a picture that you sent to Cher Scarlett; right?

A.   Yeah.  I chose one that didn't actually show my nipples because I didn't want to send my nipples to Cher Scarlett.  But I wanted her to fully understand that this app was taking a lot of photos that are problematic and it's fully capable of capturing.  And I had photos it was taking that include my nipples and other parts of my naked body.

Q.   Did you share those with anybody?

A.   I don't think so.

Q.   Okay.

A.   And then -- what was I saying?  Why it was -- oh, because we were organizing about work conditions.  I was protesting this and said I don't like this.  I want Apple to stop.  And if she was organizing with me at that time -- sorry.  I'm going to slow -- trying to help improve our work conditions, then sharing this with her for her understand -- and she seemed very upset about this as well -- was absolutely NLRA, the National Labor Relations Act, and California Labor Law, protected



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                 December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

concerted activity of coworkers trying to make a better workplace for themselves and their other coworkers.  And whistleblower disclosures that something is going on that seems unethical or unlawful, and there's nothing in here that's trade secret and other reasons.

Q.  And the other reasons are what?

A.  Organizing, disclosures.  Kind of an escalation.  She worked for new product security. She worked for the team that tells us everything is secret, so if she can see something like this and get upset and say that's not right, she's actually in a great position to escalate that issue to people who could, like, actually try to change stuff.  That would be great.

Nothing on it was marked, like, actual confidential or needed disclosure, not trade secret. And the photos again were taken of me by AI, so there's no legal protection for Apple there.  And if anyone owns it, it's me, and I'm complaining.  And me complaining about work conditions is protected also under other California labor protections.

Q.  Do you know if Cher was whitelisted for Glimmer?

A.  What was that?



DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

Q.  Do you know if Cher was whitelisted for Glimmer?

A.  She indicated she had no familiarity with the app before I told her about it.

Q.  So would that answer to my question be, no, I do not believe that Cher was whitelisted for Glimmer?

A.  I have no idea.  You'd have to check in the engineering background.

Q.  But you had no reason to believe that she was whitelisted for Glimmer; correct?

A.  It's a very, like, weird question.  I don't know how to answer your question.

Q.  Do you have any reason to believe that she was -- that Cher Scarlett was whitelisted for Glimmer?

A.  I don't know how to answer your question.

Q.  Okay.  Well, you said she knew nothing about the app.  So is there any reason that you would think that Cher Scarlett is whitelisted for Glimmer?

A.  I'd have to speculate, but I could think up a lot of stuff, but that's speculation.  Are you asking me to speculate?  I can.

Q.  No.  Any reason to believe -- not speculation -- that she was allowed to review

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)          December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

information from Glimmer?

A.   Review information?

Q.   Yes.

A.   That's different than whitelisting.

Q.   Okay.  Well, you couldn't answer my whitelisted question.  You were totally incapable of asking it, so I'm trying another one to see if I can get to the end of it.

A.   So you're asking if she has Gobbler on her phone, so it was taking --

Q.   No.  I started off by asking if you had any reason to believe that she was whitelisted for Glimmer.  Is the answer to that, yes, no, or I don't know?

A.   That's a thing that happens in the engineering teams in the background, so I had no way to know.

Q.   So, yes, no, or I don't know?

A.   I don't know.

Q.   Okay.  Making progress.

Do you have any reason to believe that you were permitted to share Glimmer information with Cher Scarlett?  Yes, no, or I don't know?

A.   What was the term you used, "permitted"?

Q.   Yes.

DEPONENT: ASHLEY MARIE GJOVIK (CONFIDENTIAL)                December 16, 2025
ASHLEY GJOVIK vs APPLE INC.

A.  So I don't know how to answer that question with the "permitted" term.

Q.  Okay.  You don't know what "permitted" means?

A.  I don't know what "permitted" means.

Q.  How about allowed?  Is that any better? A-L-L-O-W-E-D?

A.  No.

Q.  Okay.  Don't know what "permitted" and "allowed" mean.

Okay.  Are Apple employees allowed to share confidential information with Apple -- Apple employees who are not --

A.  I don't know.

Q.  -- who are not whitelisted to receive the confidential information?

A.  I don't know what "allowed" or "whitelisted" means in your question.

(THE PRECEDING PAGES, 66 TO 305, WERE DESIGNATED CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER.)

-oOo-