JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　　　　Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION**<br><br>Date:　　　June 11, 2026<br>Time:　　　1:30 p.m.<br>Dept:　　　Courtroom 5, 17th Floor<br>Judge:　　　Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

Notice of Motion and Motion ........................................................................................................ 1

Memorandum of Points and Authorities ...................................................................................... 1

I.      Introduction .......................................................................................................................... 1

II.     Statement of Issue to Be Decided ..................................................................................... 1

III.    Relevant Facts ..................................................................................................................... 2

IV.    Legal Standard ................................................................................................................... 4

      A.      Motions for Summary Judgment ............................................................................ 4

      B.      The Substantive Law on Retaliation & Wrongful Termination .......................... 5

V.     Argument .............................................................................................................................. 6

      A.      Apple is Entitled to Judgment on All of Plaintiff's Claims. .................................. 6

            1.      The Only Adverse Action Was Plaintiff's Termination. ........................... 6

            2.      Apple Legitimately Terminated Plaintiff for Publishing
                 Confidential Product-Related Information. .................................................. 7

            3.      Plaintiff Lacks "Substantial Responsive Evidence" Demonstrating
                 Apple's Reasons for Terminating Her Were Pretext. ............................... 11

      B.      Plaintiff's Motion Should Be Denied. .................................................................... 14

            1.      Much of Plaintiff's Evidence is Inadmissible, Immaterial, or Both. ........ 15

            2.      There is No "Unrebutted" Liability or "Established" Causation. ............. 18

                 a.      Plaintiff Was Not Fired For Making a Harassment
                     Complaint. ........................................................................................ 18

                 b.      Plaintiff Has Not Established that Anyone at Apple—Much
                     Less the Decisionmaker for Her Termination—Knew of Her
                     Parade of Administrative Complaints. ......................................... 19

                 c.      Temporal Proximity Alone Does Not Establish Causation. .......... 19

                 d.      Plaintiff's Administrative Leave Does Not Prove Her
                     Claims. .............................................................................................. 20

                 e.      There is No Evidence of "Cat's Paw" Causation. ......................... 20

                 f.      Apple was Not Required to Engage in Progressive
                     Discipline. ........................................................................................ 21

                 g.      A Privileged Memo Does Not Show Pretext. .............................. 21

                 h.      Apple Has Consistently Explained Why Plaintiff Was Fired. ...... 21

                 i.      Apple's Privileged Investigations Are Not at Issue. .................... 22

                 j.      Plaintiff Was Not Subject to Differential Treatment. .................. 22

**TABLE OF CONTENTS**
(continued)

Page

3.    Neither the Constitution Nor Statutes Cloak Plaintiff in Immunity.......... 22

4.    Plaintiff is Not Entitled to Reinstatement. ................................................ 24

VI.    Conclusion ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................ 5

*Arteaga v. Brink's, Inc.*,
163 Cal. App. 4th 327 (2008)................................................................................................. 10

*Barbee v. Household Auto. Fin. Corp.*,
113 Cal. App. 4th 525 (2003)................................................................................................. 23

*Batarse v. Serv. Emps. Int'l Union, Loc. 1000*,
209 Cal. App. 4th 820 (2012)........................................................................................... 7, 8, 9

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)................................................................................................ 12

*CareFirst of Md. v. Johnson & Johnson*,
No. 2:23-CV-629, 2026 WL 114415 (E.D. Va. Jan. 14, 2026) .............................................. 18

*Carmen v. S.F. Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001)................................................................................................ 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................ 5

*Cervantes v. Concentra Health Servs., Inc.*,
No. 2:21-cv-02502, 2021 WL 6496829 (C.D. Cal. Dec. 21, 2021)................................... 5, 11

*Choochagi v. Barracuda Networks, Inc.*,
60 Cal. App. 5th 444 (2020)............................................................................................. 20, 21

*Cotran v. Rollins Hudig Hall Int'l, Inc.*,
17 Cal. 4th 93 (1998) ............................................................................................................ 22

*Crawford v. Metro Gov't of Nashville*,
555 U.S. 271 (2009) .............................................................................................................. 19

*Cuevas v. SkyWest Airlines*,
17 F. Supp. 3d 956 (N.D. Cal. 2014), *aff'd*, 644 F. App'x 791 (9th Cir. 2016) ................. 8, 11

*Davis v. City of Seattle*,
343 F. App'x 230 (9th Cir. 2009) .......................................................................................... 12

*DeJung v. Superior Ct.*,
169 Cal. App. 4th 533 (2008).................................................................................................. 20

*Done v. Sonoma Cnty. Junior Coll. Dist.*,
  No. 25-CV-11071-EMC, 2025 WL 3771616 (N.D. Cal. Dec. 31, 2025) ............................... 25

*E.E.O.C. v. Total Sys. Servs., Inc.*,
  221 F.3d 1171 (11th Cir. 2000) ................................................................................................. 8

*Erhart v. BofI Holding, Inc.*,
  No. 15-CV-02287-BAS-NLS, 2017 WL 588390 (S.D. Cal. Feb. 14, 2017) .......................... 24

*Evans v. Dep't of Pub. Health of City & Cnty. of S.F.*,
  No. CV 08-3329 EDL, 2009 WL 4907933 (N.D. Cal. Dec. 14, 2009).................................... 12

*Feminist Women's Health Center v. Superior Court*
  52 Cal. App. 4th 1234, 1240-41 (1997) ................................................................................. 23

*Flanagan v. City of Richmond*,
  No. 14-CV-02714-EMC, 2015 WL 5964881 (N.D. Cal. Oct. 13, 2015), *aff'd*,
  692 F. App'x 490 (9th Cir. 2017) ........................................................................................... 14

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal. 4th 1 (1994) ................................................................................................................... 23

*Hines v. Cal. Pub. Utils. Comm'n*,
  No. C-10-2813-EMC, 2011 WL 724658 (N.D. Cal. Feb. 23, 2011) ....................................... 25

*Holmes v. Petrovich Dev. Co.*,
  191 Cal. App. 4th 1047 (2011)............................................................................................ 6, 23

*Horn v. Cushman & Wakefield W.*,
  72 Cal. App. 4th 798 (1999).................................................................................................... 11

*Joaquin v. City of Los Angeles*,
  202 Cal. App. 4th 1207 (2012)................................................................................................ 10

*Johnson v. Poway Unified Sch. Dist.*,
  658 F.3d 954 (9th Cir. 2011)................................................................................................... 15

*Keenan v. Allan*,
  91 F.3d 1275 (9th Cir. 1996)................................................................................................... 16

*Kerr v. Rose*,
  216 Cal. App. 3d 1551 (1990).................................................................................................. 12

*Killgore v. SpecPro Pro. Servs., LLC*,
  51 F.4th 973 (9th Cir. 2022).................................................................................................... 24

*Korkosz v. Clark Cnty.*,
  379 F. App'x 593 (9th Cir. 2010) ........................................................................................... 12

*L.A. Mem'l Coliseum Comm. v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir.1980)......................................................................................... 25

*Lawson v. PPG Architectural Finishes, Inc.*,
    12 Cal. 5th 703 (2022) ............................................................................................... 6, 11

*Loggins v. Kaiser Permanente Int'l*,
    151 Cal. App. 4th 1102 (2007)................................................................................*passim*

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc)....................................................................... 16

*Martin v. Bd. of Tr. of Cal. State Univ.*,
    97 Cal. App. 5th 149 (2023)........................................................................................... 20

*Martin v. Lockheed Missiles & Space Co.*,
    29 Cal. App. 4th 1718 (1994)...................................................................................... 6, 11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ..................................................................................................*passim*

*McGrory v. Applied Signal Tech., Inc.*,
    212 Cal. App. 4th 1510 (2013)..................................................................................... 8, 20

*McRae v. Dep't of Corr. & Rehab.*,
    142 Cal. App. 4th 377 (2006)............................................................................ 9, 12, 13, 19

*Moran v. Selig*,
    447 F.3d 748 (9th Cir. 2006).................................................................................... 16, 17

*Nash-DeCamp Co. v. Agric. Lab. Rels. Bd.*,
    146 Cal. App. 3d 92 (1983)............................................................................................ 10

*Nazir v. United Airlines, Inc.*,
    178 Cal. App. 4th 243 (2009)......................................................................................... 22

*Nejadian v. Cnty. of Los Angeles*,
    40 Cal. App. 5th 703 (2019)........................................................................................... 12

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002)......................................................................................... 17

*Ostly v. City & Cnty. of San Francisco*,
    No. 21-CV-08955-EMC, 2023 WL 4053800 (N.D. Cal. June 15, 2023), *aff'd*,
    No. 23-16000, 2024 WL 3963839 (9th Cir. Aug. 28, 2024)........................................... 10

*Ostly v. City & Cnty. of San Francisco*,
    No. 23-16000, 2024 WL 3963839 (9th Cir. Aug. 28, 2024)......................................... 5, 10

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

*Raphael v. Tesoro Corp.*,
No. 2:15-CV-05080-SVW-JEM, 2016 WL 6634915 (C.D. Cal. Oct. 26, 2016)...................... 9

*Richey v. City of Indep.*,
540 F.3d 779 (8th Cir. 2008)............................................................................................... 10

*S. Cal. Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003)................................................................................................. 5

*Sampson v. Murray*,
415 U.S. 61 (1974) .............................................................................................................. 25

*Schroeder v. McDonald*,
55 F.3d 454 (9th Cir. 1995)................................................................................................. 17

*Sears v. Hous. Auth. of the Cnty. of Monterey*,
No. 11-cv-1876, 2014 WL 1369594 (N.D. Cal. Apr. 7, 2014) ................................................ 8

*Siazon v. Hertz Corp.*,
No. 17-CV-05935-EMC, 2019 WL 1170778 (N.D. Cal. Mar. 13, 2019), *aff'd*,
847 F. App'x 448 (9th Cir. 2021) .................................................................................... 9, 13

*Simpson v. Martinez*,
No. C-11-2642 EMC, 2013 WL 1120891 (N.D. Cal. Mar. 18, 2013) ................................... 12

*Smith v. Cnty. of Santa Clara*,
No. 5:11-CV-05643-EJD, 2016 WL 4076193 (N.D. Cal. Aug. 1, 2016) .............................. 14

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) ............................................................................................................ 21

*Stetsyk v. Kelly Mitchell Grp., Inc.*,
No. 20-cv-03941, 2021 WL 12302250 (C.D. Cal. Apr. 16, 2021) .................................... 5, 11

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009)............................................................................................. 25

*Surrell v. Cal. Water Serv. Co.*,
518 F.3d 1097 (9th Cir. 2008)............................................................................................. 12

*Tarin v. Cnty. of Los Angeles*,
123 F.3d 1259 (9th Cir. 1997)............................................................................................. 12

*Thompson v. City of Monrovia*,
186 Cal. App. 4th 860 (2010).............................................................................................. 12

*Tides v. The Boeing Co.*,
644 F.3d 809 (9th Cir. 2011)............................................................................................... 24

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

*Trujillo v. U.S. Postal Serv.*,
　330 F. App'x 137 (9th Cir. 2009) ................................................................................ 13

*Vatalaro v. County of Sacramento*,
　79 Cal. App. 5th 367 (2022)................................................................................... 9, 12

*Ververka v. Dep't of Veterans Affs.*,
　102 Cal. App. 5th 162 (2024), *as modified* (June 5, 2024), *review denied* (Aug.
　14, 2024) ................................................................................................................. 6, 7

*Veto v. Boeing Co.*,
　No. 8:24-cv-00509, 2024 WL 5036760 (C.D. Cal. Oct. 23, 2024) ........................ 5, 8

*Villaneda v. Sayre*,
　No. C-13-5004 EMC (PR), 2014 WL 688795 (N.D. Cal. Feb. 21, 2014) ............... 13

*Villanueva v. City of Colton*,
　160 Cal. App. 4th 1188 (2008)................................................................................... 11

*Wadsworth v. Beard*,
　No. 15-CV-02322-EMC, 2025 WL 1785763 (N.D. Cal. June 26, 2025) ................. 25

*Wilkin v. Cmty. Hosp. of Monterey Peninsula*,
　71 Cal. App. 5th 806 (2021).................................................................................... 8, 9

*Wills v. Superior Court*,
　195 Cal. App. 4th 143 (2011)................................................................................. 8, 9

*Winter v. Nat'l Res. Def. Council*,
　555 U.S. 7 (2008) ...................................................................................................... 25

*Wood v. Yordy*,
　753 F.3d 899 (9th Cir. 2014)....................................................................................... 5

*Zirpel v. Alki David Prods., Inc.*,
　93 Cal. App. 5th 563 (2023)....................................................................................... 23

**Statutes**

Cal. Lab. Code § 232.5(d)................................................................................................ 24

Cal. Lab. Code § 1102.5.......................................................................................... *passim*

**Other Authorities**

Cal. Const. Art. I § 1 ...................................................................................................... 23

Fed. R. Civ. P. 56 ....................................................................................................... 4, 16

Fed. R. Evid. 602 ........................................................................................................... 18

Fed. R. Evid. 802 ................................................................................................................... 17

Fed. R. Evid. 901(a) .............................................................................................................. 17

N.D. Cal. L.R. 7-4 (a)(3) ....................................................................................................... 14

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF ASHLEY GJOVIK: PLEASE TAKE NOTICE** that on June 11, 2026, at 1:30 p.m. in Courtroom 5, on the 17th Floor of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. will move the Court for summary judgment as to all of the remaining claims in Plaintiff's operative Fifth Amended Complaint (Counts I through IV in Dkt. 142).

Apple requests this Court grant summary judgment in its favor on the grounds that the undisputed evidence establishes that Apple terminated Plaintiff for legitimate reasons. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice in support of this Motion, the declarations and attached documents filed in support of this Motion, the complete pleadings and records on file, and other evidence and arguments as may be presented at the hearing on this Motion. The Memorandum below also lays out Apple's opposition to Plaintiff's Motion for Summary Judgment and Preliminary Injunction (Dkt. 359), consistent with this Court's order on cross-briefing these motions (Dkt. 273).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As this Court has already determined, this "is essentially a retaliation case." Dkt. 179 at 34. A retaliation case turns on whether an employee experienced an adverse employment action—and, if so, why. Despite Plaintiff's repeated efforts to interject other sideshows, distractions, and non sequiturs into the case, summary judgment can and should focus on these specific issues.

The undisputed evidence establishes Apple terminated Plaintiff's employment because she leaked confidential images and data from an internal tool (Glimmer) used in the development of Face ID, one of Apple's key features on its flagship product. Plaintiff does not believe this is why she was terminated—but the evidence says otherwise. No amount of speculation, conspiracy theories, or incredulity changes these facts. Apple is entitled to judgment as a matter of law.

### II.    STATEMENT OF ISSUE TO BE DECIDED

Did Apple terminate Plaintiff's employment for legitimate reasons, such that it is entitled to judgment on her wrongful termination and retaliation claims?

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. &PI
[23-cv-4597-EMC]

### III.     <u>RELEVANT FACTS</u>

On August 28, 2021, Plaintiff posted a tweet regarding an internal Apple study regarding AirPods that Apple was developing at the time. Decl. of Melinda S. Riechert ("Riechert Decl."), Ex. A ("Gjovik Dep. Vol. I") 233:23-234:12; Dkt. 142 (Fifth Am. Compl.) at PDF p. 38 (Figure 3). On August 30, 2021, Plaintiff posted several tweets that included screenshots of images of locally captured data on her Apple-provided phone from an internal Face ID study. *Id.* 241:22-243:15; *id.* (Figure 3). These images contained confidential Apple product information in violation of her Intellectual Property Agreement ("IPA") and multiple Apple policies. *See* Decl. of Robert Aloe, Ph.D. ("Aloe Decl.") ¶¶ 8-10, Ex. C; Decl. of Megan Bowman ("Bowman Decl.") Exs. A-E. That same day, The Verge published an article containing a video of images stored on Plaintiff's Apple-provided iPhone that she had leaked. Gjovik Dep. Vol. I, 287:1-19; Riechert Decl. Ex. B ("Gjovik Dep. Vol. III") 399:3-400:3; https://www.theverge.com/22648265/apple-employee-privacy-icloud-id. The images in the article also contained confidential information. Aloe Decl. ¶ 8. Plaintiff tweeted a link to the article that afternoon and yet more images, also confidential. Gjovik Dep. Vol. I, 242:5-243:15; Dkt. 142 at PDF p. 38 (Figure 3); Aloe Decl. ¶ 9.[1]

Plaintiff's leaks quickly came to Apple's attention. Decl. of Yannick Bertolus ("Bertolus Decl.") ¶ 4; Riechert Decl. Ex. C ("Bertolus Dep.") 67:9-23. Apple considered the leaks serious because they revealed confidential information. Bertolus Decl. ¶ 4; Aloe Decl. ¶¶ 8-10. Public disclosure of confidential internal product information is a clear violation of company policy and specific confidentiality agreements Plaintiff signed, and had the potential to cause significant harm to Apple. Bertolus Decl. ¶¶ 6-7; Bowman Decl. Exs. A-E; Aloe Decl. ¶¶ 6, 8-10, Ex. C. Apple tried to speak with Plaintiff as part of an investigation into her disclosure, but she refused, insisting on communicating only in writing. Riechert Decl. Ex. D ("Kagramanov Dep.") 56:12-17, 57:4-10 and Dep. Ex. L; *id.* 59:14-24 (explaining importance of "live dialogue" in investigations).

On September 9, 2021, after reviewing the images she posted (which confirmed both the

---

[1] Gjovik admits that she had no idea if the images she could see locally on her phone were ever uploaded or visible to Apple. Gjovik Dep. Vol. I 110:18-111:24 ("Q. But you don't know if it was, in fact, auto uploading the content; correct? A. Correct."). She never opted to upload the images she posted, so none were actually in Apple's possession. Aloe Decl. ¶ 12.

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

fact of her undisputed disclosure and the confidential nature of what she disclosed), Apple Vice President Yannick Bertolus determined Plaintiff's conduct was "egregious" and terminated her employment. Bertolus Decl. ¶¶ 6-7, 12. This conduct was alone grounds for the termination. *Id*. ¶¶ 6, 12. The termination letter Bertolus sent also noted Plaintiff's refusal to cooperate with the investigation into her leaks by insisting on communicating only in writing, and her efforts to mislead Apple personnel investigating complaints she had made, which further supported his decision. *Id*. ¶ 10, Ex. A.[2]

Apple has terminated over a dozen employees for similarly disclosing confidential product research and development information. Bowman Decl. ¶ 7, Exs. F through R.[3] These terminations, like Plaintiff's, are consistent with Apple's Misconduct and Discipline Policy, which makes clear that conduct that may warrant immediate termination includes "[v]iolating confidential, proprietary, and trade secret information obligations (including those stated in Apple's Intellectual Property Agreement)" as well as making misrepresentations during or "failing to cooperate with an investigation" *Id*. Ex. C at 1-2; *see also id.* Ex. B at 6 ("Never share confidential information about Apple's products or services without your manager's approval."); *see also* Exs. D, E.

Prior to choosing to reveal confidential product-related information publicly, Plaintiff had for years raised a panoply of concerns—regarding potential vapor intrusion from floor cracks in her office building, Apple's return to office expectations post-COVID, interactions with her managers, and complaints about her work environment and job description—to Apple's EH&S, HR, and ER teams. *See, e.g.,* Dkt. 360, Ex. 19. Apple responded to Plaintiff's concerns and

---

[2] After Apple terminated Plaintiff on September 9, it learned that Plaintiff's unauthorized disclosures of confidential product information had been even more extensive than previously known: she disclosed images and screenshots of the Glimmer application interface—including technical details relevant to Face ID's internal operations—to journalists and employees not approved to know about the application or the user studies conducted through it. Gjovik Dep. Vol. I, 280:7-281:9 (disclosed unblurred images of Glimmer app to The Verge), 292:1-19 (disclosed Glimmer metrics), 294:19-295:6; 295:10-12, 296:9-297:2, 297:19-298:20 ("I gave all of this to [the reporter]"); Gjovik. Dep. Vol. III 399:20-400:3; 401:7-14 (disclosed unblurred text), 412:9-13, 413:6-18, Ex. 32 (told reporter to "remove any code / #s etc" she had disclosed).

[3] Indeed, Plaintiff herself previously raised concerns to Apple that other employees may be leaking confidential product information and that such conduct violated Apple policy. Gjovik Dep. Vol. I 53:1-14, 53:25-55:13 ("Q. You reported it because you felt that these people were violating their confidentiality obligations to Apple; correct? A. That they might be, but that's for Apple to decide. I was just obligated to report the issue and let Apple investigate.").

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

communicated with her about them. *See, e.g.*, Riechert Decl. Ex. E ("Okpo Dep.") 38:19-40:10, Ex. AA. Apple also allowed Plaintiff to take paid administrative leave in August 2021 while it investigated her concerns, because Plaintiff asked not to have to talk with any of her managers during that time (which effectively meant she could not perform her job duties). Decl. of Ekelemchi Okpo ("Okpo Decl.") ¶¶ 5-6, Ex. B ("Per your request, you are now on paid administrative leave so as to not interact with your managers."); Gjovik Dep. Vol. I, 310:17-311:17, Ex. 25 ("I said: then put me on paid leave with benefits until they're done."). Although Plaintiff now characterizes it as a forced involuntary leave, she never responded to Apple's multiple offers to have her return to work. Okpo Decl. ¶ 9.[4] Plaintiff provided voluminous information she claimed warranted investigation, including a partial excerpt of a text message chain she said proved her second-level manager was "pimping" her; Apple ER attempted to speak to Plaintiff after reviewing the full text chain to understand her selective presentation of only that one text without the broader chain which directly contradicted her allegation, but she refused, insisting that all communications be in writing. Okpo Dep. 102:21-103:13, Ex. EE; *id.* 104:1-12, 105:3-11 (explaining importance of real-time discussion to "ER investigate (sic) process"). Plaintiff was not terminated until after she leaked confidential product information—long after she had begun raising (and Apple had been responding to) her array of grievances.[5] Any concerns Plaintiff previously raised were not a factor in Bertolus's decision to terminate her employment. Bertolus Decl. ¶ 11.

## IV.    LEGAL STANDARD

### A.    Motions for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine

---

[4] Plaintiff had also previously been offered and accepted paid leave in May 2021, during an earlier phase of Apple's investigation into concerns she raised. Gjovik Dep. Vol. I 307:23-309:7, Ex. 23.

[5] Plaintiff's messages from summer 2021 show her motivation for shifting from raising concerns (which Apple investigated while she remained employed) to terminable misconduct. *See* Gjovik Dep. Vol. III, 471:8:472:4 (June 8, 2021 text) ("Give me my money b's. I EARNED IT. I WANT MY EXIT PACKAGE."); *id.* 469:9-470:16, ("July or August" 2021 text) ("[A]s I told ER, I'm sticking around until they fire me so I can sue for the most money."); *id.* 472:15-473:12 (Aug. 30, 2021; "don't recall exact[ly]" when bio was changed) (Twitter bio reads "(not fired yet!).")

only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

As a general matter, where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden to show that no reasonable jury could find other than for the moving party. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citing California standard). Where the moving party would not bear the burden at trial, the motion need only specify the basis for summary judgment and identify those portions of the record, if any, which it believes demonstrate the absence of a genuine issue of material fact on some essential element of the claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to establish the existence of material disputes of fact that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. But "allegations based on 'inference and speculation' are insufficient to defeat summary judgment." *Ostly v. City & Cnty. of San Francisco*, No. 23-16000, 2024 WL 3963839, at *1 (9th Cir. Aug. 28, 2024) (citation omitted); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient." (citing cases)).

### B.    The Substantive Law on Retaliation & Wrongful Termination

Three of Plaintiff's retaliation claims—wrongful termination in violation of public policy (the "*Tameny*" claim; Count I), Section 6310 (Count III), and Section 98.6 (Count IV)—are governed by the same general three-step burden-shifting analysis stemming from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Stetsyk v. Kelly Mitchell Grp., Inc.*, No. 20-cv-03941, 2021 WL 12302250, at *15 (C.D. Cal. Apr. 16, 2021) (*Tameny* claim); *Veto v. Boeing Co.*, No. 8:24-cv-00509, 2024 WL 5036760, at *4 (C.D. Cal. Oct. 23, 2024) (Section 6310); *Cervantes v. Concentra Health Servs., Inc.*, No. 2:21-cv-02502, 2021 WL 6496829, at *10 (C.D. Cal. Dec. 21, 2021) (Section 98.6). First, the employee must establish a *prima facie* case of retaliation. *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109-11 (2007). Upon doing so, the burden shifts to the employer to offer a legitimate, nonretaliatory reason for the

adverse employment action. *Id.* at 1111–12. Third, after such proffer, the burden shifts back to the employee to provide "substantial responsive evidence" that the proffered reasons were pretextual. *Id.* (quoting *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1735 (1994)).

The last of Plaintiff's retaliation claims—Section 1102.5 (Count II)—is governed by a similar but distinct framework. *See Lawson v. PPG Architectural Finishes*, *Inc.*, 12 Cal. 5th 703, 718 (2022). First, the employee must demonstrate "by a preponderance of the evidence" that the protected whistleblowing was a "contributing factor" to an adverse employment action. *Id.* at 712. Second, if the employee has made that showing, the employer then bears "the burden of proof to demonstrate by clear and convincing evidence" that the alleged adverse employment action would have occurred "for legitimate, independent reasons" even if the employee had not engaged in protected whistleblowing activities. *Id.; see also Ververka v. Dep't of Veterans Affs.*, 102 Cal. App. 5th 162, 173 (2024), *as modified* (June 5, 2024), *review denied* (Aug. 14, 2024). Employers, in other words, still have a "same-decision defense" even if the plaintiff employee satisfies her initial burden under Section 1102.5. *Id.* at 718; *accord* Cal. Civil Jury Instruction No. 4604.

## V.    ARGUMENT

### A.    Apple is Entitled to Judgment on All of Plaintiff's Claims.

#### 1.    The Only Adverse Action Was Plaintiff's Termination.

Apple does not deny that it terminated Plaintiff. There are no other adverse employment actions at issue. Although Plaintiff suggests that she was "suspen[ded]" and "forced" to take leave (Dkt. 359 ¶ 48), the undisputed evidence makes clear that is not true. *See* Okpo Decl. ¶¶ 6-9, Exs. B, C (Plaintiff informed she was free to return "at any time" from paid leave she had requested, yet did not respond); Gjovik Dep. Vol. I, 309:8-310:15 (Plaintiff never requested to be reinstated from paid leave). Thus, the only adverse action at issue is Plaintiff's termination on September 9, 2021.[6]

---

[6] The operative complaint makes passing reference to a handful of other dissatisfactions—*e.g.*, that Plaintiff's managers were allegedly "reassigning her best projects" while also "quadrupl[ing] her workload," "snapping at" her, and "ignoring" her (*see* Dkt. 142 ¶ 109)—none of these are mentioned in Plaintiff's motion and none rise to the level of an actionable adverse employment action in any event. *See Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1063 (2011) (plaintiff must prove "substantial adverse change in the terms and conditions" of employment).

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

**2.    Apple Legitimately Terminated Plaintiff for Publishing Confidential Product-Related Information.**

While Plaintiff claims Apple terminated her employment in retaliation for some or all of her various alleged protected activities, she cannot escape the legitimate, nonretaliatory, and independent reason for Apple's termination of her employment: that she undisputedly leaked confidential Apple product information in violation of her IPA and multiple Apple policies. It is telling that Plaintiff's recitation of facts in her motion references the Glimmer images she leaked only once, and obliquely: "The post included a screenshot image. (Ex. 27.)" Dkt. 359 ¶ 15. That is a mischaracterization at best and a deliberate effort to mislead at worst. Apple's legitimate reason for terminating Plaintiff—the facts of which Plaintiff does not and cannot dispute—dooms her retaliation claims.

The second step of either the *McDonnell Douglas* framework or Section 1102.5 framework is decisive here, because there is abundant, conclusive, and undisputed evidence that Apple's termination decision was a direct response to Plaintiff's leaking of confidential internal Apple product information. *See Batarse v. Serv. Emps. Int'l Union, Loc. 1000*, 209 Cal. App. 4th 820, 831 (2012) ("A defendant moving for summary judgment [in a retaliation case] … may skip to the second step of the analysis and demonstrate that it had a legitimate business reason, unrelated to … retaliation, for taking its employment action."); *Ververka*, 102 Cal. App. 5th at 173 (under Section 1102.5 framework, "if an employer satisfies its burden at the second step in making a same decision showing, the employer is not liable regardless of whether the employee made an initial showing that his or her protected disclosure was a 'contributing factor'").

In this case, Plaintiff has not tendered evidence undermining Apple's reasons for her termination or linking Apple's termination decision to some other motivation (other than through pure speculation). Thus, under the *McDonnell Douglas* framework, regardless of whether Plaintiff could establish a *prima facie* case that she had engaged in various forms of protected action, Apple has produced evidence showing a legitimate, nonretaliatory reason for its termination decision. And under the Section 1102.5 framework, even if Plaintiff could demonstrate by a preponderance of the evidence that her alleged protected whistleblowing was a contributing factor (which she cannot do),

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

clear and convincing evidence establishes that her termination would have occurred anyway for a legitimate, independent reason: her choice to post confidential internal Apple product information online and to a reporter at the Verge.

Courts routinely grant summary judgment to employers on retaliation claims under the *McDonnell Douglas* framework in circumstances like these. *See Sears v. Hous. Auth. of the Cnty. of Monterey*, No. 11-cv-1876, 2014 WL 1369594, at *9 (N.D. Cal. Apr. 7, 2014) (granting summary judgment; "The disclosure of confidential information is a legitimate, non-retaliatory basis for termination."); *McGrory v. Applied Signal Tech., Inc.*, 212 Cal. App. 4th 1510, 1528 (2013) (affirming summary judgment for employer; deception or refusal to cooperate with internal investigation is legitimate reason for termination); *Veto*, 2024 WL 5036760, at *4 (granting summary judgment on Section 6310 claim where employer offered a legitimate, nonretaliatory reason for terminating employee, including that employee made false statements to security); *Cuevas v. SkyWest Airlines*, 17 F. Supp. 3d 956, 965 (N.D. Cal. 2014) (granting summary judgment on Section 6310 claim where employer offered substantial evidence that it suspended and fired employee for repeated instances of insubordination and employee failed to demonstrate pretext), *aff'd*, 644 F. App'x 791 (9th Cir. 2016); *accord E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) ("[W]hether to fire an employee for lying to the employer in the course of the business's conduct of an important internal investigation is basically a business decision; this decision, as with most business decisions, is not for the courts to second-guess as a kind of super-personnel department.").

Cases abound where California courts applying the *McDonnell Douglas* framework found summary judgment appropriate after the employer supplied evidence of legitimate, nonretaliatory reasons why it terminated or otherwise took action against an employee. *See Wilkin v. Cmty. Hosp. of Monterey Peninsula*, 71 Cal. App. 5th 806, 823 (2021) (employee repeatedly violated policy on patient medication administration); *Batarse*, 209 Cal. App. 4th at 825 (employee "presented false information in his employment application and interviews"); *Wills v. Superior Court*, 195 Cal. App. 4th 143, 171 (2011) (employee violated policy prohibiting verbal threats and threatening conduct). The same is true of California courts evaluating retaliation claims under the second step of the

Section 1102.5 framework. *See Vatalaro v. County of Sacramento*, 79 Cal. App. 5th 367, 385-86 (2022) (employee was "insubordinate, disrespectful, and dishonest" and "never meaningfully disputed the alleged act[s]"). California courts have even reversed jury verdicts in favor of the employee where the evidence showed that the employer had legitimate reasons for the challenged adverse action. *See McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 398 (2006).

Just as in *Wilkin* and *Wills*—where the employers' stated reasons were grounded in violations of policy—here, Apple's termination decision was clearly grounded in Plaintiff's violation of Apple policies and her own IPA.[7] Plaintiff's violation was no minor transgression, either. Like the *Batarse* employee's false representations in an employment application, Plaintiff's broadcasting on multiple occasions of confidential information about unreleased Apple products was an "egregious" violation. Bertolus Decl. ¶¶ 6-7, 12. On these facts, judgment is warranted. *See Raphael v. Tesoro Corp.*, No. 2:15-CV-05080-SVW-JEM, 2016 WL 6634915, at *10 (C.D. Cal. Oct. 26, 2016), *aff'd*, 729 F. App'x 566 (9th Cir. 2018) (granting summary judgment; "violation of company policy is a legitimate, non-retaliatory reason in the termination of an employee").

There can be no genuine issue of material fact that Apple has demonstrated—by any applicable evidentiary standard, including by clear and convincing evidence—that it had legitimate, nonretaliatory reasons for terminating Plaintiff (under the *McDonnell Douglas* framework) and that her termination would have occurred in any event for legitimate, independent reasons (under the Section 1102.5 framework). Courts have found summary judgment for the employer appropriate on similar or even less extensive or compelling evidence of the employer's legitimate reasons. *See Siazon v. Hertz Corp.*, No. 17-CV-05935-EMC, 2019 WL 1170778, at *12 (N.D. Cal. Mar. 13,

---

[7] Plaintiff has repeatedly insisted that post-termination proceedings before the NLRB somehow "invalidated" her IPA and retroactively authorized her disclosure of confidential Apple product information. *See, e.g.*, Dkt. 306 ¶ 48 (claiming Apple is "legally prohibited from enforcing" its IPA). Not so. *See* Req. for Judicial Not. ("RJN"), Ex. A (Apr. 3, 2025 NLRB Settlement Agreement clarifying that Apple "will not enforce the definition of Proprietary Information (or similar terms) set forth in any version of the [IPA], *to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act*") (emphasis added); RJN Ex. B (Sept. 25, 2025 NLRB order dismissing Plaintiff's claim she was wrongfully terminated, finding that "*when she revealed to the media confidential product development information* about a Respondent study" she was not engaging in "protected concerted activity" and thus was not protected by the Act) (emphasis added).

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

2019) (granting summary judgment where employer had "offered substantial evidence that it terminated and/or did not rehire [the employee] because of his poor job performance"), *aff'd*, 847 F. App'x 448 (9th Cir. 2021); *accord Ostly v. City & Cnty. of San Francisco*, No. 21-CV-08955-EMC, 2023 WL 4053800, at *9 (N.D. Cal. June 15, 2023), *aff'd*, No. 23-16000, 2024 WL 3963839 (9th Cir. Aug. 28, 2024) (granting summary judgment where "Plaintiff has produced no evidence beyond the most conclusory and tenuous allegations that Defendant Boudin knew about any of his allegedly protected speech, let alone retaliated against it."). Whether on summary judgment or at trial, the evidence permits only one conclusion: Apple terminated Plaintiff for the legitimate reason that she repeatedly leaked confidential information about and images of internal Apple product development, in violation of multiple Apple policies and her IPA.

It is immaterial that Plaintiff previously raised concerns about a host of issues, and those complaints may have amounted to protected activity under one or more whistleblower statutes. "Employers are sometimes forced to remove employees who are … engaging in improper work conduct," and "[p]recedent does not prevent [an employer] from removing such an employee simply because the employee [previously] engaged in a protected work activity." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 354 (2008); *accord Joaquin v. City of Los Angeles*, 202 Cal. App. 4th 1207, 1223 (2012) (citing *Richey v. City of Indep.*, 540 F.3d 779, 784 (8th Cir. 2008)) ("An employee who engages in protected activity is not insulated from adverse action for violating workplace rules, and an employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action."); *Nash-DeCamp Co. v. Agric. Lab. Rels. Bd.*, 146 Cal. App. 3d 92, 103 (1983) ("Simply because the employee has participated in union or other protected activities does not insulate the employee from discharge for misconduct or provide immunity from routine employment decisions."). Plaintiff was not fired until she engaged in the unprotected activity of leaking confidential product information; her prior complaints do not operate as a shield preventing her from being held accountable for misconduct.

Plaintiff also cannot evade summary judgment by attempting to take issue with the fact that her termination letter cited not only her disclosure of confidential information, but also additional misconduct that Bertolus believed supported termination. It is undisputed that Bertolus concluded

that her leaks of confidential product information themselves warranted termination. Bertolus Decl. ¶ 6; *accord* Bowman Decl. Ex. B. Bertolus's judgment that Plaintiff also violated Apple policies in other ways—such as providing misleading information and refusing investigation interviews—only served to bolster his conclusion that termination was appropriate. Bertolus Decl. ¶¶ 6-8, 12.

### 3.    Plaintiff Lacks "Substantial Responsive Evidence" Demonstrating Apple's Reasons for Terminating Her Were Pretext.

For Plaintiff's Section 1102.5 retaliation claim, Apple's legitimate reason for termination is enough to conclude the analysis and compel a grant of summary judgment to Apple. *See Lawson*, 12 Cal. 5th at 712, 718 n.2. For Plaintiff's remaining retaliation claims governed by the *McDonnell Douglas* framework, Apple's showing of legitimate, nonretaliatory reasons shifts the burden to Plaintiff to produce "substantial responsive evidence from which a trier of fact could find [Apple's] articulated reason untrue and pretextual." *Loggins*, 151 Cal. App. 4th at 1112. There is no such evidence, much less "substantial responsive evidence."

Plaintiff "must do more than establish a *prima facie* case and deny the credibility of [Apple's] witnesses. [She] must produce specific, substantial evidence of pretext." *Horn v. Cushman & Wakefield W.*, 72 Cal. App. 4th 798, 807 (1999); *see also Stetsyk*, 2021 WL 12302250, at \*15 (*Tameny*); *Cuevas*, 17 F. Supp. 3d at 959 (Section 6310); *Cervantes*, 2021 WL 6496829, at \*10 (Section 98.6). She must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable [fact finder] could rationally find them unworthy of credence." *Horn*, 72 Cal. App. 4th at 807*; see also Villanueva v. City of Colton*, 160 Cal. App. 4th 1188, 1195 (2008).

Rather than point to such specific, substantial evidence of pretext, Plaintiff can at most offer speculative theories of other reasons that might have played a role in Apple's termination decision *sub silentio*. Such "speculation" "cannot be regarded as substantial responsive evidence" "that the employer's showing was untrue or pretextual." *Martin*, 29 Cal. App. 4th at 1735; *see also Loggins,* 151 Cal. App. 4th at 1109 (applying *Martin* to employment-retaliation claims). Plaintiff's mere "belief that [Apple] had retaliated against her and [was] lying about [its] motivation" is not "substantial evidence from which a jury can find that [Apple's] reasons for [its] actions are false or

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

pretextual." *McRae*, 142 Cal. App. 4th at 398; *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 875-76 (2010); *cf. Tarin v. Cnty. of Los Angeles*, 123 F.3d 1259, 1265 (9th Cir. 1997) (affirming summary judgment to employer on retaliation where employee "point[ed] to nothing in the record, other than her own conclusory statements, to refute the [employer's] explanations for its decisions"), *superseded by statute on other grounds as explained in Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 n. 2 (9th Cir. 2002). Instead, Plaintiff must show, "***without*** relying upon suspicion, imagination, speculation, or conjecture[] that [the employer] acted in retaliation." *Nejadian v. Cnty. of Los Angeles*, 40 Cal. App. 5th 703, 727 (2019) (emphasis added); *see also Kerr v. Rose*, 216 Cal. App. 3d 1551, 1564 (1990) (suspicions of improper motives based on conjecture and speculation insufficient to defeat summary judgment).[8]

That she cannot do. To the extent Plaintiff claims there is evidence linking her alleged protected activities to Apple's termination decision, Plaintiff's "characterization of the facts finds no support in the record." *Vatalaro*, 79 Cal. App. 5th at 386. And to the extent Plaintiff points to separate administrative proceedings, even administrative "notice[s] identifying reasonable cause to believe an action for retaliation may be sustained [are] not 'a free pass through summary judgment'"—and Plaintiff has nothing like that here anyway. *Evans v. Dep't of Pub. Health of City & Cnty. of S.F.*, No. CV 08-3329 EDL, 2009 WL 4907933, at *4-5 (N.D. Cal. Dec. 14, 2009) (citation omitted); *accord Simpson v. Martinez*, No. C-11-2642 EMC, 2013 WL 1120891, at *3 (N.D. Cal. Mar. 18, 2013) (evaluating constitutional claims and rejecting plaintiff's "assert[ion] that because he filed grievances, the search must have been retaliatory," because he put forward "no evidence of personal knowledge, as opposed to offering speculation, of such a motive").

---

[8] Ample Ninth Circuit authorities are in accord. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (affirming summary judgment; "The evidence adduced by [the employee] establishes only that this set of events could conceivably have occurred; it does not give rise to a reasonable inference that it did in fact occur. To find liability on this evidence would require undue speculation. To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (no triable issue of fact as to retaliation where employer "had ample basis" for its action and plaintiff "present[ed] no evidence contradicting" defendant's explanation "other than [plaintiff's] unsubstantiated statement"); *Korkosz v. Clark Cnty.*, 379 F. App'x 593, 596 (9th Cir. 2010) (similar); *Davis v. City of Seattle*, 343 F. App'x 230, 232 (9th Cir. 2009) (similar).

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

Nor is it enough for Plaintiff to argue that Apple's termination decision occurred, in her view, close in time to her alleged protected activities. Courts have squarely rejected that position, explaining that although a plaintiff can in some instances satisfy the initial burden of establishing a *prima facie* case by producing evidence of "nothing more than ... the proximity in time between the protected action and the allegedly retaliatory employment decision," such evidence of temporal proximity "only satisfies the plaintiff's initial burden." *McRae*, 142 Cal. App. 4th at 388. That is, "temporal proximity, [while] sufficient to shift the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action, does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual." *Loggins*, 151 Cal. App. 4th at 1112. A retaliation claim cannot survive based merely "on the logical fallacy of … 'after this, therefore because of this.'" *Villaneda v. Sayre*, No. C-13-5004 EMC (PR), 2014 WL 688795, at *3 (N.D. Cal. Feb. 21, 2014) (citation omitted). But here, there is no admissible evidence of anything else.

Plaintiff also cannot show that Apple's termination decision was out of step with Apple's practice of handling leaks. Indeed, the record demonstrates the opposite: Apple regularly terminates employees over similar leaks of confidential internal information. Bowman Decl. ¶ 7, Exs. F to R. While Plaintiff has attempted to point to instances where Apple did not terminate employees over leaks, she could not produce any evidence to that effect. *See, e.g.*, *Trujillo v. U.S. Postal Serv.*, 330 F. App'x 137, 140 (9th Cir. 2009) ("no evidence" employer treated similar conduct differently). Much less can she point to a sufficient pattern of different treatment. Perhaps more importantly, to the extent there might be isolated incidents where Apple acted differently in response to employee leaks, Plaintiff cannot show that such incidents involved similarly clear and egregious leaks. *Cf. Loggins*, 151 Cal. App. 4th at 1113 (finding "no evidence" the employee's coworkers engaged in similarly "substantial" misuse of the employer's "time and resources" (emphasis omitted)).

Because Plaintiff's protestations of pretext wholly fail to raise a triable issue as to any material fact, while Apple has presented overwhelming evidence that it terminated Plaintiff for legitimate, nonretaliatory reasons, summary judgment in Apple's favor is warranted on Plaintiff's non-Section 1102.5 retaliation claims. *Cf. Siazon*, 2019 WL 1170778, at *13 (granting summary

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

judgment on discrimination claim governed by the *McDonnell Douglas* framework where the employee "produced practically no evidence" of pretext, such as evidence "disputing the accuracy" or "factual basis" of the employer's stated reasons for terminating the employee); *Flanagan v. City of Richmond*, No. 14-CV-02714-EMC, 2015 WL 5964881, at *20 n.9 (N.D. Cal. Oct. 13, 2015), *aff'd*, 692 F. App'x 490 (9th Cir. 2017) (granting summary judgment because "a plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive"; "[t]o be cognizable on summary judgment, evidence must be competent."); *Smith v. Cnty. of Santa Clara*, No. 5:11-CV-05643-EJD, 2016 WL 4076193, at *21 (N.D. Cal. Aug. 1, 2016) (summary judgment appropriate where employees "offer no evidence outside of their own speculation that [the employer] did not honestly believe that the conduct for which [the employees] were disciplined constituted violations of [employer] policy").

### B. Plaintiff's Motion Should Be Denied.[9]

Plaintiff seeks summary judgment on two alternative bases (though she styles these across three "issues" to be decided under L.R. 7-4 (a)(3); *see* Dkt. 359 ¶ 6:

- **Issues 1 and 3**: Apple's stated reason for terminating her must be false, and Plaintiff's contrary narrative must be true, because Plaintiff had engaged in a host of allegedly protected activity and therefore must have been terminated as retaliation for some or all of it.[10]

- **Issue 2**: Even if Apple's stated reason for termination were credited, her termination would still be unlawful because California law allows employees to disclose confidential product information of their employers, so long as they do so while complaining about their employer.

Plaintiff is wrong both on the facts and the law. Since Plaintiff admits disclosing the confidential Apple product information, she cannot prevail on her claim. There is no admissible evidence that Apple's stated reason for terminating Plaintiff was false. Plaintiff's insistence that it

---

[9] Plaintiff's motion was untimely and her voluminous exhibits failed to comply with this Court's instructions for concise declarations and exhibits, with highlighting for voluminous entries. Dkt. 273; *see also* Jan. 13, 2026 Hrg. Tr. (Dkt. 300) at 7:1-14. It could be denied on those bases alone.

[10] It is impossible to tell which of Plaintiff's myriad complaints she believes was the "true" motive for her termination; her allegations have morphed repeatedly, the only throughline being that Apple must have done something wrong.

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

was does not entitle her to judgment; on the contrary, the competent evidence compels judgment in Apple's favor. The fact that Plaintiff complained does not insulate her – an employee who engages in misconduct is not safe from termination based on that misconduct simply because the employee engaged in protected activity prior to the termination.

On the second point, courts have repeatedly held that employees do not have the right to disclose confidential product information of their employer, even if they believe the employer is engaged in some type of misconduct. Apple was entitled to terminate Plaintiff's employment for disclosing confidential information about and images from internal user studies and product development applications. Her conduct is not protected by California or federal law.

Finally, Plaintiff is not entitled to the extraordinary remedy of reinstatement (her **Issue 4**).

### 1. Much of Plaintiff's Evidence is Inadmissible, Immaterial, or Both.

When ruling on cross-motions for summary judgment, the court must "consider each party's evidence to evaluate whether summary judgment [is] appropriate." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff attempts to support her motion exclusively through her own declaration and evidence attached thereto. But much of her "evidence" (or characterizations masquerading as evidence) should be disregarded.[11]

- **Exhibits 32, 34, 35, 36, 37 (Entire Deposition Transcripts),** cited at Dkt. 359 *passim*: The Court expressly directed the parties to excerpt or highlight "what it is you want me to look at." Jan. 13, 2026 Hrg. Tr. (Dkt. 300) at 7:1-14, 8:22-9:5; *see also* Dkt. 273 at 1 ("While Plaintiff is entitled to support her motion with a declaration, it must be concise."). Plaintiff filed 651 pages of declaration and exhibits, including the entire transcripts of every deposition she took—the vast majority of which she never cited. She made no effort to highlight, annotate, or otherwise point the Court to any relevant portions. The Court should disregard these excessive filings. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (court "not required to comb the record" at summary judgment). Moreover, to the extent Plaintiff's declaration characterizes deposition testimony inconsistent with the actual transcripts, such characterizations

---

[11] Apple focuses on the evidence Plaintiff submitted that was actually cited in her motion. Much of the would-be "evidence" she included was never cited, and thus is presumptively immaterial.

should be disregarded. *Contrast* Dkt. 359 ¶ 15 (Bertolus "identified this tweet as the one that triggered his termination decision") *with* Bertolus Dep. 117:1-15 ("I'm not saying it's exactly that one"); Dkt. 359 ¶ 12 (Okpo relied on her "inability to produce the full text exchange") *with* Okpo Dep. 120:17-121:19 (Okpo relied on her "misrepresentations of facts"), 102:25-103:13. Plaintiff's mischaracterizations are not evidence.

- **Non-Existent Deposition Pin Cites (Exs. 32, 34, 35, 37)**: At numerous points, the Motion cites deposition page numbers that do not exist in the certified transcripts filed with the Court. The transcript for Bertolus (Ex. 32) runs 188 pages, Okpo (Ex. 34) 132 pages, Kagramanov (Ex. 35) 136 pages, and Aloe (Ex. 37) 107 pages. Yet the Motion repeatedly cites four-digit "page" numbers far exceeding these page counts – *see, e.g.,* Bertolus Dep. 2112-2128, 2134-2148, 394-397, 2129-2132 (Dkt. 359 ¶ 36); Okpo Dep. 974-976, 1254-1272, 2027-2028, 2715-2716 (*id.* ¶ 62); Kagramanov Dep. 2383-2388 (*id.*); Aloe Dep. 2342-2362 (*id.*). None of these numbers corresponds to any page in the certified transcripts. The Court and counsel cannot verify testimony cited to pages that do not exist, and the citations fail to satisfy Plaintiff's burden under Fed. R. Civ. P. 56(c)(1)(A) to cite "particular parts of materials in the record." The Court should disregard any factual assertion supported solely by an unverifiable pin cite. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (party must "identify with reasonable particularity the evidence that precludes summary judgment"); Civil L.R. 7-5(a) (fact cites need "appropriate references to the record").

- **Fifth Amended Complaint (Dkt. 142)**, cited at Dkt. 359 ¶¶ 7, 58: Plaintiff cites her unverified complaint allegations as if they were established facts. They are not. *See Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc) (only verified complaint based on personal knowledge is evidence at summary judgment).

- **Plaintiff's Characterizations of Apple's Amended Answer**, cited at Dkt. 359 *passim*: Plaintiff repeatedly attributes admissions to Apple's Amended Answer (Dkt. 218) that the cited paragraphs do not support. For example, Dkt. 359 ¶ 12 quotes Apple's answer as "admit[ting]" that her leave was designed to "ensure[ ] that [she] [was] removed from the workplace" (citing Dkt. 218 ¶ 249)—but that paragraph actually says: "Apple admits that Apple told Plaintiff that the paid administrative leave that she had requested 'ensures that [she] [is] removed from the workplace[.]'"

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

Plaintiff omits the express qualifier to suggest Apple "admitted" that a voluntary accommodation was an involuntary removal. Similarly, Dkt. 359 ¶ 8 claims that Apple's answer admitted "West texted Plaintiff that raising EHS concerns was 'kicking a hornet's nest'" (citing Dkt. 218 ¶ 79)— but that paragraph states only: "Apple admits that Plaintiff and West exchanged text messages and states that the text messages speak for themselves. Apple denies the allegations in paragraph 79 to the extent they contradict or mischaracterize the text messages." Plaintiff did not put that text exchange in evidence (as it contradicts her characterization). The Court should disregard Plaintiff's attempts to construe her own characterizations of Apple's answer or other documents as fact.

- **Exhibits 13-15 (EPA Site Visit Documentation, EPA Correspondence, and EPA Letter re "Freshly Sealed Cracks")**, cited at Dkt. 359 ¶¶ 8, 11, 12, 45, 56: Plaintiff provides no foundation for these supposed government agency documents or personal knowledge of their authenticity. Fed. R. Evid. 901(a) requires the proponent to produce sufficient evidence to support a finding that the item is what the proponent claims it is. Without adequate foundation testimony, the exhibits are inadmissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002) (documents must be properly authenticated to be considered on summary judgment).

- **Exhibit 19 (Issue Confirmation)**, cited at Dkt. 359 ¶¶ 12, 13, 33, 41, 51, 56: The "Issue Confirmation" is an out-of-court document authored by Plaintiff that recounts her own version of events. To the extent Plaintiff offers it for the truth of the matters asserted therein— including, for example, that her supervisor told her she was "not allowed" to discuss safety concerns, that her skip-level manager tried to set her up on a date, or that Apple engaged in "organized witness tampering"—the document is inadmissible hearsay under Fed. R. Evid. 802. A party's own prior unsworn narrative is not competent summary judgment evidence for the truth of the facts it describes. *See Moran*, 447 F.3d at 759-60; *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995).

- **Apple's Response to Plaintiff's RFA No. 29**, cited at Dkt. 359 ¶¶ 14, 59: Plaintiff uses Apple's admission that a privileged document ("Draft Exit Outcomes ACP.key") existed to speculate about its contents. Plaintiff offers no admissible evidence of the document's contents and cannot use a privilege log or admission of a document's existence to speculate about the substance

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

of privileged communications. *See CareFirst of Md. v. Johnson & Johnson*, No. 2:23-CV-629, 2026 WL 114415, at \*11 (E.D. Va. Jan. 14, 2026) (granting in limine to bar "impermissible negative inferences about the content of the privileged material" referenced on privilege log). Plaintiff's inference that the file constitutes a "pre-planned exit" is speculation lacking any evidentiary foundation under Fed. R. Evid. 602.

### 2.     There is No "Unrebutted" Liability or "Established" Causation.

Plaintiff first attempts to obtain judgment by arguing that the undisputed evidence proves Apple is lying about why she was fired. She asks this Court to find both that "the § 98.6(b)(1) rebuttable presumption attaches on the undisputed facts and is unrebutted," and that "the undisputed evidentiary record establishes causation under applicable substantive standards, establishing liability" on all four of her remaining claims. Dkt. 359 ¶ 6. Although styled as two separate "issues," Plaintiff appears to argue with respect to both that the evidence proves as a matter of law that Apple's stated reason for terminating her was untrue, and that the "real" reason was retaliation.

Plaintiff is wrong. The undisputed, admissible, and competent evidence shows that Plaintiff was terminated for disclosing confidential information about and images from internal Apple product development. For the reasons explained at length in Section V.A.3 (*infra*), even assuming *arguendo* that Plaintiff engaged in protected activity pre-termination, there is not "substantial responsive evidence from which a trier of fact could find [Apple's] articulated reason [for firing her] untrue and pretextual." *Loggins*, 151 Cal. App. 4th at 1112.

### a.     Plaintiff Was Not Fired For Making a Harassment Complaint.

Plaintiff suggests she was terminated for resisting what she inflammatorily describes as "sexual match-making" and "intrusive questioning about her sexual activities." Dkt. 359 ¶ 42. No evidence supports her gross mischaracterization.[12] Instead, the undisputed evidence shows that Apple personnel documented Plaintiff's concerns (including about alleged discrimination and harassment); invited her to revise that documentation to ensure her concerns were understood; and

---

[12] Plaintiff also wrongly claims that Bertolus described her as "'pretty feminine' … in response to a [deposition] question about appropriate senior-subordinate communications." Dkt. 360 ¶¶ 17, 90. Not so. *See* Bertolus Dep. 177:15-178:11 (correcting Plaintiff on the record; "That's not what I said."), 186-188 (errata from Bertolus, a native French speaker, correcting transcription error).

investigated them (at the direction of counsel). The undisputed evidence also shows that she did not provide the full text exchange to Apple's investigator, and that Bertolus concluded (upon review of the full exchange) that her excerpt was misleading. Bertolus Decl. ¶ 8.

Plaintiff's termination letter did note, as an additional reason supporting termination, Bertolus's finding that she had attempted to deliberately mislead the internal investigator by passing off a lone text as representative of an entire exchange. *Id.*, Ex. A. That conduct is not "protected," contrary to Plaintiff's claims. Her cite to *Crawford v. Metro Gov't of Nashville*, 555 U.S. 271 (2009), is misplaced. That case holds only that participating in an internal investigation of sexual harassment can be protected activity (*see id.* at 279-80)—not that making false or misleading statements to one's employer during an investigation is.

### b. Plaintiff Has Not Established that Anyone at Apple—Much Less the Decisionmaker for Her Termination—Knew of Her Parade of Administrative Complaints.

Plaintiff appears to contend that Apple terminated her in part for her complaints to "[t]he NLRB, EEOC, DFEH, OSHA, and California Labor Commissioner." Dkt. 359 ¶ 47. But the evidence she submitted does not establish that Bertolus—or indeed anyone at Apple—knew of this litany of complaints when he reviewed her disclosure of confidential product information and decided to terminate her. *See id.* at 5 (describing dates of her complaints (as acknowledged by Apple in its answer), but without establishing they were served on Apple pre-termination). Agency complaints cannot have motivated Bertolus to terminate Plaintiff if he did not know about them; Plaintiff has no evidence that he did (and he did not). Bertolus Decl. ¶ 11.

### c. Temporal Proximity Alone Does Not Establish Causation.

Plaintiff insists that "temporal proximity" between a host of complaints and her termination establishes "circumstantial evidence of retaliation." Dkt. 359 ¶ 55. But, as detailed above, that type of evidence "only satisfies the plaintiff's initial burden," *McRae*, 142 Cal. App. 4th at 388, and "does not, without more, suffice also to satisfy the [employee's] secondary burden" regarding pretext. *Loggins*, 151 Cal. App. 4th at 1112. Plaintiff is wrong in suggesting that the fact that her termination was preceded (in the months prior) by complaints suffices to establish causation. If that were so, any employee could "establish" that their termination was wrongful by lobbing a series of

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

complaints and then violating company policies at will; that is not the law, as confirmed by the many cases from this Court and others granting summary judgment in retaliation cases.

### d.    Plaintiff's Administrative Leave Does Not Prove Her Claims.

Plaintiff again misstates the evidence when she contends that she was "removed [] from the workplace" in August 2021 (*see* Dkt. 359 ¶ 56)—when in fact she was granted paid administrative leave at her request and free to return "at any time." Okpo Decl. ¶¶ 6-9, Exs. B and C. And though she speculates that Apple granted her leave as a form of "evidence-blocking" (Dkt. 359 ¶ 56), there is no evidence to support that conjecture (and indeed the evidence shows the opposite is true).

### e.    There is No Evidence of "Cat's Paw" Causation.

Lacking any evidence that Bertolus (who decided to terminate her) harbored any retaliatory animus, Plaintiff attempts to invoke the "cat's paw" doctrine by rattling off names of other Apple employees—including an "Attorney Manager" and "Legal"—that she claims knew of her various complaints and accuses of puppeteering her termination. Dkt. 359 ¶ 57. But her argument is entirely speculative; she has no evidence of retaliatory animus on the part of any of the would-be orchestrators of her termination. The cat's paw theory is inapplicable in such a circumstance. *See DeJung v. Superior Ct.*, 169 Cal. App. 4th 533, 551 (2008) (doctrine only triggered upon "showing that a significant participant in an employment decision exhibited discriminatory animus" and in turn influenced the ultimate decisionmaker); *Martin v. Bd. of Tr. of Cal. State Univ.*, 97 Cal. App. 5th 149, 169 (2023) (cat's paw theory rejected; employee "point[ed] to no evidence that create[d] a reasonable inference" that he was terminated "for th[e] speculative reason" of "appeas[ing]" the person with alleged animus, nor any "evidence that [the alleged animus] had any effect on [the employer's] decision to terminate"); *McGrory v. Applied Signal Tech., Inc.*, 212 Cal. App. 4th 1510, 1536 (2013) (cat's paw theory rejected; no evidence of discriminatory animus or that "supervisors were required to adopt [the alleged discriminator's] conclusions and recommendations").

Even if Plaintiff had the type of evidence needed to potentially trigger the cat's paw theory (she does not), courts consistently hold that a decisionmaker's "independent" decision cuts off its application. For example, in *Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 459–461 (2020), the employee alleged retaliation for complaining to HR about his direct supervisor, and

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

that those who ultimately decided to terminate him were acting as "cat's paw" for that supervisor. But the court rejected the cat's paw theory because "the decision makers *independently identified* deficiencies in [employee's] performance" and the termination decision was "informed by *firsthand observations*" of the decisionmakers. *Id*. (emphasis added). *Choochagi* directly applies here: Bertolus's decision was "informed by [his] firsthand observations" of Plaintiff's disclosures of confidential Apple product information, and he "independently identified" egregious violations of Apple policy before terminating. There is no evidence supporting Plaintiff's conspiracy theory.[13]

### f.    Apple was Not Required to Engage in Progressive Discipline.

Plaintiff claims that Apple's reasons for her termination must be pretextual because Apple did not follow what she describes as "its normal disciplinary sequence." Dkt. 359 ¶ 58. But Plaintiff has submitted no evidence that Apple had a progressive discipline policy. In fact, Apple's policies expressly say otherwise (*see* Bowman Decl. Ex. C at 1-2 ("Conduct that may warrant immediate termination of employment includes: … Violating confidential[ity] … obligations (including those stated in Apple's [IPA])", "failing to cooperate with an investigation", and "misrepresentations … during an investigation"), and Plaintiff agreed she was an at-will employee who could be terminated at any time for any or no reason. *See id*., Ex. A at 1 ("your at-will employment"), 5; Ex. B at 1.

### g.    A Privileged Memo Does Not Show Pretext.

Plaintiff claims that a privileged memo dated August 26, 2021 entitled "Draft Exit Outcomes ACP.key" that Apple disclosed on its privilege log proves that the decision to terminate her employment was made before she engaged in the conduct for which she was terminated. Dkt. 359 ¶ 59. As explained above, Plaintiff's speculation is not evidence. *Contrast* Okpo Decl. Ex. A (Plaintiff writing to Apple the month prior demanding "an exit package").

### h.    Apple Has Consistently Explained Why Plaintiff Was Fired.

Plaintiff claims that Apple has provided "shifting and internally contradictory explanations"

---

[13] Plaintiff's reliance on *Staub v. Proctor Hosp*., 562 U.S. 411 (2011), is misplaced. *Staub* involved a federal claim under a separate statute, and in the course of interpreting that statute rejected the employee's position that "the discriminatory motive of one of the employer's agents … can be aggregated with the act of another agent … to impose liability on" the employer, and further warned that "the employer will not be liable" "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action." *Id*. at 418, 421.

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

for her termination. Dkt. 359 ¶ 60. Again, she is wrong. The reasons for the termination of Plaintiff's employment have been consistent. *See* Dkt. 360, Exs. 24, 29, 30; Bertolus Decl. ¶¶ 6-10, 12, Ex. A. Exhibit 26 to Dkt. 360—a post-termination letter written to Plaintiff by counsel for Apple—does not provide contradictory reasons for the termination; it simply tells Plaintiff to take down posts that continued to reveal Apple's confidential product information (which she ultimately did).

### i.    Apple's Privileged Investigations Are Not at Issue.

Plaintiff argues that, in her view, Apple conducted an "inadequate and biased investigation" of claims by and about her. Dkt. 359 ¶¶ 61-62. But the adequacy of Apple's investigations is not at issue in this case, and thus cannot be a reason to find in her favor. Apple is not relying on its privileged investigations as a defense to any of Plaintiff's claims—nor need it do so. Plaintiff's "shield and sword" argument has no bearing. And her authorities are inapposite. *See Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93, 107–08 (1998) (defining "good cause" standard for termination as requiring "substantial evidence gathered through an adequate investigation," whereas here Plaintiff's employment was at-will); *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 276 (2009) (adequacy of investigation at issue where investigation findings, rather than decisionmaker's direct knowledge, were basis for termination).

### j.    Plaintiff Was Not Subject to Differential Treatment.

Finally, Plaintiff claims she can "prove" causation because there is "no coherent basis" for Apple having fired her but not another employee whose conduct she believes was comparable. Dkt. 359 ¶ 62. But Plaintiff has no evidence that employee (Dr. Aloe, lead on the user studies that utilized Glimmer) leaked internal images or data from the Glimmer application as she did. On the contrary, as he made clear at deposition, "if I had published those images, I would expect to be fired. And if I had employees reporting to me that published those images, I would go through the similar process of taking it to the people team because it is a violation of confidentiality." Riechert Decl. Ex. F ("Aloe Dep.") 101:14-18; *see also id.* 98:2-101:9. There was no selective enforcement.

### 3.    Neither the Constitution Nor Statutes Cloak Plaintiff in Immunity.

In the alternative, Plaintiff argues that even if Apple's stated reason for firing her was in fact its true reason—namely, even if the evidence shows she was fired for disclosing confidential

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-CV-4597-EMC]

Apple product information—she should still prevail because she had a "right" to do so. Plaintiff is wrong. There is no safe harbor that countenances her conduct.

Plaintiff claims she had the right to disclose Apple's confidential product development information, and images of internal product development tools, due to California's constitutional right of privacy, and so could not be fired for doing so. Dkt. 359 ¶¶ 37-38. Plaintiff is wrong. While employees in California do have a constitutional right of privacy (*see* Art. I § 1), it does not confer an affirmative right to disclose an employer's confidential product information. The right of privacy is a shield to protect against the invasion of the plaintiff's own privacy interests. It is not a sword that authorizes the plaintiff to disclose someone else's confidential information.

In Plaintiff's view, so long as an employee believes her employer is doing something unethical or illegal that implicates her privacy interests, she can publicly disclose even the most sensitive trade secrets. That is not the law, and Plaintiff's authorities do not suggest it is. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994) (cited in Dkt. 359 ¶ 38) ("Privacy concerns are not absolute; they must be balanced against other important interests."); *Barbee v. Household Auto. Fin. Corp.*, 113 Cal. App. 4th 525, 530 (2003) (cited in Dkt. 359 ¶ 38) (affirming summary judgment on wrongful-termination and privacy claims by employee who violated company policy); *Zirpel v. Alki David Prods., Inc*., 93 Cal. App. 5th 563 (2023) (cited in Dkt. 359 ¶ 38) (no discussion of "surveillance of employees" or "biometric collection," contrary to Plaintiff's description).[14]

Plaintiff is also incorrect that statutory whistleblower protections permit her to publicly

---

[14] Plaintiff also cannot establish that the Glimmer application violated her privacy, given that she volunteered to carry a pre-launch version of the iPhone on which the internal tool was installed. *Feminist Women's Health Center v. Superior Court* outlines an employee's rights in circumstances like these. There, the plaintiff employee agreed to take a job where she would demonstrate cervical self-examinations to pregnancy screening groups. 52 Cal. App. 4th 1234, 1240-41 (1997). The employee later refused to do so and sued for wrongful termination in violation of her right to privacy. *Id.* at 1241-42. The court granted summary judgment for the employer, reasoning that "where the [employee's] written employment agreement evidences her knowledge of this condition and agreement to be bound by it" and "[w]here the employee … refuses to abide by the agreement, the employee's wrongful termination claim based on a violation of the right to privacy is rendered infirm." *Id.* at 1249. Here Plaintiff signed an agreement in which she acknowledged that the Glimmer application would locally collect "Video and images of your face." Aloe Decl., Ex. C. She cannot now insist her generalized right to privacy entitled her to blast internal details and images from that tool. *See also Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1051 (2011) (affirming judgment on invasion of privacy claim as employee had "no right of privacy with respect to [ ] information or message[s]" that she chose to "create or maintain" on "company computers").

disclose confidential Apple product information. Plaintiff relies on Labor Code section 232.5 (*see* Dkt. 359 ¶ 38), which prohibits discrimination against employees who "disclose[ ] information about the employer's working conditions." But that statute makes plain that it is "***not intended to permit an employee to disclose proprietary information*** … without the consent of his or her employer." Cal. Lab. Code § 232.5(d) (emphasis added). That is exactly what Plaintiff here did. *See* Aloe Decl. ¶¶ 7-11; Bertolus Decl. ¶¶ 4, 6-7.

Plaintiff handed Apple's confidential product information out to the press and blasted it on Twitter. Where (as here) an employee has a confidentiality agreement, "leaks to the media [of information subject to the agreement] are not protected" by whistleblower laws. *Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2017 WL 588390, at *16 (S.D. Cal. Feb. 14, 2017). *Erhart* is instructive. There, the plaintiff alleged retaliation for reporting unlawful conduct to the government. *Id.* at *1. The employer countersued, alleging the plaintiff breached his confidentiality agreement by disclosing the employer's information to The New York Times prior to transmitting a copy of his whistleblower complaint to the government. *Id.* at *1, 6. The employee raised defenses including Section 1102.5. *Id.* at *5. In deciding whether the employee's defenses should survive summary judgment, the Court weighed "whether the public policy in favor of whistleblower protection clearly outweighs the interest in the enforcement of the Confidentiality Agreement as to [the employee's] conduct in … purportedly providing information to the press." *Id.* at *10. The Court concluded that "if [employer] establishes [employee] disclosed confidential information to the press, [employee] will not be able to raise these whistleblower defenses as to this conduct because ***leaks to the media are not protected***." *Id.* at *16 (citing *Tides v. The Boeing Co.*, 644 F.3d 809, 810-11 (9th Cir. 2011)) (emphasis added); *see also* Cal. Lab. Code § 1102.5(a) (listing persons and entities to whom disclosures protected; general public and press not included); *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 986 (9th Cir. 2022) (cited in Dkt. 359 ¶ 38) (disclosures to supervisor—not general public or press—potentially protected under Section 1102.5).

### 4.   Plaintiff is Not Entitled to Reinstatement.

Plaintiff's request for a preliminary injunction "reinstating her to payroll and to medical, dental, and vision insurance" (Dkt. 359 ¶¶ 63-64) is meritless. Courts routinely reject such

emergency requests for relief seeking reinstatement or similar employment action. *See, e.g., Done v. Sonoma Cnty. Junior Coll. Dist.*, No. 25-CV-11071-EMC, 2025 WL 3771616 at *1 (N.D. Cal. Dec. 31, 2025) (denying TRO seeking reinstatement to full-time employment); *Wadsworth v. Beard*, No. 15-CV-02322-EMC, 2025 WL 1785763, at *4 (N.D. Cal. June 26, 2025) (denying TRO prohibiting employment termination); *Hines v. Cal. Pub. Utils. Comm'n*, No. C-10-2813-EMC, 2011 WL 724658, at *2 (N.D. Cal. Feb. 23, 2011) (denying PI seeking, *inter alia*, reversal of employment suspension). That is because such requests almost never make the requisite "clear showing" of entitlement to such "extraordinary remedy." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Id.* at 24-25 (citations omitted); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). And courts have found that plaintiffs cannot establish irreparable harm where, as here, they assert merely "ongoing loss of income" (Dkt. 359 ¶ 63) as monetary harm. *See, e.g., Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *L.A. Mem'l Coliseum Comm. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir.1980) ("[M]onetary injury is not normally considered irreparable."); *Done*, 2025 WL 3771616, at *1; *Wadsworth*, 2025 WL 1785763, at *4. Plaintiff is not entitled to reinstatement under these authorities.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Apple's motion, deny Plaintiff's motion, and enter judgment in Apple's favor on all four of Plaintiff's remaining retaliation-based claims.

Dated: May 7, 2026                                      ORRICK, HERRINGTON & SUTCLIFFE LLP

By:          */s/ Melinda S. Riechert*
MELINDA S. RIECHERT
Attorney for Defendant
APPLE INC.

APPLE'S MOT. FOR SUMM J. &
OPP. TO PL.'S MOT. FOR SUMM. J. & PI
[23-cv-4597-EMC]