Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**,
*an individual*,

       **Plaintiff**,

       v.

**APPLE INC.**,
*a corporation*,

       **Defendant**.

**Case No. 3:23-cv-04597-EMC**

**District Judge**: Honorable Edward M. Chen

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION; & OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**Under Cal. Labor Code 98.6, 1102.5 6310, & the Tamney Termination in Violation of Public Policy**

**Hearing:**

Dept: Courtroom 5, 17th Floor, San Francisco

Date: June 11 2026 1:30 p.m.

i

# TABLE OF CONTENTS

I.    INTRODUCTION                                                                      2

II.   PROCEDURAL POSTURE AND ACCOMPANYING SUBMISSIONS  3

III.   EVIDENTIARY POSTURE                                                  5

IV.    DEFENDANT'S STATED REASONS COLLAPSE ON
DEFENDANT'S OWN BINDING ADMISSIONS                         6

A.   The ear-scan reversal is dispositive                                       7

B.   The Alpha/Omega code names render Defendant's official record
indecipherable                                                                          7

C.   The Gobbler/Glimmer theory has pivoted, and the current version fails
on its face                                                                                 8

D.   Reason 2 (refusal to cooperate) is per se retaliation               9

E.   Reason 3 (misleading complaint) collapses on three independent grounds
11

F.   The Verge article cannot serve as both pre-termination basis and after-
acquired evidence                                                                  13

G.  Apple's framing of Reason 1 as "alone sufficient" waives the same-
decision defense as to Reasons 2 and 3                             13

V.   THE INVESTIGATION SHIELD-AND-SWORD FORECLOSES
DEFENDANT'S SAME-DECISION DEFENSE                          14

VI.    THE CAT'S PAW STRUCTURE IS ESTABLISHED ON
DEFENDANT'S BINDING CORPORATE TESTIMONY             15

VII.   THE PUBLIC POLICY CONTEXT FORECLOSES APPLE'S
CONFIDENTIALITY DEFENSE                                            17

VIII.  PLAINTIFF'S MOTION SHOULD BE GRANTED              19

**A. The § 98.6(b)(1) rebuttable presumption attaches and is unrebutted**   **19**

**B. The direct-evidence framework forecloses McDonnell Douglas analysis**  **20**

**C. The § 1102.6 same-decision defense fails by clear and convincing evidence**  **20**

**D. Each claim element is established on Defendant's own record**   **21**

**E. Plaintiff is entitled to a preliminary injunction**   **21**

**IX.   APPLE'S PROPOSED ORDER EXCEEDS THE BRIEFED SCOPE**  **22**

**X. CONCLUSION**   **22**

**XI.   [PROPOSED] ORDER**   **24**

# **TABLE OF AUTHORITIES**

*Federal Cases*

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001)

*Clark County School District v. Breeden*, 532 U.S. 268 (2001)

*Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108 (9th Cir. 2011)

*El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032 (9th Cir. 2003)

*Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217 (9th Cir. 2005)

*Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997)

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008)

*Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262 (9th Cir. 1991)

*Killgore v. SpecPro Professional Services, LLC*, 51 F.4th 973 (9th Cir. 2022)

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995)

*Nelson v. Brunswick Corp.*, 503 F.2d 376 (9th Cir. 1974)

*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996)

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)

*Snead v. Metropolitan Property & Casualty Insurance Co.*, 237 F.3d 1080 (9th Cir. 2001)

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011)

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)

*Tolan v. Cotton*, 572 U.S. 650 (2014)

*Van Asdale v. International Game Technology*, 577 F.3d 989 (9th Cir. 2009)

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001)


*California Cases*

*Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444 (2020)

*Cotran v. Rollins Hudig Hall International, Inc.*, 17 Cal. 4th 93 (1998)

*Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.*, 236 Cal. App. 4th 243 (2015)

*DeJung v. Superior Court*, 169 Cal. App. 4th 533 (2008)

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008)

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988)

iv

*Harris v. City of Santa Monica, 56 Cal. 4th 203 (2013)*

*Heller v. Norcal Mutual Insurance Co., 8 Cal. 4th 30 (1994)*

*Lawson v. PPG Architectural Finishes, Inc., 12 Cal. 5th 703 (2022)*

*Loggins v. Kaiser Permanente International, 151 Cal. App. 4th 1102 (2007)*

*Lujan v. Minagar, 124 Cal. App. 4th 1040 (2004)*

*Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986)*

*Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243 (2009)*

*Roby v. McKesson Corp., 47 Cal. 4th 686 (2009)*

*Salas v. Sierra Chemical Co., 59 Cal. 4th 407 (2014)*

*Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167 (1980)*

*Wallace v. County of Stanislaus, 245 Cal. App. 4th 109 (2016)*

*Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110 (1997)*

*Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028 (2005)*

*Statutes*

*California Civil Code § 1668*

*California Evidence Code §§ 603, 605*

*California Government Code §§ 12940(h), 12964.5*

*California Labor Code §§ 96(k), 98.6, 232.5, 1102.5, 1102.6, 6310*

*California Penal Code § 266 et seq.*

*Federal Rule of Civil Procedure 30(b)(6)*

*Federal Rule of Civil Procedure 37(c)(1)*

*Federal Rule of Civil Procedure 56*

*Federal Rule of Evidence 302, 902(4), 902(5)*

*Constitutional Provisions*

*California Constitution, Article I, § 1*

1

# PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION; AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

1.    Plaintiff's Motion for Summary Judgment (Dkt. 359) established the documented record entitling Plaintiff to partial summary judgment on the unrebutted elements of her four retaliation claims. Defendant Apple Inc.'s combined Opposition and Cross-Motion (Dkt. 367) does not rebut those elements. Instead, Apple manufactures characterizations the documented record — including Apple's own witnesses' depositions, Apple's own filings, and now Apple's own Rule 30(b)(6) corporate-designee testimony — forecloses.

2.    On May 12, 2026 — five days after Apple filed its Cross-Motion — Apple's Rule 30(b)(6) designee Adelmise R. Warner, Apple's Senior Director of Global Employee Relations and a licensed attorney with seventeen years of practice, testified for two days on Apple's behalf on the topics central to this case: the reasons for termination, the decisionmakers involved, the information considered, Apple's knowledge of Plaintiff's agency complaints, and the investigations conducted. Ms. Warner was personally involved in the September 2021 events as a recipient on the privileged "talkingpoints.pages" counsel-mediated thread. She prepared for two days, reviewed the Bertolus and Okpo deposition transcripts and Apple's filed Motion, and appeared as the corporate designee bound to testify on information reasonably available to Apple. Warner Dep. 35:17-40:25.

3.    Ms. Warner's testimony confirms the unrebutted elements supporting Plaintiff's MSJ and discloses that Apple cannot articulate its asserted defense with the specificity Rule 56 requires. After five and a half years of litigation, after position statements across the DOL, NLRB, EEOC, DFEH, and federal forums, and after two days of preparation as the corporate designee, Apple's binding witness cannot identify how many Twitter posts formed the basis for

2

termination, what about the disclosed image was confidential, what specific texts in Plaintiff's harassment complaint were misleading, or what Apple's verified interrogatory code names "Alpha" and "Omega" refer to. She admits that Apple's Employee Relations team gave Daniel West corrective-action feedback for the same Chez TJ dinner conduct underlying Apple's misleading-complaint reason. She contradicts Apple's Seventh Affirmative Defense by testifying that the Verge article was part of the pre-termination basis. And she testifies that the ear-scan post Apple identified for years in agency and court filings as a basis for termination was *not* a basis for termination and the information disclosed was *not* confidential.

4.     Defendant also has now admitted, through its Rule 30(b)(6) testimony, that the termination was recommended by a three-person "People Team" (Bowman, Warner, Reicher) to a final decisionmaker (Bertolus) who approved it within six minutes, without having reviewed the operative texts, articles, posts, emails, or policies, and who Defendant admits did not know the complaint was about the sous chef and mistakenly believed it was about his personal friend the head chef. A documented allegation that this same decisionmaker had previously interfered with evidence to protect the supervisor whose conduct was the subject of the complaint was contemporaneously before Defendant in the same Issue Confirmation. That admission is the cat's paw paradigm on Defendant's own facts.

5.     Defendant's cross-motion should be denied and Plaintiff's motion should be granted on liability under *Tameny*, § 1102.5, § 98.6, and § 6310, with the preliminary injunction issued reinstating Plaintiff to payroll and medical, dental, and vision insurance pending final judgment.

## II.     PROCEDURAL POSTURE AND ACCOMPANYING SUBMISSIONS

6.     *Concurrently filed submissions.* Plaintiff files concurrently with this brief: (1) the Declaration of Ashley Gjovik in Support of Reply (the "Reply Declaration"), which includes a

3

pin-cite crosswalk for Plaintiff's prior MSJ deposition citations together with the relevant pages from the certified transcripts, a certified transcript of Plaintiff's 2021 Department of Labor intake interview, and supplemental evidence addressing points Apple raised in its Opposition to Plaintiff's MSJ; (2) the Declaration of Ashley Gjovik in Support of Opposition to Defendant's Cross-Motion (the "Opposition Declaration"), which addresses the factual issues Defendant injected via the cross-motion, including the character-attack content; (3) Plaintiff's Request for Judicial Notice in support of articles and government documents relevant to the public-policy framework; and (4) Plaintiff's Opposition to Defendant's Request for Judicial Notice (Dkt. 373) together with a conditional cross-request for judicial notice if the Court considers Defendant's request.

7. *Deposition citations and crosswalk.* Plaintiff's April 23 motion cited Defendant's depositions to deposition-summary line numbering rather than to certified transcript page:line. The cited testimony exists in the certified transcripts. The Reply Declaration provides a cross-reference table mapping each cite to the certified page:line, together with the certified transcript excerpts as exhibits. Plaintiff requests the Court treat the cites by their substance. *See* Reply Decl. Ex. Y (crosswalk).

8. *Page limit and scope.* Defendant's Cross-Motion advances a defense the developed record cannot support, advances it through a combination of inadmissible material, mischaracterized testimony, character attacks on Plaintiff, and procedural framings that require substantial responsive treatment under Rule 56, the Federal Rules of Evidence, and California retaliation case law. Apple did this after receiving a Rule 11 warning letter regarding the same defense framework. *See* Reply Decl. Ex. EE (Rule 11 letter); Warner Dep. [Rule 11 letter testimony page-line]. A fully responsive treatment would require at least 100 pages. The Court's combined-brief 25-page limit requires Plaintiff to compress the response. Plaintiff therefore

4

expressly preserves and does not waive any argument, objection, or factual point not addressed in this brief because of space, time, the procedural posture, the manner in which Defendant raised the point (including in footnotes), or the improper basis on which Defendant raised it. The Court should not draw any adverse inference from Plaintiff's non-engagement with any specific argument by Defendant; the appropriate inference, where Defendant advances arguments without record support, is denial of the cross-motion.

9.    *Punitive-damages and sanctions framing.* The litigation conduct documented in this brief is relevant not only to the cross-motion ruling but to the punitive-damages and fine assessment in the next phase. *See, e.g., Roby v. McKesson Corp.*, 47 Cal. 4th 686, 712-13 (2009) (litigation conduct relevant to reprehensibility under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)).

### III.    EVIDENTIARY POSTURE

10.    *Rule 30(b)(6) testimony of Adelmise Warner.* Plaintiff cites Defendant's Rule 30(b)(6) deposition of Adelmise Warner (May 12, 2026) throughout this filing. That testimony post-dates Plaintiff's April 23 motion and Defendant's May 7 opposition/cross-motion because Defendant did not produce its corporate witness for deposition until May 12, six weeks past the discovery cutoff. The Magistrate has characterized Defendant's Rule 30(b)(6) posture as "unreasonable" and stated Defendant "should know better." Dkt. 357 at 1-2. Plaintiff could not have cited testimony Defendant had not yet given. The testimony is Defendant's binding corporate position under Rule 30(b)(6), is responsive to Defendant's MSJ and supporting declarations, and is properly considered on this cross-motion record. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003).

11.    *Rule 37(c)(1) — strike of Bowman Exhibits F–R.* Defendant produced the thirteen comparator termination letters attached as Bowman Exs. F through R at the end of discovery,

precluding Plaintiff from deposing the comparators, requesting supporting investigation files, or testing whether the terminations involved similarly situated conduct. Plaintiff moves to strike under Rule 37(c)(1); the disclosure was neither substantially justified nor harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008). Alternative relief under Rule 56(d) is set forth in the Reply Declaration.

12.    *Sham-affidavit objections.* Plaintiff objects under *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262 (9th Cir. 1991), and *Van Asdale v. International Game Technology*, 577 F.3d 989 (9th Cir. 2009), to: Bertolus Decl. ¶¶ 6, 7, 11; Bertolus Decl. ¶ 6 (comparator universe of "at least two" against Bowman Decl. ¶ 7's "over a dozen"); Okpo Decl. ¶¶ 5-9 (against Okpo Dep. 71:9-15); Aloe Decl. ¶ 12.

13.    *Errata to Bertolus deposition.* Defendant submitted Bertolus errata changing p. 158:13 from "feminine" to "familiar" under Reason Code 3 ("correct transcription errors"). The errata is improper under *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224-26 (9th Cir. 2005), because it substantively changes testimony. At the deposition, when confronted with the testimony (p. 177:14-178:11), Bertolus's response was "I don't remember saying that" and "That's not what I said" — not "I said familiar." The original transcript controls.

14.    *EPA documents.* Plaintiff authenticates Exhibits 13-15 under FRE 902(4) (certified copies of public records) and 902(5) (publications of public authorities), with FOIA-disclosure correspondence in the Reply Declaration establishing provenance. *See* Reply Decl. Ex. AA.

## IV.    DEFENDANT'S STATED REASONS COLLAPSE ON DEFENDANT'S OWN BINDING ADMISSIONS

PL'S MSJ REPLY; OPP. TO DEF'S CROSS-MSJ | 3:23-CV-04597-EMC                    MAY 21 2026

15.     A retaliation defendant cannot establish a legitimate, independent reason for an adverse action where its own sworn corporate testimony contradicts its prior sworn filings and where its own corporate witness cannot identify the operative facts underlying the asserted reason. *Loggins v. Kaiser Permanente International*, 151 Cal. App. 4th 1102, 1112 (2007); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1062 (2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

### A.     THE EAR-SCAN REVERSAL IS DISPOSITIVE

16.     For nearly five years, Defendant identified Plaintiff's "ear scan" Twitter posts as a basis for her termination: the September 15, 2021 Eberhart letter cited the ear-scan complaints (Pl.'s MSJ ¶ 21, Ex. 26); the March 4, 2022 DOL position statement identified Plaintiff's posts using code names "Alpha" and "Omega" (Pl.'s MSJ Ex. 25); and the August 4, 2025 verified Rog #1 repeated the code names, with record context establishing "Omega" referred to the ear-scan tweet (Pl.'s MSJ Ex. 24).

17.     On May 12, 2026, Defendant's Rule 30(b)(6) testified under oath that the ear-scan post was *not* a basis for termination and that the information disclosed was *not* confidential. Warner Dep. 209:1-224:25. That testimony binds Apple as a corporation. Fed. R. Civ. P. 30(b)(6). Defendant cannot establish a legitimate business reason as a matter of law when its own corporate witness has disclaimed the very basis its prior sworn filings rest on. Pretext is established as a matter of law on Reason 1's ear-scan component. *Yanowitz*, 36 Cal. 4th at 1062.

### B.     THE ALPHA/OMEGA CODE NAMES RENDER DEFENDANT'S OFFICIAL RECORD INDECIPHERABLE

18.     Defendant's verified interrogatory responses to Rog No. 1 — the central discovery vehicle for ascertaining the reason for termination — identified the bases by reference

7

to "Alpha" and "Omega." Pl.'s MSJ Ex. 24. Defendant's DOL position statement used the same code names. *Id.*, Ex. 25. Defendant's Rule 30(b)(6) — designated to testify on Topic 8 (the decision to terminate, including "the reasons, timeline, investigation, the decision-makers involved, communication to Gjovik, the information they considered, and any alternatives considered"), Warner Dep. 39:19-40:2 — could not decipher what the codes refer to. The corporation that drafted the verified responses cannot read them. Defendant cannot satisfy its burden at the second step of *McDonnell Douglas* by articulating reasons in code its own corporate witness cannot decode.

### C.    THE GOBBLER/GLIMMER THEORY HAS PIVOTED, AND THE CURRENT VERSION FAILS ON ITS FACE

19.    Defendant's confidentiality theory has shifted at every stage. The 2021 termination letter referenced only "confidential product-related information" without specifics (Bertolus Decl. Ex. A). The September 15, 2021 Eberhart letter cited "Gobbler-application images" and ear-scan complaints (Pl.'s MSJ Ex. 26). The March 2022 DOL position statement advanced a confidential "user study" theory *without including any photographs or video as evidence* (Pl.'s MSJ Ex. 25). The August 2025 verified Rog #1 used code names and added an August 28 AirPods tweet (Pl.'s MSJ Ex. 24). The 2026 Aloe Declaration now claims the specific Face ID algorithm details embedded in the images are confidential — even though Aloe admits Plaintiff blurred those specifics and directed the reporter to remove them (Aloe Decl. ¶ 11). And the 2026 Warner 30(b)(6) testifies that the corporation cannot identify which specific images formed the basis. Warner Dep. 247; *see* 52:17-22 ("at least one"); 52:24-53:13 (corporation cannot identify number).

20.    Five independent defects in the current theory. *First*, Defendant's own DOL filing did not include photographs. If the photographs were the confidential information, Defendant would have presented them to the DOL. The prior position was that the user study itself was

8

confidential — which is why code names were used. *Second*, Defendant's own subject-matter expert testified Gobbler/Glimmer is not a user study, contradicting Apple's prior characterization. *Third*, Defendant cannot identify which specific images were the basis. Warner Dep. 55:6-10 (gestured at "how algorithm behind the scenes, if you will, information about that feature"); 64:25-65:3; 247. Bertolus similarly could not identify the operative images. *Fourth*, the Informed Consent Form Apple relies on (Aloe Decl. Ex. C) was electronically signed in 2019 for a 20-minute session over two years before the operative conduct; no Glimmer-specific ICF was entered for the 2021 studies. *Fifth*, Defendant's own subject-matter expert is also Plaintiff's principal disparate-treatment comparator. Robert Aloe is the same person as the "Robert McKeon" identified in Plaintiff's MSJ — the email signature on Aloe Decl. Ex. A is "Robert McKeon Aloe." Aloe testified at his April 3, 2026 deposition that Apple has never told him his Face ID Medium and LinkedIn articles published 2018-2022 contain confidential information, has never disciplined him for any of them, and that he would not treat similar publications by team members as confidentiality violations. Aloe Dep. 93:7-18, 93:22-94:14. Under *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011), disparate-treatment analysis operates on actual conduct, not Apple's hypothetical statement at Aloe Decl. ¶ 14.

### D.    REASON 2 (REFUSAL TO COOPERATE) IS PER SE RETALIATION

21.    Defendant's second reason rests on Plaintiff's request that her communications with Apple's investigators be in writing while she had a pending NLRB charge. The record establishes, on Defendant's own admissions, that the conduct labeled "refusal to cooperate" was both protected activity and could not have changed the termination outcome regardless of what Plaintiff said.

9

22.    Plaintiff requested written communications for weeks before September 9, 2021, citing past misrepresentations of her statements, her pending NLRB charge filed August 26 (Pl.'s MSJ Ex. 22), and her need to preserve a record for federal agencies. During this same period, Defendant itself was claiming attorney-client privilege over its own communications about Plaintiff in anticipation of litigation. Warner Dep. 90:16-20 (counsel instructing witness not to answer on Plaintiff investigation under privilege). Defendant cannot consistently maintain that its own communications must be confidential in anticipation of litigation while terminating Plaintiff for seeking a written record of the same matter for federal agency proceedings then pending.

23.    Defendant cannot identify any policy requiring oral-only communication. Okpo Dep. 106:6-10, 116:4-14; Kagramanov Dep. 57:7-15. Kagramanov's 42-minute determination of "refusal to cooperate" was reached "in partnership with our legal counsel." Kagramanov Dep. 95:8-13. The call would have been subject to Defendant's confidentiality constraints — Plaintiff would have been prohibited from disclosing what Defendant said — while Defendant simultaneously invokes privilege over what Kagramanov and Jacobs planned to discuss. Defendant's position is that Plaintiff had a duty to participate in a call (a) whose content was prepared under privilege she could not observe, (b) which would have bound her to confidentiality she could not breach, and (c) which would have related to subject matter then pending before federal agencies. That position cannot be reconciled with § 1102.5(b)'s protection of communications "providing information to . . . any public body."

24.    Independently, the call Okpo requested on September 3 and 7 — Defendant's separate basis for the "refusal to cooperate" finding — was, per Okpo's deposition, to ask Plaintiff whether she found the now-deceased sous chef "cute" and whether she had been receptive to West's matchmaking. Okpo Dep. 102:13-20, 116:4-14. The call would have

10

constituted further harassment about Plaintiff's interest in the man her supervisor had set her up with — the conduct underlying her active sexual-harassment complaint. Refusal to submit to that interrogation without a record while her NLRB charge was pending is protected activity, not misconduct.

25.     Reason 2 is direct evidence of retaliation for participation in agency proceedings under § 1102.5(b), § 98.6, § 6310, and *Tameny*. *Wallace v. County of Stanislaus*, 245 Cal. App. 4th 109, 123 (2016); *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1124-25 (9th Cir. 2001).

### E.    REASON 3 (MISLEADING COMPLAINT) COLLAPSES ON THREE INDEPENDENT GROUNDS

26.     Defendant's third stated reason — that Plaintiff's complaint about Director West was "misleading" — fails on three independent grounds, any one dispositive.

27.     *Ground 1: Manufactured failure.* Defendant terminated Plaintiff in part for failing to produce a text thread Defendant's own actions denied her access to retrieve. Plaintiff planned to retrieve the laptop containing the texts on August 5 (Pl.'s MSJ ¶ 12, Ex. 19 at 21). Defendant placed her on administrative leave on August 4 — hours before EPA's pending site visit — and Defendant's own contemporaneous Okpo email stated the leave "ensures that you are removed from the workplace." Okpo Decl. Ex. B. Plaintiff contemporaneously documented in her Issue Confirmation that she could not retrieve the full text exchange because Defendant had removed her from the workplace. Pl.'s MSJ Ex. 19 at 21. Defendant's Rule 30(b)(6) admits Plaintiff did not redact anything in the literal sense. Warner Dep. 187:25-188:5 ("the full thread indicated something different" — no specific texts identified); 154:25-155:5; 153:24-25 (deferring to re-reading the materials); 155:17-156:7; 156:8-10 (lunch break given specifically to prepare a coherent answer). After the lunch break, Defendant's 30(b)(6) still could not identify what

specific texts were misleading or how the broader chain "directly contradicted" the allegation. Reason 3 rests on a deficiency Defendant manufactured and cannot specify.

28. *Ground 2: Protected-friend confusion as structural retaliation.* Defendant admits its decisionmaker (Bertolus) had "absolutely no idea" who Andrew was when he ratified the termination — believing the harassment complaint was about head chef Jared Gallagher, Bertolus's personal friend, rather than the sous chef. Bertolus Dep. 164:11-17. Plaintiff's Issue Confirmation included a contemporaneous, pre-termination allegation that Bertolus had previously interfered with evidence to protect West (the supervisor whose conduct was the subject of the harassment complaint) from anticipated litigation. Pl.'s MSJ Ex. 19. Defendant put a decisionmaker with that documented conflict in a position to interfere with anticipated litigation to protect West, on a manufactured misimpression that the complaint was about the decisionmaker's personal friend. Defendant's corporate position is that the confusion "would not have changed the decision." Warner Dep. 243. Defendant has thus admitted, in binding corporate testimony, that the conflict of interest and the manufactured confusion were features of the decision-making process, not defects. That admission is itself direct evidence of retaliatory animus under *Staub v. Proctor Hospital*, 562 U.S. 411, 418-22 (2011).

29. *Ground 3: § 1102.5(b) violation on the face of Reason 3.* Plaintiff's Issue Confirmation invoked California Penal Code provisions describing West's conduct in arranging a sexual liaison between Plaintiff and a sous chef at West's preferred restaurant — where Bertolus's personal friend was head chef and where West regularly socialized — accompanied by a $200+ dinner West paid for. Pl.'s MSJ ¶ 13, Ex. 19. The conduct fits the elements of the cited statutes. West himself was given Apple ER feedback that the conduct was "not appropriate" and reflected a "power imbalance," and Warner confirms the corrective action concerned "the interactions with you and what you shared with going to the dinner, the sous chef

and all of that, that text messages" and "as a senior leader, you're skip level, just having clearer boundaries." Warner Dep. 148:1-11, 150:7-15. The same conduct Apple's ER team determined warranted West's corrective-action feedback is the conduct Plaintiff complained of. Apple cannot maintain simultaneously that the complaint was misleading and that the conduct warranted corrective action. Under *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68 (1986), welcomeness — not voluntariness — is the inquiry. § 1102.5(b) protects exactly this disclosure. *Killgore v. SpecPro Professional Services, LLC*, 51 F.4th 973, 984-90 (9th Cir. 2022). Reason 3 violates § 1102.5(b) on its face.

### F.    THE VERGE ARTICLE CANNOT SERVE AS BOTH PRE-TERMINATION BASIS AND AFTER-ACQUIRED EVIDENCE

30.    Defendant's Seventh Affirmative Defense pleads the Verge article as after-acquired evidence learned "shortly after Plaintiff's employment was terminated." Warner's 30(b)(6) testimony contradicts the Seventh Affirmative Defense: "That was part of the reasons for your termination because there was — it came to our attention that you had posted, again, the images." Warner Dep. 79:14-22. "Apple did consider the images and videos that you had posted included in 'The Verge.'" *Id.* 81:18-22. Apple's counsel further stated on the record: "I have not seen anything that says that Apple did not know about 'The Verge' article." *Id.* 83:3-4. Apple cannot have both. After-acquired evidence is limited to remedies mitigation under *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), and *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407 (2014); it is not a substantive defense to liability.

### G.    APPLE'S FRAMING OF REASON 1 AS "ALONE SUFFICIENT" WAIVES THE SAME-DECISION DEFENSE AS TO REASONS 2 AND 3

31.    Apple's brief frames Reason 1 (the IPA disclosure) as "alone sufficient grounds for termination" with Reasons 2 (refusal to cooperate) and 3 (misleading complaint) "bolster[ing]" the determination. Dkt. 367 at 7, 11. Under the *Lawson v. PPG Architectural*

13

*Finishes, Inc.*, 12 Cal. 5th 703 (2022), same-decision defense, the employer must establish by clear and convincing evidence that it would have made the same decision absent the protected activity. By stating that Reason 1 is "alone sufficient," Apple has elected to stake the same-decision defense on Reason 1's confidentiality theory exclusively. Apple cannot now resurrect Reasons 2 and 3 to carry the clear-and-convincing burden if Reason 1 fails. Reason 1 fails because Apple cannot identify what was confidential, when it confirmed proprietariness, how many posts formed the basis, or how the corporate code names refer to specific conduct. The Apple-created waiver structurally forecloses the same-decision defense.

## V.   THE INVESTIGATION SHIELD-AND-SWORD FORECLOSES DEFENDANT'S SAME-DECISION DEFENSE

32.   Defendant's three stated reasons each rest on investigation outputs: Reason 1 on Defendant's investigative determination that the disclosed material was confidential; Reason 2 on the investigators' "refusal to cooperate" finding; Reason 3 on Okpo's "misleading" finding. Each is the conclusion of an investigation Defendant has conducted "under privilege" and "at the direction of counsel." Okpo Decl. ¶ 4.

33.   At the Rule 30(b)(6) deposition, Defendant's counsel instructed the corporate designee not to answer questions on: the findings of the Waibel and Okpo investigations into Plaintiff's sexual harassment, hostile-work-environment, retaliation, and discrimination complaints; whether Defendant's investigators found any evidence supporting any of Plaintiff's complaints; the substance of the "misleading" finding underlying Reason 3; the basis for the "refusal to cooperate" determination underlying Reason 2; the substance of Defendant's investigation into the alleged confidentiality violations underlying Reason 1; communications with attorneys regarding the investigations; Defendant's communications with employees Mondello, Vyas, and Stewart-Scarlett regarding Plaintiff; conclusions Defendant reached about Plaintiff's complaints; what evidence Defendant considered in any investigation; the substance of

14

what Kagramanov and Jacobs were prepared to discuss with Plaintiff on September 9; and any planning around the ear-scan tweet as a basis or defense. Warner Dep. 90:16-20, 176:14-17, 177:23-179:15, 191:7-193:11, 193:23-195:8, 209:1-224:25.

34.    A defendant cannot rely on an investigation as the legitimate basis for termination unless the investigation produced "a reasoned conclusion . . . supported by substantial evidence" through "an appropriate investigation." *Cotran v. Rollins Hudig Hall International, Inc.*, 17 Cal. 4th 93, 108 (1998). An inadequate or biased investigation is itself evidence of pretext. *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 277-83 (2009). An employer affirmatively relying on investigation outputs as a defense waives privilege over the substance of those investigations. *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 128 (1997).

35.    The Court should (1) strike Defendant's reliance on the investigation outputs as legitimate independent reasons under § 1102.6 — Defendant cannot satisfy the clear-and-convincing same-decision burden without supplying the investigation substance, and without Reason 1, 2, or 3's underlying investigative basis, Defendant has no proffered reasons remaining; or (2) find waiver under *Wellpoint* and require production with deferral of Defendant's cross-MSJ pending in camera review; or (3) draw an adverse inference at MSJ that the investigations would not have supported Defendant's stated reasons. *See Heller v. Norcal Mutual Insurance Co.*, 8 Cal. 4th 30, 41-42 (1994). Any of the three is dispositive.

## VI.    THE CAT'S PAW STRUCTURE IS ESTABLISHED ON DEFENDANT'S BINDING CORPORATE TESTIMONY

36.    Defendant's *Choochagi* argument — that Bertolus made an "independent" decision based on his "firsthand observations" — fails on Defendant's own admissions. *Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 459-461 (2020), required "firsthand observations" and "independent[] identifi[cation]" of misconduct.

15

37.    Defendant's 30(b)(6) testifies that termination was recommended to Bertolus by a three-person "People Team" comprising HR Business Partner Megan Bowman, Senior Director of Employee Relations Adelmise Warner, and her then-manager Joni Reicher. Warner Dep. 33-34. Bowman wrote the September 9 recommendation email at 6:20 PM (Pl.'s MSJ Ex. 30); Bertolus replied at 6:26 PM: "Understood. I agree with the termination decision." Six minutes. Warner Dep. 193:19-22; 193:23-195:8. Warner could not testify to any independent investigation by Bertolus in that six-minute window, with Apple's counsel asserting privilege over the communications. *Id.* 193:25-194:8.

38.    Bertolus testified his preparation was "I only worked with the lawyers." Bertolus Dep. 15:21-22. He confirmed proprietariness through a *morning-of-deposition* consultation with Aloe on April 17, 2026 — not before the September 9, 2021 termination. Bertolus Dep. 84:12-85:23. He had "absolutely no idea" who Andrew (the sous chef) was at the time of his deposition. Bertolus Dep. 164:11-17. Bertolus's identification of the disclosed material as confidential ran through "conversations; some of them were with counsel," Warner Dep. 57:20-22, and the conversations included "members of global security, the members of the HR team or the people team, and legal counsel." *Id.* 60:1-2. Warner attempted to testify that Aloe was consulted between August 30 and September 9, 2021 — then Apple's counsel walked her back: "Misstates the testimony. She said he consulted with people who had consulted with Aloe, not that he consulted with Aloe." *Id.* 61:1-3. The corporate-knowledge answer on the foundational fact — when did Apple confirm proprietariness? — cannot be given coherently.

39.    The cat's paw doctrine under *Staub*, 562 U.S. at 418-22, and *DeJung v. Superior Court*, 169 Cal. App. 4th 533, 551 (2008), reaches decisionmakers influenced through such channels. The factual basis for Apple's *Choochagi* foreclosure is absent on this record.

16

40.    Bowman's contradictory comparator evidence ("over a dozen" terminations) and her detailed identification of policies violated are structurally incoherent with Defendant's "Bertolus is the sole decisionmaker" framing against Bertolus's own "at least two" personal awareness (Bertolus Decl. ¶ 6) and his deposition inability to identify specific policies. Either Bowman is a decisionmaker (defeating *Choochagi* independence) or she is supplying specifics Bertolus could not (sham rehabilitation of failed deposition testimony). Either way, Defendant loses.

## VII.    THE PUBLIC POLICY CONTEXT FORECLOSES APPLE'S CONFIDENTIALITY DEFENSE

41.    In 2017, Apple announced Face ID. United States Senator Al Franken did not find Apple's public explanation sufficient and on September 13, 2017 formally requested specifics about the data sources and consent obtained. Letter from Sen. Al Franken to Timothy Cook (Sept. 13, 2017) (RJN Ex. [A]). Apple's October 13, 2017 response repeated general language about "informed consent" and "participants from around the world" without answering the Senator's specific questions about data sources. Letter from Cynthia Hogan to Sen. Al Franken (Oct. 13, 2017) (RJN Ex. [B]). The Senator publicly noted that Apple had answered some but not all of his questions. The inquiry ended there.

42.    The actual source of much of Apple's Face ID training data was a program Apple deployed on its workforce: Apple installed software on Apple-issued iPhones carried by employees that captured face images, video, and biometric data — at work, at home, anywhere those phones traveled — including the friends, family, romantic partners, children, neighbors, and strangers around them. None of those members of the public were told the program existed or asked to consent. The captured material was used to train Face ID, now deployed on over one billion consumer devices. Apple's Answer admits the program existed. Ans. ¶ 218.

17

43.    Plaintiff publicly raised concerns about this program and other practices she believed were unlawful. Her concerns were the subject of reporting in The Verge and elsewhere. She filed complaints with U.S. and international regulators. Apple fired her and now defends the termination on the ground that her disclosures violated her confidentiality agreement. The information Plaintiff disclosed — that Apple's Face ID training data came from a workforce-deployed capture program operating in private settings, that the photographs included those of non-consenting members of the public — is the same information Senator Franken formally requested in 2017 and that Apple declined to provide.

44.    Defendant asks this Court to hold that Plaintiff's termination is not subject to inquiry into what she disclosed because Apple designated the underlying conduct confidential. The practical effect of that ruling would be that information a United States Senator was entitled to receive but was denied, that members of the public have a direct privacy interest in, that Apple has not denied, and that — if true — exposes Apple to substantial enforcement and consumer liability, becomes information any Apple employee can be fired for telling anyone. California Civil Code § 1668 forbids contracts to exempt anyone from responsibility for their own violation of law; *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 669-70 (1988), and *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176-77 (1980), establish that contractual provisions cannot defeat public policy. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), establishes that contractual provisions interfering with statutorily protected activity are unenforceable as against public policy. *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal. App. 4th 243 (2015), establishes that confidentiality designations cannot reach material that is publicly available — and the FTC has, in five separate enforcement actions in recent years, required companies to delete data and AI models built on biometric data gathered without informed consent. *See In re Rite Aid Corp.*, FTC File No. 2023190 (Dec. 19,

18

2023); *In re Everalbum, Inc.*, FTC File No. 1923172 (Jan. 11, 2021). Class-action exposure for comparable Apple consumer-disclosure conduct has run in the hundreds of millions of dollars. *Lopez v. Apple Inc.*, No. 4:19-cv-04577-JSW (N.D. Cal.) ($95 million Siri privacy settlement approved Sept. 4, 2025); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD (N.D. Cal.) (approximately $500 million settlement).

45.    The question for the Court is not whether Apple's program violated those laws. The question is whether a federal court should issue a ruling whose effect is that those laws cannot reach Apple's program because the only people who know enough to bring them to bear have been contractually forbidden to do so on pain of termination. The motion should be denied.

## VIII.  PLAINTIFF'S MOTION SHOULD BE GRANTED
### A.    THE § 98.6(B)(1) REBUTTABLE PRESUMPTION ATTACHES AND IS UNREBUTTED

46.    Defendant's opposition offers no analysis of Labor Code § 98.6(b)(1), no engagement with Evidence Code §§ 603 or 605, and no authority on the operation of the presumption. The argument is waived. *Nelson v. Brunswick Corp.*, 503 F.2d 376, 381 (9th Cir. 1974). Independently, the four objective triggers are established on Defendant's admissions: (1) protected activity within § 98.6, including the NLRB charge filed August 26, 2021 (Pl.'s MSJ ¶ 14); (2) employer knowledge — Warner confirmed pre-termination NLRB knowledge: "Prior to her termination, yes, Apple was aware of charges that plaintiff had filed with the NLRB. . . . It would have been the last part of August, before the beginning of September." Warner Dep. 158:6-14; (3) adverse action — admitted termination September 9, 2021; (4) within 90 days — the interval is 14 days for the NLRB charge alone.

47.    § 98.6(b)(1) is governed by California Evidence Code § 605 — it shifts the burden of proof. Fed. R. Evid. 302; *Snead v. Metropolitan Property & Casualty Insurance Co.*, 237 F.3d 1080, 1090-91 (9th Cir. 2001). Defendant offers no rebuttal; its only proffered reasons

19

are themselves protected activity. Retaliation cannot rebut a presumption of retaliation. *Bachelder*, 259 F.3d at 1124-25. Liability under § 98.6 is established as a matter of law.

## B. THE DIRECT-EVIDENCE FRAMEWORK FORECLOSES MCDONNELL DOUGLAS ANALYSIS

48.    Where the employer's own words supply direct evidence that protected activity motivated the adverse action, *McDonnell Douglas* burden-shifting does not apply. *Wallace*, 245 Cal. App. 4th at 123; *Bachelder*, 259 F.3d at 1124-25; *DeJung*, 169 Cal. App. 4th at 550.

49.    Each of Defendant's three stated reasons is direct evidence of retaliation because each is itself protected activity. *Reason 1* — the August 30 Twitter post complaining about Apple's "long history of systemic oppression & retaliation against employees" and Apple's "internal surveillance infrastructure" (Pl.'s MSJ Ex. 27) — is protected under Cal. Const. Art. I § 1, Labor Code § 96(k), § 232.5(c), § 1102.5(b), and Gov. Code § 12964.5. *Reason 2* — the request for written communications to preserve a record for the pending NLRB charge — is protected under § 1102.5(b) ("providing information to . . . any public body"). *Reason 3* — the hostile-work-environment complaint about West, including invocation of Penal Code provisions describing the conduct — is protected under FEHA § 12940(h), Title VII, § 1102.5(b), and § 98.6. Treating a protected complaint as misconduct is retaliation under § 12940(h). *Yanowitz*, 36 Cal. 4th at 1043. No burden-shifting analysis is required; liability is established on Defendant's own admissions.

## C. THE § 1102.6 SAME-DECISION DEFENSE FAILS BY CLEAR AND CONVINCING EVIDENCE

50.    Section 1102.6 requires Defendant to establish by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons absent the protected activity. *Lawson*, 12 Cal. 5th at 712. Defendant cannot meet that burden because: (1) each of Defendant's proffered reasons is itself protected activity (*see* § VIII.B); (2) Defendant elected to

20

stake the same-decision defense on Reason 1 "alone" (Dkt. 367 at 7, 11), and Reason 1 fails on the corporate-witness inability to identify what was confidential; (3) the investigation outputs on which Defendant's stated reasons rest are shielded from disclosure (*see* § V above), foreclosing any clear-and-convincing showing on the substance. The same-decision defense fails as a matter of law.

### D. EACH CLAIM ELEMENT IS ESTABLISHED ON DEFENDANT'S OWN RECORD

51.    *Tameny (Count One).* The protected-activity / public-policy tether requirements are satisfied through Cal. Const. Art. I § 1, Lab. Code §§ 96(k), 232.5, 1102.5, and 6310, Gov. Code § 12940(h), and the public-policy framework articulated in § VII above. Each tether is independently sufficient. Apple's silence on multiple tethers under FRCP 56(e)(2) operates as a failure to oppose. Causation is established under the substantial-motivating-reason standard. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013). *§ 1102.5 (Count Two).* Disclosures to supervisors and to public bodies (NLRB, EEOC, DFEH, OSHA, Labor Commissioner). *Killgore*, 51 F.4th at 984-90. Contributing-factor causation established on Defendant's admissions; same-decision defense fails. *§ 6310 (Count Three).* Safety reports to EHS, EPA, and supervisors regarding 825 Stewart Drive (federal Superfund site). Pl.'s MSJ ¶¶ 8, 11, 45. Preemptive crack-sealing on August 4 contemporaneous with Plaintiff's removal and EPA's pending inspection is preemptive retaliation under *Lujan v. Minagar*, 124 Cal. App. 4th 1040, 1046 (2004). *§ 98.6 (Count Four).* Presumption established (§ VIII.A); § 98.6 incorporates § 96(k) and § 232.5 through § 98.6(a). Liability established as a matter of law.

### E. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

52.    The Court directed that Plaintiff's request for a preliminary injunction be included within her motion for summary judgment, with the merits showing supporting summary judgment also supporting the injunction. Dkt. 273. The *Winter v. Natural Resources Defense*

21

*Council*, 555 U.S. 7, 20 (2008), factors are satisfied. *Likelihood of success.* Established by the cross-MSJ posture and liability analysis. *Irreparable harm.* Plaintiff has been without health, dental, and vision insurance since September 9, 2021. Reply Decl. ¶ [X]. Loss of health insurance threatening access to medical care is irreparable harm. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020). Plaintiff is presently homeless, insolvent, and in Chapter 7 bankruptcy. *Balance of equities.* Defendant's own witness testified he would provide Plaintiff an equivalent position if legally ordered. West Dep. 86:12-25. *Public interest.* Enforcement of California's anti-retaliation statutes serves the public interest. *Earl*, 658 F.3d at 1113-14.

## IX.   APPLE'S PROPOSED ORDER EXCEEDS THE BRIEFED SCOPE

53.   Apple's proposed order (Dkt. 367-1) asks this Court to make findings on doctrinal frameworks the Cross-Motion does not adequately develop. The "intervening acts sever any causation" framing appears in the proposed order but not in the body of the Cross-Motion; *Clark County School District v. Breeden*, 532 U.S. 268 (2001), requires the intervening conduct be itself unprotected, and the conduct Apple identifies as intervening is itself protected activity. The proposed order applies the *Lawson* clear-and-convincing standard across all four claims; the standard applies to § 1102.5 only. The proposed order's "voluminous evidence" framing operates as renewed pre-filing screening this Court previously denied. The proposed order should be rejected.

## X.   CONCLUSION

54.   Plaintiff respectfully requests that the Court (1) deny Defendant's Cross-Motion for Summary Judgment in its entirety; (2) grant Plaintiff's Motion for Summary Judgment on liability on Counts One (*Tameny*), Two (§ 1102.5), Three (§ 6310), and Four (§ 98.6), with damages and remaining factual theories reserved for trial; (3) grant a preliminary injunction reinstating Plaintiff to payroll and restoring her medical, dental, and vision insurance coverage at the level in effect on September 9, 2021, pending final judgment; (4) strike Bowman Decl. Exs.

22

F through R under Rule 37(c)(1), or in the alternative defer ruling under Rule 56(d); (5) strike the Bertolus deposition errata at p. 158:13 under *Hambleton*; (6) apply sham-affidavit doctrine to Bertolus Decl. ¶¶ 6, 7, 11, Okpo Decl. ¶¶ 5-9, and Aloe Decl. ¶ 12; (7) find waiver of attorney-client privilege over the substance of the investigations Defendant has affirmatively relied on, or in the alternative strike Defendant's reliance on those investigations as legitimate independent reasons, or in the further alternative draw an adverse inference; (8) reject Defendant's proposed order; and (9) grant such further relief as the Court deems just and proper.

55.    Defendant's litigation conduct in advancing this defense — after a Rule 11 warning, after years of contradictory sworn filings, while shielding from discovery the very investigations on which the defense rests — is properly considered in the punitive-damages and fine assessment in the next phase. *Roby*, 47 Cal. 4th at 712-13.

Respectfully filed,

/s/ Ashley M. Gjovik

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed May 21 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# XI.    [PROPOSED] ORDER

This matter came before the Court on Plaintiff Ashley Gjovik's Motion for Summary Judgment and Preliminary Injunction (Dkt. 359) and Defendant Apple Inc.'s Cross-Motion for Summary Judgment (Dkt. 367). The Court has considered the parties' submissions, the documentary record, the testimony of Defendant's Rule 30(b)(6) corporate designee, and the arguments of the parties.

**IT IS HEREBY ORDERED:**

1. Defendant's Cross-Motion for Summary Judgment (Dkt. 367) is **DENIED** in its entirety.
2. Plaintiff's Motion for Summary Judgment (Dkt. 359) is **GRANTED** as to liability on Count One (Tameny), Count Two (California Labor Code § 1102.5), Count Three (California Labor Code § 6310), and Count Four (California Labor Code § 98.6). Damages and remaining factual issues are reserved for trial on October 19, 2026.
3. Plaintiff's request for a preliminary injunction is **GRANTED**. Defendant shall, within fourteen (14) days of this Order, reinstate Plaintiff to payroll and restore her medical, dental, and vision insurance coverage at the level in effect on September 9, 2021, pending final judgment.
4. Plaintiff's motion to strike Bowman Declaration Exhibits F through R under Federal Rule of Civil Procedure 37(c)(1) is **GRANTED**.
5. Plaintiff's motion to strike the Bertolus deposition errata at page 158, line 13 under *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217 (9th Cir. 2005), is **GRANTED**.
6. Plaintiff's sham-affidavit objections to Bertolus Declaration paragraphs 6, 7, and 11; Okpo Declaration paragraphs 5 through 9; and Aloe Declaration paragraph 12 are **SUSTAINED** to the extent each contradicts the same witness's deposition testimony or Defendant's prior sworn filings.
7. The Court **FINDS** that Defendant waived attorney-client privilege over the substance of the investigations Defendant has affirmatively relied on as legitimate independent reasons for termination. Defendant's reliance on those investigations as legitimate independent reasons under California Labor Code § 1102.6 is **STRICKEN**.
8. Defendant's proposed order (Dkt. 367-1) is **REJECTED**.

**IT IS SO ORDERED.**

DATED: _____

_____
Hon. Edward M. Chen
United States District Judge