Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ASHLEY GJOVIK**, *an individual*, | **Case No. 3:23-cv-04597-EMC** |
| **Plaintiff**, | **District Judge**: Honorable Edward M. Chen |
| v. | **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION; & OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT** |
| **APPLE INC.**, *a corporation*, | **Under Cal. Labor Code 98.6, 1102.5 6310, & the Tamney Termination in Violation of Public Policy** |
| **Defendant**. | **Hearing:** |
|  | Dept: Courtroom 5, 17th Floor, San Francisco |
|  | Date: June 11 2026 1:30 p.m. |

i

# TABLE OF CONTENTS

I.    INTRODUCTION    **1**

II.    PROCEDURAL POSTURE AND CONCURRENT SUBMISSIONS    **2**

III.    EVIDENTIARY POSTURE    **2**

IV.    APPLE'S STATED REASONS FAIL ON APPLE'S OWN ADMISSIONS & CONTRADICTIONS    **4**

V.    THE EAR-SCAN REVERSAL IS DISPOSITIVE    **6**

VI.    THE GOBBLER/GLIMMER THEORY HAS SHIFTED AT EVERY STAGE, HAS NO CURRENT ARTICULATED BASIS, AND IS ITSELF UNLAWFUL    **7**

VII.    APPLE CANNOT RESCUE ITS DEFENSE THROUGH A "PARTIAL" SAME-DECISION ARGUMENT OR ANY OTHER SURVIVING AFFIRMATIVE DEFENSE    **12**

VIII.    APPLE NOW CLAIMS REPORTING SEX CRIMES IS MISCONDUCT    **13**

IX.    THE INVESTIGATION SHIELD-AND-SWORD FORECLOSES APPLE'S DEFENSE ON ALL FOUR CLAIMS    **14**

X.    DISPARATE TREATMENT    **17**

XI.    THE CAT'S PAW STRUCTURE IS ESTABLISHED ON BERTOLUS'S OWN ADMISSIONS    **18**

XII.    THE PUBLIC-POLICY CONTEXT FORECLOSES APPLE'S CONFIDENTIALITY DEFENSE    **21**

XIII.    PLAINTIFF'S MOTION SHOULD BE GRANTED    **22**

A.    The § 98.6(b)(1) presumption and the Ninth Circuit's temporal-proximity presumption attach and remain unrebutted    **22**

B.    The direct-evidence framework forecloses McDonnell Douglas analysis    **23**

C.    Apple's waiver on additional retaliation grounds is independently dispositive    **24**

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT | 3:23-CV-04597-EMC    MAY 21 2026

**XIV.    PRELIMINARY INJUNCTION**                                                          **24**

**XV.    CONCLUSION**                                                                       **25**

**XVI.    [PROPOSED] ORDER**                                                                **27**

## TABLE OF AUTHORITIES

***Federal Cases***

*Innovation Law Lab / Al Otro Lado v. Wolf, 952 F.3d 999 (9th Cir. 2020)*

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)*

*Bachelder v. America West Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001)*

*Clark County School District v. Breeden, 532 U.S. 268 (2001)*

*Done v. Sonoma County Junior College Dist., No. 25-CV-11071-EMC, 2025 WL 3771616, at \*1 (N.D. Cal. Dec. 31, 2025)*

*Earl v. Nielsen Media Research, Inc., 658 F.3d 1108 (9th Cir. 2011)*

*El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032 (9th Cir. 2003)*

*Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217 (9th Cir. 2005)*

*Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010)*

*Hashimoto v. Dalton, 118 F.3d 671 (9th Cir. 1997)*

*Hines v. Cal. Pub. Utils. Comm'n, No. C-10-2813-EMC, 2011 WL 724658, at \*2 (N.D. Cal. Feb. 23, 2011)*

*Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175 (9th Cir. 2008)*

*Kennedy v. Allied Mutual Insurance Co., 952 F.2d 262 (9th Cir. 1991)*

*Killgore v. SpecPro Professional Services, LLC, 51 F.4th 973 (9th Cir. 2022)*

*L.A. Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197, 1202 (9th Cir. 1980)*

*McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*

*McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995)*

*Nelson v. Brunswick Corp., 503 F.2d 376 (9th Cir. 1974)*

*Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996)*

*Ray v. Henderson, 217 F.3d 1234, 1244-45 (9th Cir. 2000)*

*Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)*

*Sampson v. Murray, 415 U.S. 61, 90-92 & n.68 (1974)*

*Snead v. Metropolitan Property & Casualty Insurance Co., 237 F.3d 1080 (9th Cir. 2001)*

*Staub v. Proctor Hospital, 562 U.S. 411 (2011)*

*State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003)*

*Tolan v. Cotton, 572 U.S. 650 (2014)*

*Van Asdale v. International Game Technology, 577 F.3d 989 (9th Cir. 2009)*

*Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003)*

*Wadsworth v. Beard, No. 15-CV-02322-EMC, 2025 WL 1785763, at \*4 (N.D. Cal. June 26, 2025)*

*Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008)*

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101 (9th Cir. 2001)*

***California Cases***

*Choochagi v. Barracuda Networks, Inc., 60 Cal. App. 5th 444 (2020)*

*Cotran v. Rollins Hudig Hall International, Inc., 17 Cal. 4th 93 (1998)*

*DeJung v. Superior Court, 169 Cal. App. 4th 533 (2008)*

*Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937 (2008)*
*Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1988)*
*Harris v. City of Santa Monica, 56 Cal. 4th 203 (2013)*
*Heller v. Norcal Mutual Insurance Co., 8 Cal. 4th 30 (1994)*
*Lawson v. PPG Architectural Finishes, Inc., 12 Cal. 5th 703 (2022)*
*Loggins v. Kaiser Permanente International, 151 Cal. App. 4th 1102 (2007)*
*Lujan v. Minagar, 124 Cal. App. 4th 1040 (2004)*
*Mendoza v. Western Med. Ctr. Santa Ana, 222 Cal. App. 4th 1334, 1342-44 (2014)*
*Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986)*
*Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243 (2009)*
*Roby v. McKesson Corp., 47 Cal. 4th 686 (2009)*
*Salas v. Sierra Chemical Co., 59 Cal. 4th 407 (2014)*

*Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167 (1980)*
*Wallace v. County of Stanislaus, 245 Cal. App. 4th 109 (2016)*
*Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110 (1997)*
*Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028 (2005)*

***Statutes***
*California Civil Code § 1668*
*California Evidence Code §§ 603, 605*
*California Government Code §§ 12940(h), 12964.5*
*California Labor Code §§ 96(k), 98.6, 232.5, 1102.5, 1102.6, 6310*
*California Penal Code § 266 et seq.*
*Federal Rule of Civil Procedure 30(b)(6)*
*Federal Rule of Civil Procedure 37(c)(1)*
*Federal Rule of Civil Procedure 56*
*Federal Rule of Evidence 302, 902(4), 902(5)*

***Constitutional Provisions***
*California Constitution, Article I, § 1*

PL'S MSJ REPLY; OPP. TO DEF'S CROSS-MSJ | 3:23-CV-04597-EMC          MAY 21 2026

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION; AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

1.    Plaintiff's Motion for Summary Judgment (Dkt. 359) established the documented record entitling Plaintiff to summary judgment on the unrebutted elements for several retaliation sub-claims. Defendant Apple Inc.'s combined Opposition and Cross-Motion (Dkt. 367) does not actually rebut those elements, but instead attempts to mischaracterize and create confusion. Plaintiff apologizes for slightly delayed corrected version of this filing – with the original filed before midnight but not complete and trailing filings of the Declaration and RJN filings this morning. Apple's filings were chaotic and overlapping with ongoing discovery disputes including new allegations of protective order violations and threats of sanctions, along with the Rule 30(b)(6) depositions not occurring until May 12 and 14 2026, and while not expected to be needed for this filing – revealed material, critical information that took time to process after only receiving the transcript this week. Plaintiff ask for leave to file slightly late and apologizes.

2.    Overall, Apple's defense is false on Apple's own binding admissions — the ear-scan basis is withdrawn or fabricated, the formal justification is code-named without definitions and generally undecipherable, the disputed photographs and Twitter posts cannot be identified, the "redaction" allegation cannot be explained, the full-text thread "contradiction" cannot be articulated, no legitimate basis is provided for designating employee requests to preserve evidence is misconduct, and the Verge article cannot be both pre- and post-termination.  Apple does however assert that protected activity is somehow misconduct, and claims a vague right to fire employees for complaining about unlawful conduct by Apple and its management, while concurrently claiming any details about Apple's alleged misconduct is confidential and privileged. The cross-motion should be denied and Plaintiff's motion granted on liability, with the preliminary injunction issued.

1

## II.    PROCEDURAL POSTURE AND CONCURRENT SUBMISSIONS

3.    Plaintiff files concurrently: Declaration of Ashley Gjovik in Support of Reply and Opposition ("Pl. Opp./Reply Decl."), which includes a deposition pin-cite crosswalk together with the relevant pages from the certified transcripts; Plaintiff's Request for Judicial Notice in support of articles and government documents relevant to the public-policy framework; and Plaintiff's Opposition to Defendant's Request for Judicial Notice (Dkt. 373) together with a conditional cross-request for judicial notice if the Court considers Defendant's request.

4.    Plaintiff's April 23 2026 motion cited the prior depositions to deposition-summary line numbering rather than to certified transcript page:line. The cited testimony exists in the certified transcripts. (Pl. Opp./Reply Decl.). Plaintiff did not invent any deposition testimony, its improper for Apple to suggest she did when the full deposition transcript was available and easily confirmed, and respectfully requests the Court treat cites by their substance.

## III.    EVIDENTIARY POSTURE

5.    In this filing, Plaintiff cites Defendant's Rule 30(b)(6) deposition of Adelmise Warner (May 12, 2026). That testimony post-dates Plaintiff's April 23 2026 motion and Defendant's May 7 2026 opposition/cross-motion because Defendant did not produce its corporate witness for deposition until May 12, six weeks past the discovery cutoff. The Magistrate characterized Defendant's Rule 30(b)(6) posture as "unreasonable" and stated Defendant "should know better." Dkt. 357 at 1-2. The testimony is Defendant's binding corporate position. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003).

6.    Apple's evidentiary objections to Plaintiff's characterizations of Apple's Amended Answer cite to the Answer paragraphs; Apple's quibbles with phrasing do not undo Apple's admissions of the underlying facts. However, additional evidence is provided with the Pl. Opp./Reply Decl. including EPA Exhibits authenticated by Plaintiff's personal knowledge as the

2

recipient/sender of the correspondence and the documents she obtained from EPA in the course of her communications with the agency and judicial notice of EPA records under FRE 201 is requested in the alternative. The August 23, 2021 Issue Confirmation (Ex. 19) is admissible non-hearsay: it is offered to show notice to Apple, Pl.'s MSJ ¶¶ 13, 33, 41, and Okpo testified the Issue Confirmation is "anything that was in the issue confirmation was something that I investigated," Okpo Dep. 41:20-25, making the document the subject of his own investigation and an operative fact rather than hearsay; the document is also a prior consistent statement under FRE 801(d)(1)(B) if Plaintiff's credibility is attacked.

7.    Apple's challenge to inferences from the August 26, 2021 "Draft Exit Outcomes ACP.key"— Apple's RFA No. 29 admits the document's existence and title, and Apple's own brief at Dkt. 367 at 4 n.5 puts Plaintiff's settlement-context communications into the record. Apple's footnote 5 (Dkt. 367 at 4 n.5) quotes Plaintiff's June 2021 and August 2021 communications about an exit package and expectation she was about to fired as some sort of misconduct, so Plaintiff provides additional contextual evidence that she expected to be fired no later then April 2021 and communicated this to Apple mgmt. and others.

8.    Apple having affirmatively put these communications in the record waives confidentiality and Cal. Evid. Code § 1152 / Fed. R. Evid. 408 protection over the broader settlement-context communications between the parties during that period. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994).  The full record shows that in late July 2021 Plaintiff's proposed resolutions included "transferring to a new role under new management or an exit package with compensation and benefits" (Apple's Am. Resp. to Pl.'s Rog No. 2 (Set Two, AD #1), Apr. 6, 2026); Apple circulated the August 26, 2021 "Draft Exit Outcomes ACP.key" internally (Apple's Resp. to Pl.'s RFA No. 29) four days before the August 30 conduct Bertolus identified as the trigger; and Apple's own Okpo Decl. Ex. A attaches an

email where Plaintiff states "As mentioned, I refuse to quit or to take medical leave as a response to the hostility; this is on Apple ER to resolve, not for me to hide from. There are two options we've discussed. First, a new role at Apple that is not a hostile work environment and not in unsafe work conditions …   The 2nd option is an exit package that will compensate me and provide benefits through that time. As mentioned this would only be a payment & exit to mitigate the current hostile work environment and unsafe work conditions and would not include any litigation/arbitration waiver agreements nor any non-disclosure agreements beyond what I've already signed as an employee.".   Okpo Decl. Ex. A. The settlement-context communications Apple selectively excerpts, themselves confirm Plaintiff believed she was in a hostile work environment, did not want leave ("*As mentioned, I refuse to quit or to take medical leave as a response to the hostility; this is on Apple ER to resolve, not for me to hide from*" - Okpo Decl. Ex. A), and was attempting to resolve the matter through a negotiated separation while Apple was simultaneously planning the termination it then characterized as for cause and without warning or severance.

## IV.  APPLE'S STATED REASONS FAIL ON APPLE'S OWN ADMISSIONS & CONTRADICTIONS

9.      Apple's own MSJ identifies Plaintiff's invocation of a criminal statute in her harassment complaint as misconduct. That is per se § 1102.5(b) retaliation and direct evidence of unlawful motive across all four claims. Plaintiff's Issue Confirmation invoked California's pandering provisions (Penal Code §§ 266, 266h, 266i), based on Plaintiff's good-faith reading of those statutes and the facts of West's conduct in arranging a sexual liaison between Plaintiff and a sous chef at Chez TJ, the restaurant Bertolus's personal friend (head chef Jared Gallagher) worked at and where West regularly socialized, accompanied by a $200+ dinner West paid for. Pl. Opp./Reply Decl.

10.      Warner initially testified Plaintiff's invocation of California's pimping/pandering

statute (Penal Code Section 266h-i) in her Issue Confirmation was an example of the supposed misconduct, then backtracked on the record when Plaintiff points out that reporting a crime is the core of § 1102.5(b). Warner said "without reading your issue confirmation, what I recall from reviewing it, you had used the word ·of being -- pimping and pandering, I believe, were the words." Warner Depo. 186. Plaintiff explained "pimping and pandering with indirect benefits" is an "allegation of a violation of a statute" making it a "whistleblower disclosure." Id. Counsel responded "please don't recite the law because I'm just going to object." Id 189. Plaintiff was questioning Warner that she indicted Apple believed "the use of the term 'pimping and pandering' as a sort of misconduct or basis of misconduct" and Apple is aware of the legal definition of a statute [she] was citing for pimping and pandering with indirect benefits." Id at 189. Counsel objected and Warner eventually clarified "I did not say your citing the statute or any legal argument you made was the basis for the termination." Warner Depo. 190.

11.    Apple's MSJ — in writing, in the operative pleading — identifies Plaintiff's invocation of the penal statute in her complaint as part of what Apple complaints was misconduct by Plaintiff. The backtrack does not retract Apple's MSJ pleading. Apple's filed position remains that the invocation of the criminal statute was misconduct. That is per se retaliation under § 1102.5(b). *Killgore v. SpecPro Professional Services, LLC*, 51 F.4th 973, 984-90 (9th Cir. 2022). Independently, Apple's own corporate witness's adoption-then-retraction of the position is itself a sham-affidavit problem and a *Loggins* shifting-rationale problem. The result is the same either way: it violates § 1102.5(b) on its face, and the same conduct is direct evidence of unlawful motive supporting *Tameny*, § 98.6, and § 6310.

12.    The conduct fits the elements of the cited statutes, including § 266h's indirect-benefits provision. (Pl. Opp./Reply Decl.). West himself was given Apple ER feedback that the conduct was "not appropriate," reflected a "power imbalance," and warranted corrective-action

5

feedback for the same "interactions with you and what you shared with going to the dinner, the sous chef and all of that, that text messages." Warner Dep. 148:1-11; 150:7-15; West Dep. 24:20-21, 25:1; Pl. Opp./Reply Decl.

## V.    THE EAR-SCAN REVERSAL IS DISPOSITIVE

13.    For nearly five years, Apple identified Plaintiff's "ear scan" Twitter posts as a basis for termination: the September 15, 2021 letter from Eberhart of O'Melveny & Myers, counsel for Apple, to Plaintiff's then-counsel cited the ear-scan complaints (Dkt. 360, Pl.'s Decl. ¶ 84, Ex. 26); the March 4, 2022 DOL position statement identified Plaintiff's posts using code names "Alpha" and "Omega" (Id. ¶ 83, Ex. 25); and the August 4, 2025 verified interrogatory response repeated the code names with record context establishing "Omega" referred to the ear-scan tweet (Id. ¶ 82, Ex. 24).

14.    On May 12, 2026, Apple's Rule 30(b)(6) testified under oath that the ear-scan post was *not* a basis for termination and that the information disclosed was *not* confidential. Warner Dep. 209:1-224:25. (QUOTE) That testimony binds Apple. Fed. R. Civ. P. 30(b)(6). Apple cannot establish a legitimate business reason as a matter of law when its own corporate witness has now disclaimed the very basis its prior sworn filings rest on. Pretext is established on the ear-scan component \ as a matter of law. *Yanowitz*, 36 Cal. 4th at 1062. The continued advancement of the ear-scan rationale across years of filings — after Apple knew, on the record now established, that it was not actually a basis — is independently relevant to bad-faith and reprehensibility analysis, as well as Rule 11 sanction liability.

15.    Further, Apple's verified interrogatory responses to Rog No. 1 — the central discovery vehicle for ascertaining reasons for termination — identified the bases by reference to "Alpha" and "Omega." (Id. ¶ 82, Ex. 24). Apple's DOL position statement used the same code names. (Id. ¶ 83, Ex. 25). Apple's Rule 30(b)(6) could not decipher the codes and commented on Apple's legal filings as "confusing" (Warner Depo. 232-237). The corporation that drafted the

6

verified responses regarding the termination does not know what it means, when asked if there's a document defining the code names states "I don't know," and cannot explain the response to the Plaintiff they fired beyond being related to "user studies". (Id 234-235). The Plaintiff complained during that deposition "the witness· representing Apple Inc. cannot actually decipher Apple's interrogatory response as to why Apple fired me." Id 236. Apple cannot satisfy its burden of articulating a legitimate reason in code its own corporate witness cannot decode.

## VI.    THE GOBBLER/GLIMMER THEORY HAS SHIFTED AT EVERY STAGE, HAS NO CURRENT ARTICULATED BASIS, AND IS ITSELF UNLAWFUL

16.    Apple's confidentiality accusations have shifted at every stage. The 2021 termination letter referenced only "confidential product-related information" without specifics (Pl.'s Decl. ¶ 87, Ex. 29; Bertolus Decl. Ex. A). The Eberhart letter cited "Gobbler-application images" and ear-scan complaints (Dkt. 360, Pl.'s Decl. ¶ 84, Ex. 26). The DOL position statement advanced a "user study" theory, using code names, and without any photographs or video as evidence (Warner 236, 240-241; Pl.'s Decl. ¶ 83, Ex. 25 at 213 – "*Ms. Gjovik's very involvement with the Alpha study constitutes confidential information, as do any details about the study or photos or other documents that are the product of it*." – Apple's Statement to DOL).

17.    The verified Rog #1 used code names (Id. ¶ 82, Ex. 24) Apple could not decipher (Warner 232-237). Then, in 2026, post-hoc declarations now advance a new, different theory: certain photographs were secret, but not all of them, and Apple cannot explain why some were or were not, or what was secret. (Warner Depo. 48 – As to what's confidential, "*the actual image of the Face ID, the product, the recording you had*"). Apple offers no admissible basis for the current photograph-confidentiality theory. Apple's Rule 30(b)(6), asked what specifically about any photograph was confidential, she said "the image had shown you were participating in a user study," then gestured at "*potentially certain features of the tool*," and "*how algorithm behind the scenes, if you will, information about that feature*" and could not provide further

7

specification. Apple/Warner 54-55.

18. Bertolus initially claimed trade secrets but then pivoted to claiming it was "our secret recipe of how we do work·at Apple" (Bertolus Depo. 87). Further, Apple cannot identify which photographs formed the basis. (Warner Dep. 52:5-23 ("at least one…I don't have the exact number"). When pressed to confirm how many and which Twitter posts were the basis for the termination, the corporate witness said *"I think I have answered the question a few different times,"* and finally, addressing the Plaintiff, "*you don't like the answer that I'm giving."* Apple/Warner Depo. 52:17-53:13.

19. Aloe's Declaration also concedes the images Plaintiff posted had blurred any algorithmic specifics and directed the reporter to remove them. Aloe Decl. ¶ 11 at 3. The Declaration makes a number of misleading and incomplete statements but notably now claims the images the Plaintiff sent a reporter that were not blurred was "highly confidential." Id at 4. These are the same texts that Apple apparently is citing with their undisclosed witness Cher Scarlett, who filed four declarations to this court in this case stating she was not a witness and wanted to be removed from claims against Apple, and who shared the same images in question with social media users in 2021, and filed those same images to a court docket in the State of Washington when she sued the Plaintiff and requested a prior restraint gag order that prevented the Plaintiff from even saying Scarlett's name. (Pl. Opp./Reply Decl.; Dkt. 365 Plaintiff's Reply Brief regarding discovery disputes at 3-7; 366; Scarlett Decl. at 62, 66, 99, 176).

20. Apple's Cross-Motion, via footnote 1 (Dkt. 367 at 2 n.1) also broadly claims that Plaintiff "had no idea if the images she could see locally on her phone were ever uploaded or visible to Apple" and that "none were actually in Apple's possession." That is a disputed fact – Apple claims, Plaintiff never asked to delete the images of her –a disputed fact – among other evidence and context, the Complaints in this lawsuit requested an injunction ordering Apple to

delete these same images as part of the 17200 claim. [1]

21.    Apple's own subject-matter witness testified he does not know by what mechanism Gobbler data flowed from Plaintiff's personal device, whether MDM profiles caused background uploads, whether iCloud backup captured Gobbler data, or why Gobbler continued attempting to access Plaintiff's personal iCloud account post-termination — conduct ongoing to this day. Aloe Dep. 56.  When she asked Aloe during the deposition how she could report the issue to Apple after being fired, Aloe said "·I don't know that." Aloe Depo. 57. When asked if Apple's VPN profiles for employee phones, that allow full disk access, also allow access to Gobbler data, Aloe testified: "I am not sure." When asked if full disk access includes where the Gobbler data is stored he said "I am not sure." Aloe Depo. 69-70. When asked if the data is encrypted and if so by what method, Aloe said "doesn't know." Id. 71.

22.    The Verge article Apple identifies as part of the termination basis directly states: "Apple was careful to instruct employees not to upload anything sensitive, confidential, or private. But it didn't tell people what was happening with the hundreds of images they didn't upload in Radar reports." Pl. Opp./Reply Decl. The lack of transparency about what Apple's software was doing on devices — including with locally captured data Plaintiff did not opt to upload — is the working-condition concern Plaintiff disclosed. The contested data-flow question is a disputed material fact precluding summary judgment for Apple. Fed. R. Civ. P. 56(a).

23.    Further, Defendant's sworn position statement to U.S. DOL stated the "leak" was disclosing the "existence" of a user study – and Apple's evidence provided to DOL did not include photographs. ("*From time to time, Ms. Gjovik was given the opportunity to participate in new product or feature user studies ... and at times required her to agree to additional*

---

[1] (i.e. Dkt. 76, 4AC, "Gjovik also requests in injunctive relief of an order for disgorgement of the unlawfully and unethically obtained data, at the very least of Gjovik's data, including any products developed using Gjovik's personal data, including Gobbler images.")

PL'S MSJ REPLY; OPP. TO DEF'S CROSS-MSJ | 3:23-CV-04597-EMC                    MAY 21 2026

*confidentiality obligations that prohibited her from disclosing any information about the existence of the study or her participation in it.*" – Pl. Decl. Ex. 25 at 210). Additionally, Defendant's own subject-matter expert testified Gobbler is not a user study, contradicting Apple's prior characterization ("*I would like to clarify that Glimmer is not a user·study itself.· It is an upload app….it is not a user study in and of itself*" Aloe Depo. 30). Worse, the Informed Consent Form Apple relies on was electronically signed in 2017 for a 20-minute session over two years before the operative conduct; no Glimmer-specific ICF was entered for the 2021 studies and expected a new ICF would be entered if the study continued through 2021. (Aloe Depo 45-46; Aloe Decl. Ex. C).[2]

24.    Independently, Apple's confidentiality theory is itself unlawful. California Civil Code § 1668 forbids any contract "to exempt anyone from responsibility for his own . . . violation of law," and *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 669-70 (1988), and *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176-77 (1980), establish that contractual confidentiality cannot defeat the public policy expressed in California's whistleblower statutes. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), holds that provisions interfering with statutorily protected activity are unenforceable. An employer cannot establish a legitimate, independent reason for an adverse action where its own records and sworn corporate testimony contradicts its sworn filings, and its own defense counsel and corporate witness cannot identify the operative facts. *Loggins v. Kaiser Permanente International*, 151 Cal. App. 4th 1102, 1112 (2007); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1062 (2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

25.    Plaintiff's disclosures concerned Apple's collection, on Apple-issued iPhones

---

[2] Q: would you expect·that this study would last for years after that 20 minute period without the additional ICF? | A· ·No.· I would not expect that

PL'S MSJ REPLY; OPP. TO DEF'S CROSS-MSJ | 3:23-CV-04597-EMC                MAY 21 2026

carried by Apple employees, of face images and biometric data from non-consenting members of the public — used to train Face ID, now deployed on over a billion consumer iPhones. The FTC has, in five recent enforcement actions, required deletion of data and AI models built on biometric data gathered without informed consent. *In re Rite Aid Corp.*, FTC File No. 2023190 (Dec. 19, 2023); *In re Everalbum, Inc.*, FTC File No. 1923172 (Jan. 11, 2021). A confidentiality designation that operates to shield evidence of conduct exposing Apple to enforcement actions for unlawful biometric data collection — and to silence employees who report it — is unenforceable as against public policy. The confidentiality theory cannot survive Cal. Civ. § 1668, Edwards, Tameny, and Foley because it operates to shield evidence of privacy invasions, labor law concerns, and unlawful biometric data collection; the refusal-to-cooperate theory cannot survive § 1102.5(b)'s and § 98.6's protection of communications with federal agencies; the penal code-invocation premise cannot survive § 1102.5(b)'s textual protection of disclosures of reasonably-believed violations of law.

26.     Apple's Seventh Affirmative Defense pleads the Verge article as after-acquired evidence learned "shortly after" termination. (Amended Answer). Yet, Apple's Rule 30(b)(6) testifies the Verge article was a pre-termination basis: "*That was part of the reasons for your termination because there was — it came to our attention that you had posted, again, the images, which, again, we can look at them, on Twitter, and you also had 'The Verge' article.*" Warner Dep. 79:14-22. "Apple did consider the images and videos that you had posted included in 'The Verge.'" Warner Dep. 81:18-22. Apple's counsel further stated on the record: *"I have not seen anything that says that Apple did not know about 'The Verge' article*." Warner Dep. 83:3-4.

27.     Apple's prior agency filings expressly disclaim pre-termination knowledge of the Verge article — directly contradicting Apple's current Rule 30(b)(6) testimony. For instance, in 2022, Apple's counsel at Orrick wrote in a sworn statement to the federal government that Apple

terminated the Plaintiff's employment "*because she violated Apple policy by intentionally disclosing confidential information about Apple products on Twitter and, as Apple later discovered, to the press.*" (Pl.'s Decl. Ex. 25 at 210 -- Apple's March 4, 2022 Position Statement to U.S. Dept of Labor). After-acquired evidence is limited to remedies mitigation under *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), and *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407 (2014). Apple cannot use the Verge article as both pre-termination basis and after-acquired evidence. An affirmative defense pleaded without a factual basis is Rule 11 territory. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-63 (1995); *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407 (2014).

## VII.    APPLE CANNOT RESCUE ITS DEFENSE THROUGH A "PARTIAL" SAME-DECISION ARGUMENT OR ANY OTHER SURVIVING AFFIRMATIVE DEFENSE

28.    Apple's brief frames Gobbler as "alone sufficient grounds for termination" with other reasons "bolster[ing]" the determination. Dkt. 367 at 7, 11. Apple invites the Court to assume that even if some of its stated reasons fail, the remaining one(s) carry the same-decision defense by clear and convincing evidence. That is not how *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022), works. An employer cannot meet the clear-and-convincing same-decision burden by conceding the falsity, bad faith, or pretextual character of part of its asserted basis and then asking the Court to assume it would have made the same decision on the residue. The same-decision defense requires affirmative proof, not the partial collapse of a manufactured defense.

29.    The ear-scan component is disclaimed by Apple's 30(b)(6); the Gobbler/Glimmer component has no articulable basis on Apple's binding testimony; the Alpha/Omega code names are undecipherable on Apple's own record; Apple's photograph-confidentiality theory rests on a consent form from 2017 covering a 20-minute unrelated session and on using a disparate-treatment comparator as a defense witness; Apple sent one of the witnesses who decided to fire

12

the Plaintiff to be the Rule 30(6)(b) witness and then claim privilege about her own conduct; and the confidentiality designation is itself unenforceable as against public policy. The Seventh Affirmative Defense (after-acquired-evidence Verge article) is foreclosed by Apple's own contradictory Rule 30(b)(6) testimony. Apple has no legitimate-independent-reason basis remaining. Further, Apple's footnote 7 reliance on the September 25, 2025 NLRB partial withdrawal is addressed in Plaintiff's concurrent Opposition to Defendant's Request for Judicial Notice and rests on a discretionary, unreviewable prosecutorial decision that the NLRB itself characterized as such.

## VIII. APPLE NOW CLAIMS REPORTING SEX CRIMES IS MISCONDUCT

30. Apple's MSJ identifies invocation of a criminal statute as misconduct; the 30(b)(6) admits the decisionmaker's confusion about the basic harassment-complaint subject "would not have changed the decision," and admits West received corrective-action feedback for the same conduct Plaintiff complained of. *Fourth, the defense rests on circumstances Apple manufactured* — the texts Plaintiff was terminated for failing to produce were inaccessible because Apple placed her on leave the day before she planned to retrieve them; the harassment-complaint confusion was the product of Apple's investigators' framing for Bertolus; the refusal-to-cooperate was the product of Apple's manufactured demand for oral-only communications during an active federal agency proceeding. *Ray v. Henderson*, 217 F.3d 1234, 1244-45 (9th Cir. 2000); *Yanowitz*, 36 Cal. 4th at 1052-53. The four-failure structure is itself the substantial responsive evidence *Loggins* requires.

31. There are new instances of this following the prior filings. Bowman's email proposing to terminate the Plaintiff mentioned "redactions" and Apple's corporate witness was not prepared to identify what "redacting" referred to in Bowman's email, did not speak with Bowman before the Rule 30(b)(6) deposition, and could not articulate what specific texts

13

Plaintiff allegedly provided or what about the broader chain "directly contradicted" the allegation. Warner Dep. 153:24-25; 154:25-155:5; 155:17-156:7; 156:8-10 The factual basis regarding the "redaction" — is an unsupported assertion by an Apple HR employee Apple's own corporate designee did not prepare to defend.

## IX.    THE INVESTIGATION SHIELD-AND-SWORD FORECLOSES APPLE'S DEFENSE ON ALL FOUR CLAIMS

32.    Apple's three stated reasons each rest on investigation outputs. Gobbler allegations rest on Apple's investigative determination that the disclosed material was confidential. Both Gobbler and the Sous Chef incident intersected on the investigators' "refusal to cooperate" finding. The Sous Chef incident rests on Okpo's "misleading" finding. Each is the conclusion of an investigation Apple conducted "under privilege" and "at the direction of counsel." Okpo Decl. ¶ 4 ("I conducted the investigations after I was directed to do so by Apple's attorneys and at their direction throughout the investigation").

33.    During depositions and in discovery responses, Apple's counsel claimed privilege on many topics including: findings of the Waibel and Okpo investigations into Plaintiff's harassment and hostile-work-environment complaints; whether Apple's investigators found any evidence supporting any of Plaintiff's complaints; the substance of the "misleading" finding underlying Reason 3; the basis for the "refusal to cooperate"; the substance of the investigation underlying confidentiality determination; communications with attorneys regarding the investigations; what evidence Apple considered in any investigation; the substance of what Kagramanov and Jacobs planned to discuss with Plaintiff on September 9; and the planning around the ear-scan tweet as a basis or defense.

34.    An employer relying on an investigation as a legitimate basis for an adverse action must establish that the investigation produced "a reasoned conclusion . . . supported by substantial evidence" through "an appropriate investigation." *Cotran v. Rollins Hudig Hall*

14

*International, Inc.*, 17 Cal. 4th 93, 108 (1998). The *Cotran* standard governs the same-decision defense under Plaintiff's claims, because the investigative basis is the foundation of Apple's stated reasons for the adverse action at issue. An inadequate or biased investigation is itself evidence of pretext. *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 277-83 (2009). An employer affirmatively relying on investigation outputs waives privilege over substance of investigations. *Wellpoint Health Networks. v. Superior Court*, 59 Cal. App. 4th 110, 128 (1997).

35.     *Cotran*'s "reasoned conclusion supported by substantial evidence" standard fails here on Apple's own record. Inquiries into the details of Apple's investigations into the Plaintiff and her concerns either claim ignorance, direct retaliation, confidentiality, and/or privilege.: the confidentiality investigation— Apple's Rule 30(b)(6) cannot identify what photographs were confidential or why (Warner Dep. 52:17-22, 52:24-53:13, 55:6-10); the Kagramanov "refusal to cooperate" investigation— completed in 42 minutes, with no Apple policy requiring oral-only communication (Kagramanov Dep. 57:7-15, 72:3-13), reaching its conclusion "in partnership with our legal counsel" (Kagramanov Dep. 95:8-13); and the Okpo "misleading" investigation— closed because Plaintiff requested written communications about a sub-issue, no Apple policy prohibiting written-communications (Okpo Dep. 106:6-10, 116:4-14), and resting on a "redaction" characterization Apple's Rule 30(b)(6) cannot defend (Warner Dep. 153:24-155:5, 155:17-156:7, 187:25-188:5). No reasoned conclusion supported by substantial evidence; no appropriate investigation. *Cotran*, 17 Cal. 4th at 95-96, 108. Either Apple has investigation outputs to defend (and they fail *Cotran*) or it does not (and the three stated reasons have no remaining articulated basis).

36.     Kagramanov's call would have been subject to Apple's confidentiality constraints — Plaintiff would have been prohibited from disclosing what Apple said — while Apple simultaneously invokes privilege over what Kagramanov and Jacobs planned to discuss with her.

15

Apple's position is Plaintiff had a duty to participate in a call (i) whose content was prepared under privilege she could not observe, (ii) would have bound her to confidentiality she could not breach, and (iii) which would have related to subject matter then pending before federal agencies. That position cannot be reconciled with § 1102.5(b)'s protection of communications "providing information to . . . any public body" or with § 98.6's protection of agency complaints.

37.    Apple put a conflicted decisionmaker in position to terminate, on a manufactured misimpression about who the complaint concerned. Plaintiff's Issue Confirmation contemporaneously alleged that Bertolus had taken actions to conceal facts and interfere with anticipated litigation in order to protect West. (Pl. Opp./Reply Decl.). Bertolus and Apple's Rule 30(b)(6) both testified Bertolus did not know the harassment complaint was about the sous chef and believed it concerned his personal friend, head chef Jared Gallagher: "Yes, I'm aware of that. I read his testimony that he did not know." Warner Dep. 241. Bertolus himself testified he had "absolutely no idea" who Andrew was at the time of his deposition. Bertolus Dep. 164:11-17. Apple's 30(b)(6) testified the confusion "would not have changed the decision." Warner Dep. 243. Apple then claims privilege over its investigation and decision making leading to terminating the Plaintiff.

38.    Apple thus admits, in binding corporate testimony, that it placed a decisionmaker carrying a documented conflict of interest in the position to ratify a termination he did not understand, on a manufactured misimpression that the complaint was about his friend rather than the supervisor he had previously been alleged to be protecting from litigation. That is direct evidence of retaliatory animus under *Staub v. Proctor Hospital*, 562 U.S. 411, 418-22 (2011), reaching Plaintiff's *Tameny*, § 1102.5, § 98.6, and § 6310 claims and orchestrated by Apple Legal who then claimed privilege over this unlawful retaliation.

39.    Apple's argument that *Cotran* does not apply because Plaintiff was at-will (Dkt.

16

367 at 22) misreads the case. *Cotran* itself arose from the termination of an at-will employee and adopted the "reasoned conclusion supported by substantial evidence" standard expressly for at-will terminations. 17 Cal. 4th at 95-96. The Court of Appeal has applied *Cotran* to retaliation claims by at-will employees. *Nazir*, 178 Cal. App. 4th at 277-83; *Mendoza v. Western Med. Ctr. Santa Ana*, 222 Cal. App. 4th 1334, 1342-44 (2014).

## X.    DISPARATE TREATMENT

40.    Comparator evidence requires the employer to establish that the comparators are similarly situated in all material respects, including the same supervisor, the same standards, and substantially similar conduct without differentiating or mitigating circumstances. *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114-15 (9th Cir. 2011). Bowman's declaration does not meet that burden.

41.    She does not identify the comparators' supervisors, the policies invoked in each termination, the investigation procedures applied, whether any of the thirteen employees had engaged in protected activity, or what conduct each was alleged to have engaged in. Apple is a company of over 160,000 employees operating for nearly fifty years; thirteen unidentified terminations across that span are not a comparator universe, and Bowman's bare characterization of "similar" disclosures lacks personal knowledge under FRE 602.

42.    The actual comparator on the record is Aloe. Apple's stated reasons treat Plaintiff's discussion of the Glimmer/Face ID user study and product as terminable confidential disclosure. Aloe — the DRI for that work — has published extensively about Face ID, Apple development processes, and Apple user studies on Medium and LinkedIn from 2018 through 2022. Pl.'s MSJ ¶ 62; Pl. Opp./Reply Decl. (Aloe Face ID publications).

43.    Defendant's own subject-matter expert is also Plaintiff's principal disparate-treatment comparator. Robert McKeon Aloe testified at his April 3, 2026 deposition that Apple

17

has never told him his Face ID Medium and LinkedIn articles published 2018-2022 contain confidential information, has never disciplined him for any of them, and that he would not treat similar publications by team members as confidentiality violations. Aloe Dep. 93:7-18, 93:22-94:14; Pl. Opp./Reply Decl. Under *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011), disparate-treatment analysis operates on actual conduct.

44.    Apple has never disciplined Aloe, never told him his publications contain confidential information, and Aloe testified he would not treat similar publications by his team members as confidentiality violations. Aloe Dep. 93:7-18, 93:22-94:14; 99:5-9. Apple terminated Plaintiff for discussing the same subject matter Aloe has published on at length without consequence. *Earl*, 658 F.3d at 1113-14 (selective enforcement of confidentiality supports inference of retaliatory motive).

45.    Apple's Cross-Motion does not address this disparity. Apple's response is limited to Aloe's hypothetical statement that he would have expected to be fired for posting "those images" (Aloe Decl. ¶ 14) — images he could not identify when asked —from a witness who had himself published comparable material at length and whose declaration was solicited by Apple after Plaintiff's deposition and MSJ identified him as the comparator. Disparate-treatment analysis turns on actual conduct, not on hypothetical testimony from a comparator now testifying for the defense. *Earl*, 658 F.3d at 1114.

## XI.    THE CAT'S PAW STRUCTURE IS ESTABLISHED ON BERTOLUS'S OWN ADMISSIONS

46.    Apple's *Choochagi* argument — that Bertolus made an independent decision based on his firsthand observations — fails on Bertolus's own deposition record. *Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 459-461 (2020), required "firsthand observations" and "independent[] identifi[cation]" of misconduct. Apple's *Choochagi* argument fails on Bertolus's own admissions. The *Choochagi* decisionmakers personally identified the

18

deficiencies they relied on; here Bertolus testified his preparation was "I only worked with the lawyers" (Bertolus Dep. 15:21-22), he had not reviewed the texts (Bertolus Decl. ¶ 8), he could not identify the Verge article, saw only stripped images, and he received Bowman's recommendation email at 6:20 PM and replied "Understood. I agree with the termination decision" at 6:26 PM — six minutes later, with no record of independent investigation in that window (Pl.'s MSJ Ex. 30). His "firsthand observations" were observations of what HR and Legal placed in front of him. *Choochagi* requires more. 60 Cal. App. 5th at 459-461.

47.    Bertolus testified at his April 17, 2026 deposition that his preparation for the termination decision was "I only worked with the lawyers." Bertolus Dep. 15:21-22. He had "absolutely no idea" who Andrew was at the time of his deposition. Bertolus Dep. 164:11-17. He did not see the operative texts (Bertolus Decl. ¶ 8, reviewed only "a single text message"); did not see the Kagramanov-Gjovik emails; could not identify the Verge article by title, date, or content; saw only stripped images of the Twitter posts; could not identify the policies violated without prompting. Bertolus received Bowman's recommendation email at 6:20 PM and replied "Understood. I agree with the termination decision" at 6:26 PM — six minutes later, with no record of independent investigation in that window. Pl.'s MSJ Ex. 30; Warner Dep. 193:19-22.

48.    The termination was recommended to Bertolus by Human Resources. Warner Dep. 33-34. Bertolus's confirmation that the disclosed material was confidential ran through "members of global security, the members of the HR team or the people team, and legal counsel." Warner Dep. 60:1-2.  The Plaintiff's Issue Confirmation (and supporting emails and records) alleged that Bertolus himself had previously interfered with evidence in order to protect West — with a documented conflict of interest on the record while Bertolus was selected to be the final decisionmaker. Pl. read email Ex. W, "Apple will probably get sued about whatever it was and that the direct can take the fall instead of Dan" and asked " Warner Depo. 340. Counsel

responded "Instruct you not to answer to the extent it related to anything that was done in connection with a privileged investigation." Warner Depo. 340.

49.     Plaintiff asked: "Ms. Warner, did Apple consider using Yannick as the final decision-maker in terminating my employment related to my sexual harassment complaint against Dan knowing that one of my open complaints was that Yannick 20· was trying to obstruct future litigation in order to protect Dan?" Warner Depo. 340. Counsel responded "There's so much wrong with that question, I don't know where to start" and "privileged." Id.

50.     Further, Apple's argument that Bertolus did not personally know of the agency complaints (Dkt. 367 at 19) has no evidentiary support, is disputed and misframes the cat's paw inquiry, which reaches decisionmakers acting on information curated by individuals harboring retaliatory animus regardless of the decisionmaker's own knowledge. *Staub*, 562 U.S. at 421-22. Further, Apple's binding corporate testimony is that the decisionmaker's confusion about basic facts "would not have changed the decision." Warner Dep. 243.

51.     Bowman's contradictory comparator evidence ("over a dozen" terminations against Bertolus's "at least two") and her detailed identification of policies violated (Bowman Decl. ¶¶ 2-6, where Bertolus's deposition reflects no such ability) are structurally incoherent with Apple's "Bertolus is the sole decisionmaker" framing. Further, Bertolus testified he could not identify any other employee fired in his organization. (Bertolus Depo. 29 – "*I don't remember the exact name or ·number*"). Either Bowman is a decisionmaker (defeating *Choochagi* independence) or she is supplying specifics Bertolus could not (sham rehabilitation)..

52.     Defendant submitted Bertolus errata changing p. 158:13 from "feminine" to "familiar" under Reason Code 3 ("correct transcription errors"). The change is substantive, not transcriptional. *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224-26 (9th Cir. 2005). When confronted at deposition with the testimony (p. 177:14-178:11),

20

Bertolus said "I don't remember saying that" and "That's not what I said" — not "I said familiar." (Bertolus 158, 177). Further, the term and concept of "familiar" was used by both Warner and West to describe West's misconduct ("*we got·too friendly, and that's not appropriate*", West Depo 24; "*there was feedback about the familiarity, his having a clearer line between professional and not,*" Warner 145); which, if Bertolus' revision is honest, is him ratifying the misconduct Apple already condemned, in order to continue to try to justify the firing.

## XII.    THE PUBLIC-POLICY CONTEXT FORECLOSES APPLE'S CONFIDENTIALITY DEFENSE

53.    In 2017, Senator Al Franken asked Apple's CEO where the Face ID training data had come from, who the participants were, and how their consent had been obtained. Apple's response repeated general language about "informed consent" and "participants from around the world" without answering the specific questions. Pl. Opp./Reply Decl. The actual source of much of the Face ID training data was a program Apple deployed on its workforce: software on Apple-issued iPhones carried by employees that captured face images, video, and biometric data — at work, at home, anywhere those phones traveled — including the friends, family, romantic partners, children, and strangers around them, none of whom were told the program existed or asked to consent.  Pl. Opp./Reply Decl.

54.    Plaintiff publicly raised concerns about this program, filed complaints with U.S. and international regulators, and Apple fired her — now defending the termination on the ground her disclosures violated some confidentiality agreement. Pl. Opp./Reply Decl.  The information Plaintiff disclosed is the same information Senator Franken formally and Apple declined to provide. The effect of the ruling Apple seeks is that information a Senator was entitled to receive but was denied, that members of the public have a direct privacy interest in, that Apple has not denied, and that — if true — exposes Apple to substantial enforcement and consumer liability, becomes information any Apple employee can be fired for telling anyone.

21

55.    Apple's reliance on § 232.5(d)'s proprietary-information carve-out fails for many reasons including on this ground: information whose disclosure is independently protected under § 1102.5(b), Gov. Code § 12964.5, and Cal. Civ. § 1668 cannot be 'proprietary' within the meaning of § 232.5(d), or the carve-out would swallow each independent protection. California Civil Code § 1668 forbids contracts to exempt anyone from responsibility for their own violation of law. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 669-70 (1988); *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176-77 (1980); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008). Apple's *Erhart* and *Tides* citations involve enforceable confidentiality agreements applied to information that did not fall within an statutory protection. Here the agreement itself is unenforceable as applied to disclosures protected by § 1102.5(b), § 96(k), § 232.5, Gov. Code § 12964.5, and Cal. Civ. § 1668. Apple's citations to *Feminist Women's Health* (employee refused to perform contracted-for duty) and *Holmes v. Petrovich* (privacy in employer email accounts) involve materially different conduct and do not reach contractual confidentiality designations that operate to shield evidence of unlawful conduct from disclosure to enforcement bodies.

### XIII.  PLAINTIFF'S MOTION SHOULD BE GRANTED
**A.    THE § 98.6(B)(1) PRESUMPTION AND THE NINTH CIRCUIT'S TEMPORAL-PROXIMITY PRESUMPTION ATTACH AND REMAIN UNREBUTTED**

56.    Defendant's opposition offers no analysis of Labor Code § 98.6(b)(1), no engagement with Evidence Code §§ 603 or 605, and no authority on the operation of the presumption. The argument is waived. *Nelson v. Brunswick Corp.*, 503 F.2d 376, 381 (9th Cir. 1974). The objective triggers are established on Apple's admissions and on Plaintiff's record of protected activity; employer knowledge; and adverse action within 90 days. Each protected activity Apple itself identifies in its stated reasons falls within the Ninth Circuit's temporal-proximity-presumption window for retaliatory motive. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

57.    Apple also offers no engagement with Cal. Lab. Code § 96(k) (lawful conduct during nonworking hours away from the employer's premises) or Cal. Gov. Code § 12964.5 (declaring unenforceable any agreement that "purports to deny the employee the right to disclose information about unlawful acts in the workplace"). Each is independently dispositive under § 98.6 via § 98.6(a) and operates independently as a *Tameny* tether. Each is waived. *Nelson*, 503 F.2d at 381. § 98.6(b)(1) is governed by California Evidence Code § 605 and shifts the burden of proof, not merely production. Fed. R. Evid. 302; *Snead v. Metropolitan Property & Casualty Insurance Co.*, 237 F.3d 1080, 1090-91 (9th Cir. 2001). Apple offers no rebuttal evidence; its only proffered reasons are themselves protected activity. Retaliation cannot rebut a presumption of retaliation. *Bachelder*, 259 F.3d at 1124-25. Liability under § 98.6 is established.

## B.    THE DIRECT-EVIDENCE FRAMEWORK FORECLOSES MCDONNELL DOUGLAS ANALYSIS

58.    Where the employer's own words supply direct evidence that protected activity motivated the adverse action, *McDonnell Douglas* burden-shifting does not apply. *Wallace*, 245 Cal. App. 4th at 123; *Bachelder*, 259 F.3d at 1124-25; *DeJung*, 169 Cal. App. 4th at 550. Each of Apple's three stated reasons is direct evidence of retaliation because each is itself protected activity: the August 30 Twitter post complaining about Apple's surveillance and retaliation is protected under Cal. Const. Art. I § 1, Labor Code §§ 96(k), 232.5(c), 1102.5(b), and Gov. Code § 12964.5; the request for written communications to preserve a record for the pending NLRB charge is protected under § 1102.5(b) ("providing information to . . . any public body"); the hostile-work-environment complaint invoking the pandering statute is protected under FEHA § 12940(h), Title VII, § 1102.5(b), and § 98.6. No burden-shifting is required.

59.    Apple applies the pre-*Lawson* framework, demanding "substantial responsive evidence" of pretext from Plaintiff. Dkt. 367 at 11, citing *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102 (2007). *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703,

23

718 (2022), expressly rejected that framework for § 1102.5. After Plaintiff's contributing-factor showing, the burden remains with Apple to prove by clear and convincing evidence that it would have taken the same action absent the protected activity. There is no third-stage pretext burden on Plaintiff under § 1102.5. *Loggins* predates *Lawson* and applies the now-superseded framework. The same-decision burden lies with Apple and fails for the reasons set forth.

### C. APPLE'S WAIVER ON ADDITIONAL RETALIATION GROUNDS IS INDEPENDENTLY DISPOSITIVE

60.    Plaintiff's MSJ established record evidence that Apple retaliated against Plaintiff for her EHS complaints. Pl. MSJ; Pl. Opp./Reply Decl. Apple's Opposition does not engage with these grounds substantively. Under FRCP 56(e)(2), the Court may consider these facts undisputed for purposes of the motion, and Apple's waiver is independently dispositive of liability under § 6310, *Tameny*, § 98.6, and § 1102.5. Independently, the four-failure pattern of Apple's defense is itself substantial responsive evidence of retaliatory animus across the full range of Plaintiff's protected activity, including the EHS-related grounds. *Ray*, 217 F.3d at 1244-45; *Yanowitz*, 36 Cal. 4th at 1052-53. Further, § 6310 preemptive retaliation under *Lujan v. Minagar*, 124 Cal. App. 4th 1040, 1046 (2004), developed in Plaintiff's MSJ ¶¶ 45, 56, regarding Apple's August 4, 2021 leave imposed concurrent with pre-EPA-inspection crack-sealing and hours before Plaintiff was to retrieve laptop evidence — not addressed by Apple's Opposition and dispositive of the § 6310 claim.

## XIV. PRELIMINARY INJUNCTION

61.    Apple opposes the preliminary injunction on the ground that loss of income is not irreparable harm (citing *Sampson v. Murray*, 415 U.S. 61 (1974), and *L.A. Memorial Coliseum*, 634 F.2d 1197 (9th Cir. 1980)) and that this Court has previously denied reinstatement TROs and PIs (citing *Done*, *Wadsworth*, *Hines*). *Likelihood of success* is established for the reasons set forth in the MSJ  and within; on this record summary judgment is warranted. *Irreparable harm*

24

is loss of medical, dental, and vision insurance during a five-year-and-counting litigation period. Loss of employer-provided health coverage is qualitatively different from "temporary loss of income." *Sampson*, 415 U.S. at 90 (recognizing exception for harms beyond temporary income loss). Loss of medical benefits supports irreparable-harm findings. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020). Plaintiff is also in Chapter 7 bankruptcy, without permanent housing, insolvent, and unable to pay basic expenses – so the loss of pay is irreparable harm.

62. Apple's cases do not apply to the request for benefits reinstatement. *Sampson* and *L.A. Memorial Coliseum* are monetary-harm cases — Plaintiff seeks restoration of benefits coverage, not damages. *Done v. Sonoma County Junior College District*, 2025 WL 3771616 (N.D. Cal. Dec. 31, 2025), *Wadsworth v. Beard*, 2025 WL 1785763 (N.D. Cal. June 26, 2025), and *Hines v. California Public Utilities Commission*, 2011 WL 724658 (N.D. Cal. Feb. 23, 2011), are all front-end TRO and PI denials on undeveloped records before liability was established. This case is at summary judgment on a five-year record on which liability is established. *Balance of equities* and *public interest* are addressed in the MSJ. (Pl.'s MSJ ¶¶ 63-64.) Apple's own Senior Director West testified Apple would reinstate Plaintiff if legally ordered to do so. (Ex. 36, West Dep. 86:12-25.) Apple identifies no harm to itself from reinstating an employee to payroll and benefits, assumably placing back on administrative leave, pending trial.

## XV. CONCLUSION

63. Plaintiff respectfully requests that the Court deny Apple's Cross-Motion in its entirety; and grant Plaintiff's Motion for Summary Judgement and request for Preliminary Injunction. Apple's litigation conduct — advancing the ear scan and Gobbler defenses after a Rule 11 warning in 2021, with years of contradictory sworn filings with no basis in fact or law, while shielding the operative facts — is properly considered in fines and punitive-damages analysis. *Roby*, 47 Cal. 4th at 712-13; *State Farm*, 538 U.S. 408.

Respectfully filed,

_____

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed May 22 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

26

# XVI.  [PROPOSED] ORDER

This matter came before the Court on Plaintiff Ashley Gjovik's Motion for Summary Judgment and Preliminary Injunction (Dkt. 359) and Defendant Apple Inc.'s Cross-Motion for Summary Judgment (Dkt. 367). The Court has considered the parties' submissions, the documentary record, and the arguments of the parties.

**IT IS HEREBY ORDERED:**

1. Defendant's Cross-Motion for Summary Judgment (Dkt. 367) is **DENIED** in its entirety.
2. Plaintiff's Motion for Summary Judgment (Dkt. 359) is **GRANTED** as to liability on Count One (Tameny), Count Two (California Labor Code § 1102.5), Count Three (California Labor Code § 6310), and Count Four (California Labor Code § 98.6). Damages and remaining factual issues are reserved for trial on October 19, 2026.
3. Plaintiff's request for a preliminary injunction is **GRANTED**. Defendant shall, within fourteen (14) days of this Order, reinstate Plaintiff to payroll and restore her medical, dental, and vision insurance coverage at the level in effect on September 9, 2021, pending final judgment.
4. Defendant's proposed order (Dkt. 367-1) is **REJECTED**.


**IT IS SO ORDERED.**


DATED: _____


_____
Hon. Edward M. Chen
United States District Judge

27