JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| APPLE INC., | Date:       June 11, 2026 |
| Defendant. | Time:       1:30 p.m.<br>Dept:       Courtroom 5, 17th Floor<br>Judge:      Honorable Edward M. Chen |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 1

    A.    Plaintiff Once Again Violated Her Court-Ordered Filing Deadline. ..................... 1

    B.    The Facts Entitling Apple to Judgment Are Undisputed. ..................................... 2

    C.    Apple's Legitimate Reasons for Terminating Plaintiff Have Not Wavered. .......... 4

        1.    Plaintiff's Intentional Disclosure of Internal Glimmer Application Images Was a Sufficient, Lawful Ground for Termination in Itself. .......... 4

            a.    Apple Has Regularly Reaffirmed Why Plaintiff Was Fired. .......... 4

            b.    Apple's Reason for Firing Plaintiff Was Lawful. .......................... 7

        2.    Plaintiff's Other Policy Violations Also Supported Termination. ............. 8

    D.    None of Plaintiff's Further Arguments Salvages Her Claims .............................. 11

        1.    Apple's Defense Does Not Depend on the Investigation Over Which It Has Consistently and Appropriately Asserted Privilege ............ 11

        2.    Plaintiff's Insistence Dr. Aloe Should Have Been Fired Is Irrelevant. ...................................................................................... 12

        3.    Plaintiff Has Not Produced "Specific, Substantial Evidence" That Bertolus's Stated Reason for Terminating Her Is False ............................ 13

        4.    Plaintiff Was Not Entitled to Leak Confidential Product Information ......................................................................................... 15

III.  CONCLUSION ......................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arteaga v. Brink's, Inc.*,
   163 Cal. App. 4th 327 (2008).................................................................................................. 15

*Barbee v. Household Auto. Fin. Corp.*,
   113 Cal. App. 4th 525 (2003).................................................................................................... 8

*Cervantes v. Concentra Health Servs., Inc.*,
   No. 21-cv-02502, 2021 WL 6496829 (C.D. Cal. Dec. 21, 2021) ............................................. 3

*Choochagi v. Barracuda Networks, Inc.*,
   60 Cal. App. 5th 444 (2020)..................................................................................................... 14

*Cotran v. Rollins Hudig Hall Int'l, Inc.*,
   17 Cal. 4th 93 (1998) ............................................................................................................... 12

*Cuevas v. SkyWest Airlines*,
   17 F. Supp. 3d 956 (N.D. Cal. 2014), *aff'd*, 644 F. App'x 791 (9th Cir. 2016) ...................... 3

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (2008) ............................................................................................................... 8

*Erhart v. BofI Holding, Inc.*,
   No. 15-cv-02287, 2017 WL 588390 (S.D. Cal. Feb. 14, 2017).................................................. 8

*Featherstone v. S. California Permanente Med. Grp.*,
   10 Cal. App. 5th 1150 (2017).................................................................................................... 11

*Feminist Women's Health Ctr v. Sup. Ct.*,
   52 Cal. App. 4th 1234 (1997)..................................................................................................... 8

*Foley v. Interactive Data Corp.*,
   47 Cal. 3d 654 (1988) ................................................................................................................ 8

*Frazier v. Am. Airlines, Inc.*,
   No. 23-55508, 2024 WL 5053250 (9th Cir. Dec. 10, 2024)....................................................... 3

*Goins v. United Parcel Serv. Inc.*,
   No. 21-cv-08722-PJH, 2024 WL 3331655 (N.D. Cal. July 8, 2024), *aff'd*, No.
   24-4842, 2026 WL 84715 (9th Cir. Jan. 12, 2026) .................................................................... 5

*Hatmaker v. Mem. Med. Ctr.*,
   619 F.3d 741 (7th Cir. 2010)..................................................................................................... 11

*Holmes v. Petrovich Dev. Co.*,
    191 Cal. App. 4th 1047 (2011)........................................................................................ 8

*Horn v. Cushman & Wakefield W.*,
    72 Cal. App. 4th 798 (1999).................................................................................... 3, 13

*Joaquin v. City of L.A.*,
    202 Cal. App. 4th 1207 (2012).......................................................................... 10, 11, 15

*King v. United Parcel Serv., Inc.*,
    152 Cal. App. 4th 426 (2007)...................................................................................... 11

*Lawson v. PPG Architectural Finishes, Inc.*,
    12 Cal. 5th 703 (2022) ............................................................................................. 3, 4

*Loggins v. Kaiser Permanente Int'l*,
    151 Cal. App. 4th 1102 (2007).................................................................................. 3, 4

*McGrory v. Applied Signal Tech., Inc.*,
    212 Cal. App. 4th 1510 (2013).................................................................................... 11

*McRae v. Dep't of Corr. & Rehab.*,
    142 Cal. App. 4th 377 (2006)................................................................................... 3, 14

*Mendoza v. Western Med. Ctr. Santa Ana*,
    222 Cal. App. 4th 1334 (2014).................................................................................... 12

*Nash-DeCamp Co. v. Agric. Lab. Rels. Bd.*,
    146 Cal. App. 3d 92 (1983)......................................................................................... 15

*Nazir v. United Airlines*,
    178 Cal. App. 4th 243 (2009)...................................................................................... 12

*Nejadian v. Cnty. of Los Angeles*,
    40 Cal. App. 5th 703 (2019)......................................................................................... 3

*Richey v. City of Indep.*,
    540 F.3d 779 (8th Cir. 2008)....................................................................................... 15

*Stetsyk v. Kelly Mitchell Grp., Inc.*,
    No. 20-cv-03941, 2021 WL 12302250 (C.D. Cal. Apr. 16, 2021) .......................................... 3

*Tameny v. Atl. Richfield Co.*,
    27 Cal. 3d 167 (1980) ............................................................................................. 3, 8

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002)..................................................................................... 11

*Wellpoint Health Networks, Inc. v. Sup. Ct.*,
    59 Cal. App. 4th 110 (1997)....................................................................................... 12

*Wilkin v. Cmty. Hosp. of Monterey Peninsula*,
   71 Cal. App. 5th 806 (2021).............................................................................................. 6

*Wills v. Superior Court*,
   195 Cal. App. 4th 143 (2011)............................................................................................ 6

**Statutes**

Cal. Civ. Code § 1668........................................................................................................... 8

Cal. Lab. Code § 232.5......................................................................................................... 8

Cal. Lab. Code § 1102.5....................................................................................................... 4

Cal. Lab. Code § 6310.......................................................................................................... 3

Cal. Penal Code § 266h...................................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)............................................................................................. 5, 6, 9, 10

Fed. R. Civ. P. 32(a)(6) ........................................................................................................ 5

Fed. R. Evid. 106 ................................................................................................................. 5

## I.  <u>INTRODUCTION</u>

Plaintiff intentionally leaked confidential Apple product information online and to the press and was fired promptly thereafter. Plaintiff does not and cannot dispute these core facts, which entitle Apple to judgment on all of Plaintiff's remaining claims. The undisputed facts establish that she was fired for this misconduct and would have been fired for it even had she never made any protected complaints. Nothing in her untimely and scattershot opposition (Dkt. 375; "Opp.")—an exercise in distraction and misrepresentation—warrants any different result.[1] At root, Plaintiff appears to believe that so long as she cast herself as a "whistleblower," she was immune from termination for admitted misconduct. She is wrong. Judgment for Apple should enter.

## II.  <u>ARGUMENT</u>

### A.  <u>Plaintiff Once Again Violated Her Court-Ordered Filing Deadline.</u>

In what has become a familiar pattern, Plaintiff did not timely file her opposition or any supporting evidence—nor did she seek an extension before once again violating a Court-ordered deadline.[2] While she filed a 23-page brief at 11:59 p.m. on the May 21, 2026 deadline (Dkt. 374), twelve hours later she filed a 25-page "corrected version" acknowledging that the timely filing was "not complete." Opp. ¶ 1. The "corrected" opposition does not merely make minor or typographical changes, however; it is a complete rewrite of the timely filing. And though Plaintiff represented on May 22 that her supporting evidence was being "filed concurrently" (*id.* ¶ 3), she filed a 610-page declaration (Dkt. 377) on May 25 and an additional 472-page declaration (Dkt. 379) on May 26— prejudicing Apple by once again depriving it of the full window to review and respond to her filings before Apple's own deadline. These late submissions appear to contain irrelevant documents and information and Plaintiff ignored the directive to highlight specific portions, leaving Apple and the Court to guess at what she contends is material or why. *See* Jan. 13, 2026 Hrg. Tr. (Dkt. 300) at 7:1-14, 8:22-9:5; *see also* Dkt. 273 at 1 ("While Plaintiff is entitled to support her motion with a

---

[1] Based on its understanding of the Court's order on cross-briefing, Apple confines its arguments to responding to the portion of Dkt. 375 that Apple understands to oppose its motion for summary judgment (rather than to reply in support of Plaintiff's own motion). *See* Dkt. 273.

[2] Plaintiff's social media posts make clear she knew on May 21, 2026, her opposition was "due today"—she just chose to ignore that deadline and file what she wanted, when she wanted. *See* https://x.com/ashleygjovik/status/2057510189876871435.

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

declaration, it must be concise.").[3] The Court would be well within its discretion to refuse to consider her opposition and untimely, unwieldy declarations. *See* Dkt. 179 at 4-5; Dkt. 137 at 3 n.3.

### B.    The Facts Entitling Apple to Judgment Are Undisputed.

Plaintiff's opposition does not dispute – because she cannot credibly dispute – ***any*** of the core facts on which Apple's motion depends:

- Plaintiff publicly posted images in late August 2021 that revealed information regarding a non-public internal Apple user study application, and provided these images (and, as Apple later learned, additional non-public information) to a reporter.

- Plaintiff had previously signed an Intellectual Property Agreement ("IPA") that required her to keep "Proprietary Information"—*i.e.*, "information not generally known outside of Apple and/or kept confidential by Apple" such as "trade secrets, R&D records," and "other materials or information relating to past, existing, and future products and services"—confidential. *See* Bowman Decl. Ex. A at PDF p. 6.

- Apple policies also prohibit disclosure of confidential product information and reinforce that disclosure can lead to immediate termination. *See* Bowman Decl. Exs. B-E.

- Yannick Bertolus personally reviewed images she posted; determined the images revealed confidential product information and their disclosure violated Apple policy; and decided to terminate her employment on September 9, 2021.

***None of these facts is disputed***. They compel judgment in Apple's favor on all of Plaintiff's remaining claims—as these facts demonstrate that Apple terminated her employment for legitimate, non-retaliatory reasons and would have made the same decision irrespective of any prior protected activity (the vast majority of which Bertolus knew nothing about).

Rather than dispute these facts, Plaintiff largely ignores them. She attempts to stave off judgment through selectively misleading references to testimony from Apple witnesses about ancillary issues, her own self-serving speculation that surely Apple must have terminated her for

---

[3] The declaration and exhibits are also objectionable for a host of reasons—many apparent from their face (*e.g.*, hearsay; hearsay within hearsay), others requiring more analysis to develop (*e.g.*, sham attempts to offer "testimony" that contradicts earlier statements or declarations). Plaintiff's nearly 500-page declaration—filed five days late and two days before Apple's reply deadline— appears designed (and operates) to prevent Apple from making fulsome evidentiary objections.

some unlawful reason, and her misstatements of the law. But as the case law makes clear—in a series of decisions cited in Apple's motion, none of which Plaintiff so much as acknowledged in opposition—Plaintiff "must do more than establish a *prima facie* case and deny the credibility of [Apple's] witnesses. [She] must produce specific, substantial evidence of pretext" to prevail on her retaliation claims. *Horn v. Cushman & Wakefield W.*, 72 Cal. App. 4th 798, 807 (1999); *see also Stetsyk v. Kelly Mitchell Grp., Inc.*, No. 20-cv-03941, 2021 WL 12302250, at *11, 14-15 (C.D. Cal. Apr. 16, 2021) (*Tameny*); *Cuevas v. SkyWest Airlines*, 17 F. Supp. 3d 956, 966-67 (N.D. Cal. 2014), *aff'd*, 644 F. App'x 791 (9th Cir. 2016) (Section 6310); *Cervantes v. Concentra Health Servs., Inc.*, No. 21-cv-02502, 2021 WL 6496829, at *5-6, 10 (C.D. Cal. Dec. 21, 2021) (Section 98.6) (all cited in Mot. at 11; none addressed in Opp.).[4] Her mere "belief that [Apple] had retaliated against her and [was] lying about [its] motivation" is not "substantial evidence from which a jury can find that [Apple's] reasons for [its] actions are false or pretextual." *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 398 (2006). To avoid summary judgment for Apple, she would need to produce "substantial evidence" that could show "***without*** relying upon suspicion, imagination, speculation, or conjecture[] that [Apple] acted in retaliation." *Nejadian v. Cnty. of Los Angeles*, 40 Cal. App. 5th 703, 727 (2019) (emphasis added); *see also* Mot. at 11-12 (collecting state and federal cases on point; none addressed in Opp.). The reason for this requirement is sound:

> [The] contrary argument, if accepted, would eviscerate the *McDonnell Douglas* framework for resolving claims at the [ ] summary judgment stage, because the same minimal showing required of the plaintiff to raise a prima facie case would also suffice to preclude the employer from obtaining summary judgment notwithstanding otherwise unrebutted proof of articulated legitimate reasons for the employment termination. Instead, an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce substantial additional evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual.

*Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1112-13 (2007).[5] Plaintiff does not

---

[4] The question of what an employee must show to establish pretext under various California statutes is a substantive one governed by state law. Accordingly, federal courts regularly rely on California authorities for the applicable pretext proof standard at summary judgment. *See, e.g., Frazier v. Am. Airlines, Inc.*, No. 23-55508, 2024 WL 5053250, at *1 (9th Cir. Dec. 10, 2024).

[5] Although Plaintiff cites *Loggins* throughout her brief, she also faults Apple for applying the "pre-*Lawson* framework" from *Loggins*. Opp. ¶ 59. As relevant, *Loggins* dealt with "a claim for wrongful employment termination in violation of public policy," to which the "burden shifting analysis of *McDonnell Douglas*" applies. *Loggins*, 151 Cal. App. 4th at 1108-09. *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022) addressed the different framework that applies

- 3 -

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-cv-4597-EMC]

attempt to distinguish this authority, and she cannot do so. This legal framework, combined with the undisputed evidence, requires that Apple's motion be granted.[6]

**C.      Apple's Legitimate Reasons for Terminating Plaintiff Have Not Wavered.**

**1.      Plaintiff's Intentional Disclosure of Internal Glimmer Application Images Was a Sufficient, Lawful Ground for Termination in Itself.**

**a.      Apple Has Regularly Reaffirmed Why Plaintiff Was Fired.**

Contrary to Plaintiff's suggestion, Apple has consistently explained to her, this Court, and every agency Plaintiff has sought relief from that she was terminated for leaking confidential product-related information—including, crucially, images from the Glimmer app used in internal user studies. Every piece of evidence she cites as supposedly "shift[ing]" in this regard (Opp. ¶ 16) does not – *see*:

- Dkt. 360, Ex. 29 at PDF p. 242 (Sept. 9, 2021 termination letter): "***You disclosed confidential product-related information*** in violation of Apple policies and your obligations under the Intellectual Property Agreement (IPA)."

- Dkt. 360, Ex. 26 at PDF p. 225 (Sept. 15, 2021 post-termination letter from Apple's legal counsel): "[W]e write to request that you remove ***certain images and video that you have displayed publicly in violation of your Confidentiality and Intellectual Property Agreement with Apple dated January 31, 2015 (the "IPA")***. … As you know, that image and video were generated by a confidential internal Apple application during confidential Apple-internal user studies.").

- Dkt. 360, Ex. 25 at PDF p. 210, 212 (Apple's Mar. 4, 2022 position statement to U.S. Department of Labor ("DOL") in response to retaliation claims by Plaintiff in that forum) ("Apple did not terminate Ms. Gjovik's employment because she voiced concerns, but instead because she violated Apple policy by ***intentionally disclosing confidential information about Apple products*** on Twitter and, as Apple later

---

to Section 1102.5 claims. *Loggins* remains good law for claims analyzed under the *McDonnell Douglas* framework.

[6] As to Plaintiff's Section 1102.5 retaliation claim, there is no third step at which a plaintiff can try to demonstrate pretext. *See Lawson*, 12 Cal. 5th at 712, 718. On that claim, Apple's legitimate reason for termination is enough to conclude the analysis and grant summary judgment to Apple.

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

discovered, to the press, in clear breach of her confidentiality obligations. … On August 30, 2021, Ms. Gjovik tweeted photographs and a video of herself created by the Alpha application, thus disclosing Apple confidential information.").

None of Plaintiff's attempts to manufacture a shifting rationale for termination succeeds, or establishes a factual dispute as to anything material. First, she argues that Apple cannot really have fired her for this reason because, in its initial submission to the DOL back in March 2022 (a mere six months after her termination), its counsel used code names to refer to the then-recent Apple internal studies at issue, and Apple's Rule 30(b)(6) witness could not conclusively recall at her May 2026 deposition which code name counsel had used for which study. Opp. ¶¶ 15, 17. Nothing about this suggests pretext. *Compare* Dkt. 360, Ex. 25 at PDF p. 212 (Position Statement referring to "Alpha" and "Omega" studies, both of which Plaintiff leaked information regarding) *with* Reply Decl. of Melinda S. Riechert ("Riechert Reply Decl."), Ex. A ("Warner Dep.")[7] at 234:2-6, 358-360 ("One was -- the ear scan, one was the Face ID."), 235:7-11 ("I don't want to speculate which one is which without looking at the document that describes it.").[8] Plaintiff fundamentally misapprehends the summary judgment standard. The question is not whether a corporate designee has memorized every detail of code names used in an attorney submission five years earlier; it is whether the undisputed record establishes a legitimate reason for termination. Here, it does. *See* Bertolus Decl. ¶¶ 6-10, 12; *accord* Warner Dep. 45:23-46:11, 97:1-14 (articulating same rationale).

Next, Plaintiff takes issue with what she believes is an inadequately detailed explanation of why the images she posted from Glimmer were confidential. *See* Opp. ¶ 17. But Apple has offered extensive explanations as to why it regarded these images as confidential. *See, e.g.,* Bertolus Decl.

---

[7] Apple submits with this reply—and, unlike Plaintiff, properly excerpts and marks—portions of deposition testimony needed for context and completeness vis-à-vis the snippets Plaintiff included or characterized in her opposition and late-filed declaration. *See* Fed. R. Evid. 106; *Goins v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH, 2024 WL 3331655, at *29 (N.D. Cal. July 8, 2024), *aff'd*, No. 24-4842, 2026 WL 84715 (9th Cir. Jan. 12, 2026); *accord* Fed. R. Civ. P. 32(a)(6).

[8] As discussed below*,* prior to leaking confidential images of the internal Glimmer app, Plaintiff also posted an internal email inviting her to participate in an undisclosed study related to AirPods involving studies of ears. *See, e.g.,* Dkt. 142 (Fifth Am. Compl.) at PDF p. 38 (Figure 3). That she committed this additional misconduct—and that Apple described that conduct as part of the sequence leading to her termination—does not undermine the legitimacy of Bertolus's decision to terminate her after viewing images she posted from Glimmer related to the FaceID user study.

¶¶ 4, 6-7; Aloe Decl. ¶¶ 7-11. Plaintiff's unwillingness to accept them does not transmute a legitimate reason for termination (violation of company policy) into something actionable. *See Wilkin v. Cmty. Hosp. of Monterey Peninsula*, 71 Cal. App. 5th 806, 823 (2021); *Wills v. Superior Court*, 195 Cal. App. 4th 143, 171 (2011) (both cited in Mot. at 8; neither addressed in Opp.).

Plaintiff then faults Bertolus for not being able to recall at his deposition nearly five years post-termination exactly which of the multiple confidential images from the Glimmer app he reviewed before determining she had violated policy and should be terminated. Opp. ¶ 18. Her argument appears to be that because she made *so many* unauthorized disclosures—and, to be clear, there is no dispute that she made *all* of the at-issue posts containing internal Glimmer app images— she can evade judgment by attempting to create confusion about which image(s) which person viewed at which specific point in time. Plaintiff is wrong. There is no dispute that Bertolus saw images she had leaked from the Glimmer app and fired her for that reason. *See* Bertolus Decl. ¶¶ 4, 6 ("I saw those images myself before I made the decision to terminate Ms. Gjovik's employment."); *see also* Riechert Reply Decl., Ex. B ("Bertolus Dep.") 71:23-72:10 ("I remember quite vividly seeing a picture in black and white, which I believe was a screenshot of an internal tool as part of a user study."); *see also id.* 33:8-19, 73:8-14, 99:4-15, 108:1-15, 123:7-13. Nothing in Warner's Rule 30(b)(6) testimony is to the contrary. *See* Warner Dep. 52:5-23 ("There was at least one Twitter post. … I don't have the exact number, but there was at least one.").[9]

Plaintiff then pivots to arguing that Apple's DOL Position Statement somehow gave a different account of why she was fired. Opp. ¶ 23. Not so. For example, Plaintiff claims that "Apple's evidence provided to DOL did not include photographs" in an effort to suggest the termination rationale has shifted. *Id.* But that allegation is false, and Plaintiff knows it. Apple provided versions of her tweets disclosing confidential product-related images to the agency (albeit

---

[9] Plaintiff misapprehends the import of Apple noting in its motion that, in addition to the public posts she made (which blurred some details from the Glimmer app images), she provided unblurred Glimmer app images to a reporter and asked the reporter to blur certain details. Opp. ¶ 19 (citing Aloe Decl. ¶ 11). This does not suggest the images she posted were not confidential; it underscores that she was aware that the *additional* information she shared with a reporter was. *See* Aloe Decl. ¶ 11; Mot. at 3 n.2 (citing admissions). Likewise, Plaintiff's claim that there are disputes as to, *inter alia*, whether the images were uploaded, how data was uploaded, and whether Plaintiff requested the images be deleted (*see* Opp. ¶¶ 20-22) cannot create any dispute that the images she posted were confidential.

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

with appropriate redactions), and Plaintiff used Apple's submission as a deposition exhibit in this case. *See* Warner Dep., Ex. E4 (relevant portions). She also claims that the Position Statement's representation that "Alpha" was a user study is somehow inconsistent with Dr. Aloe's testimony that Glimmer was an application used in various user studies, not itself a user study. Again, there is no inconsistency. *Compare* Dkt. 360, Ex. 25 at PDF p. 211 *with* Aloe Decl. ¶ 4.[10]

As a last-ditch effort to evade the core facts, Plaintiff tries to create the impression of inconsistency in how Apple has referred at various points to The Verge article. Opp. ¶¶ 26-27. But again, there has been no inconsistency. Apple knew pre-termination that images she leaked appeared not only on Plaintiff's Twitter account but also in a Verge article. Warner Dep. 79:7-20, 81:18-22; *see also* Bertolus Dep. 33:8-19 ("I saw examples of – of what you leaked both on social media and also in articles in the press, and that prompted the termination."), 77:20-24, 78:4-13 ("I did mention earlier a Verge article."), 116:7-25. What Apple did not know at the time of Plaintiff's termination is that she had shared ***additional*** details regarding the internal Glimmer app with the reporter—including "specific details about how the Face ID algorithm functions and how Apple determines what counts as a 'success' in an attempted Face ID recognition" (Aloe Decl. ¶ 11)— beyond what was included in the article itself. This later discovery of additional, even more robust disclosures (which Plaintiff concedes she made) further supports Plaintiff's termination and supports Apple's after-acquired evidence defense; it is not evidence of any inconsistent termination rationale. Apple has consistently explained its legitimate reason for firing her.

### b.    Apple's Reason for Firing Plaintiff Was Lawful.

Plaintiff next suggests that she could not have been terminated for leaking Glimmer app images because, in her view, "Apple's confidentiality theory itself is unlawful." Opp. ¶¶ 24-25; *see also* ¶¶ 22, 55. She appears to argue—by incanting a parade of statutes, cases, and FTC enforcement actions with minimal if any analysis—that a company cannot lawfully expect its employees to keep

---

[10] Plaintiff also confusingly references testimony about a 2017 form, citing to Exhibit C of Dr. Aloe's declaration (Opp. ¶ 23)—but Exhibit C is an Informed Consent Form ("ICF") Plaintiff undisputably signed in 2019 that Dr. Aloe declared "remained in effect as of September 2021," when Plaintiff leaked images and was terminated. Aloe Decl. ¶ 6, Ex. C. She also attempts to manufacture a dispute over whether the images she posted were ever uploaded to Apple (*see* Opp. ¶¶ 20-21)—but none of her speculation creates any genuine dispute as to the fact that they were not (contrary to her assumption), because she did not choose to upload them. Aloe Decl. ¶¶ 7, 12.

product-related information confidential or discipline them for leaking those details. Once again, she is wrong. California Civil Code section 1668 does prohibit contracts that would "exempt one from … violation of the law"; nothing in Plaintiff's IPA or the informed consent she signed has that intent or effect. The cases she cites simply do not support the sweeping claims she makes. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988) (affirming demurrer to wrongful termination claim; no discussion of "contractual confidentiality"); *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980) (no discussion of permissible confidentiality agreements); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (2008) (distinguishing impermissible non-competes from contracts that "protect trade secrets or confidential proprietary information").

In Plaintiff's view, so long as an employee believes her employer is doing something unethical or illegal, she can publicly disclose even the most sensitive trade secrets. But that is not the law, and Plaintiff's opposition does not meaningfully address authorities cited by Apple making clear this point. *See, e.g., Barbee v. Household Auto. Fin. Corp.*, 113 Cal. App. 4th 525, 533, 536 (2003) (affirming summary judgment on wrongful-termination and privacy claims by employee who violated company policy); *Erhart v. BofI Holding, Inc.*, No. 15-cv-02287, 2017 WL 588390, at *16 (S.D. Cal. Feb. 14, 2017) ("leaks to the media [of information subject to confidentiality agreement] are not protected" by whistleblower laws); Cal. Lab. Code § 232.5 (statutory protection for working conditions disclosures "not intended to permit an employee to disclose proprietary information … without the consent of his or her employer").[11]

### 2.    Plaintiff's Other Policy Violations Also Supported Termination.

Plaintiff attempts to distract from the straightforward facts by suggesting that, because various litigation filings and witnesses noted other misconduct that ***also*** supported her termination, Apple cannot establish that its reasons for firing Plaintiff were legitimate. Opp. ¶¶ 28-29. Not so.

---

[11] In any event, Plaintiff cannot establish that the Glimmer application violated her privacy. *See Feminist Women's Health Ctr v. Sup. Ct.*, 52 Cal. App. 4th 1234, 1240-42, 1247-49 (1997); *Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1051 (2011). Plaintiff does not deny that she signed the consent form at issue (Aloe Decl. Ex. C), and she tries to distinguish these cases by arguing they do not involve attempts to "shield evidence of unlawful conduct from disclosure to enforcement bodies." Opp. ¶ 55. But neither does the ICF here. And Plaintiff was not terminated for complaining to an enforcement body; she was terminated for ***publicly*** posting confidential product-related information. That difference—which Plaintiff appears not to appreciate—is critical.

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

Bertolus—who decided to fire Plaintiff after learning of her leaks of confidential product information—made clear that "[t]he decision to terminate Ms. Gjovik's employment was mine and based on my own firsthand review of the images Ms. Gjovik posted publicly, my own independent assessment that her conduct constituted an egregious violation of Apple policies, and the additional facts [ ] concerning her refusal to cooperate with Apple's investigation and her misleading partial disclosure to Mr. Okpo." Bertolus Decl. ¶ 12; *accord* Bertolus Dep. 38:23-39:12, 70:2-12, 77:20-24, 78:4-13. But he has also consistently made clear that "***[t]he leak on Twitter of that internal tool was so egregious that that in itself warranted termination***. The fact that you did not cooperate was an addition to that, but not the main reason. The main was your leak." Bertolus Dep. 99:4-15; *see also id.* 132:4-5, 132:14-16 ("The primary reason you were terminated is because you violated your confidentiality agreement when you posted those pictures on Twitter.").

For example, Plaintiff attempts to argue that Apple has "revers[ed]" its position regarding her disclosure of an email with details about an internal AirPods study—which she publicly revealed on Twitter two days before posting the Glimmer app images and a link to The Verge article. Opp. ¶¶ 13-14. That Apple mentioned those disclosures in agency submissions and filings as background on the lead up to Plaintiff's termination does not somehow undermine the legitimacy of the reasons for which she was terminated. Apple's Rule 30(b)(6) witness did not "disclaim" any prior position of the company; she testified that "images that you had posted were confidential" but that "[y]ou speaking about the ear scan or being in the study was not the basis for your termination, and that by itself is not confidential." Warner Dep. 94:19-95:2. This is entirely consistent with Apple's position: expressions of concern about workplace issues (even if unfounded) are not confidential, but images of internal documents disclosing study details and applications are.

Plaintiff goes to great lengths to suggest that the additional reasons Bertolus cited—including that she had provided misleading information to the Apple investigator looking into her parade of complaints as of August 2021—were somehow unlawful. But she does so only by grossly mischaracterizing the actual evidence. Contrary to Plaintiff's allegations (*see* Opp. ¶¶ 9-12), Apple has never argued that making a good faith complaint (including one that alleges criminal violations or sexual harassment) is misconduct. The undisputed evidence establishes that Apple encourages

- 9 -

the reporting of such concerns, and that Apple responded to Plaintiff's concerns and communicated with her about them. *See* Bowman Decl. Ex. B at PDF p. 17 (policy encouraging employees to report harassment); Dkt. 368, Ex. E at 38:19-40:10, Ex. AA. But Bertolus did determine that Plaintiff had provided misleading information to the investigator and that is not protected conduct.[12]

Specifically, Plaintiff argues that "Apple's own MSJ identified Plaintiff's invocation of a criminal statute in her harassment complaint as misconduct." Opp. ¶ 9. Plaintiff does not point to where in Apple's motion the company allegedly did so – because it never did. Apple's Rule 30(b)(6) witness did testify that Plaintiff used the word "pimping" in her internal Issue Conformation (and Apple's motion had made the same point) and agreed that Penal Code section 266h uses that same term. Warner Dep. 189:5-13, 190:9-191:3. But Warner's testimony was crystal clear: "I did not state that you simply citing pimping or pandering is misconduct. … I did not say your citing the statute or any legal argument you made was the basis for the termination." *Id.*; *see also id.* 184:22-186:17. Plaintiff's attempt to suggest otherwise is baseless.

Plaintiff also wildly misrepresents the evidence when she suggests that "Apple now claims reporting sex crimes is misconduct." Opp. ¶¶ 30-31. Nothing supports that salacious allegation. Instead, Bertolus made clear that he viewed Plaintiff as having attempted to mislead Apple's investigator by claiming that a text exchange showed one thing when the full thread clearly did not, and refusing to meet with the investigator to discuss the inconsistency. Bertolus Decl. ¶ 8. Courts regularly hold that employers are within their rights to discipline or terminate employees who they believe attempted to mislead during internal investigations—even when those investigations concern alleged harassment, discrimination, or other issues about which employees are entitled to complain. *See Joaquin v. City of L.A.*, 202 Cal. App. 4th 1207, 1221, 1226 (2012) (cited in Mot. at 10; not addressed in Opp.) (reversing jury verdict on retaliation claim; finding that employer "did not recommend termination merely because [the plaintiff] had reported sexual harassment, but rather because it concluded that he had fabricated" his account, and holding that "an employer may

---

[12] Contrary to Plaintiff's claim (*see* Opp. ¶ 30), she was not terminated for not producing texts she claims she did not have access to, but rather for misleadingly describing what had occurred. Nor would it matter if Bertolus thought the texts involved a chef rather than the sous chef; that would not negate his conclusion that Plaintiff had attempted to mislead the investigator.

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

discipline or terminate an employee for making false charges, even where the subject matter of those charges is an allegation of sexual harassment"); *McGrory v. Applied Signal Tech., Inc.*, 212 Cal. App. 4th 1510, 1528 (2013) (cited in Mot. at 8; not addressed in Opp.) (FEHA "does not shield an employee against termination or lesser discipline for either lying or withholding information during an employer's internal investigation of a discrimination claim"). As *Joaquin* explained:

> An employer is forbidden to discriminate against an employee who participates in an investigation of employment discrimination. But participation doesn't insulate an employee from being discharged for conduct that, if it occurred outside an investigation, would warrant termination. This includes making frivolous accusations, or accusations grounded in prejudice. For it 'cannot be true that a plaintiff can file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about sexual harassment. To do so would leave employers with no ability to fire employees for defaming other employees or the employer through their complaint when the allegations are without any basis in fact.' ... '[The antidiscrimination laws were] not designed to "arm employees with a tactical coercive weapon" under which employees can make baseless claims simply to "advance their own retaliatory motives and strategies."

*Joaquin*, 202 Cal. App. 4th at 1225-26 (quoting *Hatmaker v. Mem. Med. Ctr.*, 619 F.3d 741, 745-46 (7th Cir. 2010)).[13] Plaintiff is once again wrong in suggesting that, so long as she couches her conduct in an allegedly protected complaint, she can do whatever she wants without repercussion. That is simply not the law. Bertolus properly found her misleading conduct also supported termination. *See* Mot. at 11 (citing Bertolus Decl. ¶¶ 6-8, 12), 19 (citing Bertolus Decl. ¶ 8, Ex. A).

### D.      None of Plaintiff's Further Arguments Salvages Her Claims.

#### 1.      Apple's Defense Does Not Depend on the Investigation Over Which It Has Consistently and Appropriately Asserted Privilege.

Plaintiff's opposition continues to wrongly insist that Apple's reasons for firing her "rest on investigation outputs"—and that, because Apple has asserted its investigations into Plaintiff's disclosures were privileged, it is forbidden from defending itself against her claims. Opp. ¶ 32. Plaintiff is wrong. Bertolus made the decision to terminate based on his own review of evidence of her misconduct (*see* Bertolus Decl. ¶¶ 6-8, 12); the fact that he had also had privileged

---

[13] Importantly, this principle applies even if the employer is wrong about whether the employee has fabricated evidence—so long as a sincere belief that the evidence was fabricated, rather than some unlawful reason, is the basis for the adverse employment action. *See Joaquin*, 202 Cal. App. 4th at 1223; *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 433 (2007) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)); *Featherstone v. S. California Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1159-60 (2017).

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

conversations with legal counsel, human resources, and employee relations (*id.* ¶ 5) is of no moment where he directly evaluated the evidence and determined the consequence.

None of Plaintiff's authorities is to the contrary. *Cotran* is inapposite because the court in that case specifically "granted review to clarify the role of the jury in litigation alleging breach of an implied contract not to terminate employment except for good or just cause," and discussed the adequacy of a pre-termination investigation in the specific context where the employer needed to prove "good cause." *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93, 95 (1998). Here, the Court dismissed Plaintiff's claims for breach of implied contract (Dkt. 73 at 40-41) and breach of implied covenant (Dkt. 112 at 37-38). Plaintiff was an at-will employee, and Apple need not (and is not relying on a privileged investigation to) establish good cause for firing her. *Nazir v. United Airlines*, 178 Cal. App. 4th 243 (2009), is irrelevant for the same reason.[14] Finally, in *Wellpoint Health Networks, Inc. v. Sup. Ct.*, 59 Cal. App. 4th 110 (1997), the court discussed the consequences of "the employer's injection into the lawsuit of an issue concerning the adequacy of the investigation" undertaken by the employer. *Id.* at 128. Here, by contrast, Apple has consistently disclaimed reliance on its privileged investigation.

### 2.    Plaintiff's Insistence Dr. Aloe Should Have Been Fired Is Irrelevant.

Plaintiff next attempts to shoehorn her claims into the framework of a discrimination claim and argue that Apple engaged in "disparate treatment" by firing her but not Dr. Aloe. Opp. ¶¶ 40-45. None of the cases is on point because Plaintiff has not brought a discrimination claim—and even if she had it would be her burden, not Apple's, to provide evidence that individuals "similarly situated in all material respects" were treated differently.

Even if this framework were relevant—and it is not—the undisputed evidence supports Apple, not Plaintiff. Apple has consistently noted that Plaintiff's termination was consistent with Apple policies, which make clear that "[c]onduct that may warrant immediate termination" includes "[v]iolating confidential, proprietary, and trade secret information obligations[.]" Bowman Decl.

---

[14] Contrary to Plaintiff's claim, neither *Nazir* nor *Mendoza v. Western Med. Ctr. Santa Ana*, 222 Cal. App. 4th 1334 (2014), demonstrates that *Cotran* applies to at-will employees. Both decisions describe *Cotran* as addressing the "good cause" standard for termination—which is not the standard here. *See Nazir*, 178 Cal. App. 4th at 271, 278; *Mendoza*, 222 Cal. App. 4th at 1343.

Ex. C. And Apple has explained for years that her termination "was consistent with Apple's practice of terminating other employees who violated their confidentiality agreements by disclosing unreleased product information." Dkt. 360, Ex. 25 at PDF p. 218; *see also id.* (Mar. 4, 2022 DOL Position Statement: "[S]ince 2017, Apple has terminated the employment of at least nine employees for violating their confidentiality obligations."); Ex. 24 at PDF p. 205 (Aug. 4, 2025 Resp. to Interrogatory No. 1: "Apple treated Gjovik the same as other employees who similarly failed to protect Apple's intellectual property and improperly disclosed confidential product information without authorization."). Apple produced termination letters for fourteen of them and admissible, sworn testimony regarding their terminations. Bowman Decl. ¶ 7, Exs. F-R; Bertolus Decl. ¶ 6. Apple's evidence is more than sufficient to demonstrate its reasons were legitimate.

Plaintiff, by contrast, points at Dr. Aloe and claims certain articles he authored about his work on facial recognition technology (dating back to graduate school) should have led to his termination.[15] But none of these articles contains images of the internal Glimmer app, and Plaintiff provides no evidence that anyone at Apple believed anything he wrote revealed anything confidential. The undisputed evidence is that Dr Aloe ***never*** disclosed confidential information or images, while she did; Dr. Aloe explained these distinctions repeatedly. Aloe Decl. ¶¶ 7-11, 14 (images Plaintiff leaked "showed information not visible to Apple's customers, competitors, or hackers about how the camera used for Face ID operates and the data Apple uses to develop the algorithm behind Face ID"); *accord* Dkt. 368 Ex. F at 98:2-101:18. Her insistence that Apple should have treated Dr. Aloe's blog posts the same as her intentional leaks of internal development images is irrelevant; Apple is within its rights to view her conduct as materially different.

### 3. Plaintiff Has Not Produced "Specific, Substantial Evidence" That Bertolus's Stated Reason for Terminating Her Is False.

Plaintiff continues to insist that, contrary to undisputed sworn testimony from Bertolus, he did not really make a decision to fire her based on his own observations and assessment of her misconduct. Opp. ¶¶ 46-52. But she has no "specific, substantial evidence of pretext" (*Horn*, 72

---

[15] She buries two articles from Dr. Aloe as exhibits to her belated May 26 declaration, along with three printouts from Apple's website related to FaceID. Dkt. 379 Exs. AAA-EEE, PDF pp. 338-69. Tellingly, none of these articles contains images from any internal development applications.

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

Cal. App. 4th at 807) other than her "belief that [Apple] had retaliated against her and [was] lying about [its] motivation." *McRae*, 142 Cal. App. 4th at 398. This is not enough to avoid judgment.

Contrary to Plaintiff's position, *Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444 (2020) is on point. In *Choochagi*, "the decision to terminate [the plaintiff's] employment was informed by firsthand observations," and the court found that fact rendered a speculative foray into a would-be cat's paw argument "inapplicable" even though "the evidence showed that [animus-based] feedback influenced, to some degree, these decision makers." *Id.* at 461. To be clear, Plaintiff has no evidence of any animus on the part of ***anyone*** at Apple involved with the investigation into her misconduct—but even if she did, that would not undermine Bertolus's independent determination that she disclosed confidential product-related information (which she admits) and that those disclosures were terminable misconduct (which he was entitled to conclude).

Plaintiff instead repeats a pattern by selectively misquoting Bertolus and conjuring a six-minute decision where the evidence shows otherwise. Bertolus testified that he "only worked with the lawyers" to prepare for his April 2026 deposition (Bertolus Dep. 13:19-22; cited (by wrong page:line number) in Opp. ¶ 46)—not that he "only worked with the lawyers" back in September 2021 when deciding Plaintiff's misconduct warranted termination. He never testified that he received an email from Megan Bowman and decided on that basis alone, just "six minutes later," to terminate Plaintiff. Opp. ¶¶ 46, 47. On the contrary, he "had multiple communications with legal counsel, human resources, and employee relations about [Plaintiff's] conduct" in the first ten days of September 2021, including a discussion with Bowman earlier on September 9 regarding Plaintiff's refusal to speak with Apple's investigator and Bertolus's "decision to terminate [Plaintiff's employment]" that Bowman subsequently memorialized in an email. Bertolus Decl. ¶¶ 5, 9. He was not reliant on someone else's description of the confidential images she had posted, but rather his "own firsthand review of the images." *Id.* ¶ 12. And, contrary to Plaintiff's claim, there is evidence that Bertolus "did not personally know of agency complaints" (Opp. ¶ 50): his sworn statement that he did not. Bertolus Decl. ¶ 11.[16]

_____

[16] Among the only "evidence" Plaintiff cites is her own email stating her view that Apple believed it would get sued as a result of her complaints. *See* Opp. ¶ 48 (citing Warner Dep. 339:19-340:9).

APPLE'S REPLY IN SUPP. OF
MOT. FOR SUMM. J.
[23-CV-4597-EMC]

Tellingly, Plaintiff's opposition does not engage with clear case law underscoring that "[a]n employee who engages in protected activity is not insulated from adverse action for violating workplace rules, and an employer's belief that the employee committed misconduct is a legitimate [ ] reason for adverse action." *Joaquin*, 202 Cal. App. 4th at 1223 (citing *Richey v. City of Indep.*, 540 F.3d 779, 784 (8th Cir. 2008)); *see also Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 354 (2008); *Nash-DeCamp Co. v. Agric. Lab. Rels. Bd.*, 146 Cal. App. 3d 92, 103 (1983) (all cited in Mot. at 10; none addressed in Opp.). There is no dispute here that Plaintiff chose to post confidential internal Apple product images on X, and that Bertolus reviewed those posts and fired her. Plaintiff cites no cases suggesting that an employee's mere speculation that a decision-maker's firsthand review of the facts was not genuine can defeat summary judgment, because there are none.

### 4.    Plaintiff Was Not Entitled to Leak Confidential Product Information.

Plaintiff closes her opposition by providing (without admissible evidence) her retelling of a Senator's 2017 inquiry, and claiming again that her disclosures of Apple product information were somehow protected because she believed them to be in service of "expos[ing] Apple" to what she seemed to believe would be "substantial enforcement and consumer liability." Opp. ¶¶ 53-54. But this is just a repeat of her earlier argument that so long as she declared herself a "whistleblower," she was free to disclose confidential information about Apple's product development to the public and the press. That argument is simply wrong, for all of the reasons explained above. She did not have *carte blanche* to publicly disclose confidential product-related information; she did so anyway; and her termination was justified accordingly.

### III.    CONCLUSION

Apple's motion should be decided based on the evidence before the Court—not allegations, or speculation, or surmise. On that basis, Apple respectfully requests that the Court should grant its motion and enter judgment in its favor on all four of Plaintiff's remaining retaliation-based claims.

Dated: May 28, 2026                              ORRICK, HERRINGTON & SUTCLIFFE LLP


                                    By:        */s/ Melinda S. Riechert*
                                               MELINDA S. RIECHERT
                                        Attorneys for Defendant APPLE INC.

4141-2407-2296                          - 15 -