JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK, | Case No. 23-cv-4597-EMC |
| Plaintiff, | **DECLARATION OF MELINDA S. RIECHERT IN SUPPORT OF DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| APPLE INC., | |
| Defendant. | Date:      June 11, 2026<br>Time:      1:30 p.m.<br>Dept:      Courtroom 5, 17th Floor<br>Judge:    Honorable Edward M. Chen |

I, Melinda S. Riechert, declare as follows:

1.      I am an attorney admitted to practice law in the state of California and am a partner at the firm Orrick, Herrington & Sutcliffe LLP. I am counsel for Defendant Apple Inc. in this action. I submit this declaration in support of Apple's Reply in Support of its Motion for Summary Judgment. I defended the deposition taken by Plaintiff of Apple through its Federal Rule of Civil Procedure 30(b)(6) witness Adelmise Warner and my partner Jessica Perry defended the deposition of Yannick Bertolus. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently thereto.

2.      A true and correct copy of excerpts from the transcript of the May 12, 2026 deposition of Apple through its representative Adelmise Warner—which includes (i) Ms. Warner's errata, which was timely submitted to correct a transcription error, and (ii) excerpts from Exhibit E4 to that deposition—is attached as **Exhibit A**.

3.      A true and correct copy of excerpts from the transcript of the April 17, 2026 deposition of Yannick Bertolus is attached as **Exhibit B**.

4.      Apple submits these portions of deposition testimony for context and completeness vis-à-vis the snippets Plaintiff included or characterized in her opposition and late-filed declaration. *See* Fed. R. Evid. 106; *Goins v. United Parcel Serv. Inc.*, No. 21-CV-08722-PJH, 2024 WL 3331655, at \*29 (N.D. Cal. July 8, 2024), *aff'd*, No. 24-4842, 2026 WL 84715 (9th Cir. Jan. 12, 2026); *accord* Fed. R. Civ. P. 32(a)(6).

I certify under penalty of perjury and pursuant to the laws of the United States that the foregoing is true and correct.

Executed May 28, 2026 in Menlo Park, California.

/s/ Melinda S. Riechert
Melinda S. Riechert

RIECHERT DECL. ISO OF APPLE'S
REPLY IN SUPP. OF MSJ
[23-CV-4597-EMC]

# Exhibit A

Deposition of

# Adelmise R. Warner

Apple Inc.'s 30(b)(6)

May 12, 2026

Ashley Gjovik

vs.

Apple Inc.

**30(b)(6)**



Case 3:23-cv-04597-EMC    Document 381    Filed 05/28/26    Page 5 of 52

30(b)(6)                                                    Ashley Gjovik vs.
Adelmise R. Warner                                              Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M. GJOVIK, an individual,

       Plaintiff,

                   3:23-CV-04597-EMC

  vs.

APPLE INC., a corporation,

       Defendant.

_____

REMOTE DEPOSITION OF APPLE INC.'S 30(b)(6)

ADELMISE R. WARNER

VIDEO-RECORDED VIA ZOOM

Tuesday, May 12, 2026

Reported by:
Layli Phillips
RPR, CRR, CSR No. 14402

Job No. 10190735

**30(b)(6)**

**Adelmise R. Warner**                                    **Ashley Gjovik vs.
                                                          Apple Inc.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M. GJOVIK, an
individual,

                Plaintiff,

                                3:23-CV-04597-EMC

        vs.

APPLE INC., a corporation,

                Defendant.
_____

        Remote Deposition of ADELMISE R. WARNER, taken
on behalf of Plaintiff, beginning at 9:09 a.m. and
ending at 5:00 p.m., on Tuesday, May 12, 2026, appearing
remotely via Zoom before Layli Phillips, RPR, CRR,
Certified Shorthand Reporter No. 14402.

REMOTE APPEARANCES:


For the Plaintiff:
     A.M. GJOVIC CONSULTING, LLC
     By: ASHLEY M. GJOVIC
     In Pro Per
     2108 N Street
     Suite 4553
     Sacramento, California 95816
     (415) 964-6272
     ashleymgjovik@protonmail.com


For the Defendants:
     ORRICK, HERRINGTON & SUTCLIFFE LLP
     By: MELINDA S. RIECHERT
     Attorney at Law
     1000 Marsh Road
     Menlo Park, California 94025
     (650) 614-7423
     mriechert@orrick.com


ALSO PRESENT: Isela Perez, Apple in-house counsel


(Video-recorded via Zoom by Ms. Gjovik.)

Case 3:23-cv-04597-EMC   Document 381   Filed 05/28/26   Page 8 of 52

30(b)(6)                                              Ashley Gjovik vs.
Adelmise R. Warner                                      Apple Inc.

Absolutely not true.

BY MS. GJOVIK:

Q. Okay. Anyway, so sorry if some of my questions seem odd. They are all being asked for some reason, and I will try to ask them more clearly when you explain if they're not clear.

Okay. But after your preparation so far, Ms. Warner, do you feel confident you are able to fully testify on behalf of Apple Inc. about each of the topics that you've been designated for and we just discussed and confirmed?

A. Each of the topics as discussed and I had answered, yes.

Q. Okay. Thank you.

Okay. And it's 9:45. We can plan to take a break at like 10:00, take like a five-minute break if that sounds good at 10:00.

A. That's fine. Thank you.

Q. Yeah.

So just to start, I thought it might be helpful to start with some like high-level questions before I get into the more details of the categories.

So the first one would just be, Ms. Warner, can you please describe your -- Apple Inc.'s position of why Ms. Gjovik was terminated -- her employment was

Adelmise R. Warner

terminated on September 9th, as of September 9th, 2021?

A. There are two questions there, and it's a bit convoluted.

But my understanding and Apple's position is that you were terminated primarily because you had disclosed confidential information publicly and, in addition to that, you also had refused to cooperate with investigators in the course of an investigation that was being conducted and, in addition, you had provided information that was misleading.  And all of those acts were in violation of Apple policies.

Q. Okay.  Thank you.

You mentioned it was convoluted, which indicates maybe you didn't understand.

So can you help me understand what was confusing about my question?

A. You had a few things in there:  You were terminated on that date and as of that date and what Apple's understanding.

Q. Yeah.  So this is like the question of the lawsuit.  So I just want to make sure we have a really clean answer.

What I was going at is Apple's legitimate justification for terminating me at the time it terminated me.  That's Apple's defense.

decision was based on the images that you had specifically on Twitter that, as I said, Mr. Bertolus reviewed.

Q. Thank you.

And can you confirm the termination -- as of the date of the termination, it was just one Twitter post, is that correct, that was the -- giving rise to the termination?

A. There was at least one Twitter post.

Q. When you say at least, is Apple uncertain how many Twitter posts were considered?

A. I don't have the exact number.  You had posts and you had images that they looked at.  So the images were on Twitter.  And there were various of them.  But I cannot confirm for you how many you had posted that we were not aware of.

Q. Ms. Warner, that was not my question.

My question is when Apple was deciding to terminate my employment on September 9th, 2021, how many Twitter posts did they consider as the basis for the termination of that employment?

A. I don't have the exact number, but there was at least one.

Q. Okay.  And then can you confirm that as of the date of my termination, Apple is currently unsure how

things that are wrong.  Apple changed its reasons, that's just not true.

So just ask the question, did Apple consider "The Verge" article, yes or no.  And then she'll answer that question.

BY MS. GJOVIK:

Q. Ms. Warner, did Apple consider that "Verge" article called "Apple Cares About Privacy Unless You Work For Apple" when it decided to terminate my employment?

A. Apple considered the images and videos that you had posted or included, shared on Twitter and "The Verge" article.

Q. At the time it terminated me on September 9th, 2021, correct?

A. I've already answered that.  That was part of the reasons for your termination because there was -- it came to our attention that you had posted, again, the images, which, again, we can look at them, on Twitter, and you also had "The Verge" article.

Q. This is where I just want to clarify because you said also "The Verge" article.

So when Apple terminated my employment on September 9th, 2021, was one of the reasons for that termination content I shared with "The Verge" and where

A. I've already answered; the images that you had shared on Twitter, which I understand you also had videos and images, similar images shared on -- with "The Verge," that was the basis for your termination.

Q. You're not answering my question.  I'm not asking about Twitter.  I'm asking about "The Verge" article, and you continue to answer this with, like, a caveat on "The Verge" that's not clear.

I'm asking -- I would like a direct answer about this "Verge" article if the reason I was terminated on September 9th, 2021, included images I shared and that were included in that "Verge" article.

A. I've already answered the question, Ms. Gjovik.

Q. Is the answer yes?  Because I don't know what the answer is based on your prior answers.

A. I've given --

MS. RIECHERT:  You can answer it one more time.

Did Apple consider the images in "The Verge" article at the time it terminated her employment?

THE WITNESS:  The -- Apple did consider the images and videos that you had posted included in "The Verge."

BY MS. GJOVIK:

Q. Sorry.  I'm not talking about posted.  I didn't post anything to "The Verge."  "The Verge" is press.

BY MS. GJOVIK:

Q. Did Apple watch the video in "The Verge" article prior to terminating me?

MS. RIECHERT:  Same objection.  And same instruction.

BY MS. GJOVIK:

Q. Okay.  Did Apple see me linking to that "Verge" article in the social media posts I made prior to my termination?

MS. RIECHERT:  Same objection.  Same instruction.

BY MS. GJOVIK:

Q. Okay.  You also mentioned something about ear scans.  Was one of the reasons that Apple terminated me on September 9th, 2021, my complaints about ear scans?

MS. RIECHERT:  Objection.  Misstates the testimony.

A. That was not my testimony.

Q. Did Apple believe that me posting about those ear scans was me sharing Apple confidential information?

A. What I've described before, I mentioned in the studies that you had done, the ear scans one, the concerns that were raised, then the Face ID.

Again, images that you had posted were confidential.  You speaking about the ear scan or being

in the study was not the basis for your termination, and that by itself is not confidential.

Q. Okay.  Thank you.

And then the ear scans, are you saying that the images I shared related to ear scans were confidential? You said images.  Can you clarify?

A. I'm talking about the images for Face ID which was the nature of your termination.

Q. Okay.  Was one of the reasons I was terminated as of September 9th, 2021, related to ear scans?

MS. RIECHERT:  Objection.  Just asked and answered.

BY MS. GJOVIK:

Q. Apple previously filed things to the court saying it was one of the reasons, and it appears to be backtracking.  So it's very material, and I would like a clear answer on this.

MS. RIECHERT:  You got a clear answer.

BY MS. GJOVIK:

Q. What is the answer?

A. It's on the record.

Q. Is it no?  Is that the answer?

A. I've already answered that.

Q. Okay.  So, okay, let's go to the second bucket, something about me refusing to cooperate.

So I just want to -- this is another one that I just want to make sure we have the record fully straight from Apple that that second bucket, then, of refusal to cooperate would actually, then, be two factual scenarios giving rise to the reason for termination?  Please confirm.  It would be the exchange with Mr. Kagramanov and the exchange with Mr. Okpo.  Is that correct?

A. Those were both additional facts that Mr. Bertolus considered ultimately.  The primary reason, which I've already testified about, was your disclosure of confidential information; and your failure to cooperate in the investigation, meaning speaking with investigators, were additional factors he considered, yes.

Q. Okay.  And so just speaking with investigators, we have Mr. Kagramanov and Mr. Okpo.  And both of these -- it is Apple's position that both of these, the misconduct is that I requested a written record and resisted getting on a phone or Webex for an oral-only conversation.  Is that correct?

A. Both of those indicated that you -- because you refused to speak with both of these individuals who reached out to you led to the conclusion that you did not fully cooperate in the investigation.

Q. Okay.  But when you say speak, you mean orally,

Do you know what she means by redacting?

A. Again, not having spoken with Ms. Bowman directly about this, what I was sharing earlier including actively redacting relevant information from the documents that you presented would relate to the text messages we talked about. You give one part of it, and then there was a fuller text thread.

Q. Yeah. I had provided what I had. I didn't have the other stuff.

But was there an allegation I redacted what I provided, like put black boxes on top of text or?

A. No. There's no allegation you put black box around the text. She may be using a term "redacted" in a different way than how you are referring to it. Again, I can't speak to what she meant by putting it there.

But the point of that third reason for the termination was you provided the text that was limited, and then there was a fuller text thread, which I've already testified about.

Q. Yeah.

And back to that, so is there anything else you want to add for Apple's rationale for that third bucket of things being misconduct, or was that your complete answer prior? We kind of cut off a little early on

that.  I want to give you a chance if there's any other information you want to provide.

A. We did, and we talked a lot about that, and what I was trying to explain -- and I thought you were going to come back to the text -- but regardless, in your issue confirmation, you did characterize the interaction with Dan and Andrew and the chef at the restaurant, I believe your word in the issue confirmation, you used some term that he was pimping you and pressured to give Andrew your phone number, you had no interest in Andrew, and you had provided Okpo that single thread of text, which I've shared.

But the fuller text when you read it and the back and forth indicated a different story, which is why Mr. Okpo was trying to reach out to you to ask you to explain the inconsistency because that -- the text messages didn't show that the pressure and/or being forced to give the phone number.  In fact, I remembered one of the texts, you had indicated you would give Andrew your phone number.

So, again, that's what I meant by that.

Q. That's helpful.

Is there anything else you want to add related to that?  So it sounds like phone number?  What was the other example you just gave?

Adelmise R. Warner

A. Again, without reading your issue confirmation, what I recall from reviewing it, you had used the word of being -- pimping and pandering, I believe, were the words.

You had mentioned that you were -- you didn't express any interest in Andrew. I recall you also mentioned that you were pressured to give the phone number.

And then just earlier when you were asking me the question, you basically were indicating you were forced -- you were being forced to have, you know, relations or with Andrew.

The text messages, what I was explaining, showed something different where you were, in essence, voluntarily saying you would give Andrew your phone number.

That's one example I recall.

Q. Okay. And you said that you -- you recall -- and, I'm sorry, we don't have time to go back through all that. I have, and I would have expected that you would probably read this beforehand to get prepared for it because we don't have time to go through every document with these type of documents.

A. There's not a question there.

But I want to clarify, I have read them before.

MS. RIECHERT:  Okay.  First of all, please don't recite the law because I'm just going to object. Ask a question.

BY MS. GJOVIK:

Q. Are you aware of the legal -- because -- so okay.

You were mentioning that the use of the term "pimping and pandering" as a sort of misconduct or basis of misconduct or the comparisons.

So I would like to ask if Apple is aware of the legal definition of a statute I was citing for pimping and pandering with indirect benefits and what the legal criteria is for that.

MS. RIECHERT:  Okay. Objection. Outside the scope of any of the topics --

MS. GJOVIK:  Protected activity. Retaliation. Reason for termination.

MS. RIECHERT:  Calls for a legal opinion. I think that's -- I'll stop at those two.

MS. GJOVIK:  Okay. So if we leave it at that, though, it's basically like saying she said that we violated the NLRA and we think that's misconduct because we don't think we did, so her saying we violated the NLRA is misconduct.

If you want to leave it like that, we can, but

I was hoping to get more information about why Apple would think me citing the violation of a statute is misconduct.

MS. RIECHERT: Okay. First of all, that is exactly not what the witness said and so misstates the witness's testimony.

MS. GJOVIK: That's why I'm trying to get more information.

THE WITNESS: If you would allow me to, again, make sure I clarify, I did not state that you simply citing pimping or pandering is misconduct.

Very clearly, my testimony and what I understand is that you had characterized the interaction, and how you described what happened and what you provided to Mr. Okpo seemed to be different than what he was able to see from the text thread. And he wanted to speak to you about it. And you refused.

So the reason for that part of the termination was the misleading information and your refusal to speak to him.

I did not say your citing the statute or any legal argument you made was the basis for the termination.

BY MS. GJOVIK:

Q. Thank you.

I was trying to do you a solid on that one because it sounded kind of bad, and I assumed it was not that wild.

But are you aware that Mr. West testified that he believed that there was a power imbalance that would prevent me from actually being able to consent to something like that?

A. That Mr. Powers testified?

Q. Or, sorry, Mr. West.  Not Mr. Powers.  Thank you.

A. Yeah.  Can you say that again?  Just, like, there's a lot there.

Q. Are you aware that Mr. West testified that he believed there was a power imbalance that would prevent me from actually being able to consent to something like that?

MS. RIECHERT:  Objection.  That misstates the testimony.

But you can answer if you're aware of his testimony.

THE WITNESS:  I am not.

BY MS. GJOVIK:

Q. Okay.  Are you aware that Mr. West and I had texted, and he had said it was one of the worst things he's ever done and confirmed that in his deposition?

this Omega study, which is the ear scans.

Or I guess that's a question:  What is the Omega study, Ms. Warner?

A. I would -- it's -- and I would have to look at this entire interrogatory responses that described it. One was -- the ear scan was the Face ID.

So is that described in here without disclosing confidential information?

Q. It says on August 28th for Omega -- that was the date of the ear scan Tweets -- and then August 30th for Alpha, which would have met with the Gobbler stuff.

But Apple would be the best entity to know what it meant by using these terms.  I have been guessing, as is everyone else.

A. The terms would have been described in somewhere in there.  And, again, I'm not looking at the entire document.

Q. Okay.  So on behalf of Apple, can you tell me what Omega refers to?

A. Other than what's described here in the interrogatory that it is a study in connection that you had participated in.

Q. Mm-hmm.

A. Okay.  Can you scroll up, please?

Okay.  Scroll down.

Well, in here, it says, again, the footnote:

"To safeguard Apple's confidential information, studies were referenced as Omega for purposes of this response."

So that was my point of do you want me to talk about a study that was deemed confidential?

Q. Well, does Omega refer to that Tweet about the ear scans?

A. One of the two does.  I believe it's -- I don't want to speculate which one is which without looking at the document that describes it.

Q. Is there a document that describes it?

A. I don't know.

Q. I would love to see if there is because I -- I have not seen a decoder ring for the code names.  Okay.  So there's that.

And then we have -- okay.  I'm attaching Exhibit E4.

E4 was returned through a FOIA request to U.S. Department of Labor for Apple's filings to Department of Labor in their response.

(Deposition Exhibit E4 was marked for identification.)

BY MS. GJOVIK:

Q. In their response, Apple, via Orrick, included

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand, which was thereafter transcribed by me; that the foregoing is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ X ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  May 12, 2026

_____
Layli Phillips
RPR, CRR, CSR No. 14402

Docusign Envelope ID: 7DCA5F07-7AF0-8258-829B-266DCD539767

DECLARATION UNDER PENALTY OF PERJURY

Case Name: Ashley Gjovik
        vs. Apple Inc.
Date of Deposition: 05/12/2026

Job No.: 10190735


            I, ADELMISE R. WARNER, hereby certify

under penalty of perjury under the laws of the State of

**California**_____ that the foregoing is true and correct.

Executed this **28th** day of

**May**_____, 2026, at Oakland, California_____.




                                    _Adelmise Warner_
                        _____

                            ADELMISE R. WARNER


NOTARIZATION (If Required)

State of _____

County of _____

Subscribed and sworn to (or affirmed) before me on

this _____ day of _____, 20___,

by_____,   proved to me on the

basis of satisfactory evidence to be the person

who appeared before me.

Signature: _____ (Seal)

Docusign Envelope ID: 7DCA5F07-7AF0-8258-829B-266DCD539767

30(b)(6)

**Adelmise R. Warner**                                                              **Ashley Gjovik vs.
                                                                                              Apple Inc.**

DEPOSITION ERRATA SHEET
Case Name: Ashley Gjovik
       vs. Apple Inc.
Name of Witness: Adelmise R. Warner
Date of Deposition: 05/12/2026
Job No.: 10190735
Reason Codes:  1. To clarify the record.
               2. To conform to the facts.
               3. To correct transcription errors.

Page __234__ Line __6__ Reason __3__

From __scan was_____ to __scan, one was_____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Docusign Envelope ID: 7DCA5F07-7AF0-8258-829B-266DCD539767

**30(b)(6)**

**Adelmise R. Warner**                                                    **Ashley Gjovik vs.
Apple Inc.**

DEPOSITION ERRATA SHEET

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

X
_____  Subject to the above changes, I certify that the
           transcript is true and correct
_____  No changes have been made. I certify that the
           transcript  is true and correct.

_____
          ADELMISE R. WARNER



**Orrick, Herrington & Sutcliffe LLP**

The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

orrick.com

**Exhibit E4**
**Warner, A.**
05/12/26
aptus.

September 30, 2022

**Kathryn G. Mantoan**

**VIA ELECTRONIC MAIL**

E  kmantoan@orrick.com
D  +1 415 773 5887
F  +1 415 773 5759

(b) (7)(C)

Whistleblower Protection Program
U.S. Department of Labor, OSHA
300 Fifth Avenue, Room 1280
Seattle, Washington 98104

(b) (7)(C)

Re:    *Ashley Gjovik v. Apple Inc.*, Case No. 9-3290-22-051

Dear (b) (7)(C) :

Apple provides the following information and supporting documents in response to the Department of Labor's request for additional information on September 16, 2022.

1.  **REQUEST**: Documentation to support Ms. Gjovik intentionally disclosed confidential information about Apple products on Twitter and to the press. This may include, but is not limited to copies of any text messages between Ms. Gjovik and another employee, tweets, press articles, reports from Business Conduct Helpline, or emails.

    **RESPONSE**: Please see Exhibits 1-10, which show that Ms. Gjovik disclosed Apple's confidential product information to external third parties, namely Twitter and a reporter from The Verge publication.

2.  **REQUEST**: Copy of Apple's policy regarding disclosure of confidentiality/proprietary information.

    **RESPONSE**:  Please see Apple's Confidentiality and Intellectual Property Agreement that Ms. Gjovik signed upon hire (Exhibit 11), and Apple's Business Conduct Policy (Exhibit 12), which also contains a confidentiality provision.

3.  **REQUEST**: Copy of Apple's Misconduct and Discipline Policy.

    **RESPONSE**: Please see Exhibit 13.

4.  **REQUEST**: Copy of Ms. Gjovik's signed non-disclosure agreement regarding confidential/proprietary information.

    **RESPONSE**:  Please see the two agreements that Ms. Gjovik signed in which she agreed to not disclose Apple's confidential information: Exhibit 11 (executed copy of Apple's Confidentiality and Intellectual Property Agreement), Exhibit 1 (executed copy of the Alpha Study consent form).

CONFIDENTIAL – EXEMPT FROM FOIA DISCLOSURE



(b) (7)(C)

September 30, 2022
Page 2

5.  **REQUEST**:  Documentation to support Ms. Gjovik refused to cooperate with Apple's internal investigation. This may include, but is not limited to emails, meeting notes, phone call logs, or a signed statement from the company investigator(s) or company official(s) that attempted to contact Ms. Gjovik.

    **RESPONSE**: Please see Exhibits 14-15, which shows that Ms. Gjovik refused to be interviewed as part of Apple's internal investigation.

6.  **REQUEST**:    From January 2021 to present, please provide information of other Apple employees who have been terminated for disclosing confidential information and specifically identify the individuals that were terminated for posting on social media and/or communicating with the press. At minimum provide the following for each employee: 1) name or identifier, 2) job title, 3) date of termination, and 4) reason for termination.

    **RESPONSE**: Please see Exhibit 16, which identifies (b) (7)(C) other Apple employees who have been terminated for violating their confidentiality obligations.

Please note that this letter and Exhibits 1-8 and 11-16 (the "Materials") contain confidential business information protected from disclosure under Exemption 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4). Apple requests to receive pre-disclosure notification pursuant to 29 C.F.R. § 70.26 in the event of any FOIA request covering the Materials.

If you require any further information, please contact us.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Apple Inc.

By:    */s/ Kathryn G. Mantoan*

Kathryn G. Mantoan

# Exhibit 5

CONFIDENTIAL – EXEMPT FROM FOIA DISCLOSURE

This page was received by OSHA with redactions. Redactions made by OSHA for FOIA contain Exemptions per the FOIA.

**Alpha Application Study**



CONFIDENTIAL – EXEMPT FROM FOIA DISCLOSURE

# Exhibit B

Deposition of

# Yannick Bertolus

April 17, 2026

Ashley Gjovik

vs.

Apple Inc.



www.aptusCR.com | 866.999.8310

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M. GJOVIK,                    )
                                     )
            Plaintiff,               )
                                     )
   vs.                               )    Case No. 23-cv-04597-EMC
                                     )
APPLE, INC.,                         )
                                     )
            Defendant.               )
_____)

VIDEOCONFERENCE DEPOSITION OF

YANNICK BERTOLUS

VIDEO-RECORDED VIA ZOOM

Friday, April 17, 2026

Stenographically reported by:
CARRIE GIBSON, CSR No. 13937
JOB No. 10188335

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


ASHLEY M. GJOVIK,              )
                              )
          Plaintiff,          )
                              )
  vs.                         )    Case No. 23-cv-04597-EMC
                              )
APPLE, INC.,                  )
                              )
          Defendant.          )
_____)


        Deposition of YANNICK BERTOLUS, taken on

        behalf of Plaintiff via videoconference,

        commencing at 1:07 p.m. and ending at

        5:00 p.m. on April 17, 2026, reported

        stenographically by Carrie Gibson,

        California Certified Shorthand Reporter

        No. 13937.

APPEARANCES:


For the Plaintiff:

  A.M. GJOVIK CONSULTING, LLC
  BY:  ASHLEY M. GJOVIK, Pro Se
  (Appearing Via Videoconference)
  2108 North Street
  Suite 4553
  Sacramento, California 95816
  (415) 964-6272
  legal@ashleygjovik.com


For the Defendant:

  ORRICK, HERRINGTON & SUTCLIFFE LLP
  BY:  JESSICA R. PERRY, ESQ.
  (Appearing Via Videoconference)
  1000 Marsh Road
  Menlo Park, California 94025
  (650) 614-7400
  jperry@orrick.com


      (Video-recorded via Zoom by Ms. Gjovik)

Ms. Perry or Perez.

MS. PERRY:  It's Ms. Perry.  I'm the one who's going to be speaking today.

MS. GJOVIK:  Okay.

MS. PERRY:  Ms. Court Reporter, can you hear me?

(Discussion off the record.)

MS. PERRY:  I made an objection that the witness can testify as to anything he did to prepare that did not involve communicating with his counsel. Anything he did to prepare for this deposition that involved communicating with counsel would be covered by the privilege.

MS. GJOVIK:  Okay.

BY MS. GJOVIK:

Q.  You can answer.

A.  Sorry.

Can you repeat the question again?

Q.  Did you do anything to prepare for today's deposition?

A.  Based on what my lawyer just said, no. Only -- I only worked with the lawyers.

Q.  Okay.  Did you review -- without disclosing anything that's privileged, did you review any documents in preparation for today's deposition?  Yes

asked.

I meant generally, like, a published policy or an HR protocol to follow.

A.   The two cases I think you are bringing up is if an employee has performance problem, it's treated differently from when an employee is at fault for an egregious violation of a policy.

Q.   Okay.  So yeah.  And I was -- and I said let's talk about the immediate termination category. So you're describing what sounds like an example of that.

Can you recall any kind of, like, Apple management policies or HR protocols that you were -- managers were expected to follow if an involuntary termination needed to occur in that category?

A.   So in your case, I saw examples of -- of what you leaked both on social media and also in articles in the press, and that prompted the termination.

Does that answer your question?

Q.   It still does not.  I was going to ask you that stuff later, so you're answering ahead of time, which thank you for that.

But I'm still asking if there's, like, a generalized policy or generalized protocol, not

Q.  I guess I'm looking for a yes-or-no on that.

MS. PERRY:  I think he just told you he doesn't understand your question and it's vague.

MS. GJOVIK:  Okay.

MS. PERRY:  Do you want to try again?

BY MS. GJOVIK:

Q.  Maybe we lean into what you were talking about for mine as a concrete example.  You mentioned I violated Apple policies.

Can you -- do you recall which policies that you determined that I violated, specifically by name?

A.  Yes.  You violated the confidentiality and intellectual property agreement.  You also violated the business conduct.  There is some others.  I don't remember the exact name.  But posting on social media.  I can't remember the name.  A couple around communications.  So, you know, there were many.  But the two obviously that you violated were the confidentiality agreement and the business conduct.

Q.  Okay.  And I think this might be a more productive way to do it.  We're actually digging in on some actual policies now.

Do you recall which terms in the intellectual property agreement you determined were violated?

**Yannick Bertolus**

A.  I would need to look at it exactly.  But you basically posted on Twitter product-related information.  It was also an internal tool, so it's a trade secret.  So there were -- that was very egregious.

In addition to that, you failed to cooperate with the investigators, which is a violation of the business conduct.  You also misled the ER investigation when they were looking into some workplace concerns that you brought up.  So all of that made it very egregious and grounds for termination.

Q.  Okay.  So the business conduct policy -- I'm sorry.  Can you say which specific portions of the business -- it's very long.

Which portions were violated?

A.  I wouldn't -- I'd like to reread it again, if you really want me to spell out an excerpt.

Q.  I'm sorry.  Go ahead.

A.  No, that's it.

Q.  Okay.  If -- I was planning on offering a break at, like, 2:00.  We can take a 10:00 p.m., and I can go -- or a 10-minute, and I can go dig up those policies you mentioned and we can look at them together, if that's okay, so you're not just

**Yannick Bertolus**

conduct.

Q.    Okay.    Can you -- can you list the other things I did wrong too again, please, again?

A.    You mean what warranted your termination?

Q.    Yes, please.

A.    You disclosed product-related information and -- and trade secrets on Twitter, which was a violation of your confidentiality and intellectual property agreement.    And then you failed to cooperate with the investigation.    And then there was the -- what we just discussed with the misleading of the ER investigations that looked into your complaints.

Q.    Okay.    And of course, for the record, I disagree with all this.    But I'm not going to fight you about it.    That's not what this deposition is.

But when you said failed to cooperate in the investigation, do you recall the details of what that failure to cooperate was?

A.    You refused to -- I mean -- yes.    You refused to, I believe, answer the phone or the emails or the way they were trying to reach out to you to ask you more questions about your leaking information on Twitter.

Q.    Do you recall seeing whatever exchange that was yourself?

A.   No.

Q.   Okay.  Do you recall how it was described to you?

MS. PERRY:  Okay.  I'm going to -- if the question is do you recall, you can answer that question.  So let's take this question by question. Because I'm going to instruct you, to the extent these questions ask for privileged information.

MS. GJOVIK:  Okay.

THE DEPONENT:  So can you repeat the last question, then?

BY MS. GJOVIK:

Q.   Do you recall how that allegation -- the facts underlying the allegation of refusal to cooperate were presented to you?

A.   No.

Q.   We just reviewed that email you had with Ms. Bowman, and she said something about refusal to cooperate.

Do you remember getting any additional details beyond what she said in her own email?

A.   No.

Q.   Okay.  And then the -- the leaking -- it sounds like you reviewed the post at issue.

Can you confirm:  Did you review any of the

Yannick Bertolus

posts that Apple was stating was leaking?

A.   I remember quite vividly seeing a picture in black and white, which I believe was a screenshot of an internal tool as part of a user study.  That was a violation of your confidentiality agreement, as well as the user study agreement that you had participated in.

Q.   Did you see the Twitter post or just the image?  Do you recall?

A.   I recall seeing the image.

Q.   Okay.  So you wouldn't have seen them on Twitter yourself, then; someone at Apple showed them to you; is that correct?

A.   Yes.

Q.   Okay.  Do you recall what the content of the image -- or how many images were you shown that you reviewed?

MS. PERRY:  So again, I'm going to instruct you not to answer, to the extent that this is getting into what specifically an attorney investigation showed you.

To the extent that you want to ask him questions about what he was aware of, you can do that.  But you need to separate that from what investigators showed him or what specifically

**Yannick Bertolus**

happened in the investigation.

MS. GJOVIK:  We'll bring that to the magistrate.  This is Apple's supposed justification for terminating me.  You cannot claim a sword and shield on this.  But understood.  I'll withdraw that last question.

BY MS. GJOVIK:

Q.  And I'm going to ask you:  Do you recall the content of the photos that you reviewed?

A.  I think I answered that just a minute ago. I remember vividly seeing one photo, black and white, which was a screenshot, I believe, of an internal tool.  And by posting that, you violated your confidentiality agreement.

Q.  Thank you.

I meant, like, what was in the image itself?

A.  A room, you.

Q.  A photo of me; is that right?

A.  Not just you.  I mean, you were there, I believe, and then the -- black and white and the room in the background.

Q.  Do you know what room?

A.  No.

Q.  Are you familiar with the Gobbler/Glimmer application that Apple uses?

BY MS. GJOVIK:

Q.   Sorry.

Mr. Bertolus, as part of this investigation into me and the decision to terminate my employment, was any of my interviews with the press considered as part of that investigation?

MS. PERRY:   Again, I'm going to instruct you not to answer with respect to the investigation.

BY MS. GJOVIK:

Q.   Mr. Bertolus, earlier in this deposition, you said something about at least knowledge that I was giving interviews with the press.

Did you review any of the articles where I was quoted or interviewed by the press, from, let's say, July 2021 through September 9, 2021?

MS. PERRY:   Can you repeat the question, please?

MS. GJOVIK:   Yeah.

BY MS. GJOVIK:

Q.   Just -- Mr. Bertolus, do you recall reading, reviewing, seeing any of the articles where I was interviewed about my complaints against Apple between July of 2021 and September 9, 2021, prior to terminating me?

MS. PERRY:   Okay.   And again, I'm going to

Yannick Bertolus

instruct you, to the extent that this calls for the disclosure of confidential attorney-client privileged communications, that you not disclose those.

THE DEPONENT:  What I remember, as I told you earlier, is I saw the picture of that tool.  That was a direct violation of your confidentiality and intellectual property agreement.  I did mention earlier a Verge article.  I don't remember reading it in detail.

And then failure to communicate and misleading the investigators.  Those were all violation of Apple policy and grounds for termination.

BY MS. GJOVIK:

Q.  Okay.  Thank you.

And just to clarify, though, the last one, the misleading, was that part of the investigation into me or an investigation into my complaints?

MS. PERRY:  Objection, to the extent it lacks foundation.

MS. GJOVIK:  Okay.  Let me rephrase.

BY MS. GJOVIK:

Q.  For the third one, me misleading with the Dan West text messages, do you recall if that was related to the investigation into me for leaking?

**Yannick Bertolus**

A.   I think that would be better answered by global security.

Q.   Agreed.

But if you made the determination to fire me and said you made that independently yourself and reviewed the information yourself, I would assume that you would have more details than just a blanket assertion.

So I would like to know if you have more details.

A.   The leak on Twitter of that internal tool was so egregious that that in itself warranted termination.  The fact that you did not cooperate was an addition to that, but not the main reason.  The main was your leak.

Q.   Thank you.

I'm still trying to hone in on the failure to cooperate, what that actually means, though.  So I'm not asking you these questions -- these retaliation lawsuits, Apple says one thing, and then I have to say, like, that's not what they mean, or this is what really happened.

So if they just say something vague, it's hard for me to come up with facts to show what really happened.  So I'm just trying to figure out what the

**Yannick Bertolus**

Q.   Okay.  So can you highlight which terms you think that I violated that justified my termination?

A.   Yeah, I just did.

Scroll back up.

Q.   Yeah.

A.   You violated -- you failed to keep Apple's intellectual property and proprietary information confidential.

Q.   By sharing it on Twitter?

A.   Yes.

Q.   Okay.  And you're talking about that one image that we're talking about that shows the screenshot of the UI of the Glimmer app; is that correct?

A.   That's correct.

Q.   Okay.  Thank you.

And just to confirm, are there any other policies that you think I violated that you remember by name that were not the three we just looked at?

A.   I remember five total.  We've reviewed -- what -- three?  There is one you glanced over just now -- before.

Q.   That was the one that Ms. Perry and I were fighting about.

I was asking you if you remember the

But, Mr. Bertolus, you didn't mention that prior.

Why are you just bringing that up now?

MS. PERRY:  Objection.  Misstates testimony.

MS. GJOVIK:  Sorry.  Let me clarify.

BY MS. GJOVIK:

Q.  Mr. Bertolus, when you listed the reasons I was terminated -- and you did that several times.  We went over that.  You didn't mention the Verge article.

So why are you raising it now?

A.  Maybe the court reporter could go back.  But very early in the deposition, I brought it up.

Q.  Sorry.

Can you say it again?  I can't hear you.

A.  Very early in the deposition, I brought it up.

Q.  So would you like to correct your testimony of the reasons that I was terminated to include that, or would you just like to review that separately?

A.  No.  I have said clearly that you violated your confidentiality agreement, and that -- and that Verge article is part of that.  If you want to go back to the record, we can go back to the record.  I mentioned that early on.

**Yannick Bertolus**

A.   And you're not -- you agree that there were pictures there; right?  So that's --

Q.   Yeah.  Oh, yeah.  I shared that.  And that was also what I screenshot on those Twitter posts.

A.   Okay.  So that was basically, yeah, the violation of your confidentiality agreement.  Yeah.

Q.   Can you tell me what that content was that you're saying was a violation?

A.   The pictures where -- I don't know which other picture you showed me.  But -- but clearly, it was a screenshot of an internal tool, which was a violation of your confidentiality agreement, and that was grounds for termination.

Q.   Mr. Bertolus, did you review this article when you made the decision to terminate my employment?

A.   I don't remember reviewing the whole article.  I just remember a mention of a Verge article.

Q.   Do you recall the -- did you know the title of the article when you made the termination decision?

A.   I don't remember.

Q.   Mr. Bertolus, do you know that in California, workers have a constitutional right to

appropriate?

A.  I don't see why, I mean, that's relevant for me to answer that.

Q.  Do you think I should have been able to at least ask to have a witness or record the phone call?

MS. PERRY:  Objection.  Calls for speculation.  Incomplete hypothetical.

MS. GJOVIK:  I can't hear you.

MS. PERRY:  Objection.  Calls for speculation.  Incomplete hypothetical.

BY MS. GJOVIK:

Q.  You can still answer.  Because he made the determination and made an assessment of cooperation.

A.  The primary reason you were terminated is because you violated your confidentiality agreement when you posted those pictures on Twitter.

Q.  Okay.  Thank you.

Mr. Bertolus --

MS. GJOVIK:  So this is Plaintiff's production 10, Exhibit 53 KC.

(Exhibit 53 was marked for identification.)

BY MS. GJOVIK:

Q.  Mr. Bertolus, are you aware that the NLRB had issued a complaint against Apple, suing them for

I, the undersigned, Carrie Gibson, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken remotely before me at the time herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand, which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ X ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

In witness whereof, I have hereunto subscribed my name this 21st day of April, 2026.

_____
Carrie Gibson, CSR No. 13937