UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK,<br><br>           Plaintiff,<br><br>     v.<br><br>APPLE INC.,<br><br>           Defendant. | Case No. 3:23-cv-04597-EMC  (KAW)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY**<br><br>Re: Dkt. No. 304 |

On March 11, 2026, Defendant Apple Inc. filed a motion to retain confidentiality designations, as required by the stipulated protective order. (Dkt. No. 304.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS Defendant's motion to retain confidentiality.

## I.    BACKGROUND

On December 16, 2025, Apple took Plaintiff Ashley M. Gjovik's deposition. (Decl. of Melinda S. Riechert, "Riechert Decl.," Dkt. No. 304-2 ¶ 2.)  During the deposition, Apple designated a large portion of the transcript Confidential under the Protective Order but, after discussion on the record, the parties agreed that Apple would, upon receipt, review the transcript and provide more limited designations. (*Id.*; *see also* Def.'s Gjovik Dep., Riechert Decl. ¶ 2, Ex. A at 141:18-142:25.)  Apple received the transcript on January 7, 2026, and provided more limited confidentiality designations to Plaintiff and the court reporter on February 4, 2026, prior to the expiration of Plaintiff's deadline to correct her deposition testimony. (Riechert Decl. ¶¶ 3-4; Apple's Designations, Riechert Decl. ¶ 4, Ex. B.)

Previously, the parties entered into a stipulated protective order on July 7, 2025.

United States District Court
Northern District of California

(Stipulated Protective Order, Dkt. No. 235.)  Under the protective order, Plaintiff must do the following to challenge Apple's designations:

> The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order.

(Stipulated Protective Order ¶ 6.2.)  Instead of proceeding under the terms of the protective order, Plaintiff publicly disseminated information that Apple had designated as confidential. (*See* Dkt. No. 355.)  On February 18, 2026, Plaintiff provided Apple a spreadsheet itemizing her position as to each of Apple's confidentiality designations; in that spreadsheet, she indicated she did not object to redacting many of the designations. (Riechert Decl. ¶ 5, Ex. C.)

Apple reviewed Plaintiff's itemized list and responded on March 4, 2026, within the fourteen days required by the Protective Order. (Riechert Decl. ¶ 6. Ex. D.)  Apple's response confirmed it was withdrawing its designations as to some of the challenged testimony as part of the meet and confer process, but retaining its designations as to other testimony that Plaintiff did not object to redacting as well as the challenged testimony at the following pages of Plaintiff's deposition transcript: 164:10-11, 164:14, 164:15-16, 164:25, 165:13-23, 166:1-2, 166:4, 166:14, 167:17, 168:19, 169:1, 169:10, 169:25, 170:9, 176:16, 197:18, 197:21, 205:17, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i20 (366), i22 (368), i28 (374). *Id.* at 3. Instead of responding to Apple's narrowed designations, Plaintiff filed a motion for sanctions against Apple, which was ultimately denied. (Riechert Decl. ¶ 7; *see also* Dkt. No. 334.)

On March 11, 2026, Apple filed the instant motion to retain confidentiality. (Def.'s Mot., Dkt. No. 304.)  On March 25, 2026, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 320.)  On April 1, 2026, Apple filed a reply. (Def.'s Reply, Dkt. No. 333.)

## II.    LEGAL STANDARD

Generally, "the public is permitted access to litigation documents and information produced during discovery." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)) (internal quotation marks omitted).  A court may, however, issue a

2

protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  If a party challenges whether documents have been properly designated as confidential, the party seeking to maintain confidentiality pursuant to a protective order "has the burden of establishing that there is good cause to continue the protection of the discovery material." *In re Roman Catholic Archbishop*, 661 F.3d at 424.

When a party challenges the confidentiality of information under a protective order, the Court must conduct a two-step analysis. "First, it must determine whether particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 424 (9th Cir. 2011) (quotation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also In re Roman Catholic Archbishop,* 661 F.3d at 424 (quoting *Beckman*). The party seeking to maintain confidentiality must "allege specific prejudice or harm." *Beckman,* 966 F.2d at 476.  A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)(citing *Phillips*, 307 F.3d at 1210–11).

"Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary." *In re Roman Catholic Archbishop*, 661 F.3d at 424. The Court considers the following list of non-exhaustive factors:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* at 424 n.5 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

### III.    DISCUSSION

Prior to filing this motion, the parties engaged in a meaningful meet and confer process, during which Plaintiff agreed that certain designations would remain confidential, and Apple agreed to de-designate certain information. In making this motion, Defendant seeks to retain both the unchallenged confidentiality designations and the 30 designations that remain contested. (Def.'s Mot. at 1-2.)

### A.    Uncontested Confidentiality Designations

As an initial matter, Defendant identifies several confidentiality designations that are not challenged. (*See* Riechert Decl. ¶¶ 4-6, 8, Exs. B-E[1].)  Plaintiff agrees that she is not challenging these designations and agrees that that information can remain confidential pursuant to the stipulated protective order. (*See* Pl.'s Opp'n at 10.)

Pursuant to the terms of the stipulated protective order, the uncontested confidentiality designations shall remain confidential.

### B.    Contested Designations

Apple contends that the remaining challenged designations relate to its "internal product-related information that it takes steps to ensure remain confidential and not disclosed to the public, specifically its internal code words for products and Plaintiff's description of the content, methods, and processes of internal product-related research and development studies." (Def.'s Mot. at 4 (citing Decl. of Michael DiVincent, "DiVincent Decl.," Dkt. No. 304-1 ¶¶ 3-11.[2])  As one of the world's leading technology companies, Apple claims that adherence to strict confidentiality requirements for all past and present product research is necessary to maintain its competitive advantage, and that it will suffer harm if this information is placed into the public record.

---

[1] The parties met and conferred, which resulted in the parties compromising on several of the designations, which included Plaintiff agreeing to retain confidentiality for some designations and Apple agreeing to de-designate others. The highlighted/redacted text in the charts in Exhibits B and C represent the language that is currently designated confidential by Apple, including several entries that are now uncontested. Apple summarized the uncontested and contested designations in Exhibit E.

[2] To the extent that Plaintiff argues that the DiVincent declaration needed to identify and address each particular designation in order to retain confidentiality, she is mistaken. (*See* Pl.'s Opp'n at 10.) The declaration sufficiently addresses the two categories of designations, each of which is fully addressed in the motion.

(DiVincent Decl. ¶¶ 3-7.)

>    **i.    Particularized Harm**

First, the Court considers whether Defendant has demonstrated that particularized harm will result from public disclosure of the two categories of designations at issue.

The Court finds that Apple has demonstrated that particularized harm will result from the public disclosure of the internal code words and descriptions of internal product-related studies. Courts in this Circuit have found that internal policies and procedures are confidential where their disclosure can create a competitive disadvantage. *See, e.g., Avaya Inc. v. Pearce,* No. 19-cv-00565-SI, 2020 U.S. Dist. LEXIS 241116, at *5 (N.D. Cal. Dec. 22, 2020) (The district court found that the "Counterfeit Analysis," which "explains the significance of the different factors analyzed" was confidential, as disclosure would "provid[e] a roadmap to potential counterfeiters regarding how to evade Avaya's detection measures."); *see also In re Bank of America California Unemployment Benefits Litigation*, No. 21-md-2992-GPC (MSB), 2024 WL 4820704, at *3-4 (S.D. Cal. Nov. 12, 2024) (finding fraud detection and prevention policies and strategies confidential, because such processes could be used by bad actors to "circumvent those protections"); *see also Adtrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 U.S. Dist. LEXIS 207918, at *5-6 (N.D. Cal. Feb. 4, 2020) (finding internal policies and systems related to detecting invalid activity and processing payments were confidential).

Similarly, Apple uses code words for existing and future products and services, so a person with access to the meaning of the code words will know the specifics about the product or service that Apple is developing, so keeping the code words confidential is essential to ensure that Apple can conduct confidential research and development. (*See* DiVincent Decl. ¶¶ 6, 8.)  Moreover, the relevant studies discussed relate to collecting data that assisted Apple with developing software and hardware to refine how its devices and features function. (DiVincent Decl. ¶ 10.)  These types of studies are attempting to facilitate solutions to incredibly complex research and development problems, so permitting a competitor to learn Apple's internal methods and processes, including the specific equipment used and testing conducted, harms Apple because it will assist competitors in directly competing against Apple without undertaking the cost of figuring out which

measurements are relevant and which equipment can be used to best provide the data necessary to complete the study. *Id.*

In response, Plaintiff argues that the code words have been publicly reported, publicly discussed, or are otherwise in the public domain. (Pl.'s Opp'n at 9.) This does not change the fact that confidentiality prevents competitors from knowing what Apple is working on. Thus, Plaintiff's argument is not well taken. Regarding the study-related testimony, Plaintiff contends that she did not testify regarding a description of the study methodology, data analysis, or results. *Id.* at 10. Plaintiff's account of her complaints about being asked to participate in studies that she found invasive and her complaints about workplace practices are distinct from the proprietary details of those studies and practices. *Id.* While Plaintiff's complaints may be warranted, she testified about internal studies, the products involved, what was being measured or tested, and other proprietary methods and processes of Apple's research and development. (*See* Def.'s Gjovik Dep. at 165:13-24.) Moreover, most of Apple's designations are single words or short phrases, and the majority appear multiple times in the deposition transcript. The only longer testimony was when Plaintiff described one study's methodology. (*See* Def.'s Gjovik Dep. at 165:13-24.)

Accordingly, the Court finds that Apple has met its burden of demonstrating particularized harm as to the internal code words and descriptions of internal product-related studies.

### ii.    Public and Private Interests

Next, the Court finds that the balance of public and private interests weighs in favor of retaining the confidentiality designations. "Where trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *RSI Corp. v. IBM*, No. 5:08-cv-3414 RMW, 2012 U.S. Dist. LEXIS 105982, at *3 (N.D. Cal. July 30, 2012). As discussed above, Defendant has identified the risk from disclosing product-related information as competitors could use the information to undermine Defendants' ability to maintain a competitive advantage. (*See* DiVincent Decl. ¶¶ 4-11.) In contrast, Plaintiff argues that there is a public interest in the disclosure of this information due to what was being researched and potentially developed into products. (Pl.'s Opp'n at 13.) She also argues that she has alleged unfair and

United States District Court
Northern District of California

unlawful business practices, while her retaliation and wrongful termination claims involve important public issues. *Id.*

While the instant case involves whether Plaintiff was wrongfully terminated, the designated material involves the development of products that may end up in our homes. The information that Apple seeks to keep confidential, however, are the internal code words and descriptions of internal product-related studies, which is not the type of information that the public needs to be privy to. Thus, there is no particular public interest in this case. *Contrast with In re Roman Catholic Archbishop*, 661 F.3d at 428 (finding that the public had "a weighty interest in public safety and in knowing who might sexually abuse children," particularly as one of the priests was still working as a priest and could be brought into contact with children").

Thus, the Court finds that Apple has met its burden of demonstrating that the balance of public and private interests weighs in favor of retaining the confidentiality designations.

## IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to retain confidentiality designations. Specifically, the Court finds that all of the uncontested and challenged designations identified in Exhibit E to the declaration of Melinda S. Riechert (Dkt. 304-2 at 75) retain their confidentiality.

Additionally, the Court orders that the docket entries sealed on April 16, 2026 (Dkt. No. 355) remain sealed. Specifically, Dkt. Nos. 297, 301, 301-1, 302, 302-1, 302-2, 306, 307, 307-1, 307-2, 320, 321, 322, 325, 330, 332, and 338. Plaintiff is also directed to de-publish all material that is the subject of this order, as well as all other publications and republications of that same material.

IT IS SO ORDERED.

Dated: June 29, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

7