Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK**,
*an individual*,

Plaintiff,

vs.

**APPLE INC.**,
*a corporation*,

Defendant.

**CASE NO.**
**3:23-CV-04597-EMC**

## PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS AT DKT. 293 & DKT. 295

**Hearing: April 2 2026 (Dkt. 294).**
**Opp. Due: March 12 2026 (Dkt. 294).**

# TABLE OF CONTENTS

**ARGUMENTS** **1**

**I. SUMMARY OF APPLE'S REQUESTS AND PROCEDURAL DEFECTS** **1**

**II. THE MOTION TO SHORTEN TIME (DKT. 295) SHOULD BE DENIED** **2**

1. The Court already Ordered a 35-Day minimum schedule 3

2. Apple refused to meet/confer, in violation of this court's Orders. 3

3. A full, 35-day briefing is required and was already Ordered. 4

**III. THE MOTION TO SEAL (DKT. 293) SHOULD BE DENIED** **5**

4. This court has repeatedly found that simply citing a protective order designation is insufficient as a basis to seal. 6

5. The content is already on the public docket of this case… for nearly three years. 8

6. Apple's best argument is claiming the Plaintiff leaked about Apple employee "[redacted]," but even that argument fails. 10

7. Apple is using the protective order for its admitted original and exclusive purpose: to silence its employee about her workplace complaints and whistleblower disclosures. 12

8. Apple does not actually identify the content it seeks to suppress beyond a NLRB charge, NLRB cover letter for that charge, a blog post about the NLRB charge, and Notice of Pendency filed to this docket notifying the court of the NLRB charge. 14

9. Apple improperly seeks to seal entire documents. 16

**IV. APPLE'S REQUESTS TO SEAL PLAINTIFF'S FILINGS ARE NOT PROPERLY BEFORE THIS COURT** **18**

**V. APPLE'S REQUESTS FOR INJUNCTIVE RELIEF ARE NOT PROPERLY BEFORE THIS COURT** **18**

**VI. THE ONLY REQUEST ACTUALLY BEFORE JUDGE WESTMORE: AN UNRIPE MOTION FOR DECLARATORY RELIEF.** **20**

10. Defendant must meet and confer on this matter prior to filing motions, per the Court's Feb. 20 2026 order. 20

11. The plain text of the Protective Order excludes all of the content at issue from the scope of that Protective Order. 20

12. Analysis of a 'breach' of an Order where the scope of the Order is at issue, requires the Court determine the nature and legitimacy of the designations/content at issue. 22

13. The Court continues to have no jurisdiction on this matter under the National Labor Relations Act (including *Garmon* and *Machinists* preemption) and the Norris-LaGuardia Act of 1932 (e.g., 29 U.S.C. §§ 101-115). 24

**VII. CONCLUSION & RELIEF REQUESTED** **25**

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO SEAL (Dkt. 293) & ADMINISTRATIVE MOTION TO SHORTEN TIME (Dkt. 295)**

Plaintiff Ashley Gjovik respectfully files this omnibus opposition to Defendant Apple Inc.'s Administrative Motion to Seal (Dkt. 293) and Administrative Motion to Shorten Time (Dkt. 295), all filed along with Motion to Enforce Protective Order (Dkt. 294) the evening of February 26, 2026.

Apple also filed the Motion to Seal (Dkt. 293) with a response deadline of Feb. 26, 2026 — at 10 PM PST the same day, making timely opposition quite literally impossible. Plaintiff still has not been served with copies of the sealed materials and cannot evaluate what Apple has filed under seal. Because these three motions are interrelated — the seal motion references the substantive motion, the shorten time motion is about the substantive motion, and the substantive motion itself includes additional sealing and injunctive requests — Plaintiff addresses the overall matter in this omnibus opposition and respectfully requests that the Court deny all three and issue case management instructions regarding the proper procedures for the relief Apple is seeking. Otherwise, the Plaintiff plans to file her detailed Opposition to Dkt. 294 by March 12 2026, as is currently scheduled. Nothing in this filing should be construed as a waiver of any argument Plaintiff intends to raise in her merits opposition.

# ARGUMENTS

## I. SUMMARY OF APPLE'S REQUESTS AND PROCEDURAL DEFECTS

Apple has bundled around a dozen distinct categories of substantive and procedural relief into three emergency motions. Each category has its own procedural requirements, and in several instances, its own jurisdictional assignment. Apple has not complied with the proper procedure for any of them.

| | What Apple Requests | Where Filed | Proper Vehicle | Proper Judge | Status |
|---|---|---|---|---|---|
| 1 | Seal Apple's own declaration | Dkt. 293 | Admin Motion to Seal (79-5) | KAW | Filed but defective — cites protective order designation as sole basis& asks to seal entire document |
| 2 | Seal Plaintiff's filings and publications | Buried in Dkt. 293 | Motion to Seal under 79-5(f) with briefing | EMC | Improperly filed Admin motion & denied opposition, in addition to issues noted above in #1 |
| 3 | Seal Plaintiff's Opposition filing (Dkt. 284) | Buried in Dkt. 294 | Motion to Seal under 79-5(f) with briefing | KAW | No motion filed |
| 4 | Seal Plaintiff's Notice of Pendency filed to EMC (Dkt. 278) | Buried in Dkt. 294 | Motion to Seal under 79-5(f) with briefing | EMC | No motion filed |
| 5 | Seal Plaintiff's Motion to Quash filed to & ruled on by EMC (Dkt. 285) | Buried in Dkt. 294 | Motion to Seal under 79-5(f) with briefing | EMC | No motion filed; & district judge already ruled on it |

| | What Apple Requests | Where Filed | Proper Vehicle | Proper Judge | Status |
|---|---|---|---|---|---|
| 6 | Seal Plaintiff's NLRB charges, NLRB filings, and speech alleging Apple violated the NLRA | Buried in Dkt. 293 & 294 | None | NLRB | Highly unlawful and continually violating the NLRA and California Labor Code every moment this persists |
| 7 | Compel deletion of published speech + issue prior restraint gag order | Dkt. 294 | TRO / Preliminary Injunction (Rule 65) | EMC | No Rule 65 motion filed; magistrate lacks authority under § 636(b)(1)(A) |
| 8 | Declaratory finding of protective order "breach" | Dkt. 294 | Full noticed, formal motion, 35-day schedule | KAW & EMC? | Filed but not recognized motion type, will not publicly file substantive arguments or evidence – or provide to accused Plaintiff; & filed w/out court-ordered meet-and-confer |
| 9 | Declaratory finding indicating Plaintiff's "breach" of protective order justified Apple terminating Plaintiff in 2021 | Buried in Dkt. 293, 294, 295 | Summary Judgement | EMC | Summary Judgment is scheduled for June 2026 and there is where Apple needs to make these arguments to Judge Chen. |
| 10 | Shorten time for hearing from at least 35 days to ~5 days or less | Dkt. 295 | Admin Motion to Shorten Time | KAW & EMC? | Filed; based solely on generalized "urgency" of requests above |
| 11 | Finding Apple did not violate the NLRA & Plaintiff didn't engage in Protected Concerted Activity. | Buried in Dkt. 293, 294, 295 | NLRB Proceedings | NLRB | NLRB has original and exclusive jurisdiction, and this matter is preempted under *Garmon* and *Machinists*. |
| 12 | An injunction in a case involving and growing out of a labor dispute and targeting the labor dispute. | Buried in Dkt. 293, 294, 295 | Generally prohibited. | Congress /Public Policy | Norris-LaGuardia Act (29 U.S. Code § 101)[1] |

Apple's motion to shorten time is premised on the urgency of its seal and injunction requests. But the seal motion is defective, most of the sealing requests require separate motions Apple hasn't filed, several sealing requests must go to Judge Chen, and the injunction requests cannot be heard by a magistrate judge at all. The urgency argument fails when the requests it depends on are not properly before this Court.

## II. THE MOTION TO SHORTEN TIME (DKT. 295) SHOULD BE DENIED

As a preliminary matter, the Plaintiff reminds the court that all of the content Apple complains

[1] **29 U.S. Code § 101 - *Issuance of restraining orders and injunctions; limitation; public policy*.** "No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter." (Mar. 23, 1932, ch. 90, § 1, 47 Stat. 70.)

about has been publicly known and available for years, and most, if not all of the content, is plead in complaints for this litigation – its in formal legal filings going back to Sept. 2023 on this docket and to approve Apple's request would require this court essentially seal this entire lawsuit.

1. **<u>The Court already Ordered a 35-Day minimum schedule</u>**

During the February 20, 2026 conference, the Court stated at least three times that any motion regarding confidentiality designations or protective orders would follow a standard 35-day briefing and hearing schedule. This court specifically stated that if Apple was to file a motion regarding allegations of unlawfully disclosing confidential discovery information that the court noted "when we will schedule a motion for 35 days, we'll have a hearing on one of [the Judge's] law in motion calendar days for that motion." (29:47)

This court confirmed it would be a "a full motion." (39:44) and further detailed that it would be a "full motion with, you know, noticed motion and 35 days' notice motion." (39:46). The motion as filed in the court's scheduling system reflects this schedule yet Apple asks the Court to reconsider its own oral orders, the federal rules of civil procedure, and the local rules.

The Court recognized there was no urgency: Court Staff: "Does Your Honor want any deadlines in the minutes set or just the general parties to meet and confer with any motions to be filed—" Judge: "Yeah, I'm not setting any dates because I'm not asking the parties to file any kind of motions." (1:04:44-1:05:00).

2. **<u>Apple refused to meet/confer, in violation of this court's Orders.</u>**

The Court ordered the parties to complete meet-and-confer before filing any motion. Judge Westmore said she was "ordering the parties to complete the meet and confer process on this issue before filing any motion" (1:05:03) and warned Apple that if their counsel were to "file a motion and [they] haven't met [their] obligation to meet and confer, then [she] may not consider the motion because [they] haven't done it." (57:58-58:10) Apple's motion certifies that the parties met and conferred, citing Apple's February 18, 2026 demand email – an email from nine days ago, prior to the Court's conference call, where the Court already established Apple's prior meet/confer was insufficient for any of its pending requests and ordered Apple to actually meet/confer with the Plaintiff.

Apple did not comply and would not respond to Plaintiff's emails asking to meet/confer for six days. Apple notified the Plaintiff it planned to file these motions at 3:02 PM in the afternoon of Feb. 26, 2026. The only question that Apple had for Plaintiff was if she would agree to not oppose any of the

motions they already decided to file. (Exhibit A).

The Plaintiff was concerned that Apple would refuse meaningful meet/confer and asked the Court to elaborate on what meet-and-confer requires. Judge Westmore responded that "the meet and confer should consist of the substantive discussion … and maybe some compromise." (58:47) When Plaintiff attempted to initiate the required meet-and-confer on Feb. 26, 2026, Apple refused over seven times, stating "there is nothing … to meet and confer about." The Plaintiff made repeated written requests to meet and confer. Apple refused every one, stating "there is nothing … to meet and confer about" and "there is nothing further to discuss." (Exhibit A). Apple's unilateral timeline of extension request history is also incorrect but the Plaintiff does not have time or pages to address it.

Apple is willfully filing a premature and improper motion in violation of this court's express orders and then also requesting to expedite its violations. Upon filing, Apple demanded emergency treatment. If this were a genuine emergency, Apple would have promptly met/confer with the Plaintiff regarding these matters instead of refusing to respond to her emails for six days, refusing to meaningfully engage in any pending meet/confer, but instead filing a dozen papers including three motions at 10:00 PM and providing the Plaintiff < 2 business days to respond while accusing her of gross misconduct and "sealing" their supposed evidence.

After Plaintiff's December 2025 deposition, Apple maintained a blanket confidentiality designation over the entire deposition transcript for approximately 50 days before providing specific designations. Yet, now Apple now claims that the need to enforce those designations is so urgent it cannot wait for the 35-day schedule this Court set — while Apple itself waited 50 days to identify what it even considered confidential and its formal excuse for the 50 day blanket was that it didn't know at the time what was confidential – so Apple admittedly is now seeking criminal-like punishment of the Plaintiff for her own testimony about her own complaints, body and experiences while admitting it took Apple fifty days to figure out if her testimony was even confidential. The timeline informs the question on substance.

The Court ordered meet-and-confer. The Court stated it was "not setting any dates because I'm not asking the parties to file any kind of motions." Apple defied the meet-and-confer order, refused to engage seven times, filed the motion anyway, and now asks this Court to expedite the very motion the Court ordered Apple not to file until meet-and-confer was complete. The Court warned Apple: "if you file a motion and you haven't met your obligation to meet and confer, then I may not consider the motion because you haven't done it."

**3. <u>A full, 35-day briefing is required and was already Ordered.</u>**

Apple's motion to shorten time asserts that Plaintiff made false assurances to the Court during the Feb. 20 conference. Dkt. 295 at 2. Whether Plaintiff's statements to the Court were accurate is a disputed factual question that goes to the merits of the underlying motion to enforce. A disputed factual question is a reason for full briefing — not shortened time. This assertion is made under penalty of perjury in the Declaration. Plaintiff is pro se, homeless, and in Chapter 7 bankruptcy proceedings. Apple is represented by at least four attorneys at Orrick, Herrington & Sutcliffe LLP, a firm with over 1,000 attorneys. Apple had days or weeks to prepare its motions. A compressed schedule would give Plaintiff one business day to oppose what a team of attorneys took weeks to prepare.

The Court acknowledged on February 20 that Plaintiff would also file a motion if Apple did. If Apple gets a March 6 hearing, the Court would have zero days to read Plaintiff's motion before that hearing, and requiring two separate in person hearings. Both parties' motions should be heard together on the same schedule to reduce the burden on the parties and the court. An expedited ruling on the remaining designations (issued without proper briefing) risks resolving merits questions on a procedural motion. The standard 35-day schedule exists to prevent exactly this. The appropriate response is not acceleration — it is enforcement of the Court's own order: denying Apple's motions as premature and ordering Apple actually meet/confer as the Court compelled Apple to do on Feb. 20 2026.

## III. THE MOTION TO SEAL (DKT. 293) SHOULD BE DENIED

*Kamakana v. City and County of Honolulu,* 447 F.3d 1172 (9th Cir. 2006) is on point in this matter — it's a whistleblower retaliation case where documents were filed under seal pursuant to a stipulated protective order, and a newspaper intervened to unseal the filings. The Ninth Circuit ordered the unsealing of virtually everything previously filed under seal. The parties had stipulated to a protective order, like here; and the court held that because they simply stipulated, a particularized showing of 'good cause' to keep the documents under seal had never been made to the court as required.

A party seeking to seal a judicial record "bears the burden of overcoming this strong presumption" "in favor of access" to court records by meeting the "compelling reasons" standard. Prior to ordering the sealing of any filings, based on the party's arguments in support of sealing, the court must then also articulate a finding of compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure. *Foltz v. State Farm Mutual Auto Insurance Company,* 331 F.3d 1122, 1135 (9th Cir. 2003), *citing San Jose Mercury News, Inc. v. U.S. Dist. Ct.,* 187 F.3d 1096, 1102-03 (9th Cir. 1999). The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court

to seal its records. *Kamakana* at 1179. This is binding precedent on the Northern District of Cal. Courts.

4. **<u>This court has repeatedly found that simply citing a protective order designation is insufficient as a basis to seal.</u>**

Civil Local Rule 79-5(c) states, in its first sentence: "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Apple's entire motion rests on this prohibited argument easily available to Apple's counsel when preparing their motion. Yet, Apple's motion claims the content is confidential because the material was *"designated . . . as Confidential pursuant to the Protective Order"* by Apple (Dkt. 293 at 1-2). The Protective Order itself clearly states that the "Protective Order does not entitle [parties] to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal." (Dkt. 229 ¶ 1).

Apple is arguing the content is secret, because Apple claimed it was secret, which then justifies treating the information as secret, without further analysis inquiry or analysis. This Court has rejected Apple's exact argument repeatedly:

- *Oracle Corp. v. Crypto Oracle, LLC*, No. 24-cv-08438-KAW, at *2 (N.D. Cal. Jan. 6, 2025): an agreement among parties to keep a document confidential does not establish a compelling reason to seal.
- *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-cv-00119-HSG (KAW) (N.D. Cal. Aug. 29, 2018): 'Attorneys' Eyes Only' is a confidentiality designation established in the Stipulated Protective Order and therefore not sufficient. A movant must show "specific prejudice or harm"; "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning" are insufficient. The Court noted the redacted information appears to be quite broad as well as publicly available.
- *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 17-cv-05928-YGR (KAW) (N.D. Cal. Sept. 7, 2021): Denied sealing where basis was exhibits "identified by Plaintiff . . . as confidential." Reminded parties of their obligation to not over-designate documents as confidential.
- *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918-MMC (KAW) (N.D. Cal. Aug. 12, 2022): Denied sealing where designating party has not filed the required declaration establishing sealability.
- *Sereni v. Home Depot U.S.A., Inc.*, No. 12-cv-5912-KAW (N.D. Cal. Feb. 11, 2013): Refused to enter protective order allowing automatic sealing based on designations because it effectively circumvents the Court's review process and is, therefore, improper.

Apple must demonstrate "compelling reasons supported by specific factual findings, i.e. that the portions to be sealed contain trade secrets or competitively sensitive business information." *Oracle*, at *3.

Apple has identified no trade secret. Apple has identified no competitive harm. Apple has identified no injury beyond the circular assertion that "confidential information" would be disclosed when the information in question has been public for years, is the personal experience of other parties, and covers highly protected speech and civil rights, but none of this matters because Apple says its confidential.

This Court is not the only court in this district to reject Apple's sealing practices. In *Apple Inc. v. Rivos, Inc.*, No. 22-cv-02637-PCP, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024), Judge Pitts denied multiple requests to seal documents in an actual trade secrets case and with non-public information, finding that Apple's arguments "in favor of sealing are generic enough that they could plausibly apply to almost any non-public information" and that "[c]ookie-cutter contentions of competitive harm are not the sort of 'specific statement' the local rules require in order to meet the 'stringent' standard for sealing." *Id.* at *2.

Judge Pitts also denied sealing of Apple's counterclaim paragraphs despite Apple's argument that the material contained "details about the internal operations, structure, and workflow of Apple's business" — because the material discussed only "run-of-the-mill business considerations" and "Apple has not identified any specific injury that would result from this information being available to the public." *Id.* Judge Pitts also denied sealing where Apple failed to file a 79-5(f) statement within seven days, and denied sealing of deposition transcript portions that discussed public patents and "Apple's practices with respect to its employees," finding that "Apple has provided no basis for sealing this information." *Id.* at *3, *6. Judge Pitts granted sealing only for portions discussing "technology asserted as trade secret" — actual technical details of Apple's system-on-a-chip design. *Id.* at *5-8.

Judge Pitts subsequently placed *Apple v. Rivos* on his standing order as an example of insufficient sealing practice, warning that "[b]lanket or generic statements like 'competitive harm' are almost never sufficient" and that "[f]rivolous, overbroad, or inadequate sealing motions risk denial, publication without further notice, or sanctions." Standing Order for Civil Cases, Judge Pitts, N.D. Cal. Apple's motion here is even less specific and more farfetched than the sealing requests Judge Pitts rejected in *Rivos*. In *Rivos*, Apple at least argued its material contained "details about the internal operations, structure, and workflow of Apple's business." Here, Apple argues only that the material was "designated as Confidential pursuant to the Protective Order." If generic contentions of competitive harm about Apple's internal business operations were insufficient in *Rivos*, a bare reference to a protective order designation — about an employee's menstrual cycle — is insufficient here.

Before filing the motions now before the Court, Apple was required to provide under 79-5(c)(1): (i) a statement of the legitimate private or public interests that warrant sealing; (ii) the injury that will

result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient. Apple provided none of these or if they did, it was included in the document that Apple asked to have sealed by the court in its entirely preventing the Plaintiff or the public from ever knowing what Apple's arguments were. The argument was already entirely circular (the information is confidential because Apple designated it confidential, and it must be sealed because it is confidential) but now Apple has also asked the court to declare its circular arguments are also confidential.

As this Court held in *Sereni*, even "the failure of an 'opponent' to challenge the filing of the documents under seal . . . does not relieve the party seeking to file under seal from its burden of showing that the information is 'privileged or protectable as a trade secret or otherwise entitled to protection under the law.'" No. 12-cv-5912-KAW, at *2. Even if Plaintiff had not opposed this motion, Apple would still bear the burden of demonstrating sealability — and Apple has not carried it.

In *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS (N.D. Cal. Aug. 15, 2023), the court denied sealing of most material even though defendant did not oppose, because plaintiffs offered only "conclusory generalization" of a privacy interest without establishing "what injury would flow from the publication." In that case, only actual personally identifiable information was sealed. If unopposed sealing requests are denied for lack of specificity, Apple's opposed request — which provides no authenticated evidence and identifies no concrete injury whatsoever — must fail as well.

5. **<u>The content is already on the public docket of this case… for nearly three years.</u>**

Every category of information Apple designated as confidential is already publicly filed on this Court's docket including in the Complaints for this lawsuit going back to Sept. 2023. This content was also filed on the Ninth Circuit Court of Appeals dockets, the Bankruptcy Court in the District of Massachusetts, and to NLRB and the Dept. of Labor. For example:

- ***Menstruation and ovulation studies:*** "Apple wanted to study her ovulation cycles and menstruation, which she denied." First Amended Complaint (Oct. 2023, Dkt. 17 at 42-44), Second Amended Complaint (Dkt. 32), Fourth Amended Complaint (Dkt. 76), Fifth Amended Complaint (Dkt. 128). Also, in Plaintiff's June 2023 White House OSTP public comment (25-2028, Dkt. 33.1; Fed. Reg. OSTP_FRDOC_0001-0008 "Automated Worker Surveillance and Management"); cited in GAO Report to Congress (25-2028, Dkt. 33.1; GAO-24-107639, Aug. 2024).
- ***Sleep study and bed sensors***: Nov. 2023 Second Amended Complaint at Dkt. 32 at 58 describes "*sleep study with Apple placing a sensor under her while she slept every night*." OSTP comment describes Beddit monitor, co-sleeper NDAs, insomnia severity index surveys. (25-2028, Dkt. 33.1). The deposition in dispute (Trans. at 164-165) includes testimony that Apple "[redacted]" and that "[redacted]

[redacted]." The co-sleeper NDA requirement was described in the OSTP comment published in formal notice/comment rulemaking and cited by GAO, in the complaints on this docket, and in news articles (including Telerama magazine). Apple's designation of this testimony (requiring employees to [redacted] with their employer) covers information already in the public domain.

- **Apple's "Studies" and coercive data collection generally:** Public since August 2021 through NLRB charges, Bloomberg, The Verge, Gizmodo, Telerama. Filed as complaints, motions, exhibits, and other papers on this docket since 2023. Submitted to OSTP and cited by GAO. Cited by watchdog groups; investigated by CNIL & Germany. Filed in Ninth Circuit (Case No. 25-2028).
- ***Secrecy oaths and confidentiality threats:*** Every complaint in this litigation describes Apple threatening employees with termination for discussing some version of these studies. Internal documents were also presented including a user study "Deed Poll" that claimed to be confidential yet Apple never filed any motions or objections about it being on the docket. (ie, "*even to a doctor or attorney (as was expressly written in one Deed Poll).*") The First Amended Complaint (Dkt. 17 at 293-294) quotes the Deed Poll language: *Apple considers it "Confidential Information" that Apple is "conducting the study, the types and methods of data collection, and any other detail about the study, or how it is conducted — any information … learned about the study*." The Deed Poll instructed employees not to tell "*other employees, friends, family members, and especially, the press*." The Verge article (Dkt. 35-12) published Apple's unlawful employment agreement language verbatim: "*You should have no expectation of privacy when using your or someone else's personal devices for Apple business*" and Apple settled with the Plaintiff and NLRB in April 2025 agreeing to withdraw that term from its national policies.

Apple's claim that its studies are "secret" is itself a claim litigated on this docket. It's a key legal issue in the upcoming Summary Judgement and it's always been pled in detail in the Complaints for this case. For example, the Second Amended Complaint (Dkt. 32-2 at 266-269) devotes an entire section to Apple's position that the existence of its medical studies on employees is confidential, comparing Apple's secrecy oaths to those found unlawful in *Vietnam Veterans of Am. v. C.I.A.*, No. C-09-0037-CW (N.D. Cal.), where this district found that secrecy oaths requiring participants to agree they "would not divulge or make available any information related to … participation in the volunteer program" vitiated informed consent. Apple's current motion asks this Court to enforce the same secrecy framework the complaint challenges as unlawful — and to do so by sealing the challenge itself.

The original complaint seeks injunctive relief against this exact conduct. The original complaint (Dkt. 1 at 152-153) requests "an order that prohibits Apple from coercing their employees to allow Apple to gather and use their personal data in for-profit product development, including requests to participate in medical experiments, anatomical measurements, and imaging, gathering employee biometrics, any use

of the Face 'Gobbler' application." Apple is designating is "confidential" the same conduct the complaint asks this Court to enjoin. The designated information is the merits of this litigation.

The Protective Order (Dkt. 229 ¶ 3) expressly excludes from its coverage "(a) any information that is in the public domain at the time of disclosure" and "(b) any information known to the Receiving Party prior to the disclosure." Both prongs are satisfied. This information was known to Plaintiff before the deposition — it is her own body and her own experiences — and it was in the public domain through the operative complaints, concerted activity, media coverage, and government filings. Information outside the Protective Order's scope cannot be sealed based on the Protective Order.

6. **Apple's best argument is claiming the Plaintiff leaked about Apple employee "[redacted]," but even that argument fails.**

Because Apple seeks immediate sealing and shortened time, the Court must evaluate whether Apple has any preliminary likelihood of success on the merits of sealing this term. Apple does not. Apple's active confidentiality designations for these passages include the terms: "[redacted]," "[redacted]," "[redacted]," "[redacted]," and "[redacted]."

Each term/phrase was individually designated across multiple separate deposition excerpts implying Apple believes the term/concept/experience is itself confidential – not how it is used in context. Or if Apple does believe the context important, then it's critical to address that Apple's designations are all specific deposition excerpts in which an employee describes complaints she made to her supervisors, coworkers, the government, and/or the public about work conditions. In each instance, the employee is describing complaints about workplace conditions directed to management and coworkers. This is textbook protected concerted activity under Section 7 of the National Labor Relations Act, among other statutes including EEOC, DFEH, and Silenced No More.

All terms, except one, were already expressly pled in the prior filings for this lawsuit (including the formal complaints). Apple's claim about those terms is clearly without merit. The only specific term Plaintiff has not yet confirmed verbatim on this docket is "[redacted]." Therefore, Apple's strongest legal argument would be that posts/comments made by the Plaintiff about her cervical mucus, or her coworkers [redacted], related to Apple as her employer, was the Plaintiff leaking secret information regarding Apple's business interests in her and her coworkers [redacted]. Apple's stated justification? That these were commercial, for-profit medical studies of employee [redacted] where Apple hoped to monetize the employee [redacted] and use the [redacted] for business development purposes.

The Plaintiff's [redacted] references appear in NLRB filings. Plaintiff's pending NLRB charge, the cover letter accompanying the charge, and the blog post Apple seeks to suppress all reference Apple's designation of [redacted] testimony as confidential. The NLRB charge identifies, among other alleged violations, an *"unlawful gag order on [protected concerted activity] about bodily autonomy."* The blog post states: *"Apple does not own my vagina, has no legitimate interest in who I have sex with, and it's outrageous Apple would even imply it could make these claims."* This is the speech Apple asks the Court to compel Plaintiff to delete. (Note: Apple also attempts to conceal the URL of the blog post from this Court using a tinyURL shortener presumably because the URL also includes "[redacted]").

The Plaintiff has repeatedly pled privacy invasion claims against Apple arising from menstruation and sexual activity "studies" starting with Plaintiff's Original Complaint in this case in Sept. 2023. She's also used terms like "[redacted]" but it does not appear she's pled the phrase "[redacted]" in this environmental, health, & safety whistleblower retaliation case. So, if Apple cannot claim confidentiality regarding "[redacted]" or "[redacted]," then it must argue the "[redacted]" content is unrelated to [redacted] and [redacted].

This requires an untenable argument. Cervical mucus is a subcategory of menstruation and ovulation, produced by the cervix, and regulated by estrogen and progesterone across the menstrual cycle. Its entire function and relevance in health tracking is as an ovulation and menstruation biomarker. Every complaint version on this docket complains about Apple's ovulation and menstruation studies. The designated deposition testimony discusses [redacted] in the context of those same [redacted] and [redacted] studies. For Apple to argue that "[redacted]" is a distinct, previously undisclosed category of information — rather than a detail of the already-public ovulation and menstruation studies — Apple would need to argue that the employee's testimony was not actually about the [redacted].

Further, a 2023 French magazine article in Telerama describes Apple's menstrual cycle monitoring of employees.[2] In that reporting, a former Apple coworker, organizing with the Plaintiff around these issues, shared details about the cervical mucus tracking program with the reporter, including photographs of the physical kit Apple provided to female engineers. Apple is aware of this reporting and was asked for

---

[2] Olivier Tesquet, *Ashley Gjøvik, lanceuse d'alerte licenciée par Apple, seule contre tous: La faute de cette salariée, licenciée en 2021 : avoir révélé que la firme californienne transforme ses employés en cobayes. Allant jusqu'à les traquer dans leur intimité.,* (translated: Ashley Gjøvik, whistleblower fired by Apple, alone against everyone. This employee's offense, for which she was dismissed in 2021: revealing that the Californian company turns its employees into guinea pigs, even going so far as to stalk them in their private lives), Telerama, March 14 2023, https://www.telerama.fr/debats-reportages/ashley-gjovik-lanceuse-d-alerte-licenciee-par-apple-seule-contre-tous-7014661.php

comment. If Apple wishes to pursue sealing of this term, it must demonstrate that "[redacted]" constitutes a "trade secret" or "competitively sensitive business information" as required by *Oracle*, and must explain how a subcategory of the [redacted] (discussed publicly across multiple complaints, media articles, and government filings) becomes confidential when referred to by its clinical name.

7. **Apple is using the protective order for its admitted original and exclusive purpose: to silence its employee about her workplace complaints and whistleblower disclosures.**

Before the Protective Order was entered, during meet-and-confer regarding its terms, Apple's counsel stated that Apple's intended use of the order was to retroactively designate Plaintiff's public complaints and protected disclosures as "confidential." Plaintiff opposed entry of the Protective Order on this basis and informed both the district court and the Ninth Circuit that Apple had stated this was its plan. See Appellant's Motion for Injunction, Case No. 25-2028, DktEntry 15.1 at 13 (9th Cir. May 7, 2025) (reporting that "Apple admitted their only plan for [the protective order] now is to make her protected disclosures 'confidential' under court order" and that "Apple's counsel told Gjovik they only wanted the court protective order to use to threaten her").

That is what has now occurred. Apple obtained the Protective Order by representing to the Court that it could not produce documents in discovery without one. Since entry of the order, Apple has produced no documents under the order and has refused to produce any further documents in discovery generally. The sole use Apple has made of the Protective Order is to designate Plaintiff's own deposition testimony about her own body, right to privacy, and her workplace complaints as confidential. Now Apple brings the present motion seeking to seal Plaintiff's public filings and compel deletion of Plaintiff's public speech regarding these topics, despite their presence in every complaint filed in this docket.

The information Apple is designating is an employee's complaints about invasions of her privacy — including her sexual and reproductive privacy — in the workplace. These complaints implicate practices that affect not only employees but also consumers. In *Lopez v. Apple Inc.*, Case No. 4:19-cv-04577-JSW (N.D. Cal.), Apple was sanctioned for concealing and destroying evidence of surveillance and personal data collection from millions of users without their knowledge or consent, including during sexual activity — the same category of conduct Plaintiff's workplace complaints describe. Apple's position that complaints about its data collection practices are "confidential" is not a confidentiality argument. It is a concealment argument and has been found to be sanctionable misconduct.

This Court should consider Apple's credibility in this district when evaluating the present motion, including this history of misleading this court. In *Epic Games v. Apple Inc.*, Case No. 4:20-cv-05640-YGR

(N.D. Cal. Apr. 30, 2025), Judge Gonzalez Rogers issued an 80-page contempt order finding that Apple willfully violated a federal injunction and that Apple executives testified falsely under oath. (Complaining that Apple's filing "strains credulity," that Apple intentionally "thwarted" an injunction, and "remarkably, Apple believed that [the] Court would not see through [Apple's] obvious cover-up" (*Epic Games,* Dkt. 1508, Order at 2). She also complained that when Apple was "afforded ample opportunity to respond" to a court order Apple instead "chose to defy [the] Court's order and manufacture post hoc justifications for maintaining its anticompetitive revenue stream." (*Epic Games,* Dkt. 1508, Order at 75).

Judge Gonzalez Rogers found later revealed evidence exposed that Apple was intentionally and actively violating federal antitrust law during the antitrust proceeding and "Apple knew exactly what it was doing and at every turn chose the most anticompetitive option." (*Epic Games* at 2). She also complained that Apple's approach to compliance with court orders "would require courts to effectively engage in a 'whack-a-mole' game" with Apple in order "to require compliance." (Id. at 57). The Court then referred the matter to the U.S. Dept. of Justice requesting an investigation into Apple and its executives for potential criminal charges of obstruction of justice. (Id). The court ended its 80 page Order complaining again that Apple "willfully chose not to comply with [the] Court's Injunction," Apple "did so with the express intent to create new anticompetitive barriers which would, by design and in effect, maintain a valued revenue stream; a revenue stream previously found to be anticompetitive." (*Id* at 78). The Court further noted that Apple "thought [the] Court would tolerate such insubordination was a gross miscalculation. As always, the coverup made it worse. For [the] Court, there is no second bite at the apple." (*Id* at 78 and cc'ing the U.S. Attorney for the Northern District of California on the Order).

That was less than one year ago. Apple's representations to courts in this district (including representations about the purpose and necessity of protective orders) must be evaluated in that context. In 2023-2025, the Plaintiff also made repeated objections and pleas for the court to allow her to be heard and her rights protected citing Marsy's Law and the Crime Victims' Rights Act (18 U.S.C. § 3771). Now Apple baselessly accuses the Plaintiff of misconduct and leaking, while demanding a Notice of Pendency (documenting a criminal investigation was opened into Apple substantiating her pending crime victim retaliation claim) be sealed, deleted, and declared secret forever.

Apple is asking this Court to treat an employee's workplace complaints as trade secrets including sealing NLRB charges and issuing gag orders preventing employees from reporting violations of federal law. Two years ago, in *Apple Inc. v. Rivos, Inc.*, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024), this district denied sealing of deposition testimony discussing "Apple's practices with respect to its employees" and

warned that frivolous or overbroad sealing motions risk sanctions. Apple's designated material here (an employee's testimony about workplace studies involving her [redacted] and [redacted]) is much further removed from any legitimate confidentiality interest than the employee-practices testimony Judge Pitts found unsealable in *Rivos* and Apple's been warned about this specific topic by this District.

8. **<u>Apple does not actually identify the content it seeks to suppress beyond a NLRB charge, NLRB cover letter for that charge, a blog post about the NLRB charge, and Notice of Pendency filed to this docket notifying the court of the NLRB charge.</u>**

Apple's motion identifies Plaintiff's blog post and social media posts as containing designated material but uses a tinyURL shortener for Plaintiff's website and provides no URLs for the social media posts. The actual blog post URL is: "apple-claims-it-owns-its-employees-[redacted]-a-new-nlrb-charge-reveals-the-logical-endpoint-of-corporate-confidentiality-abuse." Apple does not identify timestamps, page titles, or the specific content within each post it contends is designated material. Apple also cannot seal its own filings, then argue the seal justifies deletion of the underlying content, then argue that once deleted the seal is justified because the content is no longer public. That reasoning is circular and fails basic legal analysis.

Plaintiff's website and social media contain years of posts on these topics. The same information appears in the OSTP comment (available on Regulations.gov), the GAO Report to Congress, five versions of the complaint on this docket, exhibits at Dkt. 35-12, Ninth Circuit filings, NLRB filings going back to 2021, articles in The Verge, Gizmodo, Bloomberg, and Telerama, and filings in Plaintiff's Chapter 7 bankruptcy proceeding in the District of Massachusetts. If the Court ordered deletion of any reference to "[redacted]," Plaintiff would need to seek sealing or redaction from the Ninth Circuit, this Court (for the complaints and exhibits already on the docket), the Federal Register, the GAO, the NLRB, the Massachusetts bankruptcy court, and multiple media outlets. Apple has not identified the scope of what it requests.

The NLRB implications alone require full briefing. The designated content — and the terms Apple asks the Court to seal and compel deletion of — appears in Plaintiff's pending NLRB charge and its accompanying cover letter. The NLRB charge was filed as a Notice of Pendency on this Court's docket (Dkt. 278). Before the Court could grant any sealing or deletion order encompassing this content, it would need to resolve the following questions, none of which Apple has briefed:

- Is Plaintiff permitted to discuss the content of her NLRB charges at all? If the designated terms are "confidential," may she reference them in communications with the NLRB? Must Plaintiff withdraw her pending NLRB charges to comply with a sealing order? If the charge itself contains

designated terms, does compliance require asking the Board to seal or destroy the filing?

- May Plaintiff complete the sworn affidavit with the Board agent about the alleged violations — which necessarily requires discussing the designated terms — without obtaining prior court approval? If a labor reporter obtains a copy of the NLRB charge through FOIA and asks Plaintiff about the allegations, is Plaintiff forbidden from discussing the subject matter of her own charge with the press? Must she insist the press not publish?
- How do these restrictions interact with *Garmon* preemption, the *Machinists* preemption doctrine, the Norris-LaGuardia Act's prohibition on injunctions in labor disputes (29 U.S. Code § 101, *et. seq.*) — including injunctions restricting the publicizing of labor disputes — and separation of powers principles that limit courts from interfering with NLRB proceedings?
- Can this court proceed at all without the Bankruptcy Court lifting the statutory Stay (11 U.S. Code § 362)[3] which prevents claims from being asserted against a Ch. 7 debtor? Why hasn't Apple asked to lift the stay?

NLRB charges are filings with a federal agency protected under Section 8(a)(4) of the National Labor Relations Act. A court order requiring deletion of social media posts about the content of one's own NLRB charges, or sealing the charges themselves, raises issues that cannot be resolved on a shortened briefing schedule without full adversarial presentation. The court will have to conduct extensive analysis to identify if it even has jurisdiction to hear the matter and it likely does not. Accordingly, these questions are a reason for the 35-day schedule the Court already set — not for the 5-day schedule Apple requests.

The Norris–LaGuardia Act (a.k.a. the "Anti-Injunction Bill") expressly limited the federal court's jurisdiction regarding labor disputes and barred the federal court's from issuing any injunctions arising out of or related to labor disputes, against workers organizing with coworkers about nonviolent labor disputes. The 1932 statute expressly creates "limitations upon the jurisdiction and authority of the courts of the United States" regarding workers involved in "self-organization or … other concerted activities for the purpose of… mutual aid or protection." 29 U.S. Code § 102. The rationale provided by Congress is that:

> "The individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with

---

[3] **11 U.S. Code § 362 - Automatic stay.** A Ch. 7 Petition for bankruptcy "operates as a stay, applicable to all entities, of— (1 )the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2)the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3)any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;… **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case…"

> his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents… in concerted activities... for the purpose of mutual aid or protection…"

29 U.S. Code § 102 - *Public policy in labor matters declared*. (Mar. 23, 1932, ch. 90, § 2, 47 Stat. 70).

Whether Plaintiff's speech about workplace conditions constitutes protected concerted activity under Section 7 is a determination within the NLRB's exclusive jurisdiction. A charge raising this question is pending before the Board. Under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), when an activity is 'arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.' This jurisdictional bar does not depend on the Board's ultimate conclusion—it exists because the determination itself is reserved to the Board, subject to circuit court review, not district court adjudication.

If the court were to grant Apple's requested relief (i.e., sealing NLRB charges, compelling deletion of posts about workplace conditions, imposing a gag order on the employee) and the NLRB then finds Apple's underlying conduct with these secrecy rules and resulting Court's enforcement constituted NLRA violations, the NLRB would find the Court issued injunctive relief in violation of federal statutes eliminating the court's jurisdiction in the matter, and the Court acted in aid of Apple's misconduct which the Board may determine violated federal labor law. So the court helped Apple bust unions and retaliate against labor organizers. That's the scenario *Garmon* exists to prevent.

**9. <u>Apple improperly seeks to seal entire documents.</u>**

Local Rule 79-5(a) requires parties to "avoid wherever possible sealing entire documents." Judge Westmore's Standing Order reinforces this: "*no document shall be filed under seal without request for a court order that is narrowly tailored to cover only the document, the particular portion of the document, or category of documents that is sealable under the governing legal standard*." Apple seeks to seal Exhibit A (the designation list) in its entirety. This is the document that identifies what Apple claims is confidential — the central document at issue. If sealed entirely, no one can evaluate whether the designations are proper. Local Rule 79-5(f)(6) warns: "*overly broad requests to seal may result in denial of motion*."

Apple's approach, if accepted, would make protective order designations self-executing for sealing purposes: designate material as confidential, then cite the designation as the basis for sealing, then seal the designation list itself so no one can evaluate whether the designations were proper. This is the exact framework rejected in *Sereni*. It is even more problematic here because Apple asks the Court to seal the

very evidence needed to evaluate the underlying motion to enforce.

If the evidence and arguments are sealed, neither Plaintiff nor the public can determine whether Apple's designations are facially legitimate or whether they are the kind of "*mass, indiscriminate, or routinized designations*" the Protective Order itself prohibits (Dkt. 229 ¶ 5.1). Apple is asking the Court to prevent review, discussion, or analysis of the documents whose propriety are admittedly at issue and alleged to constitute violations of federal labor law. The Ninth Circuit has held the "strong presumption of access to judicial records applies fully to dispositive pleadings… because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the "public's understanding of the judicial process and of significant public events." *Kamakana* at 5402 citing *Valley Broadcasting Co. v. U.S. Dist. Ct.,* 798 F.2d, 1289, 1294, (9th Cir. 1986).

This means the presumption may not apply for a motion or filing that is "unrelated, or only tangentially related, to the underlying cause of action." *Kamakana* at 5403, quoting *Foltz* at 1135, quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). However, here the content Apple is alleging is confidential and must be sealed including the actual claims in this lawsuit, dozens of filings over multiple years on just this docket, hundreds of posts and filings across numerous venues, platforms and jurisdictions – and which Apple admitted in its own filing that it believes this current dispute represents the same "obligations" the Plaintiff has under the "terms of the Confidentiality and Intellectual Property Agreement" with Apple, which Apple then said the Plaintiff breached/violated and that "led to her termination from Apple in the first place" (Dkt. 280 at 2, footnote 2).[4] That makes Apple's motion to seal an entire declaration, by Apple's own admission, comparable to requesting to seal the entire Declaration in support of a Motion for Summary Judgement.

The contrast with proper practice in this district is instructive. In *Brooks v. Thomson Reuters Corp.*, No. 3:21-cv-01418-EMC, before Judge Chen, sealing orders specified redactions with extraordinary granularity — individual deposition lines (e.g., "Fox Dep. at 50:15-19 (after 'believe it's about' to the end of line 19)") and individual phrases within briefing (e.g., "page 1, lines 10-11 (between 'including' and 'of dollars')") across eight pages of itemized redactions. Each redaction was supported by a detailed corporate representative declaration attesting to the specific competitive harm from disclosure of that specific

[4] Apple's filing at Dkt. 280: "Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement she signed. But Plaintiff has disregarded those obligations before; indeed, it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." page 2 at footnote 2.

information — revenue figures, customer lists, internal training materials, proprietary product architecture, and data licensing agreements. Apple's motion says "*Entire document*."

A party accused of violating a court order has the right to know what conduct is alleged to be violative and to examine the evidence against her. Sealing the designation list and the supporting declaration while simultaneously seeking sanctions based on those documents denies Plaintiff the ability to respond.

## IV. APPLE'S REQUESTS TO SEAL PLAINTIFF'S FILINGS ARE NOT PROPERLY BEFORE THIS COURT

Apple's Motion to Enforce (Dkt. 294) requests sealing of Dkts. 278, 284, and 285 but Apple never filed a motion to seal any of these filings. This alone is dispositive: there is no motion before the Court to seal these documents so the request is not ripe for judicial consideration. The procedure for sealing another party's filings under Local Rule 79-5(f) requires the Designating Party to file a separate declaration within 7 days establishing sealability, after which the opposing party gets 4 days to respond. Apple has not followed this procedure. Per *Synchronoss*: failure to comply with 79-5(f) "renders . . . entire . . . sealing mechanism noncompliant."

Additionally, two of these three filings present jurisdictional problems. The Notice of Pendency at (Dkt. 278) is addressed to Judge Chen and it relates to case management, not discovery. A magistrate judge cannot seal a filing directed to the presiding district judge without that judge's involvement. Similarly the Motion to Quash (Dkt. 285) was also filed to Judge Chen, who ruled on it. Judge Chen identified no confidentiality concerns and the motion is already acted upon by the court. Judge Westmore cannot seal a motion the district judge has already adjudicated.

If Apple wishes to seal these filings, it must file proper motions to seal: under 79-5(f), with supporting declarations, with proper briefing schedules, and directed to the correct judges. Furthermore, if granted as requested, sealing these filings would implicitly require sealing this litigation's complaints, multiple motions and exhibits, and much of the docket — since the same information appears throughout this case and has for two and half years. Sealing all this information would also require coordination with the Ninth Circuit (Case No. 25-2028), the NLRB, and the bankruptcy court in the District of Massachusetts, where Plaintiff has filed the information previously. Apple's Motion actually asks this court to seal most of this lawsuit and case docket. Thus, this is a case management issue for Judge Chen, not a discovery ruling for Judge Westmore.

## V. APPLE'S REQUESTS FOR INJUNCTIVE RELIEF ARE NOT PROPERLY

**BEFORE THIS COURT**

Apple's Motion to Enforce requests compelled deletion of published blog posts and social media content and a prohibition on future publication of material Apple designates as confidential. These are injunctions: a mandatory injunction (compelling deletion) and a prohibitory injunction / prior restraint (restricting future speech). Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may hear and determine any pretrial matter except, among others, "a motion for injunctive relief."

This is a statutory prohibition, not a discretionary limit. Motions for injunctive relief are dispositive matters that magistrate judges may only address by recommendation to the district judge under § 636(b)(1)(B). Judge Westmore recognized this during the Feb. 20 conference when she stated there would be no injunctions. Judge Westmore said "No, there is no injunction" and the only thing that may occur is "the court can order sanctions." (38:56): Plaintiff asked, "would be a finding of contempt based on evidence in a hearing that's sent to Judge Chen and Judge Chen issues?" (39:29) Judge Westmore said: "No, no, no. I don't know if it's going to be any sort of motion for contempt." (39:29).

In addition, Apple's prior letter to the Court stated that its request arises from Plaintiff's employment agreement and trade secret obligations — not from discovery. Apple also takes the position that the "breach" determination is freestanding and does not require resolution of whether the designations are proper. If that is Apple's position, then Apple is not seeking discovery relief. Apple is seeking a freestanding injunction based on an employment agreement, directed at out-of-court speech. That is a Rule 65 motion to Judge Chen, following a request to lift the Stay. See *In re Hruby,* 512 B.R. 262, 274 (Bankr. D. Colo. 2014) (employer must seek stay relief before enforcing confidentiality provisions against debtor-employee).

If Apple genuinely believes trade secrets are being disclosed and needs emergency injunctive relief, the proper vehicle is a TRO motion to Judge Chen under Rule 65, satisfying the four *Winter v. NRDC*, 555 U.S. 7 (2008) factors: (1) likelihood of success on merits; (2) irreparable harm; (3) balance of equities; (4) public interest. Apple must also address the prior restraint doctrine, which imposes a "heavy presumption" of unconstitutionality on content-based speech restrictions. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); see also *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (applying prior restraint analysis to content-based injunctions). Apple has not filed such a motion and presumably will never because it cannot argue and prove that burden in good faith.

Additionally, Plaintiff incorporates by reference her previously filed objections at Dkt. Nos. 284, 285, and 286 — including Plaintiff's motion for sanctions (Dkt. 286) based on Apple's failure to seek relief

from the automatic stay in Plaintiff's Chapter 7 bankruptcy proceeding before requesting injunctive relief and findings against Plaintiff in this Court — as well as the automatic stay under 11 U.S.C. § 362(a)(1), *Garmon* preemption, the Norris-LaGuardia Act, the Speak Out Act (Pub. L. No. 117-224), California's Silenced No More Act (Cal. Gov. Code § 12964.5), and First Amendment prior restraint protections.

## VI. THE ONLY REQUEST ACTUALLY BEFORE JUDGE WESTMORE: AN UNRIPE MOTION FOR DECLARATORY RELIEF.

**10. Defendant must meet and confer on this matter prior to filing motions, per the Court's Feb. 20 2026 order.**

The only category of relief that is actually before Judge Westmore is a request for a declaratory finding regarding whether Plaintiff breached the Protective Order — and only on the 35-day schedule the Court previously ordered on Feb. 20 2026. However, this request has extensive issues that still need proper briefing (and this response is not the formal opposition – the Plaintiff should still have 14 days to draft and file that). However, as a threshold matter, it's critical to immediately address that the Court ordered good faith participation in meet/confer as a prerequisite prior to the party's having a right to engage in motion practice. The Court warned Apple on Feb. 20, 2026: "if you file a motion and you haven't met your obligation to meet and confer, then I may not consider the motion because you haven't done it." (2/20/26 Judge Westmore at 58:04). The Plaintiff quoted this warning to Apple in the Feb. 26, 2026 emails. (Exhibit A). Apple still refused. Because Apple expressly refused to meet/confer despite the Court ordering met/confer as a sort of vesting to be able to file motions, then the condition precedent is not satisfied and Apple cannot proceed.

**11. The plain text of the Protective Order excludes all of the content at issue from the scope of that Protective Order.**

The Protective Order's own exceptions are dispositive. The Protective Order (Dkt. 229 ¶ 3) does not cover information already in the public domain or information known to the Receiving Party prior to disclosure. [5]All designated information was known to Plaintiff before the deposition (it is her own body, her own experiences) and was in the public domain (through complaints on this docket, media articles,

[5] "The protections conferred by this Stipulation & Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party." Dkt. 229 at 3.

federal filings). A protective order cannot restrict use of information obtained independently from discovery or already in the public domain. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-37 (1984); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

Information never covered by the Protective Order cannot be "designated" under it, and disclosing such information cannot constitute a "breach." This is what the Plaintiff has repeatedly argued as a threshold matter regarding Apple's allegations here. The Protective Order is irrelevant to this dispute because the Protective Order expressly states it does not apply to the specific information Apple is claiming is now confidential: public, already-known, personally experienced, and otherwise learned outside of discovery. Apple disregards the plain text of the Protective Order as treats its terms as irrelevant and non binding, but the Rule against Surplusage and Presumption of Validity compels this court to interpret its own Order as not including unnecessary and irrelevant terms.

The Protective Order expressly rejects coverage of the content at issue here and it does so with a definitive "*the protections conferred… **do not cover** the following…*" (emphasis added) while the Order expressly affirms the scope of covered content saying the "*protections conferred… cover not only Protected Materials"* but also other materials/conduct related to those Protected Materials. (Dkt. 229 ¶ 3). Section 2 defines "Protected Material" as "*any Disclosure or Discovery Material that is designated as "CONFIDENTIAL.*" (¶ 2.13). Notably the Designation Section refers to "Designating Protected Material" which is the category of information separate from public records, already known information, and information learned outside discovery. Therefore, any attempt to "designate" public information as "confidential" under the Protective Order is void because the terms of the Order say it does not reach that content and/or subject matter.

Within the four corners of the document, the Protective Order expressly, repeatedly says it does not apply to all of the content at issue here: public information and records, pre-existing knowledge, and information learned outside discovery. Courts are not authorized to interpret statutory or contract provisions to be meaningless (*verba cum effectu sunt accipienda)* so the repeated terms excluding this information from the Protective Order, must mean that the Order does not apply to the content, which is the content at issue here. ("If possible, every word and every provision is to be given effect. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence," Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012).)

The language of the designation and meet/confer process also uses separate terminology (Protected Material, etc.) then the content the same Order asserts is not governed by the Order or its

procedures (no protection under the Order; *expressio unius*). The only way to maintain any harmony between the Protective Order and the First Amendment is constitutional avoidance – to assume that the Protective Order, as written, does not infringe upon constitutionally protected speech, which fortunately, the text of the Order purports it will not and cannot, regardless of Apple's current arguments.

Finally, the Order's introduction also expressly states that "*this Order does not confer blanket protections on all disclosures or responses to discovery*" and the "*protection it affords [records] from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.*" (Dkt. 229, ¶ 1). This means that simply designating a public records cannot transmogrify that one-word designation into a court ordered restraining order, or gag order, or injunction, or justification so seal documents. Instead, the text affirms the Protective Order and its associated designation/challenge processes have no coverage or authority over public records, already known information, and information learned outside of discovery – period.

**12. <u>Analysis of a 'breach' of an Order where the scope of the Order is at issue, requires the Court determine the nature and legitimacy of the designations/content at issue.</u>**

Apple's legal theory requires resolution of the dispute regarding the validity of Apple's designations. Apple argues that designations must be honored regardless of whether they are proper, even if they are clearly improper, and that the "breach" analysis is independent of the designation validity analysis. But a party cannot violate a protective order by disclosing information the protective order does not cover. That's the show stopping issue here. The designation validity question is necessarily part of any breach analysis, when the information designated is public and already known information, like here.

Further, the framework of the Protective Order puts a duty on the *Designating Party* (here, Apple) to substantiate its designations, to not make frivolous or bad faith designation, to not overdesignate, and to quickly withdraw designation if it realizes they are improper or not substantiated. The duty to withdraw mistaken designations is mandatory. (Dkt. 229 ¶ 5.1; "*Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.*").

The Protective Order, as written, assumes designations can be wrong and puts the consequences on the party that made the bad designation—not on the party who refuses to pretend public information is secret. The Court ordered further meet/confer on this matter, yet Apple refused the Court's order, will not meet/confer, or substantiate its allegations, and is insisting on a 2-day briefing deadline for the Plaintiff instead of the 14 days she was promised on 2/20.

Apple has refused to engage in meet-and-confer regarding the designations in violation of court

orders and shifts between claiming 1) there's an independent basis for alleging these "breaches" under the employee's employment agreement ("*Plaintiff is also independently prohibited from publicly disclosing information regarding Apple studies pursuant to the terms of the Confidentiality and Intellectual Property Agreement*" Dkt. 280 at 2, fn 2); and Apple compares these current alleged "breaches" to Apple's justification for terminating the Plaintiff ("*Plaintiff has disregarded those obligations before… [and] that led to her termination from Apple in the first place*." Id.).

However, then, as soon as confronted about the April 2025 NLRB settlement and the need to request the Stay be lifted in the bankruptcy proceeding prior to making these claims, then Apple shifted to alleging the Protective Order provides complete legal authority for its allegations – despite the Protective Order expressly exempting the very subject matter Apple is trying to claim inherits a court ordered prior restraint and justification to seal documents simply by Apple "designating" it so and with their prior filing expressly arguing the legal authority to sanction the employee arises from her now mostly defunct employment agreement with Apple. For example, the terms Apple agreed to include:

> "The Charged Party ("Apple") will comply with all the terms and provisions of said Notice…. Apple agrees that it will not enforce the definition of Proprietary Information (or similar terms) set forth in any version of the Confidentiality and Intellectual Property Agreement ("IPA") effective as of the date that this Agreement is executed to the extent that such definition covers terms and conditions of employment protected under Section 7 of the Act. A further material term of this Agreement is that the Charged Party is directed to prospectively clarify the definition of Proprietary Information (or similar terms) in the IPA and make other clarifications to the IPA relating to the Section 7 rights of employees… Performance by the Charged Party with the terms and provisions of this Agreement shall commence immediately after the Agreement. The Board may then, without necessity of trial or any other proceeding, find all allegations of the complaint to be true and make findings of fact and conclusions of law consistent with those allegations adverse to the Charged Party on all issues raised by the pleadings. The Board may then issue an order providing a full remedy for the violations found as is appropriate to remedy such violations. The parties further agree that a U.S. Court of Appeals Judgment may be entered enforcing the Board order ex parte… THE NATIONAL LABOR RELATIONS ACT GIVES YOU THE RIGHT TO:.. Act together with other employees for your benefit and protection;… WE WILL NOT interfere with, restrain, or coerce you in the exercise of the above rights. YOU HAVE THE RIGHT to discuss wages, hours and working conditions and WE WILL NOT do anything to interfere with your exercise of that right. WE WILL NOT promulgate, maintain, or enforce any rule that defines confidential information as "anything not explicitly, publicly, or purposefully disclosed by Apple." WE WILL NOT promulgate, maintain, or enforce a Confidentiality and Intellectual Property Agreement, Business Conduct Policy, Misconduct and Discipline Policy, Social Media and Online Communications Policy, Confidentiality Obligations Upon Termination of Employment statement, or a Business Conduct and Global Compliance FAQ regarding confidential information that broadly defines "confidential" or "proprietary" information, or relies upon any other overly broad definitions of those terms, without contemporaneously notifying employees of their rights to discuss wages, hours, or working conditions and their rights to engage in union or other protected, concerted activity under the NLRA…. WE WILL NOT advise you that you are subject to discipline for violating overly broad rules regarding confidential or proprietary information or for failing to report alleged violations of overly broad rules relating to confidential or proprietary information…. WE HAVE rescinded the aspects of Business Conduct and Global Compliance FAQ regarding Confidential Information described… WE HAVE rescinded the aspects of the Business Conduct Policy described above and revised it to make clear that Apple Confidential Information does not include wages, hours, and working conditions, that employees may communicate about labor disputes… WE HAVE rescinded the aspects of the Workplace Searches and

> Privacy Policy described above and revised it to conform with the definition of Apple Confidential Information described above and to inform employees that searches will not be used to monitor employees' protected, concerted activity and WE HAVE informed employees of these revisions…. WE HAVE rescinded the aspects of the Misconduct and Discipline Policy described above and revised it to conform with the definition of Apple Confidential Information described above, to reiterate employee rights under the National Labor Relations Act… WE HAVE rescinded the aspects of the Social Media and Online Communications Policy described above and revised it to conform with the definition of Apple Confidential Information described… WE HAVE rescinded the prior version of the Confidentiality Obligations Upon Termination of Employment statement, which contained an overbroad definition of proprietary information, and revised it to conform with the definition of Apple Confidential Information described above and WE HAVE informed employees of these revisions. WE WILL NOT in any like or related manner interfere with your rights under Section 7 of the Act. /s/ Apple Inc (Charged Party)."

(Dkt. 194 at 17-20, the April 2025 NLRB Settlement Agreement between Apple, Gjovik, NLRB).

**13. The Court continues to have no jurisdiction on this matter under the National Labor Relations Act (including *Garmon* and *Machinists* preemption) and the Norris-LaGuardia Act of 1932 (e.g., 29 U.S.C. §§ 101-115).**

The NLRB charges are facially protected activity. But the content in dispute here is also facially arising from work conditions, worker complaints about work conditions, employee organizing, complaints and publicity intending to compel the employer to improve work conditions, and so on. All of this is a matter for the NLRB to review, it is in front of the NLRB now, and the Court cannot find that public information and government filings constitute a basis for sanctions under discovery rules because that subject matter is generally never governed by discovery rules by design.

The Plaintiff did also lawfully publicize the fact she exposed Apple attempting to conceal and silence workplace complaints again, including about privacy invasions, again. She shared with her coworkers and the public that she filed NLRB charges against Apple alleging NLRA violations because she believes Apple violated the NLRA and the documented conduct in her charges and cover letter is evidence of NLRA violations. The Plaintiff expressly complained and published that Apple was trying to misuse a discovery Protective Order to retroactively claim that years-long ongoing complaints were now suddenly confidential and that the employee is now under some sort of gag order as long as Apple can draw it out.

That's why Apple's misuse of discovery procedures is repeatedly mentioned in the NLRB charge at issue – and what the NLRB will care most about is what the subject matter of the Plaintiff's statements was, what exactly Apple tried to censor, and if either of those things are related to work conditions, mutual aid & protection, or employee organizing – then Apple surely violated the NLRA again in its designation and subsequent misconduct. NLRB could find this violation even if Apple had perfectly complied with the Protective Order, which it has not – or if the Plaintiff violated the Protective Order, which she did not.

In addition, to the extent Apple seeks a finding that Plaintiff "breached" the Protective Order by filing or discussing NLRB charges, those charges are filings with a federal agency protected under Section

8(a)(4) of the National Labor Relations Act. A finding that discussing one's own NLRB charges constitutes a "breach" of a protective order would interfere with employee rights under Section 8(a)(1) which is why *Garmon* and *Machinists* preemption remove jurisdiction from the federal courts regarding these issues – so accidental bad decisions, cannot even be enforced – they're void because there's no jurisdiction.

## VII. CONCLUSION & RELIEF REQUESTED

Finally, during the Conference Call on 2/20 the Court acknowledged the Plaintiff's plan to file a motion against Apple for Apple violating the Protective Order, if Apple also moves against the Plaintiff. The Court acknowledged this on Feb. 20 yet Apple insists on a schedule that would make it impossible to hear both motions in the same time frame. Both parties' motions should be heard together on the same schedule. In conclusion, designating public information as confidential under this order is like Apple recording a deed to property it does not own. Apple can file the paperwork and threaten to call the police if people come near it, but none of that transfers title, because they never had title to that land. Like Apple never had property rights to the Plaintiff's vagina and cervix, their secretions, her ovulation and menstruation, or her personal sexual activity – let alone the Plaintiff (or any Apple worker's) complaints about Apple invading its sexual privacy regarding those topics – which is what Apple claims here, like a house on a parcel that belongs to someone else completely yet Apple is insisting the court decide Apple now owns that land simply because Apple says so.

The order never covered the information Apple complains about, so the designation never attached to that information, and applying the Order in such a way to enable that would facially violate the U.S. Constitution and Federal Rules of Civil Procedure. Apple asks the court to grant extraordinary relief—sealing public records, compelling deletion of published speech, imposing a prior restraint on future speech—while providing no factual basis for any of it. Every applicable standard requires a particularized showing by the movant. Apple has made none. The court cannot supply what Apple has chosen to withhold. Accordingly, the Plaintiff respectfully requests that the Court DENY Apple's motions at Dkt. 293 and 295, keep the current schedule for Dkt. 294 or else DISMISS that Motion too as unripe; and ORDER Apple to meet/confer prior to refiling their motions properly.

Respectfully submitted,



**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed Feb. 27 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

## EXHIBIT A

Exhibit A: Email chain of February 26, 2026, between Plaintiff and Apple's counsel, documenting seven requests to meet and confer and Apple's repeated refusals.

# RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

From Ashley Gjovik <ashleymgjovik@protonmail.com>

To Riechert, Melinda<mriechert@orrick.com>

CC Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Jimenez, Catherine M.<catherine.jimenez@pillsburylaw.com>, Trechter, Reed C.<reed.trechter@pillsburylaw.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Troop, Andrew M.<andrew.troop@pillsburylaw.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>, Park, Julie Y.<JuliePark@mofo.com>, Tarantino, William F.<WTarantino@mofo.com>, Russell, Zoe<zrussell@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>

Date Thursday, February 26th, 2026 at 8:59 PM

---

Counselor,

You have not even **started** meet/confer or any discussion regarding your planned motions regarding the protective order.

If you plan to outright refuse meet/confer then I will include that as yet another violation of the Protective Order and Court Orders by Apple, in my opposition and my own filing against Apple alleging breaches of the Protective Order by Apple -- which are already well documented and voluminous.

Again, I ask you to start meet/confer, as you are legally required to and the Court ordered you to, and you promised you would comply, by telling me what Apple's issues are, what relief they're requesting, and what the legal basis is for their request -- with specific facts, legal cites, and evidence to clarify their position. This is an extremely basic request and you did this a few times prior in 2024, so you know how to do this, you're just refusing to do it here which again leads me to believe the entire point of this is illegitimate, otherwise there's no reason for you to willfully violate court orders and the Protective Order, and refuse to make your case to me on whatever these issues are.

You're a litigator and I thought that's your job. I'm pro se and I'm willing to do this, so it seems like this shouldn't be too hard for you -- if you actually intended to comply with the court's orders, rather then willfully disobeying the court's orders while also intentionally violating at least 7 state and federal statutes as you do so.

As you know as a world-class employment defense litigator, the paper trail matters and any unusual procedure (especially skipping steps, diverging from established procedures, etc.) indicates pretext and possible foul play. Similarly, making extreme accusations but concurrently refusing to detail or substantiate those accusations is often found to be the most incriminating behavior because it shows a forbidden animus with direct evidence that is then also further substantiated by the concurrent unexpected and irrational behavior that can only be explained by an unlawful motive and purpose. Then of course, you have already expressly claimed in written papers filed to this court that this entire interaction supposedly symbolizes Apple's termination of my employment and that underlying

"misconduct" in 2021 which you also still refuse to detail or substantiate, and you said that these new vague "leaks" are also violations of my IPA and employment agreements, covering the policies and terms that NLRB forced Apple to revoke and promise to not enforce in the April 2025 trilateral national settlement agreement -- which you are intentionally violating repeatedly, in writing, filed to a court docket.

So again, counselor, would you like to chat and see if we can reach any sort of compromise?

-Ashley

—

**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 8:32 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> There is nothing further to discuss on the issue of compliance with the protective order.
>
> We will continue to meet and confer on the medical records and the deposition designations.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
> M 650 759 1929
> mriechert@orrick.com

**ADVANCED ANALYSIS PENDING**

This email is undergoing additional security analysis. Results will be available shortly.

**[EXTERNAL]**

Counselor,

While I appreciate your declaration attesting to forbidden animus regarding the pending NLRB charges against your client, what you have stated below is not what Judge Westmore said.

I quoted the 2/20 transcript below and the Judge's order. You are repeatedly making statements that are not supported by the record, and which are contrary to the record, which is not productive.

Its clear from the transcript that she prohibited either party from filing any motions unless we meet/confer regarding those motions. That's true for the designations, but it was also true for any motions for sanctions. She said the Protective Order requires that meet/confer for either issue, she said that expressly multiple times, and you promised her you would comply.

Yet today:

- You still have not responded to my 2/4/26 objections to your confidentiality designations including the fact you refused to serve, date, or sign them
- You still have not responded to my subsequent Excel document challenging your 160+ designations in detail which has been sitting and waiting for your response for over a week now
- You still have not engaged in meet/confer regarding your allegations of Protective Order breaches and you are repeatedly telling me in email that you feel like you have no obligation to meet/confer, do not have to meet/confer, and can do whatever you want even if it facially violates the Protective Order, Standing Order, Local Rules, Federal Rules, statutes, case law, and multiple constitutions.

Again, I simply ask you to meet/confer regarding your concerns. Your refusal to do this violates the same Protective Order that you are saying you plan to assert claims against me alleging violations, while knowingly violating that same Protective Order and a Court Order.

Can we chat instead? Just send me more info. Tell me what's up. As stated, I don't actually understand what Apple's factual or legal basis is, and if you tell me maybe I could be willing to compromise on something -- but we'll never know if you refuse to meet/confer.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 8:16 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> The purpose of our conference with the Magistrate was to see if we could avoid the motion by having you agree to take down the postings that violated the protective order. You refused and are continuing to refuse to take down the posting that violated the protective order. There is nothing further to meet and confer about.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
> M 650 759 1929
> mriechert@orrick.com

[EXTERNAL]

Counselor,

Judge Westmore ordered you to meet/confer about your allegations of breaches/violations of the protective order.

It's in the transcript below. It's in her standing order. It's in the protective order. It's in the federal rules of civil procedure.

I'm simply asking you to provide details on your grievances and for us to determine if there's any way to narrow or avoid your motion. But you're insisting on refusing to meet/confer regarding your planned motions -- which is frankly absurd because you're assumably drafting the motions right now, so you could just share what your legal outline is and the issues alleged. It appears you simply do not want to do that -- you do not want to meet/confer. You do not want to narrow or avoid your motion, because, perhaps the entire point of filing this motion is just to file it. To cause chaos, to defame and denylist me, to harass me and threaten and intimidate all Apple workers watching, to obstruct summary judgment and NLRB proceedings, and so on -- that appears to be your actual goal here. I urge you to prove me wrong -- by actually meeting/conferring, as is legally required.

You're also now just mischaracterizing my statements. I said "I've repeatedly said I will comply with the Protective Order" and then you said "You have said, and you continue to say, you will not abide by it." The California and court professional rules expressly prohibit lawyers from attributing positions and statements to parties when the parties did not make those statements, which you're doing here and your statements are demonstrably false.

Refusing to meet/confer prior to filing motions, when the rules and orders say you have to meet/confer, and the court ordered you to meet/confer is sanctionable conduct in itself counselor.

As Judge Westmore told you on the 2/20 call, you have to actually identify:

- the specific content at issue (like quotes, URLs, etc -- the Judge also complained you were making vague statements and she needed actual evidence to review because she did not know what you were talking about specifically)
- a legal basis for claiming that content is confidential (she already told you it would be frivolous to allege a violation based on me tweeting that Apple's trying to silence me and Apple workers about "[redacted]"; similarly there's no prohibition on me posting transcript pages that were never designated confidential which were the full transcript pages that Apple cited in my NLRB cover letter, and which directly documented Apple violated the NLRA while I protested on that very transcript that Apple was violating the NLRA)
- analysis of what part of the order was "violated," and then the actual legal basis for sanctions and injunctions under federal rules and case law because a protective order is not a self-executing legal basis for sanctions (there's law review articles about this)
- again, what Apple's actually wanting to achieve out of all of this because so far its just demanding censorship (unlawful work rules, gag orders), trying to obstruct NLRB proceedings (sealing evidence and testimony away from NLRB so they can't review it), and other unlawful schemes. Prove me wrong here, otherwise that's what I (and assumably NLRB and anyone watching) am left to assume.

Again, I ask you again to please meet/confer.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 7:55 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> Again, you are missing the point. We will and are meeting and conferring on the medical providers issues.
>
> We will be meeting and conferring on the deposition designations.
>
> That is what the Judge is referring to in the language you highlight below.

But there is nothing further to meet and confer about on the protective order. You either agree to abide by it or you don't. You have said, and you continue to say, you will not abide by it since you do not think it is valid and enforceable against you for the reasons you have stated below. As you know from our lengthy conference with the Judge last Friday, the motion for violation of the protective order relates to the fact that you publicly posted, and filed with this court not under seal, deposition testimony we have designated as confidential under the protective order, in violation of the protective order which requires that anything we designate as confidential under the protective order remains confidential unless and until the parties or the Court agrees it is not confidential. When we file our motion you will receive our case cites and legal authority in support of the motion.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

**[EXTERNAL]**

Hello counselors,

I note you are refusing to meet/confer, again. ("*there is nothing further to meet and confer about on this issue*" -counsel for Apple, just now).

The Protective Order requires Meet/Confer (Dkt. 229 ¶ 6.2-6.3) and your refusal to meet and confer is yet another violation of the Protective Order by Apple, which will be included in my own motion which the Judge noted I would be filing against Apple if Apple resorts to filing theirs against me.

Judge Westmore's standing order also requires that you complete meet/confer prior to filing any motion for sanctions which this is. (¶ 13, 19: "*No motion for sanctions may be filed until after the moving party has complied with the requirements of paragraphs 13-17 above*.")

I'm asking you again to actually meet and confer on both issues. The court expressly ordered you to meet and confer with me and have a substantive conversation regarding whatever grievances you have prior to filing a motion and warned you she would not hear your motions if you did not have a substantive meet and confer.

What's missing from this conversation includes:

- Apple identifying specifically which actions/statements it believes violated some order, agreement, or law
- Which order, agreement, and/or law each action/statement violated and why, with case cites
- Why exactly Apple feels the specific acts/statements were improper, prejudicial, or harmful to Apple with some kind of quantification and qualification of that harm
- Any legal authority whatsoever to support that a coerced court model protective order could hold some legal authority preempting case law, regulations, rules, statutes, and the federal and California constitutions
- If there is any sort of compromise to make with Apple regarding this matter that's not simply demanding the employee delete protected speech, agree to not engage in PCA, withdraw/conceal complaints filed to US gov against Apple, and refuse to cooperate with NLRB proceedings by request of Apple. Because that's what I hear you're asking for.

Under a case law analysis of a pretextual threat or retaliatory act, what you're doing right now checks all the boxes: vague, nondescript, shifting, generalized, post-hoc rationalizations, mischaracterizing prior communications, refusing to disclose the factual basis for the punishment, etc. This is also classic DARVO — reframing the complainant's complaints as the misconduct, while refusing to substantiate the underlying claims even when ordered by the court to do so.

Further, my argument about mutual assent is a foundational objection and does not waive your requirement to meet/confer. I've repeatedly said I will comply with the Protective Order (despite objecting to it before, during, and after I was forced to sign it) but only with its terms interpreted as to not conflict with the constitution, federal statutes, or the federal rules. Accordingly, even though I don't want the Protective Order and I oppose being bound by it, I'm not violating it and do not intend to violate it, and it expressly says it does not apply to already public information, information someone already had prior to discovery, or

information someone gets from methods outside discovery -- which means it cannot apply to what I shared by its own facial terms. Therefore, we still have all of Apple's open issues and disputes on this matter to meet/confer about.

If Apple can identify what the specific issues are, in detail, with a legal basis and justification, and tell me what it's looking to get from me and why it thinks it's entitled to that request (with legal cites, facts, etc.) then we can see if there's any sort of compromise to be had, but so far all I've received from Apple is threatening (but vague) email with urgent demands (that are highly unspecific) and more threats of reprisals (generally unspecified but of a legal nature).

Please comply with the court's order and actually meet/confer with me on this.

To quote the transcript of the Feb. 20 2026 hearing:

**Judge:** (31:54) But it's so much better and such a better use of time if the parties meet and confer about the 160-

**Worker (Gjovik):** (32:10) Agreed. Again, I complained about this with the HIPAA thing Apple filed. They're proactively filing stuff without me even objecting to my objections I never even made and bothering your honor with stuff we could just resolve ourselves. And I feel like that's a waste of time.

**Judge:** (32:26) All right. So is Apple going to then just go ahead and try and address the 160 designations and I plaintiff's Excel spreadsheet on that and try to see if you can meet and confer on some of those things or just file the motion.

**Employer (Apple via Orrick):** (32:48) So first of all, **we will absolutely follow the protective order process to meet and confer.** We now as of two days ago, finally got the plaintiff's objections to our designations, and we will respond to that as provided in the protective order and if we can't agree, we will follow the protective order. But this is totally different from the fact that the plaintiff has violated the protective order.

**Judge:** (45:40) **Whatever your other issues are regarding discovery, you should meet and confer before filing any sort of motion...**

**Judge:** ...(56:42) So why is Apple able to work with Ms. Gjovik on a joint status report, but not able to meet and confer about her spreadsheet about, you know, regarding the confidentiality designations?

**Employer (Apple via Orrick):** (57:04) **We absolutely are going to meet and confer.** We only just got it on Wednesday afternoon. It's now Friday afternoon. **So we are working on meeting and confer. We have no problem with that and we would intend to comply with the protective order and to the T, and meet and confer and if we are unable to agree, then we intend to bring, follow the procedure in the protective order and bring it to the attention.**

**Worker (Gjovik):** (57:23) But why won't you have a phone call? Why can't we have a phone call?

**Judge:** (57:25) I guess what I'm asking you is, can you have a phone call with her about those things?

**Employer (Apple via Orrick):** (57:30) It has been totally unproductive, as you can tell from today, to have phone calls. We have reached no agreement today on anything. And that's the way it was before when we tried to reach a deal.

**Worker (Gjovik):** (57:39) It's not true. The transcripts I attached to your honor previously show I got them to cave on a ton of stuff. I made a ton of progress. They just don't like it because I'm a really good project manager and I got them to cave on stuff and compromise. That's why they don't want to do it. I'm very effective on the phone.

**Employer (Apple via Orrick):** (57:53) Absolutely not.

**Worker (Gjovik):** (57:54) That's very true. You can see on the transcripts.

**Judge:** (57:58) Yeah, I can see that this is not a productive use of my time. So I'm going to be bringing this particular call to an end. And what I'm going to just say is that the parties need to comply with the protective order. I'm not going to order Apple to have phone calls with Ms. Gjovik. **I'm going to order the parties to comply and to comply with the protective order, it does require that you meet and confer. So if you file a motion and you haven't met your obligation to meet and confer, then I may not consider the motion because you haven't done it.**

**Worker (Gjovik):** (58:37) Can you define that a little bit more? Because they might say that their threatening email just telling me to randomly delete tweets was their meet and confer. And they've been recently trying to do that sort of thing. And they're like, we did. We sent her that.

**Judge:** (58:47) **No, the meet and confer should consist of the substantive discussion about all of the designations and whether or not they are confidential or not.**

**Worker (Gjovik):** (58:59) Agreed.

**Judge:** (58:59) And maybe some compromise as to some of them. And then to the extent that there are some left that you can't come to some agreement with, then those are the ones that should be the subject of the motion.

**Worker (Gjovik):** (59:11) I agree. And like I said, I already caved on like half of them where I was like, I don't agree that it's confidential, but I don't care if you were to act this, you guys. Like if you want to fight, die on that hill, fine. But I don't.

**Judge:** (59:21) Right.... **So those are the things that should be met and conferred about. And then to the extent you cannot agree, those items should be the subject of any motion that you file.**

**Worker (Gjovik):** (1:00:14) I feel like we should be able to sort this out ourselves without involving you.

**Judge:** (1:00:17) Just make sure that you're walking through the protective order and complying with it fully.

**Worker (Gjovik):** (1:00:24) I feel like I have your honor.. This isn't a straightforward like me talking about some trade secret or the details of some internal thing. It's just public information. It seems incredibly important for anti-SLAPP, for preemption that if the thing they're pointing to is already completely public information and ... complaint in this case.

**Judge:** (1:03:36) Ms. Gjovik, you can argue all of that stuff in your opposition to their motion.... (1:04:12) You can argue a lot of all the things that you think it makes it more complicated. That's what you put in your opposition and I'll ultimately rule on the motion.

**Worker (Gjovik):** (1:04:21) And again, Your Honor, I'm not trying to violate anything. I really don't think I did. I wouldn't do that intentionally and I think it's an issue when it gets misused like this because those are in there for a reason and it's supposed to streamline the process not create more issues which is what's happening right now.

**Judge:** (1:04:36) Right, so that's how that will go and we'll see how it goes.

**Court staff:** (1:04:44) Does Your Honor want any deadlines in the minutes set or just the general parties to meet and confer with any motions to be filed o

**Judge:** Yeah, **I'm not setting any dates because I'm not asking the parties to file any kind of motions.**

**Worker (Gjovik):** (1:05:01) We might be able to sort it out. Melinda, I think we should talk to Morgan....

**Judge:** (1:05:03) **I think you should talk. I think the parties should meet and confer for sure. I am ordering the parties to complete the meet and confer process on this issue before filing any motion though.**

**Worker (Gjovik):**(1:05:15) I think it's a good idea.

**Judge:** (1:05:17) Okay, all right.

**Employer (Apple via Orrick):** (1:05:21) Thank you.

**Judge:** (1:05:21) Thank you both.

**Employer (Apple via Orrick):** (1:05:22) Thank you, Your Honor.

**Judge:** (1:05:23) Bye.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 6:07 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

There are two separate issues (1) violation of the protective order (2) meeting and conferring on the deposition designations.

We will be meeting and conferring with you on the deposition designations in accordance with the terms of the protective order.

But, as Judge Westmore made clear to you at our conference last Friday, you do not have the right to unilaterally violate the protective order while the issue of whether the deposition designations were proper is being decided. As the Magistrate advised you at the conference last week, the purpose of the conference was to try to avoid motion practice by resolving the dispute over whether you violated the protective order. You made it clear at the conference that you did not intend to take down the posts containing the quotes from your deposition that we designated as confidential. From your email below, it appears you do not believe you are bound by the terms of the protective order, and you are continuing to refuse to comply with the terms of the protective order. We disagree with your arguments below that you are not bound by the terms of the protective order. As a result, there is nothing further to meet and confer about on this issue. If you have changed your mind, please let us know. If not, then we intend to proceed to ask the court to find you in violation of the terms of the protective order and to enforce the terms of the protective order.

Meanwhile, we look forward to meeting and conferring with you on the deposition designations.

We take your response below to mean that you will not stipulate to hearing the motion on shortened time or permitting portions to be filed under seal and will proceed accordingly.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

[EXTERNAL]

Hello counselors,

I'm shocked and deeply concerned by the email you sent me below. I contacted you on Feb. 20, 2026 asking to meet/confer in good faith regarding Apple's designations and any remaining concerns you might have following the conference call with Judge Westmore (the recording of which is being formally transcribed as we speak).

You never responded to my email. (I'm copying it at the bottom below to show that I tried to engage with you in good faith, but you refused to respond, and instead sent the email below in bad faith).

I'm asking you again to meet/confer regarding Apple's designations and any related disputes. Meet/confer means that we meet to discuss those specific issues and see if we can find resolution ourselves before bothering the court with those matters.

Judge Westmore Ordered us at Dkt. 288 to continue to meet/confer on the designations and related disputes. During the call the court also ordered us to do the same and said it was a requirement prior to filing any motions. But you are refusing to even respond to my requests to meet and confer, so if you

proceed to file those motions you mentioned below, (asking for the same relief in your unlawful Letter at Dkt 280), in addition to many other issues, you would be in direct violation of the Court's Feb. 20, 2026 Order instructing us to meet/confer prior to filing any motions.

Your email below does not seek to meet/confer. It asks for only two things:

- 1) whether I consent or object to an emergency briefing for Apple's motion
    - (where Apple claims my protected concerted activity is unlawful and should result in me being sanctioned; claims public information can be declared legally "secret" by Apple via email; claims my NLRB charges and complaints to the NLRB are the basis for its request to punish me; and requesting again to have gag orders issued against me which would expressly restrict protected concerted activity and participating in Board proceedings; all of which in admitted retaliation for me filing NLRB charges against Apple, publicizing labor disputes, and engaging in PCA with Apple coworkers); and,
- 2) whether I'd "consent" to Apple "sealing" my NLRB charges against Apple, "sealing" my allegations of NLRA violations by Apple, "sealing" my complaints about work conditions at Apple and unlawful work rules created by Apple, etc.

Neither of those things is the Court ordered meet and confer you are required to complete prior to filing anything you are threatening to file. All of those things are additional NLRA violations.

Further, you failed to attach or provide any sort of draft motion, legal outline, examples of what content is at issue, or the legal (statutory, case law, or otherwise) basis for your assertions and requests. You've provided me nothing to engage with in your email other than making two demands you already know I would oppose. (for the emergency schedule, in addition to it being unnecessary for public, protected information - I'm also pro se and homeless, with extremely limited resources, and your motion puts my civil rights at risk and I need time to prepare proper opposition filings and oral arguments).

In addition, as previously mentioned, and which I warned you about multiple times: you cannot file anything against me that resembles counter-claims, cross-claims, requests for sanctions, or the like, without first requesting to have the Stay lifted in the bankruptcy court for whatever it is you want to do and having that Stay lifted by Judge Panos. (*Re: Ashley Marie Gjovik,* 25-11496, United States Bankruptcy Court, D. Massachusetts). The District Court was also warned about this repeatedly -- if they were to issue an order against me based on your client's claims and without lifting the Stay, that Order would be void (not just voidable, but void) because of the Stay.

This is in addition to the objections I already pled and that are already docketed regarding:

- *Garmon* and *Machinists* preemption removing any jurisdiction the court could have to hear Apple's complaints that NLRB charges should be the basis for court sanctions;

- The Norris-LaGuardia Act of 1932 prohibition on injunctions arising out of labor disputes with express protection for employee publicizing labor disputes;
- The Speak Out Act of 2022, Pub. L. No. 117-224, invalidates nondisclosure provisions that would prevent employees from discussing sexual harassment (and here the speech at issue is clearly protesting sexual harassment -- including complaints about Apple requesting employees monitor [redacted] and requiring [redacted], then complaining Apple claimed those pre-existing complaints were now secret and also that the underlying misconduct is secret, when all of it is sexual harassment).
- California's Silenced No More Act, Cal. Gov. Code § 12964.5 (SB 331), prohibits provisions that prevent employees from disclosing information about unlawful workplace conduct including harassment and discrimination
- Magistrate Judges lack the authority to issue injunctions which is why Motions for Sanctions and the like have to be decided by a US Judge, which is Judge Chen, not Judge Westmore, and Judge Chen is not going to rule on a farcical motion without a Federal Rule authorizing it or providing any legal standard for the determination.
- I never agreed to the protective order. I was coerced to sign it against my will, with objections on the docket, recorded demands to sign it by Judge Westmore, my demands for a full hearing denied by Judge Chen, my attempt to appeal to Ninth Circuit rejected as interlocutory, and my requests for a protective order against Apple's demands for a protective order denied. There is clearly no mutual assent in that "stipulation" so it's not binding, even if it could give rise to an independent "breach" claim, which it cannot.
- The First Amendment prohibits prior restraints, especially with subject-matter based prohibitions on speech, and without reservation prohibits subject-matter prior restraints regarding already public information, general opinions, and all of the factors Apple argued (and is estopped by those arguments) when it claimed the NLRB has no authority to regulate the corporation's speech.

Further, there is no "Motion for Breach of a Protective Order." No federal rule establishes that as a motion type, there is no legal standard governing that claim, and it cannot be independently actionable unless whatever the issue is also satisfies the requirements for an actual Motion for Sanctions etc.

In addition, as I warned you prior, any further threats, including the email you just sent, will result in additional NLRB charges being filed against your client. Apple's latest charge was just filed today and cites the email you sent at 3:02 PM. If you proceed to file the motions you mention, additional charges will be filed. If you made additional unlawful statements and requests, additional charges will be filed. It's *turtles all the way down*, counselors -- and no one achieves anything, everyone suffers, and it wastes the court and agency's time having to process Apple's frivolous and retaliatory demand that should never have been made in the first place. The public spectacle of all of this also chills workplace/labor organizing, chills speech and protected concerted activity, and deters employees from exercising their rights. As I said on the call, Apple's put me in a position where I have to hold the line for workers on this because if I don't it will directly chill employees' exercise of their NLRA rights -- but that is because of Apple, and it's not fair to put me through this -- Apple should just cease its unfair labor practices.

Apple's latest charge is filed today Feb. 26, 2026 and cites the email you sent at 3:02 PM. A copy is attached for your client. This is Apple's fifth new NLRB charge in ten days.

Can we actually meet and confer please?

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Thursday, February 26th, 2026 at 3:02 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,
>
> Apple intends to move the Court for an order finding that you are in violation of the Protective Order and enforcing the Protective Order by (i) ordering you to de-publish material Apple designated as Confidential and (ii) sealing your filings at Dkt. Nos. 278, 284, and 285 (which contain material Apple designated as Confidential).
>
> Apple also intends to seek an order to shorten the time for briefing and hearing on Apple's Motion to Enforce Protective Order. Apple intends to request that the hearing be held on March 5, 2026 at 1:30 p.m., or on a date sooner than March 5, 2026 as this Court's schedule permits, and that any opposition be due by March 2, 2026, and Apple's reply be due by March 4, 2026. **Pursuant to Local Rules 6-3 and 7-11, please let us know if you are willing to stipulate to an order to shorten the time for briefing and hearing on Apple's Motion to Enforce Protective Order as detailed above.**
>
> Further, Apple intends to seek an order to provisionally seal material Apple designated as Confidential that is referenced in Apple's Motion to Enforce the Protective Order and evidence to be

filed in support of Apple's Motion until such time as any challenges to those designations have been ruled upon. **Pursuant to Local Rules 79-5 and 7-11, please let us know if you are willing to stipulate to an order to seal as detailed above.**

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Friday, February 20th, 2026 at 3:31 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hey,
>
> Per the conference with Judge Westmore today she's ordering us to meet/confer more about Apple's latest "leaker" claims against me, and as I suggested during the call I think it would be beneficial to include Morgan Lewis since this is a labor law matter more than a civil litigation matter, and Orrick doesn't have a labor law practice. So if Orrick proceeds to file its formal motion alleging a breach/contempt, with a full hearing and evidence, as you know most of my defenses will be labor law, and Judge Westmore acknowledged she'd consider all of my arguments, so it seems necessary that our meet/confer include labor lawyers who will be familiar with the cases and policies I'm citing.
>
> Please let me know if we can set up a call with Orrick + Morgan Lewis + me to sort though this, if Apple insists on continuing with these latest "leaker" allegations and wants to pursue a formal contempt/breach/sanctions hearing.
>
> I also object here that Judge Westmore took Apple's arguments at face value initially and was trying to compel me to delete social media posts in order to avoid the motion which I also alleged during the call was more NLRA violations by Apple that she was even saying that as it was only because of Apple's mischaracterization of the content and issues. Once the Judge understood the twitter posts didn't say anything more than "Apple says employee menstruation is secret" she quickly backed down, and that pivot in the transcript will certainly be evidence for the NLRB proceeding.
>
> -Ashley
>
> —
>
> **Ashley M. Gjøvik**
>
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, February 26, 2026 5:48 PM
**To:** Riechert, Melinda <mriechert@orrick.com>; Jimenez, Catherine M.

<catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Thursday, February 26, 2026 7:40 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, February 26, 2026 8:13 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>
**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Thursday, February 26, 2026 8:29 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>; Jimenez, Catherine M. <catherine.jimenez@pillsburylaw.com>; Trechter, Reed C. <reed.trechter@pillsburylaw.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Mahoney, Brian <brian.mahoney@morganlewis.com>; Stolzenburg, Mark L. <mark.stolzenburg@morganlewis.com>; harry.johnson <harry.johnson@morganlewis.com>; Park, Julie Y. <JuliePark@mofo.com>; Tarantino, William F. <WTarantino@mofo.com>; Russell, Zoe <zrussell@orrick.com>; Weaver, Nicholas <nweaver@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>

**Subject:** RE: Gjovik v. Apple: Ex Parte application regarding motion for violation of protective order and motion to provisionally seal

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.