UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

-----------------------------------x

ASHLEY GJOVIK, an individual, :
Plaintiff, : U.S. D.C. Case No.:
v. : 23-cv-4597-EMC(KAW)
APPLE INC, a corporation, :
Defendant. :

-----------------------------------x

Telephonic Conference Call

Friday, February 20, 2026

AT:

2:14pm

CERTIFIED

Taken via Zoom videoconference

Court Reporter:
KATHERINE SCHILLING, RPR
CA CSR No. 14163

Friday, 20 February 2026

(2.14 pm)

CLERK: Good afternoon. Please be advised that according to General Order 58, any recording of a court proceeding held by video or teleconference, including screenshots or other visual copying of a hearing, is strictly prohibited.

Calling the matter 23-cv-4597-EMC for Gjovik versus Apple, Inc. If I can have appearances starting with the plaintiff, please.

MS GJOVIK: This is the plaintiff, Ashley Gjovik.

CLERK: Ms Riechert, if you can state your appearance.

MS RIECHERT: Yeah. This is Melinda Reichert for the defendant, Apple.

THE COURT: All right. Good afternoon. This is a telephone conference and it's an informal one. So Ms Gjovik, you don't have to have your video on. It's just that we started using Zoom for our telephone conferences now, because -- just because Zoom offers the telephone conference feature.

MS GJOVIK: Your Honour, I might -- I have the stomach flu and I've been really sick, so if I don't answer, I might be sick, and if you just don't see me, then maybe that answers the question. I'm not feeling great

today.
THE COURT: Okay. And you can turn your video off. You don't have to have your video on.
MS GJOVIK: Well, that's what I'm saying, that if, like, I'm not responding to you but you see the video but I'm just not there, then you can maybe put it together that I'm dealing with -- like, I'm really -- sorry, I'm really sick today.
THE COURT: Oh, no. I'm so sorry to hear that. But, anyway, I just would like to make sure that I'm --
MS RIECHERT: And I didn't realize this was a video conference, so I just got on my phone. But I certainly can get on a video.
THE COURT: No, you don't need to. It's supposed to be a phone call. It's just that it's through Zoom.
MS RIECHERT: Yeah, that's what I thought.
THE COURT: Yeah. So you -- and you can click on the link and join with video capabilities, but this is meant to be a telephone conference.
MS RIECHERT: Okay.
THE COURT: So Ms Gjovik, I just really want to make sure that I'm easing your mind for today, because I think based on everything that I've seen you filing, that you were of the impression that this is some sort of motion

hearing or a motion for a TRO or, you know, motion for sanctions or something like that. And it simply is not. This is an informal discovery call, like a telephone conference call, that is a pretty common tool that judges use to deal with discovery disputes.

So sometimes people are in depositions and, you know, they're having a dispute about questions being asked or things like that, and they just need it to be resolved pretty quickly. So, you know, my standing order allows for people to call me if they can't figure something out because, you know, they just need to get through it.

MS GJOVIK: Thank you, your Honour.

THE COURT: And so that's sort of what this is, and the reason why I scheduled it is because I really want to just help the parties get back on track.

MS GJOVIK: Yeah.

THE COURT: As opposed to, you know, filing formal motions and, you know, having Apple, you know, need to, you know, decide that it needs to file some sort of a motion for sanctions because of, you know, violations of the protective order. You know, anything like that.

So I really want to just go through with the parties what is going on and see if I can help you get

back on track, because the protective order in this case is really what governs how this process is supposed to work, and it's sort of the reason why the court shouldn't even really be involved at this point.

So my understanding -- and, Ms Gjovik, can you tell me at any time if you disagree with these facts, but just the facts that I've been given up to this point are that you had a deposition.

MS GJOVIK: Yes.

THE COURT: Your deposition was taken on December 16th of 2025.

MS GJOVIK: Correct.

THE COURT: And during that deposition, Apple's counsel designated certain -- a certain part or certain parts of the deposition as confidential and said, you know, from this point on this is going to be the confidential section. And --

MS GJOVIK: They did a blanket. They did one blanket that covered hours of the deposition, yes.

THE COURT: Okay. And so -- and then they said something, you know --

MS GJOVIK: I objected. I said you have to designate, narrow, and then eventually 50 days later they did narrow.

THE COURT: Okay. And so there was a discussion, and I have part of the -- what the discussion was. And it seemed like you came to some agreement, though, about how that was going to be proceed. And they did tell you that they would, after the depo, narrow it down to specific parts of the testimony that needed to be designated "confidential", which is a correct thing to do because if you're over-designating then, you know, that's not right either.
MS GJOVIK: Yeah.
THE COURT: So to do that, and then more clearly identify those portions that absolutely need to be confidential is what it sounded like the plan was going to be. And then I have that on January 7th, that was when you guys -- the transcript was provided to the parties, and then on February 4th Apple did provide a more limited designation.
MS GJOVIK: It's questionable -- they never served it to me and it's not signed or dated and I repeatedly asked them to actually send it to me directly, and they refused. So I'm also arguing they still haven't even served those designations.
THE COURT: Okay.
MS GJOVIK: But they did create a document they sent to the

court reporter that had supposed designations, even though it wasn't signed or dated.

THE COURT: Okay. So they sent it to the court reporter, not to you.

MS GJOVIK: And they said "FYI for Ashley's awareness", and I said "Can you serve me these if you're saying these are designations?" And they've refused.

THE COURT: Mm-hmm. Okay.

MS RIECHERT: They were served on -- they were sent to her at the same time they were sent to the court reporter.

MS GJOVIK: That said "for your awareness" and you refused to send me -- anyways, I would love to get back on track. I am not going to waive on any of my rights on this during this call, but if there's some way that we can just get back on track to have the normal designation dispute process and not have to bother the court with it, I think that would be wonderful.

THE COURT: Yes.

MS GJOVIK: Because we do have more discovery to get to.

THE COURT: Okay. And so I want to just acknowledge what has happened so far.

So then February -- okay. Then February, I'm not sure what date, I think it might have been the 18th, that, Ms Gjovik, you said you disagreed with the

confidential designations.
MS GJOVIK: I disagreed immediately when they sent them, and I warned them I was going to file an NLRB charge as soon as they sent them on the 4th, and so we've been emailing since then.
THE COURT: Oh, so you had been emailing before that?
MS GJOVIK: Yeah.
THE COURT: Okay. But you told them that you disagreed with the confidential designation.
MS GJOVIK: Yeah.
THE COURT: And then what I'm reading here is that Apple planned to respond to your objections to the confidential designations.
MS GJOVIK: They haven't responded yet, though.
THE COURT: Right. But what they note -- the reason why they wrote to me, though, is because they said on the 18th -- I guess you -- you told them at about 1.09 pm about your efforts to meet and confer about this or something, and --
MS GJOVIK: I sent the final detail -- they made about a 160 designations, and I'm arguing that almost all of them are nonsense. So I put them in an Excel sheet and I did the detail for each of them, but it was detailing what I had already objected to in email --

THE COURT: Okay.
MS GJOVIK: -- that they can't claim these things aren't -- so a lot of it was protected, a lot of it was, like, explicitly they can't claim that that's confidential. And then other stuff was public information. And then just general terminology.
THE COURT: Mm-hmm.
MS GJOVIK: So I was detailing each of those and sent it to them, and they haven't responded.
THE COURT: Okay. And you gave them the spreadsheet?
MS GJOVIK: Yeah.
THE COURT: Okay. And then they wrote to me, though, and said that the issue was that they planned to respond, they wanted to meet and confer, and they didn't object to your efforts to challenge the confidentiality designation, but they said that they noticed or it had been realized that these things entirely were already publicly posted.
MS GJOVIK: They were served on the 17th, a notice of pendency filed in the docket for this case that had an NLRB charge, including a cover letter which is exactly what they cited and quoted in the letter they filed to your Honour. They failed to mention that they were served to it from this docket. It's a public -- on

a public docket that has that detailed cover letter that they were claiming had all these issues, and it was the problem was public, which is also -- they should have filed a motion to seal, if they want to seal that. They're claiming that's confidential. But that is assumably based on the temporal proximity, how they're saying they became aware of it was through that.

THE COURT: Well, there is a process, though, if you want to post something publicly, whether it's on a docket or on a website or on X or whatever. When something has been designated confidential, that's where the protective order procedures really kick in.

MS GJOVIK: I understand. It's my experience. It's public information. It's my own thoughts. It's existing workplace complaints. It's whistleblower complaints. It's stuff I've pled in my complaint for this lawsuit.

THE COURT: I'm not talking about those things. I'm talking about --

MS GJOVIK: Okay. No, yeah, I understand that, like, a document or whatever I couldn't just go and Tweet it if they designated it. We'd need to go through and dispute it.

THE COURT: Exactly.

MS GJOVIK: Yeah.
THE COURT: So you understand that, then. You've -- so you've read --
MS GJOVIK: Of course.
THE COURT: -- part of the protective order that requires you to continue treating it like it's confidential --
MS GJOVIK: Of course, yeah.
THE COURT: -- until you get an order from the court otherwise.
MS GJOVIK: Yeah. But for the stuff that I feel is -- that the order doesn't cover because it's already public information or my opinions or me talking about my own body or whatever --
THE COURT: Oh, yeah.
MS GJOVIK: -- that, to me I was, like, that's just not legitimate anyways, so if I was to treat that as a gag order, that would violate my constitutional rights and I assume the Northern District of California developed that protective order not intending it to be used as a gag order about that sort of stuff.
THE COURT: I don't think that that's what Apple was trying to do. I think there are specific sections that they are highlighting here that should have been redacted.
MS GJOVIK: But that's my -- that's my whistleblower

complaints. That's stuff pled in the complaint in this lawsuit. It's existing complaints. It's my own experiences. And the No. 1 word they are redacting is literally the word "[redacted]."

THE COURT: Mm-hmm.

MS GJOVIK: You know, this is very personal stuff. This is my right to privacy, to protest --

THE COURT: Right. But, Ms Gjovik --

MS GJOVIK: Yes.

THE COURT: -- those are the things that you have to litigate before the court before you post them. If they are things that were in this portion of the deposition that were designated "confidential", you cannot post them on the public --

MS GJOVIK: But it's my own testimony. It's my own experience. So then it does function as a gag order.

THE COURT: But it doesn't -- it's not. It's just temporarily, if it's confidential, it's designated --

MS GJOVIK: I object to that. I will not waive on that. I highly object and I would ask that we review the actual evidence. And if they want to claim that this stuff should be, then they should file it under seal and show exactly what they're saying and make a justification of why they say it's actually

confidential.

THE COURT: That's just not how the order works. The order requires that if you disagree with the confidentiality designation, that you have to file something with the court. If you're unable to come to some agreement with Apple, then you have to file something with the court, challenging the designation of confidentiality, explaining in a declaration why each part they've designed is not -- should not be confidential.

MS GJOVIK: They do. They have to defend it. And that's for admissibility, though. They're talking about my out-of-court speech. They're talking about stuff that's completely out of the jurisdiction of the court. They're talking about NLRB charges. And --

THE COURT: No, no. That's not what I'm talking about. I'm talking about the actual testimony from the deposition transcript being posted on the public docket being posted on a website, being posted on your website. Those are the things --

MS GJOVIK: It's the word "[redacted]."

THE COURT: Well, I don't know --

MS GJOVIK: I'm talking about my own [redacted], my own [redacted].

THE COURT: I don't know what the words are that they were

trying to designate --

MS GJOVIK: That's what I'm saying the problem is.

THE COURT: I'm just saying that if --

MS GJOVIK: Because if you say, it's [redacted], it's [redacted], it's [redacted], it's [redacted]. It was me complaining Apple was trying to force -- if I wanted to have [redacted]. And I was protesting that. And I was saying "That's an invasion of privacy. You shouldn't be doing that to workers".

And then they want to redact "sexual activity" and "[redacted]". And I'm complaining "You shouldn't be studying employees' [redacted]. You should be paying for that data in a normal way and not coercing your employees and monitoring their [redacted]". And then they want to redact "[redacted]". Well, it's something I've been advocating about and doing newspaper interviews with and posting on social media and complaining about. And then now they're trying to say that I can't say those words and I can't complain that the employer is now trying to use a discovery process and misuse a protective order that was certainly never intending to be used this way.

THE COURT: I don't know -- I mean, based on what I've read, I'm not reading that Apple is trying to prevent those kind of things from being posted.

MS GJOVIK: But that's what they redacted.

THE COURT: I'm not seeing that.

Does Apple want to respond to this allegation that you're trying to keep her from talking about her own personal body activities or --

MS RIECHERT: Absolutely.

THE COURT: -- secretions or whatever?

MS RIECHERT: So Apple conducted various very confidential studies and it asked people who worked there, "Do you want to participate in this study?" And some people said "yes" and some people said "no". Some of those studies related to [redacted], if you want to call it that, but the fact that Apple was conducting these studies is what is confidential. And that is what we designated as confidential under the protective order.

And I agree with your Honour that if the plaintiff doesn't think that those things should have been designated as confidential, then she's entitled and we're entitled to go through the process in the protective order.

THE COURT: Right.

MS RIECHERT: But she totally preempted that process in the protective order and is continuing to do so even today by filing the very things, the very deposition testimony that we've designated as confidential. So what she did wrong is to post in public forums the very deposition testimony that we had designated as confidential. And that's what the protective order --

MS GJOVIK: There's a fundamental misstatement you're making which is that this is secret. It's public. Apple has press releases saying they do these studies. There's public releases from Stanford and Harvard about these studies. None of these features are secret.

THE COURT: But Ms Gjovik, you're not listening to me. I'm trying to tell you something.

If those excerpts that have been designated confidential should not be confidential, for all the reasons you are stating, you need to write that to me in a motion, and you need to do a declaration under penalty of perjury explaining why each thing should not be confidential so that I can make a ruling.

MS GJOVIK: I'm sorry, your Honour. I thought the order meant that they had to be the ones to file the motion to bring it to you, so I was waiting for them to go through this process, and they've been dragging it out

for months.
THE COURT: No. If you want to -- if you want to challenge the confidentiality, you can do that at any time. That's what the order says. You can do it at any time. And if the parties meet and confer and they can't come to some agreement, you can file a motion with the court to have those de-designated.
MS GJOVIK: I would have done that the next day, if I had known.
THE COURT: Or the order also talks about the fact that they can waive their confidentiality designation if they don't file a motion to maintain the confidentiality.
MS GJOVIK: That's what I thought too. But I still stand behind this, that it's not confidential --
THE COURT: But they still have time --
MS GJOVIK: -- because it's work conditions, it's preempted, and this is also why the NLRB is supposed to say it's a separate issue.
THE COURT: But that's -- but that's premature, Ms Gjovik.
MS GJOVIK: It's not because -- sorry, so I'm just going to go with my written objections on that. I detailed all the law. I feel very strongly that the law supports my position on that. So I'm not going to delete anything, and I'm not going to promise to not -- [sic] to stop

talking about these topics, but I completely agree with you about this generally. And if this was something like product specs or an actual secret something, I would agree with you. But this is my own experiences, my existing whistleblower complaints.

So these are things I've pled in my complaint from my 17200 complaint, my whistleblower retaliation complaints. This is stuff, details that are in the written docket. And now Apple is starting to claim that my actual, like, legal claims are secret so I can't talk about it and I have to take months where I can't talk about the fact they're even trying to claim that my legal claims are secret, is just nonsense to me. It makes my head explode.

THE COURT: Well, it actually doesn't take months. It just takes a matter of filing a motion with the court. And if Apple is being unreasonable and asking for things that are already out in the public domain to be kept confidential, the court is not going to look very fondly on wasting the court's time on confidentiality designations that should not be made. So --

MS GJOVIK: If I'm able to file -- so your Honour, I feel like I've gotten in trouble constantly for not meeting and conferring with them endlessly and waiting for them

on everything, and so I feel powerless here. But if this is something that I can just file a motion for and challenge right away, I would have done that right away. I just felt like it wasn't going to be fruitful based on how my motions have been handled previously.

THE COURT: No, you can file the motion. But I felt like you started the meet-and-confer process. It's just that you didn't finish it.

MS GJOVIK: They haven't, though. And I objected a long time ago, and I feel like this would have been resolved had they not done that blanket thing --

THE COURT: Yeah.

MS GJOVIK: -- in December. That dragged it out for months. They should have just done it during the actual depo.

THE COURT: And so what is Apple's plan in terms of responding to -- it sounds like Ms Gjovik has put together a whole spreadsheet for your consideration about the various things that she objects to in terms of confidentiality designation.

MS RIECHERT: Right. She did that, but after she had already posted the designated portions of the deposition and is continuing to post the designated portions.

THE COURT: Right.

MS RIECHERT: So, yes, she did at whatever it was, 1.19 pm, and that starts under the protective order the 14-day process for us to meet and confer with respect to her designations.

THE COURT: Correct.

MS RIECHERT: And then if under section 6.3 of the protective order, if we can't reach an agreement, then Apple has to file a motion regarding -- to retain the confidentiality under local rule 7 within 21 days of the initial challenge and it's all in the protective order.

MS GJOVIK: But I feel like, to move forward if Apple wants to file a motion for sanctions or contempt, it should. A TRO -- file it. File the actual paperwork. I don't want to argue that on this call. I would love to talk about how we can get them to actually participate in the designation process, per the protective order to move forward on this.

THE COURT: But Ms Gjovik -- Ms Gjovik, the reason why I wanted to have this call is because when I had found out that you'd already posted things that had been designated confidential, right or wrong, the protective order requires you to not do that until it's resolved by the court.

MS GJOVIK: But it doesn't apply to the things that they claimed and I have preemption -- like, if they file these motions, I feel confident I would win and they're going to get in trouble. They're going to lose the NLRB charge for even filing it. So I feel very confident. And this is also where the NLRB says, like, the court shouldn't have to get involved in this, because it's a very different dynamic when you have a labour dispute. They actually encourage and statutorily protect publicising labour disputes. So this isn't --

THE COURT: I'm not really sure what the NLRB has to --

MS GJOVIK: Well, that's the thing, your Honour. They should file the motion so we can have a full briefing and show whatever judge is hearing it the actual law behind all of this. Instead, they're trying to, I feel like, hijack this process to try to coerce me to do stuff that's, again -- so I don't want to argue. I'd rather just them respond to my spreadsheet --

THE COURT: But you have to take it down.

MS GJOVIK: So that's -- your Honour, the fact that you've even said that, I have to put in the NLRB charge now because they've now caused you to say that and that's coercive in --

THE COURT: You have to take it down because the court

order --

MS GJOVIK: I'm not going to, your Honour. I'm sorry. You're going to have to order me to take it down.

THE COURT: I'm ordering you to take it down right now.

MS GJOVIK: You're going to have to write it in an order for me to do it. I'm not going to do it willingly. I feel like it's completely within my rights. I feel like I've briefed it. I would ask your Honour to read in detail my opposition --

THE COURT: No --

MS GJOVIK: -- the legal cites, the statutes, the case law.

THE COURT: I'm reading the court's protective order that's been on file since July, and you cannot put things in the public docket that have been designated confidential without getting the court order first.

MS GJOVIK: Your Honour, you started this saying you would not say that. You said this wasn't going to be about any injunctions. This wasn't going to be about any contempt. This wasn't going to be about sanctions. This is just going to be informal. And then now you're threatening to --

THE COURT: Because it's not. If you just comply -- if you just comply with the order and go through the process that the order requires, it doesn't involve any of

that.

MS GJOVIK: I'm not going to voluntarily do something that I objected to and then make it informal because -- your Honour, I'm sorry. I'm not. And I think that's very coercive to say you're not going to issue sanctions but then say only if I voluntarily do what the sanctions would tell me to do is very unfair.

THE COURT: That's -- I'm asking you to comply with the order, Ms Gjovik. The order is very specific --

MS GJOVIK: I feel like I have. I feel like I'm not in violation of it, and --

THE COURT: You posted it in the public domain before having an order from this court saying these things are not confidential.

MS GJOVIK: Well, what did I put out there? I didn't put any documents. They haven't designated a single document as confidential.

THE COURT: We're talking about deposition testimony right now.

MS GJOVIK: Yeah.

THE COURT: That's all we're talking about.

MS GJOVIK: I haven't posted anything from a deposition testimony that they said was confidential other than the words "[redacted]" and "[redacted]."

THE COURT: I think I saw an entire section of the transcript.
MS GJOVIK: They didn't claim that was confidential.
THE COURT: That was not part of the part --
MS GJOVIK: That was them trying to say I'm not now going to claim everything going forward is confidential, and I said that's the NLRB violation, you can't do that. And it was directly after I was protesting about NLRB. But I didn't include what she actually said after she said "now it's confidential."
THE COURT: Is that --
MS RIECHERT: She absolutely posted on the public, in her Twitter account and on the court records and many other places, her website, information -- the actual deposition testimony that we had designated as confidential.
MS GJOVIK: The [redacted] words. Just [redacted], [redacted], [redacted], that's it.
MS RIECHERT: We had designated those as confidential under the protective order, and you cannot, under the protective order, publicly disclose that until a court says you can do it.
MS GJOVIK: So I'm not allowed to say the word "[redacted]" publicly until we resolve our dispute?

THE COURT: You're not allowed to post the deposition testimony.
MS GJOVIK: I didn't.
THE COURT: That's what --
MS RIECHERT: You did, actually.
THE COURT: -- it looks like from what I'm looking at, these excerpts are specifically quoting deposition.
MS GJOVIK: On the NLRB -- so they complained about -- this is why I'm like we need an evidentiary review so it's not just Apple accusing random stuff. The Twitter post they're complaining about just said, I was complaining that Apple was saying my [redacted] was their IP and my [redacted] was secret. I just used the word "[redacted]" and they're saying that was leaking, that I used the word "[redacted]" and complained, they said that me saying "[redacted]" was secret, and they said that's a breach. I said no it's not.
MS RIECHERT: No. You posted the NLRB charge with the actual deposition words unredacted. That's the problem.
THE COURT: That's what I saw, was the actual deposition testimony.
MS RIECHERT: Not the use of the word "[redacted]."
MS GJOVIK: But you quoted a Tweet where you redacted the word "[redacted]" that didn't have anything about the

transcript. This is where -- they're making a ton of accusations, and if their only complaint is about this NLRB charge, then it's -- we have anti-SLAPP. We have the preemption. We have this is a public record. We have -- whatever. And ultimately, they should be concerned about admissibility for trial, which that's not at issue here.

They still are designating all this, of whether this is actual admissible evidence or not, and I should be allowed to complain when I think they do things that violate federal statutes and an ongoing consent agreement they signed with me and NLRB, promising they would stop doing exactly this. And if my coworkers don't know that they're still doing this, my coworkers are at a huge disadvantage because they're very tricky and sneaky and like this, doing stuff behind the scenes.

So they need to know -- I have a ton of coworkers who are also in litigation with them. And it's very hard to litigate with them because they have these huge firms who are constantly doing dirty tricks to try to win outside the merits. And so any kind of thing like this we can share to help each other is huge. And that's the organising and sharing information and

trying to have each other's backs.

And that's why I was also like, this isn't something like the five-page letter and informal, you know, conference if they're actually asking me to suppress my speech. If I was to delete those with tweets with thousands, tens of thousands of views, all my coworkers watching, what that says is "don't talk about your work conditions, don't complain about Apple or they'll drag you in front of a judge who will make you delete your already published speech and get you in trouble, so just shut your mouth and stop organising". And that's why the NLRB protects this stuff, because it has a huge effect.

THE COURT: Ms Gjovik, Ms Gjovik, if you are unwilling to comply with the protective order, then you can say so. I hear you're telling me you're not going to comply --

MS GJOVIK: I will comply with the protective order.

THE COURT: No, you're telling me you're not --

MS GJOVIK: But I don't believe that it applies to me deleting my tweets.

THE COURT: You're telling me you're not going to comply because you're allowing them to be in the public record without having a judge's order first --

MS GJOVIK: But, your Honour, they just said my tweet did

not include the transcript. And then now they're saying I have to delete my tweet even though it didn't include the transcript. So what are they even asking for?

THE COURT: So then we'll have to have -- what Apple will have to do, if you guys can't work this out, is Apple will have to file its motion --

MS GJOVIK: Yeah.

THE COURT: -- to keep everything designated confidential, confidential. We'll have a motion hearing date, and if you are in violation of the protective order, Ms Gjovik, I was trying to prevent this but, you know, they can file a motion for sanctions because it is sanctionable conduct.

MS GJOVIK: They have to get a release of the stay in my bankruptcy and then they should file it, and they should sign it with a rule 11 signature and promise they're not doing this for an improper purpose. And then we should argue it on the merits.

I'm not afraid of them filing a motion for sanctions. I am afraid for them going behind the scenes to try to coerce me to drop complaints and stop exposing stuff I feel is unlawful conduct.

THE COURT: I don't think that's what happening. I think what's happening is they're trying to enforce the

protective order right now, Ms Gjovik, and I'm trying to get you to understand that you have to comply.

MS GJOVIK: It doesn't apply here, though. And I feel very confident about that.

THE COURT: Okay. It's up to you. I'm fine with that if that's the way you want to keep it. I just wanted to have this conversation with you so that I could try to get you back on track to comply with the protective order process. If you're not going to do it --

MS GJOVIK: Your Honour, again I just want to object for the record -- thank you for recording this -- but this was misleading to come in and say that that was informal and it wouldn't be about sanctions or contempt or making me delete tweets.

THE COURT: It's not.

MS GJOVIK: And then you just said the whole thing was about trying to get me to delete my tweets.

THE COURT: Because you've jumped the gun.

MS GJOVIK: I don't think I did.

THE COURT: You posted --

MS GJOVIK: And I feel like there hasn't actually been an evidentiary discovery of what happened. And these assertions are being made against me that are going to be used and quoted by Apple in summary judgment and

quoted by Apple in all these other proceedings without actually understanding what was shared or why, because Apple also skipped the whole, like, what was even their designations? What was this even about? And when it come out that this is completely already public information, already pled in complaints, already whistleblower disclosures, already interviews --
THE COURT: And you may be right, but you have to follow the process and file that in a motion to say why it should not be confidential --
MS GJOVIK: If it was a document, your Honour. But this is testimony about my own experiences.
THE COURT: But they're able to --
MS GJOVIK: That the order says it doesn't apply to that.
THE COURT: No, the order actually talks about "for testimony given in a deposition."
MS GJOVIK: Yeah.
THE COURT: How it's supposed to be done.
MS GJOVIK: But it doesn't apply to prior existing facts, information gained in other places. They're going in and taking stuff that I knew ahead of it, my own experiences, stuff that's already public --
THE COURT: That would be the kind of stuff that you would put in your motion to object to the designation --

MS GJOVIK: That's what I'm saying. We should do that. I don't want to do it this way. I want to do the motions with the evidence and the legal arguments, because I think I'd win and Apple would get in trouble for what they're doing right now.
THE COURT: Okay. So Apple will have to file the motion.
MS GJOVIK: Yes.
THE COURT: And Ms Gjovik will file her opposition --
MS GJOVIK: Yes.
THE COURT: -- to that motion. And we will look at each and every part of what has been posted in the public record, and have a full hearing.
MS GJOVIK: I don't love that this happening, but I think that's the way to do it.
THE COURT: 35 days. I was trying to avoid formal motion practice by just trying to get the parties to work this out informally, but it sounds like we have to go through the whole formal process.
MS GJOVIK: Well, I would also ask your Honour, can Apple just drop this? Like, you've been -- the whole thing was about "Well, Ashley, delete your tweets". And it never was, "Apple, is this actually that important to you?" was never asked.
THE COURT: Well, that's not -- the question is not whether

"is that important to you?" The question is whether or not the designation of confidentiality has been addressed by the parties. And it sounds like it hasn't been fully addressed.

MS GJOVIK: They're the ones not addressing it, and they're the ones asking to get me sanctioned.

THE COURT: But the protective order governs how this process is supposed to work.

MS GJOVIK: And I'm following it. They're not. They've violated it multiple times, and I feel like this stuff I've shared, as I've said, is not covered by the protective order. So I feel like the whole premise is just false.

THE COURT: Okay. So Apple knows how it needs to proceed. And when we -- we will schedule a motion, 35 days. We'll have a hearing on one of my law and motion calendar days, on that motion for keeping the confidentially designated parts confidential.

MS GJOVIK: Could we do this just for all of theirs -- like do a bulk one? Or how would you want to do this? Because they have like 160 designations they made.

THE COURT: Well, if it's -- if Apple seriously wants all 160 designations to remain confidential, then it will have to meet its burden to show why all 160

designations should be kept confidential.

MS GJOVIK: Could we do it all in that hearing so we don't have to do this multiples times?

THE COURT: Oh, yeah. But the purpose of -- but the purpose of the meet-and-confer process is to try to narrow down the disputes. So it could be that, you know, maybe 20 of those 160, the parties can agree, "Okay, that's fine, we're not going to try to keep that part confidential."

MS GJOVIK: And I already told them for some of these, well, I might disagree that it's not confidential, that if they want to redact it on their evidence, then it's not worth bringing it to your Honour and bothering your Honour with it. I don't know how that's supposed to work.

But there's stuff where it's, like, if this is just about evidentiary admission and you really feel so strongly that you need to redact this thing that I don't think is confidential at all but is immaterial, then I don't care. And so I was just kind of conceding on some of them. I don't know if that's how you're supposed to do it, but --

THE COURT: Well, that's part of your discussion when you're meeting and conferring with Apple.

MS GJOVIK: Yeah. Well, so I said that. And so I'm trying to narrow it from my side too. So it's up to them if they want to fight all of this just for the sake of having your Honour say it's confidential or not, I guess.

THE COURT: Right. Because I'm not going to make an opinion one way or the other about if it's confidential right now. I'd have to look at what each and every thing is that's been designated confidential and then make a determination about whether or not each and every one of those 160 things, if that's how many things we're talking about should or should not be designated confidential. But it's so much better and such a better use of time if the parties meet and confer about the 160 designations.

MS GJOVIK: I agree. I tried.

THE COURT: And then only come to me for the things that you can't agree on.

MS GJOVIK: Agreed. Again, this was -- I complained about this with the HIPAA thing Apple filed. They're proactively filing stuff without me even objecting to, like, object to my objections I never even made and bothering your Honour with stuff we could just resolve ourselves. And I feel like that's a waste of time.

THE COURT: All right. So is Apple going to, then, just go ahead and try and address the 160 designations and I guess plaintiff's Excel spreadsheet on that and try to see if you can meet and confer on some of those things, or just file the motion?

MS RIECHERT: So first of all, we will absolutely follow the protective order process to meet and confer. We now as of two days ago finally got the plaintiff's objections to our designations.

THE COURT: Okay.

MS RIECHERT: And we will respond to that as provided in the protective order. And if we can't agree, we will follow the protective order. But this is totally different from the fact that the plaintiff has violated the protective order, and I was hoping, as your Honour was, that we could work that out. We did not want to bring a motion for sanctions or for contempt for violation. We hoped --

MS GJOVIK: Because you'll lose, Melinda. Just file it.

MS RIECHERT: Wait, wait, I'm talking.

MS GJOVIK: Just file it. If you're going to do it, just file it.

MS RIECHERT: So we were hoping that, as your Honour mentioned, that we could work this out and we wouldn't

have to bring a sanctions and contempt motion, because that would be the better way to resolve this. But if your Honour isn't willing to order her to take it down as we requested, then we'll have to decide what the process is. But it's unacceptable for a party to a lawsuit to violate a protective order. We were willing to let it go --

MS GJOVIK: I didn't violate it, though, Melinda. It's not violated.

MS RIECHERT: We were willing to let it go if we could just get resolution with her taking it down and agreeing not to continue to post deposition transcript --

MS GJOVIK: I object to that too. The email they sent me didn't even tell me what they are saying the violation was, it didn't point to what social media it was, it didn't point to what filings, it didn't designate which words they were concerned about. And that's another things NLRB finds, because that means they want me to go self-censor. They want me to go read all of my posts and figure out what might be upsetting Apple and delete all of it, and then not say anything more that also might upset Apple with Apple -- I'm -- not even outlining what they're supposedly upset about, which their email is completely vague. There is nothing in

it.

MS RIECHERT: What we're upset about is the posting of the deposition transcript portions which we designated as confidential under the protective order, and you posted unilaterally those designated portions in violation of the protective order.

MS GJOVIK: Are you talking about the quoted portions --

THE COURT: The actual --

MS GJOVIK: -- in the NLRB charge?

THE COURT: The actual transcript --

MS RIECHERT: Yes.

THE COURT: I did see the actual transcript that was attached.

MS GJOVIK: And that wasn't confidential. That portion went up until the point where she said, "Now everything is confidential", and then I didn't include anything after that. So it's not confidential. It was --

THE COURT: Is that right?

MS RIECHERT: You included the parts from page 164 -- the parts that we quoted in the letter to the judge.

MS GJOVIK: You're talking about the actual PDF of the transcript, Melinda; right?

MS RIECHERT: I'm talking about the parts of the transcript that we had designated as confidential that you posted,

and the actual deposition --
MS GJOVIK: She's confusing this, your Honour. The pages I included from that transcript, I specifically did not include anything that had a pending designation and which I felt was direct evidence of them violating the NLRB because that was me shrieking in that transcript, "You're violating the NLRB, Melinda. Don't do this". And then she's like, "I'm going to do it anyways". But this stuff, otherwise --
MS RIECHERT: You've already brought these charges against me on this. But we designated page 164. 164 was the portion that we -- one of the portions we designated. And you posted that exact portion of the transcript, lines 7 to 17.
MS GJOVIK: She's talking about me quoting parts of the transcript in the NLRB charge which was different than the PDFs of -- this is why I was like, we need an evidentiary hearing. Because your Honour should have this evidence in front of yourself to actually see what's being said to make an educated decision. Right now, this is probably very confusing. You don't even know what we're talking about.
THE COURT: Well, I --
MS RIECHERT: It doesn't matter what was said. The fact is

we designated it was confidential --

MS GJOVIK: It does matter what was said because you're accusing me of saying specific things as violations. So it does matter what was said because that would be the violation. So that's very critical, Melinda.

THE COURT: So I would say that since Ms Gjovik is disputing that she's actually posted the parts of the transcript that were designated confidential, that, you know, the parties don't have much choice, other than to just do the full motion process. Because --

MS GJOVIK: I think it would be a good way to do it, so we can just go through the normal process.

THE COURT: I don't have all of that level of detail to know exactly where each thing comes from. We need -- I'll need formal declarations telling me exactly what was posted where and --

MS GJOVIK: Prior restraint raises the highest level of scrutiny --

THE COURT: And how much --

MS GJOVIK: -- you need very -- a lot of detail toward documents -- yes.

THE COURT: -- confidentially designated part was posted and where. You know.

MS GJOVIK: Yeah.

THE COURT: So, unfortunately, the parties are not able to resolve this informally, so then that leaves nothing but the formal motion practice as an option. And it's really unfortunate, because it really does use up a lot of the court's time.

MS GJOVIK: I'm sorry, your Honour, for insisting on that. I don't want this at all, and I feel like their motion is bogus and that they shouldn't be filing it. But if they want to do this, if they want to make this request and they won't drop it, then I feel like they should do it on proper paperwork instead of trying to do it in the shadows. That's my position. Otherwise, then I'm conceding my rights and hurting me and my coworkers just because they're doing something unlawful and unnecessary, and that's not right either.

THE COURT: Mm-hmm.

MS GJOVIK: So I'm sorry for the extra work and burden and all of this. And if I end up -- you end up deciding I'm the wrong one, then I'm sure you'll let me know in your order and figure it out.

MS RIECHERT: We're going to have to file a motion for violating the protective order, and we were hoping not to have to do that --

MS GJOVIK: Yes, go ahead, Melinda. I told you to. You

have to get the stay lifted first, though.
THE COURT: You're going to have to -- yeah, you'll have to file a full notice motion.
MS GJOVIK: They're hoping I'm afraid of them, so I just voluntarily censor my speech. But after four or five years of this, I'm just not. They should just file it, if they're going to file it. Because I don't think they are going to win. But they should just --
MS RIECHERT: Would that be filed before Judge Chen, the motion for violation of the protective order? Because that's not a discovery motion, it's --
THE COURT: No. No, that would be a discovery motion filed with me.
MS RIECHERT: Okay.
MS GJOVIK: Is -- so if they're requesting an injunction, though -- so if they're requesting to have stuff deleted and they're requesting --
THE COURT: No. There's no injunction, but there -- if you actually are -- if it turns out the information shows that you really are in violation of the protective order, the court can order sanctions.
MS GJOVIK: So that -- how does -- so when I was looking at the rules, that would be --
THE COURT: A sanction could be --

MS GJOVIK: -- if contempt -- based on evidence in a hearing, that's sent to Judge Chen and Judge Chen issues then the finding of contempt and whatever it is?

THE COURT: No, no, no. I don't know if it's going to be any sort of motion for contempt. I don't know what Apple is going to file, but they're talking about filing a motion regarding violating the protective order. So that's one.

MS GJOVIK: This would be like a formal 25-page, though, not this five-page thing?

THE COURT: Right. A full motion.

MS GJOVIK: Okay. Good.

THE COURT: A full motion with, you know, notice motion, 35 days notice motion.

MS GJOVIK: And would actually get a hearing and oral arguments and evidence and all that?

THE COURT: Right, yeah.

MS GJOVIK: Okay. Cool. I mean, not cool that Apple is doing this, but I like due process, and if they're going to do it, I'd much rather it be out in the open in their record and other people to see what they're doing. So it's known.

THE COURT: Okay. And if you do file anything --

MS RIECHERT: So it sounds like Ms Gjovik is going to

continue to post confidential information --

MS GJOVIK: Melinda, then you can file a TRO. There's a motion for that too and you get to justify with evidence and sworn declarations and actually argue why this is harming your company, and all that stuff. This isn't an informal phone call.

THE COURT: You can file whatever -- Apple, it's -- I think, Ms Gjovik, you're missing sort of the point of this phone call, and the point of this phone call is to really avoid all of these long motions.

MS GJOVIK: I know, your Honour, but that's where -- Apple and I are way past that.

THE COURT: And in discovery, usually parties try to work things out when it comes to discovery.

MS GJOVIK: But they're trying to get me to delete my Twitter posts that are talking about protected activity and federal NLRB charges against Apple. Like, that's just outrageous. I compromise with them constantly, just so you know. I'm constantly picking my battles.

There's, like, 20 motions I would have filed to you, and letters, but I'm just not. I'm letting a ton of discovery issues go because I still think I can win on the merits and summary judgment. And I don't want to bother your Honour, even though I could raise a ton of

stuff. I'm just not. It's not worth your time, it's not worth my time. I think Apple gets their kicks on fighting this stuff. So I'm just not. Which might be why they're now stirring up stuff that doesn't even need to be stirred up.

THE COURT: Mm-hmm.

MS GJOVIK: So maybe I should just file a couple so they can get it out of their system a little bit, instead of this. But it's too late, I guess.

So, Melinda, if you're going to file these motions, if your client is insisting on this, then just file them. I'm not going to do it in the background. I have hundreds of thousands of coworkers watching every move I make, and how I react with you informs how they're going to be organising and interacting with your client. So I can't budge. So if you're going to do this, you're going to do this. We're going to have to fight it out. It's going to waste the court's time, and then you're going to have egg on your face when it comes out that what you're trying to fight is public information and whistleblower disclosures. But that's your client's choice.

MS RIECHERT: That's not what I was trying to fight. It's the deposition designations. That's all I care about.

Otherwise we can talk about anything you want --
MS GJOVIK: Well, then send me your stuff. Let's work it out. You haven't even emailed me anything other than threats to delete tweets.
THE COURT: I think the next best thing to do would be to respond to Ms Gjovik's whatever she sent you with the spreadsheet attached so that you can just --
MS RIECHERT: Yes.
THE COURT: I know it's only been a few days, so you need to --
MS RIECHERT: Right. But that doesn't excuse violation of the protective order. That's my problem is, if a party to a case doesn't follow a court's order, there has to be consequences to that.
MS GJOVIK: But you haven't established that I violated it.
MS RIECHERT: I will definitely follow the --
THE COURT: Yeah, but I think if you want me to order her to take it -- take down certain things, then I need a motion so you can tell me exactly what --
MS RIECHERT: Yeah.
THE COURT: -- to take down, where it needs to be taken down, what it says.
MS GJOVIK: And the point, Melinda, is it's your choice. Do you want to file that motion tomorrow, or do you want

to try to do these designation disputes too, maybe in parallel? Or is it just about trying to get me to delete tweets?

Because it looks bad that you're not even working through the normal process on the basic stuff. We're months behind. The deposition was in December. And you said you wanted to do a second deposition. So now you're going to schedule the second deposition until we work this out?

THE COURT: Are you having another deposition?

MS GJOVIK: They said that -- they finished their seven hours but are insisting they want more. And this was another thing I decided not to raise, your Honour, and I gave them four more hours. They haven't scheduled it, though. It's been like a month since they said they wanted it.

THE COURT: Okay.

MS RIECHERT: We only got your objections to the designations two days ago.

MS GJOVIK: That doesn't stop you from scheduling your subsequent deposition you said you want, and then you might try to hold up our summary judgment saying you need it after you didn't schedule it for months like you did the last time. Just schedule it. If you want

it, just schedule it. I don't even have to give it to you and I'm giving you four more hours and you won't schedule it.

MS RIECHERT: We're a little bit off track right now, which is where we were with the deposition, which is why it took so long. So what we're talking about now is the deposition designations and the violations of protective order. We are --

THE COURT: Right.

MS RIECHERT: We will have talked separately about additional depositions. We've talked separately about the medical records which you're not giving us. We're going to work through -- with the court on the medical records --

MS GJOVIK: I'm giving -- no. The medical records, you have not given me a [request for] document production. I've given you documents. The only thing you're asking for is a HIPAA waiver, which I said I wouldn't give. But you also are refusing to serve your own subpoenas. Have you served your subpoenas yet, Melinda? You've had them for a year.

THE COURT: Ms Gjovik.

MS RIECHERT: So we agree --

THE COURT: Ms Gjovik -- yeah. I don't want to get off on

all of these other areas involved in your litigation. I'm only here to really address --
MS GJOVIK: I know, your Honour.
THE COURT: -- the issue --
MS GJOVIK: She's raising this, though, to try to prejudice the situation. She's trying to make it sound like I'm the bad one.
THE COURT: I'm actually not even listening to any of that. Because it's not relevant to what I'm here for.
MS GJOVIK: Okay.
THE COURT: I'm only here to talk about the protective order, the process involved with the protective order, and to make sure that the parties are in full compliance with the protective order. The protective order is an order of this court. And so, therefore, it must be complied with by both sides. So I just want to remind the parties of that.
MS GJOVIK: Oh, sorry. Your Honour, to that point, if Apple is going to do this too. Apple did violate it a bunch of times. And I would also -- like, if they're going to complain about me violating it, then I guess I should complain about them violating it. So would I file, like, a countermotion if I also want to accuse them of violating it?

THE COURT: I think that you need to meet and confer with the parties about the claim --

MS GJOVIK: I've already told them about this and documented it. Like, the blanket thing where they had five weeks of five hours of testimony claimed was completely improper.

THE COURT: Whatever your other issues are regarding discovery, you should meet and confer before filing any sort of --

MS GJOVIK: Sorry. I meant when you said that if Apple is going to proceed to file theirs, but do you have -- would I file, like, a separate motion if I'm going to also make counteraccusations against them about violations?

THE COURT: Whatever your allegations are, you would file as a separate letter, discovery letter, yes.

MS GJOVIK: Oh, sorry. So you had said "motion". So if they're accusing me of violating the protective order, you said they should file a motion. So if I'm going to accuse them of violating the protective order, which I already have and we've already been talking about it --

THE COURT: Mm-hmm.

MS GJOVIK: -- I would file a motion also?

THE COURT: Yes. If you want to -- you can file a motion as well, if you believe they have violated the protective --

MS GJOVIK: Okay. We should schedule it that way, then, if they're going to do it. Because I also want to call out that they were violating it too, because I think that's important context. And also --

THE COURT: Well, I'm not going to schedule anything.

MS GJOVIK: Okay.

THE COURT: The parties are going to file whatever they're going to file and they're going to notice their motions how they choose to notice them.

MS GJOVIK: Oh, I'd assume you'd want one hearing where you'd hear both if we're both filing.

THE COURT: It depends. It doesn't necessarily have to be that way.

MS GJOVIK: Okay.

THE COURT: Because you may be arguing completely different things about the protective order that are being violated than what they're talking about. Right now, we're talking about this specific designation from your deposition that they are saying is what is violating --

MS GJOVIK: That's the only thing they've ever claimed on this protective order. They have claimed nothing else

other than this deposition. And it was my testimony under the deposition. They didn't even claim the documents during the deposition were confidential. It's only my speech, is the only thing they've ever used this order for.

THE COURT: Yeah, but they have a right to do that.

MS GJOVIK: I know. I'm just saying when you said it could be other stuff, I'm like, "No, it's just this".

THE COURT: Yeah.

MS GJOVIK: So if I'm also contesting that their designations during that deposition testimony violate the protective order, I'll file it on maybe an administrative order when I file mine and ask you if you want to consolidate schedules.

THE COURT: But you can also address any improper designations in your opposition to their motion. You don't need to file a separate motion.

MS GJOVIK: Yeah. But if they're accusing me of stuff, I want them found -- like, if they're found that they filed this improperly to begin with, I'd rather have, like, counterclaims that then they can get in trouble for.

THE COURT: But that's not how motions work. It's not about making claims or counterclaims. It's if you have an

opposition to their designation of confidentiality, that's what you put in your opposition too.

MS GJOVIK: But then would your Honour find that they violated the protective order if I was only filing an opposition for --

THE COURT: No.

MS GJOVIK: That's what I'm saying. So I would file my own, with my own claims that your Honour could potentially find that they also, or only they violated the protective order.

THE COURT: Right. To the extent that --

MS GJOVIK: Okay.

THE COURT: -- you're not just opposing their confidentiality designations.

MS GJOVIK: Correct.

THE COURT: Yes.

MS GJOVIK: Yeah.

THE COURT: But as far as the confidentiality designations, I'll make the final call about whether or not they should be confidential or not.

MS GJOVIK: Okay.

THE COURT: Yeah. All right. So I'm sorry that this didn't get resolved in a much easier way, but obviously that's not what's going to happen. So we'll go ahead and have

the parties hopefully try to meet and confer to try to narrow the scope.

MS GJOVIK: Oh, and I'm sorry, your Honour. You had said that we don't even have to really talk to each other, it can just be emails. And the emails have not been fruitful. When you originally made that alternative order, you even said you didn't think it would work and --

THE COURT: It doesn't usually. It doesn't usually.

MS GJOVIK: And I said, I didn't think it was going to work, and I thought they're going to abuse it. I felt they have.

So if we want to work through this, I think it would be really helpful to force them to, like -- we could do a phone call versus video or something, but, like, to actually have to talk to each other, because otherwise the emails just cause more problems.

THE COURT: Mm-hmm, mm-hmm.

MS RIECHERT: I disagree with that, your Honour. Remember, we had a motion before. In fact, we were excused from having oral meet-and-confers because of the issues that arose.

MS GJOVIK: That's what I'm complaining about. She said on the transcript she didn't think it was going to work.

And I said I don't think it's going to work either. And she said she would reconsider it if it doesn't work. That's what I'm re-raising, Melinda.

THE COURT: I think the dynamic is different, you know, when it's a pro se litigant versus attorneys, sometimes we just allow the parties to do separate filings because it's too hard to get the pro se plaintiff to do something jointly.

MS GJOVIK: I've always -- I've been asking them repeatedly to do joint, and they'll refuse. They've insisted that your Honour's order authorises them to file completely separately, even if I would want to do joint, that they don't have to, so they won't. But that's a second issue.

The first issue is the fact that they won't even, like, get on the call to meet and confer. They say they don't have to. So they'll send like one email, and as soon as five days is over, they say, "Five days is over, now we're filing ours. Bye". And so they're not even making any effort to resolve any of this stuff.

THE COURT: I thought that I just heard that they were going to respond to your objections to their confidentiality designations.

MS GJOVIK: They said they would, but what I'm saying is

they think they don't have to get on the phone call or have any kind of video. They'll just do an email, and their emails thus far have been not productive at all.
THE COURT: Mm-hmm.
MS GJOVIK: And I thought the whole point of trying to require a meet-and-confer over the phone or some kind of conversation is it's far more productive than emails. Especially when there's bad blood between the parties, because it forces the folks to get on the call and actually try to find a resolution, which I would like to try to do more.
And I feel like the longer we go where they think they can just send one email, wait five days and then file a single letter, they're just creating more problems. They're not even trying to solve anything. And so at least -- I'm a project manager. If I can at least get them on the phone and try to talk to them, I can at least hopefully reduce some of the problems and issues. But otherwise, there's nothing I can do. My hands are completely tied.
THE COURT: I don't think that both sides agreed that talking on the telephone was productive. Is that right?
MS GJOVIK: It was just them.
MS RIECHERT: That was absolutely true. And that's what we

raised at the last hearing, and that's why the court said we could to do it by exchanging emails and we did not have to meet and confer by --

MS GJOVIK: But they didn't explain why. I included transcripts showing me trying to get them to resolve stuff, and them refusing. So there's no evidentiary review to actually decide that it wasn't productive. It was just Apple saying they didn't want to, and this court saying we'd try it out. But I feel like the last few motions show that this stuff isn't working.

Like we should try the original, the default processes in this court, because -- you know, I don't want to be here, I didn't want to be fired, I don't want to be fighting this long. But I want to get through this, and I'm a professional project manager. It's my job to work through complex issues and work with people, even in hot disputes. So if I can try to get them in a position or I can get them to try to move forward on stuff, I will. Be professional and try to get stuff moving.

But I feel like they've kind of put themself in a fortress now where they don't even have to talk to me, they don't have to respond to stuff. They can just file stuff independently and then make up whatever

version they want and that wastes your Honour's time not just with pointless escalations but also having to figure out what's actually going on. Because you're just getting multiple sides of stuff, instead of, like, the actual just raising the dispute from both parties.

THE COURT: Right.

MS RIECHERT: I think that this call has shown how an oral conversation is not productive, that we need to have it in writing which the court can review and make sure the parties have met with their obligations to meet and confer, and that's the process the court said is fine.

THE COURT: Yes.

MS RIECHERT: And I think we should continue with that process.

THE COURT: Yeah. I'm not going to change that, because I -- I just -- I don't think that phone conversations will be productive in this particular case. I really don't. So I think, unfortunately, things are going to have to stay the way that they are in terms of, you know, putting everything in writing. But I do think Apple should respond to Ms Gjovik's last written form of objections and --

MS GJOVIK: Your Honour, I would ask -- I don't understand why the phone calls wouldn't be productive.

THE COURT: Because --
MS GJOVIK: I feel like the transcripts showed they were. But if it has to be in writing, I would ask that they have to show that they actually put stuff in writing and tried. Because most of the time, they're not.
THE COURT: Mm-hmm. Yeah. I think, well, you can attach whatever you want --
MS RIECHERT: We would absolutely --
THE COURT: You can attach those things to any motion that you file.
MS GJOVIK: Your Honour, the order says don't attach anything other than the formal discovery responses.
THE COURT: Right. And so in terms -- but for arguing regarding the meet-and-confer efforts, if you need to, you can attach your meet-and-confer efforts.
MS GJOVIK: But then, I mean so if we're doing it right, that's like a ton of pages. Right? So they're trying to set it up so it looks like a couple things and trying to -- it's just --
THE COURT: No. I want it to be limited to what this issue is that we're talking about right now, which is this deposition testimony and how it's been designated confidential and whether or not the protective order has been violated. That's all I want to hear about.

MS GJOVIK: Oh, I mean, we should do like a joint status for you or something on it, then.

THE COURT: Yeah, but I don't think the parties can do anything jointly.

MS GJOVIK: We file joint statuses all the time. It's just them not wanting to -- them convincing your Honour that they can't somehow, but we've filed joint statuses to Judge Chen. We've filed like six of them. They're all on time, they're beautiful, they're glorious. Your Honour can read them.

THE COURT: Have you really?

MS GJOVIK: Yes.

THE COURT: Oh. Well, you can file something joint if you're capable of working on something joint. My understanding --

MS GJOVIK: They're just telling you they're incapable because they don't want to.

THE COURT: -- that it broke down to the point where you could not do that.

MS GJOVIK: Because they're refusing. So they're just saying they refuse, they can't, they're incapable of doing it, not that I won't. I'm completely capable of doing it. We've been filing this stuff for two and a half years now.

THE COURT: Okay.
MS GJOVIK: They're just trying to get your Honour to think -- I don't know what they're trying to do. But we're completely capable of, if they agree to. So it's more of they don't want to and want your Honour to authorise their refusal to do it as somehow blocking them doing it.
THE COURT: Is it true that Apple is doing joint filings with Ms Gjovik otherwise in this case?
MS RIECHERT: The only thing that we filed jointly is the status report that Judge Chen requires, and we send in our section and at the very end of the deadline she sends in her section, and we file it.
MS GJOVIK: We go back and forth. We have different revisions. We filed, like, five of them, and they are detailed. They are 10 pages, and it covers all of the stuff in the court's standing order.
MS RIECHERT: What you're asking for now is a full hearing on 35-day briefing, not a joint --
MS GJOVIK: I'm not asking for it. You're saying you want to file this, so I said then you have to do it the right way, Melinda.
MS RIECHERT: No, I wanted to get it resolved today without a full hearing.

MS GJOVIK: That's an -- then you're getting another NLRB charge for that, too, Melinda, of trying to coerce me to delete stuff. It's not proper.

MS RIECHERT: I know. It will be my fault. It'll be my fault, then --

MS GJOVIK: It's your client's fault. You're an agent of your client. But we can work together to do this joint stuff to move it forward. The only way we're ever getting out of this, Melinda, is if we can get to summary judgment and the trial, which means we need to work through all the discovery issues, and we have to resolve all this stuff and just actually get to trial. That's what I want to do. And so there's no point in having a ton of issues and a ton of fights and a ton of motions and stuff.

THE COURT: When is your trial date, anyway?

MS GJOVIK: October.

THE COURT: Oh, it's in October. Okay.

MS GJOVIK: Yeah.

THE COURT: And when is the discovery cut-off? April?

MS GJOVIK: End of April.

THE COURT: Okay. So you don't have too much more discovery fighting to do.

MS GJOVIK: Well, that's why I was like, let's get through

this stuff. Let's just plow through it. Like, if the whole point is they need information, let's get them that information. And so, like, if they're saying they need medical docs, I'm like "tell me what you need and I'll send you whatever I have that you think you want. Send your subpoenas to my doctors, get that stuff."

MS RIECHERT: No, we need them from the doctors.

MS GJOVIK: Well, then send your subpoenas, Melinda.

THE COURT: Oh, I don't want to talk about that. That's a totally different issue.

MS GJOVIK: Okay. But to that point --

THE COURT: We're getting off on another tangent.

MS GJOVIK: -- we do joint stuff. We're completely able to file it. We're able to work together. They're kind of exploiting your Honour of their kind of one-sided stuff of trying to, I think, make me sound unreasonable or difficult. But the proof is on the docket that we're able to file it jointly.

THE COURT: So why is Apple able to work with Ms Gjovik on a joint status report but not able to meet and confer about her spreadsheet about, you know, regarding the confidentiality designations?

MS RIECHERT: We absolutely are going to meet and confer. We only just got it on Wednesday afternoon. It's now

Friday afternoon. So we are working on meeting and conferring. We have no problem with that, and we will intend to comply with the protective order to the T and meet and confer. And if we are unable to agree, then we intend to bring -- follow the procedure in the protective order and bring it to the attention of the court.

MS GJOVIK: But why won't you have a phone call? Why can't we have it --

THE COURT: But can you do it -- I guess what I'm asking you is: Can you have a phone call with her about those things?

MS RIECHERT: It has been totally unproductive, as you can tell from today, to have phone calls. We have reached no agreement today on anything, and that's the way it was before when we tried to reach agreement. So it's much better to have it documented --

MS GJOVIK: It's not true. The transcripts I attached for your Honour previously show I got them to cave on a ton of stuff. I made a ton of progress. They just don't like it because I'm a really good project manager and I got them to cave on stuff and compromise. That's why they don't want to do it. I'm very effective on the phone.

MS RIECHERT: Absolutely not. Better to have it documented in writing.

MS GJOVIK: That's very true. You can see on the transcripts.

THE COURT: Yeah. I can see that this is not a productive use of my time, so I'm going to be bringing this particular call to an end, and what I'm going to just say is that the parties need to comply with the protective order. I'm not going to order Apple to have phone calls with Ms Gjovik. I'm going to order the parties to comply. And to comply with the protective order does require that you meet and confer.

So if you file a motion and you haven't met your obligation to meet and confer, then I may not consider the motion because you haven't done it. So you need --

MS GJOVIK: Can you define that a little bit more for -- because they might say that their threatening email just telling me to randomly delete tweets was their meet-and-confer. And they're trying to -- they've been recently trying to do that sort of thing that they're like, "We did, we sent her" --

THE COURT: No. The meet-and-confer should consist of the substantive discussion about all of the designations and whether or not they are confidential or not.

MS GJOVIK: Agreed.
THE COURT: And maybe some compromise as to some of them. And then to the extent that there are some left that you can't come to some agreement with, then those should be the ones that are the subject of the motion.
MS GJOVIK: I agree. And like I said, I already caved on like half of them, where I was like, "I don't agree that it's confidential, but I don't care if you redact this, you guys". Like, "If you want to fight, die on that hill, fine, but I don't". There's not enough time for --
THE COURT: Right. I mean, it's really just about putting it in the public domain. The protective order outlines very specifically who you can provide those things to. So I would just say that's how you should be complying with the protective order and not posting them on public websites and things.
MS GJOVIK: I just want to assure your Honour, I have not posted any documents on -- well, they haven't claimed any documents.
THE COURT: No, I'm not talking about documents. We're only -- Ms Gjovik, we're only talking about the deposition transcript and the parts that were designated confidential. We're not talking about

documents. We're not talking about anything else. That's it. That's the only thing we're talking about.

MS GJOVIK: Okay.

THE COURT: So those are the things that should be met and conferred about. And then to the extent you cannot agree, those items should be the subject of any motion that you file.

MS GJOVIK: I feel like we should be able to sort this out ourselves without involving you, which I personally --

THE COURT: Just file -- just make sure that you're walking through the protective order and complying with it fully.

MS GJOVIK: I feel like I have, your Honour, again. So --

THE COURT: Well, I tend to be concerned about that, Ms Gjovik, because if you really did post excerpts from the deposition that were designated confidential without a court order saying they are not confidential, then that would be a violation of the protective order. But --

MS GJOVIK: I think it's more complicated than that if it's already public information talking about just my own experiences or saying the word "[redacted]", but I understand.

THE COURT: I know. I heard all of that.

MS GJOVIK: But I understand what you're saying, yes.
THE COURT: But if those are things that you should have brought to the court so that the court could agree with you or not before you posted them, then --
MS GJOVIK: I didn't realise I could've filed a motion right away on myself. I would -- because Apple, I was afraid they were going to drag this out for months anyways and it was just going to take forever. If I could have just filed a motion like right away, I would've.
THE COURT: Yeah. And you could. But I feel like the parties have just not finished the meet-and-confer process and so I think that is what needs to happen next.
MS GJOVIK: It's been -- you know, the deposition was, like, over two months ago now. It was a really long time ago.
THE COURT: Yeah. It was December 16th.
MS GJOVIK: Yeah.
THE COURT: It's been two months.
MS RIECHERT: It took a while to get transcripts. We didn't get that until January.
THE COURT: Yeah, January --
MS GJOVIK: But you could have made the designations during -- per the protective order, you were supposed to make your designations during the actual deposition,

not do a blanket. So that was kind of on you guys. If you had done it during the actual thing, we would've saved a lot of time.

MS RIECHERT: Well, we didn't know what you were going to say that would be subject to protective order.

MS GJOVIK: But if you know it's confidential as soon as I say it, say that's confidential -- anyway, she doesn't need to hear this. We can talk about this later.

THE COURT: Right. Those are the things that you could talk about in your meet-and-confer.

But I would say, please, just look at each of the designations. If they really are broken down into 160 of them, please try to narrow those as much as you possibly can before filing any motion. And so we'll -- I'll be expecting, if you can't work it out, some sort of notice motion being filed by Apple.

MS GJOVIK: And I will file one too if they're filing one.

THE COURT: And you can file one too if you need to.

MS GJOVIK: Yeah.

THE COURT: Yeah. Okay?

MS RIECHERT: We're talking about two different motions. One is the motion on whether the stuff should be confidential or not. And the other is the motion for

violating the protective order.
MS GJOVIK: It was together, though, right? I thought it was one thing.
THE COURT: Well, the issues are overlapping because I'd have to determine -- well, I guess not. That's not true. Because --
MS RIECHERT: There's not overlapping because she didn't have the right to violate the protective order, whether they were properly designated --
THE COURT: But I'd need to -- so, yes, you have -- right. So you'd have to show that the things that she posted were specifically designated confidential during the deposition.
MS RIECHERT: Yes.
THE COURT: Right.
MS RIECHERT: And I can absolutely show that.
MS GJOVIK: But they'd have to show that they're -- like, so it's going to be more complex legal arguments in that as well, though. Like, because that protective order is being stretched incredibly thin with what they're doing. This isn't a straightforward, like, me talking about some trade secret or the details of some internal thing. Like, it was just public information. It seems incredibly important for anti-SLAPP, for preemption

that if the thing they're pointing to is already completely public information and something pled --

THE COURT: You can argue, Ms Gjovik --

MS GJOVIK: -- in the complaint in this case --

THE COURT: Ms Gjovik, you can argue all of that stuff in your opposition to their motion.

MS GJOVIK: Okay.

THE COURT: But --

MS GJOVIK: So if they do two motions, then we just argue it two times in front of you?

THE COURT: No. If they file a motion saying you're in violation of the protective order and they establish a record that they designated certain things during your deposition as confidential, and then you nonetheless posted them in the public domain without first getting an order from this court saying they are not confidential, then that is a violation of the protective order. So --

MS GJOVIK: Your Honour, I think it's more complicated than that in our situation.

THE COURT: You can argue a lot of -- all the things that you think make it more complicated. That's what you put in your opposition, and then I'll ultimately rule on that.

MS GJOVIK: Good. And again, your Honour, I'm not trying to violate anything. I really don't think I did. I wouldn't do that intentionally, and I think it's an issue when it gets misused like this, because those are in there for a reason. And it's supposed to streamline the process, not create more issues, which is what's happening right now.
THE COURT: All right. So that's how that will go. And, you know, we'll see how it goes.
CLERK: Does your Honour want any deadlines in the minutes set, or just the general parties to meet and confer with any motions to be filed on?
THE COURT: No.
CLERK: Okay.
THE COURT: Yeah, I'm not setting any dates because I'm not asking the parties to file any kind of motions.
MS GJOVIK: We might be able to sort it out. Melinda, I think we should talk to Morgan Lewis and sort through this.
THE COURT: I think you should talk -- I think the parties should meet and confer for sure. I am ordering the parties to complete the meet-and-confer process on this issue before filing any motion, though.
MS GJOVIK: I think that's a good idea.

THE COURT: Okay. All right. Thank you. Thank you, both.

MS RIECHERT: Thank you.

MS GJOVIK: Thank you, your Honour.

MS RIECHERT: Bye.

CLERK: And that concludes the hearing. We're adjourned.

[End of audio]