Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

**Ashley M. Gjovik,**
*an individual,*

Plaintiff,

vs.

**Apple Inc.,**
*a corporation,*

Defendant.

**Case No.**
**3:23-CV-04597-EMC (KAW)**

## Motion for Declaratory Relief & for Sanctions Under Fed.R.Civ.P. Rule 26(G)

**Hearing:**
**Date: April 16 2026**
**Time: 1:30 PM PST**
**Location: Oakland, TBD**

# MOTION FOR DECLARATORY RELIEF & FOR SANCTIONS UNDER RULE 26(G)

**TO DEFENDANT APPLE: PLEASE TAKE NOTICE** that on April 16 2026, at 1:30 p.m. in a courtroom to be determined (TBD) of the above-titled Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiff Ashley Gjovik will and hereby does move the Court for an Order finding of Declaratory Relief and Sanctions under Rule 26(g) against Defendant Apple. Inc

Plaintiff Ashley M. Gjovik respectfully files this **MOTION FOR SANCTIONS UNDER RULE 26(G)**, as discussed during the Feb. 20 2026 Conference Call. (Dkt. 288). ("Apple did violate [the Protective Order]… I've already told them about this and documented it. Like… where they had five weeks of five hours of testimony claimed was completely improper… I would file a motion also?" Court: "Yes. If you want to -- you can file a motion as well, if you believe they have violated the protective [order]." Cert. Tr. pp. 48-50, Ex. A) Additionally, as required Chambers Copies will be promptly sent to 1301 Clay Street, Suite 400S, Oakland, CA 94612.

## FACTUAL BACKGROUND

### Apple Obtained the Protective Order by Representing It Needed It to Authenticate a Specific Document

Apple's stated justification for requesting a Protective Order in this proceeding evolved over months of meet-and-confer proceedings, but the only representation that apparently, ultimately induced entry of the Order was that Apple needed the Order to show Plaintiff the unredacted Gobbler informed consent form — a document Apple described as the evidentiary basis for its termination defense — for authentication at a deposition. (May 2, 2025 M&C, Dkt. 220-9).

At the May 2, 2025 meet-and-confer, Apple's counsel stated: "one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one. I need to show you the entire document so that you can agree that that is the document that you signed." When Plaintiff asked why redactions were insufficient, Apple's counsel responded: "I will not give you a copy of the consent agreement that you signed without a confidentiality agreement." (May 2, 2025 M&C Tr. at 5:53–6:05, Dkt. 220-9).

Apple repeated this representation to the Court at the July 2, 2025 conference. Apple's counsel stated on the record that "one of the documents we are relying on to support the fact that we terminated Ms. Gjovik because she revealed confidential information is a document that she signed consenting to her

participation in a study" and claimed that the Protective Order was needed to show Plaintiff the unredacted version for authentication purposes. (July 2, 2025 Cert. Tr. at 10:17–11:11; Exhibit D).[1]

The Plaintiff repeatedly objected to the entry of a Protective Order, said she would not enter one for this proceeding – even asking this court to quash Apple's demand for the order and raising the issue to the Ninth Circuit asking for intervention - -terrified Apple was going to do exactly what it's doing now. (Dkt. 211, 213, 214, 220, etc.).[2]

The Court refused the Plaintiff's objections (Dkt. 213, 230), never required a formal motion or showing from Apple, pressured the Plaintiff to sign the agreement (July 2 2025 Cert. Tr.), and entered the Protective Order despite the Plaintiff's objections on July 7, 2025. (Dkt. 235). The Court's stated understanding was that the Order would allow Apple to produce at least one confidential document to Plaintiff while ensuring she could not publish those documents publicly. (July 2, 2025 Tr. at 13:18–14:2 ("Apple cannot refuse to produce the information once you have that protective order in place... once they do produce it to you, you can't go and put it out there in the public.")). Even then, the court assumed the document Apple referenced was actually confidential – yet Apple has since confirmed that it is not.

Plaintiff opposed the Protective Order throughout this process. She warned the Court on the record that Apple's actual intended use was to designate deposition testimony as confidential and to prevent her from speaking about the basis of her own termination and her complaints — not to facilitate document production. (July 2, 2025 Tr. at 6:10–21 ("the defendant's only explanation of how they want to use it was to declare part of the deposition confidential. It wasn't even producing documents... What they want to use it for appeared to be their attempt to do a summary judgment motion without summary judgment. They want to say they fired me for something confidential, whether or not if it was confidential.")). The Court did not address this warning on the merits.

[1] In SAC Dkt. 32 ¶ 1577 alleged Apple "refuses to provide Gjovik a copy of this alleged document" — the ICF. That allegation was filed December 2023. Apple told the court in July 2025 it needed the PO *to show Plaintiff the ICF*. Apple then never produced it. The SAC shows Plaintiff was already on record saying Apple was withholding the ICF before the PO was even sought.

[2] "Plaintiff respectfully warns the Court that the subject matter for which Defendant seeks a confidentiality designation—based on its own representations during the parties' meet-and-confer and recent filings—would functionally operate as a dispositive ruling on contested issues, and impose prior restraint on testimony that the U.S. government has already found to be protected activity. (Dkt. Nos. 35-4, 111, 151, 171, 203). The only justification Apple now offers involves internal policies it was required to rescind as part of a 2025 national NLRB settlement." Dkt. 220 at 5.

## Apple Never Used the Protective Order for Its Stated Purpose

Apple never produced the Gobbler informed consent form under the Protective Order. Apple never designated a single produced document as confidential under the Order. Apple confirmed this expressly in email on February 6, 2026: "All documents used in the deposition were produced either by Apple or by you. None was designated confidential." (Feb. 6, 2026 email, 3:58 PM). The Gobbler form that Apple cited as the entire justification for entry was never produced under the Order, is at Dkt. 250 p. 52-54 right now, and led the Plaintiff to request leave to file a Motion for Sanctions against Apple once Apple revealed they had been misrepresenting the scope, nature, and content of the document for five years. (Dkt. 245).

Instead, the Order's sole use to date has been exactly what Plaintiff warned: designating Plaintiff's deposition testimony about her own body and her own workplace complaints as Apple Confidential, and then seeking contempt proceedings tied expressly to Apple's termination defense. Apple acknowledged this connection in its own court filing: claiming the current alleged "breach" is independently actionable under her employment IPA and "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place." (Dkt. 280, fn. 2). This is precisely the improper, pretextual use Plaintiff identified before the Order was entered.

During the May 2, 2025 meet-and-confer — recorded and filed as Exhibit I to Dkt. 220-9 — Apple's counsel identified the Gobbler informed consent agreement as the specific document justifying the Protective Order: "For example, one of the documents that we intend to use in this case is the consent form that you signed for the Gobbler application. You don't believe that the one that we have is the right one. I need to show you the entire document so that you can agree that that is the document that you signed." (Riechert, May 2, 2025 M&C Tr., Dkt. 220 Ex. I).

When Plaintiff objected that Apple would not produce the document without a confidentiality agreement, counsel confirmed: "I will not give you a copy of the consent order, the consent agreement that you signed without a confidentiality agreement." (Id.) Counsel further confirmed that Apple's plan was to use the Protective Order at deposition specifically to make the deposition confidential: "I want to show them to you in your deposition." . . . "Correct." [confirming the deposition would then also be made confidential]. (Id.)

Yet, Apple never designated the Gobbler ICF as confidential under the Protective Order. The only thing Apple designated — and the only thing it sought to enforce — was Plaintiff's deposition testimony about Apple's requests to study her [redacted] and [redacted]. The document Apple told the

Court and Plaintiff justified the Protective Order was never voluntarily produced, never designated, and still had to be compelled. The PO's sole operational use was silencing Plaintiff about her workplace complaints, the subject matter of this lawsuit, and Apple's unfair and unlawful business practices.

Apple obtained a Protective Order by representing to the Court that it needed to produce supposedly sensitive documents — including the Gobbler informed consent agreement — and that those documents required confidentiality protection. Apple never designated a single one of those documents. The only thing Apple designated, and the only thing it sought to enforce, was Plaintiff's deposition testimony about her and her coworkers bodies, her complaints, and her own experiences as an Apple employee. The stated justification for the Protective Order, to the court, was never its actual use.

## The December 16, 2025 Deposition: Blanket Designation and Objection

Plaintiff's deposition occurred on December 16, 2025. During the deposition, Apple declared a blanket designation covering pages 66–305 of the 336-page transcript — approximately 72% of Plaintiff's testimony. Plaintiff objected contemporaneously on the record. Apple acknowledged the objection and agreed on the record to narrow the designation. Under Protective Order § 6.3, the 21-day clock to substantiate ran from Plaintiff's on-record objection on Dec 16, 2025. Apple did not respond during the 21-day window. The deadline passed on or about Jan 6, 2026. Under Protective Order § 6.3, Apple's failure to file a motion to retain confidentiality within 21 days of the initial challenge constituted automatic waiver of the blanket designation. As of January 6, 2026, no valid designation existed.

## Apple's February 4, 2026 Unsigned, Undated, Unserved "Chart"

On February 4, 2026 at 4:32 PM — fifty days after the deposition — Apple emailed its court reporter (not Plaintiff) with a document it described as a "chart" of narrowed confidentiality designations. The email was addressed to the court reporter. Plaintiff was copied "for notice purposes" only. The chart was unsigned, undated, & was not served on Plaintiff. Apple did not sign a certificate of service. No attorney put their name on the document.

The same day, Plaintiff wrote to Apple demanding that it serve a signed, dated copy of its designations directly to her, as the opposing party. Over the following two days — Plaintiff repeated this demand. Apple refused each time. Apple's position, stated on February 6, 2026, was: "Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential...

Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM).

Apple thus refused to cure the deficiency after Plaintiff specifically called the omission to its counsel's attention and counsel refused to engage or correct the issue— which is the precise circumstance Rule 26(g)(2) identifies as requiring the Court to strike the document.

## Apple's Escalation: Filing Enforcement Proceedings on a Null Designation

On February 16, 2026, Plaintiff filed NLRB Charge No. 32-CA-381277. On February 17, 2026, Plaintiff filed a Notice of Pendency (Dkt. 278) describing the NLRB charge about Apple's unlawful conduct during and after the deposition. On February 18, 2026, Apple emailed Plaintiff demanding she take down posts from social media and the internet, claiming she was in violation of the Protective Order. Apple simultaneously emailed court staff off-docket requesting an emergency conference. Plaintiff objected to Apple's refusal to use the court's docket. (Dkt. 279).

On February 19, 2026, the Court directed Apple to file its request on the docket. Apple filed its five-page letter at Dkt. 280, signed by Melinda S. Riechert, Esq. (Bar No. 65504), requesting sanctions, contempt, a gag order, compelled deletion of online posts, and sealing. The letter asserted that Plaintiff was violating the Protective Order and her employment agreement with Apple by publishing information Apple had designated as confidential: public information, workplace complaints, the subject matter of this lawsuit, and the Plaintiff's own experiences.

On February 20, 2026, the Court held a telephonic conference and ordered Apple Inc to complete a meet-and-confer process before filing any motions. (Dkt. 288, 292).

From Feb. 20-26, 2026, Apple refused to meet and confer — expressly saying so, in writing — stating there was "nothing further to discuss." Apple then filed three motions at approximately 10:00 PM: Motion to Seal (Dkt. 293), Motion to Enforce Protective Order (Dkt. 294), and Motion to Shorten Time (Dkt. 295). All three were signed by Apple's counsel Melinda S. Riechert (Bar No. 65504) and Jessica R. Perry (Bar No. 209321). On February 27, 2026, Plaintiff filed an omnibus opposition to Dkt. 293 and 295. (Dkt. 297). The Plaintiff has until March 12 2026 to file her response to Dkt. 294.

# BASIS FOR THIS MOTION

Rule 26(g)(1) requires that every discovery request, response, or objection "must be signed by at least one attorney of record in the attorney's own name" and must state the signer's address, email address, and telephone number. Fed. R. Civ. P. 26(g)(1). The signature is not a formality — it is the mechanism by

which counsel personally vouches for the content of the discovery document and certifies that the designation is consistent with the rules, warranted by law, not interposed for an improper purpose, and not unreasonably burdensome. Fed. R. Civ. P. 26(g)(1)(B)(i)–(iii).

Rule 26(g)(2) provides that "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." Fed. R. Civ. P. 26(g)(2). An unsigned discovery document is a legal nullity and the receiving party has no obligation to treat it as operative.

Rule 26(g)(3) provides that "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Sanctions under Rule 26(g)(3) are mandatory, not discretionary: when the violation is established, the court must impose them. The sanction "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Id. P.T. Hoffman and S.M. Israel , *Effective Discovery*, NITA, (2017).

Rule 26(g)(1)(B)(ii) independently prohibits any discovery response or objection "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." A designation of public information, or of information known to the receiving party from outside discovery, as confidential under a protective order — particularly when made to suppress speech connected to the movant's own legal complaints in the same litigation— constitutes an improper purpose within the meaning of this provision.

Pursuant to Civil Local Rule 7-3, Plaintiff certifies that she has met and conferred with Defendant's counsel regarding the substance of this Motion on multiple occasions prior to filing. The meet-and-confer process is documented in the accompanying Declaration of Ashley M. Gjovik. (Gjovik Decl. ¶¶ 2–18, Exs. A, B, E, F). The Plaintiff's first objections were on Dec. 16 2025 and captured in the deposition transcript. (Exhibit E).

On Feb. 4, 2026, Apple sent its unsigned, undated, unserved chart. The parties' meet-and-confer correspondence regarding Plaintiff's foundational objections to Apple's supposed narrowed confidentiality designations and it continued through the date of this filing. Apply finally sent a response regarding its designations on March 4, yet still failed to respond to over half of the targeted objections, and nearly all of the foundational objections. The Court told Apple on Feb. 20 2026 that it must "meet its burden to show why all… designations should be kept confidential." (Feb. 20 2026, Cert. Tr. p 33).

Apple also still failed to provide a list of its designations and instead forced the Plaintiff to have to

cross-reference and map herself to sort out what Apple's latest claims are – making it impossible for the Plaintiff to show the Court what Apple did without attaching all of Apple's various piecemeal, informal communications. Instead, the Plaintiff attaches her response to Apple, which also shows there is nothing left to meet/confer about because Apple still refuses to engage on most of the substantive issues. (Exhibit F).

The Plaintiff had raised the Rule 26(g)(1) signature deficiency, the absence of a date, the failure to serve, and the automatic waiver of the blanket designation under Protective Order § 6.3 in writing to Apple, specifically and repeatedly, beginning February 4, 2026 and continuing through February 6, 2026, and after. Yet, Apple expressly refused to cure any deficiency, stating: "Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM; Gjovik Decl. ¶ 10).

On February 20, 2026, the Court held a telephonic conference and ordered the parties to complete a meet-and-confer process before filing motions. (Dkt. 288, Ex. A Cert. Tr. Feb. 20 2026). Apple would not communicate with the Plaintiff for nearly six days after. Then, on February 26, 2026, Apple announced it planned to file a barrage of motions and that it refused to meet and confer – writing its refusal to meet/confer seven times in writing, and stating there was "nothing further to discuss." Apple then filed three motions at approximately 10:00 PM the same evening. (Gjovik Decl. ¶ 16).

Apple's March 4, 2026 letter purports to respond to Plaintiff's designation challenges but addresses only some of the substance of certain designations and designations. Apple did de-designate around 23 lines of prior designations – but failed to respond to 53 lines. The only content Apple retained designations for appear to be the sex-based testimony by the Plaintiff currently subject to the Plaintiff NLRB charge and Apple's pending motion regarding the Protective Order (Dkt. 293-295) along with two entries of the letter "[redacted]" which Apple claims is secret and accordingly its leaking for the Plaintiff to tell the court. (Exhibit F).

Apple's responses do not address — and has never addressed — the threshold procedural deficiencies that are the basis of this Motion: the absence of a signature, the absence of a date, the failure to serve, and the automatic waiver of the blanket designation under § 6.3. Apple's March 4 letter also de-designated the substantial majority of its prior designations while retaining only those involving female reproductive biology and sexual activity, providing no Rule 26(c) justification for any retained designation. (Gjovik Decl. ¶ 18, Ex. F).

Apple has had multiple opportunities across four months to cure the foundational Rule 26(g)(1) deficiencies identified by Plaintiff. It has expressly refused each time. Further meet and confer on the

threshold issues raised in this Motion would be futile. The meet-and-confer requirement of Civil Local Rule 7-3 has been satisfied. Civil Local Rule 7-8 requires that a motion for sanctions be separately filed and set for hearing in conformance with Civil L.R. 7-2. This Motion complies with those requirements.

# ARGUMENT

## Apple's December 16, 2025 Blanket Designation Automatically Lapsed Under the Protective Order

Protective Order § 5.1 expressly prohibits "[m]ass, indiscriminate, or routinized designations" and provides that such designations "expose the Designating Party to sanctions." (Dkt. 235, § 5.1). Apple's blanket designation of approximately 72% of Plaintiff's deposition testimony on December 16, 2025 was precisely the kind of mass, indiscriminate designation the Order prohibits.

Plaintiff objected contemporaneously on the record. Apple acknowledged the objection and agreed to narrow. Under Protective Order § 6.3, a party that receives a written objection to a designation must either (a) agree to withdraw it, or (b) file a motion to retain confidentiality within 21 days of the written objection. The 21-day period ran from December 16, 2025 and expired on or about January 6, 2026. Apple filed nothing. Under the plain terms of § 6.3, the blanket designation was automatically waived on January 6, 2026. No valid designation existed after that date.

Apple's contrary position — that it had 30 days from receipt of the certified transcript (received January 7, 2026) to narrow the designation — finds no support in the Protective Order, Local Rules, or Federal Rules of Civil Procedure. Section 5.2(b) requires that deposition designations be made "on the record, before the close of the deposition." That is the only authorized mechanism for deposition designations. Apple's post-hoc narrowing process has no textual basis in the Order. Even accepting Apple's own timeline, the February 4, 2026 narrowed designation was still unsigned, undated, and unserved — defects that independently rendered it a nullity under Rule 26(g)(2).

## Plaintiff Notified Apple on February 4 That All Designations Were Already Waived

On February 4, 2026 at 4:22 PM, Plaintiff emailed Apple's counsel stating: "I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you — and nothing to actually narrow, define, and substantiate any of your Confidentiality claims. The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims. Under the

Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now." (Feb. 4, 2026 email, 4:22 PM).

Ten minutes later — at 4:32 PM — Apple sent its chart. Apple's chart was not a response to Plaintiff's email. Apple instead opened a new email chain addressed to the court reporter: "Talty CR Production Team: I write regarding the deposition transcript we received on 1/7/2026 in this matter. Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text) for which confidentiality is being asserted. Plaintiff is copied on this email for notice purposes." (Feb. 4, 2026 email, 4:32 PM). The chart was unsigned, undated, and not addressed to Plaintiff. Apple's own email confirmed Plaintiff was included not as the adverse party being served, but only "for notice purposes."

The document Apple emailed on February 4, 2026 fails Rule 26(g)(1) on its face. Rule 26(g)(1) requires that every discovery response or objection be signed by at least one attorney of record in the attorney's own name, and must include the signer's address, email address, and telephone number. The February 4 document bears none of these. It is unsigned. It is undated. It contains no attorney identification whatsoever. Apple expressly confirmed it was "drafted only for the contractor" (the court reporter) and not sent to Plaintiff directly. (Feb. 4, 2026 email exchange).

Identifying authorship through email metadata does not satisfy Rule 26(g)(1) – and even here, its still unclear who drafted the "chart." The rule imposes a certification requirement on the discovery document itself — not on the transmission wrapper. Email headers do not constitute an attorney's personal vouching for the accuracy and propriety of the designations contained in the attached document. The Adv. Comm. Notes to Rule 26(g) make clear that signature requirements serves precisely to ensure that an identified attorney personally certifies the compliance of the discovery response with applicable rules.

Plaintiff called the omission to Apple's attention specifically and repeatedly, beginning at 4:39 PM on February 4, 2026 and continuing through February 6, 2026. Apple refused each time to supply a signature. That refusal is the event that triggers Rule 26(g)(2): the court "must strike" an unsigned document whose omission has been called to counsel's attention and not promptly cured. Fed. R. Civ. P. 26(g)(2). The February 4 document is a legal nullity & the Plaintiff had no duty to treat it as operative.

## APPLE ALSO FAILED TO SERVE ITS DESIGNATIONS AS REQUIRED BY FED. R. CIV. P. 5

Rule 5(a)(1) requires that discovery papers be served on every other party. Rule 5(b)(1) specifies

the methods of service. Electronic service under Rule 5(b)(2)(E) requires the consent of the person being served. Apple did not serve the February 4 document on Plaintiff — it sent the document to the court reporter, with Plaintiff copied "for notice purposes." Apple also indicated they were sending the document just before the "deadline" for the Plaintiff to sign off on the transcript (which she sill has not had time to do) in order to formalize Apple's designations without any meet/confer and solidify them into the transcript record without any input from the Plaintiff. Apple expressly disclaimed that the email was directed to Plaintiff at all. (Feb. 4, 2026 email, 4:32 PM).

Local Civil Rule 5-5(a) requires that served papers bear either an acknowledgment of service or a certificate of service stating the date, place, and manner of service. Apple supplied no certificate. Local Civil Rule 5-5(b) provides that a document lacking a certificate of service "may be disregarded by the Judge if an adverse party timely objects on the ground of lack of service." Plaintiff objected on exactly that ground, beginning on February 4, 2026. The February 4 document should be disregarded.

At 4:39 PM, Plaintiff replied to Apple directly: "[Y]ou sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case. You need to send me your claims and then we are to meet/confer about those claims.... I ask that you send me your claims to discuss — as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this." (Feb. 4, 2026 email, 4:39 PM).

Apple responded at 6:53 PM, citing PO § 5.2(b) and directing Plaintiff to "follow Section 6 of the Protective Order... should you wish to challenge any of Apple's designations." (Feb. 4, 2026 email, 6:53 PM). Apple did not address the signature, date, or service deficiencies.

At 8:27 PM, Plaintiff wrote: "I'm going to translate your emails to mean that the document you sent to Talty is now being repurposed as your service to me of your confidentiality claims — however the only document you've sent is not signed or dated; nor does it provide any explanation, standard, or reasoning for the designations claimed. If Apple's not going to provide any additional information about its reason for designations beyond what's in the document you admittedly drafted only for the contractor and not even for me, and you want to repurpose that document for party meet/confer, then I'd ask you actually serve (email) me a signed and dated copy with some lawyer actually signing it with their name." (Feb. 4, 2026 email, 8:27 PM).

Apple responded at 8:27 PM: "We followed the procedures in the protective order and you should

too." (Feb. 4, 2026 email, 8:27 PM). At 9:08 PM, Plaintiff again demanded "a signed/dated version of your designations since you're sending them after the fact, and already said it wasn't even a document for me originally." (Feb. 4, 2026 email, 9:08 PM).

On February 6, 2026 at 2:11 PM, Plaintiff made specific written objections to Apple's "outright refusal to (1) sign or (2) date the document or (3) serve it to me directly or (4) answer my questions about exhibits and (5) send it six weeks after the deadline following the (6) use of blanket designations with duration-based blank check confidentiality claims (7) immediately following me exercising my labor rights under the NLRA and (8) them applying that blanket designation to my protected statements." (Feb. 6, 2026 email, 2:11 PM).

Apple's response at 2:46 PM was unambiguous: "Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." (Feb. 6, 2026 email, 2:46 PM). Apple thus not only failed to cure the Rule 26(g)(1) deficiency after Plaintiff specifically called it to counsel's attention — it expressly refused to do so. That refusal is the triggering event under Rule 26(g)(2): the court "must strike" the document. The February 4 chart is a legal nullity. (This same argument will be made for Apple's pending motions at Dkt. 293, 294, 295 – but will be addressed in a more holistic opposition to those filings by the deadline).

## Because No Valid Designation Exists, Apple's Enforcement Papers Certify a Nullity — That Certification is the Rule 26(g)(3) Violation

The February 4 document, standing alone, generated no certification — there was no signature to violate Rule 26(g). But when Apple's counsel signed and filed enforcement papers with this Court — the Dkt. 280 letter (February 19, 2026), the Motion to Enforce (Dkt. 294, February 26, 2026), the Motion to Seal (Dkt. 293), and the Motion to Shorten Time (Dkt. 295), all signed by Melinda S. Riechert, Esq. (Bar No. 65504) — those papers necessarily certified to this Court that valid, enforceable confidentiality designations exist.

That certification was false at the moment of signing, and Apple's counsel knew it. At the time each enforcement paper was filed, the record contained: (1) Plaintiff's on-record objection at the December 16 deposition; (2) Apple's acknowledgment and agreement to narrow; (3) the expiration of the 21-day substantiation deadline without any filing by Apple; (4) the February 4 document's complete lack of signature, date, or service; (5) Plaintiff's repeated written demands that Apple cure the deficiency; and (6)

Apple's written refusals to do so. Counsel signed enforcement papers insisting Plaintiff was violating the Protective Order while in possession of a complete record establishing that no valid designation existed to be violated.

This is the Rule 26(g)(3) certification. The signing and filing of enforcement papers is a certification that the underlying discovery designations are consistent with the rules, warranted by law, and not interposed for an improper purpose. Fed. R. Civ. P. 26(g)(1)(B). Where the underlying document is a 26(g)(2) nullity — and where counsel knows it is a nullity because the other party put them on written notice and they refused to cure — the enforcement certification violates Rule 26(g) without substantial justification. The sanction is mandatory: the court "must impose" it. Fed. R. Civ. P. 26(g)(3).

The Advisory Committee Notes to Rule 26(g) confirm this reading: the rule is designed to "provide a deterrent to both excessive discovery and evasion" and to impose personal responsibility on counsel for the discovery obligations they certify. Certifying the validity of designations that were never properly made, over an objecting party's documented protest, and then filing enforcement motions seeking contempt, compelled deletion, and gag orders based on those null designations, is precisely the conduct the rule targets.

## EVEN IF THE DESIGNATIONS WERE VALID, THE PROTECTIVE ORDER DOES NOT COVER THE DESIGNATED INFORMATION

The Protective Order's own scope provisions are independently dispositive. The first paragraph of the Order states it "does not confer blanket protections on all disclosures" and that "the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." (Dkt. 235, § 1).

Section 3 of the Order expressly excludes from its coverage: (a) any information in the public domain at the time of disclosure; and (b) any information known to the Receiving Party prior to the disclosure or obtained from a lawful outside source. (Dkt. 235, § 3). This court confirmed on Feb. 20 2026 that "if Apple is being unreasonable and asking for things that are already out in the public domain to be kept confidential, the court is not going to look very fondly on wasting the court's time on confidentiality designations that should not be made." (Feb. 20 2026, Cert. Tr. p. 18, Ex. A).

Every item Apple designated falls within one or both of these exclusions. The designated testimony concerns Plaintiff's own physiological experiences, her own workplace complaints, and her own communications with coworkers and the press — all of which were known to Plaintiff before the deposition, all of which she experienced or said herself, and all of which were in the public record before

the deposition occurred.

The designated content has been part of the public record in this litigation since Plaintiff's first complaint. Judge Chen's orders describe Apple's invasive employee studies as among the "main categories of alleged misconduct." (Dkt. 73 at 7–8; Dkt. 179 at 2). The same subject matter appears in NLRB filings dating to 2021, in published press coverage (Bloomberg, The Verge, Gizmodo, Der Spiegel, Telerama, TechCrunch, Gizmodo, Telegraph, and more), in an OSTP public comment cited in GAO Report GAO-24-107639, in filings before the Ninth Circuit (Case No. 25-2028), and in Plaintiff's bankruptcy proceedings. Information that has been in the public domain for years cannot be "designated" confidential by a party who experienced or disclosed it in non-discovery contexts.

Apple's confidentiality designations target Plaintiff's deposition testimony about Apple's requests to study and collect data about her [redacted], [redacted], and sexual activity. That subject matter was publicly pled in all of the Plaintiff's Complaints and addressed in this Court's orders— these are public filings on this docket since at least December 2023. Apple cannot designate as confidential information that its opponent already pled as the factual basis of her lawsuit more than a year before the deposition occurred.

- **SAC Dkt. 32 ¶ 144** (filed Dec. 21, 2023): "“Gjovik was contacted to participate in other user study programs including **Apple wanting to study her ovulation cycles and menstruation**, which she denied. Apple asked to study Gjovik's vitals while she ran and swam, which she denied. **Apple asked to study Gjovik's vitals and sleep while she slept, which she accepted for a few months, but then left the program due to how invasive it felt.** Apple also asked to 3D scan Gjovik's ears and ear canals, which Gjovik denied expressly in 2018 and stated her denial was 'indefinite.'”
- **SAC Dkt. 32-2 ¶ 1344** (filed Dec. 21, 2023): “Apple intended to invade its employee's privacy. Whether it was to spy on them, to collect and hoard their data, or to exploit unpaid labor from them – Apple possessed intention and purpose in invading employee privacy, including Gjovik's privacy. Apple claims that employees 'consented' to even its most invasive violations of privacy, such as scanning ear canals, 24/7 biometrics gathering, **sleep monitoring, or monitoring employee's ovulation and menstruation.”** (Under Plaintiff's active *Tamney*: Invasion of Privacy (Cal. Const. art. 1, § 1) claim).
- **4AC Dkt. 76 ¶ 197** (filed June 18, 2024): " When Apple asked Gjovik to scan her ears and her ear canals, Gjovik declined “indefinitely.” Similarly, **Gjovik repeatedly declined Apple's requests to study and collect data about her menstruation for product development**. Even after Gjovik declined the ear studies, Apple has claimed its secret they even asked her in the first place.”
- **Judge Chen's Order at Dkt. 73 at 7-8, May 20 2024**: “Apple frequently requested that Gjovik

and her coworkers participate in invasive, oppressive, and humiliating **medical studies, anatomical studies** (like ear scans), DNA test, biometrics data collection (like the Gobbler app), and other highly personal studies."

- **Judge Chen's Order at Dkt. 73 at 2, May 20 2024 and Order at Dkt. 179 at 2, Feb. 27 2025:** "As the Court stated in its prior order, the main categories of alleged misconduct by Apple [include]… **Apple made employees, including Ms. Gjovik, participate in studies** related to Apple products that were invasive to their privacy." .
- **Judge Chen's Order at** Order at Dkt. 112 at 32-33, Oct. 1 2024 – (California Business & Professions Code § 17200 claim dismissed under statute of limitations and failure to plead as class action). Claim was based on three "factual predicates": "(1) Apple's coercing employees to provide personal data for Apple's commercial use, such as with the Gobbler application, see TAC ¶ 255 (alleging that no consent was obtained or compensation provided); (2) **Apple's coercing employees to be a part of invasive studies,** see TAC ¶ 258; and (3) Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly." She requested "the Court to order Apple 'to disgorge unlawful data and the fruit of the poisoned data' and to prohibit Apple 'from using personal employee data in for-profit product development'."
- **Judge Chen's** Order at Dkt. 179 at 2, Feb. 27 2025): Plaintiff's § 96(k) claim includes retaliation due to "lawful conduct occurring during nonworking hours away from the employer's premises" included Ms. **Gjovik 'complaining on social media and to the press' about (1) 'unlawful and unethical surveillance and invasions of privacy by Apple'**… and ' Apple's intimidation and threats based on her advocacy for crime victim's rights' (with Ms. Gjovik also being a victim of Apple's crimes). 5AC ¶¶ 252-54."

See, Exhibit G.

A discovery protective order does not restrict the dissemination of information obtained from sources outside of discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (order does not violate the First Amendment only if "it does not restrict the dissemination of the information if gained from other sources"). "Parties to litigation have general first amendment freedoms with regard to information gained through discovery and... absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780 (1st Cir. 1988). Because the designated information was gained by Plaintiff through her own life experience — not through discovery — the Protective Order does not reach it regardless of Apple's designations.

The canon against surplusage and the presumption of validity require this Court to interpret the Order's exclusions as meaning exactly what they say. If the Order's scope provisions excluding public and independently known information are not given effect, those provisions would be rendered meaningless. Courts are not authorized to interpret contractual or court-order provisions to be a nullity. Scalia and

Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012). The exclusions mean the Order does not apply to this information — and attempting to "designate" it does not make it covered.

## Apple's Designations Were Interposed for an Improper Purpose

Rule 26(g)(1)(B)(ii) prohibits designations "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Apple's designations satisfy this standard independently of the procedural defects described above.

Apple represented to this Court that it needed the Protective Order to facilitate document production — specifically, to produce the Gobbler informed consent form for deposition authentication. Apple never used the Order for that purpose. Apple never designated a single produced document. Apple confirmed this on February 6, 2026. Apple has instead used the Order solely to designate Plaintiff's deposition testimony about her own body and her own workplace protected activity, and then to file enforcement proceedings expressly connecting those designations to its termination justification.

The Federal Circuit has held that designation of content as confidential under a protective order "cannot be justified" unless the content actually qualifies for protection under Rule 26(c)(1)(G). In re: Violation of Rule 28(D), No. 976 (Fed. Cir. Mar. 29, 2011). "Though it is impossible to define the exact contours of what may and may not be marked as confidential pursuant to Rule 28(d), it is clear that the parties must confine their confidentiality markings to information covered by a protective order." *IN RE: VIOLATION OF RULE 28(D).* United States Court of Appeals, Federal Circuit, No. 976. (March 29, 2011). (finding it inappropriate and improper to designate legal arguments, citations, and parentheticals).

The Federal Court of Appeals found appellants violated FCR 28(d) when they "designating material as confidential that falls outside the scope of the protective order," the violation was "severe," and justified monetary sanctions. Id citing *United States v. Bush,* 797 F.2d 536, 538 (7th Cir.1986); 16AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3992.2 (4th ed.2010).

During the Feb. 20 2026 call the Court indicated that if Apple was trying to designate public information and the claims in the litigation that the Court would find in the Plaintiffs' favor regarding the designation following a formal motion and declaration on the matter – but still required more meet/confer with Apple prior, which Apple then used to file three emergency motions for sanctions, contempt, and injunctive relief against the Plaintiff – while refusing to meet/confer repeatedly.

A District Court reviewing a protective order allowing the designation of discovery materials on evidence related to the "core claims" in the lawsuit found the order acceptable only because the order did

not address whether "whether information may be disclosed to the public." *Duncan v. Topeka*, No. 24-2336-DDC-ADM, 2024 WL 5106677, at *2 (D. Kan. Dec. 13, 2024).

District Courts have also found that it takes "only the most compelling showing" to justify limitations on disclosure of testimony or documents actually introduced at trial. *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533 (1st Cir.1993). Designating a plaintiff's own testimony about her own body, her own physiological experiences, her own protected workplace complaints, which are pled claims in that lawsuit — is not a justified exercise of the designation process. It is harassment and already found to be sanctionable conduct.

On Feb. 20 2026, when the Plaintiff informed this court about what Apple was actually doing the Court expressed concern. When the Plaintiff told the Court what Apple was trying to designate confidential was her "workplace complaints… whistleblower complaints… stuff [she] pled in [her] complaint for this lawsuit." The Court responded "I'm not talking about those things." (Feb. 20 2026, Cert. Tr. p. 10). But that's exactly what Apple designated. The Court didn't believe that's what Apple was doing (Court: "I don't know -- I mean, based on what I've read, I'm not reading that Apple is trying to prevent those kind of things from being posted." Feb. 20 2026, Cert. Tr. p. 15, Ex. A).

The Platiniff explained on Feb. 20 2026 that : the subject matter Apple was designating "are things [she] pled in [her] complaint from [her] 17200 complaint, [her] whistleblower retaliation complaints. This is stuff, details that are in the written docket. And now Apple is starting to claim that [her] actual, like, legal claims are secret so [she] can't talk about it and [she has] to take months where [she] can't talk about the fact [Apple's] even trying to claim that [her] legal claims are secret." (Feb. 20 2026, Cert. Tr. p. 18, Ex. A). The Plaintiff said it " is just nonsense to me. It makes my head explode." Id.

Apple's emails and Dkt. 280 fn. 2 also confirms the improper purpose by linking enforcement proceedings directly to the merits of Apple's termination defense: claiming it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place. This is Apple using the Court's protective order machinery to pre-adjudicate (without Rule 56 process) whether Plaintiff's speech was protected activity or a terminable offense. Plaintiff warned the Court this would happen. (July 2, 2025 Tr. at 6:10–21). The record confirms Apple is making it happen.

Apple had notice of Plaintiff's complaint about the improper purpose no later than February 4, 2026 — well before it filed its enforcement papers. That evening, Plaintiff wrote:

> "I also asked you to confirm regarding the designations for exhibits…. I'm also outright rejecting the claims that clearly violate federal statutes and/or state constitutional rights

> because a procedural stipulation cannot void vested and inalienable rights, and when I objected to Apple's protective order demand, one of the exact things I cited in my opposition was a concern that Apple would try to make confidentiality claims about clearly protected facts/statements/information and in doing so Apple would be trying to use the stipulation as cover to violate the same laws it violated that are the basis of the lawsuit — which I would say is exactly what is occurring." (Feb. 4, 2026 email, 7:49 PM).

Apple did not respond to this on the merits. Two weeks later it filed Dkt. 280 seeking contempt, compelled deletion, and a gag order; followed by three additional motion seeking the same one week later.

Apple's improper purpose was stated directly. During the parties' meet-and-confer process, Apple "noted concerns they wanted the order to expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement about the evidence she received from Apple during discovery." (Dkt. 220 at 10-11, ¶ 15).[3] A protective order that expressly prohibits a party from testifying to federal law enforcement is not a discovery tool — it is a gag order. No legitimate discovery interest justifies suppressing testimony to government agencies. Apple's express demand for that provision confirms the Protective Order was sought for an improper purpose from the outset.

Apple's own filing removes any doubt about the Protective Order's true purpose. Apple acknowledged that the order "is aimed primarily at deposition testimony regarding a document they claim justifies Plaintiff's termination." (Dkt. 220 ¶ 26). Apple does not claim to be protecting trade secrets, proprietary technology, or competitively sensitive business information. By Apple's own description, the Protective Order exists to place the factual basis for Plaintiff's termination beyond adversarial scrutiny. That is not a permissible use of Rule 26(c). A defendant cannot use a confidentiality designation to shield its own affirmative defense from examination while simultaneously invoking that defense in litigation.

The deposition record reveals the precise moment and cause of Apple's blanket designation. On December 16, 2025, while Plaintiff was testifying that Apple's confidentiality policies violated the NLRA and that the NLRB's national settlement required Apple to withdraw those terms, Apple's counsel interrupted, called a break, and announced: "I'm going to designate the next section of this deposition as confidential pursuant to the protective order. Any information that — testimony you give until I say it's not confidential pursuant to the protective order is going to be covered by the protective order." (Dec. 16, 2025 Dep. Tr. at 63:14–64:2; Dkt. 278 pp. 62-73).

---

[3] "Defendant noted concerns they wanted the order to expressly prohibit Plaintiff from sharing information and testifying to government agencies and law enforcement about the evidence she received from Apple during discovery – which the Plaintiff complained was criminal obstruction." Dkt. 220 at 10-11, ¶ 15

Plaintiff immediately objected: "You don't know what I'm going to say and if I say stuff that's clearly not confidential, you just can't proactively say it's confidential." (Id. at 64:3–5; Dkt. 278). Apple's counsel responded: "I have the right to do that under the protective order." (Id. at 64:6–7; Dkt. 278). Apple then swept pages 66 through 305 of the deposition under a fifty-day blanket confidentiality designation, before a single word of that testimony had been spoken. A designation imposed in anticipation of testimony, triggered by a party invoking her federal labor rights, is not a good-faith exercise of the designation process. It is suppression.

Apple's confidentiality designations also violate a binding federal settlement agreement Apple entered four months before the deposition. In April 2025, Apple settled an NLRB enforcement proceeding and was required to notify employees that "Apple Confidential Information does not include wages, hours, and working conditions" and that "employees may communicate about labor disputes." (Dkt. 203). Apple's requests to study Plaintiff's [redacted] and [redacted] cycles occurred during her employment and directly concerned her working conditions. Her deposition testimony about those requests is therefore expressly excluded from Apple Confidential status under the terms of Apple's own federal settlement. Apple designated that testimony as confidential anyway, and then filed enforcement proceedings to compel compliance. Apple is asking this Court to enforce a designation that Apple's own settlement with the United States government prohibits.

As discussed, Apple's only articulated reason for seeking the Protective Order was that it needed one to produce the Gobbler informed consent form to Plaintiff. (May 2, 2025 M&C Tr., Dkt. 220 Ex. I; July 2, 2025 Tr. at 10:17–11:11). The Court entered the Order on July 7, 2025. (Dkt. 235). Then, Apple would not produce the Gobbler ICF at all. Five weeks later, Plaintiff was forced to file a motion to compel its production. (Dkt. 240). [4]

---

[4] "Plaintiff requested the 2017 Gobbler ICF again on August 26 2024 but Defendant requested another stay and refused to produce documents. Plaintiff requested the 2017 Gobbler ICF again on Oct. 30 2024. Then, on Nov. 29 2024, Defendant objected again, agreed to search for and produce the ICF (Ex. FRP No. 15 at 9), but did not produce it. Plaintiff requested the 2017 Gobbler ICF document again on Jan. 13 2025. Then, on Feb. 12 2025, Defendant responded that it could not find any documents related to Plaintiff's RFP No. 15 regarding the Gobbler ICF. (Ex. RFP Set 1, No. 15 at 8-9)… On May 27 2025, Apple reiterated its position that Apple "served its amended objections and responses on February 12, 2025 and stands on those objections and responses." (Ex. RFP Set 2, No. 64 at 8)… On August 4 2025, Plaintiff started the five-day meet and confer over spoliation concerns regarding the 2017 ICF and asked "did Apple spoiliate its own primary evidence?" (Aug. 4 2025). On August 7 2025, Defense Counsel responded "as we explained to you on July 17, Apple has already produced a User Study Informed Consent form specific to Gobbler. See APL-GAELG_00002096."… On August 8 2025, Plaintiff responded: "…The Gobbler ICF document was from 2017, I shared with Orrick copies of the email confirmation and document URL as far back as 2022…This ICF document was repeatedly cited by Apple as material evidence in its defense. I also have evidentiary

On Aug. 11 2025, the Plaintiff complained ""Apple was the party to request unilateral five-day deadlines and the court approved Apple's request. I re-sent you the documentation.. from 2017 with direct URLs to the document. Your comment below still implies you don't know if the Gobbler ICF exists, and now that you're not even looking for it specifically ("other ICFs")…its the primary basis of Apple's defense, yet Apple continues to act like it may not exist and has no knowledge of it. I will thus consider this the end of our extended meet/confer on this topic (five days per Apple's meet/confer rule, but really twenty months regarding this specific document)." Dkt. 240 at 5. She then filed a Motion to Compel on Aug. 12 2025. Id. Apple miraculously found the document on Aug. 18 2025 and produced it without the need for a Protective Order(Dkt. 241).

Apple produced the document on August 15, 2025 — three days before filing its opposition to the compel motion, and only after Plaintiff moved for court intervention. (Dkt. 270 at 1). Apple never produce the document under the Protective Order and it produced it because Plaintiff compelled it. Apple then appeared at the December 16, 2025 deposition and did not use the document at all. The Protective Order's entire stated justification — producing the Gobbler ICF — was never fulfilled under the Order, never required the Order, and was ultimately abandoned.

The record further demonstrates that Apple never used the Protective Order for purpose it stated to Judge Westmore, even when given every opportunity to do so. The Order was entered July 7, 2025. Apple's stated purpose was to produce the Gobbler ICF under it. Five weeks later, Apple still had not done so. On August 12, 2025, Plaintiff was forced to file a Motion to Compel production of the document Apple had described as the cornerstone of its termination defense. (Dkt. 240). Apple produced the 2017 Gobbler ICF on August 15, 2025 — only after Plaintiff moved to compel, and without invoking the Protective Order. (Dkt. 270 at 1). The production was not made under the Order Apple said it needed to make the production and it was made under compulsion. The Plaintiff asked for leave to file a Motion for Sanctions. (Dkt. 245).

The Court that entered the Protective Order — Judge Westmore — is the same Court that resolved Plaintiff's compel motion. In denying sanctions related to Apple's multi-year withholding, Judge Westmore found that because Apple ultimately produced the document, there was "no remaining discovery dispute" (Dkt. 270 at 1–2; aff'd Dkt. 272). The Court did not address the relationship between Apple's withholding

---

record of the existence of the document. I demand a response as to whether Apple is withholding it or Apple has lost the document. There is only one answer… On August 11 2025, Defense counsel responded "With respect to the Gobbler ICF, we are working to collect, review, and (as appropriate) produce additional documents related to other ICFs" Dkt. 240, Pl.'s Motion to Compel, Aug. 12 2025.

of the Gobbler ICF and its prior representations to that same Court that it needed a Protective Order specifically to produce that document, and continued withholding the document even after the Plaintiff was forced to enter the Protective Order expressly so Apple could produce that document.

What the complete record shows is that Apple obtained the Protective Order by representing it needed one to produce a document it then withheld until compelled, produced without the Order, and abandoned entirely at deposition. The Order's only actual use was silencing Plaintiff's testimony about Apple's requests to conduct invasive bodily studies on her — the same conduct described by Judge Chen as "invasive, oppressive, and humiliating" (Dkt. 73 at 7–8) and pled as the factual predicate of active claims in this lawsuit.

Then, Apple also refused do comply with the FRCP and Protective Order deadlines for making designations, meet and confer, motions to retain designation, signing and serving discovery documents, and deposition conduct – not to mention the variety of other federal and state laws Apple and their counsel violated through all of this. However, ultimately for this motion the issue before the court is Apple's violation of 26(g) and the requirement to sanction Apple for that violation.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court:

- Declare that Apple's December 16, 2025 blanket confidentiality designation was automatically waived under Protective Order § 6.3 no later than January 6, 2026, and that no valid confidentiality designation exists over any portion of Plaintiff's deposition transcript;
- Declare that Apple's February 4, 2026 unsigned, undated, unserved document is a legal nullity under Fed. R. Civ. P. 26(g)(2) and must be stricken;
- Declare that the Protective Order (Dkt. 235) does not apply to the information at issue in Apple's enforcement motions, as that information is excluded from the Order's scope under § 3;
- Dismiss Apple's motions, letters, and other filings based on these designations on the threshold ground that no valid designation exists to enforce;
- Find that Apple's counsel violated Fed. R. Civ. P. 26(g) by signing and filing enforcement papers certifying the validity of designations that were procedurally void, substantively inapplicable, and made for an improper purpose;
- Impose mandatory sanctions under Fed. R. Civ. P. 26(g)(3) against Apple and/or Apple's counsel, including an award of Plaintiff's reasonable expenses caused by the violation, including:

- (a) the cost of obtaining the certified deposition transcript;
- (b) the cost of drafting and filing Plaintiff's opposition to Apple's Dkt. 280 letter-motion (Dkt. 284);
- (c) the cost of drafting and filing Plaintiff's opposition to Apple's Dkt. 293 and 295 (Dkt. 297);
- (d) the cost of preparing and filing this Motion;
- (e) the cost of preparing Plaintiff's opposition to Apple's Motion to Enforce Protective Order (Dkt. 294); and
- (f) any other expenses this Court finds to have been caused by Apple's Rule 26(g) violation;

- Optionally or as concurrent action with the Plaintiff's pending Opposition filing: order Apple to withdraw all pending enforcement motions (Dkt. 293, 294, 295) premised on the void designations; and
- Grant such other and further relief as the Court deems just and proper.

## CONCLUSION

Apple obtained the Protective Order in this case by representing it needed a document production mechanism but it never used the Order for that purpose. Instead, its sole use has been to designate Plaintiff's testimony about her own body, her coworkers bodies, her lawsuit, and her protected activity as confidential, and to file signed enforcement proceedings demanding contempt, compelled deletion, and a gag order — proceedings expressly connected to the same employment dispute Apple said was the reason it needed the Order.

While seemingly absurd, this is the exact improper purpose and fiasco that Plaintiff predicted and warned the Court about before the Order was entered. The record also contains judicial statements that Apple's planned use of the Protective Order was not permissible. At the July 2, 2025 telephonic conference, after Plaintiff described Apple's plan to show the Gobbler ICF during the deposition and then designate that deposition testimony as confidential, Judge Westmore stated plainly: "That's not — that's not how the protective order is used." (July 2, 2025 Conf. Tr., Dkt. 230, at 7:12–13). Yet, Apple still pursued this line of censorship and obstruction.

At the December 16, 2025 deposition, Apple imposed a blanket designation covering nearly 240 pages of testimony and insisted it was authorized by the Protective Order and Rules to do so. When the Plaintiff objected, Apple claimed the Plaintiff was being uncooperative. Now Apple's enforcement motion

asks this Court to sanction the type of conduct that the Court had already identified as an improper use of the order before the deposition ever took place.

Apple's designation is procedurally void: the blanket designation lapsed under § 6.3's 21-day rule; the February 4 narrowing was unsigned, undated, and unserved in violation of Rule 26(g)(1); Plaintiff called the deficiency to Apple's attention; Apple refused to cure; and the document is a nullity under Rule 26(g)(2). Apple's enforcement papers then certified the validity of that nullity to this Court. That certification violates Rule 26(g) without substantial justification.

Sanctions under Rule 26(g)(3) are mandatory. The violation is documented, deliberate, and repeated. Plaintiff has been prejudiced by months of enforcement proceedings built on a document that was never valid. The Court should declare no valid designation exists, dismiss Apple's enforcement motions on that threshold ground (separate opposition to be filed), and impose sanctions sufficient to compensate Plaintiff for the expenses caused by Apple's conduct.

Respectfully submitted,



Ashley M. Gjovik, J.D.

Digitally signed by Ashley M. Gjovik, J.D.
Date: 2026.03.06 18:47:36 -08'00'

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 6 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBITS

**Exhibit A: Feb. 20 2026 Transcript**
- Concurrently filed attachment 1

**Exhibit B: July 2 2025 Transcript**
- Concurrently filed attachment 2

**Exhibit C: 2/4/2026-2/6/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit D: 2/18/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit E: Dec. 16 2025 Deposition Transcript Excerpt**
- Attached to concurrently filed Declaration

**Exhibit F –Apple' s March 4 Letter**
- Attached to concurrently filed Declaration

**Exhibit G – Pleading & Order Excerpts**
- Attached to concurrently filed Declaration

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR DECLARATORY RELIEF AND SANCTIONS UNDER FED. R. CIV. P. RULE 26(g)**

The Court, having considered Plaintiff's Motion for Declaratory Relief and Sanctions Under Fed. R. Civ. P. Rule 26(g), the supporting Declaration of Ashley M. Gjovik and exhibits attached thereto, the papers filed in connection with Apple's pending enforcement motions, and the full record in this case, hereby ORDERS as follows:

Apple's December 16, 2025 blanket confidentiality designation was a mass, indiscriminate designation prohibited by Protective Order § 5.1. Plaintiff objected on the record at the deposition on December 16, 2025. Apple failed to serve proper designations or file a motion to retain confidentiality within 21 days of that objection as required by Protective Order § 6.3.

Accordingly, Apple's blanket designation was automatically waived no later than January 6, 2026. No valid confidentiality designation existed over any portion of Plaintiff's deposition transcript after that date. Apple's February 4, 2026 document (as cited in their Letter at Dkt. 280) purporting to narrow its confidentiality designations is a legal nullity under Fed. R. Civ. P. 26(g)(2). The document was unsigned, undated, and not served on Plaintiff. Plaintiff called these deficiencies to Apple's counsel's attention specifically and repeatedly beginning Feb. 4, 2026 through Feb. 18 2026. Apple expressly refused to cure the deficiencies.

Regardless, the Protective Order (Dkt. 235) would not apply to the information at issue in Apple's documents and pending motions. The designated testimony concerns information in the public domain and information known to Plaintiff prior to and independent of discovery and is also part of the complaints and orders in this case going back to Dec. 2023, all of which is expressly excluded from the Order's coverage under Protective Order § 3. Apple's designations of that information are without effect.

Apple's counsel violated Fed. R. Civ. P. 26(g) by signing and filing enforcement papers at Dkt. 280, Dkt. 293, Dkt. 294, and Dkt. 295, each of which certified the validity of designations that were procedurally void under Rule 26(g)(2), substantively inapplicable under Protective Order § 3, and made for an improper purpose under Rule 26(g)(1)(B)(ii).

The Plaintiff repeatedly emailed the Defendant's counsel highlighting the procedural errors, the legal impact, and requesting for them to correct their defects and comply with the court's rules and orders, but the Defendants refused without explanation and would not engage with the Plaintiff's attempts to meet/confer. Thus, for all these reasons, the Defendant's violation was without substantial justification.

Pursuant to Fed. R. Civ. P. 26(g)(3), sanctions are hereby imposed against Apple Inc. and/or its counsel. Sanctions are mandatory upon a finding of violation without substantial justification. Apple Inc. and its counsel shall pay Plaintiff's reasonable expenses caused by the Rule 26(g) violation, including:

a. The cost of obtaining the certified deposition transcript;
b. The cost of obtaining a certified conference call transcript;
c. The cost of preparing and filing Plaintiff's opposition to Dkt. 280 (Dkt. 284);
d. The cost of preparing and filing Plaintiff's omnibus opposition at Dkt. 297;
e. The cost of preparing and filing this Motion and supporting papers;
.

Plaintiff shall submit a declaration itemizing her reasonable expenses within ______ days of the date of this Order. Apple shall have ______ days to file any objection to the amount. The Court will thereafter determine the total sanctions award.

IT IS SO ORDERED.
Dated: ___________________, 2026