Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
## Northern District of California

**Ashley M. Gjovik**,
*an individual*,

Plaintiff,

vs.

**Apple Inc.**,
*a corporation*,

Defendant.

**Case No. 3:23-CV-04597-EMC**

**Plaintiff's Declaration in Support of her Motion for Declaratory Relief & Sanctions under 26(g) Against Defendant Apple Inc.**

# DECLARATION OF ASHLEY M. GJOVIK IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 26(g)

I, Ashley M. Gjovik, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I. INTRODUCTION

1. I am the Plaintiff in this action, appearing in propria persona. I have personal knowledge of all facts stated herein. I make this Declaration in support of my Motion for Declaratory Relief and Sanctions Under Fed. R. Civ. P. Rule 26(g).

## II. THE DECEMBER 16, 2025 DEPOSITION

2. My deposition occurred on December 16, 2025. During the deposition, Apple's counsel Melinda S. Riechert declared a blanket confidentiality designation covering pages 66 through 305 of the transcript — the entire substantive portion — before the testimony in those pages had been given. I objected on the record at the time. A true and correct copy of the relevant deposition transcript pages is attached as Exhibit E.

3. During the deposition Apple stated they did not plan to request expedited production of the deposition transcript. (Exhibit E). Apple stated to me that the certified transcript of my deposition was delivered to Apple on January 7, 2026. Apple sent me nothing about their designations until Feb. 4 2026. A true and correct copy of this email is attached as Exhibit C.

## III. APPLE'S FEBRUARY 4, 2026 UNSIGNED, UNDATED, UNSERVED CHART

4. On February 4, 2026 at 4:22 PM, I emailed Apple's counsel notifying them that all confidentiality designations from the December 16, 2025 deposition had been automatically waived under the Protective Order's 21-day substantiation deadline, and that no valid designation existed. A true and correct copy of this email is attached as Exhibit C.

5. Ten minutes later, at 4:32 PM, Apple's counsel sent an email addressed to the court reporter — not to me — attaching a chart of narrowed confidentiality designations. I was copied on the email "for notice purposes" only. The chart was unsigned. It was undated. It was not addressed to me. No attorney signed the document. No certificate of service was provided. Apple's email expressly stated the document was prepared for the court reporter, not for me. A true and correct copy of this email and attachment is attached as Exhibit C.

6. At 4:39 PM on February 4, 2026, I replied to Apple directly demanding that it serve a signed, dated copy of its designations on me as the opposing party, as required by Fed. R. Civ. P. 26(g)(1) and

Rule 5. I explained that Apple's email was not addressed to me, that I had been included only as an observer, and that the document did not comply with the Protective Order or the Federal Rules. A true and correct copy of this email is attached as Exhibit C.

7. Apple responded at 6:53 PM citing Protective Order § 5.2(b) and directing me to follow Section 6 of the Protective Order if I wished to challenge designations. Apple did not address the signature, date, or service deficiencies I had identified. A true and correct copy is attached as Exhibit C.
8. At 8:27 PM, I again demanded that Apple serve me a signed and dated copy of its designations, noting that the document Apple had sent was by Apple's own admission drafted only for the court reporter and not for me. Apple responded: "We followed the procedures in the protective order and you should too." At 9:08 PM I repeated the demand. A true and correct copy of this correspondence is attached as Exhibit C.
9. On February 6, 2026 at 2:11 PM, I sent Apple a detailed written objection specifically identifying Apple's failures: (1) failure to sign; (2) failure to date; (3) failure to serve on me directly; (4) failure to answer questions about exhibits; (5) sending designations six weeks after the deadline; (6) use of blanket designations; (7) timing the designation immediately after I invoked my NLRA rights; and (8) applying the blanket designation to my protected statements. A true and correct copy is attached as Exhibit C.
10. Apple's response at 2:46 PM was: "Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do. Nothing else is required from Apple." Apple has never signed its designations, never dated them, and never served them on me directly. A true and correct copy is attached as Exhibit C.
11. Also on February 6, 2026 at 3:58 PM, Apple confirmed in writing: "All documents used in the deposition were produced either by Apple or by you. None was designated confidential." This confirmed that Apple had not designated a single produced document under the Protective Order — only deposition testimony. A true and correct copy is attached as Exhibit C.

## IV. APPLE'S ESCALATION TO ENFORCEMENT

12. On February 16, 2026, I filed NLRB Charge No. 32-CA-381277. On February 17, 2026, I filed a Notice of Pendency with this Court. (Dkt. 278).
13. On February 18, 2026, Apple emailed me demanding I remove posts from social media and the internet, claiming I was violating the Protective Order. Apple simultaneously emailed court staff

off-docket requesting an emergency conference without filing anything on the docket. A true and correct copy of Apple's February 18, 2026 email is attached as Exhibit D.

14. On February 19, 2026, Apple filed a five-page letter at Dkt. 280, signed by Melinda S. Riechert, Esq. (Bar No. 65504), requesting sanctions, contempt, a gag order, compelled deletion of online posts, and sealing. The letter asserted I was violating the Protective Order by publishing information Apple had designated as confidential.
15. On February 20, 2026, the Court held a telephonic conference (Dkt. 288).
16. On February 26, 2026, I attempted on multiple occasions to schedule a meet-and-confer with Apple's counsel as ordered by the Court. Apple's counsel refused in writing seven times, stating each time there was "nothing further to discuss." That same evening, at approximately 10:00 PM, Apple filed three motions: Motion to Seal (Dkt. 293), Motion to Enforce Protective Order (Dkt. 294), and Motion to Shorten Time (Dkt. 295). A true and correct copy of Apple's February 26, 2026 refusals to meet and confer is attached as Exhibit D.
17. On February 27, 2026, I filed an omnibus opposition to Apple's motions to seal and for an expedited schedule (Dkt. 297).

**V. APPLE'S MARCH 4, 2026 LETTER**

18. On March 4, 2026, Apple's counsel sent a letter purporting to finally respond to my designation challenges. The letter de-designated the substantial majority of Apple's prior designations — including all designations related to exercise studies, eye tracking, grip testing, yoga, swimming, and general hardware terminology — while retaining only designations involving [redacted], [redacted], [redacted], [redacted], and [redacted]. Apple provided no Rule 26(c) good cause for any retained designation. Apple's letter did not address — and has never addressed — the threshold deficiencies that are the basis of this Motion: the absence of a signature on the February 4 chart, the absence of a date, the failure to serve, and the automatic waiver of the blanket designation under § 6.3. A true and correct copy of Apple's March 4, 2026 letter and my response are attached as Exhibit F.

**VI. EXPENSES INCURRED**

19. I have incurred expenses as a direct result of Apple's conduct, including: the cost of obtaining certified transcripts; the cost of preparing and filing motions and opposition; including this motion and supporting papers, and delays on other urgent personal and legal deliverables.
20. I am prepared to submit a detailed accounting of these expenses upon request or as directed by the

Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,



**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March 6 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

Ashley M. Gjovik, J.D.

Digitally signed by Ashley M. Gjovik, J.D.
Date: 2026.03.06 18:24:14 -08'00'

## EXHIBITS

**Exhibit A: Feb. 20 2026 Transcript**
- Concurrently filed attachment 1

**Exhibit B: July 2 2025 Transcript**
- Concurrently filed attachment 2

**Exhibit C: 2/4/2026-2/6/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit D: 2/18/2026 Emails**
- Attached to concurrently filed Declaration

**Exhibit E: Dec. 16 2025 Deposition Transcript Excerpt**
- Attached to concurrently filed Declaration

**Exhibit F –Apple' s March 4 Letter**
- Attached to concurrently filed Declaration

# EXHIBITS A-B

# FILED AS ATTACHMENTS

# EXHIBIT C

# Re: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

From Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>

To Ashley Gjovik<ashleymgjovik@protonmail.com>

CC Mantoan, Kathryn G.<kmantoan@orrick.com>, Riechert, Melinda<mriechert@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>

Date Wednesday, February 4th, 2026 at 6:15 PM

***Attn: new NLRB charge***

Hello,

I'm removing Talty from this thread and I'm going to ask you one more time to meet/confer with me on this, because you have refused to meet/confer on this, you waited well past the 30-day deadline for substantiating your claims, and the document you sent tonight contains content that violates state and federal law -- including at least labor, whistleblower, consumer, privacy, medical, and professional ethics laws.

Certainly you had to expect that I would complain about Apple claiming my own menstruation, cervical mucus, and sexual activity are "Apple Confidential."

You also must have known that I would be further disgusted to see Apple claim that my complaints about Apple invading my, and my coworkers, privacy rights regarding [redacted], [redacted], and the [redacted] is also "Apple Confidential" so our complaints about privacy violations by Apple, and Apple's underlying conduct, are somehow secret.

You also know that in my lawsuit and some of the administrative proceedings, I cite these exact topics as protected disclosures, concrete harms/injuries, unfair business practices, and/or work conditions -- and I allege Apple's own conduct is unlawful, harmful, and requiring enforcement action including injunctive relief.

You have refused to even attempt to justify these confidentiality claims, disregarded and refused to comply with the exact process you insisted be put in place and where you had promised confidentiality disputes would be addressed, and instead you have now taken action to formalize and permanently record your client's illegal assertions.

Further, this deposition is about my employment at Apple, my concerns about work conditions and the rights of Apple employees generally, and its partially in response to my claims of unlawful labor practices -- which means that Apple's about to get a new NLRB charge filed against it, arising from your document today.

While NLRB has resisted taking action that could interfere with standard court procedures in this case, here Apple has chosen to refuse to engage with standard court procedures, cut off my access to standard procedures, and is literally claiming in an official legal document that Apple thinks it has some sort of vested business interest and secrecy claim to its employees... [redacted].

So even an NLRB run by Apple's own lawyer will have a hard time dismissing this one -- unless, maybe if you come to the table and actually participate in this process in good faith.

I stress again, you're not even attempting to offer some nonsense, vague justification for these claims -- you're just refusing to engage in the process completely while concurrently threatening to take unjustified actions to further invade my privacy, interfere with my exercise of my privacy rights and right to bodily autonomy, and to implicitly threaten other employees to not engage in the same protected activity that I did including reporting retaliation and harassment by Apple. That sounds illegal!

So let me know if we do a video call or phone call or something where we can actually at least pretend to meet/confer about this -- or if you're just going sticking to your current path of claiming that Apple has intellectual property rights over their worker's [redacted] -- because that's where we're at tonight and its extremely disturbing.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 4:39 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Apple counsel,
>
> I sent you an email about this a few moments ago (re-adding below) and instead of replying to me, you sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case.
>
> You need to send **me** your claims and then we are to meet/confer about those claims.
>
> Talty Ho is not the Magistrate Judge in our case and will not be deciding the validity of claims.
>
> Once we agree to the claims, then they should be reflected in the transcript -- and you were supposed to do this with me over a month ago.
>
> I ask that you send me your claims to discuss -- as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this.
>
> —
>
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 4th, 2026 at 4:32 PM, Mantoan, Kathryn G. <kmantoan@orrick.com> wrote:

Talty CR Production Team:

I write regarding the deposition transcript we received on 1/7/2026 in this matter.

Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text) for which confidentiality is being asserted.

Plaintiff is copied on this email for notice purposes.

Thank you,

Katie

**Kathryn G. Mantoan**

Attorney

Pronouns: she / her / hers

Orrick

San Francisco | Portland

T +1-415-773-5887
M +1-415-218-4865
T +1-503-943-4870
kmantoan@orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Wednesday, February 4th, 2026 at 4:22 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I'm adding Apple to this thread.

Apple's counsel,

We need to complete our review of the transcript, submit any corrections, and ensure that we don't then need more corrections based on the other party's corrections.

We also need to finalize the Confidentiality claims and ensure the record accurately represents those claims including for any exhibits. I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you -- and nothing to actually narrow, define, and substantiate any of your Confidentiality claims.

The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims.

Under the Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now.

However, there's probably at least a few statements/terms that are plausibly Confidential, I am still bound by the lawful/legitimate terms within the NDAs I consented to and signed, and I feel it would be proper to allow Apple to still substantiate the things that may actually be Confidential.

That said, you're already overdue and I need a timeline from you as to when you will be done and to ensure it can still be reflected in this deposition transcript.

I also ask if you're submitting any requests for corrections to this records, and if so, to please share with me what you ask for.

I also need to submit my request for corrections so please let me know if you'd like any process for that other then being cc'd or receiving a copy of what I submit to the Talty team.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

---

**3.90 KB** 2 embedded images

# RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

| | |
|---|---|
| From | Riechert, Melinda <mriechert@orrick.com> |
| To | Ashley Gjovik<ashleymgjovik@protonmail.com> |
| CC | Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com> |
| Date | Wednesday, February 4th, 2026 at 7:54 PM |

Ashley

Following receipt of the transcript, we significantly reduced the testimony we want to mark as confidential. Please review it. If you disagree with the designations please follow the provisions in the protective order.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

[EXTERNAL]

Hello,

Thanks for the email actually addressed to me and acknowledging my existence.

I already challenged all designations and I've been waiting for your response. If you remember my complaint about the blanket designation was a complaint about unfair labor practices and then I also said I want justifications under your protective order process for any and call claims to confidentiality.

This matter includes and revolves around claims of confidentiality -- substantively and procedurally --- so just as any claim I have to protected disclosures will be challenged by you at every angle, any claim Apple has about confidentiality regarding things I or my coworkers say/did will also be challenged by me at every angle. This is because this litigation requires us to sort out what is actually protected and what is actually confidential.

I already asked you to justify any/all of your claims of confidentiality regarding statements I made during my own deposition, and I'm still waiting for your justifications.

It appears that maybe 80% of your claims are just code words so that's fairly quick for you to write something that would apply to all of them and then you can spend most of your time detailing the responses about the claims like why Apple thinks it has a business interest and some sort of censorship authority over me talking about my own cervical mucus. You know, its mucus that is in and around my cervix, that my body makes naturally, and that's part of my physiology and the only reason I mentioned it at all was because me and at least one of my Apple coworkers were so upset that Apple was monitoring our [redacted], and asking us to do unpaid labor to enable them to harvest our data about our [redacted], that we talked to DER SPEIGEL about it. Remember?

So, yes, I did challenge all claims, and I'm waiting for the justifications from Apple but I'm also outright rejecting the claims that clearly violate federal statutes and/or state constitutional rights because a procedural stipulation cannot void vested and inalienable rights, and when I objected to Apple's protective order demand, one of the exact things I cited in my opposition was a concern that Apple would try to make confidentiality claims about clearly protected facts/statements/information and in doing so Apple would be trying to use the stipulation as cover to violate the same laws it violated that are the basis of the lawsuit -- which I would say is exactly what is occurring.

Thanks.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 6:53 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley
>
> We designated select testimony “CONFIDENTIAL” at your December 16, 2025 deposition pursuant to Section 5.2(b) of the Protective Order governing this case, and subsequently substantially narrowed those designations following our review of the transcript received on January 7, 2026, within the timeframe specified in the Protective Order.
>
> Please follow Section 6 of the Protective Order – which should not involve the Talty team – should you wish to challenge any of Apple’s designations.
>
> **Melinda Riechert**
>
> Partner
>
> Orrick
>
> Silicon Valley
>
> T 650/614-7423
>
> M 650 759 1929
>
> mriechert@orrick.com

# RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

From Ashley Gjovik <ashleymgjovik@protonmail.com>

To Riechert, Melinda<mriechert@orrick.com>

CC Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Perry, Jessica R.<jperry@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Booms, Ryan<rbooms@orrick.com>

Date Friday, February 6th, 2026 at 3:10 PM

Hello counselor,

During the deposition you provided a number of exhibits you had not previously produced (I noted this expressly on the transcript itself for one of them) and you still have not produced those documents outside the deposition, and I don't think sending them via chat during a deposition is production either -- so there is no prior designation for those documents.

In fact, this deposition was the very first time you sent any documents to me designated confidential. So it appears if anything that you changed multiple prior designations from not-confidential to now make claim they are confidential when they were not prior, but your only documentation about this is a stamp on the new record, that wasnt even produced -- just sent via chat, and nothing is noted in your confidentiality claim document.

As noted prior, the Protective Order said that confidentiality designations were due at the deposition itself -- so you should have made your designations for any actual confidential claim during the deposition itself -- not as a blanket claim. You should have done the per item targeted claims at that time -- your delay waiting for the transcript was only because you violated the order's instructions during the deposition.

Also, as I said, I will follow the Orders process for challenging when you actually serve me your designations, in a doc that's signed and dated, with complete information for your claims (like including any exhibits you're making claims about).

Your response still refuses to actually directly send me a document with your claims thats signed and dated -- the only thing you sent was to a third party and you expressly said it wasn't sent to me -- still.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Friday, February 6th, 2026 at 2:46 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

> Ashley,

Apple followed the terms of the protective order and the process we agreed to on the record for narrowing the portions of the transcript Apple initially designated as confidential. Apple declines your request that it do more than it is required to do.

The Protective Order requires Apple to designate portions of the transcript as confidential on the record. *See* Dkt. No. 235, ¶ 5.2(b). Apple did so.

During the deposition I also told you that Apple would be willing to review the transcript upon receipt to narrow its confidentiality designations and you agreed to that process and thanked me. *See* Dep. Tr. 141:17-142:8; *see also* 343:14-344:8 (you confirm the parties will work through the confidentiality issues after receipt of the transcript). A party has thirty days after receiving the transcript to make or narrow confidentiality designations because the transcript is not final until the witness's time for correcting the transcript has expired. Here, Apple did not receive the transcript until January 7, 2026. Before then, it was impossible to narrow the confidentiality designations because Apple did not have a copy of the transcript to review. Per our agreement on the record, Apple reviewed the transcript and substantially narrowed its designations from the portion designated confidential on the record. Apple provided those designations to the court reporter and you on February 4, 2026, two days before your deadline to make corrections to the transcript. Nothing else is required from Apple.

As to exhibits marked at the deposition, they retain the same designation as when they were produced. We have not modified any prior designations.

If you want to challenge the remaining confidential designations that Apple has made, please follow the process set forth in paragraph 6.2 of the Protective Order by identifying the specific designations you are challenging and "explain[ing] the basis for [your] belief that the confidentiality designation was not proper." Apple will then review your challenge(s) and respond.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

**[EXTERNAL]**

You haven't responded so just food for thought here but you could make your client sign it. I assume their legal HR team are the ones behind these truly cutting edge and innovative designations anyways so maybe make them be the ones to put their names on it. But someone does need to sign it.

If I don't hear back the objections will treat all exhibits marked as confidential as Apple saying the entire document is confidential even if it includes protected disclosures, protected activity, or evidence of misconduct by your client and I will respond accordingly.

I will also have specific objections to Apple & its counsel's outright refusal to 1) sign or 2) date the document or 3) serve it to me directly or 4) answer my questions about exhibits and 5) send it six weeks after the deadline following the 6) use of blanket designations  w/ duration based blank check confidentiality claims 7) immediately following me exercising my labor rights under the NLRA and 8) them applying that blanket designation to my protected statements and 9) letting it marinate as an illegal gag order for six weeks before finally narrowing it at all.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 9:08 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello,
>
> The order said you had to finalize your designations by the end of the depo and you did not do that -- instead you waited six weeks. You also still haven't served me anything signed/dated with your designations so you're not done here.
>
> I'm asking you again to send me a signed/dated version of your designations since you're sending them after the fact, and already said it wasnt even a document for me originally.
>
> Once you do that, I will send you a detailed challenge, as I noted below already.
>
> I also asked you to confirm regarding the designations for exhibits and you didn't respond to my question so please respond to my question, either in your signed/dated notice you're about to send me or at least in email.
>
> Thanks.
>
> —
>
> **Ashley M. Gjøvik**
>
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 4th, 2026 at 8:33 PM, Riechert, Melinda <mriechert@orrick.com> wrote:
>
>> Ashley

We followed the procedures in the protective order and you should too.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com

**[EXTERNAL]**

Hello,

I do appreciate you revoking the hours-long blanket claims of confidentiality, so thank you for that; however you were legally required to do that anyways and it was due like six weeks ago, hence my inherent frustration about this generally right now.

I'm going to translate your emails to mean that the document you sent to Talty is now being repurposed as your service to me of your confidentiality claims -- however the only document you've sent is not signed or

dated; nor does it provide any explanation, standard, or reasoning for the designations claimed.

If Apple's not going to provide any additional information about its reason for designations beyond whats in the document you admittedly drafted only for the contractor and not even for me, and you want to repurpose that document for party meet/confer, then I'd ask you actually serve (email) me a signed and dated copy with some lawyer actually signing it with their name.

If you had done this during the depo as the protective order required, then the depo transcript would have Melinda named as the person making the designations-- but here, there's no names, its a mystery -- which is a problem for sanctions or professional ethics complaints. (If intentional on your part, then yes, I would also be concerned about it if i were you too, since you're claiming some sort of IP rights arising from a female employee's [redacted] and [redacted], which is, you know, very very bad).

Once you actually serve me a signed document as your official claim of designations then yes, I can respond with formal, detailed challenges to the already challenged claims. If you can provide any further detail about the basis for your claims, ask Ive asked, it may reduce what I have to challenge, but at the very least the document needs a name, sig, and date

Please also confirm if that document includes your confidentiality claims on the documents you used as exhibits or if you are continuing to claim that all of the exhibits currently marked confidential and being designated as entirely confidentiality with no narrowing of the designated content at issue.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 6:53 PM, Riechert, Melinda <mriechert@orrick.com> wrote:

Ashley

We designated select testimony "CONFIDENTIAL" at your December 16, 2025 deposition pursuant to Section 5.2(b) of the Protective Order governing this case, and subsequently substantially narrowed those designations following our review of the transcript received on January 7, 2026, within the timeframe specified in the Protective Order.

Please follow Section 6 of the Protective Order – which should not involve the Talty team – should you wish to challenge any of Apple's designations.

**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423
M 650 759 1929
mriechert@orrick.com

[EXTERNAL]

Apple counsel,

I sent you an email about this a few moments ago (re-adding below) and instead of replying to me, you sent your own email not addressed to me, ccing me as an observer, and you are asserting a process that does not comply with the Protective Order we signed for Discovery. That means you are in violation of that Order and refusing to comply with the process you insisted on for this case.

You need to send **me** your claims and then we are to meet/confer about those claims.

Talty Ho is not the Magistrate Judge in our case and will not be deciding the validity of claims.

Once we agree to the claims, then they should be reflected in the transcript -- and you were supposed to do this with me over a month ago.

I ask that you send me your claims to discuss -- as of now you have expressly excluded me from your claims and are attempting to formalize your claims without my input, despite my direct request to you to meet/confer about exactly this.

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 4th, 2026 at 4:32 PM, Mantoan, Kathryn G. <kmantoan@orrick.com> wrote:

> Talty CR Production Team:
>
> I write regarding the deposition transcript we received on 1/7/2026 in this matter.
>
> Pursuant to the operative Protective Order, we have reviewed the transcript and are finalizing our confidentiality designations. Attached is a chart identifying the specific portions (with citations and text)

for which confidentiality is being asserted.

Plaintiff is copied on this email for notice purposes.

Thank you,

Katie

**Kathryn G. Mantoan**

Attorney

Pronouns: she / her / hers

Orrick

San Francisco | Portland

T +1-415-773-5887
M +1-415-218-4865
T +1-503-943-4870
kmantoan@orrick.com

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

On Wednesday, February 4th, 2026 at 4:22 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

Hello,

I'm adding Apple to this thread.

Apple's counsel,

We need to complete our review of the transcript, submit any corrections, and ensure that we don't then need more corrections based on the other party's corrections.

We also need to finalize the Confidentiality claims and ensure the record accurately represents those claims including for any exhibits. I asked you for updates on your Confidentiality claims and you said you were working on it but I have yet to see any updates from you -- and nothing to actually narrow, define, and substantiate any of your Confidentiality claims.

The deposition was nearly two months ago and during the deposition I told you to substantiate any Confidentiality claims and that I was not agreeing to any blanket Confidentiality claims.

Under the Protective Order you have a limited amount of time to substantiate your claims and if you do not, they are waived. Under that order, for this deposition, all of your Confidentiality claims would be waived by now.

However, there's probably at least a few statements/terms that are plausibly Confidential, I am still bound by the lawful/legitimate terms within the NDAs I consented to and signed, and I feel it would be proper to allow Apple to still substantiate the things that may actually be Confidential.

That said, you're already overdue and I need a timeline from you as to when you will be done and to ensure it can still be reflected in this deposition transcript.

I also ask if you're submitting any requests for corrections to this records, and if so, to please share with me what you ask for.

I also need to submit my request for corrections so please let me know if you'd like any process for that other then being cc'd or receiving a copy of what I submit to the Talty team.

-Ashley

—

**Ashley M. Gjøvik**

**BS, JD, PMP**

Sent with Proton Mail secure email.

---

**From:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Sent:** Wednesday, February 4, 2026 4:40 PM
**To:** Mantoan, Kathryn G. <kmantoan@orrick.com>
**Cc:** production@taltys.com; Riechert, Melinda <mriechert@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>; Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Subject:** Re: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Wednesday, February 4, 2026 8:28 PM
**To:** Riechert, Melinda <mriechert@orrick.com>
**Cc:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**From:** Ashley M. Gjovik (Legal Matters) <legal@ashleygjovik.com>
**Sent:** Friday, February 6, 2026 12:11 PM
**To:** Ashley M. Gjøvik <ashleymgjovik@protonmail.com>
**Cc:** Riechert, Melinda <mriechert@orrick.com>; Mantoan, Kathryn G. <kmantoan@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Horton, Nicholas J. <nhorton@orrick.com>; Booms, Ryan <rbooms@orrick.com>
**Subject:** RE: (Ashley Gjovik v. Apple, Inc.)(126432) – Deposition Transcript Designations

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**3.99 KB** 3 embedded images

# EXHIBIT D

# Re: URGENT

From Ashley Gjovik <ashleymgjovik@protonmail.com>

To Riechert, Melinda<mriechert@orrick.com>

CC Ashley M. Gjovik (Legal Matters)<legal@ashleygjovik.com>, Perry, Jessica R.<jperry@orrick.com>, Mantoan, Kathryn G.<kmantoan@orrick.com>, Horton, Nicholas J.<nhorton@orrick.com>, Weaver, Nicholas<nweaver@orrick.com>, Russell, Zoe<zrussell@orrick.com>, Booms, Ryan<rbooms@orrick.com>, Stolzenburg, Mark L.<mark.stolzenburg@morganlewis.com>, Kelcey Phillips<kelcey.phillips@morganlewis.com>, Mahoney, Brian<brian.mahoney@morganlewis.com>, harry.johnson<harry.johnson@morganlewis.com>

Date Wednesday, February 18th, 2026 at 1:07 PM

Hello,

I'm also attaching my "objections" to your excessive confidentiality designations. Since you refused to send designations in a document I could easily respond to (in addition to refusing to date it, sign it, or send it to me directly) I converted it to an excel and put my responds there.

I also object that you never made designations if you never actually put them on the record or served them to me, or signed them, or dated them. Similarly there's no basis for a blanket gag order under that protective order which expressly prohibits exactly that, so Apple's actually never made any "designations" but instead has only issued unlawful work rules, threats, and coercive statements -- in addition to violating many other laws and policies and my constitutional rights.

The short story is none of your designations, even if they are designations, which they are not, are confidential and most of them are unlawful restrictions on speech, in addition to your 7-week long blanket prohibition on hours of speech which was especially egregious and illegal.

—
**Ashley M. Gjøvik**
**BS, JD, PMP**

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 12:26 PM, Ashley M. Gjøvik <ashleymgjovik@protonmail.com> wrote:

> Hello agents of the Employer and Charged Party, Apple Inc,
>
> Please provide me additional information about your threats, coercive statements, and unlawful work rules you are making in your email to me today, so I can include those details in the subsequent NLRB charge I now need to file today against Apple, as I previously noted in the Northern District of California filing yesterday that I would file against Apple if Apple was to proceed to do exactly what they are doing right now.
>
> You were already served with a copy of that NLRB charge, attachments, and this warning yesterday, and so this email is clearly retaliation for that charge ((8)(a)(4)) in addition to new 8(a)(1) violations.
>
> Thanks,
> -Ashley
>
> —
> **Ashley M. Gjøvik**
> **BS, JD, PMP**
>
> Sent with Proton Mail secure email.
>
> On Wednesday, February 18th, 2026 at 10:26 AM, Riechert, Melinda <mriechert@orrick.com> wrote:
>
>> Ashley

It has come to our attention that in violation of the protective order entered in this case and your ongoing confidentiality obligations, you have posted on X and the Internet confidential information describing Apple studies that Apple designated as confidential. Please take these down immediately and commit you will not do so going forward.


**Melinda Riechert**

Partner

Orrick

Silicon Valley

T 650/614-7423

M 650 759 1929

mriechert@orrick.com


.


**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.


---

**932.75 KB** 2 files attached 3 embedded images

Ashley Gjovik v. Apple Inc. - 126432 - Deposition Transcript Confidentiality Designations.xlsx 15.29 KB

CHG.32-CA-381277.Initial Charge.pdf 913.46 KB

# EXHIBIT E

violations, the first bullet?

Q. Correct.

A. Can I read it just so it's on the record of what you're asking?

Q. Absolutely.

A. So the policy violations -- the policy says, "Violating confidential, proprietary, and trade secret information obligations (including those stated in Apple's intellectual property agreement)," and that is under "Conduct warranting immediate termination. Conduct that may warrant immediate termination of employment includes, but is not limited to," and then the bullet you just said.

So I can confirm that the document that we're reviewing, that is the text as I just read, is on that document and that I had a copy of that document.

Q. And you understood it?

A. No. I just said I don't understand this document.

Q. Okay. Didn't understand that part of the document?

A. I don't understand most of the document. I was still going of listing all the words I don't understand.

Q. Okay. I'm asking you now whether you understood that conduct warranting immediate termination could include violating confidential, proprietary, and trade secret information obligations including those stated in Apple's intellectual property agreement?

A. Asked and answered. I already said I don't understand that.

Q. You did not understand that that was a policy violation?

A. Well, I understand that it's on the policy as written, as stated, but I don't understand what it means.

Q. You don't understand what it means to violate your confidential, proprietary, and trade secret information obligations? Is that what you're saying?

A. Asked and answered. I already said I don't. And the objections of NLRB already said that was unlawful that Apple would --

(Reporter admonition.)

THE WITNESS: NLRB said those terms were unlawful and that Apple could no longer enforce them and had to withdraw them from their policies.

MS. RIECHERT: I'm going to designate the

next section of this deposition as confidential pursuant to the protective order.

BY MS. RIECHERT:

Q. Any information that -- testimony you give until I say it's not confidential pursuant to the protective order is going to be covered by the protective order. Do you understand that?

A. No. How can you claim that my statements are confidential if what I said is not confidential?

Q. Because under the protective order, I have the right to designate deposition testimony as confidential. If you disagree with that, then you have the right, under the protective order, to follow the procedures in the protective order.

A. Yeah, but I believe you -- sorry. Go ahead.

Q. But meanwhile, I'm designating this as confidential pursuant to the protective order. And if you disagree, then follow the procedures in the protective order.

A. Yes. But, Melinda, I don't think you can just say -- you don't know what I'm going to say and if I say stuff that's clearly not confidential, you just can't proactively say it's confidential.

Q. I have the right to do that under the protective order, and you have the right to

challenge it if you disagree.

A. Well, I'm filing objections immediately then that you can't just proactively say that something is confidential when I'm actively talking about the NLRA saying that Apple is misusing confidentiality terms and the stuff to hide protected statements and then you're saying whatever I say next is under a confidentiality order without knowing what I'm going to say. That's not right, Melinda. I object.

MS. RIECHERT: All right. So why don't we take a break before I ask my question?

If the videographer would bring in the tab Number 2-04 into the chat.

We're going to take a five-minute break, and I am designating the following information as confidential pursuant to the protective order.

Let's take a five-minute break.

THE WITNESS: Okay.

THE VIDEOGRAPHER: This marks the end of Media Number 1. We are now going off the record. The time is 10:19 a.m.

(Off the record: 10:19 a.m. to 10:29 a.m.)

THE VIDEOGRAPHER: We are now on the record. The time is 10:29 Pacific Standard Time. This marks the beginning of Media Number 2 in the deposition of

Ashley Gjovik on December 16, 2025.

Please continue.

(DEPOSITION EXHIBIT 7 WAS MARKED.)

MS. RIECHERT: The following portion of the deposition is designated as confidential pursuant to the protective order.

(THE FOLLOWING PAGES, 66 TO 305, WERE DESIGNATED CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER.)

-oOo-

giving information that I'm not asking. So please --

A. We're at seven hours. We're out of time actually.

Q. Yes. Do you want to continue --

A. I'm very tired. It's been a very long deposition.

Q. Okay. So we can meet and confer after this. I'm definitely not done. I believe that you have not been responsive to my questions and that's added additional time. But I'm happy to meet and confer with you afterwards about providing additional time for the deposition. And if not, we can take it to the magistrate.

A. Or you can send interrogatories for the rest, which is a better way for me to communicate anyways.

MS. RIECHERT: Okay. So we're going to suspend the deposition at that time -- at this time, and we will resume a meet-and-confer discussion afterwards about getting additional time.

THE WITNESS: I'm not agreeing to additional time. We're not resuming. We're ending now. We can talk later about your request and discuss that.

Can you -- what's the process for me

requesting a copy of the transcript of the deposition?

THE REPORTER: Yes. I was going to ask you, would you like to order a copy of the transcript -- pay for an order?

MS. RIECHERT: You have to pay for it.

THE REPORTER: Yes, you have to pay for it.

THE WITNESS: I need a copy, yes.

MS. RIECHERT: So if you pay -- you have to pay for it. If you want an expedited copy, you have to pay a lot more. So it's generally -- what? -- a couple of thousand dollars for the transcript and then probably twice that if you want it expedited.

THE WITNESS: For a lawsuit like this I'm required to have a copy of my own transcript, so I will be purchasing it. I probably cannot afford it expedited. We're going to have to work through the confidentiality issues. If that's a risk to you -- of delaying for me to get the normal one, Melinda --

(Reporter admonition.)

THE WITNESS: Oh, sorry. We're still on the record?

THE REPORTER: Yes, we're still on the record.

THE WITNESS: Oh, if it's a risk for her to

delay if she wants to work through the confidentiality terms she talked about that we need to collaborate on, then I'm going to ask her to share a copy of hers if she gets it earlier if I am waiting longer. If me not having mine sooner would somehow delay that process.

MS. RIECHERT: I don't need an expedited copy. Just regular, please.

THE REPORTER: Thank you.

THE VIDEOGRAPHER: I'll take us off.

This concludes today's video record of deposition of Ashley Gjovik. The original media of this deposition will remain in the custody of Talty Court Reporters, Inc., located in San Jose, California.

We are now going off the record. The time is 5:53 p.m.

(End time: 5:53 p.m.)

# EXHIBIT F

**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025-1015

+1 650 614 7400

**orrick.com**

**Melinda Riechert**

**E** mriechert@orrick.com
**D** +1 650 614 7423
**F** +1 650 614 7401

March 4, 2026

***Via Email***

Ashley Gjovik
ashleymgjovik@protonmail.com

**Re: *Ashley Gjovik v. Apple Inc.***
**N.D. Cal. Case No. 23-cv-4597-EMC**
**Meet and Confer regarding Apple's Confidentiality Designations**

Dear Ashley:

This letter responds to your challenges to Apple's confidentiality designations related to your December 16, 2025 deposition, which you provided in an Excel spreadsheet on February 18, 2026.[1]

For many of Apple's designations, you indicated you do not believe the designated material is Confidential but that you do not object to Apple redacting this information from the public record. Apple does not understand you to have made a challenge to any of these designations within the meaning of the Protective Order.

We address below the designations you have challenged.

1. **Internal Code Names**

While you have generally not objected to Apple redacting testimony related to code names, there are a few designations that appear to be in issue.

First, you have asked Apple to de-designate certain words contained within the codenames because you contend that, on their own, those words are not Confidential. While Apple disagrees with your premise, in the spirit of cooperation, Apple will agree to de-designate the following words contained in the parentheses:

**Willing to de-designate**: 197:15 ("HWE"), 200:24 ("Hardware"), 203:4 ("A")

Second, you contend that the following designations of a particular letter are not Confidential:

[1] Although neither your February 18, 2026 email nor the spreadsheet you attached recited that any challenges to confidentiality were being made in accordance with Paragraph 6.2 of the Protective Order (as that paragraph requires; *see* Dkt. No. 235 ¶ 6.2), we are treating that email and attachment from you as having been intended to initiate a meet and confer under that paragraph.

**Retains Confidential designation**: 197:18, 197:21

Apple will not de-designate this challenged testimony. In context, this testimony relates to the meaning of the letter within Apple's internal code names for product development and should be treated as Confidential consistent with the other code name designations. Therefore, Apple continues to believe these designations are appropriate and should be treated consistent with the other designations related to Apple's code.

2. **Industry Terminology**

You contend the certain designations refer to standard industry terms that should not be redacted. While Apple disagrees with your position, in the spirit of cooperation, Apple will agree to de-designate this material.

**Willing to de-designate**: 138:3, 138:4, 138:5, 138:7, 209:4, 209:6, i25 (371)

3. **Apple's Internal Studies**

You contend the following designations relating to your testimony purporting to characterize certain internal Apple studies cannot be considered Confidential based on a variety of objections, including because some of this testimony relates to what you claim is protected concerted activity under the National Labor Relations Act ("NLRA"):

> 161:6-9, 161:21-22, 162:6-8, 163:16, 164:10-11, 164:14, 164:15-16, 164:25, 165:13-24, 166:1-2, 166:4, 166:14, 167:17, 168:17, 168:19, 169:1, 169:10, 169:23, 169:25, 170:9, 176:16, 205:15-16, 205:17, 208:1, 208:17-18, 209:13-14, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i12 (358), i20 (366), i22 (368), i28 (374), i31 (377) ("swimming"), i34 (380), i35 (381) ("yoga")

Apple disagrees with your contention as well as your suggestion that the NLRA dictates whether and to what extent the federal court overseeing your wrongful termination suit against Apple can properly order that discovery material from that case be treated as Confidential. As an initial matter, the NLRB has already determined that your revealing "confidential product development information about [an Apple] study" is not "protected activity" under the NLRA. Sept. 25, 2025 Order Withdrawing Certain Allegations of Consolidated Complaint, Order Partially Dismissing Charge 32-CA-282142, Order Dismissing Charge 32-CA-283161 and Notice of Right of Appeal (Sept. 25, 2025) at 2. And in any event, Apple disputes any suggestion that the NLRA somehow overrides or voids basic procedural rules that govern litigation in federal court, including those related to protective orders. *See, e.g., Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 499, 515 (2018); Fed. R. Civ. P. 26(c) (protective order may appropriately "requir[e] that … confidential research, development, or commercial information not be revealed or be revealed only in a specified way").

You also contend that this testimony is protected under "a variety of laws and public policy." This vague catch-all is not a meaningful attempt to meet and confer. Assuming the "laws and public policy"

orrick

you are referencing relate to what you assert are your privacy rights, you are again incorrect. Apple did not ask any questions about your personal physiology or any private matter. Nor did your responses relate to your personal physiology or any other private matter. Instead, the testimony related to internal Apple studies, the majority of which you chose not to participate in. Whether you disagree with Apple's decision to conduct those studies, or how Apple conducted them, is irrelevant to determining about whether the subject matter and processes of those studies are properly designated as Confidential under the Protective Order.

Some of these designations you object to on the basis that they are public brand names; however, that ignores that the context of the discussion relates to the content, methods, or processes of internal Apple product-related studies.

However, in the spirit of cooperation Apple is willing to compromise and agree to de-designate certain of the citations referenced above—namely, all those that are not included in the following list:

> **Retains Confidential designation**: 164:10-11, 164:14, 164:15-16, 164:25, 165:13-23 (de-designating only ", and I found that very disturbing."), 166:1-2, 166:4, 166:14, 167:17, 168:19, 169:1, 169:10, 169:25, 170:9, 176:16, 205:17, 225:25, 226:1, 226:3, 226:4, 236:14-15, i5 (351), i6 (352), i8 (354), i20 (366), i22 (368), i28 (374)

Apple will not de-designate these challenged portions, which reflect your characterization of the content, methods, and processes of certain internal Apple product-related studies.

## II. CONCLUSION

Please advise if you agree to the narrowed list of designations set forth in this letter, or if you continue to challenge any or all of Apple's designations (and, if so, which ones).

To be clear, Apple's designations do not prohibit you from relying upon this testimony in support of your case. Indeed, Apple's confidentiality designations and the Protective Order entered by the Court simply require certain procedural safeguards to be utilized (*e.g.*, a motion to seal) to ensure that Confidential information is not publicly disclosed.

Please let us know if you agree with the above compromises. We look forward to your response and hope to resolve these issues without the need for further motion practice. In the interim, the Protective Order requires you to treat the material Apple has designated Confidential as such, until such time as the Court rules otherwise. You must comply with the Court's Order while this process plays out.

Very truly yours,

Melinda Riechert

Melinda Riechert

Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# PLAINTIFF'S RESPONSE TO APPLE' S MARCH 4 2026 LETTER

*Ashley Gjovik v. Apple Inc.,* N.D. Cal. Case No. 23-cv-4597-EMC

## I. INTRODUCTION

1. On Dec. 16 2025, during the Defendant Apple's deposition of the Plaintiff, Apple declared a blanket "confidentiality" designation that covered hours of the deposition, which directly violated the Protective Order's terms prohibiting mass designations and requiring all designations be targeted to specific information (not indiscriminate) and be made prior to the end of a deposition. The Plaintiff objected to Apple and demanded Apple narrow its designation. Apple then took fifty days to narrow its designations. Even then, Apple has refused to serve, date, or sign its destinations. Apple also failed to justify any of its designations other than stamping the Plaintiff's own speech as "confidential."

2. The Plaintiff sent Apple objections on Feb. 4 2026 regarding Apple's designations and specific to her complaints about Apple invading employee privacy regarding sexual activity, reproductive anatomy, and genital secretions – warning Apple she was planning on filing a new NLRB charge if they did not drop those designations. Apple still has not addressed or responded to the Feb. 4 2026 email.

3. On March 4 2026, Apple sent a letter that purports to respond to all of Plaintiff's challenges to Apple's confidentiality designations; however, this letter does not respond to the Plaintiff's objections during the deposition on Dec. 16 2025; detailed meet/confer emails starting Feb. 4 2026; or in the legal filings/charges. Instead, Apple acts as if the Plaintiff made no complaints at all until a Feb. 18 2026 Excel spreadsheet, responds only to some of the text in parts of the spreadsheet, and ignores all other communications as if they were waived.

4. The Plaintiff's Excel spreadsheet was converted from Apple's unsigned, undated, unserved PDF that listed designations in a table format but frequently grouped multiple terms into each line. Even then the table has over 100 lines of designation (~160 if combined terms are separated)– and is exclusively the Plaintiff's own speech. In the March 4 2026 letter, Apple de-designated around 23 lines and failed to respond at all to 53 lines. Apple retained ~29 lines but failed to provide any legal justification for its designations – instead indicating Apple's own policies and practices are an independent justification.

5. The deposition was Dec. 16 2025 and as of March 5. 2026 Apple has failed to respond to all threshold objections; still refuses to serve, date, or sign its designations; has failed to respond to objections for more than half of its supposedly pending designations; and by its own de-designation and waiver, admitted that 99% of its initial designation from Dec. 16 2025 was frivolous (yet kept it in place for fifty days), and then at least ~70% of its "narrowed" designations from Feb. 4 2026 were also improper (yet

kept them in place for a month).

6. As of today, Apple still refuses to offer any Rule 26(c) good cause for any designation it retains. Instead, Apple mischaracterizes Plaintiff's objections, refuses to respond to the Plaintiff's objections, and spends a significant portion of its long-overdue, evasive, three-page letter arguing it was justified in firing the Plaintiff in 2021 and complaining about the Plaintiff's NLRB charges against Apple.

7. The designations Apple still claims it retains are exclusively about female genitalia or sexual activity (i.e., [redacted], [redacted], [redacted], [redacted], and [redacted]). Apple's March 4 2026 Letter de-designated speech about all other user studies (including: yoga, swimming, [redacted], [redacted], [redacted], and exercise monitoring). Apple retained "[redacted]," "[redacted]," "[redacted]," "[redacted]."

8. Other than Apple's perplexing retention of the designation claim that the letter "[redacted]" is confidential, the only variable between what Apple de-designated and what Apple retained is whether the content involves female reproductive biology and sexual activity. Apple makes these outrageous claims while Apple concurrently violated nearly every procedural requirement of the Protective Order.

## II. APPLE HAS NO VALID DESIGNATIONS

9. Apple's procedural failures are each independently fatal and create a result where Apple has never actually made any valid designations. Apple's failures include:

- Apple never signed its designations as required by FRCP 26(g)(1). Plaintiff objected February 4, 2026, and repeatedly thereafter. Apple still has not corrected this and has offered no explanation why it believes it does not have to comply with FRCP 26(g)(1). Apple also never dated its designations & has not corrected this.
- Apple also never served its designations on Plaintiff — sent to the court reporter "for notice purposes" instead. Apple has not corrected this and its only explanation indicated it was sending the designations at the end of the Plaintiff's thirty-day response period for the deposition transcript draft, assumably in order to then claim the Plaintiff cannot correct/remove their designations from that record. Apple never sent the designations to the Plaintiff, never intended to meet/confer, and only intended to force its unlawful and admittedly improper designations into a formal court record in such a way as to prevent the Plaintiff from opposition or trying to stop them.
- Apple imposed a blanket designation over the entire multi-hour deposition on December 16, 2025, designating every word spoken as "Confidential" rather than identifying specific content as PO § 5.2(b) requires. This violated PO § 5.1's prohibition on *"[m]ass, indiscriminate, or routinized designations."* Apple's own subsequent narrowing (from every word over multiple hours, to 29 brief retained citations) admits the blanket designation was indiscriminate. PO § 5.1 provides that such designations *"expose the Designating Party to sanctions."*
- Plaintiff challenged the blanket designation on the record at the deposition and in subsequent communications. The transcript was delivered January 7, 2026. Under PO § 6.3, and Apple had 21 days to file a motion to retain its blanket confidentiality but Apple filed nothing. Thus, the blanket designations automatically waived on January 28, 2026. Apple then sent narrowed designations on February 4 (unsigned, undated, served on the court reporter not the Plaintiff) — which Plaintiff immediately challenged. Those designations, if valid at all, auto-waived on February 25, 2026. Yet, Apple filed its Motion to Enforce (Dkt. 294) on February 26 (one day after the second auto-waiver).

Apple's March 4 letter now arrives five weeks after the first auto-waiver and one week after the second, de-designating all prior designations other than the ones currently underlying its pending motions and the Plaintiff's NLRB charge, as well as the letter "[redacted]."

- Apple has never complied with PO § 6.2's voice-to-voice dialogue requirement despite repeated requests. Apple also delayed, obstructed, and still refused to meet/confer about these issues – in direct violation of this court's February 20 order.
- Apple has had months to correct any of these. Apple chose not to.

Despite the above, Plaintiff has repeatedly offered good-faith engagement on anything colorably proprietary — in filings, emails, and at the February 20 conference. Apple's response was to withdraw most designations and retain only those Plaintiff expressly identified as unlawful (and the letter [redacted]).

## IV. APPLE FAILS TO RESPOND TO & MISCHARACTERIZES PLAINTIFF'S OBJECTIONS

10. Apple's letter fails to respond to ~55 designations including internal codenames, general hardware terminology, and non-sexual study descriptions ([redacted], [redacted], [redacted], [redacted]). Apple did not de-designate these but also did not retain them and Apple provided no response at all.

11. Apple then asks Plaintiff to "*advise if you agree to the narrowed list of designations set forth in this letter, or if you continue to challenge any or all of Apple's designations (and, if so, which ones).*" Apple converts its own failure to respond into a burden on Plaintiff to re-challenge designations Apple was required to address. Under PO § 6.2, upon receiving a challenge, Apple must "*explain the basis for the chosen designation*." Apple's failure to respond to over half the challenged designations is a failure to meet that obligation. Apple cannot manufacture consent through its own default.

12. Apple responds only to the Excel spreadsheet. Plaintiff's objections are documented across emails, motions, complaints, filings, the deposition transcript— all received by Apple and many cited by Apple in its own letters and emails. Yet, Apple ignores the Plaintiff's arguments in these filings while simultaneously citing them (including the NLRB charge and cover letter) as a Protective Order violation — meaning Apple has read it and knows the objections in it yet is still refusing to engage substantive with the objections and still refusing to provide a justification for its designation.

13. Apple's letter creates its own categories — "Code Names," "Industry Terminology," "Internal Studies" — and assigns Plaintiff's objections to them. Plaintiff did not make those categories. Apple collapsed the Plaintiff's objections into Apple-defined buckets, responded to arguments Plaintiff did not make, and refused to respond to arguments the Plaintiff did make. For example, Apple treats all study-related designations as a single "Internal Studies" category and responds as if the only objection was the NLRA — ignoring that Plaintiff separately raised objections regarding public information (the studies are publicly known) and public brand names (Beddit).

14. The PO expressly does not apply to *"any information that is in the public domain"* or "*known to the Receiving Party prior to the disclosure*." PO § 3. The PO also places the burden on Apple. PO § 6.2-6.3 requires Apple to "*explain the basis for the chosen designation.*" The basis must arise from "applicable legal principles" beyond the designation itself, per PO § 1. Apple must independently substantiate each designation. Apple has not done this for any of its designations – even the ones it claims to retain now..

# V. APPLE'S LETTER ADMITS PRIOR VIOLATIONS & CREATES NEW ONES

15. Apple narrowed from blanket designation of most of the deposition, to ~160 designations, then down to approximately 29 retained citations. This drastic narrowing admits Apple's designations have been improper and indiscriminate under PO § 5.1. Apple's remaining designations and the limited justification for those designations also admits Apple had an improper purpose from the start and all of this conduct was for the purpose of concealing, obstructing, and silencing the Plaintiff's complaints about work conditions, Apple's unfair business practices, and Apple's unethical exploitation of employee personal data for commercial purposes – something increasingly regulated by California.

16. Apple's March 4 2026 treatment of 165:13-24 is particularly telling. Apple de-designated only: "*and I found that very disturbing*" but Apple retained everything else. Once you remove the de-designated expression of distress and the other content Apple conceded is not confidential elsewhere (sensors, vitals, monitoring), what Apple is actually retaining is: "[redacted]." Apple retained the employee's disclosure about what she believes to be unethical and unlawful conduct, and concealed that the nature of the issue is private sexual sexuality.

17. Apple's letter also says it retains "[redacted]" (2 designations: 197:18, 197:21). because "in context, this testimony relates to the meaning of the letter within Apple's internal code names." So Apple treats "[redacted]" as a code name component. But Apple de-designated or abandoned every other code name and code name component— and all hardware development terminology. Plaintiff offered to allow redaction of all codenames as a courtesy, yet Apple retains the letter "[redacted]" —— while abandoning every substantive codename.

18. Beddit is a product Apple acquired in 2017, marketed, and sold publicly to consumers — not a pre-release or unreleased product.[1] It shipped, had a brand name, and customers bought it. It is publicly known. Apple likely wants the name redacted precisely because it identifies a shipping product, not a secret one — revealing that the studies at issue involved existing commercial products, not unreleased prototypes. ([redacted]: 6 designations: 166:4, 166:14, 167:17, 168:19, 169:1, 169:10). But a public product name cannot be designated confidential under PO § 3 (excluding "information that is in the public domain"). Apple offers no Rule 26(c) basis despite repeated demands for it to do so.

19. Apple also failed to provide a list of what designations it claims it retains but a manual cross-check indicates that it appears Apple' remaining designations are:

- [redacted] (7 designations: i6, 164:10-11, 164:15-16, 170:9, 226:4, 236:14-15, i20 partial)
- [redacted] (5 designations: 164:10-11, 164:14, 164:25, 169:25, i22)

[1] CNET, *Apple buys Beddit, maker of sleep-tracking device: The $150 device fits between your sheet and mattress to measure such things as total sleep time, resting heart rate and respiration rate.,* May 9 2017, https://www.cnet.com/home/smart-home/apple-buys-sleep-tracking-device-maker-beddit/

- [redacted] (3 designations: 176:16, i20 partial, 226:4 partial)
- "[redacted]" / "[redacted]" / "[redacted]" / "[redacted]" (4 designations: 166:1-2, 226:1, 226:3, i8)
- [redacted] (1 designation: i28)
- [redacted] (1 designation: 205:17)
- [redacted] study passage including [redacted] (1 designation: 165:13-24, minus *"and I found that very disturbing"*)
- "[redacted]" (1 designation: 225:25)
- "[redacted]" in index alongside [redacted]-related terms (1 designation: i5)

20. Apple's letter states the retained material is the Plaintiff's "*characterization of the content, methods, and processes of certain internal Apple product-related studies.*" But the de-designated testimony is also the employee's characterization of internal studies — characterizing what the studies involved (sensors, vitals monitoring, exercising in Apple's lab), what the employee was asked to do ([redacted], [redacted]), and the general purpose. Apple de-designated all of those characterizations. ("*go to yoga or running or swimming where they wanted to strap a bunch of sensors on me and, like, monitor all my vitals while I was, like, exercising in some Apple lab*." designated 161:6-9).

21. The only characterizations Apple retained involve [redacted]. Apple's own stated justification ("characterization" of studies") does not distinguish between what Apple retained and what Apple abandoned. The only distinguishing factor is the sexual content, which claims are also the subject matter of the pending NLRB charge, and Apple's subsequent motion to "Enforce the PO" in retaliation for the NLRB charge and Plaintiff's complaints.

## VII. APPLE PROVIDES NO RULE 26(c) GOOD CAUSE

22. PO § 2.2 defines "CONFIDENTIAL" as information "that qualifies for protection under Federal Rule of Civil Procedure 26(c)." The Ninth Circuit requires that any confidentiality claim requires "good cause" showing under Fed.R.Civ.P. 26(c) and warns that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986). Facing a request for disclosure, its inadequate for the Designating party to simply rely on a blanket Protective Order without any showing of "good cause" *Olympic Refining Company v. Carter,* 332 F.2d 260, 264-65 (9th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964).

23. "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. United States Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir. 1999). "Rule 26(c) only authorizes a district court to override this presumption where `good cause' is shown." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Claims of confidentiality include actual "trade secret or other confidential research, development, or commercial information." Id; Fed. R. Civ. P. 26(c), 26(c) (7).

24. A conditions precedent for Court granting a protective order requires that the party seeking to make something confidential, must make "particularized showing of good cause with respect to any individual document." *San Jose Mercury News, Inc.*, 187 F.3d at 1102. "If good cause is not shown, the

discovery materials in question should not receive judicial protection and therefore would be open to the public." *In re Agent Orange Product Liability Litig.,* 821 F.2d 139, 145 (2d Cir. 1987). Even if there is a showing of particularized harm, the Court may still deny a protective order based on a balancing of public and private interest. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

25. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) explains that "the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court. This common law right of access to inspect various judicial documents is well settled in the law of the Supreme Court and this circuit." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

26. This common law right, as described in *Phillips ex rel.,* "creates a strong presumption in favor of access" to judicial documents which "can be overcome" only by showing "sufficiently important countervailing interests." *San Jose Mercury News, Inc.*, 187 F.3d at 1102; *see also Hagestad*, 49 F.3d at 1434. "In deciding whether sufficient countervailing interests exist, the courts will look to the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets'." *Tragesser*, 49 F.3d at 1434. The burden is on the party seeking to protect information to make a particularized showing. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

27. Apple provides: no trade secret identification, no competitive harm, no case law. Apple cites one citation which was to *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018) — an FAA/NLRA case about class-action waivers in arbitration, not about protective orders or confidential information, and inapposite. Apple's sole justification thus far is: the material is the Plaintiff's "characterization of the content, methods, and processes of certain internal Apple product-related studies." This is a description, not a showing. What is the trade secret in "[redacted]"? What competitive harm results from "[redacted]"? What proprietary interest is served by "[redacted]"? How are public information, personal experiences, and complaints about work conditions confidential? Apple has had months to answer these questions and still refuses.

## VIII. APPLE'S OWN FILINGS CONTRADICT ITS POSITIONS

### Interrogatory Set 1: Apple used code names for the studies it says justified termination — then didn't designate them.

28. In response to Interrogatory No. 1 asking for Apple's "complete and formal reason(s) for terminating" Plaintiff, Apple stated (Orrick, August 4, 2025, verified under penalty of perjury by Apple HR Director Megan Bowman and Melinda Riechert): "To safeguard Apple's confidential information, the study is referenced as 'Alpha' for purposes of this response" and "to safeguard Apple's confidential information, the study is referenced as 'Omega' for purposes of this response." Apple described the "Alpha" and "Omega" studies in detail — how they worked, the consent forms, the confidentiality requirements, and how Plaintiff's disclosures about them led to termination. One year ago, Apple treated these studies as

the confidential information requiring pseudonyms to protect.

29. Apple's Interrogatory Set 1 response states: "On August 28, 2021, Plaintiff tweeted details about a separate proprietary study Apple was conducting, the 'Omega' study… Plaintiff's tweet both identified the name and purpose of the study regarding an unreleased product under development." Apple added that "on August 30, 2021, Plaintiff tweeted photographs of herself created by the Alpha application, thus again disclosing confidential Apple product information." Dkt. 280 fn. 2 states: "it was her public disclosure of confidential Apple product-related information that led to her termination from Apple in the first place."

30. Then, at the December 16 2025 deposition, these same studies — Gobbler (Apple's "Alpha") and the ear scan studies — were discussed extensively and Apple did not designate a single line of that testimony as confidential. Apple did not even maintain the pseudonyms — the studies were discussed by name with no designation. Apple claims this information was so secret that sharing it justified it in terminating the Plaintiff's employment – then Apple didn't designate it at all. But in 2026, Apple did designate the employee's testimony about [redacted], and [redacted] as confidential and sent multiple letters/motions/emails indicating it would have fired the Plaintiff for talking about these topics as well, but not designating the content it says it did fire the employee over.

31. It's well established that Apple conceals complaints and retaliates against workers who complain about work conditions or organize to improve work conditions. That appears to be Apple's only basis for any of these confidentiality claims – Apple insists its misconduct is secret and that complaints about Apple's wrongdoing is misconduct, assumably because it exposes that Apple's public claims about those same business practices are false and misleading. [2]

32. In its discovery response, Apple admits the Verge article about the Gobbler study was published (RFA No. 17: Apple admits "the article features an embedded video composed of, among other things, images showing Plaintiff's face (or parts of her face) and parts of her upper body" and "admits that the images were captured on Plaintiff's phone by an application that has been called Gobbler"). Apple admits it was contacted for comment before publication and did not respond or send a cease-and-desist (RFA No. 20: "Apple admits that a reporter from the Verge reached out to an employee at Apple 'for comment' prior to the publication of the article… and that Apple did not provide a comment prior to the

---

[2] NYT, *Regulators Find Apple's Secrecy Violates Workers' Rights: After a yearlong investigation, a federal labor board determined that the tech giant's rules interfere with employees' right to organize*. Jan. 31 2023, https://www.nytimes.com/2023/01/31/technology/apple-workers-rights.html; HR Grapevine, *Apple faces Federal complaint for silencing workers through confidentiality policies,* Nov. 5 2024, https://www.hrgrapevine.com/us/content/article/2024-11-05-apple-faces-federal-complaint-for-sliencing-workers-through-confidentiality-policies; HRD Magazine*, Apple drops gag orders for employees talking harassment, discrimination,* Dec. 15 2022, https://www.hcamag.com/us/specialization/employment-law/apple-drops-gag-orders-for-employees-talking-harassment-discrimination/430851; Engadget, *Report: Apple retaliated against women who complained about misconduct: Its corporate culture is at odds with the image it presents, multiple women said.*, Aug. 4 2022, https://www.engadget.com/report-apple-retaliated-against-misconduct-victims-094505393.html; PASTE, *Apple Reportedly Lied in Recent Memo about NDAs and Silencing Employees,* Nov. 23 2021, https://www.pastemagazine.com/tech/apple/apple-lied-in-recent-memo-silences-employees; Business and Human Rights Centre, *Apple employees raise concerns company does not protect and at times invades their personal privacy*, Aug. 30 2021, https://www.business-humanrights.org/en/latest-news/apple-employees-raise-concerns-company-does-not-protect-and-at-times-invades-their-personal-privacy/; etc.

publication of the article").[3]

33. Apple claims Gobbler disclosures were confidential and they justified termination. Yet, Apple did not send a cease-and-desist when it had the chance, did not respond when asked to comment on an article characterizing Apple's explanation as "absurd,"[4] and did not designate Gobbler testimony at the deposition. Apple designates [redacted] and [redacted] under the same IPA theory. If the product studies are what's confidential — as Apple says under oath — then the employee's complaints about different topics are not.

34. Further, Plaintiff's Fifth Amended Complaint alleges (¶ 158): ***"Apple frequently requested that Gjovik and her coworkers participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA tests, biometrics data collection (like the Gobbler app), and other highly personal examinations."*** (Dkt. 142). Apple's answer was that: "Apple lacks knowledge or information sufficient to admit or deny the allegations and on that basis denies them" (Dkt. 218). Then, Apple simultaneously describes the same studies in detail in Interrogatory Set 1, claims no knowledge in responses to Requests for Admission, and designates testimony about them as confidential. Apple cannot lack knowledge about studies it describes under oath and designates as its confidential property.

35. Apple told this court (Dkt. 224, p. 11): "Gjovik's claims and Apple's defenses are fact intensive, and those facts need to be developed through discovery, both oral and written." He said the claims and defenses are "so intertwined" they cannot be separated. Apple then designates the employee's deposition testimony about these facts as confidential under the theory that these facts also represent things it would fire the Plaintiff for disclosing like it did with the Gobbler and ear scan issues. Yet, Apple also refused to answer Interrogatory Set 3 questions about "Plaintiff's Disclosures concerning Privacy" — the exact subject Apple now claims justifies the designations.

36. Apple's affirmative defenses repeat: "Plaintiff disclosed confidential product-related information in violation of Apple policies and her obligations under her Intellectual Property Agreement." But Apple refuses to identify which policies, which provisions, or which specific conduct violated which specific term. The court noted Apple would need to produce policies in initial disclosures (Dkt. 234). Apple has not — and Apple refuses to provide any further information – while Apple does designate Plaintiff's testimony as confidential assumably based on those unproduced, unidentified policies.

37. The sex-based content Apple retains corresponds to the content Apple cited in its Motion to Enforce (Dkt. 294) and Motion to Seal (Dkt. 293). If Apple de-designated this content, those motions would be moot — Apple would be seeking sanctions for disclosing content Apple itself concedes is not

[3] The Verge, *Apple cares about privacy, unless you work at Apple: The company has taken a strong stance on safeguarding its customers' data — but some employees don't believe it protects theirs,* Aug. 30 2021, https://www.theverge.com/22648265/apple-employee-privacy-icloud-id

[4] Gizmodo, Apple Wanted Her Fired. It Settled on an Absurd Excuse: The reasons for firing Ashley Gjøvik include tweeting a photo of herself—taken by her own phone., Oct. 14 2021, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789 ("Late in the evening on Sept. 15….a letter popped up in her inbox. It was from a high-powered law firm, O'Melveny & Myers LLP…. It didn't point to any sensitive documents… The information it contained wasn't new. Nor was it particularly newsworthy. Had it been anything otherwise, one of the dozens of reporters following Gjøvik would've noticed…the emails shared publicly by Gjøvik were neither labeled confidential nor contained anything that could be considered secret or otherwise proprietary…The posted image of the email merely noted what was already known to the public…Apple did not respond to a request for comment.")

confidential. Apple maintains the designations not because the content is secret but because withdrawing them collapses the pending motions and admits to the NLRA violations.

38. Maintaining designations to support litigation rather than to protect legitimately confidential information is an improper purpose under PO § 5.1: designations "made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions."

39. However, Apple's defense to this is even worse—that its intentionally claiming employee complaints about Apple regarding sexual harassment, bodily autonomy, invasion of privacy, and the employer studying employee [redacted] and sexual activity is all "confidential" even if the study consists of otherwise public information – if the employee complains about Apple's conduct, then the complaint and underlying facts become "confidential" per Apple. This is Apple's MO for years.

## Judicial Estoppel; and Orrick v Morgan Lewis

40. Morgan Lewis filed Apple's Answer to the NLRB Amended Complaint on November 21, 2025, denying every substantive allegation. Morgan Lewis denies Apple "directed employees to refrain from talking about workplace environmental health and safety concerns with other employees" (response to ¶ 5). Morgan Lewis denies Apple told employees to use a "five-point balancing test in advance of communicating workplace health and safety concerns" (response to ¶ 6(a)). Morgan Lewis denies Apple told employees "to refrain from discussing their terms and conditions of employment" (response to ¶ 6(c)).

41. Orrick's designations and this letter impose exactly those restrictions: don't discuss workplace studies publicly, don't characterize Apple's internal practices, don't share complaints about what Apple did to your body. Morgan Lewis denies to the NLRB that Apple makes these rules. Orrick enforces them in this court. Morgan Lewis's defenses also include that Apple's statements "contain no threat of reprisal or force or promise of benefit" (Defense 5, citing Section 8(c) of the NLRA). Orrick's conduct — sanctions threats, gag orders, case dismissal — is threats of reprisal. Morgan Lewis's own defense framework defeats Orrick's conduct.

42. Apple's counsel (Riechert/Orrick) told the court in the January 6, 2026 Joint Case Management Update (Dkt. 269, p. 10): "On September 25, 2025, the NLRB (Case No. 32-CA-282142) dismissed certain allegations from the complaint, including all allegations that Defendant suspended and terminated Plaintiff for engaging in protected concerted activities; Plaintiff appealed this dismissal on November 21, 2025. No hearing has occurred with regard to the remaining allegations, and there have been no findings of fact or legal conclusions relating to those allegations."

43. Apple's March 4 letter states: "the NLRB has already determined that your revealing 'confidential product development information about [an Apple] study' is not 'protected activity' under the NLRA." Apple told the court: no findings, dismissal appealed. Apple now tells Plaintiff: the NLRB has "determined." Apple is judicially estopped from representing a non-final, appealed GC dismissal — which its own counsel confirmed is on appeal and has no "findings" — as a Board "determination."

44. Further, Plaintiff did not cite Case 32-CA-282142 in her designation objections. Apple introduced it. Having opened that door: the partial dismissal Apple cites addressed revealing "confidential product development information about [an Apple] study." Apple's retained designations are not product development information — they are [redacted]. Yet, Apple again

bases its designations on its similarly unsubstantiated claims it was justified in terminating the Plaintiff's employment – which also refusing to provide any factual or legal basis for that argument.

45. The still-active NLRB amended complaint in that same case retains allegations that Apple violated Section 8(a)(1) by directing employees to refrain from discussing workplace health and safety concerns (¶ 5), telling employees to use a five-point balancing test before communicating workplace concerns (¶ 6(a)), and telling employees to first communicate concerns directly with Apple before discussing them (¶ 6(c)). Orrick's designations and this letter impose those same restrictions. So, Apple (via Morgan Lewis) is trying to settle those claims while Apple (via Orrick) is committing the same violations, admitting they are doing so, but now claiming its lawful and appropriate for them to do so.

## X. APPLE'S CONDUCT VIOLATES APPLICABLE LAW, THE PROTECTIVE ORDER, & COURT RULES

46. Apple's March 4 2026 letter, Feb. 18 Letter (Dkt. 280 fn. 2), emails, and the February 20 conference confirm the Plaintiff's mostly defunct IPA is Apple's only basis for designation. Apple provides no independent Rule 26(c) justification, violates the requirements of the Protective Order Apple insisted upon having ordered in this case, and refuses to engage in meaningful meet/confer.

47. The use of the IPA to justify any confidentiality claim for this subject matter is prohibited by at least: the April 2025 NLRB settlement (requiring rescission); the Speak Out Act, Pub. L. 117-224 (2022) (voiding pre-dispute NDAs preventing speech about sexual harassment)[5]; the STAND and Silenced No More Acts, Cal. Lab. Code § 1001 (prohibiting enforcement of agreements preventing disclosure of unlawful workplace acts)[6]; and more. Further, the bankruptcy automatic stay also prohibits the pending motion for sanctions (hearing before Judge Panos, April 2, 2026, Dkt. 299). These arguments are set forth in detail in Plaintiff's prior filings, NLRB charges, emails, and other communications to Apple on this matter and are incorporated by reference.

48. As of March 4 2026, Apple has now de-designated every user study-related term/phrase unrelated to genitals and sexual activity (involving de-designating exercise, [redacted], and physical activity monitoring). Apple retained every designation involving [redacted]. The only variable is whether the content involves female reproductive biology and sexual activity. Apple provides no Rule 26(c) justification for any retained designation.

49. Under Title VII and FEHA, unwelcome conduct of a sexual nature creating a hostile environment constitutes sexual harassment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993); Cal. Gov. Code § 12940(j). Courts have found harassment where employers made "offensive, explicit references to women's bodies and sexual conduct," *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994); comments about women's bodies and references to genitalia, *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 539-40 (2d Cir. 2010); "comments on the breasts,

[5] Pub. L. No. 117-224, 136 Stat. 2290 (2022) (codified at 42 U.S.C. §§ 19401–19404).
[6] 2018 Cal. Stat. 6262 (codified as amended at CAL. CIV. PROC. CODE § 1001. Stand Together Against Non-Disclosure (STAND) Act, See CAL. CIV. PROC. CODE § 1001(a) (West 2024).

buttocks, and physical appearance of individual women," *Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1373 (9th Cir. 1990); and repeated close examination of female employees' bodies, *EEOC v. R&R Ventures*, 244 F.3d 334, 339 (4th Cir. 2001).

50. The DOJ confirms "asking about a person's sexual preferences" violates Title VII. The EEOC confirms examples of retaliation for employee's opposing sexual harassment includes the employer "filing a civil action," "work-related threats, warnings, or reprimands," "increase scrutiny," and "make the person's work more difficult." All of this is happening here now. NDA's concealing sexual harassment "silence and isolate victims but also enable wrongdoers to continue their behavior without accountability."[7] NDAs used to conceal sexual harassment and misconduct, rather than trade secrets, are a corporate "weapon used to benefit the powerful and corrupt and gag victims."[8]

51. This is one reason the legislative history of the STAND Act explains it prohibits an employer from requiring an employee to sign a nondisparagement agreement … denying the employee the right to disclose information about those acts." S.B. 331, 2021-2022 Leg., Reg. Sess. (Cal. 2021). The law applies retroactively to all prior NDAs including the one the Plaintiff signed with Apple. Under California's STAND and Silenced No More laws, an employer like Apple is barred from the enforcement of any pre-lawsuit NDA preventing individuals from seeking help or speaking out about illegal workplace misconduct involving sexual assault and harassment – which is exactly what Apple claims its justification for confidentiality is here. S.B. 331, 2021-2022 Leg., Reg. Sess. (Cal. 2021).

52. The Speak Out Act is an "enacted public law" that "specifically inhibits courts from enforcing nondisclosure clauses or non-disparagement clauses that are entered into before the occurrence of a sexual assault or harassment dispute." Speak Out Act, S. 4524,117th Cong. (2022).[9] The Act "precludes the court's enforcement of blanket NDAs regarding allegations of sexual assault and harassment." [10]

53. Apple is waging their entire PO enforcement campaign (Feb.–March 2026, with four+ motions, dozens of M&C refusals, sealing demands, gag orders, sanctions threats, and this letter ) about a female employee's [redacted]. Apple refuses to substantiate why any of this is confidential but demands the employee justify why Apple should not be permitted to designate her reproductive and sexual information as Apple's property. This inverts the PO's burden (§ 6.3) and compounds the violation with each communication.

54. This is also sexual harassment of the Plaintiff. The decision-makers are predominantly male. (Lead counsel in the NLRB cases are men (2+ men with Morgan Lewis, 2+ men with MWE), lead counsel for OMM was a man, lead counsel with MoFo is a man, Apple's CEO and executive teams are

---

[7] See, e.g., Stephanie Russell-Kraft, *How to End the Silence Around Sexual Harassment Settlements*, THE NATION (Jan. 12, 2018), https://perma.cc/6H27-57C2 ("[Secrecy] leaves other employees vulnerable to harassment by repeat perpetrators, and deprives the public of information about how widespread the problem of workplace harassment is.")

[8] Johanna Shinners, *Safeguarding Silence: The Weaponization of Nondisclosure Agreements and the Need for More Regulation,* 25 Marq. Ben & Soc. Welfare L. Rev. 229 (2024).

[9] Elizabeth A. Lalik et al., President Biden Enacts Speak Out Act Curtailing the Use of Pre-Dispute Non-Disclosure and Non-Disparagement Clauses Involving Sexual Assault and Harassment Claims, LITTLER MENDELSON P.C. (Dec. 12, 2022),

[10] Johanna Shinners, *Safeguarding Silence: The Weaponization of Nondisclosure Agreements and the Need for More Regulation,* 25 Marq. Ben & Soc. Welfare L. Rev. 229 (2024).

almost entirely men, and noticed counsel in this case also includes a man (Ryan Booms). Regardless of the nature of the proceeding, all of Apple's counsel have made personal attacks against the Plaintiff in the cases and outside the proceedings (harassing her on social media about her body, accusing her of misconduct, bullying her about her appearance, etc.).

55. While it's a woman currently sending these communications (Melinda Reichert), behind her is an army of male executives and legal counsel, and they're all claiming Apple has an inherent right to study employee [redacted] and private [redacted] acts, and the Plaintiff's opposition and complaints to this are secret and misconduct by the Plaintiff. After the Plaintiff complained in an NLRB charge that Apple "doesn't own her vagina" and can't claim any rights or ownership to employee genitals, Apple filed a motion for sanctions against the Plaintiff, wanting the filing sealed, and the Plaintiffgagged and bound by the court.

56. This case already alleges sex-based harassment during Plaintiff's employment — including supervisors who discriminated based on sex and created a hostile work environment with sexual harassment, among many other issues (Fifth Amended Complaint ¶¶ 72-74, 242-243). Apple's current litigation conduct seeks to conceal and normalize the prior abuse and unlawful conduct through a "protective order." Apple seeks to use this PO to strike, dismiss, or otherwise nullify the Plaintiff's pleaded complaints in this litigation about these very issues – in addition to obstructing NLRB and other agency proceedings.

57. Apple's conduct also directly violates the same Protective Order. For instance,

- PO § 1: The order "does not confer blanket protections" and extends "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." Apple has demonstrated entitlement under no applicable legal principle.
- PO § 3: Protections "do not cover" information "in the public domain" or "known to the Receiving Party prior to the disclosure." The designated content is public in the Fifth Amended Complaint, Judge Chen's orders (Dkts. 73, 112), the Verge article, NLRB filings, and press coverage.
- PO § 5.1: Mass and indiscriminate designations are prohibited and sanctionable. Designations made for improper purpose are sanctionable.

58. Apple's conduct has also violated the FRCP including FRCP 26(g)(1) because discovery responses must be signed and Apple refuses to sign these designations. The signature is to certify the filing is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Apple's designations are unsigned — and if signed, would violate this certification. The context (including the Feb. 4 2026 email) shows that Apple is refusing to sign these designations because Apple knows the designations are not legitimate and the serving attorney could face sanctions. Yet under FRCP 26(g)(3), sanctions are mandatory for 26(g)(1) violations, which includes their intentional refusal to sign, date, or serve the designation.

59. Apple also violated the Court's Professional Conduct Guidelines with this misconduct including their refusal to practice with "honesty, care, and decorum" (Civil L.R. 11-4(a)), to be free of "prejudice and bias" Civil L.R. 11-4(b); using, inquiring, and threatening to use "facts about the private lives of any party… for the purpose of gaining an unfair advantage" Guideline 17 (Privacy); and "engaging in conduct that exhibits or is intended to appeal or engender bias against a person on account of that person's . . . sex." (Guideline 18).

60. This list is not all inclusive – Apple violated too many rules, laws, and policies to count here – but the first step is for Apple to simply follow the basic requirements of the FRCP, Local Rules, and Protective Order – which it is still refusing to do nearly three months after the deposition.

## XI. CONCLUSION AND NOTICE

61. Apple's letter fails on every level. Apple has no valid designations. Apple failed to respond to over half the challenged designations. Apple provides no Rule 26(c) good cause for any retained designation. Apple's 29 retained designations consist of: one code name component retained as apparent pretext (the letter "[redacted]" 2 designations), a public brand name ([redacted], 6 designations), and worker complaints about corporate misconduct related to female employee reproductive biology and sexual activity (21 designations).

62. Apple de-designated every non-sexual user study characterization and retained every sexual one — while claiming its basis is the employee's "characterization" of studies, admitting to animus about workplace complaints. Apple maintains these designations to avoid mooting its pending sanctions motions, not to protect confidential information. Apple's conduct violates the PO, the FRCP, this court's Professional Conduct Guidelines, Title VII, FEHA, the Speak Out Act, the Silenced No More Act, the NLRA, the April 2025 settlement, and many other legal protections, rules, and restrictions.

63. Apple needs to follow the rules – and so far Apple continues to intentionally defy those rules instead. I reserve all rights and arguments, including those set forth in my prior filings, emails, and communications.

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff/*In Propria Persona*)**
Filed March. 5 2026 in San José, California
(415) 964-6272
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553, Sacramento, CA 95816

# EXHIBIT G

disconnect it. Gjovik repeatedly tried to uninstall/deactivate it, but it always reinstalled/reactivated itself.




*Exhibit: Gjovik's iCloud Personal Account, Current Day*

142. Apple would later rename the application from Gobbler to "Glimmer" after criticism about the face *"Gobbler*" name.

143. On Apple's internal "Living On" help page, it explains that when you "live on" Apple devices, *"You are encouraged to make full use of your living on devices as you regularly would and try to log as many bugs as possible. This will help us provide a better and bug free product to our customers.*

144. Around this time Gjovik was contacted to participate in other user study programs including Apple wanting to study her ovulation cycles and menstruation, which she denied. Apple asked to study Gjovik's vitals while she ran and swam, which she denied. Apple asked to study Gjovik's vitals and sleep while she slept, which she accepted for a few months,

but then left the program due to how invasive it felt. Apple also asked to 3D scan Gjovik's ears and ear canals, which Gjovik denied expressly in 2018 and stated her denial was 'indefinite.'

145. Gjovik created a successful hardware re-use program in 2018, (which she called "Hand Me Down Hardware"), in order to fill test coverage gaps dependent on infrastructure, while also dramatically reducing e-waste. West and Powers suddenly canceled her project without consulting or notifying Gjovik and the explanation provided to her was that one of West's reports, Reed Johnson, requested the change in order to obtain personal benefit, and West approved.

146. When Gjovik complained about the decision to cancel the project, resulting in a dramatic increase in e-waste and reduced test coverage for customer products which was known to increase risk and did result in customer field issues, Gjovik was repeatedly told by West and Powers that she was simply being "*emotional*," "*aggressive*," and "*irrational*." Powers suggested that when Gjovik is upset with Powers or West, that she should stay silent about it for at least one day, and then at that point, she will realize she is wrong and they are correct, and then she will not have concerns about them anymore. Powers then complained Gjovik was making facial expressions of displeasure that appeared directed towards him, and that she must always have a 'poker face' to be successful. In 2021, Gjovik complained about this matter to Jenna Waibel and Ekelemchi Okpo, and included it in the August 2021 "Issue Confirmation."

147. On April 13, 2018, Tom Moyer, head of Apple Global Security, was quoted in a Bloomberg article saying that Apple "leakers" "*not only lose their jobs, they can face extreme difficulty finding employment elsewhere. The potential criminal consequences of leaking are real and that can become part of your personal and professional identity forever*." [99]

[99] Mark Gurman, *Apple Warns Employees to Stop Leaking Information to Media*, Bloomberg, April 13 2018, https://www.bloomberg.com/news/articles/2018-04-13/apple-warns-employees-to-stop-leaking-information- to-media

consent or notice to the people whose data was gathered, including bathroom videos. Notably, even Google Glass refused to capture biometrics, and yet people were still "freaking out."[1024]

1344. Apple intended to invade its employee's privacy. Whether it was to spy on them, to collect and hoard their data, or to exploit unpaid labor from them – Apple possessed intention and purpose in invading employee privacy, including Gjovik's privacy. Apple claims that employees 'consented' to even its most invasive violations of privacy, such as scanning ear canals, 24/7 biometrics gathering, sleep monitoring, or monitoring employee's ovulation and menstruation.

1345. Also see § 1102.5 for § 435, *Tamney* for CPRA, *Tamney* for FTC Act, and *Tamney* for ICCPR which are incorporated here.

**vii. Tamney: California Privacy Rights Act**

1346. The California Privacy Rights Act ("CPRA"), states that "*It is the intent of the Legislature to ensure that personal information about California residents is protected*" and that "personal information" includes "*unique biometric data generated from measurements or technical analysis of human body characteristics… used to authenticate a specific individual… [including] a physical or digital photograph… used or stored for facial recognition purposes*."[1025]

1347. The CPRA defines biometric information as "an individual's physiological, biological, or behavioral characteristics, including information pertaining to an individual's deoxyribonucleic acid (DNA), that is used or is intended to be used singly or in combination

---

[1024] Bridget A. Sarpu, *Google: The Endemic Threat to Privacy*, 15 J. High Tech. L. 97, 99–100 (2014); See Letter from Rep. Joe Barton, Co-Chairman, Bi-Partisan Privacy Caucus, to Larry Page, CEO, Google (May 2013), (providing an example of the attention Google Glass had been getting with a letter that was written by members of Congress to Google concerning Google Glass and possible constitutional violations). See also Richard Gray, *The Places Where Google Glass is Banned*, THE TELEGRAPH (Dec. 4, 2013), (listing the numerous places where Google Glass is already banned including in the car, cinemas, strip clubs, casinos, restaurants, hospitals, sports grounds, concerts, banks, and ATMs).
[1025] Cal. Civ. Code § 1798.81.5(a)(1) and (d)(1)(a)(vi).

United States District Court
Northern District of California

Having considered the parties' briefs, as well as the oral argument presented at the hearing on May 16, 2024, the Court hereby **GRANTS** in part and **DENIES** in part Apple's motion to dismiss; **DENIES** Apple's motion to strike; and **GRANTS** Ms. Gjovik's motion to strike.

## I. <u>FACTUAL & PROCEDURAL BACKGROUND</u>

The operative pleading is the third amended complaint ("TAC"). Although the TAC is difficult to follow at times, the main categories of misconduct as described in the TAC are as follows:

(1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.

(2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.

(3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.

(4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Below, the Court provides more details regarding Apple's alleged misconduct and Ms. Gjovik's termination from employment. To be clear, the discussion below is based on the allegations made in the TAC.

### A. <u>Harassment at Work</u>

In February 2015, Ms. Gjovik began to work for Apple. She started out as an Engineering Project Manager in Software Engineering and continued to work in that office until January 2017. *See* TAC ¶ 13. During her time in that office, she was harassed, primarily by two male co-workers. *See* TAC ¶ 13. In addition, during her time in the office, she investigated a trend of

(emphasis omitted).

D. Termination in September 2021

As noted above, Ms. Gjovik was put on indefinite administrative leave in August 2021. In or about that period (July-August 2021), Ms. Gjovik made various public complaints about Apple. *See* TAC ¶ 71 *et seq.* Some complaints were made to coworkers (*e.g.*, through Slack channels), to the press, or to social media; other complaints were filed with governmental agencies such as the EEOC, the California DFEH, the NLRB, the U.S. Department of Labor, the California Department of Labor, and even the SEC and FBI. The complaints covered a wide range of conduct by Apple – *e.g.*, its response to COVID-19, its response to her complaints about sexism, its response to her complaints about unsafe work conditions, its forcing her on administrative leave, etc.

On September 9, 2021, Apple terminated Ms. Gjovik's employment. *See* TAC ¶ 90. The day that she was terminated, Ms. Gjovik was contacted by an Apple Workplace Violence and Threat Assessment investigator (Mr. Kagramanov) via email. The investigator claimed that he was looking into a sensitive IP matter and demanded to speak to her within the hour. Ms. Gjovik said she was willing to participate but wanted a written record of their conversation. The investigator replied that Apple was investigating allegations that she had improperly disclosed confidential information belonging to Apple and falsely asserted that she was refusing to participate in the investigation. The investigator then suspended all of Ms. Gjovik's account access at Apple (including Slack). *See* TAC ¶ 101-03; *see also* TAC ¶¶ 83, 88. Ms. Gjovik reiterated to the investigator that she was willing to participate. However, a few hours later, she was terminated. *See* TAC ¶ 105. "The termination letter repeated an ambiguous charge of leaking and said she 'failed to cooperate and to provide accurate and complete information during the Apple investigatory process.'" TAC ¶ 105.

About a week later, Apple's outside counsel emailed Ms. Gjovik a letter, suggesting that Apple had terminated her because (1) she had complained about Apple asking to 3-D scan her ear canals and (2) she had "posted some of the surveillance photos Apple secretly took of her through her phone when it was illegally harvesting her biometrics through its face Gobbler app." TAC ¶ 106; *see also* TAC ¶ 80 (alleging that "Apple frequently requested that Gjovik and her coworkers



United States District Court
Northern District of California

participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA test, biometrics data collection (like the Gobbler app), and other highly personal studies").

E. Post-Termination Harassment

Even after Ms. Gjovik was fired from Apple, the company harassed her. In fact, Apple conducted a campaign of harassment against her from at least July 2021 (*i.e.*, a few months before it terminated her). The harassment included the following conduct:

- Making repetitive, unwanted communications to Ms. Gjovik. *See* TAC ¶ 107.
- Making false accusations against Ms. Gjovik. *See* TAC ¶ 107.
- Mailing to Ms. Gjovik "menacing packages." TAC ¶ 107.
- Physically surveilling Ms. Gjovik, including through the use of private investigators. *See* TAC ¶¶ 107, 110.
- Using fake social media accounts to make, *inter alia*, threatening, defamatory, and insulting statements about Ms. Gjovik. *See* TAC ¶ 108.
- "[B]ugging [Ms. Gjovik's] chattel property" such as the statute on her desk and her fig tree. TAC ¶ 110 (also alleging that Apple installed cables and cords in her attic).
- Breaking into her apartment and adjacent apartments, and even handling her dog during one of the break-ins. *See* TAC ¶ 110.

For similar allegations, see also TAC ¶ 132 (alleging that Apple engaged in criminal witness tampering "with break-ins, stalking, destruction of property, physical and digital harassment, lawsuits, reports to police and FBI (SWATing), and threats of physical violence sent over wires such as threatening to decapitate one of Gjovik's loved ones, or that Gjovik would be found dead of 'suicide' but 'never mind the double-tap'") (emphasis omitted); and TAC ¶ 134 (alleging that Apple broke into her apartment, messed with her telephone/cable/electrical lines, stalked her, etc.)



United States District Court
Northern District of California

"*anti-competitive conduct*" and "*attempts to cover up any of these behaviors*" are whistleblower disclosures. Apple should obtain ethical and legal data for product development instead of treating its workforce like lab rats.

194. Gjovik suffered an economic and/or property injury due to Apple's Unfair Business Practices. Apple knew or should have known that its wrongful acts and omissions alleged herein were likely to deceive the consuming public in California and the rest of the United States. Apple committed those acts and omissions anyway for their financial gain, including improving their financial condition, increasing the likelihood of receiving new capital from investors, increasing their revenue and profits, and increasing the company's value.

195. Apple repeatedly implied to Gjovik that her participation was not option. Gjovik's annual performance reviews made express note of Gjovik's participation in Apple's studies and experiments and praised her for her unpaid labor in facilitating the numerous invasions into her privacy.

196. Gjovik participated in several other health, anatomy, and personal data collection studies during her time working for Apple. This included a sleep study with Apple placing a sensor under her while she slept every night, recording her vitals and movements, and sharing the data with Apple for commercial purposes. When Gjovik was invited to participate in these events, the team often would not disclose what the study was until the 'volunteers' arrived physically on site to a secure building where ex-FBI security personal would threaten her and her workers to not even tell their friends or family what happens at Apple, and especially studies like these.

197. When Apple asked Gjovik to scan her ears and her ear canals, Gjovik declined "indefinitely." Similarly, Gjovik repeatedly declined Apple's requests to study and collect data about her menstruation for product development. Even after Gjovik declined the ear studies, Apple has claimed its secret they even asked her in the first place.

4. Summary

Count 12 is dismissed with prejudice. Counts 11 and 13 are dismissed but with leave to amend. For Count 11, there is the time-bar problem. For Count 13, there is both the time-bar problem and a merits problem. Any amendment will have to overcome these problems.

F. Remaining Claims

1. Count 9 – Claim Related to Privacy Violation

Count 9 is Ms. Gjovik's claim for violation of § 17200.

In its prior order, the Court noted that the claim (as pled in the TAC) seemed

> to be based on three factual predicates: (1) Apple's coercing employees to provide personal data for Apple's commercial use, such as with the Gobbler application, *see* TAC ¶ 255 (alleging that no consent was obtained or compensation provided); (2) Apple's coercing employees to be a part of invasive studies, *see* TAC ¶ 258; and (3) Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly. *See* TAC ¶ 259. (To be frank, the Court does not understand the allegations made with respect to (3).)

Docket No. 73 (Order at 45).

Apple argued that Ms. Gjovik lacked statutory standing to proceed with the claim because she failed to allege that she lost money to Apple which Apple should disgorge. *See* Cal. Bus. & Prof. Code § 17203 (providing that a "court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition"); *see also Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California Supreme Court has "held that the only remedy expressly authorized by section 17203 was restitution to individuals who had an ownership interest in money paid to the defendants; there was nothing, either in the express language of the statute or in its legislative history, to indicate that the legislature intended to authorize a court to 'order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits'"). The Court agreed with Apple that disgorgement would not be an available remedy but stated that Apple had failed to explain why Ms. Gjovik lacked standing to pursue injunctive relief. The Court added that it was giving Ms. Gjovik leave to amend to clarify her claim based on AC Wellness. *See* Docket No. 73 (Order at 45-46).



United States District Court
Northern District of California

In the pending motion, Apple moves to dismiss the § 17200 claim as repleaded in the 4AC, even though Ms. Gjovik now seeks only injunctive relief and has dropped allegations related to AC Wellness. *See, e.g.*, 4AC ¶¶ 205-06 (asking the Court to order Apple "to disgorge unlawful data and the fruit of the poisoned data" and to prohibit Apple "from using personal employee data in for-profit product development"); *see also* Opp'n at 18 (stating that "Plaintiff does not need economic restitution – and instead requests disgorgement (deletion) of data and software – not money"). Apple has made multiple arguments – that Ms. Gjovik has made an amendment beyond the scope permitted; that she lacks statutory standing to proceed with the claim; that she also lacks Article III standing; that the claim is time barred; and that the relief sought is improper. In her opposition, Ms. Gjovik addresses at most the standing issues. Because Ms. Gjovik has failed to address the remaining arguments made by Apple, the Court deems any opposition waived, and therefore dismissal of the claim is appropriate.

The Court also concludes, based on its independent review, that, at the very least, Apple's arguments on the time bar and improper relief have merit. Regarding the time bar, there is a four-year limitations period under California Business & Professions Code § 17208. Apple notes that, in her prior pleading (the SAC), Ms. Gjovik alleged that Apple "coerced her to provide personal data in August 2017, nearly seven years before she introduced this cause of action in March 2024." Mot. at 8; *see also* SAC ¶¶ 136-42 (alleging that, in August 2017, an Apple engineering manager emailed a list of Apple employees, including Ms. Gjovik, about a Gobbler user study and that Ms. Gjovik was coerced to use the Gobbler application to provide biometrics and videos at a supposed social event). Ms. Gjovik cannot avoid her own allegations even if these allegations were made in a prior pleading. *See Bang Energy Drink*, 2021 U.S. Dist. LEXIS 146977, at *10 (N.D. Cal. June 30, 2021) (indicating that "factual allegations in a prior complaint are 'judicial admissions,' and 'when the party fails to provide a credible explanation for its "error," the [c]ourt may disregard the contradictory pleading").

Ms. Gjovik could have, but did not, contend there is no time bar because there is some kind of continuing accrual, *i.e.*, because Gobbler is still on her personal account. *See Aryeh v. Canon Bus. Solns., Inc.*, 55 Cal. 4th 1185, 1198 (2013) (noting that, under the continuing accrual



United States District Court
Northern District of California

in part the motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

The 5AC is largely consistent with the prior pleadings. That is, as before, the main categories of misconduct by Apple as alleged in the 5AC are as follows:

> (1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.
>
> (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.
>
> (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.
>
> (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Docket No. 73 (Order at 2).

Based on, *inter alia*, these factual allegations, Ms. Gjovik asserts the following causes of action in the 5AC:

(1) Wrongful termination in violation of public policy.

(2) Violation of the California Whistleblower Act. *See, e.g.*, Cal. Lab. Code § 1102.5(b) (providing that an employer "shall not retaliate against an employee for disclosing information . . . to [*inter alia*] a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation").

(3) Violation of California Labor Code § 6310. *See, e.g.*, *id.* § 6310(a) (providing that "[n]o person shall discharge or in any manner discriminate against any